The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation,<br><br>                     Plaintiff,<br><br>     v.<br><br>MOTOROLA, INC., and MOTOROLA MOBILITY, INC.,<br><br>                     Defendants. | CASE NO. C10-1823-JLR<br><br>MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S MOTION TO DISMISS<br><br>**NOTE ON MOTION CALENDAR:**<br>**Friday, January 7, 2011**<br><br>**ORAL ARGUMENT REQUESTED** |

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S
MOTION TO DISMISS
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................1

II. STATEMENT OF RELEVANT FACTS ..............................................................................2

III. MICROSOFT'S COMPLAINT SHOULD BE DISMISSED ................................................4

    A. The Applicable Law. ...................................................................................................5

        1. The Law Relating to Ripeness. ........................................................................5

        2. The Law Relating to Failure to State a Claim for Which Relief May Be Granted. ...........................................................................................................5

    B. Microsoft's Breach of Contract Claim Should Be Dismissed. ....................................6

    C. Microsoft's Other Claims Should Be Dismissed. ........................................................9

IV. CONCLUSION ....................................................................................................................11

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S
MOTION TO DISMISS - i
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) ................................................................................................5

*Coyote Corp. v. Chipman Constr.,*
No. 17411-5-III, 1999 WL 155938 (Wash. Ct. App. Mar. 23, 1999) ..........................9

*Degenhart v. AIU Holdings, Inc.,*
No. C10-5172RBL, 2010 WL 4852200 (W.D. Wash. Nov. 26, 2010) ......................10

*Dequilettes v. Moffat,*
No. 51661-2-I, 2004 WL 370769 (Wash. Ct. App. Mar. 1, 2004) ..............................6

*ESS Tech., Inc. v. PC-Tel, Inc.,*
No. C-99-20292RMW, 2001 WL 1891713 (N.D. Cal. Nov. 28, 2001) ......................7

*Forest Glade Homeowners Ass'n v. Allied Mut. Ins. Co.,*
No. C07-1762JLR, 2009 WL 927750 (W.D. Wash. Mar. 31, 2009) ...........................5

*Georgia-Pacific Corp. v. U.S. Plywood Corp.,*
318 F. Supp. 1116 (S.D.N.Y. 1970) ............................................................................7

*Glacier Water Co., LLC v. Earl,*
No. C08-1705RSL, 2010 WL 3430518 (W.D. Wash. Aug. 30, 2010) ......................10

*Guesthouse Int'l, LLC v. Shoney's N. Am. Corp.,*
No. M2008-02567-COA-R3-CV, 2010 WL 987119 (Tenn. Ct. App. June 24, 2009) ..... 10

*Hynix Semiconductor, Inc. v. Rambus, Inc.,*
441 F. Supp. 2d 1066 (N.D. Cal. 2006) ......................................................................3

*In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.,*
No. 2:08-md-1919JMP, 2010 WL 1734848 (W.D. Wash. Apr. 28, 2010) ..................7

*Lee v. City of Los Angeles,*
250 F.3d 668 (9th Cir. 2001) ...................................................................................4, 7

*Lucent Techs., Inc. v. Gateway, Inc.,*
580 F.3d 1301 (Fed. Cir. 2009) ...................................................................................5

*Permpoon v. Wells Fargo Bank Nat'l Ass'n,*
No. 09-cv-01140-H(BLM), 2009 WL 3214321 (S.D. Cal. Sept. 29, 2009) ..............10

*Ritchie v. Fed. Express Corp.,*
No. C04-1753L, 2007 WL 1140260 (W.D. Wash. Apr. 16, 2007) ...........................10

*Sharafabadi v. Pac. Nw. Farmers Coop.,*
No. C09-1043JLR, 2010 WL 234769 (W.D. Wash. Jan. 14, 2010) (Robart, J.) .........6

*Wapato Heritage, LLC v. U.S. Dep't of Interior,*
No. cv-08-177-RHW, 2008 WL 5046447 (E.D. Wash. Nov. 21, 2008) .....................8

