HONORABLE JAMES L. ROBART

1

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10  MICROSOFT CORPORATION, a
    Washington corporation,                    Case No. 10-1823

11
                              Plaintiff,        **MICROSOFT'S OPPOSITION TO**
12                                              **MOTOROLA AND MOTOROLA**
                                                **MOBILITY'S MOTION TO DISMISS**
13        vs.
                                                **Noted:  Friday, January 7, 2011**
14  MOTOROLA, INC., and MOTOROLA
    MOBILITY, INC.,

15
                              Defendants
16

17

18

19

20

21

22

23

24

25

MICROSOFT'S OPPOSITION TO MOTOROLA
AND MOTOROLA MOBILITY'S MOTION TO
DISMISS
CASE NO. 10-1823

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ..................................................................1

II.  STATEMENT OF RELEVANT FACTS .............................................3

    A.   The Standards Setting Process........................................3

    B.   Technologies at Issue in this Action ................................4

        1.   *The WLAN Wireless Internet Connectivity Standard* ...................4

        2.   *H.264 Video Compression Standard* ...............................4

    C.   Motorola Voluntarily Participated in Setting the Relevant Standards.........5

    D.   Motorola has Breached its Contract with the SDOs and Microsoft by Refusing to Make Licenses Available to Microsoft on RAND Terms...5

III. LEGAL ARGUMENT..........................................................7

    A.   Relevant Legal Standards ..........................................7

        1.   *Fed. R. Civ. P. 12(b)(6)* ....................................7

        2.   *Fed. R. Civ. P. 12(b)(1)* ....................................7

    B.   Microsoft's Breach of Contract Claim Should Not Be Dismissed .............8

        1.   *Microsoft has Stated a Claim for Breach of Contract*...................8

        2.   *Microsoft's Breach of Contract Claim is Ripe for Adjudication*...11

        3.   *Microsoft does not seek an Advisory Opinion* .............................14

    C.   Microsoft's Remaining Claims Should Not Be Dismissed .......................15

        1.   *Microsoft Is Entitled to Plead and Prove Promissory Estoppel in the Alternative to its Breach of Contract Claim*......................15

        2.   *Microsoft Has Validly Pleaded Waiver as a Basis for Injunctive Relief*..........................................16

        3.   *Microsoft's Declaratory Judgment Claim May Not Be Dismissed at the Pleading Stage*...................................17

MICROSOFT'S OPPOSITION TO MOTOROLA
AND MOTOROLA MOBILITY'S MOTION TO
DISMISS - i
CASE NO. 10-1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

1

III.     CONCLUSION...................................................................................................20

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MICROSOFT'S OPPOSITION TO MOTOROLA
AND MOTOROLA MOBILITY'S MOTION TO
DISMISS - ii
CASE NO. 10-1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

# TABLE OF AUTHORITIES

Page

**Cases**

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937 (2009)........................................................................7

*Badgett v. Sec. State Bank,*
  116 Wn.2d 563, 807 P.2d 356 (1991)...............................................13

*Broadcom Corp. v. Qualcomm Inc.,*
  501 F.3d 297 (3d. Cir. 2007) ........................................................8, 12

*BrowserCam Inc. v. Gomez, Inc.,*
  No. 08-02959 WHA, 2008 U.S. Dist. LEXIS 82159
  (N.D. Cal., Sept. 26, 2008) ...............................................................11

*Degenhart v. AIU Holdings, Inc.,*
  No. C10-5172RBL, 2010 U.S. Dist. LEXIS 125524
  (W.D. Wash., Nov. 26, 2010) ............................................................19

*Dequilettes v. Moffat,*
  2004 Wash. App. LEXIS 283 (Mar. 1, 2004).....................................14

*Ericsson Inc. v. Samsung Electronics Co., Ltd.,*
  No. 2:06-CV-63, 2007 U.S. Dist. LEXIS 29257
  (E.D. Tex., April 20, 2007)....................................................12, 14, 15

*ESS Tech., Inc., v. PC-Tel, Inc.,*
  No. C-99-20292 RMW, 2001 U.S. Dist. LEXIS 26348
  (N.D. Cal., Nov. 28, 2001) ...............................................................12

*Farm Crop Energy, Inc. v. Old National Bank of Wash.,*
  109 Wn.2d 923, 750 P.2d 231 (1988)...............................................16

*Flower v. T.R.A. Industries, Inc.,*
  127 Wn. App. 13, 111 P.3d 1992 (2005)............................................16

*W.L. Gore & Assoc., Inc. v. Carlisle Corp.,*
  529 F.2d 614 (3d Cir. 1976) .............................................................10

*Greater Los Angeles Council on Deafness, Inc. v. Zolin,*
  812 F.2d 1103 (9th Cir. 1987) ..........................................................18

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1

*Mike M. Johnson, Inc. v. County of Spokane,*
        150 Wn.2d 375, 78 P.3d 161 (2003)...................................................................10

2

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,*
        416 F.3d 940 (9th Cir. 2005) ...........................................................7, 17

3

4

*Lopez v. Smith,*
        203 F.3d 1122 (9th Cir. 2000) .........................................................................7

5

*Lucent Technologies, Inc. v. Gateway, Inc.,*
        580 F.3d 1301 (Fed. Cir. 2009) ..........................................................................12

6

7

*Moore v. Blue Frog Mobile, Inc.,*
        153 Wn. App. 1, 221 P.3d 913 (2009)..................................................................11

8

9

*NL Industries v. Kaplan,*
        792 F.2d 896 (9th Cir. 1986) ............................................................................3

10

*Nokia Corp. v. Qualcomm, Inc.,*
        No. 06-509-JJF, 2006 U.S. Dist. LEXIS 61383 (D. Del., Aug. 29, 2006) ......14, 15

11

12

*N.W. Indep. Forest Mfrs. v. Dep't of Labor & Indust.,*
        78 Wn. App. 707, 899 P.2d 6 (1995)....................................................................8

13

14

*Parks School of Business, Inc. v. Symington,*
        51 F.3d 1480 (9th Cir. 1995) ............................................................................7

15

*Permpoon v. Wells Fargo Bank Nat'l Ass'n,*
        No. 09-CV-01140-H (BLM), 2009 U.S. Dist. LEXIS 89723
        (S.D. Cal., Sept. 29, 2009) ...................................................................................19

16

17

*Powell v. McCormack,*
        395 U.S. 486, 89 S. Ct. 1944 (1969) ...................................................................18

18

19

*Principal Life Insurance Co. v. Robinson,*
        394 F.3d 665 (9th Cir. 2005) ..........................................................................8, 11

20

21

*Putz v. Golden,*
        No. C10-0741JLR, 2010 U.S. Dist. LEXIS 129411
        (W.D. Wash., Dec. 7, 2010) .................................................................................11

