The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION, a Washington corporation,

Plaintiff,

v.

MOTOROLA, INC., and MOTOROLA MOBILITY, INC.,

Defendants.

CASE NO. C10-1823-JLR

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S REPLY TO MICROSOFT'S OPPOSITION TO MOTION TO DISMISS

**NOTED ON MOTION CALENDAR: Friday, January 7, 2011**

**ORAL ARGUMENT REQUESTED**

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S REPLY TO MICROSOFT'S OPPOSITION TO MOTION TO DISMISS
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ........ 1

II. MICROSOFT'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED ........ 2

A. Microsoft's Breach of Contract Claim Fails to State a Plausible Claim ........ 2

B. Microsoft's Breach of Contract Claim Is Not Ripe for Adjudication ........ 6

III. MICROSOFT'S OTHER CLAIMS SHOULD BE DISMISSED ........ 8

IV. CONCLUSION ........ 11

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S REPLY TO MICROSOFT'S OPPOSITION TO MOTION TO DISMISS - i
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622 (9th Cir. 1991) .......... 10

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) .......... 1

*Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007) .......... 7

*Broadcom Corp. v. Qualcomm Inc.*, No. 05-3350MLC (D.N.J. Nov. 2, 2007) .......... 7

*City of Cheney v. Gardener*, No. 20202-0-III, 2002 WL 31267780 (Wash. Ct. App. Oct. 10, 2002) .......... 9

*Columbia Park Golf Course, Inc. v. City of Kennewick*, No. 07-cv-5054EFS, 2008 WL 4830820 (E.D. Wash. Nov. 5, 2008, amended Nov. 7, 2008) .......... 9

*Farm Crop Energy, Inc. v. Old Nat'l Bank of Wash.*, 750 P.2d 231 (1988) .......... 9

*Flower v. T.R.A. Indus., Inc.*, 111 P.3d 1192 (2005) .......... 9

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) .......... 3, 4

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) .......... 10

*Research in Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788 (N.D. Tex. 2008) .......... 5, 6

*S. Cal. Painters & Allied Trades v. Rodin & Co.*, 558 F.3d 1028 (9th Cir. 2009) .......... 10

*Tamplenizza v. Josephthal & Co.*, 32 F. Supp. 2d 702 (S.D.N.Y. 1999) .......... 10

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S REPLY TO MICROSOFT'S OPPOSITION TO MOTION TO DISMISS - ii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*Topics Entm't Inc. v. Rosetta Stone Ltd.*, No. C09-1408-RSL, 2010 WL 55900 (W.D. Wash. Jan. 4, 2010)....10

*W.L. Gore & Assocs., Inc. v. Carlisle Corp.*, 529 F.2d 614 (3d Cir. 1976) ....6

*Walker v. KFC Corp.*, 728 F.2d 1215 (9th Cir. 1984) ....9

*Wapato Heritage, LLC v. U.S. Dep't of Interior*, No. 08-cv-177-RHW, 2008 WL 5046447 (E.D. Wash. Nov. 21, 2008) ....4

**COURT FILINGS**

*Putz v. Golden*, No. 10-cv-00741JLR, Docket Entry 1 (W.D. Wash. Apr. 30, 2010)....7

*Putz v. Golden*, No. 10-cv-00741JLR, Docket Entry 10 (W.D. Wash. July 15, 2010) ....7

*Putz v. Golden*, No. 10-cv-00741JLR, Docket Entry 22 (W.D. Wash. Sept. 3, 2010)....7

*Research in Motion Ltd. v. Motorola, Inc.*, No. 08-cv-0284K, Docket Entry 1 (N.D. Tex. Feb. 16, 2008)....6

*Research in Motion Ltd. v. Motorola, Inc.*, No. 08-cv-0284K, Docket Entry 33-3 (N.D. Tex. Apr. 10, 2008) ....6

**STATUTES**

Fed. R. Civ. P.
12(b)(1) ....8, 11
12(b)(6) ....8, 11

**OTHER AUTHORITIES**

Francois Leveque and Yann Ménière, *Vagueness in RAND Licensing Obligations is Unreasonable for Patent Owners*, CERNA Working paper, *available at* http://ssrn.com/abstract=1030520 ....7

