# EXHIBIT A

1

HONORABLE JAMES L. ROBART

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

MICROSOFT CORPORATION, a
Washington corporation,

Case No. 2-10-cv-01823-JLR

11

12

Plaintiff,

AMENDED AND SUPPLEMENTAL
COMPLAINT

13

vs.

[PROPOSED]

14

15

MOTOROLA, INC., MOTOROLA
MOBILITY, INC., and GENERAL
INSTRUMENT CORPORATION,

16

Defendants

17

18

Plaintiff Microsoft Corporation ("Microsoft") alleges as follows for its Complaint

19

against Motorola, Inc., Motorola Mobility, Inc., and General Instrument Corporation

20

(collectively "Motorola" or "Defendants"):

21

**NATURE OF THE ACTION**

22

1.      Microsoft brings this action for Motorola's breach of its commitments to the

23

Institute of Electrical and Electronics Engineers Standards Association ("IEEE-SA"),

24

International Telecommunications Union ("ITU"), and their members and affiliates -- including

25

AMENDED AND SUPPLEMENTAL
COMPLAINT - 1

Microsoft.  Motorola broke its promises to offer licenses to its patents it asserts as "essential" to wireless technologies known as "WLAN" and to video coding technologies generally known as "H.264" under reasonable and non-discriminatory terms and conditions.

2.     Participants in IEEE-SA standards setting efforts, including those directed to WLAN technology, were subject to the IEEE-SA Standard Board Bylaws concerning the submission of Letters of Assurance related to patent claims deemed "essential" by a submitting party.  Clause 6 of those Bylaws (which was revised slightly over the years) generally provides in pertinent part:

A Letter of Assurance shall be either:

a) A general disclaimer to the effect that the submitter without conditions will not enforce any present or future Essential Patent Claims against any person or entity making, using, selling, offering to sell, importing, distributing, or implementing a compliant implementation of the standard; or

b) A statement that a license for a compliant implementation of the standard will be made available to an unrestricted number of applicants on a worldwide basis without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination.

3.     Motorola openly and publicly submitted Letters of Assurance pursuant to Clause 6 of the IEEE-SA Standards Board Bylaws that it would offer to license any of its patents essential to the applicable WLAN standard(s) to any entity under reasonable rates on a non-discriminatory basis.  IEEE-SA and its participants and affiliates relied on Motorola's promises in developing, adopting and implementing IEEE-SA technical standards.  These standards are now implemented worldwide in a variety of electronic devices that have become commonplace.  Microsoft invested substantial resources in developing and marketing products in compliance with these standards, relying on the assurances of participating patent holders –

AMENDED AND SUPPLEMENTAL
COMPLAINT - 2

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

including Motorola – that any essential patents held by such patent holders would be available for licensing by implementers of the standards on such terms.

4.      Participants in ITU-T standards setting efforts, including those directed to H.264 technology, were subject to the ITU-T Common Patent Policy concerning the submission of Patent Statement and Licensing Declarations related to patents identified by a submitting party.  The ITU-T Common Patent Policy generally provides, in pertinent part, that a patent holder's statement may declare that:

> (2.1) The patent holder is willing to negotiate licenses free of charge with other parties on a non-discriminatory basis on reasonable terms and conditions.

> (2.2) The patent holder is willing to negotiate licenses with other parties on a non-discriminatory basis on reasonable terms and conditions.

5.      Motorola openly and publicly submitted Patent Statement and Licensing Declarations pursuant to the ITU-T's Common Patent Policy that it would offer to license any of its patents essential for the relevant H.264 Recommendation(s) to any entity under reasonable rates on a non-discriminatory basis.  The ITU-T and its participants and affiliates relied on Motorola's promises in developing, adopting and implementing the ITU-T H.264 Recommendations (or standards).  These standards are now implemented worldwide in a variety of electronic devices and software that have become commonplace.  Microsoft invested substantial resources in developing and marketing products in compliance with these standards, relying on the assurances of participating patent holders – including Motorola – that any "essential" patents held by such patent holders would be available for licensing by implementers of the standards on such terms.

6.      Motorola broke its promise to IEEE-SA and its members and affiliates by refusing to offer to Microsoft a license that is consistent with Motorola's Letter(s) of

AMENDED AND SUPPLEMENTAL
COMPLAINT - 3

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

Assurance and Clause 6 of the IEEE-SA Standards Board Bylaws, instead demanding royalties that are excessive and discriminatory. Motorola broke its promise to the ITU-T and its members and affiliates by refusing to offer to Microsoft a license that is consistent with Motorola's Patent Statement and Licensing Declaration(s) and the Common Patent Policy of the ITU-T, instead demanding royalties that are excessive and discriminatory.

7.      Microsoft does not accept Motorola's representation that any of its patents that it has identified as "essential" are, in fact, necessary to the implementation of compliant implementations of WLAN or H.264 technologies; nor does Microsoft concede that the particular implementations of such technologies in its products practice any Motorola patents, including those identified by Motorola in relation to these technologies. Nonetheless, Microsoft has relied upon Motorola's, and other similarly-situated patent holders', representations.

