# Exhibit 4

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

# UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

| | |
|---|---|
| In the Matter of | ) |
| | ) |
| | ) Investigation No. 337-TA-_____ |
| CERTAIN GAMING AND | ) |
| ENTERTAINMENT CONSOLES, | ) |
| RELATED SOFTWARE, AND | ) |
| COMPONENTS THEREOF | ) |
| | ) |
| | ) |

## VERIFIED COMPLAINT UNDER SECTION 337 OF THE TARIFF ACT OF 1930, AS AMENDED

**Complainants**

Motorola Mobility, Inc.
600 North US Highway 45
Libertyville, IL 60048
Telephone: (847) 523-5000

General Instrument Corporation
101 Tournament Drive
Horsham, PA 19044
Telephone: (215) 442-5693

**Respondent**

Microsoft Corporation
One Microsoft Way
Redmond, WA 98052
Telephone: (425) 882-8080

### Counsel for Complainants

Jesse J. Jenner
Steven Pepe
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10020
Telephone: (212) 596-9000

Paul M. Schoenhard
Kevin J. Post
Ropes & Gray LLP
700 12th Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 508-4600

Norman H. Beamer
Gabrielle E. Higgins
Joshua V. Van Hoven
Ropes & Gray LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303
Telephone: (650) 617-4000

Charles F. Schill
John M. Caracappa
Jamie B. Beaber
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington DC 20036
Telephone: (202) 429-3000

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

I.    INTRODUCTION ..................................................................................................1

II.   THE PARTIES .....................................................................................................3

     A.    The Complainants ..................................................................................3

     B.    The Respondent .....................................................................................6

III.  THE ACCUSED PRODUCTS ...............................................................................6

IV.  THE ASSERTED PATENTS AND NON-TECHNICAL DESCRIPTION
     OF THE ASSERTED PATENTS .........................................................................7

     A.    The '712 Patent ......................................................................................7

            1.    Identification of the '712 Patent and Ownership by Motorola Mobility ...........7

            2.    Foreign Counterparts to the '712 Patent .........................................8

            3.    Non-Technical Description of the '712 Patent...................................8

     B.    The '571 Patent ......................................................................................9

            1.    Identification of the '571 Patent and Ownership by Motorola Mobility ...........9

            2.    Foreign Counterparts to the '571 Patent .........................................9

             3.    Non-Technical Description of the '571 Patent...................................10

     C.    The '896 Patent ......................................................................................10

            1.    Identification of the '896 Patent and Ownership by Motorola Mobility .........10

            2.    Foreign Counterparts to the '896 Patent .........................................11

             3.    Non-Technical Description of the '896 Patent...................................11

     D.    The '596 Patent ......................................................................................11

            1.    Identification of the '596 Patent and Ownership by General Instrument .........11

            2.    Foreign Counterparts to the '596 Patent .........................................12

             3.    Non-Technical Description of the '596 Patent...................................12

     E.    The '094 Patent ......................................................................................13

            1.    Identification of the '094 Patent and Ownership by General Instrument .........13

            2.    Foreign Counterpart to the '094 Patent .........................................13

            3.    Non-Technical Description of the '094 Patent...................................13

     F.    Licenses Relating to the Asserted Patents ...............................................14

V.   UNLAWFUL AND UNFAIR ACTS OF RESPONDENT....................................14

VI.  SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE...............................17

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

VII.   CLASSIFICATION OF THE INFRINGING PRODUCTS UNDER
       THE HARMONIZED TARIFF SCHEDULE..................................................................18

VIII.  THE DOMESTIC INDUSTRY RELATING TO THE ASSERTED PATENTS................18

       A.   Overview...........................................................................................................18

       B.   Significant Investment in Plant and Equipment, Significant Employment
            of Labor and Capital, and Substantial Investment in Exploitation,
            Including Engineering, Research and Development, and Licensing of the
            Asserted Patents and Articles Protected by the Asserted Patents...............................19

            1.   Economic Prong ........................................................................................19

            2.   Technical Prong .........................................................................................24

       C.   A Domestic Industry Exists ...............................................................................25

IX.    RELATED PROCEEDINGS .........................................................................................25

       A.   Prior Proceedings..............................................................................................25

       B.   Current Proceedings...........................................................................................26

X.     RELIEF REQUESTED ..................................................................................................28

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

## EXHIBIT AND APPENDIX LIST

| Exhibits | Description |
| --- | --- |
| Exhibit 1 | Certified Copy of United States Patent No. 5,319,712 |
| Exhibit 2 | Certified Copy of United States Patent No. 5,357,571 |
| Exhibit 3 | Copy of United States Patent No. 6,069,896 |
| Exhibit 4 | Certified Copy of United States Patent No. 6,980,596 |
| Exhibit 5 | Certified Copy of United States Patent No. 7,162,094 |
| Exhibit 6 | Certified Copy of the Assignment of United States Patent No. 5,319,712 |
| Exhibit 7 | Certified Copy of the Assignment of United States Patent No. 5,357,571 |
| Exhibit 8 | Copy of the Assignment of United States Patent No. 6,069,896 |
| Exhibit 9 | Certified Copy of the Assignment of United States Patent No. 6,980,596 |
| Exhibit 10 | Certified Copy of the Assignment of United States Patent No. 7,162,094 |
| Exhibit 11 | Relevant Pages from Motorola's Form 10-Q for the Period Ended April 3, 2010 |
| Exhibit 12 | Relevant Pages from Motorola's Form 10-Q for the Period Ended July 3, 2010 |
| Exhibit 13 | Relevant Pages from Motorola's Form 10-Q for the Period Ended October 2, 2010 |
| Exhibit 14 | Relevant Pages from Motorola's 2009 Annual Report |
| Exhibit 15 | Form 10 General Form for Registration of Securities filed on July 1, 2010 by Motorola SpinCo Holdings Corporation, as Amended on August 31, 2010; October 8, 2010; and November 12, 2010 |
| Exhibit 16 | "Making History: Developing the Portable Cellular System," *available at* http://www.motorola.com/staticfiles/Business/Corporate/US-EN/history/feature-cell-phone-development.html |
| Exhibit 17 | "A History of Innovation: Timeline of Motorola History, 1928-2009," *available at* http://www.motorola.com/web/Business/Corporate/US-EN/history/timeline.html |
| Exhibit 18 | Relevant Pages from Microsoft's 2010 Annual Report |
| Exhibit 19 | Foreign Counterparts to the Asserted Patents |
| Exhibit 20 | Infringement Claim Charts for Independent Claims 6 and 17 of United States Patent No. 5,319,712 |
| Exhibit 21 | Infringement Claim Charts for Independent Claims 9, 12, 15, and 17 of United States Patent No. 5,357,571 |
| Exhibit 22 | Infringement Claim Chart for Independent Claims 1 and 12 of United States Patent No. 6,069,896 |
| Exhibit 23 | Infringement Claim Chart for Independent Claim 1 of United States Patent No. 6,980,596 |
| Exhibit 24 | Infringement Claim Charts for Independent Claims 5, 6, 7, 8, and 10 of United States Patent No. 7,162,094 |
| Exhibit 25 | "Xbox 360 250GB Hard Drive - What You Get," *available at* http://www.xbox.com/en-US/Xbox360/Consoles/Systems/Xbox360250gb |
| Exhibit 26 | "Xbox 360 4GB Console - What You Get," *available at* http://www.xbox.com/en-US/Xbox360/Consoles/Systems/Xbox3604gb |

