The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation,<br><br>           Plaintiff,<br><br>      v.<br><br>MOTOROLA, INC., MOTOROLA MOBILITY, INC., and GENERAL INSTRUMENT CORPORATION,<br><br>           Defendants. | CASE NO. C10-1823-JLR<br><br>DEFENDANTS' RENEWED MOTION TO DISMISS<br><br>**NOTE ON MOTION CALENDAR:**<br>**Friday, April 1, 2011**<br><br>**ORAL ARGUMENT REQUESTED** |

DEFENDANTS' RENEWED MOTION TO DISMISS
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

## TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................... 1

II.     STATEMENT OF RELEVANT FACTS ....................................................... 3

III.    ARGUMENT ............................................................................................... 6

        A.   The Applicable Law. ......................................................................... 7

             1.   The Law Relating to Ripeness. ................................................. 7

             2.   The Law Relating to Failure to State a Claim for Which Relief May
                  Be Granted. .............................................................................. 7

        B.   Microsoft's Breach of Contract Claim Should Be Dismissed. ............... 8

             1.   The Facts Alleged by Microsoft, If True, Nonetheless Do Not State
                  a Plausible Claim. ..................................................................... 8

             2.   The Doctrine of Substantial Compliance Confirms the Implausibility
                  of Microsoft's Breach of Contract Averments. ........................... 9

             3.   Microsoft's Claims Were Not Ripe. ........................................ 10

             4.   Microsoft's Breach of Contract Claim Also Should Be Dismissed
                  Because It Seeks Only an Advisory Opinion. ........................... 13

             5.   Motorola's Subsequent Filing of Infringement Lawsuits Is Irrelevant
                  to Microsoft's Claim. .............................................................. 14

        C.   Microsoft's Other Claims Should Be Dismissed. ................................ 15

IV.     CONCLUSION ........................................................................................... 17

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

## TABLE OF AUTHORITIES

2

CASES

3

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009)...................................................................................................7, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .........................................................................................................7

*Commonwealth Scientific & Indus. Research Org. v. Buffalo Tech. Inc.*,
   492 F. Supp. 2d 600 (E.D. Tex. 2007)...........................................................................15

*Coyote Corp. v. Chipman Constr., Inc.*,
   No. 17411-5-III, 1999 WL 155938 (Wash. Ct. App. Mar. 23, 1999) ...........................15

*Degenhart v. AIU Holdings, Inc.*,
   No. C10-5172RBL, 2010 WL 485220 (W.D. Wash. Nov. 26, 2010) .............................16

*Dequilettes v. Moffat*,
   No. 51661-2-I, 2004 WL 370769 (Wash. Ct. App. Mar. 1, 2004) .................................14

*ESS Tech., Inc. v. PC-Tel, Inc.*,
   Nos. C-99-20292RMW, C-01-1300VRW, C-01-1981VRW, 2001 WL 1891713 (N.D.
   Cal. Nov. 28, 2001) ........................................................................................................12

*Forest Glade Homeowners Ass'n v. Allied Mut. Ins. Co.*,
   2009 WL 927750 (W.D. Wash. Mar. 31, 2009)...............................................................7

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970) ...............................................................................12

*Glacier Water Co., LLC v. Earl*,
   No. C08-1705RSL, 2010 WL 3430518 (W.D. Wash. Aug. 30, 2010) ............................16

*Guesthouse Int'l, LLC v. Shoney's N. Am. Corp.*,
   No. M2008-02567-COA-R3-CV, 2010 WL 987119 (Tenn. Ct. App. Mar. 18, 2010) ..............16

*Hynix Semiconductor, Inc. v. Rambus, Inc.*,
   441 F. Supp. 2d 1066 (N.D. Cal. 2006)............................................................................4

*In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*,
   No. 2:08-md-1919 MJP, 2010 WL 1734848 (W.D. Wash. Apr. 28, 2010) ...............................8

*Intri-Plex Techs., Inc. v. Crest Group, Inc.*,
   499 F.3d 1048 (9th Cir. 2007) ..........................................................................................8

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) ........................................................................................6

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*Mobley v. N.Y. Life Ins. Co.*,
    295 U.S. 632 (1935) ................................................................................................. 14

*Permpoon v. Wells Fargo Bank Nat'l Ass'n*,
    No. 09-cv-01140-H(BLM), 2009 WL 3214321 (S.D. Cal. Sept. 29, 2009) ........................ 17

*Research In Motion Ltd. v. Motorola, Inc.*,
    644 F. Supp. 2d 788 (N.D. Tex. 2008) ...................................................................... 11

*Ritchie v. Fed. Express Corp.*,
    No. C04-1753L, 2007 WL 1140260 n.4 (W.D. Wash. Apr. 16, 2007) .............................. 16

*Sharafabadi v. Pac. Nw. Farmers Coop.*,
    No. C09-1043JLR, 2010 WL 234769 (W.D. Wash. Jan. 14, 2010) .................................... 8

*Texas v. United States*,
    523 U.S. 296 (1998) .................................................................................................... 7

*Thepvongsa v. Reg'l Tr. Servs. Corp.*,
    No. C10-1045RSL, 2011 U.S. Dist. LEXIS 7853 (W.D. Wash. Jan. 26, 2011) ................. 8

*W.L. Gore & Assocs., Inc. v. Carlisle Corp.*,
    529 F.2d 614 (3d Cir. 1976) ...................................................................................... 11

*Wapato Heritage, LLC v. U.S. Dep't of Interior*,
    No. 08-cv-177, 2008 WL 5046447 (E.D. Wash. Nov. 21, 2008) .................................... 9

*Wells v. Chase Home Fin., LLC*,
    No. C10-5001RJB, 2010 WL 4858252 (W.D. Wash. Nov. 19, 2010) ............................... 8

*Z-Line Designs, Inc. v. Bell'O Int'l LLC*,
    218 F.R.D. 663 (N.D. Cal. 2003) .............................................................................. 13

**RULES**

Fed. R. Civ. P. 12(b)(1) ............................................................................................ 1, 7, 17

