# Exhibit 11



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| *RESEARCH IN MOTION LIMITED* and | § | |
| *RESEARCH IN MOTION CORPORATION,* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | **CIVIL ACTION NO. 3:08-CV-0284-G** |
| v. | § | **ECF** |
| | § | |
| *MOTOROLA, INC.,* | § | |
| | § | |
| Defendant. | § | |

## DECLARATION OF BRIAN BLASIUS

I, Brian Blasius, declare

1.      I make this declaration in support of Defendant Motorola, Inc.'s Brief In Support Of Its Motion To Dismiss Or Stay Plaintiffs' Antitrust And Contract Claims; And To Dismiss, Stay Or Transfer Plaintiffs' Declaratory Judgment Patent Claims.  Unless otherwise stated, I make this declaration based on personal knowledge.

2.      I am currently employed by Motorola, Inc. as Director of Intellectual Property Outbound Licensing in its Mobile Devices business.

3.      As part of its participation in standards organizations, Motorola has declared the existence of patents that it considers "essential" to a standard, and has agreed to license them on "FRAND" (Fair, Reasonable and Non-Discriminatory) terms as required by standards organizations.  Motorola has licensed its "essential" patents to dozens of companies, including many of Motorola's competitors in the industry.

4.      From 2003 through the end of 2007, Research In Motion Limited (RIM) was licensed under a number of Motorola's "essential" and "non-essential" patents.  One of the terms

3579008_1.DOC

of that license provided for RIM's payment to Motorola of an up-front, lump sum amount for use of certain "essential" and "non-essential" Motorola patents. Based on information I have reviewed and my personal knowledge, this lump sum amount was based on a typical essential patent royalty rate used in other Motorola licenses, applied to an estimate of RIM's future sales over the five-year term of the license, which estimate turned out to be significantly lower than RIM's actual performance.

5.    In late 2007, RIM and Motorola had negotiations to renew their license. During those renewal negotiations, Motorola offered RIM a license under its "essential" and certain "non-essential" patents. This offer attributed a royalty rate to the "essential" patents that is comparable to that used by Motorola to arrive at the lump sum payment offered to and accepted by RIM in 2003 as well as the rate offered to and accepted by other companies.

6.    Motorola has been, and remains, willing to license its "essential" patents without requiring that a licensee also take a license under any "non-essential" patents. Most of Motorola's agreements that cover licenses under "essential" patents provide no license for "non-essential" patents.

7.    During the 2007 negotiations, Motorola and RIM entered into a Standstill Agreement effective December 5, 2007, to provide additional time for the negotiations. That Standstill Agreement expired at "the end of the day" on February 15, 2008.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Libertyville, Illinois on April 9th, 2008.

_____
Brian Blasius

3579008_1.DOC

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| *RESEARCH IN MOTION LIMITED* and | § | |
| *RESEARCH IN MOTION CORPORATION,* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | **CIVIL ACTION NO. 3:08-CV-0284-G** |
| v. | § | **ECF** |
| | § | |
| *MOTOROLA, INC.,* | § | |
| | § | |
| Defendant. | § | |

## DECLARATION OF JOHN M. PICKETT

I, John M. Pickett, hereby declare the following:

## I.      INTRODUCTION

1.      I am a member of the law firm of Young, Pickett & Lee, 4122 Texas Boulevard, Texarkana, Texas 75503.

2.      Our firm has been retained by Motorola, Inc. ("Motorola") to serve as local counsel in two patent infringement lawsuits currently pending in the Eastern District of Texas. The first lawsuit (Motorola, Inc. v. Research In Motion Limited and Research In Motion Corporation, 2:08-cv-69) is pending in Marshall ("the Marshall action"), the Honorable Judge T. John Ward, presiding. The second lawsuit (Motorola, Inc. v. VTech Communications, Inc. and VTech Telecommunications Ltd., 5:07-cv-171) is pending in Texarkana, the Honorable Judge David Folsom, presiding.

3.      I am admitted to practice law in the States of Texas and Arkansas, in the U.S. District Court for the Western District of Arkansas, the U.S. District Court for the

Eastern and Northern Districts of Texas, and before the United States Court of Appeals for the 5th and 8th Circuits.

## II.     EASTERN DISTRICT OF TEXAS ECF FILING PROCEDURES

4.      The Eastern District of Texas permits parties to file complaints using the Electronic Case Filing System ("ECF").

5.      In order to file a complaint in the Eastern District of Texas using ECF, a party must create a new case file and subsequently upload a Civil Cover Sheet, the complaint, any exhibits, and the form of payment for the filing fee.

6.      The date and time of filing for ECF is determined by the time the case file is created and the uploaded filing documents are submitted, including the payment of the filing fee electronically through Pay.gov, the official Website for making online payments to federal government agencies, such as the United States District Court Clerk's office.

7.      The time period between the creation of a case file and submission of the filing documents, including the payment electronically of the filing fee, is dependant upon the time it takes to upload the filing documents and pay the filing fee. This time period can vary based on several factors, *e.g.*, the length of the complaint, the amount and length of the exhibits, and the speed of the computer used for filing.

## III.     FILING OF FEBRUARY 16, 2008 MOTOROLA V. RIM COMPLAINT

8.      In order to avoid an erroneous filing date of Friday, February 15, 2008, the creation of the case file for the Marshall action did not commence until 00:01 a.m. Central time on Saturday, February 16, 2008.

9.    The process of creating the case file, uploading the filing documents (Civil Cover Sheet, 11-page complaint, and Exhibits A-G), submitting the filing documents and paying the filing fee electronically was completed at 00:23 a.m., which was the time entered on the ECF confirmation notice that I received.

10.   Attached hereto as Exhibit A is a true and correct copy of the ECF notice showing a date filed of February 16, 2008, and a time filed of 00:23 a.m. Central time.

