HONORABLE JAMES L. ROBART

1

2

3

4

5

6

7

8       IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF WASHINGTON
                        AT SEATTLE

9

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation, | Case No. 10-1823 |
| Plaintiff, | **MICROSOFT'S OPPOSITION TO DEFENDANTS' *RENEWED* MOTION TO DISMISS** |
| vs. | **Noted:  Friday, April 1, 2011** |
| MOTOROLA, INC., MOTOROLA MOBILITY, INC., and GENERAL INSTRUMENT CORPORATION., | |
| Defendants | |

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MICROSOFT'S OPPOSITION TO
DEFENDANTS' RENEWED MOTION TO
DISMISS

CASE NO. 10-
1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..............................................................................1

II.  STATEMENT OF RELEVANT FACTS .............................................3

    A.   The Standards Setting Process......................................................4

    B.   Technologies at Issue in this Action ............................................5

        1.   *The WLAN/802.11 Wireless Internet Connectivity Standard* .........5

        2.   *H.264 Video Compression Standard*................................................5

    C.   Motorola Voluntarily Participated in Setting the Relevant Standards.........6

    D.   Motorola has Breached its Contract with the SDOs and Microsoft
        by Refusing to Offer Licenses to Microsoft on RAND Terms...................6

    E.   Motorola Has Breached Is Contracts by Bringing Patent
        Infringement Suits Seeking Injuctive Relief against Microsoft..................7

III. LEGAL ARGUMENT........................................................................8

    A.   Relevant Legal Standards ............................................................8

        1.   *Fed. R. Civ. P. 12(b)(6)*............................................................8

        2.   *Fed. R. Civ. P. 12(b)(1)*............................................................9

    B.   Microsoft's Breach of Contract Claim Should Not Be Dismissed .............9

        1.   *Microsoft has Stated a Claim for Breach of Contract*....................9

        2.   *Microsoft's Breach of Contract Claim is Ripe for Adjudication* ...13

        3.   *Microsoft is not seeking an Advisory Opinion*..............................16

        4.   *Motorola's Subsequent Patent Infringement Actions
           Constitute Breaches of Its Contractual Commitments to the
           EEE, ITU, and Microsoft* ............................................................18

    C.   Microsoft's Remaining Claims Should Not Be Dismissed......................19

MICROSOFT'S OPPOSITION TO
DEFENDANTS' *RENEWED* MOTION TO
DISMISS - i

CASE NO. 10-
1823

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1.   *Microsoft Is Entitled to Plead and Prove Promissory Estoppel*....19

2.   *Microsoft Has Validly Pleaded Waiver as a Basis for Injunctive Relief* ........................................................................19

3.   *Microsoft's Declaratory Judgment Claim May Not Be Dismissed* ...................................................................................20

III.   CONCLUSION....................................................................................23

MICROSOFT'S OPPOSITION TO
DEFENDANTS' *RENEWED* MOTION TO
DISMISS - ii

CASE NO. 10-
1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009)..................................................................8

*Badgett v. Sec. State Bank,*
116 Wn.2d 563, 807 P.2d 356 (1991) .................................................15

*Broadcom Corp. v. Qualcomm Inc.,*
501 F.3d 297 (3d. Cir. 2007).........................................................9, 14

*BrowserCam Inc. v. Gomez, Inc.,*
No. 08-02959 WHA, 2008 U.S. Dist. LEXIS 82159
(N.D. Cal., Sept. 26, 2008) .............................................................13

*Degenhart v. AIU Holdings, Inc.,*
No. C10-5172RBL, 2010 U.S. Dist. LEXIS 125524
(W.D. Wash., Nov. 26, 2010) ..........................................................22

*Dequilettes v. Moffat,*
2004 Wash. App. LEXIS 283 (Mar. 1, 2004)........................................18

*Ericsson Inc. v. Samsung Electronics Co., Ltd.,*
No. 2:06-CV-63, 2007 U.S. Dist. LEXIS 29257
(E.D. Tex., April 20, 2007).........................................................14, 17

*ESS Tech., Inc., v. PC-Tel. Inc.,*
No. C-99-20292 RMW, 2001 U.S. Dist. LEXIS 26348
(N.D. Cal., Nov. 28, 2001)...............................................................14

*Farm Crop Energy, Inc. v. Old National Bank of Wash.,*
109 Wn.2d 923, 750 P.2d 231 (1988) .................................................19

*Flower v. T.R.A. Industries, Inc.,*
127 Wn. App. 13, 111 P.3d 1992 (2005) .............................................19

*W.L. Gore & Assoc., Inc. v. Carlisle Corp.,*
529 F.2d 614 (3d Cir. 1976)........................................................11, 16

*Greater Los Angeles Council on Deafness, Inc. v. Zolin,*
812 F.2d 1103 (9th Cir. 1987) ..........................................................21

MICROSOFT'S OPPOSITION TO
DEFENDANTS' *RENEWED* MOTION TO
DISMISS - iii

CASE NO. 10-
1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL., (206) 623-1700   FAX, (206) 623-8717

*Mike M. Johnson, Inc. v. County of Spokane,*
   150 Wn.2d 375, 78 P.3d 161 (2003) ........................................................12

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,*
   416 F.3d 940 (9th Cir. 2005) ...........................................................8, 20

*Lopez v. Smith,*
   203 F.3d 1122 (9th Cir. 2000) ................................................................8

*Moore v. Blue Frog Mobile, Inc.,*
   153 Wn. App. 1, 221 P.3d 913 (2009) ..................................................13

*NL Industries v. Kaplan,*
   792 F.2d 896 (9th Cir. 1986) ..................................................................3

*Nokia Corp. v. Qualcomm, Inc.,*
   No. 06-509-JJF, 2006 U.S. Dist. LEXIS 61383 (D. Del., Aug. 29, 2006) ...........17

*N.W. Indep. Forest Mfrs. v. Dep't of Labor & Indust.,*
   78 Wn. App. 707, 899 P.2d 6 (1995) .......................................................9

*Parks School of Business, Inc. v. Symington,*
   51 F.3d 1480 (9th Cir. 1995) ..................................................................8

*Permpoon v. Wells Fargo Bank Nat'l Ass'n,*
   No. 09-CV-01140-H (BLM), 2009 U.S. Dist. LEXIS 89723
   (S.D. Cal., Sept. 29, 2009) ...................................................................23

*Powell v. McCormack,*
   395 U.S. 486, 89 S. Ct. 1944 (1969) ......................................................21

*Principal Life Insurance Co. v. Robinson,*
   394 F.3d 665 (9th Cir. 2005) .............................................................9, 13

*Research in Motion Limited v. Motorola, Inc.,*
   644 F. Supp. 2d 788 (N.D. Tex. 2008) ...................................................10

*Scott v. Pasadena Unified Sch. Dist.,*
   306 F.3d 646 (9th Cir. 2002) .............................................................9, 13

MICROSOFT'S OPPOSITION TO          CASE NO. 10-
DEFENDANTS' *RENEWED* MOTION TO    1823
DISMISS - iv

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ...............................................................22

*VersusLaw, Inc. v. Stoel Rives, L.L.P.*,
    127 Wn. App. 309, 111 P.3d 866 (2005) ............................................18

