The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION, a Washington corporation,

Plaintiff,

v.

MOTOROLA, INC., MOTOROLA MOBILITY, INC., and GENERAL INSTRUMENT CORPORATION.,

Defendants.

CASE NO. C10-1823-JLR

DEFENDANTS' REPLY TO MICROSOFT'S OPPOSITION TO DEFENDANTS' RENEWED MOTION TO DISMISS

**NOTED ON MOTION CALENDAR: Friday, April 1, 2011**

**ORAL ARGUMENT REQUESTED**



SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## TABLE OF CONTENTS


Page(s)

I. INTRODUCTION ........ 1

II. MICROSOFT'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED ........ 2

A. Microsoft's Breach of Contract Claim Fails to State a Plausible Claim. ........ 2

B. Microsoft's Breach of Contract Claim Was Not Ripe for Adjudication. ........ 6

C. Microsoft Is Requesting That This Court Render an Advisory Opinion. ........ 9

D. Motorola's Subsequent Patent Actions Did Not Breach Any RAND Obligation. ........ 10

III. MICROSOFT'S OTHER CLAIMS SHOULD BE DISMISSED ........ 10

IV. CONCLUSION ........ 12




SUMMIT LAW GROUP PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Am. Cargo Transp., Inc. v. United States,*
No. C05-393JLR, 2007 WL 3326683
(W.D. Wash. Nov. 5, 2007) ....... 9

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ....... 1, 2, 3

*Broadcom Corp. v. Qualcomm Inc.*,
501 F.3d 297 (3d Cir. 2007) ....... 7

*BrowserCam Inc. v. Gomez, Inc.*,
No. 08-cv-02959WHA, 2008 U.S. Dist. LEXIS 82159
(N.D. Cal. Sept. 26, 2008) ....... 7

*Byron v. Lovick*,
No. C10-0609JLR, 2010 WL 3516900
(W.D. Wash. Sept. 2, 2010) ....... 3

*City of Cheney v. Gardner*,
No. 20202-0-III, 2002 WL 31267780
(Wash. Ct. App. Oct. 10, 2002) ....... 11

*Clinton v. Jones*,
117 S. Ct. 1636 (1997) ....... 8

*Columbia Park Golf Course, Inc. v. City of Kennewick*,
No. 07-cv-5054EFS, 2008 WL 4830820
(E.D. Wash. Nov. 5, 2008, amended Nov. 7, 2008) ....... 10

*Farm Crop Energy, Inc. v. Old Nat'l Bank of Wash.*,
750 P.2d 231 (1988) ....... 11

*Flower v. T.R.A. Indus., Inc.*,
111 P.3d 1192 (2005) ....... 11

*Forest Glade Homeowners Ass'n v. Allied Mut. Ins. Co.*,
No. C07-1762JLR, 2009 WL 927750
(W.D. Wash. Mar. 31, 2009) ....... 10



SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*Fosmire v. Progressive Max Ins. Co*, No. C10-5291JLR, 2010 WL 3489595 (W.D. Wash. Aug. 31, 2010) ........ 11

*Hovenkotter v. Safeco Corp.*, No. C09-218JLR, 2009 WL 6698629 (W.D. Wash. Aug. 3, 2009) ........ 11

*ivi, Inc. v. Fisher Commc'ns*, No. C10-1512JLR, 2010 WL 197419 (W.D. Wash. Jan. 19, 2011) ........ 12

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) ........ 3

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) ........ 9

*Rambus Inc. v. FTC*, 522 F.3d 456 (D.C. Cir. 2001) ........ 8

*Research In Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788 (N.D. Tex. 2008) ........ 8

*Sirius Am. Ins. Co. v. Young's Capital Co., LLC*, No. 05-338JLR, 2005 WL 2596407 (W.D. Wash. Oct. 13, 2005) ........ 9

*S. Cal. Painters & Allied Trades v. Rodin & Co.*, 558 F.3d 1028 (9th Cir. 2009) ........ 12

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ........ 3

*Tamplenizza v. Josephthal & Co.*, 32 F. Supp. 2d 702 (S.D.N.Y. 1999) ........ 12

*Taylor v. Reliance Std. Life Ins.*, No. C10-1317JLR, 2011 WL 62142 (W.D. Wash. Jan. 7, 2011) ........ 3

*Topics Entm't Inc. v. Rosetta Stone Ltd.*, No. C09-1408-RSL, 2010 WL 55900 (W.D. Wash. Jan. 4, 2010) ........ 12



SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*Vawter v. Quality Loan Serv. Corp. of Wash.*, No. 09-1585, 2010 WL 5394893 (W.D. Wash. Dec. 23, 2010) ....................3

*W.L. Gore & Assocs., Inc. v. Carlisle Corp.*, 529 F.2d 614 (3d Cir. 1976) ....................8

*Walker v. KFC Corp.*, 728 F.2d 1215 (9th Cir. 1984) ....................10

**COURT FILINGS**

*Broadcom Corp. v. Qualcomm Inc.*, No. 05-cv-3350MLC, Document 106 (D.N.J. Nov. 2, 2007) ....................8

*Wi-Lan, Inc. v. Research in Motion Corp.*, No. 08-cv00247-TJW, Document 138 (E.D. Tex. Apr. 16, 2010) ....................6

**STATUTES**

FED. R. CIV. P.
12(b)(1) ....................10, 12
12(b)(6) ....................10, 12

**OTHER AUTHORITIES**

Amy Marasco, General Manager, Standards Strategy, Microsoft Corporation, *Fair, Reasonable and Non-Discriminatory: Some Practical Thoughts About FRAND Licensing Commitments*, presentation given at Tilberg University, Tilburg Law and Economics Center, Conference on Patent Reforms (Mar. 26, 2009) ....................5

Amy Marasco, General Manager, Standards Strategy, Microsoft Corporation, *Standards-Setting, IPR Policies and Stakeholder Considerations*, presentation given at Japanese Industrial Standards Committee, Symposium on Standardization and International Intellectual Property: The Functioning of Patent Policies and Pools in the Implementation of Standards, and How to Handle the Hold-Up Problem (Dec. 9, 2008) ........5

Francois Leveque and Yann Ménière, *Vagueness in RAND Licensing Obligations is Unreasonable for Patent Owners*, CERNA Working paper, *available at* http://ssrn.com/abstract=1030520 ....................8



SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## TABLE OF ABBREVIATIONS AND DEFINITIONS

| | |
|---|---|
| ITU | International Telecommunications Union. |
| IEEE | Institute of Electrical and Electronics Engineers. |
| SDO | Standards Development Organization. These organizations determine and disseminate industry standards used in the telecommunications and electronics fields. |
| RAND | Reasonable And Non-Discriminatory. The term "FRAND" is also used by some organizations and stands for "Fair, Reasonable And Non-Discriminatory." |



SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## I. INTRODUCTION

As detailed in Motorola's opening brief, and as confirmed below, Microsoft's amended and supplemental complaint in this action does not state any plausible or ripe claim for relief and instead requests that this Court provide an advisory opinion. And what Microsoft did plead is revealing. Microsoft denied that any of Motorola's patents are, in fact, essential to either of the industry standards in question, and Microsoft denied that it needs—or even wants—a license under Motorola's standards-essential patent portfolios. Nor did Microsoft plead that it has requested any license on reasonable and non-discriminatory (RAND) terms, or that it will accept any such terms, even if they are established by this Court after a lengthy ratemaking proceeding. Microsoft simply has no interest in requesting or taking a license. Because Microsoft did not request a license ***and*** make a *bona fide* effort to negotiate, it had no basis to bring this suit.

The well-pleaded facts show only that Motorola sent to Microsoft two letters that included opening offers to license standards-based patent portfolios "on a non-discriminatory basis on reasonable terms and conditions ('RAND')," and proposed a 2.25% royalty rate to be applied to each Microsoft product. No specifics whatsoever were proposed in these initial letters for the many remaining material terms that would be included in any fully negotiated license. And contrary to Microsoft's repeated statements, Motorola also offered Microsoft the option to structure its own license with ***all*** terms to be negotiated: "If Microsoft is only interested in licensing some portion of this portfolio, Motorola is willing to enter into such a license, also under RAND terms." Plainly, these initial offers should have led immediately to a private, bi-lateral business negotiation, not Microsoft's premature complaint. There is no common sense reading of these few pleaded facts that supports a claim that Motorola breached any obligation.

Microsoft in its opposition does not even attempt to refute Motorola's specific arguments regarding the insufficiency of Microsoft's pleadings. Instead, Microsoft's opposition seeks refuge in the pleading standard set forth in *Iqbal*—a legal standard that Microsoft misconstrues. Specifically, Microsoft's opposition is replete with statements that the Court must accept as true



SUMMIT LAW GROUP PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

its allegations that Motorola's initial RAND licensing offers were made in bad faith and were unreasonable. Opp'n at 1-3, 9, 12-13.

