The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation, | CASE NO. C10-1823-JLR |
| Plaintiff, | MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO MICROSOFT CORPORATION'S COUNTERCLAIMS ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) |
| v. | |
| MOTOROLA, INC., and MOTOROLA MOBILITY, INC., and GENERAL INSTRUMENT CORPORATION, | |
| Defendants. | JURY DEMAND |
| MOTOROLA MOBILITY, INC., and GENERAL INSTRUMENT CORPORATION, | |
| Plaintiffs/Counterclaim Defendant, | |
| v. | |
| MICROSOFT CORPORATION, | |
| Defendant/Counterclaim Plaintiff. | |

Motorola Mobility, Inc. ("Motorola Mobility") and General Instrument Corporation ("General Instrument") (collectively or separately, "Motorola"), hereby answer Microsoft Corporation's ("Microsoft") Counterclaims, originally filed in Civil Action 3:10-cv-699 (W.D.

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 1
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

Wis.), as follows.  Motorola demands a jury trial on all issues arising under the Patent Laws of the United States that are triable to a jury.

## ANSWER TO COUNTERCLAIMS

## PARTIES

1.      Motorola admits the allegations of Paragraph 1.

2.      Motorola admits the allegations of Paragraph 2.

## JURISDICTION AND VENUE

3.      Motorola incorporates by reference its responses, above, to Paragraphs 1 through 2 as if fully set forth herein.

4.      Motorola admits that Microsoft has alleged its Counterclaims under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, denies, however, committing any infringement or other tortious or unlawful act, admits that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1338(a), and denies the remaining allegations of Paragraph 4.

5.      Motorola admits the allegations of Paragraph 5.

6.      Motorola admits that this Court has personal jurisdiction over Motorola for purposes of this matter and admits that it filed suit in the District Court for the Western District of Wisconsin.

## RELATED LITIGATION

7.      Motorola admits that on November 9, 2010, Microsoft sued Motorola in the Western District of Washington alleging breach of contract, promissory estoppel, and waiver,  that on November 10, 2010, it filed Civil Action 3:10-cv-699 in the Western District of Wisconsin, and that on December 21, 2010, Microsoft filed a motion to dismiss, stay, or transfer Civil Action 3:10-cv-699.

8.      Motorola states that the allegations of Paragraph 8 are moot, and therefore no response is required.

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 2
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

THE MICROSOFT ASSERTED PATENTS

9.      Motorola admits that U.S. Patent No. 6,339,780 ('780) is titled "Loading Status in a Hypermedia Browser Having a Limited Available Display Area," bears an issuance date of January 15, 2002, and names Scott R. Shell, Kevin T. Shields, and Anthony Kitowitz as inventors, lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 9, and on that basis denies such allegations.

10.     Motorola admits that U.S. Patent No. 7,411,582 ('582) is titled "Soft Input Panel System and Method," bears an issuance date of August 12, 2008, and names Michael G. Toepke, Jeffrey R. Blum, and Kathryn L. Parker as inventors, lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 10, and on that basis denies such allegations.

## COUNT I
### (Infringement of U.S. Patent No. 6,339,780)

11.     Motorola incorporates by reference its responses, above, to Paragraphs 1 through 10 as if fully set forth herein.

12.     Motorola denies each and every allegation of Paragraph 12.

13.     Motorola denies each and every allegation of Paragraph 13.

14.     Motorola denies each and every allegation of Paragraph 14.

15.     Motorola denies each and every allegation of Paragraph 15.

## COUNT II
### (Infringement of U.S. Patent No. 7,411,582)

16.     Motorola incorporates by reference its responses, above, to Paragraphs 1 through 10 as if fully set forth herein.

17.     Motorola denies each and every allegation of Paragraph 17.

18.     Motorola denies each and every allegation of Paragraph 18.

19.     Motorola denies each and every allegation of Paragraph 19.

20.     Motorola denies each and every allegation of Paragraph 20.

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 3
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

2

### COUNT III
### (Breach of RAND Licensing Obligations)

21.     Motorola admits the allegations contained in the first and second sentences of Paragraph 21, admits that Microsoft filed its motion to dismiss etc., based on its compulsory counterclaim allegation, states that it is unaware of any rule that allows a party to conditionally re-allege and assert allegations to be made at some future point in another pending action and, on that basis, denies the allegations contained in the fourth sentence, admits that Microsoft alleges that the substance of this counterclaim is the same as the Amended Complaint in the original 1823 action, and denies the remaining allegations of Paragraph 21.

22.     Motorola admits that Microsoft brings its complaint as alleged, denies that Motorola has breached any enforceable commitment to IEEE or ITU or their members or affiliates, states that it remains willing to license their WLAN and H.264 patents to applicants on RAND terms which can only be determined through negotiation between the relevant parties but that Microsoft, by its actions, has repudiated any right to apply for such a license, and denies the remaining allegations of Paragraph 22.

23.     Motorola admits that participants in IEEE standards setting efforts are subject to IEEE bylaws regarding Letters of Assurance, states that it has at all times complied with IEEE bylaws, admits that Microsoft has quoted a portion of a version of Clause 6 of the bylaws, denies that the quoted provisions are complete, and denies the remaining allegations of Paragraph 23.

24.     Motorola admits that it submitted certain Letters of Assurance to the IEEE-SA Standards Board Patent Committee stating that it would, "with respect to any patent(s) and/or patent applications(s) that it may hold or control" "which would be essential to" the WLAN standards, "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide, non-discriminatory basis with reasonable terms and conditions," denies that such Letters of Assurance can form the basis of any claim for relief that Microsoft can make, states that Motorola has in fact granted such licenses to entities who, unlike Microsoft, have engaged in negotiations with Motorola for such licenses, admits that the WLAN standards are now

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 4
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    implemented worldwide in a variety of electronic devices that have become commonplace,

2    including devices imported, made, used, sold, or offered for sale by Microsoft, states that it is

3    without knowledge or information sufficient to form a belief as to the truth of the allegations

4    contained in the second and fourth sentences of Paragraph 24 and therefore denies them, and

5    denies each and every remaining allegation of Paragraph 24.

6        25.    Motorola admits that participants in ITU-T standards setting efforts are subject to

7    ITU-T's Common Patent Policy regarding Patent Statement and Licensing Declarations, states

8    that it has at all times complied with ITU-T's Common Patent Policy, admits that Microsoft has

9    quoted a portion of a version of the Common Patent Policy, denies that the quoted provisions are

10   complete, and denies the remaining allegations of Paragraph 25.

11       26.    Motorola admits that it submitted certain Patent Statement and Licensing

12   Declarations pursuant to the ITU's Common Patent Policy regarding the licensing of essential

13   patents, which Declarations speak for themselves, denies that such Declarations can form the basis

14   of any claim for relief that Microsoft can make, states that Motorola has in fact granted such

15   licenses to entities who, unlike Microsoft, have engaged in negotiations with Motorola for such

16   licenses, admits that the H.264 technical standards are now implemented worldwide in a variety of

17   electronic devices and software that have become commonplace, including those imported, made,

18   used, sold, or offered for sale by Microsoft, states that it is without knowledge or information

19   sufficient to form a belief as to the truth of the allegations contained in the second and fourth

20   sentences of Paragraph 26, and therefore denies them, and denies each and every remaining

21   allegation of Paragraph 26.

22       27.    Motorola states that it has not broken any enforceable promise to IEEE-SA or to

23   ITU-T, or their members or affiliates regarding licensing of standards essential patents and that it

24   remains willing to license such patents to applicants who, unlike Microsoft, fulfill their obligations

25   as applicants for such licenses, and denies each and every remaining allegation of Paragraph 27.

26

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 5
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

28.     Motorola states that the first sentence of Paragraph 28 is argumentative and does not allege facts and, on that basis, denies the allegations of the first sentence, and further states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of Paragraph 28 and therefore denies them.

29.     Motorola states that Paragraph 29 purports to assert legal conclusions to which Motorola is not obligated to respond and, on that basis, denies the allegations, and further states that Motorola remains willing to license essential patents on RAND terms to those who, unlike Microsoft, apply for a license.

30.     Motorola admits that Microsoft purports to seek certain judicial declarations and accountings related to the Motorola's WLAN and H.264 video coding patent and technology portfolios, denies that Microsoft is entitled to any such declarations or accountings, states that Microsoft has never applied for a license under Motorola essential patents, refused to negotiate the terms of a license when Motorola offered a license, and further forfeited any right to a RAND license by suing Motorola instead of requesting a RAND license and negotiating terms with Motorola, and denies each and every remaining allegation of Paragraph 30.

