1

2

3

4

5

The Honorable James L. Robart

6

7

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

MICROSOFT CORPORATION, a Washington
corporation,

9

                              Plaintiff,

10

        v.

11

MOTOROLA, INC., and MOTOROLA
MOBILITY, INC., and GENERAL
INSTRUMENT CORPORATION,

12

13

                              Defendants.

14

15

MOTOROLA MOBILITY, INC., and
GENERAL INSTRUMENT CORPORATION,

16

17

        Plaintiffs/Counterclaim Defendant,

18

        v.

19

MICROSOFT CORPORATION,

20

        Defendant/Counterclaim Plaintiff.

21

CASE NO. C10-1823-JLR

DEFENDANTS' ANSWER, DEFENSES,
AND COUNTERCLAIMS TO
PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT

22

23

        Defendants Motorola Mobility, Inc., Motorola Solutions, Inc. (formerly, Motorola, Inc.)

24

and General Instrument Corporation ("General Instrument") (collectively or separately,

25

"Defendants" or "Motorola"), hereby answer Plaintiff Microsoft Corporation's ("Microsoft")

26

Amended and Supplemental Complaint, as follows:

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 1
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:   (206) 676-7001

NATURE OF THE ACTION

1.      Defendants admit that Microsoft brings its complaint as alleged, deny that Defendants have breached any enforceable commitment to IEEE or ITU or their members or affiliates, state that they remain willing to license their WLAN and H.264 patents to applicants on RAND terms which can only be determined through negotiation between the relevant parties but that Microsoft, by its actions, has repudiated any right to apply for such a license, and deny the remaining allegations of Paragraph 1.

2.      Defendants admit that participants in IEEE standards setting efforts are subject to IEEE bylaws regarding Letters of Assurance, state that they have at all times complied with IEEE bylaws, admit that Microsoft has quoted a portion of a version of Clause 6 of the bylaws, deny that the quoted provisions are complete, and deny the remaining allegations of Paragraph 2.

3.      Defendants admit that they submitted certain Letters of Assurance to the IEEE-SA Standards Board Patent Committee stating that they would, "with respect to any patent(s) and/or patent applications(s) that it may hold or control" "which would be essential to" the WLAN standards, "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide, non-discriminatory basis with reasonable terms and conditions," deny that such Letters of Assurance can form the basis of any claim for relief that Microsoft can make, state that Defendants have in fact granted such licenses to entities who, unlike Microsoft, have engaged in negotiations with Motorola for such licenses, admit that the WLAN standards are now implemented worldwide in a variety of electronic devices that have become commonplace, including devices imported, made, used, sold, or offered for sale by Microsoft, state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second and fourth sentences of Paragraph 3 and therefore deny them, and deny each and every remaining allegation of Paragraph 3.

4.      Defendants admit that participants in ITU-T standards setting efforts are subject to ITU-T's Common Patent Policy regarding Patent Statement and Licensing Declarations, state that

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 2
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  they have at all times complied with ITU-T's Common Patent Policy, admit that Microsoft has

2  quoted a portion of a version of the Common Patent Policy, deny that the quoted provisions are

3  complete, and deny the remaining allegations of Paragraph 4.

4       5.     Defendants admit that they submitted certain Patent Statement and Licensing

5  Declarations pursuant to the ITU's Common Patent Policy regarding the licensing of essential

6  patents, which Declarations speak for themselves, deny that such Declarations can form the basis

7  of any claim for relief that Microsoft can make, state that Defendants have in fact granted such

8  licenses to entities who, unlike Microsoft, have engaged in negotiations with Motorola for such

9  licenses, admit that the H.264 technical standards are now implemented worldwide in a variety of

10  electronic devices and software that have become commonplace, including those imported, made,

11  used, sold, or offered for sale by Microsoft, state that they are without knowledge or information

12  sufficient to form a belief as to the truth of the allegations contained in the second and fourth

13  sentences of Paragraph 5, and therefore deny them, and deny each and every remaining allegation

14  of Paragraph 5.

15       6.     Defendants state that they have not broken any enforceable promise to IEEE-SA or

16  to ITU-T, or their members or affiliates regarding licensing of standards essential patents and that

17  they remain willing to license such patents to applicants who, unlike Microsoft, fulfill their

18  obligations as applicants for such licenses, and deny each and every remaining allegation of

19  Paragraph 6.

20       7.     Defendants state that the first sentence of Paragraph 7 is argumentative and does

21  not allege facts, and therefore deny the allegations of the first sentence, and further state that they

22  are without knowledge or information sufficient to form a belief as to the truth of the allegations

23  contained in the second sentence of Paragraph 7 and therefore deny them.

24       8.     Defendants state that Paragraph 8 purports to assert legal conclusions to which

25  Defendants are not obligated to respond and therefore deny the allegations, and further state that

26

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 3
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1  Defendants remain willing to license essential patents on RAND terms to those who, unlike

2  Microsoft, apply for a license.

3        9.      Defendants admit that Microsoft purports to seek certain judicial declarations and

4  accountings related to the Defendants' WLAN and H.264 video coding patent and technology

5  portfolios, deny that Microsoft is entitled to any such declarations or accountings, state that

6  Microsoft has never applied for a license under Motorola essential patents, refused to negotiate the

7  terms of a license when Motorola offered a license, and further forfeited any right to a RAND

8  license by suing Motorola instead of requesting a RAND license and negotiating terms with

9  Motorola, and deny each and every remaining allegation of Paragraph 9

10        10.     Defendants admit the allegations of Paragraph 10.

11        11.     Defendants admit that Microsoft was founded in 1975, that it provides computer

12  software, services and solutions, is headquartered in Redmond, Washington, are without

13  knowledge or information sufficient to form a belief as to the number of Microsoft employees or

14  square footage of Microsoft facilities and therefore deny those allegations, and deny each and

15  every remaining allegation of Paragraph 11.

16        12.     Defendants are without knowledge or information sufficient to form a belief as to

17  the truth of the allegations of Paragraph 12 and therefore deny them.

18        13.     Defendants admit the allegations contained in the first sentence of Paragraph 13,

19  and state that they are without knowledge or information sufficient to form a belief as to the truth

20  of the allegations contained in the second sentence of Paragraph 13 and therefore deny them.

21        14.     Defendants admit the allegations contained in the first and third sentences of

22  Paragraph 14, and state that they are without knowledge or information sufficient to form a belief

23  as to the truth of the allegations contained in the second sentence of Paragraph 14 and therefore

24  deny them.

25        15.     Defendants state that they are without sufficient knowledge or information to form

26  a belief regarding the truth of the allegations of Paragraph 15 and therefore deny them.

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 4
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

16.     Defendants admit that Microsoft hardware and software products, and personal computers sold by others, provide features including H.264 functionality, and state that they are without sufficient knowledge or information to form a belief regarding the truth of the remaining allegations of Paragraph 16 and therefore deny them.

17.     The Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17, and therefore deny them.

18.     Defendants admit the allegations of Paragraph 18.

19.     Defendants admit that Defendants and Microsoft are citizens of different states, and that Microsoft purports to seek in excess of $75,000 through its Amended and Supplemental Complaint, deny that Microsoft has been damaged or is entitled to judgment or relief against Defendants of any kind, whether monetary or otherwise, deny that this court has jurisdiction to adjudicate Microsoft's claims to the extent that they relate to Defendants' foreign patents or technologies, state that Counts I-IV of the Amended and Supplemental Complaint fail to state a claim upon which relief can be granted and are not ripe for adjudication, and deny each and every remaining allegation of Paragraph 19.

