HONORABLE JAMES L. ROBART

1

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
MICROSOFT CORPORATION,

10
                                    Plaintiff,

11
        v.

12
MOTOROLA, INC., et al.,

13
                                    Defendants.

14
MOTOROLA MOBILITY, INC., et al.,

15
                                    Plaintiffs,

16
        v.

17
MICROSOFT CORPORATION,

18
                                    Defendant.

No. C10-1823-JLR

SECOND REVISED JOINT STATUS
REPORT

19

20
        Microsoft Corporation ("Microsoft"), and Motorola Solutions, Inc. (formerly Motorola,

21
Inc.), Motorola Mobility, Inc., and General Instrument Corporation (individually and

22
collectively "Motorola"), by and through their counsel below, hereby submit this Supplemental

23
Joint Status Report and proposed Discovery Plan pursuant to Rules 16 and 26(f) of the Federal

24
Rules of Civil Procedure, Rules 16 and 26 of the Local Civil Rules for the Western District of

25
Washington, Judge Robart's Standing Order for Patent Cases, the Local Patent Rules for the

SECOND REVISED JOINT STATUS REPORT - 1

1   Western District of Washington, and the Court's Order on the Parties' motions to dismiss (ECF

2   No. 66), and the Court's Minute Entry of June 3, 2011.  This Supplemental Joint Status Report

3   addresses the Parties' proposed plans for coordinating both Microsoft's affirmative RAND-

4   based claims that were initially filed in this action and the claims and counterclaims asserted

5   by the Parties in *Motorola Mobility, Inc., et al. v. Microsoft Corporation*, 2:11-cv-00343-JLR,

6   which was consolidated with this action pursuant to the Court's June 1, 2011 Order.

7       1.      Statement of Case

8               Microsoft's Statement:

9               Microsoft asserts both claims and counterclaims for breach of contract and promissory

10  estoppel against Motorola arising out of Motorola's violations of its RAND obligations to the

11  International Electrical and Electronics Engineers ("IEEE"), International Telecommunications

12  Union ("ITU"), and Microsoft.  Microsoft has also asserted counterclaims for patent

13  infringement of two patents by Motorola.

14              Microsoft's RAND-based claims/counterclaims involve allegations by Microsoft that

15  the Motorola defendants have breached obligations they undertook to offer licenses to their

16  purportedly essential or necessary patents on RAND terms and conditions.  When Motorola

17  chose to participate in the industry standard-setting process for developing both the 802.11

18  WLAN wireless internet standard and the H.264 video compression standard, it agreed to offer

19  licenses on RAND terms to Microsoft and other prospective licensees for any patents that are

20  necessary or essential to practice the respective standards.

21              Motorola has identified a number of patents as allegedly essential or necessary to both

22  the WLAN wireless standard and the H.264 video compression standard (in fact, Motorola's

23  complaint is based on Microsoft's alleged infringement of three of these H.264-related

24  patents).  Microsoft asserts that Motorola has not complied with its obligation to offer

25

SECOND REVISED JOINT STATUS REPORT - 2

1  Microsoft a license to these patents on RAND terms and conditions.  Instead, Motorola has

2  expressly conditioned any such license on payment of an exorbitant, discriminatory, and

3  unreasonable royalty.  Microsoft's position is that Motorola's demand does not comply with

4  the obligations it undertook when participating in the standard-setting process.

5         Microsoft has also alleged that the complaint Motorola filed before the ITC and the two

6  complaints Motorola Mobility and General Instrument filed in Federal District Court for the

7  Western District of Wisconsin on November 10, 2010 (one of which was then transferred to

8  this Court and consolidated with this Action, and one of which has been stayed in light of the

9  ITC Action), in which these defendants seek injunctive relief in addition to damages, violate

10 Motorola's contractual commitments to the IEEE, ITU, and Microsoft.

11        In their complaint, Motorola Mobility and General Instrument seek to enforce against

12 Microsoft three patents that they assert are necessary or essential to implement the H.264

13 standard and which they were, therefore, obliged — but failed — to offer to license to

14 Microsoft on RAND terms and conditions.  These patents were identified in Motorola's list of

15 patents and pending applications attached to Motorola's October 29, 2010 demand letter to

16 Microsoft, which, *inter alia*, formed the basis for Microsoft's contract and estoppel claims

17 relating to the H.264 standard in Microsoft's complaint.

18        Motorola has refused to offer Microsoft a license to the patents Motorola identified as

19 essential to the 802.11 and H.264 standards on RAND terms and conditions.  Instead, Motorola

20 has demanded royalty payments that are wholly disproportionate to the royalty that the asserted

21 patents should command under any reasonable calculus and have initiated three separate

22 actions to, *inter alia*, enjoin Microsoft from practicing patents Motorola claims are essential.

23        Motorola's obligations to license its purportedly essential patents to Microsoft on

24 RAND terms and conditions can and should be resolved before engaging in the complex,

25

SECOND REVISED JOINT STATUS REPORT - 3

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL., (206) 623-1700   FAX, (206) 623-8717

1  protracted and expensive patent litigation that those commitments were designed to avoid.

2  Resolution of the RAND issues presented in this case can be accomplished efficiently, and

3  potentially in such a way that further analysis of Motorola's patent claims can be significantly

4  narrowed or avoided entirely.

