HONORABLE JAMES L. ROBART

1

2

3

4

5

6

7  IN THE UNITED STATES DISTRICT COURT
   FOR THE WESTERN DISTRICT OF WASHINGTON
8  AT SEATTLE

9  MICROSOFT CORPORATION,

                          Plaintiff,          No. C10-1823-JLR
10
          v.                                   MICROSOFT'S MOTION FOR
11                                             PARTIAL SUMMARY JUDGMENT
   MOTOROLA, INC., et al.,
12                                             **NOTED:  Friday, September 9, 2011**
                          Defendants.
13                                             **ORAL ARGUMENT REQUESTED**

14 MOTOROLA MOBILITY, INC., et al.,

15                        Plaintiffs,
          v.
16
   MICROSOFT CORPORATION,
17
                          Defendant.
18

19

20

21

22

23

24

25

MICROSOFT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   RELIEF REQUESTED ................................................................................... 4

III.  STATEMENT OF FACTS .............................................................................. 4

      A.    The SSOs and the Standards at Issue in this Action ................................ 4

      B.    Motorola Committed to Make Licenses Available on RAND
            Terms and Conditions ........................................................................ 5

            1.    802.11:  Motorola's RAND Commitment to the
                  IEEE and Its Members ................................................................ 5

            2.    H.264:  Motorola's RAND Commitment to the
                  ITU and Its Members. ................................................................ 6

      C.    Motorola Demands Unreasonable Royalties from Microsoft .................... 7

            1.    Motorola's Demand Letters ......................................................... 7

            2.    Microsoft Products Affected by Motorola's Unreasonable
                  Demands ................................................................................. 7

                  a.    The Xbox 360 .................................................................. 7

                  b.    Other Products Affected by Motorola's
                        H.264 Demand ................................................................ 9

IV.   LEGAL ARGUMENT ................................................................................... 10

      A.    Motorola Entered into Enforceable Contracts with the IEEE
            and ITU of which Microsoft Is a Third Party Beneficiary ..................... 11

      B.    Motorola's RAND Commitment Precludes Motorola from
            Demanding an Unreasonable Royalty ................................................... 13

      C.    Motorola's Royalty Demand Bears No Meaningful Relationship
            to the Value of Its Technology ........................................................... 17

MICROSOFT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - i

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1            1.      Motorola's Offer Is Unreasonable ...............................................17

2.      Motorola's Demands Violate the "Entire Market Value" Rule.....19

3.      The Disparity Between Motorola's Proposed Percentage-Based Royalty and the Flat Royalty Charged by other H.264 and 802.11 Licensors Results from Motorola's Disproportionate Royalty Demand ..............................................20

V.       CONCLUSION................................................................................22

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

# TABLE OF AUTHORITIES

**Page**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S.Ct. 2505 (1986)..................................................................11

*Apple, Inc. v. Motorola Mobility, Inc.*,
No. 11-cv-178, 2011 U.S. Dist. LEXIS 72745
(W.D. Wisc. June 7, 2011) .................................................................................12

*Broadcom Corp. v. Qualcomm, Inc.*,
501 F.3d 297 (3d Cir. 2007) ........................................................................14, 15

*Celotex Corp. v. Catrett*,
477 U.S. 317, 106 S. Ct. 2548 (1986).........................................................10, 11

*Cline v. Indus. Maint. Eng'g & Contracting Co.*,
200 F.3d 1223 (9th Cir. 2000) ............................................................................11

*Ericsson Inc. v. Samsung Elecs. Co.*,
No. 2:06-CV-63, 2007 U.S. Dist. LEXIS 29257
(E.D. Tex. Apr. 20, 2007) ...................................................................................12

*ESS Technology, Inc. v. PC-Tel, Inc.*,
1999 U.S. Dist. LEXIS 23227 (N.D. Cal. Nov. 4, 1999)....................................12

*Evans v. Yakima Valley Grape Growers Assoc.*,
52 Wn.2d 634, 328 P.2d 671 (1958)...................................................................11

*Galen v. County of Los Angeles*,
477 F.3d 652 (9th Cir. 2007) .......................................................................10, 11

*Hon Hai Precision Indus. Co. v. Molex, Inc.*,
No. 08-C-5582, 2009 U.S. Dist. LEXIS 9165, (N.D. Ill. Feb. 9, 2009) ..............14

*In re Independent Serv. Orgs. Antitrust Litig.*,
989 F. Supp. 1131 (D. Kan. 1997).......................................................................16

*Johnson v. Allstate Ins. Co.*,
126 Wn. App. 510, 108 P.3d 1273 (2005) ..........................................................10

*Knipschield v. C-J Recreation, Inc.*,
74 Wn. App. 212, 872 P.2d 1102 (1994) ............................................................10

MICROSOFT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - iii

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

*Microsoft Corp. v. Motorola, Inc.*,
 No. 10-cv-1823JLR, 2011 U.S. Dist. LEXIS 73827
 (W.D. Wash. June 1, 2011) ...................................................................... 15

*N.W. Indep. Forest Mfrs v. Dep't of Labor and Indust.*,
 78 Wn. App. 707, 899 P.2d 6 (1995) ....................................................... 10

*Potter Instrument Co. v. Storage Technology Corp.*,
 1980 U.S. Dist. LEXIS 14348 (E.D. Va. Mar. 25, 1980) ...................... 14

*Research in Motion Ltd. v. Motorola, Inc.*,
 644 F. Supp. 2d 788 (N.D. Tex. 2008) ............................................... 14, 15

*Uniloc USA, Inc. v. Microsoft Corp.*,
 632 F.3d 1292 (Fed. Cir. 2011) ............................................................... 19

*W.L. Gore & Assoc., Inc. v. Carlisle Corp.*,
 529 F.2d 614 (3d Cir. 1976) .................................................................... 16

*Zoran Corp. v. DTS, Inc.*,
 No. 08-4655, 2009 U.S. Dist. LEXIS 6675 (N.D. Cal. Jan. 20, 2009) ........... 16, 17

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

Microsoft respectfully moves against Motorola, Inc. (n/k/a Motorola Solutions, Inc.), Motorola Mobility, Inc., and General Instrument Corporation (collectively "Motorola") for partial summary judgment that Motorola has breached its contractual commitments to make available to Microsoft on reasonable and non-discriminatory ("RAND") terms licenses to patents Motorola has declared essential to two technology standards.  Microsoft is not asking the Court to rule at this time on the relief to which Microsoft is entitled as a consequence of that breach.

## I.  INTRODUCTION

Motorola participated in the process to determine the standards for implementing wireless networking and video coding/decoding.  As a condition for that participation, Motorola committed to licensing any patents essential to those standards on RAND terms and conditions.  Microsoft brought this lawsuit to enforce the contractual obligations that Motorola made when it declared that certain of its patents are essential to the 802.11 and H.264 standards.  The determination of Motorola's breach of those obligations presents a straightforward issue of law that does not turn on any genuine disputed issue of fact and accordingly is ripe for summary judgment.

