# EXHIBIT 8

1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
       Charles K. Verhoeven (CA Bar No. 170151)
2      charlesverheoven@quinnemanuel.com
       David L. Bilsker (CA Bar No. 152383)
3      davidbilsker@quinnemanuel.com
       David A. Perlson (CA Bar No. 209502)
4      davidperlson@quinnemanuel.com
5   50 California Street, 22nd Floor
    San Francisco, California 94111
6   Telephone:      (415) 875-6600
7   Facsimile:      (415) 875-6700

8      Edward J. DeFranco (CA Bar No. 165596)
       eddefranco@quinnemanuel.com
9   51 Madison Avenue, 22nd Floor
    New York, New York 10010-1601
10  Telephone:      (212) 849-7000
11  Facsimile:      (212) 849-7100

12  Attorneys for Counterclaimant
    Motorola Mobility, Inc.
13

14              UNITED STATES DISTRICT COURT

15              NORTHERN DISTRICT OF CALIFORNIA

16                   SAN JOSE DIVISION

17

| | |
|---|---|
| 18  MOTOROLA MOBILITY, INC., | Case No. CV 11-03136-JF |
| 19            Counterclaimant, | **MOTOROLA MOBILITY, INC.'S MEMORANDUM OF POINTS AND** |
| 20      vs. | **AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY** |
| 21  MICROSOFT CORPORATION, | **RESTRAINING ORDER** |
| 22            Counterclaim Defendant. | **Fed. R. Civ. P. 65(a); Civ. L.R. 65-2** |
| 23 | |

24

25

26

27

28

02426.51886/4274275.1

MOTOROLA MOBILITY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ....................................................................................... 4

I.      STANDARD SETTING ORGANIZATIONS AND THE SD CARD
        ASSOCIATION ........................................................................................... 4

II.     MICROSOFT'S COMMITMENTS TO THE SDA AS A HALA LICENSEE AND
        SDA MEMBER............................................................................................ 4

III.    THE MANDATORY FORUM SELECTION CLAUSES IN THE HALA AND
        SDA IP POLICY. ......................................................................................... 5

IV.     MICROSOFT'S PROMOTION OF TECHNICAL CONTRIBUTIONS TO BE
        INCLUDED IN DEVELOPMENT OF SD CARD SPECIFICATION VERSION
        2.00. ............................................................................................................ 6

V.      MOBILITY'S PRE-SUIT REQUESTS FOR A RAND LICENSE................... 7

VI.     MICROSOFT FILES PATENT INFRINGEMENT SUITS OUTSIDE THE
        NORTHERN DISTRICT OF CALIFORNIA AND DELAYS PRODUCING
        RELEVANT DOCUMENTS. ........................................................................ 8

VII.    MOBILITY SEEKS JUDICIAL INTERVENTION TO ENFORCE
        MICROSOFT'S OBLIGATIONS UNDER THE SDA IP POLICY AND THE
        MICROSOFT HALA ................................................................................... 9

LEGAL STANDARD ............................................................................................. 9

ARGUMENT ......................................................................................................... 10

I.      MOBILITY IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM
        THAT MICROSOFT UNLAWFULLY FILED AND PURSUED PATENT
        INFRINGEMENT CLAIMS IN IMPROPER FORUMS ................................. 10

        A.      Third-Party Implementers like Mobility Are Beneficiaries of the Policies
                and Procedures Governing Standard Setting Organizations ..................... 12

        B.      Mobility is a Third-Party Beneficiary of Microsoft's RAND commitments,
                and of the Forum Selection clauses requiring Microsoft's FAT Patent
                infringement claims to be heard in California............................................. 13

                1.      Microsoft's RAND commitments apply to Mobility; Microsoft has
                        breached these Commitments.......................................................... 13

                2.      Mobility is a third party beneficiary of the forum selection clauses
                        that apply to Microsoft's infringement claims concerning the FAT
                        patents........................................................................................... 14

MOTOROLA MOBILITY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER

C.     Microsoft's Arguments in the ITC Seeking to Negate the Effect of the
       Forum Selection Clauses Are without Merit. ..................................................... 16

       1.     The forum selection clause in HALA can be enforced by third-party
              beneficiaries to the HALA including Mobility ............................................. 16

       2.     Microsoft's RAND obligation extends to all third party
              implementers and not just to those who have entered into their own
              HALA ............................................................................................................ 18

II.    MOBILITY HAS SUFFERED AND WILL CONTINUE TO SUFFER
       IRREPARABLE HARM .......................................................................................... 19

       A.     Being Forced to Litigate in the ITC and in the Western District of
              Washington Constitutes Irreparable Harm ....................................................... 19

       B.     Mobility Did Not Unreasonably Delay Enforcement of Its Rights ................... 20

III.   THE BALANCE OF HARDSHIPS TIPS DECISIVELY IN MOBILITY'S FAVOR ....... 23

IV.    CALIFORNIA HAS A STRONG PUBLIC INTEREST IN ENFORCING
       CONTRACTS AGREED TO BE ADJUDICATED IN THE NORTHERN
       DISTRICT AND UNDER CALIFORNIA LAW ................................................................ 24

CONCLUSION ....................................................................................................................... 25

MOTOROLA MOBILITY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER

## TABLE OF AUTHORITIES

**Page**

### Cases

*3M Unitek Corp. v. Ormco Co.*,
   96 F. Supp. 2d 1042 (C.D. Cal. 2000)..................................................................24

*Alliance for Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2010)....................................................................9, 10, 16

*Allianz Global Risk U.S. Ins. v. General Electric Co.*,
   No. 09-cv-09033-DDP, 2010 WL 749876 (C.D. Cal. Mar. 1, 2010)..................10, 17

*Alternative Delivery Solutions, Inc. v. R.R. Donnelley & Sons Co.*,
   2005 WL 1862631, at *5, 15-16 (W.D. Tex. July 8, 2005) .............................17

*Beckman Coulter, Inc. v. Beckcoult.com*,
   10-03110-JF, 2010 WL 2985560 (N.D. Cal. July 6, 2010).............................9

*Broadcom Corp. v. Qualcomm Inc.*,
   501 F.3d 297 (3d Cir. 2007)......................................................................12

*Ciena Corp. v. Nortel Networks, Inc.*,
   No. 2:05-cv-14, 2005 WL 1189881 (E.D. Tex. May 19, 2005)...................20, 23

*eBay Inc. v. Digital Point Solutions, Inc.*, No. CV 08-4052-JF,
   2009 WL 2523733 (N.D. Cal. Aug. 17, 2009)..........................................17

*Freitsch v. Refco*,
   56 F.3d 825 (7th Cir. 1995)....................................................................10

*Gambra v. Int'l Lease Fin. Corp.*,
   377 F. Supp. 2d 810 (C.D. Cal. 2005)....................................................16

*General Protecht Group, Inc. v. Leviton Mfg. Co.*,
   No. 10-1020, 2010 U.S. Dist. LEXIS 137160 (D.N.M. Dec. 7, 2010) ..............10, 23

*General Protecht Group, Inc. v. Leviton Mfg. Co.*,
   No. 2011-1115 (Fed. Cir. July 8, 2011) ............................................. *passim*

*Grooms v. Legge*,
   No. 09-cv-489-IEG, 2009 WL 962067 (S.D. Cal. Apr. 8, 2009)..................24

*Hugel v. Corp. of Lloyd's*,
   999 F.2d 206, 209 (7th Cir. 1993)..........................................................17

*In the Matter of Certain Ground Fault Circuit Interrupters and Products Containing Same*,
   Inv. No. 337-TA-739, Order 19 (U.S.I.T.C. Jan. 19, 2011)........................22

MOTOROLA MOBILITY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER

*In the Matter of Certain Ultrafiltration Sys. and Components Thereof, Including Ultrafiltration Membranes,*
  Inv. No. 337-TA-107, Comm'n Action and Order (U.S.I.T.C. Mar. 11, 1982) ..........................22

*KnowledgePlex, Inc. v. Placebase, Inc.,*
  No. 08-cv-4267, 2008 WL 5245484 (N.D. Cal. Dec. 17, 2008) ..........................12

*M/S Bremen v. Zapata Off-Shore,*
  407 U.S. 1 (1972) ..........................24

*Mandrigues v. World Sav, Inc.,*
  No. C07-4497-JF, 2008 WL 5221074 (N.D. Cal. Dec. 12, 2008) ..........................21

*Manetti-Farrow, Inc. v. Gucci America, Inc.,*
  858 F.2d 509 (9th Cir. 1988) ..........................10, 17

*Mercury Casualty Co. v. Maloney,*
  113 Cal. App. 4th 799 (Cal. Ct. App. 2003) ..........................17

*Microsoft Corp. v. TiVo Inc.,* Docket Entry 34,
  No. C11-00134 (W.D. Wash. May 19, 2011) ..........................23

