# EXHIBIT 10

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RESEARCH IN MOTION LIMITED and RESEARCH IN MOTION CORPORATION, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:08-CV-0284-G ECF |
| MOTOROLA, INC., | § § § | |
| Defendant. | § | |

## DECLARATION OF BRIAN BLASIUS

I, Brian Blasius, declare

1. I make this declaration in support of Defendant Motorola, Inc.'s Brief In Support Of Its Motion To Dismiss Or Stay Plaintiffs' Antitrust And Contract Claims; And To Dismiss, Stay Or Transfer Plaintiffs' Declaratory Judgment Patent Claims. Unless otherwise stated, I make this declaration based on personal knowledge.

2. I am currently employed by Motorola, Inc. as Director of Intellectual Property Outbound Licensing in its Mobile Devices business.

3. As part of its participation in standards organizations, Motorola has declared the existence of patents that it considers "essential" to a standard, and has agreed to license them on "FRAND" (Fair, Reasonable and Non-Discriminatory) terms as required by standards organizations. Motorola has licensed its "essential" patents to dozens of companies, including many of Motorola's competitors in the industry.

4. From 2003 through the end of 2007, Research In Motion Limited (RIM) was licensed under a number of Motorola's "essential" and "non-essential" patents. One of the terms

of that license provided for RIM's payment to Motorola of an up-front, lump sum amount for use of certain "essential" and "non-essential" Motorola patents. Based on information I have reviewed and my personal knowledge, this lump sum amount was based on a typical essential patent royalty rate used in other Motorola licenses, applied to an estimate of RIM's future sales over the five-year term of the license, which estimate turned out to be significantly lower than RIM's actual performance.

5.  In late 2007, RIM and Motorola had negotiations to renew their license. During those renewal negotiations, Motorola offered RIM a license under its "essential" and certain "non-essential" patents. This offer attributed a royalty rate to the "essential" patents that is comparable to that used by Motorola to arrive at the lump sum payment offered to and accepted by RIM in 2003 as well as the rate offered to and accepted by other companies.

6.  Motorola has been, and remains, willing to license its "essential" patents without requiring that a licensee also take a license under any "non-essential" patents. Most of Motorola's agreements that cover licenses under "essential" patents provide no license for "non-essential" patents.

7.  During the 2007 negotiations, Motorola and RIM entered into a Standstill Agreement effective December 5, 2007, to provide additional time for the negotiations. That Standstill Agreement expired at "the end of the day" on February 15, 2008.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Libertyville, Illinois on April 9th, 2008.

_____
Brian Blasius

3579008_1.DOC

APP. 2