# EXHIBIT 12

IEEE STANDARDS ASSOCIATION 

Understanding Patent Issues During IEEE Standards Development

# Understanding Patent Issues During IEEE Standards Development
## Patented Technology in IEEE standards

This guide offers information concerning the IEEE Standards Association and its patent policies but does not state the patent policy. Definitive statements of the IEEE Standard Association's policies and procedures concerning patents can be found in the *IEEE-SA Standards Board Bylaws* and the *IEEE-SA Standards Board Operations Manual*.

A complete package of patent-related materials is available at http://standards.ieee.org/about/sasb/patcom/materials.html. This package includes all the documentation you need to comply with the IEEE Standards Association policy concerning essential patents. A flowchart with additional guidance on the methodologies used by the IEEE-SA Standards Board Patent Committee is part of this package. If you include patented technology in your standard, then you may have incorporated an essential patent.

1. *What is an Essential Patent Claim?*

   An Essential Patent Claim means any Patent Claim [including claims in issued patent(s) or pending patent application(s)] the use of which was necessary to create a compliant implementation of either mandatory or optional portions of the normative clauses of the [Proposed] IEEE Standard when, at the time of the [Proposed] IEEE Standard's approval, there was no commercially and technically feasible non-infringing alternative. An Essential Patent Claim does not include any Patent Claim that was essential only for Enabling Technology or any claim other than that set forth above even if contained in the same patent as the Essential Patent Claim. See clause 6.1 of the IEEE-SA Standards Board Bylaws at http://standards.ieee.org/develop/policies/bylaws/sect6-7.html#6.1.

2. *Does the IEEE determine whether a patent is essential when seeking a Letter of Assurance?*

   No.

## Call for Essential Patents Claims at IEEE Standards Developing Meetings

3. *What is a call for patents?*

   A call for patents is a reminder made by the chair, or the chair's designee, at an IEEE standards developing meeting. The chair or the chair's designee informs the participants that if any individual believes that Patent Claims might be Essential Patent Claims, that fact should be made known to the entire working group and duly recorded in the minutes of the working group meeting.

4. *How often should a Working Group Chair issue a call for potential Essential Patent Claims?*

   A Working Group Chair or his or her designee shall issue the call at every Working Group meeting. If the Working Group does not meet face to face or telephonically, the Working Group should be issued a call via e-mail or letter on a regular basis. It is strongly

**Understanding Patent Issues During IEEE Standards Development**

recommended that the IEEE Patent Committee-developed <u>slide set</u> be used. Note that a call for patents shall be made at every standards developing meeting. This includes, but is not limited to, working group and task force meetings.

*4a.  Should a Call for Patents be issued at a Study Group or other pre-PAR meeting?*

No. However, it is recommended that the 'Patent Slides for pre-PAR Meetings' be used in these meetings.

5. *Our group gathers for several days during a single week. Does the chair have to announce the policy every day?*

The Working Group Chair or his or her designee shall issue the call at every Working Group meeting. If a group is "meeting" for consecutive days and the attendance is substantially the same for each day of the gathering, the policy only needs to be read once. If the chair plans not to read or display the policy each day, then the chair must either (a) ensure that the policy or a <u>URL</u> for it has been sent out to all attendees prior to the meeting (and is available in the registration packet for any on-site registrants), or (b) announce each day that the meeting is subject to the patent policy as read or displayed on the first day. Note, though, that this rule applies separately to each "group" that is "meeting" during the week. For example, if a working group holds a meeting during the same week as its task group and/or task force, the chair of each of those groups must read or display the policy at the beginning of that group's first day of "meeting."

*5a.  How does the chair determine that the participation in a group that is 'meeting' for consecutive days is substantially the same?*

The chair has to use his/her judgment to determine this. It could for example be done based on the attendance numbers each day. The default action is to read the patent policy.

6. *What if a group meets telephonically?*

If the Working Group meets telephonically, you can send the slides in an email to the participants in advance of the call, or include a <u>link</u> in the meeting announcement. The chair must then ask at the start of the call whether there is anybody participating that has not read the policy. If someone says they have not, then the chair must either (a) read the policy aloud, or (b) send the policy or <u>URL</u> electronically and pause the call until all participants have read the policy.

7. *What if the group does not meet either in person or by telephone – for example, the group "meets" only through email or chat rooms?*

If the group does not meet face-to-face or telephonically, the chair of the group should issue the <u>call for patents</u> via e-mail or letter on a regular basis.

