# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF
WASHINGTON AT SEATTLE**

| | |
|---|---|
| MOTOROLA MOBILITY, INC., and GENERAL INSTRUMENT CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> MICROSOFT CORPORATION, <br><br> Defendant. | The Honorable James L. Robart <br><br> Civil Action No. C11-00343-JLR <br><br> MICROSOFT CORPORATION'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES (NOS. 1-30) |

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant-Counterclaim Plaintiff Microsoft Corporation ("Microsoft"), by counsel, hereby responds to Plaintiff-Counterclaim Defendant Motorola Mobility, Inc. and General Instrument Corporation's ("General Instrument") (collectively, "Motorola") First Set of Interrogatories (Nos. 1-30) (the "Interrogatories") as follows:

**GENERAL STATEMENT AND OBJECTIONS**

The responses provided here are submitted on behalf of Microsoft, and reflect Microsoft's continuing investigations of facts and discovery of information and documents relating to the claims and defenses at issue in this litigation. Accordingly, Microsoft's responses to these Interrogatories are based only upon Microsoft's current knowledge and reasonable belief. Microsoft expressly reserves the right to modify and/or supplement any response, and to assert additional objections to these Interrogatories as necessary and/or appropriate.

Nothing in these responses shall be deemed an admission by Microsoft regarding the existence of any information, the relevance or admissibility of any information, for any purpose, or the truth or accuracy of any statement or characterization contained in any Interrogatory.

Where Microsoft responds by identifying individuals with knowledge concerning a particular subject matter identified in an Interrogatory, such response shall not be construed as an admission concerning the accuracy of Motorola's characterization of the subject matter.

Furthermore, Microsoft makes the following General Objections, whether or not separately set forth in each response, to each Instruction, Definition, and Interrogatory made in Motorola's First Set of Interrogatories:

1.     Microsoft objects to the Interrogatories to the extent they seek information or documents protected by any applicable privilege, including but not limited to the attorney-client privilege, the work product doctrine or immunity, joint-defense privilege, common interest privilege, and any other applicable privilege, immunity, or exemption from discovery as outlined in the Federal Rules of Civil Procedure and applicable law.  For the sake of clarity, Microsoft hereby asserts such privileges and/or exemptions.  Specifically, and without limiting the foregoing, information transmitted or exchanged by or between Microsoft and its counsel, or writings prepared and maintained internally by Microsoft's counsel that have not been disclosed to third parties, are not included in these responses.  No answer to any specific Interrogatory should be construed as a waiver of any applicable privilege, and any inadvertent disclosure or production of information and/or documents shall not be deemed a waiver of any privilege with respect to such information or documents or of any work product doctrine or immunity that may attach thereto.

2.     Microsoft objects to the Interrogatories on the grounds that Motorola, without leave of Court, has exceeded the number of interrogatories allowed pursuant to the Federal Rules of Civil procedure.

3.     Microsoft objects to the Interrogatories to the extent they seek information or documents that are not relevant to the subject matter of this litigation, are not reasonably calculated to lead to the discovery of admissible evidence, or are otherwise beyond the scope of relevant discovery.

4.     Microsoft objects to the "Definitions" and "Instructions" contained in the Requests to the extent they exceed the scope of permissible discovery under the Federal Rules of Civil Procedure and the local rules of the United States District Court of the Western District of Washington.

5.     Microsoft objects to the Interrogatories to the extent they are duplicative of and cumulative of other discovery propounded in this action by Motorola.  Service of duplicative requests squanders the parties' time and resources and creates an undue burden on Microsoft in preparing responses.

6.     Microsoft objects to the Interrogatories as overly burdensome to the extent Motorola has requested Microsoft to identify information subject to the attorney-client privilege and/or the attorney work product doctrine, including but not limited to those documents that were created from the time of any pre-suit investigation related to any litigation against Motorola (or any of its affiliated entities) through the entire litigation itself, including any and all privileged information and/or documents created after the filing of this litigation.

7.     Microsoft objects to the Interrogatories to the extent they call for disclosure of information that is not ascertainable by means of a reasonably diligent search, including without limitation information that is not maintained by Microsoft in the normal course of business or that is no longer maintained by Microsoft.

8.      Microsoft objects to the Definitions, Instructions, and Interrogatories to the extent they seek information or the identification of information not within Microsoft's possession, custody, or control, or refer to persons, entities, or events not known to Microsoft, on the grounds that such Definitions, Instructions, and Interrogatories: (1) seek to require more of Microsoft than any obligation imposed by law; (2) subject Microsoft to unreasonable and undue burden and expense; and (3) seek to impose upon Microsoft an obligation to investigate or discover information or materials from third parties or sources that are equally accessible to Motorola and/or equally obtainable from more convenient sources.

9.      Microsoft objects to the Interrogatories to the extent they seek confidential or proprietary information pertaining to Microsoft's business, trade secrets, and/or economic relationships, and/or to the extent they seek other confidential information impacting the privacy rights of individuals.  Microsoft will only produce such information subject to the terms of a Protective Order once such an order has been issued.

10.     Microsoft's agreement to produce any category of information or documents is not a representation that any such documents or information in that category actually exist in Microsoft's possession, custody, or control, can be located through a reasonable search, or that such documents or information are relevant.

11.     Microsoft objects to Motorola's definition of the terms "Microsoft," "Microsoft Corporation," "Defendant," "you," and "your," to the extent that the terms are used to include entities that are not parties to this action or that Microsoft does not control.  Where these terms are used, Microsoft will provide only information that reasonably can be identified as responsive to the Interrogatories that is in Microsoft's possession, custody, or control.

12.     Microsoft objects to the Interrogatories to the extent they seek identification of "all," "every," or "any" information that refers or relates to a particular subject on the grounds of over breadth, undue burden and expense.  Microsoft has made a reasonable search for information relevant to the subject matter of the Interrogatories.  If any additional, non-privileged, non-immune, relevant, and responsive information is discovered in the course of any further or continuing searches, it will be identified and/or produced in accordance with the Federal Rules of Civil Procedure.

13.     Microsoft objects to Motorola's definition of the term "Electronically stored information" to the extent it seeks discovery of information from sources that are not reasonably accessible in light of the burdens or costs required to locate, restore, review, and produce whatever responsive information may be found.  Microsoft has attempted to identify below all known difficult-to-access sources that may contain responsive information, but it is not able to retrieve the information – or even to confirm with certainty whether any responsive information in fact exists on the sources – without incurring substantial burden or cost.  More easily accessed sources – such as active servers, hard drives, and other direct access storage media containing active data and records that are responsive to Motorola's Interrogatories – are likely to yield all the information that is reasonably useful for this action.  Further, production of information from some of the listed inaccessible sources may also be unreasonably cumulative and duplicative because information that might be obtained is also obtainable, to the extent it exists, from other sources that are more convenient, less burdensome, or less expensive.  The sources that may contain potentially responsive information, which Microsoft is neither searching nor producing because they are not reasonably accessible, fall under the categories set out below.  Microsoft has attempted to provide as much detail as is reasonably possible regarding these sources in an

effort to enable Motorola to intelligently evaluate the burdens and costs of providing discovery from these sources and the likelihood of finding responsive and relevant information on the identified sources.

Centrally Managed Exchange Email Servers: Microsoft's Exchange Servers are used by employees for their email.  Exchange Servers are replicated for disaster recovery and business continuity purposes only.  Exchange mailbox data is replicated across multiple servers after which time the replicated data is recycled within 30 days.  Microsoft has not suspended the replication rotation of this disaster recovery and business continuity process because the vast majority of data on the disaster recovery systems is an additional copy of data more readily available on the active systems.  Microsoft is not searching or producing documents from these disaster recovery media.

Centrally Managed File Servers: Prior to 2008, file servers located in the Microsoft IT managed datacenters, as well as certain servers located outside of the datacenters but whose backup services were managed by Microsoft IT, were backed up in full on a weekly basis with daily differential backups.  Weekly tapes were maintained for 21 days; monthly tapes were kept for 90 days.  After 90 days, the tapes were recycled.  From 2008 to present, each protected resource (e.g. data volume, file share, etc.) receives a recovery point each day.  File servers are retained on disk for 28 days, with only a monthly backup tape created and retained for 90 days. After 90 days, the tapes are recycled.  Microsoft has not suspended the backup rotation of this disaster recovery system.  Microsoft is not searching or producing electronically stored information from this disaster recovery media.

Other File Servers Located Outside the Microsoft IT Datacenters:  In addition to its significant centralized information systems managed by Microsoft's IT group, Microsoft

business units maintain many other, decentralized information systems that are used by different business units and functional groups as required by the business needs of such units and groups, often for software development and testing.  The business units and functional groups may call on Microsoft IT to perform their disaster recovery services, or they may provide their own disaster recovery services.  Each decentralized group establishes and manages its own disaster recovery process, and such processes may vary from group to group.  Many of these groups follow the same protocol for file server backups as followed by Microsoft's IT group.  Microsoft has not suspended the backup rotation of the disaster recovery systems used for these decentralized information systems.  Microsoft is not searching or producing electronically stored information from these disaster recovery media.  At this juncture, investigation as to the existence of any relevant and reasonably accessible information is conducted on a case-by-case basis and predicated on its investigation thus far, Microsoft has no reason to believe that any such data exists for this case.

Obsolete Backup Media:  As with many large organizations, Microsoft's disaster recovery policies have evolved with changing technology and business needs over time.  As to some of the file servers currently or historically managed by Microsoft's centralized IT group, obsolete backup media may exist.  Such media is not used for disaster recovery, nor is it used for any business purpose.  For a majority of the obsolete media, Microsoft has no record of what data was written to an individual tape or reel due to the loss or retirement of obsolete tape databases, and the labels on the individual housings of the tapes and reels, or on the bins, are not informative as to content.  When inventory or labeling information is available it is usually limited to include some of the following data points:  the name of the server, the media type, an ID or tracking number for the media, the date of the creation of the media, and the drives backed

up.  Microsoft has no records identifying the business units or individuals who stored documents on a particular server, and therefore has no record of whose or what documents might be stored on any of the obsolete tapes.  In many instances, the drives needed to restore obsolete media are no longer available at Microsoft, and may not be available commercially or otherwise.  The cost and burden of restoring these obsolete media would be excessive, even assuming that the hardware, software, and trained staff to restore the media could be located.  Microsoft is not searching or producing documents from this obsolete media.

Legacy Systems: Microsoft was incorporated in 1981 and began operations a few years before that.  As of March 2010, Microsoft had over 88,000 employees working in over 650 buildings located in 41 states in the United States and over 100 countries around the world.  Over the years Microsoft has replaced, changed, and/or upgraded the hardware and software used by individual employees and for its shared information systems.  As such, it is possible that legacy data remaining from obsolete systems is located in various storage media which may be incompatible with and unintelligible on the successor systems.  To the extent such legacy data exists, it is possible that current employees are not aware of its existence or location.  Microsoft is not searching its legacy systems because it believes they are not reasonably accessible because of undue burden or cost.

Sources Requiring Computer Forensics to Access:  Microsoft is not searching or producing information from any source that is capable of being accessed or viewed only through forensic or other extraordinary means.  Many of these data types are created by the operating system or an application to assist in memory management or enhance the efficient functioning of the application or operating system.  Operating systems and applications generally create and overwrite such data without the intent or specific knowledge of users.  Although it is not possible

to provide all the particulars of the information that might be mined through such extraordinary processes without actually performing them, examples of the types of materials that, in general, may be forensically retrieved include the following:  (1) Residual, Latent or Ambient Data - Residual data, which is sometimes also called "latent" data or "ambient" data, refers to data that is not active on a computer system which is inaccessible without specialized forensic tools and techniques.  "Until overwritten, these data reside on media such as a hard drive in unused space and other areas available for data storage."  The Sedona Conference Glossary (May 2005), p. 26 (*Latent Data*).  This category includes "data that is not active on a computer system, including data found on media free space; data found in file slack space; and data within files that has functionally been deleted in that it is not visible using the application with which the file was created, without use of un-delete or special data recovery techniques.  May contain copies of deleted files, Internet files and file fragments."  The Sedona Conference Glossary (May 2005), p. 37 (*Residual Data*).  Residual, latent, or ambient data may also include such items as fragments of instant messaging chats that were not saved by the chat participants but that the operating system placed temporarily on the hard drive for memory management purposes without the knowledge of the user.  (2) Temporary Files - These are "files stored on a computer for temporary use only, and are often created by Internet browsers.  These temp files store information about Web sites that a user has visited, and allow for more rapid display of the Web page when the user revisits the site.  Forensic techniques can be used to track the history of a computer's Internet usage through the examination of these temporary files.  Temp files are also created by common office applications, such as word processing or spreadsheet applications."  The Sedona Conference Glossary (May 2005), p. 42.  (3) Cached Storage - Cache is "a dedicated, high speed storage location which can be used for the temporary storage of frequently

used data.  As data may be retrieved more quickly from cache than the original storage location, cache allows applications to run more quickly.  Web site contents often reside in cached storage locations on a hard drive."  The Sedona Conference Glossary (May 2005), p. 6.  (4) Swap Files or Page Files - A swap file is a "file used to temporarily store code and data for programs that are currently running.  This information is left in the swap file after the programs are terminated, and may be retrieved using forensic techniques.  Also referred to as a page file or paging file."  The Sedona Conference Glossary (May 2005), p. 41.

