# EXHIBIT 1

Dow Jones Reprints: This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers, use the Order Reprints tool at the bottom of any article or visit www.djreprints.com

See a sample reprint in PDF format.          Order a reprint of this article now

## THE WALL STREET JOURNAL

WSJ.com

BOSS TALK    |    OCTOBER 3, 2010

# Ballmer Aims to Overcome Mobile Missteps

By NICK WINGFIELD

Microsoft Corp. has struggled for the past two years in the mobile-phone market. But CEO Steve Ballmer says his company finally has a compelling story.



Agence France-Presse/Getty Images

Microsoft CEO Steve Ballmer, shown last month, says the company 'missed a cycle' in the mobile market.

On Oct. 11, Microsoft and its partners plan to announce the initial wave of handsets that will use Windows Phone 7, a thoroughly overhauled version of the company's cellphone operating system. Mr. Ballmer believes the software will compete more effectively against Apple Inc.'s iPhone and Google Inc.'s Android operating system.

Microsoft has gotten more aggressive against Android in other ways. The company filed a lawsuit Friday against Motorola Inc., alleging the handset maker is infringing Microsoft patents in its Android phones. Motorola vowed to fight the suit.

Microsoft hopes the new phones based on its software erase the memories of missteps like Kin, a Microsoft-designed phone (based on different software) that was pulled from the market earlier this year after only two months. Microsoft's board docked Mr. Ballmer's bonus for the last fiscal year in part because of those missteps, the company disclosed last week in a regulatory filing.

A lot is riding on the new software. Mr. Ballmer is under pressure from investors to show Microsoft's bets in new high-growth markets like mobile can pay off. In an interview, conducted before Microsoft sued Motorola (and before Microsoft disclosed Mr. Ballmer's compensation for last year), he talked about how Microsoft plans to profit in the mobile market and the challenges of improving its share of the business. He also defended the traditional computer, and said he sees plenty of demand in the future for both for small- and larger-sized PC devices.

Excerpts:

WSJ: Your mobile business has gone through some pretty dramatic changes—new leadership, new software, a new way of working with handset partners. Why was that necessary?

15

Mr. Ballmer: In a sense, you could say we missed a cycle. We had some execution issues from an R&D perspective. In the time frame since the last significant release certainly the industry has moved, the technology has moved, the hardware has moved.



Microsoft plans to unveil a lineup of smartphones using the revamped version of its mobile operating system in early October. This launch is crucial for Microsoft, which has been battered by Apple's iPhone and Google's Android mobile software. Dow Jones Newswires' Roger Cheng reports.

We said, we've got to move forward, not shoot for yesterday. We've got to shoot ahead in a way that's delightful to users, accessible to developers and prioritize everything else we do around those elements.

WSJ: You chose not to develop your own handset. Can you talk about why that is?

Mr. Ballmer: In some sense you could say we did some level of development. We put out to our partners that we were going to build on a certain minimal so-called hardware chassis. So you could say we did some design work, but we're certainly not selling phones.

WSJ: Did you ever seriously think about selling your own handset?

Mr. Ballmer: I think about a lot of things. We're working with HTC, Samsung, LG and a variety of partners.

WSJ: Are you trying to protect Windows or do you see Windows Phone 7 as a big revenue opportunity in and of itself?

**Mr. Ballmer:** No, I see it as a big opportunity. There's the sale of the device, there's potential for search revenue on top of that and commerce revenue. There's potential for subscription revenue from various entertainment or productivity experiences.

Job One here will be selling a lot of phones, and if we sell a lot of phones, good things are going to happen.

WSJ: You're still charging a license fee for the software.
**Mr. Ballmer:** Sure.

WSJ: Is that difficult in an environment where Android is free?

Mr. Ballmer: Android has a patent fee. It's not like Android's free. You do have to license patents. HTC's signed a license with us and you're going to see license fees clearly for Android as well as for Windows.

WSJ: It doesn't seem like the license fee alone is a big financial opportunity for Microsoft.

Mr. Ballmer: It's one of the opportunities. One.

**WSJ:** It's one of them.

Mr. Ballmer: Look, anything that can sell in the tens to hundreds of millions is a big opportunity, and we see big opportunity. Even in the world today, there's a bunch of different models in place.

The up-front gross margin per device is less on a BlackBerry, but then they choose to make more on the back end through subscription fees whether it's a consumer or business phone. There's a lot of ways Google chooses to make a little less on the front end and want to make a little bit more on the back end.

WSJ: If you look at the market share stats, the Apple guys have done well, the Android guys have really surged and you guys have lost share the past couple years. How hard is it to make that ground back up?

Mr. Ballmer: We'll see. The fact that things have been pretty dynamic means that they're probably still pretty dynamic.

16

WSJ: So you think things could change quickly in terms of market share?

Mr. Ballmer: I said they can. There's no doubt that things have changed quickly, and at least in my undergraduate degree in math, that's called an existence proof. We know it's possible, we'll see what happens.

WSJ: The software on Windows Phones looks more different from the other phones than any of the other products that are out there [with a homescreen featuring a grid of colorful tiles, some of which change with fresh content from the Web]. Is it a risk bringing such a different user interface to consumers?

---

**Earlier: How Steve Ballmer Runs Meetings, Manages His Time**

**Steve Ballmer: How to Run Meetings**
1:32

For efficient meetings, distribute material in advance, give a brief summary and invite questions, says Microsoft's CEO.

**Steve Ballmer: Managing Your Time**
1:41

Microsoft's CEO creates a spreadsheet to budget time for the year, allocating time for meetings, travel and exploring new ideas.

---

Mr. Ballmer: Well, we've got to look forward. The market's still pretty nascent, but at the end of the day, I think the wall-of-icons [on iPhones and Android devices] is getting pretty complicated for people. That doesn't mean people don't want applications, though I'm not sure that's really the way the average person really wants to work.

Putting the activities that are most important in people's lives and the people that are most important in people's lives front-and-center through these hubs, I think we're going to capture hopefully the imagination of quite a good number of people.

WSJ: Will there be an immediate uptake of Windows Phones?

Mr. Ballmer: I don't make forecasts. It's partly how many we can get made, it's partly how much we can—can not only build a great product, but how does the word of mouth work, how effective is the advertising that we'll do?

WSJ: Do you think Windows phones will evolve into something that becomes a replacement for full-blown Windows on PCs?

Mr. Ballmer: It's a complicated subject. Do I think the world's going to live all on small-screen devices? No. I think people are going to have small-, medium-, and large-screen devices.

Will the technology that powers those be absolutely 100% radically all different? No, I think there will be a lot of shared technology across the devices. You don't want the same user interface, actually, on every one of these devices because they do have different modalities of operation. I think you're happy you've got a full-sized keyboard right now, for example.

I don't think any part of the market stops being healthy. What's the most popular smart device on the planet? It remains the PC. 350 million PCs sold this year, and smartphones might be—what?—a little less than half of that. So smartphones are very important, so are PCs.

| Revenue, in billions | | Profit, in billions | | Employees | | |
|---|---|---|---|---|---|---|
| 2010 | 2009 | 2010 | 2009 | 2010 | | 2009 |
| $62.48 | $58.44 | $18.76 | $14.57 | 88,596 | | 92,736 |

Microsoft Corp. (fiscal years end June 30)

Copyright 2011 Dow Jones & Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit www.djreprints.com

17

# EXHIBIT 2

 **MOTOROLA**

October 21, 2010

Horacio E. Gutierrez
Corporate Vice President and Deputy General Counsel
Microsoft Corporation
1 Microsoft Way
Redmond, Washington  98052

RE:    802.11 Patent License

Dear Mr. Gutierrez:

This letter is to confirm Motorola's offer to grant Microsoft a worldwide non-exclusive license under Motorola's portfolio of patents and pending applications having claims that may be or become Essential Patent Claims (as defined in section 6.1 of the IEEE bylaws) for a compliant implementation of the IEEE 802.11 Standards.  Enclosed is Motorola's 802.11 Annex which includes a non-exhaustive list of patents included in the license.  Motorola offers to license the patents under reasonable and non-discriminatory terms and conditions ("RAND"), including a reasonable royalty of 2.25% per unit for each 802.11 compliant product, subject to a grant back license under the 802.11 essential patents of Microsoft.  As per Motorola's standard terms, the royalty is calculated based on the price of the end product (e.g., each Xbox 360 product) and not on component software (e.g., Windows Mobile software).

As a convenience to its licensees, Motorola includes all the patents listed on its 802.11 Annex in the license, without regard to further proof of technical essentiality to the 802.11 standards.  If Microsoft is only interested in licensing some portion of this portfolio, Motorola is willing to enter into such a license, also on RAND terms.

Motorola will leave this offer open for 20 days.  Please confirm whether Microsoft accepts the offer.

Regards,

Kirk Dailey
Corporate Vice President
Intellectual Property

Enclosures

Motorola Mobility
Mobile Devices and Home
600 North U.S. Highway 45
Libertyville, Illinois 60048-1286
Telephone: 847.523-3029
Facsimile:  847.523-0314

MOTOROLA ESSENTIAL PROPERTIES
WLAN ANNEX

**802.11**

| | PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| 1 | 4860003 | DELUCA | COMMUNICATION SYSTEM HAVING A PACKET STRUCTURE FIELD | | | | | | |
| | | Republic of Korea | Granted | 90-700135 | 1989-5-4 | 95466 | 1996-2-7 | 95-13159 | 1995-10-25 |
| 2 | 5142533 | CRISLER | METHOD FOR CONTROLLING THE SCHEDULING OF MULTIPLE ACCESS TO COMMUNICATION RESOURCES | | | | | | |
| | | United States | Granted | 676653 | 1991-3-28 | 5142533 | 1992-8-25 | | |
| 3 | 5164986 | BRIGHT | FORMATION OF REKEY MESSAGES IN A COMMUNICATION SYSTEM | | | | | | |
| | | United States | Granted | 662582 | 1991-2-27 | 5164986 | 1992-11-17 | | |
| 4a | 5239294 | FLANDERS | METHOD FOR AUTHENTICATION AND PROTECTION OF SUBSCRIBERS IN TELECOMMUNICATION SYSTEMS | | | | | | |
| | | Canada | Granted | 2087433 | 1991-7-15 | 2087433 | 1998-11-17 | | |
| | | Japan | Granted | 3-512685 | 1991-7-15 | 2750638 | 1998-2-27 | 5-508274 | 1993-11-18 |
| | | Mexico | Granted | 9402259 | 1994-3-28 | 230119 | 2005-8-22 | | |
| | | Mexico | Granted | 9100231 | 1991-7-16 | 174912 | 1994-6-22 | | |
| | | United States | Granted | 08/295173 | 1994-8-22 | 5572193 | 1996-11-5 | | |

MOTOROLA ESSENTIAL PROPERTIES
WLAN ANNEX

| | PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| 4b | 5572193 | FLANDERS | METHOD FOR AUTHENTICATION AND PROTECTION OF SUBSCRIBERS IN TELECOMMUNICATION SYSTEMS | | | | | | |
| | | Canada | Granted | 2087433 | 1991-7-15 | 2087433 | 1998-11-17 | | |
| | | Japan | Granted | 3-512685 | 1991-7-15 | 2750638 | 1998-2-27 | 5-508274 | 1993-11-18 |
| | | Mexico | Granted | 9402259 | 1994-3-28 | 230119 | 2005-8-22 | | |
| | | Mexico | Granted | 9100231 | 1991-7-16 | 174912 | 1994-6-22 | | |
| | | United States | Granted | 08/295173 | 1994-8-22 | 5572193 | 1996-11-5 | | |
| 5 | 5272724 | SOLOMON | WIDEBAND SIGNAL SYNCHRONIZATION | | | | | | |
| | | United States | Granted | 07/695125 | 1991-5-3 | 5272724 | 1993-12-21 | | |
| 6 | 5319712 | FINKELSTEIN | METHOD AND APPARATUS FOR PROVIDING CRYPTOGRAPHIC PROTECTION OF A DATA STREAM IN A COMMUNICATION SYSTEM | | | | | | |
| | | Argentina | Granted | 329225 | 1994-8-26 | AR256050V1 | 2004-7-26 | | |
| | | Canada | Granted | 2146024 | 1994-7-11 | 2146024 | 1998-9-22 | | |
| | | Finland | Granted | 951945 | 1994-7-11 | 115016 | 2005-2-15 | | |
| | | France | Granted | 94922507.2 | 1994-7-11 | EP0671092 | 2000-9-27 | | |
| | | Great Britain | Granted | 94922507.2 | 1994-7-11 | EP0671092 | 2000-9-27 | | 1995-9-13 |
| | | Japan | Granted | 7-507561 | 1994-7-11 | 3983281 | 2007-7-13 | 3983281 | 2007-7-13 |
| | | Republic of Korea | Granted | 701584/1995 | 1994-7-11 | 145494 | 1998-4-30 | 95-704882 | 1995-11-20 |
| | | Sweden | Granted | 94922507.2 | 1994-7-11 | EP0671092 | 2000-9-27 | | |
| | | United States | Granted | 08/112780 | 1993-8-26 | 5319712 | 1994-6-7 | | |

802.11    2

MOTOROLA ESSENTIAL PROPERTIES
WLAN ANNEX

| | PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| 7 | 5329547 | LING | METHOD AND APPARATUS FOR COHERENT COMMUNICATION IN A SPREAD-SPECTRUM COMMUNICATION SYSTEM | | | | | | |
| | | Argentina | Granted | 327618 | 1994-3-11 | AR256002V1 | 2004-2-17 | | |
| | | Canada | Granted | 2134230 | 1994-2-16 | 2134230 | 1999-9-21 | | |
| | | China P.R. | Granted | 94190121.1 | 1994-2-16 | ZL94190121.1 | 1999-10-23 | CN1105510A | 1995-7-19 |
| | | Finland | Granted | 945336 | 1994-2-16 | 112010 | 2003-10-15 | | |
| | | France | Granted | 94913263.3 | 1994-2-16 | EP0643889 | 2002-6-5 | | |
| | | Georgia | Granted | 2061 | 1994-2-16 | 1765 | 1999-6-10 | | |
| | | Germany | Granted | 94913263.3 | 1994-2-16 | 69430720.3 | 2002-6-5 | | 1995-3-22 |
| | | Great Britain | Granted | 94913263.3 | 1994-2-16 | EP0643889 | 2002-6-5 | | 1995-3-22 |
| | | Italy | Granted | 94913263.3 | 1994-2-16 | EP0643889 | 2002-6-5 | | |
| | | Japan | Granted | 520006/1994 | 1994-2-16 | 3464002 | 2003-8-22 | 7-506713 | 1995-7-20 |
| | | Malaysia | Granted | PI94000441 | 1994-2-25 | MY-125586-A | 2006-8-30 | | |
| | | Mexico | Granted | 9401801 | 1994-3-11 | 185865 | 1997-9-8 | | |
| | | Poland | Granted | P-306002 | 1994-2-16 | 174713 | 1998-1-29 | | |
| | | Singapore | Granted | 9602270-2 | 1994-2-16 | 46295 | 1998-7-20 | 46295 | 1998-2-20 |
| | | Sweden | Granted | SE9403860-1 | 1994-2-16 | 520542 | 2003-7-22 | | |
| | | United States | Granted | 08/031258 | 1993-3-11 | 5329547 | 1994-7-12 | | |
| 8 | 5467398 | PIERCE | A METHOD OF MESSAGING IN A COM MUNICATION SYSTEM | | | | | | |
| | | France | Granted | 95925488.9 | 1995-7-5 | EP0717898 | 2002-3-20 | | |
| | | Germany | Granted | 95925488.9 | 1995-7-5 | 69525912.1 | 2002-3-20 | | 1996-6-26 |
| | | Great Britain | Granted | 9604489.6 | 1995-7-5 | 2296413 | 1999-4-28 | | 1996-6-26 |
| | | Netherlands | Granted | 95925488.9 | 1995-7-5 | EP0717898 | 2002-3-20 | | |
| | | Sweden | Granted | 95925488.9 | 1995-7-5 | EP0717898 | 2002-3-20 | | |
| | | United States | Granted | 08/270564 | 1994-7-5 | 5467398 | 1995-11-14 | | |

MOTOROLA ESSENTIAL PROPERTIES
WLAN ANNEX

| | PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| 9 | 5560021 | VOOK | A POWER MANAGEMENT AND PACKET DELIVERY METHOD FOR USE IN A WIRELESS LOCAL AREA | | | | | | |
| | | United States | Granted | 08/223497 | 1994-4-4 | 5560021 | 1996-9-24 | | |
| 10 | 5636223 | REARDON | METHODS OF ADAPTIVE CHANNEL ACCESS ATTEMPTS | | | | | | |
| | | United States | Granted | 08/495276 | 1995-6-27 | 5636223 | 1997-6-3 | | |
| | | United States | Filed | 90/010802 | 2009-12-28 | | | | |
| 11 | 5689563 | BROWN | METHOD AND APPARATUS FOR EFFICIENT REAL-TIME AUTHENTICATION AND ENCRYPTION IN A COMMUNICATION SYSTEM | | | | | | |
| | | United States | Granted | 08/457212 | 1995-6-1 | 5689563 | 1997-11-18 | | |
| 12 | 5822359 | BRUCKERT | A COHERENT RANDOM ACCESS CHANN EL INA SPREAD-SPECTRUM COMMUNI CATION SSYTEM AND METHOD | | | | | | |
| | | United States | Granted | 08/323944 | 1994-10-17 | 5822359 | 1998-10-13 | | |

