HONORABLE JAMES L. ROBART

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>                Plaintiff,<br>    v.<br><br>MOTOROLA, INC., et al.,<br><br>                Defendants.<br><br>MOTOROLA MOBILITY, INC., et al.,<br><br>                Plaintiffs,<br>    v.<br><br>MICROSOFT CORPORATION,<br><br>                Defendant. | No. C10-1823-JLR<br><br>MICROSOFT'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>**REDACTED – ORIGINAL FILED UNDER SEAL**<br><br>**NOTED FOR:**<br>**Friday, September 30, 2011**<br><br>**ORAL ARGUMENT REQUESTED** |

MICROSOFT'S REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

# TABLE OF CONTENTS

Page

A.  Motorola Committed to Make RAND Licenses Available so that Its Technology Would Be Included in Industry Standards, but Abused the Resulting Power and Breached that Commitment ..................................................................................... 1

B.  Motorola's Demands Were Not RAND ............................................................... 4

   1.  Motorola Has Not Even Asserted, Much Less Shown, That its Cited Offers/Licenses Are Comparable or Produce Comparable Results ............. 4

   2.  Motorola Improperly Uses End Product Prices as the Royalty Base .......... 6

   3.  Motorola's "N-Adapter" and Grant-Back Arguments Fail .......................... 7

C.  Microsoft Did Not Repudiate and Seeks a Ruling that It is Entitled to a License .. 8

   1.  As a Matter of Law, Microsoft Is Entitled to a RAND License .................. 9

D.  Motorola Is Not Entitled to a Continuance ......................................................... 11

CONCLUSION ................................................................................................................ 12

MICROSOFT'S REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT - i

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

# TABLE OF AUTHORITIES

Page

**Cases**

*Alaska Pacific Trading Co. v. Eagon Forest Products*
    85 Wn. App. 354, 933 P.2d 417 (1997)..................................................................10

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986).................................................................................................5

*Broadcom Corp. v. Qualcomm, Inc.*
    501 F.3d 297 (3d Cir. 2007) ....................................................................................1

*Broadview Chem. Corp. v. Loctite Corp.*
    417 F.2d 998 (2d Cir. 1969) .................................................................................10

*Commonwealth Scientific & Indus. Research Org. v. Buffalo Tech. Inc.*
    492 F. Supp. 2d 600 (E.D. Tex. 2007)..................................................................11

*Environmental Defense Project of Sierra County v. County of Sierra*
    70 Cal.Rptr.3d 474 (Cal.App. 2008).....................................................................10

*Family Home & Finance Center v. Federal Home Loan Mortgage Co.*
    525 F.3d 822 (9th Cir. 2008) ................................................................................11

*Garretson v. Clark*
    111 U.S. 120 (1884).................................................................................................6

*Hynix Semiconductor Inc. v. Rambus Inc.*
    609 F. Supp. 2d 951 (N.D. Cal. 2009)..................................................................11

*Johnson v. Brado*
    56 Wn. App. 163, 783 P.2d 92 (1989)..................................................................10

*Keener Oil & Gas Co. v. Consolidated Gas Utilities Corp.*
    190 F.2d 985 (10th Cir. 1951) ..............................................................................10

*Kimel v. Missouri State Life Ins. Co.*
    71 F.2d 921 (10th Cir. 1934) ................................................................................10

*LG Elecs., Inc. v. Hitachi, LTD*
    655 F. Supp. 2d 1036 (N.D. Cal. 2009).................................................................7

MICROSOFT'S REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT - ii

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

*Lovric v. Dunatov*
    18 Wn. App. 274, 567 P.2d 678 (1977)................................................................10

*Lucent Technologies , Inc. v. Gateway, Inc.*
    580 F.3d 1301 (Fed. Cir. 2009) ......................................................................4, 5

*Metalex Corp. v. Uniden Corp. of America*
    863 F.2d 1331 (7th Cir. 1988) ..............................................................................5

*McKensi v. Bank of America, N.A.*
    2010 U.S. Dist. LEXIS 99540 (D. Mass. Sept. 22, 2010) ....................................10

*Missouri Public Service Co. v. Peabody Coal Co.*
    583 S.W.2d 721 (Mo. App. 1979) .......................................................................10

*Nash v. GMAC Mortgage, LLC*
    2011 WL 2470645 (D.R.I. May 18, 2011) ..........................................................10

