# EXHIBIT 5

• CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER •

The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION, a Washington corporation

Plaintiff,

v.

MOTOROLA, INC., and MOTOROLA MOBILITY, INC., and GENERAL INSTRUMENT CORPORATION,

Defendants.

MOTOROLA MOBILITY, INC. and GENERAL INSTRUMENT CORPORATION,

Plaintiffs/Counterclaim Defendant,

v.

MICROSOFT CORPORATION,

Defendant/Counterclaim Plaintiff.

CASE NO. C10-1823-JLR

DEFENDANT/COUNTERCLAIM PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES **AND PLAINTIFF/COUNTERCLAIM DEFENDANT'S MOTOROLA MOBILITY'S SECOND SUPPLEMENTAL RESPONSES THERETO** (NOS. 1, 7, 9, 11)

**CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs/Counterclaim Defendants Motorola Mobility, Inc. and General Instrument Corporation (collectively, "Motorola," or "Motorola Mobility") hereby supplements its responses to Defendant/Counterclaim Plaintiff Microsoft Corporation's ("Microsoft") First Set of Interrogatories as follows:

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO DEFENDANTS
MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT
MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES - 1**

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7000

446

# REDACTED

**INTERROGATORY NO. 11**

If you contend that any asserted claim of the Microsoft Patents-In-Suit is invalid, state for each claim the basis for this contention (including all facts, information, prior art and documents that You assert support or are pertinent to its contention of invalidity) including describing in detail where each element, limitation, or step of each claim is found in the alleged prior art (i.e., read each claim on the alleged prior art by providing, separately for each claim element, a claim-element by claim-element comparison of each claim to the structure, function or disclosure of the

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO DEFENDANTS
MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT**
**MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES** - 10

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7000

447

• CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER •

alleged prior art), and identifying the person or persons most knowledgeable about such contentions and bases.

**RESPONSE TO INTERROGATORY NO. 11**

Motorola objects to this Interrogatory as premature and to the extent that it seeks to impose any requirement or obligation on Motorola in addition to, beyond the scope of, or different from those imposed by the Federal Rules of Civil Procedure, Judge Robart's Standing Order for Patent Cases and/or Local Rules of the United States District Court for the Western District of Washington. Motorola also objects to this Interrogatory to the extent that it calls for the substance of expert opinion or anticipated testimony as the timing of such identification is governed by the Federal Rules of Civil Procedure, Judge Robart's Standing Order for Patent Cases and/or Local Rules of the United States District Court for the Western District of Washington. Motorola further objects to this interrogatory to the extent it seeks a legal conclusion and/or presents a question of law. Motorola also objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product immunity, or other applicable privilege or immunity.

Subject to and without waiving its General Objections and foregoing specific objections, Motorola contends that each asserted claim of the Microsoft Patents-In-Suit is invalid under one or more sections of 35 U.S.C. §§ 102 or 103, and/or failure to comply with the requirements of 35 U.S.C. § 112. Motorola's invalidity contentions reflect present knowledge and contentions, and Motorola reserves all rights to modify and supplement these contentions without prejudice in the event that additional invalidity grounds are identified. Given that the parties have not yet specifically identified proposed terms for construction or provided their proposed constructions, Motorola's invalidity contentions are necessarily preliminary. Motorola's contentions herein are not, and should in no way be seen as, admissions or adoptions as to any particular claim scope or construction, or as any admission that any particular element is met in any particular way.

Motorola reserves the right to modify, amend and/or supplement these contentions in view of, without limitation, information provided by Microsoft concerning its infringement allegations;

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANTS MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES** - 11

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7000

448

♦ CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER ♦

discovery concerning the alleged priority, conception, and reduction to practice dates for any of the asserted claims; additional prior art obtained through discovery or further investigation, including without limitation discovery from Microsoft or third parties; the Court's claim construction findings; or any other basis in law or in fact.

Motorola sets forth below an identification of references that Motorola may rely on to show that each asserted claim of the Microsoft Patents-In-Suit to be invalid, either alone or in combination with one or more references.

- Prior Art to U.S. Patent No. 6,339,780

  - U.S. Patent 6,584,498
  - U.S. Patent 5,528,744
  - U.S. Patent 6,377,978
  - U.S. Patent 5,768,539
  - U.S. Patent 5,886,683
  - U.S. Patent 6,816,880
  - U.S. Patent 6,182,072
  - U.S. Patent 5,978,848
  - U.S. Patent 5,960,435
  - U.S. Patent 6,108,673
  - U.S. Patent 5,995,756
  - U.S. Patent 6,011,537
  - U.S. Patent 6,487,588
  - U.S. Patent 6,437,758
  - U.S. Patent 5,896,444
  - U.S. Patent 5,805,815
  - U.S. Patent 5,790,785
  - U.S. Patent 5,761,385
  - U.S. Patent 6,493,002
  - U.S. Patent 5,600,825
  - U.S. Patent 5,572,643

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO DEFENDANTS
MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT
MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES** - 12

449

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7000

• CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER •

- U.S. Publication No. 20030163431A1

- Heltzell, Dallas, *AOL users cheer blue bar's death*, Colorado Springs Gazette Telegraph, *30 June 1996*

- Kasten, Alex S., *Off-computer CD-ROM and the game machines*, EMedia Professional, Vol. 10, No. 3, ISSN: 1090-946X, 1 March 1997

- Roulo, Mark, *Creating download progress bars for applets; Here's a way to keep users happy while they wait for your applet to download*, JavaWorld.com (Online), 1 December 1996

- Prior art to U.S. Patent 7,411,582

  - U.S. Patent 5,157,384

  - U.S. Patent 6,608,637

  - U.S. Patent 5,796,967

  - U.S. Patent 5,638,501

  - U.S. Patent 5,764,226

  - U.S. Patent 5,778,404

  - U.S. Patent 5,528,248

  - U.S. Patent 6,128,016

  - U.S. Patent 5,949,418

  - U.S. Patent 5,822,230

  - U.S. Patent 5,805,157

  - U.S. Patent 5,581,243

  - U.S. Patent 5,825,362

  - U.S. Patent 5,661,476

  - U.S. Patent 5,594,471

  - U.S. Patent 5,606,702

  - U.S. Patent 5,252,951

  - U.S. Patent 5,509,103 (WO 9531264)

  - U.S. Patent 6,611,258 (JP9190268)

  - JP9251379

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO DEFENDANTS
MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT
MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES** - 13

450

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7000

• CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER •

- Vanderheiden, G.C., *Cross disability assess to touch screen kiosks and ATMs*, Proceeding of 7th International Conference on Human Computer Interaction jointly with 13th Symposium on Human Interface, vol.1., pp. 417-20, Aug. 1997.

- Montaniz, F.1 and Mack, R.1, *A comparison of touch interface techniques for a graphical windowing software environment*, Proceedings of the Human Factors Society 35th Annual Meeting, 290-4 vol.1, 1991.

- Sternecker, G., *The Apple Graphics Tablet*, Creative Computing, v 7, n 1, 28-9, Jan. 1981.

- Tanaka, Toshinori and Kobayashi, Shunsuke, *Entry of data and command for an LCD by direct touch: an integrated LCD panel*, Digest of Technical Papers - SID International Symposium (Society for Information Display), v 17, p 318-320, 1986.

- William Buxton, Ralph Hill and Peter Rowley, *Issues and techniques in touch-sensitive tablet input,* SIGGRAPH '85 Proceedings of the 12th annual conference on Computer graphics and interactive techniques ACM New York, NY, USA ©1985.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11**

Motorola objects to this Interrogatory as premature and to the extent that it seeks to impose any requirement or obligation on Motorola in addition to, beyond the scope of, or different from those imposed by the Federal Rules of Civil Procedure, Judge Robart's Standing Order for Patent Cases and/or Local Rules of the United States District Court for the Western District of Washington.  Motorola also objects to this Interrogatory to the extent that it calls for the substance of expert opinion or anticipated testimony as the timing of such identification is governed by the Federal Rules of Civil Procedure, Judge Robart's Standing Order for Patent Cases and/or Local Rules of the United States District Court for the Western District of Washington.  Motorola further objects to this interrogatory to the extent it seeks a legal conclusion and/or presents a question of law.  Motorola also objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product immunity, or other applicable privilege or immunity.

Subject to and without waiving its General Objections and foregoing specific objections, Motorola contends that each asserted claim of the Microsoft Patents-In-Suit is invalid under one or more sections of 35 U.S.C. §§ 102 or 103, and/or failure to comply with the requirements of 35 U.S.C. § 112.  This case is still in the early stages of discovery.  Motorola has not yet completed

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO DEFENDANTS
MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT
MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES - 14**

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7000

451

• CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER •

1    its investigation, collection of information, discovery, or analysis related to this action.

2    Motorola's invalidity contentions reflect present knowledge and contentions, and Motorola

3    reserves all rights to modify and supplement these contentions without prejudice as necessary

4    based on further discovery and investigation, review of newly or yet-to-be produced documents, or

5    any rulings of the Court.  Given that the parties have not yet specifically identified proposed terms

6    for construction or provided their proposed constructions, Motorola's invalidity contentions are

7    necessarily preliminary.  Motorola's contentions herein are not, and should in no way be seen as,

8    admissions or adoptions as to any particular claim scope or construction, or as any admission that

9    any particular element is met in any particular way.  Motorola objects to any attempt to imply

10   claim constructions from any identification of potential prior art.

11          Motorola reserves the right to modify, amend and/or supplement these contentions in view

12   of, without limitation, information provided by Microsoft concerning its infringement allegations;

13   discovery concerning the alleged priority, conception, and reduction to practice dates for any of

14   the asserted claims; additional prior art obtained through discovery or further investigation,

15   including without limitation discovery from Microsoft or third parties; the Court's claim

16   construction findings; or any other basis in law or in fact.

17          Motorola sets forth below an identification of references that Motorola may rely on to

18   show each asserted claim of the Microsoft Patents-In-Suit to be invalid, either alone or in

19   combination with one or more references.  Motorola further provides in the attached Exhibits

20   (Exhibits A-K) exemplar charts containing detailed descriptions illustrative of where each element

21   of each asserted claim of the Microsoft Patents-In-Suit is anticipated or rendered obvious.  Each of

22   the exemplar charts sets forth where each charted reference anticipates the asserted claims of the

23   Microsoft Patents-In-Suit.  Obviousness arguments are set forth in the alternative where

24   appropriate.  The charted prior art references may contain additional support for particular claim

25   limitations.  Motorola expressly reserves the right to rely on uncited portions of those prior art

26   references, other documents, and expert testimony to provide context for or to aid in understanding

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO DEFENDANTS
MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT
MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES - 15**

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7000

452

• CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER •

the cited portions of the references.  Where Motorola cites to a particular figure in a reference, the citation should be understood to encompass the caption and description of the figure and any text relating to or discussing the figure.  Conversely, where Motorola cites to a particular text referring to a figure, the citation should be understood to include the referenced figure as well.  In the Exhibits attached, Motorola provides citations of where the prior art references disclose subject matter recited in preambles, without regard to whether the preambles are limitations of the claims.  Motorola reserves the right to argue that the preambles are or are not limitations.

The claims of the Microsoft Patents-In-Suit do not represent a patentable advance over the prior art, and accordingly are anticipated by and/or obvious, taken alone or in combination, in view of the following references:

- Prior Art to U.S. Patent No. 6,339,780

  - U.S. Patent 6,584,498 (06/24/2003)
  - U.S. Patent 5,528,744 (06/18/1996)
  - U.S. Patent 6,377,978 (04/23/2002)
  - U.S. Patent 5,768,539 (06/16/1998)
  - U.S. Patent 5,886,683 (03/23/1999)
  - U.S. Patent 6,816,880 (11/09/2004)
  - U.S. Patent 6,182,072 (01/30/2001)
  - U.S. Patent 5,978,848 (11/02/1999)
  - U.S. Patent 5,960,435 (09/28/1999)
  - U.S. Patent 6,108,673 (08/22/2000)
  - U.S. Patent 5,995,756 (11/30/1999)
  - U.S. Patent 6,011,537 (01/04/2000)
  - U.S. Patent 6,487,588 (11/26/2002)
  - U.S. Patent 6,437,758 (08/20/2002)
  - U.S. Patent 5,896,444 (04/20/1999)
  - U.S. Patent 5,805,815 (09/08/1999)
  - U.S. Patent 5,790,785 (08/04/1998)

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO DEFENDANTS
MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT
MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES** - 16

453

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7000

♦ CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER ♦

- U.S. Patent 5,761,385 (06/02/1998)
- U.S. Patent 6,493,002 (12/10/2002)
- U.S. Patent 5,600,825 (02/04/1997)
- U.S. Patent 5,572,643 (11/05/1996)
- U.S. Patent 6,023,698 (02/08/2000)
- U.S. Patent 5,737,619 (04/07/1998)
- U.S. Patent 6,263,507 (07/17/2001)
- U.S. Patent 5,513,126 (04/30/1996)
- U.S. Patent 5,515,496 (05/07/1996)
- WO 98/25198 (06/11/1998)
- U.S. Publication No. 20030163431A1 (08/28/2003)
- Heltzell, Dallas, *AOL users cheer blue bar`s death*, Colorado Springs Gazette Telegraph*, 30 June 1996.*
- Kasten, Alex S., *Off-computer CD-ROM and the game machines*, EMedia Professional, Vol. 10, No. 3, ISSN: 1090-946X, 1 March 1997.
- Roulo, Mark, *Creating download progress bars for applets; Here's a way to keep users happy while they wait for your applet to download*, JavaWorld.com (Online), 1 December 1996.
- S. Gessler and A. Kotulla. PDAs as Mobile WWW Browsers. Computer Networks and ISDN Systems 28 (1995) 53-59.
- M. Liljeberg, T. Alanko et al. Optimizing World-Wide Web for Weakly Connected Mobile Workstations:  An Indirect Approach. Proceedings of SDNE '95 (June 5-6 Whistler, Canada).
- M. Liljeberg, H. Helin, et al. Enhanced Services for World Wide Web in Mobile WAN Environment. University of Helsinki Report C-1996-28 (Helsinki, April 1996).
- M. Liljeberg, H. Helin, et al. MOWGLI WWW Software:  Improved Usability of WWW in Mobile WAN Environments.
- I. Cooper and R. Shufflebotham. PDAWeb Browsers: Implementation Issues. (University of Kent at Canterbury, November 9, 1995).
- M. Pichler, G. Orasche, and K. Andrews. VRweb:  A Multi-System VRML Viewer. (San Diego, California, December 1995).
- B. Gaines. Supporting Collaboration Through Multimedia Digital Archives. Knowledge Science Institute, University of Calgary. (Version 1.0, November 1994).

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANTS MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES** - 17

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7000

454

♦ CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER ♦

- B. Kelly. Running a World Wide Web Service. Advisory Group on Computer Graphics. (University of Leeds, February 1995).

- J. Bartlett. Experience with a Wireless World Wide Web Client. IEEE COMPCON 95 (San Francisco, March 1995).

- G. Voelker and B. Bershad. Mobisaic: An Information System for a Mobile Wireless Computing Environment. Workshop on Mobile Computing Systems and Applications (Santa Cruz, December 1994).

- T. Watson. Application Design for Wireless Computing. 1994 Mobile Computing Systems and Applications Workshop Position Paper (August 1994).

- NetHopper Version 3.0 User's Manual. 1997 AllPen Software, Inc.

- NetHopper Version 3.2 User's Manual. 1997 AllPen Software, Inc.

- NetHopper 2.0. Pen Lab Review. Pen Computing Issue #11. (July/August 1996).

- PocketWeb WWW Browser for the Apple Newton MessagePad. TecO. http://www.teco.edu/pocketweb/

- R. Simon. The Newton in a Windows Environment. Worldwide Newton Conference. (San Francisco, January 2006).

- A. Iellimo, Jr. PDAs the Next Generation. Network World (March 13, 1995).

- B. Meyers. A Taxonomy of Window Manager User Interfaces. IEEE. (September 1988).

- T. Sundsted. Java and event handling. JAVAWorld. (August 1, 1996).

- T. Sundsted. Introduction to the AWT. JAVAWorld. (July 1, 1996).

- T. Bickmore and B. Schilit. Digestor: Device-independent Access to the World Wide Web.  (FX Palo Alto Laboratory).

- T. Kamba, S. A. Elson, T. Harpold, T. Stamper, and P. Sukaviriya. (1996). "Using small screen space more efficiently."

- M. Lauff and H. Gellerson. Multimedia Client Implementation on Personal Digital Assistants. TecO.

- E. Morgan. Implementing TCP/IP communications with HyperCard. Information Technology and Libraries 11(4):421-432 (December 1992).

- B. Meyers. The Importance of Percent-Done Progress Indicators for Computer-Human Interfaces. CHI '85 Proceedings (April 1985).

- A. deLespinasse. Rover Mosaic: E-mail Communication for a Full-Function Web Browser. Massachusetts Institute of Technology. June 1995.

- R. Robertson. Binary Communications. Newton Technology Journal. March 1997.

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO DEFENDANTS
MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT
MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES - 18**

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7000

455

• CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER •

- Newton Programmer's Guide For Newton 2.0. Apple Press. Addison-Wesley Publishing Company. 1996.
- G. Macisaac. Priming the Cognitive Pump: Implicit Memory and Navigating Multiple Window Interfaces. The University of British Columbia. October 1994.
- F. Ergen. Effects of Interface Format, Feedback Style, and System Lag On the Usability of Hand-Held Internet Controllers. Virginia Polytechnic Institute and State University. December 17, 1996.
- Mosaic for Windows: A Hands-On Configuration and Set-Up Guide to Popular Web Browsers. Springer-Verlag New York, Inc. 1995.
- Web Browsers (e.g., NetHopper, Newt's Cape, PocketWeb, Vogon, etc.)

- Prior art to U.S. Patent 7,411,582

  - U.S. Patent 4,899,136 (02/06/1990)
  - U.S. Patent 5,157,384 (10/20/1992)
  - U.S. Patent 6,608,637 (08/19/2003)
  - U.S. Patent 5,796,967 (08/18/1998)
  - U.S. Patent 5,638,501 (06/10/1997)
  - File wrapper to U.S. Patent 5,638,501
  - U.S. Patent 5,764,226 (06/09/1998)
  - U.S. Patent 5,778,404 (07/07/1998)
  - U.S. Patent 5,528,248 (06/18/1996)
  - U.S. Patent 6,128,016 (10/03/2000)
  - U.S. Patent 5,949,418 (09/07/1999)
  - U.S. Patent 5,822,230 (10/13/1998)
  - U.S. Patent 5,805,157 (09/08/1998)
  - U.S. Patent 5,581,243 (5,581,243)
  - U.S. Patent 5,825,362 (10/20/1998)
  - U.S. Patent 5,661,476 (08/26/1997)
  - U.S. Patent 5,594,471 (01/14/1997)
  - U.S. Patent 5,606,702 (02/25/1997)
  - U.S. Patent 5,252,951 (10/12/1993)
  - File wrapper to U.S. Patent 5,252,951

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANTS MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES** - 19

456

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7000

• CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER •

- U.S. Patent 5,509,103 (WO 9531264) (04/16/1996)
- U.S. Patent 6,611,258 (JP9190268) (08/26/2003)
- U.S. Patent 5,454,046 (09/26/1995)
- U.S. Patent 5,455,901 (10/03/1995)
- U.S. Patent 5,371,844 (12/06/1994)
- U.S. Patent 5,911,485 (06/15/1999)
- U.S. Patent 5,717,425 (02/10/1998)
- U.S. Patent 5,812,117 (09/22/1998)
- U.S. Patent 5,603,053 (02/11/1997)
- U.S. Patent 5,689,669 (11/18/1997)
- U.S. Patent 5,611,031 (03/11/1997)
- U.S. Patent 5,479,536 (12/26/1995)
- U.S. Patent 5,250,929 (10/05/1993)
- U.S. Patent 5,583,539 (12/10/1996)
- U.S. Patent 5,148,155 (09/15/1992)
- Filewrapper to U.S. Patent 5,148,155
- U.S. Patent 5,260,697 (11/09/1993)
- U.S. Patent 6,154,209 (11/28/2000)
- U.S. Patent 4,725,694 (02/16/1988)
- WO 9,532,469 (11/30/95)
- GB 2,309,365 (07/23/97)
- EP 0,464,712 (01/18/92)
- EP 0,811,940 (10/12/97)
- WO 9,415,273 (07/07/94)
- JP 7,098,640 A2 (04/11/95)
- JP 9,251,379 (09/22/97)
- Vanderheiden, G.C., Cross disability assess to touch screen kiosks and ATMs, Proceeding of 7th International Conference on Human Computer Interaction jointly with 13th Symposium on Human Interface, vol.1. pp. 417-20, Aug. 1997.

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO DEFENDANTS
MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT
MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES - 20**

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7000

457

• CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER •

- Montaniz, F.1 and Mack, R.1, A comparison of touch interface techniques for a graphical windowing software environment, Proceedings of the Human Factors Society 35th Annual Meeting, 290-4 vol.1, 1991.

- Sternecker, G., The Apple Graphics Tablet, Creative Computing, v 7, n 1, 28-9, Jan. 1981.

- Tanaka, Toshinori and Kobayashi, Shunsuke, Entry of data and command for an LCD by direct touch: an integrated LCD panel, Digest of Technical Papers - SID International Symposium (Society for Information Display), v 17, p 318-320, 1986.

- William Buxton, Ralph Hill and Peter Rowley, Issues and techniques in touch-sensitive tablet input, SIGGRAPH '85 Proceedings of the 12th annual conference on Computer graphics and interactive techniques ACM New York, NY, USA ©1985.

- Brown, E., Buxton, W. & Murtagh, K., Windows on tablets as a means of achieving virtual input devices, In D. Diaper et al. (Eds), Human-Computer Interaction - INTERACT '90. Amsterdam: Elsevier Science Publishers B.V. (North-Holland), 675-681, 1990.

- Apple Press, Apple Computer Inc., Newton's Programmer's Guide, For Newton 2.0, Addison Wesley Publishing Company (1996).

- Newton – Apple MessagePad Handbook (Apple) 1995.

- The NewtonScript Programming Language (Apple) 1996.

- Apple Press, Apple Computer Inc., Newton 2.0 User Interface Guidelines. Addison Wesley Publishing Company (1996).

- Apple Press, Apple Computer Inc., Newton's Programmer's Reference. For Newton 2.0. The Apple Publishing System (1996)

- Taligent Keeps Its Promises, Oct. 23, 1995, Information Week

- Simon –Mobile Communications Made Simple, (Bell South, 1994)

- Simonizing the PDA – BellSouth's communicative Simon is a milestone in the evolution of the PDA., Dec. 1994

- Magic Cap-A Guide to General Magic's Revolutionary Communicator Software by Barbara Knaster; Addison-Wesley Publishing Company (February 1994)

- Eliezer Kantorowitz, Oded Sudarsky, The Adaptable Use Interface, Computer Practices Communication of the ACM- Vol. 32 Number 11,1352-1358, Nov. 1989

- Peter Y.F. Wu, Research Report – User Interface Management Systems: Survey and Assessment (IBM) May 22, 1989

- Magic Link User's Guide PIC-1000 - Personal Intelligent Communicator (Sony) 1994

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANTS MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES - 21**

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7000

458

• CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER •

- DATAMAN – The Complete Contact Management Solution for the Newton OS-PMI and StandAlone Inc. 1997

- Joel F. Bartlett- Experience With A Wireless World Wide Web Client- WRL Technical Note TN-46, Digital Western Research Laboratory, March 1995

- Albert Iellimo, PDAs The Next Generation Network World 3/13/1995

- Liu, Raymond et al. "A Platform For Multilingual Application Development with Unicod Standard." International Conference on Chinese Computing '94 (ICCC94). The Latest Technological Advancement and Application. June, 1-4, 1994. Singapore.

- Bartlett W., Mel et al. "Tablet: Personal Computer in the Year 2000." Communication of the ACM . Vol. 31.6. June, 1988. 639-646.

- Want, Roy et al. "The ParcTab Ubiquitous Computing Experiment" (March 1995)Brockschmidt, Kraig. Inside Ole, Second Edition. Microsoft Press. (1995)

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11**

Motorola incorporates by reference each of its previous objections and responses as if fully set forth herein. Motorola also hereby incorporates its March 30, 2011 response to this Interrogatory, its September 30, 2011 first supplemental response to this Interrogatory, and Exhibits A-K to Motorola's September 30, 2011 supplemental response. Subject to and without waiving its objections, Motorola, as currently advised and based on its investigation to date, provides the following supplemental response:

Subject to and without waiving its General Objections and foregoing specific objections, Motorola contends that each asserted claim of the Microsoft Patents-In-Suit is invalid under one or more sections of 35 U.S.C. §§ 102 or 103, and/or failure to comply with the requirements of 35 U.S.C. § 112. This case is still in the early stages of discovery. Motorola has not yet completed its investigation, collection of information, discovery, or analysis related to this action. Motorola's invalidity contentions reflect present knowledge and contentions, and Motorola reserves all rights to modify and supplement these contentions without prejudice as necessary based on further discovery and investigation, review of newly or yet-to-be produced documents, or any rulings of the Court. Given that the parties have not yet specifically identified proposed terms

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO DEFENDANTS
MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT
MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES - 22**

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7000

459

✦ CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER ✦

for construction or provided their proposed constructions, Motorola's invalidity contentions are necessarily preliminary. Motorola's contentions herein are not, and should in no way be seen as, admissions or adoptions as to any particular claim scope or construction, or as any admission that any particular element is met in any particular way. Motorola objects to any attempt to imply claim constructions from any identification of potential prior art.

Motorola reserves the right to modify, amend and/or supplement these contentions in view of, without limitation, information provided by Microsoft concerning its infringement allegations; discovery concerning the alleged priority, conception, and reduction to practice dates for any of the asserted claims; additional prior art obtained through discovery or further investigation, including without limitation discovery from Microsoft or third parties; the Court's claim construction findings; or any other basis in law or in fact.

Motorola sets forth below an identification of references that Motorola may rely on to show each asserted claim of the Microsoft Patents-In-Suit to be invalid, either alone or in combination with one or more references. Motorola further provides in the attached Exhibits (Exhibits A-P) exemplar charts containing detailed descriptions illustrative of where each element of each asserted claim of the Microsoft Patents-In-Suit is anticipated or rendered obvious. Each of the exemplar charts sets forth where each charted reference anticipates the asserted claims of the Microsoft Patents-In-Suit. Obviousness arguments are set forth in the alternative where appropriate. This response includes additional obviousness combinations for previously served Exhibits A-K. Therefore, Exhibits A-K are being provided in redline format to illustrate the additional obviousness arguments. The charted prior art references may contain additional support for particular claim limitations. Motorola expressly reserves the right to rely on uncited portions of those prior art references, other documents, and expert testimony to provide context for or to aid in understanding the cited portions of the references. Where Motorola cites to a particular figure in a reference, the citation should be understood to encompass the caption and description of the figure and any text relating to or discussing the figure. Conversely, where Motorola cites to a

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO DEFENDANTS
MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT
MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES** - 23

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7000

460

♦ CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER ♦

particular text referring to a figure, the citation should be understood to include the referenced figure as well.  In the Exhibits attached, Motorola provides citations of where the prior art references disclose subject matter recited in preambles, without regard to whether the preambles are limitations of the claims.  Motorola reserves the right to argue that the preambles are or are not limitations.

As stated above, Exhibits A-P include exemplary charts that set forth Motorola's current invalidity contentions based on its investigation to date.  Motorola's investigation is continuing and, accordingly, Motorola reserves the right to rely on one or more of the following references:

- Prior Art to U.S. Patent No. 6,339,780

  - U.S. Patent 6,584,498 (06/24/2003)
  - U.S. Patent 5,528,744 (06/18/1996)
  - U.S. Patent 6,377,978 (04/23/2002)
  - U.S. Patent 5,768,539 (06/16/1998)
  - U.S. Patent 5,886,683 (03/23/1999)
  - U.S. Patent 6,816,880 (11/09/2004)
  - U.S. Patent 6,182,072 (01/30/2001)
  - U.S. Patent 5,978,848 (11/02/1999)
  - U.S. Patent 5,960,435 (09/28/1999)
  - U.S. Patent 6,108,673 (08/22/2000)
  - U.S. Patent 5,995,756 (11/30/1999)
  - U.S. Patent 6,011,537 (01/04/2000)
  - U.S. Patent 6,487,588 (11/26/2002)
  - U.S. Patent 6,437,758 (08/20/2002)
  - U.S. Patent 5,896,444 (04/20/1999)
  - U.S. Patent 5,805,815 (09/08/1999)
  - U.S. Patent 5,790,785 (08/04/1998)
  - U.S. Patent 5,761,385 (06/02/1998)
  - U.S. Patent 6,493,002 (12/10/2002)

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO DEFENDANTS
MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT
MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES** - 24

461

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7000

♦ CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER ♦

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

- U.S. Patent 5,600,825 (02/04/1997)
- U.S. Patent 5,572,643 (11/05/1996)
- U.S. Patent 6,023,698 (02/08/2000)
- U.S. Patent 5,737,619 (04/07/1998)
- U.S. Patent 6,263,507 (07/17/2001)
- U.S. Patent 5,513,126 (04/30/1996)
- U.S. Patent 5,515,496 (05/07/1996)
- U.S. Patent 4,266,253 to Matherat (5/1981)
- U.S. Patent 5,301,348 to Jaaskelainen (4/1994)
- U.S. Patent 5,467,459 to Alexander et al. (11/1995)
- U.S. Patent 5,479,599 to Rockwell et al. (12/1995)
- U.S. Patent 5,630,148 to Norris (5/1997)
- U.S. Patent 5,712,654 to Kawashima et al. (1/1998)
- U.S. Patent 5,715,416 to Baker (2/1998)
- U.S. Patent 5,724,514 to Arias (3/1998)
- U.S. Patent 5,731,813 to O'Rourke et al. (3/1998)
- U.S. Patent 5,737,599 to Rowe et al. (4/1998)
- U.S. Patent 5,760,771 to Blonder et al. (6/1998)
- U.S. Patent 5,774,666 to Portuesi (6/1998)
- U.S. Patent 5,799,267 to Siegel (8/1998)
- U.S. Patent 5,805,166 to Hall, Jr. et al. (9/1998)
- U.S. Patent 5,809,242 to Shaw et al. (9/1998)
- U.S. Patent 5,845,282 to Alley et al. (12/1998)
- U.S. Patent 5,864,850 to Nordman (1/1999)
- U.S. Patent 5,877,766 to Bates et al. (3/1999)
- U.S. Patent 5,907,843 to Cleron et al. (5/1999)
- U.S. Patent 5,908,467 to Barrett et al. (6/1999)
- U.S. Patent 5,956,509 to Kevner (9/1999)
- U.S. Patent 5,969,705 to Fisher et al. (10/1999)
- U.S. Patent 5,973,692 to Knowlton et al. (10/1999)

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO DEFENDANTS
MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT
MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES** - 25

462

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7000

◆ CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER ◆

- U.S. Patent 5,983,005 to Monteiro et al. (11/1999)
- U.S. Patent 6,049,812 to Bertram et al. (4/2000)
- U.S. Patent 6,065,059 to Shieh et al. (5/2000)
- U.S. Patent 6,097,390 to Marks (8/2000)
- U.S. Patent 6,101,509 to Hanson et al. (8/2000)
- U.S. Patent 6,101,510 to Stone et al. (8/2000)
- U.S. Patent 6,223,188 to Albers et al. (4/2001)
- U.S. Patent 6,266,082 to Yonezawa et al. (7/2001)
- U.S. Patent 6,401,099 to Koppolu et al. (6/2002)
- U.S. Patent 6,615,251 to Klug et al. (9/2003)
- U.S. Patent 6,952,799 to Edwards et al. (10/2005)
- WO 98/25198 (06/11/1998)
- U.S. Publication No. 20030163431A1 (08/28/2003)
- Heltzell, Dallas, *AOL users cheer blue bar`s death*, Colorado Springs Gazette Telegraph, *30 June 1996.*
- Kasten, Alex S., *Off-computer CD-ROM and the game machines*, EMedia Professional, Vol. 10, No. 3, ISSN: 1090-946X, 1 March 1997.
- Roulo, Mark, *Creating download progress bars for applets; Here's a way to keep users happy while they wait for your applet to download*, JavaWorld.com (Online), 1 December 1996.
- S. Gessler and A. Kotulla. PDAs as Mobile WWW Browsers. Computer Networks and ISDN Systems 28 (1995) 53-59.
- M. Liljeberg, T. Alanko et al. Optimizing World-Wide Web for Weakly Connected Mobile Workstations:  An Indirect Approach. Proceedings of SDNE '95 (June 5-6 Whistler, Canada).
- M. Liljeberg, H. Helin, et al. Enhanced Services for World Wide Web in Mobile WAN Environment. University of Helsinki Report C-1996-28 (Helsinki, April 1996).
- M. Liljeberg, H. Helin, et al. MOWGLI WWW Software:  Improved Usability of WWW in Mobile WAN Environments.
- I. Cooper and R. Shufflebotham. PDAWeb Browsers: Implementation Issues. (University of Kent at Canterbury, November 9, 1995).
- M. Pichler, G. Orasche, and K. Andrews. VRweb:  A Multi-System VRML Viewer. (San Diego, California, December 1995).

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO DEFENDANTS
MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT
MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES** - 26

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7000

463

• CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER •

- B. Gaines. Supporting Collaboration Through Multimedia Digital Archives. Knowledge Science Institute, University of Calgary. (Version 1.0, November 1994).

- B. Kelly. Running a World Wide Web Service. Advisory Group on Computer Graphics. (University of Leeds, February 1995).

- J. Bartlett. Experience with a Wireless World Wide Web Client. IEEE COMPCON 95 (San Francisco, March 1995).

- G. Voelker and B. Bershad. Mobisaic: An Information System for a Mobile Wireless Computing Environment. Workshop on Mobile Computing Systems and Applications (Santa Cruz, December 1994).

- T. Watson. Application Design for Wireless Computing. 1994 Mobile Computing Systems and Applications Workshop Position Paper (August 1994).

- NetHopper Version 3.0 User's Manual. 1997 AllPen Software, Inc.

- NetHopper Version 3.2 User's Manual. 1997 AllPen Software, Inc.

- NetHopper 2.0. Pen Lab Review. Pen Computing Issue #11. (July/August 1996).

- PocketWeb WWW Browser for the Apple Newton MessagePad. TecO. http://www.teco.edu/pocketweb/

- R. Simon. The Newton in a Windows Environment. Worldwide Newton Conference. (San Francisco, January 2006).

- A. Iellimo, Jr. PDAs the Next Generation. Network World (March 13, 1995).

- B. Meyers. A Taxonomy of Window Manager User Interfaces. IEEE. (September 1988).

- T. Sundsted. Java and event handling. JAVAWorld. (August 1, 1996).

- T. Sundsted. Introduction to the AWT. JAVAWorld. (July 1, 1996).

- T. Bickmore and B. Schilit. Digestor: Device-independent Access to the World Wide Web.  (FX Palo Alto Laboratory).

- T. Kamba, S. A. Elson, T. Harpold, T. Stamper, and P. Sukaviriya. (1996). "Using small screen space more efficiently."

- M. Lauff and H. Gellerson. Multimedia Client Implementation on Personal Digital Assistants. TecO.

- E. Morgan. Implementing TCP/IP communications with HyperCard. Information Technology and Libraries 11(4):421-432 (December 1992).

- B. Meyers. The Importance of Percent-Done Progress Indicators for Computer-Human Interfaces. CHI '85 Proceedings (April 1985).

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO DEFENDANTS
MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT
MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES** - 27

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7000

464

♦ CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER ♦

- A. deLespinasse. Rover Mosaic: E-mail Communication for a Full-Function Web Browser. Massachusetts Institute of Technology. June 1995.

- R. Robertson. Binary Communications. Newton Technology Journal. March 1997.

- Newton Programmer's Guide For Newton 2.0. Apple Press. Addison-Wesley Publishing Company. 1996.

- G. Macisaac. Priming the Cognitive Pump:  Implicit Memory and Navigating Multiple Window Interfaces. The University of British Columbia. October 1994.

- F. Ergen. Effects of Interface Format, Feedback Style, and System Lag On the Usability of Hand-Held Internet Controllers. Virginia Polytechnic Institute and State University. December 17, 1996.

- Mosaic for Windows:  A Hands-On Configuration and Set-Up Guide to Popular Web Browsers. Springer-Verlag New York, Inc. 1995.

- Web Browsers (e.g., NetHopper, Newt's Cape, PocketWeb, Vogon, etc.)

- Albers et al., The Audible Web: Auditory Enhancements for Mosaic, Chi '95 Mosaic of Creativity, 5/1995, pp. 318-319.

- Bartlett, Experience with a Wireless World Wide Web Client, Western Research Laboratory, WRL Technical Note TN-46, 3/1995, pp. 1-13.

- Brown et al., A New Paradigm for Browsing the Web, Conference companion on Human factors in computing systems, 5/1995, pp. 320-321.

- Brown et al., DeckScape: An Experimental Web Browser, http://www.cs.princeton.edu/~ras/deckscape/paper.html.

- Brown et al., The DeckScape Web Browser, CHI 96 Electronic Proceedings, http://www.sigchi.org/chi96/proceedings/videos/Brown/mhb_bdy.htm.

- Carr et al., The Power of Penpoint, Addison-Wesley Publishing Co., 2/1991, pp. i-342.

- Carts, How to put the World Wide Web to work for you, Laser Focus World, 1/1995, pp. 116-117.

- Cheek, Web tools: join those making the Internet work for their agency's mission, Government Computing News, Vol. 15, No. 5, 3/1996, pp. 1-38.

- Cook, Write a Simple HTTP-based Server Using MFC and Windows Sockets, Microsoft Systems Journal, 2/1996, pp. 1-29.

- Cooper et al., PDA Web Browsers: Implementation Issues, http://alethea.ukc.ac.uk/Dept/Computing/Research/STEP/Papers/WWWPDA/, 11/1995, pp. 1-12.

- Finnie, Microsoft Internet Explorer 2.0, Microsoft Narrows Netscape's Lead, PC Computing, Vol. 9, No. 4, 4/1996, p. 79.

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANTS MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES - 28**

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7000

465

• CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER •

- Fleming, Improving the Performance of the World Wide Web over Wireless Networks, submitted to the faculty of the Va. Polytechnic Inst. and State Univ., 11/1996, pp. i-34.

- Gerber, Browsers on the Wild, Wild Web, Network Computing, 4/1995, p. 54 et seq.

- Greengard, Home, Home on the Web, Personnel Journal, Vol. 75, No. 3, 3/1996, pp. 1-9.

- Herbst, Wefest IV, A Report of the Happenings at the Fourth World-Wide Web Conference, Internet World, 3/1996, pp. 22-28

- Hu et al., Parameterizable fonts based on shape components, IEEE Computer Graphics and Applications, Vol. 21, Issue 3, May/Jun. 2001, pp. 70-85.

- HyperTIES, e.g., http://www.cs.umd.edu/hcil/hyperties/

- Ibrahim, World-Wide algorithm animation, Computer Networks and ISDN Systems, 1994, Vol. 27, Issue 2, pp. 255-265.

- Jaffe et al., Hypermedia Techniques for Diagnostic Imaging Instruction Videodisk Echocardiography Encyclopedia, Radiology 1989, 171:475-480.

- Jefferson et al., Presentation Manager Progress Indicator, IBM TDB, 7/1991, Vol. 34, No. 2, pp. 475-476.

- Kaashoek et al., Dynamic Documents: Mobile Wireless Access to the WWW; Proceedings of the IEEE Workshop on Mobile Computing Systems and Applications, 12/1994, pp. 1-6.

- Kane, Prodigy Interactive Personal Service Made Easy, Osborne McGraw-Hill, 1991, pp. i-251.

- Lauff et al., Multimedia Client Implemented on Personal Digital Assistants, IDMS, 1997.

- Laverty, Internet Primer: Workshop Design and Objectives, Internet Reference Services Quarterly, 1996, Vol. 1(3), pp. 35-53.

- Liu et al., Web-based peer review: the learner as both adapter and reviewer, Education, IEEE Transactions, Vol. 44, Issue 3, Aug. 2001, pp. 246-251.

- Morris, HTML for Fun and Profit, SunSoft Press, 1995, pp. 63-72

- Newton MessagePad 2000 Tech Article, Apple Computer, Inc., 1/1997, pp. i-38.

- PacificBell Internet Handbook, http://dialup.pacbell.net/help/handbook/aquant.htm

- PenPoint™ UI Design Guidelines, GO Corp., Rev. 0.5, 2/1991, pp. i-198.

- PocketWeb WWW Browser for the Apple Newton Message Pad, TecO, available at http://www.teco.edu/pocketweb

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO DEFENDANTS
MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT
MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES - 29**

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7000

466

• CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER •

- Robertson et al., Using the World Wide Web to Provide a Platform Independent Interface to High Performance Computing, Technologies for the Information Superhighway, 1995, pp. 1-5.

- Romano, Jr. et al., User Driven Design of a Web-Based Group Support System, Proceedings of the Thirtieth Annual Hawaii International Conference on Systems Sciences, 1997, Vol. 2, pp. 1-10.

- Ryle, Martin, Culture 1.0, Computers and the Humanities, 24:321-324, 1990. Kluwer Academic Publishers.

- Schilit et al., TeleWeb: Loosely Connected Access to the World Wide Web, 5th Int'l WWW Conf., 5/1996, pp. 1-14.

- Schuman et al., A Daylight Design Tool Using HYPERCARD on the Macintosh, Third National Conference on Microcomputer Applications in Energy, Tucson, AZ, November 1-3, 1988.

- Smallman et al., Information availability in 2D and 3D displays, IEEE Computer Graphics and Applications, Vol. 21, Issue 5, Sept./Oct. 2001, pp. 51-57.

- SOFT> ANNOUNCE: MacWeb 1.00ALPHA3.1!, http://scout.wisc.edu/Projects/PastProjects/NH/95-03/95-03-15/0040.html

- Stauder et al., HyperCard's User Friendly Programming, MacTech, Vol. 3, Issue 10, http://www.mactech.com/articles/mactech/Vol.03/03.10/HyperCardProgramming/index.html

- Want et al., An Overview of the ParcTab Ubiquitous Computing Experiment

- Web Graphics: Small and Quick Is In, Infoworld, 6/1995, p. 75.

- Wiggins, Examining Mosaic, A History and Review, Internet World, 10/1995, pp. 48-51.

- Hypercard Ver. 1.2

- Episode of "The Computer Chronicles" (entitled "HyperCard Update") which, on information and belief, was aired on KCSM TV in San Mateo, CA on August 1, 1990.

- Macintosh HyperCard User's Guide, Apple Computer, Inc., 1988.

- Macintosh HyperCard User's Guide, Apple Computer, Inc., 1987.

- Internet Explorer 1.0 and 2.0 for Windows, along with all other versions available prior to 5/1997.

- LunaSuite Pro (all versions available prior to 5/1997)

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANTS MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES - 30**

467

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7000

• CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER •

- MacWeb version 1.1.1E (see, e.g., http://www.youtube.com/watch?v=blywSnj4lgk) along with all other versions available prior to 5/1996.

- NCSA Mosaic (all versions available prior to 5/1997)

- NetHopper (all versions available prior to 5/1997)

- Netscape Navigator versions 1.0, 1.1, 1.2, 1.22 and 2.0 for Windows, Macintosh, and/or Unix, along with all other versions available prior to 5/1997.

- Newt's Cape (all versions available prior to 5/1997)

- PocketWeb (all versions available prior to 5/1997)

- Spyglass Mosaic (all versions available prior to 5/1997)

- NeXTSTEP Release 3 Demo (http://www.youtube.com/watch?v=j02b8Fuz73A)

- 1997 Windows 95 / Netscape Navigator Gold 3.0 Demonstration (http://www.youtube.com/watch?v=bQHLJ_SOjAU)

- Forman, P. and Saint John, Robert W., Creating Convergence, Scientific American, November 2000, 50-56; (http://www.sciam.com/200/1100issue/1100stjohnbox1.html).

- Prior art to U.S. Patent 7,411,582

  - U.S. Patent 4,899,136 (02/06/1990)

  - U.S. Patent 5,157,384 (10/20/1992)

  - U.S. Patent 6,608,637 (08/19/2003)

  - U.S. Patent 5,796,967 (08/18/1998)

  - U.S. Patent 5,638,501 (06/10/1997)

  - File wrapper to U.S. Patent 5,638,501

  - U.S. Patent 5,764,226 (06/09/1998)

  - U.S. Patent 5,778,404 (07/07/1998)

  - U.S. Patent 5,528,248 (06/18/1996)

  - U.S. Patent 6,128,016 (10/03/2000)

  - U.S. Patent 5,949,418 (09/07/1999)

  - U.S. Patent 5,822,230 (10/13/1998)

  - U.S. Patent 5,805,157 (09/08/1998)

  - U.S. Patent 5,581,243 (5,581,243)

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO DEFENDANTS
MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT
MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES** - 31

468

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7000

• CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER •

- U.S. Patent 5,825,362 (10/20/1998)
- U.S. Patent 5,661,476 (08/26/1997)
- U.S. Patent 5,594,471 (01/14/1997)
- U.S. Patent 5,606,702 (02/25/1997)
- U.S. Patent 5,252,951 (10/12/1993)
- File wrapper to U.S. Patent 5,252,951
- U.S. Patent 5,509,103 (WO 9531264) (04/16/1996)
- U.S. Patent 6,611,258 (JP9190268) (08/26/2003)
- U.S. Patent 5,454,046 (09/26/1995)
- U.S. Patent 5,455,901 (10/03/1995)
- U.S. Patent 5,371,844 (12/06/1994)
- U.S. Patent 5,911,485 (06/15/1999)
- U.S. Patent 5,717,425 (02/10/1998)
- U.S. Patent 5,812,117 (09/22/1998)
- U.S. Patent 5,603,053 (02/11/1997)
- U.S. Patent 5,689,669 (11/18/1997)
- U.S. Patent 5,611,031 (03/11/1997)
- U.S. Patent 5,479,536 (12/26/1995)
- U.S. Patent 5,250,929 (10/05/1993)
- U.S. Patent 5,583,539 (12/10/1996)
- U.S. Patent 5,148,155 (09/15/1992)
- Filewrapper to U.S. Patent 5,148,155
- U.S. Patent 5,260,697 (11/09/1993)
- U.S. Patent 6,154,209 (11/28/2000)
- U.S. Patent 4,725,694 (02/16/1988)
- U.S. Patent 5,491,495
- U.S. Patent 4,587,630
- U.S. Patent 5,946,499
- Filewrapper to U.S. Patent 5,946,499
- U.S. Patent 6,209,034

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO DEFENDANTS
MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT
MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES** - 32

469

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7000

• CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER •

- U.S. Patent 5,659,769
- U.S. Patent 5,511,193
- WO 9,532,469 (11/30/95)
- GB 2,309,365 (07/23/97)
- EP 0,464,712 (01/18/92)
- EP 0,811,940 (10/12/97)
- WO 9,415,273 (07/07/94)
- JP 7,098,640 A2 (04/11/95)
- JP 9,251,379 (09/22/97)
- JP 03-041334
- Vanderheiden, G.C., Cross disability assess to touch screen kiosks and ATMs, Proceeding of 7th International Conference on Human Computer Interaction jointly with 13th Symposium on Human Interface, vol.1. pp. 417-20, Aug. 1997.
- Montaniz, F.1 and Mack, R.1, A comparison of touch interface techniques for a graphical windowing software environment, Proceedings of the Human Factors Society 35th Annual Meeting, 290-4 vol.1, 1991.
- Sternecker, G., The Apple Graphics Tablet, Creative Computing, v 7, n 1, 28-9, Jan. 1981.
- Tanaka, Toshinori and Kobayashi, Shunsuke, Entry of data and command for an LCD by direct touch: an integrated LCD panel, Digest of Technical Papers - SID International Symposium (Society for Information Display), v 17, p 318-320, 1986.
- William Buxton, Ralph Hill and Peter Rowley, Issues and techniques in touch-sensitive tablet input, SIGGRAPH '85 Proceedings of the 12th annual conference on Computer graphics and interactive techniques ACM New York, NY, USA ©1985.
- Brown, E., Buxton, W. & Murtagh, K., Windows on tablets as a means of achieving virtual input devices, In D. Diaper et al. (Eds), Human-Computer Interaction - INTERACT '90. Amsterdam: Elsevier Science Publishers B.V. (North-Holland), 675-681, 1990.
- Apple Press, Apple Computer Inc., Newton's Programmer's Guide, For Newton 2.0, Addison Wesley Publishing Company (1996).
- Newton – Apple MessagePad Handbook (Apple) 1995.
- The NewtonScript Programming Language (Apple) 1996.
- Apple Press, Apple Computer Inc., Newton 2.0 User Interface Guidelines. Addison Wesley Publishing Company (1996).

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO DEFENDANTS
MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT
MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES** - 33

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7000

470

• CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER •

- Apple Press, Apple Computer Inc., Newton's Programmer's Reference. For Newton 2.0. The Apple Publishing System (1996)

- Taligent Keeps Its Promises, Oct. 23, 1995, Information Week

- Simon –Mobile Communications Made Simple, (Bell South, 1994)

- Simonizing the PDA – BellSouth's communicative Simon is a milestone in the evolution of the PDA., Dec. 1994

- Magic Cap-A Guide to General Magic's Revolutionary Communicator Software by Barbara Knaster; Addison-Wesley Publishing Company (February 1994)

- Eliezer Kantorowitz, Oded Sudarsky,  The Adaptable Use Interface, Computer Practices Communication of the ACM- Vol. 32 Number 11,1352-1358, Nov. 1989

- Peter Y.F. Wu, Research Report – User Interface Management Systems: Survey and Assessment (IBM) May 22, 1989

- Magic Link User's Guide PIC-1000 - Personal Intelligent Communicator (Sony) 1994

- Motorola Envoy Wireless Communicator User's Guide (1994)

- DATAMAN – The Complete Contact Management Solution for the Newton OS-PMI and StandAlone Inc. 1997

- Joel F. Bartlett- Experience With A Wireless World Wide Web Client- WRL Technical Note TN-46, Digital Western Research Laboratory, March 1995

- Albert Iellimo, PDAs The Next Generation Network World 3/13/1995

- Liu, Raymond et al. "A Platform For Multilingual Application Development with Unicod Standard." International Conference on Chinese Computing '94 (ICCC94). The Latest Technological Advancement and Application. June, 1-4, 1994. Singapore.

- Bartlett W., Mel et al. "Tablet: Personal Computer in the Year 2000." Communication of the ACM . Vol. 31.6. June, 1988. 639-646.

- Want, Roy et al. "The ParcTab Ubiquitous Computing Experiment" (March 1995)

- Brockschmidt, Kraig. Inside Ole, Second Edition. Microsoft Press. (1995)

- Gridpad 2390 User's Manual, AST Computer (date unknown)

- Yvonne L. Lee, AST offers PenRight as separate option for its Zoomer PDA, Info World, 3/28/94

- Organized time: Personal digital assistants put power (and more) in the palm of your hand, Info World, 4/18/94

- Avigo Quick Start Guide, Financial Calculator User's Guide, and User's Guide, Texas Instruments, 1997

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO DEFENDANTS
MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT
MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES** - 34

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7000

471

• CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER •

- Jeffrey C. Schlimmer and Patricia C. Wells, Quantitative Results Comparing Three Intelligent Interfaces for Information Capture: A Case Study Adding Name Information into an Electronic Personal Organizer, Journal of Artificial Intelligence Research 5, 329–349, 1996

- Hewlett-Packard Journal, v 35, n 8, August 1984

- Go Technical Library, Go Corporation, Penpoint Architectural Reference, Addison-Wesley Publishing Company 1992

- Go Technical Library, Go Corporation, Penpoint User Interface Design Reference, Addison-Wesley Publishing Company 1992

- Go Technical Library, Go Corporation, Penpoint API Reference, Addison-Wesley Publishing Company 1992

Motorola has not yet completed its discovery and investigation of the facts relating to this Interrogatory, and expressly reserves the right to supplement and/or amend its response to this Interrogatory at an appropriate time and as its investigation continues in accordance with Fed. R. Civ. P. 26(e).

DATED this 8th day of November, 2011.

SUMMIT LAW GROUP PLLC

By _____

Philip S. McCune, WSBA #21081
Lynn M. Engel, WSBA #21934
*philm@summitlaw.com*
*lynne@summitlaw.com*

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANTS MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES** - 35

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7000

• CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER •

And by

Jesse J. Jenner (*pro hac vice*)
Steven Pepe (*pro hac vice*)
Stuart W. Yothers (*pro hac vice*)
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY  10036-8704
(212) 596-9046
*jesse.jenner@ropesgray.com*
*steven.pepe@ropesgray.com*
*stuart.yothers@ropesgray.com*

Norman H. Beamer (*pro hac vice*)
Gabrielle E. Higgins (*pro hac vice*)
Ropes & Gray LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA  94303-2284
(650) 617-4030
*norman.beamer@ropesgray.com*
*gabrielle.higgins@ropesgray.com*

Paul M. Schoenhard (*pro hac vice*)
Kevin J. Post (*pro hac vice*)
Ropes & Gray LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC  20005-3948
(202) 508-4693
*paul.schoenhard.@ropesgray.com*
*kevin.post@ropesgray.com*

***Attorneys for Plaintiff/Counterclaim Defendants
Motorola Mobility, Inc., and General Instrument
Corporation***

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO DEFENDANTS
MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT
MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES** - 36

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7000

473

♦ **CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER** ♦

1

## **VERIFICATION**

2          Verification to follow.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO DEFENDANTS
MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT
MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES** - 37

474

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7000

• CONTAINS MOTOROLA'S CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER •

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I caused the foregoing to be served, per the parties' eService Agreement, via email, upon:

> Arthur W. Harrigan, Jr., Esq.
> Christopher T. Wion, Esq.
> Shane P. Cramer, Esq.
> Danielson Harrigan Leyh & Tollefson
> *arthurh@dhlt.com*
> *chrisw@dhlt.com*
> *shanec@dhlt.com*
>
> Richard A. Cederoth, Esq.
> Sidley Austin LLP
> *rcederoth@sidley.com*

DATED this 8th day of November, 2011.

_____
Marcia A. Ripley

PLAINTIFF MICROSOFT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO DEFENDANTS
MOTOROLA AND MOTOROLA MOBILITY **AND DEFENDANT
MOTOROLA MOBILITY'S SUPPLEMENTAL RESPONSES - 38**

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7000

475

# EXHIBIT A

Exemplar Chart of U.S. Patent 6,339,780

**U.S. Patent 5,528,744 ("Vaughton '744")[1]**
**Claims 1-6, 9-14, 17, 18, 20, 21 and 32-42**

| | U.S. Patent 6,339,780 | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| 1 | 1. A hypermedia browser embodied on a computer-readable medium for execution on an information processing device having a limited display area, | "The invention has been found to be particularly advantageous when system has the function of downloading files from another system required by said first task and said second task's window(s) provides an indication of the progress of said downloading." Col. 3, ll. 4-8. One of ordinary skill in the art would recognize that a hypermedia browser has the function of downloading files from another system when, for example, a user selects a hypermedia link.<br><br>"Such systems provide a number of display areas (windows) whose size, shape and position within the display may be manipulated by the user." Col. 1, ll. 37-39.<br><br>To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser on an information processing device having |

NOTE: Motorola applies the prior art in light of Microsoft's improper assertions of infringement and improper application of the claims. Motorola does not agree with Microsoft's application of the claims, or that the claims satisfy 35 U.S.C. § 112. Motorola's contentions herein are not, and should in no way be seen as, admissions or adoptions as to any particular claim scope or construction, or as any admission that any particular element is met in any particular way. Motorola objects to any attempt to imply claim construction from the foregoing chart. Motorola's prior art invalidity contentions are made in a variety of alternatives and do not represent Motorola's agreement or view as to the meaning, definiteness, written description support for, or enablement of any claim contained therein.

[1] "Data Processing System" issued to Vaughton; filed August 30, 1995; issued June 18, 1996.

[2] Apple HyperCard: described, e.g., in (i) an episode of "The Computer Chronicles" (entitled "HyperCard Update") which, on information and belief, was aired on KCSM TV in San Mateo, CA on August 1, 1990; (ii) Macintosh HyperCard User's Guide, Apple Computer, Inc. 1988; and (iii) Macintosh HyperCard User's Guide, Apple Computer, Inc. 1987.

| U.S. Patent 6,339,780 | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|
| | a limited display area. |
| | In addition, the combination of Vaughton '744 and one or more references describing handheld devices with browsers renders this claim obvious. Gessler[3], Cooper[4], Bartlett[5], Watson[6], Kamba[7], and Lauff[8] each teach a hypermedia browser embodied on a computer-readable medium for execution on an information processing device having a limited display area (e.g., a PDA, handheld, mobile device, etc.), and it would be obvious to one of skill in the art to modify Vaughton '744 with these teachings.[9] One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system). Additionally, Bartlett cites Gessler and Cooper cites Gessler and Bartlett. Moreover, all of theses references are from the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite |

[3] S. Gessler and A. Kotulla. PDAs as Mobile WWW Browsers. Computer Networks and ISDN Systems 28 (1995) 53-59 ("Gessler") (see pgs. 53 and 56-58).

[4] I. Cooper and R. Shufflebotham. PDAWeb Browsers: Implementation Issues. (University of Kent at Canterbury, November 9, 1995) ("Cooper") (see pgs. 3 and 5).

[5] J. Bartlett. Experience with a Wireless World Wide Web Client. IEEE COMPCON 95 (San Francisco, March 1995) ("Bartlett") (see pgs. 1, 4 and 5).

[6] T. Watson. "Application Design for Wireless Computing" (1994 Mobile Computing Systems and Applications Workshop Position Paper (August 1994)).

[7] T. Kamba, S. A. Elson, T. Harpold, T. Stamper, and P. Sukaviriya. (1996). "Using small screen space more efficiently."

[8] M. Lauff and W. Gellerson. Multimedia Client Implementation on Personal Digital Assistants. TecO.

[9] Motorola continues to investigate other browsers that were in existence prior to the priority date of the '780 patent (e.g., NetHopper, Newt's Cape, PocketWeb and Vogon).

2

| U.S. Patent 6,339,780 | | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | number of identified, predictable solutions. |
| 1.1 | wherein the hypermedia browser has a content viewing area for viewing content and is configured to display a temporary graphic element over the content viewing area during times when the browser is loading content, | "The invention provides a data processing system having a window based display and a processor executing a plurality of interleaved data processing tasks each having one or more associated display windows, wherein execution of a first task may trigger execution of a second task characterised in that when execution of said first task triggers execution of said second task, said processor uses data identifying said first task's display window(s) and to control display of said second task's display window(s) so as to be connected to and move with said first task's display window(s)." Col. 2, ll. 17-26

"The invention provides the advantage that display of the window(s) of the called task in a manner connected to the window(s) of the calling task, clarifies to the user the relationship between the tasks. Furthermore, the use of the data identifying the calling task's window(s) makes it possible for the system to monitor any changes in the position or size of the calling task's window(s) and make appropriate changes in size and position to the window(s) of the called task thereby preserving the visual relationship between the tasks." Col. 2, ll. 27-36.

"In preferred embodiments of the invention said second task's window(s) is displayed within said first task's window(s). This form of display provides an unmistakable visual link between the windows of the different tasks." Col. 2, ll. 63-66.

"The invention has been found to be particularly advantageous when said system has the function of downloading files from another system required by said first task and said second task's window(s) provides an indication of the progress of said downloading." Col. 3, ll. 4-8.

"Task B puts up the window (4) for Task B as a child window of the window (2) of Task A . . . Task B destroys the window (4) for Task B, when the processing for Task B is completed." Col. 3, ll. 66-67 to Col. 4, ll. 1-2.

To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement Vaughton '744 in a hypermedia browser having a |

479

| U.S. Patent 6,339,780 | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|
|  | content viewing area for viewing content.  Hypermedia browsers download files from another system, and it would have therefore been obvious to one of skill in the art to implement Vaughton '744 in the context of a hypermedia browser.

In addition, the combination of Vaughton '744 and Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard renders this claim obvious.  Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard teach a hypermedia browser having a content viewing area for viewing content and is configured to display a temporary graphic element over the content viewing area during times when the browser is loading content (see analysis of Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard in claim chart) and it would be obvious to one of skill in the art to modify Vaughton '744 with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 1.2 | |
| wherein the temporary graphic element is positioned over the content viewing area to obstruct only part of the content in the content viewing area, | See Figure 2. |

4

480

| | U.S. Patent 6,339,780 | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | <br>FIG. 2 |
| 1.3 | wherein the temporary graphic element is not content and wherein content comprises data for presentation which is from a source external to the browser. | See Figure 2, which illustrates the temporary graphic element as an hourglass.<br><br>"It is a feature of advanced multitasking data processing systems that the tasks executed are becoming more interdependent . . . An example of such interdependence would be one task requiring a particular piece of information to be retrieved from a database by a database retrieval task." Col. 1, ll. 59-65.<br><br>"The invention has been found to be particularly advantageous when said system has the function of downloading files from another system required by said first task and said second task's window(s) provides an indication of the progress of said downloading." Col. 3, ll. 4-8. |
| 2 | A hypermedia browser as recited in claim 1, wherein the browser is configured to display the temporary graphic element over the content viewing | "The invention has been found to be particularly advantageous when said system has the function of downloading files from another system required by said first task and said second task's window(s) provides an indication of the progress of said |

5

481

| U.S. Patent 6,339,780 | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|
| area only during times when the browser is loading visible content. | downloading." Col. 3, ll. 4-8.<br><br>"Task B puts up the window (4) for Task B as a child window of the window (2) of Task A . . . Task B destroys the window (4) for Task B, when the processing for Task B is completed." Col. 3, ll. 66-67 to Col. 4, ll. 1-2. |
| 3 | A hypermedia browser as recited in claim 1, wherein the temporary graphic element indicates to a user that the browser is loading content. | "The invention has been found to be particularly advantageous when said system has the function of downloading files from another system required by said first task and said second task's window(s) provides an indication of the progress of said downloading." Col. 3, ll. 4-8. |
| 4 | A hypermedia browser as recited in claim 1, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete. | "Task B puts up the window (4) for Task B as a child window of the window (2) of Task A . . . Task B destroys the window (4) for Task B, when the processing for Task B is completed." Col. 3, ll. 66-67 to Col. 4, ll. 1-2. |
| 5 | A hypermedia browser as recited in claim 1, wherein the temporary graphic element is animated. | "The window for Task B shows a sand glass in which the flow of the sand through the sand glass gives an indication of the progress of the downloading of the file in question." Col. 3, ll. 37-40. |
| 6 | A hypermedia browser as recited in claim 1, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area. | "In preferred embodiments of the invention said second task's window(s) is displayed within said first task's window(s). This form of display provides an unmistakable visual link between the windows of the different tasks. It will however be appreciated that other ways of connecting the windows are possible, e.g. the window(s) of the second task may abut the edge of the window(s) of the first task--the windows may be "clipped together" at their edge." Col. 2, l. 63 - Col. 3, l. 3.<br><br>See Figure 2. |

6

| U.S. Patent 6,339,780 | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|
| | <br><br>FIG. 2 |
| 9 | A hypermedia browser as recited in claim 1, wherein the temporary graphic element conveys status information of the browser. | "The invention has been found to be particularly advantageous when said system has the function of downloading files from another system required by said first task and said second task's window(s) provides an indication of the progress of said downloading." Col. 3, ll. 4-8. |
| 10 | A hypermedia browser of claim 1, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language. | One of ordinary skill in the art would recognize that a hypermedia browser has the function of downloading files from another system when, for example, a user selects a hypermedia link.  To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement Vaughton '744 with a hypermedia browser wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.  Vaughton '744 discloses a system that has the function of downloading files from another system required by a first task.  Based on this, one of ordinary skill in the art would have been motivated to implement the teachings of Vaughton '744 in the context of a hypermedia browser. |

| U.S. Patent 6,339,780 | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|
| | In addition, the combination of Vaughton '744 and Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard renders this claim obvious. Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard teaches a hypermedia browser, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language (see analysis of Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard in claim chart) and it would be obvious to one of skill in the art to modify Vaughton '744 with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, disclose the same or similar techniques, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 11   A hypermedia browser of claim 1, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web. | One of ordinary skill in the art would recognize that a hypermedia browser has the function of downloading files from another system when, for example, a user selects a hypermedia link.  To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement Vaughton '744 with a hypermedia browser wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash scripting language for the world wide web.  Vaughton '744 discloses a system that has the function of downloading files from another system required by a first task.  Based on this, one of ordinary skill in the art would have been motivated to implement the teachings of Vaughton '744 in the context of a hypermedia browser.

In addition, the combination of Vaughton '744 and Nguyen '498 and/or Judson '643 |

8

| U.S. Patent 6,339,780 | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard² and/or various systems implementing a web browser on a mobile device |
|---|---|
| | and/or Nordman '850 and/or Nordman '850 and/or HyperCard and/or Judson '643 and/or Nordman '850 and/or HyperCard renders this claim obvious. Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard teaches a hypermedia browser, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash, scripting language for the world wide web (see analysis of Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard in claim chart) and it would be obvious to one of skill in the art to modify Vaughton '744 with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, disclose the same or similar techniques, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 12. An information processing device comprising: | "The invention provides a data processing system having a window based display and a processor executing a plurality of interleaved data processing tasks each having one or more associated display windows[.]" Col. 2, ll. 17-20. |
| a processor; | "The invention provides a data processing system having a window based display and a processor executing a plurality of interleaved data processing tasks each having one or more associated display windows[.]" Col. 2, ll. 17-20. |
| a display; | "The invention provides a data processing system having a window based display and a processor executing a plurality of interleaved data processing tasks each having one or more associated display windows[.]" Col. 2, ll. 17-20. |

| 12 | 12.1 | 12.2 |

9

485

| | U.S. Patent 6,339,780 | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| 12.3 | a hypermedia browser executing on the processor to load and display content in a content viewing area on the display; wherein the hypermedia browser has a content viewing area for viewing content and wherein the hypermedia browser displays a temporary graphic element over the content viewing area during times when the browser is loading visible content; | The invention provides a data processing system having a window based display and a processor executing a plurality of interleaved data processing tasks each having one or more associated display windows, wherein execution of a first task may trigger execution of a second task characterised in that when execution of said first task triggers execution of said second task, said processor uses data identifying said first task's display window(s) and to control display of said second task's display window(s) so as to be connected to and move with said first task's display window(s). Col. 2, ll. 17-26.

The invention provides the advantage that display of the window(s) of the called task in a manner connected to the window(s) of the calling task, clarifies to the user the relationship between the tasks.  Furthermore, the use of the data identifying the calling task's window(s) makes it possible for the system to monitor any changes in the position or size of the calling task's window(s) and make appropriate changes in size and position to the window(s) of the called task thereby preserving the visual relationship between the tasks. Col. 2, ll. 27-36.

In preferred embodiments of the invention said second task's window(s) is displayed within said first task's window(s).  This form of display provides an unmistakable visual link between the windows of the different tasks.  Col. 2, ll. 63-66.

"The invention has been found to be particularly advantageous when said system has the function of downloading files from another system required by said first task and said second task's window(s) provides an indication of the progress of said downloading." Col. 3, ll. 4-8.

"Task B puts up the window (4) for Task B as a child window of the window (2) of Task A . . . Task B destroys the window (4) for Task B, when the processing for Task B is completed." Col. 3, ll. 66-67 to Col. 4, ll. 1-2.

To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement Vaughton '744 in a hypermedia browser having a content viewing area for viewing content.  Hypermedia browsers download files from |

10

| U.S. Patent 6,339,780 | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|
| | another system, and it would have therefore been obvious to one of skill in the art to implement Vaughton '744 in the context of a hypermedia browser. |
| | In addition, the combination of Vaughton '744 and Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard renders this claim obvious. Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard teach a hypermedia browser having a content viewing area for viewing content and is configured to display a temporary graphic element over the content viewing area during times when the browser is loading visible content (see analysis of Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard in claim chart) and it would be obvious to one of skill in the art to modify Vaughton '744 with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 12.4  wherein the temporary graphic element is positioned only over a portion of the content viewing area and obstructs only part of the visible content in the content viewing area; and | See Figure 2. |

11

487

| U.S. Patent 6,339,780 | | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | <br>FIG. 2 |
| 12.5 | wherein the temporary graphic element indicates to a user that the browser is loading content and content comprises data for presentation which is from a source external to the browser. | See Figure 2.<br><br>"The invention has been found to be particularly advantageous when said system has the function of downloading files from another system required by said first task and said second task's window(s) provides an indication of the progress of said downloading." Col. 3, ll. 4-8.<br><br>"It is a feature of advanced multitasking data processing systems that the tasks executed are becoming more interdependent . . . An example of such interdependence would be one task requiring a particular piece of information to be retrieved from a database by a database retrieval task." Col. 1, ll. 59-65.<br><br>"The invention has been found to be particularly advantageous when said system has the function of downloading files from another system required by said first task and said second task's window(s) provides an indication of the progress of said downloading." Col. 3, ll. 4-8. |

12

488

| | U.S. Patent 6,339,780 | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| 13 | An information processing device as recited in claim 12, wherein the temporary graphic element is animated. | The window for Task B shows a sand glass in which the flow of the sand through the sand glass gives an indication of the progress of the downloading of the file in question.  Col. 3, ll. 37-40. |
| 14 | An information processing device as recited in claim 12, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area. | In preferred embodiments of the invention said second task's window(s) is displayed within said first task's window(s).  This form of display provides an unmistakable visual link between the windows of the different tasks.  It will however be appreciated that other ways of connecting the windows are possible, e.g. the window(s) of the second task may be about the edge of the window(s) of the first task--the windows may be "clipped together" at their edge.  Col. 2, l. 63 - Col. 3, l. 3.  See Figure 2.  FIG. 2 |
| 17 | A hypermedia browser of claim 12, wherein content is data formatted for | One of ordinary skill in the art would recognize that a hypermedia browser has the function of downloading files from another system when, for example, a user selects a |

| | U.S. Patent 6,339,780 | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language. | hypermedia link.  To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement Vaughton '744 with a hypermedia browser wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.  Vaughton '744 discloses a system that has the function of downloading files from another system required by a first task.  Based on this, one of ordinary skill in the art would have been motivated to implement the teachings of Vaughton '744 in the context of a hypermedia browser.

In addition, the combination of Vaughton '744 and Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard renders this claim obvious.  Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard teaches a hypermedia browser, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language (see analysis of Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard in claim chart) and it would be obvious to one of skill in the art to modify Vaughton '744 with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, disclose the same or similar techniques, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 18 | A hypermedia browser of claim 12, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, | One of ordinary skill in the art would recognize that a hypermedia browser has the function of downloading files from another system when, for example, a user selects a hypermedia link.  To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement Vaughton '744 with a hypermedia browser wherein content is data formatted for presentation which is selected from a |

14

| | U.S. Patent 6,339,780 | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | streaming video, VRML, Active X, Flash. scripting language for the world wide web. | group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash scripting language for the world wide web. Vaughton '744 discloses a system that has the function of downloading files from another system required by a first task. Based on this, one of ordinary skill in the art would have been motivated to implement the teachings of Vaughton '744 in the context of a hypermedia browser.

In addition, the combination of Vaughton '744 and Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard renders this claim obvious. Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard teaches a hypermedia browser, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web (see analysis of Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard in claim chart) and it would be obvious to one of skill in the art to modify Vaughton '744 with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, disclose the same or similar techniques, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 20 | An information processing device as recited in claim 12, wherein the temporary graphic element is not content. | See Figure 2, which illustrates the temporary graphic element as an hourglass.

"It is a feature of advanced multitasking data processing systems that the tasks executed are becoming more interdependent . . . An example of such interdependence would be one task requiring a particular piece of information to be retrieved from a database by a database retrieval task." Col. 1, ll. 59-65.

"The invention has been found to be particularly advantageous when said system has |

15

491

| U.S. Patent 6,339,780 | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|
| | the function of downloading files from another system required by said first task and said second task's window(s) provides an indication of the progress of said downloading." Col. 3, ll. 4-8. |
| 21 — An information processing device as recited in claim 12, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete. | "Task B puts up the window (4) for Task B as a child window of the window (2) of Task A . . . Task B destroys the window (4) for Task B, when the processing for Task B is completed." Col. 3, ll. 66-67 to Col. 4, ll. 1-2. |
| 32 — 32. A method of indicating a content "load status" of a hypermedia browser having a content viewing area for viewing content, the method comprising: | See Figure 2.<br><br>"The invention has been found to be particularly advantageous when said system has the function of downloading files from another system required by said first task and said second task's window(s) provides an indication of the progress of said downloading." Col. 3, ll. 4-8.<br><br>To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement Vaughton '744 in a hypermedia browser having a content viewing area for viewing content. Hypermedia browsers download files from another system, and it would have therefore been obvious to one of skill in the art to implement Vaughton '744 in the context of a hypermedia browser.<br><br>In addition, the combination of Vaughton '744 and Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard renders this claim obvious. Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard teach a hypermedia browser having a content viewing area for viewing content (see analysis of Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard in claim chart) and it would be obvious to one of skill in the art to modify Vaughton '744 with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for |

16

| U.S. Patent 6,339,780 | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|
| | downloading files from another system), address the same problem, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| **32.1** displaying loaded content within the content viewing area of a screen being without a "load status" graphic element, wherein a "load status" graphic element indicates a current content load status of the hypermedia browser; | "The invention provides a data processing system having a window based display and a processor executing a plurality of interleaved data processing tasks each having one or more associated display windows, wherein execution of a first task may trigger execution of a second task characterised in that when execution of said first task triggers execution of said second task, said processor uses data identifying said first task's display window(s) and to control display of said second task's display window(s) so as to be connected to and move with said first task's display window(s)." Col. 2, ll. 17-26 |
| | "The invention provides the advantage that display of the window(s) of the called task in a manner connected to the window(s) of the calling task, clarifies to the user the relationship between the tasks.  Furthermore, the use of the data identifying the calling task's window(s) makes it possible for the system to monitor any changes in the position or size of the calling task's window(s) and make appropriate changes in size and position to the window(s) of the called task thereby preserving the visual relationship between the tasks." Col. 2, ll. 27-36. |
| | "In preferred embodiments of the invention said second task's window(s) is displayed within said first task's window(s).  This form of display provides an unmistakable visual link between the windows of the different tasks."  Col. 2, ll. 63-66. |
| | "The invention has been found to be particularly advantageous when said system has the function of downloading files from another system required by said first task and said second task's window(s) provides an indication of the progress of said downloading." Col. 3, ll. 4-8. |
| | "Task B puts up the window (4) for Task B as a child window of the window (2) of |

493

| U.S. Patent 6,339,780 | | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | Task A . . . Task B destroys the window (4) for Task B, when the processing for Task B is completed." Col. 3, ll. 66-67 to Col. 4, ll. 1-2. |
| 32.2 | receiving an instruction to load new content into the content viewing area; | "It is a feature of advanced multitasking data processing systems that the tasks executed are becoming more interdependent, i.e. one task may start or call upon another task to carry out some function required by that first task.  An example of such interdependence would be one task requiring a particular piece of information to be retrieved from a database by a database retrieval task.  The calling task would start the database retrieval task and pass to it details concerning the data required." Col. 1, ll. 59-67. |
| 32.3 | loading such new content into the content viewing area; and | See Fig. 3.<br><br> |

18

494

| U.S. Patent 6,339,780 | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|
| **32.4** while loading, displaying a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area; and | "The invention has been found to be particularly advantageous when said system has the function of downloading files from another system required by said first task and said second task's window(s) provides an indication of the progress of said downloading." Col. 3, ll. 4-8.<br><br>See Fig. 2<br><br><br><br>FIG. 2<br><br>"Task B puts up the window (4) for Task B as a child window of the window (2) of Task A . . . Task B destroys the window (4) for Task B, when the processing for Task B is completed." Col. 3, ll. 66-67 to Col. 4, ll. 1-2. |
| **32.5** wherein content comprises data for presentation which is from a source external to the browser. | "It is a feature of advanced multitasking data processing systems that the tasks executed are becoming more interdependent . . . An example of such interdependence would be one task requiring a particular piece of information to be retrieved from a |

495

19

| U.S. Patent 6,339,780 | | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | database by a database retrieval task." Col. 1, ll. 59-65.

"The invention has been found to be particularly advantageous when system has the function of downloading files from another system required by said first task and said second task's window(s) provides an indication of the progress of said downloading." Col. 3, ll. 4-8. |
| 33 | A method as recited in claim 32 further comprising, upon completion of the loading, removing the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed. | "Task B puts up the window (4) for Task B as a child window of the window (2) of Task A . . . Task B destroys the window (4) for Task B, when the processing for Task B is completed." Col. 3, ll. 66-67 to Col. 4, ll. 1-2. |
| 34 | A hypermedia browser of claim 32, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language. | One of ordinary skill in the art would recognize that a hypermedia browser has the function of downloading files from another system when, for example, a user selects a hypermedia link.  To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement Vaughton '744 with a hypermedia browser wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.  Vaughton '744 discloses a system that has the function of downloading files from another system required by a first task.  Based on this, one of ordinary skill in the art would have been motivated to implement the teachings of Vaughton '744 in the context of a hypermedia browser.

In addition, the combination of Vaughton '744 and Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard renders this claim obvious.  Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard teaches a hypermedia browser, wherein content is data formatted for presentation which is selected from a |

| | U.S. Patent 6,339,780 | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language (see analysis of Nguyen '498 and/or ~~Judson~~Judson '643 and/or Nordman '850 and/or HyperCard in claim chart) and it would be obvious to one of skill in the art to modify Vaughton '744 with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, disclose the same or similar techniques, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 35 | A hypermedia browser of claim 32, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web. | One of ordinary skill in the art would recognize that a hypermedia browser has the function of downloading files from another system when, for example, a user selects a hypermedia link.  To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement Vaughton '744 with a hypermedia browser wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash scripting language for the world wide web.  Vaughton '744 discloses a system that has the function of downloading files from another system required by a first task.  Based on this, one of ordinary skill in the art would have been motivated to implement the teachings of Vaughton '744 in the context of a hypermedia browser.

In addition, the combination of Vaughton '744 and Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard renders this claim obvious. Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard teaches a hypermedia browser, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web (see |

21

497

| | U.S. Patent 6,339,780 | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard² and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | analysis of Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard in claim chart) and it would be obvious to one of skill in the art to modify Vaughton '744 with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, disclose the same or similar techniques, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 36 | A computer-readable medium having computer-executable instructions that, when executed by a computer, perform a method of indicating a content "load status," of a hypermedia browser having a content viewing area for viewing content, the method comprising: | The invention provides a data processing system having a window based display and a processor executing a plurality of interleaved data processing tasks each having one or more associated display windows, wherein execution of a first task may trigger execution of a second task characterised in that when execution of said first task triggers execution of said second task, said processor uses data identifying said first task's display window(s) and to control display of said second task's display window(s) so as to be connected to and move with said first task's display window(s). Col. 2, ll. 17-26.

The invention provides the advantage that display of the window(s) of the called task in a manner connected to the window(s) of the calling task, clarifies to the user the relationship between the tasks. Furthermore, the use of the data identifying the calling task's window(s) makes it possible for the system to monitor any changes in the position or size of the calling task's window(s) and make appropriate changes in size and position to the window(s) of the called task thereby preserving the visual relationship between the tasks. Col. 2, ll. 27-36.

In preferred embodiments of the invention said second task's window(s) is displayed within said first task's window(s). This form of display provides an unmistakable visual link between the windows of the different tasks. Col. 2, ll. 63-66.

"The invention has been found to be particularly advantageous when said system has |

22

498

| | | | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|---|---|
| | U.S. Patent 6,339,780 | | the function of downloading files from another system required by said first task and said second task's window(s) provides an indication of the progress of said downloading." Col. 3, ll. 4-8. |
| | | | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement Vaughton '744 in a hypermedia browser having a content viewing area for viewing content. Hypermedia browsers download files from another system, and it would have therefore been obvious to one of skill in the art to implement Vaughton '744 in the context of a hypermedia browser. |
| | | | In addition, the combination of Vaughton '744 and Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard renders this claim obvious. Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard teach a hypermedia browser having a content viewing area for viewing content (see analysis of Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard in claim chart) and it would be obvious to one of skill in the art to modify Vaughton '744 with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 36.1 | displaying loaded content within the content viewing area of a screen of a hypermedia browser, the screen is without a "load status" graphic element, wherein a "load status" graphic element indicates a current content load status of the hypermedia browser; | | The invention provides a data processing system having a window based display and a processor executing a plurality of interleaved data processing tasks each having one or more associated display windows, wherein execution of a first task may trigger execution of a second task characterised in that when execution of said first task triggers execution of said second task, said processor uses data identifying said first task's display window(s) and to control display of said second task's display window(s) so as to be connected to and move with said first task's display window(s). Col. 2, ll. 17-26 |

23

499

| U.S. Patent 6,339,780 | |
|---|---|
| | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard² and/or various systems implementing a web browser on a mobile device |
| | The invention provides the advantage that display of the window(s) of the called task in a manner connected to the window(s) of the calling task, clarifies to the user the relationship between the tasks. Furthermore, the use of the data identifying the calling task's window(s) makes it possible for the system to monitor any changes in the position or size of the calling task's window(s) and make appropriate changes in size and position to the window(s) of the called task thereby preserving the visual relationship between the tasks. Col. 2, ll. 27-36. |
| | In preferred embodiments of the invention said second task's window(s) is displayed within said first task's window(s). This form of display provides an unmistakable visual link between the windows of the different tasks. Col. 2, ll. 63-66. |
| | "The invention has been found to be particularly advantageous when said system has the function of downloading files from another system required by said first task and said second task's window(s) provides an indication of the progress of said downloading." Col. 3, ll. 4-8. |
| | "Task B puts up the window (4) for Task B as a child window of the window (2) of Task A . . . Task B destroys the window (4) for Task B, when the processing for Task B is completed." Col. 3, ll. 66-67 to Col. 4, ll. 1-2. |
| | "It is a feature of advanced multitasking data processing systems that the tasks executed are becoming more interdependent, i.e. one task may start or call upon another task to carry out some function required by that first task. An example of such interdependence would be one task requiring a particular piece of information to be retrieved from a database by a database retrieval task. The calling task would start the database retrieval task and pass to it details concerning the data required." Col. 1, ll. 59-67. |
| 36.2 receiving an instruction to load new content into the content viewing area; | See Fig. 3. |
| 36.3 loading such new content into the content viewing area; and | See Fig. 3. |

| U.S. Patent 6,339,780 | | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | |  |
| 36.4 | while loading, displaying a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area; and | "The invention has been found to be particularly advantageous when said system has the function of downloading files from another system required by said first task and said second task's window(s) provides an indication of the progress of said downloading." Col. 3, ll. 4-8.<br><br>See Fig. 2 |

25

501

| | U.S. Patent 6,339,780 | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | <br><br>FIG. 2<br><br>"Task B puts up the window (4) for Task B as a child window of the window (2) of Task A . . . Task B destroys the window (4) for Task B, when the processing for Task B is completed." Col. 3, ll. 66-67 to Col. 4, ll. 1-2.<br><br>"It is a feature of advanced multitasking data processing systems that the tasks executed are becoming more interdependent . . . An example of such interdependence would be one task requiring a particular piece of information to be retrieved from a database by a database retrieval task." Col. 1, ll. 59-65.<br><br>"The invention has been found to be particularly advantageous when said system has the function of downloading files from another system required by said first task and said second task's window(s) provides an indication of the progress of said downloading." Col. 3, ll. 4-8. |
| 36.5 | wherein content comprises data for presentation which is from a source external to the browser. | |
| 37 | A hypermedia browser of claim 36, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a | One of ordinary skill in the art would recognize that a hypermedia browser has the function of downloading files from another system when, for example, a user selects a hypermedia link.  To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement Vaughton '744 with a hypermedia browser wherein content is data formatted for presentation which is selected from a |

26

502

| U.S. Patent 6,339,780 | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|
| markup language, and visible results of a scripting language. | group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language. Vaughton '744 discloses a system that has the function of downloading files from another system required by a first task. Based on this, one of ordinary skill in the art would have been motivated to implement the teachings of Vaughton '744 in the context of a hypermedia browser.<br><br>In addition, the combination of Vaughton '744 and Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard renders this claim obvious. Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard teaches a hypermedia browser, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language (see analysis of Nguyen '498 and/or ~~Judson~~ Judson '643 and/or Nordman '850 and/or HyperCard in claim chart) and it would be obvious to one of skill in the art to modify Vaughton '744 with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, disclose the same or similar techniques, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 38 | A hypermedia browser of claim 36, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web. | One of ordinary skill in the art would recognize that a hypermedia browser has the function of downloading files from another system when, for example, a user selects a hypermedia link. To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement Vaughton '744 with a hypermedia browser wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash scripting language for the world wide web. Vaughton '744 discloses a system that has the function of downloading files from another |

27

| U.S. Patent 6,339,780 | | |
|---|---|---|
| | | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
| | | system required by a first task.  Based on this, one of ordinary skill in the art would have been motivated to implement the teachings of Vaughton '744 in the context of a hypermedia browser. |
| | | In addition, the combination of Vaughton '744 and Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard renders this claim obvious.  Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard teaches a hypermedia browser, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash, scripting language for the world wide web (see analysis of Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard in claim chart) and it would be obvious to one of skill in the art to modify Vaughton '744 with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, disclose the same or similar techniques, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 39 | A computer-readable medium as recited in claim 36 further having additional computer-executable instructions that perform a method comprising, upon completion of the loading, removing the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed. | "Task B puts up the window (4) for Task B as a child window of the window (2) of Task A . . . Task B destroys the window (4) for Task B, when the processing for Task B is completed." Col. 3, ll. 66-67 to Col. 4, ll. 1-2. |

28

| | U.S. Patent 6,339,780 | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| 40 | 40. An information processing device comprising; | "The invention provides a data processing system having a window based display and a processor executing a plurality of interleaved data processing tasks each having one or more associated display windows[.]" Col. 2, ll. 17-20. |
| 40.1 | a processor; | "The invention provides a data processing system having a window based display and a processor executing a plurality of interleaved data processing tasks each having one or more associated display windows[.]" Col. 2, ll. 17-20. |
| 40.2 | a display; | "The invention provides a data processing system having a window based display and a processor executing a plurality of interleaved data processing tasks each having one or more associated display windows[.]" Col. 2, ll. 17-20. |
| 40.32 | a hypermedia browser executing on the processor to load and display content in a content viewing area on the display; wherein the hypermedia browser is configured to operate in a content-loading mode and a content-loaded mode; | The invention provides a data processing system having a window based display and a processor executing a plurality of interleaved data processing tasks each having one or more associated display windows, wherein execution of a first task may trigger execution of a second task characterised in that when execution of said first task triggers execution of said second task, said processor uses data identifying said first task's display window(s) and to control display of said second task's display window(s) so as to be connected to and move with said first task's display window(s). Col. 2, ll. 17-26

The invention provides the advantage that display of the window(s) of the called task in a manner connected to the window(s) of the calling task, clarifies to the user the relationship between the tasks.  Furthermore, the use of the data identifying the calling task's window(s) makes it possible for the system to monitor any changes in the position or size of the calling task's window(s) and make appropriate changes in size and position to the window(s) of the called task thereby preserving the visual relationship between the tasks.  Col. 2, ll. 27-36.

In preferred embodiments of the invention said second task's window(s) is displayed within said first task's window(s).  This form of display provides an unmistakable visual link between the windows of the different tasks.  Col. 2, ll. 63-66. |

29

505

| | U.S. Patent 6,339,780 | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | "The invention has been found to be particularly advantageous when said system has the function of downloading files from another system required by said first task and said second task's window(s) provides an indication of the progress of said downloading." Col. 3, ll. 4-8. |
| | | "Task B puts up the window (4) for Task B as a child window of the window (2) of Task A . . . Task B destroys the window (4) for Task B, when the processing for Task B is completed." Col. 3, ll. 66-67 to Col. 4, ll. 1-2. |
| | | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement Vaughton '744 in a hypermedia browser having a content viewing area for viewing content. Hypermedia browsers download files from another system, and it would have therefore been obvious to one of skill in the art to implement Vaughton '744 in the context of a hypermedia browser. |
| | | In addition, the combination of Vaughton '744 and Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard renders this claim obvious. Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard teach a hypermedia browser executing on the processor to load and display content in a content viewing area on the display (see analysis of Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard in claim chart) and it would be obvious to one of skill in the art to modify Vaughton '744 with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 40.43 | in the content-loaded mode, the hypermedia browser displays loaded content in the content viewing area and | "Task B puts up the window (4) for Task B as a child window of the window (2) of Task A . . . Task B destroys the window (4) for Task B, when the processing for Task |

30

| | U.S. Patent 6,339,780 | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | no "load status" graphic element is displayed, wherein absence of such "load status" graphic element indicates that the browser is in the content-loaded mode; | B is completed." Col. 3, ll. 66-67 to Col. 4, ll. 1-2. |
| 40.54 | in the content-loading mode, the hypermedia browser loads content, displays such content in the content viewing area as it loads, and displays a "load status" graphic element over the content view area obstructing part of the content displayed in the content viewing area, wherein presence of such "load status" graphic element indicates that the browser is in the content-loading mode; and | "'Task B puts up the window (4) for Task B as a child window of the window (2) of Task A . . . Task B destroys the window (4) for Task B, when the processing for Task B is completed." Col. 3, ll. 66-67 to Col. 4, ll. 1-2. |
| 40.65 | wherein content comprises data for presentation which is from a source external to the browser. | "It is a feature of advanced multitasking data processing systems that the tasks executed are becoming more interdependent . . . An example of such interdependence would be one task requiring a particular piece of information to be retrieved from a database by a database retrieval task." Col. 1, ll. 59-65.  "The invention has been found to be particularly advantageous when said system has the function of downloading files from another system required by said first task and said second task's window(s) provides an indication of the progress of said downloading." Col. 3, ll. 4-8. |
| 41 | A hypermedia browser of claim 40, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a | One of ordinary skill in the art would recognize that a hypermedia browser has the function of downloading files from another system when, for example, a user selects a hypermedia link.  To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement Vaughton '744 with a hypermedia browser wherein content is data formatted for presentation which is selected from a |

31

507

| | U.S. Patent 6,339,780 | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | markup language, and visible results of a scripting language. | group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language. Vaughton '744 discloses a system that has the function of downloading files from another system required by a first task. Based on this, one of ordinary skill in the art would have been motivated to implement the teachings of Vaughton '744 in the context of a hypermedia browser.<br><br>In addition, the combination of Vaughton '744 and Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard renders this claim obvious. Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard teaches a hypermedia browser, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language (see analysis of Nguyen '498 and/or ~~Judson~~ Judson '643 and/or Nordman '850 and/or HyperCard in claim chart) and it would be obvious to one of skill in the art to modify Vaughton '744 with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, disclose the same or similar techniques, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 42 | A hypermedia browser of claim 40, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web. | One of ordinary skill in the art would recognize that a hypermedia browser has the function of downloading files from another system when, for example, a user selects a hypermedia link. To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement Vaughton '744 with a hypermedia browser wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash scripting language for the world wide web. Vaughton '744 discloses a system that has the function of downloading files from another |

32

| U.S. Patent 6,339,780 | U.S. Patent 5,528,744 ("Vaughton '744") alone and/or in combination with U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,572,643 ("Judson '643") and/or U.S. Patent 5,864,850 ("Nordman '850") and/or HyperCard[2] and/or various systems implementing a web browser on a mobile device |
|---|---|
| | system required by a first task.  Based on this, one of ordinary skill in the art would have been motivated to implement the teachings of Vaughton '744 in the context of a hypermedia browser. |
| | In addition, the combination of Vaughton '744 and Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard renders this claim obvious.  Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard teaches a hypermedia browser, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash, scripting language for the world wide web (see analysis of Nguyen '498 and/or Judson '643 and/or Nordman '850 and/or HyperCard in claim chart) and it would be obvious to one of skill in the art to modify Vaughton '744 with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, disclose the same or similar techniques, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |

33

# EXHIBIT B

Exemplar Chart of U.S. Patent 6,339,780

**U.S. Patent 5,572,643 ("Judson '643")[1]**
**Claims 1-6, 9-14, 17, 18, 20, 21 and 32-42**

| Claim | U.S. Patent 6,339,780 | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| 1 | A hypermedia browser embodied on a computer-readable medium for execution on an information processing device having a limited display area, | "A method of browsing the Worldwide Web of the Internet using an HTML-compliant client supporting a graphical user interface and a browser.  The method begins as a web page is being displayed on the graphical user interface, the web page having at least one link to a hypertext document preferably located at a remote server." Abstract.<br><br>"According to the preferred embodiment, there is described a method of browsing the Worldwide Web of the Internet using an HTML-compliant client supporting a graphical user interface and a browser." Col. 2, ll. 29-32.<br><br>"Each of the clients may run a 'browser,' which is a known software tool used to |

NOTE: Motorola applies the prior art in light of Microsoft's improper assertions of infringement and improper application of the claims.  Motorola does not agree with Microsoft's application of the claims, or that the claims satisfy 35 U.S.C. § 112.  Motorola's contentions herein are not, and should in no way be seen as, admissions or adoptions as to any particular claim scope or construction, or as any admission that any particular element is met in any particular way.  Motorola objects to any attempt to imply claim construction from the foregoing chart.  Motorola's  prior art invalidity contentions are made in a variety of alternatives and do not represent Motorola's agreement or view as to the meaning, definiteness, written description support for, or enablement of any claim contained therein.

[1] "Web Browser with Dynamic Display of Information Objects During Linking" issued to Judson; filed October 19, 1995; issued November 5, 1996.

[2] "Dynamic Progress Marking Icon" issued to Jaaskelainen; filed July 16, 1992; issued April 5, 1994.

[3] "Replaceable and Extensible Navigator Component of a Network Component System" issued to Cleron et al.; filed February 27, 1997; issued May 25, 1999.

[4] PenPoint Operating System, PenPoint UI Design Guidelines; GO Corporation, Foster City, California; 1991.

| Claim | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |
|---|---|
| U.S. Patent 6,339,780 | access the servers via the access providers." Col. 3, ll. 51-53.

"In addition, although the various methods described are conveniently implemented in a general purpose computer selectively activated or reconfigured by software, one of ordinary skill in the art would also recognize that such methods may be carried out in hardware, in firmware, or in more specialized apparatus constructed to perform the required method steps." Col. 7, ll. 52-59.

To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser on an information processing device having a limited display area. Judson '643 discloses that "one of ordinary skill in the art would also recognize that [the invention] may be carried out in hardware, in firmware, or in more specialized apparatus constructed to perform the required method steps," e.g., in a device having a limited display area. Based on this, one of skill in the art would have been motivated to implement a browser on an information processing device having a limited display area.

In addition, the combination of Judson '643 and one or more references describing handheld devices with browsers renders this claim obvious. Gessler[5], Cooper[6], Bartlett[7], Watson[8], Kamba[9], and Lauff[10] each teach a hypermedia browser embodied |

---

[5] S. Gessler and A. Kotulla. PDAs as Mobile WWW Browsers. Computer Networks and ISDN Systems 28 (1995) 53-59 ("Gessler") (see pgs. 53 and 56-58).

[6] I. Cooper and R. Shufflebotham. PDAWeb Browsers: Implementation Issues. (University of Kent at Canterbury, November 9, 1995) ("Cooper") (see pgs. 3 and 5).

[7] J. Bartlett. Experience with a Wireless World Wide Web Client. IEEE COMPCON 95 (San Francisco, March 1995) ("Bartlett") (see pgs. 1, 4 and 5).

[8] T. Watson. "Application Design for Wireless Computing" (1994 Mobile Computing Systems and Applications Workshop Position Paper (August 1994)).

[9] T. Kamba, S. A. Elson, T. Harpold, T. Stamper, and P. Sukaviriya. (1996). "Using small screen space more efficiently."

2

| Claim | U.S. Patent 6,339,780 | |
|---|---|---|
| | | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or PenPoint⁴ and/or various systems implementing a web browser on a mobile device |
| | | on a computer-readable medium for execution on an information processing device having a limited display area (e.g., a PDA, handheld, mobile device, etc.), and it would be obvious to one of skill in the art to modify Judson '643 with these teachings.[11] One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system). Additionally, Bartlett cites Gessler and Cooper cites Gessler and Bartlett. Moreover, all of theses references are from the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 1.1 | wherein the hypermedia browser has a content viewing area for viewing content and is configured to display a temporary graphic element over the content viewing area during times when the browser is loading content, | "While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Abstract.

"It is thus a primary object of the invention to enhance the operation of a web browser by causing the display of some useful information to the user during the period of user 'downtime' that otherwise occurs between linking and downloading of a hypertext document identified by the link." Col. 1, ll. 59-63.

"While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational |

(...Continued)
[10] M. Lauff and W. Gellerson. Multimedia Client Implementation on Personal Digital Assistants. TecO.

[11] Motorola continues to investigate other browsers that were in existence prior to the priority date of the '780 patent (e.g., NetHopper, Newt's Cape, PocketWeb and Vogon).

513

3

| Claim | U.S. Patent 6,339,780 | |
|---|---|---|
| | | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |
| | | messages to the user." Col. 2, ll. 39-42. |
| 1.2 | wherein the temporary graphic element is positioned over the content viewing area to obstruct only part of the content in the content viewing area, | "FIG. 8 is a representative screen display illustrating how the information object appears as a 'mini' web page upon activation of the hypertext link in the web page of FIG. 5." Col. 3, ll. 38-40.

"As used herein, the 'information object' or 'information' output to the viewer during the link process should be broadly construed to cover any and all forms of messages, notices, text, graphics, sound, video, tables, diagrams, applets and other content, and combinations of any of the above." Col. 7, ll. 39-44.

"Thus, an 'information object' according to the invention may include an applet which, for example, may generate an animated figure or icon, some aural output, a scrolling display, or a combination thereof." Col. 8, ll. 9-12.

To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to position the temporary graphic element over the content viewing area to obstruct only part of the content in the content viewing area. Judson '643 discloses that 'the 'information object' or 'information' output to the viewer during the link process should be broadly construed to cover any and all forms of messages, notices, text, graphics, sound, video, tables, diagrams, applets and other content, and combinations of any of the above," e.g., a temporary graphic element positioned over the content viewing area to obstruct only part of the content in the content viewing area. Based on this, one of skill in the art would have been motivated to implement a browser wherein the temporary graphic element is positioned over the content viewing area to obstruct only part of the content in the content viewing area.

In addition, the combination of Judson '643 and/or Vaughton '744 and/or Alley '282 and/or Jaaskelainen '348 and/or PenPoint renders this claim obvious. Vaughton '744 and/or Alley '282 and/or Jaaskelainen '348 and/or PenPoint teaches a temporary graphic element positioned over the content viewing area to obstruct only part of the content in the content viewing area (see analysis of Vaughton '744 and/or Alley '282 |

4

| Claim | U.S. Patent 6,339,780 | |
|---|---|---|
| | | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or PenPoint⁴ and/or various systems implementing a web browser on a mobile device |
| | | in claim chart; see also Jaaskelainen '348 at FIG. 1 and PenPoint at 64-65 (describing the placement of the animated busy clock) and it would be obvious to one of skill in the art to modify Judson '643 with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system including a status indicator of the download progress), address the same problem (indicating the downloading progress within the content viewing area), disclose the same or similar techniques for superimposing a download status indicator over the content, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 1.3 | wherein the temporary graphic element is not content and wherein content comprises data for presentation which is from a source external to the browser. | "The method begins as a web page is being displayed on the graphical user interface, the web page having at least one link to a hypertext document preferably located at a remote server. In response to the user clicking on the link, the link is activated by the browser to thereby request downloading of the hypertext document from the remote server to the graphical user interface of the client." Col. 2, ll. 32-39. "Or, the information object(s) may have no direct relation to the content of any link in the document." Col. 5, ll. 28-30. "The information object need not be embedded within an existing web page, but rather may be embedded within the home page of the browser or supported elsewhere within the client itself." Col. 6, l. 66-Col. 7, l. 2. |
| 2 | A hypermedia browser as recited in claim 1, wherein the browser is configured to display the temporary graphic element over the content viewing area only during times when the browser | "While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Abstract. "While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational |

5

515

| Claim | U.S. Patent 6,339,780 | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | is loading visible content. | messages to the user." Col. 2, ll. 39-42. |
| 3 | A hypermedia browser as recited in claim 1, wherein the temporary graphic element indicates to a user that the browser is loading content. | "While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Abstract.<br><br>"While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Col. 2, ll. 39-42.<br><br>To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to use the temporary graphic element to indicate to a user that the browser is loading content. For example, Judson '643 states "As used herein, the "information object" or "information" output to the viewer during the link process should be broadly construed to cover any and all forms of messages, notices, text, graphics, sound, video, tables, diagrams, applets and other content, and combinations of any of the above." Col. 7, ll. 38-44). Moreover, Vaughton '744 indicates, e.g., that "[t]he window for Task B shows a sand glass in which the flow of the sand through the sand glass gives an indication of the progress of the downloading of the file in question." Vaughton '744 at Col. 3, ll. 37-40. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system). Moreover, theses references are from the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 4 | A hypermedia browser as recited in claim 1, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate | "While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Abstract. |

6

| Claim | | |
|---|---|---|
| | U.S. Patent 6,339,780 | |
| | to a user that such loading of content is complete. | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |

"While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Col. 2, ll. 39-42.

To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to have the temporary graphic element disappear when the browser's loading of content is complete to indicate to a user that such loading of content is complete. ~~Moreover, Vaughton '744 indicates, e.g., that "Task B destroys the window (4) for Task B, when the processing for Task B is complete." Vaughton '744 at Col. 4, ll. 1-2.~~

In addition, the combination of Judson '643 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious. Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 teaches a temporary graphic element that disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete (see analysis of Vaughton '744 in claim chart (e.g., that "Task B destroys the window (4) for Task B, when the processing for Task B is complete." Vaughton '744 at Col. 4, ll. 1-2.); see also Jaaskelainen at Col. 4, ll. 31-34 ("Icon 20 shown in FIG. 2U is displayed to the user momentarily to indicate completion of the task, and then the border is removed, thereby causing icon 20 to disappear from display 12."; Cleron '843 at Col. 16, ll. 50-55 ("When a process has been completed and a page of information is being displayed, the status and progress banner 750, the process display 752 and the stop button 754 are eliminated from the display because they no longer provide any useful information.") and it would be obvious to one of skill in the art to modify Judson '643 with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system).  Moreover, theses references are from the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need

7

| Claim | U.S. Patent 6,339,780 |
|---|---|
| | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |
| | and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 5 | A hypermedia browser as recited in claim 1, wherein the temporary graphic element is animated. | "Thus, an 'information object' according to the invention may include an applet which, for example, may generate an animated figure or icon, some aural output, a scrolling display, or a combination thereof." Col. 8, ll. 9-12. |
| 6 | A hypermedia browser as recited in claim 1, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area. | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area.  Judson '643 discloses that "[w]hile the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user."  Based on this, one of skill in the art would have been motivated to implement a browser wherein the one or more different types of informational messages to the user is displayed in a corner of the content viewing area.  Additionally, displaying the one or more different types of informational messages to the user in a corner of the content viewing area is an obvious design choice to minimize the amount of content obstructed and would have been obvious to try.

~~Moreover, Vaughton '744 indicates, e.g., that "the window(s) of the second task may abut the edge of the window(s) of the first task—the windows may be "clipped together" at their edge." Vaughton '744 at Col. 2, l. 63 - Col. 3, l. 3.~~

In addition, the combination of Judson '543 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious.  Vaughton '744 indicates, e.g., that "the window(s) of the second task may abut the edge of the window(s) of the first task—the windows may be "clipped together" at their edge."  Vaughton '744 at Col. 2, l. 63 - Col. 3, l. 3.  Jaaskelainen '348 indicates, e.g., that "[i]n the preferred embodiment, icon 20 is displayed in the lower right hand corner or display 12 (FIG. 1), and remains in the same location for the duration of the task.  Of course, icon 20 |

8

518

| Claim | | |
|---|---|---|
| | U.S. Patent 6,339,780 | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |
| | | could be displayed in a different location of display 12 or move from location to location as the task progresses." Jaaskelainen '348 at Col. 4, ll. 7-13.  Cleron '843 indicates, e.g., that progress banner 750 may appear in the lower right corner of the display.  Cleron '843 at FIG. 8A.  It would be obvious to one of skill in the art to modify Judson '543 with these teachings.  One of skill in the art would be motivated to combine these references because there are all in the same field and share common subject matter (systems for downloading files from another system).  Moreover, theses references are from the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 9 | A hypermedia browser as recited in claim 1, wherein the temporary graphic element conveys status information of the browser. | "While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Abstract.

"While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Col. 2, ll. 39-42.

To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to use the temporary graphic element to convey status information of the browser.  For example, Judson '643 states "As used herein, the "information object" or "information" output to the viewer during the link process should be broadly construed to cover any and all forms of messages, notices, text, graphics, sound, video, tables, diagrams, applets and other content, and combinations of any of the above." Col. 7, ll. 38-44). Moreover, Vaughton '744 indicates, e.g., that "[t]he window for Task B shows a sand glass in which the flow of the sand through the sand glass gives an indication of the progress of the downloading of the file in question." Vaughton '744 at Col. 3, ll. 37-40.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common |

9

519

| Claim | U.S. Patent 6,339,780 | |
|---|---|---|
| | | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |
| | | subject matter (systems for downloading files from another system).  Moreover, theses references are from the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 10 | A hypermedia browser of claim 1, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language. | "The 'World Wide Web' (WWW) is that collection of servers of the Internet that utilize the Hypertext Transfer Protocol (HTTP).  HTTP is a known application protocol that provides users access to files (which can be in different formats such as text, graphics, images, sound, video, etc.) using a standard page description language known as Hypertext Markup Language (HTML).  HTML provides basic document formatting and allows the developer to specify "links" to other servers and files.  Use of an HTML-compliant client browser involves specification of a link via the URL.  Upon such specification, the client makes a tcp/ip request to the server identified in the link and receives a 'web page' (namely, a document formatted according to HTML) in return." Col. 3, l. 58-Col. 4, l. 4.

"RAM 34 also supports a number of Internet access tools including, for example, the HTTP-compliant web browser 62.  Known browser software includes Netscape, Netscape Navigator 2.0, Mosaic, and the like.  The present invention is designed to operate within any of these known or developing web browsers, which are preferably modified as described herein to achieve the dynamic display of information objects during web site linking activities." Col. 4, ll. 39-47.

"As noted above, a web browser 62 running on the client uses a TCP/IP connection to pass a request to a web server running a HTTP "service" (under the WINDOWS operating system) or "daemon" (under the UNIX operating system).  The HTTP service then responds to the request, typically by sending a "web page" formatted in the Hypertext Markup Language, or HTML, to the browser.  The browser then displays the web page using local resources (e.g., fonts and colors)." Col. 5, ll. 41-49. |

10

| Claim | U.S. Patent 6,339,780 | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| 11 | A hypermedia browser of claim 1, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash, scripting language for the world wide web. | "The 'World Wide Web' (WWW) is that collection of servers of the Internet that utilize the Hypertext Transfer Protocol (HTTP). HTTP is a known application protocol that provides users access to files (which can be in different formats such as text, graphics, images, sound, video, etc.) using a standard page description language known as Hypertext Markup Language (HTML). HTML provides basic document formatting and allows the developer to specify "links" to other servers and files. Use of an HTML-compliant client browser involves specification of a link via the URL. Upon such specification, the client makes a tcp/ip request to the server identified in the link and receives a 'web page' (namely, a document formatted according to HTML) in return." Col. 3, l. 58-Col. 4, l. 4.

"RAM 34 also supports a number of Internet access tools including, for example, the HTTP-compliant web browser 62. Known browser software includes Netscape, Netscape Navigator 2.0, Mosaic, and the like. The present invention is designed to operate within any of these known or developing web browsers, which are preferably modified as described herein to achieve the dynamic display of information objects during web site linking activities." Col. 4, ll. 39-47.

"As noted above, a web browser 62 running on the client uses a TCP/IP connection to pass a request to a web server running a HTTP "service" (under the WINDOWS operating system) or "daemon" (under the UNIX operating system). The HTTP service then responds to the request, typically by sending a "web page" formatted in the Hypertext Markup Language, or HTML, to the browser. The browser then displays the web page using local resources (e.g., fonts and colors)." Col. 5, ll. 41-49. |
| 12 | An information processing device comprising; | "A method of browsing the Worldwide Web of the Internet using an HTML-compliant client supporting a graphical user interface and a browser." Abstract. |
| 12.1 | a processor; | "The microprocessor 32 is connected to the system bus 31 and is supported by read only memory (ROM) 33 and random access memory (RAM) 34 also connected to system bus 31." Col. 4, ll. 10-13. |

11

| Claim | U.S. Patent 6,339,780 | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or PenPoint⁴ and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| 12.2 | a display; | "The keyboard controller 38 provides the hardware interface for the keyboard 22, the controller 39 provides the hardware interface for the mouse (or other point and click device) 23, the video controller 40 is the hardware interface for the display 24, and the audio controller 41 is the hardware interface for the multimedia speakers 25a and 25b." Col. 4, ll. 27-33. |
| 12.3 | a hypermedia browser executing on the processor to load and display content in a content viewing area on the display; wherein the hypermedia browser has a content viewing area for viewing content and wherein the hypermedia browser displays a temporary graphic element over the content viewing area during times when the browser is loading visible content; | "A method of browsing the Worldwide Web of the Internet using an HTML-compliant client supporting a graphical user interface and a browser. The method begins as a web page is being displayed on the graphical user interface, the web page having at least one link to a hypertext document preferably located at a remote server." Abstract.<br><br>"According to the preferred embodiment, there is described a method of browsing the Worldwide Web of the Internet using an HTML-compliant client supporting a graphical user interface and a browser." Col. 2, ll. 29-32.<br><br>"Each of the clients may run a 'browser,' which is a known software tool used to access the servers via the access providers." Col. 3, ll. 51-53.<br><br>"While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Abstract.<br><br>"While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Col. 2, ll. 39-42.<br><br>To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to use the temporary graphic element to indicate to a user that the browser is loading content. For example, Judson '643 states "As used herein, the "information object" or "information" output to the viewer during the link process should be broadly construed to cover any and all forms of messages, notices, text, graphics, sound, video, tables, diagrams, applets and other content, and combinations |

12

| Claim | U.S. Patent 6,339,780 | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or PenPoint⁴ and/or various systems implementing a web browser on a mobile device |
|---|---|---|
|  |  | of any of the above." Col. 7, ll. 38-44). Moreover, Vaughton '744 indicates, e.g., that "[t]he window for Task B shows a sand glass in which the flow of the sand through the sand glass gives an indication of the progress of the downloading of the file in question." Vaughton '744 at Col. 3, ll. 37-40. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system). Moreover, theses references are from the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 12.4 | wherein the temporary graphic element is positioned only over a portion of the content viewing area and obstructs only part of the visible content in the content viewing area; and | "FIG. 8 is a representative screen display illustrating how the information object appears as a 'mini' web page upon activation of the hypertext link in the web page of FIG. 5." Col. 3, ll. 38-40.<br><br>"As used herein, the 'information object' or 'information' output to the viewer during the link process should be broadly construed to cover any and all forms of messages, notices, text, graphics, sound, video, tables, diagrams, applets and other content, and combinations of any of the above." Col. 7, ll. 39-44.<br><br>"Thus, an 'information object' according to the invention may include an applet which, for example, may generate an animated figure or icon, some aural output, a scrolling display, or a combination thereof." Col. 8, ll. 9-12.<br><br>To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to position the temporary graphic element over the content viewing area to obstruct only part of the content in the content viewing area. Judson '643 discloses that "the 'information object' or 'information' output to the viewer during the link process should be broadly construed to cover any and all forms of messages, notices, text, graphics, sound, video, tables, diagrams, applets and other content, and combinations of any of the above." e.g., a temporary graphic element positioned over the content viewing area to obstruct only part of the content in the content viewing |

13

| Claim | U.S. Patent 6,339,780 | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | area.  Based on this, one of skill in the art would have been motivated to implement a browser wherein the temporary graphic element is positioned over the content viewing area to obstruct only part of the content in the content viewing area. |
| | | In addition, the combination of Judson '643 and/or Vaughton '744 and/or Alley '282 and/or Jaaskelainen '348 and/or PenPoint renders this claim obvious.  Vaughton '744 and/or Alley '282 and/or Jaaskelainen '348 and/or PenPoint teaches a temporary graphic element positioned over the content viewing area to obstruct only part of the content in the content viewing area (see analysis of Vaughton '744 and/or Alley '282 in claim chart; see also Jaaskelainen '348 at FIG. 1 and PenPoint at 64-65 (describing the placement of the animated busy clock)) and it would be obvious to one of skill in the art to modify Judson '643 with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system including a status indicator of the download progress), address the same problem (indicating the downloading progress within the content viewing area), disclose the same or similar techniques for superimposing a download status indicator over the content, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 12.5 | wherein the temporary graphic element indicates to a user that the browser is loading content and content comprises data for presentation which is from a source external to the browser. | "While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Abstract.

"The method begins as a web page is being displayed on the graphical user interface, the web page having at least one link to a hypertext document preferably located at a remote server.  In response to the user clicking on the link, the link is activated by the browser to thereby request downloading of the hypertext document from the remote server to the graphical user interface of the client." Col. 2, ll. 32-39. |

14

524

| Claim | U.S. Patent 6,339,780 | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or PenPoint⁴ and/or various systems implementing a web browser on a mobile device |
|---|---|---|
|  |  | "While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Col. 2, ll. 39-42.<br><br>To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to use the temporary graphic element to indicate to a user that the browser is loading content. For example, Judson '643 states "As used herein, the "information object" or "information" output to the viewer during the link process should be broadly construed to cover any and all forms of messages, notices, text, graphics, sound, video, tables, diagrams, applets and other content, and combinations of any of the above." Col. 7, ll. 38-44). Moreover, Vaughton '744 indicates, e.g., that "[t]he window for Task B shows a sand glass in which the flow of the sand through the sand glass gives an indication of the progress of the downloading of the file in question." Vaughton '744 at Col. 3, ll. 37-40. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system). Moreover, theses references are from the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 13 | An information processing device as recited in claim 12, wherein the temporary graphic element is animated. | "Thus, an 'information object' according to the invention may include an applet which, for example, may generate an animated figure or icon, some aural output, a scrolling display, or a combination thereof." Col. 8, ll. 9-12. |
| 14 | An information processing device as recited in claim 12, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area. | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area. Judson '643 discloses that "[w]hile the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational |

15

| Claim | | |
|---|---|---|
| U.S. Patent 6,339,780 | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or PenPoint⁴ and/or various systems implementing a web browser on a mobile device | messages to the user." Based on this, one of skill in the art would have been motivated to implement a browser wherein the one or more different types of informational messages to the user is displayed in a corner of the content viewing area. Additionally, displaying the one or more different types of informational messages to the user in a corner of the content viewing area is an obvious design choice to minimize the amount of content obstructed and would have been obvious to try.<br><br>Moreover, Vaughton '744 indicates, e.g., that "the window(s) of the second task may abut the edge of the window(s) of the first task—the windows may be "clipped together" at their edge." Vaughton '744 at Col. 2, l. 63 - Col. 3, l. 3.<br><br>In addition, the combination of Judson '543 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious. Vaughton '744 indicates, e.g., that "the window(s) of the second task may abut the edge of the window(s) of the first task—the windows may be "clipped together" at their edge." Vaughton '744 at Col. 2, l. 63 - Col. 3, l. 3. Jaaskelainen '348 indicates, e.g., that "[i]n the preferred embodiment, icon 20 is displayed in the lower right hand corner or display 12 (FIG. 1), and remains in the same location for the duration of the task. Of course, icon 20 could be displayed in a different location of display 12 or move from location to location as the task progresses." Jaaskelainen '348 at Col. 4, ll. 7-13. Cleron '843 indicates, e.g., that progress banner 750 may appear in the lower right corner of the display. Cleron '843 at FIG. 8A. It would be obvious to one of skill in the art to modify Judson '543 with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system). Moreover, theses references are from the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |

16

| Claim | U.S. Patent 6,339,780 | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| 17 | A hypermedia browser of claim 12, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language. | "The 'World Wide Web' (WWW) is that collection of servers of the Internet that utilize the Hypertext Transfer Protocol (HTTP). HTTP is a known application protocol that provides users access to files (which can be in different formats such as text, graphics, images, sound, video, etc.) using a standard page description language known as Hypertext Markup Language (HTML). HTML provides basic document formatting and allows the developer to specify "links" to other servers and files. Use of an HTML-compliant client browser involves specification of a link via the URL. Upon such specification, the client makes a tcp/ip request to the server identified in the link and receives a 'web page' (namely, a document formatted according to HTML) in return." Col. 3, l.58-Col. 4, l.4.

"RAM 34 also supports a number of Internet access tools including, for example, the HTTP-compliant web browser 62. Known browser software includes Netscape, Netscape Navigator 2.0, Mosaic, and the like. The present invention is designed to operate within any of these known or developing web browsers, which are preferably modified as described herein to achieve the dynamic display of information objects during web site linking activities." Col. 4, ll. 39-47.

"As noted above, a web browser 62 running on the client uses a TCP/IP connection to pass a request to a web server running a HTTP "service" (under the WINDOWS operating system) or "daemon" (under the UNIX operating system). The HTTP service then responds to the request, typically by sending a "web page" formatted in the Hypertext Markup Language, or HTML, to the browser.  The browser then displays the web page using local resources (e.g., fonts and colors)." Col. 5, ll. 41-49. |
| 18 | A hypermedia browser of claim 12, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, | "The 'World Wide Web' (WWW) is that collection of servers of the Internet that utilize the Hypertext Transfer Protocol (HTTP). HTTP is a known application protocol that provides users access to files (which can be in different formats such as text, graphics, images, sound, video, etc.) using a standard page description language known as Hypertext Markup Language (HTML). HTML provides basic document formatting and allows the developer to specify "links" to other servers and files. Use |

| Claim | U.S. Patent 6,339,780 | |
|---|---|---|
| | | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |
| | Flash. scripting language for the world wide web. | "of an HTML-compliant client browser involves specification of a link via the URL. Upon such specification, the client makes a tcp/ip request to the server identified in the link and receives a 'web page' (namely, a document formatted according to HTML) in return." Col. 3, l. 58-Col. 4, l. 4.

"RAM 34 also supports a number of Internet access tools including, for example, the HTTP-compliant web browser 62. Known browser software includes Netscape, Netscape Navigator 2.0, Mosaic, and the like. The present invention is designed to operate within any of these known or developing web browsers, which are preferably modified as described herein to achieve the dynamic display of information objects during web site linking activities." Col. 4, ll. 39-47.

"As noted above, a web browser 62 running on the client uses a TCP/IP connection to pass a request to a web server running a HTTP "service" (under the WINDOWS operating system) or "daemon" (under the UNIX operating system). The HTTP service then responds to the request, typically by sending a "web page" formatted in the Hypertext Markup Language, or HTML, to the browser. The browser then displays the web page using local resources (e.g., fonts and colors)." Col. 5, ll. 41-49. |
| 20 | An information processing device as recited in claim 12, wherein the temporary graphic element is not content. | "Or, the information object(s) may have no direct relation to the content of any link in the document." Col. 5, ll. 28-30.

"The information object need not be embedded within an existing web page, but rather may be embedded within the home page of the browser or supported elsewhere within the client itself." Col. 6, l. 66-Col. 7, l. 2. |
| 21 | An information processing device as recited in claim 12, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete. | "While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Abstract.

"While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational |

18

| Claim | | |
|---|---|---|
| | U.S. Patent 6,339,780 | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or PenPoint⁴ and/or various systems implementing a web browser on a mobile device |

messages to the user." Col. 2, ll. 39-42.

To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to have the temporary graphic element disappear when the browser's loading of content is complete to indicate to a user that such loading of content is complete. Moreover, Vaughton '744 indicates, e.g., that "Task B destroys the window (4) for Task B, when the processing for Task B is complete." Vaughton '744 at Col. 4, ll. 1-2.

In addition, the combination of Judson '643 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious. Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 teaches a temporary graphic element that disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete (see analysis of Vaughton '744 in claim chart (e.g., that "Task B destroys the window (4) for Task B, when the processing for Task B is complete." Vaughton '744 at Col. 4, ll. 1-2.); see also Jaaskelainen at Col. 4, ll. 31-34 ("Icon 20 shown in FIG. 2U is displayed to the user momentarily to indicate completion of the task, and then the border is removed, thereby causing icon 20 to disappear from display 12."; Cleron '843 at Col. 16, ll. 50-55 ("When a process has been completed and a page of information is being displayed, the status and progress banner 750, the process display 752 and the stop button 754 are eliminated from the display because they no longer provide any useful information.") and it would be obvious to one of skill in the art to modify Judson '643 with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system). Moreover, theses references are from the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions.

19

| Claim | U.S. Patent 6,339,780 | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| 32 | A method of indicating a content "load status" of a hypermedia browser having a content viewing area for viewing content, the method comprising: | "A method of browsing the Worldwide Web of the Internet using an HTML-compliant client supporting a graphical user interface and a browser.  The method begins as a web page is being displayed on the graphical user interface, the web page having at least one link to a hypertext document preferably located at a remote server." Abstract.<br><br>"According to the preferred embodiment, there is described a method of browsing the Worldwide Web of the Internet using an HTML-compliant client supporting a graphical user interface and a browser." Col. 2, ll. 29-32.<br><br>"Each of the clients may run a 'browser,' which is a known software tool used to access the servers via the access providers." Col. 3, ll. 51-53.<br><br>"While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Abstract.<br><br>"While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Col. 2, ll. 39-42.<br><br>To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to use the temporary graphic element to convey status information of the browser.  For example, Judson '643 states "As used herein, the "information object" or "information" output to the viewer during the link process should be broadly construed to cover any and all forms of messages, notices, text, graphics, sound, video, tables, diagrams, applets and other content, and combinations of any of the above." Col. 7, ll. 38-44).  Moreover, Vaughton '744 indicates, e.g., that "[t]he window for Task B shows a sand glass in which the flow of the sand through the sand glass gives an indication of the progress of the downloading of the file in question." Vaughton '744 at Col. 3, ll. 37-40.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common |

20

| Claim | U.S. Patent 6,339,780 | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | subject matter (systems for downloading files from another system).  Moreover, theses references are from the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 32.1 | displaying loaded content within the content viewing area of a screen of a hypermedia browser, the screen being without a "load status" graphic element, wherein a "load status" graphic element indicates a current content load status of the hypermedia browser; | "The method begins as a web page is being displayed on the graphical user interface, the web page having at least one link to a hypertext document preferably located at a remote server." Col. 2, ll. 32-35.<br><br>"While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user."  Abstract.<br><br>"While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Col. 2, ll. 39-42.<br><br>To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser, "the screen being without a "load status" graphic element." Judson '643 discloses that "one of ordinary skill in the art would also recognize that [the invention] may be carried out in hardware, in firmware, or in more specialized apparatus constructed to perform the required method steps," e.g., to save space on a display with a limited display area.  Based on this, one of skill in the art would have been motivated to implement a browser having a screen without a "load status" graphic element.  Additionally, having a screen without a "load status" graphic element is an obvious design choice where display area is limited and would have been obvious to try.  See claim 1 above. |
| 32.2 | receiving an instruction to load new content into the content viewing area; | "In response to the user clicking on the link, the link is activated by the browser to thereby request downloading of the hypertext document from the remote server to the graphical user interface of the client." Col. 2, ll. 35-39. |

21

531

| Claim | U.S. Patent 6,339,780 | |
|---|---|---|
| | | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |
| | | "In response to the user pointing and clicking on the link, the link is said to be 'activated' to begin the download of the linked document or text." Col. 4, ll. 62-64. |
| 32.3 | loading such new content into the content viewing area; and | "In response to the user clicking on the link, the link is activated by the browser to thereby request downloading of the hypertext document from the remote server to the graphical user interface of the client. While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Col. 2, ll. 35-42. |
| 32.4 | while loading, displaying a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area; and | "FIG. 8 is a representative screen display illustrating how the information object appears as a 'mini' web page upon activation of the hypertext link in the web page of FIG. 5." Col. 3, ll. 38-40.<br><br>"As used herein, the 'information object' or 'information' output to the viewer during the link process should be broadly construed to cover any and all forms of messages, notices, text, graphics, sound, video, tables, diagrams, applets and other content, and combinations of any of the above." Col. 7, ll. 39-44.<br><br>"Thus, an 'information object' according to the invention may include an applet which, for example, may generate an animated figure or icon, some aural output, a scrolling display, or a combination thereof." Col. 8, ll. 9-12.<br><br>To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to position the temporary graphic element over the content viewing area to obstruct only part of the content in the content viewing area. Judson '643 discloses that "the 'information object' or 'information' output to the viewer during the link process should be broadly construed to cover any and all forms of messages, notices, text, graphics, sound, video, tables, diagrams, applets and other content, and combinations of any of the above," e.g., a temporary graphic element positioned over the content viewing area to obstruct only part of the content in the content viewing area. Based on this, one of skill in the art would have been motivated to implement a browser wherein the temporary graphic element is positioned over the content viewing |

22

| Claim | U.S. Patent 6,339,780 | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | area to obstruct only part of the content in the content viewing area. |
| | | In addition, the combination of Judson '643 and/or Vaughton '744 and/or Alley '282 and/or Jaaskelainen '348 and/or PenPoint renders this claim obvious. Vaughton '744 and/or Alley '282 and/or Jaaskelainen '348 and/or PenPoint teaches a temporary graphic element positioned over the content viewing area to obstruct only part of the content in the content viewing area (see analysis of Vaughton '744 and/or Alley '282 in claim chart; see also Jaaskelainen '348 at FIG. 1 and PenPoint at 64-65 (describing the placement of the animated busy clock) and it would be obvious to one of skill in the art to modify Judson '643 with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system including a status indicator of the download progress), address the same problem (indicating the downloading progress within the content viewing area), disclose the same or similar techniques for superimposing a download status indicator over the content, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 32.5 | wherein content comprises data for presentation which is from a source external to the browser. | "The method begins as a web page is being displayed on the graphical user interface, the web page having at least one link to a hypertext document preferably located at a remote server.  In response to the user clicking on the link, the link is activated by the browser to thereby request downloading of the hypertext document from the remote server to the graphical user interface of the client." Col. 2, ll. 32-39. |
| 33 | A method as recited in claim 32 further comprising, upon completion of the loading, removing the "load status" graphic element to reveal the part of the content in the content viewing area that | "While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Abstract.<br><br>"While the client waits for a reply and/or as the hypertext document is being |

23

| Claim | | |
|---|---|---|
| U.S. Patent 6,339,780 | the graphic element obstructed when the element was displayed. | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or PenPoint⁴ and/or various systems implementing a web browser on a mobile device |

downloaded, the browser displays one or more different types of informational messages to the user." Col. 2, ll. 39-42.

To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to upon completion of the loading, remove the "load status" graphic element. Moreover, Vaughton '744 indicates, e.g., that "Task B destroy the window (1) for Task B, when the processing for Task B is complete." Vaughton '744 at Col. 4, ll. 1-2.

In addition, the combination of Judson '643 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious.  Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 teaches a temporary graphic element that disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete (see analysis of Vaughton '744 in claim chart (e.g., that "Task B destroys the window (4) for Task B, when the processing for Task B is complete."  Vaughton '744 at Col. 4, ll. 1-2.); see also Jaaskelainen at Col. 4, ll. 31-34 ("Icon 20 shown in FIG. 2U is displayed to the user momentarily to indicate completion of the task, and then the border is removed, thereby causing icon 20 to disappear from display 12."; Cleron '843 at Col. 16, ll. 50-55 ("When a process has been completed and a page of information is being displayed, the status and progress banner 750, the process display 752 and the stop button 754 are eliminated from the display because they no longer provide any useful information.") and it would be obvious to one of skill in the art to modify Judson '643 with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system).  Moreover, theses references are from the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions.

24

| Claim | U.S. Patent 6,339,780 | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Laaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| 34 | A hypermedia browser of claim 32, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language. | "The 'World Wide Web' (WWW) is that collection of servers of the Internet that utilize the Hypertext Transfer Protocol (HTTP). HTTP is a known application protocol that provides users access to files (which can be in different formats such as text, graphics, images, sound, video, etc.) using a standard page description language known as Hypertext Markup Language (HTML). HTML provides basic document formatting and allows the developer to specify "links" to other servers and files. Use of an HTML-compliant client browser involves specification of a link via the URL. Upon such specification, the client makes a tcp/ip request to the server identified in the link and receives a 'web page' (namely, a document formatted according to HTML) in return." Col. 3, l. 58-Col. 4, l. 4.<br><br>"RAM 34 also supports a number of Internet access tools including, for example, the HTTP-compliant web browser 62. Known browser software includes Netscape, Netscape Navigator 2.0, Mosaic, and the like. The present invention is designed to operate within any of these known or developing web browsers, which are preferably modified as described herein to achieve the dynamic display of information objects during web site linking activities." Col. 4, ll. 39-47.<br><br>"As noted above, a web browser 62 running on the client uses a TCP/IP connection to pass a request to a web server running a HTTP "service" (under the WINDOWS operating system) or "daemon" (under the UNIX operating system). The HTTP service then responds to the request, typically by sending a "web page" formatted in the Hypertext Markup Language, or HTML, to the browser.  The browser then displays the web page using local resources (e.g., fonts and colors)." Col. 5, ll. 41-49. |
| 35 | A hypermedia browser of claim 32, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, | "The 'World Wide Web' (WWW) is that collection of servers of the Internet that utilize the Hypertext Transfer Protocol (HTTP). HTTP is a known application protocol that provides users access to files (which can be in different formats such as text, graphics, images, sound, video, etc.) using a standard page description language known as Hypertext Markup Language (HTML). HTML provides basic document formatting and allows the developer to specify "links" to other servers and files. Use |

| Claim | U.S. Patent 6,339,780 | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | Flash. scripting language for the world wide web. | of an HTML-compliant client browser involves specification of a link via the URL. Upon such specification, the client makes a tcp/ip request to the server identified in the link and receives a 'web page' (namely, a document formatted according to HTML) in return." Col. 3, l. 58-Col. 4, l. 4. |
| | | "RAM 34 also supports a number of Internet access tools including, for example, the HTTP-compliant web browser 62. Known browser software includes Netscape, Netscape Navigator 2.0, Mosaic, and the like. The present invention is designed to operate within any of these known or developing web browsers, which are preferably modified as described herein to achieve the dynamic display of information objects during web site linking activities." Col. 4, ll. 39-47. |
| | | "As noted above, a web browser 62 running on the client uses a TCP/IP connection to pass a request to a HTTP "service" (under the WINDOWS operating system) or "daemon" (under the UNIX operating system). The HTTP service then responds to the request, typically by sending a "web page" formatted in the Hypertext Markup Language, or HTML, to the browser. The browser then displays the web page using local resources (e.g., fonts and colors)." Col. 5, ll. 41-49. |
| 36 | A computer-readable medium having computer-executable instructions that, when executed by a computer, perform a method of indicating a content "load status" of a hypermedia browser having a content viewing area for viewing content, the method comprising: | "A method of browsing the Worldwide Web of the Internet using an HTML-compliant client supporting a graphical user interface and a browser. The method begins as a web page is being displayed on the graphical user interface, the web page having at least one link to a hypertext document preferably located at a remote server." Abstract. |
| | | "According to the preferred embodiment, there is described a method of browsing the Worldwide Web of the Internet using an HTML-compliant client supporting a graphical user interface and a browser." Col. 2, ll. 29-32. |
| | | "Each of the clients may run a 'browser,' which is a known software tool used to access the servers via the access providers." Col. 3, ll. 51-53. |
| | | "While the client waits for a reply and/or as the hypertext document is being |

26

| Claim | U.S. Patent 6,339,780 | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | downloaded, the browser displays one or more different types of informational messages to the user." Abstract.<br><br>"While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Col. 2, ll. 39-42.<br><br>To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to use the temporary graphic element to convey status information of the browser. For example, Judson '643 states "As used herein, the "information object" or "information" output to the viewer during the link process should be broadly construed to cover any and all forms of messages, notices, text, graphics, sound, video, tables, diagrams, applets and other content, and combinations of any of the above." Col. 7, ll. 38-44). Moreover, Vaughton '744 indicates, e.g., that "[t]he window for Task B shows a sand glass in which the flow of the sand through the sand glass gives an indication of the progress of the downloading of the file in question." Vaughton '744 at Col. 3, ll. 37-40. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system). Moreover, theses references are from the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 36.1 | displaying loaded content within the content viewing area of a screen of a hypermedia browser, the screen is without a "load status" graphic element, wherein a "load status" graphic element indicates a current content load status of the hypermedia browser; | "The method begins as a web page is being displayed on the graphical user interface, the web page having at least one link to a hypertext document preferably located at a remote server." Col. 2, ll. 32-35.<br><br>"While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Abstract. |

27

| Claim | U.S. Patent 6,339,780 | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or PenPoint⁴ and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | "While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Col. 2, ll. 39-42.<br><br>To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser, "the screen being without a "load status" graphic element." Judson '643 discloses that "one of ordinary skill in the art would also recognize that [the invention] may be carried out in hardware, in firmware, or in more specialized apparatus constructed to perform the required method steps," e.g., to save space on a display with a limited display area. Based on this, one of skill in the art would have been motivated to implement a browser having a screen without a "load status" graphic element. Additionally, having a screen without a "load status" graphic element is an obvious design choice where display area is limited and would have been obvious to try. See claim 1 above. |
| 36.2 | receiving an instruction to load new content into the content viewing area; | "In response to the user clicking on the link, the link is activated by the browser to thereby request downloading of the hypertext document from the remote server to the graphical user interface of the client." Col. 2, ll. 35-39.<br><br>"In response to the user pointing and clicking on the link, the link is said to be 'activated' to begin the download of the linked document or text." Col. 4, ll. 62-64. |
| 36.3 | loading such new content into the content viewing area; and | "In response to the user clicking on the link, the link is activated by the browser to thereby request downloading of the hypertext document from the remote server to the graphical user interface of the client. While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Col. 2, ll. 35-42. |
| 36.4 | while loading, displaying a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content | "FIG. 8 is a representative screen display illustrating how the information object appears as a 'mini' web page upon activation of the hypertext link in the web page of FIG. 5." Col. 3, ll. 38-40.<br><br>"As used herein, the 'information object' or 'information' output to the viewer during |

28

538

| Claim | | |
|---|---|---|
| U.S. Patent 6,339,780 | viewing area; and | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |

the link process should be broadly construed to cover any and all forms of messages, notices, text, graphics, sound, video, tables, diagrams, applets and other content, and combinations of any of the above." Col. 7, ll. 39-44.

"Thus, an 'information object' according to the invention may include an applet which, for example, may generate an animated figure or icon, some aural output, a scrolling display, or a combination thereof." Col. 8, ll. 9-12.

To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to position the temporary graphic element over the content viewing area to obstruct only part of the content in the content viewing area. Judson '643 discloses that "the 'information object' or 'information' output to the viewer during the link process should be broadly construed to cover any and all forms of messages, notices, text, graphics, sound, video, tables, diagrams, applets and other content, and combinations of any of the above," e.g., a temporary graphic element positioned over the content viewing area to obstruct only part of the content in the content viewing area. Based on this, one of skill in the art would have been motivated to implement a browser wherein the temporary graphic element is positioned over the content viewing area to obstruct only part of the content in the content viewing area.

In addition, the combination of Judson '643 and/or Vaughton '744 and/or Alley '282 and/or Jaaskelainen '348 and/or PenPoint renders this claim obvious.  Vaughton '744 and/or Alley '282 and/or Jaaskelainen '348 and/or PenPoint teaches a temporary graphic element positioned over the content viewing area to obstruct only part of the content in the content viewing area (see analysis of Vaughton '744 and/or Alley '282 in claim chart; see also Jaaskelainen '348 at FIG. 1 and PenPoint at 64-65 (describing the placement of the animated busy clock)) and it would be obvious to one of skill in the art to modify Judson '643 with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system including a status indicator of the download progress), address the same problem (indicating the

29

539

| Claim | U.S. Patent 6,339,780 | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | downloading progress within the content viewing area), disclose the same or similar techniques for superimposing a download status indicator over the content, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 36.5 | wherein content comprises data for presentation which is from a source external to the browser. | "The method begins as a web page is being displayed on the graphical user interface, the web page having at least one link to a hypertext document preferably located at a remote server.  In response to the user clicking on the link, the link is activated by the browser to thereby request downloading of the hypertext document from the remote server to the graphical user interface of the client." Col. 2, ll. 32-39. |
| 37 | A hypermedia browser of claim 36, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language. | "The 'World Wide Web' (WWW) is that collection of servers of the Internet that utilize the Hypertext Transfer Protocol (HTTP).  HTTP is a known application protocol that provides users access to files (which can be in different formats such as text, graphics, images, sound, video, etc.) using a standard page description language known as Hypertext Markup Language (HTML).  HTML provides basic document formatting and allows the developer to specify "links" to other servers and files.  Use of an HTML-compliant client browser involves specification of a link via the URL.  Upon such specification, the client makes a tcp/ip request to the server identified in the link and receives a 'web page' (namely, a document formatted according to HTML) in return." Col. 3, l. 58-Col. 4, l. 4.  "RAM 34 also supports a number of Internet access tools including, for example, the HTTP-compliant web browser 62.  Known browser software includes Netscape, Netscape Navigator 2.0, Mosaic, and the like.  The present invention is designed to operate within any of these known or developing web browsers, which are preferably modified as described herein to achieve the dynamic display of information objects during web site linking activities." Col. 4, ll. 39-47. |

| Claim | U.S. Patent 6,339,780 | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | "As noted above, a web browser 62 running on the client uses a TCP/IP connection to pass a request to a web server running a HTTP "service" (under the WINDOWS operating system) or "daemon" (under the UNIX operating system). The HTTP service then responds to the request, typically by sending a "web page" formatted in the Hypertext Markup Language, or HTML, to the browser. The browser then displays the web page using local resources (e.g., fonts and colors)." Col. 5, ll. 41-49. |
| 38 | A hypermedia browser of claim 36, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash, scripting language for the world wide web. | "The 'World Wide Web' (WWW) is that collection of servers of the Internet that utilize the Hypertext Transfer Protocol (HTTP). HTTP is a known application protocol that provides users access to files (which can be in different formats such as text, graphics, images, sound, video, etc.) using a standard page description language known as Hypertext Markup Language (HTML). HTML provides basic document formatting and allows the developer to specify "links" to other servers and files. Use of an HTML-compliant client browser involves specification of a link via the URL. Upon such specification, the client makes a tcp/ip request to the server identified in the link and receives a 'web page' (namely, a document formatted according to HTML) in return." Col. 3, l. 58-Col. 4, l. 4.

"RAM 34 also supports a number of Internet access tools including, for example, the HTTP-compliant web browser 62. Known browser software includes Netscape, Netscape Navigator 2.0, Mosaic, and the like. The present invention is designed to operate within any of these known or developing web browsers, which are preferably modified as described herein to achieve the dynamic display of information objects during web site linking activities." Col. 4, ll. 39-47.

"As noted above, a web browser 62 running on the client uses a TCP/IP connection to pass a request to a web server running a HTTP "service" (under the WINDOWS operating system) or "daemon" (under the UNIX operating system). The HTTP service then responds to the request, typically by sending a "web page" formatted in the Hypertext Markup Language, or HTML, to the browser. The browser then displays the web page using local resources (e.g., fonts and colors)." Col. 5, ll. 41-49. |

31

| Claim | U.S. Patent 6,339,780 | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| 39 | A computer-readable medium as recited in claim 36 further having additional computer-executable instructions that perform a method comprising, upon completion of the loading, removing the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed. | "While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Abstract.<br><br>"While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Col. 2, ll. 39-42.<br><br>To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to upon completion of the loading, remove the "load status" graphic element. ~~Moreover, Vaughton '744 indicates, e.g., that "Task B destroys the window (4) for Task B, when the processing for Task B is complete." Vaughton '744 at Col. 4, ll. 1-2.~~<br><br>In addition, the combination of Judson '643 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious. Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 teaches a temporary graphic element that disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete (see analysis of Vaughton '744 in claim chart (e.g., that "Task B destroys the window (4) for Task B, when the processing for Task B is complete." Vaughton '744 at Col. 4, ll. 1-2.); see also Jaaskelainen at Col. 4, ll. 31-34 ("Icon 20 shown in FIG. 2U is displayed to the user momentarily to indicate completion of the task, and then the border is removed, thereby causing icon 20 to disappear from display 12."; Cleron '843 at Col. 16, ll. 50-55 ("When a process has been completed and a page of information is being displayed, the status and progress banner 750, the process display 752 and the stop button 754 are eliminated from the display because they no longer provide any useful information.") and it would be obvious to one of skill in the art to modify Judson '643 with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system). Moreover, theses references are from the same general time period. |

32

542

| Claim | U.S. Patent 6,339,780 | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |
| --- | --- | --- |
| | | Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 40 | An information processing device comprising: | "A method of browsing the Worldwide Web of the Internet using an HTML-compliant client supporting a graphical user interface and a browser." Abstract. |
| 40.1 | a processor; | "The microprocessor 32 is connected to the system bus 31 and is supported by read only memory (ROM) 33 and random access memory (RAM) 34 also connected to system bus 31." Col. 4, ll. 10-13. |
| 40.2 | a display; | "The keyboard controller 38 provides the hardware interface for the keyboard 22, the controller 39 provides the hardware interface for the mouse (or other point and click device) 23, the video controller 40 is the hardware interface for the display 24, and the audio controller 41 is the hardware interface for the multimedia speakers 25a and 25b." Col. 4, ll. 27-33. |
| 40.3 | a hypermedia browser executing on the processor to load and display content in a content viewing area on the display; wherein the hypermedia browser is configured to operate in a content-loading mode and a content-loaded mode; | "A method of browsing the Worldwide Web of the Internet using an HTML-compliant client supporting a graphical user interface and a browser. The method begins as a web page is being displayed on the graphical user interface, the web page having at least one link to a hypertext document preferably located at a remote server." Abstract.<br><br>"According to the preferred embodiment, there is described a method of browsing the Worldwide Web of the Internet using an HTML-compliant client supporting a graphical user interface and a browser." Col. 2, ll. 29-32.<br><br>"Each of the clients may run a 'browser,' which is a known software tool used to access the servers via the access providers." Col. 3, ll. 51-53.<br><br>"While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational |

33

543

| Claim | U.S. Patent 6,339,780 | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | messages to the user." Abstract. |
| | | "While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Col. 2, ll. 39-42. |
| 40.4 | in the content-loaded mode, the hypermedia browser displays loaded content in the content viewing area and no "load status" graphic element is displayed, wherein absence of such "load status" graphic element indicates that the browser is in the content-loaded mode; | "A method of browsing the Worldwide Web of the Internet using an HTML-compliant client supporting a graphical user interface and a browser.  The method begins as a web page is being displayed on the graphical user interface, the web page having at least one link to a hypertext document preferably located at a remote server." Abstract. |
| | | "According to the preferred embodiment, there is described a method of browsing the Worldwide Web of the Internet using an HTML-compliant client supporting a graphical user interface and a browser." Col. 2, ll. 29-32. |
| | | "Each of the clients may run a 'browser,' which is a known software tool used to access the servers via the access providers." Col. 3, ll. 51-53. |
| | | "While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Abstract. |
| | | "While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Col. 2, ll. 39-42. |
| | | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser, "the screen being without a "load status" graphic element." Judson '643 discloses that "one of ordinary skill in the art would also recognize that [the invention] may be carried out in hardware, in firmware, or in more specialized apparatus constructed to perform the required method steps," e.g., to save space on a display with a limited display area.  Based on this, one of skill in the |

34

| Claim | U.S. Patent 6,339,780 |
|---|---|
| | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or PenPoint⁴ and/or various systems implementing a web browser on a mobile device |
| | art would have been motivated to implement a browser having a screen without a "load status" graphic element. Additionally, having a screen without a "load status" graphic element is an obvious design choice where display area is limited and would have been obvious to try.  See claim 1 above.

In addition, the combination of Judson '643 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious.  Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 teaches a temporary graphic element that disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete (see analysis of Vaughton '744 in claim chart (e.g., that "Task B destroys the window (4) for Task B, when the processing for Task B is complete."  Vaughton '744 at Col. 4, ll. 1-2.); see also Jaaskelainen at Col. 4, ll. 31-34 ("Icon 20 shown in FIG. 2U is displayed to the user momentarily to indicate completion of the task, and then the border is removed, thereby causing icon 20 to disappear from display 12.": Cleron '843 at Col. 16, ll. 50-55 ("When a process has been completed and a page of information is being displayed, the status and progress banner 750, the process display 752 and the stop button 754 are eliminated from the display because they no longer provide any useful information.") and it would be obvious to one of skill in the art to modify Judson '643 with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system).  Moreover, theses references are from the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 40.5 | in the content-loading mode, the hypermedia browser loads content, displays such content in the content | "A method of browsing the Worldwide Web of the Internet using an HTML-compliant client supporting a graphical user interface and a browser.  The method begins as a web page is being displayed on the graphical user interface, the web page |

35

545

| Claim | | |
|---|---|---|
| U.S. Patent 6,339,780 | viewing area as it loads, and displays a "load status" graphic element over the content view area obstructing part of the content displayed in the content viewing area, wherein presence of such "load status" graphic element indicates that the browser is in the content-loading mode; and | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or PenPoint⁴ and/or various systems implementing a web browser on a mobile device |
| | | having at least one link to a hypertext document preferably located at a remote server." Abstract. |
| | | "According to the preferred embodiment, there is described a method of browsing the Worldwide Web of the Internet using an HTML-compliant client supporting a graphical user interface and a browser." Col. 2, ll. 29-32. |
| | | "Each of the clients may run a 'browser,' which is a known software tool used to access the servers via the access providers." Col. 3, ll. 51-53. |
| | | "While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Abstract. |
| | | "While the client waits for a reply and/or as the hypertext document is being downloaded, the browser displays one or more different types of informational messages to the user." Col. 2, ll. 39-42. |
| | | "FIG. 8 is a representative screen display illustrating how the information object appears as a 'mini' web page upon activation of the hypertext link in the web page of FIG. 5." Col. 3, ll. 38-40. |
| | | "As used herein, the 'information object' or 'information' output to the viewer during the link process should be broadly construed to cover any and all forms of messages, notices, text, graphics, sound, video, tables, diagrams, applets and other content, and combinations of any of the above." Col. 7, ll. 39-44. |
| | | "Thus, an 'information object' according to the invention may include an applet which, for example, may generate an animated figure or icon, some aural output, a scrolling display, or a combination thereof." Col. 8, ll. 9-12. |
| | | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to position the temporary graphic element over the content viewing area to obstruct only part of the content in the content viewing area. Judson '643 |

36

546

| Claim | U.S. Patent 6,339,780 | |
|---|---|---|
| | | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |
| | | discloses that "the 'information object' or 'information' output to the viewer during the link process should be broadly construed to cover any and all forms of messages, notices, text, graphics, sound, video, tables, diagrams, applets and other content, and combinations of any of the above," e.g., a temporary graphic element positioned over the content viewing area to obstruct only part of the content in the content viewing area. Based on this, one of skill in the art would have been motivated to implement a browser wherein the temporary graphic element is positioned over the content viewing area to obstruct only part of the content in the content viewing area.

In addition, the combination of Judson '643 and/or Vaughton '744 and/or Alley '282 and/or Jaaskelainen '348 and/or PenPoint renders this claim obvious.  Vaughton '744 and/or Alley '282 and/or Jaaskelainen '348 and/or PenPoint teaches a temporary graphic element positioned over the content viewing area to obstruct only part of the content in the content viewing area (see analysis of Vaughton '744 and/or Alley '282 in claim chart; see also Jaaskelainen '348 at FIG. 1 and PenPoint at 64-65 (describing the placement of the animated busy clock) and it would be obvious to one of skill in the art to modify Judson '643 with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system including a status indicator of the download progress), address the same problem (indicating the downloading progress within the content viewing area), disclose the same or similar techniques for superimposing a download status indicator over the content, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 40.6 | wherein content comprises data for presentation which is from a source external to the browser. | "The method begins as a web page is being displayed on the graphical user interface, the web page having at least one link to a hypertext document preferably located at a remote server.  In response to the user clicking on the link, the link is activated by the |

37

| Claim | U.S. Patent 6,339,780 | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | browser to thereby request downloading of the hypertext document from the remote server to the graphical user interface of the client." Col. 2, ll. 32-39. |
| 41 | A hypermedia browser of claim 40, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a markup language, and visible results of a scripting language. | "The 'World Wide Web' (WWW) is that collection of servers of the Internet that utilize the Hypertext Transfer Protocol (HTTP). HTTP is a known application protocol that provides users access to files (which can be in different formats such as text, graphics, images, sound, video, etc.) using a standard page description language known as Hypertext Markup Language (HTML). HTML provides basic document formatting and allows the developer to specify "links" to other servers and files. Use of an HTML-compliant client browser involves specification of a link via the URL. Upon such specification, the client makes a tcp/ip request to the server identified in the link and receives a 'web page' (namely, a document formatted according to HTML) in return." Col. 3, l. 58-Col. 4, l. 4.

"RAM 34 also supports a number of Internet access tools including, for example, the HTTP-compliant web browser 62. Known browser software includes Netscape, Netscape Navigator 2.0, Mosaic, and the like. The present invention is designed to operate within any of these known or developing web browsers, which are preferably modified as described herein to achieve the dynamic display of information objects during web site linking activities." Col. 4, ll. 39-47.

"As noted above, a web browser 62 running on the client uses a TCP/IP connection to pass a request to a web server running a HTTP "service" (under the WINDOWS operating system) or "daemon" (under the UNIX operating system). The HTTP service then responds to the request, typically by sending a "web page" formatted in the Hypertext Markup Language, or HTML, to the browser. The browser then displays the web page using local resources (e.g., fonts and colors)." Col. 5, ll. 41-49. |
| 42 | A hypermedia browser of claim 40, wherein content is data formatted for presentation which is selected from a | "The 'World Wide Web' (WWW) is that collection of servers of the Internet that utilize the Hypertext Transfer Protocol (HTTP). HTTP is a known application protocol that provides users access to files (which can be in different formats such as |

| Claim | U.S. Patent 6,339,780 | U.S. Patent 5,572,643 ("Judson '643") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,845,282 ("Alley '282") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or PenPoint[4] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web. | text, graphics, images, sound, video, etc.) using a standard page description language known as Hypertext Markup Language (HTML).  HTML provides basic document formatting and allows the developer to specify "links" to other servers and files.  Use of an HTML-compliant client browser involves specification of a link via the URL.  Upon such specification, the client makes a tcp/ip request to the server identified in the link and receives a 'web page' (namely, a document formatted according to HTML) in return." Col. 3, l. 58-Col. 4, l. 4.

"RAM 34 also supports a number of Internet access tools including, for example, the HTTP-compliant web browser 62.  Known browser software includes Netscape, Netscape Navigator 2.0, Mosaic, and the like.  The present invention is designed to operate within any of these known or developing web browsers, which are preferably modified as described herein to achieve the dynamic display of information objects during web site linking activities." Col. 4, ll. 39-47.

"As noted above, a web browser 62 running on the client uses a TCP/IP connection to pass a request to a web server running a HTTP "service" (under the WINDOWS operating system) or "daemon" (under the UNIX operating system).  The HTTP service then responds to the request, typically by sending a "web page" formatted in the Hypertext Markup Language, or HTML, to the browser.  The browser then displays the web page using local resources (e.g., fonts and colors)." Col. 5, ll. 41-49. |

# EXHIBIT C

Exemplar Chart of U.S. Patent 6,339,780

**U.S. Patent 6,023,698 ("Lavey '698")[1]**
**Claims 1-6, 9-14, 17, 18, 20, 21 and 32-42**

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| 1 | A hypermedia browser embodied on a computer-readable medium for execution on an information processing device having a limited display area, | "FIG. 2B shows a schematic block diagram of a client computer 30 running a client/server application according to the present invention connected to a server site 40 on the Internet 37.  Client computer 30 includes a processor 31 connected to each of a memory 32, a storage device and/or CD-ROM 33, an input device 34 and a display 35 in a well-known manner.  Memory 32 includes instructions and information for the client application." Col. 5, ll. 11-18.

"For the second type of online resource, the application launches a web browser as a foreground process for accessing a specific online server site.  When the web browser is launched, a uniform resource locator (URL) information and any other required connection parameters are passed for connecting with the online resource." Col. 5, ll. 62-65.

To the extent a hypermedia browser is found not to be expressly or inherently disclosed, it would have been obvious to one of skill in the art to adapt the "download |

NOTE:  Motorola applies the prior art in light of Microsoft's improper assertions of infringement and improper application of the claims.  Motorola does not agree with Microsoft's application of the claims, or that the claims satisfy 35 U.S.C. § 112.  Motorola's contentions herein are not, and should in no way be seen as, admissions or adoptions as to any particular claim scope or construction, or as any admission that any particular element is met in any particular way.  Motorola objects to any attempt to imply claim construction from the foregoing chart.  Motorola's prior art invalidity contentions are made in a variety of alternatives and do not represent Motorola's agreement or view as to the meaning, definiteness, written description support for, or enablement of any claim contained therein.

[1] "System and Method for Transparently Registering and Updating Information Over the Internet" issued to Lavey, Jr.; filed December 5, 1996; issued February 8, 2000.

[2] "Dynamic Progress Marking Icon" issued to Jaaskelainen; filed July 16, 1992; issued April 5, 1994.

[3] "Replaceable and Extensible Navigator Component of a Network Component System" issued to Cleron et al.; filed February 27, 1997; issued May 25, 1999.

551

| Claim | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device |
|---|---|
| U.S. Patent 6,339,780 | status bar" described in Lavey '698 to visual browsing. |
| | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser on an information processing device having a limited display area. |
| | In addition, the combination of Lavey '698 and one or more references describing handheld devices with browsers renders this claim obvious. Gessler[4], Cooper[5], Bartlett[6], Watson[7], Kamba[8], and Lauff[9] each teach a hypermedia browser embodied on a computer-readable medium for execution on an information processing device having a limited display area (e.g., a PDA, handheld, mobile device, etc.), and it would be obvious to one of skill in the art to modify Lavey '698 with these teachings.[10] One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system). Additionally, Bartlett cites Gessler and Cooper cites Gessler and Bartlett. Moreover, all of theses references are from the |

[4] S. Gessler and A. Kotulla. PDAs as Mobile WWW Browsers. Computer Networks and ISDN Systems 28 (1995) 53-59 ("Gessler") (see pgs. 53 and 56-58).

[5] I. Cooper and R. Shufflebotham. PDAWeb Browsers: Implementation Issues. (University of Kent at Canterbury, November 9, 1995) ("Cooper") (see pgs. 3 and 5).

[6] J. Bartlett. Experience with a Wireless World Wide Web Client. IEEE COMPCON 95 (San Francisco, March 1995) ("Bartlett") (see pgs. 1, 4 and 5).

[7] T. Watson. "Application Design for Wireless Computing" (1994 Mobile Computing Systems and Applications Workshop Position Paper (August 1994)).

[8] T. Kamba, S. A. Elson, T. Harpold, T. Stamper, and P. Sukaviriya. (1996). "Using small screen space more efficiently."

[9] M. Lauff and W. Gellerson. Multimedia Client Implementation on Personal Digital Assistants. TecO.

[10] Motorola continues to investigate other browsers that were in existence prior to the priority date of the '780 patent (e.g., NetHopper, Newt's Cape, PocketWeb and Vogon).

552

2

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 1.1 | wherein the hypermedia browser has a content viewing area for viewing content and is configured to display a temporary graphic element over the content viewing area during times when the browser is loading content, | "Preferably, the client computer graphically displays the status of the object requested while the object is being sent from the host computer to the client computer." Col. 2, ll. 62-64.<br><br>"FIG. 2C shows an exemplary graphical display of status of an object request." Col. 3, ll. 22-23.<br><br>"All other communications, such as data transfers, are reported to a user by a status bar and/or an animated icon appearing in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer.  FIG. 2C shows an exemplary graphical display 45 that is displayed on display 35 in FIG. 2B.  Graphical display 45 includes an exemplary status bar 46 and an exemplary animated icon 47 that communicate the status of a data transfer to a user." Col. 6, ll. 14-23. |

3

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348") and/or U.S. Patent 5,907,843 ("Cleron '843") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | 

FIG. 2C |
| 1.2 | wherein the temporary graphic element is positioned over the content viewing area to obstruct only part of the content in the content viewing area, | See FIG. 2C where exemplary status bar 46 only covers a portion of the "(client application)" on the "graphical display (i.e., PC desktop)." |
| 1.3 | wherein the temporary graphic element is not content and wherein content comprises data for presentation which is from a source external to the browser. | "Graphical display 45 includes an exemplary status bar 46 and an exemplary animated icon 47 that communicate the status of a data transfer to a user." Col. 6, ll. 20-23. |
| 2 | A hypermedia browser as recited in claim 1, wherein the browser is configured to display the temporary graphic element over the content viewing | "Preferably, the client computer graphically displays the status of the object requested while the object is being sent from the host computer to the client computer." Col. 2, ll. 62-64. |

4

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")² and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | area only during times when the browser is loading visible content. | "All other communications, such as data transfers, are reported to a user by a status bar and/or an animated icon appearing in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer. FIG. 2C shows an exemplary graphical display 45 that is displayed on display 35 in FIG. 2B. Graphical display 45 includes an exemplary status bar 46 and an exemplary animated icon 47 that communicate the status of a data transfer to a user." Col. 6, ll. 14-23. *See also* FIG. 2C. |
| 3 | A hypermedia browser as recited in claim 1, wherein the temporary graphic element indicates to a user that the browser is loading content. | "Preferably, the client computer graphically displays the status of the object requested while the object is being sent from the host computer to the client computer." Col. 2, ll. 62-64.<br><br>"All other communications, such as data transfers, are reported to a user by a status bar and/or an animated icon appearing in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer. FIG. 2C shows an exemplary graphical display 45 that is displayed on display 35 in FIG. 2B. Graphical display 45 includes an exemplary status bar 46 and an exemplary animated icon 47 that communicate the status of a data transfer to a user." Col. 6, ll. 14-23. *See also* FIG. 2C. |
| 4 | A hypermedia browser as recited in claim 1, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete. | "Preferably, the client computer graphically displays the status of the object requested while the object is being sent from the host computer to the client computer." Col. 2, ll. 62-64.<br><br>"All other communications, such as data transfers, are reported to a user by a status bar and/or an animated icon appearing in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer. FIG. 2C shows an exemplary graphical display 45 that is displayed on display 35 in FIG. 2B. Graphical display 45 includes an exemplary status bar 46 and an exemplary animated icon 47 that communicate the status of a data transfer to a user." Col. 6, ll. 14-23. *See also* FIG. 2C.<br><br>To the extent not expressly or inherently disclosed, it would have been obvious to one |

5

| Claim | | |
|---|---|---|
| U.S. Patent 6,339,780 | | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")², and/or various systems implementing a web browser on a mobile device |

of skill in the art to implement a browser wherein the progress indicator disappears when the downloading operation is complete to indicate to a user that such downloading of content is complete. Lavey '698 discloses that "a status bar and/or an animated icon appear[s] in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer." Based on this, one of skill in the art would have been motivated to implement a browser wherein the status bar and/or animated icon disappears when the downloading operation is complete to indicate to a user that such downloading of content is complete.

In addition, in the combination of Lavey '698 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious. Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 teaches a temporary graphic element that disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete (see analysis of Vaughton '744 in claim chart; see also Jaaskelainen at Col. 4, ll. 31-34 ("Icon 20 shown in FIG. 2U is displayed to the user momentarily to indicate completion of the task, and then the border is removed, thereby causing icon 20 to disappear from display 12."; Cleron '843 at Col. 16, ll. 50-55 ("When a process has been completed and a page of information is being displayed, the status and progress banner 750, the process display 752 and the stop button 754 are eliminated from the display because they no longer provide any useful information.")) and it would be obvious to one of skill in the art to modify Lavey '698 with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system including a status indicator of the download progress), address the same problem (indicating the downloading progress within the content viewing area), disclose the same or similar techniques for superimposing a download status indicator over the content, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references

6

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 5 | A hypermedia browser as recited in claim 1, wherein the temporary graphic element is animated. | "All other communications, such as data transfers, are reported to a user by a status bar and/or an animated icon appearing in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer.  FIG. 2C shows an exemplary graphical display 45 that is displayed on display 35 in FIG. 2B.  Graphical display 45 includes an exemplary status bar 46 and an exemplary animated icon 47 that communicate the status of a data transfer to a user." Col. 6, ll. 14-23.  *See also* FIG. 2C. |
| 6 | A hypermedia browser as recited in claim 1, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area. | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area.  Lavey '698 discloses that "a status bar and/or an animated icon appear[s] in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer."  Based on this, one of skill in the art would have been motivated to implement a browser wherein the status bar and/or animated icon is displayed in a corner of the content viewing area.  Additionally, displaying the status bar and/or animated icon in a corner of the content viewing area is an obvious design choice to minimize the amount of content obstructed and would have been obvious to try.

In addition, the combination of Lavey '698 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious.  ~~Moreover,~~ Vaughton '744 indicates, e.g., that "the window(s) of the second task may abut the edge of the window(s) of the first task--the windows may be "clipped together" at their edge." Vaughton '744 at Col. 2, l. 63 - Col. 3, l. 3.  Jaaskelainen '348 indicates, e.g., that "[i]n the preferred embodiment, icon 20 is displayed in the lower right hand corner or display 12 (FIG. 1), and remains in the same location for the duration of the task.  Of course, icon 20 could be displayed in a different location of display 12 or move from |

7

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348") and/or U.S. Patent 5,907,843 ("Cleron '843") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | location to location as the task progresses." Jaaskelainen '348 at Col. 4, ll. 7-13. Cleron '843 indicates, e.g., that progress banner 750 may appear in the lower right corner of the display. Cleron '843 at FIG. 8A. It would be obvious to one of skill in the art to modify Lavey '698 with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and disclose the same or similar techniques. Moreover, theses references are from the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 9 | A hypermedia browser as recited in claim 1, wherein the temporary graphic element conveys status information of the browser. | "Preferably, the client computer graphically displays the status of the object requested while the object is being sent from the host computer to the client computer." Col. 2, ll. 62-64.<br><br>"All other communications, such as data transfers, are reported to a user by a status bar and/or an animated icon appearing in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer. FIG. 2C shows an exemplary graphical display 45 that is displayed on display 35 in FIG. 2B. Graphical display 45 includes an exemplary status bar 46 and an exemplary animated icon 47 that communicate the status of a data transfer to a user." Col. 6, ll. 14-23. See also FIG. 2C. |
| 10 | A hypermedia browser of claim 1, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a markup language, scripting language. | "The transparent interface protocol of the present invention permits convenient interaction with an online server site, such as for receiving requested information, receiving any new information necessary for operation of the application, for logging any information transfer, and for closing the connection when desired." Col. 3, ll. 59-65.<br><br>"For the present invention, this layer of the model preferably conforms to the Hypertext Transfer Protocol (HTTP). The TRUE/IP protocol of the present invention |

8

558

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348") and/or U.S. Patent 5,907,843 ("Cleron '843") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | also supports any other IP-based protocol, such as File Transfer Protocol (FTP), Mail, Telnet, Gopher, Network News Transport Protocol (NNTP), Chat, Forums, etc." Col. 4, ll. 39-44. <br><br> "In FIG. 2A, a client/server application 20 accesses an online server site using TRUE/IP with or without a browser 20a, containing information, such as any of types 21, 24 or 25, over the Internet 22 through an Internet service provider (ISP) 23." Col. 4, ll. 61-66. <br><br> "Information types 21, 24 and 25 available on the online server each are accessible over the Internet and can include a host computer running a Hypertext Transfer Protocol (HTTP) server, such as an IBM™ Internet Connection Server." Col. 5, ll. 2-6. |
| 11 | A hypermedia browser of claim 1, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash, scripting language for the world wide web. | "The transparent interface protocol of the present invention permits convenient interaction with an online server site, such as for receiving requested information, receiving any new information necessary for operation of the application, for logging any information transfer, and for closing the connection when desired." Col. 3, ll. 59-65. <br><br> "For the present invention, this layer of the model preferably conforms to the Hypertext Transfer Protocol (HTTP). The TRUE/IP protocol of the present invention also supports any other IP-based protocol, such as File Transfer Protocol (FTP), Mail, Telnet, Gopher, Network News Transport Protocol (NNTP), Chat, Forums, etc." Col. 4, ll. 39-44. <br><br> "In FIG. 2A, a client/server application 20 accesses an online server site using TRUE/IP with or without a browser 20a, containing information, such as any of types 21, 24 or 25, over the Internet 22 through an Internet service provider (ISP) 23." Col. 4, ll. 61-66. <br><br> "Information types 21, 24 and 25 available on the online server each are accessible over the Internet and can include a host computer running a Hypertext Transfer Protocol (HTTP) server, such as an IBM™ Internet Connection Server." Col. 5, ll. 2-6. |

9

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") <u>and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")</u> <u>and/or U.S. Patent 5,907,843 ("Cleron '843")</u> and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | 6. |
| 12 | An information processing device comprising: | "A system and method for retrieving information from an online database." Abstract. |
| 12.1 | a processor; | "A client computer that communicates with the server computer includes a client memory and a client processor.  The client memory, which can include a storage device and/or CD-ROM, stores client application instructions that include a set of dynamic link libraries of code and information for each of a plurality of Internet service providers.  The client processor is connected to the client memory and is responsive to the client application instructions by establishing a connection with the server computer over the Internet through a selected Internet service provider and sending the token to the server computer." Col. 2, ll. 12–22.

"FIG. 2B shows a schematic block diagram of a client computer 30 running a client/server application according to the present invention connected to a server site 40 on the Internet 37.  Client computer 30 includes a processor 31 connected to each of a memory 32, a storage device and/or CD-ROM 33, an input device 34 and a display 35 in a well-known manner.  Memory 32 includes instructions and information for the client application." Col. 5, ll. 11–18. |
| 12.2 | a display; | "FIG. 2B shows a schematic block diagram of a client computer 30 running a client/server application according to the present invention connected to a server site 40 on the Internet 37.  Client computer 30 includes a processor 31 connected to each of a memory 32, a storage device and/or CD-ROM 33, an input device 34 and a display 35 in a well-known manner.  Memory 32 includes instructions and information for the client application." Col. 5, ll. 11–18.

"Display 35 provides a visual interface to client computer 30 in a well-known manner, such as by providing a graphical user interface (GUI) (FIG. 2C) in accordance with instructions and information stored in memory 32 and storage device and/or CD-ROM 33 for the client application." Col. 5, ll. 29–33. |
| 12.3 | a hypermedia browser executing on the | "Preferably, the client computer graphically displays the status of the object requested |

560

10

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | processor to load and display content in a content viewing area on the display; wherein the hypermedia browser has a content viewing area for viewing content and wherein the hypermedia browser displays a temporary graphic element over the content viewing area during times when the browser is loading visible content; | while the object is being sent from the host computer to the client computer." Col. 2, ll. 62-64. <br><br> "FIG. 2C shows an exemplary graphical display of status of an object request." Col. 3, ll. 22-23. <br><br> "For the second type of online resource, the application launches a web browser as a foreground process for accessing a specific online server site.  When the web browser is launched, a uniform resource locator (URL) information and any other required connection parameters are passed for connecting with the online resource." Col. 5, ll. 62-65. <br><br> "All other communications, such as data transfers, are reported to a user by a status bar and/or an animated icon appearing in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer.  FIG. 2C shows an exemplary graphical display 45 that is displayed on display 35 in FIG. 2B.  Graphical display 45 includes an exemplary status bar 46 and an exemplary animated icon 47 that communicate the status of a data transfer to a user." Col. 6, ll. 14-23. |

11

| Claim | U.S. Patent 6,339,780 |
|---|---|
| | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348") and/or U.S. Patent 5,907,843 ("Cleron '843") and/or various systems implementing a web browser on a mobile device |
| | GRAPHICAL DISPLAY (I.E. PC DESKTOP)<br><br>(CLIENT APPLICATION)<br><br>DOWNLOAD STATUS BAR<br><br>PERCENT COMPLETE<br>35%<br><br>0   50   100<br><br>45<br>46<br>47<br><br>**FIG. 2C**<br><br>To the extent a hypermedia browser is found not to be expressly or inherently disclosed, it would have been obvious to one of skill in the art to adapt the "download status bar" described in Lavey '698 to visual browsing. |
| 12.4 | wherein the temporary graphic element is positioned only over a portion of the content viewing area and obstructs only part of the visible content in the content viewing area; and | See FIG. 2C where exemplary status bar 46 only covers a portion of the "(client application)" on the "graphical display (i.e., PC desktop)." |
| 12.5 | wherein the temporary graphic element indicates to a user that the browser is loading content and content comprises | "Preferably, the client computer graphically displays the status of the object requested while the object is being sent from the host computer to the client computer." Col. 2, ll. 62-64. |

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348") and/or U.S. Patent 5,907,843 ("Cleron '843") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | data for presentation which is from a source external to the browser. | "All other communications, such as data transfers, are reported to a user by a status bar and/or an animated icon appearing in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer. FIG. 2C shows an exemplary graphical display 45 that is displayed on display 35 in FIG. 2B. Graphical display 45 includes an exemplary status bar 46 and an exemplary animated icon 47 that communicate the status of a data transfer to a user." Col. 6, ll. 14-23. *See also* FIG. 2C. |
| 13 | An information processing device as recited in claim 12, wherein the temporary graphic element is animated. | "All other communications, such as data transfers, are reported to a user by a status bar and/or an animated icon appearing in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer. FIG. 2C shows an exemplary graphical display 45 that is displayed on display 35 in FIG. 2B. Graphical display 45 includes an exemplary status bar 46 and an exemplary animated icon 47 that communicate the status of a data transfer to a user." Col. 6, ll. 14-23. *See also* FIG. 2C. |
| 14 | An information processing device as recited in claim 12, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area. | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area. Lavey '698 discloses that "a status bar and/or an animated icon appear[s] in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer." Based on this, one of skill in the art would have been motivated to implement a browser wherein the status bar and/or animated icon is displayed in a corner of the content viewing area. Additionally, displaying the status bar and/or animated icon in a corner of the content viewing area is an obvious design choice to minimize the amount of content obstructed and would have been obvious to try.

In addition, the combination of Lavey '698 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious. Vaughton '744 indicates, e.g., that "the window(s) of the second task may abut the edge of the window(s) of the first task--the windows may be "clipped together" at their edge." Vaughton '744 at Col. 2, |

13

563

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | l. 63 - Col. 3, l. 3.  Jaaskelainen '348 indicates, e.g., that "[i]n the preferred embodiment, icon 20 is displayed in the lower right hand corner or display 12 (FIG. 1), and remains in the same location for the duration of the task.  Of course, icon 20 could be displayed in a different location of display 12 or move from location to location as the task progresses."  Jaaskelainen '348 at Col. 4, ll. 7-13.  Cleron '843 indicates, e.g., that progress banner 750 may appear in the lower right corner of the display.  Cleron '843 at FIG. 8A.  It would be obvious to one of skill in the art to modify Lavey '698 with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and disclose the same or similar techniques.  Moreover, theses references are from the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. ~~Moreover, Vaughton '744 indicates, e.g., that "the window(s) of the second task may about the edge of the window(s) of the first task—the windows may be "clipped together" at their edge." Vaughton '744 at Col. 2, l. 63 - Col. 3, l. 3. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system). Moreover, theses references are from the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions.~~ |
| 17 | A hypermedia browser of claim 12, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a | "The transparent interface protocol of the present invention permits convenient interaction with an online server site, such as for receiving requested information, receiving any new information necessary for operation of the application, for logging any information transfer, and for closing the connection when desired." Col. 3, ll. 59-65. |

14

| Claim | U.S. Patent 6,339,780 |
|---|---|
| | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348") and/or U.S. Patent 5,907,843 ("Cleron '843") and/or various systems implementing a web browser on a mobile device |
| scripting language. | "For the present invention, this layer of the model preferably conforms to the Hypertext Transfer Protocol (HTTP).  The TRUE/IP protocol of the present invention also supports any other IP-based protocol, such as File Transfer Protocol (FTP), Mail, Telnet, Gopher, Network News Transport Protocol (NNTP), Chat, Forums, etc." Col. 4, ll. 39-44. |
| | "In FIG. 2A, a client/server application 20 accesses an online server site using TRUE/IP with or without a browser 20a, containing information, such as any of types 21, 24 or 25, over the Internet 22 through an Internet service provider (ISP) 23." Col. 4, ll. 61-66. |
| | "Information types 21, 24 and 25 available on the online server each are accessible over the Internet and can include a host computer running a Hypertext Transfer Protocol (HTTP) server, such as an IBM™ Internet Connection Server." Col. 5, ll. 2-6. |
| 18 | "The transparent interface protocol of the present invention permits convenient interaction with an online server site, such as for receiving requested information, receiving any new information necessary for operation of the application, for logging any information transfer, and for closing the connection when desired." Col. 3, ll. 59-65. |
| A hypermedia browser of claim 12, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web. | "For the present invention, this layer of the model preferably conforms to the Hypertext Transfer Protocol (HTTP).  The TRUE/IP protocol of the present invention also supports any other IP-based protocol, such as File Transfer Protocol (FTP), Mail, Telnet, Gopher, Network News Transport Protocol (NNTP), Chat, Forums, etc." Col. 4, ll. 39-44. |
| | "In FIG. 2A, a client/server application 20 accesses an online server site using TRUE/IP with or without a browser 20a, containing information, such as any of types 21, 24 or 25, over the Internet 22 through an Internet service provider (ISP) 23." Col. 4, ll. 61-66. |
| | "Information types 21, 24 and 25 available on the online server each are accessible |

15

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348") and/or U.S. Patent 5,907,843 ("Cleron '843") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | over the Internet and can include a host computer running a Hypertext Transfer Protocol (HTTP) server, such as an IBM™ Internet Connection Server." Col. 5, ll. 2-6. |
| 20 | An information processing device as recited in claim 12, wherein the temporary graphic element is not content. | "Preferably, the client computer graphically displays the status of the object requested while the object is being sent from the host computer to the client computer." Col. 2, ll. 62-64.<br><br>"All other communications, such as data transfers, are reported to a user by a status bar and/or an animated icon appearing in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer. FIG. 2C shows an exemplary graphical display 45 that is displayed on display 35 in FIG. 2B. Graphical display 45 includes an exemplary status bar 46 and an exemplary animated icon 47 that communicate the status of a data transfer to a user." Col. 6, ll. 14-23. *See also* FIG. 2C. |
| 21 | An information processing device as recited in claim 12, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete. | "Preferably, the client computer graphically displays the status of the object requested while the object is being sent from the host computer to the client computer." Col. 2, ll. 62-64.<br><br>"All other communications, such as data transfers, are reported to a user by a status bar and/or an animated icon appearing in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer. FIG. 2C shows an exemplary graphical display 45 that is displayed on display 35 in FIG. 2B. Graphical display 45 includes an exemplary status bar 46 and an exemplary animated icon 47 that communicate the status of a data transfer to a user." Col. 6, ll. 14-23. *See also* FIG. 2C.<br><br>To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein the progress indicator disappears when the downloading operation is complete to indicate to a user that such downloading of content is complete. Lavey '698 discloses that "a status bar and/or an animated icon appear[s] in the client applications interface so the user can visually |

16

566

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")² and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | verify that a transfer is occurring, and the approximate percentage of completion of the transfer." Based on this, one of skill in the art would have been motivated to implement a browser wherein the status bar and/or animated icon disappears when the downloading operation is complete to indicate to a user that such downloading of content is complete. |
| | | In addition, the combination of Lavey '698 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious. Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 teaches a temporary graphic element that disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete (see analysis of Vaughton '744 in claim chart; see also Jaaskelainen at Col. 4, ll. 31-34 ("Icon 20 shown in FIG. 2U is displayed to the user momentarily to indicate completion of the task, and then the border is removed, thereby causing icon 20 to disappear from display 12."; Cleron '843 at Col. 16, ll. 50-55 ("When a process has been completed and a page of information is being displayed, the status and progress banner 750, the process display 752 and the stop button 754 are eliminated from the display because they no longer provide any useful information.") and it would be obvious to one of skill in the art to modify Lavey '698 with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system including a status indicator of the download progress), address the same problem (indicating the downloading progress within the content viewing area), disclose the same or similar techniques for superimposing a download status indicator over the content, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 32 | A method of indicating a content "load status" of a hypermedia browser having a | "Preferably, the client computer graphically displays the status of the object requested while the object is being sent from the host computer to the client computer." Col. 2, |

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | content viewing area for viewing content, the method comprising: | ll. 62-64.<br><br>"FIG. 2C shows an exemplary graphical display of status of an object request." Col. 3, ll. 22-23.<br><br>"For the second type of online resource, the application launches a web browser as a foreground process for accessing a specific online server site.  When the web browser is launched, a uniform resource locator (URL) information and any other required connection parameters are passed for connecting with the online resource." Col. 5, ll. 62-65.<br><br>"All other communications, such as data transfers, are reported to a user by a status bar and/or an animated icon appearing in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer.  FIG. 2C shows an exemplary graphical display 45 that is displayed on display 35 in FIG. 2B.  Graphical display 45 includes an exemplary status bar 46 and an exemplary animated icon 47 that communicate the status of a data transfer to a user." Col. 6, ll. 14-23. |

18

568

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348") and/or U.S. Patent 5,907,843 ("Cleron '843") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| 32.1 | displaying loaded content within the content viewing area of a screen of a hypermedia browser, the screen being without a "load status" graphic element, wherein a "load status" graphic element indicates a current content load status of the hypermedia browser; | <br>FIG. 2C<br><br>To the extent a hypermedia browser is found not to be expressly or inherently disclosed, it would have been obvious to one of skill in the art to adapt the "download status bar" described in Lavey '698 to visual browsing.<br><br>"Preferably, the client computer graphically displays the status of the object requested while the object is being sent from the host computer to the client computer." Col. 2, ll. 62-64.<br><br>"FIG. 2C shows an exemplary graphical display of status of an object request." Col. 3, ll. 22-23.<br><br>"For the second type of online resource, the application launches a web browser as a foreground process for accessing a specific online server site. When the web browser is launched, a uniform resource locator (URL) information and any other required |

569

| Claim | U.S. Patent 6,339,780 |
|-------|----------------------|
| | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348") and/or U.S. Patent 5,907,843 ("Cleron '843") and/or various systems implementing a web browser on a mobile device |
| | connection parameters are passed for connecting with the online resource." Col. 5, ll. 62-65.

"All other communications, such as data transfers, are reported to a user by a status bar and/or an animated icon appearing in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer. FIG. 2C shows an exemplary graphical display 45 that is displayed on display 35 in FIG. 2B. Graphical display 45 includes an exemplary status bar 46 and an exemplary animated icon 47 that communicate the status of a data transfer to a user." Col. 6, ll. 14-23.



FIG. 2C |
| 32.2 | receiving an instruction to load new content into the content viewing area; |
| | "Input device 34, such as a keyboard and/or a mouse, accepts user inputs that are processed by processor 31 in accordance with the instructions and information for the client application stored in memory 32 and storage device and/or CD-ROM 33." |

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[2] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | Col. 5, ll. 25-29. |
| | | "Processor 41 uses the instructions and information stored in memory 42 to operate on received tokens in accordance with the appropriate token handler.  For example, when an object request token is received and validated by the appropriate token handlers, processor 41 accesses database 43 in a well-known manner for retrieving the requested objected." Col. 5, ll. 45-51. |
| 32.3 | loading such new content into the content viewing area; and | "All other communications, such as data transfers, are reported to a user by a status bar and/or an animated icon appearing in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer.  FIG. 2C shows an exemplary graphical display 45 that is displayed on display 35 in FIG. 2B.  Graphical display 45 includes an exemplary status bar 46 and an exemplary animated icon 47 that communicate the status of a data transfer to a user." Col. 6, ll. 14-23. |
| 32.4 | while loading, displaying a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area; and | "Preferably, the client computer graphically displays the status of the object requested while the object is being sent from the host computer to the client computer." Col. 2, ll. 62-64. |
| | | "FIG. 2C shows an exemplary graphical display of status of an object request." Col. 3, ll. 22-23. |
| | | "For the second type of online resource, the application launches a web browser as a foreground process for accessing a specific online server site.  When the web browser is launched, a uniform resource locator (URL) information and any other required connection parameters are passed for connecting with the online resource." Col. 5, ll. 62-65. |
| | | "All other communications, such as data transfers, are reported to a user by a status bar and/or an animated icon appearing in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer.  FIG. 2C shows an exemplary graphical display 45 that is displayed on display 35 in FIG. 2B.  Graphical display 45 includes an exemplary |

21

| Claim | U.S. Patent 6,339,780 |
|---|---|
| | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device<br><br>status bar 46 and an exemplary animated icon 47 that communicate the status of a data transfer to a user." Col. 6, ll. 14-23.<br><br><br><br>FIG. 2C |
| 32.5 | wherein content comprises data for presentation which is from a source external to the browser. | "Preferably, the client computer graphically displays the status of the object requested while the object is being sent from the host computer to the client computer." Col. 2, ll. 62-64. |
| 33 | A method as recited in claim 32 further comprising, upon completion of the loading, removing the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed. | "Preferably, the client computer graphically displays the status of the object requested while the object is being sent from the host computer to the client computer." Col. 2, ll. 62-64.<br><br>"All other communications, such as data transfers, are reported to a user by a status bar and/or an animated icon appearing in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of |

22

| Claim | |
|---|---|
| U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[ ] and/or various systems implementing a web browser on a mobile device |

completion of the transfer.  FIG. 2C shows an exemplary graphical display 45 that is displayed on display 35 in FIG. 2B.  Graphical display 45 includes an exemplary status bar 46 and an exemplary animated icon 47 that communicate the status of a data transfer to a user." Col. 6, ll. 14-23. *See also* FIG. 2C.

To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein the progress indicator disappears when the downloading operation is complete.  Lavey '698 discloses that "a status bar and/or an animated icon appear[s] in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer."  Based on this, one of skill in the art would have been motivated to implement a browser wherein the status bar and/or animated icon disappears when the downloading operation is complete to indicate to a user that such downloading of content is complete.

In addition, the combination of Lavey '698 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious. Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 teaches a temporary graphic element that disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete (see analysis of Vaughton '744 in claim chart; see also Jaaskelainen at Col. 4, ll. 31-34 ("Icon 20 shown in FIG. 2U is displayed to the user momentarily to indicate completion of the task, and then the border is removed, thereby causing icon 20 to disappear from display 12."; Cleron '843 at Col. 16, ll. 50-55 ("When a process has been completed and a page of information is being displayed, the status and progress banner 750, the process display 752 and the stop button 754 are eliminated from the display because they no longer provide any useful information.") and it would be obvious to one of skill in the art to modify Lavey '698 with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system including a status indicator of the

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")² and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | download progress), address the same problem (indicating the downloading progress within the content viewing area), disclose the same or similar techniques for superimposing a download status indicator over the content, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 34 | A hypermedia browser of claim 32, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language. | "The transparent interface protocol of the present invention permits convenient interaction with an online server site, such as for receiving requested information, receiving any new information necessary for operation of the application, for logging any information transfer, and for closing the connection when desired." Col. 3, ll. 59-65.<br><br>"For the present invention, this layer of the model preferably conforms to the Hypertext Transfer Protocol (HTTP).  The TRUE/IP protocol of the present invention also supports any other IP-based protocol, such as File Transfer Protocol (FTP), Mail, Telnet, Gopher, Network News Transport Protocol (NNTP), Chat, Forums, etc." Col. 4, ll. 39-44.<br><br>"In FIG. 2A, a client/server application 20 accesses an online server site using TRUE/IP with or without a browser 20a, containing information, such as any of types 21, 24 or 25, over the Internet 22 through an Internet service provider (ISP) 23." Col. 4, ll. 61-66.<br><br>"Information types 21, 24 and 25 available on the online server each are accessible over the Internet and can include a host computer running a Hypertext Transfer Protocol (HTTP) server, such as an IBM™ Internet Connection Server." Col. 5, ll. 2-6. |
| 35 | A hypermedia browser of claim 32, wherein content is data formatted for presentation which is selected from a | "The transparent interface protocol of the present invention permits convenient interaction with an online server site, such as for receiving requested information, receiving any new information necessary for operation of the application, for logging |

24

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash, scripting language for the world wide web. | any information transfer, and for closing the connection when desired." Col. 3, ll. 59-65.<br><br>"For the present invention, this layer of the model preferably conforms to the Hypertext Transfer Protocol (HTTP). The TRUE/IP protocol of the present invention also supports any other IP-based protocol, such as File Transfer Protocol (FTP), Mail, Telnet, Gopher, Network News Transport Protocol (NNTP), Chat, Forums, etc." Col. 4, ll. 39-44.<br><br>"In FIG. 2A, a client/server application 20 accesses an online server site using TRUE/IP with or without a browser 20a, containing information, such as any of types 21, 24 or 25, over the Internet 22 through an Internet service provider (ISP) 23." Col. 4, ll. 61-66.<br><br>"Information types 21, 24 and 25 available on the online server each are accessible over the Internet and can include a host computer running a Hypertext Transfer Protocol (HTTP) server, such as an IBM™ Internet Connection Server." Col. 5, ll. 2-6. |
| 36 | A computer-readable medium having computer-executable instructions that, when executed by a computer, perform a method of indicating a content "load status" of a hypermedia browser having a content viewing area for viewing content, the method comprising: | "A client computer includes a client memory that stores client application instructions and a client processor connected to the client processor. The client application instructions include a set of dynamic link libraries of code and information for each of a plurality of Internet service providers. The client processor is responsive to the client application instructions by establishing a connection with the server computer over the Internet through a selected Internet service provider and by sending tokens to the server computer." Abstract.<br><br>"A client computer that communicates with the server computer includes a client memory and a client processor. The client memory, which can include a storage device and/or CD-ROM, stores client application instructions that include a set of dynamic link libraries of code and information for each of a plurality of Internet service providers. The client processor is connected to the client memory and is responsive to the client application instructions by establishing a connection with the |

25

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348") and/or U.S. Patent 5,907,843 ("Cleron '843") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | server computer over the Internet through a selected Internet service provider and sending the token to the server computer." Col. 2, ll. 12-22. |
| | | "Preferably, the client computer graphically displays the status of the object requested while the object is being sent from the host computer to the client computer." Col. 2, ll. 62-64. |
| | | "FIG. 2B shows a schematic block diagram of a client computer 30 running a client/server application according to the present invention connected to a server site 40 on the Internet 37. Client computer 30 includes a processor 31 connected to each of a memory 32, a storage device and/or CD-ROM 33, an input device 34 and a display 35 in a well-known manner. Memory 32 includes instructions and information for the client application." Col. 5, ll. 11-18. |
| | | "For the second type of online resource, the application launches a web browser as a foreground process for accessing a specific online server site. When the web browser is launched, a uniform resource locator (URL) information and any other required connection parameters are passed for connecting with the online resource." Col. 5, ll. 62-65. |
| | | To the extent a hypermedia browser is found not to be expressly or inherently disclosed, it would have been obvious to one of skill in the art to adapt the "download status bar" described in Lavey '698 to visual browsing. |
| 36.1 | displaying loaded content within the content viewing area of a screen of a hypermedia browser, the screen is without a "load status" graphic element, wherein a "load status" graphic element indicates a current content load status of the hypermedia browser; | "Preferably, the client computer graphically displays the status of the object requested while the object is being sent from the host computer to the client computer." Col. 2, ll. 62-64. |
| | | "FIG. 2C shows an exemplary graphical display of status of an object request." Col. 3, ll. 22-23. |
| | | "For the second type of online resource, the application launches a web browser as a foreground process for accessing a specific online server site. When the web browser is launched, a uniform resource locator (URL) information and any other required |

26

| Claim | U.S. Patent 6,339,780 |
|---|---|
| | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")²) and/or various systems implementing a web browser on a mobile device |
| | connection parameters are passed for connecting with the online resource." Col. 5, ll. 62-65.

"All other communications, such as data transfers, are reported to a user by a status bar and/or an animated icon appearing in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer. FIG. 2C shows an exemplary graphical display 45 that is displayed on display 35 in FIG. 2B.  Graphical display 45 includes an exemplary status bar 46 and an exemplary animated icon 47 that communicate the status of a data transfer to a user." Col. 6, ll. 14-23.



FIG. 2C |
| 36.2 | receiving an instruction to load new content into the content viewing area; | "Input device 34, such as a keyboard and/or a mouse, accepts user inputs that are processed by processor 31 in accordance with the instructions and information for the client application stored in memory 32 and storage device and/or CD-ROM 33." |

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")² and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | Col. 5, ll. 25-29. |
| | | "Processor 41 uses the instructions and information stored in memory 42 to operate on received tokens in accordance with the appropriate token handler. For example, when an object request token is received and validated by the appropriate token handlers, processor 41 accesses database 43 in a well-known manner for retrieving the requested objected." Col. 5, ll. 45-51. |
| 36.3 | loading such new content into the content viewing area; and | "All other communications, such as data transfers, are reported to a user by a status bar and/or an animated icon appearing in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer. FIG. 2C shows an exemplary graphical display 45 that is displayed on display 35 in FIG. 2B. Graphical display 45 includes an exemplary status bar 46 and an exemplary animated icon 47 that communicate the status of a data transfer to a user." Col. 6, ll. 14-23. |
| 36.4 | while loading, displaying a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area; and | "Preferably, the client computer graphically displays the status of the object requested while the object is being sent from the host computer to the client computer." Col. 2, ll. 62-64. |
| | | "FIG. 2C shows an exemplary graphical display of status of an object request." Col. 3, ll. 22-23. |
| | | "For the second type of online resource, the application launches a web browser as a foreground process for accessing a specific online server site. When the web browser is launched, a uniform resource locator (URL) information and any other required connection parameters are passed for connecting with the online resource." Col. 5, ll. 62-65. |
| | | "All other communications, such as data transfers, are reported to a user by a status bar and/or an animated icon appearing in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer. FIG. 2C shows an exemplary graphical display 45 that is displayed on display 35 in FIG. 2B. Graphical display 45 includes an exemplary |

28

| Claim | U.S. Patent 6,339,780 | |
|---|---|---|
| | | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
| | | status bar 46 and an exemplary animated icon 47 that communicate the status of a data transfer to a user." Col. 6, ll. 14-23. |
| | |  FIG. 2C |
| 36.5 | wherein content comprises data for presentation which is from a source external to the browser. | "Preferably, the client computer graphically displays the status of the object requested while the object is being sent from the host computer to the client computer." Col. 2, ll. 62-64. |
| 37 | A hypermedia browser of claim 36, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a | "The transparent interface protocol of the present invention permits convenient interaction with an online server site, such as for receiving requested information, receiving any new information necessary for operation of the application, for logging any information transfer, and for closing the connection when desired." Col. 3, ll. 59-65. 

"For the present invention, this layer of the model preferably conforms to the |

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")², and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | scripting language. | Hypertext Transfer Protocol (HTTP).  The TRUE/IP protocol of the present invention also supports any other IP-based protocol, such as File Transfer Protocol (FTP), Mail, Telnet, Gopher, Network News Transport Protocol (NNTP), Chat, Forums, etc." Col. 4, ll. 39-44. |
| | | "In FIG. 2A, a client/server application 20 accesses an online server site using TRUE/IP with or without a browser 20a, containing information, such as any of types 21, 24 or 25, over the Internet 22 through an Internet service provider (ISP) 23." Col. 4, ll. 61-66. |
| | | "Information types 21, 24 and 25 available on the online server each are accessible over the Internet and can include a host computer running a Hypertext Transfer Protocol (HTTP) server, such as an IBM™ Internet Connection Server." Col. 5, ll. 2-6. |
| 38 | A hypermedia browser of claim 36, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web. | "The transparent interface protocol of the present invention permits convenient interaction with an online server site, such as for receiving requested information, receiving any new information necessary for operation of the application, for logging any information transfer, and for closing the connection when desired." Col. 3, ll. 59-65. |
| | | "For the present invention, this layer of the model preferably conforms to the Hypertext Transfer Protocol (HTTP).  The TRUE/IP protocol of the present invention also supports any other IP-based protocol, such as File Transfer Protocol (FTP), Mail, Telnet, Gopher, Network News Transport Protocol (NNTP), Chat, Forums, etc." Col. 4, ll. 39-44. |
| | | "In FIG. 2A, a client/server application 20 accesses an online server site using TRUE/IP with or without a browser 20a, containing information, such as any of types 21, 24 or 25, over the Internet 22 through an Internet service provider (ISP) 23." Col. 4, ll. 61-66. |
| | | "Information types 21, 24 and 25 available on the online server each are accessible over the Internet and can include a host computer running a Hypertext Transfer |

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348") and/or U.S. Patent 5,907,843 ("Cleron '843") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | Protocol (HTTP) server, such as an IBM™ Internet Connection Server." Col. 5, ll. 2-6. |
| 39 | A computer-readable medium as recited in claim 36 further having additional computer-executable instructions that perform a method comprising: upon completion of the loading, removing the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed. | "Preferably, the client computer graphically displays the status of the object requested while the object is being sent from the host computer to the client computer." Col. 2, ll. 62-64. "All other communications, such as data transfers, are reported to a user by a status bar and/or an animated icon appearing in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer. FIG. 2C shows an exemplary graphical display 45 that is displayed on display 35 in FIG. 2B. Graphical display 45 includes an exemplary status bar 46 and an exemplary animated icon 47 that communicate the status of a data transfer to a user." Col. 6, ll. 14-23. *See also* FIG. 2C. To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein the progress indicator disappears when the downloading operation is complete to indicate to a user that such downloading of content is complete. Lavey '698 discloses that "a status bar and/or an animated icon appear[s] in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer." Based on this, one of skill in the art would have been motivated to implement a browser wherein the status bar and/or animated icon disappears when the downloading operation is complete to indicate to a user that such downloading of content is complete. In addition, the combination of Lavey '698 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious.  Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 teaches a temporary graphic element that disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete (see analysis of Vaughton '744 in claim chart; *see also* Jaaskelainen at Col. 4, ll. 31-34 ("Icon 20 shown in FIG. 2U is displayed to the |

| Claim | U.S. Patent 6,339,780 | |
|---|---|---|
| | | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")² and/or various systems implementing a web browser on a mobile device |
| | | user momentarily to indicate completion of the task, and then the border is removed, thereby causing icon 20 to disappear from display 12."; Cleron '843 at Col. 16, ll. 50-55 ("When a process has been completed and a page of information is being displayed, the status and progress banner 750, the process display 752 and the stop button 754 are eliminated from the display because they no longer provide any useful information.") and it would be obvious to one of skill in the art to modify Lavey '698 with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system including a status indicator of the download progress), address the same problem (indicating the downloading progress within the content viewing area), disclose the same or similar techniques for superimposing a download status indicator over the content, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 40 | An information processing device comprising: | "A system and method for retrieving information from an online database." Abstract. |
| 40.1 | a processor; | "A client computer that communicates with the server computer includes a client memory and a client processor. The client memory, which can include a storage device and/or CD-ROM, stores client application instructions that include a set of dynamic link libraries of code and information for each of a plurality of Internet service providers. The client processor is connected to the client memory and is responsive to the client application instructions by establishing a connection with the server computer over the Internet through a selected Internet service provider and sending the token to the server computer." Col. 2, ll. 12-22.

"FIG. 2B shows a schematic block diagram of a client computer 30 running a client/server application according to the present invention connected to a server site 40 on the Internet 37. Client computer 30 includes a processor 31 connected to each |

32

582

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | of a memory 32, a storage device and/or CD-ROM 33, an input device 34 and a display 35 in a well-known manner.  Memory 32 includes instructions and information for the client application." Col. 5, ll. 11-18. |
| 40.2 | a display; | "FIG. 2B shows a schematic block diagram of a client computer 30 running a client/server application according to the present invention connected to a server site 40 on the Internet 37.  Client computer 30 includes a processor 31 connected to each of a memory 32, a storage device and/or CD-ROM 33, an input device 34 and a display 35 in a well-known manner.  Memory 32 includes instructions and information for the client application." Col. 5, ll. 11-18. |
| | | "Display 35 provides a visual interface to client computer 30 in a well-known manner, such as by providing a graphical user interface (GUI) (FIG. 2C) in accordance with instructions and information stored in memory 32 and storage device and/or CD-ROM 33 for the client application." Col. 5, ll. 29-33. |
| 40.3 | a hypermedia browser executing on the processor to load and display content in a content viewing area on the display; wherein the hypermedia browser is configured to operate in a content-loading mode and a content-loaded mode; | "Preferably, the client computer graphically displays the status of the object requested while the object is being sent from the host computer to the client computer." Col. 2, ll. 62-64. |
| | | "FIG. 2C shows an exemplary graphical display of status of an object request." Col. 3, ll. 22-23. |
| | | "For the second type of online resource, the application launches a web browser as a foreground process for accessing a specific online server site.  When the web browser is launched, a uniform resource locator (URL) information and any other required connection parameters are passed for connecting with the online resource." Col. 5, ll. 62-65. |
| | | "All other communications, such as data transfers, are reported to a user by a status bar and/or an animated icon appearing in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer.  FIG. 2C shows an exemplary graphical display 45 that is displayed on display 35 in FIG. 2B.  Graphical display 45 includes an exemplary |

33

583

| Claim | U.S. Patent 6,339,780 |
|---|---|
|  | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device |
|  | status bar 46 and an exemplary animated icon 47 that communicate the status of a data transfer to a user." Col. 6, ll. 14-23.<br><br>GRAPHICAL DISPLAY (I.E. PC DESKTOP)<br><br>45<br><br>(CLIENT APPLICATION)<br><br>DOWNLOAD STATUS BAR  PERCENT COMPLETE<br><br>0  50  100  35%<br><br>47  46<br><br>FIG. 2C<br><br>To the extent a hypermedia browser is found not to be expressly or inherently disclosed, it would have been obvious to one of skill in the art to adapt the "download status bar" described in Lavey '698 to visual browsing.<br><br>"Preferably, the client computer graphically displays the status of the object requested while the object is being sent from the host computer to the client computer." Col. 2, ll. 62-64.<br><br>"All other communications, such as data transfers, are reported to a user by a status bar and/or an animated icon appearing in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of |
| 40.4 | in the content-loaded mode, the hypermedia browser displays loaded content in the content viewing area and no "load status" graphic element is displayed, wherein absence of such "load status" graphic element indicates that the browser is in the content-loaded mode; |  |

| Claim | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device |
|---|---|
| U.S. Patent 6,339,780 | completion of the transfer.  FIG. 2C shows an exemplary graphical display 45 that is displayed on display 35 in FIG. 2B.  Graphical display 45 includes an exemplary status bar 46 and an exemplary animated icon 47 that communicate the status of a data transfer to a user." Col. 6, ll. 14-23.  *See also* FIG. 2C. |
| | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein the progress indicator disappears when the downloading operation is complete.  Lavey '698 discloses that "a status bar and/or an animated icon appear[s] in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer."  Based on this, one of skill in the art would have been motivated to implement a browser wherein the status bar and/or animated icon disappears when the downloading operation is complete to indicate to a user that such downloading of content is complete. |
| | In addition, the combination of Lavey '698 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious.  Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 teaches a temporary graphic element that disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete (see analysis of Vaughton '744 in claim chart; see also Jaaskelainen at Col. 4, ll. 31-34 ("Icon 20 shown in FIG. 2U is displayed to the user momentarily to indicate completion of the task, and then the border is removed, thereby causing icon 20 to disappear from display 12."; Cleron '843 at Col. 16, ll. 50-55 ("When a process has been completed and a page of information is being displayed, the status and progress banner 750, the process display 752 and the stop button 754 are eliminated from the display because they no longer provide any useful information.")) and it would be obvious to one of skill in the art to modify Lavey '698 with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system including a status indicator of the |

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | download progress), address the same problem (indicating the downloading progress within the content viewing area), disclose the same or similar techniques for superimposing a download status indicator over the content, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 40.5 | in the content-loading mode, the hypermedia browser loads content, displays such content in the content viewing area as it loads, and displays a "load status" graphic element over the content view area obstructing part of the content displayed in the content viewing area, wherein presence of such "load status" graphic element indicates that the browser is in the content-loading mode; and | "Preferably, the client computer graphically displays the status of the object requested while the object is being sent from the host computer to the client computer." Col. 2, ll. 62-64.<br><br>"FIG. 2C shows an exemplary graphical display of status of an object request." Col. 3, ll. 22-23.<br><br>"For the second type of online resource, the application launches a web browser as a foreground process for accessing a specific online server site. When the web browser is launched, a uniform resource locator (URL) information and any other required connection parameters are passed for connecting with the online resource." Col. 5, ll. 62-65.<br><br>"All other communications, such as data transfers, are reported to a user by a status bar and/or an animated icon appearing in the client applications interface so the user can visually verify that a transfer is occurring, and the approximate percentage of completion of the transfer. FIG. 2C shows an exemplary graphical display 45 that is displayed on display 35 in FIG. 2B. Graphical display 45 includes an exemplary status bar 46 and an exemplary animated icon 47 that communicate the status of a data transfer to a user." Col. 6, ll. 14-23. |

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348") and/or U.S. Patent 5,907,843 ("Cleron '843") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | GRAPHICAL DISPLAY (I.E. PC DESKTOP) 45<br><br>(CLIENT APPLICATION)<br>DOWNLOAD STATUS BAR 46<br>PERCENT COMPLETE<br>0   50   100   35%<br>47<br><br>**FIG. 2C** |
| 40.6 | wherein content comprises data for presentation which is from a source external to the browser. | "Preferably, the client computer graphically displays the status of the object requested while the object is being sent from the host computer to the client computer." Col. 2, ll. 62-64. |
| 41 | A hypermedia browser of claim 40, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language. | "The transparent interface protocol of the present invention permits convenient interaction with an online server site, such as for receiving requested information, receiving any new information necessary for operation of the application, for logging any information transfer, and for closing the connection when desired." Col. 3, ll. 59-65.<br><br>"For the present invention, this layer of the model preferably conforms to the Hypertext Transfer Protocol (HTTP). The TRUE/IP protocol of the present invention also supports any other IP-based protocol, such as File Transfer Protocol (FTP), Mail, |

37

587

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348") and/or U.S. Patent 5,907,843 ("Cleron '843") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | Telnet, Gopher, Network News Transport Protocol (NNTP), Chat, Forums, etc." Col. 4, ll. 39-44.<br><br>"In FIG. 2A, a client/server application 20 accesses an online server site using TRUE/IP with or without a browser 20a, containing information, such as any of types 21, 24 or 25, over the Internet 22 through an Internet service provider (ISP) 23." Col. 4, ll. 61-66.<br><br>"Information types 21, 24 and 25 available on the online server each are accessible over the Internet and can include a host computer running a Hypertext Transfer Protocol (HTTP) server, such as an IBM™ Internet Connection Server." Col. 5, ll. 2-6. |
| 42 | A hypermedia browser of claim 40, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web. | "The transparent interface protocol of the present invention permits convenient interaction with an online server site, such as for receiving requested information, receiving any new information necessary for operation of the application, for logging any information transfer, and for closing the connection when desired." Col. 3, ll. 59-65.<br><br>"For the present invention, this layer of the model preferably conforms to the Hypertext Transfer Protocol (HTTP). The TRUE/IP protocol of the present invention also supports any other IP-based protocol, such as File Transfer Protocol (FTP), Mail, Telnet, Gopher, Network News Transport Protocol (NNTP), Chat, Forums, etc." Col. 4, ll. 39-44.<br><br>"In FIG. 2A, a client/server application 20 accesses an online server site using TRUE/IP with or without a browser 20a, containing information, such as any of types 21, 24 or 25, over the Internet 22 through an Internet service provider (ISP) 23." Col. 4, ll. 61-66.<br><br>"Information types 21, 24 and 25 available on the online server each are accessible over the Internet and can include a host computer running a Hypertext Transfer Protocol (HTTP) server, such as an IBM™ Internet Connection Server." Col. 5, ll. 2- |

38

| Claim | U.S. Patent 6,339,780 |
|---|---|
| | U.S. Patent 6,023,698 ("Lavey '698") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device |
| 6. | |

39

# EXHIBIT D

Exemplar Chart of U.S. Patent 6,339,780

**U.S. Patent 6,584,498 ("Nguyen '498")[1]
Claims 1-6, 9-14, 17, 18, 20, 21 and 32-42**

| | U.S. Patent 6,339,780 | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| 1 | A hypermedia browser embodied on a computer-readable medium for execution on an information processing device having a limited display area, | "The page client 130 similarly comprises a processor 131 and client storage 132, with the processor 111 comprising a general purpose processor having a computing element, and program/data memory." Col. 3, ll. 10-13. "FIG. 1 shows a system for accessing web pages. A system 100 for accessing web pages comprises a page server 110, a communication link 120, and a page client 130." Col. 2, ll. 36-39. The page client may be a web browser.  Col. 1, ll. 52-53. "In a first preferred embodiment, the page client 130 comprises an input element 133 and a display element 134. The input element 133 comprises a keyboard and a pointing device such as a mouse or trackball.  The display element 134 comprises a visual display element such as a monitor or a display panel[.]" Col. 3, ll. 22-27. To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser on an information processing device having |

NOTE: Motorola applies the prior art in light of Microsoft's improper assertions of infringement and improper application of the claims. Motorola does not agree with Microsoft's application of the claims, or that the claims satisfy 35 U.S.C. § 112. Motorola's contentions herein are not, and should in no way be seen as, admissions or adoptions as to any particular claim scope or construction, or as any admission that any particular element is met in any particular way. Motorola objects to any attempt to imply claim construction from the foregoing chart. Motorola's prior art invalidity contentions are made in a variety of alternatives and do not represent Motorola's agreement or view as to the meaning, definiteness, written description support for, or enablement of any claim contained therein.

[1] "Dynamic Loading of Web Pages" issued to Nguyen; filed September 13, 1996; issued June 24, 2003. In the specification, the patentee expressly incorporates his copending application (08/716,641), which later issued as U.S. Patent No. 6,377,978, and deals with the dynamic downloading of hypertext electronic mail messages.

[2] "Dynamic Progress Marking Icon" issued to Jaaskelainen; filed July 16, 1992; issued April 5, 1994.

[3] "Replaceable and Extensible Navigator Component of a Network Component System" issued to Cleron et al.; filed February 27, 1997; issued May 25, 1999.

| U.S. Patent 6,339,780 | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348") and/or U.S. Patent 5,907,843 ("Cleron '843") and/or various systems implementing a web browser on a mobile device |
| --- | --- |
| | a limited display area. |
| | In addition, the combination of Nguyen '498 and one or more references describing handheld devices with browsers renders this claim obvious. Gessler[4], Cooper[5], Bartlett[6], Watson[7], Kamba[8], and Lauff[9] each teach a hypermedia browser embodied on a computer-readable medium for execution on an information processing device having a limited display area (e.g., a PDA, handheld, mobile device, etc.), and it would be obvious to one of skill in the art to modify Nguyen '498 with these teachings.[10] One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system). Additionally, Bartlett cites Gessler and Cooper cites Gessler and Bartlett. Moreover, all of theses references are from the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite |

---

[4] S. Gessler and A. Kotulla. PDAs as Mobile WWW Browsers. Computer Networks and ISDN Systems 28 (1995) 53-59 ("Gessler") (see pgs. 53 and 56-58).

[5] I. Cooper and R. Shufflebotham. PDAWeb Browsers: Implementation Issues. (University of Kent at Canterbury, November 9, 1995) ("Cooper") (see pgs. 3 and 5).

[6] J. Bartlett. Experience with a Wireless World Wide Web Client. IEEE COMPCON 95 (San Francisco, March 1995) ("Bartlett") (see pgs. 1, 4 and 5).

[7] T. Watson. "Application Design for Wireless Computing" (1994 Mobile Computing Systems and Applications Workshop Position Paper (August 1994)).

[8] T. Kamba, S. A. Elson, T. Harpold, T. Stamper, and P. Sukaviriya. (1996). "Using small screen space more efficiently."

[9] M. Lauff and W. Gellerson. Multimedia Client Implementation on Personal Digital Assistants. TecO.

[10] Motorola continues to investigate other browsers that were in existence prior to the priority date of the '780 patent (e.g., NetHopper, Newt's Cape, PocketWeb and Vogon).

2

| U.S. Patent 6,339,780 | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device number of identified, predictable solutions. |
|---|---|
| | |
| 1.1 wherein the hypermedia browser has a content viewing area for viewing content and is configured to display a temporary graphic element over the content viewing area during times when the browser is loading content, | "A primary page 140 presented on the output element 134 comprises information for presentation to an operator." Col. 3, ll. 44-45.

"The page client 130 presents the preloading state using a preloading indicator 153. To indicate the progress of the "in progress" preloading stage, the preloading indicator 153 comprises a first part 154 having a first display color or pattern and a second part 153 having a second display color or pattern; the shape or size of the first part 154 relative to the second part 155 is used to indicate the progress of the "in progress" preloading stage. In a first preferred embodiment, the preloading indicator 153 comprises a dot or other shape which is superposed on the primary page 140." Col. 4, ll. 65-67 to Col. 5, ll. 1-8. |
| 1.2 wherein the temporary graphic element is positioned over the content viewing area to obstruct only part of the content in the content viewing area, | "In a first preferred embodiment, the preloading indicator 153 comprises a dot or other shape which is superposed on the primary page 140." Col. 5, ll. 6-8; *see also* FIG. 1. |
| 1.3 wherein the temporary graphic element is not content and wherein content comprises data for presentation which is from a source external to the browser. | "[T]he preloading indicator 153 comprises a dot or other shape which is superposed on the primary page 140. In this preferred embodiment, the first part 154 comprises a pie slice of the dot or small circle which by its angle and its color (green) indicates an amount of the ""in progress"" preloading stage which has been completed, and the second part 155 by its angle and its color (orange) indicates an amount which has not been completed. Thus the image of the dot or small circle will change color from orange to orange/green to green as the preloading operation progresses." Col. 5, ll. 6-16.

Content is provided by a page server external to the browser. *See* Col. 2, ll. 45-47; *see also* FIG. 1. |

3

| U.S. Patent 6,339,780 | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348") and/or U.S. Patent 5,907,843 ("Cleron '843") and/or various systems implementing a web browser on a mobile device |
|---|---|
| |  |
| 2 | A hypermedia browser as recited in claim 1, wherein the browser is configured to display the temporary graphic element over the content viewing area only during times when the browser is loading visible content. | "A primary page 140 presented on the output element 134 comprises information for presentation to an operator. The information may be visual information (in the form of text, graphics, or motion picture data), may be audio information, or may be information in another format. There are several formats for information available via web pages which are known in the art of networking." Col. 3, ll. 44-50.<br><br>"In a first preferred embodiment, the preloading indicator 153 comprises a dot or other shape which is superposed on the primary page 140." Col. 5, ll. 6-8; *see also* FIG. 1.<br><br>"The choice of display colors is, of course, completely arbitrary.  Other colors, patterns, or other visual or audible indicators may be used instead or in conjunction to present the operator with information about the pre loading stage for any particular |

4

| U.S. Patent 6,339,780 | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device |
| --- | --- |
| | link 150." Col. 4, ll. 53-57. |
| | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete.  Nguyen '498 discloses that the preloading indicator indicates an amount of the 'in progress' preloading stage which has been completed and an amount which has not been completed.  Based on this, one of skill in the art would have been motivated to implement a browser wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete. |
| | In addition, the combination of Nguyen '498 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious.  Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 teaches a temporary graphic element that disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete (see analysis of Vaughton '744 in claim chart; see also Jaaskelainen at Col. 4, ll. 31-34 ("Icon 20 shown in FIG. 2U is displayed to the user momentarily to indicate completion of the task, and then the border is removed, thereby causing icon 20 to disappear from display 12."; Cleron '843 at Col. 16, ll. 50-55 ("When a process has been completed and a page of information is being displayed, the status and progress banner 750, the process display 752 and the stop button 754 are eliminated from the display because they no longer provide any useful information.") and it would be obvious to one of skill in the art to modify Nguyen '498 with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system including a status indicator of the download progress), address the same problem (indicating the downloading progress within the content viewing area), disclose the same or similar techniques for superimposing a download status indicator over the content, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art |

| U.S. Patent 6,339,780 | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device |
|---|---|
| | would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 3   A hypermedia browser as recited in claim 1, wherein the temporary graphic element indicates to a user that the browser is loading content. | "[T]he preloading indicator 153 comprises a dot or other shape which is superposed on the primary page 140. In this preferred embodiment, the first part 154 comprises a pie slice of the dot or small circle which by its angle and its color (green) indicates an amount of the 'in progress' preloading stage which has been completed, and the second part 155 by its angle and its color (orange) indicates an amount which has not been completed. Thus the image of the dot or small circle will change color from orange to orange/green to green as the preloading operation progresses." Col. 5, ll. 6-16. |
| 4   A hypermedia browser as recited in claim 1, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete. | "The choice of display colors is, of course, completely arbitrary.  Other colors, patterns, or other visual or audible indicators may be used instead or in conjunction to present the operator with information about the pre loading stage for any particular link 150." Col. 4, ll. 53-57.<br><br>To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete.  Nguyen '498 discloses that the preloading indicator indicates an amount of the 'in progress' preloading stage which has been completed and an amount which has not been completed.  Based on this, one of skill in the art would have been motivated to implement a browser wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete. |

6

| U.S. Patent 6,339,780 | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348") and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
|---|---|
| | In addition, the combination of Nguyen '498 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious.  Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 teaches a temporary graphic element that disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete (see analysis of Vaughton '744 in claim chart; see also Jaaskelainen at Col. 4, ll. 31-34 ("Icon 20 shown in FIG. 2U is displayed to the user momentarily to indicate completion of the task, and then the border is removed, thereby causing icon 20 to disappear from display 12."; Cleron '843 at Col. 16, ll. 50-55 ("When a process has been completed and a page of information is being displayed, the status and progress banner 750, the process display 752 and the stop button 754 are eliminated from the display because they no longer provide any useful information.") and it would be obvious to one of skill in the art to modify Nguyen '498 with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system including a status indicator of the download progress), address the same problem (indicating the downloading progress within the content viewing area), disclose the same or similar techniques for superimposing a download status indicator over the content, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 5  A hypermedia browser as recited in claim 1, wherein the temporary graphic element is animated. | "In this preferred embodiment, the first part 154 comprises a pie slice of the dot or small circle which by its angle and its color (green) indicates an amount of the 'in progress' preloading stage which has been completed, and the second part 155 by its angle and its color (orange) indicates an amount which has not been completed. Thus the image of the dot or small circle will change color from orange to orange/green to green as the preloading operation progresses." Col. 5, ll. 8-16. |

7

| U.S. Patent 6,339,780 | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
|---|---|
| 6 | A hypermedia browser as recited in claim 1, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area. | "In addition to the first part 154 and the second part 155, the preloading indicator 153 comprises a textual or graphical indicator, positioned at a margin of the primary page 140 (such as in a margin for a window used for presentation of the visual elements of the primary page 140), indicating an amount of the "in progress" preloading state which has been completed. For example, when 75% of the secondary page 140 is preloaded, the preloading indicator 153 comprises the text "75% preloaded" or some equivalent statement, or 55 comprises a thermometer graph showing that 75% of the secondary page 140 is preloaded." Col. 5, ll. 47-57; *see also* FIG. 1.

In addition, the combination of Nguyen '498 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious. Vaughton '744 indicates, e.g., that "the window(s) of the second task may abut the edge of the window(s) of the first task--the windows may be "clipped together" at their edge." Vaughton '744 at Col. 2, l. 63 - Col. 3, l. 3. Jaaskelainen '348 indicates, e.g., that "[i]n the preferred embodiment, icon 20 is displayed in the lower right hand corner or disply 12 (FIG. 1), and remains in the same location for the duration of the task. Of course, icon 20 could be displayed in a different location of display 12 or move from locaton to location as the task progresses." Jaaskelainen '348 at Col. 4, ll. 7-13. Cleron '843 indicates, e.g., that progress banner 750 may appear in the lower right corner of the display. Cleron '843 at FIG. 8A. It would be obvious to one of skill in the art to modify Nguyen '498 with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and disclose the same or similar techniques. Moreover, theses references are from the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |

8

| U.S. Patent 6,339,780 | | |
|---|---|---|
| 9 | A hypermedia browser as recited in claim 1, wherein the temporary graphic element conveys status information of the browser. | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348") and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device

"In this preferred embodiment, the first part 154 comprises a pie slice of the dot or small circle which by its angle and its color (green) indicates an amount of the 'in progress' preloading stage which has been completed, and the second part 155 by its angle and its color (orange) indicates an amount which has not been completed. Thus the image of the dot or small circle will change color from orange to orange/green to green as the preloading operation progresses." Col. 5, ll. 8-16.

"In addition to the first part 154 and the second part 155, the preloading indicator 153 comprises a textual or graphical indicator, positioned at a margin of the primary page 140 (such as in a margin for a window used for presentation of 50 the visual elements of the primary page 140), indicating an amount of the "in progress" preloading state which has been completed. For example, when 75% of the secondary page 140 is preloaded, the preloading indicator 153 comprises the text "75% preloaded" or some equivalent statement, or 55 comprises a thermometer graph showing that 75% of the secondary page 140 is preloaded." Col. 5, ll. 47-57; *see also* FIG. 1. |
| 10 | A hypermedia browser of claim 1, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a markup language, and visible results of a scripting language. | "The page server 110 is disposed for generating and responding to messages in a protocol for presenting web pages to the page client 130. The protocol is preferably the Hypertext Transfer Protocol ("HTTP"), but the concepts of the invention are broad enough to apply to other protocols for transferring and presenting information, including protocols known as "FSP", "FTP", "Gopher", and variants thereof, protocols for access to a command interface such as "Telnet", "MUD", "MUSH", "MOO", and variants thereof, other protocols for accessing, transmitting, or presenting information, and programs making use of such protocols, such as "Archie", "Veronica", "Jughead", and the like." Col. 2, ll. 45-56.

"In a preferred embodiment, preferred process steps and data structures for the page client 130 are specified in the "Java" computer language." Col. 3, ll. 13-15.

"A primary page 140 presented on the output element 134 comprises information for presentation to an operator. The information may be visual information (in the form |

9

| U.S. Patent 6,339,780 | |
|---|---|
| | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
| | of text, graphics, or motion picture data), may be audio information, or may be information in another format.  There are several formats for information available via web pages which are known in the art of networking." Col. 3, ll. 44-50. |
| | "Links 150 are embedded in pages 140 using a set of HTML tags, or by other techniques for identifying other pages 140 which may be presented.  Links 150 are themselves presented to the operator as text elements 151 or as graphic elements 152.  Links 150 may be identified by the page client 130 by special forms of display, for example by displaying text in a different color or typeface from text elements 151 or as graphic elements 152 which are not associated with links 150." Col. 4, ll. 17-25. |
| | Nguyen '498 additionally cites several Java references, e.g., Tessier, Tom, "Using Java Script to Create Interactive Web Pages", Dr. Dobbs Journal on CDROM Mar. 1996; and Stephen R. Davis.  "Teach Yourself Java Programming the Quick and Easy Way with Microsoft Visual: Learn Java Now".  Microsoft Press.  3 0402 00136 8093. |
| A hypermedia browser of claim 1, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash scripting language for the world wide web. | "The page server 110 is disposed for generating and responding to messages in a protocol for presenting web pages to the page client 130.  The protocol is preferably the Hypertext Transfer Protocol ("HTTP"), but the concepts of the invention are broad enough to apply to other protocols for transferring and presenting information, including protocols known as "FSP", "FTP", "Gopher", and variants thereof, protocols for access to a command interface such as "Telnet", "MUD", "MUSH", "MOO", and variants thereof, other protocols for accessing, transmitting, or presenting information, and programs making use of such protocols, such as "Archie", "Veronica", "Jughead", and the like." Col. 2, ll. 45-56. |
| 11 | "In a preferred embodiment, preferred process steps and data structures for the page client 130 are specified in the "Java" computer language." Col. 3, ll. 13-15. |
| | "A primary page 140 presented on the output element 134 comprises information for presentation to an operator.  The information may be visual information (in the form of text, graphics, or motion picture data), may be audio information, or may be |

10

| U.S. Patent 6,339,780 | | |
|---|---|---|
| | | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
| | | information in another format.  There are several formats for information available via web pages which are known in the art of networking." Col. 3, ll. 44-50. |
| | | "Links 150 are embedded in pages 140 using a set of HTML tags, or by other techniques for identifying other pages 140 which may be presented.  Links 150 are themselves presented to the operator as text elements 151 or as graphic elements 152. Links 150 may be identified by the page client 130 by special forms of display, for example by displaying text in a different color or typeface from text elements 151 or as graphic elements 152 which are not associated with links 150." Col. 4, ll. 17-25. |
| | | Nguyen '498 additionally cites several Java references, e.g., Tessier, Tom, "Using Java Script to Create Interactive Web Pages", Dr. Dobbs Journal on CDROM Mar. 1996; and Stephen R. Davis.   "Teach Yourself Java Programming the Quick and Easy Way with Microsoft Visual: Learn Java Now".  Microsoft Press.  3 0402 00136 8093. |
| 12 | 12. An information processing device comprising; | "A system 100 for accessing web pages comprises a page server 110, a communication link 120, and a page client 130." Col. 2, ll. 38-39; see also FIG. 1. |
| 12.1 | a processor; | "The page client 130 similarly comprises a processor 131 and client storage 132, with the processor 111 comprising a general purpose processor having a computing element, and program/data memory." Col. 3, ll. 10-13. |
| 12.2 | a display; | "In a first preferred embodiment, the page client 130 comprises an input element 133 and a display element 134 . . . The display element 134 comprises a visual display element such as a monitor or a display panel[.]" Col. 3, ll. 22-27. |
| 12.3 | a hypermedia browser executing on the processor to load and display content in a content viewing area on the display; ; | A system 100 for accessing web pages comprises a page server 110, a communication link 120, and a page client 130." Col. 2, ll. 37-39. "The page client 130 similarly comprises a processor 131 and client storage 132, with the processor 111 comprising a |

11

| U.S. Patent 6,339,780 | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
|---|---|
| | general purpose processor having a computing element, and program/data memory." Col. 3, ll. 10-13. <br><br> "A primary page 140 presented on the output element 134 comprises information for presentation to an operator." Col. 3, ll. 44-45. |
| 12.4 — wherein the hypermedia browser displays a temporary graphic element over the content viewing area during times when the browser is loading visible content; | "The page client 130 presents the preloading state using a preloading indicator 153. To indicate the progress of the "in progress" preloading stage, the preloading indicator 153 comprises a first part 154 having a first display color or pattern and a second part 153 having a second display color or pattern; the shape or size of the first part 154 relative to the second part 155 is used to indicate the progress of the "in progress" preloading stage. In a first preferred embodiment, the preloading indicator 153 comprises a dot or other shape which is superposed on the primary page 140." Col. 4, ll. 65-67 to Col. 5, ll. 1-8. |
| 12.5 — wherein the temporary graphic element is positioned only over a portion of the content viewing area and obstructs only part of the visible content in the content viewing area; and | In a first preferred embodiment, the preloading indicator 153 comprises a dot or other shape which is superposed on the primary page 140." Col. 5, ll. 6-8; see also FIG. 1. |
| 12.6 — wherein the temporary graphic element indicates to a user that the browser is loading content and content comprises data for presentation which is from a source external to the browser. | "[T]he preloading indicator 153 comprises a dot or other shape which is superposed on the primary page 140. In this preferred embodiment, the first part 154 comprises a pie slice of the dot or small circle which by its angle and its color (green) indicates an amount of the "in progress" preloading stage which has been completed, and the second part 155 by its angle and its color (orange) indicates an amount which has not been completed. Thus the image of the dot or small circle will change color from orange to orange/green to green as the preloading operation progresses." Col. 5, ll. 6-16. |

12

| | U.S. Patent 6,339,780 | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | Content is provided by a page server external to the browser. *See* Col. 2, ll. 45-47; *see also* FIG. 1. |
| 13 | An information processing device as recited in claim 12, wherein the temporary graphic element is animated. | "In this preferred embodiment, the first part 154 comprises a pie slice of the dot or small circle which by its angle and its color (green) indicates an amount of the 'in progress' preloading stage which has been completed, and the second part 155 by its angle and its color (orange) indicates an amount which has not been completed. Thus the image of the dot or small circle will change color from orange to orange/green to green as the preloading operation progresses." Col. 5, ll. 8-16. |
| 14 | An information processing device as recited in claim 12, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area. | "In addition to the first part 154 and the second part 155, the preloading indicator 153 comprises a textual or graphical indicator, positioned at a margin of the primary page 140 (such as in a margin for a window used for presentation of 50 the visual elements of the primary page 140), indicating an amount of the "in progress" preloading state which has been completed. For example, when 75% of the secondary page 140 is preloaded, the preloading indicator 153 comprises the text "75% preloaded" or some equivalent statement, or 55 comprises a thermometer graph showing that 75% of the secondary page 140 is preloaded." Col. 5, ll. 47-57; *see also* FIG. 1.<br><br>In addition, the combination of Nguyen '498 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious. Vaughton '744 indicates, e.g., that "the window(s) of the second task may abut the edge of the window(s) of the first task--the windows may be "clipped together" at their edge." Vaughton '744 at Col. 2, l. 63 - Col. 3, l. 3. Jaaskelainen '348 indicates, e.g., that "[i]n the preferred embodiment, icon 20 is displayed in the lower right hand corner or disply 12 (FIG. 1), and remains in the same location for the duration of the task. Of course, icon 20 could be displayed in a different location of display 12 or move from locaton to location as the task progresses." Jaaskelainen '348 at Col. 4, ll. 7-13. Cleron '843 indicates, e.g., that progress banner 750 may appear in the lower right |

13

| U.S. Patent 6,339,780 | | |
|---|---|---|
| | | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device<br><br>corner of the display.  Cleron '843 at FIG. 8A.  It would be obvious to one of skill in the art to modify Nguyen '498 with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and disclose the same or similar techniques.  Moreover, theses references are from the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 17 | A hypermedia browser of claim 12, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language. | "The page server 110 is disposed for generating and responding to messages in a protocol for presenting web pages to the page client 130.  The protocol is preferably the Hypertext Transfer Protocol ("HTTP"), but the concepts of the invention are broad enough to apply to other protocols for transferring and presenting information, including protocols known as "FSP", "FTP", "Gopher", and variants thereof, protocols for access to a command interface such as "Telnet", "MUD", "MUSH", "MOO", and variants thereof, other protocols for accessing, transmitting, or presenting information, and programs making use of such protocols, such as "Archie", "Veronica", "Jughead", and the like." Col. 3, ll. 45-56.<br><br>"In a preferred embodiment, preferred process steps and data structures for the page client 130 are specified in the "Java" computer language." Col. 3, ll. 13-15.<br><br>"A primary page 140 presented on the output element 134 comprises information for presentation to an operator.  The information may be visual information (in the form of text, graphics, or motion picture data), may be audio information, or may be information in another format.  There are several formats for information available via web pages which are known in the art of networking." Col. 3, ll. 44-50.<br><br>"Links 150 are embedded in pages 140 using a set of HTML tags, or by other techniques for identifying other pages 140 which may be presented.  Links 150 are |

14

604

| | U.S. Patent 6,339,780 | |
|---|---|---|
| | | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
| | | themselves presented to the operator as text elements 151 or as graphic elements 152. Links 150 may be identified by the page client 130 by special forms of display, for example by displaying text in a different color or typeface from text elements 151 or as graphic elements 152 which are not associated with links 150." Col. 4, ll. 17-25. |
| | | Nguyen '498 additionally cites several Java references, e.g., Tessier, Tom, "Using Java Script to Create Interactive Web Pages", Dr. Dobbs Journal on CDROM Mar. 1996; and Stephen R. Davis. "Teach Yourself Java Programming the Quick and Easy Way with Microsoft Visual: Learn Java Now". Microsoft Press. 3 0402 00136 8093. |
| 18 | A hypermedia browser of claim 12, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web. | "The page server 110 is disposed for generating and responding to messages in a protocol for presenting web pages to the page client 130. The protocol is preferably the Hypertext Transfer Protocol ("HTTP"), but the concepts of the invention are broad enough to apply to other protocols for transferring and presenting information, including protocols known as "FSP", "FTP", "Gopher", and variants thereof, protocols for access to a command interface such as "Telnet", "MUD", "MUSH", "MOO", and variants thereof, other protocols for accessing, transmitting, or presenting information, and programs making use of such protocols, such as "Archie", "Veronica", "Jughead", and the like." Col. 2, ll. 45-56. |
| | | "In a preferred embodiment, preferred process steps and data structures for the page client 130 are specified in the "Java" computer language." Col. 3, ll. 13-15. |
| | | "A primary page 140 presented on the output element 134 comprises information for presentation to an operator. The information may be visual information (in the form of text, graphics, or motion picture data), may be audio information, or may be information in another format. There are several formats for information available via web pages which are known in the art of networking." Col. 3, ll. 44-50. |
| | | "Links 150 are embedded in pages 140 using a set of HTML tags, or by other techniques for identifying other pages 140 which may be presented. Links 150 are themselves presented to the operator as text elements 151 or as graphic elements 152. |

15

| | U.S. Patent 6,339,780 | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | Links 150 may be identified by the page client 130 by special forms of display, for example by displaying text in a different color or typeface from text elements 151 or as graphic elements 152 which are not associated with links 150." Col. 4, ll. 17-25.<br><br>Nguyen '498 additionally cites several Java references, e.g., Tessier, Tom, "Using Java Script to Create Interactive Web Pages", Dr. Dobbs Journal on CDROM Mar. 1996; and Stephen R. Davis. "Teach Yourself Java Programming the Quick and Easy Way with Microsoft Visual: Learn Java Now". Microsoft Press. 3 0402 00136 8093. |
| 20 | An information processing device as recited in claim 12, wherein the temporary graphic element is not content. | "[T]he preloading indicator 153 comprises a dot or other shape which is superposed on the primary page 140. In this preferred embodiment, the first part 154 comprises a pie slice of the dot or small circle which by its angle and its color (green) indicates an amount of the 'in progress' preloading stage which has been completed, and the second part 155 by its angle and its color (orange) indicates an amount which has not been completed. Thus the image of the dot or small circle will change color from orange to orange/green to green as the preloading operation progresses." Col. 5, ll. 6-16. |
| 21 | An information processing device as recited in claim 12, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete. | "The choice of display colors is, of course, completely arbitrary. Other colors, patterns, or other visual or audible indicators may be used instead or in conjunction to present the operator with information about the pre loading stage for any particular link 150." Col. 4, ll. 53-57.<br><br>To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete. Nguyen '498 discloses that the preloading indicator indicates an amount of the 'in progress' preloading stage which has been completed and an amount which has not been completed. Based on this, one of skill |

| | U.S. Patent 6,339,780 | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | in the art would have been motivated to implement a browser wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete.

In addition, the combination of Nguyen '498 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious.  Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 teaches a temporary graphic element that disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete (see analysis of Vaughton '744 in claim chart; see also Jaaskelainen at Col. 4, ll. 31-34 ("Icon 20 shown in FIG. 2U is displayed to the user momentarily to indicate completion of the task, and then the border is removed, thereby causing icon 20 to disappear from display 12."; Cleron '843 at Col. 16, ll. 50-55 ("When a process has been completed and a page of information is being displayed, the status and progress banner 750, the process display 752 and the stop button 754 are eliminated from the display because they no longer provide any useful information.")) and it would be obvious to one of skill in the art to modify Nguyen '498 with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system including a status indicator of the download progress), address the same problem (indicating the downloading progress within the content viewing area), disclose the same or similar techniques for superimposing a download status indicator over the content, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 32 | A method of indicating a content "load status"" of a hypermedia browser having a | "The page client 130 identifies each one of those links 150 as being in one of three preloading states [not started, in progress, or completed], using one of a set of display |

| U.S. Patent 6,339,780 | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
| --- | --- |
| content viewing area for viewing content, the method comprising: | colors." Col. 4, ll. 38-40; see also TABLE 1-1.<br><br>TABLE 1-1<br><br>| Preloading State | Display Color | Nature of State |<br>| --- | --- | --- |<br>| not started | red | the secondary page has not started preloading yet |<br>| in progress | orange | the secondary page is currently being preloaded |<br>| completed | green | the secondary page is preloaded and is ready for presentation |<br><br>"The page client 130 presents the preloading state using a preloading indicator 153. To indicate the progress of the "in progress" preloading stage, the preloading indicator 153 comprises a first part 154 having a first display color or pattern and a second part 153 having a second display color or pattern; the shape or size of the first part 154 relative to the second part 155 is used to indicate the progress of the "in progress" preloading stage. In a first preferred embodiment, the preloading indicator 153 comprises a dot or other shape which is superposed on the primary page 140." Col. 4, ll. 65-67 to Col. 5, ll. 1-8. |
| **32.1** displaying loaded content within the content viewing area of a screen of a hypermedia browser, the screen being without a "load status" graphic element, wherein a "load status" graphic element indicates a current content load status of the hypermedia browser; | "A primary page 140 presented on the output element 134 comprises information for presentation to an operator. The information may be visual information (in the form of text, graphics, or motion picture data), may be audio information, or may be information in another format. There are several formats for information available via web pages which are known in the art of networking." Col. 3, ll. 44-50.<br><br>"The page client 130 presents the preloading state using a preloading indicator 153. To indicate the progress of the "in progress" preloading stage, the preloading indicator 153 comprises a first part 154 having a first display color or pattern and a second part 153 having a second display color or pattern; the shape or size of the first part 154 |

| | U.S. Patent 6,339,780 | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | relative to the second part 155 is used to indicate the progress of the "in progress" preloading stage. In a first preferred embodiment, the preloading indicator 153 comprises a dot or other shape which is superposed on the primary page 140." Col. 4, ll. 65-67 to Col. 5, ll. 1-8. |
| | | "The choice of display colors is, of course, completely arbitrary. Other colors, patterns, or other visual or audible indicators may be used instead or in conjunction to present the operator with information about the preloading stage for any particular link 150." Col. 4, ll. 53-57. |
| 32.2 | receiving an instruction to load new content into the content viewing area; | "The preloaded secondary pages 140 are stored in the client storage 132. When the operator follows one of the links 150 to one of the secondary pages 140, that secondary page 140 is presented to the operator by reference to the client storage 132, rather than by requesting that secondary page 140 from the page server 110." Col. 5, ll. 58-63. |
| | | See, e.g., Claim 1 ("loading a first page which has been dynamically selected by an operator). |
| 32.3 | loading such new content into the content viewing area; and | "The preloaded secondary pages 140 are stored in the client storage 132. When the operator follows one of the links 150 to one of the secondary pages 140, that secondary page 140 is presented to the operator by reference to the client storage 132, rather than by requesting that secondary page 140 from the page server 110." Col. 5, ll. 58-63. |
| | | "When it is presented to the operator, the secondary page 140 logically becomes the primary page 140, preloading of any other secondary pages 140 is aborted, and the page client 130 preloads those (new) secondary pages 140 which are pointed to by the (new) primary page 140 in like manner as it preloaded those (old) secondary pages 140 which were pointed to by the (old) primary page 140. Dynamic preloading of secondary pages 140 continues so long as the operator continues to follow links 150 and thus request presentation of secondary pages 140, which logically become (new) primary pages 140." Col. 6, ll. 36-46. |

| | U.S. Patent 6,339,780 | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| 32.4 | while loading, displaying a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area; and | "The page client 130 presents the preloading state using a preloading indicator 153. To indicate the progress of the "in progress" preloading stage, the preloading indicator 153 comprises a first part 154 having a first display color or pattern and a second part 153 having a second display color or pattern; the shape or size of the first part 154 relative to the second part 155 is used to indicate the progress of the "in progress" preloading stage. In a first preferred embodiment, the preloading indicator 153 comprises a dot or other shape which is superposed on the primary page 140." Col. 4, ll. 65-67 to Col. 5, ll. 1-8. |
| 32.5 | wherein content comprises data for presentation which is from a source external to the browser. | Content is provided by a page server external to the browser. *See* Col. 2, ll. 45-47; *see also* FIG. 1. |

20

| U.S. Patent 6,339,780 | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843"")³ and/or various systems implementing a web browser on a mobile device |
|---|---|
| |  |
| 33 | A method as recited in claim 32 further comprising, upon completion of the loading, removing the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed. | "The choice of display colors is, of course, completely arbitrary. Other colors, patterns, or other visual or audible indicators may be used instead or in conjunction to present the operator with information about the pre loading stage for any particular link 150." Col. 4, ll. 53-57.

To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete. Nguyen '498 discloses that the preloading indicator indicates an amount of the 'in progress' preloading stage which has been completed and an amount which has not been completed. Based on this, one of skill |

| U.S. Patent 6,339,780 | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device<br><br>in the art would have been motivated to implement a browser wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete.<br><br>In addition, the combination of Nguyen '498 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious. Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 teaches a temporary graphic element that disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete (see analysis of Vaughton '744 in claim chart; see also Jaaskelainen at Col. 4, ll. 31-34 ("Icon 20 shown in FIG. 2U is displayed to the user momentarily to indicate completion of the task, and then the border is removed, thereby causing icon 20 to disappear from display 12."; Cleron '843 at Col. 16, ll. 50-55 ("When a process has been completed and a page of information is being displayed, the status and progress banner 750, the process display 752 and the stop button 754 are eliminated from the display because they no longer provide any useful information.") and it would be obvious to one of skill in the art to modify Nguyen '498 with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system including a status indicator of the download progress), address the same problem (indicating the downloading progress within the content viewing area), disclose the same or similar techniques for superimposing a download status indicator over the content, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 34 | |
| A hypermedia browser of claim 32, wherein content is data formatted for | "The page server 110 is disposed for generating and responding to messages in a protocol for presenting web pages to the page client 130. The protocol is preferably |

22

| U.S. Patent 6,339,780 | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device | |
|---|---|---|
| presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language. | | the Hypertext Transfer Protocol ("HTTP"), but the concepts of the invention are broad enough to apply to other protocols for transferring and presenting information, including protocols known as "FSP", "FTP" "Gopher", and variants thereof, protocols for access to a command interface such as "Telnet", "MUD", "MUSH", "MOO", and variants thereof, other protocols for accessing, transmitting, or presenting information, and programs making use of such protocols, such as "Archie", "Veronica", "Jughead", and the like." Col. 2, ll. 45-56.

"In a preferred embodiment, preferred process steps and data structures for the page client 130 are specified in the "Java" computer language." Col. 3, ll. 13-15.

"A primary page 140 presented on the output element 134 comprises information for presentation to an operator. The information may be visual information (in the form of text, graphics, or motion picture data), may be audio information, or may be information in another format. There are several formats for information available via web pages which are known in the art of networking." Col. 3, ll. 44-50.

"Links 150 are embedded in pages 140 using a set of HTML tags, or by other techniques for identifying other pages 140 which may be presented. Links 150 are themselves presented to the operator as text elements 151 or as graphic elements 152. Links 150 may be identified by the page client 130 by special forms of display, for example by displaying text in a different color or typeface from text elements 151 or as graphic elements 152 which are not associated with links 150." Col. 4, ll. 17-25.

Nguyen '498 additionally cites several Java references, e.g., Tessier, Tom, "Using Java Script to Create Interactive Web Pages", Dr. Dobbs Journal on CDROM Mar. 1996; and Stephen R. Davis. "Teach Yourself Java Programming the Quick and Easy Way with Microsoft Visual: Learn Java Now". Microsoft Press. 3 0402 00136 8093. |
| 35 | A hypermedia browser of claim 32, wherein content is data formatted for presentation which is selected from a | | "The page server 110 is disposed for generating and responding to messages in a protocol for presenting web pages to the page client 130. The protocol is preferably the Hypertext Transfer Protocol ("HTTP"), but the concepts of the invention are broad |

23

613

| | U.S. Patent 6,339,780 | |
|---|---|---|
| | group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web. | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device enough to apply to other protocols for transferring and presenting information, including protocols known as "FSP", "FTP", "Gopher", and variants thereof, protocols for access to a command interface such as "Telnet", "MUD", "MUSH", "MOO", and variants thereof, other protocols for accessing, transmitting, or presenting information, and programs making use of such protocols, such as "Archie", "Veronica", "Jughead", and the like." Col. 2, ll. 45-56. "In a preferred embodiment, preferred process steps and data structures for the page client 130 are specified in the "Java" computer language." Col. 3, ll. 13-15. "A primary page 140 presented on the output element 134 comprises information for presentation to an operator. The information may be visual information (in the form of text, graphics, or motion picture data), may be audio information, or may be information in another format. There are several formats for information available via web pages which are known in the art of networking." Col. 3, ll. 44-50. "Links 150 are embedded in pages 140 using a set of HTML tags, or by other techniques for identifying other pages 140 which may be presented. Links 150 are themselves presented to the operator as text elements 151 or as graphic elements 152. Links 150 may be identified by the page client 130 by special forms of display, for example by displaying text in a different color or typeface from text elements 151 or as graphic elements 152 which are not associated with links 150." Col. 4, ll. 17-25. Nguyen '498 additionally cites several Java references, e.g., Tessier, Tom, "Using Java Script to Create Interactive Web Pages", Dr. Dobbs Journal on CDROM Mar. 1996; and Stephen R. Davis. "Teach Yourself Java Programming the Quick and Easy Way with Microsoft Visual: Learn Java Now". Microsoft Press. 3 0402 00136 8093. |
| 36 | A computer-readable medium having computer-executable instructions that, when executed by a computer, perform a method of indicating a content "load" | "The page client 130 similarly comprises a processor 131 and client storage 132, with the processor 111 comprising a general purpose processor having a computing element, and program/data memory. In a preferred embodiment, preferred process steps and data structures for the page client 130 are specified in the "Java" computer |

24

| U.S. Patent 6,339,780 | | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | status" of a hypermedia browser having a content viewing area for viewing content, the method comprising: | language.  The general purpose processor may comprise any processor disposed to interpret or to compile the "Java" computer language, such as an Intel "Pentium" processor operating at 90 megahertz, having 32 megabytes of program/data memory, operating under control of the Microsoft "Windows 95" operating system, and coupled to 1.0 gigabytes of client storage 132." Col. 3, ll. 10-21.

"FIG. 1 shows a system for accessing web pages.  A system 100 for accessing web pages comprises a page server 110, a communication link 120, and a page client 130." Col. 2, ll. 36-39.  The page client may be a web browser.  Col. 1, ll. 52-53.  "In a first preferred embodiment, the page client 130 comprises an input element 133 and a display element 134.  The input element 133 comprises a keyboard and a pointing device such as a mouse or trackball.  The display element 134 comprises a visual display element such as a monitor or a display panel[.]" Col. 3, ll. 22-27.

"The page client 130 presents the preloading state using a preloading indicator 153.  To indicate the progress of the "in progress" preloading stage, the preloading indicator 153 comprises a first part 154 having a first display color or pattern and a second part 153 having a second display color or pattern; the shape or size of the first part 154 relative to the second part 155 is used to indicate the progress of the "in progress" preloading stage.  In a first preferred embodiment, the preloading indicator 153 comprises a dot or other shape which is superposed on the primary page 140." Col. 4, ll. 65-67 to Col. 5, ll. 1-8. |
| 36.1 | displaying loaded content within the content viewing area of a screen of a hypermedia browser, the screen is without a "load status" graphic element, wherein a "load status" graphic element indicates a current content load status of the hypermedia browser; | "A primary page 140 presented on the output element 134 comprises information for presentation to an operator.  The information may be visual information (in the form of text, graphics, or motion picture data), may be audio information, or may be information in another format.  There are several formats for information available via web pages which are known in the art of networking." Col. 3, ll. 44-50.

"The page client 130 presents the preloading state using a preloading indicator 153.  To indicate the progress of the "in progress" preloading stage, the preloading indicator |

25

615

| U.S. Patent 6,339,780 | | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | 153 comprises a first part 154 having a first display color or pattern and a second part 153 having a second display color or pattern; the shape or size of the first part 154 relative to the second part 155 is used to indicate the progress of the "in progress" preloading stage. In a first preferred embodiment, the preloading indicator 153 comprises a dot or other shape which is superposed on the primary page 140." Col. 4, ll. 65-67 to Col. 5, ll. 1-8. |
| | | "The choice of display colors is, of course, completely arbitrary. Other colors, patterns, or other visual or audible indicators may be used instead or in conjunction to present the operator with information about the preloading stage for any particular link 150." Col. 4, ll. 53-57. |
| 36.2 | receiving an instruction to load new content into the content viewing area; | "The preloaded secondary pages 140 are stored in the client storage 132. When the operator follows one of the links 150 to one of the secondary pages 140, that secondary page 140 is presented to the operator by reference to the client storage 132, rather than by requesting that secondary page 140 from the page server 110." Col. 5, ll. 58-63. |
| | | *See, e.g.,* Claim 1 ("loading a first page which has been dynamically selected by an operator). |
| 36.3 | loading such new content into the content viewing area; and | "The preloaded secondary pages 140 are stored in the client storage 132. When the operator follows one of the links 150 to one of the secondary pages 140, that secondary page 140 is presented to the operator by reference to the client storage 132, rather than by requesting that secondary page 140 from the page server 110." Col. 5, ll. 58-63. |
| | | "When it is presented to the operator, the secondary page 140 logically becomes the primary page 140, preloading of any other secondary pages 140 is aborted, and the page client 130 preloads those (new) secondary pages 140 which are pointed to by the |

| U.S. Patent 6,339,780 | | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | (new) primary page 140 in like manner as it preloaded those (old) secondary pages 140 which were pointed to by the (old) primary page 140. Dynamic preloading of secondary pages 140 continues so long as the operator continues to follow links 150 and thus request presentation of secondary pages 140, which logically become (new) primary pages 140." Col. 6, ll. 36-46. |
| 36.4 | while loading, displaying a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area; and | "The page client 130 presents the preloading state using a preloading indicator 153. To indicate the progress of the "in progress" preloading stage, the preloading indicator 153 comprises a first part 154 having a first display color or pattern and a second part 153 having a second display color or pattern; the shape or size of the first part 154 relative to the second part 155 is used to indicate the progress of the "in progress" preloading stage. In a first preferred embodiment, the preloading indicator 153 comprises a dot or other shape which is superposed on the primary page 140." Col. 4, ll. 65-67 to Col. 5, ll. 1-8. |
| 36.5 | wherein content comprises data for presentation which is from a source external to the browser. | Content is provided by a page server external to the browser. *See* Col. 2, ll. 45-47; *see also* FIG. 1. |

27

| U.S. Patent 6,339,780 | | |
|---|---|---|
| | | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843'")[3] and/or various systems implementing a web browser on a mobile device |
| | |  |
| 37 | A hypermedia browser of claim 36, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language. | "The page server 110 is disposed for generating and responding to messages in a protocol for presenting web pages to the page client 130.  The protocol is preferably the Hypertext Transfer Protocol ("HTTP"), but the concepts of the invention are broad enough to apply to other protocols for transferring and presenting information, including protocols known as "FSP", "FTP", "Gopher", and variants thereof, protocols for access to a command interface such as "Telnet", "MUD", "MUSH", "MOO", and variants thereof, other protocols for accessing, transmitting, or presenting information, and programs making use of such protocols, such as "Archie", "Veronica", "Jughead", and the like." Col. 2, ll. 45-56. |
| | | "In a preferred embodiment, preferred process steps and data structures for the page |

28

| U.S. Patent 6,339,780 | | |
|---|---|---|
| | | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device client 130 are specified in the "Java" computer language." Col. 3, ll. 13-15.<br><br>"A primary page 140 presented on the output element 134 comprises information for presentation to an operator. The information may be visual information (in the form of text, graphics, or motion picture data), may be audio information, or may be information in another format. There are several formats for information available via web pages which are known in the art of networking." Col. 3, ll. 44-50.<br><br>"Links 150 are embedded in pages 140 using a set of HTML tags, or by other techniques for identifying other pages 140 which may be presented. Links 150 are themselves presented to the operator as text elements 151 or as graphic elements 152. Links 150 may be identified by the page client 130 by special forms of display, for example by displaying text in a different color or typeface from text elements 151 or as graphic elements 152 which are not associated with links 150." Col. 4, ll. 17-25.<br><br>Nguyen '498 additionally cites several Java references, e.g., Tessier, Tom. "Using Java Script to Create Interactive Web Pages", Dr. Dobbs Journal on CDROM Mar. 1996; and Stephen R. Davis. "Teach Yourself Java Programming the Quick and Easy Way with Microsoft Visual: Learn Java Now". Microsoft Press. 3 0402 00136 8093. |
| 38 | A hypermedia browser of claim 36, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash, scripting language for the world wide web. | "The page server 110 is disposed for generating and responding to messages in a protocol for presenting web pages to the page client 130. The protocol is preferably the Hypertext Transfer Protocol ("HTTP"), but the concepts of the invention are broad enough to apply to other protocols for transferring and presenting information, including protocols known as "FSP", "FTP", "Gopher", and variants thereof, protocols for access to a command interface such as "Telnet", "MUD", "MUSH", "MOO", and variants thereof, other protocols for accessing, transmitting, or presenting information, and programs making use of such protocols, such as "Archie", "Veronica", "Jughead", and the like." Col. 2, ll. 45-56.<br><br>"In a preferred embodiment, preferred process steps and data structures for the page |

29

| U.S. Patent 6,339,780 | | |
|---|---|---|
| 39 | A computer-readable medium as recited in claim 36 further having additional computer-executable instructions that perform a method comprising, upon completion of the loading, removing the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed. | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device client 130 are specified in the "Java" computer language." Col. 3, ll. 13-15. "A primary page 140 presented on the output element 134 comprises information for presentation to an operator.  The information may be visual information (in the form of text, graphics, or motion picture data), may be audio information, or may be information in another format.  There are several formats for information available via web pages which are known in the art of networking." Col. 3, ll. 44-50. "Links 150 are embedded in pages 140 using a set of HTML tags, or by other techniques for identifying other pages 140 which may be presented.  Links 150 are themselves presented to the operator as text elements 151 or as graphic elements 152.  Links 150 may be identified by the page client 130 by special forms of display, for example by displaying text in a different color or typeface from text elements 151 or as graphic elements 152 which are not associated with links 150." Col. 4, ll. 17-25. Nguyen '498 additionally cites several Java references, e.g., Tessier, Tom, "Using Java Script to Create Interactive Web Pages", Dr. Dobbs Journal on CDROM Mar. 1996; and Stephen R. Davis.  "Teach Yourself Java Programming the Quick and Easy Way with Microsoft Visual: Learn Java Now".  Microsoft Press.  3 0402 00136 8093. "The choice of display colors is, of course, completely arbitrary.  Other colors, patterns, or other visual or audible indicators may be used instead or in conjunction to present the operator with information about the pre loading stage for any particular link 150." Col. 4, ll. 53-57. To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete.  Nguyen '498 discloses that the preloading indicator indicates an amount of the 'in progress' preloading stage which has been completed and an amount which has not been completed.  Based on this, one of skill |

30

| | | |
|---|---|---|
| U.S. Patent 6,339,780 | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device | in the art would have been motivated to implement a browser wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete.<br><br>In addition, the combination of Nguyen '498 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious. Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 teaches a temporary graphic element that disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete (see analysis of Vaughton '744 in claim chart; see also Jaaskelainen at Col. 4, ll. 31-34 ("Icon 20 shown in FIG. 2U is displayed to the user momentarily to indicate completion of the task, and then the border is removed, thereby causing icon 20 to disappear from display 12."; Cleron '843 at Col. 16, ll. 50-55 ("When a process has been completed and a page of information is being displayed, the status and progress banner 750, the process display 752 and the stop button 754 are eliminated from the display because they no longer provide any useful information.") and it would be obvious to one of skill in the art to modify Nguyen '498 with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system including a status indicator of the download progress), address the same problem (indicating the downloading progress within the content viewing area), disclose the same or similar techniques for superimposing a download status indicator over the content, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 40 | An information processing device comprising: | "A system 100 for accessing web pages comprises a page server 110, a communication link 120, and a page client 130." Col. 2, ll. 38-39; see also FIG. 1. |

31

| | U.S. Patent 6,339,780 | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| 40.1 | a processor; | "The page client 130 similarly comprises a processor 131 and client storage 132, with the processor 111 comprising a general purpose processor having a computing element, and program/data memory.  In a preferred embodiment, preferred process steps and data structures for the page client 130 are specified in the "Java" computer language.  The general purpose processor may comprise any processor disposed to interpret or to compile the "Java" computer language, such as an Intel "Pentium" processor operating at 90 megahertz, having 32 megabytes of program/data memory, operating under control of the Microsoft "Windows 95" operating system, and coupled to 1.0 gigabytes of client storage 132." Col. 3, ll. 10-21. |
| 40.2 | a display; | "In a first preferred embodiment, the page client 130 comprises an input element 133 and a display element 134 . .  The display element 134 comprises a visual display element such as a monitor or a display panel[.]" Col. 3, ll. 22-27. |
| 40.3 | a hypermedia browser executing on the processor to load and display content in a content viewing area on the display; wherein the hypermedia browser is configured to operate in a content-loading mode and a content-loaded mode; | "A primary page 140 presented on the output element 134 comprises information for presentation to an operator." Col. 3, ll. 44-45.<br><br>"The page client 130 identifies each one of those links 150 as being in one of three preloading states [not started, in progress, or completed][.]" Col. 4, ll. 39-40; *see also* TABLE 1-1. |
| 40.4 | in the content-loaded mode, the hypermedia browser displays loaded content in the content viewing area and no "load status" graphic element is displayed, wherein absence of such "load | "The choice of display colors is, of course, completely arbitrary.  Other colors, patterns, or other visual or audible indicators may be used instead or in conjunction to present the operator with information about the pre loading stage for any particular link 150." Col. 4, ll. 53-57. |

32

| U.S. Patent 6,339,780 | "status" graphic element indicates that the browser is in the content-loaded mode; | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete. Nguyen '498 discloses that the preloading indicator indicates an amount of the 'in progress' preloading stage which has been completed and an amount which has not been completed. Based on this, one of skill in the art would have been motivated to implement a browser wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete. |
| | | In addition, the combination of Nguyen '498 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious. Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 teaches a temporary graphic element that disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete (see analysis of Vaughton '744 in claim chart; see also Jaaskelainen at Col. 4, ll. 31-34 ("Icon 20 shown in FIG. 2U is displayed to the user momentarily to indicate completion of the task, and then the border is removed, thereby causing icon 20 to disappear from display 12."; Cleron '843 at Col. 16, ll. 50-55 ("When a process has been completed and a page of information is being displayed, the status and progress banner 750, the process display 752 and the stop button 754 are eliminated from the display because they no longer provide any useful information.") and it would be obvious to one of skill in the art to modify Nguyen '498 with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system including a status indicator of the download progress), address the same problem (indicating the downloading progress within the content viewing area), disclose the same or similar techniques for superimposing a download status indicator over the content, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references |

33

| U.S. Patent 6,339,780 | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device |
|---|---|
| | because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 40.5 in the content-loading mode, the hypermedia browser loads content, displays such content in the content viewing area as it loads, and displays a "load status" graphic element over the content view area obstructing part of the content displayed in the content viewing area, wherein presence of such "load status" graphic element indicates that the browser is in the content-loading mode; and | "The page client 130 presents the preloading state using a preloading indicator 153. To indicate the progress of the "in progress" preloading stage, the preloading indicator 153 comprises a first part 154 having a first display color or pattern and a second part 153 having a second display color or pattern; the shape or size of the first part 154 relative to the second part 155 is used to indicate the progress of the "in progress" preloading stage.  In a first preferred embodiment, the preloading indicator 153 comprises a dot or other shape which is superposed on the primary page 140." Col. 4, ll. 65-67 to Col. 5, ll. 1-8. |
| 40.6 wherein content comprises data for presentation which is from a source external to the browser. | Content is provided by a page server external to the browser. *See* Col. 2, ll. 45-47; *see also* FIG. 1. |

| U.S. Patent 6,339,780 | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843'") and/or various systems implementing a web browser on a mobile device |
|---|---|
| |  |
| 41 | A hypermedia browser of claim 40, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language. | "The page server 110 is disposed for generating and responding to messages in a protocol for presenting web pages to the page client 130.  The protocol is preferably the Hypertext Transfer Protocol ("HTTP"), but the concepts of the invention are broad enough to apply to other protocols for transferring and presenting information, including protocols known as "FSP", "FTP", "Gopher", and variants thereof, protocols for access to a command interface such as "Telnet", "MUD", "MUSH", "MOO", and variants thereof, other protocols for accessing, transmitting, or presenting information, and programs making use of such protocols, such as "Archie", "Veronica", "Jughead", and the like." Col. 2, ll. 45-56.

"In a preferred embodiment, preferred process steps and data structures for the page |

35

| U.S. Patent 6,339,780 | | |
|---|---|---|
| | | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device client 130 are specified in the "Java" computer language." Col. 3, ll. 13-15.<br><br>"A primary page 140 presented on the output element 134 comprises information for presentation to an operator.  The information may be visual information (in the form of text, graphics, or motion picture data), may be audio information, or may be information in another format.  There are several formats for information available via web pages which are known in the art of networking." Col. 3, ll. 44-50.<br><br>"Links 150 are embedded in pages 140 using a set of HTML tags, or by other techniques for identifying other pages 140 which may be presented.  Links 150 are themselves presented to the operator as text elements 151 or as graphic elements 152.  Links 150 may be identified by the page client 130 by special forms of display, for example by displaying text in a different color or typeface from text elements 151 or as graphic elements 152 which are not associated with links 150." Col. 4, ll. 17-25.<br><br>Nguyen '498 additionally cites several Java references, e.g., Tessier, Tom. "Using Java Script to Create Interactive Web Pages"; Dr. Dobbs Journal on CDROM Mar. 1996; and Stephen R. Davis.  "Teach Yourself Java Programming the Quick and Easy Way with Microsoft Visual: Learn Java Now".  Microsoft Press.  3 0402 00136 8093. |
| 42 | A hypermedia browser of claim 40, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash, scripting language for the world wide web. | "The page server 110 is disposed for generating and responding to messages in a protocol for presenting web pages to the page client 130.  The protocol is preferably the Hypertext Transfer Protocol ("HTTP"), but the concepts of the invention are broad enough to apply to other protocols for transferring and presenting information, including protocols known as "FSP", "FTP", "Gopher", and variants thereof, protocols for access to a command interface such as "Telnet", "MUD", "MUSH", "MOO", and variants thereof, other protocols for accessing, transmitting, or presenting information, and programs making use of such protocols, such as "Archie", "Veronica", "Jughead", and the like." Col. 2, ll. 45-56.<br><br>"In a preferred embodiment, preferred process steps and data structures for the page |

36

| U.S. Patent 6,339,780 | U.S. Patent 6,584,498 ("Nguyen '498") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,377,978 ("Nguyen '978") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
|---|---|
| | client 130 are specified in the "Java" computer language." Col. 3, ll. 13-15. |
| | "A primary page 140 presented on the output element 134 comprises information for presentation to an operator.  The information may be visual information (in the form of text, graphics, or motion picture data), may be audio information, or may be information in another format.  There are several formats for information available via web pages which are known in the art of networking." Col. 3, ll. 44-50. |
| | "Links 150 are embedded in pages 140 using a set of HTML tags, or by other techniques for identifying other pages 140 which may be presented.  Links 150 are themselves presented to the operator as text elements 151 or as graphic elements 152.  Links 150 may be identified by the page client 130 by special forms of display, for example by displaying text in a different color or typeface from text elements 151 or as graphic elements 152 which are not associated with links 150." Col. 4, ll. 17-25. |
| | Nguyen '498 additionally cites several Java references, e.g., Tessier, Tom, "Using Java Script to Create Interactive Web Pages", Dr. Dobbs Journal on CDROM Mar. 1996; and Stephen R. Davis.  "Teach Yourself Java Programming the Quick and Easy Way with Microsoft Visual: Learn Java Now".  Microsoft Press.  3 0402 00136 8093. |

37

# EXHIBIT E

Exemplar Chart of U.S. Patent 6,339,780

**U.S. Patent 6,377,978 ("Nguyen '978")[1]
Claims 1-6, 9-14, 17, 18, 20, 21 and 32-42**

| Claim | U.S. Patent 6,339,780 | |
|---|---|---|
| 1 | A hypermedia browser embodied on a computer-readable medium for execution on an information processing device having a limited display area, | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device |
| | | "The invention provides a method and system for dynamic downloading of hypertext electronic mail messages.  The system includes a mail server for receiving electronic mail messages and their headers, and a mail client for downloading electronic mail messages and their headers from the mail receiver and presenting downloaded electronic mail messages and headers to an operator." Col. 2, ll. 25-30. |
| | | "In a first preferred embodiment, the mail client 130 comprises an input element 133 and a display element 134.  The input element 133 comprises a keyboard and a pointing device such as a mouse or trackball.  The display element 134 comprises a visual display element such as a monitor or a display panel[.]" Col. 3, ll. 44-50. |
| | | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to access hypermedia email in a browser.  For example, Nguyen |

_____

NOTE: Motorola applies the prior art in light of Microsoft's improper assertions of infringement and improper application of the claims.  Motorola does not agree with Microsoft's application of the claims, or that the claims satisfy 35 U.S.C. § 112.  Motorola's contentions herein are not, and should in no way be taken as, admissions or adoptions as to any particular claim scope or construction, or as any admission that any particular element is met in any particular way.  Motorola objects to any attempt to imply claim construction from the foregoing chart.  Motorola's prior art invalidity contentions are made in a variety of alternatives and do not represent Motorola's agreement or view as to the meaning, definiteness, written description support for, or enablement of any claim contained therein.

[1] "Dynamic Loading of Hypertext Electronic Mail Messages" issued to Nguyen; filed September 13, 1996; issued April 23, 2002.  In the specification, the patentee expressly incorporates his copending application (08/712,586), which later issued as U.S. Patent No. 6,584,498.

[2] "Dynamic Progress Marking Icon" issued to Jaaskelainen; filed July 16, 1992; issued April 5, 1994.

[3] "Replaceable and Extensible Navigator Component of a Network Component System" issued to Cleron et al.; filed February 27, 1997; issued May 25, 1999.

| Claim | U.S. Patent 6,339,780 |
|---|---|
| | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device |
| | '498, which is incorporated into Nguyen '978 discloses a web browser. |
| | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser on an information processing device having a limited display area. |
| | In addition, the combination of Nguyen '978 and one or more one or more references describing handheld devices with browsers renders this claim obvious. Gessler[4], Cooper[5], Bartlett[6], Watson[7], Kamba[8], and Lauff[9] each teach a hypermedia browser embodied on a computer-readable medium for execution on an information processing device having a limited display area (e.g., a PDA, handheld, mobile device, etc.), and it would be obvious to one of skill in the art to modify Nguyen '978 with these teachings.[10]  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system).  Additionally, Bartlett cites Gessler and Cooper cites Gessler and Bartlett.  Moreover, all of theses references are from the |

---

[4] S. Gessler and A. Kotulla. PDAs as Mobile WWW Browsers. Computer Networks and ISDN Systems 28 (1995) 53-59 ("Gessler") (see pgs. 53 and 56-58).

[5] I. Cooper and R. Shufflebotham. PDAWeb Browsers: Implementation Issues. (University of Kent at Canterbury, November 9, 1995) ("Cooper") (see pgs. 3 and 5).

[6] J. Bartlett. Experience with a Wireless World Wide Web Client. IEEE COMPCON 95 (San Francisco, March 1995) ("Bartlett") (see pgs. 1, 4 and 5).

[7] T. Watson. "Application Design for Wireless Computing" (1994 Mobile Computing Systems and Applications Workshop Position Paper (August 1994)).

[8] T. Kamba, S. A. Elson, T. Harpold, T. Stamper, and P. Sukaviriya. (1996).  "Using small screen space more efficiently."

[9] M. Lauff and W. Gellerson. Multimedia Client Implementation on Personal Digital Assistants. TecO.

[10] Motorola continues to investigate other browsers that were in existence prior to the priority date of the '780 patent (e.g., NetHopper, Newt's Cape, PocketWeb and Vogon).

2

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348") and/or U.S. Patent 5,907,843 ("Cleron '843") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 1.1 | wherein the hypermedia browser has a content viewing area for viewing content and is configured to display a temporary graphic element over the content viewing area during times when the browser is loading content, | "As the mail client 130 downloads the electronic mail message 140, it presents as much as possible of the electronic mail message 140 (such as a first page 143 of the electronic mail message 140) to the operator for dynamic review while the downloading operation is in progress." Col. 5, l. 65 - Col. 6, l. 2.

"The mail client 130 presents the progress of downloading operations using a progress indicator 151, in like manner as the page client presents the progress of preloading operations for web pages." Col. 6, ll. 18-19.  See Fig. 1.

Nguyen '498 discloses that "[i]n a first preferred embodiment, the preloading indicator 153 comprises a dot or other shape which is superposed on the primary page 140." Col. 5, ll. 6-8.

To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to display a temporary graphic element over the content viewing area during times when the browser is loading content.  Placement of the temporary graphic element is a matter of design choice. |
| 1.2 | wherein the temporary graphic element is positioned over the content viewing area to obstruct only part of the content in the content viewing area, | "The mail client 130 presents the progress of downloading operations using a progress indicator 151, in like manner as the page client presents the progress of preloading operations for web pages." Col. 6, ll. 18-19.  See Fig. 1.

Nguyen '498 discloses that "[t]he page client 130 presents the preloading state using a preloading indicator 153.  To indicate the progress of the "in progress" preloading stage, the preloading indicator 153 comprises a first part 154 having a first display color or pattern and a second part 153 having a second display color or pattern; the shape or size of the first part 154 relative to the second part 155 is used to indicate the progress of the "in progress" preloading stage.  In a first preferred embodiment, the preloading indicator 153 comprises a dot or other shape which is superposed on the |

3

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348") and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | primary page 140." Col. 4, ll. 65-67 to Col. 5, ll. 1-8. |
| 1.3 | wherein the temporary graphic element is not content and wherein content comprises data for presentation which is from a source external to the browser. | "The progress indicator 151 may include a text element or a graphics element, having a first part 153 and a second part 154, each having different colors, and altering the relative sizes of the first part 151 and the second part 152 as the download operation progresses.  In this embodiment, the graphics element comprises a separate dot or small circle 155 associated with the header 141; or, the text element comprises the presentation of header 141 itself.

The progress indicator 151 may include a text element 156 or a graphics element shown outside the header window 151.  In this embodiment, the text element 156 comprises a phrase such as "75% complete" for a downloading operation which was in fact 75% complete; the graphics element may comprise a thermometer graph representing the progress of the downloading operation." Col. 6, ll. 25-41.

"The mail client 130 receives headers 141 from the mail server 110 and presents those headers 141 in the header window 151 to the operator." Col. 5, ll. 21-23.

"Responsive to the headers 141, the mail client 130 selects individual electronic mail messages 140 and transmits requests to the mail server 110 to download those individual electronic mail messages 140." Col. 5, ll. 24-27. |
| 2 | A hypermedia browser as recited in claim 1, wherein the browser is configured to display the temporary graphic element over the content viewing area only during times when the browser is loading visible content. | "The mail client 130 presents the progress of downloading operations using a progress indicator 151, in like manner as the page client presents the progress of preloading operations for web pages." Col. 6, ll. 18-19.  See Fig. 1.

"The progress indicator 151 may include a text element or a graphics element, having a first part 153 and a second part 154, each having different colors, and altering the relative sizes of the first part 151 and the second part 152 as the download operation progresses.  In this embodiment, the graphics element comprises a separate dot or small circle 155 associated with the header 141; or, the text element comprises the presentation of header 141 itself.

The progress indicator 151 may include a text element 156 or a graphics element |

4

| Claim | |
|---|---|
| U.S. Patent 6,339,780 | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device

shown outside the header window 151. In this embodiment, the text element 156 comprises a phrase such as "75% complete" for a downloading operation which was in fact 75% complete; the graphics element may comprise a thermometer graph representing the progress of the downloading operation." Col. 6, ll. 25-41.

To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein the progress indicator disappears when the downloading operation is complete to indicate to a user that such downloading of content is complete. Nguyen '978 discloses that mail client 130 presents the progress of downloading operations using a progress indicator 151, in like manner as the page client presents the progress of preloading operations for web pages. Based on this, one of skill in the art would have been motivated to implement a browser wherein the progress indicator disappears when the downloading operation is complete to indicate to a user that such downloading of content is complete.

In addition, the combination of Nguyen '978 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious. Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 teaches a temporary graphic element that disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete (see analysis of Vaughton '744 in claim chart; see also Jaaskelainen at Col. 4, ll. 31-34 ("Icon 20 shown in FIG. 2U is displayed to the user momentarily to indicate completion of the task, and then the border is removed, thereby causing icon 20 to disappear from display 12."; Cleron '843 at Col. 16, ll. 50-55 ("When a process has been completed and a page of information is being displayed, the status and progress banner 750, the process display 752 and the stop button 754 are eliminated from the display because they no longer provide any useful information.") and it would be obvious to one of skill in the art to modify Nguyen '498 with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system including a status indicator of the download progress), address the same problem (indicating the downloading progress |

| Claim | U.S. Patent 6,339,780 | |
|---|---|---|
| | | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device within the content viewing area), disclose the same or similar techniques for superimposing a download status indicator over the content, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 3 | A hypermedia browser as recited in claim 1, wherein the temporary graphic element indicates to a user that the browser is loading content. | "The mail client 130 presents the progress of downloading operations using a progress indicator 151, in like manner as the page client presents the progress of preloading operations for web pages." Col. 6, ll. 18-19.  See Fig. 1. |
| 4 | A hypermedia browser as recited in claim 1, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete. | "The mail client 130 presents the progress of downloading operations using a progress indicator 151, in like manner as the page client presents the progress of preloading operations for web pages." Col. 6, ll. 18-19.  See Fig. 1.<br><br>"The progress indicator 151 may include a text element or a graphics element, having a first part 153 and a second part 154, each having different colors, and altering the relative sizes of the first part 151 and the second part 152 as the download operation progresses.  In this embodiment, the graphics element comprises a separate dot or small circle 155 associated with the header 141; or, the text element comprises the presentation of header 141 itself.<br><br>The progress indicator 151 may include a text element 156 or a graphics element shown outside the header window 151.  In this embodiment, the text element 156 comprises a phrase such as "75% complete" for a downloading operation which was in fact 75% complete; the graphics element may comprise a thermometer graph representing the progress of the downloading operation." Col. 6, ll. 25-41.<br><br>To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein the progress indicator disappears when the downloading operation is complete to indicate to a user that such |

6

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")¹ and/or U.S. Patent 5,907,843 ("Cleron '843"³) and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | downloading of content is complete. Nguyen '978 discloses that mail client 130 presents the progress of downloading operations using a progress indicator 151, in like manner as the page client presents the progress of preloading operations for web pages. Based on this, one of skill in the art would have been motivated to implement a browser wherein the progress indicator disappears when the downloading operation is complete to indicate to a user that such downloading of content is complete. |
| | | In addition, the combination of Nguyen '978 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious. Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 teaches a temporary graphic element that disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete (see analysis of Vaughton '744 in claim chart; see also Jaaskelainen at Col. 4, ll. 31-34 ("Icon 20 shown in FIG. 2U is displayed to the user momentarily to indicate completion of the task, and then the border is removed, thereby causing icon 20 to disappear from display 12."; Cleron '843 at Col. 16, ll. 50-55 ("When a process has been completed and a page of information is being displayed, the status and progress banner 750, the process display 752 and the stop button 754 are eliminated from the display because they no longer provide any useful information.") and it would be obvious to one of skill in the art to modify Nguyen '4978 with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system including a status indicator of the download progress), address the same problem (indicating the downloading progress within the content viewing area), disclose the same or similar techniques for superimposing a download status indicator over the content, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 5 | A hypermedia browser as recited in | "The progress indicator 151 may include a text element or a graphics element, having |

7

635

| Claim | U.S. Patent 6,339,780 | |
|---|---|---|
| | claim 1, wherein the temporary graphic element is animated. | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device<br><br>a first part 153 and a second part 154, each having different colors, and altering the relative sizes of the first part 151 and the second part 152 as the download operation progresses. In this embodiment, the graphics element comprises a separate dot or small circle 155 associated with the header 141; or, the text element comprises the presentation of header 141 itself." Col. 6, ll. 25-33. |
| 6 | A hypermedia browser as recited in claim 1, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area. | See Fig. 1.<br><br>In addition, the combination of Nguyen '978 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious. Vaughton '744 indicates, e.g., that "the window(s) of the second task may about the edge of the window(s) of the first task—the windows may be "clipped together" at their edge." Vaughton '744 at Col. 2, l. 63 - Col. 3, l. 3. Jaaskelainen '348 indicates, e.g., that "[i]n the preferred embodiment, icon 20 is displayed in the lower right hand corner or display 12 (FIG. 1), and remains in the same location for the duration of the task. Of course, icon 20 could be displayed in a different location of display 12 or move from location to location as the task progresses." Jaaskelainen '348 at Col. 4, ll. 7-13. Cleron '843 indicates, e.g., that progress banner 750 may appear in the lower right corner of the display. Cleron '843 at FIG. 8A. It would be obvious to one of skill in the art to modify Nguyen '978 with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and disclose the same or similar techniques. Moreover, theses references are from the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 9 | A hypermedia browser as recited in claim 1, wherein the temporary graphic element conveys status information of the browser. | "The mail client 130 presents the progress of downloading operations using a progress indicator 151, in like manner as the page client presents the progress of preloading operations for web pages." Col. 6, ll. 18-19. See Fig. 1. |

636

8

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| 10 | A hypermedia browser of claim 1, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language. | "For example, it is often desirable to transmit information organized as hypertext, such as information presented using HTML (hypertext markup language) or related description languages, and capable of being transmitted using the HTTP (hypertext transfer protocol) or related protocols." Col. 1, l. 66 - Col. 2, l. 4.

"In preferred embodiments, the mail server and the mail client cooperate dynamically and interactively to download, so as to present to the operator, electronic mail messages, or portions thereof, linked by hypertext links and possibly including data, audiovisual material, included programs, security features, or other features in addition to text." Col. 2, ll. 36-43.

"The mail client 130 similarly comprises a processor 131 and client storage 132, with the processor 111 comprising a general purpose processor having a computing element, program and data memory.  In a preferred embodiment, preferred process steps and data structures for the page client 130 are specified in the "Java" computer language." Col. 3, ll. 34-36.

"In a preferred embodiment, each electronic mail message 140 may comprise links to actual web pages (i.e., web pages outside the collection of pages 143 comprising the electronic mail message 140 itself) stored at a web server or other server for accessing information.  These actual web pages are accessed using the Hypertext Transfer Protocol ("HTTP"), or other protocols for transferring and presenting information, including protocols known as "FSP", "FTP", "Gopher", and variants thereof, protocols for access to a command interface such as "Telnet", "MUD", "MUSH", "MOO", and variants thereof, other protocols for accessing, transmitting, or presenting information, and programs making use of such protocols, such as "Archie", "Veronica", "Jughead", and the like." Col. 4, ll. 25-39.

"It is one aspect of the invention that electronic mail messages 140 are presented to the operator in like manner as web pages are presented in the "Dynamic Preloading of Web Pages" co-pending application referred to herein." Col. 4, ll. 59-62. |

| Claim | U.S. Patent 6,339,780 | |
|---|---|---|
| | | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348") and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
| | | Nguyen '498 additionally cites the following Java reference: Tessier, Tom, "Using Java Script to Create Interactive Web Pages", Dr. Dobbs Journal on CDROM Mar. 1996. |
| 11 | A hypermedia browser of claim 1, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash, scripting language for the world wide web. | "For example, it is often desirable to transmit information organized as hypertext, such as information presented using HTML (hypertext markup language) or related description languages, and capable of being transmitted using the HTTP (hypertext transfer protocol) or related protocols." Col. 1, l. 66 - Col. 2, l. 4.

"In preferred embodiments, the mail server and the mail client cooperate dynamically and interactively to download, so as to present to the operator, electronic mail messages, or portions thereof, linked by hypertext links and possibly including data, audiovisual material, included programs, security features, or other features in addition to text." Col. 2, ll. 36-43.

"The mail client 130 similarly comprises a processor 131 and client storage 132, with the processor 111 comprising a general purpose processor having a computing element, program and data memory.  In a preferred embodiment, preferred process steps and data structures for the page client 130 are specified in the "Java" computer language." Col. 3, ll. 34-36.

"In a preferred embodiment, each electronic mail message 140 may comprise links to actual web pages (i.e., web pages outside the collection of pages 143 comprising the electronic mail message 140 itself) stored at a web server or other server for accessing information.  These actual web pages are accessed using the Hypertext Transfer Protocol ("HTTP"), or other protocols for transferring and presenting information, including protocols known as "FSP", "FTP", "Gopher", and variants thereof, protocols for access to a command interface such as "Telnet", "MUD", "MUSH", "MOO", and variants thereof, other protocols for accessing, transmitting, or presenting information, and programs making use of such protocols, such as "Archie", "Veronica", "Jughead", and the like." Col. 4, ll. 25-39.

"It is one aspect of the invention that electronic mail messages 140 are presented to |

10

638

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | the operator in like manner as web pages are presented in the "Dynamic Preloading of Web Pages" co-pending application referred to herein." Col. 4, ll. 59-62.<br><br>Nguyen '498 additionally cites the following Java reference:  Tessier, Tom, "Using Java Script to Create Interactive Web Pages", Dr. Dobbs Journal on CDROM Mar. 1996. |
| 12 | An information processing device comprising; | "The invention provides a method and system for dynamic downloading of hypertext electronic mail messages.  The system includes a mail server for receiving electronic mail messages and their headers, and a mail client for downloading electronic mail messages and their headers from the mail receiver and presenting downloaded electronic mail messages and headers to an operator." Col. 2, ll. 25-31.<br><br>"In the following description, a preferred embodiment of the invention is described with regard to preferred process steps and data structures.  However, those skilled in the art would recognize, after perusal of this application, that embodiments of the invention may be implemented using a general purpose processor, and that modification of a general purpose processor to implement the process steps and data structures described herein would not require undue invention." Col. 2, ll. 63-67. |
| 12.1 | a processor; | "In the following description, a preferred embodiment of the invention is described with regard to preferred process steps and data structures.  However, those skilled in the art would recognize, after perusal of this application, that embodiments of the invention may be implemented using a general purpose processor, and that modification of a general purpose processor to implement the process steps and data structures described herein would not require undue invention." Col. 2, ll. 63-67. |
| 12.2 | a display; | "In a first preferred embodiment, the mail client 130 comprises an input element 133 and a display element 134.  The input element 133 comprises a keyboard and a pointing device such as a mouse or trackball.  The display element 134 comprises a visual display element such as a monitor or a display panel, and an audio display element such as a speaker." Col 3, ll. 44-50. |
| 12.3 | a hypermedia browser executing on the | "As the mail client 130 downloads the electronic mail message 140, it presents as |

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | processor to load and display content in a content viewing area on the display; wherein the hypermedia browser has a content viewing area for viewing content and wherein the hypermedia browser displays a temporary graphic element over the content viewing area during times when the browser is loading visible content; | much as possible of the electronic mail message 140 (such as a first page 143 of the electronic mail message 140) to the operator for dynamic review while the downloading operation is in progress." Col. 5, l. 65 - Col. 6, l. 2.<br><br>"The mail client 130 presents the progress of downloading operations using a progress indicator 151, in like manner as the page client presents the progress of preloading operations for web pages." Col. 6, ll. 18-19.  See Fig. 1.<br><br>"When the operator selects a particular electronic mail message 140 for presentation, the mail client 130 determines if that particular electronic mail message 140 has been downloaded and is present in the client storage 132.  If so, the mail client 130 presents that particular electronic mail message 140 from the client storage 132.  If not, the mail client 130 transmits a request to the mail server 110 to download the newly selected electronic mail message 140, downloads the newly selected electronic mail message 140, and presents the newly selected electronic mail message 140 to the operator in the page window 152." Col. 6, ll. 41-52.<br><br>Nguyen '498 discloses that "[i]n a first preferred embodiment, the preloading indicator 153 comprises a dot or other shape which is superposed on the primary page 140." Col. 5, ll. 6-8.<br><br>To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to display a temporary graphic element over the content viewing area during times when the browser is loading visible content.  Placement of the temporary graphic element is a matter of design choice.<br><br>To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to access hypermedia email in a browser.  For example, Nguyen '498, which is incorporated into Nguyen '978 discloses a web browser. |
| 12.4 | wherein the temporary graphic element is positioned only over a portion of the content viewing area and obstructs only part of the visible content in the content | "The mail client 130 presents the progress of downloading operations using a progress indicator 151, in like manner as the page client presents the progress of preloading operations for web pages." Col. 6, ll. 18-19.  See Fig. 1. |

12

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | viewing area; and | Nguyen '498 discloses that "[t]he page client 130 presents the preloading state using a preloading indicator 153. To indicate the progress of the "in progress" preloading stage, the preloading indicator 153 comprises a first part 154 having a first display color or pattern and a second part 153 having a second display color or pattern; the shape or size of the first part 154 relative to the second part 155 is used to indicate the progress of the "in progress" preloading stage. In a first preferred embodiment, the preloading indicator 153 comprises a dot or other shape which is superposed on the primary page 140." Col. 4, ll. 65-67 to Col. 5, ll. 1-8. |
| 12.5 | wherein the temporary graphic element indicates to a user that the browser is loading content and content comprises data for presentation which is from a source external to the browser. | "The mail client 130 presents the progress of downloading operations using a progress indicator 151, in like manner as the page client presents the progress of preloading operations for web pages." Col. 6, ll. 18-19. See Fig. 1.

"The progress indicator 151 may include a text element or a graphics element, having a first part 153 and a second part 154, each having different colors, and altering the relative sizes of the first part 151 and the second part 152 as the download operation progresses. In this embodiment, the graphics element comprises a separate dot or small circle 155 associated with the header 141; or, the text element comprises the presentation of header 141 itself.

The progress indicator 151 may include a text element 156 or a graphics element shown outside the header window 151. In this embodiment, the text element 156 comprises a phrase such as "75% complete" for a downloading operation which was in fact 75% complete; the graphics element may comprise a thermometer graph representing the progress of the downloading operation." Col. 6, ll. 25-41.

"The mail client 130 receives headers 141 from the mail server 110 and presents those headers 141 in the header window 151 to the operator." Col. 5, ll. 21-23.

"Responsive to the headers 141, the mail client 130 selects individual electronic mail messages 140 and transmits requests to the mail server 110 to download those individual electronic mail messages 140." Col. 5, ll. 24-27. |
| 13 | An information processing device as | "The progress indicator 151 may include a text element or a graphics element, having |

641

13

| Claim | U.S. Patent 6,339,780 |
|---|---|
|  | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
| recited in claim 12, wherein the temporary graphic element is animated. | a first part 153 and a second part 154, each having different colors, and altering the relative sizes of the first part 151 and the second part 152 as the download operation progresses. In this embodiment, the graphics element comprises a separate dot or small circle 155 associated with the header 141; or, the text element comprises the presentation of header 141 itself." Col. 6, ll. 25-33. |
| 14  An information processing device as recited in claim 12, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area. | See Fig. 1.<br><br>In addition, the combination of Nguyen '978 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious. Vaughton '744 indicates, e.g., that "the window(s) of the second task may be "clipped together" at their edge." Vaughton '744 at Col. 2, l. 63 – Col. 3, l. 3. Jaaskelainen '348 indicates, e.g., that "[i]n the preferred embodiment, icon 20 is displayed in the lower right hand corner or display 12 (FIG. 1), and remains in the same location for the duration of the task. Of course, icon 20 could be displayed in a different location of display 12 or move from location to location as the task progresses." Jaaskelainen '348 at Col. 4, ll. 7-13. Cleron '843 indicates, e.g., that progress banner 750 may appear in the lower right corner of the display. Cleron '843 at FIG. 8A. It would be obvious to one of skill in the art to modify Nguyen '978 with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and disclose the same or similar techniques. Moreover, theses references are from the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 17  A hypermedia browser of claim 12, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a | "For example, it is often desirable to transmit information organized as hypertext, such as information presented using HTML (hypertext markup language) or related description languages, and capable of being transmitted using the HTTP (hypertext |

14

| Claim | U.S. Patent 6,339,780 |
|---|---|
| markup language, visible text of such a markup language, and visible results of a scripting language. | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
| | transfer protocol) or related protocols." Col. 1, l. 66 - Col. 2, l. 4. |
| | "In preferred embodiments, the mail server and the mail client cooperate dynamically and interactively to download, so as to present to the operator, electronic mail messages, or portions thereof, linked by hypertext links and possibly including data, audiovisual material, included programs, security features, or other features in addition to text." Col. 2, ll. 36-43. |
| | "The mail client 130 similarly comprises a processor 131 and client storage 132, with the processor 111 comprising a general purpose processor having a computing element, program and data memory.  In a preferred embodiment, preferred process steps and data structures for the page client 130 are specified in the "Java" computer language." Col. 3, ll. 34-36. |
| | "In a preferred embodiment, each electronic mail message 140 may comprise links to actual web pages (i.e., web pages outside the collection of pages 143 comprising the electronic mail message 140 itself) stored at a web server or other server for accessing information.  These actual web pages are accessed using the Hypertext Transfer Protocol ("HTTP"), or other protocols for transferring and presenting information, including protocols known as "FSP", "FTP", "Gopher", and variants thereof, protocols for access to a command interface such as "Telnet", "MUD", "MUSH", "MOO", and variants thereof, other protocols for accessing, transmitting, or presenting information, and programs making use of such protocols, such as "Archie", "Veronica", "Jughead", and the like." Col. 4, ll. 25-39. |
| | "It is one aspect of the invention that electronic mail messages 140 are presented to the operator in like manner as web pages are presented in the "Dynamic Preloading of Web Pages" co-pending application referred to herein." Col. 4, ll. 59-62. |
| | Nguyen '498 additionally cites the following Java reference: Tessier, Tom, "Using Java Script to Create Interactive Web Pages", Dr. Dobbs Journal on CDROM Mar. 1996. |
| 18 | A hypermedia browser of claim 12, |
| | "For example, it is often desirable to transmit information organized as hypertext, |

15

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348") and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web. | such as information presented using HTML (hypertext markup language) or related description languages, and capable of being transmitted using the HTTP (hypertext transfer protocol) or related protocols." Col. 1, l. 66 - Col. 2, l. 4. |
| | | "In preferred embodiments, the mail server and the mail client cooperate dynamically and interactively to download, so as to present to the operator, electronic mail messages, or portions thereof, linked by hypertext links and possibly including data, audiovisual material, included programs, security features, or other features in addition to text." Col. 2, ll. 36-43. |
| | | "The mail client 130 similarly comprises a processor 131 and client storage 132, with the processor 111 comprising a general purpose processor having a computing element, program and data memory.  In a preferred embodiment, preferred process steps and data structures for the page client 130 are specified in the "Java" computer language." Col. 3, ll. 34-36. |
| | | "In a preferred embodiment, each electronic mail message 140 may comprise links to actual web pages (i.e., web pages outside the collection of pages 143 comprising the electronic mail message 140 itself) stored at a web server or other server for accessing information.  These actual web pages are accessed using the Hypertext Transfer Protocol ("HTTP"), or other protocols for transferring and presenting information, including protocols known as "FSP", "FTP", "Gopher", and variants thereof, protocols for access to a command interface such as "Telnet", "MUD", "MUSH", "MOO", and variants thereof, other protocols for accessing, transmitting, or presenting information, and programs making use of such protocols, such as "Archie", "Veronica", "Jughead", and the like." Col. 4, ll. 25-39. |
| | | "It is one aspect of the invention that electronic mail messages 140 are presented to the operator in like manner as web pages are presented in the "Dynamic Preloading of Web Pages" co-pending application referred to herein." Col. 4, ll. 59-62. |
| | | Nguyen '498 additionally cites the following Java reference:  Tessier, Tom, "Using Java Script to Create Interactive Web Pages", Dr. Dobbs Journal on CDROM Mar. |

16

644

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348") and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
| --- | --- | --- |
| | | 1996. |
| 20 | An information processing device as recited in claim 12, wherein the temporary graphic element is not content. | "The progress indicator 151 may include a text element or a graphics element, having a first part 153 and a second part 154, each having different colors, and altering the relative sizes of the first part 151 and the second part 152 as the download operation progresses. In this embodiment, the graphics element comprises a separate dot or small circle 155 associated with the header 141; or, the text element comprises the presentation of header 141 itself.<br><br>The progress indicator 151 may include a text element 156 or a graphics element shown outside the header window 151. In this embodiment, the text element 156 comprises a phrase such as "75% complete" for a downloading operation which was in fact 75% complete; the graphics element may comprise a thermometer graph representing the progress of the downloading operation." Col. 6, ll. 25-41.<br><br>"The mail client 130 receives headers 141 from the mail server 110 and presents those headers 141 in the header window 151 to the operator." Col. 5, ll. 21-23.<br><br>"Responsive to the headers 141, the mail client 130 selects individual electronic mail messages 140 and transmits requests to the mail server 110 to download those individual electronic mail messages 140." Col. 5, ll. 24-27. |
| 21 | An information processing device as recited in claim 12, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete. | "The mail client 130 presents the progress of downloading operations using a progress indicator 151, in like manner as the page client presents the progress of preloading operations for web pages." Col. 6, ll. 18-19. See Fig. 1.<br><br>"The progress indicator 151 may include a text element or a graphics element, having a first part 153 and a second part 154, each having different colors, and altering the relative sizes of the first part 151 and the second part 152 as the download operation progresses. In this embodiment, the graphics element comprises a separate dot or small circle 155 associated with the header 141; or, the text element comprises the presentation of header 141 itself.<br><br>The progress indicator 151 may include a text element 156 or a graphics element |

17

645

| Claim | |
|---|---|
| U.S. Patent 6,339,780 | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |

shown outside the header window 151. In this embodiment, the text element 156 comprises a phrase such as "75% complete" for a downloading operation which was in fact 75% complete; the graphics element may comprise a thermometer graph representing the progress of the downloading operation." Col. 6, ll. 25-41.

To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein the progress indicator disappears when the downloading operation is complete to indicate to a user that such downloading of content is complete. Nguyen '978 discloses that mail client 130 presents the progress of downloading operations using a progress indicator 151, in like manner as the page client presents the progress of preloading operations for web pages. Based on this, one of skill in the art would have been motivated to implement a browser wherein the progress indicator disappears when the downloading operation is complete to indicate to a user that such downloading of content is complete.

In addition, the combination of Nguyen '978 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious. Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 teaches a temporary graphic element that disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete (see analysis of Vaughton '744 in claim chart; see also Jaaskelainen at Col. 4, ll. 31-34 ("Icon 20 shown in FIG. 2U is displayed to the user momentarily to indicate completion of the task, and then the border is removed, thereby causing icon 20 to disappear from display 12."; Cleron '843 at Col. 16, ll. 50-55 ("When a process has been completed and a page of information is being displayed, the status and progress banner 750, the process display 752 and the stop button 754 are eliminated from the display because they no longer provide any useful information.")) and it would be obvious to one of skill in the art to modify Nguyen '978 with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system including a status indicator of the download progress), address the same problem (indicating the downloading

| Claim | U.S. Patent 6,339,780 | |
|---|---|---|
| | | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348") and/or U.S. Patent 5,907,843 ("Cleron '843"') and/or various systems implementing a web browser on a mobile device |
| | | progress within the content viewing area), disclose the same or similar techniques for superimposing a download status indicator over the content, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 32 | A method of indicating a content "load status" of a hypermedia browser having a content viewing area for viewing content, the method comprising: | "The mail client 130 presents the progress of downloading operations using a progress indicator 151, in like manner as the page client presents the progress of preloading operations for web pages." Col. 6, ll. 18-19.  See Fig. 1.<br><br>To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to access hypermedia email in a browser.  For example, Nguyen '498, which is incorporated into Nguyen '978 discloses a web browser. |
| 32.1 | displaying loaded content within the content viewing area of a screen of a hypermedia browser, the screen being without a "load status" graphic element, wherein a "load status" graphic element indicates a current content load status of the hypermedia browser; | "As the mail client 130 downloads the electronic mail message 140, it presents as much as possible of the electronic mail message 140 (such as a first page 143 of the electronic mail message 140) to the operator for dynamic review while the downloading operation is in progress." Col. 5, l. 65 - Col. 6, l. 2.<br><br>"The mail client 130 presents the progress of downloading operations using a progress indicator 151, in like manner as the page client presents the progress of preloading operations for web pages." Col. 6, ll. 18-19.  See Fig. 1. |
| 32.2 | receiving an instruction to load new content into the content viewing area; | "It is one aspect of the invention that electronic mail messages 140 are presented to the operator in like manner as web pages are presented in the "Dynamic Preloading of Web Pages" co-pending application referred to herein.  In this aspect, the header window 151 is treated similarly to a web page in which each header 141 is treated similarly to a link to a first page 143 of its associated body 142." Col. 4, ll. 59-65.<br><br>"Thus, the operator may select one of the headers 141 so as to view its associated body 142, to which the mail client 130 responds by downloading that body 142 and |

19

647

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ |
|---|---|---|
| | | presenting a first page 143 of that body 142." Col. 4, l. 66 - col. 5, l. 2. |
| 32.3 | loading such new content into the content viewing area; and | "Thus, the operator may select one of the headers 141 so as to view its associated body 142, to which the mail client 130 responds by downloading that body 142 and presenting a first page 143 of that body 142." Col. 4, l. 66 - col. 5, l. 2. |
| 32.4 | while loading, displaying a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area; and | "The mail client 130 presents the progress of downloading operations using a progress indicator 151, in like manner as the page client presents the progress of preloading operations for web pages." Col. 6, ll. 18-19. See Fig. 1.

Nguyen '498 discloses that "[t]he page client 130 presents the preloading state using a preloading indicator 153. To indicate the progress of the "in progress" preloading stage, the preloading indicator 153 comprises a first part 154 having a first display color or pattern and a second part 153 having a second display color or pattern; the shape or size of the first part 154 relative to the second part 155 is used to indicate the progress of the "in progress" preloading stage. In a first preferred embodiment, the preloading indicator 153 comprises a dot or other shape which is superposed on the primary page 140." Col. 4, ll. 65-67 to Col. 5, ll. 1-8.

To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to display a "load status" graphic element over the content viewing area. Placement of the graphic element is a matter of design choice. |
| 32.5 | wherein content comprises data for presentation which is from a source external to the browser. | "The mail client 130 receives headers 141 from the mail server 110 and presents those headers 141 in the header window 151 to the operator." Col. 5, ll. 21-23.

"Responsive to the headers 141, the mail client 130 selects individual electronic mail messages 140 and transmits requests to the mail server 110 to download those individual electronic mail messages 140." Col. 5, ll. 24-27. |
| 33 | A method as recited in claim 32 further comprising, upon completion of the loading, removing the "load status" graphic element to reveal the part of the | "The mail client 130 presents the progress of downloading operations using a progress indicator 151, in like manner as the page client presents the progress of preloading operations for web pages." Col. 6, ll. 18-19. See Fig. 1.

"The progress indicator 151 may include a text element or a graphics element, having |

20

| Claim | U.S. Patent 6,339,780 |
|---|---|
| content in the content viewing area that the graphic element obstructed when the element was displayed. | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device

a first part 153 and a second part 154, each having different colors, and altering the relative sizes of the first part 151 and the second part 152 as the download operation progresses. In this embodiment, the graphics element comprises a separate dot or small circle 155 associated with the header 141; or, the text element comprises the presentation of header 141 itself.

The progress indicator 151 may include a text element 156 or a graphics element shown outside the header window 151. In this embodiment, the text element 156 comprises a phrase such as "75% complete" for a downloading operation which was in fact 75% complete; the graphics element may comprise a thermometer graph representing the progress of the downloading operation." Col. 6, ll. 25-41.

To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein the progress indicator disappears when the downloading operation is complete to indicate to a user that such downloading of content is complete. Nguyen '978 discloses that mail client 130 presents the progress of downloading operations using a progress indicator 151, in like manner as the page client presents the progress of preloading operations for web pages. Based on this, one of skill in the art would have been motivated to implement a browser wherein the progress indicator disappears when the downloading operation is complete to indicate to a user that such downloading of content is complete.

In addition, the combination of Nguyen '978 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious. Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 teaches a temporary graphic element that disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete (see analysis of Vaughton '744 in claim chart; see also Jaaskelainen at Col. 4, ll. 31-34 ("Icon 20 shown in FIG. 2U is displayed to the user momentarily to indicate completion of the task, and then the border is removed, thereby causing icon 20 to disappear from display 12."; Cleron '843 at Col. 16, ll. 50-55 ("When a process has been completed and a page of information is being |

21

649

| Claim | U.S. Patent 6,339,780 |
|---|---|
|  | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device displayed, the status and progress banner 750, the process display 752 and the stop button 754 are eliminated from the display because they no longer provide any useful information.") and it would be obvious to one of skill in the art to modify Nguyen '49Z8 with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system including a status indicator of the download progress), address the same problem (indicating the downloading progress within the content viewing area), disclose the same or similar techniques for superimposing a download status indicator over the content, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 34 | A hypermedia browser of claim 32, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language. | "For example, it is often desirable to transmit information organized as hypertext, such as information presented using HTML (hypertext markup language) or related description languages, and capable of being transmitted using the HTTP (hypertext transfer protocol) or related protocols." Col. 1, l. 66 - Col. 2, l. 4.<br><br>"In preferred embodiments, the mail server and the mail client cooperate dynamically and interactively to download, so as to present to the operator, electronic mail messages, or portions thereof, linked by hypertext links and possibly including data, audiovisual material, included programs, security features, or other features in addition to text." Col. 2, ll. 36-43.<br><br>"The mail client 130 similarly comprises a processor 131 and client storage 132, with the processor 111 comprising a general purpose processor having a computing element, program and data memory.  In a preferred embodiment, preferred process steps and data structures for the page client 130 are specified in the "Java" computer language." Col. 3, ll. 34-36.<br><br>"In a preferred embodiment, each electronic mail message 140 may comprise links to actual web pages (i.e., web pages outside the collection of pages 143 comprising the |

| Claim | U.S. Patent 6,339,780 | |
|---|---|---|
| | | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
| | | electronic mail message 140 itself) stored at a web server or other server for accessing information. These actual web pages are accessed using the Hypertext Transfer Protocol ("HTTP"), or other protocols for transferring and presenting information, including protocols known as "FSP", "FTP", "Gopher", and variants thereof, protocols for access to a command interface such as "Telnet", "MUD", "MUSH", "MOO", and variants thereof, other protocols for accessing, transmitting, or presenting information, and programs making use of such protocols, such as "Archie", "Veronica", "Jughead", and the like." Col. 4, ll. 25-39.<br><br>"It is one aspect of the invention that electronic mail messages 140 are presented to the operator in like manner as web pages are presented in the "Dynamic Preloading of Web Pages" co-pending application referred to herein." Col. 4, ll. 59-62.<br><br>Nguyen '498 additionally cites the following Java reference: Tessier, Tom, "Using Java Script to Create Interactive Web Pages", Dr. Dobbs Journal on CDROM Mar. 1996. |
| 35 | A hypermedia browser of claim 32, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web. | "For example, it is often desirable to transmit information organized as hypertext, such as information presented using HTML (hypertext markup language) or related description languages, and capable of being transmitted using the HTTP (hypertext transfer protocol) or related protocols." Col. 1, l. 66 - Col. 2, l. 4.<br><br>"In preferred embodiments, the mail server and the mail client cooperate dynamically and interactively to download, so as to present to the operator, electronic mail messages, or portions thereof, linked by hypertext links and possibly including data, audiovisual material, included programs, security features, or other features in addition to text." Col. 2, ll. 36-43.<br><br>"The mail client 130 similarly comprises a processor 131 and client storage 132, with the processor 111 comprising a general purpose processor having a computing element, program and data memory. In a preferred embodiment, preferred process steps and data structures for the page client 130 are specified in the "Java" computer language." Col. 3, ll. 34-36. |

23

| Claim | U.S. Patent 6,339,780 | |
|---|---|---|
| | | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348") and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
| | | "In a preferred embodiment, each electronic mail message 140 may comprise links to actual web pages (i.e., web pages outside the collection of pages 143 comprising the electronic mail message 140 itself) stored at a web server or other server for accessing information. These actual web pages are accessed using the Hypertext Transfer Protocol ("HTTP"), or other protocols for transferring and presenting information, including protocols known as "FSP", "FTP", "Gopher", and variants thereof, protocols for access to a command interface such as "Telnet", "MUD", "MUSH", "MOO", and variants thereof, other protocols for accessing, transmitting, or presenting information, and programs making use of such protocols, such as "Archie", "Veronica", "Jughead", and the like." Col. 4, ll. 25-39. |
| | | "It is one aspect of the invention that electronic mail messages 140 are presented to the operator in like manner as web pages are presented in the "Dynamic Preloading of Web Pages" co-pending application referred to herein." Col. 4, ll. 59-62. |
| | | Nguyen '498 additionally cites the following Java reference: Tessier, Tom, "Using Java Script to Create Interactive Web Pages", Dr. Dobbs Journal on CDROM Mar. 1996. |
| 36 | A computer-readable medium having computer-executable instructions that, when executed by a computer, perform a method of indicating a content "load status" of a hypermedia browser having a content viewing area for viewing content, the method comprising: | "The invention provides a method and system for dynamic downloading of hypertext electronic mail messages. The system includes a mail server for receiving electronic mail messages and their headers, and a mail client for downloading electronic mail messages and their headers from the mail receiver and presenting downloaded electronic mail messages and headers to an operator." Col. 2, ll. 25-31. |
| | | "In the following description, a preferred embodiment of the invention is described with regard to preferred process steps and data structures. However, those skilled in the art would recognize, after perusal of this application, that embodiments of the invention may be implemented using a general purpose processor, and that modification of a general purpose processor to implement the process steps and data structures described herein would not require undue invention." Col. 2, ll. 63-67. |
| | | "As the mail client 130 downloads the electronic mail message 140, it presents as |

24

652

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser or a mobile device |
|---|---|---|
| | | much as possible of the electronic mail message 140 (such as a first page 143 of the electronic mail message 140) to the operator for dynamic review while the downloading operation is in progress." Col. 5, l. 65 - Col. 6, l. 2. |
| | | "The mail client 130 presents the progress of downloading operations using a progress indicator 151, in like manner as the page client presents the progress of preloading operations for web pages." Col. 6, ll. 18-19.  See Fig. 1. |
| | | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to access hypermedia email in a browser.  For example, Nguyen '498, which is incorporated into Nguyen '978 discloses a web browser. |
| 36.1 | displaying loaded content within the content viewing area of a screen of a hypermedia browser, the screen is without a "load status" graphic element, wherein a "load status" graphic element indicates a current content load status of the hypermedia browser; | "As the mail client 130 downloads the electronic mail message 140, it presents as much as possible of the electronic mail message 140 (such as a first page 143 of the electronic mail message 140) to the operator for dynamic review while the downloading operation is in progress." Col. 5, l. 65 - Col. 6, l. 2. |
| | | "The mail client 130 presents the progress of downloading operations using a progress indicator 151, in like manner as the page client presents the progress of preloading operations for web pages." Col. 6, ll. 18-19.  See Fig. 1. |
| 36.2 | receiving an instruction to load new content into the content viewing area; | "It is one aspect of the invention that electronic mail messages 140 are presented to the operator in like manner as web pages are presented in the "Dynamic Preloading of Web Pages" co-pending application referred to herein.  In this aspect, the header window 151 is treated similarly to a web page in which each header 141 is treated similarly to a link to a first page 143 of its associated body 142." Col. 4, ll. 59-65. |
| | | "Thus, the operator may select one of the headers 141 so as to view its associated body 142, to which the mail client 130 responds by downloading that body 142 and presenting a first page 143 of that body 142." Col. 4, l. 66 - col. 5, l. 2. |
| 36.3 | loading such new content into the content viewing area; and | "Thus, the operator may select one of the headers 141 so as to view its associated body 142, to which the mail client 130 responds by downloading that body 142 and presenting a first page 143 of that body 142." Col. 4, l. 66 - col. 5, l. 2. |

25

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
| --- | --- | --- |
| 36.4 | while loading, displaying a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area; and | "The mail client 130 presents the progress of downloading operations using a progress indicator 151, in like manner as the page client presents the progress of preloading operations for web pages." Col. 6, ll. 18-19. See Fig. 1.<br><br>Nguyen '498 discloses that "[t]he page client 130 presents the preloading state using a preloading indicator 153. To indicate the progress of the "in progress" preloading stage, the preloading indicator 153 comprises a first part 154 having a first display color or pattern and a second part 153 having a second display color or pattern; the shape or size of the first part 154 relative to the second part 155 is used to indicate the progress of the "in progress" preloading stage. In a first preferred embodiment, the preloading indicator 153 comprises a dot or other shape which is superposed on the primary page 140." Col. 4, ll. 65-67 to Col. 5, ll. 1-8.<br><br>To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to or to display a "load status" graphic element over the content viewing area. Placement of the graphic element is a matter of design choice. |
| 36.5 | wherein content comprises data for presentation which is from a source external to the browser. | "The mail client 130 receives headers 141 from the mail server 110 and presents those headers 141 in the header window 151 to the operator." Col. 5, ll. 21-23.<br><br>"Responsive to the headers 141, the mail client 130 selects individual electronic mail messages 140 and transmits requests to the mail server 110 to download those individual electronic mail messages 140." Col. 5, ll. 24-27. |
| 37 | A hypermedia browser of claim 36, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a markup language, and visible results of a scripting language. | "For example, it is often desirable to transmit information organized as hypertext, such as information presented using HTML (hypertext markup language) or related description languages, and capable of being transmitted using the HTTP (hypertext transfer protocol) or related protocols." Col. 1, l. 66 - Col. 2, l. 4.<br><br>"In preferred embodiments, the mail server and the mail client cooperate dynamically and interactively to download, so as to present to the operator, electronic mail messages, or portions thereof, linked by hypertext links and possibly including data, audiovisual material, included programs, security features, or other features in |

26

| Claim | U.S. Patent 6,339,780 | |
|---|---|---|
| | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device | |
| | addition to text." Col. 2, ll. 36-43. | |
| | "The mail client 130 similarly comprises a processor 131 and client storage 132, with the processor 111 comprising a general purpose processor having a computing element, program and data memory.  In a preferred embodiment, preferred process steps and data structures for the page client 130 are specified in the "Java" computer language." Col. 3, ll. 34-36. | |
| | "In a preferred embodiment, each electronic mail message 140 may comprise links to actual web pages (i.e., web pages outside the collection of pages 143 comprising the electronic mail message 140 itself) stored at a web server or other server for accessing information.  These actual web pages are accessed using the Hypertext Transfer Protocol ("HTTP"), or other protocols for transferring and presenting information, including protocols known as "FSP", "FTP", "Gopher", and variants thereof, protocols for access to a command interface such as "Telnet", "MUD", "MUSH", "MOO", and variants thereof, other protocols for accessing, transmitting, or presenting information, and programs making use of such protocols, such as "Archie", "Veronica", "Jughead", and the like." Col. 4, ll. 25-39. | |
| | "It is one aspect of the invention that electronic mail messages 140 are presented to the operator in like manner as web pages are presented in the "Dynamic Preloading of Web Pages" co-pending application referred to herein." Col. 4, ll. 59-62. | |
| | Nguyen '498 additionally cites the following Java reference:  Tessier, Tom, "Using Java Script to Create Interactive Web Pages", Dr. Dobbs Journal on CDROM Mar. 1996. | |
| 38 | A hypermedia browser of claim 36, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, | "For example, it is often desirable to transmit information organized as hypertext, such as information presented using HTML (hypertext markup language) or related description languages, and capable of being transmitted using the HTTP (hypertext transfer protocol) or related protocols." Col. 1, l. 66 - Col. 2, l. 4. |
| | | "In preferred embodiments, the mail server and the mail client cooperate dynamically and interactively to download, so as to present to the operator, electronic mail |

27

655

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
|---|---|---|
|  | Flash. scripting language for the world wide web. | "messages, or portions thereof, linked by hypertext links and possibly including data, audiovisual material, included programs, security features, or other features in addition to text." Col. 2, ll. 36-43.<br><br>"The mail client 130 similarly comprises a processor 131 and client storage 132, with the processor 111 comprising a general purpose processor having a computing element, program and data memory. In a preferred embodiment, preferred process steps and data structures for the page client 130 are specified in the "Java" computer language." Col. 3, ll. 34-36.<br><br>"In a preferred embodiment, each electronic mail message 140 may comprise links to actual web pages (i.e., web pages outside the collection of pages 143 comprising the electronic mail message 140 itself) stored at a web server or other server for accessing information. These actual web pages are accessed using the Hypertext Transfer Protocol ("HTTP"), or other protocols for transferring and presenting information, including protocols known as "FSP", "FTP", "Gopher", and variants thereof, protocols for access to a command interface such as "Telnet", "MUD", "MUSH", "MOO", and variants thereof, other protocols for accessing, transmitting, or presenting information, and programs making use of such protocols, such as "Archie", "Veronica", "Jughead", and the like." Col. 4, ll. 25-39.<br><br>"It is one aspect of the invention that electronic mail messages 140 are presented to the operator in like manner as web pages are presented in the "Dynamic Preloading of Web Pages" co-pending application referred to herein." Col. 4, ll. 59-62.<br><br>Nguyen '498 additionally cites the following Java reference: Tessier, Tom, "Using Java Script to Create Interactive Web Pages", Dr. Dobbs Journal on CDROM Mar. 1996. |
| 39 | A computer-readable medium as recited in claim 36 further having additional computer-executable instructions that perform a method comprising, upon | "The mail client 130 presents the progress of downloading operations using a progress indicator 151, in like manner as the page client presents the progress of preloading operations for web pages." Col. 6, ll. 18-19. See Fig. 1.<br><br>"The progress indicator 151 may include a text element or a graphics element, having |

656

| Claim | U.S. Patent 6,339,780 |
|---|---|
| completion of the loading, removing the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed. | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device |

a first part 153 and a second part 154, each having different colors, and altering the relative sizes of the first part 151 and the second part 152 as the download operation progresses. In this embodiment, the graphics element comprises a separate dot or small circle 155 associated with the header 141; or, the text element comprises the presentation of header 141 itself.

The progress indicator 151 may include a text element 156 or a graphics element shown outside the header window 151. In this embodiment, the text element 156 comprises a phrase such as "75% complete" for a downloading operation which was in fact 75% complete; the graphics element may comprise a thermometer graph representing the progress of the downloading operation." Col. 6, ll. 25-41.

To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein the progress indicator disappears when the downloading operation is complete to indicate to a user that such downloading of content is complete. Nguyen '978 discloses that mail client 130 presents the progress of downloading operations using a progress indicator 151, in like manner as the page client presents the progress of preloading operations for web pages. Based on this, one of skill in the art would have been motivated to implement a browser wherein the progress indicator disappears when the downloading operation is complete to indicate to a user that such downloading of content is complete.

In addition, the combination of Nguyen '978 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious. Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 teaches a temporary graphic element that disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete (see analysis of Vaughton '744 in claim chart; see also Jaaskelainen at Col. 4, ll. 31-34 ("Icon 20 shown in FIG. 2U is displayed to the user momentarily to indicate completion of the task, and then the border is removed, thereby causing icon 20 to disappear from display 12."; Cleron '843 at Col. 16, ll. 50-55 ("When a process has been completed and a page of information is being

29

657

| Claim | U.S. Patent 6,339,780 | |
|---|---|---|
| | | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device displayed, the status and progress banner 750, the process display 752 and the stop button 754 are eliminated from the display because they no longer provide any useful information.") and it would be obvious to one of skill in the art to modify Nguyen '49Z8 with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system including a status indicator of the download progress), address the same problem (indicating the downloading progress within the content viewing area), disclose the same or similar techniques for superimposing a download status indicator over the content, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 40 | An information processing device comprising; | "The invention provides a method and system for dynamic downloading of hypertext electronic mail messages.  The system includes a mail server for receiving electronic mail messages and their headers, and a mail client for downloading electronic mail messages and their headers from the mail receiver and presenting downloaded electronic mail messages and headers to an operator." Col. 2, ll. 25-31.<br><br>"In the following description, a preferred embodiment of the invention is described with regard to preferred process steps and data structures.  However, those skilled in the art would recognize, after perusal of this application, that embodiments of the invention may be implemented using a general purpose processor, and that modification of a general purpose processor to implement the process steps and data structures described herein would not require undue invention." Col. 2, ll. 63-67. |
| 40.1 | a processor; | "In the following description, a preferred embodiment of the invention is described with regard to preferred process steps and data structures.  However, those skilled in the art would recognize, after perusal of this application, that embodiments of the invention may be implemented using a general purpose processor, and that modification of a general purpose processor to implement the process steps and data |

30

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")² and/or U.S. Patent 5,907,843 ("Cleron '843")³ and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | structures described herein would not require undue invention." Col. 2, ll. 63-67. |
| 40.2 | a display; | "In a first preferred embodiment, the mail client 130 comprises an input element 133 and a display element 134. The input element 133 comprises a keyboard and a pointing device such as a mouse or trackball. The display element 134 comprises a visual display element such as a monitor or a display panel, and an audio display element such as a speaker." Col 3, ll. 44-50. |
| 40.3 | a hypermedia browser executing on the processor to load and display content in a content viewing area on the display; wherein the hypermedia browser is configured to operate in a content-loading mode and a content-loaded mode; | "As the mail client 130 downloads the electronic mail message 140, it presents as much as possible of the electronic mail message 140 (such as a first page 143 of the electronic mail message 140) to the operator for dynamic review while the downloading operation is in progress." Col. 5, l. 65 - Col. 6, l. 2.<br><br>"The mail client 130 presents the progress of downloading operations using a progress indicator 151, in like manner as the page client presents the progress of preloading operations for web pages." Col. 6, ll. 18-19. See Fig. 1.<br><br>To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to access hypermedia email in a browser. For example, Nguyen '498, which is incorporated into Nguyen '978 discloses a web browser. |
| 40.4 | in the content-loaded mode, the hypermedia browser displays loaded content in the content viewing area and no "load status" graphic element is displayed, wherein absence of such "load status" graphic element indicates that the browser is in the content-loaded mode; | "As the mail client 130 downloads the electronic mail message 140, it presents as much as possible of the electronic mail message 140 (such as a first page 143 of the electronic mail message 140) to the operator for dynamic review while the downloading operation is in progress." Col. 5, l. 65 - Col. 6, l. 2.<br><br>To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein the progress indicator disappears when the downloading operation is complete. Nguyen '978 discloses that mail client 130 presents the progress of downloading operations using a progress indicator 151, in like manner as the page client presents the progress of preloading operations for web pages. Based on this, one of skill in the art would have been motivated to implement a browser wherein the progress indicator disappears when the downloading operation is |

31

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348") and/or U.S. Patent 5,907,843 ("Cleron '843'") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | complete to indicate to a user that such downloading of content is complete. |
| | | In addition, the combination of Nguyen '978 and/or Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 renders this claim obvious.  Vaughton '744 and/or Jaaskelainen '348 and/or Cleron '843 teaches a temporary graphic element that disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete (see analysis of Vaughton '744 in claim chart; see also Jaaskelainen at Col. 4, ll. 31-34 ("Icon 20 shown in FIG. 2U is displayed to the user momentarily to indicate completion of the task, and then the border is removed, thereby causing icon 20 to disappear from display 12."; Cleron '843 at Col. 16, ll. 50-55 ("When a process has been completed and a page of information is being displayed, the status and progress banner 750, the process display 752 and the stop button 754 are eliminated from the display because they no longer provide any useful information.") and it would be obvious to one of skill in the art to modify Nguyen '978 with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system including a status indicator of the download progress), address the same problem (indicating the downloading progress within the content viewing area), disclose the same or similar techniques for superimposing a download status indicator over the content, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 40.5 | in the content-loading mode, the hypermedia browser loads content, displays such content in the content viewing area as it loads, and displays a "load status" graphic element over the content view area obstructing part of the | "As the mail client 130 downloads the electronic mail message 140, it presents as much as possible of the electronic mail message 140 (such as a first page 143 of the electronic mail message 140) to the operator for dynamic review while the downloading operation is in progress." Col. 5, l. 65 - Col. 6, l. 2.

"The mail client 130 presents the progress of downloading operations using a progress |

32

660

| Claim | U.S. Patent 6,339,780 | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | content displayed in the content viewing area, wherein presence of such "load status" graphic element indicates that the browser is in the content-loading mode; and | indicator 151, in like manner as the page client presents the progress of preloading operations for web pages." Col. 6, ll. 18-19. See Fig. 1.

Nguyen '498 discloses that "[t]he page client 130 presents the preloading state using a preloading indicator 153. To indicate the progress of the "in progress" preloading stage, the preloading indicator 153 comprises a first part 154 having a first display color or pattern and a second part 153 having a second display color or pattern; the shape or size of the first part 154 relative to the second part 155 is used to indicate the progress of the "in progress" preloading stage. In a first preferred embodiment, the preloading indicator 153 comprises a dot or other shape which is superposed on the primary page 140." Col. 4, ll. 65-67 to Col. 5, ll. 1-8.

To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to display a "load status" graphic element over the content viewing area. Placement of the graphic element is a matter of design choice. |
| 40.6 | wherein content comprises data for presentation which is from a source external to the browser. | "The mail client 130 receives headers 141 from the mail server 110 and presents those headers 141 in the header window 151 to the operator." Col. 5, ll. 21-23.

"Responsive to the headers 141, the mail client 130 selects individual electronic mail messages 140 and transmits requests to the mail server 110 to download those individual electronic mail messages 140." Col. 5, ll. 24-27. |
| 41 | A hypermedia browser of claim 40, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language. | "For example, it is often desirable to transmit information organized as hypertext, such as information presented using HTML (hypertext markup language) or related description languages, and capable of being transmitted using the HTTP (hypertext transfer protocol) or related protocols." Col. 1, l. 66 - Col. 2, l. 4.

"In preferred embodiments, the mail server and the mail client cooperate dynamically and interactively to download, so as to present to the operator, electronic mail messages, or portions thereof, linked by hypertext links and possibly including data, audiovisual material, included programs, security features, or other features in addition to text." Col. 2, ll. 36-43. |

661

33

| Claim | U.S. Patent 6,339,780 | |
|---|---|---|
| | | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348") and/or U.S. Patent 5,907,843 ("Cleron '843"³) and/or various systems implementing a web browser on a mobile device |
| | | "The mail client 130 similarly comprises a processor 131 and client storage 132, with the processor 111 comprising a general purpose processor having a computing element, program and data memory.  In a preferred embodiment, preferred process steps and data structures for the page client 130 are specified in the "Java" computer language." Col. 3, ll. 34-36. |
| | | "In a preferred embodiment, each electronic mail message 140 may comprise links to actual web pages (i.e., web pages outside the collection of pages 143 comprising the electronic mail message 140 itself) stored at a web server or other server for accessing information.  These actual web pages are accessed using the Hypertext Transfer Protocol ("HTTP"), or other protocols for transferring and presenting information, including protocols known as "FSP", "FTP", "Gopher", and variants thereof, protocols for access to a command interface such as "Telnet", "MUD", "MUSH", "MOO", and variants thereof, other protocols for accessing, transmitting, or presenting information, and programs making use of such protocols, such as "Archie", "Veronica", "Jughead", and the like." Col. 4, ll. 25-39. |
| | | "It is one aspect of the invention that electronic mail messages 140 are presented to the operator in like manner as web pages are presented in the "Dynamic Preloading of Web Pages" co-pending application referred to herein." Col. 4, ll. 59-62. |
| | | Nguyen '498 additionally cites the following Java reference: Tessier, Tom, "Using Java Script to Create Interactive Web Pages", Dr. Dobbs Journal on CDROM Mar. 1996. |
| 42 | A hypermedia browser of claim 40, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash, scripting language for the world wide web. | "For example, it is often desirable to transmit information organized as hypertext, such as information presented using HTML (hypertext markup language) or related description languages, and capable of being transmitted using the HTTP (hypertext transfer protocol) or related protocols." Col. 1, l. 66 - Col. 2, l. 4.<br><br>"In preferred embodiments, the mail server and the mail client cooperate dynamically and interactively to download, so as to present to the operator, electronic mail messages, or portions thereof, linked by hypertext links and possibly including data, |

34

662

| Claim | |
|---|---|
| U.S. Patent 6,339,780 | U.S. Patent 6,377,978 ("Nguyen '978") alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 6,584,498 ("Nguyen '498") and/or U.S. Patent 5,301,348 ("Jaaskelainen '348")[2] and/or U.S. Patent 5,907,843 ("Cleron '843")[3] and/or various systems implementing a web browser on a mobile device |

audiovisual material, included programs, security features, or other features in addition to text." Col. 2, ll. 36-43.

"The mail client 130 similarly comprises a processor 131 and client storage 132, with the processor 111 comprising a general purpose processor having a computing element, program and data memory.  In a preferred embodiment, preferred process steps and data structures for the page client 130 are specified in the "Java" computer language." Col. 3, ll. 34-36.

"In a preferred embodiment, each electronic mail message 140 may comprise links to actual web pages (i.e., web pages outside the collection of pages 143 comprising the electronic mail message 140 itself) stored at a web server or other server for accessing information.  These actual web pages are accessed using the Hypertext Transfer Protocol ("HTTP"), or other protocols for transferring and presenting information, including protocols known as "FSP", "FTP", "Gopher", and variants thereof, protocols for access to a command interface such as "Telnet", "MUD", "MUSH", "MOO", and variants thereof, other protocols for accessing, transmitting, or presenting information, and programs making use of such protocols., such as "Archie", "Veronica", "Jughead", and the like." Col. 4, ll. 25-39.

"It is one aspect of the invention that electronic mail messages 140 are presented to the operator in like manner as web pages are presented in the "Dynamic Preloading of Web Pages" co-pending application referred to herein." Col. 4, ll. 59-62.

Nguyen '498 additionally cites the following Java reference:  Tessier, Tom, "Using Java Script to Create Interactive Web Pages", Dr. Dobbs Journal on CDROM Mar. 1996.

35

# EXHIBIT F

Exemplar Chart of U.S. Patent 6,339,780

**Experience with a Wireless World Wide Web Client ("Bartlett")[1]**
**Claims 1-6, 9-14, 17, 18, 20, 21 and 32-42**

| | U.S. Patent 6,339,780 | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| 1 | 1. A hypermedia browser embodied on a computer-readable medium for execution on an information processing device having a limited display area, | "In order to separate promises from practice in PDAs and wireless communications, we decided to try to build a wireless PDA-based client to access the World Wide Web. Using equipment available in the winter of 1994, we were able to build a client that we call W4, the Wireless World Wide Web." Abstract. "Today's PDAs, with their limited computational power, storage, wireless communication bandwidth, and display size, offer a challenge: can you build anything, and if so, would anyone want to use it?" pg. 1. "Sections 2 through 5 provide a roughly chronological record of the design and implementation of W4, a 'proof of concept' for a Wireless World Wide Web client." pg. 1. *See also* Bartlett's reference to Gessler[2]'s implementation of a browser on a mobile device. The analysis in this chart similarly applies to the mobile browsers described by Gessler, Cooper[3], Watson[4], Kamba[5], and Lauff[6,7] |

NOTE: Motorola applies the prior art in light of Microsoft's improper assertions of infringement and improper application of the claims. Motorola does not agree with Microsoft's application of the claims, or that the claims satisfy 35 U.S.C. § 112. Motorola's contentions herein are not, and should in no way be seen as, admissions or adoptions as to any particular claim scope or construction, or as any admission that any particular element is met in any particular way. Motorola objects to any attempt to imply claim construction from the foregoing chart. Motorola's prior art invalidity contentions are made in a variety of alternatives and do not represent Motorola's agreement or view as to the meaning, definiteness, written description support for, or enablement of any claim contained therein.

[1] J. Bartlett. Experience with a Wireless World Wide Web Client. IEEE COMPCON 95 (San Francisco, March 1995) ("Bartlett").

[2] S. Gessler and A. Kotulla. PDAs as Mobile WWW Browsers. Computer Networks and ISDN Systems 28 (1995) 53-59 ("Gessler").

| | U.S. Patent 6,339,780 | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| 1.1 | wherein the hypermedia browser has a content viewing area for viewing content and is configured to display a temporary graphic element over the content viewing area during times when the browser is loading content, | "The PDA acts as a video-text client, displaying screens representing a portion of a hypertext document. Each screen is identified with a tag that contains the document's Universal Resource Location (URL) and an offset within the document. In the simplest PDA-based client, when a hypertext link or scroll arrow is tapped by the user, the tag associated with the interactor is sent in a request to the workstation. The workstation obtains the document from the Web, parses it (caching the result for later requests), formats the desired screen for the PDA, and then replys to the PDA's request." pg. 3. <br><br> "A pleasant discovery is that most Web documents are quite readable on a 320x240 pixel screen, even though they were designed for a much larger display." pg. 4. <br><br> To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to display a temporary graphic element over the content viewing area during times when the browser is loading content. For example, according to Bartlett, "the workstation obtains the document from the Web, parses it (caching the result for later requests), formats the desired screen for the PDA, and then replys to the PDA's request." Thus one of skill in the art would have been motivated to display a |

(…Continued)

[3] I. Cooper and R. Shufflebotham. PDAWeb Browsers: Implementation Issues. (University of Kent at Canterbury, November 9, 1995) ("Cooper") (see pgs. 3 and 5).

[4] T. Watson. "'Application Design for Wireless Computing" (1994 Mobile Computing Systems and Applications Workshop Position Paper (August 1994)).

[5] T. Kamba, S. A. Elson, T. Harpold, T. Stamper, and P. Sukaviriya. (1996). "Using small screen space more efficiently."

[6] M. Lauff and W. Gellerson. Multimedia Client Implementation on Personal Digital Assistants. TecO.

[7] Motorola continues to investigate other browsers that were in existence prior to the priority date of the '780 patent (e.g., NetHopper, Newt's Cape, PocketWeb and Vogon).

2

666

| | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744) and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|
| U.S. Patent 6,339,780 | temporary graphic element over the content viewing area during times when the browser is loading content.<br><br>In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious. Vaughton '744 and/or Judson '643 and/or Lavey '698 teaches displaying a temporary graphic element over the content viewing area during times information is being downloaded (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings. One of skill in the art would be motivated to combine these references because they are each in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 1.2 | wherein the temporary graphic element is positioned over the content viewing area to obstruct only part of the content in the content viewing area, | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to position the temporary graphic element over the content viewing area to obstruct only part of the content in the content viewing area.<br><br>In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious. Vaughton '744 and/or Judson '643 and/or Lavey '698 teaches a temporary graphic element positioned over the content viewing area to obstruct only part of the content in the content viewing area (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there |

3

667

| U.S. Patent 6,339,780 | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744) and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|
| | was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 1.3 | wherein the temporary graphic element is not content and wherein content comprises data for presentation which is from a source external to the browser. | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein the temporary graphic element is not content and wherein content comprises data for presentation which is from a source external to the browser.  Bartlett notes that "[t]he workstation obtains the document from the Web, parses it (caching the result for later requests), formats the desired screen for the PDA, and then replys to the PDA's request." pg. 3.<br><br>In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious.  Vaughton '744 and/or Judson '643 and/or Lavey '698 teaches a temporary graphic element that is not content (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 2 | A hypermedia browser as recited in claim 1, wherein the browser is configured to display the temporary graphic element over the content viewing area only during times when the browser is loading visible content. | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to display the temporary graphic element over the content viewing area only during times when the browser is loading visible content.<br><br>In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious.  Vaughton '744 and/or Judson '643 and/or Lavey '698 teaches displaying the temporary graphic element over the content viewing area only during times when the browser is loading visible content (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it |

4

668

| U.S. Patent 6,339,780 | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744) and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|
| | would be obvious to one of skill in the art to modify Bartlett with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 3   A hypermedia browser as recited in claim 1, wherein the temporary graphic element indicates to a user that the browser is loading content. | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a temporary graphic element indicating to a user that the browser is loading content.<br><br>In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious.  Vaughton '744 and/or Judson '643 and/or Lavey '698 teaches a temporary graphic element indicating to a user that the browser is loading content (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 4   A hypermedia browser as recited in claim 1, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete. | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a temporary graphic element that disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete.<br><br>In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or |

5

669

| U.S. Patent 6,339,780 | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744) and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|
| | Lavey '698 renders this claim obvious. Vaughton '744 and/or Judson '643 and/or Lavey '698 teaches a temporary graphic element that disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 5 | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to animate the temporary graphic element. |
| A hypermedia browser as recited in claim 1, wherein the temporary graphic element is animated. | In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious. Vaughton '744 and/or Judson '643 and/or Lavey '698 teaches a animating the temporary graphic element (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 6 | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area. Displaying the |
| A hypermedia browser as recited in claim 1, wherein the hypermedia browser displays the temporary graphic element | |

6

| | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744) and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|
| U.S. Patent 6,339,780 | |
| in a corner of the content viewing area. | temporary graphic element in a corner of the content viewing area is an obvious design choice to minimize the amount of content obstructed and would have been obvious to try. |
| | In addition, the combination of Bartlett and Vaughton '744 renders this claim obvious. Vaughton '744 teaches displaying the temporary graphic element in a corner of the content viewing area (see analysis of Vaughton '744 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 9 | A hypermedia browser as recited in claim 1, wherein the temporary graphic element conveys status information of the browser. | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to convey status information of the browser with a temporary graphic element. |
| | | In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious. Vaughton '744 and/or Judson '643 and/or Lavey '698 teaches conveying status information of the browser with a temporary graphic element (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |

7

671

| | U.S. Patent 6,339,780 | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| 10 | A hypermedia browser of claim 1, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language. | "The PDA acts as a video-text client, displaying screens representing a portion of a hypertext document." pg. 3.<br><br>One of ordinary skill in the art would recognize that a hypermedia browser has the function of downloading files from another system when, for example, a user selects a hypermedia link.  To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement Bartlett with a hypermedia browser wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.  Bartlett discloses a system that implements a World Wide Web browser on a mobile device.<br><br>See also Gessler at pg. 57, cited by Bartlett at pg. 6 ("In our current version we support the most common structures of HTML and HTML + and images. The next release will include a complete HTML + interpreter which will also allow sensitive maps or tables on a PDA.") |
| 11 | A hypermedia browser of claim 1, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web. | "The PDA acts as a video-text client, displaying screens representing a portion of a hypertext document." pg. 3.<br><br>One of ordinary skill in the art would recognize that a hypermedia browser has the function of downloading files from another system when, for example, a user selects a hypermedia link.  To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement Bartlett with a hypermedia browser wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web.  Bartlett discloses a system that implements a World Wide Web browser on a mobile device.<br><br>See also Gessler at pg. 57, cited by Bartlett at pg. 6 ("In our current version we support the most common structures of HTML and HTML + and images. The next release will include a complete HTML + interpreter which will also allow sensitive |

8

| | U.S. Patent 6,339,780 | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | maps or tables on a PDA.") |
| 12 | 12. An information processing device comprising: | Bartlett was implemented on an Apple MessagePad (i.e., Newton). |
| 12.1 | a processor; | "When designing for PDAs it might be dangerous to assume that processor speeds will rapidly improve. Cost, size, and power reduction seem to be more important than performance improvements. When more processor power is provided, it may not be available to the application programmer as it could be used to provide such things as software modems, improved handwriting recognition, or animation." pg. 4. |
| 12.2 | a display; | "The PDA acts as a video-text client, displaying screens representing a portion of a hypertext document." pg. 3. |
| 12.3 | a hypermedia browser executing on the processor to load and display content in a content viewing area on the display; wherein the hypermedia browser has a content viewing area for viewing content and wherein the hypermedia browser displays a temporary graphic element over the content viewing area during times when the browser is loading visible content; | "In order to separate promises from practice in PDAs and wireless communications, we decided to try to build a wireless PDA-based client to access the World Wide Web. Using equipment available in the winter of 1994, we were able to build a client that we call W4, the Wireless World Wide Web." Abstract.<br><br>"The PDA acts as a video-text client, displaying screens representing a portion of a hypertext document. Each screen is identified with a tag that contains the document's Universal Resource Location (URL) and an offset within the document. In the simplest PDA-based client, when a hypertext link or scroll arrow is tapped by the user, the tag associated with the interactor is sent in a request to the workstation. The workstation obtains the document from the Web, parses it (caching the result for later requests), formats the desired screen for the PDA, and then replys to the PDA's request." pg. 3.<br><br>"A pleasant discovery is that most Web documents are quite readable on a 320x240 pixel screen, even though they were designed for a much larger display." pg. 4.<br><br>To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to display a temporary graphic element over the content viewing area during times when the browser is loading content. For example, according to Bartlett, "the workstation obtains the document from the Web, parses it (caching the result for |

9

673

| U.S. Patent 6,339,780 | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|
| | later requests), formats the desired screen for the PDA, and then replys to the PDA's request." Thus one of skill in the art would have been motivated to display a temporary graphic element over the content viewing area during times when the browser is loading content.<br><br>In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious.  Vaughton '744 and/or Judson '643 and/or Lavey '698 teaches displaying a temporary graphic element over the content viewing area during times information is being downloaded (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings.  One of skill in the art would be motivated to combine these references because they are each in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 12.4 | wherein the temporary graphic element is positioned only over a portion of the content viewing area and obstructs only part of the visible content in the content viewing area; and | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to position the temporary graphic element over the content viewing area to obstruct only part of the content in the content viewing area.<br><br>In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious.  Vaughton '744 and/or Judson '643 and/or Lavey '698 teaches a temporary graphic element positioned over the content viewing area to obstruct only part of the content in the content viewing area (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same |

10

674

| | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744) and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|
| | general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| U.S. Patent 6,339,780 | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a temporary graphic element indicating to a user that the browser is loading content. |
| | In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious.  Vaughton '744 and/or Judson '643 and/or Lavey '698 teaches a temporary graphic element indicating to a user that the browser is loading content (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein content comprises data for presentation which is from a source external to the browser.  Bartlett notes that "[t]he workstation obtains the document from the Web, parses it (caching the result for later requests), formats the desired screen for the PDA, and then replys to the PDA's request." pg. 3. |
| 12.5 | wherein the temporary graphic element indicates to a user that the browser is loading content and content comprises data for presentation which is from a source external to the browser. |
| | In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious.  Vaughton '744 and/or Judson '643 and/or Lavey '698 teach content comprising data for presentation which is from a source external to the browser. (see analysis of Vaughton '744 and/or Judson '643 and/or |

| | U.S. Patent 6,339,780 | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 13 | An information processing device as recited in claim 12, wherein the temporary graphic element is animated. | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to animate the temporary graphic element.<br><br>In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious. Vaughton '744 and/or Judson '643 and/or Lavey '698 teaches a animating the temporary graphic element (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart). One of skill in the art would be motivated to modify Bartlett with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 14 | An information processing device as recited in claim 12, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area. | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area. Displaying the temporary graphic element in a corner of the content viewing area is an obvious design choice to minimize the amount of content obstructed and would have been obvious to try. |

12

| | U.S. Patent 6,339,780 | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | In addition, the combination of Bartlett and Vaughton '744 renders this claim obvious. Vaughton '744 teaches displaying the temporary graphic element in a corner of the content viewing area (see analysis of Vaughton '744 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 17 | A hypermedia browser of claim 12, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language. | "The PDA acts as a video-text client, displaying screens representing a portion of a hypertext document." pg. 3.

One of ordinary skill in the art would recognize that a hypermedia browser has the function of downloading files from another system when, for example, a user selects a hypermedia link.  To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement Bartlett with a hypermedia browser wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.  Bartlett discloses a system that implements a World Wide Web browser on a mobile device.

See also Gessler at pg. 57, cited by Bartlett at pg. 6 ("In our current version we support the most common structures of HTML and HTML + and images.  The next release will include a complete HTML + interpreter which will also allow sensitive maps or tables on a PDA.") |
| 18 | A hypermedia browser of claim 12, wherein content is data formatted for presentation which is selected from a | "The PDA acts as a video-text client, displaying screens representing a portion of a hypertext document." pg. 3.

One of ordinary skill in the art would recognize that a hypermedia browser has the |

13

| | U.S. Patent 6,339,780 | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744) and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web. | function of downloading files from another system when, for example, a user selects a hypermedia link.  To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement Bartlett with a hypermedia browser wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web.  Bartlett discloses a system that implements a World Wide Web browser on a mobile device.  See also Gessler at pg. 57, cited by Bartlett at pg. 6 ("In our current version we support the most common structures of HTML and HTML + and images. The next release will include a complete HTML + interpreter which will also allow sensitive maps or tables on a PDA.") |
| 20 | An information processing device as recited in claim 12, wherein the temporary graphic element is not content. | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein the temporary graphic element is not content.  In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious.  Vaughton '744 and/or Judson '643 and/or Lavey '698 teaches a temporary graphic element that is not content (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 21 | An information processing device as recited in claim 12, wherein the | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to have the temporary graphic element disappear when the browser's |

14

| U.S. Patent 6,339,780 | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744) and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|
| temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete. | loading of content is complete to indicate to a user that such loading of content is complete.<br><br>In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious. Vaughton '744 and/or Judson '643 and/or Lavey '698 teaches having the temporary graphic element disappear when the browser's loading of content is complete to indicate to a user that such loading of content is complete. (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 32. A method of indicating a content "load status" of a hypermedia browser having a content viewing area for viewing content, the method comprising: | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to indicate a content "load status" of a hypermedia browser having a content viewing area for viewing content.<br><br>In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious. Vaughton '744 and/or Judson '643 and/or Lavey '698 teaches indicating a content "load status" of a hypermedia browser having a content viewing area for viewing content (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need |

15

| | U.S. Patent 6,339,780 | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744) and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 32.1 | displaying loaded content within the content viewing area of a screen of a hypermedia browser, the screen being without a "load status" graphic element, wherein a "load status" graphic element indicates a current content load status of the hypermedia browser; | "The PDA acts as a video-text client, displaying screens representing a portion of a hypertext document. Each screen is identified with a tag that contains the document's Universal Resource Location (URL) and an offset within the document. In the simplest PDA-based client, when a hypertext link or scroll arrow is tapped by the user, the tag associated with the interactor is sent in a request to the workstation. The workstation obtains the document from the Web, parses it (caching the result for later requests), formats the desired screen for the PDA, and then replys to the PDA's request." pg. 3.<br><br>"A pleasant discovery is that most Web documents are quite readable on a 320x240 pixel screen, even though they were designed for a much larger display." pg. 4.<br><br>To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art for the "load status" graphic element to indicate a current content load status of the hypermedia browser.<br><br>In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious. Vaughton '744 and/or Judson '643 and/or Lavey '698 teaches a "load status" graphic element indicating a current content load status of the hypermedia browser (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 32.2 | receiving an instruction to load new | "The PDA acts as a video-text client, displaying screens representing a portion of a |

16

680

| U.S. Patent 6,339,780 | | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | content into the content viewing area; | hypertext document. Each screen is identified with a tag that contains the document's Universal Resource Location (URL) and an offset within the document. In the simplest PDA-based client, when a hypertext link or scroll arrow is tapped by the user, the tag associated with the interactor is sent in a request to the workstation. The workstation obtains the document from the Web, parses it (caching the result for later requests), formats the desired screen for the PDA, and then replys to the PDA's request." pg. 3. |
| 32.3 | loading such new content into the content viewing area; and | "The PDA acts as a video-text client, displaying screens representing a portion of a hypertext document. Each screen is identified with a tag that contains the document's Universal Resource Location (URL) and an offset within the document. In the simplest PDA-based client, when a hypertext link or scroll arrow is tapped by the user, the tag associated with the interactor is sent in a request to the workstation. The workstation obtains the document from the Web, parses it (caching the result for later requests), formats the desired screen for the PDA, and then replys to the PDA's request." pg. 3. |
| 32.4 | while loading, displaying a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area; and | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to display a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area.

In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious. Vaughton '744 and/or Judson '643 and/or Lavey '698 teaches displaying a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period.  Additionally, a |

17

681

| U.S. Patent 6,339,780 | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744) and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|
| | person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 32.5   wherein content comprises data for presentation which is from a source external to the browser. | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein content comprises data for presentation which is from a source external to the browser.  Bartlett notes that "[t]he workstation obtains the document from the Web, parses it (caching the result for later requests), formats the desired screen for the PDA, and then replys to the PDA's request." pg. 3.

In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious.  Vaughton '744 and/or Judson '643 and/or Lavey '698 teach content comprising data for presentation which is from a source external to the browser. (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 33   A method as recited in claim 32 further comprising, upon completion of the loading, removing the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed. | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to at upon completion of the loading, remove the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed.

In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious.  Vaughton '744 and/or Judson '643 and/or Lavey '698 teaches upon completion of the loading, removing the "load status" |

18

| U.S. Patent 6,339,780 | | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 34 | A hypermedia browser of claim 32, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language. | "The PDA acts as a video-text client, displaying screens representing a portion of a hypertext document." pg. 3.<br><br>One of ordinary skill in the art would recognize that a hypermedia browser has the function of downloading files from another system when, for example, a user selects a hypermedia link.  To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement Bartlett with a hypermedia browser wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.  Bartlett discloses a system that implements a World Wide Web browser on a mobile device.<br><br>See also Gessler at pg. 57, cited by Bartlett at pg. 6 ("In our current version we support the most common structures of HTML and HTML + and images.  The next release will include a complete HTML + interpreter which will also allow sensitive maps or tables on a PDA.") |
| 35 | A hypermedia browser of claim 32, wherein content is data formatted for presentation which is selected from a | "The PDA acts as a video-text client, displaying screens representing a portion of a hypertext document." pg. 3.<br><br>One of ordinary skill in the art would recognize that a hypermedia browser has the |

19

683

| U.S. Patent 6,339,780 | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744) and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|
| group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash, scripting language for the world wide web. | function of downloading files from another system when, for example, a user selects a hypermedia link.  To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement Bartlett with a hypermedia browser wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash, scripting language for the world wide web.  Bartlett discloses a system that implements a World Wide Web browser on a mobile device. |
| 36 A computer-readable medium having computer-executable instructions that, when executed by a computer, perform a method of indicating a content "load status" of a hypermedia browser having a content viewing area for viewing content, the method comprising: | See also Gessler at pg. 57, cited by Bartlett at pg. 6 ("In our current version we support the most common structures of HTML and HTML + and images. The next release will include a complete HTML + interpreter which will also allow sensitive maps or tables on a PDA.")

"When designing for PDAs it might be dangerous to assume that processor speeds will rapidly improve. Cost, size, and power reduction seem to be more important than performance improvements.  When more processor power is provided, it may not be available to the application programmer as it could be used to provide such things as software modems, improved handwriting recognition, or animation." pg. 4.

To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to indicate a content "load status" of a hypermedia browser having a content viewing area for viewing content.

In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious. Vaughton '744 and/or Judson '643 and/or Lavey '698 teaches indicating a content "load status" of a hypermedia browser having a content viewing area for viewing content (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to |

20

| | U.S. Patent 6,339,780 | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744) and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 36.1 | displaying loaded content within the content viewing area of a screen of a hypermedia browser, the screen is without a "load status" graphic element, wherein a "load status" graphic element indicates a current content load status of the hypermedia browser; | "The PDA acts as a video-text client, displaying screens representing a portion of a hypertext document. Each screen is identified with a tag that contains the document's Universal Resource Location (URL) and an offset within the document. In the simplest PDA-based client, when a hypertext link or scroll arrow is tapped by the user, the tag associated with the interactor is sent in a request to the workstation. The workstation obtains the document from the Web, parses it (caching the result for later requests), formats the desired screen for the PDA, and then replys to the PDA's request." pg. 3. <br><br> "A pleasant discovery is that most Web documents are quite readable on a 320x240 pixel screen, even though they were designed for a much larger display." pg. 4. <br><br> To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art for the "load status" graphic element to indicate a current content load status of the hypermedia browser. <br><br> In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious.  Vaughton '744 and/or Judson '643 and/or Lavey '698 teaches a "load status" graphic element indicating a current content load status of the hypermedia browser (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |

21

685

| U.S. Patent 6,339,780 | | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| 36.2 | receiving an instruction to load new content into the content viewing area; | "The PDA acts as a video-text client, displaying screens representing a portion of a hypertext document. Each screen is identified with a tag that contains the document's Universal Resource Location (URL) and an offset within the document. In the simplest PDA-based client, when a hypertext link or scroll arrow is tapped by the user, the tag associated with the interactor is sent in a request to the workstation. The workstation obtains the document from the Web, parses it (caching the result for later requests), formats the desired screen for the PDA, and then replys to the PDA's request." pg. 3. |
| 36.3 | loading such new content into the content viewing area; and | "The PDA acts as a video-text client, displaying screens representing a portion of a hypertext document. Each screen is identified with a tag that contains the document's Universal Resource Location (URL) and an offset within the document. In the simplest PDA-based client, when a hypertext link or scroll arrow is tapped by the user, the tag associated with the interactor is sent in a request to the workstation. The workstation obtains the document from the Web, parses it (caching the result for later requests), formats the desired screen for the PDA, and then replys to the PDA's request." pg. 3. |
| 36.4 | while loading, displaying a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area; and | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to display a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area.

In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious.  Vaughton '744 and/or Judson '643 and/or Lavey '698 teaches displaying a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same |

22

686

| U.S. Patent 6,339,780 | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744) and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|
| | problem, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 36.5 | wherein content comprises data for presentation which is from a source external to the browser. | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein content comprises data for presentation which is from a source external to the browser. Bartlett notes that "[t]he workstation obtains the document from the Web, parses it (caching the result for later requests), formats the desired screen for the PDA, and then replys to the PDA's request." pg. 3.

In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious. Vaughton '744 and/or Judson '643 and/or Lavey '698 teach content comprising data for presentation which is from a source external to the browser. (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 37 | A hypermedia browser of claim 36, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language. | "The PDA acts as a video-text client, displaying screens representing a portion of a hypertext document." pg. 3.

One of ordinary skill in the art would recognize that a hypermedia browser has the function of downloading files from another system when, for example, a user selects a hypermedia link. To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement Bartlett with a hypermedia |

23

687

| U.S. Patent 6,339,780 | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|
| | browser wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.  Bartlett discloses a system that implements a World Wide Web browser on a mobile device.<br><br>See also Gessler at pg. 57, cited by Bartlett at pg. 6 ("In our current version we support the most common structures of HTML and HTML + and images.  The next release will include a complete HTML + interpreter which will also allow sensitive maps or tables on a PDA.") |
| 38<br><br>A hypermedia browser of claim 36, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web. | "The PDA acts as a video-text client, displaying screens representing a portion of a hypertext document." pg. 3.<br><br>One of ordinary skill in the art would recognize that a hypermedia browser has the function of downloading files from another system when, for example, a user selects a hypermedia link.  To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement Bartlett with a hypermedia browser wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web.  Bartlett discloses a system that implements a World Wide Web browser on a mobile device.<br><br>See also Gessler at pg. 57, cited by Bartlett at pg. 6 ("In our current version we support the most common structures of HTML and HTML + and images.  The next release will include a complete HTML + interpreter which will also allow sensitive maps or tables on a PDA.") |
| 39<br><br>A computer-readable medium as recited in claim 36 further having additional computer-executable instructions that perform a method comprising, upon completion of the loading, removing the "load status" graphic element to reveal | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to upon completion of the loading, remove the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed.<br><br>In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious.  Vaughton '744 and/or Judson '643 and/or |

24

| U.S. Patent 6,339,780 | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744) and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|
| the part of the content in the content viewing area that the graphic element obstructed when the element was displayed. | Lavey '698 teaches upon completion of the loading, removing the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings. One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period. Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 40. An information processing device comprising: | Bartlett was implemented on an Apple MessagePad (i.e., Newton). |
| 40.1 a processor; | "When designing for PDAs it might be dangerous to assume that processor speeds will rapidly improve. Cost, size, and power reduction seem to be more important than performance improvements. When more processor power is provided, it may not be available to the application programmer as it could be used to provide such things as software modems, improved handwriting recognition, or animation." pg. 4. |
| 40.2 a display; | "The PDA acts as a video-text client, displaying screens representing a portion of a hypertext document." pg. 3. |
| 40.2 a hypermedia browser executing on the processor to load and display content in a content viewing area on the display; wherein the hypermedia browser is configured to operate in a content-loading mode and a content-loaded mode; | "In order to separate promises from practice in PDAs and wireless communications, we decided to try to build a wireless PDA-based client to access the World Wide Web. Using equipment available in the winter of 1994, we were able to build a client that we call W4, the Wireless World Wide Web." Abstract.<br><br>"The PDA acts as a video-text client, displaying screens representing a portion of a hypertext document. Each screen is identified with a tag that contains the document's Universal Resource Location (URL) and an offset within the document. In the |

25

689

| | U.S. Patent 6,339,780 | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744) and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | simplest PDA-based client, when a hypertext link or scroll arrow is tapped by the user, the tag associated with the interactor is sent in a request to the workstation. The workstation obtains the document from the Web, parses it (caching the result for later requests), formats the desired screen for the PDA, and then replys to the PDA's request." pg. 3. |
| | | "A pleasant discovery is that most Web documents are quite readable on a 320x240 pixel screen, even though they were designed for a much larger display." pg. 4. |
| | | To the extent not expressly or inherently disclosed, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious. Vaughton '744 and/or Judson '643 and/or Lavey '698 teach a hypermedia browser configured to operate in a content-loading mode and a content-loaded mode (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings. One of skill in the art would be motivated to combine these references because they are each in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 40.3 | in the content-loaded mode, the hypermedia browser displays loaded content in the content viewing area and no "load status" graphic element is displayed, wherein absence of such "load status" graphic element indicates that the browser is in the content-loaded mode; | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein the hypermedia browser displays loaded content in the content viewing area and no "load status" graphic element is displayed, wherein absence of such "load status" graphic element indicates that the browser is in the content-loaded mode. |
| | | In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious.  Vaughton '744 and/or Judson '643 and/or Lavey '698 teach the hypermedia browser displaying loaded content in the content viewing area and no "load status" graphic element is displayed, wherein absence of |

26

| U.S. Patent 6,339,780 | | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | such "load status" graphic element indicates that the browser is in the content-loaded mode (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 40.4 | in the content-loading mode, the hypermedia browser loads content, displays such content in the content viewing area as it loads, and displays a "load status" graphic element over the content view area obstructing part of the content displayed in the content viewing area, wherein presence of such "load status" graphic element indicates that the browser is in the content-loading mode; and | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein the hypermedia browser loads content, displays such content in the content viewing area as it loads, and displays a "load status" graphic element over the content view area obstructing part of the content displayed in the content viewing area, wherein presence of such "load status" graphic element indicates that the browser is in the content-loading mode.

In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious.  Vaughton '744 and/or Judson '643 and/or Lavey '698 teach the hypermedia browser loads content, displays such content in the content viewing area as it loads, and displays a "load status" graphic element over the content view area obstructing part of the content displayed in the content viewing area, wherein presence of such "load status" graphic element indicates that the browser is in the content-loading mode (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods |

27

| U.S. Patent 6,339,780 | | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 40.5 | wherein content comprises data for presentation which is from a source external to the browser. | To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement a browser wherein content comprises data for presentation which is from a source external to the browser.  Bartlett notes that "[t]he workstation obtains the document from the Web, parses it (caching the result for later requests), formats the desired screen for the PDA, and then replys to the PDA's request." pg. 3. |
| | | In addition, the combination of Bartlett and Vaughton '744 and/or Judson '643 and/or Lavey '698 renders this claim obvious. Vaughton '744 and/or Judson '643 and/or Lavey '698 teach content comprising data for presentation which is from a source external to the browser. (see analysis of Vaughton '744 and/or Judson '643 and/or Lavey '698 in claim chart) and it would be obvious to one of skill in the art to modify Bartlett with these teachings.  One of skill in the art would be motivated to combine these references because they are all in the same field and share common subject matter (systems for downloading files from another system), address the same problem, and were developed during the same general time period.  Additionally, a person of ordinary skill in the art would have been motivated to combine the methods disclosed in these references because there was a design need and/or market pressure to do so, and there were a finite number of identified, predictable solutions. |
| 41 | A hypermedia browser of claim 40, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language. | "The PDA acts as a video-text client, displaying screens representing a portion of a hypertext document." pg. 3.

One of ordinary skill in the art would recognize that a hypermedia browser has the function of downloading files from another system when, for example, a user selects a hypermedia link.  To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement Bartlett with a hypermedia browser wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup |

28

692

| U.S. Patent 6,339,780 | | Bartlett alone and/or in combination with U.S. Patent 5,528,744 ("Vaughton '744") and/or U.S. Patent 5,572,643 ("Judson '643") and/or Lavey U.S. Patent 6,023,698 ("Lavey '698") and/or various systems implementing a web browser on a mobile device |
|---|---|---|
| | | language, and visible results of a scripting language.  Bartlett discloses a system that implements a World Wide Web browser on a mobile device. |
| | | See also Gessler at pg. 57, cited by Bartlett at pg. 6 ("In our current version we support the most common structures of HTML and HTML + and images. The next release will include a complete HTML + interpreter which will also allow sensitive maps or tables on a PDA.") |
| 42 | A hypermedia browser of claim 40, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web. | "The PDA acts as a video-text client, displaying screens representing a portion of a hypertext document." pg. 3. |
| | | One of ordinary skill in the art would recognize that a hypermedia browser has the function of downloading files from another system when, for example, a user selects a hypermedia link.  To the extent not expressly or inherently disclosed, it would have been obvious to one of skill in the art to implement Bartlett with a hypermedia browser wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web.  Bartlett discloses a system that implements a World Wide Web browser on a mobile device. |
| | | See also Gessler at pg. 57, cited by Bartlett at pg. 6 ("In our current version we support the most common structures of HTML and HTML + and images. The next release will include a complete HTML + interpreter which will also allow sensitive maps or tables on a PDA.") |

29