# EXHIBIT 14

PUBLIC VERSION

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.

Before the Honorable Theodore R. Essex
Administrative Law Judge

| | |
|---|---|
| **In the Matter of**<br><br>**CERTAIN HANDHELD ELECTRONIC COMPUTING DEVICES, RELATED SOFTWARE, AND COMPONENTS THEREOF** | **Investigation No. 337-TA-769** |

RESPONSE OF BARNES & NOBLE, INC. AND BARNESANDNOBLE.COM LLC
TO THE AMENDED VERIFIED COMPLAINT OF MICROSOFT CORPORATION
UNDER SECTION 337 OF THE TARIFF ACT OF 1930, AS AMENDED,
<u>AND NOTICE OF INVESTIGATION</u>

**COUNSEL FOR RESPONDENTS**
**BARNES & NOBLE, INC. AND**
**BARNESANDNOBLE.COM LLC**

Richard L. DeLucia
A. Antony Pfeffer
Charles A. Weiss
Paul M. Richter
John R. Kenny
KENYON & KENYON LLP
One Broadway
New York, NY 10004
Tel: (212) 425-7200
Fax: (212) 425-5288

Marcia H. Sundeen
Jeffrey S. Gerchick
Aimee N. Soucie
KENYON & KENYON LLP
1500 K Street, NW
Washington, DC 20005
Tel: (202) 220-4200
Fax: (202) 220-4201

**PUBLIC VERSION**

Pursuant to 19 C.F.R. § 210.13, Respondents Barnes & Noble, Inc. and barnesandnoble.com LLC (collectively, "Barnes & Noble") hereby provide a response to the Amended Verified Complaint filed under Section 337 of the Tariff Act of 1930, as Amended ("Section 337") by Microsoft Corporation ("Microsoft") on April 8, 2011 and to the Notice of Investigation issued by the United States International Trade Commission ("the Commission") on April 19, 2011.

Microsoft's complaint alleges that Barnes & Noble's Nook™ and Nook Color™ e-book reader products infringe certain claims of U.S. Patent Nos. 5,778,372 (the "'372 patent"), 6,339,780 (the "'780 patent"), 5,889,522 (the "'522 patent"), 6,891,551 (the "'551 patent"), and 6,957,233 (the "'233 patent"). These allegations appear to center on the Nook™'s and Nook Color™'s use of the Android™ Operating System. The '372, '780, '522, '551, and '233 patents, however, do not cover, claim, or disclose the Android™ Operating System. Instead, they claim five insubstantial and trivial features, including what Microsoft has itself described as (1) the "display of a webpage's content before the background image is received, allowing users to interact with the page faster," (2) the "superimpos[ing of] download status on top of the downloading content", (3) "easy ways to navigate through information provided by their device apps via a separate control window with tabs"; (4) "[p]rovid[ing] users the ability to annotate text without changing the underlying document"; and (5) "[p]ermit[ing] users to easily select text in a document and adjust that selection."[1] The Nook™ and Nook Color™ do not infringe any valid claim of the '372, '780, '522, '551, and '233 patents and none of these trivial features serve as a basis for customer demand for these products. The subject matter embraced by the '372,

---

[1] http://blogs.technet.com/b/microsoft_on_the_issues/archive/2011/03/21/android-patent-infringement-licensing-is-the-solution.aspx

PUBLIC VERSION

'780, '522, '551, and '233 patents was not new and would have been highly obvious at the time those patents were filed.

Indeed, Microsoft is misusing these patents as part of a scheme to try to eliminate or marginalize the competition to its own operating systems, including its Windows Phone 7 mobile device operating system, posed by the open source Android™ operating system and other open source operating systems. Microsoft's conduct directly harms both competition for and consumers of eReaders, smartphones, tablet computers and other mobile electronic devices, and renders Microsoft's patents unenforceable.

Barnes & Noble responds to the like-numbered paragraphs of Microsoft's complaint as follows. Barnes & Noble has adopted the headings found in the complaint for ease of reference. However, to the extent that such headings themselves contain factual and legal characterizations, Barnes & Noble denies such characterizations.

## RESPONSE TO THE COMPLAINT

### I.   INTRODUCTION

1.    Barnes & Noble denies the statements and allegations of paragraph 1 insofar as they contain opinions and legal arguments rather than factual assertions, and therefore, require no response. To the extent a response is required, Barnes & Noble admits that Microsoft has filed a complaint with the Commission pursuant to Section 337. Barnes & Noble further admits that Microsoft's complaint purports to name "Barnes & Noble, Inc., barnesandnoble.com LLC, Hon Hai Precision Industry Co., Ltd., Foxconn Electronics, Inc., Foxconn Precision Component (Shenzhen) Co. Ltd., Foxconn International Holdings Ltd., and Inventec Corporation" as Respondents.

PUBLIC VERSION

2.      Barnes & Noble admits that Microsoft's complaint identifies the '372, '522, '780, '551, and '233 patents as the asserted patents.  Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph relating to ownership of the '372, '780, '522, '551, and '233 patents, and, therefore, denies them.  Barnes & Noble denies the remaining allegations set forth in this paragraph.

3.      Barnes & Noble denies the statements and allegations contained in paragraph 3 relating to the subject matter purportedly embraced by the '372, '780, '522, '551, and '233 patents insofar as they constitute opinions and legal arguments, and therefore, require no response.  Barnes & Noble admits that Microsoft has identified claims 1 and 5 of the '372 patent, claims 1, 2, and 12 of the '522 patent, claims 1-6, 9-14, 17-26, and 29-42 of the '780 patent, claims 1-3, 5, and 7-11 of the '511 patent, and claims 21 and 22 of the '233 patent as the asserted claims.  Barnes & Noble denies the remaining allegations set forth in this paragraph.

4.      Barnes & Noble admits that Microsoft has identified claims 1 and 5 of the '372 patent, claims 1, 2, and 12 of the '522 patent, claims 1-6, 9-14, 17-26, and 29-42 of the '780 patent, claims 1-3, 5, and 7-11 of the '511 patent, and claims 21 and 22 of the '233 patent as the asserted claims.  Barnes & Noble denies the remaining allegations set forth in this paragraph.

5.      Denied.

6.      Barnes & Noble denies the statements and allegations contained in paragraph 6 insofar as they constitute opinions and legal arguments, and therefore, require no response.

## II.   THE PARTIES

### A.   Complainant

7.      Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

4

8

PUBLIC VERSION

8.      Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

9.      Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

10.     Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

11.     Barnes & Noble admits that what purports to be copy of Microsoft's Form 10-K for the fiscal year ended June 30, 2010 was attached to the complaint as Exhibit 1. Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph and, therefore, denies them.

12.     Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

13.     Barnes & Noble admits that Exhibit 38C purports to list "Licensees Under U.S. Patent No. 5,778,372," "Licensees Under U.S. Patent No. 5,889,522," "Licensees Under U.S. Patent No. 6,339,780," "Licensees Under U.S. Patent No. 6,891,551," and "Licensees Under U.S. Patent No. 6,957,233." Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the other allegations of this paragraph relating to Exhibit 38C and, therefore, denies them. Barnes & Noble denies the remaining statements and allegations of paragraph 13 insofar as they contain opinions and legal arguments rather than factual assertions, and therefore, require no response.

9

PUBLIC VERSION

**B.**    **Proposed Respondents**

14.     Barnes & Noble admits that Barnes & Noble, Inc. is a corporation organized and existing under the laws of Delaware and has a place of business at 122 Fifth Avenue, New York, New York, 10011.

15.     Barnes & Noble admits that barnesandnoble.com LLC is a limited liability corporation organized and existing under the laws of Delaware and has a place of business at 76 9th Avenue, New York, New York, 10011.

16.     Barnes & Noble admits that it or a related entity imports into the United States, sells within the United States, and offers for sale in the United States devices known as the Nook™ and Nook Color™. Barnes & Noble also admits that it sells e-books for use with the Nook™ and Nook Color™. Barnes & Noble denies the remaining allegations of this paragraph.

17.     Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

18.     Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

19.     Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

20.     Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

21.     Barnes & Noble admits that at least one of Hon Hai Precision Industry Co., Ltd., Foxconn Electronics, Inc., Foxconn Precision Component (Shenzhen) Co. Ltd., Foxconn International Holdings Ltd., Inventec Corporation, or a related entity, is involved in the manufacture of the Nook™ and Nook Color™ devices. Barnes & Noble is without knowledge or

6

PUBLIC VERSION

information sufficient to form a belief as to the truth of the remaining allegations of this paragraph and, therefore, denies them.

