**PUBLIC VERSION**

post to comp.os.ms-windows.win95.misc entitled "Netscape Navigator 2.0 Beta 3 is available,"

available at http://groups.google.com/group/comp.os.ms-windows.win95.misc/msg/

46dd346380e35cb3?dmode=source&utoken=riuG1T0AAACn6AG3aRlQNI89iyczJ9SXM1wLG

Ratfk_VGOenGXhqFRCKZYL7ve7WV4r_e2Zn1S-3uFh9VErLNglO2zHbFEK4; 11/24/95

newsgroup post to comp.infosystems.www.browsers.ms-windows entitled "Netscape 2.0b3 – 1st

Impressions," available at http://groups.google.com/group/comp.infosystems.www.browsers.ms-

windows/msg/8602c21aced97841?dmode=source&utoken=u1cWIUgAAADdRJqY_P0SuDfxNi

4Z9xuSleg-tYXS2MURtSjm1DwFncU02o5MxfE5BRk_IVaLL-DichQ7pGlIEJBR8

dFHmiSnXccd9b8p7N6Z-iiZ0oFTBw; 11/26/95 newsgroup post to comp.infosystems.www.

browsers.ms-windows entitled "Some Notes From Netscape: Beta 3 Availability," available at

http://groups.google.com/group/comp.infosystems.www.browsers.ms-windows/msg/

9898c308c4a63e7e?dmode=source&utoken=BKLg6kgAAADdRJqY_P0SuDfxNi4Z9xuSleg-

tYXS2MURtSjm1DwFnfyZ8imBGi145Fwt5NvNMiJG3ebz8WNAOz3oD8X93TP_N7hzTudyT

04UxYvjBIzM6Q; 12/12/95 newsgroup post to comp.infosystems.www.misc entitled "Re:

netscape 1.1 vs 2.0b – backgrounds," available at http://groups.google.com/group/

comp.infosystems.www.misc/msg/e9387e3e6fe1f771?dmode=source&utoken=I5tSQTkAAADd

RJqY_P0SuDfxNi4Z9xuSgN6JXLI-vEteZzj_rGfjZ6cEz086CYigP1cO9gtpdtDMi70Y-X-

_WbdDsWgsFCgj.

65.    The asserted claims of the '372 patent are also invalid for failing to comply with

the requirements of 35 U.S.C. § 112 ¶¶1 and 2 because they are indefinite, lacking written

description support, and/or not enabled by the specification.

PUBLIC VERSION

**B.      '780 Patent**

66.     By way of example only, the asserted claims of the '780 patent are invalid under

35 U.S.C. § 102 and/or § 103 as anticipated by or obvious over, in addition to the prior art listed

on the face of the '780 patent, at least the following prior art references, either alone or in

combination:  U.S. Patent Nos. 5,301,348 to Jaaskelainen; 5,479,599 to Rockwell et al.;

5,630,148 to Norris; 5,712,654 to Kawashima et al.; 5,715,416 to Baker; 5,799,267 to Siegel;

5,805,166 to Hall, Jr. et al.; 5,809,242 to Shaw et al.; 5,845,282 to Alley et al.; 5,864,850 to

Nordman; 5,907,843 to Cleron et al.; 5,908,467 to Barrett et al.; 5,956,509 to Kevner; 5,969,705

to Fisher et al.; 6,023,698 to Lavey, Jr. et al.; 6,049,812 to Bertram et al.; 6,065,059 to Shieh et

al.; 6,097,390 to Marks; 6,101,509 to Hanson et al.; 6,182,072 to Leak et al.; 6,223,188 to Albers

et al.; 6,266,082 to Yonezawa et al.; 6,401,099 to Koppolu et al.; 6,584,498 to Nguyen;

6,615,251 to Klug et al.; JP7325807 to Kizaki; JP8221401 to Yamamoto; HyperTIES, e.g.,

http://www.cs.umd.edu/hcil/hyperties/; Hypercard Ver. 1.2; Brown et al., "A New Paradigm for

Browsing the Web," Conference companion on Human factors in computing systems, 1995, pp.

320-321; Gessler et al, "PDAs as mobile WWW browsers," Computer Networks and ISDN

Systems 28 (1995) 53-59; Ibrahim, "World-Wide algorithm animation," Computer Networks and

ISDN Systems, 1994, Vol. 27, Issue 2, pp. 255-265; Kane, "Prodigy Made Easy," 1992, p. 172;

Jefferson et al., "Presentation Manager Progress Indicator," IBM TDB, 1991, Vol. 34, No. 2, pp.

475-476; Laverty, "Internet Primer: Workshop Design and Objectives," Internet Reference

Services Quarterly, 1996, Vol. 1(3), pp. 35-53; Robertson et al., "Using the World Wide Web to

Provide a Platform Independent Interface to High Performance Computing," Technologies for

the Information Superhighway, 1995; Romano, Jr. et al., "User Driven Design of a Web-Based

Group Support System," Proceedings of the Thirtieth Annual Hawaii International Conference

on Systems Sciences, 1997, Vol. 2; "PocketWeb WWW Browser for the Apple Newton Message Pad," available at http://www.teco.edu/pocketweb.

67.     The asserted claims of the '780 patent are also invalid for failing to comply with the requirements of 35 U.S.C. § 112 ¶¶1 and 2 because they are indefinite, lacking written description support, and/or are not enabled by the specification.

### C.     '522 Patent

68.     By way of example only, the asserted claims of the '522 patent are invalid under 35 U.S.C. § 102 and/or § 103 as anticipated by or obvious over, in addition to the prior art listed on the face of the '522 patent, at least the following prior art references, either alone or in combination:  U.S. Patent Nos. 5,237,651 to Randall; 5,305,435 to Bronson; 5,327,529 to Fults et al.; 5,347,295 to Agulnick et al.; 5,367,624 to Cooper; 5,379,432 to Orton et al.; 5,392,387 to Fitzpatrick et al.; 5,428,729 to Chang et al.; 5,515,497 to Itri et al.; 5,530,865 to Owens et al.; 5,537,548 to Fin et al.; 5,542,040 to Chang et al.; 5,544,288 to Morgan et al.; 5,548,703 to Berry et al.; 5,557,732 to Thompson; 5,566,248 to Ulrich; 5,583,981 to Pleyer; 5,604,861 to Douglas et al.; 5,621,434 to Marsh; 5,664,103 to Stein et al.; 5,673,315 to Wolf; 5,673,403 to Brown et al.; 5,721,847 to Johnson; 5,808,611 to Johnson et al.; 5,936,614 to An et al.; DE4236820 to Ricci; EP0336552 to Horn et al.; IBM OS/2 2.0 Programming Guide Vol. II (part 10G6494), March 1992, at pp. 17 and 134 et seq.; Anderson et al., "Instantaneous Combination Boxes Using Presentation Window Parameters," IBM TDB,1994, Vol. 37, No. 06A, pp. 317-318; Brininstool et al., "Graphical Notebook Control Tab Scroll Button Action Settings," IBM TDB, 1992, Vol. 35, No. 4B, pp. 371-372; Carr et al., "The Power of PenPoint: Chapters 1 and 2," Addison-Wesley: Reading, MA, 1991, http://www.guidebookgallery.org/books/thepowerofpenpoint/chapter1 & http://www.guidebookgallery.org/books/thepowerofpenpoint/chapter2; Coulombe et

PUBLIC VERSION

al, "Visual Two Level Information Categorization,"IBM TDB, 1992, Vol. 35, No. 2, pp. 189-190; Cuthbertson et al., "Optimizing Notebook Size to Reflect Dynamically Added Notebook Pages in a Distributed Environment," IBM TDB, 1994, Vol. 37, No. 12, pp. 227-228; Fitzpatrick et al., "Notebook Control Cascading Tab Choices," IBM TDB, 1992, Vol. 35, No. 4B, pp. 284-286; Haynes, "Multi-dimensional Booktab Control for Graphical User Interfaces," IBM TDB, 1991, Vol. 34, No. 4A, pp. 208-210; Jefferson, "Presentation Manager CUA File Dialog Processor," IBM TDB, 1991, Vol. 34, No. 4B, pp. 83-84; Morgan et al., "Backward Compatibility to Native Presentation Manager from an Extended Presentation Manager Architecture," IBM TDB, 1994, Vol. 37, No. 3, pp. 545-546; PenPoint™ UI Design Guidelines: Chapters 1 and 2, http://www.textfiles.com/bitsavers/pdf/go/PenPoint_UI_Design_Guidelines_Feb91.pdf; Redpath, "System Notebook Visual Rendition," IBM TDB, 1992, Vol. 35, No. 2, pp. 225-226; Schilit et al., "The PARCTAB Mobile Computing System," Fourth Workshop on Workstation Operating Systems, 1993; Weber, "Consistent Dynamic Dialog Box Fields," IBM TDB, 1991, Vol. 34, No. 2, pp. 76-77.

69.     The asserted claims of the '522 patent are also invalid for failing to comply with the requirements of 35 U.S.C. § 112 ¶¶1 and 2 because they are indefinite, lacking written description support, and/or are not enabled by the specification.

### D.     '551 Patent

70.     By way of example only, the asserted claims of the '551 patent are invalid under 35 U.S.C. § 102 and/or § 103 as anticipated by or obvious over, in addition to the prior art listed on the face of the '551 patent, at least the following prior art references, either alone or in combination:  U.S. Patent Nos. 4,924,433 to Hirata et al.; 5,070,478 to Abbott; 5,263,134 to Paal et al.; 5,347,295 to Agulnick et al.; 5,367,625 to Ishitani; 5,428,805 to Morgan; 5,442,742 to

PUBLIC VERSION

Greyson et al.; 5,487,141 to Cain et al.; 5,544,048 to Dugan et al.; 5,574,840 to Kwatinetz et al.; 5,617,528 to Stechmann et al.; 5,663,748 to Huffman et al.; 5,664,210 to Fleming et al.; 5,666,552 to Greyson et al.; 5,729,255 to Aoki; 5,729,673 to Cooper et al.; 5,737,618 to Nakayama et al.; 5,751,283 to Smith; 5,754,873 to Nolan; 5,761,682 to Huffman et al.; 5,815,595 to Gugler; 5,832,528 to Kwatinetz et al.; 5,835,919 to Stern et al.; 5,867,144 to Wyard; 5,930,813 to Padgett et al.; 5,960,114 to Dauerer et al.; 5,973,692 to Knowlton et al.; 6,151,426 to Lee et al.; 6,178,243 to Pomerantz et al.; 6,525,749 to Moran et al.; 6,610,102 to Aldred et al.; 6,628,285 to Abeyta et al.; 6,640,010 to Seeger et al.; 6,681,046 to Kashiwagi et al.; 6,683,631 to Carroll; 6,707,474 to Beck et al.; 6,965,454 to Silverbrook et al.; 7,032,171 to Carroll; 7,191,405 to Jaramillo; U.S. Patent Apps. 2003/0103082 to Carroll; 2006/0129933 to Land et al.; JP7006173 to Kinoshita; JP7021159 to Maruoka; KR20000036836 to Song et al.; KR20000060953 to Lim; Chiu et al., "A Dynamic Grouping Technique for Ink and Audio Notes," Proceedings of the 11th annual ACM symposium on User interface software and technology, 1998, pp. 195-202; Hudson, "User Interface Specification Using an Enhanced Spreadsheet Model," ACM Transactions on Graphics, 1994, Vol. 13, Issue 3; Gillan et al., "How Does Fitts' Law Fit Pointing and Dragging?" CHI '90 Proceedings of the SIGCHI conference on Human factors in computing systems: Empowering people, 1990, pp. 227-234; Leopold et al., "Keyboardless Visual Programming Using Voice, Handwriting, and Gesture," IEEE Symposium on Visual Languages, 1997, pp. 28-35; Myers, "Gilt Reference Manual: A Simple Interface Builder for Garnet," Carnegie Mellon University, 1993, pp. 515-532; Myers et al., "Marquise: Creating Complete User Interfaces by Demonstration," CHI '93 Proceedings of the INTERACT '93 and CHI '93 conference on Human factors in computing systems, 1993, pp. 293-300; Raisamo, "Evaluating Different Touch-Based Interaction Techniques in a Public Information

53

PUBLIC VERSION

Kiosk," Conference of the CHI Special Interest Group of the Ergonomics Society of Australia,

1999; Ren et al., "Improving Selection Performance on Pen-Based Systems: A Study of Pen-

Based Interaction for Selection Tasks," ACM Transactions on Computer-Human Interaction,

2000, pp. 384-416; "The Windows Interface Guidelines — A Guide for Designing Software:

Chapter 5," http://www.ics.uci.edu/~kobsa/courses/ICS104/course-notes/Microsoft_

WindowsGuidelines.pdf; PenPoint™ UI Design Guidelines: Chapters 1 and 2,  http://www.

textfiles.com/bitsavers/pdf/go/PenPoint_UI_Design_Guidelines_Feb91.pdf.

