THE HONORABLE JAMES L. ROBART

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9

MICROSOFT CORPORATION, a Washington corporation,

Plaintiff,

v.

MOTOROLA, INC., MOTOROLA MOBILITY, INC., and GENERAL INSTRUMENT CORPORATION,

Defendants.

CASE NO. C-1823-JLR

**DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION FOR PARTIAL SUMMARY JUDGMENT DISMISSING MOTOROLA'S CLAIM FOR INJUNCTIVE RELIEF**

**NOTED ON MOTION CALENDAR:
Friday, January 6, 2012**

**ORAL ARGUMENT REQUESTED**

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................................... 3

III.  LEGAL ARGUMENT ........................................................................................ 5

     A.    Summary Judgment Standard .................................................................. 5

     B.    In *eBay*, the Supreme Court Prohibited Categorical Rules – Like Those
         Proposed By Microsoft – That Prohibit Injunctions ............................... 5

     C.    RAND Assurances and Offers to License Patents Do Not Preclude
         Injunctions *Per Se* ................................................................................. 7

          1.    RAND Assurances Do Not Preclude An Injunction *Per Se* ...................... 7

          2.    Motorola's Prior Licensing Does Not Preclude An Injunction *Per Se* ..... 10

     D.    Microsoft's Motion Is Premature and Fact Issues Prevent Entry of Summary
         Judgment That Motorola Is Not Entitled to an Injunction ................................... 13

IV.   CONCLUSION ................................................................................................... 16

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT DISMISSING
MOTOROLA'S CLAIM FOR INJUNCTIVE RELIEF - i
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1

## TABLE OF AUTHORITIES

2
                                                                                          **Page(s)**
3  CASES

4  *Abend v. MCA, Inc.*,
5        863 F.2d 1465 (9th Cir. 1988) ...................................................................................10

6  *ActiveVideo Networks, Inc. v. Verizon Commc'ns., Inc.*,
         No. 10-248, 2011 WL 5878365 (E.D. Va. Nov. 23, 2011).....................................6, 11, 12-13
7
   *Acumed LLC v. Stryker Corp.*,
8        551 F.3d 1323 (Fed. Cir. 2008)........................................................................ passim

9  *Aetna Health Inc. v. Fox*,
         No. 09-5647, 2011 WL 2413267 (W.D. Wash. June 13, 2011) ................................................5
10
   *Baden Sports, Inc. v. Kabushiki Kaisha Molten*,
11       No. 06-210, 2007 WL 2790777 (W.D. Wash. Sept. 25, 2007)........................................13-14

12 *Baker Hughes Inc. v. Nalco Co.*,
         676 F. Supp. 2d 547 (S.D. Tex. 2009) ...................................................................14
13
   *Callaway Golf Co. v. Acushnet Co.*,
14       585 F. Supp. 2d 600, 620 (D. Del. 2008) .................................................................6

15 *Clearvalue, Inc, v, Pearl River Polymers, Inc.*,
         735 F. Supp. 2d 560 (E.D. Tex 2010).....................................................................12
16
   *Commonwealth Sci. & Indus. Research Organisation v. Buffalo Tech. Inc.*,
17       492 F. Supp. 2d 600 (E.D. Tex. 2007) .................................................................2, 9-10, 15

18 *Denton v. BP W. Coast Prods., LLC*,
         No. C09-1344-JCC, 2011 WL 1883805 (W.D. Wash. May 17, 2011) ....................................5
19
   *eBay Inc. v. MercExchange, L.L.C.*,
20       547 U.S. 388 (2006).......................................................................... passim

21 *ePlus, Inc. v. Lawson Software, Inc.*,
         No. 9-620, 2011 WL 2119410 (E.D. Va. May 23, 2011) ........................................6, 11, 14-16
22
   *Finjan Software, Ltd. v. Secure Computing Corp.*,
23       No. 06-369, 2009 WL 2524495 (D. Del. Aug. 18, 2009)......................................................13

24 *MercExchange, L.L.C. v. eBay, Inc.*,
         500 F. Supp. 2d 556 (E.D. Va. 2007) ...................................................................14

25
26

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT DISMISSING
MOTOROLA'S CLAIM FOR INJUNCTIVE RELIEF - ii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd.,*
   788 F. Supp. 2d 71 (E.D.N.Y. 2011) ....................................................14

*Nokia Corp. v. Apple Inc.,*
   No. 09-791-GMS, 2011 WL 2160904 (D. Del. June 1, 2011) ................10

*Perfect 10, Inc. v. Google, Inc.,*
   653 F.3d 976 (9th Cir. 2011) ..................................................................6

*ReedHycalog UK, Ltd. v. Diamond Innovations, Inc.,*
   No. 08-325, 2010 WL 3238312 (E.D. Tex. Aug. 12, 2010) .....................12

*Robert Bosch LLC v. Pylon Mfg. Corp.,*
   659 F.3d 1142 (Fed. Cir. 2011) ......................................................6, 13, 15

*Smith & Nephew, Inc. v. Synthese (U.S.A.),*
   466 F. Supp. 2d 978 (W.D. Tenn. 2006) ...............................................11

*Telcordia Technologies, Inc. v. Cisco Systems,*
   592 F. Supp. 2d 727 (D. Del. 2009) ......................................................13

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.,*
   No. 04-5312, 2008 WL 4531371 (N.D. Ill. May 22, 2008) ..............8, 11, 13, 15

*Transocean Offshore Deepwater Drilling v. GlobalSantaFe Corp.,*
   No. 03-2910, 2006 WL 3813778 (S.D. Tex. Dec. 27, 2006) ...............11, 15

*TruePosition Inc. v. Andrew Corp.,*
   568 F. Supp. 2d 500 (D. Del. 2008) ......................................................10

**OTHER AUTHORITIES**

American Bar Association, Section of Science & Technology Law, Committee on Technical Standardization, *Standard Development Patent Policy Manual* (2007)………….....…...……….7, 8

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Defendants Motorola Mobility, Inc. and General Instrument Corporation (collectively, "Motorola") respectfully submit this Opposition to Microsoft's Motion for Partial Summary Judgment (Dkt. 139) ("MSJ").[1]   Microsoft's motion contradicts Supreme Court and Federal Circuit precedent and seeks summary judgment based on an incomplete and contested factual record.  For these reasons, Microsoft's motion should be denied.

