# EXHIBIT 8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| MOTOROLA MOBILITY, INC., and GENERAL INSTRUMENT CORPORATION, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 3:10-cv-699 |
| v. | ) ) | JURY TRIAL DEMANDED |
| MICROSOFT CORPORATION, | ) ) | |
| Defendant. | ) ) | |
| MICROSOFT CORPORATION, | ) ) | |
| Counterclaim Plaintiff, | ) ) | |
| v. | ) ) | |
| MOTOROLA MOBILITY, INC., and GENERAL INSTRUMENT CORPORATION, | ) ) ) | |
| Counterclaim Defendants. | ) ) | |

## DEFENDANT MICROSOFT CORPORATION'S ANSWER AND COUNTERCLAIMS TO PLAINTIFFS' FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Microsoft Corporation ("Microsoft") answers Motorola Mobility, Inc.'s ("Motorola Mobility") and General Instrument Corporation's ("General Instrument") (collectively, "Motorola") First Amended Complaint for Patent Infringement ("Complaint"), filed on January 11, 2011, as follows (the numbered paragraphs below correspond to the like numbered paragraphs in the Complaint and any allegation of the Complaint not expressly admitted below is denied):

1

## NATURE OF THE ACTION

1.      Microsoft admits that Motorola has brought this action alleging infringement by Microsoft of United States Patent Nos. 7,310,374 ("the '374 Patent"); 7,310,375 ("the '375 Patent"); and 7,310,376 ("the '376 Patent") (collectively, "the Motorola Asserted Patents"). However, Microsoft denies committing any infringement or other tortious or unlawful act and denies that Motorola is entitled to any remedy for Microsoft's actions.

## THE PARTIES

2.      Microsoft lacks knowledge sufficient to form a belief as to the truth of the allegations in paragraph 2 of the Complaint, and on that basis denies such allegations.

3.      Microsoft lacks knowledge sufficient to form a belief as to the truth of the allegations in paragraph 3 of the Complaint, and on that basis denies such allegations.

4.      Microsoft lacks knowledge sufficient to form a belief as to the truth of the allegations in paragraph 4 of the Complaint, and on that basis denies such allegations.

5.      Microsoft admits that it is a Washington corporation with its principal place of business at One Microsoft Way, Redmond, Washington 98052.

6.      Microsoft admits that it distributes, markets, licenses, and offers to license the Windows 7 operating system throughout the United States, including in this district.  Microsoft admits that it imports into the United States media containing the Windows 7 operating system. Microsoft denies that Internet Explorer 9 is an operating system for personal computers. Microsoft denies the allegations in paragraph 6 with respect to Internet Explorer 9, but admits that it makes available a beta version of Internet Explorer 9 throughout the United States, including in this district.  Except as expressly admitted, Microsoft denies the allegations in paragraph 6 of the Complaint.

## JURISDICTION AND VENUE

7.      Microsoft admits that Motorola has alleged an action for patent infringement and

that such actions arise under the patent laws of the United States, 35 U.S.C. §§ 101 *et seq*.

However, Microsoft denies committing any infringement or other tortious or unlawful act.

Microsoft admits that this Court has subject matter jurisdiction over claims arising under the

patent laws of the United States pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.      Microsoft admits that venue is proper in this Judicial District on the basis that

Microsoft transacts business in this Judicial District, among others, but denies that venue is

proper pursuant to 28 U.S.C. §§ 1391 (b), (c), and (d).  Microsoft alleges that even if venue is

proper, it is inconvenient.  Microsoft denies that it has committed and/or induced any acts of

patent infringement in this Judicial District or elsewhere.  Further, Microsoft denies committing

any tortious or unlawful act in this Judicial District or elsewhere.

9.      Microsoft admits that it does business in this Judicial District and that this Court

has personal jurisdiction over Microsoft for the purposes of this matter.  Microsoft denies that it

has committed acts of patent infringement or any tortious or unlawful acts in this District or

elsewhere.  Except as so admitted, Microsoft denies the allegations in paragraph 9 of the

Complaint.

## THE ASSERTED PATENTS

10.     Microsoft admits that U.S. Patent No. 7,310,374 is entitled "Macroblock Level

Adaptive Frame/Field Coding for Digital Video Content," bears an issuance date of December

18, 2007 and shows on its face that Limin Wang, Rajeev Gandhi, Krit Panusopone, and Ajay

Luthra are the named inventors.  Microsoft lacks knowledge sufficient to form a belief as to the

truth of the remaining allegations in paragraph 10 of the Complaint, and on that basis denies such allegations.

11.     Microsoft admits that U.S. Patent No. 7,310,375 is entitled "Macroblock Level Adaptive Frame/Field Coding for Digital Video Content," bears an issuance date of December 18, 2007 and shows on its face that Limin Wang, Rajeev Gandhi, Krit Panusopone, and Ajay Luthra are the named inventors.  Microsoft lacks knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 11 of the Complaint, and on that basis denies such allegations.

12.     Microsoft admits that U.S. Patent No. 7,310,376 is entitled "Macroblock Level Adaptive Frame/Field Coding for Digital Video Content," bears an issuance date of December 18, 2007 and shows on its face that Limin Wang, Rajeev Gandhi, Krit Panusopone, and Ajay Luthra are the named inventors.  Microsoft lacks knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 12 of the Complaint, and on that basis denies such allegations.

13.     Microsoft admits that it has had knowledge of the '374, '375, and '376 patents since October 29, 2010.  Microsoft admits that it has been involved in litigation with Motorola since October 1, 2010.  Except as so admitted, Microsoft denies the allegations in paragraph 13 of the Complaint.

<u>**CLAIM ONE**</u>

**([Alleged] Infringement of U.S. Patent No. 7,310,374)**

14.     Microsoft incorporates by reference paragraphs 1-13 above.

15.     Microsoft denies the allegations in paragraph 15 of the Complaint.

16.     Microsoft denies the allegations in paragraph 16 of the Complaint.

17.     Microsoft denies the allegations in paragraph 17 of the Complaint.

18.    Microsoft denies the allegations in paragraph 18 of the Complaint.

19.    Microsoft denies that it has committed any acts of infringement.  Microsoft further denies that Motorola has been damaged by Microsoft's alleged activities or that Motorola is entitled to any form of injunctive relief on account of said alleged acts.

20.    Microsoft denies that it has ever infringed or is currently infringing the '374 Patent.  Microsoft further denies that Motorola has been or continues to be damaged by Microsoft's alleged activities.

21.    Microsoft denies that it has ever infringed or is currently infringing the '374 Patent, willfully or in any other way.

