# Exhibit A-12

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Application Serial No. ....................................................................08/851,877
Filing Date .............................................................................................5/6/97
Inventorship...................................................................................Shell et al.
Applicant......................................................................... Microsoft Corporation
Group Art Unit ..........................................................................................2771
Examiner ..........................................................................................Jung, D.
Attorney's Docket No. ....................................................................MS1-161US
Title: Loading Status in a Hypermedia Browser Having a Limited Available Display Area

### RESPONSE TO OFFICE ACTION DATED NOVEMBER 26, 1999

To:   Commissioner of Patents and Trademarks
      Washington, D.C. 20231

From: Kasey C. Christie (Tel. 509-324-9256; Fax 509-323-8979)
      Lee & Hayes, PLLC
      421 W. Riverside Avenue, Suite 500
      Spokane, WA 99201

This Response is to an Office Action dated November 26, 1999. At the time of the Action, claims 1-16 were pending.

### AMENDMENTS

### In the Claims

**Claims pending**

- At time of the Action: Claims 1-16.
- After this Response: Claims 1-24.

**Canceled claims**: None.

**Amended claims**: Claims 1, 6, and 11.

**New claims**: 17-24.



LEE & HAYES, PLLC                          1                    0120001142 G:\MS1\161US\MS1-161US m02.doc

**Amended and Unchanged Existing Claims:**

Please amend claims 1, 6, and 11 as indicated below (all currently pending claims are listed for the Office's convenience):

1. (Twice Amended) A hypermedia browser embodied on a computer-readable medium for execution on an information processing device having a limited display area, wherein the hypermedia browser has a content viewing area and is configured to display a temporary graphic element over the content viewing area during times when the browser is loading content, wherein the temporary graphic element is positioned [within] over the content viewing area to only partially obstruct content in the content viewing area, wherein the temporary graphic element does not contain information content.

2. A hypermedia browser as recited in claim 1, wherein the temporary graphic element is animated.

3. A hypermedia browser as recited in claim 1, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area.

4. A hypermedia browser as recited in claim 1, wherein the hypermedia browser presents the temporary graphic element within a temporary window in a windowing operating environment.

5.  A hypermedia browser as recited in claim 1, wherein:

the temporary graphic element is animated; and

the hypermedia browser presents the temporary graphic element within a temporary window in a windowing operating environment.

6.  (Twice Amended) An information processing device comprising:

a processor;

a display;

a hypermedia browser executing on the processor to load and display content in a content viewing area on the display;

wherein the hypermedia browser displays a temporary graphic element over the content viewing area during times when the browser is loading <u>visible</u> content;

wherein the temporary graphic element [occupies] <u>is positioned</u> only <u>over</u> a portion of the content viewing area and only partially obstructs <u>visible</u> content in the content viewing area; and

wherein the temporary graphic element indicates to a user that the browser is loading content.

7.  An information processing device as recited in claim 6, wherein the temporary graphic element is animated.

8.  An information processing device as recited in claim 6, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area.



9. An information processing device as recited in claim 6, wherein the hypermedia browser displays the temporary graphic element within a temporary window in a windowing operating environment.

10. An information processing device as recited in claim 6, wherein:

the temporary graphic element is animated; and

the hypermedia browser displays the temporary graphic element within a temporary window in a windowing operating environment.



11. (Twice Amended) A method of browsing a hyperlink resource, comprising the following steps:

loading content from the hyperlink resource in response to user selection of hyperlinks contained in said content;

displaying the content in a content viewing area;

displaying a temporary graphic element over the content viewing area during the loading step, wherein the temporary graphic element only partially obstructs content in the content viewing area;

wherein the loading, the content displaying, and the temporary graphic element displaying steps occur at least partially concurrently.

12. A method as recited in claim 11, further comprising an additional step of animating the temporary graphic element.

13. A method as recited in claim 11, wherein the displaying step includes displaying the temporary graphic element in a corner of the content viewing area.

14. A method as recited in claim 11, wherein the displaying step includes displaying the temporary graphic element within a temporary window in a windowing operating environment.

