# Exhibit F

# To

# Joint Claim Chart

#9/B
SA

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Application Serial No. ..............................................................................08/851,877
Filing Date ...........................................................................................5/6/97
Inventorship ..........................................................................................Shell et al.
Applicant.................................................................................... Microsoft Corporation
Group Art Unit ......................................................................................2771
Examiner ......................................................................................... Jung, D.
Attorney's Docket No. .......................................................................... MS1-161US
Title:  Loading Status in a Hypermedia Browser Having a Limited Available
       Display Area

## RESPONSE TO OFFICE ACTION DATED NOVEMBER 26, 1999

To:     Commissioner of Patents and Trademarks
        Washington, D.C. 20231

From:   Kasey C. Christie (Tel. 509-324-9256; Fax 509-323-8979)
        Lee & Hayes, PLLC
        421 W. Riverside Avenue, Suite 500
        Spokane, WA 99201

        This Response is to an Office Action dated November 26, 1999.  At the time
of the Action, claims 1-16 were pending.

## AMENDMENTS

### In the Claims

**Claims pending**

- At time of the Action:  Claims 1-16.

- After this Response:  Claims 1-24.

**Canceled claims**:  None.

**Amended claims**:  Claims 1, 6, and 11.

**New claims**:  17-24.

1

LEE & HAYES, PLLC
0120001142 G:\MS1\161US\MS1-161US r02.doc

**Amended and Unchanged Existing Claims:**

Please amend claims 1, 6, and 11 as indicated below (all currently pending claims are listed for the Office's convenience):

1.      **(Twice Amended)**  A hypermedia browser embodied on a computer-readable medium for execution on an information processing device having a limited display area, wherein the hypermedia browser has a content viewing area and is configured to display a temporary graphic element over the content viewing area during times when the browser is loading content, wherein the temporary graphic element is positioned [within] under the content viewing area to only partially obstruct content in the content viewing area, wherein the temporary graphic element does not contain information content.

2.      A hypermedia browser as recited in claim 1, wherein the temporary graphic element is animated.

3.      A hypermedia browser as recited in claim 1, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area.

4.      A hypermedia browser as recited in claim 1, wherein the hypermedia browser presents the temporary graphic element within a temporary window in a windowing operating environment.

MOTM_WASH1823_0050369

5.    A hypermedia browser as recited in claim 1, wherein:

the temporary graphic element is animated; and

the hypermedia browser presents the temporary graphic element within a temporary window in a windowing operating environment.

6.    **(Twice Amended)**  An information processing device comprising:

a processor;

a display;

a hypermedia browser executing on the processor to load and display content in a content viewing area on the display;

wherein the hypermedia browser displays a temporary graphic element over the content viewing area during times when the browser is loading <u>visible</u> content;

wherein the temporary graphic element [occupies] <u>is positioned</u> only <u>over</u> a portion of the content viewing area and only partially obstructs <u>visible</u> content in the content viewing area; and

wherein the temporary graphic element indicates to a user that the browser is loading content.

7.    An information processing device as recited in claim 6, wherein the temporary graphic element is animated.

8.    An information processing device as recited in claim 6, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area.

MOTM_WASH1823_0050370

100

9.  An information processing device as recited in claim 6, wherein the hypermedia browser displays the temporary graphic element within a temporary window in a windowing operating environment.

10.  An information processing device as recited in claim 6, wherein:

the temporary graphic element is animated; and

the hypermedia browser displays the temporary graphic element within a temporary window in a windowing operating environment.

11.  **(Twice Amended)** A method of browsing a hyperlink resource, comprising the following steps:

loading content from the hyperlink resource in response to user selection of hyperlinks contained in said content;

displaying the content in a content viewing area;

displaying a temporary graphic element over the content viewing area during the loading step, wherein the temporary graphic element only partially obstructs content in the content viewing area;

wherein the loading, the content displaying, and the temporary graphic element displaying steps occur at least partially concurrently.

12.  A method as recited in claim 11, further comprising an additional step of animating the temporary graphic element.

MOTM_WASH1823_0050371

13.    A method as recited in claim 11, wherein the displaying step includes displaying the temporary graphic element in a corner of the content viewing area.

14.    A method as recited in claim 11, wherein the displaying step includes displaying the temporary graphic element within a temporary window in a windowing operating environment.

15.    A method as recited in claim 11, further comprising an additional step of animating the temporary graphic element, wherein the displaying step includes displaying the temporary graphic element within a temporary window in a windowing operating environment:

16.    A computer-readable storage medium containing instructions that are executable for performing the steps recited in claim 11.

**New Claims:**

Please add claims 17-24 as indicated below:

17.    A hypermedia browser as recited in claim 1, wherein the browser is configured to display the temporary graphic element over the content viewing area only during times when the browser is loading visible content.

LEE & HAYES, PLLC

5

0120001142 G:\MSI\161US\MSI-161US h02 doc

MOTM_WASH1823_0050372

18. A hypermedia browser as recited in claim 1, wherein the temporary graphic element indicates to a user that the browser is loading content.

19. A hypermedia browser as recited in claim 1, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete.

20. An information processing device as recited in claim 6, wherein the temporary graphic element does not contain information content.

21. An information processing device as recited in claim 6, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete.

22. A method as recited in claim 11, wherein the temporary graphic element does not contain information content.

23. A method as recited in claim 11, wherein the temporary graphic element indicates to a user that the loading step is being performed.

24. A method as recited in claim 11, further comprising removing the temporary graphic element once the loading step is complete to indicate to a user that the loading step is complete.

--

## REMARKS

Applicant appreciates the Office's acknowledgement that U.S. Patent No. 5,877,776 to Bates et al. ("Bates") is not a valid prior art reference and the Office's withdrawal of Bates from consideration. Applicant also appreciates the Office's choice to make this most recent Office Action non-final.

All claims have been rejected under §103 as being obvious over U.S. Patent No. 5,760,771 to Blonder et al. ("Blonder") and U.S. Patent No. 5,973,692 to Knowlton et al. ("Knowlton"). The rejections are traversed below.

Applicant respectfully requests reconsideration and allowance of all of the claims of the application. At the time of the Action, claims 1-16 were pending. After this Response, claims 1-24 are pending. No claims are cancelled. New claims 17-24 are added. Claims 1, 6 and 11 are amended.

### Summary of Amendments and New Claims

All of the independent claims are amended. Those are claims 1, 6, and 11. In addition, claims 17-24 are added.

Claims 1 and 6. Applicant changes the terminology in these claims so that it is clear that the graphic element is "over" the content viewing area. For clarification and to make the language consistent, Applicant changes claim 1 to read as follows: "...positioned [within] over the content viewing area...."

Applicant makes a similar change in claim 6: "...temporary graphic element [occupies] is positioned only over a portion of the content viewing area...." Support for this change is found throughout the application, but specifically in Fig. 3 and at page 8, line 11 through page 9, line 7. The use of "over" in the claim language emphasizes that that the graphic element is not part

MOTM_WASH1823_0050374

104

of the content.  Content is displayed in the content viewing area.  The graphic element is displayed "...<u>over</u> the content viewing area to only partially obstruct content in the content viewing area...."

Claims 1, 20, and 22.  The temporary graphic element is not content.  To clarify this point, Applicant amends independent claim 1 and adds dependent claims 20 and 22 (which depend from claims 6 and 11, respectively).  In amended claim 1, the following language is added: "...wherein the graphic element does not contain information content...."  Similar language is included in new claims 20 and 22.  Applicant adds this to clarify that the graphic element of these claims does not contain information content.

Claims 6, 11, and 17.  While the content is being loaded, that content is visible to the user.  For clarification, Applicant changes the wording of independent claims 6 and 11 and adds dependent claim 17 (which is dependent from claim 1).  Amended claim 6 now includes "...when the browser is loading <u>visible</u> content..." and the graphic element "...only partially obstructs <u>visible</u> content...."  In claim 11, the following language is added: "...wherein the loading, the content displaying...occur at least partially concurrently...."  These changes are made to clarify that the loading content is visible.

Claims 18 and 23.  These claims focus on a similar feature.  Specifically, the graphic element indicates to a user that content is being loaded.  In the previous Response to the Action dated June 23, 1999, Applicant amended claim 6 to add a similar feature.  This feature is now incorporated into new claims 18 and 23, which depend from claims 1 and 11, respectively.

Claims 19, 21, and 24.  These claims focus on a similar feature related to the disappearance of the graphic element, which indicates to a user that the loading

MOTM_WASH1823_0050375

of the content is complete. This addition is fully supported in the application. Specifically, support can be found on page 8, lines 17-21. Claims 19, 21, and 24 depend from claims 1, 6, and 11, respectively.

Applicant makes these changes and additions to further clarify the claims. These amendments and additions are specifically not done to overcome any known reference, but rather to clarify the claimed language and to place the claims in condition for allowance without affecting the scope of protection of the claims.

## Prior Art Status of References

In this communication or in any prior communication, Applicant does not explicitly or implicitly admit that any reference is prior art. Nothing in this response should be considered an acknowledgement, acceptance, or admission that any reference is considered prior art.

## References

The obviousness rejections rely on two references: Blonder and Knowlton.

### Blonder

Blonder discloses a service that provides a structured tour of hypertext files. In Fig. 13 and in col. 8, lines 18-42, Blonder describes its "padding" technique. In limited situations where it is determined (or known) that the loading of a page is delayed, Blonder's tour service will display supplementary content pages, known as "padding". In the viewing area, Blonder's tour service displays "predetermined padding material *to keep the user entertained* while the page is being loaded" (Blonder, col. 8, lines 23-26) (emphasis added). Blonder gives the following example of padding:

106

For example, padding in an education tour may consist of a discussion of general trends in the cost and financing of tuition. This discussion may consist of graphs and charts accompanied by narration.

Blonder, col. 3, lines 36-41.

**Knowlton**

Knowlton describes a method of representing files with graphic icons. In particular, a graphical representation of a file is generated and placed on display screen. This graphical representation is a "graphics icon" which is associated with an entry in a data structure. The entry includes various pieces of information including a link back to the original file so that a user can access the original file from its "graphics icon."

In Knowlton, a display is generated that includes various graphic icons. There is no content being viewed in Knowlton. Only the icons are displayed and the icons are not content. A user may select one of the displayed icons and access its associated content. However, such associated content is not displayed with the icons. More particularly, the icons are not displayed over their associated content.

**Claim Rejections – 35 USC § 103 – Obviousness**

All claims have been rejected under §103 as being obvious over Blonder and Knowlton. Applicant respectfully traverses the rejections.

**Independent Claim 1**

The Office states that Blonder shows all of the features of claim 1 except for "limited display area" and "partially obstructed content" (quotes are from the Action, page 3). The Office indicates that Knowlton discloses these features. Applicant disagrees.

MOTM_WASH1823_0050377

The Office equates Blonder's "padding" with Applicant's "...temporary graphic element...." But the "padding" is not equivalent because it does not satisfy the elements of claim 1. This is because the "padding" is content and "...the temporary graphic element does not contain information content...." Blonder (col. 3, lines 34-36) states that the padding "is predetermined content." Blonder's "padding" is not equivalent to the "...graphic element..." because the "padding" is content and the "...graphic element..." is not.

#### "Limited Display Area" and "Partially Obstruct Content"

To support its proposition that Knowlton teaches the "limited display area" and the "partially obstruct content" features, the Office cites the Abstract of Knowlton; col. 26, lines 20-64, especially lines 60-64; and col. 42, lines 30-34. However, Applicant submits that Knowlton does not teach either of these features.

Applicant cannot find any language that teaches a "limited display area" in the cited portions or, in fact, in any other portion of Knowlton. Applicant did find several references within Knowlton that generally refer to packing icons on a display. However, none of those references is to a "limited display area." Instead, they appear to refer to any display. Specifically, see col. 41, lines 34-46. Applicant does not find any reference to a "limited display area" in Knowlton.

Indeed, Applicant found where Knowlton specifically refers to a "typical display." In the "Background" section of Knowlton, it discusses the problem that Knowlton is attempting to solve and its related technology. Knowlton expressly refers to the problem of "displaying such graphical representations...on a *typical display*" (col. 2, lines 18-23) (emphasis added).

MOTM_WASH1823_0050378

Likewise, Applicant cannot find any language teaching the "partially obstruct content" feature in the cited portion or in any other portion of Knowlton. The Office may have wanted Applicant to infer the existence of this feature when the Action asks Applicant to notice "how the graphical icon covers the viewing area" (Action, page 3, lines 10-11). Applicant assumes that the Office wants the Applicant to take note of Figs. 2B, 4B-4D, 4F-4M and their associated descriptions.

The Office appears to equate Knowlton's "screen" (as defined at col. 44, lines 20-26) to a "viewing area." Whether this is true or not, Applicant submits that Knowlton does not satisfy the elements of claim 1.

Specifically, claim 1 requires a "...content viewing area..." and not just a "viewing area." The "screen" in Knowlton does not display content. It only displays "graphical icons" and icons are not content. They might indicate a link to content, but icons are not content. See Figs. 2B, 4B-4D, 4F-4M and their associated descriptions (in particular, col. 44, line 20 through col. 46, line 6).

If these issues are still relevant when a next Office Action is issued, Applicant asks the Office to expressly point out precisely where Knowlton teaches the "limited display area" and the "partially obstruct content" features. It would be very helpful if the Office could quote and cite the exact words that teach this. This would assist the Applicant considerably in responding to these issues.

Accordingly, the combination of Blonder and Knowlton would not have suggested the elements defined in claim 1, and this claim should be allowed for this reason.

MOTM_WASH1823_0050379

"An Indicator in the Content Viewing Area" and

Claims 6-10, 18, 19, 21, 23 and 24

To support its proposition that Knowlton teaches "an indicator in the content viewing area", the Office cites col. 2, lines 2-30 and lines 60-65. Applicant submits that Knowlton does not teach this feature.

Applicant believes that Applicant understands the point that the Office was intending to make in the footnote on page 3 of the Action.  It appears that the Office is saying that the "graphical icon" of Knowlton is an indicator of its associated file and that the "graphical icon" is "in the content viewing area."

As mentioned above, Knowlton does not have a "content viewing area." Rather, it has a screen that displays icons.  But the icons, themselves, are not content.

Although Knowlton's "graphical icon" may indicate a link to some associated content, it does not indicate "...to a user that the browser is loading content...." Claim 6 does not specify that the "graphic element" indicates a file or some other content.  Rather, Claim 6 specifies that the "graphic element" indicates "to a user" that the browser "is loading content."

Claims 7-10 include the same language as claim 6 because they are dependent from claim 6.  Claims 18, 19, 21, 23, and 24 depend upon claims other than claim 6.  They include similar indication-type language.  Thus, the same reasoning applies to them as well as to claim 6.

Accordingly, the combination of Blonder and Knowlton would not have suggested the elements defined in claims 6-10, 18, 19, 21, 23 and 24, and these claims should be allowed for this reason.

MOTM_WASH1823_0050380

110

<u>Claims 6-17 and 20-22</u>

These claims are allowable because none of the cited references discloses a browser that displays "…a temporary graphic element *over* the content viewing area during times when the browser is *loading <u>visible</u> content* …" (emphasis added). The quoted text is from claim 6, but claim 11 and claim 17 also include similar language. Blonder never suggests a technique or a desire for currently displaying the delayed content and the "padding" in the content viewing area. Since the delayed content is unavailable, it cannot be displayed. If it were available, then Blonder's service would not need to display the "padding." Likewise, Knowlton never suggests a technique or a desire for displaying any visible content of any kind while displaying its "graphical icon."

In addition, Blonder does not suggest displaying its "padding" *over* the delayed content. Knowlton does not provide any teaching or motivation for placing its "graphical icon" *over* visible content.

Claim 17 (dependent from claim 1) includes similar visibility language. For this reason, dependent claim 17 is non-obvious and allowable. Since independent claims 6 and 11 are non-obvious and allowable for the above reason, all of their dependent claims (7-10, 12-16 and 20-22) are also allowable. Accordingly, Applicant asks that the Office allow claims 6-17 and 20-22.

