UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION, | CASE NO. C10-1823JLR |
| Plaintiff, | ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | |
| MOTOROLA, INC., et al., | |
| Defendants. | |

## I.    INTRODUCTION

This matter comes before the court on Plaintiff Microsoft Corporation's

("Microsoft") motion for partial summary judgment (Mot. (Dkt. # 77)).  The court has

reviewed Microsoft's motion, Defendants Motorola, Inc., Motorola Mobility, Inc., and

General Instrument Corporation's (collectively, "Motorola") response (Resp. (Dkt. #

90)), Microsoft's reply (Reply (Dkt. # 96)), all other pertinent documents in the record,

ORDER- 1

1  and the relevant law.  For the reasons set forth below, the court GRANTS in part and

2  DENIES in part Microsoft's motion.[1]

3                          **II.      BACKGROUND**

4  **A.      The IEEE and the ITU as Standard Setting Organizations**

5          Microsoft and Motorola are both members of the Institute of Electrical and

6  Electronics Engineers ("IEEE") and the International Telecommunication Union ("ITU").

7  (Mot. at 9.)  The IEEE and the ITU, neither of which are parties to the instant dispute, are

8  international standards setting organizations.  Standards setting organizations ("SSOs")

9  play a significant role in the technology market by allowing companies to agree on

10  common technological standards so that all compliant products will work together.

11  Standards lower costs by increasing product manufacturing volume, and they increase

12  price competition by eliminating "switching costs" for consumers who desire to switch

13  from products manufactured by one firm to those manufactured by another.

14          One complication with standards is that it may be necessary to use patented

15  technology in order to practice them.  If a patent claims technology selected by a SSO,

16  the patent is called an "essential patent."  Here, Motorola is the owner of several

---

17          [1] Both parties have requested formal oral argument.  (Mot. at 1; Resp. at 1.)  The court,

18  however, determines that this motion is appropriate for decision without oral argument.  The
   general rule is that the court may not deny a request for oral argument made by a party opposing

19  a motion for summary judgment unless the motion is denied.  *Dredge Corp. v. Penny*, 338 F.2d
   456, 462 (9th Cir. 1964).  Further, oral argument is not required if the party requesting oral

20  argument suffers no prejudice.  *Houston v. Bryan*, 725 F.2d 516, 517-18 (9th Cir. 1984).  Here,
   because the court is denying the portions of Microsoft's motion opposed by Motorola, the court

21  finds that Motorola is not prejudiced by the court's decision in this order.  Furthermore, the
   issues relevant to the present motion were discussed at a February 13, 2012 status conference

22  before the court.

ORDER- 2

declared-essential patents to certain standards established by the IEEE and the ITU. (*See* Mot. at 10.)  In order to reduce the likelihood that owners of essential patents will abuse their market power, many SSOs, including the IEEE and the ITU, have adopted rules related to the disclosure and licensing of essential patents.  The policies often require or encourage members of the SSO to identify patents that are essential to a proposed standard and to agree to license their essential patents on reasonable and non-discriminatory ("RAND") terms to anyone who requests a license.  Such rules help to insure that standards do not allow essential patent owners to extort their competitors or prevent them from entering the marketplace.

**B.     Facts Relating to Microsoft's Present Motion**

This lawsuit involves two standards—the IEEE 802.11 wireless local area network ("WLAN") Standard ("802.11 Standard") and the ITU H.264 advanced video coding technology standard[2] ("H.264 Standard").  (Mot. at 9-10.)  The IEEE's standard setting process is governed by its Intellectual Property Rights Policy (the "IEEE Policy").  (*See id.* at 10-11.)  The IEEE Policy provides that "IEEE standards may be drafted in terms that include the use of Essential Patent Claims."  (IEEE Pol. (Dkt. #79-1) at 18 (Section 6.2).)  The IEEE Policy defines the term "Essential Patent Claim" as one or more claims in an issued patent (or pending patent application) that are "necessary to create a compliant implementation of either mandatory or optional portions of the normative

_____

[2] The ITU developed the H.264 Standard jointly with two other SSOs—the International Organization for Standardization and the International Electrotechnical Commission.  (Mot. at 9-10.)

clauses of the [Proposed] IEEE Standard . . . ."  (*Id.*)  If "Essential Patent Claims" are

included in an IEEE standard, IEEE requires the patent holder to either state that it is not

aware of any patents relevant to the IEEE standard or to provide the IEEE with a Letter

of Assurance.  (*Id.*)  Any such Letter of Assurance must include either (1) a disclaimer to

the effect that the patent holder will not enforce the "Essential Patent Claims," or (2):

> [a] statement that a license for a compliant implementation of the standard
> will be made available to an unrestricted number of applicants on a
> worldwide basis without compensation or under reasonable rates, with
> reasonable terms and conditions that are demonstrably free of any unfair
> discrimination. . . .

