HONORABLE JAMES L. ROBART

1

2

3

4

5

6

7

8

9

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

| | |
|---|---|
| MICROSOFT CORPORATION, | No. C10-1823-JLR |
| Plaintiff, | **REDACTED** |
| v. | MICROSOFT'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |
| MOTOROLA INC., et al., | |
| Defendant. | **Noted: April 20, 2012** |
| | **ORAL ARGUMENT REQUESTED** |
| MOTOROLA MOBILITY, INC., et al., | |
| Plaintiffs, | |
| v. | |
| MICROSOFT CORPORATION, | |
| Defendant. | |

12

13

14

15

16

17

18

19

20

21

22

23

24

MICROSOFT'S MOTION FOR TRO
AND PRELIMINARY INJUNCTION

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Microsoft filed this lawsuit sixteen months ago to force Motorola to honor its commitment to license its standard-essential patents.  During this litigation, Motorola conceded and this Court ruled that Motorola made a contractual commitment to license its patents on RAND terms, and that Microsoft is a third-party beneficiary of that commitment.  This Court has asked the parties to brief various remaining issues: whether Motorola's commitment included an obligation to make a RAND offer, whether Motorola's "offers" of October 2010 breached that commitment, and whether Microsoft repudiated the contract by bringing this action to enforce it.  Those issues will be fully addressed in Microsoft's renewed motion for partial summary judgment.

In the meantime, on April 17, 2012, a German court will issue a ruling that may allow Motorola to take steps to exclude Microsoft from the German market.  Motorola would take such steps before this Court will have an opportunity to rule on the key RAND questions.  If Motorola's sharp tactics are allowed to unfold, Microsoft will be denied a meaningful remedy in this action.  Microsoft seeks a preliminary injunction here to preserve the status quo, to preserve this Court's ability to grant Microsoft meaningful relief, and to prevent irreparable harm to Microsoft and the public in the meantime.

Microsoft is entitled to an order to preserve the status quo if it can demonstrate that it is likely entitled to a RAND license – i.e., that Microsoft has not repudiated that contractual right. Indeed, because Microsoft's entitlement to a license is clear, the balance of hardships tilts overwhelmingly in Microsoft's favor, highlighting the need to prevent irreparable harm and preserve this Court's ability to resolve the merits of Microsoft's claim.

Motorola's contractual commitment and Microsoft's status as a third-party beneficiary are undisputed.  Motorola contends that Microsoft repudiated the contract by filing this lawsuit (long before Motorola filed the German action), but a party does not repudiate a contract by

MICROSOFT'S MOTION FOR TRO AND
PRELIMINARY INJUNCTION - 1

1  taking action to enforce it, especially in the face of conduct from the other side inconsistent

2  with its contractual obligations.  Microsoft has compiled substantial evidence that Motorola's

3  conduct reflects a desire to exclude Microsoft from the market rather than negotiate on RAND

4  terms.  Motorola's "offer" to Microsoft was outrageous on its face, and Motorola has even

5  refused to accept Microsoft's offer to post a $300 million bond while this Court resolves the

6  issues before it.  The unreasonableness of Motorola's conduct goes to the ultimate merits of

7  Microsoft's claim, and is properly the focus of the summary judgment briefing.  But the

8  strength of Microsoft's position on the merits demonstrates that Microsoft has repudiated

9  nothing, and is merely seeking that to which it is entitled under the contract.

10       The only possible harm that Motorola faces is the interim lost licensing revenue (at the

11  RAND rate eventually to be determined).  But Microsoft's proffered $300 million bond is

12  more than adequate to protect Motorola from precisely that harm.  By contrast, Microsoft (and

13  the public) are facing the prospect of the irreparable harm caused by exclusion from a key

14  market.

15       This Court is endowed with broad equitable powers.  This Court should have the

16  freedom to decide the remaining RAND issues on the schedule the Court has established.  The

17  grant of a temporary restraining order and preliminary injunction to maintain the status quo

18  will preserve this Court's jurisdiction and ability to decide this case, and prevent the

19  irreparable harm Microsoft and the public will suffer if Motorola is able to wield its standard-

20  essential patents to exclude Microsoft from the vitally important German market.

## I.   INTRODUCTION AND BACKGROUND

21

22  **A.**    **Motorola Has Failed to Meet Its RAND Commitments.**

23       For many years, Motorola has been an active participant in various standard-setting

24  organizations ("SSOs").  Motorola convinced many of them to include in their standards

MICROSOFT'S MOTION FOR TRO AND
PRELIMINARY INJUNCTION - 2

1    technical approaches covered by Motorola patents.  By doing so, Motorola effectively bound

2    the IT industry to use—and thereby infringe—Motorola's standard-essential patents.

3              Standardization of technology carries a risk that even one owner of standard-essential

4    patents will "hold up" companies that invest in implementing the standard, extracting royalties

5    far in excess of the value of their patents.  Motorola's own expert has characterized standard-

6    essential patents as bullets, and noted that it only takes one bullet to kill.  (*See* Declaration of

7    Peter Chrocziel ("Chrocziel Decl.") ¶ 18.)  To avoid this danger, SSOs require participants in

8    the standard-setting process, like Motorola, to follow specific licensing policies.  Those

9    licensing policies typically require participants to agree that any standard-essential patents will

10   be made available on RAND terms to all those who implement the standard.  Motorola agreed

11   to these RAND licensing policies, and, as this Court held on February 27, 2012, Motorola

12   thereby undertook "binding contractual commitments to license its essential patents on RAND

13   terms."  (Dkt. No. 188, Order on Pl.'s Mot. for Partial Summary J. ("Order") 10.)

14             Motorola concedes that Microsoft is a third-party beneficiary of these binding

15   contracts, and that demanding "blatantly unreasonable" licensing terms is a breach.  (*Id.* 15,

16   17.)  Nonetheless, in October 2010 Motorola did just that.  Motorola sent Microsoft two

17   demand letters alleging that Microsoft's products were infringing two groups of Motorola

18   patents—one directed to a standardized method of playing video (the "H.264" video standard)

19   and the other directed to a standard for wireless communications (the "802.11" WiFi standard).

