# EXHIBIT 1

```
1              UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF WASHINGTON
2                     IN SEATTLE

3    ------------------------------------------------

4    MICROSOFT CORPORATION,        )
                                   )
5                Plaintiff,        )   No. C10-1823JLR
                                   )
6       v.                         )
                                   )
7    MOTOROLA, INCORPORATED,       )
                                   )
8                Defendant.        )

9    ------------------------------------------------

10
                    MARKMAN HEARING
11
     ------------------------------------------------
12
           BEFORE THE HONORABLE JAMES L. ROBART
13            UNITED STATES DISTRICT COURT JUDGE

14                    March 9, 2012

15   APPEARANCES:

16   For the Plaintiff:       Richard A. Cederoth
                              SIDLEY AUSTIN
17                            Arthur Harrigan
                              DANIELSON HARRIGAN LEYH &
18                            TOLLEFSON

19   For the Defendant:       Jesse J. Jenner
                              Gabrielle Elizabeth Higgins
20                            ROPES & GRAY
                              Ralph H. Palumbo
21                            SUMMIT LAW GROUP

22   Also Present:            Christopher Wion
                              Douglas Lewis
23                            Philip McCune
                              Andy Culbert
24                            David Pritikin
                              Herman Webley
25                            Matthew Clements
                              Ian Brooks
```

1   we didn't have any inkling this was coming until this

2   morning.

3       Let me take this in pieces.  First, I am very

4   surprised that counsel would think it is appropriate --

5   with all due respect to this court, and every other

6   federal district court, to seek to have the court dictate

7   what a German court can do.

8           THE COURT:  Welcome to the Ninth Circuit, sir.

9           MR. JENNER:  It may be.  I have to play on the

10  field I am trotting out onto, your Honor.  I note that

11  counsel goes so far as to say that the German standards

12  may well be different.  I don't know what the German

13  standards are.  Counsel suggests they may have a very

14  different view of how you interpret a contract.  There are

15  questions in this case of how certain standards that are

16  international in nature may be construed, how you

17  interpret a contract, what the potential remedies might

18  be.  But even though those are different, counsel would

19  have your Honor issue an edict to a German court, when

20  they have full opportunity to go to the German court and

21  litigate those issues, which in fact they are doing.

22          THE COURT:  I think they want the edict to be read

23  to you, as opposed to the German court.

24          MR. JENNER:  It would be phrased in terms of,

25  Motorola, you can't do this.  But the effect of that is to

1    speak to Motorola, and effectively say that a German court

2    shouldn't have the opportunity to adjudicate a German

3    dispute.  A piece of this is a German dispute.

4        I think there is an open question as to how much your

5    Honor will ultimately adjudicate here, as to whether or

6    not Microsoft can be enjoined by Motorola from

7    distributing products in the United States, may or may not

8    be the same question about whether or not Microsoft can be

9    enjoined in Germany, and whether a German court ought to

10   be the institution that speaks to that.

11       They are in Europe.  They are in front of the European

12   Commission.  They are in front of the German courts.  I

13   suspect they may be in front of other courts.  I'm not

14   quite sure, frankly.  And they come and say, oh, that is

15   not good enough, we can't seek process in the courts of

16   Germany or the European community, we want this court to

17   disrupt that process under the guise of telling Motorola

18   what you can or can't do.

19       I submit there are questions of --

20           THE COURT:  Stop for a second.  I don't need to

21   here the merits of this right now.  I agree with you, it

22   is a very interesting question.  It certainly is outside

23   the realm of what I normally do.  Is there a reason why

24   they shouldn't file it, and then we can hear it on the

25   merits?

1      MR. JENNER:  Your Honor, I think it is appropriate

2  for the court to hear motions.  I am certainly not going

3  to be the person to say that is not an appropriate thing

4  for the court to do.  I think it is a waste of time.  I

5  think it is inappropriate.

6     I really have the same feelings I had when we had that

7  telephone conference a few weeks ago, and I heard counsel

8  argue fact issue after fact issue.  My response is, your

9  Honor, we are not on a summary judgment motion.  I don't

10 think this is appropriate.  I think it is a waste of your

11 time.  That's all I can say on that subject.

