THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MOTOROLA, INC., et al.,<br><br>Defendants. | Case No. C10-1823-JLR<br><br>**MICROSOFT'S OPENING CLAIM CONSTRUCTION BRIEF ON ITS '780 AND '582 COUNTERCLAIM PATENTS**<br><br>Noting Date:  May 18, 2012<br>Hearing Date: June 7, 2012 |
| MOTOROLA MOBILITY, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | |

MICROSOFT'S OPENING CLAIM
CONSTRUCTION BRIEF ON ITS '780 AND '582
COUNTERCLAIM PATENTS
Case No. C10-1823-JLR

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   APPLICABLE LAW ON CLAIM CONSTRUCTION....................................... 1

      A.    Claims are generally given their ordinary and customary meaning ...................... 1

      B.    No construction is needed for most of the terms listed below because their ordinary meaning would be properly understood by the jury and would most accurately reflect the intended scope of the claims......................................... 1

III.  THE PATENTS AND CLAIM CONSTRUCTIONS........................................ 2

      A.    U.S. Patent No. 6,339,780 to Shell et al. (filed May 6, 1997) ............................... 2

            1.    Background........................................................................................... 2

            2.    Proposed construction of terms in asserted claims 1–6, 9–14, 17–18, 20–21, and 32–42 ........................................................................... 3

                  a.    "graphic element" (claims 1–2, 4–6, 9, 12–15, 20–21, 32–33, 39–40) ............................................................................ 3

                  b.    "during times when the browser is loading *visible* content" (claims 2, 12) ................................................................ 6

                  c.    "obstruct[s/ing]" (claims 1, 12, 32, 33, 36, 39, 40)..................... 8

      B.    U.S. Patent No. 7,411,582 to Toepke (effectively filed Dec. 16, 1997).............. 10

            1.    Background......................................................................................... 10

            2.    Proposed construction of terms in asserted claims 1–4, 6, 8–11, 13–23, 25–31 ................................................................................. 11

                  a.    "icon" (claims 1, 15)................................................................ 11

                  b.    "interface" (claims 3, 11, 27)................................................... 14

                  c.    "invoking [a/the] selected input method" (claims 15,17) ............ 15

                  d.    "distinct from . . . computer/application/ programs" (claims 1, 11, 15, 19) ................................................................... 16

                  e.    "window" (claims 11, 14, 15, 21-23, 29-31) ............................. 18

                  f.    "as if . . . received [via/from]" as used in: ". . . as if the information was received via user input received from a hardware input device" (claim 1) ". . . as if the input was received via a hardware keyboard" (claim 4) ". . . as if the information was received via user input at a hardware input device" (claim 11) ". . . as if the user data was received

MICROSOFT CORPORATION'S OPENING
CLAIM CONSTRUCTION BRIEF ON ITS '780
AND '582 COUNTERCLAIM PATENTS - ii
Case No. C10-1823-JLR

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

from a hardware input device" (claim 15)  ". . . as if the input data was received via user input received from a hardware input device" (claim 19) ................................................ 20

IV.    CONCLUSION ........................................................................................................... 21

MICROSOFT CORPORATION'S OPENING
CLAIM CONSTRUCTION BRIEF ON ITS '780
AND '582 COUNTERCLAIM PATENTS - iii
Case No. C10-1823-JLR

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

## **TABLE OF AUTHORITIES**

### **Cases**

*Arlington Indus. v. Bridgeport Fittings, Inc.*,
  632 F.3d 1246 (Fed. Cir. 2011)..................................................................... 4

*CVI/Beta Ventures, Inc. v. Tura LP*,
  112 F.3d 1146 (Fed. Cir. 1997)..................................................................... 10

*Edwards Lifesciences LLC v. Cook Inc.*,
  582 F.3d 1322 (Fed. Cir. 2009)..................................................................... 9

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2011)..................................................................... 1

*Free Motion Fitness, Inc. v. Cybex Intl*,
  423 F.3d 1343 (Fed. Cir. 2005)..................................................................... 13

*Lyons v. Nike, Inc.*,
  No. 09-1183, 2010 WL 5812956 (D. Or. Sept. 28, 2010),
  *adopted by* 2011 WL 597050 (D. Or. Feb. 11, 2011)...................................... 2

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008)..................................................................... 1

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (en banc)............................................... passim

*U.S. Surgical Corp. v. Ethicon, Inc.*,
  103 F.3d 1554 (Fed. Cir. 1997)..................................................................... 1

*V-Formation, Inc. v. Benetton Group SpA*,
  401 F.3d 1307 (Fed. Cir. 2005)..................................................................... 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

# I.   INTRODUCTION

Microsoft respectfully submits its opening claim construction brief for the disputed terms of the two Microsoft counterclaim patents at issue in this suit: Microsoft's U.S. Patent Nos. 6,339,780 and 7,411,582.  *See* Wilson Decl. Exs. A & K (reprinting asserted claim language of the '780 and '582 patent, with disputed terms highlighted).

# II.   APPLICABLE LAW ON CLAIM CONSTRUCTION

## A.   Claims are generally given their ordinary and customary meaning

The leading case on claim construction is *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc).  Under *Phillips*, the words of a claim limitation are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of the invention, *i.e.*, as of the effective filing date of the patent application (in this case 1997 for both patents).  *See id.* at 1312–13.

