# Exhibit F

Application Serial No. ...................................................................08/851,877
Filing Date ...................................................................................5/6/97
Inventorship...............................................................................Shell et al.
Applicant ..................................................................... Microsoft Corporation
Group Art Unit ...........................................................................2171
Examiner .....................................................................................Jung, D.
Attorney's Docket No. ...............................................................MS1-161US
Title:  Loading Status in a Hypermedia Browser Having a Limited Available
Display Area

## PRELIMINARY AMENDMENT

To:      Commissioner of Patents and Trademarks,
         Washington, D.C. 20231

From:    Kasey C. Christie (Tel. 509-324-9256 x232; Fax 509-323-8979)
         Customer No. 22801

### In the Claims

#### Claims pending

- At time of the Action:  Claims 1-30.

- After this Response:  Claims 1-42.

Canceled claims:  None.

Amended claims:  Claim 1, 6, 11, 26, 28 and 30.

New claims:  Claims 31-42.

**All Pending Claims:**

**(In *Clear* Form, in accordance with 37 CFR §1.121):**

Please amend claims 1, 6, 11, 26, 28 and 30 and add claims 31-42 as indicated below:

1.     (Amended) A hypermedia browser embodied on a computer-readable medium for execution on an information processing device having a limited display area, wherein the hypermedia browser has a content viewing area for viewing content and is configured to display a temporary graphic element over the content viewing area during times when the browser is loading content, wherein the temporary graphic element is positioned over the content viewing area to obstruct only part of the content in the content viewing area, wherein the temporary graphic element is not content and wherein content comprises data for presentation which is from a source external to the browser.

2.     A hypermedia browser as recited in claim 1, wherein the temporary graphic element is animated.

3.     A hypermedia browser as recited in claim 1, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area.

LEE & HAYES, PLLC                                   2             G:\3510\910 G:\Docs FDoc\4431-D161US\4431-141US.M26.doc

4.     A hypermedia browser as recited in claim 1, wherein the hypermedia browser presents the temporary graphic element within a temporary window in a windowing operating environment.

5.     A hypermedia browser as recited in claim 1, wherein:

the temporary graphic element is animated; and

the hypermedia browser presents the temporary graphic element within a temporary window in a windowing operating environment.

6.     (Amended)   An information processing device comprising:

a processor;

a display;

a hypermedia browser executing on the processor to load and display content in a content viewing area on the display;

wherein the hypermedia browser displays a temporary graphic element over the content viewing area during times when the browser is loading visible content;

wherein the temporary graphic element is positioned only over a portion of the content viewing area and obstructs only part of the visible content in the content viewing area; and

wherein the temporary graphic element indicates to a user that the browser is loading content and content comprises data for presentation which is from a source external to the browser.

7.     An information processing device as recited in claim 6, wherein the temporary graphic element is animated.

3

8.      An information processing device as recited in claim 6, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area.

9.      An information processing device as recited in claim 6, wherein the hypermedia browser displays the temporary graphic element within a temporary window in a windowing operating environment.

10.     An information processing device as recited in claim 6, wherein:

the temporary graphic element is animated; and

the hypermedia browser displays the temporary graphic element within a temporary window in a windowing operating environment.

11.   (Amended) A method of browsing a hyperlink resource, comprising the following steps:

loading content from the hyperlink resource in response to user selection of hyperlinks contained in said content;

displaying the content in a content viewing area;

displaying a temporary graphic element over the content viewing area during the loading step, wherein the temporary graphic element obstructs only part of the content in the content viewing area;

wherein the loading, the content displaying, and the temporary graphic element displaying steps occur at least partially concurrently; and

wherein content comprises data for presentation which is from a source external to the browser.

12.   A method as recited in claim 11, further comprising an additional step of animating the temporary graphic element.

13.   A method as recited in claim 11, wherein the displaying step includes displaying the temporary graphic element in a corner of the content viewing area.

14.   A method as recited in claim 11, wherein the displaying step includes displaying the temporary graphic element within a temporary window in a windowing operating environment.



LEE & HAYES, PLLC                                    5          03150/0139 G:\Client Files\0431\030431-1601US.HCM.doc

15. A method as recited in claim 11, further comprising an additional step of animating the temporary graphic element, wherein the displaying step includes displaying the temporary graphic element within a temporary window in a windowing operating environment.

16. A computer-readable storage medium containing instructions that are executable for performing the steps recited in claim 11.

17. A hypermedia browser as recited in claim 1, wherein the browser is configured to display the temporary graphic element over the content viewing area only during times when the browser is loading visible content.

