HONORABLE JAMES L. ROBART

1

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9    MICROSOFT CORPORATION, a
     Washington corporation,

10                              Plaintiff,

11          v.

12   MOTOROLA, INC., and MOTOROLA
     MOBILITY, INC., and GENERAL
13   INSTRUMENT CORPORATION,

14                            Defendants.

15

16   MOTOROLA MOBILITY, INC., and
     GENERAL INSTRUMENT
17   CORPORATION,

18          Plaintiffs/Counterclaim Defendant,

19          v.

20   MICROSOFT CORPORATION,

21          Defendant/Counterclaim Plaintiff.

No. C10-1823-JLR

**MOTOROLA'S OPENING CLAIM
CONSTRUCTION BRIEF**

**HEARING DATE:**
**June 7, 2012 at 9:00 a.m.**

22

23

24

25

**MOTOROLA'S OPENING CLAIM
CONSTRUCTION BRIEF**

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

## **TABLE OF CONTENTS**

I.  INTRODUCTION..................................................................................................1

II.  THE MICROSOFT PATENTS AND THEIR DISPUTED TERMS ................1

    A.  The '780 Patent......................................................................................1

        1.  "graphic element" ...................................................................2

        2.  "during times when the browser is loading visible content" ...........6

        3.  "obstruct[s/ing]"......................................................................8

    B.  The '582 Patent......................................................................................9

        1.  "icon" .....................................................................................12

        2.  "distinct from . . . computer/application/programs" ....................14

        3.  "window" ...............................................................................16

        4.  The "as if . . . received [via/from]" limitations ........................18

        5.  "invoking [a/the] selected input method" ....................................20

        6.  "interface" .............................................................................22

**MOTOROLA'S OPENING CLAIM**
**CONSTRUCTION BRIEF - i**

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

# TABLE OF AUTHORITIES

Page(s)

CASES

*Biogen, Inc. v. Berlex Labs. Inc.*,
    318 F.3d 1132 (Fed. Cir. 2003) ................................................................................22, 24

*Deep 9 Corp. v. Barnes & Noble, Inc.*,
    No. C11–0035JLR, 2012 WL 72290 (W.D. Wash. Jan. 10, 2012) (Robart, J.) ...................3, 6

*Felix v. Am. Honda Motor Co., Inc.*,
    562 F.3d 1167 (Fed. Cir. 2009) ...........................................................................................24

*Omega Eng'g, Inc., v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003) ...........................................................................3, 6, 14, 15

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) ...........................................................................5

*Salazar v. Procter & Gamble Co.*,
    414 F.3d 1342 (Fed. Cir. 2005) ...........................................................................................6

*Sinorgchem Co., Shandong v. Int'l Trade Comm'n*,
    511 F.3d 1132 (Fed. Cir. 2007) .........................................................................................22

*Southwall Techs., Inc. v. Cardinal IG Co.*,
    54 F.3d 1570 (Fed. Cir. 1995) .............................................................................................5

*Verizon Services Corp. v. Vonage Holdings Corp.*,
    503 F.3d 1295 (Fed. Cir. 2007) .........................................................................................15

OTHER AUTHORITIES

American Heritage College Dictionary ...........................................................................................9

Webster's II New College Dictionary ..............................................................................................9

**MOTOROLA'S OPENING CLAIM
CONSTRUCTION BRIEF - ii**

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

## I.  INTRODUCTION

Motorola Mobility, Inc. ("Motorola") respectfully submits this opening claim construction brief for the disputed claim terms of U.S. Patents Nos. 6,339,780 ("the '780 Patent") and 7,411,582 ("the '582 Patent").  The parties have agreed to constructions for a number of claim terms.  *See* Microsoft's Prehearing Statement (Dkt. 153 at 12-13). The parties, however, dispute the constructions of nine other claim terms, which are addressed below

The general law relating to claim construction is set forth in Motorola's Opening Claim Construction Brief relating to the asserted H.264 patents (Dkt. 174).  To the extent case law is relevant to a particular limitation, the law is set forth below in the discussion of that limitation.

## II.  THE MICROSOFT PATENTS AND THEIR DISPUTED TERMS

In each section below, Motorola first provides a brief overview of Microsoft's patents to assist the Court in understanding the technology at issue.  Motorola then focuses on the meaning of the disputed claim terms.

### A.  The '780 Patent[1]

The '780 Patent is directed to using a "temporary graphic element" to indicate the loading status of content, such as a webpage, in a browser.[2]  In the mid-1990's when the '780 application was filed, the Internet was much slower than it is today.  As the patent explains:

> One persistent characteristic of WWW browsing is that significant delays are often encountered when loading documents and other multimedia content. From the user's perspective, such delays can be quite frustrating. In severe cases involving long delays, users might be inclined to believe that their browsers have become inoperative.

Ex. D at 1:64-2:2.[3]

---

[1]  A person of ordinary skill in the art at the time the application for the '780 Patent was filed (May 1997) would have had at least a bachelor's degree in computer science, computer engineering, or the equivalent, at least two years of experience working in software engineering of user interfaces, and knowledge of, and some professional experience with, browsing.  Such a person would have had a general awareness of developments in the field of hypermedia browsers and loading status indicators before the priority date of the '780 Patent.

[2]  The parties agree that "content" is information for presentation, such as data, graphics, video, or audio, from a source external to a browser.  (Dkt. 153 at 12.)

**MOTOROLA'S OPENING CLAIM
CONSTRUCTION BRIEF - 1**

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

The '780 Patent explains that "[t]o avoid this situation, browsers typically include some type of status display indicating progress in loading content.  In many browsers, this consists of a stationary icon such as a flag or globe that becomes animated during periods when content is being loaded."  *Id.* at 2:2-7.  This load status indicator icon typically was located in a tool bar or status area outside of the content viewing area.  *Id.* at 2:9-11.

