1

The Honorable James L. Robart

2

3

4

5

6          UNITED STATES DISTRICT COURT
      FOR THE WESTERN DISTRICT OF WASHINGTON
7                    AT SEATTLE

8   MICROSOFT CORPORATION, a Washington
    corporation,
9
                                          CASE NO. C10-1823-JLR
10                       Plaintiff,
                                          DEFENDANTS' MOTION FOR
11            v.                          PARTIAL SUMMARY JUDGMENT

12  MOTOROLA, INC., MOTOROLA              **NOTE ON MOTION CALENDAR:**
    MOBILITY, INC., and GENERAL           **Friday, May 7, 2012**
13  INSTRUMENT CORPORATION,
                                          **ORAL ARGUMENT REQUESTED**
14                       Defendants.
                                          **REDACTED**
15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

# TABLE OF CONTENTS

Page(s)

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 3

     A.     Motorola's Longstanding Essential Patent Licensing Program ............................. 3

     B.     Motorola's Relationship With Microsoft ................................................................ 5

     C.     The SSO Licensing Policies For Essential Patents ................................................ 9

III.   ARGUMENT ..................................................................................................... 10

     A.     The Law Of The State Of Washington Is Applicable To This Motion ................ 11

     B.     Motorola's RAND Assurances Are Subject To The Conditions That A
           Potential Licensee Apply And Negotiate In Good Faith For A RAND
           License ................................................................................................................ 12

         1.     The Law Relating To Contract Interpretation ............................................ 12

         2.     Motorola's Contractual Commitments with IEEE and ITU, and
              Microsoft's Status as a Third Party Beneficiary ...................................... 14

         3.     RAND Assurances Are Triggered By A Request From An
              Applicant .................................................................................................. 15

         4.     RAND Obligations Also Are Conditioned On The Applicant
              Negotiating In Good Faith ........................................................................ 16

     C.     Motorola Does Not Owe Any Duty, and Thus There Can Be No Breach,
           Because Microsoft Failed to Satisfy The Conditions Precedent ........................... 19

     D.     Microsoft Has Repudiated Any Right It Had to a RAND License ....................... 21

IV.   CONCLUSION ................................................................................................. 24

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - i
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1

2

**TABLE OF AUTHORITIES**

3

Page(s)

4

CASES

5

*A.G. Design & Assocs., LLC v. Trainman Lantern Co.*,
   No. C07-5158, 2009 WL 168544 (W.D. Wash. Jan. 23, 2009)...............................................23

6

*Berg v. Hudesman*,
   115 Wash. 2d 657 (1990).................................................................................................12

7

*CHG Int'l, Inc. v. Robin Lee, Inc.*,
   35 Wash. App. 512, 667 P.2d 1127 (Ct. App. 1983)......................................................17, 19

8

9

*City of Tacoma v. Clear Channel Outdoor, Inc.*,
   No. C11-5747, 2011 WL 6055507 (W.D. Wash. Dec. 5, 2011)..........................................19

10

11

*Denton v. BP W. Coast Prods., LLC*,
   No. C09-1344-JCC, 2011 WL 1883805 (W.D. Wash. May 17, 2011) ...............................10

12

*Erwin v. Cotter Health Ctrs., Inc.*,
   161 Wash. 2d 676 (2007).................................................................................................11

13

14

*Fid. & Deposit Co. of Md. v. Dally*,
   148 Wash. App. 739 (Wash. Ct. App. 2009) ....................................................................20

15

16

*Fluke Corp. v. Hartford Accident & Indemnity Co.*,
   102 Wash. App. 237 (App. Div. 1 2000) ..........................................................................11

17

*Franklin Research & Devel. Corp. v. Swift Elec. Supply Co.*,
   236 F. Supp. 992 (S.D.N.Y. 1964) ..................................................................................19

18

19

*G Vincent Ltd. v. Dux Area Inc.*,
   2011 WL 62136 (W.D. Wash. Jan. 6, 2011)......................................................................12

20

21

*Global Horizons, Inc. v. Dept. of Labor & Indus.*,
   No. 38211-3-II, 2010 WL 3639917 (Wash. App. Div. II 2010)..........................................13

22

*Hadaller v. Port of Chehalis*,
   97 Wash. App. 750, 986 P.2d 836 (1999)...........................................................................19

23

24

*Hearst Commc'ns, Inc. v. Seattle Times Co.*,
   154 Wash. 2d 493 (2005)..................................................................................................12

25

26

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - ii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

*Kaplan v. Gridpoint, Inc.*,
    2010 WL 890069 (W.D. Wash. 2010) ...................................................................13

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941) ............................................................................................11

*Partlow v. Mathews*,
    43 Wash.2d 398, 261 P.2d 394 (1953) ...............................................................19

*Ritchie v. Fed. Express Corp.*,
    No. C04-1753L, 2007 WL 1140260 (W.D. Wash. Apr. 16, 2007) .....................20

*SABA North America, LLC v. Bossardet*,
    No. C09-0899, 2010 WL 2028087 (W.D. Wash. May 18, 2010) .......................10

*Satomi Owners Ass'n v. Satomi, LLC*,
    167 Wash.2d 781 (2009) .....................................................................................14

*Seizer v. Sessions*,
    132 Wash.2d 642 (Wash. 1997) ........................................................................11

*Staples v. Allstate Ins. Co.*,
    No. 64816-1-I, 2011 WL 1896217 (Wash. Ct. App. May 16, 2011) ..................20

*Timeline, Inc. v. Proclarity Corp.*,
    No. C05-1013, 2007 WL 1574069 (W.D. Wash. May 29, 2007) ......................13

*W. Wash. Corp. of Seventh-Day Adventists v. Ferrellgas, Inc.*,
    102 Wash. App. 488 (Wash. Ct. App. 2000) ....................................................14

*Walter Implement, Inc. v. Focht*,
    107 Wash.2d 553 (1987) .....................................................................................19

*Wash. St. Republican Party v. Wash. State Grange*,
    Nos. 11–35122, -124, -125, 2012 WL 149475 (9th Cir. Jan. 19, 2012) ...............13

OTHER AUTHORITIES

3A Corbin, Contracts § 628 ...........................................................................................19

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Pursuant to Rule 56, Fed. R. Civ. P., and pursuant to leave granted in the Court's February 27, 2011 Order (D.I. 188), defendants (collectively "Motorola") respectfully move for partial summary judgment that Microsoft has repudiated any benefits it may have had as a beneficiary of Motorola's promises because: (1) Motorola did not breach any contractual obligation or promise arising out of assurances made to the Institute of Electrical and Electronics Engineers (IEEE), or to the International Telecommunication Union (ITU), that Motorola would make licenses to standards-essential patents available to willing applicants on reasonable and non-discriminatory (RAND) terms[1] and (2) as a consequence of this determination and Microsoft's related behavior, Motorola no longer owes any RAND obligation to Microsoft.

