The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION, a Washington corporation,

Plaintiff,

v.

MOTOROLA, INC., MOTOROLA MOBILITY, INC., and GENERAL INSTRUMENT CORPORATION,

Defendants.

CASE NO. C10-1823-JLR

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**NOTED ON MOTION CALENDAR: April 20, 2012**

**REDACTED**

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND ............................................................................... 3

     A.   RAND Assurances to SSOs Do Not Inevitably Result in
         RAND Licenses and Do Not Authorize Potential Licensees to
         Infringe Patents Pending Licensure. ....................................................... 3

     B.   Microsoft Filed This Suit without First Attempting to
         Engage Motorola In Good-Faith Negotiations and Has Not
         Asked this Court for a RAND License. ..................................................... 5

     C.   Microsoft Has Failed to Take Advantage of the German Courts'
         Highly Developed Process for Determining RAND Rates for German
         Patents. ...................................................................................................... 6

     D.   Anticipating that the German Court Will Find Motorola Acted
         Reasonably,
         Microsoft Asks this Court to Intervene in the German Action, Despite
         German Procedures that Permit Microsoft to Protect Itself. ................... 8

III. LEGAL STANDARD .......................................................................................... 9

IV.  ANALYSIS ........................................................................................................ 10

     A.   Microsoft Cannot Establish the Central Element of Injunctive Relief,
         That It Will Suffer Irreparable Injury Absent an Injunction from This
         Court ........................................................................................................ 11

     B.   Microsoft Fails to Establish Any of the Factors for an Anti-Suit Injunction ........ 14

         1.   The Outcome of the Suit Before this Court Will Not Be
              Dispositive of the German Action. ............................................. 14

         2.   There is No Equitable Basis for Granting Microsoft's Request
              that this Court Intervene in the German Action. ........................ 18

         3.   An Order Staying Enforcement of a German Order in Germany
              Pending Appeal in Germany Would Offend International Comity .......... 21

III. CONCLUSION ................................................................................................... 24

1
2

# TABLE OF AUTHORITIES

**Page(s)**

3

CASES

4
5

*Applied Med. Distrib. Corp. v. Surgical Co. BV,*
  587 F.3d 909 (9th Cir. 2009) ........................................................................ passim

6
7

*Barrett v. Popular Inc.,*
  No. C07-0637, 2007 WL 1687495 (W.D. Wash. June 7, 2007)............................11

8
9

*Canadian Filters (Harwich) Ltd. v. Lear-Siegler, Inc.,*
  412 F.2d 577 (1st Cir. 1969)........................................................................11, 23

10

*Chevron Corp. v. Naranjo,*
  667 F.3d 232 (2d Cir. 2012)....................................................................11, 22, 24

11
12

*China Trade & Dev. v. MV Choong Yong,*
  837 F.2d 33 (2d Cir. 1987).................................................................................9

13

*Dollar Rent A Car of Wash. v. Travelers Indem. Co.,*
  774 F.2d 1371 (9th Cir. 1985) ..........................................................................11

14
15

*E. & J. Gallo Winery v. Andina Licores S.A.,*
  446 F.3d 984 (9th Cir. 2006) ....................................................................... passim

16
17

*Gau Shan Co. v. Bankers Trust Co.,*
  956 F. 2d 1349 (6th Cir. 1992) ..........................................................................16

18

*Haskell v. Harris,*
  669 F.3d 1049 (9th Cir. 2012) ..........................................................................11

19
20

*Hedges v. Dixon Country,*
  150 U.S. 182 (1983)........................................................................................20

21
22

*In re Vivendi Universal, S.A. Sec. Litig.,*
  No. 02-5571, 2009 WL 3859066 (S.D.N.Y. Nov. 19, 2009)................................23

23

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League,*
  634 F.2d 1197 (9th Cir. 1980) .......................................................................11, 14

24
25

*Medtronic, Inc. v. Catalyst Research Corp.,*
  518 F. Supp. 946 (D. Minn. 1981), *aff'd* 664 F.2d 660 (8th Cir. 1981) .....................16, 21, 22

26

*Microsoft Corp. v. Lindows.com, Inc.,*
  319 F. Supp. 2d 1219 (W.D. Wash. 2004).........................................................9, 22

-ii-

*Rauland-Borg Corp. v. TCS Mgmt. Grp., Inc.*,
    No. 93-C-6096, 1995 WL 31569 (N.D. Ill. Jan. 26, 1995) ..................................................19

*Robinson v. Jardine Ins. Brokers Int'l Ltd.*,
    856 F. Supp. 554 (N.D. Cal. 1994) ..........................................................9, 19, 20, 22

*Sampson v. Murray*,
    415 U.S. 61 (1974) ..........................................................................................11

*Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852 (9th Cir. 1981) .....10, 18

*Stonington Partners, Inc. v. Lernout & Hauspie Speech Prods. N.V.*,
    310 F.3d 118 (3d Cir. 2002)...............................................................................9

*Strategic Intent, LLC v. Strangford Lough Brewing Co. Ltd.*,
    No. CV-09-309-RHW, Order Granting Plaintiffs' Motion for Anti-Suit Injunction
    (E.D. Wa. Sept. 9, 2010) ..................................................................................18

*Teck Metals Ltd. v. Certain Underwriters at Lloyd's London*,
    No. 05-411, 2009 WL 4716037 (E.D. Wash. Dec. 8, 2009)...................................19

*The Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) ..........................................................................................16

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ..........................................................................................10

*Wood v. Santa Barbara Chamber of Comm., Inc.*,
    705 F.2d 1515 (9th Cir. 1983) ..........................................................................19

**OTHER AUTHORITIES**

Daniel G. Swanson & William J. Baumol, *Reasonable and Nondiscriminatory (RAND)
    Royalties, Standards Selection, and Control of Market Power*, 73 Antitrust L.J. 1
    (2005) ............................................................................................................7

Richard A. Epstein, F. Scott Kieff & Daniel F. Spulber, *The FTC, IP, and SSOs:
    Government Hold-Up Replacing Private Coordination*, 8 J. Competition L. & Econ. 1
    (2012)............................................................................................................4

-iii-

1   Defendants Motorola, Inc., Motorola Mobility, Inc. and General Instrument Corporation

2   (collectively, "Motorola") respectfully submit this Opposition to Microsoft's Motion for

3   Temporary Restraining Order and Preliminary Injunction (Dkt. Nos. 209, 210) ("Motion").

## I.   INTRODUCTION

Microsoft asks this Court to take the unprecedented step of enjoining enforcement of a foreign court's judgment in the issuing court's own country, where Microsoft has failed to exhaust remedies available in the issuing court to avoid any purported irreparable injury. The standard for granting such an anti-suit injunction is particularly exacting and cannot be satisfied here. Microsoft seeks to avoid the more stringent anti-suit injunction standard, asking instead that the Court apply the usual test for issuing injunctions that do not risk violating international comity. Microsoft is wrong as to the appropriate standard, but Microsoft's Motion would fail under either.

Microsoft's Motion asks the Court to inject itself into foreign litigation proceedings in an entirely unwarranted manner. Contrary to Microsoft's assertion, this Court should not enjoin enforcement of an injunction issued by a German court in an action properly before that court, especially where Microsoft has failed to exhaust remedies to prevent the harm Microsoft speculates might ensue. Microsoft has not identified any comparable circumstance in which a court in the United States has so dramatically interfered in the proceedings of a foreign court, and the Court should reject Microsoft's gross overreaching.

