THE HONORABLE JAMES L. ROBART

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION, a
Washington corporation,

                  Plaintiff,

   v.

MOTOROLA, INC., and MOTOROLA
MOBILITY, INC., and GENERAL
INSTRUMENT CORPORATION,

                 Defendants.

---

MOTOROLA MOBILITY, INC., and
GENERAL INSTRUMENT
CORPORATION,

    Plaintiffs/Counterclaim Defendant,

   v.

MICROSOFT CORPORATION,

    Defendant/Counterclaim Plaintiff.

CASE NO. C10-1823-JLR

MOTOROLA'S OPPOSITION TO
MICROSOFT CORPORATION'S
MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY

**NOTED ON MOTION CALENDAR:**
**Friday, April 13, 2012**

ORAL ARGUMENT REQUESTED

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ................................................................. 1

II.  STATEMENT OF LAW ......................................................... 1

III.  ARGUMENT ..................................................................... 2

  A.  The Specification's Disclosure Of A "Decoder" Is Sufficient To Indicate To A Person of Ordinary Skill In The Art The Structure Corresponding To The "Means For Decoding" And "Means For Using" Claim Elements ...................... 2

  B.  The Case Law Requiring Disclosure Of An Algorithm Does Not Apply In This Case To The Disclosure Of A "Decoder"..................................... 6

  C.  Even If Disclosure of An Algorithm Is Required, The Specification Discloses Algorithms For Performing The Claimed Functions............................ 8

    1.  The Specification Discloses Algorithms For The Decoder Structure That Are Sufficient To Give Meaning To Each Of The "Means For Decoding" Claim Elements....................................................... 10

    2.  The Specification Discloses An Algorithm For The Decoder Structure That Is Sufficient To Give Meaning To The "Means For Using" Claim Elements........................................................... 19

IV.  CONCLUSION.................................................................... 21

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - ii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AllVoice Computing PLC v. Nuance Commc'ns, Inc.*,
  504 F.3d 1236 (Fed. Cir. 2007) ................................................................9

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................1, 2

*Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*,
  521 F.3d 1328 (Fed. Cir. 2008) ................................................6, 7, 8

*Atmel Corp. v. Info. Storage Devices, Inc.*,
  198 F.3d 1374 (Fed. Cir. 1999) ................................................2, 5, 8

*Dealertrack v. Huber*,
  Nos. 2009-1566, 2009-1588, 2012 WL 164439 (Fed. Cir. Jan. 20, 2012) ................................7

*Goss Int'l Ams., Inc. v. Graphic Mgmt. Assocs.*,
  739 F. Supp. 2d 1089 (N.D. Ill. 2010) ................................................5

*HTC Corp. v. IP-Com GmBH & Co.*,
  667 F.3d 1270 (Fed. Cir. 2012) ................................................7

*In re Alappat*,
  33 F.3d 1526 (Fed. Cir. 1994) ................................................6

*In re Aoyama*,
  656 F.3d 1293 (Fed Cir. 2011) ................................................8

*Intel Corp. v. VIA Techs. Inc.*,
  319 F.3d 1357 (Fed. Cir. 2003) ................................................2, 5, 6

*Linear Tech. Corp. v. Impala Linear Corp.*,
  379 F.3d 1311 (Fed. Cir. 2004) ................................................5

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
  545 F.3d 1359 (Fed. Cir. 2008) ................................................7

*Personalized Media Commc'ns, LLC v. ITC*,
  161 F.3d 696 (Fed. Cir. 1998) ................................................13

*S3 Inc. v. Nvidia Corp.*,
  259 F.3d 1364 (Fed. Cir. 2001) ................................................5

*Tech. Licensing Corp. v. Videotek, Inc.*,
  545 F.3d 1316 (Fed. Cir. 2008) ................................................5

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - iii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*Telcordia Techs., Inc. v. Cisco Sys., Inc.,*
  612 F.3d 1365 (Fed. Cir. 2010) ...................................................................5

*Timeline, Inc. v. ProClarity Corp.,*
  No. 05-1013, 2007 WL 1103092 (W.D. Wa. Apr. 11, 2007) ............................7

*TypeRight Keyboard Corp. v. Microsoft Corp.,*
  374 F.3d 1151 (Fed. Cir. 2004) ...................................................................2

*Typhoon Touch Techs., Inc. v. Dell, Inc.,*
  659 F.3d 1376 (Fed. Cir. 2011) ...............................................9, 12, 16, 18, 21

*WMS Gaming v. Int'l Gaming Tech.,*
  184 F.3d 13398 (Fed. Cir. 1999) ...............................................................6, 7

STATUTES

35 U.S.C. § 112............................................................................1, 2, 4, 8, 9, 22

35 U.S.C. § 282............................................................................................2

RULES

Federal Rule of Civil Procedure 56 ...................................................................1

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - iv
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## I.    INTRODUCTION

Motorola Mobility, Inc. and General Instrument Corporation ("Motorola") respectfully request that the Court deny Microsoft Corporation's ("Microsoft") motion for summary judgment of invalidity of claim 14 of U.S. Patent No. 7,310,374 ("the '374 patent"), claim 13 of U.S. Patent No. 7,310,375 ("the '375 patent"), and claim 22 of U.S. Patent No. 7,310,376 ("the '376 patent") (collectively "the Motorola Patents") because each of these claims meets the "definiteness" requirement of 35 U.S.C. § 112, ¶ 6 and § 112, ¶ 2.

The claims at issue are definite because the term "decoder" disclosed in the specification of the Motorola Patents is a discrete class of known structures that will perform the functions recited in those claims.  The claimed functions are variations of well-known decoder functions, and one of ordinary skill in the art, reading the specification, would have known and readily understood how to modify the structure of a decoder to perform the claimed functions. Accordingly, the details of those modifications need not be disclosed in the patent specification.

Microsoft's argument that the structure corresponding to the claimed functions are required to be algorithms disclosed in the specification is misplaced because that principle applies when the only structure disclosed and claimed is a general purpose computer programmed to perform a function, which is not the case here.  Even if this Court finds that the "decoder" is a general purpose computer (it is not) a person of ordinary skill in the art would understand that the Motorola patents disclose algorithms for performing the claimed functions, so summary judgment of indefiniteness must be denied.

## II.    STATEMENT OF LAW

To succeed on their motion for partial summary judgment, Microsoft must show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (citing to Fed. R. Civ. P. 56(c)).  Even where Microsoft and Motorola draw different inferences from the same facts, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - 1
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    drawn in his favor." *Anderson*, 477 U.S. at 255.

