HONORABLE JAMES L. ROBART

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION,

   Plaintiff,

 v.

MOTOROLA INC., et al.,

   Defendant.

MOTOROLA MOBILITY, INC., et al.,

   Plaintiffs,

 v.

MICROSOFT CORPORATION,

   Defendant.

No. C10-1823-JLR

MICROSOFT'S REPLY IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**Hearing:  Wednesday, April 11, 2012
11:00 am**

MICROSOFT'S REPLY IN SUPPORT OF ITS MOTION FOR TRO AND PRELIMINARY INJUNCTION

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

# TABLE OF CONTENTS

**Page**

ARGUMENT ..................................................................................................2

I. MOTOROLA'S LATER-FILED GERMAN ACTION IS ENTITLED
   TO NO DEFERENCE FROM THIS COURT ......................................................2

II. AN ORDER DIRECTING MOTOROLA TO DELAY EXCLUSION
    ACTIVITY IN GERMANY IS WELL WITHIN THIS COURT'S POWER.........4

   A. Where Other Factors Weigh In Favor Of Relief, An
      Injunction Should Be Granted So Long As The Impact On
      Comity Is "Tolerable"...................................................................5

   B. Comity Weighs in Favor of Granting Relief From Motorola's
      Later-Filed German Actions .........................................................5

III. ALL OTHER FACTORS WEIGH IN FAVOR OF INJUNCTIVE RELIEF .......10

   A. Motorola's Brief Misrepresents the Standards for Weighing
      Microsoft's Motion for a TRO and Preliminary Injunction ......................10

   B. Microsoft Has Made a Strong Showing of Likelihood of Success
      on the Merits and Also Satisfies the Ninth Circuit's Anti-Suit Factors.....10

CONCLUSION................................................................................................12

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR TRO AND
PRELIMINARY INJUNCTION - i

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

# TABLE OF AUTHORITIES

**Case Law**

*Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*,
    10 F.3d 425 (7th Cir. 1993) ..................................................................................... 5

*Alliance for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) .................................................................................. 4

*Applied Medical Dist. Corp. v. Surgical Co., BV*,
    587 F.3d 909 (9th Cir. 2009) .................................................................. 5, 6, 10, 11

*Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1, 92 S.Ct. 1907 (1972) ............................................................................. 7

*Chevron Corp. v. Naranjo*,
    667 F.3d 232 (2d Cir. 2012) .................................................................................... 8

*E. & J. Gallo Winery v. Andina Licores S.A.*,
    446 F.3d 984 (9th Cir. 2006) ........................................................................ 5, 6, 10

*Kaepa, Inc. v. Achilles Corp.*,
    76 F.3d 624 (5th Cir. 1996) ..................................................................................... 5

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
    500 F.3d 111 (2d Cir. 2007) .................................................................................... 7

*Laker Airways Ltd. v. Sabena Belgian World Airlines*,
    731 F.2d 909 (D.C. Cir. 1984) ................................................................................. 7

*Medtronic, Inc. v. Catalyst Research Corp.*,
    518 F. Supp. 946 (D. Minn. 1981) ........................................................................ 8, 9

*Microsoft Corp. v. Lindows.com, Inc.*,
    319 F. Supp. 2d 1219 (W.D. Wash. 2004) ............................................................... 9

*Robinson v. Jardine Ins. Brokers Int'l Ltd.*,
    856 F. Supp. 554 (N.D. Cal. 1994) .......................................................................... 8

*Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*,
    361 F.3d 11 (1st Cir. 2004) ................................................................................. 7, 8

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR TRO AND
PRELIMINARY INJUNCTION - ii

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

*Seattle Totems Hockey Club v. NHL*,
   652 F.2d 852 (9th Cir. 1981) ............................................................................. 6, 7

*Strategic Intent, LLC v. Strangford Lough Brewing Co. Ltd.*,
   No. CV-09-309-RHW, Order Granting Plaintiffs' Motion
   for Anti-Suit Injunction (E.D. Wa. Sept. 9, 2010) ..................................................... 6

*In re Unterweser Reederei Gmbh*,
   428 F.2d 888 (5th Cir. 1970) .................................................................................. 6

*Zynga, Inc. v. Vostu USA, Inc.*,
   No. 11–CV–02959, 2011 WL 3516164 (N.D. Cal. Aug. 11, 2011) ......................... 6

