HONORABLE JAMES L. ROBART

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>       Plaintiff,<br><br>   v.<br><br>MOTOROLA INC., et al.,<br><br>       Defendant. | No. C10-1823-JLR<br><br>**REDACTED**<br><br>MICROSOFT'S OPPOSITION TO MOTOROLA'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>Noted:    April 20, 2012<br>Hearing: May 7, 2012 9:30am |
| MOTOROLA MOBILITY, INC., et al.,<br><br>       Plaintiffs,<br>   v.<br><br>MICROSOFT CORPORATION,<br><br>       Defendant. | |

MICROSOFT'S OPPOSITION TO
MOTOROLA'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Pages**

INTRODUCTION ..................................................................................................1

ARGUMENT .........................................................................................................3

I.    MOTOROLA'S BRIEF CONFIRMS MOTOROLA'S DUTY TO
OFFER RAND TERMS AND ITS BREACH OF THAT DUTY..........................3

II.   MOTOROLA CANNOT AVOID ITS RAND OBLIGATIONS
BY INVOKING IRRELEVANT, INAPPLICABLE CONDITIONS.....................5

    A.    Motorola Waived Any Application Requirement By
Sending Its Demand Letters..........................................................................5

    B.    Any Microsoft Duty of Good Faith Cannot be a "Condition
Precedent" to Motorola's RAND Obligations..............................................8

III.  MOTOROLA'S BRIEF IS A FAILED ATTEMPT TO REVIVE
ITS ILLOGICAL REPUDIATION ARGUMENT...............................................11

CONCLUSION....................................................................................................13

MICROSOFT'S OPPOSITION TO
MOTOROLA'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - i

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Cavell v. Hughes*,
    629 P.2d 927 (Wash. App. 1981)..........................................................................7

*Fischler v. Nicklin,*
    319 P.2d 1098 (Wash. 1958) .........................................................................9, 10

*In re Penberthy,*
    211 B.R. 391 (Bankr. W.D. Wash. 1997)................................................................9

*Penn Mut. Life Ins. Co. v. Norma Espinosa*
    2007-1 Insurance Trust, No. 09-300-JJF, 2010 WL 3023402
    (D. Del. July 30, 2010) ........................................................................................11

*Ross v. Harding*,
    391 P.2d 526 (Wash. 1964) ..................................................................................9

*Utica Mut. Ins. Co. v. Vigo Coal Co.,*
    393 F.3d 707 (7th Cir. 2004) ..............................................................................11

*Wallace Real Estate Inv., Inc. v. Groves,*
    881 P.2d 1010 (Wash. 1994) ..............................................................................11

**Other Authorities**

13 Richard A. Lord, Williston on Contracts § 38:5 (4th ed. 2011) ....................................9

8-40 Corbin on Contracts § 40.4........................................................................................7

MICROSOFT'S OPPOSITION TO
MOTOROLA'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - ii

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

# INTRODUCTION

Motorola's "repudiation" argument is nothing more than an attempt to distract the Court from the fact that Motorola's October 2010 demand letters were the kind of "blatantly unreasonable" offer that even Motorola admits a RAND-committed patentee may not make. Yet its effort to build a repudiation case against Microsoft actually does more to advance *Microsoft's* claim to summary judgment than Motorola's own. Motorola confirms that its October 2010 demand for a 2.25% royalty rate applied to a royalty base consisting of the value of end products was its bottom line. (Dkt. No. 231, Def.'s Mot. for Partial Summary J. ("Moto. Br.") 4.) Motorola fully intended to insist upon a royalty of that amount in any "negotiations" with Microsoft, whether Microsoft initiated them or not. As Microsoft's motion for summary judgment demonstrates, Motorola's blatantly-unreasonable demands violated its RAND obligations. Microsoft's decision to sue to prevent Motorola from evading its RAND obligations, rather than to capitulate, was no repudiation.

