# Exhibit 2

Richard A. Cederoth (Admitted Pro Hac Vice)
rcederoth@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

Samuel R. Miller (SBN 66871)
srmiller@sidley.com
SIDLEY AUSTIN LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

Bryan K. Anderson (SBN 170666)
bkanderson@sidley.com
SIDLEY AUSTIN LLP
1001 Page Mill Road
Building 1
Palo Alto, California 94304
Telephone: (650) 565-7000
Facsimile: (650) 565-7100

Attorneys for MICROSOFT CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MOTOROLA MOBILITY, INC., <br><br> Claimant, <br><br> vs. <br><br> MICROSOFT CORPORATION, <br><br> Defendant. | Case No. 11-03136-SC <br><br> Assigned to: Hon. Samuel Conti <br><br> **MICROSOFT CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(A) OR, IN THE ALTERNATIVE, TO STAY** <br><br> Date: January 13, 2012 <br> Time: 10:00 a.m. <br> Place: Courtroom 1 |

---

MICROSOFT'S CORP.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO TRANSFER PURSUANT
TO 28 U.S.C. § 1404(a) – CASE NO. 11-03136-SC

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ..................................................................................................................... 2

    A.    THE PRIVATE FORUM SELECTION CLAUSES IN MICROSOFT'S SDA AGREEMENTS DO NOT COMPEL DENIAL OF ITS TRANSFER MOTION ................................................................................................................. 2

        1.    Private Forum Selection Clauses Are Not Dispositive On A Motion Transfer ................................................................................................... 2

        2.    The Forum Selection Clauses In Microsoft's SDA Agreements Do Not Require MMI's Counterclaims To Be Litigated In This District ............... 4

    B.    THE PUBLIC AND PRIVATE INTEREST FACTORS FAVOR TRANSFER . 10

        1.    The Public Interest In the Efficient Administration of Justice Strongly Favors Transfer .................................................................................. 10

        2.    Center of Gravity of This Case is in the Western District of Washington ......................................................................................... 10

        3.    MMI's Bare Claims About Third-Party Witnesses and Compulsory Process Do Not Preclude Transfer ........................................................... 12

        4.    The Remaining Public and Private Factors Weigh in Favor of Transfer.. 14

    C.    IF THE COURT DECLINES TO TRANSFER THIS ACTION, IT SHOULD BE STAYED ............................................................................................................. 15

III. CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AIU Ins. Co. v. Superior Court*,
  51 Cal. 3d 807 (Cal. 1990) ................................................................................................... 7

*Allianz Global Risk U.S. Unc. Co. v. General Electric Co.*,
  2010 WL 749876 (C.D. Cal. March 1, 2010) ........................................................................ 8

*Cordis Corp. v. Siemens-Pacesetter, Inc.*,
  682 F. Supp. 1200 (S.D. Fla. 1987) .................................................................................... 10

*Cordura v. Navistar Int'l Transp. Corp.*,
  2011 WL 62493 (N.D. Cal. Jan. 7, 2011) ............................................................................. 3

*DuPuy Orthopaedics, Inc. v. Gault South Bay, Inc.*,
  2007 WL 3407662 (N.D. Ind. Nov. 13, 2007) ................................................................ 4, 15

*First Franklin Financial Corp. v. Liberty Nat'l Mortgage, Inc.*,
  2007 WL 915190 (N.D. Cal. March 23, 2007) ..................................................................... 4

*Frietsch v. Refco, Inc.*,
  56 F.3d 825 (7th Cir. 1995) .................................................................................................. 8

*IBM Credit Corp. v. Definitive Computer Svcs. Inc.*,
  1996 WL 101172 (N.D. Cal. 1996) ...................................................................................... 3

*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000) ................................................................................................ 3

*Manetti-Farrow, Inc. v. Gucci Am. Inc.*,
  858 F.2d 509 (9th Cir. 1988) ............................................................................................ 2, 8

*Murphy v. Allstate Ins. Co.*,
  17 Cal. 3d 937 (Cal. 1976) ................................................................................................... 7

*Oliver v. SD-3C LLC*,
  No. 11-CV-01260-JSW (N.D. Cal. filed Mar. 15, 2011) ...................................................... 9

*Painter's Dist. Council No. 30 Health & Welfare Fund v. Amgen, Inc.*,
  2007 WL 4144892 (C.D. Cal. Nov. 13, 2007) ................................................................... 12

*Phillips v. Audio Active*,
  494 F.3d 378 (2d Cir. 2007) ................................................................................................. 7

*Prouty v. Gores Tech. Grp.*,
   121 Cal. App. 4th 1225 (Cal. Ct. App. 2004) .................................................................. 8

*Raynes v. Davis*,
   2007 WL 4145102 (C.D. Cal. Nov. 19, 2007) ........................................................ 12, 14

*Samsung Electronics Co., Ltd. v. Panasonic Corp.*,
   No. 10-CV-3098-JSW (N.D. Cal. filed July 15, 2011) ................................................... 9

*Sessions Payroll Management, Inc. v. Noble Construction Co.*,
   84 Cal. App. 4th 671 (Cal. Ct. App. 2000) ..................................................................... 8

