# Exhibit 3

1   **Richard A. Cederoth (Admitted Pro Hac Vice)**
    **rcederoth@sidley.com**
2   **SIDLEY AUSTIN LLP**
    **One South Dearborn Street**
3   **Chicago, Illinois  60603**
    **Telephone:  (312) 853-7000**
4   **Facsimile:  (312) 853-7036**

5   **Samuel R. Miller (SBN 66871)**
    **srmiller@sidley.com**
6   **SIDLEY AUSTIN LLP**
    **555 California Street**
7   **San Francisco, California  94104**
    **Telephone:  (415) 772-1200**
8   **Facsimile:  (415) 772-7400**

9   **Bryan K. Anderson (SBN 170666)**
    **bkanderson@sidley.com**
10  **SIDLEY AUSTIN LLP**
    **1001 Page Mill Road**
11  **Building 1**
    **Palo Alto, California  94304**
12  **Telephone:  (650) 565-7000**
    **Facsimile:  (650) 565-7100**

13
    **Attorneys for MICROSOFT CORPORATION**
14
                    UNITED STATES DISTRICT COURT
15
                 NORTHERN DISTRICT OF CALIFORNIA
16
                         SAN JOSE DIVISION
17

18  MOTOROLA MOBILITY, INC.,            )   Case No. 11-03136-JF
                                        )
19              Claimant,               )   Assigned to: Hon. Jeremy Fogel
                                        )
20  vs.                                 )   **MICROSOFT CORPORATION'S NOTICE**
                                        )   **OF MOTION AND MOTION TO**
21  MICROSOFT CORPORATION,              )   **TRANSFER PURSUANT**
                                        )   **TO  28 U.S.C. § 1404(A) OR, IN THE**
22              Defendant.              )   **ALTERNATIVE, TO STAY**
                                        )
23                                      )   Date:      To be determined
                                        )   Time:      To be determined
24  _____     )   Place:     To be determined

25

26

27

28

---

MICROSOFT'S CORP.'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)
CASE NO. 11-03136-JF

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on a date to be determined upon reassignment of this matter to another U.S. District Court Judge (due to the resignation of the Honorable Jeremy Fogel, U.S. District Court Judge), Defendant Microsoft Corporation ("Microsoft") will and hereby does move this Court for an order transferring this action to the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1404(a). In the alternative, if the Court declines to transfer this action pursuant to § 1404(a), Microsoft moves this Court for an order staying this action pending resolution of Microsoft's patent infringement claims under U.S. Patent Nos. 5,579,517 and 5,758,352 pending in the Western District of Washington in Case No. 2:10-cv-1577.

The motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the pleadings and correspondence on file with the Court, and such arguments and authorities as may be presented at or before the hearing.

DATE: September 2, 2011        SIDLEY AUSTIN LLP


By: /s/ _____
     Richard A. Cederoth
     rcederoth@sidley.com
     David T. Pritikin
     dpritikin@sidley.com
     Samuel R. Miller (SBN 66871)
     srmiller@sidley.com
     Bryan K. Anderson (SBN 170666)
     bkanderson@sidley.com
     Attorneys for MICROSOFT CORPORATION

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................ 1

II. STATEMENT OF FACTS ........................................................................................ 1

    A. DISPUTES ALREADY PENDING IN THE WESTERN DISTRICT OF WASHINGTON ............................................................................................ 2

        1. Microsoft v. Motorola: Alleged Patent Infringement Related to Motorola's Android Devices (Filed in W.D. Wash.)................................................. 2

        2. Microsoft v. Motorola: Alleged Breach of Contract Related to Wi-Fi and H.264 Video Compression Standard (Filed in W.D. Wash.)...................... 3

        3. Motorola v. Microsoft: Alleged Patent Infringement Related to Wi-Fi and H.264 Compression Standard (Windows 7 and Internet Explorer 9) (Filed in W.D. Wis., Transferred to W.D. Wash.).................................... 3

        4. Motorola v. Microsoft: Alleged Patent Infringement Related to Xbox 360 Gaming System (Filed in W.D. Wis., Transferred to W.D. Wash.) ........... 4

        5. Motorola v. Microsoft: Alleged Patent Infringement Relating to Various Microsoft Products (Filed in S.D. Fla., Transferred to W.D. Wash.) ......... 5

    B. THE 744 INVESTIGATION ................................................................................ 5

    C. MOTOROLA'S COUNTERCLAIMS GIVING RISE TO THIS ACTION .......... 8

III. ARGUMENT .............................................................................................................. 9

    A. THE PRIVATE INTEREST/CONVENIENCE FACTORS WEIGH IN FAVOR OF TRANSFER TO WASHINGTON ................................................................. 10

        1. The Majority of Witnesses Reside in Redmond, Washington. ................. 10

        2. A Transfer Would Provide Easier Access to Sources of Proof. ............... 12

        3. Plaintiff's Choice of Forum is Entitled to Little Weight. ......................... 12

    B. THE PUBLIC INTEREST WEIGHS IN FAVOR OF TRANSFER.................... 17

    C. IF THE COURT DECLINES TO TRANSFER THIS ACTION, IT SHOULD BE STAYED ............................................................................................................ 19

IV. CONCLUSION ........................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arete Power, Inc. v. Beacon Power Corp.*,
No. C 07-5167, 2008 WL 508477 (N.D. Cal. Feb. 22, 2008) ...............................11, 12, 17, 18

*Broadcom Corp. v. Agere Sys. Inc.*,
No. 04-C-066-C, 2004 WL 1176168 (W.D. Wis. May 20, 1994).........................................19

*Cordis Corp. v. Siemens-Pacesetter, Inc.*,
682 F. Supp. 1200 (S.D. Fla. 1987) ....................................................................................18

*Cordura v. Navistar Int'l Transp. Corp.*,
Case No. C 10-04961 CW, 2011 WL 62493 (N.D. Cal. Jan. 7, 2011)....................................15

*Decker Coal Co. v. Commonwealth Edison Co.*,
805 F.2d 834 (9th Cir. 1986) ..............................................................................................9

*Doe 1 v. AOL LLC*,
719 F. Supp. 2d 1102 (N.D. Cal. 2010) ..............................................................................19

*EEOC v. United Airlines, Inc.*,
No. C 09-2469, 2009 WL 7323651 (N.D. Cal. Dec. 3, 2009)................................9, 11, 12, 17

*Gonzalez v. Palo Alto Labs, Inc.*,
No. C 10-2456, 2010 WL 3930440 (N.D. Cal. Oct. 6, 2010)..................................................13

*IBM Credit v. Definitive Computer Svcs., Inc.*,
No. C-95-3927, 1996 WL 101172 ...................................................................................10, 15

*Impra, Inc. v. Quinton Instruments Co.*,
1990 WL 284713 (D. Ariz. June 26, 1990) ..........................................................................15

*In the Matter of Certain Gaming and Entertainment Consoles, Related Software, and Components Thereof*,
Investigation No. 377-TA-752...........................................................................................4, 8

*In the Matter of Certain Mobile Devices, Associated Software, and Components Thereof*,
Investigation No. 337-TA-744..................................................................................... passim

