The Honorable James L. Robart

1
2
3
4
5
6

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
8

MICROSOFT CORPORATION, a Washington corporation,

9

            Plaintiff,

10

11      v.

12

MOTOROLA, INC., MOTOROLA MOBILITY, INC., and GENERAL INSTRUMENT CORPORATION,

13

14

            Defendants.

CASE NO. C10-1823-JLR

DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION FOR SUMMARY JUDGMENT OF BREACH OF CONTRACT

**NOTED ON MOTION CALENDAR: Friday, April 20, 2012**

**HEARING: May 7, 2012**

**ORAL ARGUMENT REQUESTED**

**REDACTED**

15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' RESPONSE TO MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

# TABLE OF CONTENTS

Page(s)

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 5

    A.     Motorola's Longstanding Essential Patent Licensing Program ............................ 5

    B.     Microsoft's Understanding Of RAND Is The Same As Motorola's ...................... 6

    C.     Motorola's Relationship With Microsoft ............................................................. 8

III.   ARGUMENT ..................................................................................................... 10

    A.     Legal Standard .................................................................................................. 10

    B.     Motorola's RAND Assurances Did Not Require It To Make Unsolicited
        RAND Offers To Microsoft .............................................................................. 11

    C.     The October 2010 Letters Offered Reasonable Terms ........................................ 13

        1.     Motorola's Offers Were Reasonable and Ripe for Negotiation ............... 14

        2.     Microsoft's Focus on the Unnegotiated "Total Cash Payment" Is
            Inappropriate — The Proper Focus Is On The Royalty Rate and
            Base ...................................................................................................... 17

        3.     Basing A Royalty On The Price Of The End Product Is Not
            Unusual and, Thus, Not Unreasonable As a Matter of Law .................... 19

        4.     Microsoft's Arguments That Motorola's Other Licenses Are
            Irrelevant Is Without Merit .................................................................... 21

        5.     Motorola Did Not Ignore Crucial Information In Making Its Offers ....... 23

IV.    CONCLUSION .................................................................................................. 24

DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT - i
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

2

**TABLE OF AUTHORITIES**

3

Page(s)

Cᴀsᴇs

4

5

*Aetna Health Inc. v. Fox*,
     No. 09-5647, 2011 WL 2413267 (W.D. Wash. June 13, 2011) ..............................................10

6

7

*Berg v. Hudesman*,
     115 Wash. 2d 657 (1990) ........................................................................................11

8

*Global Horizons, Inc. v. Dept. of Labor & Indus.*,
     157 Wash. App. 1066, 2010 WL 3639917 (Ct. App. (Div. 2) Sept. 21, 2010) ......................11

9

10

*Lucent Techs., Inc. v. Gateway, Inc.*,
     580 F.3d 1301 (Fed. Cir. 2009)..................................................................................21

11

12

*Paradise Orchards Gen. P'ship v. Fearing*,
     94 P.3d 372 (Ct. App. Wash. 2004) ..........................................................................10

13

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
     553 U.S. 617 (2008).................................................................................................23

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT - ii
CASE NO. C10-1823-JLR

Sᴜᴍᴍɪᴛ Lᴀᴡ Gʀᴏᴜᴘ ᴘʟʟᴄ
315 Fɪғᴛʜ Aᴠᴇɴᴜᴇ Sᴏᴜᴛʜ, Sᴜɪᴛᴇ 1000
Sᴇᴀᴛᴛʟᴇ, Wᴀsʜɪɴɢᴛᴏɴ 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    Defendants (collectively "Motorola") oppose Microsoft's March 30, 2012 Motion For

2    Summary Judgment of Breach of Contract (Dkt. No. 237).  Microsoft's motion should be denied

3    because, at a minimum, there are factual disputes as to whether the offers in Motorola's October

4    2010 letters were "blatantly unreasonable."  Indeed, when the evidence is considered in the light

5    most favorable to Motorola, the unavoidable conclusion is that they were not.

6    **I.    INTRODUCTION**

7    Motorola's "Letters of Assurance" to the IEEE and ITU include substantially the same

8    language: "The Patent Holder is prepared to grant a license to an unrestricted number of

9    applicants on a worldwide, non-discriminatory basis with reasonable terms and conditions ...."

