# EXHIBIT 45

Case 2:10-cv-01823-JLR   Document 273-8   Filed 04/13/12   Page 2 of 5

# Drafting Patent License Agreements

## Fifth Edition

Brian G. Brunsvold
Dennis P. O'Reilley

Partners: Finnegan, Henderson, Farabow,
Garrett & Dunner, L.L.P.
Washington, D.C.



The Bureau of National Affairs, Inc., Washington, D.C.

Copyright © 1971, 1984, 1991, 1998, 2004

The Bureau of National Affairs, Inc.
Washington, D.C. 20037

**Library of Congress Cataloging-in-Publication Data**

Brunsvold, Brian G., 1938-
   Drafting patent license agreements / Brian G. Brunsvold, Dennis P. O'Reilley. -- 5th ed.
   p. cm.
   Includes index.
   ISBN 1-57018-424-0
   1. Patent licenses--United States. 2. Trade secrets--United States.  I. O'Reilley, Dennis P., 1943- II. Title.

KF3145.M35 2004
346.7304'86--dc22

                              2004058597

All rights reserved. Photocopying any portion of this publication is strictly prohibited unless express written authorization is first obtained from BNA Books, 1231 25th St., N.W., Washington, D.C. 20037, www.bnabooks.com. Authorization to photocopy items for internal or personal use, or the internal or personal use of specific clients, is granted by BNA Books for libraries and other users registered with the Copyright Clearance Center (CCC) Transactional Reporting Service, provided that $1.00 per page is paid directly to CCC, 222 Rosewood Dr., Danvers, MA 01923, www.copyright.com, Telephone: 978-750-8400, Fax: 978-646-8600.

Published by BNA Books
1231 25th St., N.W., Washington, D.C. 20037
*http://www.bnabooks.com*

International Standard Book Number 1-57018-424-0
*Printed in the United States of America*

may be negotiable. In some markets where risk and reward are high, such as pharmaceuticals, royalty rates of 10% to 30%, along with substantial milestone payments, may be tolerated. In a very few instances, as where the use of the invention (perhaps a new and important catalyst) contributes extremely large added value to the products in which it is used, royalties as high as 50 percent (measured on the selling price of the catalyst or similar value-adding constituent) can be justified and will be found acceptable.

## 10.01  Selection and Definition of the Royalty Base

Contract drafting in respect to royalty payments divides itself rather naturally into (1) the problem of defining the base on which royalties are to be computed and (2) the procedures under which royalties payable are to be calculated, reported, and accounted for. It ordinarily works well to treat these two matters separately, focusing one part of the agreement on each. Accordingly, the following sections will outline an approach suitable to this course.

### A.  *Selecting the Royalty Base*

Selection of the royalty base is the first step in negotiating license consideration. Varying the royalty rate to achieve a desired total consideration is relatively easy once the royalty base is determined. The ideal royalty base should have two fundamental characteristics: it should relate directly to the licensee's use of the licensed rights and it should be amenable to reliable accounting and auditing.

The first desired characteristic of a royalty base, relation to use of the licensed technology, reflects a logical connection between the benefit given to the licensee and the amount paid by the licensee.

The second desired characteristic is more practical than logical. Payment of royalties generally requires reliance on the licensee to determine, in accordance with the terms of the license, what royalties are payable. This determination is considerably easier, and more likely to be correctly calculated, if the royalty base is something already counted or recorded in the ordinary course of business of the licensee. A licensee normally uses and retains invoices that show the sales price of products or normally counts the number of products made or sold. A licensee, on the other hand, may not normally count the number of cycles of a machine, for example. Selection of an unusual royalty base, even though it may be directly related to use of the licensed technology, can lead to errors in royalty calculation by the licensee and to increased costs to the licensee in creating a separate record and to the licensor in auditing records that may deviate from accepted accounting principles.

Mention of accounting principles suggests another factor to consider in selecting a royalty base. A licensee's profit on a licensed product or the licensee's cost of the licensed product are both tempting bases, since each has some direct relation to the licensee's use of the licensed technology. Before selecting such a base, however, the licensor should consider the variable definitions for profit and cost under generally accepted accounting principles, and the licensee should consider whether it wishes to disclose to the licensor its profit or cost figures. If such a royalty base is to be used, care should be taken to define, to the extent reasonable and possible given principles of accounting, exactly what profit or cost the parties contemplate.

Where the licensed technology involves a product or process that uses or consumes a raw material, an attractive royalty base is the cost of that raw material. Such a base is directly related to the licensee's use of the technology, and such costs are ordinarily kept by the licensee in the ordinary course of business. Before selecting such a base, however, the parties should consider potential fluctuations of the price for the raw material that may have nothing to do with the market for the licensed product. Licensees who agreed in the early 1970s to pay royalties on the cost of oil input to licensed refining processes were unpleasantly surprised when OPEC caused dramatic increases in the price of oil.

The most common royalty bases are the sales price (net or gross) of the licensed product or a fixed amount for each licensed product sold or manufactured.

### B.  Defining the Royalty Base

Inadequate or ambiguous definition of the royalty base has, over the years, engendered much litigation. In the litigated cases, there appear to be two principal sources of controversy: (1) vagueness as to the general subject matter intended to bear royalties and (2) uncertainty concerning intended peripheral metes and bounds of royalty-bearing subject matter otherwise reasonably identified.

#### 1.  Vagueness as to Subject Matter

The problem of vagueness is well illustrated by *Heath v. A.B. Dick Co.*[10] and *Muth v. J.W. Speaker Corp.*[11]

In the *Heath* case, the commitment was to pay royalties of "ten cents (10¢) per pound of the film material used in the stencilization of stencil sheets *under this license.*"[12] This followed an agreement

---

[10] 253 F.2d 30, 116 USPQ 358 (7th Cir. 1958).
[11] 151 F. Supp. 188, 114 USPQ 327 (D. Wis. 1957).
[12] 253 F.2d at 32, 116 USPQ at 359 (emphasis added).