HONORABLE JAMES L. ROBART

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>    Plaintiff,<br><br> v.<br><br>MOTOROLA INC., et al.,<br><br>    Defendant. | No. C10-1823-JLR<br><br>**REDACTED**<br><br>MICROSOFT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF BREACH OF CONTRACT<br><br>**Hearing:  May 7, 2012 9:00 am** |
| MOTOROLA MOBILITY, INC., et al.,<br><br>    Plaintiffs,<br><br> v.<br><br>MICROSOFT CORPORATION,<br><br>    Defendant. | |

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT
OF BREACH OF CONTRACT

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARGUMENT..................................................................................................................... 2

   I.   TO WITHSTAND SUMMARY JUDGMENT, MOTOROLA NEEDED TO PRESENT EVIDENCE FROM WHICH A FINDER OF FACT COULD CONCLUDE ITS DEMANDS WERE REASONABLE. ............................................................................ 2

   II.   THE UNDISPUTED EVIDENCE SHOWS THAT MOTOROLA'S DEMANDS WERE BLATANTLY UNREASONABLE. ........................................................................ 2

      A.  Motorola's Existing Licenses Only Confirm That Its 2.25% Royalty Demands Were Blatantly Unreasonable. ............................................................................ 2

         1.  Motorola's Cellular Patent Licenses to Cellular Manufacturers Cannot Justify Motorola's Demands of Microsoft. ............................................................ 3

         2.  Motorola's License to REDACTED Is Entirely Incomparable to its Demands of Microsoft. ........................................................................................... 5

         3.  "Industry Practices" Provide No Support for Motorola's Blatantly Unreasonable Demands. ...................................................................................... 6

      B.  Motorola's Demand for a Royalty on the Sales Prices of Microsoft's Customers' Products Was Completely Unreasonable. ................................................. 7

      C.  Motorola's Demand for 802.11 Royalties Exceeding the Price of an 802.11 Chip Was Blatantly Unreasonable. .......................................................................... 10

      D.  Motorola Confirms That Any Final "RAND" License Would Require Microsoft to Pay 2.25% of REDACTED to Motorola. ................................................. 10

   III.  MOTOROLA'S DEMAND LETTERS BREACHED ITS RAND OBLIGATIONS. ...... 11

CONCLUSION................................................................................................. 12

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT
OF BREACH OF CONTRACT - i

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

**TABLE OF AUTHORITIES**

Case                                                                                                    Page

Anderson v. Liberty Lobby, Inc.
    477 U.S. 242 (1986)..............................................................................................2

Celotex Corp. v. Catrett
    477 U.S. 317 (1986)..............................................................................................2

DataQuill Ltd. v. High Tech Computer Corp.
    No. 08-cv-543, 2012 WL 1284381 (S.D. Cal. April 16, 2012) ..............................3

Geddes v. United Fin. Group
    559 F.2d 557 (9th Cir. 1977) .................................................................................9

Lucent Techs, Inc. v. Gateway, Inc.
    580 F.3d 1301 (Fed. Cir. 2009) .............................................................................8

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.
    475 U.S. 574 (1986)..............................................................................................2

Quanta Computer Inc. v. LG Elecs., Inc.
    553 U.S. 617 (2008)..............................................................................................9

ResQNet.com, Inc. v. Lansa, Inc.
    594 F.3d 860 (Fed. Cir. 2010). ..........................................................................3, 6

Uniloc USA, Inc. v. Microsoft Corp.
    632 F.3d 1292 (Fed. Cir. 2011) .....................................................................6, 8, 9

Wordtech Sys. v. Integrated Networks Solutions
    609 F.3d 1308 (Fed. Cir. 2010) .............................................................................5

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT
OF BREACH OF CONTRACT - ii

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

## INTRODUCTION

Summary judgment is appropriate here because "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The sole question presented by Microsoft's motion for summary judgment is whether Motorola's October 2010 demand for at least a 2.25% royalty on the retail prices of Microsoft's customers' Windows-based computers and its Xbox video game consoles breached Motorola's RAND obligations. The legal framework for deciding this question is undisputed: Motorola is contractually obligated to license its standard-essential patents on RAND terms; Microsoft is a third-party beneficiary of that contract; and Motorola breached that contract if it made a blatantly unreasonable licensing offer.

