The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>MOTOROLA, INC., MOTOROLA MOBILITY, INC., and GENERAL INSTRUMENT CORPORATION,<br><br>Defendants. | CASE NO. C10-1823-JLR<br><br>MOTOROLA'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>**NOTE ON MOTION CALENDAR:**<br>**Friday, April 20, 2012**<br><br>**HEARING DATED:  May 7, 2012**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**REDACTED** |

MOTOROLA'S REPLY IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

**TABLE OF CONTENTS**

Page(s)

I.   Introduction ................................................................................................................ 1

II.  Argument .................................................................................................................... 2

     A.   Both Motorola And Microsoft Are Required To Negotiate In Good Faith ............ 2

     B.   Microsoft Failed To Satisfy The Conditions That It Must Apply For A
          RAND License And Negotiate In Good Faith ......................................................... 5

          1.   Microsoft failed to apply for a license in good faith .................................... 5

          2.   Microsoft failed to negotiate in good faith ................................................... 7

     C.   Microsoft's Remaining Arguments Are Irrelevant .................................................. 9

III. Conclusion ................................................................................................................ 10

MOTOROLA'S REPLY IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT - i
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*8621 Ltd. P'ship v. LDG, Inc.*,
    169 Md. App. 214, 900 A.2d 259 (2006)..................................................................................12

*Andrews v. Blake*,
    205 Ariz. 236, 69 P.3d 7 (2003)..............................................................................................12

*Cambridge Townhomes, LLC v. Pac. Star Roofing, Inc.*,
    166 Wash. 2d 475, 209 P.3d 863 (2009)..................................................................................3

*Cave Hill Corp. v. Hiers*,
    264 Va. 640, 570 S.E.2d 790 (2002)......................................................................................12

*Cavell v. Hughes*,
    629 P.2d 927 (Ct. App. Wash. 1981)....................................................................................3, 7

*CHG Int'l, Inc. v. Robin Lee, Inc.*,
    35 Wash. App. 512, 667 P.2d 1127 (Ct. App. 1983)................................................................3

*City of Dardanelle v. City of Russellville*,
    372 Ark. 486, 2008 WL 517349 (2008) ................................................................................12

*First Nat'l Bank v. Burton, Parsons & Co.*,
    57 Md.App. 437, 470 A.2d 822, *cert. denied,* 300 Md. 88, 475 A.2d 1200 (1984) ...............11

*Lonsdale v. Chesterfield*,
    99 Wash. 2d 353 662 P.2d 385 (1983)....................................................................................3

*Maslow v. Vanguri*,
    168 Md.App., 896 A.2d 408, 2006 WL 907775 (Ct. App. 2006)...........................................12

*Metropolitan Park Dist. of Tacoma v. Griffith*,
    106 Wash. 2d 425, 723 P.2d 1093 (1986)...............................................................................3

*Riverside South Planning Corp. v. CRP/Extell Riverside, L.P.*,
    13 N.Y.3d 398, 892 N.Y.S.2d 303, 920 N.E.2d 359 (2009)...................................................11

*Ross v. Harding*,
    391 P.2d 526 (Wash. 1964).....................................................................................................5

MOTOROLA'S REPLY IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT - ii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

**OTHER AUTHORITIES**

11 Williston on Contracts § 32:5 (4th ed. 2011)..................................................................3

13 Williston on Contracts § 38:16 (4th ed. 2011)................................................................5

MOTOROLA'S REPLY IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT - iii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## I. INTRODUCTION

Nothing in Microsoft's opposition to Motorola's motion for partial summary judgment (Dkt. No. 269) changes the fact that Microsoft failed to apply and negotiate in good faith for a RAND license. Instead, Microsoft attempts to excuse its behavior by asserting that it ***never*** had ***any*** duty to apply and negotiate in good faith for such a license. Opp. at 1-2. But the SSO policies establish such a requirement, as a condition to Microsoft's right to a RAND license. Moreover, the undisputed facts establish unequivocally that Microsoft did not act in good faith. Indeed, Microsoft does not even attempt to dispute any fact presented by Motorola regarding Microsoft's pre-suit conduct, including that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.[1]

Microsoft's opposition further reveals its ████████████ underlying this action. Microsoft knew when it was designing its Xbox and Windows 7 products that it needed to use the 802.11 wireless standard and H.264 video compression standard for its products to be marketable. Microsoft admits that it knew about Motorola's SSO submissions, which disclosed that Motorola had portfolios of patents that were essential to the practice of these standards. But Microsoft did not apply and negotiate for a license. Instead, it went ahead with its product development, reaping billions of dollars of revenue along the way – without paying Motorola one cent in compensation.

