# Exhibit A

```
 1              UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF WASHINGTON
 2                    IN SEATTLE

 3   ------------------------------------------------------

 4   MICROSOFT CORPORATION,        )
                                   )
 5             Plaintiff,          )   No. C10-1823JLR
                                   )
 6      v.                         )
                                   )
 7   MOTOROLA, INCORPORATED,       )
                                   )
 8             Defendant.          )

 9
     ------------------------------------------------------
10
                     TELEPHONE CONFERENCE
11
     ------------------------------------------------------
12

13          BEFORE THE HONORABLE JAMES L. ROBART
             UNITED STATES DISTRICT COURT JUDGE
14

15                  February 13, 2012

16

17   APPEARANCES:

18   For the Plaintiff:        Arthur Harrigan
                               DANIELSON HARRIGAN LEYH &
19                             TOLLEFSON

20   For the Defendant:        Jesse J. Jenner
                               ROPES & GRAY
21
     Also Present:             Christopher Wion
22                             Lynn Engel
                               Ralph Palumbo
23                             Philip McCune
                               Andy Culbert
24                             Rick Cederoth
                               Steve Pepe
25
```

```
 1          THE COURT:  Good afternoon, counsel.  This is
 2   Judge Robart.
 3          MR. WION:  Good afternoon, your Honor.
 4          MR. HARRIGAN:  Good afternoon.
 5          THE COURT:  Why don't we do appearances, and then
 6   we will go from there?
 7          MR. HARRIGAN:  Your Honor, this is Art Harrigan.
 8   With me around this telephone are Chris Wion, my partner,
 9   and Andy Culvert from Microsoft.  On the phone from
10   Chicago is Mr. Cederoth from the Sidley firm.
11          THE COURT:  All right.  Who is going to be
12   speaking on behalf of Microsoft?
13          MR. HARRIGAN:  I will be, your Honor.
14          RALPH PALUMBO:  This is Ralph Palumbo on behalf of
15   Motorola.  I believe on the phone we have Mr. Jenner --
16          MR. JENNER:  Good morning, your Honor.
17          RALPH PALUMBO:  -- Mr. McCune, Ms. Engel.  Is
18   there anyone else on the phone?
19          MR. PEPE:  Yes, Steve Pepe here.  With me is Jesse
20   Jenner.  Kevin Post is on the phone in another of our
21   offices.
22          RALPH PALUMBO:  And Mr. Jenner will be speaking
23   for us, your Honor.
24          THE COURT:  Thank you.  Counsel, just in your
25   honor I am wearing my black robe since that makes me
```

1    infallible.

2        I am here to announce that we are opening the second

3    front in this war, namely the RAND contract issues.  I am

4    hoping that you all will help me feel my way through this.

5        I will tell you that we are within a week to ten days

6    of ruling on Microsoft's motion for partial summary

7    judgment, which is found in the docket at 77.  Anything

8    that I say today shouldn't be taken as we have made up our

9    mind on that, but there are obviously some issues in there

10   that we will need your help with.

11       Just so that we will get off on a solid footing here,

12   in Microsoft's memorandum, Page 9 of 31, it sets forth

13   what it says are the four summary judgments -- partial

14   summary judgments that it seeks in this.  The first of

15   which is, and I am reading Microsoft's language, "Motorola

16   entered into binding contractual commitments with the

17   Institute of Electrical and Electronics Engineers,"

18   parens, IEEE, "and the International Telecommunications

19   Union," parens ITU, "committing to license its

20   declared-essential patents on RAND terms and conditions."

21       Now, I understand those to be the 802.11 WLAN,

22   W-L-A-N, and capital H period 264 Technologies.

23       As best we can tell, no one thinks that is

24   inaccurate, but since I am putting words in Motorola's

25   mouth, I will ask them first.

1    MR. JENNER:  Your Honor, yes, those are the two

2    standards that I understand --  I guess I am interpreting

3    what you are reading from your paper.  But those are the

4    standards that I interpret us to be talking about, the

5    802.11 having to do with wireless, and the H.264 having to

6    do with video.

