Honorable James L. Robart

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>MOTOROLA, INC., and MOTOROLA MOBILITY, INC., and GENERAL INSTRUMENT CORPORATION,<br><br>　　　　　　　　Defendants. | No. C10-1823-JLR<br><br>MOTOROLA'S RESPONSIVE CLAIM CONSTRUCTION BRIEF<br><br>**Due Date:  May 18, 2012**<br><br>**Hearing Date:  June 7, 2012** |
| MOTOROLA MOBILITY, INC., and GENERAL INSTRUMENT CORPORATION,<br><br>　　Plaintiffs/Counterclaim Defendant,<br><br>　　v.<br><br>MICROSOFT CORPORATION,<br><br>　　Defendant/Counterclaim Plaintiff. | |

MOTOROLA'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

4814-7278-2095.1

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. RESPONSE TO MICROSOFT'S ARGUMENTS ON DISPUTED TERMS .................... 1

   A. The '780 Patent .............................................................................................................. 1

      1. "graphic element" .................................................................................................... 1

      2. "during times when the browser is loading visible content" ....................................... 3

      3. "obstruct[s/ing]" ...................................................................................................... 4

   B. The '582 Patent .............................................................................................................. 6

      1. "icon" ...................................................................................................................... 6

      2. "interface" .............................................................................................................. 7

      3. "invoking [a/the] selected input method" ................................................................ 8

      4. "distinct from . . . computer/application/programs" ................................................. 9

      5. "window" ............................................................................................................. 10

      6. The "as if . . . received [via/from]" limitations ...................................................... 11

MOTOROLA'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF - i

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

4814-7278-2095.1

# TABLE OF AUTHORITIES

Page(s)

CASES

*Ecolab, Inc. v. Envirochem, Inc.*,
    264 F.3d 1358 (Fed. Cir. 2001) ...................................................................................3

*Edwards Lifesciences LLC v. Cook Inc.*,
    582 F.3d 1322 (Fed. Cir. 2009) ...................................................................................5

*Gen. Am. Transp. Corp. v. Cryo-Trans, Inc.*,
    93 F.3d 766 (Fed. Cir. 1996) ....................................................................................... 7

*Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*,
    222 F.3d 951 (Fed. Cir. 2000) .................................................................................3, 4

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996) ..................................................................................................10

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) ..........................................................passim

*Regents of Univ. of Cal. v. Dakocytomation Cal., Inc.*,
    517 F.3d 1364 (Fed. Cir. 2008) ...................................................................................2

*Toro Co. v. White Consol. Indus. Inc.*,
    199 F.3d 1295 (Fed. Cir. 1999) ...........................................................................11, 12

*V-Formation, Inc. v. Benetton Group SPA*,
    401 F.3d 1307 (Fed. Cir. 2005) .................................................................................10

*Wang Labs., Inc. v. Am. Online, Inc.*,
    197 F.3d 1377 (Fed. Cir. 1999) .............................................................................7, 11

STATUTES

35 U.S.C. § 112 ................................................................................................................2, 3

OTHER AUTHORITIES

Computer Desktop Encyclopedia ...................................................................................4, 6

Microsoft's Computer Dictionary ......................................................................................6

Que's Computer & Internet Dictionary .............................................................................7

MOTOROLA'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF - ii

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

4814-7278-2095.1

# I. INTRODUCTION

Motorola respectfully submits this responsive claim construction brief for the disputed claim terms of U.S. Patents Nos. 6,339,780 ("the '780 Patent") and 7,411,582 ("the '582 Patent").[1]

# II. ARGUMENT

## A. The '780 Patent

### 1. "graphic element"

Microsoft's position that the term "graphic element" can include content rests on three flawed arguments.