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S
MOTION TO DISMISS - ii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*Wells v. Chase Home Finance, LLC*,
   No. C10-5001RJB, 2010 WL 4858252 (W.D. Wash. Nov. 19, 2010) .......................... 4, 7

**STATUTES**

Fed. R. Civ. P. 12(b)(1) .............................................................................................. 1, 5, 11
Fed. R. Civ. P. 12(b)(6) .......................................................................................... 1, 4, 5, 7, 11
Fed. R. Evid. 201 ................................................................................................................ 7

**OTHER AUTHORITIES**

28 Am. Jur. 2d *Estoppel and Waiver* § 197 (July 2010) ................................................ 10
28 Am. Jur. 2d *Estoppel and Waiver* § 57 (July 2010) ................................................... 9
17A Am. Jur. 2d *Contracts* § 370 (July 2010) ................................................................ 9
Pat Treacy and Sophie Lawrance, *FRANDly fire: are industry standards doing more harm than good?* ................................................................................................ 3
Alan Devlin, *Standard-Setting and the Failure of Price Competition*, 65 N.Y.U. Ann. Surv. Am. L. 217 (2009) ........................................................................................... 3
Restatement (Second) of Contracts § 205 (2010) ............................................................ 9

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S
MOTION TO DISMISS - iii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

# TABLE OF ABBREVIATIONS AND DEFINITIONS

| | |
|---|---|
| ITU | International Telecommunications Union. |
| IEEE | Institute of Electrical and Electronics Engineers. |
| SDO | Standards Development Organization. These organizations determine and disseminate industry standards used in the telecommunications and electronics fields. |
| RAND | Reasonable And Non-Discriminatory. The term "FRAND" is also used by some organizations and stands for "Fair, Reasonable And Non-Discriminatory." |

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S
MOTION TO DISMISS - iv
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## I. INTRODUCTION

Defendants Motorola, Inc., and Motorola Mobility, Inc. (collectively, "Motorola") move, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), to dismiss Plaintiff Microsoft Corporation's ("Microsoft") complaint for lack of subject matter jurisdiction and/or for failure to state a claim for which relief can be granted.

Microsoft's claims are based on two Motorola letters offering patent licenses to Microsoft—one relating to patents that are or may become "essential" to the IEEE 802.11 WLAN standards (Ex. 1);[1] the other relating to patents that are or may become "essential" to the ITU H.264 video standard (Ex. 2). In these letters, Motorola offered to license Microsoft "on a non-discriminatory basis on reasonable terms and conditions ('RAND')" and proposed a specific royalty rate to be applied to each Microsoft product. *Id.* Motorola made these RAND offers in accordance with ITU and IEEE patent policy guidelines that require members (like Motorola) to negotiate licenses for "essential" patents with others on RAND terms. Many companies have become Motorola licensees under various "essential" patent portfolios pursuant to such policies.

But unlike these other companies, rather than participate in a RAND negotiation, Microsoft repudiated Motorola's offer by rushing to the courthouse to bring this action. Microsoft did not even respond to Motorola's letters.

Microsoft's complaint should be dismissed. There is no reasonable interpretation of the facts, as pleaded, that would sustain a breach of contract claim, or any other count of the complaint. An opening letter simply offering a license, like those sent by Motorola here, cannot create a justiciable controversy ripe for adjudication, nor can it be a breach of a promise to negotiate a license under RAND terms. Instead of filing this suit, Microsoft could have (and should have) done what other sophisticated companies have done—responded to the letter and engaged in RAND term negotiations. Indeed, validating Microsoft's premature complaint would authorize suit against all holders of

---

[1] "Ex. __" refers to the Exhibits attached to the accompanying Declaration of Norman H. Beamer in Support of Motorola, Inc. and Motorola Mobility, Inc.'s Motion to Dismiss ("Beamer Decl.").