22

23

*Research in Motion Limited v. Motorola, Inc.,*
        644 F. Supp. 2d 788 (N.D. Tex. 2008) .......................................................9, 10, 11, 19

24

25

MICROSOFT'S OPPOSITION TO MOTOROLA
AND MOTOROLA MOBILITY'S MOTION TO
DISMISS - iv
CASE NO. 10-1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1    *Scott v. Pasadena Unified Sch. Dist.,*
        306 F.3d 646 (9th Cir. 2002) ............................................................................8, 11

2    *Swartz v. KPMG LLP,*
3       476 F.3d 756 (9th Cir. 2007) ...................................................................................19

4    *VersusLaw, Inc. v. Stoel Rives, L.L.P.,*
        127 Wn. App. 309, 111 P.3d 866 (2005)..................................................................14

5
     *Wapato Heritage, LLC v. U.S. Dep't of Interior,*
6       No. cv-08-177-RHW, 2008 WL 5046447 (E.D. Wash., Nov. 21, 2008) ..............10

7

8    **Other Authorities**

9    Federal Rules of Civil Procedure 12(b) ........................................................................7

10   RCW 2.06.040 ..............................................................................................................14

11   RCW 7.24.010 ..............................................................................................................17

12   28 U.S.C.A. § 2201(1) ..................................................................................................17

13

14

15

16

17

18

19

20

21

22

23

24

25

MICROSOFT'S OPPOSITION TO MOTOROLA
AND MOTOROLA MOBILITY'S MOTION TO
DISMISS - v
CASE NO. 10-1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

# I. INTRODUCTION

This action arises out of breaches by Defendants Motorola, Inc. and Motorola Mobility, Inc. (collectively "Motorola") of obligations they undertook to provide licenses to their purportedly "essential" or necessary patents on reasonable and non-discriminatory ("RAND") terms. When Motorola chose to participate in the standard setting process for developing both the WLAN wireless internet standard and the H.264 video compression standard, it agreed to offer licenses on RAND terms to Microsoft and other prospective licensees for any patents Motorola claims are necessary to comply with the respective standards.

Motorola has identified a number of patents as allegedly essential or necessary to both the WLAN wireless standard and the H.264 video compression standard, but has not complied with its obligation to offer Microsoft a license to these technologies on RAND terms. Instead, Motorola has expressly conditioned any such license on an exorbitant, discriminatory, and unreasonable royalty. As the Complaint alleges, Motorola's demand is not a good faith effort to comply with the obligations it undertook when participating in the standard setting process.

Specifically, Motorola has demanded that Microsoft pay it a royalty of 2.25 percent per unit, *based on the price of the end-product* (such as an Xbox 360, computer, phone, etc.); i.e., the royalty is not based on the value of the specific component containing Motorola's allegedly essential patent, much less limited to the allegedly patented feature. This demand violates the commitment Motorola made to IEEE-SA, the ITU, and their members.

Motorola argues that this demand is simply the opening move in a negotiating minuet and that the Court should therefore disregard Microsoft's allegation that this demand is not a good faith offer. But Motorola's argument rests upon Microsoft having a contractual obligation to negotiate in response to a demand that—on this Motion—must be deemed to be made in bad faith (as alleged). No such possible duty to negotiate in good faith is triggered by a bad faith demand that is itself a breach of the contract. In fact, such a demand—which seeks

MICROSOFT'S OPPOSITION TO MOTOROLA
AND MOTOROLA MOBILITY'S MOTION TO
DISMISS - 1
CASE NO. 10-1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

1    to impose terms far outside of the RAND playing field—strikes at the heart of the purpose of

2    the RAND requirement.  At best, it is a gambit designed to secure a negotiating advantage by

3    abusing the power inherent in control over the patented technology.  The proper response to

4    this kind of abusive practice is not to succumb to it but to stop it.

5         On this Motion, Microsoft need not show that its allegation of Motorola's bad faith will

6    be sustained at trial (though Microsoft does note that the royalty demanded is based on a value

7    far in excess of that of the allegedly patented feature in question and is thus facially not

8    RAND).  Faced with an allegation of bad faith that must be deemed true, Motorola argues that

     the Court would be unduly burdened if it was required to make the ultimate determination of

9    compliance with RAND.   But this Court is well-equipped to determine whether Motorola's

10   demand is within the range of RAND rates and terms or is a bad faith demand that constitutes a

11   breach of contract, and this determination will be based on methods of analysis with which the

12   Court is already familiar.  For example, determining whether Motorola's royalty demands to

13   Microsoft were reasonable and non-discriminatory under applicable precedent may entail, *inter*

14   *alia*, evaluation of competing technologies under consideration by the relevant standards

15   setting organization, other standards-related licenses proposed/entered into by Motorola and

16   other parties participating in the relevant standard setting organization, and an evaluation of

17   relative role of the accused technology in the accused products.[1]  The Court can also readily

     determine what an appropriate RAND royalty rate is under the circumstances.

18        Motorola opted to participate in the standard setting process and committed to abide by

19   those Standards Determining Organizations' ("SDOs") RAND obligations.  Motorola does not

20   dispute that its actions are governed by enforceable contracts formed with the SDOs and their

21   members, including Microsoft, and Motorola does not dispute the relevant terms of those

22

23   ―――――――――――――――
     [1] *See e.g.*, Francois Leveque and Yann Ménière, *Vagueness in RAND Licensing Obligations is Unreasonable for*
24   *Patent Owners*, CERNA Working paper.  Available at: http://ssrn.com/abstract=1030520; Daniel Swanson and
     William Baumol, *Reasonable and Nondiscriminatory (RAND) Royalties, Standards Selection, And Control of*
     *Market Power*, 73 Antitrust L.J. 1, 21 (2005).  Declaration of Shane P. Cramer in Support of Microsoft's
25   Opposition to Motorola and Motorola Mobility's Motion to Dismiss ("Cramer Dec."), Ex. 1-2.

MICROSOFT'S OPPOSITION TO MOTOROLA
AND MOTOROLA MOBILITY'S MOTION TO
DISMISS - 2
CASE NO. 10-1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

1   contracts.  Nonetheless, Motorola effectively seeks summary judgment that it has complied

2   with those contracts.  But, Motorola's demand contains terms that do not remotely meet RAND

3   criteria, and alone demonstrates the genuine dispute between the parties, thereby fatally

4   dooming Motorola's current motion.  In any event, Microsoft has so alleged and has alleged

5   that this breach by Motorola threatens to cause, and has caused, significant injury to Microsoft.