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S REPLY TO MICROSOFT'S OPPOSITION TO MOTION TO DISMISS - iii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## TABLE OF ABBREVIATIONS AND DEFINITIONS

| | |
|---|---|
| ITU | International Telecommunications Union. |
| IEEE | Institute of Electrical and Electronics Engineers. |
| SDO | Standards Development Organization. These organizations determine and disseminate industry standards used in the telecommunications and electronics fields. |
| RAND | Reasonable And Non-Discriminatory. The term "FRAND" is also used by some organizations and stands for "Fair, Reasonable And Non-Discriminatory." |

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S REPLY TO MICROSOFT'S OPPOSITION TO MOTION TO DISMISS - iv
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

# I. INTRODUCTION

Nothing in Microsoft's opposition brief cures the fatal flaws of Microsoft's complaint. Microsoft's complaint does not plausibly state any claim on which relief can be granted, and it is premature and therefore not ripe for adjudication. Motorola's motion to dismiss Microsoft's complaint should be granted.

Microsoft's principal argument against dismissal is that its allegation that Motorola's initial RAND licensing offer was made in bad faith must be accepted as true. (Opp'n at 1, 2, 8). Not so. The authorities demand that a complaint be based on ***facially plausible*** allegations. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). The test for plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

There is no common sense view of the facts as pleaded that would support Microsoft's bare allegation that Motorola's initial offer was in bad faith. Motorola sent Microsoft two letters offering patent licenses covering Motorola's essential patent portfolios for two industry standards. The letters first offered licenses on the entire portfolios "on a non-discriminatory basis on reasonable terms and conditions ('RAND')" and proposed a 2.25% royalty rate to be applied to each Microsoft product. Microsoft characterizes this as an ultimatum but, in both letters, Motorola further offered: "If Microsoft is only interested in licensing some ***portion*** of this portfolio, Motorola is willing to enter into such a license, also under RAND terms" (emphasis added). No specific rate or other terms were proposed for such partial portfolio licenses, leaving that for negotiation.

Given these letters, as an alleged third party beneficiary of Motorola's RAND contract (an alleged contractual relationship that Motorola accepts for this motion), Microsoft had the full opportunity — and indeed the obligation — to negotiate in good faith if it wanted a RAND license, whether on each entire portfolio or some portion thereof.

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S REPLY TO MICROSOFT'S OPPOSITION TO MOTION TO DISMISS - 1
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

But Microsoft did not negotiate — it did not even respond to Motorola's letters. Instead, Microsoft repudiated Motorola's opening offer by rushing to the courthouse to bring this action based solely on these two initial letters. It would defy common sense, and be contrary to the interest of justice, to allow Microsoft to confect — from the bare fact that these letters were sent — an allegation of bad faith noncompliance with RAND obligations. To hold otherwise would give every potential RAND licensee the ability to instigate a breach of contract litigation upon receiving an opening offer for a RAND license.

The implausibility of Microsoft's allegation of bad faith is intertwined with the fact that Microsoft's claims are premature. Again, the common sense view of the facts, as alleged, tells quite a different story from Microsoft's self-serving gloss. Microsoft claims that it brought this suit because it did not want to succumb to the "negotiating advantage" that Motorola would have gained by opening with a bad faith offer. (Opp'n at 2). To the contrary, the complaint on its face shows that Microsoft did not want a RAND license regardless of who had a negotiating advantage. As a consequence, Microsoft feared that Motorola would assert a patent infringement action against it once Microsoft made this known. By bringing this action, Microsoft merely jumped the gun, bypassing any attempt at negotiation, in order to select a forum of its choice.

## II. MICROSOFT'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED

### A. Microsoft's Breach of Contract Claim Fails to State a Plausible Claim.

As Microsoft in effect admits (Opp'n at 1, 2, 8), its complaint stands or falls on the proposition that Motorola's opening offer must be deemed to have been made in bad faith, merely because the complaint so alleges. But Microsoft's attempts to support this implausible allegation are without merit. As explained in Motorola's opening motion (at 3), the standards organizations do not promulgate any rules or guidelines defining what "RAND" terms are, or provide examples or ranges of acceptable RAND royalties or other terms. Instead, these organizations stress that the actual RAND terms are the responsibility of individual companies to negotiate on a bilateral basis.