8.      Because Motorola asserts that its patents are "essential" and promised that it would license any such patents on reasonable and non-discriminatory terms, companies that rely on those commitments are entitled to receive the benefit of an offer of a reasonable and non-discriminatory license.

9.      Accordingly, Microsoft seeks: i) a judicial declaration that Motorola's promises to IEEE-SA, the ITU, and their respective members and affiliates constitute contractual obligations that are binding and enforceable by Microsoft; ii) a judicial declaration that Motorola has breached these obligations by demanding excessive and discriminatory royalties from Microsoft; iii) a judicial accounting of what constitutes a royalty rate in all respects consistent with Motorola's promises for WLAN patents identified as "essential" by Motorola and for H.264 patents identified by Motorola; and iv) a judicial determination of and

AMENDED AND SUPPLEMENTAL
COMPLAINT - 4

compensation for Motorola's breach.

## PARTIES

10.    Plaintiff Microsoft is a Washington corporation having its principal place of business at One Microsoft Way, Redmond, Washington 98052.

11.    Founded in 1975, Microsoft is a worldwide leader in computer software, services, and solutions for businesses and consumers.  Since 1979, Microsoft has been headquartered in the Redmond, Washington area.  Microsoft currently employs nearly 40,000 people in the Puget Sound region and occupies nearly 8 million square feet of facilities at its Redmond campus.

12.    Microsoft has a long history of technical innovation in the software and hardware products it develops and distributes.

13.    Microsoft's products include Xbox video game consoles, various versions of which have been sold to consumers since 2001.  Xbox has grown in popularity over the years and is now one of the most widely-sold video game consoles on the market.

14.    Over the years that Xbox has been sold, some versions have had wireless Internet connectivity ("WLAN") built-in and some versions have had optional WLAN connectivity.  All versions of Xbox that include hardware and software that allows for WLAN connectivity also offer an alternative, wired connection to the Internet.  Xbox video game consoles function as video game consoles, regardless of their ability to connect to the Internet.

15.    Microsoft relies upon third-party suppliers to provide an interface to WLAN connections.  The WLAN interface provided by these third-parties is one of many components that underlie the operation and functionality of the Xbox consoles.  The WLAN interface does not enable any of Xbox's core video gaming functionality.  Instead, it simply enables WLAN

**AMENDED AND SUPPLEMENTAL
COMPLAINT - 5**

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

connectivity for those consumers who choose to use that functionality.

16.     Microsoft hardware and software products that provide users with H.264 technologies further provide substantial other features and functions.  By way of non-limiting example, personal computers in various configurations offer the end-user myriad features and functionality.  H.264 technologies provided through Microsoft software supplied to computer and other equipment makers represent but a fraction of the end price for such products.  By way of further non-limiting example, Microsoft's Xbox video game console provides video game play without reliance upon any H.264 technologies that may be made available to users through other features and functions.

17.     Microsoft also relies upon third-party suppliers in at least some instances for H.264 technologies.

18.     Upon information and belief, Defendant Motorola, Inc. is a corporation organized under the laws of Delaware with its principal place of business at 1303 East Algonquin Road, Schaumburg, Illinois 60196.  On information and belief, Defendant Motorola Mobility, Inc. is a wholly-owned subsidiary of Motorola, Inc. and is organized under the laws of Delaware having a principal place of business at 600 North U.S. Highway 45, Libertyville, Illinois 60048.  On information and belief, Defendant General Instrument Corporation is a wholly-owned subsidiary of Motorola Mobility, Inc. and is organized under the laws of Delaware having a principal place of business at 101 Tournament Drive, Horsham, Pennsylvania 19044.  Motorola, Inc., Motorola Mobility, Inc., and General Instrument Corporation will be referred to collectively herein as "Motorola" or "Defendants".

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over the subject matter of this dispute pursuant to 28

AMENDED AND SUPPLEMENTAL
COMPLAINT - 6

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

U.S.C. § 1332, because this is an action between citizens of different states and because the value of declaratory and injunctive relief sought, the value of Microsoft's rights this action will protect and enforce, Microsoft's damages, and the extent of the injury to be prevented exceed the amount of $75,000, exclusive of interest and costs.

20.     On information and belief, Defendants are subject to this Court's personal jurisdiction, consistent with the principles of due process and the Washington Long Arm Statute, at least because Defendants maintain offices and/or facilities in the Western District of Washington, offer their products for sale in the Western District of Washington, and/or have transacted business in this District.

21.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(a), 1391(c), and 1391(d).

## BACKGROUND
### Introduction to Standards

22.     New wireless and video coding technologies typically are only broadly commercialized after service providers and device manufacturers agree on compatible technology specifications for related products or services.  For virtually all successful wireless and video coding technologies, that process has involved inclusive, multi-participant standards development efforts conducted under the auspices of leading standards development organizations.