♦ PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) ♦

| Exhibits | Description |
|---|---|
| Exhibit 27 | "Xbox Engineering Blog - Xbox 360 Wireless Networking," *available at* http://www.xbox.com/en-US/Live/EngineeringBlog/043010-WirelessNetworking |
| Exhibit 28 | Relevant Pages from IEEE Standard 802.11-2007 |
| Exhibit 29 | Relevant Pages from IEEE Standard 802.2-1998 |
| Exhibit 30 | "Microsoft Support," *available at* http://support.microsoft.com/kb/945416 |
| Exhibit 31 | Relevant Pages from ITU-T H.264 Standard (03/2010) |
| Exhibit 32 | United States Patent Application Publication No. 2006/0154712 |
| Exhibit 33 | Xbox 360 Wireless Controller User Manual, Part Number: X11-29949-03 |
| Exhibit 34 | "Troubleshoot Xbox controllers and headsets," *available at* http://support.xbox.com/en-us/pages/xbox-360/troubleshoot/accessories/controllers-remotes.aspx |
| Exhibit 35 | United States Patent No. 7,787,411 |
| Exhibit 36 | Relevant Pages from Xbox 360 S Console User Manual |
| Exhibit 37 | Relevant Pages from Xbox Wireless Headset User Manual |
| Exhibit 38 | Purchase Receipt for 250 GB Xbox 360 S |
| Exhibit 39 | Photocopies of 250 GB Xbox 360 S Packaging and Pictures of Console |
| Exhibit 40 | Motorola's Limited Warranty |
| Exhibit 41 | Droid 2 User Guide |
| Exhibit 42 | VIP1200 Installation Manual |
| Exhibit 43 | Domestic Industry Claim Chart for Representative Claim 17 of United States Patent No. 5,319,712 |
| Exhibit 44 | Domestic Industry Claim Chart for Representative Claim 12 of United States Patent No. 5,357,571 |
| Exhibit 45 | Domestic Industry Claim Chart for Representative Claim 1 of United States Patent No. 6,069,896 |
| Exhibit 46 | Domestic Industry Claim Chart for Representative Claim 1 of United States Patent No. 6,980,596 |
| Exhibit 47 | Domestic Industry Claim Chart for Representative Claim 5 of United States Patent No. 7,162,094 |
| Exhibit 48 | Droid 2 - Tech Specs |
| Exhibit 49 | DROID 2 - Wi-Fi |
| Exhibit 50 | Droid X User Guide |
| Exhibit 51 | Droid X Technical Specification |
| Exhibit 52 | CommandOne Technical Specification |
| Exhibit 53 | Specification of the Bluetooth System, Version 2.1 + EDR |
| Exhibit 54 | Bluetooth Discovery Whitepaper |
| Exhibit 55 | VIP1200 Spec Sheet |
| Exhibit 56 | "Say Hello to the New Xbox 360," *available at* http://www.xbox.com/en-US/xbox360/consoles?xr=shellnav |
| Physical Exhibit 1 | Microsoft 250 GB Xbox 360 S |

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

| Confidential Exhibits | Description |
|---|---|
| Confidential Exhibit A | Identification of Licenses Relating to the Asserted Patents |
| Confidential Exhibit B | Motorola Mobility (including General Instrument) Patent Licensing Data |
| Confidential Exhibit C | Amended and Restated Intellectual Property Assignment Agreement Between Motorola, Inc. and Motorola Mobility, Inc. |
| Confidential Exhibit D | Contribution, Assignment and Assumption Agreement dated July 31, 2010 |
| Confidential Exhibit E | United States Personnel Data for Motorola Mobility (including General Instrument) |
| Confidential Exhibit F | United States Primary Facilities Data for Motorola Mobility (including General Instrument) |
| Confidential Exhibit G | United States Net Sales Data for Exemplary Mobile Devices Relevant to U.S. Patent Nos. 5,319,712; 5,357,571; and 6,069,896 |
| Confidential Exhibit H | United States Net Sales Data for Exemplary Set-Top Boxes Relevant to U.S. Patent Nos. 6,980,596 and 7,162,094 |
| Confidential Exhibit I | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit J | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit K | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit L | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit M | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit N | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit O | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit P | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit Q | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit R | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit S | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit T | Infrastructure License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit U | Subscriber License Between Motorola, Inc. and {--CBI--} |

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

| Confidential Exhibits | Description |
|---|---|
| Confidential Exhibit V | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit W | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit X | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit Y | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit Z | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit AA | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit BB | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit CC | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit DD | Amendment to License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit EE | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit FF | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit GG | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit HH | First Amendment to License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit II | Second Amendment to License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit JJ | First Amendment to License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit KK | Second Amendment to License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit LL | Third Amendment to License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit MM | First License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit NN | Amendment to First License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit OO | Second License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit PP | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit QQ | License Between Motorola, Inc. and {--CBI--} |

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

| Confidential Exhibits | Description |
|---|---|
| Confidential Exhibit RR | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit SS | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit TT | Amendment to License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit UU | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit VV | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit WW | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit XX | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit YY | Amendment to License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit ZZ | License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit AAA | Amendment to License Between Motorola, Inc. and {--CBI--} |
| Confidential Exhibit BBB | VIPXXX Product Functional Specification |

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

| Appendices | Description |
|---|---|
| Appendix 1 | Certified File History of United States Patent No. 5,319,712 |
| Appendix 2 | Certified File History of United States Patent No. 5,357,571 |
| Appendix 3 | File History of United States Patent No. 6,069,896 |
| Appendix 4 | Certified File History of United States Patent No. 6,980,596 |
| Appendix 5 | Certified File History of United States Patent No. 7,162,094 |
| Appendix 6 | Technical References Cited in U.S. Patent No. 5,319,712 |
| Appendix 7 | Technical References Cited in U.S. Patent No. 5,357,571 |
| Appendix 8 | Technical References Cited in U.S. Patent No. 6,069,896 |
| Appendix 9 | Technical References Cited in U.S. Patent No. 6,980,596 |
| Appendix 10 | Technical References Cited in U.S. Patent No. 7,162,094 |

• CONTAINS CONFIDENTIAL BUSINESS INFORMATION •

## I.   INTRODUCTION

1.     Motorola Mobility, Inc. ("Motorola Mobility") and General Instrument Corporation ("General Instrument") (collectively, "Complainants") request that the United States International Trade Commission ("Commission") institute an investigation into violations of Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 ("Section 337").

2.     Upon information and belief, Microsoft Corporation ("Microsoft" or "Respondent") has engaged in unfair acts in violation of Section 337 through unlawful and unauthorized importation and/or sale for importation into the United States, and/or the sale within the United States after importation, of certain gaming and entertainment consoles, related software, and components thereof ("the Accused Products"). Upon information and belief, Microsoft infringes one or more claims of United States Patent Nos. 5,319,712 ("the '712 Patent"); 5,357,571 ("the '571 Patent"); 6,069,896 ("the '896 Patent); 6,980,596 ("the '596 Patent"); and 7,162,094 ("the '094 Patent") (collectively "the Asserted Patents"). *See* Exhs. 1-5.

3.     Complainant Motorola Mobility owns by assignment the entire right, title, and interest in and to the '712, '571, and '896 Patents. *See* Exhs. 6-8 (recorded assignments of the '712, '571, and '896 Patents to Motorola, Inc.); Conf. Exh. C (assignment of the '712, '571, and '896 Patents from Motorola, Inc. to Motorola Mobility).[1] General Instrument, a wholly owned subsidiary of Motorola Mobility, owns by assignment the entire right, title, and interest in and to the '596 and '094 Patents. *See* Exhs. 9-10 (recorded assignments of the '596 and '094 Patents to

---

[1]  At the earliest practicable time following recordation by the USPTO of the assignments of the '712, '571, and '896 Patents from Motorola, Inc. to Motorola Mobility and the issuance of certified copies thereof, Motorola Mobility will provide the Commission with certified copies of the relevant assignments.

◆ PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) ◆

General Instrument); Conf. Exh. C (confirmation that the '596 and '094 Patents would remain the property of General Instrument, a subsidiary of Motorola Mobility).