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 7

**OTHER AUTHORITIES**

*Standard-Setting and the Failure of Price Competition*,
    65 N.Y.U. Ann. Surv. Am. L. 217 (2009) .................................................................... 4

DEFENDANTS' RENEWED MOTION TO DISMISS - iii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## TABLE OF ABBREVIATIONS AND DEFINITIONS

| | |
|---|---|
| ITU | International Telecommunications Union. |
| IEEE | Institute of Electrical and Electronics Engineers. |
| SDO | Standards Development Organization. These organizations determine and disseminate industry standards used in the telecommunications and electronics fields. |
| RAND | Reasonable And Non-Discriminatory. The term "FRAND" is also used by some organizations and stands for "Fair, Reasonable And Non-Discriminatory." |

DEFENDANTS' RENEWED MOTION TO DISMISS - iv
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Defendants Motorola, Inc. (now Motorola Solutions, Inc.), Motorola Mobility, Inc., and General Instrument Corporation (collectively, "Motorola") move, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), to dismiss plaintiff Microsoft's amended complaint for lack of subject matter jurisdiction and/or for failure to state a claim for which relief can be granted.[1]

## I.   INTRODUCTION

Microsoft's amended complaint repeats its breach of contract and related claims brought in the original complaint. Like its original complaint, Microsoft's amended complaint is premised entirely on Microsoft's contention that Motorola violated a duty to offer patent licenses to Microsoft on so-called RAND ("reasonable and nondiscriminatory") terms. This violation supposedly arose because Motorola sent two letters that offered licensing terms that Microsoft contends were so unreasonable as to justify Microsoft's decision to sue Motorola rather than to engage in licensing negotiations, as is customarily done. But the mere act of sending these offer letters cannot form the basis of a plausible, or ripe, cause of action.

One of the letters sent to Microsoft (Ex. 1) relates to patents that are or may become "essential" to the IEEE 802.11 WLAN standards for wireless communication.[2] The other (Ex. 2) relates to patents that are or may become "essential" to the ITU H.264 standards for encoding and decoding digital video content. In these letters, Motorola offered to license Microsoft "on a non-discriminatory basis on reasonable terms and conditions ('RAND')" and proposed a royalty rate to be applied to relevant Microsoft products. Exs. 1-2. The letters proposed no other terms—those terms were left for the parties to establish during the negotiations that Motorola anticipated would take place.

---

[1] Defendants Motorola Solutions, Inc. (formerly Motorola, Inc.) and Motorola Mobility, Inc. previously moved to dismiss Microsoft's original complaint on the same grounds (ECF No. 36). Defendants withdrew that motion (and reserved filing this renewed motion), as a result of the filing of the amended complaint.

[2] "Ex. ___" refers to the Exhibits attached to the accompanying Third Declaration of Norman H. Beamer in Support of Defendants' Renewed Motion to Dismiss ("Beamer 3d Decl.").

DEFENDANTS' RENEWED MOTION TO DISMISS - 1
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1      Motorola made these offers to license its patents on RAND terms in accordance with, and

2   in full compliance with, ITU and IEEE patent policy guidelines, which provide that patent holders

3   should offer licenses to, and negotiate RAND terms with, willing licensees.  Specifically, these

4   letters offered Microsoft a RAND license to Motorola's portfolios of "essential" 802.11 and H.264

5   patents, and demonstrated a willingness to negotiate all terms of such a license.  Indeed, many

6   companies have participated in negotiations with Motorola and have become Motorola licensees

7   under various "essential" patent portfolios pursuant to such policies.  But unlike these other

8   companies, rather than respond to Motorola's invitation and participate in a negotiation, Microsoft

9   repudiated Motorola's offer—and thereby repudiated any contractual rights it may otherwise have

10   had—by rushing to this Court to initiate a lawsuit.

11      Microsoft's claims should be dismissed.  There is no plausible interpretation of the facts,

12   as pleaded, that would sustain a breach of contract claim, or any other RAND-related claim.

13   Motorola's opening letters simply proposed some, but not all, of the terms of a fully-negotiated

14   RAND license—this cannot create a justiciable controversy ripe for adjudication.  Nor can those

15   letters be plausible ground for alleging breach of a promise to negotiate a license under RAND

16   terms.  Rather than file this lawsuit, Microsoft could have (and should have) done what reasonable

17   companies have always done—respond to the letter and engage in negotiations.  Instead,

18   Microsoft—knowing that it was not willing to negotiate a license and fairly compensate Motorola

19   for the use of Motorola's patents—rushed to the Courthouse in Microsoft's home base with this

20   premature, groundless action premised solely on Motorola's act of sending the two offer letters.

21   Microsoft's motivation for filing this unripe suit is transparent—use the judicial system to deny or

22   delay compensation to Motorola for Microsoft's ongoing infringement, and to insure preemptively

23   its own forum in which to litigate should Motorola elect to file patent infringement actions in light

24   of Microsoft's repudiation of the RAND negotiation process.

25

26

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1    Equally important, where, as here, the response to an opening offer is to file suit, any

2    contractual or other duty to negotiate a RAND license is extinguished.[3] Indeed, permitting

3    Microsoft's claims to proceed in this Court would authorize premature suits against all holders of

4    "essential" patents for supposed breach of contract after the holders merely offer to license their

5    patents under terms to be subsequently negotiated.  It also would punish those patent holders for

6    enforcing their rights after such license offers are repudiated by depriving them of the choice of

7    timing and forum for an enforcement action.

8        This action, if permitted to proceed, would require the Court to render an advisory opinion

9    on complex RAND licensing terms—terms that the standards organizations actually stated should

10   be determined through private negotiations.  Worse, Microsoft has not even agreed that it would

11   accept and be bound by such an advisory opinion—Microsoft denies it needs a license and has not

12   agreed to accept even court-established terms.  For this Court to render such an advisory opinion

13   would be improper.  The requirement of a justiciable controversy based on plausible claims—

14   unsatisfied by Microsoft here—prevents such a wasteful exercise.  Microsoft's claims should be

15   dismissed.