11.   It is my understanding that RIM has alleged that Motorola commenced the filing of the Marshall action before midnight on February 16, 2008, in its motion to transfer papers filed in the Marshall action and the District of Delaware action (Motorola, Inc. v. Research In Motion Limited and Research In Motion Corporation, 1:08-cv-104). RIM's allegations are untrue, and thus without merit. As stated above in ¶¶8-9, the filing of the Marshall action did not begin until after midnight on February 16, 2008.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 4, 2008
     at Texarkana, TX

                                    John M. Pickett

# EXHIBIT A

**Misti McLelland**

| | |
|---|---|
| **From:** | txedCM@txed.uscourts.gov |
| **Sent:** | Saturday, February 16, 2008 12:24 AM |
| **To:** | txedcmcc@txed.uscourts.gov |
| **Subject:** | Activity in Case 2:08-cv-00069 Motorola, Inc. v. Research In Motion Limited Complaint |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT
RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without
charge. To avoid later charges, download a copy of each document during this first viewing.

### U.S. District Court [LIVE]

### Eastern District of TEXAS

### Notice of Electronic Filing

The following transaction was entered by Pickett, John on 2/16/2008 at 0:23 AM CST and filed on
2/16/2008

| | |
|---|---|
| **Case Name:** | Motorola, Inc. v. Research In Motion Limited |
| **Case Number:** | 2:08-cv-69 |
| **Filer:** | Motorola, Inc. |
| | Research In Motion, Corporation |

**Document Number:** 1

**Docket Text:**
COMPLAINT *for Patent Infringement* against Research In Motion, Corporation, Research In Motion
Limited ( Filing fee $ 350 receipt number 1433502.), filed by Research In Motion, Corporation,
Motorola, Inc.. (Attachments: # (1) Exhibit A# (2) Exhibit B# (3) Exhibit C# (4) Exhibit D# (5) Exhibit
E# (6) Exhibit F# (7) Exhibit G# (8) Civil Cover Sheet)(Pickett, John)


**2:08-cv-69 Notice has been electronically mailed to:**

Motorola, Inc.    jpickett83@aol.com

John Michael Pickett    jpickett@youngpickettlaw.com, jpickett83@aol.com

**2:08-cv-69 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1041545818 [Date=2/16/2008] [FileNumber=2183890-0
] [69b3ab357877d7c124333e976b7dc16c0bbc48f10500d3eabd42873a26a9a2c91e7

64c65d6b4fde240ce49ab4cdcd3e89db6969df036717d2e9d75b1c4ee38cb]]
**Document description:**Exhibit A
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1041545818 [Date=2/16/2008] [FileNumber=2183890-1
] [4175743f1d8a86c9a6d1b9282cca3ebd7059211e69b5d96ba033a6e76082238d428
0333f243694548d4e29363a6f665fe2f5a33c465a5c8818a061bd92cfff10]]
**Document description:**Exhibit B
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1041545818 [Date=2/16/2008] [FileNumber=2183890-2
] [0979ce171de151dbb004d8ff55f05eabfbc013800e09ac710c3d6d266fad2936ced
44c84973c8df810082b8821768a248335459f0cbf8c1a398a934963f79f0d]]
**Document description:**Exhibit C
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1041545818 [Date=2/16/2008] [FileNumber=2183890-3
] [bcec540b7c9eaf0e3d4920036346601412 38 72b407d59bf98ae4d664afd41634a90
9624573740c2866659418cc3d42ed618f5e885efb57af550df51b18714d3d]]
**Document description:**Exhibit D
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1041545818 [Date=2/16/2008] [FileNumber=2183890-4
] [7e65bd3d72a2ce60e4ea569b37ab2f5d33ceec6cb66cc84a5d0849dddcff75ff371
ddb46c8cb9c538a18f5006a5f745fc9372d2a604356eaf66211db93e15f8e]]
**Document description:**Exhibit E
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1041545818 [Date=2/16/2008] [FileNumber=2183890-5
] [3dcd666e3b4e6f8a30945518272c47fe3a566c031b24aed2c2eefac296d22e5f4cf
6e3b059d853506b5e4837311158a39615f2dab3dc27111351771b854a3b48]]
**Document description:**Exhibit F
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1041545818 [Date=2/16/2008] [FileNumber=2183890-6
] [54cd881b636495ab74a30430a9eaa499cdaf040bd5142a1bdc111a540b4096e3d35
2da898af48aa50e793bfd9beca2be3532534feb2a9596bb6778a1d9c236d4]]
**Document description:**Exhibit G
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1041545818 [Date=2/16/2008] [FileNumber=2183890-7
] [3b06e3fd58b618860a8f9ebf71261f0566820f3325981a9f2e62d4187675ecdd896
aa9a036732cfc8a2f83e570753baf966d7f55b762080e98fae8521b7e7a32]]
**Document description:** Civil Cover Sheet
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1041545818 [Date=2/16/2008] [FileNumber=2183890-8
] [00ea46104a83c4ef6c33e16fc7f3ac0d66baf52c5e07a22c5ee18bc4e5584223dd5
298ec388b6089f2977f0896319b5c02205bfde2b2a77e08118055eaafed5f]]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ***RESEARCH IN MOTION LIMITED* and** | § | |
| ***RESEARCH IN MOTION CORPORATION,*** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO. 3:08-CV-0284-G** |
| **v.** | § | **ECF** |
| | § | |
| ***MOTOROLA, INC.,*** | § | |
| | § | |
| **Defendant.** | § | |

### DECLARATION OF NORMAN H. BEAMER

I, Norman H. Beamer, declare as follows:

1.      I am a member of the firm of Ropes & Gray LLP, 525 University Avenue, Palo Alto, California, counsel to Defendant Motorola, Inc. in this action. I make this declaration in support of Defendant Motorola, Inc.'s Brief In Support Of Its Motion To Dismiss Or Stay Plaintiffs' Antitrust And Contract Claims; And To Dismiss, Stay Or Transfer Plaintiffs' Declaratory Judgment Patent Claims. Unless otherwise stated, I make this declaration based on personal knowledge.