*Wapato Heritage, LLC v. U.S. Dep't of Interior*,
    No. cv-08-177-RHW, 2008 WL 5046447 (E.D. Wash., Nov. 21, 2008) ..............12

*Wi-Lan v. Research in Motion, et al.*,
    Case No. 2:08-CV-247-TJW (E.D. Tex. 2008) ....................................12

*Wi-Lan v. Research in Motion, et al.*,
    Case No. 10-CV-859-W (CAB), 201 U.S. Dist. Lexis 77776
    (S.D. Cal. 2010) ...............................................................................12

**Other Authorities**

Federal Rules of Civil Procedure 12(b) ...............................................................7

RCW 2.06.040 ................................................................................16

RCW 7.24.010 ................................................................................19

28 U.S.C.A. § 2201(1) ...................................................................19

MICROSOFT'S OPPOSITION TO
DEFENDANTS' *RENEWED* MOTION TO
DISMISS - v

CASE NO. 10-
1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

# I.  INTRODUCTION

1

2          This action arises out of Defendants Motorola, Inc., Motorola Mobility, Inc., and

3   General Instrument Corp.'s (collectively "Motorola's") breach of their obligations to

4   provide licenses to their purportedly "essential" patents on reasonable and non-

5   discriminatory ("RAND") terms and conditions.  When Motorola chose to (1) take part in

6   the standard setting process for the 802.11 wireless internet and H.264 video compression

7   standards, and (2) declare that it owned patents that were essential or necessary to

8   implement those standards, it became bound to contractual commitments imposed by the

9   Standards Determining Organizations ("SDOs").  Those contractual commitments

10  obligated Motorola to offer licenses to these patents on RAND terms to Microsoft and all

11  other potential licensees.  Motorola breached – and continues to breach – its

12  commitments by failing to offer RAND licenses.

13         Motorola has flagrantly violated its obligation to offer Microsoft a license to these

14  technologies on RAND terms.  Instead, Motorola conditioned any such license on a

15  discriminatory and unreasonable royalty.  When Microsoft refused Motorola's exorbitant

16  demands, Motorola sued to enjoin Microsoft's alleged use of the patents.  Motorola's

17  actions are a clear breach of the obligations it undertook in the standard setting process.

18         Motorola demanded that Microsoft pay a royalty of 2.25 percent per unit, *based

19  on the price of the end-product* (an Xbox 360, computer, phone, etc.).  The royalty rate is

20  high, but, more important, it is based on a value that far exceeds that of the components

21  to which Motorola's patents might apply, much less the value of the allegedly patented

22  features, violating Motorola's commitment to the IEEE, ITU, and their members.  For

23  purposes of this motion to dismiss, Microsoft's allegation that the royalty is not

24  reasonable and non-discriminatory must be accepted as true, with all reasonable

25

CASE NO. 10-
1823

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1  inferences drawn in Microsoft's favor.

2      Motorola's principal argument seems to be that it is free to make arbitrary,

3  unreasonable and discriminatory license royalty demands, to try to coerce prospective

4  licensees into paying all that traffic will bear, and to sue those companies for patent

5  infringement that resist. All of this, Motorola says, complies with its commitments to the

6  SDOs and the public because Motorola's unreasonable demands so far have been

7  unsuccessful. In Motorola's view, it can pursue prospective licensees with demands that

8  violate its RAND obligations – even to the point of suing them – without giving rise to a

9  claim for judicial relief.

10     Motorola stands its RAND obligations on their head. It repeatedly argues that it

11 was somehow incumbent on Microsoft to come forward with a counteroffer that is

12 consistent with Motorola's RAND obligations. But it is Motorola that is obligated

13 contractually and otherwise to offer reasonable and non-discriminatory terms.

14 Microsoft, on the other hand, never entered into a contract to negotiate with Motorola and

15 so itself had no such contractual obligation susceptible to breach.

16 Motorola's demand for terms far beyond RAND strikes at the heart of the RAND

17 protocol. Motorola may not secure a negotiating advantage by demanding an outrageous

18 rate, thereby misusing the power inherent in control over a patent that has been adopted –

19 following Motorola's active participation – as part of a uniform standard established by

20 either the ITU or IEEE. The proper response to this kind of abusive practice is not to

21 succumb to it. It is to stop it.

22     Motorola argues that the Court would be unduly burdened if it were required to

23 make the ultimate determination of compliance with RAND. But the Court must assume

24 on this motion that Motorola's demand is far outside the range of RAND rates.

25

MICROSOFT'S OPPOSITION TO
DEFENDANTS' RENEWED MOTION TO
DISMISS - 2

CASE NO. 10-
1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1   Moreover, the Court is well-equipped to make this determination on summary judgment

2   or at trial, if necessary, using methods of analysis with which the courts are already

3   familiar.[1]

4          Motorola chose to accept the benefits of molding the standard setting process, and

5   committed to abiding by the standard SDOs' rules.  Motorola essentially seeks summary

6   judgment that it has complied with its obligations, somehow creating a duty on

7   Microsoft's part to pare down Motorola's exorbitant demands through negotiations rather

8   than to sue for breach.  On this motion, however, Microsoft's allegation that Motorola's

9   demands were exorbitant is deemed to be true – which, indeed, Motorola's negotiation

10  argument effectively concedes.  The consequence is that Microsoft's Amended

11  Complaint easily meets the low threshold for defeating this motion, which Microsoft

12  respectfully requests be denied.

13  ## II.  STATEMENT OF RELEVANT FACTS

14         The following facts must be accepted as true with all reasonable inferences drawn

15  in Microsoft's favor.  *See NL Industries v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

16

17

18

19

---

20  [1] For example, determining whether Motorola's royalty demands to Microsoft were reasonable and non-
discriminatory under applicable precedent may entail, *inter alia*, evaluation of competing technologies
21  under consideration by the relevant standards setting organization, other standards-related licenses
proposed/entered into by Motorola and other parties participating in the relevant standard setting
22  organization, and an evaluation of the relative role of the accused technology in the accused products.  *See
e.g.*, Francois Leveque and Yann Ménière, *Vagueness in RAND Licensing Obligations is Unreasonable for
23  Patent Owners*, CERNA Working paper.  Available at: http://ssrn.com/abstract=1030520; Daniel Swanson
and William Baumol, *Reasonable and Nondiscriminatory (RAND) Royalties, Standards Selection, And
24  Control of Market Power*, 73 Antitrust L.J. 1, 21 (2005).  Declaration of Shane P. Cramer in Support of
Microsoft's Opposition to Defendants' Renewed Motorola and Motorola Mobility's Motion to Dismiss
25  ("Cramer Dec."), Ex. 1-2.

MICROSOFT'S OPPOSITION TO
DEFENDANTS' RENEWED MOTION TO
DISMISS - 3

CASE NO. 10-
1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

A.     **The Standards Setting Process.**

Standards play a critical role in fostering development of wireless and video coding technologies. Microsoft's Amended and Supplemental Complaint (Dkt. No. 53) ("Complaint"). ¶ 23.  Standards facilitate the adoption and advancement of technology and development of products that can interoperate with one another. *Id.* Companies that produce products compatible with a standard can design them by referencing only the standard documentation. They do not have to communicate separately with other companies with which their products may need to interoperate. *Id.* Instead, they can be confident that their products will operate with other companies' products manufactured to the same standard. Consumers can be confident that products from multiple vendors implementing the standard will work together as intended. *Id.*

The standards also confer on patent holders the power of owning a widespread, essential technology. In order to protect implementers (and consumers) from abuse of this power by such patent holders   even those whose claims have no more than suspect legitimacy   SDOs have adopted stringent rules. The rules, the "IPR policies" of the SDOs, govern the licensing practices of participants. *Id.*, ¶ 26.   They obligate participants claiming to own relevant patents to offer licenses for those patents to any implementer of the standard, and to do so on RAND terms. *Id.*, ¶ 27.