Not so. The Court is not required to accept Microsoft's conclusory and argumentative pleadings as true simply because Microsoft says so. Rather, the authorities demand that a complaint be based on ***facially plausible*** allegations, not conclusory deductions of fact, unreasonable inferences or legal conclusions dressed up as factual allegations. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). Microsoft's arguments are built entirely on its "bad faith" and "unreasonableness" allegations. Once these improper legal conclusions and statements are stripped away, Microsoft's arguments collapse. To hold otherwise would give every potential RAND licensee the ability to launch a breach of contract action after receiving an opening offer for a RAND license—long before any negotiation has taken place and, therefore, before any justiciable controversy could ever exist.

The few facts pleaded in Microsoft's complaint cannot support any plausible claim upon which relief can be granted and did not create a justiciable case or controversy, no matter what additional color Microsoft adds in its opposition. Microsoft has sought nothing but an advisory opinion. Defendants' motion to dismiss should be granted.

## II. MICROSOFT'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED

### A. Microsoft's Breach of Contract Claim Fails to State a Plausible Claim.

As detailed in Motorola's opening brief (pp. 7-9), no ***plausible*** breach of contract claim could be predicated solely on Motorola's sending two initial patent licensing letters to Microsoft. Microsoft had not—indeed, it still has not—requested licenses on RAND terms. And it was Microsoft—not Motorola—who refused to negotiate mutually agreeable RAND terms.

Nevertheless, Microsoft insists that it properly pleaded a breach of contract and that its pleadings must be accepted as true in their entirety, merely because Microsoft alleges they are so. This represents a misstatement of the law. The Court ***need not*** accept as true Microsoft's conclusions that the 2.25% rate applied to the price of the end product is "unreasonable" or



SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

"discriminatory" or "exorbitant." These are not factual allegations—they are legal conclusions in the guise of factual allegations. And this Court simply is not required to accept as true a legal conclusion presented as a factual allegation. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citations omitted).[1]

In what the Supreme Court has called a "two-pronged approach," "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. After extracting irrelevant pleadings, a court considers any "well-pleaded factual allegations" that remain to determine "whether they plausibly give rise to an entitlement to relief" based on the court's "judicial experience and common sense." *Id.* Applying that approach here, once Microsoft's complaint is stripped of legal conclusions and unsupported characterizations, all that is left are Motorola's two initial offer letters offering a RAND license at a rate of 2.25% based on the price of the product. This is not enough to sustain Microsoft's claims. There is nothing unreasonable about basing a negotiated license off of the end price of a product. "[S]ophisticated parties routinely enter into license agreements that base the value of the patented inventions as a percentage of the commercial products' sales price." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1339 (Fed. Cir. 2009). And the mere mention of a 2.25% rate in opening offer letters does not make the offer unreasonable, especially since Microsoft itself has valued the relevant components at 50% of the price of the end product. *See* Defs' Renewed Mot. to Dismiss at 6 n.11 (ECF #57). If anything, the facts, as pleaded, suggest nothing more than that Microsoft wanted to

[1] To like effect, *Taylor v. Reliance Std. Life Ins.*, No. C10-1317JLR, 2011 WL 62142, *1 (W.D. Wash. Jan. 7, 2011) (Robart, J.); *Vawter v. Quality Loan Serv. Corp. of Wash.*, No. 09-1585, 2010 WL 5394893, at *2 (W.D. Wash. Dec. 23, 2010) (Robart, J.); *Byron v. Lovick*, No. C10-0609JLR, 2010 WL 3516900, at *1 (W.D. Wash. Sept. 2, 2010) (Robart, J.).



SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

pay less than Motorola had proposed, or (just as likely) that it wanted to pay nothing at all. What matters is that Microsoft itself never attempted to negotiate.