31.     On information and belief, Motorola admits the allegations of Paragraph 31.

32.     Motorola admits that Microsoft was founded in 1975, that it provides computer software, services and solutions, is headquartered in Redmond, Washington, are without knowledge or information sufficient to form a belief as to the number of Microsoft employees or square footage of Microsoft facilities and therefore denies those allegations, and denies each and every remaining allegation of Paragraph 32.

33.     Motorola is without knowledge or information sufficient to form a belief as to the allegations of Paragraph 33 and therefore denies them.

34.     Motorola admits the allegations contained in the first sentence of Paragraph 34, and states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of Paragraph 34 and therefore denies them.

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 6
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

35.     Motorola admits the allegations contained in the first and third sentences of Paragraph 35, and states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of Paragraph 35 and therefore denies them.

36.     Motorola is without sufficient knowledge or information to form a belief regarding the allegations in Paragraph 36 and therefore denies them.

37.     Motorola admits that Microsoft hardware and software products, and personal computers sold by others, provide features including H.264 functionality, and states that it is without sufficient knowledge or information to form a belief regarding the truth of the remaining allegations of Paragraph 37 and therefore denies them.

38.     Motorola is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 38 and therefore denies them.

39.     Motorola admits the allegations of Paragraph 39.

40.     Motorola admits that Motorola and Microsoft are citizens of different states, and that Microsoft purports to seek in excess of $75,000 through its Counterclaims, denies that Microsoft has been damaged or is entitled to judgment or relief against Motorola of any kind, whether monetary or otherwise, denies that this court has jurisdiction to adjudicate Microsoft's claims to the extent that they relate to Motorola's foreign patents or technologies, states that Microsoft's Third Count, Causes of Action 3A-3D of the Counterclaims fail to state a claim upon which relief can be granted and are not ripe for adjudication, and denies each and every remaining allegation of Paragraph 40.

41.     Motorola admits the allegations of Paragraph 41.

42.     Motorola admits the allegations of Paragraph 42.

43.     Motorola admits that technology providers in some instances cooperate in standards development organizations to create standards for the implementation of certain

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 7
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    technologies, and states that it is without knowledge or information sufficient to form a belief as to

2    the truth of the remaining allegations of Paragraph 43 and therefore denies them.

3         44.     Motorola admits the allegations of Paragraph 44.

4         45.     Motorola admits the allegations of Paragraph 45.

5         46.     Motorola admits the allegations of Paragraph 46.

6         47.     Motorola admits that SDOs have adopted rules, policies and procedures that

7    address the disclosure and licensing of patents that SDO participants may assert in relation to the

8    practice of the standard under consideration, and that these rules, policies and/or procedures are set

9    out in the intellectual property rights policies ("IPR policies") of the SDOs, and denies the

10   remaining allegations of Paragraph 47.

11        48.     Motorola admits that many IPR policies relate to patents and patent applications,

12   and that these policies speak for themselves, and denies the remaining allegations of Paragraph 48.

13        49.     Motorola admits that many IPR policies relate to patents and patent applications,

14   and that these policies speak for themselves, and denies the remaining allegations of Paragraph 49.

15        50.     Motorola denies the allegations of Paragraph 50.

16        51.     Motorola admits the allegations of Paragraph 51.

17        52.     Motorola admits the allegations of Paragraph 52.

18        53.     Motorola admits the allegations of the first and second sentences of Paragraph 53

19   admits that there has been a number of amendments issued to the 802.11 protocol, and denies the

20   remaining allegations of Paragraph 53.

21        54.     Motorola denies the allegations of Paragraph 54.

22        55.     Motorola admits the allegations of Paragraph 55.

23        56.     Motorola admits the allegations of Paragraph 56.

24        57.     Motorola admits the allegations of Paragraph 57.

25        58.     Motorola admits the allegations of Paragraph 58.

26        59.     Motorola admits the allegations of Paragraph 59.

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 8
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   60.   Motorola admits that certain IEEE-SA Letters of Assurance provide that "This

2   assurance applies from the date of the standard's approval to the date of the standard's withdrawal

3   and is irrevocable upon acceptance by the IEEE-SA Standards Board Patent Committee", and

4   denies the remaining allegations of Paragraph 60.

5   61.   Motorola is without knowledge or information sufficient to form a belief as to the

6   truth of the allegations of Paragraph 61 and therefore denies them.

7   62.   Motorola admits that in a letter sent from Motorola Inc. to Microsoft's Horatio

8   Gutierrez on October 21, 2010, Motorola, Inc. stated that it owns rights in a number of patents and

9   pending applications that are or may become "essential" to comply with one or more amendments

10  to the 802.11 standard, denies that Exhibit C of Microsoft's Answer and Counterclaims contains

11  the full list of patents that Motorola, Inc. stated are or may become "essential" to comply with one

12  or more amendments to the 802.11 standard, further states that the Annex to the October 21, 2010

13  letter from Motorola, Inc. to Microsoft's Horatio Gutierrez listed 47 U.S. and 179 foreign patents,

14  and 5 U.S. and 26 foreign applications, that are or may become "essential" to one or more

15  amendments to the 802.11 standard, further states that the allegations of the last sentence of

16  Paragraph 62 do not contain facts and are argumentative and therefore denies them, and denies the

17  remaining allegations of Paragraph 62.

18  63.   Motorola admits that Motorola, Inc. obtained rights to certain of the patents listed

19  in the October 21, 2010 letter through its acquisition of Symbol Technologies, Inc. ("Symbol"),

20  and denies the remaining allegations of Paragraph 63.

21  64.   Motorola admits that Motorola and Symbol submitted certain Letters of Assurance

22  to the IEEE Standards Board Patent Committee, states that the Letters of Assurance speak for

23  themselves, and denies the remaining allegations of Paragraph 64.

24  65.   Motorola is without knowledge or information sufficient to form a belief as to the

25  truth of the allegations of Paragraph 65 and therefore denies them.

26

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 9
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

66.     Motorola states that Paragraph 66 purports to assert legal conclusions to which Motorola is not obligated to respond and therefore denies the allegations of Paragraph 66.

67.     Motorola states that Paragraph 67 purports to assert legal conclusions to which Motorola is not obligated to respond and therefore denies the allegations of Paragraph 67.

68.     On information and belief, Motorola admits the allegations of Paragraph 68.

69.     Motorola admits the allegations of Paragraph 69.

70.     Motorola denies the allegations of Paragraph 70.

71.     Motorola is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 71 and therefore denies them.

72.     Motorola admits that it has stated to Microsoft and/or others that Motorola owns rights in patents or pending applications that are or may become essential to the H.264 video standard and that Microsoft does not concede that such patents are essential or practiced by Microsoft, and denies the remaining allegations of Paragraph 72.

73.     Motorola admits that it submitted certain Patent Statement and Licensing Declarations to the ITU-T, states that the Declarations speak for themselves, and denies the remaining allegations of Paragraph 73.

74.     Motorola is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 74 and therefore denies them.

75.     Motorola states that Paragraph 75 purports to assert legal conclusions to which Motorola is not obligated to respond and therefore denies the allegations of Paragraph 75.

76.     On information and belief, Motorola admits the allegations of Paragraph 76.

77.     Motorola is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 77 and therefore denies them.

78.     Motorola is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 78 and therefore denies them.

79.     Motorola denies the allegations of Paragraph 79.

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 10
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

80.     On information and belief, Motorola admits the allegations of Paragraph 80 of the Counterclaims.

81.     Motorola is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 81 and therefore denies them.

82.     Motorola is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 82 and therefore denies them.

83.     Motorola is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 83 and therefore denies them.

84.     Motorola denies the allegations of Paragraph 84.

85.     Motorola denies the allegations of Paragraph 85.

86.     Motorola denies the allegations of Paragraph 86.

87.     Motorola admits that Microsoft imports, makes, uses, sells, or offers for sale Xbox 360 consoles, Xbox 360 Wireless Adapters, and other products allowing users to connect to the Internet using WLAN technology, that such products include software and computer chips and modules that perform various functions, and that one function allows consumers to connect an Xbox to the Internet using a WLAN connection, and denies the remaining allegations of Paragraph 87.

88.     Motorola admits that Microsoft's Xbox 360 consoles feature Ethernet connectivity which provides the consoles with a wired method to connect to the Internet, states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of the first and third sentences of Paragraph 88 and therefore denies them, and denies the remaining allegations of Paragraph 88.

89.     Motorola admits that personal computers running the Windows 7 operating system include software and computer chips and modules that are capable of performing various functions, and states that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 89 and therefore denies them.

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

90.     Motorola admits that smartphones running the Windows Phone 7 operating system include software and computer chips and modules that are capable of performing various functions, and states that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the Paragraph 90 and therefore denies them.