20.     Defendants admit the allegations of Paragraph 20.

21.     Defendants admit the allegations of Paragraph 21.

22.     Defendants admit that technology providers in some instances cooperate in standards development organizations to create standards for the implementation of certain technologies, and state that they are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 22 and therefore deny them.

23.     Defendants admit the allegations of Paragraph 23.

24.     Defendants admit the allegations of Paragraph 24.

25.     Defendants admit the allegations of Paragraph 25.

26.     Defendants admit that SDOs have adopted rules, policies and procedures that address the disclosure and licensing of patents that SDO participants may assert in relation to the

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 5
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    practice of the standard under consideration, and that these rules, policies and/or procedures are set

2    out in the intellectual property rights policies ("IPR policies") of the SDOs, and deny the

3    remaining allegations of Paragraph 26.

4         27.     Defendants admit that many IPR policies relate to patents and patent applications,

5    and that these policies speak for themselves, and deny the remaining allegations of Paragraph 27.

6         28.     Defendants admit that many IPR policies relate to patents and patent applications,

7    and that these policies speak for themselves, and deny the remaining allegations of Paragraph 28.

8         29.     Defendants deny the allegations of Paragraph 29.

9         30.     Defendants admit the allegations of Paragraph 30.

10        31.     Defendants admit the allegations of Paragraph 31.

11        32.     Defendants admit the allegations of the first and second sentences of Paragraph 32

12    and admit that there has been a number of amendments issued to the 802.11 protocol, and deny the

13    remaining allegations of Paragraph 32.

14        33.     Defendants deny the allegations of Paragraph 33.

15        34.     Defendants admit the allegations of Paragraph 34.

16        35.     Defendants admit the allegations of Paragraph 35.

17        36.     Defendants admit the allegations of Paragraph 36.

18        37.     Defendants admit the allegations of Paragraph 37.

19        38.     Defendants admit the allegations of Paragraph 38.

20        39.     Defendants admit that certain IEEE-SA Letters of Assurance provide that "This

21    assurance applies from the date of the standard's approval to the date of the standard's withdrawal

22    and is irrevocable upon acceptance by the IEEE-SA Standards Board Patent Committee", and

23    deny the remaining allegations of Paragraph 39.

24        40.     Defendants are without knowledge or information sufficient to form a belief as to

25    the truth of the allegations of Paragraph 40 and therefore deny them.

26

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 6
CASE NO. C10-1823-JLR

41.     Defendants admit that, in a letter sent from Motorola Inc. to Microsoft's Horatio Gutierrez on October 21, 2010, Motorola, Inc. stated that it owns rights in a number of patents and pending applications that are or may become "essential" to comply with one or more amendments to the 802.11 standard, deny that Appendix A of Microsoft's Answer and Amended and Supplemental Complaint contains the full list of patents that Motorola, Inc. stated are or may become "essential" to comply with one or more amendments to the 802.11 standard, further state that the Annex to the October 21, 2010 letter from Motorola, Inc. to Microsoft's Horatio Gutierrez listed 47 U.S. and 179 foreign patents, and 5 U.S. and 26 foreign applications, that are or may become "essential" to one or more amendments to the 802.11 standard, further state that the allegations of the last sentence of Paragraph 41 do not contain facts and are argumentative and therefore deny them, and deny the remaining allegations of Paragraph 41.

42.     Defendants admit that Motorola, Inc. obtained rights to certain of the patents listed in the October 21, 2010 letter through its acquisition of Symbol Technologies, Inc. ("Symbol"), and deny the remaining allegations of Paragraph 42.

43.     Defendants admit that Motorola and Symbol submitted certain Letters of Assurance to the IEEE Standards Board Patent Committee, state that the Letters of Assurance speak for themselves, and deny the remaining allegations of Paragraph 43.

44.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 44 and therefore deny them.

45.     Defendants state that Paragraph 45 purports to assert legal conclusions to which Defendants are not obligated to respond and therefore deny the allegations of Paragraph 45.

46.     Defendants state that Paragraph 46 purports to assert legal conclusions to which Defendants are not obligated to respond and therefore deny the allegations of Paragraph 46

47.     On information and belief, Defendants admit the allegations of Paragraph 47.

48.     Defendants admit the allegations of Paragraph 48.

49.     Defendants deny the allegations of Paragraph 49.

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 7
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

50.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 50 and therefore deny them.

51.     Defendants admit that they have stated to Microsoft and/or others that Defendants own rights in patents or pending applications that are or may become essential to the H.264 video standard and that Microsoft does not concede that such patents are essential or practiced by Microsoft, and deny the remaining allegations of Paragraph 51.

52.     Defendants admit that they submitted certain Patent Statement and Licensing Declarations to the ITU-T, state that the Declarations speak for themselves, and deny the remaining allegations of Paragraph 52.

53.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 53 and therefore deny them.

54.     Defendants state that Paragraph 54 purports to assert legal conclusions to which Defendants are not obligated to respond and therefore deny the allegations of Paragraph 54.

55.     On information and belief, Defendants admit the allegations of Paragraph 55.

56.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 56 and therefore deny them.

57.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 57 and therefore deny them.

58.     Defendants deny the allegations of Paragraph 58.

59.     On information and belief, Defendants admit the allegations of Paragraph 59.

60.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 60 and therefore deny them.

61.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 61 and therefore deny them.

62.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 62 and therefore deny them.

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 8
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

63.     Defendants deny the allegations of Paragraph 63.

64.     Defendants deny the allegations of Paragraph 64.

65.     Defendants deny the allegations of Paragraph 65.

66.     Defendants admit that Microsoft imports, makes, uses, sells, or offers for sale Xbox 360 consoles, Xbox 360 Wireless Adapters, and other products allowing users to connect to the Internet using WLAN technology, that such products include software and computer chips and modules that perform various functions, and that one function allows consumers to connect an Xbox to the Internet using a WLAN connection, and deny the remaining allegations of Paragraph 66.

67.     Defendants admit that Microsoft's Xbox 360 consoles feature Ethernet connectivity which provides the consoles with a wired method to connect to the Internet, state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations of the first and third sentences of Paragraph 67 and therefore deny them, and deny the remaining allegations of Paragraph 67.

68.     Defendants admit that personal computers running the Windows 7 operating system include software and computer chips and modules that are capable of performing various functions, and state that they are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 68 and therefore deny them.

69.     Defendants admit that smartphones running the Windows Phone 7 operating system include software and computer chips and modules that are capable of performing various functions, and state that they are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the Paragraph 69 and therefore deny them.

70.     Defendants admit that on October 21, 2010, Motorola, Inc. sent a letter to Microsoft Corporation which speaks for itself, and deny the remaining allegations of Paragraph 70.

71.     Defendants admit that on October 29, 2010, Motorola, Inc. sent a letter to Microsoft Corporation which speaks for itself, and deny the remaining allegations of Paragraph 71.

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 9
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

72.   Defendants admit that they possess patents that are or may be essential to the 802.11 or H.264 standards and that, for patents and technologies that are or may become essential to the 802.11 or H.264 standards, Defendants have submitted certain letters of Assurance to the IEEE, and certain Patent Statement and Licensing Declarations to the ITU-T, state that they have offered and continue to offer to provide RAND licenses to applicants who, unlike Microsoft, apply for such a license, and deny the remaining allegations of Paragraph 72.

73.   Defendants admit the allegations of Paragraph 73.

74.   Defendants admit the allegations of Paragraph 74.

75.   Defendants admit the allegations of Paragraph 75  .

76.   Defendants admit the allegations of Paragraph 76.

77.   Defendants admit the allegations of the first and third sentences of Paragraph 77, and deny the allegations of the second sentence of Paragraph 77.