5      Microsoft has asserted patent infringement counterclaims to Motorola's complaint.

6  Microsoft asserts that Motorola Mobility and General Instrument are infringing U.S. Patent

7  Nos. 6,339,780 (the "780 patent") and 7,411,582 (the "582 patent") by making, using, selling,

8  offering to sell and/or importing various Android smartphones.  The 780 patent is entitled

9  "Loading Status in a Hypermedia Browser Having a Limited Available Display Area."  The

10 582 Patent is entitled "Soft Input Panel System and Method."  Microsoft seeks an injunction

11 and damages.  Motorola Mobility and General Instrument have not yet answered Microsoft's

12 counterclaims.

13      Motorola's Statement:

14      As a result of consolidation of this action with Civil Action 2:11-cv-00343-JLR, this is

15 a patent infringement action, and should be treated as such.  Although Microsoft couched the

16 original 1823 action as "a licensing dispute between the parties," that was never the true

17 situation.  Microsoft has never applied for a license, and instead of negotiating for a license

18 after being contacted by Motorola, brought the original 1823 action in anticipation of the

19 principal controversy initiated the following day via the now-consolidated 343 action.

20      In this consolidated action, Motorola Mobility and General Instrument assert that

21 Microsoft infringes three patents, U.S. Patent Nos. 7,310,374 ("the '374 patent"), 7,310,375

22 ("the '375 patent") and 7,310,376  ("the '376 patent"), by making, using, offering to sell,

23 selling and/or importing the Windows 7 operating systems for personal computers and Internet

24 Explorer 9.  The '374, '375 and '376 patents are each entitled "Macroblock Level Adaptive

25

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

1  Frame/Field Coding For Digital Video Content," share a common disclosure, and name the

2  same inventors.  Motorola Mobility and General Instrument seek permanent injunctive relief as

3  well as damages for the alleged infringement.

4      Microsoft has counterclaimed, asserting two patents against Motorola Mobility and

5  General Instrument: U.S. Patent Nos. 6,339,780 and 7,411,582, accusing Motorola Android

6  smartphones of infringement.  Microsoft seeks permanent injunctive relief as well as damages

7  for the alleged infringement.

8      Both Motorola Mobility and General Instrument, on the one hand, and Microsoft, on

9  the other hand, aver that the patents asserted against them are invalid and not infringed, along

10  with other affirmative defenses.  One affirmative defense brought by Microsoft, its Fifth

11  Affirmative Defense, asserts the defenses of "license, equitable estoppel and/or waiver."

12  Microsoft bases these defenses at least in part on the fact that the Motorola patents in suit are

13  or may be "essential" to an industry standard, that Motorola has made statements to the

14  standards body that obligate it to grant a RAND license to Microsoft, and that Motorola has

15  breached that alleged promise.

16      Microsoft has also couched this RAND affirmative defense in the form of two

17  additional counterclaims, one for breach of contract and one for promissory estoppel.

18  (Microsoft also brought its duplicative anticipatory separate action (the "original" 1823 action)

19  asserting these two causes of action, which the Court has consolidated with the patent action

20  and which should can now be dismissed as duplicative).  In response to the RAND

21  counterclaims, Motorola Mobility and General Instrument, joined by Motorola Solutions, Inc.,

22  have counterclaimed for declarations that they have not breached any alleged RAND promises,

23  and that Microsoft has repudiated any right to benefit from such alleged promises.

24

25

SECOND REVISED JOINT STATUS REPORT - 5

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

1       Of note is the fact that Motorola is asserting five additional patents against Microsoft's

2   Xbox product in the International Trade Commission, *In re Certain Gaming & Entertainment*

3   *Consoles, Related Software, & Components Thereof*, ITC Investigation No. 337-TA-752.  Four

4   of those patents are or may be essential to an industry standard.  Microsoft's RAND

5   counterclaims in the present action make the same assertions against these patents, alleging

6   entitlement to a RAND license, breach of contract and promissory estoppel.  There is also a

7   parallel District Court action in Wisconsin, *Motorola Mobility, Inc. v. Microsoft Corp.*, No.

8   3:10-cv-00700-wmc (W.D. Wis.), which is now stayed by agreement in view of the ITC

9   Investigation.  The ITC action is scheduled for hearing in October of this year and for a final

10  determination on May 23, 2012.  As discussed below, the ITC proceedings are likely to be

11  determinative as to all the disputes between the parties.

12      In response to Microsoft's Statement of the Case, Motorola submits that Microsoft is

13  attempting to accord one of its defenses to Motorola's patent claims — its RAND defense —an

14  inappropriate primacy of importance and significance.  The RAND should be treated the same

15  way as any other affirmative defense in a patent action.  Microsoft's breach of contract and

16  promissory estoppel claims are an attempt to realign the normal course of a patent infringement

17  lawsuit, and ultimately to prevent Motorola from addressing Microsoft's underlying patent

18  infringement.  If any part of the case should be phased and/or held in abeyance, it should be

19  Microsoft's RAND claims.  The complexity of attempting to set a RAND rate, the uncertainty

20  surrounding how that should be done, and the hypothetical nature of how the results of any

21  such inquiry will affect further proceedings between the parties, strongly argue for deciding the

22  patent claims first.  It is far more likely that resolution of the patent claims will lead to earlier

23  termination of litigation than it is for resolution of RAND issues to do so.