The need for prompt judicial relief in this case is both urgent and compelling.  Motorola has launched a barrage of litigation against Microsoft on two continents, accusing Microsoft of infringing the very patents that it promised the relevant Standards Setting Organizations ("SSOs") it would license.  Knowing that the law requires those patents to be licensed on a RAND basis and that Microsoft could simply take a license to the patents and moot any patent infringement lawsuits, Motorola embarked on a charade designed to avoid its RAND obligations.

MICROSOFT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 1

1          Pursuant to that strategy and as a predicate to its lawsuits, Motorola made a license

2    "offer" to Microsoft that flagrantly violated Motorola's RAND commitments, that sought

3    royalties that are demonstrably and facially unreasonable and that no rational company in

4    Microsoft's position could possibly have accepted.  Once having tendered this illusory "offer,"

5    Motorola insists that it has done all that its RAND obligations require and now wants to

6    enforce its patents with injunctions against key Microsoft products.  This behavior makes a

7    mockery of the commitments that underlie the work of SSOs.

8          Worse, Motorola hopes to stall this lawsuit for more than a year while concurrently

9    seeking to enjoin Microsoft's sales.  Thus Motorola has pushed forward in an International

10   Trade Commission ("ITC") case against Microsoft, seeking to exclude from importation into

11   the U.S. Xbox consoles that allegedly use patents that Motorola committed to license on

12   RAND terms.  And, more recently, Motorola launched an action in Germany, in which it

13   threatens an injunction against the continued sale of Microsoft products that include H.264

14   standard technology at issue here.  Both Motorola's ITC case and its case in Germany will

15   reach conclusion long before the now-scheduled trial in this case.

16         Motorola's intent was apparent from the time it made its supposed "offer," which was

17   nothing more than a set-up for the ensuing litigation.  For that reason, Microsoft promptly

18   sought relief from this Court, seeking an adjudication of whether Motorola has met its RAND

19   obligations.  This case preceded the later-filed Motorola lawsuits and is critical to protecting

20   Microsoft's rights as a beneficiary of Motorola's RAND commitments.

21         The undisputed facts here show that Motorola has violated its obligations.  Motorola

22   has demanded from Microsoft a royalty rate of 2.25% of the end price of, among other

23   products, the Xbox 360 game console and laptops containing Microsoft Windows operating

24   system software.  As applied to the end product prices, these demands are orders of magnitude

25

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1   beyond RAND rates.  Indeed, where, as here, end product pricing varies widely for reasons

2   entirely unrelated to any contribution of Motorola's technology to the products, a royalty of

3   this sort is inherently unreasonable.

4        One of Motorola's royalty targets, the Xbox 360, is packaged and sold in various

5   configurations.  Prices vary widely because of the volume of data storage capacity, inclusion of

6   Microsoft's Kinect motion sensor technology, and the theme-based design, artwork, games and

7   accessories included with certain limited edition models.  Motorola's demanded royalty is

8   unreasonable regardless of *what specific value* is attached to the technology—as it rises based

9   only on variations in product elements having nothing to do with any Motorola technology.

10  Based on Microsoft's refusal to submit to Motorola's unreasonable demands, however, the

11  Xbox now faces a potential exclusion from the United States and removal from European

12  shelves in the next eight months, long before this case is to come to trial.

13       Motorola also demanded a 2.25% royalty rate based on pricing for products for which

14  Microsoft supplies only software—such as laptops.  This demand is not even limited to 2.25%

15  of the *Microsoft product* (such as the Windows 7 operating system).  Even though the H.264

16  video compression technology is but a minor component of this *Microsoft* product, Motorola

17  demanded 2.25% of the price of the *end product containing that software – e.g., 2.25% of the*

18  *retail price of a laptop or desktop computer.*

19       The present motion seeks only a determination of liability – whether Motorola has

20  violated its RAND obligations.  If the Court agrees with Microsoft that breach has occurred,

21  the relief can be fashioned in a later phase of the case.  In fact, the Court need not "value" the

22  Motorola technology – nor determine what a RAND rate *is* under the circumstances – to

23  determine that these demands were unreasonable.  Motorola's demanded royalties and

24

25

MICROSOFT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 3

conditions are facially unrelated to any contribution of Motorola's technology to the standards, or to the end product – and as an indisputable matter cannot be RAND.

## II.  RELIEF REQUESTED

Microsoft seeks partial summary judgment on the following issues and an order that:

1.  Motorola entered into binding contractual commitments with the Institute of Electrical and Electronics Engineers ("IEEE") and the International Telecommunications Union ("ITU"), committing to license its declared-essential patents on RAND terms and conditions.

2.  Microsoft is a third-party beneficiary of Motorola's commitments to the SSOs.

3.  When offering a license to a third-party beneficiary of Motorola's commitments to the SSOs, Motorola must offer RAND terms and conditions.

4.  Motorola's offers to Microsoft to license its H.264 and 802.11 declared-essential patents breached Motorola's RAND obligations because no reasonable trier of fact could conclude that the offers were on RAND terms and conditions.

## III.  STATEMENT OF FACTS

A.    **The SSOs and the Standards at Issue in this Action.**

Microsoft and Motorola are members of the IEEE and of the ITU.[1]  The IEEE and its internal Standards Association (the "IEEE-SA") developed the original 802.11 wireless networking standard and a number of amendments thereto (collectively, the "802.11 standard").[2]  The ITU Standardization Sector (the "ITU-T") and two other SSOs (the International Organization for Standardization and International Electrotechnical Commission (collectively, "ISO/IEC")) develop and maintain thousands of technical standards, including

---

[1] Motorola Answer and Counterclaims (Dkt. 68) at pp. 18-19, 22.

[2] *Id.* at pp. 6, 18.

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

ITU-T Recommendation H.264 (the "H.264 standard"), which relates to high compression video coding and decoding.[3]

**B.**  **Motorola Committed to Make Licenses Available on RAND Terms and Conditions.**

In accordance with the SSOs' relevant patent policies, Motorola provided written assurances to both the IEEE and ITU that it would make licenses to its essential patents available to potential implementers of the standards on RAND terms and conditions.

1.  802.11:  Motorola's RAND Commitment to the IEEE and Its Members.

The IEEE's Intellectual Property Rights ("IPR") Policy states that "IEEE standards may be drafted in terms that include the use of Essential Patent Claims."[4]  Relevant excerpts of the IPR Policy are included in Appendix A.  If "Essential Patent Claims"[5] are to be included, a disclosing patent holder is required either to state that it is unaware of any relevant patents or to provide the IEEE with a Letter of Assurance.  The patent holder may warn that it is not prepared to offer RAND terms, in which case the IEEE may take steps to avoid the patented technology.  Otherwise, the Letter of Assurance must include either (a) a commitment that the holder will not enforce any of its essential patents or (b):

> [a] statement that a license for a compliant implementation of the standard will be *made available to an unrestricted number of applicants* on a worldwide basis without compensation or *under reasonable rates*, with reasonable terms and conditions that are demonstrably free of any unfair discrimination.[6]

---

[3] *Id.* at pp. 22-23.