*Microsoft Corp. v. Motorola, Inc., Docket Entry 66,*
  No. C10-1823JLR (W.D. Wash. June 1, 2011) ..........................12

*Prouty v. Gores Tech. Grp.,*
  121 Cal. App. 4th 1225 (Cal. Ct. App. 2004) ..........................12

*Qualcomm Inc. v. Broadcom Corp.,*
  548 F.3d 1004 (Fed. Cir. 2008) ..........................12, 21

*Smith, Valentino & Smith, Inc. v. Superior Ct.,*
  17 Cal. 3d 491 (Cal. 1976) ..........................24

*Texas Instruments Inc. v. Tessera, Inc.,*
  231 F.3d 1325 (Fed. Cir. 2000) ..........................3, 11, 20

*Three Brothers Trucking, Inc. v. Exel Global Logistics, inc.,*
  No. 06-1816-WDB, 2006 WL 1329883 (N.D. Cal. May 16, 2006) ..........................10

*Toyota Motor Sales, U.S.A., Inc. v. Tabari,*
  610 F.3d 1171 (9th Cir. 2010) ..........................21

*Winter v. Natural Resources Defense Council,*
  555 U.S. 7, 129 S. Ct. 365 (2008) ..........................9

## Statutes

19 C.F.R. § 210.21(a)(1) ..........................22

MOTOROLA MOBILITY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

28 U.S.C. § 1659 ............................................................................................................1

California Civil Code § 1559 (West) ..............................................................................12

## MEMORANDUM OF POINTS AND AUTHORITIES

Counterclaimant Motorola Mobility, Inc. ("Mobility") submits this memorandum of law in support of its motion for a temporary restraining order barring Counterdefendant Microsoft Corporation ("Microsoft") from continuing to pursue its patent infringement claims on U.S. Patents 5,579,517 and 5,758,352 (the "FAT Patents") in the International Trade Commission ("ITC") (*In the Matter of Certain Mobile Devices, Associated Software, and Components Thereof,* Investigation No. 337-TA-744), and the Western District of Washington (Civil Action No. 10-1577) (the "FAT Actions").[1]   The request is based on two forum selection clauses in contracts to which Mobility is a third party beneficiary.   Microsoft has taken and continues to take actions in the International Trade Commission and the Western District of Washington in violation of its contractual obligations to Mobility.

## PRELIMINARY STATEMENT

Microsoft's contractual commitments to a standard setting organization, the SD Card Association ("SDA"), require it to provide Mobility with an offer to license on reasonable and non-discriminatory terms two of the patents at issue (the '517 and '352 patents) in the "FAT Actions."   The agreements between Microsoft and the SDA contain explicit forum selection clauses providing that disputes under these agreements must be brought in the federal or state courts in California.   As a third party beneficiary of these agreements, Mobility may sue Microsoft for breach of its contractual obligations arising from these agreements with the SDA. Any such breach of contract action needs to be brought in California pursuant to the explicit forum selection clauses in the agreements at issue.

The SDA, a non-profit California corporation having its principal place of business in California, enters into licensing agreements with parties such as Microsoft for the benefit of the public, to establish an open licensing program that permits any interested party to implement standard technology in the relevant industry (secure digital cards or "SD" cards) and ensure

---

[1]   Civil Action No. 10-1577 is currently stayed pursuant to 28 U.S.C. § 1659.   Once the FAT Patents are dismissed in that case, the seven other asserted patents will remain stayed pending a final determination of the ITC in Investigation No. 337-TA-744.

MOTOROLA MOBILITY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER

1  interoperability of devices made by different manufacturers.  Microsoft's infringement claims on

2  the FAT Patents in the ITC and Western District of Washington violated its obligations under the

3  forum selection clauses of its agreements with the SDA.  The parties' dispute under these

4  agreements relating to Microsoft's obligations to license the '517 and '352 patents should instead

5  be litigated in this Court.  To this end, Mobility filed counterclaims in this investigation arising

6  out of Microsoft's breach of its commitments to offer a license on the '352 and '517 patents on

7  reasonable and non-discriminatory ("RAND") terms, along with a notice of removal to this Court.

8  It is wasteful of the resources of the Court, the ITC, and the parties for these disputes to be

9  litigated in parallel in two separate forums.

10        In 2003, Microsoft entered into a Host/Ancillary Product License Agreement ("HALA")

11  with the SDA.  Under this HALA as well as SDA's IP Policy, Microsoft is required to license on

12  RAND terms certain patents relating to implementation of standards proposed by Microsoft and

13  adopted by the SDA for use with SD Cards and associated host devices such as smartphones,

14  including the '517 and '352 patents asserted in this proceeding.  Yet, despite Mobility's requests,

15  Microsoft has refused to provide its license terms (much less RAND terms) for the '517 and '352

16  patents to Mobility, as it is obligated to do.  Instead, Microsoft has continued to pursue the FAT

17  Actions based on Mobility's alleged infringement of the '517 and '352 patents in complete

18  disregard of its contractual duties under the HALA agreement and the SDA IP Policy.  In

19  response, Mobility has alleged several affirmative defenses and counterclaims based on

20  Microsoft's failure to license the '517 and '352 patents.[2]  Notably, Microsoft withheld production

21  of the HALA agreement until May 16, 2011.  Had Microsoft produced the HALA earlier, as

22  Mobility requested, Mobility would have brought this motion for a temporary restraining order

23  long before now.

24        Under Microsoft's HALA agreement and the SDA IP policy, the ITC and Western District

25  of Washington were not appropriate forums for Microsoft to bring its infringement claims

26

27  _____
   [2]    For example, Mobility's first, fourth, ninth, and tenth affirmative defenses in the ITC
28  action are grounded, in part, in Microsoft's failure to comply with the SDA IP Policy, Microsoft's
   HALA agreement, and the SDA's bylaws.

1  regarding the '517 and '352 patents.   Those patents should only be litigated in this Court.

2  Indeed, the Microsoft HALA expressly provides a forum selection clause that requires all disputes

3  "arising out of or in connection with the interpretation or execution of this agreement" to be

4  "finally settled by the federal or state courts located in the County of Santa Clara in the State of

5  California."   Similarly, the SDA IP Policy further provides that courts in Santa Clara County,

6  California have "exclusive jurisdiction" over "any matters" under the policy.

7          Microsoft's refusal to assert the FAT Patents in this District, in breach of its agreements, is

8  the only way that Microsoft has been able to preserve its pending infringement claims on those

9  patents in the ITC and Western District of Washington.   Indeed, Microsoft's claims necessarily

10  fail if Mobility is licensed pursuant to the HALA and SDA IP Policy, as Mobility has a right to be.

11  Mobility's affirmative defenses (and counterclaims) arise out of Microsoft's breach of its

12  obligations under these agreements.   Thus, resolution of the parties' claims and defenses

13  regarding the FAT Patents, which all relate to the interpretation and execution of the Microsoft

14  agreements, is necessarily governed by the controlling forum selection clauses, and therefore,

15  must be heard in California.

16          The duplication of litigation in this forum and California will severely prejudice Mobility,

17  which has already had to bear the burden and expense of defending against Microsoft's claims in

18  this complex, nine patent investigation.   As the Court of Appeals for the Federal Circuit

19  acknowledged in a similar case, failing to enforce the agreed-upon forum selection clause would

20  require the defendant "to fight infringement battles on two fronts," and would thereby waste the

21  time and resources of the ITC in this proceeding to litigate issues that Microsoft has more than

22  once agreed can only be heard in California courts.   *See Texas Instruments Inc. v. Tessera, Inc.*,

23  231 F.3d 1325, 1332 (Fed. Cir. 2000).   There can be no dispute this Court has the authority to

24  enjoin Microsoft from proceeding outside this forum on the FAT Patents due to the applicable

25  forum selection clauses.   Indeed, earlier this month, the Federal Circuit affirmed a district court

26  order enjoining a patentee from asserting patent infringement suits in a proceeding in the ITC and

27  in a district court due to a forum selection clause.   *General Protecht Group, Inc. v. Leviton Mfg.*

28  *Co.*, No. 2011-1115 (Fed. Cir. July 8, 2011) (hereinafter "*General Protecht*").

1      Accordingly, Mobility respectfully requests the Court to temporarily restrain Microsoft

2 from pursuing its infringement claims on the '352 and '517 patents in the ITC and in the Western

3 District of Washington including ordering Microsoft to seek termination and dismissal,

4 respectively, of these actions.

5 **STATEMENT OF FACTS**

6 **I.**     **STANDARD SETTING ORGANIZATIONS AND THE SD CARD ASSOCIATION**

7      The SD Card Association is a standards setting organization that develops and implements

8 standards for removable and embedded memory card storage.   The SDA permits SDA members

9 to contribute technology for incorporation into the SDA standards, if those contributions are made

10 pursuant to certain requirements.   The SDA also provides members with the opportunity to

11 license technology owned by the SDA through the HALA license agreement.   Mobility has been

12 an SDA Member since 2001.