## Letter of Assurance

8. *What is a Letter of Assurance?*

In general, a letter of assurance is a document stating a <u>Submitter's</u> position with respect to

**Understanding Patent Issues During IEEE Standards Development**

ownership, enforcement, or licensing of an Essential Patent Claim that may be incorporated into a specifically referenced IEEE Standard. The specific requirements for an IEEE Letter of Assurance are defined in clause 6.1 of the *IEEE-SA Standards Board Bylaws* at http://standards.ieee.org/develop/policies/bylaws/sect6-7.html#6.1.

9. *When does the IEEE send out a request for a Letter of Assurance?*

   The Working Group Chair or, where appropriate, the Sponsor Chair will send out a request for a Letter of Assurance whenever the Chair is notified, at any time and by any means, that the [Proposed] IEEE Standard may require the use of a potential Essential Patent Claim.

10. *How will a participant know if the IEEE has accepted a Letter of Assurance?*

   Accepted Letters of Assurance can be found on the IEEE-SA's web site at http://standards.ieee.org/about/sasb/patcom/patents.html.

11. *What happens if the IEEE has not received assurances regarding all potential Essential Patent Claims incorporated in a [Proposed] IEEE Standard?*

   If the IEEE is aware of a potential Essential Patent Claim and no corresponding Letter of Assurance has been received, the matter will be referred to the IEEE-SA Standards Board Patent Committee through the PatCom Administrator. The IEEE-SA Standards Board Patent Committee will review the circumstances and make a recommendation to the IEEE-SA Standards Board.

12. *How should Working Groups handle existing Letters of Assurance provided to IEEE when developing an amendment, corrigendum, edition, or revision of the particular standard referenced in the Letter of Assurance?*

   An Accepted Letter of Assurance referencing an existing standard, amendment, corrigendum, edition, or revision will remain in force for the application of the Essential Patent Claim(s) to the technology specified in another amendment, corrigendum, edition, or revision of the same IEEE  Standard but only if (a) the application of the technology required by the amendment, corrigendum, edition, or revision of the same IEEE Standard has not changed from its previous usage and (b) the same Essential Patent Claims covered by the prior Accepted Letter of Assurance remain Essential Patent Claims in the same IEEE Standard or revision thereof. The Working Group Chair shall initiate a request for a new Letter of Assurance from a known Submitter when re-using portions of or technologies specified in an existing [Proposed] IEEE Standard, amendment, corrigendum, edition, or revision referenced in an Accepted Letter of Assurance in a different [Proposed] IEEE Standard.

12a. *How should Working Groups handle Letters of Assurance when re-using portions of a non-IEEE standard in a [Proposed] IEEE Standard?*

   The Working Group Chair shall initiate a request for a Letter of Assurance from holders of potential Essential Patent Claims when re-using portions of an existing non-IEEE standard in a [Proposed] IEEE Standard. Any patent letters of assurance (or patent declarations) given to the developer of the non-IEEE standard cannot be stated to also apply to the [Proposed] IEEE Standard. In addition, there are specific requirements that must be incorporated into an IEEE

Understanding Patent Issues During IEEE Standards Development

Letter of Assurance in order for it to have the possibility of becoming an Accepted IEEE Letter
of Assurance.

## Participants and Notification to IEEE of Essential Patent Claims

13. *What obligation do individual participants have to notify the IEEE if they own or their
employer owns potential Essential Patent Claims incorporated in a [Proposed] IEEE Standard?
What if they are uncertain whether a Patent Claim they own or their employer owns is
essential?*

Individual participants of a call for patents are required to notify the IEEE of the identity of a
holder of any potential Essential Patent Claims (but not the identity of the Essential Patent
Claim) where (1) the individual participant is personally aware that the holder may have a
potential Essential Patent Claim; (2) the holder is the participant or an entity the participant
is from, employed by, or otherwise represents; and (3) the potential Essential Patent Claim is
not already the subject of any existing Letter of Assurance. If such a participant is uncertain
whether the patent is essential, the participant still shall notify the IEEE (or cause the IEEE to
be notified) of the possibility because they are personally aware of a claim that is a *potential*
Essential Patent Claim.

13a. *When is a potential Essential Patent Claim considered to be the subject of an existing Letter
of Assurance?*

A potential Essential Patent Claim is the subject of an existing Letter of Assurance for a
particular standard (a) if there is an Accepted Letter of Assurance for the potential Essential
Patent Claim or related potential Essential Patent, (b) if there is an Accepted Blanket Letter of
Assurance from the holder of the potential Essential Patent Claim, or (c) an Accepted Letter
of Assurance for the potential Essential Patent Claim exists under the conditions defined in
IEEE-SA Standards Board Operations Manual subclause 6.3.5 'Applicability of Letters of
Assurance to Amendments, Corrigenda, Editions, or Revisions' (see FAQ12).