Databases:  To the extent Motorola's Interrogatories seek different data or data in configurations different from those for which such databases are configured, Microsoft is not searching or attempting to produce information from such databases because it believes they are not reasonably accessible because of undue burden or cost.

Source Code not Stored in Microsoft's Central Source Repositories: Microsoft objects to Motorola's Interrogatories to the extent they seek the production of all source code for a particular product.  Source code for a large software product often contains tens of millions of lines of code that hundreds or even thousands of individuals in different parts of the company have helped create over a number of years.  Microsoft manages the process using a database tool called Source Depot, also called the "source tree."  At any one time, the Source Depot for a product or major part contains the most current version of the source code for that product as well as source code relating to various past versions.  Collecting source code from the Source Depot is relatively straightforward.  However, not all source code for a product or major part is stored in its source tree.  For example, Microsoft Office contains parts built by groups within Microsoft outside the Office group (e.g., the division that creates tools used by software developers) and by third-party vendors.  The source code for such "partner parts" is created and

stored by the partner group elsewhere in Microsoft or by the third-party vendor, which provides only already-compiled binary code – not source code – to the Office source tree.  The process to identify, locate, and collect all of the source code not stored in a product's source tree is extraordinarily difficult, time-consuming, and not always fruitful.  There is no single comprehensive list of all the source code for the parts that were contributed by partner groups.  This is because, in the ordinary course of business, and after a product is released, Microsoft has no need to identify or collect all the source code for it.  When a product such as Office is released, the source code in the source tree is "compiled" into "binary" (i.e., a series of zeros and ones, a/k/a "object code") code and combined with binary code provided by any partner groups to "build" the version that is released to licensees.  Thereafter, it may be necessary to locate certain portions of source code used to build the product in order to fix bugs, but the full set of source code is not needed.  In order to be certain that it has assembled the complete set of source code for a product released several years ago, Microsoft would have to work backward from the final product.  This would require first determining which binary code in the final product is or is not associated with what versions and parts of source code in the (more readily accessible) source tree.  Then, Microsoft developers would need to figure out which partner group produced that binary code, and then attempt to obtain the code from that group.  Many developers in these groups will have changed jobs, moved to other groups within Microsoft, or may have left the company, and may no longer be able to provide that group's portion of source code.

Other Sources that Are Not Reasonably Accessible:  In addition, it is possible that Microsoft's information systems may retain information on other sources that are accessible only by incurring substantial burdens or costs.  Microsoft's identification of sources that are not reasonably accessible is based upon information currently known.  Microsoft reserves the right to

11

supplement its response as additional information about other potentially responsive information from other sources that are not reasonably accessible becomes known.

14.     To the extent applicable, and as set forth in more detail in its responses to the individual requests Microsoft is producing electronically stored information that is responsive, not privileged, and reasonably accessible.  Microsoft believes that Motorola should review and evaluate the information from such sources before requesting that Microsoft search for and produce information contained on sources that are not reasonably accessible.  If, after such review and evaluation, Motorola continues to seek discovery of information from sources that have been identified as not reasonably accessible, Microsoft requests that the parties schedule a meet and confer to discuss, among other things, the particular type(s) of information sought by Motorola and its relevance to the parties' respective claims and defenses, the burdens and costs of accessing, retrieving and reviewing such information, the needs that may establish "good cause" for requiring all or part of the requested discovery notwithstanding its inaccessibility, and conditions on obtaining and producing the information that may be appropriate, including whether Motorola is willing to pay the costs associated with such discovery.

15.     Microsoft objects to Motorola's definition of the term "Accused Microsoft Products" on the grounds that it is overbroad, unduly burdensome, vague, and not reasonably calculated to lead to the discovery of admissible evidence.  Microsoft objects to the definition of "Accused Microsoft Products" to the extent it includes products not accused of infringement in this litigation and will interpret this term to mean Windows 7 and Internet Explorer 9.

16.     Microsoft objects to Motorola's definition of the term "Standards" on the grounds that to the extent it includes industry standards relating to technology that is not at issue in this litigation, it is overbroad unduly burdensome, vague and not reasonably calculated to lead to the

discovery of admissible evidence. Microsoft will interpret "Standards" to include only the H.264 Standard and the 802.11 Standard.

17.     Microsoft objects to Motorola's definition of the term "SDO" on the grounds that to the extent it includes organizations or associations that develop standards not at issue in this litigation, it is overbroad unduly burdensome, vague and not reasonably calculated to lead to the discovery of admissible evidence. Microsoft will interpret "SDO" to include only ITU, ISO, and IEC with respect to the H.264 Standard, and only the IEEE Standards Association with respect to the 802.11 Standard.

18.     Microsoft objects to Motorola's definition of the term "Concurrent Litigation" as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent the term encompasses litigation that has no relation to the asserted patent and accused technology in this litigation.

19.     Microsoft objects to Motorola's definition of the term "Technical Documentation" on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, inherently subjective, and not reasonably calculated to lead to the discovery of admissible evidence.

20.     Microsoft objects to Motorola's definition of the term "Concerning" as being vague and ambiguous, and inherently subjective. Microsoft further objects to this definition as overly broad and unduly burdensome. Microsoft will respond in accordance with its obligations under the Federal Rules of Civil Procedure and local rules of this Court.

21.     Microsoft objects to Motorola's definition of the terms "Document" and "documents" as vague, overly broad, and unduly burdensome, especially insofar as the term is not limited to items within Microsoft's possession, custody, and/or control, or requires

information protected by the attorney-client privilege, work product doctrine, or other applicable protection.  Microsoft will respond in accordance with its obligations under the Federal Rules of Civil Procedure and the local rules of this Court.

22.     Microsoft objects to Motorola's definition of the term "Person" as vague, overly broad and unduly burdensome.  Microsoft will respond in accordance with its obligations under the Federal Rules of Civil Procedure and the local rules of this Court.

23.     Microsoft objects to Motorola's definition of the term "Communication" as vague, ambiguous, overly broad, unduly burdensome, and inherently subjective.  Microsoft will respond in accordance with its obligation under the Federal Rules of Civil Procedure and the local rules of this Court.

24.     Microsoft objects to Motorola's definition of the term "Identify" or "identity" as vague, ambiguous, overly broad, unduly burdensome, and inherently subjective.  Microsoft will respond in accordance with its obligations under the Federal Rules of Civil Procedure and the local rules of this Court.

25.     Microsoft reserves the right to make any use of, or to introduce at any hearing and at trial, information and/or documents responsive to the Interrogatories but discovered subsequent to the date of its response, including, but not limited to, any such information or documents obtained in discovery herein.

26.     The following responses are given without prejudice to Microsoft's right to produce or rely on subsequently discovered information, facts or documents.  Microsoft accordingly reserves the right to amend the responses herein and/or produce or rely on subsequently discovered documents as additional facts are ascertained, analysis is made, legal research is completed, and contentions are made.  The responses herein are made in a good faith

effort to comply with the Federal Rules of Civil Procedure and to supply such responsive

information as it exists and is presently within Microsoft's possession, custody or control, but are

in no way to be deemed to be to the prejudice of Microsoft in relation to further discovery,

research, and/or analysis.

27.    Microsoft incorporates by reference each of the general and specific objections set

forth in Microsoft Corporation's Objections and Responses to Plaintiff Motorola Mobility, Inc.'s

First Set of Requests for Production of Documents and Things.

28.    Microsoft incorporates by reference the General Objections set forth above into

the specific objections and responses set forth below.  Microsoft may repeat General Objections

for emphasis or some other reason.  The failure to repeat any General Objections, or failure to

specifically incorporate a General Objection by reference, does not waive any General Objection

to the Interrogatory.  Moreover, Microsoft does not waive its rights to amend its objections.

## SPECIFIC OBJECTIONS AND RESPONSES

Subject to the foregoing General Statements, General Objections, and reservation of

rights, as well as the specific objections set forth below, Microsoft responds to Plaintiff-

Counterclaim Defendants' First Set of Interrogatories as follows:

## INTERROGATORY NO. 1

For each of the Accused Microsoft Products, and for each claim of each of the Asserted
Patents that Microsoft contends is not infringed by each Accused Microsoft Product, state the
basis for the contention of non-infringement (including, without limitation, an identification of
each claim limitation that you contend is not met by the product and an explanation of why you
contend the doctrine of equivalents does not apply to that claim limitation), identify all facts,
information, and documents that Microsoft asserts support or are pertinent to its contention of
non-infringement, and identify the person or persons most knowledgeable about such
contentions and bases.

## RESPONSE TO INTERROGATORY NO. 1:

In addition to and without limiting the foregoing General Objections, which are

incorporated by reference as though fully set forth herein, Microsoft objects to this Interrogatory to the extent that it seeks the disclosure of information protected by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity against disclosure.  Microsoft further objects to this Interrogatory as vague and ambiguous, as it is impossible for Microsoft to quantify which person(s) are "most knowledgeable" concerning the specific topics.  Microsoft objects to this Interrogatory to the extent that it constitutes multiple interrogatories and causes Motorola to exceed the number of interrogatories permitted under the Federal Rules.  Microsoft further objects to this Interrogatory to the extent that it attempts to shift the burden of proof on the issue of infringement from Motorola to Microsoft.  Microsoft objects to this Interrogatory as premature to the extent that it calls for expert opinions and legal conclusions.  Microsoft further objects to this Interrogatory as premature on the grounds that Motorola has not yet identified which claims it asserts are infringed by Microsoft and Motorola has not yet disclosed its infringement contentions.  Moreover, the Court has not yet construed the claims.  Until Microsoft receives necessary discovery from Motorola, this Interrogatory is, and will continue to be, premature.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Microsoft will provide information in response to this Interrogatory in accordance with the schedule for infringement and invalidity contentions.  Microsoft reserves the right to supplement its response to this Interrogatory as discovery continues.

## INTERROGATORY NO. 2

Separately for each of the Accused Microsoft Products, if Microsoft contends that it does not indirectly infringe any of the Asserted Claims of the Asserted Patents through induced infringement, please provide the full legal and factual bases for Microsoft's contention(s) and the identity of the person(s) most knowledgeable concerning the facts underlying each such contention.

**RESPONSE TO INTERROGATORY NO. 2**:

In addition to and without limiting the foregoing General Objections, which are incorporated by reference as though fully set forth herein, Microsoft objects to this Interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity against disclosure.  Microsoft further objects to this Interrogatory as vague and ambiguous, as it is impossible for Microsoft to quantify which person(s) are "most knowledgeable" concerning the specified topics.  Microsoft objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information related to each release and/or version of each of the Accused Products and is unlimited in temporal scope or otherwise.  Microsoft further objects to this Interrogatory to the extent that it constitutes multiple interrogatories and causes Motorola to exceed the number of interrogatories permitted under the Federal Rules.  Microsoft objects to this Interrogatory to the extent it attempts to shift the burden of proof on the issue of infringement from Motorola to Microsoft.  Microsoft further objects to this Interrogatory as premature to the extent that it calls for expert opinions and legal conclusions.  Microsoft objects to this Interrogatory as premature on the grounds that Motorola has not yet identified which claims it asserts are infringed by Microsoft and Motorola has not yet disclosed its infringement contentions.  Moreover, the Court has not yet construed the claims.  Until Microsoft receives necessary discovery from Motorola, this Interrogatory is, and will continue to be, premature.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Microsoft will provide information in response to this Interrogatory in accordance with the schedule for infringement and invalidity contentions.  Microsoft reserves the right to supplement its response to this Interrogatory as discovery continues.