802.11   4

MOTOROLA ESSENTIAL PROPERTIES
WLAN ANNEX

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |

| 13 5311516 | KUZNICKI | PAGING SYSTEM USING MESSAGE FR AGMENTATION TO REDISTRIBUTE TR AFFIC | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Australia | Granted | 55504/94 | 1993-11-8 | 669037 | 1996-9-10 | | |
| | Brazil | Granted | PI9307693-2 | 1993-11-8 | PI9307693-2 | 2003-8-5 | | |
| | Canada | Granted | 2149879 | 1993-11-8 | 2149879 | 1999-4-13 | | |
| | China P.R. | Granted | 93114975.4 | 1993-11-23 | 93114975.4 | 1999-8-21 | CN1109668A | 1995-10-4 |
| | Czech Republic | Granted | PV1323-95 | 1993-11-8 | 284895 | 1999-2-1 | | |
| | France | Granted | 93914116.4 | 1993-5-25 | EP0597085 | 2001-9-26 | | |
| | Germany | Granted | 93914116.4 | 1993-5-25 | 69330816.8 | 2001-9-26 | 597085 | 1994-5-18 |
| | Great Britain | Granted | 93914116.4 | 1993-5-25 | EP0597085 | 2001-9-26 | | 1994-5-18 |
| | Hungary | Granted | P9501525 | 1993-11-8 | 215.879 | 1993-11-8 | P9501525 | 1996-4-29 |
| | India | Granted | 1267/DEL/93 | 1993-11-11 | 188578 | 2003-7-25 | | |
| | Japan | Granted | 6-500697 | 1993-5-25 | 2715664 | 1997-11-7 | | 1995-1-19 |
| | Mexico | Granted | 93 7212 | 1993-11-18 | 186521 | 1997-10-20 | | |
| | New Zealand | Granted | 258023 | 1993-11-8 | 258023 | 1996-9-4 | | |
| | Poland | Granted | P-309244 | 1993-11-8 | 175118 | 1998-5-5 | | |
| | Republic of Korea | Granted | 702138/1995 | 1993-11-8 | 156303 | 1998-7-21 | | |
| | Russian Federation | Granted | 95113712 | 1993-11-8 | 2121239 | 1998-10-27 | | |
| | Singapore | Granted | 9606823-4 | 1993-5-25 | 46625 | 1998-11-16 | 46625 | 1998-2-20 |
| | Singapore | Granted | 9604727-9 | 1993-11-8 | 46443 | 1998-11-16 | 46443 | 1998-2-20 |
| | Sweden | Granted | 93914116.4 | 1993-5-25 | EP0597085 | 2001-9-26 | | |
| | Taiwan | Granted | 82109863 | 1993-11-23 | NI-68587 | 1995-3-13 | 21/34 | 1994-12-1 |
| | United States | Granted | 891503 | 1992-5-29 | 5282205 | 1994-1-25 | | |
| | United States | Granted | 980084 | 1992-11-23 | 5311516 | 1994-5-10 | | |
| | Vietnam | Granted | S-1196/95 | 1993-11-8 | 521 | 1998-5-11 | | |

802.11   5

MOTOROLA ESSENTIAL PROPERTIES
WLAN ANNEX

| | PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| 14 | 6069896 | BORGSTAHL | CAPABILITY ADDRESSABLE NETWORK AND METHOD THEREFOR | | | | | | |
| | | China P.R. | Granted | 97199757.8 | 1997-9-16 | ZL97199757.8 | 2003-1-10 | CN1238088A | 1999-12-8 |
| | | European Patent Convention | Filed | 97941075 | 1997-9-16 | | | EP0932960 | 1999-8-4 |
| | | Hong Kong | Granted | 103084.1 | 1997-9-16 | HK1024123 | 2004-1-16 | NA | 2004-1-16 |
| | | Japan | Granted | 10-518346 | 1997-9-16 | 4070818 | 2008-1-25 | | |
| | | United States | Granted | 09/104631 | 1998-6-25 | 6421347 | 2002-7-16 | | |
| | | United States | Granted | 09/443855 | 1999-11-19 | 6434159 | 2002-8-13 | | |
| | | United States | Granted | 09/432942 | 1999-11-3 | 6487180 | 2002-11-26 | | |
| | | United States | Granted | 09/432941 | 1999-11-3 | 6434158 | 2002-8-13 | | |
| | | United States | Granted | 09/454846 | 1999-12-7 | 6424623 | 2002-7-23 | | |
| | | United States | Granted | 08/729207 | 1996-10-15 | 6069896 | 2000-5-30 | | |
| 15 | 6331972 | HARRIS | PERSONAL DATA STORAGE AND TRANSACTION DEVICE SYSTEM AND METHOD | | | | | | |
| | | United States | Granted | 08/794312 | 1997-2-3 | 6331972 | 2001-12-18 | | |
| 16 | 5495482 | WHITE | VOICE AND DATA PACKET COMMUNICATION METHOD AND APPARATUS | | | | | | |
| | | United States | Granted | 07/719212 | 1991-6-21 | 5495482 | 1996-2-27 | | |
| 17 | 5357571 | BANWART | A METHOD FOR POINT-TO-POINT COMMUNICATIONS WITHIN SECURE COMMUNICATION SYSTEMS | | | | | | |
| | | China P.R. | Granted | 94107263 | 1994-6-30 | 94107263 | 2001-4-19 | 1105168A | 1995-7-12 |
| | | France | Granted | 9407921 | 1994-6-28 | 9407921 | 1997-1-24 | | |
| | | Great Britain | Granted | 9412846.9 | 1994-6-27 | 2279537 | 1997-9-10 | | 1995-1-4 |
| | | United States | Granted | 08/084119 | 1993-7-1 | 5357571 | 1994-10-18 | | |

MOTOROLA ESSENTIAL PROPERTIES
WLAN ANNEX

| | PATENT_NUM | INVENTOR | TITLE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |

| 18 | 5412722 | SHERLY | ENCRYPTION KEY MANAGEMENT | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | United States | Granted | 08/114528 | 1993-8-31 | 5412722 | 1995-5-2 | | |

802.11   7

MOTOROLA ESSENTIAL PROPERTIES
WLAN ANNEX

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |

| 19 | 5029183 | TYMES | PACKET DATA COMMUNICATION SYSTEM | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Australia | Granted | 59319/94 | 1994-4-6 | 667264 | 1996-7-23 | | |
| | Australia | Granted | 20899/92 | 1992-8-7 | 657149 | 1995-7-11 | | |
| | Australia | Granted | 59212/94 | 1994-3-30 | 671716 | 1996-12-24 | | |
| | Australia | Granted | 65305/99 | 1999-12-16 | 767841 | 2004-4-1 | | |
| | Austria | Granted | 91121301.5 | 1991-12-11 | EP0496986 | 1998-7-22 | | |
| | Austria | Granted | 91119370.4 | 1991-11-13 | EP0485996 | 1996-4-3 | | |
| | Austria | Granted | 91119559.2 | 1991-11-15 | EP0486973 | 1996-9-18 | | |
| | Austria | Granted | 94105049.4 | 1994-3-30 | 619663 | 2002-11-13 | | |
| | Austria | Granted | 92120347.7 | 1992-11-27 | EP0544337 | 1999-4-7 | | |
| | Belgium | Granted | 94105049.4 | 1994-3-30 | 619663 | 2002-11-13 | | |
| | Canada | Granted | 2355192 | 1991-9-12 | 2355192 | 2004-11-23 | | |
| | Canada | Granted | 2119334 | 1994-3-17 | 2119334 | 2006-11-7 | | |
| | Canada | Granted | 2218268 | 1997-10-15 | 2218268 | 2007-1-16 | | |
| | Canada | Granted | 2051212 | 1991-9-12 | 2051212 | 2002-1-15 | | |
| | Canada | Granted | 2186923 | 1996-10-1 | 2186923 | 1996-10-1 | | |
| | Canada | Granted | 2119335 | 1994-3-17 | 2119335 | 2002-3-5 | | |
| | Canada | Granted | 2506121 | 1996-10-1 | 2506121 | 2010-9-21 | | |
| | Canada | Filed | 2564287 | 1997-10-15 | | | | |
| | Canada | Granted | 2072345 | 1992-6-23 | 2072345 | 2004-5-4 | | |
| | China P.R. | Granted | 92102112.7 | 1992-4-1 | 92102112.7 | 1995-7-15 | | |
| | China P.R. | Granted | 92111155.X | 1992-9-30 | ZL92111155X | 2000-10-4 | | |
| | China P.R. | Granted | 99127543.8 | 1999-12-29 | 99127543.8 | 2004-3-31 | | |
| | Denmark | Granted | 94105049.4 | 1994-3-30 | 619663 | 2002-11-13 | | |
| | European Patent Convention | Filed | 4018229.7 | 1991-12-11 | | | EP1478116 | 2004-11-17 |
| | France | Granted | 92120347.7 | 1992-11-27 | EP0544337 | 1999-4-7 | | |
| | France | Granted | 91119370.4 | 1991-11-13 | EP0485996 | 1996-4-3 | | |

802.11   8

MOTOROLA ESSENTIAL PROPERTIES
WLAN ANNEX

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| | France | Granted | 91119559.2 | 1991-11-15 | EP0486973 | 1996-9-18 | | |
| | France | Granted | 96117282.2 | 1996-10-28 | EP0781005 | 2008-11-19 | EP0781005 | 1997-6-25 |
| | France | Granted | 6007713.8 | 1991-12-11 | EP1686730 | 2008-2-13 | | |
| | France | Granted | 99125057.2 | 1999-12-15 | EP1017197 | 2005-6-8 | | |
| | France | Granted | 91121301.5 | 1991-12-11 | EP0496986 | 1998-7-22 | | |
| | France | Granted | 94105048.6 | 1994-3-30 | 619662 | 2003-10-15 | | |
| | France | Granted | 94105049.4 | 1994-3-30 | 619663 | 2002-11-13 | | |
| | Germany | Granted | 99125057.2 | 1999-12-15 | 69925703.4 | 2005-6-8 | EP1017197 | |
| | Germany | Granted | 91119559.2 | 1991-11-15 | 69122214.2 | 1996-9-18 | | |
| | Germany | Granted | 91119370.4 | 1991-11-13 | 69118485.2 | 1996-4-3 | | |
| | Germany | Granted | 6007713.8 | 1991-12-11 | 69133592.3-08 | 2008-2-13 | | |
| | Germany | Granted | 91121301.5 | 1991-12-11 | 69129838.6 | 1998-7-22 | 496986 | |
| | Germany | Granted | 96117282.2 | 1996-10-28 | 69637751.9-08 | 2008-11-19 | EP0781005 | 1997-6-25 |
| | Germany | Granted | 92120347.7 | 1992-11-27 | 69228856.2 | 1999-4-7 | 544337 | |
| | Germany | Granted | 69431690.3 | 1994-3-30 | 619663 | 2002-11-13 | | |
| | Germany | Granted | 69433231.3 | 1994-3-30 | 69433231.3 | 2003-10-15 | 619662 | |
| | Great Britain | Granted | 99125057.2 | 1999-12-15 | EP1017197 | 2005-6-8 | | |
| | Great Britain | Granted | 91119370.4 | 1991-11-13 | EP0485996 | 1996-4-3 | 485996 | |
| | Great Britain | Granted | 91119559.2 | 1991-11-15 | EP0486973 | 1996-9-18 | | |
| | Great Britain | Granted | 6007713.8 | 1991-12-11 | EP1686730 | 2008-2-13 | | |
| | Great Britain | Granted | 91121301.5 | 1991-12-11 | EP0496986 | 1998-7-22 | | |
| | Great Britain | Granted | 92120347.7 | 1992-11-27 | EP0544337 | 1999-4-7 | | |
| | Great Britain | Granted | 96117282.2 | 1996-10-28 | EP0781005 | 2008-11-19 | EP0781005 | 1997-6-25 |
| | Great Britain | Granted | 94105048.6 | 1994-3-30 | 619662 | 2003-10-15 | | |
| | Great Britain | Granted | 94105049.4 | 1994-3-30 | 619663 | 2002-11-13 | | |
| | Ireland | Granted | 94105048.6 | 1994-3-30 | 619662 | 2003-10-15 | | |
| | Italy | Granted | 99125057.2 | 1999-12-15 | EP1017197 | 2005-6-8 | | |
| | Italy | Granted | 91119559.2 | 1991-11-15 | EP0486973 | 1996-9-18 | | |

MOTOROLA ESSENTIAL PROPERTIES
WLAN ANNEX

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| | Italy | Granted | 91121301.5 | 1991-12-11 | EP0496986 | 1998-7-22 | | |
| | Italy | Granted | 91119370.4 | 1991-11-13 | EP0485996 | 1996-4-3 | | |
| | Italy | Granted | 92120347.7 | 1992-11-27 | EP0544337 | 1999-4-7 | | |
| | Italy | Granted | 94105049.4 | 1994-3-30 | 619663 | 2002-11-13 | | |
| | Japan | Granted | 4-232534 | 1992-9-1 | 3583446 | 2004-8-6 | | |
| | Japan | Granted | 6-68847 | 1994-4-7 | 3515605 | 2004-1-23 | | 2004-1-23 |
| | Japan | Filed | 6-68846 | 1994-4-7 | | | | |
| | Japan | Granted | 8-284008 | 1996-10-25 | 4418537 | 2009-12-4 | | |
| | Japan | Granted | 03-346136 | 1991-12-27 | 3429782 | 2003-5-16 | | |
| | Netherlands | Granted | 94105049.4 | 1994-3-30 | 619663 | 2002-11-13 | | |
| | Republic of Korea | Granted | 0006993/1994 | 1994-4-2 | 290435 | 2001-3-2 | | |
| | Republic of Korea | Granted | 6992/94 | 1994-4-4 | 328796 | 2002-3-5 | | |
| | Spain | Granted | 91119370.4 | 1991-11-13 | EP0485996 | 1996-4-3 | | |
| | Spain | Granted | 91119559.2 | 1991-11-15 | EP0486973 | 1996-9-18 | | |
| | Spain | Granted | 91121301.5 | 1991-12-11 | EP0496986 | 1998-7-22 | | |
| | Spain | Granted | 92120347.7 | 1992-11-27 | EP0544337 | 1999-4-7 | | |
| | Spain | Granted | 94105049.4 | 1994-3-30 | 619663 | 2002-11-13 | | |
| | Sweden | Granted | 99125057.2 | 1999-12-15 | EP1017197 | 2005-6-8 | | |
| | Sweden | Granted | 94105049.4 | 1994-3-30 | 619663 | 2002-11-13 | | |
| | Switzerland | Granted | 94105049.4 | 1994-3-30 | 619663 | 2002-11-13 | | |
| | Taiwan | Granted | 83104968 | 1994-5-31 | 69060 | 1995-4-11 | | 1994-12-21 |
| | Taiwan | Granted | 80109543 | 1991-12-5 | NI-56950 | 1992-10-12 | | 1992-6-1 |
| | United States | Granted | 08/183069 | 1994-1-18 | 5479441 | 1995-12-26 | | |
| | United States | Granted | 08/661731 | 1996-6-12 | 5646389 | 1997-7-8 | | |
| | United States | Granted | 90/007742 | 2005-9-30 | 5479441C1 | 2008-6-24 | | |
| | United States | Granted | 09/338744 | 1999-6-23 | 7358857 | 2008-4-15 | | |
| | United States | Granted | 09/222126 | 1998-12-29 | 6580700 | 2003-6-17 | | |

MOTOROLA ESSENTIAL PROPERTIES
WLAN ANNEX

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| | United States | Granted | 07/923771 | 1992-8-3 | 5401944 | 1995-3-28 | | |
| | United States | Granted | 07/799172 | 1991-11-27 | 5280498 | 1994-1-18 | | |
| | United States | Granted | 08/549051 | 1995-10-27 | 5815811 | 1998-9-29 | | |
| | United States | Granted | 07/923776 | 1992-8-3 | 5393965 | 1995-2-28 | | |
| | United States | Granted | 08/344737 | 1994-11-23 | 5668803 | 1997-9-16 | | |
| | United States | Granted | 08/747034 | 1996-11-8 | 6002918 | 1999-12-14 | | |
| | United States | Granted | 08/411289 | 1995-3-27 | 5866888 | 1999-2-2 | | |
| | United States | Granted | 08/044648 | 1993-4-8 | 5528621 | 1996-6-18 | | |