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ready Pac Foods, Inc.*,
    2011 WL 1083374 (C.D. Cal. 2011) ....................................................................9

*Pacific Coast Engineering Co. v. Merritt-Chapman & Scott Corporation*
    411 F.2d 889 (9th Cir. 1969) ..............................................................................10

*Penn Mut. Life Ins. Co. v. Espinosa*
    2010 U.S. Dist. LEXIS 77334 (D. Del. July 30, 2010) .......................................10

*Pensionefonds Metaal en Techniek v. Strategic DSRG, LLC*,
    2011 WL 310327 (S.D.N.Y. 2011) ......................................................................9

*Principal Life Ins. Co. v. Minder*
    2009 U.S. Dist. LEXIS 56568 (E.D. Pa. July 1, 2009)........................................10

*Potter Instrument Co. v. Storage Technology Corp.*
    1980 U.S. Dist. LEXIS 14348 (E.D. Va. Mar. 25, 1980) ......................................3

*Qualls v. Blue Cross of California, Inc.*
    22 F.3d 839 (9th Cir.1994) .................................................................................11

*Quanta Computer, Inc. v. LG Elecs., Inc.*
    553 U.S. 617 (2008)..............................................................................................7

*Ramos v. Citimortgage, Inc.*
    2009 WL 86744 (E.D. Cal. Jan. 8, 2009) ...........................................................10

MICROSOFT'S REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT - iii

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

*Research in Motion Limited v. Motorola, Inc.*
         644 F. Supp. 2d 788 (N.D. Tex. 2008) ..................................................................2

*ResQNet.com, Inc. v. Lansa, Inc.*
         594 F.3d 860 (Fed. Cir. 2010) .........................................................................4, 5

*Rosalez v. Baker*
         2010 WL 4068926 (W.D. Wash. Oct. 15, 2010) ..................................................11

*Tatum v. City and County of San Francisco*
         441 F.3d 1090 (9th Cir. 2006) ............................................................................11

*Uniloc USA, Inc. v. Microsoft Corp.*
         632 F.3d 1292 (Fed. Cir. 2011) .......................................................................5, 6

*Zoran Corp. v. DTS, Inc.*
         2009 U.S. Dist. LEXIS 6675 (N.D. Cal. Jan. 20, 2009) ........................................9

**Other Authorities**

Moore's Federal Practice 3d, § 56.102[2] ............................................................................11

Fed. R. Civ. P. 56(c)(1)(A) ........................................................................................................5

Fed. R. Civ. P. 56(d) ..............................................................................................................11

Fed. R. Civ. P. 56(g) ..........................................................................................................9, 11

MICROSOFT'S REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT - iv

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

### A. Motorola Committed To Make RAND Licenses Available so that Its Technology Would Be Included in Industry Standards, but Abused the Resulting Power and Breached that Commitment.

When a patentee participates in developing an industry standard, and when its patented technology is incorporated into that standard, the patentee acquires a "unique position of bargaining power" that cannot be abused to "extract supracompetitive royalties."[1] "It is in such circumstances that measures such as []RAND commitments become important safeguards against monopoly power."[2] Because RAND requirements are intended to preclude abuse of the quasi-monopolistic leverage that inclusion in the standard entails, RAND licenses must be "made available," not withheld. Motorola withheld licenses by making excessive, non-RAND, demands that exploited its unique bargaining power and breached its contractual commitments to the ITU and IEEE. Microsoft filed this action to stop the abuse.

Motorola argues that it was free to abuse its power as long as it might eventually stop. According to Motorola, it had no obligation to offer its claimed essential technology on RAND terms; it could demand excessive royalties indefinitely as long as it might eventually retreat to RAND terms; but, if Microsoft made no counteroffer to Motorola's excessive demands, Microsoft "repudiated" and lost its right to a RAND license.

The strategy of *demanding* excessive royalties is the very abuse that the requirement to "make" RAND licenses "available" will stop—if it is enforced. The entire concept of the RAND requirement is eviscerated if the courts tolerate "offers" that are patently unreasonable. A RAND offer is one that any potential licensee can simply accept and be assured of a royalty that is not inflated by the power of inclusion in the standard. Any excessive demand is an

---

[1] *Broadcom Corp. v. Qualcomm, Inc.*, 501 F.3d 297, 310 (3d Cir. 2007).

[2] *Id*., at 314.