22.     Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

23.     Barnes & Noble admits that Inventec Corporation or a related entity was involved in the development of the Nook Color™ device.  Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph and, therefore, denies them.

24.     Barnes & Noble admits that it or a related entity imports into the United States, sells within the United States, and offers for sale in the United States devices known as the Nook™ and Nook Color™.  Barnes & Noble admits that the Nook™ and Nook Color™ employ the Android™ Operating System and include various applications.  Barnes & Noble admits that the Nook™ and Nook Color™ are marketed and sold in the United States both at retail stores and via various websites.  Barnes & Noble denies any remaining allegations set forth in this paragraph.

25.     Barnes & Noble admits that the Nook™ and Nook Color™ are manufactured in China, imported into the United States, and sold within the United States.  Barnes & Noble denies the remaining allegations set forth in this paragraph.

26.     Barnes & Noble admits that a copy of Barnes & Noble, Inc's 2010 Annual report was attached to the complaint as Exhibit 2A.  Barnes & Noble also admits that copies of documents entitled "Hon Hai Precision Industry Co. Ltd. and Subsidiaries Consolidated Financial Statements and Report of Independent Accounts June 30 2009 and 2010," "2009 Annual Report FIH® Foxconn International Holdings Limited," and "Inventec Corporation

**PUBLIC VERSION**

Financial Statements September 30, 2010 and 2009 and Independent Auditors' Review Report"
were respectively attached to the complaint as Exhibits 2B through 2D. Barnes & Noble denies
any remaining allegations set forth in this paragraph.

## III.   PRODUCTS AT ISSUE

27.     Barnes & Noble admits that Microsoft's complaint purports to identify the
Nook™ and Nook Color™ as the accused products.  Barnes & Noble also admits that it or a
related entity imports into the United States, sells within the United States, and offers the Nook™
and Nook Color™ for sale in the United States.  Barnes & Noble denies the remaining
allegations set forth in this paragraph.

## IV.   THE PATENTS AT ISSUE

### A.     U.S. Patent No. 5,778,372

#### 1.     Identification of the Patent and Ownership by Microsoft

28.     Barnes & Noble admits that what purports to be copy of the '372 patent was
attached to Microsoft's complaint as Exhibit 3.  Barnes & Noble admits that the '372 patent, on
its face, indicates an issue date of July 7, 1998, but denies that the '372 patent was properly
issued.  Barnes & Noble also admits that the '372 patent is entitled "Remote Retrieval and
Display Management of Electronic Document with Incorporated Images."  Barnes & Noble
admits that what purports to be a copy of an assignment referencing U.S. Patent App. 08/634,380
was attached to Microsoft's complaint as Exhibit 4.  Barnes & Noble is without knowledge or
information sufficient to form a belief as to the truth of the remaining allegations of this
paragraph and, therefore, denies them.

29.     Barnes & Noble admits that what purports to be copy of the file wrapper and
contents of U.S. Application No. 08/634,380 was attached to Microsoft's complaint as Appendix

8

**PUBLIC VERSION**

A.  Barnes & Noble also admits that what purport to be copies of U.S. Patent Nos. 5,446,740 to

Yien et al., 5,493,677 to Balogh et al., 5,499,330 to Lucas et al., 5,528,379 to Lucas et al.,

5,530852 to Meske, Jr. et al., 5,537,526 to Anderson et al., 5,544,051 to Senn et al., 5,572,643 to

Judson, 5,621,874 to Lucas et al., 5,623,652 to Vora et al., 5,625,818 to Zarmer et al., 5,649,186

to Ferguson et al., 5,659,729 to Nielsen, and 5,778,372 to Cordell et al. were attached to

Microsoft's complaint as Appendix B.  Barnes & Noble denies any remaining allegations set

forth in this paragraph.

### 2.    Non-Technical Description of the Patented Inventions

30.    Barnes & Noble denies the statements and allegations contained in paragraph 30

to the extent that they relate in any way to a proposed construction of any of the terms of any of

the claims regarding the '372 patent.  Barnes & Noble also denies the statements and allegations

contained in paragraph 30 insofar as they constitute opinions and legal arguments, and therefore,

require no response.

31.    Barnes & Noble denies the statements and allegations contained in paragraph 31

to the extent that they relate in any way to a proposed construction of any of the terms of any of

the claims regarding the '372 patent.  Barnes & Noble admits, however, that web pages and other

electronic documents may include graphics, text, and links.  Barnes & Noble denies any

remaining allegations set forth in this paragraph.

32.    Barnes & Noble denies the statements and allegations contained in paragraph 32

to the extent that they relate in any way to a proposed construction of any of the terms of any of

the claims regarding the '372 patent.  Barnes & Noble admits, however, that a website may be

stored, at least in part, as an HTML document.  Barnes & Noble also admits that an HTML

document may specify how a website is to be displayed. Barnes & Noble denies any remaining allegations set forth in this paragraph.

33.      Barnes & Noble denies the statements and allegations contained in paragraph 33 to the extent that they relate in any way to a proposed construction of any of the terms of any of the claims regarding the '372 patent. Barnes & Noble admits, however, that an image may have a larger file size than an HTML document. Barnes & Noble denies the remaining statements and allegations contained in paragraph 33 insofar as they constitute opinions and legal arguments, and therefore, require no response.

34.      Barnes & Noble denies the statements and allegations contained in paragraph 34 to the extent that they relate in any way to a proposed construction of any of the terms of any of the claims regarding the '372 patent. Barnes & Noble also denies the statements and allegations contained in paragraph 34 insofar as they constitute opinions and legal arguments, and therefore, require no response.

35.      Barnes & Noble denies the statements and allegations contained in paragraph 35 to the extent that they relate in any way to a proposed construction of any of the terms of any of the claims regarding the '372 patent. Barnes & Noble also denies the statements and allegations contained in paragraph 35 insofar as they constitute opinions and legal arguments, and therefore, require no response.

### 3.      Foreign Counterparts to the '372 Patent

36.      Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

PUBLIC VERSION

**B.**   **U.S. Patent No. 5,889,522**

      **1.**   **Identification of the Patent and Ownership by Microsoft**

37.   Barnes & Noble admits that what purports to be copy of the '522 patent was attached to Microsoft's complaint as Exhibit 5.  Barnes & Noble admits that the '522 patent, on its face, indicates an issue date of March 30, 1999, but denies that the '522 patent was properly issued.  Barnes & Noble also admits that the '522 patent is entitled "System Provided Child Window Controls."  Barnes & Noble admits that what purports to be a copy of an assignment referencing U.S. Patent App. 08/355,400 was attached to Microsoft's complaint as Exhibit 6.  Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph and, therefore, denies them.

38.   Barnes & Noble admits that what purports to be copy of the file wrapper and contents of U.S. Application No. 08/355,400 was attached to Microsoft's complaint as Appendix C.  Barnes & Noble also admits that what purport to be copies of U.S. Patent Nos. 4,266,253 to Matherat, 5,467,459 to Alexander et al., 5,731,813 to O'Rourke et al., 5,760,771 to Blonder et al., 5,774,666 to Portuesi, 5,877,766 to Bates et al., 5,973,692 to Knowlton et al., 5,983,005 to Monteiro et al., 6,101,510 to Stone et al., and 6,339,780 to Shell et al. were attached to Microsoft's complaint as Appendix D.  Barnes & Noble denies any remaining allegations set forth in this paragraph.

      **2.**   **Non-Technical Description of the Patented Inventions**

39.   Barnes & Noble denies the statements and allegations contained in paragraph 39 to the extent that they relate in any way to a proposed construction of any of the terms of any of the claims regarding the '522 patent.  Barnes & Noble also denies the statements and allegations

15

PUBLIC VERSION

contained in paragraph 39 insofar as they constitute opinions and legal arguments, and therefore, require no response.

    40.    Barnes & Noble denies the statements and allegations contained in paragraph 40 to the extent that they relate in any way to a proposed construction of any of the terms of any of the claims regarding the '522 patent. Barnes & Noble admits, however, that an Internet browser may exist in a window displayed on a computer screen. Barnes & Noble also admits that an Internet browser can display web pages. Barnes & Noble admits that at least some Internet browsers provide "history" and "favorites" menu items. Barnes & Noble further admits that at least some Internet browsers include tabs. Barnes & Noble denies the remaining statements and allegations contained in paragraph 40 insofar as they constitute opinions and legal arguments, and therefore, require no response.