    71.    The asserted claims of the '551 patent are also invalid for failing to comply with

the requirements of 35 U.S.C. § 112 ¶¶1 and 2 because they are indefinite, lacking written

description support, and/or are not enabled by the specification.

    **E.**    **'233 Patent**

    72.    By way of example only, the asserted claims of the '233 patent are invalid under

35 U.S.C. § 102 and/or § 103 as anticipated by or obvious over, in addition to the prior art listed

on the face of the '233 patent, at least the following prior art references, either alone or in

combination:  U.S. Patent Nos. 5,146,552 to Cassorla et al.; 5,220,658 to Kerr; 5,231,578 to

Levin et al.; 5,231,698 to Forcier; 5,442,793 to Christian; 5,522,025 to Rosenstein; 5,581,682 to

Anderson et al.; 5,600,775 to King et al.; 5,615,325 to Peden; 5,678,039 to Hinks; 5,721,850 to

Farry; 5,731,813 to O'Rourke; 5,893,126 to Drews et al.; 5,937,416 to Menzel; 5,938,724 to

Pommier et al.; 6,092,081 to Alpert et al.; 6,212,532 to Johnson et al.; 6,243,722 to Day et al.;

6,259,446 to Matheny et al.; 6,289,460 to Hajmiragha; 6,342,906 to Kumar et al.; 6,438,564 to

Morton et al.; 6,551,357 to Madduri; 7,000,186 to Gropper et al.; 7,107,450 to Yu; 7,228,492 to

Graham; 7,432,938 to Reuter et al.; 7,574,649 to Safars et al.; EP0650126 to Albini et al.;

JP11175569 to Ginsburg et al.; Adkins et al., "GSS Collaboration in Document Development:

Using GroupWriter to Improve the Process," Proceedings of the 32nd Hawaii International Conference on System Sciences, 1999; Catlin et al., "InterNote: Extending a Hypermedia Framework to Support Annotative Collaboration," Proceedings of the second annual ACM conference on Hypertext, 1989, pp. 365-378; Davis et al., "Shared Annotation for Cooperative Learning," The first international conference on Computer support for collaborative learning, 1995, pp. 84-88; DeRose, "XML Linking," ACM Computing Surveys, 1999, Vol. 31, Issue 4es; Eisen et al., "Searching for Annotation in Documents On a Computer," IBM TDB, 1990, Research Disclosure n318 10-90; Fielding et al., "Web-Based Development of Complex Information Products," Communications of the ACM, 1998, Vol. 41, Issue 8, pp. 84-92; Flurry et al., "Handwritten Annotation of Electronic Documents," IBM TDB, 1983, 07-83, pp. 504-507; Ide, "Corpus Encoding Standard: SGML Guidelines for Encoding Linguistic Corpora," First International Language Resources and Evaluation Conference, 1998; "Mixed Object Document Content Architecture Reference: Chapter 3," http://www.afpcinc.org/mo_dca_reference.pdf, pp. 64-70; Remde et al., "SuperBook: An automatic tool for information exploration - hypertext?" Proceedings of the ACM conference on Hypertext, 1987, pp. 175-188; Schilit et al., " Paper: Supporting Active Reading with Free Form Digital Ink Annotations," Proceedings of the SIGCHI conference on Human factors in computing systems, 1998; Adobe Acrobat 3.0 and Reader 3.0.

73.     The asserted claims of the '233 patent are also invalid for failing to comply with the requirements of 35 U.S.C. § 112 ¶¶1 and 2 because they are indefinite, lacking written description support, and/or are not enabled by the specification.

PUBLIC VERSION

## IV.    FOURTH AFFIRMATIVE DEFENSE: UNENFORCEABILITY OF THE '233 PATENT DUE TO INEQUITABLE CONDUCT

74.     On information and belief, the '233 patent is unenforceable due to inequitable conduct because one or more persons involved in the prosecution of the application that issued as the '233 patent violated their duty of candor and good faith in dealing with the United States Patent and Trademark Office (the "PTO") by intentionally and deceptively failing to disclose to the PTO prior art and information material to the patentability of the claims of the '233 patent.

75.     Specifically, on information and belief, during prosecution of the '233 patent, attorneys from the firm Banner & Witcoff, Ltd. involved with the prosecution of the '233 patent, including at least Christopher R. Glembocki, withheld material prior art and other information from the PTO relating to at least asserted claims 21 and 22 with an intent to deceive the PTO and obtain the issuance of claims to which the applicants would not otherwise be entitled.

76.     On information and belief, Mr. Glembocki and others at Banner & Witcoff were involved with the prosecution of the application underlying the '233 patent from its filing on December 7, 1999 until its issuance on October 18, 2005.  Among other things, Mr. Glembocki signed the original December 7, 1999 application, an April 20, 2000 Petition for Extension of Time, an April 20, 2000 Response to Notice to File Missing Parts of Application, and a January 22, 2004 Information Disclosure Statement.

77.     On information and belief, the non-disclosed material prior art and other information includes at least (a) U.S. Patent No. 5,146,552 to Cassorla et al. (the "'552 Cassorla patent") and (b) various papers issued or submitted in connection with international application number PCT/US00/33081 (the "'081 international application") including (i) a March 26, 2001 international search report, (ii) a January 1, 2002 written opinion, and (iii) a May 5, 2002 international preliminary examination report.

PUBLIC VERSION

78.    On its face, the '081 international application claims priority to U.S. patent application 09/455,806 (the "'806 application"). The '806 application issued as the '233 patent. Thus, the '081 international application and '233 patent are related.

79.    On information and belief, Mr. Glembocki was involved in the prosecution of both the '081 international application and the '806 application and is listed on correspondence in both applications' file histories.

80.    On or around March 26, 2001, an international search report issued in connection with the '081 international application. This international search report listed the '552 Cassorla patent as a "[d]ocument considered to be relevant." The international search report further stated that the '552 Cassorla patent is a "document of particular relevance" such that "the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone."

81.    On or about January 1, 2002, a written opinion issued in connection with the '081 international application and was mailed to Mr. Glembocki.

82.    Citing the Abstract and column 2, line 5 to column 3, line 34 of the '552 Cassorla patent, the January 1, 2002 written opinion noted that that patent "discloses a method for associating annotations for a certain document (object) adopting the technique of separately storing annotation and its position in order to maintain 'unmodified' the document itself." Further, it was noted that "[t]his technique corresponds to and has the same effect of the storing of objects in 'non-modifiable' portion of the file to be annotated...."

83.    The January 1, 2002 written opinion also noted that the claims of the '081 international application are not inventive in view of the disclosure of the '552 Cassorla patent.

PUBLIC VERSION

84.     On or about May 2, 2002, an international preliminary examination report issued in connection with the '081 international application and was mailed to Mr. Glembocki.

85.     The May 2, 2002 international preliminary examination report again cited the '552 Cassorla patent and noted that the claims of the '081 international application are not inventive in view of the disclosure of that patent.

86.     The claims of the '081 international application include many of the limitations found in claims 21 and 22 of the '233 patent.

87.     On information and belief, in view of the March 26, 2001 international search report, January 1, 2002 written opinion, and May 5, 2002 international preliminary examination report, Mr. Glembocki and others involved with the prosecution of the '233 patent knew of the '552 Cassorla patent and its disclosure of "a method for associating annotations for a certain document (object) adopting the technique of separately storing annotation and its position in order to maintain 'unmodified' the document itself" no later than May 5, 2002.

88.     On information and belief, neither Mr. Glembocki nor any other individual involved in the prosecution of the '233 patent disclosed the '552 Cassorla patent or the March 26, 2001 international search report, January 1, 2002 written opinion, and May 5, 2002 international preliminary examination report to the PTO during prosecution of the '233 patent.

89.     On information and belief, the '552 Cassorla patent, March 26, 2001 international search report, January 1, 2002 written opinion, and May 5, 2002 international preliminary examination report were highly material to the prosecution of the '233 patent and were not cumulative to the other prior art and information of record.

90.     More specifically, during prosecution of the '233 patent and in connection with a December 22, 2003 amendment, applicants attempted to distinguish then pending claims 25 and

54

PUBLIC VERSION

26 of the '806 application – which later issued as claims 21 and 22 – from prior art cited by the PTO by arguing that that prior art did not disclose, among other things, the claim limitations requiring "an electronic book including a page having user selectable objects stored in a non-modifiable portion of a file."

91.    As noted by the March 26, 2001 international search report, January 1, 2002 written opinion, and May 5, 2002 international preliminary examination report, the '552 Cassorla patent discloses this same "electronic book including a page having user selectable objects stored in a non-modifiable portion of a file" feature applicants argued was missing from the prior art referenced in the December 22, 2003 amendment.  Thus, the '552 Cassorla patent, along with the January 1, 2002 written opinion, and May 5, 2002 international preliminary examination report, was non-cumulative and would have been highly material to the examiner considering the '233 patent's claims and the applicants' representation regarding the prior art.

92.    Further, the identification of the '552 Cassorla patent as a "document of particular relevance" such that "the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone" in the March 26, 2001 international search report along with the findings in the January 1, 2002 written opinion and May 2, 2002 international preliminary examination report that the claims of the '081 international application are not inventive in view of the disclosure of the '552 Cassorla patent would have been highly material to the examiner considering the '233 patent's claims because none of the other art of record was found to anticipate or render obvious asserted claims 21 and 22 of the '233 patent.

93.    Given the materiality of the '552 Cassorla patent, the March 26, 2001 international search report, January 1, 2002 written opinion, and May 5, 2002 international preliminary

PUBLIC VERSION

examination report and Mr. Glembocki's direct knowledge of these materials, on information and belief Mr. Glenbocki and others involved with the prosecution of the '233 patent withheld these materials with intent to deceive the PTO.