## I.    INTRODUCTION

A determination of whether an injunction should issue is a fact-intensive analysis that requires careful balancing of competing equitable and factual concerns.  Despite this, Microsoft asks the Court to rule, as a matter of law, that Motorola cannot obtain an injunction for infringement of the three H.264 patents asserted in this case based on just two facts to the exclusion of all others: (1) Motorola's RAND assurance for its H.264 patents and (2) Motorola's letter to Microsoft offering a license for Motorola's H.264 patents.[2]

In relying on these two specific facts, Microsoft argues for a categorical, blanket rule that providing RAND assurances for patents and then offering a license for those patents precludes a patentee – under any and all facts – from obtaining an injunction.  Although Microsoft's motion purports to rely heavily on the Supreme Court's decision in *eBay v. MercExchange*, Microsoft ignores that Court's explicit ***rejection*** of such categorical rules when considering the availability of injunctive relief.  Indeed, the Supreme Court made clear that a patentee's willingness to offer a license to its patents – one of the very facts Microsoft points to – does not provide a basis standing alone to deny an injunction categorically.  *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393-94 (2006).  The circumstances here are a prime example of why there can be no categorical rule: Microsoft never bothered to apply for a RAND license even though it designed its products

---

[1] Although Microsoft's motion is directed generally to "Motorola," Motorola, Inc. (now Motorola Solutions, Inc.) currently has no right, title or interest in the asserted H.264-essential patents.  Accordingly, Motorola Solutions, Inc. takes no part in this opposition.

[2] Motorola's H.264-related patents are United States Patent Nos. 7,310,374; 7,310,375; and 7,310,376.

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT DISMISSING
MOTOROLA'S CLAIM FOR INJUNCTIVE RELIEF - 1
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1    knowing that Motorola had patents essential to those products and then, after Motorola offered to

2    negotiate for a license, Microsoft brought this lawsuit rather than negotiate.

3        Not only do Microsoft's arguments contradict the holding of *eBay*, they also directly

4    contradict the submission Microsoft made in a non-litigation context to the Federal Trade

5    Commission.  In a June 2011 letter to the FTC, Microsoft stated explicitly that:

> 6    [T]he existence of a RAND commitment to offer patent licenses
> 7    ***should not preclude*** a patent holder from seeking preliminary
>      ***injunctive relief*** or commencing an action in the International
> 8    Trade Commission ***just because the patent holder has made a***
>      ***licensing commitment to offer RAND-based licenses*** in
> 9    connection with a standard.

10    1/3/12 Post Decl. Ex. 3, FTC Letter, *infra* note 8, at 13 (emphasis added).[3]  Moreover, post-*eBay*

11    cases make clear that a patentee ***can*** obtain an injunction notwithstanding the very two facts upon

12    which Microsoft relies.   For example, in *Commonwealth Scientific & Industrial Research*

13    *Organization v. Buffalo Technology Inc.*, the Court granted an injunction ***despite*** RAND

14    assurances to the IEEE regarding the asserted patent.  492 F. Supp. 2d 600 (E.D. Tex. 2007)

15    ("*CSIRO*").   And in *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008), the

16    Court found that a patentee's willingness to offer a license to its patent ***is not sufficient per se*** to

17    establish lack of irreparable harm.  In light of this, Microsoft's motion – and the categorical rule it

18    seeks to impose – is improper.

19        In addition to ignoring the law, Microsoft also ignores the numerous disputed material

20    facts and issues that must be resolved prior to determining whether an injunction should issue.  As

21    Motorola described in its Opposition to Microsoft's first motion for partial summary judgment

22    (Dkt. 86, at 26-28),[4] Microsoft, by failing to apply for a license and then filing its breach of

23

---

24    [3] "1/3/12 Post. Decl." refers to the Declaration of Kevin J. Post in Support of Defendants' Opposition to Microsoft's
   Motion for Partial Summary Judgment Dismissing Motorola's Claim for Injunctive Relief, dated January 3, 2012 and
25    submitted concurrently herewith.

   [4] Defendants' Opposition to Microsoft's Motion for Partial Summary Judgment (Dkt. 86), *Microsoft Corp. v.*
26    *Motorola, Inc.*, No C10-1823-JLR (Sep. 23, 2011) (1/3/12 Post Decl. Ex. 1).

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT DISMISSING
MOTOROLA'S CLAIM FOR INJUNCTIVE RELIEF - 2
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1   contract suit against Motorola after Motorola attempted to commence negotiations, has repudiated

2   any right it might have had to negotiate a RAND license.  If the Court agrees with Motorola, the

3   very premise for Microsoft's motion will be eliminated.   And, even if the Court finds that

4   Microsoft did not repudiate, the issue of injunctive relief remains very much alive, and numerous

5   material factual considerations must be evaluated before determining whether Motorola is entitled

6   to injunctive relief (e.g., damage to Motorola's goodwill and reputation as an innovator caused by

7   Microsoft's infringement and the impact of a compelled license on Motorola's licensing).

8          Because Microsoft's arguments are contrary to law, and because Microsoft has not

9   demonstrated the absence of a genuine factual dispute, Microsoft's motion must be denied.

10                        II.        FACTUAL BACKGROUND

11         Because the factual background included in Motorola's Opposition to Microsoft's first

12  summary judgment motion (Dkt. 86, at 2-5) accurately frames the dispute between the parties,

13  Motorola incorporates it fully herein.  As explained therein, this was not a dispute initiated by

14  Motorola.  Rather, after losing considerable market share in the smartphone market and in the face

15  of stiff competition from Android-based smartphones (like Motorola's), Microsoft filed a

16  Complaint in the ITC (Investigation No. 337-TA-744) and a companion case in this Court (Case

17  No. 2:10-cv-01577, stayed, pending conclusion of the ITC Investigation), asserting that Motorola

18  infringes nine patents.