22.    Microsoft denies the allegations in paragraph 22 of the Complaint.

## CLAIM TWO
### ([Alleged] Infringement of U.S. Patent No. 7,310,375)

23.    Microsoft incorporates by reference paragraphs 1-13 above.

24.    Microsoft denies the allegations in paragraph 24 of the Complaint.

25.    Microsoft denies the allegations in paragraph 25 of the Complaint.

26.    Microsoft denies the allegations in paragraph 26 of the Complaint.

27.    Microsoft denies the allegations in paragraph 27 of the Complaint.

28.    Microsoft denies that it has committed any acts of infringement.  Microsoft further denies that Motorola has been damaged by Microsoft's alleged activities or that Motorola is entitled to any form of injunctive relief on account of said alleged acts.

29.    Microsoft denies that it has ever infringed or is currently infringing the '375 Patent.  Microsoft further denies that Motorola has been or continues to be damaged by Microsoft's alleged activities.

30.     Microsoft denies that it has ever infringed or is currently infringing the '375 Patent, willfully or in any other way.

31.     Microsoft denies the allegations in paragraph 31 of the Complaint.

### CLAIM THREE

### ([Alleged] Infringement of U.S. Patent No. 7,310,376)

32.     Microsoft incorporates by reference paragraphs 1-13 above.

33.     Microsoft denies the allegations in paragraph 33 of the Complaint.

34.     Microsoft denies the allegations in paragraph 34 of the Complaint.

35.     Microsoft denies the allegations in paragraph 35 of the Complaint.

36.     Microsoft denies the allegations in paragraph 36 of the Complaint.

37.     Microsoft denies that it has committed any acts of infringement.  Microsoft further denies that Motorola has been damaged by Microsoft's alleged activities or that Motorola is entitled to any form of injunctive relief on account of said alleged acts.

38.     Microsoft denies that it has ever infringed or is currently infringing the '376 Patent.  Microsoft further denies that Motorola has been or continues to be damaged by Microsoft's alleged activities.

39.     Microsoft denies that it has ever infringed or is currently infringing the '376 Patent, willfully or in any other way.

40.     Microsoft denies the allegations in paragraph 40 of the Complaint.

### JURY DEMAND

Microsoft acknowledges and joins in Motorola's demand for a trial by jury on all claims and all issues triable by jury in this action.

### PRAYER FOR RELIEF

Microsoft denies that Motorola is entitled to any of the relief requested in its prayer for relief or any relief whatsoever.

Microsoft denies all allegations of the Complaint not specifically admitted above.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

41.     On information and belief, Microsoft has not been and is not now infringing any valid and enforceable claim of the '374, '375, or '376 Patents, either directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise.

### Second Affirmative Defense

42.     On information and belief, each and every claim of the '374, '375, and '376 Patents is invalid for failure to comply with the conditions of patentability, including but not limited to 35 U.S.C. §§ 101, 102, 103, 111, 112, 113, and/or 133.

### Third Affirmative Defense

43.     On information and belief, Motorola has inexcusably delayed filing this suit for an unreasonable period of time to the material prejudice of Microsoft and is now barred from recovery of pre-suit damages because of laches.

### Fourth Affirmative Defense

44.     On information and belief, Motorola is estopped by representations or actions taken during the prosecution of the '374, '375, and '376 Patents and related patents under the doctrine of prosecution history estoppel.

### Fifth Affirmative Defense

45.     On information and belief, the claims of the '374, '375, and '376 Patents are barred by license, equitable estoppel and/or waiver.

### Sixth Affirmative Defense

46.   To the extent Motorola seeks damages for alleged infringement more than six years prior to the filing of the present litigation, Motorola's claims are barred by the statute of limitations under 35 U.S.C. § 286.

### Seventh Affirmative Defense

47.   On information and belief, Motorola's remedies are limited under 35 U.S.C. § 287.

### Eighth Affirmative Defense

48.   Motorola's demand to enjoin Microsoft is barred, as Motorola has suffered neither harm nor irreparable harm from Microsoft's actions.

### Ninth Affirmative Defense

49.   To the extent that Motorola's claims relate to the sale to and/or use by or for the United States government of the allegedly infringing products, Motorola's claims for relief are barred by 28 U.S.C. § 1498.

### Tenth Affirmative Defense

50.   As more fully described in Microsoft's currently pending Motion to Dismiss, Stay, or in the Alternative, Transfer Venue (Dkt. 25-26), Motorola's infringement claims are barred from being litigated in this action because they are compulsory counterclaims to Microsoft's first-filed action in the Western District of Washington (Case No. 10-1823).

### Eleventh Affirmative Defense

51.   Microsoft reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States, and any other defenses, at law or in

equity, that may now exist or in the future be available based on discovery and further factual investigation in this case.

## COUNTERCLAIMS

Microsoft Corporation ("Microsoft") alleges as follows against Motorola Mobility, Inc. and General Instrument Corporation (collectively "Motorola"):

1.     Microsoft is a corporation organized and existing under the laws of the State of Washington, with its principal place of business at One Microsoft Way, Redmond, Washington 98052.

2.     On information and belief, Defendant Motorola Mobility, Inc. is organized under the laws of Delaware having a principal place of business at 600 North U.S. Highway 45, Libertyville, Illinois 60048.  On information and belief, Defendant General Instrument Corporation is a wholly-owned subsidiary of Motorola Mobility, Inc. and is organized under the laws of Delaware having a principal place of business at 101 Tournament Drive, Horsham, Pennsylvania 19044.  Motorola Mobility, Inc., and General Instrument Corporation will be referred to collectively herein as "Motorola" or "Defendant".

## JURISDICTION AND VENUE

3.     Microsoft repeats and realleges the allegations of paragraphs 1 through 2 of these Counterclaims in their entirety.

4.     Microsoft brings these counterclaims under the patent laws of the United States, 35 U.S.C. § 1, *et seq.* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.  Thus, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1338(a).

5.     Venue is proper in this district under 28 U.S.C. §§ 1391(a), (c), and (d) and 1400(b) and because Motorola is subject to personal jurisdiction in this district.

6.      Personal jurisdiction is proper in this district at least because Motorola has consented to jurisdiction in this district by filing suit against Microsoft in this Court.

## RELATED LITIGATION

7.      On November 9, 2010, Microsoft sued Motorola in the Western District of Washington alleging breach of contract, promissory estoppels, and wavier (the "Washington action"). On November 10, 2010, Plaintiffs filed this suit. On December 21, 2010, Microsoft filed a motion to dismiss, stay, or transfer this case on the grounds that the infringement claims asserted by Plaintiffs are compulsory counterclaims to Microsoft's Washington action. (Dkt. 25-26.)

8.      Microsoft files the counterclaims below as of right in response to Motorola's Complaint, but maintains that the patents asserted by Motorola in this case may only be properly litigated as counterclaims to the first-filed Washington action, thereby requiring the dismissal of this entire case. Microsoft has filed this answer and these counterclaims only because the Court has not yet ruled on Microsoft's pending motion to dismiss, stay, or transfer this case, and Microsoft will dismiss these counterclaims upon the dismissal of Motorola's affirmative claims.