15. A method as recited in claim 11, further comprising an additional step of animating the temporary graphic element, wherein the displaying step includes displaying the temporary graphic element within a temporary window in a windowing operating environment:

16. A computer-readable storage medium containing instructions that are executable for performing the steps recited in claim 11.

**New Claims:**

Please add claims 17-24 as indicated below:

 17. A hypermedia browser as recited in claim 1, wherein the browser is configured to display the temporary graphic element over the content viewing area only during times when the browser is loading visible content.



18. A hypermedia browser as recited in claim 1, wherein the temporary graphic element indicates to a user that the browser is loading content.

19. A hypermedia browser as recited in claim 1, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete.

20. An information processing device as recited in claim 6, wherein the temporary graphic element does not contain information content.

21. An information processing device as recited in claim 6, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete.

22. A method as recited in claim 11, wherein the temporary graphic element does not contain information content.

23. A method as recited in claim 11, wherein the temporary graphic element indicates to a user that the loading step is being performed.

24. A method as recited in claim 11, further comprising removing the temporary graphic element once the loading step is complete to indicate to a user that the loading step is complete.

--

## REMARKS

Applicant appreciates the Office's acknowledgement that U.S. Patent No. 5,877,776 to Bates et al. ("Bates") is not a valid prior art reference and the Office's withdrawal of Bates from consideration. Applicant also appreciates the Office's choice to make this most recent Office Action non-final.

All claims have been rejected under §103 as being obvious over U.S. Patent No. 5,760,771 to Blonder et al. ("Blonder") and U.S. Patent No. 5,973,692 to Knowlton et al. ("Knowlton"). The rejections are traversed below.

Applicant respectfully requests reconsideration and allowance of all of the claims of the application. At the time of the Action, claims 1-16 were pending. After this Response, claims 1-24 are pending. No claims are cancelled. New claims 17-24 are added. Claims 1, 6 and 11 are amended.

### Summary of Amendments and New Claims

All of the independent claims are amended. Those are claims 1, 6, and 11. In addition, claims 17-24 are added.

Claims 1 and 6. Applicant changes the terminology in these claims so that it is clear that the graphic element is "over" the content viewing area. For clarification and to make the language consistent, Applicant changes claim 1 to read as follows: "…positioned [within] over the content viewing area…."

Applicant makes a similar change in claim 6: "…temporary graphic element [occupies] is positioned only over a portion of the content viewing area…." Support for this change is found throughout the application, but specifically in Fig. 3 and at page 8, line 11 through page 9, line 7. The use of "over" in the claim language emphasizes that that the graphic element is not part



of the content. Content is displayed in the content viewing area. The graphic element is displayed "...over the content viewing area to only partially obstruct content in the content viewing area...."

Claims 1, 20, and 22. The temporary graphic element is not content. To clarify this point, Applicant amends independent claim 1 and adds dependent claims 20 and 22 (which depend from claims 6 and 11, respectively). In amended claim 1, the following language is added: "...wherein the graphic element does not contain information content...." Similar language is included in new claims 20 and 22. Applicant adds this to clarify that the graphic element of these claims does not contain information content.

Claims 6, 11, and 17. While the content is being loaded, that content is visible to the user. For clarification, Applicant changes the wording of independent claims 6 and 11 and adds dependent claim 17 (which is dependent from claim 1). Amended claim 6 now includes "...when the browser is loading visible content..." and the graphic element "...only partially obstructs visible content...." In claim 11, the following language is added: "...wherein the loading, the content displaying...occur at least partially concurrently...." These changes are made to clarify that the loading content is visible.

Claims 18 and 23. These claims focus on a similar feature. Specifically, the graphic element indicates to a user that content is being loaded. In the previous Response to the Action dated June 23, 1999, Applicant amended claim 6 to add a similar feature. This feature is now incorporated into new claims 18 and 23, which depend from claims 1 and 11, respectively.