<u>Independent Claim 6</u>

For the most part, the reasoning given above for distinguishing features of Blonder and Knowlton from claim 1 also applies to claim 6. Specifically, claim 6 recites, "…the temporary graphic element [occupies] <u>is positioned</u> only <u>over</u> a

MOTM_WASH1823_0050381

portion of the content viewing area...." Like the discussion in claim 1, neither Blonder nor Knowlton discloses this similar feature of claim 6.

In addition, claim 6 recites that the "...temporary graphic element indicates to a user that the browser is loading visible content...." Blonder's "padding" does not accomplish this function. Rather, it appears that such padding is used to hide the fact that there is a delay in downloading content—not to signal such a delay. Neither Blonder nor Knowlton discloses this similar feature of claim 6. Accordingly, claim 6 should be allowed for this reason.

Independent Claim 11

Claim 11 is a method claim that has distinguishing features that are similar to those of apparatus claims 1 and 6. In addition, Applicant adds the following language to claim 11: "...wherein the loading, the content displaying, and the temporary graphic element displaying steps occur at least partially concurrently...." Nothing in the cited references suggests this. Knowlton never displays its "graphical icon" while displaying content. Likewise, Blonder never displays its "padding" while displaying its delayed content. Accordingly, the combination of Blonder and Knowlton does not include the elements defined in claim 11, and thus claim should be allowed.

Dependent Claims

Dependent claims 2-6, 7-10, 12-16, and 17-24 are allowable because of their dependence from allowable base claims (1, 6, and 11), and for additionally recited features that are not shown by the cited references in the context defined by the base claims. These claims are allowable whether or not their base claims are allowable.

MOTM_WASH1823_0050382

Much of the discussion below regarding the allowablity of the dependent claims was provided in Applicant's Response to the previous Office Action. It does not appear that the Office addressed Applicant's arguments in this most recent Office Action. If the allowability of these dependent claims is an issue when the next communication from the Office is issued, Applicant asks the Office to address these particular arguments.

### Claims 2, 5, 7, 10, 12, and 15

Claims 2, 5, 7, 10, 12, and 15 include a feature where the temporary graphic element is animated. The Office states that this feature is obvious because Blonder suggests such animation. However, Blonder does not suggest this. Rather, it appears that Blonder discloses the use of animated *content*. As mentioned previously, the "...graphic element..." does not contain information content..."; therefore, Blonder does <u>not</u> suggest the use of an animated "...graphic element...." Accordingly, claims 2, 5, 7, 10, 12, and 15 should be allowed.

### Claims 3, 8, and 13

Claims 3, 8, and 13 recite that the temporary graphic element is displayed "...in a corner of the content viewing area...." In addressing these claims, the Office mentions that using a corner "is a well known feature of Windows windowing [and] graphical icons." Although the Office did cite portions of the references to support this claim, Applicant cannot find any suggestion in the references that establish the obviousness of using a corner of a "...content viewing area..." to display a "...temporary graphics element..." when "...loading content...."

113

MOTM_WASH1823_0050383

It may or may not be well known to place a graphic element in the corner of a *window* and such a window may include a "...content viewing area...." Regardless whether that is well known or not, Applicant submits that it is <u>not</u> generally known to place a graphic element in the corner of a "...content viewing area..." instead of the corner of the *window*. There is nothing in the cited references to suggest that a corner of a content viewing area should be used for a graphics element such as the one claimed. Accordingly, claims 3, 8, and 13 is allowable and its rejection should be withdrawn.

<u>Claims 4, 5, 9, 10, 14, and 15</u>

Claims 4, 5, 9, 10, 14, and 15 recite that the temporary graphic element is presented "...within a temporary window in a windowing operating environment...." Although the Office has established the achievability of this feature, it has not established any *suggestion or motivation for actually implementing it*. There is no indication in the cited references that anyone has ever considered using a "window" to display a graphics element such as this when content is loading. Accordingly, claims 4, 5, 9, 10, 14, and 15 should be allowed.

<u>Claim 16</u>

The Office states that computer readable storage medium is well known in the art of computers. This may or may not be true. Regardless, claim 16 is allowable because it is dependent from an allowable base claim, claim 11. Accordingly, claim 16 should be allowed.

MOTM_WASH1823_0050384

## Conclusion

All pending claims are in condition for allowance. Applicant respectfully requests reconsideration and prompt issuance of the application. If any issues remain that prevent issuance of this application, the Office is urged to contact the undersigned attorney before issuing a subsequent Action.

Respectfully Submitted,

Dated: 3/23/00          By: _____
                            Kasey C. Christie
                            Reg. No. 40559
                            (509) 324-9256

LEE & HAYES, PLLC                    18                    0120001142 G:\MS1\161US\MS1-161US.m02.doc

MOTM_WASH1823_0050385



**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

Priority Application Serial No. .................................................08/851,877
Priority Filing Date ..........................................................5/6/97
Inventorship ...............................................................Shell et al.
Applicant .............................................................. Microsoft Corporation
Priority Group Art Unit ........................................................2771
Priority Examiner ...........................................................Jung, D.
Attorney's Docket No. .......................................................... MSI-161US
Title:  Loading Status in a Hypermedia Browser Having a Limited Available Display
        Area

<u>**PRELIMINARY AMENDMENT**</u>

To:        Commissioner of Patents and Trademarks,
           Washington, D.C. 20231

From:      Kasey C. Christie (Tel. 509-324-9256 x32; Fax 509-323-8979)
           Lee & Hayes, PLLC
           421 W. Riverside Avenue, Suite 500
           Spokane, WA 99201

<u>**In the Claims**</u>

   **Claims pending**

   • At time of the Action:  Claims 1-24.

   • After this Response:  Claims 1-30.

   **Canceled claims**:  None.

   **Amended claims**:  Claims 1, 6, 11, 20, and 22.

   **New claims**:  25-30.

LEE & HAYES, PLLC                          1                    0217001513 G \MSTI161US\MS1-161US.M01.doc

MOTM_WASH1823_0050401

**Amended and Unchanged Existing Claims:**

Please amend claims 1, 6, 11, 20, and 22 as indicated below (all currently pending claims are listed for the Office's convenience):

1.     **(Thrice Amended)** A hypermedia browser embodied on a computer-readable medium for execution on an information processing device having a limited display area, wherein the hypermedia browser has a content viewing area <u>for viewing content</u> and is configured to display a temporary graphic element over the content viewing area during times when the browser is loading content, wherein the temporary graphic element is positioned over the content viewing area to [only partially] obstruct <u>only part of the</u> content in the content viewing area, wherein the temporary graphic element [does not contain information] <u>is not</u> content.

2.     A hypermedia browser as recited in claim 1, wherein the temporary graphic element is animated.

3.     A hypermedia browser as recited in claim 1, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area.

4.     A hypermedia browser as recited in claim 1, wherein the hypermedia browser presents the temporary **graphic** element within a temporary window in a windowing operating environment.

LEE & HAYES, PLLC                                    2          0717001513 G:\MS1\161US\MS1-161US.M03.doc

MOTM_WASH1823_0050402

5.     A hypermedia browser as recited in claim 1, wherein:

the temporary graphic element is animated; and

the hypermedia browser presents the temporary graphic element within a temporary window in a windowing operating environment.

6.     **(Thrice Amended)** An information processing device comprising:

a processor;

a display;

a hypermedia browser executing on the processor to load and display content in a content viewing area on the display;

wherein the hypermedia browser displays a temporary graphic element over the content viewing area during times when the browser is loading visible content;

wherein the temporary graphic element is positioned only over a portion of the content viewing area and [only partially] obstructs only part of the visible content in the content viewing area; and

wherein the temporary graphic element indicates to a user that the browser is loading content.

7.     An information processing device as recited in claim 6, wherein the temporary graphic element is animated.

8.     An information processing device as recited in claim 6, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area.

LEE & HAYES, PLLC                                    3                    0717001313 G:\MSI\16\US\MSI-161US.M03.doc

MOTM_WASH1823_0050403

9. An information processing device as recited in claim 6, wherein the hypermedia browser displays the temporary graphic element within a temporary window in a windowing operating environment.

10. An information processing device as recited in claim 6, wherein:

the temporary graphic element is animated; and

the hypermedia browser displays the temporary graphic element within a temporary window in a windowing operating environment.

~~11.~~ **(Thrice Amended)** A method of browsing a hyperlink resource, comprising the following steps:

loading content from the hyperlink resource in response to user selection of hyperlinks contained in said content;

displaying the content in a content viewing area;

displaying a temporary graphic element over the content viewing area during the loading step, wherein the temporary graphic element [only partially] obstructs only part of the content in the content viewing area;

wherein the loading, the content displaying, and the temporary graphic element displaying steps occur at least partially concurrently.

12. A method as recited in claim 11, further comprising an additional step of animating the temporary graphic element.

MOTM_WASH1823_0050404

119

13.   A method as recited in claim 11, wherein the displaying step includes displaying the temporary graphic element in a corner of the content viewing area.

14.   A method as recited in claim 11, wherein the displaying step includes displaying the temporary graphic element within a temporary window in a windowing operating environment.

15.   A method as recited in claim 11, further comprising an additional step of animating the temporary graphic element, wherein the displaying step includes displaying the temporary graphic element within a temporary window in a windowing operating environment.

16.   A computer-readable storage medium containing instructions that are executable for performing the steps recited in claim 11.

17.   A hypermedia browser as recited in claim 1, wherein the browser is configured to display the temporary graphic element over the content viewing area only during times when the browser is loading visible content.

18.   A hypermedia browser as recited in claim 1, wherein the temporary graphic element indicates to a user that the browser is loading content.

LEE & HAYES, PLLC                                    5                    0717001513 G:\MSI\161US\MSI-161US.M03.doc

MOTM_WASH1823_0050405

19.   A hypermedia browser as recited in claim 1, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete.

20.   (Amended)   An information processing device as recited in claim 6, wherein the temporary graphic element [does not contain information] is not content.

21.   An information processing device as recited in claim 6, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete.

22.   (Amended)   A method as recited in claim 11, wherein the temporary graphic element [does not contain information] is not content.

23.   A method as recited in claim 11, wherein the temporary graphic element indicates to a user that the loading step is being performed.

24.   A method as recited in claim 11, further comprising removing the temporary graphic element once the loading step is complete to indicate to a user that the loading step is complete.

121

**New Claims:**

Please add claims 25-30 as indicated below:

---

25. A hypermedia browser as recited in claim 1, wherein the temporary graphic element conveys status information of the browser.

26. A method of indicating a content "load status" of a hypermedia browser having a content viewing area for viewing content, the method comprising:

displaying loaded content within the content viewing area of a screen of a hypermedia browser, the screen is without a "load status" graphic element, wherein a "load status" graphic element indicates a current content load status of the hypermedia browser;

receiving an instruction to load new content into the content viewing area;

loading such new content into the content viewing area; and

while loading, displaying a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area.

27. A method as recited in claim 26 further comprising, upon completion of the loading, removing the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed.

MOTM_WASH1823_0050407

28.     A computer-readable    medium    having    computer-executable instructions that, when executed by a computer, perform a method of indicating a content "load status" of a hypermedia browser having a content viewing area for viewing content, the method comprising:

displaying loaded content within the content viewing area of a screen of a hypermedia browser, the screen is without a "load status" graphic element, wherein a "load status" graphic element indicates a current content load status of the hypermedia browser;

receiving an instruction to load new content into the content viewing area;

loading such new content into the content viewing area; and

while loading, displaying a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area.

29.     A computer-readable medium as recited in claim 28 further having additional computer-executable instructions that perform a method comprising, upon completion of the loading, removing the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed.

MOTM_WASH1823_0050408

30.     An information processing device comprising:

a processor;

a display;

a hypermedia browser executing on the processor to load and display content in a content viewing area on the display;

wherein the hypermedia browser is configured to operate in a content-loading mode and a content-loaded mode;

in the content-loaded mode, the hypermedia browser displays loaded content in the content viewing area and no "load status" graphic element is displayed, wherein absence of such "load status" graphic element indicates that the browser is in the content-loaded mode;

in the content-loading mode, the hypermedia browser loads content, displays such content in the content viewing area as it loads, and displays a "load status" graphic element over the content view area obstructing part of the content displayed in the content viewing area, wherein presence of such "load status" graphic element indicates that the browser is in the content-loading mode.



MOTM_WASH1823_0050409

124

## REMARKS

References herein to the Office Action are to the last Office Action, dated 5/9/2000, of U.S. Patent Application Serial No.08/851,877, filed 5/6/97. References herein to the previous Office Action are to the Action immediately before the last Action for the same patent application (Serial No.08/851,877, filed 5/6/97). That previous Action was dated 11/26/1999.

The Office rejects all claims under §103 as being unpatentable over U.S. Patent No. 5,760,771 to Blonder et al. ("Blonder") and U.S. Patent No. 5,973,692 to Knowlton et al. ("Knowlton"). Applicant respectfully traverses the rejections.

Applicant respectfully requests reconsideration and allowance of all of the pending claims of the application. At the time of the Action, claims 1-24 were pending. After this Preliminary Response, claims 1-30 are pending. Claims 1, 6, 11, 20, and 22 are amended. New claims 25-30 are added.

### Prior Art Status of References

Applicant does not explicitly or implicitly admit that any reference is prior art. Nothing in this response should be considered an acknowledgement, acceptance, or admission that any reference is considered prior art. Such references might be or might not be prior art, but Applicant make take no position regarding a references' prior art status.

### Permission to Re-interpret All Pending Claims

In a paragraph (p. 9, lines 4-7) in Applicant's response to the previous Action, Applicant explained that changes to the claims are intended to clarify the invention rather than to overcome cited references. In a short informal telephonic

MOTM_WASH1823_0050410

1  discussion on July 3, 2000, the Examiner explained his interpretation of that

2  paragraph to Kasey Christie, an attorney for Applicant.

3      The Examiner explained that he believed that Applicant's referenced

4  paragraph did not grant the Office permission to re-interpret the pending claims.

5  That was not Applicant's intent.

6      To clarify, the Applicant expressly grants permission to the Office to re-

7  interpret all pending claims of this application.

8  **Incorporation of Response to the Last Action**

9

10     Herein, Applicant expressly incorporates Applicant's remarks on pages 9-

11  17 of the response to the previous Action.  Since, in the last Action, the Office did

12  not consider the substance of Applicant's response to the previous Action,

13  Applicant reintroduces them here for reconsideration.

14  **Claim Rejections – 35 USC § 103 – Obviousness**

15     The Office rejects all pending claims under §103 as being obvious over

16  Blonder and Knowlton.  Applicant respectfully traverses the rejections.

17     The remarks of the response to the previous Action explain some of the

18  reasons why the claims are not obvious based upon a combination of Blonder and

19  Knowlton.  Those remarks are incorporated into this document.

20     The combination of Blonder and Knowlton do not show all of the claimed

21  elements of claims 1-30.  Each claim is allowable because the combination of the

22  cited references does not include all of the elements of that claim.

23     In addition, Applicant submits that there is no objective basis in the cited

24  references for combining or modifying them.  As the Office knows, to support a

25

MOTM_WASH1823_0050411

conclusion of obviousness, there must be something in the references (as a whole) that suggests the desirability, and thus the obviousness of making the combination. *Uniroyal v. Rudkin-Wiley*, 5 USPQ2d 1434, 1438 (Fed. Cir. 1988).   Furthermore, the teachings of the references can be combined only if there is some suggestion or incentive in the cited references to do so.   *In re Fine*, 5 USPQ2d 1596, 1599 (Fed. Cir. 1988).

The Action does not point to any teaching, incentive, or suggestion in the cited references that supports the given combination or the given modification of the combinations.   Thus, Applicant submits that the rejection is unfounded.   If the cited references include such a teaching or suggestion, then Applicant submits that the Office has not specifically pointed it out.