(*Id.*)  With respect to the reasonableness or discriminatory nature of any license, the IEEE

Policy states:

> The IEEE is not responsible for identifying Essential Patent Claims for
> which a license may be required, for conducting inquiries into the legal
> validity or scope of those Patent Claims, or *for determining whether any
> licensing terms or conditions provided in connection with submission of a
> Letter of Assurance, if any, or in any licensing agreements are reasonable
> or non-discriminatory*.

(*Id.* (emphasis added).)  Motorola has submitted Letters of Assurance to the IEEE in

connection with the 802.11 Standard stating that it "will grant" or "is prepared to grant" a

license under RAND terms.  (Mot. at 11.)

     Like the IEEE, the ITU has established a policy (the "ITU Policy") with respect to

holders of patents "essential" to implementing a standard.  (*See* ITU Pol. (Dkt. # 79-3).)

Such patent holders must file with the ITU a "Patent Statement and Licensing

Declaration" declaring whether they (1) will negotiate licenses free of charge on a RAND

basis; (2) will negotiate licenses on a RAND basis; or (3) are not willing to comply with

1    either of the first two options.  (*See id.* at 9-12.)  The ITU Policy and the Patent Statement

2    and Licensing Declaration both state that "[s]uch negotiations are left to the parties

3    concerned and are performed outside [the ITU]."  (*Id.* at 9, 12.)  Motorola has submitted

4    Patent Statement and Licensing Declarations to the ITU with respect to its declared-

5    essential patents relating to the H.264 Standard.  (Mot. at 77.)

6    **C.    Procedural History**

7         This matter has a complex procedural history.  Originally, the parties were

8    involved in two separate actions, one in which Microsoft was the plaintiff, No. C10-

9    1823JLR (the "Microsoft Action"), and one in which Motorola was the Plaintiff, No.

10   C11-0343JLR (the "Motorola Action").  On June 1, 2011, the court consolidated the two

11   cases under Cause No. C10-1823JLR.  (Order (Dkt. # 66 at 12).)

12        In the Microsoft Action, Microsoft's amended complaint alleges that through

13   participation in the industry-standard setting process for both the 802.11 Standard and the

14   H.264 Standard, Motorola agreed to offer licenses on RAND terms to Microsoft (and

15   other potential licensees) for patents "essential" to practice the respective standards, and

16   that Motorola has failed to fulfill these obligations.  (*See* Microsoft Compl. (Dkt. # 53) ¶¶

17   80-94.)  Specifically, Microsoft alleges claims against Motorola for breach of contract

18   and promissory estoppel.[3]  (*Id.*)  In response, Motorola asserted affirmative defenses and

19   counterclaims.  (*See* Dkt. # 68.)  Motorola's counterclaims, which are relevant to the

20

21        [3] Microsoft's action against Motorola also included claims for waiver and declaratory
     judgment, but the court's June 1, 2011 order dismissed both of those claims, leaving only the
22   breach of contract and promissory estoppel claims.  (Order at 12.)

ORDER- 5

1  instant motion for summary judgment, seek a declaratory judgment that (1) it has not

2  breached any RAND obligations, and (2) Microsoft repudiated and/or rejected the

3  benefits of Motorola's RAND obligations.  (*Id.* ¶¶ 61-75 (Counterclaims).)