20   As will be explained in detail in Microsoft's summary judgment motion, Motorola's letters

21   made demands that were the antithesis of reasonable.  Motorola demanded royalties of 2.25%

22   of the price of end-user products incorporating these standard technologies—i.e., Motorola

23   demanded royalty payments from Microsoft of more than $4 billion per year—more than the

24   total amount Motorola had received from all licensees for all of its patents, including its

MICROSOFT'S MOTION FOR TRO AND
PRELIMINARY INJUNCTION - 3

1    standard-essential patents. [1]  A condition of this egregious royalty demand was that Microsoft

2    "grant back" a *royalty-free* license to all of Microsoft's relevant standard-essential patents.

3    Motorola now admits that it made these demands without considering any of the information it

4    had concerning its own patents, how important they were to the standards, or how much they

5    contributed to Microsoft's products.

6         Motorola never expected Microsoft to accept these offers.  To the contrary, it expected

7    and wanted Microsoft to reject them, so that it would have a pretext for seeking injunctive

8    relief.  Faced with an illusory offer and the threat of an infringement suit, Microsoft brought

9    this action to require Motorola to live up to its RAND commitments.

10   **B.    Motorola Seeks To Gain Improper Leverage Over Microsoft Before This Court
       Can Enforce Motorola's RAND Commitments**

11        In this action, Microsoft seeks the RAND license that Motorola contracted to provide.

12   Motorola, in contrast, is using the absence of a license it refuses to meaningfully offer to obtain

13   an injunction in Germany against Windows and Xbox as leverage to force Microsoft to accept

14   a license on terms that are decidedly *not* RAND.  But Motorola has no right to injunctive relief:

15   Motorola sought the benefits of having its patents incorporated into industry standards and

16   committed to follow the SSOs' RAND policies, and Microsoft is entitled to, and is committed

17   to accepting, a license on RAND terms.

18        To implement its strategy, despite the pendency of this lawsuit, Motorola launched

19   parallel proceedings to circumvent Microsoft's right to a RAND license and to undermine this

20   Court's authority to enforce that right.  First, Motorola filed a case in the ITC seeking an

21   exclusion order directed to Microsoft's Xbox business.  That proceeding, however, would

22   produce an exclusion order, if at all, no earlier than next fall so, eight months later, Motorola

23

24   _____

      [1] The first letter demanded a 2.25% royalty for an 802.11 license, and the second letter demanded an additional
      2.25% royalty for an H.264 license—a total of 4.5%, although Motorola later indicated, after this lawsuit was
      filed, that its practice was to cap royalties for multiple standards at 2.25%.

MICROSOFT'S MOTION FOR TRO AND
PRELIMINARY INJUNCTION - 4

filed actions in Germany seeking to exclude Microsoft's core products from the German

market based on standard-essential H.264 patents.  Motorola brought these cases specifically to

obtain the leverage of an order or orders excluding Microsoft products from major markets

before this Court would be able to decide this case and grant the relief—a worldwide RAND

license—Microsoft is seeking.  Motorola's strategy undermines this Court's jurisdiction, and

effectively nullifies Microsoft's efforts to obtain meaningful relief in this proceeding.

Motorola's conduct toward a Microsoft supplier firmly establishes that Motorola has no

intention of granting RAND licenses for its patents.  Marvell Semiconductor, a supplier of

802.11 (WiFi) chips to Microsoft, approached Motorola in 2011 seeking a license to

Motorola's RAND-committed 802.11 patents.

**REDACTED**

**C.     Motorola Has No Real Interest in Securing Compensation for Alleged Patent Infringement by Microsoft.**

To avoid an exclusion order in Germany, Microsoft made a license offer pursuant to the

German "Orange Book" procedure.  Under that procedure, however, the patent owner can

simply decline the offer, as Motorola did, unless the offered terms are so generous that the

refusal to accept them would amount to unlawful, anticompetitive conduct.  Microsoft offered

to take a license to two of Motorola's H.264 patents for     **REDACTED**

MICROSOFT'S MOTION FOR TRO AND
PRELIMINARY INJUNCTION - 5

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    higher than the royalty Motorola would receive if it, like many other companies,

2    offered licenses to its patents as part of the H.264 patent pool.  (*See* Chrocziel Decl. ¶¶ 13–15

3    and Ex. 1.)  Microsoft's proposal

4    **REDACTED**

5    to cover back royalties.  (*See* Chrocziel

6    Decl. ¶ 14.)  As part of that "Orange Book" offer, Microsoft was required to withdraw—and in

7    fact withdrew—its German challenge to the validity of the Motorola patents, meaning that if

8    Motorola accepted Microsoft's offer, Motorola would receive royalties even though its patents

9    might be invalid.  (*See* Chrocziel Decl.¶¶ 12, 17–18.)  Motorola rejected Microsoft's offer (*see*

10   Chrocziel Decl. ¶ 16) and made no counteroffer, demonstrating that it has no genuine interest

11   in reasonable compensation for its patents.

12       Motorola has suggested that German procedure is somehow akin to the proceedings

13   here, where the meaning of the RAND commitment is at issue.  (*See* Decl. of Christopher T.

14   Wion in Supp. of Microsoft's Mot. for TRO and Preliminary Inj. ("3/28/12 Wion Decl.") Ex. 1

15   (Mar. 9, 2012 Hearing Tr.) 90:3–18.)  But comparing the proceedings here to the "Orange

16   Book" procedure in Germany is like comparing apples to oranges.  The German court is *not*

17   going to address the issues this Court will address:  particularly, whether Microsoft is entitled

18   to a license on RAND terms or, instead, whether Microsoft's effort to enforce the RAND

19   contract is somehow a repudiation of that contract.  German law focuses only on whether

20   Motorola's refusal to accept a very high "Orange Book" offer is so flagrantly unreasonable as

21   to amount to unlawful conduct under German standards akin to our antitrust laws. (*See*

22   Chrocziel Decl. ¶ 12.)

23       After Motorola rejected Microsoft's Orange Book offer in Germany, and after this

24   Court set a schedule that would permit prompt resolution of the underlying RAND issues,

MICROSOFT'S MOTION FOR TRO AND
PRELIMINARY INJUNCTION - 6

1   Microsoft sought to preserve the status quo to permit this Court to address the RAND issues by

2   confirming in writing, on March 14, 2012, its prior offer in open court to post a $300 million

3   bond if Motorola agreed temporarily to refrain from taking any exclusionary action in

4   Germany pending this Court's resolution of the RAND issues.  (3/28/12 Wion Decl. Ex. 2

5   (March 14, 2012 Letter from Arthur W. Harrigan, Jr. to Ralph Palumbo and Jesse J. Jenner).)