12      THE COURT:  Continue on.

13      MR. JENNER:  Now, as far as having a trial or

14 mini-trial proceeding accelerated to May, the very

15 blitzkrieg that Microsoft says it doesn't want to be

16 subjected to is the blitzkrieg they are perfectly happy to

17 subject us to.

18    We have served quite a bit of discovery.  So has

19 Microsoft.  We have 30(b)(6) notices out to Microsoft.  We

20 have party deposition notices out to Microsoft witnesses.

21 We have third-party deposition notices out to third

22 parties.  We have document discovery that is ongoing, we

23 have written discovery.  It is going to take at least what

24 is remaining of 30 days to get the interrogatories and

25 document requests finished.  It is going to take whatever

# EXHIBIT 2

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON** LLP
999 THIRD AVENUE. SUITE 4400
SEATTLE, WASHINGTON 98104
(206) 623-1700

ARTHUR W HARRIGAN, JR                                                                E-MAIL  ARTHURH@DHLT.COM
                                                                                     FACSIMILE  (206) 623-8717

March 14, 2012

**VIA EMAIL**                               **VIA EMAIL**
Ralph Palumbo                               Jesse J. Jenner
Summit Law Group                            Ropes & Gray LLP
315 Fifth Ave. South, Suite 1000            1211 Avenue of the Americas
Seattle, WA  98104-2682                     New York, NY  10036-8704

            RE:    *Microsoft v. Motorola – Case No. 10-1823*

Dear Ralph and Jesse:

        The Court has given Microsoft leave to file a motion with respect to Motorola's
enforcement of any rulings that may be announced by the court in Mannheim, Germany.  As we
explained to Judge Robart, Microsoft's objective is merely to preserve the status quo for
Microsoft sales and operations worldwide, including Germany, that otherwise would be affected
by an injunction on Motorola's RAND-committed patents.  If the status quo were maintained,
then Judge Robart would be in a position to rule on the RAND related issues raised in our
November, 2010 complaint.

        We explained in Court last Friday that the need for interim relief would disappear if
Motorola would agree that it would not seek enforcement of a German injunction pending a
ruling on the RAND related issues by Judge Robart.  To secure any possible injury to Motorola
during the pendency of the RAND proceedings in Seattle, Microsoft has offered to post a bond
of $300 million.

        Please let us know by the close of business on Monday, March 19 whether this approach
is acceptable to Motorola.  Because the German court has said that it will issue its ruling on April
17, if Motorola will not agree to preservation of the status quo, we will have no alternative
except to proceed with the motion authorized by the Court.

                            Very truly yours,

                            DANIELSON HARRIGAN LEYH & TOLLEFSON LLP

                            Arthur W. Harrigan, Jr.

AWH:lb

# EXHIBIT 3



ROPES & GRAY LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036 8704
WWW.ROPESGRAY.COM

Jesse J. Jenner
T +1 212 596 9019
F +1 646 728 2581
jesse.jenner@ropesgray.com

March 19, 2012

**VIA EMAIL**

Arthur W. Harrigan Jr.
Danielson Harrigan Leyh & Tollefson LLP
999 Third Avenue, Suite 4400
Seattle, WA 98104

*Microsoft Corp. v. Motorola, Inc., et al.,*
Case No. 10-1823

Dear Art:

This is in response to your March 14, 2012 letter.

As I told the Court during the February 13 telephone conference and during the March 9 *Markman* hearing, we continue to be surprised that Microsoft would ask a United States District Court to rule on the propriety of a remedy in Germany, particularly where, as here, there are pending proceedings in Germany where Microsoft has raised directly the issues it intends to raise with Judge Robart. Microsoft has a full and fair opportunity to present its positions in the German proceedings and there is no reason to attempt to involve the Court here in that litigation.