## B.   No construction is needed for most of the terms listed below because their ordinary meaning would be properly understood by the jury and would most accurately reflect the intended scope of the claims

The Federal Circuit has recognized that "district courts are not (and should not be) required to construe *every* limitation present in a patent's asserted claims."  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008); *see also U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (claim construction "is not an obligatory exercise in redundancy").  That is, the court may determine that a term "needs no construction" and thereby give the term its "plain and ordinary meaning."  *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010) (where the court resolves dispute regarding scope of the term by rejecting one party's proposed construction and adopting the term's "plain and ordinary meaning," the court is not obligated to construe the term in order to provide additional guidance to the jury); *Lyons v. Nike, Inc.*, No. 09-1183, 2010 WL 5812956, at *11 (D. Or. Sept. 28, 2010) (Findings and Recommendation) ("[A]ll claim language need not be

MICROSOFT CORPORATION'S OPENING
CLAIM CONSTRUCTION BRIEF ON ITS '780
AND '582 COUNTERCLAIM PATENTS - 1
Case No. C10-1823-JLR

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1  construed and, furthermore, should not be construed where the dispute is not genuine and merely

2  seeks to reconfigure claim language in [a] way that is not meaningful."), *adopted by* 2011 WL

3  597050 (D. Or. Feb. 11, 2011).

4      For most of the "disputed" terms discussed below, there is a specific dispute between the

5  parties that the Court should resolve, but beyond that, there is no need for further construction by

6  the Court because the plain English meaning of the term would be properly understood by the

7  jury and would most accurately reflect the intended scope of the claims.  Motorola's attempt to

8  rewrite the language of every disputed term with language more to its liking should thus be

9  rejected.

10 **III.    THE PATENTS AND CLAIM CONSTRUCTIONS**

11     **A.    U.S. Patent No. 6,339,780 to Shell et al. (filed May 6, 1997)**

12        **1.    Background**

13     The '780 patent offers a solution to a problem emerging from the convergence of two

14 relatively recent technologies in 1997: mobile computing and web browsing.  Prior methods of

15 browsing the Internet involved "hypermedia browsers" which typically filled a large display

16 screen.  Because screen space was plentiful, existing hypermedia browsers were able to dedicate

17 portions of the application to display loading status information.  *See* Wilson Decl. Ex. B, '780

18 patent at 2:2–:12, 2:32–:34.  This information could be conveyed through the animation of icons,

19 progress bars, or text indicating what hypermedia "content" was being loaded and/or how much

20 data or time remained for loading to complete.  *Id.* at 2:2–:12.  The browsers invariably

21 conveyed this loading information in portions of the hypermedia browser application that did not

22 interfere with the user's viewing or enjoyment of the content being displayed (e.g., in a toolbar

23 or a status bar).  *Id.*  Translating this scheme to mobile computing devices posed a challenge

24 because of the devices' limited display area — there was simply not enough screen space to

25 provide a permanent element to represent the browser's loading status.  *Id.* at 2:30–:39.

26

MICROSOFT CORPORATION'S OPENING
CLAIM CONSTRUCTION BRIEF ON ITS '780
AND '582 COUNTERCLAIM PATENTS - 2
Case No. C10-1823-JLR

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

Therefore, the inventors developed a method to replicate a user's prior experience in the smaller screen of a mobile device, while also conveying the necessary loading information.

The invention disclosed in the '780 patent includes the temporary display of a "graphic element," indicating the "loading status" of content, in a portion of the hypermedia browser that briefly "obstructs" the content a user might enjoy.  *See id.* 4:50–5:3.  Accordingly, "[t]his method of displaying loading status achieves the objective of alerting users during periods of time when content is actually being loaded.  It does this without requiring a permanent allocation of screen real estate, thus freeing space for other functions.  Although there might be some obstruction of hypermedia content, such obstruction is minor and temporary."  *Id.* at 5:4–:10.

### 2.  Proposed construction of terms in asserted claims 1–6, 9–14, 17–18, 20–21, and 32–42

#### a.  "graphic element" (claims 1–2, 4–6, 9, 12–15, 20–21, 32–33, 39–40)

| Microsoft's Claim Construction | Motorola's Claim Construction |
| --- | --- |
| No construction needed.<br>Alternatively: "a discrete image for viewing on a computer display screen" | "a discrete image for viewing on a computer display screen *that is not content*" |

The primary dispute is whether the term "graphic element," by itself, is always something other than "content."  It is not.  That is the only difference between the two proposed constructions, and once that dispute is resolved, no further construction is necessary for the term "graphic element," *see supra* Part II.B, p. 1 (explaining why not every term needs to be construed).[1]

---

[1] If the Court further construes "graphic element," notwithstanding Microsoft's argument against providing any further construction, Motorola and Microsoft (in the alternative) have both proposed "a discrete image for viewing on a computer display screen," which is consistent with the definition of "graphics" from The Computer Desktop Encyclopedia (1996): "**graphics** . . . Called *computer graphics*, it is the creation and manipulation of *picture images in the computer*. . . . A graphics computer system requires *a graphics display screen* . . . ."  Wilson Decl. Ex. H, at 354 (emphasis added).

MICROSOFT CORPORATION'S OPENING
CLAIM CONSTRUCTION BRIEF ON ITS '780
AND '582 COUNTERCLAIM PATENTS - 3
Case No. C10-1823-JLR

***Claim language***:  The claims refer to a "***temporary*** graphic element" or a "***'load status'*** graphic element."  It may be true that those particular examples of "graphic elements" are "not content," but it would be improper to conclude that "graphic element," by itself, is always something other than "content."  In fact, the claims explicitly differentiate between particular graphic elements that are not content and those that may be.  For instance, claims 1, 20, and 22 explicitly state that the "temporary graphic element is not content," *see* Wilson Decl. Ex. B, which strongly implies that a "graphic element," by itself, is not inherently "not content."  *See Phillips*, 415 F.3d at 1314 ("[T]he claim in this case refers to 'steel baffles,' which strongly implies that the term 'baffles' does not inherently mean objects made of steel.").  Furthermore, the remaining claims, particularly independent claims 12, 19, 32, 36 and 40, do not include a "not content" limitation.  Motorola's construction would read a "not content" limitation into every instance of "graphic element," thereby rendering the "not content" language in claims 1, 20, and 22 superfluous, which is generally to be avoided.  *See, e.g.*, *Arlington Indus. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1254–55 (Fed. Cir. 2011) ("Reading a split limitation or an incomplete circle limitation into the term 'spring metal adaptor' would render these additional modifiers superfluous, which weighs against doing so.").