18. A hypermedia browser as recited in claim 1, wherein the temporary graphic element indicates to a user that the browser is loading content.

19. A hypermedia browser as recited in claim 1, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete.

20. An information processing device as recited in claim 8, wherein the temporary graphic element is not content.

21. An information processing device as recited in claim 8, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete.

22.   A method as recited in claim 21, wherein the temporary graphic element is not content.

23.   A method as recited in claim 21, wherein the temporary graphic element indicates to a user that the loading step is being performed.

24.   A method as recited in claim 21, further comprising removing the temporary graphic element once the loading step is complete to indicate to a user that the loading step is complete.

25.   A hypermedia browser as recited in claim 1, wherein the temporary graphic element conveys status information of the browser.

26.   (Twice Amended)   A method of indicating a content "load status" of a hypermedia browser having a content viewing area for viewing content, the method comprising:

displaying loaded content within the content viewing area of a screen of a hypermedia browser, the screen being without a "load status" graphic element, wherein a "load status" graphic element indicates a current content load status of the hypermedia browser;

receiving an instruction to load new content into the content viewing area;

loading such new content into the content viewing area; and

while loading, displaying a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area; and

wherein content comprises data for presentation which is from a source external to the browser.

27.   A method as recited in claim 26 further comprising, upon completion of the loading, removing the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed.





8

28.   (Amended) A computer-readable medium having computer-executable instructions that, when executed by a computer, perform a method of indicating a content "load status" of a hypermedia browser having a content viewing area for viewing content, the method comprising:

displaying loaded content within the content viewing area of a screen of a hypermedia browser, the screen is without a "load status" graphic element, wherein a "load status" graphic element indicates a current content load status of the hypermedia browser;

receiving an instruction to load new content into the content viewing area;

loading such new content into the content viewing area; and

while loading, displaying a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area; and

wherein content comprises data for presentation which is from a source external to the browser.

29.   A computer-readable medium as recited in claim 28 further having additional computer-executable instructions that perform a method comprising, upon completion of the loading, removing the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed.

30.    (Amended)   An information processing device comprising:

a processor;

a display;

a hypermedia browser executing on the processor to load and display content in a content viewing area on the display;

wherein the hypermedia browser is configured to operate in a content-loading mode and a content-loaded mode;

in the content-loaded mode, the hypermedia browser displays loaded content in the content viewing area and no "load status" graphic element is displayed, wherein absence of such "load status" graphic element indicates that the browser is in the content-loaded mode;

in the content-loading mode, the hypermedia browser loads content, displays such content in the content viewing area as it loads, and displays a "load status" graphic element over the content view area obstructing part of the content displayed in the content viewing area, wherein presence of such "load status" graphic element indicates that the browser is in the content-loading mode; and

wherein content comprises data for presentation which is from a source external to the browser.

31.    A hypermedia browser of claim 1, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.

 10

32.    A hypermedia browser of claim 1, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web.

33.    A hypermedia browser of claim 6, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.

34.    A hypermedia browser of claim 6, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web.

35.    A hypermedia browser of claim 11, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.

36.    A hypermedia browser of claim 11, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web.

LEE & HAYES, PLLC                    11              0311010839 C: \Cases Files\0431-0316\US\0431-1611US 1034.doc

37. A hypermedia browser of claim 26, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.

38. A hypermedia browser of claim 26, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web.

39. A hypermedia browser of claim 28, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.

40. A hypermedia browser of claim 28, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web.

41. A hypermedia browser of claim 30, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.

42. A hypermedia browser of claim 30, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web.

13

## REMARKS

Applicant respectfully requests entry of the following remarks and amendments. Also, Applicant respectfully requests reconsideration of the subject application and allowance of all pending claims.

References herein to the Office Action (or simply the Action) are to the last Office Action, dated February 27, 2001, of U.S. Patent Application Serial No.08/851,877, filed 5/6/97.

Applicant respectfully requests reconsideration and allowance of all of the claims of the application.   After this Response, claims 1-42 are still pending.  No claims are cancelled.  New claims 31-42 are added.  Claims 1, 6, 11, 26, 28 and 30 are amended.

The Applicant expressly grants permission to the Office to interpret all pending claims of this application.

### Formal Request for an Interview

Applicant expects the comments herein to be persuasive.  If not, however, Applicant formally requests a telephonic interview in order to discuss whether any further progress can be made towards allowance of this case. Thus, the undersigned would appreciate a telephone call before issuing a subsequent Action.