The alleged novelty of the '780 Patent is to save space in the tool bar or status area by removing the load status indicator from these areas and, instead, placing a "temporary graphic element" over a portion of the content viewing area when the browser is loading content.  *Id.* at 4:50-63.   After the content is loaded, the temporary graphic element will then disappear.  Figure 3 illustrates the load status indicator 64 (i.e., the temporary graphic element) being displayed over the content viewing area 56 (instead of in task bar 60) during times when content is being loaded:



*Fig. 3*

### 1.    "graphic element"

| Claim Term For Construction | Proposed Constructions |
|---|---|
| "graphic element" ('780 Patent, Claims 1–6, 9, 12–14, 20, 21, 32–33, 36, 39–40) | **Motorola –** A discrete image for viewing on a computer display screen that is not content. |
| | **Microsoft** – No construction needed; if the term needs to be construed it should be given its plain and ordinary meaning. |

---

[3]    Throughout this brief, all emphasis is added and the citation format x:y-z refers to the indicated column and lines of the cited patent.  "Ex. __" refers to the referenced exhibit to the Declaration of Philip S. McCune In Support Of Motorola's and Microsoft's Joint Claim Chart (Dkt. 158) and the Second Declaration of Philip S. McCune In Support Of Motorola's Opening Claim Construction Brief, filed concurrently with this Brief.

MOTOROLA'S OPENING CLAIM
CONSTRUCTION BRIEF - 2

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

| | Alternatively, the term should be construed as follows: |
| | A discrete image for viewing on a computer display screen. |

As an initial matter, Microsoft's contention that this term does not require construction and that plain and ordinary meaning applies should be rejected. As explained below, Microsoft narrowed the scope of the term "graphic element" during prosecution to secure allowance of the claims and, given the doctrine of prosecution disclaimer, it cannot now retreat from those arguments. *See, e.g.*, *Omega Eng'g, Inc., v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003) ("[W]here the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender."); *Deep 9 Corp. v. Barnes & Noble, Inc.*, No. C11–0035JLR, 2012 WL 72290, at *8 (W.D. Wash. Jan. 10, 2012) (Robart, J.) (applying prosecution disclaimer and finding that the patentee "clearly disavowed" aspects of a claim term "through statements made during prosecution").

The parties agree that a graphic element is "a discrete image for viewing on a computer display screen" but dispute whether the discrete image can include "content" (i.e., data, graphics, video, or audio, from a source external to a browser). Based on the prosecution history, Motorola contends that it cannot. Microsoft, in an attempt to cover Motorola's accused products, ignores the prosecution history and contends that it can.

As explained above, the '780 Patent explains that the purpose of the "graphic element" is to indicate that content is being loaded into the browser. In describing the "graphic element," the '780 Patent does not disclose or suggest that the "graphic element" can include content. In fact, the one example of a graphic element in the '780 Patent is the Microsoft Flag 64 shown in Figure 3. This is not content. Indeed, claims 1 and 20 expressly provide that "the temporary graphic element is not content." Ex. D at 5:40, 7:4.

While the remaining asserted claims do not expressly include this requirement, statements made during prosecution make it clear that this requirement applies to **all** claims.

**MOTOROLA'S OPENING CLAIM
CONSTRUCTION BRIEF - 3**

S<small>UMMIT</small> L<small>AW</small> G<small>ROUP</small> <small>PLLC</small>
315 F<small>IFTH</small> A<small>VENUE</small> S<small>OUTH</small>, S<small>UITE</small> 1000
S<small>EATTLE</small>, W<small>ASHINGTON</small> 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

For example, Microsoft stated **three** times during prosecution that the "core concept" of **all** claims then pending (including all claims that ultimately issued as independent claims) was "a **non-content** graphic element appearing over a content area that is indicative of present condition where content is being loaded into the content area." Ex. F at MOTM_WASH1823_0050434; *see also id*. at MOTM_WASH1823_0050474 and MOTM_WASH1823_0050521.

Microsoft limited the claims to a "non-content graphic element" during prosecution to differentiate the claims from U.S. Patent No. 5,760,771 ("Blonder") (Ex. DD). Blonder describes a system in which an automated tour guide takes users on a structured tour of webpages. In one embodiment, for example, Blonder describes virtual tours of private universities. Ex. DD at 6:1-6. Anticipating that the loading of content from the Internet might be delayed, Blonder teaches the use of "padding" – supplementary content already stored on the device that is seamlessly inserted into the viewing area to mask the fact that the requested content is taking additional time to load. *See id*. at 3:26-42.

In rejecting claim 1, the Examiner equated this "padding" in Blonder to the "temporary graphic element" in the application. Ex. CC at MOTM_WASH1823_0050362-63; *see also* Ex. DD at 3:26-42. In response, Microsoft expressly distinguished Blonder on the grounds that "padding" is not equivalent to the temporary graphic element, "because the 'padding' is content and the '. . . graphic element . . .' **is not**." Ex. F at MOTM_WASH1823_0050378; *see also id.* at MOTM_WASH1823_0050477.

Microsoft also argued for the allowance of application claims 6-17 and 20-22, in part, because Blonder did not suggest displaying "padding" over delayed or visible content. Rather, the padding taught in Blonder was designed to mask the fact that the display of the content was delayed. *Id.* at MOTM_WASH1823_0050381. Consistent with this argument, Microsoft also amended claims 1 and 6 to make it "clear that the graphic element is 'over' the content viewing

**MOTOROLA'S OPENING CLAIM CONSTRUCTION BRIEF - 4**

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

area," and then explained that "[t]he use of 'over' in the claim language emphasizes that that [sic] **the graphic element is not part of the content.**"  *Id.* at MOTM_WASH1823_0050374-75.  Because every independent claim of the '780 Patent requires that the temporary "graphic element" be displayed "over the content viewing area," Microsoft's statement regarding the import of the use of the word "over" – in reality, its disclaimer as to the nature of the graphic element – necessarily applies to all claims.[4]

That Microsoft's statement applies to all claims is further demonstrated by the Examiner's repeated statement that many other claims were being rejected "for the reasons stated in rejections of claims 1-5."  *See, e.g.*, Ex. CC at MOTM_WASH1823_0050364; *see also* Ex. F at MOTM_WASH1823_0050524.  Thus, Microsoft's argument applied to all the pending claims in the application.  Indeed, Microsoft amended claim 1 and added dependent claims 20 and 22 (which all state explicitly that the temporary graphic element is not content) to "clarify [the] point" that "[t]he temporary graphic element is not content."  Ex. F at MOTM_WASH1823_0050375.  As it amended the claims merely for "clarification," Microsoft obviously understood that it had already **made** this point, albeit less clearly than it could have, and was not actually adding an additional limitation.