## I.    INTRODUCTION

After Microsoft's surprise filing of its October 1, 2010 complaints in the International Trade Commission and in this Court, ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████

Motorola did just that.  On October 21 and October 29, 2010, Motorola sent letters offering to Microsoft licenses to Motorola's substantial 802.11 and H.264 portfolios at Motorola's standard offer — a rate that Motorola had offered to dozens of companies since the mid-1990s.  Motorola sent those letters so that the parties — █████████████████████ ██████████████ — could engage in good-faith negotiations to strike a balanced license.

But those negotiations never happened.  Microsoft did not write back to Motorola. Microsoft did not call Motorola to discuss the letters or any issues it had with the offers.

---

[1]    As set forth in Defendants' September 23, 2011 Opposition To Microsoft's Motion For Partial Summary Judgment (Dkt. No. 90), the question of whether Motorola's October 2010 offer letters to Microsoft are RAND compliant cannot be resolved by summary judgment because of genuine issues of material fact.  As demonstrated in this motion, that question need not be reached under the proper construction of Motorola's contractual obligations.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    Microsoft did not apply for a license.  Instead, Microsoft turned, again, to litigation and sued

2    Motorola for breach of its RAND assurances.  ████████████████████████████████████████

3    ████████████████████████████████████████████████████████████████████████████████

4           Based on these few indisputable facts, summary judgment should be entered, dismissing

5    Microsoft's breach of contract and promissory estoppel claims against Motorola.  Pursuant to the

6    licensing policies of the IEEE and ITU standards organizations and Motorola's "Letters of

7    Assurance" (or "LOAs"), Motorola said it would grant RAND licenses to those who **apply** for

8    such a license.  This assurance is subject to the additional condition that the applicant **negotiates**

9    **in good faith** with Motorola to arrive at the terms for the license.  The facts stated above

10   demonstrate that Microsoft failed to satisfy these necessary conditions.

11          There is no genuine dispute that at the time Motorola sent its October 2010 offer letters to

12   Microsoft, Microsoft had not applied for a RAND license to Motorola's 802.11 and H.264

13   portfolios.  Because the SSO policies require an applicant to seek a license from a licensor,

14   Motorola seeks summary judgment that those October 2010 offer letters cannot form the basis of

15   a breach of contract or promissory estoppel claim.  In addition, because Microsoft refused to

16   negotiate in good faith with Motorola, but instead immediately brought this action, Motorola is

17   entitled to summary judgment that it had no further contractual duty to negotiate a RAND license

18   with Microsoft.  Finally, this Court should declare that Microsoft, by failing to satisfy the

19   conditions of applying for and negotiating for a RAND license, and instead commencing this

20   lawsuit, repudiated and forfeited any benefit it might otherwise have had under Motorola's

21   RAND assurances, and Motorola is thereby relieved of any further obligation to negotiate a

22   license with Microsoft on RAND terms.[2]

23

24

25   ────────────────────────────────
     [2]       This is not to say that the parties will not yet negotiate a resolution of this dispute.  ████████████
     ███████████████████████████████

26
     DEFENDANTS' MOTION FOR PARTIAL SUMMARY                    SUMMIT LAW GROUP PLLC
     JUDGMENT - 2                                              315 FIFTH AVENUE SOUTH, SUITE 1000
     CASE NO. C10-1823-JLR                                     SEATTLE, WASHINGTON 98104-2682
                                                               Telephone:  (206) 676-7000
                                                               Fax:  (206) 676-7001

## II.      BACKGROUND

### A.      Motorola's Longstanding Essential Patent Licensing Program

Motorola has been licensing its many essential-patent portfolios since the early 1990s. Motorola's licensing program has resulted in over ▉ essential patent licenses[3], including licenses over that time to ███████████████████████████████████████████ ████████████████████ among others.  Taylor Decl. ¶ 4[4]; Ex. 1 (Taylor Tr. 22:12 – 23:13, 102:23 – 104:12)[5]; Ex. 2 (Dailey Tr. 2584-86, 2577-79, 2586-89); Ex. 3 at 9-10.

Motorola negotiates its essential patent licenses pursuant to terms contained in Letters of Assurance submitted to various Standard Setting Organizations ("SSOs") in conformance with the SSOs' patent policies.  In these letters, Motorola undertakes to negotiate licenses in good faith on RAND terms to those who apply for such licenses.  This action involves the policies and procedures of two SSOs — the IEEE (for 802.11) and the ITU (for H.264).

Motorola's licensing program for its standard-essential patents has sought — and continues to seek —overall value for its portfolios ██████████████████████████████ ███████████████████      Taylor Decl. ¶ 4.  This rate accounts for (1) Motorola's substantial investment in research and development related to the patented technology being licensed, (2) the value of the licensed technology to the end user, and (3) licensing transaction costs.  *Id.*  In recognition of the value provided by Motorola's patented technology, dozens of companies have entered into licenses with Motorola that provide overall value ██████████████

All of Motorola's licensing agreements have resulted from bilateral negotiations.  Ex. 2 (Dailey Tr. 2611-12, 2625-30); Ex. 4 at 3.  Because each licensing situation is unique, negotiated license terms may reflect the █████████████████████████████████████████████

---

3      "Standard-essential patents" include one or more claims that are "necessary to create a compliant implementation of either mandatory or optional portions of the normative clauses of a [proposed] SSO Standard."

4      "Taylor Decl. ¶ __" refers to the stated paragraph of the Declaration of K. McNeill Taylor, Jr., submitted concurrently herewith.  In this brief, all emphasis is added, unless otherwise indicated

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 3
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  ████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████

3  ██████████████████████        Taylor Decl. ¶ 5.   Because Motorola receives varying

4  combinations of these elements in its licenses, the royalty rate ultimately agreed to after good-

5  faith negotiations is adjusted from ████████████████████████████████████. *Id.*

6  For example, ██████ agreed to pay ████████████████████████████

7  ████████ among others, (Ex. 2 (Dailey Tr. 2584-86); Ex. 4 at 16-19; Ex. 5 at 20), ████████

8  ████████████████████████████████████████████████████

9  ████████████████

10      At the time of an initial offer, Motorola typically does not have sufficient information

11  about a potential licensee to know how it will receive ████████████████████████████

12  ████████████████       Taylor Decl. ¶ 6.  For example, prior to entering into substantive licensing

13  negotiations, Motorola does not have a sufficient understanding of (1) the potential licensee's

14  standard-essential patents that could be the subject of a grant back license to Motorola and how

15  the licensee values those patents; (2) the licensee's business model, including costs and pricing

16  structure; (3) the licensee's projected sales; (4) the importance of the patented technology to the

17  licensee's products, and (5) any future product lines that the licensee is developing.   Not

18  surprisingly, this type of information can only be obtained through negotiations.  *Id.*