Although there are many grounds on which Microsoft's Motion fails, the Court need reach only one – Microsoft's failure to establish even the threshold requirement of showing that it would be irreparably harmed in the absence of an injunction. Microsoft's assertion that it will suffer irremediable competitive injury if its products are excluded from Germany ignores that Microsoft can unilaterally prevent any such injury from occurring. The German Supreme Court has adopted procedures – the "Orange Book defense" – specifically designed to ensure that a party *cannot* be excluded from practicing a standard-essential patent and for establishing the parameters of a German license on RAND terms. Microsoft fails to acknowledge the full scope of protections the

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 1
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Orange Book procedures provide to companies seeking to avoid being enjoined as infringers – procedures that are *still* available to Microsoft and *still* could be used to avoid the very injunction Microsoft now asks this Court to preclude.  The specter of Xboxes and Windows-based computers being removed from German shelves is entirely fanciful or, to the extent it is genuine, is the product of Microsoft's own litigation decision not to invoke its rights under German law.  The powers of equity do not authorize this Court to save Microsoft from the consequences of its own strategic litigation choices not to pursue remedies available to it in Germany.  And, to the extent that the Court were ultimately to adopt the many disputed premises of Microsoft's argument, then it would also follow that any injury Microsoft suffers from paying a royalty rate in Germany above what it is contractually entitled to could be recovered as contract damages.  Such speculative monetary damage cannot justify the injunctive relief Microsoft seeks.

Wholly apart from the lack of irreparable injury, Microsoft also fails to establish that the judgment of this Court in the present action will be dispositive of the outcome of the German litigation – an essential requirement for an anti-suit injunction that would interfere with litigation in a foreign court.  Even if Microsoft's complaint had asked this Court to set the terms for a German RAND license (it does not) and Microsoft could cite authority under which this Court could determine such terms, Microsoft points to nothing to rebut the principles of non-extraterritoriality, which weigh against this Court imposing those terms for sales in other countries, and especially not in Germany where license terms are already the subject of German litigation.  Indeed, according to Microsoft, the German court would *not* set a RAND rate.  Microsoft has failed, therefore, to establish that this Court's judgment would preclude application of Germany's Orange Book process to the parties' dispute in Germany.

Nor has Microsoft established any of the equitable circumstances that could justify issuing an anti-suit injunction.  Most of the cases on which Microsoft relies involved a party's breach of a contractual commitment to litigate a dispute in a particular forum in the United States, and a suit enjoining the foreign litigation was the only means to enforce the requesting party's right not to

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 2
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

litigate elsewhere. Here there is no such agreement, and the German court has a much *greater* claim of authority than this Court does to determine Microsoft's right to practice Motorola's German patents in Germany in the absence of a negotiated license.

Even if Microsoft were able to establish the other requirements for an anti-suit injunction, considerations of international comity would preclude issuing such an injunction in these circumstances. The German order will affect *only* the parties' rights in Germany, and Microsoft has failed to fully invoke the Orange Book defense procedures available to it under German law to avoid the purported irreparable injury. ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ Microsoft's request is all the more offensive because it would require this Court to determine that specially designed German procedures are inadequate to protect the rights of parties to practice standard-essential patents at RAND terms in Germany. Microsoft can point to no other case in which a U.S. court has so dramatically interfered in the procedures of a foreign judicial system.

## II. FACTUAL BACKGROUND

### A. RAND Assurances to SSOs Do Not Inevitably Result in RAND Licenses and Do Not Authorize Potential Licensees to Infringe Patents Pending Licensure.

The RAND licensing procedures central to the actions before this Court and the Mannheim District Court in Germany (the "German court") provide to companies like Microsoft an opportunity to obtain a license to standard-essential patents at RAND rates, *if* the company is willing to take the steps necessary to secure such a license.

The patent holder's RAND assurance is fulfilled if the patent holder is willing to negotiate in good faith with all that apply for such a license. Ex.1, Expert Rebuttal Testimony of Richard J. Holleman (Holleman) A34, A44.[1] The SSO agreements giving rise to a patent holder's RAND assurance leave the determination of what qualifies as "RAND" to the market, to be determined

---

[1] "Ex. ___" refers to exhibits to the Declaration of Kevin J. Post, submitted concurrently herewith.

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 3
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

through private negotiations.  *Id.* A36.  RAND terms need not be the same for each licensee.[2]  *See id.*  Microsoft itself has acknowledged this.  In a June 14, 2011 submission to the FTC regarding a Patent Standards Workshop, Microsoft stated that "RAND-based IPR policies provide a flexible framework to help enable customized bi-lateral negotiations for patent licenses."  Ex. 2 at 3.  Nor will RAND terms for substantively similar patents necessarily be the same in each country.  Relevant conditions can differ dramatically from country to country, and so what is "reasonable" in one country may not be in another.[3]  Once again, Microsoft itself has acknowledged this reality, stating that "[w]hether [injunctive relief] is available should be assessed *under the current legal framework in the applicable jurisdiction*, which often is premised substantially on the specific facts and circumstances at issue."  *Id.* at 13 (emphasis added).

While a patent holder's RAND assurances dictate that it engage in good-faith negotiations to enter a RAND license when a potential licensee requests a license, such negotiations do not guarantee that the result of the negotiations will be a license agreement.  Ex. 1 (Holleman) A34, A54.  Where, for example, a potential licensee is willing to enter a license only on rates that are below what qualifies as RAND, no license will result.  When this occurs, or if the potential licensee never applies for and negotiates in good faith for a license, the potential licensee is – and, indeed, must be – subject to infringement liability if it elects to engage in unlicensed use of the patented technology.

---

[2] Indeed, it is "industry standard" for RAND terms to vary considerably among licensees based on context.  Ex. 7, Richard A. Epstein, F. Scott Kieff & Daniel F. Spulber, *The FTC, IP, and SSOs: Government Hold-Up Replacing Private Coordination*, 8 J. Competition L. & Econ. 1, 21 n.46 (2012) ("There is wide consensus that RAND does not, and should not, mean 'the same terms for everyone.'").

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 4
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

**B.     Microsoft Filed This Suit without First Attempting to Engage Motorola In Good-Faith Negotiations and Has Not Asked this Court for a RAND License.**

Notwithstanding that the SSO agreements upon which Microsoft hinges its claim in this action contemplate that RAND rates will be determined through private, bilateral negotiations between the patent holder and the potential licensee, Microsoft filed this litigation without first responding to Motorola's offer to license the patents at issue.[4]  Instead of engaging in good faith negotiations as contemplated by the SSOs, Microsoft immediately resorted to the judicial system, asking this Court to find that Motorola's offer was not RAND and that Motorola, therefore, violated its RAND assurances.  For the reasons stated in Motorola's Motion for Partial Summary Judgment (Dkt. No. 228) and Opposition to Microsoft's Motion for Partial Summary Judgment (Dkt. No. 90), neither finding is warranted.