2            A patent is presumed valid, and the burden of establishing invalidity as to any claim of a

3    patent rests upon the party asserting such invalidity.  35 U.S.C. § 282.  Clear and convincing

4    evidence is required to invalidate a patent.  *See TypeRight Keyboard Corp. v. Microsoft Corp.*, 374

5    F.3d 1151, 1157 (Fed. Cir. 2004).  A challenge to a claim containing a means-plus-function

6    limitation as lacking structural support, requires a finding, by clear and convincing evidence, that

7    the specification lacks adequate disclosure of structure sufficient to be understood by one skilled

8    in the art as able to perform the recited functions.  *Intel Corp. v. VIA Techs. Inc.*, 319 F.3d 1357,

9    1365-66 (Fed. Cir. 2003).

10           The proper test for meeting the definiteness requirement under 35 U.S.C. § 112, ¶ 6 is that

11   the corresponding structure of a means-plus-function limitation must be disclosed in the

12   specification itself in a way that one skilled in the art will understand what structure  will perform

13   the recited function.  *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1381 (Fed. Cir.

14   1999).

15           In this case, the specification of the Motorola Patents adequately discloses to one of

16   ordinary skill in the art that a "decoder" is the structure corresponding to the functions of the

17   "means for decoding" and "means for using" claims elements.[1]

18   **III.    ARGUMENT**

19           **A.    The Specification's Disclosure of a "Decoder" Is Sufficient to Indicate to a
20                   Person of Ordinary Skill in the Art the Structure Corresponding to the
                     "Means For Decoding" and "Means For Using" Claim Elements.**

21           A person of ordinary skill in the art, reading the common specification of the Motorola

22   Patents, would understand that the Motorola Patents teach using a decoder to perform the

23   functions in claim 14 of the '374 patent, claim 13 of the '375 patent, and claim 22 of the '376

24   ────────────────────────

25   [1]       The parties agreed on the eve of the *Markman* Hearing that the structure corresponding to the "means for
     decoding…" and "means for using…" claim elements is a "decoder," subject to each party reserving its position as to
26   whether structure is adequately disclosed in the specification.  *See Markman* Hr'g. Tr. 5-6, Mar. 9, 2012.

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - 2
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

patent.  *See* Declaration of Timothy J. Drabik ("Drabik Decl.") ¶ 17.  The specification and the claims make it clear that the decoder decodes digital video.  For example, each of the claims at issue refers to "an apparatus for decoding an encoded picture from a bitstream."  Similarly, the specification describes that "the decoder decodes the [encoded] pictures."  '374 patent, 4:57-59.  As described in the specification, the general idea behind decoding is to "decompress" video data:

> After the compressed video data has been transmitted, it must be decoded, or decompressed. In this process, the transmitted video data is processed to generate approximation data that is substituted into the video data to replace the "non-essential" data that was removed in the coding process.

'374 patent, 1:62-67.  Decoders are further discussed in the specification in the context of widely known video coding standards:

> Consequently, video coding standards have been developed to standardize the various video coding methods so that the compressed digital video content is rendered in formats that a majority of video encoders and decoders can recognize.

'374 patent, 2:10-14.  The specification identifies MPEG-1, MPEG-2, MPEG-4, H261 and H263 as examples of video coding standards in wide use. '374 patent, 2:9-19.  These uses of "decoder" in the specification, in combination with the reference to well-known MPEG/ITU-T video coding standards, connote to a person of ordinary skill in the art that the "decoder" referred to in the specification is a discrete, well-known class of structures called digital video decoders.  Drabik Decl. ¶ 23.

Digital video decoder structures have well-known, basic components for decoding encoded digital video content—entropy decoding, inverse scanning, inverse quantization, inverse transform and prediction.  Drabik Decl. ¶ 20.  These components invert the processes used to encode the video data:  entropy decoding is the inverse of equally well-known entropy coding, inverse scanning is the inverse of equally well-known scanning, inverse quantization is the inverse of equally well-known quantization, inverse transform is the inverse of equally well-known transform, and inverse prediction is the inverse of equally well-known prediction.  *Id.*

The known class of digital video decoders is implemented using several types of electronic

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - 3
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

devices, including devices that use different technologies to implement the basic structural components of the decoder. *Id.* at ¶ 24. The specification discloses that a "decoder" can be implemented as a processor, ASIC, FPGA, CODEC, or DSP:

> The encoder or decoder can be a processor, application specific integrated circuit (ASIC), field programmable gate array (FPGA), coder/decoder (CODEC), digital signal processor (DSP), or some other electronic device that is capable of encoding the stream of pictures. . . . The term "decoder" will be used to refer expansively to all electronic devices that decode digital video content comprising a stream of pictures.

'374 patent, 4:59-5:3. Each of these implementations, whether hardware or software, would have the basic structural components for performing entropy decoding, inverse scanning, inverse quantition, inverse transform, inverse prediction, and picture reconstruction. At the time of the filing of the specification, digital video decoders implemented using ASICs (Drabik Decl. ¶¶ 28-30), FPGAs (Drabik Decl. ¶¶ 31-32), or DSPs (Drabik Decl. ¶¶ 33-35) were known and commercially available. In an ASIC implementation, the various structural components correspond directly to hard-wired physical blocks of circuitry. Drabik Decl. ¶ 26. In an FPGA implementation the structural components are configured through programming of connections among circuit elements. *Id.* Once programmed, an FPGA possesses physical blocks of circuitry corresponding to functional blocks, just as an ASIC does. *Id.* With respect to software implementations on a processor or a DSP, the various structural components are defined by procedures or software tasks, which control the operation of the computer or DSP structure, through which video data is processed. *Id.*

Because the specification connotes to one of ordinary skill in the art a known class of structures for performing the claimed functions, the requirements of 35 U.S.C § 112, ¶ 6 are satisfied. The specification does not need to describe the routine details on how to build the known structural components of a decoder. A person of ordinary skill in the art would have understood from the disclosure in the specification how to implement the claimed functions in a decoder. Drabik Decl. ¶¶ 49-52; *see Intel Corp.*, 319 F.3d at 1366, 1370 (holding that the internal

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - 4
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

circuitry of an electronic device need not be disclosed in the specification if one of ordinary skill in the art would understand how to build and modify the device); *S3 Inc. v. Nvidia Corp.*, 259 F.3d 1364, 1370-71 (Fed. Cir. 2001) (holding that "selector" was structure for the "means . . . for selectively receiving," and that "[t]he law is clear that patent documents need not include subject matter that is known in the field of the invention and is in the prior art, for patents are written for persons experienced in the field of the invention…. To hold otherwise would require every patent document to include a technical treatise for the unskilled reader."); *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1376-77 (Fed. Cir. 2010) (holding that "controller" was structure for "monitoring means," and that "an ordinary artisan would have recognized the controller as an electronic device with a known structure."); *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1338-39 (Fed. Cir. 2008) (holding that "video standard detector" was the structure for "circuitry to provide format signal changeable in response to the format of said video type signal" and that "the absence of internal circuitry in the written description does not automatically render the claim indefinite."); *Atmel Corp.*, 198 F.3d at 1381 (holding that the title of the article in the specification  may, by itself, be sufficient to indicate to one skilled in the art the precise structure of the means for performing the recited function); *Goss Int'l Ams., Inc. v. Graphic Mgmt. Assocs.*, 739 F. Supp. 2d 1089, 1100 (N.D. Ill. 2010) (holding that "controller" was the structure for "control means" and that "a controller is a known structure that is a type of special purpose computer…. these controllers may not even require any algorithms at all if they consist of only circuitry to perform their specific purpose.").