**Other Authorities**

Alexander Shaknes, Anti-Suit and Anti-Anti-Suit Injunctions in
Multi-Jurisdictional Proceedings, 21 *Aut., Int'l L. Practicum* 96 (2008) ............................. 8

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR TRO AND
PRELIMINARY INJUNCTION - iii

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

This is the first-filed case addressing Motorola's obligation to license its RAND-committed standard-essential patents to Microsoft worldwide on RAND terms. Microsoft has repeatedly confirmed its intent to take a license on RAND terms.[1] Motorola's later-filed (in July 2011) German action is a direct challenge to this Court's authority to issue the worldwide relief—the exclusion Motorola seeks is premised on the absence of the very license Motorola has improperly withheld. Motorola now concedes that a $300M bond is more than sufficient to protect its rights while this Court considers Microsoft's claim to a worldwide RAND license. (Dkt. No. 244, Defs.' Opp. to Microsoft's Mot. for TRO and Prelim. Inj. ("Opp.") 13.) Motorola therefore should agree to delay enforcement action in Germany and the bond should be entered here. If Motorola continues to refuse to acknowledge its RAND commitments and to attempt to frustrate this Court's jurisdiction, the preliminary relief Microsoft requests should issue. As explained below, where one party seeks an injunction directed toward a later-filed foreign action, the interests of international comity weigh *in favor* of granting such relief. *See* Section II.B, *infra*.

Motorola devotes the bulk of its opposition to a discussion of procedures theoretically available in Germany to forestall issuance of an injunction there. But this misses the point. Having filed this lawsuit first to obtain worldwide relief, Microsoft should not be put to the risk of an injunction in jurisdictions where Motorola chose to sue *after* this lawsuit was on file.

As to the core issues necessary for resolution of the present motion, there is no real dispute: Motorola does not dispute that a license on RAND terms would moot all of its standard-essential patent infringement suits worldwide, that Microsoft cannot avoid an injunction in Germany without assuming the risk of a binding contract imposing a higher than

---

[1] *See, e.g.*, Dkt. Nos. 1 and 56 (Prayer for Relief ¶¶ G, H); Dkt. No. 96 at 8, 9 & n. 30 ("Microsoft is seeking, and remains ready and willing to take, a license to Motorola's H.264 and 802.11 declared-essential patents on RAND terms."); Dkt No. 152 at 5; Dkt. No. 210 at 4, 5, 8, 11–13; Dkt. No. 236 at 22–23 ("Microsoft wants a RAND license and will pay for one."); 4/6/12 Declaration of Kevin Post in Support of Motorola's Opposition to Motion for TRO and Preliminary Injunction, Ex. 9 (April 5, 2012 Letter from Art Harrigan to Jesse J. Jenner).

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR TRO AND
PRELIMINARY INJUNCTION- 1

RAND royalty, and that a $300 million bond is adequate to protect any Motorola interest. There is no doubt that this Court can and should act to preserve its ability to decide this case.

## ARGUMENT

### I. MOTOROLA'S LATER-FILED GERMAN ACTION IS ENTITLED TO NO DEFERENCE FROM THIS COURT.

Microsoft filed this suit in an effort to obtain from Motorola an offer of a worldwide license to its standards-essential patents on RAND terms. Motorola has steadfastly refused to provide such an offer. Instead, months after Microsoft sought relief from this Court, Motorola filed suit in Germany seeking to block Microsoft from offering its standard-compliant products there. Even as it concedes that its RAND commitment is worldwide in scope (Opp. 16), Motorola now urges some unknowable patchwork of actions, in Germany and elsewhere, to resolve RAND issues locally without regard for the fact that Motorola made worldwide commitments to international SSOs.[2] Motorola's balkanized view of RAND enforcement is not only grossly impractical, but, more importantly for present purposes, is a direct attack on this Court's ability to provide the worldwide relief to which Microsoft is entitled.

Motorola attempts to divert attention from its efforts to undermine this Court's orderly determination of RAND issues by devoting pages to descriptions of German patent law, including the *Orange Book* antitrust defense. But as described by Motorola's German attorney, either version of the German *Orange Book* antitrust defense (born from a 2009 case of the same name) requires Microsoft to commit to take a license on financial and non-financial terms so favorable to Motorola that Motorola's refusal to accept them would be an antitrust violation, whether those terms are reached by ever-escalating offers by Microsoft or by a combination of Motorola's own demand and a German court's determination. (In fact, the EU recently launched an antitrust investigation based on Motorola's practice of pursuing

---

[2] Of course, Motorola's current position contradicts the terms of its October 2010 demand letters, which sought a single royalty on a worldwide basis on common terms.