Motorola trips over itself when arguing that Microsoft neither applied for nor negotiated for a license. Motorola's own SSO "expert," Richard Holleman, already testified that a standard-essential patentee has RAND obligations regardless of whether the patentee or the potential licensee initiates discussions. A moment's reflection reveals that this must be the case. A RAND-committed patentee cannot escape its RAND obligations by preemptively tossing at a potential licensee an offer that the patentee could not have made if the licensee had approached first. And Motorola's "application" argument is unsustainable in any event, because Motorola's October 2010 letters unequivocally waived any "application" requirement: the letters (leaving aside their blatantly unreasonable terms) purported to offer a license on RAND terms that Microsoft could accept immediately. (*See* Dkt. No. 238, Exs. 13, 14 ("Please confirm whether Microsoft accepts the offer.").) As a matter of logic, a party need not "apply" for an offer that already has been made.

MICROSOFT'S OPPOSITION TO
MOTOROLA'S MOTION FOR PARTIAL
SUMMARY JUDGMENT- 1

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Motorola's assertions about Microsoft's willingness to negotiate in good faith fare no better. This Court has already rejected Motorola's argument that Microsoft was obliged to negotiate in response to the October 2010 demand letters. (Dkt. No. 66, Order Regarding Motions to Dismiss 5–6.) Motorola's argument has things backward. In this suit, Microsoft asserts that Motorola was required to offer RAND terms, and that it failed to do so. If Microsoft is correct that Motorola is required when making an offer to make it a RAND offer, Motorola breached when it made its blatantly unreasonable demand. Even if, *after* the breach, Microsoft had refused to negotiate in the face of such a demand (in fact, Microsoft and Motorola continued to meet and discuss their differences after Microsoft filed suit), Microsoft's decision to seek the aid of this Court in requiring Motorola to honor its contractual commitments does not retroactively excuse Motorola's prior breach.

Motorola's own brief makes clear that its view of the "good faith negotiations" that Motorola claims both parties were obliged to conduct (Moto. Br. 18–19) really required Microsoft to capitulate to Motorola's outrageous demand. Motorola's description of its practices only confirms what Microsoft set forth in its opening brief—that Motorola's demands were objectively outrageous, entirely untethered from any genuine assessment of the value of its H.264 and 802.11 standard-essential patents or the use of those patents in the end-products on which Motorola sought royalties. Motorola confirms it always intended to receive 2.25%—"overall value for its portfolios     REDACTED                              —and that Motorola would have "negotiated" over merely the form, not the amount, of compensation Motorola would receive. (*See* Moto. Br. 3–5.) Motorola's conduct in the German litigation is equally telling. When Microsoft offered $2 million for non-exclusive rights to practice a mere two patents, and only in Germany, Motorola never even made a counter-offer, and pressed ahead with its effort to exclude Windows and Xbox from the German market altogether.

MICROSOFT'S OPPOSITION TO
MOTOROLA'S MOTION FOR PARTIAL
SUMMARY JUDGMENT- 2

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

As Microsoft's motion for summary judgment demonstrates, Motorola's October 2010 demands were blatantly unreasonable and violated Motorola's RAND commitments. Motorola's brief in support of its motion for summary judgment that Microsoft has repudiated confirms that summary judgment in favor of *Microsoft* is appropriate.

## ARGUMENT

### I. MOTOROLA'S BRIEF CONFIRMS MOTOROLA'S DUTY TO OFFER RAND TERMS AND ITS BREACH OF THAT DUTY.

Motorola has already conceded that blatantly unreasonable demands breach its RAND obligations. (Dkt. No. 188, Order on Pl.'s Mot. for Partial Summary J. ("SJ Op.") 15.) Motorola's brief in support of its motion for summary judgment now admits that under "the only reasonable interpretation" of its RAND obligation, Motorola is required "to offer its patent portfolio on terms that it believes in good faith to be RAND." (Moto. Br. 18.)

Motorola's arguments confirm that the legal framework underlying Microsoft's Motion for Summary Judgment of Breach of Contract is undisputed: the underlying SSO policies must be considered in construing the contractual obligation (indeed, Motorola argues that those policies actually form part of the contract (*see* Moto. Br. 14–15)), and Motorola would breach its RAND commitments by failing to offer RAND terms (*see* Moto. Br. 17–18). As Microsoft established in its brief, Motorola's offers were blatantly unreasonable and Motorola could not have objectively believed they were RAND. (*See* Dkt. No. 236, Microsoft's Mot. for Summary J. of Breach of Contract ("Microsoft Br.") 12–22.) And Motorola's own description of its offers confirms Microsoft's position. Motorola admits it insisted on a REDACTED REDACTED                                                         (Moto. Br. 3–4), and implied that any negotiations with Microsoft would only be over the *form* of that payment, not the amount: "negotiated license terms may reflect REDACTED