*Sorenson v. Dailmer Chrysler AG*,
   2003 WL 1888866 (N.D. Cal. Apr. 11, 2003) .............................................................. 11

*Stewart Org. v. Ricoh Corp.*,
   487 U.S. 22 (1988) ..................................................................................................... 1, 3

*Tecknekron Software Sys., Inc. v. Cornell Univ.*,
   1993 WL 215024 (N.D. Cal. June 14, 1993) ................................................................ 10

*Texas Instruments Inc. v. Tessera, Inc.*,
   231 F.3d 1325 (Fed. Cir. 2000) ....................................................................................... 7

*The Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972) ............................................................................................................ 3

*Three Bros Trucking, Inc. v. Excel Global Logistics, Inc.*,
   2006 WL 1329883 (N.D. Cal. May 16, 2006)………………………………….…….8, 9

*U-Haul Int'l, Inc. v. Hire A Helper LLC*,
   2008 WL 4368663 (D. Ariz. Sept. 23, 2008) .................................................................. 3

**STATUTES**

28 U.S.C. § 1404(a) .................................................................................................................. 1

Cal. Civ. Code § 1559 ............................................................................................................... 8

## I. **INTRODUCTION**

No matter how vehemently Motorola Mobility, Inc. ("MMI") wants to argue that this case concerns non-parties, this is a civil action between MMI and Microsoft Corporation ("Microsoft") – neither of which resides in this District. Moreover, this action is just one volley in a series of patent-related actions between Microsoft and MMI, both in federal District Court and before the International Trade Commission. Already three other District Court actions have been transferred to the Western District of Washington, where now *five* cases between the parties are pending, including a case concerning the very same patents that are central to MMI's claims in this action and another in which Microsoft has made similar breach and promissory estoppel claims against MMI. As set forth in Microsoft's Motion (at 2-5), the courts that transferred these actions recognized that the Western District of Washington is a substantially more convenient forum for disputes between MMI and Microsoft, and given that it has now become the focal point of the wide-ranging litigation between the parties, it has a greater relationship to these disputes as well.

In opposition, MMI makes two basic arguments. First, it claims that forum selection clauses in Microsoft's agreements with the SD Card Association ("SDA") compel the denial of Microsoft's motion to transfer. But the law is to the contrary; the Supreme Court has made clear that the existence of a private forum selection clause is not dispositive on a motion to transfer because 28 U.S.C. § 1404(a) requires consideration of other private and public interests. *See Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988). Thus, the existence of a forum selection clause, while potentially significant, must be weighed against those other private and public interest factors and, where as here, those factors tip decisively in favor of transfer, a § 1404 motion can and should be granted. This is all the more true in this case because MMI's standing to invoke the forum selection clauses on which it relies is dubious at best.

Second, MMI asserts that this forum would be more convenient for certain cherry-picked third parties that it claims "may" be witnesses in this case. Without a clearer explanation of the material information actually possessed by these "potential" witnesses and an indication that any third-party witness with actual material knowledge will be unwilling to appear for trial wherever it is located, the identification of such third parties is entitled to little weight. Much more important to

1
MICROSOFT'S CORP.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO TRANSFER PURSUANT
TO 28 U.S.C. § 1404(a) – CASE NO. 11-03136-SC

the issue of transfer are the location of the gravity of the case, which rests squarely in the Western District of Washington where Microsoft is alleged to have committed its wrongdoing, and the ability to conserve judicial (and private) resources, which would be promoted by transfer to the Western District of Washington where related litigation is already pending. This is precisely the type of case in which transfer pursuant to 28 U.S.C. § 1404(a) can provide the greatest benefit through the ability to consolidate and streamline cases involving similar issues in one jurisdiction.

## II. ARGUMENT

### A. THE PRIVATE FORUM SELECTION CLAUSES IN MICROSOFT'S SDA AGREEMENTS DO NOT COMPEL DENIAL OF ITS TRANSFER MOTION

As expected, MMI argues that California forum selection clauses in a SD Host/Ancillary Products License Agreement ("HALA") that Microsoft entered with the SDA and SD-3C, LLC ("SD-3C"),[1] and the SDA's Intellectual Property ("IP") Policy, require denial of Microsoft's motion to transfer. (*See* MMI Mem. at 11-17.) MMI's claim that these forum selection clauses must be given dispositive weight is simply wrong as a matter of law. Moreover, although the Court need not reach such issues to grant Microsoft's motion, MMI's reliance on these forum selection clauses – which appear in an agreement to which MMI is not a party and in an IP Policy that, by its terms, does not apply to MMI's counterclaims – is misplaced.