*Jones v. GNC Franchising, Inc.*,
211 F.3d 495 (9th Cir. 2000) ..........................................................................................10, 14

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)..........................................................................................................19

*Prouty v. Gores Tech. Grp.*,
121 Cal. App. 4th 1225 (Cal. Ct. App. 2004) .......................................................................16

*Ruiz v. Affinity Logistics Corp.*,
    No. 05-02015, 2005 WL 5490240 (N.D. Cal. Nov. 7, 2005) ..............................10, 11, 12, 18

*San Francisco Tech., Inc. v. Glad Prods. Co.*,
    No. 10-CV-00966, 2010 WL 2943537 (Jul. 26, 2010) ...........................................................10

*Shalaby v. Newell Rubbermaid, Inc.*,
    No. 06-07026, 2007 WL 3144357 (N.D. Cal. Oct. 24, 2007) .................................................13

*Sorensen v. Daimler Chrysler AG*,
    No. C 02-4752, 2003 WL 1888866 (N.D. Cal. Apr. 11, 2003) .........................................10, 12

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988)...............................................................................................................1, 14

*Teknekron Software Syss., Inc. v. Cornell Univ.*,
    No. 93-20122, 1993 WL 215024 (N.D. Cal. June 14, 1993)..................................................12

*U-Haul Int'l, Inc. v. Hire A Helper, LLC*,
    Case No. CV-08-1271-PHX-DGC, 2008 WL 4368663 (D. Ariz. Sept. 23, 2008)..................15

*Williams v. Granite Constr. Co.*,
    No. C08-04202, 2009 WL 250104 (N.D. Cal. Feb. 3, 2009) .................................................13

**STATUTES**

19 U.S.C. § 1337(c) ....................................................................................................................2, 8

28 U.S.C. § 1404 ..........................................................................................................................1, 9

28 U.S.C. § 1404(a) .................................................................................................................. passim

28 U.S.C. § 1659 ........................................................................................................................2, 19

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.**     **INTRODUCTION**

The Court should transfer this action to the Western District of Washington pursuant to 28 U.S.C. § 1404(a).  There are already *five* cases between the parties in the Western District of Washington – including the one remaining action asserting infringement of the very same patents that are at the center of Motorola Mobility, Inc.'s ("Motorola's") claims here.  Transferring this case will allow the parties' myriad disputes to be resolved most efficiently in one forum.  Moreover, the Western District of Washington is a substantially more convenient forum and, particularly given that it has become the focal point of the wide-ranging litigation between the parties, has a greater relationship to the parties' dispute.  The Northern District of California, in contrast, has little tangible connection to the parties or the present dispute beyond Motorola's dubious claims to be a third-party beneficiary under an agreement between Microsoft and non-party SD Card Association (the "SDA"), and the SDA's Intellectual Property ("IP") Policy, which contain California forum selection clauses.  While it is at best questionable whether Motorola's claims at issue here truly implicate these forum selection clauses, the law is clear that the existence of a private forum selection clause – even one that, unlike those here, is unquestionably applicable to the claims at issue – is not dispositive on a motion to transfer under § 1404.  *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988).  Rather, the existence of a forum selection clause is but one factor to be weighed with the other private and public interest factors that must be considered on such a motion.  Where as here, those other convenience factors and the interests of justice strongly favor transfer, the existence of a forum selection clause is no impediment to transfer.[1]

**II.**     **STATEMENT OF FACTS**

Microsoft is a Washington State corporation headquartered in Redmond, Washington.  Declaration of David Bartley Eppenauer attached hereto as Exhibit A ("Eppenauer Decl.") at ¶ 3, Grp. Ex. 1.  Microsoft employs nearly 40,000 people in the Puget Sound (greater Seattle) region and

---

[1] If the Court declines to transfer this action, Microsoft requests in the alternative that it be stayed pending resolution of the underlying patent infringement action pending in the Western District of Washington.

MICROSOFT'S CORP.'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)
CASE NO. 11-03136-JF

occupies nearly 8 million square feet of facilities at its Redmond campus. *Id.* at ¶ 4, n.2, Grp. Ex. 1. Motorola is a Delaware corporation with its principal place of business in Libertyville, Illinois. Notice of Removal (D.E. 1), Exhibit A ("Complt.") at ¶1.

## A. DISPUTES ALREADY PENDING IN THE WESTERN DISTRICT OF WASHINGTON

Microsoft and Motorola are engaged in multiple patent and patent-related district court actions that, with the exception of this case and one other that was stayed with a motion to transfer pending, were either filed in, or transferred to, the Western District of Washington.

### 1. Microsoft v. Motorola: Alleged Patent Infringement Related to Motorola's Android Devices (Filed in W.D. Wash.)

Microsoft sued Motorola in the Western District of Washington on October 1, 2010, accusing Motorola of infringing nine of Microsoft's patents, including U.S. Patent Nos. 5,579,517 and 5,758,352 (the "FATLFN patents"), in conjunction with Motorola's Android devices. *See* D.E. 1 in 2:10-cv-1577 (W.D. Wash. Oct. 1, 2010) ("WDWA-1577") (Declaration of D. Giardina in Support of Microsoft's Motion to Transfer attached hereto as Exhibit B ("Attorney Decl.") at ¶ 2, Ex. 1). On the same day, Microsoft filed a Complaint with the United States International Trade Commission ("ITC") in connection with the same nine patents. *See In the Matter of Certain Mobile Devices, Associated Software, and Components Thereof*, Investigation No. 337-TA-744 (the "744 Investigation"). The parties agreed to stay the WDWA-1577 action until there is a final ruling by the ITC in the 744 Investigation. D.E. 34 in WDWA-1577. *Id.* at ¶ 3, Ex. 2.[2] The claims at issue in the case now before this Court were first plead as counterclaims in the 744 Investigation and removed by Motorola to this Court pursuant to 19 U.S.C. § 1337(c).

---

[2] The ITC was established to prevent the unlawful importation of products that violate U.S. patents. If a violation is found, the ITC automatically issues an injunction that precludes a defendant from importing infringing products into the United States. The ITC, however, cannot award money damages. Thus, as was the case here, parties often file an infringement action in the ITC for the purpose of obtaining injunctive relief as well as a separate parallel action in the U.S. District Court seeking the recovery of money damages. The U.S. District Court case is often stayed until the ITC action is adjudicated pursuant to 28 U.S.C. § 1659.