10   Exs. 15, 16.[1]  Thus, Motorola could have initiated license discussions with Microsoft simply by

11   indicating that it was "prepared to grant" RAND licenses and without providing any terms.

12   Instead, Motorola did better – its October 2010 letters to Microsoft offered a rate to initiate

13   negotiations, leaving all other terms open to discussion between the parties.

---

[1]    "Taylor Decl. ¶ __" refers to the stated paragraph of the Declaration of K. McNeill Taylor, Jr. (Dkt. No. 232).  "Ex. __" refers to the stated Exhibit to the Declaration of Kevin J. Post, submitted in support of Motorola's Motion for Partial Summary Judgment (Dkt. No. 230), and the Second Declaration of Kevin J. Post, submitted concurrently herewith.  In this brief, all emphasis is added, unless otherwise indicated.

DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT - 1
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

It is also undisputed that determining RAND license terms is a complex exercise, involving consideration of numerous licensing terms and a variety of factors unique to any given licensing situation.

Indeed, there is no one-size-fits-all set of RAND terms. Moreover, when an initial offer is made, a licensor does not have all information required to determine final license terms.

Microsoft could have responded to Motorola's letters in the way parties usually respond to an opening offer in business negotiations. It could have made a counter-offer, could have called Motorola to clarify any language it did not understand, could have called to ask whether Motorola would consider different terms or even called to inform Motorola that Microsoft was not willing to negotiate on the terms offered.

As the non-moving party to Microsoft's summary judgment motion, Motorola is entitled to the reasonable inferences that can be drawn from undisputed facts. Undisputed testimony by Microsoft's and Motorola's employees establishes that multiple factors are relevant to the determination of RAND.

DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT - 2
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

2   Motorola does not concede that Microsoft's refusal to answer these questions is proper under either the attorney-client privilege or the work product doctrine and it reserves its right to challenge Microsoft's refusal to answer at a future time.

DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT - 3
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Admissible evidence also supports Motorola's assertion that the October offers were reasonable.  Even though Motorola's standard license offer is the product of twenty years of licensing history, has been offered to dozens of licensees, and is consistent with terms in many of Motorola's executed cross-licenses, Microsoft contends that this standard rate is "blatantly unreasonable."  As an initial matter, the determination of whether Motorola's standard rate is "blatantly unreasonable" requires resolution of factual issues that cannot be resolved on summary judgment.  For this reason alone, Microsoft's motion should be denied.

When the facts are viewed in the light most favorable to Motorola, the offers in Motorola's October 2010 letters were not "blatantly unreasonable" – they were reasonable.

Microsoft's arguments – a comparison of supposed payments that would be owed to Motorola with Motorola's estimated licensing revenues and pool rates, the supposed low value of 802.11 and H.264 technology to Microsoft's products, and the relevance of Motorola's cellular licenses – are fraught with disputed factual issues.  And these issues should have been the subject of negotiation had Microsoft not rushed to court.  Indeed, the basis for Microsoft's arguments could only have been learned through negotiations – negotiations expected by the SSOs and Motorola.  For example, whether Motorola's patents provide a small fraction of the value of

DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT - 4
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

computers and Xboxes requires, in large part, a demonstration by *Microsoft* of what it believes is the importance of this technology to its products.

Microsoft includes a graphic that purports to compare the amount it believes it would owe based on Motorola's standard offer ($4 billion) and the amount it would owe based on the MPEG LA patent pool rate. As discussed below, Microsoft's $4 billion estimation is misleading. And as demonstrated in Motorola's opposition to Microsoft's original summary judgment motion, comparing Motorola's proposed royalty terms to that of the MPEG LA or other patent pools is simply unsound. Dkt. No. 90 at 19-21. Pools have rates that are not negotiated and are purposefully low, having no relevance to a negotiated one-on-one license.

In the real world, parties negotiate. Motorola has negotiated dozens of licenses that involve one or more of its essential patents based on the same initial offer provided to Microsoft. Microsoft, however, has chosen "litigation tactics" over negotiation. There is nothing "blatantly unreasonable" about Motorola's offer and Microsoft's motion should be denied.