The facts material to this question are few and are not genuinely in dispute. Motorola demanded that Microsoft enter into a license under which Microsoft would pay not less than a 2.25% royalty based on end-product prices.[1] Motorola's demand would result in annual payments of $4 billion, amounting to more than 20% of Microsoft's annual profits. The standards and Motorola's contribution to them indisputably represent simply one feature among hundreds or thousands in the products at issue, and there is no evidence that either the standard or Motorola's contribution to the standard drives the sales of the products on which Motorola seeks the royalty. Although Motorola offers up various cellular patent licenses, "industry practices," and the like, not only is this evidence immaterial to the question before this Court, but Motorola fails to show that any other license is even remotely comparable to what Motorola demanded from Microsoft.

---

[1] By their own terms Motorola's letters to Microsoft actually sought a grant-back in addition to the 2.25% royalty (*see* Dkt. No. 236 at 21–22) and as to Xbox sought a combined 4.5% royalty for both sets of patents. Although Motorola protests it didn't intend as much, its second letter (sent a week after the first) could easily have explained that Motorola would not stack these rates, but it did not—instead demanding another royalty of 2.25% per unit and, as with the first letter, explicitly identifying the Xbox 360. (*See* Dkt. No. 238 Exs. 13, 14.) The question of breach is measured by the content of Motorola's letters, not by its subsequent rationalizations.

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT
OF BREACH OF CONTRACT- 1

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Motorola's primary argument is that had Microsoft only negotiated, Motorola's final terms would have complied with its RAND obligations. That is an immaterial distraction, and wrong besides. The question posed by Microsoft's motion is whether Motorola's opening demand was blatantly unreasonable, and the answer to that question has nothing to do with speculation concerning what might have happened later. Moreover, Motorola makes clear throughout its brief that not less than a 2.25% end-product royalty was both its opening demand and its final offer—it would have negotiated over the form in which payment could be made, but 2.25% in "overall value" was set in stone. That demand was blatantly unreasonable. Summary judgment should be entered for Microsoft.

## ARGUMENT

### I. TO WITHSTAND SUMMARY JUDGMENT, MOTOROLA NEEDED TO PRESENT EVIDENCE FROM WHICH A FINDER OF FACT COULD CONCLUDE ITS DEMANDS WERE REASONABLE.

In its opposition, Motorola fails to "come forward with specific facts showing that there is a genuine issue for trial" on the question of breach. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted). The mere existence of other Motorola licenses with incomparable structures and for other patents, or of "industry practices" with respect to unrelated technology, is not sufficient: Motorola must produce sufficient evidence to enable a finder of fact to conclude that the entirety of Motorola's $4 billion demand was reasonable. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Motorola has failed to make such a showing, entitling Microsoft to summary judgment of breach of contract. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### II. THE UNDISPUTED EVIDENCE SHOWS THAT MOTOROLA'S DEMANDS WERE BLATANTLY UNREASONABLE.

#### A. Motorola's Existing Licenses Only Confirm That Its 2.25% Royalty Demands Were Blatantly Unreasonable.

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT
OF BREACH OF CONTRACT- 2

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Motorola tries to justify its demand for a 2.25% royalty on the price of end products by pointing to prior licenses. But these licenses do not raise any issue of material fact because Motorola has not come close to showing that any are comparable. Motorola treats these licenses as if all products sold by any licensee, all of Motorola's patents, and all license structures are interchangeable and comparable to Motorola's demands of Microsoft, contrary to established Federal Circuit law:

> [Courts] must consider licenses that are commensurate with what the defendant has appropriated. If not, a prevailing plaintiff would be free to inflate the reasonable royalty analysis with conveniently selected licenses without an economic or other link to the technology in question.

*ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010). *See also DataQuill Ltd. v. High Tech Computer Corp.*, No. 08-cv-543, 2012 WL 1284381, at *5 (S.D. Cal. April 16, 2012) (granting motion in limine to exclude reasonable royalty expert testimony on prior licenses that were not comparable). These licenses create no fact question because they are irrelevant as a matter of Federal Circuit law. Nor is the threshold for comparability met by Motorola's observation that REDACTED (Dkt. No. 274, Defs.' Resp. to Microsoft's Mot. for Summary J. of Breach of Contract ("Opp.") 22.) A cursory examination of the agreements' structures, the Motorola patents they cover, the licensees' products, and the relationship between the patents licensed and features of those products, only highlights the blatantly unreasonable nature of Motorola's demands of Microsoft.

### 1. Motorola's Cellular Patent Licenses to Cellular Manufacturers Cannot Justify Motorola's Demands of Microsoft.

Royalty rates Motorola may receive or typically demand for its standard-essential cellular patents (*see* Opp. 5–6) are not relevant to its H.264 and 802.11 royalty demands of Microsoft. REDACTED make products to which the cellular standards are critical: a cell phone that failed to comply with cellular standards would be unusable. Motorola fails to

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT
OF BREACH OF CONTRACT- 3

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1  present any evidence that the H.264 or 802.11 standards, let alone Motorola's contribution to
2  those standards, play a remotely comparable role in Windows computers or the Xbox 360.[2]
3  Motorola's attempt to gin up a factual dispute flies in the face of common sense.  The issue is
4  not whether "the importance of 802.11 and H.264 technologies to [Microsoft's] products"
5  (Opp. 21–22) need be precisely quantified before making a RAND offer; the issue is whether
6  Motorola's effort to analogize that relationship to the importance of cellular standards to cell
7  phones is plausible—and it is not.  (*See* Dkt. No. 236, Microsoft's Mot. for Summary J. of
8  Breach of Contract ("Br.") 18.)[3]  For that reason, it is irrelevant that REDACTED
9      REDACTED                                                    (Opp. 22.)  The only reasonable
10 inference that can be drawn from Motorola's cellular licenses is that it is inherently
11 *unreasonable* to demand the same 2.25% royalty for Motorola's 802.11 and H.264 patents for
12 products where the standard is implemented at most as a feature within a feature.
13     Motorola's discussion of the REDACTED       (Opp. 18) only undermines its
14 position:  REDACTED
15     REDACTED
16     REDACTED
17     REDACTED
18     REDACTED                                                  [4]  Moreover, if
19 Motorola's position that it REDACTED                          (Opp. 6)

---

[2] Microsoft's pricing of an add-on to allow older Xbox models to connect to WiFi networks is irrelevant.  That the cost of manufacturing a separate external adaptor to add this capability to old systems, and the pricing of that component, exceeds the price of the 802.11 chip now integrated into current models is unremarkable.

[3] Motorola's argument that Microsoft had a duty to investigate the technical contribution of Motorola's H.264 and 802.11 patents to those standards (Opp. 3) when Motorola had not even done so itself before demanding billions of dollars from Microsoft is absurd—the RAND obligations are Motorola's, and its compliance with those obligations is measured by its own conduct, not Microsoft's.  (*See* Br. 20–21.)

[4] Motorola's discussion REDACTED         lapses into absurdity when it observes REDACTED REDACTED                                                                      (Opp. 22.)  That difference, based on Motorola's demands of Microsoft, amounts to *one billion dollars* in annual royalties.

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT
OF BREACH OF CONTRACT- 4

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1  REDACTED

2  REDACTED

3  Motorola claims that the REDACTED

4  REDACTED

(Opp. 16), but provides no information about a royalty rate or base—only that the agreement involved REDACTED (*Id.*) Motorola fails to mention that REDACTED REDACTED (Dkt. No. 233 Ex. 4 at 25.) REDACTED REDACTED

REDACTED only highlights the unreasonableness of its $4 billion annual demand for its H.264 and 802.11 patents alone. *Cf. Wordtech Sys. v. Integrated Networks Solutions*, 609 F.3d 1308, 1320–21 (Fed. Cir. 2010).