In effect, Microsoft has attempted to convert the SSO policies, and Motorola's RAND assurances under those policies, into an insurance policy against Microsoft's patent infringement liability. According to Microsoft, it can simply ignore and willfully infringe standards-essential

---

[1] "Ex. __" refers to the stated Exhibit to the Declaration of Kevin J. Post, submitted in support of Motorola's Motion for Partial Summary Judgment (Dkt. No. 230), the Second Declaration of Kevin J. Post, submitted in support of Defendants' Opposition to Microsoft's Motion for Summary Judgment of Breach of Contract (Dkt. No. 273); or the Third Declaration of Kevin J. Post, submitted concurrently herewith. "Taylor Decl. ¶ __" refers to the stated paragraph of the Declaration of K. McNeill Taylor, Jr. (Dkt. No. 232). In this brief, all emphasis is added, unless otherwise indicated.

MOTOROLA'S REPLY IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT - 1
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

patents encumbered with RAND assurances until the moment that the patent holder (such as Motorola here) offers Microsoft a license. Then, Microsoft can refuse to engage in good faith negotiations and instead bring suit for breach of contract on the ground that the offer was unreasonable – merely by alleging that it is so. This is not what the SSOs envisioned.

## II.   ARGUMENT

### A.   Both Motorola and Microsoft Are Required to Negotiate in Good Faith.

In an attempt to divert attention from its complete lack of good faith in pursuing a license to Motorola's 802.11 or H.264 portfolios, Microsoft argues that the requirement to apply for a license and negotiate in good faith simply is not a requirement of the SSO patent policies.[2] Opp. at 8-11. In doing so, Microsoft ignores the plain language of the LOAs and the IEEE and ITU patent policies, which state that RAND license terms are left for negotiation between the patent holder and the prospective licensee.[3] For example, the ITU's Common Patent Policy states that "*negotiations* are left to the parties," "The Patent Holder is willing to *negotiate* licenses with other parties…." and that "The detailed arrangements arising from patents (licensing, royalties, etc.) *are left to the parties concerned*, as these arrangements might *differ from case to case*." Ex. 13 at 8. The IEEE Bylaws state it "is not responsible … for determining whether any licensing terms or conditions provided in connection with submission of a Letter of Assurance, if any, or [if] any licensing agreements are reasonable or non-discriminatory" — *i.e.,* the parties themselves must negotiate RAND terms. Ex. 12 at 16. Consistent with the patent policies, the LOAs establish that Motorola has an obligation to negotiate RAND license terms with an *applicant* for a RAND license.

---

[2] Microsoft argues that this Court has already "rejected Motorola's 'good faith' argument" in deciding Motorola's motion to dismiss. Opp. at 8. Because the Court's decision was in the context of a motion to dismiss, it was made on the pleadings and without the benefit of the complete contractual language and extrinsic evidence (including powerful admissions in Microsoft's own documents) now available to the Court. Dkt. No. 66 at 5.

[3] It is also significant that neither the LOAs nor the SSOs' patent policies specify RAND terms or provide any criteria for determining RAND terms.

MOTOROLA'S REPLY IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT - 2
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1  "Courts should not adopt a contract interpretation that renders a term ineffective or meaningless." *Cambridge Townhomes, LLC v. Pac. Star Roofing, Inc.*, 166 Wash. 2d 475, 487, 209 P.3d 863 (2009).  Moreover, "[a]n interpretation which gives effect to all provisions of the contract is preferred to one which renders a portion of the writing superfluous, useless or inexplicable."  11 Williston on Contracts § 32:5 (4th ed. 2011).  The LOAs specifically state that RAND licenses are to be granted to "*applicants*," and that "*negotiations*" for such licenses are "left to the *parties*."  Dkt. No. 231 at 15-19.  Those words must be given meaning.