7    THE COURT:  Is the first part of that sentence

8    also accurate, that you entered into binding contractual

9    commitments with IEEE and ITU, committing those to that

10    RAND process?

11    MR. JENNER:  Well, yeah, that is really what the

12    issue is, your Honor, in terms of what the assurance is.

13    The assurance is that we would -- that Motorola agreed to

14    license those standard essential patents on RAND terms.

15    THE COURT:  All I am asking is --  I think you

16    just agreed with me.  I am not asking you if you did it or

17    not, I am just asking you if that's what you are supposed

18    to do.  I think the answer to that is yes.

19    MR. JENNER:  Yes.  Enter into a license on RAND

20    terms, that's right.

21    THE COURT:  The second point that Microsoft asked

22    the court to declare is, and I will quote, "Microsoft is a

23    third-party beneficiary of Motorola's commitments to the

24    SSOs."  Once again, let's stay away from the precise terms

25    that were offered and asked as a conceptual matter.  I

 1   think there is also no disagreement on that.  Mr. Jenner,

 2   am I correct on that?

 3          MR. JENNER:  Your Honor, that is correct, we would

 4   agree that Microsoft can fairly claim to be the

 5   third-party beneficiary of the assurance.

 6          THE COURT:  Now we get into the fun part.  Number

 7   three in Microsoft's list is, "When offering a license to

 8   a third-party beneficiary of Motorola's commitments to the

 9   SSOs," Microsoft phrases it, "Motorola must offer RAND

10   terms and conditions."

11      I'm reading that as a legal matter.  And I would say,

12   yes, that is true, because that's what your agreement

13   says, is that you will offer them on RAND terms and

14   conditions.  If you read that, however, to be, must

15   Microsoft make an offer which is within the range of RAND

16   terms and conditions, then you set up what I believe to be

17   Microsoft's issue in this, which is the contention that,

18   no, the terms were so outside the available bandwidth that

19   it is not RAND terms and conditions.

20      Bear with me, but I think what that then asks me to do

21   in that third one is to determine what the RAND terms and

22   conditions for those two technologies are so that I may

23   then attempt to determine if Motorola's offer to Microsoft

24   was within that range.

25      Mr. Jenner, is that an accurate statement of what your

1     contending the issue is in this?

2          MR. JENNER:  No, your Honor.  Actually, it is

3     Microsoft's contention, but I will state my two cents on

4     this.  First of all, we do not agree that the offer must

5     itself be RAND terms, because nobody knows at the time of

6     the offer what the other party is going to think the RAND

7     terms are.  We contend that the final agreement must be

8     RAND terms.  But even if you were to conclude that the

9     offer itself must be RAND terms, we submit that Motorola

10    did offer RAND terms.  And that gets to the conclusion

11    indeed it would require your Honor to figure out what RAND

12    terms are, either for purposes of the offer or the final

13    agreement.  That's why we submit that is a factual issue.

14         THE COURT:  All right.  Mr. Harrigan, would you

15    like to respond to that analysis?

16         MR. HARRIGAN:  Yes, your Honor.  First of all, the

17    issue as stated addresses the fact that Motorola's

18    contention is that it can make an exorbitant demand for

19    standards-essential technology and still be complying with

20    its RAND obligations as long as it will eventually enter

21    the RAND arena.  That is the fundamental issue in this

22    case.

23       Our position is very clearly that --  And I think the

24    court may have said itself, you can't comply with your

25    RAND obligations if you start the negotiation by demanding

 1   an exorbitant royalty.  We believe that is a distinct and

 2   very important legal issue.  If the court agrees that is

 3   the obligation they have under the contract, then we have

 4   a shot at getting these parties actually to enter the RAND

 5   arena.  If the court concludes that Motorola is correct,

 6   in that it can literally make an outrageous royalty demand

 7   without breaching its RAND obligations, as long as it says

 8   it is willing eventually to arrive at a rate that is

 9   within the RAND arena, then they will continue to use this

10   holdup technique that they are using, where they threaten

11   an injunction if Microsoft or other parties do not

12   negotiate in response to an outrageous demand.  And so I

13   think that that issue as stated there is an important and

14   distinct issue.