Microsoft first argues that while "it may be true" that "temporary" and "load status" graphic elements are not content, the general term "graphic element" can include content. (Dkt. 223 at 4-5.) This argument supports Motorola's construction – not Microsoft's. The claims only refer to "temporary" or "load status" graphic elements. Thus, whether the general, broader phrase "graphic element" can include content is irrelevant. Because Microsoft tacitly admits that all of the *claimed* graphic elements are not content, this should end the analysis. Indeed, Microsoft explicitly concedes that the "temporary graphic element[s]" referred to in application claims 2, 5, 7, 10, 12 and 15 (issued claims 5, 8, 13, 16, 25, and 28) are "not content." (*Id.*); *see also* Ex. F. at MOTM_WASH1823_0050441, 481, 529.

The prosecution history, moreover, confirms that *every* claimed "temporary" and "load status" graphic element does not include content. For example, applicants stated that the "temporary graphic element" referred to in application claims 1 and 6 (issued claims 1 and 12) "is not part of the content." Ex. F. at MOTM_WASH1823_0050374-75, 378, 477. And applicants *repeatedly* declared that "[a]lthough some claims are worded differently from

---

[1] Throughout this brief, all emphasis is added unless otherwise indicated and the citation format x:y-z refers to the indicated column and lines of a cited patent. Unless otherwise indicated, "Ex. __" refers to the referenced exhibit to the Declaration of Philip S. McCune in Support of Motorola's and Microsoft's Joint Claim Chart (Dkt. 158) and the Second Declaration of Philip S. McCune in Support of Motorola's Opening Claim Construction Brief (Dkt. 226).

MOTOROLA'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF - 1

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

4814-7278-2095.1

others," *all* claims then pending (application claims 1-30, which include all issued independent claims)[2] "recite a ***common core concept*** . . . [which] is a ***non-content graphic element*** appearing over a content area . . . ." *Id.* at MOTM_WASH1823_0050434, 474, 521. Applicants gave two non-exhaustive examples of this "core concept": the first (independent claim 1) refers to a "temporary" graphic element, and the second (application claim 26; issued independent claim 32) refers to a "load status" graphic element. *Id*. Because these are the only two kinds of graphics elements in the asserted claims, it is clear that they cannot be content. This is further demonstrated by the applicants' amendment of claim 1 and addition of claims 20 and 22 to "clarify" (rather than add an additional limitation) that "the temporary graphic element is not content." *See id.* at MOTM_WASH1823_0050375.

Microsoft's second argument – that reading a "not content" limitation into every claim would render the "not content" language in claims 1, 20, and 22 superfluous[3] (Dkt. 223 at 4) – also fails. In making this argument, Microsoft ignores that applicants defined the "graphic elements" of claim 1, and claims 12 and 19 (from which claims 20 and 22 depend respectively), as "not content."[4] For example, during prosecution, applicants amended claim 1 to clarify that the graphic element is "over" the content viewing area, and explained that the "use of 'over' in the claim language *emphasizes* that the graphic element is not part of the

---

[2] This argument necessarily extends to all dependent claims. 35 U.S.C. § 112, ¶ 4 ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.").

[3] As Microsoft essentially concedes, when appropriate courts *may* construe claim terms in a way that renders some claim language superfluous – though such a construction is, as Microsoft states, "generally" (Dkt. 223 at 4) to be avoided. *See, e.g.*, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) (holding that term "steel baffles" in the claims "***strongly implies***" (but does not require) "that the term 'baffles' does not inherently mean objects made of steel"); *see also id.* at 1324 ("The inclusion of such a specific limitation on the term 'baffles' in claim 2 ***makes it likely that*** the patentee did not contemplate that the term 'baffles' already contained that limitation.").

[4] Microsoft also attempts to rely on the doctrine of claim differentiation. However, "the presumption created by the doctrine of claim differentiation is 'not a hard and fast rule and ***will be overcome by a contrary construction dictated by the written description or prosecution history***.'" *Regents of Univ. of Cal. v. Dakocytomation Cal., Inc.*, 517 F.3d 1364, 1375 (Fed. Cir. 2008) (quoting *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005)).