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S
MOTION TO DISMISS - 1
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

"essential" patents for supposed breach of contract after the holders merely offer to license their patents under specific, proposed RAND terms.

And, where, as here, the response to an opening offer is to file suit, any contractual or other duty to negotiate a RAND license is extinguished.[2] This premature lawsuit, if allowed, would require this Court to render an advisory opinion on complex RAND licensing terms—terms that, but for Microsoft's repudiation, the parties likely would have reached in their own negotiations. Worse, Microsoft has not even agreed that it would accept and be bound by such an advisory opinion. The requirement of a justiciable controversy—unsatisfied by Microsoft here—prevents such a wasteful exercise. Microsoft should not be permitted to conjure up a lawsuit premised on a fabricated contract breach claim; this case should be dismissed.

## II. STATEMENT OF RELEVANT FACTS

Motorola has been a leader in the research and development of wireless telecommunications technology for nearly eight decades. As a result, Motorola has been awarded an extensive portfolio of patents, including both "essential" patents (patents that must be practiced by anyone wishing to make a product that complies with an industry "standard") and "non-essential" patents.

When Motorola participates in formulating industry standards, it notifies the pertinent SDO that promulgates the applicable standard that Motorola agrees to negotiate licenses for such "essential" patents on "RAND" terms in accordance with the SDO guidelines. *See, e.g.*, Complaint, ¶ 4. Motorola has identified to Microsoft at least 28 "families" of Motorola patents (both United States and foreign patents) that are or may be "essential" to the IEEE 802.11 standards referred to in Microsoft's complaint (¶¶ 29-32, 37-46).[3] Motorola has also identified 18 Motorola patent families

---

[2] Motorola assumes for the purpose of this motion that it had a contractual duty to negotiate a RAND "essential" patent license with Microsoft.

[3] Each patent family consists of some number of related patents issued or applied for in the United States and/or other countries. There are at least 257 individual patents or patent applications in Motorola's worldwide portfolio that are or may become essential to the 802.11 standard. Ex. 1, Beamer Decl., ¶ 3. There are at least 177 patents or patent applications in Motorola's worldwide portfolio that are or may become essentials to the H.264 standard. Ex. 2, Beamer Decl., ¶4.

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S
MOTION TO DISMISS - 2
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

(both United States and foreign patents) that are or may be "essential" to the ITU H.264 standards, also referred to in the complaint (¶¶ 33-36, 47-54).

Significantly, the IEEE and ITU do not promulgate any rules or guidelines defining what "RAND" terms are, or provide examples or ranges of acceptable RAND royalties or other terms.[4] Instead, these SDOs stress that the actual RAND terms are the responsibility of individual companies to negotiate <u>on a bilateral basis</u>. For example, the IEEE Standards Organization Bylaws that relate to the 802.11 standard provide:

> The IEEE is not responsible . . . for determining whether any licensing terms or conditions provided in connection with submission of a Letter of Assurance, if any, or in any licensing agreements are reasonable or non-discriminatory.[5]

Likewise, the "Guidelines for Implementation of the Common Patent Policy for [the ITU]" that relate to the H.264 standard provide:

> The detailed arrangements arising from patents (licensing, royalties, etc.) are left to the parties concerned, as these arrangements might differ from case to case.[6]

Similarly, the form that the ITU promulgates for patent owners to use to disclose essential patents for licensing provides that "[n]egotiations are <u>left to the parties concerned</u> and are performed outside the [ITU]."[7]

---

[4] No Court has actually determined a RAND rate or RAND terms. Numerous commentators, however, have discussed the various considerations, nebulous nature, complexity, and widely varying factors that would have to be involved in such a determination. *See, e.g., Hynix Semiconductor, Inc. v. Rambus, Inc.*, 441 F. Supp. 2d 1066, 1074 (N.D. Cal. 2006) (noting the "staggering lack of defining details in the [SDO's] patent policy" and declining to enforce a contract based on the policy); Pat Treacy and Sophie Lawrance, *FRANDly fire: are industry standards doing more harm than good?*, 3 J. Intell. Prop. L. & Prac. 22, 24 (2007), Ex. 3 ("[T]here is a significant risk that [RAND] can mean all things to all men. In consequence, the obligation risks becoming toothless."); Alan Devlin, *Standard-Setting and the Failure of Price Competition*, 65 N.Y.U. Ann. Surv. Am. L. 217, 221 (2009), Ex. 4 ("While steps could be taken within an SSO to bestow the concept [of RAND] with some limited form of objectivity and force, there is simply no getting around the fact that "reasonable" is a nebulous concept in many information markets").