6   Microsoft's complaint easily meets the low threshold for defeating this motion, which

7   Microsoft respectfully requests be denied.

8   <center>**II.    STATEMENT OF RELEVANT FACTS**</center>

9   The following facts must be accepted as true and construed in Microsoft's favor.  *See*

10  *NL Industries v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

11  **A.    The Standards Setting Process.**

12  Standards play a critical role in fostering development of wireless and video coding

13  technologies.  Complaint, ¶ 23.  Standards facilitate the adoption and advancement of

14  technology as well as the development of products that can interoperate with one another.  *Id.*

15  Standards are beneficial.  Companies that produce products compatible with a standard can

16  design products by referencing only the standard documentation, without the need to

17  communicate separately with every other company with which their products may need to

18  interoperate.  *Id.*  Companies producing products that implement and are tested to a standard

19  can be confident that their products will operate with other products that also are compatible

20  with that standard.  Consumers of those products can be confident that products from multiple

21  vendors will work together as intended under the standard.  *Id.*

22  The standards also confer potential power on patent holders.  In order to assure that

23  implementers of these standards will not be subject to abusive practices by patent holders, even

24  those whose claims have no more than suspect legitimacy, SDOs have adopted rules that

25  address the disclosure and licensing of patents that SDO participants may assert in relation to

MICROSOFT'S OPPOSITION TO MOTOROLA
AND MOTOROLA MOBILITY'S MOTION TO
DISMISS - 3
CASE NO. 10-1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1  the practice of the standard under consideration. *Id.*, ¶ 26.  These rules, policies and/or

2  procedures are set out in the intellectual property rights policies ("IPR policies") of the SDOs.

3  *Id.*  IPR policies – including those at issue in this litigation – require participants claiming to

4  own relevant patents to offer licenses for those patents to any implementer of the standard, and

5  to do so on RAND terms. *Id.*, ¶ 27.

6      Such commitments are included in the IPR policies because they are crucial to

7  developing such standards. *Id.*, ¶ 26, 28.  Participants in standards development can craft

8  standards knowing that an owner of a patented technology will not be permitted to abuse the

9  resulting power by demanding unreasonable or discriminatory licensing terms. *Id.*

10 **B.      Technologies at Issue in this Action.**

11      1.     *The WLAN Wireless Internet Connectivity Standard.*

12      Motorola's unlawful licensing demands pertain in part to patents that it claims are

13 "essential" to a widely practiced standard for wireless Internet connectivity known as

14 "WLAN," "Wi-Fi," and/or "802.11." *Id.*, ¶ 29.  WLAN enables an electronic device to access

15 the Internet wirelessly at high speeds over short distances. *Id.*, ¶ 30.  WLAN is based on a

16 standard developed by the Institute of Electrical and Electronics Engineers ("IEEE"). *Id.*, ¶ 31.

17 As a condition of participating in the standard setting process, Motorola agreed that "a license

18 for a compliant implementation of the standard will be made available to an unrestricted

19 number of applicants on a worldwide basis without compensation or under reasonable rates,

20 with reasonable terms and conditions that are demonstrably free of any unfair discrimination."

21 *Id.*, ¶¶ 2-3, 43.

22      2.     *H.264 Video Compression Standard.*

23      H.264 technologies provide video decoding in such applications as DVD players,

24 videos available for downloading or replay on the Internet, web software, broadcast services,

25 direct-broadcast satellite television services, cable television services, and real-time

MICROSOFT'S OPPOSITION TO MOTOROLA
AND MOTOROLA MOBILITY'S MOTION TO
DISMISS - 4
CASE NO. 10-1823

1   videoconferencing. *Id.*, ¶ 34.  H.264 technology was developed as a standard set of

2   technologies at least in part through the auspices of the International Telecommunications

3   Union ("ITU").  *Id.*, ¶ 36.  As a condition of participating in the standard setting process,

4   Motorola declared to the ITU that it was "prepared to grant a license to an unrestricted number

5   of applicants on a worldwide, non-discriminatory basis and on reasonable terms and

6   conditions."  *Id.*, ¶¶ 4, 52.

7   **C.      Motorola Voluntarily Participated in Setting the Relevant Standards.**

8          Motorola actively participated in the standard setting process for both the WLAN and

9   H.264 standards, and induced the relevant SDO to include in each standard technology over

10  which Motorola claims a patent. *Id.*, ¶¶ 37-54.  Microsoft, IEEE, and ITU relied on Motorola's

11  commitment that it would make licenses available to applicants on RAND terms. *Id.*, ¶¶ 56,

12  60.  In fact, IEEE's and ITU's decision to issue the standards despite Motorola's claim to have

13  relevant patented technology inherently rested upon Motorola's commitment to offer any such

14  technology on RAND terms. *Id.*, ¶¶ 44, 50.  The reverse is also true.  Had the SDOs been

15  aware that Motorola would abuse its resulting power by demanding exorbitant royalties, the

16  SDOs logically would taken a different technical path, and Motorola would not be the holder

17  of allegedly essential patents. *Id.*

18  **D.      Motorola has Breached its Contract with the SDOs and Microsoft by Refusing to
            Make Licenses Available to Microsoft on RAND Terms.**

19         In reliance on the commitments made by Motorola and other suppliers that they offer

20  licenses for any patents they claimed were essential or necessary to implementation of the

21  standards available on RAND terms, Microsoft began providing its WLAN and H.264

22  capability in its Xbox 360 video game consoles, Windows 7 operating system, Windows Phone

23  7, and other fields. *Id.*, ¶ 57.

24

25

MICROSOFT'S OPPOSITION TO MOTOROLA
AND MOTOROLA MOBILITY'S MOTION TO
DISMISS - 5
CASE NO. 10-1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

1       Motorola breached its contracts with these SDOs and Microsoft by demanding unfair

2 and discriminatory terms for licenses of its identified patents. *Id.*, ¶ 78.

3       By letter dated October 21, 2010, Motorola "offer[ed] to grant Microsoft a worldwide

4 non-exclusive license under Motorola's portfolio of patents and pending applications having

5 claims that may be or become Essential Patent Claims (as defined in section 6.1 of the IEEE

6 bylaws) for compliant implementation of the IEEE 802.11 Standards." Declaration of Norman

7 H. Beamer in Support of Motorola, Inc. and Motorola Mobility, Inc.'s Motion to Dismiss

8 ("Beamer Dec."), Ex. 1. Motorola said it would license the patents at a royalty rate of 2.25

9 percent per unit, calculated using the price of the end-product (Xbox, computer, smartphone,

10 etc.), as opposed to the component software, let alone the supposedly patented feature, itself.

11 *Id.*, Ex. 1, 2. These royalty rates are excessive, discriminatory, and "wholly disproportionate to

12 the royalty rate that its patents should command under any reasonable calculus." Complaint,

13 ¶¶ 6, 65.