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S REPLY TO MICROSOFT'S OPPOSITION TO MOTION TO DISMISS - 2
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Both of Motorola's letters set forth two offers — one for the entire portfolio at a rate of 2.25% applied to the selling price of the product, and the second for whatever portion of the portfolio that might be of interest to Microsoft. The fact that Motorola left the rate, terms and conditions of the second offer open for the parties to negotiate belies any allegation by Microsoft that Motorola's opening offer was made in bad faith. In its opposition, Microsoft simply ignores this offer:

- "Motorola did not indicate in the letter that it would consider or negotiate other terms [than the 2.25% rate] for licensing its portfolio." (Opp'n at 6).
- "Motorola's offer letters are not, on their face, anything other than demands setting forth the conditions on which Motorola is willing to 'grant Microsoft a worldwide nonexclusive license....'" (Opp'n at 14).

Microsoft, moreover, places great reliance on the fact that the 2.25% royalty rate proposed in Motorola's letters was, per Motorola's "standard terms," to be applied to the "price of the end product ... and not on component software." (Opp'n at 1, 6, 12). But there is nothing about this bare fact that would plausibly support an averment of bad faith. In the first place, it is a universal practice in licensing negotiations to use the selling price of the end product as the royalty base. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1338-39 (Fed. Cir. 2009) ("The license agreements admitted into evidence (without objection from Microsoft, we note) highlight how sophisticated parties routinely enter into license agreements that base the value of the patented inventions as a percentage of the commercial products' sales price."). Microsoft attempts to rely on the so-called "Entire Market Value Rule," which restricts royalty awards based on the entire value of the product to cases where the "patent-related feature is the 'basis for customer demand.'" (Opp'n at 12). But that authority is directed to the process of determining damages in a patent litigation, not assessing — as here — the reasonableness of an opening offer in a negotiation between two parties.

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S
REPLY TO MICROSOFT'S OPPOSITION TO MOTION TO
DISMISS - 3
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Thus, Microsoft's allegation about Motorola's bad faith licensing offer must, in the end, focus on the alleged unreasonableness of the proposed royalty rate, not the choice of royalty base.[1] Somehow, Microsoft maintains that it is plausible to allege that Motorola's proposal of a 2.25% rate applied to the end product price crosses some line so as to justify an allegation of bad faith. In the context of the facts as alleged, that cannot be so. Here, the 2.25% offer was an opening offer, which Motorola stated was its "standard" offer. It was accompanied by a specific offer to "license the patents on a non-discriminatory basis on reasonable terms and conditions ('RAND')." As pointed out in Motorola's opening brief (at 8), the doctrine of substantial compliance provides that "a deficiency in performance may not be considered a breach as long as it is not 'so dominant or pervasive as in any real or substantial measure to frustrate the purpose of the contract.'" *Wapato Heritage, LLC v. U.S. Dep't of Interior*, No. 08-cv-177-RHW, 2008 WL 5046447, at *6 (E.D. Wash. Nov. 21, 2008) (citations and quotations omitted). Certainly, Motorola's opening offer cannot be said to have frustrated the purpose of the RAND negotiation obligation. Indeed, the RAND negotiation had not yet even begun. If Microsoft did not think 2.25% was the correct rate, the obvious and customary response would have been a counter offer proposing a different rate. It would be premature to conclude that an opening offer somehow frustrated a contract to negotiate.[2]

Microsoft mischaracterizes Motorola's invocation of substantial compliance as an attempt to seek summary judgment that Motorola's offer was reasonable, and that it substantially complied with its RAND obligations. (Opp'n at 3, 10). To the contrary, this motion establishes that Microsoft has not plausibly alleged that Motorola's offer was unreasonable. The Court need not

[1] For example, in the context of a negotiation, parties can determine the total royalty amount in accord with the Entire Market Value Rule, but then completely appropriately put in place an ongoing royalty payment, using the price of the end product as the base, and proportionately adjusting the royalty rate to result in the correct total royalty. As further stated in *Lucent*, "There is nothing inherently wrong with using the market value of the entire product . . . so long as the multiplier accounts for the proportion of the base represented by the infringing component or feature." 580 F.3d at 1339.