23.     Standards play a critical role in the development of wireless and video coding technologies.  Standards facilitate the adoption and advancement of technology as well as the development of products that can interoperate with one another.  Companies that produce products compatible with a standard can design products by referencing only the standard

**AMENDED AND SUPPLEMENTAL**
**COMPLAINT - 7**

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

documentation, without the need to communicate separately with every other company with which their products may need to interoperate.  Companies producing products that implement and are tested to a standard facilitate interoperability among different products, and consumers of those products can be confident that products from multiple vendors will work together as intended under the standard.

24.     As a practical matter, the technologies that are used to allow a consumer electronics device to connect wirelessly to the Internet must be described in standards adopted by a recognized SDO (standard development organization), and thereby accepted by key industry members, in order to be commercially successful.  For example, Microsoft could not purchase third-party goods that enable its Xbox devices to connect wirelessly to the Internet unless those goods were compatible with standards described by an SDO.

25.     Correspondingly, video technologies that are used to allow a consumer electronics device to display video encoded pursuant to any particular coding protocol must be described in standards adopted by a recognized SDO, and thereby accepted by key industry members, in order to be commercially successful.  For example, Microsoft and computer makers could not purchase third-party products or software that provide reliable video decoding and image generation unless those products or software were compatible with standards described by an SDO.

26.     In order to reduce the likelihood that implementers of their standards will be subject to abusive practices by patent holders, SDOs have adopted rules, policies and procedures that address the disclosure and licensing of patents that SDO participants may assert in relation to the practice of the standard under consideration.  These rules, policies and/or procedures are set out in the intellectual property rights policies ("IPR policies") of the

**AMENDED AND SUPPLEMENTAL**
**COMPLAINT - 8**

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

SDOs.

27.     Many IPR policies – including those at issue in this litigation – encourage or require participants to disclose on a timely basis the IPR, such as patents or patent applications, that they believe are sufficiently relevant to standards under consideration.  Sometimes the policy in question permits the patent holder to instead disclose that it likely holds such IPR without identifying specific patents.  These disclosures permit the SDOs and their members to evaluate technologies with full knowledge of relevant patent holders and disclosed IPR that may affect the costs of implementing the standard.

28.     Unless the patent holder specifically discloses that it is not willing to provide licenses under reasonable and non-discriminatory terms and conditions, IPR policies – including those at issue in this litigation – require participants claiming to own "essential" patents to offer licenses for those patents to any implementer of the standard on reasonable and non-discriminatory terms and conditions.  As their inclusion in the IPR policies of various standards development organizations suggests, such commitments are crucial to the standards development process.  They enable participants in standards development to craft technology standards with the expectation that an owner of any patented technology will be prevented from demanding unfair, unreasonable, or discriminatory licensing terms and thereby be prevented from imposing undue costs or burdens on them on parties seeking to implement the standard.

### Wireless LAN Standards

29.     Motorola's unlawful licensing demands pertain in part to patents that it claims are "essential" to a widely practiced standard for wireless Internet connectivity known as "WLAN," "Wi-Fi," and/or "802.11."

AMENDED AND SUPPLEMENTAL
COMPLAINT - 9

30.     WLAN enables an electronic device to access the Internet wirelessly at high speeds over short distances.  WLAN networks typically consist of one or more access points that are connected to an Ethernet local area network, each of which communicates by radio signals with devices such as notebook computers and other electronics devices.

31.     The use of WLAN technology has grown in the United States since its introduction in the 1990s.  Manufacturers now offer WLAN connectivity in various devices for various reasons.

32.     WLAN is based on the 802.11 wireless networking standard developed by the Institute of Electrical and Electronics Engineers ("IEEE") beginning in the early 1990s.  The initial 802.11 protocol ("legacy 802.11") was released in 1997.  Since then, there have been a number of amendments issued, the most important of which are 802.11a (1999), 802.11b (1999), 802.11g (2003), and 802.11n (2009).

### H.264 Standards

33.     Motorola's unlawful licensing demands pertain in part to patents that it has identified to Microsoft in relation to H.264 technologies.

34.     H.264 technologies provide video decoding in such applications as DVD players, videos available for downloading or replay on the Internet, web software, broadcast services, direct-broadcast satellite television services, cable television services, and real-time videoconferencing.

35.     The use of H.264 technology has grown in the United States since its introduction.  Manufacturers now offer H.264 connectivity in various software and devices for various reasons.

36.     H.264 technology was developed as a standard set of technologies at least in

**AMENDED AND SUPPLEMENTAL**
**COMPLAINT** - 10

part through the auspices of the International Telecommunications Union ("ITU").

## Motorola's Involvement in Development of the WLAN Standards

37.     The standard setting arm of IEEE, the IEEE Standards Association ("IEEE-SA"), promulgates technical standards in a variety of fields, including telecommunications. IEEE-SA had an IPR policy at the time it was drafting the 802.11 (WLAN) protocols.  Under the IPR policy, when individuals participating in IEEE standards development came to believe that a company, university, or other patent holder owned patents or patent applications that might be "essential" to implement an IEEE standard under development, IEEE-SA would request Letters of Assurance from those entities.

38.     The requirements for the Letters of Assurance sought by IEEE are set forth in Clause 6 of the IEEE-SA Standards Board Bylaws.