4.      Complainants' historic and current operations in the United States qualify as a domestic industry relating to the articles protected by the Asserted Patents, within the meaning of 19 U.S.C. § 1337(a)(2).

5.      Complainants design, develop, market, sell, and service in the United States products that practice one or more claims of each of the Asserted Patents.  Research and development of intellectual property in relevant areas of technology were and remain integral parts of Complainants' and their predecessors' extensive domestic licensing programs, which include licenses to each of the Asserted Patents.  Indeed, all of the Asserted Patents were the result of the research and development efforts and investments of Complainants and/or their predecessors in the United States.

6.      Complainants and their predecessors have licensed and continue actively to license their intellectual property assets, including the Asserted Patents.[2]

7.      Complainants seek relief from the Commission in the form of a permanent exclusion order prohibiting entry into the United States of the Accused Products for infringing one or more claims of the Asserted Patents.  Complainants further seek a cease and desist order prohibiting Microsoft and its subsidiaries, related companies, and agents from engaging in the importation, sale for importation, marketing, distribution, offering for sale, sale, or other transfers within the United States after importation of the Accused Products.

---

[2]  Pursuant to a Contribution, Assignment and Assumption Agreement dated July 31, 2010 ("the Contribution Agreement"), Motorola Mobility acquired from Motorola, Inc. the right, title, and interest in and to certain licenses related to the Asserted Patents, which are identified in Schedule 1.1(a) of the Contribution Agreement. *See* Conf. Exh. D.  Other licenses related to the Asserted Patents identified in Schedule 1.1(e)(ii) of the Contribution Agreement were retained by Motorola, Inc.

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

## II.   THE PARTIES

### A.   The Complainants

8.     Motorola Mobility is a corporation organized and existing under the laws of Delaware and having a principal place of business at 600 North US Highway 45, Libertyville, Illinois 60048. Motorola Mobility is a wholly owned subsidiary of Motorola, Inc. ("Motorola"). Relevant excerpts of Motorola's Form 10-Q's for the period ended April 3, 2010; July 3, 2010; and October 2, 2010; and its 2009 Annual Report are attached as Exhibits 11, 12, 13, and 14, respectively.

9.     General Instrument is a corporation organized and existing under the laws of Delaware and having a principal place of business at 101 Tournament Drive, Horsham, Pennsylvania 19044. General Instrument is a wholly owned subsidiary of Motorola Mobility.

10.     As explained in an October 8, 2010 amendment to a July 1, 2010 Form 10 (General Form for the Registration of Securities) filed with the Securities and Exchange Commission, Exh. 15, Motorola transferred its Mobile Devices and Home business units (the Home unit including General Instrument and the '596 and '094 Patents) to Motorola Mobility. Motorola also assigned to Motorola Mobility patents that had formerly been attributed to Motorola's Mobile Devices and Home business units, including the '712, '571, and '896 Patents. Motorola Mobility also acquired all licensing operations related to the Asserted Patents. Moreover, Motorola Mobility acquired several licenses related to the Asserted Patents, while other licenses related to the Asserted Patents were retained by Motorola. *See* Conf. Exh. D, Schedule 1.1(a) (licenses transferred to Motorola Mobility), Schedule 1.1(e)(ii) (licenses retained by Motorola). In the first quarter of 2011, Motorola Mobility will be acquired by Motorola Mobility Holdings, Inc. ("Mobility Holdings") (formerly Motorola SpinCo Holdings Corp. ("SpinCo")), which will separate from Motorola, Inc. via a stock distribution. Motorola Mobility

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

will provide the Commission with appropriate documentation as soon as practicable following the separation.  Motorola Mobility will continue to own the Asserted Patents and will continue its business operations.

11.     As a result of long-term domestic activities, Complainants have positioned themselves as industry leaders in the convergence of mobility, media, and the Internet.  Together with its subsidiary, General Instrument, Motorola Mobility's comprehensive product line includes mobile converged devices and smartphones, digital entertainment devices in the home, and end-to-end video, voice, and data solutions that enable it to provide advanced mobile media solutions and multi-screen experiences for its customers.

12.     From the introduction of its first commercially successful car radio in 1930 to the inception of the world's first commercial portable cellular phone in 1983, Motorola and Motorola Mobility have developed substantial proprietary and leading technology in the fields of electronics and communications.  *See* Exh. 16 (excerpt from Motorola's website).  Motorola was also the first to bring push-to-talk over cellular to market.   More recently, Motorola has continued to lead the way, bringing to market the ultra-slim RAZR and the first-ever Android smartphone.  *See* Exh. 17 (excerpt from Motorola's website).

13.     As an independent business and later as a subsidiary of Motorola and now Motorola Mobility, General Instrument has been a leader in the electronics industry.  Among other accomplishments, General Instrument was responsible for proposing the world's first all-digital HDTV technical standard.  *See* Exh. 17.  Over the past several decades, General Instrument has built and maintained its position as the leading American provider of cable television equipment, including signal scramblers and set-top boxes.

-4-

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

14.    Motorola Mobility (including General Instrument) designs, manufactures, sells, and services, for example, wireless handsets with integrated software and accessory products and set-top boxes.

15.    Complainants and their predecessors have commercialized and continue to actively commercialize the patented technologies, and license the Asserted Patents to other major manufacturers and retailers of electronic communications products. *See* Conf. Exh. A (listing active licenses involving the Asserted Patents).

16.    Motorola's research and development expenditures relating to new product development or product improvement, which include domestic research and development expenditures by the Mobile Devices and Home business units (now part of Motorola Mobility and including General Instrument), were $3.2 billion in 2009, $4.1 billion in 2008, and $4.4 billion in 2007. *See* Exh. 14 at 15. Complainants continue to believe that a strong commitment to research and development is required to drive the long-term growth of the companies. Approximately 22,000 professional employees were engaged in research and development activities during 2009. *See id.* As of December 31, 2009, Motorola and its wholly owned subsidiaries owned approximately 10,000 patents in the United States and more than 13,000 patents in foreign countries. *See id.* Many of the patents owned by Motorola, Motorola Mobility and General Instrument are used in their operations or licensed for use by others. *See id.*

17.    Complainants and their predecessors have granted licenses of varying scope to various companies under many of these patents, including the Asserted Patents. *See* Conf. Exh. A. These licensing activities have yielded substantial revenue for Complainants and their predecessors. Confidential Exhibit B sets forth the royalty revenue Motorola has generated from

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

its licenses that include the Asserted Patents in the past three fiscal years.  Complainants, through Motorola Mobility, continue Motorola's extensive domestic licensing activities.

### B.    The Respondent

18.    Upon information and belief, Microsoft is a corporation organized under the laws of the State of Washington and has its principal place of business at One Microsoft Way, Redmond, WA 98052.

19.    Upon information and belief, a substantial portion of Microsoft's operations is related to the design, manufacture, and sale of the Accused Products.  Microsoft realized $62.5 billion in revenue in fiscal year 2010, of which approximately $5.5 billion was attributable to sales of Xbox 360 gaming and entertainment consoles, related software, components thereof, and related accessories and services. *See* Exh. 18 at 72.  Microsoft shipped 10.3 million Xbox 360 consoles in fiscal year 2010.  *See id.* at 21.  Further, approximately 58% of Microsoft's total revenue ($36.2 billion) was generated in the United States marketplace. *See id.* at 71.

20.    Upon information and belief, Microsoft's Accused Products are manufactured outside the United States, in, *e.g.*, China. *See, e.g.*, Paragraph 57, *infra*.  Thus, upon information and belief, as of the filing of this Complaint, all of the Accused Products are being imported into the United States.