16   **II.    STATEMENT OF RELEVANT FACTS**

17       Motorola has been a leader in the research and development of wireless

18   telecommunications technology.  As a result, Motorola has been awarded an extensive portfolio of

19   patents, including both "essential" patents (patents that must be practiced by anyone wishing to

20   make a product that complies with an industry "standard") and "non-essential" patents.

21       When Motorola participates with other companies in formulating industry standards, when

22   appropriate it notifies the pertinent standards development organization ("SDO"), in accordance

23   with guidelines the SDO may have, that Motorola agrees to offer licenses on RAND terms for

---

[3] Motorola assumes for the purpose of this motion that, prior to this lawsuit, it had a contractual duty to negotiate a RAND patent license with Microsoft for patents "essential" to the 802.11 and H.264 standards.

DEFENDANTS' RENEWED MOTION TO DISMISS - 3
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

"essential" patents owned by Motorola. *See, e.g.*, Am. & Suppl. Compl. ¶ 5. Motorola has notified Microsoft of at least 27 "families" of Motorola patents (including both United States patents and their foreign counterparts), consisting of at least 257 individual patents or applications, that are or may be "essential" to the IEEE 802.11 standards. Ex. 1; Beamer 3d Decl. ¶ 3. Motorola has also identified 18 Motorola patent families, consisting of at least 177 patents or applications, that are or may be "essential" to the ITU H.264 standards. Ex. 2; Beamer 3d Decl. ¶ 4.

Significantly, the IEEE and ITU have not promulgated any rules or guidelines defining what "RAND" terms are, how RAND terms should be determined, or what terms might be considered exemplary or even acceptable. Moreover, no court has actually determined a RAND rate or RAND terms. Although commentators have discussed how RAND rates and terms may be set, they emphasize the complexity that would have to be involved in such a determination.[4]

Thus, rather than setting down specific guidelines for RAND licensing, the SDOs stress that the actual RAND terms are the responsibility of individual companies—not adjudicative tribunals—to **negotiate on a bilateral basis**. For example, the Standards Organization Bylaws for the IEEE,[5] which promulgated the 802.11 standards, unambiguously state:

> The IEEE is not responsible . . . for determining whether any licensing terms or conditions provided in connection with submission of a Letter of Assurance, if any, or in any licensing agreements are reasonable or non-discriminatory.

---

[4] *See, e.g.*, *Hynix Semiconductor, Inc. v. Rambus, Inc.*, 441 F. Supp. 2d 1066, 1074 (N.D. Cal. 2006) (noting the "staggering lack of defining details in the [SDO's] patent policy" and declining to enforce a contract based on the policy (citation omitted)); Pat Treacy & Sophie Lawrence, *FRANDly Fire: Are Industry Standards Doing More Harm Than Good?*, 3 J. Intell. Prop. L. & Prac. 22, 24 (2007) (Ex. 3) ("[T]here is a significant risk that [RAND] can mean all things to all men. In consequence, the obligation risks becoming toothless."); Alan Devlin, *Standard-Setting and the Failure of Price Competition*, 65 N.Y.U. Ann. Surv. Am. L. 217, 221 (2009) (Ex. 4) ("While steps could be taken within an SSO to bestow the concept [of RAND] with some limited form of objectivity and force, there is simply no getting around the fact that "reasonable" is a nebulous concept in many information markets.").

[5] IEEE-SA Standards Board Bylaws (2010) (Ex. 5), *available at* http://standards.ieee.org/develop/policies/bylaws/sb_bylaws.pdf.

DEFENDANTS' RENEWED MOTION TO DISMISS - 4
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1    Ex. 5 at 16.  Likewise, the "Common Patent Policy" for the ITU,[6] which promulgated the H.264

2    standard, states:

3              The detailed arrangements arising from patents (licensing, royalties,
               etc.) are left to the parties concerned, as these arrangements might
4              differ from case to case.

5    Ex. 6 at 8.  Both the ITU's Common Patent Policy, and its Patent Statement and Licensing

6    Declaration form,[7] further state that "***negotiations are left to the parties concerned*** and are

7    performed outside the [ITU]."  Ex. 6. at 8, 11 (emphasis added).[8]

8         In accord with these SDO essential patent licensing practices, Motorola sent letters on

9    October 21 and 29, 2010, to Microsoft offering licenses under Motorola's 802.11 and H.264

10   "essential" patent portfolios, respectively.  Exs. 1-2.  In these letters, Motorola offered "to license

11   the patents on a non-discriminatory basis on reasonable terms and conditions ('RAND')."

12   Motorola proposed that such terms "includ[e] a reasonable royalty of 2.25%. . . ." and that, "[a]s

13   per Motorola's standard terms, the royalty is calculated based on the price of the end product. . . ."

14   Alternatively, Motorola offered:  "If Microsoft is only interested in licensing some portion of this

15   portfolio, Motorola is willing to enter into such a license, also under RAND terms."  These two

16   letters—and nothing else—form the supposed basis for all of Microsoft's claims.   Am. & Suppl.

17   Compl. ¶¶ 70-71.

18        Microsoft's only response to these letters was its rush to the Courthouse to file the original

19   complaint in this action.  Only after this outright refusal by Microsoft to engage in bilateral

20   negotiations for a RAND patent license did Motorola institute patent infringement actions in the

21   Western District of Wisconsin and the United States International Trade Commission on patents

22   _____

23   [6] Guidelines for Implementation of the Common Patent Policy for ITU-T/ISO/IEC, Annex 1 (Mar. 1, 2007) (Ex. 6
     at 8), *available at* http://www.itu.int/dms_pub/itu-t/oth/04/04/T04040000010002PDFE.pdf.

24   [7] Guidelines for Implementation of the Common Patent Policy for ITU-T/ISO/IEC, Annex 2 (Mar. 1, 2007) (Ex. 6
     at 10), *available at* http://www.itu.int/dms_pub/itu-t/oth/04/04/T04040000010002PDFE.pdf.