2.      In addition to the above captioned action, the parties are involved in two other pending actions, both captioned as *Motorola, Inc. v. Research In Motion Limited and Research In Motion Corporation*. (Collectively, I refer to Research In Motion Limited and Research In Motion Corporation in this declaration as "RIM").

3.      At one minute past midnight EST on February 16, 2008, Motorola filed an infringement action in the District of Delaware (1:08-cv-104-SLR), asserting a declaratory

judgment that certain RIM patents were invalid or non infringed. As amended, the complaint encompasses the nine RIM patents in suit in this action.

4.       On February 16, 2008, Motorola also filed a patent infringement action against RIM in the District Court for the Eastern District of Texas, Marshall Division (2:08-cv-69). As amended, the Marshall action encompasses the eleven Motorola patents in suit in this action.

5.       Motorola is currently a party in another suit in the Eastern District of Texas involving some of the same Motorola patents in suit in this action (*Motorola v. Vtech Communications, Inc.*, 5:07-CV-00171).

6.       Attached hereto as Exhibit A is a copy of selected pages from Motorola's Form 10-K Annual Report for the fiscal year ended December 31, 2007, filed with the Securities and Exchange Commission on February 28, 2008.

7.       Attached hereto as Exhibit B is a web page (at webapp.etsi.org/ipr) that allows the user to search for patents that have been designated as essential to one or more ETSI standards. I navigated via a web browser to this page on April 7, 2008 (April 8 in Europe). According to that web page, there were on that date 18,296 patent or other intellectual property right entries designated as essential, organized in 73 projects (*i.e.*, standards), as designated by 144 different companies.

8.       Attached as Exhibit C is a copy of a search (performed through the search page described in the previous paragraph) for essential patents designated by RIM. According to that search, RIM has designated four United States patents as "essential" to an ETSI standard. All of these designations were made during or after 2006. Two of these patents, U.S. Patents Nos. 5,699,485 and 5,664,055, are among the patents included in RIM's patent infringement claims in

this action. According to publicly available assignment data, these two patents were purchased by RIM shortly before RIM filed this lawsuit.

9.     A search of the type described in the previous paragraph was also performed for Motorola essential patents. According to that search, Motorola has filed 1,357 designations with ETSI.

10.     None of the Motorola patents asserted against RIM have been designated by Motorola as "essential" to any standard.

11.     Attached as Exhibit D is a copy of a January 25, 2008 press release of IDC, a market research organization, listing market share information for the mobile phone market.

12.     Section 8.11 of the 2003 Motorola/RIM cross-license agreement specifies that, "With respect to matters of contract construction and interpretation, the substantive law of the state of Delaware ... shall apply."

13.     Attached hereto as Exhibit E is a copy of an article, Treacy and Lawrance, "FRANDly fire: are industry standards doing more harm than good?" *Journal of Intellectual Property Law & Practice*, 2007.

14.     Attached hereto as Exhibit F is a copy of selected pages from the October 17, 2007 "Amended Public Version" of Plaintiffs Nokia Corporation and Nokia, Inc.'s Reply Brief In Support Of Their Motion To Stay And/Or Dismiss, *Nokia Corp. v. Qualcomm, Inc.*, C.A. NO. 2330-VCS, Dkt. 316 (Del. Ch.).

15.     Attached hereto as Exhibit G is a copy of selected pages from the August 9, 2006 Complaint in *Nokia Corp. v. Qualcomm, Inc.*, C.A. NO. 2330-VCS, Dkt. 1 (Del. Ch.).

16.  Attached hereto as Exhibit H is a copy of "Amended Public Version" of the March 12, 2008 First Amended Verified Complaint in *Nokia Corp. v. Qualcomm, Inc.*, C.A. NO. 2330-VCS, Dkt. 354 (Del. Ch.).

17.  Attached hereto as Exhibit I is a copy of Docket Entry 1-11 in this action, which I understand consists of emails exchanged between counsel for RIM and employees of this District.

18.  Attached hereto as Exhibit J is a copy of a slip opinion entered in *Research in Motion Limited, et al. v. Visto Corporation,* CA 3:06-CV-0783-D (N.D. Texas May 17, 2007).

19.  Based on PACER searches performed under my direction and supervision, I am informed and believe that the following actions are examples of litigations where RIM has been sued in the Eastern District of Texas, and has not sought to transfer those actions elsewhere: *Antor Media Corp. v. Nokia, Inc.*, 2:2005cv00186; *Minerva Industries, Inc. v. Research In Motion Corp*, 2:2007cv00230; *Minerva Industries, Inc. v. Research In Motion Corporation et al*, 2:08cv00020; *Reese v. Samsung Telecommunications America, LP*, 2:2005cv00415; *Saxon Innovations LLC v. Nokia Corp.*, 6:2007cv00490; and *Williams Wireless Technologies Inc v. Research In Motion*, 4:2006cv00305.

20.  Attached hereto as Exhibit K is a copy of selected pages from RIM's Form 40-F Annual Report for the fiscal year ended March 3, 2007, filed with the Securities and Exchange Commission on May 17, 2007.

21.  Based on information provided to me by Motorola, and also based on evidence provided by RIM in connection with its motions to transfer filed in the Delaware and Marshall actions, I am informed and believe that all but two of the named inventors of the eleven Motorola patents in suit are located at various points around the country outside of Texas. The remaining

two live in the Dallas area, are within 165 miles of the Marshall Court, and are subject to process in the Eastern District of Texas.