Such commitments are crucial to developing and benefiting from the standards. *Id.*, ¶ 26, 28. More fundamentally, these commitments prevent the abuse of the process by participants who are in a position to not only shape the standard, but also to claim ownership of that standard. The SDO's rules prohibit a participant that also owns patented technology from abusing its inordinate power by demanding unreasonable or discriminatory licensing terms. *Id.*

MICROSOFT'S OPPOSITION TO
DEFENDANTS' RENEWED MOTION TO
DISMISS - 4

CASE NO. 10-
1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

**B.      Technologies at Issue in this Action.**

1.      *The WLAN/802.11 Wireless Internet Connectivity Standard.*

Motorola's unlawful licensing demands pertain to patents that it claims are "essential" to a widely practiced standard for wireless Internet connectivity known as "WLAN," "Wi-Fi," and/or "802.11." *Id.*, ¶ 29. WLAN/802.11 enables an electronic device to access the Internet wirelessly at high speeds over short distances. *Id.*, ¶ 30. WLAN is based on a standard developed by the Institute of Electrical and Electronics Engineers ("IEEE"). *Id.*, ¶ 32. As a condition of participating in the standard setting process, Motorola agreed that a

> license for a compliant implementation of the standard will be made available to an unrestricted number of applicants on a worldwide basis without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination.

*Id.*, ¶ 2.

2.      *H.264 Video Compression Standard.*

H.264 technologies provide video decoding in such applications as DVD players, videos available for downloading or replay on the Internet, web software, broadcast services, direct-broadcast satellite television services, cable television services, and real-time videoconferencing. *Id.*, ¶ 34. In part under the auspices of the International Telecommunications Union ("ITU"), participants developed H.264 as a standard set of technologies. *Id.*, ¶ 36. As a participant, Motorola declared to the ITU that it was prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions.[2]

---

[2] Third Declaration of Norman H. Beamer in Support of Motorola, Inc. and Motorola Mobility, Inc.'s Motion to Dismiss ("Beamer Dec."), Ex. 6, p. 11.

MICROSOFT'S OPPOSITION TO
DEFENDANTS' RENEWED MOTION TO
DISMISS - 5

CASE NO. 10-
1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

C.   **Motorola Voluntarily Participated in Setting the Relevant Standards.**

Motorola actively participated in the standard setting process for both the WLAN and H.264 standards, and induced the relevant SDO to include in each standard technology that is unique to Motorola. *Id.*, ¶¶ 37-54. Microsoft, IEEE, and ITU relied on Motorola's commitment that it would make licenses available to applicants on RAND terms for this Motorola-unique technology. *Id.*, ¶¶ 56, 60. IEEE's and ITU's decision to issue the standards rested upon Motorola's commitment to offer its self-proclaimed essential technology on RAND terms. *Id.*, ¶¶ 44, 50.

D.   **Motorola Has Breached Its Contract with the SDOs and Microsoft by Refusing to Offer Licenses to Microsoft on RAND Terms.**

In reliance on Motorola's commitments to offer licenses for any patents it claimed were essential or necessary to implementation of the standards available on RAND terms, Microsoft began providing WLAN and H.264 capability in its Xbox 360 video game consoles, Windows 7 operating system, Windows Phone 7, and other fields. *Id.*, ¶ 57.

Motorola breached its contracts with these SDO's and Microsoft by demanding unfair and discriminatory terms for licenses of its identified patents. *Id.*, ¶ 84.

By letter dated October 21, 2010, Motorola "offer[ed] to grant Microsoft a worldwide non-exclusive license under Motorola's portfolio of patents and pending applications having claims that may be or become Essential Patent Claims (as defined in section 6.1 of the IEEE bylaws) for compliant implementation of the IEEE 802.11 Standards." Beamer Dec., Ex. 1. Motorola said it would license the patents at a royalty rate of 2.25 percent per unit, calculated using the price of the end-product (Xbox, PC, smartphone, etc.), as opposed to the component including the allegedly patented features, let alone the supposedly patented features, themselves. *Id.*, Ex. 1, 2. These royalty rates

MICROSOFT'S OPPOSITION TO
DEFENDANTS' RENEWED MOTION TO
DISMISS - 6

CASE NO. 10-
1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

1   are excessive, discriminatory, and "wholly disproportionate to the royalty rate that its

2   patents should command under any reasonable calculus." Complaint, ¶¶ 6, 65.

3         Motorola left the offer open for 20 days, and asked Microsoft to "confirm whether

4   Microsoft accepts this offer." Beamer Dec., Ex. 1. Motorola did not indicate in the letter

5   that it would consider or negotiate other terms for licensing its portfolio. *Id.*

6         On October 29, 2010, Motorola sent another letter. On substantially the same

7   terms, it offered to grant Microsoft "a worldwide nonexclusive license under Motorola's

8   portfolio of patents and pending applications covering the subject matter of ITU-T

9   Recommendation H.264." Beamer Dec., Ex. 2. Motorola stated that this offer would

10  also be left open for 20 days, and asked Microsoft to "confirm whether Microsoft accepts

11  this offer." *Id.* Again, Motorola did not state that it would consider other terms. *Id.*

12        In these letters, Motorola sought to extract unreasonable royalties from Microsoft,

13  discriminatorily choosing as targets Microsoft's Xbox product line and other multi-

14  function, many-featured products and software, such as Windows 7, Windows Phone 7,

15  and products incorporating Microsoft software. Complaint, ¶ 65.

16  **E.    Motorola Has Breached Is Contracts by Bringing Patent Infringement Suits**
        **Seeking Injunctive Relief against Microsoft.**
17

18        The day after Microsoft filed its complaint, defendants Motorola Mobility and its

19  wholly-owned subsidiary, General Instrument, filed two patent infringement actions

20  against Microsoft in the Western District of Wisconsin, and later filed a patent

21  infringement action before the ITC.[3] All of the patents at issue in these actions are

22  among those that Motorola claims are necessary or essential to implement the H.264

---

23  [3] Motorola also sued Microsoft for patent infringement in the Southern District of Florida and later filed yet
24  another patent infringement action in the Western District of Wisconsin. These cases do not appear to
    implicate Motorola's RAND obligations related to the standards in dispute here.

25  MICROSOFT'S OPPOSITION TO          CASE NO. 10-        LAW OFFICES
    DEFENDANTS' RENEWED MOTION TO      1823               DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
    DISMISS - 7                                           999 THIRD AVENUE, SUITE 4400
                                                          SEATTLE, WASHINGTON 98104
                                                          TEL, (206) 623-1700   FAX, (206) 623-8717

1    and/or 802.11 standards.[4]  *Id.*, ¶¶ 73-78.  The filing of these actions in lieu of making

2    RAND offers to Microsoft constitute additional breaches by Motorola.  *Id.*, ¶ 85.

3          As a result of Motorola's various breaches, Microsoft suffered (and will continue

4    to suffer) significant injuries to its business and property, including lost profits, lost

5    customers and potential customers, loss of goodwill, and lost product image.  *Id.*, ¶ 86.