In an effort to exalt the importance of Motorola's initial letters, Microsoft illogically asserts that "Motorola did not indicate in the letter that it would consider or negotiate other terms [other than the 2.25% rate] for licensing its portfolio" (Opp'n at 7) and that "Motorola's offer letters are nothing but demands setting forth the conditions on which Motorola is willing to 'grant Microsoft a worldwide nonexclusive license. . . .'" Opp'n at 15. Not so. Although each letter proposed a 2.25% rate for an entire portfolio, each also offered Microsoft the opportunity to negotiate a license to any portion of the portfolio that might be of interest, without suggesting any particular rate. Neither letter says anything like "take it or leave it." And Motorola's opening offers did not come close to proposing all of the other terms that would go into an actual RAND license, such as, for example, the duration of the license, field of use, scope of any grant-back license, possible additional nonessential patents to be included, etc. Those remaining terms and conditions of either offer were obviously left for further negotiation.

Microsoft ridicules the notion that it must negotiate for a license by comparing the RAND negotiation to haggling at a rug bazaar. Opp'n at 10. Whether in a bazaar or in the most cosmopolitan salon, negotiations can vary in tone and results, but in this instance Microsoft did not bother to show up for the negotiation. It is well known that RAND licensing terms are often determined through complex negotiations that take into consideration a multitude of facts and circumstances that can only be fleshed out through negotiations. *See* Defs.' Renewed Mot. to Dismiss, at 4-5. Significantly, outside the confines of this lawsuit, Microsoft acknowledges, and indeed embraces, Motorola's legal view of RAND commitments.[2] Microsoft's General Manager of Standards Strategy, Amy Marasco, has publicly stated that there are many factors that may

[2] Microsoft's legal positions on RAND are not "facts" precluded from consideration on a motion to dismiss. Rather, they demonstrate one legal interpretation—Microsoft's legal interpretation—of RAND terms and RAND licensing. This is no different from the scholarly literature cited by both parties as legal authority, and parallels Microsoft's citation of Motorola's legal position in a prior patent infringement case. Opp'n at 12. In any event, this Court can take judicial notice of matters of public record. *See* Defs.' Renewed Mot. to Dismiss at 8.



SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

impact the terms of a RAND license—compensation, scope of use, field of use, non-sublicensability, reciprocity, and choice of law.[3] According to Ms. Marasco, "compensation amounts—and how these terms are articulated—can vary extensively." Marasco 2009, at 4. A RAND license, according to Ms. Marasco, may also be impacted by "non-essential patents that cover the implementer's entire commercial product," and "other business dealing between the parties, such as distribution agreements, co-branding agreements, cross-licenses involving other technology."[4]

Thus, every RAND license is the result of a complex bilateral negotiation process that will result in a unique license. As Ms. Marasco succinctly stated, "FRAND is a rather fluid concept," Marasco 2009, at 5, and "typically no two licenses will be identical." Marasco 2008, at 8. In view of Ms. Marasco's statements, a breach of contract claim based on two initial offer letters, prior to even attempting to negotiate, is implausible—indeed, outrageous.

Microsoft's attempt (Opp'n at 12) to justify its baseless claim by pointing to an unadjudicated and untried RAND case in which Motorola was previously involved is misplaced. The breach of contract issues in *Wi-Lan, Inc. v. Research In Motion Corp.*, No. 2:08-CV-247-TJW (E.D. Tex.) stand in stark contrast to those presented here. ***After*** Wi-Lan sued Motorola for infringement of two Wi-Lan patents, Motorola counterclaimed, alleging violations of Wi-Lan's RAND commitments. But Motorola's claim against Wi-Lan does not justify Microsoft's actions here. A close review of that counterclaim shows that Motorola alleged that Wi-Lan had

---

[3] Amy Marasco, General Manager, Standards Strategy, Microsoft Corporation, *Fair, Reasonable and Non-Discriminatory: Some Practical Thoughts About FRAND Licensing Commitments*, presentation given at Tilberg University, Tilburg Law and Economics Center, Conference on Patent Reforms (Mar. 26, 2009), at 4, *available at* http://www.tilburguniversity.edu/research/institutes-and-research-groups/tilec/org/patent/amymarasco.pdf (last visited Mar. 30, 2011); Ex. 1 [hereinafter "Marasco 2009"]. "Ex. _" refers to the Exhibits attached to the accompanying Supplemental Declaration of Norman H. Beamer in Support of Defendants' Reply to Microsoft's Opposition to Defendants' Renewed Motion to Dismiss ("Beamer Supp. Decl.").