91.     Motorola admits that on October 21, 2010, Motorola, Inc. sent a letter to Microsoft Corporation which speaks for itself, and denies the remaining allegations of Paragraph 91.

92.     Motorola admits that on October 29, 2010, Motorola, Inc. sent a letter to Microsoft Corporation which speaks for itself, and denies the remaining allegations of Paragraph 92.

93.     Motorola admits that it possesses patents that are or may be essential to the 802.11 or H.264 standards and that, for patents and technologies that are or may become essential to the 802.11 or H.264 standards, Motorola has submitted certain letters of Assurance to the IEEE, and certain Patent Statement and Licensing Declarations to the ITU-T, states that it has offered and continue to offer to provide RAND licenses to applicants who, unlike Microsoft, apply for such a license, and denies the remaining allegations of Paragraph 93.

94.     Motorola denies the allegations of Paragraph 94.

95.     Motorola admits the allegations of Paragraph 95.

96.     Motorola admits the allegations of Paragraph 96.

97.     Motorola admits the allegations of Paragraph 97.

98.     Motorola admits the allegations of Paragraph 98.

99.     Motorola admits the allegations of the first and third sentences of Paragraph 99 , and denies the allegations of the second sentence of Paragraph 99.

100.     Motorola admits that Microsoft purports to define "Motorola Patent Actions" and "SDO Patents in Suit", denies that Microsoft has accurately correlated essential patents with "SDO Patents in Suit", and denies the remaining allegations of Paragraph 100.

101.     Motorola states that Microsoft has never applied for a license under Motorola essential patents prior to implementing the 802.11 and H.264 standards in Microsoft's products,

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 12
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1   further states that Microsoft has never responded to Motorola's October 21 and October 29 Letters

2   inviting Microsoft to negotiate a license to Motorola's 802.11 and H.264 portfolios, respectively,

3   and has never attempted to negotiate license terms with Motorola but instead improperly filed the

4   present action, and denies the remaining allegations of Paragraph 101.

## COUNT 3A
### (Breach of Contract)

102.   Motorola incorporates by reference its responses, above, to Paragraphs 1 through 101 as if fully set forth herein.

103.   Motorola states that Paragraph 103 purports to assert legal conclusions to which Motorola is not obligated to respond and therefore denies the allegations of Paragraph 103.

104.   Motorola states that Paragraph 104 purports to assert legal conclusions to which Motorola is not obligated to respond and therefore denies the allegations of Paragraph 104.

105.   Motorola states that Paragraph 105 purports to assert legal conclusions to which Motorola is not obligated to respond and therefore denies the allegations of Paragraph 105.

106.   Motorola states that it has not breached any enforceable obligation to IEEE or ITU, and that Microsoft breached its duty to apply for a license and negotiate the terms of a RAND license and failed to satisfy the conditions precedent to any obligations that it was owed as an alleged third party beneficiary, and denies the allegations of Paragraph 106.

107.   Motorola states that it filed the Motorola Patent Actions after Microsoft repudiated and rejected the benefits of any RAND statements made by Motorola,  admits that the Motorola Patent Actions seek to enjoin Microsoft's implementation of the technology of the SDO Patents in Suit and to exclude Microsoft from importing or selling products that implement the technology of the SDO Patents in Suit because of Microsoft's refusal to apply for and negotiate the terms of a RAND license for such patents, and denies the remaining allegations of Paragraph 107.

108.   Motorola denies the allegations of Paragraph 108.

109.   Motorola denies the allegations of Paragraph 109.

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 13
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

2

## COUNT 3B
### (Promissory Estoppel)

110.     Motorola incorporates by reference its responses, above, to Paragraphs 1 through 101 as if fully set forth herein.

111.     Motorola states that Paragraph 111 purports to assert legal conclusions to which Motorola is not obligated to respond and therefore denies the allegations of Paragraph 111.

112.     Motorola denies the allegations of Paragraph 112.

113.     Motorola is without knowledge or information sufficient to form a belief as to the allegations of Paragraph 113 and therefore denies them.

114.     Motorola states that Paragraph 114 purports to assert legal conclusions to which Motorola is not obligated to respond and therefore denies the allegations of Paragraph 114.

115.     Motorola denies the allegations of Paragraph 115.

116.     Motorola denies the allegations of Paragraph 116.

## COUNT 3C
### (Waiver)

117.     No response to Paragraph 117 is required, because Count IIIC (Waiver) has been dismissed.

118.     No response to Paragraph 118 is required, because Count IIIC (Waiver) has been dismissed.

119.     No response to Paragraph 119 is required, because Count IIIC (Waiver) has been dismissed.

120.     No response to Paragraph 120 is required, because Count IIIC (Waiver) has been dismissed.

## COUNT 3D
### (Declaratory Judgment That Motorola's Offers Do Not Comply With Its Obligations)

121.     No response to Paragraph 121 is required, because Count IIID (Declaratory Judgment) has been dismissed.

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 14
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

122.    No response to Paragraph 122 is required, because Count IIID (Declaratory Judgment) has been dismissed.

123.    No response to Paragraph 123 is required, because Count IIID (Declaratory Judgment) has been dismissed.

124.    No response to Paragraph 124 is required, because Count IIID (Declaratory Judgment) has been dismissed.

MICROSOFT'S PRAYER FOR RELIEF

Motorola denies that Microsoft is entitled to any of the relief requested in its Prayer for Relief or any relief whatsoever.  Motorola denies all allegations of the Counterclaims not specifically admitted above.

AFFIRMATIVE DEFENSES TO MICROSOFT'S COUNTERCLAIMS

Motorola asserts the following affirmative and other defenses set forth below, and in making such defenses does not concede that it bears the burden of proof as to any of them. Discovery has not yet begun in this matter, and therefore Motorola has not yet fully collected and reviewed all of the information and materials that may be relevant to the matters and issues raised herein.  Accordingly, Motorola reserves the right to amend, modify, or expand these defenses and to take further positions as discovery proceeds in this matter.

FIRST AFFIRMATIVE DEFENSE
(Noninfringement)

1.    Motorola has not been and is not now infringing any valid and enforceable claim of the '780 or '582 Patents, either directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise.

SECOND AFFIRMATIVE DEFENSE
(Invalidity)

2.    Each and every claim of the '780 and '582 patents is invalid for failure to comply with the conditions of patentability, including but not limited to 35 U.S.C. §§ 101, 102, 103, 111, and/or 112.

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 15
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

### THIRD AFFIRMATIVE DEFENSE
### (Prosecution History Estoppel)

3.       By virtue of statements made, amendments made, or positions taken during the prosecution of the applications for the '780 and '582 patents and/or related patents or patent applications, Microsoft is estopped from construing any claim of those patents to cover or include, either literally or under the doctrine of equivalents, any Motorola product, system, or process.

### FOURTH AFFIRMATIVE DEFENSE
### (Failure to Mark)

4.       Upon information and belief, Microsoft's pre-lawsuit claims for damages as to the asserted patents are barred, in whole or in part, for failure to comply with 35 U.S.C. § 287

### FIFTH AFFIRMATIVE DEFENSE
### (Lack of Irreparable Harm)

5.       Microsoft's demand to enjoin Motorola is barred, as Microsoft has suffered neither harm nor irreparable harm from Motorola's actions.

### SIXTH AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

6.       Microsoft's Counts fail to state a claim upon which relief can be granted.

### SEVENTH AFFIRMATIVE DEFENSE
### (Ripeness)

7.       There is no subject matter jurisdiction for Microsoft's Counts 3A and 3B because they were not ripe for adjudication when filed.

### EIGHTH AFFIRMATIVE DEFENSE
### (Forfeiture/Repudiation)

8.       Microsoft's Counts 3A and 3B are barred because, by failing to apply for a RAND license and to negotiate the terms of a RAND license and instead filing the present action, Microsoft breached the contract to which it claims to be a third party beneficiary, and failed to satisfy the conditions precedent to any obligations that it was owed as an alleged third party beneficiary, and thereby forfeited all benefits of any purported RAND statement made by Motorola.

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 16
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

NINTH AFFIRMATIVE DEFENSE
(Waiver)

9.     Microsoft's Counts 3A and 3B are barred by the doctrine of waiver.

TENTH AFFIRMATIVE DEFENSE
(Judicial Estoppel)

10.     Microsoft's Counts 3A and 3B are barred by the doctrine of judicial estoppel.

ELEVENTH AFFIRMATIVE DEFENSE
(Unclean Hands)

11.     Microsoft's Counts 3A and 3B are barred by the doctrine of unclean hands.

TWELFTH AFFIRMATIVE DEFENSE
(Failure to Mitigate)

12.     Microsoft's Counts 3A and 3B are barred by its failure to mitigate its claimed damages.

THIRTEENTH AFFIRMATIVE DEFENSE
(Failure to Satisfy a Condition Precedent)

13.     Microsoft's Counts 3A and 3B are barred because Microsoft failed to satisfy a condition precedent.

FOURTEENTH AFFIRMATIVE DEFENSE
(Duplicative Causes of Action)

14.     Microsoft's Counts 3A and 3B are barred because they are duplicative of Microsoft's Amended And Supplemental Complaint.