78.   Defendants admit that Microsoft purports to define "Motorola Patent Actions" and "SDO Patents in Suit", deny that Microsoft has accurately correlated essential patents with "SDO Patents in Suit", and deny the remaining allegations of Paragraph 78.

79.   Defendants state that Microsoft has never applied for a license under Motorola essential patents prior to implementing the 802.11 and H.264 standards in Microsoft's products, further state that Microsoft has never responded to Motorola's October 21 and October 29 Letters inviting Microsoft to negotiate a license to Motorola's 802.11 and H.264 portfolios, respectively, and has never attempted to negotiate license terms with Motorola but instead improperly filed the present action, and deny the remaining allegations of Paragraph 79.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

80.   Defendants incorporate by reference their responses to Paragraphs 1 to 79 as if fully set forth herein.

81.   Defendants state that Paragraph 81 purports to assert legal conclusions to which Defendants are not obligated to respond and therefore deny the allegations of Paragraph 81.

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 10
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

82.     Defendants state that Paragraph 82 purports to assert legal conclusions to which Defendants are not obligated to respond and therefore deny the allegations of Paragraph 82.

83.     Defendants state that Paragraph 83 purports to assert legal conclusions to which Defendants are not obligated to respond and therefore deny the allegations of Paragraph 83.

84.     Defendants state that they have not breached any enforceable obligation to IEEE or ITU, and that Microsoft breached its duty to apply for a license and negotiate the terms of a RAND license and failed to satisfy the conditions precedent to any obligations that it was owed as an alleged third party beneficiary, and deny the allegations of Paragraph 84.

85.     Defendants state that Motorola, Inc. filed the Motorola Patent Actions after Microsoft repudiated and rejected the benefits of any RAND statements made by Motorola, Inc., admit that the Motorola Patent Actions seek to enjoin Microsoft's implementation of the technology of the SDO Patents in Suit and to exclude Microsoft from importing or selling products that implement the technology of the SDO Patents in Suit because of Microsoft's refusal to apply for and negotiate the terms of a RAND license for such patents, and deny the remaining allegations of Paragraph 85.

86.     Defendants deny the allegations of Paragraph 86.

87.     Defendants deny the allegations of Paragraph 87.

SECOND CAUSE OF ACTION
(Promissory Estoppel)

88.     Defendants incorporate by reference their responses to Paragraphs 1 to 79 as if fully set forth herein.

89.     Defendants state that Paragraph 89 purports to assert legal conclusions to which Defendants are not obligated to respond and therefore deny the allegations of Paragraph 89.

90.     Defendants deny the allegations of Paragraph 90.

91.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 91 and therefore deny them.

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

92.     Defendants state that Paragraph 92 purports to assert legal conclusions to which Defendants are not obligated to respond and therefore deny the allegations of Paragraph 92.

93.     Defendants deny the allegations of Paragraph 93.

94.     Defendants deny the allegations of Paragraph 94.

THIRD CAUSE OF ACTION<br>(Waiver)

95.     No response to Paragraph 95 is required, because the Third Cause of Action (Waiver) has been dismissed.

96.     No response to Paragraph 96 is required, because the Third Cause of Action (Waiver) has been dismissed.

97.     No response to Paragraph 97 is required, because the Third Cause of Action (Waiver) has been dismissed.

98.     No response to Paragraph 98 is required, because the Third Cause of Action (Waiver) has been dismissed.

FOURTH CAUSE OF ACTION<br>(Declaratory Judgment That Motorola's Offers Do Not Comply With Its Obligations)

99.     No response to Paragraph 99 is required, because the Fourth Cause of Action (Declaratory Judgment) has been dismissed.

100.    No response to Paragraph 100 is required, because the Fourth Cause of Action (Declaratory Judgment) has been dismissed.

101.    No response to Paragraph 101 is required, because the Fourth Cause of Action (Declaratory Judgment) has been dismissed.

102.    No response to Paragraph 101 is required, because the Fourth Cause of Action (Declaratory Judgment) has been dismissed.

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 12
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

MICROSOFT'S PRAYER FOR RELIEF

Defendants deny that Microsoft is entitled to any of the relief requested in its Prayer for Relief or any relief whatsoever.  Defendants deny all allegations of the Amended and Supplemental Complaint not specifically admitted above.

AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED AND SUPPLEMENTAL COMPLAINT

Defendants assert the following affirmative and other defenses set forth below, and in making such defenses do not concede that they bear the burden of proof as to any of them. Discovery is at a very early stage in this matter, and therefore Defendants have not yet fully collected and reviewed all of the information and materials that may be relevant to the matters and issues raised herein.  Accordingly, Defendants reserve the right to amend, modify, or expand these defenses and to take further positions as discovery proceeds in this matter.

FIRST AFFIRMATIVE DEFENSE
(Lack of Irreparable Harm)

1.      Microsoft's demand to enjoin Defendants is barred, as Microsoft has suffered neither harm nor irreparable harm from Defendants' actions.

SECOND AFFIRMATIVE DEFENSE
(Failure to State a Claim)

2.      Microsoft's First and Second Causes of Action fail to state a claim upon which relief can be granted.

THIRD AFFIRMATIVE DEFENSE
(Ripeness)

3.      There is no subject matter jurisdiction for Microsoft's First and Second Causes of Action because they were not ripe for adjudication when filed.

FOURTH AFFIRMATIVE DEFENSE
(Forfeiture/Repudiation)

4.      Microsoft's First and Second Causes of Action are barred because, by failing to apply for a RAND license and to negotiate the terms of a RAND license and instead filing the

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 13
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

present action, Microsoft breached the contract to which it claims to be a third party beneficiary, and failed to satisfy the conditions precedent to any obligations that it was owed as an alleged third party beneficiary, and thereby forfeited all benefits of any purported RAND statement made by the Defendants.

## FIFTH AFFIRMATIVE DEFENSE
### (Waiver)

5. Microsoft's First and Second Causes of Action are barred by the doctrine of waiver.

## SIXTH AFFIRMATIVE DEFENSE
### (Judicial Estoppel)

6. Microsoft's First and Second Causes of Action are barred by the doctrine of judicial estoppel.

## SEVENTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

7. Microsoft's First and Second Causes of Action are barred by the doctrine of unclean hands.

## EIGHTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

8. Microsoft's First and Second Causes of Action are barred by its failure to mitigate its claimed damages.

## NINTH AFFIRMATIVE DEFENSE
### (Failure to Satisfy a Condition Precedent)

9. Microsoft's First and Second Causes of Action are barred because Microsoft failed to satisfy a condition precedent.

## TENTH AFFIRMATIVE DEFENSE
### (Duplicative Causes of Action)

10. Microsoft's First and Second Causes of Action are barred because they are duplicative of Microsoft's Counterclaims (Third Count) originally filed in Civil Action 3:10-cv-699 (W.D. Wis.), and now consolidated in this action.

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 14
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:   (206) 676-7001

DEFENDANTS' COUNTERCLAIMS

Defendants Motorola Mobility, Inc., Motorola Solutions, Inc., and General Instrument Corporation ("General Instrument") (collectively or separately, "Motorola" or "Defendants"), counterclaim against Defendant and Counterclaim Plaintiff Microsoft Corporation's ("Microsoft") as follows:

PARTIES

1.     Motorola Solutions, Inc. (f/k/a Motorola, Inc.) is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1303 East Algonquin Road, Schaumburg, Illinois 60196.