24

25

SECOND REVISED JOINT STATUS REPORT - 6

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1    This is particularly so because Microsoft never applied for a RAND license, refused to

2    negotiate for such a license, and instead brought suit against Motorola, and therefore Microsoft

3    has rejected the opportunity — and requirement — to negotiate RAND license terms with, and

4    obtain a RAND license from, Motorola, even though such negotiations are what the standards

5    bodies expect.  Thus, the supposed benefits of first embarking on an unprecedented RAND

6    rate-making proceeding (*e.g.*, "to cap Motorola's claim for patent damages") is no longer even

7    available to Microsoft.

8    Microsoft's breach of contract theory relies solely on two letters sent by Motorola to

9    Microsoft that offered to license Motorola's "essential" patents on RAND terms and proposed

10   a royalty rate to be applied to relevant Microsoft products.  The letters proposed no other terms

11   — those terms were left for the parties to establish during the negotiations contemplated by the

12   standards organizations and that Motorola anticipated would take place.  Microsoft contends

13   that these opening proposals were so unreasonable as to justify Microsoft's decision to sue

14   Motorola rather than to engage in licensing negotiations.  But the reasonableness of any offer

15   by Motorola, and the issue of whether such offer is discriminatory, is inherently factual in

16   nature.  As a result, there will be material facts in dispute that will bar any attempt to resolve

17   this dispute via summary judgment.  Further, when these issues go to trial, the facts will not

18   support Microsoft's claims.

19        2.    ADR Method:  The Parties believe that a party-appointed mediator as described

20   in Local Rule 39.1(b)(3) should be the initial method of alternative dispute resolution.  The

21   parties note that they are involved as parties in a number of other actions in this and other

22   forums, some of which also require the parties to participate in ADR proceedings.  In an action

23   pending in the Southern District of Florida, the parties have agreed to retain Edward Infante of

24   the San Francisco office of JAMS to mediate the disputes between the parties.  This mediation

25

SECOND REVISED JOINT STATUS REPORT - 7

1  is scheduled to take place on July 12, 2011.  Although the Florida action does not relate to the

2  subject matter of this case, the parties currently expect that this mediation will address all

3  disputes between the parties, including the disputes in this action.

4       3.    <u>ADR Timing</u>:  The mediation required by the Southern District of Florida must

5  take place before August 3, 2011, and the parties currently expect the mediation before retired

6  Magistrate Judge Infante to take place on July 12, 2011.

7       4.    <u>Deadline for Joining Additional Parties</u>:  The Parties propose that any additional

8  parties be joined by no later than August 5, 2011.

9       5.    <u>Discovery</u>:

10       A.    The Parties conducted a FRCP 26(f) conference on January 12, 2011 and

11  served their initial disclosures on February 7, 2011.  In the former 2:11-cv-00343-JLR action,

12  now consolidated in this action, the parties conducted FRCP 26(f) conferences on February 3

13  and May 17, 2011, and served Initial Disclosures on February 17, 2011.

14       B.    The subjects on which discovery may be needed and whether discovery

15  should be conducted in phases or be limited to or focused upon particular issues:

16       <u>Microsoft's Position</u>

17  Microsoft proposes that discovery be conducted in two phases.

18  The first phase should last until November 1, 2011 (the "Initial Discovery Period"), and

19  be limited to discovery related to Microsoft's RAND-based claims.  At the conclusion of the

20  Initial Discovery Period, Microsoft anticipates filing a motion for summary judgment on the

21  topics addressed below (to be filed no later than November 10, 2011).  Once the Court has

22  ruled on Microsoft's motion for summary judgment, the second discovery phase will

23  commence.  Discovery during this second phase will be aimed at any issues remaining in the

24  case, including any patent infringement claims and any remaining RAND-related issues.

25

SECOND REVISED JOINT STATUS REPORT - 8

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

1   At its heart, this action is primarily a licensing dispute between the parties.  The Court

2   will be asked to determine whether Motorola has breached its contractual commitments by

3   offering a non-RAND royalty in both cases.  Making this determination of breach early

4   (potentially on summary judgment) may result in negotiation of a RAND royalty, or will lead

5   to a trial in which a RAND royalty is determined for the RAND patents at issue.  *See* Court's

6   June 1, 2011 Order (noting that "if the parties do not negotiate a RAND rate, this Court will

7   need to issue a RAND rate to determine the damages in both cases").  Microsoft believes that

8   early resolution of the RAND rate could effectively take place in advance of (and could reduce

9   the scope of) the Markman hearing on the patent side of the case.

10   Upon conclusion of the Initial Discovery Period, Microsoft anticipates filing a motion

11   for summary judgment asking the Court to find that Motorola was obligated to, but failed to,

12   offer Microsoft a license on RAND terms and conditions.  Summary resolution of this issue

13   would very likely lead to negotiation of a RAND royalty or, alternatively, a trial to determine a

14   RAND royalty.  Either result could remove the RAND-related patents from the balance of the

15   dispute, streamlining additional discovery and otherwise reducing the scope of the Parties'

16   dispute.  Following a decision on Microsoft's motion, the Court could revisit the sequencing of

17   discovery on all remaining claims.