[4] Declaration of Christopher T. Wion in Support of Microsoft's Motion for Partial Summary Judgment ("Wion Dec."), Ex. 1, § 6.2.

[5] An "Essential Patent Claim" is "any Patent Claim the use of which was necessary to create a compliant implementation of either mandatory or optional portions of the normative clauses of the [Proposed] IEEE Standard when, at the time of the [Proposed] IEEE Standard's approval, there was no commercially and technically feasible non-infringing alternative…."  *Id.*, Ex. 1, § 6.1.

[6] *Id.*, Ex. 1, § 6.2(b) (italics added).

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

The IPR Policy states that "[t]he assurance is irrevocable once submitted[.]"[7]  Obviously, if the patent holder could revoke its assurance, the promise would be meaningless and the patent holder would be free to pounce once market participants had become locked in to the standard.

Motorola has submitted numerous Letters of Assurance to the IEEE in connection with the 802.11 standard.  In each Letter of Assurance, Motorola declared that it "will grant" or "is prepared to grant" "a license under reasonable rates [on a] non-discriminatory basis with reasonable terms and conditions to comply with the [Proposed] IEEE Standard."[8]

2.    H.264:  Motorola's RAND Commitment to the ITU and Its Members.

The ITU and ISO/IEC have established a similar IPR policy (*see* Appendix A). Holders of patents believed by them to be "essential" to implementing a standard Recommendation must file with the ITU a "Patent Statement and Licensing Declaration," in which the patent holder is required to declare whether it will grant a license to its "essential patents" to "an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions[.]"[9]  If the patent holder is unwilling to make such a commitment, "the [Recommendation] shall not include provisions depending on the patent."[10]

Motorola submitted several such Licensing Declarations to the ITU with respect to the H.264 standard in which Motorola declared that it either "will grant" or "is prepared to grant" a

> license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to make, use and sell implementations of the above document.[11]

---

[7] *Id.*

[8] *Id.*, Ex. 2.

[9] *Id.*, Ex. 3, at p. 11.

[10] *Id.*

[11] *Id.*, Ex. 4.

MICROSOFT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 6

**C.      Motorola Demands Unreasonable Royalties from Microsoft.**

       1.      Motorola's Demand Letters.

Last fall, Motorola sent two letters to Microsoft demanding unreasonable royalties for

802.11 and H.264 standard-compliant products.  In its October 21, 2010, 802.11 demand letter,

Motorola confirmed its offer:

> ... to grant Microsoft a worldwide non-exclusive license under Motorola's
> portfolio of patents and pending applications having claims that may be or
> become Essential Patent Claims (as defined in section 6.1 of the IEEE bylaws)
> for a compliant implementation of the IEEE 802.11 Standards…. Motorola
> offers to license the patents under reasonable and non-discriminatory terms and
> conditions ("RAND"), including a reasonable royalty of 2.25% per unit for each
> 802.11 compliant product, subject to a grant back license under the 802.11
> essential patents of Microsoft.  As per Motorola's *standard terms*, the royalty is
> calculated based on the *price of the end product (e.g., each Xbox 360 product)
> and not on component software* (e.g., Windows Mobile Software).[12]

On October 29, 2010, Motorola sent its similar H.264 demand, stating:

> Motorola offers to license the patents on a non-discriminatory basis on
> reasonable terms and conditions ("RAND"), including a reasonable royalty, of
> 2.25% per unit for each H.264 compliant product, subject to a grant back license
> under the H.264 patents of Microsoft, and subject to any Motorola
> commitments made to JVT in connection with an approved H.264
> recommendation.  As per Motorola's standard terms, the royalty is calculated
> based on the price of the end product (e.g., each Xbox 360 product, each
> PC/laptop, each smartphone, etc.) and not on component software (e.g., Xbox
> 360 system software, Windows 7 software, Windows Phone 7 software, etc.).[13]

       2.      Microsoft Products Affected by Motorola's Unreasonable Demands.

           a.     The Xbox 360.

Each letter seeks a 2.25% royalty rate on every Microsoft Xbox 360 that Microsoft

sells.  While the two demand letters together demand a total royalty of 4.5%, Microsoft expects

---

[12] *Id.*, Ex. 5 (italics added).

[13] *Id.*, Ex. 6.

MICROSOFT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 7

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700    FAX, (206) 623-8717

1   that Motorola intended to cap the total at 2.25%.  Either way, this royalty is a gross deviation

2   from Motorola's RAND commitments to the IEEE and ITU.

3        Microsoft currently markets its Xbox 360 S game console in six different

4   configurations, at prices ranging from $199 to $449.[14]  These Xbox 360 variants and the

5   corresponding royalty demands are summarized below in Table 1:

**TABLE 1**

| Xbox 360 Version[15] | Price | Royalty Demand | |
|---|---|---|---|
| | | @ 2.25% | @ 4.5% |
| 4 GB | $199 | $4.48 | $8.96 |
| 4 GB (with Kinect) | $299 | $6.73 | $13.46 |
| 250 GB | $299 | $6.73 | $13.46 |
| 250 GB (with Kinect) | $399 | $8.98 | $17.96 |
| 320 GB (Gears of War Ltd. Ed.) | $399 | $8.98 | $17.96 |
| 320 GB (Star Wars Ltd. Ed., with Kinect) | $449 | $10.10 | $20.21 |

13        Each version of the Xbox 360 has the *same* built-in wireless network adapter and the

14   *same* video decoding capabilities.[16]  Every version of the Xbox 360 also comes with an

15   Ethernet port that allows users to access the internet without any use of 802.11 wireless

16   technology.[17]  The H.264 functionality allows the Xbox 360 to stream video from the

17   internet.[18]  A user can play games on the Xbox 360 without using any 802.11 or H.264

18   technology.[19]  Some earlier versions of the Xbox did not include any such functionality.[20]

---

[14] Declaration of Roy Harlin ("Harlin Dec."), ¶ 3.

[15] *Id.*

[16] *Id.*, ¶ 4.

[17] *Id.*

[18] *Id.*

[19] *Id.*, ¶ 5.

[20] *Id.*

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

The price variations reflected above in Table 1 are not related to any differences in elements implementing the H.264 or 802.11 standards.[21]  Increases above the base-level Xbox 360 price are mainly a result of (a) increases in data storage capacity (4GB vs. 250GB vs. 320GB), (b) inclusion of the Kinect function, and (c) for the two limited edition models, addition of theme-based design, artwork, games and accessories.[22]

### b.    Other Products Affected by Motorola's H.264 Demand.

In addition to Xbox-related royalties, Motorola's October 29 demand letter seeks a 2.25% royalty rate applied to the end price of "each PC/laptop, each smartphone, etc." alleged to contain Microsoft software code implementing the H.264 standard (such as the "Windows 7 software").[23]  This demand is even more egregious than the Xbox 360 demand.