13      The SDA has developed policies and rules regarding the disclosure and licensing of patents

14 implicated by proposed or adopted SDA specifications.   These policies and rules are set out,

15 among other places, in the SDA Intellectual Property Policy ("IP Policy").   (Ex. 1,[3] SDA IP

16 Policy, *available at* http://www.sdcard.org/developers/join/ippolicy32909.pdf.).

17 **II.**     **MICROSOFT'S COMMITMENTS TO THE SDA AS A HALA LICENSEE AND**

18     **SDA MEMBER**[4]

19      On April 10, 2003, Microsoft entered into a HALA, which gave Microsoft certain license

20 rights under technology owned by the SDA ("the Microsoft HALA").   (Ex. 2, MSMOTOITC-

21 VOL12-00355929-962).)   In addition to the obligations in the HALA, Microsoft agreed to follow

22 the SDA IP Policy.   The current IP Policy provides that "[b]y joining or continuing to participate

23 in the SDA, each Member agrees to abide by the terms of this IP Policy including with respect to

24 any Adopted Specifications which were adopted prior to or during its membership."   (Ex. 1 at 1.)

25 The Microsoft HALA incorporated by reference the (then current) SDA IP Policy and binds

---

26    [3]  "Ex. ___ " refers to the Exhibits attached to the accompanying Declaration of David A.

27 Perlson in Support of Counterclaimant Motorola Mobility's Motion for Temporary Restraining Order ("Perlson Decl.").

28    [4]  *See also* ¶¶ 27-50 of Counterclaims, Docket Entry 1.

MOTOROLA MOBILITY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF<br>MOTION FOR TEMPORARY RESTRAINING ORDER

1   Microsoft to the terms of the SDA IP Policy.   (Ex. 2 at Section 10.3 (MSMOTOITC-VOL12-

2   00355941).)

3          Further, the SDA IP Policy is incorporated by reference into the SDA's mandatory

4   Amended and Restated Bylaws.   (Ex. 3, SDA Bylaws, *available at*

5   http://www.sdcard.org/developers/join/amended_bylaws.pdf.)   Section 2.2 of the Bylaws requires

6   Executive Members, of which Microsoft is one, to "[a]gree to adhere to the Association's Bylaws,

7   its policies and regulations as adopted from time to time (including . . . its Intellectual Property

8   Policy . . . . )." (Ex. 3, SDA Bylaws, at Section 2.2; Ex. 4, SDA Executive Members, *available at*

9   http://www.sdcard.org/developers/about/member_companies/exec/.)   Similarly, Section 2.4 of the

10  Bylaws requires General Members to "[a]gree to adhere to the Association's Bylaws, its policies

11  and regulations as adopted from time to time (including . . .   its Intellectual Property Policy . . .

12  .)." (Ex. 3, SDA Bylaws, at Section 2.4.)

13         As set forth further in Paragraphs 39 to 50 of the Counterclaims, Docket Entry 5, because

14  Microsoft contributed technology for adoption into SDA standards, and this technology was

15  incorporated into final SDA specifications, Microsoft was obligated to provide RAND licensing

16  terms on any patents covering the contributed technology.   For example, Section 2 of the SDA IP

17  Policy incorporated by reference into Microsoft's HALA requires all Members to offer a license

18  on RAND terms to other Members and non-member licensees ("Licensees") patent claims that are

19  required to implement the specifications formally adopted by the SDA as part of the standard.

20  (Ex. 2, MSMOTOITC-VOL12-00355958.)   The SDA's current IP Policy includes this same

21  requirement.   (Ex. 1 at 1.)

22  **III.    THE MANDATORY FORUM SELECTION CLAUSES IN THE HALA AND SDA
            IP POLICY.**

23

24         The IP Policy anticipates that its terms may lead to litigation between third parties.   For

25  example, Section 2 of the current IP Policy addresses situations where a Licensee "has

26  commenced or has threatened to comment patent litigation on an Essential Patent Claim."   (Ex. 1

27  at 1.)   Section 6 states that "Members agree that both the SDA, each member of the 3C Members

28  and the SD-3C, LLC shall have standing and rights to enforce their respective interests in any

MOTOROLA MOBILITY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER

1   intellectual property covered by this policy."  (Ex. 1 at 5.)  The IP Policy ends with a mandatory

2   forum selection clause in Section 11 stating: "The IP Policy will be governed by the laws of the

3   State of California, USA and the federal and state courts located in California shall have exclusive

4   jurisdiction regarding any matters under this IP Policy."  (Ex. 1 at 6.)

5        The Microsoft HALA also includes a forum selection clause in Section 15.6 stating that:

6   "ALL DISPUTES BETWEEN THE PARTIES HERETO ARISING OUT OF OR IN

7   CONNECTION WITH THE INTERPRETATION OR EXECUTION OF THIS AGREEMENT, . .

8   . [AND] THE SD SPECIFICATIONS . . . SHALL BE FINALLY SETTLED BY THE FEDERAL

9   OR STATE COURTS LOCATED IN THE COUNTY OF SANTA CLARA IN THE STATE OF

10  CALIFORNIA."  (Ex. 2, MSMOTOITC-VOL12-00355947.)  The forum selection adds that

11  "EACH PARTY TO THIS AGREEMENT HEREBY: (i) IRREVOCABLY CONSENTS TO THE

12  EXCLUSIVE JURISDICTION OF SUCH COURTS FOR THE RESOLUTION OF SUCH

13  DISPUTES; . . . (iii) IRREVOCABLY WAIVES ANY OBJECTIONS THAT IT MAY NOW OR

14  HEREAFTER HAVE TO THE VENUE OF ANY SUCH ACTION OR PROCEEDING IN SUCH

15  COURTS OR TO THE CONVENIENCE OR INCONVENIENCE OF CONDUCTING OR

16  PURSUING ANY ACTION OR PROCEEDING IN ANY SUCH COURT."  (*Id.*)

17  **IV.  MICROSOFT'S PROMOTION OF TECHNICAL CONTRIBUTIONS TO BE
        INCLUDED IN DEVELOPMENT OF SD CARD SPECIFICATION VERSION**

18  **2.00.**[5]

19       In 2004 and 2005, Microsoft aggressively sought to have the SDA incorporate its technical

20  contributions into SDA standards, through among other things, having its employees attend SDA

21  technical meetings to help promote incorporation of these contribution into finalized standards.

22  For example, on February 27, 2004, Microsoft's Rajeev Nagar and Akil Houston attended a

23  meeting of the SD File System Task Group, where attendees discussed a "File system comparison

24  between FAT 32 and UDF 2.5."  (Exhibit 5, MSMOTOITC-VOL33-00468002.)  In particular,

25  the Group spent at least 2 hours "compar[ing]" Microsoft's proposed FAT 32 contribution and the

26  alternative Universal Disk Format ("UDF") Specification Revision 2.50.  *Id.*; *see also* UDF

27  Specification Revision 2.50, *available at* http://www.osta.org/specs/pdf/udf250.pdf.

28      [5]   *See also* ¶¶ 52-62 of Counterclaims, Docket Entry 5.

MOTOROLA MOBILITY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER

1    Microsoft formalized its RAND commitment and technical contribution to the SDA in an

2    August 31, 2005 assurance letter.  (Ex. 6, MSMOTO-ITC-VOL03-00265100-164.)   The letter

3    included a section entitled "Essential Patent Claims Disclosure," in which Microsoft disclosed

4    "Patents that have essential patent claims with respect to the Microsoft Contribution."  (*Id.* at 1,

5    MSMOTO-ITC-VOL03-00265100.)   The asserted FAT Patents were among the patents

6    Microsoft listed as having essential patent claims. (*Id.* at 2, MSMOTO-ITC-VOL03-00265101.)

7    Microsoft's technical contributions provided as part of this assurance letter also included

8    the "Microsoft FAT32 Specification" and "Microsoft LFN Specification."  (Ex. 6, MSMOTOITC-

9    VOL03-00265103-39.)   Microsoft declared the '517 and '352 patents necessary to practice these

10   FAT32 and LFN Specifications and that "[i]n the event that SDA elect[ed] to incorporate any

11   portion of the Microsoft Contribution as an optional portion of an SDA Specification, Microsoft

12   [agreed] to provide [a] RAND license assurance" for those patents, including the FAT Patents.