14. *How do I find out if a particular company has submitted a Letter of Assurance?*

Accepted Letters of Assurance are listed on the IEEE-SA's web site at
http://standards.ieee.org/about/sasb/patcom/patents.html. Letters of Assurance accepted
after 31 December 2006 will be posted on the website as they are received and Letters of
Assurance received prior to that date will be posted over time.

15. *What are example means by which an individual participant can notify the IEEE (or cause
the IEEE to be notified) that his or her employer is the holder of a potential Essential Patent
Claim incorporated in a [Proposed] IEEE Standard? Does the individual participant need to
identify the Essential Patent Claim specifically?*

An individual participant could fulfill his or her duty to the IEEE by telling the Working Group
Chair that his or her employer is the holder of a potential Essential Patent Claim.
Alternatively, the participant could request that his or her employer submit a Letter of
Assurance or otherwise notify the IEEE that it is the holder of a potential Essential Patent
Claim. In the latter case, the participant fulfills his or her duty to the IEEE only if his or her
employer submits a Letter of Assurance or otherwise notifies the IEEE that it is the holder of
a potential Essential Patent Claim. If the employer declines to submit a Letter of Assurance or

**Understanding Patent Issues During IEEE Standards Development**

otherwise notify the IEEE, the participant will have to tell the Working Group Chair that his or her employer may be the holder of a potential Essential Patent Claim. In all cases, the duty on the participant is only to inform the IEEE of the identity of the holder of a potential Essential Patent Claim and not the patent, application, or particular claim itself. The response to the call for patents only needs to be made if the response relates to a potential Essential Patent Claim that is not already the subject of any existing Letter of Assurance or request for a Letter of Assurance.

15a. *Can a response to the call for patents be made via email in advance or subsequent to a meeting?*

The duty on the participant is to inform the IEEE of the identity of the holder of a potential Essential Patent Claim. The Chair can be notified at any time (in advance or subsequent to a meeting is acceptable). The declaration must be made in a recordable manner.

16. *Do participants have to notify IEEE of third party patent holders? For these purposes, "third party" means a person other than the participant or an entity the participant is from, employed by, or otherwise represents.*

Participants are not required to notify the IEEE that they are aware of any potential Essential Patent Claims held by a third party. Participants may make such disclosure at their own discretion. Although there is no obligation to notify the IEEE of third party patent holders, the IEEE encourages participants to do so. This encouragement is particularly strong as the third party may not be a participant in the standards process.

17. *What duty does an individual participant have to the IEEE if a participant's employer owns a potential Essential Patent Claim but the individual participant doesn't have personal knowledge of such claim?*

As noted in the answer to question 13, a participant only needs to notify the IEEE of a potential Essential Patent Claim if such participant is "personally aware" that his or her employer has a potential Essential Patent Claim. There is no duty for that employee (or anyone else in his or her organization) to conduct a patent search, but the IEEE-SA does expect that participants will conduct themselves in good faith. This expectation arises both from the IEEE Code of Ethics and from the background legal rules. The IEEE Code of Ethics makes clear, for example, that participants "accept responsibility in making decisions consistent with the safety, health and welfare of the public." Similarly, the U.S. Supreme Court stated in the Allied Tube case that SDOs operate based on "the merits of objective expert judgments" using "procedures that prevent the standard-setting process from being biased by members with economic interests in stifling product competition." Consequently, while (again) the policy does not require a patent search, the IEEE does encourage each participant to make sufficient inquiry to satisfy him or herself that s/he is not being deliberately shielded from relevant knowledge and that the employer does not have any potential Essential Patent Claim.

18. *Can an individual participate in standards development activities if his or her employer is unwilling to submit a Letter of Assurance once requested or provide the assurance indicated in the patent policy in a Letter of Assurance?*

**Understanding Patent Issues During IEEE Standards Development**

Yes. As long as the participant complies with the requirement that he or she notify the IEEE that his or her employer is the holder of a potential Essential Patent Claim if the participant is personally aware that his or her employer is such a holder, the individual can continue to participate in standards development activities. See also question 15.

19. *Does the IEEE patent policy require participants or their employers to make an assurance or submit a Letter of Assurance?*

   No. Submission of a Letter of Assurance is not a precondition to participation. Participants do have a duty to inform the IEEE if they or an entity they are from, employed by, or otherwise represents holds potential Essential Patent Claims. See questions 13, 16, and 18 for more information.

20. *Is the IEEE's patent policy a "disclosure" policy?*

   No. The IEEE's patent policy is a policy of assurance as further described in these frequently asked questions, not a policy of disclosure.