## INTERROGATORY NO. 3

Separately for each of the Accused Microsoft Products, if Microsoft contends that it does not indirectly infringe any of the Asserted Claims of the Asserted Patents through contributory infringement, please provide the full legal and factual bases for Microsoft's contention(s), including whether and why Microsoft contends that the product is (a) not especially made or especially adapted for use in an infringement of such patent; (b) a staple article or commodity of commerce suitable for substantial noninfringing uses, and the identity of the person(s) most knowledgeable concerning the facts underlying each such contention.

## RESPONSE TO INTERROGATORY NO. 3:

In addition to and without limiting the foregoing General Objections, which are incorporated by reference as though fully set forth herein, Microsoft objects to this Interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity against disclosure. Microsoft further objects to this Interrogatory as vague and ambiguous, as it is impossible for Microsoft to quantify which person(s) are "most knowledgeable" concerning the specified topic. Microsoft objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information related to each release and/or version of each of the Accused Products and is unlimited in temporal scope or otherwise. Microsoft further objects to this Interrogatory to the extent that it constitutes multiple interrogatories and causes Motorola to exceed the number of interrogatories permitted under the Federal Rules. Microsoft objects to this Interrogatory to the extent it attempts to shift the burden of proof on the issue of infringement from Motorola to Microsoft. Microsoft further objects to this Interrogatory as premature to the extent that it calls for expert opinions and legal conclusions. Microsoft objects to this Interrogatory as premature on the grounds that Motorola has not yet identified which claims it asserts are infringed by Microsoft and Motorola has not yet disclosed its infringement contentions. Moreover, the Court has not yet construed the claims. Until Microsoft receives necessary discovery from Motorola, this Interrogatory is, and will continue to be, premature.

18

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Microsoft will provide information in response to this Interrogatory in accordance with the schedule for infringement and invalidity contentions.  Microsoft reserves the right to supplement its response to this Interrogatory as discovery continues.

## INTERROGATORY NO. 4

Separately for each claim, if any, of the Asserted Claims of the Asserted Patents that Microsoft contends is invalid under 35 U.S.C. §§ 101, 112, 113, or 133, or on any other basis, please describe in detail:

(a)     all factual and legal bases for Microsoft's contention that the claim is invalid;

(b)     the identity of all documents tending to support or refute each such contention; and

(c)     the identity of the person(s) most knowledgeable concerning the facts underlying each such contention.

## RESPONSE TO INTERROGATORY NO. 4:

In addition to and without limiting the foregoing General Objections, which are incorporated by reference as though fully set forth herein, Microsoft objects to this Interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity against disclosure.  Microsoft further objects to this Interrogatory as vague and ambiguous, as it is impossible for Microsoft to quantify which person(s) are "most knowledgeable" concerning the specified topic.   Microsoft objects to this Interrogatory on the grounds that, to the extent it calls for Microsoft to describe "all factual and legal bases," it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Microsoft further objects to this Interrogatory to the extent that it constitutes multiple interrogatories and causes Motorola to exceed the number of interrogatories permitted under the Federal Rules.  Microsoft objects to

19

this Interrogatory to the extent that it calls for expert opinions and legal conclusions.  Microsoft further objects to this Interrogatory as premature on the grounds that Motorola has not yet identified which claims it asserts are infringed by Microsoft, and Motorola has not yet disclosed its infringement contentions.  Moreover, the Court has not yet construed the claims.  Until Microsoft receives necessary discovery from Motorola, this Interrogatory is, and will continue to be, premature.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Microsoft responds as follows:  the asserted claims of the of the patents-in-suit are invalid because they each fail to comply with the requirements of 35 U.S.C. §§ 101, 102, 103, 112, 113, and 133 thereof, or the Rules and Regulations of the Patent & Trademark Office relating thereto.  With respect to each of the Asserted Patents, Microsoft provides below an identification of bases that support Microsoft's contention that the Asserted Patents are invalid. The bases provided herein are preliminary and should not be construed as limiting in any way the invalidity defenses that Microsoft may present in this litigation.  Microsoft reserves the right to supplement its response to this Interrogatory as discovery continues.

The '374 Patent:        The '374 Patent is invalid by reason of having been issued in violation of the U.S. patent laws, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, 113, and/or 133 thereof, or the Rules and Regulations of the Patent and Trademark Office relating thereto.  For instance, the claims of the '374 Patent do not represent a patentable advance over the prior art, and accordingly are anticipated by and/or obvious, taken alone or in combination, in view of the following references:

**PATENTS**

| Reference No. | Patent No. | Date | Patentee |
|---|---|---|---|
| 1 | 5,953,457 | 07/03/1997 | Tucker et al |

| Reference No. | Patent No. | Date | Patentee |
|---|---|---|---|
| 2 | 6,005,980 | 07/21/1997 | Eifrig et al |
| 3 | 6,229,854 | 08/10/2000 | Kikuchi et al |
| 4 | 6,381,275 | 12/04/1996 | Fukuhara et al |
| 5 | 7,266,150 | 06/28/2002 | Demos |
| 6 | 7,446,774 | 08/18/2000 | MacInnis et al |
| 7 | US2001/0043792 | 03/06/2000 | Mishima et al |
| 8 | US2003/0043916 | 09/05/2001 | Zhong et al |
| 9 | US2003/0053537 | 03/05/2002 | Kim et al |
| 10 | 5,227,878 | 11/15/1991 | Puri et al |
| 11 | 5,485,279 | 07/02/1993 | Yonemitsu et al |
| 12 | 5,886,742 | 01/14/1998 | Hibi et al |
| 13 | 6,647,061 | 06/09/2000 | Panusopone et al |
| 14 | US2002/0064228 | 04/02/1999 | Sethuraman et al |
| 15 | US2002/0126757 | 12/26/2000 | Kim et al |
| 16 | US2002/0136297 | 12/14/1998 | Shimada et al |
| 17 | US2002/0150160 | 12/11/2001 | Liu et al |
| 18 | US2002/0168007 | 04/19/2001 | Lee |
| 19 | US2003/0112864 | 06/19/2003 | Karczewicz et al |
| 20 | 5,682,204 | 12/26/1995 | Uz et al |
| 21 | 5,974,184 | 10/24/1997 | Eifrig et al |
| 22 | 5,991,447 | 10/06/1997 | Eifrig et al |
| 23 | WO 1997016016 | 05/01/1997 | Brailean et al |
| 24 | WO 1997043861 | 11/20/1997 | Kim et al |
| 25 | 6,026,195 | 04/28/1999 | Eifrig et al |
| 26 | 6,275,533 | 06/18/1998 | Nishi |
| 27 | US2002/0118759 | 09/07/2001 | Enficiaud et al |
| 28 | EP 863673 | 09/09/1998 | Eifrig et al |
| 29 | EP 895424 | 10/31/2007 | Takaoka et al |
| 30 | EP 917363 | 05/19/1999 | Zuccaro et al |
| 31 | EP 940774 | 09/08/1999 | Kadono et al |
| 32 | GB 2316826 | 08/28/1997 | Yoneyama et al |
| 33 | JP 63133780 | | |
| 34 | JP 5095545 | | |
| 35 | JP 6070302 | | |
| 36 | JP 8126009 | | |
| 37 | JP 11215501 | | |
| 38 | KR 2001069016 | 07/23/2001 | |
| 39 | 5,091,782 | 04/09/1990 | Krause et al |

21

| Reference No. | Patent No. | Date | Patentee |
|---|---|---|---|
| 40 | 5,434,622 | 09/08/1993 | Lim |
| 41 | 5,510,840 | 05/15/1995 | Yonemitsu et al |
| 42 | 5,701,164 | 12/19/1996 | Kato |
| 43 | 5,737,020 | 12/07/1997 | Hall et al |
| 44 | 5,777,680 | 06/27/1996 | Kim |
| 45 | 5,878,166 | 12/26/1995 | Legall |
| 46 | 6,160,849 | 05/30/1995 | Igarashi et al |

## NON-PATENT LITERATURE AND REFERENCES

| Reference No. | Publication | Title | Author(s) | Date |
|---|---|---|---|---|
| 1 | | MPEG-2 Part 2, ITU-T Recommendation H.262/ISO/IEC 13818-2 | | |
| 2 | IEEE Transactions on Circuits and Systems for Video Technology, 9(8) | MPEG-4 Standardized Methods for the Compression of Arbitrarily Shaped Video Object | Brady | 12/1999 |
| 3 | In Proc. Of International Symposium on Multimedia Information Processing | Optimizing INTRA/INTER Coding Mode Decisions | Chen et al. | 12/1997 |
| 4 | IEEE Transactions on Circuits and Systems for Video Technology, 10(5) | Coding Tools in MPEG-4 for Interlaced Video | Panusopone | 08/2000 |
| 5 | | Macroblock-Based Progressive Fine Granularity Scalable Video Coding | Sun et al. | 08/2001 |
| 6 | In the Proceedings of ICIP '95, Oct. 23-26, 1995, Washington, D.C., U.S.A. | Efficient Mode Selection for Block-Based Motion Compensated Video Coding | Wiegand et al. | 1995 |

| Reference No. | Publication | Title | Author(s) | Date |
|---|---|---|---|---|
| 7 | | Block-based Hybrid Video Coding Using Motion-Compensated Long-Term Memory Prediction | Wiegand et al. | 09/1997 |
| 8 | Proceedings of the SPIE – The international Society for Optical Engineering | Preprocessing with Motion Information from MPEG Encoder | Wong | 1996 |
| 9 | Signal Processing: Image Communication | MPEG-4 Natural Video Coding - An overview (Scientific Paper) | Touradj Ebrahimi et al. | 2000 |
| 10 | IBM TDB | Adaptive Refresh of Compressed Image Sequences | Feig et al. | 07/1992 |
| 11 | Technical Report | Extraction of Motion Vectors from an MPEG Stream | Gilvarry | 1999 |
| 12 | IEEE | Interframe Video Coding Using Overlapped Motion Compensation and Perfect Reconstruction Filter Banks | Jozawa et al. | 1992 |
| 13 | Springer-Verlag Berlin Heidelberg | Video Encryption Based on Data Partitioning and Scalable Coding – A Comparison | Kunkelmann et al. | 1998 |
| 14 | IEEE International Conferences in Multimedia and Expo, ICME 2000 Proceedings (Inspec) | Compression with Mosaic Prediction for Image-Based Rendering Applications | Leung et al. | 2000 |
| 15 | Mobile Networks and Applications 3 | MPEG-4: An Object-Based Multimedia Coding Standard Supporting Mobile Applications | Puri et al. | 1998 |

23

| Reference No. | Publication | Title | Author(s) | Date |
|---|---|---|---|---|
| 16 | IEEE Signal Processing Magazine | Error Resilient Video Coding Techniques-Real-time Video Communications over Unreliable Networks | Wang et al. | 07/2000 |
| 17 | BT Technol J, 14(4) | Video Coding – Techniques, Standards and Applications | Whybray et al. | 10/1997 |
| 18 | IEEE | Coding of an Arbitrarily Shaped Interlaced Video in MPEG-4 | Chen et al. | 1999 |
| 19 | | Multimedia Communications: Coding, Systems, and Networking-MPEG-2 Video | Chen | 06/2005 |
| 20 | International Organisation for Standardisation Organisation Internationale De normalisation | Generic Coding of Moving Pictures and Associated Audio | International Organisation for Standardisation Organisation Internationale De normalisation | 03/1994 |
| 21 | IEEE Transactions on Consumer Electronics, 45(1) | An Area Efficient DCT Architecture for MPEG-2 Video Encoder | Kim et al. | 02/1999 |
| 22 | ACM  Multimedia | A Fast MPEG Video Encryption Algorithm | Changgui Shi et al. | 1998 |
| 23 | Signal Processing for Multimedia | Digital Video Coding Standards and Their Role in Video Communications | Sikora | 06/2005 |
| 24 | BT Technol J, 14(4) | Video Coding-Techniques, Standards and Applications | Whybray et al. | 1997 |
| 25 | Proceedings of the SPIE | MPEG-2 Video Coding with an Adaptive Selection of Scanning Path and Picture Structure | Zhou et al. | 10/1996 |