802.11   11

MOTOROLA ESSENTIAL PROPERTIES
WLAN ANNEX

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 20  5479441 | KRAMER | PACKET DATA COMMUNICATION SYSTEM | | | | | | |
| | Australia | Granted | 59319/94 | 1994-4-6 | 667264 | 1996-7-23 | | |
| | Australia | Granted | 20899/92 | 1992-8-7 | 657149 | 1995-7-11 | | |
| | Australia | Granted | 59212/94 | 1994-3-30 | 671716 | 1996-12-24 | | |
| | Australia | Granted | 65305/99 | 1999-12-16 | 767841 | 2004-4-1 | | |
| | Austria | Granted | 91121301.5 | 1991-12-11 | EP0496986 | 1998-7-22 | | |
| | Austria | Granted | 91119370.4 | 1991-11-13 | EP0485996 | 1996-4-3 | | |
| | Austria | Granted | 91119559.2 | 1991-11-15 | EP0486973 | 1996-9-18 | | |
| | Austria | Granted | 94105049.4 | 1994-3-30 | 619663 | 2002-11-13 | | |
| | Austria | Granted | 92120347.7 | 1992-11-27 | EP0544337 | 1999-4-7 | | |
| | Belgium | Granted | 94105049.4 | 1994-3-30 | 619663 | 2002-11-13 | | |
| | Canada | Granted | 2355192 | 1991-9-12 | 2355192 | 2004-11-23 | | |
| | Canada | Granted | 2119334 | 1994-3-17 | 2119334 | 2006-11-7 | | |
| | Canada | Granted | 2218268 | 1997-10-15 | 2218268 | 2007-1-16 | | |
| | Canada | Granted | 2051212 | 1991-9-12 | 2051212 | 2002-1-15 | | |
| | Canada | Granted | 2186923 | 1996-10-1 | 2186923 | 1996-10-1 | | |
| | Canada | Granted | 2119335 | 1994-3-17 | 2119335 | 2002-3-5 | | |
| | Canada | Granted | 2506121 | 1996-10-1 | 2506121 | 2010-9-21 | | |
| | Canada | Filed | 2564287 | 1997-10-15 | | | | |
| | Canada | Granted | 2072345 | 1992-6-23 | 2072345 | 2004-5-4 | | |
| | China P.R. | Granted | 92102112.7 | 1992-4-1 | 92102112.7 | 1995-7-15 | | |
| | China P.R. | Granted | 92111155.X | 1992-9-30 | ZL92111155X | 2000-10-4 | | |
| | China P.R. | Granted | 99127543.8 | 1999-12-29 | 99127543.8 | 2004-3-31 | | |
| | Denmark | Granted | 94105049.4 | 1994-3-30 | 619663 | 2002-11-13 | | |
| | European Patent Convention | Filed | 4018229.7 | 1991-12-11 | | | EP1478116 | 2004-11-17 |
| | France | Granted | 92120347.7 | 1992-11-27 | EP0544337 | 1999-4-7 | | |
| | France | Granted | 91119370.4 | 1991-11-13 | EP0485996 | 1996-4-3 | | |

802.11    12

MOTOROLA ESSENTIAL PROPERTIES
WLAN ANNEX

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| | France | Granted | 91119559.2 | 1991-11-15 | EP0486973 | 1996-9-18 | | |
| | France | Granted | 96117282.2 | 1996-10-28 | EP0781005 | 2008-11-19 | EP0781005 | 1997-6-25 |
| | France | Granted | 99125057.2 | 1999-12-15 | EP1017197 | 2005-6-8 | | |
| | France | Granted | 6007713.8 | 1991-12-11 | EP1686730 | 2008-2-13 | | |
| | France | Granted | 91121301.5 | 1991-12-11 | EP0496986 | 1998-7-22 | | |
| | France | Granted | 94105048.6 | 1994-3-30 | 619662 | 2003-10-15 | | |
| | France | Granted | 94105049.4 | 1994-3-30 | 619663 | 2002-11-13 | | |
| | Germany | Granted | 99125057.2 | 1999-12-15 | 69925703.4 | 2005-6-8 | EP1017197 | |
| | Germany | Granted | 91119559.2 | 1991-11-15 | 69122214.2 | 1996-9-18 | | |
| | Germany | Granted | 91119370.4 | 1991-11-13 | 69118485.2 | 1996-4-3 | | |
| | Germany | Granted | 6007713.8 | 1991-12-11 | 69133592.3-08 | 2008-2-13 | | |
| | Germany | Granted | 91121301.5 | 1991-12-11 | 69129838.6 | 1998-7-22 | 496986 | |
| | Germany | Granted | 96117282.2 | 1996-10-28 | 69637751.9-08 | 2008-11-19 | EP0781005 | 1997-6-25 |
| | Germany | Granted | 92120347.7 | 1992-11-27 | 69228856.2 | 1999-4-7 | 544337 | |
| | Germany | Granted | 69431690.3 | 1994-3-30 | 619663 | 2002-11-13 | | |
| | Germany | Granted | 69433231.3 | 1994-3-30 | 69433231.3 | 2003-10-15 | 619662 | |
| | Great Britain | Granted | 99125057.2 | 1999-12-15 | EP1017197 | 2005-6-8 | | |
| | Great Britain | Granted | 91119370.4 | 1991-11-13 | EP0485996 | 1996-4-3 | 485996 | |
| | Great Britain | Granted | 91119559.2 | 1991-11-15 | EP0486973 | 1996-9-18 | | |
| | Great Britain | Granted | 6007713.8 | 1991-12-11 | EP1686730 | 2008-2-13 | | |
| | Great Britain | Granted | 91121301.5 | 1991-12-11 | EP0496986 | 1998-7-22 | | |
| | Great Britain | Granted | 92120347.7 | 1992-11-27 | EP0544337 | 1999-4-7 | | |
| | Great Britain | Granted | 96117282.2 | 1996-10-28 | EP0781005 | 2008-11-19 | EP0781005 | 1997-6-25 |
| | Great Britain | Granted | 94105048.6 | 1994-3-30 | 619662 | 2003-10-15 | | |
| | Great Britain | Granted | 94105049.4 | 1994-3-30 | 619663 | 2002-11-13 | | |
| | Ireland | Granted | 94105048.6 | 1994-3-30 | 619662 | 2003-10-15 | | |
| | Italy | Granted | 99125057.2 | 1999-12-15 | EP1017197 | 2005-6-8 | | |
| | Italy | Granted | 91119559.2 | 1991-11-15 | EP0486973 | 1996-9-18 | | |

802.11   13

MOTOROLA ESSENTIAL PROPERTIES
WLAN ANNEX

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| | Italy | Granted | 91121301.5 | 1991-12-11 | EP0496986 | 1998-7-22 | | |
| | Italy | Granted | 91119370.4 | 1991-11-13 | EP0485996 | 1996-4-3 | | |
| | Italy | Granted | 92120347.7 | 1992-11-27 | EP0544337 | 1999-4-7 | | |
| | Italy | Granted | 94105049.4 | 1994-3-30 | 619663 | 2002-11-13 | | |
| | Japan | Granted | 4-232534 | 1992-9-1 | 3583446 | 2004-8-6 | | |
| | Japan | Granted | 6-68847 | 1994-4-7 | 3515605 | 2004-1-23 | | 2004-1-23 |
| | Japan | Filed | 6-68846 | 1994-4-7 | | | | |
| | Japan | Granted | 8-284008 | 1996-10-25 | 4418537 | 2009-12-4 | | |
| | Japan | Granted | 03-346136 | 1991-12-27 | 3429782 | 2003-5-16 | | |
| | Netherlands | Granted | 94105049.4 | 1994-3-30 | 619663 | 2002-11-13 | | |
| | Republic of Korea | Granted | 0006993/1994 | 1994-4-2 | 290435 | 2001-3-2 | | |
| | Republic of Korea | Granted | 6992/94 | 1994-4-4 | 328796 | 2002-3-5 | | |
| | Spain | Granted | 91119370.4 | 1991-11-13 | EP0485996 | 1996-4-3 | | |
| | Spain | Granted | 91119559.2 | 1991-11-15 | EP0486973 | 1996-9-18 | | |
| | Spain | Granted | 91121301.5 | 1991-12-11 | EP0496986 | 1998-7-22 | | |
| | Spain | Granted | 92120347.7 | 1992-11-27 | EP0544337 | 1999-4-7 | | |
| | Spain | Granted | 94105049.4 | 1994-3-30 | 619663 | 2002-11-13 | | |
| | Sweden | Granted | 99125057.2 | 1999-12-15 | EP1017197 | 2005-6-8 | | |
| | Sweden | Granted | 94105049.4 | 1994-3-30 | 619663 | 2002-11-13 | | |
| | Switzerland | Granted | 94105049.4 | 1994-3-30 | 619663 | 2002-11-13 | | |
| | Taiwan | Granted | 83104968 | 1994-5-31 | 69060 | 1995-4-11 | | 1994-12-21 |
| | Taiwan | Granted | 80109543 | 1991-12-5 | NI-56950 | 1992-10-12 | | 1992-6-1 |
| | United States | Granted | 08/183069 | 1994-1-18 | 5479441 | 1995-12-26 | | |
| | United States | Granted | 08/661731 | 1996-6-12 | 5646389 | 1997-7-8 | | |
| | United States | Granted | 90/007742 | 2005-9-30 | 5479441C1 | 2008-6-24 | | |
| | United States | Granted | 09/338744 | 1999-6-23 | 7358857 | 2008-4-15 | | |
| | United States | Granted | 09/222126 | 1998-12-29 | 6580700 | 2003-6-17 | | |

MOTOROLA ESSENTIAL PROPERTIES
WLAN ANNEX

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| | United States | Granted | 07/923771 | 1992-8-3 | 5401944 | 1995-3-28 | | |
| | United States | Granted | 08/549051 | 1995-10-27 | 5815811 | 1998-9-29 | | |
| | United States | Granted | 07/799172 | 1991-11-27 | 5280498 | 1994-1-18 | | |
| | United States | Granted | 07/923776 | 1992-8-3 | 5393965 | 1995-2-28 | | |
| | United States | Granted | 08/344737 | 1994-11-23 | 5668803 | 1997-9-16 | | |
| | United States | Granted | 08/747034 | 1996-11-8 | 6002918 | 1999-12-14 | | |
| | United States | Granted | 08/411289 | 1995-3-27 | 5866888 | 1999-2-2 | | |
| | United States | Granted | 08/044648 | 1993-4-8 | 5528621 | 1996-6-18 | | |
| 21  5519730 | JASPER | COMMUNICATION SIGNAL HAVING A TIME DOMAIN PILOT COMPONENT | | | | | | |
| | Australia | Granted | 24677/92 | 1992-8-14 | 663109 | 1996-1-16 | | |
| | Brazil | Granted | PI9105788-4 | 1991-5-17 | PI9105788-4 | 1999-7-17 | 1131 | 1992-8-4 |
| | Brazil | Granted | PI9205509-5 | 1992-8-14 | PI9205509-5 | 1999-8-25 | 1218 | 1994-4-5 |
| | Canada | Granted | 2064758-2 | 1991-5-17 | 2064758 | 1996-11-12 | | |
| | Canada | Granted | 2098011 | 1992-8-14 | 2098011 | 1999-6-22 | | |
| | China P.R. | Granted | 92110850.8 | 1992-9-24 | 44525 | 1998-10-24 | CN1072048A | 1993-5-12 |
| | Georgia | Granted | 2152 | 1992-8-14 | 1766 | 1999-6-6 | | |
| | Great Britain | Granted | 9312028.5 | 1992-8-14 | 2266645 | 1996-5-8 | | 1993-11-3 |
| | Hong Kong | Granted | 97102445.1 | 1997-12-16 | HK1000870 | 1998-5-1 | | |
| | India | Granted | 417/DEL/91 | 1991-5-14 | 180400 | 1998-12-18 | | |
| | Japan | Granted | 5-508377 | 1992-8-14 | 3455537 | 2003-7-25 | | |
| | Mexico | Granted | 9206164 | 1992-10-26 | 180732 | 1996-1-31 | | 1993-4-1 |
| | Republic of Korea | Granted | 92-700313 | 1991-5-17 | 137129 | 1998-2-3 | | |
| | Republic of Korea | Granted | 93-701966 | 1992-8-14 | 109964 | 1996-12-30 | 96-12169 | 1996-9-16 |
| | United States | Granted | 07/783289 | 1991-10-28 | 5519730 | 1996-5-21 | | |

MOTOROLA ESSENTIAL PROPERTIES
WLAN ANNEX

| | PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| 22 | 6236674 | MORELLI | TRANSCEIVER CONTROL WITH SLEEP MODE OPERATION | | | | | | |
| | | United States | Granted | 08/619797 | 1996-3-20 | 6236674 | 2001-5-22 | | |
| | | United States | Granted | 08/605914 | 1996-2-23 | 5838720 | 1998-11-17 | | |
| | | United States | Granted | 09/728564 | 2000-6-15 | 6978149 | 2005-12-20 | | |

MOTOROLA ESSENTIAL PROPERTIES
WLAN ANNEX

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 23  6404772 | BEACH | VOICE AND DATA WIRELESS COMMUNICATIONS NETWORK AND METHOD | | | | | | |
| | Australia | Granted | 2008207663 | 2008-9-1 | 2008207663 | 2009-6-25 | | |
| | Australia | Filed | 2008203424 | 2008-7-31 | | | | |
| | Australia | Granted | 45860/02 | 2001-7-27 | 781434 | 2005-9-8 | | |
| | Australia | Granted | 2008203425 | 2008-7-31 | 2008203425 | 2009-9-17 | | |
| | Brazil | Filed | PI0117231-0 | 2001-7-27 | | | | |
| | Brazil | Filed | PI0117232-8 | 2004-7-27 | | | | |
| | Brazil | Filed | PI0107091-6 | 2001-7-27 | | | | |
| | Brazil | Filed | PI0117230-1 | 2001-7-27 | | | | |
| | Canada | Filed | 2517821 | 2001-7-27 | | | | |
| | Canada | Filed | 2517832 | 2001-7-27 | | | | |
| | Canada | Granted | 2517825 | 2001-7-27 | 2517825 | 2009-12-1 | | |
| | Canada | Filed | 2389109 | 2001-7-27 | | | | |
| | European Patent Convention | Filed | 5018176.7 | 2001-7-27 | | | 1605635 | 2005-12-14 |
| | European Patent Convention | Filed | 5018175.9 | 2001-7-27 | | | EP1603279 | 2006-1-4 |
| | European Patent Convention | Filed | 5018174.2 | 2001-7-27 | | | 1605634 | 2005-12-14 |
| | Finland | Granted | 1955073 | 2001-7-27 | 1210830 | 2006-3-8 | | |
| | France | Granted | 1955073 | 2001-7-27 | 1210830 | 2006-3-8 | | |
| | Germany | Granted | 1955073 | 2001-7-27 | 60117800.9-08 | 2006-3-8 | | |
| | Great Britain | Granted | 1955073 | 2001-7-27 | 1210830 | 2006-3-8 | | |
| | Italy | Granted | 1955073 | 2001-7-27 | 1210830 | 2006-3-8 | WO02/11476 | |
| | Japan | Granted | 2005320965 | 2005-11-4 | 4177842 | 2008-8-29 | 2006054928 | 2006-2-23 |
| | Japan | Granted | 2005320966 | 2005-11-4 | 4209418 | 2009-1-14 | 2006087140 | 2006-2-23 |
| | Japan | Granted | 2002-515867 | 2001-7-27 | 4128445 | 2008-5-23 | 2004-505573 | 2004-2-19 |

MOTOROLA ESSENTIAL PROPERTIES
WLAN ANNEX

| PATENT_NUM | INVENTOR | TITLE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE | |
| | Republic of Korea | Granted | 10-2005-7023389 | 2005-12-6 | 799392 | 2008-1-23 | | | |
| | Republic of Korea | Granted | 10-2002-7003594 | 2001-7-27 | 796846 | 2008-1-15 | | | |
| | Republic of Korea | Granted | 10-2005-7023390 | 2005-12-6 | 754350 | 2007-8-27 | | | |
| | Republic of Korea | Granted | 10-2005-7023391 | 2005-12-6 | 754859 | 2007-8-28 | | | |
| | Sweden | Granted | 1955073 | 2001-7-27 | 1210830 | 2006-3-8 | | | |
| | United States | Filed | 10/033861 | 2001-12-27 | | | US20020054574A1 | 2002-5-9 | |
| | United States | Filed | 11/193521 | 2005-7-29 | | | US20050281235A1 | 2005-12-22 | |
| | United States | Filed | 11/192574 | 2005-7-29 | | | US20050281252A1 | 2005-12-22 | |
| | United States | Granted | 09/627092 | 2000-7-27 | 6404772 | 2002-6-11 | | | |
| | United States | Filed | 11/193772 | 2005-7-29 | | | US20060002378A1 | 2006-1-5 | |