MICROSOFT'S REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT  - 1

abuse of that very power.  In *Research in Motion* and in this case, the courts correctly held that a claim of breach was stated by alleging that a royalty *demand* was non-RAND.[3]

Motorola committed that its licenses would be "made available to an unrestricted number of applicants ... worldwide ... under reasonable rates ...."[4]  By its terms, this requirement applies to *every* offer or demand; a licensee must be able to accept any offer and be assured the resulting license is RAND.  Instead, Motorola singled out Microsoft in October 2010, demanding a flat percentage royalty bearing no relationship to any contribution of Motorola's technology to product pricing, leading to grossly excessive royalties.  Undisputed facts establish this:  the terms of the demand, the product variations and related pricing.  Motorola does not argue otherwise.  It claims it did not really mean it—it would be "flexible."  It argues it can demand excessive terms up to the moment of execution of a license—*i.e.*, abuse of the power of the standards is business as usual at Motorola.

The American National Standards Institute ("ANSI"),[5] which imposes duties on its member-SSOs, including the IEEE, agrees that RAND obligations extend to all offers:

> The ANSI Patent Policy[6] covers the Policies with which an ANSI-accredited standards developer (ASD) [like the IEEE] must comply in addressing essential patent claims that are included in American National Standards [ANS].  Under the Policy, when the ASD receives notice that a proposed ANS or an approved ANS may require the use of an essential patent claim, the ASD shall receive an assurance from the patent holder. <u>That assurance must be a written or electronic statement indicating that the patent holder will *offer* to provide licenses either</u>

---

[3] *Research in Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 797 (N.D. Tex. 2008); this Court's June 1, 2011 Order Granting in Part and Denying in Part Motorola's Motions to Dismiss, Denying Microsoft's Motion to Dismiss and Consolidating Case No. C10-1823JLR and C11-343JLR (Dkt. No. 66), at p. 5.

[4] Declaration of Christopher Wion in Support of Microsoft's Motion for Summary Judgment (Dkt. No. 79) ("Wion Decl."), Ex. 1, p. 15.  And in many of its Letters of Assurance, Motorola declared that it "will grant" such a license. *See id.*, Ex. 2.

[5] ANSI is a nonprofit, privately funded membership organization that coordinates the development of U.S. voluntary national standards and oversees hundreds of ANSI-accredited SSOs, including the IEEE.  *See* Declaration of Shane Cramer filed herewith ("Cramer Decl."), Exs. 1 and 2.

[6] The ANSI Patent Policy is attached as Exhibit 3 to the Cramer Decl.

MICROSOFT'S REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT  - 2

<blockquote>
on (a) <u>reasonable and non-discriminatory (RAND) terms and conditions</u> or (b) a holder does not hold and does not currently intend to hold any essential patent claims. If the patent holder submits a patent statement to the effect of either (a) or (b) above, ***<u>then this creates a commitment by the patent holder to offer such licenses</u>***.[7]
</blockquote>

Motorola must open the negotiation within the RAND arena and stay there. If accepted, Motorola's contrary argument would apply to every single excessive offer it makes as long as it claims it *would have* eventually entered the arena. At what point in this endless process *should* a Court enforce RAND? Motorola will always say it is premature.

Motorola's letters show it understood its duty to make only RAND offers, but breached it. The letters stated the demands *were* for "RAND" terms and that the rate of 2.25% of all end product prices *was* "reasonable."[8] But it was not; the royalty varied over a wide range based on product elements obviously unrelated to any contribution of Motorola.

Motorola's new position on this Motion essentially admits this. Motorola now says it was prepared to be "flexible" where the flat percentage made no sense for specific Microsoft products. But the letters state the opposite: the 2.25% rate applied to "each Xbox 360 product, each PC/laptop, each smartphone, etc." Motorola expressly *included* the very items it now claims it would have carved out.

Motorola defends by stating that it has "shown flexibility" in other cases and *did not know* what "particular variations would be necessary to create an appropriate licensing structure for Microsoft."[9] But in October 2010, Motorola obviously knew that "laptops,"

---

[7] Cramer Decl., Ex. 1, p. 11 (emphasis added). Courts considering ANSI's Policy have confirmed this interpretation. *See Potter Instrument Co. v. Storage Technology Corp.*, 1980 U.S. Dist. LEXIS 14348, *7 (E.D. Va., March 25, 1980) (under ANSI's policy patentee must "agree to offer licenses to members of the affected industry on [RAND] terms").