### 3.    Foreign Counterparts to the '522 patent

    41.    Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

### C.    U.S. Patent No. 6,339,780

### 1.    Identification of Patent and Ownership by Microsoft

    42.    Barnes & Noble admits that what purports to be copy of the '780 patent was attached to Microsoft's complaint as Exhibit 7. Barnes & Noble admits that the '780 patent, on its face, indicates an issue date of January 15, 2002, but denies that the '780 patent was properly issued. Barnes & Noble also admits that the '780 patent is entitled "Loading Status in a Hypermedia Browser Having a Limited Available Display Area." Barnes & Noble admits that what purports to be a copy of an assignment referencing U.S. Patent App. 08/851,877 was attached to Microsoft's complaint as Exhibit 8. Barnes & Noble is without knowledge or

PUBLIC VERSION

information sufficient to form a belief as to the truth of the remaining allegations of this paragraph and, therefore, denies them.

43.     Barnes & Noble admits that what purports to be copy of the file wrapper and contents of U.S. Application No. 08/851,877 was attached to Microsoft's complaint as Appendix E. Barnes & Noble also admits that what purport to be copies of U.S. Patent Nos. 5,283,684 to Thomas et al., 5,463,724 to Anderson et al., 5,500,929 to Dickinson, 5,550,563 to Matheny et al., 5,559,946 to Porter, and 5,889,522 to Chew et al. were attached to Microsoft's complaint as Appendix F. Barnes & Noble denies any remaining allegations set forth in this paragraph.

## 2.     Non-Technical Description of the Patented Invention

44.     Barnes & Noble denies the statements and allegations contained in paragraph 44 to the extent that they relate in any way to a proposed construction of any of the terms of any of the claims regarding the '780 patent. Barnes & Noble also denies the statements and allegations contained in paragraph 44 insofar as they constitute opinions and legal arguments, and therefore, require no response.

45.     Barnes & Noble denies the statements and allegations contained in paragraph 45 to the extent that they relate in any way to a proposed construction of any of the terms of any of the claims regarding the '780 patent. Barnes & Noble denies the statements and allegations contained in paragraph 45 insofar as they constitute opinions and legal arguments, and therefore, require no response.

## 3.     Foreign Counterparts to the '780 Patent.

47.     Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

PUBLIC VERSION

**D.**     U.S. Patent No. 6,891,551

    **1.**     **Identification of the Patent and Ownership by Microsoft**

48.     Barnes & Noble admits that what purports to be copy of the '551 patent was attached to Microsoft's complaint as Exhibit 9.  Barnes & Noble admits that the '551 patent, on its face, indicates an issue date of May 10, 2005, but denies that the '551 patent was properly issued.  Barnes & Noble also admits that the '551 patent is entitled "Selection Handles in Editing Electronic Documents."  Barnes & Noble admits that what purports to be a copy of an assignment referencing U.S. Patent Apps. 60/247,973 and 09/768,171 was attached to Microsoft's complaint as Exhibit 10.  Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph and, therefore, denies them.

49.     Barnes & Noble admits that what purports to be copy of the file wrapper and contents of U.S. Application No. 09/768,171 was attached to Microsoft's complaint as Appendix G.  Regarding Appendix H, Barnes & Noble was not provided with a copy of that Appendix and thus is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the Appendix and, therefore, denies them.  Barnes & Noble denies any remaining allegations set forth in this paragraph.

    **2.**     **Non-Technical Description of the Patented Inventions**

50.     Barnes & Noble denies the statements and allegations contained in paragraph 50 to the extent that they relate in any way to a proposed construction of any of the terms of any of the claims regarding the '551 patent.  Barnes & Noble also denies the statements and allegations contained in paragraph 50 insofar as they constitute opinions and legal arguments, and therefore, require no response.

14

18

PUBLIC VERSION

51.     Barnes & Noble denies the statements and allegations contained in paragraph 51 to the extent that they relate in any way to a proposed construction of any of the terms of any of the claims regarding the '551 patent. Barnes & Noble also denies the statements and allegations contained in paragraph 51 insofar as they constitute opinions and legal arguments, and therefore, require no response.

### 3.     Foreign Counterparts to the '551 Patent

52.     Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

### E.     U.S. Patent No. 6,957,233

### 1.     Identification of the Patent and Ownership by Microsoft

53.     Barnes & Noble admits that what purports to be copy of the '233 patent was attached to Microsoft's complaint as Exhibit 11. Barnes & Noble admits that the '233 patent, on its face, indicates an issue date of October 18, 2005, but denies that the '233 patent was properly issued. Barnes & Noble also admits that the '233 patent is entitled "Method and Apparatus for Capturing and Rendering Annotations for Non-Modifiable Electronic Content." Barnes & Noble admits that what purports to be a copy of an assignment referencing U.S. Patent App. 09/455,806 was attached to Microsoft's complaint as Exhibit 12. Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph and, therefore, denies them.

54.     Barnes & Noble admits that what purports to be copy of the file wrapper and contents of U.S. Application No. 09/455,806 was attached to Microsoft's complaint as Appendix I. Regarding Appendix J, Barnes & Noble was not provided with a copy of that Appendix and thus is without knowledge or information sufficient to form a belief as to the truth of the

allegations regarding the Appendix and, therefore, denies them.  Barnes & Noble denies any remaining allegations set forth in this paragraph.

### 2.     Non-Technical Description of the Patented Inventions

55.     Barnes & Noble denies the statements and allegations contained in paragraph 55 to the extent that they relate in any way to a proposed construction of any of the terms of any of the claims regarding the '233 patent.  Barnes & Noble also denies the statements and allegations contained in paragraph 55 insofar as they constitute opinions and legal arguments, and therefore, require no response.

56.     Barnes & Noble denies the statements and allegations contained in paragraph 56 to the extent that they relate in any way to a proposed construction of any of the terms of any of the claims regarding the '233 patent.  Barnes & Noble also denies the statements and allegations contained in paragraph 56 insofar as they constitute opinions and legal arguments, and therefore, require no response.

### 3.     Foreign Counterparts to the '233 Patent

57.     Barnes & Noble admits that what purports to be a listing of foreign counterparts to the '233 patent was attached to Microsoft's complaint as Exhibit 13.  Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph and, therefore, denies them.

## V.     THE DOMESTIC INDUSTRY

### A.     Microsoft's Domestic Industry

58.     Barnes & Noble denies the statements and allegations contained in paragraph 58 insofar as they constitute opinions and legal arguments, and therefore, require no response. Barnes & Noble is also without knowledge or information sufficient to form a belief as to the

16

PUBLIC VERSION

truth of whether, as required by Section 337(a)(2) and defined by Section 337(a)(3), an industry in the United States exists with respect to the'372, '780, '522, '551, and '233 patents, and therefore, denies Microsoft's assertions to that effect.  Barnes & Noble is also without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, including Microsoft's allegation that it has engaged in "investment with respect to Microsoft Patents in the United States," and, therefore, denies them.

59.      Barnes & Noble denies the statements and allegations contained in paragraph 59 insofar as they constitute opinions and legal arguments, and therefore, require no response. Barnes & Noble is also without knowledge or information sufficient to form a belief as to the truth of whether, as required by Section 337(a)(2) and defined by Section 337(a)(3), an industry in the United States exists with respect to the'372, '780, '522, '551, and '233 patents, and therefore, denies Microsoft's assertions to that effect. Barnes & Noble is also without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, including Microsoft's allegation that it has engaged in "a broad range of qualifying domestic industry activities," and, therefore, denies them.

60.      Barnes & Noble denies the statements and allegations contained in paragraph 60 insofar as they constitute opinions and legal arguments, and therefore, require no response. Barnes & Noble is also without knowledge or information sufficient to form a belief as to the truth of whether, as required by Section 337(a)(2) and defined by Section 337(a)(3), an industry in the United States exists with respect to the'372, '780, '522, '551, and '233 patents, and therefore, denies Microsoft's assertions to that effect.  Barnes & Noble is also without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph and, therefore, denies them.