94.     This intentional and deceptive withholding of the '552 Cassorla patent, the March 26, 2001 international search report, the January 1, 2002 written opinion, and the May 5, 2002 international preliminary examination report constitutes inequitable conduct that renders the '233 patent unenforceable.

## V.     FIFTH AFFIRMATIVE DEFENSE: PUBLIC INTEREST

95.     Microsoft's demands for relief are barred under 19 U.S.C. § 1337(d)(1) because they are asserting invalid patents and/or because of the effect such relief would have upon the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers.

## VI.     SIXTH AFFIRMATIVE DEFENSE: LACK OF DOMESTIC INDUSTRY

96.     Microsoft have not adequately alleged and cannot establish the existence of a domestic industry for the '372, '780, '522, '551, and '233 patents as required by Section 337(a)(2) and defined by Section 337(a)(3).  Specifically, Microsoft cannot establish that they (or their licensees) have made "significant investment" in plant, equipment, labor, or capital relating to articles protected by at least one claim of each of the '372, '780, '522, '551, and '233 patents.  Furthermore, Microsoft cannot establish a "substantial investment" in licensing, research and development, or other qualifying activities relating to each of the '372, '780, '522, '551, and '233 patents, sufficient to satisfy the economic prong of the domestic industry requirement.  Finally, Microsoft cannot establish satisfaction of the technical prong of the domestic industry requirement in this case.

## VII.   <u>RELIEF REQUESTED</u>

97.   WHEREFORE, by reason of the foregoing, Barnes & Noble requests that the ITC:

(a)   find that there is no violation of Section 337 and terminate the investigation;

(b)   issue an Order finding the '372, '780, '522, '551, and '233 patents invalid, unenforceable and/or not infringed;

(c)   find that Microsoft's demands for relief are barred under 19 U.S.C. § 1337(d)(1) because of the relief's effect upon the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers;

(d)   impose such sanctions upon Microsoft as deemed appropriate and just, including attorneys fees; and

(e)   issue such other and further relief as is deemed equitable.

61

Dated:   May 10, 2011

Respectfully submitted,

Richard DeLucia
Antony Pfeffer
Charles Weiss
Paul Richter
John Kenny
Kenyon & Kenyon LLP
One Broadway
New York, NY 10004-1050
Telephone: (212) 425-7200
Fax:  (212) 425-5288

Marcia H. Sundeen
Jeffrey S. Gerchick
Aimee N. Soucie
Kenyon & Kenyon LLP
1500 K Street, N.W.
Washington, DC  20005
Tel:  (202) 220-4200
Fax:  (202) 220-4201
*Counsel for Respondents Barnes & Noble, Inc.
and barnesandnoble.com LLC*

58

## VERIFICATION

I, Bradley A. Feuer, am Vice President, Assistant General Counsel at Barnes & Noble, Inc. I am authorized to sign this verification form on behalf of Barnes & Noble, Inc. and barnesandnoble.com LLC (collectively, "Barnes & Noble"). I have read the Response of Barnes & Noble, Inc. and barnesandnoble.com LLC to the Amended Verified Complaint of Microsoft Corporation Under Section 337 of the Tariff Act of 1930, as Amended, and Notice of Investigation ("the Response"), and declare, based on reasonable inquiry with the assistance of employees at Barnes & Noble, that the facts set forth in the Response, as they relate to Barnes & Noble, are true and correct to the best of my knowledge, information, and belief.

This response is not being presented for any improper purpose, such as to harass, to unnecessarily delay, or to needlessly increase the costs of this investigation.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATE: May 10, 2011

Bradley A. Feuer

# EXHIBIT A

# (FILED UNDER SEAL)

**Certain Handheld Electronic Computing Devices,**                           337-TA-769
**Related Software and Components Thereof**

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing **RESPONSE OF BARNES & NOBLE, INC. AND BARNESANDNOBLE.COM LLC TO THE AMENDED VERIFIED COMPLAINT OF MICROSOFT CORPORATION UNDER SECTION 337 OF THE TARIFF ACT OF 1930, AS AMENDED, AND NOTICE OF INVESTIGATION** were served upon the following parties as indicated on this 10th day of May, 2011.

James R. Holbein, Acting Secretary
**U.S. International Trade Commission**
500 E Street, S.W., Room 112
Washington, D.C. 20436

☐ Via Hand Delivery
☐ Via Overnight Federal Express Delivery
☐ Via First Class Mail
☐ Via Facsimile
☒ Via Electronic Service

Honorable Theodore R. Essex
**U.S. International Trade Commission**
500 E Street, S.W., Room 317
Washington, D.C. 20436
Email: tamara.foley@usitc.gov

☒ Via Hand Delivery
☐ Via Overnight Federal Express Delivery
☐ Via First Class Mail
☐ Via Facsimile
☒ Via Electronic Mail

Jeffrey Hsu
**Office of Unfair Import Investigations**
U.S. International Trade Commission
500 E Street, S.W.,
Washington, D.C. 20436
Email: jeffrey.hsu@usitc.gov

☐ Via Hand Delivery
☐ Via Overnight Federal Express Delivery
☐ Via First Class Mail
☐ Via Facsimile
☒ Via Electronic Mail

*Counsel for Complainant Microsoft Corporation*

V. James Adduci
**Adduci, Mastriani & Schaumberg LLP**
1200 Seventeenth Street, NW 5th Floor
Washington, DC 20036
Email: MSFT-2@adduci.com

☐ Via Hand Delivery
☐ Via Overnight Federal Express Delivery
☐ Via First Class Mail
☐ Via Facsimile
☒ Via Electronic Mail

*Respondent Hon Hai Precision Industry Co., Ltd., Foxconn Electronics, Inc., Foxconn International Holdings Ltd., and Foxconn Precision Component (Shenzhen) Co., Ltd.*

Edward M. Lebow
**Haynes and Boone LLP**
1615 L Street, NW Suite 800
Washington, DC 20036
Email: ed.lebow@haynesboone.com

☐ Via Hand Delivery
☐ Via Overnight Federal Express Delivery
☐ Via International First Class Mail
☐ Via Facsimile
☒ Via Electronic Mail

*Respondent Inventec Corporation*

**Inventec Corporation**
Invectec Building
No. 66 Hou-Kang Street
Shin-Lin District
Taipei County, 111
Taiwan, ROC

☐ Via Hand Delivery
☐ Via Overnight Federal Express Delivery
☒ Via International First Class Mail
☐ Via Facsimile
☐ Via Electronic Mail

**Certain Handheld Electronic Computing Devices,**                    337-TA-769
**Related Software and Components Thereof**

/s/ *Shirli Tay*
Shirli Tay
Legal Assistant

2

# EXHIBIT 15

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| MOTOROLA MOBILITY, INC., and GENERAL INSTRUMENT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | Civil Action No. 3:10-cv-699<br><br>District Judge William M. Conley<br>Magistrate Judge Stephen L. Crocker |
| MICROSOFT CORPORATION,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>MOTOROLA MOBILITY, INC., and GENERAL INSTRUMENT CORPORATION,<br><br>Counterclaim Defendant. | |

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION (NOS. 1-199)
<u>TO DEFENDANT MICROSOFT CORPORATION</u>**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff-Counterclaim Defendants Motorola Mobility, Inc. ("Motorola Mobility") and General Instrument Corporation ("General Instrument") (collectively, "Motorola") requests that Defendant Counterclaim Plaintiff Microsoft Corporation ("Microsoft") produce for inspection and/or copying at the offices of Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036, within thirty (30) days of the service of these requests, the documents and things responsive to the individual requests set forth below.

## DEFINITIONS AND INSTRUCTIONS

Each individual Interrogatory in this First Set of Interrogatories is subject to and incorporates the following definitions and instructions as used herein.

## DEFINITIONS

1.      "Motorola Mobility" or "Plaintiff" means, collectively and individually, Motorola Mobility, Inc., and all its predecessors or successors (merged, acquired, or otherwise), parents, divisions, subsidiaries, and affiliates thereof, and all officers, agents, employees, counsel and other persons acting on its behalf, or any other person or entity subject to Motorola Mobility's control, or which controls Motorola Mobility, including but not limited to Motorola, Inc..

2.      "General Instrument" or "Plaintiff" means, collectively and individually, General Instrument Corporation, and all its predecessors or successors (merged, acquired, or otherwise), parents, divisions, subsidiaries, and affiliates thereof, and all officers, agents, employees, counsel and other persons acting on its behalf, or any other person or entity subject to General Instrument's control, or which controls General Instrument, including but not limited to Motorola, Inc..

3.      "Motorola" means collectively Motorola Mobility, Inc., and General Instrument Corporation.

4.      "Microsoft," "Microsoft Corporation," "Defendant," "You," and "Your" means, collectively and individually, Microsoft Corporation, and all its predecessors or successors (merged, acquired, or otherwise), parents, divisions, subsidiaries, and affiliates thereof, and all officers, agents, employees, counsel and other persons acting on its behalf, or any other person or entity subject to Microsoft's control, or which controls Microsoft.

5.     "Person" means any natural person or individual, and any and all legal entities, including without limitation, corporations, companies, firms, partnerships, joint ventures, proprietorships, associations, governmental bodies or agencies, or other form of business enterprise.

6.     The terms "and" and "or" are terms of inclusion and not of exclusion and are to be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests any documents or responses which might be otherwise construed to be outside the scope of these requests.

7.     The term "any" includes "all," and the term "all" includes "any."

8.     The singular of any term includes the plural of that term, and the plural includes the singular.

9.     The term "concerning" means identifying, referring to, concerning, regarding, evidencing, demonstrating, summarizing, reflecting, constituting, containing, embodying, mentioning, pertaining to, commenting upon, connected with, discussing, describing, analyzing, showing, comprising, or relating to in any relevant way to a particular subject, in whole or in part, either directly or indirectly.

10.     "Document" shall have the broadest meaning and scope ascribed under Rule 34 of the Federal Rules of Civil Procedure, and include all tangible things which come within the meaning of the terms "writings and recordings," as used in Federal Rule of Evidence 1001 and all electronically stored information.  A draft or non-identical copy is a separate document within the meaning of this term.

11.     "Electronically stored information" means information created, manipulated, communicated, stored, and/or best utilized in any type of electronic, magnetic or any other non-paper form or machine-readable medium.

12.     "Communication" means any transmission, exchange, or transfer of information by any means regardless of content, format and medium.

13.     "Identify" or "identity" with respect to a natural person or individual means providing at least the following information for him or her: (a) full name; (b) present address and telephone number, or if not known, last known address and telephone number; (c) current employer; (d) title or position; and (e) employment duties, functions, and/or responsibilities.

14.     "Identify" or "identity" with respect to Microsoft's products, devices, or other articles of manufacture means providing the following information: (a) any designation used internally by Microsoft or Microsoft's employees for that product, device, or article of manufacture, including formal or informal nicknames; and (b) any designation used publicly by Microsoft or Microsoft's employees for that product, device, or article of manufacture, including but not limited to the part or model number and name.

15.     "Identify" or "identity" with respect to communications means providing the following information: (a) the identity of the person(s) creating such communication; (b) the identity of the recipient(s) of such communication; (c) the date of the communication; and (d) the nature, substance, and contents of the communication.