19         These suits were part of Microsoft's apparent strategy of attacking Android in the courts

20  after having lost the commercial battle for smartphones in the marketplace.   Contemporaneous

21  public statements by Microsoft confirmed its motivation for filing this suit – it believed that

22  litigation would convince its rivals (i.e., Motorola and other Android implementers) to take a

23  license to its patents, raising the cost of their devices.  *See* Dkt. 86 at 3.  Notably, the ITC recently

24  issued its Initial Determination in ITC-744, finding that Motorola infringed claims of only one of

25  the nine patents originally asserted by Microsoft, thereby raising questions concerning the very

26  basis for having brought that action in the first place.

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT DISMISSING
MOTOROLA'S CLAIM FOR INJUNCTIVE RELIEF - 3
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    Long before Microsoft commenced that patent action, it had developed products that it

2    knew were subject to Motorola's H.264-essential patent portfolio.  As Microsoft admits in its

3    Amended Complaint, "Microsoft began providing its H.264 technology capability in its Xbox

4    video game consoles" "in reliance on" "the commitments made by Motorola" to the ITU.[5]  And

5    yet, despite Motorola's RAND submissions, which state that it will negotiate a RAND license

6    with those companies that ***apply*** for a license, Microsoft never approached Motorola for a license.

7    Even so, Motorola did not want to engage Microsoft in a long, drawn-out patent war.

8    Instead, it hoped that Motorola and Microsoft could come to an agreement whereby each party

9    could benefit from the other's intellectual property.  To that end, Motorola sent a letter to

10   Microsoft on October 29, 2010, offering to license, *inter alia*, Motorola's H.264-related patent

11   portfolio to Microsoft.[6]  Although this letter did not include all of the terms one would normally

12   expect to see in a complete, negotiated patent license, it included terms such as a proposed royalty

13   rate, a royalty base, a reference to inclusion of a grant-back provision in the final license, and an

14   offer to license something less than Motorola's full portfolio, if Microsoft so desired.

15   Rather than respond to Motorola's October 29th letter and engage in good-faith

16   negotiations, as is expected under the SSO guidelines,[7] Microsoft filed this action claiming that

17   Motorola had breached its RAND obligations.  This suit is being used by Microsoft to continue its

18   unlicensed use of Motorola's patents until the dispute is resolved by the Court.  In the face of

19   Microsoft's longstanding failure to seek a RAND license, its repudiation of Motorola's RAND

20   assurances, and Microsoft's unwillingness to negotiate, Motorola turned to the only remedy it

21   could – it sought to protect its business by filing patent infringement suits in the ITC (Inv. No.

22

23   _____

[5] Amended and Supplemental Complaint (Dkt. 53), at ¶ 61, *Microsoft Corp. v. Motorola, Inc.*, No C10-1823-JLR

24   (Feb. 23, 2011) (1/3/12 Post Decl. Ex. 2).

[6] 12/15/11 Wion Decr., Ex. 3.

25   [7] The ITU patent policy calls for "negotiations" to be conducted "outside the [ITU]." Common Patent Policy for the

26   ITU-T/ITU-R/ISO/IEC, Int'l. Telecommunication Union (last updated June 3, 2010), *available at*
     http://www.itu.int/en/ITU-T/ipr/Pages/policy.aspx (1/3/12 Post Decl. Ex. 5).  *Cf.* FTC Letter, *infra* note 8, at 3

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT DISMISSING
MOTOROLA'S CLAIM FOR INJUNCTIVE RELIEF - 4
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

337-TA-752) and in district court in Wisconsin and Florida (actions subsequently transferred to this Court in response to motions filed by Microsoft), so that its own patent rights could be exercised to prevent Microsoft from either extracting exorbitant license rates on dubious Microsoft patent rights or driving Motorola out of business.

## III.      LEGAL ARGUMENT

### A.      Summary Judgment Standard.

"The summary judgment procedure, which is authorized by Rule 56 of the Federal Rules of Civil Procedure, provides 'a method for promptly disposing of actions in which there is no genuine issue as to any material fact, or in which only a question of law is involved.'" *Denton v. BP W. Coast Prods., LLC*, No. C09-1344-JCC, 2011 WL 1883805, at \*2 (W.D. Wash. May 17, 2011) (quoting Wright & Miller, Federal Practice and Procedure: Civil 3d § 2712). "Summary judgment is appropriate if, when viewing the facts in the light most favorable to the nonmoving party, there is 'no genuine issue as to any material fact,' and therefore 'the movant is entitled to judgment as a matter of law.'" *Aetna Health Inc. v. Fox*, No. 09-5647, 2011 WL 2413267, at \*1 (W.D. Wash. June 13, 2011) (quoting Fed. R. Civ. P. 56(c)). "Summary judgment should be denied when the non-moving party offers evidence from which a reasonable jury could return a verdict in its favor." *Aetna Health*, 2011 WL 2413267, at \*1 (citing *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995)).

### B.      In *eBay*, the Supreme Court Prohibited Categorical Rules – Like Those Proposed By Microsoft – That Prohibit Injunctions.

In its motion, Microsoft asks the Court to focus on just two facts: (1) Motorola's RAND assurances for the asserted H.264 patents; and (2) Motorola's letter to Microsoft in which Motorola offered to license its H.264 patents at a particular royalty rate. With only those facts in mind, Microsoft asks this Court to adopt a categorical rule that a party, like Motorola, who offers to license patents subject to a RAND assurance cannot, as a matter of law, and regardless of all

("RAND-based IPR policies provide a flexible framework to help enable customized bi-lateral negotiations for patent licenses that generally are not limited to just the essential patent claims in connection with a standard.").

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT DISMISSING
MOTOROLA'S CLAIM FOR INJUNCTIVE RELIEF - 5
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1    other facts and circumstances, obtain an injunction to prevent the ongoing infringement of those

2    patents.  Such a categorical rule directly contradicts the Supreme Court's holding in *eBay*.

3         The Supreme Court's decision in *eBay Inc. v. MercExchange* clarified that traditional

4    principles of equity and the well-established four-factor test govern the issuance of injunctions in

5    patent cases.  *See* 547 U.S. at 394.  In doing so, the Court made clear that when deciding whether

6    to issue an injunction, the "traditional equitable principles do not permit . . . broad classifications."