## THE MICROSOFT ASSERTED PATENTS

9.      U.S. Patent No. 6,339,780 ("the '780 Patent"), entitled "Loading Status in a Hypermedia Browser Having a Limited Available Display Area," issued on January 15, 2002 and names Scott R. Shell, Kevin T. Shields, and Anthony Kitowitz as inventors. Microsoft is the owner of all right, title, and interest in and to the '780 Patent, including the right to sue and recover for past infringement thereof. A true and correct copy of the '780 Patent is attached as Exhibit A.

10.     U.S. Patent No. 7,411,582 ("the '582 Patent"), entitled "Soft Input Panel System and Method," issued on August 12, 2008 and names Michael G. Toepke, Jeffrey R. Blum, and Kathryn L. Parker as inventors.  Microsoft is the owner of all right, title, and interest in and to the '582 Patent, including the right to sue and recover for past infringement thereof.  A true and correct copy of the '582 Patent is attached as Exhibit B.

## MICROSOFT'S FIRST COUNT

### (Motorola's Infringement of U.S. Patent No. 6,339,780)

11.     Microsoft repeats and realleges the allegations of paragraphs 1 through 10 of these Counterclaims in their entirety.

12.     On information and belief, Motorola has infringed, induced infringement of and/or contributorily infringed and continues to infringe, induce infringement of and/or contributorily infringe, at least independent claims 1, 12, 32, 36, and 40 of the '780 Patent, pursuant to 35 U.S.C. § 271(a), (b) and/or (c), literally or under the doctrine of equivalents, in this district and elsewhere in the United States, by making, using, selling, offering to sell and/or importing products such as Android smartphones including, *e.g.*, at least one or more of the following: the Motorola Droid X, the Motorola Droid 2, the Motorola Devour and the Motorola Charm.

13.     On information and belief, instructional materials provided by Motorola (available at, *e.g.*, http://www.motorola.com/consumers/v/index.jsp?vgnextoid=25aae66506e9d110VgnVCM10000 08406b00aRCRD, and http://www.motorola.com/Support/US-EN/Consumer-Support/Mobile-Phones/Motorola+DROID+X) instruct customers how to use these products in accordance with at least independent claims 1, 12, 32, 36, and 40 of the '780 Patent.

14.     Microsoft is entitled to recover damages adequate to compensate it for Motorola's infringement, and in any event no less than a reasonable royalty.

15.     Motorola's infringing activities have caused and will continue to cause Microsoft irreparable harm unless the infringement is enjoined by this Court.

## MICROSOFT'S SECOND COUNT

### (Motorola's Infringement of U.S. Patent No. 7,411,582)

16.     Microsoft repeats and realleges the allegations of paragraphs 1 through 10 of these Counterclaims in their entirety.

17.     On information and belief, Motorola has infringed, induced infringement of and/or contributorily infringed and continues to infringe, induce infringement of and/or contributorily infringe, at least independent claims 11 and 19 of the '582 Patent, pursuant to 35 U.S.C. § 271 (a), (b) and/or (c), literally or under the doctrine of equivalents, in this district and elsewhere in the United States, by making, using, selling, offering to sell and/or importing products such as Android smartphones including, *e.g.*, at least one or more of the following: the Motorola Droid X, the Motorola Droid 2, the Motorola Cliq XT, and the Motorola i1.

18.     On information and belief, instructional materials provided by Motorola (available at, *e.g.*, http://www.motorola.com/consumers/v/index.jsp?vgnextoid=25aae66506e9d110VgnVCM10000 08406b00aRCRD, and http://www.motorola.com/Support/US-EN/Consumer-Support/Mobile-Phones/Motorola+DROID+X) instruct customers how to use these products in accordance with at least independent claims 11 and 19 of the '582 Patent.

19.     Microsoft is entitled to recover damages adequate to compensate it for Motorola's infringement, and in any event no less than a reasonable royalty.

20.     Motorola's infringing activities have caused and will continue to cause Microsoft irreparable harm unless the infringement is enjoined by this Court.

## MICROSOFT'S THIRD COUNT

### (Breach of RAND Licensing Obligations)

21.     On November 9, 2010, Microsoft sued Motorola in the Western District of Washington alleging breach of contract, promissory estoppel, and waiver (the "Washington action"). On November 10, 2010, Plaintiffs filed this suit. On December 21, 2010, Microsoft filed a motion to dismiss, stay, or transfer this case on the grounds that the infringement claims asserted by Plaintiffs are compulsory counterclaims to Microsoft's Washington action. (Dkt. 25-26.) Subject to resolution of Microsoft's pending motion, Microsoft conditionally re-alleges and asserts that Motorola's relief for any infringement of the patents in suit shall be no more than "RAND" terms consistent with its obligations and representations to the relevant Standard Developing Organization, for the reasons set forth in Microsoft's forthcoming Amended Complaint in the Washington action . The substance of the Amended Complaint in the Washington action is set forth below.

## MICROSOFT'S THIRD COUNT – NATURE OF THE ACTION

22.     Microsoft brings this action for Motorola's breach of its commitments to the Institute of Electrical and Electronics Engineers Standards Association ("IEEE-SA"), International Telecommunications Union ("ITU"), and their members and affiliates – including Microsoft. Motorola broke its promises to license patents it asserted as related to wireless technologies known as "WLAN" and to video coding technologies generally known as "H.264" under reasonable rates, with reasonable terms, and under non-discriminatory conditions.

23.     Participants in IEEE-SA standards setting efforts, including those directed to

WLAN technology, were subject to the IEEE-SA Standard Board Bylaws concerning the submission of Letters of Assurance related to patent claims deemed "essential" by a submitting party. Clause 6 of those Bylaws (which was revised slightly over the years) generally provides in pertinent part:

> A Letter of Assurance shall be either:
>
> a) A general disclaimer to the effect that the submitter without conditions will not enforce any present or future Essential Patent Claims against any person or entity making, using, selling, offering to sell, importing, distributing, or implementing a compliant implementation of the standard; or
>
> b) A statement that a license for a compliant implementation of the standard will be made available to an unrestricted number of applicants on a worldwide basis without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination.

24.     Motorola openly and publicly submitted Letters of Assurance pursuant to Clause 6 of the IEEE-SA Standards Board Bylaws that it would offer to license any of its patents that it identified as "essential" to the applicable WLAN standard(s) to any entity under reasonable rates on a non-discriminatory basis. IEEE-SA and its participants and affiliates relied on Motorola's promises in developing, adopting and implementing IEEE-SA technical standards. These standards are now implemented worldwide in a variety of electronic devices that have become commonplace. Microsoft invested substantial resources in developing and marketing products in compliance with these standards, relying on the assurances of participating patent holders – including Motorola – that any patents asserted to be "essential" by such patent holders would be available for licensing on such terms, regardless of whether such patents were, in fact, used in any particular implementation.