Claims 19, 21, and 24. These claims focus on a similar feature related to the disappearance of the graphic element, which indicates to a user that the loading

of the content is complete. This addition is fully supported in the application. Specifically, support can be found on page 8, lines 17-21. Claims 19, 21, and 24 depend from claims 1, 6, and 11, respectively.

Applicant makes these changes and additions to further clarify the claims. These amendments and additions are specifically not done to overcome any known reference, but rather to clarify the claimed language and to place the claims in condition for allowance without affecting the scope of protection of the claims.

### Prior Art Status of References

In this communication or in any prior communication, Applicant does not explicitly or implicitly admit that any reference is prior art. Nothing in this response should be considered an acknowledgement, acceptance, or admission that any reference is considered prior art.

### References

The obviousness rejections rely on two references: Blonder and Knowlton.

#### Blonder

Blonder discloses a service that provides a structured tour of hypertext files. In Fig. 13 and in col. 8, lines 18-42, Blonder describes its "padding" technique. In limited situations where it is determined (or known) that the loading of a page is delayed, Blonder's tour service will display supplementary content pages, known as "padding". In the viewing area, Blonder's tour service displays "predetermined padding material *to keep the user entertained* while the page is being loaded" (Blonder, col. 8, lines 23-26) (emphasis added). Blonder gives the following example of padding:

> For example, padding in an education tour may consist of a discussion of general trends in the cost and financing of tuition. This discussion may consist of graphs and charts accompanied by narration.

Blonder, col. 3, lines 36-41.

### Knowlton

Knowlton describes a method of representing files with graphic icons. In particular, a graphical representation of a file is generated and placed on display screen. This graphical representation is a "graphics icon" which is associated with an entry in a data structure. The entry includes various pieces of information including a link back to the original file so that a user can access the original file from its "graphics icon."

In Knowlton, a display is generated that includes various graphic icons. There is no content being viewed in Knowlton. Only the icons are displayed and the icons are not content. A user may select one of the displayed icons and access its associated content. However, such associated content is not displayed with the icons. More particularly, the icons are not displayed over their associated content.

### Claim Rejections – 35 USC § 103 – Obviousness

All claims have been rejected under §103 as being obvious over Blonder and Knowlton. Applicant respectfully traverses the rejections.

#### Independent Claim 1

The Office states that Blonder shows all of the features of claim 1 except for "limited display area" and "partially obstructed content" (quotes are from the Action, page 3). The Office indicates that Knowlton discloses these features. Applicant disagrees.



The Office equates Blonder's "padding" with Applicant's "...temporary graphic element...." But the "padding" is not equivalent because it does not satisfy the elements of claim 1. This is because the "padding" is content and "...the temporary graphic element does not contain information content...." Blonder (col. 3, lines 34-36) states that the padding "is predetermined content." Blonder's "padding" is not equivalent to the "...graphic element..." because the "padding" is content and the "...graphic element..." is not.

### "Limited Display Area" and "Partially Obstruct Content"

To support its proposition that Knowlton teaches the "limited display area" and the "partially obstruct content" features, the Office cites the Abstract of Knowlton; col. 26, lines 20-64, especially lines 60-64; and col. 42, lines 30-34. However, Applicant submits that Knowlton does not teach either of these features.

Applicant cannot find any language that teaches a "limited display area" in the cited portions or, in fact, in any other portion of Knowlton. Applicant did find several references within Knowlton that generally refer to packing icons on a display. However, none of those references is to a "limited display area." Instead, they appear to refer to any display. Specifically, see col. 41, lines 34-46. Applicant does not find any reference to a "limited display area" in Knowlton.

Indeed, Applicant found where Knowlton specifically refers to a "typical display." In the "Background" section of Knowlton, it discusses the problem that Knowlton is attempting to solve and its related technology. Knowlton expressly refers to the problem of "displaying such graphical representations...on a *typical display*" (col. 2, lines 18-23) (emphasis added).



Likewise, Applicant cannot find any language teaching the "partially obstruct content" feature in the cited portion or in any other portion of Knowlton. The Office may have wanted Applicant to infer the existence of this feature when the Action asks Applicant to notice "how the graphical icon covers the viewing area" (Action, page 3, lines 10-11). Applicant assumes that the Office wants the Applicant to take note of Figs. 2B, 4B-4D, 4F-4M and their associated descriptions.