Furthermore, Applicant has added new claims and amended existing claims that further clarify the invention.   Applicant submits that the new claims and the re-wording of existing claims will aid the Office in better understanding the scope of protection that the Applicant seeks.

With these clarifications, Applicant submits that all of the pending claims in a condition for allowance.   Applicant asks the Office with withdraw its rejection and allow all pending claims.

MOTM_WASH1823_0050412

127

## Conclusion

All pending claims are in condition for allowance. Applicant respectfully requests prompt issuance of the subject application. If any issues remain that prevent issuance of this application, the Office is urged to contact the undersigned attorney before issuing a subsequent Action.

Respectfully Submitted,

Date: 7/17/2000

By: _Kasey C. Christie_
Kasey C. Christie
Reg. No. 40559
509-324-9256 x32
kasey@leehayes.com

LEE & HAYES, PLLC

13

0717001513 G:\MSI\161US\MSI-161US.M03.doc

MOTM_WASH1823_0050413

Application Serial No. ....................................................................... 08/851,877
Filing Date ..................................................................................... 5/6/97
Inventorship ................................................................................ Shell et al.
Applicant .......................................................................... Microsoft Corporation
Group Art Unit ..................................................................................... 2771
Examiner ................................................................................ Jung, D.
Attorney's Docket No. ............................................................. MS1-161US
Title:  Loading Status in a Hypermedia Browser Having a Limited Available
       Display Area

## RESPONSE TO OFFICE ACTION DATED SEPTEMBER 11, 2000

RECEIVED

DEC 0 8 2000

Technology Center 210(

To:      Commissioner of Patents and Trademarks,
         Washington, D.C. 20231

From:    Kasey C. Christie (Tel. 509-324-9256 x32; Fax 509-323-8979)
         Lee & Hayes, PLLC
         421 W. Riverside Avenue, Suite 500
         Spokane, WA 99201

### In the Claims

   **Claims pending**

   • At time of the Action:  Claims 1-30.

   • After this Response:  Claims 1-30.

   **Canceled claims:**  None.

   **Amended claims:**  Claim 26.

   **New claims:**  None.

MOTM_WASH1823_0050424

**Amended and Unchanged Existing Claims:**

Please amend claim 26 as indicated below (all currently pending claims are listed for the Office's convenience):

1.     A hypermedia browser embodied on a computer-readable medium for execution on an information processing device having a limited display area, wherein the hypermedia browser has a content viewing area for viewing content and is configured to display a temporary graphic element over the content viewing area during times when the browser is loading content, wherein the temporary graphic element is positioned over the content viewing area to obstruct only part of the content in the content viewing area, wherein the temporary graphic element is not content.

2.     A hypermedia browser as recited in claim 1, wherein the temporary graphic element is animated.

3.     A hypermedia browser as recited in claim 1, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area.

4.     A hypermedia browser as recited in claim 1, wherein the hypermedia browser presents the temporary graphic element within a temporary window in a windowing operating environment.

MOTM_WASH1823_0050425

130

5.     A hypermedia browser as recited in claim 1, wherein:

the temporary graphic element is animated; and

the hypermedia browser presents the temporary graphic element within a temporary window in a windowing operating environment.

6.     An information processing device comprising:

a processor;

a display;

a hypermedia browser executing on the processor to load and display content in a content viewing area on the display;

wherein the hypermedia browser displays a temporary graphic element over the content viewing area during times when the browser is loading visible content;

wherein the temporary graphic element is positioned only over a portion of the content viewing area and obstructs only part of the visible content in the content viewing area; and

wherein the temporary graphic element indicates to a user that the browser is loading content.

7.     An information processing device as recited in claim 6, wherein the temporary graphic element is animated.

8.     An information processing device as recited in claim 6, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area.

131

MOTM_WASH1823_0050426

9.      An information processing device as recited in claim 6, wherein the hypermedia browser displays the temporary graphic element within a temporary window in a windowing operating environment.

10.     An information processing device as recited in claim 6, wherein:

the temporary graphic element is animated; and

the hypermedia browser displays the temporary graphic element within a temporary window in a windowing operating environment.

11.     A method of browsing a hyperlink resource, comprising the following steps:

loading content from the hyperlink resource in response to user selection of hyperlinks contained in said content;

displaying the content in a content viewing area;

displaying a temporary graphic element over the content viewing area during the loading step, wherein the temporary graphic element obstructs only part of the content in the content viewing area;

wherein the loading, the content displaying, and the temporary graphic element displaying steps occur at least partially concurrently.

12.     A method as recited in claim 11, further comprising an additional step of animating the temporary graphic element.

MOTM_WASH1823_0050427

132

**13.** A method as recited in claim 11, wherein the displaying step includes displaying the temporary graphic element in a corner of the content viewing area.

**14.** A method as recited in claim 11, wherein the displaying step includes displaying the temporary graphic element within a temporary window in a windowing operating environment.

**15.** A method as recited in claim 11, further comprising an additional step of animating the temporary graphic element, wherein the displaying step includes displaying the temporary graphic element within a temporary window in a windowing operating environment.

**16.** A computer-readable storage medium containing instructions that are executable for performing the steps recited in claim 11.

**17.** A hypermedia browser as recited in claim 1, wherein the browser is configured to display the temporary graphic element over the content viewing area only during times when the browser is loading visible content.

**18.** A hypermedia browser as recited in claim 1, wherein the temporary graphic element indicates to a user that the browser is loading content.

MOTM_WASH1823_0050428

**19.** A hypermedia browser as recited in claim 1, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete.

**20.** An information processing device as recited in claim 6, wherein the temporary graphic element is not content.

**21.** An information processing device as recited in claim 6, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete.

**22.** A method as recited in claim 11, wherein the temporary graphic element is not content.

**23.** A method as recited in claim 11, wherein the temporary graphic element indicates to a user that the loading step is being performed.

**24.** A method as recited in claim 11, further comprising removing the temporary graphic element once the loading step is complete to indicate to a user that the loading step is complete.

**25.** A hypermedia browser as recited in claim 1, wherein the temporary graphic element conveys status information of the browser.

MOTM_WASH1823_0050429

134

26.  **(Amended)**  A method of indicating a content "load status" of a hypermedia browser having a content viewing area for viewing content, the method comprising:

displaying loaded content within the content viewing area of a screen of a hypermedia browser, the screen [is] <u>being</u> without a "load status" graphic element, wherein a "load status" graphic element indicates a current content load status of the hypermedia browser;

receiving an instruction to load new content into the content viewing area;

loading such new content into the content viewing area; and

while loading, displaying a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area.

27.  A method as recited in claim 26 further comprising, upon completion of the loading, removing the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed.

MOTM_WASH1823_0050430

135

28.   A   computer-readable   medium   having   computer-executable instructions that, when executed by a computer, perform a method of indicating a content "load status" of a hypermedia browser having a content viewing area for viewing content, the method comprising:

displaying loaded content within the content viewing area of a screen of a hypermedia browser, the screen is without a "load status" graphic element, wherein a "load status" graphic element indicates a current content load status of the hypermedia browser;

receiving an instruction to load new content into the content viewing area;

loading such new content into the content viewing area; and

while loading, displaying a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area.

29.   A computer-readable medium as recited in claim 28 further having additional computer-executable instructions that perform a method comprising, upon completion of the loading, removing the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed.

MOTM_WASH1823_0050431

30.    An information processing device comprising:

a processor;

a display;

a hypermedia browser executing on the processor to load and display content in a content viewing area on the display;

wherein the hypermedia browser is configured to operate in a content-loading mode and a content-loaded mode;

in the content-loaded mode, the hypermedia browser displays loaded content in the content viewing area and no "load status" graphic element is displayed, wherein absence of such "load status" graphic element indicates that the browser is in the content-loaded mode;

in the content-loading mode, the hypermedia browser loads content, displays such content in the content viewing area as it loads, and displays a "load status" graphic element over the content view area obstructing part of the content displayed in the content viewing area, wherein presence of such "load status" graphic element indicates that the browser is in the content-loading mode.

137

MOTM_WASH1823_0050432

### REMARKS

References herein to the Office Action (or simply the Action) are to the last Office Action, dated September 11, 2000, of U.S. Patent Application Serial No.08/851,877, filed 5/6/97.

Applicant respectfully requests reconsideration and allowance of all of the pending claims of the application.   At the time of the Action, claims 1-30 were pending. After this response, claims 1-30 are still pending.   Claim 26 is amended. No new claim is added.

Applicant expressly grants permission to the Office to re-interpret all pending claims of this application.

### Prior Art Status of References

Applicant does not explicitly or implicitly admit that any reference is prior art. Nothing in this communication should be considered an acknowledgement, acceptance, or admission that any reference is considered prior art.

### Claim Rejections – 35 USC § 103 -- Obviousness

The Office rejects all claims under §103(a) as being unpatentable over U.S. Patent No. 5,760,771 to Blonder et al. ("Blonder"), U.S. Patent No. 5,973,692 to Knowlton et al. ("Knowlton"), U.S. Patent No. 5,983,005 to Monteiro et al. ("Monteiro"), and U.S. Patent No. 6,101,510 to Stone et al. ("Stone").  Applicant respectfully traverses the rejections.

#### *Prima facie* case is not established

Applicant submits that the Office has failed to establish its *prima facie* case that claims 1-30 are unpatentable because they are obvious over a combination of

MOTM_WASH1823_0050433

cited references.  Applicant submits that no combination of the cited references produces combinations having all of the elements and features of claims 1-30.

Although some claims are worded differently from others (and may have different claimed elements and features), claims 1-30 recite a common core concept that does not appear in any of the cited references.  The core concept is a non-content graphic element appearing over a content area that is indicative of present condition where content is being loaded into the content area.

Again, Applicant qualifies the statement of the core concept by noting that each claim is to read and interpreted on its own. The claims of this application may approach this core concept from different angles and color it with different hues.

For instance, claim 1 recites its view of the core concept this way: "...display a temporary graphic element over the content viewing area during times when the browser is loading content, wherein the temporary graphic element is positioned over the content viewing area to obstruct only part of the content in the content viewing area, wherein the temporary graphic element is not content."  In this case, the display of the non-content graphic element coincides with the loading of content.  Claim 18, which is dependent upon claim 1, further elaborates that the display of the non-content graphic element is indicative of the browser "...loading content."

In another instance, claim 26 recites its view of the core concept this way: "...wherein a 'load status' graphic element indicates a current content load status of the hypermedia browser..." and "...loading...new content into the content viewing area; and while loading, displaying a 'load status' graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area..."

MOTM_WASH1823_0050434

In previous Actions, the Office compares Blonder's content elements to non-content elements of the claims and Knowlton non-content elements to content elements of the claims. Therefore, Applicant submits that an agreed understanding of the term "content" will further our mutual goal, which is speedy completion of prosecution of this application. Applicant submits that those who are skilled in the art of hypermedia browsers and related fields intuitively understand the concept of "content."

Before the submission of Applicant's Preliminary Amendment dated July 17, 2000, the Examiner and an attorney for the Applicant, Kasey Christie, discussed the meaning of "content" over the telephone. As a result of that discussion, the Office found and cited Monteiro—in particular, Fig. 19 of Monteiro. This figure illustrates traditional "pull-down" menus in a windowing environment, which may be displayed over the content of a hypermedia browser. Traditional "pull-down" menus are not content.

Applicant respectfully submits that the Office's reference to Fig. 19 of Monteiro in the Action seems to indicate an agreement regarding the meaning of "content" within the context of Applicant's application. However, instead of withdrawing Blonder and Knowlton, the Office maintains the same rejections based upon Blonder and Knowlton, but the Office now combines Stone and Monteiro with them.

Applicant submits that the cited references do not disclose what the Office says that they do. Applicant submits that the Office equates content in cited references to claimed non-content. In addition, Applicant submits that the Office equates non-content in cited references to claimed content.

MOTM_WASH1823_0050435

1  Furthermore, the Office supports rejections of claims 17-24 based upon

2  their similarity of scope with rejected claims 1-16. However, Applicant submits

3  that the wording and approach of claims 17-24 are different from claims 1-16. As

4  such, Applicant submits that claims 17-24 should be examined independently of

5  claims 1-16. Applicant respectfully submits that, with regard to claims 17-24, the

6  Office has failed to establish its *prima facie* case because it has not examined these

7  claims.

8

9  **Claims 1-16**

10  The Office equates claims sets 1-5, 6-10, and 11-15 to each other.

11  Applicant respectfully submits that they are not equivalent. The independent

12  claims (1, 6, and 11) of each set are different from each other.

13

14  <u>Claim 1</u>

15  The Office states that claim 1 is obvious because all of the claimed features

16  and elements of claim are found in a combination of Blonder, Knowlton,

17  Monteiro, and Stone.

18  Applicant submits that Office has not made a *prima facie* case of

19  obviousness for claim 1. The cited references do not include elements that the

20  Office indicates that they do. Furthermore, the combination of the cited references

21  does not include all of the claimed elements of claim 1.

22  The Office states that Blonder shows many of the features of claim 1.

23  Applicant disagrees.

24  <u>Blonder's Padding is Content</u>. Claim 1 recites that the "...temporary

25  graphic element is not content...." The Office equates Blonder's "padding" with

MOTM_WASH1823_0050436

1    Applicant's "…temporary graphic element…." However, Applicant submits that

2    the "padding" is not equivalent because Blonder's *padding is content.* At col. 3,

3    lines 34-36, Blonder states that the padding "is predetermined content." Blonder

4    states that it's padding is content.

5       <u>Knowlton</u>. To support its proposition that Knowlton teaches the "limited

6    display area" and the "obstruct only part of the content" features, the Office cites

7    the Abstract of Knowlton; col. 26, lines 20-64, especially lines 60-64; and col. 42,

8    lines 30-34. However, Applicant submits that Knowlton does not teach either of

9    these features.

10       <u>Limited Display Area</u>. Applicant cannot find any language that teaches a

11    "limited display area" in the cited portions or, in fact, in any other portion of

12    Knowlton. Applicant did find several references within Knowlton that generally

13    refer to packing icons on a display. However, none of those references is to a

14    "limited display area." Instead, they appear to refer to any display. Specifically,

15    see col. 41, lines 34-46. Applicant does not find any reference to a "limited display

16    area" in Knowlton.

17       Indeed, Applicant found where Knowlton specifically refers to a "typical

18    display." In the "Background" section of Knowlton, it discusses the problem that

19    Knowlton is attempting to solve and its related technology. Knowlton expressly

20    refers to the problem of "displaying such graphical representations…on a *typical*

21    *display*" (col. 2, lines 18-23) (emphasis added).

22       <u>Obstruct only part of the content</u>. The Office focuses its attention on a block

23    labeled 210 and shown in Fig. 2A of Knowlton. This block is called the "original

24    image" within Knowlton.

25

MOTM_WASH1823_0050437

It appears that the Office equates (or analogizes) Knowlton's "original image" 210 to the claimed "content viewing area" of claim 1. Applicant submits that the original image 210 of Knowlton is NOT equivalent (or analogous) to a "content viewing area" as claimed in claim 1. Application provides two main reasons.

First, claim 1 recites a "...*content* viewing area..." and not just a "viewing area." The original image in Knowlton does not display content. It "displays" nothing. It is an image. It is not a display, a window, a screen, or anything else capable of displaying. Since it cannot display anything, it cannot be an area for viewing content. The original image in Knowlton is something that is displayed rather then something that displays.