4      In the Motorola Action, Motorola's amended complaint for patent infringement[4]

5  alleges that Microsoft infringed U.S. Patent Nos. 7,310,374; 7,310,375; and 7,310,376

6  (the "Motorola Patents").  (Motorola Compl. (C11-0343JLR, Dkt. # 29) ¶¶ 14-40.)  The

7  Motorola Patents relate to the H.264 video compression technology.  (*See id.* ¶¶ 17, 26,

8  35.)  Microsoft answered and asserted affirmative defenses, as well as counterclaims for

9  (1) patent infringement as to U.S. Patent Nos. 6,339,780 and 7,411,582 (the "Microsoft

10  Patents"); (2) breach of contract; and (3) promissory estoppel.[5]  (Dkt. # 37 ¶¶ 11-20, 102-

11  116.)  The latter two claims are substantially (if not precisely) the same as the claims set

12  forth by Microsoft in the Microsoft Action.  (*Compare* C11-0343JLR, Dkt. # 37 ¶¶ 102-

13  116 *with* C10-1823JLR, Dkt. # 53 ¶¶ 80-94.)  In response to Microsoft's counterclaims,

14  Motorola asserted 14 affirmative defenses and brought counterclaims seeking a

15  declaratory judgment that (1) Motorola did not infringe the Microsoft Patents and that the

16  Microsoft Patents are invalid; (2) Motorola met its RAND obligations; and (3) Microsoft

17  repudiated any rights associated with Motorola's RAND statements.  (Dkt. # 67 ¶ 8

18      ————————————

19      [4] Motorola's amended complaint was filed in the Western District of Wisconsin, Civil

20  Action No. 3:10-CV-699, before the case was transferred to this court on February 2, 2012. (Dkt. # 45.)

21      [5] Microsoft's counterclaims also included claims for waiver and declaratory judgment, but the court's June 1, 2011 order dismissed both of those claims, leaving only the two patent

22  infringement claims and the breach of contract and promissory estoppel claims.  (Order at 12.)

1  (Affirmative Defenses); Dkt. # 67 ¶¶ 9-90 (Counterclaims).)  Motorola's latter two

2  counterclaims are substantially (if not precisely) the same and seek the same relief as the

3  counterclaims set forth by Motorola in the Microsoft Action.  (*Compare* Dkt. # 67 ¶¶ 21-

4  90 *with* Dkt. # 68 ¶¶ 61-75.)

5         Microsoft's present motion raises issues relating to the breach of contract and

6  promissory estoppel claims that it asserted in both the Microsoft and Motorola Actions.

7  Microsoft seeks a ruling that:

8         1.  Motorola entered into binding contractual commitments with the IEEE and
            the ITU, committing to license its declared-essential patents on RAND
9           terms and conditions;

10        2.  Microsoft is a third-party beneficiary of Motorola's commitments to the
            IEEE and the ITU;
11
          3.  When offering a license to a third-party beneficiary of Motorola's
12          commitments to the SSOs, Motorola must offer RAND terms and
            conditions;
13
          4.  Motorola's offers to Microsoft to license its H.264 and 802.11 declared-
14          essential patents breached Motorola's RAND obligations because no
            reasonable trier of fact could conclude that the offers were on RAND terms
15          and conditions.

16  (Mot. at 9.)

17        Microsoft's arguments on summary judgment are based on two "demand" letters

18  sent by Motorola to Microsoft relating to licensing of Motorola's declared-essential

19  patents for practicing the 802.11 Standard and the H.264 Standard.  (*See id.* at 12.)  The

20  first letter, which Motorola sent to Microsoft on October 21, 2010, read in pertinent part:

21        This letter is to confirm Motorola's offer to grant Microsoft a worldwide
          non-exclusive license under Motorola's portfolio of patents and pending
22        applications having claims that may be or become Essential Patent Claims

ORDER- 7

> (as defined in section 6.1 of the IEEE bylaws) for a compliant implementation of the IEEE 802.11 Standards. . . .  Motorola offers to license the patents under reasonable and non-discriminatory terms and conditions ("RAND"), including a reasonable royalty of 2.25% per unit for each 802.11 compliant product, subject to a grant back license under the 802.11 essential patents of Microsoft.  As per Motorola's standard terms, the royalty is calculated based on the price of the end product (e.g., each Xbox 360 product) and not on component software (e.g., Windows Mobile Software).

(Dkt. # 79-5 at 2.)  Then, on October 29, 2010, Motorola sent a similar letter regarding the patents related to the H.264 Standard, which stated:

> Motorola offers to license the patents on a non-discriminatory basis on reasonable terms and conditions ("RAND"), including a reasonable royalty, of 2.25% per unit for each H.264 compliant product, subject to a grant back license under the H.264 patents of Microsoft, and subject to any Motorola commitments made to JVT in connection with an approved H.264 recommendation.  As per Motorola's standard terms, the royalty is calculated based on the price of the end product (e.g., each Xbox 360 product, each PC/laptop, each smartphone, etc.) and not on component software (e.g., Xbox 360 system software, Windows 7 software, Windows Phone 7 software, etc.).