6   While the "Orange Book" offer in Germany was more than adequate to compensate Motorola

7   for any true value of its two German patents, Microsoft offered to post a bond many times that

8   amount to forestall any possible argument that Motorola could be injured by delaying

9   enforcement of a German order, and to preserve this Court's jurisdiction.  On March 19, 2012,

10  Motorola responded to the bond proposal, but refused to state whether it would accept or reject

11  Microsoft's bond offer.  (3/28/12 Wion Decl. Ex. 3 (March 19, 2012 Letter from Jesse J.

12  Jenner to Arthur W. Harrigan, Jr.).)  As of the filing of this motion, Motorola had not

13  responded further.

14  **D.      Absent Action By This Court, Microsoft Will Suffer Irreparable Harm.**

15          On April 17, 2012, the German court will issue an order, and that order may permit

16  Motorola to take immediate steps to exclude from Germany Microsoft products compliant with

17  the H.264 standard.  Such an order is not self-executing; Motorola must take further

18  affirmative steps to exclude Microsoft's products from Germany—namely, it must apply for

19  enforcement and post security.  (*See* Chrocziel Decl. ¶ 23.)  This motion seeks temporarily to

20  prevent Motorola from taking those steps, relief to which Microsoft is entitled under either a

21  preliminary injunction standard or under the Ninth Circuit's anti-suit injunction standard.

22  Under either, Microsoft is *not* asking this Court to interfere with an order by the German court.

23  In fact, many patent owners who obtain such orders defer taking the steps necessary to

24

MICROSOFT'S MOTION FOR TRO AND
PRELIMINARY INJUNCTION - 7

1    implement them pending appellate review. (*See* Chrocziel Decl. ¶ 24.) Rather, this motion

2    seeks to prevent Motorola from making an end-run around the authority of this Court.

3            Microsoft's request poses no risk of harm to Motorola. Motorola does not compete

4    with Microsoft in the German market for the products at issue. And, in the unlikely event that

5    Motorola prevails here (meaning that it has no obligation to grant Microsoft a RAND license),

6    Motorola could then take action under the German court's order. The bond that Microsoft has

7    offered to post will more than adequately cover whatever compensation Motorola is owed for

8    sales in the interim.[2]

9            In contrast to the lack of harm to Motorola if the temporary injunction is entered by this

10   Court, the failure to enter it would seriously harm Microsoft. As explained more fully below,

11                   **REDACTED**

12           —and will continue to cause—irreparable harm. Beyond the closure of Microsoft's

13   market in Germany

14                   **REDACTED**

15

16           Motorola's conduct has made its motives clear: it is seeking to apply the massive

17   leverage of an injunction on standard-essential patents despite Microsoft's pending request in

18   this action for a RAND license, precisely the "hold-up" conduct that the RAND contract

19   obligation bars. If left unchecked, Motorola's ability to exclude Microsoft products that

20   comply with the H.264 standard from Germany will enable Motorola to demand far more than

21   the reasonable value of its patented invention; Motorola will be extracting the value of

22   standardization itself. This lawsuit was filed to prevent Motorola from hijacking the standard-

23

24   ───────────────
        [2] Microsoft has offered to post a bond in the amount of $300 million. If, however, Motorola's reluctance to
     preserve the status quo rests on a belief that the bond amount is somehow inadequate, Microsoft would consider
     increasing the bond amount.

MICROSOFT'S MOTION FOR TRO AND
PRELIMINARY INJUNCTION - 8

1   setting process for its individual gain.  The injunction Microsoft seeks will do nothing more

2   than preserve this Court's ability to resolve the dispute in a reasonable and timely fashion.

## II.    LEGAL STANDARD

A temporary restraining order and preliminary injunction preserve the status quo so that

the Court may adjudicate a potentially meritorious claim for relief while protecting the movant

against irreparable harm.  *See Textile Unlimited, Inc. v. A. BMH and Co. Inc.*, 240 F.3d 781,

786 (9th Cir.2001) ("A preliminary injunction is not a preliminary adjudication on the merits,

but a device for preserving the status quo and preventing the irreparable loss of rights before

judgment."); *Chalk v. District Court*, 840 F.2d 701, 704 (9th Cir. 1988) (same); *see also*

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423,

439 (1974) (purpose of a TRO is "preserving the status quo and preventing irreparable harm").

Under the circumstances here, where the opposing party has notice and the opportunity to

contest the issuance of preliminary relief, the standard for preliminary relief is the same for

both a TRO and a preliminary injunction: "A plaintiff seeking a preliminary injunction must

establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in

the absence of preliminary relief, that the balance of equities tips in his favor, and that an

injunction is in the public interest."  *Winter v. NRDC*, 555 U.S. 7, 20 (2008).

These factors are balanced against one another, such that a strong showing of

irreparable harm may overcome a lesser showing of likelihood of success, and likewise a

strong showing on the merits justifies preserving the status quo even in cases with less

substantial irreparable harm.  *See Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127,

1134-35 (9th Cir. 2011) ("We join the Seventh and the Second Circuits in concluding that the

'serious questions' version of the sliding scale test for preliminary injunctions remains viable

after the Supreme Court's decision in *Winter*. . . . A preliminary injunction is appropriate when

MICROSOFT'S MOTION FOR TRO AND
PRELIMINARY INJUNCTION - 9

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    a plaintiff demonstrates that serious questions going to the merits were raised and the balance

2    of hardships tips sharply in the plaintiff's favor.").