Microsoft's request is particularly curious given that Microsoft knows full well that a procedure is available to Microsoft in Germany (that is not available in the U.S.) that would avoid enforcement of an injunction in Germany. In particular, Microsoft can avail itself in Germany of the "Orange Book" defense. As we understand it, if Microsoft makes an appropriate and acceptable "Orange Book" offer for a license under the patents in suit in Germany, an injunction *will not* be entered in Germany. However, the adequacy of any such offer under the applicable German law should be considered by the German Court, not here.

Indeed, we understand that Microsoft has already made two "Orange Book" offers, one of which apparently amounted to approximately $2 million (EUR 1,465,086), which has been rejected as inadequate. We understand that the German Court will determine the adequacy of that offer on April 17 and, in the event the Court determines that Microsoft's offer is inadequate, Microsoft potentially may make additional "Orange Book" offers until acceptable terms are reached.

ROPES & GRAY LLP

Arthur W. Harrigan Jr.                    - 2 -                        March 19, 2012

       Now, your letter states Microsoft's willingness to post a $300 million bond.  The sufficiency of this increased offer with respect to the German proceeding should continue to be addressed by counsel in Germany for both parties, in the context of the "Orange Book" defense. We are, of course, not counsel in the German proceedings and, while we have a general understanding of those proceedings, we are not privy to the relevant facts and law.

       Accordingly, we have forwarded your letter to Motorola Mobility's German counsel (and to Motorola Mobility) and suggest that Motorola Mobility's and Microsoft's German counsel discuss the adequacy of Microsoft's offer in the context of the proceedings currently pending in Germany.

Very truly yours,

Jesse J. Jenner

JJJ:kce

# EXHIBIT 4

1
2
3
4
5
6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7
8
9
10
11
12
13

STRATEGIC INTENT, LLC, d/b/a
PALOUSE FALLS BREWING
COMPANY, *et al.*,

        Plaintiffs,

        v.

STRANGFORD LOUGH
BREWING COMPANY LIMITED,
*et al.*,

        Defendants

NO.  CV-09-309-RHW

**ORDER GRANTING
PLAINTIFFS' MOTION FOR
ANTI-SUIT INJUNCTION**

14
15
16
17
18
19

    Before the Court are Plaintiffs' Emergency Motion for Anti-Suit Injunction
and Motion to Expedite Hearing re: Same (Ct. Rec. 90). The Court heard
telephonic argument on this motion on Tuesday, September 9, 2010. Plaintiffs
were represented by Aaron Goforth; Defendant Strangford Lough Brewing
Company Limited ("SLBC") was represented by Greg Hessler.

<u>Background</u>

20
21
22
23
24
25
26
27
28

    Plaintiffs first filed suit in Whitman County in September 2009. The matter
was removed to this Court in October 2009. At issue is a license and franchise
agreement between Plaintiffs and Defendant SLBC, an Irish alemaker with
operations in North America. Plaintiffs allege that SLBC fraudulently induced
Plaintiffs to enter into the license agreement. Plaintiffs assert the following causes
of action: (1) fraud/negligent misrepresentation; (2) fraud/negligent
misrepresentation in the inducement of the contract; (3) unilateral mistake; (4)
violation of Franchise Protection Act; (5) violation of Consumer Protection Act;

**ORDER GRANTING PLAINTIFFS' MOTION FOR ANTI-SUIT
INJUNCTION * 1**

1  and (6) breach of contract. (Amended Complaint, Ct. Rec. 2).

2       On June 16, 2010, the Court denied Defendants' motions for protective

3  orders and ruled that all depositions must be taken in Washington State (Ct. Rec.

4  80). From the parties' briefing on those motions and the hearings in which the

5  parties participated, the Court found that tensions between the parties were high

6  and that the discovery process had become unduly acrimonious. Concerned that the

7  parties might attempt to effectively try the case during discovery rather than

8  resolving it on the merits, the Court decided to take a more active role in the

9  discovery process (*see* telephonic proceedings on June 17, 2010, and June 22,

10  2010). Accordingly, the Court set a number of discovery status conferences and

11  directed the parties to contact the Court if additional issues arose during discovery.

12  This desire to more closely manage discovery supported the Court's ruling that all

13  depositions must be conducted locally.