***Specification***:  The specification does not provide an explicit definition for the unmodified term "graphic element," nor does it suggest any special definition beyond its ordinary meaning.  The specification instead refers to the same particular "graphic elements" that are used in the claims, *e.g.*, "temporary, animated graphic element," *see* Wilson Decl. Ex. B, at 2:47, and "temporary graphic element," *see id.* at 4:50–5:22.

***Prosecution History***:  Similarly, the prosecution history does not explicitly define the term "graphic element" by itself.  Motorola points to several sections of the prosecution history, but those sections concern a ***particular*** "graphic element" that is not content.  *See, e.g.*, Wilson Decl. Ex. C, '780 patent March 23, 2000 Office Action Response, at 16 ("Claims 2, 5, 7, 10, 12,

MICROSOFT CORPORATION'S OPENING
CLAIM CONSTRUCTION BRIEF ON ITS '780
AND '582 COUNTERCLAIM PATENTS - 4
Case No. C10-1823-JLR

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

and 15 include a feature where the *temporary* graphic element is animated. . . .  As mentioned

previously, the '. . . graphic element . . .' does not contain information content . . . '") (emphasis

added); *id.* Ex. D, '780 patent December 1, 2000 Office Action Response, at 18 ("Claims 2, 5, 7,

10, 12, and 15 include a feature where the *temporary* graphic element is animated. . . .  The

'. . . graphic element . . .' of these claims is '. . . not content . . . '") (emphasis added).

Additionally, when the applicants argued that "[t]he core concept is a non-content

graphic element appearing over a content area that is indicative of present condition where

content is being loaded into the content area,"[2] *see id.* Ex. D, '780 patent December 1, 2000

Office Action Response, at 11, the applicants were explicitly *modifying* the term "graphic

element," not *defining* the term as a lexicographer might.  Similarly, the Examiner, in the Notice

of Allowability, stated that "the claimed invention is directed to covering a part of the content

viewing area with a graphic element.  This graphic element is not additional content."  *See id.*

Ex. G, '780 patent Notice of Allowability at 4.  Here the examiner is also *modifying* the term

"graphic element" and recognizing that "this" particular graphic element is not content.  The

Examiner has not offered a definition or a mutual understanding as to the meaning of "graphic

element" by itself.

Accordingly, Motorola's proposed construction is incorrect, and instead the Court should

simply instruct the jury to give "graphic element" its plain and ordinary meaning.

---

[2] This argument was repeated on June 26, 2001, *see* Wilson Decl. Ex. E, at 16, and on August 15, 2001, *see id.* Ex. F, at 16.

MICROSOFT CORPORATION'S OPENING
CLAIM CONSTRUCTION BRIEF ON ITS '780
AND '582 COUNTERCLAIM PATENTS - 5
Case No. C10-1823-JLR

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1

2

**b.**   **"during times when the browser is loading *visible* content" (claims 2, 12)**

| Microsoft's Claim Construction | Motorola's Claim Construction |
|---|---|
| No construction needed.<br><br>Alternatively: "while the hypermedia browser is loading content (for the purposes of displaying the content), where at least part of the content is capable of being seen" | Moto's original proposal:<br><br>"while the hypermedia browser is loading content into the content viewing area"<br><br><br>Moto's current proposal:<br><br>"while the hypermedia browser is loading *visible* content into the content viewing area" |

Shortly before this brief was due, Motorola changed its proposed construction to insert the word "visible." Even with Motorola's newly proposed construction, however, there remains a dispute. In particular, does "during times when the browser is loading visible content" include moments when content is being loaded but cannot yet be seen on the screen? Yes. The act of "loading" may overlap in time with the act of "displaying," but the two actions are different. Once this dispute is resolved, no further construction is necessary for the term "during times when the browser is loading visible content," *see supra* Part II.B, p. 1 (explaining why not every term needs to be construed).

*Claims*:  Motorola appears to be trying to conflate the meaning of the terms "loading" and "displaying." However, the claims repeatedly distinguish the two terms as separate actions. *See, e.g.*, Wilson Decl. Ex. B, '780 patent, Claim 19 ("***loading*** content from the hyperlink resource . . . ; ***displaying*** the content in a content viewing area . . . ; wherein the ***loading***, the content ***displaying***, and the temporary graphic element displaying steps occur at least partially concurrently"); *id.* Claim 40 ("the hypermedia browser ***loads*** content, ***displays*** such content in the content viewing area as it ***loads***, and displays a 'load status' graphic element over the content view area"). The claims describe content as being ***displayed*** in the "content viewing area," not "loaded" into the "content viewing area" as proposed by Motorola.

MICROSOFT CORPORATION'S OPENING
CLAIM CONSTRUCTION BRIEF ON ITS '780
AND '582 COUNTERCLAIM PATENTS - 6
Case No. C10-1823-JLR

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

1     **Specification**:  Moreover, the specification of the '780 patent never refers to the "content

2     viewing area" as a place where content is loaded.  Instead, the "content viewing area" is a place

3     where content is "displayed."  *See, e.g.*, *id.* Ex. B, '780 patent at 2:45–:47 ("[A] browser has a

4     content viewing area that is used for ***displaying*** graphical hypermedia content"); *id.* at 5:15–:19

5     ("The method includes a step of ***loading*** content from the hyperlink resource in response to user

6     selection of hyperlinks contained in said content, and of ***displaying*** the content in a content

7     viewing area.").