Please contact the undersigned to schedule a telephonic interview that is convenient to the Examiner. Applicant hopes that an oral discussion can help us achieve our common goal, which is speedy completion of prosecution of this application.

LEE & HAYES, PLLC                                    14                     031I0I0979 G \Cheen P\as\M21-D16IUBM\21-161\'S\M26 Jac

**Prior Art Status of References**

Applicant does not explicitly or implicitly admit that any reference is prior art. Nothing in this communication should be considered an acknowledgement, acceptance, or admission that any reference is considered prior art.

**"Content"**

Applicant states that the term "content" found in the claims comprises "data for presentation which is from a source external to the browser." Applicant states that, at the time of filing of this application, this is the plain and ordinary meaning of "content" to those of ordinary skill in the art.

Furthermore, examples of content may comprise visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language. Further still, examples of content may comprise HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web.

**Telephone Interview**

Applicant thanks the Examiner for talking with an attorney for the Applicant, Kasey Christie, via the telephone on several occasions since the issuance of the last Action. This response and amendment is in response to those discussions.

At the Examiner's request, Applicant discusses the meaning of the term "content" as it is used in the claims. With the amendments and new claims provided herein, the Applicant has defined the nature of "content."

With respect to issues unrelated to the meaning of "content" (which were not discussed with the Examiner via telephone conferences at the request of the Examiner), Applicant maintains its positions stated in previous communications. In particular, Applicant maintains that the Office has not established a *prima facie* of obviousness. Applicant's prior remarks are reproduced here for completeness.

## Claim Rejections – 35 USC § 103 – Obviousness

The Office rejects all claims under §103(a) as being unpatentable over U.S. Patent No. 5,760,771 to Blonder et al. ("Blonder"), U.S. Patent No. 5,973,692 to Knowlton et al. ("Knowlton"), U.S. Patent No. 5,983,005 to Monteiro et al. ("Monteiro"), and U.S. Patent No. 6,101,510 to Stone et al. ("Stone").  Applicant respectfully traverses the rejections.

### *Prima facie* case is not established

Applicant submits that the Office has failed to establish its *prima facie* case that claims 1-30 are unpatentable because they are obvious over a combination of cited references.  Applicant submits that no combination of the cited references produces combinations having all of the elements and features of claims 1-30.

Although some claims are worded differently from others (and may have different claimed elements and features), claims 1-30 recite a common core concept that does not appear in any of the cited references.  The core concept is a non-content graphic element appearing over a content area that is indicative of present condition where content is being loaded into the content area.

Again, Applicant qualifies the statement of the core concept by noting that each claim is to read and interpreted on its own. The claims of this application may approach this core concept from different angles and color it with different hues.

For instance, claim 1 recites its view of the core concept this way: "...display a temporary graphic element over the content viewing area during times when the browser is loading content, wherein the temporary graphic element is positioned over the content viewing area to obstruct only part of the content in the content viewing area, wherein the temporary graphic element is not content." In this case, the display of the non-content graphic element coincides with the loading of content. Claim 18, which is dependent upon claim 1, further elaborates that the display of the non-content graphic element is indicative of the browser "...loading content."

In another instance, claim 26 recites its view of the core concept this way: "...wherein a 'load status' graphic element indicates a current content load status of the hypermedia browser..." and "...loading...new content into the content viewing area; and while loading, displaying a 'load status' graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area..."

In previous Actions, the Office compares Blonder's content elements to non-content elements of the claims and Knowlton non-content elements to content elements of the claims. Therefore, Applicant submits that an agreed understanding of the term "content" will further our mutual goal, which is speedy completion of prosecution of this application. Applicant submits that those who are skilled in the art of hypermedia browsers and related fields intuitively understand the concept of "content."

Before the submission of Applicant's Preliminary Amendment dated July 17, 2000, the Examiner and an attorney for the Applicant, Kasey Christie, discussed the meaning of "content" over the telephone. As a result of that discussion, the Office found and cited Monteiro—in particular, Fig. 19 of Monteiro. This figure illustrates traditional "pull-down" menus in a windowing environment, which may be displayed over the content of a hypermedia browser. Traditional "pull-down" menus are not content.

Applicant respectfully submits that the Office's reference to Fig. 19 of Monteiro in the Action seems to indicate an agreement regarding the meaning of "content" within the context of Applicant's application. However, instead of withdrawing Blonder and Knowlton, the Office maintains the same rejections based upon Blonder and Knowlton, but the Office now combines Stone and Monteiro with them.