The Examiner's statements in allowing the claims confirms that the Examiner understood that Microsoft had disclaimed "graphic elements" that include content:

> As noted during the file history (see amendment of August 20, 2001, especially pages 15-31), the claimed invention is directed to covering a part of the content viewing area with a graphic element.  **This graphic element is not additional content**.  Rather, this graphic element would indicate loading status of the content that is being loaded into the browser.

---

[4]     *See, e.g.*, *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed. Cir. 1995) ("[A]rguments made during prosecution regarding the meaning of a claim term are relevant to the interpretation of that term in **every claim** of the patent absent a clear indication to the contrary."); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) ("Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims.").

*Id.* at MOTM_WASH1823_0050553-54.[5]

By distinguishing the content displayed by the browser from the non-content graphic element for purposes of allowance, Microsoft expressly disclaimed a content-based graphic element.  Microsoft cannot now seek to reclaim as part of its litigation strategy that which it already disclaimed to obtain its patent.  *See, e.g.*, *Omega*, 334 F.3d at 1324; *Deep 9 Corp.*, 2012 WL 72290, at *8.  Because of this unambiguous and unmistakable disavowal of claim scope, Motorola's construction should be adopted.

### 2.    "during times when the browser is loading visible content"

| Claim Term For Construction | Proposed Constructions |
| --- | --- |
| "during times when the browser is loading visible content" ('780 Patent, Claims 2, 12) | **Motorola** – While the hypermedia browser is loading visible content into the content viewing area. |
| | **Microsoft** – No construction needed; if the term needs to be construed it should be given its plain and ordinary meaning. Alternatively: while the hypermedia browser is loading content (for the purpose of displaying the content), where at least part of the content is capable of being seen. |

Microsoft's contention that this term does not require construction and that plain and ordinary meaning applies should be rejected.  This phrase requires construction because the parties dispute how statements made during prosecution impact the interpretation of this phrase.  *See Omega*, 334 F.3d at 1324; *Deep 9 Corp.*, 2012 WL 72290, at *8.  Specifically, the parties dispute whether the content must be visible in the viewing area of the browser while content is loaded (as Motorola contends) or just needs to be capable of being seen at some point in time (as Microsoft contends).  The intrinsic record supports Motorola's position – the applicants made it explicitly clear during prosecution that "loading visible content" meant that "[w]hile the content is being loaded, that content is visible to the user."   Ex. F at MOTM_WASH1823_0050375.

---

[5]    "Although unilateral statements by an examiner do not give rise to a clear disavowal of claim scope by an applicant, it does not necessarily follow that such statements are not pertinent to construing claim terms." *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005).

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

While the patent specification does explain what it means to "load content" (*see* Ex. D. at 4:53-62; 5:19-22), it does not contain the phrase "loading visible content."  This term was added to the claims during prosecution to distinguish the claims from Blonder.  *See, e.g.*, Ex. F at   MOTM_WASH1823_0050375   and   MOTM_WASH1823_0050440.     As   previously discussed, Blonder discloses a system that provides a structured tour of webpages; while delayed files are loaded, "padding" is displayed. *Id.* at MOTM_WASH1823_0050376.  The applicants distinguished Blonder by pointing out that it did not disclose the simultaneous display of "padding" and delayed (but visible) content.  Specifically, in arguing for issuance of claims 6 (issued claim 12), 11 (issued claim 19), and 17 (issued claim 2), the applicants stated:

> Amended claim 6 now includes "... when the browser is loading visible content ..." and the graphic element "... only partially obstructs visible content...." In claim 11, the following language is added: "…wherein the loading, the content displaying...occur at least partially concurrently...." **These changes are made to clarify that the loading content is visible**.

*Id.*   at   MOTM_WASH1823_0050375.     Similarly,   the   applicants   argued   during prosecution that:

> **These claims are allowable because none of the cited references discloses a browser that displays** "…a temporary graphic element over the content viewing area during times when the browser is loading visible content …."  The quoted text is from claim 6, but claim 11 and claim 17 also include similar language.   Blonder never suggests a technique or a desire for currently displaying the delayed content and the 'padding' in the content viewing area. Since the delayed content is unavailable, it cannot be displayed. . . . Claim 17 (dependent from claim 1) includes similar visibility language.

*Id.* at MOTM_WASH1823_0050381.

The prosecution history confirms the common sense interpretation of the claim based on its express language – "loading visible content" means the content is visible when it is being loaded.   Because Microsoft's construction does not square with the positions it took during prosecution and contradicts the express claim language, its construction must be rejected.

**MOTOROLA'S OPENING CLAIM CONSTRUCTION BRIEF - 7**

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

### 3.   "obstruct[s/ing]"

| Claim Term For Construction | Proposed Constructions |
|---|---|
| "obstruct[s/ing]" ('780 Patent, Claims 1, 12, 32, 33, 36, 39, 40) | **Motorola –** To block from sight. |
| | **Microsoft** – To block or otherwise interfere with. |

Each of the asserted claims requires that the graphic element be positioned over the content viewing area "to obstruct only part of the content in the content viewing area" (or some variation of this language).  The parties agree that the term "obstruct" in this context means to "block" but disagree as to whether it also means to "interfere with," as Microsoft contends.  The motivation for Microsoft's inclusion of "interfere with" is clear – some of the accused products use a transparent indicator in the content viewing area and Microsoft wishes to broaden its claims to include these devices.  The intrinsic record, however, makes it clear that "obstructing" does not include any transparent alternative to blockage.

The specification of the '780 Patent explains that because the graphic element will temporarily obstruct content, the temporary graphic element should be displayed in a corner of the content viewing area, "because this position is often blank in Internet documents."  Ex. D at 4:66-67.  Thus, even though the corner is blocked from sight, a user's content-viewing is uninterrupted because there likely is no content in the blocked corner.  If "obstruct" meant merely to interfere with (such that underlying content is still visible), there would be no need to display the element in the "often blank" corner of the content viewing area.