19      Because of this, Motorola opens negotiations with its standard offer — 2.25% of the net

20  selling price of licensed products, subject to a grant-back of rights under the licensee's essential

21  patents.  *Id.* at ¶ 7.  This has been Motorola's standard offer for over a decade, and it is common

22  knowledge in the industry.  *Id.*; Ex. 2 (Dailey Tr. 2611-12, 2625-30); Ex. 4 at 3, 27.  Motorola's

23  considerable licensing history confirms that Motorola's offer is reasonable and compliant with

24  RAND.  Taylor Decl. ¶ 7.  The parties use Motorola's standard offer as a starting point to engage

25  ────────────────────────────────────────────────────

26  [5] "Ex. ___" refers to the stated Exhibit to the Declaration of Kevin J. Post, submitted concurrently herewith.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    in good-faith, bilateral negotiations to determine acceptable terms and conditions for a final,

2    executed license that accounts for the unique circumstances of that particular licensing situation,

3    including, for example, the value of any essential patents of the licensee. *Id*. at ¶ 8.

4         These negotiations involve an exchange of confidential and proprietary information

5    (including information relating to the considerations set forth above) that allows the parties to

6    understand better each other's relative position and requirements. ████████████████

7    ████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████

9    ██████████████████████████████████████████████ Ex. 4 at 3-4,

10   24-27; Ex. 6 at 13, 15-16; Ex. 2 (Dailey Tr. 2593-2600, 2627-34).  Through this process, parties

11   identify suitable RAND terms for a license.

12        **B.      Motorola's Relationship With Microsoft**

13   ████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████

20   █████████████████████████████████████████████████

21        Based on considerations like these, companies sometimes choose not to engage each

22   other in licensing discussions, despite the fact that each is getting value from the other side's

23   patented technology.  *Id.*  For years, that was the case with Motorola and Microsoft. ██████

24   ████████████████████████████████████████████████████████████

25   ███████████████████████████ Ex. 1 (Taylor Tr. 157:8 – 159:5); Ex. 2 (Dailey

26

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 5
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Tr. 2494-95).

One reason Motorola and Microsoft maintained this détente was that, historically, they had collaborated to develop smartphones that utilized Microsoft's Windows Mobile operating system.   Ex. 1 (Taylor Tr. 157:18-24).   But because Windows Mobile was slow to evolve, Motorola began to work with Google to develop new devices based on Google's Android Operating System.   Unlike Windows Mobile, Android is "open source," meaning that its source code is freely available to the public without a license fee.   In late 2009, Motorola introduced its first Android-powered smartphone.   As the Windows Mobile platform continued its decline, and with the success of its Android-based phones, Motorola eventually transitioned to an Android-only product line.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████   Taylor Decl. ¶ 12, Ex. 2 (Dailey Tr. 2494).   This suit was filed just ten days prior to the launch of Microsoft's new mobile operating system — Windows Phone 7.   Two days later, Microsoft's CEO, Steve Ballmer, stated during an interview with the Wall Street Journal that:

> Android has a patent fee.  It's not like Android's free.  You do have to license patents.   HTC's [a maker of Android phones] signed a license with us and you're going to see license fees clearly for Android as well as for Windows.

Ex. 7.  The substance and timing of Mr. Ballmer's statements make plain Microsoft's motivation in suing Motorola — use litigation (and the threat of an injunction) to force Motorola and other implementers of Android to take a license under Microsoft's patents, thereby making the use of the Android platform more expensive and less attractive than Windows Phone 7.

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 6
CASE NO. C10-1823-JLR

1      After Microsoft filed its ITC action, ████████████████████████████

2  ████████████████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████████████

11 ████████████████   *see also* Taylor Decl. ¶ 13.

12 ████████████████████████████████████████████████████   Kirk Dailey (Motorola's

13 Corporate Vice President for Intellectual Property) sent two letters to Microsoft's Deputy

14 General Counsel, Horacio Gutiérrez, in October 2010, offering to license Motorola's 802.11 and

15 H.264 patent portfolios on Motorola's standard terms.[6] Taylor Decl. ¶ 14; Exs. 8, 9.  Microsoft's

16 Xbox 360 console makes use of the 802.11 and H.264 standards, and thus, Motorola's patented

17 technology.  Indeed, Microsoft has acknowledged that it knew Motorola had relevant essential

18 patents. (Dkt. No. 53, ¶¶ 3, 7, 56-58, 60-63, 91.)  Despite knowing for years about these patents,

19 Microsoft had never applied to Motorola for a license to Motorola's essential patents.

20     In the letters, Motorola made clear that if Microsoft was only interested in licensing a

21 portion of the portfolios, Motorola was willing to have such a discussion.  Exs. 8, 9.  In addition,

22 consistent with its standard patent license offer, Motorola's offers were also made "subject to a

23 grant back license…." which would have needed to be negotiated.  Thus, Microsoft was

24

25   [6] █████████████████████████████████████████████████████████████

26 ██████████████

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

encouraged to provide a counter-proposal or offer a license for its own essential patent technology, such that any ultimate rate in the license would be the product of bilateral negotiations and reflect the value of both Motorola's and Microsoft's intellectual property. Ex. 4 at 27. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████.[7]  Taylor Decl. ¶ 15.

But Microsoft did not make any effort to negotiate. It did not contact Motorola to discuss the letters, or any issues that it may have had with the terms. Nor did Microsoft make a counter-proposal. In fact, Microsoft did **nothing** to indicate that it wanted to negotiate. Instead, Microsoft did the opposite — on November 9, it, again, chose the litigation path and filed its complaint in this action claiming that Motorola had breached its RAND obligations. ████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████

Faced with this outright rejection of its offer and Microsoft's refusal to negotiate in good faith, Motorola had no choice but to respond by filing its own action to protect itself. On November 10, Motorola filed district court actions, alleging infringement of certain essential and non-essential patents. Then, on November 22, Motorola filed suit in the ITC (Investigation No. 337-TA-752), alleging infringement of certain 802.11 and H.264 patents by Microsoft's Xbox

---

[7] ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 8
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

360 consoles and related software.  Over the next several months, the parties' dispute escalated, with additional claims in Wisconsin and Florida.  All but one of those district court actions were ultimately transferred at Microsoft's request to this Court.

C.      The SSO Licensing Policies For Essential Patents

Generally, SSOs decide what technologies to use in a new standard through meetings involving technical representatives from the various members of the SSO.  Ex. 10 at 7-8.  Often, many SSO members have patents or patent applications that relate to the technology under consideration.  *Id*.  In this situation, SSOs seek to balance the interests of patent holders with the interests of implementers of the standard.  *Id*. at 5, 15-16; *see also* Ex. 11 (Teece Tr. 2703-04).  Here, both the IEEE and ITU have instituted patent policies encouraging patent holders to identify their essential patents and make them available for license to all implementers on reasonable terms.[8]  Ex. 10 at 9-10; Ex. 12 at 15; Ex. 13 at 8.