In any event, despite Microsoft's assertion that the present litigation "will produce a RAND license," Motion at 21, it is notable that Microsoft's Amended Complaint requests no such relief.  Microsoft seeks decrees establishing that Motorola's offer was not RAND and that Microsoft is *entitled* to RAND licenses.  (Dkt. No. 53 (Am. Compl.) ¶¶ F-I.)  The Amended Complaint does not, however, ask this Court to set the terms of a RAND license or to compel the parties to enter into one.[5]  Indeed, Microsoft's counsel told this Court that whether Motorola breached its RAND assurances did not require a determination by the Court of a RAND rate.  *See* 2/15/12 Transcript at 8, 19.  ███████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████  Microsoft, however, has not sought leave of the Court to further amend its complaint to seek this relief.  Moreover, both this statement

---

[4] As the Court found in denying in part Plaintiff's Motion for Partial Summary Judgment, this rate was "similar to" royalty rates "Motorola has previously entered into . . . for its declared essential patents."  (Dkt. No. 188 at 16.)

[5] Indeed, it is unclear under what authority the Court could convert the SSO's assurance of good faith negotiation into a particular party's right to a license on specific terms.

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 5
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

and Microsoft's more equivocal statements about wanting the Court to determine RAND terms surfaced only after the German litigation had been pending for many months.

### C. Microsoft Has Failed to Take Advantage of the German Courts' Highly Developed Process for Determining RAND Rates for German Patents.

Just as RAND rates may vary from country to country, even when the underlying patents are the same or similar in substance, the legal options available to patent holders and potential licensees for settling RAND-related disputes also vary depending upon jurisdiction. Germany has a uniquely well-developed process for settling RAND disputes and, where necessary, for determining RAND terms for German standard-essential patents. This procedure is set forth in the German Supreme Court's *Orange-Book* decision. German Supreme Court (BGH), Judgment of 6 May 2009, KZR 39/06 – *Orange-Book*. Under *Orange-Book-Standard* and the cases implementing it, a potential RAND licensee that is using a standard-essential patent without a license is subject to, and may be found liable in, an infringement action. *See* Declaration of Marcus Grosch ("Grosch Decl.") ¶¶ 4-13. To defend against such an action and avoid an injunction, however, the potential RAND licensee can follow specific procedures that will result in a RAND license which, once entered, provides a *complete defense* to a patent infringement injunction (an "Orange Book defense"). *Id.* ¶¶ 7-10.

Notably, Microsoft's Motion does not set forth the complete set of options a potential RAND licensee has for pursuing an Orange Book defense. There are at least two. Both require an unconditional offer to the patent holder for a RAND license (an "Orange Book offer") and both require the potential RAND licensee to pay or guarantee the payment of royalties that it would be obligated to pay under its proposed license. *Id.* ¶ 7. The difference relates to which entity is responsible for setting the "unconditional" RAND offer rate. Under the first option (which Microsoft opted for), the potential RAND licensee provides a rate in its offer. The patent holder can refuse to provide a license at that rate but, if a German court determines that the rejection was unreasonable, the patent holder may be subject to antitrust liability and an injunction will not

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 6
CASE NO. C10-1823-JLR

Summit Law Group PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1    issue.[6]  *Id.* ¶¶ 7-8, 12(b), 26.  If the Court instead determines that the rejection was reasonable, no

2    license will issue and the potential licensee, accordingly, may be enjoined.  *Id.* ¶¶ 11, 25-26.

3           Under the second, more commonly-exercised option, the potential RAND licensee leaves

4    the rate unspecified in the binding offer, leaving it to the patent holder to set the rate.  *Id.* ¶¶ 8, 25.

5    If the potential licensee contends that the rate set is not RAND, it can challenge the rate and, if the

6    German court agrees, it will intervene to set the RAND rate, which will be binding on the parties.

7    *Id.*   Under the second option, a RAND license necessarily will issue and there will be no

8    injunction.  *See id.* ¶ 26.

9           On July 6 and 7, 2011, after Microsoft made clear that it had no interest in engaging in

10   good-faith negotiations relative to Motorola's global patents regarding the H.264 standard and

11   before Microsoft ever suggested that it would be willing to accept a RAND license on terms set by

12   this Court, Motorola initiated patent infringement actions in Germany to enjoin Microsoft and two

13   of its European subsidiaries from infringing two of Motorola's German patents essential to

14   implement the H.264  standard.  *Id.* ¶¶ 14-16.  The lawsuit pertains only to Motorola's German

15   patents, and the relief it seeks would apply only within Germany.

16          Microsoft filed its answers on October 5 and 7, 2011, *id.* ¶ 17, and, on December 23, 2011,

17   filed an Orange Book offer, *id.* ¶ 20.  Instead of pursuing the safer option that would guarantee no

18   injunction by requiring Motorola to set a RAND rate, *id.* ¶ 7-8, 12(b), 26, Microsoft opted instead

19   to attempt itself to set the rate, which Motorola was then required to accept or reject, subject to the

20   risks set forth above, *id.* ¶ 20.  ███████████████████████████████████████████

21   ████████████████████████████████████████████████████████████████████████

22

---

23          [6]  Microsoft insinuates that the Orange Book procedures would permit Motorola to reject an above-RAND offer

24   without facing antitrust liability in Germany.  That is not the case. Any inequitable or discriminatory rejection puts the
     patent holder at risk of antitrust liability and would preclude the issuance of an injunction, so long as the offer is

25   coupled with an appropriate bond.  Grosch Decl. ¶ 12(b).  In any event, the concept of antitrust law defining the
     bounds of what is RAND is perfectly consistent with the SSO's guidance regarding RAND terms, since, as a general

26   matter, non-RAND terms are, by definition, terms that abuse the monopoly power granted by the selection of a
     standard.  Ex. 8, Daniel G. Swanson & William J. Baumol, *Reasonable and Nondiscriminatory (RAND) Royalties,
     Standards Selection, and Control of Market Power*, 73 Antitrust L.J. 1, 9-10 (2005).

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 7
CASE NO. C10-1823-JLR

1

█████████████████████████████████████████████████████████████████  ████

2   Accordingly, and as Microsoft appears to have anticipated, Motorola rejected the offer, confident

3   there was no material chance the German court would find the rejection of Microsoft's below-

4   RAND offer to be anything but reasonable.  Microsoft offered an amended Orange Book offer on

5   February 3, 2012 to address other deficiencies in its offer, but kept the same low royalty rate.  *Id.*

6   ¶ 22.  The German court heard the case on February 7, 2012, *id.* ¶ 23, and is expected to issue its

7   final decision on April 17, 2012, *id.* ¶ 25.

8       D.   **Anticipating that the German Court Will Find Motorola Acted Reasonably,**
            **Microsoft Asks this Court to Intervene in the German Action, Despite German**
9           **Procedures that Permit Microsoft to Protect Itself.**

10          On March 9, 2012, in anticipation that the German court likely will enter an injunction

11  barring Microsoft from infringing Motorola's German patents and many months after the German

12  action was filed, Microsoft informed this Court that it intended to make a bold request that this

13  Court intervene to prevent any such injunction – in Germany only – from issuing.  Microsoft filed

14  its Motion on March 28, 2012.

15          As the Motion sets forth, if the April 17, 2012 decision finds that Motorola reasonably

16  rejected Microsoft's below-market Orange Book offer and, accordingly, the German Court orders

17  an injunction, the injunction will not take effect immediately.  Motion at 7.  Microsoft's Motion

18  ignores, however, that even if an injunction is issued, Microsoft has other options available to it to

19  prevent enforcement of the injunction.  █████████████████████████████████

20  ██████████████████████████████████████████████████████████████████████████

21  █████████████  Microsoft can request that the judgment be stayed pending an appeal with the

22  appellate court, and such a motion would be granted if Microsoft is likely to prevail on appeal and

23  if enforcement pending appeal would cause significant harm to Microsoft.  Grosch Decl. ¶ 28.