Microsoft argues that the term "decoder" is used in the Motorola Patents in a functional manner to describe all structures that have decoding functionality, and does not identify a specific structure.  DKT. 205 at 8.  But, this ignores that it is sufficient if the specification identifies to one of ordinary skill in the art a "class" of structures.  *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1322 (Fed. Cir. 2004) ("That the disputed term is not limited to a single structure does not disqualify it as a corresponding structure, as long as the class of structures is identifiable by a

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - 5
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    person of ordinary skill in the art.").  A person of ordinary skill in the art would have understood

2    the term "decoder" to include the basic structural components common to the video coding

3    standards, which were developed to "standardize the various video coding methods so that the

4    compressed digital video content is rendered in formats that a majority of video encoders and

5    decoders can recognize." '374 patent, 2:11-14.  Indeed, such decoders were both known and

6    commercially available.  Drabik Decl. ¶¶ 28-38, 45-48.  The decoder of the claimed inventions

7    modifies the prediction functions of the known decoder structure, and those modifications are

8    described in the specification.  Drabik Decl. ¶¶ 49-52.  One of ordinary skill, reading the

9    specification, would have known how to build and modify the known decoder structures to

10   perform the claimed functions.  *Id.*; *see Intel Corp.*, 319 F.3d at 1366.

   **B.      The Case Law Requiring Disclosure of an Algorithm Does Not Apply in This
            Case to the Disclosure of a "Decoder."**

13       Microsoft relies on cases, such as *Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*,

14   521 F.3d 1328 (Fed. Cir. 2008), for the proposition that patents that claim a computer-

15   implemented function in "means-plus-function" form must disclose an algorithm for performing

16   that function as part of the Section 112, ¶ 6 requirement to disclose corresponding structure.  DKT.

17   205 at 7.  These cases are completely inapposite.

18       As discussed in *Aristocrat*, the rationale for this requirement is that a general purpose

19   computer programmed to perform a particular function is in effect a special purpose computer, and

20   on that basis may be patented.  *Aristrocrat*, 521 F.3d at 1333 (citing *WMS Gaming v. Int'l Gaming

21   Tech.*, 184 F.3d 13398 (Fed. Cir. 1999) and *In re Alappat*, 33 F.3d 1526 (Fed. Cir. 1994)).  The

22   corollary is that a patent claiming a general purpose computer programmed to perform a function

23   must be limited to that special purpose computer structure (plus equivalents), and must disclose

24   the algorithm that defines it.  However, where as here, a patent claims an apparatus that has

25   structures that are more particular and well known than that of a general purpose computer, such

26   as a known decoder structure, the rationale underlying these cases does not exist, and they should

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - 6
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

not apply.

Microsoft argues that "the common specification must disclose an algorithm to avoid invalidity for indefiniteness" because the Motorola Patents "identify only general purpose hardware as performing the 'decoding' function." DKT 205 at 10. However, as discussed above, the Motorola Patents do not identify mere general purpose hardware as the structure for performing the claimed functions. Instead, they disclose a "decoder," which is more than just a general purpose computer. It was understood by one of ordinary skill to be a discrete class of known structures. That this known structure could be implemented by using a processor does not mean that the disclosed structure is just any general purpose computer. The disclosed structure is limited to electronic devices having the structural components of a decoder as dictated by the video coding standards with which it must comply, as modified to perform the claimed function. Moreover, it was known to be so by those of ordinary skill in the art.

Thus, the cases relied on by Microsoft are inapplicable in this case because, unlike here, the **only** structure identified for performing the claimed function in those cases was a microprocessor or a general purpose computer that was not otherwise part of a known type of device. *See WMS Gaming, Inc.*, 184 F.3d at 1349 ("the structure disclosed . . . is a *microprocessor* programmed to perform the algorithm illustrated in Figure 6"); *Aristocrat*, 521 F.3d at 1334 (specification disclosed "any *standard microprocessor* base [sic] gaming machine"); *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1367 (Fed. Cir. 2008) (specification disclosed "*general purpose bank computer*"); *HTC Corp. v. IP-Com GmBH & Co.*, 667 F.3d 1270, 1280 (Fed. Cir. 2012) (a processor and transceiver alone amount to "*nothing more than a general purpose computer*"); *Dealertrack v. Huber*, Nos. 2009-1566, 2009-1588, 2012 WL 164439, at *12 (Fed. Cir. Jan. 20, 2012) ("[a] *general purpose computer* can perform the claimed function…"); *Timeline, Inc. v. ProClarity Corp.*, No. 05-1013, 2007 WL 1103092, at *5 (W.D. Wa. Apr. 11, 2007) ("the structure for performing the claimed function is a main process running on a *computer*"); *In re Aoyama*, 656 F.3d 1293, 1298 (Fed Cir. 2011) (Figure 8 and corresponding

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - 7
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

description "fail[ed] 'to describe, even at a high level, how a *computer* could be programmed to produce the structure that provides the results described in the boxes.'").

Citing to a sentence from the dissent, Microsoft argues that the Court in *Aoyama* "required an algorithm for a means element corresponding to an ASIC or an FPGA."  DKT. 205 at 5.  To the contrary, the majority opinion in that case did not discuss ASICs or FPGAs in connection with the claimed function.  Rather, the Court addressed whether a flowchart (Figure 8) linked to the claimed function adequately disclosed structure for performing the claimed function.  *Aoyama*, 656 F.3d at 1297.  Paragraph 0019 of the specification to which Microsoft points for disclosure of an ASIC and FPGA is a description of Figure 1 of the patent at issue, not of Figure 8.  Thus, Microsoft's representation that the Court "required an algorithm for a means element corresponding to an ASIC or an FPGA" is incorrect.