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR TRO AND
PRELIMINARY INJUNCTION- 2

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

injunctions on standard-essential patents.)  Motorola asserts that RAND terms and antitrust requirements might be the same, but that assertion is based only on the hedged opinion of its own German attorney, who admits that there is no German authority for that view. (*See* Dkt. No. 249, Declaration of Marcus Grosch ("Grosch Decl."). ¶ 6; Opp. 13–14.)

Even on Motorola's view of German law, Motorola's conduct flouts this Court's authority.  Motorola insists that "Microsoft can unilaterally prevent" irreparable harm, if only Microsoft would deposit the $300 million Microsoft has offered as a bond *here* into the *German* court.  (Opp. 1, 10 n. 7, 13 & n. 9.)  But Microsoft offered the bond to protect Motorola's interests in the event *this Court* rejected Microsoft's claim on the merits.  As Motorola's German lawyer confirms, depositing $300M with the German court would not serve as protection pending this Court's ruling—it would be deposited with the court for Motorola to withdraw.  (*See* Grosch Decl. ¶ 7(ii).)  If this Court ultimately determines that the appropriate RAND royalty is lower than the amount taken from Microsoft, Motorola does not suggest that it would agree to pay back what it had improperly appropriated, but only that "Microsoft could claim contract damages."  (Opp. 14.)  In short, Motorola claims that it is no affront to this Court if Motorola obtains relief in Germany that is inconsistent with the relief Microsoft ultimately obtains in this first-filed action, because Microsoft may sue to get back that to which this Court has determined Motorola was never entitled.[3]

Motorola's argument is blunt: this Court, and Microsoft, should bow to Motorola's later-filed German action.  Motorola's lawyer, Dr. Grosch, confirms this is exactly what Motorola expects Microsoft to do: "Microsoft has created the situation it is now faced with by denying the German courts the possibility to determine an adequate rate in full adjudication."

---

[3] The affront to this Court's authority is clear, even accepting Motorola's view of German law.  However, it is worth noting that the *Orange Book* procedure Motorola urges may not only practically swallow the worldwide RAND issues that Microsoft asked this Court to resolve, but may literally do so.  It appears to be an open question whether an accused infringer's *Orange Book* royalty offer may be limited to the German patents in suit, or must extend to the patentee's worldwide portfolio for the standard.  Wherever German law comes out, there is no doubt that Motorola's German lawsuit sought to displace this Court's authority to resolve the worldwide RAND issues.

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR TRO AND
PRELIMINARY INJUNCTION- 3

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1  (Grosch ¶ 26.)  This position is offensively backward.  *Motorola* has created the situation that
2  Microsoft and this Court are now faced with by trying to prevent this Court from following its
3  planned course of adjudicating whether Motorola has satisfied its RAND obligations and, if
4  not, compelling it to do so.  Not only is Motorola seeking to dominate Microsoft's first-filed
5  case in this Court with its later-filed German action, but it wants to heap the substantial
6  uncertainty of any royalty outcome under the German *Orange Book* procedure (which
7  Motorola's lawyer admits is without precedent) on Microsoft.  If Motorola really believed that
8  the royalty determined by the *Orange Book* antitrust defense is a RAND royalty, then Motorola
9  would have no reason to choose the German court over this Court.  Indeed, given that Motorola
10 "disputes" that "the terms set by this Court would be more favorable for Microsoft than the
11 terms set pursuant to the Orange Book process" (Opp. 14), and concedes $300M adequately
12 protects its interests, Motorola's refusal to accept Microsoft's $300M bond offer in exchange
13 for an assurance that the RAND determination happens in this Court speaks volumes.

   Motorola's sole response to Microsoft's strong showing of irreparable harm (*see* Dkt.
15 No. 210, Microsoft's Mot. for TRO and Prelim. Inj. ("PI Br.") 13–17) is its reliance on the
16 specious and inequitable argument that Microsoft and this Court should stand aside pending
17 Motorola's later-filed action.  Even if this argument provided a reason to question the
18 irreparability of harm to Microsoft (and it does not), a strong showing on the merits (*see*
19 Section III.B, *infra*; PI Br. 10–13) justifies preserving the status quo even in cases with less
20 substantial irreparable harm.  *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127,
21 1234–35 (9th Cir. 2011).  And Motorola offers no rebuttal to Microsoft's argument that the
22 balance of equities favors Microsoft, that Motorola will suffer no irreparable harm, and that the
23 public interest would be served by granting preliminary relief.