 (Moto. Br. 3). Motorola claims that it lacked vital information that only negotiations would have supplied (Moto. Br. 4), but as Microsoft explained, Motorola's demand letters

MICROSOFT'S OPPOSITION TO
MOTOROLA'S MOTION FOR PARTIAL
SUMMARY JUDGMENT- 3

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1  demonstrated that it was in fact well aware of the unreasonable magnitude of its demands (*see*

2  Microsoft Br. 14–17).  And although Motorola now asserts that its "standard offer" of 2.25%

3  "accounts for . . . the value of the licensed technology to the end user" (Moto. Br. 3), Motorola

4  admits it possessed no such assessment of the value of its patents and how they related to the

5  802.11 and H.264 standards.  (Microsoft Br. 20.)  Instead, Motorola simply parroted demands

6  it had been making to competing cell phone suppliers based on its cell phone patents.  (Moto.

7  Br. 3–5.)  Motorola's letters were so unreasonable they could not be (and were never intended

8  to be) taken as legitimate offers.  As Microsoft explained in its summary judgment brief,

9  Motorola's demands were completely unreasonable.  (*See* Microsoft Br. 18–20.)

10        Motorola's suggestion that REDACTED

11     REDACTED (Moto. Br. 6)

12  is misleading at best.  ActiveSync is a protocol developed and promulgated by Microsoft alone,

13  not a standard developed by an SSO.  Microsoft has a licensing program for ActiveSync

14  independent of any relation to SSOs and RAND commitments.  Declaration of Christopher T.

15  Wion in Support of Microsoft's Opp. To Motorola's Mot. for Partial Summary Judgment

16  ("Wion Decl.") Ex. 1 (Microsoft ActiveSync web page).  REDACTED

17       REDACTED

18       The SD Card Association ("SD") has RAND obligations entirely distinct from

19  Motorola's IEEE and ITU RAND obligations:  to be eligible for a RAND license under the SD

20  Policy, the implementer needs first to have taken a license from SD's three founders to

21  implement the SD Card specification.  Wion Decl., Ex. 2, Dkt. No. 58, Case No. 3:11-cv-

22  03136-SC (N.D. Cal. Sept. 30, 2011) at 5–6.  Motorola was not an SD licensee to whom a

23  RAND commitment would apply at the time Microsoft brought its suit.  *Id.*  But when—after

24  litigation began—Motorola became a licensee, it insisted that Microsoft's RAND commitment

25  precluded Microsoft from obtaining an injunction on those patents.  Wion Decl. Ex. 3, Dkt.

26  MICROSOFT'S OPPOSITION TO
MOTOROLA'S MOTION FOR PARTIAL
SUMMARY JUDGMENT- 4

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

No. 39, Case No. 5:11-cv-03136-JF (N.D. Cal. Sept. 2, 2011) at 7–8.  In light of those changed circumstances, Microsoft promptly withdrew its SD Card related claims in the ITC.  (*See id.*)

Motorola's brief confirms both the legal rationale of Microsoft's motion and its factual support:  RAND commitments require RAND offers, and Motorola breached its RAND obligations by making an unjustifiable, blatantly unreasonable offer.

## II.   MOTOROLA CANNOT AVOID ITS RAND OBLIGATIONS BY INVOKING IRRELEVANT, INAPPLICABLE CONDITIONS.

### A.  Motorola Waived Any Application Requirement By Sending Its Demand Letters.

Motorola's argument that Microsoft failed to satisfy a "condition precedent" by failing to apply for a license is refuted by Motorola's own characterization of Microsoft's actions, by the testimony of Motorola's expert, Richard Holleman, and by Motorola's waiver of any such condition.  First, Motorola's description of the communications between Microsoft and Motorola only undermines its flawed argument that Microsoft neither applied for nor negotiated for a license.  Even assuming that RAND obligations are only owed to license applicants, and even if Motorola's description of its interactions with Microsoft prior to the October 2010 demand letters were accurate (which Microsoft disputes), that description suggests that Microsoft *was* an applicant for licenses from Motorola.  According to Motorola,

REDACTED

(Moto. Br. 1.)