#### 1. Private Forum Selection Clauses Are Not Dispositive On A Motion Transfer

Based on the Ninth Circuit's decision in *Manetti-Farrow, Inc. v. Gucci Am. Inc.,* 858 F.2d 509, 514-15 (9th Cir. 1988), MMI begins its argument with the premise that "absent a strong showing by the party opposing [a forum selection] clause that enforcement would be unreasonable or unjust," such a clause should dictate the result on a motion to transfer pursuant to § 1404. (MMI Mem. at 11 (quoting *Manetti-Farrow, Inc.*, 858 F.2d at 514-15).) This misstates the law. *Manetti-Farrow* did not involve a motion to transfer, and the portion of the opinion that MMI quotes rests on

---

[1] The SD-3C, LLC is a licensing agent formed by the SDA's three founding members – Panasonic, Toshiba, and SanDisk – to jointly license their foundational SD memory card technology.

the Supreme Court's decision in *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), an admiralty decision addressing the enforceability of forum selection clauses also outside the § 1404 context. In *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988), the Supreme Court explicitly rejected the contention that the rule favoring enforcement of forum selection clauses enunciated in *The Bremen* was dispositive on a motion transfer pursuant to §1404. *Id.* at 28-29 ("[W]e disagree with the [lower] court's articulation of the relevant inquiry as 'whether the forum selection clause in this case is unenforceable under the standards set forth in *The Bremen.*'") (citation omitted).

Indeed, as set forth in Microsoft's Motion, the Court's decision in *Stewart* and its progeny have made clear that, on a motion to transfer pursuant to §1404, the existence of a private forum selection clause, while potentially significant, is not dispositive. (Microsoft Mem. at 14-15 (citing *Stewart* 487 U.S. at 31; *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 n.20 (9th Cir. 2000); *Cordura v. Navistar Int'l Transp. Corp.*, 2011 WL 62493, at *2 (N.D. Cal. Jan. 7, 2011); *U-Haul Int'l, Inc. v. Hire A Helper LLC*, 2008 WL 4368663, at *3 (D. Ariz. Sept. 23, 2008)).) As this Court recently stated:

> Although a district court considers the presence of a forum selection clause, it 'also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of the 'interest of justice.''

*Cordura*, 2011 WL 62493, at *2 (quoting *Stewart.*, 487 U.S. at 30).

Attempting to undermine this authority, MMI claims that Microsoft failed to cite "a single case, in this or any district, where a court disturbed a plaintiff's choice of forum when that choice was made in accordance with a mandatory forum selection clause." (MMI Mem. at 18.) Again, MMI is mistaken. In fact, Microsoft cited *two* decisions – including one within this District – in which a court transferred an action from a forum specified in a forum selection clause to another more convenient venue pursuant to § 1404. (*See* Microsoft Mem. at 15 (citing *IBM Credit Corp. v. Definitive Computer Svcs. Inc.*, 1996 WL 101172, at *2 (N.D. Cal. 1996) (ordering transfer to Texas forum where witnesses were present despite forum selection clause supporting venue in California); *U-Haul Int'l, Inc.*, 2008 WL 4368663 at *3 (transferring action from Arizona forum specified in forum selection clause to California based on convenience factors)).) And these were not isolated

3

examples. *See, e.g.*, *DuPuy Orthopaedics, Inc. v. Gault South Bay, Inc.*, 2007 WL 3407662, at *11 (N.D. Ind. Nov. 13, 2007) (granting motion to transfer and holding that "regardless of whether the forum selection clause" specifying an Indiana forum "governs the parties' convenience, … the private and public interests in this case would be served to a greater degree in the Northern District of California"); *First Franklin Financial Corp. v. Liberty Nat'l Mortgage, Inc.*, 2007 WL 915190, at *4 (N.D. Cal. March 23, 2007) (unpublished) (granting motion to transfer to Minnesota despite California forum selection clause in contract between plaintiff and defendant).

In sum, a private forum selection clause is but one factor among many private and public interest factors that must be weighed on a motion to transfer under § 1404. And where, as here, those other convenience factors and the interests of justice strongly favor transfer, the existence of an applicable forum selection clause standing alone should not foreclose transfer.

### 2. The Forum Selection Clauses In Microsoft's SDA Agreements Do Not Require MMI's Counterclaims To Be Litigated In This District

While the Court need not resolve the competing interpretations of the forum selection clauses in Microsoft's HALA and the SDA IP Policy in order to grant Microsoft's Motion, it is, in fact, far from clear that those forum selection clauses apply to MMI's counterclaims.

#### a. The SDA Forum Selection Clauses Do Not Require The Infringement Claims Giving Rise To MMI's Counterclaims To Be Litigated In This District

As a threshold matter, MMI cannot seriously dispute that its present counterclaims – which are premised on Microsoft having pursued infringement claims under the FATLFN patents despite its alleged obligation to provide MMI a RAND license under those patents – is closely related to Case No. 2:10-cv-1577 in the Western District of Washington ("WDWA-1577"), which is the only remaining case where such infringement claims under those patents (together with claims under seven additional unrelated patents) are being pursued.[2] MMI attempts to undermine Microsoft's

---

[2] As noted in its Motion (at 7-8), Microsoft withdrew its claims against MMI under the FATLFN patents that were pending in the International Trade Commission in Investigation No. 337-TA-744 (the "744 Investigation").

4

MICROSOFT'S CORP.'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)
CASE NO. 11-03136-JF

choice of that forum by suggesting that Microsoft was obligated from the outset to bring that action in this District instead. (MMI Mem. at 7.) This claim is meritless.