2. **Microsoft v. Motorola: Alleged Breach of Contract Related to Wi-Fi and H.264 Video Compression Standard (Filed in W.D. Wash.)**

On November 9, 2010, Microsoft again sued Motorola in the Western District of Washington alleging breach of contract, promissory estoppel, and waiver. This action relates to Motorola's promises through standard-setting organizations to offer licenses on reasonable and non-discriminatory ("RAND") terms for certain patents that Motorola claims are necessary to use the 802.11 wireless (Wi-Fi) standard promulgated by the Institute of Electrical and Electronics Engineers Standards Association and the H.264 video compression standard promulgated by the International Telecommunications Union. *See* D.E. 1 in No. 2:10-cv-01823 (W.D. Wash. Nov. 9, 2010) ("WDWA-1823") (Attorney Decl. at ¶ 4, Ex. 3). In WDWA-1823, Microsoft seeks, *inter alia,* relief declaring Motorola in breach of its binding promises and limiting damages for Microsoft's use, if any, of Motorola's patents resulting from Microsoft's compliance with the Wi-Fi and H.264 standards. *Id.*

3. **Motorola v. Microsoft: Alleged Patent Infringement Related to Wi-Fi and H.264 Compression Standard (Windows 7 and Internet Explorer 9) (Filed in W.D. Wis., Transferred to W.D. Wash.)**

Subsequently, four additional lawsuits were filed between the parties, including three in the Western District of Wisconsin (Case Nos. 10-cv-699 ("WDWI-699"), 10-cv-700 ("WDWI-700"), and 10-cv-00826 ("WDWI-826")). Attorney Decl. at ¶¶ 5-7; Exs. 4-6. In the WDWI-699 case, filed November 10, 2010, Motorola claims that Windows 7 and Internet Explorer 9 infringe certain patents because of their support for the H.264 video compression standard. On January 25, 2011, Microsoft answered Motorola's complaint and counterclaimed, accusing Motorola of breaching its obligation to license the asserted Motorola patents under reasonable and non-discriminatory terms. Microsoft is also accusing Motorola of violating two Microsoft graphical user interface patents.

On December 21, 2010, Microsoft moved to transfer the WDWI-699 case to the Western District of Washington because Motorola's infringement accusations involved Microsoft's use of the same Wi-Fi and H.264 standards at issue in WDWA-1823. Microsoft also argued that the relevant documents and witnesses would be in Washington. The Wisconsin court agreed that the Western

3

District of Washington was the more appropriate forum. D.E. 44 in 10-cv-00699-bbc (W.D. Wis.) (the "WDWA-343 Transfer Order") (Attorney Decl. at ¶ 8, Ex. 7). In transferring the WDWI-699 case to the W.D. Washington, the court noted that "defendant's principal place of business is in the W.D. Washington and at least one of the accused products (Windows 7) was designed there. Defendant's employees responsible for the development and sale of Windows 7 work in that district." *Id.* at Ex. 7, p. 3. The WDWI-699 case is now pending in the Western District of Washington as Case No. 2:11-cv-00343 ("WDWA-343").

In the WDWI-700 case, Motorola accused Microsoft's Xbox 360 Gaming System of infringing patents relating to the H.264 video compression and 802.11 WiFi standards. Microsoft moved to transfer the WDWI-700 action to the Western District of Washington, but the court has not yet ruled on the motion because the case is stayed pending final resolution of parallel infringement claims simultaneously brought by Motorola before the ITC in *In the Matter of Certain Gaming and Entertainment Consoles, Related Software, and Components Thereof*, Investigation No. 377-TA-752 (the "752 Investigation"). *See* D.E. 41 in 10-cv-826 (W.D.Wisc.)("WDWA-595 Transfer Order") at p. 2 (Attorney Decl. at ¶ 9, Ex. 8).

### 4. Motorola v. Microsoft: Alleged Patent Infringement Related to Xbox 360 Gaming System (Filed in W.D. Wis., Transferred to W.D. Wash.)

In the WDWI-826 case – another patent infringement case filed by Motorola in Wisconsin – Motorola again attacked the Xbox 360 gaming system. On January 25, 2011, Microsoft answered Motorola's complaint and asserted three of its graphical user interface patents against various Motorola Android devices. Microsoft also asserted a fourth patent relating to a notification system such as an alarm against various Motorola Android devices, and a fifth patent relating to flash memory file system against various Motorola Android devices and network router products. Although the WDWI-826 case does not involve the Wi-Fi or H.264 standards, Microsoft moved to transfer the case to the Western District of Washington based on the fact that the research and development of the Xbox 360 and Kinect took place in the Western District of Washington, and the bulk of the relevant documents and source code resided there. The court agreed, transferring the case on the basis that many of the witnesses with knowledge of the relevant facts, as well as the

4

relevant documents, emails, files, source code, and other technical documentation, are in Washington. *See* WDWA-595 Transfer Order at pp. 3, 5 (Attorney Decl. at ¶ 9, Ex. 8) ("Defendant's principal place of business is in the Western District of Washington and all witnesses and documents relevant to this claim are located there."). Although the court found no overlap between the cases then pending in Washington and the case before it in Wisconsin, the court found that the convenience factors alone favored transfer. *Id.* at pp. 9-10; *see also* p. 6 ("a fair amount of weight should be given to the fact that defendant's headquarters, witnesses and documentation are in Washington"). The WDWI-826 case is now pending in the Western District of Washington as Case No. 2:11-cv-00595 ("WDWA-595").

> **5.** **Motorola v. Microsoft: Alleged Patent Infringement Relating to Various Microsoft Products (Filed in S.D. Fla., Transferred to W.D. Wash.)**

On November 10, 2010, Motorola filed a complaint in the Southern District of Florida (Case No. 1:10-CIV-24063-MORENO ("SDFL-24063")) alleging that almost a dozen Microsoft products, including Windows 7, Windows Vista, Windows Phone 7, Windows Mobile 6.5, Microsoft Exchange Server, Live Messenger, Live Hotmail, and Bing Maps – all developed in Washington – infringe seven different Motorola patents. *See* D.E. 1 at ¶¶ 7-62 in SDFL-24063 (Nov. 10, 2010) (Attorney Decl. at ¶ 10, Ex. 9).

On May 19, 2011, Microsoft moved to transfer the SDFL-24063 action to the Western District of Washington. On August 17, 2011, the court granted Microsoft's motion to transfer finding, *inter alia*, that in light of the fact that Microsoft is headquartered in the Western District of Washington and several other related actions are pending there, it would be a more convenient forum for both witnesses and the parties. *See* D.E. 211 1:10-CIV-24063-Moreno (S.D.Fla.) ("WDWA-1408 Transfer Order") at 5-6 and n.6 in SDFL-24063 (Aug. 17, 2011) (Attorney Decl. at ¶ 11, Ex. 10). The SDFL-24063 case is now pending in the Western District of Washington as Case No. 2:11-cv-01408 ("WDWA-1408").

## B. THE 744 INVESTIGATION

As noted, Microsoft's patent infringement claims directed at Motorola's Android devices in

1   the WDWA-1577 action, including those under the FATLFN patents, were stayed in November

2   2010 pending final resolution of the ITC's 744 Investigation.  Trial in the 744 Investigation was

3   completed on August 30, 2011, and the target date for completion of the ITC's consideration of the

4   matter is March 5, 2012.  *See* Attorney Declaration, ¶ 12.