## II.   BACKGROUND

### A.   Motorola's Longstanding Essential Patent Licensing Program

DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT - 5
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

At the time of an initial offer, Motorola typically does not have sufficient information to know how Motorola will receive this overall value in a completed license agreement.  *Id*. ¶ 6. For example, prior to entering into licensing negotiations, Motorola generally does not have a sufficient understanding of: (1) how the potential licensee value its standard-essential patents; (2) the licensee's business model, including costs and pricing structure; (3) the licensee's projected sales; (4) the importance of Motorola's patented technology to the licensee's products, and (5) the licensee's future products .  This information can only be obtained through negotiation.  *Id.*

**B.    Microsoft's Understanding Of RAND Is The Same As Motorola's**

Outside of this litigation, Microsoft actually has a similar understanding of RAND.

DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT - 6
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001



Microsoft has admitted that negotiation is critical to determining RAND terms. Microsoft's General Manager of Standards Strategy, Amy Marasco, stated that "[a] prospective

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

implementer [e.g., Microsoft] that has requested a license **will negotiate on a private bilateral basis** with the patent owner to determine whether they can arrive at a mutually acceptable agreement on RAND terms." Ex. 19 at 8. Similarly, in a June 14, 2011 submission to the Federal Trade Commission regarding a Patent Standards Workshop, Microsoft reiterated that:

> RAND-based IPR policies provide a **flexible framework** to help **enable customized bi-lateral negotiations for patent licenses** that generally are not limited to just the essential patent claims in connection with a standard.

Ex. 20 at 3. ████████████████████████████

████████████████████████████████████████████

██████████ These admissions by Microsoft's own documents and witnesses confirm the need for negotiation – a condition precedent – and undermine the very premise of Microsoft's motion.

### C. Motorola's Relationship With Microsoft

As set forth in detail in Motorola's Motion for Partial Summary Judgment, Motorola and Microsoft co-existed for years without a license to each other's patents. Dkt. No. 231. Motorola and Microsoft maintained this détente in part because, historically, they had collaborated to develop smartphones that utilized Microsoft's Windows Mobile operating system. *Id.* But because Windows Mobile was slow to evolve, Motorola transitioned to an Android product line.

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT - 8
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

negotiation." Ex. 2 (Dailey Tr. 2622).  In fact, Microsoft even suggested that Motorola should sue Microsoft. *Id.*; Taylor Decl. ¶ 13.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████[3]

        In the letters, Motorola made clear that if Microsoft was only interested in licensing a portion of the portfolios, Motorola was willing to have such a discussion. Exs. 8, 9.  In addition, consistent with its standard patent license offer, Motorola's offers were also made "subject to a grant back license…," which required negotiation.[4]  Thus, Microsoft was encouraged to provide a counter-proposal or offer a license for its own patents, such that the ultimate rate in the eventual license would reflect the value of both Motorola's and Microsoft's intellectual property. Based on discussions Motorola had with Microsoft after the filing of Microsoft's ITC complaint, Motorola fully expected that the parties would engage in good-faith negotiations. *Id.*

---

[3] ████████████████████████████████████████████████████████

████████████████████████████████████████████████████

[4] ████████████████████████████████████████████████████████

(FOOTNOTE CONT. NEXT PAGE)

DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT - 9
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

III.  ARGUMENT

A.  Legal Standard

"Summary judgment is appropriate if, when viewing the facts in the light most favorable to the nonmoving party, there is 'no genuine issue as to any material fact,' and therefore 'the movant is entitled to judgment as a matter of law.'"  *Aetna Health Inc. v. Fox*, No. 09-5647, 2011 WL 2413267, at *1 (W.D. Wash. June 13, 2011) (quoting Fed. R. Civ. P. 56(c)).