### 2. Motorola's License REDACTED Is Entirely Incomparable to its Demands of Microsoft.

While claiming the REDACTED (Opp. 22), Motorola assiduously avoids explaining what products REDACTED sells and how those products relate to the 802.11 or H.264 standards, much less how that relationship could be comparable to the use of the standards in Microsoft's (or its customers') products.[5] In fact, REDACTED

REDACTED

. In connection with resolving those claims, REDACTED also apparently sought a license to Motorola's 802.11 and H.264 patents. (Dkt. No. 273 Ex. 34.) Whether this was a way REDACTED

---

[5] The only information Motorola provides concerning REDACTED
REDACTED and the Xbox and some Windows devices sell in that range. (Opp. 15.) A coincidental overlap in price points of unrelated products proves nothing concerning the reasonableness of Motorola's demands.

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT
OF BREACH OF CONTRACT- 5

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

REDACTED

REDACTED                                             Wion Decl. Ex. 2 (Kowalski Dep.) at 95:19-96:5.  REDACTED                                         —regardless of the nominal rate—cannot validate a $4 billion demand made of Microsoft.[6]  No reasonable finder of fact could so determine.

### 3. "Industry Practices" Provide No Support for Motorola's Blatantly Unreasonable Demands.

Motorola's incantation of "industry practices" in support of the royalty it demanded should be ignored.  In the patent damages context, the Federal Circuit has made clear that any royalty precedent "must be tied to the relevant facts and circumstances of the particular case at issue" in order to be admissible as evidence of a reasonable royalty.  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317–18 (Fed. Cir. 2011).  The evidence Motorola offers fails, as a matter of law, to meet the Federal Circuit's test as being probative of a reasonable royalty.  Microsoft's products do not practice the next-generation cellular LTE 4G standard, and Motorola does not and cannot tie surveys of royalty rates for licenses in "telecom," "software," and "hardware" industries (Opp. 17) to its 802.11 or H.264 patents.  This is not a matter of interpreting evidence "in the light most favorable to non-movant Motorola" (Opp. 13), because the evidence to which Motorola points is simply inadmissible.  *See ResQNet.com*, 594 F.3d at 872.   Further, the issue before this Court concerns Motorola's *RAND obligations*—not "industry practices" or Motorola's licensing of patents that are not standard-essential.

---

[6] Motorola's abbreviated arguments concerning licenses with Proxim, REDACTED          and REDACTED (Opp. 16–17) are equally unavailing.  Motorola omits critical details of these agreements.  REDACTED                                                                                           Dkt. No. 273 Ex. 37 at 4; Wion Decl. Ex. 3 (U.S. Patent No. 5,029,183); Wion Decl. Ex. 4 (Excerpt of file history of U.S. Patent 5,479,441).  REDACTED
REDACTED            *See* Dkt. No. 273 Ex. 39 at 20.  REDACTED
*See* Dkt. No. 273 Ex. 38 at § 5.2.  REDACTED              , these agreements provide absolutely no evidence that a 2.25%, uncapped, running royalty amounting to over $4 billion in annual payments is remotely reasonable.

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT
OF BREACH OF CONTRACT- 6

In contrast, the MPEG-LA pool rates (*see* Br. 1–2) are probative of a reasonable royalty for H.264 patents: they are rates actually charged by other holders of 2,339 patents essential to the standard, and actually paid by adopters who, like Microsoft, incorporate H.264 capability into complex, multi-featured products. Motorola's response to the MPEG-LA pool rate is a single sentence: "Pools have rates that are not negotiated and are purposefully low, having no relevance to a negotiated one-on-one license." (Opp. 5.)[7] But Motorola cannot credibly attack the MPEG-LA pool rates, given its earlier support for those rates when it was considering joining the new pool. In 2003, MPEG-LA issued a press release explaining the pool's basic licensing terms (and its annual caps, all below $5 million), and lists both Microsoft and Motorola among the patent owners "who have cooperated in the above terms[.]" Wion Decl. Ex. 5 (MPEG-LA 11/17/03 Press Release). REDACTED

REDACTED

Wion Decl. Ex. 6 (Motorola 11/03 Email to MPEG-LA). Motorola's current demand for $4 billion in annual royalties is orders of magnitude higher than the pool rates it endorsed in 2003 in representations to Microsoft and the public. Motorola's criticism that pool rates cannot be compared "to a negotiated one-on-one license" only serves to contrast SSO goals (widespread adoption of socially-beneficial standards) with Motorola's goal of patent hold-up, using its standard-essential patents as bullets in the gun pointed at prospective licensees. (*See* Dkt. No 213 ¶ 18.)