Under Washington law, every contract involves an implied duty of good faith and fair dealing that obligates the parties "to cooperate with each other so that each may obtain the full benefit of performance."  *Metropolitan Park Dist. of Tacoma v. Griffith*, 106 Wash. 2d 425, 437, 723 P.2d 1093 (1986); *see also Lonsdale v. Chesterfield*, 99 Wash. 2d 353, 357, 359 662 P.2d 385 (1983); *Cavell v. Hughes*, 629 P.2d 927, 929 (Ct. App. Wash. 1981); *CHG Int'l, Inc. v. Robin Lee, Inc.*, 35 Wash. App. 512, 667 P.2d 1127 (Ct. App. 1983).  This obligation to act in good faith extends not just to Motorola, but to Microsoft, as well.

Microsoft's position that as a third party beneficiary it ***does not*** have a duty to negotiate in good faith defies common sense, is contrary to the SSO policies and LOAs, and – significantly – contradicts Microsoft's own *ante litem motam* statements about RAND requirements.  As Motorola has pointed out (Motorola Br. at 17), a presentation that involved Microsoft's General Manager of Standards Strategy, Amy Marasco, states:

> RAND/FRAND means licensor is prepared to negotiate in good faith to determine licensing terms ***provided that counterparty also demonstrates good faith***.  'It takes two to make a license agreement':  all a patent owner can do is make a genuine, *bona fide* licensing offer.

Ex. 18 at 12 (emphasis in original).  Ms. Marasco also distributed a paper stating:



MOTOROLA'S REPLY IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT - 3
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Ex. 55 at MS-MOTO_1823_00000908324. In addition, in a June 14, 2011 letter sent to the Federal Trade Commission, Microsoft stated:

> Any uniform declaration that such [injunctive] relief would not be available if the patent holder has made a commitment to offer a RAND license for its essential patent claims in connection with a standard *may reduce any incentives that implementers might have to engage in good faith negotiations with the patent holder.*

Ex. 20 at 13. And Michele Herman, a former attorney for Microsoft, both as in-house counsel and outside counsel, separately submitted the following statement to the FTC:

> [T]he patentee should be able to require that the infringer enter into a RAND license considering the specific facts and circumstances. *Those facts and circumstances should not only take into account the patentee's conduct but also the infringer's conduct. For example, did the infringer participate in the standards development and have access to the patentee's patent declaration but fail to seek a license? Did the patentee offer the infringer a license that the infringer refused to negotiate in good faith?* . . . These questions would need to be explored before making any judgment about the appropriate use of an injunction or the formulation of damages and future royalty payments.

Ex. 56 at 12-13; Ex. 23 at 1 ("[P]atentees may not refuse to offer licenses under the essential patent claims contained in such patents *to licensees willing to negotiate in good faith*.").[4]

RAND terms are the product of, and cannot be determined without, good faith negotiations. That is precisely why Motorola starts with its standard offer based on its executed licenses – prior to negotiation, this is a reasonable starting point to kick off licensing discussions. Without both parties negotiating in good faith towards a resulting RAND license, the process breaks down — as it did here. Microsoft's rejection of the requirement that it negotiate in good faith, if accepted, would inexorably lead to more litigated disputes over standard-essential patent licensing. This is not the process envisioned by the SSOs or their patent policies, nor is it how the RAND framework has worked in the real world.

---

[4] Others in the industry acknowledge this good-faith requirement. In an August 5, 2011 Letter to the FTC, IBM stated, "[A]n implementer who rejects a bona fide RAND license offer and refuses to negotiate should not seek cover under the [RAND] commitment." Ex. 57 at p. 20. And an Innovation Alliance letter to the FTC on the same date stated: "[T]here is no justification for automatically denying an injunction to a patentee that has made a RAND commitment *if the infringer either refuses (i) to accept any license where the license proposal is RAND, or (ii) to negotiate in good faith to take a license on RAND terms* and continues to infringe." Ex. 58 at p. 5.