15       The next question is whether in fact their current --

16   the demand embodied in their two demand letters --

17             THE COURT:  Let's stop there for a minute, if I

18   can cut you off.  Answer me this:  How do I get out of

19   this very dark inside of this paper bag?  Motorola says,

20   this technology is so wonderful that a RAND term

21   appropriately is $1 a unit.  Microsoft responds, this is

22   run-of-the-mill stuff, you're lucky we are buying it, the

23   RAND term is 1¢ a unit.  Whose view of what is the RAND

24   term do I accept, or is there a third alternative, which

25   is I determine the RAND value, and then see if it is

 1  necessary to answer question three, namely was the initial

 2  offer inside it?

 3          MR. HARRIGAN:  Your Honor, I think, first of all,

 4  the way that we have approached this reflects the terms

 5  and conditions of the letters that we received.  And that

 6  is, this is not a matter of is this technology worth a

 7  royalty of 2.25 percent.  This is a matter that they are

 8  asking for 2.25 percent of the end-product price of

 9  products where their contribution to the technology varies

10  over an enormous range, and in most cases is minute.

11      We believe that the court does not need to decide what

12  the RAND arena is in order to decide these summary -- this

13  summary judgment motion.  The court merely needs to

14  conclude what a RAND rate is not.  It is not 2.25 percent

15  of the price of, for example, a $300 laptop with

16  Microsoft's operating system in it, and a $2,000 laptop

17  with Microsoft's same operating system in it, to which

18  Motorola's contribution in both cases is infinitesimal

19  compared to the value of the operating system, much less

20  the product.

21      In other words, this is internally disproportionate to

22  the pricing base on which the 2.25 percent is based.  It

23  cannot be RAND, because it bears no relationship to the

24  proportionate contribution of the technology when you base

25  the rate on a price that doesn't reflect the value of that

```
 1    technology -- or I should say a wide range of prices, none
 2    of which reflect the value of that technology.
 3               THE COURT:  Mr. Jenner, would you like to respond?
 4               MR. JENNER:  Thank you, your Honor.  First of all,
 5    I would start by saying I think Mr. Harrigan has just made
 6    the point for me, that this is replete with fact issues.
 7    Everything that he raised requires the court to make
 8    determinations as to what is or is not reasonable.
 9        I think you have to go back to the policy of the
10    standards committee in which the standard, to which
11    Microsoft is a beneficiary, states that they take no
12    position on what a RAND rate is, they leave that to the
13    parties to negotiate.
14        I am not suggesting that Motorola should come in and
15    say we want 50 percent royalty on all your products, but I
16    think it is appropriate for Motorola to make a starting
17    offer and expect to enter into negotiations, which is what
18    the standards bodies expect.
19        But any way you approach this, whether you have the
20    benefit of prior negotiations or have to look at this
21    afresh, your Honor is being called upon, if it goes this
22    far, to make an analysis of all the factors that would be
23    determinative of what a reasonable and nondiscriminatory
24    offer would be, whether that is value of the technology,
25    number of patents that a party has, proportionate value of
```

 1    the patents, prior offers that are similar as to which

 2    this royalty rate could be compared, and so on.  Every

 3    single aspect of that requires fact determinations.

 4        So while this is something your Honor may need to get

 5    into in a trial, I submit that it is not the least bit

 6    appropriate for determination on summary judgment.

 7            THE COURT:  Well, let's set aside that question

 8    for a moment.  My reading of that policy statement is that

 9    you couldn't convince the IEEE to say that 10¢ a unit was

10    the proper royalty.  I am not sure that I can carry it as

11    far as Motorola reads that.

12        It seems to me that they are using the term

13    "reasonable," and they are not giving us a lot of

14    landmarks as to what that word means.  This really is the

15    key for the court in this.

16        All right.  Gentlemen, that's helpful.  Let me tell

17    you where I am thinking about going, and ask for your

18    comment on it.  I am going to be setting a discovery

19    cutoff for what we call the breach of contract claims,

20    what you call the RAND claims.  I am inclined to do that

21    somewhere in June, simply because I don't want to spring

22    this on you.  If you tell me that you can do it earlier

23    than that, I would welcome that news.