MOTOROLA'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF - 2

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

4814-7278-2095.1

content." *See, e.g.*, Ex. F. at MOTM_WASH1823_0050374-75. Moreover, applicants explicitly declared that the graphic element in claim 12 (application claim 6) "***is not part of the content***." *Id*. Applicants similarly included claim 19 (application claim 11) as one of the claims in which the "core concept . . . is a ***non-content graphic element*** appearing over a content area . . . ." *Id*. at MOTM_WASH1823_0050434, 474, 521. As dependent claims, claims 20 and 22 thus already incorporate by reference the "not content" limitation of independent claims 12 and 19. *See* 35 U.S.C. § 112, ¶ 4.

Microsoft cites no authority (because there is none) for its third argument – the dubious distinction between "modifying" and "defining" a term during prosecution. (Dkt. 223 at 5.) In fact, the doctrine of prosecution disclaimer operates when an applicant during prosecution disclaims ***or modifies*** a claim term in order to obtain its patent. *See, e.g.*, *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1368-69 (Fed. Cir. 2001) (citing *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 955 (Fed. Cir. 2000) (applying doctrine of prosecution disclaimer where "[r]eview of the prosecution history [ ] reveals that the inventor disclaimed a particular interpretation of groove, ***thereby modifying the term's ordinary meaning***")); *see also Hockerson-Halberstadt*, 222 F.3d at 955 ("[T]he patentee may act as a lexicographer and ascribe a different, ***or modified***, meaning to the term."). Microsoft's distinction does not exist.

### 2. "during times when the browser is loading visible content"

Microsoft's argument that the "visible content" being loaded in claims 2 and 12 can at times be ***invisible*** relies on a supposed distinction between "loading" and "displaying" content. (Dkt. 223 at 6.)[5] The prosecution history, however, renders any such distinction irrelevant to the asserted claims.

---

[5] Microsoft is wrong that the '780 specification never refers to the "content viewing area" as a place where content is loaded. (Dkt. 223 at 7.) To the contrary, claim 12 describes the "content viewing area" as a place ***both*** where the content is "loaded" and where the content is "displayed." Ex. D. at 6:17-19 ("a hypermedia browser executing on the processor ***to load and display content in a content viewing area*** on the display;").

MOTOROLA'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF - 3

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

4814-7278-2095.1

As explained in Motorola's opening brief (Dkt. 225 at 6), applicants could not have been more clear when they stated during prosecution that "*[w]hile the content is being loaded, that content is visible to the user*." Ex. F. at MOTO_WASH1823_0050375. Indeed, applicants explained that they were changing the wording of application claims 6 and 17 (issued claims 12 and 2) "for clarification" of *this exact point* – that "the loading content *is visible*." *Id.*

Moreover, to overcome the Examiner's rejections over U.S. Patent No. 5,760,771 ("Blonder," Ex. DD), applicants expressly distinguished Blonder from issued claims 2 and 12 on the grounds that: (1) Blonder – unlike the claims – did not disclose "a browser that displays 'a temporary graphic element *over* the content viewing area during times when the browser is *loading visible content*,'" Ex. F. at MOTO_WASH1823_0050381 (emphasis in original); and (2) Blonder never suggested "a technique or desire for *currently* displaying the delayed content *and* the 'padding' in the content viewing area." *Id.* Applicants indicated that this claim term requires the *simultaneous* display in the content viewing area of "loading content" and the temporary graphic element. Thus, the "loading content" is displayed and, therefore, is visible.[6]

### 3. "obstruct[s/ing]"

Microsoft misreads the intrinsic evidence in arguing that "obstruct" means "to interfere with."

Microsoft first points out that the claims refer to obstructing "[only] part of" the content in the content viewing area. But this language supports Motorola's construction – not Microsoft's. Because the graphic element will block (*i.e.*, obstruct) any underlying content, the

---

[6] Because the intrinsic evidence is clear, the Court need not look to the definition of "loading" in the Computer Desktop Encyclopedia. *See Phillips*, 415 F.3d at 1317. Regardless, the definition does not support Microsoft's construction. The definition of "loading" includes the note that the reader should "See *load*." (Wilson Decl. (Dkt. 224) Ex. H. at 496.) The definition of "load," however, has nothing to do with what *this patent* deals with: a *browser* loading content. Instead, the Encyclopedia states that to "load" is: "(1) To copy a program from some source, such as a disk or tape, into memory for execution. See *boot*.; (2) To fill up a disk with data or programs.; (3) To insert a disk or tape into a drive.; (4) In programming, to store data in a register.; (5) In performance measurement, the current use of a system as a percentage of total capacity.; (6) In electronics, the flow of current through a circuit." *Id.*