[5] IEEE-SA Standards Board Bylaws § 6.2 (2010), *available at* http://standards.ieee.org/develop/policies/bylaws/sb_bylaws.pdf, Ex. 5 at 16.

[6] Guidelines for Implementation of the Common Patent Policy for ITU-T/ISO/IEC, Annex 1 (Mar. 1, 2007), *available at* http://www.itu.int/dms_pub/itu-t/oth/04/04/T04040000010002PDFE.pdf, Ex. 6 at 8.

[7] Patent Statement and Licensing Declaration Form for ITU-T/ITU-R Recommendation | ISO/IEC Deliverable, Ex. 6 at 11. This language is also included in Section 2.2 of the ITU Patent Policy. Microsoft omits this language ("negotiations

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S
MOTION TO DISMISS - 3
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

After Microsoft sued Motorola on October 1, 2010, for patent infringement in this District and in the International Trade Commission, Motorola sent letters on October 21 and 29, 2010, to Microsoft offering licenses under Motorola's 802.11 and H.264 "essential" patent portfolios, respectively. Exs. 1, 2. In these letters, Motorola offered "to license the patents on a non-discriminatory basis on reasonable terms and conditions ('RAND'), including a reasonable royalty of 2.25%. . . ." Motorola further proposed that, "[a]s per Motorola's standard terms, the royalty is calculated based on the price of the end product. . . ." *Id.* (emphasis added). These two letters form the basis for all of Microsoft's claims. Complaint, ¶¶ 70-71.

Microsoft's only response to these letters was to file this suit. After Microsoft demonstrated an outright refusal to engage in bilateral negotiation of RAND terms and, instead, raced to the courthouse, Motorola instituted patent actions in the Western District of Wisconsin and the Southern District of Florida (the "Patent Actions") on November 10, 2010.[8]

### III. MICROSOFT'S COMPLAINT SHOULD BE DISMISSED

Each of the counts of Microsoft's complaint is premised entirely on the initial licensing offers in Motorola's two October letters.[9] The only specific portion of those offers that Microsoft apparently relies on for factual support of its breach averment is the proposed royalty base. Motorola proposed its "standard term"—that the RAND royalty should be applied to the selling price of the applicable

---

are left to the parties concerned and are performed outside the [ITU]") when quoting this section in its complaint. *See* Complaint, ¶ 4.

[8] The Patent Actions are: *Motorola Mobility, Inc. v. Microsoft Corp.*, No. 10-24063 (S.D. Fla.); *Motorola Mobility, Inc. v. Microsoft Corp.*, Civ. No. 10-699 (W.D. Wis.); and *Motorola Mobility v. Microsoft Corp.*, No. 10-700 (W.D. Wis.). Motorola has also filed a complaint against Microsoft in the International Trade Commission (*In Re Certain Gaming and Entertainment Consoles, Related Software, and Components Thereof*, Docket No. 2770), which is under Staff review.

[9] These letters are referenced in the complaint. Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss without converting the motion to a motion for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *Wells v. Chase Home Finance, LLC*, No. C10-5001RJB, 2010 WL 4858252, at *5 (W.D. Wash. Nov. 19, 2010) ("On a motion for judgment on the pleadings, the court may consider documents relied on in a complaint without converting the motion to one for summary judgment. A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the Fed. R. Civ. P. 12(b)(6) motion.") (citations omitted).