14       Motorola left the offer open for 20 days, and asked Microsoft to "confirm whether

15 Microsoft accepts this offer." Beamer Dec., Ex. 1. Motorola did not indicate in the letter that

16 it would consider or negotiate other terms for licensing its portfolio. *Id.*

17       On October 29, 2010, Motorola sent another letter in which, on substantially the same

18 terms, it offered to grant Microsoft "a worldwide nonexclusive license under Motorola's

19 portfolio of patents and pending applications covering the subject matter of ITU-T

20 Recommendation H.264." Beamer Dec., Ex. 2. Again, Motorola stated that this offer would

21 be left open for 20 days, and asked Microsoft to "confirm whether Microsoft accepts this

22 offer." *Id.* Motorola again did not indicate that it would consider or negotiate other terms for

23 licensing its portfolio. *Id.*

24       In these letters, Motorola discriminatorily chose Microsoft's Xbox product line and

25 other multi-function, many-featured products and software, such as Windows 7, Windows

MICROSOFT'S OPPOSITION TO MOTOROLA
AND MOTOROLA MOBILITY'S MOTION TO
DISMISS - 6
CASE NO. 10-1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

1  Phone 7, and products incorporating Microsoft software, for the purpose of extracting

2  unreasonable royalties from Microsoft.  Complaint, ¶ 65.  Microsoft has alleged that, as a result

3  of Motorola's breach, Microsoft has suffered (and will continue to suffer) significant injuries to

4  its business and property, including lost profits, loss of customers and potential customers, and

5  loss of goodwill and product image.  *Id.*, ¶ 79.

<div align="center">

### III.   LEGAL ARGUMENT

</div>

7  **A.      Relevant Legal Standards.**

8       1.      *Fed. R. Civ. P. 12(b)(6).*

9       In considering a motion to dismiss under Rule 12(b)(6), the court must construe the

10  complaint in the light most favorable to the non-moving party.  *Livid Holdings Ltd. v. Salomon*

11  *Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must accept all well-pleaded

12  facts as true and draw all reasonable inferences in favor of the plaintiff. *Parks School of*

13  *Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995).

14       "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

15  accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129

16  S. Ct. 1937, 1949 (2009), *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955

17  (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows

18  the court to draw the reasonable inference that the defendant is liable for the misconduct

19  alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks

20  for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  In the event the

21  court finds that dismissal is warranted, the court should grant the plaintiff leave to amend

22  unless amendment would be futile. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

23       2.      *Fed. R. Civ. P. 12(b)(1).*

24       Motorola has also moved to dismiss Microsoft's breach of contract claim as not yet

25  ripe.  "The basic rationale of the ripeness doctrine is to prevent courts, through avoidance of

MICROSOFT'S OPPOSITION TO MOTOROLA
AND MOTOROLA MOBILITY'S MOTION TO
DISMISS - 7
CASE NO. 10-1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1  premature adjudication, from entangling themselves in abstract disagreements." *Scott v.*

2  *Pasadena Unified Sch. Dist.,* 306 F.3d 646, 662 (9th Cir. 2002) (internal quotation marks

3  omitted).  A claim is ripe for adjudication where "there is a substantial controversy, between

4  parties having adverse legal interests, of sufficient immediacy and reality to warrant the

5  issuance of a declaratory judgment." *Principal Life Insurance Co. v. Robinson,* 394 F.3d 665,

6  669 (9th Cir. 2005).  As explained herein, Microsoft's breach of contract claim became ripe as

7  soon as Motorola demanded excessive and discriminatory royalties for its allegedly necessary

8  patent claims.

9  **B.     Microsoft's Breach of Contract Claim Should Not Be Dismissed.**

10         1.     *Microsoft has Stated a Claim for Breach of Contract.*

11         To state a claim for breach of contract under Washington law, a plaintiff need allege

12  only (1) a valid contract, (2) a breach of a duty arising under that contract, and (3) resulting

13  damage. *N.W. Indep. Forest Mfrs. v. Dep't of Labor & Indust.,* 78 Wn. App. 707, 712, 899

14  P.2d 6 (1995).  Microsoft's complaint does so.  Motorola has admitted for purposes of this

15  motion that it has a valid contract with Microsoft.  Motion at 2, n.2; *see also* Complaint, ¶¶ 75-

16  76.  Microsoft also alleged in some detail how Motorola has breached those contracts by

17  failing to "offer licenses to its identified patents under reasonable rates, with reasonable terms,

18  and on a non-discriminatory basis," and has alleged that Microsoft suffered damages as a result

19  of Motorola's breach. *Id.*, at ¶78; *see also* ¶¶ 64-73.  These allegations state a claim for relief

20  under Rule 12(b)(6).  Specifically, they state such a claim for breach of the RAND

21  requirements.

22         In *Broadcom Corp. v. Qualcomm Inc.*, the Third Circuit analyzed the rationale for

23  requiring that patent holders who participate in standard setting offer licenses on RAND

24  royalty rates:

25

MICROSOFT'S OPPOSITION TO MOTOROLA
AND MOTOROLA MOBILITY'S MOTION TO
DISMISS - 8
CASE NO. 10-1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1

> Firms may become locked into a standard requiring the use of a competitor's
> patented technology. The patent holder's IPRs, if unconstrained, may permit it

2

> to demand supracompetitive royalties. It is in such circumstances that measures
> such as FRAND commitments become important safeguards against monopoly

3

> power.

4

501 F.3d 297, 314 (3d. Cir. 2007).

5

A patent holder's failure to meet its RAND commitments by demanding excessive

6

royalties gives rise to a breach of contract claim regardless of whether subsequent negotiation

7

may produce a different offer. In *Research in Motion Limited v. Motorola, Inc.*, Research in

8

Motion ("RIM") sued Motorola alleging, among other things, that Motorola had breached "the

9

commitments Motorola made to IEEE and [another SDO] to license its essential patents on

10

FRAND terms." 644 F. Supp. 2d 788, 791 (N.D. Tex. 2008). Motorola moved to dismiss

11

RIM's complaint, arguing that all RIM had alleged was "that the two parties have not yet

12

agreed to FRAND terms," and that "just because the parties have not yet settled on FRAND

13

terms does not mean Motorola is unwilling to license the patent on FRAND terms." *Id.*, 644 F.

14

Supp. 2d at 797. The court rejected this argument, finding:

15

> RIM's complaint alleges that Motorola 'has refused to extend FRAND
> ...licensing terms to RIM for any of Motorola's purported essential

16

> patents...and has instead demanded of RIM terms that are unfair, unreasonable,
> and on information and belief, discriminatory.' Motorola's argument merely

17

> contradicts the factual accuracy of this statement. At this stage of the case, the
> court takes RIM's pleadings as true. RIM has adequately pled that Motorola did

18

> not honor its promise to license on FRAND terms. Motorola's contention
> otherwise is entitled to no weight on a Rule 12(b)(6) motion.