[2] Motorola can rely on the doctrine of substantial compliance in support of this motion to dismiss, notwithstanding *Mike M. Johnson, Inc. v. County of Spokane*, cited by Microsoft (Opp'n 10). In *Johnson* an issue of fact was presented given that the alleged breach was repeated a number of times despite repeated opportunities to cure. 140 Wn.2d 375, 78 P.3d 161, 163-66 (2003). Despite a contractual obligation to negotiate in good faith, Microsoft did not even respond to Motorola's letters, much less provide an opportunity for cure.

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S REPLY TO MICROSOFT'S OPPOSITION TO MOTION TO DISMISS - 4
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

reach the ultimate factual issue of reasonableness because Microsoft has not properly alleged a claim that would justify such an inquiry.

In considering the plausibility of Microsoft's allegation that the 2.25% proposal is grounds for a bad faith allegation, it is instructive to consider Microsoft's commercial conduct. The publicly advertized value that Microsoft attributes to the portion of its Xbox products that embodies the essential WiFi Motorola patents is telling. In particular, the retail price for the current Xbox 360 4GB console, which incorporates WiFi functionality, is $199.99. Ex 1 at 1.[3] This translates into a royalty of $4.50 per unit at Motorola's standard rate. Microsoft's older Xbox models did not have built-in WiFi functionality. Instead, Microsoft offers an Adapter, which provides previous Xbox 360 models with Wi-Fi functionality. Ex. 2. This adapter costs $99.99, *id.*, which is 50 percent of the total value of the current Xbox product and 20 times more than $4.50 per unit royalty at Motorola's standard 2.25% rate. Given this, it is implausible that Motorola's proposed 2.25% rate could form a basis for a bad faith allegation. Indeed, this shows Microsoft was less than candid when it asserted in its Complaint that "the cost of the chips and associated components that provide wireless connectivity for Xbox 360 consoles is a small fraction of the overall cost of the device. Motorola thus seeks a royalty on components of Xbox 360 which are disproportionate to the value and contribution of its purportedly 'essential' patents." (Complaint ¶ 70 ).

Microsoft also broadly asserts that an alleged excessive royalty demand "gives rise to a breach of contract claim regardless of whether subsequent negotiation may produce a different offer." (Opp'n at 9). Microsoft's reliance on *Research in Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788 (N.D. Tex. 2008) for that proposition is misplaced. The facts that led to that decision are in stark contrast to those alleged here. In that case, RIM alleged that Motorola violated its RAND commitments, but only after extensive negotiations had taken place for at least

[3] "Ex. _" refers to the Exhibits attached to the accompanying Supplemental Declaration of Norman H. Beamer in Support of Motorola, Inc. and Motorola Mobility, Inc.'s Reply to Microsoft's Opposition.

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S REPLY TO MICROSOFT'S OPPOSITION TO MOTION TO DISMISS - 5
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

a year prior to the expiration of a prior license agreement,[4] and further, upon expiration of the prior license, the parties extended their negotiations for 45 days under a standstill agreement.[5] In contrast, here, Microsoft's ***entire*** basis for filing suit rests on opening offers made in two initial letters without any negotiations (or even a response) whatsoever. The *Research in Motion* case has no applicability to this motion. For similar reasons, Microsoft's reliance on *W.L. Gore & Assocs., Inc. v. Carlisle Corp.*, 529 F.2d 614, 623 (3d Cir. 1976) is also misplaced. (Opp'n at 10). The plaintiff in *W.L. Gore* made the allegedly unreasonable licensing offer only after the parties actually negotiated in person on settlement terms, and after an infringement suit had already been filed. 529 F.2d at 624.

In sum, Microsoft's entire breach of contract claim rests on its implausible contention that two opening letters offering licenses to Motorola's portfolios of patents were made in bad faith. Microsoft has not cited any authority for the proposition that such a bare allegation of bad faith can form the basis for a complaint that a RAND obligation has been breached.