39.     According to IEEE's IPR policy, Letters of Assurance, once provided, are irrevocable and shall be in force at least until the standard's withdrawal.

40.     If the Letters of Assurance were not provided for patents asserted to be "essential" by participants, the IEEE working group either would revise the standard so that compliance could be achieved without facing any potential issues related to such patent(s), discontinue work on the standard altogether, or otherwise proceed in a manner consistent with the non-disclosure and lack of Letters of Assurance in order to seek to minimize the risk that participating and relying entities would be exposed to discriminatory patent assertions and/or unreasonable licensing terms.

41.     Motorola has represented to Microsoft that it owns rights in a number of patents and pending applications that it asserts are or may become "essential" to comply with one or more amendments to the 802.11 standard.  By way of example, Motorola has represented to

AMENDED AND SUPPLEMENTAL
COMPLAINT - 11

Microsoft that the following patents, among others, are or may become "essential" to comply with one or more amendments to the 802.11 standard:  U.S. Patent Nos. 5,319,712; 5,311,516; 5,572,193; 5,311,516; and 5,636,223.  The full list of patents is provided in Appendix A. Microsoft does not concede that such listed patents are either "essential" to the 802.11 standards or that such patents are practiced in the implementation of such standards in any Microsoft products.

42.     On information and belief, Motorola obtained rights to several of the WLAN patents it has represented as "essential" through its recent acquisition of Symbol Technologies, Inc. ("Symbol").

43.     Prior to the releases of the 802.11 protocols, Motorola and Symbol submitted Letters of Assurance to the IEEE pursuant to Clause 6 of the IEEE-SA Standards Board Bylaws with respect to those protocols, guaranteeing that any "essential" patents would be licensed under reasonable and non-discriminatory terms and conditions.  Both Motorola's and Symbol's Letters of Assurance apply to any "essential" patents they then held as well as any other "essential" patents they subsequently obtained.

44.     In reliance on these letters of assurance, IEEE released the 802.11 standard and various amendments to that standard which Motorola asserts incorporated Motorola's and Symbol's patented technology.  On information and belief, once Motorola and Symbol disclosed that they likely held essential patents, absent a licensing commitment from them to the effect that they would offer licenses to "essential" patents on reasonable and non-discriminatory terms and conditions, the relevant IEEE working groups would have either revised the standards, employing alternative technologies instead, stopped working on the protocols or taken other actions.

AMENDED AND SUPPLEMENTAL
COMPLAINT - 12

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

45.    In submitting its Letter of Assurance pursuant to the applicable IEEE IPR policy, Motorola entered into an actual or implied contract with IEEE, for the benefit of IEEE members and any entity that implements the 802.11 standard.  Motorola is bound by its agreements to offer licenses consistent with the referenced IEEE bylaws.

46.    Similarly, Symbol, in submitting its Letter of Assurance pursuant to the applicable IEEE IPR policy, entered into an actual or implied contract with IEEE, for the benefit of IEEE members and any other entity that implements the 802.11 standard, and Motorola is bound by that commitment.

## Motorola's Involvement in Development of the H.264 Standards

47.    The ITU is the leading United Nations agency for information and communication technology issues, and the global focal point for governments and the private sector in developing networks and services.  The ITU historically has coordinated the shared global use of the radio spectrum, promoted international cooperation in assigning satellite orbits, worked to improve telecommunication infrastructure in the developing world, established the worldwide standards that foster seamless interconnection of a vast range of communications systems and addressed the global challenges of our times, such as strengthening cybersecurity.

48.    In conjunction with its efforts to provide standards in support of its stated goals, the ITU-T requires that its members and participants adhere to the Common Patent Policy stated above.

49.    According to ITU-T's IPR policy, Patent Statement and Licensing Declarations, once provided, are irrevocable and shall be in force at least until the standard's withdrawal.

50.    If the Patent Statement and Licensing Declarations were not provided for

AMENDED AND SUPPLEMENTAL
COMPLAINT - 13

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

relevant patents from participants following disclosures relating to essential patents, the ITU-T either would revise the standard so that compliance could be achieved without facing any potential issues related to such patent(s), discontinue work on the standard altogether, or otherwise proceed in a manner consistent with the non-disclosure and lack of Patent Statement and Licensing Declarations in order to seek to minimize the risk that participating and relying entities would be exposed to discriminatory patent assertions and/or unreasonable licensing terms.

51.     Motorola has represented to Microsoft and others that it owns rights in a number of patents and pending applications that are or may be embodied fully or partly within H.264 technologies as endorsed by the ITU-T and has identified these patents to Microsoft. Microsoft does not concede that such listed patents are either "essential" to the H.264 standard or are practiced in the implementation of such standard in any Microsoft products.

52.     Motorola submitted Patent Statement and Licensing Declarations to the ITU pursuant to its Common Patent Policy with respect to those protocols, guaranteeing that Motorola's identified patents would be licensed under reasonable and non-discriminatory terms and conditions.