## III.    THE ACCUSED PRODUCTS

21.    Upon information and belief, Microsoft designs, manufactures, imports, and/or sells for importation into the United States, and/or sells within the United States after importation, certain gaming and entertainment consoles, related software, and components thereof.

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

22.     The Accused Products utilize various wireless technologies that, for example, establish data connections with wireless networks, transmit data signals to and from a wireless device, and encrypt data during a wireless communication.  The Accused Products also utilize technologies that decode digital video content.

23.     Upon information and belief, each of the Accused Products meets each and every limitation of at least one claim of the Asserted Patents.  The Accused Products include, but are not limited to, the 250 GB Xbox 360 S and the 4 GB Xbox 360 S.[3]  These products, however, are merely illustrative of the types of infringing products that Respondent manufactures and imports into the United States, sells for importation into the United States, and/or sells within the United States after importation in violation of Section 337.

## IV.   THE ASSERTED PATENTS AND NON-TECHNICAL DESCRIPTION OF THE ASSERTED PATENTS

### A.   The '712 Patent

#### 1.   Identification of the '712 Patent and Ownership by Motorola Mobility

24.     Motorola Mobility owns by assignment the entire right, title, and interest in and to United States Patent No. 5,319,712, titled "Method and Apparatus for Providing Cryptographic Protection of a Data Stream in a Communication System," which issued on June 7, 1994, naming Louis D. Finkelstein, James J. Kosmach, and Jeffrey C. Smolinske as inventors.  A certified copy of the '712 Patent is attached as Exhibit 1.  A certified copy of the recorded assignment from the named inventors to Motorola is attached as Exhibit 6.  A copy of the July 31, 2010 assignment of the '712 Patent from Motorola to Motorola Mobility is attached as Confidential Exhibit C.

---

[3]  Complainants are providing the Commission with an exemplar Accused Product, a 250 GB Xbox 360 S, marked as Physical Exhibit 1.

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

Motorola Mobility will submit a certified copy of this assignment once it is recorded at the United States Patent and Trademark Office.

25.     Pursuant to Commission Rule 210.12, a certified copy and three additional copies of the prosecution history of the '712 Patent, as well as four copies of each technical reference mentioned in the prosecution history of the '712 Patent, are submitted concurrently herewith as Appendices 1 and 6, respectively.

## 2.     Foreign Counterparts to the '712 Patent

26.     Pursuant to Commission Rule 210.12(a)(9)(v), Exhibit 19 lists foreign counterparts that generally correspond to the '712 Patent, including an indication of status.  No other foreign patent or patent application corresponding to the '712 Patent has been issued, abandoned, rejected, or remains pending.

## 3.     Non-Technical Description of the '712 Patent

27.     The '712 Patent discloses, *inter alia*, cryptographic protection of a data stream in wireless communication architectures, including the Open Systems Interconnection ("OSI") network architecture.   OSI is an abstract reference model for how information should be transmitted between any two points in a layered telecommunication network.   The model has seven layers of functions that take place at each end of a communication.  From top to bottom, the layers consist of the Application, Presentation, Session, Transport, Network, Data-Link, and Physical Layers.  In the asserted claims of the '712 Patent, the cryptographic protection is accomplished on the transmitting side, particularly by assigning a packet sequence number and a transmit overflow sequence number to a data packet received at a data link layer from a network layer.  The transmit overflow sequence number is a function of the packet sequence number.

-8-

**• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •**

The packet sequence number and transmit overflow sequence number values are then used to encrypt the packet, which is then transmitted over the physical layer.

### B.   The '571 Patent

#### 1.   Identification of the '571 Patent and Ownership by Motorola Mobility

28.    Motorola Mobility owns by assignment the entire right, title, and interest in and to United States Patent No. 5,357,571, titled "Method for Point-to-Point Communications Within Secure Communication Systems," which issued on October 18, 1994, naming Dean E. Banwart as inventor.  A certified copy of the '571 Patent is attached as Exhibit 2.  A certified copy of the recorded assignment from the named inventor to Motorola is attached as Exhibit 7.  A copy of the July 31, 2010 assignment of the '571 Patent from Motorola to Motorola Mobility is attached as Confidential Exhibit C.  Motorola Mobility will submit a certified copy of this assignment once it is recorded at the United States Patent and Trademark Office.

29.    Pursuant to Commission Rule 210.12, a certified copy and three additional copies of the prosecution history of the '571 Patent, as well as four copies of each technical reference mentioned in the prosecution history of the '571 Patent, are submitted concurrently herewith as Appendices 2 and 7, respectively.

#### 2.   Foreign Counterparts to the '571 Patent

30.    Pursuant to Commission Rule 210.12(a)(9)(v), Exhibit 19 lists foreign counterparts that generally correspond to the '571 Patent, including an indication of status.  No other foreign patent or patent application corresponding to the '571 Patent has been issued, abandoned, rejected, or remains pending.

-9-

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

### 3.    Non-Technical Description of the '571 Patent

31.    The '571 Patent discloses, *inter alia*, secure point-to-point communications between communication units using wireless communication architectures.    A first communication unit transmits the identity of an encryption key variable and information pertaining to a predetermined function to a second communication unit.    The first and second communication units can each generate a private call key variable based on the identified encryption key variable and the predetermined function.    The communication units can then utilize the shared private call key variable to engage in secure point-to-point communications, using the private call key variable to protect the data they exchange.

## C.    The '896 Patent

### 1.    Identification of the '896 Patent and Ownership by Motorola Mobility

32.    Motorola Mobility owns by assignment the entire right, title, and interest in and to United States Patent No. 6,069,896, titled "Capability Addressable Network and Method Therefor," which issued on May 30, 2000, naming Ronald W. Borgstahl, Jeffrey Martin Harris, Ernest Earl Woodward, and David G. Leeper as inventors.    A copy of the '896 Patent is attached as Exhibit 3.    A copy of the recorded assignment from the named inventors to Motorola is attached as Exhibit 8.[4]    A copy of the July 31, 2010 assignment of the '896 Patent from Motorola to Motorola Mobility is attached as Confidential Exhibit C.    Motorola Mobility will submit a certified copy of this assignment once it is recorded at the United States Patent and Trademark Office.

---

[4]    Complainants are in the process of obtaining certified copies of the '896 Patent and the recorded assignment from the named inventors to Motorola.    Complainants will submit these certified copies to the Commission as soon as practicable.

♦ PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) ♦

33.     Pursuant to Commission Rule 210.12, four copies of the prosecution history of the '896 Patent, as well as four copies of each technical reference mentioned in the prosecution history of the '896 Patent, are submitted concurrently herewith as Appendices 3 and 8, respectively.[5]

### 2.     Foreign Counterparts to the '896 Patent

34.     Pursuant to Commission Rule 210.12(a)(9)(v), Exhibit 19 lists foreign counterparts that generally correspond to the '896 Patent, including an indication of status.  No other foreign patent or patent application corresponding to the '896 Patent has been issued, abandoned, rejected, or remains pending.

### 3.     Non-Technical Description of the '896 Patent

35.     The '896 Patent discloses, *inter alia*, establishing connections between devices in a wireless peer-to-peer network.  According to the disclosed methods, a first peer initiates a setup connection using an unsolicited message that is broadcast to devices in the network.  Based on this initial message, which includes an identification of the first peer, a connection is authorized and the involved peers exchange needs and capabilities.  Following this exchange, the peers can selectively process a service connection based on the needs and capabilities that were identified.

### D.     The '596 Patent

#### 1.     Identification of the '596 Patent and Ownership by General Instrument

36.     General Instrument owns by assignment the entire right, title, and interest in and to United States Patent No. 6,980,596, titled "Macroblock Level Adaptive Frame/Field Coding

---

[5]  Complainants are in the process of obtaining a certified copy of the prosecution history of the '896 Patent and will submit it to the Commission as soon as practicable.