25   [8] Microsoft conveniently omits this language, when selectively quoting from these Annexes to the ITU Guidelines
     in its amended complaint.  *See* Am. & Suppl. Compl. ¶ 4.

26

DEFENDANTS' RENEWED MOTION TO DISMISS - 5
CASE NO. C10-1823-JLR

1   related to the 802.11 and H.264 standards (the "Patent Actions"), because Microsoft had

2   repudiated any right to negotiate a RAND license.[9]

### III.    ARGUMENT

4          Each of Microsoft's claims is premised on Motorola's two initial letters proposing general

5   terms for patent licenses. Exs. 1-2. The only specific portion of those letters that Microsoft

6   apparently relies on for factual support of its breach-of-contract allegations is Motorola's proposal

7   of an appropriate royalty base. Motorola proposed its "standard term"—that a RAND royalty

8   should be applied to the selling price of the applicable Microsoft products.[10] *See* Am. & Suppl.

9   Compl. ¶¶ 70-71. Microsoft alleges that this term was so unreasonable that merely to propose it

10   put Motorola in breach.[11] But no claim for breach of alleged RAND obligations can rest on so

11   thin a reed. Microsoft's claims should be dismissed because they did not present a ripe

12   controversy and fail to state a claim for which relief may be granted.

---

[9] The Patent Actions are *Motorola Mobility, Inc. v. Microsoft Corp.*, No. 10-cv-699 (W.D. Wis.) (now No. C11-00343 (W.D. Wash.)); *Motorola Mobility, Inc. v. Microsoft Corp.*, No. 10-cv-700 (W.D. Wis.) (stayed by agreement in view of ITC Investigation No. 337-TA-752); and *In re Certain Gaming and Entm't Consoles, Related Software, and Components Thereof*, Inv. No. 337-TA-752 (U.S.I.T.C.). There are yet additional actions in which Motorola asserts that Microsoft infringes Motorola's patents that are not essential to the 802.11 or H.264 standards, and other actions in which Microsoft asserts that Motorola infringes Microsoft's patents. *Viz.: Motorola Mobility, Inc. v. Microsoft Corp.*, No. 3:10-cv-00826-bbc (W.D. Wis.); *Motorola Mobility, Inc. v. Microsoft Corp.*, No. 1:10-cv-24063-FAM (S.D. Fla.); *Microsoft Corp. v. Motorola Inc.*, No. 2:10-cv-01577-JLR (W.D. Wash.) (now stayed by agreement in view of ITC Investigation No. 337-TA-744); and *In re Certain Mobile Devices, Associated Software, and Components Thereof*, ITC Investigation No. 337-TA-744.

[10] Motorola's standard practice is in accord with the near-universal commercial practice of using the selling price of a product as a convenient royalty base, rather than to attempt to carve out the value of some component of the product. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1339 (Fed. Cir. 2009) ("[S]ophisticated parties routinely enter into license agreements that base the value of the patented inventions as a percentage of the commercial products' sales price."). Thus, even if Microsoft does not want a license based on the selling price of its product, it is implausible for it to allege that Motorola's "routine" offer was inherently unreasonable.

[11] Microsoft's main objection appears to hinge on its claim that the relevant standardized technologies account for only a small portion of the total value of its products. But Microsoft's claim is belied by its own sales and marketing strategies. For example, as advertised to the public on Microsoft's website, consumers may purchase an 802.11-compliant adapter for older Xbox gaming systems for approximately half the purchase price of a new 802.11-compliant system—*i.e.*, Microsoft has publicly valued 802.11 standard functionality at approximately 50% of the product's total market value. *See* Exs. 7-8; Beamer 3d Decl. ¶¶ 9-10. Notwithstanding Microsoft's objections set forth in its 1/12/11 Surreply (ECF No. 43), due to the public and generally-available nature of these Xbox web pages, the Court may consider them at the dismissal stage, *infra*, at 7-8.

---

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

**A.    The Applicable Law.**

**1.    The Law Relating to Ripeness.**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(1), a pleading must set forth facts that establish a justiciable controversy ripe for adjudication *at the time the pleading was filed*. As this Court stated in *Forest Glade Homeowners Ass'n v. Allied Mut. Ins. Co.*:

> Ripeness is a question of justiciability that prevents the courts,
> through the avoidance of premature adjudication, from entangling
> themselves in abstract disagreements.  The burden of establishing
> ripeness rests with the party asserting the claim.  Ripeness is
> determined at the time of the filing of the complaint.  If a claim is
> unripe, federal courts lack subject matter jurisdiction and the
> complaint must be dismissed.

No. C07-1762JLR, 2009 WL 927750, at *2 (W.D. Wash. Mar. 31, 2009) (holding that the claims were not ripe and dismissing the case for lack of subject matter jurisdiction) (Robart, J.) (citations and quotations omitted).  "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted).

**2.    The Law Relating to Failure to State a Claim for Which Relief May Be Granted.**

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  It is not enough for a complaint to "plead[] facts that are 'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 557).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at

DEFENDANTS' RENEWED MOTION TO DISMISS - 7
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    1950; *see also Sharafabadi v. Pac. Nw. Farmers Coop.*, No. C09-1043JLR, 2010 WL 234769, at

2    *1-2 (W.D. Wash. Jan. 14, 2010) (Robart, J.).

3         Although a court considering a motion to dismiss must accept all of the factual allegations

4    in the complaint as true, the court is not required to accept as true a legal conclusion presented as a

5    factual allegation. *See Ashcroft*, 129 S. Ct. at 1949-50. "Threadbare recitals of the elements of a

6    cause of action, supported by mere conclusory statements, do not suffice." *Id.*

7         In ruling on a motion to dismiss, the Court may consider documents referenced in the

8    complaint. *See Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052, 1056 (9th Cir.