22.    According to Motorola's complaint against RIM in the Marshall action, the eleven Motorola patents are asserted against 23 models of RIM products, and associated software. Based on RIM's complaint in this action, the nine RIM patents in suit are apparently asserted against at least five specific models of Motorola products and three broad categories of Motorola products, *i.e.*, "wireless handsets," "base stations" and "other wireless communication, enterprise, and network related equipment and services."

23.    Based on my reading of the patents, and without purporting to characterize them comprehensively or for such purposes as claim construction, I understand that Motorola's patents generally relate to graphical user interface features for cell phones and sending/receiving messages within a wireless communications system. I also understand that RIM's patents generally relate to the physical keyboard layout and advanced signal processing for coding human speech using factors like pitch, lag and excitation. It is my present understanding and belief that the parties will likely present testimony from a number of different technical experts on these different patents.

24.    Attached hereto as Exhibit L is a copy of a slip opinion, *Research In Motion Limited, et al. v. Visto Corporation*, CA No. 3:06-CV-0783-D (N.D. Texas Oct. 19, 2006).

25.    The 2007 Annual Report of the Director of the Administrative Office of the U.S. Courts, Table C-10, states that the median time interval from filing to trial, in which trials were completed, during the 12-month period ending September 30, 2007, for jury trials, in the Northern District of Texas was 21 months (for 29 trials). That figure for the Eastern District of Texas was 17 months (for 40 trials).

26.     Attached hereto as Exhibit M is a copy of Defendant Research In Motion's

Motion To Transfer Venue Pursuant To 28 U.S.C. § 1404(a), filed March 31, 2008 in *Motorola,*

*Inc. v. Research In Motion Limited and Research In Motion Corporation* (E.D. Texas 2:08-cv-

69).

        I declare under penalty of perjury that the foregoing is true and correct.

Executed in New York, New York on April 9, 2008.

                                        Norman H. Beamer

**APP. 14**

Case 2:10-cv-01823-JLR Document 58-7 Filed 03/09/11 Page 16 of 27

# EXHIBIT A

Table of Contents

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# FORM 10-K

☑ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

### For the fiscal year ended December 31, 2007
or

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

### For the transition period from     to
### Commission File number 1-7221

# MOTOROLA, INC.
#### (Exact name of registrant as specified in its charter)

| | |
|---|---|
| **DELAWARE** | **36-1115800** |
| **(State of Incorporation)** | **(I.R.S. Employer Identification No.)** |

**1303 East Algonquin Road, Schaumburg, Illinois 60196**
**(Address of principal executive offices)**
**(847) 576-5000**
**(Registrant's telephone number)**

---

### Securities registered pursuant to Section 12(b) of the Act:

| Title of Each Class | Name of Each Exchange on Which Registered |
|---|---|
| **Common Stock, $3 Par Value per Share** | **New York Stock Exchange** |
| | **Chicago Stock Exchange** |

### Securities registered pursuant to Section 12(g) of the Act:
### None

---

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes ☑    No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934. Yes ☐    No ☑

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☑    No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer or a smaller reporting company. See definition of "large accelerated filer", "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act.

Large accelerated filer ☑    Accelerated filer ☐    Non-accelerated filer ☐    Smaller reporting company ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). Yes ☐    No ☑

The aggregate market value of voting and non-voting common equity held by non-affiliates of the registrant as of June 30, 2007 (the last business day of the Registrant's most recently completed second quarter) was approximately $40.6 billion (based on closing sale price of $17.70 per share as reported for the New York Stock Exchange-Composite Transactions).

The number of shares of the registrant's Common Stock, $3 par value per share, outstanding as of January 31, 2008 was 2,254,786,558.

### DOCUMENTS INCORPORATED BY REFERENCE

Portions of the registrant's definitive Proxy Statement to be delivered to stockholders in connection with its Annual Meeting of Stockholders, which Proxy Statement will be filed no later than April 29, 2008, are incorporated by reference into Part III.

**Table of Contents**

|  |  | Page |
|---|---|---|
| **PART I** |  | 1 |
| Item 1. | Business | 1 |
| *General* |  | 1 |
| *Business Segments* |  | 1 |
|  | Mobile Devices Segment | 1 |
|  | Home and Networks Mobility Segment | 5 |
|  | Enterprise Mobility Solutions Segment | 10 |
| *Other Information* |  | 15 |
|  | 2007 Change in Organizational Structure | 15 |
|  | Financial Information About Segments | 15 |
|  | Customers | 15 |
|  | Backlog | 16 |
|  | Research and Development | 16 |
|  | Patents and Trademarks | 16 |
|  | Environmental Quality | 16 |
|  | Employees | 16 |
|  | Financial Information About Foreign and Domestic Operations | 16 |
| *Available Information* |  | 16 |
| Item 1A. | Risk Factors | 18 |
| Item 1B. | Unresolved Staff Comments | 27 |
| Item 2. | Properties | 27 |
| Item 3. | Legal Proceedings | 27 |
| Item 4. | Submission of Matters to a Vote of Security Holders | 33 |
| Executive Officers of the Registrant |  | 33 |
| **PART II** |  | 34 |
| Item 5. | Market for Registrant's Common Equity, Related Stockholder Matters and Issuer Purchases of Equity Securities | 34 |
| Item 6. | Selected Financial Data | 36 |
| Item 7. | Management's Discussion and Analysis of Financial Condition and Results of Operations | 37 |
| Item 7A. | Quantitative and Qualitative Disclosures About Market Risk | 71 |
| Item 8. | Financial Statements and Supplementary Data | 75 |
| Item 9. | Changes in and Disagreements with Accountants on Accounting and Financial Disclosure | 122 |
| Item 9A. | Controls and Procedures | 122 |
| Item 9B. | Other Information | 124 |
| **PART III** |  | 124 |
| Item 10. | Directors, Executive Officers and Corporate Governance | 124 |
| Item 11. | Executive Compensation | 124 |
| Item 12. | Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters | 124 |
| Item 13. | Certain Relationships and Related Transactions, and Director Independence | 124 |
| Item 14. | Principal Accounting Fees and Services | 124 |
| **PART IV** |  | 125 |
| Item 15. | Exhibits and Financial Statement Schedules | 125 |
| 15 (a) (1) | Financial Statements | 125 |
| 15 (a) (2) | Financial Statement Schedule and Independent Auditors' Report | 125 |
| 15 (a) (3) | Exhibits | 125 |
| Motorola Omnibus Incentive Plan of 2006 |  |  |
| Motorola, Inc. Award Document for the Motorola Omnibus Incentive Plan of 2006 |  |  |
| Form of Motorola Stock Option Consideration Agreement |  |  |
| Form of Motorola, Inc. Restricted Stock Unit Award Agreement |  |  |
| Form of Motorola, Inc. Award Document for the Motorola Omnibus Incentive Plan of 2006 |  |  |
| Form of Motorola, Inc. Award Document for the Motorola Omnibus Incentive Plan of 2006 |  |  |
| Form of Motorola Stock Option Consideration Agreement |  |  |
| Form of Motorola, Inc. Restricted Stock Unit Award Agreement |  |  |
| Form of Motorola, Inc. Restricted Stock Unit Award Agreement |  |  |
| Motorola 2006 Incentive Plan |  |  |
| Motorola Long-Range Incentive Plan |  |  |
| Motorola Long-Range Incentive Plan |  |  |
| Description of Certain Compensatory Arrangements |  |  |
| Description of Certain Compensatory Arrangements |  |  |
| Chairman/CEO Retirement Term Sheet |  |  |