6                              **III.  LEGAL ARGUMENT**

7    **A.     Relevant Legal Standards.**

8          1.     *Fed. R. Civ. P. 12(b)(6).*

9          In considering a motion to dismiss under Rule 12(b)(6), the court must construe

10   the complaint in the light most favorable to the non-moving party.  *Livid Holdings Ltd. v.*

11   *Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must accept all

12   well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff.

13   *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

14         "To survive a motion to dismiss, a complaint must contain sufficient factual

15   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

16   *v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

17   570, 127 S. Ct. 1955 (2007).  "A claim has facial plausibility when the plaintiff pleads

18   factual content that allows the court to draw the reasonable inference that the defendant is

19   liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a

20   'probability requirement,' but it asks for more than a sheer possibility that a defendant

21   has acted unlawfully." *Id.*[5]

22   _____

23   [4] In its ITC action, (Case No. 337-TA-752), Motorola expressly bases its infringement allegations on
     Microsoft's compliance with either the H.264 or 802.11 standards for four of the five patents asserted.  The
     fifth is asserted against a non-standard implementation used in Microsoft's Xbox controllers.

24   [5] In the event the court finds that dismissal is warranted, the court should grant the plaintiff leave to amend
     unless amendment would be futile. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

25   MICROSOFT'S OPPOSITION TO            CASE NO. 10-            LAW OFFICES
     DEFENDANTS' RENEWED MOTION TO       1823          DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
     DISMISS - 8                                              999 THIRD AVENUE, SUITE 4400
                                                               SEATTLE, WASHINGTON 98104
                                                        TEL. (206) 623-1700   FAX, (206) 623-8717

2. _Fed. R. Civ. P. 12(b)(1)._

Motorola has also moved to dismiss Microsoft's breach of contract claim as not yet ripe. "The basic rationale of the ripeness doctrine is to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." _Scott v. Pasadena Unified Sch. Dist._, 306 F.3d 646, 662 (9th Cir. 2002) (internal quotation marks omitted).  A claim is ripe for adjudication where "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." _Principal Life Insurance Co. v. Robinson_, 394 F.3d 665, 669 (9th Cir. 2005).  This dispute is neither premature nor abstract.  Microsoft's claims ripened when Motorola demanded excessive and discriminatory royalties for its allegedly necessary patent claims.

**B.   Microsoft's Breach of Contract Claim Should Not Be Dismissed.**

1. _Microsoft has Stated a Claim for Breach of Contract._

To state a claim for breach of contract under Washington law, a plaintiff need allege only (1) a valid contract, (2) a breach of a duty arising under that contract, and (3) resulting damage. _N.W. Indep. Forest Mfrs. v. Dep't of Labor & Indust._, 78 Wn. App. 707, 712, 899 P.2d 6 (1995).  Microsoft's complaint does so.  Motorola must admit, and has admitted, that it has a valid contract with Microsoft. Motion at 3, n.3; Complaint, ¶¶ 81-82.  Microsoft has alleged how Motorola has breached those contracts and has alleged that Microsoft suffered resulting damage. _Id._, at ¶84; _see also_ ¶¶ 64-72.  These allegations state a claim for breach of the RAND requirements.

In _Broadcom Corp. v. Qualcomm Inc._, the Third Circuit analyzed the rationale for requiring that patentees who take part in standard setting offer licenses on RAND terms:

MICROSOFT'S OPPOSITION TO
DEFENDANTS' RENEWED MOTION TO
DISMISS - 9

CASE NO. 10-
1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

> Firms may become locked into a standard requiring the use of a
> competitor's patented technology. The patent holder's IPRs, if
> unconstrained, may permit it to demand supracompetitive royalties. It is
> in such circumstances that measures such as FRAND commitments
> become important safeguards against monopoly power.

501 F.3d 297, 314 (3d. Cir. 2007). The ABA's Standards Development Patent Policy

Manual (on which Motorola relies), states:

> In some cases, a dispute may arise when Implementers attempt to obtain a
> license under a RAND Licensing Commitment and believe that the terms
> (e.g., the royalty rate) offered by the Patent Holder are not reasonable.
> Ultimately, a trier of fact may need to resolve the question as to whether
> or not a license has been offered on RAND terms.

American Bar Association, Section on Science & Tech. Law, Committee on Technical

Standardization, *Standards Development Patent Policy Manual* (2007), p. 58. This is

precisely the issue presented in this case – "whether or not a license has been offered on

RAND terms." As the ABA Manual contemplates, this presents a dispute for resolution

by a trier of fact.

Motorola argues that its actions should be excused because continued negotiation

might produce a RAND result. In effect, Motorola is arguing that its license demand

should be ignored or that it was not serious about the demand. But that is not the way

that Motorola's obligations work under RAND. It cannot haggle, as in a rug bazaar,

securing whatever it can from each corner. Motorola gave up that right when it

committed to licensing its patents on RAND terms.

Not surprisingly, the courts have recognized these principles – indeed, in one case

involving Motorola itself. In *Research in Motion Limited v. Motorola, Inc.*, Research in

Motion ("RIM") sued Motorola alleging, among other things, that Motorola had breached

"the commitments Motorola made to IEEE and [another SDO] to license its essential

patents on FRAND terms." 644 F. Supp. 2d 788, 791 (N.D. Tex. 2008). Motorola

MICROSOFT'S OPPOSITION TO
DEFENDANTS' RENEWED MOTION TO
DISMISS - 10

CASE NO. 10-
1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1    moved to dismiss RIM's complaint, arguing that all RIM had alleged was "that the two

2    parties have not yet agreed to FRAND terms," and that "just because the parties have not

3    yet settled on FRAND terms does not mean Motorola is unwilling to license the patent on

4    FRAND terms." *Id.*, 644 F. Supp. 2d at 797.  The court rejected this argument:

5
        RIM's complaint alleges that Motorola 'has refused to extend FRAND
6       …licensing terms to RIM for any of Motorola's purported essential
        patents…and has instead demanded of RIM terms that are unfair,
7       unreasonable, and on information and belief, discriminatory.'  Motorola's
        argument merely contradicts the factual accuracy of this statement.  At this
8       stage of the case, the court takes RIM's pleadings as true.  RIM has
        adequately pled that Motorola did not honor its promise to license on
9       FRAND terms.  Motorola's contention otherwise is entitled to no weight
        on a Rule 12(b)(6) motion.
10
     *Id.* (internal citations omitted).  The court's analysis is correct, and applies with equal
11
     force here.
12
          Motorola's conduct – and, indeed, its argument advanced in defense of that
13
     conduct – is contrary to the fundamental purpose of the royalty requirements of the IEEE.
14
     Motorola argues that it can make an exorbitant, bad faith demand as the first step in a
15
     negotiating process—i.e., that it can breach its duty to offer reasonable terms in order to
16
     gain an edge in any negotiation.  This conduct itself abuses the power that Motorola
17
     obtained by shaping the standards.  Demanding an exorbitant royalty from a position of
18
     enhanced leverage is precisely the behavior that the IEEE rules prohibit.  *See W.L. Gore*
19
     *& Assoc., Inc. v. Carlisle Corp.*, 529 F.2d 614, 623 (3d Cir. 1976) (noting that "[a]
20
     royalty demand which is so high as to preclude acceptance of a license offer is, after all,
21
     not appreciably different from a refusal to license upon any terms").
22
          Microsoft responded reasonably and correctly to Motorola's improper tactics.
23
     This action is intended to make bad faith demands futile, to secure a declaration that
24