[4] Amy Marasco, General Manager, Standards Strategy, Microsoft Corporation, *Standards-Setting, IPR Policies and Stakeholder Considerations*, presentation given at Japanese Industrial Standards Committee, Symposium on Standardization and International Intellectual Property: The Functioning of Patent Policies and Pools in the Implementation of Standards, and How to Handle the Hold-Up Problem (Dec. 9, 2008), at 8, *available at* http://www.jisc.go.jp/policy/kenkyuukai/ipr/pdf/S3-3_Marasco.pdf (last visited Mar. 30, 2011); Ex. 2 [hereinafter "Marasco 2008"].



SUMMIT LAW GROUP PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

intentionally deceived the relevant standards development organization ("SDO"), and induced the SDO to adopt a standard while surreptitiously applying for patents it knew were essential to that standard. *See generally* ECF No. 138, No. 08-cv-00247-TJW, *Wi-Lan, Inc. v. Research in Motion Corp.* (E.D. Tex. Apr. 16, 2010); Ex. 3. Nothing like that factual scenario is present in this case—Microsoft does not, and cannot, allege that Motorola hid its patents from the relevant SDOs. Instead, Microsoft simply brought a premature suit after a mere opening offer.

In sum, Microsoft's entire breach of contract claim rests on its implausible contention that two opening letters offered licenses to Motorola's portfolios of patents in bad faith. Microsoft has not cited any authority for the proposition that such a bare allegation of bad faith can form the basis for a complaint that a RAND obligation has been breached. Nor has Microsoft cited authority that a plausible breach of contract claim can be based on two initial offer letters.

**B. Microsoft's Breach of Contract Claim Was Not Ripe for Adjudication.**

Motorola's opening brief further explains that Microsoft filed the present action prematurely—before it had applied for a license on RAND terms, before it had entered into negotiations for any such license, and certainly before any plausible breach of contract claim could ripen. Microsoft simply jumped the gun. And, as evidenced by its motion to transfer Case No. 2:11-cv-00343 to this Court from the Western District of Wisconsin (*see* Opp'n at 18 n.7), Microsoft's commencement of this action appears to have been motivated not by any alleged breach, but by a desire to avoid negotiations of RAND licensing terms and to maneuver any potential patent infringement actions brought by Motorola into Microsoft's forum of choice. In this case, Microsoft seeks to delay or perhaps even to eliminate any remedy Motorola may have for Microsoft's unauthorized, infringing acts. Viewed more broadly, if Microsoft's tactic is upheld, any recipient of an opening RAND licensing offer could bring a breach of contract claim and in effect demand that a Court oversee a protracted RAND licensing negotiation.

Microsoft attempts to dodge this fundamental flaw by asserting that it had no duty to request a license, or even to negotiate for a license after being offered one. Opp'n at 2. It supports



SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

this position with the bootstrap argument that it was relieved of any duty to negotiate because Motorola's offer was not reasonable. Opp'n at 12. But, again, the Court need not accept as true Microsoft's unreasonableness allegation—an allegation based only on Motorola's two opening offer letters, without any negotiations or discussions having taken place.[5]

In addition, the SDO procedures and guidelines are unequivocal: A RAND promisor ***only*** has to ***negotiate*** a RAND license with a party ***if that party requests such a license***. Defs.' Renewed Mot. at 10. A RAND promise is not itself a license grant, nor is it even a promise to grant a license. Negotiations do not necessarily result in a license grant, even if both sides propose terms that are reasonable, if neither proposal is mutually acceptable. As the ABA Policy Manual that Microsoft quotes from states, "***Ultimately*** [*i.e.*, not before, but after negotiations,] a trier of fact may need to resolve" a RAND impasse. Opp'n at 10 (emphasis added). Microsoft's own public statements confirm this: "A prospective implementer that has requested a license will negotiate on a private bilateral basis with the patent owner to determine whether they can arrive at a mutually acceptable agreement on RAND terms." Marasco 2008 at 8.

The cases Microsoft cites to argue its claim is ripe are inapposite. For example, *BrowserCam Inc. v. Gomez, Inc.* was ripe not based on bare assertions of breach of contract and damages, as Microsoft asserts here, but because it was undisputed that the defendant had not complied with specific provisions of the contract, such as spending $250,000 on marketing. *See* No. 08-cv-02959WHA, 2008 U.S. Dist. LEXIS 82159, at *16, *18-20 (N.D. Cal. Sept. 26, 2008).