MOTOROLA'S COUNTERCLAIMS

Motorola Mobility, Inc., Motorola Solutions, Inc., and General Instrument Corporation ("General Instrument") (collectively or separately in the following Counterclaims, "Motorola"), counterclaim against Microsoft Corporation ("Microsoft") as follows:

PARTIES

1.     Motorola Mobility is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 600 North U.S. Highway 45,

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 17
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1    Libertyville, Illinois 60048.  Motorola Mobility is a wholly owned subsidiary of Motorola

2    Mobility Holdings, Inc.

3           2.      General Instrument Corporation is a corporation organized and existing under the

4    laws of the State of Delaware, having a principal place of business at 101 Tournament Drive,

5    Horsham, Pennsylvania 19044. General Instrument is a wholly-owned subsidiary of Motorola

6    Mobility Holdings, Inc.

7           3.      Motorola Solutions, Inc. (f/k/a Motorola, Inc.) is a corporation organized and

8    existing under the laws of the State of Delaware, having a principal place of business at 1303 East

9    Algonquin Road, Schaumburg, Illinois 60196.

10          4.      On information and belief, Microsoft is a corporation organized and existing under

11   the laws of the State of Washington having its principal place of business at One Microsoft Way,

12   Redmond, Washington 98052.

13                               JURISDICTION AND VENUE

14          5.      Motorola's First and Second Counterclaims arise under the patent laws of the

15   United States, 35 U.S.C. §§ 101 *et seq.*  This Court has subject matter jurisdiction over these

16   counterclaims for declaratory relief under the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and

17   2202, under the laws of the United States concerning actions relating to patents, 28 U.S.C. §

18   1338(a), and under 28 U.S.C. § 1331.

19          6.      This Court has jurisdiction over the subject matter of the Third and Fourth

20   Counterclaims pursuant to 28 U.S.C. § 1332, because this is an action between citizens of different

21   states and because the value of declaratory relief sought, the value of Motorola's rights these

22   Counterclaims will protect and enforce, Motorola's damages, and the extent of the injury to be

23   prevented exceed the amount of $75,000, exclusive of interest and costs.  This Court also has

24   jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1367 because

25   Motorola's claims are so related to claims in Microsoft's action within such original jurisdiction

26   that they form part of the same case or controversy   This Court has subject matter jurisdiction

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 18
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  over these counterclaims for declaratory relief under the Declaratory Judgments Act, 28 U.S.C. §§

2  2201 and 2202, under the laws of the United States concerning actions relating to patents, 28

3  U.S.C. § 1338(a), and under 28 U.S.C. § 1331.

4      7.    Personal jurisdiction is proper in this Judicial District at least because Microsoft is

5  a resident of this Judicial District, and has consented to jurisdiction in this Judicial District by

6  filing the original 1823 action against Motorola in this Court, filing a Joint Status Report in this

7  action, and engaging in preliminary discovery against Defendants and third parties in this action.

8      8.    Venue is proper in this Judicial District for the counterclaims pursuant to 28 U.S.C.

9  §§ 1391(b), (c), (d), and 1400(b).

10                    FIRST COUNTERCLAIM
          (Declaration of Non-Infringement and Invalidity of U.S. Patent No. 6,339,780)

11      9.    Motorola incorporates by reference as if fully set forth herein the averments

12  contained within Paragraphs 1-8 of these Counterclaims.

13      10.   By the filing of Microsoft's Answer and Counterclaims, Microsoft has purported to

14  assert claims against Motorola for the alleged infringement of the '780 patent.

15      11.   Motorola denies Microsoft's infringement allegations.

16      12.   The claims of the '780 patent are invalid or unenforceable for failure to satisfy one

17  or more of the requirements of Title 35 of the United States Code, including without limitation 35

18  U.S.C. §§ 101, 102, 103, 111, and/or 112.

19      13.   Accordingly, there exists a substantial and continuing justiciable controversy

20  between Microsoft and Motorola as to the infringement, validity, and enforceability of the '780

21  patent.

22      14.   Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201, *et seq.*,

23  Motorola is entitled to a judgment finding that the '780 patent is not infringed by any of

24  Motorola's products, services, or processes and that every claim of the '780 patent asserted by

25  Microsoft against Motorola is invalid and/or unenforceable.

26

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

SECOND COUNTERCLAIM
(Declaration of Non-Infringement and Invalidity of U.S. Patent No. 7,411,582)

15.    Motorola incorporates by reference as if fully set forth herein the averments contained within Paragraphs 1-8 of these Counterclaims.

16.    By the filing of Microsoft's Answer and Counterclaims, Microsoft has purported to assert claims against Motorola for the alleged infringement of the '582 patent.

17.    Motorola denies Microsoft's infringement allegations.

18.    The claims of the '582 patent are invalid or unenforceable for failure to satisfy one or more of the requirements of Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, 111, and/or 112.

19.    Accordingly, there exists a substantial and continuing justiciable controversy between Microsoft and Motorola as to the infringement, validity, and enforceability of the '582 patent.

20.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201, *et seq.*, Motorola is entitled to a judgment finding that the '582 patent is not infringed by any of Motorola's products, services, or processes and that every claim of the '582 patent asserted by Microsoft against Motorola is invalid and/or unenforceable.

THIRD COUNTERCLAIM
(Declaratory Judgment That Motorola Has Not Breached Any RAND Obligations)

Standards Development Organizations and RAND

21.    Motorola incorporates by reference as if fully set forth herein the averments contained within Paragraphs 1-8 of these Counterclaims.

22.    To facilitate interoperability among electronic devices including desktops, laptops, smartphones, televisions, and tablets, companies such as Microsoft and Motorola participate in standard development organization ("SDOs") that develop and establish technical standards for the industry.

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 20
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

23.     For example, a standards-compliant laptop can wirelessly connect to the Internet whether it is at the user's home, office, hotel room, at the local coffee shop, or even on an airplane. A consumer with a standards-compliant laptop thus has confidence that wireless access points are likely to utilize the same standard.  Likewise, devices and software that are compliant with video coding standards ensure that the creators and consumers of video content can enjoy the content without having to worry whether the video is being encoded or decoded in the proper format.

24.     Standards thus play a role in the development of wireless networking and video coding technologies.  Standards facilitate the adoption and advancement of technology as well as the development of products that can interoperate with one another.  Companies that produce products compatible with a standard or specification can design products by referencing only the standard or specification's documentation, without the need to communicate separately with every other company with which their products may need to operate.  Companies producing products that implement and are tested to a standard facilitate interoperability among different products, and consumers of those products can be confident that products from multiple vendors will work together as intended under the standard.

25.     As a practical matter, the technologies that are used to allow a consumer electronics device to operate within a wireless network, or encode or decode video, must be described in standards adopted by a recognized SDO, and thereby accepted by industry members, in order to be commercially successful.

26.     Because implementation of a standard can require practicing patent rights that cover various aspects of the standard, SDOs often grant licenses to or require members to license these "essential patent claims" to other entities seeking to implement the standard.  SDOs have adopted practices that address disclosure and licensing of essential patent claims that cover various aspects of the standard and will be implicated by implementation of the standard.  These practices include cross-licensing agreements, establishment of intellectual property ("IP") policies setting out licensing obligations for owners of patents covering essential patent claims, disclosure

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO MICROSOFT CORPORATION'S COUNTERCLAIMS ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 21 CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1    requirements for essential patent claims, and procedures for proposing and adopting changes to the

2    standard.

3            27.     SDOs often request or require that their members under certain circumstances agree

4    to provide or negotiate licenses to the essential patent claims on reasonable and non-

5    discriminatory ("RAND") terms.  There is no common understanding of what constitutes a RAND

6    license or RAND royalty rate, and the particular RAND rate for a given patent or portfolio for a

7    particular licensee will depend on a number of varying factors and considerations.