2.     Motorola Mobility is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 600 North U.S. Highway 45, Libertyville, Illinois 60048.  Motorola Mobility is a wholly owned subsidiary of Motorola Mobility Holdings, Inc.

3.     General Instrument Corporation is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 101 Tournament Drive, Horsham, Pennsylvania 19044. General Instrument is a wholly-owned subsidiary of Motorola Mobility Holdings, Inc.

4.     Microsoft is a corporation organized and existing under the laws of the State of Washington having its principal place of business at One Microsoft Way, Redmond, Washington 98052.

JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332, because this is an action between citizens of different states and because the value of declaratory relief sought, the value of Motorola's rights these Counterclaims will protect and enforce, Motorola's damages, and the extent of the injury to be prevented exceed the amount of $75,000, exclusive of interest and costs.  This Court also has jurisdiction over the subject matter of

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 15
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

this dispute pursuant to 28 U.S.C. § 1367 because Motorola's claims are so related to claims in Microsoft's action within such original jurisdiction that they form part of the same case or controversy   This Court has subject matter jurisdiction over these counterclaims for declaratory relief under the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202, under the laws of the United States concerning actions relating to patents, 28 U.S.C. § 1338(a), and under 28 U.S.C. § 1331.

6.      Personal jurisdiction is proper in this Judicial District at least because Microsoft is a resident of this Judicial District, and has consented to jurisdiction in this Judicial District by filing suit against Motorola in this Court, filing a Joint Status Report in this action, and engaging in preliminary discovery against Defendants and third parties in this action.

## Standards Development Organizations and RAND

7.      To facilitate interoperability among electronic devices including desktops, laptops, smartphones, televisions, and tablets, companies such as Microsoft and Motorola participate in standard development organization ("SDOs") that develop and establish technical standards for the industry.

8.      For example, a standards-compliant laptop can wirelessly connect to the Internet whether it is at the user's home, office, hotel room, at the local coffee shop, or even on an airplane. A consumer with a standards-compliant laptop thus has confidence that wireless access points are likely to utilize the same standard.  Likewise, devices and software that are compliant with video coding standards ensure that the creators and consumers of video content can enjoy the content without having to worry whether the video is being encoded or decoded in the proper format.

9.      Standards thus play a role in the development of wireless networking and video coding technologies.  Standards facilitate the adoption and advancement of technology as well as the development of products that can interoperate with one another.  Companies that produce products compatible with a standard or specification can design products by referencing only the standard or specification's documentation, without the need to communicate separately with every

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 16
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   other company with which their products may need to operate.  Companies producing products

2   that implement and are tested to a standard facilitate interoperability among different products, and

3   consumers of those products can be confident that products from multiple vendors will work

4   together as intended under the standard.

5         10.    As a practical matter, the technologies that are used to allow a consumer electronics

6   device to operate within a wireless network, or encode or decode video, must be described in

7   standards adopted by a recognized SDO, and thereby accepted by industry members, in order to be

8   commercially successful.

9         11.    Because implementation of a standard can require practicing patent rights that

10   cover various aspects of the standard, SDOs often grant licenses to or require members to license

11   these "essential patent claims" to other entities seeking to implement the standard.  SDOs have

12   adopted practices that address disclosure and licensing of essential patent claims that cover various

13   aspects of the standard and will be implicated by implementation of the standard.  These practices

14   include cross-licensing agreements, establishment of intellectual property ("IP") policies setting

15   out licensing obligations for owners of patents covering essential patent claims, disclosure

16   requirements for essential patent claims, and procedures for proposing and adopting changes to the

17   standard.

18         12.    SDOs often request or require that their members under certain circumstances agree

19   to provide or negotiate licenses to the essential patent claims on reasonable and non-

20   discriminatory ("RAND") terms.  There is no common understanding of what constitutes a RAND

21   license or RAND royalty rate, and the particular RAND rate for a given patent or portfolio for a

22   particular licensee will depend on a number of varying factors and considerations.

23         13.    While there is no common understanding or definition of a RAND license or a

24   RAND royalty rate, as a matter of practice, typical licenses covering essential patent claims have

25   several common features.  First and most importantly, the licenses and the royalty rates contained

26   therein are negotiated on a bilateral basis.  While the terms of the RAND license are negotiated,

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 17
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   there are several licensing terms that typically appear in a license between sophisticated parties,

2   and compensation is just one of them.  Besides compensation, grant backs, field of use (or scope

3   of use), sublicensability, reciprocity, defensive suspension, and choice of law are some of the

4   negotiated terms typically included in a RAND license.  How each of these terms is articulated can

5   vary extensively.  Microsoft's own General Manager of Standards Strategy, Amy Marasco, has

6   acknowledged the need for negotiations and the variability of license terms in RAND agreements

7   in presentations she has made to the public.  E.g., "Fair, Reasonable, and Non-Discriminatory:

8   Some Practical Thoughts About FRAND Licensing Commitments" (Mar. 26, 2009), presentation

9   given at Tilberg University, Tilburg Law and Economics Center, Conference on Patent Reforms,

10  *available at* http://www.tilburguniversity.edu/research/institutes-and-research-groups/tilec/org/

11  patent/amymarasco.pdf (last visited June 13, 2011).

12      14.     In the case of compensation, for example, sophisticated parties routinely enter into

13  license agreements that base the value of the patented inventions as a percentage of the

14  commercial products' sales price.  There are numerous reasons why sophisticated parties use the

15  end product as the royalty base when negotiating and entering into licenses.  First, it simplifies the

16  negotiations process, and allows the parties to potentially use one blended royalty rate for the

17  various implementations of the declared essential patent claims.  Second, once the parties have

18  entered into the license, the commercial sales price is the most easily verifiable metric for

19  calculating the compensation owed by the licensee to the licensor.  Using the commercial sales

20  price as the royalty base avoids the practical difficulties of verifying and tracking component

21  price.

### Motorola's Participation in the IEEE

23      15.     The 802.11 wireless networking protocol, originally released in 1997 and amended

24  several times since, was developed under the patronage of the Institute of Electrical and

25  Electronics Engineers ("IEEE").  Founded in 1963, the IEEE is a New York non-profit

26

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 18
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1    professional association dedicated to advancing technological innovation related to electricity.

2    Microsoft and Motorola are both members of IEEE.

3           16.    IEEE is one of the leading SDOs in the world.  The standards development and

4    maintenance functions of the IEEE are done through the IEEE Standards Association ("IEEE-

5    SA").  The IEEE-SA contains a Standards Board, which is responsible, among other things, for

6    encouraging and coordinating the development of IEEE standards.

7           17.    IEEE brings important market participants in the electronics wireless

8    communications sector together.  Within the context of the IEEE-SA, members such as Motorola

9    and Microsoft can help develop technical standards, which often lead to an industry standard.

10          18.    Many IEEE members, including Motorola, are engaged in research and

11   development of wireless technologies, and own intellectual property rights relating to different

12   elements of such technologies.  Accordingly, when IEEE adopts technical standards, it must take

13   into account that many elements of the standards are likely to be covered by such intellectual

14   property rights.  Therefore, others wishing to exploit the standard may need licenses to use the

15   essential intellectual property rights.

16          19.    IEEE has therefore adopted policies and procedures to describe the manner in

17   which IEEE will take account of such intellectual property rights in the process leading to the

18   adoption of IEEE standards.  Likewise, IEEE has adopted policies and procedures to describe the

19   different circumstances and conditions whereby a prospective implementer of the technical

20   standard may obtain a license to such intellectual property rights.