18   If a trial of the issue of breach and/or of a RAND royalty is necessary, Microsoft

19   believes that it is likely to be appropriate for the Court to bifurcate that trial from a later trial of

20   the other patent issues under Fed. R. Civ. P. 42, staying discovery related to the infringement

21   claims (including those relating to the RAND patents) pending the first trial.  Setting a RAND

22   rate could obviate infringement issues relating to the RAND patents since a license could

23   result.  This approach was taken in *Ericsson Inc. v. Samsung Electronics Co., Ltd.*, No. 2:06-

24   CV-63, 2007 U.S. Dist. LEXIS 29257 (E.D. Tex. Apr. 20, 2007) under nearly identical

25

SECOND REVISED JOINT STATUS REPORT - 9

1   procedural circumstances. As the court recognized, "[i]t may be that the outcome of the

2   FRAND case does not resolve all of the parties' disputes in the present suit. Nevertheless, the

3   possibility that resolution of the FRAND case might alleviate many of the primary differences

4   between these two parties is sufficient to counsel the court" to bifurcate the matter. *Id.*, at \*7.

5   The court found that the RAND-based breach of contract claims should be tried first, in the

6   interest of "expedition and economy," with the patent infringement claims stayed pending the

7   outcome of the initial trial. *Id.*, at \*8. Three months after the court entered its order

8   bifurcating the RAND and patent claim trials, the parties settled their disputes. *Id.*, No. 2:06-

9   CV-63, Dkt. No. 82. Motorola's argument that the court in *Ericsson* was mistaken in ordering

10   bifurcation is contradictory to the position Motorola took earlier in this litigation, when

11   Motorola argued that its patent infringement claims were not compulsory counterclaims and

12   could be tried separately from Microsoft's RAND-based claims. *See, e.g.*, Motorola's

13   Opposition to Microsoft's Renewed Motion to Dismiss in the former 2:11-cv-00343-JLR

14   action (ECF No. 79), at p. 1 (in which Motorola argued that "[t]here is no sound reason why

15   [Motorola's] Patent Action cannot proceed as a separate action").

16        Microsoft further believes that the parties should be limited to 10 depositions and 25

17   written interrogatories each during the initial discovery period, as provided in FRCP 30 and

18   FRCP 33. The issues related to Microsoft's RAND-based claims are straight-forward and

19   primarily legal in nature, and there is currently no need to depart from the presumptive limits

20   set forth in the Federal Rules of Civil Procedure with respect to those claims. To the extent

21   either party believes that additional depositions or interrogatories may be needed, that

22   party may seek leave of the Court pursuant to Rule 26(b)(2)(A).

23        For the second phase of discovery, Microsoft proposes that the parties revisit whether

24   and to what extent additional discovery is needed on the parties' patent infringement claims

25

SECOND REVISED JOINT STATUS REPORT - 10

1   once the Initial Discovery Period is complete and the Court has ruled on Microsoft's motion

2   for summary judgment. Microsoft notes that, to date, Motorola has served 19 interrogatories

3   and 199 requests for production, and Microsoft has served 13 interrogatories and 174 requests

4   for production, relating to the Parties' patent infringement claims. Any deadlines for serving

5   or supplementing a Party's responses to the other Party's patent infringement-related discovery

6   requests should be tolled during the Initial Discovery Period.

7                           Motorola's Position

8        Microsoft's proposal for an initial phase of discovery limited to RAND-based claims

9   would result in piecemeal conduct of litigation, which is the exception not the rule, and

10  Microsoft bears the burden of proof to justify it. *Output Technology Corp. v. Dataproducts*

11  *Corp.*, 1991 U.S. Dist. LEXIS 20168 (W.D. Wash. Nov. 25, 1991). As is usually the case,

12  phased discovery and bifurcation are unwarranted here for a number of reasons. As this Court

13  noted in its June 1, 2011 Order consolidating the actions (ECF No. 66), there are factual

14  overlaps and common questions of law as between the RAND and patent claims. Attempting

15  to bar discovery on some issues while going forward on others will spawn ancillary motion

16  practice over the proper scope of discovery that will consume time and expense. Also, for

17  discovery that is delayed, the potential loss of documents and fading recollections of witnesses

18  will create needless difficulties. Motorola is entitled to discovery and trial on its patent claims

19  according to a normal schedule without the unnecessary delays imposed by Microsoft's

20  scheme.

21       Microsoft proposes to conclude its proposed initial phase with summary judgment

22  motions directed to RAND issues. As stated above, any such motion faces complex fact

23  disputes in an area that has thus far been untouched by any Court. There is no reasonable

24  expectation that such motions will be granted. Moreover, the relief sought by Microsoft's

25

SECOND REVISED JOINT STATUS REPORT - 11

1   motion will at most require Motorola to make a new RAND offer — the Court is not being

2   asked to determine that offer.  It is totally speculative what would happen after that — whether

3   Microsoft would accept the offer; whether the parties would negotiate; at what point the Court

4   would be called in to determine a rate.  Thus, the so-called initial phase is actually the first of a

5   multi-phase Court-supervised negotiation process of indefinite length and uncertain outcome.