With limited exceptions, Microsoft does not sell PCs, laptops, or smartphones; generally, it sells "component software."  H.264-compliant software code is a small subpart of Microsoft's *software*.  It is a minute component of the end product.  But Motorola's demand explicitly states that the royalty is based on the price of the end product, not on the value of Microsoft's contribution to the end product ("not on component software"); not on the (necessarily smaller) contribution of any H.264-compliant technology in that software; and not on the (even smaller) alleged contribution by Motorola to the hundreds of patents essential to that standard.

Microsoft does not control the prices charged by the manufacturers or retailers of these end products that include the Microsoft software.  For example, one popular retailer, Best Buy, sells 194 laptops with the same Microsoft Windows 7 Home Premium Operating System, with

---

[21] *Id.*, ¶¶ 4, 6, 7.

[22] *Id.  See also* http://www.xbox.com/en-US/Xbox360/Consoles?xr=shellnav.

[23] Wion Dec., Ex. 6.

MICROSOFT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 9

prices ranging from a $2,049.99 Samsung to a $279.99 Acer.[24]  Applying Motorola's demanded 2.25% royalty rate across the sales prices of all of these laptops yields per-unit royalties from a high of $46.12 to a low of $6.30.

There is no connection between these royalty amounts and the contribution of any H.264 functionality (or of any--necessarily much smaller--contribution by Motorola *to* that functionality) to the value of the product.  There is not even a relationship to the value of Microsoft's contribution to the end product.  Microsoft contributes only the "component software" operating system (in this case, Windows 7), of which H.264 technology is a (much) lesser included element, of which, in turn, Motorola claims to contribute a fraction.  In spite of being at most a fraction of a fraction of a fraction of the end product value and in spite of the lack of any connection at all between any Motorola technology and the product features that drive price, Motorola's letter expressly confirms that the Microsoft "component software" is not the royalty base; the price of the end product is.  A demand of 2.25% of the value of Microsoft's software would be unreasonable and unjustifiable.  A demand of 2.25% of a laptop price is nonsensical.

## IV.  LEGAL ARGUMENT

To establish its breach of contract claim, Microsoft needs to prove:  a valid contract, a breach of a duty arising under that contract, and resulting damage.[25]  "A court interprets a contract as a question of law."[26]  Summary judgment is appropriate where "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."[27]

---

[24] Wion Dec., Ex. 7.

[25] *N.W. Indep. Forest Mfrs v. Dep't of Labor and Indust.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995).

[26] *Johnson v. Allstate Ins. Co.*, 126 Wn. App. 510, 515, 108 P.3d 1273 (2005); *see also Knipschield v. C-J Recreation, Inc.*, 74 Wn. App. 212, 215, 872 P.2d 1102 (1994) ("[i]nterpretation of the terms of a contract is a question of law").

[27] FRCP 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007).

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1    Material facts are those "that might affect the outcome of the suit under the governing law."[28]

2    The moving party bears the initial burden of showing there is no material factual dispute and

3    that it is entitled to prevail as a matter of law.[29]   The non-moving party must then identify

4    specific facts that show a genuine issue for trial.[30]   "Bald assertions that genuine issues of

5    material fact exist are insufficient," nor can "a mere scintilla of evidence" withstand summary

6    judgment.[31]

7         Summary judgment is appropriate here because, as a matter of law, Motorola had a

8    contract obligation to make licenses available only on RAND terms and conditions and no

9    reasonable jury could find Motorola's royalty demands to be "reasonable."  Microsoft is

10   entitled to an order that Motorola's demands were not RAND, with the specific

11   consequences—damages and/or injunctive relief or the setting of a RAND royalty—to be

12   addressed either by the Court or by the parties in the future.

13   **A.**      **Motorola Entered into Enforceable Contracts with the IEEE and ITU of which**
             **Microsoft Is a Third Party Beneficiary.**

14        Motorola's commitments to the IEEE and ITU are binding contracts - the "bylaws of an

15   association or corporation constitute a contract between the organization and the member (or

16   stockholder, in the normal corporation)."[32]   Motorola agreed to comply with the ITU's and

17   IEEE's RAND requirements in its letters of assurance and declarations.[33]   Motorola

18   acknowledges that Microsoft is a third party beneficiary.

19

20   _____

21   [28] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

     [29] *Celotex*, 477 U.S. at 323.

22   [30] *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000).

     [31] *Galen*, 477 F.3d at 658.

23   [32]  *Evans v. Yakima Valley Grape Growers Assoc.*, 52 Wn.2d 634, 651, 328 P.2d 671 (1958), *citing Rodruck v.
     Sand Point Maintenance Comm.*, 48 Wn.2d 565, 295 P. 2d 714 (1956).

24   [33] Wion Dec., Exs. 2, 4.

25

MICROSOFT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 11

Several courts have held that SSOs' IPR policies and guidelines, in conjunction with patent holders' licensing declarations, create binding contracts between the patent holder and the SSO.[34]  In *Apple, Inc. v. Motorola Mobility, Inc.*, the court specifically found that Motorola's commitments to the IEEE related to the 802.11 standard created a contract enforceable by third party implementers of the standard:

> Under the [IEEE's] policy, members are to submit a "Letter of Assurance" to the [IEEE] that includes a commitment to license essential patents under reasonable and non-discriminatory terms.  <u>A contractual obligation between the [IEEE] and Motorola was created by this policy, Motorola's membership in the [IEEE] and Motorola's Letters of Assurance and Intellectual Property Statement to the Institute in which it declared [certain patents] essential to certain standards and stated its willingness to license those patents on reasonable and non-discriminatory terms.</u>
>
> …
>
> Each [IPR] policy indicates that it will not adopt a standard, or at least will use alternative technology in the standard, if the owner of a declared-essential patent refuses to offer fair, reasonable and non-discriminatory licensing.  Thus, the policies assume that members will agree to license essential patents on fair, reasonable and non-discriminatory terms and that once a member makes such a commitment, it is enforceable.[35]

In a pending action between Motorola Mobility and Microsoft (Case No. 11-cv-3136 (PSG) (N.D. Cal.)), Motorola has acknowledged that RAND commitments create binding contracts and give rise to duties to third party beneficiaries.[36]  In that action, Motorola alleges

---

[34]  *See, e.g., Apple, Inc. v. Motorola Mobility, Inc.,* No. 11-cv-178, 2011 U.S. Dist. LEXIS 72745, *30 (W.D. Wisc. June 7, 2011) (recognizing that implementers are third-party beneficiaries of contract between patent holder and SSO); *Ericsson Inc. v. Samsung Elecs. Co.*, 2007 U.S. Dist. LEXIS 29257 ("the FRAND obligation is contractual and binds all members" of the standard setting organization); *ESS Technology, Inc. v. PC-Tel, Inc.*, 1999 U.S. Dist. LEXIS 23227, *4 (N.D. Cal. Nov. 4, 1999) (holding that third-party beneficiary of contract between an SSO and the defendant, an essential patent holder, could state a claim for specific performance of patent holder's agreement to license patents on RAND terms).