13   (Exhibit 6, MSMOTO-ITC-VOL03-00265100.)   In particular, Microsoft stated that it "is willing

14   to make licenses available for products implementing the Microsoft LFN Specification on a

15   RAND, royalty-bearing basis.   To the extent Microsoft has patent claims essential to

16   implementing the Microsoft FAT32 Specification, Microsoft will offer licenses to such patent

17   claims on a RAND, royalty-free basis for products conforming to the specification." (*Id.*,

18   MSMOTO-ITC-VOL03-00265101.)   Microsoft's FAT 32 and LFN contributions were

19   incorporated into Version 2.00 of the SD Specification published on May 9, 2006.  (*See* Ex. 7, SD

20   Specification Part 2 (File System) Version 2.00, MOTO-MS-005971287-346.)

21   **V.    MOBILITY'S PRE-SUIT REQUESTS FOR A RAND LICENSE**

22   Mobility's (and its predecessor's, collectively or individually "Mobility")[6] requests for a

23   RAND license to the FAT Patents predate the FAT Actions.   As acknowledged by Microsoft

24   internally, between in or about December 2006 and January 2007, Mobility contacted Microsoft

25   regarding potential licensing terms for a FAT license.  (Exhibit 8, MSMOTOITC-VOL03-

26   00262457-58.)   On January 27, 2007, Mobility again contacted Microsoft regarding obtaining a

27   license for "adding the ability to format [SD] memory cards which are inserted using FAT-32."

28   ───────────────
     [6]   On January 4, 2011, Motorola Mobility Holdings, Inc. split off from Motorola, Inc.

MOTOROLA MOBILITY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER

1 | (Exhibit 9, MSMOTOITC-VOL03-00262453.)  Mobility followed up yet again on February 3

2 | and February 14, 2007.  (*Id.*, MSMOTOITC-VOL03-00262452; Exhibit 10, MSMOTO-VOL03-

3 | 00264310.)  Microsoft did not respond to Mobility's requests for licensing terms.  Mobility was

4 | an active HALA Licensee during the course of these discussions.

5 | **VI.   MICROSOFT FILES PATENT INFRINGEMENT SUITS OUTSIDE THE**
**NORTHERN DISTRICT OF CALIFORNIA AND DELAYS PRODUCING**
6 | **RELEVANT DOCUMENTS.**

7 | In October 2010, without ever making any RAND offer to Mobility, Microsoft filed

8 | actions asserting the '517 and '352 patents, among others, against Mobility in the FAT Actions.

9 | *See* Perlson Decl. ¶ 31.  Both of the exemplary claim charts provided by Microsoft in its ITC

10 | Complaint read on Mobility devices' purported "ability to support microSD flash memory."  (*See,*

11 | *e.g.*, Ex. 11 at 1, 4, 7, 9, 13, 15, 18 and 20; Ex. 12 at 1, 5, 8, 11).

12 | Mobility has been pursuing its RAND rights and defenses concerning the FAT Patents

13 | since the beginning of the ITC Investigation.  Mobility's ninth (Express or Implied License) and

14 | tenth (Acquiescence, Estoppel, Waiver, or Laches) affirmative defenses both relate at least in part

15 | to Microsoft's assertion of the FAT Patents without first offering Mobility a RAND license.  (Ex.

16 | 13 at 32-34; Mobility's Response and Affirmative Defenses to Microsoft's Amended Complaint,

17 | Inv. No. 337-TA-744 (U.S.I.T.C. Nov. 22, 2010).)  Mobility's development of these defenses,

18 | however, depended in part on Microsoft producing documents within its custody and control.

19 | Accordingly, Mobility's discovery requests sought documents related to its RAND licensing

20 | defenses.  (*See, e.g.*, Ex. 14, Mobility' First Set of Requests for Production of Documents and

21 | Things, Requests 1, 8, 30, 32, 45, 48 (served Nov. 8, 2010).)

22 | Frustrated by Microsoft's delay in producing RAND-related discovery documents for the

23 | first six months of the investigation, Mobility emailed Microsoft on April 28, 2011, and again on

24 | May 6, 2011, demanding Microsoft to live up to its contractual obligations and to provide

25 | Mobility with what it believes to be RAND terms for the FAT Patents.  (*See* Ex. 15.)  Microsoft

26 | refused to do so.

27

28

MOTOROLA MOBILITY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER

On May 16, 2011, Microsoft finally produced its HALA to Mobility. (See Ex. 16; Ex. 2, MSMOTOITC-VOL12-00355929-62.) On May 26, 2011, Mobility again contacted Microsoft to request RAND terms for the FAT Patents. (Ex. 17.) Microsoft did not respond.

## VII. MOBILITY SEEKS JUDICIAL INTERVENTION TO ENFORCE MICROSOFT'S OBLIGATIONS UNDER THE SDA IP POLICY AND THE MICROSOFT HALA

Mobility filed Counterclaims in the ITC on June 22, 2011, and removed those claims to this District. (See Ex. 18; Docket Entry 1.) The counterclaims plead (1) breach of contract under the HALA Agreement; (2) breach of contract under the SDA IP Policy; (3) promissory estoppel; (4) violation of Section 2 of the Sherman Act; and (5) violation of Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. Microsoft filed its Answer to the counterclaims on July 21. See Docket Entry 23.

On June 22, 2011, Mobility also moved to terminate the ITC investigation with respect to the FAT patents on the basis of improper forum. (Ex. 19.) Microsoft filed its opposition on July 5, 2011. (Ex. 20.) On July 8, Mobility sought leave to file a reply. (Ex. 21.) Microsoft opposed Mobility's motion for leave to file a reply on July 19. (Ex. 22.) The motion to terminate is currently pending, but if granted, would moot the instant motion.

As Microsoft continues to move forward with its ITC action and given that the hearing on Microsoft's claims in the ITC begins on August 22, 2011, Mobility files the present motion.

## LEGAL STANDARD

A plaintiff seeking a preliminary injunction or temporary restraining order ("TRO") must establish (1) it is likely to succeed on the merits, (2) a likelihood of irreparable harm absent the TRO, (3) the balance of equities tips in its favor, and (4) the TRO is in the public interest. See Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2010) (quoting Winter v. Natural Resources Defense Council, 555 U.S. 7, 129 S. Ct. 365, 374 (2008)); Beckman Coulter, Inc. v. Beckcoult.com, No. C 10-03110-JF, 2010 WL 2985560, at *3 (N.D. Cal. July 6, 2010) (Fogel, J.) ("The standard for issuing a TRO is the same as issuing a preliminary injunction.").

The showing required under each element is not fixed. The elements "are balanced, so that a stronger showing of one element may offset a weaker showing of another." Cottrell, 632

-9-

MOTOROLA MOBILITY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

1  F.3d at 1131.   Under this "alternative" TRO standard, "'serious questions going to the merits' and

2  a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, so

3  long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the

4  public interest."   *Id.* at 1135.

5    A district court can properly issue a TRO or preliminary injunction, enjoining a party from

6  proceeding in a patent infringement suit in another jurisdiction, on the basis of an applicable

7  forum selection clause.   *See General Protecht Grp., Inc. v. Leviton Mfg. Co.*, No. 10-cv-1020,

8  2010 U.S. Dist. LEXIS 137160 (D.N.M. Dec. 7, 2010), *aff'd*, *General Protecht*, No. 2011-1115

9  (Fed. Cir. July 8, 2011).   Such clauses are favored in the Ninth Circuit:

10    Forum selection clauses are *prima facie* valid, and are enforceable absent a strong
  showing by the party opposing the clause that enforcement would be unreasonable
11    or unjust, or that the clause is invalid for such reasons as fraud or overreaching.
  The opposing party has the burden to show that trial in the contractual forum would
12    be so gravely difficult and inconvenient that he will for all practical purposes be
13    deprived of his day in court.

14  *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514-15 (9th Cir. 1988) (citations and

15  quotations omitted).   The list of entities that can enforce a forum selection clause in a contract is

16  not limited by its signatories.   Rather, "[a] range of transaction participants, parties and non-

17  parties, should benefit from and be subject to forum selection clauses."   *Id.* at 514 n.5; *Freitsch v.*

18  *Refco*, 56 F.3d 825, 827 (7th Cir. 1995) ("[C]ourts in this country . . . enforce forum selection

19  clauses in favor of non-parties 'closely related' to a signatory."); *Allianz Global Risk U.S. Ins. v.*

20  *General Electric Co.*, No. 09-cv-09033-DDP, 2010 WL 749876,(C.D. Cal. Mar. 1, 2010)

21  (enforcing an arbitration clause raised by a non-party to a contract); *Three Brothers Trucking, Inc.*

22  *v. Exel Global Logistics, inc.*, No. 06-1816-WDB, 2006 WL 1329883 (N.D. Cal. May 16, 2006)

23  (enforcing forum selection clause against third party beneficiary).