21. *What does a participant's employer need to do to determine whether it has any potential Essential Patent Claims when it receives a request from the IEEE for a Letter of Assurance? Specifically,*

 (a) *Does the employer need to do a patent search?*

   No. The policy expressly states that there is no duty to conduct a patent search; but the employer may do so if it wishes.

 (b) *Does the employer need to talk to every person they have sent to the Working Group?*

   When the employer receives the request for a Letter of Assurance, the employer can state its licensing position with respect to any Patent Claims that might be or become Essential Patent Claims relating to the particular standard referenced in the Letter of Assurance. In the alternative, the employer can indicate that it is not aware of any Patent Claims that the employer may own, control, or have the ability to license that might be or become Essential Patent Claims, but *only if* the employer does a Reasonable and Good Faith Inquiry to determine the existence of any such Patent Claims. As described in clause 6.1 of the Bylaws, a "Reasonable and Good Faith Inquiry" includes, but is not limited to, the employer using reasonable efforts to identify and contact those individuals who are from, employed by, or otherwise represent the employer and who are known to the employer to be current or past participants in the development process of the [Proposed] IEEE Standard identified in the Letter of Assurance, including, but not limited to, participation in a Sponsor Ballot or Working Group. If the Submitter did not or does not have any participants, then a "Reasonable and Good Faith Inquiry" may include, but is not limited to, the Submitter using reasonable efforts to contact individuals who are from, employed by, or represent the Submitter *and* who the Submitter believes are most likely to have knowledge about the technology covered by the [Proposed] IEEE Standard. As described above, the employer only needs to engage in a Reasonable and Good Faith Inquiry if it wants to avoid providing an assurance based on its assertion that it is not aware of any Patent Claims that the employer may own, control, or have the ability to license that might be or become Essential Patent Claims.

Understanding Patent Issues During IEEE Standards Development

### Submitting a Letter of Assurance

22. *Do the terms "potential Essential Patent Claims" and "Patent Claims that the Submitter may own, control, or have the ability to license . . ." include claims described in patent applications?*

    Yes. The definition of <u>Patent Claims</u> includes pending patent applications.

23. *At what point should the Letter of Assurance be submitted?*

    The IEEE encourages the submission of a <u>Letter of Assurance</u> as soon as reasonably feasible in the standards development process once the PAR has been approved by the IEEE-SA Standards Board.

24. *Who should submit a Letter of Assurance?*

    The IEEE will request licensing assurance on the IEEE-SA Standards Board approved <u>Letter of Assurance form</u> from any person upon being notified that a [Proposed] IEEE Standard may require the use of a potential <u>Essential Patent Claim</u>. Although the IEEE encourages any person receiving a request for assurance to submit the <u>Letter of Assurance</u>, the IEEE may not use any coercion in requesting the assurance. This means the IEEE cannot require that a person submit a Letter of Assurance or provide a particular assurance with respect to ownership, enforcement, or licensing of an Essential Patent Claim in order to participate in an IEEE standards development activity.

    Additionally, a <u>Submitter</u> of a Letter of Assurance is required to submit a Letter of Assurance if, after providing a Letter of Assurance to the IEEE, the Submitter of the Letter of Assurance becomes aware of additional <u>Patent Claim(s)</u> not already covered by an existing Letter of Assurance as further described in the answer to question 26. Any person or entity that believes that it holds a potential Essential Patent Claim is encouraged to submit a Letter of Assurance, even if not specifically requested to do so.

25. *Who should sign a Letter of Assurance?*

    Only a person who is authorized to sign and bind the <u>Submitter</u> and its covered <u>Affiliates</u> to the assurance shall sign the <u>Letter of Assurance</u>. Unless the Letter of Assurance is received from an individual who has clear authority for intellectual property and legal matters, the IEEE-SA Standards Board Patent Committee <u>Administrator</u> will take follow-up action.

26. *What duty does a Submitter have to provide an additional assurance if it becomes aware of additional Essential Patent Claims not already covered by an existing Letter of Assurance?*

    As further described in <u>Section 6.2</u> of the Bylaws, the <u>Submitter</u> of a <u>Letter of Assurance</u> is required to submit a Letter of Assurance if, after providing a Letter of Assurance to the IEEE, the Submitter of the Letter of Assurance becomes aware of additional <u>Patent Claim(s)</u> that are not already covered by an existing Letter of Assurance and that are owned, controlled, or licensable by the Submitter that may be or may become <u>Essential Patent Claim(s)</u> for the same IEEE Standard. The Submitter is deemed to be "aware" of such additional potential Essential Patent Claims if any of the following individuals who are from, employed by, or otherwise represent the Submitter have personal knowledge of such claims: (a) past or

**Understanding Patent Issues During IEEE Standards Development**

present participants in the development of the [Proposed] IEEE Standard; or (b) the individual executing the previously submitted Letter of Assurance.