| Reference No. | Publication | Title | Author(s) | Date |
|---|---|---|---|---|
| 26 | Joint Video Team (JVT) of ISO/IEC MPEG & ITU-T VCEG (ISO/IEC JTC1/SC29/WG11 and ITU-T SG16 Q.6) 2nd Meeting: Geneva, CH, Jan. 29 - Feb. 1, 2002 | Core Experiment on Macroblock Adaptive Frame/Field Encoding | Borgwardt | 04/03/2002 |
| 27 | | Fixed and Adaptive Predictors for Hybrid Predictive/Transform Coding | Ericcson | 1995 |
| 28 | | Macroblock Adaptive Frame/Field Coding for Interlace Sequences | Gandhi et al. | 07/2002 |
| 29 | | Digital Video: An Introduction to MPEG-2 | Haskell et al. | 1997 |
| 30 | VCEG-N76, Video Coding Experts Group (VCEG) of ITU-T (SG16 Q.6) Santa Barbara Meeting, 24-27 September 2001 | Adaptive Field/Frame Block Coding Experiment Proposal | Itu-Adv-Video | 09/26/2001 |
| 31 | IEEE Transactions on Circuits and Systems for Video Technology, 8(6) | Fast Overlapped Block Motion Compensation with Checkerboard Block Partitioning | Kuo et al. | 10/1998 |
| 32 | IEEE | Very Low Bit Rate Foveated Video Coding For H.263 | Lee et al. | 1999 |
| 33 | Signal Processing: Image Communication, 5:39-58 | Adaptive Frame/Field Motion Compensated Video Coding | Puri et al. | 1993 |
| 34 | IEEE | A Fast Suboptimal Approach to Error Concealment in Encoded Video Streams | Salama et al. | 1997 |
| 35 | Proceedings of the IEEE, 83(6) | Digital Video Coding Standards and Their Role in Video Communications | Schafer et al. | 1995 |

| Reference No. | Publication | Title | Author(s) | Date |
|---|---|---|---|---|
| 36 | ACM Multimedia | A Fast MPEG Video Encryption Algorithm | Shi et al. | 1998 |
| 37 | IEEE Transactions on Consumer Electronics, 43(3) | Error Concealment based in Directional Interpolation | Suh et al. | 08/1997 |
| 38 | IEEE Transactions on Circuits and Systems for Video Technology, 10(4) | A Cell-Loss Concealment Technique for MPEG-2 Coded Video | Zhang et al. | 06/2000 |

The '375 Patent:        The '375 Patent is invalid by reason of having been issued in violation of the U.S. patent laws, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, 113, and/or 133 thereof, or the Rules and Regulations of the Patent and Trademark Office relating thereto.  For instance, the claims of the '375 Patent do not represent a patentable advance over the prior art, and accordingly are anticipated by and/or obvious, taken alone or in combination, in view of the following references:

**PATENTS**

| Reference No. | Patent No. | Date | Patentee |
|---|---|---|---|
| 1 | 5,953,457 | 07/03/1997 | Tucker et al |
| 2 | 6,005,980 | 07/21/1997 | Eifrig et al |
| 3 | 6,229,854 | 08/10/2000 | Kikuchi et al |
| 4 | 6,381,275 | 12/04/1996 | Fukuhara et al |
| 5 | 7,266,150 | 06/28/2002 | Demos |
| 6 | 7,446,774 | 08/18/2000 | MacInnis et al |
| 7 | US2001/0043792 | 03/06/2000 | Mishima et al |
| 8 | US2003/0043916 | 09/05/2001 | Zhong et al |
| 9 | US2003/0053537 | 03/05/2002 | Kim et al |
| 10 | 5,227,878 | 11/15/1991 | Puri et al |
| 11 | 5,485,279 | 07/02/1993 | Yonemitsu et al |
| 12 | 5,886,742 | 01/14/1998 | Hibi et al |
| 13 | 6,647,061 | 06/09/2000 | Panusopone et al |
| 14 | US2002/0064228 | 04/02/1999 | Sethuraman et al |
| 15 | US2002/0126757 | 12/26/2000 | Kim et al |

| Reference No. | Patent No. | Date | Patentee |
|---|---|---|---|
| 16 | US2002/136297 | 12/14/1998 | Shimada et al |
| 17 | US2002/0150160 | 12/11/2001 | Liu et al |
| 18 | US2002/0168007 | 04/19/2001 | Lee |
| 19 | US2003/0112864 | 06/19/2003 | Karczewicz et al |
| 20 | 5,682,204 | 12/26/1995 | Uz et al |
| 21 | 5,974,184 | 10/24/1997 | Eifrig et al |
| 22 | 5,991,447 | 10/06/1997 | Eifrig et al |
| 23 | WO 1997016016 | 05/01/1997 | Brailean et al |
| 24 | WO 1997043861 | 11/20/1997 | Kim et al |
| 25 | 6,026,195 | 04/28/1999 | Eifrig et al |
| 26 | 6,275,533 | 06/18/1998 | Nishi |
| 27 | US2002/0118759 | 09/07/2001 | Enficiaud et al |
| 28 | EP 863673 | 09/09/1998 | Eifrig et al |
| 29 | EP 895424 | 10/31/2007 | Takaoka et al |
| 30 | EP 917363 | 05/19/1999 | Zuccaro et al |
| 31 | EP 940774 | 09/08/1999 | Kadono et al |
| 32 | GB 2316826 | 08/28/1997 | Yoneyama et al |
| 33 | JP 63133780 | | |
| 34 | JP 5095545 | | |
| 35 | JP 6070302 | | |
| 36 | JP 8126009 | | |
| 37 | JP 11215501 | | |
| 38 | KR 2001069016 | 07/23/2001 | |
| 39 | 5,091,782 | 04/09/1990 | Krause et al |
| 40 | 5,434,622 | 09/08/1993 | Lim |
| 41 | 5,510,840 | 05/15/1995 | Yonemitsu et al |
| 42 | 5,701,164 | 12/19/1996 | Kato |
| 43 | 5,737,020 | 12/07/1997 | Hall et al |
| 44 | 5,777,680 | 06/27/1996 | Kim |
| 45 | 5,878,166 | 12/26/1995 | Legall |
| 46 | 6,160,849 | 05/30/1995 | Igarashi et al |

## NON-PATENT LITERATURE AND REFERENCES

| Reference No. | Publication | Title | Author(s) | Date |
|---|---|---|---|---|
| 1 | | MPEG-2 Part 2, ITU-T Recommendation H.262/ISO/IEC 13818-2 | | |
| 2 | IEEE Transactions on Circuits and Systems for Video Technology, 9(8) | MPEG-4 Standardized Methods for the Compression of Arbitrarily Shaped Video Object | Brady | 12/1999 |
| 3 | In Proc. Of International Symposium on Multimedia Information Processing | Optimizing INTRA/INTER Coding Mode Decisions | Chen et al. | 12/1997 |
| 4 | IEEE Transactions on Circuits and Systems for Video Technology, 10(5) | Coding Tools in MPEG-4 for Interlaced Video | Panusopone | 08/2000 |
| 5 | | Macroblock-Based Progressive Fine Granularity Scalable Video Coding | Sun et al. | 08/2001 |
| 6 | In the Proceedings of ICIP '95, Oct. 23-26, 1995, Washington, D.C., U.S.A. | Efficient Mode Selection for Block-Based Motion Compensated Video Coding | Wiegand et al. | 1995 |
| 7 | | Block-based Hybrid Video Coding Using Motion-Compensated Long-Term Memory Prediction | Wiegand et al. | 09/1997 |
| 8 | Proceedings of the SPIE – The international Society for Optical Engineering | Preprocessing with Motion Information from MPEG Encoder | Wong | 1996 |
| 9 | Signal Processing: Image Communication | MPEG-4 Natural Video Coding - An overview (Scientific Paper) | Touradj Ebrahimi et al. | 2000 |

| Reference No. | Publication | Title | Author(s) | Date |
|---|---|---|---|---|
| 10 | IBM TDB | Adaptive Refresh of Compressed Image Sequences | Feig et al. | 07/1992 |
| 11 | Technical Report | Extraction of Motion Vectors from an MPEG Stream | Gilvarry | 1999 |
| 12 | IEEE | Interframe Video Coding Using Overlapped Motion Compensation and Perfect Reconstruction Filter Banks | Jozawa et al. | 1992 |
| 13 | Springer-Verlag Berlin Heidelberg | Video Encryption Based on Data Partitioning and Scalable Coding – A Comparison | Kunkelmann et al. | 1998 |
| 14 | IEEE International Conferences in Multimedia and Expo, ICME 2000 Proceedings (Inspec) | Compression with Mosaic Prediction for Image-Based Rendering Applications | Leung et al. | 2000 |
| 15 | Mobile Networks and Applications 3 | MPEG-4: An Object-Based Multimedia Coding Standard Supporting Mobile Applications | Puri et al. | 1998 |
| 16 | IEEE Signal Processing Magazine | Error Resilient Video Coding Techniques-Real-time Video Communications over Unreliable Networks | Wang et al. | 07/2000 |
| 17 | BT Technol J, 14(4) | Video Coding – Techniques, Standards and Applications | Whybray et al. | 10/1997 |
| 18 | IEEE | Coding of an Arbitrarily Shaped Interlaced Video in MPEG-4 | Chen et al. | 1999 |
| 19 | | Multimedia Communications: Coding, Systems, and Networking-MPEG-2 Video | Chen | 06/2005 |

| Reference No. | Publication | Title | Author(s) | Date |
|---|---|---|---|---|
| 20 | International Organisation for Standardisation Organisation Internationale De normalisation | Generic Coding of Moving Pictures and Associated Audio | International Organisation for Standardisation Organisation Internationale De normalisation | 03/1994 |
| 21 | IEEE Transactions on Consumer Electronics, 45(1) | An Area Efficient DCT Architecture for MPEG-2 Video Encoder | Kim et al. | 02/1999 |
| 22 | ACM  Multimedia | A Fast MPEG Video Encryption Algorithm | Changgui Shi et al. | 1998 |
| 23 | Signal Processing for Multimedia | Digital Video Coding Standards and Their Role in Video Communications | Sikora | 06/2005 |
| 24 | BT Technol J, 14(4) | Video Coding- Techniques, Standards and Applications | Whybray et al. | 1997 |
| 25 | Proceedings of the SPIE | MPEG-2 Video Coding with an Adaptive Selection of Scanning Path and Picture Structure | Zhou et al. | 10/1996 |
| 26 | Joint Video Team (JVT) of ISO/IEC MPEG & ITU-T VCEG (ISO/IEC JTC1/SC29/WG11 and ITU-T SG16 Q.6) 2nd Meeting: Geneva, CH, Jan. 29 - Feb. 1, 2002 | Core Experiment on Macroblock Adaptive Frame/Field Encoding | Borgwardt | 04/03/2002 |
| 27 | | Fixed and Adaptive Predictors for Hybrid Predictive/Transform Coding | Ericcson | 1995 |
| 28 | | Macroblock Adaptive Frame/Field Coding for Interlace Sequences | Gandhi et al. | 07/2002 |
| 29 | | Digital Video: An Introduction to MPEG-2 | Haskell et al. | 1997 |

| Reference No. | Publication | Title | Author(s) | Date |
|---|---|---|---|---|
| 30 | VCEG-N76, Video Coding Experts Group (VCEG) of ITU-T (SG16 Q.6) Santa Barbara Meeting, 24-27 September 2001 | Adaptive Field/Frame Block Coding Experiment Proposal | Itu-Adv-Video | 09/26/2001 |
| 31 | IEEE Transactions on Circuits and Systems for Video Technology, 8(6) | Fast Overlapped Block Motion Compensation with Checkerboard Block Partitioning | Kuo et al. | 10/1998 |
| 32 | IEEE | Very Low Bit Rate Foveated Video Coding For H.263 | Lee et al. | 1999 |
| 33 | Signal Processing: Image Communication, 5:39-58 | Adaptive Frame/Field Motion Compensated Video Coding | Puri et al. | 1993 |
| 34 | IEEE | A Fast Suboptimal Approach to Error Concealment in Encoded Video Streams | Salama et al. | 1997 |
| 35 | Proceedings of the IEEE, 83(6) | Digital Video Coding Standards and Their Role in Video Communications | Schafer et al. | 1995 |
| 36 | ACM Multimedia | A Fast MPEG Video Encryption Algorithm | Shi et al. | 1998 |
| 37 | IEEE Transactions on Consumer Electronics, 43(3) | Error Concealment based in Directional Interpolation | Suh et al. | 08/1997 |
| 38 | IEEE Transactions on Circuits and Systems for Video Technology, 10(4) | A Cell-Loss Concealment Technique for MPEG-2 Coded Video | Zhang et al. | 06/2000 |

The '376 Patent:      The '376 Patent is invalid by reason of having been issued in

violation of the U.S. patent laws, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112,

113, and/or 133 thereof, or the Rules and Regulations of the Patent and Trademark Office

relating thereto.  For instance, the claims of the '376 Patent do not represent a patentable advance