802.11   18

MOTOROLA ESSENTIAL PROPERTIES
WLAN ANNEX

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |

| 24 6473449 | CAFARELLA | HIGH-DATA-RATE WIRELESS LOCAL AREA NETWORK | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Canada | Granted | 2176401 | 1995-2-3 | 2176401 | 2003-7-8 | | |
| | China P.R. | Granted | 95191641.6 | 1995-2-3 | ZL95191641.6 | 2002-4-24 | | |
| | China P.R. | Granted | 1136147.6 | 1996-8-15 | ZL01136147.6 | 2009-4-29 | | |
| | India | Granted | 114/MAS/95 | 1995-1-31 | 188220 | 1995-1-31 | | |
| | Indonesia | Granted | P-950270 | 1995-3-17 | ID0008776 | 2002-9-10 | | |
| | Japan | Granted | 2002-329562 | 1995-2-3 | 3532556 | 2004-3-12 | 2003-168999 | 2003-6-13 |
| | Japan | Granted | 521825/1995 | 1995-2-3 | 3406319 | 2003-3-7 | | |
| | Malaysia | Granted | PI 95000226 | 1995-1-27 | MY-114861-A | 2003-2-28 | | |
| | Malaysia | Granted | PI20014245 | 1995-1-27 | MY-127750-A | 2006-12-29 | | |
| | Taiwan | Granted | 84100724 | 1995-1-27 | NI-073357 | 1996-1-10 | 84100724 | 1995-9-1 |
| | United States | Granted | 09/487395 | 2000-1-18 | 6473449 | 2002-10-29 | | |
| | United States | Granted | 08/369778 | 1994-12-30 | 5809060 | 1998-9-15 | | |
| | United States | Granted | 09/048651 | 1998-3-26 | 6075812 | 2000-6-13 | | |

MOTOROLA ESSENTIAL PROPERTIES
WLAN ANNEX
802.11n

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| 25  7143333 | BLANKENSHIP | METHOD AND APPARATUS FOR ENCODING AND DECODING DATA | | | | | | |
| | Brazil | Filed | 0514179-6 | 2005-8-3 | | | 1952 | 2008-6-3 |
| | China P.R. | Granted | 200580026914.4 | 2005-8-3 | ZL200580026914.4 | 2010-9-15 | CN101032082A | 2007-9-5 |
| | European Patent Convention | Filed | 5778444.9 | 2005-8-3 | | | 1790081 | 2007-5-30 |
| | India | Filed | 410/KOLNP/2007 | 2005-8-3 | | | | |
| | Japan | Granted | 2007-525672 | 2005-8-3 | 4516602 | 2010-5-21 | 4516602 | 2010-8-4 |
| | Republic of Korea | Granted | 10-2007-7003244 | 2005-8-3 | 10-884698 | 2009-2-13 | | |
| | Russian Federation | Granted | 2007107953 | 2005-8-3 | 2370886 | 2009-10-20 | | |
| | United States | Granted | 11/004359 | 2004-12-3 | 7143333 | 2006-11-28 | US-2006-0031744-A1 | 2006-2-9 |
| 26  7493548 | NIMBALKER | METHOD AND APPARATUS FOR ENCODING AND DECODING DATA | | | | | | |
| | United States | Granted | 11/275937 | 2006-2-6 | 7493548 | 2009-2-17 | US20070220395A1 | 2007-9-20 |

MOTOROLA ESSENTIAL PROPERTIES
WLAN ANNEX

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |

27  7165205    BLANKENSHIP   METHOD AND APPARATUS FOR ENCODING AND DECODING DATA

| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
|---|---|---|---|---|---|---|---|---|
| | Canada | Granted | 2564395 | 2005-5-11 | 2564395 | 2009-7-7 | | |
| | China P.R. | Filed | 200580008388.9 | 2005-5-11 | | | CN1934789A | 2007-3-21 |
| | European Patent Convention | Filed | 5747940.4 | 2005-5-11 | | | 1747613 | 2007-1-31 |
| | India | Filed | 2310/KOLNP/2006 | 2005-5-11 | | | | |
| | Israel | Filed | 177439 | 2005-5-11 | | | | |
| | Japan | Granted | 2007-502126 | 2005-5-11 | 4558037 | 2010-7-30 | 2007-529531 | 2007-9-6 |
| | Republic of Korea | Granted | 10-2006-7023750 | 2005-5-11 | 10-861893 | 2008-9-30 | | |
| | Taiwan | Filed | 94115484 | 2005-5-13 | | | 200611497 | 2006-4-1 |
| | United States | Granted | 10/874611 | 2004-6-23 | 7165205 | 2007-1-16 | US-2005-0257119-A1 | 2005-11-17 |

# EXHIBIT 3

 **MOTOROLA**

October 29, 2010

VIA FEDERAL EXPRESS

Horacio E. Gutierrez
Corporate Vice President and Deputy General Counsel
Microsoft Corporation
1 Microsoft Way
Redmond, Washington  98052

      RE:   H.264 Patent License

Dear Mr. Gutierrez,

      This letter is to confirm Motorola's offer to grant Microsoft a worldwide nonexclusive license under Motorola's portfolio of patents and pending applications covering the subject matter of ITU-T Recommendation H.264 ("H.264").  Enclosed is Motorola's H.264 Annex which includes a non-exhaustive list of patents included in the license.

      Motorola offers to license the patents on a non-discriminatory basis on reasonable terms and conditions ("RAND"), including a reasonable royalty of 2.25% per unit for each H.264 compliant product, subject to a grant back license under the H.264 patents of Microsoft, and subject to any Motorola commitments made to JVT in connection with an approved H.264 recommendation.  As per Motorola's standard terms, the royalty is calculated based on the price of the end product (e.g., each Xbox 360 product, each PC/laptop, each smartphone, etc.) and not on component software (e.g., Xbox 360 system software, Windows 7 software, Windows Phone 7 software, etc.).

      As a convenience to its licensees, Motorola includes all the patents listed on its H.264 Annex in the license, without regard to further proof of whether the patents cover the subject matter of H.264.  If Microsoft is only interested in licensing some portion of this portfolio, Motorola is willing to enter into such a license, also on RAND terms.

      Motorola will leave this offer open for 20 days. Please confirm whether Microsoft accepts the offer.

               Regards,

               Kirk W. Dailey
               Corporate V.P. Intellectual Property

Motorola, Mobility, Inc.
600 North US Highway 45, Libertyville, Illinois 60048
Telephone: 847-523-3029 Facsimile: 847-523-0314

MOTOROLA ESSENTIAL PROPERTIES
ITU-T-H.264

**ITU-T - H.264**

| | PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| 1a | 6005980 | EIFRIG | MOTION ESTIMATION AND COMPENSATION OF VIDEO OBJECT PLANES FOR INTERLACED DIGITAL VIDEO | | | | | | |
| | | Canada | Granted | 2230567 | 1998-2-25 | 2230567 | 2010-7-6 | | 1998-9-7 |
| | | Canada | Filed | 2702769 | 2010-4-30 | | | | |
| | | Mexico | Granted | 2009417 | 2002-9-26 | 245861 | 2007-5-16 | | |
| | | United States | Granted | 08/897847 | 1997-7-21 | 6005980 | 1999-12-21 | | |
| | | United States | Granted | 10/028007 | 2001-12-20 | RE38564 | 2004-8-10 | | |
| 1b | Re38564 | EIFRIG | MOTION ESTIMATION AND COMPENSATION OF VIDEO OBJECT PLANES FOR INTERLACED DIGITAL VIDEO | | | | | | |
| | | Canada | Granted | 2230567 | 1998-2-25 | 2230567 | 2010-7-6 | | 1998-9-7 |
| | | Canada | Filed | 2702769 | 2010-4-30 | | | | |
| | | Mexico | Granted | 2009417 | 2002-9-26 | 245861 | 2007-5-16 | | |
| | | United States | Granted | 08/897847 | 1997-7-21 | 6005980 | 1999-12-21 | | |
| | | United States | Granted | 10/028007 | 2001-12-20 | RE38564 | 2004-8-10 | | |

MOTOROLA ESSENTIAL PROPERTIES
ITU-T-H.264

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 2a 6980596 | WANG | MACROBLOCK LEVEL ADAPTIVE FRAME/FIELD CODING FOR DIGITAL VIDEO CONTENT | | | | | | |
| | Canada | Filed | 2468087 | 2002-11-21 | | | | |
| | European Patent Convention | Filed | 10182726.9 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182629.5 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182686.5 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182624.6 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182654.3 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 2804054.1 | 2002-11-21 | | | 1449385 | 2004-8-25 |
| | Japan | Filed | 2009-244955 | 2009-10-23 | | | | |
| | Japan | Filed | 2008-234061 | 2008-9-11 | | | 2008-295111 | 2008-12-4 |
| | Mexico | Granted | PA/a/2004/004724 | 2002-11-21 | 244982 | 2007-4-13 | | |
| | Norway | Filed | 20042544 | 2002-11-21 | | | | |
| | Republic of Korea | Filed | 10-2004-7007762 | 2002-11-21 | | | | |
| | United States | Granted | 10/301290 | 2002-11-20 | 6980596 | 2005-12-27 | US20030099292A1 | 2003-5-29 |
| | United States | Granted | 11/026394 | 2004-12-30 | 7310376 | 2007-12-18 | US20050123043A1 | 2005-6-9 |
| | United States | Granted | 11/027265 | 2004-12-30 | 7310374 | 2007-12-18 | US20050117650A1 | 2005-6-20 |
| | United States | Granted | 11/026395 | 2004-12-30 | 7421025 | 2008-9-2 | US20050123054A1 | 2005-6-9 |
| | United States | Granted | 11/027656 | 2004-12-30 | 7310377 | 2007-12-18 | US20050129113A1 | 2005-6-16 |

ITU-T - H.264   2

MOTOROLA ESSENTIAL PROPERTIES
ITU-T-H.264

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| | United States | Granted | 11/027869 | 2004-12-30 | 7817718 | 2010-10-19 | US2005014716 9A1 | 2005-7-7 |
| | United States | Granted | 11/027098 | 2004-12-30 | 7477690 | 2009-1-13 | US2005012305 1A1 | 2005-6-9 |
| | United States | Granted | 11/027626 | 2004-12-30 | 7310375 | 2007-12-18 | US2005011155 0A1 | 2005-5-26 |

MOTOROLA ESSENTIAL PROPERTIES
ITU-T-H.264

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| 2b  7421025 | WANG | MACROBLOCK LEVEL ADAPTIVE FRAME/FIELD CODING FOR DIGITAL VIDEO CONTENT | | | | | | |
| | Canada | Filed | 2468087 | 2002-11-21 | | | | |
| | European Patent Convention | Filed | 10182726.9 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182629.5 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182686.5 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182624.6 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182654.3 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 2804054.1 | 2002-11-21 | | | 1449385 | 2004-8-25 |
| | Japan | Filed | 2009-244955 | 2009-10-23 | | | | |
| | Japan | Filed | 2008-234061 | 2008-9-11 | | | 2008-295111 | 2008-12-4 |
| | Mexico | Granted | PA/a/2004/004724 | 2002-11-21 | 244982 | 2007-4-13 | | |
| | Norway | Filed | 20042544 | 2002-11-21 | | | | |
| | Republic of Korea | Filed | 10-2004-7007762 | 2002-11-21 | | | | |
| | United States | Granted | 10/301290 | 2002-11-20 | 6980596 | 2005-12-27 | US20030099292A1 | 2003-5-29 |
| | United States | Granted | 11/026394 | 2004-12-30 | 7310376 | 2007-12-18 | US20050123043A1 | 2005-6-9 |
| | United States | Granted | 11/027265 | 2004-12-30 | 7310374 | 2007-12-18 | US20050117650A1 | 2005-6-20 |
| | United States | Granted | 11/026395 | 2004-12-30 | 7421025 | 2008-9-2 | US20050123054A1 | 2005-6-9 |
| | United States | Granted | 11/027656 | 2004-12-30 | 7310377 | 2007-12-18 | US20050129113A1 | 2005-6-16 |

ITU-T - H.264   4

MOTOROLA ESSENTIAL PROPERTIES
ITU-T-H.264

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| | United States | Granted | 11/027869 | 2004-12-30 | 7817718 | 2010-10-19 | US2005014716 9A1 | 2005-7-7 |
| | United States | Granted | 11/027098 | 2004-12-30 | 7477690 | 2009-1-13 | US2005012305 1A1 | 2005-6-9 |
| | United States | Granted | 11/027626 | 2004-12-30 | 7310375 | 2007-12-18 | US2005011155 0A1 | 2005-5-26 |

.

MOTOROLA ESSENTIAL PROPERTIES
ITU-T-H.264

| PATENT_NUM | INVENTOR | TITLE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 2c | 7310375 | WANG | MACROBLOCK LEVEL ADAPTIVE FRAME/FIELD CODING FOR DIGITAL VIDEO CONTENT | | | | | | |
| | | Canada | Filed | 2468087 | 2002-11-21 | | | | |
| | | European Patent Convention | Filed | 10182726.9 | 2010-9-29 | | | | |
| | | European Patent Convention | Filed | 10182629.5 | 2010-9-29 | | | | |
| | | European Patent Convention | Filed | 10182686.5 | 2010-9-29 | | | | |
| | | European Patent Convention | Filed | 10182624.6 | 2010-9-29 | | | | |
| | | European Patent Convention | Filed | 10182654.3 | 2010-9-29 | | | | |
| | | European Patent Convention | Filed | 2804054.1 | 2002-11-21 | | | 1449385 | 2004-8-25 |
| | | Japan | Filed | 2009-244955 | 2009-10-23 | | | | |
| | | Japan | Filed | 2008-234061 | 2008-9-11 | | | 2008-295111 | 2008-12-4 |
| | | Mexico | Granted | PA/a/2004/004724 | 2002-11-21 | 244982 | 2007-4-13 | | |
| | | Norway | Filed | 20042544 | 2002-11-21 | | | | |
| | | Republic of Korea | Filed | 10-2004-7007762 | 2002-11-21 | | | | |
| | | United States | Granted | 10/301290 | 2002-11-20 | 6980596 | 2005-12-27 | US20030099292A1 | 2003-5-29 |
| | | United States | Granted | 11/026394 | 2004-12-30 | 7310376 | 2007-12-18 | US20050123043A1 | 2005-6-9 |
| | | United States | Granted | 11/027265 | 2004-12-30 | 7310374 | 2007-12-18 | US20050117650A1 | 2005-6-2 |
| | | United States | Granted | 11/026395 | 2004-12-30 | 7421025 | 2008-9-2 | US20050123054A1 | 2005-6-9 |
| | | United States | Granted | 11/027656 | 2004-12-30 | 7310377 | 2007-12-18 | US20050129113A1 | 2005-6-16 |

MOTOROLA ESSENTIAL PROPERTIES
ITU-T-H.264

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| | United States | Granted | 11/027869 | 2004-12-30 | 7817718 | 2010-10-19 | US20050147169A1 | 2005-7-7 |
| | United States | Granted | 11/027098 | 2004-12-30 | 7477690 | 2009-1-13 | US20050123051A1 | 2005-6-9 |
| | United States | Granted | 11/027626 | 2004-12-30 | 7310375 | 2007-12-18 | US20050111550A1 | 2005-5-26 |

.