[8] Wion Decl. (Dkt. No. 79), Exs. 5, 6 ("Motorola offers to license the patents . . . on reasonable terms and conditions ("RAND"), including a reasonable royalty of 2.25% per unit . . .based on the price of the end product (e.g., each Xbox 360 product, each PC/laptop, each smartphone, etc.) and not on component software (e.g., Xbox 360 system software, Windows 7 software, Windows Phone 7 software, etc.).").

[9] Opp. at 17-18.

MICROSOFT'S REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 3

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

"PCs," "smartphones" and the "Xbox 360" had features and prices that varied widely for reasons unrelated to Motorola's technology.  Motorola cannot make an unreasonable demand reasonable by retracting its express terms in a brief.[10]

**B.     Motorola's Demands Were Not RAND.**

    1.     <u>Motorola Has Not Even Asserted, Much Less Shown, that Its Cited Offers/Licenses Are Comparable or Produce Comparable Results.</u>

Motorola cites offers, licenses and generic statements to argue that its demands were RAND, but it does not even *claim*, much less demonstrate, that any of these cited (but unsubmitted) examples are in fact comparable—i.e., that they also entailed a flat royalty percentage that produced disproportionate results over a wide range of targeted products.[11]  If there are any such examples, they would simply establish Motorola's pattern of successful abuse.  But nowhere in its five-page discussion of this subject does Motorola say anything beyond:  we have gotten royalties in the **REDACTED** range on some products.[12]  Microsoft is entitled to summary judgment because, as applied to the products specified in Motorola's two demands, a 2.25% royalty on end product price leads to royalties grossly disproportionate to any contribution of Motorola's technology.

While "[a]rgument is no substitute for evidence,"[13] Motorola has neither *asserted* nor

---

[10] Contradicting its clear demand to the contrary, Motorola now admits that a "Motorola-Microsoft license could have, for example, (1) carved out the price of add-on components, like games, hard drives and/or the Kinect sensor; (2) reduced the royalty rate to account for including hardware or add-on components in the royalty base; (3) limited the royalty base to the price of Microsoft's hardware; and/or (4) capped royalty payments for certain computer products in order to tailor the license to Microsoft's business." Opp. at 18.

[11] "This court has long required district courts performing reasonable royalty calculations to exercise vigilance when considering past licenses to technologies other than the patent in suit." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) (citing *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329 (Fed. Cir. 2009)).

[12] Opp., pp. 11-15.

[13] *Metalex Corp. v. Uniden Corp. of America*, 863 F.2d 1331, 1337 (7th Cir. 1988).

MICROSOFT'S REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT  - 4

*shown* a single instance of a license with comparable consequences.[14] Motorola has not even submitted the underlying license offers and agreements to which it refers, violating the Rule 56(c)(1)(A) requirement that a party opposing summary judgment must "cite to particular parts of materials in the record."[15]

Motorola has submitted selected excerpts of only one representative license agreement— **REDACTED**

[16] Motorola does not assert that this, or any other license to which it refers, exhibits disproportionality across products—which is the issue on this Motion.[17] Obviously, whether Motorola can extract high royalties from participants in the **REDACTED** industry for supplying **REDACTED** is beside the point.[18] But Motorola has not even provided the Court with that much information in its lengthy discussion of this issue.[19]

---

[14] *See, e.g., Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) (recognizing that "there must be basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical negotiation at issue in the case").

[15] The Advisory Committee Notes to Rule 56(c)(1)(A) confirm that "[m]aterials not yet in the record—including materials referred to in an affidavit or declaration—*must be placed in the record*." (Emphasis added). It is black-letter law that, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).

[16] Post Decl. (Dkt. No. 87), Ex. 15, p. 3 **REDACTED**.

[17] The submitted pages provide no indication (a) that the agreement relates to the 802.11 or H.264 standards or (b) of the royalty rate or how it is calculated.

[18] *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870-73 (Fed. Cir. 2010) (the "court should not rely on unrelated licenses to increase the reasonable royalty rate above rates more clearly linked to the economic demand for the claimed technology").

[19] In *Lucent*, the Federal Circuit vacated a $357 million jury award where certain of the license agreements the plaintiff submitted to justify the award were:

> . . . radically different from the hypothetical agreement under consideration for the Day patent . . . and . . . *with the other agreements, we are simply unable to ascertain from the evidence* presented the subject matter of the agreements, and we therefore cannot understand how the jury could have adequately evaluated the probative value of those agreements.