21

PUBLIC VERSION

61.     Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

62.     Barnes & Noble denies the statements and allegations contained in paragraph 62 insofar as they constitute opinions and legal arguments, and therefore, require no response. Barnes & Noble is also without knowledge or information sufficient to form a belief as to the truth of whether, as required by Section 337(a)(2) and defined by Section 337(a)(3), an industry in the United States exists with respect to the '372, '780, '522, '551, and '233 patents, and therefore, denies Microsoft's assertions to that effect.  Barnes & Noble is also without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph and, therefore, denies them.

63.     Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

64.     Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

66.     Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

67.     Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

68.     Barnes & Noble admits that a document entitled the "Declaration of Glen Copping on Behalf of Microsoft Corporation" was attached to Microsoft's complaint as Exhibit 15C.  Barnes & Noble also admits that claim charts that purport to apply claim 1 of the '372 patent to the "HTC Surround executing Windows Phone 7," claim 1 of the '522 patent to the "HTC Surround executing Windows Phone 7," claim 1 of the '780 patent to the "HTC Surround

18

PUBLIC VERSION

executing Windows Phone 7," and claim 1 of the '551 patent to "Microsoft Windows Phone 7,"

were respectively attached to Microsoft's complaint as Exhibits 16 through 19.  Barnes & Noble

is without knowledge or information sufficient to form a belief as to the truth of the remaining

allegations of this paragraph and, therefore, denies them.

### B.    Amazon.com's Domestic Industry

69.    Barnes & Noble admits that what purports to be a "Patent License and Covenant

Agreement" between Amazon Technologies, Inc., Amazon.com, Inc. and Microsoft Corp. was

attached to Microsoft's complaint as Exhibit 14C.  Barnes & Noble admits that Amazon.com is

an online retail website and is accessible in the United States.  Barnes & Noble admits that a

product known as the Kindle can be purchased via Amazon.com.  Barnes & Noble further admits

that a claim chart that purport to apply claim 21 of the '233 patent to the "Amazon.com Kindle"

was attached to Microsoft's complaint as Exhibit 20.  Barnes & Noble is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations of this

paragraph and, therefore, denies them.

70.    Barnes & Noble denies the statements and allegations contained in paragraph 70

insofar as they constitute opinions and legal arguments, and therefore, require no response.

Barnes & Noble is also without knowledge or information sufficient to form a belief as to the

truth of whether, as required by Section 337(a)(2) and defined by Section 337(a)(3), an industry

in the United States exists with respect to the'372, '780, '522, '551, and '233 patents, and

therefore, denies Microsoft's assertions to that effect.  Barnes & Noble is also without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

of this paragraph and, therefore, denies them.

23

PUBLIC VERSION

71.     Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

72.     Barnes & Noble denies the statements and allegations contained in paragraph 72 insofar as they constitute opinions and legal arguments, and therefore, require no response. Barnes & Noble is also without knowledge or information sufficient to form a belief as to the truth of whether, as required by Section 337(a)(2) and defined by Section 337(a)(3), an industry in the United States exists with respect to the '372, '780, '522, '551, and '233 patents, and therefore, denies Microsoft's assertions to that effect.  Barnes & Noble is also without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph and, therefore, denies them.

73.     Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

74.     Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

75.     Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

## VI.     SPECIFIC INSTANCES OF IMPORTATION AND SALE

76.     Barnes & Noble denies that it committed unfair acts by way of infringement of any valid, enforceable claim of the '372, '780, '522, '551, and '233 patents in violation of 19 U.S.C § 1337.  Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations of this paragraph and, therefore, denies them.

77.     Barnes & Noble admits that it or a related entity imports into the United States, sells within the United States, and offers for sale in the United States devices known as the

24

PUBLIC VERSION

Nook™ and Nook Color™. Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations of this paragraph and, therefore, denies them.

78.      Barnes & Noble admits that what purports to be a receipt for the purchase of two Nook™ and Nook Color™ devices from a Barnes & Noble retail location in New Jersey was attached to Microsoft's complaint as Exhibit 22. Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations of this paragraph and, therefore, denies them.

79.      Barnes & Noble admits that what purports to be printouts of a portion of www.barnesandnoble.com, a photograph of the portion of the box for the Nook™, a photograph of part of the back of the Nook Color™, and a photograph of a portion of the box of the Nook Color™, at least some of which include the phrase "Assembled in China," were attached to Microsoft's complaint as Exhibit 22. Barnes & Noble also admits that text is printed on both the Nook™ and Nook Color™ indicating that the devices are manufactured in China. Barnes & Noble denies any remaining allegations of this paragraph.

80.      Barnes & Noble admits that the Nook™ and Nook Color™ fall within the following classifications of the Harmonized Tariff Schedules of the United States: 8543.70.9200. Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations of this paragraph and, therefore, denies them.

## VII.  UNLAWFUL AND UNFAIR ACTS
## COMMITTED BY THE PROPOSED RESPONDENTS

81.      Denied.

82.      Barnes & Noble admits that it has received a copy of Microsoft's complaint. Barnes & Noble denies the remaining allegations of this paragraph.

21

PUBLIC VERSION

83.    Denied.

84.    Denied.

## VIII.    <u>RELATED LITIGATION</u>

85.    Barnes & Noble admits that a complaint encaptioned *Microsoft Corp. v. Barnes & Noble, Inc.*, No. 2:11-cv-00485-RAJ, alleging infringement of the '372, '780, '522, '551, and '233 patents was filed with the U.S. District Court for the Western District of Washington and that no motions were filed and no orders issued in connection with this action prior to April 8, 2011. Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations of this paragraph and, therefore, denies them.

86.    Barnes & Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

## IX.    <u>RELIEF REQUESTED</u>

87.    Barnes & Noble denies that Microsoft is entitled to any relief.

## RESPONSE TO NOTICE OF INVESTIGATION

Pursuant to Commission Rule 210.13, Barnes & Noble responds to the Notice of Investigation issued by the U.S. International Trade Commission on April 19, 2011 and published in the Federal Register on April 25, 2011 (76 Fed. Reg. 22918) as follows:

Barnes & Noble admits that Microsoft filed an original complaint with the Commission on March 21, 2011 and an amended complaint with additional exhibits on April 8, 2011 and April 12, 2011, as set forth in the Notice of Investigation. Barnes & Noble admits that the complaint, as amended, generally sets for the allegations summarized in the Notice of Investigation.

**PUBLIC VERSION**

Barnes & Noble further admits that Microsoft has requested that an investigation be instituted and that, after the investigation, an exclusion order and a cease and desist order be issued, as set forth in the Notice of Investigation.

Barnes & Noble also admits that the Commission has instituted an investigation in accordance with the terms of Paragraphs 1 through 3 of the Notice of Investigation. Barnes & Noble denies that it has violated any provision of Section 337, as amended.

Specifically, Barnes & Noble denies that it has engaged in any action that would constitute unlawful importation into the United States, sale for importation, or sale within the United States after importation, of Certain Handheld Electronic Computing Devices, Related Software, and Components Thereof. Barnes & Noble further contends that the claims of the '372, '780, '522, '551, and '233 patents are invalid or unenforceable and cannot support any remedy for alleged infringement.

Barnes & Noble denies that Microsoft is entitled to any relief in this proceeding.

Pursuant to Rule 210.13(b), Barnes & Noble provides the following additional information. By providing this information, Barnes & Noble intends only to supply data required by 19 C.F.R. § 210.13(b). Barnes & Noble specifically denies that any of the information or data supplied below relate to or support any allegations of infringement against Barnes & Noble or any violation of 19 U.S.C. § 1337:

(1) The quantity and value of the Nook™ and Nook Color™ devices is provided in Confidential Exhibit A to this Response; (2) The Harmonized Tariff Schedule item number for the Nook™ and Nook Color™ devices imported by or on behalf of Barnes & Noble is 8543.70.9200; (3) Barnes & Noble relies on third parties to manufacture the Nook™ and Nook Color™; (4) Barnes & Noble notes that the United States constitutes a substantial market for

23

PUBLIC VERSION

Barnes & Noble for the Nook™ and Nook Color™ devices; and (5) The Foxconn entities

manufacture the Nook™ and Inventec Corporation manufactures the Nook Color™ (the

addresses of these entities are set forth in Microsoft's complaint).