16.     "Concurrent Litigation" refers to any pending litigation between Motorola and Microsoft, including but not limited to Civil Action Nos. 1:10-CV-24063 (S.D. Fl.), 3:10-CV-00700 (W.D. Wis.), and 3:10-cv-00826 (W.D. Wis.); 2:10-cv-01823-JLR (W.D. Wash.); and ITC Investigation Nos. 337-TA-744 and 337-TA-752.

17.    "'374 Patent" means U.S. Patent No. 7,310,374.

18.    "'375 Patent" means U.S. Patent No. 7,310,375.

19.    "'376 Patent" means U.S. Patent No. 7,310,376.

20.    "Application" means any patent application or similar document submitted or filed anywhere in the world, including but not limited to any provisional application, continuing application, continuation-in-part application, divisional application, file-wrapper continuation, reexamination proceeding, reissue application, and abandoned application.

21.    "Asserted Patents" means the "'374 Patent"; the "'375 Patent"; and the "'376 Patent" (collectively, or individually).

22.    "Related Patents and Applications" means any patent or Application submitted or filed anywhere in the world that is related to any Asserted Patent, including but not limited to any patent or Application that (i) claims priority in whole or in part to or from any Asserted Patent, (ii) is the basis for a claim of priority in whole or in part for any Asserted Patent, or (iii) discloses the same subject matter as any Asserted Patent.

23.    "H.264 Standard" means any or all parts and versions of ITU-T recommendation H.264, which is also known as International Standard ISO/IEC MPEG-4 AVC (formally, ISO/IEC 14496-10).

24.    "Windows 7" means any and all versions of Microsoft's Windows 7 operating system and all components thereof, including without limitation Microsoft Windows 7 and the Media Foundation H.264 video encoder and H.264 video decoder.

25.    "Internet Explorer 9" means any and all versions of Microsoft's Internet Explorer 9 web browser software and all components thereof, including without limitation Internet Explorer 9 Beta.

26.     "Accused Microsoft Products" includes Windows 7 and Internet Explorer 9.

27.     "Prior Art" means any publication, patent, physical device, prototype, product, use, sale, offer for sale, or other activity concerning the subject matter of the Asserted Patents and existing on, or occurring at, a date such as to be relevant under any subdivision of 35 U.S.C. §§ 102 or 103.

28.     "Infringe" and "infringement" means any and all types of patent infringement set forth in 35 U.S.C. § 271, including but not limited to direct infringement, contributory infringement, active inducement of infringement, literal infringement, and/or infringement under the doctrine of equivalents.

29.     "Technical Documentation" means documents that relate to structure, electronic circuitry, operation, function, and/or features, including but not limited to user guides, user manuals, reference manuals, service manuals, product manuals, use cases, product descriptions, white papers, administrator guides, installation guides, technical manuals, technical specifications, functional specifications, software manuals, software design documents, memory maps, block diagrams, theory of operation documents, road maps, datasheets, schematics, computer screen shots, prototype designs, assembly drawings, engineering drawings, software design drawings or software programming code samples, and Microsoft Internet resources (including Microsoft TechNet, Microsoft Developer Network (MSDN), and Microsoft Support).

30.     "'780 Patent" means U.S. Patent No. 6,339,780.

31.     "'582 Patent" means U.S. Patent No. 7,411,582.

32.     "Microsoft Counterclaim Patents" means the '780 Patent and the '582 Patent (collectively, or individually).

33.     "Accused Motorola Products" means all Motorola products and services that
Microsoft has alleged infringe one or more Microsoft Counterclaim Patents in this action,
including but not limited to the Motorola Droid X, the Motorola Droid 2, the Motorola Devour,
the Motorola Charm, the Motorola Cliq XT, and the Motorola i1.

34.     "Microsoft Allegedly Practicing Product(s)" shall mean all products, apparatuses
or methods designed, developed, manufactured, distributed, or sold by or on behalf of Microsoft
or Microsoft's licensees that Microsoft alleges to practice / have practiced any of the claims that
Microsoft asserts are infringed by Motorola, including all prototypes, derivatives, equivalents,
and variations of such products.

35.     "RAND" means Reasonable and Non-Discriminatory. The term "FRAND" shall
have the same meaning as RAND.

36.     "IEEE" refers to the Institute of Electrical and Electronic Engineers, the Institute
of Electrical and Electronic Engineers Standards Association, and any working committee
thereof.

37.     "ITU" means the International Telecommunications Union and any working
committee thereof.

38.     "ISO" means International Organization for Standardization.

39.     "IEC" means International Electrotechnical Commission.

40.     "MPEG" means Moving Picture Experts Group.

41.     "AVC" means Advanced Video Coding.

42.     "JVT" means Joint Video Team.

43.     "SDO" means any organization or association that develops, determines and/or
disseminates industry standards for use in the telecommunications and/or electronics fields,

including but not limited to organizations commonly referred to as Standards Development

Organizations or Standards Setting Organizations, including but not limited to IEEE, ITU, ISO,

IEC, MPEG, and JVT.

44.     "Standard" means any industry standard for use in the telecommunications and/or

electronics fields, including but not limited to any standard developed, determined and/or

disseminated by an SDO (e.g., H.264 Standard, 802.11 Standard) and any technology that has

become a de facto standard due to widespread adoption and/or use (e.g., FAT File System,

exFAT File System).

45.     "802.11 Standard" means IEEE Standard 802.11™-2007 (Revision of IEEE

Standard 802.11-1999) and all subsequent amendments or revisions thereto. This standard is

entitled "IEEE Standard for Information technology — Telecommunications and information

exchange between systems — Local and metropolitan area networks — Specific requirements.

Part 11: Wireless LAN Medium Access Control (MAC) and Physical Layer (PHY)

Specifications."

46.     "October 21, 2010 Letter" refers to the letter dated October 21, 2010 attached as

Exhibit 1 to the Declaration of Norman H. Beamer in Support of Motorola, Inc. and Motorola

Mobility's Motion to Dismiss.

47.     "October 29, 2010 Letter" refers to the letter dated October 29, 2010 attached as

Exhibit 2 to the Declaration of Norman H. Beamer in Support of Motorola. Inc. and Motorola

Mobility, Inc.'s Motion to Dismiss.

48.     "Application Programming Interface" means any software rules, specifications,

instruction sets, programs, routines, data structures, object classes, commands or protocols

designed or operable to facilitate communication between two different software applications or programs.

## INSTRUCTIONS

1.      If any document or thing is withheld subject to a claim of attorney-client privilege, attorney work product immunity, or any other privilege or immunity from disclosure, Microsoft shall describe in sufficient detail the nature of the document or thing withheld, its date, a description of the subject matter, the names and addresses of all persons who prepared the document and to whom the document was disclosed, its present custodian, and a statement of the grounds for withholding the information, such that will enable other parties to assess the claim of privilege or immunity.

2.      These Requests require Microsoft to produce all documents and things in Microsoft's possession, custody or control; or in the possession, custody or control of Microsoft's agents, consultants, representatives, officers, directors, affiliates, predecessors and successors in interest, parents, divisions, subsidiaries, regional offices, assignees, trustees, employees, experts, attorneys, and/or anyone else acting on Microsoft's behalf or subject to its control.

3.      All documents and things should be produced with information that identifies the file or other source in which each document responsive to these Requests is found, or a record of such source information shall be made available upon request by Plaintiff during the course of discovery.  All documents and things should be produced in the same file or other organizational environment in which they are maintained.  For example, a document that is part of a file, docket or other grouping should be physically produced together with all other documents from said file, docket or grouping responsive to said request, in the same order or manner of arrangement

as the original.  Additionally, a document should be produced stapled, clipped or otherwise bound or connected in the same manner as the original.  Where color is necessary to interpret or understand the content of the documents, please produce color copies.

4.      All documents that constitute electronically stored information as defined in the Federal Rules of Civil Procedure shall be produced as single page TIFFs with image load files showing production numbers and document breaks or as otherwise agreed by the parties. Plaintiff reserves the right to request production of electronically stored information in its native format and/or with associated metadata where necessary.

5.      If Microsoft cannot comply in full with any specific Request, after a diligent search, Microsoft shall comply to the fullest extent possible, specifying: (a) the information it fails to produce; and (b) why full compliance is not possible.

6.      If Microsoft fails to produce a document or thing on the grounds that such document or thing is no longer in Microsoft's possession, custody or control, Microsoft shall state what disposition was made of that document or thing, including the circumstances of any loss or destruction of such document or thing, and the names and addresses of all persons having knowledge of the nature and contents of such document or thing.

7.      If Microsoft has no documents responsive to a certain request, please so state.  If Microsoft is aware that a document or group of documents responsive to these requests once existed, but has been destroyed or discarded, identify each such document or group of documents, including by stating: (i) the date of the document; (ii) the subject matter of the document; (iii) the person(s) who prepared or authored the document; (iv) all persons to whom the document was distributed, shown, or explained; (v) when the document or group of documents was destroyed or discarded; (vi) why the document or group of documents was

10

destroyed or discarded; and (vii) the person most knowledgeable about the content of the document(s) and the circumstances under which the document or group of documents was destroyed or discarded.

8.     These requests are continuing in nature, and responses must be supplemented in accordance with Fed. R. Civ. P 26(e).  If additional information is later discovered that is responsive to these requests, supplemental responses disclosing that information must be submitted as promptly as possible.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

### REQUEST NO. 1

All draft and final versions of Microsoft's quarterly, annual, and other periodic reports filed with any U.S. or foreign governmental entity from November 1, 2004, to the present.

### REQUEST NO. 2

Documents and things sufficient to identify, for the last six years, any and all of Microsoft's predecessor or successor companies, corporations, affiliates, or business entities.

### REQUEST NO. 3

Documents sufficient to identify any and all divisions, companies, partnerships, joint ventures, corporations, or other business entities affiliated with Microsoft or owned by Microsoft in whole or in part or which owns Microsoft in whole or in part.

### REQUEST NO. 4

Documents and things sufficient to identify, for the last six years, Microsoft's corporate structure and to show any relationship between any and all divisions, companies, partnerships, joint ventures, corporations, or other business entities affiliated with Microsoft or owned by Microsoft in whole or in part or which owns Microsoft in whole or in part.

**REQUEST NO. 5**

Documents sufficient to identify, for the last six years, the organization of and personnel that comprise Microsoft's management team.

**REQUEST NO. 6**

All documents concerning Microsoft's intellectual property licensing policies, practices and/or guidelines (see, e.g.,

http://www.microsoft.com/about/legal/en/us/IntellectualProperty/IPLicensing/Policy.aspx), and Microsoft's adherence thereto.

**REQUEST NO. 7**

All documents concerning how a RAND or FRAND rate is defined or should be determined for any Standard, including without limitation any such documents that refer or relate to such definitions or determinations with reference to the 802.11 Standard or H.264 Standard.

**REQUEST NO. 8**

All documents concerning any complaint, claim or defense, filed by Microsoft or another, in any court or administrative agency, foreign or domestic, concerning whether Microsoft or any other Person had charged, proposed or demanded, or was attempting to charge, an excessive, unfair, and/or discriminatory royalty fee or licensing term.