7    *Id.* at 393.  The Court also rejected the District Court's adoption of "certain expansive principles

8    suggesting that injunctive relief could not issue in a broad swath of cases."  *Id*.  Ultimately, the

9    Court held that, when making a determination about whether or not to issue an injunction, courts

10   should not apply "categorical rule[s]" and "general rule[s]."  *Id.*

11        Courts have followed the Supreme Court's directive.  The Ninth Circuit, relying on *eBay*,

12   has held that "[t]he use of presumptions or categorical rules in issuing injunctive relief would

13   constitute 'a major departure from the long tradition of equity practice' and 'should not be lightly

14   implied.'"  *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 979 (9th Cir. 2011) (*quoting eBay*, 547,

15   U.S. at 391).  Similarly, the Federal Circuit recently confirmed that, "[i]n *eBay*, the Supreme Court

16   made clear that 'broad classifications' and 'categorical rule[s]' have no place in" adjudicating

17   requests for injunctive relief.  *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1148, 1150,

18   1151-55 (Fed. Cir. 2011).  And, of particular relevance here, in *Callaway Golf Co. v. Acushnet*

19   *Co.*, the Court rejected a "categorical rule[]" that a "plaintiff's willingness to forego its patent

20   rights (generally) for compensation" (*i.e.*, a willingness to license) proves that money damages are

21   adequate.  585 F. Supp. 2d 600, 620 (D. Del. 2008), *rev'd in part on other grounds*, 576 F.3d 1331

22   (Fed. Cir. 2009); *see also ActiveVideo Networks, Inc. v. Verizon Commc'ns., Inc.*, No. 10-248,

23   2011 WL 5878365, at *4-*5 (E.D. Va. Nov. 23, 2011); *ePlus, Inc. v. Lawson Software, Inc.*, No.

24   9-620, 2011 WL 2119410, at *6 (E.D. Va. May 23, 2011).  District courts applying categorical

25   rules after *eBay* have been reversed on appeal.

26

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT DISMISSING
MOTOROLA'S CLAIM FOR INJUNCTIVE RELIEF - 6
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    Despite this, Microsoft's motion asks this Court to do precisely what the Supreme Court in

2   *eBay* rejected — adopt a categorical, general rule based on isolated facts and to the exclusion of all

3   other facts.  Such a rule would have far-reaching consequences and would establish a dangerous

4   precedent: a company that offers a license to patents subject to RAND assurances would never be

5   able to obtain an injunction regardless of other facts and circumstances, even if an alleged

6   infringer refuses to take a license and attempts to challenge the validity of the asserted patents.  In

7   Microsoft's own words, such a rule would "reduce any incentives that implementers might have to

8   engage in good faith negotiations with the patent holder."[8]

9   **C.    RAND Assurances and Offers to License Patents Do Not Preclude Injunctions *Per Se*.**

10    As discussed below, injunctions may be appropriate even when RAND assurances have

11   been provided and when letters have been sent offering a license.  Thus, neither of these facts,

12   alone or taken together, prohibits an injunction.

13    **1.    RAND Assurances Do Not Preclude An Injunction *Per Se*.**

14    Microsoft repeatedly argues that Motorola's RAND assurances, as a matter of law, prohibit

15   the entry of an injunction (*See, e.g.*, MSJ 1, 8, 9, 10, 11).  This is not so.  As an initial matter,

16   Motorola only agreed to make RAND licenses available to ***willing*** licensees.  For example, in its

17   Licensing Declarations to the ITU, in accordance with the ITU's Patent Policy, Motorola stated

18   that it is prepared to grant licenses to "applicants."[9]  But as explained in Motorola's opposition to

19   Microsoft's first motion for partial summary judgment, *see* Dkt. 86, at 26-28, Microsoft never

20   applied for a license, rejected Motorola's offer and has thus repudiated its right to a license.[10]

21

22   [8] Letter from David Heiner & Amy Marasco, Microsoft Corp. to the Federal Trade Commission, at 13 (June 14,
     2011), *available at* http://www.ftc.gov/os/comments/patentstandardsworkshop/00009-60523.pdf (1/3/12 Post Decl.

23   Ex. 3) ("FTC Letter").

     [9] 12/15/11 Wion Dec., Ex. 2.

24   [10] The American Bar Association's Standard Development Policy Manual recognizes that users of standardized
     technology have an obligation to seek out licenses covering their use:

25    [RAND] licensing commitment[s are] often stated as an absolute (i.e., that the [patent owner] must
      grant the required licenses).  However, it is reasonable to require that such licenses be granted only

26    upon a request by a potential licensee and upon the conclusion of bilateral negotiations.  It would

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT DISMISSING
MOTOROLA'S CLAIM FOR INJUNCTIVE RELIEF - 7
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   Moreover, the ITU patent policy confirms that Declarations to the ITU are not licenses,

2   stating: "The detailed arrangements arising from patents (licensing, royalties, etc.) are left to the

3   parties concerned, as these arrangements might differ from case to case."[11]  When parties cannot

4   come to terms – or when, as here, an infringing party is unwilling to seek or discuss the terms of a

5   license – injunctions are available to protect the patentee's fundamental right to exclude others

6   from using its inventions.[12]  *See Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir.

7   2008) ("The essential attribute of a patent grant is that it provides a right to exclude competitors

8   from infringing the patent."); *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, No. 04-5312, 2008 WL

9   4531371, at *4 (N.D. Ill. May 22, 2008) (finding injunction necessary to protect patentee's

10  reputation, goodwill and licensing interests when infringer "chose not to [license], but to litigate").

11  Consistent with this, Microsoft itself has explained to the Federal Trade Commission that

12  RAND assurances do not preclude an injunction *per se*:

13  > [T]he existence of a RAND commitment to offer patent licenses
    > ***should not preclude a patent holder from seeking preliminary***
14  > ***injunctive relief*** or commencing an action in the International Trade
    > Commission just because the patent holder has made a licensing
15  > commitment to offer RAND-based licenses in connection with a
    > standard.  Whether such relief is available should be assessed under
16  > the current legal framework in the applicable jurisdiction, which
    > often is premised substantially on the specific facts and
17  > circumstances at issue.  ***Any uniform declaration that such relief***
18  > ***would not be available if the patent holder has made a***
    > ***commitment to offer a RAND license for its essential patent claims***
19  > ***in connection with a standard may reduce any incentives that***

20

21  _____

    be unreasonable for a [patent owner] to be required to seek out its own licenses in this context, or
22  to extend offers before being requested to do so.