25.     Participants in ITU standards setting efforts, including those directed to H.264 technology, were subject to the ITU-T Common Patent Policy concerning the submission of Patent Statement and Licensing Declaration related to patents identified by a submitting party.

ITU-T Common Patent Policy generally provides, in pertinent part, that a patent holder's statement may declare that:

> (2.1) The patent holder is willing to negotiate licenses free of charge with other parties on a non-discriminatory basis on reasonable terms and conditions.
>
> (2.2) The patent holder is willing to negotiate licenses with other parties on a non-discriminatory basis on reasonable terms and conditions.

26.    Motorola openly and publicly submitted Patent Statement and Licensing Declarations pursuant to the ITU's Common Patent Policy that it would offer to license any of its patents that it identified for the H.264 technologies to any entity under reasonable rates on a non-discriminatory basis.  The ITU and its participants and affiliates relied on Motorola's promises in developing, adopting and implementing ITU H.264 technical standards.  These standards are now implemented worldwide in a variety of electronic devices and software that have become commonplace.  Microsoft invested substantial resources in developing and marketing products in compliance with these standards, relying on the assurances of participating patent holders – including Motorola – that any patents identified pursuant to ITU's Common Patent Policy by such patent holders would be available for licensing on such terms, regardless of whether such patents were, in fact, used in any particular implementation.

27.    Motorola broke its promise to IEEE-SA and its members and affiliates by refusing to offer to Microsoft a license that is consistent with Clause 6 of IEEE-SA Standards Board Bylaws, instead demanding royalties that are excessive and discriminatory.  Motorola broke its promise to ITU and its members and affiliates by refusing to offer to Microsoft a license that is consistent with the Common Patent Policy of the ITU, instead demanding royalties that are excessive and discriminatory.

28.    Microsoft does not accept Motorola's representation that any of its patents that it has identified to the IEEE or ITU are, in fact, necessary to the implementation of compliant

implementations of WLAN or H.264 technologies; nor does Microsoft concede that the particular implementations of such technologies in its products practice any Motorola patents, including those identified by Motorola in relation to these technologies.  Nonetheless, Microsoft has relied upon Motorola's, and other similarly-situated patent holders', representations that all patent controversies may be avoided based on the offer of patent licenses on reasonable rates and non-discriminatory terms.

29.     Motorola's breach of its commitments does not depend on whether any Motorola patents which Motorola has identified in relation to standards are, in fact, "essential" to practicing those standards, whether those standards can be practiced in ways that do not infringe the identified Motorola patents or whether Microsoft has infringed any valid Motorola patents. Because Motorola promised that it would license any such patents on reasonable and non-discriminatory terms, companies that rely on those commitments are entitled to avoid becoming embroiled in patent controversies and to receive the benefit of an offer of a reasonable and non-discriminatory license.

30.     Accordingly, Microsoft seeks: i) a judicial declaration that Motorola's promises to IEEE-SA, the ITU, and their respective members and affiliates constitute contractual obligations that are binding and enforceable by Microsoft; ii) a judicial declaration that Motorola has breached these obligations by demanding excessive and discriminatory royalties from Microsoft; iii) a judicial accounting of what constitutes a royalty rate in all respects consistent with Motorola's promises for WLAN patents identified as "essential" by Motorola and for H.264 patents identified by Motorola; and iv) a judicial determination of and compensation for Motorola's breach.

**MICROSOFT'S THIRD COUNT – PARTIES**

31.     Counterclaim Plaintiff Microsoft is a Washington corporation having its principal place of business at One Microsoft Way, Redmond, Washington 98052.

32.     Founded in 1975, Microsoft is a worldwide leader in computer software, services, and solutions for businesses and consumers.  Since 1979, Microsoft has been headquartered in the Redmond, Washington area.  Microsoft currently employs nearly 40,000 people in the Puget Sound region and occupies nearly 8 million square feet of facilities at its Redmond campus.

33.     Microsoft has a long history of technical innovation in the software and hardware products it develops and distributes.

34.     Microsoft's products include Xbox video game consoles, various versions of which have been sold to consumers since 2001.  Xbox has grown in popularity over the years and is now one of the most widely-sold video game consoles on the market.

35.     Over the years that Xbox has been sold, some versions have had wireless Internet connectivity ("WLAN") built-in and some versions have had optional WLAN connectivity.  All versions of Xbox that include hardware and software that allows for WLAN connectivity also offer an alternative, wired connection to the Internet.  Xbox video game consoles function as video game consoles, regardless of their ability to connect to the Internet.

36.     Microsoft relies upon third-party suppliers to provide an interface to WLAN connections.  The WLAN interface provided by these third-parties is one of many components that underlie the operation and functionality of the Xbox consoles.  The WLAN interface does not enable any of Xbox's core video gaming functionality.  Instead, it simply enables WLAN connectivity for those consumers who choose to use that functionality.

37.     Microsoft hardware and software products that provide users with H.264 technologies further provide substantial other features and functions.  By way of non-limiting

example, personal computers in various configurations offer the end-user myriad features and functionality. H.264 technologies provided through Microsoft software supplied to computer and other equipment makers represent but a fraction of the end price for such products. By way of further non-limiting example, Microsoft's Xbox video game console provides video game play without reliance upon any H.264 technologies that may be made available to users through other features and functions.

38.     Microsoft also relies upon third-party suppliers in at least some instances for H.264 technologies.

39.     On information and belief, Defendant Motorola Mobility, Inc. is organized under the laws of Delaware having a principal place of business at 600 North U.S. Highway 45, Libertyville, Illinois 60048. On information and belief, Defendant General Instrument Corporation is a wholly-owned subsidiary of Motorola Mobility, Inc. and is organized under the laws of Delaware having a principal place of business at 101 Tournament Drive, Horsham, Pennsylvania 19044. Motorola Mobility, Inc., and General Instrument Corporation will be referred to collectively herein as "Motorola" or "Defendant".

### MICROSOFT'S THIRD COUNT – JURISDICTION AND VENUE

40.     This Court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332, because this is an action between citizens of different states and because the value of declaratory and injunctive relief sought, the value of Microsoft's rights this action will protect and enforce, Microsoft's damages, and the extent of the injury to be prevented exceed the amount of $75,000, exclusive of interest and costs.

41.     On information and belief, Defendant is subject to this Court's personal jurisdiction, consistent with the principles of due process and the Washington Long Arm Statute,

at least because Defendant maintains offices and facilities in the Western District of Washington,

offers its products for sale in the Western District of Washington, and/or has transacted business

in this District.

42.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(a), 1391(c), and

1391(d).

**MICROSOFT'S THIRD COUNT – BACKGROUND**

**Introduction to Standards**

43.     New wireless and video coding technologies typically are only broadly

commercialized after service providers and device manufacturers agree on compatible

technology specifications for related products or services.  For virtually all successful wireless

and video coding technologies, that process has involved inclusive, multi-participant standards

development efforts conducted under the auspices of leading standards development

organizations.