The Office appears to equate Knowlton's "screen" (as defined at col. 44, lines 20-26) to a "viewing area." Whether this is true or not, Applicant submits that Knowlton does not satisfy the elements of claim 1.

Specifically, claim 1 requires a "...content viewing area..." and not just a "viewing area." The "screen" in Knowlton does not display content. It only displays "graphical icons" and icons are not content. They might indicate a link to content, but icons are not content. See Figs. 2B, 4B-4D, 4F-4M and their associated descriptions (in particular, col. 44, line 20 through col. 46, line 6).

If these issues are still relevant when a next Office Action is issued, Applicant asks the Office to expressly point out precisely where Knowlton teaches the "limited display area" and the "partially obstruct content" features. It would be very helpful if the Office could quote and cite the exact words that teach this. This would assist the Applicant considerably in responding to these issues.

Accordingly, the combination of Blonder and Knowlton would not have suggested the elements defined in claim 1, and this claim should be allowed for this reason.

"An Indicator in the Content Viewing Area" and

Claims 6-10, 18, 19, 21, 23 and 24

To support its proposition that Knowlton teaches "an indicator in the content viewing area", the Office cites col. 2, lines 2-30 and lines 60-65. Applicant submits that Knowlton does not teach this feature.

Applicant believes that Applicant understands the point that the Office was intending to make in the footnote on page 3 of the Action. It appears that the Office is saying that the "graphical icon" of Knowlton is an indicator of its associated file and that the "graphical icon" is "in the content viewing area."

As mentioned above, Knowlton does not have a "content viewing area." Rather, it has a screen that displays icons. But the icons, themselves, are not content.

Although Knowlton's "graphical icon" may indicate a link to some associated content, it does not indicate "...to a user that the browser is loading content...." Claim 6 does not specify that the "graphic element" indicates a file or some other content. Rather, Claim 6 specifies that the "graphic element" indicates "to a user" that the browser "is loading content."

Claims 7-10 include the same language as claim 6 because they are dependent from claim 6. Claims 18, 19, 21, 23, and 24 depend upon claims other than claim 6. They include similar indication-type language. Thus, the same reasoning applies to them as well as to claim 6.

Accordingly, the combination of Blonder and Knowlton would not have suggested the elements defined in claims 6-10, 18, 19, 21, 23 and 24, and these claims should be allowed for this reason.



Claims 6-17 and 20-22

These claims are allowable because none of the cited references discloses a browser that displays "...a temporary graphic element *over* the content viewing area during times when the browser is *loading visible content* ..." (emphasis added). The quoted text is from claim 6, but claim 11 and claim 17 also include similar language. Blonder never suggests a technique or a desire for currently displaying the delayed content and the "padding" in the content viewing area. Since the delayed content is unavailable, it cannot be displayed. If it were available, then Blonder's service would not need to display the "padding." Likewise, Knowlton never suggests a technique or a desire for displaying any visible content of any kind while displaying its "graphical icon."

In addition, Blonder does not suggest displaying its "padding" *over* the delayed content. Knowlton does not provide any teaching or motivation for placing its "graphical icon" *over* visible content.

Claim 17 (dependent from claim 1) includes similar visibility language. For this reason, dependent claim 17 is non-obvious and allowable. Since independent claims 6 and 11 are non-obvious and allowable for the above reason, all of their dependent claims (7-10, 12-16 and 20-22) are also allowable. Accordingly, Applicant asks that the Office allow claims 6-17 and 20-22.

Independent Claim 6

For the most part, the reasoning given above for distinguishing features of Blonder and Knowlton from claim 1 also applies to claim 6. Specifically, claim 6 recites, "...the temporary graphic element [occupies] is positioned only over a

portion of the content viewing area...." Like the discussion in claim 1, neither Blonder nor Knowlton discloses this similar feature of claim 6.