Second, Applicant respectfully submits that the Office has misinterpreted Knowlton (in particular, Fig. 2A). The graphic icon 144 of Knowlton is incapable of "obstructing only part of the content in the content viewing area." It does not do so for several reasons, for example:

- The original image 210 of Knowlton is not a "content viewing area"; therefore, if the graphic icon was covering the original image 210, it is NOT "in the content viewing area" as recited by claim 1;

- The Office appears to imply the graphic icon 144 of Fig. 2A of Knowlton is capable of being displayed over the original image. This is not true. Instead, the graphic icon represents a portion that is cut away from the original image. Notice the arrow points from the box in the original image to the box labeled graphic icon 144. The icon is taken from the original image. It is NOT displayed over the image. Nowhere in Knowlton does it say that the graphic icon is

143                                         MOTM_WASH1823_0050438

displayed over the original image.   Instead, Knowlton says, for example, "Graphic 44 Image 220 represents the region of Original Image 210 that has been selected...for construction of the Graphic Icon 144..." (col. 19, lines 39-41).   Therefore, graphic icon 144 never "...obstruct[s any part of] the content..." as recited by claim 1.

Monteiro.  Office refers to the "pull-down" menus of Monteiro to support its position that claim 1 is obvious.   However, these pull-down menus are not "...configured to display a temporary graphic element over the content viewing area during times when the browser is loading content..." as recited by claim 1. Since they are pull-down menus, they will be displayed when directed to do so by a user.

Lack of Motivation

In addition, the Office failed to provide any evidence of a suggestion, teaching, or motivation to combine Blonder, Knowlton, Monteiro, and Stone. The Office has not shown any such evidence within the cited references.  The Office has not shown any such evidence outside of the cited references that one of ordinary skill in the art (OOSA) would be motivated to combine the references in the manner specified by the Office.

In the Action, the Office supports its obviousness determination for the combination by stating multiple times that OOSA would be motivated for the reasons "noted in the previous paragraphs."   Specifically, this statement is made three times.

The Office states that OOSA would be motivated for the reasons "noted in the previous paragraphs" the **very** first time in the Action that the Office combines

MOTM_WASH1823_0050439

elements found in the cited references. Specifically, that is when the Office combines pieces from Knowlton and Blonder at page 4, first full paragraph of the Action. However, no previous paragraphs exist to contain the referenced motivation.

Again, the same statement is made when the Office combines the combination of Knowlton and Blonder with a piece Stone at page 4, paragraph 4 of the Action. Yet again, the statement is made when the Office combines the combination of Knowlton, Blonder, and Stone with a piece of Monteiro at page 4, paragraph 2 in the Action.

However, Applicant cannot locate the referenced motivation anywhere in the Action. The Office never explains why OOSA would be motivated to combine the pieces found in each reference to form a combination as recited in claim 1. Applicant respectfully submits that no such motivation exists.


Claim 6

This claim is directed to an information processing device. In addition to that difference, this claim differs from claim 1 in other ways. For example, claim 6 recites, "visible content" and "the graphic element indicates to a user that the browser is loading content." These features are not found in any cited reference.


Claim 11

This claim is directed to a method. In addition to that difference, this claim differs from claim 1 in other ways. For example, claim 11 recites, "displaying content in a content viewing area." This means that the content is visible. Like claim 6 above, this feature is not found in any cited reference.

MOTM_WASH1823_0050440

### Claims 2-6, 7-10, and 12-16

Dependent claims 2-6, 7-10, and 12-16 are allowable because of their dependence from allowable base claims (1, 6, and 11), and for additionally recited features that are not shown by the cited references in the context defined by the base claims. These claims are allowable whether their base claims are allowable or not.

### Claims 2, 5, 7, 10, 12, and 15

Claims 2, 5, 7, 10, 12, and 15 include a feature where the temporary graphic element is animated. The Office states that this feature is obvious because Blonder suggests such animation. However, Applicant submits that Blonder does not suggest this. Rather, Blonder discloses use of animated *content*. The "...graphic element..." of these claims is "...not content..."; therefore, Blonder does not suggest the use of an animated graphic element that is not content.

If the Office maintains its rejection of these claims based upon the animated content of Blonder, Applicant requests that the Office explain how the content of Blonder is equivalent to the non-content of the graphic element of these claims.

### Claims 3, 8, and 13

Claims 3, 8, and 13 recite that the temporary graphic element is displayed "...in a corner of the content viewing area...." In addressing these claims, the Office mentions that using a corner "is a well known feature of Windows windowing and graphical icons, such as mentioned in Knowlton et al. See column 26, lines 60-64." Applicant cannot find any suggestion in the Knowlton that

146    MOTM_WASH1823_0050441

establish the obviousness of using a corner of a "...content viewing area..." to display a "...temporary graphics element..." when "...loading content...."

Regardless whether it is well known or not, Applicant submits that it is <u>not</u> generally known to place a graphic element in the corner of a "...*content viewing area*..." instead of the corner of the *window*. This feature is illustrated at element 64 of Fig. 3 of the application. Note that element 64 is not part of the window itself. Rather, it is over the content viewing area. There is nothing in the cited references to suggest that a corner of a content viewing area should be used for a graphics element such as the one claimed.

If the Office maintains its rejection of these claims, Applicant requests that the Office explain how use of a corner of a window is equivalent to use of the corner of a "...content viewing area..." as recited in these claims.

<u>Claims 4, 5, 9, 10, 14, and 15</u>

Claims 4, 5, 9, 10, 14, and 15 recite that the temporary graphic element is presented "...within a temporary window in a windowing operating environment...." Although the Office may have established the achievability of this feature, it has not established any *suggestion or motivation for actually implementing it.* There is no indication in the cited references that anyone has ever considered using a "window" to display a graphics element such as this when content is loading.

The Office specifically refers to icon 144 of Figure 2A of Knowlton. Nowhere in Knowlton does it suggest that icon 144 be presented "...within a temporary window...." See the above discussion of Knowlton with respect to claim 1.

MOTM_WASH1823_0050442

Claim 16

The Office states that computer readable storage medium is well known in the art of computers. This may or may not be true. Regardless, claim 16 is allowable because it is dependent from an allowable base claim, claim 11.

**Claims 17-30**

On page 6 of the Action, the Offices states the following (and only the following) to support its obviousness rejection of claims 17-30:

> "In regard to claims 17-24, these claims are of similar scope to claims 1-16. For the reasons stated in the rejections of claims 1-16, claims 17-24 are not patentable.
>
> In regard to claims 25-30, such "load status" [handling] is taught by Stone (column 7, lines 6-14, i.e. "busy" signal to indicate loading)."

Claims 17-30 include elements that are different from claims 1-16 and/or include limitations that do not exist in claims 1-16.

Applicant submits that these two paragraphs fail to provide the requisite support for the Office's conclusion that claims 17-30 are unpatentable because of obviousness. Therefore, the Office has failed to establish its *prima facie* case that these claims are unpatentable.

Claims 17-24.

Despite the Office's statement that these claims are of "similar scope" to claims 1-16, Applicant submits that these claims are not. Furthermore, Applicant respectfully submits that similarity of scope is not a valid ground for a rejection.

MOTM_WASH1823_0050443

**Claim 17.** This claim is dependent from claim 1. This claim specifically recites, "the temporary graphic element [displays] over the content viewing area *only during times when the browser is loading visible content*" (emphasis added). None of the cited references contains this feature. In particular, note the bolded and italicized words, "only" and "visible." These limitations are not found in any cited reference. In the Action, the Office did not address this.

**Claim 18.** This claim is dependent from claim 1. This claim specifically recites, "the temporary graphic element indicates to a user that the browser is loading content." None of the cited references contains this feature. In the Action, the Office did not address this.

**Claim 23.** This claim is dependent from claim 11 and is similar to claim 18. This claim specifically recites, "the temporary graphic element indicates to a user that the loading step is being performed." None of the cited references contains this feature. In the Action, the Office did not address this.

**Claims 19 and 21.** Claim 19 is dependent from claim 1 and claim 21 is dependent from claim 6. Specifically, these claims recite, "the temporary graphic element [disappearing] when the browser's loading of content is complete to indicate to a user that such loading of content is complete." None of the cited references contains this feature. In the Action, the Office did not address this.

**Claim 24.** This claim is dependent from claim 11 and is similar to claims 19 and 21. This claim specifically recites, "removing the temporary graphic element once the loading step is complete to indicate to a user that the loading step is complete." None of the cited references contains this feature. In the Action, the Office did not address this.

MOTM_WASH1823_0050444

<u>Claim 20 and 22</u>.  Claim 20 is dependent from claim 6 and claim 22 is dependent from claim 11.  Each claim recites the same feature.  Specifically, they recite, "the temporary graphic element is not content."  This feature is included in claim 1; therefore, the Action addressed this feature.  See Applicant's comments about this feature in its discussion of claim 1 above.

<u>Claims 25-30</u>.

These claims focus on the status of the browser, but they are worded differently from claims 1-16.  They include different elements and limitations.

The Office indicates that Stone supports its position that these claims are obvious.  Applicant respectfully submits that Stone does not provide the requisite support.  The "DownloadBegin" and "DownloadComplete" events described in the cited portion of Stone are program-control events.  These are used by application programs to determine when to perform a programmed action.  This is not a displayed "load status" graphic element.

Stone says that it provides "...functionality of a web browser to application programs" (col. 5, line 66 through col. 6, line 1); and "...programmers can incorporate this control..." (col. 6, line 5).  In col. 6, lines 45-50, Stone explains the events listed in Table 2.  Table 2 includes the "DownloadBegin" and "DownloadComplete" events cited in the Action.  Stone explains that these events are notification messages to the control's programming interfaces.

Applicant submits that Stone does not disclose, suggest, teach, or motivate one of ordinary skill in the art to display a "load status" of a browser is NOT displayed by a graphic element.

150

Claim 25. This claim is dependent from claim 1. This claim specifically recites, "the temporary graphic element conveys status information of the browser." None of the cited references contains this feature.

Claims 26-30. Applicant submits that these claims are worded differently and have a different scope of coverage than claims 1-24. However, the Action did not provide any information regarding a thorough examination of these claims independent from claims 1-24. Applicant formally requests an examination of these claims, which is independent of an examination of claims 1-24.

Claims 26 and 28. These claims are independent. These claims describe a method (or medium with instructions executing such a method) of indicating a content "load status" that is not found in any of the cited references.

Claims 27 and 29. These claims are dependent from claims 26 and 28, respectively. These claims describe an additional step to a method (or medium with instruction executing such a method) of indicating a content "load status" that is not found in any of the cited references. The step involves "removing the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed."

Claim 30. This claim is independent. This claim describes a hypermedia browser (of an information processing devices) that is configured to operating in at least two modes: content-loading and content-loaded. The claim describes the modes in detail. None of the cited references includes the features of this claim.

Accordingly, Applicant submits that all of the pending claims in a condition for allowance. Applicant asks the Office with withdraw its rejections and allow all pending claims.

MOTM_WASH1823_0050446

## Amendments to the Claims

Applicant amends claim 26.  The purpose of this amendment is to further clarify the invention.  Applicant expressly grants permission to the Office to re-interpret all pending claims of this application.

## Formal Request for an Interview

Applicant expects the above comments to be persuasive.  If not, however, Applicant formally requests a telephonic interview in order to discuss whether any further progress can be made towards allowance of this case.  Thus, the undersigned would appreciate a telephone call before issuing a subsequent Action.

Please contact the undersigned to schedule a telephonic interview that is convenient to the Examiner. Applicant hopes that an oral discussion can help us achieve our common goal, which is speedy completion of prosecution of this application.

MOTM_WASH1823_0050447

## Conclusion

    All pending claims are in condition for allowance. Applicant respectfully requests consideration and prompt issuance of all claims of this application.

 

Respectfully Submitted,

Dated: _12-1-00_      By: _____

Kasey C. Christie
Reg. No. 40559
(509) 324-9256 x32
kasey@leehayes.com
www.leehayes.com

MOTM_WASH1823_0050448

EL792821905c

Application Serial No. ...................................................................08/851,877
Filing Date ...................................................................................5/6/97
Inventorship ..............................................................................Shell et al.
Applicant .....................................................................Microsoft Corporation
Group Art Unit ..........................................................................2171
Examiner ..................................................................................Jung, D.
Attorney's Docket No. ....................................................................MSI-161US
Title:  Loading Status in a Hypermedia Browser Having a Limited Available
        Display Area

**RESPONSE TO FINAL OFFICE ACTION DATED FEBURARY 27, 2001**

**UNDER 37 C.F.R. § 1.116**

To:      Commissioner of Patents and Trademarks,
         Washington, D.C. 20231

From:    Kasey C. Christie (Tel. 509-324-9256 x232; Fax 509-323-8979)
         **Customer No.  22801**

**In the Claims**

   **Claims pending**

   •  At time of the Action:  Claims 1-30.

   •  After this Response:  Claims 1-42.

   **Canceled claims**:  None.

   **Amended claims**:  Claim 1, 6, 11, 26, 28 and 30.

   **New claims**: Claims  31-42.

07/02/2012 BNGUYEN1 00000006 08851877
01 FC:103            216.00 OP
02 FC:115            110.00 OP

1

MOTM_WASH1823_0050459

**All Pending Claims:**

**(in *Clear* Form, in accordance with 37 CFR §1.121):**

Please amend claims 1, 6, 11, 26, 28 and 30 and add claims 31-42 as indicated below:

1.    **(Amended)**  A hypermedia browser embodied on a computer-readable medium for execution on an information processing device having a limited display area, wherein the hypermedia browser has a content viewing area for viewing content and is configured to display a temporary graphic element over the content viewing area during times when the browser is loading content, wherein the temporary graphic element is positioned over the content viewing area to obstruct only part of the content in the content viewing area, wherein the temporary graphic element is not content and wherein content comprises data for presentation which is from a source external to the browser.

2.    A hypermedia browser as recited in claim 1, wherein the temporary graphic element is animated.

3.    A hypermedia browser as recited in claim 1, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area.

LEE & HAYES, PLLC                                     2                          0626010834 G.\MSI\161US\MSI-161US.M03.doc

MOTM_WASH1823_0050460

155

4.      A hypermedia browser as recited in claim 1, wherein the hypermedia browser presents the temporary graphic element within a temporary window in a windowing operating environment.

5.      A hypermedia browser as recited in claim 1, wherein:

the temporary graphic element is animated; and

the hypermedia browser presents the temporary graphic element within a temporary window in a windowing operating environment.

6.      (Amended)  An information processing device comprising:

a processor;

a display;

a hypermedia browser executing on the processor to load and display content in a content viewing area on the display;

wherein the hypermedia browser displays a temporary graphic element over the content viewing area during times when the browser is loading visible content;

wherein the temporary graphic element is positioned only over a portion of the content viewing area and obstructs only part of the visible content in the content viewing area; and

wherein the temporary graphic element indicates to a user that the browser is loading content and content comprises data for presentation which is from a source external to the browser.

7.      An information processing device as recited in claim 6, wherein the temporary graphic element is animated.

MOTM_WASH1823_0050461

8.      An information processing device as recited in claim 6, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area.

9.      An information processing device as recited in claim 6, wherein the hypermedia browser displays the temporary graphic element within a temporary window in a windowing operating environment.

10.     An information processing device as recited in claim 6, wherein:

the temporary graphic element is animated; and

the hypermedia browser displays the temporary graphic element within a temporary window in a windowing operating environment.

LEE & HAYES, PLLC

4

0626010834 G:\MS\1161US\MS1-161US.M05.doc

MOTM_WASH1823_0050462

11.   **(Amended)** A method of browsing a hyperlink resource, comprising the following steps:

loading content from the hyperlink resource in response to user selection of hyperlinks contained in said content;

displaying the content in a content viewing area;

displaying a temporary graphic element over the content viewing area during the loading step, wherein the temporary graphic element obstructs only part of the content in the content viewing area;

wherein the loading, the content displaying, and the temporary graphic element displaying steps occur at least partially concurrently; and

wherein content comprises data for presentation which is from a source external to the browser.

12.   A method as recited in claim 11, further comprising an additional step of animating the temporary graphic element.

13.   A method as recited in claim 11, wherein the displaying step includes displaying the temporary graphic element in a corner of the content viewing area.

14.   A method as recited in claim 11, wherein the displaying step includes displaying the temporary graphic element within a temporary window in a windowing operating environment.