(Dkt. # 79-6 at 2.)  Microsoft summary judgment motion argues that these two letters from Motorola breached Motorola's obligations to provide Microsoft and other IEEE and ITU members licenses to Motorola's declared-essential patents on RAND terms.  (*See generally* Mot.)

## III.   STANDARD OF REVIEW

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of*

1  *L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of

2  showing there is no genuine issue of material fact and that he or she is entitled to prevail

3  as a matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets his or her

4  burden, then the non-moving party "must make a showing sufficient to establish a

5  genuine dispute of material fact regarding the existence of the essential elements of his

6  case that he must prove at trial" in order to withstand summary judgment.  *Galen*, 477

7  F.3d at 658.  The court is "required to view the facts and draw reasonable inferences in

8  the light most favorable to the [non-moving] party."  *Scott v. Harris*, 550 U.S. 372, 378

9  (2007).

## VI.   ANALYSIS

11      As stated above, Microsoft raises the following four issues:  (1) whether Motorola

12  entered into binding contractual commitments with the IEEE and the ITU, committing to

13  license its declared-essential patents on RAND terms and conditions; (2) whether

14  Microsoft is a third-party beneficiary of Motorola's commitments to the IEEE and the

15  ITU; (3) whether, when offering a license to a third-party beneficiary of Motorola's

16  commitments to the SSOs, Motorola must offer RAND terms and conditions; and (4)

17  whether Motorola's offers to Microsoft to license its H.264 and 802.11 declared-essential

18  patents breached Motorola's RAND obligations.  For the reasons described below, the

19  court finds in Microsoft's favor on the first two issues, but concludes that Microsoft has

20  not met its burden on summary judgment with respect to the third and fourth issues.

21      First, Microsoft's asks the court to find that:  (1) Motorola entered into binding

22  contractual commitments with the IEEE and the ITU, committing to license its declared-

1    essential patents on RAND terms and conditions; and (2) Microsoft is a third-party

2    beneficiary of Motorola's commitments to the SSOs.  (Mot. at 9.)  Motorola does not

3    dispute either of these contentions.[6]  (*See generally* Resp.).  The court agrees with

4    Microsoft that through Motorola's letters to both the IEEE and ITU, Motorola has entered

5    into binding contractual commitments to license its essential patents on RAND terms.

6    *See, e.g.*, *Research In Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 797 (N.D. Tex.

7    2008) (denying motion to dismiss where plaintiff stated breach of contract claim based on

8    the defendant's failure to offer reasonable and non-discriminatory terms as it had

9    promised European Telecommunications Standards Institute and the IEEE); *see also*

10   *Ericsson Inc. v. Samsung Electronics, Co.*, Civil Action No. 2:06-CV-63, 2007 WL

11   1202728, at *1 (E.D. Tex. Apr. 20, 2007) (noting that the plaintiff and the defendant

12   asserted claims for breach of contract and acknowledged that licensing obligations were

13   contractual and bound all members of SSOs).

14        Additionally, the court finds that Microsoft, as a member of both the IEEE and

15   the ITU, is a third-party beneficiary of Motorola's commitments to the IEEE and ITU.

16   *See ESS Tech., Inc. v. PC–Tel, Inc.*, No. C-99-20292 RMW, 1999 WL 33520483, at *4

17   (N.D. Cal. Nov. 4, 1999) (holding that the third-party beneficiary of contract between a

18   SSO and the defendant, who held essential patents, had properly stated claim for specific

19   performance of the agreement requiring the defendant to license patents on RAND

20   _____

21        [6] On February 13, 2012, the court held a status conference in which Motorola stated on
     the record that it did not dispute that it entered into the aforementioned binding contractual
22   commitments with the IEEE and the ITU and that Microsoft is a third-party beneficiary of these
     commitments.

1    terms).  Accordingly, the court concludes that there is no genuine issue of material fact

2    and that Microsoft is entitled to judgment as a matter of law with respect to the first two

3    issues raised in Microsoft's motion.