3         Resolution of the present motion will not require that the Court decide the choice of

4    law question it asked in connection with Microsoft's motion for partial summary judgment:

5    which jurisdiction's law governs contract interpretation. (*See* Order 13.)  The only contract

6    interpretation issues presented here—whether Motorola has a RAND obligation and whether

7    Microsoft is a third-party beneficiary of that obligation—have already been decided and,

8    indeed, are not disputed by Motorola.  The issue in this motion is whether this Court should

9    preserve its power to decide the RAND contract issues that the German court will not even

10   consider.  With respect to contract construction issues that may arise in conjunction with the

11   summary judgment motion, Microsoft's brief in support of summary judgment will, as the

12   Court requested, address choice of law.

13                          **III.     ANALYSIS**

14   **A.     Microsoft Is Likely To Succeed On The Merits.**

15        Microsoft is likely to succeed on the merits in establishing that Motorola is obligated to

16   grant Microsoft a license to Motorola's H.264 patents on RAND terms.  As this Court has

17   already ruled, Motorola's RAND commitments to the ITU are binding contractual obligations,

18   and Microsoft is a third-party beneficiary entitled to enforce those obligations.  (Order 17.)

19   The only open issue for this motion is whether—as Motorola alleges—Microsoft has

20   "repudiated" its contract rights by bringing this action.  But Motorola's repudiation argument

21   (at bottom, an illogical argument that a party repudiates a contract by asking a court to enforce

22   it) is without merit.  Claims like Motorola's—that by filing this enforcement action Microsoft

23   "breached [the] alleged contract" (Dkt. No. 68, Motorola Countercl. ¶ 73)—have been properly

24   rejected elsewhere.  *See, e.g.*, *Utica Mut. Ins. Co. v. Vigo Coal Co.*, 393 F.3d 707, 715 (7th Cir.

MICROSOFT'S MOTION FOR TRO AND
PRELIMINARY INJUNCTION - 10

2004) (rejecting argument that a party breached a contract by attempting to enforce it).  And this Court has aptly described Motorola's repudiation argument as "perplex[ing]" and "illogical." (Order 15–16.)  As the Court explained, the courthouse may be the "only viable arena to determine the meaning" of a contractual term, and thus seeking a judicial interpretation of a contract can hardly be a repudiation or breach.  (*Id.*)

Microsoft's suit to enforce Motorola's RAND commitments is the antithesis of a "repudiation" of its contract—far from repudiating its contract, Microsoft seeks to perform and enforce the contract by obtaining a license on RAND terms.  *Cf. Restatement (Second) of Contracts* § 250 (1981) ("A repudiation is (a) a statement by the obligor to the obligee indicating that the obligor will commit a breach . . . or (b) a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach.").  The fact that Microsoft chose to seek judicial relief rather than to negotiate after Motorola made its "offer" is of no moment, and plainly is not a "repudiation" of Microsoft's contractual right to a RAND license because it neither indicates that Microsoft will not perform nor renders Microsoft unable to perform.  What Microsoft has asked for (and will receive if it prevails) in this litigation—a worldwide license on RAND terms—is simply enforcement of its RAND rights under the contract.  There has been no repudiation.

Moreover, Motorola cannot meet its RAND obligations by forcing Microsoft to "negotiate" through the procedures available in the German litigation it initiated.  The "Orange Book" defense allows Microsoft to escape the threat of Motorola's improper exclusion efforts only if Motorola refuses to accept an unconditional offer to pay royalties (including all past royalties immediately) at a rate that is the absolute highest Motorola could seek without violating the antitrust laws.  (*See* Chrocziel Decl. ¶ 12.)  The German Orange Book practice does not require that Motorola enter into a license on RAND terms, only that Motorola accept

MICROSOFT'S MOTION FOR TRO AND
PRELIMINARY INJUNCTION - 11

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   a license at the outermost limit of legality under German antitrust law.  Motorola's

2   commitment, however, is to grant worldwide RAND licenses, not merely to abstain from

3   antitrust violations in one country.  The German courts have not decided and will not decide

4   whether Microsoft is contractually entitled to a RAND license.  That issue is before this Court,

5   and once this Court resolves it by rejecting Motorola's "repudiation" defense, Motorola will be

6   barred from seeking to exclude Microsoft products.

7           Microsoft's RAND rights—and Motorola's RAND obligations—are worldwide in

8   scope.  A ruling by this Court that those rights and obligations bar Motorola from obtaining

9   injunctive relief accordingly will have worldwide effect: i.e., that Microsoft is entitled to a

10  worldwide license under the declared H.264 patents on RAND terms, a license that Microsoft

11  is eager to obtain.[3]  A ruling that Motorola is contractually bound to grant a RAND license,

12  coupled with Microsoft's express commitment to accept a RAND license, necessarily means

13  that Motorola cannot seek to enjoin Microsoft from using its standard-essential patents, even if

14  the ultimate determination of the precise RAND terms cannot be made until later this year.

15  *See, e.g.*, *Certain Dynamic Random Access Memories, Components Thereof, and Products*

16  *Containing Same* ("*DRAM*"), Inv. No. 337-TA-242, 1987 ITC LEXIS 95, at *31 (May 21,

17  1987) ("[E]ven though a royalty obligation might accrue, an injunction may not issue against

18  the beneficiary of a promise, which, if enforced, would be inconsistent with suit for an

19  injunction.").[4]  Because Microsoft has a high likelihood of establishing in this suit that it is

---

20      [3] Although Microsoft is likely to succeed on the merits, the balance of hardships also tips sharply in Microsoft's

21  favor, *see* Section III.C, *infra*, and thus it would be entitled to a preliminary injunction even if it raised only a
    "serious question" as to the merits. *Cottrell*, 632 F.3d at 1134–35.

22      [4] As Motorola will undoubtedly point out, Microsoft, in a June 14, 2011 letter to the Federal Trade
    Commission, said that "the existence of a RAND commitment to offer patent licenses should not preclude a patent

23  holder from seeking preliminary injunctive relief or commencing an action in the International Trade Commission
    just because the patent holder has made a licensing commitment to offer RAND-based licenses in connection with
    a standard."  (Dkt. No. 143, Declaration of Kevin J. Post Ex. 3 (June 14, 2011 FTC letter).)  That letter was not

24  directed to a situation in which a party is seeking, and has committed to accept, a license on RAND terms, much
    less to a situation in which the opening demand is far outside the arena of RAND terms. Further, if read as an
    absolute statement, the letter was incorrect.  When squarely faced with the issue in the ITC 744 Investigation,

MICROSOFT'S MOTION FOR TRO AND
PRELIMINARY INJUNCTION - 12

entitled to a RAND license (which it has agreed to accept), preliminary relief is appropriate: Motorola's exclusion efforts in Germany are inconsistent with what will ultimately be Microsoft's *worldwide* license to the H.264 patents.