14       Around July 22, 2010, Defendant SLBC filed suit against Plaintiffs in

15  Northern Ireland, asserting claims for:

16      1.    An injunction restraining [Plaintiffs] or their servants or agents
   or otherwise or howsoever from making use of the knowhow
17          belonging to [Defendant SLBC] through their relationship with
   [Plaintiffs] in their own business enterprise.
18      2.    An injunction restraining [Plaintiffs] from making use of
   confidential information acquired/obtained by [Plaintiffs] in the
19          course of their relationship with [Defendant SLBC] and used by
   [Plaintiffs] in their own business enterprise.
20      3.    An injunction restraining [Plaintiffs] from making use of the
   intellectual property and trademarks belonging to [Defendant
21          SLBC].
22      4.    An injunction restraining [Plaintiffs] from passing their
   company and products off as that of [Defendant SLBC].
       5.    An enquiry into damages for use of confidential business
23          information, alternatively an account of profits together with an
   order for payment to [Defendant SLBC] of all sums found due
24          upon the making of the said enquiry or the taking of the said
   account.
25      6.    Delivery up to [Defendant SLBC] of any documents in the
   possession, power and control of [Plaintiffs] consisting of any
26          advertising or other promotional belonging to or copied from
   materials belonging to [Defendant SLBC].
27      7.    Further and in the alternative damages for loss and damage
   sustained by [Defendant SLBC] by reason of the use of
28          [Defendant SLBC]'s goodwill by [Plaintiffs] and further by the

**ORDER GRANTING PLAINTIFFS' MOTION FOR ANTI-SUIT
INJUNCTION * 2**

1
appropriation of confidential business information by
[Plaintiffs] from [Defendant SLBC].

2
8.    Such further and other relief as the Court deems appropriate.

9.    Costs.

3

4
(Declaration of Jeffrey A. Green, Ct. Rec. 92, p. 8, Exhibit 1: High Court of Justice

5
in Northern Ireland's Writ of Summons).

6
    Plaintiffs argue that this Northern Irish suit is duplicative of the litigation

7
pending before this Court and Defendants should therefore be enjoined from

8
pursuing it. Defendants have agreed to toll the deadlines in the foreign suit until the

9
Court rules on Plaintiffs' motion.

10
<u>Standard of Review</u>

11
    The primary Ninth Circuit case setting forth the standard of review for anti-

12
suit injunctions is *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984 (9th

13
Cir. 2006). There, the Ninth Circuit reviewed prior case law on the topic and

14
expressly adopted four factors articulated by the Fifth Circuit: "foreign litigation

15
may be enjoined when it would: (1) frustrate a policy of the forum issuing the

16
injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's *in rem* or

17
*quasi in rem* jurisdiction; or (4) where the proceedings prejudice other equitable

18
considerations." *Id.* at 990 (quoting *In re Unterweser Reedereir Gmbh*, 428 F.2d

19
888, 896 (5th Cir. 1970)). The Ninth Circuit further noted that the test is

20
disjunctive: "For purposes of this action, we may rely on any of the *Unterweser*

21
factors if it applies to the case and if the impact on comity is tolerable." *Id.* at 991.

22
To apply the *Unterweser* test, the Circuit asked three specific questions: (1)

23
"whether or not the parties and the issues are the same, and whether or not the first

24
action is dispositive of the action to be enjoined"; (2) whether the foreign litigation

25
"would frustrate a policy of the forum issuing the injunction"; and (3) "whether the

26
impact on comity would be tolerable." *Id.* at 991-94.

27
    The Ninth Circuit revisited the anti-suit injunction test in *Applied Med.*

28
*Distrib. v. Surgical Co. BV*, 587 F.3d 909 (9th Cir. 2009). There, the Circuit

**ORDER GRANTING PLAINTIFFS' MOTION FOR ANTI-SUIT
INJUNCTION * 3**

1   clarified the standard to be applied under *Gallo*'s first question regarding identity

2   of the parties/issues and the dispositiveness of the local action: "Under *Gallo*, the

3   claims in the two actions are functionally the same and the first action is

4   dispositive of the action to be enjoined [if] all of the [foreign] claims fall under the

5   contract's forum selection clause and can be litigated and resolved in the [local]

6   action." *Id.* at 914.