8          The specification describes the "loading" step in the prior art as follows:

9               One persistent characteristic of WWW browsing is that significant
               delays are often encountered when ***loading*** documents and other
10              multimedia content.  From the user's perspective, such delays can
               be quite frustrating.  In severe cases involving long delays, users
11              might be inclined to believe that their browsers have become
               inoperative. To avoid this situation, ***browsers typically include***
12              ***some type of status display indicating progress in loading***
               ***content***.  In many browsers, this consists of a stationary icon such
13              as a flag or globe that becomes animated during periods when
               content is being ***loaded***.  For instance, such an icon might comprise
14              a flag that is normally stationary but that flutters or waves during
               content ***loading***.

15
16    *Id.* at 1:64–2:9 (emphasis added).  The loading of content in prior-art and contemporary browsers

17    was indicated by the animation of a permanent icon.  *Id.*  The animation of this loading status

18    icon corresponded to the ***loading*** of new content, but not necessarily the ***display*** of this content.[3]

19    This is important, because one of the main goals of the invention is to inform the user when

20    content is being loaded (including the moments when the content has not yet been displayed on

21    the screen.)  *See id.* at 5:4–:6 ("This method of displaying loading status achieves the objective

22    of alerting users during periods of time when content is actually being loaded.").

23    _____

24         [3] This phenomenon (that the loading icon animates even in the moments ***prior*** to the display
      of new content) can be observed in hypermedia browsers that existed around the time of the
25    invention of the '780 patent, including Microsoft's Internet Explorer.  *See* Wilson Decl. Ex. J
      (video of Internet Explorer).

26

MICROSOFT CORPORATION'S OPENING
CLAIM CONSTRUCTION BRIEF ON ITS '780
AND '582 COUNTERCLAIM PATENTS - 7
Case No. C10-1823-JLR

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

***Prosecution History***:  The prosecution history supports Microsoft's proposal that "loading" means to "load content (for the purpose of displaying the content)":

> First, regarding browsers, Applicant specially notes (such as at page 17 of the amendment) that the claimed invention is directed to loading into the browser.  This means that the loading is not done merely to the hard drive or to the memory.  The ***loading is done for the specific purpose of displaying the content with the browser***.

Wilson Decl. Ex. G, '780 patent Notice of Allowability at 3 (emphasis added).  The prosecution history does not support Motorola's attempt to conflate "loading" with "displaying" in the "content viewing area."

***Extrinsic Evidence***:  Microsoft's proposal is also consistent with the dictionary definition of "loaded":  "**loaded** . . . Brought into the computer and ready to go."  Wilson Decl. Ex. H, The Computer Desktop Encyclopedia, at 496.  Therefore, contrary to Motorola's proposed construction, content is not necessarily ***displayed*** in the content viewing area when it is ***loaded***, but instead the content is brought into the browser for the purpose of being displayed.

### c.   <u>"obstruct[s/ing]" (claims 1, 12, 32, 33, 36, 39, 40)</u>

| Microsoft's Claim Construction | Motorola's Claim Construction |
|---|---|
| No construction needed.<br>Alternatively: "to block or otherwise interfere with" | "block from sight" |

The primary dispute is whether the term "obstruct[s/ing]" requires the temporary graphic element to ***completely*** block the underlying content.  Nothing in the patent requires such an extreme interpretation.  To the contrary, the goal of the patent is to minimize the interference with the underlying content, and thus the claims are broad enough to encompass graphic elements that are ***translucent*** or only ***partially*** obscure the underlying content.  Once this dispute

MICROSOFT CORPORATION'S OPENING
CLAIM CONSTRUCTION BRIEF ON ITS '780
AND '582 COUNTERCLAIM PATENTS - 8
Case No. C10-1823-JLR

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1   is resolved, no further construction is necessary for the term "obstruct[s/ing]," *see supra* Part

2   II.B, p. 1 (explaining why not every term needs to be construed).[4]

3        ***Claims***:  Nothing in the claims supports Motorola's proposal that the content must be

4   ***completely*** blocked.  To the contrary, each independent claim of the patent consistently refers to

5   obstructing "[only] part of" the content in a content viewing area.  *See* Wilson Decl. Ex. B, '780

6   patent, Claims 1, 12, 19, 32, 36, 40.

7        ***Specification***:  The specification uses the term "obstruct" synonymously with the broader

8   term "interfere," which is consistent with Microsoft's proposed construction:

9           Browser controls such as menus, status displays, and tool icons are
           located in areas or windows adjacent the viewing area, so that they
10          do not ***obstruct or interfere*** with the viewing area.

11  *Id.* at 1:60–:63 (emphasis added).  "The interchangeable use of the two terms is akin to a

12  definition equating the two."  *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1329 (Fed.

13  Cir. 2009).

14       Furthermore, the specification emphasizes that a goal of the invention is to ***minimize*** any

15  obstruction of content, which is inconsistent with Motorola's proposed construction that would

16  require the ***maximum*** possible obstruction of the content:

17          The temporary graphic element is preferably located in a corner of
           the content viewing area, and obstructs a portion of the viewing
18          area. The upper right corner is preferred because this position is
           often blank in Internet documents . . . Although there might be
19          some obstruction of hypermedia content, ***such obstruction is***
           ***minor and temporary***.
20

21  *Id.* at 4:64–5:10 (emphasis added).

22      [4] If the Court further construes "obstruct," notwithstanding Microsoft's argument against
   providing any further construction, Microsoft (in the alternative) has both proposed "to block or
23  otherwise interfere with," which is consistent with the definition of "obstruct" from The Webster
   Third International Dictionary (1996): "**obstruct** . . . vb . . . vt **1 :** to block up **:** stop up or close
24  up **:** place an obstacle in or fill with obstacles or impediments to passing . . . **2 :** to be or come in
   the way of **:** hinder from passing, action or operation **:** IMPEDE, RETARD."  Wilson Decl. Ex.
25  I, at 1559.