Applicant submits that the cited references do not disclose what the Office says that they do. Applicant submits that the Office equates content in cited references to claimed non-content. In addition, Applicant submits that the Office equates non-content in cited references to claimed content.

Furthermore, the Office supports rejections of claims 17-24 based upon their similarity of scope with rejected claims 1-16. However, Applicant submits that the wording and approach of claims 17-24 are different from claims 1-16. As such, Applicant submits that claims 17-24 should be examined independently of claims 1-16. Applicant respectfully submits that, with regard to claims 17-24, the Office has failed to establish its *prima facie* case because it has not examined these claims.

**Claims 1-16**

The Office equates claims sets 1-5, 6-10, and 11-15 to each other. Applicant respectfully submits that they are not equivalent. The independent claims (1, 6, and 11) of each set are different from each other.

**Claim 1**

The Office states that claim 1 is obvious because all of the claimed features and elements of claim are found in a combination of Blonder, Knowlton, Monteiro, and Stone.

Applicant submits that Office has not made a *prima facie* case of obviousness for claim 1. The cited references do not include elements that the Office indicates that they do. Furthermore, the combination of the cited references does not include all of the claimed elements of claim 1.

The Office states that Blonder shows many of the features of claim 1. Applicant disagrees.

**Blonder's Padding is Content.** Claim 1 recites that the "...temporary graphic element is not content...." The Office equates Blonder's "padding" with

Applicant's "...temporary graphic element...." However, Applicant submits that the "padding" is not equivalent because Blonder's *padding is content*. At col. 3, lines 34-36, Blonder states that the padding "is predetermined content." Blonder states that it's padding is content.

Knowlton. To support its proposition that Knowlton teaches the "limited display area" and the "obstruct only part of the content" features, the Office cites the Abstract of Knowlton; col. 26, lines 20-64, especially lines 60-64; and col. 42, lines 30-34. However, Applicant submits that Knowlton does not teach either of these features.

Limited Display Area. Applicant cannot find any language that teaches a "limited display area" in the cited portions or, in fact, in any other portion of Knowlton. Applicant did find several references within Knowlton that generally refer to packing icons on a display. However, none of those references is to a "limited display area." Instead, they appear to refer to any display. Specifically, see col. 41, lines 34-46. Applicant does not find any reference to a "limited display area" in Knowlton.

Indeed, Applicant found where Knowlton specifically refers to a "typical display." In the "Background" section of Knowlton, it discusses the problem that Knowlton is attempting to solve and its related technology. Knowlton expressly refers to the problem of "displaying such graphical representations...on a *typical display*" (col. 2, lines 18-23) (emphasis added).

Obstruct only part of the content. The Office focuses its attention on a block labeled 210 and shown in Fig. 2A of Knowlton. This block is called the "original image" within Knowlton.

It appears that the Office equates (or analogizes) Knowlton's "original image" 210 to the claimed "content viewing area" of claim 1. Applicant submits that the original image 210 of Knowlton is NOT equivalent (or analogous) to a "content viewing area" as claimed in claim 1. Application provides two main reasons.

First, claim 1 recites a "...*content* viewing area..." and not just a "viewing area." The original image in Knowlton does not display content. It "displays" nothing. It is an image. It is not a display, a window, a screen, or anything else capable of displaying. Since it cannot display anything, it cannot be an area for viewing content. The original image in Knowlton is something that is displayed rather then something that displays.

Second, Applicant respectfully submits that the Office has misinterpreted Knowlton (in particular, Fig. 2A). The graphic icon 144 of Knowlton is incapable of "obstructing only part of the content in the content viewing area." It does not do so for several reasons, for example:

- The original image 210 of Knowlton is not a "content viewing area"; therefore, if the graphic icon was covering the original image 210, it is NOT "in the content viewing area" as recited by claim 1;

- The Office appears to imply the graphic icon 144 of Fig. 2A of Knowlton is capable of being displayed over the original image. This is not true. Instead, the graphic icon represents a portion that is cut away from the original image. Notice the arrow points from the box in the original image to the box labeled graphic icon 144. The icon is taken from the original image. It is NOT displayed over the image. Nowhere in Knowlton does it say that the graphic icon is

displayed over the original image.   Instead, Knowlton says, for example, "Graphic 44 Image 220 represents the region of Original Image 210 that has been selected...for construction of the Graphic Icon 144..." (col. 19, lines 39-41).   Therefore, graphic icon 144 never "...obstruct[s any part of] the content..." as recited by claim 1.