The '780 Patent specification confirms that the inventors did not intend for the definition of "obstruct" to include "interfere with."  For instance, the patentees show the mutual exclusivity of the phrases "obstruct" and "interfere with" by disjunctively separating them with the word "or."  *See id* at 1:60-63 (noting that menus, status displays, and tool icons are typically located adjacent the viewing area (as opposed to over the viewing area), "so that they do not obstruct **or** interfere with the viewing area").[6]

---

[6]    Motorola acknowledges that dictionaries include alternative definitions for the term "obstruct" that include the phrase "interfere with."  When the term "obstruct" is used in that alternative context, it is used to describe interference with a process (e.g., obstructing legislation).  The more appropriate definition for the

**MOTOROLA'S OPENING CLAIM**
**CONSTRUCTION BRIEF - 8**

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

The Examiner also understood the '780 Patent to be directed to instances where the content is blocked by the graphic element:

> [T]he claimed invention is directed to **covering** a part of the content viewing area with a graphic element. . . .  To some degree, this appears counterintuitive and against the normal flow of the art.  If such a graphic element would **cover content**, this would interfere with the view offered to the user.  This is especially true since the browser is involved.  Presumably, the user would be using the browser to browse; any content being loaded to the browser would be wanted by the user.  Instead of having the graphic element away from the content, the graphic element **covers** the content.[7]

Ex. F at MOTM_WASH1823_0050553-54.  Microsoft's attempt to improperly broaden the term "obstruct" to include transparent coverage should be rejected.

## B.    The '582 Patent

The '582 Patent is directed to a system for managing a soft input panel ("SIP"), such as a virtual keyboard on a device's user interface.[8]  The use of SIPs for data entry was well known prior to the filing of the '582 Patent.  Ex. E at 1:26-56.  For instance, the '582 Patent acknowledges that prior art systems permitted a user to select a SIP to be used with at least some of the device's programs and applications.  *Id.* at 1:45-67.  One apparent shortcoming of these prior art devices was that each separate application on the device typically had its own soft keyboard.  For example, a word processor and a spreadsheet application would each have

---

claimed context is "hide from sight".  *See, e.g.*, Webster's II New College Dictionary ("1. To clog or block (a passage) with obstacles.  2. To impede, retard, or interfere with <obstruct legislation>  3.  To cut off from sight") (Ex. P at MOTM_WASH1823_0336213-215); American Heritage College Dictionary ("1.  To block or fill (a passage) with obstacles or an obstacle.  See Syns at block.  2.  To impede, retard, or interfere with; hinder.  3.  To get in the way of so as to hide from sight") (Ex. Q at MOTM_WASH1823_0336187-189).

[7]      The Examiner did use the phrase "interfere with" in his statement but, when considered in context, the statement is consistent with Motorola's construction.  The Examiner stated that: "If such a graphic element would **cover content**, this would **interfere with the view** offered to the user."  In the claims, it is the content – and not the view of the user – that is obstructed.

[8]      A person of ordinary skill in the art at the time of the alleged invention (December 1997) would have had at least a bachelor's degree in computer science, computer engineering, or the equivalent, at least two years of experience working in software engineering of user interfaces, and knowledge of, and some professional experience with, pen or tablet computing.  Such a person would have had a general awareness of developments in the field of soft input panels and their associated management systems before the priority date of the '582 Patent.

MOTOROLA'S OPENING CLAIM
CONSTRUCTION BRIEF - 9

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   its own input panel.  The '582 Patent purportedly improved on these prior art systems by

2   allowing the same SIP to be used by different applications.

3        Figure 5 shows "a SIP menu button 70" (shown as a triangle) on the display of a touch-

4   sensitive device.  This button 70 is used to display a pop-up window (72 in Figure 6) that

5   displays different types of input methods.  *Id.* at 7:26-36.  The selected input method (e.g., a

6   soft or virtual keyboard shown in Figure 7) can then be used to provide input to a device's

7   applications.  The device also includes a "visible SIP button 52" to display the soft input panel

8   50 (i.e., make it visible as shown in Figure 7) or hide it (as shown in Figure 5).  *Id.* at 6:13-29.



16       SIP Manager 58 (shown below) is used to control the selection of a particular soft input

17  panel and the transmission of user data from the soft input panel to the applications:

25  **MOTOROLA'S OPENING CLAIM**
    **CONSTRUCTION BRIEF - 10**



**FIG. 2**

As the specification of the '582 Patent explains:

> The SIP manager 58 also provides a user interface enabling user selection from a displayable list of available input methods. (*Id.* at 5:9-11.)

> In accordance with one aspect of the present invention, the present architecture employs a SIP manager 58 to provide a single and flexible interface for a plurality of different input methods 64. **In general, the SIP manager 58 provides keystrokes from a selected input method 64 to the graphical windowing environment 60** (e.g., the Windows CE operating system 28). Once received, the graphical windowing environment 60 sends information corresponding to the user input data to an application 29 (i.e., the application whose window currently has input focus) in the form of that keystroke, mouse or other message placed in the message queue of the application's window. . . . As a result, any application capable of handling keyboard input may be used with any appropriately-configured input method 64.

*Id.* at 4:45-61. The "Input method 64" of Figure 2 may comprise different types of soft input panels, such as "displayable keyboards, (soft keyboards), a calculator, a formula and/or equation editor, chemical symbol template, voice recognition, handwriting recognition, shorthand symbol recognition (such as 'Graffiti'), or other application-optimized input methods (e.g. a barcode reader)." *Id.* at 5:1-6. "Graphical windowing environment 60" is, for

**MOTOROLA'S OPENING CLAIM**
**CONSTRUCTION BRIEF - 11**

example, a Windows operating system. *Id.* at 4:49-50.  "Applications 29" are programs such as word processors or database programs. *Id*. at 1:38-39, 49-50.

The '582 Patent also explains that applications on the device do not know that the input data they receive originated from a SIP instead of an actual hardware device, like a keyboard:

> [A]pplications 29 need not be aware of the SIP system in order to benefit from the present invention. Indeed, one aspect of the present invention is that **applications do not ordinarily recognize whether data received thereby originated at a hardware input device such as the keyboard 36 or via user activity** (e.g., contact or proximity detected by the screen 32 and detection circuitry 33) within the soft input panel window 50. This enables applications to operate with virtually any appropriate input method, irrespective of whether that application is SIP-aware.