For example, as required by the IEEE's policy, essential patent holders may submit an LOA, declaring the patent holder's licensing intentions.  Ex. 12 at 15.  The patent holder can submit an LOA with four possible options.  Three of the options are that it (i) will grant a license "without compensation" to all applicants; (ii) "will not enforce" its patents against firms implementing the proposed standard, or (iii) will not grant licenses.  *Id*.  A fourth option is to:

> "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide, non-discriminatory basis with reasonable terms and conditions…."[9]

████████████████████████████████████  Taylor Decl. ¶ 16.

[8]      SSOs, however, make clear that they take no position on what constitutes a "reasonable term."  Ex. 10 at 9; Ex. 13 at 8; Ex. 14 at 13.  This is left to the parties for negotiation.  *Id*.

[9]      The IEEE Bylaws articulate this option as providing:

A statement that a license for a compliant implementation of the standard will be made available to an unrestricted number of applicants on a worldwide basis … under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination.

Ex. 12 at 15.

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 9
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

*Id.*   The ITU has essentially the same policy (except the "no enforcement" option is not included), which provides for a patent holder to grant RAND licenses to applicants:[10]

> The Patent Holder is prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to make, use and sell implementations of the [standard].

*See, e.g.*, Ex. 13 at 11; Ex. 10 at 10.[11]

    As discussed above, pursuant to these policies, Motorola has submitted LOAs related to the 802.11 and H.264 standards.  In each such LOA, Motorola selected the option that it would grant RAND licenses to those who apply.  *See, e.g.*, Ex. 15; Ex. 16; Ex. 10 at 12-13.

## III.   ARGUMENT

    Under the proper construction of Motorola's RAND assurances, neither Microsoft's breach of contract action nor its promissory estoppel action can survive summary judgment due to Microsoft's repudiation of the assurances, i.e., its failure to satisfy the conditions necessary to obtain a RAND license and its outright repudiation of its right to a RAND license.   As demonstrated below, there are no genuine issues of material fact that prevent dismissal of Microsoft's claims as a matter of law.

    "The summary judgment procedure, which is authorized by Rule 56 of the Federal Rules of Civil Procedure, provides 'a method for promptly disposing of actions in which there is no genuine issue as to any material fact, or in which only a question of law is involved.'"   *Denton v. BP W. Coast Prods., LLC*, No. C09-1344-JCC, 2011 WL 1883805, at *2 (W.D. Wash. May 17, 2011) (quoting Wright & Miller, <u>Federal Practice and Procedure: Civil 3d</u> § 2712); *SABA North America, LLC v. Bossardet*, No. C09-0899, 2010 WL 2028087, *4 (W.D. Wash. May 18, 2010) (J. Robart) ("Summary judgment is appropriate if 'the pleadings, the discovery and disclosure

---

[10]    The IEEE uses the term "letter of assurance" while the ITU uses the term "patent statement and licensing declaration," but these documents are substantially the same.  For convenience, both are referred to herein as "letters of assurance" or "LOAs."

[11]    The ITU "Common Patent Policy" articulates this option as: "The Patent Holder is willing to negotiate licenses with other parties on a non-discriminatory basis on reasonable terms and conditions."  Ex. 13 at 8.

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 10
CASE NO. C10-1823-JLR

Summit Law Group PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

materials on file, and any affidavits,' when viewed in the light most favorable to the non-moving party, 'show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'") (citing Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007)).

### A. The Law Of The State Of Washington Is Applicable To This Motion

As this Court has observed, in deciding this motion, a threshold question is whether the contract law of the State of Washington, or that of some other jurisdiction, controls here. February 27, 2012 Order, D.I. 188 at 13.  The starting point of this analysis is to apply Washington State's choice of law principles.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

Under the Washington State choice of law authorities, there must be an "actual conflict between the laws or interests of Washington and the laws or interests of another state before Washington courts will engage in a conflict of laws analysis." *Erwin v. Cotter Health Ctrs., Inc.*, 161 Wash. 2d 676, 692 (2007)).  An actual conflict exists "[w]hen the result of the issues is different under the law of the two states." *Seizer v. Sessions*, 132 Wash. 2d 642, 648 (Wash. 1997); *Fluke Corp. v. Hartford Accident & Indemnity Co.*, 102 Wash. App. 237, 248 (App. Div. 1 2000).  In determining whether an actual conflict exists, the relevant jurisdictions' laws on the relevant topic may be analyzed. *Cf. Seizer*, 132 Wash. 2d at 649-50, *with Fluke*, 102 Wash. App. at 245-48.  If no actual conflict of states' laws exists, "the presumptive local law is applied" — *i.e.*, Washington's.  *Seizer*, 132 Wash. 2d at 648-49.

There are several jurisdictions relevant to the issues raised here.  The IEEE Standards Association (the 802.11 SSO) is located in New Jersey, which is where Motorola's LOAs were sent and recorded. Ex. 16.  The parent IEEE organization, however, is located in New York.  Ex. 12 at 1.  Further complicating this, the LOAs were executed by Motorola employees in Illinois (for Symbol Technologies, later acquired by Motorola, execution of 802.11 LOAs took place in

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

New York).  Ex. 16.  The corresponding jurisdictions for the H.264 standard are Switzerland (the location of the ITU) and Illinois or Pennsylvania (where the LOAs were executed).  Ex. 13 at 10; Ex. 15.

As presently advised, Motorola believes there are no significant differences in the laws of these various jurisdictions that, compared to Washington laws, are outcome determinative.  Nor is Motorola aware that Microsoft maintains that the law of some jurisdiction other than Washington applies to this case.  Therefore, Motorola submits that the laws of the State of Washington are applicable to this motion.

### B.      Motorola's RAND Assurances Are Subject To The Conditions That A Potential Licensee Apply And Negotiate In Good Faith For A RAND License

Under the pertinent LOAs, Motorola promises to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide, non-discriminatory basis with [or on] reasonable terms and conditions."  Exs. 15, 16.  Motorola submits that this assurance can — and should — be construed to confirm that Motorola's assurance is subject to the condition that the applicant negotiate for the RAND license in good faith.

### 1.      The Law Relating To Contract Interpretation

Under Washington law, the first goal of contract interpretation is to determine the intent of the parties.  *Berg v. Hudesman*, 115 Wash. 2d 657, 663 (1990).  In doing so, the Court generally will "give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent."  *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wash. 2d 493, 503-04 (2005).   Washington also follows the "context rule" — meaning that the Court can look to extrinsic evidence for determining mutual intent of the parties, even in the absence of ambiguity.  *Berg*, 115 Wash. 2d at 667-68; *G Vincent Ltd. v. Dux Area Inc.*, 2011 WL 62136, at *3 (W.D. Wash. Jan. 6, 2011).