24  This opens up the possibility for Microsoft to amend its Orange Book offer after the German court

25  issues its decision, so that Microsoft can respond to whatever shortcomings the German court

26  identifies.  *Id.*  Indeed, the same appellate court to which Microsoft would appeal has recently

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 8
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1   granted a stay pending appeal after the defendant amended its Orange Book offer. *Id.* Before the

2   appellate court can decide on the stay, it will ask Motorola to abstain from enforcing the injunction

3   if it appears Microsoft's appeal will have merit, *id.*; Motorola would honor such a request.

## III.   LEGAL STANDARD

5       Microsoft's request for an Order enjoining Motorola from enforcing an expected judgment

6   from a foreign court is plainly subject to the especially-stringent standard for granting anti-suit

7   injunctions.  In an effort to avoid the heavy burden for obtaining an anti-suit injunction, Microsoft

8   asserts that its Motion does "*not* ask[] this Court to interfere with an order by the German court,"

9   but instead simply seeks to enjoin Motorola from *enforcing* that court's order.  Motion at 8.  This

10  is a distinction without a difference.  While the requested Order may be directed at Motorola, that

11  "does not alter the analysis."  *Robinson v. Jardine Ins. Brokers Int'l Ltd.*, 856 F. Supp. 554, 560

12  (N.D. Cal. 1994).  *All* anti-suit injunctions "operate[] only against the parties, and not directly

13  against the foreign court."  *China Trade & Dev. v. MV Choong Yong*, 837 F.2d 33, 36 (2d Cir.

14  1987).  Such orders are nonetheless referred to as "anti-suit" injunctions and a stricter standard

15  applies because such orders "effectively restricts the jurisdiction of a foreign sovereign."  *Id.*; *see*

16  *Stonington Partners, Inc. v. Lernout & Hauspie Speech Prods. N.V.*, 310 F.3d 118, 125 (3d Cir.

17  2002) ("[E]njoining a party from resorting to a foreign court is equivalent to enjoining foreign

18  proceedings.");  *Microsoft Corp. v. Lindows.com, Inc.*, 319 F. Supp. 2d 1219, 1221 (W.D. Wash.

19  2004) ("[I]ssuing an anti-suit injunction necessarily restricts the jurisdiction of the court of a

20  foreign sovereign.").  Indeed, given the implications on international comity, courts approach such

21  injunctions with "grave reluctance," *id.* at 1221, and have "urged that they be issued sparingly."

22  *Applied Med. Distrib. Corp. v. Surgical Co. BV*, 587 F.3d 909, 920 (9th Cir. 2009).

23      The Ninth Circuit, accordingly, applies a more stringent standard to parties seeking an anti-

24  suit injunction than to other requests for other injunctive relief.  Under the traditional test, a party

25  seeking preliminary relief must establish (i) a likelihood of success on the merits; (ii) likely

26  irreparable harm in the absence of preliminary relief; (iii) that the balance of equities tips in its

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 9
CASE NO. C10-1823-JLR

Summit Law Group PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1  favor; *and* (iv) that the injunction is in the public interest.  *Winter v. Natural Res. Def. Council,*

2  *Inc.*, 555 U.S. 7, 20 (2008).  Under the more stringent test that applies, where a party is seeking an

3  anti-suit injunction, rather than assessing the moving party's "likelihood of success on the merits"

4  of the underlying claim, the court instead applies a three-part test: (i) the outcome of the United

5  States litigation must be dispositive of the foreign suit; (ii) the court must have an equitable

6  justification for intervening in the foreign suit; and (iii) the court must determine that an injunction

7  will not have undue adverse implications for international comity.  *Applied Med.*, 587 F.3d at 913;

8  *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 991 (9th Cir. 2006).  To establish the

9  requisite equitable justification under the second of these elements, the movant must show that the

10  foreign litigation would "(1) frustrate a policy of the forum issuing the injunction; (2) be vexatious

11  or oppressive; (3) threaten the issuing court's *in rem* or *quasi in rem* jurisdiction; or (4) …

12  prejudice other equitable considerations."  *Gallo*, 446 F.3d at 990 (quoting *Seattle Totems Hockey*

13  *Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 855 (9th Cir. 1981)).

## IV.   ANALYSIS

15       As we explain below, Microsoft cannot satisfy the requirements for an injunction under

16  either the generally applicable test or the heightened anti-suit injunction standard.[7]  Microsoft

17  cannot establish irreparable injury in the absence of an injunction because Microsoft has available

18  to it under German law several options by which it could prevent a German injunction from ever

19  taking effect.  Nor will the outcome of this litigation dispose of the issues in the German case: the

20  consequences *under German law* of Microsoft's unwillingness to accept a German license at a rate



DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 10
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

determined according to German procedures.  Indeed, none of the equitable factors that might warrant issuance of an anti-suit injunction are present here.  And, even if they were, international comity would preclude issuance of an injunction in these circumstances.  Microsoft's failure to satisfy *any one* of these conditions is fatal to its motion for a temporary restraining order and for a preliminary injunction.

### A.   Microsoft Cannot Establish the Central Element of Injunctive Relief, That It Will Suffer Irreparable Injury Absent an Injunction from This Court.

Because Microsoft has remedies available to it in Germany to avoid enforcement of a German injunction (if any), Microsoft cannot satisfy the irreparable injury element that is an "essential prerequisite" to the granting of a temporary restraining order or preliminary injunction. *Dollar Rent A Car of Wash. v. Travelers Indem. Co.*, 774 F.2d 1371, 1375 (9th Cir. 1985).  "[T]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies."  *Sampson v. Murray*, 415 U.S. 61, 88 (1974) (quotation marks omitted)); *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) (same). Preliminary injunctive relief is reserved for cases where the movant is powerless to prevent the injury it asks the court to enjoin.  *Barrett v. Popular Inc.*, No. C07-0637, 2007 WL 1687495, at *1 (W.D. Wash. June 7, 2007) (finding no irreparable injury because "plaintiff has other remedies available to prevent [her] loss").

The crucial inquiry is not what harm Microsoft would suffer if a German injunction excluding Microsoft products were ultimately to go into effect, but instead what harm Microsoft would likely suffer "absent a preliminary injunction" from this Court.  *Haskell v. Harris*, 669 F.3d 1049, 1053 (9th Cir. 2012).  In its Motion, Microsoft either disparages or ignores entirely the robust procedures available to it in Germany by which Microsoft could prevent any German injunction from going into effect.  The availability of those remedies defeats any contention that Microsoft will suffer irreparable harm if this Court denied a temporary restraining order or preliminary injunction.  *See Canadian Filters (Harwich) Ltd. v. Lear-Siegler, Inc.*, 412 F.2d 577,

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

579 (1st Cir. 1969) (injunction unavailable where party seeks to "strong-arm" a foreign court through an anti-suit injunction in lieu of exercising available options in the foreign forum to stay the action); *cf. Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012) (indicating that a U.S. court's entry of an order barring the enforcement of a foreign judgment before the foreign court has itself considered the movant's arguments for non-enforcement "risks disrespect[]").