C.      **Even If Disclosure of an Algorithm Is Required, the Specification Discloses Algorithms for Performing the Claimed Functions.**

If this Court determines that the *Aristocrat* line of cases applies to the "means for decoding" and "means for using" claim elements, one of ordinary skill in the art would understand that the specification of the Motorola Patents discloses such an algorithm, operating within the decoder structure, for performing each of the corresponding claimed functions.

In *Atmel*, the Federal Circuit explained the role of the specification in functional claiming under § 112 ¶ 6:

> All one needs to do in order to obtain the benefit of that claiming device is to recite *some structure* corresponding to the means in the specification, as the statute states, so that one can readily ascertain what the claim means and comply with the particularity requirement of ¶ 2.  The requirement of specific structure in § 112, ¶ 6 thus *does not raise the specter of an unending disclosure of what everyone in the field knows* that such a requirement in § 112, ¶ 1 would entail.

*Atmel*, 198 F.3d at 1382.  The Federal Circuit has applied this principle to the claiming of computer implemented functions.  *Typhoon Touch Techs.*, *Inc. v. Dell, Inc.*, 659 F.3d 1376, 1384 (Fed. Cir. 2011).  In particular, the Federal Circuit has applied this principle in cases holding that

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - 8
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

sufficient algorithmic structure was disclosed in the specification.  In *Typhoon*, the Federal Circuit reversed a district court's determination that a means element was indefinite for failure to provide an algorithm.  *Id.*  The means plus function limitation at issue was "means for cross-referencing responses to said inquiries with possible responses from one of said libraries."  *Id.* at 1379.  The specification disclosed that this means "entail[ed] the steps of data entry, then storage of data in memory, then the search in a library of responses, then the determination if a match exists, and then reporting action if a match is found."  *Id.* at 1386.  The Federal Circuit held that this was sufficient, because "it suffices if the specification recites in prose the algorithm to be implemented by the programmer" and the patentee "is not required to produce a listing of source code or a highly detailed description of the algorithm to be used to achieve the claimed functions in order to satisfy 35 U.S.C. § 112 ¶ 6."  *Id.* at 1385-86.

In *AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1241-42 (Fed. Cir. 2007), the Federal Circuit reversed a district court's determination that a means element was indefinite.  The means plus function limitation at issue was "output means for outputting the recognised words into at least any one of the plurality of different computer-related applications."  *Id.* at 1241.  The specification disclosed that this means "us[ed] the dynamic data exchange ('DDE') protocol in the Windows operating system."  *Id.*  The Federal Circuit held that this was sufficient, because "a person of ordinary skill in this art would understand the DDE protocol," and that "preparing the software instruction . . . would be a trivial matter well within the reach of a person of ordinary skill in the art."  *Id.* at 1242.

Like in *Typhoon* and *AllVoice*, the specification of the Motorola Patents discloses algorithms for the decoder structure that would be understood by one of ordinary skill in the art as performing the claimed functions.  For each of the means elements, the specification of the Motorola Patents discloses the algorithms in the form of methods, rules and prose.  This is all that the case law requires.  *Typhoon*, 659 F.3d at 1385 ("[p]recedent and practice permit a patentee to express that procedural algorithm 'in any understandable terms'"…[and the] "patent need only

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - 9
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

disclose sufficient structure for a person of skill in the field to provide an operative software program for the specified function").

    1.    **The Specification Discloses Algorithms for the Decoder Structure That Are Sufficient to Give Meaning to Each of the "Means for Decoding" Claim Elements.**

As discussed below, Motorola's proposed algorithm for each of the "means for decoding" elements is supported by the specification and consistent with how a person of ordinary skill in the art would understand the specification to disclose the algorithms that correspond to the claimed functions.

    (a)    **"means for decoding . . . in inter coding mode"**

| Claim Term for Construction | Agreed Function | Agreed Structure | Algorithm |
|---|---|---|---|
| means for decoding at least one of a plurality of smaller portions at a time of the encoded picture that is encoded in frame coding mode and at least one of said plurality of smaller portions at a time of the encoded picture in field coding mode, wherein each of said smaller portions has a size that is larger than one macroblock, wherein at least one block within at least one of said plurality of smaller portions at a time is encoded in inter coding mode ('374 | decoding at least one of a plurality of smaller portions at a time of the encoded picture that is encoded in frame coding mode and at least one of said plurality of smaller portions at a time of the encoded picture in field coding mode, wherein each of said smaller portions has a size that is larger than one macroblock | a decoder | Motorola:  (1) receives from a bitstream information including pairs of macroblocks and a frame/field flag before each macroblock pair that indicates which mode, frame mode or field mode, is used in coding the macroblock pairs; and (2) performs inter prediction on blocks of the macroblock pairs in frame mode and field mode using at least one of the median, average, weighted average, "yes/no method," "always method," "selective method," "alt selective method," or "directional segmentation prediction |
| | | | Microsoft:  in field mode, creating in memory one or more macroblocks each containing one field and one or more macroblocks each containing the other field and processing each such macroblock together with the other macroblocks to create in memory at least two macroblocks containing lines from both fields and in frame mode, creating in memory one or more macroblocks each containing lines from both fields and processing each such macroblock together to create in memory at least two macroblocks containing lines from |

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - 10
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

| Claim Term for Construction | Agreed Function | Agreed Structure | Algorithm |
|---|---|---|---|
| Patent, claim 14) | | | both fields |

The parties agree that the claimed function for the "means for decoding . . ." element of the '374 patent, claim 14 is precisely as written in the claim. The parties also agree that the structure is a decoder.[2] The parties, however, disagree as to whether an algorithm is disclosed in the specification, and if so, what the algorithm consists of.

One of ordinary skill in the art would know and understand that there is an algorithm disclosed in the specification that corresponds to the claimed function. This algorithm enables a decoder to: (1) receive from a bitstream information including pairs of macroblocks and a frame/field flag before each macroblock pair that indicates which mode, frame mode or field mode, is used in coding the macroblock pair; and (2) perform inter prediction on blocks of the macroblock pairs in frame mode and field mode using at least one of the median, average, weighted average, "yes/no method," "always method," "selective method," "alt selective method," or "directional segmentation prediction." Drabik Decl. ¶ 59.

A person of ordinary skill in the art would have understood that the "means for decoding…in inter coding mode" element is directed to using inter prediction to decode pairs of macroblocks that are in frame mode or in field mode. The claim element refers specifically to "inter coding mode." Drabik Decl. ¶ 54. From the specification, the person of ordinary skill in the art knows and understands that the decoder receives in the bitstream information including pairs of macroblocks and a frame/field flag before each macroblock pair that indicates which mode, frame mode or field mode, is used in coding the macroblock pairs. '374 patent, 8:46-65, FIG. 7, FIG. 11; Drabik Decl. ¶ 55. He also knows and understands from the specification that the decoder performs inter prediction on blocks of the frame and field based macroblock pairs

---

[2]    As discussed above, the parties' agreement as to "decoder" is subject to each party reserving its position as to whether structure is adequately disclosed in the specification.