## II.   AN ORDER DIRECTING MOTOROLA TO DELAY EXCLUSION ACTIVITY IN GERMANY IS WELL WITHIN THIS COURT'S POWER.

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR TRO AND
PRELIMINARY INJUNCTION- 4

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

### A. Where Other Factors Weigh In Favor Of Relief, An Injunction Should Be Granted So Long As The Impact On Comity Is "Tolerable."

Where, as here, temporary injunctive relief is otherwise warranted, the fact that the appropriate order would direct a party to take or abstain from action in connection with foreign litigation does not limit the Court's power to issue the order.  The Ninth Circuit is clear on this point, holding that where the relevant factors weigh in favor of enjoining a litigant's foreign activities, an injunction should issue so long as "the impact on comity is tolerable." *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 991 (9th Cir. 2006) (remanding for injunction of Ecuadorian suit).  *See Applied Medical Dist. Corp. v. Surgical Co., BV*, 587 F.3d 909, 919–21 (9th Cir. 2009) (reversing denial of an injunction of later-filed Belgian action as the injunction "would not have an intolerable impact on comity.").  *See also Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627 (5th Cir. 1996) ("We decline, however, to require a district court to genuflect before a vague and omnipotent notion of comity every time that it must decide whether to enjoin a foreign action."); *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 432–33 (7th Cir. 1993) ("The injunction merely prevents a French company from seeking to revive a dormant proceeding before an arbitral tribunal in France.  The only concern with international comity is a purely theoretical one that ought not trump a concrete and persuasive demonstration of harm to the applicant for the injunction, if it is denied, not offset by any harm to the opponent if it is granted.").

### B. Comity Weighs in Favor of Granting Relief From Motorola's Later-Filed German Actions.

Where one party seeks an injunction directed toward a later-filed foreign action, the impact on comity is not only "tolerable," but the interests of comity actually weigh *in favor of granting relief*.  In *Applied Medical*, the Ninth Circuit reversed and remanded for entry of an injunction against a litigant's later-filed Belgian action, specifically disagreeing with the district court's conclusion that such an injunction "would undermine the doctrine of comity." 587 F.3d at 919.  The Ninth Circuit noted that the defendant's later-filed Belgian action, like

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR TRO AND
PRELIMINARY INJUNCTION- 5

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   Motorola's German suits, "raises the concern that [the defendant] is attempting to evade the

2   rightful authority of the district court," and that the defendant was pursuing in Belgium relief

3   that the district court had already ruled it was not entitled to in the U.S. proceeding. *Id*. at 921.

4   *See also Zynga, Inc. v. Vostu USA, Inc.*, No. 11–CV–02959, 2011 WL 3516164, at *3 (N.D.

5   Cal. Aug. 11, 2011) (granting TRO barring enforcement of a Brazilian injunction where

6   litigant sought "to enforce an injunction it obtained abroad that would paralyze [the] Court's

7   ability to decide this case," because "[c]omity norms do not abide such a result"); *Strategic*

8   *Intent, LLC v. Strangford Lough Brewing Co. Ltd.*, No. CV-09-309-RHW, Order Granting

9   Plaintiffs' Motion for Anti-Suit Injunction at 7 (E.D. Wa. Sept. 9, 2010) (describing foreign

10  action as "an attempted end-run around [this] Court's ruling . . . and as such it invokes the

11  equitable considerations that support the imposition of an injunction").  Microsoft's action in

12  this Court seeks to establish a right to a worldwide license to Motorola's H.264 standard-

13  essential patents, and Motorola's action to exclude Microsoft's H.264-compliant products from

14  Germany would be inconsistent with a ruling here in Microsoft's favor.  (*See* Section I, *supra*;

15  PI Br. 10–13.)  As in *Applied Medical*, "allowing foreign suits to proceed in such

16  circumstances would seriously *harm* international comity" by undermining the first-filed U.S.

17  action directed to enforcement of Motorola's worldwide RAND obligations.  587 F.3d at 921.