REDACTED

REDACTED                                                                          (Moto. Br. 7;

*see* Dkt. No. 230 Ex. 1 (Taylor Tr.) 38:16–40:5); REDACTED

REDACTED

REDACTED (Moto. Br. 7; *see* Dkt. No. 230 Ex. 2 (Dailey Tr.) 2622); and Microsoft

MICROSOFT'S OPPOSITION TO
MOTOROLA'S MOTION FOR PARTIAL
SUMMARY JUDGMENT- 5

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1  REDACTED

2  (Moto. Br. 20).

3  REDACTED

4  REDACTED

5  REDACTED

6  Motorola does not explain how this sequence of exchanges between sophisticated parties fails to meet an "application" requirement, even assuming one exists. Instead, Motorola simply asserts "[i]t is undisputed that Microsoft did not apply for a license." (Moto. Br. 20.) Motorola's own description of the facts contradicts this assertion.

Moreover, Motorola's own SSO "expert," Richard Holleman, testified in the ITC that Motorola's RAND obligations *do not turn on* whether a prospective licensee like Microsoft first applies for a license, or whether Motorola instead makes the first move. Accepting for the sake of argument that Holleman is an "expert" on SSOs and RAND obligations, and that his testimony is relevant extrinsic evidence (*see* Moto. Br. 15–16 & nn. 13–14), Holleman's unequivocal ITC testimony establishes that Motorola's "application" requirement theory is irrelevant here because Motorola itself made a license offer. Holleman was asked three different ways whether Motorola was relieved of its RAND obligations if it sent its demand letters before Microsoft made an explicit license request—and each time he rejected the "application" theory Motorola now advances:

> Q: Suppose Motorola has essential patents, and suppose Motorola approaches a company that it believes are -- is infringing those essential patents. There are letters of assurance. Are you saying that Motorola has no RAND obligations toward that company because Motorola approached them first?
>
> A: No, I'm not.

MICROSOFT'S OPPOSITION TO
MOTOROLA'S MOTION FOR PARTIAL
SUMMARY JUDGMENT- 6

> Q: Okay. And it would be fair to say that you don't think a patent owner's RAND obligations turn on the question of whether the patent owner or the prospective licensee makes the first contact?
>
> A: No, I do not.
>
> Q: . . . You're not saying that a party like Motorola can avoid its RAND obligations simply by beating potential licensees to the punch and by making the first contact with a potential licensee?
>
> A: Well, I -- I don't want to -- I wouldn't want to characterize the scenario quite that way. The policy clearly states that the license -- the offer of a willingness to license is relied upon by implementers who have a desire to use that license. And it doesn't say whether the implementer comes first or whether the patent holder goes first.

Wion Decl. Ex. 4 (Holleman Tr.) 1327–28. Motorola's brief not only ignores Holleman's testimony on the precise "applicant" issue, but argues that Holleman in fact believes just the opposite—"that the RAND assurance is only triggered when there is an applicant that makes a request for a license." (Moto. Br. 15.) But the Holleman statement Motorola quotes says only

REDACTED                                                                                  (Moto. Br. 16)—

REDACTED

Finally, and in any event, Motorola's "application" theory fails because by sending its own demand letters Motorola waived any application requirement. Even if Motorola's RAND commitments were subject to a condition that Microsoft formally apply for a license, Motorola waived that condition "by continuing to render [its] own performance . . . with knowledge that the condition has not been performed." 8-40 *Corbin on Contracts* § 40.4 ("Waiver By Continuing to Perform . . ."); *see also Cavell v. Hughes*, 629 P.2d 927, 928 (Wash. App. 1981) ("The issue on appeal is whether the condition precedent to defendant['s] . . . obligation under the agreement was either excused or waived . . . . We hold that defendant's actions did excuse the condition."). Motorola was well aware of its communications with Microsoft and whether or not Microsoft had "applied" for a license as Motorola interpreted this supposed requirement. But Motorola sent its letters anyway—letters that purported to offer Microsoft a license on

MICROSOFT'S OPPOSITION TO
MOTOROLA'S MOTION FOR PARTIAL
SUMMARY JUDGMENT- 7

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

RAND terms effective upon Microsoft's acceptance of the terms.  By affirmatively offering a license itself, Motorola waived any condition that Microsoft needed to first "apply" in order for Motorola's RAND commitments to have any effect.