MMI does not dispute that its own license agreement with the SDA was terminated in November 2008 due to non-payment of license fees and that it did not regain its status as an SDA licensee until May 24, 2011. (See Microsoft Mem. at 6-7.) Thus, in October 2010, when Microsoft filed its complaints in the ITC and in the WDWA-1577 action asserting claims for infringement of nine U.S. patents, including the two FATLFN patents that MMI now claims are subject to Microsoft's RAND commitment to the SDA, MMI was not an SDA licensee and it had no authorization to implement the SDA Specifications under the explicit terms of the SDA's IP Policy and the Specifications themselves. (*See* SDA IP Policy, § 6 ("Commercial use of the Adopted Specifications requires a separate written definitive license agreement to be consummate between a Member and the SDA and/or SD-3C, LLC"); SDA Specification Part 2, Version 2.00 ("[I]mplementation of the SD Specifications in a host device … requires execution of a [HALA] with the SD-3C LLC; and implementation … in a SD Card requires the execution of a SD Memory Card License Agreement with the SD-3C, LLC").[3]

MMI nevertheless apparently believes that Microsoft was obligated at that point to (i) extend to MMI a RAND license based on Microsoft's commitments to the SDA regardless of its status as an SDA licensee, and (ii) anticipate that MMI would interpose its alleged right to such a license as a defense to Microsoft's infringement claims, thereby somehow implicating the forum selection clauses in Microsoft's HALA and the SDA IP Policy. Despite its tortured efforts to absolve itself of the consequences of its decision to permit its license agreement with the SDA to be terminated, MMI's position that it had a right to a RAND license under the FATLFN patents at the outset of the WDWA-1577 action simply cannot be squared with the language or purpose of the SDA IP Policy or the specific commitments Microsoft made to the SDA.

---

[3] A copy of the SDA IP Policy is attached as Exhibit 12 to the Declaration of D. Giardina In Support of Microsoft's Motion To Transfer submitted with Microsoft's Motion (D.E. 40). A copy of the SDA Specification, Part 2, Version 2.00 was previously submitted by MMI under seal as Ex. 7 to the Declaration of David A. Perlson in Support of Counterclaimant MMI Mobility's Motion for Temporary Restraining Order ("Perlson Decl. In Supp. of MMI's TRO Motion") (D.E. 26.)

In its August 2005 commitment letter, Microsoft committed to "license its Essential Patent Claims in a non-discriminatory fashion and under reasonable terms and conditions to ***all SDA Member and non-SDA-Member licensees***, solely to the extent required for such entities to implement finally-adopted SDA Specifications … pursuant to separate license agreements." (*See* Letter from V. Ghotge to P. Reinhart dated August 31, 2005, at 2 (emphasis added), attached as Ex. B to the Declaration of David A. Perlson In Further Support of MMI's Opposition to Microsoft's Motion To Transfer Pursuant to 28 U.S.C. § 1404(a) Or, In the Alternative, To Stay (D.E. 51)).) MMI would read the word "licensees" out of that sentence, contending that Microsoft's commitment was to extend a RAND license to any entity that might seek to implement an SDA Specification, whether authorized or not. (MMI Mem. at 13.) In fact, the language of Microsoft's commitment letter recognizes that there are *two* kinds of SDA licensees: (1) those that are licensed under a HALA to make "host" and "ancillary" products in which SD memory cards are used, who must – under SDA rules – be SDA members; and (2) those that are licensed to make SD memory cards themselves, who need not be SDA members.[4] Both, however, are SDA licensees. In recognition of this, and in accordance with the SDA IP Policy, Microsoft committed to extend RAND licenses to its declared essential patents for implementation of SDA specifications to either type of licensee, whether they were an SDA member or not. But the SDA IP Policy did not obligate Microsoft to agree, and Microsoft did not commit, to license parties – like MMI at the time the ITC and WDWA-1577 actions were commenced – that had not obtained rights from the SDA to implement the SDA's Specifications and that had not made reciprocal licensing commitments.[5] Accordingly, there was

---

[4] *See* SDA Use and Licensing page from the SDA's website (http://www.sdcard.org/developers/join/licensing/), attached as Ex. A to the Supplemental Declaration of David C. Giardina In Support of Microsoft's Motion To Transfer ("Giardina Supp. Decl.").

[5] Because the founders of the SDA (Panasonic, Toshiba, and SanDisk) maintain a commercial interest in the foundational technology, the SDA differs from other industry-wide standard setting organizations that do not require potential implementers to take a license from the organization or its founders in order to obtain base rights to implement a published standard. Indeed, the SDA's Specifications are themselves proprietary. (See SDA Specification, Part 2, Version 2.00, at ii, attached as Ex. 7 to the Perlson Decl. In Supp. Of MMI's TRO Mot.) As a result, Microsoft's RAND obligations under the SDA IP Policy and its commitment letter are substantially more limited in scope than the RAND commitments that MMI made to two broader-based standard setting

6
MICROSOFT'S CORP.'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)
CASE NO. 11-03136-JF

1 nothing improper about – and there is no basis to disregard – Microsoft's choice to bring the claims
2 under the FATLFN patents that give rise to MMI's counterclaims outside this District.