5       In late May 2011 – six months into the 744 Investigation – Motorola first formally asserted

6   that it had a right to a RAND license under the FATLFN patents pursuant to commitments that

7   Microsoft had made to the SDA.  In supplemental interrogatory responses served on May 27, 2011,

8   Motorola quoted a August 2005 patent disclosure letter that Microsoft submitted the SDA in which

9   Microsoft stated:

> Pursuant to the Section 5(ii) of the SDA Intellectual Property Policy,
> Microsoft commits to the SDA that Microsoft will license its Essential
> Patent Claims [which were defined to include the FATLFN patents] in
> a non-discriminatory fashion under reasonable terms and conditions to
> all ***SDA Member and non-SDA-Member licensees***, solely to the
> extent required for such entities to implement finally-adopted SDA
> Specifications.  Microsoft will grant such licenses to SDA Members
> and non-SDA Members pursuant to separate agreements.

15   *See* Motorola's Amended and Supplemental Response to Interrogatory No. 32 in the 744

16   Investigation at p. 719 (ITC Inv. No. 337-TA-744 May 27, 2011) (emphasis added).[3]   Motorola

17   claimed that it was entitled to RAND license under this commitment, and that its "right to a RAND

18   license is a complete defense to Microsoft's demand for an exclusion order at the ITC."  *Id.* at p.

19   720.

20       Motorola served its supplemental interrogatory responses asserting its right to a RAND

21   license three days after it had obtained a license from the SDA authorizing Motorola to implement

22   those specifications.  *See* Microsoft Opp. to Motorola's ITC Mot. to Term., Ex. B. (Perlson Decl. In

23   Supp. of Motorola's TRO Motion, Ex. 20).  Prior to May 24, 2011, when Motorola's own license

---

[3] A copy of Motorola's Amended and Supplemental Response to Interrogatory No. 32 in the 744
Investigation was included as Exhibit C to Microsoft's Opposition to Motorola's Motion To
Terminate With Respect To U.S. Patent Nos. 5,579,517 and 5,758,352 Based on Improper Forum
(ITC Investigation No. 337-TA-744 July 5, 2011) ("Microsoft's Opp. to Motorola's ITC Mot. to
Term."), which in turn was previously filed with this Court by Motorola under seal as Ex. 20 to the
Declaration of David A. Perlson in Support of Counterclaimant Motorola Mobility's Motion for
Temporary Restraining Order ("Perlson Decl. In Supp. of Motorola's TRO Motion") (D.E. 26).

agreement with the SDA became effective, it was not an SDA licensee to whom Microsoft's RAND commitment – whatever its scope – even arguably extended. Motorola had allowed its earlier license agreement with the SDA to lapse for non-payment of fees in November 2008. *Id.,* Ex. A.

On June 22, 2011, Motorola filed a motion with the ITC to terminate the 744 Investigation with respect to the FATLFN patents based on forum selection clauses in the SDA's IP Policy and Microsoft's license agreement with the SDA that it contended required Microsoft's claims under those two patents to be litigated in California. Microsoft opposed Motorola's motion because: (1) Motorola had had no even arguable right to a RAND license under the FATLFN patents pursuant to Microsoft's SDA commitments at the outset of the ITC proceeding insofar as Motorola was not then licensed by the SDA to implement the SDA specifications; (2) neither of the SDA forum selection clauses could have any possible application to claims against Motorola products accused of implementing the FATLFN patents in connection with *non*-SD Card technology; (3) as to Microsoft's other claims, the SDA forum selection clauses did not apply by their own terms;[4] and (4) Motorola had waived any rights it might have had under the SDA forum selection clauses by waiting too long to invoke them. *See* Microsoft Opp. to Motorola's ITC Mot. to Term. at pp. 7-12 (Perlson Decl. In Supp. of Motorola's TRO Motion, Ex. 20).

Nevertheless, upon consideration of Motorola's position that its alleged right to a RAND license constitutes a complete defense to Microsoft's claim to an ITC exclusion order under the FATLFN patents, and Motorola's representation that it had perfected its status as an SDA licensee as of May 24, 2011, Microsoft subsequently elected to withdraw its claims in the 744 Investigation for infringement of the FATLFN patents as to those Motorola products accused solely on the basis of

---

[4] Microsoft explained that the forum selection clause in Microsoft's license agreement with the SDA applied by its terms only to "disputes between the parties" to that agreement, which did not include Motorola. *See* Microsoft Opp. to Moto. Mot. To Term. at pp. 8-9 (Perlson Decl. In Supp. Of Motorola's TRO Motion, Ex. 20). Likewise, Microsoft noted that the forum selection clause in the SDA IP Policy applied only to "matters under [the] IP Policy." Because the Policy further explicitly stated that bilateral negotiations of a RAND license between private parties like Microsoft and Motorola were to occur exclusively outside of the context of the SDA, Motorola's claims concerning the alleged failure of those negotiations did not raise matters under the SDA IP Policy. *Id.* at pp. 9-10. *See also* Microsoft Corporation's Opposition to Motorola's Motion For A Temporary Restraining Order (D.E. 33) at pp. 15-19.

their implementation of SD card memory in compliance with SDA specifications. [5]  *See* Microsoft Corporation's Notice Mooting Motorola's Motion To Terminate With Respect to U.S. Patent Nos. 5,579,517 and 5,578,352 ("Microsoft's Notice") (Attorney Decl. at ¶ 13, Ex. 11).  This action mooted Motorola's motion to terminate the 744 Investigation with respect to the FATLFN patents. Microsoft did not (and has not) withdrawn its FATLFN patent infringement claims in the WDWA-1577 action in which Microsoft seeks, *inter alia*, monetary damages for past infringement, which claims are appropriate given that Motorola was not an SDA licensee to whom Microsoft's RAND commitment even arguably applied until late May 2011.  Microsoft also left intact its claims under the  seven other patents asserted in the 744 Investigation, which proceeded to trial.

## C.  MOTOROLA'S COUNTERCLAIMS GIVING RISE TO THIS ACTION

On the same day that Motorola filed its motion to terminate, it filed counterclaims to Microsoft's infringement claims in the 744 Investigation in alleging, *inter alia*, that Microsoft had breached its commitments to the SDA by allegedly refusing to grant Motorola a license under the FATLFN patents on RAND terms and by pursuing infringement actions under those patents before the ITC and in the Western District of Washington.  On the basis of these core allegations, Motorola asserts claims for breach of contract, promissory estoppel, and violations of California state unfair competition and federal antitrust laws.  Complt., ¶¶ 90-134.  It seeks monetary damages and injunctive relief, including a judgment declaring that (1) Microsoft is not entitled to seek injunctive relief preventing Motorola from practicing the SDA standards and (2) the FATLFN patents  are unenforceable. *Id.*, ¶ 136.  Pursuant to 19 U.S.C. § 1337(c), Motorola immediately removed these counterclaims to this Court.  Microsoft has answered Motorola's counterclaims, denying Motorola's allegations in all relevant respects.  *See* D.E. 23.  On August 1, 2011, Motorola filed a motion in this Court for a temporary restraining order requiring Microsoft to dismiss its claims under the FATLFN

---

[5] In withdrawing its claims before the ITC under the FATLFN patents, Microsoft pointed out that Motorola's position that its right to a RAND license is a complete bar to an ITC exclusion order should apply with equal force to Motorola's claims against Microsoft in the ITC in the 752 Investigation under Motorola patents that are likewise subject to RAND obligations.  *See* Microsoft Notice at p. 1 n.2

patents on the same grounds asserted in its prior motion to terminate before the ITC.  *See* D.E. 27  Motorola withdrew its motion for a TRO after Microsoft withdrew its claims under the FATLFN  patents in the 744 Investigation.  *See* D.E. 35.