While the parties agree that the contract law of the State of Washington is applicable to the interpretation of the LOA contracts here at issue (*see* Dkt. No. 231 at 12-13), Microsoft's statement of this law (Br. at 6) is incomplete.  As the Washington Court of Appeals held in *Paradise Orchards Gen. P'ship v. Fearing*, 94 P.3d 372, 378 (Ct. App. Wash. 2004) (relied on for other purposes by Microsoft), Washington law permits consideration of extrinsic evidence in determining the contracting parties' intent "[e]ven if the contract language is clear and unambiguous."  And, if a contractual provision is ambiguous after considering the extrinsic

DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION FOR SUMMARY JUDGMENT OF BREACH OF CONTRACT - 10
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1   evidence under the "context rule" (*see, e.g., Berg v. Hudesman*, 115 Wash. 2d 657, 667-68

2   (1990)), summary judgment is appropriate ***only*** if "a sole reasonable inference can be drawn

3   from the extrinsic evidence." *Global Horizons, Inc. v. Dept. of Labor & Indus.*, 157 Wash. App.

4   1066, 2010 WL 3639917, at *4 (Ct. App. (Div. 2) Sept. 21, 2010).

### B.   Motorola's RAND Assurances Did Not Require It To Make Unsolicited RAND Offers To Microsoft

Consistent with the patent policies of both the IEEE and the ITU, Motorola has promised

to "grant a license under reasonable rates to an unrestricted number ***of applicants*** on a

worldwide, non-discriminatory basis with [or on] reasonable terms and conditions." Exs. 15, 16.

As detailed in Motorola's March 30, 2012 Motion For Partial Summary Judgment, there can be

no genuine dispute that only ***applicants*** are entitled to benefit from Motorola's RAND

assurances and that applicants must ***negotiate RAND terms in good faith***.  Dkt. No. 231 at 15-

19.  Accordingly, because Microsoft never applied for, or entered into good-faith negotiations to

obtain, licenses to Motorola's 802.11 or H.264 standard essential patents, Motorola could not

have breached its RAND assurances and Microsoft's motion is moot for that reason.

Nonetheless, Microsoft asks this Court to find that the patent policies of the IEEE and the

ITU obligate Motorola to make unsolicited, opening license offers that, without the benefit of

information that could only be learned through negotiations, somehow specify terms that are

inherently RAND.  Br. at 7-12.  To be clear, Motorola is not arguing that an opening offer can be

"blatantly unreasonable" – an opening offer must be made in good faith.  But nothing in either

the policies of the IEEE and the ITU or in Motorola's LOAs suggest that an opening offer must

have the final RAND terms that can only be known after negotiation.  When approached by an

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

applicant, patent holders are obligated to negotiate in good faith[5] and, as the result of the knowledge gained from such negotiations, to **grant licenses** on RAND terms.

Indeed, the LOAs and the IEEE and ITU policies focus on the end product of negotiations — the license.  Specifically, the IEEE Bylaws specify that **licenses, not offers**, "will be made available … under reasonable rates, with reasonable terms and conditions…."  Br. at 8.  Similarly, the ITU policy requires that the patent holder be "willing to **negotiate licenses** with other parties on [RAND] terms and conditions."  Br. at 11.  And Motorola's LOAs focus on licenses, not offers:

> "[Motorola] agrees to **grant a license** under reasonable rates to an unrestricted number of **applicants** with [or on] a worldwide, non-discriminatory basis with reasonable terms and conditions."

Exs. 15, 16.  The plain language of these provisions establishes that the resulting licenses, arrived at after an applicant applies for a license, and after bilateral good-faith negotiations, will include RAND terms.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In an effort to create an obligation where none was intended, Microsoft attempts to draw inferences from language in selected documents.  For example, Microsoft relies on a 1994 letter from Motorola to the IEEE, agreeing to "license those [essential] patents … offering fair and commercially reasonable terms."[6]  Br. at 8.  This language is ambiguous and does not expressly require that an offer include RAND terms.  A more reasonable reading requires that Motorola license these patents on RAND terms, not that Motorola would make a RAND "offer" in every

---

[5] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[6] Microsoft also relies on a document from ANSI (unrelated to the IEEE or ITU), which states "that the patent holder will offer to provide licenses [on RAND] terms and conditions."  Br. at 9.  But this says nothing more than that the licenses, as ultimately agreed to, shall comply with RAND. .

DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT - 12
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

case.[7] The fact remains that the parties know what is RAND only after negotiations.  As this Court observed (███████████████████████████████████), it is difficult to determine in advance what might constitute RAND terms in a particular circumstance, without extensive negotiations involving exchange of often highly confidential information. █████████████████████████████████████████████████████████ In recognition of this, the ITU and IEEE policies leave the determination of what qualifies as "RAND" to bilateral negotiations.

Motorola is mindful that the Court observed that the ITU "duty to 'negotiate licenses . . . on' RAND terms could reasonably be interpreted to require Motorola to make offers on RAND terms — an 'offer' being part of a 'negotiation' under such a reading of the policy."  Dkt. No. 188 at 14.  Motorola submits, however, that, considering the documents forming the basis for Motorola's contractual obligations as a whole, and the logic of bilateral negotiations, this phrase is directed to the final result of the negotiations — a RAND license.

**C.    The October 2010 Letters Offered Reasonable Terms**

Microsoft seeks a second bite at the apple, again asking for summary judgment that the October 2010 letters were unreasonable (albeit this time alleging that the letters were "blatantly unreasonable").  This Court previously denied summary judgment, finding that there are genuine issues as to whether or not the October offers were unreasonable.  Dkt. No. 188 at 16-17. Microsoft's current motion articulates no sound reason for reconsidering this ruling.  Indeed, as discussed below, every argument Microsoft makes is premised on a disputed factual issue, requiring that the Court again deny Microsoft's motion.  In fact, when the entire factual record – Motorola's previous RAND offers, its fully-negotiated licenses, jury-awarded royalty rates, and established industry rates – is considered in the light most favorable to non-movant Motorola,

---

[7]    Compounding this ambiguity, the IEEE Operations Manual specifies that an LOA for one version of a standard does not generally carry over to all subsequent versions of that standard.  Ex. 33 at § 6.3.6.  Motorola

(FOOTNOTE CONT. NEXT PAGE)

DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT - 13
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Motorola's offer plainly was ***reasonable*** – a far cry from "blatantly ***un***reasonable".

### 1. Motorola's Offers Were Reasonable and Ripe for Negotiation

The Court will appreciate that an offer requires a starting point – a necessity to determine where a negotiation should begin.  Motorola's previous license offers and licenses are the best evidence of what any reasonable offeror should offer and, thus, whether Motorola's offer to Microsoft was "blatantly unreasonable".  Why should any rational offeror underbid as a starting point the offer that had been accepted in prior negotiations?  Reasonableness certainly cannot be limited to a "lowball" offer or a revision of Motorola's offer that Microsoft would like – those are for Microsoft to counter-propose in negotiations, which it never did.



followed this early letter with a series of LOAs directed to other amendments to the 802.11 base standard.  Ex. 16.  These superseding documents raise further ambiguity as to the contractual significance of the March 1, 1994 letter.

DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT - 14
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001



DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT - 15
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

***Proxim.***   Motorola's October 2010 offers include certain 802.11 patents acquired by Motorola in its acquisition of Symbol Technologies.  Ex. 8; Ex. 36 (Bernstein Rough Tr. 27-29, 32-33).   In 2003, a jury awarded Symbol a royalty of ***6% of the average selling price of Proxim's finished products*** for just two of the patents offered to Microsoft was.[11]   Ex. 4 (CX-778C) at 24; Ex. 36 (Bernstein Rough Tr. 17).

---

[9]   Dr. Teece only analyzed the agreements that included patents being asserted in the ITC – a subset of the patents offered to Microsoft for license in October 2010.

[10]   The value of patent transfers and grant back licenses cannot be underestimated.  Indeed, Microsoft was part of a consortium that last year spent $4.5 billion to buy Nortel's patent portfolio and days ago spent $1.1 billion to purchase 800 non-essential patents from AOL.

[11]   While a jury verdict as to a reasonable royalty rate for a particular patent may or may not be a RAND rate (after all, RAND is reasonable), it is, in any event, relevant to whether Motorola's offer was reasonable.

DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT - 16
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

**_Industry Practice_**.  Motorola's opening 2.25% offer rate is also consistent with industry practice, including licensing practices in wireless data protocols.  A 2010 survey of published rates for patent portfolios essential to the LTE 4G standard – ███████████████████ – shows that rates ranged between 0.8% and 3.25%.  Ex. 40 at 117.  A December 2010 survey of royalty rates in various industries likewise shows that the average royalty rate in the telecom industry is 5.6%.  Ex. 41 at 6.  In another survey of licensing agreements and royalty rates, Thomas Varner, of Economists, Inc., concluded (after reviewing royalty rates published in SEC filings) that average rates for bare patent licenses in the "software" industry average 3.3%; rates in "hardware" average 3.9%.  Ex. 42 at 123.

All of this evidence – Motorola's previous license offers, Motorola's fully-negotiated licenses, the 6% jury verdict, the ████████ licenses, and industry rates – when viewed in any light demonstrates that Motorola's offers were reasonable.  When viewed in the light most favorable to Motorola, it unquestionably establishes substantial fact issues as to whether Motorola's offers could be found "blatantly unreasonable" on summary judgment.

## 2. Microsoft's Focus on the Unnegotiated "Total Cash Payment" Is Inappropriate — The Proper Focus Is On The Royalty Rate and Base

Microsoft argues that Motorola's letters should be found "blatantly unreasonable" by focusing on a theoretical $4 billion "total cash payment" Microsoft calculates it would have owed to Motorola based on Motorola's standard terms.

DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT - 17
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT - 18
28   CASE NO. C10-1823-JLR



SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

### 3. Basing A Royalty On The Price Of The End Product Is Not Unusual and, Thus, Not Unreasonable As a Matter of Law

There is nothing unreasonable – or unusual – about basing a RAND (or any other) royalty on the price of an end product.  Indeed, the current IEEE LOA form itself explicitly states that the license rate may be a "percent of product price."  Ex. 43 at 2.

DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT - 19
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Notwithstanding "common" and "preferred" industry practice, Microsoft attempts to rely on the Entire Market Value (EMV) rule and a Federal Circuit decision issued *after* Motorola sent its letters to argue that Motorola's offers were "blatantly unreasonable". Br. at 15. But the EMV rule is directed to determining a reasonable royalty in the context of patent infringement damages — not negotiating a RAND rate during real-world negotiations. And, as this Court has already ruled, Microsoft has not provided any authority for the proposition that using net selling price as a royalty base is improper, and there is no reason that a proposed royalty rate should not result in a larger royalty rate for products that have higher end prices. Dkt. No. 188 at 16. Indeed, the Federal Circuit has confirmed that "sophisticated parties routinely enter into license

---

[12]   Licensing treatises confirm that a royalty rate based on net selling price is typical, favored, common and preferred. *See, e.g., Drafting Licensing Agreements* (4th ed.), Ex. 44 at 20-47 ("*[t]ypically*, the royalty rate is based on a percentage of either the sales or profits of the product that is the subject of the license agreement."); *Drafting Patent License Agreements* (5th ed.), Ex. 45 at 113 ("*The most common royalty bases* are the *sales price (net or gross) of the licensed product* or a fixed amount for each licensed product sold or manufactured").

DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT - 20
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

agreements that base the value of the patented inventions as a percentage of the ***commercial products' sales price***."  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1339 (Fed. Cir. 2009).  This endorsement of using a percentage of the sales price in negotiating licenses is not surprising – this is readily identifiable, difficult to manipulate, and easy to administer.