### B. Motorola's Demand for a Royalty on the Sales Prices of Microsoft's Customers' Products Was Completely Unreasonable.

REDACTED, contrary to Motorola's contention, did not enter into REDACTED

REDACTED (Opp. 22), REDACTED

---

[7] Motorola attempts to incorporate two and a half pages of a September 2011 brief (Dkt. No. 90 at 19–21) discussing patent pools. Motorola then argued that planned third-party discovery "will confirm the inapplicability of patent pool rates to the parties' current dispute." (*Id.* at 21.) Although seven months have passed, Motorola offers no evidence whatsoever that pool rates have "no relevance" to the RAND issues in this case.

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT
OF BREACH OF CONTRACT- 7

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

REDACTED                        As Motorola has acknowledged (*see* Br. Ex. 12 at 2530–31), REDACTED

REDACTED                              so these licenses do not validate Motorola's blatantly unreasonable demand that Microsoft pay a 2.25% royalty on the sales prices of computers running Windows. (*See* Br. 19.) Motorola falls back on a claim that this demand "was consistent with Motorola's practice of using the price of the end product as a royalty base" (Opp. 23)—but it is plainly *in*consistent because that "practice" (assuming it is probative of anything) was to use the price of the *licensee's* end product as a royalty base.

Motorola's "practice" of demanding royalties on the price of end products, as applied to Microsoft, violates the entire market value rule because Motorola's patents (let alone the standards) are not the basis for customer demand for those products. There is no contrary evidence. Motorola offers no meaningful explanation of why the Federal Circuit's requirements for reasonable royalty determinations in the patent damages context should be ignored. "Industry practice" and licenses to other standards used by unrelated products (*see* Opp. 19–21 & n. 12) cannot support a demand for a royalty based on the entire market value of Microsoft's (or even Microsoft's customers') products compliant with the 802.11 and H.264 standards, because those licenses have no relationship to "the relevant facts and circumstances of the particular case at issue." *Uniloc*, 632 F.3d at 1317–18. *See also Lucent Techs, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327–31 (Fed. Cir. 2009) (rejecting evidence of incomparable prior license agreements as "little more than a recitation of royalty numbers" because agreements were "radically different" in terms of structure and technology covered).

Motorola makes an awkward attempt to shift the blame to Microsoft for its excessive $4 billion royalty demand, arguing it was REDACTED REDACTED (Opp. 19.) But even leaving all other flaws in Motorola's arguments aside, Motorola's demands *are not based on Microsoft's sales*: as to Windows, they are based on

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT
OF BREACH OF CONTRACT- 8

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

*Microsoft's customers' sales*.[8]  The blatantly unreasonable size of Motorola's demand was the inevitable result of the blatantly unreasonable terms *Motorola* insisted on—that no matter what, Motorola always gets its "normal percentage of the end-product price." (Opp. 23.)  In a further attempt to blame Microsoft, Motorola offers up Microsoft's profits over the past five years as somehow supporting the reasonableness of Motorola's demands—only highlighting that over a five-year term, Motorola's $4 billion annual demand would swallow up 20% of Microsoft's profits (Opp. 19).[9]

Motorola resurrects its inexplicable reliance on *Quanta Computer Inc. v. LG Elecs., Inc.*, 553 U.S. 617 (2008), and the brazen argument that it was reasonable to demand $4 billion from Microsoft "in order to ensure that [Motorola's] downstream rights were protected." (Opp. 23.)  Patent exhaustion prevents a patent owner from controlling post-sale use of a licensee's products by demanding additional royalties from a licensee's customers.  *See Quanta*, 553 U.S. at 630.  Motorola thus correctly observes that patent exhaustion would prevent it from demanding additional royalties from computer manufacturers for its contribution to the H.264 standard as implemented in Windows, if Windows were licensed. (Opp. 23.)  This argument goes nowhere:  to evade the doctrine of patent exhaustion, Motorola's letters sought "to hold Microsoft responsible for collecting Motorola's normal percentage of the end-product price" (Opp. 23), but Motorola has not shown, and cannot show, that its demand of a 2.25% royalty on the price of a computer is anything but blatantly unreasonable for the use of the entire H.264 standard (much less for the use of Motorola's contribution to that standard), no matter the target of that unreasonable demand.