MOTOROLA'S REPLY IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT - 4
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

In its opposition, Microsoft argues that if an applicant's willingness to negotiate were a condition precedent to the RAND obligation then Motorola could "absolve itself of that obligation with a preemptive strike." Opp. at 10. That misstates Motorola's position. All Microsoft had to do to avoid such an absolution was to engage in good-faith negotiations when approached by Motorola. Microsoft also states, "as Motorola would have it, until the licensee engages in good faith negotiations, the RAND commitments are altogether irrelevant." Opp. at 10. That is not Motorola's position either. As Motorola has demonstrated, and Microsoft otherwise acknowledges, the duty to negotiate in good faith is mutual. Motorola must make a good-faith offer and be willing to negotiate in good faith towards RAND license terms. Similarly, Microsoft must make a good-faith application – or, at least, respond in good faith to Motorola's letters – and then negotiate in good faith towards RAND license terms.[5] If an applicant fails to satisfy these conditions, Motorola (or any other standard-essential patent holder) is within its rights to bring a patent infringement action and seek injunctive relief against an implementer of its essential patents who has failed or refused to apply and negotiate in good faith. Dkt. No. 143 at 7-10. To find otherwise would incentivize an accused infringer simply to hold out – as Microsoft and others have recognized. *See, e.g.*, n.6, *supra*; Ex. 20 at 13:

> Any uniform declaration that [injunctive] relief would not be available if the patent holder has made a commitment to offer a RAND license for its essential patent claims in connection with a standard ***may reduce any incentives that implementers might have to engage in good faith negotiations with the patent holder***.

**B.  Microsoft Failed to Satisfy the Conditions That It Must Apply for a RAND License and Negotiate in Good Faith.**

**1.  Microsoft Failed to Apply for a License in Good Faith.**

Microsoft mischaracterizes Motorola's position regarding the application requirement. Opp. at 11-12. Microsoft did not repudiate the benefits it might otherwise have had under

---

[5] The requirement that an applicant negotiate in good faith is a condition precedent to Motorola's RAND obligations. As Microsoft's authority, *Ross v. Harding*, 391 P.2d 526, 531 (Wash. 1964), points out, "***[a]ny words*** which express, ***when properly interpreted***, the idea that the performance of a promise is ***dependent on some other***

MOTOROLA'S REPLY IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT - 5
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1  Motorola's RAND promises solely because it failed to proactively apply for a license. Rather,
2  Microsoft's repudiation resulted from failure to respond in good faith to Motorola's letters (i.e.,
3  apply for a license), coupled with its outright refusal to negotiate in good faith towards a RAND
4  license. Indeed, Microsoft's filing of the complaint in this action rather than responding to
5  Motorola's letters is exactly the type of "positive statement or action" that Microsoft's own cases
6  require to establish repudiation. Opp. at 11-12.

7  Microsoft argues that interactions between Microsoft and Motorola, together with
8  Motorola's October letters, waived Microsoft's duty to make a good-faith application for a
9  RAND license. Opp. 5-8. Not so. ████████████████████████████████████
10 ████████████████████████████████████████████████████████████████████████
11 ████████████████████████████████████████████████████████████████████████
12 ████████████████████████████████████████████████████████████████████████
13 ████████████████████████████████████████████████████████████████████████
14 ████████████████████████████████████████████████████████████████████████
15 ██████████████████████████████████████████████████

16  Microsoft next relies on statements from Motorola's expert, Richard Holleman, to argue
17 that it is an applicant. Again, not so. Microsoft quotes Mr. Holleman's testimony that a RAND
18 promisor cannot evade its RAND assurances by "beating potential licensees to the punch by
19 making the first contact with a potential licensee." Opp. at 7. Motorola agrees with this
20 testimony, and the other testimony quoted by Microsoft, but that testimony is not pertinent to the
21 issues here. As noted above, Microsoft could have qualified as an "applicant" if it simply had
22 responded in good faith to Motorola's letters – but it did not do so.