24        And then we'll set up a mini-trial on the question of

25    what the contract means.  It seems to me I need to know

1    what the contract means.  It may be that Mr. Harrigan is

2    correct, and that I can interpret the contract to put some

3    offers completely out of bounds.  It seems Mr. Jenner just

4    conceded that at some point he would agree with that.  I

5    think his standard was 50 percent of the price of the

6    product.  If that is the principle that is established,

7    then we are just negotiating about the price, in the

8    famous words of Winston Churchill.

9         The question then would be, setting aside a

10   determination of what that rate should be, I would hope to

11   clear the decks on the question of what the contract

12   means.  I appreciate that --  There may be some chance

13   that once you know what the contract means, you would

14   rather have the businesspeople deciding what the royalty

15   rate is, as opposed to eight good citizens of the Western

16   District of Washington.

17        In terms of when that trial would take place, it could

18   possibly be as early as this summer.  It depends in part

19   on what you are telling me is the status of discovery.

20        Just to change this up, Mr. Jenner, I will start with

21   you.  Where are you on discovery, and how does that idea

22   as a way to proceed strike you?

23             MR. JENNER:  Your Honor, the general framework is

24   something we can work with.  I guess the only thing I

25   would suggest is that your Honor consider reverting to the

1   prior schedule for purposes of RAND only.  The difference

2   would be, I think instead of a June discovery cutoff --

3   and I will explain why in a moment, we would like to stick

4   with the July cutoff that you had before.  The reason for

5   that is that we had -- as I think you know, we had a large

6   trial in International Trade Commission in January.  All

7   the parties -- certainly all of Motorola's resources have

8   been directed towards preparing for and conducting that

9   trial.  And we did that with the reliance on that July

10   discovery cutoff, so that we could get the discovery we

11   wanted for this done between now and July.

12     We have in mind probably at least about a dozen

13   depositions I can reel off, if you want to hear about

14   them.  We think that we need this time between now and the

15   original cutoff to be assured of having the full

16   opportunity to prepare for the eventual trial.

17     We also think, based on the recent experience that we

18   had in the Trade Commission case, where the parties had

19   expert witnesses dealing with the policies of the

20   standards organizations as they affect what the contract

21   means, that your Honor would benefit from similar expert

22   testimony, so that there should also be a window of expert

23   testimony.

24     I would submit that the schedule that you originally

25   had which headed towards, I believe, a November-ish trial

1   date would accommodate all of that.  It would not have any

2   of the patent issues, obviously, but it would still work

3   for the contract issues, and it would give us the time

4   that we thought we would have originally for getting the

5   discovery done.

6           THE COURT:  I will ask Mr. Harrigan next.  I will

7   tell you, unlike the Court of International Claims, I

8   don't have an unlimited amount of time.  Your trial in

9   this matter is probably going to be slotted for six days.

10  However you want to spend your part of it, that's fine.  I

11  have tended not to find expert witness testimony terribly

12  helpful.  Mr. Harrigan.

13          MR. HARRIGAN:  Yes, your Honor.  There are a

14  number of factors that I think the court should consider

15  in determining the timing here.  First of all, we did file

16  this case before both the proceeding in Germany and the

17  ICC proceeding to which counsel just referred.  There are

18  potential injunctions being sought in both of those

19  proceedings that would be very injurious to Microsoft.

20  One of the items of relief we are seeking on the two

21  motions -- the two partial summary judgment motions now

22  before the court is a determination that there will be

23  no -- there is no injunctive relief available, A, in the

24  RAND context, and, B, in particular in this situation,

25  because Microsoft remains entitled to a RAND license, and

1    has stated it will accept a RAND license.  I believe that

2    the court can rule on summary judgment on that issue

3    without any discovery.

4        We obviously also believe, your Honor, that you can

5    rule on the issue of -- on the motion to which we have

6    been directing our attention so far today without any

7    discovery.  We believe that the question of whether

8    Motorola can make an outrageous, non-RAND demand, and

9    still be complying with its RAND obligations is a pure

10   legal issue that the court can decide without the

11   discovery.

12       We also believe that the question of whether the offer

13   or demands that it made are RAND can be decided without

14   presenting any disputed issues of fact.