MOTOROLA'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF - 4

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

4814-7278-2095.1

claims require obstructing "only part" of the content viewing area to minimize the content area that will be blocked. Indeed, that is why the patent teaches that the preferable location of the graphic element is the corner of the content viewing area. As the patent explains, "this position is often blank in Internet documents." *See* Ex. D at 4:64-67. If the graphic element were translucent, or only partially obscured the underlying content, there would be no need to put the graphic element in the corner because the underlying content would still be viewable.

Microsoft next argues that "obstruct" includes mere interference because the specification states that "a goal of the invention is to *minimize* any obstruction of content." (Dkt. 223 at 9) (emphasis in original). First, the patent never states (or even suggests) that minimizing obstruction of content is a "goal" of the patent. And, even if it were, the patent never states that obstructing content can be minimized by using a translucent graphic element. Indeed, if the applicants intended to minimize the obstruction by using translucent graphic elements, they would have said so.

Microsoft next argues that the specification uses the terms "obstruct" and "interfere" synonymously and interchangeably. Not so. In the passage Microsoft quotes in its Brief, applicants were indicating that they wanted to ensure that the browser controls did not "obstruct *or* interfere" with the viewing area. Ex. D. at 1:60-63. The "or" is language clearly distinguishing the terms; otherwise they would be redundant. Microsoft's citation to *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1329 (Fed. Cir. 2009), for the proposition that "[t]he interchangeable use of two terms is akin to a definition equating the two," is inapposite and irrelevant. In *Edwards*, the patent specification used the terms "graft" and "intraluminal graft" interchangeably – they did not separate any terms with the word "or." *Id*.

Microsoft's final argument that the Examiner during prosecution equated "obstructing" with "interfering" is similarly unavailing. As discussed in Motorola's opening brief, while the Examiner used the phrase "interfere with" in his statement, what the Examiner actually pointed

MOTOROLA'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF - 5

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

4814-7278-2095.1

out was that a graphic element covering content would "interfere with the *view*" offered to the user.  (Dkt. 225 at 9 n.7.)  This language differs from the claims, which discuss how the graphic element "obstructs" the content – *not*, as in the Notice of Allowance, the effect of this obstruction on the user's view.

### B. The '582 Patent

#### 1. "icon"

Microsoft does not rely on the claims or the specification of the '582 patent to argue that an icon can include text.  Nor does Microsoft point to a clear statement by applicants during prosecution of the '582 patent that an icon can include text.  Instead, Microsoft is forced to rely on extrinsic evidence and the disclosure of a completely different patent than the '582 patent – a prior art reference (U.S. Patent No. 5,760,773) that was cited during prosecution of the '582 patent.  But even these do not support Microsoft's argument.

Pointing to an example of an "icon" in the '773 patent, Microsoft asserts that, because the letter "a" is included as part of that icon, an icon can be text.  (Dkt. 223 at 12.)  This is incorrect.  Microsoft entirely ignores that the letter "a" is only an image of the letter "a," and that images themselves are not text.  In contrast to an image, text is comprised of characters that a computer can recognize, such as the characters that a user types into a word processing document.[7]  Similarly, the word processor program Microsoft Word is represented by an icon containing, among other elements, a stylized letter "W," but as with the image from the '773 patent, this is an image of the letter, it is not text.

---

[7] Microsoft's Computer Dictionary defines "text" as "1. Data that consists of characters representing the words and symbols of human speech; usually, characters coded according to the ASCII standard, which assigns numeric values to numbers, letters, and certain symbols. 2. In word processing and desktop publishing, the main portion of a document, as opposed to headlines, tables, figures, footnotes, and other elements."  *Microsoft Press Computer Dictionary* 465 (3d ed. 1997).