---

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S
MOTION TO DISMISS - 4
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Microsoft products.[10] Complaint, ¶¶ 65-71. Microsoft alleges that this offer was so unreasonable that merely to propose it put Motorola in breach. But no claim for a breach of alleged RAND obligations can rest on so thin a reed. Microsoft's claims should be dismissed because they are premature and fail to state a claim for which relief may be granted.

### A. The Applicable Law.

#### 1. The Law Relating to Ripeness.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(1), a pleading must set forth facts that establish a justiciable controversy ripe for adjudication <u>at the time the pleading was filed</u>. As this Court stated in *Forest Glade Homeowners Ass'n v. Allied Mut. Ins. Co.*:

> Ripeness is a question of justiciability that prevents the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements. The burden of establishing ripeness rests with the party asserting the claim. Ripeness is determined at the time of the filing of the complaint. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed.

No. C07-1762JLR, 2009 WL 927750, at *2 (W.D. Wash. Mar. 31, 2009) (holding that the claims were not ripe and dismissing the case for lack of subject matter jurisdiction) (Robart, J.) (citations and quotations omitted).

#### 2. The Law Relating to Failure to State a Claim for Which Relief May Be Granted.

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It is not enough for a complaint to "plead[] facts that are 'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 557). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a

---

[10] As the Federal Circuit has observed, it is a universal practice to use the selling price of a product as the royalty base, rather than to attempt to carve out the value of some component of the product. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1338-39 (Fed. Cir. 2009) ("[S]ophisticated parties routinely enter into license agreements that base the value of the patented inventions as a percentage of the commercial products' sales price.").

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S
MOTION TO DISMISS - 5
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950; *see also Sharafabadi v. Pac. Nw. Farmers Coop.*, No. C09-1043JLR, 2010 WL 234769, at *1-2 (W.D. Wash. Jan. 14, 2010) (Robart, J.).

Although a court considering a motion to dismiss must accept all of the factual allegations in the complaint as true, the court is not required to accept as true a legal conclusion presented as a factual allegation. *See Ashcroft*, 129 S. Ct. at 1949-50. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### B. Microsoft's Breach of Contract Claim Should Be Dismissed.

On its face, Microsoft's complaint does not set forth a plausible claim for breach of contract that was ripe for adjudication. The SDO patent policies require that patent holders offer and negotiate RAND terms with licensees. *See* Complaint, ¶¶ 2, 4. That is <u>precisely</u> what Motorola tried to do. In the October letters, Motorola offered to license its patents that are (or may be) "essential" to the 802.11 and H.264 standards to Microsoft on RAND terms. Plainly, making this offer was the first step to negotiating RAND terms. <u>Microsoft</u>, not Motorola, was the party that refused to negotiate. By filing this lawsuit as its sole response to Motorola's offers, Microsoft rejected those offers and repudiated any contractual benefits it might otherwise have obtained.[11]

*Microsoft's claims were not ripe.* Microsoft has no basis to argue that Motorola's opening offer—no matter how unacceptable Microsoft subjectively thinks the offer is—created a justiciable controversy ripe for resolution by this Court. RAND license terms were intended to be determined through <u>bilateral</u> negotiations between involved parties. This is expressly acknowledged by the ITU:

---

[11] "An anticipatory breach occurs when one of the parties to a bilateral contract either expressly or impliedly repudiates the contract prior to the time for performance. . . . Anticipatory breach relieves the other party of the duty to perform." *Dequilettes v. Moffat*, No. 51661-2-I, 2004 WL 370769, at *4 (Wash. Ct. App. Mar. 1, 2004) (citations and quotations omitted).