19

20

*Id.* (internal citations omitted). The *RIM* court's analysis applies with equal force here, and

21

requires that the Court deny Motorola's motion.

22

Further, this analysis is clearly correct. Motorola's conduct is contrary to the

23

fundamental purpose of the royalty requirements of the IEEE. In effect, Motorola argues that

24

it can make an exorbitant, bad faith demand as the first step in a negotiating process—i.e.,

25

Motorola argues that it can breach its duty to offer reasonable terms in order to gain an edge in

MICROSOFT'S OPPOSITION TO MOTOROLA
AND MOTOROLA MOBILITY'S MOTION TO
DISMISS - 9
CASE NO. 10-1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700  FAX. (206) 623-8717

1   any negotiation.  This conduct is the very abuse of power at which the IEEE standards are

2   aimed.  *See W.L. Gore & Assoc., Inc. v. Carlisle Corp.*, 529 F.2d 614, 623 (3d Cir. 1976)

3   (noting that "[a] royalty demand which is so high as to preclude acceptance of a license offer

4   is, after all, not appreciably different from a refusal to license upon any terms.").

5       Microsoft's response is precisely the correct response to such tactics—i.e., this action is

6   designed to make such bad faith demands futile, to secure a declaration that Motorola's

7   conduct is in breach of its obligations, to enjoin such conduct and to recover for any resulting

8   damage.  Responding to a bad faith demand with a good faith offer would encourage further

9   implementation by Motorola of the same strategy it is using here and apparently used in

10  *Research in Motion*, 644 F. Supp. 2d at 797.

11      In the face of a complaint clearly stating a claim for relief, Motorola raises several other

12  fact-based defenses that can be summarily rejected.

13      Motorola's contention that Microsoft's complaint should be dismissed because

14  Motorola substantially complied with its RAND obligations presents a question of fact that is

15  inappropriate for resolution on a motion to dismiss.  *See Mike M. Johnson, Inc. v. County of*

16  *Spokane*, 150 Wn.2d 375, 398, 78 P.3d 161 (2003) (recognizing that whether a party has

17  substantially complied with contractual requirements is a question of fact).  *Wapato Heritage,*

18  *LLC v. U.S. Dep't of Interior*, No. cv-08-177-RHW, 2008 WL 5046447 (E.D. Wash., Nov. 21,

19  2008), cited by Motorola, holds likewise.  In *Wapato Heritage*, the court granted a defendant's

20  motion for summary judgment after weighing all of the evidence presented by the parties and

21  finding that the plaintiff had not substantially complied with contract requirements for

22  exercising an option to extend a tribal lease.  Motorola's bald assertion that it substantially

23  complied "with any RAND obligations" simply contradicts (in a conclusory manner that would

24  not even raise a fact question on summary judgment) Microsoft's specific factual allegations to

25

MICROSOFT'S OPPOSITION TO MOTOROLA
AND MOTOROLA MOBILITY'S MOTION TO
DISMISS - 10
CASE NO. 10-1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1  the contrary.  The argument cannot sustain a motion to dismiss.  *Research in Motion*, 644 F.

2  Supp. 2d at 797.

3      Motorola's remaining argument, that Microsoft breached its supposed obligation to

4  negotiate in good faith with Motorola before filing suit, must also be summarily rejected.  First,

5  Motorola's argument presupposes that Motorola had not breached its obligations by making a

6  bad faith offer on non-RAND terms.  Microsoft owed no obligation to make a good faith

7  proposal in response to a bad faith offer constituting a breach of the contract at issue.  *See, e.g.,*

8  *Moore v. Blue Frog Mobile, Inc.*, 153 Wn. App. 1, 9-10, 221 P.3d 913 (2009) (a party's

9  material breach of its contract excuses the other party of its obligation to perform).  In this

10  case, Motorola's demand for non-RAND terms is precisely the evil at which the RAND

11  requirements were aimed.  At most this argument raises the same basic fact issue at the heart of

12  the case:  whether Motorola's demand was on RAND terms.

13      2.    *Microsoft's Breach of Contract Claim is Ripe for Adjudication.*

14      As noted above, the ripeness doctrine requires only that there be a substantial

15  controversy between the parties that is immediate and real, as opposed to abstract or

16  hypothetical.  *Scott*, 306 F.3d 662; *Principal Life Ins.*, 394 F.3d at 669.  There is nothing

17  abstract or hypothetical about Microsoft's breach of contract claim.  It is not contingent on any

18  future occurrences.

19      Microsoft alleges that Motorola demanded non-RAND terms as a condition of licensing

20  its technology and that doing so breached Motorola's contract obligations with resulting

21  damage.  Its demand was unequivocal, undisputed and, as alleged, unfair, discriminatory and in

22  bad faith.  These allegations facially satisfy applicable ripeness criteria.  *Putz v. Golden*, No.

23  C10-0741JLR, 2010 U.S. Dist. LEXIS 129411, **25-26 (W.D. Wash., Dec. 7, 2010) (J.

24  Robart) (case was ripe for adjudication where plaintiff had alleged a breach of contract and

25  resulting damage); *see also BrowserCam Inc. v. Gomez, Inc.*, No. 08-02959 WHA, 2008 U.S.

MICROSOFT'S OPPOSITION TO MOTOROLA
AND MOTOROLA MOBILITY'S MOTION TO
DISMISS - 11
CASE NO. 10-1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1    Dist. LEXIS 82159, **18-19 (N.D. Cal., Sept. 26, 2008) (claim for breach of contract was ripe

2    where plaintiff alleged that defendant breached contract and that plaintiff was damaged as a

3    result).

4         The primary question to be resolved is whether Motorola's offer was reasonable and

5    non-discriminatory.  Several courts have recognized their role in determining whether a party's

6    offer satisfies its obligation to offer RAND royalty rate.  *See, e.g.*, *Broadcom Corp.*, 501 F.3d

7    at 314 n.8; *Ericsson Inc. v. Samsung Electronics Co., Ltd.*, No. 2:06-CV-63, 2007 U.S. Dist.

8    LEXIS 29257 (E.D. Tex., April 20, 2007); *ESS Tech., Inc., v. PC-Tel, Inc.*, No. C-99-20292

9    RMW, 2001 U.S. Dist. LEXIS 26348 (N.D. Cal., Nov. 28, 2001).  Factors in resolving this

10   issue may include competitive technologies at the time of the relevant standard setting events,

11   other licenses granted under the same or similar SDO intellectual property rights requirements,

12   and the relative import of the accused features in the accused products when considered in the

13   context of alleged innovation and other licensed products.  *See e.g.*, Cramer Dec., Ex. 1; Ex. 2,

14   at p. 21.