**B. Microsoft's Breach of Contract Claim Is Not Ripe for Adjudication.**

The implausibility of Microsoft's breach of contract claim is bound together with the fact that its claim is not ripe for adjudication. These deficiencies in Microsoft's complaint are two sides of the same coin. Microsoft simply jumped the gun in commencing this action. As evidenced by its recent motions in the Western District of Wisconsin, and as admitted in its opposition here (at 15, n. 3), the real motive behind this lawsuit was the anticipation of potential infringement actions brought by Motorola. If Microsoft's tactic is upheld, any recipient of a RAND licensing offer could bring a breach of contract claim and in effect demand that a Court oversee the RAND licensing negotiation.

---

[4] *See* Complaint, *Research in Motion Ltd. v. Motorola, Inc.*, No. 08-cv-0284K, Docket Entry 1, ¶¶ 84-85, 88-90, 92-93, 110, 165-66 (N.D. Tex. Feb. 16, 2008); Ex. 3.

[5] *See* Declaration of Brian Blasius, *Research in Motion Ltd. v. Motorola, Inc.*, No. 08-cv-0284K, Docket Entry 33-3, App. 2 (N.D. Tex. Apr. 10, 2008); Ex. 4.

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S REPLY TO MICROSOFT'S OPPOSITION TO MOTION TO DISMISS - 6
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

The ripeness cases Microsoft cites are inapposite. The complaint in *Putz v. Golden*, No. 10-cv-00741JLR (W.D. Wash.) is replete with specific facts detailing a concrete dispute dating back seven years,[6] including numerous attempts by the plaintiff to enforce the contract, over four years of email and telephone conversations between the parties, and multiple suits in other jurisdictions. *See* Complaint, *Putz v. Golden*, No. 10-cv-00741JLR, Docket Entry 1, ¶¶ 34-53 (W.D. Wash. Apr. 30, 2010), Ex. 5. Furthermore, the ripeness arguments in the defendants' motion to dismiss and reply do not speak to the concreteness of the dispute, but rather discuss principles of international comity. *See* Motion to Dismiss, *Putz v. Golden*, No. 10-cv-00741JLR, Docket Entry 10, at 9 (W.D. Wash. July 15, 2010), Ex. 6; Response to Opposition to Motion to Dismiss, *Putz v. Golden*, No. 10-cv-00741JLR, Docket Entry 22, at 5 (W.D. Wash. Sept. 3, 2010), Ex. 7. Similarly, *BrowserCam Inc. v. Gomez, Inc.* was ripe for review not in spite of bare assertions of breach of contract and damages, as is the case here, but because it was undisputed that the defendant had not complied with specific provisions of the contract, such as spending $250,000 on marketing. *See* No. 08-cv-02959WHA, 2008 U.S. Dist. LEXIS 82159, at *16, *18-20 (N.D. Cal. Sept. 26, 2008).

In arguing that this case is ripe for adjudication, Microsoft compares this case to *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007), and other cases that have discussed determination of a RAND rate. (Opp'n at 12). None of those cases involves a situation where an opening offer, without any history of negotiations, was scrutinized for RAND compliance.[7] Moreover, as pointed out in Motorola's opening motion (at 3), no Court has actually carried out the exercise of adjudicating RAND terms. Contrary to Microsoft's cavalier suggestion that this would be a routine process for this or any Court (Opp'n at 2), it is by no means a routine process, as Microsoft's own authorities confirm. (*See* n.1 of Microsoft's Opposition (citing Francois

---

[6] In contrast, Microsoft filed suit a mere 18 days after receiving the first letter, and a mere 11 days after receiving the second letter.

[7] *See, e.g.*, Broadcom's Second Amended Complaint, describing the existence of negotiations between the parties *Broadcom Corp. v. Qualcomm Inc.*, No. 05-3350MLC, Docket Entry 106, ¶ 109 (D.N.J. Nov. 2, 2007); Ex. 8.

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S REPLY TO MICROSOFT'S OPPOSITION TO MOTION TO DISMISS - 7
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Leveque and Yann Ménière, *Vagueness in RAND Licensing Obligations is Unreasonable for Patent Owners*, CERNA Working paper, *available at* http://ssrn.com/abstract=1030520).)[8]

Microsoft attempts to excuse its premature filing of the complaint by characterizing Motorola's opening offer as an ultimatum that ruled out further negotiations. (Opp'n at 14.) But Microsoft ignores the explicit offer in the letters that, "If Microsoft is only interested in licensing some ***portion*** of this portfolio, Motorola is willing to enter into such a license, also under RAND terms" (emphasis added). No specific rate or other terms were proposed for such partial portfolio licenses. Motorola did not provide Microsoft with a take-it-or-leave-it offer. Motorola did the opposite — it effectively invited Microsoft to structure its own license with just the patents that it wanted on terms that would be negotiated by the parties.