53.     In reliance on these Patent Statement and Licensing Declarations, the ITU-T proceeded with the H.264 standard and various amendments to that standard which Motorola asserts incorporated Motorola's patented technology.  On information and belief, absent the Patent Statement and Licensing Declarations following such disclosures, the ITU-T would have either revised the standards, employing alternative technologies instead, stopped working on the protocols or taken other actions.

54.     In submitting its Patent Statement and Licensing Declarations pursuant to the

**AMENDED AND SUPPLEMENTAL**
**COMPLAINT - 14**

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

applicable ITU-T policy, Motorola entered into an actual or implied contract with the ITU-T, for the benefit of ITU-T members and any entity that implements the H.264 technologies. Motorola is bound by its agreements to offer licenses consistent with the referenced ITU-T Common Patent Policy.

**Microsoft's Reliance on Commitments with Respect to WLAN and H.264 Technologies**

55.     Microsoft has participated in the development of the IEEE WLAN standards.

56.     Microsoft and other companies participating in the development of WLAN in IEEE relied on Motorola's commitments to ensure that the royalties Motorola would seek would conform to the promises made by Motorola.

57.     In reliance on the integrity of the SDO process and the commitments made by Motorola and others regarding WLAN patents they deem "essential," Microsoft began providing its Xbox video game consoles with WLAN connectivity.  By way of example, Microsoft purchased and incorporated into its Xbox 360 video game consoles third-party-manufactured interfaces that provide Xbox 360 devices with WLAN connectivity.  Microsoft made its decision to provide its Xbox video game consoles with WLAN connectivity in reliance on, and under the assumption that, it and/or any third party supplier could avoid patent litigation and take a license to "essential" patents that Motorola, or any other company submitting a Letter of Assurance, holds with regard to the WLAN standard under IEEE's well publicized IPR policy.

58.     Microsoft and other manufacturers of WLAN-compliant devices necessarily relied on the assurances of participating patent holders – including Motorola -- that any "essential" patents held by such patent holders would be available for licensing by implementers of the standards on such terms.

AMENDED AND SUPPLEMENTAL
COMPLAINT - 15

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

59.     Microsoft has participated in the development of the H.264 technologies.

60.     Microsoft and other companies participating in the development of H.264 under the auspices of the ITU relied on Motorola's commitments to ensure that the royalties Motorola would seek for "essential" patents would conform to the promises made by Motorola.

61.     Correspondingly, in reliance on the integrity of the SDO process and specifically the commitments made by Motorola and others regarding patents related to H.264 technologies, Microsoft began providing its H.264 technology capability in its Xbox video game consoles.  Microsoft made its decision to provide its Xbox video game consoles with H.264 technology in reliance on, and under the assumption that, it and/or any third party supplier could avoid patent litigation and take a license to any "essential" patents held by Motorola, or any other company submitting a Patent Statement and Licensing Declaration, under the ITU-T's well-publicized IPR policy.

62.     Microsoft made similar investments in other fields, including Windows 7 and Windows Phone 7, based upon Motorola's representations in relation to the H.264 technology standards.

63.     Microsoft and other manufacturers and suppliers of H.264 compliant technology necessarily relied on the commitments of Motorola and others to license their "essential" patents under these terms.

**Motorola's Breach of Its Contractual Obligation to License Its Identified Patents on The Promised Terms**

64.     In willful disregard of the commitments it made to IEEE and the ITU-T, Motorola has refused to extend to Microsoft a license consistent with Motorola's promises for any of Motorola's "essential" patents.

AMENDED AND SUPPLEMENTAL
COMPLAINT - 16

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

65.     Instead, Motorola is demanding royalty payments that are wholly disproportionate to the royalty rate that its patents should command under any reasonable calculus.  Motorola has discriminatorily chosen Microsoft's Xbox product line and other multi-function, many-featured products and software, such as Windows 7 and Windows Phone 7 and products incorporating Microsoft software, for the purpose of extracting unreasonable royalties from Microsoft.

66.     By way of non-limiting example, each Xbox device includes substantial software and many computer chips and modules that perform various functions, including enabling Xbox's core functionality as a video gaming machine.  Of those, the Xbox console includes one – an interface provided to Microsoft by third-parties – that allows consumers optionally to connect an Xbox to the Internet using a WLAN connection.

67.     The third-party WLAN interface does not enable any of Xbox's core video gaming functionality.  In addition, Microsoft allows consumers an alternative, wired method to connect to the Internet.  This alternative method does not require use of any WLAN technology.

68.     By way of further non-limiting example, each personal computer running Windows 7 includes substantial software and many computer chips and modules that perform various functions, including those related to the general operation of a computing device.  Of those, each personal computer includes just a portion directed to H.264 technologies.

69.     By way of further non-limiting example, each smartphone running Windows Phone 7 includes substantial software and many computer chips and modules that perform various functions, including those related to the general and particularized operation of a smartphone independent of H.264 technology.  Of those, each smartphone includes just a

**AMENDED AND SUPPLEMENTAL**
**COMPLAINT** - 17

portion directed to H.264 technologies.