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

for Digital Video Content," which issued on December 27, 2005, naming Limin Wang, Rajeev Gandhi, Krit Panusopone, and Ajay Luthra as inventors. A certified copy of the '596 Patent is attached as Exhibit 4. A certified copy of the recorded assignment from the named inventors to General Instrument is attached as Exhibit 9.

37.     Pursuant to Commission Rule 210.12, a certified copy and three additional copies of the prosecution history of the '596 Patent, as well as four copies of each technical reference mentioned in the prosecution history of the '596 Patent, are submitted concurrently herewith as Appendices 4 and 9, respectively.

### 2.     Foreign Counterparts to the '596 Patent

38.     Pursuant to Commission Rule 210.12(a)(9)(v), Exhibit 19 lists foreign counterparts that generally correspond to the '596 Patent, including an indication of status. No other foreign patent or patent application corresponding to the '596 Patent has been issued, abandoned, rejected, or remains pending.

### 3.     Non-Technical Description of the '596 Patent

39.     The '596 Patent discloses, *inter alia,* macroblock level adaptive frame/field coding for digital video content ("MBAFF"). The method entails applying frame/field coding to groups of neighboring macroblocks (*e.g.*, a macroblock pair). MBAFF coding, when performed on macroblock pairs, can be in field mode or frame mode. If a macroblock pair is coded in frame mode, the two fields in each of the macroblocks are coded jointly. If the macroblock pair is coded in field mode, it is first split into one top field macroblock and one bottom field macroblock. The two fields (which are each the size of a single macroblock) are then coded separately. The digital video coding inventions of the '596 Patent thus facilitate higher levels of

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

compression of digital video content, thereby minimizing storage requirements, while maintaining playback quality.

### E.    The '094 Patent

#### 1.    Identification of the '094 Patent and Ownership by General Instrument

40.    General Instrument owns by assignment the entire right, title, and interest in and to United States Patent No. 7,162,094, titled "Frequency Coefficient Scanning Paths for Coding Digital Video Content," which issued on January 9, 2007, naming Limin Wang, David M. Baylon, Krit Panusopone, Rajeev Gandhi, Yue Yu, and Ajay Luthra as inventors. A certified copy of the '094 Patent is attached as Exhibit 5. A certified copy of the recorded assignment from the named inventors to General Instrument is attached as Exhibit 10.

41.    Pursuant to Commission Rule 210.12, a certified copy and three additional copies of the prosecution history of the '094 Patent, as well as four copies of each technical reference mentioned in the prosecution history of the '094 Patent, are submitted concurrently herewith as Appendices 5 and 10, respectively.

#### 2.    Foreign Counterpart to the '094 Patent

42.    Pursuant to Commission Rule 210.12(a)(9)(v), Exhibit 19 lists the foreign counterparts that generally correspond to the '094 Patent, including an indication of status. No other foreign patent or patent application corresponding to the '094 Patent has been issued, abandoned, rejected, or remains pending.

#### 3.    Non-Technical Description of the '094 Patent

43.    The '094 Patent discloses, *inter alia*, frequency scanning paths for transform-based decoding of digital video content. A one-dimensional array of frequency coefficients is

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

scanned to produce a two-dimensional array of frequency coefficients in a manner that is vertically biased.  The digital video coding inventions of the '094 Patent thus facilitate higher levels of compression of digital video content, thereby minimizing storage requirements, while maintaining playback quality.

### F.    Licenses Relating to the Asserted Patents

44.    Complainants, through Motorola Mobility, actively license many of their patents, including the Asserted Patents, to Third Parties, including other electronic communications product manufactures and retailers.  Pursuant to Commission Rule 210.12(a)(9)(iii), a list of entities licensed under each of the Asserted Patents is attached as Confidential Exhibit A. Pursuant to Commission Rule 210.12(a)(9)(iv), copies of the relevant licenses are attached as Confidential Exhibits I-AAA.

## V.    UNLAWFUL AND UNFAIR ACTS OF RESPONDENT—PATENT INFRINGEMENT

45.    Upon information and belief, Microsoft unlawfully sells for importation, imports, and/or sells within the United States after importation the Accused Products, thereby infringing at least independent claims 6 and 17 and associated dependent claims 8, 9, and 10 of the '712 Patent; at least independent claims 9, 12, 15, and 17 and associated dependent claims 10, 11, 13, 14, 16, and 18 of the '571 Patent; at least independent claims 1 and 12 and associated dependent claims 2 and 3 of the '896 Patent; at least independent claim 1 and associated dependent claims 2, 3, 7, and 8 of the '596 Patent; and at least independent claims 5, 6, 7, 8, and 10 of the '094 Patent.

46.    Upon information and belief, Microsoft has directly infringed and continues to directly infringe certain claims of the Asserted Patents by, *inter alia*, its importation, sale for

-14-

importation, and/or its sale in the United States after importation of the Accused Products. Microsoft also directly infringes the Asserted Patents by having its employees or agents operate, test, and/or demonstrate the Accused Products in the United States, and through those activities infringes certain claims of the Asserted Patents.

47.    Upon information and belief, Microsoft indirectly infringes the Asserted Patents by inducing and/or contributing to infringement of the Asserted Patents. For example, Microsoft induces infringement and/or contributorily infringes when consumers and/or Microsoft employees operate the Accused Products in the United States.

48.    Upon information and belief, Microsoft induces infringement because: (i) Microsoft has knowledge of the Asserted Patents, including but not limited to notice provided in the form of licensing offers, as well as previously-filed and currently-pending proceedings in the United States District Court for the Western District of Wisconsin; (ii) Microsoft intends to induce direct infringement of the Asserted Patents; (iii) Microsoft actively induces direct infringement by knowingly aiding and abetting that infringement; and/or (iv) Microsoft has actual or constructive knowledge that its actions would induce infringement. For example, Microsoft induces infringement by, among other things, providing and selling the Accused Products, creating and distributing user manuals and marketing materials, providing warranty and repair services in the United States, and by other acts and communications that instruct users how to operate the Accused Products and otherwise cause others to use the Accused Products, and thereby practice the claimed inventions of the Asserted Patents.

49.    Upon information and belief, Microsoft further contributes to infringement because there is a lack of substantial non-infringing uses for the Accused Products. Upon information and belief, Microsoft knows the Accused Products are especially made or especially

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

adapted for use in the infringement of the Asserted Patents and that the infringing portions of these products are not staple articles or commodities of commerce suitable for substantial non-infringing use.

50.     Upon information and belief, illustrative of the Accused Products that infringe the '712 Patent are the 250 GB Xbox 360 S and the 4 GB Xbox 360 S, which are capable of communicating using wireless communication architectures that include cryptographic protection of a data stream. Exhibit 20 is a claim chart that compares asserted independent claims 6 and 17 of the '712 Patent to the 250 GB Xbox 360 S. Upon information and belief, the analysis set forth in this chart applies equally to each of the Accused Products. Documents referenced in this claim chart are attached as Exhibits 1, 25-29.

51.     Upon information and belief, illustrative of the Accused Products that infringe the '571 Patent are the 250 GB Xbox 360 S and the 4 GB Xbox 360 S, which are capable of communicating using wireless communication architectures that include secure point-to-point communications between communication units. Exhibit 21 is a claim chart that compares asserted independent claims 9, 12, 15, and 17 of the '571 Patent to the 250 GB Xbox 360 S. Upon information and belief, the analysis set forth in this chart applies equally to each of the Accused Products. Documents referenced in this claim chart are attached as Exhibits 25-28.

52.     Upon information and belief, illustrative of the Accused Products that infringe the '896 Patent are the 250 GB Xbox 360 S and the 4 GB Xbox 360 S. Exhibit 22 is a claim chart that compares asserted independent claims 1 and 12 of the '896 Patent to the 250 GB Xbox 360 S, based on testing, publicly-available documents and Microsoft patent publications that appear to describe the internal functions of the Accused Products. Upon information and belief,

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

the analysis set forth in this chart applies equally to each of the Accused Products. Documents referenced in this claim chart are attached as Exhibits 32-37.