9    2007) (taking "judicial notice of matters of public record" and affirming the district court's grant

10   of defendant's 12(b)(6) motion to dismiss (quotation and citation omitted)); *Wells v. Chase Home*

11   *Fin., LLC*, No. C10-5001RJB, 2010 WL 4858252, at *5 (W.D. Wash. Nov. 19, 2010).  Also, "the

12   Court . . . may take judicial notice of matters of public record without converting the motion to

13   dismiss to a motion for summary judgment." *Thepvongsa v. Reg'l Tr. Servs. Corp.*, No. C10-

14   1045RSL, 2011 U.S. Dist. LEXIS 7853, at *9-10 (W.D. Wash. Jan. 26, 2011); *In re Wash. Mut.,*

15   *Inc. Sec., Derivative & ERISA Litig.*, No. 2:08-md-1919MJP, 2010 WL 1734848, at *2 (W.D.

16   Wash. Apr. 28, 2010) (taking judicial notice of accounting standards).  Thus, Motorola properly

17   relies on the October 21 and 29 letters, and the IEEE and ITU patent policies, referenced in the

18   complaint, and other items of public record relied on herein.

19   **B.    Microsoft's Breach of Contract Claim Should Be Dismissed.**

20        **1.    The Facts Alleged by Microsoft, If True, Nonetheless Do Not State a Plausible
               Claim.**

21

22        Microsoft's claims do not set forth any plausible claim for breach of contract.  Courts do

23   not hesitate to dismiss breach of contract claims when the allegations are not supported by

24   plausible facts. *Edifecs Inc. v. TIBCO Software Inc.*, No. C10-330-RSM, 2010 U.S. Dist. LEXIS

25   138654 (W.D. Wash. Dec. 17, 2010) (dismissal of claim for breach of clause requiring the use of

26   commercially reasonable degree of care); *Danforth & Assocs., Inc. v. Coldwell Banker Real*

DEFENDANTS' RENEWED MOTION TO DISMISS - 8
CASE NO. C10-1823-JLR

1   *Estate, LLC*, No. C10-1621JCC, 2011 U.S. Dist. LEXIS 10882, at *5 (W.D. Wash. Feb. 2, 2011)

2   ("Plaintiff has failed to allege sufficient facts to create a plausible basis to believe that Defendant

3   breached its agreements.").

4   　　　　That is the situation presented here.  The applicable SDO patent policies require that patent

5   holders offer licenses to, and be willing to negotiate RAND terms with, willing licensees.  *See*

6   Am. & Suppl. Compl. ¶¶ 2, 4.  That is *precisely* what Motorola did.  In the October letters,

7   Motorola offered to license its patents that are (or may be) "essential" to the 802.11 and H.264

8   standards to Microsoft on RAND terms.  Plainly, this was the first step to negotiating a patent

9   license on RAND terms.  An initial offer cannot form the plausible basis for a breach of an

10  obligation to offer a RAND license.  Indeed, ***Microsoft***, not Motorola, ***was the party that refused***

11  ***to negotiate***.  A reasonable company in Microsoft's position would have responded to the letters

12  with any counteroffer or other request it wanted to make.  As discussed *infra*, at 13-14, by filing

13  this action as its sole response to Motorola's letters, Microsoft rejected Motorola's offer to enter

14  into good-faith negotiations and repudiated any contractual benefits it might otherwise have

15  obtained.

16  　　　**2.**　　　**The Doctrine of Substantial Compliance Confirms the Implausibility of**
        **Microsoft's Breach of Contract Averments.**

17

18  　　　　The implausibility of Microsoft's breach of contract claim is underscored by the fact that,

19  even assuming, *arguendo*, that some sort of deficiency in Motorola's initial letters existed at all,

20  there can certainly be no plausible allegation that Motorola did not at least substantially comply

21  with any RAND obligations it had.  That being so, there can be no breach under the doctrine of

22  substantial compliance.

23  　　　　That doctrine exists "to give effect to [a party's] intent to comply when that intent is

24  evident."  *Wapato Heritage, LLC v. U.S. Dep't of Interior*, No. 08-cv-177, 2008 WL 5046447, at

25  *6 (E.D. Wash. Nov. 21, 2008) (citation and quotation omitted).  "[A] deficiency in performance

26

DEFENDANTS' RENEWED MOTION TO DISMISS - 9
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1    may not be considered a breach as long as it is not 'so dominant or pervasive as in any real or

2    substantial measure to frustrate the purpose of the contract.'" *Id.* (citation and quotation omitted).

3         Here, Motorola's October letters referenced the relevant standards, expressly stated a

4    desire to license the patents under RAND terms, specifically proposed that the rate be

5    "reasonable" and "non-discriminatory," and proposed Motorola's standard terms.  It would thus be

6    implausible for Microsoft to allege that Motorola's letters frustrate the purpose of its obligations to

7    the SDOs.

8         **3.    Microsoft's Claims Were Not Ripe.**

9         In addition to its failure to state a proper claim, Microsoft has no basis to argue that

10   Motorola's initial proposal of general license terms—no matter how unacceptable Microsoft

11   subjectively thinks the terms were—created a justiciable controversy ripe for resolution by this

12   Court.  As stated by the American Bar Association:[12]

13            [RAND] licensing commitment[s are] often stated as an absolute
             (i.e., that the [patent owner] must grant the required licenses).
14           However, it is reasonable to require that such licenses be granted
             ***only upon a request by a potential licensee and upon the***
15           ***conclusion of bilateral negotiations***.  It would be unreasonable for a
             [patent owner] to be required to seek out its own licenses in this
16           context, or to extend offers before being requested to do so."
             (emphasis added).
17

18        Microsoft's amended complaint was not ripe because the contractual obligations to which

19   Microsoft claims beneficiary status are designed to benefit "applicants" for licenses on RAND

20   terms.  *See, e.g.*, Ex. 5 at 15 (IEEE bylaw provision, requiring a "statement that a license for a

21   compliant implementation of the standard will be made available to an unrestricted number of

22   ***applicants***") (emphasis added); Ex. 6 at 11 (ITU form Patent Statement and Licensing Declaration

23   provision, stating that "The Patent Holder is prepared to grant a license to an unrestricted number

24

25   ───────────────────
     [12] American Bar Association, Section of Science & Technology Law, Committee on Technical Standardization,
     *Standards Development Patent Policy Manual* 49 (2007) (Ex. 9).