Amended and Restated Employment Agreement
Agreement with Ruth Fattori
Statement regarding Computation of Ratio of Earnings to Fixed Charges
Subsidiaries of Motorola
Certification of Gregory Q. Brown
Certification of Thomas J. Meredith
Section 906 Certification of Gregory Q. Brown
Section 906 Certification of Thomas J. Meredith

Table of Contents

1

# PART I

Throughout this 10-K report we "incorporate by reference" certain information in parts of other documents filed with the Securities and Exchange Commission (the "SEC"). The SEC allows us to disclose important information by referring to it in that manner. Please refer to such information.

We are making forward-looking statements in this report. In "Item 1A: Risk Factors" we discuss some of the risk factors that could cause actual results to differ materially from those stated in the forward-looking statements.

"Motorola" (which may be referred to as the "Company," "we," "us," or "our") means Motorola, Inc. or Motorola, Inc. and its subsidiaries, or one of our segments, as the context requires. "Motorola" is a registered trademark of Motorola, Inc.

## Item 1: Business

### General

We provide technologies, products and services that make a broad range of mobile experiences possible. Our portfolio includes wireless handsets, wireless accessories, digital entertainment devices, wireless access systems, voice and data communications systems, and enterprise mobility products. With the rapid convergence of fixed and mobile broadband Internet and the growing demand for next-generation mobile communications solutions by people, businesses and governments, we are focused on high-quality, innovative products that meet the expanding needs of our customers around the world.

Motorola is a market leader in the following businesses:

- The **Mobile Devices** business designs, manufactures, sells and services wireless handsets with integrated software and accessory products, and licenses intellectual property.

- The **Home and Networks Mobility** business designs, manufactures, sells, installs and services: (i) digital video, Internet Protocol ("IP") video and broadcast network interactive set-tops ("digital entertainment devices"), end-to-end video delivery solutions, broadband access infrastructure systems, and associated data and voice customer premise equipment ("broadband gateways") to cable television and telecom service providers, and (ii) wireless access systems ("wireless networks"), including cellular infrastructure systems and wireless broadband systems, to wireless service providers.

- The **Enterprise Mobility Solutions** business designs, manufactures, sells, installs and services analog and digital two-way radio, voice and data communications products and systems for private networks, wireless broadband systems and end-to-end enterprise mobility solutions to a wide range of enterprise markets, including government and public safety agencies, as well as retail, utility, transportation, manufacturing, healthcare and other commercial customers.

Motorola is a corporation organized under the laws of the State of Delaware as the successor to an Illinois corporation organized in 1928. Motorola's principal executive offices are located at 1303 East Algonquin Road, Schaumburg, Illinois 60196.

### Business Segments

Motorola reports financial results for the following three operating business segments:

### Mobile Devices Segment

The Mobile Devices segment ("Mobile Devices" or the "segment") designs, manufactures, sells and services wireless handsets with integrated software and accessory products, and licenses intellectual property. In 2007, the segment's net sales represented 52% of the Company's consolidated net sales.

Table of Contents

2

*Principal Products and Services*

Our wireless subscriber products include wireless handsets with related software and accessory products. We also sell and license our intellectual property. We market our products worldwide to carriers and consumers through direct sales, distributors, dealers, retailers and, in certain markets, through licensees.

*Our Industry*

The overall wireless handset industry remains strong. Total industry shipments of wireless handsets (also referred to as industry "sell-in") increased to approximately 1.14 billion units in 2007, an increase of approximately 16% compared to 2006. Demand from new subscribers was strong in emerging markets, led by India and China. Replacement sales in highly-penetrated markets were also strong due to generally favorable economic conditions, as well as compelling new handset designs, attractive handset features and the increased roll-out of high-speed data networks, all creating greater demand.

Industry forecasters predict that the wireless handset industry will continue to grow over the next several years, although the annual rate of growth is expected to be in the 10% range as opposed to the approximately 20% average annual growth the industry experienced from 2003 through 2007. Continued growth is expected to be driven primarily by demand from new subscribers in emerging markets and replacement sales from the current subscriber base.

*Our Strategy*

Motorola seeks to be a leading supplier of wireless handsets and mobile experiences to customers globally. To accomplish this objective, our strategy is focused on improving our product portfolio to meet consumer demands and improving our financial performance. This includes transitioning to silicon and software platforms that enable us to lower costs, get to market faster and offer richer consumer experiences.