25   MICROSOFT'S OPPOSITION TO                    CASE NO. 10-          LAW OFFICES
     DEFENDANTS' RENEWED MOTION TO               1823          DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
     DISMISS - 11                                                    999 THIRD AVENUE, SUITE 4400
                                                                     SEATTLE, WASHINGTON 98104
                                                               TEL. (206) 623-1700   FAX. (206) 623-8717

1  Motorola's conduct is in breach of its obligations, to enjoin such conduct and to recover

2  for any resulting damage.  Responding to a bad faith demand with a good faith offer

3  would encourage further breaches by Motorola through implementing the same strategy it

4  is using here and apparently used in *Research in Motion,* 644 F. Supp. 2d at 797.

5       Motorola itself has responded to what it claimed were non-RAND rate demands

6  exactly as Microsoft is doing here. *See Wi-Lan v. Research in Motion Corp., et al.,* Case

7  No. 2:08-CV-247-TJW (E.D. Tex. 2008).  Wi-Lan brought patent infringement claims

8  against Motorola (among others).  Motorola counterclaimed, alleging that Wi-Lan

9  "breached its contractual obligations, including by failing to offer licenses for the

10  [802.11-related] patents on [RAND] terms, by seeking to enjoin Motorola from making

11  or selling 802.11 compliant products, and through misrepresentation and/or omissions

12  regarding its patents and/or patent applications." Cramer Dec., Ex. 3, ¶ 77; *see also Wi-*

13  *Lan Inc. v. Research in Motion Corp.,* Case No. 10-cv-859-W (CAB), 2010 U.S. Dist.

14  LEXIS 77776, *3-4 (S.D. Cal. 2010) (describing Motorola's RAND-based counterclaim).

15       In the face of a complaint clearly stating a claim for relief, Motorola raises several

16  other fact-based defenses that should be summarily rejected.  Motorola asserts that

17  Microsoft's complaint should be dismissed because Motorola substantially complied with

18  its RAND obligations.  On this Motion, the opposite, of course, is assumed to be true

19  based on the pleadings. *Mike M. Johnson, Inc. v. County of Spokane,* 150 Wn.2d 375,

20  398, 78 P.3d 161 (2003) (recognizing that whether a party has substantially complied

21  with contractual requirements is a question of fact). *Wapato Heritage, LLC v. U.S. Dep't*

22  *of Interior,* No. cv-08-177-RHW, 2008 WL 5046447 (E.D. Wash., Nov. 21, 2008), cited

23  by Motorola, holds likewise.  In *Wapato Heritage,* the court granted a defendant's motion

24  for summary judgment after weighing the evidence and finding that the plaintiff had not

25
MICROSOFT'S OPPOSITION TO
DEFENDANTS' RENEWED MOTION TO
DISMISS - 12

CASE NO. 10-
1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

1   substantially complied with contract requirements for exercising an option to extend a

2   tribal lease – i.e., the Court found as fact what Microsoft alleges here.  On this Motion

3   that allegation is deemed to be true despite Motorola's conclusory claims that it has

4   substantially complied "with any RAND obligations."  *RIM*, 644 F. Supp. 2d at 797.

5        Motorola's remaining argument is that Microsoft breached an obligation to

6   negotiate in good faith with Motorola before filing suit fails for essentially the same

7   reason.  But in this case, Motorola's alleged failure to comply with its RAND obligations

8   is deemed to be true, so it must likewise be deemed true that no duty on Microsoft to

9   negotiate (if there ever was one) could possibly have been triggered.  *See, e.g., Moore v.*

10  *Blue Frog Mobile, Inc.*, 153 Wn. App. 1, 9-10, 221 P.3d 913 (2009) (a party's material

11  breach of its contract excuses the other party of any obligation to perform).  If the facts as

12  pled are accepted as true, there was no conceivable obligation on Microsoft to negotiate

13  or take other action instead of asserting its legal rights.

14        2.    *Microsoft's Breach of Contract Claim is Ripe for Adjudication.*

15        The ripeness doctrine requires only that there be a substantial controversy

16  between the parties that is immediate and real, as opposed to abstract or hypothetical.

17  *Scott*, 306 F.3d 662; *Principal Life*, 394 F.3d at 669.  There is nothing abstract or

18  hypothetical about Microsoft's contract claim.  A breach with resulting damage satisfies

19  any ripeness requirement.  *Id.*, 394 F.3d at 671 (finding that dispute was ripe because

20  "contract dispute between [the parties] over the critical rent recalculation provision is not

21  an abstract or hypothetical disagreement.  This is a typical contract dispute under which

22  the parties' interests are clearly adverse, and a decision will affect the value of the

23  lease."); *see BrowserCam Inc. v. Gomez, Inc.*, No. 08-02959, 2008 U.S. Dist. LEXIS

24  82159, **18-19 (N.D. Cal., Sept. 26, 2008) (claim for breach of contract was ripe where

25

MICROSOFT'S OPPOSITION TO
DEFENDANTS' RENEWED MOTION TO
DISMISS - 13

CASE NO. 10-
1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

1   plaintiff alleged that defendant breached contract and plaintiff was damaged as a result).

2   Microsoft has alleged a breach with resulting damage.

3        The need to determine at trial or on motion whether Motorola's offer complied

4   with its RAND obligations does not alter the ripeness analysis.  Several courts have

5   recognized their role in determining whether a party's offer satisfies its RAND

6   obligation.  *See, e.g., Broadcom Corp.*, 501 F.3d at 314 n.8; *Ericsson Inc. v. Samsung*

7   *Electronics Co., Ltd.*, No. 2:06-CV-63, 2007 U.S. Dist. LEXIS 29257 (E.D. Tex. Apr. 20,

8   2007); *ESS Tech., Inc., v. PC-Tel, Inc.*, No. C-99-20292, 2001 U.S. Dist. LEXIS 26348

9   (N.D. Cal. Nov. 28, 2001).  Nor does the Court need a history of negotiations between the

10  parties to make this determination.  The Court may do so by considering such factors as

11  competing technologies at the time the standard was adopted, comparable licenses, and

12  the relative importance of the accused features in the accused products in the context of

13  alleged innovation and other licensed products.  *See* Cramer Dec., Ex. 1; 2, p. 21.