Microsoft also compares this case to *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007), and other cases that have discussed disputes over RAND licensing obligations. Opp'n at 14. None of those cases involves a situation where an opening offer, without any history of

---

[5] On page 15 of its opposition, Microsoft incorrectly quotes Motorola as stating that "'Motorola's opening offer-no matter how unacceptable' cannot create a justifiable controversy ripe for resolution by this Court." No such quote or statement appears in Motorola's brief.



SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

negotiations, was attacked for RAND non-compliance.[6] Nor does Microsoft's reliance (Opp'n At 16) on *Research In Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788 (N.D. Tex. 2008), or *WL. Gore & Assocs., Inc. v. Carlisle Corp.*, 529 F.2d 614, 623 (3d Cir. 1976), justify its premature suit. Unlike the present case, in both of those cases there were extensive negotiations that formed the basis for factual allegations underlying the complaints. Defs.' Renewed Mot. to Dismiss at 11. Moreover, as pointed out in Motorola's opening brief (at 4), no court has actually carried out the exercise of adjudicating RAND terms. Contrary to Microsoft's cavalier suggestion that this would be a routine process for this or any court (Opp'n at 3), it is by no means routine, as Microsoft's own authorities confirm. (*See* n.1 of Microsoft's Opposition (citing Francois Leveque and Yann Ménière, *Vagueness in RAND Licensing Obligations is Unreasonable for Patent Owners*, CERNA Working paper, *available at* http://ssrn.com/abstract=1030520).)[7]

As a supposed counterexample, Microsoft cites the FTC *Rambus* proceedings, where an attempt to determine a RAND rate was actually conducted. Opp'n at 14. But administrative agencies like the FTC are not subject to the same Article III standing requirements as private parties and, unlike Article III courts, are permitted to issue advisory opinions and need not take judicial efficiency into consideration. *See Clinton v. Jones*, 117 S. Ct. 1636, 1647 n.33 (1997). More noteworthy is that the rate-making exercise in *Rambus* took over 55 months to decide and yielded two opinions that total nearly 70,000 words, and 819 footnotes. *See* Beamer Supp. Decl. ¶¶ 7-10; Exs. 5-8. And after that marathon proceeding, the FTC's Final Order was ultimately overturned by the D.C. Circuit, which advised against limiting a Constitutionally-granted patent right amidst such vague and ambiguous contractual language.[8]

---

[6] *See, e.g.*, Broadcom's Second Amended Complaint, describing the existence of negotiations between the parties. *Broadcom Corp. v. Qualcomm Inc.*, No. 05-3350MLC, Docket Entry 106, ¶ 109 (D.N.J. Nov. 2, 2007); Ex. 4.

[7] *See also* authorities gathered at n.4 of Motorola's opening motion.

[8] *See, e.g.*, *Rambus Inc. v. FTC*, 522 F.3d 456, 468 (D.C. Cir. 2001) ("[The SDO's policies] suffered from a staggering lack of defining details." (quotations omitted)); *id.* ("[T]he more vague and muddled a particular [SDO policy], the more difficult it should be for the Commission to ascribe competitive harm to its breach.").



SUMMIT LAW GROUP PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Microsoft attempts to excuse its premature filing of the complaint by characterizing Motorola's opening offer letters as an ultimatum that ruled out further negotiations. Opp'n at 15. As discussed above, Motorola did the opposite—it invited Microsoft to structure its own license with just the patents that it wanted on terms that would be negotiated by the parties. Microsoft rejected Motorola's invitation by prematurely filing suit.

**C. Microsoft Is Requesting That This Court Render an Advisory Opinion.**

Ultimately, Microsoft's premature and implausible contract claims request that this Court determine what the terms of a RAND license ***would be, if Microsoft chooses to request one***. But Microsoft does not request a license—to the contrary, it says it does not need one. As further detailed in Motorola's opening brief (at 13), Microsoft seeks an advisory opinion.

In attempting to evade the inevitable conclusion that it merely seeks an advisory opinion, Microsoft cites *Ericsson* and *Nokia* for the proposition that it is unnecessary for the Court to rule on the ultimate question of whether the "essential" patents in the portfolio are in fact essential. Opp'n at 17. The fact remains, however, that Microsoft reserves the right to spurn a RAND license under Motorola's essential patent portfolio, and challenge the validity and/or infringement of such patents, even if this Court determines a RAND rate. Microsoft still has not suggested, much less explicitly stated, that it would be bound by, or would otherwise adhere to, any determination by the Court. Microsoft's complaint is asking this Court to engage in the exact form of hypothetical and speculative exercise that Article III's "cases or controversies" requirement constitutionally prohibits. *MedImmune, Inc. v. Genentech, Inc.*, 548 U.S. 118, 127 (2007) (Disputes must "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." (quotations omitted)); *Am. Cargo Transp., Inc. v. United States*, No. C05-393JLR, 2007 WL 3326683, at *4 (W.D. Wash. Nov. 5, 2007) (Robart, J.) ("The court cannot issue advisory opinions to inform the parties of what the law would be based upon a hypothetical set of facts."); *Sirius Am. Ins. Co. v. Young's Capital Co., LLC*, No. C05-338JLR, 2005 WL 2596407, at *2



SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

(W.D. Wash. Oct. 13, 2005) (Robart, J.) ("[This] is the legal equivalent of the Zen koan inquiring into the sound of one hand clapping—it may present an interesting question, but it is not a question properly before the court").

**D. Motorola's Subsequent Patent Actions Did Not Breach Any RAND Obligation.**[9]

As Motorola established in its opening brief (at 14-15), the existence of a general RAND licensing obligation does not preclude patent holders from enforcing their rights against infringers. Indeed, it was incumbent on Microsoft to apply for and negotiate the terms of a RAND patent license. But Microsoft did not do so. Worse, Microsoft unequivocally spurned Motorola's initial offer to license its standards-essential patent portfolios by commencing this lawsuit. Accordingly, any obligation that Motorola had to offer Microsoft a patent license on RAND terms was extinguished and Motorola had the right to enforce its patents.

## III. MICROSOFT'S OTHER CLAIMS SHOULD BE DISMISSED

Each of Microsoft's other claims should be dismissed for the same reasons that the breach of contract claim should be dismissed—Microsoft's allegation that Motorola's initial offer was in bad faith and unreasonable was implausible and premature. None of the claims passes muster under FED. R. CIV. P 12(b)(1) or 12(b)(6),.

Microsoft's promissory estoppel claim should be dismissed because Microsoft asserts that an actual, valid contract exists, with Microsoft as a third party beneficiary. *See, e.g.*, Am. & Supp. Compl. ¶¶ 45-46, 54, 80-87. It is well settled that "[p]romissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove a breach of contract." *Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th Cir. 1984). *See also Columbia Park Golf Course, Inc. v. City of Kennewick*, No. 07-cv-5054EFS, 2008 WL 4830820, at *9 (E.D. Wash. Nov. 5, 2008, amended Nov. 7, 2008) (dismissing a promissory

[9] Certainly, the Motorola patent actions, which commenced after this action was commenced, cannot be used to cure the lack of ripeness of the complaint, because a pleading must set forth facts that establish a justiciable controversy ripe for adjudication at the time the pleading was filed. *Forest Glade Homeowners Ass'n v. Allied Mut. Ins. Co.*, No. C07-1762JLR, 2009 WL 927750, at *2 (W.D. Wash. Mar. 31, 2009).



SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

estoppel cause of action because the parties agreed that their relationship was governed by contracts); *City of Cheney v. Gardner*, No. 20202-0-III, 113 Wn. App. 1056, 2002 WL 31267780, at *2 n.5 (Oct. 10, 2002).

The cases cited by Microsoft (Opp'n at 16) do not hold otherwise. *Flower v. T.R.A. Indus., Inc.*, 127 Wn. App. 13, 111 P.3d 1192, 1198-1202 (2005), involved numerous issues as to the existence of a contract in the first place. Similarly, contrary to Microsoft's statements, the contract and promissory estoppel claims in *Farm Crop Energy, Inc. v. Old Nat'l Bank of Wash.*, 109 Wn.2d 923, 750 P.2d 231 (1988), were *not*, as Microsoft suggests, "alternative claims." Instead, the promissory estoppel claim was predicated on "a conditional noncontractual promise" wholly apart from the contract claim. 750 P.2d at 233, 236.

As for Microsoft's waiver claim, Microsoft stated nothing in its opposition to refute the fact that it is not permitted to use waiver as an offensive tool. Microsoft's argument that waiver "is not advanced as an independent claim" and is merely "the basis for a claim for injunctive relief," is contradicted by Microsoft's duplication of its irreparable injury allegations in its breach of contract claim and its waiver claim. *Compare* Am. & Supp. Compl., ¶ 87 *with id.* ¶ 98.