8            28.     While there is no common understanding or definition of a RAND license or a

9    RAND royalty rate, as a matter of practice, typical licenses covering essential patent claims have

10   several common features.  First and most importantly, the licenses and the royalty rates contained

11   therein are negotiated on a bilateral basis.  While the terms of the RAND license are negotiated,

12   there are several licensing terms that typically appear in a license between sophisticated parties,

13   and compensation is just one of them.  Besides compensation, grant backs, field of use (or scope

14   of use), sublicensability, reciprocity, defensive suspension, and choice of law are some of the

15   negotiated terms typically included in a RAND license.  How each of these terms is articulated can

16   vary extensively.  Microsoft's own General Manager of Standards Strategy, Amy Marasco, has

17   acknowledged the need for negotiations and the variability of license terms in RAND agreements

18   in presentations she has made to the public.  E.g., "Fair, Reasonable, and Non-Discriminatory:

19   Some Practical Thoughts About FRAND Licensing Commitments" (Mar. 26, 2009), presentation

20   given at Tilberg University, Tilburg Law and Economics Center, Conference on Patent Reforms,

21   *available at* http://www.Tilburguniversity .edu/research/institutes-and-research-

22   groups/tilec/org/patent/amymarasco.pdf (last visited June 13, 2011).

23           29.     In the case of compensation, for example, sophisticated parties routinely enter into

24   license agreements that base the value of the patented inventions as a percentage of the

25   commercial products' sales price.  There are numerous reasons why sophisticated parties use the

26   end product as the royalty base when negotiating and entering into licenses.  First, it simplifies the

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 22
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    negotiations process, and allows the parties to potentially use one blended royalty rate for the

2    various implementations of the declared essential patent claims.  Second, once the parties have

3    entered into the license, the commercial sales price is the most easily verifiable metric for

4    calculating the compensation owed by the licensee to the licensor.  Using the commercial sales

5    price as the royalty base avoids the practical difficulties of verifying and tracking component

6    price.

7                              Motorola's Participation in the IEEE

8         30.    The 802.11 wireless networking protocol, originally released in 1997 and amended

9    several times since, was developed under the patronage of the Institute of Electrical and

10   Electronics Engineers ("IEEE").  Founded in 1963, the IEEE is a New York non-profit

11   professional association dedicated to advancing technological innovation related to electricity.

12   Microsoft and Motorola are both members of IEEE.

13        31.    IEEE is one of the leading SDOs in the world.  The standards development and

14   maintenance functions of the IEEE are done through the IEEE Standards Association ("IEEE-

15   SA").  The IEEE-SA contains a Standards Board, which is responsible, among other things, for

16   encouraging and coordinating the development of IEEE standards.

17        32.    IEEE brings important market participants in the electronics wireless

18   communications sector together.  Within the context of the IEEE-SA, members such as Motorola

19   and Microsoft can help develop technical standards, which often lead to an industry standard.

20        33.    Many IEEE members, including Motorola, are engaged in research and

21   development of wireless technologies, and own intellectual property rights relating to different

22   elements of such technologies.  Accordingly, when IEEE adopts technical standards, it must take

23   into account that many elements of the standards are likely to be covered by such intellectual

24   property rights.  Therefore, others wishing to exploit the standard may need licenses to use the

25   essential intellectual property rights.

26

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 23
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

34.     IEEE has therefore adopted policies and procedures to describe the manner in which IEEE will take account of such intellectual property rights in the process leading to the adoption of IEEE standards.  Likewise, IEEE has adopted policies and procedures to describe the different circumstances and conditions whereby a prospective implementer of the technical standard may obtain a license to such intellectual property rights.

35.     In addition to the IEEE's policies and procedures, members often submit Letters of Assurance that set forth the terms and conditions under which they are willing to grant licenses to intellectual property assets relating to different portions of the relevant technical standards.

36.     The IEEE-SA has created and updates the IEEE-SA Standards Board Bylaws, which provide specific policies that relate to the management and creation of approved IEEE standards.

37.     Clause 6 of the IEEE-SA Standards Board Bylaws describes the circumstances under which a holder of an essential patent claim discloses such technology to the IEEE and licenses third parties to these claims.

38.     While the IEEE requests that parties with essential patent claims submit licensing assurances, the Standards Board Bylaws state that these assurances are to be provided "without coercion."

39.     A party with essential patent claims can submit a Letter of Assurance to the IEEE that generally falls in one of two categories.  Under the first category, the submitter of the Letter of Assurance can state that it will not enforce any present or future patent claims against any person using the patents to comply with the standard.

40.     The second type of Letter of Assurance dictated by the IEEE-SA Standards Board Bylaws is what is commonly known as the "RAND assurance."  While the Bylaws have changed slightly over the years, they generally describe this second type of Letter of Assurance as "[a] statement that a license for a compliant implementation of the standard will be made available to an unrestricted number of applicants on a worldwide basis without compensation or under

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 24
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1   reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair

2   discrimination."

3         41.     The IEEE-SA Standards Board Bylaws further state that "[n]o license is implied by

4   the submission of a Letter of Assurance," and that "[t]he IEEE is not responsible for . . .

5   determining whether any licensing terms or conditions provided in connection with submission of

6   a Letter of Assurance, if any, or in any licensing agreements are reasonable or non-

7   discriminatory."  In other words, it is widely understood that the responsibility of determining

8   RAND terms and conditions is delegated to essential patent claim holders and prospective

9   implementers, both of whom are expected to negotiate a RAND rate through bilateral negotiations.

10  This has been recognized by Microsoft's own General Manager for Standards Strategy, Amy

11  Marasco, in presentations she has made to the public., *E.g*., "Standards-Setting, IPR Policies and

12  Stakeholder Considerations" (Dec. 9, 2009), presentation given at the Japanese Industrial

13  Standards Committee, Symposium on Standardization and International Intellectual Property: The

14  Functioning of Patent Policies and Pools in the Implementation of Standards, and How to Handle

15  the Hold-Up Problem, *available at* http://www.jisc.go.jp/policy/ kenkyuukai/ipr/pdf/S3-

16  3_Marasco.pdf (last visited June 13, 2011).  This has also been acknowledged by the American

17  Bar Association's Committee on Technical Standardization, Section of Science & Technology

18  Law in its *Standards Development Patent Policy Manual* 48-50 (2007).

19        42.     Separate from the IEEE-SA Standards Board Bylaws, the IEEE-SA Board of

20  Governors created and amends the IEEE Standards Association Operations Manual, which

21  "provides specific objectives and policies that relate to standards activities in the IEEE."  The

22  purpose of the Operations Manual is "to provide specific policies that relate to the management

23  and creation of approved IEEE standards."  In terms of precedence, the IEEE-SA Standards Board

24  Bylaws dictate that the "Bylaws shall conform to the policies of the IEEE Standards Association

25  Operations Manual."

26

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 25
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

43.     Clause 6.3.1 (Public Notice) of the IEEE-SA Operations Manual explains that RAND licensing assurances only extend to parties that apply for such licenses, and that parties that implement IEEE standards such as the 802.11 wireless protocol without a license do so at their own risk (emphasis added):

> The following notice shall appear when the IEEE receives assurance from a claimed patent holder or patent applicant prior to the time of publication that a license will be made available ***to all applicants*** either without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination.

> Attention is called to the possibility that implementation of this standard may require use of subject matter covered by patent rights. By publication of this standard, no position is taken with respect to the existence or validity of any patent rights in connection therewith. A patent holder or patent applicant has filed a statement of assurance that it will grant licenses under these rights without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination ***to applicants desiring to obtain such licenses***. Other Essential Patent Claims may exist for which a statement of assurance has not been received. The IEEE is not responsible for identifying Essential Patent Claims for which a license may be required, for conducting inquiries into the legal validity or scope of Patents Claims, or determining whether any licensing terms or conditions provided in connection with submission of a Letter of Assurance, if any, or in any licensing agreements are reasonable or non-discriminatory. ***Users of this standard are expressly advised that determination of the validity of any patent rights, and the risk of infringement of such rights, is entirely their own responsibility.*** Further information may be obtained from the IEEE Standards Association.

44.     Over the years, Motorola has submitted Letters of Assurance stating that it will be willing to grant to interested applicants a license on reasonable and non-discriminatory terms to patents that are essential to a specified 802.11 wireless standard or amendment.

## Motorola's Participation in the ITU-T

45.     The ITU-T Rec. H.264 - ISO/IEC 14496-10 Advanced Video Coding (AVC) ("ITU-T Rec. H.264"), released in 2003 and since amended, was jointly developed by the

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 26
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

International Telecommunication Union ("ITU-T") and the International Organization for
Standardization/International Electrotechnical Commission ("ISO/IEC").

46.    Founded in 1865, the ITU is the oldest international organization in the United
Nations family, and is the leading United Nations agency for information and communication
technology issues.  The ITU is the global focal point for governments and the private sector in
developing networks and services.

47.    The ITU Telecommunication Standardization Sector ("ITU-T") is one of the three
divisions of the ITU, and coordinates standards for the telecommunications sector.  Headquartered
in Geneva, Switzerland, the ITU-T is responsible for development and maintenance of thousands
of technical standards, the ITU-T Recommendation H.264 being just one.  Microsoft and Motorola
are both members of ITU-T.