21          20.    In addition to the IEEE's policies and procedures, members often submit Letters of

22   Assurance that set forth the terms and conditions under which they are willing to grant licenses to

23   intellectual property assets relating to different portions of the relevant technical standards.

24          21.    The IEEE-SA has created and updates the IEEE-SA Standards Board Bylaws,

25   which provide specific policies that relate to the management and creation of approved IEEE

26   standards.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

22.     Clause 6 of the IEEE-SA Standards Board Bylaws describes the circumstances under which a holder of an essential patent claim discloses such technology to the IEEE and licenses third parties to these claims.

23.     While the IEEE requests that parties with essential patent claims submit licensing assurances, the Standards Board Bylaws state that these assurances are to be provided "without coercion."

24.     A party with essential patent claims can submit a Letter of Assurance to the IEEE that generally falls in one of two categories.  Under the first category, the submitter of the Letter of Assurance can state that it will not enforce any present or future patent claims against any person using the patents to comply with the standard.

25.     The second type of Letter of Assurance dictated by the IEEE-SA Standards Board Bylaws is what is commonly known as the "RAND assurance."  While the Bylaws have changed slightly over the years, they generally describe this second type of Letter of Assurance as "[a] statement that a license for a compliant implementation of the standard will be made available to an unrestricted number of applicants on a worldwide basis without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination."

26.     The IEEE-SA Standards Board Bylaws further state that "[n]o license is implied by the submission of a Letter of Assurance," and that "[t]he IEEE is not responsible for . . . determining whether any licensing terms or conditions provided in connection with submission of a Letter of Assurance, if any, or in any licensing agreements are reasonable or non-discriminatory."  In other words, it is widely understood that the responsibility of determining RAND terms and conditions is delegated to essential patent claim holders and prospective implementers, both of whom are expected to negotiate a RAND rate through bilateral negotiations. This has been recognized by Microsoft's own General Manager for Standards Strategy, Amy Marasco, in presentations she has made to the public., *e.g.*, "Standards-Setting, IPR Policies and

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 20
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Stakeholder Considerations" (Dec. 9, 2009), presentation given at the Japanese Industrial

Standards Committee, Symposium on Standardization and International Intellectual Property: The

Functioning of Patent Policies and Pools in the Implementation of Standards, and How to Handle

the Hold-Up Problem, *available at* http://www.jisc.go.jp/policy/kenkyuukai/ipr/pdf/S3-

3_Marasco.pdf (last visited June 13, 2011).  This has also been acknowledged by the American

Bar Association's Committee on Technical Standardization, Section of Science & Technology

Law in its *Standards Development Patent Policy Manual* 48-50 (2007).

27.     Separate from the IEEE-SA Standards Board Bylaws, the IEEE-SA Board of

Governors created and amends the IEEE Standards Association Operations Manual, which

"provides specific objectives and policies that relate to standards activities in the IEEE."  The

purpose of the Operations Manual is "to provide specific policies that relate to the management

and creation of approved IEEE standards."  In terms of precedence, the IEEE-SA Standards Board

Bylaws dictate that the "Bylaws shall conform to the policies of the IEEE Standards Association

Operations Manual."

28.     Clause 6.3.1 (Public Notice) of the IEEE-SA Operations Manual explains that

RAND licensing assurances only extend to parties that apply for such licenses, and that parties

that implement IEEE standards such as the 802.11 wireless protocol without a license do so at

their own risk (emphasis added):

> The following notice shall appear when the IEEE receives assurance
> from a claimed patent holder or patent applicant prior to the time of
> publication that a license will be made available ***to all applicants***
> either without compensation or under reasonable rates, with
> reasonable terms and conditions that are demonstrably free of any
> unfair discrimination.
>
> Attention is called to the possibility that implementation of this
> standard may require use of subject matter covered by patent rights.
> By publication of this standard, no position is taken with respect to
> the existence or validity of any patent rights in connection therewith.
> A patent holder or patent applicant has filed a statement of assurance
> that it will grant licenses under these rights without compensation or
> under reasonable rates, with reasonable terms and conditions that are

demonstrably free of any unfair discrimination *to applicants desiring to obtain such licenses*. Other Essential Patent Claims may exist for which a statement of assurance has not been received. The IEEE is not responsible for identifying Essential Patent Claims for which a license may be required, for conducting inquiries into the legal validity or scope of Patents Claims, or determining whether any licensing terms or conditions provided in connection with submission of a Letter of Assurance, if any, or in any licensing agreements are reasonable or non-discriminatory. *Users of this standard are expressly advised that determination of the validity of any patent rights, and the risk of infringement of such rights, is entirely their own responsibility.* Further information may be obtained from the IEEE Standards Association.

29.     Over the years, Motorola has submitted Letters of Assurance stating that it will be willing to grant to interested applicants a license on reasonable and non-discriminatory terms to patents that are essential to a specified 802.11 wireless standard or amendment.

## Motorola's Participation in the ITU-T

30.     The ITU-T Rec. H.264 - ISO/IEC 14496-10 Advanced Video Coding (AVC) ("ITU-T Rec. H.264"), released in 2003 and since amended, was jointly developed by the International Telecommunication Union ("ITU-T") and the International Organization for Standardization/International Electrotechnical Commission ("ISO/IEC").

31.     Founded in 1865, the ITU is the oldest international organization in the United Nations family, and is the leading United Nations agency for information and communication technology issues.  The ITU is the global focal point for governments and the private sector in developing networks and services.

32.     The ITU Telecommunication Standardization Sector ("ITU-T") is one of the three divisions of the ITU, and coordinates standards for the telecommunications sector.  Headquartered in Geneva, Switzerland, the ITU-T is responsible for development and maintenance of thousands of technical standards, the ITU-T Recommendation H.264 being just one.  Microsoft and Motorola are both members of ITU-T.

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 22
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

33.     ISO and IEC, along with the ITU, are three global sister organizations that develop international standards for the world.  The ISO is the world's largest developer of and publisher of international standards.  IEC is the world's leading organization that prepares and publishes international standards for all electrical, electronic and related technologies.

34.     When appropriate, ITU, ISO, and IEC cooperate to develop and publish standards.

35.     The ITU/ISO/IEC members that jointly developed and published ITU-T Rec. H.264 - ISO/IEC 14496-10 Advanced Video Coding (AVC) are known as the Joint Video Team ("JVT").

36.     ITU/ISO/IEC bring important market participants in video coding technology together.  Within the context of the ITU/ISO/IEC, members such as Motorola and Microsoft can help develop technical recommendations, which often lead to an industry recommendation.

37.     Many ITU/ISO/IEC members, including Motorola, are engaged in research and development of video coding technology, and own intellectual property rights relating to different elements of such technologies.  Accordingly, when the ITU/ISO/IEC adopt technical recommendations, they must take into account that elements of the standards are likely to be covered by such intellectual property rights.  Therefore, others wishing to exploit the standard may need a license to use the essential intellectual property rights.

38.     ITU/ISO/IEC have adopted guidelines to describe the manner in which ITU/ISO/IEC will take account of such intellectual property rights in the process leading to the adoption of standards.  Likewise, ITU/ISO/IEC have adopted guidelines to describe the different circumstances and conditions whereby a prospective implementer of the technical standard may obtain a license to such intellectual property rights.

39.     In addition to the ITU/ISO/IEC policies and procedures, members often submit Patent Statement and Licensing Declaration Forms, and/or General Patent and Licensing Declaration Forms, that set forth the terms and conditions under which they are willing to grant

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 23
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

licenses to intellectual property assets relating to different portions of the relevant technical standards.