6   Granting that one possible end of such a procedure would be Court-ordered RAND terms, even

7   then there the matter is not over, because Microsoft could still decline to license the patents in

8   suit, given its noninfringement and invalidity averments.

9          Microsoft's reliance on *Ericsson Inc. v. Samsung Electronics Co.*, No. 2:06-cv-63,

10   2007 WL 1202728 (E.D. Tex. Apr. 20, 2007), is misplaced.  The Court in *Ericsson* heavily

11   relied on a Delaware federal court decision that suggested that RAND issues were distinctly

12   separable from patent issues, *id.* at *2.  That unpublished case, *Nokia Corp. v. Qualcomm, Inc.*,

13   No. Civ. A 06-509, 2006 WL 2521328 (D. Del. Aug. 29, 2006), remanded an action seeking to

14   set a RAND rate from the Delaware federal court to the Delaware Chancery Court, on the

15   ground that no patent issues were involved.  The opinion discussed the RAND issue only

16   fleetingly and its only citation was to a case that did not involve standards-essential patents.

17   Id. at *1-2.  Moreover, the *Ericsson* Court did not take into account the subsequent history of

18   the *Nokia v. Qualcomm* dispute: upon remand, the *Nokia* state court subsequently found that a

19   patent analysis ***is necessary*** to RAND royalty issues.  *Nokia Corp. v. Qualcomm, Inc.*, C.A.

20   No. 2330-VCS, DktDocket Entry. 316 at 25-26 (Del. Ch. Oct. 17, 2007).  Because Nokia

21   would not stipulate to the validity and infringement of the patents at issue, it was forced to

22   tailor narrowly its RAND claim to avoid implicating RAND royalty issues.  (The case settled

23   on the eve of trial, with Nokia paying $2.3 billion, plus 15 years of ongoing royalties, to

24   Qualcomm).

25

SECOND REVISED JOINT STATUS REPORT - 12

1    Thus, as discussed above, Motorola submits that discovery on all issues should proceed

2    as in a normal litigation.  The parties' patent discovery will be directed to, *inter alia*:  (i) the

3    proper construction of the claims of the patents asserted by the parties; (ii) whether any of the

4    patents asserted by Motorola Mobility and General Instrument is infringed by any of

5    Microsoft's products; (iii) whether any of the patents asserted by Microsoft is infringed by any

6    of Motorola Mobility's and General Instrument's products; (iv) whether any of the asserted

7    patents by any party is invalid or unenforceable; and (v) other affirmative patent defenses.

8    Included in the affirmative defenses are Microsoft's affirmative defenses and

9    counterclaims related to RAND, which will directed to an inquiry whether Motorola Mobility,

10   Motorola Solutions and General Instrument have complied with any alleged obligations in

11   connection with their activities in standards-setting and related organizations.  This will

12   include an inquiry as to any obligation to offer a license to Microsoft under the asserted

13   patents, based on reasonable and non-discriminatory ("RAND") terms.

14   Contrary to the oversimplified view that Microsoft puts forward, the determination of a

15   RAND rate for Motorola's domestic and foreign 802.11 and H.264 portfolios, or a portion

16   thereof, will be a complex task, will require significant discovery from Microsoft and

17   Motorola, and will likely also include discovery from many non-parties who have licensed or

18   offered to license similar essential patents on RAND terms.  Discovery likely will be directed

19   to, *inter alia*: (i) Motorola's and Microsoft's efforts to license necessary or essential patents to

20   others on RAND terms pursuant to any obligations to the IEEE, ITU, and their members; (ii)

21   competitive technologies at the time of the relevant standard setting events and today; (iii)

22   comparable licenses offered and/or granted by non-parties under the same intellectual property

23   rights requirements or similar requirements of IEEE, ITU and other standards setting

24   organizations such as the ETSI; and (iv) the relative import of the patented features in the

25

SECOND REVISED JOINT STATUS REPORT - 13

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

1   accused products.  Moreover, after fact discovery of parties and non-parties is conducted, time

2   must be allocated for experts to review the discovery, prepare reports, and be deposed.

3          Significantly, the Standards Organizations whose rules Microsoft relies on for its

4   RAND defense have totally disavowed any role in the promulgation of rules or guidelines

5   defining what "RAND" terms are, how RAND terms should be determined, or what terms

6   might be considered exemplary or even acceptable.  Moreover, no court has actually

7   determined a RAND rate or RAND terms. Although commentators have discussed how RAND

8   rates and terms may be set, they emphasize the complexity that would have to be involved in

9   such a determination.

10         If phased discovery and bifurcation is a course that the Court desires to seriously

11  consider, Motorola requests that the Court provide for a briefing schedule on this issue, prior to

12  final determination regarding such a course.  If anything, it would make more sense to phase

13  the case such that the patent issues are tried first.  The resolution of the patent issues will likely

14  obviate the need to embark on the complex RAND analysis.  On the other hand, if the Court is

15  inclined to implement Microsoft's phased discovery proposal without further briefing,

16  Microsoft's proposed cut-off date for discovery on RAND issues is too short.  As Motorola

17  proposed in the previous March 14, 2011 Supplemental Status Report (ECF No. 59), this is a

18  novel action.  No Court has adjudicated a RAND licensing rate and, accordingly, there is no

19  body of judicial law on which the parties can predicate discovery.  Discovery in this action will

20  plow new ground and likely will be complex.  Accordingly, Motorola anticipates that

21  discovery on RAND issues alone should extend to February 1, 2012.