[35]  *Apple,* 2011 U.S. Dist. LEXIS 72745, *28-29 (emphasis added).

[36]  Wion Dec., Ex. 8, p. 1.  *See also Wi-LAN, Inc. v. Research in Motion, et al.* (No. 2:08-cv-247-TJW (E.D. Tex. 2008)) (in which Motorola alleged "Wi-LAN entered into an express and/or implied contract with the IEEE's members, or alternatively, with the IEEE to which IEEE members and others are third-party beneficiaries…."); Wion Dec., Ex. 9, ¶ 74; *Research in Motion Limited v. Motorola, Inc.* (No. 3:08-cv-0284-G (N.D. Tex. 2008) (in which Motorola acknowledged "[a]s part of its participation in standards organizations, Motorola has declared the

that Microsoft's commitments to the SD Association (an organization promulgating memory card storage standards)

> create a duty on behalf of Microsoft to license the patents at issue on RAND terms [and that] Microsoft breached its contract with the SDA by refusing to offer to license the patents at issue to the contract's third-party beneficiary, Motorola, on RAND terms.[37]

Motorola has also said that, "in the Washington RAND Litigation, which is still ongoing, Mobility has not disagreed with Microsoft that Microsoft is a third party beneficiary under Mobility's commitments to the relevant SSOs."[38]  This acknowledgement confirms what the SSOs' IPR policies state:  implementers of the standards are third party beneficiaries of the RAND obligations.[39]  Motorola's RAND commitments are binding.  Microsoft is a third party beneficiary of them.

**B.** **Motorola's RAND Commitment Precludes Motorola from Demanding an Unreasonable Royalty.**

Motorola has agreed that licenses for its essential 802.11 patents will be

> *made available to an unrestricted number of applicants* on a worldwide basis without compensation or *under reasonable rates*, with reasonable terms and conditions that are demonstrably free of any unfair discrimination.[40]

An excessive royalty demand is the opposite.  Instead of "making" the technology "available" to *one and all* for a "reasonable" royalty, Motorola has demanded from "one" (Microsoft) an unreasonable – indeed, exorbitant – royalty.  Such a demand is an effort to use

---

existence of patents that it considers "essential" to a standard, and has agreed to license them on "FRAND"…terms as required by standards organizations.") Wion Dec., Ex. 10, ¶ 3.

[37] Wion Dec., Ex. 11, ¶¶ 93, 95.

[38] *Id.*, Ex. 8, at p. 13 n. 8.

[39] *See* ITU-T Common Patent Policy, which provides, "a patent embodied fully or partly in a [Recommendation] must be accessible to everybody without undue constraints.  To meet this requirement in general is the sole objective of the code of practice."  Wion Dec., Ex. 3, at p. 8; *see also* IEEE IPR guide, noting that "[u]sers and implementers may seek to enforce the terms of any Accepted Letter of Assurance."  *Id.*, Ex. 12, ¶ 30.

[40] Wion Dec., Ex. 1, § 6.2 (italics added).

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

the power of inclusion in the standard to extract unreasonable royalties.  It is the very conduct SSOs' IPR policies and patent holders' RAND commitments prohibit.[41]  As the court found in *Research in Motion, Ltd. v. Motorola, Inc.*:

> If Motorola licenses only at exorbitant rates, it will force its competitors [like Microsoft] to increase prices in the downstream market in order to make a profit.  This increase in prices for all products except Motorola's will harm competition.[42]

It is also a breach of Motorola's commitment to the SSOs.[43]

Even assuming that Motorola would eventually accept less, starting the conversation with an excessive demand made possible by the leverage of inclusion in a standard is a breach; at best, it is an effort to secure an improper negotiating advantage by abusing the power of the standard.  It is a breach because it is the opposite of "making" the technology "available" to everyone for a "reasonable" royalty.  It is a self-confessed "standard" practice of Motorola's that should be stopped now.

Motorola's RAND obligation extends to an "unrestricted number" of applicants—*i.e.*, its "standard" offer to an unrestricted number of prospective licensees must be RAND.  Both of

---

[41] *Apple*, 2011 U.S. Dist. LEXIS 72745, *36 ("the licensing commitments that [SSOs] required vendors were intended as a bulwark against unlawful monopoly"), *citing Broadcom Corp. v. Qualcomm*, 501 F.3d 297, 310 (3d Cir. 2007).

[42] *Research in Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 794 (N.D. Tex. 2008).

[43] As described in the ABA's Standards Development Patent Policy Manual, a patent holder's "Licensing Commitment contains a description of the terms (such as "reasonable and nondiscriminatory" license terms) that a Participant agrees to offer to all Implementers of a Standard under the Participant's Essential Claims."  American Bar Association, Section on Science and Tech. Law, Committee on Technical Standardization, *Standards Development Patent Policy Manual* (2007), Wion Dec., Ex. 13, p. 15 (underlining in original).  "A RAND commitment means that the Patent Holder must grant or offer a license under its Essential Claims on terms and conditions that are reasonable and nondiscriminatory."  *Id.*, p. 22; *see also Hon Hai Precision Indus. Co. v. Molex, Inc.*, No. 08-C-5582, 2009 U.S. Dist. LEXIS 9165, *2 (N.D. Ill. Feb. 9, 2009) (characterizing a patent holder's RAND obligation as requiring it "to offer patent licenses to others interested in implementing the [standard] on reasonable and nondiscriminatory terms"); *Potter Instrument Co. v. Storage Technology Corp.*, 1980 U.S. Dist. LEXIS 14348, *7 (E.D. Va. Mar. 25, 1980) (under ANSI's policy [requiring a license to be made available to applicants under reasonable terms and conditions that are demonstrably free of any unfair discrimination] patent holder must "agree to offer licenses to members of the affected industry on reasonable and nondiscriminatory terms as a prerequisite to the adoption of the industry-wide standard.").