24  **ARGUMENT**

25  I. **MOBILITY IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM THAT**
  **MICROSOFT UNLAWFULLY FILED AND PURSUED PATENT**
26    **INFRINGEMENT CLAIMS IN IMPROPER FORUMS**

27    Mobility's counterclaims plead, among other things, that Microsoft breached its contractual

28  obligations to the SDA by failing to offer Mobility a license to the FAT Patents on RAND terms

1  before initiating a patent infringement suit, and that Microsoft further breached its obligations by

2  initiating these suits in improper forums.  In seeking to enforce a forum selection clause by a

3  TRO, Mobility need not establish conclusively that it would win on its RAND breach of contract

4  claim.  Rather, as the Federal Circuit recently held, Mobility need only show that the substantive

5  RAND breach of contract claims subject to the forum selection clause are "non-frivolous."

6  *General Protecht, slip. op. at* 7.

7       In *General Protecht*, Leviton sued General Protecht for patent infringement in the ITC and

8  in the Northern District of California.  A contractual relationship between Leviton and General

9  Protecht contained a forum selection clause governing Leviton's infringement claims.  General

10  Protecht sued in the District Court of New Mexico asserting declaratory judgment claims for

11  breach of contract, non-infringement, and invalidity, and moved to enjoin Leviton from

12  proceeding in the ITC and in California on the patents at issue.  The Federal Circuit upheld the

13  district court order granting a preliminary injunction based on the forum selection clause.  In so

14  holding, the Federal Circuit explained that General Protecht had presented a non-frivolous dispute

15  regarding the contract at issue that contained a forum selection clause, and that outcome of that

16  dispute would be dispositive as to Leviton's claim of infringement.  *General Protecht, slip. op. at*

17  6-7. ("This case presents a non-frivolous dispute regarding the scope of a patent license.  The

18  outcome of that dispute will determine whether the patentee can sustain its suit for

19  infringement."); *see also Texas Instruments Inc. v. Tessera Inc.*, 231 F.3d 1325 (Fed. Cir. 2000).

20       Here, Mobility's breach of contract claims are plainly non-frivolous.  To date, Microsoft

21  has not disputed that its commitments under these contracts are binding on Microsoft, or that it

22  must provide RAND licenses on the FAT Patents at least for some fields of use of the patents.

23  Microsoft also does not dispute it has not offered Mobility a license to the FAT Patents on any

24  terms.  The resultant injury to Mobility if in fact Microsoft has breached its RAND commitments

25  is also seemingly not in dispute.  Indeed, Mobility has suffered damage to its goodwill and

26  business prospects, has been forced to litigate the FAT Patents in two forums which Microsoft had

27  waived.  And as further detailed below, Microsoft's contractual commitments apply to Mobility

28

-11-     Case No. CV 11-03136-JF

MOTOROLA MOBILITY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER

1  and, the forum selection clauses in the HALA and SDA IP Policy apply to Microsoft's patent

2  infringement actions and Mobility's defenses in the ITC.

3      **A.**    <u>**Third-Party Implementers like Mobility Are Beneficiaries of the Policies and**</u>
4  <u>**Procedures Governing Standard Setting Organizations**</u>

5          Under California law, "a contract, made expressly for the benefit of a third person, may be

6  enforced by him at any time before the parties thereto rescind it." CAL. CIV. CODE § 1559 (West).

7  "The word 'expressly,' by judicial interpretation, has now come to mean merely the negative of

8  'incidentally.'  Also, the contract need not be exclusively for the benefit of the third party.  He

9  does not need to be the sole or the primary beneficiary." *Prouty v. Gores Tech. Grp.*, 121

10  Cal.App. 4th 1225, 1232 (Cal. Ct. App. 2004) (quotations omitted); *KnowledgePlex, Inc. v.*

11  *Placebase, Inc.*, No. 08-cv-4267, 2008 WL 5245484, at *6 (N.D. Cal. Dec. 17, 2008) (Fogel, J.).

12  As was stated by this Court: "As long as the terms of the contract necessarily require the promisor

13  to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a

14  benefit to the third person." *KnowledgePlex, Inc.*, 2008 WL 5245484 at *6 (quotations omitted).

15          Third-party implementers like Mobility are entitled to sue RAND promisors like Microsoft

16  for breach of its RAND commitments.  Indeed, if they were not, the RAND commitment would

17  have little meaning, since the SSO itself is rarely if ever going to become embroiled in litigation

18  over compliance with RAND obligations.  Indeed, courts have repeatedly acknowledged the

19  propriety of claims or defenses brought by third-party implementers asserting breach of a

20  patentee's RAND commitments.  *See, e.g., Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004,

21  1024-26 (Fed. Cir. 2008); *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007).

22          This is likely why Microsoft itself has argued in an ongoing litigation in the Western

23  District of Washington where Microsoft has alleged Mobility violated its own RAND obligations,[7]

24  that in an SSO context, "***every third party***, including itself, 'that would potentially implement [the

25  standards] was an intended beneficiary of those contracts' and that Mobility was 'contractually

26  obligated to offer a license to any essential patents consistent with the applicable licensing

27  commitments and the patent policy of the [two SSOs].'"  *Microsoft Corp. v. Motorola, Inc.*,

---

28  [7]  *Microsoft Corp. v. Motorola, Inc.*, Civ. No. 10-1823LJR (W.D. Wash.) (hereinafter
"Washington RAND Litigation").

MOTOROLA MOBILITY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER

1   Docket Entry 66, No. C10-1823JLR, *slip op.* at 4-6 (W.D. Wash. June 1, 2011) (quoting

2   Microsoft's Am. & Supp. Cmpl. ¶¶ 82-83, Docket Entry 53, No. 10-1823JLR (W.D. Wash. Feb.

3   23, 2011)) (emphasis added).[8]

4         Microsoft's position in the Washington RAND Litigation is also consistent with speeches it

5   has given to members of the RAND community over the years.   At a standard-setting conference

6   in Japan held in 2008, Amy Marasco, Microsoft's General Manager of Standards Strategy, stated

7   that "[e]ssential patent claims should be available to *all implementers* under reasonable terms."

8   (Ex. 23 at 6 (emphasis added).)   At another standard-setting conference, this time held in the

9   Netherlands in 2009, Ms. Marasco again stated that "A FRAND licensing commitment provides

10  assurance to the standards body and its community that the patent holder will offer a FRAND

11  license to *all implementers*."   (Ex. 24 at 4 (emphasis added).)

12      **B.     Mobility is a Third-Party Beneficiary of Microsoft's RAND commitments, and
             of the Forum Selection clauses requiring Microsoft's FAT Patent infringement
13           claims to be heard in California.**

14              **1.      Microsoft's RAND commitments apply to Mobility; Microsoft has
                      breached these Commitments.**

15

16        Microsoft has made at least three separate commitments to license the FAT Patents to

    Mobility, on RAND terms.   First, in 2003, Microsoft entered into the HALA with the SDA.   (Ex.
17
    2.)   The HALA incorporated by reference the version of the IP Policy in force at that time and
18
    provided in Section 10.3 that "Licensee agrees to abide by the terms and conditions of the SD
19
    Association Intellectual Property Policy, set forth as Schedule E and hereby incorporated by
20
    reference, and the term 'Member' shall be read to include Licensee where applicable, and the term
21
    'participate in the SDA' shall be read to include entering into this agreement." (Ex. 2 at
22
    MSMOTOITC-VOL12-00355941.)   Second, pursuant to the SDA by-laws, Microsoft has
23
    committed during all the years it has been an SDA Executive Member to abide by the SDA IP
24
    Policy.
25

26

27  _____
    [8]   Notably, in the Washington RAND Litigation, which is still ongoing, Mobility has not
28  disagreed with Microsoft that Microsoft is a third party beneficiary under Mobility's commitments
    to the relevant SSOs.

MOTOROLA MOBILITY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER

1    Third, Microsoft committed to license the FAT Patents, in particular, in its August 31,

2  2005 contribution letter to the SDA setting out its Microsoft FAT32 and LFN technology

3  contributions for incorporation into final SDA specifications.   (Ex. 6.)   In its letter to the SDA,

4  Microsoft stated, "[p]ursuant to Section 5(ii) of the SDA IP Policy, Microsoft commits to the SDA

5  that Microsoft will license its Essential Patent Claims in a non-discriminatory fashion and under

6  reasonable terms and conditions to all SDA Members and non-SDA-Member licensees, solely to

7  the extent required for such entities to implement finally-adopted SDA Specifications." (Ex. 6 at

8  MSMOTOITC-VOL03-00265101.)   In turn, the SDA IP Policy in Section 5(ii) requires that a

9  Member contributing technology for incorporation into SDA specifications "agree to license in a

10 non-discriminatory fashion for use in such implementation, upon reasonable terms and conditions

11 provided in section 2, above, with or without charge, to all Licensees once the Specification is

12 adopted by the SDA."  (Ex. 6 at MSMOTOITC-VOL12-00355960.)   Mobility's products at issue

13 have at all relevant times been compliant with a "finally-adopted SDA Specification," and

14 Mobility is thus is a third-party beneficiary to Microsoft's RAND promises.   (Ex. 25, Microsoft's

15 Supplemental Objections and Responses to Respondent Motorola, Inc. and Motorola Mobility,

16 Inc.'s Second Set of Requests for Admission, at 67-69 (Response Nos. 279 (*sic*, 280) and 281 (*sic*,

17 282).)