27.  *Can the Letter of Assurance form be modified?*

No. Use of the Letter of Assurance <u>form</u> is now mandatory. Completing the form is not considered a modification.

28.  *What happens when a Letter of Assurance is not accepted?*

The <u>Submitter</u> will be informed by the <u>PatCom Administrator</u> that the <u>Letter of Assurance</u> was not accepted and why it was not accepted.

29.  *Are attachments part of the Accepted Letter of Assurance?*

Yes. See also question 38 and 39.

30.  *Who can enforce the Accepted Letter of Assurance?*

Users and implementers may seek to enforce the terms of any <u>Accepted Letter of Assurance</u>. In certain circumstances and at its sole discretion, the IEEE may also seek to enforce the terms of an Accepted Letter of Assurance.

**Affiliates**

31.  *Who is an Affiliate?*

An <u>Affiliate</u> is an entity that directly or indirectly, through one or more intermediaries, controls the <u>Submitter</u>, is controlled by the Submitter, or is under common control with the Submitter. For the purposes of this definition, the term "control" and its derivatives, with respect to for-profit entities, means the legal, beneficial, or equitable ownership, directly or indirectly, or more than fifty percent (50%) of the capital stock (or other ownership interest, if not a corporation) of an entity ordinarily having voting rights. "Control" and its derivatives, with respect to nonprofit entities, means the power to elect or appoint more than fifty percent (50%) of the Board of Directors of an entity. See <u>clause 6.1</u> of the *IEEE-SA Standards Board Bylaws* available at http://standards.ieee.org/develop/policies/bylaws/ sect6-7.html#6.1. For example, the parent corporation of a Submitter, any brother or sister corporation of the Submitter, and any Submitter subsidiary in which the Submitter owns more than 50% are considered Affiliates.

32.  *Does the Letter of Assurance bind Affiliates?*

Yes, other than those <u>Affiliates</u> explicitly excluded in a <u>Letter of Assurance</u>.

**Application of LOA to Successors of Essential Patent Claims Covered by LOA**

33.  *What does the Submitter of a Letter of Assurance have to do if the Submitter transfers one or more Essential Patent Claims covered by the Letter of Assurance to a third party?*

The <u>Submitter</u> of a <u>Letter of Assurance</u> is required to provide notice of the Letter of Assurance to any assignee or transferee of any <u>Essential Patent Claims</u> covered by the Letter

Understanding Patent Issues During IEEE Standards Development

of Assurance. That notice can be provided by notifying the assignee or transferee that the Essential Patent Claims are subject to an <u>Accepted Letter of Assurance</u> or by a general statement in the transfer or assignment agreement that the Essential Patent Claims being transferred or assigned are subject to any encumbrances that may exist as of the effective date or such agreement. For example, a Submitter could include a provision like the following in its purchase agreement:

"One or more of the assets being transferred are subject to encumbrances that may exist as of the Effective Date of the Purchase Agreement."

In addition, the Submitter shall require that the assignee or transferee agree to provide the same notice to any subsequent assignees or transferees and require its subsequent assignees or transferees to do the same.

*Hypothetical.* Company A submits a Letter of Assurance for an Essential Patent Claim for IEEE Standard X which is accepted by the IEEE-SA. Two years after submitting the Letter of Assurance, Company A sells all of its assets to Company B, including the Essential Patent Claim. Three years later, Company B sells the Essential Patent Claim to Company C. Subsequently, Company C sells the Essential Patent Claim to Company D but does not provide the required notice to Company D.

(a)   <u>Company A's Obligations</u>

Company A can fulfill its obligations to the IEEE-SA in one of two ways:

✓ Company A can notify Company B that the Essential Patent Claim is subject to an Accepted Letter of Assurance; or

✓ Company A can provide a statement in its purchase agreement with Company B that one or more of the assets being transferred may be subject to any encumbrances that may exist as of the effective date of such agreement.

Regardless of which path it takes, Company A also must require that Company B agree to provide the same notice to its assignees or transferees and to bind those assignees or transferees to provide the same notice.

(b)   <u>Company B's Obligations</u>

Company B can fulfill its obligations to the IEEE-SA one of two ways:

✓ Company B can notify Company C that the Essential Patent Claim is subject to an Accepted Letter of Assurance; or

✓ Company B can provide a statement in its purchase agreement with Company C that one or more of the assets being transferred may be subject to any encumbrances that may exist as of the effective date of such agreement.

Regardless of which path it takes, Company B also must require that Company C agree to provide the same notice to its assignees or transferees and to bind those assignees or transferees to provide the same notice.