31

over the prior art, and accordingly are anticipated by and/or obvious, taken alone or in

combination, in view of the following references:

### PATENTS

| Reference No. | Patent No. | Date | Patentee |
|---|---|---|---|
| 1 | 5,953,457 | 07/03/1997 | Tucker et al |
| 2 | 6,005,980 | 07/21/1997 | Eifrig et al |
| 3 | 6,229,854 | 08/10/2000 | Kikuchi et al |
| 4 | 6,381,275 | 12/04/1996 | Fukuhara et al |
| 5 | 7,266,150 | 06/28/2002 | Demos |
| 6 | 7,446,774 | 08/18/2000 | MacInnis et al |
| 7 | US2001/0043792 | 03/06/2000 | Mishima et al |
| 8 | US2003/0043916 | 09/05/2001 | Zhong et al |
| 9 | US2003/0053537 | 03/05/2002 | Kim et al |
| 10 | 5,227,878 | 11/15/1991 | Puri et al |
| 11 | 5,485,279 | 07/02/1993 | Yonemitsu et al |
| 12 | 5,886,742 | 01/14/1998 | Hibi et al |
| 13 | 6,647,061 | 06/09/2000 | Panusopone et al |
| 14 | US2002/0064228 | 04/02/1999 | Sethuraman et al |
| 15 | US2002/0126757 | 12/26/2000 | Kim et al |
| 16 | US2002/0136297 | 12/14/1998 | Shimada et al |
| 17 | US2002/0150160 | 12/11/2001 | Liu et al |
| 18 | US2002/0168007 | 04/19/2001 | Lee |
| 19 | US2003/0112864 | 06/19/2003 | Karczewicz et al |
| 20 | 5,682,204 | 12/26/1995 | Uz et al |
| 21 | 5,974,184 | 10/24/1997 | Eifrig et al |
| 22 | 5,991,447 | 10/06/1997 | Eifrig et al |
| 23 | WO 1997016016 | 05/01/1997 | Brailean et al |
| 24 | WO 1997043861 | 11/20/1997 | Kim et al |
| 25 | 6,026,195 | 04/28/1999 | Eifrig et al |
| 26 | 6,275,533 | 06/18/1998 | Nishi |
| 27 | US2002/0118759 | 09/07/2001 | Enficiaud et al |
| 28 | EP 863673 | 09/09/1998 | Eifrig et al |
| 29 | EP 895424 | 10/31/2007 | Takaoka et al |
| 30 | EP 917363 | 05/19/1999 | Zuccaro et al |
| 31 | EP 940774 | 09/08/1999 | Kadono et al |
| 32 | GB 2316826 | 08/28/1997 | Yoneyama et al |
| 33 | JP 63133780 | | |

| Reference No. | Patent No. | Date | Patentee |
|---|---|---|---|
| 34 | JP 5095545 | | |
| 35 | JP 6070302 | | |
| 36 | JP 8126009 | | |
| 37 | JP 11215501 | | |
| 38 | KR 2001069016 | 07/23/2001 | |
| 39 | 5,091,782 | 04/09/1990 | Krause et al |
| 40 | 5,434,622 | 09/08/1993 | Lim |
| 41 | 5,510,840 | 05/15/1995 | Yonemitsu et al |
| 42 | 5,701,164 | 12/19/1996 | Kato |
| 43 | 5,737,020 | 12/07/1997 | Hall et al |
| 44 | 5,777,680 | 06/27/1996 | Kim |
| 45 | 5,878,166 | 12/26/1995 | Legall |
| 46 | 6,160,849 | 05/30/1995 | Igarashi et al |

## NON-PATENT LITERATURE AND REFERENCES

| Reference No. | Publication | Title | Author(s) | Date |
|---|---|---|---|---|
| 1 | | MPEG-2 Part 2, ITU-T Recommendation H.262/ISO/IEC 13818-2 | | |
| 2 | IEEE Transactions on Circuits and Systems for Video Technology, 9(8) | MPEG-4 Standardized Methods for the Compression of Arbitrarily Shaped Video Object | Brady | 12/1999 |
| 3 | In Proc. Of International Symposium on Multimedia Information Processing | Optimizing INTRA/INTER Coding Mode Decisions | Chen et al. | 12/1997 |
| 4 | IEEE Transactions on Circuits and Systems for Video Technology, 10(5) | Coding Tools in MPEG-4 for Interlaced Video | Panusopone | 08/2000 |
| 5 | | Macroblock-Based Progressive Fine Granularity Scalable Video Coding | Sun et al. | 08/2001 |

33

| Reference No. | Publication | Title | Author(s) | Date |
|---|---|---|---|---|
| 6 | In the Proceedings of ICIP '95, Oct. 23-26, 1995, Washington, D.C., U.S.A. | Efficient Mode Selection for Block-Based Motion Compensated Video Coding | Wiegand et al. | 1995 |
| 7 | | Block-based Hybrid Video Coding Using Motion-Compensated Long-Term Memory Prediction | Wiegand et al. | 09/1997 |
| 8 | Proceedings of the SPIE – The international Society for Optical Engineering | Preprocessing with Motion Information from MPEG Encoder | Wong | 1996 |
| 9 | Signal Processing: Image Communication | MPEG-4 Natural Video Coding - An overview (Scientific Paper) | Touradj Ebrahimi et al. | 2000 |
| 10 | IBM TDB | Adaptive Refresh of Compressed Image Sequences | Feig et al. | 07/1992 |
| 11 | Technical Report | Extraction of Motion Vectors from an MPEG Stream | Gilvarry | 1999 |
| 12 | IEEE | Interframe Video Coding Using Overlapped Motion Compensation and Perfect Reconstruction Filter Banks | Jozawa et al. | 1992 |
| 13 | Springer-Verlag Berlin Heidelberg | Video Encryption Based on Data Partitioning and Scalable Coding – A Comparison | Kunkelmann et al. | 1998 |
| 14 | IEEE International Conferences in Multimedia and Expo, ICME 2000 Proceedings (Inspec) | Compression with Mosaic Prediction for Image-Based Rendering Applications | Leung et al. | 2000 |
| 15 | Mobile Networks and Applications 3 | MPEG-4: An Object-Based Multimedia Coding Standard Supporting Mobile | Puri et al. | 1998 |

| Reference No. | Publication | Title | Author(s) | Date |
|---|---|---|---|---|
|  |  | Applications |  |  |
| 16 | IEEE Signal Processing Magazine | Error Resilient Video Coding Techniques-Real-time Video Communications over Unreliable Networks | Wang et al. | 07/2000 |
| 17 | BT Technol J, 14(4) | Video Coding – Techniques, Standards and Applications | Whybray et al. | 10/1997 |
| 18 | IEEE | Coding of an Arbitrarily Shaped Interlaced Video in MPEG-4 | Chen et al. | 1999 |
| 19 |  | Multimedia Communications: Coding, Systems, and Networking-MPEG-2 Video | Chen | 06/2005 |
| 20 | International Organisation for Standardisation Organisation Internationale De normalisation | Generic Coding of Moving Pictures and Associated Audio | International Organisation for Standardisation Organisation Internationale De normalisation | 03/1994 |
| 21 | IEEE Transactions on Consumer Electronics, 45(1) | An Area Efficient DCT Architecture for MPEG-2 Video Encoder | Kim et al. | 02/1999 |
| 22 | ACM  Multimedia | A Fast MPEG Video Encryption Algorithm | Changgui Shi et al. | 1998 |
| 23 | Signal Processing for Multimedia | Digital Video Coding Standards and Their Role in Video Communications | Sikora | 06/2005 |
| 24 | BT Technol J, 14(4) | Video Coding-Techniques, Standards and Applications | Whybray et al. | 1997 |
| 25 | Proceedings of the SPIE | MPEG-2 Video Coding with an Adaptive Selection of Scanning Path and Picture | Zhou et al. | 10/1996 |

| Reference No. | Publication | Title | Author(s) | Date |
|---|---|---|---|---|
| | | Structure | | |
| 26 | Joint Video Team (JVT) of ISO/IEC MPEG & ITU-T VCEG (ISO/IEC JTC1/SC29/WG11 and ITU-T SG16 Q.6) 2nd Meeting: Geneva, CH, Jan. 29 - Feb. 1, 2002 | Core Experiment on Macroblock Adaptive Frame/Field Encoding | Borgwardt | 04/03/2002 |
| 27 | | Fixed and Adaptive Predictors for Hybrid Predictive/Transform Coding | Ericcson | 1995 |
| 28 | | Macroblock Adaptive Frame/Field Coding for Interlace Sequences | Gandhi et al. | 07/2002 |
| 29 | | Digital Video: An Introduction to MPEG-2 | Haskell et al. | 1997 |
| 30 | VCEG-N76, Video Coding Experts Group (VCEG) of ITU-T (SG16 Q.6) Santa Barbara Meeting, 24-27 September 2001 | Adaptive Field/Frame Block Coding Experiment Proposal | Itu-Adv-Video | 09/26/2001 |
| 31 | IEEE Transactions on Circuits and Systems for Video Technology, 8(6) | Fast Overlapped Block Motion Compensation with Checkerboard Block Partitioning | Kuo et al. | 10/1998 |
| 32 | IEEE | Very Low Bit Rate Foveated Video Coding For H.263 | Lee et al. | 1999 |
| 33 | Signal Processing: Image Communication, 5:39-58 | Adaptive Frame/Field Motion Compensated Video Coding | Puri et al. | 1993 |
| 34 | IEEE | A Fast Suboptimal Approach to Error Concealment in Encoded Video Streams | Salama et al. | 1997 |

| Reference No. | Publication | Title | Author(s) | Date |
|---|---|---|---|---|
| 35 | Proceedings of the IEEE, 83(6) | Digital Video Coding Standards and Their Role in Video Communications | Schafer et al. | 1995 |
| 36 | ACM Multimedia | A Fast MPEG Video Encryption Algorithm | Shi et al. | 1998 |
| 37 | IEEE Transactions on Consumer Electronics, 43(3) | Error Concealment based in Directional Interpolation | Suh et al. | 08/1997 |
| 38 | IEEE Transactions on Circuits and Systems for Video Technology, 10(4) | A Cell-Loss Concealment Technique for MPEG-2 Coded Video | Zhang et al. | 06/2000 |

In addition to the bases for invalidity described above, the asserted claims of the '374, '375, and '376 patents, which share the same specification, are invalid for failure to satisfy the description requirement of 35 U.S.C. § 112 by including, for example and without limitation, the following language which appears in some or all of the asserted claims: "size that is larger than one macroblock," "means for dividing said picture into a plurality of smaller portions," "means for selectively encoding," "one motion vector is spatially predictive coded," "means for decoding," "means for using said plurality of decoded smaller portions to construct a decoded picture," "selectively decoding," "spatially predictive coding for a current block in accordance with a plurality of neighboring blocks to said current block," "means for selectively decoding," "means for using said plurality of decoded smaller portions to construct a decoded picture," "grouping said plurality of macroblocks as a processing block," "means for generating a plurality of processing blocks," "means for selectively encoding at least one of said processing blocks at a time in frame coding mode and at least one of said processing blocks at a time in field coding mode," "said top field block is encoded prior to said bottom field block," "top block," "bottom block," and "said top block is decoded prior to said bottom block in said frame coding mode."

37

Further, the asserted claims of the '374, '375, and '376 patents, which share the same specification, are invalid for failure to satisfy the enablement requirement of 35 U.S.C. § 112 by including, for example and without limitation, the following language which appears in some or all of the asserted claims:  "size that is larger than one macroblock," "means for dividing said picture into a plurality of smaller portions," "means for selectively encoding," "one motion vector is spatially predictive coded," "means for decoding," "means for using said plurality of decoded smaller portions to construct a decoded picture," "selectively decoding," "spatially predictive coding for a current block in accordance with a plurality of neighboring blocks to said current block," "means for selectively decoding," "means for using said plurality of decoded smaller portions to construct a decoded picture," "grouping said plurality of macroblocks as a processing block," "means for generating a plurality of processing blocks," "means for selectively encoding at least one of said processing blocks at a time in frame coding mode and at least one of said processing blocks at a time in field coding mode," "said top field block is encoded prior to said bottom field block," "top block," "bottom block," and "said top block is decoded prior to said bottom block in said frame coding mode."