ITU-T - H.264   7

MOTOROLA ESSENTIAL PROPERTIES
ITU-T-H.264

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |

| 2d | 7310374 | WANG | | MACROBLOCK LEVEL ADAPTIVE FRAME/FIELD CODING FOR DIGITAL VIDEO CONTENT | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Canada | Filed | 2468087 | 2002-11-21 | | | | |
| | | European Patent Convention | Filed | 10182726.9 | 2010-9-29 | | | | |
| | | European Patent Convention | Filed | 10182629.5 | 2010-9-29 | | | | |
| | | European Patent Convention | Filed | 10182686.5 | 2010-9-29 | | | | |
| | | European Patent Convention | Filed | 10182624.6 | 2010-9-29 | | | | |
| | | European Patent Convention | Filed | 10182654.3 | 2010-9-29 | | | | |
| | | European Patent Convention | Filed | 2804054.1 | 2002-11-21 | | | 1449385 | 2004-8-25 |
| | | Japan | Filed | 2009-244955 | 2009-10-23 | | | | |
| | | Japan | Filed | 2008-234061 | 2008-9-11 | | | 2008-295111 | 2008-12-4 |
| | | Mexico | Granted | PA/a/2004/004724 | 2002-11-21 | 244982 | 2007-4-13 | | |
| | | Norway | Filed | 20042544 | 2002-11-21 | | | | |
| | | Republic of Korea | Filed | 10-2004-7007762 | 2002-11-21 | | | | |
| | | United States | Granted | 10/301290 | 2002-11-20 | 6980596 | 2005-12-27 | US20030099292A1 | 2003-5-29 |
| | | United States | Granted | 11/026394 | 2004-12-30 | 7310376 | 2007-12-18 | US20050123043A1 | 2005-6-9 |
| | | United States | Granted | 11/027265 | 2004-12-30 | 7310374 | 2007-12-18 | US20050117650A1 | 2005-6-2 |
| | | United States | Granted | 11/026395 | 2004-12-30 | 7421025 | 2008-9-2 | US20050123054A1 | 2005-6-9 |
| | | United States | Granted | 11/027656 | 2004-12-30 | 7310377 | 2007-12-18 | US20050129113A1 | 2005-6-16 |

ITU-T - H.264   8

MOTOROLA ESSENTIAL PROPERTIES
ITU-T-H.264

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| | United States | Granted | 11/027869 | 2004-12-30 | 7817718 | 2010-10-19 | US2005014716 9A1 | 2005-7-7 |
| | United States | Granted | 11/027098 | 2004-12-30 | 7477690 | 2009-1-13 | US2005012305 1A1 | 2005-6-9 |
| | United States | Granted | 11/027626 | 2004-12-30 | 7310375 | 2007-12-18 | US2005011155 0A1 | 2005-5-26 |

MOTOROLA ESSENTIAL PROPERTIES
ITU-T-H.264

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| 2e 7310376 | WANG | MACROBLOCK LEVEL ADAPTIVE FRAME/FIELD CODING FOR DIGITAL VIDEO CONTENT | | | | | | |
| | Canada | Filed | 2468087 | 2002-11-21 | | | | |
| | European Patent Convention | Filed | 10182726.9 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182629.5 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182686.5 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182624.6 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182654.3 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 2804054.1 | 2002-11-21 | | | 1449385 | 2004-8-25 |
| | Japan | Filed | 2009-244955 | 2009-10-23 | | | | |
| | Japan | Filed | 2008-234061 | 2008-9-11 | | | 2008-295111 | 2008-12-4 |
| | Mexico | Granted | PA/a/2004/004724 | 2002-11-21 | 244982 | 2007-4-13 | | |
| | Norway | Filed | 20042544 | 2002-11-21 | | | | |
| | Republic of Korea | Filed | 10-2004-7007762 | 2002-11-21 | | | | |
| | United States | Granted | 10/301290 | 2002-11-20 | 6980596 | 2005-12-27 | US20030099292A1 | 2003-5-29 |
| | United States | Granted | 11/026394 | 2004-12-30 | 7310376 | 2007-12-18 | US20050123043A1 | 2005-6-9 |
| | United States | Granted | 11/027265 | 2004-12-30 | 7310374 | 2007-12-18 | US20050117650A1 | 2005-6-2 |
| | United States | Granted | 11/026395 | 2004-12-30 | 7421025 | 2008-9-2 | US20050123054A1 | 2005-6-9 |
| | United States | Granted | 11/027656 | 2004-12-30 | 7310377 | 2007-12-18 | US20050129113A1 | 2005-6-16 |

ITU-T - H.264   10

MOTOROLA ESSENTIAL PROPERTIES
ITU-T-H.264

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| | United States | Granted | 11/027869 | 2004-12-30 | 7817718 | 2010-10-19 | US20050147169A1 | 2005-7-7 |
| | United States | Granted | 11/027098 | 2004-12-30 | 7477690 | 2009-1-13 | US20050123051A1 | 2005-6-9 |
| | United States | Granted | 11/027626 | 2004-12-30 | 7310375 | 2007-12-18 | US20050111550A1 | 2005-5-26 |

MOTOROLA ESSENTIAL PROPERTIES
ITU-T-H.264

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 2f 7310377 | WANG | MACROBLOCK LEVEL ADAPTIVE FRAME/FIELD CODING FOR DIGITAL VIDEO CONTENT | | | | | | |
| | Canada | Filed | 2468087 | 2002-11-21 | | | | |
| | European Patent Convention | Filed | 10182726.9 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182629.5 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182686.5 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182624.6 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182654.3 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 2804054.1 | 2002-11-21 | | | 1449385 | 2004-8-25 |
| | Japan | Filed | 2009-244955 | 2009-10-23 | | | | |
| | Japan | Filed | 2008-234061 | 2008-9-11 | | | 2008-295111 | 2008-12-4 |
| | Mexico | Granted | PA/a/2004/004724 | 2002-11-21 | 244982 | 2007-4-13 | | |
| | Norway | Filed | 20042544 | 2002-11-21 | | | | |
| | Republic of Korea | Filed | 10-2004-7007762 | 2002-11-21 | | | | |
| | United States | Granted | 10/301290 | 2002-11-20 | 6980596 | 2005-12-27 | US20030099292A1 | 2003-5-29 |
| | United States | Granted | 11/026394 | 2004-12-30 | 7310376 | 2007-12-18 | US20050123043A1 | 2005-6-9 |
| | United States | Granted | 11/027265 | 2004-12-30 | 7310374 | 2007-12-18 | US20050117650A1 | 2005-6-20 |
| | United States | Granted | 11/026395 | 2004-12-30 | 7421025 | 2008-9-2 | US20050123054A1 | 2005-6-9 |
| | United States | Granted | 11/027656 | 2004-12-30 | 7310377 | 2007-12-18 | US20050129113A1 | 2005-6-16 |

ITU-T - H.264   12

MOTOROLA ESSENTIAL PROPERTIES
ITU-T-H.264

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| | United States | Granted | 11/027869 | 2004-12-30 | 7817718 | 2010-10-19 | US20050147169A1 | 2005-7-7 |
| | United States | Granted | 11/027098 | 2004-12-30 | 7477690 | 2009-1-13 | US20050123051A1 | 2005-6-9 |
| | United States | Granted | 11/027626 | 2004-12-30 | 7310375 | 2007-12-18 | US20050111550A1 | 2005-5-26 |

MOTOROLA ESSENTIAL PROPERTIES
ITU-T-H.264

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |

2g 7477690 WANG MACROBLOCK LEVEL ADAPTIVE FRAME/FIELD CODING FOR DIGITAL VIDEO CONTENT

| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
|---|---|---|---|---|---|---|---|---|
| | Canada | Filed | 2468087 | 2002-11-21 | | | | |
| | European Patent Convention | Filed | 10182726.9 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182629.5 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182686.5 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182624.6 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182654.3 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 2804054.1 | 2002-11-21 | | | 1449385 | 2004-8-25 |
| | Japan | Filed | 2009-244955 | 2009-10-23 | | | | |
| | Japan | Filed | 2008-234061 | 2008-9-11 | | | 2008-295111 | 2008-12-4 |
| | Mexico | Granted | PA/a/2004/004724 | 2002-11-21 | 244982 | 2007-4-13 | | |
| | Norway | Filed | 20042544 | 2002-11-21 | | | | |
| | Republic of Korea | Filed | 10-2004-7007762 | 2002-11-21 | | | | |
| | United States | Granted | 10/301290 | 2002-11-20 | 6980596 | 2005-12-27 | US20030099292A1 | 2003-5-29 |
| | United States | Granted | 11/026394 | 2004-12-30 | 7310376 | 2007-12-18 | US20050123043A1 | 2005-6-9 |
| | United States | Granted | 11/027265 | 2004-12-30 | 7310374 | 2007-12-18 | US20050117650A1 | 2005-6-20 |
| | United States | Granted | 11/026395 | 2004-12-30 | 7421025 | 2008-9-2 | US20050123054A1 | 2005-6-9 |
| | United States | Granted | 11/027656 | 2004-12-30 | 7310377 | 2007-12-18 | US20050129113A1 | 2005-6-16 |

ITU-T - H.264    14

MOTOROLA ESSENTIAL PROPERTIES
ITU-T-H.264

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| | United States | Granted | 11/027869 | 2004-12-30 | 7817718 | 2010-10-19 | US2005014716 9A1 | 2005-7-7 |
| | United States | Granted | 11/027098 | 2004-12-30 | 7477690 | 2009-1-13 | US2005012305 1A1 | 2005-6-9 |
| | United States | Granted | 11/027626 | 2004-12-30 | 7310375 | 2007-12-18 | US2005011155 0A1 | 2005-5-26 |

ITU-T - H.264    15

MOTOROLA ESSENTIAL PROPERTIES
ITU-T-H.264

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| 2h  7817718 | WANG | MACROBLOCK LEVEL ADAPTIVE FRAME/FIELD CODING FOR DIGITAL VIDEO CONTENT | | | | | | |
| | Canada | Filed | 2468087 | 2002-11-21 | | | | |
| | European Patent Convention | Filed | 10182726.9 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182629.5 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182686.5 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182624.6 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182654.3 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 2804054.1 | 2002-11-21 | | | 1449385 | 2004-8-25 |
| | Japan | Filed | 2009-244955 | 2009-10-23 | | | | |
| | Japan | Filed | 2008-234061 | 2008-9-11 | | | 2008-295111 | 2008-12-4 |
| | Mexico | Granted | PA/a/2004/004724 | 2002-11-21 | 244982 | 2007-4-13 | | |
| | Norway | Filed | 20042544 | 2002-11-21 | | | | |
| | Republic of Korea | Filed | 10-2004-7007762 | 2002-11-21 | | | | |
| | United States | Granted | 10/301290 | 2002-11-20 | 6980596 | 2005-12-27 | US20030099292A1 | 2003-5-29 |
| | United States | Granted | 11/026394 | 2004-12-30 | 7310376 | 2007-12-18 | US20050123043A1 | 2005-6-9 |
| | United States | Granted | 11/027265 | 2004-12-30 | 7310374 | 2007-12-18 | US20050117650A1 | 2005-6-2 |
| | United States | Granted | 11/026395 | 2004-12-30 | 7421025 | 2008-9-2 | US20050123054A1 | 2005-6-9 |
| | United States | Granted | 11/027656 | 2004-12-30 | 7310377 | 2007-12-18 | US20050129113A1 | 2005-6-16 |

MOTOROLA ESSENTIAL PROPERTIES
ITU-T-H.264

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| | United States | Granted | 11/027869 | 2004-12-30 | 7817718 | 2010-10-19 | US2005014716 9A1 | 2005-7-7 |
| | United States | Granted | 11/027098 | 2004-12-30 | 7477690 | 2009-1-13 | US2005012305 1A1 | 2005-6-9 |
| | United States | Granted | 11/027626 | 2004-12-30 | 7310375 | 2007-12-18 | US2005011155 0A1 | 2005-5-26 |
| 3  5235419 | KRAUSE | ADAPTIVE MOTION COMPENSATION USING A PLURALITY OF MOTION COMPENSATORS | | | | | | |
| | Canada | Granted | 2079862 | 1992-10-5 | 2079862 | 1998-4-7 | | 1993-4-25 |
| | France | Granted | 92117001.5 | 1992-10-6 | EP0538667 | 2001-9-19 | 538667 | 1993-4-28 |
| | Germany | Granted | 69232063.6-08 | 1992-10-6 | EP0538667 | 2001-9-19 | | |
| | Great Britain | Granted | 92117001.5 | 1992-10-6 | EP0538667 | 2001-9-19 | 538667 | 1993-4-28 |
| | Japan | Granted | 4-308068 | 1992-10-22 | 2875117 | 1999-1-14 | | 1999-3-24 |
| | Republic of Korea | Granted | 92-19684 | 1992-10-24 | 264507 | 2000-6-1 | | 2000-6-1 |
| | United States | Granted | 784474 | 1991-10-24 | 5235419 | 1993-8-10 | | |
| 4  6807317 | MATHEW | METHOD AND DECODER SYSTEM FOR REDUCING QUANTIZATION EFECTS OF A DECODED IMAGE | | | | | | |
| | United States | Granted | 10/280903 | 2002-10-25 | 6807317 | 2004-10-19 | US-2004-0081368-A1 | 2004-4-29 |
| | United States | Filed | 90/010798 | 2009-12-23 | | | | |
| 5  6836514 | GANDHI | METHOD FOR THE DETECTION AND RECOVERY OF ERRORS IN THE FRAME OVERHEAD OF DIGITAL VIDEO DECODING SYSTEMS | | | | | | |
| | United States | Granted | 09/901809 | 2001-7-10 | 6836514 | 2004-12-28 | US-2003-0053546-A1 | 2003-3-20 |

ITU-T - H.264   17

MOTOROLA ESSENTIAL PROPERTIES
ITU-T-H.264

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |

6a 7162094

| | INVENTOR | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | WANG | FREQUENCY COEFFICIENT SCANNING PATHS FOR CODING DIGITAL VIDEO CONTENT | | | | | | |
| | United States | Granted | 10/902330 | 2004-7-29 | 7088867 | 2006-8-8 | US-2005-0008239-A1 | 2005-1-13 |
| | United States | Granted | 10/902392 | 2004-7-29 | 6987888 | 2006-1-17 | US-2005-0002582-A1 | 2005-1-6 |
| | United States | Granted | 11/472035 | 2006-6-21 | 7177475 | 2007-2-13 | US20060262978A1 | 2006-11-23 |
| | United States | Granted | 10/902329 | 2004-7-29 | 7206454 | 2007-4-17 | US-2005-0008241-A1 | 2005-1-13 |
| | United States | Granted | 10/301076 | 2002-11-20 | 7162094 | 2007-1-9 | US-2004-0096109-A1 | 2004-5-20 |

6b 6987888

| | INVENTOR | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | WANG | FREQUENCY COEFFICIENT SCANNING PATHS FOR CODING DIGITAL VIDEO CONTENT | | | | | | |
| | United States | Granted | 10/902330 | 2004-7-29 | 7088867 | 2006-8-8 | US-2005-0008239-A1 | 2005-1-13 |
| | United States | Granted | 10/902392 | 2004-7-29 | 6987888 | 2006-1-17 | US-2005-0002582-A1 | 2005-1-6 |
| | United States | Granted | 11/472035 | 2006-6-21 | 7177475 | 2007-2-13 | US20060262978A1 | 2006-11-23 |
| | United States | Granted | 10/902329 | 2004-7-29 | 7206454 | 2007-4-17 | US-2005-0008241-A1 | 2005-1-13 |
| | United States | Granted | 10/301076 | 2002-11-20 | 7162094 | 2007-1-9 | US-2004-0096109-A1 | 2004-5-20 |

MOTOROLA ESSENTIAL PROPERTIES
ITU-T-H.264

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 8  5376968 | KRAUSE | ADAPTIVE COMPRESSION OF DIGITAL VIDEO DATA USING DIFFERENTIAL MODES SUCCH AS PCM AND DPCM | | | | | | |
| | Australia | Granted | 57708/94 | 1994-3-9 | 663671 | 1996-2-20 | | 1995-10-12 |
| | Canada | Granted | 2118668 | 1994-3-9 | 2118668 | 1998-12-22 | | 1994-9-12 |
| | France | Granted | 94103640.2 | 1994-3-10 | EP0615384 | 2000-9-20 | 615384 | 2000-9-20 |
| | Germany | Granted | 69425919.5 | 1994-3-10 | EP0615384 | 2000-9-20 | DE69425919T2 | 2000-9-20 |
| | Great Britain | Granted | 94103640.2 | 1994-3-10 | EP0615384 | 2000-9-20 | 615384 | 2000-9-20 |
| | Ireland | Granted | 94103640.2 | 1994-3-10 | EP0615384 | 2000-9-20 | 615384 | 2000-9-20 |
| | Japan | Granted | 6-66545 | 1994-3-11 | 2945268 | 1999-6-25 | | |
| | Mexico | Granted | 9401802 | 1994-3-11 | 187606 | 1998-1-7 | | |
| | Netherlands | Granted | 94103640.2 | 1994-3-10 | EP0615384 | 2000-9-20 | 615384 | 2000-9-20 |
| | Norway | Granted | P940858 | 1994-3-10 | 311960 | 2002-2-18 | | |
| | Republic of Korea | Granted | 94-4658 | 1994-3-10 | 244827 | 1999-11-24 | | 1999-11-24 |
| | Spain | Granted | 94103640.2 | 1994-3-10 | EP0615384 | 2000-9-20 | 2152270 | 2001-2-1 |
| | Sweden | Granted | 94103640.2 | 1994-3-10 | EP0615384 | 2000-9-20 | 615384 | 2000-9-20 |
| | Taiwan | Granted | 82102154 | 1993-3-23 | NI-084114 | 1997-2-11 | | 1997-2-11 |
| | United States | Granted | 23251 | 1993-3-11 | 5376968 | 1994-12-27 | | |

ITU-T - H.264    19

MOTOROLA ESSENTIAL PROPERTIES
ITU-T-H.264

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| 9a 7769087 | WANG | PICTURE LEVEL ADAPTIVE FRAME/FIELD CODING FOR DIGITAL VIDEO CONTENT | | | | | | |
| | Canada | Filed | 2468086 | 2002-11-21 | | | | |
| | China P.R. | Filed | 200910254137.9 | 2009-12-3 | | | 101715138 | 2010-5-26 |
| | China P.R. | Filed | 200910254136.4 | 2009-12-3 | | | 101715128 | 2010-5-26 |
| | China P.R. | Filed | 200910254135.X | 2009-12-3 | | | 101715137 | 2010-5-26 |
| | China P.R. | Granted | 2827402.4 | 2002-11-21 | ZL02827402.4 | 2010-1-20 | 1615656 | 2005-5-11 |
| | China P.R. | Filed | 200910254134.5 | 2009-12-3 | | | 101715136 | 2010-5-26 |
| | European Patent Convention | Filed | 10182595.8 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182605.5 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182643.6 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10183042 | 2010-9-30 | | | | |
| | European Patent Convention | Filed | 2804044.2 | 2002-11-21 | | | 1459562 | 2004-9-22 |
| | Japan | Filed | 2003-548552 | 2002-11-21 | | | 2005-510984 | 2005-4-21 |
| | Mexico | Filed | MX/a/2008/001309 | 2008-1-28 | | | | |
| | Mexico | Filed | MX/a/2008/001308 | 2008-1-28 | | | | |
| | Mexico | Filed | MX/a/2008/001311 | 2008-1-28 | | | | |
| | Mexico | Filed | MX/a/2008/001312 | 2008-1-28 | | | | |
| | Mexico | Granted | PA/a/2004/004723 | 2002-11-21 | 253886 | 2008-1-28 | | |
| | Norway | Filed | 20042543 | 2002-11-21 | | | | |
| | Republic of Korea | Filed | 10-2010-7006173 | 2010-3-19 | | | 10-2010-0047321 | 2010-5-7 |
| | Republic of Korea | Filed | 10-2004-7007734 | 2002-11-21 | | | | |