*Id.*, 1327-28 (italics added). Motorola has put this Court in the same position.

MICROSOFT'S REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 5

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

The two industry surveys cited by Motorola (Opp. at 13-14) serve to emphasize the point: they say nothing about disproportionality and do not even distinguish between royalties for standards-essential and non standards-essential patents. Motorola does not assert otherwise.

Motorola's Opposition never confronts the controlling facts: its demands lead to outrageous results when applied to the very products listed in them—and Motorola knew it when it made its demands. Motorola ducks this core fact by (a) claiming it was going to be "flexible" (*i.e.*, it was going to retract its outrageous demand) and (b) it has gotten **REDACTED** royalties on some other products. Neither argument addresses the issue: a flat royalty applied to widely varying product prices unrelated to the standards essential technology is inherently unreasonable, not RAND, and an abuse of the power conferred by inclusion in the standard.

2. <u>Motorola Improperly Uses End Product Prices as the Royalty Base</u>.

Motorola makes two arguments to justify an end-product royalty base. Neither argument is valid, and neither addresses the gross disproportionality resulting from its demands here. First, Motorola invokes the entire market value rule. But

> [f]or the entire market value rule to apply, the patentee must prove that the patent-related feature is the basis for customer demand[.][20]

Stated differently, the proponent must

> show that "the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature."[21]

Microsoft has shown, without dispute, that "the ability to play video games on any configuration of the Xbox 360 S is independent of both the 802.11 and H.264 functionality"

---

[20] *Id.,* at 1336.

[21] *Uniloc* at 1318, *quoting Garretson v. Clark*, 111 U.S. 120, 121 (1884).

MICROSOFT'S REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 6

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

and "earlier versions of the Xbox did not include any such functionality."[22] Motorola does not even argue that the test conceivably could apply to PCs, laptops, or phones.

Second, for products made by third-parties (PCs, laptops, phones), Motorola claims that under the "patent exhaustion" rule it would lose all "downstream rights" if it used only Microsoft's component software as the royalty base.[23] Where it applies, the rule prevents a patent holder from recovering royalties from anyone downstream of the supplier of the allegedly infringing feature. But, as Motorola's own case explains, the rule would apply only if Microsoft's "upstream" contribution (*e.g.*, software) to the "downstream" end product (*e.g.*, laptops, PCs, smartphones) "substantially embodies" the patent because that contribution has no noninfringing uses.[24] Microsoft's operating system software obviously has many noninfringing purposes. The patent exhaustion doctrine has no bearing here.

3. <u>Motorola's "N-Adapter" and Grant-Back Arguments Fail</u>.

Motorola says that the retail price Microsoft charges for the Xbox 360 Wireless N Networking Adapter (which provides wireless functionality for older versions of the Xbox 360) supports its 802.11 royalty demand.[25] At 2.25%, Motorola's royalty rate translates to $1.80 for the $79.99 Adapter. This demonstrates that the royalty of $4.48 for the identical functionality when sold as part of even the least expensive Xbox 360 console is excessive.

Nor does the "subject to a grant back" language in Motorola's excessive demands cure their unreasonableness.[26] Motorola's "grant back" demand clearly is an *addition to*—not a

---

[22] Harlin Decl. (Dkt. No. 78), ¶ 5.

[23] Opp. at 17.

[24] *Quanta Computer, Inc. v. LG Elecs., Inc*., 553 U.S. 617, 638 (2008) ("Intel's microprocessors and chipsets substantially embodied the LGE Patents because they had no reasonable noninfringing use and included all the inventive aspects of the patented methods."); *see also LG Elecs., Inc. v. Hitachi, LTD*, 655 F. Supp. 2d 1036, 1042 (N.D.Cal. 2009) ("*Quanta* held that exhaustion is triggered by the sale of products that embody 'essential features of the patented invention' and whose 'only reasonable and intended use [is] to practice the patent.'").

[25] Post Decl. (Dkt. No. 87), Ex. 12.

[26] Opp. at 14.

MICROSOFT'S REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 7

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

*reduction from*—the 2.25% royalty.  Even if it were a reduction (as Motorola claims), such a license is simply another currency for paying the excessive sums demanded.