BARNES & NOBLE'S AFFIRMATIVE DEFENSES

## I.   FIRST AFFIRMATIVE DEFENSE: UNENFORCEABILITY DUE TO PATENT MISUSE

### A.   Introduction

1.     Microsoft's claims of infringement of the '372, '780, '522, '551, and '233 patents

against Barnes & Noble are barred by the doctrine of patent misuse.

2.     Microsoft has impermissibly broadened the physical scope of

the '372, '780, '522, '551, and '233 patents in furtherance of a plan or scheme orchestrated by

Microsoft and its agents to eliminate or marginalize the competition to Microsoft's own

Windows Phone 7 mobile device operating system posed by the open source Android™

Operating System and other open source operating systems.  As part of this scheme, Microsoft

has asserted patents that extend only to arbitrary, outmoded, or non-essential design features, but

uses these patents to demand that every manufacturer of an Android-based mobile device take a

license from Microsoft and pay exorbitant licensing fees or face protracted and expensive patent

infringement litigation.  The asserted patents do not have a lawful scope sufficient to control the

Android™ Operating System as Microsoft is attempting to do, and Microsoft's misuse of these

patents directly harms both competition for and consumers of all eReaders, smartphones, tablet

computers and other mobile electronic devices.

PUBLIC VERSION

**B.**     Microsoft's Attempt to Control the Android Operating System

3.     Microsoft did not invent, research, develop, or make available to the public mobile devices employing the Android™ Operating System and other open source operating systems, but nevertheless seeks to dominate those devices and operating systems.  On information and belief, Microsoft intends to take and has taken definite steps towards making competing operating systems such as the Android™ Operating System unusable and unattractive to both consumers and device manufacturers through exorbitant license fees and absurd licensing restrictions that bear no relation to the scope and subject matter of its own patents.

4.     On information and belief, to perpetuate this scheme, Microsoft and its agents, including spokesman and chief executive officer Mr. Steven Ballmer, have publicly stated that through its patents Microsoft can dominate, control, and exclude from the market the Android™ Operating System, other open source operating systems, and open source applications such as Google Chrome.  These statements are unjustified in view of the scope of Microsoft's patents. Moreover, neither Microsoft nor Mr. Ballmer has ever identified to the American public the basis for these grand assertions of dominance.

5.     On information and belief, Microsoft intends to utilize its patents to control the activities of and extract fees from the designers, developers, and manufacturers of devices, including tablets, eReaders, and other mobile devices, that employ the Android™ Operating System.

6.     On information and belief, Microsoft has falsely and without justification asserted that its patents somehow provide it with the right to prohibit device manufacturers from employing new versions of the Android™ Operating System, or third party software.

29

PUBLIC VERSION

7.     Without support or justification, Microsoft has communicated to the public through press releases and other public statements (including press releases relating to this very action) that the Android™ Operating System generally infringes Microsoft's patents, and that all device manufacturers employing the Android™ Operating System must either pay Microsoft's exorbitant licensing fees or face costly and protracted patent infringement litigation.

8.     On information and belief, Microsoft's assertion of complete and total control and dominance over the Android™ Operating System is entirely unjustified and finds no root in any supposed patents identified or even possessed by Microsoft.

9.     In addition, on information and belief, as part of Microsoft's recently announced agreement with Nokia to replace Nokia's Symbian operating system with Microsoft's own mobile device operating system, Microsoft and Nokia discussed and apparently agreed upon a strategy for coordinated offensive use of their patents.  Indeed, in videotaped remarks made two days after the Microsoft-Nokia agreement was announced, Nokia's CEO Stephen Elop confirmed that Microsoft and Nokia had discussed how their combined intellectual property portfolio is "remarkably strong" and that Microsoft and Nokia intended to use this combined portfolio both defensively and offensively.[2]  This type of horizontal agreement between holders of significant patent portfolios is per se illegal under the antitrust laws, threatens competition for mobile device operating systems and is further evidence of Microsoft's efforts to dominate and control Android and other open source operating systems.

C.     **Microsoft's Initial Approach to Barnes & Noble**

10.    In furtherance of its scheme to dominate, marginalize, and eliminate commercial use of the Android™ Operating System, Microsoft initially contacted Barnes & Noble in 2010,

---

[2] http://www.techeye.net/business/swingin-stephen-elop-confirms-nokia-ms-deal-is-about-patent-protection

**PUBLIC VERSION**

through an email from Rainer Kuehling, Microsoft's Senior Manager of the Microsoft
Intellectual Property Licensing Office, to William Lynch, then President of Barnes & Noble.com,
stating that Microsoft would like to meet with Barnes & Noble to discuss "patent issues relating
to Barnes & Nobles' eReader."

      11.     Barnes & Noble and Microsoft then met on July 20, 2010, at the New York offices
of Barnes & Noble.com.  The meeting was attended by Dick Greeley, Director of Licensing for
the Microsoft Intellectual Property Licensing Office; Carl Brandt, Associate General Counsel for
IP and Litigation for Microsoft; Tony Astarita, Vice President of Product Development for
Barnes & Noble.com; Bradley A. Feuer, then Acting General Counsel of Barnes & Noble; and
outside counsel for Barnes & Noble.  At the meeting, Microsoft alleged that the Nook™
infringed six patents purportedly owned by Microsoft.  Microsoft had prepared claim charts
purportedly detailing the alleged infringement but insisted that it would only share the detailed
claim charts if Barnes & Noble agreed to sign a non-disclosure agreement ("NDA") that would
cover the claim charts as well as all other aspects of the parties' discussions.  Noting that the
patents were public and that the infringement allegations pertained to Barnes & Noble's public
product, Barnes & Noble refused to sign an NDA.  Insisting that an NDA was necessary,
Microsoft discussed the alleged infringement on a high-level basis only.  Microsoft nevertheless
maintained that it possessed patents sufficient to dominate and entirely preclude the use of the
Android™ Operating System by the Nook™.  Microsoft demanded an exorbitant royalty (on a
per device basis) for a license to its patent portfolio for the Nook™ device and at the end of the
meeting Microsoft stated that it would demand an even higher per device royalty for any device
that acted "more like a computer" as opposed to an eReader.

31

**PUBLIC VERSION**

12.     On August 3, 2010, Microsoft sent Barnes & Noble an email purportedly following up on the July 20, 2010 meeting. The email attached a presentation that contained high-level, publicly available information as well as a list of the patents that Microsoft stated were "exemplary patents that read on the Barnes and Noble's Nook device." The presentation contained a footer stating that the presentation was "Subject to FRE 408."

13.     On August 23, 2010, Mr. Greeley sent an email to Barnes & Noble stating that Microsoft wanted to schedule a follow-up meeting with Barnes & Noble to have a "[d]etailed discussion of Microsoft patents as they pertain to the Nook" and to elicit a "[r]esponse from Barnes and Nobel [sic] to Microsoft's proposed terms." Mr. Greeley marked the email as "Subject to FRE 408." Mr. Greeley sent a follow-up email on August 26, 2010, requesting a response to the August 23, 2010 email. On August 26, 2010, Mr. Feuer responded to Mr. Greeley, informing him that Mr. Astarita was leaving the company and that Barnes & Noble needed to find his replacement for these matters. Additionally, Mr. Feuer stated in his email that "please keep in mind that we do not consider any of our conversations to be confidential."

14.     On September 30, 2010, Mr. Greeley sent an email to Mr. Feuer regarding scheduling a further meeting and also stating that if Barnes & Noble would not agree to consider the claim charts as confidential then Microsoft would "need to limit the discussion to the patent numbers" and that "[w]e also want to discuss the **licensing terms and would assume that these discussions and any shared agreements will be treated as confidential.**"

15.     Microsoft and Barnes & Noble exchanged a series of emails attempting to find an agreeable date to meet, which was eventually set for December 16, 2010 at the Barnes & Noble headquarters in New York. Mr. Greeley exchanged several emails with Mr. Gene DeFelice, who was newly appointed Barnes & Noble General Counsel, as well as Mr. Feuer, pursuant to which

PUBLIC VERSION

Mr. Greeley stated that he had located existing NDAs between Barnes & Noble and Microsoft covering matters that were totally unrelated to the patent issues under discussion. In a November 30, 2010 email to Mr. DeFelice and Mr. Feuer, Mr. Greeley wrote that the email was subject to "FRE 408 and Microsoft-Barnes & Noble Non-Disclosure Agreement." Mr. Greeley further stated that Microsoft had not provided the full claim charts to Barnes & Noble because Mr. Feuer "refused to treat them as confidential information under our NDA."