**REQUEST NO. 9**

All communications between you and any licensee or potential licensee in which said licensee or potential licensee stated at any point that your proposed licensing terms were excessive, discriminatory, unfair, or unreasonable and/or were not RAND terms or made other allegations in support of or relating to such contentions.

**REQUEST NO. 10**

All patent statements and licensing declarations prepared by Microsoft relating to any Standard.

**REQUEST NO. 11**

All letters of assurance submitted by Microsoft to the IEEE.

**REQUEST NO. 12**

All licensing declarations submitted by Microsoft to the ITU.

**REQUEST NO. 13**

All documents reflecting the royalties Microsoft has charged, is currently charging, or has proposed or offered to patent licensees on RAND and/or FRAND terms, or otherwise predicated on a RAND and/or FRAND commitment.

**REQUEST NO. 14**

All documents concerning royalties or other licensing fees Microsoft has paid, is currently paying, has received, or is currently receiving under licenses for patented technologies necessary or essential to implementation of any Standard.

**REQUEST NO. 15**

All documents concerning license agreements Microsoft has entered into with another Person for patented technologies necessary or essential to implementation of any Standard.

**REQUEST NO. 16**

All documents concerning any agreements or understandings (financial or otherwise) that include a license to patents on RAND and/or FRAND terms, or otherwise predicated on a RAND and/or FRAND commitment.

**REQUEST NO. 17**

All documents concerning any offer to license patents relating to any Standard, including but not limited to any invitations or offers to negotiate a license, transfer, or assignment of patents, any offers to license, transfer or assign all of the patents listed in the offer, or any offers to license, transfer, or assign a portion of patents listed in the offer.

**REQUEST NO. 18**

All documents concerning whether a patent license should include a royalty rate based on the value of an entire product.

**REQUEST NO. 19**

All documents concerning whether a patent license should include a royalty rate based on the value of a component product or innovative feature.

**REQUEST NO. 20**

All documents concerning any contracts, agreements or understandings (financial or otherwise), where a patent was licensed on terms that included, notwithstanding any other terms in the agreement, a royalty rate based on the value of an entire product.

**REQUEST NO. 21**

All documents concerning any contracts, agreements or understandings (financial or otherwise), where a patent was licensed on terms that included, notwithstanding any other terms in the agreement, a royalty rate based on the value of a component product or innovative feature.

**REQUEST NO. 22**

All documents concerning any agreement or understanding (financial or otherwise) between Microsoft and any third parties concerning research, development or commercialization of products implementing, or capable of operating in compliance with, an 802.11 Standard

and/or an H.264 Standard, including all assignments, transfer or license agreements, technology

exchange agreements, joint development agreements, marketing agreements or distribution

agreements, and any drafts, communications, correspondence and notes concerning the

negotiation thereof.

## REQUEST NO. 23

All documents concerning any evaluation, valuation or other consideration of any of the

patents listed in the Annex of the October 21, 2010 Letter.

## REQUEST NO. 24

All documents concerning any evaluation, valuation or other consideration of taking a

license to any or all of the patents listed in the Annex of the October 21, 2010 Letter.

## REQUEST NO. 25

All documents concerning any efforts to compare the license terms offered in Motorola's

October 21, 2010 letter to the terms of any other offer, license or agreement.

## REQUEST NO. 26

All documents concerning whether any of the patents and patent applications listed in the

Annex to Motorola's October 21, 2010 Letter is reasonably necessary or essential to

implementing any portion of an 802.11 Standard.

## REQUEST NO. 27

All documents concerning any evaluation, valuation or other consideration of any of the

patents listed in the Annex of the October 29, 2010 Letter.

## REQUEST NO. 28

All documents concerning any evaluation, valuation or other consideration of taking a

license to any or all of the patents listed in the Annex of the October 29, 2010 Letter.

**REQUEST NO. 29**

All documents concerning any efforts to compare the license terms offered in Motorola's October 29, 2010 letter to the terms of any other offer, license or agreement.

**REQUEST NO. 30**

All documents concerning whether any of the patents and patent applications listed in the Annex to Motorola's October 29, 2010 Letter is reasonably necessary or essential to implementing the H.264 Standard.

**REQUEST NO. 31**

All documents concerning Microsoft's decision to include functionality in any of its products that complies with the 802.11 Standard.

**REQUEST NO. 32**

All documents concerning any wireless connectivity technology alternatives that Microsoft considered implementing in lieu of 802.11 Standard functionality in any of its products.

**REQUEST NO. 33**

All documents concerning Microsoft's decision to include functionality in any of its products that complies with an H.264 Standard.

**REQUEST NO. 34**

All documents concerning any video encoding/decoding technology alternatives that Microsoft considered implementing in lieu of H.264 Standard functionality in any of its products.

**REQUEST NO. 35**

All documents concerning the importance, financial value, consumer demand, or cost of incorporating 802.11 Standard wireless functionality in any Microsoft product.

**REQUEST NO. 36**

All documents concerning the importance, financial value, consumer demand, or cost of incorporating H.264 Standard functionality in any Microsoft product.

**REQUEST NO. 37**

For each current, former or planned Microsoft product that does, has or will incorporate 802.11 Standard functionality, all documents concerning the 802.11 Standard that are made generally available to customers (including wholesalers, retailers and distributors) or the public, including but not limited to catalogs, user's manuals, brochures, advertisements, data sheets, data books, and product specifications.

**REQUEST NO. 38**

For each current, former or planned Microsoft product that does, has or will incorporate H.264 Standard functionality, all documents concerning the H.264 Standard that are made generally available to customers (including wholesalers, retailers and distributors) or the public (including developers), including but not limited to catalogs, user's manuals, brochures, advertisements, data sheets, data books and product specifications.

**REQUEST NO. 39**

All publications, abstracts, articles, papers, posters, manuscripts, presentations and speeches, including drafts and notes, authored or co-authored by, or presented by, any director, officer, employee, consultant, or other representative of Microsoft concerning an 802.11 Standard.

**REQUEST NO. 40**

All publications, abstracts, articles, papers, posters, manuscripts, presentations and speeches, including drafts and notes, authored or co-authored by, or presented by, any director, officer, employee, consultant, or other representative of Microsoft concerning an H.264 Standard.

**REQUEST NO. 41**

All documents concerning any exhibition, convention or trade show at which Microsoft advertised, displayed, demonstrated, or showed any products implementing an 802.11 Standard, including but not limited to advertisements, brochures, articles, pamphlets, price lists, product specifications, and other promotional, marketing, or presentation materials, and other documents prepared for or distributed at any exhibition, convention, or trade show.

**REQUEST NO. 42**

All documents concerning any exhibition, convention or trade show at which Microsoft advertised, displayed, demonstrated, or showed any products implementing an H.264 Standard, including but not limited to advertisements, brochures, articles, pamphlets, price lists, product specifications, and other promotional, marketing, or presentation materials, and other documents prepared for or distributed at any exhibition, convention, or trade show.

**REQUEST NO. 43**

All documents that support or refute any claim by Microsoft that commitments made to an SDO to license patents on fair, reasonable, and/or non-discriminatory terms are enforceable contracts and/or promises.

**REQUEST NO. 44**

All documents concerning any claim by Microsoft that Motorola breached or otherwise violated any contractual obligation by sending the October 21, 2010 Letter and/or the October 29, 2010 Letter.

**REQUEST NO. 45**

All documents that support or refute any claim by Microsoft that, at the time of the development and/or promulgation of the 802.11 Standard, alternative technologies were available to the technologies covered by the patents listed in the Annex of Motorola's October 21, 2010 Letter.

**REQUEST NO. 46**

All documents that support or refute any claim by Microsoft that, absent any Letters of Assurance provided by Motorola, one or more IEEE working groups would have revised the 802.11 Standard, employed alternative technologies and/or stopped working on the 802.11 Standard.

**REQUEST NO. 47**

All documents that support or refute any claim by Microsoft that it was aware that Motorola had provided letters of assurance to the IEEE during development and consideration of the 802.11 Standard.

**REQUEST NO. 48**

All documents that support or refute any claim by Microsoft that it relied on Motorola's promises in developing, adopting and implementing 802.11 Standard functionalities in any of its products.

**REQUEST NO. 49**

All documents that support or refute any claim by Microsoft that, at the time of the development and/or promulgation of an H.264 Standard, alternative technologies were available to the technologies covered by the patents listed in the Annex of Motorola's October 29, 2010 letter to Microsoft.

**REQUEST NO. 50**

All documents that support or refute any claim by Microsoft that absent any Patent Statement and Licensing Declarations provided by Motorola, the ITU would have employed alternative technologies, revised an H.264 Standard and/or stopped working on an H.264 Standard.

**REQUEST NO. 51**

All documents that support or refute any claim by Microsoft that it was aware that Motorola had provided Patent Statement and Licensing Declarations to the ITU standards body during development and consideration of an H.264 Standard.

**REQUEST NO. 52**

All documents that support or refute any claim by Microsoft that it relied on Motorola's promises in developing, adopting and implementing H.264 Standard functionalities in any of its products.

**REQUEST NO. 53**

All documents that support or refute any claim by Microsoft that it was injured in its business or property, or was irreparably harmed, by reason of the October 21, 2010 Letter and/or the October 29, 2010 Letter.

**REQUEST NO. 54**

All documents and things that Microsoft has been requested to identify in any of Motorola's interrogatories served in this case, or that Microsoft has identified, described or referred to in its responses to any of Motorola's interrogatories served in this case.

**REQUEST NO. 55**

All documents and things that were reviewed, considered or relied upon during the preparation of Microsoft's responses to any of Motorola's interrogatories or requests for admission served in this case.

**REQUEST NO. 56**

All documents and things that were reviewed, considered or relied upon during the preparation of any filing in this case.

**REQUEST NO. 57**

All documents passing between Microsoft, or its counsel, agents, or other representatives and any person Microsoft expects to call as a witness (including both fact and expert witnesses) at any hearing or at trial in this case.

**REQUEST NO. 58**

All documents prepared by any person Microsoft expects to call as a witness (including both fact and expert witnesses) at any hearing or at trial in this case.

**REQUEST NO. 59**

All insurance policies or indemnity agreements that Microsoft believes may cover either the attorney's fees in this litigation or any settlement or damage award.

**REQUEST NO. 60**

All press releases, articles, presentations or other published materials or public statements made by Microsoft concerning this lawsuit.

**REQUEST NO. 61**

All documents concerning the retention and/or compensation, by Microsoft or on Microsoft's behalf, of anyone whom Microsoft expects to call as an expert witness at a hearing or at a trial in this case.

**REQUEST NO. 62**

All documents concerning Microsoft's plans, policies and procedures from November 1, 2004, to the present for the retention, management, and/or destruction of documents, including e-mail, electronic instant messaging and electronic text messaging, including without limitation all documents concerning actual compliance or non-compliance with such plans or procedures.

**REQUEST NO. 63**

Documents, electronically stored information and things sufficient to identify and describe, for the last six years, the past and present organizational and management structure of Microsoft, including the identity of its (a) officers, (b) directors, and (c) division or department heads responsible for research and development, engineering, design, manufacturing, testing, deployment, sales, advertising, promotion, marketing, technology licensing, sales, corporate and financial administration, and intellectual property issues concerning the Accused Microsoft Products.

**REQUEST NO. 64**

For each release and/or version of the Accused Microsoft Products, Documents and things sufficient to identify all differences or similarities between that version (or release or revision) and each prior or concurrent version (or release or revision) of such Product.