23  American Bar Association, Section of Science & Technology Law, Committee on Technical Standardization,
    *Standard Development Patent Policy Manual*, at 49 (2007) ("*ABA Manual*") (1/3/12 Post Decl. Ex. 4).

24  [11] Common Patent Policy for the ITU-T/ITU-R/ISO/IEC, Int'l. Telecommunication Union (last updated June 3, 2010),
    *available at* http://www.itu.int/en/ITU-T/ipr/Pages/policy.aspx (1/3/12 Post Decl. Ex. 5).

25  [12] As stated by the ABA Standards Development Policy Manual: "If the Implementer chooses to implement the
    Standard without a license, the Patent Holder may in turn choose to sue the Implementer for patent infringement and
26  seek ***all available remedies***."  *ABA Manual*, at 49 (1/3/12 Post Decl. Ex. 4) (emphasis added).

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT DISMISSING
MOTOROLA'S CLAIM FOR INJUNCTIVE RELIEF - 8
CASE NO. C10-1823-JLR

*implementers might have to engage in good faith negotiations with the patent holder*.[13]

By requesting a judgment that Motorola cannot seek an injunction because of the existence of alleged RAND commitments, Microsoft seeks to impose on Motorola the very harm and disincentive it described in its comments to the FTC.  Microsoft's submission to the FTC discredits the positions it takes before this Court.

Notably, Microsoft does not cite any legal authority that stands for the proposition that RAND assurances preclude a patentee from obtaining an injunction – nor is Motorola aware of any.  Indeed, courts have **granted** injunctions for standards-essential patents **despite** RAND assurances.  Specifically, where, as here, a patentee (*e.g.*, Motorola) offers an infringer (*e.g.*, Microsoft) a license under its essential patents and the infringer rejects the good-faith license offer out of hand, injunctive relief is available to protect the patentee's legitimate business interests in preventing unlicensed infringement.  *See CSIRO*, 492 F. Supp. 2d at 602-03, 606-08 (granting permanent injunction for patents for which RAND letters of assurance were submitted to IEEE where a "compulsory license will not adequately compensate" the patent owner for an infringer's "continued intentional infringement" because a historical valuation would not account for the present value of the patent and because a compelled license would not include "important" "non-monetary license terms"), *vacated on other grounds*, 542 F.3d 1363 (Fed. Cir. 2008).

And courts have explicitly rejected the argument that "Supreme Court precedent precludes an action for an injunction" for patents subject to RAND assurances – the same argument Microsoft makes here.  *Nokia Corp. v. Apple Inc.*, No. 09-791-GMS, 2011 WL 2160904, at *2 (D. Del. June 1, 2011); *see also TruePosition Inc. v. Andrew Corp.*, 568 F. Supp. 2d 500, 520-21, 532-

---

[13] FTC Letter, *supra* note 8, at 13 (1/3/12 Post Decl. Ex. 3) (emphasis added).

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT DISMISSING
MOTOROLA'S CLAIM FOR INJUNCTIVE RELIEF - 9
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1   33 (D. Del. 2008) (determining that an injunction was appropriate for standards-essential patent),

2   *aff'd*, 389 Fed. Appx. 1000 (Fed. Cir. 2010) (per curiam).[14]

3      Microsoft's failure in its motion to discuss – *or even acknowledge* – *CSIRO* and *Nokia* is

4   notable, considering that Motorola has repeatedly highlighted these cases in response to

5   Microsoft's motions, both in this case and in the ITC.[15]

6      **2.    Motorola's Prior Licensing Does Not Preclude an Injunction *Per Se*.**

7      Microsoft also argues that Motorola's licensing offer to Microsoft establishes that money

8   damages are adequate (MSJ 1, 10-11).  This argument also fails.

9      In *eBay*, the Supreme Court found that a patentee's willingness to license its patent does

10  not preclude an injunction.  *See* 547 U.S. at 393.  Relying on *eBay*, the Federal Circuit has also

11  held that "a patentee's past willingness to license its patent is not sufficient per se to establish lack

12  of irreparable harm if a new infringer were licensed."  *Acumed*, 551 F.3d at 1328 (affirming grant

13  of injunction).  This, as explained by the Federal Circuit, is because a patentee's previous licenses

14  of its patents is just one factor among many to consider.  *Id.* ("[T]he identity of the past licensees,

15  the experience in the market since the licenses were granted, and the identity of the new infringer

16  all may affect the district court's discretionary decision concerning whether a reasonable royalty

17  from an infringer constitutes damages adequate to compensate for the infringement.").

18     District Courts have followed the Supreme Court's and Federal Circuit's directive.  For

19  example, in *Transocean Offshore Deepwater Drilling v. GlobalSantaFe Corp.*, No. 03-2910, 2006

20  ─────────────────────────────

21  [14] Although Microsoft cites *Abend v. MCA, Inc.*, 863 F.2d 1465, 1479 (9th Cir. 1988) for the proposition that injunctions may not be warranted when money damages adequately compensates the plaintiff (MSJ 8), that pre-*eBay*

22  case is inapposite.  There, the Court, dealing with a copyright infringement claim, noted "special circumstances" where an injunction would cause "a great injustice for the owners of [a] film if the court enjoined them from further exhibition of the movie" and would prevent them "from enjoying legitimate profits derived from exploitation of the

23  'new matter' comprising the derivative work, which is given express copyright protection."  *Id.* at 1479.  No such special circumstances exist for Microsoft here.

24  [15] *See, e.g.*, Dkt. 86, at 23 (1/3/12 Post Decl. Ex. 1); Motorola's Memorandum in Opposition to Microsoft's Motion to Terminate with Respect to U.S. Patent Nos. 5,319,712 and 5,357,571, at 9, ITC Inv. No. 337-TA-752 (U.S.I.T.C. Nov.

25  28, 2011) (1/3/12 Post Decl. Ex. 6); Motorola's Memorandum in Opposition to Microsoft's Motion to Terminate the Investigation with Respect to U.S. Patent Nos. 6,980,596 and 7,162,094, at 2, 10, ITC Inv. No 337-TA-752

26  (U.S.I.T.C. Nov. 28, 2011) (1/3/12 Post Decl. Ex. 7).