44.     Standards play a critical role in the development of wireless and video coding

technologies.  Standards facilitate the adoption and advancement of technology as well as the

development of products that can interoperate with one another.  Companies that produce

products compatible with a standard can design products by referencing only the standard

documentation, without the need to communicate separately with every other company with

which their products may need to interoperate.  Companies producing products that implement

and are tested to a standard can therefore be confident that their products will operate with other

products that also are compatible with that standard, and consumers of those products can be

confident that products from multiple vendors will work together as intended under the standard.

45.     As a practical matter, the technologies that are used to allow a consumer

electronics device to connect wirelessly to the Internet must be described in standards adopted by a recognized SDO (standard development organization), and thereby accepted by key industry members, in order to be commercially successful.  For example, Microsoft could not purchase third-party goods that enable its Xbox devices to connect wirelessly to the Internet unless those goods were compatible with standards described by an SDO.

46.     Correspondingly, video technologies that are used to allow a consumer electronics device to display video encoded pursuant to any particular coding protocol must be described in standards adopted by a recognized SDO, and thereby accepted by key industry members, in order to be commercially successful.  For example, Microsoft and computer makers could not purchase third-party products or software that provide reliable video decoding and image generation unless those products or software were compatible with standards described by an SDO.

47.     In order to reduce the likelihood that implementers of their standards will be subject to abusive practices by patent holders, SDOs have adopted rules, policies and procedures that address the disclosure and licensing of patents that SDO participants may assert in relation to the practice of the standard under consideration.  These rules, policies and/or procedures are set out in the intellectual property rights policies ("IPR policies") of the SDOs.

48.     Many IPR policies – including those at issue in this litigation – encourage or require participants to disclose on a timely basis the IPR, such as patents or patent applications, that they believe are sufficiently relevant to standards under consideration.  These disclosures permit the SDOs and their members to evaluate technologies with full knowledge of disclosed IPR that may affect the costs of implementing the standard.

49.     IPR policies – including those at issue in this litigation – require participants claiming to own relevant patents to negotiate licenses for those patents with any implementer of

the standard on reasonable and non-discriminatory terms.  As their inclusion in the IPR policies of various standards development organizations suggests, such commitments are crucial to the standards development process.  They enable participants in standards development to craft technology standards with the expectation that an owner of any patented technology will be prevented from demanding unfair, unreasonable, or discriminatory licensing terms and thereby be prevented from keeping parties seeking to implement the standard from doing so or imposing undue costs or burdens on them.

### Wireless LAN Standards

50.    Motorola's unlawful licensing demands pertain in part to patents that it claims are "essential" to a widely practiced standard for wireless Internet connectivity known as "WLAN," "Wi-Fi," and/or "802.11."

51.    WLAN enables an electronic device to access the Internet wirelessly at high speeds over short distances.  WLAN networks typically consist of one or more access points that are connected to an Ethernet local area network, each of which communicates by radio signals with devices such as notebook computers and other electronics devices.

52.    The use of WLAN technology has grown in the United States since its introduction in the 1990s.  Manufacturers now offer WLAN connectivity in various devices for various reasons.

53.    WLAN is based on the 802.11 wireless networking standard developed by the Institute of Electrical and Electronics Engineers ("IEEE") beginning in the early 1990s.  The initial 802.11 protocol ("legacy 802.11") was released in 1997.  Since then, there have been a number of amendments issued, the most important of which are 802.11a (1999), 802.11b (1999), 802.11g (2003), and 802.11n (2009).

## H.264 Standards

54.    Motorola's unlawful licensing demands pertain in part to patents that it has identified to the ITU and its members in relation to H.264 technologies.

55.    H.264 technologies provide video decoding in such applications as DVD players, videos available for downloading or replay on the Internet, web software, broadcast services, direct-broadcast satellite television services, cable television services, and real-time videoconferencing.

56.    The use of H.264 technology has grown in the United States since its introduction.  Manufacturers now offer H.264 connectivity in various software and devices for various reasons.

57.    H.264 technology was developed as a standard set of technologies at least in part through the auspices of the International Telecommunications Union ("ITU").

## Motorola's Involvement in Development of the WLAN Standards

58.    The standard setting arm of IEEE, the IEEE Standards Association ("IEEE-SA"), promulgates technical standards in a variety of fields, including telecommunications.  IEEE-SA had an IPR policy at the time it was drafting the 802.11 (WLAN) protocols.  Under the IPR policy, when individuals participating in IEEE standards development came to believe that a company, university, or other patent holder owned patents or patent applications that might be "essential" to implement an IEEE standard under development, IEEE-SA would request Letters of Assurance from those entities.

59.    The requirements for the Letters of Assurance sought by IEEE are set forth in Clause 6 of the IEEE-SA Standards Board Bylaws.

60.    According to IEEE's IPR policy, Letters of Assurance, once provided, are

irrevocable and shall be in force at least until the standard's withdrawal.

61.     If the Letters of Assurance were not provided for patents asserted to be
"essential" by participants, the IEEE working group either would revise the standard so that
compliance could be achieved without facing any potential issues related to such patent(s),
discontinue work on the standard altogether, or otherwise proceed in a manner consistent with
the non-disclosure and lack of Letters of Assurance so that participating and relying entities
would not be exposed to discriminatory patent assertions and/or unreasonable licensing terms.

62.     Motorola has represented to Microsoft that it owns rights in a number of patents
and pending applications that it asserts are or may become "essential" to comply with one or
more amendments to the 802.11 standard.  By way of example, Motorola has represented to
Microsoft that the following patents, among others, are or may become "essential" to comply
with one or more amendments to the 802.11 standard:  U.S. Patent Nos. 5,319,712; 5,311,516;
5,572,193; 5,311,516; and 5,636,223.  The full list of patents is provided in Exhibit C.
Microsoft does not concede that such listed patents are either "essential" to the 802.11 standards
or that such patents are practiced in the implementation of such standards in any Microsoft
products.

63.     On information and belief, Motorola obtained rights to several of THE WLAN
patents it has represented as "essential" through its recent acquisition of Symbol Technologies,
Inc. ("Symbol").

64.     Prior to the releases of the 802.11 protocols, Motorola and Symbol submitted
Letters of Assurance to the IEEE pursuant to Clause 6 of the IEEE-SA Standards Board Bylaws
with respect to those protocols, guaranteeing that any "essential" patents would be licensed under
reasonable and non-discriminatory terms and conditions.  Both Motorola's and Symbol's Letters

of Assurance apply to any "essential" patents they then held as well as any other "essential" patents they subsequently obtained.

65.    In reliance on these letters of assurance, IEEE released the 802.11 standard and various amendments to that standard which Motorola asserts incorporated Motorola's and Symbol's patented technology.  On information and belief, absent the Letters of Assurance, the relevant IEEE working groups would have either revised the standards, employing alternative technologies instead, or stopped working on the protocols.