In addition, claim 6 recites that the "...temporary graphic element indicates to a user that the browser is loading visible content...." Blonder's "padding" does not accomplish this function. Rather, it appears that such padding is used to hide the fact that there is a delay in downloading content—not to signal such a delay. Neither Blonder nor Knowlton discloses this similar feature of claim 6. Accordingly, claim 6 should be allowed for this reason.

Independent Claim 11

Claim 11 is a method claim that has distinguishing features that are similar to those of apparatus claims 1 and 6. In addition, Applicant adds the following language to claim 11: "...wherein the loading, the content displaying, and the temporary graphic element displaying steps occur at least partially concurrently...." Nothing in the cited references suggests this. Knowlton never displays its "graphical icon" while displaying content. Likewise, Blonder never displays its "padding" while displaying its delayed content. Accordingly, the combination of Blonder and Knowlton does not include the elements defined in claim 11, and thus claim should be allowed.

Dependent Claims

Dependent claims 2-6, 7-10, 12-16, and 17-24 are allowable because of their dependence from allowable base claims (1, 6, and 11), and for additionally recited features that are not shown by the cited references in the context defined by the base claims. These claims are allowable whether or not their base claims are allowable.

Much of the discussion below regarding the allowablity of the dependent claims was provided in Applicant's Response to the previous Office Action. It does not appear that the Office addressed Applicant's arguments in this most recent Office Action. If the allowability of these dependent claims is an issue when the next communication from the Office is issued, Applicant asks the Office to address these particular arguments.

Claims 2, 5, 7, 10, 12, and 15

Claims 2, 5, 7, 10, 12, and 15 include a feature where the temporary graphic element is animated. The Office states that this feature is obvious because Blonder suggests such animation. However, Blonder does not suggest this. Rather, it appears that Blonder discloses the use of animated *content*. As mentioned previously, the "...graphic element..." does not contain information content..."; therefore, Blonder does not suggest the use of an animated "...graphic element...." Accordingly, claims 2, 5, 7, 10, 12, and 15 should be allowed.

Claims 3, 8, and 13

Claims 3, 8, and 13 recite that the temporary graphic element is displayed "...in a corner of the content viewing area...." In addressing these claims, the Office mentions that using a corner "is a well known feature of Windows windowing [and] graphical icons." Although the Office did cite portions of the references to support this claim, Applicant cannot find any suggestion in the references that establish the obviousness of using a corner of a "...content viewing area..." to display a "...temporary graphics element..." when "...loading content...."

It may or may not be well known to place a graphic element in the corner of a *window* and such a window may include a "...content viewing area...." Regardless whether that is well known or not, Applicant submits that it is not generally known to place a graphic element in the corner of a "...content viewing area..." instead of the corner of the *window*. There is nothing in the cited references to suggest that a corner of a content viewing area should be used for a graphics element such as the one claimed. Accordingly, claims 3, 8, and 13 is allowable and its rejection should be withdrawn.

Claims 4, 5, 9, 10, 14, and 15

Claims 4, 5, 9, 10, 14, and 15 recite that the temporary graphic element is presented "...within a temporary window in a windowing operating environment...." Although the Office has established the achievability of this feature, it has not established any *suggestion or motivation for actually implementing it*. There is no indication in the cited references that anyone has ever considered using a "window" to display a graphics element such as this when content is loading. Accordingly, claims 4, 5, 9, 10, 14, and 15 should be allowed.

Claim 16

The Office states that computer readable storage medium is well known in the art of computers. This may or may not be true. Regardless, claim 16 is allowable because it is dependent from an allowable base claim, claim 11. Accordingly, claim 16 should be allowed.



## Conclusion

All pending claims are in condition for allowance. Applicant respectfully requests reconsideration and prompt issuance of the application. If any issues remain that prevent issuance of this application, the Office is urged to contact the undersigned attorney before issuing a subsequent Action.

Respectfully Submitted,

Dated: 3/23/00       By: _____
                         Kasey C. Christie
                         Reg. No. 40559
                         (509) 324-9256