158

**15.** A method as recited in claim 11, further comprising an additional step of animating the temporary graphic element, wherein the displaying step includes displaying the temporary graphic element within a temporary window in a windowing operating environment.

**16.** A computer-readable storage medium containing instructions that are executable for performing the steps recited in claim 11.

**17.** A hypermedia browser as recited in claim 1, wherein the browser is configured to display the temporary graphic element over the content viewing area only during times when the browser is loading visible content.

**18.** A hypermedia browser as recited in claim 1, wherein the temporary graphic element indicates to a user that the browser is loading content.

**19.** A hypermedia browser as recited in claim 1, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete.

**20.** An information processing device as recited in claim 6, wherein the temporary graphic element is not content.

**21.** An information processing device as recited in claim 6, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete.

MOTM_WASH1823_0050464

22.    A method as recited in claim 11, wherein the temporary graphic element is not content.

23.    A method as recited in claim 11, wherein the temporary graphic element indicates to a user that the loading step is being performed.

24.    A method as recited in claim 11, further comprising removing the temporary graphic element once the loading step is complete to indicate to a user that the loading step is complete.

25.    A hypermedia browser as recited in claim 1, wherein the temporary graphic element conveys status information of the browser.

LEE & HAYES, PLLC

7

0626010814 G:\MSI\161US\MSI-161US.M03.doc

MOTM_WASH1823_0050465

26.    (Twice Amended)  A method of indicating a content "load status" of a hypermedia browser having a content viewing area for viewing content, the method comprising:

displaying loaded content within the content viewing area of a screen of a hypermedia browser, the screen being without a "load status" graphic element, wherein a "load status" graphic element indicates a current content load status of the hypermedia browser;

receiving an instruction to load new content into the content viewing area;

loading such new content into the content viewing area; and

while loading, displaying a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area; and

wherein content comprises data for presentation which is from a source external to the browser.

27.    A method as recited in claim 26 further comprising, upon completion of the loading, removing the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed.

LEE & HAYES, PLLC

8

0626010834 G:\MS\1161US\MS1-161US.M01.doc

MOTM_WASH1823_0050466

28.   (Amended)  A  computer-readable  medium  having  computer-executable instructions that, when executed by a computer, perform a method of indicating a content "load status" of a hypermedia browser having a content viewing area for viewing content, the method comprising:

displaying loaded content within the content viewing area of a screen of a hypermedia browser, the screen is without a "load status" graphic element, wherein a "load status" graphic element indicates a current content load status of the hypermedia browser;

receiving an instruction to load new content into the content viewing area;

loading such new content into the content viewing area; and

while loading, displaying a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area; and

wherein content comprises data for presentation which is from a source external to the browser.

29.   A computer-readable medium as recited in claim 28 further having additional computer-executable instructions that perform a method comprising, upon completion of the loading, removing the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed.

MOTM_WASH1823_0050467

30.   **(Amended)**   An information processing device comprising:

a processor;

a display;

a hypermedia browser executing on the processor to load and display content in a content viewing area on the display;

wherein the hypermedia browser is configured to operate in a content-loading mode and a content-loaded mode;

in the content-loaded mode, the hypermedia browser displays loaded content in the content viewing area and no "load status" graphic element is displayed, wherein absence of such "load status" graphic element indicates that the browser is in the content-loaded mode;

in the content-loading mode, the hypermedia browser loads content, displays such content in the content viewing area as it loads, and displays a "load status" graphic element over the content view area obstructing part of the content displayed in the content viewing area, wherein presence of such "load status" graphic element indicates that the browser is in the content-loading mode; and

wherein content comprises data for presentation which is from a source external to the browser.

31.   A hypermedia browser of claim 1, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.



MOTM_WASH1823_0050468

163

32. A hypermedia browser of claim 1, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web.

33. A hypermedia browser of claim 6, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.

34. A hypermedia browser of claim 6, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web.

35. A hypermedia browser of claim 11, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.

36. A hypermedia browser of claim 11, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web.

MOTM_WASH1823_0050469

1       37.    A hypermedia browser of claim 26, wherein content is data

2    formatted for presentation which is selected from a group consisting of visible

3    effects of a markup language, visible text of such a markup language, and visible

4    results of a scripting language.

5

6       38.    A hypermedia browser of claim 26, wherein content is data

7    formatted for presentation which is selected from a group consisting of HTML,

8    text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X,

9    Flash. scripting language for the world wide web.

10

11       39.    A hypermedia browser of claim 28, wherein content is data

12    formatted for presentation which is selected from a group consisting of visible

13    effects of a markup language, visible text of such a markup language, and visible

14    results of a scripting language.

15

16       40.    A hypermedia browser of claim 28, wherein content is data

17    formatted for presentation which is selected from a group consisting of HTML,

18    text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X,

19    Flash. scripting language for the world wide web.

20

21       41.    A hypermedia browser of claim 30, wherein content is data

22    formatted for presentation which is selected from a group consisting of visible

23    effects of a markup language, visible text of such a markup language, and visible

24    results of a scripting language.

25

LEE & HAYES, PLLC

12

0526010834 G:\MSI\161US\MSI-161US M05.doc

MOTM_WASH1823_0050470

42.    A hypermedia browser of claim 30, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web.

MOTM_WASH1823_0050471

166

## REMARKS

Applicant respectfully requests entry of the following remarks and amendments. Also, Applicant respectfully requests reconsideration of the subject application and allowance of all pending claims.

The remarks should be entered under 37 C.F.R. §1.116 as they place the application in better form for appeal, or for resolution on the merits.

References herein to the Office Action (or simply the Action) are to the last Office Action, dated February 27, 2001, of U.S. Patent Application Serial No.08/851,877, filed 5/6/97.

Applicant expressly grants permission to the Office to re-interpret all pending claims of this application.

### Prior Art Status of References

Applicant does not explicitly or implicitly admit that any reference is prior art. Nothing in this communication should be considered an acknowledgement, acceptance, or admission that any reference is considered prior art.

### "Content"

Applicant states that the term "content" found in the claims comprises "data for presentation which is from a source external to the browser." Applicant states that, at the time of filing of this application, this is the plain and ordinary meaning of "content" to those of ordinary skill in the art.

Furthermore, examples of content may comprise visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language. Further still, examples of content may comprise HTML, text, SGML,

LEE & HAYES, PLLC                               14                 0620010834 G:\MST\161US\MST-161US.doc

MOTM_WASH1823_0050472

XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web.

**Telephone Interview**

Applicant thanks the Examiner for talking with an attorney for the Applicant, Kasey Christie, via the telephone on several occasions since the issuance of the last Action. This response and amendment is in response to those discussions.

At the Examiner's request, the focus on these discussions have been on the meaning of the term "content" as it is used in the claims. With the amendments and new claims provided herein, the Applicant has defined the nature of "content."

With respect to issues unrelated to the meaning of "content" (which were not discussed with the Examiner via telephone conferences at the request of the Examiner), Applicant maintains its positions stated in previous communications. In particular, Applicant maintains that the Office has not established a *prima facie* of obviousness. Applicant's prior remarks are reproduced here for completeness and to place the application in a better position for appeal.

**Claim Rejections – 35 USC § 103 – Obviousness**

The Office rejects all claims under §103(a) as being unpatentable over U.S. Patent No. 5,760,771 to Blonder et al. ("Blonder"), U.S. Patent No. 5,973,692 to Knowlton et al. ("Knowlton"), U.S. Patent No. 5,983,005 to Monteiro et al. ("Monteiro"), and U.S. Patent No. 6,101,510 to Stone et al. ("Stone"). Applicant respectfully traverses the rejections.

*Prima facie* case is not established

Applicant submits that the Office has failed to establish its *prima facie* case that claims 1-30 are unpatentable because they are obvious over a combination of cited references. Applicant submits that no combination of the cited references produces combinations having all of the elements and features of claims 1-30.

Although some claims are worded differently from others (and may have different claimed elements and features), claims 1-30 recite a common core concept that does not appear in any of the cited references. The core concept is a non-content graphic element appearing over a content area that is indicative of present condition where content is being loaded into the content area.

Again, Applicant qualifies the statement of the core concept by noting that each claim is to read and interpreted on its own. The claims of this application may approach this core concept from different angles and color it with different hues.

For instance, claim 1 recites its view of the core concept this way: "...display a temporary graphic element over the content viewing area during times when the browser is loading content, wherein the temporary graphic element is positioned over the content viewing area to obstruct only part of the content in the content viewing area, wherein the temporary graphic element is not content." In this case, the display of the non-content graphic element coincides with the loading of content. Claim 18, which is dependent upon claim 1, further elaborates that the display of the non-content graphic element is indicative of the browser "...loading content."

In another instance, claim 26 recites its view of the core concept this way: "...wherein a 'load status' graphic element indicates a current content load status of the hypermedia browser..." and "...loading...new content into the content

MOTM_WASH1823_0050474

viewing area; and while loading, displaying a 'load status' graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area..."

In previous Actions, the Office compares Blonder's content elements to non-content elements of the claims and Knowlton non-content elements to content elements of the claims. Therefore, Applicant submits that an agreed understanding of the term "content" will further our mutual goal, which is speedy completion of prosecution of this application. Applicant submits that those who are skilled in the art of hypermedia browsers and related fields intuitively understand the concept of "content."

Before the submission of Applicant's Preliminary Amendment dated July 17, 2000, the Examiner and an attorney for the Applicant, Kasey Christie, discussed the meaning of "content" over the telephone. As a result of that discussion, the Office found and cited Monteiro—in particular, Fig. 19 of Monteiro. This figure illustrates traditional "pull-down" menus in a windowing environment, which may be displayed over the content of a hypermedia browser. Traditional "pull-down" menus are not content.

Applicant respectfully submits that the Office's reference to Fig. 19 of Monteiro in the Action seems to indicate an agreement regarding the meaning of "content" within the context of Applicant's application. However, instead of withdrawing Blonder and Knowlton, the Office maintains the same rejections based upon Blonder and Knowlton, but the Office now combines Stone and Monteiro with them.

Applicant submits that the cited references do not disclose what the Office says that they do. Applicant submits that the Office equates content in cited

MOTM_WASH1823_0050475

references to claimed non-content. In addition, Applicant submits that the Office equates non-content in cited references to claimed content.

Furthermore, the Office supports rejections of claims 17-24 based upon their similarity of scope with rejected claims 1-16. However, Applicant submits that the wording and approach of claims 17-24 are different from claims 1-16. As such, Applicant submits that claims 17-24 should be examined independently of claims 1-16. Applicant respectfully submits that, with regard to claims 17-24, the Office has failed to establish its *prima facie* case because it has not examined these claims.

### Claims 1-16

The Office equates claims sets 1-5, 6-10, and 11-15 to each other. Applicant respectfully submits that they are not equivalent. The independent claims (1, 6, and 11) of each set are different from each other.

### Claim 1

The Office states that claim 1 is obvious because all of the claimed features and elements of claim are found in a combination of Blonder, Knowlton, Monteiro, and Stone.

Applicant submits that Office has not made a *prima facie* case of obviousness for claim 1. The cited references do not include elements that the Office indicates that they do. Furthermore, the combination of the cited references does not include all of the claimed elements of claim 1.

The Office states that Blonder shows many of the features of claim 1. Applicant disagrees.

MOTM_WASH1823_0050476

<u>Blonder's Padding is Content</u>.   Claim 1 recites that the "...temporary graphic element is not content...." The Office equates Blonder's "padding" with Applicant's "...temporary graphic element...." However, Applicant submits that the "padding" is not equivalent because Blonder's *padding is content*. At col. 3, lines 34-36, Blonder states that the padding "is predetermined content."  Blonder states that it's padding is content.

<u>Knowlton</u>.  To support its proposition that Knowlton teaches the "limited display area" and the "obstruct only part of the content" features, the Office cites the Abstract of Knowlton; col. 26, lines 20-64, especially lines 60-64; and col. 42, lines 30-34.  However, Applicant submits that Knowlton does not teach either of these features.

<u>Limited Display Area</u>. Applicant cannot find any language that teaches a "limited display area" in the cited portions or, in fact, in any other portion of Knowlton.  Applicant did find several references within Knowlton that generally refer to packing icons on a display.  However, none of those references is to a "limited display area." Instead, they appear to refer to any display.  Specifically, see col. 41, lines 34-46. Applicant does not find any reference to a "limited display area" in Knowlton.

Indeed, Applicant found where Knowlton specifically refers to a "typical display." In the "Background" section of Knowlton, it discusses the problem that Knowlton is attempting to solve and its related technology. Knowlton expressly refers to the problem of "displaying such graphical representations...on a *typical display*" (col. 2, lines 18-23) (emphasis added).

172          MOTM_WASH1823_0050477

1     <u>Obstruct only part of the content</u>. The Office focuses its attention on a block
2 labeled 210 and shown in Fig. 2A of Knowlton. This block is called the "original
3 image" within Knowlton.

4     It appears that the Office equates (or analogizes) Knowlton's "original
5 image" 210 to the claimed "content viewing area" of claim 1. Applicant submits
6 that the original image 210 of Knowlton is NOT equivalent (or analogous) to a
7 "content viewing area" as claimed in claim 1. Application provides two main
8 reasons.

9     First, claim 1 recites a "...*content* viewing area..." and not just a "viewing
10 area." The original image in Knowlton does not display content. It "displays"
11 nothing. It is an image. It is not a display, a window, a screen, or anything else
12 capable of displaying. Since it cannot display anything, it cannot be an area for
13 viewing content. The original image in Knowlton is something that is displayed
14 rather then something that displays.

15     Second, Applicant respectfully submits that the Office has misinterpreted
16 Knowlton (in particular, Fig. 2A). The graphic icon 144 of Knowlton is incapable
17 of "obstructing only part of the content in the content viewing area." It does not do
18 so for several reasons, for example:

19     • The original image 210 of Knowlton is not a "content viewing area";
20        therefore, if the graphic icon was covering the original image 210, it
21        is NOT "in the content viewing area" as recited by claim 1;

22     • The Office appears to imply the graphic icon 144 of Fig. 2A of
23        Knowlton is capable of being displayed over the original image. This
24        is not true. Instead, the graphic icon represents a portion that is cut
25        away from the original image. Notice the arrow points from the box

173

in the original image to the box labeled graphic icon 144.  The icon is taken from the original image.  It is NOT displayed over the image.  Nowhere in Knowlton does it say that the graphic icon is displayed over the original image.  Instead, Knowlton says, for example, "Graphic 44 Image 220 represents the region of Original Image 210 that has been selected…for construction of the Graphic Icon 144…" (col. 19, lines 39-41).  Therefore, graphic icon 144 never "…obstruct[s any part of] the content…" as recited by claim 1.

Monteiro. Office refers to the "pull-down" menus of Monteiro to support its position that claim 1 is obvious.  However, these pull-down menus are not "…configured to display a temporary graphic element over the content viewing area during times when the browser is loading content…" as recited by claim 1.  Since they are pull-down menus, they will be displayed when directed to do so by a user.

<u>Lack of Motivation</u>

In addition, the Office failed to provide any evidence of a suggestion, teaching, or motivation to combine Blonder, Knowlton, Monteiro, and Stone. The Office has not shown any such evidence within the cited references.  The Office has not shown any such evidence outside of the cited references that one of ordinary skill in the art (OOSA) would be motivated to combine the references in the manner specified by the Office.

In the Action, the Office supports its obviousness determination for the combination by stating multiple times that OOSA would be motivated for the

LEE & HAYES, PLLC

21

0626010834 G:\MSJ161US\MSJ-161US M05.doc

MOTM_WASH1823_0050479

reasons "noted in the previous paragraphs." Specifically, this statement is made three times.

The Office states that OOSA would be motivated for the reasons "noted in the previous paragraphs" the very first time in the Action that the Office combines elements found in the cited references. Specifically, that is when the Office combines pieces from Knowlton and Blonder at page 4, first full paragraph of the Action. However, no previous paragraphs exist to contain the referenced motivation.