4         Next, Microsoft asks the court to find that "[w]hen offering a license to a third-

5    party beneficiary of Motorola's commitments to the SSOs, Motorola must offer RAND

6    terms and conditions."  (Mot. at 9.)  Microsoft argues that because Motorola committed

7    to make its essential patents relating to the 802.11 and H.264 Standards available to an

8    unrestricted number of applicants on RAND terms, any offer by Motorola must likewise

9    be on RAND terms.[7]  (*See id.* at 18-20.)  Microsoft relies on *Zoran Corp. v. DTS, Inc.*,

10   No. C 08–4655 JF (HRL), 2009 WL 160238 (N.D. Cal. Jan. 20, 2009), where the court

11   briefly discussed the Bylaws of the Blu-Ray Disc Association ("BDA"), which provided

12   for arbitration of disputes "over whether the [patent holding member] is offering a

13   license" of its essential patents on RAND terms.  *Id.* at *3-4.

14        In response, Motorola argues that the language of the IEEE Policy and the ITU

15   Policy does not require Motorola to offer licenses on RAND terms, but only requires that

16   completed licenses be on RAND terms.  (Resp. at 13.)  Motorola contends that both

17   policies contain language that identifies a bilateral negotiation process where the

18   responsibility of determining the precise RAND terms is left to the individual companies

19   to negotiate.  (*Id.* at 13-15.)  According to Motorola, the determination of what

20   _____

21        [7] Microsoft contends that offers on non-RAND terms abuse the power granted to
     Motorola by the inclusion of Motorola's patents in the standards set by the IEEE and the ITU.
22   (Mot. at 19-21.)

ORDER- 11

1    constitutes RAND terms is highly fact-dependent and unique to each licensing situation,

2    thereby making it impractical to require an offer to be on RAND terms when the offeror

3    may not have all of the pertinent information about the potential licensee at the time it

4    makes its initial offer.  (*Id.* at 13-14.)  Further, Motorola distinguishes *Zoran Corp.*

5    arguing that the language contained in the BDA Bylaws spoke directly to "offering" a

6    license on RAND terms, whereas the language in the IEEE Policy and ITU Policy is

7    silent with respect to license offers, and instead focuses on the end result—a RAND

8    license through bilateral negotiation.  (*Id.* at 15.)

9          The parties' dispute regarding whether both the initial license offer and the final

10    negotiated license (Microsoft's contention) or only the final negotiated license

11    (Motorola's contention) must be on RAND terms requires the court to interpret the

12    relevant contracts between Motorola and the SSOs.  The parties' submissions, however,

13    fail to sufficiently discuss the issues of contract interpretation that are now before the

14    court.  Microsoft, which carries the burden on this motion for summary judgment, fails to

15    provide the court with any law on the issue of contract interpretation and does direct the

16    court to any provision in the policies that is relevant to whether an initial offer must be on

17    RAND terms.  Instead, Microsoft argues that Motorola's "exorbitant" royalty demands

18    are the opposite of Motorola's obligation to make its relevant patents available on RAND

19    terms.[8]  (*See* Mot. at 18-20.)  Although Microsoft may ultimately prevail on this point, it

20

21    _____

22          [8] Microsoft also points the court the *Zoran Corp.* case interpreting the Bylaws of the
      BDA.  (Mot. at 21-22.)  The court finds this attempted analogy unpersuasive because the relevant

1    has little to do with the issue at hand—how the court should interpret the IEEE and ITU

2    Policies with respect to initial offers.  In other words, Microsoft has jumped the gun by

3    focusing on Motorola's actions as opposed to how the court should interpret the IEEE

4    Policy and ITU Policy with respect to whether initial offers must be on RAND terms

5        For its part, Motorola similarly provides the court with no case law on the issue of

6    contract interpretation and argues that the claim language of the policies dictates a

7    finding in its favor.  (Resp. at 13-15.)  Although Motorola cites to specific provisions of

8    the policies in support of its position, Motorola fails to explain how the those provisions

9    fit into the framework of the applicable law of contract interpretation.  The court does not

10   find Motorola's *ipse dixit* argument compelling.