**B.     Microsoft Has Suffered And Will Continue To Suffer Irreparable Harm Absent Preliminary Relief.**

Absent a preliminary injunction, Microsoft will suffer irreparable harm from the impending exclusion of its products from Germany,

**REDACTED**

---

Microsoft conceded Motorola's position that RAND commitments are inconsistent with the issuance of an exclusion order.  Motorola cannot suggest that different rules apply to RAND assurances depending on who provides them. Motorola, just as much as Microsoft, is barred from seeking to exclude products that practice standard-essential patents it promised to license.

MICROSOFT'S MOTION FOR TRO AND
PRELIMINARY INJUNCTION - 13

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

2   (*See* Prieto Decl. ¶ 15.)  Microsoft has a reputation for providing broad information technology

3   solutions—providing not only Windows operating system software for PCs, but also server

4   software and enterprise computing infrastructure that works across international borders and

5   around the world.  (*See* Prieto Decl. ¶ 14.)  Motorola's actions—

6   **REDACTED**

7

8

9

10

11

12                                                          (*See* Prieto Decl. ¶¶ 18–20.)

13        As to Xbox, **REDACTED**

14

15                                                  (*See* Declaration of Josh Hutto ("Hutto

16   Decl.") ¶¶ 6–7.)

17        **REDACTED**                                   (*See* Hutto Decl. ¶ 8.)

18

19        **REDACTED**

20

21

22

23                                          (*See* Hutto Decl. ¶¶ 9–10, 12.)  Further, many

24   modern video games are intended for play in online multiplayer modes, and their popularity

MICROSOFT'S MOTION FOR TRO AND
PRELIMINARY INJUNCTION - 14

1  (and the popularity of the consoles themselves) rely critically on a robust community of online

2  players.  (*See* Hutto Decl. ¶ 11.)

3  **REDACTED**

4

5  (*See* Hutto Decl. ¶ 13.)  Even if Motorola's exclusion

6  actions were only temporary, **REDACTED**

7  (*See* Hutto Decl. ¶ 14.)

8  These competitive and reputational injuries—the quantification of which is inherently

9  speculative—are not compensable by monetary damages and constitute irreparable harm.

10  Microsoft's loss of market share is irreparable harm.  *See Oberto Sausage Co. v. JBS S.A.* 2011

11  WL 939615, at *6 (W.D. Wash. Mar. 11, 2011) (finding likelihood of irreparable harm in part

12  where defendant's conduct would cause "loss of market share growth"); *see also Wyeth v.*

13  *Natural Biologics, Inc.*, 395 F.3d 897, 902–03 (8th Cir. 2005) (affirming permanent injunction

14  where defendant would cause "irreparable harm in the form of loss of market share"); *Apple,*

15  *Inc. v. Pystar Corp.*, 673 F. Supp. 2d 943, 949 (N.D. Cal. 2009) (harm from infringement of

16  Apple's copyrights on the Mac OS X operating system to the product's competitive position

17  and market share was difficult to quantify and constituted irreparable harm); *Conceptus, Inc. v.*

18  *Hologic, Inc.*, No. C 09-02280 WHA, 2012 WL 44064, at *2 (N.D. Cal. Jan. 9, 2012) (loss of

19  market share and loss of customers and access to potential customers demonstrated irreparable

20  harm).  Motorola's actions in Germany will cause further irreparable harm by

21  **REDACTED**

22  *See Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st

23  Cir. 2009) (upholding preliminary injunction in part because "the inability to supply a full line

24  of products may irreparably harm a merchant by shifting purchasers to other suppliers"); *Ross-*

MICROSOFT'S MOTION FOR TRO AND
PRELIMINARY INJUNCTION - 15

1  *Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19–20 (1st Cir. 1996) (upholding

2  preliminary injunction and finding of irreparable harm based on disruption to one part of

3  plaintiff's broader product offering, because "in a variety of other commercial settings, the

4  availability of a product line is as important, if not more important, than the amount of sales

5  generated"); *see also Cadence Design Systems, Inc. v. Avant! Corp.*, 125 F.3d 824, 828 (9th

6  Cir. 1997) (ordering entry of an injunction because evidence of "lost sales and [plaintiff's]

7  inability to reposition itself as a service-oriented company" as irreparable harm could not be

8  rebutted simply by observing that such commercial injuries "seem[ed] to be quantifiable").

9  ## REDACTED

10  *See, e.g.*, *Rent-a-Center, Inc. v. Canyon Television &*

11  *Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (damage to reputation or goodwill,

12  because it is difficult to quantify, qualifies as irreparable harm); *see also Stuhlbarg Int'l Sales*

13  *Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) (noting that the "threatened loss

14  of prospective customers or goodwill certainly supports a finding of the possibility of

15  irreparable harm"); *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004)

16  (affirming finding of irreparable harm where it was "impossible to estimate with any precision

17  the amount of the monetary loss which has resulted and which would result in the future from

18  the loss of [plaintiff's] relationships with customers and co-brand partners, by reason of

19  [defendant's] actions") (internal quotation marks omitted); *eBay, Inc. v. Bidder's Edge, Inc.*,

20  100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000) ("Harm resulting from lost profits and lost

21  customer goodwill is irreparable because it is neither easily calculable, nor easily compensable

22  and is therefore an appropriate basis for injunctive relief.").

23  ## REDACTED

24  *See Warner Bros. Entertainment Inc. v. WTV Systems, Inc.*, __ F. Supp.2d __,

MICROSOFT'S MOTION FOR TRO AND
PRELIMINARY INJUNCTION - 16

1   2011 WL 4001121, at *7 (C.D. Cal. Aug. 1, 2011) (holding that defendants' copyright

2   infringement interfered with the plaintiffs' grant of exclusivity to their licensees and even

3   jeopardized the continued existence of the licensees' businesses; "[t]he loss of revenue to

4   Plaintiffs and their licensees constitutes irreparable injury to Plaintiffs."). A preliminary

5   injunction can eliminate such uncertainty and risk pending this Court's resolution of the key

6   dispositive question—whether Microsoft is entitled to a RAND license.