### Analysis

8        Plaintiffs' motion describes Defendant SLBC's foreign action as presenting

9   claims that all "arise under and relate to the Exclusive Licensing Agreement in

10  dispute in this case." (Ct. Rec. 91, p. 4). Plaintiffs then address each of the four

11  *Unterweser* factors, arguing that each one justifies granting the motion and

12  enjoining the foreign suit. In response, Defendant SLBC describes the foreign

13  action as a "trademark infringement action," wholly separate from Plaintiffs'

14  contractual claims in this action. (Ct. Rec. 97, p. 5). Defendant reads the case law

15  as setting forth a mandatory two-part test: "Should the party seeking the anti-suit

16  injunction prove the first step – that the parties and issues are the same, and that the

17  first action is <u>dispositive</u> of the action sought to be enjoined – the Court will then

18  proceed to step two... However, if step one is answered in the negative, the anti-

19  suit injunction must be denied." (Ct. Rec. 97, p. 8) (emphasis in original). In

20  support, Defendant cites *Applied Med., supra.*

21       The Court concludes that Defendant misreads *Applied Med.,* incorrectly

22  arguing that the case requires a precise identity of issues and claims for an

23  injunction to issue. In fact, *Applied Med.* reversed a district court decision that

24  required an identity of claims rather than "engaging in the more functional inquiry

25  concerning dispositiveness required by *Gallo.*" 587 F.3d at 914. Moreover, the

26  specific page Defendant cites in support of its argument states: "the Ninth Circuit

27  does not require foreign claims to be identical in form to the local claims," and

28  rejects a defendant's argument as imposing "an unjustifiably narrow view of how

**ORDER GRANTING PLAINTIFFS' MOTION FOR ANTI-SUIT
INJUNCTION * 4**

1   issues can overlap." *Id.* at 918. In addition, Defendant's construction of a
2   mandatory two-part test is not consistent with the case law, which instead sets forth
3   a disjunctive test: the Court may "rely on any of the *Unterweser* factors if it applies
4   to the case and if the impact on comity is tolerable." *Gallo*, 446 F.3d at 991.

5        Comparing the gravamen of Plaintiffs' Amended Complaint with the claims
6   in Defendant's foreign action, the Court finds that each of Defendant's claims arise
7   under the license agreement at issue and "can be litigated and resolved in the
8   [local] action." *Applied Med.*, 587 F.3d at 914. As delineated in Plaintiffs' reply
9   memorandum, each of the claims for relief in the foreign action closely mirror the
10  language of the license agreement (*see* Ct. Rec. 99, pp. 2-3). Under the practical,
11  functional inquiry mandated by *Gallo* and *Applied Med.*, it is clear that each of
12  Defendant's claims in the foreign action *function* as claims to enforce specific
13  provisions of the license agreement. Put another way: while Defendants style the
14  foreign action as one for trademark infringement, the actual injunctions they seek
15  would merely enforce rights they specifically protected in the license agreement.
16  That those rights might also be protected by Northern Irish trademark law does not
17  change the fact that Plaintiffs' alleged violation of those rights would constitute a
18  breach of the license agreement.  Moreover, as Plaintiffs point out, Defendant's
19  claim for damages in the foreign action is functionally duplicative of their
20  affirmative defense seeking offsetting damages in the action before this Court.
21  (Defendant SLBC's Answer, Ct. Rec. 14, p. 24, Affirmative Defense 19). Both
22  claims seek monetary damages for Plaintiffs' alleged breach(es) of the license
23  agreement. While the nature of Defendant's claim for offsetting damages in the
24  local action is not clear, the foreign action seeks damages for Plaintiffs' use of
25  Defendant's "goodwill" and "appropriation of confidential business information,"
26  which if true would constitute breaches of ¶¶ 7.2.3 and 8.1 of the license
27  agreement. (*See* Decl. of Jeffrey A. Green, Ct. Rec. 92, Exclusive Microbrewery
28  License, Equipment, and Wort Supply Agreement, p. 18).