26

MICROSOFT CORPORATION'S OPENING
CLAIM CONSTRUCTION BRIEF ON ITS '780
AND '582 COUNTERCLAIM PATENTS - 9
Case No. C10-1823-JLR

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

Nothing in the specification requires **completely** blocking the underlying content.  To the contrary, graphic elements that are **translucent** or only **partially** obscure the underlying content are consistent with the goals of the patent and thus should be encompassed by the claims when properly construed.  *See, e.g.*, *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1160 (Fed. Cir. 1997) ("In construing claims, the problem the inventor was attempting to solve, as discerned from the specification and the prosecution history, is a relevant consideration.").

*Prosecution History*:  During prosecution, the Examiner also equated the word "obstruct" with the broader term "interfere," consistent with Microsoft's proposed construction:

> [T]he claimed invention is directed to covering a part of the content viewing area with a graphic element. . . . To some degree, this appears counterintuitive and against the normal flow of the art. **If such a graphic element would cover content, this would interfere with the view offered to the user**.

Wilson Decl., Ex. G, '780 patent Notice of Allowability, at 4–5 (emphasis added).

## B.   U.S. Patent No. 7,411,582 to Toepke (effectively filed Dec. 16, 1997)

### 1.   Background

The '582 patent, titled "Soft Input Panel System and Method," is the child of an application originally filed December 16, 1997.  *See* Wilson Decl. Ex. L, at 1:9.  The '582 patent teaches a method and system by which a portable device, such as a cell phone or handheld computer, can accept user input from an unlimited number of common user input methods, including virtual keyboards, voice input, or physical keyboards.  The '582 patent further teaches the seamless integration of these multiple input mechanisms with applications on the portable device, so that a user can easily switch input methods on the fly and so that the applications can process and receive user input without needing to know which input method the user has selected.

Prior to the '582 patent, "each application [on a portable device] need[ed] to develop its own touch-sensitive interface," resulting in a "substantial amount of duplication," *id.* at 1:47–:49,

MICROSOFT CORPORATION'S OPENING
CLAIM CONSTRUCTION BRIEF ON ITS '780
AND '582 COUNTERCLAIM PATENTS - 10
Case No. C10-1823-JLR

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

or "the operating system [would] supply all the virtual keyboards and thus eliminate the

redundancy, however . . . this limit[ed] applications to using only those virtual keyboards

supplied by the operating system," *id.* at 1:58–:61.  To solve these problems, the '582 patent

teaches how applications and input methods could use a "single and flexible interface for a

plurality of different input methods . . . [to] provide[] keystrokes from a selected input method to

the [operating system]. . . . As a result, any application capable of handling keyboard input may

be used with any appropriately-configured input method . . . . without the application being

provided with information as to the source."  *Id.* at 4:46–:67.  To enable a user to switch input

methods, the '582 patent further teaches a "displayable list of available input methods," whereby

a "user interacting with the user interface may select an input method," which is then "load[ed]

and call[ed]."  *Id.* at 5:10–:13.  In this manner, the '582 patent teaches how a cell phone and the

applications on the phone could accept user input from multiple different input methods, as long

as the input method passes data through an established interface.

### 2.   Proposed construction of terms in asserted claims 1–4, 6, 8–11, 13–23, 25–31

#### a.   "icon" (claims 1, 15)

| Microsoft's Claim Construction | Motorola's Claim Construction |
|---|---|
| "an on-screen representation of something" | "a small image displayed on the screen to represent an object that can be manipulated by the user" |

Motorola's proposed construction attempts to narrow "icon" in two improper ways.  First,

Motorola's construction limits icons to "images," apparently in the hope of excluding ***text*** from

serving as an "icon."  But even the dictionary cited by Motorola in support of its construction

shows that an "icon" can be text.  Second, Motorola's construction attempts to place limits on

what the icon represents — Motorola would limit icons to representing "an object that can be

manipulated by the user" — when nothing in the patent places any particular limits on what the

icon can represent.

MICROSOFT CORPORATION'S OPENING
CLAIM CONSTRUCTION BRIEF ON ITS '780
AND '582 COUNTERCLAIM PATENTS - 11
Case No. C10-1823-JLR

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

***Specification***:  The '582 patent does not define "icon," and only provides one example, element 52 (a picture of a keyboard) as shown in Figure 5.  However, it would be improper to extrapolate from this one example that all "icons" must be pictures of a keyboard.  *See Phillips*, 415 F.3d at 1323 ("although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments").

***Prosecution history***:  During prosecution, the applicant provided examples of icons. Specifically, the applicant stated that the prior art cited by the Examiner, U.S. Patent No. 5,760,773, contains "action handles," where "[a]n action handle is an icon."  *See* Wilson Decl. Ex. M, '582 patent Sept 5, 2006 Office Action Response, at 10.  In the '773 patent cited by the applicant, there are several pictorial "action handles", as shown in Figure 3 below, including item 40a, an action handle with text.



EXEMPLARY STATIC ACTION HANDLES
**FIG. 3**

Wilson Decl. Ex. N, U.S. Patent 5,760,773, Fig. 3.  The '773 patent further states that item 40a is "an action handle icon comprising a lowercase letter 'a.'"  *Id.* at 14:39–:40.  Thus, the '773 patent is intrinsic evidence about the meaning of "icon" and confirms that an "icon" can be text (e.g., the letter "a" as shown in item 40a).  *See V-Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1311 (Fed. Cir. 2005) ("This court has established that 'prior art cited in a patent or cited in the prosecution history of the patent constitutes intrinsic evidence.'").