Monteiro. Office refers to the "pull-down" menus of Monteiro to support its position that claim 1 is obvious.   However, these pull-down menus are not "...configured to display a temporary graphic element over the content viewing area during times when the browser is loading content..." as recited by claim 1. Since they are pull-down menus, they will be displayed when directed to do so by a user.

Lack of Motivation

In addition, the Office failed to provide any evidence of a suggestion, teaching, or motivation to combine Blonder, Knowlton, Monteiro, and Stone. The Office has not shown any such evidence within the cited references.   The Office has not shown any such evidence outside of the cited references that one of ordinary skill in the art (OOSA) would be motivated to combine the references in the manner specified by the Office.

In the Action, the Office supports its obviousness determination for the combination by stating multiple times that OOSA would be motivated for the reasons "noted in the previous paragraphs."   Specifically, this statement is made three times.

The Office states that OOSA would be motivated for the reasons "noted in the previous paragraphs" the very first time in the Action that the Office combines

elements found in the cited references. Specifically, that is when the Office combines pieces from Knowlton and Blonder at page 4, first full paragraph of the Action. However, no previous paragraphs exist to contain the referenced motivation.

Again, the same statement is made when the Office combines the combination of Knowlton and Blonder with a piece Stone at page 4, paragraph 4 of the Action. Yet again, the statement is made when the Office combines the combination of Knowlton, Blonder, and Stone with a piece of Monteiro at page 4, paragraph 2 in the Action.

However, Applicant cannot locate the referenced motivation anywhere in the Action. The Office never explains why OOSA would be motivated to combine the pieces found in each reference to form a combination as recited in claim 1. Applicant respectfully submits that no such motivation exists.

Claim 6

This claim is directed to an information processing device. In addition to that difference, this claim differs from claim 1 in other ways. For example, claim 6 recites, "visible content" and "the graphic element indicates to a user that the browser is loading content." These features are not found in any cited reference.

### Claim 11

This claim is directed to a method. In addition to that difference, this claim differs from claim 1 in other ways. For example, claim 11 recites, "displaying content in a content viewing area." This means that the content is visible. Like claim 6 above, this feature is not found in any cited reference.

### Claims 2-6, 7-10, and 12-16

Dependent claims 2-6, 7-10, and 12-16 are allowable because of their dependence from allowable base claims (1, 6, and 11), and for additionally recited features that are not shown by the cited references in the context defined by the base claims. These claims are allowable whether their base claims are allowable or not.

### Claims 2, 5, 7, 10, 12, and 15

Claims 2, 5, 7, 10, 12, and 15 include a feature where the temporary graphic element is animated. The Office states that this feature is obvious because Blonder suggests such animation. However, Applicant submits that Blonder does not suggest this. Rather, Blonder discloses use of animated *content*. The "...graphic element..." of these claims is "...not content..."; therefore, Blonder does not suggest the use of an animated graphic element that is not content.

If the Office maintains its rejection of these claims based upon the animated content of Blonder, Applicant requests that the Office explain how the content of Blonder is equivalent to the non-content of the graphic element of these claims.

## Claims 3, 8, and 13

Claims 3, 8, and 13 recite that the temporary graphic element is displayed "...in a corner of the content viewing area...." In addressing these claims, the Office mentions that using a corner "is a well known feature of Windows windowing and graphical icons, such as mentioned in Knowlton et al. See column 26, lines 60-64." Applicant cannot find any suggestion in the Knowlton that establish the obviousness of using a corner of a "...content viewing area..." to display a "...temporary graphics element..." when "...loading content...."

Regardless whether it is well known or not, Applicant submits that it is not generally known to place a graphic element in the corner of a "...*content viewing area*..." instead of the corner of the *window*. This feature is illustrated at element 64 of Fig. 3 of the application. Note that element 64 is not part of the window itself. Rather, it is over the content viewing area. There is nothing in the cited references to suggest that a corner of a content viewing area should be used for a graphics element such as the one claimed.

If the Office maintains its rejection of these claims, Applicant requests that the Office explain how use of a corner of a window is equivalent to use of the corner of a "...content viewing area..." as recited in these claims.

## Claims 4, 5, 9, 10, 14, and 15

Claims 4, 5, 9, 10, 14, and 15 recite that the temporary graphic element is presented "...within a temporary window in a windowing operating environment...." Although the Office may have established the achievability of this feature, it has not established any *suggestion or motivation for actually implementing it*. There is no indication in the cited references that anyone has ever

considered using a "window" to display a graphics element such as this when content is loading.