*Id*. at 7:48-57.

1.    "icon"

| Claim Term For Construction | Proposed Constructions |
| --- | --- |
| "icon" ('582 Patent, Claims 1, 15) | **Motorola –** A small image displayed on the screen to represent an object that can be manipulated by the user. |
| | **Microsoft** – An on-screen representation of something. |

The meaning of the term "icon," surprisingly, is in dispute.  Motorola takes its construction directly from Microsoft's computer dictionary.  Rejecting its own dictionary definition, Microsoft speciously contends that icons can include any representation on the screen – presumably including text.  But the '582 Patent only uses the term "icon" to describe images – not text.  For example, the '582 Patent calls SIP taskbar button 52 an icon.

MOTOROLA'S OPENING CLAIM
CONSTRUCTION BRIEF - 12

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001



**FIG. 5**

*See id.* at 12:6-7 ("SIP taskbar button icons 52"); 12:39-40 ("the icon that the taskbar 56 is displaying in the SIP button 52").  In contrast, none of the text in Figure 5 (or any other figure) is described as an icon. The specification also states that the "Input Method is responsible for drawing the entire client area of the SIP window 50, and thus ordinarily creates its windows and imagelists (collections of displayable bitmaps such as customized icons) in response to this call." *Id.* at 10:37-40.

Consistent with the disclosure of the '582 Patent, and Motorola's proposed construction, the Microsoft computer dictionary defines "icon" as:

> **A small image displayed on the screen to represent an object that can be manipulated by the user**.  By serving as visual mnemonics and allowing the user to control certain computer actions without having to remember commands or type them at the keyboard, icons are a significant factor in the user-friendliness of graphical user interfaces.  See the illustration.



Recycle Bin

**MOTOROLA'S OPENING CLAIM
CONSTRUCTION BRIEF - 13**

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Ex. BB at MOTM_WASH1823_0336228.

Microsoft's proposed construction is inconsistent with the intrinsic record and its own dictionary.  It is so overbroad that it encompasses almost **anything** that can be displayed on a computer screen (such a plain text), effectively rendering the term meaningless.

### 2.    "distinct from . . . computer/application/programs"

| Claim Term For Construction | Proposed Constructions |
|---|---|
| "distinct from . . . computer/application/ programs[9]" ('582 Patent, Claims 1, 11, 15, 19) | **Motorola –** Independent and separate from the computer programs.<br>Computer programs are self-contained executable software. |
|  | **Microsoft** – No construction needed; if the term needs to be construed it should be given its plain and ordinary meaning.<br>Alternatively, the term should be construed as follows: containing software code that is separate from the software code of the computer programs. |

Microsoft's contention that "distinct from the computer programs" does not require construction, or that plain and ordinary meaning applies, should be rejected.  This phrase requires construction because the parties dispute how statements made during prosecution of the '582 Patent and its parent application impact the term's interpretation.  *See Omega*, 334 F.3d at 1324.  Specifically, the parties dispute whether statements made during prosecution require input methods to be separate and independent from the computer programs (as Motorola contends) or just separate from the computer programs (as Microsoft contends).

The term "distinct" does not appear in the specification of the '582 Patent.  Rather, the applicants added it to a claim during prosecution of the parent application to the '582 Patent to distinguish U.S. Patent No. 5,596,702 ("Stucka").  Stucka is directed to a system for dynamically sharing user interfaces.  Ex. G at MOTM_WASH1823_0051002.  The Stucka system discloses hardware input devices (i.e., an input method), such as keyboards.  *Id.*  To

---

[9]     For purposes of this patent, the terms "computer," "application," and "programs" are used interchangeably.  Ex. GG at MOTM_WASH1823_0402077-80 (defining "application," "application file," "application program," "computer program," and "program").

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

distinguish Stucka, the applicants added "distinct from the selected executable input method" to the claim and explained that the claimed input methods are software methods separate from the computer (application) programs:

> Turning to the rejection on the art, the present invention is generally directed to input methods that are **separate from the application programs**[.]

Ex. H at MOTM_WASH1823_0050807, 818.[10]   The applicants further explained that the "distinct" limitation also requires that the programs be independent:

> [T]he input methods of the present invention are . . . **independent** software entities . . . [.] Note that the claims essentially point out that the input methods are **distinct** from the application programs that ultimately receive the data provided by the input methods.

*Id.* at MOTM_WASH1823_0050808.

During prosecution of the '582 Patent, the applicants – as they did during prosecution of the parent application – added the "distinct from" limitation to the patent's independent claims to distinguish Stucka.  Ex. G at MOTM_WASH1823_0050992-1005.  As illustrated by the applicants' arguments above, an input method is distinct from a computer program if it is independent and separate from that computer program.

Motorola's construction also requires computer programs to be "self-contained executable software."  If they were not self-contained, the system would not be able to distinguish one program from another.  Accordingly, it would not be possible to determine which program currently has "input focus."[11]  Ex. E at 4:41-43 ("a number of applications 29 may be executable by the computer system, however one application that is currently running

---

[10]   Although this statement appears in the prosecution history of the parent application of the '582, it can be used to interpret the claims of the '582 Patent.  *Omega*, 334 F.3d at 1333 ("[P]rosecution history may arise from disavowals made during the prosecution of ancestor patent applications."); *see also Verizon Services Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1306-07 (Fed. Cir. 2007) (same).

[11]   The patent specification explains that a program/application having input focus is one that receives input.  *See e.g.,* Ex. E at 4:38-44, 51-56.  Said differently, it is the application that is currently active.

**MOTOROLA'S OPENING CLAIM**
**CONSTRUCTION BRIEF - 15**

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

is said to have input focus") (internal quotations omitted); *id.* at 4:51-54 ("the graphical windowing environment 60 sends information corresponding to the user input data to an application 29 (i.e., the application whose window currently has input focus)").

Motorola's view about the self-contained nature of programs is consistent with Microsoft's computer dictionary, which defines a "computer program" as:

> A set of instructions in some computer language intended to be executed on a computer so as to perform some task.  The term usually implies **a self contained entity**, as opposed to a routine or a library.