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 12
CASE NO. C10-1823-JLR

"Under the context rule, extrinsic evidence is admissible to assist the court in ascertaining the parties['] intent and in interpreting the contract.  The court may consider (1) the subject matter and objective of the contract, (2) the circumstances surrounding the making of the contract, (3) the subsequent conduct of the parties to the contract, (4) the reasonableness of the parties' respective interpretations, (5) statements made by the parties in preliminary negotiations, (6) usages of trade, and (7) the course of dealing between the parties.  Such evidence is admissible regardless of whether the contract language is deemed ambiguous, though [e]xtrinsic evidence cannot be considered: (a) to show a party's unilateral or subjective intent as to the meaning of a contract word or term; (b) to show an intention independent of the instrument; or (c) to vary, contradict, or modify the written word."  *Wash. St. Republican Party v. Wash. State Grange*, Nos. 11–35122, -124, -125, 2012 WL 149475, at *9 (9th Cir. Jan. 19, 2012) (quoting *Spectrum Glass Co. v. Pub. Util. Dist. No. 1*, 129 Wash. App. 303, 119 P.3d 854, 858 (Ct. App. 2005)) (internal citations and quotations omitted).  *See, e.g.*, *Timeline, Inc. v. Proclarity Corp.*, No. C05-1013, 2007 WL 1574069, at *7 (W.D. Wash. May 29, 2007) (J. Robart) (considering evidence such as trade usage and course of performance even in the absence of ambiguity).

Resorting to extrinsic evidence does not bar summary judgment on contract interpretation if, as is the case here, "a sole reasonable inference can be drawn from the extrinsic evidence." *Global Horizons, Inc. v. Dept. of Labor & Indus.*, No. 38211-3-II, 2010 WL 3639917, at *4 (Wash. App. Div. II 2010) (citation omitted); *Kaplan v. Gridpoint, Inc.*, 2010 WL 890069, at *4 (W.D. Wash. 2010) (J. Robart).

Here, Motorola's assurances, together with admissible extrinsic evidence, establish that Motorola's undertaking to grant licenses on reasonable and non-discriminatory terms is subject to the condition that potential licensees (1) apply for a RAND license, and (2) negotiate the RAND terms and conditions of the license in good faith with the licensor.  Thus, in order for

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 13
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Microsoft to take advantage of its status as a third party beneficiary of the contract, it must apply for a RAND license and negotiate the terms of that license with Motorola in good faith.

### 2. Motorola's Contractual Commitments with IEEE and ITU

The Court has held "that (1) Motorola entered into binding contractual commitments with the IEEE and the ITU, committing to license its declared-essential patents on RAND terms and conditions; and (2) that Microsoft is a third-party beneficiary of Motorola's commitments to the IEEE and the ITU."  Order Re Microsoft's Partial Summary Judgment Motion.  (Dkt. No. 188 at 17.)  The contract between Motorola and each SSO is not a typical bilateral contract in the sense that there is no document signed by both parties that states the rights and duties of the parties. Instead, each SSO has a patent policy which requires any member participating in the setting of a standard to submit an LOA (using a contract form established by the SSO) identifying any essential patents that relate to the standard, and disclosing its licensing policy for those patents.

As discussed above, one of the licensing policy options set out in the form LOA provides for the patentee to enter into a unilateral assurance, whereby the patentee undertakes to grant RAND licenses to all applicants.  In addition, the LOAs incorporate by reference the IEEE and ITU Patent Policies.  *See, e.g.*, Ex. 16 at 2 ("In accordance with Clause 6 of the IEEE-SA Standards Board Bylaws …"); Ex. 15 at 2 ("[I]n accordance with the Common Patent Policy for ITU-T/ITU-R/ISO/IEC …").   Therefore, these documents form part of the "contract."[12] Accordingly, the legal interpretation of Motorola's assurances is informed by the language of the LOAs and the SSO's policy —which together objectively manifest Motorola's intent in

---

[12]    *Satomi Owners Ass'n v. Satomi, LLC*, 167 Wash. 2d 781, 801 (2009); *W. Wash. Corp. of Seventh-Day Adventists v. Ferrellgas, Inc.*, 102 Wash. App. 488, 492, 495 (Wash. Ct. App. 2000) (holding that the contract "clearly and unequivocally incorporate[d]" documents by reference where the contract stated that work would be done "in accordance with the Project Contract Documents").  *See, e.g.*, *W. Wash. Corp.*, 102 Wash. App. at 492, 495 (incorporation by reference where contract specified that the work would be done "in accordance with the Project Contract Documents").

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 14
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

providing the assurances (and the SSO's intent in providing for such assurances) and are evidence of the subject matter and objective of the contract.[13]

### 3.    RAND Assurances Are Triggered By A Request From An Applicant

The Letters of Assurance and patent policies establish that only applicants are entitled to benefit from a RAND assurance.  The IEEE LOAs provide that Motorola "agrees to grant a license under reasonable rates to an unrestricted number of **applicants** with [or on] a worldwide, non-discriminatory basis with reasonable terms and conditions."  *See* section 2.C., *supra*. Similarly, the IEEE Policy provides that a LOA must include a "(2) statement that a license for a compliant implementation of the standard will be made available to an unrestricted number of **applicants** on a worldwide basis."  Ex. 12 at 15.  The IEEE Bylaws reiterate that "a license for a compliant implementation of the standard will be made available to an unrestricted number of **applicants**…."  *Id*.  And the ITU's "Guidelines For Implementation Of The Common Patent Policy" describe the process by which **potential licensees "may wish to contact** the entities who have communicated [LOAs] to the [ITU] in order to determine if patent licenses must be obtained…." Ex. 13 at 5.

The plain language of the IEEE and ITU Policies and Motorola's conforming LOAs establish that the parties (Motorola and the IEEE or ITU, respectively) intend that a RAND licensing obligation is triggered only upon a request from an "applicant."  Had the parties intended that Motorola provide RAND licenses to all implementers of the standard, even those implementers who had not "appli[ed]," the policies and LOAs would have said as much.

Richard J. Holleman, former IEEE Standards Board Chairman and President and CEO of the IEEE-ISTO with over 40 years experience with standards, confirms that the RAND assurance is only triggered when there is an applicant that makes a request for a license:[14]

---

[13]    Even if the SSO patent policies were not deemed to be part of the contract terms, they are part of the relevant extrinsic evidence that objectively manifests the intent of the parties and evidences the subject matter and objective of the contract and the circumstances under which the contract was made.

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 15
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001



Ex. 10 at 10.