As discussed above, the *Orange Book* decision specifically adopted procedures under German law to allow parties to avoid precisely the harm Microsoft identifies.  Under the Orange Book procedures, Microsoft could have *guaranteed* itself a license in Germany for Motorola's standard-essential patents and preclude any injunction by making a binding commitment to accept a license on terms that are "non-discriminatory and non-restrictive" and paying an estimated license fee into the court.  Grosch Decl. ¶ 12(a) (quoting *Orange Book*).  Instead of invoking this right under German law, Microsoft chose to risk the issuance of an injunction by offering Motorola a below-market royalty rate Microsoft knew Motorola would reject.  Indeed, the fact that Microsoft seeks relief from this Court before the German court has even ruled demonstrates that Microsoft knows that its Orange Book offer in Germany was unreasonable. ████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ██████████

Contrary to Microsoft's statements, it is not unusual for a plaintiff to enforce the injunction by posting a bond.  Grosch Decl. ¶11.  Remedies to avoid a German injunction becoming effective will, however, still be available to Microsoft, even after an injunction issues (if it does) and a bond posted.  Specifically, Microsoft can move in the German appellate court, which could delay enforcement of the German court's ruling if the German appellate court finds there is merit to the appeal.  *Id.* ¶ 28; ███████████████████████████████████████████████████  If there is prima facie merit to the appeal, the appellate court will usually ask plaintiff to stay enforcement of the injunction pending an appeal, Grosch Decl. ¶ 28, and Motorola will comply with such a

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 12
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

request.  If Microsoft is concerned that the German appellate court will not find its appeal meritorious, it could still take advantage of the procedure set forth above by seeking to amend its license offer post-judgment.  *Id.*  Under that option, Microsoft could eliminate the risk of an injunction issuing in Germany by submitting a revised Orange Book offer that puts the onus on Motorola to set a RAND rate.[8]  *Id.* ¶¶ 8, 26.  Thus, it remains within Microsoft's power to avoid any injunctive relief from taking effect in Germany.

Given that Microsoft can guarantee that no injunction will issue, the only conceivable injury about which Microsoft could complain under German procedures is speculative monetary injury that cannot form the basis of injunctive relief.  Microsoft contends that the "non-obstructive and non-discriminatory" terms of a German license under the Orange Book procedures are not the same as RAND terms and would include a higher royalty rate than the RAND terms to which Microsoft claims it is entitled pursuant to the SSO agreements.[10]  That argument is, of course, highly speculative on many fronts, and, in any event, incapable of establishing the type of harm necessary to support injunctive relief.  Microsoft assumes that this Court would purport to dictate RAND terms for a German license, that the terms for a German license arrived at under the

---

[8] Reliance on this option would not prejudice Microsoft's ability to challenge Motorola's rate as discriminatory or otherwise an abuse of Motorola's market power, and neither a license nor an injunction would issue pending the German court's resolution of that issue.  If Microsoft prevailed in such a challenge, the German court would itself set a RAND rate.



DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 13
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Orange Book procedures would not constitute RAND terms in Germany, and that the terms set by this Court would be more favorable for Microsoft than the terms set pursuant to the Orange Book process. Motorola disputes each of those assumptions.

Significantly, however, even if the premises of Microsoft's argument were correct, that would only serve to demonstrate more conclusively that any "harm" to Microsoft of complying with the German Orange Book process is monetary and, therefore, not irreparable. If this Court were to find that Microsoft has a contractual right to a particular RAND rate worldwide and that the rate set pursuant to the German Orange Book process was less than the RAND rate for Germany, then Microsoft could claim contract damages for previously paying a higher Orange Book rate on sales in Germany. "[M]onetary injury is not normally considered irreparable [because] . . . '[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.'" *L.A. Mem'l Coliseum Comm'n*, 634 F.2d at1120 (quoting *Sampson*, 415 U.S. at 90). If Microsoft's arguments were successful, it would be entitled to monetary damages, and so it cannot establish the irreparable harm that is essential to obtaining injunctive relief.[11]

**B.      Microsoft Fails to Establish Any of the Factors for an Anti-Suit Injunction**

Microsoft's inability to show likely irreparable injury absent action by this Court relieves the Court from even having to consider the anti-suit injunction test. It is clear, however, that Microsoft similarly cannot establish any of the factors required by this heightened standard.

**1.      The Outcome of the Suit Before this Court Will Not Be Dispositive of the German Action.**

---

[11] Moreover, Microsoft can avoid the impact of an injunction by simply removing H.264 functionality from its products. Microsoft apparently has decided not to. If it had, Microsoft's products would remain on the shelves and there would be no impact to its business operations.

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 14
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    A plaintiff seeking an anti-suit injunction must show, as a preliminary matter, that "the
2    parties and the issues are the same" in the foreign and domestic actions and that the domestic
3    action "is dispositive of the action to be enjoined."   *Gallo*, 446 F.3d at 991.   The present suit
4    addresses the nature of Motorola's obligation under the SSO contracts with respect to negotiating
5    a RAND license with Microsoft.   In its operative pleading, Microsoft has not asked this Court to
6    declare the terms of a RAND license in Germany (or anywhere else) or to order issuance of a
7    license on those terms, and Microsoft has pointed to nothing that would authorize the Court to take
8    such an unprecedented action.   The German courts have already adopted a process by which
9    Microsoft can ensure for itself a license in Germany on RAND terms, and Microsoft's present suit
10   does not provide a basis for this Court to preclude the operation of those procedures in Germany.
11   Because the outcome of the present litigation will not be dispositive of the German litigation,
12   Microsoft cannot satisfy even this threshold inquiry and its motion must be denied.   *Microsoft*, 319
13   F. Supp. 2d at 1222-23.   In fact, Microsoft acknowledges that the issues presented in the present
14   suit and in the German litigation are distinct.   Microsoft concedes that the "German court is *not*
15   going to address the issues this Court will address."   Motion at 6.   And, of course, this Court is *not*
16   going to address whether it was legal under German law for Motorola to reject Microsoft's lowball
17   offer for a German-bounded license to Motorola's German patents.

18       Microsoft's assertion that this Court's resolution of the present suit will involve issuance of
19   a RAND license, moreover, is without legal or factual foundation.   ████████████████████████
20   ████████████████   the fact remains that Microsoft's complaint does not even request that this Court
21   dictate the terms of a RAND license or mandate that the parties enter a license on the Court's
22   terms, much less that this Court set the terms for a RAND license in Germany.   Indeed, Microsoft
23   artfully avoided stating anywhere in the complaint that it will take a license, asserting instead only
24   that it is "entitled" to a license, implicitly reserving the ability to reject a license if it found the
25   terms objectionable for any reason.
26

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 15
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

This Court will decide whether Microsoft's refusals to request a license and to engage in negotiations violated conditions precedent and waived its third party rights and, if not, whether Motorola's initial offer violated its obligation to negotiate a RAND license for Motorola's standard-essential patents.  However, assuming the Court adjudicates only what the complaint actually asked for, the Court's judgment will not establish the terms of a RAND license for Motorola's patents in the United States, much less dictate the terms in Germany.