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

according to at least one of the inter prediction methods disclosed in the specification.  '374

patent, 9:9-12:56 ("median," "average," "weighted average," "yes/no method," "always method,"

"selective method," "alt selective method," and "directional segmentation prediction"), Fig. 12,

Fig. 7, 7:50-53, 7:65-67; Drabik Decl. ¶ 55.  He further knows and understands from the

specification that the various inter prediction methods disclosed in the specification are linked to

the claimed function of decoding macroblock pairs together in frame coding mode and field

coding mode.  '374 patent, 9:46-59 (the blocks "can be in either frame or field mode"), 10:34-37

(referring to "macroblock pair based AFF"), 11:28-31 ("[t]his method can be used in . . . pair

based macroblock AFF . . . coding"), Drabik Decl. ¶ 57.  This prosaic and pictorial description,

*Typhoon, supra,* is an adequate disclosure of the relevant algorithms.  How to implement this

algorithm in software was well within the skill in the art.  Drabik Decl. ¶ 60.

     Microsoft argues that "frame/field decoding occurs after and to right of the 'inverse

prediction' block."  DKT. 205 at 11.  But, it is clear from the specification that prediction **is** a

frame/field decoding operation (where prediction is performed on blocks within macroblock pairs

in frame/field mode), **not** an operation that occurs after frame/field decoding.  *See e.g.*, '374

patent, 15:64-65 ("In the case of decoding the prediction modes of blocks . . ."), 16:1-2 ("[I]n the

case of decoding the prediction modes of blocks . . ."), 16:4-5 ("In the case of decoding the

prediction mode of blocks . . ."), 16:6-7 ("In the case of decoding the prediction modes of the

block . . ."), 15:49-50 ("blocks . . . in frame or field mode"), 16:12-23, ("macroblock pair (170) is

decoded in field mode  . . ."), 16:24-35 ("macroblock pair (170) is decoded in frame mode . . ."),

10:34-37 ("referring to "macroblock pair based AFF""), 11:29-31 ("[t]his method can be used in .

. . pair based macroblock AFF coding"); Drabik Decl.¶ 58.

     As set forth above, Motorola has properly identified a sufficient algorithm performed in

the decoder structure corresponding to the claimed function.  In light of the specification, "one

skilled in the art would understand the bounds of the claim," and the "means for decoding"

element should be held definite.  Drabik Decl. ¶ 59; *see Personalized Media Commc'ns, LLC v.*

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - 12
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    *ITC*, 161 F.3d 696, 705 (Fed. Cir. 1998).

2         Microsoft disagrees with this identification of the algorithm.[3]  Microsoft's proposed

3    identification is incorrect.  Microsoft contends that the algorithm for the "means for decoding"

4    includes "processing" the field macroblocks "to create" frame macroblocks (containing lines from

5    both fields).  However, this is not part of the "means for decoding."  One of ordinary skill in the

6    art understands from the specification that reinterleaving the lines of the top and bottom field

7    macroblocks to create frame macroblocks occurs *after* the "decoding."  Drabik Decl. ¶ 74.  The

8    specification describes FIG. 8 in terms of how the encoder operates (i.e., from left to right):

9         if the pair of macroblocks (700) is to be encoded in field mode, it is **first split** into
          one top field 16 by 16 pixel block (800) and one bottom field 16 by 16 pixel block
10        (801), as shown in FIG. 8.  The two fields are **then coded separately**.

11   '374 patent, 7:54-58.  This shows that encoding happens after splitting the lines of the top and

12   bottom fields.  The decoder simply operates in reverse—(i.e., from right to left) the top and

13   bottom field macroblocks depicted on the right in FIG. 8 are **first decoded** and **then**

14   **reinterleaved** (unsplit) to construct the pair of frame macroblocks depicted on the left of FIG. 8.

15   Drabik Decl. ¶ 74.  As explained below, the reinterleaving of the field lines is part of the "means

16   for using" algorithm, not the "means for decoding."[4]  Thus, Microsoft has the right idea—the

17   algorithm for decoding can be identified—but Microsoft just points to the wrong algorithm for the

18   decoder.

19         Accordingly, Motorola's algorithm for the "means for decoding . . . in inter coding mode"

20   _____

21   3      Although Microsoft contends that the "means for decoding" claim elements are indefinite, it also manages to
     propose a construction.  Microsoft acknowledged in its claim construction brief that the algorithm for performing the
22   claimed function of the "means for decoding" elements is disclosed in the specification.  *See* DKT. 173 at 12-16
     ("Microsoft's proposal properly tracks the **algorithm disclosed in the specification**") ("Microsoft properly identifies
23   the disclosed structure and the **algorithm disclosed in the specification** for performing the claimed function.").
     Although its construction is incorrect, Microsoft's ability to propose that construction shows that the term is not
24   indefinite.  The issue for the Court is really about which identification of the algorithm is correct.

     4      Microsoft also contends that the algorithm for the "means for decoding" involves "removing [a] mode."
25   DKT. 173 at 8.  However, as the specification explains, decoding processes operate "**in a mode**."  '374 patent, 16:12-
     59 (explaining what happens if designated macroblock pairs are "decoded **in frame/field mode**"); *see also* DKT. 174
26   at 8.

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - 13
CASE NO. C10-1823-JLR

Summit Law Group PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

is consistent with the disclosure in the specification and should, therefore, be adopted, confirming that this term is definite.