18          Contrary to Motorola's suggestion, the rationale of neither *Gallo* nor *Applied Medical*

19  depends on the presence of a forum selection clause.  The Ninth Circuit explained in *Gallo* that

20  it was "elucidat[ing] a precise framework" for injunctions regarding foreign suits which had

21  been imprecisely defined in *Seattle Totems Hockey Club v. NHL*, 652 F.2d 852 (9th Cir. 1981).

22  *Seattle Totems* involved a conflict between a U.S. antitrust claim and a breach of contract

23  action in British Columbia with no forum selection clause issue.  652 F.2d at 853.  In *Seattle*

24  *Totems*, the Ninth Circuit cited with approval the four-factor equitable test articulated in *In re*

25  *Unterweser Reederei Gmbh*, 428 F.2d 888 (5th Cir. 1970), *aff'd on rehearing en banc*, 446

26  MICROSOFT'S REPLY IN SUPPORT
    OF ITS MOTION FOR TRO AND
    PRELIMINARY INJUNCTION- 6

F.2d 907 (1971), *rev'd on other grounds sub nom. Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907 (1972).  *See Seattle Totems*, 652 F.2d at 855.  The Fifth Circuit's conclusion—quoted in *Seattle Totems*—was that "allowing simultaneous prosecution of the same action in a foreign forum thousands of miles away would result in inequitable hardship and tend to frustrate and delay the speedy and efficient determination of the cause."  428 F.3d at 896 (internal quotation marks omitted).

Other Circuits have reached the same result where litigants attempt to use foreign litigation as an end-run around U.S. courts, whether or not a forum selection clause is involved. For example, in *Laker Airways Ltd. v. Sabena Belgian World Airlines*, 731 F.2d 909, 937 (D.C. Cir. 1984), defendants in a U.S. antitrust case filed suit in the United Kingdom in an attempt to interfere with the U.S. action; the district court granted an injunction barring the defendants from proceeding in the U.K., and the D.C. Circuit affirmed, squarely addressing comity concerns:

> When the foreign act is inherently inconsistent with the policies underlying comity, domestic recognition could tend either to legitimize the aberration or to encourage retaliation, undercutting the realization of the goals served by comity. No nation is under an unremitting obligation to enforce foreign interests which are fundamentally prejudicial to those of the domestic forum. Thus, from the earliest times, authorities have recognized that the obligation of comity expires when the strong public policies of the forum are vitiated by the foreign act.

731 F.2d at 937.[4]  *See also Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 127 (2d Cir. 2007) ("Orders of foreign courts are not entitled to comity if the litigants who procure them have deliberately courted legal impediments to the enforcement of a federal court's orders.") (quotation marks and citations omitted); *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 20 (1st

---

[4] The anti-suit injunction affirmed in *Laker* directed two parties to cease participation entirely in the inconsistent foreign proceeding.  731 F.2d at 915.  *Laker* confirms that a U.S. court's power to protect its jurisdiction from evasive efforts of litigants like Motorola is broad—and the narrow, targeted relief Microsoft seeks here (directed only to Motorola's exclusion actions that would frustrate the resolution of the RAND issues properly before this Court) is certainly within the scope of that power.

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR TRO AND
PRELIMINARY INJUNCTION- 7

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Cir. 2004) ("Where, as here, a party institutes a foreign action in a blatant attempt to evade the rightful authority of the forum court, the need for an anti-suit injunction crests.").[5]

In *Medtronic, Inc. v. Catalyst Research Corp.*, 518 F. Supp. 946 (D. Minn. 1981), *aff'd*, 664 F.2d 660 (8th Cir. 1982), the court enjoined a patentee's pursuit of injunctive relief in a German patent infringement action pending the adjudication of a U.S. licensing dispute. *See* 518 F. Supp. at 955 ("[I]f the Agreement is found to bar CRC from seeking injunctive relief, CRC's foreign requests for injunctive relief are improper and they can be enjoined."). The *Medtronic* court found as to "the principle of comity" that "the injunction will in no way interfere with the patent infringement and validity actions in the foreign courts, nor will it interfere with any damage awards. It merely affects any injunctive relief which CRC may seek." *Id.* at 955–56. As in *Medtronic*, an injunction by this Court merely constrains Motorola's actions following any German ruling, to preserve this Court's jurisdiction ultimately to decide that Microsoft is entitled to practice Motorola's standard-essential patents.