### B. Any Microsoft Duty of Good Faith Cannot be a "Condition Precedent" to Motorola's RAND Obligations.

In a rehash of arguments already considered and rejected by this Court, Motorola suggests that its duty to offer a RAND license is further conditioned on the applicant's "negotiating RAND terms in good faith," such that Motorola can seek to enjoin or demand extortionate royalties even from a party who applies for a RAND license, at least up until the moment the applicant "negotiates in good faith."  (Moto. Br. 12, 16.)  Motorola first advanced this argument in support of its motion to dismiss.  (*See* Dkt. No. 62, Motorola Repl. In Supp. of Mot. to Dismiss at 1 ("Because Microsoft did not request a license *and* make a *bona fide* effort to negotiate, it had no basis to bring this suit."); *id* at 10 ("Indeed, it was incumbent on Microsoft to apply for and negotiate the terms of a RAND patent license.  But Microsoft did not do so.").)

This Court correctly rejected Motorola's "good faith" argument the first time Motorola made it:

> Motorola attempts to insert a requirement that Microsoft negotiate the license terms prior to filing suit for breach of contract.  During oral argument, Motorola argued that the IEEE and the ITU guidelines provide the legal basis for requiring negotiations.  However, the guidelines provide no such requirement.  There is no legal basis for Motorola's contention that Microsoft was required to negotiate the precise license terms prior to filing a breach of contract claim.

(Dkt. No. 66, Order Regarding Motions to Dismiss 5; *see also id.* at 6 ("Motorola has failed to provide any legal authority that requires negotiations as a precondition to a breach of contract claim based on RAND licensing commitments.").)  Motorola's attempt to recast an implied duty to negotiate in good faith as a "condition precedent" is nonsensical and inconsistent with the contracts.  This Court should reject it again—as even Motorola ultimately does.

MICROSOFT'S OPPOSITION TO
MOTOROLA'S MOTION FOR PARTIAL
SUMMARY JUDGMENT- 8

Contractual obligations are presumed not to be conditions unless the contract clearly so provides. *Ross v. Harding*, 391 P.2d 526, 531 (Wash. 1964) ("Where it is doubtful whether words create a 'promise' or an 'express condition,' they are interpreted as creating a 'promise.'"); *Fischler v. Nicklin*, 319 P.2d 1098, 1101 (Wash. 1958) ("Nowhere in either instrument are there apt words limiting respondents' obligation to repay upon condition that the board issue respondents a liquor license. Courts cannot imply them."); *In re Penberthy*, 211 B.R. 391, 398 (Bankr. W.D. Wash. 1997) ("Conditions precedent are not favored; if any doubt exists whether words create a promise or a condition, they are interpreted as creating a promise." (citations omitted)). And where the contract does not indicate that one party's performance is a condition precedent to another's, neither party is absolved of its duty to perform. 13 Richard A. Lord, *Williston on Contracts* § 38:5 (4th ed. 2011) ("If there is a condition precedent, the party in whose favor the condition exists is not liable to an action until the condition has been met. Breach of a promise, on the other hand, subjects the promisor to liability in damages, but does not necessarily excuse performance on the other side."); *Ross*, 391 P.2d at 530 (same, citing *Williston*).

In this case, the contractual language Motorola reads to create a condition precedent does nothing of the sort. Motorola has not identified any language, either in its letters of assurance or in the patent policies, that says the *applicant* for a license has a duty to negotiate in good faith, much less that the applicant's good faith negotiation is a condition precedent to Motorola's duty to offer only RAND licenses to its standard-essential patents. At most, the policies say that the *patentee*, i.e., the patent owner, must be "willing to negotiate," on terms that "might differ from case to case." (Moto. Br. 16.) From the patentee's express contractual duty, Motorola divines an implied duty for the applicant, and then Motorola contends that this unstated duty is somehow a condition of Motorola's RAND obligations—even though there is no contractual language suggesting such a condition exists. Washington law disfavors

MICROSOFT'S OPPOSITION TO
MOTOROLA'S MOTION FOR PARTIAL
SUMMARY JUDGMENT- 9

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

conditions precedent; Motorola cannot imply a condition to avoid the consequences of its blatant breach. *See Fischler*, 319 P.2d at 1101 ("Courts cannot imply [conditions precedent].").