      **b.**  **The Forum Selection Clause in Microsoft's HALA Does Not Govern The Forum For MMI's Counterclaims**

5  Whether a contractual forum selection clause applies to the parties and claims at issue in a
6 particular dispute turns on the language of the clause itself. *Phillips v. Audio Active*, 494 F.3d 378,
7 386 (2d Cir. 2007). Under California law, which governs in the interpretation of the HALA and the
8 SDA IP Policy, "clear and explicit" language which does not produce an absurdity will govern. Cal.
9 Civ. Code § 1638. California courts give "contract terms their ordinary and popular meaning unless
10 the contracting parties use them in a technical or special sense." *Texas Instruments Inc. v. Tessera,*
11 *Inc.*, 231 F.3d 1325, 1329 (Fed. Cir. 2000) (*citing AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807,
12 799 P.2d 1253, 274 Cal Rptr. 820, 822 (Cal. 1990)).

13  Here, the language of the forum selection clause in the Microsoft HALA states
14 unambiguously that it applies to "disputes between the parties" to that agreement. Because MMI is
15 not a party to that agreement, the provision cannot apply to disputes – like MMI's counterclaims –
16 that are exclusively between MMI and Microsoft.[6] MMI nevertheless contends that it can invoke the
17 clause either because it is a third-party beneficiary or because it is "closely related" to the
18 contracting parties. (*See* MMI Mem. at 11.) Neither contention is correct.

19  In California, contracts are generally binding and enforceable only on the parties who
20 executed the contract. *See Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 944 (Cal. 1976) ("[a] third
21 party should not be permitted to enforce covenants made not for his benefit, but rather for others. He

---

organizations – the Institute of Electrical and Electronics Engineers Standard Association ("IEEE") and International Telecommunications Union ("ITU") – that are issue in Microsoft's breach of contract action pending in the Western District of Washington, Case No. 10-1823LRJ ("WDWA-1823"). Accordingly, Microsoft's statements regarding the scope of *MMI's* RAND commitments to the IEEE and ITU in the WDWA-1823 action, and the statements of a Microsoft executive regarding RAND obligations in the abstract (*see* MMI Mem. at 13-14), are irrelevant to the scope of Microsoft's commitments in the SDA.

[6] The scope of Microsoft's consent under the forum selection clause of its HALA to the jurisdiction of the courts of Santa Clara County and its "irrevocable" the waiver of objections to that venue are likewise limited to "disputes between the parties" and therefore inapplicable to MMI's counterclaims.

7
MICROSOFT'S CORP.'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)
CASE NO. 11-03136-JF

is not a contracting party; his right to performance is predicated on the contracting parties' intent to benefit him.") The exception is that a "contract, made expressly for the benefit of a third person, may be enforced by him." Cal. Civ. Code § 1559. While the term "expressly" in Civil Code section 1559 has now "come to mean merely the negative of 'incidentally'," it must still appear upon "reading the contract as a whole in light of the circumstances under which it was entered," that it was "the intention of *the parties* to secure [for the alleged third party beneficiary] personally the benefit of its provisions." *Prouty v. Gores Tech. Grp.*, 121 Cal. App. 4th 1225, 1232-33 (Cal. Ct. App. 2004) (emphasis in original).

Nothing in the language of the forum selection clause in the HALA indicates that the parties to the agreement intended that clause to inure to the benefit of MMI or any general class of non-parties to which MMI belongs. Indeed, even if MMI were deemed to be an intended third-party beneficiary of other provisions in the HALA agreement, it cannot be deemed a beneficiary of the forum selection clause to the extent that the language of the clause does not indicate that it was intended to benefit third parties like MMI. *See, e.g., Sessions Payroll Management, Inc. v. Noble Construction Co.*, 84 Cal. App. 4th 671, 681 (Cal. Ct. App. 2000) (holding that even if plaintiff had been a third-party beneficiary of contract in question, it would not have been entitled to enforce a fee shifting provision in contract not intended for its benefit).

None of the cases that MMI cites in support of the broader application of a forum selection clause in favor of a non-party like itself (MMI Mem. at 11) would justify disregarding the explicit terms of the forum selection clause in the HALA limiting its scope. For example, in *Manetti-Farrow* and *Frietsch v. Refco, Inc.*, 56 F.3d 825 (7th Cir. 1995), the courts found it appropriate to apply a forum selection clause against parties that were close affiliates of, or who exercised complete control over, the signatories to the contracts containing the clause. *Manetti-Farrow*, 858 F.2d at 514 n.5; *Frietsch*, 56 F.3d at 827. In contrast, this is a situation where a non-party, MMI, is seeking to take advantage of a forum selection clause that was not intended to benefit it.[7] In this case, there is

---

[7] The two other cases that MMI cites are equally inapposite. *Allianz Global Risk U.S. Ins. Co. v. General Electric Co.*, 2010 WL 749876 (C.D. Cal. March 1, 2010), did not involve a forum selection clause at all; it addressed the arbitrability of dispute with the backdrop of the strong federal policy in favor of arbitration. In *Three Bros Trucking, Inc. v. Exel Global Logistics, Inc.*, 2006 WL 1329883

8
MICROSOFT'S CORP.'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)
CASE NO. 11-03136-JF

no basis in the language or structure of the HALA to conclude that the parties to it foresaw and intended that non-parties like MMI would be able to invoke its forum selection clause in a situation like this.