## III.   **ARGUMENT**

The Court should transfer this action to the Western District of Washington pursuant to 28  U.S.C. § 1404.  Section 1404(a) allows a district court to transfer an action if (1) the transferee  district court is one where the action might originally have been brought, (2) the transfer serves the  convenience of the parties, and (3) the transfer will promote the interests of justice.  28 U.S.C.  § 1404(a); *EEOC v. United Airlines, Inc.*, No. C 09-2469, 2009 WL 7323651, at *1 (N.D. Cal. Dec.  3, 2009).  This action clearly satisfies these factors:  Given Microsoft's headquarters in Redmond,  Washington (Eppenhauer Decl. at ¶ 3, Grp. Ex. 1), there can be no dispute that venue is proper in the  Western District of Washington.  Further, the interests of justice support transfer so that one court –  which is also the more convenient court for the parties and witnesses – can resolve the intertwined  patent issues in the seven related cases, five of which are already pending in the Western District of  Washington.[6]

In analyzing a motion to transfer under Section 1404(a), courts in this circuit may consider  various factors such as: (1) the plaintiff's choice of forum, (2) the convenience of the parties, (3) the  convenience of the witnesses, (4) the relative ease of access to the evidence, (5) the familiarity of  each forum with the applicable law, (6) the feasibility of consolidation with other claims, (7) local  interest in the controversy, and (8) the relative court congestion and time to trial in each forum.  *See,  e.g., United Airlines*, 2009 WL 7323651 at *1, citing to *Decker Coal Co. v. Commonwealth Edison  Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  Other courts have also considered: (8) the location where  relative agreements were negotiated and executed, (9) the respective parties' contacts with the  forum, (10) the contacts relating to the plaintiff's cause of action in the chosen forum, (11) the

---

[6] As noted at p. 4, *supra*, the only other case not currently pending in the Western District of  Washington is Case No. 10-cv-700, which is currently subject to a stay in the Western District of  Wisconsin pending the conclusion of related ITC proceedings.  Microsoft filed a motion to transfer  that case to the Western District of Washington, which motion remains pending due to the stay.

differences in the costs of litigating in the two forums, and (12) the availability of compulsory process to compel attendance of unwilling non-party witnesses. *See, e.g., Sorensen v. Daimler Chrysler AG*, No. C 02-4752, 2003 WL 1888866, *3 (N.D. Cal. Apr. 11, 2003), citing to *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). *See also Ruiz v. Affinity Logistics Corp.*, No. 05-02015, 2005 WL 5490240 (N.D. Cal. Nov. 7, 2005) (applying several of these factors and granting motion to transfer). Put another way, "[t]he Court must consider both public factors, which go to the interests of justice, and private factors, which go to the convenience of the parties and witnesses." *San Francisco Tech., Inc. v. Glad Prods. Co.*, No. 10-CV-00966, 2010 WL 2943537, *5 (Jul. 26, 2010); *see also IBM Credit v. Definitive Computer Svcs., Inc.*, No. C-95-3927, 1996 WL 101172, *1 (granting motion to transfer based on "(1) avoidance of multiple actions, (2) sending the action to the state most familiar with governing law, and (3) feasibility of consolidation with other actions.").

The private interest factors – such as the convenience and location of relevant witnesses and other sources of proof – unequivocally favor transferring this case to the Western District of Washington. Washington provides easier access to evidence, is more convenient, and has a much closer connection to the parties' dispute than California. The vast majority of witnesses and other evidence are located in Washington; in contrast, there is no evidence that any sources of proof are located in this District. The public interest factors also point toward transfer. There is no particular local interest in the subject matter of this dispute between Motorola, headquartered in Illinois, and Microsoft, headquartered in Washington, whereas the Western District of Washington clearly has greater interest in the resolution of the dispute. Moreover, factors of judicial economy and consistency of rulings, particularly in connection with overlapping discovery, strongly favor transferring this case to Washington where five other District Court actions between the parties are pending, including an action involving the same technology.

### A. THE PRIVATE INTEREST/CONVENIENCE FACTORS WEIGH IN FAVOR OF TRANSFER TO WASHINGTON.

#### 1. The Majority of Witnesses Reside in Redmond, Washington.

This court has consistently recognized that "[t]he convenience of the witnesses is often the

10

most important factor considered by the Court in ruling on a motion to transfer." *Ruiz*, 2005 WL 5490240 at *3 (going on to note that the "[t]rial court looks at who the witnesses are, where they are located, and the relevance of their testimony"); *see also United Airlines,* 2009 WL 73323651 at *4 ("The relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under section 1404(a)."); *Arete Power, Inc. v. Beacon Power Corp.,* No. C 07-5167, 2008 WL 508477, *7 (N.D. Cal. Feb. 22, 2008) ("The convenience of the witnesses is often the most important factor considered by the Court in ruling on a motion to transfer.").

Microsoft is headquartered in Redmond, Washington. Eppenhauer Decl. at ¶ 3, Grp. Ex. 1. The development work on the underlying FATLFN technology was conducted at Microsoft's facilities in the Western District of Washington. *Id.* at ¶ 8. The Microsoft employees that interfaced with the SDA with respect to incorporation of the FATLFN technology in SDA specifications work at Microsoft's Redmond, Washington headquarters, as do the licensing professionals responsible for licensing those patents (including those that corresponded previously with Motorola with respect to the FATLFN patents). *Id.* at ¶¶ 9-12, 14.[7] For this reason alone, the Court should transfer this action. *See, e.g., United Airlines*, 2009 WL 7323651 at *4 (defendant had met its burden of showing that the convenience of witnesses factor weighed in favor of transfer to Illinois where "the majority of the witnesses United has identified as necessary to this action are located in Illinois, the location of United's headquarters"); WDWA-1408 Transfer Order at pp. 5-7 (Attorney Decl. at ¶11, Ex. 10) ("Microsoft [ ] is headquartered in the Western District of Washington. The Court finds that the 'convenience of the parties' factor weighs in favor of transfer to the Western District of Washington. . . . Because Microsoft is located in Washington . . . the majority of the witnesses who were involved with the products and patents at issue in the complaint are located in Washington.").

---

[7] In connection with its subsequently withdrawn motion for a TRO, Motorola submitted email correspondence from late 2006 and early 2007 between Microsoft and Motorola personnel concerning Motorola's then "hypothetical" interest in a license to the FATLFN patents. *See* Perlson Decl. in Supp. Of Motorola's TRO Motion, Exs. 8-10. (Copies of these documents are included as Group Exhibit 2 of the Eppenhauer Declaration.) All of the current Microsoft employees involved in that correspondence work in the Western District of Washington. [Eppenhauer Decl. at ¶11] The two Motorola employees involved in the correspondence, Timothy Weurger and Keith Peterson, both appear to have worked at the time in Libertyville, Illinois.