Nonetheless, Microsoft argues that the royalty base should, at most, be the cost of the WiFi chip inside the Xbox, rather than the Xbox itself.  Br. at 16-17.  This is akin to valuing a music album, television show or movie based on the value of the blank CD or DVD recording medium.  There is no necessary relationship between the value of the building blocks used to create the patented invention, and the value of the invention to the end product that uses it.  But, in any event, these were counter-arguments for Microsoft to make in the negotiation it rejected.[13]

### 4.  Microsoft's Arguments That Motorola's Other Licenses Are Irrelevant Is Without Merit

In the face of Motorola's numerous licenses with comparable terms to those offered in the October 2010 letters, Microsoft does all it can to minimize their significance.  Microsoft first argues that the cellular licenses are not relevant because cellular standards are more important to cellular devices than 802.11 and H.264 technology is to its products.  Br. at 18.  But Microsoft provides no evidence concerning the purported lack of importance of these technologies to its products.  In fact, the evidence suggests otherwise.  Microsoft no longer offers an Xbox without 802.11 functionality, has valued the WiFi functionality at 40% of the price of an Xbox system (*see* n. 13),

If anything, Microsoft's argument raises factual issues

---

[13]      On this point, it is instructive to consider the fact that Microsoft has offered an 802.11-compliant adapter to add WiFi functionality for older Xbox gaming systems for approximately 40% of the purchase price of a new 802.11-compliant system.   In other words, Microsoft has publicly valued 802.11 standard functionality at

(FOOTNOTE CONT. NEXT PAGE)

DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT - 21
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

concerning the importance of 802.11 and H.264 technologies to its products.  And, again, this information – particularly about future product evolution – should have been provided to Motorola in negotiations.

Microsoft also ignores a critical point: patents in Motorola's 802.11 portfolio are also in Motorola's cellular portfolios.

approximately 40% of the product's total market value — far more than the value of the WiFi chip inside the adapter.  Exs. 46, 47.

DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT - 22
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Finally, Microsoft criticizes Motorola for proposing that the royalty be based on the selling price of, among others products, computers (i.e., the end product) rather than the selling price of the Windows operating system, even though Microsoft does not sell computers.  Br. at 19.  But this offer was consistent with Motorola's practice of using the price of the end product as a royalty base and was made to show Microsoft how Motorola valued its patents (i.e., on the end product).  Moreover, this was a reasonable opening proposal, in light of the Supreme Court's decision in *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617 (2008).  In that case, the Supreme Court held that "[t]he authorized sale of an article that substantially embodies a patent exhausts the patent holder's rights and prevents the patent holder from invoking patent law to control post-sale use of the article."  *Id.* at 638.  Accordingly, in order to ensure that its downstream rights were protected, Motorola's opening offer made clear that it wanted to hold Microsoft responsible for collecting Motorola's normal percentage of the end-product price.

### 5.      Motorola Did Not Ignore Crucial Information In Making Its Offers

Microsoft would impose a duty on Motorola to have conducted an extensive technical analysis of the "contribution" that Motorola's essential patents made to the standards and repeatedly criticizes Motorola for not engaging in investigations before sending the offer letters.  Br. at 3-4, 17, 20, 21.  Microsoft, of course, did no such technical analysis itself.

DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT - 23
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Microsoft also argues that the fact that other companies might seek royalties from Microsoft for its use of the 802.11 and H.264 standards somehow renders Motorola's proposals unreasonable, because a Motorola license would be "stacked" on top of other theoretical licenses.  Br. at 21.  Microsoft gives no concrete example of other demands.  In fact, Microsoft is raising yet another theoretical concern, one that commentators (**including Microsoft's own consultant**) acknowledge to be "more myth than reality."  Ex. 54 at Abstract, 42.  In the real world, this potential problem is avoided because (1) cross-licenses reduce the rates and, in fact, often result in zero-zero cross licenses; (2) many essential patent holders do not have licensing programs; (3) many companies (much like Motorola and Microsoft) remain in long standing détentes; and (4) a given negotiation will take into account prior agreements that have already imposed royalties.

Finally, Microsoft again asserts that the reference to "grant backs" in the October 2010 letters required that Microsoft give Motorola a royalty free grant back license.  Br. at 21-22.

## IV.   CONCLUSION

For the reasons set forth above, Motorola respectfully requests that this Court deny Microsoft's motion for summary judgment of breach of contract.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    DATED this 13th day of April, 2012.