---

[8] The $4 billion figure is based on a extremely conservative estimate of a $500 average price for a Windows-based computer.  (*See* Br. 13.)

[9] In any event, evidence of Microsoft's overall profitability is inadmissible under Federal Circuit law as probative of a reasonable royalty.  *See Uniloc*, 632 F.3d at 1319.  *See also Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) ("[T]he financial standing of the defendant is inadmissible as evidence in determining the amount of compensatory damages to be awarded.").

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT
OF BREACH OF CONTRACT- 9

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

### C. Motorola's Demand for 802.11 Royalties Exceeding the Price of an 802.11 Chip Was Blatantly Unreasonable.

For its 802.11 standard-essential patents, Motorola sought a royalty for each Microsoft Xbox 360 greater than the entire market price of the 802.11 chipset in the Xbox. (Br. 16–17.) Motorola's threadbare defense of this facially absurd demand should be rejected:

> This is akin to valuing a music album, television show or movie based on the value of the blank CD or DVD recording medium. There is no necessary relationship between the value of the building blocks used to create the patented invention, and the value of the invention to the end product that uses it.

(Opp. 21.) The 802.11 chipset Microsoft purchases for inclusion in the Xbox 360 is not a blank medium upon which the 802.11 standard *will* be written—it already contains 802.11 technology. (*See* Dkt. No. 78 ¶ 4.)

### D. Motorola Confirms That Any Final "RAND" License Would Require Microsoft to Pay 2.25% of REDACTED to Motorola.

Motorola reiterates its position that any negotiation following its demand letters would REDACTED

REDACTED

.[10]   Motorola argues that its licenses REDACTED

REDACTED (Opp. 15) REDACTED

(*Id*). (*See also id.* at 5, 6; Dkt. No. 231 at 1, 3–4.) Motorola does not dispute that it demanded $4 billion in annual royalties. Instead, it merely objects to the implication that it demanded $4 billion in cash only, when in fact Motorola would be happy to accept some of this payment in REDACTED

REDACTED (Opp. 15, 18), REDACTED

REDACTED

REDACTED

---

[10] Motorola does not explain how its "practice" of demanding and REDACTED can be reconciled with its simultaneous insistence that "there is no one-size-fits-all set of RAND terms." (Opp. 2.)

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT
OF BREACH OF CONTRACT- 10

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1 REDACTED

2 REDACTED

(Opp. 6.) Motorola's *certainty* that it is entitled to demand and receive in any final license 2.25% of REDACTED (as measured by the price of end products) for its patents renders meaningless its emphasis elsewhere on the *un*certainty of the final, non-monetary contribution REDACTED            (*See* Opp. 6–7.) A RAND license may involve different forms of compensation, arrived at through bilateral negotiation. But regardless of whether determining a RAND royalty "is a complex exercise" (Opp. 2, 6–8), that issue is not presented by Microsoft's motion. The issue before the Court is whether Motorola's demands were RAND—and based on their terms, that is not a close question. Determining any final RAND royalty is for a subsequent phase of this case.

Any "bilateral negotiations" on Motorola's terms would have in fact been unilateral.[11] Shifting some cash to non-monetary compensation does not change the overall compensation demanded. Motorola makes clear that its opening demand would be exactly the same as its final demand—at least $4 billion REDACTED     flowing from Microsoft to Motorola every year. No finder of fact could determine this was reasonable.

### III. MOTOROLA'S DEMAND LETTERS BREACHED ITS RAND OBLIGATIONS.

As explained in Microsoft's opposition to Motorola's summary judgment motion, the parties agree that Motorola had no obligation to seek out licensees for its patents. (*See* Dkt. No. 269 at 6–7) Despite this, Motorola titles a subsection of its brief "Motorola's RAND Assurances Did Not Require It To Make Unsolicited RAND Offers To Microsoft," and completely mischaracterizes Microsoft's position as asking this Court "to find that the patent policies of the IEEE and the ITU obligate Motorola to make unsolicited, opening license

---

[11] Motorola's argument that Microsoft had a duty to negotiate anyway (*see* Opp. 6–10) is without merit and has already been rejected by this Court (*see* Dkt. No. 269 at 8–11).