23  The excerpts of Mr. Holleman's testimony relied on by Microsoft simply confirm that, in
24 some form, Microsoft must have applied in good faith for a license. As Mr. Holleman testified:

---

*event* will create a condition" and "may be either express, implied in fact, or constructive." 391 P.2d at 530-31; 13 Williston on Contracts § 38:16 (4th ed. 2011).

MOTOROLA'S REPLY IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT - 6
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

"*the ITU and the IEEE only require good faith negotiations with prospective licensees who apply for licenses*, meaning these prospective licensees who contact the patent holder with a specific request for a license." Ex. 10 at 10.  Mr. Holleman repeatedly stressed this point in his testimony. *Id*. at 8, 13, 15; Ex. 59 (Holleman Tr. at 1326-27). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Therefore, the fact that Motorola made an unsolicited offer for two specific portfolios of patents does not constitute a waiver of the condition that Microsoft must apply for a license (by responding in good faith to Motorola) and then negotiate in good faith towards a RAND license.[6] It would have been a different story had Microsoft responded to Motorola's offer, indicating that it wanted to negotiate a license.  But, again, that did not happen.[7]

### 2. Microsoft Failed to Negotiate in Good Faith.

Microsoft argues that any requirement it had to negotiate in good faith was extinguished by Motorola's October letters, which Microsoft asserts "demanded that Microsoft accept blatantly unreasonable terms."  Opp. at 11.  Motorola has separately demonstrated that the

---

[6] Waiver, relied on by Microsoft and discussed in Corbin on Contracts, is only relevant when the "condition can no longer be performed" — as in the case of a missed franchise development deadline, or past due payments, or past due delivery of goods, etc.  *See* § 40.4.  Although the "condition[s] ha[d] not [yet] been performed" at the time Motorola sent the letters, Microsoft still had every opportunity to respond in good faith by making a counteroffer or inquiring to clarify Motorola's willingness to negotiate different license terms, or otherwise engaging Motorola in good faith.  Also, Microsoft's reliance on *Cavell v. Hughes*, 629 P.2d 927 (Wash. App. 1981) is entirely misplaced.  There the Court ***did not reach*** the issue of waiver of condition.  *See* 629 P.2d at 929, n.3.  Rather, the condition in question was excused because the promisor had hindered the performance of the condition.  *See* 629 P.2d at 929.

[7] Microsoft's failure to apply is also relevant to whether Motorola's October letters were reasonable.  Given that Motorola had no confidential information from Microsoft about its business, it is difficult to see how Motorola could have done anything more or different than to offer its standard RAND licensing terms – terms that had been offered to many other prospective RAND licensees.  Taylor Decl ¶ 15; Ex. 2 (Dailey Tr. 2539-41, 2628-29, 2632).  But the record shows that Microsoft had no intention of actually engaging in such good-faith negotiation, instead rushing to court in order to avoid such negotiations.  Dkt. No. 231 at 8; Dkt. No. 274 at 2-4.

MOTOROLA'S REPLY IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT - 7
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   October 2010 letters were reasonable and it is not necessary to repeat that discussion here. *See,*

2   *e.g.*, Dkt. No. 90; Dkt. No. 274.

3   ████████████████████████████████████████
4   ████████████████████████████████████████
5   ████████████████████████████████████████
6   ████████████████████████████████████████
7   ████████████████████████████████████████
8   ████████████████████████████████████████
9   ████████████████████████████████████████
10  ████████████████████████████████████████
11  ████████████████████████████████████████
12  █████████████████
13      ████████████████████████
14  ████████████████████████████████████████
15  ████████████████████████████████████████
16  ██████████  ████████████████
17  ████████████████████████████████████████
18  ████████████████████████████████████████
19  ████████████████████████████████████████
20  ████████████████████████████████████████
21  ████████████████████████████████████████
22  ███████████████████████████████

23

24  [8] The first license agreement with RIM in 2003 included an upfront lump sum payment. As it turned out, RIM paid a lower effective rate than 2.25% because RIM's sales between 2003 and 2007 were much greater than
25  predicted. Ex. 60, Sonnentag Rough Tr. 72-73 ("[I]if you looked at the amount of value that was received after the term of the [RIM] agreement and you realized how many products RIM had sold, … you would realize there was an
26  effective rate of something less than 2.25 percent); Ex. 61, Blasius Decl. ¶ 4; Ex. 62, RIM Complaint ¶¶ 88-89.