15       If you look at our presentation on that, and I will

16   not repeat what I said before, it can be readily

17   determined from undisputed facts regarding the prices of

18   these products and the role of Motorola's technology in

19   those products that a flat 2.25 percent rate, based on

20   end-product price over widely varying prices with a single

21   level of contribution, is not reasonable.

22       Your Honor, the real point here, however, is that

23   Motorola is using this holdup technique, making an

24   outrageous demand and threatening an injunction.  It is

25   using it in the German proceeding, it is using it in the

1   ICC proceeding.

2       If the parties are ever going to get into the RAND

3   arena and negotiate a license the way this system is set

4   up, the first thing that needs to happen is that Motorola

5   needs to be told by a federal court that they cannot use

6   this technique, and that what they have demanded in these

7   letters is, based on undisputed facts, an outrageous

8   demand that is not within the RAND arena, and is therefore

9   a breach of their obligations.  That ruling would have

10  literally worldwide significance, both in this case and in

11  other cases.  In particular, it would have an impact on

12  these two pending matters in the ITC and in Germany, both

13  of which rulings are going to be made before the court

14  would ever get to an answer in this case based on the

15  schedule that your Honor just outlined.

16      That is why we filed these motions last summer,

17  because of the importance of getting this determination,

18  to put an end to the methodology and tactics that Motorola

19  has been using, and which it is continuing to use.  If it

20  is once determined that what they have done here is a

21  breach of its RAND obligations, then this case will go

22  back to being like all the other RAND negotiations are

23  supposed to be, and Microsoft can use the standard without

24  worrying that it is going to be forced to pay an

25  exorbitant rate or be enjoined, and the parties will know

 1   that they are going to have to negotiate a real RAND rate,

 2   and they will do it.

 3       But as long as Motorola thinks it can get by with this

 4   tactic that it uses, we are never going to get there.

 5   Their basic approach is, we are allowed to make any

 6   exorbitant demand we want without breaching our

 7   obligations, and as long as we are willing to say we will

 8   eventually arrive at a RAND rate, then we are okay.  In

 9   fact, that is an abuse of the standards and the purpose of

10   the standards.  It is what this -- it is what all of these

11   disputes are about.  That's why we are asking this court

12   to make this ruling, which we believe can be done in

13   rather short order.

14       One of the suggestions we were going to make is, we

15   have a Markman hearing scheduled for March the 9th.  And I

16   think that the court could potentially defer that until

17   June, when the second one is set for, and use that time to

18   deal with the issues presented on these motions, which we

19   believe are urgent and fundamental.

20           THE COURT:  There are two paths that you have set

21   out for me, Mr. Harrigan.  One is that all Mr. Jenner

22   needs to do is agree that Motorola's demand was outrageous

23   and not RAND.  Somehow I don't think he is going to do

24   that.  And, secondly, none of the briefing that I have

25   seen coming out of Microsoft addresses the argument I

1    think you are now making, which is, Judge, there are some

2    factual situations where the parties don't -- they agree

3    on the facts, they don't agree on the implication that is

4    drawn from them, but it is so outrageous or beyond the

5    realm of reality that I can ignore the genuine issue of

6    material fact under the old CR 56 standard, and rule

7    rather in the abstract.  Do you have any authority for

8    that proposition?

9            MR. HARRIGAN:  Your Honor, the ruling in the

10   abstract I believe is issue number three, which is that

11   Motorola is not allowed to make an outrageous demand

12   outside the RAND arena simply because it says it will

13   later negotiate a RAND rate.  That is a legal issue.  That

14   demand --  If we assume that it is exorbitant, that demand

15   is a breach of contract.

16       The second question is --

17            THE COURT:  Stop there.  Save the second question.

18       Mr. Jenner, are you contending, as I thought you were

19   in your pleadings, that you thought your offer was a RAND

20   offer, and that your other simultaneous argument is that

21   it is simply -- you need to begin negotiations?  Did I

22   misunderstand that is your position?