MOTOROLA'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF - 6

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

4814-7278-2095.1

Microsoft's construction also conflicts with its own extrinsic evidence, which defines icons as "pictorial"[8] or as a "symbol."[9] Pictures and symbols are not text. Notably, even though Microsoft relied solely on these dictionary definitions for its construction, Microsoft inexplicably omits these words from its definition.

Finally, the image of the recycling bin provided in Microsoft's own Computer Dictionary is the icon. Microsoft incorrectly asserts that the words "Recycling Bin" under the image are part of the icon. They are not. This is, in fact, the "label," which Windows users will recognize is text that the user can typically select and/or edit. It is not part of the icon.

### 2. "interface"

Microsoft's argument that the specification states that an input method may be, but is not required to be, a COM object is irrelevant. The parties do not dispute whether an input method can be a COM object.[10] Rather, the parties dispute the meaning of the term "interface." Motorola's construction reflects the specification's repeated explanations – without a single exception – of an "interface" as a means of communication with COM objects. Microsoft ignores these statements, and never addresses the specification's incorporation by reference of the "Inside OLE" text. Ex. E at 5:20-22. Consistent with the specification, Inside OLE focuses exclusively on the use of COM object architecture. No broader concept is described in the '582 patent. *Wang Labs., Inc. v. Am. Online, Inc.*, 197 F.3d 1377, 1383 (Fed. Cir. 1999).

Microsoft's suggestion that this is merely a preferred embodiment is not persuasive, given that the use of "'preferred' does not of itself broaden the claims beyond their support in the

---

[8] Computer Desktop Encyclopedia: icon is "A small, *pictorial*, on-screen representation of an *object (file, program, disk etc.)* used in graphical interfaces."

[9] Que's Computer & Internet Dictionary: icon is "an on-screen *symbol* that represents a program, data file or some other computer entity or function." (Wilson Decl. (Dkt. 224) Ex. O.)

[10] Microsoft incorrectly and confusingly defines a "COM object" as a "type of interface." (Dkt. 223 at 14 n.5.) The specification, as both parties note, defines a "COM object" as a "data structure having encapsulated methods and data that are accessible through specifically defined interfaces." Ex. E at 5:17-20. This means that COM objects *have* interfaces, not that they *are* interfaces.

MOTOROLA'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF - 7

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

4814-7278-2095.1

specification." *Id.*; *see also Gen. Am. Transp. Corp. v. Cryo-Trans, Inc.*, 93 F.3d 766, 770, 772 (Fed. Cir. 1996) (noting the proper limitation of claims where specification's example was "not just the preferred embodiment of the invention; it is the *only* one described") (emphasis in original).[11]

### 3. "invoking [a/the] selected input method"

In its brief, Microsoft ignores the statements from the prosecution history that equate "invoking" with steps of loading and calling that are performed by the management component.[12] (Dkt. 154 at 127 of 153; Dkt. 225 at 21-22.) The specification is consistent with the patentees' arguments during prosecution, and states that the management component, "the SIP manager 58 loads and calls," *i.e.*, invokes, "the selected input method" in response to a user's selection of an input method. (Dkt. 158); Ex. E at 5:13-14.[13]

Microsoft also makes what is essentially a claim differentiation argument, asserting that because dependent claims 23, 26, 27, 30 and 31 explicitly claim a management component, other claims do not "necessarily require" a management component. (Dkt. 223 at 15.) This argument fails because the cited dependent claims merely claim additional behaviors that the management component can perform, beyond the fundamental role of loading and calling the input method.

Similarly, Microsoft argues that because claims 15 and 17 use the term "invoke" but do not refer to a management component explicitly, these claims do not require a management component. (*Id.* at 19.) But the claims must be read in view of the specification. *Phillips*, 415 F.3d at 1315. The term "invoking" used in claims 15 and 17 must, therefore, reflect the role of

---

[11] Microsoft's discussion of claim 17 is irrelevant. The use of "COM object" in claim 17 is merely a claimed embodiment where the input method is a COM object. It does not relate to whether or not an *interface* allows for communication with a COM object.