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S
MOTION TO DISMISS - 6
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1  "Negotiations [of licenses] are left to the parties concerned and are performed outside the [ITU]."
2  Ex. 6 at 11.[12]

3  In addition, the few courts that have opined on RAND licensing practices have compared the
4  determination of RAND royalty rates to the so-called *"Georgia-Pacific"* procedure for determining
5  "reasonable royalty rates" that a patentee is entitled to as a minimum for patent infringement damages.
6  *See, e.g., ESS Tech., Inc. v. PC-Tel, Inc.*, No. C-99-20292RMW, 2001 WL 1891713, at *3-6 (N.D.
7  Cal. Nov. 28, 2001). Such reasonable rates are determined by considering what rate would be agreed
8  to after a hypothetical negotiation between willing parties. *See Georgia-Pacific Corp. v. U.S.*
9  *Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Only through the negotiation process do
10 parties typically share the information necessary to assess properly, among other things, their relative
11 market positions and the relative importance of various patented features to the prospective licensee's
12 goods. Only <u>after</u> negotiation can parties come to some accommodation, at least as a business matter,
13 as to "reasonable and non-discriminatory" license terms. Microsoft refused to do that here.

14 Motorola cannot be subject to a lawsuit, <u>before any negotiations take place</u>, merely because its
15 initial offer fails to satisfy some undefined, subjective RAND standard unilaterally envisioned by
16 Microsoft. Such a rule would preempt negotiation and spawn nuisance lawsuits. Patent owners
17 would withhold proposing licensing terms until extensive negotiations had already taken place, and
18 even then would do so under the Damoclean Sword of threatened litigation. Moreover, parties,
19 knowing that litigation could ensue after the first good faith offer, may increasingly turn to the Courts
20 to determine a RAND rate before good faith negotiations have reached an impasse. This will turn
21 courts into administrative agencies required to hold lengthy ratemaking hearings disguised as RAND
22 royalty determinations. Judicial resources would be devoted to the very same analysis the private
23 parties should otherwise have performed on their own, at lower cost, with lesser risk. In view of these

---

[12] Because Microsoft quotes and relies upon the IEEE and ITU patent policies in its complaint, the patent policies may be considered in ruling on Motorola's Rule 12(b)(6) motion to dismiss. *See Lee,* 250 F.3d at 689. The Court also may take judicial notice of these policies. Fed. R. Evid. 201; *Wells,* 2010 WL 4858252, at *5; *see also In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*, No. 2:08-md-1919JMP, 2010 WL 1734848, at *2 (W.D. Wash. Apr. 28, 2010) (holding that the Court would take judicial notice of accounting standards when considering a motion to dismiss).

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S
MOTION TO DISMISS - 7
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

fundamental considerations, it is not surprising that, to Motorola's knowledge, <u>no Court</u> has ever found a party's opening offer alone to constitute a breach of contract and/or a duty to negotiate in good faith.

***Microsoft's complaint also should be dismissed because it seeks only an advisory opinion.*** Microsoft asks the Court to divine RAND terms for two entire portfolios of "essential" patents, and yet nowhere does Microsoft state that it agrees to be bound by the determination and pay to Motorola the resulting royalty called for by such adjudicated RAND terms. Microsoft has made no representation that it will, in fact, honor the Court's RAND determination and take a license from Motorola under those terms. Indeed, Microsoft may deny infringement and, if it does not like the Court's RAND determination, elect to litigate elsewhere whether it requires a license, rendering useless this Court's RAND determination.

***The doctrine of substantial compliance requires dismissal of Microsoft's complaint.*** Under any reading of Microsoft's complaint and Motorola's two October letters, Microsoft's complaint fails to state a claim. The doctrine of substantial compliance provides that "a deficiency in performance may not be considered a breach as long as it is not 'so dominant or pervasive as in any real or substantial measure to frustrate the purpose of the contract.'" *Wapato Heritage, LLC v. U.S. Dep't of Interior*, No. cv-08-177-RHW, 2008 WL 5046447, at *6 (E.D. Wash. Nov. 21, 2008) (citations and quotations omitted). The doctrine exists "to give effect to [a party's] intent to comply when that intent is evident." *Id.* (citations omitted). Assuming, *arguendo*, that some sort of deficiency in Motorola's offer existed at all, such intent to comply is present here—Motorola referenced the relevant standards, expressly stated a desire to license the patents under RAND terms, specifically proposed that the rate be "reasonable," and proposed Motorola's standard offer. Motorola's letters do nothing to frustrate the purpose of its obligations to the SDOs. To the contrary, these letters show <u>on their face</u> that Motorola complied with any RAND obligations.