15        Contrary to Motorola's argument at footnote 10 of its Motion, even outside of the

16   RAND context, royalty rates generally may be based on the price of the end product only

17   where "the patent-related feature is the 'basis for customer demand.'"  *Lucent Technologies,*

18   *Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009) *citing Rite-Hite Corp. v. Kelley Co*,

19   56 F.3d 1538 (Fed. Cir. 1995) (emphasis supplied).  As Microsoft alleges, none of the patents

20   at issue here enables Microsoft's end-products' core functionalities; each end-product could

21   operate without Motorola's allegedly patented technology, making a royalty based on the price

22   of the end-products unreasonable and inappropriate.  Complaint, ¶¶66-69.  Moreover, even if it

23   were appropriate to measure the royalty based on the price of the end-product as opposed to the

24   specific patented feature, the royalty demanded by Motorola here was manifestly excessive.

25   *See Lucent*, 580 F.3d at 1338 (noting that when determining the proper royalty rate for a patent

MICROSOFT'S OPPOSITION TO MOTOROLA
AND MOTOROLA MOBILITY'S MOTION TO
DISMISS - 12
CASE NO. 10-1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1  allegedly used by a feature of Microsoft's Outlook email program, "[t]he district court

2  implicitly recognized that any damages computation based on the value of the entire computer

3  using common royalty rates (e.g., 1-5%) would be excessive.").

4        Motorola committed to the IEEE that its licenses would "be made available to an

5  unrestricted number of applicants on a worldwide basis without compensation or under

6  reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair

7  discrimination." Complaint, ¶¶ 2-3. Likewise, Motorola declared to the ITU that it was

8  "prepared to grant a license to an unrestricted number of applicants on a worldwide, non-

9  discriminatory basis and on reasonable terms and conditions." *Id.*, ¶ 4. Implicit in each of

10 these agreements was Motorola's obligation to act in good faith. *Badgett v. Sec. State Bank*,

11 116 Wn.2d 563, 569, 807 P.2d 356 (1991) ("There is in every contract an implied duty of good

12 faith and fair dealing."). Yet now Motorola appears to argue that its only obligation is to make

13 an offer, no matter how unreasonable, and that such a bad faith offer triggers a duty on the part

14 of Microsoft either to accede or to start negotiations in an arena defined by the bad faith offer.

15 Motion at 6 (arguing that "Motorola's opening offer–no matter how unacceptable" cannot

16 create a justifiable controversy ripe for resolution by this Court).

17       Motorola has not cited any case law holding a) that Microsoft had a duty to negotiate in

18 the face of an exorbitant royalty demand such as the one made by Motorola here or b) that the

19 failure to respond to a bad faith offer defeats ripeness. The IEEE-SA and ITU policies are to

20 the opposite effect. They require a RAND offer. A breach by Motorola does not trigger a duty

21 on Microsoft's part to perform; it excuses any such duty. An exorbitant, discriminatory offer

22 without more is a clear breach of Motorola's duties and epitomizes the abuse the standards are

23 designed to prevent. It changes the negotiating playing field—and is obviously designed to do

24 so. In fact, Motorola admits that such egregious royalty demands are its "standard" approach.

25

MICROSOFT'S OPPOSITION TO MOTOROLA
AND MOTOROLA MOBILITY'S MOTION TO
DISMISS - 13
CASE NO. 10-1823

1    This dispute is ripe under the applicable legal standards.  This lawsuit is the appropriate

2  response to Motorola's apparently standard tactic of seeking to use the power conferred by the

3  standards to demand excessive royalties and then negotiate from that improper position.

4  Microsoft is entitled to start the negotiations from an offer that meets the RAND requirements.

5    Further,  Motorola's offer letters are not, on their face, anything other than demands

6  setting forth the conditions on which Motorola is willing to "grant Microsoft a worldwide

7  nonexclusive license under Motorola's portfolio of patents and pending applications" to certain

8  technologies.  Beamer Dec., Ex. 1, 2.  Both letters specifically state that Motorola would

9  "leave this offer open for 20 days," and asked Microsoft to "confirm whether Microsoft

10  accepts the offer."  *Id.*  Nothing in either letter suggested that Motorola was willing to offer

11  licenses on more favorable terms.  Their import was the opposite.

12    Motorola had an obligation to offer licenses to its purportedly essential or necessary

13  patent portfolios to Microsoft on RAND terms.  It failed to do so.  There are no future

14  contingencies upon which Microsoft's claims depend.  This dispute is fit for adjudication.[2]

15    3.    *Microsoft does not seek an Advisory Opinion.*

16    Microsoft is not seeking an advisory opinion as Motorola contends.  A court's

17  determination of whether a party has violated its obligation to offer RAND royalty rates does

18  not necessarily require a ruling on whether the patent-holder's claimed patents are "essential."

19  *Ericsson*, 2007 U.S. Dist. LEXIS 29257 at **4-6; *Nokia Corp. v. Qualcomm, Inc.*, No. 06-509-

20  JJF, 2006 U.S. Dist. LEXIS 61383 (D. Del., Aug. 29, 2006).

21
_____
22  [2] Motorola argues in passing that Microsoft anticipatorily breached the parties' contract by filing this suit.  But, anticipatory breach is a question of fact that cannot be determined at this stage.  *VersusLaw, Inc. v. Stoel Rives,*

23  *L.L.P.*, 127 Wn. App. 309, 321, 111 P.3d 866 (2005) ("The question of anticipatory repudiation is one of fact  and can be decided on summary judgment only 'if, taking all evidence in the light most favorable to the non-moving party, reasonable minds can reach only one conclusion.') (internal citations omitted).  Moreover, the contention

24  lacks merit since, as alleged by Microsoft, Motorola's bad faith offer excuses any otherwise required reciprocal performance unless and until Motorola cures its breach.  In any event, the Court should disregard Motorola's

25  argument, as it is based on an unpublished Washington case, *Dequilettes v. Moffat*, 2004 Wash. App. LEXIS 283 (Mar. 1, 2004).  Unpublished Washington appellate court decisions have no precedential value.  RCW 2.06.040.

MICROSOFT'S OPPOSITION TO MOTOROLA
AND MOTOROLA MOBILITY'S MOTION TO
DISMISS - 14
CASE NO. 10-1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1    In *Nokia*, the court remanded a plaintiff's complaint alleging that the defendant violated

2    its obligation to offer RAND royalty rates because it did not raise substantial federal issues of

3    patent law.  The court found that "resolution of this claim depends on interpretation of the

4    terms of the licensing agreement, rather than interpretation of the patents."  2006 U.S. Dist.