In attempting to avoid the inevitable conclusion that it is merely seeking an advisory opinion, Microsoft cites *Ericsson* and *Nokia* for the proposition that it is unnecessary for the Court to rule on the ultimate question of whether the "essential" patents in the portfolio are in fact essential. The fact remains, however, that Microsoft reserves the right to spurn a RAND license under Motorola's essential patent portfolio, and challenge the validity and/or infringement of such patents, even if this Court determines a RAND rate. Microsoft still has not even implied, much less explicitly stated, that it would be bound by any determination of the Court. Microsoft's continued silence as to whether it would even accept any RAND determination confirms that Microsoft is asking for nothing other than an advisory opinion on an unripe controversy.

## III. MICROSOFT'S OTHER CLAIMS SHOULD BE DISMISSED

Each of Microsoft's other claims should be dismissed for the same reason that the breach of contract claim should be dismissed — Microsoft's allegation that Motorola's initial offer was in bad faith and unreasonable is implausible and premature. None of the claims passes muster under Fed. R. Civ. P. 12(b)(1) or 12(b)(6).

---

[8] See also authorities gathered at note 4 of Motorola's opening motion.

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S REPLY TO MICROSOFT'S OPPOSITION TO MOTION TO DISMISS - 8
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Microsoft's promissory estoppel claim should also be dismissed because Microsoft and Motorola both agree that an actual, valid contract exists between the parties. It is well settled that "[p]romissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove a breach of contract." *Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th Cir. 1984). *See also Columbia Park Golf Course, Inc. v. City of Kennewick*, No. 07-cv-5054EFS, 2008 WL 4830820, at *9 (E.D. Wash. Nov. 5, 2008, amended Nov. 7, 2008) (dismissing a promissory estoppel cause of action because the parties agreed that their relationship was governed by contracts); *City of Cheney v. Gardener*, No. 20202-0-III, 113 Wn. App. 1056, 2002 WL 31267780, at*2 n.5 (Wash. Ct. App. Oct. 10, 2002).

The cases cited by Microsoft (Opp'n at 16) do not hold otherwise. *Flower v. T.R.A. Indus., Inc.*, 127 W. App. 13, 111 P.3d 1192, 1198-1202 (2005), involved numerous issues as to the existence of a contract in the first place. Similarly, contrary to Microsoft's statements, the contract and promissory estoppel claims in *Farm Crop Energy, Inc. v. Old Nat'l Bank of Wash.*, 109 Wn.2d 923, 750 P.2d 231 (1988), were *not*, as Microsoft suggests, "alternative claims." Instead, the promissory estoppel claim was predicated on "a conditional noncontractual promise" wholly apart from the contract claim. 750 P.2d at 233, 236.

Turning to Microsoft's waiver claim, Microsoft has not stated anything in its opposition to refute the fact that it is not permitted to use waiver as an offensive tool. Microsoft's argument that waiver "is not advanced as an independent claim" and is merely "the basis for a claim for injunctive relief," is contradicted by Microsoft's duplication of its irreparable injury allegations in its breach of contract claim and its waiver claim. *Compare* Complaint, ¶ 80 *with id.* ¶ 91.

As to Microsoft's declaratory judgment claim, in addition to being based on the same implausible allegations of bad faith offer as the other counts of the complaint, that claim should be dismissed because the relief that Microsoft seeks is fundamentally at odds with the statutory policy underlying declaratory judgment jurisdiction. Disputes must "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S REPLY TO MICROSOFT'S OPPOSITION TO MOTION TO DISMISS - 9
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quotations omitted). A declaration merely advising Microsoft of a hypothetical RAND rate for a portion or even all of the portfolio, while not obligating Microsoft to pay a RAND rate for *any* of the patents in the two portfolios, "strains the concept of 'case or controversy' to its outer limit." *Tamplenizza v. Josephthal & Co.*, 32 F. Supp. 2d 702, 704 (S.D.N.Y. 1999); *see also S. Cal. Painters & Allied Trades v. Rodin & Co.*, 558 F.3d 1028, 1034-35 (9th Cir. 2009) (finding party's argument — that it would benefit from declaratory judgment because such would strengthen its business position in future dealings — insufficient to create a case or controversy). Microsoft is asking this court for a declaratory judgment, yet has continued to stay silent as to whether it would be willing to abide by any determination made by this Court.