70.    By letter to Microsoft, dated October 21, 2010, Kirk Dailey, Motorola's Corporate Vice President Intellectual Property, stated that a royalty for a license to its purported "essential" patents must be based on "the price of the end product (e.g., each Xbox 360 product) and not on component software." The cost of the chips and associated components that provide wireless connectivity for Xbox 360 consoles is a small fraction of the overall cost of the device. Motorola thus seeks a royalty on components of Xbox 360 which are disproportionate to the value and contribution of its purportedly "essential" patents and has declined to offer a license to its purported "essential" patents unless it receives exorbitant and discriminatory royalty payments to which it is not entitled. On information and belief, Motorola has not previously entered into a license agreement for its purported "essential" patents that is comparable to the demand made of Microsoft. Motorola has thereby refused to offer to license the patents at a reasonable rate, with reasonable terms, under conditions that are demonstrably free of any unfair discrimination.

71.    By letter to Microsoft, dated October 29, 2010, Kirk Dailey, Motorola's Corporate Vice President Intellectual Property, stated that a royalty for a license to its identified patents must be based on "the price of the end product (e.g., each Xbox 360 product, each PC/laptop, each smartphone, etc.) and not on component software (e.g., Xbox 360 system software, Windows 7 software, Windows Phone 7 software, etc.)." The cost of such component software and any inter-related hardware is a small fraction of the overall cost of the listed devices. Motorola thus seeks a royalty on software and hardware components of Xbox 360 and other devices that are unrelated to its identified patents and has declined to offer a license unless it receives exorbitant royalty payments to which it is not entitled. On

**AMENDED AND SUPPLEMENTAL COMPLAINT** - 18

information and belief, Motorola has not previously entered into a license agreement for its identified patents that is comparable to the demand made of Microsoft. Motorola has thereby refused to offer to license the patents at a reasonable rate, with reasonable terms, on a non-discriminatory basis.

72.    Motorola has represented that it possesses patents "essential" to such implementations. On that basis, Motorola is required to tender to implementers of the standard an offer to license its "essential" patents in all respects consistent with its binding assurances to the IEEE, the ITU, and their participating members. Motorola's demands constitute a breach of its WLAN and H.264 commitments.

### The Motorola Affiliates file Several Patent Infringement Actions in Violation of their Contractual Commitments

73.    On November 10, 2010, Motorola Mobility and General Instrument (collectively, the "Motorola Affiliates") filed two complaints for patent infringement against Microsoft in the Federal District Court for the Western District of Wisconsin, Case No. 3:10-CV-699 (the "699 Action") and Case No. 3:10-CV-700 (the "700 Action")).

74.    The 699 Action involves the following three patents: U.S. Patent Nos. 7,310,374; 7,310,375; and 7,310,376. These three patents are among those Defendants claim are necessary or essential to practice the H.264 standard. In the 699 Action, the Motorola Affiliates are seeking – among other forms of relief – to permanently enjoin Microsoft from practicing these patents.

75.    The 700 Action involves seven other patents: U.S. Patent Nos. 6,980,596; 7,162,094; 5,319,712; 5,357,571; 6,069,896; 5,311,516; and 6,686,931. At least six of these patents are among those that Defendants claim are necessary or essential to practice the WLAN

AMENDED AND SUPPLEMENTAL
COMPLAINT - 19

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700    FAX. (206) 623-8717

or H.264 standard.  In the 700 Action, the Motorola Affiliates are seeking -- among other forms of relief – to permanently enjoin Microsoft from practicing these patents.

76.    On November 22, 2010, the Motorola Affiliates filed a complaint for patent infringement against Microsoft with the International Trade Commission ("ITC") captioned *In the Matter of Certain Gaming and Entertainment Consoles, Related Software, and Components Thereof* (ITC Case No. 337-TA-752) (the "ITC Action").

77.    The Motorola Affiliates' ITC Action involves five patents: U.S. Patent Nos. 6,980,596; 7,162,094; 5,319,712; 5,357,571; and 6,069,896.  All of these patents are among those that Defendants claim are necessary or essential to practice the WLAN or H.264 standard.  In the ITC case, the Motorola Affiliates are seeking -- among other forms of relief – to exclude Microsoft from importing, marketing, advertising, distributing, offering for sale, selling, or transferring any products that practice these patents.

78.    The 699 Action, 700 Action, and the ITC Action are collectively referred to as the "Motorola Patent Actions."  The patents that are the subject of the Motorola Patent Actions and that are also included among those patents that Defendants claim are necessary or essential to practice the WLAN or H.264 standard are hereafter referred to collectively as the "SDO Patents in Suit."

79.    With respect to each of the SDO Patents in Suit, Defendants have refused to offer Microsoft a license consistent with their contractual undertakings to the IEEE-SA, ITU, and their participating members.  Instead, Defendants have demanded royalty payments that are wholly disproportionate to the royalty rate that its patents should command under any reasonable calculus.