53.     Upon information and belief, illustrative of the Accused Products that infringe the '596 Patent are the 250 GB Xbox 360 S and the 4 GB Xbox 360 S, which decode digital video content. Exhibit 23 is a claim chart that compares asserted independent claim 1 of the '596 Patent to the 250 GB Xbox 360 S. Upon information and belief, the analysis set forth in this chart applies equally to each of the Accused Products. Documents referenced in this claim chart are attached as Exhibits 30-31.

54.     Upon information and belief, illustrative of the Accused Products that infringe the '094 Patent are the 250 GB Xbox 360 S and the 4 GB Xbox 360 S, which decode digital video content. Exhibit 24 is a claim chart that compares asserted independent claims 5, 6, 7, 8, and 10 of the '094 Patent to the 250 GB Xbox 360 S. Upon information and belief, the analysis set forth in this chart applies equally to each of the Accused Products. The documents referenced in this claim chart are attached as Exhibits 30-31.

## VI.     SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE

55.     Upon information and belief, Microsoft imports and/or sells for importation the Accused Products into the United States and/or sells within the United States after importation the Accused Products.

56.     The specific instance of importation of an infringing Accused Product set forth below is a representative example of Microsoft's unlawful importation, sale for importation, and/or sales within the United States after importation of infringing products.

57.     One of the Accused Products, the 250 GB Xbox 360 S, was purchased in the United States on November 1, 2010 at a Best Buy in East Palo Alto, California. The purchase

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

receipt is attached as Exhibit 38. The packaging and the label affixed to the 250 GB Xbox 360 S identifies the device as "Made in China." Exh. 39.

58.    Microsoft further markets this device under the product designation of Xbox 360 in the United States. Microsoft's website identifies for consumers in the United States several relevant features of this device and provides instructions for its purchase. *See* Exh. 56.

## VII.   CLASSIFICATION OF THE INFRINGING PRODUCTS UNDER THE HARMONIZED TARIFF SCHEDULE

59.    Upon information and belief, Microsoft's infringing Accused Products may be classified under at least the following heading and subheading of the Harmonized Tariff Schedule of the United States ("HTSUS"): 9504.10.0000.

60.    This classification is exemplary in nature and is not intended to restrict the scope of any exclusion order or other remedy ordered by the Commission.

## VIII.   THE DOMESTIC INDUSTRY RELATING TO THE ASSERTED PATENTS

### A.    Overview

61.    A domestic industry for the purposes of 19 U.S.C. § 1337(a)(2), as defined in 19 U.S.C. § 1337(a)(3)(A), (B) and (C), exists or is in the process of being established with respect to Complainants' and their predecessors' significant investment in plant and equipment, significant employment of labor and capital, and substantial investment in exploitation, including engineering, research and development, and licensing of the Asserted Patents and articles protected by the Asserted Patents.

62.    The domestic industry affected by Microsoft's unfair acts and unfair methods of competition includes the investments, activities, facilities, employees, third-party contractors, and other resources of Complainants devoted to the research and development, improvement,

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

product technical support and service, quality assurance, reliability testing and inspection, customer service, distribution, warranty, and licensing efforts, with respect to the Asserted Patents and articles protected by the Asserted Patents.

**B.**     **Significant Investment in Plant and Equipment, Significant Employment of Labor and Capital, and Substantial Investment in Exploitation, Including Engineering, Research and Development, and Licensing of the Asserted Patents and Articles Protected by the Asserted Patents**

       **1.**     **Economic Prong**

63.     Motorola Mobility, including General Instrument, employs approximately {--CBI--} individuals in several facilities throughout the United States. *See* Conf. Exh. E. These facilities comprise approximately {--CBI--} square feet of offices, warehouses and work spaces. *See* Conf. Exh. F. The activities of Complainants' employees located in these facilities include engineering and science; marketing and sales; project management; business operations and planning; administrative services; quality assurance, reliability testing, and inspection; product support; information technology; supply chain; customer service; material and distribution; and other functions related to, *inter alia*, the Asserted Patents and articles protected by the Asserted Patents. *See* Conf. Exh. E.

64.     For example, the headquarters of Motorola Mobility's operations is located in Libertyville, Illinois, where almost {--CBI--} employees work in more than {--CBI--} square feet of space. Motorola Mobility's Design Center is located in {-----------CBI-----------}, employing more than {--CBI--} employees and occupying nearly {--CBI--} square feet of space. The headquarters of General Instrument's operations is located in Horsham, Pennsylvania, where more than {--CBI--} employees work in nearly {--CBI--} square feet of space. Additional facilities, also largely dedicated to activities relating to the Asserted Patents and articles

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

protected by the Asserted Patents, are located in, *inter alia*, {-----------CBI-----------}. *See* Conf. Exh. F.

65.    Complainants' and their predecessors' total investment in recent years in personnel, plant and equipment represented by these facilities is substantial. *See* Conf. Exhs. E and F.

66.    Through their engineering, research and development, marketing, licensing, and service activities, Complainants and their predecessors have invested billions of dollars in the fields of technology related to the Asserted Patents, including the specific technologies covered by the Asserted Patents.  Approximately {--CBI--}% of Motorola Mobility's U.S. employees (including relevant employees of General Instrument) are dedicated to engineering and science operations and corresponding supporting activities.  A significant portion of Complainants' expenditures can be attributed to their research and development efforts in the United States. Confidential Exhibit E sets out the domestic employment breakdown in this category.

67.    For example, Motorola Mobility's {-----------CBI-----------} facilities are primarily responsible for researching and developing mobile devices in the U.S. market. Research and development of devices for the Home business unit is based in large part in {-----------CBI-----------}.    Across their facilities, Motorola Mobility (including General Instrument) has integrated its engineering and science operations (e.g., mechanical, electrical, electronics science, system, production, hardware, and software engineering; package and IC design), technical support operations (e.g., field and software engineering; material and process laboratories; quality reliability and assurance support), warranty and service operations, parts support operations, inspection and customer service operations.  Complainants employ and Motorola has employed, both directly and through contracting with third parties, scientific,

♦ PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) ♦

technical, administrative, and support personnel in research, product development, and engineering related to the Asserted Patents and articles protected by the Asserted Patents. *See* Conf. Exh. E.

68.　Complainants' and their predecessors' domestic investments in research and development also resulted in the inventions claimed in the Asserted Patents. In this regard, the inventors of each of the Asserted Patents were employees of Motorola or General Instrument, undertaking research and development activities out of domestic, state-of-the-art facilities.

69.　In addition to their research and product development activities, Complainants provide significant engineering support services and after-market customer support services. For example, as a part of their research and development investment, Motorola Mobility and Motorola have employed, and currently employ, approximately {--CBI--} individuals in their U.S. facilities specifically for quality assurance, reliability testing, and inspection of their mobile devices and set-top boxes, including articles protected by the Asserted Patents. *See* Conf. Exh. E. The responsibilities of individuals involved in quality assurance include, but are not limited to, predicting field failure rates, reviewing factory quality metrics, monitoring field quality, participating in solutions findings, tracking software defects, and reviewing prototype certification compliance. Aesthetic suitability of samples is also part of the inspection and partly reviewed by quality and management teams from Complainants' (through Motorola Mobility) and Motorola's distribution center in the United States.