26

DEFENDANTS' RENEWED MOTION TO DISMISS - 10
CASE NO. C10-1823-JLR

of *applicants*.") (emphasis added).[13]   At no time prior to bringing this suit did Microsoft request

such a license or, for that matter, even contact Motorola to discuss possible terms.  Even now,

Microsoft has not asserted that it has any intention to request or accept a license on any terms,

RAND or otherwise, even if those terms are established by this Court.

The amended complaint also was not ripe because RAND license terms were intended to

be determined through *bilateral* negotiations between involved parties.  This is expressly

acknowledged by the ITU: "Negotiations [of licenses] are left to the parties concerned and are

performed outside the [ITU]."  Ex. 6 at 8, 11.  Accordingly, no breach of contract claim could

have ripened until Microsoft engaged in negotiations with Motorola and good faith efforts at

private bilateral negotiation had failed.  Such clearly did not happen here, as no negotiations took

place before Microsoft filed the original complaint in this action.  Microsoft simply rejected the

opportunity to negotiate and thereby forfeited any claim to a RAND license based on negotiations.

In this way, the present circumstances are readily distinguishable from those involved in

*Research In Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788 (N.D. Tex. 2008).  In that case,

RIM alleged that Motorola violated its RAND commitments, but only after extensive negotiations

had taken place for at least a year prior to the expiration of a prior license agreement.  Ex. 10 at

¶¶ 84-85, 88-90, 92-93, 110, 165-66.  Further, upon expiration of the prior license, the parties had

extended their negotiations for 45 days under a standstill agreement.  *See* Ex. 11 at 2, ¶ 7.  In

contrast, here, Microsoft's claims rest on initial letters without any history of negotiations (or even

a response) whatsoever.  For similar reasons, *W.L. Gore & Assocs., Inc. v. Carlisle Corp.*, 529

F.2d 614, 623 (3d Cir. 1976), is also inapplicable.  The plaintiff in *W.L. Gore* made the allegedly

unreasonable licensing offer only after the parties actually negotiated in person on settlement

terms, and after an infringement suit had already been filed.  Indeed, Motorola is not aware of any

---

[13] As stated at 7-8, *supra*, it is appropriate to consider the IEEE and ITU patent policies in ruling on Motorola's
Rule 12(b)(6) motion to dismiss.

DEFENDANTS' RENEWED MOTION TO DISMISS - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   court that has permitted RAND-related claims to proceed absent a history of unsuccessful

2   negotiations.

3          Meanwhile, the few courts that have discussed RAND licensing practices have compared

4   the determination of RAND royalty rates to the so-called "*Georgia-Pacific*" procedure for

5   determining "reasonable royalty rates" that a patentee is entitled to as a minimum for patent

6   infringement damages.  *See, e.g., ESS Tech., Inc. v. PC-Tel, Inc.*, Nos. C-99-20292RMW, C-01-

7   1300VRW, C-01-1981VRW, 2001 WL 1891713, at *3-6 (N.D. Cal. Nov. 28, 2001).  Such

8   reasonable rates are determined by considering what rate would be agreed to after a hypothetical

9   negotiation between willing parties.  *See Georgia-Pacific Corp. v. United States Plywood Corp.*,

10  318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pacific Corp. v. U.S.

11  Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971).  To the extent that a *Georgia-

12  Pacific* analogy might be applicable to a RAND determination, only through the negotiation

13  process do parties typically share the information necessary to assess properly, among other

14  things, their relative market positions and the relative importance of various patented features to

15  the prospective licensee's goods.  Only ***after*** negotiation can parties come to some

16  accommodation, at least as a business matter, as to "reasonable and non-discriminatory" license

17  terms.  Microsoft refused to do that here.

18         Accordingly, no justiciable controversy existed, and Motorola could not be subject to a

19  lawsuit, ***before any negotiations had taken place***, merely because Microsoft was purportedly

20  dissatisfied with Motorola's initial proposal of some—but not all—terms of a possible patent

21  license.  Such a rule would preempt negotiation and spawn nuisance lawsuits.  Patent owners

22  would withhold proposing financial terms until extensive negotiations had already taken place,

23  and even then would do so under the Damoclean Sword of threatened litigation.

24         Moreover, parties, knowing that litigation could ensue after the first good faith offer,

25  would increasingly turn to the Courts, requiring judges or juries to somehow determine in the

26  abstract how a set of RAND terms would have been negotiated before real-world negotiations

DEFENDANTS' RENEWED MOTION TO DISMISS - 12
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   have reached an impasse—or, as in this case, before *any* real-world negotiations *had even taken*

2   *place*. This would convert courts into administrative agencies required to hold lengthy ratemaking

3   hearings in the guise of RAND rate determinations, devoid of any record of negotiations. Judicial

4   resources would be devoted to the very same analysis the private parties should otherwise have

5   performed on their own, at lower cost, with lesser risk. In view of these fundamental

6   considerations, it is not surprising that, to Motorola's knowledge, *no court* has ever found a

7   party's opening offer alone to constitute a breach of contract or of a duty to negotiate in good

8   faith. There is no justification for Microsoft to foist on this Court a RAND rate analysis in

9   substitution for Microsoft's own duty to have negotiated with Motorola.[14]

10       **4.   Microsoft's Breach of Contract Claim Also Should Be Dismissed Because It
             Seeks Only an Advisory Opinion.**

11       Microsoft asks the Court to divine RAND licensing terms for two entire portfolios of

12   "essential" patents. Yet nowhere does Microsoft state that it needs, or even wants, the license and

13   that it agrees to be bound by the Court's determination and pay to Motorola the resulting royalty

14   called for by such adjudicated RAND terms. Microsoft made no representation that it will, in fact,

15   honor the Court's RAND determination and take a license from Motorola under those terms.