We have structured our mobile device product portfolio and development into four primary product segments: Mass Market, Feature, Multimedia and Productivity. Our strategy is to offer a broad array of products in each of these product segments.

The Mass Market product segment focuses on voice-centric devices with targeted features. While this segment is maturing in North America, Europe and parts of Asia, it is growing significantly in developing regions. To address this market, we are expanding our handset offerings around our new W Series of handsets. These handsets satisfy everyday communications needs, include targeted features and are offered at affordable price points across all regions and in both CDMA and GSM technologies. The key to our success in the Mass Market product segment is offering products at competitive price points.

The Feature product segment focuses on delivering iconic, fashionable phones with high-end features. During 2007, we refreshed our flagship RAZR franchise with the RAZR2, the luxurious RAZR2 V8, and a RAZR classic with video playback and a digital audio processor music player. We are focused on building an enhanced portfolio of Feature phone devices that deliver compelling 2G and 3G mobile experiences.

The Multimedia product segment is focused on the convergence of voice capabilities with multimedia experiences on a single mobile device. In the recent past, many of our customers have purchased and used different devices from multiple consumer electronics segments to meet their lifestyle needs. In addition to mobile phones, they use devices such as cameras, mobile music and video players, mobile gaming devices and portable navigation devices. Increasingly, these experiences will be delivered through compelling applications and services on a single device. We are developing handsets designed to strengthen our Multimedia product offerings, such as the MOTOROKR Z6 and the S9 headset, a 2008 mobile music offering. We are particularly focused on developing a broader offering of 3G products for the Multimedia product segment.

The Productivity product segment is growing as workforces around the world continue to demand increasingly robust wireless handsets and consumers want their email "on the go." In 2007, we expanded our Q franchise across all regions and major technologies with the launch of the GSM Q8 and UMTS Q9h. We are planning to capitalize on new opportunities in this growing product segment.

Throughout each of these product segments, we have increased our focus in our accessories portfolio to deliver complete mobile experiences and to complement the features and functionalities of the wireless handsets.

Table of Contents

3

Additionally, we are expanding our accessory compatibility across all brands of wireless handsets and Bluetooth-enabled devices.

We are investing in next-generation technologies, such as WiMAX, HSDPA and Long Term Evolution ("LTE"). We believe a strong intellectual property portfolio is critical to our long-term success and to ensuring that we maintain a favorable strategic position in these technologies. We will continue to identify opportunities to generate licensing revenue from these investments. We also believe that innovation is critical to offering devices that demonstrate unique experiences and value propositions for consumers. As an example, in 2007 we began shipping our flagship RAZR2 devices with Crystal Talk, a proprietary technology that automatically adjusts audio quality based on ambient noise conditions to provide the optimal conversational experience. In application services, we continue to work with third parties to improve upon and develop our services and applications, which will deliver rich experiences to the customer. Motorola is committed to investing in evolving technologies to ensure that we continue to deliver enhanced and differentiated wireless handset experiences to consumers.

In January 2008, we announced that we are evaluating alternatives for the structural and strategic realignment of our Mobile Devices business to better equip it to recapture global market leadership and to enhance shareholder value. This may include the separation of the Mobile Devices business from Motorola's other businesses to permit each to grow and better serve their customers.

*Customers*

We continue to focus on strengthening our relationships with our customers. The segment has several large customers worldwide, the loss of one or more of which could have a material adverse effect on the segment's business. The largest of the segment's end customers (including sales through distributors) are Sprint Nextel, AT&T, Verizon, China Mobile and America Movil. In 2007, aggregate net sales to these five customers represented approximately 42% of the segment's net sales.

In addition to selling directly to carriers and operators, our Mobile Devices business also sells products through a variety of third-party distributors and retailers, which account for approximately 33% of the segment's net sales. The largest of these distributors is Brightstar Corporation.

The U.S. market continued to be the segment's largest individual market, accounting for approximately 46% of the segment's net sales in 2007, compared to approximately 35% of the segment's net sales in 2006. Approximately 54% of the segment's net sales in 2007 were to markets outside the U.S., the largest of which were Brazil, China and Mexico. Compared to 2006, the segment experienced sales declines in each of its four major sales regions: Asia, the Europe, Middle East and Africa region ("EMEA"), North America and Latin America.

*Competition*

The segment believes its overall market share for the full year 2007 was approximately 14%, making it the third-largest worldwide supplier of wireless handsets. The segment experiences intense competition in worldwide markets from numerous global competitors, including some of the world's largest companies, such as Nokia, Samsung, Sony-Ericsson and LG. In 2007, consolidation in the wireless handset industry slowed compared to previous years, and the five largest vendors together held an aggregate market share of approximately 83%, compared to 84% at the end of 2006. During 2007, regulatory changes in China precipitated a substantial increase in the number of manufacturers producing handsets in that market. The increased competition, primarily in the very low tier of the Mass Market product segment, has impacted shipment volumes in China for global vendors, as local vendors gained market share in the fourth quarter of 2007.

Major competitors in the industry are moving to applications and services as key sources of value and are increasing their focus and investments in these areas. In response, Motorola has created a global applications and services team within the Mobile Devices segment to focus on building the applications and services business.

General competitive factors in the market for the segment's products include: design; time-to-market; brand awareness; technology offered; price; product proposition, performance, quality, delivery and warranty; the quality and availability of service; and relationships with key customers.

**Table of Contents**

4

*Payment Terms*

The segment's customers and distributors buy from us regularly with payment terms that are competitive with current industry practices. These terms vary globally and generally range from cash-with-order to 60 days. Extended payment terms beyond 60 days are provided to customers on a limited basis. A customer's outstanding credit at any point in time is limited to a predetermined amount as established by the Company.