14       In *In the Matter of Rambus, Inc.*, the FTC found that Rambus violated federal

15  antitrust laws by failing to disclose its patent interests to an SDO.  It entered a remedy

16  order requiring that Rambus license its patents on RAND terms.[6]  The FTC calculated the

17  reasonable royalty, finding that, in the standards context, a reasonable royalty is the *ex*

18  *ante* value of the technology – "the amount that the industry participants would have been

19  willing to pay to use a technology over its next best alternative prior to the incorporation

20  of the technology into a standard." *Id.*, at 17 (internal citations omitted).  The FTC

21  "examin[ed] rates for other comparable licenses in the industry." *Id.*, at 18.  On appeal,

22  the Court of Appeals for the District of Columbia overruled the FTC's ruling that

23

24  [6] Opinion of the Commission on Remedy, *In re Rambus, Inc.*, FTC Docket No. 9302, (Feb. 2, 2007), *available at* http://www.ftc.gov/os/adjpro/d9302/070205, *overruled on other grounds by Rambus Inc. v. FTC*, 522 F.3d 456 (D.C. Cir. 2008).

25  MICROSOFT'S OPPOSITION TO
    DEFENDANTS' RENEWED MOTION TO
    DISMISS - 14

                              CASE NO. 10-
                              1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1   Rambus had violated antitrust laws. *Rambus Inc.*, 522 F.3d at 459.  However, the FTC's

2   analysis of how reasonable royalties in the RAND context could be determined shows

3   that the remedy Microsoft is seeking is far from abstract or novel.

4          Motorola committed to the IEEE that its licenses would "be made available to an

5   unrestricted number of applicants on a worldwide basis without compensation or under

6   reasonable rates, with reasonable terms and conditions that are demonstrably free of any

7   unfair discrimination."  Complaint, ¶¶ 2-3.  Likewise, Motorola declared to the ITU that

8   it was "prepared to grant a license to an unrestricted number of applicants on a

9   worldwide, non-discriminatory basis and on reasonable terms and conditions."  Beamer

10  Dec., Ex. 6, p. 11.  Implicit in each of these agreements was Motorola's obligation to act

11  in good faith. *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991)

12  ("There is in every contract an implied duty of good faith and fair dealing.").  Yet now

13  Motorola appears to argue that its only obligation is to make an offer, no matter how

14  unreasonable, regardless of bad faith, and that such a bad faith offer triggers a duty on the

15  part of Microsoft either to accede or to start negotiations in an arena defined by the bad

16  faith offer.  Motion at 10 (arguing that "Motorola's opening offer–no matter how

17  unacceptable" cannot create a justifiable controversy ripe for resolution by this Court).

18         Motorola's offer letters are nothing but demands setting forth the conditions on

19  which Motorola is willing to "grant Microsoft a worldwide nonexclusive license under

20  Motorola's portfolio of patents and pending applications" to certain technologies.

21  Beamer Dec., Ex. 1, 2.  Both letters specifically state that Motorola would "leave this

22  offer open for 20 days," and asked Microsoft to "confirm whether Microsoft accepts the

23  offer." *Id.*  Nothing in either letter suggested that Motorola was willing to offer licenses

24  on RAND terms and conditions.  Their import was the opposite.  Lest there was any

25

MICROSOFT'S OPPOSITION TO
DEFENDANTS' RENEWED MOTION TO
DISMISS - 15

CASE NO. 10-
1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

1    doubt, Motorola sued Microsoft when it failed to accept the exorbitant demands.

2              Motorola has not cited any case law holding a) that Microsoft had a duty to

3    negotiate in the face of an exorbitant royalty demand such as the one made by Motorola

4    here or b) that the failure to respond to a bad faith offer defeats ripeness. The IEEE and

5    ITU policies are to the opposite effect. They require a RAND offer. A breach by

6    Motorola does not trigger a duty on Microsoft's part; rather, if a duty ever existed, it

7    excuses any such duty. An exorbitant, discriminatory offer without more is a clear

8    breach of Motorola's duties and epitomizes the abuse the standards are designed to

9    prevent. It changes the negotiating playing field—and is obviously designed to do so. In

10   fact, Motorola admits that such egregious royalty demands are its "standard" approach.

11             This dispute is ripe. This lawsuit is the appropriate response to Motorola's

12   apparently standard tactic of seeking to use the power conferred by its role in the

13   standards setting to demand excessive royalties and then negotiate from that improper

14   position. Microsoft is entitled to start the negotiations from an offer that meets the

15   RAND requirements.

16             Motorola's attempt to cast the *Research in Motion* and *W.L. Gore* opinions as

17   support for a bright-line rule requiring Microsoft to accede to Motorola's unreasonable

18   negotiation tactics before filing suit misconstrues their holdings. The *Research in Motion*

19   court was not concerned with the extent of the parties' past negotiations. The court,

20   focusing on RIM's allegation that Motorola's proposed licensing terms were

21   unreasonable, held that RIM had stated a claim for relief. 644 F. Supp. 2d at 797. In

22   *W.L. Gore*, the court recognized that making an excessively high royalty demand is

23   equivalent to a refusal to license. 529 F.2d at 623. A patent-holder with no RAND

24   obligations may be free to make such unreasonable demands, but, as Microsoft alleges,

25   MICROSOFT'S OPPOSITION TO          CASE NO. 10-       LAW OFFICES
     DEFENDANTS' RENEWED MOTION TO     1823        DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
     DISMISS - 16                                  999 THIRD AVENUE, SUITE 4400
                                                   SEATTLE, WASHINGTON 98104
                                                   TEL. (206) 623-1700   FAX, (206) 623-8717

1    the same conduct by a participant in standards-based technology is a breach of contract.

2        Motorola had an obligation to offer licenses to its purportedly essential patent

3    portfolios to Microsoft on RAND terms. It did not do so. There are no future

4    contingencies upon which Microsoft's claims depend. They are ripe for adjudication.

5        3.     *Microsoft is not seeking an Advisory Opinion.*

6        Determining whether a party has violated its obligation to offer RAND royalty

7    rates does not require determining whether the patent-holder's claimed patents are

8    "essential." *Ericsson*, 2007 U.S. Dist. LEXIS 29257 at **4-6; *Nokia Corp. v. Qualcomm,*

9    *Inc.*, No. 06-509-JJF, 2006 U.S. Dist. LEXIS 61383 (D. Del., Aug. 29, 2006).

10        In *Nokia*, the court remanded to state court a plaintiff's complaint alleging that the

11    defendant violated its obligation to offer RAND royalty rates because it did not require

12    determining whether the patents were essential, and thus did not raise substantial federal

13    issues of patent law. The court found that "resolution of this claim depends on

14    interpretation of the terms of the licensing agreement, rather than interpretation of the

15    patents." 2006 U.S. Dist. LEXIS 61383 at *6. In *Ericsson*, the court granted a motion to

16    try the parties' dispute over "the appropriate terms of a FRAND license" before trying the

17    parties' patent disputes. The court, relying on *Nokia*, recognized that a RAND dispute

18    "standing alone, implicates no substantial question of federal patent law," and that trying

19    the RAND issues first might "alleviate many of the primary differences" between the

20    parties. 2007 U.S. Dist. LEXIS 29257 at **6-7.