And Microsoft's declaratory judgment claim is based on the same implausible allegations of bad faith offer as the other counts of the complaint. That claim should be dismissed because the relief that Microsoft seeks is fundamentally at odds with the statutory policy underlying declaratory judgment jurisdiction. This Court has routinely dismissed declaratory judgment claims that are duplicative of other claims in a complaint. *See, e.g.*, *Fosmire v. Progressive Max Ins. Co.*, No. C10-5291JLR, 2010 WL 3489595, at *5 (W.D. Wash. Aug. 31, 2010) (Robart, J.) ("Requests for declaratory judgment orders that merely impose the remedies provided for in other claims are duplicative and may be dismissed on that basis."); *Hovenkotter v. Safeco Corp.*, No. C09-218JLR, 2009 WL 6698629, at *5-6 (W.D. Wash. Aug. 3, 2009) (Robart, J.).

In addition, a declaration merely advising Microsoft of a hypothetical RAND rate for a portion or even all of the portfolio, while not obligating Microsoft to pay a RAND rate for *any* of



SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

the patents in the two portfolios, "strains the concept of 'case or controversy' to its outer limit." *Tamplenizza v. Josephthal & Co.*, 32 F. Supp. 2d 702, 704 (S.D.N.Y. 1999); *see also S. Cal. Painters & Allied Trades v. Rodin & Co.*, 558 F.3d 1028, 1034-35 (9th Cir. 2009). Microsoft is asking this court for a declaratory judgment, yet remains silent as to whether it would apply for or accept any licensing terms set by this Court—a classic advisory opinion.

Furthermore, Microsoft's declaratory judgment claim should be dismissed as part of its premature, anticipatory attempt at forum shopping. *See ivi, Inc. v. Fisher Commc'ns, Inc.*, No. C10-1512JLR, 2011 WL 197419 (W.D. Wash. Jan. 19, 2011) (Robart, J.); *Topics Entm't Inc. v. Rosetta Stone Ltd.*, No. C09-1408-RSL, 2010 WL 55900, at *3-4 (W.D. Wash. Jan. 4, 2010) ("Anticipatory suits 'are disfavored because they are examples of forum shopping'. . . . [P]ermitting Topics to gain from its tactic would encourage parties to precipitously abandon settlement negotiations to rush to the courthouse as Topics did." (citation omitted)).

## IV. CONCLUSION

Microsoft's opposition brief does nothing to change the fact that Microsoft's complaint is implausible, premature and nonjusticiable, seeking an advisory opinion that Microsoft has not even agreed to accept. The complaint should be dismissed pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6),

DATED this 1st day of April, 2011.

SUMMIT LAW GROUP PLLC

By /s/ Lynn M. Engel
Philip S. McCune, WSBA #21081
Lynn M. Engel, WSBA #21934
*philm@summitlaw.com*
*lynne@summitlaw.com*



SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

And by

Steven Pepe (*pro hac vice*)
Jesse J. Jenner (*pro hac vice*)
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
(212) 596-9046
*jesse.jenner@ropesgray.com*
*steven.pepe@ropesgray.com*

Norman H. Beamer (*pro hac vice*)
Ropes & Gray LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303-2284
(650) 617-4030
*norman.beamer@ropesgray.com*

Paul M. Schoenhard (*pro hac vice*)
Ropes & Gray LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC 20005-3948
(202) 508-4693
*paul.schoenhard@ropesgray.com*

***Attorneys for Defendants Motorola, Inc., and Motorola Mobility, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Arthur W. Harrigan, Jr., Esq.
Christopher T. Wion, Esq.
Shane P. Cramer, Esq.
Danielson Harrigan Leyh & Tollefson
*arthurh@dhlt.com*
*chrisw@dhlt.com*
*shanec@dhlt.com*

Brian R. Nester, Esq.
David T. Pritikin, Esq.
Douglas I. Lewis, Esq.
John W. McBride, Esq.
Kevin C. Wheeler, Esq.
Richard A. Cederoth, Esq.
Sidley Austin LLP
*bnester@sidley.com*
*dpritikin@sidley.com*
*dilewis@sidley.com*
*jwmcbride@sidley.com*
*kwheeler@sidley.com*
*rcederoth@sidley.com*

T. Andrew Culbert, Esq.
David E. Killough, Esq.
Microsoft Corp.
*andycu@microsoft.com*
*davkill@microsoft.com*

DATED this 1st day of April, 2011.

Marcia A. Ripley



SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001