48.    ISO and IEC, along with the ITU, are three global sister organizations that develop
international standards for the world.  The ISO is the world's largest developer of and publisher of
international standards.  IEC is the world's leading organization that prepares and publishes
international standards for all electrical, electronic and related technologies.

49.    When appropriate, ITU, ISO, and IEC cooperate to develop and publish standards.

50.    The ITU/ISO/IEC members that jointly developed and published ITU-T Rec.
H.264 - ISO/IEC 14496-10 Advanced Video Coding (AVC) are known as the Joint Video Team
("JVT").

51.    ITU/ISO/IEC bring important market participants in video coding technology
together.  Within the context of the ITU/ISO/IEC, members such as Motorola and Microsoft can
help develop technical recommendations, which often lead to an industry recommendation.

52.    Many ITU/ISO/IEC members, including Motorola, are engaged in research and
development of video coding technology, and own intellectual property rights relating to different
elements of such technologies.  Accordingly, when the ITU/ISO/IEC adopt technical
recommendations, they must take into account that elements of the standards are likely to be

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 27
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1  covered by such intellectual property rights.  Therefore, others wishing to exploit the standard may

2  need a license to use the essential intellectual property rights.

3      53.    ITU/ISO/IEC have adopted guidelines to describe the manner in which

4  ITU/ISO/IEC will take account of such intellectual property rights in the process leading to the

5  adoption of standards.  Likewise, ITU/ISO/IEC have adopted guidelines to describe the different

6  circumstances and conditions whereby a prospective implementer of the technical standard may

7  obtain a license to such intellectual property rights.

8      54.    In addition to the ITU/ISO/IEC policies and procedures, members often submit

9  Patent Statement and Licensing Declaration Forms, and/or General Patent and Licensing

10 Declaration Forms, that set forth the terms and conditions under which they are willing to grant

11 licenses to intellectual property assets relating to different portions of the relevant technical

12 standards.

13     55.    The ITU, ISO, and IEC publish the "Common Patent Policy for ITU-T/ITU-

14 R/ISO/IEC", "a 'code of practice' regarding patents covering, in varying degrees, the subject

15 matters of ITU-T Recommendation. . . ."  The Common Patent Policy is incorporated as Annex 1

16 into the Guidelines for Implementation of the Common Patent Policy for ITU-T/ITU-R/ISO/IEC

17 ("ITU Guidelines").  While the Common Patent Policy helps guide the relationship between

18 essential patent holders and prospective implementers, "[t]he detailed arrangements arising from

19 patents (licensing, royalties, etc.) are left to the parties concerned, as these arrangements might

20 differ from case to case."

21     56.    Under the Common Patent Policy, once a standard Recommendation is developed,

22 three situations may arise: (1) the patent holder is willing to negotiate royalty-free RAND licenses;

23 (2) the patent holder is willing to negotiate royalty-bearing RAND licenses; and (3) the patent

24 holder is not willing to negotiate RAND licenses. The Common Patent Policy then states that

25 regardless of whatever situation applies, the patent holder should submit a Patent Statement and

26

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 28
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1   Licensing Declaration Form that is consistent with the sample form provided in Annex 2 of the

2   ITU Guidelines.

3          57.     The sample Patent Statement and Licensing Declaration Form expands on the three

4   situations described in the Common Patent Policy, and states in relevant part (as check box #2)

5   (emphasis added):

6                  The Patent Holder is prepared to grant a license *to an unrestricted
                   number of applicants* on a worldwide, non-discriminatory basis and
7                  on reasonable terms and conditions to make, use, and sell
                   implementations of the above document.
8
                   *Negotiations are left to the parties* concerned and are performed
9                  outside the ITU-T, ITU-R, ISO, or IEC.

10                 Also mark here _____ if the Patent Holder's willingness to license is
11                 conditioned on reciprocity for the above document.

12         58.     Over the years, Motorola and its predecessors have submitted Patent Statement and

13  Licensing Declaration Forms in relation to ITU-T Rec. H.264.  Every one of these submissions

14  selected check box #2, *i.e.*, that:  (1) Motorola was willing to provide royalty-bearing RAND

15  licenses to its H.264 patents, but only to those who first apply for such licenses; (2) the

16  determination of the terms for such RAND license was to be negotiated outside the ITU-T, ISO,

17  and IEC, on a bilateral basis; (3) Motorola's willingness to license was conditioned on the

18  prospective applicant also agreeing to license its own essential patent claims.

19    Microsoft's Implementation of the 802.11 Wireless Networking Standard in Its Products

20         59.     Microsoft introduced the Xbox video game console worldwide beginning in

21  November 2001.  The original Xbox console featured an integrated Ethernet port for network

22  connectivity.

23         60.     As a follow-up to its Xbox video game console, Microsoft announced the Xbox

24  360 console in November 2005.  One of the two models released at launch in the United States

25  was Xbox 360 Core, which retailed for $299.  At or near launch, Microsoft released the Xbox 360

26  Wireless Adapter in the United States, retailing at $99.  According to Microsoft, this product is

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 29
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

compliant with the a, b, and g amendments to the IEEE 802.11 specification.  The Wireless

Adapter was designed to add wireless networking functionality to existing Xbox 360 consoles by

allowing them to connect to 802.11 a/b/g networks.

61.     On November 9, 2009, Microsoft announced the Xbox 360 Wireless N Adapter in

the United States, retailing at $99.  According to Microsoft, this product is complaint with the a, b,

g, and n amendments to the IEEE 802.11 specification.  The Wireless N Adapter was designed to

add wireless networking functionality to existing Xbox 360 consoles by allowing them to connect

to 802.11 a/b/g/n networks.  At the time the Wireless N Adapter went on sale, Microsoft quoted a

$199 retail price for its Xbox 360 Arcade console, which lacked 802.11 wireless functionality.

62.     On June 14, 2010, Microsoft announced an update to its Xbox 360 consoles.  These

new consoles were known as the Xbox 360 S line of consoles.  While there were several changes

made to the new consoles over the previous generation, by most accounts and even according to

Microsoft, integrated Wi-Fi technology was the most significant.  For example, the Xbox 360 4GB

Console product page has the integrated Wi-Fi technology as the first feature listed on both the

Overview and What You Get webpages.  At debut, the Xbox 360 GB Console retailed at $199.99,

and currently retails at this same price.

63.     As consumers' use of the Xbox 360 console becomes increasingly tied to

connecting to the Internet—e.g., to play games, watch Netflix movies, and chat with friends—

Wi-Fi functionality has become an increasingly important feature of the Xbox 360 platform.

Microsoft's Implementation of the ITU-T H.264 Recommendation in Its Products

64.     Microsoft sells products and software that includes encoders and decoders that are

advertised as being compliant with H.264, including Windows 7, Windows Phone 7, and Xbox

gaming consoles.

65.     Upon information and belief, the ability to encode and decode H.264 video streams

is an important feature of Microsoft's product offerings.  For example, Microsoft advertises to

"use your Xbox360 console to watch movies and DVDs," and states that the Xbox360 supports

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 30
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

H.264 main and high video profiles.  See, e.g., http://support.xbox.com/en-us/pages/xbox-360/how-to/watch-dvds-movies.aspx.  Microsoft also produces instructional materials (available at, e.g., http://windows.microsoft.com/en-US/windows/explore, http://technet.microsoft.com, http://support.microsoft.com, and http://msdn.microsoft.com) that promote the use of Windows 7 to encode and decode video, and states that "in Windows 7, Media Foundation includes the following new codecs: . . . H.264 video decoder, H.264 video encoder" (http://msdn.microsoft.com/enus/library/ bb970511(VS.85).aspx). Microsoft also features Windows Phone 7 video coding capability (http://www.microsoft.com/windowsphone/ en-us/features/default.aspx), and states that Windows Phone supports the H.264 codec (http://msdn.microsoft.com/en-us/library/ff462087(v=vs.92).aspx).

### Microsoft's Repudiation and Rejection of any RAND Benefit and Motorola's Conformance With Its RAND Obligations

66.    Microsoft acknowledges that it had knowledge of Motorola's participation in the 802.11 standards setting process, and that it had actual or constructive notice of Motorola's Letters of Assurance to the IEEE.  (Amended and Supplemental Complaint, ¶¶ 3, 7, 56-58, 91). Microsoft alleges that it developed and marketed its products and services, including making its products and services compliant with 802.11 standards and technologies, in reliance on Motorola's participation in the standards setting process and Motorola's Letters of Assurance. (Amended And Supplemental Complaint, ¶¶ 7, 56-58, 91).  However, prior to implementing the 802.11 standard in its products, Microsoft never applied to Motorola for a license to Motorola's patents that are or may be essential to the 802.11 standard.  In fact, as of the date of these Counterclaims, after having imported, made, used, sold, or offered for sale 802.11-compliant products for at least five years, Microsoft still has not applied for a license to Motorola's patents that are or may be essential to the 802.11 standard.