40.     The ITU, ISO, and IEC publish the "Common Patent Policy for ITU-T/ITU-R/ISO/IEC", "a 'code of practice' regarding patents covering, in varying degrees, the subject matters of ITU-T Recommendation. . . ."  The Common Patent Policy is incorporated as Annex 1 into the Guidelines for Implementation of the Common Patent Policy for ITU-T/ITU-R/ISO/IEC ("ITU Guidelines").  While the Common Patent Policy helps guide the relationship between essential patent holders and prospective implementers, "[t]he detailed arrangements arising from patents (licensing, royalties, etc.) are left to the parties concerned, as these arrangements might differ from case to case."

41.     Under the Common Patent Policy, once a standard Recommendation is developed, three situations may arise: (1) the patent holder is willing to negotiate royalty-free RAND licenses; (2) the patent holder is willing to negotiate royalty-bearing RAND licenses; and (3) the patent holder is not willing to negotiate RAND licenses. The Common Patent Policy then states that regardless of whatever situation applies, the patent holder should submit a Patent Statement and Licensing Declaration Form that is consistent with the sample form provided in Annex 2 of the ITU Guidelines.

42.     The sample Patent Statement and Licensing Declaration Form expands on the three situations described in the Common Patent Policy, and states in relevant part (as check box #2) (emphasis added):

> The Patent Holder is prepared to grant a license *to an unrestricted number of applicants* on a worldwide, non-discriminatory basis and on reasonable terms and conditions to make, use, and sell implementations of the above document.
>
> *Negotiations are left to the parties* concerned and are performed outside the ITU-T, ITU-R, ISO, or IEC.
>
> Also mark here _____ if the Patent Holder's willingness to license is conditioned on reciprocity for the above document.

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 24
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1   Over the years, Motorola and its predecessors have submitted Patent Statement and Licensing

2   Declaration Forms in relation to ITU-T Rec. H.264.  Every one of these submissions selected

3   check box #2, i.e., that:  (1) Motorola was willing to provide royalty-bearing RAND licenses to its

4   H.264 patents, but only to those who first apply for such licenses; (2) the determination of the

5   terms for such RAND license was to be negotiated outside the ITU-T, ISO, and IEC, on a bilateral

6   basis; (3) Motorola's willingness to license was conditioned on the prospective applicant also

7   agreeing to license its own essential patent claims.

8   Microsoft's Implementation of the 802.11 Wireless Networking Standard in Its Products

9           43.    Microsoft introduced the Xbox video game console worldwide beginning in

10   November 2001.  The original Xbox console featured an integrated Ethernet port for network

11   connectivity.

12          44.    As a follow-up to its Xbox video game console, Microsoft announced the Xbox

13   360 console in November 2005.  One of the two models released at launch in the United States

14   was Xbox 360 Core, which retailed for $299.  At or near launch, Microsoft released the Xbox 360

15   Wireless Adapter in the United States, retailing at $99.  According to Microsoft, this product is

16   compliant with the a, b, and g amendments to the IEEE 802.11 specification.  The Wireless

17   Adapter was designed to add wireless networking functionality to existing Xbox 360 consoles by

18   allowing them to connect to 802.11 a/b/g networks.

19          45.    On November 9, 2009, Microsoft announced the Xbox 360 Wireless N Adapter in

20   the United States, retailing at $99.  According to Microsoft, this product is complaint with the a, b,

21   g, and n amendments to the IEEE 802.11 specification.  The Wireless N Adapter was designed to

22   add wireless networking functionality to existing Xbox 360 consoles by allowing them to connect

23   to 802.11 a/b/g/n networks.  At the time the Wireless N Adapter went on sale, Microsoft quoted a

24   $199 retail price for its Xbox 360 Arcade console, which lacked 802.11 wireless functionality.

25          46.    On June 14, 2010, Microsoft announced an update to its Xbox 360 consoles.  These

26   new consoles were known as the Xbox 360 S line of consoles.  While there were several changes

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 25
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   made to the new consoles over the previous generation, by most accounts and even according to

2   Microsoft, integrated Wi-Fi technology was the most significant.  For example, the Xbox 360 4GB

3   Console product page has the integrated Wi-Fi technology as the first feature listed on both the

4   Overview and What You Get webpages.  At debut, the Xbox 360 GB Console retailed at $199.99,

5   and currently retails at this same price.

6          47.     As consumers' use of the Xbox 360 console becomes increasingly tied to

7   connecting to the Internet—e.g., to play games, watch Netflix movies, and chat with friends—Wi-

8   Fi functionality has become an increasingly important feature of the Xbox 360 platform.

9          Microsoft's Implementation of the ITU-T H.264 Recommendation in Its Products

10         48.     Microsoft sells products and software that includes encoders and decoders that are

11  advertised as being compliant with H.264, including Windows 7, Windows Phone 7, and Xbox

12  gaming consoles.

13         49.     Upon information and belief, the ability to encode and decode H.264 video streams

14  is an important feature of Microsoft's product offerings.  For example, Microsoft advertises to

15  "use your Xbox360 console to watch movies and DVDs," and states that the Xbox360 supports

16  H.264 main and high video profiles.  See, *e.g.*, http://support.xbox.com/en-us/pages/xbox-

17  360/how-to/watch-dvds-movies.aspx.  Microsoft also produces instructional materials (available

18  at, *e.g.*, http://windows.microsoft.com/en-US/windows/explore, http://technet.microsoft.com,

19  http://support.microsoft.com, and http://msdn.microsoft.com) that promote the use of Windows 7

20  to encode and decode video, and states that "in Windows 7, Media Foundation includes the

21  following new codecs: . . . H.264 video decoder, H.264 video encoder"

22  (http://msdn.microsoft.com/enus/library/bb970511(VS.85).aspx).  Microsoft also features

23  Windows Phone 7 video coding capability (http://www.microsoft.com/windowsphone/en-

24  us/features/default.aspx), and states that Windows Phone supports the H.264 codec

25  (http://msdn.microsoft.com/en-us/library/ff462087(v=vs.92).aspx).

26

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 26
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Microsoft's Repudiation and Rejection of Any RAND Benefit and Motorola's
Conformance With Its RAND Obligations

50.     Microsoft acknowledges that it had knowledge of Motorola's participation in the

802.11 standards setting process, and that it had actual or constructive notice of Motorola's Letters

of Assurance to the IEEE.  (Amended and Supplemental Complaint, ¶¶ 3, 7, 56-58, 91).  Microsoft

alleges that it developed and marketed its products and services, including making its products and

services compliant with 802.11 standards and technologies, in reliance on Motorola's participation

in the standards setting process and Motorola's Letters of Assurance. (Amended And

Supplemental Complaint, ¶¶ 7, 56-58, 91).  However, prior to implementing the 802.11 standard

in its products, Microsoft never applied to Motorola for a license to Motorola's patents that are or

may be essential to the 802.11 standard.  In fact, as of the date of these Counterclaims, after

having imported, made, used, sold, or offered for sale 802.11-compliant products for at least five

years, Microsoft still has not applied for a license to Motorola's patents that are or may be

essential to the 802.11 standard.

51.     Because Microsoft implemented its 802.11-compliant products without first

applying for and negotiating the terms of a license and subsequently instituted this action for

breach of contract, Microsoft has rejected and repudiated any right to a RAND license to

Motorola's essential patent claims, and failed to satisfy the conditions precedent to any such right.

As a result, Motorola was entitled to sue Microsoft for patent infringement and seek all available

remedies.