22         The best course for this case is to proceed in the normal fashion, treating this case as a

23  patent case with RAND defenses, and scheduling discovery, claim construction, summary

24  judgment motions, expert reports and trial in accord with the local rules of this District and this

25

SECOND REVISED JOINT STATUS REPORT - 14

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

1   Court.  To that end, Motorola submits at Tab A, a proposed schedule for the case.  As

2   discussed, Microsoft's proposal to bypass this normal procedure with a multiphase RAND-

3   focused procedure is fraught with problems and uncertainties.  Although Microsoft's goal of

4   avoiding litigation if it is unnecessary is a laudable one, there are two scenarios already in

5   place that better serve that goal.  First, as discussed in Paragraphs 2 and 3 above, a mediation is

6   scheduled, pursuant to ADR procedures in an ongoing case in the Southern District of Florida

7   between the parties.  Other ADR procedures are in place in the ITC proceeding.  Second, as

8   noted above, the ITC proceeding is scheduled for hearing this October, and for final

9   determination on May 23, 2012.  Motorola submits, and common sense suggests, that

10  developments in the ITC proceeding between October and May will likely be outcome

11  determinative as to all disputes between the parties.

12          C.      What changes should be made in the limitations on discovery imposed

13  under the Federal and Local Civil Rules, and what other limitations should be imposed;

14          Microsoft's Position

15      Motorola overstates the complexity of the contract-based RAND issues, which can be

16  resolved relatively quickly and efficiently as compared to a full-blown patent case on the

17  allegedly essential Motorola patents at issue.  RAND commitments are intended to streamline

18  the licensing of patented technology that has been incorporated into a standard in such a way

19  that is not compatible with Motorola's approach to this case.  Microsoft's position with respect

20  to discovery is as described above in Paragraph 5B.

21          Motorola's Position

22      In addition to the discussion above in Paragraph 5B, Motorola submits that in light of

23  the fact that there are five patents, at least three families of accused products, and the presence

24  of the complex RAND issues in this action, there should be provisions for extensive discovery

25

SECOND REVISED JOINT STATUS REPORT - 15

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1   in this action, including permission for the parties to take 35 depositions and propound 50

2   interrogatories.

3            D.     A statement of how discovery will be managed so as to minimize

4   expense (e.g., by foregoing or limited depositions, exchanging documents informally, etc.):

5            Microsoft's Position

6   As described above in Paragraph 5B.

7            Motorola's Position

8   As described above in Paragraph 5B.

9            E.     Any other orders that should be entered by the Court under FRCP 26(c)

10   or under Local Rule CR 16(b) and (c).

11       The Parties filed a proposed Protective Order Regarding the Disclosure and Use of

12   Discovery Materials on April 22, 2011. (ECF No. 64). The Court has not yet entered the

13   Order.

14           6.     Date of Discovery Completion:

15            Microsoft's Position

16       Microsoft anticipates that the Initial Discovery Period can be completed by November

17   1, 2011, with Microsoft filing its anticipated motion for summary judgment by November 10,

18   2011. Microsoft proposes that, after the Court rules on Microsoft's anticipated motion for

19   summary judgment, the Parties submit a revised joint status report setting forth the additional

20   discovery deadlines, including deadlines for propounding additional discovery and for

21   exchanging expert witness reports for issues that may remain in the case (*e.g.*, patent

22   infringement issues and/or appropriate royalty).

23

24

25

SECOND REVISED JOINT STATUS REPORT - 16

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1        Motorola's Position

2            Motorola believes that discovery should go forward on all issues in the normal course.

3    As provided for in the attached schedule, Motorola submits that discovery completion be set

4    for May, 2012.

5        7.    Magistrate Judge Referral:  The Parties do not agree to referral of the case to a

6    magistrate judge.

7        8.    Bifurcation:

8            Microsoft's Position

9            As described above in Section 5B, Microsoft's current belief is that discovery should be

10   sequenced with only RAND-related discovery occurring during the Initial Discovery Period.

11   Depending on how the Court rules on Microsoft's anticipated motions for summary judgment

12   (which are described below in Section 10), Microsoft believes that bifurcation may be

13   appropriate, for the reasons discussed by the court in *Ericsson Inc. v. Samsung Electronics Co.,*

14   *Ltd.*, No. 2:06-CV-63, 2007 U.S. Dist. LEXIS 29257 (E.D. Tex. Apr. 20, 2007).

15           Motorola's Position

16           Motorola believes that there is no justification for bifurcation.

17       9.    Pretrial Statement/Orders:  The Parties agree that Pre-Trial Statements and

18   Orders called for by Local Rules CR 16(e), (h), (i), and (l), and 16.1 should not be dispensed

19   with in whole or in part.

20       10.   Suggestions for Case Simplification or Shortening:

21           The Parties will work cooperatively to identify any opportunities to streamline the case,

22   including exploring the possibility of stipulating to any undisputed facts.  Each Party will also

23   consider whether any issues can be resolved prior to trial via the filing of dispositive motions.