MICROSOFT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 14

1    the offers to Microsoft are labeled "standard."  Both are labeled "RAND."  Neither is close to

2    being a RAND offer.  Both are abuses of market power that would not exist without the

3    standard or without Motorola's commitment to offer RAND royalty terms to the world.  *See*

4    *Broadcom Corp. v. Qualcomm, Inc.*, 501 F.3d 297, 310-14 (3d Cir. 2007) (holding that a

5    patentee should not be permitted to "hold-up" implementation of the standard and extract

6    supracompetitive royalties, and noting "[i]t is in such circumstances that measures such as

7    FRAND commitments become important safeguards against monopoly power").

8            Inclusion of a patent in a standard broadens its market and thereby increases the

9    holder's pricing power beyond free market price leverage—this is inherent in the purpose of

10   the standard:  to create efficiency and ease of interoperability, making any technology that is

11   within the standard more desirable.  The standard disfavors alternative technologies that are not

12   included in it (or in a competing standard).  This increased market power is not a function of

13   the patent holder's innovation, but of inclusion in the standard.  A dominant standard

14   potentially reduces the availability of practical alternatives for downstream firms in the supply

15   chain, conferring artificial market power on holders of included patents.  RAND commitments

16   are essential to offset these market effects.  They require a universal offer of RAND royalties.

17           Motorola has argued at least twice – so far unsuccessfully – that it can demand an

18   exorbitant royalty (here calling that offer its "standard" royalty charged to all) as long as it

19   ultimately willing to negotiate downward towards a RAND-compliant royalty (putting the lie

20   to its own representation that it was offering its "standard" "RAND" terms).[44]  In *Research in*

21   *Motion* and in this case, the courts held that a valid claim of breach was stated by an allegation

22   that a royalty *demand* was non-RAND.[45]  These rulings were correct.  Motorola must <u>make</u>

23   ────────────────────────────

24   [44]  *See Research in Motion*, 644 F. Supp. 2d at 797; *Microsoft Corp. v. Motorola, Inc.*, No. 10-cv-1823 JLR, 2011
     U.S. Dist. LEXIS 73827, *14 (W.D. Wash. June 1, 2011) (Dkt. No. 66, p. 5).

25   [45]  *Id.*

MICROSOFT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 15

1   licenses to its essential technology <u>available</u> on RAND terms, not demand the opposite.

2   Because there can be no sensible dispute that a royalty of 2.25% of product prices that vary

3   without reference to any Motorola technology is unreasonable, Motorola's breach is clear.  The

4   breach is aggravated in its insistence that the price of "component software" is not the royalty

5   base for laptops and the like.  That price is swallowed up by the much higher prices of the

6   widely varying computers on which that software is installed.  Expanding the rate base to

7   include value to which Motorola makes no arguable contribution is unconscionable.  "A

8   royalty demand which is so high as to preclude acceptance of a license offer is, after all, not

9   appreciably different from a refusal to license upon any terms."[46]

10          At least one SSO, the Blu-Ray Disc Association ("BDA"), expressly recognizes that

11   every licensing offer made by an essential patent holder must be on RAND terms and

12   conditions.[47]   The BDA's RAND obligations are set forth in its Bylaws, which state that:

13          Each member hereby agrees ... that it is willing to grant ... to any interested
            party ... a non-exclusive, non-transferable, world-wide licenses [sic] on fair,
14          reasonable and non-discriminatory terms and conditions under any of the
            Essential Patents[.][48]
15

16   The Bylaws provide for arbitration of disputes "over whether the [patent holding member] <u>is</u>

17   <u>offering</u> a license under its Essential Patent(s) on fair, reasonable and non-discriminatory terms

18   and conditions."[49]  In *Zoran*, the court interpreted the phrase "is offering" as follows:

19   ---

     [46] *W.L. Gore & Assoc., Inc. v. Carlisle Corp.*, 529 F.2d 614, 623 (3d Cir. 1976) (recognizing that in contrast with
20   the standards context, in the non-RAND context, "[a] patent empowers the owner to exact royalties as high as he
     can negotiate with the leverage of that monopoly"); *see also In re Independent Serv. Orgs. Antitrust Litig.*, 989 F.
     Supp. 1131, 1140 (D. Kan. 1997) (in the absence of a RAND obligation "[i]mposing a licensing duty would
21   necessarily require judicial regulation of the royalty at which the [] patent would have to be licensed, for
     otherwise the patentee could negate the obligation by setting a rate so high that there would be no takers" and
22   "that the [RAND] requirement of nondiscriminatory pricing directly conflicts with the basic tenet of patent law
     that a patent holder has an untrammeled right to selectively license its patent") (internal citations omitted).

23   [47] *See Zoran Corp. v. DTS, Inc.*, No. 08-4655, 2009 U.S. Dist. LEXIS 6675 (N.D. Cal. Jan. 20, 2009)

24   [48] Wion Dec., Ex. 14, § 16(1).

     [49] *Zoran.*, at *9-10 (emphasis supplied).
25

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700    FAX, (206) 623-8717

> The clause does not refer to disputes arising out of any and all alleged FRAND violations, <u>but only to disputes over whether, at a particular moment in time, a Member is or is not offering a particular license on FRAND terms.</u>[50]

The RAND (or FRAND) requirements under which *Zoran* was decided are substantially identical to those at issue here.  Under that standard, the court ruled an arbitrable issue of breach arises with respect to every offer's compliance with RAND—which includes the first offer.  The essentially identical IEEE and ITU IPR policies require nothing less.  That the *Zoran* issue arose in connection with an arbitration makes no substantive difference.

Motorola's opening offer was required to be RAND.

## C.    Motorola's Royalty Demand Bears No Meaningful Relationship to the Value of Its Technology.

### 1.    Motorola's Offer Is Unreasonable

It is not necessary to determine the actual dollar "value" of Motorola's technology to reach an indisputable conclusion that the royalty it has demanded is unreasonable.  Consumers are paying different prices for the Xbox 360 console for reasons unrelated to any possible contribution of Motorola technology.

Table 2 below illustrates that Motorola's royalty demand is not tied to its claimed technological contribution.  Additional memory capacity and the Kinect function can be purchased independently from the Xbox 360 console:  a 250GB upgrade retails for $99; the Kinect sensor for $149.[51]  While each pair of consumers -- Consumers 1 and 2 and Consumers A and B -- ends up with essentially equivalent Microsoft products, Motorola seeks *materially lower royalties where the hard drive upgrade or Kinect sensor is sold separately.*

---

[50] *Id.*, at *10 (emphasis supplied).

[51] Harlin Dec., ¶ 8.

MICROSOFT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 17

**TABLE 2**

| | Purchase | Total Price | Royalty Demand @ 2.25% | @ 4.5% |
|---|---|---|---|---|
| **Consumer 1** | • 250 GB Xbox | $299 | $6.73 | $13.46 |
| **Consumer 2** | • 4 GB Xbox<br>• 250 GB hard drive upgrade | $298<br>*($199 + $99)* | $4.48 | $8.96 |
| | | | | |
| **Consumer A** | • 250 GB Xbox (with Kinect) | $399 | $8.98 | $17.96 |
| **Consumer B** | • 250 GB Xbox<br>• Kinect sensor sold separately | $448<br>*($299 + $149)* | $6.73 | $13.46 |

There is no basis for Motorola to charge Microsoft a royalty on added functions that do not use any 802.11 or H.264 technology, or on theme-based graphic design on some Xbox 360 models. A reasonable royalty must be based on some Motorola technology contributed to those standards, not on Microsoft's innovations or marketing devices.