18    Given its contractual commitments to third party Mobility, Microsoft's obligation to

19 provide a license to the FAT Patents on RAND terms, or at least provide Mobility an opportunity

20 to take or negotiate such a license, is beyond dispute.   Yet, beginning in late 2006 and early 2007,

21 and continuing again since October 2010, Microsoft has (1) opposed disclosing any information

22 regarding its RAND obligations on the FAT Patents, and (2) refused to offer Mobility any terms

23 for a license on these patents.   Thus, Microsoft has plainly breached its RAND commitment.

24    **2.    Mobility is a third party beneficiary of the forum selection clauses that apply to Microsoft's infringement claims concerning the FAT patents.**

25
     Like RAND promises Microsoft made to the SDA for the benefit of third party

26 implementers like Mobility. the forum selection clauses at issue were also created for Mobility's

27 benefit.   They also apply to Microsoft's infringement claims concerning the FAT patents.

28

MOTOROLA MOBILITY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER

1    The forum selection clause in the current IP Policy states: "the federal and state courts

2 located in California shall have exclusive jurisdiction regarding any matters under this IP Policy."

3 (Ex. 1 at Section 11). As discussed in *infra* § I(C), Mobility's breach of contract allegations relate

4 to at least Sections 2 and 5(ii) of the IP Policy. Similarly, whether Microsoft was somehow

5 discharged of any obligation to provide a RAND license before initiating suit in the ITC also

6 depends on Sections 2 and 5(ii). While these sections do not identify Mobility specifically by

7 name, they do identify the class of parties – "Members and non-member licensees" (collectively

8 "Licensees")– to whom Microsoft's RAND obligation is intended to apply. Mobility has been a

9 Licensee at all relevant times, and Microsoft's breach of Sections 2 and 5(ii), and initiation of

10 patent suits outside this forum, both "regard" a "matter[] under [the] IP Policy."

11    Likewise, the forum selection clause in Microsoft's HALA provides "ALL DISPUTES

12 BETWEEN THE PARTIES HERETO ARISING OUT OF IN CONNECTION WITH THE

13 INTERPRETATION OR EXECUTION OF THIS AGREEMENT . . . SHALL BE FINALLY

14 SETTLED BY THE FEDERAL OR STATE COURTS LOCATED IN THE COUNTY OF

15 SANTA CLARA IN THE STATE OF CALIFORNIA." (Ex. 2 at Section 15.6 (MSMOTOITC-

16 VOL12-00355947).) And for the avoidance of doubt, the HALA adds four explanatory sentences

17 including obligating Microsoft to "irrevocably consent[]" to the bargained-for forum, and

18 "irrevocably waive[] any objection" that may be raised regarding the forum. (*Id.* at

19 MSMOTOITC-VOL12-00355947 – 48.)

20    The forum selection clauses in the IP Policy and the HALA apply to both of the FAT

21 Actions. Mobility's affirmative defenses (and counterclaims) to Microsoft's claims of

22 infringement of the FAT Patents arise out of Microsoft's breach of its obligations under these

23 agreements. (Ex. 13 at 32-34.) For example, Mobility's ninth affirmative defense of "Express or

24 Implied License" and tenth affirmative defense of "Acquiescence, Estoppel, Waiver, or Laches"

25 necessarily relate to the interpretation and execution of Microsoft's agreements, and are

26 irrevocably governed by the controlling forum selection clauses, and therefore, must be heard in

27 California. Thus, Microsoft's affirmative right to enforce the FAT Patents at all, obtain an

28

MOTOROLA MOBILITY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER

1  exclusion order in the ITC, or obtain damages in Washington in excess of a RAND rate invokes

2  Microsoft's compliance with the IP Policy and the Microsoft HALA.[9]

3       **C.**    **Microsoft's Arguments in the ITC Seeking to Negate the Effect of the Forum Selection Clauses Are without Merit.**

4

5            **1.**    **The forum selection clause in HALA can be enforced by third-party beneficiaries to the HALA including Mobility**

6        Microsoft argues in its Opposition to Motorola's Motion to Terminate With Respect to U.S.

7  Patent Nos. 5,579,517 and 5,758,352 Based on Improper Forum ("Opposition") that Mobility

8  cannot be a third-party beneficiary with respect to the forum selection clause in the HALA

9  because the clause refers to "disputes between the parties" and Mobility is not a party to the

10  HALA.  (Ex. 20 at 8-9).  In purported support for this argument Microsoft cites *Gambra v. Int'l*

11  *Lease Fin. Corp.*, 377 F. Supp. 2d 810 (C.D. Cal. 2005).  But in *Gambra*, the Court simply held

12  that the plaintiffs could not enforce a forum selection clause because they were not third-party

13  beneficiaries to the agreement at all.  *Id.* at 821-22.  *Gambra* does *not* hold that "*even if* plaintiffs

14  were third party beneficiaries of the agreement in question" they at the same time "could not be

15  'third party beneficiaries of the forum selection clause,'" as Microsoft asserts.  (Ex. 20 at 9

16  (emphasis added)).  Indeed, because a forum-selection clause serves as a limitation on the ability

17  to bring a case, permitting a third-party beneficiary to enforce a contract *without* being able to

18  enforce (and therefore without being subject to) the forum selection clause "would create the

19  anomalous result of providing greater benefits under the [contract] to the third party beneficiary"

20

21     [9]   The Ninth Circuit's "alternative" test for a temporary restraining order/preliminary injunction lowers the first prong to showing only "serious questions going to the merits," and

22  raises the second to showing a "hardship balance that tips sharply toward the plaintiff."  *See Cottrell*, 632 F.3d at 1135.  As detailed further below, here, the hardship balance tips sharply

23  toward Mobility.  Microsoft will suffer no cognizable injury if the Court requires it to dismiss its patent infringement claims on the FAT patents filed elsewhere and re-file them here.  *General*

24  *Protecht*, *slip op.* at 19 ("Having contracted for a specific forum, Leviton should not be heard to argue that the enforcement of the contract into which it freely entered would cause hardship.").

25  On the other hand, Mobility's injuries are substantial and include at least being forced to litigate in two improper forums and irreparable harm to its reputation and goodwill.  Because Mobility's

26  hardship is so much greater than Microsoft's, it only has to show "serious questions going to the

27  merits" of its claims to obtain an injunction.  *See Cottrell*, 632 F.3d at 1135.  Mobility's evidence and arguments regarding the binding forum selection clause and Microsoft's violation of its RAND

28  obligations, at the very least, raise "serious questions" and Mobility satisfies this reduced standard.

1  and would vitiate "settled law holding that a third party beneficiary cannot assert greater rights

2  under the contract than those of the actual contracting party."  *Mercury Casualty Co. v. Maloney*,

3  113 Cal. App. 4th 799, 802-03 (Cal. Ct. App. 2003).

4        Moreover, as this Court has recently explained, "a formal third-party beneficiary

5  relationship is not required to enforce [a] forum selection clause. . . .  Instead, the test for non-

6  signatories to an agreement is broader:  'In order to bind a non-party to a forum selection clause,

7  the party must be "closely related" to the dispute such that it becomes "foreseeable" that it will be

8  bound.'"  *eBay Inc. v. Digital Point Solutions, Inc.*, No. CV 08-4052-JF, 2009 WL 2523733 (N.D.

9  Cal. Aug. 17, 2009) (Fogel., J.) (citing *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir.

10  1993); *Manetti–Farrow*, 858 F.2d at 514 n.5).  Just as a third-party beneficiary may enforce a

11  forum selection clause despite language purporting to limit it to disputes between "the parties," so

12  may a party under this "broader" "closely related to the contractual relationship" test.  For

13  example, in *Allianz Global Risk U.S. Insurance v. General Electric Co.*, the Court enforced an

14  arbitration clause in a contract raised by a non-signatory, despite language providing that

15  arbitration would be limited to disputes between "the parties," because "issues that Allianz, the

16  nonsignatory, is seeking to resolve in arbitration are fundamentally intertwined with the

17  underlying contract."  No. 09-cv-09033-DDP, 2010 WL 749876, at *3 (C.D. Cal. Mar. 1, 2010).