Understanding Patent Issues During IEEE Standards Development

(c)     Company C's Obligations

Company C must agree to provide the same notice to its assignees or transferees and to bind those assignees or transferees to provide the same notice as described in (a) and (b) above. In this case, Company C did not provide the required notice to Company D in breach of its agreement with Company B. However, as long as Company B required that Company C provide the required notice to Company D, Company B has fulfilled its commitment under the Letter of Assurance. Although Company B may decide not seek to enforce its agreement with Company C, users and implementers could themselves seek to enforce Company C's agreement to provide required notice to Company D.

34. *If a Submitter transfers one or more Essential Patent Claims that may be covered by a Letter of Assurance, what commitment does it need to get from the transferee regarding the Letter of Assurance?*

See answer to question 33.

35. *Does the Submitter have any responsibility to ensure that its assignees and transferees provide notice of the Letter of Assurance to subsequent transferees?*

No. As long as the Submitter provides the required notice to its assignees and transferees and requires that its assignees and transferees agree to provide the required notice and bind its assignees and transferees to the same, the Submitter is not responsible for the actions of any downstream assignees and transferees.

**Licensing Terms Provided with Letters of Assurance**

36. *A Submitter of a Letter of Assurance is permitted to provide a not-to-exceed license fee or rate commitment. What is the purpose of permitting a Submitter to provide a not-to-exceed license fee or rate commitment?*

The purpose of the policy is to facilitate the development of standards that will serve the interests of industry, government, and the public. Relative costs of implementation for different proposed technical approaches in comparison with the relative technical performance increases or decreases of those proposals is a legitimate topic for discussion and a legitimate basis for decision-making in the standards development process. The new policy attempts to provide participants with greater certainty and precision in their understanding of relative costs.

37. *Is a Submitter of a Letter of Assurance* **required** *to provide a not-to-exceed license fee or rate commitment?*

No. The IEEE-SA permits, but does not require, the Submitter to provide not-to-exceed royalty rates or other terms.

38. *Does the IEEE make a judgment about whether any terms provided with the Letter of Assurance are reasonable or non-discriminatory?*

No. The IEEE is not responsible for identifying Essential Patent Claims for which a license may be required, for conducting inquiries into the legal validity or scope of those Essential Patent

**Understanding Patent Issues During IEEE Standards Development**

Claims, or for determining whether any licensing terms or conditions provided in connection with submission of a Letter of Assurance, if any, or in any licensing agreements are reasonable or non-discriminatory. Acceptance of a <u>Letter of Assurance</u> does not imply that the IEEE has made any determination of the reasonableness of the foregoing.

39. *What is the meaning of "reasonable rates" and "reasonable terms and conditions"?*

As noted in the answer to question 38, the IEEE-SA takes no position on, and has no responsibility for determining, the reasonableness of disclosed royalty rates or other licensing terms and conditions. The IEEE-SA's acceptance of a <u>Letter of Assurance</u> does not imply any finding that the disclosed not-to-exceed terms are or are not reasonable. The IEEE-SA's approval of a standard does not imply any finding (in the case of a standard for which not-to-exceed terms have been disclosed) that such terms are or are not reasonable or any finding (in the case of a standard for which not-to-exceed terms were not disclosed) that reasonable terms would be greater or less than the disclosed maximum terms (if any) for any other technology.

40. *The policy says that "copies of an Accepted Letter of Assurance may be provided to the Working Group, but shall not be discussed, at any standards Working Group meeting."*

*a) Can copies of Accepted Letters of Assurance be handed out at a standards development meeting?*

Yes. A participant may provide an <u>Accepted Letter of Assurance</u> to other participants by handing out paper copies of an Accepted Letter of Assurance (including a copy of the accepted license or material licensing terms, if provided as part of the Letter of Assurance) or a data file with an image of the Accepted Letter of Assurance as it resides on the <u>IEEE website</u>.

*b) Can the link to the IEEE website for an accepted Letter of Assurance be provided?*

Providing or displaying the IEEE URL for an <u>Accepted Letter of Assurance</u> is also acceptable.

*c) Can the actual Accepted Letter of Assurance be displayed on a screen?*

Yes, but it is not recommended. The <u>Letter of Assurance</u> consists of three pages of often very small type. Therefore, the display is not going to be legible except in the smallest of rooms. The lack of legibility may lead to impermissible questions or discussion. Nevertheless, displaying the <u>Accepted Letter of Assurance</u> as it resides on the <u>IEEE website</u> is not a violation of the patent policy provided a participant does not read aloud, present, or answer questions about the displayed Letter of Assurance.