Further, the asserted claims of the '374, '375, and '376 patents, which share the same specification, are invalid for failure to satisfy the definiteness requirement of 35 U.S.C. § 112 by including, for example and without limitation, the following language which appears in some or all of the asserted claims:  "size that is larger than one macroblock," "means for dividing said picture into a plurality of smaller portions," "means for selectively encoding," "one motion vector is spatially predictive coded," "means for decoding," "means for using said plurality of decoded smaller portions to construct a decoded picture," "selectively decoding," "spatially predictive coding for a current block in accordance with a plurality of neighboring blocks to said

current block," "means for selectively decoding," "means for using said plurality of decoded smaller portions to construct a decoded picture," "means for generating a plurality of processing blocks," and "means for selectively encoding at least one of said processing blocks at a time in frame coding mode and at least one of said processing blocks at a time in field coding mode."

Further, each of the asserted method claims of the '374, '375, and '376 patents is directed to an unpatentable concept, attempts to claim an abstract idea, and is invalid for failure to claim patent-eligible subject matter under 35 U.S.C. § 101.  *See Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (2010).  Each of the asserted apparatus and computer-readable medium claims of the '374, '375, and '376 patents attempts to claim abstract ideas as functional steps, and does not properly identify structure.  For this reason, these claims are also invalid under Section 101 as well.  *See, e.g., Every Penny Counts, Inc. v. Bank of America Corp.*,  2-07-cv-00042, 2009 WL 6853402, at *2 (M.D. Fla. May 27, 2009) ("Simply because the process at issue requires machines or computers to work, however, does not mean that the process or system is a machine." (citing *Gottschalk v. Benson*, 409 U.S. 63, 71-72 (1972))).

## INTERROGATORY NO. 5

 Separately for each claim, if any, of the Asserted Claims of the Asserted Patents that Microsoft contends is invalid as anticipated under 35 U.S.C. § 102, please:

(a)     identify all prior art on which Microsoft relies;

(b)     identify under what subsection(s), if any, of § 102 each reference, activity, etc. qualifies as prior art;

(c)     identify the effective date for each piece of prior art;

(d)     identify specifically how the prior art anticipates the claim on an element by element (e.g., claim chart) basis; and

(e)     identify the person(s) most knowledgeable concerning the facts underlying each such contention.

**RESPONSE TO INTERROGATORY NO. 5**:

In addition to and without limiting the foregoing General Objections, which are incorporated by reference as though fully set forth herein, Microsoft objects to this Interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity against disclosure.  Microsoft further objects to this Interrogatory as vague and ambiguous, as it is impossible for Microsoft to quantify which person(s) are "most knowledgeable" concerning the specified topic.  Microsoft objects to this Interrogatory to the extent that it constitutes multiple interrogatories and causes Motorola to exceed the number of interrogatories permitted under the Federal Rules.  Microsoft further objects to this Interrogatory as premature to the extent that it calls for expert opinions and legal conclusions.  Microsoft objects to this Interrogatory as overbroad, unduly burdensome, and premature on the grounds that Motorola has not yet identified which claims it asserts are infringed by Microsoft and Motorola has not yet disclosed its infringement contentions.  Moreover, the Court has not yet construed the claims.  Until Microsoft receives necessary discovery from Motorola, this Interrogatory is, and will continue to be, premature.  Microsoft further objects to this Interrogatory as duplicative of Interrogatory No. 4 and incorporates by reference the objections and responses to Interrogatory No. 4.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Microsoft responds as follows:  See Microsoft's Objections and Responses to Interrogatory No. 4 above.  Microsoft will provide further information in response to this Interrogatory in accordance with the schedule for infringement and invalidity contentions.  Microsoft reserves the right to supplement its response to this Interrogatory as discovery continues.

## INTERROGATORY NO. 6

Separately for each claim, if any, of the Asserted Claims of the Asserted Patents that Microsoft contends is invalid for obviousness under 35 U.S.C. § 103, please:

(a)     identify all prior art on which Microsoft relies and explain how the prior art is to be modified and/or combined;

(b)     identify specifically how the modified and/or combined prior art renders obvious the claim on an element by element (e.g., claim chart) basis;

(c)     identify the reason, motivation, suggestion and/or teaching to modify or combine the prior art in such a manner;

(d)     identify all evidence that supports Microsoft's obviousness contentions; and

(e)     identify the person(s) most knowledgeable concerning the facts underlying each such contention.

## RESPONSE TO INTERROGATORY NO. 6:

In addition to and without limiting the foregoing General Objections, which are incorporated by reference as though fully set forth herein, Microsoft objects to this Interrogatory as premature to the extent it seeks the disclosure of information protected by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity against disclosure. Microsoft further objects to this Interrogatory as vague and ambiguous, as it is impossible for Microsoft to quantify which person(s) are "most knowledgeable" concerning the specified topic. Microsoft objects to this Interrogatory  on the grounds that, to the extent it calls for Microsoft to identify "all evidence," it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.   Microsoft further objects to this Interrogatory to the extent that it constitutes multiple interrogatories and causes Motorola to exceed the number of interrogatories permitted under the Federal Rules.  Microsoft objects to this Interrogatory to the extent that it calls for expert opinions and legal conclusions.  Microsoft further objects to this Interrogatory as overbroad, unduly burdensome, and premature on the grounds that Motorola has not yet identified which claims it asserts are infringed by Microsoft,

and Motorola has not yet disclosed its infringement contentions.  Moreover, the Court has not yet

construed the claims.  Until Microsoft receives necessary discovery from Motorola, this

Interrogatory is, and will continue to be, premature.  Microsoft further objects to this

Interrogatory as duplicative of Interrogatory Nos. 4 and 5 and incorporates by reference the

objections and responses to Interrogatory Nos. 4 and 5.

Subject to and without waiving the foregoing specific objections and General Statement

and Objections, Microsoft refers Motorola to the prior art references identified in response to

Interrogatory No. 4, one or more of which standing alone, or in combination, renders the asserted

claims obvious.  Microsoft reserves the right to supplement its response to this Interrogatory as

discovery continues.

## INTERROGATORY NO. 7

Please state Microsoft's contention(s) as to the field of art and the level of ordinary skill
in that art pertinent to the issue of obviousness/nonobviousness under 35 U.S.C. § 103 with
respect to each of the Asserted Patents and each of the Microsoft Counterclaim Patents and
identify the person(s) most knowledgeable concerning the facts underlying each such contention.

## RESPONSE TO INTERROGATORY NO. 7:

Withdrawn.

## INTERROGATORY NO. 8

Please state in detail all factual and legal bases for Microsoft's contention(s), if any,
regarding any "objective evidence" or "secondary considerations" of non-obviousness for each
of the Asserted Patents and each of the Microsoft Counterclaim Patents accordance with, for
example, *Graham v. John Deere Co.,* 383 U.S. 1, 17 (1966), and identify the person(s) most
knowledgeable concerning the facts underlying each such contention.

## RESPONSE TO INTERROGATORY NO. 8:

In addition to and without limiting the foregoing General Objections, which are

incorporated by reference as though fully set forth herein, Microsoft objects to this Interrogatory

to the extent it seeks the disclosure of information protected by the attorney-client privilege,

42

work product doctrine, or other applicable privilege or immunity against disclosure.  Microsoft further objects to this Interrogatory as vague and ambiguous, as it is impossible for Microsoft to quantify which person(s) are "most knowledgeable" concerning the specified topic.  Microsoft objects to this Interrogatory on the grounds that, to the extent it calls for Microsoft to describe "all factual and legal bases," it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Microsoft further objects to this Interrogatory to the extent that it constitutes multiple interrogatories and causes Motorola to exceed the number of interrogatories permitted under the Federal Rules.  Microsoft objects to this Interrogatory as premature to the extent that it calls for expert opinions and legal conclusions.  Microsoft further objects to this Interrogatory as premature on the grounds that Motorola has not yet identified which claims it asserts are infringed by Microsoft, and Motorola has not yet disclosed its infringement contentions.  Until Microsoft receives necessary discovery from Motorola, this Interrogatory is, and will continue to be, premature.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Microsoft will provide information in response to this Interrogatory in accordance with the schedule for infringement and invalidity contentions.  Microsoft reserves the right to supplement its response to this Interrogatory as discovery continues.

### INTERROGATORY NO. 9

Separately for each, if any, of the Asserted Patents to which Microsoft contends that it has any Affirmative Defense(s) to a claim of infringement that has not been specifically addressed by the preceding interrogatories, please describe in detail all factual and legal bases for Microsoft's contention(s), including the identity of all documents tending to support or refute any such contention, and the identity of the person(s) most knowledgeable concerning the facts underlying any such contention.

### RESPONSE TO INTERROGATORY NO. 9:

In addition to and without limiting the foregoing General Objections, which are

incorporated by reference as though fully set forth herein, Microsoft objects to this Interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity against disclosure. Microsoft further objects to this Interrogatory as vague and ambiguous, as it is impossible for Microsoft to quantify which person(s) are "most knowledgeable" concerning the specified topic. Microsoft objects to this Interrogatory on the grounds that, to the extent it calls for Microsoft to describe "all factual and legal bases," it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Microsoft further objects to this Interrogatory to the extent that it constitutes multiple interrogatories and causes Motorola to exceed the number of interrogatories permitted under the Federal Rules. Microsoft objects to this Interrogatory as premature to the extent that it calls for expert opinions and legal conclusions. Microsoft further objects to this Interrogatory as premature on the grounds that Motorola has not yet identified which claims it asserts are infringed by Microsoft and Motorola has not yet disclosed its infringement contentions. Until Microsoft receives necessary discovery from Motorola, this Interrogatory is, and will continue to be, premature.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Microsoft responds as follows:

(a) Prosecution History Estoppel: In the course of prosecuting the Asserted Patents, the applicants made representations to the U.S. Patent Office that included remarks on the scope and meaning of the claims and the content of the prior art. Motorola cannot now reclaim what was limited or disclaimed, either expressly or implicitly, during prosecution. Microsoft will supplements its position on prosecution history estoppel during claim construction briefing.

(b) 35 U.S.C. § 286: 35 U.S.C. § 286 bars Motorola from any recovery for any

44

infringement occurring more than six years prior to the filing of the complaint.

(c) 35 U.S.C. § 287:  To the extent that Motorola did not mark its patented productions with the number of the Asserted Patents, 35 U.S.C. § 287 bars Motorola from recovering damages for infringement occurring prior to the date that Motorola notified Microsoft that Microsoft was allegedly infringing the Asserted Patents.  Facts related to this issue are in the possession of Motorola.

(d) Motorola's Request for Injunctive Relief:  Motorola has suffered neither harm nor irreparable harm from Microsoft's actions.  Facts related to this issue are in the possession of Motorola.

(e) 28 U.S.C. § 1498:  28 U.S.C. § 1498 bars Motorola from any recovery for any infringement relating to the sale and/or use by or for the United States government of any allegedly infringing products.

Microsoft reserves the right to supplement its response to this Interrogatory as discovery continues.

**INTERROGATORY NO. 10**

Identify and describe the results of all analyses, investigations, evaluations or other studies known to Microsoft concerning the Asserted Patents, including analyses, investigations, evaluations and studies concerning infringement/non-infringement, validity/invalidity (including but not limited to any searches for prior art), enforceability/unenforceability, patentability, scope, or interpretation of any claim of any of the Asserted Patents, including without limitation the dates of any such study, the persons who conducted or prepared it, the persons who received or to whom such study was reported, the subject matter of the study, and all documents constituting, referring or relating thereto.

**RESPONSE TO INTERROGATORY NO. 10**:

In addition to and without limiting the foregoing General Objections, which are incorporated by reference as though fully set forth herein, Microsoft objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of

admissible evidence as it calls for information not relevant to any claim, defense, or relief at issue in this litigation.  Microsoft objects to this Interrogatory to the extent that it constitutes multiple interrogatories and causes Motorola to exceed the number of interrogatories permitted under the Federal Rules.  Microsoft further objects to this Interrogatory to the extent it seeks information not within Microsoft's possession, custody, or control.  Microsoft objects to this Interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity against disclosure.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Microsoft responds as follows:  although Microsoft's investigation is ongoing, Microsoft currently believes that it first learned of the alleged infringement of the Asserted Patents upon receipt of the licensing demand letters from Motorola in late October 2010 and therefore is currently not aware of any non-privileged information responsive to this Interrogatory.  Microsoft reserves the right to supplement its response to this Interrogatory as discovery continues.