MOTOROLA ESSENTIAL PROPERTIES
ITU-T-H.264

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| | United States | Granted | 11/027888 | 2004-12-30 | 7660353 | 2010-2-9 | US2005011765 1A1 | 2005-6-2 |
| | United States | Filed | 11/558207 | 2006-11-9 | | | US2007006480 1A1 | 2007-3-22 |
| | United States | Granted | 11/027110 | 2004-12-30 | 7769087 | 2010-8-3 | US2005011764 9A1 | 2005-6-2 |
| | United States | Filed | 11/027625 | 2004-12-30 | | | US2005015245 4A1 | 2005-7-14 |

ITU-T - H.264   21

MOTOROLA ESSENTIAL PROPERTIES
ITU-T-H.264

| PATENT_NUM | INVENTOR | TITLE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |

9b 7660353 | WANG | | PICTURE LEVEL ADAPTIVE FRAME/FIELD CODING FOR DIGITAL VIDEO CONTENT | | | | | |

| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
|---|---|---|---|---|---|---|---|---|
| | Canada | Filed | 2468086 | 2002-11-21 | | | | |
| | China P.R. | Filed | 200910254137.9 | 2009-12-3 | | | 101715138 | 2010-5-26 |
| | China P.R. | Filed | 200910254136.4 | 2009-12-3 | | | 101715128 | 2010-5-26 |
| | China P.R. | Filed | 200910254135.X | 2009-12-3 | | | 101715137 | 2010-5-26 |
| | China P.R. | Granted | 2827402.4 | 2002-11-21 | ZL02827402.4 | 2010-1-20 | 1615656 | 2005-5-11 |
| | China P.R. | Filed | 200910254134.5 | 2009-12-3 | | | 101715136 | 2010-5-26 |
| | European Patent Convention | Filed | 10182595.8 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182605.5 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10182643.6 | 2010-9-29 | | | | |
| | European Patent Convention | Filed | 10183042 | 2010-9-30 | | | | |
| | European Patent Convention | Filed | 2804044.2 | 2002-11-21 | | | 1459562 | 2004-9-22 |
| | Japan | Filed | 2003-548552 | 2002-11-21 | | | 2005-510984 | 2005-4-21 |
| | Mexico | Filed | MX/a/2008/001309 | 2008-1-28 | | | | |
| | Mexico | Filed | MX/a/2008/001308 | 2008-1-28 | | | | |
| | Mexico | Filed | MX/a/2008/001311 | 2008-1-28 | | | | |
| | Mexico | Filed | MX/a/2008/001312 | 2008-1-28 | | | | |
| | Mexico | Granted | PA/a/2004/004723 | 2002-11-21 | 253886 | 2008-1-28 | | |
| | Norway | Filed | 20042543 | 2002-11-21 | | | | |
| | Republic of Korea | Filed | 10-2010-7006173 | 2010-3-19 | | | 10-2010-0047321 | 2010-5-7 |
| | Republic of Korea | Filed | 10-2004-7007734 | 2002-11-21 | | | | |

ITU-T - H.264    22

MOTOROLA ESSENTIAL PROPERTIES
ITU-T-H.264

| PATENT_NUM | INVENTOR | TITLE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | COUNTRY | STATUS | Application Num | Application Date | Patent Number | Grant Date | PUB_NUM | PUB_DATE |
| | United States | Granted | 11/027888 | 2004-12-30 | 7660353 | 2010-2-9 | US2005011765 1A1 | 2005-6-2 |
| | United States | Filed | 11/558207 | 2006-11-9 | | | US2007006480 1A1 | 2007-3-22 |
| | United States | Granted | 11/027110 | 2004-12-30 | 7769087 | 2010-8-3 | US2005011764 9A1 | 2005-6-2 |
| | United States | Filed | 11/027625 | 2004-12-30 | | | US2005015245 4A1 | 2005-7-14 |

ITU-T - H.264    23

# EXHIBIT 4

**Microsoft**

June 14, 2011

Federal Trade Commission
Office of the Secretary
Room H-113 (Annex X)
600 Pennsylvania Avenue
Washington, DC  20580

Re:  Patent Standards Workshop, Project No. P11-1204

Dear Commissioners and FTC executive staff:

Microsoft appreciates the opportunity to provide comments in response to the Request for Comments and Announcement of Workshop on Standards-Setting Issues regarding "patent hold-up" in connection with standardization efforts.

At their most fundamental, technical standards are tools that promote efficiency and innovation by making it easier to create products and services that work together—or "interoperate"—better.  This is especially true in the information and communications technology (ICT) environment.  With new ICT solutions and services appearing in the market almost daily, often connected to one another by the Internet or other networks, interoperability has become a market imperative.  The development and implementation of standards is one of the ways in which the technology industry is able to meet consumer demand for interoperability.[1] By helping to enhance interoperability among products or services within a market, and being responsive to real marketplace needs, standards can help promote innovation, fuel market growth, and protect investments in new technologies.

Microsoft plays a dual role in standardization activities.  First, we actively contribute innovative technology to standardization related to computing hardware, software and associated devices, the Internet and its infrastructure, consumer electronics devices, and telecommunications systems.  Second, we are an active implementer of standards.  Microsoft supports a very large number of standards that are formulated by a broad diversity of standards-setting organizations (SSOs) in our products.  For example, Microsoft's Windows 7 operating

---

[1] Microsoft's commitment to standardization to help further interoperability is reflected in our Interoperability Principles, available at http://www.microsoft.com/interop/principles/default.mspx. Additional information about Microsoft's standards policies and activities can be found at: http://www.microsoft.com/standards/.

system supports more than sixty industry standards (by a conservative count).[2]  Ultimately, both of these roles are deeply informed by the market, and in particular by feedback on the way customers use ICT products and services in their day-to-day lives.

Because of this dual role as contributor and implementer, Microsoft takes a balanced approach to standards development and related intellectual property rights (IPR) issues.  We understand the particular needs and concerns of those contributing time, resources, and innovative technologies to the development of standards, but we are equally sensitive to the needs of those who are implementing the resulting standards in their products and services. Patents are of particular concern to Microsoft because Microsoft is perhaps the No. 1 target of patent infringement actions in the ICT industry (given the breadth of its product portfolio and large revenue).  Our involvement on both sides of the standards fence frames our perspective that a diverse standards ecosystem that supports multiple technologies is good for the U.S. and global economies.

Our comments in response to the RFC can be summarized as follows:

- Microsoft strongly supports President Obama's focus on technology and the promotion of innovation.  In looking at issues relating to the inclusion of IPR (primarily patent rights) in standards, it is critical to preserve and cultivate incentives to innovate.  In addition, the United States should promote respect for the value of IPR on a global basis, including the IPR reflected in standards.

- Government should take an inclusive view of SSOs' diverse IPR policies and not promote one approach over the other.

- Concerns about ―patent hold-up" should not extend to any bi-lateral business disagreement between two companies regarding proposed licensing terms.  These discussions typically pertain to a broader set of questions than just the proposed licensing terms for essential patent claims reading on a standard.  In addition, if

---

[2] A typical personal computer running Windows 7 will support more than 200 additional standards, facilitating compatibility among hardware components from various vendors and promoting interoperability between PCs and other computers.  These standards were developed by a broad range of SSOs with diverse processes and IPR policy approaches (including those that seek commitments to offer patent licenses on reasonable and non-discriminatory terms and conditions, whether with compensation or on a royalty-free basis).

2

the Government were to attempt to quasi-regulate RAND licensing terms, then they arguably should review the inter-play among all of the substantive terms (and not just the monetary component) for all aspects of patent licensing terms.  Yet that would likely be unworkable.

- Disclosure-based IPR policies help provide useful information as to which patent holders likely will have essential patent claims vis-à-vis the final standard, which enables parties to make an informed decision whether to engage in patent licensing negotiations and the scope of such discussions.

  o However, it is not possible for an SSO technical committee to have full and complete information regarding the patent rights implicated by a draft standard, especially those rights held by non-participants in the process. IPR policies ideally should take a balanced approach that does not unduly burden patent holders and encourages them to participate and contribute innovative technology.

- RAND-based IPR policies provide a flexible framework to help enable customized bi-lateral negotiations for patent licenses that generally are not limited to just the essential patent claims in connection with a standard.

- While almost all of the ICT industry stakeholders support policies that permit the voluntary and unilateral —"ex ante" disclosure of specific licensing terms by a patent holder, proposals for the U.S. Government to promote a mandatory —"ex ante" IPR policy approach or promote the group discussion of proffered licensing terms are not widely supported because such an approach is viewed as:

  o being of little value,

  o creating many practical inefficiencies and possible legal challenges, and

  o something that could be used internationally to undermine the value of patented technology that is included in standards used in other countries.

**In looking at issues relating to the inclusion of intellectual property in standards, it is critical to ensure that incentives to innovate are preserved**.

We strongly support President Obama and his Administration's focus on technology and the promotion of innovation. Innovation historically has been a catalyst for economic growth and the creation of jobs. The United States, in recognizing the need to preserve incentives for innovation through a healthy patent system and marketplace competition, has been and remains a global technology leader. It is therefore important to ensure that the treatment of patented technology in standards does not undermine incentives to continue to invest in new innovation in standardized technology areas.

As the Antitrust Division of the U.S. Department of Justice has observed:

The goal of policies involving IP, licensing, and standards should be to promote efficiency, just as it is with antitrust policy. . . . Static efficiency occurs when firms compete within an existing technology to streamline their methods, cut costs, and drive the price of a product embodying that technology down to something close to the cost of unit production. **Static efficiency is a powerful force for increasing consumer welfare, but an even greater driver of consumer welfare is dynamic efficiency, which results from entirely new ways of doing business. Economists now recognize that the gains from dynamic efficiency, also called "leapfrog" competition, can far outstrip the gains from incremental static improvements.** It follows that policymakers should pay particular attention to the impact of laws and enforcement decisions on dynamic efficiency."[3] (Emphasis added.)

In developing policy positions relating to standards, governments should pay special attention to the importance of promoting the dynamic efficiencies that arise from preserving incentives for innovation. Through balanced IPR policies that help make innovative technology available to implementers on reasonable terms, and that do not undercut the value of patented

---

[3] *See* Gerald F. Masoudi, Deputy Assistant Attorney Gen., Antitrust Div., U.S. Dep't of Justice, Address at the High-Level Workshop on Standardization, IP Licensing, and Antitrust, Tilburg Law & Economic Center, Tilburg University: Efficiency in Analysis of Antitrust, Standard Setting, and Intellectual Property 2–3 (Jan. 18, 2007), *available at* http://www.justice.gov/atr/public/speeches/220972.pdf.

4

70

technology or overly burden patent holders, standards can help to catalyze innovation by encouraging companies to contribute their innovative technology to collaborative standards-setting activities and to share their intellectual property with others via the standardization process.  Standards will not fulfill their salutary purposes if standards policies deter innovators from contributing patented technologies or investing in further innovation related to standardized technology.

In addition, the United States Government should continue to advocate for the fair treatment of patented technology in standards on a global basis.

**Government should take an inclusive view towards SSOs' diverse IPR policies and not promote one approach over another.**

Most SSOs have an IPR (or patent) policy that seeks to balance the rights and interests of their stakeholders by seeking commitments from participating patent holders that they will offer patent licenses for their essential patent claims on reasonable and non-discriminatory (RAND) terms and conditions.  Currently there is significant diversity with regard to how, and the detail with which, these policies are articulated by various SSOs.  This diversity is healthy and should be encouraged, and any articulation by the government of one or more preferred approaches should be avoided.  This diversity and breadth of SSOs has emerged as a result of market forces in response to varying business needs, and provides for flexibility, competition and choice.  No one SSO or standardization process necessarily produces —better" standards; the test of success and relevance of a standard is the extent to which it ultimately gets used in the marketplace. This view is widely supported by the ICT industry.[4]

The FTC should encourage SSOs to ensure that their IPR policies are clearly worded, publicly available, and easy to find.  Although many SSOs make their IPR policies easily available to the public on their websites, others make them difficult to find or available only to their members.  In addition, we support FTC efforts to encourage SSOs to make any patent

---

[4] *See, e.g.*, Comments submitted by the Information Technology Industry Council in response to a recent NIST Request for Information (—ITI encourages the US Government to embrace a variety of ICT standards and standards-setting processes, and avoid policy decisions that might discourage a broad diversity of approaches to ICT standardization. This diversity provides for choice, competition and flexibility that further enable the ICT sector to respond to a rapidly changing marketplace with new, innovative solutions.") (http://standards.gov/standards_gov/mastercomments030711.cfm).

5

declarations, letters of assurance, or other licensing information they receive from patent holders easily available to the public on their websites.  The information contained in IPR policies, and, if applicable, patent declarations, letters of assurance, or other licensing information is important to all stakeholders in the ICT industry, including current and potential SSO participants and standards implementers.

**The concept of "patent hold-up" should map to marketplace realities.**

The notion that "patent hold-up" is a substantial problem that should be addressed by government action seems to stem from a largely theoretical analysis of the situation.  If a patent holder can charge implementers more than a reasonable royalty because those implementers are (perhaps) "locked into" the standard, then is it not likely that it would take advantage of this opportunity?

We believe that this reasoning greatly over-simplifies—and obscures—the realities of standards-related patent licensing.  How any individual company will approach patent licensing will depend on many factors, such as:

- What is the company's primary business model implicated by the relevant standard?  Is it likely that the company will proactively seek patent licenses (either as a licensor, a licensee or both)?
- Who are the likely companies holding essential patent claims, and what are their business models, products and patent portfolios?
- What licensing or other agreements are already in place between the parties?
- If the parties decide to enter into an agreement, then what are all of the issues (including all of the IPR-related issues) that likely will be negotiated?
- Are there trade-offs that may be made with regard to royalty payments or other financial terms?
  - For example, there are companies who sometimes are willing to offer their essential patent claims to a particular standard free of charge, but they also include a defensive suspension clause that causes the free license in connection with these patent claims to terminate if the licensee commences litigation against the licensor on any grounds whatsoever.

6

As a result, we respectfully suggest that a simplified and theoretical approach to defining "patent hold-up" may not sufficiently map to complex marketplace realities.  It may pull in what are essentially routine business negotiations between two parties.  These negotiations almost always include considerations beyond the proposed licensing terms for just the essential claims in a standard (and just the royalty element of any such terms).  Many companies question whether these types of business negotiations should be labeled as "patent hold-up" and scrutinized by regulators.  We believe that there is an important difference between intentional or deceptive conduct in connection with patents that read on standards and routine bilateral disagreements over licensing terms for the use of patented technology.

In the former context, there seems to be a dearth of examples of actual patent hold-up with regard to the essential patent claims reading on a standard.  Microsoft has never been accused of patent hold-up in this regard, nor has it accused any other company of such behavior. This is not to say that Microsoft has never been a party to litigation where the parties disagree whether proffered licensing terms were consistent with the relevant patent licensing commitment (such as RAND).  When companies have such bilateral disagreements, it may make sense for them to seek resolution in the courts.  But such litigation is rarely limited to the proposed licensing terms for just the essential claims reading on a standard; typically such litigation is addressing other patent-related issues or even other business terms that the parties have been unable to reach agreement on.

Depending on their applicable business model, many companies largely use their patents vis-à-vis standards defensively.  Far from seeking to "hold up" implementers, these firms will not seek patent royalties at all in the ordinary course of business.  Rather, they will seek a patent license from an implementer only when that implementer has first challenged them on other patent infringement issues.

In addition, it is important to consider the healthy competition among different business models and how that influences debates regarding "patent hold-up" and whether there is a need to impose further restrictions on patent holders.  Some companies are largely innovators who predictably will seek a return on their investments in innovation through licensing their patents. Some product-based companies take a more nuanced position, often using their patents vis-à-vis standards defensively (as described above).  Still others have a significant consulting or

integration services focus, and they may benefit from having access to others' innovative technology in standards at a reduced cost if not for free.  The current RAND-based structure balances these different interests.  Proponents seeking to tilt that balance may largely be seeking reduced licensing costs and a related competitive advantage as opposed to solving a documented and widespread problem.[5]

## Disclosure-based IPR policies provide useful information regarding likely holders of essential patent claims.

There are hundreds of different SSO IPR policies and they vary significantly.  As a general matter, the IPR policies of most formal SSOs and many consortia are "disclosure-based". Under these types of IPR policies, participating companies generally are required (or encouraged) to disclose either (a) patents they hold that are likely to contain patent claims that will be essential to implementing the final standard, or (b) the fact that they likely hold such patents (but without identifying specific patents). The disclosing participant is then typically requested to declare its intention with regard to licensing such essential claims (such as RAND, RAND without a royalty, or "will not agree to offer RAND licenses").  If specific patents were

---

[5]  See remarks by Keith Mallinson (a long-standing research analyst and consultant in the telecommunications industry) at http://ipfinance.blogspot.com/2011/05/fruits-of-labour-not-windfall-gains-in.html:  "Regulatory price-setting in the arena of innovative technologies neither reflects the market reality of commercial negotiation nor is it related to the costs, efforts and technical or commercial risks involved in developing those technologies. Defining (F)RAND [fair, reasonable and non-discriminatory] according to an imposed pricing structure would severely limit the ability of licensors and licensees to negotiate bilateral commercial terms that reflect their respective positions and needs....