Throughout its Opposition, Motorola ducks the point:  that its flat rate across the products it *listed in its letters* leads to nonsensical, obviously unreasonable royalties bearing no relationship to Motorola's contribution to the products or their prices.

### C.     Microsoft Did Not Repudiate and Seeks a Ruling that It is Entitled to a License.

Motorola argues that Microsoft repudiated its right to a RAND license by filing this suit instead of negotiating.[27]  Motorola's argument is the same one the Court addressed on Motorola's Motion to Dismiss:

> Motorola attempts to insert a requirement that Microsoft negotiate the license terms prior to filing suit for breach of contract.  During oral argument, Motorola argued that the IEEE and the ITU guidelines provide the legal basis for requiring negotiations.  However, the guidelines provide no such requirement.  There is no legal basis for Motorola's contention that Microsoft was required to negotiate the precise license terms prior to filing a breach of contract claim.[28]

In the same breath, Motorola says that it had no duty to make a RAND offer because Microsoft is not a license "applicant."[29]  But Microsoft did apply for a RAND license:  after receiving Motorola's demand, Microsoft asked this Court to order Motorola to supply such a license—to enforce Motorola's RAND obligations.  Microsoft has consistently sought a

> judicial declaration that Motorola's promises to IEEE-SA, the ITU, and their respective members and affiliates constitute contractual obligations that are binding and *enforceable* by Microsoft.[30]

---

[27] Opp. at 21-23.

[28] 6/1/11 Order (on cross-motions to dismiss) (Dkt. No. 66), at p. 5.

[29] Opp. at 21.

[30] Complaint (Dkt. No. 1), at ¶ 9 (emphasis added).  In its Complaint, Microsoft asked the Court to:  "decree that Microsoft is entitled to license from Motorola any and all patents that Motorola deems 'essential' to WLAN technology [on RAND terms]"; and "decree that Microsoft is entitled to license from Motorola any and all patents that Motorola has identified to the ITU in relation to H.264 technology on [RAND terms]."  *Id*., at p. 22, ¶¶ G, H.

MICROSOFT'S REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT  - 8

Microsoft is seeking, and remains ready and willing to take, a license to Motorola's H.264 and 802.11 declared-essential patents on RAND terms.

1. <u>As a Matter of Law, Microsoft Is Entitled to a RAND License</u>.

On this Motion, Microsoft requests that the Court rule that <u>it remains entitled</u> to the requested RAND license under Fed. R. Civ. P. 56(g).[31]  This requested ruling does not depend on whether the Court also rules that Motorola has breached its RAND duties as a matter of law.[32]  An action to enforce a contract is not a repudiation, regardless of whether the request for enforcement is accompanied by a claim of breach or whether a breach is later found. *Research in Motion* is compelling on this point.  RIM alleged that Motorola's demands were a breach; Motorola defended, claiming that negotiations should occur.  But Motorola also argued that—despite RIM's resort to an action for breach—the Court should set RAND terms for a license:

> [Motorola] contends that even if it has breached its agreements with RIM or the SDOs, eventually RIM will receive a FRAND license; either this court will determine FRAND terms or the parties will settle on FRAND terms on their own….<u>Motorola is correct that, in the end, RIM will receive fair licensing terms</u>.[33]

*I.e.*, Motorola recognized the action for breach was not a repudiation.  This result is inevitable as a matter of law and logic.  A party does not repudiate a contract by seeking to enforce it, nor does the plaintiff claim breach only on pain of losing all contract rights should the Court reject

---

[31] Rule 56(g) provides, "[i]f the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case."

[32] *See, e.g., Pensionefonds Metaal en Techniek v. Strategic DSRG, LLC*, 2011 WL 310327, *6 (S.D.N.Y. 2011) (denying motion for summary judgment on claim for breach of contract but determining obligations under "Put Agreement" as a matter of law under Rule 56(g)); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ready Pac Foods, Inc.*, 2011 WL 1083374, *3 (C.D.Cal. 2011) ("Rule 56(g) allows a court to grant partial summary judgment, thereby reducing the number of facts at issue in a trial.").

[33] 644 F. Supp. 2d at 797 (emphasis added); *cf. Zoran Corp. v. DTS, Inc.*, 2009 U.S. Dist. LEXIS 6675 (N.D. Cal. Jan. 20, 2009) (SSO IPR policy providing for arbitration of the reasonableness of every offer).