16.     On December 3, 2010, Mr. DeFelice responded to Mr. Greeley's November 30, 2010 email stating, among other things, "I noticed that the heading of your email referred to a Barnes & Noble Non-Disclosure Agreement. As you know full well, there is no such agreement, and as you correctly note in the body of your email, Brad Feuer has been clear with Microsoft that we are not willing to sign or otherwise agree to a Non-Disclosure Agreement. Therefore, we ask you to please not try to cloud the record with inaccurate characterizations." Mr. DeFelice further noted that, as Mr. Feuer had previously advised Microsoft, given the fact that the patents are public "B&N doesn't see anything confidential in allegations of why our marketed device or devices infringe a public patent."

17.     On December 7, 2010, Mr. Greeley sent an email to Mr. DeFelice and Mr. Feuer confirming the December 16, 2010 meeting and acknowledging that "as per your email, we will not be having this conversation under NDA."

18.     The December 16, 2010 meeting between Microsoft and Barnes & Noble was attended by Mr. Greeley and Mr. Brandt, on behalf of Microsoft, and Mr. DeFelice, Mr. Feuer, and Mr. Jeffrey Snow, on behalf of Barnes & Noble. Microsoft continued to maintain that its patents were sufficient to dominate and entirely preclude the use of the Android™ Operating System by the Nook™ and also asserted that they would preclude use of Android by Barnes &

PUBLIC VERSION

Noble's new Nook Color™ product.  Barnes & Noble requested that Microsoft set forth the basis

for these allegations.  Microsoft, however, continued to insist that it would not provide the basis

for its allegations without first entering into an NDA.  The parties therefore negotiated a form of

NDA at this meeting entitled "Agreement" (the "Agreement").  The Agreement was very limited

in scope, with "Confidential Information" defined as "any non-public claim charts provided to

BN by Microsoft relating to the patents in dispute, any response(s) or discussions or product

information provided by or from BN representatives."

19.    At the meeting, after the Agreement was executed, Microsoft provided Barnes &

Noble with the claim charts referenced in the Agreement, which related to five of the six patents

Microsoft had originally identified.

20.    Tellingly, although Microsoft had insisted on entering into an NDA covering these

claim charts, the charts did not contain confidential information but instead did nothing more

than set forth the published claims of certain Microsoft patents on the one hand and publicly

known features purportedly employed by the open source Android™ Operating System and the

Nook™ on the other hand.

**D.    Microsoft's Proposed License**

21.    Further evincing its anticompetitive intent to dominate and render the Android™

Operating System uncompetitive, on or around January 6, 2011, Mr. Dick Greeley, Microsoft's

Director of Licensing, forwarded Barnes & Noble a proposed patent license agreement.

22.    Although in a cover email Microsoft labeled the proposed license as

"Confidential" and purportedly subject to the Agreement, the proposed patent license is in fact

clearly not subject to the Agreement—which, as noted, was limited in scope to discussions

concerning claim charts—or to any other NDA between Microsoft and Barnes & Noble.

34

PUBLIC VERSION

Microsoft's attempt to cloak its abusive and anticompetitive licensing proposal in confidence by referencing a plainly inapplicable confidentiality agreement is further evidence of Microsoft's unlawful scheme to restrict competition in the mobile operating system market.

23.     The proposed patent license presumes that Microsoft possesses a portfolio of patents that dominate and control the Android™ Operating System.

24.     The proposed license would have covered the '372,'780, '522, '551, and '233 patents asserted in this action, along with other previously identified Microsoft patents, including U.S. Patent Nos. 5,579,517 ("the '517 patent"), 5,652,913 ("the '913 patent"), 5,758,352 ("the '352 patent"), 6,791,536 ("the '536 patent"), and 6,897,853 ("the '853 patent").  However, without justification, the proposed license would have severely limited, restricted, and in some cases entirely eliminated, Barnes & Noble's ability to upgrade, improve, or continue design work with Nook™ and Nook Color™.

25.     After sending the proposed license agreement, Microsoft confirmed the shockingly high licensing fees Microsoft was demanding, reiterating its exorbitant per device royalty for Nook™, and for the first time demanding a royalty for Nook Color™ which was more than double the per device royalty Microsoft was demanding for Nook™.  On information and belief, the license fees demanded by Microsoft are higher than what Microsoft charges for a license to its entire operating system designed for mobile devices, Windows Phone 7.

26.     On information and belief, the proposed license agreement Microsoft sent to Barnes & Noble on or around January 6, 2011 was Microsoft's standard license agreement signed by others.

PUBLIC VERSION

**E.**     **The Patents at Issue**

27.     The patents that Microsoft has identified to date—including the patents Microsoft identified as part of the discussions between Microsoft and Barnes & Noble that preceded this litigation as well as patents on which Microsoft ultimately sued—do not warrant the dominance over an entire operating system, like the open source Android™ Operating System.  Indeed, although in its earlier discussions Microsoft claimed that the '517, '913, '352, '536, '853, and '780 patents allowed it to dominate and control the Android™ Operating System, when it initiated both the present action and a related action in the United States District Court for the Western District of Washington, it did not allege that the Nook™ and Nook Color™ products infringe the '517, '913, '352, '536, or '853 patents, but instead limited its allegations concerning previously asserted patents to only the '780 patent.

28.     Thus, the '517, '913, '352, '536 and '853 patents appear to be nothing more than a vehicle by which Microsoft is seeking to force device manufacturers such as Barnes & Noble to enter into expensive, overly restrictive, and unjustified license agreements.  The '517, '913, '352, '536, '853, and '780 patents are the antitheses of proof that Microsoft somehow invented and has the right to control the Android™ Operating System and other open source operating systems and applications.

29.     The '517 and '352 patents deal with nothing more than compatibility between file names employed by operating systems used and sold today, and more primitive file names employed by old, unused, and outmoded operating systems.  This is of no importance to either Nook™ or Nook Color™ modern products.  Neither product infringes any valid, enforceable claims of the '517 or '352 patent.

PUBLIC VERSION

30.    During the discussions, Microsoft also threatened Barnes & Noble with claims of infringement of the '536 and '853 patents which relate only to simulating mouse inputs using non-mouse devices.  The '853 patent misrepresented the state of the art at the time the patent was filed by stating that "a need exists for permitting a user to perform all operations of a mouse-type device using a stylus."  This, however, is demonstrably incorrect.  The '536 and '853 patents were filed in November 2000.  Long before that time, numerous systems had been developed that enabled computer users to simulate mouse behavior with touch input devices.  For example, U.S. Patent No. 5,327,161 to Logan et al., entitled "System and Method for Emulating a Mouse Input Device with a Touchpad Input Device" (the "'161 patent"), was issued in 1994, years before the '536 and '853 patents were even filed.  The '161 patent discloses a touchpad input device or touch-sensitive device that "can be used to replace the mouse cursor locator/input device in mouse-driven personal computers."  (Col. 1, ll. 18-20.)  The touchpad in the '161 patent performs functions of a mouse.  Further evincing the lack of inventiveness of the subject matter set forth in the '536 and '853 patents, the '161 patent noted that touchpad technology had been disclosed in patents that issued as early as *1978*.  (*See* Col. 3, ll. 15-22.)  Touchpad technology did not disappear or otherwise fade into the background in the decade between the filing of the '161 patent and Microsoft's own '536 and '853 patents.  A January 14, 1999 New York Times article entitled "Treading on the Mouse's Heels: The Oh-So-Subtle Touch Pad" describes "newer models of touch pads … that … can be trained to recognize handwritten commands."  Moreover, the described touchpad allows one to "slide the finger" across the touchpad "[f]or a large cursor movement," and, just like the '536 patent, the touchpad performs different actions depending on whether a user taps or holds his or her finger on the touchpad surface.  For instance, "[a] double tap equals a double click of the mouse" while the action to

33

"tap once, then lower the finger and leave it down" equals a "highlight and drag."  Further, the '536 and '853 patents relate to a concept that, while long present in the prior art, is lacking in the Nook™ and Nook Color™ devices, which were never designed for use with a mouse in this first instance, never simulate such an input, and thus cannot infringe any valid, enforceable claims of these patents.