**REQUEST NO. 65**

Documents and things sufficient to show the structure, operation, function, and/or performance of the Accused Microsoft Products, including but not limited to the Media Foundation H.264 video decoder and encoder and Internet Explorer 9 (including but not limited to all Technical Documentation, source code and/or object code).

**REQUEST NO. 66**

Documents and things sufficient to identify and describe all Application Programming Interfaces and/or Technical Documentation that Microsoft makes available to any third party (*e.g.*, application developers, customers, distributors, purchasers, or licensees) concerning development of software and/or applications compatible or interoperable with Media Foundation H.264 video decoder and encoder.

**REQUEST NO. 67**

Documents and things sufficient to show all agreements and/or licenses between Microsoft and any third parties concerning the Accused Microsoft Products.

**REQUEST NO. 68**

Documents and things sufficient to show any actual usage by consumers or end-users of any Accused Microsoft Products, including but not limited to Microsoft Client Access Licenses purchased, website access statistics, or server access statistics.

**REQUEST NO. 69**

All documents and things concerning any of the Accused Motorola Products.

**REQUEST NO. 70**

All documents and things concerning any of the Asserted Patents.

**REQUEST NO. 71**

Documents and things sufficient to identify and describe all communications, in the last six years, regarding Motorola, including but not limited to all such communications with any of Microsoft's customers, suppliers, distributors, or any cellular telephone carriers or service providers.

**REQUEST NO. 72**

Documents and things sufficient to identify and describe all communications, in the last six years, between Microsoft and Motorola.

**REQUEST NO. 73**

Documents and things sufficient to identify and describe all agreements, licenses, proposals, offers, license negotiations, business negotiations, license agreements, or contracts concerning any patent assigned to Motorola, including without limitation any documents concerning any consideration given by Microsoft to take a license under any of the Asserted Patents.

**REQUEST NO. 74**

All documents and things concerning Microsoft's knowledge or awareness of any of the Asserted Patents.

**REQUEST NO. 75**

All documents and things concerning Microsoft's knowledge or awareness of Microsoft's alleged infringement, potential infringement or actual infringement of any of the Asserted Patents.

**REQUEST NO. 76**

All documents and things concerning any agreements between Microsoft and any other person or entity concerning any patents covering or allegedly covering the Accused Microsoft Products, including without limitation agreements providing the right to manufacture, license, sell, offer for sale, use, or import such products under such patents, licenses, assignments, agreements of forbearance, settlement agreements, agreements of non-assertion, and covenants not to sue.

**REQUEST NO. 77**

All documents and things concerning any agreements, licenses, proposals, offers, license negotiations, license agreements, contracts, discussions, design agreements, purchasing agreements, manufacturing agreements, sales agreements, or any other agreements or contracts that involve, encompass, or relate to the sale or license of any of the Accused Microsoft Products.

**REQUEST NO. 78**

All documents and things concerning any invention disclosed in any of the Asserted Patents, or any product that embodies or uses such an invention, that has been copied or utilized by others, including by Microsoft.

**REQUEST NO. 79**

All documents and things concerning the actual, alleged or potential infringement or non-infringement of any claim of any of the Asserted Patents by any release and/or version of the Accused Microsoft Products.

**REQUEST NO. 80**

All documents and things concerning any evaluation, investigation, and/or analysis regarding whether any release and/or version of the Accused Microsoft Products infringe any claim of any of the Asserted Patents.

**REQUEST NO. 81**

All documents and things concerning the validity, invalidity, enforceability, unenforceability, infringement, non-infringement, patentability, state of the art, prior art study, or scope of any claim of the Asserted Patents.

**REQUEST NO. 82**

All documents and things concerning possible, contemplated or actual requests for reexamination of any of the Asserted Patents.

**REQUEST NO. 83**

All documents and things concerning any infringement opinions, opinions of counsel or any other legal opinions concerning the Asserted Patents.

**REQUEST NO. 84**

All documents concerning any evaluation, investigation or analysis of any product sold by Motorola, including without limitation those analyses concerning the structure, operation functionality, performance, or any other basis of comparison of such products to Microsoft's products.

**REQUEST NO. 85**

All documents concerning any communications between Microsoft and any third party (including without limitation, mobile device manufacturers, personal computer manufacturers, OEMs, customers, distributors, purchasers, licensees or application developers), regarding whether or not any release and/or version of the Accused Microsoft Products or any components thereof infringe any claim of any of the Asserted Patents.

**REQUEST NO. 86**

All documents concerning any attempt to design or re-design any of Microsoft's products so as to avoid infringing any claim of any of the Asserted Patents, including without limitation any attempt to design or re-design the Accused Microsoft Products.

**REQUEST NO. 87**

All documents and things tending to support or undermine any contention by Microsoft that any claim of any of the Asserted Patents is invalid.

**REQUEST NO. 88**

All documents and things concerning any of the inventors of any of the Asserted Patents, including without limitation any communications with any such inventors.

**REQUEST NO. 89**

All documents and things concerning Microsoft's proposed interpretation or construction of any claim, claim limitation or term used in any claim of any of the Asserted Patents and Microsoft Counterclaim Patents, and all documents and things that support or refute Microsoft's proposed constructions of any claim limitation or term, including, without limitation, any extrinsic evidence relevant to the construction of any of the asserted claims of the Asserted Patents and Microsoft Counterclaim Patents.

**REQUEST NO. 90**

All documents and things concerning Prior Art to the Asserted Patents or any other subject matter that Microsoft contends is "material" to any claim(s) of the Asserted Patents, as that term is defined under 37 C.F.R. § 1.56, including all Prior Art that Microsoft contends anticipates, renders obvious or is otherwise material to any claim(s) of the Asserted Patents and all prior art searches, studies and evaluations concerning the Asserted Patents.

**REQUEST NO. 91**

All documents and things concerning whether or not: (i) there was one or more long-felt need for the inventions claimed in the Asserted Patents; (ii) the art failed to solve the problems which are the subjects of the inventions claimed in the Asserted Patents; (iii) the inventions claimed in the Asserted Patents satisfied one or more long-felt need in the art; (iv) the Accused Microsoft Products have achieved commercial success; or (v) the industry has recognized the significance of the inventions of the Asserted Patents.

**REQUEST NO. 92**

All documents and things concerning any objective indicia that tend to support the non-obviousness of the claimed subject matter of the Asserted Patents.

**REQUEST NO. 93**

All documents and things concerning any of the Concurrent Litigations.

**REQUEST NO. 94**

All documents and things (including but not limited to written discovery responses, deposition transcripts, expert reports, motions, transcripts, etc.) from any prior or contemporaneous dispute or litigation concerning Motorola, including but not limited to any

patent infringement action, patent interference proceeding, reexamination, or patent opposition or cancellation proceeding.

## REQUEST NO. 95

Documents and things sufficient to show Microsoft's estimates or projections since 2008 of the past, present or future market for any release and/or version of the Accused Microsoft Products in the United States or abroad, including but not limited to business plans, market plans, market analyses, market studies, commercial studies, product plans, profit plans, and demand studies and surveys.

## REQUEST NO. 96

Documents and things sufficient to identify and describe the promotion, marketing or advertising of each release and/or version of Accused Microsoft Products in the United States, including but not limited to advertising literature, promotional materials, videos, manuals, memoranda, press and trade releases, presentations or brochures, advertising or licensing plans, and documents reflecting amounts budgeted or spent for such promotion, marketing or advertising.

## REQUEST NO. 97

Documents and things sufficient to show the marketing in the United States, or sales in the United States of the Accused Microsoft Products including advertising literature, promotional materials, videos, manuals, memoranda, press and trade releases, presentations or brochures pertaining to the Accused Microsoft Products

## REQUEST NO. 98

A sample of all advertisements, marketing materials and promotional materials used by Microsoft for each release and/or version of the Accused Microsoft Products.

**REQUEST NO. 99**

Documents and things sufficient to show dates of releases of each release and/or version of the Accused Microsoft Products and their components.

**REQUEST NO. 100**

All customer testimonials, third-party product reviews and/or Microsoft case studies concerning the Accused Microsoft Products.

**REQUEST NO. 101**

Documents and things sufficient to show: (i) Microsoft's decision to design, develop, test, manufacture, market, test market, import, sell or offer to sell any release and/or version of the Accused Microsoft Products; (ii) technical, marketing or profitability information or business factors considered in making the decisions referred to in part (i); and (iii) plans or strategies for the design, development, manufacture, distribution, importation, or sale of any release and/or version of the Accused Microsoft Products.

**REQUEST NO. 102**

Documents and things sufficient to identify and describe all training courses, telephone or Internet customer support, classes and seminars conducted by or on behalf of Microsoft for users, customers, developers, installers, operators, testers, purchasers, or licensees of any release and/or version of the Accused Microsoft Products.

**REQUEST NO. 103**

Documents and things sufficient to identify and describe the purchase, distribution, marketing, supply and/or sale channels of each release and/or version of the Accused Microsoft Products.

**REQUEST NO. 104**

  All financial statements, income statements, balance sheets, or other financial and/or accounting statements sufficient to show income and/or expenses of any type, since 2009, concerning each release and/or version of the Accused Microsoft Products.

**REQUEST NO. 105**

  Documents and things sufficient to show, on an annual or similar periodic basis, the suggested and actual sales price or license fee of each release and/or version of the Accused Microsoft Products since 2009.

**REQUEST NO. 106**

  Documents and things sufficient to show Microsoft's pricing for the purchase, use, or licensing of the Accused Microsoft Products, including but not limited to documents relating to pricing or licensing strategies, pricing or licensing decisions, price changes, price lists, licensing terms, and license agreements for any of the Accused Microsoft Products.

**REQUEST NO. 107**

  Documents and things sufficient to determine, on a monthly or quarterly periodic basis, the total number of units sold or licensed in the United States of each release and/or version of the Accused Microsoft Products since 2009.

**REQUEST NO. 108**

  Documents and things sufficient to determine, on a monthly or quarterly periodic basis, the total revenues received by Microsoft from the sale or license in the United States of each release and/or version of the Accused Microsoft Products since 2009.

**REQUEST NO. 109**

Documents and things sufficient to determine, on a monthly or quarterly periodic basis, and on a per release and/or version basis, the profits that Microsoft derives from the sale or license in the United States of each release and/or version of the Accused Microsoft Products.

**REQUEST NO. 110**

Documents and things sufficient to show Microsoft's costs or cost structure with respect to each release and/or version of the Accused Microsoft Products since 2009, including but not limited to, on a monthly or quarterly periodic basis, all costs other than standard costs related to the sale or license in the United States of each release and/or version of the Accused Microsoft Products.

**REQUEST NO. 111**

Documents and things sufficient to determine, on a monthly or quarterly periodic basis, the actual total cost or variances from the standard costs for Microsoft with respect to the sale in the United States of each release and/or version of the Accused Microsoft Products.

**REQUEST NO. 112**

Documents and things sufficient to show Microsoft's internal allocation of income and/or expenses with respect to each release and/or version of the Accused Microsoft Products since 2009.

**REQUEST NO. 113**

All documents concerning any change to or feature of any Accused Microsoft Product that Microsoft investigated, considered, or implemented for the purpose of avoiding infringement of any of the Asserted Patents.