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT DISMISSING
MOTOROLA'S CLAIM FOR INJUNCTIVE RELIEF - 10
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

WL 3813778, at *5 (S.D. Tex. Dec. 27, 2006), the Court held that it was not "persuaded that the mere fact that Transocean is willing to consider licensing its invention to GSF and others on 'fair grounds' is sufficient to defeat Transocean's request for a permanent injunction."  Similarly, in *Smith & Nephew, Inc. v. Synthese (U.S.A.)*, the Court relied on *eBay* and held that "a plaintiff's willingness to license its patent is not sufficient to establish that the patent holder would not suffer irreparable harm if an injunction did not issue."  466 F. Supp. 2d 978, 983 (W.D. Tenn. 2006) (internal quotations omitted).

Other Courts have refused categorically to deny an injunction even though a patentee has offered to license its patents to the defendant.  *See, e.g.*, *Trading Techs.*, 2008 WL 4531371, at *4, *5 (granting injunction and finding that a patentee's prior licenses did not preclude an injunction where those licenses were granted to firms that chose not to litigate the patentee's infringement claims); *ActiveVideo Networks*, 2011 WL 5878365, at *4, *9 ("The mere fact, however, that a patent holder licenses its patents does not by itself bar that patentee from obtaining injunctive relief.") (granting injunction despite prior license offer to Verizon); *ePlus*, 2011 WL 2119410, at *14-*16, *19 (granting injunction and rejecting argument that history of licensing proves there is an adequate remedy at law).  Thus, Motorola's willingness to license its patents to Microsoft does not prove lack of irreparable harm or that money damages are adequate, certainly not for purposes of a summary judgment motion.[16]  Indeed, the facts today, which are not even addressed by Microsoft, may be different from the facts obtaining at such time as Motorola requests an injunction.  Accordingly, Microsoft's reliance on these isolated facts is insufficient to support a motion for summary judgment.

It is not enough simply to point to the fact that a patentee has previously licensed its patents – and is willing to continue to license its patents – when considering whether to issue an

---

[16] To the extent that Microsoft mentions in a footnote that Motorola cannot prove the remaining two *eBay* factors – that the balance of hardships and public interest factors favor an injunction (MSJ 11) – Microsoft's conclusory statement, which Motorola contests, is unsupported and should be disregarded.

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT DISMISSING
MOTOROLA'S CLAIM FOR INJUNCTIVE RELIEF - 11
CASE NO. C10-1823-JLR

1   injunction.  Rather, the objectives and motivations for pursuing those licenses must be considered.

2   *See Clearvalue, Inc, v, Pearl River Polymers, Inc.*, 735 F. Supp. 2d 560, 583 (E.D. Tex 2010)

3   ("Although ClearValue has previously licensed its patent and is willing to continue to license it,

4   ClearValue is clearly not after mere monetary objectives.  Accordingly, the losses suffered by

5   ClearValue as a result of the infringing activity cannot be compensated by monetary damages.");

6   *see also ReedHycalog UK, Ltd. v. Diamond Innovations, Inc.*, No. 08-325, 2010 WL 3238312, at

7   *12 (E.D. Tex. Aug. 12, 2010) (granting permanent injunction despite prior licensing history

8   where a licensing agreement "would exhaust ReedHycalog's ability to collect royalties from its

9   direct competitors").[17]

10  Here, Motorola seeks an injunction in response to Microsoft's patent aggression against

11  Motorola.  As discussed (*see* page 3*, supra*), Microsoft has sought to exclude Motorola from the

12  smartphone market by asserting patents Microsoft claims cover features in Android.  Initially,

13  Motorola had hoped to avoid a protracted patent battle with Microsoft.  It offered Microsoft a

14  license to, *inter alia*, Motorola's H.264-related patents in an attempt to open mutually beneficial

15  settlement negotiations.   But rather than negotiate, Microsoft chose to litigate, rejecting

16  Motorola's license offers and repudiating any benefit Microsoft had under Motorola's RAND

17  assurances.  Motorola now seeks to defend itself against Microsoft's continued patent attacks, and

18  it seeks an injunction as a shield for protection.[18]  Microsoft chose to do battle in the courtroom

19  rather than negotiate in the boardroom; it cannot now seek to limit the weapons available in its

20  chosen battlefield, nor would any remedy short of an injunction (*e.g.*, monetary damages) suffice

21  to protect Motorola's interests.  *See Trading Techs.* 2008 WL 4531371, at *4.

22  ---

23  [17] As in *Diamond Innovations*, if Motorola were compelled here to license its patents to Microsoft, patent exhaustion
    might prevent Motorola from collecting H.264-related royalties from direct competitors selling devices using
    Microsoft's Windows operating systems (*e.g.*, manufacturers of smartphones, tablets and laptops).

24  [18] This is in contrast to the situation in *eBay* where there was "a consistent course of litigating or threatening  litigation
    to obtain money damages[,]" which "indicate[d] MercExchange has utilized its patents as a sword to extract money
25  rather than as a shield to protect … its market share, reputation, goodwill, or name recognition."  *ActiveVideo
    Networks*, 2011 WL 5878365, at *5.  Here, Motorola's defensive assertion of patents in response to Microsoft's
26  aggression demonstrates that Motorola, unlike MercExchange, is using its patents as a "shield" not a "sword."

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT DISMISSING
MOTOROLA'S CLAIM FOR INJUNCTIVE RELIEF - 12
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Microsoft's reliance on *Telcordia Technologies, Inc. v. Cisco Systems*, 592 F. Supp. 2d 727 (D. Del. 2009) does not support Microsoft's assertion of a blanket rule preventing injunctions for patentees that have offered licenses to their patents.  *See* MSJ 10.  Indeed, in that same year, the same court concluded otherwise.  *See Finjan Software, Ltd. v. Secure Computing Corp.*, No. 06-369, 2009 WL 2524495, at *10 (D. Del. Aug. 18, 2009) ("[T]he court is not persuaded by Secure's arguments that Finjan's willingness to license its invention . . . proves that monetary damages are adequate."), *rev'd in part on other grounds*, 626 F.3d 1197 (Fed. Cir. 2010).  If anything, these cases show that a categorical, general rule is inappropriate and that willingness to license is simply one factor that must be weighed with all other facts.[19]

## D.     Microsoft's Motion Is Premature and Fact Issues Prevent Entry of Summary Judgment That Motorola Is Not Entitled to an Injunction.