66.    In submitting its Letter of Assurance pursuant to the applicable IEEE IPR policy, Motorola entered into an actual or implied contract with IEEE, for the benefit of IEEE members and any entity that implements the 802.11 standard. Motorola is bound by its agreements to offer licenses consistent with the referenced IEEE bylaws.

67.    Similarly, Symbol, in submitting its Letter of Assurance pursuant to the applicable IEEE IPR policy, entered into an actual or implied contract with IEEE, for the benefit of IEEE members and any other entity that implements the 802.11 standard, and Motorola is bound by that commitment.

### Motorola's Involvement in Development of the H.264 Standards

68.    ITU is the leading United Nations agency for information and communication technology issues, and the global focal point for governments and the private sector in developing networks and services.  ITU historically has coordinated the shared global use of the radio spectrum, promoted international cooperation in assigning satellite orbits, worked to improve telecommunication infrastructure in the developing world, established the worldwide standards that foster seamless interconnection of a vast range of communications systems and addressed the global challenges of our times, such as strengthening cybersecurity.

69.     In conjunction with its efforts to provide standards in support of its stated goals, the ITU requires that its members and participants adhere to the Common Patent Policy stated above.

70.     According to ITU's IPR policy, Patent Statement and Licensing Declarations, once provided, are irrevocable and shall be in force at least until the standard's withdrawal.

71.     If the Patent Statement and Licensing Declarations were not provided for relevant patents from participants, the ITU either would revise the standard so that compliance could be achieved without facing any potential issues related to such patent(s), discontinue work on the standard altogether, or otherwise proceed in a manner consistent with the non-disclosure and lack of Patent Statement and Licensing Declarations so that participating and relying entities would not be exposed to discriminatory patent assertions and/or unreasonable licensing terms.

72.     Motorola has represented to Microsoft and others that it owns rights in a number of patents and pending applications that are or may be embodied fully or partly within H.264 technologies as endorsed by ITU and has identified these patents to the ITU.   Microsoft does not concede that such listed patents are either "essential" to the 802.11 standards or that such patents are practiced in the implementation of such standards in any Microsoft products.

73.     Motorola submitted Patent Statement and Licensing Declarations to the ITU pursuant to its Common Patent Policy with respect to those protocols, guaranteeing that Motorola's identified patents would be licensed under reasonable and non-discriminatory terms and conditions.

74.     In reliance on these Patent Statement and Licensing Declarations, ITU proceeded with the H.264 standard and various amendments to that standard which Motorola asserts incorporated Motorola's patented technology.  On information and belief, absent the Patent

Statement and Licensing Declarations, the ITU would have either revised the standards, employing alternative technologies instead, or stopped working on the protocols.

75.    In submitting its Patent Statement and Licensing Declarations pursuant to the applicable ITU policy, Motorola entered into an actual or implied contract with ITU, for the benefit of ITU members and any entity that implements the H.264 technologies.  Motorola is bound by its agreements to offer licenses consistent with the referenced ITU Common Patent Policy.

**Microsoft's Reliance on Commitments with Respect to WLAN and H.264 Technologies**

76.    Microsoft has participated in the development of the IEEE WLAN standards.

77.    Microsoft and other companies participating in the development of WLAN in IEEE relied on Motorola's commitments to ensure that the royalties Motorola would seek would conform to the promises made by Motorola.

78.    In reliance on the integrity of the SDO process and the commitments made by Motorola and others regarding WLAN patents they deem "essential," Microsoft began providing its Xbox video game consoles with WLAN connectivity.  By way of example, Microsoft purchased and incorporated into its Xbox 360 video game consoles third-party-manufactured interfaces that provide Xbox 360 devices with WLAN connectivity.  Microsoft made its decision to provide its Xbox video game consoles with WLAN connectivity in reliance on, and under the assumption that, it and/or any third party supplier could avoid patent litigation and take a license to any patents that Motorola, or any other company, has disclosed  to the WLAN standard under IEEE's well publicized IPR policy.

79.    Microsoft and other manufacturers of WLAN-compliant devices necessarily relied on the commitments of Motorola and others to disclose and license any identified  patents

under these terms to avoid any patent controversy even if such patents are not necessary to compliant implementations nor actually practiced in any particular implementation.

80.     Microsoft has participated in the development of the H.264 technologies.

81.     Microsoft and other companies participating in the development of H.264 under the auspices of the ITU relied on Motorola's commitments to ensure that the royalties Motorola would seek for identified patents would conform to the promises made by Motorola.

82.     Correspondingly, in reliance on the integrity of the SDO process and specifically the commitments made by Motorola and others regarding patents related to H.264 technologies, Microsoft began providing its H.264 technology capability in its Xbox video game consoles. Microsoft made its decision to provide its Xbox video game consoles with H.264 technology in reliance on, and under the assumption that, it and/or any third party supplier could avoid patent litigation and take a license to any patents that Motorola, or any other company, has disclosed to the ITU under its well-publicized IPR policy.

83.     Microsoft made similar investments in other fields, including Windows 7 and Windows Phone 7, based upon Motorola's representations in relation to the H.264 technology standards.

84.     Microsoft and other manufacturers and suppliers of H.264 compliant technology necessarily relied on the commitments of Motorola and others to license their identified patents under these terms to avoid any patent controversy even if such patents are not necessary to compliant implementations nor actually practiced in any particular implementation.

## Motorola's Breach of Its Contractual Obligation to License Its Identified Patents on The Promised Terms

85.     In willful disregard of the commitments it made to IEEE and the ITU, Motorola

has refused to extend to Microsoft a license consistent with Motorola's promises for any of Motorola's identified patents.

86.     Instead, Motorola is demanding royalty payments that are wholly disproportionate to the royalty rate that its patents should command under any reasonable calculus.  Motorola has discriminatorily chosen Microsoft's Xbox product line and other multi-function, many-featured products and software, such as Windows 7 and Windows Phone 7 and products incorporating Microsoft software, for the purpose of extracting unreasonable royalties from Microsoft.

87.     By way of non-limiting example, each Xbox device includes substantial software and many computer chips and modules that perform various functions, including to enable Xbox's core functionality as a video gaming machine.  Of those, the Xbox console includes one – an interface provided to Microsoft by third-parties – that allows consumers optionally to connect an Xbox to the Internet using a WLAN connection.

88.     The third-party WLAN interface does not enable any of Xbox's core video gaming functionality.  In addition, Microsoft allows consumers an alternative, wired method to connect to the Internet.  This alternative method does not require use of any WLAN technology.

89.     By way of further non-limiting example, each personal computer running Windows 7 includes substantial software and many computer chips and modules that perform various functions, including those related to the general operation of a computing device.  Of those, each personal computer includes just a portion directed to H.264 technologies.

90.     By way of further non-limiting example, each smartphone running Windows Phone 7 includes substantial software and many computer chips and modules that perform various functions, including those related to the general and particularized operation of a smartphone independent of H.264 technology.  Of those, each smartphone includes just a portion

directed to H.264 technologies.