Again, the same statement is made when the Office combines the combination of Knowlton and Blonder with a piece Stone at page 4, paragraph 4 of the Action. Yet again, the statement is made when the Office combines the combination of Knowlton, Blonder, and Stone with a piece of Monteiro at page 4, paragraph 2 in the Action.

However, Applicant cannot locate the referenced motivation anywhere in the Action. The Office never explains why OOSA would be motivated to combine the pieces found in each reference to form a combination as recited in claim 1. Applicant respectfully submits that no such motivation exists.


Claim 6

This claim is directed to an information processing device. In addition to that difference, this claim differs from claim 1 in other ways. For example, claim 6 recites, "visible content" and "the graphic element indicates to a user that the browser is loading content." These features are not found in any cited reference.

175

## Claim 11

This claim is directed to a method.  In addition to that difference, this claim differs from claim 1 in other ways.  For example, claim 11 recites, "displaying content in a content viewing area."  This means that the content is visible.  Like claim 6 above, this feature is not found in any cited reference.

## Claims 2-6, 7-10, and 12-16

Dependent claims 2-6, 7-10, and 12-16 are allowable because of their dependence from allowable base claims (1, 6, and 11), and for additionally recited features that are not shown by the cited references in the context defined by the base claims.  These claims are allowable whether their base claims are allowable or not.

## Claims 2, 5, 7, 10, 12, and 15

Claims 2, 5, 7, 10, 12, and 15 include a feature where the temporary graphic element is animated.  The Office states that this feature is obvious because Blonder suggests such animation.  However, Applicant submits that Blonder does not suggest this.  Rather, Blonder discloses use of animated *content*.  The "...graphic element..." of these claims is "...not content..."; therefore, Blonder does not suggest the use of an animated graphic element that is not content.

If the Office maintains its rejection of these claims based upon the animated content of Blonder, Applicant requests that the Office explain how the content of Blonder is equivalent to the non-content of the graphic element of these claims.

MOTM_WASH1823_0050481

Claims 3, 8, and 13

Claims 3, 8, and 13 recite that the temporary graphic element is displayed "...in a corner of the content viewing area...." In addressing these claims, the Office mentions that using a corner "is a well known feature of Windows windowing and graphical icons, such as mentioned in Knowlton et al. See column 26, lines 60-64." Applicant cannot find any suggestion in the Knowlton that establish the obviousness of using a corner of a "...content viewing area..." to display a "...temporary graphics element..." when "...loading content...."

Regardless whether it is well known or not, Applicant submits that it is not generally known to place a graphic element in the corner of a "...*content viewing area*..." instead of the corner of the *window*. This feature is illustrated at element 64 of Fig. 3 of the application. Note that element 64 is not part of the window itself. Rather, it is over the content viewing area. There is nothing in the cited references to suggest that a corner of a content viewing area should be used for a graphics element such as the one claimed.

If the Office maintains its rejection of these claims, Applicant requests that the Office explain how use of a corner of a window is equivalent to use of the corner of a "...content viewing area..." as recited in these claims.

Claims 4, 5, 9, 10, 14, and 15

Claims 4, 5, 9, 10, 14, and 15 recite that the temporary graphic element is presented "...within a temporary window in a windowing operating environment...." Although the Office may have established the achievability of this feature, it has not established any *suggestion or motivation for actually implementing it*. There is no indication in the cited references that anyone has ever

MOTM_WASH1823_0050482

177

considered using a "window" to display a graphics element such as this when content is loading.

The Office specifically refers to icon 144 of Figure 2A of Knowlton. Nowhere in Knowlton does it suggest that icon 144 be presented "...within a temporary window...." See the above discussion of Knowlton with respect to claim 1.

### Claim 16

The Office states that computer readable storage medium is well known in the art of computers. This may or may not be true. Regardless, claim 16 is allowable because it is dependent from an allowable base claim, claim 11.

### Claims 17-30

On page 6 of the Action, the Offices states the following (and only the following) to support its obviousness rejection of claims 17-30:

> "In regard to claims 17-24, these claims are of similar scope to claims 1-16. For the reasons stated in the rejections of claims 1-16, claims 17-24 are not patentable.
>
> In regard to claims 25-30, such "load status" [handling] is taught by Stone (column 7, lines 6-14, i.e. "busy" signal to indicate loading)."

Claims 17-30 include elements that are different from claims 1-16 and/or include limitations that do not exist in claims 1-16.

Applicant submits that these two paragraphs fail to provide the requisite support for the Office's conclusion that claims 17-30 are unpatentable because of

MOTM_WASH1823_0050483

obviousness.  Therefore, the Office has failed to establish its *prima facie* case that these claims are unpatentable.

Claims 17-24.

Despite the Office's statement that these claims are of "similar scope" to claims 1-16, Applicant submits that these claims are not.  Furthermore, Applicant respectfully submits that similarity of scope is not a valid ground for a rejection.

Claim 17.  This claim is dependent from claim 1.  This claim specifically recites, "the temporary graphic element [displays] over the content viewing area *only during times when the browser is loading **visible** content*" (emphasis added).  None of the cited references contains this feature.  In particular, note the bolded and italicized words, "only" and "visible."  These limitations are not found in any cited reference.  In the Action, the Office did not address this.

Claim 18.  This claim is dependent from claim 1.  This claim specifically recites, "the temporary graphic element indicates to a user that the browser is loading content."  None of the cited references contains this feature.  In the Action, the Office did not address this.

Claim 23.  This claim is dependent from claim 11 and is similar to claim 18.  This claim specifically recites, "the temporary graphic element indicates to a user that the loading step is being performed."  None of the cited references contains this feature.  In the Action, the Office did not address this.

Claims 19 and 21.  Claim 19 is dependent from claim 1 and claim 21 is dependent from claim 6.  Specifically, these claims recite, "the temporary graphic element [disappearing] when the browser's loading of content is complete to

LEE & HAYES, PLLC                                   26                    06260/0834 G:\MS\161US\MS1-161US M05.doc

MOTM_WASH1823_0050484

indicate to a user that such loading of content is complete." None of the cited references contains this feature. In the Action, the Office did not address this.

Claim 24. This claim is dependent from claim 11 and is similar to claims 19 and 21. This claim specifically recites, "removing the temporary graphic element once the loading step is complete to indicate to a user that the loading step is complete." None of the cited references contains this feature. In the Action, the Office did not address this.

Claim 20 and 22. Claim 20 is dependent from claim 6 and claim 22 is dependent from claim 11. Each claim recites the same feature. Specifically, they recite, "the temporary graphic element is not content." This feature is included in claim 1; therefore, the Action addressed this feature. See Applicant's comments about this feature in its discussion of claim 1 above.

Claims 25-30.

These claims focus on the status of the browser, but they are worded differently from claims 1-16. They include different elements and limitations.

The Office indicates that Stone supports its position that these claims are obvious. Applicant respectfully submits that Stone does not provide the requisite support. The "DownloadBegin" and "DownloadComplete" events described in the cited portion of Stone are program-control events. These are used by application programs to determine when to perform a programmed action. This is not a displayed "load status" graphic element.

Stone says that it provides "...functionality of a web browser to application programs" (col. 5, line 66 through col. 6, line 1); and "...programmers can incorporate this control..." (col. 6, line 5). In col. 6, lines 45-50, Stone explains

MOTM_WASH1823_0050485

the events listed in Table 2.   Table 2 includes the "DownloadBegin" and "DownloadComplete" events cited in the Action.  Stone explains that these events are notification messages to the control's programming interfaces.

Applicant submits that Stone does not disclose, suggest, teach, or motivate one of ordinary skill in the art to display a "load status" of a browser is NOT displayed by a graphic element.

Claim 25.  This claim is dependent from claim 1.  This claim specifically recites, "the temporary graphic element conveys status information of the browser."  None of the cited references contains this feature.

Claims 26-30.  Applicant submits that these claims are worded differently and have a different scope of coverage than claims 1-24.  However, the Action did not provide any information regarding a thorough examination of these claims independent from claims 1-24.  Applicant formally requests an examination of these claims, which is independent of an examination of claims 1-24.

Claims 26 and 28.  These claims are independent.  These claims describe a method (or medium with instructions executing such a method) of indicating a content "load status" that is not found in any of the cited references.

Claims 27 and 29.  These claims are dependent from claims 26 and 28, respectively.  These claims describe an additional step to a method (or medium with instruction executing such a method) of indicating a content "load status" that is not found in any of the cited references.  The step involves "removing the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed."

Claim 30.  This claim is independent.  This claim describes a hypermedia browser  (of an information processing devices) that is configured to operating in

LEE & HAYES, PLLC                                    28                        0626010834 G:\MS\1161USMS\1-161US.M05.doc

181

at least two modes: content-loading and content-loaded. The claim describes the modes in detail. None of the cited references includes the features of this claim.

Accordingly, Applicant submits that all of the pending claims in a condition for allowance. Applicant asks the Office with withdraw its rejections and allow all pending claims.

**Formal Request for an Interview**

Applicant expects the above comments to be persuasive. If not, however, Applicant formally requests a telephonic interview in order to discuss whether any further progress can be made towards allowance of this case. Thus, the undersigned would appreciate a telephone call before issuing a subsequent Action.

Please contact the undersigned to schedule a telephonic interview that is convenient to the Examiner. Applicant hopes that an oral discussion can help us achieve our common goal, which is speedy completion of prosecution of this application.

MOTM_WASH1823_0050487

## Conclusion

All pending claims are in condition for allowance. Applicant respectfully requests reconsideration and prompt issuance of the application.  If any issues remain that prevent issuance of this application, the Office is urged to contact the undersigned attorney before issuing a subsequent Action.

Respectfully Submitted,

Dated: 6-26-01       By: _____

Kasey C. Christie
Reg. No. 40559
(509) 324-9256 x232
kasey@leehayes.com
www.leehayes.com

LEE & HAYES, PLLC                    30                    0626010834 G:\MSI\161US\MSI-161US M05.doc

MOTM_WASH1823_0050488

*#19/F*
*8-28-01*
*B.Hilliard*

Application Serial No. ...............................................................................08/851,877
Filing Date ...............................................................................................5/6/97
Inventorship ............................................................................................Shell et al.
Applicant ..................................................................................Microsoft Corporation
Group Art Unit ........................................................................................2171
Examiner ..................................................................................................Jung, D.
Attorney's Docket No. ..............................................................................MS1-161US
Title:  Loading Status in a Hypermedia Browser Having a Limited Available
      Display Area

## <u>PRELIMINARY AMENDMENT</u>

**RECEIVED**
**AUG 2 2 2001**
**Technology Center 2100**

To:     Commissioner of Patents and Trademarks,
        Washington, D.C. 20231

From:   Kasey C. Christie (Tel. 509-324-9256 x232; Fax 509-323-8979)
        **Customer No.  22801**

### <u>In the Claims</u>

    **Claims pending**

- At time of the Action:  Claims 1-30.

- After this Response:  Claims 1-42.

**Canceled claims:**  None.

**Amended claims:**  Claim 1, 6, 11, 26, 28 and 30.

**New claims:** Claims  31-42.

LEE & HAYES, PLLC                 1        0815010959 G.\Client Files\MS1-D161US\MS1-161US.M06.doc

MOTM_WASH1823_0050506

**All Pending Claims:**

**(in _Clear_ Form, in accordance with 37 CFR §1.121):**

Please amend claims 1, 6, 11, 26, 28 and 30 and add claims 31-42 as indicated below:

    1.    **(Amended)** A hypermedia browser embodied on a computer-readable medium for execution on an information processing device having a limited display area, wherein the hypermedia browser has a content viewing area for viewing content and is configured to display a temporary graphic element over the content viewing area during times when the browser is loading content, wherein the temporary graphic element is positioned over the content viewing area to obstruct only part of the content in the content viewing area, wherein the temporary graphic element is not content and wherein content comprises data for presentation which is from a source external to the browser.

    2.    A hypermedia browser as recited in claim 1, wherein the temporary graphic element is animated.

    3.    A hypermedia browser as recited in claim 1, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area.

LEE & HAYES, PLLC         2      0815010959 G:\Client Files\MS1-0161US\MS1-161US.M06.doc

MOTM_WASH1823_0050507

4.      A hypermedia browser as recited in claim 1, wherein the hypermedia browser presents the temporary graphic element within a temporary window in a windowing operating environment.

5.      A hypermedia browser as recited in claim 1, wherein:

the temporary graphic element is animated; and

the hypermedia browser presents the temporary graphic element within a temporary window in a windowing operating environment.

6.      (Amended)   An information processing device comprising:

a processor;

a display;

a hypermedia browser executing on the processor to load and display content in a content viewing area on the display;

wherein the hypermedia browser displays a temporary graphic element over the content viewing area during times when the browser is loading visible content;

wherein the temporary graphic element is positioned only over a portion of the content viewing area and obstructs only part of the visible content in the content viewing area; and

wherein the temporary graphic element indicates to a user that the browser is loading content and content comprises data for presentation which is from a source external to the browser.

7.      An information processing device as recited in claim 6, wherein the temporary graphic element is animated.

LEE & HAYES, PLLC                                                      3      0815010059 G:\Client Files\MSI-0161US\MSI-161US.M06.doc

MOTM_WASH1823_0050508

8.     An information processing device as recited in claim 6, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area.

9.     An information processing device as recited in claim 6, wherein the hypermedia browser displays the temporary graphic element within a temporary window in a windowing operating environment.

10.    An information processing device as recited in claim 6, wherein:

the temporary graphic element is animated; and

the hypermedia browser displays the temporary graphic element within a temporary window in a windowing operating environment.

187                                                              MOTM_WASH1823_0050509

11.    (Amended)  A  method  of  browsing  a  hyperlink  resource, comprising the following steps:

loading content from the hyperlink resource in response to user selection of hyperlinks contained in said content;

displaying the content in a content viewing area;

displaying a temporary graphic element over the content viewing area during the loading step, wherein the temporary graphic element obstructs only part of the content in the content viewing area;

wherein the loading, the content displaying, and the temporary graphic element displaying steps occur at least partially concurrently; and

wherein content comprises data for presentation which is from a source external to the browser.

12.    A method as recited in claim 11, further comprising an additional step of animating the temporary graphic element.

13.    A method as recited in claim 11, wherein the displaying step includes displaying the temporary graphic element in a corner of the content viewing area.

14.    A method as recited in claim 11, wherein the displaying step includes displaying the temporary graphic element within a temporary window in a windowing operating environment.

LEE & HAYES, PLLC                              5          0815010959 G:\Client Files\MS1-DJ\61US\MS1-161US M06.doc

MOTM_WASH1823_0050510

**15.**    A method as recited in claim 11, further comprising an additional step of animating the temporary graphic element, wherein the displaying step includes displaying the temporary graphic element within a temporary window in a windowing operating environment.

**16.**    A computer-readable storage medium containing instructions that are executable for performing the steps recited in claim 11.

**17.**    A hypermedia browser as recited in claim 1, wherein the browser is configured to display the temporary graphic element over the content viewing area only during times when the browser is loading visible content.

**18.**    A hypermedia browser as recited in claim 1, wherein the temporary graphic element indicates to a user that the browser is loading content.

**19.**    A hypermedia browser as recited in claim 1, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete.

**20.**    An information processing device as recited in claim 6, wherein the temporary graphic element is not content.

**21.**    An information processing device as recited in claim 6, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete.

189                                                                                  MOTM_WASH1823_0050511

22.    A method as recited in claim 21, wherein the temporary graphic element is not content.

23.    A method as recited in claim 21, wherein the temporary graphic element indicates to a user that the loading step is being performed.

24.    A method as recited in claim 19, further comprising removing the temporary graphic element once the loading step is complete to indicate to a user that the loading step is complete.

25.    A hypermedia browser as recited in claim 1, wherein the temporary graphic element conveys status information of the browser.