11       The parties' lack of briefing under the applicable law leaves the court to guess at,

12   among other things, which choice of law governs the policies, whether the policies are

13   ambiguous,[9] whether review of extrinsic evidence is appropriate in interpreting the

14   policies.  Because Microsoft has failed to properly brief the issues the court must decide,

15   the court finds that Microsoft has not carried its burden of showing an absence of

16   material questions of fact and that it is entitled to prevail as a matter of law.  Accordingly,

17   the court denies Microsoft's motion for summary judgment with respect to the third

18   issue—whether Motorola must offer on RAND terms and conditions.

19

20   language of the Bylaws of the BDA is entirely different from the relevant language of the
     policies in question.  (*See* Resp. at 15.)

21       [9] Under the law in at least some states, ambiguous contracts must be interpreted by the

22   fact finder and not the court on summary judgment.  *See, e.g.*, *Wm. Dickson Co. v. Pierce Cnty.*,
     116 P.3d 409, 413 (Wash. Ct. App. 2005).

ORDER- 13

1    The court would be remiss, however, to point out the holes in the parties' briefing

2  without providing guidance for the path forward.  Although the court does not intend to

3  forecast any future rulings on this issue, the court expounds on its independent review of

4  the IEEE Policy and ITU Policy.  At the outset, the court notes that the policies make

5  clear (and the parties do not dispute) that the patent holder of an essential patent must

6  grant licenses on RAND terms.   The court also notes that—as Motorola points out—both

7  policies lend themselves to a negotiation process.  For instance, the ITU Policy places a

8  requirement on the patent holder to "negotiate licenses with other parties on a non-

9  discriminatory basis on reasonable terms and conditions."  (Dkt. # 79-3 at 9-12.)

10  Additionally, both policies state that the negotiating parties will determine the final

11  RAND license, again indicating that the policies contemplate a negotiation process.

12    Motorola takes these statements to mean that it is not the initial offer that must be

13  on RAND terms, but that through a give-and-take negotiation process, the parties will

14  determine the RAND terms found in the final license agreement.  At this time, the court

15  is not entirely convinced by Motorola's rationale.  First, at least with respect to the ITU

16  Policy, Motorola's duty to "negotiate licenses . . . on" RAND terms could reasonably be

17  interpreted to require Motorola to make offers on RAND terms—an "offer" being part of

18  a "negotiation" under such a reading of the policy.  Second, as Microsoft points out, if the

19  policies are read to permit Motorola to offer on non-RAND terms, then the policies

20  would permit Motorola to make offers on exorbitant terms so long as the final license

21  reflects RAND terms.  It seems unlikely to the court that either the IEEE or the ITU

22  would deem a patent essential for a certain standard only to permit that patent holder to

ORDER- 14

1    turn around and abuse that power by seeking outrageously high royalty rates.  To wit,

2    during the February 13, 2012 status conference, counsel for Motorola agreed that

3    blatantly unreasonable offers would violate its RAND obligations under the policies.

4          Still, the court is mindful that at the time of an initial offer, it is difficult for the

5    offeror to know what would in fact constitute RAND terms for the offeree.  Thus, what

6    may appear to be RAND terms from the offeror's perspective may be rejected out-of-

7    pocket as non-RAND terms by the offeree.[10]  Indeed, it would appear that at any point in

8    the negotiation process, the parties may have a genuine disagreement as to what terms

9    and conditions of a license constitute RAND under the parties' unique circumstances.

10   Because the policies leave it to the parties to determine what constitutes a RAND license,

11   when such a genuine disagreement arises, it appears to the court that the only recourse for

12   the parties is to file a lawsuit in the appropriate court of law.

13          This leads the court to its final observation on this point.  Motorola asserts in its

14   pleadings that Microsoft has repudiated its right to a RAND license by filing the present

15   lawsuit rather than negotiating with Motorola towards a RAND license.  (Dkt. # 67 ¶¶ 66-

16   90 (Counterclaims).)  The court is perplexed by Motorola's argument.  As stated above,

17   the court believes that reasonable parties may disagree as to the terms and conditions of a

18   RAND license, leaving the courthouse as the only viable arena to determine the meaning

19   of "reasonable" under the circumstances.  It would be illogical, therefore, to deem it

20

———————————

21       [10] Whether the policies require an offeree to counteroffer or respond (i.e., to partake in
the negotiation process) prior to filing a lawsuit under circumstances where the offeree finds an

22   offer to be on non-RAND terms is an open question in this matter.