7   **C.      The Balance of Equities Favors Microsoft.**

8           Microsoft asks this Court to grant temporary relief to preserve the status quo just long

9   enough to decide whether Motorola must provide a license on RAND terms. Delaying

10  Motorola's improper exclusion activity while this Court addresses the RAND issues carries at

11  most a risk of only marginal economic harm to Motorola, and certainly no irreparable injury.

12  In contrast, Microsoft, like other product makers the world over, has incorporated H.264 into

13  its products. Having done so,

14              **REDACTED**

15                          Although Microsoft has alleged only a contract

16  claim here, Motorola's improper leveraging of its patent to extract monopoly rents on the

17  H.264 standard itself raises substantial antitrust concerns. *See Image Tech. Servs., Inc. v.*

18  *Eastman Kodak Co.*, 125 F.3d 1195, 1216 (9th Cir. 1997) ("the right of exclusion [does not]

19  protect an attempt to extend a lawful monopoly beyond the grant of a patent").

20          There will be no competitive injury to Motorola if it is temporarily delayed in seeking

21  exclusion of Microsoft products from Germany—Motorola does not compete with Microsoft in

22  the markets for the targeted products (computer operating systems and video game systems).

23  *Cf. eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 396 (2006) (Kennedy, J., concurring)

24  (noting that, in the hands of a non-competitor, "an injunction, and the potentially serious

MICROSOFT'S MOTION FOR TRO AND
PRELIMINARY INJUNCTION - 17

1   sanctions arising from its violation, can be employed as a bargaining tool to charge exorbitant

2   fees to companies that seek to buy licenses to practice the patent[, even where] the patented

3   invention is but a small component of the product the companies seek to produce and the threat

4   of an injunction is employed simply for undue leverage in negotiations").  Accordingly, any

5   injury to Motorola would be compensable by a royalty for any relevant Microsoft activity in

6   Germany while this action is pending, and Microsoft's $300 million bond is more than

7   adequate to cover such compensation.

8        Absent preliminary relief, it is highly likely that Motorola will attempt to exclude

9   Microsoft's products from Germany before this Court can determine whether Motorola must

10  grant Microsoft a RAND license.  In light of the limited time needed to resolve the few

11  remaining RAND issues, and Microsoft's $300 million bond, a brief delay in Motorola's

12  exclusion would have no meaningful impact on Motorola.

13  **D.      The requested preliminary injunction is in the public interest.**

14       Permitting Motorola to exclude Microsoft products from Germany, notwithstanding

15  Microsoft's contractual right to a RAND license, would harm the public interest by

16  undermining the integrity of the SSO process and directly damaging those companies that have

17  invested in H.264 implementations in reliance on the RAND commitments surrounding that

18  standard.  Motorola's exclusion efforts undermine the SSO framework as Motorola shirks its

19  contractual commitments and improperly exploits the market power it obtained only as a result

20  of that framework.  *Cf. Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511

21  F.3d 535, 551 (6th Cir. 2007) (granting injunction in part based on the "general public interest

22  in the enforcement of voluntarily assumed contract obligations").

23       Standards and SSOs play a critical role in fostering innovation.  *See* Am. Compl.

24  ¶¶ 22–23.  Standards facilitate the adoption of technology from many different vendors whose

MICROSOFT'S MOTION FOR TRO AND
PRELIMINARY INJUNCTION - 18

1   products can interoperate with one another.  As this Court has already noted (Order 2), when

2   the SSO framework is running properly, and its participants are playing by the rules, SSOs

3   facilitate interoperability and encourage healthy competition, including price competition by

4   reducing switching costs for consumers.  *See Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d

5   297, 308–14 (3d Cir. 2007) (explaining how industry standard-setting can enhance consumer

6   welfare by increasing competition, preventing patent hold-up, and reducing costs).

7        In accordance with ITU policies, Motorola agreed to make licenses to its H.264 patents

8   available on a RAND basis, and Microsoft and other companies relied on the integrity of the

9   SSO process and Motorola's promises in developing and marketing products compliant with

10  that standard.  Motorola is now seeking the very hold-up that will undo the standard-setting

11  process if not restrained by this Court by threatening to exclude Microsoft's products from

12  Germany despite its obligation to grant Microsoft a worldwide license on RAND terms.  The

13  sort of "patent hold-up" or "patent ambush" that Motorola is imposing on Microsoft is the

14  *exact* harm that the patent policies of the SSOs were designed to eliminate.  *See, e.g.*, *Research

15  in Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 791, 794 (N.D. Tex. 2008); *see also*

16  *Broadcom*, 501 F.3d at 312 (explaining the "unique dangers of deception in the standard-

17  setting context … where participants rely on structural protections, such as rules requiring the

18  disclosure of [intellectual property rights], to facilitate competition and constrain the exercise

19  of monopoly power").  If the benefits of standardization are to be realized by the public,

20  patentees must grant the promised licenses and on terms that do not seize for the patentee the

21  economic benefit of standardization itself as opposed to the intrinsic value of its patents.

22       Allowing Motorola to avoid its contractual obligation undermines the SSO framework

23  and the value that it provides to manufacturers, designers, and ultimately consumers.

24  Motorola's actions directly affect those, like Microsoft, who practice the H.264 standard and

MICROSOFT'S MOTION FOR TRO AND
PRELIMINARY INJUNCTION - 19

1    undertook to do so only because of the RAND obligation.  Further, Motorola's actions threaten

2    other companies that rely upon a broad base of H.264-compliant products to generate demand

3    for their own H.264 products and content.  More broadly, permitting Motorola to exclude

4    standards-compliant products in the face of its obligation to license not only would directly

5    damage the H.264 standard but also would inhibit the development of new standards, and the

6    resulting benefit to the public, in the future.