**ORDER GRANTING PLAINTIFFS' MOTION FOR ANTI-SUIT
INJUNCTION * 5**

1       This is not a situation where Plaintiffs are random infringers of Defendant's

2   intellectual property; rather, resolution of Defendant's trademark infringement

3   claims would necessarily require interpretation of the license agreement and the

4   rights of the parties protected therein. The license agreement granted Plaintiffs

5   certain rights to use Defendant's intellectual property, and therefore the claim that

6   Plaintiffs unlawfully infringed upon Defendant's intellectual property rights could

7   only be resolved by interpreting the rights set forth in the license agreement – in

8   particular, determining the scope and duration of those rights. Accordingly,

9   Defendant *could* bring each of the claims in the foreign action as counterclaims

10  (whether compulsory or permissive) in this action.

11      Therefore, the Court finds that the parties and issues are the same, and the

12  local action is functionally dispositive of the foreign action – thus answering

13  *Gallo*'s first question in Plaintiffs' favor. The Court also finds that considerations

14  of policy and comity weigh in Plaintiffs' favor.

15      The Court cannot analyze the policies at issue on a blank slate, but rather

16  must consider the acrimonious history of this case, as related above. This record

17  supports a conclusion that the foreign suit is designed to be "vexatious or

18  oppressive," and would frustrate this Court's policies of closely managing

19  discovery, avoiding duplicative litigation, and conserving the resources of the

20  parties and the Court – thus satisfying two more of *Unterweser*'s disjunctive

21  factors. *Gallo*, 446 F.3d at 990. Defendant claims that the filing of the suit in

22  Northern Ireland is wholly unrelated to the prosecution of the local action.

23  However, this claim is undermined by the timing of the foreign action. Though it is

24  clear from the record that Defendant contemplated filing the Northern Irish action

25  as early as one year ago (*see* Decl. of Greg Hessler, Ct. Rec. 98, letter from Linda

26  Schauble-Ruff to Peter Bowles dated September 22, 2009), Defendant did so only

27  a few weeks after the Court ruled that all depositions must be conducted here in

28  Washington State. Plaintiffs have previously alleged that Defendants' discovery

**ORDER GRANTING PLAINTIFFS' MOTION FOR ANTI-SUIT
INJUNCTION * 6**

1   conduct was designed to prolong litigation and increase Plaintiffs' expenses, and
2   the Court finds that the timing of the suit in Northern Ireland supports that
3   allegation. Only after learning that its agents must travel to the U.S. for
4   depositions, and that Plaintiffs would not have to travel to Ireland, did Defendant
5   file this foreign suit. For the Plaintiffs, defending themselves in the foreign suit
6   would require the same kinds of expenditures and foreign travel that Plaintiffs had
7   just avoided by virtue of this Court's ruling. The timing of the Northern Irish suit
8   suggests that it is an attempted end-run around the Court's ruling, and as such it
9   invokes the equitable considerations that support the imposition of an injunction
10  under the *Unterweser* factors.

11      In addition, the Court finds that the analyses of policy and comity found in
12  *Gallo* and *Applied Med.* apply equally here, though it is true that the forum
13  selection clause in the instant contract is distinct. In both *Gallo* and *Applied Med.*,
14  the contracts at issue included unambiguous forum selection clauses identifying the
15  local forum as the exclusive jurisdiction for resolution of the parties' disputes.
16  *Gallo*, 446 F.3d at 987; *Applied Med.*, 587 F.3d at 911. Accordingly, in both cases
17  the Circuit recognized the important policy of enforcing forum selection clauses to
18  provide clarity in parties' contractual negotiations, both in national and
19  international commerce. *Gallo*, 446 F.3d at 992; *Applied Med.*, 587 F.3d at 918-19.
20  The fact that the foreign litigants had willingly entered into such forum selection
21  clauses also dictated the Circuit's holdings that enforcing the clauses did not
22  impact comity. *Gallo*, 446 F.3d at 994; *Applied Med.*, 587 F.3d at 920.