MICROSOFT CORPORATION'S OPENING
CLAIM CONSTRUCTION BRIEF ON ITS '780
AND '582 COUNTERCLAIM PATENTS - 12
Case No. C10-1823-JLR

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

***Extrinsic evidence***:  Microsoft's proposed construction — "an on-screen representation of something" — is consistent with the dictionary definition for "icon":  "A small, pictorial, on-screen representation of an object (file, program, disk, etc.) used in graphical interfaces."  Wilson Decl. Ex. H, Computer Desktop Encyclopedia, at 418; *see also id.* Ex. O, Que's Computer & Internet Dictionary, at 252 (defining "icon" as "an on-screen symbol that represents a *program*, data *file*, or some other computer entity or function").  Although Motorola has proposed language from a different dictionary, the dictionary definition proposed by Microsoft best encompasses the intrinsic evidence.  *See, e.g.*, *Free Motion Fitness, Inc. v. Cybex Intl Inc.*, 423 F.3d 1343, 1349 (Fed. Cir. 2005) ("[I]n those circumstances where reference to dictionaries is appropriate, the task is to scrutinize the intrinsic evidence in order to determine the most appropriate definition.").  Indeed, to the extent Motorola's proposed construction is intended to preclude text from being an "icon," that construction would be inconsistent with the very dictionary cited by Motorola, which gives an example of an "icon" that includes the text "Recycle Bin":



Wilson Decl. Ex. P, Microsoft Computer Dictionary, at 243.

MICROSOFT CORPORATION'S OPENING
CLAIM CONSTRUCTION BRIEF ON ITS '780
AND '582 COUNTERCLAIM PATENTS - 13
Case No. C10-1823-JLR

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

b.   **"interface" (claims 3, 11, 27)**

| Microsoft's Claim Construction | Motorola's Claim Construction |
|---|---|
| No construction needed.<br>Alternatively:  "the point at which a connection is made between two elements so that they can work with each other or exchange information" | "a defined set of methods and data that allow for communication **with a COM object**" |

The primary dispute is whether an "interface" is limited to communications with a "COM object."[5]  It is not.  Once that dispute is resolved, no further construction is necessary for the term "interface."  *See supra* Part II.B, p. 1 (explaining why not every term needs to be construed).[6]

*Claims*:  None of the claims suggest that an "interface" is limited to communications with a "COM object"  Dependent claim 17 makes reference to a "COM object," but not in the context of an "interface."  Wilson Decl. Ex. L, '582 patent, Claim 17.  None of the other claims refers to a "COM object."

*Specification*:  The specification states that "[a]n input method . . . *may* be a COM object," *id.* Ex. L, '582 patent Abstract (emphasis added), but it does not *require* a "COM object."  To the contrary, the specification clearly states that the components being connected do not have to be "COM objects" and "can comprise virtually any components capable of communicating with one other through some mechanism."  *Id*. at 7:9–:11.  Motorola's proposed

---

[5] A COM object is a type of an interface.  The Microsoft Computer Dictionary defines a COM object as "A specification developed by Microsoft for building software components that can be assembled into programs or add functionality to existing programs running on Microsoft Windows platforms."  Wilson Decl. Ex. P, at 100.  The '582 patent states that "A COM object comprises a data structure having encapsulated methods and data that are accessible through specifically defined interfaces."  Wilson Decl. Ex. L, at 5:17–:19.

[6] If the Court further construes "interface," notwithstanding Microsoft's argument against providing any further construction, Microsoft has proposed (in the alternative) a construction that is consistent with the dictionary definition:  "The point at which a connection is made between two elements so that they can work with each other or exchange information."  Wilson Decl. Ex. Q, Microsoft Computer Dictionary (4th ed. 1999), at 241.

MICROSOFT CORPORATION'S OPENING
CLAIM CONSTRUCTION BRIEF ON ITS '780
AND '582 COUNTERCLAIM PATENTS - 14
Case No. C10-1823-JLR

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

construction improperly attempts to limit the claims to a preferred embodiment.  *See Phillips*,

415 F.3d at 1323 ("although the specification often describes very specific embodiments of the

invention, we have repeatedly warned against confining the claims to those embodiments").

### c.   "invoking [a/the] selected input method" (claims 15,17)

| Microsoft's Claim Construction | Motorola's Claim Construction |
|---|---|
| No construction needed.<br>Alternatively:  "loading and calling the selected input method" | "loading and calling the selected input method ***by a management component***" |

The primary dispute is whether the "invoking" step must be performed by a

"management component."  It does not.  Once that dispute is resolved, no further construction is

necessary for the phrase "invoking [a/the] selected input method".  *See supra* Part II.B, p. 1

(explaining why not every term needs to be construed).[7]

*Claims*:  Nothing in any claim suggests that the "invoking" step must be performed by a

"management component."  Some, but not all, claims refer to a "manager component," *see, e.g.*,

Wilson Decl. Ex. L, '582 patent, Claims 19, 23, 26, 27, 30, 31, which if anything suggests that

the other claims (including claims 15 and 17, which include the "invoking" phrase at issue) do

***not*** necessarily require a "management component."

*Specification*:  In the "Detailed Description of the ***Preferred Embodiment***," the

specification states, "the SIP ***manager*** 58 loads and calls the selected input method 64."  *Id.* Ex.

L, '582 patent at 5:13–:14 (emphasis added).  However, this is merely a description of the

preferred embodiment, and thus it would be improper to limit every claim to this embodiment as

suggested by Motorola.  *See Phillips*, 415 F.3d at 1323 ("although the specification often

---

[7] If the Court further construes "invoking [a/the] selected input method," notwithstanding Microsoft's argument against providing any further construction, Motorola and Microsoft (in the alternative) have both proposed "loading and calling the selected input method," which is consistent with the specification.  *See* Wilson Decl. Ex. L, '582 patent at 5:11–:14.

MICROSOFT CORPORATION'S OPENING
CLAIM CONSTRUCTION BRIEF ON ITS '780
AND '582 COUNTERCLAIM PATENTS - 15
Case No. C10-1823-JLR

describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments").

Furthermore, Motorola's proposed construction should be rejected because it injects ambiguities into an otherwise clear term.  Motorola's proposed construction contains the new term, "management component," which is not defined anywhere in the patent or in Motorola's proposed construction.