The Office specifically refers to icon 144 of Figure 2A of Knowlton. Nowhere in Knowlton does it suggest that icon 144 be presented "...within a temporary window...." See the above discussion of Knowlton with respect to claim 1.

Claim 16

The Office states that computer readable storage medium is well known in the art of computers. This may or may not be true. Regardless, claim 16 is allowable because it is dependent from an allowable base claim, claim 11.

Claims 17-30

On page 6 of the Action, the Offices states the following (and only the following) to support its obviousness rejection of claims 17-30:

"In regard to claims 17-24, these claims are of similar scope to claims 1-16. For the reasons stated in the rejections of claims 1-16, claims 17-24 are not patentable.

In regard to claims 25-30, such "load status" [handling] is taught by Stone (column 7, lines 6-14, i.e. "busy" signal to indicate loading)."

Claims 17-30 include elements that are different from claims 1-16 and/or include limitations that do not exist in claims 1-16.

Applicant submits that these two paragraphs fail to provide the requisite support for the Office's conclusion that claims 17-30 are unpatentable because of

obviousness. Therefore, the Office has failed to establish its *prima facie* case that these claims are unpatentable.

### Claims 17-24.

Despite the Office's statement that these claims are of "similar scope" to claims 1-16, Applicant submits that these claims are not. Furthermore, Applicant respectfully submits that similarity of scope is not a valid ground for a rejection.

**Claim 17.** This claim is dependent from claim 1. This claim specifically recites, "the temporary graphic element [displays] over the content viewing area *only during times when the browser is loading visible content*" (emphasis added). None of the cited references contains this feature. In particular, note the bolded and italicized words, "only" and "visible." These limitations are not found in any cited reference. In the Action, the Office did not address this.

**Claim 18.** This claim is dependent from claim 1. This claim specifically recites, "the temporary graphic element indicates to a user that the browser is loading content." None of the cited references contains this feature. In the Action, the Office did not address this.

**Claim 23.** This claim is dependent from claim 11 and is similar to claim 18. This claim specifically recites, "the temporary graphic element indicates to a user that the loading step is being performed." None of the cited references contains this feature. In the Action, the Office did not address this.

**Claims 19 and 21.** Claim 19 is dependent from claim 1 and claim 21 is dependent from claim 6. Specifically, these claims recite, "the temporary graphic element [disappearing] when the browser's loading of content is complete to

indicate to a user that such loading of content is complete." None of the cited references contains this feature. In the Action, the Office did not address this.

Claim 24. This claim is dependent from claim 11 and is similar to claims 19 and 21. This claim specifically recites, "removing the temporary graphic element once the loading step is complete to indicate to a user that the loading step is complete." None of the cited references contains this feature. In the Action, the Office did not address this.

Claim 20 and 22. Claim 20 is dependent from claim 6 and claim 22 is dependent from claim 11. Each claim recites the same feature. Specifically, they recite, "the temporary graphic element is not content." This feature is included in claim 1; therefore, the Action addressed this feature. See Applicant's comments about this feature in its discussion of claim 1 above.

Claims 25-30.

These claims focus on the status of the browser, but they are worded differently from claims 1-16. They include different elements and limitations.

The Office indicates that Stone supports its position that these claims are obvious. Applicant respectfully submits that Stone does not provide the requisite support. The "DownloadBegin" and "DownloadComplete" events described in the cited portion of Stone are program-control events. These are used by application programs to determine when to perform a programmed action. This is not a displayed "load status" graphic element.

Stone says that it provides "...functionality of a web browser to application programs" (col. 5, line 66 through col. 6, line 1); and "...programmers can incorporate this control..." (col. 6, line 5). In col. 6, lines 45-50, Stone explains

the events listed in Table 2.   Table 2 includes the "DownloadBegin" and "DownloadComplete" events cited in the Action.  Stone explains that these events are notification messages to the control's programming interfaces.

Applicant submits that Stone does not disclose, suggest, teach, or motivate one of ordinary skill in the art to display a "load status" of a browser is NOT displayed by a graphic element.

Claim 25.  This claim is dependent from claim 1.  This claim specifically recites, "the temporary graphic element conveys status information of the browser."  None of the cited references contains this feature.

Claims 26-30.  Applicant submits that these claims are worded differently and have a different scope of coverage than claims 1-24.  However, the Action did not provide any information regarding a thorough examination of these claims independent from claims 1-24.  Applicant formally requests an examination of these claims, which is independent of an examination of claims 1-24.