Ex. GG at MOTM_WASH1823_0402079.

Microsoft's exclusion of the term "independent" from its construction is inconsistent with both the statements it made to the Patent office to obtain allowance of the claims and its own computer dictionary.

>     3.     "window"

| Claim Term For Construction | Proposed Constructions |
|---|---|
| "window" ('582 Patent, Claims 11, 14, 15, 21, 22, 23, 29, 30, 31) | **Motorola –** A portion of the screen that can contain its own document or message and that is hidable, dockable, movable and resizable. |
| | **Microsoft** – No construction needed; if the term needs to be construed it should be given its plain and ordinary meaning. Alternatively, the term should be construed as follows: a portion of the screen that can contain its own document or message. |

The meaning of the term "window" – believe it or not – is in dispute and requires construction by the Court.  In particular, Microsoft attempts to broaden the term "window" beyond its plain meaning to cover any portion of a display screen on an accused product.  But based on the '582 Patent specification, as well as Microsoft's own computer dictionary, a window  must be movable, hidable, dockable, and resizable.

Indeed, the '582 Patent specification repeatedly and consistently describes "windows" as hidable, dockable, movable and resizable.  For example:

MOTOROLA'S OPENING CLAIM
CONSTRUCTION BRIEF - 16

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

[T]he SIP 50 window is a rectangular area provided by the input method 64 that can be **hidden or shown** at a user's (or an application's) request.  (Ex. E at 6:16-19).

The visible SIP button 52  . . . provides a touch-sensitive interface by which the user displays or **hides** the SIP window 50. Thus, as represented in the state diagram of FIG. 4, the window 50 toggles between an **open, visible** state (FIG. 7) and a **closed, hidden state** (FIG. 5) as the user taps the SIP button 52.  (*Id.* at 6:19-24).

A present design implements a 240 pixel wide by 80 pixel high SIP window that is **fixed (docked)** on the display 32 at a position just above the taskbar 56.  (*Id.* at 6:24-27).

The state includes whether the status of the SIP window 50 is **visible or hidden**, whether the SIP window 50 is **docked** or **in a floating condition**, and the **size and position** of the SIP window 50.  (*Id.* at 7:62-65).

A SIPF_ON flag that is set indicates that the SIP window 50 is **visible (i.e., not hidden)**, while a set SIPF_DOC flag indicates the SIP window 50 is **docked (i.e. not floating)**. (*Id.* at 8:18-21).

Whenever the state of the SIP window 50 changes, i.e., a new Input Method has been selected and/or a **visibility, docking or size change** has occurred, a message, WM_SETTINGCHANGE, is sent to all top-level windows, as generally represented at step 800 of FIG. 8. (*Id.* at 8:49-53).

The ReceiveSipInfo( ) method provides information to the Input Method 64 about the SIP window, including the current **size**, **placement** and **docked** status thereof.  (*Id.* at 11:52-54).

However, the SIP manager 58 will not **resize or move** the SIP window 50 if requested, but will instead update the **size and placement information** returned to applications 29 when queried.

*Id.* at 13:31-34.  These, as well as other portions of the specification that support Motorola's construction, are highlighted in Exhibit FF.  Motorola's construction is also confirmed by the express language of the claims.  For example, claim 8 is directed to "hiding the input panel" and claim 9 is directed to "docking the input panel."

**MOTOROLA'S OPENING CLAIM CONSTRUCTION BRIEF - 17**

Microsoft's proposed construction, though taken from the Microsoft computer dictionary, is incomplete because it excludes the requirement that each window "has its own boundaries."   Ex. BB at MS-MOTO_1823_0336229.   This omission expands the term "window" to cover elements that are clearly not windows.  For example, under Microsoft's proposed construction, each cell in an Excel spreadsheet is a window (see below), because each cell occupies a portion of the screen and could contain a message.  This is an absurd result.  Indeed, the patent never suggests that a "window" is just simply a portion of the screen, as proposed by Microsoft.



### 4.    The "as if . . . received [via/from]" limitations

| Claim Term For Construction | Proposed Constructions |
|---|---|
| "as if . . . received [via/from]" as it appears in the following phrases:<br><br>". . . as if the information was received via user input received from a hardware input device" ('582 Patent, Claim 1)<br><br>". . . as if the input was received via a hardware keyboard" ('582 Patent, Claim 4)<br><br>". . . as if the information was received via user input at a hardware input device" ('582 Patent, Claim 11)<br><br>". . . as if the user data was received from a hardware input device" ('582 Patent, Claim 15)<br><br>". . . as if the input data was | **Motorola –** As if the received information originated from a hardware input device rather than the interactive input panel.<br><br>**Microsoft** – No construction needed; if the term needs to be construed it should be given its plain and ordinary meaning.<br><br>Alternatively, the term should be construed as follows:<br><br>such that the [program / application] does not need to recognize whether the information was received from a hardware input device or not<br><br>such that the [program / application] does not need to recognize whether the input was received from a hardware keyboard or not<br><br>such that the [program / application] does not need to recognize whether the information was received from a hardware input device or not<br><br>such that the [program / application] does not need to recognize whether the data was received from a hardware input device or not |

**MOTOROLA'S OPENING CLAIM CONSTRUCTION BRIEF - 18**

| received via user input received from a hardware input device" ('582 Patent, Claim 19) | |
|---|---|

The Court should reject Microsoft's contention that the "as if" terms do not require construction, or that the plain and ordinary meaning applies. The parties dispute whether or not the input needs to be recognized "as if" it came from a hardware device. Motorola contends it does; Microsoft contends it does not. Thus, the Court needs to resolve this dispute.

Motorola's construction tracks the express claim language. For example, claim 1 requires providing the input to a computer program "as if the information was received . . . from a hardware input device." Consistent with this language, Motorola's construction requires that the received information (i.e., the input) appear as if it originated from a hardware input device. This construction is fully supported by the specification of the '582 Patent:

> When user data is received via the input panel, the input method calls a function of the management component to pass the user data thereto, and in response, the management component communicates the user data to the graphical windowing environment such as in a windows message. An application program receives the message, such as corresponding to a keystroke, **as if the message was generated on a hardware keyboard**. (Ex. E at 2:36-43.)