### 4.    RAND Obligations Also Are Conditioned On The Applicant Negotiating In Good Faith

Even more important, the IEEE and ITU Policies and Motorola's conforming LOAs also establish that Motorola's assurances are conditioned on the applicant negotiating RAND terms in good faith.  The IEEE LOA specifies that "No license is implied by submission of this Letter of Assurance."  *See, e.g.*, Ex. 16 at 1, 2, 6; Ex. 10 at 8, 12-13.  The ITU's LOAs similarly state that they do "not represent an implied license grant" and do "not represent an actual grant of a license."  *See, e.g.*, 15 at 1, 5..  In addition, the ITU LOAs explicitly state that "*[n]egotiations* are left to the parties concerned and are performed outside the ITU."  *Id*. at 2. The clear implication of these statements is that any RAND license must flow from a negotiation between the parties that results in RAND terms.

Furthermore, the IEEE and ITU Policies clearly state that RAND licenses must be negotiated.  For example, the ITU's Common Patent Policy confirms the LOA's language that "*negotiations* are left to the parties," stating that "The Patent Holder is willing to *negotiate* licenses with other parties…." and that "The detailed arrangements arising from patents (licensing, royalties, etc.) *are left to the parties concerned*, as these arrangements might *differ from case to case*."  Ex. 13 at 8.  And the Standards Board Bylaws for the IEEE state that "The IEEE is not responsible … for determining whether any licensing terms or conditions provided in connection with submission of a Letter of Assurance, if any, or [if] any licensing agreements are

---

[14]    Mr. Holleman's testimony is admissible extrinsic evidence of the usage of trade and the course of dealing with the SSOs, patent holders and prospective licensees.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

reasonable or non-discriminatory" — *i.e., the parties themselves must negotiate* a RAND rate. Ex. 12 at 16.   These documents, incorporated by reference into the LOAs, establish that Motorola's assurances are conditioned on the applicant's willingness to negotiate.  Imposing the condition to negotiate implies that such negotiations be carried out in good faith.  *CHG Int'l, Inc. v. Robin Lee, Inc.*, 35 Wash. App. 512, 667 P.2d 1127 (Ct. App. 1983) ("Each party has an affirmative good faith obligation to perform conditions precedent to a contract").

The extrinsic evidence demonstrates that it is well understood — including by Motorola with its decades of licensing experience, as well as by Microsoft — that RAND requires an application by the prospective licensee and good-faith, bilateral negotiations.  For example, the American Bar Association in its Standard Development Patent Policy Manual states:

> [RAND] licensing commitment[s are] often stated as an absolute (i.e., that the [patent owner] must grant the required licenses).  However, it is reasonable to require that such licenses be *granted only upon a request by a potential licensee* and *upon the conclusion of bilateral negotiations*.  It would be unreasonable for a [patent owner] to be required to seek out its own licenses in this context, or to extend offers before being requested to do so.

Ex. 17 at 49.

Similarly, Mr. Holleman also explained that ████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████ Ex. 10 at 9.

It is only in this lawsuit that Microsoft pretends it did not need to negotiate with Motorola – Microsoft itself acknowledged long before this litigation that RAND includes an obligation to negotiate in good faith.  Microsoft's General Manager of Standards Strategy, Amy Marasco, is listed on a July 16, 2008 Global Standard Collaboration presentation, which states:

> RAND/FRAND means licensor is prepared to negotiate in good faith to determine licensing terms *provided that counterparty also demonstrates good faith*.  'It takes two to make a license agreement':  all a patent owner can do is make a genuine, *bona fide* licensing offer

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 17
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Ex. 18 at 12 (emphasis in original).  Consistent with this, Ms. Marasco acknowledged that "[a] prospective implementer that has requested a license *will negotiate on a private bilateral basis with the patent owner to determine whether they can arrive at a mutually acceptable agreement on RAND terms*."  Ex. 19 at 8.  Similarly, in a June 14, 2011 submission to the FTC regarding a Patent Standards Workshop, Microsoft reiterated that:

> RAND-based IPR policies provide a *flexible framework* to help *enable customized bi-lateral negotiations for patent licenses* that generally are not limited to just the essential patent claims in connection with a standard.

Ex. 20 at 3; *see also id.* at 12.  Indeed, Michele Herman, former Associate General Counsel and Senior Director of IP at Microsoft, stated during a FTC workshop that "you need to look at the conduct of both the patent owner as well as the implementer.  They both need to be willing to negotiate in good faith" and that "there is an obligation on both parties' parts to negotiate in good faith . . .."  Ex. 21 at 207, 209.  In a recent two-part article, Ms. Herman confirmed that "although there is no specific definition of RAND, it is generally understood that the patentee and licensee will negotiate terms and conditions" and "patentees may not refuse to offer licenses under essential patent claims contained in such patents to licensees willing to negotiate in good faith."  Ex. 22 at 1; Ex. 23 at 1.[15]

Under the context rule for contract interpretation, the Court may also consider the reasonableness of the parties' respective interpretations.  Motorola submits that the only reasonable interpretation of the RAND obligation requires a patent holder to offer its patent portfolio on terms that it believes in good faith to be RAND and an applicant negotiate with the patent holder in good faith.  Thus, both parties are required to negotiate in good faith to

---

[15]    *See also* Ex. 24 at 11-14 (discussing FRAND and good faith negotiations); Ex. 25 at 5 ("FRAND means that royalty rates should be determined through fair, bilateral negotiations in accordance with market conditions.").

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 18
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  determine acceptable RAND terms to be incorporated into a completed license – no other

2  interpretation makes sense.   The RAND process only works if the parties negotiate in good faith.

3  **C.     Motorola Does Not Owe Any Duty, and Thus There Can Be No Breach,**
4  **Because Microsoft Failed to Satisfy The Conditions Precedent**

5           Motorola did not breach its RAND obligations because a condition precedent to this

6  obligation is that a potential licensee ***apply*** for a license and show a willingness to ***negotiate*** the

7  terms of that license ***in good faith***.   "Conditions precedent" are those facts and events, occurring

8  subsequently to the making of a valid contract, that must exist or occur before there is either a

9  right to immediate performance or a breach of contract duty.  3A Corbin, Contracts § 628, at 16;

10 *Partlow v. Mathews*, 43 Wash.2d 398, 261 P.2d 394 (1953); *City of Tacoma v. Clear Channel*

11 *Outdoor, Inc.*, No. C11-5747, 2011 WL 6055507, at *4 (W.D. Wash. Dec. 5, 2011).   When a

12 condition precedent is neither performed within the time allowed by the contract nor excused, the

13 promisor's contractual duties are discharged.   *CHG Intern., Inc. v. Robin Lee, Inc.*, 35 Wash.

14 App. 512, 515, 667 P.2d 1127 (1983); *Hadaller v. Port of Chehalis*, 97 Wash. App. 750, 757,

15 986 P.2d 836 (1999) (finding that nonoccurrence of a condition precedent excuses the promisee's

16 performance).