Moreover, even if the Court were to find for Microsoft on the merits and determine it was proper to issue an Order enjoining Motorola from refusing to license sales in the United States at particular rates (despite Microsoft's failure to include this request in its Prayer for Relief),[12] Microsoft points to nothing to rebut the strong presumption against courts projecting their authority extraterritorially, *see Gau Shan Co. v. Bankers Trust Co.*, 956 F. 2d 1349, 1355 (6th Cir. 1992), which weighs against this Court assuming the role of rate setter for other countries, including Germany.[13]  The appropriate RAND terms in one jurisdiction may differ from those in another jurisdiction.  Such disparities may have numerous bases, including market conditions, local laws, and even the strength of the patents under the law of that jurisdiction.  Foreign patents "present separate and independent rights" even when they "cover[] precisely the same product as an American patent . . . .   American patent rulings thus have no effect in a foreign court examining

---

[12] It is notable that Microsoft has identified no basis for concluding that this Court could transform Motorola's agreement to agree in the SSO letters of assurance into a right on the part of Microsoft to a license at any particular rate.  As discussed above, the SSOs do not purport to establish RAND terms.  Moreover, while the obligation to license on RAND terms may be global, that does not mean that a patent must be licensed globally on uniform terms for every licensee and in every country.  A duty not to discriminate unfairly means only that similarly situated licensees should generally be treated similarly; RAND licenses will necessarily vary due to the unique interests of each party.  Because Microsoft's suit is based on the SSO contracts, and the SSO merely seeks assurance that the patent holder will "make available" the patent "on reasonable and nondiscriminatory terms," Ex. 1 (Holleman) A44, it is far from clear on what legal basis this undertaking by Motorola could be converted into an obligation to issue a license to Microsoft on particular terms.  Indeed, Microsoft points to not one single case in which a Court has presumed such authority.

[13] Such restraint benefits U.S. businesses and the economy as a whole.  *See The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9 (1972) ("The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts. . . . We cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts.").

---

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 16
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

the same product under the laws of that jurisdiction." *Medtronic, Inc. v. Catalyst Research Corp.*, 518 F. Supp. 946, 955 (D. Minn. 1981), *aff'd* 664 F.2d 660 (8th Cir. 1981).  Germany has established a highly developed system to ensure that the holder of a standard-essential patent cannot refuse to license on RAND terms, and Microsoft cites no authority on which this Court could purport to supplant that legal scheme governing German licenses of German patents.  This is especially true where, as here, Microsoft waited until after the German proceedings were so far advanced before rushing to this Court with this belated motion and finally stating a willingness to accept a global license on terms decided by this Court.  Thus, even assuming that this Court would issue an Order setting the RAND rate for the U.S. patents at issue in this litigation (despite Microsoft's failure to request such relief), that Order would not dispose of the German action.[14]

To the extent Microsoft is asserting that a decision by this Court that Microsoft is entitled to a RAND license would somehow foreclose the possibility of equitable relief in Germany under German law, Microsoft has failed to demonstrate that this would be the case.  SSO RAND assurances or entitlements do not bar injunctions or exclusion orders before the party with the entitlement takes the steps necessary to secure the RAND license.  The relevant inquiry for purposes of determining whether such a decree would dispose of the German action is not whether such an Order would bar injunctive relief under U.S. law, but instead whether it would bar it under German law.  Again, Microsoft itself has acknowledged that "[w]hether [injunctive relief] is available should be assessed under the current legal framework in the applicable jurisdiction . . . ." Ex. 2 at 13.  On that issue, there can be no dispute.  Indeed, the fundamental premise of the Orange Book rule giving rise to the current Motion is that parties that are entitled to RAND licenses will nonetheless be enjoined if they do not take the steps necessary to secure such a

---

[14] Even if the Court were to conclude both that extraterritorial concerns did not prohibit the setting of RAND rates outside of the United States and that Microsoft had ultimately shown some entitlement to having such rates set, the Court could still decide not to set such rates in Germany, in recognition of the fact that Microsoft failed to seek such relief until after the German procedures were well underway, pursuant to established German laws.  Even if the Court were to set rates in some countries, that result would not necessarily dispose of the German action.

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 17
CASE NO. C10-1823-JLR

license.   Grosch Decl. ¶ 9.   This Court's ruling as to U.S. rights would not interfere with the German court's procedures for determination of German rights.

As highlighted above, Motorola maintains that the Orange Book procedure is designed to guarantee a potential licensee a German license on RAND terms and conditions.   Notably, however, if Microsoft were correct in asserting that the rate determined through the Orange Book procedure does not constitute RAND terms, but a less constraining non-antitrust violation, that would only strengthen the conclusion that the U.S. action will not be dispositive of the one in Germany.[15]  For example, if this Court were to agree that Microsoft has repudiated its contractual right to a RAND license by failing to exercise certain conditions precedent, that would not prevent Microsoft from relying on Orange Book proceedings in Germany to secure a license consistent with German antitrust law.   The two lawsuits, while addressing similar issues, do not duplicate one another.

### 2.   There is No Equitable Basis for Granting Microsoft's Request that this Court Intervene in the German Action.

Even if Microsoft could establish that the U.S. action will dispose of the German action, Microsoft would still not be entitled to an anti-suit injunction because it cannot establish an equitable basis for that relief.   It has set forth no basis for a conclusion that German litigation would "(1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; or (4) . . . prejudice other equitable considerations."  *Gallo*, 446 F.3d at 990 (quoting *Seattle Totems*, 652 F.2d at 855).

First, the German court's judgment would not "frustrate a policy" of this Court.  Microsoft offers no support for its contention that the issuance of an injunction in Germany would frustrate what Microsoft describes as "policy in favor of enforcing a contractual obligation to grant a RAND license."  Motion at 22.  As described above, Germany has in place its own procedures to

---

[15] The German Courts have never made a distinction between the requirements under the antitrust laws and RAND requirements.  Grosch Decl. ¶ 6.  Notably, Microsoft also has not made a distinction between the rate that a patentee can reject without an abuse of market power and a FRAND rate.  *Id.*

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 18
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

guarantee that a party can obtain a license on RAND terms, and Microsoft cannot be denied a license if it invokes and complies with those procedures.  There is no policy of this forum that a party should be able to ignore the procedures of a foreign forum for invoking one's rights.  The only case Microsoft cites on this point is wholly inapposite.  In *Strategic Intent*, the Court's decision to bar enforcement of the foreign injunction hinged on the fact that the parties had previously entered into a contractual agreement providing that the first to file would be entitled to choice of venue.  *Strategic Intent, LLC v. Strangford Lough Brewing Co. Ltd.*, No. CV-09-309-RHW, Order Granting Plaintiffs' Motion for Anti-Suit Injunction at 8 (E.D. Wa. Sept. 9, 2010).  Other cases on which Microsoft relies similarly involved a party's violation of a forum selection clause establishing the issuing court's exclusive jurisdiction.  *See Applied Med.*, 587 F.3d at 914; *Gallo*, 446 F.3d at 991-93.

The parties here have entered into no similar agreement.  There is no prior forum-selection provision that entitles Microsoft to litigate in Washington federal court the issues now being litigated in the German case, and there is no risk that the German court's order would enjoin conduct in the United States that would contradict domestic policy.  Additionally, the parties have never reached any contractual agreement to leave the determination in the hands of a court if the parties are unable to come to terms regarding RAND licenses.  In short, there is no U.S. public policy that could justify the relief Microsoft seeks.  *See Robinson*, 856 F. Supp. at 560 ("While enforcement of the English Order in the United States may undermine California public policy, enforcement of the English Order in England presents no such conflict."); *cf. Teck Metals Ltd. v. Certain Underwriters at Lloyd's London*, No. 05-411, 2009 WL 4716037, at *3 (E.D. Wash. Dec. 8, 2009).