          (b)     "means for decoding . . . in intra coding mode at a time"

| Claim Term for Construction | Agreed Function | Agreed Structure | Algorithm |
|---|---|---|---|
| means for selectively decoding at least one of a plurality of smaller portions at a time of the encoded picture that is encoded in frame coding mode and at least one of said plurality of smaller portions at a time of the encoded picture in field coding mode, wherein each of said smaller portions has a size that is larger than one macroblock, wherein at least one block within at least one of said plurality of smaller portions is encoded in intra coding mode at a time ('375 patent, claim 13) | selectively decoding at least one of a plurality of smaller portions at a time of the encoded picture that is encoded in frame coding mode and at least one of said plurality of smaller portions at a time of the encoded picture in field coding mode | a decoder | **Motorola**:  (1) receives from a bitstream information including pairs of macroblocks and a frame/field flag before each macroblock pair that indicates which mode, frame mode or field mode, is used in coding the macroblock pairs; and (2) performs intra prediction on blocks of the macroblock pairs in at least one of the vertical, horizontal, DC prediction, diagonal down/left, diagonal down/right, vertical-left, horizontal-down, vertical-right, horizontal-up, or plane prediction modes, using neighboring blocks determined by at least one of Rule 1, Rule 2, Rule 3 or Rule 4 '374 patent, 15:52-16:63 |
| | | | **Microsoft**:  in field mode, creating in memory one or more macroblocks each containing one field and one or more macroblocks each containing the other field and processing each such macroblock together with the other macroblocks to create in memory at least two macroblocks containing lines from both fields and in frame mode, creating in memory one or more macroblocks each containing lines from both fields and processing each such macroblock together to create in memory at least two macroblocks containing lines from both fields |

      The analysis for the intra coding limitation is similar to that for the inter-coding limitation discussed above.  Here, the parties agree that the claimed function for the "means for selectively decoding . . ." element of the '375 patent, claim 13 is precisely as written in the claim.  The parties also agree that the structure is a decoder.[5]  The parties, however, disagree again as to whether an

---

[5]    As discussed above, the parties' agreement as to "decoder" is subject to each party reserving its position as to whether structure is adequately disclosed in the specification.

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - 14
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   algorithm is disclosed in the specification, and if so, what the algorithm consists of.

2        As above, one of ordinary skill in the art would know and understand that there is an

3   algorithm disclosed prosaically and pictorially in the specification that corresponds to the claimed

4   function.  The algorithm enables a decoder to:  (1) receive from a bitstream information including

5   pairs of macroblocks and a frame/field flag before each macroblock pair that indicates which

6   mode, frame mode or field mode, is used in coding the macroblock pairs; and (2) perform intra

7   prediction on blocks of the macroblock pairs in at least one of the vertical, horizontal, DC

8   prediction, diagonal down/left, diagonal down/right, vertical-left, horizontal-down, vertical-right,

9   horizontal-up, or plane prediction modes, using neighboring blocks determined by at least one of

10   Rule 1, Rule 2, Rule 3 or Rule 4 at '374 patent, 15:52-16:63; Drabik Decl. ¶ 66.

11        A person of ordinary skill in the art would have understood that the "means for

12   decoding…in intra coding mode at a time" element is directed to using intra prediction to decode

13   pairs of macroblocks that are in frame mode or in field mode.  Drabik Decl. ¶ 61.  This claim

14   element refers specifically to "intra coding mode."  Drabik Decl. ¶ 61.  From the specification, the

15   person of ordinary skill in the art knows and understands that the decoder receives in the bitstream

16   information including pairs of macroblocks and a frame/field flag before each macroblock pair

17   that indicates which mode, frame mode or field mode, is used in coding the macroblock pairs.

18   '374 patent, 8:46-65, FIG.7, FIG. 11; Drabik Decl. ¶ 62.  He also knows and understands from the

19   specification that the decoder performs intra prediction on blocks of the frame based or field based

20   macroblock pairs in at least one of the vertical, horizontal, DC prediction, diagonal down/left,

21   diagonal down/right, vertical-left, horizontal-down, vertical-right, horizontal-up, or plane

22   prediction modes, using neighboring blocks determined by at least one of Rule 1, Rule 2, Rule 3

23   or Rule 4.  '374 patent, 14:37-16:63, FIG. 14, FIG. 15, FIG. 16a-b, FIG. 17a-d; Drabik Decl. ¶ 62.

24   He further knows and understands from the specification that the various intra prediction methods

25   disclosed in the specification are linked to the claimed function of decoding macroblock pairs

26   together in frame coding mode and field coding mode.  *See, e.g.*, '374 patent, 14:64-65 ("An intra

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - 15
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

block and its neighboring blocks may be coded in frame or field mode"), 15:48-49 ("Block C and its neighboring blocks A and B can be in frame or field mode"), 15:64-65 ("In the case of decoding the prediction modes of blocks . . ."), 16:12-23, ("If the above macroblock pair (170) is decoded in field mode. . ."), 16:24-35 ("if the above macroblock pair (170) is decoded in frame mode . . ."); Drabik Decl. ¶ 65.  This prosaic and pictorial description, *Typhoon, supra,* is an adequate disclosure of the relevant algorithms.  How to implement this algorithm in software was well within the skill in the art.  Drabik Decl. ¶ 67.

As set forth above, Motorola has properly identified a sufficient algorithm performed in the decoder structure corresponding to the intra-coding function.  In light of the specification, "one skilled in the art would understand the bounds of the claim," and the "means for decoding . . ." element should be held definite.

In sum, the parties disagree over what the claimed algorithm consists of.  Microsoft's definition shows that Microsoft knows an algorithm for this function can be found prosaically and pictorially in the specification—it just chooses the wrong algorithm.  This disagreement parallels that as discussed above in Section (1) and that analysis applies here as well.  Motorola's proposed algorithm for the "means for decoding. . . in intra-coding mode at a time" is consistent with the disclosure in the specification and should, therefore, be adopted , confirming that this limitation is indeed definite.

**(c)      "means for decoding . . . in a horizontal scanning path or a vertical scanning path"**

| Claim Term for Construction | Agreed Function | Agreed Structure | Algorithm |
|---|---|---|---|
| means for decoding at least one of a plurality of processing blocks at a time, each processing block containing a pair of macroblocks or a | decoding at least one of a plurality of processing blocks at a time, each processing block containing a pair of macroblocks or a group of | a decoder | **Motorola**:  (1) receives from a bitstream information including pairs of macroblocks and a frame/field flag before each macroblock pair that indicates which mode, frame mode or field mode, is used in coding the macroblock pairs; (2) decodes the macroblock pairs of a picture from left to right and from top to bottom, as shown in FIG. 9 path 900, or from top to bottom and |

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - 16
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

| Claim Term for Construction | Agreed Function | Agreed Structure | Algorithm |
|---|---|---|---|
| group of macroblocks, each macroblock containing a plurality of blocks, from said encoded picture that is encoded in frame coding mode and at least one of said plurality of processing blocks at a time that is encoded in field coding mode, wherein said decoding is performed in a horizontal scanning path or a vertical scanning path ('376 patent, claim 22) | macroblocks, each macroblock containing a plurality of blocks, from said encoded picture that is encoded in frame coding mode and at least one of said plurality of processing blocks at a time that is encoded in field coding mode, wherein said decoding is performed in a horizontal scanning path or a vertical scanning path | | from left to right, as shown in FIG. 9 path 901; and (3) within each frame macroblock pair decodes the top macroblock of the macroblock pair first, followed by the bottom macroblock, and within each field macroblock pair decodes the top field macroblock of the macroblock pair first, followed by the bottom field macroblock |
| | | | **Microsoft**:  in field mode, creating in memory one or more macroblocks each containing one field and one or more macroblocks each containing the other field and processing each such macroblock together with the other macroblocks to create in memory at least two macroblocks containing lines from both fields and in frame mode, creating in memory one or more macroblocks each containing lines from both fields and processing each such macroblock together to create in memory at least two macroblocks containing lines from both fields |

Once again, the parties agree that the claimed function for the "means for decoding . . ." element of the '376 patent, claim 22 is precisely as written in the claim.  The parties also agree again that the structure is a decoder.[6]  The parties, however, disagree as to whether an algorithm is disclosed in the specification, and if so, what the algorithm consists of.