Motorola's cited cases require no different outcome. In *Robinson v. Jardine Ins. Brokers Int'l Ltd.*, 856 F. Supp. 554 (N.D. Cal. 1994), the court declined to enjoin a *first-filed* English action involving a contract entered into in England by the party seeking relief, an employee of a British corporation. *Id.* at 560. In *Chevron Corp. v. Naranjo*, 667 F.3d 232 (2d Cir. 2012), the Second Circuit held only that the New York Uniform Foreign Money–Judgments Recognition Act did not allow a district court to enjoin Ecuadorian plaintiffs from enforcing an Ecuadorian damages judgment anywhere in the world following a seven-year trial

---

[5] *Quaak* itself suggests that the Ninth Circuit follows a more "liberal approach" than the First and D.C. Circuits in weighing concerns of comity. 361 F.3d at 17. *See also* Alexander Shaknes, Anti-Suit and Anti-Anti-Suit Injunctions in Multi-Jurisdictional Proceedings, 21 *Aut., Int'l L. Practicum* 96, 97–98 (2008) ("The liberal approach places less emphasis on comity and authorizes anti-suit injunctions where needed to avoid duplicative and vexatious non-U.S. litigation and inconsistent judgments. . . . As a result, the Fifth, Ninth and Seventh Circuits currently appear to be the best forums to seek an anti-suit injunction when possible.") Microsoft satisfies the standard articulated in *Quaak*, which focuses on "whether the foreign action . . . imperils the jurisdiction of the forum court," 361 F.3d at 17, and clearly satisfies the more liberal approach of the Ninth Circuit.

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR TRO AND
PRELIMINARY INJUNCTION- 8

1  in Ecuador concerning damage to the Ecuadorian Amazon—and *there was no corresponding*

2  *U.S. action*, much less a first-filed U.S. action.  *Id.* at 236, 244.

3        Motorola's reliance on *Microsoft Corp. v. Lindows.com, Inc.*, 319 F. Supp. 2d 1219

4  (W.D. Wash. 2004), is particularly perverse: this Court declined to declare unenforceable a

5  Dutch preliminary injunction to shut down the defendant's website, not simply (as Motorola

6  states) because "there was no showing the injunction implicated the movant's constitutional

7  rights" (Opp. 22), but because regardless of the Dutch injunction's interpretation, Microsoft

8  "represent[ed] that it will not seek relief that requires [defendant] to shut down its website."

9  319 F. Supp. 2d at 1224.  Microsoft's attempts to secure analogous assurances from Motorola

10 that would make the present motion unnecessary—including Microsoft's repeated offer of a

11 $300 million bond with this Court—have been rebuffed.

12       Motorola attempts to distinguish *Medtronic* (which enjoined a patentee from seeking an

13 injunction in German patent litigation) by arguing that *Medtronic* somehow reflects *greater*

14 respect for comity by stepping into foreign litigation while it is in process in a foreign court.

15 (Opp. 23 n. 22.)  Taken seriously, Motorola is suggesting Microsoft's motion for preliminary

16 injunction should have been granted, had it been brought the day Motorola filed its later

17 German actions.  (Opp. 23–24.)  Motorola's distinctions make no sense.  Attempting to avoid

18 unnecessarily imposing on this Court, Microsoft waited to seek relief until it was clear that

19 Motorola intended to go forward with undermining this Court's jurisdiction by seeking

20 exclusion of Microsoft's products from Germany.  And Microsoft seeks relief that will not

21 require Motorola to withdraw from German proceedings, will not interrupt German

22 proceedings, and will not prevent Motorola from litigating the German case on appeal.

23 Microsoft's motion here—directed only at Motorola's steps to exclude Microsoft products

24 following a possible infringement finding—is the minimum necessary to preserve the status

25 quo until this Court is able to rule on the issue of a worldwide RAND license.

26 MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR TRO AND
PRELIMINARY INJUNCTION- 9

### III. ALL OTHER FACTORS WEIGH IN FAVOR OF INJUNCTIVE RELIEF.

#### A. Motorola's Brief Misrepresents the Standards for Weighing Microsoft's Motion for a TRO and Preliminary Injunction.