Motorola's treatment of good faith negotiation *as a condition precedent* defies not only the language of the contract but also common sense. Under Motorola's view, if only an applicant's good faith negotiation can trigger Motorola's RAND obligation, then Motorola could absolve itself of that obligation with a preemptive strike, either by seeking an injunction or by demanding (prior to negotiation) outlandish royalties, like those sought in its October 2010 letters to Microsoft. After all, as Motorola would have it, until the potential licensee engages in good faith negotiations, the RAND commitments are altogether irrelevant. What is more, by launching a preemptive strike to avoid its otherwise applicable RAND obligations, Motorola would all but ensure that no meaningful negotiations will ever occur on RAND terms.

Ultimately, Motorola rejects its own argument, and this Court should do the same. Motorola admits that "the RAND obligation requires a patent holder to offer its patent portfolio on terms that it believes in good faith to be RAND"—a duty that attaches irrespective of whether the applicant *first* negotiates in good faith. (Moto. Br. 18.) In other words, an applicant's good faith negotiation cannot be a "condition precedent" to Motorola's duty to perform, for Motorola admits that when it offers a license to its standard-essential patents, the offer must be on RAND terms and in good faith. Again, Motorola's expert agrees: Holleman testified that if a potential licensee believes a RAND-committed licensor is offering unreasonable terms, the licensee can go to court. Wion Decl., Ex. 4 (Holleman Tr.) 1327–28. And again, Motorola's description of the parties' discussions prior to the filing of this suit establishes that the parties *were in fact negotiating*. *See* Section II.A, *supra*.

MICROSOFT'S OPPOSITION TO
MOTOROLA'S MOTION FOR PARTIAL
SUMMARY JUDGMENT- 10

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Microsoft agrees with Motorola that the RAND-committed licensor must offer RAND terms in good faith (*see* Microsoft Br. 7–12), and that a potential licensee should respond to a good-faith RAND offer with good-faith negotiation. But Motorola revealed its disdain for good faith negotiations in its October 2010 letters, which demanded that Microsoft accept blatantly unreasonable terms within twenty days. (*See* Dkt. No. 238, Exs. 13, 14 ("Motorola will leave this offer open for 20 days. Please confirm whether Microsoft accepts the offer.").) The ultimatums, which Motorola knew Microsoft could not accept, did not invite bilateral negotiation. Instead, they were merely a prelude to an infringement suit. REDACTED

REDACTED (*See* Dkt. No. 230 Ex. 2 (Dailey Tr.) 2498:20–24.) Shooting off unconscionable demands en route to the courthouse cannot satisfy the duty, which Motorola admits it has, to offer RAND terms in good faith. (*See* Moto. Br. 18; *see also* SJ Op. 15; Moto. Br. 17 (licensor must "make a genuine, *bona fide* licensing offer.").)

### III. MOTOROLA'S BRIEF IS A FAILED ATTEMPT TO REVIVE ITS ILLOGICAL REPUDIATION ARGUMENT.

Motorola's efforts to revive its "perplexing" repudiation argument, now focusing on Microsoft's supposed failure to satisfy "application" and "good-faith negotiation" conditions, are unavailing. As explained in Microsoft's summary judgment brief, Microsoft's suit to enforce Motorola's RAND commitments is neither an "anticipatory breach" nor a "repudiation" because Microsoft seeks to perform and enforce the contract and ultimately to pay Motorola on RAND terms. Seeking to enforce a contract is neither a breach of contract nor a repudiation. *See, e.g.*, *Utica Mut. Ins. Co. v. Vigo Coal Co.*, 393 F.3d 707, 715 (7th Cir. 2004); *Penn Mut. Life Ins. Co. v. Norma Espinosa 2007-1 Insurance Trust*, No. 09-300-JJF, 2010 WL 3023402, at *7 (D. Del. July 30, 2010).