### c. MMI's RAND Counterclaims Likewise Do Not Raise Any "Matter" Under The SDA IP Policy

By the same token, MMI's counterclaims – which complain of the failure of negotiations of a RAND license between Microsoft and MMI – do not implicate the forum selection clause in the SDA IP Policy.  The forum selection clause in the IP Policy applies only to "matters under" that policy.  (SDA IP Policy, § 11.)  Once Microsoft made its August 2005 patent disclosure to the SDA, the negotiation of individual license agreements between Microsoft and other SDA licensees became strictly private matters that, according to the IP Policy itself, "must take place between the individual parties *outside the context of the SDA*."  (*Id.*, § 5) (emphasis added).  Thus, to the extent that MMI's counterclaims center on the alleged failure of such bilateral negotiations and assert that its right to RAND license constitutes a defense to Microsoft's infringement claims in the WDWA-1577 action under the FATLFN patents, by the plain language of the IP Policy itself such concerns are not matters under the IP Policy to which its forum selection clause applies.[8]  Indeed, MMI fails to cite a single case in which a forum selection clause in a standard-setting organization's IP policy was deemed to govern where a RAND licensing dispute between two members could be litigated.[9]

---

(N.D. Cal. May 16, 2006), which MMI claims enforced a "forum selection clause against a third party beneficiary" (MMI Mem. at 11), the court did not address any such issue.   Instead, after the plaintiff clarified that it was not pursuing a breach claim on a third-party beneficiary theory under an agreement that did not contain a forum selection clause, the court enforced forum selection clauses in two other agreements against the parties to those agreements.  *Id.*, 2006 WL 1329883 at *2 and n.2

[8] By way of contrast, "matters under [the SDA] IP Policy" subject to the policy's forum selection clause would include disputes regarding a determination that a member had not complied with the IP Policy by the SDA's Board of Directors, the body charged with determining such compliance.

[9] Neither of the cases cited by MMI pending in this District involving the activities of the SDA involve such claims.  (MMI Mem. at 23.)  Instead, both actions challenge the legality of the SD-3C patent pool and activities of the founders of the SDA.  *See Oliver v. SD-3C LLC*, No. 11-CV-01260-JSW (N.D. Cal. filed Mar. 15, 2011); *Samsung Electronics Co., Ltd. v. Panasonic Corp.*, No. 10-CV-3098-JSW (N.D. Cal. filed July 15, 2011).

B. **THE PUBLIC AND PRIVATE INTEREST FACTORS FAVOR TRANSFER**

1. **The Public Interest In the Efficient Administration of Justice Strongly Favors Transfer**

The public interest in conserving judicial resources and the efficient and consistent application of justice in the disputes between Microsoft and MMI weighs heavily in favor of transfer. The subject matter of this case clearly overlaps with the subject matter of at least the WDWA-1577 case, which involves claims of patent infringement of the FATLFN patents at issue in this action. In arguing that Microsoft wrongly filed the WDWA-1577 action in Washington instead of California (MMI Mem. at 16-17, 24), MMI essentially admits that the subject matter of the cases overlap.[10] With multiple actions between the parties, it would clearly be most efficient in terms of conservation of both judicial and private resources, and avoidance of duplication and potentially inconsistent results (in terms of allowable discovery or substantively) to have the actions dealt with in one District. *See, e.g.*, *Cordis Corp. v. Siemens-Pacesetter, Inc.*, 682 F. Supp. 1200, 1202 (S.D. Fla. 1987). As explained in Microsoft's Motion, three other District Courts have agreed with this reasoning, and transferred those cases to the Western District of Washington. The same result is justified here, particularly given the undisputed overlap of issues between this action and the WDWA-1577 action.

2. **Center of Gravity of This Case is in the Western District of Washington**

MMI's attempt to shift the focus of this case to non-parties demonstrates a basic misconstruction of the proper analysis under § 1404(a). While the "fundamental principle guiding § 1404(a) analysis is that litigation should proceed in that place where the case finds its center of gravity," the center of gravity is not determined by a focus on third-parties, but rather on "the forum where the *defendant* is alleged to have" acted. *Tecknekron Software Sys., Inc. v. Cornell Univ.*,

---

[10] MMI illogically argues that, by seeking to transfer this case, Microsoft is attempting to preclude MMI from obtaining an injunction against Microsoft's pursuit of its claims under the FATLFN patents in the WDWA-1577 case. (*See* MMI Mem. at 16-17, 24.) This contention makes no sense because MMI will be free to pursue such relief in the Western District of Washington. In fact, if MMI were entitled to such an injunction (which it is not), it would likely be easier to obtain from a single court familiar with all of the affected actions.

1993 WL 215024, *7 (N.D. Cal. June 14, 1993); *Sorenson v. Dailmer Chrysler AG*, 2003 WL 1888866, *3 (N.D. Cal. Apr. 11, 2003) (emphasis added). It is undisputed that *Microsoft's* actions central to all of MMI's claims were overwhelmingly performed in the Western District of Washington, where Microsoft is headquartered and where virtually all of its employees who performed the relevant activities are located. The Western District of Washington is where the relevant technology was primarily developed, where decisions were made about Microsoft's participation in the SDA, where Microsoft's commitment letter to the SDA was drafted, where many of Microsoft's alleged statements (e.g., in press releases) were made, and where all of Microsoft's licensing activities have occurred (including those with MMI that are central to its claims).