**2.      A Transfer Would Provide Easier Access to Sources of Proof.**

The bulk of the evidence regarding Motorola's claims will be located in Washington, where Microsoft employees handle the company's licensing operations, including licensing related to the FATLFN patents and the SDA. Eppenhauer Decl. at ¶¶ 13. Accordingly, this factor also weighs in favor of transfer. *See, e.g., United Airlines*, 2009 WL 7323651 at *5 (finding that ease of access to evidence factor weighed in favor of transfer to Illinois where electronic and hard copy files related to litigation were located in Illinois).

**3.      Plaintiff's Choice of Forum is Entitled to Little Weight.**

As this Court has recognized, "[a] fundamental principle guiding section 1404(a) analysis is that litigation should proceed in that place where the case finds its center of gravity." *Teknekron Software Syss., Inc. v. Cornell Univ.*, No. 93-20122, 1993 WL 215024, *7 (N.D. Cal. June 14, 1993). "The center of the accused activity is the forum where the defendant is alleged to have developed, tested, researched, produced, marketed, and made sales decisions concerning the accused product" – here, where Microsoft developed the FATLFN patents and made the relevant licensing decisions. *Sorenson v. Daimler Chrysler AG*, No. C 02-4752, 2003 WL 1888866, *3 (N.D. Cal. Apr. 11, 2003); *Arete Power*, 2008 WL 508477 at *13 (granting defendant's motion to transfer because the "center of evidentiary gravity in this matter clearly is in the [transferee] area- where there are more witnesses, more documents, more relevant products and the only relevant premises.").

Courts consistently find that the "place where the case finds it center of gravity" trumps a plaintiff's choice of venue: "If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, [a] plaintiff's choice is only entitled to minimal consideration." *Ruiz*, 2005 WL 5490240 at *2. *See also Arete Power*, 2008 WL 508477 at *4 ("Plaintiff's choice of forum is entitled to appreciably less weight… when plaintiff does not reside there, or where the forum chosen lacks a significant connection to the activities alleged in the complaint."); *Shalaby v. Newell Rubbermaid, Inc.*, No. 06-07026, 2007 WL 3144357, *6 (N.D. Cal. Oct. 24, 2007) ("a plaintiff's choice of forum should be given less weight when it is not the place where the operative facts of the action occurred"), internal quotation omitted;

12

*Williams v. Granite Constr. Co.*, No. C08-04202, 2009 WL 250104, *2 (N.D. Cal. Feb. 3, 2009) ("If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration."), internal quotation omitted.[8]

### a. There is No Meaningful Connection Between the Facts of this Case and the Northern District of California.

The facts of this dispute between Microsoft and Motorola have little or no connection to the Northern District of California. Motorola alleges venue based on (i) general propositions about Microsoft doing business in this District and (ii) forum selection clauses in agreements between Microsoft and the SDA – agreements to which Motorola is not a party. Complt., ¶ 4.

First, the fact that Microsoft "does business" in this District makes it no different than any other federal judicial district, as Microsoft's products are sold nationwide. *See* WDWA-343 Transfer Order at p. 5 (Attorney Decl. at ¶ 8, Ex. 7) ("[P]laintiffs do not identify any relationship this district has with the case, other than the potential sale of accused products, a relationship that every state in the country shares."). *See also Gonzalez v. Palo Alto Labs, Inc.*, No. C 10-2456, 2010 WL 3930440, *8 (N.D. Cal. Oct. 6, 2010) (the fact that defendant sold products in the state and advertised nationally did not create any "specific connection" to the forum).

Motorola is a Delaware corporation with its principal places of business in Illinois – California is not its home forum. Complt., ¶ 1. Motorola has not identified any Microsoft-related activity that is particular to the Northern District of California, nor is Microsoft aware of any such activity. *Cf.* WDWA-343 Transfer Order at pp. 3-5 (Attorney Decl. at ¶ 8, Ex. 7) (where Motorola did "not point…to a single factor related to convenience that favors Wisconsin as a forum" and did "not identify any relationship [Wisconsin] has with this case," transfer from Wisconsin to Washington was appropriate because, *inter alia*, Microsoft's principal place of business is in

---

[8] Indeed, previous federal courts granting motions to transfer in the litigation between Microsoft and Motorola have found plaintiffs' choice of forum to be entitled to little weight. *See, e.g.,* WDWA-1408 Transfer Order, at 4-5 (Attorney Decl. at ¶11, Ex. 10) ("Because the claims raised in Motorola's complaint only appear to have a limited connection with this District, only minimal deference will be given to Plaintiff's choice of forum.").

1   Washington); WDWA-595 Transfer Order at pp. 5-6 (Attorney Decl. at ¶9, Ex. 8) (granting

2   Microsoft's motion to transfer venue to Washington after reasoning that where neither party

3   identified party witnesses, relevant events, or sources of proof in Wisconsin, "a fair amount of

4   weight should be given to the fact that defendant's headquarters, witnesses and documentation are in

5   Washington").   Indeed, while the SDA is headquartered in San Ramon, California, there is no

6   indication that the parties interacted with each other, or even with the SDA, in this District.[9]

7                 **b.    The Forum Selection Clauses in Microsoft's SDA Agreement and
                          the SDA IP Policy Do Not Provide a Basis for Keeping this Case in
8                         California.**

9          Motorola will no doubt claim that the forum selection clauses in Microsoft's license

10  agreement with the SDA and the SDA's IP Policy require its counterclaims to be litigated here.  The

11  law is clear, however, that the existence of a forum selection clause, while potentially significant, is

12  not dispositive on a motion to transfer pursuant to Section 1404(a).  *See Stewart Org., Inc. v. Ricoh*

13  *Corp.*, 487 U.S. 22, 31 (1988) ("The forum-selection clause, which represents the parties' agreement

14  as to the most proper forum, should receive neither dispositive consideration … nor no consideration

15  …, but rather the consider for which Congress provided in § 1404(a)"); *Jones v. GNC Franchising,*

16  *Inc.*, 211 F.3d 495, 499 n.20 (noting that while the existence of a forum selection clause can be a

17  "significant factor," it is not "dispositive";  affirming denial of motion to transfer to contractually-

18  specified forum where other 1404 factors "clearly" demonstrated that original venue was "more

19  appropriate").   As this Court recently stated:

20          Although a district court considers the presence of a forum selection
            clause, it 'also must weigh in the balance the convenience of the
21          witnesses and those public-interest factors of systemic integrity and
            fairness that, in addition to private concerns, come under the heading
22          of the 'the interest of justice.

23  *Cordura v. Navistar Int'l Transp. Corp.*, Case No. C 10-04961 CW, 2011 WL 62493, at *2 (N.D.