2                                                RESPECTFULLY SUBMITTED:

3                                                SUMMIT LAW GROUP PLLC

4                                                By /s/ Ralph H. Palumbo
5                                                     Ralph H. Palumbo, WSBA #04751
                                                     Philip S. McCune, WSBA #21081
6                                                     Lynn M. Engel, WSBA #21934
                                                     ralphp@summitlaw.com
7                                                     philm@summitlaw.com
                                                     lynne@summitlaw.com

8                                                By /s/ K. McNeill Taylor, Jr.
9                                                     K. McNeill Taylor, Jr.
                                                     MOTOROLA MOBILITY, INC.
10                                                    MD W4-150
                                                     600 North U.S. Highway 45
11                                                    Libertyville, IL  60048-1286
                                                     Phone:  858-404-3580
12                                                    Fax:  847-523-0727

13                                               And by

14                                                   Steven Pepe (pro hac vice)
                                                     Jesse J. Jenner (pro hac vice)
15                                                   Stuart W. Yothers (pro hac vice)
                                                     Ropes & Gray LLP
16                                                   1211 Avenue of the Americas
                                                     New York, NY  10036-8704
17                                                   (212) 596-9046
                                                     steven.pepe@ropesgray.com
18                                                   jesse.jenner@ropesgray.com
                                                     stuart.yothers@ropesgray.com
19
                                                     Norman H. Beamer (pro hac vice)
20                                                   Gabrielle E. Higgins (pro hac vice)
                                                     Ropes & Gray LLP
21                                                   1900 University Avenue, 6th Floor
                                                     East Palo Alto, CA  94303-2284
22                                                   (650) 617-4030
                                                     norman.beamer@ropesgray.com
23                                                   gabrielle.higgins@ropesgray.com

24

25

26

27   DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION         SUMMIT LAW GROUP PLLC
     FOR SUMMARY JUDGMENT OF BREACH OF                  315 FIFTH AVENUE SOUTH, SUITE 1000
     CONTRACT - 25                                      SEATTLE, WASHINGTON 98104-2682
28   CASE NO. C10-1823-JLR                              Telephone:  (206) 676-7000
                                                        Fax:  (206) 676-7001

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Paul M. Schoenhard (*pro hac vice*)
Kevin J. Post (*pro hac vice*)
Ropes & Gray LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC  20005-3948
(202) 508-4693
*paul.schoenhard.@ropesgray.com*
*kevin.post@ropesgray.com*

***Attorneys for Motorola Solutions, Inc., Motorola Mobility, Inc., and General Instrument Corporation***

DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT - 26
CASE NO. C10-1823-JLR

1

**CERTIFICATE OF SERVICE**

2

3

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

4

Arthur W. Harrigan, Jr., Esq.
Christopher T. Wion, Esq.

5

Shane P. Cramer, Esq.
Danielson Harrigan Leyh & Tollefson

6

*arthurh@dhlt.com*
*chrisw@dhlt.com*

7

*shanec@dhlt.com*

8

Brian R. Nester, Esq.
David T. Pritikin, Esq.

9

Douglas I. Lewis, Esq.
John W. McBride, Esq.

10

Richard A. Cederoth, Esq.
David Greenfield, Esq.

11

William H. Baumgartner, Jr., Esq.
David C. Giardina, Esq.

12

Carter G. Phillips, Esq.
Constantine L. Trela, Jr., Esq.

13

Ellen S. Robbins, Esq.
Nathaniel C. Love, Esq.

14

Sidley Austin LLP
*bnester@sidley.com*

15

*dpritikin@sidley.com*
*dilewis@sidley.com*

16

*jwmcbride@sidley.com*
*rcederoth@sidley.com*

17

*david.greenfield@sidley.com*
*wbaumgartner@sidley.com*

18

*dgiardina@sidley.com*
*cphillips@sidley.com*

19

*ctrela@sidley.com*
*erobbins@sidley.com*

20

*nlove@sidley.com*

21

T. Andrew Culbert, Esq.

22

David E. Killough, Esq.
Microsoft Corp.

23

*andycu@microsoft.com*
*davkill@microsoft.com*

24

25

DATED this 13th day of April, 2012.

26

*/s/ Marcia A. Ripley*
Marcia A. Ripley

27

DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION
FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT
CASE NO. C10-1823-JLR

28

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001