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT
OF BREACH OF CONTRACT- 11

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1  offers" on RAND terms. (Opp. 11.) That is not Microsoft's position, as its opening brief and
2  opposition brief to Motorola's motion make clear. Motorola's RAND obligations require that
3  if an implementer asks for an offer, or if Motorola makes an offer without first being asked, the
4  offer must be on reasonable and non-discriminatory terms. (Br. 7–12.) The undisputed facts
5  show that whether or not it was required to do so, Motorola made offers in its October 2010
6  letters, and those demands were blatantly unreasonable.

7  Motorola confirms its concession that if the license terms in its demand letters were
8  blatantly unreasonable, Motorola breached the contracts (Opp. 11)—and the terms were
9  outrageous (Br. 12–22). But even if Motorola were correct that its obligations really only
10 concern "licenses, not offers," so that its offers need not even be reasonable (Opp. 12–13),
11 Motorola's brief confirms that *its final license demand would be the same as its initial demand*:
12 2.25% in REDACTED    based on the retail price of Microsoft's (or its customers') products.
13 Any uncertainty in "final RAND terms" (cross-licenses, patent transfers, etc.) over which
14 Motorola wrings its hands (Opp. 2, 6–7) is irrelevant in light of Motorola's insistence that it
15 always gets its 2.25% REDACTED      in the end. (*See* Opp. 5, 6, 15; *see also* Dkt. No. 231
16 at 1, 3–4.) Motorola argues that its RAND obligations only require that its final agreements be
17 reasonable, but then confirms that its final agreements would in fact be just as unreasonable as
18 its opening demands.

19                                  **CONCLUSION**

20  Microsoft's motion for summary judgment of breach of contract should be granted.
21  DATED this 20th day of April, 2012.

22                      DANIELSON HARRIGAN LEYH & TOLLEFSON LLP

23                      By     s/ Arthur W. Harrigan, Jr.
                               Arthur W. Harrigan, Jr., WSBA #1751
24                             Christopher Wion, WSBA #33207
25                             Shane P. Cramer, WSBA #35099

26

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT
OF BREACH OF CONTRACT- 12

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

By    s/ T. Andrew Culbert
       T. Andrew Culbert, WSBA #35925
       David E. Killough, WSBA #40185
       MICROSOFT CORPORATION
       1 Microsoft Way
       Redmond, WA 98052
       Phone: 425-882-8080
       Fax: 425-869-1327

       David T. Pritikin, *Pro Hac Vice*
       Richard A. Cederoth, *Pro Hac Vice*
       Constantine L. Trela, Jr., *Pro Hac Vice*
       Douglas I. Lewis, *Pro Hac Vice*
       John W. McBride, *Pro Hac Vice*
       Nathaniel C. Love, *Pro Hac Vice*
       SIDLEY AUSTIN LLP
       One South Dearborn
       Chicago, IL 60603
       Phone: 312-853-7000
       Fax: 312-853-7036

       Carter G. Phillips, *Pro Hac Vice*
       SIDLEY AUSTIN LLP
       1501 K Street, N.W.
       Washington, D.C. 20005
       Phone: 202-736-8000
       Fax: 202-736-8711

       Counsel for Microsoft Corporation

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT
OF BREACH OF CONTRACT- 13

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

**CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

**Attorneys for Defendants Motorola Solutions, Motorola Mobility and General Instrument Corporation**

Ralph Palumbo
Philip S. McCune
Lynn M. Engle
Summit Law Group

Steven Pepe
Jesse J. Jenner
Norman Beamer
Paul M. Schoenhard
Ropes & Gray

                s/ Linda Bledsoe
                LINDA BLEDSOE

MICROSOFT'S REPLY IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT
OF BREACH OF CONTRACT- 14

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717