MOTOROLA'S REPLY IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT - 8
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1    Then, Microsoft complains that Motorola did not perform some mathematical analysis of
2 the value of its essential patents as they related to the 802.11 and H.264 standards before sending
3 its letters.  Opp. at 4.  But there was no need to do so.  ██████████████████████
4 ████████████████████████████████████████████████████████████████
5 ████████████████████████████████████████████████████████████████
6 ████████████████████████████████████████████████████████████████
7 ██████   ███████████████████████████████████
8 ████████████████████████████████████████████████████████████████
9 ████████████████████████████████████████████████████████████████
10 ███████████████████████████████████████████████
11      ██████████████████████████████████████████████████████
12 ████████████████████████████████████████████████████████████████
13 ████████████████████████████████████████████████████████████████
14 ████████████████████████████████████████████████████████████████
15 ████████████████████████████████████████████████████████████████
16 ████████████████████████████████████████████████████████████████
17 ████████████████████████████████████████████████████████████████
18 ████████████████████████████████████████████████████████████████
19 ████████████████████████████████████████████████████████████████
20 ████████████████████████████████████████

21   **C.   Microsoft's Remaining Arguments Are Irrelevant.**

22    Microsoft makes several additional arguments in its opposition about (1) the cases in
23 Germany pending between the parties; (2) the SD Card Association; and (3) Microsoft's
24 ActiveSync licensing program.  These are either legally or factually irrelevant, or both.  For
25 example, Microsoft points to Motorola's rejection of Microsoft's bond offer of $2 million as
26 evidencing a lack of good faith.  Opp. at 2.  Motorola rejected this offer as unreasonable because

MOTOROLA'S REPLY IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT - 9
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

it was based on rates set by a patent pool — which, as Motorola explained in the German proceeding, and has demonstrated elsewhere in this case, is not a reasonable basis for determining a RAND rate (if anything it would be blatantly unreasonable to use a pool rate – designed to drive down the cost for licensees rather than to compensate licensors – to set a RAND rate).  Dkt. No. 90 at 19-21.  And as another example, Microsoft's statements that no RAND commitment was made in relation to its ActiveSync program are inaccurate.  As Microsoft's website makes clear, Microsoft has committed that it will license all of its patents that cover its Open Protocols – including ActiveSync – on "reasonable and non-discriminatory terms, at low royalty rates."[9]

Microsoft also repeatedly mischaracterizes Motorola's position regarding an opening "RAND offer" and takes a statement out of context from Motorola's opening brief.  *See, e.g.*, Opp. at 3, 10.  As Motorola explained in its opposition to Microsoft's motion for summary judgment, Motorola's RAND assurances do not require it to make unsolicited RAND offers to Microsoft.  Dkt. No. 274 at 11-13.  Rather, an opening offer must be made in good faith.  *Id*. at 11; *see also* Section II.a, *supra*.  The statement in Motorola's opening brief (Br. at 18) cited by Microsoft is directed to that obligation.  Motorola Br. at 14-15.

**III.   CONCLUSION**

Microsoft failed to satisfy the conditions of applying for and negotiating for a RAND license in good faith, and thereby repudiated any right to a RAND license that it may have had.  For these reasons, Motorola respectfully submits that the Court should enter partial summary judgment in Motorola's favor, dismissing Microsoft's breach of contract and promissory estoppel causes of action, and declaring that Motorola no longer has any RAND obligation to Microsoft.  This, of course, does not preclude the parties from negotiating a resolution to this

---

[9] *See* "Microsoft Open Specification Interoperability Principles," *available at* http://www.microsoft.com/openspecifications/en/us/programs/other/interoperability-principles/default.aspx.