23            MR. JENNER:  No, your Honor.  The fundamental and

24   primary submission we make is that our offer was in fact

25   reasonable RAND.  In fact, when the time comes to adduce

Case 2:10-cv-01823-JLR Document 817-1 Filed 04/20/12 Page 19 of 30

1    what the facts are, we are going to show your Honor

2    ██████████████████████████████████████████████

3    ██████████████████████████████████████████████████

4    ██████████████████████████████  --  This was all brought

5    into the ICC proceeding.  These are ████████████████

6    ████████████████████████████████████████████████████

7    ████████████  We are not hanging our hat on the notion

8    that we can offer anything, even though we think that is

9    what the proof will show the policies permit.  We are

10   going to submit that we made a RAND offer ████████████

11   ████████████████████████████████████████████████████

12   ███████████████████, and that as a factual determination it

13   was reasonable.

14        Can I address a couple of the other points that

15   Mr. Harrigan made?

16            THE COURT:  I will give you that chance in a

17   moment here.  Mr. Harrigan, I cut you off before you got

18   to your second point.

19            MR. HARRIGAN:  Your Honor, I would like to point

20   out that Mr. Jenner did state that their position is that

21   they do not have to make a RAND offer coming out of the

22   box.  We believe that is a legal issue, and that is

23   clearly what they contend in their papers, and that the

24   court should decide that legal issue.

25        The second issue is, are there material issues of fact

regarding whether the demands they made are outside a RAND

arena?  We believe, if you look at the undisputed facts

that we have presented in our motions, it is clearly an

unreasonable demand to say you get 2.25 percent of the

price of a $300 laptop with Microsoft's operating system

in it, and a $2,000 laptop with the identical operating

system in it, where Motorola's only contribution to that

product is exactly the same, a small part of Microsoft's

operating system.

If you look at their letter, your Honor, they identify

the products.  Every laptop.  That is what they say, each

laptop, each cell phone, the whole range of pricing, where

the prices vary based on what kind of case it is in, how

much memory it has, how fast it is, all the other things

that have absolutely nothing to do with Motorola's

technology.  In other words, there are no factual disputes

about the wide variation and pricing and the fact that it

has nothing to do with Motorola's technology.

Therefore, as a matter of undisputed fact, their

2.25 percent demand for end product -- based on

end-product pricing is unreasonable.

Now, you don't have to decide what is reasonable in

order to decide what is unreasonable on the basis of those

facts.

If you look at their brief in response to ours, what

1    do they say?  They say, well, ███████████████

2    ████████.  Well, they do not provide the court with any

3    evidence of a comparable situation, that is, a situation

4    where they have gotten 2.25 percent of the prices of a

5    wide range of products without any relationship to the

6    contribution of their technology.  If they could show

7    that, that might set up some kind of a factual dispute.

8    Although, in reality, what it would demonstrate is this

9    strategy has worked before.

10        But in fact, they have --  The point here is, your

11   Honor, if you look at these letters, these specific

12   demands, the specific products they list as to which this

13   2.25 percent rate applies, and the undisputed fact that

14   their technology does not change in the context of those

15   different products, and yet the prices vary over orders of

16   magnitude, a 2.25 percent flat rate based on end-product

17   prices cannot be reasonable.  And there is no material

18   fact question there.

19        Now, if you agree with us after looking at these

20   materials, and rule that in fact their demand is a breach

21   of their obligation to propose and offer a RAND royalty,

22   that should put this case -- that should make this case

23   like every other case, where the courts don't have to

24   decide anything, because the parties will then be in a

25   RAND arena and Motorola's tactic will have been held to be

1  a breach of its obligations.

2          THE COURT:  I wish I had more of those cases in my

3  docket where I didn't have to decide anything.

4  Mr. Jenner, it is your turn.

5          MR. HARRIGAN:  Your Honor, I have one other

6  question.  I am sorry to interrupt.  We would also like to

7  know, in view of the fact that this issue was placed

8  before this court last summer, whether Motorola will agree

9  that it will suspend any request for injunctive relief in

10  the ITC -- or exclusion order in the ITC, and injunctive

11  relief in the German case, while the court decides this

12  question, rather than have -- places where this issue is

13  not squarely presented as it is here, dealing with it.

14          THE COURT:  Mr. Jenner, I think that question was

15  addressed to you.