[12] Microsoft's notion that the term "manager component" is wholly different from "management component" is baseless. The patentees used the terms in the same manner, and clearly intended them to be interchangeable.

[13] Microsoft incorrectly states that Motorola's construction is limited to a preferred embodiment. The specification makes clear that in all embodiments, a management component must at least perform the invoking step, even though other embodiments include *additional* functions for the management component.

MOTOROLA'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF - 8

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

4814-7278-2095.1

the management component as described in the specification, which states that the management component performs the steps of "loading and calling" that the patentees had defined as "invoking" during prosecution.

Far from introducing "ambiguities" into the term, Motorola's construction is based on the patentees' clear intent, as reflected in the prosecution history and in the specification itself, and should be adopted.

### 4. "distinct from . . . computer/application/programs"

Under Motorola's construction, input methods must be independent and separate from applications/programs. Microsoft argues that this construction precludes input methods from "plugging into" (*i.e.*, sharing data or communicating with) applications. This argument is based on a distortion of Motorola's construction and ignores applicants' statements during prosecution concerning the phrase "plugging in" and should be rejected.

Motorola's construction does not preclude an input method from "plugging into" computer programs – Motorola's construction requires only that the input method software be maintained independent and separate from the applications/programs. This does not mean they cannot "plug into" each other at runtime. Indeed, the patentees explained during prosecution that separate and independent input methods can share data with computer programs by "plugging into" the computer programs through a defined interface: "the selected software input method . . . has a defined interface set that makes it pluggable into the management component." Ex. H at MOTM_WASH1823_0050832. Finally, in making this argument, Microsoft did not even attempt to address the patentees' definition of "distinct from" in the prosecution history: input methods are "separate" from (*i.e.*, not part of) the computer programs, and are "independent software entities." *Id.* at MOTM_WASH1823_0050808.[14]

---

[14] These independent and separate software entities remain distinct at runtime: "In other words, the input method that receives user data is distinct from the program that gets the data." Ex. H at MOTM_WASH1823_0050838.

MOTOROLA'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF - 9

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

4814-7278-2095.1

Motorola also defines computer programs and applications as "self-contained." Microsoft argues that this definition is incorrect because such a definition would prevent applications/programs from sharing data with input methods. Once again, Microsoft distorts Motorola's construction. The fact that applications/programs are self-contained does not mean that they cannot share data (*i.e.*, information processed *by the software*) with other software components. Indeed, nothing in the specification states that self-contained entities cannot share data with other software entities, and Microsoft does not explain where in the specification it finds such a rule.[15]

### 5. "window"

Microsoft cites a *single* passage from the specification to argue that Motorola's construction improperly imports limitations from the preferred embodiment. (Dkt. 223 at 18-19.) But, under well-established precedent, claim terms must be construed in the context of the entire specification. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 389 (1996) (terms must "comport[] with the instrument as a whole"). Here, the specification as a whole – at least 22 distinct sections by Motorola's count – gives meaning and context to the term "window" and fully supports Motorola's construction. As explained in Motorola's opening brief, the applicants throughout the *entire* specification *repeatedly* described "windows" as hidable, dockable, movable and resizable. (Dkt. 225 at 16-17); *see* Ex. FF.[16] These passages, therefore, give the term "window" its proper "technological and temporal context" and are determinative of its meaning. *V-Formation, Inc. v. Benetton Group SPA*, 401 F.3d 1307, 1310 (Fed. Cir. 2005).

---

[15] Microsoft's suggestion that the claim language favors its construction is confusing, as "software component," is not a disputed claim term, and the terms "plug in" and "plugged in" are not in any of the asserted claims. Microsoft also points to an irrelevant dictionary definition for "component software," which merely defines a subunit of a computer program, not an "overall program." (Dkt. 223 at 17.)

[16] On April 30, 2012, Motorola filed a praecipe (Dkt. 301) replacing a non-highlighted copy of Exhibit FF (Dkt. 226-5) with the correct, highlighted copy (Dkt. 301-1).