***Microsoft—not Motorola—is the party that has breached its obligations.*** Based on Microsoft's belief that it is a beneficiary of the supposed contract between Motorola and the SDOs

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S
MOTION TO DISMISS - 8
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

and its supposed standing to bring this suit (*see, e.g.*, Complaint, ¶ 9), Microsoft had an obligation to negotiate with Motorola in good faith before bringing suit. *See* Restatement (Second) of Contracts § 205 cmt. e (2010) ("The obligation of good faith and fair dealing extends to the assertion, settlement and litigation of contract claims and defenses. The obligation is violated by dishonest conduct such as conjuring up a pretended dispute . . . ."); 17A Am. Jur. 2d *Contracts* § 370 (July 2010) ("[W]henever the cooperation of the promisee is necessary for the performance of the promise, there is a condition implied that the cooperation will be given.").

Microsoft failed to negotiate in good faith—Microsoft decided to ignore Motorola's two letters, not enter into good faith discussions, and baselessly filed a suit in violation of Microsoft's own duty of good faith and fair dealing. But as discussed above, it is <u>Microsoft</u> that is in breach by refusing to even reply to Motorola's opening letters. Microsoft's failure to negotiate in good faith requires that its complaint be dismissed.

### C. Microsoft's Other Claims Should Be Dismissed.

For the same reasons presented above regarding the breach of contract claim, Microsoft's promissory estoppel, waiver and declaratory judgment claims should be dismissed.

As a threshold issue, Microsoft repeatedly alleges that Motorola's RAND obligations to SDOs are contractual. Complaint, ¶¶ 45-46, 54, 75-80. Motorola accepts this as true for purposes of this motion. Because promissory estoppel applies only when <u>no valid</u> contract exists, Microsoft's promissory estoppel claim should be dismissed. *See Coyote Corp. v. Chipman Constr.*, No. 17411-5-III, 1999 WL 155938, at *2 (Wash. Ct. App. Mar. 23, 1999); 28 Am. Jur. 2d *Estoppel and Waiver* § 57 (July 2010) ("Once it is established . . . that there is in fact an enforceable contract between the parties, and therefore consideration exists, then a party may no longer recover under the theory of promissory estoppel.").

Moreover, under Washington law, the elements of promissory estoppel are: (i) "a promise was made which"; (ii) "the promisor should reasonably have expected would cause the promisee to change its position and"; (iii) "which does in fact cause the promisee to change his position"; (iv) "in

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S
MOTION TO DISMISS - 9
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

justifiable reliance on the promise"; and (v) "in such a manner that injustice can be avoided only by enforcing the promise." *See Glacier Water Co., LLC v. Earl*, No. C08-1705RSL, 2010 WL 3430518, at *2 (W.D. Wash. Aug. 30, 2010). As discussed above, however, Microsoft has not sufficiently pleaded the threshold requirement of an unfulfilled or broken promise. *See Ritchie v. Fed. Express Corp.*, No. C04-1753L, 2007 WL 1140260, at *9 n.4 (W.D. Wash. Apr. 16, 2007) ("Washington courts treat claims for promissory estoppel and breach of a specific promise as one in the same. Given that [plaintiff] has failed to establish any facts to support a breach of the promise at issue, [its] promissory estoppel claim cannot proceed.") (citations omitted). An offer to license patents under RAND terms in conjunction with an opening offer, no matter how unacceptable to the offeree, cannot violate a promise to negotiate in good faith. Microsoft's promissory estoppel claim is not ripe, and it is not based on plausible supporting facts.