5    LEXIS 61383 at *6.  In *Ericsson*, the court granted a motion to separately try the parties'

6    RAND dispute before trying the parties' patent disputes.  The court, relying on *Nokia*,

7    recognized that a RAND dispute "standing alone, implicates no substantial question of federal

8    patent law," and that trying the RAND issues first might "alleviate many of the primary

9    differences" between the parties.  2007 U.S. Dist. LEXIS 29257 at **6-7.

10    Here, just as in *Ericsson* and *Nokia*, the Court's determination of whether Motorola has

11    violated its obligation to offer RAND royalty rates is not dependent on a determination that the

12    underlying patents are essential.  The Court's order will be enforceable just as any other order

13    entered by the Court would be.  Motorola's motion should be denied.[3]

14    **C.    Microsoft's Remaining Claims Should Not Be Dismissed.**

15    1.    *Microsoft Is Entitled to Plead and Prove Promissory Estoppel in the Alternative*

16    *to its Breach of Contract Claim.*

17    At this stage of the pleadings, before the Court formally rules on the merits of any of

18    Microsoft's claims, Microsoft's promissory estoppel claim is proper even though accompanied

19    by a breach of contract claim (Complaint, ¶¶ 81-87).  The claim cannot at this point be

20    dismissed on the ground that "promissory estoppel applies only when no valid contract exists."

21    Motorola Mot. at 9 (citing Washington cases).

22

23    _____

24    [3] Further, as Motorola noted in its motion, it filed a complaint for patent infringement against Microsoft in the
Western District of Wisconsin, *Motorola Mobility, Inc., et anon. v. Microsoft Corporation*, No. 10-cv-700 (W.D.
Wisc.), on November 10, 2010 relating to the same patents at issue here.  Microsoft filed motions to dismiss or
transfer that case to this district on December 21, 2010.  If the Wisconsin court grants Microsoft's motion,
Motorola will be required to litigate its patent infringement claims before this Court, likely as part of this suit.

25

MICROSOFT'S OPPOSITION TO MOTOROLA
AND MOTOROLA MOBILITY'S MOTION TO
DISMISS - 15
CASE NO. 10-1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

1    Microsoft is entitled to allege, in the alternative, all causes of actions that the factual

2  proof may ultimately support. Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more

3  statements of a claim or defense alternatively or hypothetically"); 8(d)(3) ("A party may state

4  as many separate claims or defenses as it has, regardless of consistency"); Wash. Civ. R. 8(a)

5  ("Claims for Relief. . . . Relief in the alternative or of several different types may be

6  demanded").

7    In *Flower v. T.R.A. Industries, Inc.*, 127 Wn. App. 13, 111 P.3d 1992 (2005), the court

8  reversed a summary judgment dismissing the plaintiff's breach of contract claim, and held the

9  evidence presented issues of fact not only as to that claim *but also* his alternative claims of

10  promissory estoppel and negligent misrepresentation. *Id.*, 111 P.3d at 1201-1202.  The court

11  held all three claims "may be presented at trial." *Id.* at 1202.  Similarly, in *Farm Crop Energy,*

12  *Inc. v. Old National Bank of Wash.*, 109 Wn.2d 923, 750 P.2d 231 (1988), the Washington

13  Supreme Court held the trial court should have fully instructed the jury on both alternative

14  claims of breach of a loan agreement and promissory estoppel.  The court explained that even

15  if the jury concluded the defendant was not liable for revoking the loan agreement, "the jury

16  could still find that [the plaintiff] changed position in reliance on [defendant's statements] and

17  award damages pursuant to a promissory estoppel theory." 750 P.2d at 932.  Microsoft is

18  entitled to plead and present evidence on both its breach of contract and promissory estoppel

19  claims.  Neither claim may be dismissed at this stage.

20    2.    *Microsoft Has Validly Pleaded Waiver as a Basis for Injunctive Relief.*

21    Motorola misreads Microsoft's cause of action based on waiver (Complaint, ¶¶ 88-91),

22  arguing that waiver can be a defense only, not a cause of action (Motorola Mot. at 10).

23  However, Microsoft's waiver allegation is a predicate for a claim; it is not advanced as an

24  independent claim.  Microsoft alleges waiver as the basis for a claim for injunctive relief.  As

25  alleged, Motorola waived any right it might otherwise have to make an opening demand for

MICROSOFT'S OPPOSITION TO MOTOROLA
AND MOTOROLA MOBILITY'S MOTION TO
DISMISS - 16
CASE NO. 10-1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

1    exorbitant royalties in its declarations to IEEE and to the ITU. Complaint, ¶¶ 89-90. Microsoft

2    alleges that it justifiably relied on this waiver and that, unless the Court enjoins Motorola from

3    demanding the prohibited compensation, Microsoft will be irreparably harmed. *Id.* ¶ 91.

4    Those allegations state a valid claim for injunctive relief, and must be viewed in the light most

5    favorable to Microsoft. *See Livid Holdings, supra,* 416 F.3d at 946.

6
        3.    *Microsoft's Declaratory Judgment Claim May Not Be Dismissed at the*
7             *Pleading Stage.*

8        Motorola misconstrues Microsoft's claim for declaratory judgment (Complaint, ¶¶ 92-

9    95), and cites inapposite authorities, in arguing that that claim should be dismissed because it

10    merely seeks a declaration of liability for damages sought in other claims. Motion at 10. First,

11    the claim does not seek a declaration of liability for damages. It seeks a determination that

12    Motorola is wrongfully seeking to withhold a license to its patents except on bad faith terms in

13    breach of its commitment to the IEEE-SA Standards Board and the ITU. Complaint, ¶ 93.

14        Second, as explained above with respect to the promissory estoppel claim, at this stage

15    of the pleadings Microsoft may advance alternative theories of relief.

16        Third, that a claim for declaratory relief "is merely a counterpart of" a party's other

17    causes of action is not a valid objection. Motion at 10. The Declaratory Judgments Act

18    provides that, "[i]n a case of actual controversy . . . any court of the United States . . . may

19    declare the rights and other legal relations of any interested party seeking such declaration,

20    *whether or not further relief is or could be sought.*" 28 U.S.C.A. § 2201(1) (emphasis added).

21    Rule 57 of the Federal Rules of Civil Procedure similarly states, "[t]he existence of another

22    adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."[4]

23    Here there are good reasons for the Court to include in the relief awarded a declaration that

---

24
[4] *See also* RCW 7.24.010 ("Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed."); Wash. Civ. R. 57

25    ("The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate.").

MICROSOFT'S OPPOSITION TO MOTOROLA
AND MOTOROLA MOBILITY'S MOTION TO
DISMISS - 17
CASE NO. 10-1823

1   Motorola's conduct was in bad faith and a breach of its obligations, and to order the conduct

2   stopped, especially in light of the indications that this abusive conduct is standard operating

3   procedure for Motorola.