In addition, Microsoft's declaratory judgment claim should be dismissed as part of its premature, anticipatory attempt at forum shopping. *See Topics Entm't Inc. v. Rosetta Stone Ltd.*, No. C09-1408-RSL, 2010 WL 55900, at *3-4 (W.D. Wash. Jan. 4, 2010) ("Anticipatory suits 'are disfavored because they are examples of forum shopping'. . . . [P]ermitting Topics to gain from its tactic would encourage parties to precipitously abandon settlement negotiations to rush to the courthouse as Topics did." (citation omitted)). When a declaratory judgment plaintiff preempts another party, anticipating that it may file suit, such behavior does nothing to further the objectives of the Declaratory Judgment Act. *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) ("The circumstances under which an exception to the first-to-file rule typically will be made include bad faith, anticipatory suit, and forum shopping." (citations omitted)). Here, Microsoft knew that merely spurning Motorola's licensing offer would likely lead to Motorola commencing a patent infringement action against Microsoft. Therefore, rather than responding to Motorola's offer, Microsoft rushed into Court with the present complaint. Its offer thus repudiated, Motorola did in fact bring patent infringement actions, and now Microsoft seeks to exploit its premature complaint as a means to force those infringement actions into this Court.



SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## IV. CONCLUSION

Microsoft's opposition brief does nothing to change the fact that Microsoft's complaint is premature and non-justiciable, seeking an advisory opinion that Microsoft has not even agreed to accept. The complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

DATED this 7th day of January, 2011.

SUMMIT LAW GROUP PLLC

By /s/ Philip S. McCune
Philip S. McCune, WSBA #21081
Lynn M. Engel, WSBA #21934
*philm@summitlaw.com*
*lynne@summitlaw.com*

And by

Steven Pepe (*pro hac vice*)
Jesse J. Jenner (*pro hac vice*)
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
(212) 596-9046
*jesse.jenner@ropesgray.com*
*steven.pepe@ropesgray.com*

Norman H. Beamer (*pro hac vice*)
Ropes & Gray LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303-2284
(650) 617-4030
*norman.beamer@ropesgray.com*

Paul M. Schoenhard (*pro hac vice*)
Ropes & Gray LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC 20005-3948
(202) 508-4693
*paul.schoenhard@ropesgray.com*

***Attorneys for Defendants Motorola, Inc., and Motorola Mobility, Inc.***

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S REPLY TO MICROSOFT'S OPPOSITION TO MOTION TO DISMISS - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Arthur W. Harrigan, Jr., Esq.
Christopher T. Wion, Esq.
Shane P. Cramer, Esq.
Danielson Harrigan Leyh & Tollefson
*arthurh@dhlt.com*
*chrisw@dhlt.com*
*shanec@dhlt.com*

Brian R. Nester, Esq.
David T. Pritikin, Esq.
Douglas I. Lewis, Esq.
John W. McBride, Esq.
Kevin C. Wheeler, Esq.
Richard A. Cederoth, Esq.
Sidley Austin LLP
*bnester@sidley.com*
*dpritikin@sidley.com*
*dilewis@sidley.com*
*jwmcbride@sidley.com*
*kwheeler@sidley.com*
*rcederoth@sidley.com*

T. Andrew Culbert, Esq.
David E. Killough, Esq.
Microsoft Corp.
*andycu@microsoft.com*
*davkill@microsoft.com*

DATED this 7th day of January, 2011.

Marcia A. Ripley

MOTOROLA, INC. AND MOTOROLA MOBILITY, INC.'S REPLY TO MICROSOFT'S OPPOSITION TO MOTION TO DISMISS - 12
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001