AMENDED AND SUPPLEMENTAL
COMPLAINT - 20

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### (Breach Of Contract)

80.     Microsoft realleges and incorporates by reference the allegations set forth in paragraphs 1-79 above.

81.     Defendants entered into express or implied contractual commitments with IEEE-SA, the ITU-T, and their respective members and affiliates relating to the WLAN standard and H.264 technologies.

82.     Each third party that would potentially implement WLAN and H.264 technologies was an intended beneficiary of those contracts.

83.     Defendants were contractually obligated to offer a license to any essential patents consistent with the applicable licensing commitments and the patent policy of the IEEE-SA Standards Board Bylaws and the ITU-T, respectively.

84.     Defendants breached these contracts by refusing to offer licenses to any essential patents (including the SDO Patents in Suit) under reasonable rates, with reasonable terms, and on a non-discriminatory basis.

85.     The Motorola Affiliates further breached these contracts by filing the Motorola Patent Actions, which seek to enjoin Microsoft's implementation of the technology of the SDO Patents in Suit and to exclude Microsoft from, among other things, importing or selling products that implement the technology of the SDO Patents in Suit.  To the extent this technology is actually necessary to implementation of the relevant standards (as Defendants have asserted), Defendants were obligated to offer licenses to Microsoft on RAND terms. Because of its SDO contractual duties and the benefits Defendants receive from inclusion of

AMENDED AND SUPPLEMENTAL
COMPLAINT - 21

their technology in SDO standards, and because Defendants have breached their licensing commitments by failing to offer licenses to Microsoft on RAND terms, Defendants are not entitled to enjoin or exclude Microsoft from implementing the technology of the SDO Litigated Patents.  Defendants have failed and refused to offer the SDO Patents in Suit on RAND terms, and the Motorola Affiliates initiated the Motorola Patent Actions seeking improperly to enjoin or exclude Microsoft from using the technology of the SDO Patents in Suit.

86.     As a result of these contractual breaches, Microsoft has been injured in its business or property, including damages associated with the cost of defending the improperly filed Motorola Patent Actions, and is otherwise threatened by imminent loss of profits, loss of customers and potential customers, and loss of goodwill and product image.

87.     Microsoft has suffered damages and irreparable harm, and will suffer further damage and irreparable harm, by reason of each and all of the acts, practices, breaches and conduct of Defendants alleged above until and unless the Court enjoins such acts, practices, and conduct.

## SECOND CAUSE OF ACTION

### (Promissory Estoppel)

88.     Microsoft realleges and incorporates by reference the allegations set forth in paragraphs 1-79.

89.     Defendants made a clear and definite promise to potential licensees through their commitments to IEEE and the ITU that they would license any essential patents under reasonable rates, with reasonable terms, and on a non-discriminatory basis.

90.     The intended purpose of Defendants' promises was to induce reliance.

**AMENDED AND SUPPLEMENTAL**
**COMPLAINT** - 22

Defendants knew or should have reasonably expected that this promise would induce companies producing products in wireless networking and H.264 technologies, like Microsoft, to develop products compliant with the relevant standards.

91.     Microsoft developed and marketed its products and services in reliance on Defendants' promises, as described above, including making their products and services compliant with WLAN technical standards and including H.264 technologies in various Microsoft product offerings.

92.     Defendants are estopped from reneging on these promises to the IEEE and the ITU-T under the doctrine of promissory estoppel.

93.     Microsoft has been harmed as a result of its reasonable reliance on Defendants' promises and is threatened by the imminent loss of profits, loss of customers and potential customers, and loss of goodwill and product image.

94.     Microsoft will suffer irreparable injury by reason of the acts and conduct of Defendants alleged above until and unless the court enjoins such acts, practices and conduct.

## THIRD CAUSE OF ACTION

### (Waiver)

95.     Microsoft realleges and incorporates by reference the allegations set forth in paragraphs 1-79.

96.     Defendants expressly stated in their declarations to IEEE and the ITU that they would license any essential patents under reasonable rates and non-discriminatory terms.

97.     Through this express statement, Defendants voluntarily and intentionally waived their rights to obtain compensation for any essential patents for the WLAN and H.264

AMENDED AND SUPPLEMENTAL
COMPLAINT - 23

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

standards other than at reasonable rates and on non-discriminatory terms.

98.     Microsoft will suffer irreparable injury by reason of the acts and conduct of Defendants alleged above until and unless the court enjoins such acts, practices, and conduct.

## FOURTH CAUSE OF ACTION

## (Declaratory Judgment That Defendants' Offers Do Not Comply with Their Obligations)

99.     Microsoft realleges and incorporates by reference the allegations set forth in paragraphs 1-79.

100.    There is a dispute between the parties concerning whether Defendants have offered to license to Microsoft patents consistent with Defendants' declarations and the referenced policy of the IEEE-SA Standards Board and the ITU-T.

101.    The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

102.    Microsoft is entitled to a declaratory judgment that Defendants have not offered license terms to Microsoft conforming to applicable legal requirements.