70.　To further ensure quality and performance of Complainants' and Motorola's devices, including articles protected by the Asserted Patents, Motorola Mobility's (including General Instrument) and Motorola's employees also have performed, and currently perform, a variety of tests in the United States. Examples of these tests include assessments of reliability,

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

performance, compatibility, perceived quality, safety, and field performance. Components, subsystems, complete products, and accessories are all tested individually and in combination. Finally, packaging activities for U.S. shipments are carried out at a distribution center in Texas on behalf of Complainants and Motorola by a third party contractor.

71.     Motorola Mobility's service organizations authorize certain outside companies or third parties to service Complainants' products, including articles protected by the Asserted Patents. In order to ensure adequate support is given to its customers, Motorola Mobility provides technical training for the technicians employed by these authorized service centers in the United States. Complainants, through Motorola Mobility, also provide warranty repair work for their devices, including articles protected by the Asserted Patents. There is a toll-free customer service number in the United States: 800-331-6456. Technical assistance is provided both by Motorola Mobility employees and by third-party contractors located, among other places, in Florida and Illinois. *See* Exh. 40 (Motorola's standard limited warranty); Exh. 41 (Droid 2 support and warranty information); Exh. 50 (Droid X support and warranty information); Exhs. 42, 55 (VIP1200 support and warranty information).

72.     Finally, Complainants and Motorola have substantial investments in the sale and distribution of articles protected by the Asserted Patents. For the last four quarters, ending with Q3 2010, Complainants' (and previously Motorola's) U.S. net sales of exemplary mobile devices protected by the '712, '571, and '896 Patents have totaled approximately ${--CBI--}, *see* Conf. Exh. G, and additional sales of Bluetooth headsets relevant to the '896 Patent add to that amount. Net sales in Q3 2010 alone account for {--CBI--}% of total Mobile Devices business unit net sales over the same time period. *Compare* Conf. Exh. G *to* Exh. 13 at 26. For the last four quarters, ending with Q3 2010, Complainants' (and previously Motorola's) U.S. net sales of

-22-

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

exemplary set-top boxes protected by the '596 and '094 Patents have totaled approximately ${--CBI--}. *See* Conf. Exh. H.  Net sales in Q3 2010 alone account for {--CBI--}% of total Home business unit sales over the same time period. *Compare* Conf. Exh. H *to* Exh. 13 at 26.

73.    Complainants, through Motorola Mobility, also have substantial investments in the exploitation of the Asserted Patents through their extensive domestic licensing program. This program is responsible for the licensing of each of the Asserted Patents.

74.    Motorola Mobility's (including General Instrument's) intellectual property licensing group presently employs {--CBI--} individuals within the United States.  These employees are dedicated to the evaluation of Complainants' patent portfolio, the identification of potential licensees, the assertion of Complainants' patents, the negotiation of patent licenses, and the monitoring of compliance with the terms of those licenses.  They also perform important licensing-related functions, including patent enforcement, patent management, legal analysis, technical analysis, business planning, and various administrative tasks.  All of these employees contribute to the licensing of Complainants' technology, including the Asserted Patents. Confidential Exhibit B sets forth details regarding the significant expenditures Motorola Mobility incurs related to licensing activities.

75.    Complainants' and Motorola's licensing activities have produced licenses to many patents, including the Asserted Patents, to numerous major manufacturers.  Pursuant to Commission Rule 210.12(a)(9)(iii), a list of entities licensed under each of the Asserted Patents is attached as Confidential Exhibit A.  Pursuant to Commission Rule 210.12(a)(9)(iv), copies of the relevant licenses are attached as Confidential Exhibits I-AAA.  Confidential Exhibit B sets forth royalty revenue Motorola has generated from its licenses that include the Asserted Patents.

-23-

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

## 2.    Technical Prong

76.    For those domestic activities discussed above that relate to articles protected by the Asserted Patents, Complainants domestically design and develop wireless handheld devices, wireless communication devices, and communication system components that practice the technologies covered by the '712, '571, and '896 Patents.   In addition, Complainants domestically design and develop high definition IP video set-top boxes that practice the digital video decoding technologies covered by the '596 and '094 Patents.   Exemplary domestic industry devices include, but are not limited to, the Motorola Droid 2, the Motorola Droid X and the Motorola VIP1200.[6]

77.    Exhibit 43 is a claim chart demonstrating that each and every limitation of exemplary claim 17 of the '712 Patent is met by a representative domestic industry product, the Droid 2, which is capable of communicating using wireless communication architectures that include cryptographic protection of a data stream.   Documents referenced in this claim chart are attached as Exhibits 28-29, 48-49.

78.    Exhibit 44 is a claim chart demonstrating that each and every limitation of exemplary claim 12 of the '571 Patent is met by a representative domestic industry product, the Droid 2, which is capable of communicating using wireless communication architectures that include secure point-to-point communications between communication units.    Documents referenced in this claim chart are attached as Exhibits 28, 48-49.

79.    Exhibit 45 is a claim chart demonstrating that each and every limitation of exemplary claim 1 of the '896 Patent is met by a representative domestic industry product, the

---

[6]  Motorola Mobility will provide to the Commission physical samples of the Motorola Droid 2, Motorola Droid X (and a compatible Motorola Bluetooth headset) and the Motorola VIP1200 upon request.

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

Droid X (in combination with a compatible Bluetooth headset). Documents referenced in this claim chart are attached as Exhibits, 50-54.

80.    Exhibit 46 is a claim chart demonstrating that each and every limitation of exemplary claim 1 of the '596 Patent is met by a representative domestic industry product, the VIP1200, which is capable of decoding digital video content. Documents referenced in this claim chart are attached as Exhibits 31, 55, Confidential Exhibit BBB.

81.    Exhibit 47 is a claim chart demonstrating that each and every limitation of exemplary claim 5 of the '094 Patent is met by a representative domestic industry product, the VIP1200, which is capable of decoding digital video content. Documents referenced in this claim chart are attached as Exhibits 31, 55, Confidential Exhibit BBB.

### C.    A Domestic Industry Exists

82.    All of the domestic investments and activities of Complainants and Motorola, their employees, contractors, and inventors, constitute a domestic industry devoted to the Asserted Patents and articles protected by the Asserted Patents.

## IX.    RELATED PROCEEDINGS

### A.    Prior Proceedings

83.    On January 22, 2010, Motorola filed an action with the Commission to commence an investigation based on the alleged infringement by Research In Motion Limited and Research In Motion Corporation of a number of patents, including the '712 Patent. The Commission instituted an investigation titled *In the Matter of Certain Wireless Communications System Server Software, Wireless Handheld Devices and Battery Packs*, No. 337-TA-706. On June 29, 2010, the presiding Administrative Law Judge granted a joint motion to terminate the investigation pursuant to a settlement agreement between the parties.

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

84.     On January 22, 2010, Motorola filed a patent infringement action against Research In Motion Limited and Research In Motion Corporation based on a number of patents, including the '712 Patent, titled *Motorola, Inc. v. Research In Motion, Ltd.*, No. 10-CV-06381, in the United States District Court for the Northern District of Illinois.  That action was transferred to the United States District Court for the Northern District of Texas.  *See Motorola, Inc. v. Research In Motion, Ltd.*, No. 10-CV-480.  On June 25, 2010, the presiding District Judge granted a joint motion to dismiss the action pursuant to a settlement agreement between the parties.

**B.     Current Proceedings**

85.     On October 1, 2010, Microsoft filed an action with the United States International Trade Commission titled *In the Matter of Certain Mobile Devices, Associated Software, and Components Thereof*, No. 337-TA-744.  Microsoft requested that the Commission institute an investigation into alleged violations of Section 337 by Motorola and Motorola Mobility as a result of its alleged infringement of nine Microsoft patents.  The Commission instituted an investigation pursuant to Microsoft's request on November 1, 2010.