16   Indeed, Microsoft denies that it needs a license at all. Am. & Suppl. Compl. ¶ 7. Accordingly,

17   any opinion the Court renders on the issue of RAND licensing terms would be plainly advisory.

18

---

19   [14] In addition, the rush-to-court timing of Microsoft's suit evidences Microsoft's attempt to use the judicial system
20   to deny or delay compensation to Motorola and deny Motorola its choice of forum. This procedural gamesmanship
     misuses the judicial system, is fundamentally unfair, and does violence to sound policies that discourage forum
     shopping and encourage negotiation as a first resort to settlement of disputes. As stated in *Z-Line Designs, Inc. v.*
21   *Bell'O Int'l LLC*, 218 F.R.D. 663 (N.D. Cal. 2003), *cited with approval in Ivi, Inc. v. Fisher Commc'ns, Inc.*, No.
     C10-1512JLR, 2011 U.S. Dist. LEXIS 4925 (W.D. Wash. Jan. 18, 2011) (Robart, J.):

22       Denial of defendant's motion to dismiss in this situation would discourage pre-litigation settlement
23       discussions. At a minimum, such a denial would encourage parties interested in protecting their
         intellectual property rights to file a complaint prior to attempting settlement. "Potential plaintiffs
24       should be encouraged to attempt settlement discussions . . . prior to filing lawsuits without fear
         that the defendant will be permitted to take advantage of the opportunity to institute litigation in a
         district of its own choosing before the plaintiff files a complaint." (citations omitted).

25   *Id.* at 666-67.

26

DEFENDANTS' RENEWED MOTION TO DISMISS - 13
CASE NO. C10-1823-JLR

5. **Motorola's Subsequent Filing of Infringement Lawsuits Is Irrelevant to Microsoft's Claim.**

Microsoft's amended complaint adds the allegation that Motorola's filing of the Patent Actions, after Microsoft brought this action against Motorola, somehow retroactively supports Microsoft's breach of contract claims. Am. & Suppl. Compl. ¶ 85. Not so.

But any RAND obligation that Motorola owed to Microsoft was nullified when Microsoft filed the original complaint in this action. By filing the original complaint, instead of responding to Motorola's letters with a counteroffer or a request to negotiate, Microsoft repudiated any third party beneficiary status that it had enjoyed, and Motorola was free to bring patent infringement actions against Microsoft. Microsoft's commencement of this action was a categorical rejection of Motorola's offer, and an anticipatory breach of any contract to enter into RAND negotiations. "An anticipatory breach occurs when one of the parties to a bilateral contract either expressly or impliedly repudiates the contract prior to the time for performance. . . . Anticipatory breach relieves the other party of the duty to perform." *Dequilettes v. Moffat*, No. 51661-2-I, 2004 WL 370769, at *4 (Wash. Ct. App. Mar. 1, 2004) (citation and quotation omitted); *Mobley v. N.Y. Life Ins. Co.*, 295 U.S. 632, 638 (1935) ("Repudiation by one party . . . entitle[s] the other to treat the contract as absolutely and finally broken. . . ."). As stated by the Court in *Bryan's One Stop, Inc. v. Ho*, No. 62583-4-I, 2010 Wash. App. LEXIS 2489, at *24 (Nov. 8, 2010) (internal quotation marks removed):

> Anticipatory repudiation [of a contract] occurs when one of the parties to a bilateral contract either expressly or impliedly repudiates the contract prior to the time of performance. An anticipatory breach . . . is a positive statement or action by the promisor indicating distinctly and unequivocally that he either will not or cannot substantially perform any of his contractual obligations. Repudiation by a party generally gives rise to a claim for damages for breach of contract and excuses performance.

Here, in commencing this action, Microsoft was "indicating distinctly and unequivocally that [it] will not . . . substantially perform any of [its] contractual obligations." *Id.*

DEFENDANTS' RENEWED MOTION TO DISMISS - 14
CASE NO. C10-1823-JLR

1  Given Microsoft's repudiation of any benefit from Motorola's RAND obligations, no

2  further performance on Motorola's part was or is required.  Notably, in *Commonwealth*

3  *Scientific & Indus. Research Org. v. Buffalo Tech. Inc.*, 492 F. Supp. 2d 600 (E.D. Tex. 2007),

4  *vacated on other grounds*, 542 F.3d 1363 (Fed. Cir. 2008), the Court permitted a standards-

5  essential patent holder to seek injunctive relief in circumstances similar to these, where the

6  defendant failed to negotiate or accept a license on RAND terms.  *See also* Ex. 9, American Bar

7  Association, Section of Science & Technology Law, Committee on Technical Standardization,

8  *Standards Development Patent Policy Manual* 49 (2007) ("If the Implementer chooses to

9  implement the Standard without a license, the Patent Holder may in turn choose to sue the

10  Implementer for patent infringement and seek all available remedies.").  This is sound as a matter

11  of public policy.  Where an infringer like Microsoft refuses to negotiate, unless there is a

12  meaningful threat of an injunction, the infringer could merely seek an advisory ruling—as

13  Microsoft is doing here—both to delay and gain advantage in a RAND negotiation or sit back and

14  force an owner of essential patents to bring infringement litigation, knowing that the worst case

15  result is the RAND license royalty it should have negotiated in the first place.  Such a result would

16  be intolerable.

17  **C.     Microsoft's Other Claims Should Be Dismissed.**

18  For the same reasons presented above regarding the breach of contract claim, Microsoft's

19  promissory estoppel, waiver, and declaratory judgment claims should be dismissed.

20  As a threshold issue, Microsoft repeatedly alleges that Motorola's RAND obligations to

21  SDOs are contractual.  Am. & Suppl. Compl. ¶¶ 45-46, 54, 81-87.  Motorola accepts this as true

22  for purposes of this motion.  But if that is so, because promissory estoppel can apply only when no

23  valid contract exists, Microsoft's promissory estoppel claim should be dismissed.  *See Coyote*

24  *Corp. v. Chipman Constr., Inc.*, No. 17411-5-III, 1999 WL 155938, at *2 (Wash. Ct. App. Mar.