*Regulatory Matters*

Radio frequencies are required to provide wireless services. The allocation of frequencies is regulated in the U.S. and other countries, and limited spectrum space is allocated to wireless services. The growth of the wireless and personal communications industry may be affected if adequate frequencies are not allocated or, alternatively, if new technologies are not developed to better utilize the frequencies currently allocated for such use. Industry growth may also be affected by the cost of the new licenses required to use frequencies and any related frequency relocation costs.

The U.S. leads the world in spectrum deregulation, allowing new wireless communications technologies to be developed and offered for sale. Examples include wireless local area network systems, such as WiFi, and wide area network systems, such as WiMAX and LTE. Other countries have also deregulated portions of their available spectrum to allow deployment of these and other new technologies, which can be offered without spectrum license costs. Deregulation may introduce new competition and new opportunities for Motorola and our customers. In addition, Mobile WiMAX was recently approved as a global IMT (International Mobile Telecommunications) standard. This action lays the foundation to further expand mobile WiMAX in key bands, making additional spectrum available globally.

In January 2008, the Federal Communications Commission ("FCC") began its auction of 700 MHz band spectrum licenses in the United States. This spectrum can carry large amounts of data across long distances and penetrate walls easier than higher frequencies, enhancing in-building coverage. The open-access conditions are intended to help foster innovation in handsets and applications, however the actual impact of the new licenses is unclear. The open access provision applies to approximately one-third of the U.S. spectrum being auctioned and prevents the licensee from blocking devices or applications that are compatible with the network.

*Backlog*

The segment's backlog was $647 million at December 31, 2007, compared to $1.4 billion at December 31, 2006. This decrease in backlog is primarily due to a decline in customer demand driven by gaps in the segment's product portfolio. The 2007 backlog is believed to be generally firm and 100% of that amount is expected to be recognized as revenue in 2008. The forward-looking estimate of the firmness of such orders is subject to future events that may cause the amount recognized to change.

*Intellectual Property Matters*

Patent protection is extremely important to the segment's operations. The segment has an extensive portfolio of patents relating to its products, technologies and manufacturing processes. The segment licenses certain of its patents to third parties and generates revenue from these licenses. Motorola is also licensed to use certain patents owned by others. Royalty and licensing fees vary from year to year and are subject to the terms of the agreements and sales volumes of the products subject to licenses. The protection of these licenses is also important to the segment's operations. Reference is made to the material under the heading "Other Information" for additional information relating to patents and trademarks and research and development activities with respect to this segment.

*Inventory, Raw Materials, Right of Return and Seasonality*

The segment's practice is to carry reasonable amounts of inventory in manufacturing and distribution centers in order to meet customer delivery requirements in a manner consistent with industry standards. At the end of 2007, the segment had a lower inventory balance than at the end of 2006. The decrease reflects the significant decline in sales volumes during 2007, as well as an ongoing emphasis on managing inventory levels.

**Table of Contents**

5

Availability of materials and components required by the segment is relatively dependable, but fluctuations in supply and market demand could cause selective shortages and affect results. We currently source certain materials and components from single vendors. Any material disruption from a single-source vendor may have a material adverse impact on our results of operations.

Energy necessary for the segment's manufacturing facilities consists primarily of electricity and natural gas, which are currently in generally adequate supply for the segment's operations. In addition, the cost to operate our facilities and freight costs are dependent on world oil prices, which increased significantly during 2007 and increased our manufacturing and shipping costs. Labor is generally available in reasonable proximity to the segment's manufacturing facilities. However, difficulties in obtaining any of the aforementioned items or a significant cost increase could affect the segment's results.

The segment permits returns under limited circumstances to remain competitive with current industry practices.

The segment typically experiences higher sales in the fourth calendar quarter and lower sales in the first calendar quarter of each year due to seasonal trends in the wireless handset industry.

*Our Facilities/Manufacturing*

Our headquarters is located in Libertyville, Illinois. Our other major facilities are located in Plantation, Florida; Flensburg, Germany; Singapore; Beijing, Hangzhou and Tianjin, China; Jaguariuna, Brazil; Basingstoke, England; and Chennai, India. We have recently announced our intent to exit our Flensburg, Germany facility.

We also use several electronics manufacturing suppliers ("EMS") and original design manufacturers ("ODM") to enhance our ability to lower our costs and/or deliver products that meet consumer demands in the rapidly-changing technological environment. A portion of our handsets are manufactured either completely or substantially by non-affiliated EMS and ODM manufacturers and the percentage of total manufactured unit volume with these manufacturers increased moderately from 2006 to 2007.

In 2007, our handsets were primarily manufactured in Asia and we expect this to continue in 2008. Our largest manufacturing facilities are located in China, Singapore and Brazil. Each of these facilities serves multiple countries and regions of the world.

**Home and Networks Mobility Segment**

The Home and Networks Mobility segment ("Home and Networks Mobility" or the "segment") designs, manufactures, sells, installs and services: (i) digital video, Internet Protocol ("IP") video and broadcast network interactive set-tops ("digital entertainment devices"), end-to-end video delivery solutions, broadband access infrastructure systems, and associated data and voice customer premise equipment ("broadband gateways") to cable television and telecom service providers (collectively, referred to as the "home business"), and (ii) wireless access systems ("wireless networks"), including cellular infrastructure systems and wireless broadband systems, to wireless service providers. In 2007, the segment's net sales represented 27% of the Company's consolidated net sales.