21        This Court's determination of whether Motorola has violated its obligation to

22    offer RAND royalty rates is similarly not dependent on whether the underlying patents

23    are essential. The Court's order will be enforceable just as any other order entered by the

24

25

MICROSOFT'S OPPOSITION TO
DEFENDANTS' RENEWED MOTION TO
DISMISS - 17

CASE NO. 10-
1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1    Court would be.  Motorola's motion should be denied.[7]

2        4.    _Motorola's Subsequent Patent Infringement Actions Constitute Breaches_
             _of Its Contractual Commitments to the IEEE, ITU, and Microsoft._
3

4        Motorola argues that Microsoft has not stated a claim that Motorola's patent

5    infringement actions, which seek to enjoin Microsoft from implementing the H.264 and

6    802.11 standards, are in breach of Motorola's contract obligations to IEEE, ITU, and

7    Microsoft.  Motorola's sole supporting argument is that Microsoft's lawsuit is an

8    anticipatory breach of contract.  This argument suffers from the same fatal flaw as the

9    rest of Motorola's arguments:  it assumes that Motorola has not breached its contract

10   obligations where the opposite has been alleged.  The argument simply ignores the

11   standard on a motion to dismiss and at best raises the same fact questions as Microsoft's

12   claim of breach against Motorola.  _VersusLaw, Inc. v. Stoel Rives, L.L.P._, 127 Wn. App.

13   309, 321, 111 P.3d 866 (2005) ("The question of anticipatory repudiation is one of fact

14   and can be decided on summary judgment only 'if, taking all evidence in the light most

15   favorable to the non-moving party, reasonable minds can reach only one conclusion.')

16   (internal citations omitted).  Motorola's anticipatory breach argument is nothing more

17   than the mirror image of its argument that it can demand exorbitant, unreasonable terms

18   without excusing any duty of Microsoft to negotiate in response to such demands.[8]

19   If, as Microsoft has alleged, Motorola has failed to comply with its RAND obligations, its

20   filing of patent infringement actions seeking injunctive relief constitutes a further breach

---

21   [7] Further, Motorola filed a complaint for patent infringement against Microsoft in the Western District of
     Wisconsin, _Motorola Mobility, Inc., et anon. v. Microsoft Corporation_, No. 10-cv-699 (W.D. Wisc.), on
22   November 10, 2010 relating to the three of the patents at issue in this action. On February 18, 2011, the
     Wisconsin Court granted Microsoft's motion to transfer the case to this District.  It is currently pending
23   before this Court as Case No. 2:11-cv-00343.  Microsoft has filed a motion to dismiss the case with leave
     for Motorola to file its patent infringement claims as compulsory counterclaims in this action.
24   [8] The Court should disregard Motorola's reliance on _Dequilettes v. Moffat_, 2004 Wash. App. LEXIS 283
     (Mar. 1, 2004).  Unpublished Washington decisions have no precedential value.  RCW 2.06.040.

25   MICROSOFT'S OPPOSITION TO                    CASE NO. 10-            LAW OFFICES
     DEFENDANTS' RENEWED MOTION TO               1823          DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
     DISMISS - 18                                              999 THIRD AVENUE, SUITE 4400
                                                               SEATTLE, WASHINGTON 98104
                                                               TEL. (206) 623-1700   FAX, (206) 623-8717

of the same contractual commitments.  Complaint, ¶¶ 73-78.  These allegations suffice to state a claim for relief.

**C.      Microsoft's Remaining Claims Should Not Be Dismissed.**

      1.      *Microsoft Is Entitled to Plead and Prove Promissory Estoppel.*

At this stage of the pleadings, before the Court formally rules on the merits of any of Microsoft's claims, Microsoft's promissory estoppel claim is proper even though accompanied by a breach of contract claim (Complaint, ¶¶ 88-94).  The claim cannot at this point be dismissed on the ground that "promissory estoppel applies only when no valid contract exists."  Motion at 15 (citing Washington cases).

Microsoft is entitled to allege, in the alternative, all causes of actions that the factual proof may ultimately support.  Fed. R. Civ. P. 8(d)(2); 8(d)(3).  In *Flower v. T.R.A. Industries, Inc.*, the court reversed a summary judgment dismissing the plaintiff's breach of contract claim, and held the evidence presented issues of fact not only as to that claim *but also* his alternative claims of promissory estoppel and negligent misrepresentation.  127 Wn. App. 13, 111 P.3d 1192, 1201-1202 (2005).  The court held all three claims "may be presented at trial."  *Id.*  Similarly, in *Farm Crop Energy, Inc. v. Old National Bank of Wash.*, the Washington Supreme Court held the trial court should have fully instructed the jury on both alternative claims of breach of a loan agreement and promissory estoppel.  109 Wn.2d 923, 750 P.2d 231 (1988).  The court explained that, even if the jury concluded the defendant was not liable for revoking the loan agreement, "the jury could still find that [the plaintiff] changed position in reliance on [defendant's statements] and award damages pursuant to a promissory estoppel theory."  750 P.2d at 932.

      2.      *Microsoft Has Validly Pleaded Waiver as a Basis for Injunctive Relief.*

MICROSOFT'S OPPOSITION TO
DEFENDANTS' RENEWED MOTION TO
DISMISS - 19

CASE NO. 10-
1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX (206) 623-8717

1    Motorola misreads Microsoft's cause of action based on waiver (Complaint,

2  ¶¶ 95-98). arguing that waiver can be a defense only, not a cause of action (Motorola

3  Mot. at 16).  However, Microsoft's waiver allegation is a predicate for a claim; it is not

4  advanced as an independent claim.  Microsoft alleges waiver as the basis for a claim for

5  injunctive relief.  As alleged, Motorola waived any right it might otherwise have to make

6  an opening demand for exorbitant royalties in its declarations to IEEE and to the ITU.

7  Complaint, ¶¶ 96-97.  Microsoft alleges that it justifiably relied on this waiver and that,

8  unless the Court enjoins Motorola from demanding the prohibited compensation,

9  Microsoft will be irreparably harmed.  *Id.* ¶ 98.  Those allegations state a valid claim for

10  injunctive relief, and must be viewed in the light most favorable to Microsoft.  *See Livid*

11  *Holdings, supra*, 416 F.3d at 946.

12    3.    *Microsoft's Declaratory Judgment Claim May Not Be Dismissed.*

13    Motorola misconstrues Microsoft's claim for declaratory judgment (Complaint,

14  ¶¶ 99-102), and cites inapposite authorities, in arguing that that claim should be

15  dismissed because it merely seeks a declaration of liability for damages sought in other

16  claims.  Motion at 16.  First, the claim does not seek a declaration of liability for

17  damages.  It seeks a determination that Motorola is wrongfully seeking to withhold a

18  license to its patents except on terms that breach its commitment to the IEEE-SA

19  Standards Board and the ITU.  Complaint, ¶ 100.

20    Second, as explained above with respect to the promissory estoppel claim, at this

21  stage of the pleadings Microsoft may advance alternative theories of relief.

22    Third, that a claim for declaratory relief "is merely a counterpart of" a party's

23  other causes of action is not a valid objection.  Motion at 10.  The Declaratory Judgments

24  Act provides that, "[i]n a case of actual controversy . . . any court of the United States . . .

25

MICROSOFT'S OPPOSITION TO
DEFENDANTS' RENEWED MOTION TO
DISMISS - 20

CASE NO. 10-
1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1  may declare the rights and other legal relations of any interested party seeking such

2  declaration, *whether or not further relief is or could be sought.*"  28 U.S.C.A. § 2201(1)

3  (emphasis added).  Rule 57 of the Federal Rules of Civil Procedure similarly states, "[t]he

4  existence of another adequate remedy does not preclude a declaratory judgment that is

5  otherwise appropriate."[9]  Here there are good reasons for the Court to include in the relief

6  awarded a declaration that Motorola's conduct was in bad faith and a breach of its

7  obligations, and to order the conduct stopped, especially in light of the indications that

8  this abusive conduct is standard operating procedure for Motorola.