67.    Because Microsoft implemented its 802.11-compliant products without first applying for and negotiating the terms of a license and subsequently instituted this action for breach of contract, Microsoft has rejected and repudiated any right to a RAND license to

1    Motorola's essential patent claims, and failed to satisfy the conditions precedent to any such right.

2    As a result, Motorola was entitled to sue Microsoft for patent infringement and seek all available

3    remedies.

4         68.    Notwithstanding Microsoft's failure to have applied for a license under Motorola's

5    802.11 patents, on October 21, 2010, Motorola sent a letter to Microsoft offering a license on

6    RAND terms to Motorola's patents and patent applications that are or may be essential to the

7    IEEE 802.11 standard.  In the letter, Motorola expressed a willingness to negotiate and ultimately

8    provide a license to Motorola's 802.11 patents and patent applications on RAND terms.  The letter

9    proposed one of the several licensing terms that would eventually need to be negotiated if

10   Microsoft was willing to negotiate a RAND license – a 2.25% royalty rate to be applied to

11   Microsoft products that implement the 802.11 standard.  The letter requested that Microsoft be

12   willing to grant back to Motorola a license on RAND terms under Microsoft's own 802.11 patents

13   and patent applications.  Finally, the letter stated that if Microsoft was only interested in a license

14   for a portion of Motorola's patents and patent applications related to the 802.11 standard,

15   Motorola was willing to negotiate and provide a license to such patents and applications, also on

16   RAND terms.  Motorola did not propose any of the terms that would potentially be included in a

17   license to a portion of Microsoft's portfolio.

18        69.    On November 9, 2011, Microsoft sued Motorola in the present action without

19   responding to the October 21, 2010 letter.   Microsoft's refusal to negotiate the terms of a RAND

20   license in response to this letter independently constituted a rejection and repudiation of a right to

21   a RAND license under Motorola's 802.11 patents and patent applications.  Microsoft's filing of

22   this lawsuit independently constitutes a further rejection and repudiation of a right to a RAND

23   license under Motorola's 802.11 patents and patent applications.

24        70.    To this day, Microsoft continues to implement the 802.11 standard in its products

25   and thereby infringe Motorola's patents without a license.  Microsoft has not paid Motorola for

26   Microsoft's past and continuing infringement, has not agreed that it needs to pay RAND

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 32
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  compensation to Motorola, and refuses to agree to be bound by a RAND license, even one

2  determined by this Court.

3      71.    Microsoft acknowledges that it had knowledge of Motorola's participation in the

4  H.264 standards setting process, and that it had actual or constructive notice of Motorola's Patent

5  Statements and Licensing Declarations to the ITU.  (Amended and Supplemental Complaint, ¶¶ 7,

6  60-63, 91)  Microsoft alleges that it developed and marketed its products and services, including

7  making its products and services compliant with the H.264 Recommendation, in reliance on

8  Motorola's participation in the standards setting process and Motorola's Declarations (Amended

9  and Supplemental Complaint, ¶¶ 7, 60-63, 91).  However, prior to implementing the H.264

10  Recommendation in its products, Microsoft never applied for a license to Motorola's patents that

11  are or may be essential to the H.264 Recommendation.  In fact, as of the date of these

12  Counterclaims, after having imported, made, used, sold, or offered for sale H.264-compliant

13  products for at least four years, Microsoft still has not applied for a license to Motorola's patents

14  that are or may be essential to the H.264 Recommendation.

15      72.    Because Microsoft implemented H.264-compliant products without first applying

16  for a license and subsequently instituted this action for breach of contract, Microsoft has rejected

17  and repudiated any right to a RAND license under Motorola's essential patent claims, and failed to

18  satisfy the conditions precedent to any such right.  As a result, Motorola was entitled to sue

19  Microsoft for patent infringement and seek all available remedies.

20      73.    Notwithstanding Microsoft's failure to have applied for a license under Motorola's

21  H.264 patents, on October 29, 2010, Motorola sent a letter to Microsoft offering a license on

22  RAND terms under Motorola's patents and patent applications that are or may be essential to the

23  ITU H.264 Recommendation.  In the letter, Motorola expressed a willingness to negotiate and

24  ultimately provide a license on RAND terms to Motorola's H.264 patents and patent applications.

25  The letter proposed one of the several licensing terms that would eventually need to be negotiated

26  if Microsoft was willing to negotiate a RAND license – a 2.25% royalty rate to be applied to

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 33
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   Microsoft products that implement the H.264 standard.  The letter required that Microsoft be

2   willing to grant back to Motorola a license on RAND terms under Microsoft's own H.264 patents

3   and patent applications.  Finally, the letter stated that if Microsoft was only interested in a license

4   for a portion of Motorola's patents and patent applications related to the H.264 Recommendation,

5   Motorola was willing to negotiate and provide a license under such patents and applications, also

6   on RAND terms.  Motorola did not propose any of the terms that would potentially be included in

7   a license to a portion of Microsoft's portfolio.

8          74.    On November 9, 2011, Microsoft sued Motorola in the present action without

9   responding to the October 29, 2010 letter.   Microsoft's refusal to negotiate a license in response to

10  this letter independently constituted a rejection and repudiation of a right to a RAND license under

11  Motorola's H.264 patents and patent applications.  Microsoft's filing of this lawsuit independently

12  constitutes a further rejection and repudiation of a right to a RAND license under Motorola's

13  H.264 patents and patent applications.

14         75.    To this day, Microsoft continues to implement the H.264 Recommendation in its

15  products and infringe Motorola's patents without a license.  Microsoft has not paid Motorola for

16  its past and continuing infringement, has not agreed that it needs to pay RAND compensation to

17  Motorola, and refuses to agree to be bound by a RAND license, even one determined by this

18  Court.

19         76.    In light of Microsoft's refusal to apply for a RAND license to Motorola's 802.11

20  and H.264-related patents and patent applications, refusal to negotiate a RAND license to

21  Motorola's 802.11 and H.264-related patents and patent applications, and bad faith filing of suit in

22  the present action, Motorola instituted patent infringement actions in the Western District of

23  Wisconsin and the United States International Trade Commission on patents related to the 802.11

24  and H.264 standards (the "Patent Actions").  The Patent Actions are *Motorola Mobility, Inc. v.*

25  *Microsoft Corp.*, No. 10-cv-699 (W.D. Wis.) (now included in No. C10-1823 (W.D. Wash.);

26  *Motorola Mobility, Inc. v. Microsoft Corp.*, NO. 10-cv-0700 (W.D. Wis.) (stayed by agreement in

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 34
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1   view of ITC Investigation No. 337-TA-752); and *In re Certain Gaming and Entm't Consoles,*

2   *Related Software, and Components Thereof*, Inv. No. 337-TA-752 (U.S.I.T.C.).  The Motorola

3   patents asserted in these Patent Actions are the "Motorola Patents."

4        77.     Consistent with the provisions of the IP Policies, Motorola submitted Letters of

5   Assurance to the IEEE concerning patents that are or may become essential to the 802.11 standard

6   and submitted Patent Statement and Licensing Declaration Forms to the ITU concerning patents

7   that cover the subject matter of the H.264 standard.

8        78.     Prior to the present action, Motorola sent letters to Microsoft on October 21, 2010

9   and October 29, 2010 offering to license on RAND terms Motorola patents that are or may

10  become essential to the 802.11 and H.264 Standards.  In the letters, Motorola stated its standard

11  terms for a license under its essential patents, stated that any license must include a grant back

12  license to Motorola under Microsoft's essential patents, and offered to negotiate a license for less

13  than its entire portfolio if Microsoft did not want the entire portfolio.

14       79.     Motorola has met and fully discharged any RAND obligations that it owed to

15  Microsoft, through, among other things, its offers to negotiate a RAND license contained in the

16  letters sent by Motorola to Microsoft, even though Microsoft never applied for a license, as

17  required by both SDOs.

18       80.     Motorola seeks a declaration that it has fully complied with and discharged any

19  RAND obligation that it owed to Microsoft.

20       81.     This Court's equitable powers are hereby invoked by this Counterclaim, and

21  Motorola accordingly requests that the Court consider such other relief, equitable or otherwise, as

22  it may find appropriate at the time for entry of judgment in this case in favor of Motorola.