52.     Notwithstanding Microsoft's failure to have applied for a license under Motorola's

802.11 patents, on October 21, 2010, Motorola sent a letter to Microsoft offering a license on

RAND terms to Motorola's patents and patent applications that are or may be essential to the

IEEE 802.11 standard.  In the letter, Motorola expressed a willingness to negotiate and ultimately

provide a license to Motorola's 802.11 patents and patent applications on RAND terms.  The letter

proposed one of the several licensing terms that would eventually need to be negotiated if

Microsoft was willing to negotiate a RAND license—a 2.25% royalty rate to be applied to

1    Microsoft products that implement the 802.11 standard.  The letter requested that Microsoft be

2    willing to grant back to Motorola a license on RAND terms under Microsoft's own 802.11 patents

3    and patent applications.  Finally, the letter stated that if Microsoft was only interested in a license

4    for a portion of Motorola's patents and patent applications related to the 802.11 standard,

5    Motorola was willing to negotiate and provide a license to such patents and applications, also on

6    RAND terms.  Motorola did not propose any of the terms that would potentially be included in a

7    license to a portion of Microsoft's portfolio.

8         53.    On November 9, 2011, Microsoft sued Motorola in the present action without

9    responding to the October 21, 2010 letter.  Microsoft's refusal to negotiate the terms of a RAND

10   license in response to this letter independently constituted a rejection and repudiation of a right to

11   a RAND license under Motorola's 802.11 patents and patent applications.  Microsoft's filing of

12   this lawsuit independently constitutes a further rejection and repudiation of a right to a RAND

13   license under Motorola's 802.11 patents and patent applications.

14        54.    To this day, Microsoft continues to implement the 802.11 standard in its products

15   and thereby infringe Motorola's patents without a license.  Microsoft has not paid Motorola for

16   Microsoft's past and continuing infringement, has not agreed that it needs to pay RAND

17   compensation to Motorola, and refuses to agree to be bound by a RAND license, even one

18   determined by this Court.

19        55.    Microsoft acknowledges that it had knowledge of Motorola's participation in the

20   H.264 standards setting process, and that it had actual or constructive notice of Motorola's Patent

21   Statements and Licensing Declarations to the ITU.  (Amended and Supplemental Complaint, ¶¶ 7,

22   60-63, 91)  Microsoft alleges that it developed and marketed its products and services, including

23   making its products and services compliant with the H.264 Recommendation, in reliance on

24   Motorola's participation in the standards setting process and Motorola's Declarations (Amended

25   and Supplemental Complaint, ¶¶ 7, 60-63, 91).  However, prior to implementing the H.264

26   Recommendation in its products, Microsoft never applied for a license to Motorola's patents that

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 28
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

are or may be essential to the H.264 Recommendation.  In fact, as of the date of these Counterclaims, after having imported, made, used, sold, or offered for sale H.264-compliant products for at least four years, Microsoft still has not applied for a license to Motorola's patents that are or may be essential to the H.264 Recommendation.

56.     Because Microsoft implemented H.264-compliant products without first applying for a license and subsequently instituted this action for breach of contract, Microsoft has rejected and repudiated any right to a RAND license under Motorola's essential patent claims, and failed to satisfy the conditions precedent to any such right.  As a result, Motorola was entitled to sue Microsoft for patent infringement and seek all available remedies.

57.     Notwithstanding Microsoft's failure to have applied for a license under Motorola's H.264 patents, on October 29, 2010, Motorola sent a letter to Microsoft offering a license on RAND terms under Motorola's patents and patent applications that are or may be essential to the ITU H.264 Recommendation.  In the letter, Motorola expressed a willingness to negotiate and ultimately provide a license on RAND terms to Motorola's H.264 patents and patent applications. The letter proposed one of the several licensing terms that would eventually need to be negotiated if Microsoft was willing to negotiate a RAND license—a 2.25% royalty rate to be applied to Microsoft products that implement the H.264 standard.  The letter required that Microsoft be willing to grant back to Motorola a license on RAND terms under Microsoft's own H.264 patents and patent applications.  Finally, the letter stated that if Microsoft was only interested in a license for a portion of Motorola's patents and patent applications related to the H.264 Recommendation, Motorola was willing to negotiate and provide a license under such patents and applications, also on RAND terms.  Motorola did not propose any of the terms that would potentially be included in a license to a portion of Microsoft's portfolio.

58.     On November 9, 2011, Microsoft sued Motorola in the present action without responding to the October 29, 2010 letter.  Microsoft's refusal to negotiate a license in response to this letter independently constituted a rejection and repudiation of a right to a RAND license under

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 29
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Motorola's H.264 patents and patent applications.  Microsoft's filing of this lawsuit independently constitutes a further rejection and repudiation of a right to a RAND license under Motorola's H.264 patents and patent applications.

59.     To this day, Microsoft continues to implement the H.264 Recommendation in its products and infringe Motorola's patents without a license.  Microsoft has not paid Motorola for its past and continuing infringement, has not agreed that it needs to pay RAND compensation to Motorola, and refuses to agree to be bound by a RAND license, even one determined by this Court.

60.     In light of Microsoft's refusal to apply for a RAND license to Motorola's 802.11 and H.264-related patents and patent applications, refusal to negotiate a RAND license to Motorola's 802.11 and H.264-related patents and patent applications, and bad faith filing of suit in the present action, Motorola instituted patent infringement actions in the Western District of Wisconsin and the United States International Trade Commission on patents related to the 802.11 and H.264 standards (the "Patent Actions").  The Patent Actions are *Motorola Mobility, Inc. v. Microsoft Corp.*, No. 10-cv-699 (W.D. Wis.) (now included in No. C10-1823 (W.D. Wash.); *Motorola Mobility, Inc. v. Microsoft Corp.*, NO. 10-cv-0700 (W.D. Wis.) (stayed by agreement in view of ITC Investigation No. 337-TA-752); and *In re Certain Gaming and Entm't Consoles, Related Software, and Components Thereof*, Inv. No. 337-TA-752 (U.S.I.T.C.).  The Motorola patents asserted in these Patent Actions are the "Motorola Patents."

### FIRST COUNTERCLAIM
(Declaratory Judgment That Motorola Has Not Breached Any RAND Obligations)

61.     Defendants incorporate by reference as if fully set forth herein the averments contained within Paragraphs 1-60 of these Counterclaims.

62.     Consistent with the provisions of the IP Policies, Motorola submitted Letters of Assurance to the IEEE concerning patents that are or may become essential to the 802.11 standard and submitted Patent Statement and Licensing Declaration Forms to the ITU concerning patents that cover the subject matter of the H.264 standard.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    63.    Prior to the present action, Motorola sent letters to Microsoft on October 21, 2010

2    and October 29, 2010 offering to license on RAND terms Motorola patents that are or may

3    become essential to the 802.11 and H.264 Standards.  In the letters, Motorola stated its standard

4    terms for a license under its essential patents, stated that any license must include a grant back

5    license to Motorola under Microsoft's essential patents, and offered to negotiate a license for less

6    than its entire portfolio if Microsoft did not want the entire portfolio.

7    64.    Motorola has met and fully discharged any RAND obligations that it owed to

8    Microsoft, through, among other things, its offers to negotiate a RAND license contained in the

9    letters sent by Motorola to Microsoft, even though Microsoft never applied for a license, as

10   required by both SDOs.

11   65.    Motorola seeks a declaration that it has fully complied with and discharged any

12   RAND obligation that it owed to Microsoft.

13   66.    This Court's equitable powers are hereby invoked by this Counterclaim, and

14   Motorola accordingly requests that the Court consider such other relief, equitable or otherwise, as

15   it may find appropriate at the time for entry of judgment in this case in favor of Motorola.