24   In addition:

25

SECOND REVISED JOINT STATUS REPORT - 17

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1          Microsoft's Position

2          Microsoft believes that the development and presentation of the factual and legal issues

3     relevant to its RAND-based claims should be relatively straight-forward.  Microsoft anticipates

4     filing dispositive motions on at least the following two issues at the end of the Initial Discovery

5     Period and by no later than November 10, 2011, which Microsoft expects could substantially

6     narrow the issues for trial or obviate the need for trial entirely:

7          (1)     Whether Motorola was obligated to offer licenses to Microsoft for any of the

8                  patents they asserted were essential to the 802.11 WLAN wireless internet

9                  standard and the H.264 video compression standard on reasonable and non-

10                 discriminatory (RAND) terms and conditions; and

11         (2)     Whether Motorola violated its RAND obligations by demanding that Microsoft

12                 pay a royalty of 2.25 percent per unit, based on the price of each end-product

13                 incorporating the allegedly essential patent.

14         Attempting to address the parties' patent infringement claims at the same time as the

15    breach of contract claims will drastically increase the costs to the parties and complicate the

16    discovery process during the Initial Discovery Period, especially where determination of

17    whether Motorola has met its licensing obligations may lead to resolution of many – if not all –

18    of the Parties' disputes.  For instance, if the Court determines that Motorola has breached its

19    contractual commitments by failing to offer Microsoft a license to its H.264-related patents on

20    RAND terms and conditions, Motorola will instead be obligated to offer Microsoft RAND

21    terms.  To the extent the parties are unable to reach agreement on RAND terms and conditions,

22    the issue can be determined at an early trial that would also serve to cap Motorola's claim for

23    patent damages.

24

25

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

1    Once the Court rules on Microsoft's anticipated motion, the Parties will be in a position

2    to address any remaining scheduling issues in a revised joint status report.  Any such report

3    will include the patent-related deadlines contemplated by the Local Patent Rules and this

4    Court's Standing Order for Patent Cases.

5    Motorola's Position

6    This action should be treated normally, without phased discovery or bifurcation of trial.

7    As to Microsoft's RAND defenses, Motorola believes that the development and presentation of

8    factual and legal issues relevant to that dispute will plow new ground and are complex (indeed,

9    have never been attempted by any court in the United States).  Motorola expects to

10   successfully oppose any summary judgment motions filed by Microsoft, particularly the above

11   described motions related to fact-intensive RAND issues.

12   11.    Trial Readiness:

13   Microsoft's Position

14   Microsoft believes that the Initial Discovery Period should continue through November

15   1, 2011, with Microsoft being ordered to file any dispositive motion on the subjects identified

16   in Paragraph 10, above, by November 10, 2011.  Once the Court has ruled on Microsoft's

17   motion for summary judgment, the Court can direct the Parties to propose a revised joint status

18   report that addresses any claims or issues that may remain in the case.

19   Microsoft believes that the trial on the patent infringement claims, if necessary, could

20   occur in November 2012, the same month Motorola proposes for trial in this matter.

21   Motorola's Position

22   This action should proceed to trial according to a normal schedule without phasing or

23   bifurcation.  As provided for in the attached schedule, Motorola submits that trial could be set

24   for November 2012.

25

SECOND REVISED JOINT STATUS REPORT - 19

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1    12.    <u>Jury Trial</u>: Motorola requests a jury trial on the patent claims.

2    13.    <u>Trial Days</u>:

3           <u>Microsoft's Position</u>

4           Depending on the claims that remain to be tried after the Court rules on Microsoft's

5    motion for summary judgment, Microsoft believes that the trial can likely be completed in 4-6

6    days.  However, Microsoft reserves the right to revise this estimate based on the outcome of

7    Microsoft's anticipated motion for summary judgment, described above in Section 10.

8           <u>Motorola's Position</u>

9           Motorola believes that the trial can be completed in 8-10 days.

10   14.    <u>Name and address of all trial counsel</u>:

11          <u>For Microsoft Corporation</u>

12          Arthur W. Harrigan, Jr.
13          Christopher Wion
            Shane P. Cramer
14          Danielson Harrigan Leyh & Tollefson LLP
            999 Third Avenue, Suite 4400
15          Seattle, WA  98104
            206-623-1700
16          arthurh@dhlt.com
            chrisw@dhlt.com
17          shanec@dhlt.com

18          T. Andrew Culbert
19          425-706-6921
            andycu@microsoft.com
20          David E. Killough
            425-703-8865
21          davkill@microsoft.com
            Microsoft Corp.
22          One Microsoft Way
            Redmond, WA  98052
23
            Brian R. Nester
24          bnester@sidley.com

25

SECOND REVISED JOINT STATUS REPORT - 20

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1

Kevin C. Wheeler
kwheeler@sidley.com
Sidley Austin
1501 K Street NW
Washington DC  20005
202-736-8017

2

3

4

David Pritikin
dpritikin@sidley.com
Douglas I. Lewis
dilewis@sidley.com
John W. McBride
jwmcbride@sidley.com
Richard Cederoth
rcederoth@sidley.com
Sidley Austin
One South Dearborn
Chicago, IL  60603
312-853-7000