Motorola's H.264 demand is even more outrageous than its 802.11 demand. It seeks a royalty based on the price of products Microsoft neither manufactures nor sells--a royalty

> . . . calculated based on the price of the end product (e.g., each Xbox 360 product, each PC/laptop, each smartphone, etc.) and *not on component software* (e.g., Xbox 360 system software, Windows 7 software, Windows Phone 7 software, etc.).[52]

The italicized phrase openly acknowledges that Microsoft does not manufacture or sell PCs, laptops, or smartphones, but provides only "component software," in which some portion of the code adheres to the H.264 standard specifications, of which Motorola's alleged contribution is, in turn, a modest element. A royalty of 2.25% of the end product price for "each PC/laptop" etc. is grossly disproportionate to any conceivable contribution of Motorola technology. As in the case of the Xbox 360, the royalty will vary because of features to which Motorola makes no contribution. But beyond that, for laptops, computers and smartphones, Microsoft does not even control pricing or added features the manufacturers include that drive

---

[52] Wion Dec., Ex. 6 (italics added).

MICROSOFT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 18

1   price—none of which relate to any differences in Microsoft's software contribution.

2   Manufacturers such as Dell, Nokia, Samsung, LG, Acer and HTC (among others) determine

3   these components and the final pricing.

4       In the Best Buy example mentioned previously, Motorola's demand would result in

5   laptop royalties ranging from $6 to $46 – where the product price variations are related neither

6   to any added contribution by Motorola *nor even to the contribution of Microsoft's software*

7   *technology* to product value.

8       Motorola's demand is the equivalent of a supplier of a standardized component of a

9   carburetor charging the carburetor maker a royalty based on the price of every car (whether a

10  Yugo or a Ferrari) in which it is installed--not based on the value of the carburetor part, nor

11  even, unreasonably, on the value of a carburetor incorporating the patented part.  No

12  reasonable fact finder could decide that such a royalty is reasonable.

13      2.    Motorola's Demands Violate the "Entire Market Value" Rule.

14      Motorola's demands violate the "Entire Market Value" Rule.  A patentee is permitted

15  to base its request for reasonable royalties on the end value of the product containing the

16  patented technology "only where the patented feature creates the 'basis for customer demand'

17  or 'substantially create[s] the value of the component parts.'"[53]  This Rule applies in a free

18  market context.  It applies with greater force where the patent holder enjoys the added market

19  leverage of a standard, underscoring the unreasonableness of Motorola's demands here.

20      Under this Rule, a patent holder must separate or apportion the implementer's profits

21  and the patentee's alleged damages "between the patented feature and the unpatented

22  features."[54]  Only where the "entire value of the whole machine, as a marketable article, is

---

23  [53] *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011), *citing Lucent Technologies, Inc. v.*

24  *Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009).

    [54] *Id.*, at 1318.

25

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

properly and legally attributable to the patented feature" is it appropriate for the royalty to be based on the end product price.[55]

As described above, the Xbox 360 (and every other implicated third-party product) contains many software and hardware components performing functions critical to its actual operation that do not practice the 802.11 or H.264 standards.  All Xbox 360s include an Ethernet port for wired internet connection, making wireless functionality convenient but non-essential.[56]  Likewise, Xbox users can play video games on the Xbox 360 without relying on any H.264 technology, which allows users to stream H.264-formatted video from the internet.[57]  Motorola's percentage royalty is inherently unreasonable and even violates a standard that applies outside the more restrictive RAND context--the Entire Market Value rule.

      3.    <u>The Disparity Between Motorola's Proposed Percentage-Based Royalty and the Flat Royalty Charged by other H.264 and 802.11 Licensors Results from Motorola's Disproportionate Royalty Demand.</u>

Motorola's patented technology constitutes at most a fraction of the technology necessary for a compliant implementation of the 802.11 and H.264 standards.  *I.e.*, Motorola's proportionate royalty must start with the contribution *this fraction* of the standard makes to value.  A large number of other patent holders have pooled their 802.11 and H.264 essential patents, and charge defensible, flat, per-unit rates for a license to the pooled patent portfolios—providing an illuminating basis for comparison to Motorola's demand for license fees for its contribution to each standard.

MPEG LA, LLC administers a patent pool containing more than 275 patents essential to implementing the H.264 standard with over 25 licensors, including Apple, Panasonic, and

---

[55] *Id.*; *see also Lucent*, 580 F.3d at 1336-37.

[56] Harlin Dec., ¶ 4.

[57] *Id.*, ¶ 4, 5.

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1   Sony.[58]  Microsoft, too, is a member of MPEG LA, and has agreed to comply with its RAND

2   obligations.  The royalty charged by MPEG LA to license its H.264 patent portfolio ranges

3   from $0.00 to $0.20 per unit depending on the number of units licensed.[59]

4   Similarly, Via Licensing Corporation administers a patent pool relating to the 802.11

5   standard.  According to Via Licensing's website:

6   The licenses available under the program are intended to be offered to the entire
    market on Reasonable And Non-Discriminatory (RAND) Terms.  As such, the

7   license fees and similar terms are consistent amongst licensees.[60]

8   Via Licensing charges a flat licensing fee per licensed product ranging from $0.55/unit for 1-

9   500,000 units to $0.05/unit for 40,000,001 or more units per year.[61]

10   The stark contrast between the rates charged by the pools and the royalty fees that

11   would result from Motorola's demands on Microsoft exists because there is no relationship

12   between product pricing and Motorola's contribution to the value of the products.  The H.264

13   patent pool charges a maximum of $0.20 per unit.  For its H.264 declared essential patents,

14   Motorola charges a maximum of $10.10 per unit for the Xbox 360 (*see* Table 1, *supra*), or 50

15   times the pool rate.

16   This evidence is not included here in order to show what a RAND rate *is* for Motorola's

17   technology.  This Motion does not raise that question.  It is offered to corroborate what a

18   RAND rate *is not*.  It is not a rate that rises without reference to the proportionate contribution

19   of the technology to the product.  When a royalty is calculated as Motorola has demanded in its

20   letters to Microsoft, it is miles outside the RAND ballpark.

21

22   [58] Wion Dec., Ex. 15.

23   [59] *Id.*, Ex. 16.  This rate is locked-in for five-year periods, and can be increased by not more than 10%, and only at
    the expiration of any five-year term.

24   [60] *Id.*, Ex. 17.