18  Similarly, in *Alternative Delivery Solutions, Inc. v. R.R. Donnelley & Sons Co.*, the Court—citing,

19  among other precedent, *Manetti–Farrow*—held that a nonsignatory to the contract could enforce

20  the forum selection clause, despite the fact that the clause explicitly provided that "*the parties*

21  submit unconditionally to the laws and jurisdiction of the competent courts of law sitting in

22  Mexico City."  2005 WL 1862631, at *5, 15-16 (W.D. Tex. July 8, 2005) (emphasis added).

23  Accordingly, Mobility may enforce the forum selection clause not only as a "formal third-party

24  beneficiary" to the HALA, but also because it is "closely related" to the contractual transaction as

25  an intended beneficiary under *Manetti-Farrow* and its progeny.

26

27

28

-17-      Case No. CV 11-03136-JF

MOTOROLA MOBILITY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER

### 2.   Microsoft's RAND obligation extends to all third party implementers and not just to those who have entered into their own HALA

In its Opposition, Microsoft seeks to recast its RAND obligation as only applying to what it refers to as "SDA licensees."  (Ex. 20 at 5, 6, and 9.)  Microsoft is doing a sleight of hand. The term "SDA licensee" appears nowhere in the current IP Policy, the Microsoft HALA, the IP Policy incorporated by reference in the HALA, or even in Microsoft assurance letter from August 31, 2005.   Instead, Section 2 of the IP Policy states "each Member must be prepared to license in a non-discriminatory fashion, and on reasonable terms, to all other Members and non-member licensees (collectively, "Licensees") of the SDA-adopted specifications and any successive parts or versions thereof (collectively, the "Specifications"), such Member's patent claims, existing and pending, which are required to implement the released and published Specifications ("Essential Patent Claim(s)")."  (Ex. 1 at 1.)

This language in no way limits the RAND obligation to *only* licensees of the SDA itself, but rather broadly applies to licensees of the specifications, parts thereof and critically, of Member's "Essential Patent Claims."   If the SDA meant that the term "Licensee" in the IP Policy referred to a party that has signed a HALA or SD Memory Card License Agreement, the two ways to obtain a license from the SDA, it would have defined it that way.   Indeed, those agreements are specifically referred elsewhere in the IP Policy but, significantly, not in applicable Section 2. Rather, the SDA decided to define "Licensee" in the IP Policy differently, to broadly include any Members or non-Members interested in a RAND license to an essential patent claim for implementing the published Specification.   Mobility without question is a "Licensee" under this correct interpretation.

Microsoft's commitment letter is also perfectly consistent with this correct interpretation. It states: "As stated above, Microsoft is willing to make licenses available for products implementing the Microsoft LFN Specification on a RAND, royalty-bearing basis.   To the extent Microsoft has patent claims essential to implementing the Microsoft FAT Specification, Microsoft will offer licenses to such patent claims on a RAND, royalty-free basis for products conforming to the specification."  (Ex. 2 at MSMOTOITC-VOL03-00265101.)   This commitment is in no way

1 | limited to licensees of the SDA.   Nevertheless, Microsoft seeks to play word games with the
2 | language in the letter that says "Microsoft commits to the SDA that Microsoft will license it[s]
3 | Essential Patent Claims in a non-discriminatory fashion and under reasonable terms and
4 | conditions to all SDA Member and non-Member licensees, solely to the extent required for such
5 | entities to implement finally adopted SDA Specifications."   (*Id.*)

6 | When using the term "licensees" here Microsoft is not referring to "SDA licensees."
7 | Nowhere is the commitment limited to those who have a license from the SDA.   Instead, as in the
8 | IP Policy, the commitment is to anyone who wants to license Microsoft's Essential Patents for
9 | implementing the SDA Specifications, whether that licensee is an SDA Member or not an SDA
10 | Member.   Indeed, the sentence that follows, "Microsoft will grant such licensees to the SDA
11 | Members and non-SDA-Members pursuant to separate license agreements," resolves any doubt
12 | that "SDA" modifies "Member" and "non-member", not "licensee."   In sum, Microsoft's
13 | commitment refers to Members and non-Members, and encompasses any entity, including
14 | Mobility, that seeks to implement the released and published specifications.   In any event, even
15 | under Microsoft's misreading of the SDA IP Policy, because Mobility is currently a HALA
16 | licensee, Microsoft has an obligation under its SDA commitments to provide Mobility a license on
17 | the FAT Patents on RAND terms.[10]

18 | **II.     MOBILITY HAS SUFFERED AND WILL CONTINUE TO SUFFER IRREPARABLE HARM**
19 |
20 | **A.     Being Forced to Litigate in the ITC and in the Western District of Washington Constitutes Irreparable Harm**
21 | Courts consistently find, and often *presume*, irreparable harm where, as here, a party has
22 | sued in an improper forum in violation of a forum selection clause binding both parties.   The
23 | harm suffered by Mobility is not abstract and does not depend on contingent future events.
24 | In *General Protecht*, the Federal Circuit held that being forced to litigate in the ITC (and in
25 | another case that has been stayed), and having to litigate the forum selection clause itself, both
26 | constituted irreparable harm:

27 | 
28 | [10]   Mobility's HALA license expired on November 30, 2008, but was renewed on May 26, 2011.

[General Protecht Group] was entitled to litigate this action in the District of New Mexico by virtue of the forum selection clause to which Leviton agreed. Any irreparable harm resulting from the incremental challenge of also litigating in California and the ITC, would be the consequence of Leviton's election to sue in two other forums, both of which it had already bargained away. Moreover, by suing in both California and the ITC, Leviton had already imposed the burden of dual litigations on [General Protecht Group], notwithstanding the automatic stay of the district court case pending the 337 investigation. At most, Leviton has suggested that [General Protecht Group] would not suffer irreparable harm as a result of litigating the choice of forum first in California. But litigating the choice of forum issue itself is not the basis of irreparable harm in the present case.

*General Protecht, slip op.* at 17. That is exactly the case here, where Microsoft continues to aggressively pursue its claims in the ITC in violation of the applicable forum selection clauses.

Further, monetary damages would not adequately compensate Mobility for any of Microsoft's breaches. Rather, Mobility has suffered the further irreparable harm of "inconvenience, disruption of its business, loss of good will, and financial business hardship" of litigating both in this District and in the ITC. *Ciena Corp. v. Nortel Networks, Inc.*, No. 2:05-cv-14, 2005 WL 1189881, at *7 (E.D. Tex. May 19, 2005). The ITC's fast-track nature has and continues to impose difficult discovery, briefing and trial schedules on Mobility. Worse still, witnesses and deponents in the ITC may have to appear again in this forum if Microsoft is not compelled to file the FAT Patents in this District. *Id.* The prejudice to Mobility of having "to fight infringement battles on [multiple] fronts", in contradiction of the mandatory forum selection clause, has been found by the Federal Circuit on two separate occasions to constitute irreparable harm. *Texas Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1332 (Fed. Cir. 2000); *General Protecht, slip op.* at 15-18.

**B. Mobility Did Not Unreasonably Delay Enforcement of Its Rights**

Microsoft may argue as it did in its Opposition that Mobility somehow waited "too long to raise" the forum selection clauses in the current case. (Ex. 20 at 10.) To the extent there has been any delay at all, it can be attributed to Microsoft's recalcitrance in producing documents relevant to its RAND obligations or Mobility's attempts to resolve the RAND issues out of the courtroom.

MOTOROLA MOBILITY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

1    As has been explained by this Court, an "unreasonable delay in seeking injunctive relief

2  may negate the showing of *imminent*, irreparable harm required for a preliminary injunction," but

3  "a reasonable delay caused by a plaintiff's good faith efforts to investigate the case will not

4  preclude the required showing."   *Mandrigues v. World Sav, Inc.*, No. C07-4497-JF, 2008 WL

5  5221074, at *4 (N.D. Cal. Dec. 12, 2008) (quotation marks omitted) (Fogel, J.); *see also Toyota*

6  *Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1183 (9th Cir. 2010) (two-year delay where

7  harmed party diligently pursued alternative ways of resolving conflict).   In *Mandrigues*, this

8  Court found that a "fourteen-month lapse between the filing of the complaint and motion for a

9  preliminary injunction" did "not foreclose the showing of imminent, irreparable injury," since the

10 moving parties had been "engaged in discovery . . . potentially relevant to their motion."   2008

11 WL 5221074, at *4.   Such is the case here.

12   Mobility has been diligently pursuing resolution of the underlying issues governing this

13 case since at least November 2010.   Mobility's first set of document requests, served November 8,

14 2010, contained numerous requests which easily covered Microsoft's RAND obligations to the

15 SDA and under the HALA.   For example, Request for Production No. 8 asked for documents

16 related to the "enforceability of any of the Asserted Claims." (Ex. 14 at 5).   As demonstrated by

17 the *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004 (Fed. Cir. 2008), a party's ability to enforce

18 any valid and infringed patents goes hand in hand with commitments the patentee has made to an