*d) Can a participant make a presentation or answer questions about the not-to-exceed license fee or rate, material licensing terms, sample license agreement?*

No, except that using one or more not-to-exceed rates as components in a presentation comparing relative costs is acceptable. Further information can be found in "What You Need to Know about the IEEE Standards Association's Antitrust and Competition Policy."

**Understanding Patent Issues During IEEE Standards Development**

*e)  What can standards development groups discuss about Letters of Assurance or submitted license terms?*

*Nothing, other than distribution of the Letter of Assurance as described in FAQ 40(a) above. In addition, using one or more not-to-exceed rates as components in a presentation comparing <u>relative costs</u> is acceptable. Further information can be found in "<u>Promoting Competition and Innovation: What You Need to Know about the IEEE Standards Association's Antitrust and Competition Policy</u>".*

*f)  Doesn't it make sense to discuss license terms as part of an overall evaluation of a proposed technology?*

IEEE-SA standards development meetings consist primarily of engineers who are there primarily to discuss the technical merits of competing solutions. Some knowledge of <u>relative cost</u> is entirely appropriate, and the policy provides for exactly that. But licensing issues can be complex and involve not just technical issues but legal and business issues as well, and those discussions can require a different set of people than are present for the technical meetings.

*g)  What do I do if the standards development group launches into a discussion of patent licensing terms?*

A participant should object to, and a Working Group Chair shall close down, any discussion that is not permitted under IEEE-SA policies.

*h)  What should the chair do if a participant wants to modify the terms of an Accepted Letter of Assurance during the meeting?*

An *Accepted Letter of Assurance* cannot be modified, either in the meeting or elsewhere. Anyone who wishes to submit an additional *Letter of Assurance* may do so (although any previous Accepted Letters of Assurance will continue to be available). The chair should instruct the individual to submit a new Letter of Assurance as provided in the *IEEE-SA Standards Board Operations Manual*. See also response to question 43.

*i)   What about conversations in the hallway? Can participants discuss the particulars of license terms there?*

The IEEE-SA regulates what goes on in forums that the IEEE-SA provides, such as meeting rooms and email reflectors. The IEEE-SA has no ability to regulate purely private conduct of its participants. There are some topics that participants should not discuss regardless of where they are (such as prices that each of them as competitors will charge for compliant products). There are other topics that participants shall not discuss in IEEE-SA forums and shall not discuss in immediately adjacent spaces that might reasonably lead outside observers to believe it is just a continuation of the formal meeting. Further information can be found in "*Promoting Competition and Innovation: What You Need to Know about the IEEE Standards Association's Antitrust and Competition Policy*".

Understanding Patent Issues During IEEE Standards Development

*j) If a Letter of Assurance is submitted without the Submitter's having exercised the option of providing a not-to-exceed license fee or rate commitment or other license terms, is it okay for a Working Group participant to request or encourage the Submitter to file an additional Letter of Assurance to provide that information?*

No. Although relative cost comparisons can certainly note the absence of cost information, participants shall not request license fees, terms, or conditions during technical standards-development meetings or in other IEEE-SA forums for technical discussions (such as email reflectors).

*k) What can be discussed about patents in a standards development group meeting or in an IEEE-SA email reflector?*

You can discuss the technical merits of using the technology included even if it is included within a potential Essential Patent Claim. You can discuss and compare the relative costs of technology claimed in potential Essential Patent Claims. You must not discuss subjects such as how a patent should be licensed, or essentiality, validity, or interpretation of a patent claim. These are not appropriate topics for discussion in a standards developing committee. Further information can be found in "*What You Need to Know About IEEE Standards and the Law*".

41. *Can someone submit a different Letter of Assurance for different Essential Patent Claims within the same standard?*

    Yes. A Submitter may submit separate Letters of Assurance providing different licensing positions for different potential Essential Patent Claims.

42. *If a person submits a Letter of Assurance but doesn't identify a specific Essential Patent Claim covered by the Letter of Assurance, are the assurances binding on all of the Essential Patent Claims owned by the Submitter's company?*

    Yes.

43. *Can a Submitter change the terms of the assurance it has given after it has been accepted by the IEEE? For example, what if the Submitter decided to lower the not-to-exceed price it would offer to license for an Essential Patent Claim?*

    A Letter of Assurance is irrevocable once submitted and accepted and shall apply, at a minimum, from the date of the standard's approval to the date of the standard's withdrawal. Thus, a Submitter cannot change the terms of the Letter of Assurance for a particular Essential Patent Claim once it is accepted. However, over time, a Submitter may provide multiple assurances for a given Essential Patent Claim by submitting multiple Letters of Assurance for such claim, each of which shall be binding on the Submitter. Each potential licensee may choose to invoke the terms of any applicable Letter of Assurance accepted by the IEEE. Thus, the Submitter desiring to lower the not-to-exceed price the Submitter would offer to license for an Essential Patent Claim can submit an additional Letter of Assurance with the revised not-to-exceed price and each potential licensee may choose to invoke the terms of either Letter of Assurance.

**Understanding Patent Issues During IEEE Standards Development**

### Blanket Letter of Assurance

44. *What is a "Blanket Letter of Assurance"?*

    A Blanket Letter of Assurance is a Letter of Assurance referencing a standard or project that
    applies to all Essential Patent Claims for which a Submitter may currently or in the future
    (except as otherwise provided for in the *IEEE-SA Standards Board Bylaws* and in the *IEEE-SA
    Standards Board Operations Manual*) have the ability to license. This is defined in clause 6.1
    of the IEEE-SA Standards Board Bylaws available at
    http://standards.ieee.org/develop/policies/bylaws/sect6-7.html#6.1.

45. *What happens if the Submitter submits a Blanket Letter of Assurance after previously offering
    a specific Letter of Assurance?*

    If a Submitter has signed and submitted a Letter of Assurance specifically identifying an
    Essential Patent Claim before or concurrently with signing and submitting a Blanket Letter of
    Assurance, the Blanket Letter of Assurance cannot be invoked as to the specified Patent
    Claim.

46. *Does a Blanket Letter of Assurance apply to Essential Patent Claims that my company
    acquires after submitting the Letter of Assurance?*

    Yes, unless the acquired entity or the prior holder of the acquired Essential Patent Claim has
    submitted a Letter of Assurance before the acquisition. Any Blanket Letter of Assurance
    submitted by the acquired entity or the prior holder of the acquired Essential Patent Claim
    before the acquisition shall continue to apply to acquired Essential Patent Claims covered by
    such assurance (but not to the acquirer's Essential Patent Claims). An acquiring party can ask
    a seller of an acquired Essential Patent Claim or an acquired entity to submit additional
    Letters of Assurance before closing of the acquisition.

### Implementation of new policy

47. *What is the effective date of the new patent policy?*

    The effective date of the new patent policy set forth in the *IEEE-SA Standards Board Bylaws*
    and *IEEE-SA Standards Board Operations Manual* is 1 May 2007.

48. *Will the new policy apply to existing standards development projects currently underway as
    well as new standards development projects?*

    As has long been the practice for all *IEEE-SA Standards Board Bylaws* and *IEEE-SA Standards
    Board Operations Manual* changes, changes to policy will go into effect for all Working Groups
    at the same time. This is usually 1 January of each year, but the IEEE-SA Board of Governors
    set the effective date of these changes to be 1 May 2007. Of course, any Letters of Assurance
    for a Standard/Project received before 1 May 2007 will be honored (i.e., there is no need for
    a Working Group Chair to request a Letter of Assurance on the new form from a holder of a
    potential Essential Patent Claim if the holder has already submitted an Accepted Letter of
    Assurance).

**Understanding Patent Issues During IEEE Standards Development**

49. *Can a participant provide a not-to-exceed license fee or rate commitment after 1 May 2007 for a Letter of Assurance that was submitted to the IEEE-SA prior to 1 May 2007?*

    Letters of Assurance are irrevocable once submitted and accepted. However, after 1 May 2007, a holder that has already submitted an Accepted Letter of Assurance may submit a subsequent letter on the new Letter of Assurance form if it wants to update the information on the previously submitted Letter of Assurance. In such a case, a potential licensee would have the right to invoke the terms of either Letter of Assurance. See also answer to question 43.

### Ballot resolution regarding Essential Patent Claims

50. *During ballot resolution, what should be the response to a comment regarding the lack of an LOA?*

    If an LOA has not been requested from the indicated holder of a potential Essential Patent Claim, the process for requesting an LOA should be followed (See 6.3.2 'Call for patents' in the IEEE-SA Standards Board Operations Manual).

    Further, the comment response should state that the IEEE is not responsible:

    - For identifying Essential Patent Claims for which a license may be required
    - For conducting inquiries into the legal validity or scope of Patent Claims

    (Taken from the subclause 6.3.1 'Public notice' of the IEEE-SA Standards Board Operations Manual)

    and that no discussions or other communications regarding the

    - Essentiality of patent claims
    - Interpretation of patent claims
    - Validity of patent claims

    shall occur during IEEE-SA working group standards-development meetings or other duly authorized IEEE-SA standards-development technical activities.

    (Note: This is not a complete list of the items for non-discussion. Adapted from 5.3.10.2 'Discussion of litigation, patents, and licensing' of the IEEE-SA Standards Board Operations Manual).