## INTERROGATORY NO. 11

Separately for each release and/or version of each of the Accused Microsoft Products, identify in descending order of knowledge the three persons currently or formerly employed by Microsoft who are most knowledgeable about each of the following topics concerning each Accused Microsoft Product:

(a)     structure, operation, and function;

(b)     design and development;

(c)     source code and object code;

(d)     Application Programming Interfaces and communication protocols, if any;

(e)     testing and deployment;

(f)     marketing, advertising, and promotion;

46

(g)     any formal or informal training, technical support, and customer feedback;

(h)     offers for sale;

(i)     licensing;

(j)     pricing;

(k)     sales;

(1)     financial reporting;

(m)    business planning and product management;

(n)     competition for licensing or sales of the Accused Microsoft Products, in the United States; and

(o)     any formal or informal tests, studies, comparisons, analyses, or reports, in any form, involving, referring, or relating to the Accused Microsoft Products.

## RESPONSE TO INTERROGATORY NO. 11:

In addition to and without limiting the foregoing General Objections, which are incorporated by reference as though fully set forth herein, Microsoft objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence as it calls for information not relevant to any claim, defense, or relief at issue in this litigation or seeks information regarding technology, products, or portions of products that are not accused of infringement.  Microsoft objects to this Interrogatory as vague and ambiguous, as it is impossible for Microsoft to quantify which three persons "are most knowledgeable" concerning the specified topic(s), or to rank-order their degree of knowledge with regard to such topic(s).  Moreover, the specified categories are vague and ambiguous and, to the extent Microsoft understands what is intended, are not necessarily reflective of the internal division of labor or knowledge within the company.  Microsoft further objects to this Interrogatory as calling for information that is cumulative or duplicative to the extent it purports to require the identification of three persons most knowledgeable about the information

47

indicated.  Microsoft objects to this Interrogatory to the extent that it constitutes multiple

interrogatories and causes Motorola to exceed the number of interrogatories permitted under the

Federal Rules.  Microsoft further objects to this Interrogatory on the grounds that it calls for a

legal conclusion.  Microsoft further objects to this Interrogatory as overbroad, unduly

burdensome, and premature on the grounds that Motorola has not yet identified which claims it

asserts are infringed by Microsoft and Motorola has not yet disclosed its infringement

contentions.  Moreover, the Court has not yet construed the claims.

Subject to and without waiving the foregoing specific objections and General Statement

and Objections, Microsoft is willing to meet and confer with Motorola to discuss the categories

set forth in this Request after Motorola has disclosed its infringement contentions.  Microsoft

reserves the right to supplement its response to this Interrogatory as discovery continues.

## INTERROGATORY NO. 12

Identify and describe the circumstances under which Microsoft first became aware of
each of the Asserted Patents, including without limitation an identification of the source,
circumstances and timing of such awareness, an identification of all documents and
communications evincing such awareness, and all actions taken by or on behalf of Microsoft, its
directors, its officers, and its employees to evaluate or avoid infringing any such patent once
Microsoft became aware of each of the patents.

## RESPONSE TO INTERROGATORY NO. 12:

In addition to and without limiting the foregoing General Objections, which are

incorporated by reference as though fully set forth herein, Microsoft objects to this Interrogatory

on the grounds that, to the extent it calls for Microsoft to describe the "circumstances" it is

vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery

of admissible evidence.  Microsoft further objects to this Interrogatory on the grounds that it is

vague and ambiguous as to what information is required by the term "awareness."  Microsoft

objects to this Interrogatory to the extent that it constitutes multiple interrogatories and causes

48

Motorola to exceed the number of interrogatories permitted under the Federal Rules.  Microsoft further objects to this Interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity against disclosure.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Microsoft responds as follows:  although Microsoft's investigation is ongoing, Microsoft currently believes that it first learned of the alleged infringement of the Asserted Patents upon receipt of the licensing demand letters from Motorola in late October 2010. Microsoft reserves the right to supplement its response to this Interrogatory as discovery continues.

**INTERROGATORY NO. 13**

Separately for each release and/or version of each of the Accused Microsoft Products and on a quarterly and annual basis from January 2009 through the present, provide the:

    (a)    total sales and/or revenues (in gross revenues, net revenues, and units) attributable to sale or license of the Accused Microsoft Products: (i) in the United States; and (ii) outside of the United States;

    (b)    itemized costs (including fixed, variable, and incremental), including but not limited to any licensing fees, payments (including settlement payments), or royalties paid by Microsoft in connection with an Accused Microsoft Product (or any component or element thereof), and specifying: (i) the name of the licensor, payee or royalty recipient; (ii) the amount of each such fee, payment or royalty; (iii) the time period during which such fee, payment or royalty was paid; and (iv) the name of the product, component and/or element to which such fee, payment or royalty relates; and

    (c)    profits (gross and net).

**RESPONSE TO INTERROGATORY NO. 13**:

In addition to and without limiting the foregoing General Objections, which are incorporated by reference as though fully set forth herein, Microsoft objects to this Interrogatory

as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of

admissible evidence to the extent it calls for information not relevant to any claim, defense, or

relief at issue in this litigation; seeks information regarding technology, products, or portions of

products that are not accused of infringement; or is not limited to a time period that is relevant to

this action.  Microsoft objects to this Interrogatory to the extent that it constitutes multiple

interrogatories and causes Motorola to exceed the number of interrogatories permitted under the

Federal Rules.  Subject to and without waiving the foregoing specific objections and General

Statement and Objections, Microsoft responds as follows:  pursuant to Fed. R. Civ. P. 33(d),

Microsoft will produce materials or information sufficient to show sales units and revenues for

Windows 7 and Internet Explorer 9 for a time period that is relevant to this action.

## INTERROGATORY NO. 14

Separately, for each claim of the Microsoft Counterclaim Patents alleged to be infringed by Motorola, either directly or indirectly, specifically identify each and every product, apparatus, or method that You assert is infringing and state the legal and factual basis for Your allegation of infringement, including, without limitation, whether You contend that Motorola's alleged infringement is direct infringement, induced infringement, and/or contributory infringement; whether the alleged infringement is literal, under the doctrine of equivalents, or both; and for each element, limitation, or step of each claim, specifically identify the entity that you contend performs that claim element, limitation or step and describe in detail where such claim element, limitation or step is found, i.e., read each claim on each accused product, apparatus, and method by providing, separately for each claim element and product or activity, a claim-element by claim-element comparison of each claim to the corresponding structure or function of the accused product or activity.

## RESPONSE TO INTERROGATORY NO. 14:

In addition to and without limiting the foregoing General Objections, which are

incorporated by reference as though fully set forth herein, Microsoft objects to this Interrogatory

to the extent it seeks the disclosure of information protected by the attorney-client privilege,

work product doctrine, or other applicable privilege or immunity against disclosure.  Microsoft

further objects to this Interrogatory as vague and ambiguous, as it is impossible for Microsoft to

quantify which person(s) are "most knowledgeable" concerning the specified topic.  Microsoft objects to this Interrogatory to the extent that it constitutes multiple interrogatories and causes Motorola to exceed the number of interrogatories permitted under the Federal Rules.  Microsoft further objects to this Interrogatory as premature to the extent that it calls for expert opinions and legal conclusions.  Microsoft's investigations are ongoing and until Microsoft receives necessary discovery from Motorola, this Interrogatory is, and will continue to be, premature.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Microsoft will provide information in response to this Interrogatory in accordance with the schedule for infringement and invalidity contentions.  Microsoft reserves the right to supplement its response to this Interrogatory as discovery continues.

**INTERROGATORY NO. 15**

Describe with particularity when Microsoft first became aware of and/or first had knowledge of Motorola's allegedly infringing activity, including, but not limited to, the identification of each person who had such knowledge and the description of the circumstances under which the person first became aware of and/or acquired such knowledge.

**RESPONSE TO INTERROGATORY NO. 15**:

In addition to and without waiving the foregoing General Objections, which are incorporated by reference as though fully set forth herein, Microsoft objects to this  Interrogatory on the grounds that, to the extent it calls for Microsoft to described the "circumstances" it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Microsoft further objects to this Interrogatory to the extent that it constitutes multiple interrogatories and causes Motorola to exceed the number of interrogatories permitted under the Federal Rules.  Microsoft objects to this Interrogatory to the extent that it seeks the disclosure of information protected by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity against disclosure.

51

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Microsoft responds as follows:  although Microsoft's investigation continues, Microsoft currently believes that Michael Allen and/or Patrick Evans had knowledge of Motorola's infringing activity with respect to the '582 Patent and the '780 Patent on November 15, 2010.  Microsoft reserves the right to supplemental its response to this Interrogatory as discovery continues.

## INTERROGATORY NO. 16

Identify the alleged priority date of each asserted claim of the Microsoft Counterclaim Patents and describe in detail all facts and circumstances relating to the conception and reduction to practice of each asserted claim of the Microsoft Counterclaim Patents, including identifying the date on which the claimed invention was conceived, the date on which the claimed invention was reduced to practice, any alleged diligence between the asserted conception and reduction to practice dates, each person with knowledge of such conception, reduction to practice or diligence, including the nature of each person's participation, involvement, and/or contribution to such conception, reduction to practice and/or diligence, and the Bates Number of all documents on which You intend to rely to support Your allegation of such conception, reduction to practice and/or diligence.

## RESPONSE TO INTERROGATORY NO. 16:

In addition to and without limiting the foregoing General Objections, which are incorporated by reference as though fully set forth herein, Microsoft objects to this Interrogatory on the grounds that, to the extent it calls for Microsoft to describe the "facts and circumstances relating to," it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Microsoft objects to this Interrogatory to the extent that it constitutes multiple interrogatories and causes Motorola to exceed the number of interrogatories permitted under the Federal Rules.  Microsoft further objects to this Interrogatory on the grounds that it is premature.  For example, the inventors' conception, reduction to practice, and diligence constitute rebuttable issues that only become relevant to the extent prior art is disclosed, upon which Motorola demonstrates a *prima facie* case of anticipation or

52

obviousness with respect to any particular asserted claim.  At this time, Motorola has not

demonstrated a *prima facie* case of anticipation or obviousness with respect to any particular

asserted claim.  Microsoft further objects to this Interrogatory as premature to the extent that it

calls for expert opinions and legal conclusions.  Microsoft further objects to this Interrogatory to

the extent it seeks disclosure of information protected by the attorney-client privilege, work

product doctrine, or other applicable privilege or immunity against disclosure.

Subject to and without waiving the foregoing specific objections and General Statement

and Objections, Microsoft responds that the filing of the patent application to which each

Counterclaim Patent claims priority constituted at least a constructive reduction to practice of the

inventions claimed in each such Counterclaim Patent.  In this regard, information responsive to

this Interrogatory may be derived or ascertained from an examination, audit, or inspection of

Microsoft records, and the burden of deriving or ascertaining the answer will be substantially the

same for either party.  Accordingly, Microsoft identifies the patent prosecution files as providing

responsive information.   Microsoft further understands that the inventors conceived these

inventions at least some time prior to the filing of the applications in question.  Additional

responsive information may be derived or ascertained from an examination, audit, or inspection

of Microsoft records, and the burden of deriving or ascertaining the answer will be substantially

the same for either party.  Microsoft is in the process of producing these materials and expects

them to be produced shortly.  Once the documents have been produced, Microsoft will promptly

supplement this response in order to identify the documents.  Microsoft reserves the right to

supplement its response to this Interrogatory as discovery continues.

## INTERROGATORY NO. 17

Separately for each asserted claim of the Microsoft Counterclaim Patents, describe in
detail all facts and circumstances relating to the first manufacture of the claimed invention, the
first use of the claimed invention, the first public use of the claimed invention, the first offer for

53

sale of the claimed invention, the first sale of the claimed invention, and the first offer for sale of the claimed invention for inclusion in a product to be sold in the United States, including, without limitation, the date on which each such event occurred, the identity of the customer, the identity of each person with knowledge of any of the foregoing, the price of any such offers for sale or sales, and identify by Bates number(s) all documents that disclose, reveal or otherwise suggest any of the foregoing.

**RESPONSE TO INTERROGATORY NO. 17**:

In addition to and without limiting the foregoing General Objections, which are incorporated by reference as though fully set forth herein, Microsoft objects to this Interrogatory on the grounds that, to the extent it calls for Microsoft to describe " all facts and circumstances relating to," it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Microsoft further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent the Interrogatory seeks information concerning responsive activities occurring less than one year prior to the filing date of the original patent application or subsequent to any such filing date.  Microsoft will only produce information responsive to this Interrogatory to the extent that it concerns responsive activities, if any, conducted at least one year prior to the filing date of the original patent application.  Microsoft objects to this Interrogatory to the extent that it constitutes multiple interrogatories and causes Motorola to exceed the number of interrogatories permitted under the Federal Rules.  Microsoft further objects to this Interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity against disclosure.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Microsoft responds as follows:  investigation is ongoing and Microsoft will supplement its response to this Interrogatory as discovery continues.

**INTERROGATORY NO. 18**

Identify each Microsoft Product, including, without limitation, the product name, model number, and any internal project name(s) or code(s) of each such product, and separately identify the specific claim(s) of each Microsoft Counterclaim Patent that Microsoft alleges to be practiced by each Microsoft Product, and a detailed description, including, without limitation, a claim chart, of how each identified claim reads on each Microsoft Product, and identify by Bates number(s) all documents that disclose, reveal or otherwise suggest any of the foregoing.

**RESPONSE TO INTERROGATORY NO. 18**:

In addition to and without limiting the foregoing General Objections, which are

incorporated by reference as though fully set forth herein, Microsoft objects to this Interrogatory

on the grounds that, to the extent that it calls for Microsoft to identify "without limitation" all

product names, model numbers, and internal project names or codes, it is overly broad, unduly

burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible

evidence.  Microsoft objects to this Interrogatory to the extent that it constitutes multiple

interrogatories and causes Motorola to exceed the number of interrogatories permitted under the

Federal Rules.  Microsoft further objects to this Interrogatory to the extent it seeks the disclosure

of information protected by the attorney-client privilege, work product doctrine, or other

applicable privilege or immunity against disclosure.

Subject to and without waiving the foregoing specific objections and General Statement

and Objections, Microsoft responds as follows:  Microsoft Windows Phone 7 operating system

practices the '780 Patent.  Microsoft's investigation continues with respect to both the '780

Patent and the '582 Patent and Microsoft reserves the right to supplement its response to this

Interrogatory as discovery continues.

**INTERROGATORY NO. 19**

For each product Microsoft contends practices the asserted claims of the Microsoft Counterclaim Patents, state, completely and in detail, each and every fact concerning any efforts taken, with respect to each of the Microsoft Counterclaim Patents, to comply with 35 U.S.C. §

287, including, but not limited to, complying with the marking provisions of 35 U.S.C. § 287, including stating the date on which You allege You first gave notice to Motorola that Motorola was allegedly infringing the patent.

**RESPONSE TO INTERROGATORY NO. 19**:

In addition to and without limiting the foregoing General Objections, which are incorporated by reference as though fully set forth herein, Microsoft objects to this Interrogatory on the grounds that, to the extent it calls for Microsoft to identify "each and every fact concerning any efforts taken" it is overly broad, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence.  Microsoft objects to this Interrogatory to the extent that it constitutes multiple interrogatories and causes Motorola to exceed the number of interrogatories permitted under the Federal Rules. Microsoft further objects to this Interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity against disclosure.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Microsoft responds as follows:  although investigation continues, Microsoft currently believes that it did not mark any of the Microsoft Products.  Microsoft reserves the right to supplement its response to this Interrogatory as discovery continues.

**INTERROGATORY NO. 20**

Describe in detail all facts and circumstances that support or otherwise relate to Microsoft's claim for damages for alleged infringement of the Microsoft Counterclaim Patents, including, any and all licenses, offers to license, or attempts to license any of the Microsoft Counterclaim Patents, the demand for the patented product, the absence or presence of any and all allegedly non-infringing substitutes, the manufacturing and marketing capacity to exploit the demand, and the amount of profit Microsoft would have made and, for each such patent that Microsoft contends it is entitled to recover damages, state the economic connection between the invented feature and the accused products and all facts, documents, and/or witnesses Microsoft relies upon in support of its contention(s), and all facts, documents and/or witnesses Microsoft relies upon to show that the patent-related feature is the basis for customer demand.

56

**RESPONSE TO INTERROGATORY NO. 20**:

In addition to and without limiting the foregoing General Objections, which are incorporated by reference as though fully set forth herein, Microsoft objects to this Interrogatory on the grounds that, to the extent it calls for Microsoft to describe "all facts and circumstances relating to," it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Microsoft objects to this Interrogatory to the extent that it constitutes multiple interrogatories and causes Motorola to exceed the number of interrogatories permitted under the Federal Rules.  Microsoft further objects to this Interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity against disclosure.  Microsoft objects to this Interrogatory as premature at this early stage of the litigation and to the extent that it calls for expert opinions and legal conclusions prior to the court-established time for exchanging expert discovery.  Microsoft also objects to this Interrogatory as premature insofar as discovery has just begun, and Motorola has not produced any of the requested, non-privileged documents, materials or other information which can provide the factual basis for, at least in part, the information requested in this Interrogatory.  In addition, none of the parties' witnesses have been deposed in this case.  Microsoft's investigation into the nature and extent of damages resulting from Motorola's infringement is ongoing, and Microsoft will produce a precise computation of damages after it has obtained sufficient information through fact and expert discovery.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Microsoft responds as follows:  Microsoft currently contends that it is entitled to damages adequate to compensate for Motorola's infringement, which is at least a reasonable royalty pursuant to 35 U.S.C. § 284 for Motorola's unauthorized use of Microsoft's patented

57

inventions.  The amount of a reasonable royalty is based on, among other things, a hypothetical negotiation between a willing licensor and a willing licensee at the time Motorola began infringing the Microsoft Counterclaim Patents.  Microsoft currently believes the following facts would apply to such a hypothetical negotiation:

(a) whether or not Microsoft has an established royalty for the patented inventions, for example, by other licenses granted at that royalty;

(b) royalties paid by Motorola or by others for the use of patents comparable to the Microsoft Counterclaim Patents;

(c) whether Microsoft has a policy of licensing or not licensing the Microsoft Counterclaim Patents;

(d) the commercial relationship between Microsoft and Motorola, for example, whether or not Microsoft and Motorola are competitors;

(e) whether being able to use the patented inventions helps in making sales of Motorola's other products;

(f) the profitability of the products made using the patented inventions, and whether or not the products are commercially successful or popular;

(g) the advantages and benefits of using the patented inventions over technology not covered by the Microsoft Counterclaim Patents;

(h) the extent to which Motorola has made use of the patented inventions and the value to Motorola of such use;

(i) whether or not there is a portion or percentage of the profit or selling price that is customarily paid for use of patented inventions comparable to the inventions claimed in the Microsoft Counterclaim Patents;

(j) the portion of the profit that is due to the patented  inventions, as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented features or improvements added by Motorola; and

(k) expert opinions as to what would be a reasonable royalty.

Furthermore, while a reasonable royalty is determined at the time the infringement began, the determination should also take into account actual and projected sales and profitability of the accused Motorola products.  In addition, Microsoft will produce documents from which further facts and information responsive to other aspects of this Interrogatory can be derived or ascertained pursuant to Rule 33(d).  These documents will be incorporated into this response by reference.  Microsoft reserves the right to supplement its response to this Interrogatory as discovery continues.

**INTERROGATORY NO. 21**

Identify the three (3) individuals who are most knowledgeable about Microsoft's current and past policies and practices concerning the licensing, assignment, or transfer of patents subject to a RAND commitment as set forth by an SDO.

**RESPONSE TO INTERROGATORY NO. 21**:

Withdrawn.

**INTERROGATORY NO. 22**

For each Microsoft product that implements an 802.11 Standard and/or an H.264 Standard, identify the three (3) individuals most knowledgeable about the reasons behind Microsoft's decision to implement such Standard(s).

**RESPONSE TO INTERROGATORY NO. 22**:

Withdrawn.

**INTERROGATORY NO. 23**

State the factual basis for any contention underlying Microsoft's claim that Motorola's October 21, 2010 and October 29, 2010 Letter constituted a breach or other violation of a commitment to license patents on reasonable and non-discriminatory terms.

59

**RESPONSE TO INTERROGATORY NO. 23**:

Withdrawn.

**INTERROGATORY NO. 24**

State the factual basis for any contention that Microsoft suffered damage to its business or property, or was irreparably injured, by reason of the October 21, 2010 Letter and/or October 29, 2010 Letter.

**RESPONSE TO INTERROGATORY NO. 24**:

Withdrawn.

**INTERROGATORY NO. 25**

State the factual basis for any contention that Microsoft, in determining whether to implement 802.11 Standard and/or H.264 Standard technologies in its products, specifically relied on any purported promises made by Motorola to any SDOs.

**RESPONSE TO INTERROGATORY NO. 25**:

Withdrawn.

**INTERROGATORY NO. 26**

Explain how a RAND and/or FRAND rate, including the corresponding royalty base, should be determined or otherwise established, including but not limited to any and all specific steps and/or relevant considerations.

**RESPONSE TO INTERROGATORY NO. 26**:

Withdrawn.

**INTERROGATORY NO. 27**

Explain how a royalty rate, including the corresponding royalty base, should be analyzed to determine whether it is fair, reasonable and/or non-discriminatory.

**RESPONSE TO INTERROGATORY NO. 27**:

Withdrawn.

**INTERROGATORY NO. 28**

Identify what Microsoft considers to be the range (including upper and lower bound) of a RAND rate for a license to an 802.11 Standard essential patent (either domestic or foreign), and the corresponding royalty base, for each of Microsoft's products or services that implement the 802.11 Standard.

**RESPONSE TO INTERROGATORY NO. 28**:

    Withdrawn.

**INTERROGATORY NO. 29**

    Identify what Microsoft considers to be range (including upper and lower bound)of a RAND rate for a license to an H.264 Standard essential patent (either domestic or foreign), and the corresponding royalty base, for each of Microsoft's products or services that implement the H.264 Standard.

**RESPONSE TO INTERROGATORY NO. 29**:

    Withdrawn.

**INTERROGATORY NO. 30**

    Identify every person to whom you have granted or offered a license to patents on RAND and/or FRAND terms, or otherwise predicated on a RAND and/or FRAND commitment.

**RESPONSE TO INTERROGATORY NO. 30**:

    Withdrawn.

Dated: March 30, 2011

Respectfully submitted,

/s/ Douglas I. Lewis/HW_____
Shane P. Cramer
Arthur W. Harrigan, Jr.
Christopher T. Wion
**DANIELSON HARRIGAN LEYH &
TOLLEFSON**
999 3rd Avenue, Suite 4400
Seattle, Washington 98104
Tel: (206) 623-1700
Fax: (206) 623-8717
Email: shanec@dhlt.com
arthurh@dhlt.com
chrisw@dhlt.com


David T. Pritikin
dpritikin@sidley.com
Richard A. Cederoth
rcederoth@sidley.com
Douglas I. Lewis
dilewis@sidley.com
John W. McBride
jwmcbride@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000

*Attorneys for Defendant
Microsoft Corporation*

*Of Counsel:*

T. Andrew Culbert
andycu@microsoft.com
David E. Killough
davkill@microsoft.com
**MICROSOFT CORPORATION**
1 Microsoft Way
Redmond, Washington  98052
Tel: (425) 703-8865

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing MICROSOFT CORPORATION'S OBJECTIONS

AND RESPONSES TO PLAINTIFFS' AMENDED FIRST SET OF INTERROGATORIES

(NOS. 1-30) were served upon the following counsel of record in the manner indicated on this

30th day of March 2011.

/s/ Herman F. Webley, Jr.

## SERVICE LIST

By Email

Lynn M. Engel
Philip S. McCune
**SUMMIT LAW GROUP**
315 5th Avenue South, Suite 100
Seattle, WA 98104
Telephone: (206) 676-7000
Fax: (206) 676-7001
Email: lynnem@summitlaw.com
Email: philm@summitlaw.com

Jesse J. Jenner
Anthony Pastor
Steven Pepe
**ROPES & GRAY LLP**
1211 Avenue of the Americas, 35th Floor
New York, NY 10036
Telephone: (212) 596-9000
Fax: (212) 596-9090
Email: jesse.jenner@ropesgray.com
Email: anthony.pastor@ropesgray.com
Email: steven.pepe@ropesgray.com

Norman H. Beamer
Gabrielle Elizabeth Higgins
Mark D. Rowland
**ROPES & GRAY LLP**
1900 University Avenue, 6th Floor
East Palo Alto, CA 94393-2284
Telephone: (650) 617-4000
Fax: (650) 617-4090
Email: norman.beamer@ropesgray.com
Email: gabrielle.higgins@ropesgray.com
Email: mark.rowland@ropesgray.com

Paul M. Schoenhard
**ROPES & GRAY LLP**
700 12th Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 508-4693
Email: paul.schoenhard@ropesgray.com