Further, minimizing the cost of licensed technologies may not result in a minimum cost solution.  In addition to providing higher performance and improved features, incorporating patented IP into a standard may actually reduce the cost of implementing the standard.  For example, patented IP might reduce the total cost of ownership to the end consumer of a product such as a mobile phone – including phone acquisition costs (with costs of design, development, bill of materials and assembly) and network service charges (reflecting costs of bandwidth acquisition, network equipment, operations, and maintenance). The impact of such cost reductions may far exceed any additional costs in licensing fees. Market forces are best at determining the value to be attributed to any input component in such a system, including technology licences.  Regulators should be careful to avoid favouring particular business models or making decisions on which part of the value chain deserves to make the greater profit, especially where dynamic innovation is concerned….

The principle of (F)RAND licensing has been broadly adopted to ensure that patent owners who contribute technology to standards agree to make licences available to their standards-essential IP to all comers on terms that are reasonable and free from unfair discrimination, while maintaining the ability to achieve adequate reward for their innovations.  There will at times be significant contention between the patent owner and implementer about what constitutes reasonable licensing terms, but this is to be expected as with commercial negotiation on any input cost component and has, for the most part, been readily resolved through bilateral negotiations.  In the rare instances where such negotiations have not been successful, contract law is applicable to the (F)RAND commitment and the courts are able to deal with such disputes…."

8

disclosed, then the licensing commitment will apply only to any claims in the identified patents that end up being essential vis-à-vis the final version of the standard.  In the case of a patent holder disclosing more generally that it likely will have essential claims, the licensing commitment generally will apply to any and all essential claims the patent holder has vis-à-vis the final standard.

A large number of SSOs, including ISO/IEC/ITU, CEN/CENELEC, ETSI, AFNOR, Ecma International, OMG (Object Management Group), PWG (Printer Working Group), TTA (Telecommunications Technology Association of Korea), TTC (Telecommunication Technology Committee in Japan) and ANSI-accredited SSOs (such as the IEEE, TIA, ATIS and ASTM), have some form of disclosure-based IPR policy.

Some SSOs have adopted "participation-based" IPR policies. Under this type of IPR policy, a participating company undertakes a RAND (with or without a royalty) licensing commitment for any essential claims it may have vis-à-vis the final standard just by joining the SSO or by joining a technical committee of the SSO.  Standardization efforts under a participation-based IPR policy typically are scoped very narrowly.  They also often include safeguards for participants to opt out or exclude certain essential claims by disclosing the patents containing those essential claims and stating that the automatic commitment will not apply to them.  This provides some protection to participating patent holders in the event a competitor contributes their technology to the standardization effort, either inadvertently or in an effort to obtain access to such technology under the relevant IPR policy framework.

With "participation-based" IPR policies, sometimes the automatic commitments are RAND-RF (free of charge but with other RAND terms), as was the case with the popular USB standard and the W3C standards.  Some examples of SSOs that use a participation-based approach are Bluetooth SIG, GS1, BIAN (Banking Industry Architecture Network), DVB, Infiniband Association, MIPI Alliance, SD Card Association, Serial ATA International Organization, SIGIS, WiFi Alliance, WiMAX Forum and the W3C.

Typically, because SSOs want to encourage disclosures as early as possible during the development of a standard, disclosure is not limited to just known essential claims because those claims can only be accurately identified when the standard is almost final and the draft text is stable.  So there often is a trade-off in terms of getting more information early on in the process

9

(recognizing that some portion of it likely will end up not being relevant), as opposed to having most (if not all) of the disclosed information be accurate and directly applicable to the final standard.

In some ways, the value of a disclosure-based policy is finding out which patent holders likely will have essential patent claims vis-à-vis the final standard.  Companies then typically consider that information in the context of its affected product(s) and make decisions, including whether to approach any of those patent holders to discuss licensing terms.  What they decide to do depends on a number of different factors, such as whether the parties have existing agreements that may be applicable, the patent portfolio positioning between the parties (which is not a consideration based on just the total number of patents but more likely focused on whether they have patents that read on the other's products, and which products), the companies' applicable business models (which may suggest whether or not the patent holder will proactively seek a license from implementers) and past experiences with each other.  In addition, these considerations will of necessity include patents that go beyond just the essential patent claims relating to a standard.  If an implementer is going to enter into a license agreement with the disclosing patent holder, such implementer will want to protect its entire product(s) and will need to consider a broader (and perhaps cross-) licensing arrangement.

The RFC also seeks feedback with regard to the fact that most disclosure-based policies do not require participating patent holders to conduct patent searches, nor do they bind non-participants.

As a practical matter, a requirement to conduct patent searches would be a strong disincentive for patent holders to participate in standards-setting activities and contribute their technology so that it can be used by others.  Many U.S.-based firms have hundreds of employees participating in hundreds of different SSO engagements, and thousands of patents in their portfolios.  The cost and resources needed to conduct multiple patent searches vis-à-vis a developing standard spread across a significant number of standards engagements would be very significant.[6]

---

[6] Assessing whether a single patent reads on a particular version of a draft standard could cost tens of thousands of dollars.  If patent searches were required in order for patent holders to make definitive disclosures, then there would be a need to conduct several such searches in connection with a single draft standard as it evolves.  Multiply that by hundreds of potential standards and the ongoing costs becomes prohibitive.

This is why the ICT industry sought clarification from the FTC in connection with the *Dell* consent decree.[7]  The FTC clarified that the consent decree was not intended to support a ―disclose it or lose it" approach to patent disclosures in the standards context and that Dell's failure to disclose was ―not inadvertent".  Similarly, back in the early 1990's the European Telecommunications Standards Institute (ETSI) proposed an IPR policy pursuant to which a patent holder's failure to make timely and complete disclosures would result in arguably compulsory licensing on ETSI-sanctioned terms (which were perceived to permit very low royalties).  Working with U.S.-based trade associations, the U.S. Government intervened and the ETSI policy was modified to be more consistent with other disclosure-based SSO policies.

It is difficult to envision how an SSO IPR policy would apply to non-participants.  It is estimated that there are at least 1,000 ICT SSOs around the world.  Any absolute disclosure policy would create a huge burden on ICT companies to police all of those developing standards, conduct interminable patent searches, and make definitive disclosures or risk losing valuable patent rights.  When the Standardization Administration of China (SAC) released its draft *Interim Provisions on Formulation and Revision of Patent-related National Standards* for public comment on November 2, 2009, a number of U.S.-based trade associations provided comments seeking clarification that the proposed IPR policy would only cover those patent holders who were participating in the development of the relevant Chinese National Standard (and, for example, not patent holders who may have made a licensing commitment in connection with an ISO/IEC-related standard being modified during the Chinese standardization process).

There rarely will be a complete and accurate portrait of the patents that contain essential claims with regard to a particular draft standard.  This is not surprising.  Standards are often lengthy technical documents.  Many of the essential patents are not included as the result of a formal contribution or a technology ―bake off" pursuant to which the technical committee makes a decision among competing patented technologies.  Engineers create a technical document that, not surprisingly, affects a range of patented technology.  That said, there still seems to be only limited patent infringement litigation based solely on essential patent claims vis-à-vis a standard where the essential patents were unknown to the participants at the time the participants selected among competing proposals to include in the standard.  And those cases, although very limited in

---

[7] *In re Dell Computer Corp.*, 121 F.T.C. 616 (May 20, 1996).

number, typically have involved allegations that the patent owner intentionally failed to disclose its patents in violation of the applicable SSO IPR policy.

**RAND licensing commitments provide a balanced and flexible approach to patent licensing.**

RAND is a time-tested and effective approach to licensing commitments.  Like other ─reasonableness" standards, it does not dictate specific licensing terms, but it does provide flexibility across a diverse range of situations.  As mentioned above, companies make decisions about whether to initiate licensing discussions and, if so, what considerations beyond just the essential claims vis-à-vis the final standard will be included.  The negotiation associated with a standards-related patent license typically is no different from any general patent licensing discussion and will involve trade-offs on all of the terms and conditions.

While there is no exhaustive list of traditional RAND licensing terms, in addition to a possible compensation element, such terms may include a field-of-use restriction, reciprocity, non-sublicenseability, defensive suspension and other common patent licensing considerations.  Whether specific articulations of these types of terms are RAND can be a matter of some debate.  For example, if a standard acquires market power (most don't), a patent owner who requires broad grant backs in the form of reciprocity or broad defensive termination provisions in exchange for its license of essential patent claims to implement such standard arguably may not be offering a RAND license.  With regard to defensive termination, if the standard has market power and if the ─trigger" for suspension is much broader than the actual license grant, it is not clear that the term is RAND.  For example, if the defensive suspension is triggered by the implementer asserting any type of IPR against the patent holder (or even any litigation claim on any topic), then arguably the patent holder is receiving a free-of-charge cross-license to the implementer's entire IPR portfolio in exchange for a license to just the patent holder's essential claims vis-à-vis a standard.  As with other ─reasonableness" tests, these and other questions can be resolved through litigation in the relatively rare circumstances where business discussions fail (and the risks for each side inherent in such litigation of course inform the business discussions).

Proposals to somehow reduce ─RAND" to some uniform formula could undermine the value of current practices and restrict some of the flexibility that helps to enable current licensing practices and protect the defensive value of contributed patent technology.  There are many

existing patent licenses that include access to essential patent claims vis-à-vis one or more standards that reflect a customized solution between the two parties that takes into consideration all of the licensing terms (and not just the financial component).

In addition, the existence of a RAND commitment to offer patent licenses should not preclude a patent holder from seeking preliminary injunctive relief or commencing an action in the International Trade Commission just because the patent holder has made a licensing commitment to offer RAND-based licenses in connection with a standard.  Whether such relief is available should be assessed under the current legal framework in the applicable jurisdiction, which often is premised substantially on the specific facts and circumstances at issue.  Any uniform declaration that such relief would not be available if the patent holder has made a commitment to offer a RAND license for its essential patent claims in connection with a standard may reduce any incentives that implementers might have to engage in good faith negotiations with the patent holder.

With regard to the issue whether the licensing commitment should be binding on the successor-in-interest of the implicated patent rights, we believe that there is a fairly broad consensus that this outcome would be ideal.  The issue is how to effectuate this in practice.  If a patent holder makes a specific patent disclosure to a SSO, then it should be able to track that commitment and bind the transferee as part of the transfer agreement.

This becomes more challenging when the patent holder has made a more general licensing commitment that it will license any essential claims that it has (and when the patent holder has made such general commitments to many SSOs).  In order to bind a transferee, such patent holder would have to conduct patent searches to determine what patent claims were implicated by the commitment(s).  Many patent holders that use their patents largely for defensive purposes vis-à-vis standards do not want to undertake this significant expense.  This is especially true when the patent holder has made a commitment to license on RAND terms on a royalty-free (or compensation-free) basis.  If such patent holders are required to conduct patent searches to determine what they are giving away for free, then they may be less willing to agree to a RAND-RF licensing commitment.  We believe that SSOs should seek to help address this issue in their IPR policy, but it is not realistic to expect that they alone can fully solve this issue.

13

**Proposals for the U.S. Government to promote a mandatory "ex ante" IPR policy approach are not supported by the broader ICT industry because such an approach is viewed as (a) being of little value, (b) creating many practical inefficiencies and possible legal challenges, and (c) something that could be used internationally to possibly undermine the value of patented technology that is included in standards.**

Almost all disclosure-based IPR policies address (a) the extent to which patent holders have to disclose whether they have any patent claims that likely will be essential to implement the standard under development and/or (b) the choices such patent holders have with regard to the licensing commitment they can make vis-à-vis those claims (such as a commitment to license under RAND terms and conditions).

If a patent holder makes a disclosure about its essential patent claims, potential implementers can decide when (or even whether) to contact the patent holder to obtain information about actual license terms.  Depending on when the patent holder makes such a patent disclosure, this may occur *ex ante* (before the standard is finalized).  Any negotiations typically are conducted bilaterally and outside the SSO.

"*Ex ante*" IPR policies typically refers to those disclosure-based policies that either permit or require patent holders to disclose specific licensing terms, including royalty rates, to the standards body before the standard is finalized.  While almost all ICT industry stakeholders (including Microsoft) support policies that permit the voluntary and unilateral "ex ante" disclosure of specific licensing terms by a patent holder, there are differing views with regard to proposed IPR policies that would <u>mandate</u> the "ex ante" disclosure of specific licensing terms and/or permit group discussions of those terms.  Advocates of mandatory "ex ante" IPR policies argue that this is necessary to prevent patent holders from "holding up" implementers and extracting onerous terms after the standard is completed and everyone is attempting to implement the standard as written.  Opponents highlight that "patent hold-up" occurs rarely when viewed across thousands of ICT standards, and such policies would unduly burden the standardization process and create many unnecessary practical inefficiencies and potential legal problems.

14

There are literally thousands of ICT standards in existence today.  Hundreds of these standards have been referenced in eGovernment Interoperability Frameworks,[8] with no apparent documented problems relating to IPR issues.[9]  There have been a relatively small number of noteworthy litigations that have been commenced when two parties have been unable to agree on whether proffered licensing terms were RAND and/or otherwise met the requirements of the applicable SSO's IPR policy.  These are very much the exception, not the rule.  Most SSOs review and regularly update their IPR policy to address broad issues, but they often are reluctant to add substantial burdens to the process to address relatively rare, potential "one-off" disputes that are fact-specific and can be litigated if the two parties cannot come to an agreement.

The debate over mandatory "ex ante" IPR policies has been underway for more than a decade.  During this time, many ICT SSOs and their members with disclosure-based IPR policy approaches have thoughtfully considered whether to adopt such a policy, and with the exception of the VITA standards body, they largely have rejected adopting such an approach.  The principle reasons typically include the following considerations:

- A mandatory "ex ante" IPR policy would require patent holders to disclose proposed licensing terms for their essential patent claims.  Most stakeholders have observed that, for various reasons, such a disclosure is of little practical value.  When a patent holder discloses to a SSO that it likely holds essential patent claims, a prospective implementer makes a decision whether to approach this patent holder to discuss possible licensing terms (and that decision is dependent on a number of factors).  Any implementer actually deciding to negotiate a license will rarely, if ever, want a license for just the patent holder's essential patent claims in connection with that standard.  An implementer seeking a license likely will want to negotiate a bi-lateral, customized agreement that will include other IPR (including related patent claims that it may be infringing) that impact its entire product or at least those product features that relate to and utilize the standard.  The license also likely will reflect a range of possible trade-offs between the two parties based on their respective IPR portfolios and other business

---

[8]   *See* "eGovernment Interoperability:  A comparative analysis of 30 countries" by CSTransform at http://www.cstransform.com/white_papers/InteropAnalysisV2.0.pdf.

[9]   The existence of competing standards also can help reduce the threat of possible patent "hold up".

opportunities.  So adding a requirement to an SSO IPR policy to the effect that disclosing patent holders must prepare and submit licensing terms for just its essential patent claims creates an obligation and burden on patent holders that arguably adds little or no value to the standardization process.

- Standards technical committees make hundreds of technical decisions and, as has been much noted, the process is often lengthy.  Experienced stakeholders have noted that injecting licensing terms into the standardization process will inevitably delay the process further still without improving the technical value of the standard.

- Some patent holders make RAND licensing commitments largely for defensive purposes to further their own freedom of action, such as seeking to protect their products that implement standards from patent infringement claims asserted by others. As a result, quite often they will not proactively seek to obtain licenses from implementers.  It has been observed during stakeholder debates on the "ex ante" issue that requiring these patent holders to prepare patent licensing terms unnecessarily creates burdens and complications for them without adding value to the standardization effort.

- There is little evidence that "patent hold-up" in the standards context is a real problem. Most patent holders also are implementers, whether with regard to the same standard or in terms of the broader ICT standards landscape, and thus share an interest in maintaining reasonable royalty rates.  This ecosystem generates few IPR-related disputes as a result.

- Under a mandatory "ex ante" IPR policy, there is a substantial risk—even a likelihood—of buyer cartel or group boycott behavior.  An SSO obviously is a forum for participants to discuss the development of technical standards.  Those discussions are likely to extend to price if price terms are disclosed in connection with the offer of technology to a standard-setting effort.  The technical committee members may explicitly or implicitly pressure a disclosing patent holder to modify its proposed licensing terms or risk not having its technology included in the standard.  This is especially true if the IPR policy permits the group discussion of proposed licensing terms as part of the standardization process.  For this reason, mandatory "ex ante" IPR

16

policy approaches also may discourage key patent holders from participating in the process and contributing their valuable patented technology.  They also could create disincentives to invest further in innovation in that technology area.

Most of the SSOs and their stakeholders that have considered these proposals over the years have determined that there are only a limited number of situations where —patent hold-up" takes place in the context of standards-setting.  The industry has determined that those situations generally are best addressed through bi-lateral negotiation (and, in rare cases, litigation) as opposed to modifying the SSO's IPR policy and arguably unnecessarily burdening the standardization process for the many ICT standards that are being widely implemented in the marketplace with no apparent IPR-related challenges.

Accordingly, we support the majority of ICT companies who believe that SSOs should develop their IPR policies based on a consensus of their stakeholders, and that governments should not promote one approach over another, including a mandatory —ex ante" IPR policy regime and the group discussion of proposed licensing terms.

In conclusion, we thank you for the opportunity to provide comments in response to the RFC.

Respectfully submitted,
Microsoft Corporation

David Heiner
Vice President and Deputy General Counsel

Amy Marasco
General Manager, Standards Strategy and Policy

17

# EXHIBIT 5

*Approved by the IEEE-SA Board of Governors December 2009*

# IEEE-SA Standards Board Bylaws

The Institute of Electrical and Electronics Engineers, Inc.
3 Park Avenue, New York, NY 10016-5997, USA

Copyright © 2010 by the Institute of Electrical and Electronics Engineers, Inc.
All rights reserved. Published 2010. Printed in the United States of America.

*Reproduction and distribution of this document in whole or in part by any medium is permitted. Appropriate acknowledgement of the source and ownership of the material should be made with any such reproduction and distribution.*

*Please note that this document may be revised periodically. The latest edition will be made available at the IEEE Standards website at no charge. The document on the IEEE Standards website is considered to be the definitive version. For further information, contact the IEEE Standards Department, 445 Hoes Lane, Piscataway, NJ 08855-1331, USA.*

# Contents

1. IEEE-SA Standards Board ............................................................................................................... 1

2. IEEE standards .............................................................................................................................. 2
   2.1 Role of IEEE Standards ......................................................................................................... 2
   2.2 Purpose of IEEE standardization ........................................................................................... 2

3. Governance ................................................................................................................................... 3

4. IEEE-SA Standards Board organization ......................................................................................... 4
   4.1 Membership ........................................................................................................................... 4
   4.2 Standing committees of the IEEE-SA Standards Board .......................................................... 5
   4.3 Other committees and bodies ................................................................................................. 7

5. IEEE-SA Standards Board procedures and responsibilities ........................................................... 8
   5.1 Transaction of business .......................................................................................................... 8
   5.2 Standards-development process ............................................................................................. 8
   5.3 Review cycles ...................................................................................................................... 12
   5.4 Appeals ............................................................................................................................... 12
   5.5 Interpretations ..................................................................................................................... 13

6. Patents ......................................................................................................................................... 14
   6.1 Definitions .......................................................................................................................... 14
   6.2 Policy .................................................................................................................................. 15

7. Copyright ..................................................................................................................................... 17
   7.1 Definitions .......................................................................................................................... 17
   7.2 Policy .................................................................................................................................. 17

8. Modifications to the *IEEE-SA Standards Board Bylaws* ............................................................ 18
   8.1 Interpretations of the *IEEE-SA Standards Board Bylaws* ..................................................... 18

"*Submitter*" when used in reference to a Letter of Assurance shall mean an individual or an organization that provides a completed Letter of Assurance. A Submitter may or may not hold Essential Patent Claims.

## 6.2 Policy

IEEE standards may be drafted in terms that include the use of Essential Patent Claims. If the IEEE receives notice that a [Proposed] IEEE Standard may require the use of a potential Essential Patent Claim, the IEEE shall request licensing assurance, on the IEEE Standards Board approved Letter of Assurance form, from the patent holder or patent applicant. The IEEE shall request this assurance without coercion.

The Submitter of the Letter of Assurance may, after Reasonable and Good Faith Inquiry, indicate it is not aware of any Patent Claims that the Submitter may own, control, or have the ability to license that might be or become Essential Patent Claims. If the patent holder or patent applicant provides an assurance, it should do so as soon as reasonably feasible in the standards development process once the PAR is approved by the IEEE-SA Standards Board. This assurance shall be provided prior to the Standards Board's approval of the standard. This assurance shall be provided prior to a reaffirmation/stabilization if the IEEE receives notice of a potential Essential Patent Claim after the standard's approval or a prior reaffirmation/stabilization. An asserted potential Essential Patent Claim for which an assurance cannot be obtained (e.g., a Letter of Assurance is not provided or the Letter of Assurance indicates that assurance is not being provided) shall be referred to the Patent Committee.

A Letter of Assurance shall be either:

a)   A general disclaimer to the effect that the Submitter without conditions will not enforce any present or future Essential Patent Claims against any person or entity making, using, selling, offering to sell, importing, distributing, or implementing a compliant implementation of the standard; or

b)   A statement that a license for a compliant implementation of the standard will be made available to an unrestricted number of applicants on a worldwide basis without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination. At its sole option, the Submitter may provide with its assurance any of the following: (i) a not-to-exceed license fee or rate commitment, (ii) a sample license agreement, or (iii) one or more material licensing terms.

Copies of an Accepted LOA may be provided to the working group, but shall not be discussed, at any standards working group meeting.

The Submitter and all Affiliates (other than those Affiliates excluded in a Letter of Assurance) shall not assign or otherwise transfer any rights in any Essential Patent Claims that are the subject of such Letter of Assurance that they hold, control, or have the ability to license with the intent of circumventing or negating any of the representations and commitments made in such Letter of Assurance.

The Submitter of a Letter of Assurance shall agree (a) to provide notice of a Letter of Assurance either through a Statement of Encumbrance or by binding any assignee or transferee to the terms of such Letter of Assurance; and (b) to require its assignee or transferee to (i) agree to similarly provide such notice and (ii) to bind its assignees or transferees to agree to provide such notice as described in (a) and (b).

This assurance shall apply to the Submitter and its Affiliates except those Affiliates the Submitter specifically excludes on the relevant Letter of Assurance.

If, after providing a Letter of Assurance to the IEEE, the Submitter becomes aware of additional Patent Claim(s) not already covered by an existing Letter of Assurance that are owned, controlled, or licensable by

the Submitter that may be or become Essential Patent Claim(s) for the same IEEE Standard but are not the subject of an existing Letter of Assurance, then such Submitter shall submit a Letter of Assurance stating its position regarding enforcement or licensing of such Patent Claims. For the purposes of this commitment, the Submitter is deemed to be aware if any of the following individuals who are from, employed by, or otherwise represent the Submitter have personal knowledge of additional potential Essential Patent Claims, owned or controlled by the Submitter, related to a [Proposed] IEEE Standard and not already the subject of a previously submitted Letter of Assurance: (a) past or present participants in the development of the [Proposed] IEEE Standard, or (b) the individual executing the previously submitted Letter of Assurance.

The assurance is irrevocable once submitted and accepted and shall apply, at a minimum, from the date of the standard's approval to the date of the standard's withdrawal.

The IEEE is not responsible for identifying Essential Patent Claims for which a license may be required, for conducting inquiries into the legal validity or scope of those Patent Claims, or for determining whether any licensing terms or conditions provided in connection with submission of a Letter of Assurance, if any, or in any licensing agreements are reasonable or non-discriminatory.

Nothing in this policy shall be interpreted as giving rise to a duty to conduct a patent search. No license is implied by the submission of a Letter of Assurance.

In order for IEEE's patent policy to function efficiently, individuals participating in the standards development process: (a) shall inform the IEEE (or cause the IEEE to be informed) of the holder of any potential Essential Patent Claims of which they are personally aware and that are not already the subject of an existing Letter of Assurance, owned or controlled by the participant or the entity the participant is from, employed by, or otherwise represents; and (b) should inform the IEEE (or cause the IEEE to be informed) of any other holders of such potential Essential Patent Claims that are not already the subject of an existing Letter of Assurance.

# EXHIBIT 6

# Guidelines for Implementation of the Common Patent Policy for ITU-T/ITU-R/ISO/IEC

(1 March 2007)

Part I – Common guidelines.................................................................................................... 2
1     Purpose....................................................................................................................... 2
2     Explanation of terms ................................................................................................. 2
3     Patent disclosure ....................................................................................................... 3
4     Patent Statement and Licensing Declaration Form.................................................. 4
      4.1     The purpose of the Declaration Form........................................................... 4
      4.2     Contact information....................................................................................... 4
5     Conduct of meetings .................................................................................................. 4
6     Patent Information database ...................................................................................... 5

Part II – Organization-specific provisions ........................................................................... 5
Specific provisions for ITU ..................................................................................................... 5
      ITU-1  General Patent Statement and Licensing Declaration Form ..................... 5
      ITU-2  Notification.......................................................................................................... 6
Specific provisions for ISO and IEC ...................................................................................... 6
      ISO/IEC-1    Consultations on draft Deliverables ................................................ 6
      ISO/IEC-2    Notification....................................................................................... 6

Annex 1  Common Patent Policy for ITU-T/ITU-R/ISO/IEC ........................................... 8
Annex 2  Patent Statement and Licensing Declaration Form for ITU-T/ITU-R Recommendation |
ISO/IEC Deliverable ............................................................................................................. 10
Annex 3  General Patent Statement and Licensing Declaration Form for ITU-T/ITU-R
Recommendation .................................................................................................................... 13

-8-

ANNEX 1

COMMON PATENT POLICY FOR ITU-T/ITU-R/ISO/IEC

The following is a "code of practice" regarding patents covering, in varying degrees, the subject matters of ITU-T Recommendations, ITU-R Recommendations, ISO deliverables and IEC deliverables (for the purpose of this document, ITU-T and ITU-R Recommendations are referred to as "Recommendations", ISO deliverables and IEC deliverables are referred to as "Deliverables"). The rules of the "code of practice" are simple and straightforward. Recommendations | Deliverables are drawn up by technical and not patent experts; thus, they may not necessarily be very familiar with the complex international legal situation of intellectual property rights such as patents, etc.

Recommendations | Deliverables are non-binding; their objective is to ensure compatibility of technologies and systems on a worldwide basis. To meet this objective, which is in the common interests of all those participating, it must be ensured that Recommendations | Deliverables, their applications, use, etc. are accessible to everybody.

It follows, therefore, that a patent embodied fully or partly in a Recommendation | Deliverable must be accessible to everybody without undue constraints. To meet this requirement in general is the sole objective of the code of practice. The detailed arrangements arising from patents (licensing, royalties, etc.) are left to the parties concerned, as these arrangements might differ from case to case.

This code of practice may be summarized as follows:

1       The ITU Telecommunication Standardization Bureau (TSB), the ITU Radiocommunication Bureau (BR) and the offices of the CEOs of ISO and IEC are not in a position to give authoritative or comprehensive information about evidence, validity or scope of patents or similar rights, but it is desirable that the fullest available information should be disclosed. Therefore, any party participating in the work of ITU, ISO or IEC should, from the outset, draw the attention of the Director of ITU-TSB, the Director of ITU-BR, or the offices of the CEOs of ISO or IEC, respectively, to any known patent or to any known pending patent application, either their own or of other organizations, although ITU, ISO or IEC are unable to verify the validity of any such information.

2       If a Recommendation | Deliverable is developed and such information as referred to in paragraph 1 has been disclosed, three different situations may arise:

2.1     The patent holder is willing to negotiate licences free of charge with other parties on a non-discriminatory basis on reasonable terms and conditions. Such negotiations are left to the parties concerned and are performed outside ITU-T/ITU-R/ISO/IEC.

2.2     The patent holder is willing to negotiate licences with other parties on a non-discriminatory basis on reasonable terms and conditions. Such negotiations are left to the parties concerned and are performed outside ITU-T/ITU-R/ISO/IEC.

2.3     The patent holder is not willing to comply with the provisions of either paragraph 2.1 or paragraph 2.2; in such case, the Recommendation | Deliverable shall not include provisions depending on the patent.

-9-

3        Whatever case applies (2.1, 2.2 or 2.3), the patent holder has to provide a written statement to be filed at ITU-TSB, ITU-BR or the offices of the CEOs of ISO or IEC, respectively, using the appropriate "Patent Statement and Licensing Declaration" Form. This statement must not include additional provisions, conditions, or any other exclusion clauses in excess of what is provided for each case in the corresponding boxes of the form.

-10-

ANNEX 2

PATENT STATEMENT AND LICENSING DECLARATION FORM FOR ITU-T/ITU-R
RECOMMENDATION | ISO/IEC DELIVERABLE

    

**Patent Statement and Licensing Declaration**
**for ITU-T/ITU-R Recommendation │ ISO/IEC Deliverable**

*This declaration does not represent an actual grant of a license*

Please return to the relevant organization(s) as instructed below per document type:

| | | | |
|---|---|---|---|
| Director | Director | Secretary-General | General Secretary |
| Telecommunication | Radiocommunication Bureau | International Organization for | International Electrotechnical |
| Standardization Bureau | International Telecommunication | Standardization | Commission |
| International Telecommunication | Union | 1 chemin de la Voie-Creuse | 3 rue de Varembé |
| Union | Place des Nations | CH-1211 Geneva 20 | CH-1211 Geneva 20 |
| Place des Nations | CH-1211 Geneva 20, | Switzerland | Switzerland |
| CH-1211 Geneva 20, | Switzerland | Fax: +41 22 733 3430 | Fax: +41 22 919 0300 |
| Switzerland | Fax: +41 22 730 5785 | Email: | Email: |
| Fax: +41 22 730 5853 | Email: brmail@itu.int | patent.statements@iso.org | inmail@iec.ch |
| Email: tsbdir@itu.int | | | |

**Patent Holder**:
Legal Name _____

**Contact for license application:**
Name &
Department _____
Address _____
_____
_____

Tel. _____
Fax _____
E-mail _____
URL (optional) _____

**Document type:**

☐ **ITU-T Rec. (*)**   ☐ **ITU-R Rec. (*)**   ☐ **ISO Deliverable (*)**   ☐ **IEC Deliverable (*)**
(please return the form to the relevant Organization)

☐ **Common text or twin text (ITU-T Rec. | ISO/IEC Deliverable (*))** (for common text or twin text,
please return the form to each of the three Organizations: ITU-T, ISO, IEC)

☐ **ISO/IEC Deliverable (*)** (for ISO/IEC Deliverables, please return the form to both ISO and IEC)
(*)Number _____
(*)Title _____

**Licensing declaration:**
The Patent Holder believes that it holds granted and/or pending applications for patents, the use of which would be required to implement the above document and hereby declares, in accordance with the Common Patent Policy for ITU-T/ITU-R/ISO/IEC, that (check <u>one</u> box only):

☐       1.       The Patent Holder is prepared to grant a <u>free of charge</u> license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and under other reasonable terms and conditions to make, use, and sell implementations of the above document.
Negotiations are left to the parties concerned and are performed outside the ITU-T, ITU-R, ISO or IEC.
*Also mark here __ if the Patent Holder's willingness to license is conditioned on <u>reciprocity</u> for the above document.*
     *Also mark here __ if the Patent Holder reserves the right to license on reasonable terms and conditions (but not <u>free of charge</u>) to applicants who are only willing to license their patent claims, whose use would be required to implement the above document, on reasonable terms and conditions (but not <u>free of charge</u>).*

☐       2.       The Patent Holder is prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to make, use and sell implementations of the above document.
Negotiations are left to the parties concerned and are performed outside the ITU-T, ITU-R, ISO, or IEC.
*Also mark here __ if the Patent Holder's willingness to license is conditioned on <u>reciprocity</u> for the above document.*

☐       3.       The Patent Holder is unwilling to grant licenses in accordance with provisions of either 1 or 2 above.
In this case, the following information must be  provided to ITU, and is strongly desired by ISO and IEC, as part of this declaration:
-     granted patent number or patent application number (if pending);
-     an indication of which portions of the above document are affected;
-     a description of the patent claims covering the above document.

<u>Free of charge</u>:  The words "free of charge" do not mean that the Patent Holder is waiving all of its rights with respect to the essential patent.  Rather, "free of charge" refers to the issue of monetary compensation; *i.e.*, that the Patent Holder will not seek any monetary compensation as part of the licensing arrangement (whether such compensation is called a royalty, a one-time licensing fee, etc.).  However, while the Patent Holder in this situation is committing to not charging any monetary amount, the Patent Holder is still entitled to require that the implementer of the above document sign a license agreement that contains other reasonable terms and conditions such as those relating to governing law, field of use, reciprocity, warranties, etc.

<u>Reciprocity</u>:  As used herein, the word "reciprocity" means that the Patent Holder shall only be required to license any prospective licensee if such prospective licensee will commit to license its essential patent(s) or essential patent claim(s) for implementation of the same above document free of charge or under reasonable terms and conditions.

**Signature:**

| | |
|---|---|
| Patent Holder | |
| Name of authorized person | _____ |
| Title of authorized person | _____ |
| Signature | _____ |
| Place, Date | _____ |

FORM: 1 March 2007