MICROSOFT'S REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT  - 9

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

the claim.[34]  Enforcement is the opposite of repudiation.[35]

Microsoft's request for a judicial declaration of the parties' rights is an affirmation of its contract.[36]  Declaratory relief is in fact intended to "set controversies at rest before they lead to repudiation of obligations...."[37]  But even if there were doubt on the point, a "party's intent not to perform his contractual obligations…may not be implied from 'doubtful and indefinite statements that performance may or may not take place.'"[38]  Repudiation will be found only where there is an unequivocal indication that the repudiating party will not perform.[39]

Microsoft's efforts to secure a RAND offer do not remotely meet this standard.  As a

---

[34] *See Johnson v. Brado,* 56 Wn. App. 163, 167, 783 P.2d 92 (1989) (a decision to enforce the contract and sue for damages bars the purchaser from rescinding the contract); *Pacific Coast Engineering Co. v. Merritt-Chapman & Scott Corporation*, 411 F.2d 889, 894 (9th Cir. 1969) (explaining that one may sue to enforce its interpretation of contract without repudiating, even if that interpretation is later deemed erroneous); *see also Kimel v. Missouri State Life Ins. Co*, 71 F.2d 921, 923 (10th Cir. 1934) (explaining logic behind allowing party to press its understanding of contractual obligations without losing the benefit of the contract).

[35] *Nash v. GMAC Mortgage, LLC*, 2011 WL 2470645, *10 (D.R.I. May 18, 2011) ("efforts to enforce the express terms of a contract do not constitute a breach of contract"); *McKensi v. Bank of America, N.A.*, 2010 U.S. Dist. LEXIS 99540, *11 (D. Mass. Sept. 22, 2010) (same); *Ramos v. Citimortgage, Inc.*, 2009 WL 86744 *6 (E.D. Cal. Jan. 8, 2009) ("alleged enforcement of a contract term, without more, cannot constitute a breach of contract"); *Missouri Public Service Co. v. Peabody Coal Co.*, 583 S.W.2d 721, 725 (1979) (seeking specific performance of enforceable contract does not constitute breach of that contract).

[36] *See, e.g., Penn Mut. Life Ins. Co. v. Espinosa*, 2010 U.S. Dist. LEXIS 77334, *24 (D. Del., July 30, 2010) (finding no repudiation of policy by insurer where "only act of repudiation alleged to have been committed by Plaintiff is the filing of the present action [for declaratory relief]"); *Principal Life Ins. Co. v. Minder*, 2009 U.S. Dist. LEXIS 56568, *10 (E.D. Pa., July 1, 2009) ("seeking a declaratory judgment concerning one's rights and obligations under a contract does not constitute a repudiation...."). *See also Keener Oil & Gas Co. v. Consolidated Gas Utilities Corp.*, 190 F.2d 985, 989 (10th Cir. 1951) ("a party to a contract is not compelled to wait until he has committed an act which the other party asserts will constitute a breach, but may seek relief by declaratory judgment and have the controversy adjudicated in order that he may avoid the risk of damages or other untoward consequences.").

[37] *Environmental Defense Project of Sierra County v. County of Sierra*, 70 Cal.Rptr.3d 474, 479 (Cal.App. 2008); *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969) (the "two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.").

[38] *Lovric v. Dunatov*, 18 Wn. App. 274, 282, 567 P.2d 678 (1977).  *See also Alaska Pacific Trading Co. v. Eagon Forest Products*, 85 Wn. App. 354, 365, 933 P.2d 417 (1997).

[39] *Lovric*, 18 Wn. App. at 282.

MICROSOFT'S REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT  - 10

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

matter of law, Microsoft is entitled to a license on RAND terms.[40]  Microsoft is entitled to, and requests, an order to this effect under Rule 56(g).

**D.    Motorola Is Not Entitled to a Continuance.**

Microsoft's motion is not premature and Motorola's request for a continuance should be denied.[41]  A party seeking a Rule 56(d) continuance must

> identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment.[42]

It must also show that the discovery sought exists.[43]  "Mere speculation that there is some relevant evidence not yet discovered will never suffice."[44]  The movant must have diligently pursued discovery.[45]  Rule 56(d) is not a substitute for a motion to compel.[46]

Motorola may not rely on "generically relevant" evidence[47] but must aver the *specific* facts to be discovered and "how the evidence is 'essential' to oppose summary judgment."[48]  It has failed to do so, or even to commit to perform the discovery,[49] relying instead for example,

---

[40] Motorola's reliance on *Commonwealth Scientific & Indus. Research Org. v. Buffalo Tech. Inc.*, 492 F. Supp. 2d 600 (E.D. Tex. 2007), is misplaced.  Unlike here, the licensee in *Buffalo Tech* was not suing to determine its entitlement to a RAND license.  The licensee earlier refused to take a license on any terms.  The *Buffalo Tech.* court's analysis has subsequently been called into question.  *See Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951, 983 (N.D. Cal. 2009).

[41]  Under Rule 56(b) "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."  The Court's August 5, 2011 scheduling order does not disagree.  Microsoft's timing is consistent with its position in the Second Revised Joint Status Report – these issues can be summarily dealt with now.

[42] *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006).

[43] *Rosalez v. Baker*, No. 2010 WL 4068926 (W.D. Wash. Oct. 15, 2010) (Coughenour, J.), *citing Family Home & Finance Center v. Federal Home Loan Mortgage Co.*, 525 F.3d 822, 827 (9th Cir. 2008).

[44] Moore's Federal Practice 3d, § 56.102[2], p. 272-73.

[45] *Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 844 (9th Cir.1994).

[46] *Family Home and Finance Center*, 525 F.3d at 827-28.

[47] *Id.,* at 827.

[48] *Id.*

[49] *See, e.g.*, Post Decl. (Dkt. No. 87), ¶¶ 28, 31 (stating with respect to additional discovery from the Patent Pools, "Motorola has not determined at this point whether an additional subpoena of MPEG LA [or Via Licensing] is necessary.")  Motorola acknowledges that these entities have produced materials in response to Microsoft's subpoenas.

MICROSOFT'S REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT  - 11

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

on "the identification and potential deposition of as-yet unidentified third parties."[50]

Microsoft timely responded to Motorola's only discovery on February 28, 2011. On June 17, 2011, Microsoft stated in the parties' Second Revised Joint Status Report that it planned to move on the RAND issues. Motorola concedes it has never sought a meet and confer,[51] but now says Microsoft's responses are deficient. This is not diligence.

Motorola's Rule 56(d) motion, like the rest of its Opposition, ducks the core issue: its demand for a flat percentage royalty over a specifically-identified list of products, including laptops, smartphones, PC's and Xbox 360, leads to outrageously unreasonable royalties and is a breach of its RAND obligations. Motorola has neither provided, nor identified, evidence that would refute this fact.

## CONCLUSION

For the reasons stated above and set forth in Microsoft's opening brief, partial summary judgment should be granted, including under Rule 56(g), as set forth in the (Proposed) Order concurrently submitted herewith.

DATED this 30th day of September, 2011.

DANIELSON HARRIGAN LEYH & TOLLEFSON LLP

By   /s/ Arthur W. Harrigan, Jr.
    Arthur W. Harrigan, Jr., WSBA #1751
    Christopher Wion, WSBA #33207
    Shane P. Cramer, WSBA #35099

---

[50] *Id.*, at ¶ 37.

[51] *Id.*, at ¶ 25.

MICROSOFT'S REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 12

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

T. Andrew Culbert, WSBA #35925
David E. Killough, WSBA #40185
MICROSOFT CORPORATION
1 Microsoft Way
Redmond, WA  98052
Phone:  425-882-8080
Fax:  425-869-1327

David T. Pritikin, *Pro Hac Vice*
Richard A. Cederoth, *Pro Hac Vice*
Douglas I. Lewis, *Pro Hac Vice*
John W. McBride, *Pro Hac Vice*
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL  60603
Phone:  312-853-7000
Fax:  312-853-7036

Brian R. Nester, *Pro Hac Vice*
Kevin C. Wheeler, *Pro Hac Vice*
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC  20005
Telephone:  202-736-8000
Fax:  202-736-8711

Counsel for Microsoft Corporation

MICROSOFT'S REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT  - 13

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

**Attorneys for Defendants Motorola Solutions, Inc., Motorola Mobility, Inc., and General Instrument Corporation**

Philip S. McCune
Lynn M. Engle
Summit Law Group

Steven Pepe
Jesse J. Jenner
Norman Beamer
Paul M. Schoenhard
Ropes & Gray

        ___/s/ Linda Bledsoe_____
        LINDA BLEDSOE

MICROSOFT'S REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 14

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717