31.    Microsoft also threatened Barnes & Noble with claims of infringement of the '913 patent, which relates to storing input/output access factors in a shared data structure, and which clearly could not preclude the use of an entire operating system.  The '913 patent specification is deficient with respect to a written description of the alleged invention and fails to provide sufficient detail for a person of skill in the art to make the subject matter of the claims.  This deficiency renders the patent invalid, and in any event the claims do not cover the Nook™ and Nook Color™ devices to the extent the subject matter can be understood in light of the deficiencies.  Tellingly, Microsoft was never able to fully explain how anything in the Nook™ and Nook Color™ related in any manner to the concepts set forth in the '913 patent.  Neither product infringes the '913 patent.

32.    Of the patents Microsoft threatened Barnes & Noble with in the past, Microsoft has only sued Barnes & Noble on the '780 patent.  Barnes & Noble denies that the accused Nook™ and Nook Color™ devices infringe any valid, enforceable claim of the '780 patent. The '780 patent appears to cover nothing more than placing a loading status icon in the content viewing area of a browser.  In that patent, Microsoft concedes that loading status icons and content viewing areas of a browser were both known in the prior art.  The prior art placed the loading status icon outside of the viewing area, but it is nothing short of obvious to place it in the

34

PUBLIC VERSION

content viewing area (since there are only two locations for such an icon—either in or out of the content viewing area).

33.     The other patents Microsoft asserts are similarly trivial, not infringed and invalid. The '372 patent relates to nothing more than a browser that recognizes background images in an electronic document and displays the background images after text.  The patent refers to perception of slow displays involving background images that existed with typical internet connections and processors at the time of filing (i.e., 1996).  To address this problem, the '372 patent specification first describes displaying text and then redisplaying the text again after the background image loads.  While this duplicative display may have had some use in the 1990s, it has no value for the connectivity and processors of today used by the Nook™ and Nook Color™ devices.  Neither product infringes any valid, enforceable claim of the '372 patent.

34.     The asserted '522 patent relates to nothing more than putting known tab controls into an operating system for use by all applications, rather than providing these tabs on an application-by-application basis.  However, the specification of the '522 patent makes clear that before the filing of the patent, prior art operating systems were *already* providing applications with a toolbox of common controls to utilize.  While the prior art purportedly did not disclose the claimed tab controls in this toolbox, numerous applications already employed tabs to allow users to navigate between pages of information in the application.  Simply putting existing tab controls into the toolbox already provided by the operating system was not inventive or patentable.  In any event, the Nook™ and Nook Color™ devices do not infringe any valid, enforceable claim of the '522 patent.

35.     The asserted '551 patent relates to using handles to change the size of selection areas for selected text.  By 2000, when the '551 application's provisional was filed, text was

35

PUBLIC VERSION

routinely selected when reading, review or editing, and handles were routinely used to change the size of selections.  The simple act of using handles for their very purpose–changing the size of selections—was neither novel nor non-obvious.  Neither the Nook™ nor Nook Color™ device includes handles with the functionality required by the '551 patent's claims.  Thus, no valid, enforceable claim of the '551 patent is infringed by these products.

36.     The final asserted patent, the '233 patent, relates to the storing and displaying of annotations of text which is not modifiable.  As noted in other portions of this Response, the claims of the '233 patent are unenforceable because they were procured via inequitable conduct. During prosecution, Microsoft and its attorneys failed to disclose a prior art reference, U.S. Patent No. 5,146,552 to Cassorla et al., that the European Patent Office identified as pertinent and invalidating.  Further, Microsoft even failed to disclose the European Patent Office's assessment and description of the prior art, despite the fact that such assessment and description conflicted with Microsoft's representations of the prior art to its invention.  Moreover, in addition to being unenforceable, other prior art renders the '233 patent's claims invalid.  In the '233 patent itself, Microsoft admits that publishing houses wanted their documents to be in the form of non-modifiable text at the time users wanted to annotate.  It was obvious to respond to the demands of both publishing houses and users.  In implementing the concept of annotating non-modifiable documents, Microsoft did not have to devise any unique solutions, but merely applied well known techniques to the problem created by the advent of electronic publishing. This was nothing more than the utilization of common sense solutions to a problem, and there is nothing patentable about the concepts allegedly covered by this patent.  In any event, neither the Nook™ nor Nook Color™ device employs the subject matter set forth in the '233 patent, or infringes any valid, enforceable claim of that patent.

**PUBLIC VERSION**

37.     On information and belief, Microsoft knows that the '372, '780, '522, '551,

and '233 patents are of limited scope, do not disclose or claim entire operating systems like

Windows Phone 7 or the Android™ Operating System, and do not preclude the use of all other

open source operating systems or applications.  Microsoft had no justification to seek to use

these patents to preclude the development and advancement of Barnes & Noble's devices as it

did in its proposed license agreement.

38.     For instance, at http://blogs.technet.com/b/microsoft_on_the_issues/archive/

2011/03/21/android-patent-infringement-licensing-is-the-solution.aspx, Horacio Gutierrez,

Microsoft's Corporate Vice President and Deputy General Counsel, described

the '372, '780, '522, '551, and '233 patents as only embracing (1) the "display of a webpage's

content before the background image is received, allowing users to interact with the page faster,"

(2) the "superimpos[ing of] download status on top of the downloading content", (3) "easy ways

to navigate through information provided by their device apps via a separate control window

with tabs"; (4) "[p]rovid[ing] users the ability to annotate text without changing the underlying

document"; and (5) "[p]ermit[ing] users to easily select text in a document and adjust that

selection."  By Microsoft's officer's own description and admission, its asserted patents are not

even close to covering the entire functionality of Barnes & Noble's Nook™ and Nook Color™

devices, or of the Android™ Operating System.

39.     Despite this, Microsoft issued press releases after filing this action claiming that

the Android™ Operating System generally infringes Microsoft's patents, and that *all device

manufacturers employing the Android™ Operating System* must license Microsoft's patents.

41

PUBLIC VERSION

40.    The net effect of Microsoft's anti-Android campaign is that Microsoft is using its patent rights to limit competition for devices, including tablets, eReaders, and other mobile devices, that employ the Android™ Operating System.

41.    Moreover, by conditioning the license on Barnes & Noble's agreement not to upgrade or improve Nook™ and Nook Color™ features unrelated to the subject matter of the above patents, Microsoft is unreasonably restraining innovation in devices, including tablets, eReaders, and other mobile devices, that employ the Android™ Operating System, as well as competition in mobile operating systems.

42.    Moreover, as explained in other parts of this Response, the '233 patent – one of the patents Microsoft claims dominates the Android™ Operating System – was procured by inequitable conduct.  This inequitable conduct evinces Microsoft's unclean hands and taints Microsoft's entire portfolio.

43.    Microsoft's patents do not provide the *quid pro quo* to the public of advancing the state of technology commensurate with the scope of market dominance Microsoft appears to seek in the operating system market as a whole.

44.    On information and belief, Microsoft's attempts to dominate and control a market via reference to such patents constitutes a threat to creativity, and is contrary to the central tenets of the U.S. patent system.

45.    Via the license price it demands and the onerous restrictions and termination provisions that would effectively require the negotiation of a new license each and every time a hardware or software update is made, Microsoft is leveraging the '372, '780, '522, '551, and '233 patents and its other patents to render the Android™ Operating System and other open source operating systems uncompetitive and unpalatable vis-à-vis Microsoft's own operating

38

42

PUBLIC VERSION

systems and force potential licensees to purchase Windows Phone 7 despite the fact that its patents claim only trivial and non-essential design elements, not an entire operating system.

### F.     **Microsoft's Conduct Relating to Other Companies**

46.     On information and belief, Microsoft has also attempted to force other companies manufacturing products that use the Android™ Operating System to take expensive licenses to Microsoft's patents, using the same threat of litigation based on trivial patents it made against Barnes & Noble prior to this lawsuit.

47.     On information and belief, one large electronics manufacturer, HTC, agreed to a license involving Microsoft's patents to avoid such a lawsuit, that may have contained controls and restrictions on HTC's activities beyond the scope of Microsoft's patents.

48.     On information and belief, Amazon, which sells the Kindle eReader, entered into a license involving Microsoft's patents that may have contained controls and restrictions on Amazon's activities beyond the scope of Microsoft's patents.

49.     On information and belief, Microsoft's activities have a significant, wide-felt, and highly detrimental anticompetitive effect and restrain competition in the market for mobile operating systems by suppressing the use and development of open source mobile operating systems, including the Android™ Operating System, and the development of applications and devices employing the same.

50.     On information and belief, Microsoft's activities are part of Microsoft's campaign to force open source software developers and users to pay expensive license fees (reducing their ability to compete with Microsoft) or to leave the market altogether.

43

PUBLIC VERSION

### G.    Microsoft's Dominant Position

51.    On information and belief, Microsoft claims to have complete control over the market for open source mobile operating systems, including the Android™ Operating System.

52.    On information and belief, the Android™ Operating System accounts for over 30% of the market for mobile operating systems both in the United States and worldwide.

53.    On information and belief, Microsoft's own mobile operating systems, including Microsoft Windows Mobile and Windows Phone 7, account for about 10% of the market for mobile operating systems in the United States and over 3% on a worldwide basis.  Moreover, on information and belief, Microsoft has recently entered into an agreement with Nokia whereby Nokia will replace its own proprietary Symbian mobile operating system with Microsoft's own mobile device operating system.  When this transition is complete next year, Microsoft's worldwide market share will increase to over 30% independent of its assertion of control of the Android™ Operating System.  As noted in paragraph 9 above, as part of this agreement, Microsoft and Nokia also discussed and apparently agreed on a strategy of coordinating their offensive patent assertion strategies going forward—further demonstrating the dominant position of Microsoft.

54.    In view of Microsoft's unjustified claim of control over the Android™ Operating System and its own Microsoft mobile device operating system products, Microsoft claims to control 40% of the market for mobile operating systems in the United States and will soon claim to control over 65% of the market for mobile operating systems on a worldwide basis.  Microsoft thus has market power with respect to mobile operating systems.

55.    Microsoft's activities constitute patent misuse and render all the asserted claims of the '372, '780, '522, '551, and '233 patents unenforceable.

PUBLIC VERSION

56.     In addition, Microsoft has a well-established monopoly in the PC operating system market.  Through the use of these outdated and trivial patents in the mobile operating system market, Microsoft is attempting to minimize, or eliminate competition, for devices, including tablets, eReaders, and other mobile devices, that employ the Android™ Operating System and other open source operating systems, that pose a threat to Microsoft's monopoly in the PC operating system market

## II.     SECOND AFFIRMATIVE DEFENSE: NON-INFRINGEMENT

57.     Barnes & Noble has not and does not infringe any valid, enforceable claim of the '372, '780, '522, '551, or '233 patent either literally or under the doctrine of equivalents.

### A.     '372 Patent

58.     By way of example only, the accused Nook™ and Nook Color™ devices do not infringe the asserted claims of the '372 patent because they do not satisfy at least the following claim limitations: "drawing an initial display of the electronic document without the background image prior to receiving the background image from the remote site" (claim 1); "redrawing the electronic document superimposed over the background image after receiving the background image from the remote site; whereby the initial display of the electronic document is not delayed until the background image is received from the remote site" (claim 1); "a document display processor for drawing the document in a display area on the computer, the document display processor drawing an initial display of the electronic document without the background image after receiving the electronic document from the remote site and before receiving the background image from the remote site by the computer networking processor, the document display processor drawing a subsequent display of the electronic document superimposed over the

PUBLIC VERSION

background image after receiving the background image by the computer networking processor from the remote site" (claim 5).

**B.    '780 Patent**

59.    By way of example only, the accused Nook™ device does not infringe the asserted claims of the '780 patent because it does not satisfy at least the following claim limitations: a "temporary graphic element … positioned over the content viewing area to obstruct only part of the content in the content viewing area" (claim 1); a "temporary graphic element … positioned only over a portion of the content viewing area and obstructs only part of the visible content in the content viewing area" (claim 12); a "temporary graphic element over the content viewing area during the loading step, wherein the temporary graphic element obstructs only part of the content in the content viewing area" (claim 19); "a 'load status' graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area" (claims 32, 36); and "a 'load status' graphic element over the content view area obstructing part of the content displayed in the content viewing area" (claim 40).

**C.    '522 Patent**

60.    By way of example only, the accused Nook Color™ device does not infringe the asserted claims of the '522 patent because it does not satisfy at least the following claim limitations: "each page displays application parameters from the application program" (claims 1, 12); "outputting, to the display, a first tab control image superimposed on top of other tab control images within the window, such that the first tab control image, any application parameters thereof, and the tabs of the other tab control images are viewable in the control window" (claims 1, 12).

42

PUBLIC VERSION

**D.** **'551 Patent**

61.     By way of example only, the accused Nook™ and Nook Color™ devices do not infringe the asserted claims of the '551 patent because they do not satisfy at least the following claim limitations:  "wherein said selection area includes a plurality of selection handles, said selection handles being peripherally disposed to said selection area" (claim 1); "receiving an input from a user associated with said selection handles for detecting a movement of one of said selection handles from on said display" (claim 1); "displaying a selection area identifying a first portion of said electronic data, wherein said selection area includes two graphical selection handles on opposing ends of said identified selection area" (claim 9); and "receiving an input from a user for movement of at least one of said graphical selection handles" (claim 9).

**E.** **'233 Patent**

62.     By way of example only, the accused Nook Color™ device does not infringe the asserted claims of the '233 patent because it does not satisfy at least the following claim limitations: "providing a second display portion on said display configured for navigating to the previously selected object based on said file position, when said annotation is displayed and subsequently selected" (claim 21); and "providing a second display portion on said display configured for navigating to the previously selected object based on said file position, when said annotation is displayed and subsequently selected" (claim 22).

**III.**     **THIRD AFFIRMATIVE DEFENSE: INVALIDITY**

63.     The claims of the '372, '780, '522, '551, and '233 patents are invalid for failure to comply with one or more of the requirements of 35 U.S.C. § 100 *et seq.*, including, but not limited to, §§ 101, 102, 103, and/or 112.

43

PUBLIC VERSION

**A.    '372 Patent**

64.    By way of example only, the asserted claims of the '372 patent are invalid under

35 U.S.C. § 102 and/or § 103 as anticipated by or obvious over, in addition to the prior art listed

on the face of the '372 patent, at least the following prior art references, either alone or in

combination:  U.S. Patent Nos. 5,675,507 to Bobo, II; 5,715,445 to Wolfe; 5,721,851 to Cline et

al.; 5,737,599 to Rowe et al.; 5,745,360 to Leone et al.; 5,748,931 to Jones et al.; 5,761,683 to

Logan et al.; 5,764,235 to Hunt et al.; 5,781,714 to Collins et al.; 5,805,815 to Hill; 5,815,663 to

Uomini; 5,978,817 to Giannandrea et al.; 6,012,071 to Krishna et al.; 6,119,135 to Helfman;

6,507,872 to Geshwind; 6,789,263 to Shimada et al.; JP6036070 to Urabe et al.; Berghetl, "The

client's side of the World-Wide Web," Communications of the ACM 1996, Vol. 39, Issue 1, pp.

30-40; Catledge et al., "Characterizing Browsing Strategies in the World-Wide Web,"

Proceedings of the Third International World-Wide Web Conference, 1995, Vol. 27, Issue 6;

Kaashoek et al., "Dynamic Documents: Mobile Wireless Access to the WWW;" Proceedings of

the IEEE Workshop on Mobile Computing Systems and Applications, 1994; "Netscape

Communications Now Builds on Tradition of Freeware for the Net," http://news.cnet.com/

Netscapes-original-browser-press-release/2030-1032_3-5406484.html; Padmanabhan.

"Improving World Wide Web Latency". University of California at Berkeley, Report No.

UCB/CSD-95-875, 1995; Tannenbaum, "Netscape Surfs The World Wide Web Better Than

Mosaic," Network Computing, 1995, Vol. 6, No. 1, Issue 44, http://www.networkcomputing.

com/601/601sneak1.html; Netscape Navigator 2.0b3 for Macintosh and Windows and release

notes relating to the same; Holden, "Mastering Netscape 2.0," 1995; James, "Official Netscape

Navigator 2.0 Book Windows Edition," 1996; Pitter et al., "Every Student's Guide to the World

Wide Web," 1996; Schwerin, "How to Use Netscape Navigator 2.0," 1996; 11/24/95 newsgroup