**REQUEST NO. 114**

All documents concerning Microsoft's plans, policies and procedures, from January 1, 2004 to the present, for the retention, management, and/or destruction of documents, including e-mail, electronic instant messaging and electronic text messaging, including without limitation all documents concerning actual compliance or non-compliance with such plans or procedures.

**REQUEST NO. 115**

All documents and things concerning any affirmative defense(s) which Microsoft intends to assert in this action, including but not limited to documents which tend to support or undermine any of the affirmative defense(s).

**REQUEST NO. 116**

All documents and things concerning any counterclaims which Microsoft intends to assert in this action, including but not limited to documents which tend to support or undermine any of Microsoft's affirmative defenses and / or counterclaims.

**REQUEST NO. 117**

All documents upon which Microsoft intends to rely upon to support its claims, defenses and/or counterclaims in this case.

**REQUEST NO. 118**

All documents that Microsoft contends are related to a determination of a reasonable royalty and/or the amount of damages adequate to compensate Motorola for Microsoft's infringement of the Asserted Patents.

**REQUEST NO. 119**

All documents concerning any license or attempt by Microsoft to license patents or other intellectual property relating to the Accused Microsoft Products or any component thereof, including documents concerning Microsoft's actual or projected revenues, royalty rates, or profits from such licenses or attempts to license.

**REQUEST NO. 120**

All documents concerning any license obtained or attempt by Microsoft to obtain a license for the use of the patents or other intellectual property of a third party relating to the Accused Microsoft Products or any component thereof, including documents concerning actual or projected payments, or royalty rates from such licenses or attempts to license.

**REQUEST NO. 121**

All documents concerning any royalties or licensing fees paid to or by Microsoft for the use, manufacture, or sale of any of the Accused Microsoft Products.

**REQUEST NO. 122**

All documents concerning any projected or actual royalty rate for a license to make, use, sell, or offer to sell any of the Accused Microsoft Products.

**REQUEST NO. 123**

All documents concerning any contention by Microsoft that this case is exceptional and/or that Microsoft is entitled to recover attorneys' fees in this action.

**REQUEST NO. 124**

All documents concerning any contention by Microsoft that its alleged infringement is not willful.

**REQUEST NO. 125**

All documents that Microsoft has been requested to identify in any of Motorola's interrogatories served in this action, or that Microsoft has identified, described or referred to in its responses to any of Motorola's interrogatories served in this action.

**REQUEST NO. 126**

Documents sufficient to identify the individual or individuals responsible for the research and development, engineering, design, manufacturing, testing, purchasing, sourcing, packaging, maintenance, sales, importation, sale for importation, sale after importation, distribution, marketing, strategic planning, technology licensing, certification, and intellectual property issues concerning the Accused Microsoft Products.

**REQUEST NO. 127**

All Technical Documentation for each model and/or version of the Accused Microsoft Products and their components, including but not limited to user guides, user manuals, reference manuals, service manuals, product manuals, use cases, product descriptions, technician's guides, installation guides, technical manuals, technical specifications, functional specifications, software manuals, software design documents, memory maps, block diagrams, theory of operation documents, road maps, and datasheets.

**REQUEST NO. 128**

All documents concerning decoding and/or encoding of digital video content according to the H.264 Standard.

**REQUEST NO. 129**

All documents concerning consumer demand, desirability or need in the marketplace for decoding and/or encoding of digital video content according to the H.264 Standard.

**REQUEST NO. 130**

      All documents and things concerning any requirement, policy or regulation requiring any Microsoft product(s) to comply with the H.264 Standard, including the Main, Extended and/or High profiles.

**REQUEST NO. 131**

      All engineering specifications or other technical documents concerning the video decoding and/or encoding capabilities of each model and/or version of the Accused Microsoft Products, including video decoding and/or encoding capabilities, macroblock adaptive frame/field coding capabilities, and scanning path capabilities.

**REQUEST NO. 132**

      All documents and things concerning the compliance of each model and/or version of the Accused Microsoft Products with the H.264 Standard, including the Main, Extended and/or High profiles.

**REQUEST NO. 133**

      All source code, object code, or pseudo-code for use in or with each model and/or version of the Accused Microsoft Products concerning the video decoding and/or encoding and capabilities of the Accused Microsoft Products.

**REQUEST NO. 134**

      All source code, object code, or pseudo-code for use in or with each model and/or version of the Accused Microsoft Products concerning communication with and/or operation of any component of the Accused Microsoft Products which enables decoding and/or encoding of digital video content according to the H.264 Standard.

**REQUEST NO. 135**

Documents sufficient to identify all circumstances in which the Accused Microsoft Products will decode and/or encode interlaced digital video content.

**REQUEST NO. 136**

All minutes, transcripts, or recordings of Microsoft's Board of Directors or senior management meetings concerning Motorola, Inc., Motorola Mobility, General Instrument, any Motorola, Inc., Motorola Mobility or General Instrument product, and/or any of the Asserted Patents.

**REQUEST NO. 137**

All documents and things concerning any agreements, licenses, proposals, offers, license negotiations, business negotiations, license agreements, or contracts concerning any patent assigned to Motorola, including without limitation any documents concerning any consideration given by Microsoft to take a license under any of the Asserted Patents.

**REQUEST NO. 138**

All documents concerning patents, publications, products, documents or events which have been or are asserted by any person as Prior Art to any of the Asserted Patents, including Microsoft's internal documents that describe or analyze such alleged Prior Art.

**REQUEST NO. 139**

All documents concerning any actual, contemplated, or potential non-infringing alternatives to any model and/or version of the Accused Microsoft Products.

**REQUEST NO. 140**

All documents and things that Microsoft contends evidence or show the level of the ordinary skill in the art(s) pertaining to any of the Asserted Patents.

**REQUEST NO. 141**

All press releases that refer or relate to any model and/or version of the Accused Microsoft Products, this lawsuit, patent infringement or licensing, Microsoft's competitors, or Microsoft's customers.

**REQUEST NO. 142**

All documents constituting summaries of financial or accounting information prepared by or on behalf of Microsoft's management concerning or concerning each model and/or version of the Accused Microsoft Products.

**REQUEST NO. 143**

Documents and things sufficient to determine, on a monthly or quarterly periodic basis, for each model and/or version of the Accused Microsoft Products, the number of units that were returned to Microsoft.

**REQUEST NO. 144**

Documents and things sufficient to determine, on a monthly or quarterly periodic basis, for each model and/or version of the Accused Microsoft Products, the number of units that were resold as refurbished products.

**REQUEST NO. 145**

All documents and things that Microsoft expects to use as an exhibit at the trial in this action.

**REQUEST NO. 146**

All documents and things concerning the conception of the subject matter of each asserted claim of the Microsoft Counterclaim Patents, including, without limitation, memoranda,

invention disclosure forms, laboratory notebooks, technical drawings, product specifications, or diaries.

## REQUEST NO. 147

All documents and things concerning any actual reduction to practice of the subject matter of each asserted claim of the Microsoft Counterclaim Patents prior to the filing date, including without limitation all documents and things concerning any prototype or product that incorporates or embodies the subject matter of any claim of the Microsoft Counterclaim Patents.

## REQUEST NO. 148

All documents and things concerning each act of diligence leading to any reduction to practice of the subject matter of each asserted claim of the Microsoft Counterclaim Patents.

## REQUEST NO. 149

All documents and things concerning the identification, selection, or determination of the proper inventor for the Microsoft Counterclaim Patents.

## REQUEST NO. 150

All documents and things concerning any written description relating to the subject matter of any claim of the Microsoft Counterclaim Patents, including without limitation all invention disclosures and other written descriptions authored by the named inventor prior to the filing of the first patent application from which the Microsoft Counterclaim Patents claim priority.

## REQUEST NO. 151

All documents and things concerning the best mode of practicing the subject matter of each asserted claim of the Microsoft Counterclaim Patents, contemplated by the inventor at the time of filing of each patent application that led to the Microsoft Counterclaim Patents.

**REQUEST NO. 152**

All documents and things concerning the design or development of the subject matter of any claim of the Microsoft Counterclaim Patents, including without limitation all engineering notebooks or other written or electronic descriptions authored by the named inventor of the Microsoft Counterclaim Patents, or by any persons working with the inventor.

**REQUEST NO. 153**

All documents and things concerning the first sale, offer for sale, or public use or demonstration of any product, device, or method that incorporates or embodies the subject matter described in or claimed by the Microsoft Counterclaim Patents.

**REQUEST NO. 154**

All documents and things concerning publications, papers, presentations, or speeches authored in whole or in part by Microsoft concerning the subject matter described in or claimed by the Microsoft Counterclaim Patents, including without limitation the first publication of the subject matter described in or claimed by the Microsoft Counterclaim Patents.

**REQUEST NO. 155**

All documents and things concerning each search for Prior Art or other information regarding the patentability of the subject matter of any claim of the Microsoft Counterclaim Patents, including without limitation all documents and things discovered by such search.

**REQUEST NO. 156**

All documents and things Microsoft ever considered or any person ever asserted as possibly concerning or embodying Prior Art to the subject matter of any claim of the Microsoft Counterclaim Patents.

**REQUEST NO. 157**

All documents and things concerning the preparation, filing, and/or prosecution of any application that led to the Microsoft Counterclaim Patents, including without limitation documents concerning any pending U.S. or foreign patent application that claims priority from the Microsoft Counterclaim Patents, and including Microsoft's complete prosecution file for each such U.S. or foreign application or patent.

**REQUEST NO. 158**

All documents and things concerning any decision by Microsoft as to what prior art references to cite, or not to cite, during prosecution of any of the applications that led to the Microsoft Counterclaim Patents, or any related U.S. or foreign patent, including any pending U.S. or foreign patent application that claims priority from the Microsoft Counterclaim Patents, or the applications that led to the Microsoft Counterclaim Patents.

**REQUEST NO. 159**

All documents and things concerning any investigation, opinion, report, observation, or other consideration as to the patentability, validity, enforceability, scope, and/or infringement of the Microsoft Counterclaim Patents, or any related U.S. or foreign application or patent.

**REQUEST NO. 160**

With respect to each of the Microsoft Counterclaim Patents, all documents and things concerning whether:  (a) the subject matter of any claim allegedly satisfied a long felt need in the art to which it pertains, (b) the industry failed to solve problems that allegedly are solved by the subject matter of any claim, (c) experts in the industry allegedly expressed skepticism concerning the subject matter of any claim, (d) the subject matter of any claim allegedly has been a commercial success, (e) the industry allegedly has recognized the significance of the subject

matter of any claim, (f) the subject matter of any claim allegedly has been copied by others in the industry, and (g) the subject matter of any claim allegedly achieved unexpected results.

**REQUEST NO. 161**

With respect to each of the Microsoft Counterclaim Patents, all documents and things concerning any alleged nexus or lack thereof between any alleged commercial success of the subject matter of any asserted claim and the alleged advantages of that subject matter.

**REQUEST NO. 162**

All documents and things, not produced in response to another document request, upon which Microsoft intends to rely to support the validity of the Microsoft Counterclaim Patents, including without limitation evidence of objective indicia of non-obviousness and other evidence of novelty and non-obviousness.

**REQUEST NO. 163**

All documents and things concerning the level of ordinary skill in the art pertinent to the Microsoft Counterclaim Patents.

**REQUEST NO. 164**

All documents and things concerning ownership of the Microsoft Counterclaim Patents, including without limitation any proposed, requested, or executed assignment, transfer, license, conveyance, mortgage, security interest, lien, covenant not to sue, and/or grant of any right, title or interest in or to the Microsoft Counterclaim Patents and documents sufficient to identify all persons who assisted or had any involvement in the subject matter of these documents and things.

**REQUEST NO. 165**

All documents and things concerning any agreement among or between Microsoft and any other entity or person regarding the Microsoft Counterclaim Patents, including any agreement or arrangement related to this or any other action.

**REQUEST NO. 166**

All documents and things referring or relating to studies or analyses conducted by or for Microsoft concerning any of the Microsoft Counterclaim Patents, including, without limitation, all prior art searches and all opinions of counsel concerning any of the Microsoft Counterclaim Patents, including opinions concerning the validity, enforceability, infringement, patentability, scope or interpretation of any claim of any of the Microsoft Counterclaim Patents, and including all instructions and material that were provided to the persons who performed the search or study or prepared the analysis or opinion.

**REQUEST NO. 167**

All documents that Microsoft, its employees or agents have written or published, as authors, co-authors or editors, concerning the subject matter of the Microsoft Counterclaim Patents.

**REQUEST NO. 168**

All pleadings, written discovery responses, deposition transcripts, expert reports, motions, and trial transcripts, and their respective exhibits, from any prior or contemporaneous dispute or litigation (including without limitation any foreign proceedings, proceedings before the U.S. International Trade Commission, proceedings before the United States Patent and Trademark Office, or proceedings before any U.S. District Court) concerning the Microsoft Counterclaim Patents, or any related U.S. patent, or foreign counterpart thereof.

**REQUEST NO. 169**

All documents and things concerning any patent infringement action, patent interference proceeding, or patent opposition or cancellation proceeding relating to any of the Microsoft Counterclaim Patents.

**REQUEST NO. 170**

All documents and things concerning any determination, assertion, notification (including all notices of infringement), conclusion, charge, or contention by Microsoft of infringement of or inducement to infringe, any claim of the Microsoft Counterclaim Patents by any person other than Motorola.

**REQUEST NO. 171**

All patents, publications, articles, presentations, and other writings, whether or not published, authored or co-authored by the named inventor of the Microsoft Counterclaim Patents, and by any person whom Microsoft identifies as a testifying expert in this action.

**REQUEST NO. 172**

All transcripts of testimony (in paper, "minuscript" or other condensed form, and electronic form) given at a deposition, hearing, trial, or other proceeding by the named inventor of the Microsoft Counterclaim Patents, Microsoft's Rule 30(b)(6) designees, Microsoft's trial witnesses, and any person whom Microsoft identifies as a testifying expert in this action.

**REQUEST NO. 173**

All documents and things concerning any claim for damages made in any other proceeding or against any other person or entity concerning the Microsoft Counterclaim Patents.

**REQUEST NO. 174**

All documents and things concerning any contention, conclusion, or belief by any third-party that any claim of the Microsoft Counterclaim Patents is invalid or unenforceable.

**REQUEST NO. 175**

All documents and things concerning the identity, design, structure, or operation of any of the Accused Motorola Products, including without limitation Microsoft's first knowledge of each Accused Motorola Product and the circumstances under which Microsoft learned of the Accused Motorola Products.

**REQUEST NO. 176**

All documents and things concerning consideration by or on behalf of Microsoft of whether any of the Accused Motorola Products infringes any claim of the Microsoft Counterclaim Patents, including without limitation documents concerning any test or evaluation of any of the Accused Motorola Products conducted by or on behalf of Microsoft.

**REQUEST NO. 177**

All documents and things referencing Motorola and concerning plans, suggestions, or contemplated action regarding the bringing or institution of this action and/or concerning any other contemplated litigation against Motorola, including without limitation all corporate minutes and all other documents concerning meetings of Microsoft's corporate boards or committees.

**REQUEST NO. 178**

All documents and things concerning any correspondence or communication between Microsoft and any other person (including Microsoft actual or potential customers or suppliers or competitors) concerning Motorola, the Microsoft Counterclaim Patents, products accused of

infringing the Microsoft Counterclaim Patents, litigation involving the Microsoft Counterclaim Patents, or the subject matter of this litigation.

**REQUEST NO. 179**

All documents and things referring or relating to the basis for Microsoft's damages calculations in the event liability is established in this case, including, without limitation, all documents and things concerning what Microsoft contends are lost profits or reasonable royalties for the use of the Microsoft Counterclaim Patents, and all documents and things reflecting how Microsoft determined such lost profits or reasonable royalties, including, without limitation, all documents and things concerning any allegedly established industry royalty rate for any product comparable to any Microsoft Allegedly Practicing Product.

**REQUEST NO. 180**

All documents and things referring or relating to any license, offer to license, attempt to license, release or covenant not to sue on any patent or technology in the general field of the Microsoft Counterclaim Patents.

**REQUEST NO. 181**

All documents and things concerning royalties or license fees for the Microsoft Counterclaim Patents or any technology relating to the art to which the subject matter of the Microsoft Counterclaim Patents pertain, including without limitation records of royalties or license fees paid or payable, and any factors used in setting royalty rates, bases, or amounts.

**REQUEST NO. 182**

All documents and things referring or relating to any design proposal or alternative considered or known by Microsoft for any Microsoft Allegedly Practicing Product.

**REQUEST NO. 183**

All documents and things referring or relating to the pricing, including transfer pricing, of any Microsoft Allegedly Practicing Product.

**REQUEST NO. 184**

All documents and things concerning pricing, actual or projected revenues, profits, margins and costs of all Microsoft Allegedly Practicing Products, including without limitation historical sales prices, income statements, profit and loss statements and planning or forecasting documents prepared on a monthly basis if available, otherwise on a quarterly or annual basis.

**REQUEST NO. 185**

All documents and things concerning business plans, projections, forecasts, market and industry analyses, market share analyses, industry trends analyses, and budgets for Microsoft Allegedly Practicing Products.

**REQUEST NO. 186**

All documents relating to patent marking of the Microsoft Counterclaim Patents under 35 U.S.C. § 287(a), including, but not limited to, documents showing compliance with the marking statute for all products covered under the Microsoft Counterclaim Patents, and procedures implemented to mark such products.

**REQUEST NO. 187**

All documents and things concerning any of the fifteen factors set forth in *Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers, Inc.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) as they apply to (whether tending to support or undermine) Microsoft's claim for damages.

**REQUEST NO. 188**

All documents and things relating to acceptable non-infringing substitutes for any product claimed in any of the Microsoft Counterclaim Patents.

**REQUEST NO. 189**

All documents and things relating to Microsoft's market share in connection with sales of Microsoft Allegedly Practicing Products during the past 10 years and all forecasts or projections of any future such market share.

**REQUEST NO. 190**

Documents sufficient to identify all fixed and variable costs associated with developing, manufacturing, marketing, advertising, promoting, and selling Microsoft Allegedly Practicing Products.

**REQUEST NO. 191**

All documents and things relating to the manufacturing capacity of Microsoft and any company manufacturing any of the Microsoft Allegedly Practicing Products.

**REQUEST NO. 192**

All documents and things referring or relating to the development and/or commercialization of Microsoft Allegedly Practicing Products, including, but not limited to, product brochures, engineering drawings, product specifications, change orders, schematics, operation manuals, component lists, sketches, prints, images, electronic information, written descriptions, test data, notebooks, minutes, reports, business plans, or the like.

**REQUEST NO. 193**

All documents and things referring or relating to the advertising, marketing, promotion, or sale of Microsoft Allegedly Practicing Products, including, but not limited to, marketing

brochures, pamphlets, circulars, press releases, sell sheets, instructions for use, advertisements, or other marketing and promotional activities.

**REQUEST NO. 194**

Documents sufficient to identify all of the Microsoft Allegedly Practicing Products, including mechanical drawings or process diagrams sufficient to identify each product.

**REQUEST NO. 195**

All documents and things concerning the design, structure, and operation of each Microsoft Allegedly Practicing Product, including without limitation all specifications, schematics, data books, technical bulletins, application notes, and user manuals.

**REQUEST NO. 196**

All documents concerning competitors of Microsoft with respect to sales of any mobile hand-held computing device, including but not limited to any market share data or analyses, market forecasts and competitive analyses.

**REQUEST NO. 197**

All agreements, including any employment or consulting agreements, between Microsoft and the named inventor(s) of the Microsoft Counterclaim Patents.

**REQUEST NO. 198**

All agreements between Microsoft and its customers regarding the purchase, supply, distribution and sale of Microsoft Allegedly Practicing Products.

**REQUEST NO. 199**

All documents and things concerning sales to, and/or use by or for, the United States government of the Accused Microsoft Products, or that otherwise support or undermine Your affirmative defense based on 28 U.S.C. § 1498.

February 7, 2011

Scott W. Hansen
WI State Bar ID No. 1017206
shansen@reinhartlaw.com
Lynn M. Stathas
WI State Bar ID No. 1003695
lstathas@reinhartlaw.com
Rebecca F. Kennedy
WI State Bar ID No. 1047201
rkennedy@reinhartlaw.com
Reinhart Boerner Van Deuren S.C.
1000 North Water Street
Suite 1700
Milwaukee, WI 53202
Phone No. (414) 298-1000
Facsimile No. 414-298-8097

*Of Counsel*:

Jesse J. Jenner*
Steven Pepe*
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036
Phone No. (212) 596-9000

Norman H. Beamer*
Mark D. Rowland*
Gabrielle E. Higgins*
Ropes & Gray LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303
Phone No. (650) 617-4000

Attorneys for Plaintiffs,
MOTOROLA MOBILITY, INC. and
GENERAL INSTRUMENT
CORPORATION

*Admitted Pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION (NOS. 1-199) TO DEFENDANT MICROSOFT CORPORATION** was served upon the following counsel of record in the manner indicated.

_____

## SERVICE LIST

| | |
|---|---|
| J. Donald Best<br>Michael Best & Friedrich LLP<br>P.O. Box 1806<br>Madison, WI  53701-1806 | **By Hand Delivery** |
| Christopher C. Davis<br>John C. Scheller<br>Michael Best & Friedrich LLP<br>P.O. Box 1806<br>Madison, WI  53701-1806 | **By Email:**<br>ccdavis@michaelbest.com<br>jcscheller@michaelbest.com |
| Charles J. Crueger<br>Michael Best & Friedrich LLP<br>100 E. Wisconsin Avenue, Ste. 3300<br>Milwaukee, WI  53202 | **By Email:**<br>cjcrueger@michaelbest.com |
| David T. Pritikin<br>Richard A. Cederoth<br>John W. McBride<br>Douglas I. Lewis<br>SIDLEY AUSTIN LLP<br>One South Dearborn<br>Chicago, IL  60603 | **By Email:**<br>dpritikin@sidley.com<br>rcederoth@sidley.com<br>jwmcbride@sidley.com<br>dilewis@sidley.com |
| T. Andrew Culbert<br>David E. Killough<br>MICROSOFT CORPORATION<br>1 Microsoft Way<br>Redmond, WA  98052 | **By Email:**<br>andycu@microsoft.com<br>davkill@microsoft.com |

5