Microsoft's motion puts the cart before the horse.  A proper injunction analysis under *eBay*'s four-factor test is highly "fact-intensive" and "requires a careful balancing of competing equitable concerns" based on a complete, factual record.  *Bosch*, 659 F.3d at 1159 (Bryson, J., dissenting).  The record in this case is not yet developed to enable a proper analysis under the four-factor test.

As an initial matter, there are threshold issues that first need to be decided that greatly impact the four-factor test.  For example, Motorola is asserting that Microsoft has repudiated the right to a RAND license by failing to apply for a license, and then, after Motorola offered to negotiate such a license, suing Motorola for breach of contract instead of first engaging in good faith negotiations.  If the Court agrees, this factor weighs heavily in favor of Motorola in determining the significance of Motorola's RAND assurances and Motorola's offer letters.  Furthermore, Microsoft vigorously denies that Motorola's patents are essential to the H.264

---

[19] *See, e.g.*, *Baden Sports, Inc. v. Kabushiki Kaisha Molten*, No. 06-210, 2007 WL 2790777, at *2 n.1 (W.D. Wash. Sept. 25, 2007) (holding that "even if Baden were willing to offer [licenses to the patents-in-suit], Baden still risks loss of good will because … Molten's infringement and advertising erode consumers' and retailers' perception of Baden as an innovator"), *rev'd on other grounds*, 556 F.3d 1300 (Fed. Cir. 2009).

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

standard.[20]   If the Court agrees, then the asserted patents would not be subject to RAND assurances and the very premise for Microsoft's motion would be eliminated.   Again, such an outcome of this issue will have a significant impact on the four-factor test.

There are other fact issues that need to be considered before a court can determine whether there is irreparable harm and a lack of adequate remedy at law.[21]   For example, the fact that an infringer competes with the patentee, "weighs heavily in favor of finding irreparable injury." *Baker Hughes Inc. v. Nalco Co.*, 676 F. Supp. 2d 547, 553 (S.D. Tex. 2009) (granting preliminary injunction).   Also, "when a plaintiff can show that infringement caused a loss of value in its business that is difficult to quantify – such as market share, goodwill, or reputation – then the plaintiff is more likely to have been irreparably injured."   *Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd.*, 788 F. Supp. 2d 71, 74 (E.D.N.Y. 2011).   A patentee's diversion of resources from research and development to be used instead for litigation expenses evidences irreparable harm, as does a patentee's likely need to enforce its patents in future litigation.   *See ePlus*, 2011 WL 2119410, at *11-*12.[22]   Finally, irreparable harm can be proven when a compelled license would force a patentee to forego protections it commonly seeks from its licensing partners. *Id.*; *CSIRO*, 492 F. Supp. 2d at 606.

---

[20] *See, e.g.*, Defendant Microsoft Corporation's Answer and Counterclaims to Plaintiffs' First Amended Complaint for Patent Infringement, at ¶ 28 (Counterclaims), *Motorola Mobility, Inc. v. Microsoft Corp.*, No. 10-699 W.D. Wisc. Jan. 25, 2011) (1/3/12 Post Ex. 8) ("Microsoft does not accept Motorola's Representation that any of its patents … are, in fact, necessary to the implementation of compliant implementations of … H.264 technologies; nor does Microsoft concede that the particular implementations of such technologies in its products practice any Motorola patents.").

[21] Although separate factors, irreparable harm and inadequate remedy at law are often considered "two sides of the same coin" and are considered linked.   *MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 569 (E.D. Va. 2007); *see also Acumed*, 551 F.3d at 1328 (analyzing irreparable harm and inadequate remedy at law together); *Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd.*, 788 F. Supp. 2d 71, 76 (E.D.N.Y. 2011) ("In the patent context, the second prong of the permanent injunction test is generally treated in tandem with the first prong.").

[22] "The lost opportunities for research and development of Procure+ and Content+ because of the need to expend resources in this litigation, and in future litigation should this Court not enter injunctive relief, constitute irreparable harm to ePlus that cannot be compensated by an adequate remedy at law." *ePlus*, 2011 WL 2119410, at *12; *see also Trading Techs.*, 2008 WL 4531371, at *4-*5 (holding that injunction is warranted when infringer litigates rather than takes a license).

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT DISMISSING
MOTOROLA'S CLAIM FOR INJUNCTIVE RELIEF - 14
CASE NO. C10-1823-JLR

The factual record has not yet been developed to allow for adequate consideration of these issues.  For example, Motorola believes that the factual record – once fully developed – will show that Microsoft and Motorola are competitors, and H.264-related technology is relevant to their competition.[23]   As such, denying Motorola its fundamental "right to exclude" Microsoft from infringing Motorola's patents would cause irreparable harm for which there is no adequate remedy at law.  *Acumed* 551 F.3d at 1328; *see also Bosch*, 659 F.3d at 1149 (describing right to exclude as "root[ed] in the Constitution").

Second, denial of an injunction here would harm Motorola's goodwill and reputation by forcing a compulsory license that would "encourage" "others" "to infringe" and cause Motorola to "lose[] part of its commercial negotiating power in license discussions," also causing irreparable harm for which money damages is inadequate.  *Transocean*, 2006 WL 3813778, at *5 (internal quotations omitted).   Similarly, denying the injunction would diminish the (intangible and unquantifiable) value of Motorola's patents as defensive assets to protect against patent aggressors such as Microsoft.[24]

---

[23] Microsoft admits that its Windows operating system "faces competition from alternative platforms and devices that may reduce demand for PCs" such as "mobile devices."  Microsoft Corp., Form 10-K for FY Ended June 30, 2011, at 4-5 (1/3/12 Post Decl. Ex. 9).  Motorola's XOOM Tablet running the Android operating system, which implements the H.264 standard, *see* Motorola XOOM Fact Sheet, Motorola Media Center, http://mediacenter.motorola.com/Fact-Sheets/Motorola-XOOM-Fact-Sheet-3537.aspx  (last visited Dec. 28, 2011) (1/3/12 Post Decl. Ex. 10), is clearly one such "alternative" "device[]" competing with Microsoft's Windows.  *See, e.g.*, Nick Eaton, *PC Sales Slow While Tablet Sales Skyrocket, Firm Says*, Seattle PI (Sep. 15, 2011), http://blog.seattlepi.com/microsoft/2011/09/15/pc-sales-slow-while-tablet-sales-skyrocket-firm-says/ (1/3/12 Post Decl. Ex. 11); David Murphy, *Tablet Sales to Take Off, PC Sales Suffer*, PC Magazine (Sep. 11, 2011), http://www.pcmag.com/article/print/287567 (1/3/12 Post Decl. Ex. 12).  Microsoft is also updating the Xbox 360 to compete directly with cable set-top-boxes, *see* Mark Wilson, *Will Xbox 360 Replace Your Cable Box—Or Will a TV Replace Your Xbox?*, Popular Mechanics (Dec. 7, 2011), http://www.popularmechanics.com/technology/gadgets/home-theater/will-xbox-360-replace-your-cable-box-or-will-a-tv-replace-your-xbox-6612417 (1/3/12 Post Decl. Ex. 13), the production and sales of which comprise one of Motorola's core businesses.

[24] In public comments to the FTC, Microsoft recognized the defensive value of standards-essential patents: "Depending on their applicable business model, many companies largely use their patents vis-à-vis standards defensively.  Far from seeking to 'hold up' implementers, these firms will not seek patent royalties at all in the ordinary course of business.  Rather, they will seek a patent license from an implementer only when that implementer has first challenged them on other patent infringement issues."  FTC Letter, *supra* note 8, at 7 (1/3/12 Post Decl. Ex. 3).

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT DISMISSING
MOTOROLA'S CLAIM FOR INJUNCTIVE RELIEF - 15
CASE NO. C10-1823-JLR

1      Third, Motorola will suffer irreparable harm because Motorola is being forced to divert

2  significant resources away from commercial research and development to enforce its patents

3  against Microsoft's infringement, and Motorola fully expects Microsoft to challenge any future

4  claim that it is infringing Motorola's patents.  *See ePlus*, 2011 WL 2119410, at *11-*12.

5      For these reasons, and for others Motorola will prove once discovery is completed, an

6  injunction against Microsoft's continuing infringement may be warranted in this case.  Moreover,

7  the full set of applicable facts may change and will not be known until after trial, when an

8  injunction might be requested.  For now, however, Microsoft clearly has not shown the absence of

9  genuinely disputed facts on the issue of whether an injunction should issue in favor of Motorola

10  under the four-factor test.

## IV.    CONCLUSION

12      Microsoft's motion for partial summary judgment is based on a misapplication of the law.

13  Injunctions are not – and have not been – categorically prohibited for RAND-related patents or

14  where a patentee has shown a willingness to license its patents.  For that reason alone, Microsoft's

15  motion should be denied.  Equally important, Microsoft has not demonstrated the absence of

16  genuine factual disputes about the application of *eBay*'s four-factor test for injunctions.  For this

17  additional reason, Microsoft's motion should be denied.

18      DATED this 3rd day of January, 2012.

19                                   SUMMIT LAW GROUP PLLC

20                                   By s/ *Philip S. McCune*

21                                        Philip S. McCune, WSBA #21081
                                         Lynn M. Engel, WSBA #21934
22                                       *philm@summitlaw.com*
                                         *lynne@summitlaw.com*
23

24

25

26

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT DISMISSING
MOTOROLA'S CLAIM FOR INJUNCTIVE RELIEF - 16
CASE NO. C10-1823-JLR

1

And by

2
3
4
5
6

Jesse J. Jenner (*pro hac vice*)
Steven Pepe (*pro hac vice*)
Stuart W. Yothers (*pro hac vice*)
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY  10036-8704
(212) 596-9046
*jesse.jenner@ropesgray.com*
*steven.pepe@ropesgray.com*
*stuart.yothers@ropesgray.com*

7
8
9
10
11

Norman H. Beamer (*pro hac vice*)
Gabrielle E. Higgins (*pro hac vice*)
Ropes & Gray LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA  94303-2284
(650) 617-4030
*norman.beamer@ropesgray.com*
*gabrielle.higgins@ropesgray.com*

12
13
14
15
16

Paul M. Schoenhard (*pro hac vice*)
Kevin J. Post (*pro hac vice*)
Ropes & Gray LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC  20005-3948
(202) 508-4693
*paul.schoenhard@ropesgray.com*
*kevin.post@ropesgray.com*

17
18

***Attorneys for Defendants Motorola, Inc., Motorola
Mobility, Inc., and General Instrument Corp.***

19
20
21
22
23
24
25
26

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT DISMISSING
MOTOROLA'S CLAIM FOR INJUNCTIVE RELIEF - 17
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on this day I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to the following:

3

4          Arthur W. Harrigan, Jr., Esq.
           Christopher T. Wion, Esq.

5          Shane P. Cramer, Esq.
           Danielson Harrigan Leyh & Tollefson

6          *arthurh@dhlt.com*
           *chrisw@dhlt.com*

7          *shanec@dhlt.com*

8          Brian R. Nester, Esq.

9          David T. Pritikin, Esq.
           Douglas I. Lewis, Esq.

10         John W. McBride, Esq.
           Richard A. Cederoth, Esq.

11         Sidley Austin LLP
           *bnester@sidley.com*

12         *dpritikin@sidley.com*
           *dilewis@sidley.com*

13         *jwmcbride@sidley.com*

14         *rcederoth@sidley.com*

15         T. Andrew Culbert, Esq.

16         David E. Killough, Esq.
           Microsoft Corp.

17         *andycu@microsoft.com*
           *davkill@microsoft.com*

18

19      DATED this 3rd day of January, 2012.

20
                                                       s/ *Deanna L. Schow*
21                                                     _____
                                                       Deanna L. Schow

22

23

24

25

26

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT DISMISSING
MOTOROLA'S CLAIM FOR INJUNCTIVE RELIEF - 18
CASE NO. C10-1823-JLR