91.     By letter to Microsoft, dated October 21, 2010, Kirk Dailey, Motorola's

Corporate Vice President Intellectual Property, stated that a royalty for a license to its purported

"essential" patents must be based on "the price of the end product (e.g., each Xbox 360 product)

and not on component software." The cost of the chips and associated components that provide

wireless connectivity for Xbox 360 consoles is a small fraction of the overall cost of the device.

Motorola thus seeks a royalty on components of Xbox 360 which are disproportionate to the

value and contribution of its purportedly "essential" patents and has declined to offer a license to

its purported "essential" patents unless it receives exorbitant and discriminatory royalty

payments to which it is not entitled. On information and belief, Motorola has not previously

entered into a license agreement for its purported "essential" patents that is comparable to the

demand made of Microsoft. Motorola has thereby refused to offer to license the patents at a

reasonable rate, with reasonable terms, under conditions that are demonstrably free of any unfair

discrimination.

92.     By letter to Microsoft, dated October 29, 2010, Kirk Dailey, Motorola's

Corporate Vice President Intellectual Property, stated that a royalty for a license to its identified

patents must be based on "the price of the end product (e.g., each Xbox 360 product, each

PC/laptop, each smartphone, etc.) and not on component software (e.g., Xbox 360 system

software, Windows 7 software, Windows Phone 7 software, etc.)." The cost such component

software and any inter-related hardware is a small fraction of the overall cost of the listed

devices. Motorola thus seeks a royalty on software and hardware components of Xbox 360 and

other devices which are unrelated to its identified patents and has declined to offer a license

unless it receives exorbitant royalty payments to which it is not entitled. On information and

belief, Motorola has not previously entered into a license agreement for its identified patents that is comparable to the demand made of Microsoft.  Motorola has thereby refused to offer to license the patents at a reasonable rate, with reasonable terms, on a non-discriminatory basis.

93.     Regardless of whether there exists any actual use of Motorola patent claims in any specific implementation that is compliant with the applicable standards, Motorola has represented that it possesses patents relevant to such implementations.  On that basis, Motorola is required to tender an offer to license its identified patents in all respects consistent with its binding assurances to the IEEE, the ITU, and participating members.

94.     Motorola's demands constitute a breach of its WLAN and H.264 commitments.

### Motorola Files Several Patent Infringement Actions in Violation of its Contractual Commitments

95.     On November 10, 2010, Motorola Mobility and General Instrument filed two complaints for patent infringement against Microsoft in the Federal District Court for the Western District of Wisconsin, Case No. 3:10-CV-699 (the "699 Action") and Case No. 3:10-CV-700 (the "700 Action")).

96.     The 699 Action involves the following three patents:  U.S. Patent Nos. 7,310,374; 7,310,375; and 7,310,376.  These three patents are among those that Motorola claims are necessary or essential to practice the H.264 standard.  In the 699 Action, Motorola is seeking – among other forms of relief – to permanently enjoin Microsoft from practicing these patents.

97.     The 700 Action involves seven other patents: U.S. Patent Nos. 6,980,596; 7,162,094; 5,319,712; 5,357,571; 6,069,896; 5,311,516; and 6,686,931.  At least six of these patents are among those that Motorola claims are necessary or essential to practice the WLAN or

H.264 standard.  In the 700 Action, Motorola is seeking – among other forms of relief – to permanently enjoin Microsoft from practicing these patents.

98.     On November 22, 2010, Motorola Mobility and General Instrument filed a complaint for patent infringement against Microsoft with the International Trade Commission ("ITC") captioned *In the Matter of Certain Gaming and Entertainment Consoles, Related Software, and Components Thereof* (ITC Case No. 337-TA-752) (the "ITC Action").

99.     Motorola's ITC Action involves five patents: U.S. Patent Nos. 6,980,596; 7,162,094; 5,319,712; 5,357,571; and 6,069,896.  All of these patents are among those that Motorola claims are necessary or essential to practice the WLAN or H.264 standard.  In the ITC case, Motorola is seeking – among other forms of relief – to exclude Microsoft from importing, marketing, advertising, distributing, offering for sale, selling, or transferring any products that practice these patents.

100.    The 699 Action, 700 Action, and Motorola's ITC Action are collectively referred to as the "Motorola Patent Actions."  The patents that are the subject of the Motorola Patent Actions and that are also included among those patents that Motorola claims are necessary or essential to practice the WLAN or H.264 standard are hereafter referred to collectively as the "SDO Patents in Suit."

101.    With respect to each of the SDO Patents in Suit, Motorola has refused to offer Microsoft a license consistent with Motorola's contractual undertakings to the IEEE-SA, ITU, and their participating members.  Instead, Motorola has demanded royalty payments that are wholly disproportionate to the royalty rate that its patents should command under any reasonable calculus.

## MICROSOFT'S THIRD COUNT - CAUSE OF ACTION 3A

**(Breach Of Contract)**

102.    Microsoft realleges and incorporates by reference the allegations set forth in paragraphs 31-101 above.

103.    Motorola entered into express or implied contractual commitments with IEEE-SA, the ITU and their respective members and affiliates relating to the WLAN standard and H.264 technologies.

104.    Each third party that would potentially implement WLAN and H.264 technologies was an intended beneficiary of those contracts.

105.    Motorola was contractually obligated to offer a license to its identified patents consistent with the applicable patent policy of the IEEE-SA Standards Board Bylaws and the ITU, respectively.

106.    Motorola breached these contracts by refusing to offer licenses to its identified patents (including the SDO Patents in Suit) under reasonable rates, with reasonable terms, and on a non-discriminatory basis.

107.    Motorola further breached these contracts by filing the Motorola Patent Actions, which seek to enjoin Microsoft's implementation of the technology of the SDO Patents in Suit and to exclude Microsoft from, among other things, importing or selling products that implement the technology of the SDO Patents in Suit.  To the extent this technology is actually necessary to implementation of the relevant standards (as Motorola has asserted), Motorola was obligated to offer, and eventually to negotiate, licenses to Microsoft on RAND terms.  Because of its SDO contractual duties and the benefits Motorola receives from inclusion of its technology in SDO standards, Motorola has no right to enjoin or exclude Microsoft from implementing the technology of the SDO Litigated Patents.  Motorola has failed and refused to offer the SDO

Patents in Suit on RAND terms, and has initiated the Motorola Patent Actions seeking improperly to enjoin or exclude Microsoft from using the technology of the SDO Patents in Suit.

108.    As a result of these contractual breaches, Microsoft has been injured in its business or property, including damages associated with the cost of defending the improperly filed Motorola Patent Actions, and is otherwise threatened by imminent loss of profits, loss of customers and potential customers, and loss of goodwill and product image.

109.    Microsoft has suffered damages and irreparable harm, and will suffer further damage and irreparable harm, by reason of each and all of the acts, practices, breaches and conduct of Motorola alleged above until and unless the Court enjoins such acts, practices, and conduct.

## MICROSOFT'S THIRD COUNT - CAUSE OF ACTION 3B

### (Promissory Estoppel)

110.    Microsoft realleges and incorporates by reference the allegations set forth in paragraphs 31-101 above.

111.    Motorola made a clear and definite promise to potential licensees through its commitments to IEEE and the ITU that it would license identified patents under reasonable rates, with reasonable terms, and on a non-discriminatory basis.

112.    The intended purpose of Motorola's promises was to induce reliance.  Motorola knew or should have reasonably expected that this promise would induce companies producing products in wireless networking and H.264 technologies, like Microsoft, to develop products compliant with the relevant standards.

113.    Microsoft developed and marketed its products and services in reliance on Motorola's promises, as described above, including making its products and services compliant

with WLAN technical standards and including H.264 technologies in various Microsoft product offerings.

114.    Motorola is estopped from reneging on these promises to the IEEE and the ITU under the doctrine of promissory estoppel.

115.    Microsoft has been harmed as a result of its reasonable reliance on Motorola's promises and is threatened by the imminent loss of profits, loss of customers and potential customers, and loss of goodwill and product image.

116.    Microsoft will suffer irreparable injury by reason of the acts and conduct of Motorola alleged above until and unless the court enjoins such acts, practices and conduct.

### MICROSOFT'S THIRD COUNT - CAUSE OF ACTION 3C

### (Waiver)

117.    Microsoft realleges and incorporates by reference the allegations set forth in paragraphs 31-101 above.

118.    Motorola expressly stated in its declarations to IEEE and the ITU that it would license its identified patents under reasonable rates and non-discriminatory terms.

119.    Through this express statement, Motorola voluntarily and intentionally waived its rights to obtain compensation for its identified patents for the WLAN and H.264 standards other than at reasonable rates and on non-discriminatory terms.

120.    Microsoft will suffer irreparable injury by reason of the acts and conduct of Motorola alleged above until and unless the court enjoins such acts, practices, and conduct.

### MICROSOFT'S THIRD COUNT - CAUSE OF ACTION 3D

### (Declaratory Judgment That Motorola's Offers Do Not Comply with Its Obligations)

121.    Microsoft realleges and incorporates by reference the allegations set forth in

paragraphs 31-101 above.

122.    There is a dispute between the parties concerning whether Motorola has offered to license to Microsoft patents consistent with Motorola's declarations and the referenced policy of the IEEE-SA Standards Board and the ITU.

123.    The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

124.    Microsoft is entitled to a declaratory judgment that Motorola has not offered license terms to Microsoft conforming to applicable legal requirements.


### PRAYER FOR RELIEF – MICROSOFT'S COUNT 1 AND 2

WHEREFORE, Microsoft prays for a judgment in its favor and against Motorola:

A.    That Motorola take nothing by way of its Complaint;

B.    That Motorola's infringement claims are compulsory counterclaims to Microsoft's first-filed Western District of Washington action (Case No. 10-1823).

C.    That Microsoft has not been and is not now infringing, contributorily infringing, or inducing infringement of any valid and enforceable claim of the '374, '375, and '376, literally or under the doctrine of equivalents, willfully or otherwise;

D.    That the '374, '375, and '376 Patents are invalid;

E.    That the Microsoft Asserted Patents are valid and enforceable;

F.    That Motorola has infringed the Microsoft Asserted Patents;

G.    That Motorola, and all persons acting in privity or concert with, or otherwise controlled by Motorola, be permanently enjoined from continued infringement of the Microsoft Asserted Patents;

H.      That Microsoft be awarded damages for Motorola's infringement of the Microsoft Asserted Patents, including pre-judgment and post-judgment interest; and

I.      That Microsoft be awarded its expenses, costs, and attorney's fees under 35 U.S.C. § 285, along with any other and further relief as the Court deems just and proper.

### PRAYER FOR RELIEF – MICROSOFT'S COUNT 3A-3D

WHEREFORE, Microsoft prays for relief as follows:

J.      Adjudge and decree that Motorola is liable for breach of contract;

K.      Adjudge and decree that Motorola is liable for promissory estoppel;

L.      Enter judgment against Motorola for the amount of damages that Microsoft proves at trial;

M.      Enter a judgment awarding Microsoft its expenses, costs, and attorneys fees in accordance with Rule 54(d) of the Federal Rules of Civil Procedure;

N.      Enjoin Motorola from further demanding excessive royalties from Microsoft that are not consistent with Motorola's obligations, and from enforcing, or seeking to enforce, patent infringement claims in the Motorola Patent Actions (or elsewhere) in breach of its RAND obligations as alleged above;

O.      Decree that Motorola has not offered royalties to Microsoft under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination;

P.      Decree that Microsoft is entitled to license from Motorola any and all patents that Motorola deems "essential" to WLAN technology under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination;

Q.      Decree that Microsoft is entitled to license from Motorola any and all patents that

Motorola has identified to the ITU in relation to H.264 technology on a non-discriminatory basis

on reasonable terms and conditions; and

R.      For such other and further relief as the Court deems just and proper.


DATED this 25th day of January 2011.

                                        **MICHAEL BEST & FRIEDRICH LLP**

                                        By: /s/ J. Donald Best
                                              J. Donald Best, SBN 1012450
                                              John C. Scheller, SBN 1031247
                                              Christopher C. Davis, SBN 1064764
                                              P.O Box 1806
                                              Madison, Wisconsin 53701-1806
                                              Tel: (608) 257-3501
                                              Fax: (608) 283-2275
                                              Email: *jdbest@michaelbest.com*
                                                     *jcscheller@michaelbest.com*
                                                     *ccdavis@michaelbest.com*

                                              David T. Pritikin
                                              *dpritikin@sidley.com*
                                              Richard A. Cederoth
                                              *rcederoth@sidley.com*
                                              John W. McBride
                                              *jwmcbride@sidley.com*
                                              SIDLEY AUSTIN LLP
                                              One South Dearborn
                                              Chicago, Illinois  60603
                                              Tel. (312) 853-7000

                                              *Attorneys for Defendant*
                                              *Microsoft Corporation*

*Of Counsel:*

Douglas I. Lewis *(pro hac vice to be filed)*
*dilewis@sidley.com*
SIDLEY AUSTIN LLP
One South Dearborn

Chicago, Illinois  60603
Tel. (312) 853-7000

T. Andrew Culbert
*andycu@microsoft.com*
David E. Killough
*davkill@microsoft.com*
**MICROSOFT CORPORATION**
1 Microsoft Way
Redmond, Washington 98052
Tel. (425) 703-8865

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 25th day of January, 2011, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will automatically send email notification of such filing to all counsel who have entered an appearance in this action.

Respectfully submitted,

/s/ J. Donald Best
J. Donald Best

DATED this 25th day of January 2011.