MOTM_WASH1823_0050512

26.     **(Twice Amended)**  A method of indicating a content "load status" of a hypermedia browser having a content viewing area for viewing content, the method comprising:

displaying loaded content within the content viewing area of a screen of a hypermedia browser, the screen being without a "load status" graphic element, wherein a "load status" graphic element indicates a current content load status of the hypermedia browser;

receiving an instruction to load new content into the content viewing area;

loading such new content into the content viewing area; and

while loading, displaying a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area; and

wherein content comprises data for presentation which is from a source external to the browser.

27.     A method as recited in claim 26 further comprising, upon completion of the loading, removing the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed.



LEE & HAYES, PLLC                                    8          0815010959 G:\Client Files\MSI-0161US\MSI-161US M06.doc

MOTM_WASH1823_0050513

28.    (Amended) A computer-executable instructions that, when executed by a computer, perform a method of indicating a content "load status" of a hypermedia browser having a content viewing area for viewing content, the method comprising:

displaying loaded content within the content viewing area of a screen of a hypermedia browser, the screen is without a "load status" graphic element, wherein a "load status" graphic element indicates a current content load status of the hypermedia browser;

receiving an instruction to load new content into the content viewing area;

loading such new content into the content viewing area; and

while loading, displaying a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area; and

wherein content comprises data for presentation which is from a source external to the browser.

29.    A computer-readable medium as recited in claim 28 further having additional computer-executable instructions that perform a method comprising, upon completion of the loading, removing the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed.



MOTM_WASH1823_0050514

192

30.    (Amended)   An information processing device comprising:

a processor;

a display;

a hypermedia browser executing on the processor to load and display content in a content viewing area on the display;

wherein the hypermedia browser is configured to operate in a content-loading mode and a content-loaded mode;

in the content-loaded mode, the hypermedia browser displays loaded content in the content viewing area and no "load status" graphic element is displayed, wherein absence of such "load status" graphic element indicates that the browser is in the content-loaded mode;

in the content-loading mode, the hypermedia browser loads content, displays such content in the content viewing area as it loads, and displays a "load status" graphic element over the content view area obstructing part of the content displayed in the content viewing area, wherein presence of such "load status" graphic element indicates that the browser is in the content-loading mode; and

wherein content comprises data for presentation which is from a source external to the browser.

31.    A hypermedia browser of claim 1, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.

MOTM_WASH1823_0050515

32. A hypermedia browser of claim 1, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web.

33. A hypermedia browser of claim 6, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.

34. A hypermedia browser of claim 6, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web.

35. A hypermedia browser of claim 11, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.

36. A hypermedia browser of claim 11, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web.

194

MOTM_WASH1823_0050516

37. A hypermedia browser of claim 26, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.

38. A hypermedia browser of claim 28, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web.

39. A hypermedia browser of claim 28, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.

40. A hypermedia browser of claim 28, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web.

41. A hypermedia browser of claim 30, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.

MOTM_WASH1823_0050517

**42.**    A hypermedia browser of claim 30, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash, scripting language for the world wide web.

13

MOTM_WASH1823_0050518

## **REMARKS**

Applicant respectfully requests entry of the following remarks and amendments. Also, Applicant respectfully requests reconsideration of the subject application and allowance of all pending claims.

References herein to the Office Action (or simply the Action) are to the last Office Action, dated February 27, 2001, of U.S. Patent Application Serial No.08/851,877, filed 5/6/97.

Applicant respectfully requests reconsideration and allowance of all of the claims of the application. After this Response, claims 1-42 are still pending. No claims are cancelled. New claims 31-42 are added. Claims 1, 6, 11, 26, 28 and 30 are amended.

The Applicant expressly grants permission to the Office to interpret all pending claims of this application.

### **Formal Request for an Interview**

Applicant expects the comments herein to be persuasive. If not, however, Applicant formally requests a telephonic interview in order to discuss whether any further progress can be made towards allowance of this case. Thus, the undersigned would appreciate a telephone call before issuing a subsequent Action.

Please contact the undersigned to schedule a telephonic interview that is convenient to the Examiner. Applicant hopes that an oral discussion can help us achieve our common goal, which is speedy completion of prosecution of this application.

LEE & HAYES, PLLC                    **14**       0815010959 G:\Chenx Files\MSI-0161US\MSI-161US M06.doc

MOTM_WASH1823_0050519

**Prior Art Status of References**

Applicant does not explicitly or implicitly admit that any reference is prior art. Nothing in this communication should be considered an acknowledgement, acceptance, or admission that any reference is considered prior art.

**"Content"**

Applicant states that the term "content" found in the claims comprises "data for presentation which is from a source external to the browser." Applicant states that, at the time of filing of this application, this is the plain and ordinary meaning of "content" to those of ordinary skill in the art.

Furthermore, examples of content may comprise visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language. Further still, examples of content may comprise HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash, scripting language for the world wide web.

**Telephone Interview**

Applicant thanks the Examiner for talking with an attorney for the Applicant, Kasey Christie, via the telephone on several occasions since the issuance of the last Action. This response and amendment is in response to those discussions.

At the Examiner's request, Applicant discusses the meaning of the term "content" as it is used in the claims. With the amendments and new claims provided herein, the Applicant has defined the nature of "content."

198

MOTM_WASH1823_0050520

With respect to issues unrelated to the meaning of "content" (which were not discussed with the Examiner via telephone conferences at the request of the Examiner), Applicant maintains its positions stated in previous communications. In particular, Applicant maintains that the Office has not established a *prima facie* of obviousness. Applicant's prior remarks are reproduced here for completeness.

**Claim Rejections – 35 USC § 103 – Obviousness**

The Office rejects all claims under §103(a) as being unpatentable over U.S. Patent No. 5,760,771 to Blonder et al. ("Blonder"), U.S. Patent No. 5,973,692 to Knowlton et al. ("Knowlton"), U.S. Patent No. 5,983,005 to Monteiro et al. ("Monteiro"), and U.S. Patent No. 6,101,510 to Stone et al. ("Stone"). Applicant respectfully traverses the rejections.

*Prima facie* case is not established

Applicant submits that the Office has failed to establish its *prima facie* case that claims 1-30 are unpatentable because they are obvious over a combination of cited references. Applicant submits that no combination of the cited references produces combinations having all of the elements and features of claims 1-30.

Although some claims are worded differently from others (and may have different claimed elements and features), claims 1-30 recite a common core concept that does not appear in any of the cited references. The core concept is a non-content graphic element appearing over a content area that is indicative of present condition where content is being loaded into the content area.

MOTM_WASH1823_0050521

Again, Applicant qualifies the statement of the core concept by noting that each claim is to read and interpreted on its own. The claims of this application may approach this core concept from different angles and color it with different hues.

For instance, claim 1 recites its view of the core concept this way: "...display a temporary graphic element over the content viewing area during times when the browser is loading content, wherein the temporary graphic element is positioned over the content viewing area to obstruct only part of the content in the content viewing area, wherein the temporary graphic element is not content." In this case, the display of the non-content graphic element coincides with the loading of content. Claim 18, which is dependent upon claim 1, further elaborates that the display of the non-content graphic element is indicative of the browser "...loading content."

In another instance, claim 26 recites its view of the core concept this way: "...wherein a 'load status' graphic element indicates a current content load status of the hypermedia browser..." and "...loading...new content into the content viewing area; and while loading, displaying a 'load status' graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area..."

200

MOTM_WASH1823_0050522

In previous Actions, the Office compares Blonder's content elements to non-content elements of the claims and Knowlton non-content elements to content elements of the claims. Therefore, Applicant submits that an agreed understanding of the term "content" will further our mutual goal, which is speedy completion of prosecution of this application. Applicant submits that those who are skilled in the art of hypermedia browsers and related fields intuitively understand the concept of "content."

Before the submission of Applicant's Preliminary Amendment dated July 17, 2000, the Examiner and an attorney for the Applicant, Kasey Christie, discussed the meaning of "content" over the telephone. As a result of that discussion, the Office found and cited Monteiro—in particular, Fig. 19 of Monteiro. This figure illustrates traditional "pull-down" menus in a windowing environment, which may be displayed over the content of a hypermedia browser. Traditional "pull-down" menus are not content.

Applicant respectfully submits that the Office's reference to Fig. 19 of Monteiro in the Action seems to indicate an agreement regarding the meaning of "content" within the context of Applicant's application. However, instead of withdrawing Blonder and Knowlton, the Office maintains the same rejections based upon Blonder and Knowlton, but the Office now combines Stone and Monteiro with them.

Applicant submits that the cited references do not disclose what the Office says that they do. Applicant submits that the Office equates content in cited references to claimed non-content. In addition, Applicant submits that the Office equates non-content in cited references to claimed content.

MOTM_WASH1823_0050523

Furthermore, the Office supports rejections of claims 17-24 based upon their similarity of scope with rejected claims 1-16. However, Applicant submits that the wording and approach of claims 17-24 are different from claims 1-16. As such, Applicant submits that claims 17-24 should be examined independently of claims 1-16. Applicant respectfully submits that, with regard to claims 17-24, the Office has failed to establish its *prima facie* case because it has not examined these claims.

**Claims 1-16**

The Office equates claims sets 1-5, 6-10, and 11-15 to each other. Applicant respectfully submits that they are not equivalent. The independent claims (1, 6, and 11) of each set are different from each other.

Claim 1

The Office states that claim 1 is obvious because all of the claimed features and elements of claim are found in a combination of Blonder, Knowlton, Monteiro, and Stone.

Applicant submits that Office has not made a *prima facie* case of obviousness for claim 1. The cited references do not include elements that the Office indicates that they do. Furthermore, the combination of the cited references does not include all of the claimed elements of claim 1.

The Office states that Blonder shows many of the features of claim 1. Applicant disagrees.

Blonder's Padding is Content. Claim 1 recites that the "...temporary graphic element is not content...." The Office equates Blonder's "padding" with

MOTM_WASH1823_0050524

Applicant's "…temporary graphic element…." However, Applicant submits that the "padding" is not equivalent because Blonder's *padding is content.* At col. 3, lines 34-36, Blonder states that the padding "is predetermined content." Blonder states that it's padding is content.

Knowlton. To support its proposition that Knowlton teaches the "limited display area" and the "obstruct only part of the content" features, the Office cites the Abstract of Knowlton; col. 26, lines 20-64, especially lines 60-64; and col. 42, lines 30-34. However, Applicant submits that Knowlton does not teach either of these features.

Limited Display Area. Applicant cannot find any language that teaches a "limited display area" in the cited portions or, in fact, in any other portion of Knowlton. Applicant did find several references within Knowlton that generally refer to packing icons on a display. However, none of those references is to a "limited display area." Instead, they appear to refer to any display. Specifically, see col. 41, lines 34-46. Applicant does not find any reference to a "limited display area" in Knowlton.

Indeed, Applicant found where Knowlton specifically refers to a "typical display." In the "Background" section of Knowlton, it discusses the problem that Knowlton is attempting to solve and its related technology. Knowlton expressly refers to the problem of "displaying such graphical representations…on a *typical display*" (col. 2, lines 18-23) (emphasis added).

Obstruct only part of the content. The Office focuses its attention on a block labeled 210 and shown in Fig. 2A of Knowlton. This block is called the "original image" within Knowlton.

MOTM_WASH1823_0050525

It appears that the Office equates (or analogizes) Knowlton's "original image" 210 to the claimed "content viewing area" of claim 1. Applicant submits that the original image 210 of Knowlton is NOT equivalent (or analogous) to a "content viewing area" as claimed in claim 1. Application provides two main reasons.

First, claim 1 recites a "...*content* viewing area..." and not just a "viewing area." The original image in Knowlton does not display content. It "displays" nothing. It is an image. It is not a display, a window, a screen, or anything else capable of displaying. Since it cannot display anything, it cannot be an area for viewing content. The original image in Knowlton is something that is displayed rather then something that displays.

Second, Applicant respectfully submits that the Office has misinterpreted Knowlton (in particular, Fig. 2A). The graphic icon 144 of Knowlton is incapable of "obstructing only part of the content in the content viewing area." It does not do so for several reasons, for example:

- The original image 210 of Knowlton is not a "content viewing area"; therefore, if the graphic icon was covering the original image 210, it is NOT "in the content viewing area" as recited by claim 1;

- The Office appears to imply the graphic icon 144 of Fig. 2A of Knowlton is capable of being displayed over the original image. This is not true. Instead, the graphic icon represents a portion that is cut away from the original image. Notice the arrow points from the box in the original image to the box labeled graphic icon 144. The icon is taken from the original image. It is NOT displayed over the image. Nowhere in Knowlton does it say that the graphic icon is

MOTM_WASH1823_0050526

displayed over the original image.   Instead, Knowlton says, for example, "Graphic 44 Image 220 represents the region of Original Image 210 that has been selected...for construction of the Graphic Icon 144..." (col. 19, lines 39-41).   Therefore, graphic icon 144 never "...obstruct[s any part of] the content..." as recited by claim 1.

Monteiro. Office refers to the "pull-down" menus of Monteiro to support its position that claim 1 is obvious.   However, these pull-down menus are not "...configured to display a temporary graphic element over the content viewing area during times when the browser is loading content..." as recited by claim 1. Since they are pull-down menus, they will be displayed when directed to do so by a user.

Lack of Motivation

In addition, the Office failed to provide any evidence of a suggestion, teaching, or motivation to combine Blonder, Knowlton, Monteiro, and Stone. The Office has not shown any such evidence within the cited references.   The Office has not shown any such evidence outside of the cited references that one of ordinary skill in the art (OOSA) would be motivated to combine the references in the manner specified by the Office.

In the Action, the Office supports its obviousness determination for the combination by stating multiple times that OOSA would be motivated for the reasons "noted in the previous paragraphs."   Specifically, this statement is made three times.

The Office states that OOSA would be motivated for the reasons "noted in the previous paragraphs" the very first time in the Action that the Office combines

205

elements found in the cited references. Specifically, that is when the Office combines pieces from Knowlton and Blonder at page 4, first full paragraph of the Action. However, no previous paragraphs exist to contain the referenced motivation.

Again, the same statement is made when the Office combines the combination of Knowlton and Blonder with a piece Stone at page 4, paragraph 4 of the Action. Yet again, the statement is made when the Office combines the combination of Knowlton, Blonder, and Stone with a piece of Monteiro at page 4, paragraph 2 in the Action.

However, Applicant cannot locate the referenced motivation anywhere in the Action. The Office never explains why OOSA would be motivated to combine the pieces found in each reference to form a combination as recited in claim 1. Applicant respectfully submits that no such motivation exists.


Claim 6

This claim is directed to an information processing device. In addition to that difference, this claim differs from claim 1 in other ways. For example, claim 6 recites, "visible content" and "the graphic element indicates to a user that the browser is loading content." These features are not found in any cited reference.

206

MOTM_WASH1823_0050528

### Claim 11

This claim is directed to a method. In addition to that difference, this claim differs from claim 1 in other ways. For example, claim 11 recites, "displaying content in a content viewing area." This means that the content is visible. Like claim 6 above, this feature is not found in any cited reference.

### Claims 2-6, 7-10, and 12-16

Dependent claims 2-6, 7-10, and 12-16 are allowable because of their dependence from allowable base claims (1, 6, and 11), and for additionally recited features that are not shown by the cited references in the context defined by the base claims. These claims are allowable whether their base claims are allowable or not.

### Claims 2, 5, 7, 10, 12, and 15

Claims 2, 5, 7, 10, 12, and 15 include a feature where the temporary graphic element is animated. The Office states that this feature is obvious because Blonder suggests such animation. However, Applicant submits that Blonder does not suggest this. Rather, Blonder discloses use of animated *content*. The "...graphic element..." of these claims is "...not content..."; therefore, Blonder does not suggest the use of an animated graphic element that is not content.

If the Office maintains its rejection of these claims based upon the animated content of Blonder, Applicant requests that the Office explain how the content of Blonder is equivalent to the non-content of the graphic element of these claims.

MOTM_WASH1823_0050529

### Claims 3, 8, and 13

Claims 3, 8, and 13 recite that the temporary graphic element is displayed "...in a corner of the content viewing area...." In addressing these claims, the Office mentions that using a corner "is a well known feature of Windows windowing and graphical icons, such as mentioned in Knowlton et al. See column 26, lines 60-64." Applicant cannot find any suggestion in the Knowlton that establish the obviousness of using a corner of a "...content viewing area..." to display a "...temporary graphics element..." when "...loading content...."

Regardless whether it is well known or not, Applicant submits that it is <u>not</u> generally known to place a graphic element in the corner of a "...*content viewing area*..." instead of the corner of the *window*. This feature is illustrated at element 64 of Fig. 3 of the application. Note that element 64 is not part of the window itself. Rather, it is over the content viewing area. There is nothing in the cited references to suggest that a corner of a content viewing area should be used for a graphics element such as the one claimed.

If the Office maintains its rejection of these claims, Applicant requests that the Office explain how use of a corner of a window is equivalent to use of the corner of a "...content viewing area..." as recited in these claims.

### Claims 4, 5, 9, 10, 14, and 15

Claims 4, 5, 9, 10, 14, and 15 recite that the temporary graphic element is presented "...within a temporary window in a windowing operating environment...." Although the Office may have established the achievability of this feature, it has not established any *suggestion or motivation for actually implementing it*. There is no indication in the cited references that anyone has ever

MOTM_WASH1823_0050530

considered using a "window" to display a graphics element such as this when content is loading.

The Office specifically refers to icon 144 of Figure 2A of Knowlton. Nowhere in Knowlton does it suggest that icon 144 be presented "...within a temporary window...." See the above discussion of Knowlton with respect to claim 1.

Claim 16

The Office states that computer readable storage medium is well known in the art of computers. This may or may not be true. Regardless, claim 16 is allowable because it is dependent from an allowable base claim, claim 11.

**Claims 17-30**

On page 6 of the Action, the Offices states the following (and only the following) to support its obviousness rejection of claims 17-30:

"In regard to claims 17-24, these claims are of similar scope to claims 1-16. For the reasons stated in the rejections of claims 1-16, claims 17-24 are not patentable.

In regard to claims 25-30, such "load status" [handling] is taught by Stone (column 7, lines 6-14, i.e. "busy" signal to indicate loading)."

Claims 17-30 include elements that are different from claims 1-16 and/or include limitations that do not exist in claims 1-16.

Applicant submits that these two paragraphs fail to provide the requisite support for the Office's conclusion that claims 17-30 are unpatentable because of

MOTM_WASH1823_0050531

obviousness. Therefore, the Office has failed to establish its *prima facie* case that these claims are unpatentable.

Claims 17-24.

Despite the Office's statement that these claims are of "similar scope" to claims 1-16, Applicant submits that these claims are not. Furthermore, Applicant respectfully submits that similarity of scope is not a valid ground for a rejection.

Claim 17. This claim is dependent from claim 1. This claim specifically recites, "the temporary graphic element [displays] over the content viewing area *only during times when the browser is loading visible content*" (emphasis added). None of the cited references contains this feature. In particular, note the bolded and italicized words, "only" and "visible." These limitations are not found in any cited reference. In the Action, the Office did not address this.

Claim 18. This claim is dependent from claim 1. This claim specifically recites, "the temporary graphic element indicates to a user that the browser is loading content." None of the cited references contains this feature. In the Action, the Office did not address this.

Claim 23. This claim is dependent from claim 11 and is similar to claim 18. This claim specifically recites, "the temporary graphic element indicates to a user that the loading step is being performed." None of the cited references contains this feature. In the Action, the Office did not address this.

Claims 19 and 21. Claim 19 is dependent from claim 1 and claim 21 is dependent from claim 6. Specifically, these claims recite, "the temporary graphic element [disappearing] when the browser's loading of content is complete to

MOTM_WASH1823_0050532

indicate to a user that such loading of content is complete." None of the cited references contains this feature. In the Action, the Office did not address this.

Claim 24. This claim is dependent from claim 11 and is similar to claims 19 and 21. This claim specifically recites, "removing the temporary graphic element once the loading step is complete to indicate to a user that the loading step is complete." None of the cited references contains this feature. In the Action, the Office did not address this.

Claim 20 and 22. Claim 20 is dependent from claim 6 and claim 22 is dependent from claim 11. Each claim recites the same feature. Specifically, they recite, "the temporary graphic element is not content." This feature is included in claim 1; therefore, the Action addressed this feature. See Applicant's comments about this feature in its discussion of claim 1 above.

Claims 25-30.

These claims focus on the status of the browser, but they are worded differently from claims 1-16. They include different elements and limitations.

The Office indicates that Stone supports its position that these claims are obvious. Applicant respectfully submits that Stone does not provide the requisite support. The "DownloadBegin" and "DownloadComplete" events described in the cited portion of Stone are program-control events. These are used by application programs to determine when to perform a programmed action. This is not a displayed "load status" graphic element.

Stone says that it provides "...functionality of a web browser to application programs" (col. 5, line 66 through col. 6, line 1); and "...programmers can incorporate this control..." (col. 6, line 5). In col. 6, lines 45-50, Stone explains

the events listed in Table 2.    Table 2 includes the "DownloadBegin" and "DownloadComplete" events cited in the Action.  Stone explains that these events are notification messages to the control's programming interfaces.

Applicant submits that Stone does not disclose, suggest, teach, or motivate one of ordinary skill in the art to display a "load status" of a browser is NOT displayed by a graphic element.

Claim 25.  This claim is dependent from claim 1.  This claim specifically recites, "the temporary graphic element conveys status information of the browser."  None of the cited references contains this feature.

Claims 26-30.  Applicant submits that these claims are worded differently and have a different scope of coverage than claims 1-24.  However, the Action did not provide any information regarding a thorough examination of these claims independent from claims 1-24.  Applicant formally requests an examination of these claims, which is independent of an examination of claims 1-24.

Claims 26 and 28.  These claims are independent.  These claims describe a method (or medium with instructions executing such a method) of indicating a content "load status" that is not found in any of the cited references.

Claims 27 and 29.  These claims are dependent from claims 26 and 28, respectively.  These claims describe an additional step to a method (or medium with instruction executing such a method) of indicating a content "load status" that is not found in any of the cited references.  The step involves "removing the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed."

Claim 30.  This claim is independent.  This claim describes a hypermedia browser  (of an information processing devices) that is configured to operating in



MOTM_WASH1823_0050534

at least two modes: content-loading and content-loaded. The claim describes the modes in detail. None of the cited references includes the features of this claim.

Accordingly, Applicant submits that all of the pending claims in a condition for allowance. Applicant asks the Office with withdraw its rejections and allow all pending claims.

**Formal Request for an Interview**

Applicant expects the above comments to be persuasive. If not, however, Applicant formally requests a telephonic interview in order to discuss whether any further progress can be made towards allowance of this case. Thus, the undersigned would appreciate a telephone call before issuing a subsequent Action.

Please contact the undersigned to schedule a telephonic interview that is convenient to the Examiner. Applicant hopes that an oral discussion can help us achieve our common goal, which is speedy completion of prosecution of this application.

LEE & HAYES, PLLC                30                0813010959 G:\Client Files\MSI-0161US\MSI-161US.M06.doc

MOTM_WASH1823_0050535

## Conclusion

All pending claims are in condition for allowance. Applicant respectfully requests reconsideration and prompt issuance of the application. If any issues remain that prevent issuance of this application, the Office is urged to contact the undersigned attorney before issuing a subsequent Action.

Respectfully Submitted,

Dated: 8-15-01    By: _____

Kasey C. Christie
Reg. No. 40559
(509) 324-9256 x232
kasey@leehayes.com
www.leehayes.com

LEE & HAYES, PLLC                    31          0815010959 G:\Client Files\MSI-0161US\MSI-161US.M06.doc

MOTM_WASH1823_0050536



**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address:   COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| | | | |

| EXAMINER |
|---|
| |

| ART UNIT | PAPER NUMBER |
|---|---|
| | 𝒰 |

**DATE MAILED:**

Please find below and/or attached an Office communication concerning this application or proceeding.

Commissioner of Patents and Trademarks

PTO-90C (Rev 11/00)

1- File Copy

MOTM_WASH1823_0050549

| | Application No. | Applicant(s) | |
|---|---|---|---|
| ***Notice of Allowability*** | 08/851,877 | Shell et al. | |
| | Examiner | Art Unit | |
| | David Jung | 2171 | |

**--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance and Issue Fee Due or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to 8/20/2001 .

2. ☒ The allowed claim(s) is/are 1-42 .

3. ☐ The drawings filed on _____ are acceptable as formal drawings.

4. ☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

    a) ☐ All   b) ☐ Some*   c) ☐ None  of the:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

      3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   *Certified copies not received: _____ .

5. ☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE FOR SUBMITTING NEW FORMAL DRAWINGS, OR A SUBSTITUTE OATH OR DECLARATION. This three-month period** for complying with the REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL is extendable under 37 CFR 1.136(a).

6. ☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

7. ☒ Applicant MUST submit NEW FORMAL DRAWINGS

    (a) ☒ including changes required by the Notice of Draftsperson's Patent Drawing Review (PTO-948) attached

        1) ☐ hereto  or  2) ☒ to Paper No. 5 .

    (b) ☐ including changes required by the proposed drawing correction filed _____ , which has been approved by the examiner.

    (c) ☐ including changes required by the attached Examiner's Amendment/Comment or in the Office action of Paper No. _____ .

    Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings. The drawings should be filed as a separate paper with a transmittal letter addressed to the Official Draftsperson.

8. ☐ Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

Any reply to this letter should include, in the upper right hand corner, the APPLICATION NUMBER (SERIES CODE/SERIAL NUMBER). If applicant has received a Notice of Allowance and Issue Fee Due, the ISSUE BATCH NUMBER and DATE of the NOTICE OF ALLOWANCE should also be included.

Attachment(s)

| | | | |
|---|---|---|---|
| 1 ☒ | Notice of References Cited (PTO-892) | 2 ☐ | Notice of Informal Patent Application (PTO-152) |
| 3 ☐ | Notice of Draftsperson's Patent Drawing Review (PTO-948) | 4 ☐ | Interview Summary (PTO-413), Paper No. _____ . |
| 5 ☐ | Information Disclosure Statement(s) (PTO-1449), Paper No(s). _____ | 6 ☒ | Examiner's Amendment/Comment |
| 7 ☐ | Examiner's Comment Regarding Requirement for Deposit of Biological Material | 8 ☒ | Examiner's Statement of Reasons for Allowance |
| 9 ☐ | Other | | |

THOMAS BLACK
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 2100

Notice of Allowability

Part of Paper No. 21

MOTM_WASH1823_0050550

Application/Control Number: 08/851,877                                        Page 2

Art Unit: 2171

## DETAILED ACTION

**III.    DETAILED ACTION**

### Amendment

1.    On August 20, 2001, Applicant filed an amendment to the
claims and provided explanations for the terms used in the
claims.

2.    As of this Office Action, claims 1-42 are presented for
examination.

### Examiner's Comment

3.    On August 30, 2001, the Examiner (David Jung of Art Unit
2171) and Applicant's representative (Mr. Kasey C. Christie,
USPTO Reg. No. 40,559, of Lee & Hayes, Spokane, Washington)
discussed the word "content."  The is a specific term within the
art.  Nevertheless, this word is also used outside the art with a
wide (and different) meaning.  Therefore, the Examiner and
Applicant's representative agreed to add an additional comment
regarding this word "content."  This is done through citing a
chart on an on-line (in the World Wide Web) posting of November
2000 issue of the magazine "Scientific American."  This chart is
at: www.sciam.com/2000/1100issue/1100stjohnbox1.html.  Readers of

MOTM_WASH1823_0050551

Application/Control Number: 08/851,877                                    Page 3

Art Unit: 2171

this file history are directed to the use of that word "content"
in that chart.

### *Allowable Subject Matter*

4.    Claims 1-42 are allowed.

5.    The following is an examiner's statement of reasons for
allowance:

6.    Regarding claims 1-42, such particular handlings (among
others) of browser, display, and content in such particular
context in such particular situations are not taught or suggested
by the prior art.  Pages 15-31 of the amendment gives the
explanations for the terms used in the claims.  Among others, the
following three issues are worthy of mention.

7.    First, regarding browsers, Applicant specially notes (such
as at page 17 of the amendment) that the claimed invention is
directed to loading into the browser.  This means that the
loading is not done merely to the hard drive or to the memory.
The loading is done for the specific purpose of displaying the
content with the browser.

8.    Second, regarding display, Applicant specially notes that
the word "display" refers to the computer doing the act of
displaying (i.e. the plain meaning of that word "display") in a

MOTM_WASH1823_0050552

Application/Control Number: 08/851,877                                    Page 4

Art Unit: 2171

limited display area within a content viewing area.  At page 20,
Applicant specifically contrasts this with the mere displaying on
a typical display.  At page 22, Applicant specially contrasts
"display" of the claimed invention with a "pull-down" menu.
Applicant argues that a "pull-down" menu is driven by a user,
rather than by the computer.  Using these and other arguments in
the amendment, Applicant has specifically defined this word
"display" (especially because Applicant has chosen to take the
plain, albeit narrow, meaning).  Applicant is entitled to do so
because an applicant is entitled to be his own lexicographer to
this extent.

9.    Third, regarding content, Applicant specially notes the
meaning of this word "content" to refer to the specific meaning
in the art.  This was also noted in the previous section of
"Examiner's Comment."

10.  Upon considering all relevant issues, including these three
terms, one can then assess the meanings and the scopes of the
claims.  As noted during the file history (see amendment of
August 20, 2001, especially pages 15-31), the claimed invention
is directed to covering a part of the content viewing area with a
graphic element.  This graphic element is not additional content.
Rather, this graphic element would indicate loading status of the

MOTM_WASH1823_0050553

Application/Control Number: 08/851,877                               Page 5

Art Unit: 2171

content that is being loaded into the browser.  To some degree,
this appears counterintuitive and against the normal flow of the
art.  If such a graphic element would cover content, this would
interfere with the view offered to the user.  This is especially
true since the browser is involved.  Presumably, the user would
be using the browser to browse; any content being loaded to the
browser would be wanted by the user.  Instead of having the
graphic element away from the content, the graphic element covers
the content.  The prior art of record does not teach or suggest
the claimed invention.

### Conclusion

11.  The prior art made of record and not relied upon is
considered pertinent to applicant's disclosure.

### Other Prior Art of Record

12.  The prior art disclosed general background.

### Points of Contact

13.  Any comments considered necessary by applicant must be
submitted no later than the payment of the issue fee and, to
avoid processing delays, should preferably accompany the issue

MOTM_WASH1823_0050554

Application/Control Number: 08/851,877                    Page 6

Art Unit: 2171

fee.  Such submissions should be clearly labeled "Comments on

Statement of Reasons for Allowance."

14.      **Any response to this action should be mailed to:**

        Commissioner of Patents and Trademarks

        Washington, D.C. 20231

    **or faxed to:**

        (703) 308-9051, (for formal communications

        intended for entry)

    **Or:**

        (703) 305-9731 (for informal or draft

        communications, please label "PROPOSED" or

        "DRAFT")

    Hand-delivered responses should be brought to Crystal Park II,

    2121 Crystal Drive, Arlington. VA., Sixth Floor  (Receptionist).

221

MOTM_WASH1823_0050555

Application/Control Number: 08/851,877                          Page 7

Art Unit: 2171

Any inquiry concerning this communication or earlier
communications from the examiner should be directed to David Jung
whose telephone number is (703) 308-5262 or Thomas Black whose
telephone number is (703) 305-9707.

THOMAS BLACK
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 2100

David Jung
-----------
Patent Examiner
September 9, 2001

222