ORDER- 15

1    repudiation of one's rights under a policy to file a lawsuit to enforce one's rights under

2    that same policy.  The court leaves it to the parties to address, if they so choose, the

3    court's observations regarding the policies in question pursuant to the briefing schedule

4    set forth at the conclusion of this order.

5            Finally, with respect to the fourth issue in Microsoft's motion—that Motorola's

6    offers to Microsoft breached Motorola's RAND obligations—the court finds that

7    Microsoft has not met its burden of showing that no genuine issue of material fact exists

8    and that it is entitled to judgment as a matter of law.  Without knowing if Motorola had

9    an obligation to offer on RAND terms, the court is unable to determine whether

10   Motorola's offer in fact breached its obligations.  Moreover, assuming that Motorola had

11   obligations to offer on RAND terms, the court is unable to the merits of Microsoft's

12   argument.  Microsoft argues that Motorola's offers are unreasonable because the royalty

13   demanded is based on the price of the end product and is "not tied to its claimed

14   technological contribution."  (Mot. at 22-24.)  Microsoft has not provided the court with

15   case law to support its assertion, and the court does not agree with Microsoft that it is

16   always facially unreasonable for a proposed royalty rate to result in a larger royalty

17   payment for products that have higher end prices.  Indeed, Motorola has previously

18   entered into licensing agreements for its declared-essential patents at royalty rates similar

19   to those offered to Microsoft and with royalty rates based on the price of the end product.

20   (Resp. at 17; *see also* Dkt. # 183 (example of Motorola licensing agreement on similar

21   terms).)  Motorola also has provided the court with at least one example of such a license.

22   (*See* Dkt. # 183.)  On the record before it, the court cannot say that there is no genuine

1  dispute as to any material fact with respect to whether Motorola's initial offers were on

2  RAND terms.  Accordingly, the court denies Microsoft's motion for summary judgment

3  with respect to Microsoft's fourth issue.

### IV.    CONCLUSION

5        For the foregoing reasons, the court GRANTS in part and DENIES in part

6  Microsoft's motion for summary judgment.  The court GRANTS Microsoft's motion

7  insofar as it finds that (1) Motorola entered into binding contractual commitments with

8  the IEEE and the ITU, committing to license its declared-essential patents on RAND

9  terms and conditions; and (2) that Microsoft is a third-party beneficiary of Motorola's

10 commitments to the IEEE and the ITU.  The court DENIES the remainder of Microsoft's

11 motion.

12       As the parties are aware, to move the adjudication process forward with respect to

13 the RAND-based issues in this case, the court intends to schedule a mini-trial on any

14 unresolved RAND-based issues.  With that goal in mind, the court GRANTS leave,

15 pursuant to the following briefing schedule, for Microsoft and Motorola to file additional

16 summary judgment motions on the limited issues discussed below.  If it so chooses,

17 Microsoft may file another summary judgment motion on its breach of contract and

18 promissory estoppel claims specifically addressing whether the IEEE Policy and ITU

19 Policy require offers to be on RAND terms.  If it so chooses, Motorola may file a

20 summary judgment motion with respect to its claim that Microsoft repudiated its right to

21 a license for Motorola's declared-essential patents on RAND terms.  In their briefs, the

22 parties at a minimum should address (1) the appropriate choice of law of contract

1    interpretation; (2) whether either the IEEE Policy or the ITU Policy is ambiguous, within

2    the meaning of the applicable law; and (3) what, if any, extrinsic evidence the court

3    should consider in construing the policies.  The parties are also welcome to address any

4    of the court's observations regarding the IEEE Policy and ITU Policy.  The parties'

5    opening briefs shall be filed no later than March 30, 2012 and must not exceed 24 pages

6    in length.  Responsive briefs shall be filed no later than April 13, 2012 and must not

7    exceed 24 pages in length.  Reply briefs shall be filed no later than April 20, 2012 and

8    must not exceed 12 pages in length.  At the conclusion of this briefing schedule, the court

9    will rule on the parties' motions and set a schedule for a mini-trial to dispose of all

10   RAND-based issues remaining in this matter.  The parties may contact the court

11   telephonically with questions they may have regarding the content of this order.  Counsel

12   from both parties should be present during any such call.

13          Dated this 27th day of February, 2012.

14

15

16   _____

17   The Honorable James L. Robart
     U.S.  District Court Judge

18

19

20

21

22

ORDER- 18