7    **E.**    **Relief here is consistent with respect for the German court.**

8          Microsoft asks this Court to preserve the status quo, not to interfere with the

9    proceedings of a German court.  On April 17, 2012, the German court will complete the case

10    before it, and Microsoft does not seek to interfere with that judicial resolution.  But a German

11    order would not be self-executing, so Microsoft simply asks this Court to order Motorola to act

12    as the vast majority of prevailing patentees do in Germany and not take the additional steps of

13    posting security and applying for enforcement to implement the exclusion order.

14          Under the German system, an exclusion order is inoperative unless the patentee applies

15    for enforcement and posts security, which may partially compensate the enjoined party in the

16    event the order is reversed.  But such security can only compensate, at best, for purely

17    pecuniary harm and is wholly inadequate to redress the irreparable harm Motorola's actions

18    would cause Microsoft.  (*See supra* Section III.B.)  And in practice, most prevailing patentees

19    in Germany do not post the security and seek preliminary enforcement, instead waiting until

20    the German appellate, *de novo* review process is completed.  In the case of its standard-

21    essential patents asserted to gain improper leverage over other companies, however, Motorola

22    has demonstrated that it is willing to enforce immediately an order that forbids the use of

23    standard-essential technology by a party willing to take a license on RAND terms.  (*See*

24

MICROSOFT'S MOTION FOR TRO AND
PRELIMINARY INJUNCTION - 20

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    Chrocziel Decl. ¶ 24.)  Given Motorola's apparent disdain for its RAND commitments, it is

2    reasonable for this Court to expect Motorola to do the same here.

3            If Motorola prevails in Germany, the relief requested here would simply keep Motorola

4    temporarily in the same position as most prevailing German patentees.  Motorola would have

5    an order in hand, but would have no immediate right to enforce it without taking the required

6    additional steps.  This Court's order would not interfere with the adjudication of any dispute in

7    Germany.  Instead, like most preliminary injunctions, it would order *a party* not to upset the

8    status quo by causing irreparable harm pending the resolution of the case.

9            And even if the relief Microsoft seeks is characterized as an "anti-suit" injunction,

10   Microsoft is entitled to one because Microsoft can easily satisfy the Ninth Circuit's standard

11   governing the issuance of such injunctions.  *See generally Applied Medical Distribution Corp.*

12   *v. Surgical Co., BV*, 587 F.3d 909 (9th Cir. 2009); *E. & J. Gallo Winery v. Andina Licores S.A.*,

13   446 F.3d 984 (9th Cir. 2006); *Goss Int'l Corp. v. Man Roland Druckmaschinen*, 491 F.3d 355,

14   360 (8th Cir. 2007) (describing the Ninth Circuit's approach). Under that standard, this Court

15   can restrain Motorola from proceeding in the German courts so long as (1) this action would be

16   dispositive of the issues in Germany and (2) any one of four equitable factors is satisfied.

17   *Applied Medical Distribution*, 587 F.3d at 915; *Gallo*, 446 F.3d at 990.  This Court has already

18   concluded that Microsoft is a third-party beneficiary of Motorola's RAND contract obligations

19   and is, therefore, entitled to enforce them.  As long as the Court rejects Motorola's spurious

20   argument that Microsoft has somehow repudiated the contract by seeking to enforce it (*see*

21   Order 15–16), the disposition of this case will bar injunctive relief and, either via a ruling or

22   via negotiation, will produce a RAND license.[5]  Either way, Motorola will be unable to

23   
24   _____

   [5] As the ITC has explained, "even though a royalty obligation might accrue, an injunction may not issue against the beneficiary of a promise, which, if enforced, would be inconsistent with suit for an injunction." *DRAM*, 1987 ITC LEXIS 95, at *31 (May 21, 1987) (citing *Medtronic, Inc. v. Catalyst Research Corp.*, 518 F. Supp. 946 (D. Minn. 1981), *aff'd*, 664 F.2d 660 (8th Cir. 1982)). *See* Section III.A, *supra*.

MICROSOFT'S MOTION FOR TRO AND
PRELIMINARY INJUNCTION - 21

1    implement any German exclusion order when this case becomes final, because a license is a

2    complete defense to a German infringement action.  For this reason, this case will dispose of

3    the issue of injunctive relief now before the German court.

4            Having met this threshold standard, Microsoft need satisfy only one of the four

5    equitable criteria and can easily satisfy three.  First, an anti-suit injunction is appropriate to

6    protect this Court's jurisdiction where Motorola's implementation of the German order is not

7    only an end-run around this first-filed suit, but would "frustrate a policy of the forum"—which

8    includes the policy in favor of enforcing a contractual obligation to grant a RAND license.  *Cf.*

9    *Strategic Intent, LLC v. Strangford Lough Brewing Co. Ltd.*, No. CV-09-309-RHW, Order

10   Granting Plaintiffs' Motion for Anti-Suit Injunction at 7 (E.D. Wa. Sept. 9, 2010) (describing

11   foreign action as "an attempted end-run around [this] Court's ruling . . . and as such it invokes

12   the equitable considerations that support the imposition of an injunction") (attached as Exhibit

13   4 to the 3/28/12 Wion Decl.).

14   **REDACTED**

15

16           Second, enforcement would be "vexatious or oppressive."  *See Gallo*, 446 F.3d at 993

17   (continuation of foreign proceedings in breach of a contractual arbitration clause was vexatious

18   and oppressive).  The oppressiveness is apparent in the discussion of irreparable harm above.

19   Moreover, Motorola has revealed its vexatious purposes by refusing to accept a $300 million

20   bond to protect it against any harm caused by the sales that might occur between April 17 and

21   this Court's decision.  Motorola cannot point to any non-monetary irreparable harm it would

22   suffer if it is precluded from enjoining Microsoft in Germany.  Microsoft and Motorola do not

23   compete in the relevant market, and Motorola has committed to licensing its standard-essential

24

MICROSOFT'S MOTION FOR TRO AND
PRELIMINARY INJUNCTION - 22

1    patents on RAND terms—*i.e.*, for money—in any event.  Motorola could only be seeking to

2    exclude Microsoft from Germany to exploit the enormous leverage that would provide.

3            Finally, the action by Motorola in Germany would prejudice equitable considerations.

4    *See Gallo*, 446 F.3d at 990.  If this Court declares that Microsoft is entitled to a license, then

5    Motorola cannot in equity obtain an injunction: "wherever the rights or the situation of parties

6    are clearly defined and established by law, equity has no power to change or unsettle those

7    rights or that situation."  *Hedges v. Dixon County*, 150 U.S. 182, 192 (1893); *Fortis Benefits v.

8    Cantu*, 234 S.W.3d 642, 648-49 (Tex. 2007) ("Where a valid contract prescribes particular

9    remedies or imposes particular obligations, equity generally must yield unless the contract

10   violates positive law or offends public policy."); Pomeroy, *Equity Jurisprudence* § 425 (4th ed.

11   1918) ("Equity follows the law, in the sense of obeying it, conforming to its general rules and

12   policy").  Motorola's obligation to license on RAND terms bars injunctive relief, and its

13   implementation of the German order would contravene this basic equitable principle.

14           This is precisely the analysis that led a Minnesota district court to enjoin the

15   prosecution of a German patent infringement action pending the adjudication of a U.S.

16   licensing dispute.  *See Medtronic, Inc. v. Catalyst Research Corp.*, 518 F. Supp. 946 (D. Minn.

17   1981), *aff'd*, 664 F.2d 660 (8th Cir. 1982).  There, Medtronic argued that it had a contractual

18   right not to be enjoined even though the parties' negotiations had not yet resulted in a license.

19   Finding (at the preliminary injunction stage) that Medtronic was likely to prevail on this point,

20   the court concluded that "if the Agreement is found to bar CRC from seeking injunctive relief,

21   CRC's foreign requests for injunctive relief are improper and they can be enjoined."  518 F.

22   Supp. at 955.  The *Medtronic* court entered a preliminary injunction, in part because "the relief

23   sought is limited[, and] the injunction will in no way interfere with the patent infringement and

24   validity actions in the foreign courts, nor will it interfere with any damage awards.  It merely

MICROSOFT'S MOTION FOR TRO AND
PRELIMINARY INJUNCTION - 23

1    affects any injunctive relief which CRC may seek." *Id.* at 955–56.  As in *Medtronic*, an

2    injunction by this Court merely preserves its jurisdiction ultimately to decide that Microsoft is

3    entitled to practice Motorola's standard-essential patents, without the fear of hold up.

4            Ninth Circuit law provides this Court substantial discretion to enjoin Motorola's

5    oppressive and inequitable litigation campaign abroad; the Ninth Circuit has repeatedly

6    reversed the denial of such relief as an abuse of discretion.  *See Applied Medical Distribution*,

7    587 F.3d at 921; *Gallo*, 446 F.3d at 996; *Triton Container, Int'l Ltd. v. Di Gregorio*

8    *Navagacao LTDA*, 440 F.3d 1137 (9th Cir. 2006).  Microsoft is entitled in equity to the

9    temporary preservation of the status quo, regardless of whether its request is characterized as a

10   preliminary injunction or as an anti-suit injunction.

11                            **IV.    CONCLUSION**

12           For the reasons set forth herein, Microsoft respectfully requests that this Court grant

13   Microsoft's Motion for Temporary Restraining Order and Preliminary Injunction and enter an

14   order barring Motorola (and its subsidiaries) from taking any action to exclude Microsoft

15   products in Germany during the pendency of this RAND proceeding.  Specifically, Microsoft

16   seeks an order that will temporarily restrain Motorola while this Court considers Microsoft's

17   motion for partial summary judgment.  If Microsoft prevails on its summary judgment motion

18   seeking a declaration that Motorola has breached its RAND obligations, the Court can then

19   take up the issue of how this temporarily relief should be transformed to permanent relief.  In

20   the event that the Court determines that resolving that question requires a trial, Microsoft is

21   prepared to proceed quickly and the preliminary injunction should remain in place until the

22   matter can be tried.

23

24

MICROSOFT'S MOTION FOR TRO AND
PRELIMINARY INJUNCTION - 24

1        DATED this 28th day of March, 2012.

2                          DANIELSON HARRIGAN LEYH & TOLLEFSON LLP

3                          By ____s/ Arthur W. Harrigan, Jr._____

4                                Arthur W. Harrigan, Jr., WSBA #1751
                                 Christopher Wion, WSBA #33207

5                                Shane P. Cramer, WSBA #35099

6                          By ____s/ T. Andrew Culbert_____

7                                T. Andrew Culbert, WSBA #35925
                                 David E. Killough, WSBA #40185

8                                MICROSOFT CORPORATION
                                 1 Microsoft Way

9                                Redmond, WA 98052
                                 Phone: 425-882-8080

10                               Fax: 425-869-1327

11                               David T. Pritikin, *Pro Hac Vice*
                                 Richard A. Cederoth, *Pro Hac Vice*

12                               Constantine L. Trela, Jr., *Pro Hac Vice*
                                 Douglas I. Lewis, *Pro Hac Vice*

13                               John W. McBride, *Pro Hac Vice*
                                 SIDLEY AUSTIN LLP

14                               One South Dearborn
                                 Chicago, IL 60603

15                               Phone: 312-853-7000
                                 Fax: 312-853-7036

16

17                               Carter G. Phillips, *Pro Hac Vice*
                                 SIDLEY AUSTIN LLP

18                               1501 K Street, N.W.
                                 Washington, D.C. 20005

19                               Phone: 202-736-8000
                                 Fax: 202-736-8711

20

21                               Counsel for Microsoft Corporation

22

23

24

MICROSOFT'S MOTION FOR TRO AND
PRELIMINARY INJUNCTION - 25

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on March 28, 2012, I electronically filed the foregoing document

3   with the Clerk of the Court using the CM/ECF system, which will send notification of such

4   filing to the following:

5          **Attorneys for Defendants Motorola Solutions, Motorola Mobility and General**
           **Instrument Corporation**
6

7          Ralph Palumbo
           Philip S. McCune
8          Lynn M. Engle
           Summit Law Group
9

10         Steven Pepe
           Jesse J. Jenner
11         Norman Beamer
           Paul M. Schoenhard
12         Ropes & Gray

13                              _____s/ Linda Bledsoe_____
                                LINDA BLEDSOE
14

15

16

17

18

19

20

21

22

23

24

MICROSOFT'S MOTION FOR TRO AND
PRELIMINARY INJUNCTION - 26