23      Here, rather than an exclusive forum selection clause of the kind found in
24  *Gallo* or *Applied Med.*, the license agreement states the following: "The laws of
25  Northern Ireland shall govern this Agreement should the cause of action be the
26  Licensor's and Whitman County, Washington, USA should it be the Licensee's.
27  Both parties agree to refer any dispute in the first instance to arbitration, the place
28  of arbitration being decided in accordance with who is the referring party." (Decl.

**ORDER GRANTING PLAINTIFFS' MOTION FOR ANTI-SUIT INJUNCTION * 7**

1    of Jeffrey A. Green, Ct. Rec. 92, p. 20, Exclusive Microbrewery License,

2    Equipment, and Wort Supply Agreement, ¶ 10.5). The parties permanently waived

3    arbitration by stipulation in this matter (Ct. Rec. 45).

4         Neither party cites an applicable case involving a clause of this kind, and the

5    Court finds none. Nonetheless, the rationale applied in *Gallo* and *Applied Med.*

6    counsels toward granting Plaintiffs' motion here. Although this license agreement

7    is not as simple as in those prior cases, it does express the parties' intent to allow

8    the party who files first to determine the venue of the suit and the law to be

9    applied. Though arbitration was waived, the license agreement allows the

10    "referring party" – i.e., the party first alleging breach of the agreement – to choose

11    the place of arbitration and the applicable law. Thus this provision is functionally

12    identical to a traditional forum selection clause, and the same policies supporting

13    enforcement of those clauses support enforcement of the clause here. Just as did

14    the defendants in *Gallo* and *Applied Med.*, Defendant SLBC here freely negotiated

15    a contract which subjected them to suit in this forum. Like a traditional forum

16    selection clause, the clause here provides advance clarity to the parties as to where

17    any dispute between them will be resolved. Therefore, "protecting contractual

18    devices that provide such indispensable, essential functions within international

19    trade justifies the imposition of an anti-suit injunction." *Gallo*, 446 F.3d at 993.

20         In conclusion, the Court finds that: (1) the parties and issues are the same,

21    and the local action is functionally dispositive of the foreign action; (2) allowing

22    Defendants to proceed in the foreign action would violate several policies of the

23    local forum, including managing discovery, avoiding duplicative litigation,

24    conserving the resources of the parties and the Court, and encouraging enforcement

25    of forum selection clauses; (3) the foreign action would be "vexatious and

26    oppressive"; and (4) granting the anti-suit injunction would not impact comity.

27         Accordingly, **IT IS HEREBY ORDERED:**

28         1. Plaintiffs' Emergency Motion for Anti-Suit Injunction and Motion to

**ORDER GRANTING PLAINTIFFS' MOTION FOR ANTI-SUIT INJUNCTION * 8**

Case 2:09-cv-00309-RHW    Document 101    Filed 09/09/10

1    Expedite Hearing re: Same (Ct. Rec. 90) is **GRANTED.**

2        2.   Defendants are **enjoined** from proceeding with the litigation entitled

3    *Strangford Lough Brewing Company Ltd v. Strategic Intent LLC trading as*

4    *Palouse Falls Brewing Co., Jeffrey Greene and Melinda Greene,* Cause No. 93647,

5    filed in 2010 in the High Court of Justice in Northern Ireland, Queen's Bench

6    Division. Defendants or their attorneys shall provide notice of the injunction to

7    those listed in Fed. R. Civ. P. 65(d)(2).

8        **IT IS SO ORDERED.** The District Court Executive is directed to enter this

9    Order and forward copies to counsel.

10       **DATED** this 9th day of September, 2010.

11

12                          *s/Robert H. Whaley*
                          ROBERT H. WHALEY
13                        United States District Judge

14

15   Q:\CIVIL\2009\Strategic Intent\enjoin.ord.wpd

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER GRANTING PLAINTIFFS' MOTION FOR ANTI-SUIT INJUNCTION * 9**