### d.   "distinct from . . . computer/application/ programs" (claims 1, 11, 15, 19)

| Microsoft's Claim Construction | Motorola's Claim Construction |
|---|---|
| No construction needed. Alternatively:  "containing software code that is separate from the software code of the computer programs" | Independent and separate from the computer programs and applications. Computer programs and applications are self-contained executable software |

The primary dispute is whether "distinct" precludes the code for the "input method" from merging with (or plugging into) the code for the application at runtime.  It does not.  An analogy may be helpful:  A typical desktop computer comes with a separate keyboard.  When a user wants to use that keyboard, the user "plugs in" the keyboard into the computer.  Even though the keyboard is plugged into the computer — and thus the two have merged together when in use — they are still "distinct" pieces of hardware.  Similarly, two pieces of software code can merge together at runtime yet remain two "distinct" pieces of code (e.g., one for the input method, and the other for the application).  Motorola's proposed construction would improperly preclude the "input method" (e.g., the keyboard) from "plugging into" the application.  Once that dispute is resolved, no further construction is necessary for the phrase "distinct from . . . computer/application/programs."  *See supra* Part II.B, p. 1 (explaining why not every term needs to be construed).

MICROSOFT CORPORATION'S OPENING
CLAIM CONSTRUCTION BRIEF ON ITS '780
AND '582 COUNTERCLAIM PATENTS - 16
Case No. C10-1823-JLR

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

**Claims**:  In every claim with the phrase in question, the phrase refers to a "software component" as being "distinct" from the "computer/application/program."  *See* Wilson Decl. Ex. L, '582 patent, Claims 1, 11, 15, and 19.  The context of a claim term can be "highly instructive." *Phillips*, 415 F.3d at 1314.  A component is a "discrete part of a larger system or structure," *id.* Ex. P, Microsoft Computer Dictionary, at 106, which is consistent with Microsoft's proposed construction which would allow the component to "plug in" to the "computer/application/program."

**Specification**:  The patent contemplates that programs/applications can share data with each other as well as input methods, and thus they would ***not*** be "self-contained . . . entit[ies]" as proposed by Motorola.  *See, e.g.*, *id.* Ex. L, '582 patent at 7:58–8:26 (describing how an application and an input method could interact and share information with each other); *id.* at 12:8–:34 (describing an application program controlling and requesting information from an input method).

**Extrinsic evidence**:  Motorola relies upon the Microsoft Computer Dictionary definition for "computer programs" to argue that they must be "self-contained" — but that is not what the dictionary says:

> computer program: A set of instructions in some computer
> language intended to be executed on a computer so as to perform
> some task.  The term ***usually*** implies a ***self-contained entity***, as
> opposed to a routine or a library.

Wilson Decl. Ex. P, Microsoft Computer Dictionary, at 111 (emphasis added).  Motorola's proposed construction improperly converts "usually" into "always" — the dictionary says a "computer program" ***may*** be self-contained, but it is not ***always*** self contained.  The more relevant definition from that same dictionary is "component software":

> Modular software routines, or components, that ***can be combined***
> with other components to form an overall program.  A programmer
> can use and reuse an existing component and not have to
> understand its inner workings, just how to have another program or
> component call it and pass data to and from it.

MICROSOFT CORPORATION'S OPENING
CLAIM CONSTRUCTION BRIEF ON ITS '780
AND '582 COUNTERCLAIM PATENTS - 17
Case No. C10-1823-JLR

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

*Id.* Ex. P, Microsoft Computer Dictionary,  at 106 (emphasis added).  This definition is consistent with Microsoft's proposed construction as well as the use of the term "component" in every claim with the phrase in question.  In short, a "component" may be "distinct" even if it is "combined" with other software at runtime.

### e. <u>"window" (claims 11, 14, 15, 21-23, 29-31)</u>

| Microsoft's Claim Construction | Motorola's Claim Construction |
|---|---|
| No construction needed. Alternatively:  "a portion of the screen that can contain its own document or message" | "a portion of the screen that can contain its own document or message and ***that is hidable, dockable, movable and resizable***" |

The primary dispute is whether a "window" ***must*** be "hidable, dockable, movable and resizable."  It does not.  Once that dispute is resolved, no further construction is necessary for "window."  *See supra* Part II.B, p. 1 (explaining why not every term needs to be construed).[8]

***Claims***:  Claims 23 and 30 refer to "hid[ing]" a window, and claim 31 refers to "dock[ing]" a window, but nothing in the claims suggest that ***every*** "window" ***must*** be "hidable, dockable, movable ***and*** resizable," as proposed by Motorola.

***Specification***:  In the "Detailed Description of the ***Preferred Embodiment***," the specification states, "The state includes whether the status of the SIP window 50 is visible or hidden, whether the SIP window 50 is docked or in a floating condition, and the size and position of the SIP window 50."  Wilson Decl. Ex. L, '582 patent at 7:62–:65.  However, this is merely a description of the preferred embodiment, and thus it would be improper to limit every claim to this embodiment as suggested by Motorola.  *See Phillips*, 415 F.3d at 1323 ("although the

---

[8] If the Court further construes "window," notwithstanding Microsoft's argument against providing any further construction, Motorola and Microsoft (in the alternative) have both proposed "a portion of the screen that can contain its own document or message," which comes from the Microsoft Computer Dictionary.  *See* Wilson Decl. Ex. P, at 508.

MICROSOFT CORPORATION'S OPENING
CLAIM CONSTRUCTION BRIEF ON ITS '780
AND '582 COUNTERCLAIM PATENTS - 18
Case No. C10-1823-JLR

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1   specification often describes very specific embodiments of the invention, we have repeatedly

2   warned against confining the claims to those embodiments").

3        ***Extrinsic evidence***:  Both Microsoft and Motorola have cited to the same definition from

4   the Microsoft Computer Dictionary for "window," which does ***not*** impose the limitation that a

5   window ***must*** be "hidable, dockable, movable ***and*** resizable," as proposed by Motorola.  The

6   dictionary definition simply provides that a "window" is "a portion of the screen that can contain

7   its own document or message."  Wilson Decl. Ex. P, Microsoft Computer Dictionary, at 508.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MICROSOFT CORPORATION'S OPENING
CLAIM CONSTRUCTION BRIEF ON ITS '780
AND '582 COUNTERCLAIM PATENTS - 19
Case No. C10-1823-JLR

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

f.      **"as if . . . received [via/from]" as used in:**

**". . . as if the information was received via user input received from a hardware input device" (claim 1)**

**". . . as if the input was received via a hardware keyboard" (claim 4)**

**". . . as if the information was received via user input at a hardware input device" (claim 11)**

**". . .  as if the user data was received from a hardware input device" (claim 15)**

**". . . as if the input data was received via user input received from a hardware input device" (claim 19)**

| Microsoft's Claim Construction | Motorola's Claim Construction |
|---|---|
| No construction needed.<br><br>Alternatively:<br>"such that the [program / application] *does not need to recognize whether* the information was received from a hardware input device or not"<br>"such that the [program / application] *does not need to recognize whether* the input was received from a hardware keyboard or not"<br>"such that the [program / application] *does not need to recognize whether* the information was received from a hardware input device or not" (claim 11)<br>"such that the [program / application] *does not need to recognize whether* the data was received from a hardware input device or not" | "as if the received information *originated* from a hardware input device rather than the interactive input panel" |

The primary dispute is whether the program/application *must* believe that the information

*originated* from a hardware input device.  It does not.  The claims *permit* the

program/application to believe that the information originated from a hardware input device,

rather than a soft input panel, but that is not required.  Once that dispute is resolved, no further

MICROSOFT CORPORATION'S OPENING
CLAIM CONSTRUCTION BRIEF ON ITS '780
AND '582 COUNTERCLAIM PATENTS - 20
Case No. C10-1823-JLR

1   construction is necessary for these phrases.  *See supra* Part II.B, p. 1 (explaining why not every

2   term needs to be construed).

3       ***Specification***:  As described previously, one of the focuses of the invention disclosed in

4   the '582 patent is to provide a mechanism by which applications can accept user input regardless

5   of whether the user input is derived from a physical hardware input device, voice input, or from a

6   soft input panel.  Motorola's proposed requires that the program/application ***must*** believe that the

7   information originated from a hardware input device.  However, this contradicts the '582 patent

8   specification, which clearly describes that "one aspect of the present invention is that

9   ***applications do <u>not</u> ordinarily recognize whether data received thereby originated at a***

10  ***hardware input device such as the keyboard or via user activity***. . . . This enables applications

11  to operate with virtually any appropriate input method, ***irrespective of whether that application***

12  ***is SIP-aware.***"  Wilson Decl. Ex. L, '582 patent at 7:48–:57 (emphasis added).  The '582 patent

13  further describes this aspect, explaining that user input is "placed in the message queue of the

14  active application's window ***without the application being provided with information as to the***

15  ***source***."  *Id.* at 4:65–:67 (emphasis added).

16      Moreover, the patent repeatedly teaches that hardware input devices are optional.  *See id.*

17  at 4:21–:23 ("However, as can be appreciated, a given computer system 20 may optionally and

18  additionally include a physical keyboard"); *id.* at 4:61–:62 ("Indeed, if an optional keyboard 36

19  is present . . . .").  Given these clear and definite statements, it would be nonsensical to require an

20  application, as Motorola urges in its proposed construction, to recognize that "the received

21  information originated from a hardware input device rather than the interactive input panel."

22  Therefore, Motorola's proposed construction should be rejected.

23  ## IV.   <u>CONCLUSION</u>

24      For the foregoing reasons, Microsoft respectfully requests that its constructions be

25  adopted

26

MICROSOFT CORPORATION'S OPENING
CLAIM CONSTRUCTION BRIEF ON ITS '780
AND '582 COUNTERCLAIM PATENTS - 21
Case No. C10-1823-JLR

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

DATED this 30th day of March, 2012.

DANIELSON HARRIGAN LEYH & TOLLEFSON LLP

By:  /s/ Arthur W. Harrigan, Jr.

Arthur W. Harrigan, Jr., WSBA #1751
Christopher Wion, WSBA #33207
Shane P. Cramer, WSBA #35099

By:  /s/ T. Andrew Culbert

T. Andrew Culbert, WSBA #35925
David E. Killough, WSBA #40185
MICROSOFT CORPORATION
One Microsoft Way
Redmond, Washington  98052
Telephone:    (425) 882-8080
Facsimile:    (425) 869-1327

David T. Pritikin (*pro hac vice*)
Richard A. Cederoth (*pro hac vice*)
Douglas I. Lewis (*pro hac vice*)
John W. McBride (*pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois  60603
Telephone:    (312) 853-7000
Facsimile:    (312) 853-7036

Brian R. Nester (*pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC  20005
Telephone:    (202) 736-8000
Facsimile:    (202) 736-8711

*Counsel for Microsoft Corporation*

MICROSOFT CORPORATION'S OPENING
CLAIM CONSTRUCTION BRIEF ON ITS '780
AND '582 COUNTERCLAIM PATENTS - 22
Case No. C10-1823-JLR

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

**Attorneys for Defendants Motorola Solutions, Motorola Mobility and General Instrument Corporation**

Ralph Palumbo
Philip S. McCune
Lynn M. Engle
Summit Law Group

Steven Pepe
Jesse J. Jenner
Norman Beamer
Paul M. Schoenhard
Ropes & Gray

/s Linda Bledsoe
LINDA BLEDSOE

MICROSOFT CORPORATION'S OPENING
CLAIM CONSTRUCTION BRIEF ON ITS '780
AND '582 COUNTERCLAIM PATENTS – 23
Case No. C10-1823-JLR

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717