Claims 26 and 28.  These claims are independent.  These claims describe a method (or medium with instructions executing such a method) of indicating a content "load status" that is not found in any of the cited references.

Claims 27 and 29.  These claims are dependent from claims 26 and 28, respectively.  These claims describe an additional step to a method (or medium with instruction executing such a method) of indicating a content "load status" that is not found in any of the cited references.  The step involves "removing the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed."

Claim 30.  This claim is independent.  This claim describes a hypermedia browser  (of an information processing devices) that is configured to operating in

at least two modes: content-loading and content-loaded. The claim describes the modes in detail. None of the cited references includes the features of this claim.

Accordingly, Applicant submits that all of the pending claims in a condition for allowance. Applicant asks the Office with withdraw its rejections and allow all pending claims.

**Formal Request for an Interview**

Applicant expects the above comments to be persuasive. If not, however, Applicant formally requests a telephonic interview in order to discuss whether any further progress can be made towards allowance of this case. Thus, the undersigned would appreciate a telephone call before issuing a subsequent Action.

Please contact the undersigned to schedule a telephonic interview that is convenient to the Examiner. Applicant hopes that an oral discussion can help us achieve our common goal, which is speedy completion of prosecution of this application.

## Conclusion

All pending claims are in condition for allowance. Applicant respectfully requests reconsideration and prompt issuance of the application. If any issues remain that prevent issuance of this application, the Office is urged to contact the undersigned attorney before issuing a subsequent Action.

Respectfully Submitted,

Dated: 8-15-01        By: _____

Kasey C. Christie
Reg. No. 40559
(509) 324-9256 x232
kasey@leehayes.com
www.leehayes.com

**Amended Claims (and the non-amended pending claims)**

**(In _Marked-up_ Form, in accordance with 37 CFR §1.121):**

1.    (Amended)    A hypermedia browser embodied on a computer-readable medium for execution on an information processing device having a limited display area, wherein the hypermedia browser has a content viewing area for viewing content and is configured to display a temporary graphic element over the content viewing area during times when the browser is loading content, wherein the temporary graphic element is positioned over the content viewing area to obstruct only part of the content in the content viewing area, wherein the temporary graphic element is not content and wherein content comprises data for presentation which is from a source external to the browser.

2.    A hypermedia browser as recited in claim 1, wherein the temporary graphic element is animated.

3.    A hypermedia browser as recited in claim 1, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area.

4.    A hypermedia browser as recited in claim 1, wherein the hypermedia browser presents the temporary graphic element within a temporary window in a windowing operating environment.

5.    A hypermedia browser as recited in claim 1, wherein:

the temporary graphic element is animated; and

the hypermedia browser presents the temporary graphic element within a temporary window in a windowing operating environment.


6.    (Amended)   An information processing device comprising:

a processor;

a display;

a hypermedia browser executing on the processor to load and display content in a content viewing area on the display;

wherein the hypermedia browser displays a temporary graphic element over the content viewing area during times when the browser is loading visible content;

wherein the temporary graphic element is positioned only over a portion of the content viewing area and obstructs only part of the visible content in the content viewing area; and

wherein the temporary graphic element indicates to a user that the browser is loading content and content comprises data for presentation which is from a source external to the browser.


7.    An information processing device as recited in claim 6, wherein the temporary graphic element is animated.


8.    An information processing device as recited in claim 6, wherein the hypermedia browser displays the temporary graphic element in a corner of the content viewing area.

9.      An information processing device as recited in claim 6, wherein the hypermedia browser displays the temporary graphic element within a temporary window in a windowing operating environment.

10.     An information processing device as recited in claim 6, wherein:

the temporary graphic element is animated; and

the hypermedia browser displays the temporary graphic element within a temporary window in a windowing operating environment.

11.     (Amended)      A method of browsing a hyperlink resource, comprising the following steps:

loading content from the hyperlink resource in response to user selection of hyperlinks contained in said content;

displaying the content in a content viewing area;

displaying a temporary graphic element over the content viewing area during the loading step, wherein the temporary graphic element obstructs only part of the content in the content viewing area;

wherein the loading, the content displaying, and the temporary graphic element displaying steps occur at least partially concurrently; and

wherein content comprises data for presentation which is from a source external to the browser.

12.     A method as recited in claim 11, further comprising an additional step of animating the temporary graphic element.

34

13.   A method as recited in claim 11, wherein the displaying step includes displaying the temporary graphic element in a corner of the content viewing area.

14.   A method as recited in claim 11, wherein the displaying step includes displaying the temporary graphic element within a temporary window in a windowing operating environment.

15.   A method as recited in claim 11, further comprising an additional step of animating the temporary graphic element, wherein the displaying step includes displaying the temporary graphic element within a temporary window in a windowing operating environment.

16.   A computer-readable storage medium containing instructions that are executable for performing the steps recited in claim 11.

17.   A hypermedia browser as recited in claim 1, wherein the browser is configured to display the temporary graphic element over the content viewing area only during times when the browser is loading visible content.

18.   A hypermedia browser as recited in claim 1, wherein the temporary graphic element indicates to a user that the browser is loading content.

19.   A hypermedia browser as recited in claim 1, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete.

20.   An information processing device as recited in claim 6, wherein the temporary graphic element is not content.

21.   An information processing device as recited in claim 6, wherein the temporary graphic element disappears when the browser's loading of content is complete to indicate to a user that such loading of content is complete.

22.   A method as recited in claim 11, wherein the temporary graphic element is not content.

23.   A method as recited in claim 11, wherein the temporary graphic element indicates to a user that the loading step is being performed.

24.   A method as recited in claim 11, further comprising removing the temporary graphic element once the loading step is complete to indicate to a user that the loading step is complete.

25.   A hypermedia browser as recited in claim 1, wherein the temporary graphic element conveys status information of the browser.

26.   (Twice Amended)  A method of indicating a content "load status" of a hypermedia browser having a content viewing area for viewing content, the method comprising:

displaying loaded content within the content viewing area of a screen of a hypermedia browser, the screen being without a "load status" graphic element, wherein a "load status" graphic element indicates a current content load status of the hypermedia browser;

receiving an instruction to load new content into the content viewing area;

loading such new content into the content viewing area; and

while loading, displaying a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area; and

wherein content comprises data for presentation which is from a source external to the browser.

27.   A method as recited in claim 26 further comprising, upon completion of the loading, removing the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed.

28.   (Amended)  A  computer-readable  medium  having  computer-executable instructions that, when executed by a computer, perform a method of indicating  a  content  "load status"  of  a  hypermedia  browser  having  a  content viewing area for viewing content, the method comprising:

displaying loaded content within the content viewing area of a screen of a hypermedia browser, the screen is without a "load status" graphic element, wherein a "load status" graphic element indicates a current content load status of the hypermedia browser;

receiving an instruction to load new content into the content viewing area;

loading such new content into the content viewing area; and

while loading, displaying a "load status" graphic element over the content viewing area so that the graphic element obstructs only part of the content in such content viewing area; and

wherein content comprises data for presentation which is from a source external to the browser.

29.   A computer-readable medium as recited in claim 28 further having additional computer-executable instructions that perform a method comprising, upon completion of the loading, removing the "load status" graphic element to reveal the part of the content in the content viewing area that the graphic element obstructed when the element was displayed.

30.   (Amended)   An information processing device comprising:

a processor;

a display;

a hypermedia browser executing on the processor to load and display content in a content viewing area on the display;

wherein the hypermedia browser is configured to operate in a content-loading mode and a content-loaded mode;

in the content-loaded mode, the hypermedia browser displays loaded content in the content viewing area and no "load status" graphic element is displayed, wherein absence of such "load status" graphic element indicates that the browser is in the content-loaded mode;

in the content-loading mode, the hypermedia browser loads content, displays such content in the content viewing area as it loads, and displays a "load status" graphic element over the content view area obstructing part of the content displayed in the content viewing area, wherein presence of such "load status" graphic element indicates that the browser is in the content-loading mode; and

wherein content comprises data for presentation which is from a source external to the browser.

**New Claims:**

---

31.   A hypermedia browser of claim 1, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.

32.   A hypermedia browser of claim 1, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web.

33.   A hypermedia browser of claim 6, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.

34.   A hypermedia browser of claim 6, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web.

35. A hypermedia browser of claim 11, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.

36. A hypermedia browser of claim 11, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web.

37. A hypermedia browser of claim 26, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.

38. A hypermedia browser of claim 26, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web.

39. A hypermedia browser of claim 30, wherein content is data formatted for presentation which is selected from a group consisting of visible effects of a markup language, visible text of such a markup language, and visible results of a scripting language.

40.    A hypermedia browser of claim 30, wherein content is data formatted for presentation which is selected from a group consisting of HTML, text, SGML, XML, java, XHTML, JavaScript, streaming video, VRML, Active X, Flash. scripting language for the world wide web.

—