> The application receives the character data from the graphical windowing environment 60 **as if the user had entered those digits on a physical keyboard**, regardless of the input method used. (*Id*. at 6:9-12.)

> In keeping with one aspect of the invention, applications 29 thus see keys **as if they were sent from a keyboard** (i.e., they get WM_KEYDOWN, WM_CHAR, and WM_KEYUP messages).

*Id*. at 14:7-10.[12]   Indeed, the requirement that the input appear as if it was received from a hardware device was an important limitation in getting the claims allowed:

---

[12]   Motorola's construction is also consistent with Microsoft's description of the invention during prosecution of the grandparent application to the '582 Patent. *See* Ex. I at MOTM_WASH1823_0050105 ("In

**MOTOROLA'S OPENING CLAIM CONSTRUCTION BRIEF - 19**

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

The following is an examiner's statement of reasons for allowance: None of the cited art teaches or suggests . . . providing the input to a computer program of the one or more computer program **as if the information was received via user input received from a hardware input device** as claims 1, 11, 15 and 19.

Ex. EE at MS-MOTO_1823_00002246293.  Microsoft's construction ignores (and, indeed, contradicts) the express claim language.  As explained above, the claims require that the information is provided to the application "as if" the information "was received via user input at a hardware input device."  Thus, the claim language requires that the information must appear to the application to have been inputted into a hardware device (such as a keypad).  Microsoft's construction omits this requirement – in fact, it requires the opposite.  Under Microsoft's construction, the application "**does not need to recognize** whether the input was received from a hardware keyboard or not."

**5.**      **"invoking [a/the] selected input method"**

| Claim Term For Construction | Proposed Constructions |
|---|---|
| "invoking [a/the] selected input method" ('582 Patent, Claims 15, 17) | **Motorola –** Loading and calling the selected input method by a management component. |
| | **Microsoft –** No construction needed; if the term needs to be construed it should be given its plain and ordinary meaning. Alternatively, the term should be construed as follows: loading and calling the selected input method. |

The Court should reject Microsoft's contentions that "invoking [a/the] selected input method" does not require construction, or that the plain and ordinary meaning applies.  These claim terms require construction because they relate to software programming and lack a plain and ordinary meaning to a lay jury.

The parties agree that invoking means "loading and calling the selected input method" but dispute whether a management component must perform the "loading and calling."

---

essence, the input method and management component *simulate* a standard hardware input device on a portable computer.").

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Motorola's construction, which requires the management component to perform the invoking step, is consistent with the specification and prosecution history of the '582 Patent.  The use of a management component (identified as SIP Manager 58)[13] is fundamental to the alleged invention.  Ex. E at 2:29-30 (highlighting the features of the management component in paragraph that begins with "the present invention provides"); *see also* Ex. H at MOTM_WASH1823_0050832 (noting that the management component works with the operating system to convey input data from an input method to a running application, e.g., an application that has "input focus").  In fact, all the other components shown in Figure 2 were well known in the art.  And SIP Manager 58 is responsible for creating the input panel window, and communicating the input data to the graphical windowing environment – the core concept of the alleged invention.  *Id.* at 2:29-41.  The SIP Manager, therefore, is key to the functionality of the '582 Patent.

Indeed, the specification explains that the SIP Manager 58 invokes (loads and calls) the selected input method in response to user selection:

> The SIP manager 58 also provides a user interface enabling user selection from a displayable list of available input methods. A user interacting with the user interface may select an input method 64, and in response, the **SIP manager 58 loads and calls** the selected input method 64.

*Id.* at 5:9-14.

Motorola's construction is confirmed by the prosecution history.  During prosecution of the parent of the '582 Patent, the applicants defined the term "invoked":

> The selected input method then is **invoked**, e.g., **loaded and called by a management component** (12:15-18).  Any previously-selected input method is instructed by the

---

[13]     The SIP Manager 58 is a management component.  The patent explains that "a **management component** operatively connected to the graphical windowing environment creates an input panel window for display on the screen."  *Id.* at 2:29-30.  The SIP Manager 58 is the only structure that connects to the graphical windowing environment and creates the input panel.  *See id.* at Figure 2 & 4:48-56, 6:30-38.  The patent does not disclose or suggest that any other component can perform these functions.

MOTOROLA'S OPENING CLAIM
CONSTRUCTION BRIEF - 21

> management component to exit (13:8-11). To facilitate interchangeability, the selected software input method (e.g., implemented as a COM object) has a defined interface set that makes it pluggable into the management component (12:18-24).

Ex. H at MOTM_WASH1823_0050832; *see also* Ex. HH at MOTM_WASH1823_0050072 ("User input to the computer is received by a selected input method that is loaded by a communication manager.").  In this circumstance, where the patent discloses a single structure as performing the "invoking" step, the use of the term "e.g.," amounts to an express definition. *See Sinorgchem Co., Shandong v. Int'l Trade Comm'n*, 511 F.3d 1132, 1138 (Fed. Cir. 2007) (adopting the definition of a term defined by the use of "e.g.").  Further, where the intrinsic evidence discloses a management component as the only structure performing the "invoking" step, and the management component is described as fundamental to the invention itself, the term "invoking" must include the management component limitation.  *See Biogen, Inc. v. Berlex Labs. Inc.*, 318 F.3d 1132, 1139 (Fed. Cir. 2003) ("[W]hen the preferred embodiment is described in the specification as the invention itself, the claims are not necessarily entitled to a scope broader than that embodiment[.]") (quoting *Modine Mfg. Co. v. Int'l Trade Comm'n*, 75 F.3d 1545, 1551 (Fed. Cir. 1996)).  Here, if there is an invention, it necessarily includes the management component.

### 6.    "interface"

| Claim Term For Construction | Proposed Constructions |
|---|---|
| "interface" ('582 Patent, Claims 3, 11, 27) | **Motorola –** A defined set of methods and data that allow for communication with a COM object. |
| | **Microsoft** – No construction needed; if the term needs to be construed it should be given its plain and ordinary meaning. Alternatively, the term should be construed as follows: The point at which a connection is made between two elements so that they can work with each other or exchange information. |

The Court should reject Microsoft's contentions that "interface" does not require construction, or that the plain and ordinary meaning applies.  This claim term requires

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

construction because it relates to software programming in the context of the patent and would not have a plain and ordinary meaning to a lay jury.

Motorola contends that the claimed "interface" requires communication via a COM object.  In lay terms, a COM object is software that has certain properties that can be set or reviewed, and can also perform certain functions when instructed to do so.  This set of properties and functions is available to other programs via the COM object's interface.

Claim 27 shows an exemplary use of the term "interface" in the claims:

> 27. The system of claim 19 wherein the selected input method calls functions in the manager component via a defined **interface** set.

As set forth in the claim and illustrated in Figure 2 below, input methods communicate with the manager component (SIP Manager 58) via IIMCallback 61 and IInputmethod 63:



The specification explains that IIMCallback 61 and IInputmethod 63 are COM object interfaces that allow communication between the input method and the SIP manager:

> In a preferred embodiment, each of the input methods communicates with the SIP manager 58 **through a COM (Component Object Model)** interface shown as IIMCallback 61 and IInputmethod 63.

Ex. E at 5:14-17; *see also id.* at 5:14-20, 5:44-47, 7:1-2, 7:5-11, 10:1-25, 12:36-65.

Other than using a COM object, the specification mentions no other method of communication between input methods and the SIP Manager.  Motorola acknowledges that the

MOTOROLA'S OPENING CLAIM
CONSTRUCTION BRIEF - 23

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

patent does use the phrase "preferably" and "in the preferred embodiment" in describing the use of COM objects.  But courts have limited claims where – as here – the specification discloses a single embodiment and repeatedly describes that single embodiment as the invention and as performing the claimed function.  *See Felix v. Am. Honda Motor Co., Inc.*, 562 F.3d 1167, 1178-79 (Fed. Cir. 2009) (construing a phrase as being limited to an embodiment disclosed in the specification where it was justified by the context and repeated use of the phrase in the specification).  The exclusive disclosure of COM object interfaces in the '582 Patent specification reflects a clear description of what the inventors understood to be their invention.  *See Biogen*, 318 F.3d at 1140 (claims cannot "enlarge what is patented beyond what the inventor has described as the invention").  Motorola's construction properly reflects the inventors' intent, and should therefore be adopted.

Microsoft's proposed construction is a generic definition divorced from any of the teachings of the '582 Patent.  Because Microsoft's construction is overly broad and without support in the '582 Patent's specification, claims, or prosecution history, it should be rejected.


DATED this 30th day of March, 2012.


SUMMIT LAW GROUP PLLC


By */s/ Ralph H. Palumbo*
    Ralph H. Palumbo, WSBA #04751
    Philip S. McCune, WSBA #21081
    Lynn M. Engel, WSBA #21934
    *ralphp@summitlaw.com*
    *philm@summitlaw.com*
    *lynne@summitlaw.com*

**MOTOROLA'S OPENING CLAIM
CONSTRUCTION BRIEF - 24**

By /s/ K. McNeill Taylor, Jr.
  K. McNeill Taylor, Jr.
  MOTOROLA MOBILITY, INC.
  MD W4-150
  600 North U.S. Highway 45
  Libertyville, IL 60048-1286
  Phone: 858-404-3580

And by

  Jesse J. Jenner (*pro hac vice*)
  Steven Pepe (*pro hac vice*)
  Stuart W. Yothers (*pro hac vice*)
  Ropes & Gray LLP
  1211 Avenue of the Americas
  New York, NY  10036-8704
  (212) 596-9046
  *jesse.jenner@ropesgray.com*
  *steven.pepe@ropesgray.com*
  *stuart.yothers@ropesgray.com*

  Norman H. Beamer (*pro hac vice*)
  Gabrielle E. Higgins (*pro hac vice*)
  Ropes & Gray LLP
  1900 University Avenue, 6th Floor
  East Palo Alto, CA  94303-2284
  (650) 617-4030
  *norman.beamer@ropesgray.com*
  *gabrielle.higgins@ropesgray.com*

  Paul M. Schoenhard (*pro hac vice*)
  Kevin J. Post (*pro hac vice*)
  Ropes & Gray LLP
  One Metro Center
  700 12th Street NW, Suite 900
  Washington, DC  20005-3948
  (202) 508-4693
  *paul.schoenhard.@ropesgray.com*
  *kevin.post@ropesgray.com*

  ***Attorneys for Motorola Solutions, Inc.,
  Motorola Mobility, Inc., and General
  Instrument Corp.***

**MOTOROLA'S OPENING CLAIM
CONSTRUCTION BRIEF - 25**

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Arthur W. Harrigan, Jr., Esq.
Christopher T. Wion, Esq.
Shane P. Cramer, Esq.
Danielson, Harrigan, Leyh & Tollefson LLP
*arthurh@dhlt.com*
*chrisw@dhlt.com*
*shanec@dhlt.com*

Brian R. Nester, Esq.
David T. Pritikin, Esq.
Douglas I. Lewis, Esq.
John W. McBride, Esq.
Richard A. Cederoth, Esq.
David Greenfield, Esq.
William H. Baumgartner, Jr., Esq.
David C. Giardina, Esq.
Carter G. Phillips, Esq.
Constantine L. Trela, Jr., Esq.
Ellen S. Robbins, Esq.
Sidley Austin LLP
*bnester@sidley.com*
*dpritikin@sidley.com*
*dilewis@sidley.com*
*jwmcbride@sidley.com*
*rcederoth@sidley.com*
*david.greenfield@sidley.com*
*wbaumgartner@sidley.com*
*dgiardina@sidley.com*
*cphillips@sidley.com*
*ctrela@sidley.com*
*erobbins@sidley.com*

T. Andrew Culbert, Esq.
David E. Killough, Esq.
Microsoft Corp.
*andycu@microsoft.com*
*davkill@microsoft.com*

DATED this 30th day of March, 2012.

/s/ *Marcia A. Ripley*
_____
Marcia A. Ripley

**MOTOROLA'S OPENING CLAIM
CONSTRUCTION BRIEF - 26**

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001