17          Whether a provision in a contract is a condition precedent "depends upon the intent of the

18 parties, to be ascertained from a fair and reasonable construction of the language used in the light

19 of all the surrounding circumstances."   *City of Tacoma*, 2011 WL 6055507, at *4; *see also*

20 *Franklin Research & Devel. Corp. v. Swift Elec. Supply Co.*, 236 F. Supp. 992, 1003 (S.D.N.Y.

21 1964).   The party seeking enforcement of the contract (Microsoft) has the burden of proving

22 performance of a condition precedent.   *See Walter Implement, Inc. v. Focht*, 107 Wash.2d 553,

23 557 (1987).

24          Here, the undisputed facts establish that Microsoft failed to satisfy conditions precedent

25 to any duty arising on the part of Motorola.   As discussed above, applying for a license and

26

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

negotiating in good faith were conditions precedent to Microsoft enforcing any contractual commitment as a third party beneficiary.  Microsoft plainly did neither.  It is undisputed that Microsoft did not apply for a license for Motorola's 802.11 and H.264 portfolio's before filing suit. And even if one assumes that Microsoft had sought a license under these portfolios, Microsoft flatly refused to participate in negotiations.

Microsoft never even gave negotiation a chance. ████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████   This is the antithesis of "good-faith negotiations." Based on these undisputed facts, Motorola's RAND obligations were not triggered prior to Microsoft filing this action, or amending its Complaint.[16]

Because Microsoft failed to satisfy the necessary conditions precedent of applying for, and entering into good-faith negotiations toward, a RAND license, Motorola did not have any duty to offer such a license and, therefore, could not have breached any contractual obligation. Thus, partial summary judgment in Motorola's favor is proper.  *See Fid. & Deposit Co. of Md. v. Dally*, 148 Wash. App. 739, 745-746 (2009) ("As there was no duty, there can be no breach or resulting damages.  Summary judgment on the contract claim was proper."); *see also Staples v. Allstate Ins. Co.*, No. 64816-1-I, 2011 WL 1896217 (Wash. Ct. App. May 16, 2011) (upholding grant of summary judgment dismissing claims for breach of contract where plaintiff failed to satisfy a condition precedent).[17]

---

[16]     Moreover, when Motorola filed its subsequent patent infringement actions against Microsoft, Microsoft still had not applied for a license, had continued to reject Motorola's October 2010 offers, and had not asked for — or participated in — any negotiations for a license.  Indeed, the prayer for relief in Microsoft's complaint does not even request a license.  Therefore, the fact that Motorola necessarily commenced patent infringement actions against Microsoft cannot be a breach of contract or violation of a promise.  As demonstrated in the next section, under circumstances such as are present here, it is not a violation of RAND obligations to bring a patent infringement suit against an applicant that is engaged in negotiations.

[17]     If the Court enters partial summary judgment dismissing Microsoft's breach of contract claim, dismissal of the promissory estoppel claim follows as a matter of course.  *Ritchie v. Fed. Express Corp.*, No. C04-1753L, 2007 WL 1140260, at *9 n.4 (W.D. Wash. Apr. 16, 2007) ("Washington courts treat claims for promissory estoppel and

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 20
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### D.       Microsoft Has Repudiated Any Right It Had to a RAND License

Any reasonable interpretation of Motorola's RAND obligations must allow for enforcement of its essential patent rights in circumstances where, as here, an implementer of a standard fails (for years) to apply for a license, claims that it does not need a license, is unwilling to engage in good faith license negotiations, and instead sues the patentee.  Such behavior not only fails to satisfy the condition precedent to Motorola's RAND obligations — it also is a repudiation on the part of the potential licensee of any benefit that it otherwise would have enjoyed pursuant to Motorola's RAND assurances.

Under such circumstances, no RAND assurance remains as to Microsoft, and the patent holder must be free to pursue available remedies.  Ex. 10 at 10, 15.  Indeed, nothing in the SSO Policies requires a patent holder to indefinitely tolerate infringement by a party that refuses to negotiate for a license.  *Id*. at 6, 11-12, 15.  If a potential licensee is practicing a patented invention and does not have a license under that patent or is not willing to negotiate in good faith, then that party is an infringer.  The patent holder is free to bring an infringement action and seek all remedies.[18]  This is consistent with the SSOs' Policies of balancing the interests of implementers and patent holders.  *Id*. at 5.  As stated by the American Bar Association, "an Implementer should not have the ability to wait until the last minute to demand a license…."  Ex. 17 at 49-50.

In its Reply in support of its first Motion For Partial Summary Judgment, Microsoft contends that it "*did* apply for a RAND license" by filing suit requesting a declaration from the Court that Microsoft is entitled to a license.  (Dkt. No. 96 at 8 (emphasis in original).)  Further,

---

breach of a specific promise as one in the same.  Given that [plaintiff] has failed to establish any facts to support a breach of the promise at issue, [its] promissory estoppel claim cannot proceed.")

[18]        As set forth in Motorola's January 3, 2012 Opposition To Microsoft's Motion For Partial Summary Judgment Dismissing Motorola's Claim For Injunctive Relief, there is ample authority allowing patent owner the right to seek exclusionary relief, where, as here, a party's intellectual property is being violated and an offer to negotiate a RAND license has been rejected. (Dkt. No. 143 at 7-10.)

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 21
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Microsoft stated that it "is seeking, and remains ready and willing to take, a license to Motorola's H.264 and 802.11 declared-essential patents on RAND terms." *Id.* at 9.

Microsoft's belated attempt to become an "applicant" for a RAND license is too late with too little. In the first place, that Microsoft sought a declaration that it is ***entitled*** to a license is not an ***application*** for a license as envisioned by the IEEE and ITU. Microsoft did not state that it would enter into a RAND license with Motorola on RAND terms and conditions determined in this litigation. In fact, in the very pleading on which Microsoft now relies, it denied that it needed a license at all. (Dkt. No. 53, ¶ 7.) These litigation tactics are inconsistent with the application and good faith negotiation required by SSO patent policies. This is simply Microsoft wanting an advisory opinion that it can have a license someday if it decides it needs one, not Microsoft applying for a license and negotiating the terms in good faith.[19]

And even if Microsoft were to apply to Motorola for licenses now, this does not preclude grant of summary judgment in Motorola's favor, as Microsoft's breach of contract allegations are based solely on Motorola's October 2010 offer letters and the filing of patent infringement actions that followed Microsoft's refusal to negotiate. Furthermore, Motorola is no longer obligated to offer such licenses, because Microsoft has repudiated and waived any rights it had to a RAND license. Permitting Microsoft to claim the benefit of Motorola's RAND licensing obligations, after having knowingly disregarded Motorola's patent rights for nearly 18 months, would be an inequitable result, at best. SSOs contemplate that implementers of standardized technologies will act in good faith and will apply for licenses. RAND licensing assurances are not intended to benefit third parties who consciously behave as free-riders in the hope that their

---

[19]    Microsoft has asserted that "Microsoft … relied on Motorola's commitment that it would make licenses available to applicants on RAND terms for this Motorola-unique technology." (Dkt. No. 60 at 6.) And yet, although allegedly aware of Motorola's 802.11 and H.264 essential-patent holdings, Microsoft never sought a license from Motorola (a predicate to Motorola's RAND obligations under the ITU and IEEE policies). Then, when Motorola offered the opportunity to discuss entering into a license, Microsoft refused to negotiate and ██████████████████████████ instead sued Motorola in District Court for alleged breach of its RAND obligations. *See* Section 2.C., *supra*.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

acts of infringement will go undetected, or that the patent holder will not have the resources or will to enforce its rights through litigation.

Outside this action, Microsoft's Director of Standards (Amy Marasco) and Deputy General Counsel (David Heiner) agreed that RAND obligations are not a bar to patent enforcement and injunctive relief:

> [T]he existence of a RAND commitment to offer patent licenses should not preclude a patent holder from seeking preliminary injunctive relief or commencing an action in the International Trade Commission just because the patent holder has made a licensing commitment to offer RAND-based licenses in connection with a standard.

Ex. 20 at 13. This is also how others in the industry view a patentee's right to seek relief against a party who refuses to negotiate in good faith. Ex. 17 at 49 ("If the Implementer chooses to implement the Standard without a license, the Patent Holder may in turn choose to sue the Implementer for patent infringement and seek all available remedies.").

In its February 27, 2011 Order (Dkt. No. 188 at 15-16), the Court observed that "[R]easonable parties may disagree as to the terms and conditions of a RAND license, leaving the courthouse as the only viable arena to determine the meaning of "reasonable" under the circumstances. It would be illogical, therefore, to deem it repudiation of one's rights under a policy to file a lawsuit to enforce one's rights under that same policy." Motorola submits that the present case is different — Microsoft never applied for a license, rejected Motorola's offer, refused to negotiate, and instead brought this action. This is not mere good faith disagreement.

The undisputed facts thus establish that Microsoft, by failing to satisfy the conditions of Motorola's assurance, repudiated any right it may have had under Motorola's letters of assurance. Accordingly, summary judgment is proper. *See A.G. Design & Assocs., LLC v. Trainman Lantern Co.*, No. C07-5158, 2009 WL 168544, at *4 (W.D. Wash. Jan. 23, 2009) ("Because the Defendants repudiated a valid contract between the parties, the Plaintiff's motion for summary judgment dismissing the Defendants' counterclaim for breach of contract is GRANTED.").

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 23
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

IV.     **CONCLUSION**

Microsoft's November 9, 2010 complaint was an admitted ███████████ that was inconsistent with the SSO Policies.  By its conduct, Microsoft failed to satisfy conditions precedent and thereby repudiated any right to a RAND license that it may have had.

For these reasons, Motorola respectfully requests that this Court enter partial summary judgment in Motorola's favor, dismissing Microsoft's breach of contract and promissory estoppel causes of action, and declaring that Motorola no longer has any obligation to license Microsoft on RAND terms.


**RESPECTFULLY SUBMITTED:**

DATED this 30th day of March, 2012.

                              SUMMIT LAW GROUP PLLC


                              By /s/ Ralph H. Palumbo
                                  Ralph H. Palumbo, WSBA #04751
                                  Philip S. McCune, WSBA #21081
                                  Lynn M. Engel, WSBA #21934
                                  ralphp@summitlaw.com
                                  philm@summitlaw.com
                                  lynne@summitlaw.com


                              By /s/ K. McNeill Taylor, Jr.
                                  K. McNeill Taylor, Jr.
                                  MOTOROLA MOBILITY, INC.
                                  MD W4-150
                                  600 North U.S. Highway 45
                                  Libertyville, IL  60048-1286
                                  Phone:  858-404-3580
                                  Fax:  847-523-0727

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 24
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

And by

> Steven Pepe (*pro hac vice*)
> Jesse J. Jenner (*pro hac vice*)
> Stuart W. Yothers (*pro hac vice*)
> Ropes & Gray LLP
> 1211 Avenue of the Americas
> New York, NY  10036-8704
> (212) 596-9046
> *steven.pepe@ropesgray.com*
> *jesse.jenner@ropesgray.com*
> *stuart.yothers@ropesgray.com*
>
> Norman H. Beamer (*pro hac vice*)
> Gabrielle E. Higgins (*pro hac vice*)
> Ropes & Gray LLP
> 1900 University Avenue, 6th Floor
> East Palo Alto, CA  94303-2284
> (650) 617-4030
> *norman.beamer@ropesgray.com*
> *gabrielle.higgins@ropesgray.com*
>
> Paul M. Schoenhard (*pro hac vice*)
> Kevin J. Post (*pro hac vice*)
> Ropes & Gray LLP
> One Metro Center
> 700 12th Street NW, Suite 900
> Washington, DC  20005-3948
> (202) 508-4693
> *paul.schoenhard.@ropesgray.com*
> *kevin.post@ropesgray.com*
>
> ***Attorneys for Motorola Solutions, Inc., Motorola Mobility, Inc., and General Instrument Corporation***

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 25
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on this day I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to the following:

3

4      Arthur W. Harrigan, Jr., Esq.
       Christopher T. Wion, Esq.
5      Shane P. Cramer, Esq.
       Danielson, Harrigan, Leyh & Tollefson LLP
6      *arthurh@dhlt.com*
       *chrisw@dhlt.com*
7      *shanec@dhlt.com*

8      Brian R. Nester, Esq.
       David T. Pritikin, Esq.
9      Douglas I. Lewis, Esq.
       John W. McBride, Esq.
10     Richard A. Cederoth, Esq.
       David Greenfield, Esq.
11     William H. Baumgartner, Jr., Esq.
       David C. Giardina, Esq.
12     Carter G. Phillips, Esq.
       Constantine L. Trela, Jr., Esq.
13     Ellen S. Robbins, Esq.
       Sidley Austin LLP
14     *bnester@sidley.com*
       *dpritikin@sidley.com*
15     *dilewis@sidley.com*
       *jwmcbride@sidley.com*
16     *rcederoth@sidley.com*
       *david.greenfield@sidley.com*
17     *wbaumgartner@sidley.com*
       *dgiardina@sidley.com*
18     *cphillips@sidley.com*
       *ctrela@sidley.com*
19     *erobbins@sidley.com*

20

21     T. Andrew Culbert, Esq.
       David E. Killough, Esq.
       Microsoft Corp.
22     *andycu@microsoft.com*
       *davkill@microsoft.com*

23

24     DATED this 30th day of March, 2012.

25                                              /s/ *Marcia A. Ripley*
                                              Marcia A. Ripley
26

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 1
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001