Second, there is nothing "vexatious" about the German litigation.  As an initial matter, in stating that "[t]he German court is *not* going to address the issues this Court will address," Motion at 6, Microsoft concedes that Motorola could not possibly have filed the German litigation for purposes of undermining any judgment this Court might enter.  *See Wood v. Santa Barbara*

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 19
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

*Chamber of Comm., Inc.*, 705 F.2d 1515, 1524-25 (9th Cir. 1983) (equating "vexatious litigation" with repetitive litigation). The focus of the "vexatious litigation" factor is Motorola's intent at the time it filed suit. *Cf. Rauland-Borg Corp. v. TCS Mgmt. Grp., Inc.*, No. 93-C-6096, 1995 WL 31569, at *4 (N.D. Ill. Jan. 26, 1995) (finding no need to determine whether litigation was initiated for a vexatious purpose because the threshold anti-suit factor was not met). Microsoft's last minute decision to change its strategy and commit to the acceptance of a Court-ordered RAND rate, accordingly, is irrelevant to the inquiry.[16] Additionally, Microsoft cannot avoid that it purposefully availed itself of Germany's jurisdiction – indeed the very purpose of its current motion is to preserve its business pursuits in Germany – and the parties have entered no contractual obligations that could be construed to limit Motorola's right to hold Microsoft responsible for complying with German law, or the German court's ability to hear the claim.[17] There is nothing vexatious about such litigation.[18] *See Robinson*, 856 F. Supp. at 560.

As to the third factor, Microsoft does not dispute that both actions are in personam, so there is no threat to this Court's in rem jurisdiction. *Gallo*, 446 F.3d at 990.

Finally, the litigation in Germany does not "prejudice equitable considerations." *Id*. To the contrary, it is Microsoft's repudiation of the right to a RAND license, refusal to compensate Motorola for the use of Motorola's technology in Germany, its unwillingness to negotiate in good faith towards reasonable terms, and its present attempt to further delay compensating Motorola

---

[16] ███████████████████████████████████████████████ is a vexatious attempt to expand the relief it is requesting from this Court so that it can manufacture a conflict between the proceedings here and in Germany to justify an anti-suit injunction. *Cf. Applied Med.*, 587 F.3d at 921 (suggesting a party may be enjoined from bringing a claim, where that claim is brought for purposes of abrogating the likely judgment of a foreign court).

[17] Microsoft ignores, moreover, that Motorola gave Microsoft ample opportunity to avoid the German litigation it now asks this Court to preempt; it was only after Microsoft declined to engage in good faith negotiations for a RAND license that Motorola resorted to litigation as a last result.

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 20
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

through this anti-suit injunction that is inequitable.  To be clear, Motorola's defense in this litigation does not simply assert that Microsoft repudiated its right to a RAND license by filing suit.  Instead, Motorola asserts that Microsoft repudiated its rights by bringing its lawsuit before it first applied for a license and engaged in good faith negotiations.  Those are conditions precedent that need to be met before a party is entitled to a RAND license.  Because Microsoft did not fulfill those conditions precedent, it is not entitled to any Order declaring its entitlement to such a license.[19]  Dkt. No. 90 at 21-23.

Microsoft's argument otherwise is a non-starter.  While it may be true that equity has no power to change "clearly defined" rights, *Hedges v. Dixon Country*, 150 U.S. 182, 192 (1983), controlling law does not establish that an obligation to license on RAND terms bars injunctive relief, as Microsoft itself has expressly acknowledged.  Even assuming the Court ultimately holds that Microsoft is still entitled to a RAND license, such an Order would not necessitate a finding that the issuance of an injunction in Germany until such time as the license was consummated would be inequitable – particularly given that Microsoft could prevent such an injunction by availing itself of the German procedures established for that purpose.[20]

### 3. An Order Staying Enforcement of a German Order in Germany Pending Appeal in Germany Would Offend International Comity.

Microsoft is requesting that this Court, in effect, make unenforceable a German court's ruling about Motorola's patent rights within Germany – and to do so without Microsoft having made any effort first to exercise ample opportunities available in the German legal system to avoid the result it is asking this Court to enjoin.  It is difficult to imagine a scenario that could be more

---

[19] As set forth above, because Microsoft is seeking an anti-suit injunction, its arguments relating to which party is likely to succeed on the merits are wholly irrelevant to the present inquiry.  If this had been a case where the traditional test applied, however, Microsoft's inability to show it is likely to obtain an Order declaring its entitlement to a license would have precluded Microsoft from satisfying the likelihood of success factor.

[20] *Medtronic* is consistent with this conclusion.  Prior to the license dispute that resulted in the plaintiff filing the U.S. litigation, the parties entered an agreement that the Court construed as providing that the defendant would not seek injunctive relief pending the license negotiations.  It was based squarely on that agreement – not present here – that the Court determined the defendant was barred from seeking equitable relief in a foreign court pending negotiation of the patent license.  *Medtronic*, 518 F. Supp. at 953.

---

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 21
CASE NO. C10-1823-JLR

1    offensive to international comity, and Microsoft has offered nothing that could justify such an

2    offense.  For this additional and independent reason, Microsoft's request must be denied.

3            Microsoft appears to assert that comity concerns are inapposite whenever the local action

4    will be dispositive of the foreign action and "one of the four equitable factors" for an anti-suit

5    injunction is satisfied.  Motion at 21.  Ninth Circuit law is decidedly to the contrary.  As the court

6    made clear in *Gallo*, even where the other factors of the anti-suit injunction test are satisfied, a

7    court "still need[s] to decide whether the impact on comity would be tolerable."  *Gallo*, 446 F.3d

8    at 994; *see Applied Med.*, 587 F.3d at 913.  Indeed, in another suit involving Microsoft, the Court

9    noted that it is only with "grave reluctance" that courts would inject themselves "into the

10   proceedings of the court of another sovereign nation." *Microsoft*, 319 F. Supp. 2d at 1221.  Comity

11   concerns are particularly heightened in this case because Microsoft is asking this Court to interfere

12   with the effect that a foreign court's *judgment* has in the issuing court's *own country*.

13           What Microsoft seeks "is, in reality, an *anti-enforcement* injunction."  *Chevron*, 667 F.3d

14   at 243.  As the Second Circuit recently explained, "comity concerns become far graver" when a

15   U.S. court seeks to enjoin judgments that have already been issued by a foreign court and are not

16   being enforced in the United States.[21]  *Id.* at 243-44; *see Robinson*, 856 F. Supp. at 560 (refusing

17   to enjoin "enforcement of an English Order in England" on comity grounds); *Microsoft*, 319 F.

18   Supp 2d at 1223 (refusing, on comity grounds, to declare foreign-issued injunction unenforceable

19   where there was no showing the injunction implicated the movant's constitutional rights).

20   Microsoft recognizes that this Court cannot prevent the German court from issuing its order on

21   April 17.  Indeed, if Microsoft had thought the German litigation itself interfered with Microsoft's

22   rights, it could have filed a motion many months ago asking this Court to enjoin Motorola from

23   pursuing that litigation.  Having failed to take such action, Microsoft now asks the Court to

24

25   _____

26   [21]  Notably, Chevron did not even *ask* the New York court to enjoin the defendant from enforcing the Ecuadorian court's judgment within Ecuador.  *See Chevron*, 667 F.3d at 238 (seeking injunction against enforcement of the Ecuadorean judgment "anywhere in the world *outside of Ecuador*" (emphasis added)).

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 22
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

deprive the German court's order of any practical effect in Germany.[22]  But this Court has no basis for issuing such an affront to the courts of a foreign nation.  This is especially so given that Microsoft still has ample avenues available to it under German law to challenge the German court's ruling (if adverse to Microsoft) or to avoid any irreparable injury from that order.  For this Court to insert itself into the German proceedings and, in effect, to enter a stay of the German order, would be a gross affront to the German courts and a clear violation of principles of international comity.  *Cf. In re Vivendi Universal, S.A. Sec. Litig.*, No. 02-5571, 2009 WL 3859066, at *7 (S.D.N.Y. Nov. 19, 2009) (refusing to enter anti-suit injunction, even though first two prongs of the anti-suit injunction test were met, because an alternative option existed to avoid the harm the injunction was designed to address).

Microsoft asks this Court to issue an unprecedented Order that would relieve Microsoft of any obligation to operate within the bounds of the German legal system, despite its having purposefully availed itself of the benefits of that system by entering the German market.  Microsoft does not dispute that Microsoft and Motorola had no preexisting agreement mandating that all RAND-related disputes be resolved in the United States or that Motorola agreed that it would not exercise its right to seek injunctive relief in Germany if Microsoft attempted to operate in Germany without a RAND license.  Microsoft does not contest that the German court is properly exercising jurisdiction over the parties' dispute as to Microsoft's unlicensed sales in Germany.  Indeed, Microsoft has never, in the nine months since Motorola initiated the German proceedings, argued that Motorola should be enjoined from pursuing that litigation, and even now affirmatively highlights that it is supposedly not seeking to interfere with the judicial resolution of

---

[22] The fact that Microsoft seeks an Order that would interfere with a foreign judgment additionally distinguishes Microsoft's request from the closest factual match it could find in which a court determined principles of comity did not bar an anti-suit injunction.  In *Medtronic,* the court acknowledged that principles of comity ordinarily would make it "extremely wary about interfering in even an indirect manner with the jurisdiction of a foreign sovereign," but determined that the concern was mitigated in part by the fact that "there has not yet been a judgment entered in either case."  518 F. Supp at 955.  Unlike the facts at issue here, the relief requested in that case, therefore, "would not interfere with a final judgment of a foreign court."  *Id.*

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 23
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Motorola's German claim.  *See* Motion at 20-21 (stressing that it does not seek to interfere with the adjudication of any dispute in Germany).

Microsoft has not pointed to a single case in which a U.S. court has issued a stay of a foreign court's judgment within the issuing court's own country, much less done so where the foreign proceedings are unquestionably proper and where the moving party has failed to exhaust available remedies in the foreign jurisdiction to avoid the asserted injury.  *See Canadian Filters*, 412 F.2d at 579 (explaining that where a party seeks to "strong-arm" a foreign court through an anti-suit injunction in lieu of exercising available options in the foreign forum to stay the action, a court cannot grant that request without engaging in an "improper departure from principles of comity"); *cf. Chevron*, 667 F.3d at 244 (indicating that a U.S. court's entry of an order barring the enforcement of a foreign judgment before the foreign court has itself considered the movant's arguments for non-enforcement "risks disrespect[]").

To understand the international implications of such an Order, the Court need only consider how it would react if a foreign court were to purport to issue a stay pending appeal of a judgment of this Court in a proceeding properly before it when the party had not even requested a stay pursuant to the Federal Rules of Civil and Appellate Procedure.  Thus, even if Microsoft could satisfy the other requirements for issuing an anti-suit injunction, international comity concerns would preclude such an injunction in this case.

## V.   CONCLUSION

For the reasons set forth herein, Motorola respectfully requests that this Court deny Microsoft's Motion for Temporary Restraining Order and Preliminary Injunction in its entirety.

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 24
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    DATED this 6th day of April, 2012.

2                                            SUMMIT LAW GROUP PLLC

3
                                             By /s/ Ralph H. Palumbo
4                                                Ralph H. Palumbo, WSBA #04751
                                                 Philip S. McCune, WSBA #21081
5                                                Lynn M. Engel, WSBA #21934
                                                 ralphp@summitlaw.com
6                                                philm@summitlaw.com
                                                 lynne@summitlaw.com
7
                                             By /s/ K. McNeill Taylor, Jr.
8                                                K. McNeill Taylor, Jr.
                                                 MOTOROLA MOBILITY, INC.
9                                                MD W4-150
                                                 600 North U.S. Highway 45
10                                               Libertyville, IL  60048-1286
                                                 Phone:  858-404-3580
11                                               Fax:  847-523-0727

12                                           And by

13
                                                 Steven Pepe (pro hac vice)
14                                               Jesse J. Jenner (pro hac vice)
                                                 Stuart W. Yothers (pro hac vice)
15                                               Ropes & Gray LLP
                                                 1211 Avenue of the Americas
16                                               New York, NY  10036-8704
                                                 (212) 596-9046
17                                               steven.pepe@ropesgray.com
                                                 jesse.jenner@ropesgray.com
18                                               stuart.yothers@ropesgray.com

19                                               Norman H. Beamer (pro hac vice)
                                                 Gabrielle E. Higgins (pro hac vice)
20                                               Ropes & Gray LLP
                                                 1900 University Avenue, 6th Floor
21                                               East Palo Alto, CA  94303-2284
                                                 (650) 617-4030
22                                               norman.beamer@ropesgray.com
                                                 gabrielle.higgins@ropesgray.com
23

24

25

26

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 25
CASE NO. C10-1823-JLR

Paul M. Schoenhard (*pro hac vice*)
Kevin J. Post (*pro hac vice*)
Ropes & Gray LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC  20005-3948
(202) 508-4693
*paul.schoenhard.@ropesgray.com*
*kevin.post@ropesgray.com*

**Attorneys for Motorola Solutions, Inc., Motorola
Mobility, Inc., and General Instrument
Corporation**

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 26
CASE NO. C10-1823-JLR

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the

3

Court using the CM/ECF system which will send notification of such filing to the following:

4

Arthur W. Harrigan, Jr., Esq.
Christopher T. Wion, Esq.

5

Shane P. Cramer, Esq.
Danielson, Harrigan, Leyh & Tollefson LLP

6

*arthurh@dhlt.com*
*chrisw@dhlt.com*

7

*shanec@dhlt.com*

8

Brian R. Nester, Esq.
David T. Pritikin, Esq.

9

Douglas I. Lewis, Esq.
John W. McBride, Esq.

10

Richard A. Cederoth, Esq.
David Greenfield, Esq.

11

William H. Baumgartner, Jr., Esq.
David C. Giardina, Esq.

12

Carter G. Phillips, Esq.
Constantine L. Trela, Jr., Esq.

13

Ellen S. Robbins, Esq.
Sidley Austin LLP

14

*bnester@sidley.com*
*dpritikin@sidley.com*

15

*dilewis@sidley.com*
*jwmcbride@sidley.com*

16

*rcederoth@sidley.com*
*david.greenfield@sidley.com*

17

*wbaumgartner@sidley.com*
*dgiardina@sidley.com*

18

*cphillips@sidley.com*
*ctrela@sidley.com*

19

*erobbins@sidley.com*

20

T. Andrew Culbert, Esq.

21

David E. Killough, Esq.
Microsoft Corp.

22

*andycu@microsoft.com*
*davkill@microsoft.com*

23

24

DATED this 6th day of April, 2012.

25

_____
/s/ *Marcia A. Ripley*

26

Marcia A. Ripley

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION - 27
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001