Here again, for similar reasons, one of ordinary skill in the art would know and understand that there is an algorithm disclosed in the specification that corresponds to the claimed function.  Here, the algorithm is slightly different—it enables a decoder to:  (1) receive from a bitstream information including pairs of macroblocks and a frame/field flag before each macroblock pair that indicates which mode, frame mode or field mode, is used in coding the macroblock pairs; (2)

---

[6]      As discussed above, the parties' agreement as to "decoder" is subject to each party reserving its position as to whether structure is adequately disclosed in the specification.

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - 17
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

decode the macroblock pairs of a picture from left to right and from top to bottom, as shown in FIG. 9 path 900, or from top to bottom and from left to right, as shown in FIG. 9 path 901; and (3) within each frame macroblock pair decode the top macroblock of the macroblock pair first, followed by the bottom macroblock, and within each field macroblock pair decode the top field macroblock of the macroblock pair first, followed by the bottom field macroblock.  Drabik Decl. ¶ 72.

A person of ordinary skill in the art would have understood that the "means for decoding" element is directed to using a horizontal scanning path or a vertical scanning path to decode pairs of macroblocks.  Drabik Decl. ¶ 68.  This claim element refers specifically to a "horizontal scanning path" and a "vertical scanning path."  Drabik Decl. ¶ 68.  From the specification, the person of ordinary skill in the art knows and understands that the decoder receives in the bitstream information including pairs of macroblocks and a frame/field flag before each macroblock pair that indicates which mode, frame mode or field mode, is used in coding the macroblock pairs.  '374 patent, 8:46-65, FIG. 7, FIG. 11; Drabik Decl. ¶ 69.  He also knows and understands from the specification that the decoder decodes the macroblock pairs of a picture from left to right and from top to bottom, as shown in FIG. 9 path 900, or from top to bottom and from left to right, as shown in FIG. 9 path 901.  '374 patent, FIG. 9, 7:44-48; Drabik Decl. ¶ 69.  He further knows and understands from the specification that within each frame macroblock pair, the decoder decodes the top macroblock of the macroblock pair first, followed by the bottom macroblock; and within each field macroblock pair, the decoder decodes the top field macroblock of the macroblock pair first, followed by the bottom field macroblock.  '374 patent, FIG. 9, 8:14-18; Drabik Decl. ¶ 69.  This prosaic and pictorial description, *Typhoon, supra,* is an adequate disclosure of the relevant algorithms.  How to implement this algorithm in software was well within the skill in the art.  Drabik Decl. ¶ 73.

Motorola has properly identified a sufficient prosaic and pictorial algorithm performed in the decoder structure corresponding to the function.  In light of the specification, "one skilled in

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - 18
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  the art would understand the bounds of the claim," and the "means for decoding . . ." element

2  should be held definite.

3       The parties disagree again over what the claimed algorithm consists of.  This disagreement

4  parallels that as discussed above in Section (1) and that analysis applies here as well.  Motorola's

5  proposed algorithm for the "means for decoding . . . in a horizontal scanning path or a vertical

6  scanning path" is consistent with the disclosure in the specification and should, therefore, be

7  adopted, confirming that this limitation is indeed definite.

8       **2.    The Specification Discloses an Algorithm for the Decoder Structure
         That Is Sufficient to Give Meaning to the "Means for Using" Claim
9        Elements.**

10

| Claim Term for Construction | Agreed Function | Agreed Structure | Algorithm |
|---|---|---|---|
| means for using said plurality of decoded [smaller portions/processing blocks] to construct a decoded picture ('374 patent, claim 14, '375 patent, claim 13, '376 patent, claim 22) | using said plurality of decoded [smaller portions/processing blocks] to construct a decoded picture | a decoder | **Motorola:**  (1) for a decoded frame macroblock pair, uses the frame macroblocks of the macroblock pair for the decoded picture; (2) for a decoded field macroblock pair, reinterleaves the top and bottom field lines of the macroblock pair to form frame macroblocks and uses the frame macroblocks of the macroblock pair for the decoded picture; and (3) for a frame or field macroblock pair in which a macroblock is skipped, uses a co-located macroblock in a reference picture for the decoded picture. |
|  |  |  | **Microsoft**:  assembling a decoded picture using the decoded [smaller portions/processing blocks] like bricks in a wall |

20     The analysis for "means for using" parallels the analysis previously described for "means

21  for decoding".  Here, the parties agree that the claimed function for the "means for using . . ."

22  elements is precisely as written in the claims.  The parties also agree that the structure is a

23  "decoder."[7]  The parties, however, disagree as to whether an algorithm is disclosed in the

24  specification, and if so, what the algorithm consists of.

25  ─────────────
    [7]     As discussed above, the parties' agreement as to "decoder" is subject to each party reserving its position as to
26  whether structure is adequately disclosed in the specification.

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - 19
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    One of ordinary skill in the art would know and understand that there is an algorithm

2  disclosed in the specification that corresponds to the claimed function.  The algorithm enables a

3  decoder to:  (1) for a decoded frame macroblock pair, use the frame macroblocks of the

4  macroblock pair for the decoded picture; (2) for a decoded field macroblock pair, reinterleave the

5  top and bottom field lines of the macroblock pair to form frame macroblocks and use the frame

6  macroblocks of the macroblock pair for the decoded picture; and (3) for a frame or field

7  macroblock pair in which a macroblock is skipped, use a co-located macroblock in a reference

8  picture for the decoded picture.  Drabik Decl. ¶ 77.

9    One of ordinary skill in the art would know and understand from the specification that

10  there is an algorithm disclosed that corresponds to the function of using macroblock pairs to

11  construct a decoded picture.  Drabik Decl. ¶ 76.  From the specification, the person of ordinary

12  skill in the art knows and understands that for a decoded frame macroblock pair, the decoder uses

13  the frame macroblocks for the decoded picture.  *Id.*  He understands that for a decoded field

14  macroblock pair, the decoder reinterleaves the top and bottom field lines of the macroblock pair to

15  form frame macroblocks and uses the frame macroblocks of the macroblock pair for the decoded

16  picture.  FIG. 8 illustrates to one of ordinary skill in the art that in the encoding direction (from left

17  to right), the encoder splits the odd and even lines of the pair of frame macroblocks to form top

18  and bottom field macroblocks; and that in the decoding direction (from right to left), the decoder

19  reinterleaves the lines of the top and bottom field macroblocks to form the frame macroblocks and

20  uses those frame macroblocks for the decoded picture.  Drabik Decl. ¶ 76.  The specification

21  further describes that for a frame or field macroblock pair in which a macroblock is skipped, a co-

22  located macroblock in a reference picture is used for the decoded picture during picture

23  reconstruction.  '374 patent, 12:67-13:5, 13:12-19, 14:21-28; Drabik Decl. ¶ 76.  This prosaic and

24  pictorial description, *Typhoon, supra,* is an adequate disclosure of the relevant algorithms.  How to

25  implement this algorithm in software was well within the skill in the art.  Drabik Decl. ¶ 78.

26    Motorola has properly identified a sufficient algorithm performed in the decoder structure

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - 20
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

corresponding to the claimed function.  In light of the specification, "one skilled in the art would understand the bounds of the claim," and the "means for using" elements should be held definite.

As before, the parties also disagree over what the algorithm consists of.[8]  Microsoft's proposed construction is incorrect for at least the following reasons.  First, Microsoft's construction ignores that one of ordinary skill in the art understands from the specification that, during picture reconstruction, the lines of the top and bottom field macroblocks of the macroblock pair are reinterleaved into frame macroblocks prior to being added to the decoded picture.  Drabik Decl. ¶ 79.  Second, Microsoft's construction is overly narrow.  It seeks to limit the function performed by the structure by adding that the structure perform[s] "the algorithm of assembling a decoded picture using the decoded [smaller portion/processing blocks] like bricks in a wall." DKT. 173at 19-20.  This is improper because neither the claims nor the specification limit the method of construction to be "assembly," "like bricks in a wall."  The specification more broadly discloses that the picture construction includes copying for skipped macroblocks.  '374 patent, 12:67-13:5, 13:12-19, 14:21-28; Drabik Decl. ¶ 80.  Motorola's proposed algorithm for the "means for using" is consistent with the disclosure in the specification and should, therefore, be adopted.

Plainly, the specification discloses, albeit in prose and pictures and not mathematical formulae, algorithms that perform the claimed functions in the decoder.  That is all that is required by law and should put an end to this motion.  Even if Microsoft quarrels with the adequacy of the algorithms, that is a fact issue for a jury.

## IV.    CONCLUSION

In summary, Microsoft's motion for summary judgment of invalidity should be denied because it is unable to show by clear and convincing evidence that the claims at issue fail to

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - 21
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

satisfy the requirements of 35 U.S.C. § 112, ¶ 2 and § 112, ¶ 6.

DATED this 6th day of April, 2012.

Respectfully submitted,

SUMMIT LAW GROUP PLLC

By /s/ Ralph H. Palumbo
    Ralph H. Palumbo, WSBA #04751
    Philip S. McCune, WSBA #21081
    Lynn M. Engel, WSBA #21934
    ralphp@summitlaw.com
    philm@summitlaw.com
    lynne@summitlaw.com

By /s/ K. McNeill Taylor, Jr.
    K. McNeill Taylor, Jr.
    MOTOROLA MOBILITY, INC.
    MD W4-150
    600 North U.S. Highway 45
    Libertyville, IL  60048-1286
    Phone:  858-404-3580
    Fax:  847-523-0727

And by

    Steven Pepe (pro hac vice)
    Jesse J. Jenner (pro hac vice)
    Stuart W. Yothers (pro hac vice)
    Ropes & Gray LLP
    1211 Avenue of the Americas
    New York, NY  10036-8704
    (212) 596-9046
    steven.pepe@ropesgray.com
    jesse.jenner@ropesgray.com
    stuart.yothers@ropesgray.com

---

[8]     Although Microsoft contends that the "means for using" claim elements are indefinite, it also proposes a construction. *See* DKT. 173 at 19-20.  Although its construction is incorrect, Microsoft's ability to propose that construction shows that the term is not indefinite.  The real issue for the Court is to determine which construction is correct.

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - 22
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Norman H. Beamer (*pro hac vice*)
Gabrielle E. Higgins (*pro hac vice*)
Ropes & Gray LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA  94303-2284
(650) 617-4030
*norman.beamer@ropesgray.com*
*gabrielle.higgins@ropesgray.com*

Paul M. Schoenhard (*pro hac vice*)
Kevin J. Post (*pro hac vice*)
Ropes & Gray LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC  20005-3948
(202) 508-4693
*paul.schoenhard.@ropesgray.com*
*kevin.post@ropesgray.com*

**Attorneys for Motorola Solutions, Inc., Motorola Mobility, Inc., and General Instrument Corporation**

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - 23
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Arthur W. Harrigan, Jr., Esq.
Christopher T. Wion, Esq.
Shane P. Cramer, Esq.
Danielson, Harrigan, Leyh & Tollefson LLP
*arthurh@dhlt.com*
*chrisw@dhlt.com*
*shanec@dhlt.com*

Brian R. Nester, Esq.
David T. Pritikin, Esq.
Douglas I. Lewis, Esq.
John W. McBride, Esq.
Richard A. Cederoth, Esq.
David Greenfield, Esq.
William H. Baumgartner, Jr., Esq.
David C. Giardina, Esq.
Carter G. Phillips, Esq.
Constantine L. Trela, Jr., Esq.
Ellen S. Robbins, Esq.
Sidley Austin LLP
*bnester@sidley.com*
*dpritikin@sidley.com*
*dilewis@sidley.com*
*jwmcbride@sidley.com*
*rcederoth@sidley.com*
*david.greenfield@sidley.com*
*wbaumgartner@sidley.com*
*dgiardina@sidley.com*
*cphillips@sidley.com*
*ctrela@sidley.com*
*erobbins@sidley.com*

T. Andrew Culbert, Esq.
David E. Killough, Esq.
Microsoft Corp.
*andycu@microsoft.com*
*davkill@microsoft.com*

DATED this 6th day of April, 2012.

_/s/ Marcia A. Ripley_
Marcia A. Ripley

MOTOROLA'S OPPOSITION TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY - 24
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001