Motorola's brief mischaracterizes the Ninth Circuit's test for anti-suit injunctions as "more stringent" than that for preliminary injunctions, citing *Applied Medical* and *Gallo*. *Applied Medical* follows the anti-suit analysis of *Gallo* but does not address the difference between the tests, and *Gallo* stands for exactly the opposite proposition: the Ninth Circuit asked, "But should Gallo also need to prove a likelihood of success on the merits of the breach of contract claim in order to receive an anti-suit injunction?" *Gallo*, 446 F.3d at 990. The court answered "no" on the very page Motorola cites in its brief:

> Thus, we hold that *Gallo need not meet our usual test of a likelihood of success on the merits of the underlying claim to obtain an anti-suit injunction* against Andina to halt the Ecuadorian proceedings. Rather, Gallo need only demonstrate that the factors specific to an anti-suit injunction weigh in favor of granting the injunction.

446 F.3d at 991 (emphasis added). The anti-suit test thus is not an "especially stringent" (Opp. 9), "more stringent" (Opp. 1, 9, 10) or "heightened" standard (Opp. 10, 14) as compared to the preliminary injunction test—it replaces one factor with a set of other factors.

#### B. Microsoft Has Made a Strong Showing of Likelihood of Success on the Merits and Also Satisfies the Ninth Circuit's Anti-Suit Factors.

The distinctions between the anti-suit and preliminary injunction standards that Motorola distorts are irrelevant here because Microsoft satisfies both standards. Microsoft *has* made a strong showing of likely success on the merits of its entitlement to a license, for this Court has already ruled that Microsoft is a third-party beneficiary of Motorola's RAND commitments. (*See* Dkt. No. 188, Order on Pl.'s Mot. for Partial Summary J. ("SJ Op.") 17; PI Br. 10–13.) Motorola's opposition does not contend otherwise, other than to present as "factual background" arguments found in its motion for summary judgment concerning its

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR TRO AND
PRELIMINARY INJUNCTION- 10

"application," "negotiation," and "repudiation" theories.[6] (*See* Opp. 3–6.) Microsoft's summary judgment brief (*see* Dkt. No. 236 at 22–23) and its forthcoming opposition to Motorola's summary judgment motion explain again why Motorola's theories fail.

Motorola's misplaced "repudiation" theory aside, the disposition of this case will bar injunctive relief and produce a worldwide RAND license (via a ruling or negotiation)—a complete defense to a German infringement action. (*See* PI Br. 21–22.) Motorola's argument to the contrary (Opp. 15) misapplies Ninth Circuit law: it is irrelevant that the suits here and in Germany have differences. *See Applied Medical*, 587 F.3d at 915 (reversing district court's denial of anti-suit injunction where "the district court focused too narrowly on the fact that 'not all of the issues are *identical*'"). The question is whether this Court's ultimate decision that Microsoft is entitled to a worldwide RAND license would dispose of the only facet of the German matter Microsoft seeks to enjoin (Motorola's exclusion of Microsoft's H.264 standard-compliant products). Of course, Motorola cannot exclude *licensed* products in any country.[7]

Microsoft need only satisfy one of four equitable criteria and can easily satisfy three (PI Br. 22–23). Missing the point entirely, Motorola argues, "[t]here is no policy of this forum that a party should be able to ignore the procedures of a foreign forum for invoking one's rights" (Opp. 19)—but there is clearly a policy that Microsoft should *not* be forced to resort to even potentially-inadequate remedies in a foreign action filed later in an end-run around this Court's consideration of Motorola's RAND obligations. *See Applied Medical*, 587 F.3d at 919. Contrary to Motorola's contention, Microsoft has not "concede[d] that Motorola could not

---

[6] Motorola reargues merits issues already decided against it (*see* SJ Op. 17): "Indeed, it is unclear under what authority the Court could convert the SSO's assurance of good faith negotiation into a particular party's right to a license on specific terms." (Opp. 5 n. 5; *see also* Opp. 16 n.12 ("Microsoft has identified no basis for concluding that this Court could transform Motorola's agreement to agree in the SSO letters of assurance into a right on the part of Microsoft to a license at any particular rate.").)

[7] Motorola's statements about differing RAND royalties in different countries (Opp. 16–17) are irrelevant, and its warnings concerning extraterritoriality (Opp. 17–18) a complete red herring. Microsoft filed this action first to establish its rights to a worldwide RAND license, and enforcement of Motorola's commitment is clearly within this Court's power. Motorola's attempt to obtain extortionate royalties in its later-filed German action under threat of exclusion counsels in favor of injunctive relief, not against it. *See Applied Medical*, 587 F.3d at 919.

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR TRO AND
PRELIMINARY INJUNCTION- 11

1  possibly have filed the German litigation for purposes of undermining any judgment this Court
2  might enter." (Opp. 19.)
3        Motorola's decision to sue Microsoft on standard-essential patents in Germany and to
4  seek injunctive relief *after* Microsoft filed suit here to enforce Motorola's RAND obligations
5  on those standard-essential patents is vexatious on its face.  Motorola seeks the massive
6  leverage of injunctive relief, and it knew that suing on standard-essential patents in Germany
7  gave it the best hope of undermining this Court's ultimate determination that Motorola must
8  comply with its RAND obligations and grant Microsoft a worldwide RAND license.
9  Motorola's refusal to agree to temporarily delay its exclusion activity in Germany in the face
10 of Microsoft's offer of a $300 million U.S. bond only confirms its vexatious purpose of
11 frustrating the proper resolution of RAND issues before this Court.  (*See id.* 22–23.)
12       Motorola's arguments concerning equitable considerations parrot its "repudiation"
13 theory and its flawed view that unreasonable royalty demands on RAND-committed patents
14 are permissible.  (*See* Opp. 20–21.)  Motorola's reference to Microsoft's "refusal to
15 compensate Motorola for the use of Motorola's technology in Germany" (Opp. 20) is false—
16 Microsoft, as Motorola confirms (Opp. 7–8), has already *deposited into the German court*
17 close to $2 million (multiples of what Motorola would receive if it belonged to the MPEG-LA
18 H.264 patent pool) to cover back royalties in Germany on Motorola's two German patents.  (PI
19 Br. 6.)  Remarkably, in addressing equitable considerations Motorola even argues it should be
20 *rewarded* for its end-run around this Court's jurisdiction—suggesting that this Court's order of
21 a RAND license "would not necessitate a finding that the issuance of an injunction in Germany
22 until such time as the license was consummated would be inequitable."  (Opp. 21.)  To couch
23 such an argument in terms of equity is to refute it.

## CONCLUSION

25       Microsoft's motion for a TRO and preliminary injunction should be granted.

26 MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR TRO AND
PRELIMINARY INJUNCTION- 12

1 | DATED this 9th day of April, 2012.

2 |                 DANIELSON HARRIGAN LEYH & TOLLEFSON LLP

By   s/ Arthur W. Harrigan, Jr.
      Arthur W. Harrigan, Jr., WSBA #1751
      Christopher Wion, WSBA #33207
      Shane P. Cramer, WSBA #35099

By   s/ T. Andrew Culbert
      T. Andrew Culbert, WSBA #35925
      David E. Killough, WSBA #40185
      MICROSOFT CORPORATION
      1 Microsoft Way
      Redmond, WA 98052
      Phone: 425-882-8080
      Fax: 425-869-1327

      David T. Pritikin, *Pro Hac Vice*
      Richard A. Cederoth, *Pro Hac Vice*
      Constantine L. Trela, Jr., *Pro Hac Vice*
      Douglas I. Lewis, *Pro Hac Vice*
      John W. McBride, *Pro Hac Vice*
      Nathaniel C. Love, *Pro Hac Vice*
      SIDLEY AUSTIN LLP
      One South Dearborn
      Chicago, IL 60603
      Phone: 312-853-7000
      Fax: 312-853-7036

      Carter G. Phillips, *Pro Hac Vice*
      SIDLEY AUSTIN LLP
      1501 K Street, N.W.
      Washington, D.C. 20005
      Phone: 202-736-8000
      Fax: 202-736-8711

      Counsel for Microsoft Corporation

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR TRO AND
PRELIMINARY INJUNCTION- 13

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

**CERTIFICATE OF SERVICE**

I hereby certify that on April 9, 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

**Attorneys for Defendants Motorola Solutions, Motorola Mobility and General Instrument Corporation**

Ralph Palumbo
Philip S. McCune
Lynn M. Engle
Summit Law Group

Steven Pepe
Jesse J. Jenner
Norman Beamer
Paul M. Schoenhard
Ropes & Gray

          ___s/ Linda Bledsoe_____
          LINDA BLEDSOE

MICROSOFT'S REPLY IN SUPPORT OF ITS MOTION FOR TRO AND PRELIMINARY INJUNCTION- 14

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717