A repudiation requires a "positive statement or action by the promisor indicating distinctly and unequivocally that he either will not or cannot substantially perform any of his

MICROSOFT'S OPPOSITION TO
MOTOROLA'S MOTION FOR PARTIAL
SUMMARY JUDGMENT- 11

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

contractual obligations." *Wallace Real Estate Inv., Inc. v. Groves*, 881 P.2d 1010, 1019 (Wash. 1994) (en banc) (quotation marks omitted). That repudiation must occur *before* the other party's performance is due. *See id.* ("[A]nticipatory breach occurs when one of the parties to a bilateral contract either expressly or impliedly repudiates the contract *prior to the time of performance*.") (emphasis added). Microsoft's conduct reflects neither an anticipatory breach nor a repudiation. First, Microsoft's supposed "failure" to apply for a license prior to Motorola's October 2010 demand is not a "positive statement or action." And Motorola's expert testified that Motorola's RAND obligations do not turn on whether Microsoft or Motorola speaks first, *see* Section II.A, *supra*, so a supposed "failure" to apply could not be an anticipatory breach. Second, Motorola's blatantly unreasonable offers breached Motorola's RAND obligations in October 2010: Microsoft's subsequent filing of this suit (the affirmative action Microsoft took that Motorola characterizes as a refusal to negotiate) was not "anticipatory" because Microsoft acted *after* Motorola breached. Even further, Microsoft's complaint is *not* a statement that Microsoft "will not or cannot substantially perform" its contractual obligations. To the contrary, Microsoft's complaint unequivocally sought this Court's assistance in ensuring *performance* of the contracts—a "[d]ecree that Microsoft is entitled to license from Motorola" the declared standard-essential H.264 and 802.11 patents. (Dkt. No. 1, Compl. 22 (Prayer for Relief G, H).) As Microsoft has stated repeatedly, Microsoft wants a RAND license and will pay for one. (*See, e.g.*, Dkt. No. 96 at 8, 9 & n. 30 ("Microsoft is seeking, and remains ready and willing to take, a license to Motorola's H.264 and 802.11 declared-essential patents on RAND terms."); Dkt No. 152 at 5; Dkt. No. 210 at 4, 5, 8, 11–13; Dkt. No. 236 at 22–23; Dkt. No. 257 at 1; Dkt. No. 246 Ex. 9 (April 5, 2012 Letter from Arthur Harrigan, Jr. to Jesse J. Jenner).)

MICROSOFT'S OPPOSITION TO
MOTOROLA'S MOTION FOR PARTIAL
SUMMARY JUDGMENT- 12

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

# CONCLUSION

Motorola's motion for partial summary judgment should be denied.

DATED this 13th day of April, 2012.

DANIELSON HARRIGAN LEYH & TOLLEFSON LLP

By     s/ Arthur W. Harrigan, Jr.
Arthur W. Harrigan, Jr., WSBA #1751
Christopher Wion, WSBA #33207
Shane P. Cramer, WSBA #35099

By     s/ T. Andrew Culbert
T. Andrew Culbert, WSBA #35925
David E. Killough, WSBA #40185
MICROSOFT CORPORATION
1 Microsoft Way
Redmond, WA 98052
Phone: 425-882-8080
Fax: 425-869-1327

David T. Pritikin, *Pro Hac Vice*
Richard A. Cederoth, *Pro Hac Vice*
Constantine L. Trela, Jr., *Pro Hac Vice*
Douglas I. Lewis, *Pro Hac Vice*
John W. McBride, *Pro Hac Vice*
Nathaniel C. Love, *Pro Hac Vice*
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Phone: 312-853-7000
Fax: 312-853-7036

Carter G. Phillips, *Pro Hac Vice*
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Phone: 202-736-8000
Fax: 202-736-8711

Counsel for Microsoft Corporation

MICROSOFT'S OPPOSITION TO
MOTOROLA'S MOTION FOR PARTIAL
SUMMARY JUDGMENT- 13

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

**CERTIFICATE OF SERVICE**

I hereby certify that on April 13, 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

**Attorneys for Defendants Motorola Solutions, Motorola Mobility and General Instrument Corporation**

Ralph Palumbo
Philip S. McCune
Lynn M. Engle
Summit Law Group

Steven Pepe
Jesse J. Jenner
Norman Beamer
Paul M. Schoenhard
Ropes & Gray

s/ Linda Bledsoe
LINDA BLEDSOE

MICROSOFT'S OPPOSITION TO
MOTOROLA'S MOTION FOR PARTIAL
SUMMARY JUDGMENT- 14

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717