Given that the accused activities of Microsoft have overwhelmingly occurred in the Western District of Washington, MMI cannot legitimately attempt to shift the center of gravity of this dispute through other asserted contacts with this District. Thus, it is immaterial to determining the center of gravity in this case that MMI and Microsoft – which are neither incorporated nor headquartered in California – have operations in California.[11] (MMI Mem. at 8-9.) Moreover, it is even more immaterial to determining the center of the accused wrongdoing to focus, as MMI does, on the activities of non-parties. Thus, that non-party Google is headquartered in this District, and that Google's Android operating system is central to other disputes between Microsoft and MMI (MMI Mem. at 10-11), has no relevance to where *Microsoft's* accused activities took place. Similarly, the activities (or opinions) of SDA and related entities (MMI Mem. at 9-10) have no bearing whatsoever on Microsoft's alleged wrongful actions in its licensing-related interactions with MMI. Thus, the

---

[11] MMI, through the Whaley Declaration, coyly asserts that the "majority of MMI employees likely to have knowledge . . . work at its Sunnyvale facility *or* its Libertyville, Illinois facility." (MMI Mem. at 8) (emphasis added). This assertion fails to establish that anyone at the Sunnyvale California facility has any relevant knowledge of any matter in dispute in this action. Tellingly, the two MMI employees who exchanged email with Microsoft in 2006-07 regarding license terms under the FATLFN patents were located in Libertyville. (Microsoft Mem. at 11 n.7.) While MMI claims that Microsoft failed to respond to its last inquiry in 2006-07, the final email in the exchange shows that MMI's interest was strictly "hypothetical" and it had not determined whether it intended to pursue a license. (*See* Email from K. Peterson to S. Misra, dated Feb. 14 2007, Declaration of David Bartley Eppenauer In Support of Microsoft Corporation's Motion to Transfer (D.E. 40), Group Ex. 2.) There is no indication that MMI ever followed up on this inquiry.

location of the SDA and its related entities should have no place in determining the forum that is the center of gravity in this dispute.

### 3. MMI's Bare Claims About Third-Party Witnesses and Compulsory Process Do Not Preclude Transfer

MMI's assertions concerning "*potential* Motorola third-party witnesses" should be afforded little weight (MMI Mem. at 18-20) because MMI has failed to establish with any clarity why cherry-picked third parties are material and has failed to establish why its chosen third-party witnesses are more important than other third-party witnesses that are located elsewhere. Although the location of third-party witnesses may be relevant, "[i]n determining whether this factor weighs in favor of transfer, the court must consider not simply how many witnesses each side has and the location of each, but rather, the court must consider the importance of the witnesses." *Painter's Dist. Council No. 30 Health & Welfare Fund v. Amgen, Inc.*, 2007 WL 4144892 at *4 (C.D. Cal. Nov. 13, 2007). The materiality of a third-party witness is not to be presumed, but rather little deference is given to this factor where the materiality of the asserted of third-party witnesses "has not been explained with any clarity." *Raynes v. Davis*, 2007 WL 4145102, at *3 (C.D. Cal. Nov. 19, 2007); *see also id*. at *4. Moreover, the "convenience of witnesses is equivocal" where the party asserting the importance of particular third-party discovery "has not sufficiently explained how these witnesses are more important than the other non-party witnesses residing elsewhere such that their residence should be accorded great weight." *Id*. at *3. MMI has neither explained with clarity the materiality of its asserted third-parties, nor explained how the testimony of those third-parties is more important than that of third-parties residing outside of this District.[12]

For example, MMI claims that it "expects that it will want to call several SDA witnesses to trial" (MMI Mem. at 18), but fails to identify any particular witnesses and fails to explain what material information any of the unnamed "SDA witnesses" actually have to offer. MMI provides no

---

[12] Similarly, little weight should be given to MMI's arguments about the relative subpoena power over third-party witnesses. MMI Mem. at 19-20. Where, as here, "there has been no showing that important non-party witnesses would be 'unwilling' to testify at trial wherever it is held," arguments concerning compulsory process will not be given great weight. *Raynes*, 2007 WL 4145102 at *4.

12
MICROSOFT'S CORP.'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)
CASE NO. 11-03136-JF

information concerning where any of the unnamed "SDA witnesses" reside, and there is not even a bare assertion that any resides in this District. This omission is not immaterial, as MMI's reliance upon another "potential" third-party, SD-3C, demonstrates. MMI provides no explanation of any material information SD-3 LLC actually possess, asserting only that it is "*likely* to have highly pertinent information." (MMI Mem. at 18) (emphasis added). MMI also provides no information concerning where any relevant employee of SD-3C actually resides. In fact, MMI has retained the president of SD-3C, Richard J. Holleman, as an expert in another action. Mr. Holleman does not reside in the Northern District of California; he lists residences in Massachusetts and Florida. (*See* Declaration of Richard J. Holleman, Case No. 10-cv-1823 (W.D. Wash. September 23, 2011), attached as Ex. B to the Giardina Supp. Decl.)[13] Moreover, Holleman has already voluntarily injected himself into the ongoing series of cases between Microsoft and MMI in the Western District of Washington, having submitted a declaration in the WDWA-1823 case in support of MMI's opposition to Microsoft's Motion for Summary Judgment. (*Id.*) Thus, the fact that MMI has cited companies with offices in California says nothing about the actual location of the sources of proof, much less the materiality of any information that those sources may have.

MMI identifies several other SDA-related third-parties, but again fails to explain with any clarity the materiality of the information that those third-parties possess, and fails to explain why its selected third-parties are more important than any other similarly situated third-parties. MMI provides no explanation of any material information possessed by former SDA executives Paul Reinhardt and Raymond Creech or by the handful of SDA Board member companies selected by MMI. MMI Mem. at 18-19. MMI states only that those third parties "may" have relevant information. *Id*. at 19. Nor does MMI make any attempt to explain why the few hand-picked SDA Board members it identifies have any better or more important information than any of the other numerous SDA Board members, Executive members, or General members that reside in numerous locations.[14]

---

[13] Mr. Holleman lists his residences in the *curriculum vitae* attached the Rebuttal Expert Report included with his declaration.

[14] The SDA website lists 14 Board members, over 60 Executive members, and hundreds of General

13
MICROSOFT'S CORP.'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)
CASE NO. 11-03136-JF

Finally, MMI's reliance on non-party Google suffers from the same infirmities. MMI does not identify any material information that Google possesses, claiming only that it "may be an important third party witness." *Id*. at 19. Given MMI's equivocal claims of relevance and failure to explain the materiality of any third-party witness in this District, as well as its failure to explain why the third parties it selected are more important than any other "potential" third party witnesses (for that is all that MMI has offered to identify), the convenience of third party witnesses should be afforded little weight. *Raynes*, 2007 WL 4145102, at *3-4.

### 4. The Remaining Public and Private Factors Weigh in Favor of Transfer

MMI argues that Microsoft would not be inconvenienced by proceeding with this action in this District (MMI Mem. at 20-21), but that is not an argument that this District is more convenient than the Western District of Washington. Indeed, MMI has no basis to claim that this District is more convenient, and given that Microsoft's headquarters are in the Western District of Washington, that District is clearly the more convenient forum in terms of the convenience of the parties.

The convenience of the witnesses also weighs in favor of transfer. MMI has not established the requisite facts concerning any third-party witnesses to assign any real weight to their convenience. Moreover, MMI specifically identifies only two employees in this District that it merely claims to have "knowledge likely relevant to the present case." Whaley Decl. ¶ 8. In contrast, it is clear that virtually all the relevant witnesses regarding Microsoft's alleged actions are located in Washington.

Moreover, as discussed in detail in Microsoft's Motion (at 12-13), MMI's choice of this District as a forum is entitled to little weight. MMI attempts to escape this conclusion by stressing the importance of non-parties, such as the SDA. MMI Mem. at 21-22. As discussed above, however, the focus for determining the gravity of a case is on the *defendant's actions*, not the actions of third parties. MMI also stresses that the HALA Agreement and SDA IP Policy are subject to

---

members. *See* https://www.sdcard.org/about_sda/member_companies/board/;
https://www.sdcard.org/about_sda/member_companies/exec/;
https://www.sdcard.org/about_sda/member_companies/general/, attached as Ex. C to the Giardina Supp. Decl.

14
MICROSOFT'S CORP.'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)
CASE NO. 11-03136-JF

California law, but that should be no impediment to transferring the case to the Western District of Washington. Courts in that District (as in this District and others) are accustomed to applying the laws of other states, so MMI's argument in this regard is entitled to little weight. *See DePuy Orthopaedics*, 2007 WL 3407662 at *11.

### C. IF THE COURT DECLINES TO TRANSFER THIS ACTION, IT SHOULD BE STAYED

If the Court declines to transfer this action (which is the preferable and more efficient course), it should stay this action pending resolution of Microsoft's underlying infringement claims in the WDWA-1577 action. MMI's claim that such a stay would deprive it of a remedy is baseless; it will be able to pursue its counterclaims just as easily after the infringement and validity issues are resolved – and more easily if it were to prevail in the WDWA-1577 action on its expected RAND license defense. Such a stay would (1) avoid the anomaly of MMI's counterclaims, which are largely if not entirely derivative of Microsoft's infringement claims, being actively litigated while the WDWA-1577 action remains stayed, and (2) reduce the risk of inconsistent rulings on discovery and merits issues relating to MMI's counterclaims and the parallel defenses it can be expected to assert in the WD-1577 action.

## III. CONCLUSION

For the foregoing reasons, Counterclaim Defendant Microsoft respectfully requests that this action be transferred to the United States District Court for the Western District of Washington or, if the Court declines to transfer, that it be stayed pending resolution of Microsoft's patent infringement claims under the FATLFN patents pending in the Western District of Washington.

Dated: September 30, 2011  SIDLEY AUSTIN LLP

By: /s/ Samuel R. Miller
Richard A. Cederoth
rcederoth@sidley.com
Samuel R. Miller (SBN 66871)
srmiller@sidley.com
Bryan K. Anderson (SBN 170666)
bkanderson@sidley.com
Attorneys for MICROSOFT CORPORATION