24

25  ──────────────
[9] For example, in connection with Motorola's earlier motion for a TRO, it submitted the minutes of a
26  meeting of an SDA technical committee – the "SD File System Task Group" – at which the potential
    incorporation of Microsoft's FATLFN technology in a proposed SDA specification was discussed.
27  *See* Perlson Decl. In Supp. Of Motorola's TRO Motion, Ex. 5.  Those minutes indicate that the
    meeting took place in Kauai, Hawaii.  *Id.*

28
                                                  14

Cal. Jan. 7, 2011) (declining to transfer action to venue specified in contractual forum selection clause) (quoting *Stewart*, 487 U.S. at 30); *see also U-Haul Int'l, Inc. v. Hire A Helper, LLC*, Case No. CV-08-1271-PHX-DGC, 2008 WL 4368663, at *3 (D. Ariz. Sept. 23, 2008) ("Even though the parties may have agreed to a forum selection clause, this agreement is not determinative, but merely one factor to be thrown in the balance with the other § 1404(a) factors") (quoting *Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 406 F. Supp. 2d 751, 754 (E.D. Ky. 2005)). In this case, these other 1404 factors are decisively in favor transfer to the Western District of Washington.

First, as set forth above, the Western District of Washington is clearly a more convenient forum for the Microsoft witnesses most likely to have information relevant to Motorola's counterclaims. *See IBM Credit Corp. v. Definitive Computer Svcs., Inc.*, Case No. C-95-3927 SI, 1996 WL 101172, at *2 (N.D. Cal. 1996) (ordering transfer to Texas forum where witnesses were present despite forum selection clause supporting venue in California). By the same token, it is likely that the Western District of Washington would be at least as convenient as the Northern District of California for Motorola's witnesses, most of whom presumably reside in Illinois.

Second, as explained further below, the interest of judicial economy will be best served by having this case heard in the same forum as the myriad other related cases between the parties that are pending in the Western District of Washington, including the WDWA-1577 action in which Microsoft has asserted the infringement claims under the same FATLFN patents giving rise to Motorola's putative counterclaims here, and the WDWA-1823 action where Microsoft has asserted similar breach of contract and promissory estoppel claims against Motorola.[10] *See Impra, Inc. v. Quinton Instruments Co.*, 1990 WL 284713, *2 (D. Ariz. June 26, 1990) ("As a general rule, cases should be transferred to districts where related actions are pending"). This is particularly true given

---

[10] In its motion to terminate before the ITC, Motorola recognized that it would be wasteful of the parties' and public's resources to have its counterclaims and Microsoft's related infringement claims litigated in two different forums. *See* Motorola's Memorandum In Support of Its Motion To Terminate With Respect to U.S. Patent Nos. 5,579,517 AND 5,758,352 Based on Improper Forum (ITC 744 Investigation June 22, 2011) at p. 2 (Perlson Decl. In Supp. of Motorola's TRO Motion, Ex. 19).

that Motorola seeks in this action to limit the relief that Microsoft can obtain in the WDWA-1577 action.

Finally, although the Court need not reach these issues in order to transfer this action, it is far less than clear that the forum selection clauses in Microsoft's SDA license agreement and the SDA IP Policy even apply to Motorola's claims. The language of the forum selection clause in the Microsoft license agreement with the SDA states unambiguously that it applies to "disputes between the parties" to that agreement. *See* Microsoft SD Host/Ancillary Product License Agreement, § 15.6.[11] Because Motorola is not a party to that agreement, the provision does not, by its terms, apply to disputes that are exclusively between Motorola and Microsoft. And while Motorola claims to be third party beneficiary under the agreement (Complt., ¶ 92), it must appear upon "reading the contract as a whole in light of the circumstances under which it was entered," that it was "the intention of *the parties* to secure [for the alleged third party beneficiary] personally the benefit of its provisions." *Prouty v. Gores Tech. Grp.*, 121 Cal. App. 4th 1225, 1232-33 (Cal. Ct. App. 2004) (emphasis in original). Nothing in the language of the forum selection clause in Microsoft's SDA agreement indicates that the parties to that agreement intended that clause to inure to the benefit of Motorola in any way.

Likewise, the forum selection clause in the SDA's IP Policy applies, by its terms, only to "matters under [the] IP Policy." *See* SDA IP Policy, § 11 (Attorney Decl., ¶ 14, Ex. 12). But once Microsoft made its August 2005 patent disclosure with respect to the FATLFN patents to the SDA, the negotiation of individual license agreements between Microsoft and other SDA licensees became strictly private matters that, according to the IP Policy itself, "must take place between the individual parties outside the context of the SDA." *Id.*, § 5. Thus, to the extent that Motorola counterclaims allege that Microsoft breached some obligation in connection with those negotiations, Motorola's claims do not raise matters under the IP Policy to which its forum selection clause applies.[12]

---

[11] A copy of Microsoft's SD Host/Ancillary Product License Agreement was previously submitted by Motorola under seal. *See* Perlson Decl. In Supp. of Motorola's TRO Motion, Ex. 2.

[12] For a more complete discussion of the forum selection clauses in Microsoft's SDA license

## B. THE PUBLIC INTEREST WEIGHS IN FAVOR OF TRANSFER.

In considering the "interests of justice," courts consider various factors, including relative court congestion, the local interest in having localized controversies decided at home, judicial economy and consistency among court rulings, and the unfairness in burdening citizens in an unrelated forum with jury duty. *See United Airlines*, 2009 WL 7323651, at *5 ("A section 1404(a) transfer serves to 'prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"), quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). *See also Arete Power,* 2008 WL 508477 at **3, 9-10 (identifying various "public interest factors of systemic integrity and fairness"), internal citation omitted.

First and foremost, the Northern District of California has no particular local interest in resolving this dispute between two non-residents. In contrast, the residents of the Western District of Washington have a substantial interest in resolving Motorola's claims against Microsoft. Microsoft is one of the largest employers in the Puget Sound region. Residents of Washington have an interest in resolving disputes over the validity and licensing of Microsoft's patents, as such claims have an impact on the viability and strength of such a large local source of employment. *See Hoffman-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (district had a strong local interest in the case because the action called into question the work and reputation of several individuals residing in or near the district); WDWA-1408 Transfer Order at 8 ("The Court finds that due to the extent of Microsoft's presence in the Western District of Washington, the local interest in this case would be higher there than in this District [S.D. Fla.].").

Second, public interest favors consolidated litigation, particularly in patent-related cases. *See* WDWA-343 Transfer Order at p. 4 (Attorney Decl. at ¶ 8, Ex. 7) ("factual overlap" between WDWA-343 and WDWA-1823 "is another reason the balance favors Washington"). Transferring this case will allow better coordination with the multiple cases in the Western District of Washington, particularly given the number of overlapping factual issues between this case and those

---

agreement and the SDA IP Policy see Microsoft Corporation's Opposition to Motorola's Motion For A Temporary Restraining Order (D.E. 33) at pp. 14-18.

17

in the Western District of Washington.  *See Arete*, 2008 WL 508477, *11 ("As a general proposition, the interest of justice is advanced to the extent that one court (rather than two or more) is the source of the rulings and judicial guidance that are provided in any one case.  Concentrating responsibility for rulings and guidance in one court reduces both inefficiencies (eliminating the need for judges in other courts to be come familiar with the case and the pertinent law) and the risk that the parties or witnesses will be subject to inconsistent directives.").

As even Motorola has recognized in transfer briefing in other cases, "the interests of justice analysis involves the consideration of factors relating to the efficient administration of the court system."  *See* Opening Brief of Defendant Motion to Dismiss or to Sever and Transfer Claims in Apple v. Motoorola, Inc., Case No. 3:10-cv-662 (W.D. Wis.) (Dec. 23, 2010), at 16 (Attorney Decl. at ¶ 15, Ex. 13) (quoting *Kraft Foods Holdings, Inc. v Proctor & Gamble Co.,* No. 07-cv-613-jcs, 2008 WL 4559703 at *3-4 (W.D. Wis. Jan. 24, 2008)).  Given this overlap in issues, products, and technologies that pertain to the disputed FATLFN patents and Motorola's counterclaims, as well as the lack of interest that California residents have related to this dispute between non-residents, an analysis of the various public interest factors at issue in this case weigh heavily in favor of transfer.[13] *Cordis Corp. v. Siemens-Pacesetter, Inc.*, 682 F. Supp. 1200, 1202 (S.D. Fla. 1987) ("Because four related litigations involving these defendants and others are pending in the Central District of California, transfer of this case to California will result in more efficient pre-trial discovery, savings of time and money with respect to pre-trial and trial proceedings involving witnesses, avoidance of duplicative litigation, and avoidance of inconsistent results."); *Broadcom Corp. v. Agere Sys. Inc.*, No. 04-C-066-C, 2004 WL 1176168 at *3 (W.D. Wis. May 20, 1994) (noting the transferee forum's "familiarity with the general technology behind the patents at issue").  *See also* WDWA-1408 Transfer Order at 8 ("Furthermore, although there is no direct overlap between the claims in this

---

[13]  Another relevant factor is the relative congestion of each court's docket.  The median time from filing to disposition in civil cases in this District in 2009 was 9.4 months, and the median time from filing to trial was 24.5 months.  In the Western District of Washington, the median time from filing to disposition was 6.7 months and the median time from filing to trial was 19 months.  (N.D. California and W.D. Washington judicial caseload profiles, available at: www.uscourts.gov/cgi-bin/cmsd2009.pl).  Accordingly, the heavier case load in this District also weighs in favor of transfer.  *See, e.g., Ruiz*, 2005 WL 5490240 at *4.

case and those pending in Washington, Microsoft has pointed to some technological issues which may be common to both cases, and to that extent, the knowledge of that District Court [W.D. Wash.] may be superior to that of this Court.").

As noted by the Southern District of Florida in transferring that case to the Western District of Washington, "[t]here is no overriding public interest that should require this Court to adjudicate this action here, especially when the administrative burden and resources required to adjudge such a complex case could be streamlined with cases already pending in Washington." *Id.* In addition, there has been no substantive activity in this case that would prevent this Court from transferring the case to Washington.

## C. IF THE COURT DECLINES TO TRANSFER THIS ACTION, IT SHOULD BE STAYED

If the Court declines to transfer this action, it should be stayed pending resolution of Microsoft's underlying infringement claims in the WDWA-1577 action. This Court's power to stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). This power includes the power to stay an action pending a "resolution of independent proceedings which bear upon the case." *Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102, 1107 (N.D. Cal. 2010). .

Here, in the absence of transfer and coordination of this action with the WDWA-1577 action (which is the preferable and more efficient course), a stay pending resolution of the WDWA-1577 action would: (1) relieve the burden placed upon the parties of simultaneously litigating related claims in multiple fora; (2) avoid the potential anomaly of Motorola's counterclaims, which are largely if not entirely derivative of Microsoft's infringement claims in the WDWA-1577 action, being actively litigated while the WDWA-1577 action remains stayed pursuant to 28 U.S.C. § 1659; and (3) conserve judicial resources and reduce the risk of inconsistent rulings on Motorola's claims in this action and the parallel defenses that it can be expected to assert in the WDWA-1577 action.

**IV.** **CONCLUSION**

For the foregoing reasons, Counterclaim Defendant Microsoft respectfully requests that this action be transferred to the United States District Court for the Western District of Washington or, if the Court declines to transfer, that it be stayed pending resolution of Microsoft's patent infringement claims under the FATLFN patents pending in the Western District of Washington.

Dated: September 2, 2011                         SIDLEY AUSTIN LLP


                                    By:/s/
                                        Richard A. Cederoth
                                        rcederoth@sidley.com
                                        David T. Pritikin
                                        dpritikin@sidley.com
                                        Samuel R. Miller (SBN 66871)
                                        srmiller@sidley.com
                                        Bryan K. Anderson (SBN 170666)
                                        bkanderson@sidley.com
                                        Attorneys for MICROSOFT CORPORATION

1  **Richard A. Cederoth (Admitted Pro Hac Vice)**
   **rcederoth@sidley.com**
2  **SIDLEY AUSTIN LLP**
   **One South Dearborn Street**
3  **Chicago, Illinois  60603**
   **Telephone:  (312) 853-7000**
4  **Facsimile:  (312) 853-7036**

5  **Samuel R. Miller (SBN 66871)**
   **srmiller@sidley.com**
6  **SIDLEY AUSTIN LLP**
   **555 California Street**
7  **San Francisco, California  94104**
   **Telephone:  (415) 772-1200**
8  **Facsimile:  (415) 772-7400**

9  **Bryan K. Anderson (SBN 170666)**
   **bkanderson@sidley.com**
10 **SIDLEY AUSTIN LLP**
   **1001 Page Mill Road**
11 **Building 1**
   **Palo Alto, California  94304**
12 **Telephone:  (650) 565-7000**
   **Facsimile:  (650) 565-7100**

13
   **Attorneys for MICROSOFT CORPORATION**
14

UNITED STATES DISTRICT COURT
15
NORTHERN DISTRICT OF CALIFORNIA
16
SAN JOSE DIVISION
17

18  MOTOROLA MOBILITY, INC.,             )  Case No. 11-03136-JF
                                         )
19            Claimant,                  )
                                         )  **[PROPOSED] ORDER GRANTING**
20  vs.                                  )  **MICROSOFT CORPORATION'S MOTION**
                                         )  **TO TRANSFER PURSUANT**
21  MICROSOFT CORPORATION,               )  **TO  28 U.S.C. § 1404(a) OR, IN THE**
                                         )  **ALTERNATIVE, TO STAY**
22            Defendant.                 )
                                         )  Date:      To be determined
23                                       )  Time:      To be determined
                                         )  Place:     To be determined
24  _____  )
                                         )
25                                       )
                                         )
26

27

28

**[PROPOSED] ORDER**

The Court, having considered Counterclaim Defendant Microsoft Corporation's Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) or, in the Alternative, to Stay ("Motion"), and for good cause appearing, hereby GRANTS the Motion and transfer this action to the United States District Court for the Western District of Washington.

*ALTERNATIVELY*

The Court, having considered Counterclaim Defendant Microsoft Corporation's Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) or, in the Alternative, to Stay ("Motion"), and for good cause appearing, hereby GRANTS the alternative relief sought in the Motion and stays this action pending resolution of Microsoft's patent infringement claims under U.S. Patent Nos. 5,579,517 and 5,758,352  pending in the Western District of Washington in Case No. 2:10-cv-1577.

IT IS SO ORDERED.

Dated:  September _____, 2011

_____
United States District Judge

1