MOTOROLA'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT - 10
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

dispute, or indeed all of the parties' disputes, and Motorola remains willing to do so, independent of the repudiated RAND assurances.

In the event the Court determines Microsoft did not repudiate, Motorola submits that the Court – consistent with Microsoft's statements that it wants to take a RAND license – should affirm that both Motorola and Microsoft continue to have a duty to engage in good faith negotiations for such a license.  Doing so will create an incentive for the parties to engage in good-faith negotiations, which will be strong given that the Court could determine, based on future conduct, that one party or the other has not negotiated in good faith.

We understand that the Court intends to determine all material RAND license terms for the parties if they are not able to do so themselves.  As demonstrated by the ▮ Motorola/RIM license (Ex. 5), determining the RAND license terms requires more than deciding an appropriate royalty rate.  Other material terms must be determined, including whether the rate is worldwide or country-specific, the nature, scope and value of grant back license, the specifics of defensive suspension, etc. and, indeed, how the rate is affected by the other terms (e.g., how much, if at all, should the rate be reduced to account for the grant-back license from Microsoft).  To our knowledge, no court has ever determined RAND license terms.  Nor is there any precedent to guide the Court regarding criteria for determining RAND terms.  In addition, courts uniformly hold that the function of the court is to construe the contract made by the parties, not to make a contract for them.  Commercial agreements to negotiate upon terms and conditions to be decided ("agreements to agree") are generally held to be unenforceable, and we have found no exception.[10]

---

[10] *Riverside South Planning Corp. v. CRP/Extell Riverside, L.P.*, 13 N.Y.3d 398, 892 N.Y.S.2d 303, 920 N.E.2d 359 (2009) (Courts may not by construction add or excise terms and thereby make a new contract for the parties under the guise of interpreting the writing); *Cave Hill Corp. v. Hiers*, 264 Va. 640, 570 S.E.2d 790 (2002) (The function of the court is to construe the contract made by the parties, not to make a contract for them); *First Nat'l Bank v. Burton, Parsons & Co.*, 57 Md. App. 437, 450, 470 A.2d 822, *cert. denied,* 300 Md. 88, 475 A.2d 1200 (1984) (quoting 1 *Corbin on Contracts* § 95) ("An agreement that omits an important term, or is otherwise too vague or indefinite with respect to essential terms, is not enforceable"); *Maslow*, 168 Md. App. at 322, 896 A.2d 408, 2006 WL 907775 (The parties to a contract "must have expressed their intentions in a manner that is capable of

MOTOROLA'S REPLY IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    We are aware of one unreported case, *Pharmathene, Inc. v. Siga Technologies, Inc.*,
2 (decided under Delaware law) that considered specific performance of an agreement to negotiate
3 in good faith (copy at Ex. 63).  While stating in dictum that specific performance "is likely a
4 permissible remedy for breach of an agreement to negotiate in good faith," the court considered
5 the difficulties of doing so and then ***denied*** the request to order specific performance.

6    For the foregoing reasons, Motorola submits that, before considering whether it can or
7 should make a RAND license for the parties, the Court should determine at a further status
8 conference whether each party has engaged in good faith negotiations.  Only if the Court
9 determines that both parties have acted in good faith but they still have a genuine, good-faith
10 dispute regarding the material RAND terms should the Court then consider, in light of the
11 authorities cited herein and the conduct of the parties prior to trial, the appropriateness of
12 deciding some or all RAND license terms.

---

understanding. It is not even enough that they have actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of that agreement are. Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract"); *First Nat'l Bank*, 57 Md. App. at 448-450, 470 A.2d 822 (quoting Corbin, *supra*) ("A court cannot enforce a contract unless it can determine what it is"…"Because courts may not cure indefinite or vague contract language by supplying missing contract terms or definitions, commercial agreements to negotiate upon terms and conditions to be decided are unenforceable."); *8621 Ltd. P'ship v. LDG, Inc.*, 169 Md. App. 214, 227, 900 A.2d 259, 266-67 (2006) (When essential elements of complex real estate project are reserved for the future agreement of both parties, there may be no enforceable deal); *Andrews v. Blake,* 205 Ariz. 236, 69 P.3d 7 (2003) (Courts will go a long way to protect persons on the grounds of fraud, waiver, or estoppel, or part performance but they cannot, and will not, make a new contract for the parties and specifically compel its performance); *City of Dardanelle v. City of Russellville*, 372 Ark. 486, 2008 WL 517349 (2008) (Supreme Court cannot make a contract for the parties but can only construe and enforce the contract that they have made).

MOTOROLA'S REPLY IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT - 12
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

DATED this 20th day of April, 2012.

Respectfully submitted,

SUMMIT LAW GROUP PLLC

By */s/ Ralph H. Palumbo*
   Ralph H. Palumbo, WSBA #04751
   Philip S. McCune, WSBA #21081
   Lynn M. Engel, WSBA #21934
   *ralphp@summitlaw.com*
   *philm@summitlaw.com*
   *lynne@summitlaw.com*

By */s/ K. McNeill Taylor, Jr.*
   K. McNeill Taylor, Jr.
   MOTOROLA MOBILITY, INC.
   MD W4-150
   600 North U.S. Highway 45
   Libertyville, IL  60048-1286
   Phone:  858-404-3580
   Fax:  847-523-0727

And by

   Steven Pepe (*pro hac vice*)
   Jesse J. Jenner (*pro hac vice*)
   Stuart W. Yothers (*pro hac vice*)
   Ropes & Gray LLP
   1211 Avenue of the Americas
   New York, NY  10036-8704
   (212) 596-9046
   *steven.pepe@ropesgray.com*
   *jesse.jenner@ropesgray.com*
   *stuart.yothers@ropesgray.com*

   Norman H. Beamer (*pro hac vice*)
   Gabrielle E. Higgins (*pro hac vice*)
   Ropes & Gray LLP
   1900 University Avenue, 6th Floor
   East Palo Alto, CA  94303-2284
   (650) 617-4030
   *norman.beamer@ropesgray.com*
   *gabrielle.higgins@ropesgray.com*

MOTOROLA'S REPLY IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT - 13
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1
2
3
4
5

Paul M. Schoenhard (*pro hac vice*)
Kevin J. Post (*pro hac vice*)
Ropes & Gray LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC 20005-3948
(202) 508-4693
*paul.schoenhard.@ropesgray.com*
*kevin.post@ropesgray.com*

6
7

*Attorneys for Motorola Solutions, Inc., Motorola Mobility, Inc., and General Instrument Corporation*

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

MOTOROLA'S REPLY IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT - 14
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Arthur W. Harrigan, Jr., Esq.
Christopher T. Wion, Esq.
Shane P. Cramer, Esq.
Danielson, Harrigan, Leyh & Tollefson LLP
*arthurh@dhlt.com*
*chrisw@dhlt.com*
*shanec@dhlt.com*

Richard A. Cederoth, Esq.
Brian R. Nester, Esq.
David T. Pritikin, Esq.
Douglas I. Lewis, Esq.
John W. McBride, Esq.
David Greenfield, Esq.
William H. Baumgartner, Jr., Esq.
David C. Giardina, Esq.
Carter G. Phillips, Esq.
Constantine L. Trela, Jr., Esq.
Ellen S. Robbins, Esq.
Nathaniel C. Love, Esq.
Sidley Austin LLP
*rcederoth@sidley.com*
*bnester@sidley.com*
*dpritikin@sidley.com*
*dilewis@sidley.com*
*jwmcbride@sidley.com*
*david.greenfield@sidley.com*
*wbaumgartner@sidley.com*
*dgiardina@sidley.com*
*cphillips@sidley.com*
*ctrela@sidley.com*
*erobbins@sidley.com*
*nlove@sidley.com*

T. Andrew Culbert, Esq.
David E. Killough, Esq.
Microsoft Corp.
*andycu@microsoft.com*
*davkill@microsoft.com*

DATED this 20th day of April, 2012.

/s/ *Marcia A. Ripley*
Marcia A. Ripley

MOTOROLA'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001