16          MR. JENNER:  I will start with that then, your

17  Honor.  First of all, I find it very interesting and

18  strange that Microsoft is invoking your Honor's time as a

19  way to address further the same questions that it is in

20  fact addressing in Germany and in the ITC.  I know for a

21  fact, because I was in the ITC proceeding, that they are

22  raising similar RAND defenses there.  So it is not as if

23  they don't have an opportunity to raise these defenses

24  where they think they apply.

25      I am a little surprised to hear that the actual

1  purpose of what they are asking your Honor to do is not to

2  rule per se for the benefit of the Seattle litigation, but

3  rather to do something that they can invoke and carry over

4  to Germany and the ITC instead of raising their defenses

5  where those cases are in existence.

6      Be that as it may, we are going to take the position

7  based in part on the testimony ████████████████

8  ████████████████████  that one is entitled, in the absence

9  of negotiations, to pursue all available IP remedies,

10  including injunctive relief.  This has been stated by

11  Microsoft's own manager of standards.  That is part of the

12  reason why we think we need discovery.

13      I understand full well why Microsoft would like to cut

14  us off completely from the opportunity to have our

15  discovery, but by the same token, the issues they are

16  raising are the reasons why we need our discovery.

17      We believe that there are a number of sources of

18  information that we ought to have the opportunity to

19  pursue consistent with the schedule that was previously in

20  place.

21      We don't think the fact that they want your Honor to

22  weigh in on proceedings in Germany and the ITC is a reason

23  why our right to discovery should get aborted.

24      They say they stated they will accept the RAND

25  license.  The way I read their pleadings, it doesn't say

Case 2:10-cv-01823-JLR Document 817 Filed 05/10/12 Page 24 of 30
Case 2:10-cv-01823-JLR Document 811 Filed 04/20/12 Page 24 of 30

23

1  that at all.  They have basically taken the position that

2  they want your Honor to rule that they are entitled to a

3  RAND license, but to this very day they still continue not

4  to ask for one.  And the standards organizations all talk

5  about licenses being made available to applicants.  They

6  continue to refuse to apply for a license.  They continue

7  to refuse to accept any of the patents as essential.  They

8  certainly haven't in the complaint they filed asked your

9  Honor to determine what a RAND rate is, even though at

10  some point it may come down to that.

11     I submit, your Honor, █████████████████████████

12  ████████████████████████████████████████████████

13  █████████████████████████████████████████████████

14  █████████████████████████████████████████████████

15  ███████████████████████████████████████████████████

16  █████████████████████████████████████████████████

17  ██████████████████████████████████████████████████

18  ██████████████████████████████████████████

19  ████████████████████████████████████████████████████.

20     If they want to say that the end product is the wrong

21  product on which to apply the royalty rate, they can do

22  that in negotiations.  ████████████████████████  They

23  refuse to do that.  Instead, they want your Honor to

24  become the arbiter in the way of an advisory opinion as to

25  what the rate is.

1       We submit that the evidence will show ██████████
2  ███████████████████     But the point for present purposes is
3  that is inherently factual.  Everything that Mr. Harrigan
4  says raises one factual issue after another as to
5  reasonableness, as to how it compares with other things,
6  whether or not and why it is too big or too little.  Every
7  last bit of that is a factual question, going to
8  reasonableness and related considerations.
9       I don't imagine how that can be appropriate for
10 summary judgment, but of course we leave that to your
11 Honor.  We appreciate that you are going to decide that
12 soon, and we will deal with that.
13      But as far as further proceedings, I don't think that
14 counsel has raised a justification, wanting to take this
15 to foreign courts and the ITC, for depriving Motorola of
16 the right to take discovery that it thought it was going
17 to be able to get in an orderly process leading to trial.
18      I notice that your Honor said you are probably not
19 much interested in expert testimony.  I do want you to
20 know that a number of experts, including people who sat on
21 the standards organizations patent policy committee, did
22 give testimony in Washington -- in the ITC proceeding.  I
23 would submit to your Honor we would try to explain to you
24 in a submission, if you would take it, why we think that
25 would be helpful.

1     But whether or not the expert phase is something your

2    Honor wants, we do believe that the original fact

3    discovery period shouldn't be taken away from Motorola,

4    even if Microsoft doesn't want it.

5         MR. PALUMBO:  Your Honor, this is Mr. Palumbo.

6    Just on the schedule, you mentioned June.  I think the

7    existing discovery cutoff is June 15, and then there is a

8    July 24 dispositive motion cutoff.  It sounds like both of

9    those would work for your Honor.  It would work for

10    Motorola.  I am new to this, but given that Motorola has

11    evidence in the summary judgment record that it has

12    ████████████████████████████████████████████

13    ████████████████████████████████████████████████

14    I don't see, facing that evidence, how you could decide

15    that this is, as Mr. Harrigan contends, so exorbitant that

16    it is outside the range.  Nor can I imagine how Motorola

17    could figure out the value of these patents to this broad

18    range of differently priced Microsoft products without

19    sitting down and discussing and negotiating with Microsoft

20    as to all those products, something which Motorola has

21    repeatedly said it is willing to do.

22     So if we simply proceed with the existing schedule on

23    the discovery and dispositive motion cutoff, the parties

24    have the opportunity, if they choose to do so, to attempt

25    to negotiate a RAND term in the interim.  But ultimately,

1  if they are not able to do it, you will have to decide the
2  specific RAND terms.
3      I think in order to decide whether something is or is
4  not RAND, you have to decide what RAND is for these
5  products and these patents.
6          UNIDENTIFIED ATTORNEY:  Your Honor, may I make a
7  few comments?
8          THE COURT:  Actually, no, we are running out of
9  time here.  Mr. Palumbo, you may be new to the party, but
10 you do know the record, which is that it is a June
11 discovery cutoff.
12         MR. JENNER:  Your Honor, this is Jesse Jenner.  I
13 apologize for thinking it was July.
14         MR. HARRIGAN:  I would like to make -- read one
15 sentence out of our reply brief that will refute a
16 statement that counsel made.
17         THE COURT:  All right.
18         MR. HARRIGAN:  The reply brief states, "Microsoft
19 is seeking and remains ready and willing to take a license
20 to Motorola's H.264 and 802.11 declared-essential patents
21 on RAND terms."  That is at page 9.
22     Microsoft has in fact stated that it will do that.  It
23 has actually put a deposit of ▮▮▮▮▮▮▮▮▮▮ in place
24 in the particular German case for purposes of getting a
25 RAND license on what it believes to be RAND terms.

 1    Based on the fact that the court is running out of

 2   time, I will not further respond to Mr. Jenner's

 3   arguments, other than to say that whether the other side

 4   needs discovery depends -- needs discovery to respond to

 5   these motions depends upon whether there are actual

 6   material disputed facts.  And for the reasons I have

 7   previously stated, we believe there are not.  There will

 8   be disputed facts if the court has to actually set a RAND

 9   rate.  We don't think there are such disputed facts for

10   the court to determine that the demands we got are not

11   RAND.

12         THE COURT:  Thank you.  This has been helpful.  As

13   I mentioned, we will be ruling on Microsoft's motion,

14   found currently in the docket at 77.  You do have some

15   deadlines in the case schedule.  I would urge you all to

16   take a look at those.  I am not inclined to move them up

17   in terms of cutting things off, but I have very little

18   interest in moving them out either.

19    I will close simply --  It seems to me what I have

20   taken away from this discussion is, there are some

21   obviously contested issues of fact.  If we are looking at

22   this from a reasonableness point of view, we will do some

23   investigation on the question of is unreasonableness

24   something that I can decide as a matter of law.

25         Counsel, thank you for making yourselves available.

1    We will be in recess.

2            MR. HARRIGAN:  Your Honor --

3            THE COURT:  Mr. Harrigan, that was your voice?

4            MR. HARRIGAN:  That was my voice, your Honor.

5    Thank you.

6            THE COURT:  Bye.

7                        (Adjourned.)

# CERTIFICATE

I, Barry L. Fanning, Official Court Reporter, do hereby certify that the foregoing transcript is true and correct.

S/Barry L. Fanning

_____
Barry L. Fanning