MOTOROLA'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF - 10

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

4814-7278-2095.1

The fact that applicants provide no description of "window" in the patent as broad as Microsoft's proposed construction makes it clear that such a broad construction was never intended.  Indeed, Microsoft fails to point to *anything* in the specification which shows that applicants contemplated windows that were not hidable, dockable, movable and resizable.  *See Phillips*, 415 F.3d at 1323 (noting that a preferred embodiment *is* the invention where the specification fails to indicate that the patentee contemplated any alternative embodiment) (citation omitted); *Wang Labs.*, 415 F.3d at 1383 (noting that claims were properly limited to sole embodiment where no other embodiment was described or enabled); *accord Toro Co. v. White Consol. Indus. Inc.*, 199 F.3d 1295, 1301 (Fed. Cir. 1999) ("No other, broader concept was described as embodying the applicant's invention . . . .").

Microsoft fails to present any sound reason why its proposed construction, which is based entirely on a dictionary excerpt (clear extrinsic evidence), trumps Motorola's construction, which is based on the intrinsic evidence.  A dictionary definition may "not contradict any definition found in or ascertained by a reading of the patent documents." *Phillips*, 415 F.3d at 1322 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 n.6 (Fed. Cir. 1996)); *see also id.* (a term should not be construed "based upon the preferences of a particular dictionary editor, or the court's independent decision, uninformed by the specification").  Accordingly, Microsoft's construction should be rejected.[17]

### 6.   The "as if . . . received [via/from]" limitations

As explained in Motorola's Opening Brief, the express claim language (and the teachings of the specification as a whole) compels the construction proposed for these limitations by Motorola.  (Dkt. 225 at 19-20.)  Notably absent from Microsoft's brief is *any* analysis of the express claim language.

---

[17] To the extent the Court wishes to consult a definition, Motorola proposes: "A window is a *separately controllable* area of the screen that typically has a rectangular border."  This definition is taken from The Windows Interface Guidelines for Software Design (1995). (Dkt. 154 at 135 of 153.)

MOTOROLA'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF - 11

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

4814-7278-2095.1

Instead, Microsoft argues that these limitations – which appear in each of the patent's independent claims and represent a key feature distinguishing this invention from the prior art – should be construed based on a single, irrelevant[18] portion of the specification. (Dkt. 223 at 21.) In doing so, Microsoft ignores one critical fact: the claims are not drafted as broadly as the general statement on which Microsoft relies. *TIP Systems, LLC v. Phillips & Brooks / Gladwin, Inc.*, 529 F.3d 1364, 1373 (Fed. Cir. 2008) ("[T]he claims of the patent need not encompass all disclosed embodiments . . . Our precedent is replete with examples of subject matter that is included in the specification, but is not claimed."). The claims are clearly limited – based on their plain language – to a situation in which a computer program receives information "as if [the information] was received from," (*i.e.*, originated at) a hardware device.[19]

Microsoft also points to the statements in the patent that hardware input devices are optional. If relevant at all, Motorola's construction is consistent with these statements. Most applications are programmed as if a hardware device is used to input data. The '582 patent allows soft input methods to be used because it requires the soft input method to provide input to the applications as if they are hardware devices. Consistent with this, Motorola requires that the input appear as if it came from a hardware device – it does not actually require that a hardware device be used.

---

[18] Microsoft's definition is based on a flawed understanding of the term "SIP-aware." The specification explicitly defines this term as an application's ability to sense the size and position of the input window and adjust (or not) its own window accordingly, not an application's ability to receive input data. Ex. E at 7:39-41, 48-57.

[19] A key aspect of the alleged invention is that it permits virtually any input method to communicate with any application in a manner that is "simple to implement." Ex. E at 2:13-22. To achieve this goal, the invention requires the application to be "capable of handling keyboard input." *Id*. at 4:59-61; (*see also* Dkt. 225 at 19-20 n.12 (as explained during prosecution of the grandparent application: "[T]he input method and management component *simulate* a standard hardware input device on a portable computer.") (emphasis in original)). Motorola's proposed construction covers the claimed simplicity of this invention because it requires soft input methods to place keystroke messages in the window of the active application – just like a keyboard.

MOTOROLA'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF - 12

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

4814-7278-2095.1

1  DATED this 18th day of May, 2012.

2            SUMMIT LAW GROUP PLLC

3            By */s/ Ralph H. Palumbo*
                 Ralph H. Palumbo, WSBA #04751
4                Philip S. McCune, WSBA #21081
                 Lynn M. Engel, WSBA #21934
5                *ralphp@summitlaw.com*
                 *philm@summitlaw.com*
6                *lynne@summitlaw.com*

7            By */s/ K. McNeill Taylor, Jr.*
                 K. McNeill Taylor, Jr.
8                MOTOROLA MOBILITY, INC.
                 MD W4-150
9                600 North U.S. Highway 45
                 Libertyville, IL 60048-1286
10               Phone: 858-404-3580

11           And by

12               Jesse J. Jenner (*pro hac vice*)
                 Steven Pepe (*pro hac vice*)
13               Stuart W. Yothers (*pro hac vice*)
                 Ropes & Gray LLP
14               1211 Avenue of the Americas
                 New York, NY  10036-8704
15               (212) 596-9046
                 *jesse.jenner@ropesgray.com*
16               *steven.pepe@ropesgray.com*
                 *stuart.yothers@ropesgray.com*

17               Norman H. Beamer (*pro hac vice*)
                 Gabrielle E. Higgins (*pro hac vice*)
18               Ropes & Gray LLP
                 1900 University Avenue, 6th Floor
19               East Palo Alto, CA  94303-2284
                 (650) 617-4030
20               *norman.beamer@ropesgray.com*
                 *gabrielle.higgins@ropesgray.com*

21

22

23

24

25

MOTOROLA'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF - 13

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

4814-7278-2095.1

| | |
|---|---|
| 1 | |
| 2 | Paul M. Schoenhard (*pro hac vice*) |
|   | Kevin J. Post (*pro hac vice*) |
|   | Ropes & Gray LLP |
|   | One Metro Center |
|   | 700 12th Street NW, Suite 900 |
|   | Washington, DC  20005-3948 |
|   | (202) 508-4693 |
|   | *paul.schoenhard.@ropesgray.com* |
|   | *kevin.post@ropesgray.com* |

**Attorneys for Motorola Solutions, Inc., Motorola Mobility, Inc., and General Instrument Corp.**

MOTOROLA'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF - 14

SUMMIT LAW GROUP PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

4814-7278-2095.1

# CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Arthur W. Harrigan, Jr., Esq.
> Christopher T. Wion, Esq.
> Shane P. Cramer, Esq.
> Danielson, Harrigan, Leyh & Tollefson LLP
> *arthurh@dhlt.com*
> *chrisw@dhlt.com*
> *shanec@dhlt.com*
>
> Richard A. Cederoth, Esq.
> Brian R. Nester, Esq.
> David T. Pritikin, Esq.
> Douglas I. Lewis, Esq.
> John W. McBride, Esq.
> David Greenfield, Esq.
> William H. Baumgartner, Jr., Esq.
> David C. Giardina, Esq.
> Carter G. Phillips, Esq.
> Constantine L. Trela, Jr., Esq.
> Ellen S. Robbins, Esq.
> Nathaniel C. Love, Esq.
> Sidley Austin LLP
> *rcederoth@sidley.com*
> *bnester@sidley.com*
> *dpritikin@sidley.com*
> *dilewis@sidley.com*
> *jwmcbride@sidley.com*
> *david.greenfield@sidley.com*
> *wbaumgartner@sidley.com*
> *dgiardina@sidley.com*
> *cphillips@sidley.com*
> *ctrela@sidley.com*
> *erobbins@sidley.com*
> *nlove@sidley.com*
>
> T. Andrew Culbert, Esq.
> David E. Killough, Esq.
> Microsoft Corp.
> *andycu@microsoft.com*
> *davkill@microsoft.com*

DATED this 18th day of May, 2012.

/s/ *Marcia A. Ripley*
Marcia A. Ripley

MOTOROLA'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF - 15

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

4814-7278-2095.1