Microsoft's waiver allegations should similarly be dismissed because waiver is a defense, not a cause of action. *See Guesthouse Int'l, LLC v. Shoney's N. Am. Corp.*, No. M2008-02567-COA-R3-CV, 2010 WL 987119, at *31 (Tenn. Ct. App. June 24, 2009); 28 Am. Jur. 2d *Estoppel and Waiver* § 197 (July 2010) ("Waiver is not a cause of action because it cannot create liability in and of itself, and waiver cannot be asserted in a complaint as an offensive weapon."). In any event, the waiver "count" should be dismissed as premature and ungrounded for the same reasons as for the other counts of the complaint.

Finally, Microsoft's declaratory judgment cause of action is merely a counterpart of its other causes of action, and should be dismissed for the same reasons. *See Degenhart v. AIU Holdings, Inc.*, No. C10-5172RBL, 2010 WL 4852200, at *3 (W.D. Wash. Nov. 26, 2010) ("While a plaintiff may plead claims in the alternative in certain situations, there is Ninth Circuit authority allowing the Court to dismiss a declaratory relief cause of action when it only seeks a declaration of defendants' liability for damages which are sought by other causes of action."); *Permpoon v. Wells Fargo Bank Nat'l Ass'n*, No. 09-cv-01140-H(BLM), 2009 WL 3214321, at *5 (S.D. Cal. Sept. 29, 2009) (dismissing a

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S
MOTION TO DISMISS - 10
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

declaratory judgment cause of action because it was "entirely commensurate with the relief sought through . . . other causes of action").

## IV. CONCLUSION

Microsoft's complaint is premature and non-justiciable, seeking an advisory opinion that Microsoft has not even agreed to accept. The complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

DATED this 15th day of December, 2010.

SUMMIT LAW GROUP PLLC

By /s/ Philip S. McCune
    Philip S. McCune, WSBA #21081
    Lynn M. Engel, WSBA #21934
    *philm@summitlaw.com*
    *lynne@summitlaw.com*

And by

    Steven Pepe (*pro hac vice*)
    Jesse J. Jenner (*pro hac vice*)
    Ropes & Gray LLP
    1211 Avenue of the Americas
    New York, NY 10036-8704
    (212) 596-9046
    *jesse.jenner@ropesgray.com*
    *steven.pepe@ropesgray.com*

    Norman H. Beamer (*pro hac vice*)
    Ropes & Gray LLP
    1900 University Avenue, 6th Floor
    East Palo Alto, CA 94303-2284
    (650) 617-4030
    *norman.beamer@ropesgray.com*

    Paul M. Schoenhard (*pro hac vice*)
    Ropes & Gray LLP
    One Metro Center
    700 12th Street NW, Suite 900
    Washington, DC 20005-3948
    (202) 508-4693
    *paul.schoenhard.@ropesgray.com*

*__Attorneys for Defendants Motorola, Inc., and Motorola Mobility, Inc.__*

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S
MOTION TO DISMISS - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Arthur W. Harrigan, Jr., Esq.
>Christopher T. Wion, Esq.
>Shane P. Cramer, Esq.
>Danielson Harrigan Leyh & Tollefson
>*arthurh@dhlt.com*
>*chrisw@dhlt.com*
>*shanec@dhlt.com*
>
>Brian R. Nester, Esq.
>David T. Pritikin, Esq.
>Douglas I. Lewis, Esq.
>John W. McBride, Esq.
>Kevin C. Wheeler, Esq.
>Richard A. Cederoth, Esq.
>Sidley Austin LLP
>*bnester@sidley.com*
>*dpritikin@sidley.com*
>*dilewis@sidley.com*
>*jwmcbride@sidley.com*
>*kwheeler@sidley.com*
>*rcederoth@sidley.com*
>
>T. Andrew Culbert, Esq.
>David E. Killough, Esq.
>Microsoft Corp.
>*andycu@microsoft.com*
>*davkill@microsoft.com*

DATED this 15th day of December, 2010.



_____
Marcia A. Ripley

---

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S
MOTION TO DISMISS - 12
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001