4          In *Powell v. McCormack*, 395 U.S. 486, 517-18, 89 S. Ct. 1944 (1969) (citations

5   omitted), the U.S. Supreme Court held that "[t]he availability of declaratory relief depends on

6   whether there is a live dispute between the parties, . . . and a request for declaratory relief may

7   be considered independently of whether other forms of relief are appropriate." The Court

8   stated that a declaratory judgment can "be used as a predicate to further relief, including an

9   injunction." *Id.* at 498-99.

10         Microsoft's claims for injunctive and declaratory relief are highly appropriate under the

11  circumstances. In any case, Microsoft is entitled to plead claims for both monetary and

12  declaratory relief. The Ninth Circuit has held that declaratory relief must be considered even

13  when monetary relief is sought, in part because "declarations can serve an important

14  educational function for the public at large as well as for the parties to the lawsuit." *Greater*

15  *Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1112 (9th Cir. 1987), *citing*

16  *Bilbrey v. Brown*, 738 F.2d 1462, 1471 (9th Cir. 1984). In *Zolin*, deaf persons challenged a

17  county court's refusal to provide interpreters that would enable them to serve as jurors. The

18  Ninth Circuit explained in *Zolin* that where a plaintiff is subjected to unlawful conduct,

19  declaratory relief may be considered even if monetary relief is ultimately determined to be

20  unavailable. The court added, "[s]uch [declaratory] relief might be appropriate as a vindication

21  of plaintiffs' position and as a public statement of [such persons'] rights . . . . It may even

22  forestall future litigation." *Id.* at 1113.

23         The Ninth Circuit's reasoning applies here, where many companies other than

24  Microsoft are in fact likely to be subjected to Motorola's "standard" approach to royalty

25  demands, and where Motorola's position has already been rejected in the *Research in Motion*

MICROSOFT'S OPPOSITION TO MOTOROLA
AND MOTOROLA MOBILITY'S MOTION TO
DISMISS - 18
CASE NO. 10-1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1   case. Declaratory relief is highly appropriate to set a clear "standard" that demanding non-

2   RAND terms in order to tilt the negotiating field is not a permissible tactic. Among those who

3   would benefit in the future from such a declaration is Microsoft itself.

4         The two unpublished district court decisions on which Motorola relies (Motion at 10)

5   do not support dismissal of Microsoft's declaratory relief claim at the pleading stage.

6   Motorola cites *Degenhart v. AIU Holdings, Inc.*, No. C10-5172RBL, 2010 U.S. Dist. LEXIS

7   125524 (W.D. Wash., Nov. 26, 2010), where plaintiffs' insurer paid the cost of repairs for

8   damage from an auto accident, and plaintiffs then sued to recover the diminished value of the

9   vehicle. Plaintiffs sought damages for breach of their insurance contract, and also pleaded a

10   claim for declaratory judgment that would describe the process by which those breach of

11   contract damages are determined and paid. *Id*. at *4. Judge Leighton stated that the claim

12   "mirrored" the relief sought in the plaintiff's other claims, and cited *Swartz v. KPMG LLP*, 476

13   F.3d 756, 766 (9th Cir. 2007) (holding court may dismiss a declaratory relief claim that merely

14   "seeks a declaration of defendant's liability for damages sought in the plaintiff's other causes

15   of action"). Judge Leighton nevertheless denied the motion to dismiss as premature since it

16   would not alter the course of the litigation, and denied it without prejudice.

17         In this case, by contrast, Microsoft's declaratory relief claim does not merely seek a

18   declaration of liability for past damages. Microsoft alleges ongoing wrongful conduct that

19   threatens imminent and substantial future harm for which declaratory relief may be the only

20   effective remedy. *See, e.g.*, Complaint, ¶ 79. Microsoft also seeks a declaration of a royalty

21   that would be consistent with Motorola's commitments. *Id.*, ¶ 9.

22         Nor does *Permpoon v. Wells Fargo Bank Nat'l Ass'n*, No. 09-CV-01140-H (BLM),

23   2009 U.S. Dist. LEXIS 89723 (S.D. Cal., Sept. 29, 2009), support Motorola's motion. The

24   court, on motions to dismiss, first determined that plaintiff's complaint failed to state a claim

25   for fraud, breach of fiduciary duty, or breach of the covenant of good faith and fair dealing, and

MICROSOFT'S OPPOSITION TO MOTOROLA
AND MOTOROLA MOBILITY'S MOTION TO
DISMISS - 19
CASE NO. 10-1823

1  dismissed each of those claims. *Id.* at *3-5. Based on those rulings, the court dismissed

2  plaintiff's claim for declaratory relief because it was "entirely commensurate with" the relief

3  sought in the other claims that the court had dismissed on the merits. *Id.* at *5. The decision

4  would be pertinent here only if the Court were first to determine that Microsoft's factual

5  allegations and causes of action failed to state any theory of liability. And, as noted above, the

6  declaratory relief Microsoft seeks is not "entirely commensurate with" its other causes of

7  action.

8  ### III.   CONCLUSION

9       Microsoft's complaint states a claim for relief against Motorola and is ripe for

10  adjudication. For the reasons set forth herein, Microsoft respectfully requests that the Court

11  deny Motorola's motion to dismiss.

12       DATED this 3rd day of January, 2011.

13               DANIELSON HARRIGAN LEYH & TOLLEFSON LLP

14

15               By _____

16                  Arthur W. Harrigan, Jr., WSBA #1751
                Christopher Wion, WSBA #33207

17                  Shane P. Cramer, WSBA #35099

18               T. Andrew Culbert, WSBA #35925
             David E. Killough, WSBA #40185

19               MICROSOFT CORPORATION
             1 Microsoft Way

20               Redmond, WA  98052

21               Phone:  425-882-8080
             Fax:  425-869-1327

22

23

24

25

MICROSOFT'S OPPOSITION TO MOTOROLA
AND MOTOROLA MOBILITY'S MOTION TO
DISMISS - 20
CASE NO. 10-1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

David T. Pritikin, *Pro Hac Vice*
Richard A. Cederoth, *Pro Hac Vice*
Douglas I. Lewis, *Pro Hac Vice*
John W. McBride, *Pro Hac Vice*
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Phone: 312-853-7000
Fax: 312-853-7036

Brian R. Nester, *Pro Hac Vice*
Kevin C. Wheeler, *Pro Hac Vice*
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
Telephone: 202-736-8000
Fax: 202-736-8711

Counsel for Plaintiff Microsoft Corp.

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  Philip S. McCune and Lynn M. Engel at Summit Law Group, PLLC.

Linda Bledsoe

MICROSOFT'S OPPOSITION TO MOTOROLA
AND MOTOROLA MOBILITY'S MOTION TO
DISMISS - 22
CASE NO. 10-1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717