## PRAYER FOR RELIEF

WHEREFORE, Microsoft prays for relief as follows:

A.     Adjudge and decree that Defendants are liable for breach of contract;

B.     Adjudge and decree that Defendants are liable for promissory estoppel;

C.     Enter judgment against Defendants for the amount of damages that Microsoft proves at trial;

D.     Enter a judgment awarding Microsoft its expenses, costs, and attorneys fees in accordance with Rule 54(d) of the Federal Rules of Civil Procedure;

E.     Preliminarily and permanently enjoin Defendants from further demanding excessive royalties from Microsoft that are not consistent with Defendants' obligations, and

AMENDED AND SUPPLEMENTAL
COMPLAINT - 24

1  from enforcing, or seeking to enforce, patent infringement claims in the Motorola Patent

2  Actions (or elsewhere) in breach of their RAND obligations as alleged above;

3        F.     Decree that Defendants have not offered royalties to Microsoft under reasonable

4  rates, with reasonable terms and conditions that are demonstrably free of any unfair

5  discrimination;

6        G.     Decree that Microsoft is entitled to license from Defendants any and all patents

7  that fall within Defendants' commitments to the IEEE in relation to WLAN technology on a

   non-discriminatory basis on reasonable terms and conditions;

8        H.     Decree that Microsoft is entitled to license from Defendants any and all patents

9  that fall within Defendants' commitments to the ITU-T in relation to H.264 technology on a

10  non-discriminatory basis on reasonable terms and conditions; and

11        I.     For such other and further relief as the Court deems just and proper.

12       DATED this _____ day of February, 2011.

13                 DANIELSON HARRIGAN LEYH & TOLLEFSON LLP

14

15

16                By _____/s/ Shane P. Cramer_____
                   Arthur W. Harrigan, Jr., WSBA #1751

17                    Christopher Wion, WSBA #33207
                  Shane P. Cramer, WSBA #35099

18

19                T. Andrew Culbert, WSBA #35925
              David E. Killough, WSBA #21119

20                MICROSOFT CORPORATION
              1 Microsoft Way

21                Redmond, WA  98052
              Phone:  425-882-8080

22                Fax:  425-869-1327

23                John W. McBride, *(pro hac vice)*
              David T. Pritikin, *(pro hac vice)*

24                Richard A. Cederoth, *(pro hac vice)*
              Douglas I. Lewis, *(pro hac vice)*

25                SIDLEY AUSTIN LLP

**AMENDED AND SUPPLEMENTAL
COMPLAINT - 25**

One South Dearborn
Chicago, IL  60603
Phone:  312-853-7000
Fax:  312-853-7036

Brian R. Nester, *(pro hac vice)*
Kevin C. Wheeler, *(pro hac vice)*
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC  20005
Telephone:  202-736-8000
Fax:  202-736-8711

Counsel for Plaintiff Microsoft Corp.

AMENDED AND SUPPLEMENTAL
COMPLAINT - 26

# APPENDIX A

| PATENT NO. | TITLE |
|---|---|
| 4,860,003 | Communication System Having a Packet Structure Field |
| 5,142,533 | Method for Controlling the Scheduling of Multiple Access to Communication Resources |
| 5,164,986 | Formation of Rekey Messages in a Communication System |
| 5,239,294 | Method for Authentication and Protection of Subscribers in Telecommunication Systems |
| 5,572,193 | Method for Authentication and Protection of Subscribers in Telecommunications Systems |
| 5,272,724 | Wideband Signal Synchronization |
| 5,319,712 | Method and Apparatus for Providing Cryptographic Protection of a Data Stream in a Communication System |
| 5,329,547 | Method and Apparatus for Coherent Communication in a Spread-Spectrum Communication System |
| 5,467,398 | A Method of Messaging in a Communication System |
| 5,560,021 | A Power Management and Packet Delivery Method for Use in a Wireless Local Area |
| 5,636,223 | Methods of Adaptive Channel Access Attempts |
| 5,689,563 | Method and Apparatus for Efficient Real-Time Authentication and Encryption in a Communication System |
| 5,822,359 | A Coherent Random Access Channel in a Spread-Spectrum Communications System and Method |
| 5,311,516 | Paging System Using Message Fragmentation to Redistribute Traffic |
| 6,069,896 | Capability Addressable Network and Method Therefor |
| 6,331,972 | Personal Data Storage and Transaction Device System and Method |
| 5,495,482 | Voice and Data Packet Communication Method and Apparatus |
| 5,357,571 | A Method for Point-to-Point Communications within Secure Communication Systems |
| 5,412,722 | Encryption Key Management |
| 5,029,183 | Packet Data Communication System |
| 5,479,441 | Packet Data Communication System |
| 5,519,730 | Communication Signal Having a Time Domain Pilot Component |
| 6,236,674 | Transceiver Control with Sleep Mode Operation |
| 6,404,772 | Voice and Data Wireless Communications Network and Method |
| 6,473,449 | High-Data-Rate Wireless Local Area Network |
| 7,143,333 | Method and Apparatus for Encoding and Decoding Data |
| 7,493,548 | Method and Apparatus for Encoding and Decoding Data |
| 7,165,205 | Method and Apparatus for Encoding and Decoding Data |