86.     On October 1, 2010, Microsoft filed a patent infringement action against Motorola titled *Microsoft Corp. v. Motorola, Inc.*, No. 2:10-CV-01577, in the United States District Court for the Western District of Washington.  Microsoft alleges that Motorola is infringing the same nine Microsoft patents that are at issue in the action before the Commission.  This case has been stayed until a final determination of the Commission's proceeding in *In the Matter of Certain Mobile Devices, Associated Software, and Components Thereof*.

87.     On October 6, 2010, Motorola Mobility filed a patent infringement action against Apple Inc. based on a number of patents, including the '712 Patent, titled *Motorola Mobility, Inc.*

-26-

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

and General Instrument Corp. v. Apple, Inc., No. 10-CV-06381, in the United States District Court for the Northern District of Illinois. Apple was served with the complaint on October 7, 2010. A notice of dismissal was filed on November 9, 2010, after Motorola Mobility filed counterclaims involving the same patents in response to a suit brought by Apple in the United States District Court for the Western District of Wisconsin (discussed below).

88.     On October 29, 2010, Apple filed a patent infringement action against Motorola and Motorola Mobility, titled *Apple Inc. v. Motorola, Inc. and Motorola Mobility, Inc.*, No. 10-CV-662, in the United States District Court for the Western District of Wisconsin. On November 9, 2010, Motorola Mobility filed patent infringement counterclaims based on a number of patents, including the '712 Patent.

89.     On November 9, 2010, Microsoft filed a declaratory judgment action based on alleged patent licensing obligations against Motorola and Motorola Mobility, titled *Microsoft Corp. v. Motorola, Inc. and Motorola Mobility, Inc.*, No. 10-CV-01823, in the United States District Court for the Western District of Washington. This complaint attached an appendix that listed a number of patents, including the '712, '571, and '896 Patents.

90.     On November 10, 2010, Complainants filed a patent infringement action against Microsoft based on a number of patents, including the '712, '571, '596, and '094 Patents, titled *Motorola Mobility, Inc. and General Instrument Corp. v. Microsoft Corp.*, No. 10-CV-700, in the United States District Court for the Western District of Wisconsin. Microsoft was served with the complaint on November 15, 2010.

91.     On November 10, 2010, Complainants filed a patent infringement action against Microsoft based on a number of patents, not including the Asserted Patents, titled *Motorola Mobility, Inc. and General Instrument Corp. v. Microsoft Corp.*, No. 10-CV-699, in the United

-27-

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

States District Court for the Western District of Wisconsin. Microsoft was served with the complaint on November 15, 2010.

92.     On November 10, 2010, Motorola Mobility filed a patent infringement action against Microsoft based on a number of patents, not including the Asserted Patents, titled *Motorola Mobility, Inc. v. Microsoft Corp.*, No. 10-CV-24063, in the United States District Court for the Southern District of Florida. Microsoft was served with the complaint on November 15, 2010.

93.     There has been no other court or agency litigation, foreign or domestic, involving the Asserted Patents that are the subject of this Complaint.

## X.     RELIEF REQUESTED

94.     Complainants respectfully request that the Commission:

(a)     Institute an immediate investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, with respect to Microsoft's violations of that section arising from the importation into the United States, sale for importation, and/or the sale within the United States after importation of certain gaming and entertainment consoles, related software, and components thereof that infringe one or more of claims of United States Patent Nos. 5,319,712; 5,357,571; 6,069,896; 6,980,596; and 7,162,094;

(b)     Set a target date of no more than 15 months;

(c)     Schedule and conduct a hearing pursuant to Section 337(c) for the purposes of (i) receiving evidence and hearing argument concerning whether there has been a violation of Section 337, and (ii) following the hearing, determining that there has been a violation of Section 337;

-28-

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

(d)     Issue a permanent limited exclusion order directed to Microsoft, its subsidiaries, related companies, and agents pursuant to 19 U.S.C. § 1337(d) excluding entry into the United States of certain gaming and entertainment consoles, related software, and components thereof that infringe one or more of claims 6, 8, 9, 10 and 17 of United States Patent No. 5,319,712; one or more of claims 9 through 18 of United States Patent No. 5,357,571; one or more of claims 1, 2, 3 and 12 of United States Patent No. 6,069,896; one or more of claims 1, 2, 3, 7 and 8 of United States Patent No. 6,980,596; and/or one or more of claims 5, 6, 7, 8 and 10 of United States Patent No. 7,162,094;

(e)     Issue a permanent cease and desist order pursuant to 19 U.S.C. § 1337(f) prohibiting Microsoft, its subsidiaries, related companies, and agents from engaging in the importation, sale for importation, marketing, and/or advertising, distribution, offering for sale, sale, sale after importation, or other transfer within the United States, of the gaming and entertainment consoles, related software, and components thereof that infringe one or more of claims 6, 8, 9, 10 and 17 of United States Patent No. 5,319,712; one or more of claims 9 through 18 of United States Patent No. 5,357,571; one or more of claims 1, 2, 3 and 12 of United States Patent No. 6,069,896; one or more of claims 1, 2, 3, 7 and 8 of United States Patent No. 6,980,596; and/or one or more of claims 5, 6, 7, 8 and 10 of United States Patent No. 7,162,094;

(f)     Issue a permanent cease and desist order pursuant to 19 U.S.C. § 1337(f) prohibiting Microsoft, its subsidiaries, related companies, and agents from engaging in other unfair methods of competition and unfair acts in the importation of articles, including the operation, support, service, and maintenance of the gaming and entertainment consoles, related software, and components thereof that infringe one or more of claims 6, 8, 9, 10 and 17 of United States Patent No. 5,319,712; one or more of claims 9 through 18 of United States Patent No.

• PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) •

5,357,571; one or more of claims 1, 2, 3 and 12 of United States Patent No. 6,069,896; one or more of claims 1, 2, 3, 7 and 8 of United States Patent No. 6,980,596; and/or one or more of claims 5, 6, 7, 8 and 10 of United States Patent No. 7,162,094;

       (g)    Impose a bond upon Microsoft if it continues to import infringing gaming and entertainment consoles during the 60-day Presidential review period pursuant to 19 U.S.C. § 1337(j); and

       (h)    Issue such other and further relief as the Commission deems just and proper under the law, based on the facts determined by the Investigation and the authority of the Commission.

♦ PUBLIC VERSION (CONFIDENTIAL BUSINESS INFORMATION REMOVED) ♦

Respectfully submitted,

November 22, 2010.

By:

Charles F. Schill
John M. Caracappa
Jamie B. Beaber
**Steptoe & Johnson LLP**
1330 Connecticut Avenue, NW
Washington DC 20036
Telephone: (202) 429-3000

Jesse J. Jenner
Steven Pepe
**Ropes & Gray LLP**
1211 Avenue of the Americas
New York, NY 10020
Telephone: (212) 596-9000

Norman H. Beamer
Gabrielle E. Higgins
Joshua V. Van Hoven
**Ropes & Gray LLP**
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303
Telephone: (650) 617-4000

Paul M. Schoenhard
Kevin J. Post
**Ropes & Gray LLP**
One Metro Center
700 12th Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 508-4600

Attorneys for Complainants,
Motorola Mobility, Inc. and
General Instrument Corporation

-31-

## VERIFICATION

I, Kirk Dailey, am Corporate Vice President, Intellectual Property at Motorola Mobility, Inc. and am duly authorized to execute this verification on behalf of Motorola Mobility, Inc. and General Instrument Corp. I have read its Complaint and am aware of its contents. To the best of my knowledge, information and belief, based upon an inquiry reasonable under the circumstances, I hereby certify as follows:

1.     The Complaint is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of the investigation or related proceeding.

2.     The claims and other legal contentions in the Complaint are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; and

3.     The allegations and other factual contentions in the Complaint have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 19th day of November, 2010 in Libertyville, Illinois.

Kirk Dailey
Corporate Vice President
Intellectual Property

Dailey Verification