25  23, 1999); 28 Am. Jur. 2d *Estoppel and Waiver* § 57 (July 2010) ("Once it is established . . . that

26

DEFENDANTS' RENEWED MOTION TO DISMISS - 15
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    there is in fact an enforceable contract between the parties, and therefore consideration exists, then

2    a party may no longer recover under the theory of promissory estoppel.").

3         Moreover, under Washington law, the elements of promissory estoppel are: (i) "a promise

4    was made which"; (ii) "the promisor should reasonably have expected would cause the promisee

5    to change its position and"; (iii) "which does in fact cause the promisee to change his position";

6    (iv) "in justifiable reliance on the promise"; and (v) "in such a manner that injustice can be

7    avoided only by enforcing the promise." *See Glacier Water Co., LLC v. Earl*, No. C08-1705RSL,

8    2010 WL 3430518, at *2 (W.D. Wash. Aug. 30, 2010).  As discussed above, however, Microsoft

9    has not sufficiently pleaded the threshold requirement of an unfulfilled or broken promise. *See*

10   *Ritchie v. Fed. Express Corp.*, No. C04-1753L, 2007 WL 1140260, at *9 n.4 (W.D. Wash.

11   Apr. 16, 2007) ("Washington courts treat claims for promissory estoppel and breach of a specific

12   promise as one in the same.  Given that [plaintiff] has failed to establish any facts to support a

13   breach of the promise at issue, [its] promissory estoppel claim cannot proceed.") (citations

14   omitted).  An offer to license patents under RAND terms in conjunction with an opening offer, no

15   matter how unacceptable to the offeree, cannot violate a promise to negotiate in good faith.  Thus,

16   if there is no preemptive contract here, Microsoft's promissory estoppel claim was not ripe, and it

17   is not based on plausible supporting facts.

18        Microsoft's waiver "claim" should similarly be dismissed because waiver is a defense, not

19   a cause of action. *See Guesthouse Int'l, LLC v. Shoney's N. Am. Corp.*, No. M2008-02567-COA-

20   R3-CV, 2010 WL 987119, at *31 (Tenn. Ct. App. Mar. 18, 2010); 28 Am. Jur. 2d *Estoppel and*

21   *Waiver* § 197 (July 2010) ("Waiver is not a cause of action because it cannot create liability in and

22   of itself, and waiver cannot be asserted in a complaint as an offensive weapon.").  In any event, the

23   waiver "claim" should be dismissed as ungrounded for the same reasons as for Microsoft's other

24   claims.

25        And Microsoft's declaratory judgment claim is merely a counterpart of its other causes of

26   action, and should be dismissed for the same reasons. *See Degenhart v. AIU Holdings, Inc.*,

DEFENDANTS' RENEWED MOTION TO DISMISS - 16
CASE NO. C10-1823-JLR

1   No. C10-5172RBL, 2010 WL 485220, at *3 (W.D. Wash. Nov. 26, 2010) ("While a plaintiff may

2   plead claims in the alternative in certain situations, there is Ninth Circuit authority allowing the

3   Court to dismiss a declaratory relief cause of action when it only seeks a declaration of

4   defendants' liability for damages which are sought by other causes of action."); *Permpoon v. Wells*

5   *Fargo Bank Nat'l Assn,* No. 09-cv-01140-H(BLM), 2009 WL 3214321, at *5 (dismissing a

6   declaratory judgment cause of action because it was "entirely commensurate with the relief sought

7   through . . . other causes of action").

8               IV.    CONCLUSION

9           For the foregoing reasons, Motorola respectfully submits that Microsoft's claims were

10  premature and are non-justiciable, seeking an advisory opinion that Microsoft has not even agreed

11  to accept.  For these and the other reasons set out above, these claims should be dismissed with

12  prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

13          DATED this 9th day of March, 2011.

14                                          SUMMIT LAW GROUP PLLC

15

16                                          By /s/ Philip S. McCune
                                               Philip S. McCune, WSBA #21081
17                                             Lynn M. Engel, WSBA #21934
                                               *philm@summitlaw.com*
18                                             *lynne@summitlaw.com*

19

20

21

22

23

24

25

26

DEFENDANTS' RENEWED MOTION TO DISMISS - 17
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

And by

Steven Pepe (*pro hac vice*)
Jesse J. Jenner (*pro hac vice*)
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY  10036-8704
(212) 596-9046
*steven.pepe@ropesgray.com*
*jesse.jenner@ropesgray.com*

Norman H. Beamer (*pro hac vice*)
Ropes & Gray LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA  94303-2284
(650) 617-4030
*norman.beamer@ropesgray.com*

Paul M. Schoenhard (*pro hac vice*)
Ropes & Gray LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC  20005-3948
(202) 508-4693
*paul.schoenhard.@ropesgray.com*

***Attorneys for Defendants Motorola Solutions,
Inc., Motorola Mobility, Inc., and General
Instrument Corporation***

DEFENDANTS' RENEWED MOTION TO DISMISS - 18
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Arthur W. Harrigan, Jr., Esq.
Christopher T. Wion, Esq.
Shane P. Cramer, Esq.
Danielson Harrigan Leyh & Tollefson
*arthurh@dhlt.com*
*chrisw@dhlt.com*
*shanec@dhlt.com*

Brian R. Nester, Esq.
David T. Pritikin, Esq.
Douglas I. Lewis, Esq.
John W. McBride, Esq.
Kevin C. Wheeler, Esq.
Richard A. Cederoth, Esq.
Sidley Austin LLP
*bnester@sidley.com*
*dpritikin@sidley.com*
*dilewis@sidley.com*
*jwmcbride@sidley.com*
*kwheeler@sidley.com*
*rcederoth@sidley.com*

T. Andrew Culbert, Esq.
David E. Killough, Esq.
Microsoft Corp.
*andycu@microsoft.com*
*davkill@microsoft.com*

DATED this 9th day of March, 2011.

_____
Marcia A. Ripley

DEFENDANTS' RENEWED MOTION TO DISMISS - 19
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001