*Principal Products and Services*

In the home business, the segment is a leading provider of end-to-end networks used for the delivery of video, data and voice services over hybrid fiber coaxial ("HFC") networks, digital subscriber line ("DSL") and passive optical networks ("PON"). Our portfolio includes: MPEG video encoding equipment for standard-definition and high-definition television ("HDTV" or "HD"); video processing and multiplexing systems; and video-on-demand, switched digital video and conditional access solutions used by network operators and programmers to deliver video programming. We provide a broad array of digital entertainment devices supporting analog, digital and IP video delivery including HD and digital video recording ("DVR") (together, "HD/DVR") applications. We support the delivery of high-speed data and voice services with head-end and central office equipment, along with data and voice modems and gateways for HFC and DSL networks and optical line terminals for PON networks.

In the wireless networks business, the segment provides end-to-end cellular networks, including radio base stations, base station controllers, associated software and services, application platforms and third-party switching for CDMA, GSM, iDEN® and UMTS technologies. The segment also offers a portfolio of WiMAX products to

Table of Contents

6

create mobile IP broadband access. WiMAX has the potential to make mobile bandwidth more affordable and accessible for mainstream consumer adoption.

Our products are marketed primarily to cable television operators, television programmers, telecom operators, wireless service providers and other communications providers worldwide and are sold primarily by our skilled sales personnel.

*Our Industry*

The home market is evolving rapidly as cable and telecom network operators expand their video, data and voice services (commonly known as the "triple play") to grow their subscriber base. The competition between cable and telecom service providers is increasing. Telecom operators are expanding their broadband networks and beginning to offer advanced video and data services using IPTV and PON technologies. Cable operators are responding by expanding their investment in HD programming, bundling voice-over-IP services, expanding their broadband data service through Data Over Cable Service Interface Specifications ("DOCSIS") 3.0 channel bonding, and maximizing utilization of network bandwidth using switched digital video.

Our home business is subject to regulation by the FCC in the United States and other governmental communication regulators throughout the world. On July 1, 2007, regulations enacted by the FCC became effective, requiring separation of security functionality from cable set-tops. A full two-way security interface continues to be refined. Once developed and implemented, these changes are expected to increase competition and encourage the sale of set-tops and integrated devices, such as televisions and DVRs, that will allow retail customers direct access to programming. Traditionally, service providers have leased digital entertainment devices to their customers.

In the wireless networks market, the majority of installed cellular infrastructure systems are based on CDMA, GSM, UMTS and iDEN technologies. We supply systems based on each of these technologies and are the sole supplier of proprietary iDEN networks. Advanced infrastructure systems based on these technologies include GPRS, CDMA-1X and EDGE. In addition, some segments of the cellular infrastructure industry have installed, or are in the process of migrating to, 3G networks, which are high-capacity radio access wireless networks providing enhanced data services, improved Internet access and increased voice capacity. The primary 3G technologies are W-CDMA (based on either UMTS or Freedom of Mobile Multimedia Access ("FOMA") technologies) and CDMA2000 1xEVDO. We supply 3G systems based on UMTS and CDMA 2000 1xEVDO technologies. An additional 3G technology standard is TD-SCDMA, driven primarily by the Chinese government and local Chinese vendors. We expect 3G licenses to be awarded in China during 2008.

Industry standards bodies are in the process of defining the next generation of wireless broadband systems after 3G. The Institute of Electrical and Electronics Engineers ("IEEE") is currently developing fixed and mobile broadband standards (802.16d and 802.16e) based on orthogonal frequency division multiplexing ("OFDM") technology, which will utilize wider channels and enable triple play services (voice, data, video). Based upon developments in the 802.16e standard, we expect to see the WiMAX market begin to develop in 2008 as several WiMAX networks come on-line and devices utilizing these networks become widely available. We are an early leader in next-generation wireless broadband products, including WiMAX technology.

The International Telecommunications Union ("ITU") is also adopting next-generation cellular wireless access standards ("4G") for the cellular infrastructure industry, also based on OFDM technology and known commonly as Long Term Evolution ("LTE"). LTE has widespread industry support, not only from current GSM/UMTS operators, but also from CDMA/EV-DO based carriers. Motorola has been chosen as a trial supplier for a joint Verizon/Vodafone LTE trial that is currently underway.

Licensing bodies of governments around the world are making spectrum available for advanced wireless technologies, including 4G, in recognition of growing demand for wireless broadband services. Currently, Motorola estimates that there are over 1,200 licenses available worldwide for advanced wireless technologies, such as 802.16e, with over 800 licenses outside North America.

Demand for our products depends primarily on: (i) capital spending by providers of cellular and broadband services for constructing, rebuilding or upgrading their communications systems, and (ii) the marketing of advanced communications services by those providers. The amount of spending by these providers, and therefore a majority of our sales and profitability, are affected by a variety of factors, including: (i) the continuing trend of consolidation within the cable, wireline and wireless industries, (ii) the financial condition of operators and alternative providers, including their access to financing, (iii) technological developments, (iv) standardization

Case 2:10-cv-01823-JLR Document 58-7 Filed 03/09/11 Page 26 of 27

# EXHIBIT B

IPR online database

2008-04-08

**IPR Declarations Search** Collapse

**Search for**

- ( ) **General IPR declarations only**
- ( ) **IS&LD of IPR only**
- (•) **Both**

- Company name-

- Country of Registration -

- Project -
All Projects
(not available)

*The list of projects is **not exhaustive***
Multiple projects selection using :

(•) Or ( ) And

**Application No.**

**Patent No.**

**Patent Title**

- Countries applicable to app./pat
To be defined
ANDORRA - AD

Multiple selection using :

(•) Or ( ) And

**Declaration date to ETSI:**

**ETSI Deliverable:**

**Notes:**

SEARCH RESET

HOME PRINT HELP HELPDESK

# IPR Search tool

Search the ETSI IPR Online database by using the selection criteria.
Clicking the "Search" button will display all the matching IPR declarations.

As of **2008-04-08**, the ETSI IPR Database contains **18296** entries organized in **73** projects between **144** companies

**APP. 26**

Copyright © ETSI 2002 - All rights reserved | Legal Notice | ISO 9002 certified.