9        In *Powell v. McCormack*, 395 U.S. 486, 517-18, 89 S. Ct. 1944 (1969) (citations

10  omitted), the U.S. Supreme Court held that "[t]he availability of declaratory relief

11  depends on whether there is a live dispute between the parties, . . . and a request for

12  declaratory relief may be considered independently of whether other forms of relief are

13  appropriate."  The Court stated that a declaratory judgment can "be used as a predicate to

14  further relief, including an injunction."  *Id.* at 498-99.

15        Microsoft's claims for injunctive and declaratory relief are highly appropriate

16  under the circumstances.  In any case, Microsoft is entitled to plead claims for both

17  monetary and declaratory relief.  The Ninth Circuit has held that declaratory relief must

18  be considered even when monetary relief is sought, in part because "declarations can

19  serve an important educational function for the public at large as well as for the parties to

20  the lawsuit."  *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103,

21  1112 (9th Cir. 1987), *citing Bilbrey v. Brown*, 738 F.2d 1462, 1471 (9th Cir. 1984).  In

22

---

23  [9] *See also* RCW 7.24.010 ("Courts of record within their respective jurisdictions shall have power to
declare rights, status and other legal relations whether or not further relief is or could be claimed."); Wash.

24  Civ. R. 57 ("The existence of another adequate remedy does not preclude a judgment for declaratory relief
in cases where it is appropriate.").

25  MICROSOFT'S OPPOSITION TO
DEFENDANTS' RENEWED MOTION TO
DISMISS - 21

CASE NO. 10-
1823

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1    *Zolin*, deaf persons challenged a county court's refusal to provide interpreters that would

2    enable them to serve as jurors.  The Ninth Circuit explained in *Zolin* that where a plaintiff

3    is subjected to unlawful conduct, declaratory relief may be considered even if monetary

4    relief is ultimately determined to be unavailable.  The court added, "[s]uch [declaratory]

5    relief might be appropriate as a vindication of plaintiffs' position and as a public

6    statement of [such persons'] rights....It may even forestall future litigation." *Id.* at 1113.

7           The Ninth Circuit's reasoning applies here, where many companies other than

8    Microsoft are likely to be subjected to Motorola's "standard" approach to royalty

9    demands, and where Motorola's position has already been rejected in the *Research in*

10   *Motion* case.  Declaratory relief is appropriate to set a clear "standard" that demanding

11   non-RAND terms in order to tilt the negotiating field is not a permissible tactic.  Among

12   those who would benefit in the future from such a declaration is Microsoft itself.

13          The two unpublished district court decisions on which Motorola relies (Motion at

14   16) do not support dismissal of Microsoft's declaratory relief claim at the pleading stage.

15   Motorola cites *Degenhart v. AIU Holdings, Inc.*, No. C10-5172RBL, 2010 U.S. Dist.

16   LEXIS 125524 (W.D. Wash., Nov. 26, 2010), where plaintiffs' insurer paid the cost of

17   repairs for damage from an auto accident, and plaintiffs then sued to recover the

18   diminished value of the vehicle.  Plaintiffs sought damages for breach of their insurance

19   contract, and also pleaded a claim for declaratory judgment that would describe the

20   process by which those breach of contract damages are determined and paid.  *Id.* at *4.

21   Judge Leighton stated that the claim "mirrored" the relief sought in the plaintiff's other

22   claims, and cited *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (holding court

23   may dismiss a declaratory relief claim that merely "seeks a declaration of defendant's

24   liability for damages sought in the plaintiff's other causes of action").  Judge Leighton

25

MICROSOFT'S OPPOSITION TO                    CASE NO. 10-
DEFENDANTS' RENEWED MOTION TO                1823
DISMISS - 22

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

1    nevertheless denied the motion to dismiss as premature since it would not alter the course

2    of the litigation, and denied it without prejudice.

3         In this case, by contrast, Microsoft's declaratory relief claim does not merely seek

4    a declaration of liability for past damages. Microsoft alleges ongoing wrongful conduct

5    that threatens imminent and substantial future harm for which declaratory relief may be

6    the only effective remedy. *See, e.g.*, Complaint, ¶ 86. Microsoft also seeks a declaration

7    of a royalty that would be consistent with Motorola's commitments. *Id.*, ¶ 9.

8         Nor does *Permpoon v. Wells Fargo Bank Nat'l Ass'n*, No. 09-CV-01140-H

9    (BLM), 2009 U.S. Dist. LEXIS 89723 (S.D. Cal., Sept. 29, 2009), support Motorola's

10   motion. The court, on motions to dismiss, first determined that plaintiff's complaint

11   failed to state a claim for fraud, breach of fiduciary duty, or breach of the covenant of

12   good faith and fair dealing, and dismissed each of those claims. *Id.* at *3-5. Based on

13   those rulings, the court dismissed plaintiff's claim for declaratory relief because it was

14   "entirely commensurate with" the relief sought in the other claims that the court had

15   dismissed on the merits. *Id.* at *5. The decision would be pertinent here only if the Court

16   were first to find that Microsoft's factual allegations and causes of action failed to state

17   any theory of liability. And, as noted above, the declaratory relief Microsoft seeks is not

18   "entirely commensurate with" its other causes of action.

19                      **III.    CONCLUSION**

20        Microsoft's complaint states a claim for relief against Motorola and is ripe for

21   adjudication. For the reasons set forth herein, Microsoft respectfully requests that the

22   Court deny Motorola's motion to dismiss.

23

24

25   MICROSOFT'S OPPOSITION TO
     DEFENDANTS' RENEWED MOTION TO
     DISMISS - 23

                                CASE NO. 10-
                                1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700    FAX, (206) 623-8717

DATED this 28th day of March, 2011.

DANIELSON HARRIGAN LEYH & TOLLEFSON LLP

By  _Shane Cramer_
    Arthur W. Harrigan, Jr., WSBA #1751
    Christopher Wion, WSBA #33207
    Shane P. Cramer, WSBA #35099

T. Andrew Culbert, WSBA #35925
David E. Killough, WSBA #40185
MICROSOFT CORPORATION
1 Microsoft Way
Redmond, WA 98052
Phone: 425-882-8080
Fax: 425-869-1327

David T. Pritikin, *Pro Hac Vice*
Richard A. Cederoth, *Pro Hac Vice*
Douglas I. Lewis, *Pro Hac Vice*
John W. McBride, *Pro Hac Vice*
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Phone: 312-853-7000
Fax: 312-853-7036

Brian R. Nester, *Pro Hac Vice*
Kevin C. Wheeler, *Pro Hac Vice*
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
Telephone: 202-736-8000
Fax: 202-736-8711

Counsel for Plaintiff Microsoft Corp.

MICROSOFT'S OPPOSITION TO
DEFENDANTS' RENEWED MOTION TO
DISMISS - 24

CASE NO. 10-
1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  Philip S. McCune and Lynn M. Engel at Summit Law Group, PLLC.

_____
Linda Bledsoe

MICROSOFT'S OPPOSITION TO
DEFENDANTS' RENEWED MOTION TO
DISMISS - 25

CASE NO. 10-
1823

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717