23  FOURTH COUNTERCLAIM<br>(Declaratory Judgment That Microsoft Has Repudiated and/or Rejected the Benefits of

24  Motorola's RAND Statements)

25       82.     Defendants incorporate by reference as if fully set forth herein the averments

26  contained within Paragraphs 1-8 and 22-76 of these Counterclaims.

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 35
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

83.     As a result of Motorola's declaration of its essential patents and/or submission of letters of assurance to the IEEE and/or ITU and submission of undertakings to negotiate licenses on RAND terms to interested applicants, prospective implementers of the 802.11 and H.264 standards must request and negotiate a license under each of such patents on a bilateral basis as a condition precedent to obtaining such a license.

84.     Motorola has fully complied with RAND procedures by, among other things, sending letters to Microsoft on October 21, 2010 and October 29, 2010 offering to license on RAND terms Motorola patents that are or may become essential to the 802.11 and H.264 Standards, even though Microsoft did not fulfill its obligation or satisfy the condition first to have applied for such a license.  In the letters, Motorola provided its standard terms, stated that any license must include a grant back license to Motorola under Microsoft's essential patents, and offered to negotiate a license for less than its entire portfolio if Microsoft did not want the entire portfolio.

85.     Microsoft has repudiated and/or rejected any rights under Motorola's RAND undertakings by, among other things:

        (a)     Failing to apply for a RAND license to Motorola's 802.11 and H.264 portfolios once it had decided to implement the 802.11 and H.264 standards in its products;

        (b)     Failing to accept Motorola's offers to negotiate a RAND license to its 802.11 and H.264 portfolios, on entirely open and undefined terms;

        (c)     Failing to accept Motorola's offers to negotiate a RAND license to its 802.11 and H.264 portfolio, with every term in the license undefined except for the initial offer of a proposed royalty rate;

        (d)     Failing to engage in good faith negotiations for a RAND license to Motorola's 802.11 and H.264 portfolios;

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 36
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

(e)    Failing to commit to pay RAND compensation and/or pay into escrow what Microsoft believes in good faith to be RAND compensation;

(f)    Failing to agree to be bound by a RAND license and pay any RAND royalty determination (even when that RAND license and/or royalty rate is reviewed by a Court).

86.    Microsoft further repudiated and/or rejected any rights under Motorola's RAND undertakings by suing Motorola in the present action in response to Motorola's letters.

87.    Microsoft's conduct is a repudiation and/or rejection by Microsoft to be bound by its obligation to compensate Motorola for its use of patents that are essential to the 802.11 or H.264 standards.  Microsoft's conduct also constitutes a breach of any contract it has with Motorola, directly or indirectly through the SDOs as an alleged third-party beneficiary, for a right to receive a license on RAND terms under Motorola's essential patents, and also a failure to satisfy the conditions precedent to any obligations that it was owed with respect to any such right to a RAND license.

88.    Motorola seeks a declaration that by claiming the benefit of Motorola's RAND statements while refusing to undertake any of the obligations, Microsoft is an unwilling licensee that has, based on the facts of this case, repudiated and/or rejected any rights associated with Motorola's RAND statements, breached Microsoft's alleged contract with Motorola and/or the SSOs, and failed to satisfy the conditions precedent to any obligations that it was owed with respect to any such right to a RAND license.

89.    Motorola seeks a declaration that if the Motorola Patents in the Patent Actions are found by this Court or by the International Trade Commission to comply with the respective Standards, and the patents are valid and enforceable, that Motorola is entitled to seek an injunction enjoining Microsoft from importing, making, using, selling, or offering for sale products and services embodying the claimed inventions of the Motorola Patents.

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 37
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

90.     This Court's equitable powers are hereby invoked by this Counterclaim, and Motorola accordingly requests that the Court consider such other relief, equitable or otherwise, as it may find appropriate at the time for entry of judgment in this case.

MOTOROLA'S PRAYER FOR RELIEF

WHEREFORE, Motorola Mobility, Inc., Motorola Solutions, Inc. and General Instrument, Corp. respectfully request that the Court enter a judgment:

A.      Adjudging that each and every claim of the '780 patent and the '582 patent asserted by Microsoft against Motorola (collectively, the "Microsoft Asserted Patent Claims"), be declared not infringed;

B.      Adjudging that each and every claim of the Microsoft Asserted Patent Claims be declared invalid;

C.      Adjudging that Microsoft take nothing by its Counterclaims and that all of its Counterclaims be dismissed with prejudice;

D.      Enjoining Microsoft and/or any of its successors and attorneys, and all persons in active concert or participation with any of them, from directly or indirectly asserting infringement or instituting any further action for infringement of the Microsoft Asserted Patents against Motorola Mobility, Inc. or General Instrument, Corp., or any of their customers, end-users, agents, suppliers, contractors, consultants, successors, and assigns;

E.      Adjudging that that this is an exceptional case entitling Motorola Mobility, Inc. and General Instrument, Corp. to an award of their attorneys' fees for bringing and prosecuting this action, together with interest, and costs of the action, pursuant to 35 U.S.C. § 285;

F.      That Motorola Mobility, Inc., Motorola Solutions, Inc. and General Instrument, Corp. have complied with any and all obligations to Microsoft with respect to statements they made to IEEE relating to the 802.11 standard, and  to ITU relating to the H.264 Recommendation;

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 38
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1        G.      That Microsoft has repudiated and/or rejected any right to a RAND license under

2    Motorola's 802.11 and H.264 essential patents and, therefore, under the present circumstances

3    Motorola has the right to seek an injunction for Microsoft's infringement of the Motorola Patents;

4        H.      Awarding to Motorola Mobility, Inc., Motorola Solutions, Inc. and General

5    Instrument, Corp. all costs of suit; and

6        I.      Awarding to Motorola Mobility, Inc., Motorola Solutions, Inc. and General

7    Instrument, Corp. such other and further relief as this Court deems just and proper.

8        DATED this 15th day of June, 2011.

9                         SUMMIT LAW GROUP PLLC

10

11                       By /s/ Philip S. McCune
                               Philip S. McCune, WSBA #21081

12                           Lynn M. Engel, WSBA #21934
                           *philm@summitlaw.com*

13                           *lynne@summitlaw.com*

14                       And by

15                       Steven Pepe (*pro hac vice*)
                       Jesse J. Jenner (*pro hac vice*)

16                       Ropes & Gray LLP
                       1211 Avenue of the Americas

17                       New York, NY  10036-8704
                       (212) 596-9046

18                       *steven.pepe@ropesgray.com*
                       *jesse.jenner@ropesgray.com*

19                       Norman H. Beamer (*pro hac vice*)

20                       Gabrielle E. HIggins (*pro hac vice*)
                       Ropes & Gray LLP

21                       1900 University Avenue, 6th Floor
                       East Palo Alto, CA  94303-2284

22                       (650) 617-4030

23                       *norman.beamer@ropesgray.com*
                       *gabrielle.higgins@ropesgray.com*

24

25

26

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

Paul M. Schoenhard (*pro hac vice*)
Ropes & Gray LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC  20005-3948
(202) 508-4693
*paul.schoenhard.@ropesgray.com*

***Attorneys for Defendants Motorola Solutions,
Inc., Motorola Mobility, Inc., and General
Instrument Corporation***

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 40
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the
Court using the CM/ECF system which will send notification of such filing to the following:

3

4

Arthur W. Harrigan, Jr., Esq.
Christopher T. Wion, Esq.

5

Shane P. Cramer, Esq.
Danielson, Harrigan, Leyh & Tollefson LLP

6

*arthurh@dhlt.com*

7

*chrisw@dhlt.com*
*shanec@dhlt.com*

8

9

Brian R. Nester, Esq.
David T. Pritikin, Esq.

10

Douglas I. Lewis, Esq.
John W. McBride, Esq.

11

Kevin C. Wheeler, Esq.
Richard A. Cederoth, Esq.

12

Sidley Austin LLP
*bnester@sidley.com*

13

*dpritikin@sidley.com*
*dilewis@sidley.com*

14

*jwmcbride@sidley.com*
*kwheeler@sidley.com*

15

*rcederoth@sidley.com*

16

T. Andrew Culbert, Esq.

17

David E. Killough, Esq.
Microsoft Corp.

18

*andycu@microsoft.com*
*davkill@microsoft.com*

19

20

J. Donald Best, Esq.
Michael Best & Friedrich LLP

21

*jdbest@michaelbest.com*

22

DATED this 15th day of June, 2011.

23

24

\_\_/s/_____*Marcia A. Ripley*_____

25

Marcia A. Ripley

26

MOTOROLA MOBILITY INC. AND GENERAL INSTRUMENT
CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO
MICROSOFT CORPORATION'S COUNTERCLAIMS
ORIGINALLY FILED IN 3:10-CV-699 (W.D. WIS.) - 41
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001