16                                   SECOND COUNTERCLAIM
      (Declaratory Judgment That Microsoft Has Repudiated and/or Rejected the Benefits of
17                                 Motorola's RAND Statements)

18   67.    Defendants incorporate by reference as if fully set forth herein the averments

19   contained within Paragraphs 1-60 of these Counterclaims.

20   68.    As a result of Motorola's declaration of its essential patents and/or submission of

21   letters of assurance to the IEEE and/or ITU and submission of undertakings to negotiate licenses

22   on RAND terms to interested applicants, prospective implementers of the 802.11 and H.264

23   standards must request and negotiate a license under each of such patents on a bilateral basis as a

24   condition precedent to obtaining such a license.

25   69.    Motorola has fully complied with RAND procedures by, among other things,

26   sending letters to Microsoft on October 21, 2010 and October 29, 2010 offering to license on

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1   RAND terms Motorola patents that are or may become essential to the 802.11 and H.264

2   Standards, even though Microsoft did not fulfill its obligation or satisfy the condition first to have

3   applied for such a license.  In the letters, Motorola provided its standard terms, stated that any

4   license must include a grant back license to Motorola under Microsoft's essential patents, and

5   offered to negotiate a license for less than its entire portfolio if Microsoft did not want the entire

6   portfolio.

7        70.    Microsoft has repudiated and/or rejected any rights under Motorola's RAND

8   undertakings by, among other things:

9        (a)    Failing to apply for a RAND license to Motorola's 802.11 and H.264

10              portfolios once it had decided to implement the 802.11 and H.264 standards

11              in its products;

12       (b)    Failing to accept Motorola's offers to negotiate a RAND license to its

13              802.11 and H.264 portfolios, on entirely open and undefined terms;

14       (c)    Failing to accept Motorola's offers to negotiate a RAND license to its

15              802.11 and H.264 portfolio, with every term in the license undefined except

16              for the initial offer of a proposed royalty rate;

17       (d)    Failing to engage in good faith negotiations for a RAND license to

18              Motorola's 802.11 and H.264 portfolios;

19       (e)    Failing to commit to pay RAND compensation and/or pay into escrow what

20              Microsoft believes in good faith to be RAND compensation;

21       (f)    Failing to agree to be bound by a RAND license and pay any RAND royalty

22              determination (even when that RAND license and/or royalty rate is

23              reviewed by a Court).

24       71.    Microsoft further repudiated and/or rejected any rights under Motorola's RAND

25   undertakings by suing Motorola in the present action in response to Motorola's letters.

26

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 32
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

72.     Microsoft's conduct is a repudiation and/or rejection by Microsoft to be bound by its obligation to compensate Motorola for its use of patents that are essential to the 802.11 or H.264 standards.  Microsoft's conduct also constitutes a breach of any contract it has with Motorola, directly or indirectly through the SDOs as an alleged third-party beneficiary, for a right to receive a license on RAND terms under Motorola's essential patents, and also a failure to satisfy the conditions precedent to any obligations that it was owed with respect to any such right to a RAND license.

73.     Motorola seeks a declaration that by claiming the benefit of Motorola's RAND statements while refusing to undertake any of the obligations, Microsoft is an unwilling licensee that has, based on the facts of this case, repudiated and/or rejected any rights associated with Motorola's RAND statements, breached Microsoft's alleged contract with Motorola and/or the SSOs, and failed to satisfy the conditions precedent to any obligations that it was owed with respect to any such right to a RAND license.

74.     Motorola seeks a declaration that if the Motorola Patents in the Patent Actions are found by this Court or by the International Trade Commission to comply with the respective Standards, and the patents are valid and enforceable, that Motorola is entitled to seek an injunction enjoining Microsoft from importing, making, using, selling, or offering for sale products and services embodying the claimed inventions of the Motorola Patents.

75.     This Court's equitable powers are hereby invoked by this Counterclaim, and Motorola accordingly requests that the Court consider such other relief, equitable or otherwise, as it may find appropriate at the time for entry of judgment in this case.

## COUNTERCLAIM-PLAINTIFFS' PRAYER FOR RELIEF

WHEREFORE, Motorola Mobility, Inc., Motorola Solutions, Inc. and General Instrument, Corp. respectfully request that the Court enter a judgment:

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 33
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

A.     That Motorola has complied with any and all obligations to Microsoft with respect to statements it made to IEEE relating to the 802.11 standard, and  to ITU relating to the H.264 Recommendation;

B.     That Microsoft has repudiated and/or rejected any right to a RAND license under Motorola's 802.11 and H.264 essential patents and, therefore, under the present circumstances Motorola has the right to seek an injunction for Microsoft's infringement of the Motorola Patents;

C.     Awarding to Motorola all costs of suit; and

D.     Awarding to Motorola Mobility, Inc., Motorola Solutions, Inc. and General Instrument, Corp. such other and further relief as this Court deems just and proper.

DATED this 15th day of June, 2011.

SUMMIT LAW GROUP PLLC


By /s/ Philip S. McCune
    Philip S. McCune, WSBA #21081
    Lynn M. Engel, WSBA #21934
    *philm@summitlaw.com*
    *lynne@summitlaw.com*

And by

    Steven Pepe (*pro hac vice*)
    Jesse J. Jenner (*pro hac vice*)
    Ropes & Gray LLP
    1211 Avenue of the Americas
    New York, NY  10036-8704
    (212) 596-9046
    *steven.pepe@ropesgray.com*
    *jesse.jenner@ropesgray.com*

    Norman H. Beamer (*pro hac vice*)
    Gabrielle E. HIggins (*pro hac vice*)
    Ropes & Gray LLP
    1900 University Avenue, 6th Floor
    East Palo Alto, CA  94303-2284
    (650) 617-4030
    *norman.beamer@ropesgray.com*
    *gabrielle.higgins@ropesgray.com*

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 34
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

Paul M. Schoenhard (*pro hac vice*)
Ropes & Gray LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC  20005-3948
(202) 508-4693
*paul.schoenhard.@ropesgray.com*

**Attorneys for Defendants Motorola Solutions,**
**Inc., Motorola Mobility, Inc., and General**
**Instrument Corporation**

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 35
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the

3

Court using the CM/ECF system which will send notification of such filing to the following:

4
Arthur W. Harrigan, Jr., Esq.
Christopher T. Wion, Esq.

5
Shane P. Cramer, Esq.

6
Danielson, Harrigan, Leyh & Tollefson LLP
*arthurh@dhlt.com*

7
*chrisw@dhlt.com*
*shanec@dhlt.com*

8

9
Brian R. Nester, Esq.
David T. Pritikin, Esq.
Douglas I. Lewis, Esq.

10
John W. McBride, Esq.
Kevin C. Wheeler, Esq.

11
Richard A. Cederoth, Esq.

12
Sidley Austin LLP
*bnester@sidley.com*

13
*dpritikin@sidley.com*
*dilewis@sidley.com*

14
*jwmcbride@sidley.com*
*kwheeler@sidley.com*

15
*rcederoth@sidley.com*

16

17
T. Andrew Culbert, Esq.
David E. Killough, Esq.

18
Microsoft Corp.
*andycu@microsoft.com*

19
*davkill@microsoft.com*

20
J. Donald Best, Esq.
Michael Best & Friedrich LLP

21
*jdbest@michaelbest.com*

22
DATED this 15th day of June, 2011.

23

24
/s/        *Marcia A. Ripley*

25
Marcia A. Ripley

26

DEFENDANTS' ANSWER, DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED AND
SUPPLEMENTAL COMPLAINT - 36
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001