5

6

7

8

9

10

11

For Motorola Defendants

12

13

Philip S. McCune
philm@summitlaw.com
Lynn M. Engel
lynne@summitlaw.com
Summit Law Group
315 Fifth Ave. South, Suite 1000
Seattle, WA  98104-2682
206-676-7000
Fax:  206-676-7001

14

15

16

17

18

Jesse J. Jenner
Jesse.jenner@ropesgray.com
Steven Pepe
Steven.pepe@ropesgray.com
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY  10036-8704
Phone:  212-596-9000

19

20

21

22

23

Norman H. Beamer
Norman.beamer@ropesgray.com
Ropes & Gray LLP

24

25

SECOND REVISED JOINT STATUS REPORT - 21

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1900 University Avenue, 6th Floor
East Palo Alto, CA 94303-2284
Phone: 650-617-4000

Paul M. Schoenhard
Paul.schoenhard@ropesgray.com
Ropes & Gray LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC 20005-3948
Phone: 202-508-4650

15. Service: The defendants have been duly served with the complaints in both actions.

16. Scheduling Conference: The Parties do not anticipate the need for a scheduling conference at this time, but reserve the right to request such a conference if and when the need arises.

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

2          DATED this 17th day of June, 2011.

3  | DANIELSON HARRIGAN LEYH & | SUMMIT LAW GROUP PLLC |
   | TOLLEFSON LLP |  |

4
   By /s/ Christopher Wion              By /s/ Philip S. McCune
5  Arthur W. Harrigan, Jr., WSBA #1751  Philip S. McCune, WSBA #21081
   Christopher Wion, WSBA #33207        Lynn M. Engel, WSBA #21934
6  Shane P. Cramer, WSBA #35099         philm@summitlaw.com
                                        lynne@summitlaw.com
7  T. Andrew Culbert, WSBA #35925
8  David E. Killough, WSBA #21119       And by
   MICROSOFT CORPORATION
9  1 Microsoft Way                      Steven Pepe (pro hac vice)
   Redmond, WA 98052                    Jesse J. Jenner (pro hac vice)
10 Phone: 425-882-8080                  Ropes & Gray LLP
   Fax: 425-869-1327                    1211 Avenue of the Americas
11                                      New York, NY 10036-8704
                                        (212) 596-9046
12 John W. McBride (pro hac vice)       steven.pepe@ropesgray.com
   David T. Pritikin (pro hac vice)     jesse.jenner@ropesgray.com
13 Richard A. Cederoth (pro hac vice)
   Douglas I. Lewis (pro hac vice)
14 SIDLEY AUSTIN LLP                    Norman H. Beamer (pro hac vice)
   One South Dearborn                   Ropes & Gray LLP
15 Chicago, IL 60603                    1900 University Avenue, 6th Floor
   Phone: 312-853-7000                  East Palo Alto, CA 94303-2284
16 Fax: 312-853-7036                    (650) 617-4030
                                        norman.beamer@ropesgray.com
17 Brian R. Nester (pro hac vice)
   Kevin C. Wheeler (pro hac vice)      Paul M. Schoenhard (pro hac vice)
18 SIDLEY AUSTIN LLP                    Ropes & Gray LLP
   1501 K Street NW                     One Metro Center
19 Washington, DC 20005                 700 12th Street NW, Suite 900
   Telephone: 202-736-8000              Washington, DC 20005-3948
20 Fax: 202-736-8711                    (202) 508-4693
                                        Paul.schoenhard.@ropesgray.com
21 **Counsel for Microsoft Corp.**

22                                      **Attorneys for Motorola Solutions, Inc.**
                                        **(f/k/a Motorola, Inc.), Motorola Mobility,**
23                                      **Inc., and General Instrument Corporation**

24

25

SECOND REVISED JOINT STATUS REPORT - 23

I.      **Motorola's Proposed Schedule**

| Deadline | Motorola's Proposed Dates |
|---|---|
| **Deadline to Disclose Preliminary Infringement Contentions & Disclosure of Asserted Claims** | September 2, 2011 |
| **Deadline to Disclose Preliminary Invalidity Contentions** | September 30, 2011 |
| **Deadline to Exchange Expert Witness Reports on Markman Issues (if necessary)** | November 16, 2011 |
| **Deadline to Exchange Rebuttal Expert Witness Report on Markman issues (if necessary)** | December 16, 2011 |
| **Deadline to Exchange Preliminary Claim Charts** | December 30, 2011 |
| **Deadline to File Joint Claim Chart and Prehearing Statement** | January 27, 2012 |
| **Deadline to File Opening Markman Briefs** | February 10, 2012 |
| **Deadline to File Response Markman Briefs** | March 2, 2012 |
| **Claim Construction Hearing** | March 30, 2012 |
| **Completion of Discovery** | May 11, 2012 |
| **Deadline to Exchange Opening Expert Reports for which party bears burden of proof** | May 25, 2012 |
| **Deadline to Exchange Rebuttal Expert Reports for which party bears burden of proof** | June 22, 2012 |
| **Deadline to File Dispositive Motions** | July 20, 2012 |
| **Trial** | November 5, 2012 |

26715295_4