25   [61] *Id.*

MICROSOFT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 21

1

## V.  CONCLUSION

2        For the reasons set forth herein, Microsoft respectfully requests that this Court grant

3   Microsoft's Motion for Partial Summary Judgment and enter an order consistent with

4   Microsoft's (Proposed) Order submitted herewith.

5        DATED this __ day of August, 2011.

6                    DANIELSON HARRIGAN LEYH & TOLLEFSON LLP

7                    By    /s/ Arthur W. Harrigan, Jr.                   _____

8                         Arthur W. Harrigan, Jr., WSBA #1751
                         Christopher Wion, WSBA #33207

9                         Shane P. Cramer, WSBA #35099

10                        T. Andrew Culbert, WSBA #35925
                         David E. Killough, WSBA #40185

11                        MICROSOFT CORPORATION
                         1 Microsoft Way

12                        Redmond, WA  98052
                         Phone:  425-882-8080

13                        Fax:  425-869-1327

14
                         David T. Pritikin, *Pro Hac Vice*

15                        Richard A. Cederoth, *Pro Hac Vice*
                         Douglas I. Lewis, *Pro Hac Vice*

16                        John W. McBride, *Pro Hac Vice*
                         SIDLEY AUSTIN LLP

17                        One South Dearborn
                         Chicago, IL  60603

18                        Phone:  312-853-7000
                         Fax:  312-853-7036

19

20                        Brian R. Nester, *Pro Hac Vice*
                         Kevin C. Wheeler, *Pro Hac Vice*

21                        SIDLEY AUSTIN LLP
                         1501 K Street NW

22                        Washington, DC  20005
                         Telephone:  202-736-8000

23                        Fax:  202-736-8711

24                        Counsel for Microsoft Corporation

25

MICROSOFT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 22

## APPENDIX A
## IEEE-SA Standards Board Bylaws, Section 6.2
## (Excerpts)[62]

IEEE standards may be drafted in terms that include the use of Essential Patent Claims. If the IEEE receives notice that a [Proposed] IEEE Standard may require the use of a potential Essential Patent Claim, the IEEE shall request licensing assurance, on the IEEE Standards Board approved Letter of Assurance form, from the patent holder or patent applicant. The IEEE shall request this assurance without coercion.

  ***

A Letter of Assurance shall be either:

  a) A general disclaimer to the effect that the Submitter without conditions will not enforce any present or future Essential Patent Claims against any person or entity making, using, selling, offering to sell, importing, distributing, or implementing a compliant implementation of the standard; or

  b) A statement that a license for a compliant implementation of the standard will be made available to an unrestricted number of applicants on a worldwide basis without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination. At its sole option, the Submitter may provide with its assurance any of the following: (i) a not-to-exceed license fee or rate commitment, (ii) a sample license agreement, or (iii) one or more material licensing terms.

  ***

If, after providing a Letter of Assurance to the IEEE, the Submitter becomes aware of additional Patent Claim(s) not already covered by an existing Letter of Assurance that are owned, controlled, or licensable by the Submitter that may be or become Essential Patent Claim(s) for the same IEEE Standard but are not the subject of an existing Letter of Assurance, then such Submitter shall submit a Letter of Assurance stating its position regarding enforcement or licensing of such Patent Claims....

The assurance is irrevocable once submitted and accepted and shall apply, at a minimum, from the date of the standard's approval to the date of the standard's withdrawal.

---

[62] *See* Wion Dec., Ex. 1 for complete document.

MICROSOFT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 23

1

## Common Patent Policy for ITU-T/ITU-R/ISO/IEC
## (Excerpts)[63]

2

3   The following is a "code of practice" regarding patents covering, in varying degrees, the
    subject matters of ITU T Recommendations, ITU-R Recommendations, ISO deliverables and
4   IEC deliverables (for the purpose of this document, ITU-T and ITU-R Recommendations are
    referred to as "Recommendations", ISO deliverables and IEC deliverables are referred to as
5   "Deliverables"). The rules of the "code of practice" are simple and straightforward.

6           ***

7   Recommendations | Deliverables are non-binding; their objective is to ensure compatibility of
    technologies and systems on a worldwide basis. To meet this objective, which is in the
8   common interests of all those participating, it must be ensured that Recommendations |
    Deliverables, their applications, use, etc. are accessible to everybody.

9
    It follows, therefore, that a patent embodied fully or partly in a Recommendation | Deliverable
10  must be accessible to everybody without undue constraints. To meet this requirement in
    general is the sole objective of the code of practice. The detailed arrangements arising from
11  patents (licensing, royalties, etc.) are left to the parties concerned, as these arrangements might
    differ from case to case.
12
13  This code of practice may be summarized as follows:

14          1. The ITU Telecommunication Standardization Bureau (TSB), the ITU
            Radiocommunication Bureau (BR) and the offices of the CEOs of ISO and IEC
15          are not in a position to give authoritative or comprehensive information about
            evidence, validity or scope of patents or similar rights, but it is desirable that the
16          fullest available information should be disclosed. Therefore, any party
            participating in the work of ITU, ISO or IEC should, from the outset, draw the
17          attention of the Director of ITU-TSB, the Director of ITU-BR, or the offices of
            the CEOs of ISO or IEC, respectively, to any known patent or to any known
18          pending patent application, either their own or of other organizations, although
            ITU, ISO or IEC are unable to verify the validity of any such information.
19
            2. If a Recommendation | Deliverable is developed and such information as
20          referred to in paragraph 1 has been disclosed, three different situations may
            arise:
21
                   2.1 The patent holder is willing to negotiate licences [sic] free of
22                 charge with other parties on a non-discriminatory basis on
                   reasonable terms and conditions. Such negotiations are left to the
23

24  ───────────────
    [63] *See* Wion Dec., Ex. 3 for complete document.
25

MICROSOFT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 24

1

parties concerned and are performed outside ITU-T/ITU-R/ISO/IEC.

2

2.2 The patent holder is willing to negotiate licences [sic] with other parties on a non-discriminatory basis on reasonable terms and conditions. Such negotiations are left to the parties concerned and are performed outside ITU-T/ITU-R/ISO/IEC.

3

4

2.3 The patent holder is not willing to comply with the provisions of either paragraph 2.1 or paragraph 2.2; in such case, the Recommendation | Deliverable shall not include provisions depending on the patent.

5

6

7

3. Whatever case applies (2.1, 2.2 or 2.3), the patent holder has to provide a written statement to be filed at ITU-TSB, ITU-BR or the offices of the CEOs of ISO or IEC, respectively, using the appropriate "Patent Statement and Licensing Declaration" form. This statement must not include additional provisions, conditions, or any other exclusion clauses in excess of what is provided for each case in the corresponding boxes of the form

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MICROSOFT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 25

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2011, I electronically filed the foregoing document with the Clerk of the Curt using the CM/ECF system, which will send notification of such filing to the following:

**Attorneys for Defendants Motorola Solutions, Inc., Motorola Mobility, Inc., and General Instrument Corporation**

Philip S. McCune
Lynn M. Engle
Summit Law Group

Steven Pepe
Jesse J. Jenner
Norman Beamer
Paul M. Schoenhard
Ropes & Gray

_____/s/ Linda Bledsoe_____
LINDA BLEDSOE

MICROSOFT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 26