19 SSO that has incorporated technology reading on those patents into a standard.   Likewise,

20 Request for Production No. 30 covered the letter, with accompanying technical and test

21 specifications, which Microsoft sent to the SDA on August 31, 2005.   (Ex. 14 at 9-10.)   Other

22 document requests that obligated Microsoft to produce documents relating to its FAT Patent

23 RAND obligations include at least Requests for Production 1, 32, 45, and 48.

24   On April 28, 2011, Mobility emailed Microsoft requesting a RAND license to the FAT

25 Patents.   (Ex. 15.)   On May 4, Microsoft replied, mischaracterizing the demand for RAND

26 licensing terms as "an effort to inject the settlement discussions into the discovery process into the

27 case." (*Id.*)   Microsoft failed to provide any licensing terms.   Again on May 6, 2011, Mobility

28 requested that Microsoft "promptly provide its FRAND license terms for the FAT patents." (*Id.*)

1  Microsoft never replied.   Ten days later, on May 16, 2011, and nearly seven months after initially

2  filing suit, Microsoft finally produced a copy of the HALA Agreement.   (Ex. 2; Ex 16.)   On May

3  26, 2011, Mobility sent another letter to Microsoft, once more demanding a RAND license to the

4  FAT Patents.   (Ex. 17.)   Microsoft again did not respond.   Mobility filed the Counterclaims in

5  the present action on June 22, 2011.

6       Mobility also only recently discovered – through a deposition held on June 17 – about

7  Microsoft's FAT Patent licensing efforts for companies similarly situated to Mobility.   (Ex. 26.)

8  And only on June 22, 2011 did Microsoft produce a license for the FAT Patents applying to

9  smartphones.   (*See* Exs. 27-28.)   This patent license was not listed in Microsoft Complaint or

10 Amended Complaint.   Yet, this license is more relevant to Microsoft's breach of its RAND

11 commitments than any of the licenses Microsoft has produced to date.

12      With the ITC hearing scheduled August 22, 2011, the timing of this motion is also well

13 within the window where the ITC would still grant Microsoft's motion for termination of the FAT

14 Patents filed pursuant to a temporary restraining order issued by this Court.   In the same *General*

15 *Protecht* dispute, the ALJ quoted with approval an earlier Commission order stating that "'in the

16 absence of extraordinary circumstances, termination of the investigation will be granted to a

17 complainant during the prehearing stage of an investigation.'" (*See* Ex. 29, *In the Matter of Certain*

18 *Ground Fault Circuit Interrupters and Products Containing Same*, Inv. No. 337-TA-739, Order

19 19 (U.S.I.T.C. Jan. 19, 2011) (quoting *In the Matter of Certain Ultrafiltration Sys. and*

20 *Components Thereof, Including Ultrafiltration Membranes*, Inv. No. 337-TA-107, Comm'n Action

21 and Order at 2 (U.S.I.T.C. Mar. 11, 1982)).   Furthermore, the Commission Rules allow a motion

22 for partial termination of an investigation "at any time prior to the issuance of an initial

23 determination," 19 C.F.R. § 210.21(a)(1), which is not scheduled for until November 4, 2011.

24      Any delay in bringing this request for an injunction cannot be said to prejudice Microsoft.

25 The relief Mobility seeks would only compel Microsoft to pursue its patent infringement claims in

26 the Northern District of California, where Microsoft would still be potentially entitled to obtain the

27 same type of relief it could in the ITC or the Western District of Washington.

28

## III. THE BALANCE OF HARDSHIPS TIPS DECISIVELY IN MOBILITY'S FAVOR

The TRO that Mobility seeks will have no effect on Microsoft's potential future right to damages or injunctive relief on the FAT Patents. *General Protecht Group, Inc. v. Leviton Mfg. Co.*, No. 10-1020, 2010 U.S. Dist. LEXIS 137160, at *4 (D.N.M. Dec. 7, 2010) ("injunctive relief will not likely materially harm [the patentee], as the District of New Mexico can, for the most part, grant [the patentee] the same relief it could obtain in the ITC action."); *Ciena Corp.*, 2005 WL 1189881, at *8.

Microsoft's seven other patents in the ITC—along with the fourteen other patents it has asserted against Mobility in jurisdictions including the Southern District of Florida, Western District of Washington, and Western District of Wisconsin —will proceed in the normal course. Any harm that Microsoft could possibly experience by a brief delay in the adjudication of two of the 23 patents it has asserted against Mobility would be miniscule.   Moreover, Microsoft is familiar with this District, as it has recently filed suits and been transferred here.[11]  *Id.*

Mobility, on the other hand, suffers immediate and irreparable harm to its business operations and goodwill, and is forced to litigate the FAT patents in multiple forums.   Microsoft may attempt to argue that these Counterclaims unnecessarily added yet an additional forum to the dispute between the parties.   But "any irreparable harm resulting from the incremental challenge of also litigating in" the Western District of Washington and the ITC "would be the consequence of [Microsoft's] election to sue in two other forums, both of which it had already bargained away." *General Protecht, slip op.* at 17.   It was Microsoft, not Mobility, who violated the forum selection clauses by bringing suit in these other forums in the first place.

Even if Microsoft could show that it would suffer some small degree of comparable harm from the issuance of a TRO (which it cannot), any harmed interest of Microsoft would be illegitimate—the direct result of Microsoft's own breach of its RAND obligations, and subsequent

---

[11]   *See, e.g., Microsoft Corp. v. TiVo Inc.*, Docket Entry 34, No. C11-00134 (W.D. Wash. May 19, 2011) (transferring case from W.D. Wash. to N.D. Cal.); *Microsoft Corp. v. PartsRiver, Inc.*, No. 4:10-cv-05108-CW (N.D. Cal. filed Nov. 10, 2010); *Microsoft Corp. v. TiVo Inc.*, No. 5:10-cv-00240-LHK (N.D. Cal. filed Jan. 19, 2010); *Microsoft Corp. v. Coast Networks Inc.*, No. 3:09-cv-04840-MHP (N.D. Cal. filed Oct. 13, 2009).

1  suit in an improper forum.    Clearly, the party opposing injunctive relief "do[es] not have a right to

2  reap profits from" its wrongful conduct.    *Grooms v. Legge*, No. 09-cv-489-IEG, 2009 WL

3  962067, at *13 (S.D. Cal. Apr. 8, 2009).    Microsoft bargained away the right to seek relief on the

4  FAT Patents from the Western District of Washington and the ITC when it (1) became a member

5  of the SDA; (2) declared the FAT Patents essential to a Microsoft Contribution ultimately

6  incorporated into SD Specifications; and (3) entered into the HALA Agreement.    Accordingly,

7  the balance of hardships tips sharply in favor of Mobility.

8  **IV.    CALIFORNIA HAS A STRONG PUBLIC INTEREST IN ENFORCING**
   **CONTRACTS AGREED TO BE ADJUDICATED IN THE NORTHERN DISTRICT**
9  **AND UNDER CALIFORNIA LAW**

10        California has a public interest in granting Mobility's request for an injunction.    As stated

11  by the Federal Circuit in *General Protecht*, "public policy favors the enforcement of [an

12  applicable] forum selection clause."    *Slip op.* at 19-20; *M/S Bremen v. Zapata Off-Shore*, 407 U.S.

13  1, 12-13 (1972) ("There are compelling reasons why a freely negotiated . . . agreement, unaffected

14  by fraud, undue influence, or overweening bargaining power, such as that involved here, should be

15  given full effect."); *Smith, Valentino & Smith, Inc. v. Superior Ct.*, 17 Cal.3d 491, 495 (Cal. 1976).

16        In contrast, enjoining Microsoft would not harm the public interest.    "The preliminary

17  injunction here will not and cannot enjoin the ITC action.    There is no public interest served by

18  excusing a party's violation of its previously negotiated contractual undertaking to litigate in a

19  particular forum."    *General Protecht, slip. op.* at 20 (citations and quotations omitted).    There is

20  similarly no public interest in letting the FAT Actions cases proceed simply because those cases

21  involve patents.    *See 3M Unitek Corp. v. Ormco Co.*, 96 F. Supp. 2d 1042, 1052 (C.D. Cal. 2000)

22  ("If [protecting patents] were a sufficient public interest it would render the public interest element

23  of the four part test superfluous, as it would always favor the [patentee].")

24

25

26

27

28

1 | <u>**CONCLUSION**</u>

2 | For the foregoing reasons, Counterclaimant Mobility respectfully requests that this Court

3 | grant its motion for a temporary restraining order.

4 | Dated:      San Jose, California
               July 29, 2011

5 |                      QUINN EMANUEL URQUHART &
                         SULLIVAN, LLP

6 |

7 |

8 |              By:_____

9 |                     David A. Perlson

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

-25-                Case No. CV 11-03136-JF

MOTOROLA MOBILITY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER