```
                    UNITED STATES DISTRICT COURT

                WESTERN DISTRICT OF WASHINGTON AT SEATTLE
    _____


 Microsoft Corporation, et al.,

              Plaintiffs,         NO. C10-1823JLR

 v.                               TELEPHONE CONFERENCE

 Motorola, Inc., et al.,          SEATTLE, WASHINGTON
                                  July 9, 2012
              Defendants.
    _____

                 VERBATIM REPORT OF PROCEEDINGS
              BEFORE THE HONORABLE JAMES L. ROBART
                  UNITED STATES DISTRICT JUDGE
    _____



 APPEARANCES:


 For the Plaintiffs:    Arthur Harrigan


 For the Defendants:    Ralph Palumbo
                        Jesse Jenner



 Reported by:           Denae Hovland, RPR, RMR, CRR
                        Federal Court Reporter
                        206.370.8508
                        denae_hovland@wawd.uscourts.gov



 Proceedings recorded by mechanical stenography, transcript
 produced by Reporter on computer.
```

1          THE COURT: Good afternoon, counsel. This is Judge
2  Robart.
3          MR. PALUMBO: Good afternoon.
4          MR. HARRIGAN: Good afternoon.
5          THE COURT: Mr. Palumbo and Mr. Harrigan called the
6  court last week and I'm returning their call. I'm not sure who
7  is speaking for their side.
8          MR. PALUMBO: This is Mr. Palumbo, Your Honor. I'll be
9  speaking for Motorola. Mr. Jenner is also on, and he may chime
10 in if I get something wrong.
11         MR. HARRIGAN: This is Art Harrigan, Your Honor, and
12 I'll be speaking for Microsoft.
13         THE COURT: All right. My clerk gave me a memo
14 concerning your call. Narrowly, the issue appears to be
15 inclusion of a damage analysis concerning the breach of contract
16 claim in the RAND trial. But it seems to me what you're really
17 asking is what's going to happen in November. So let me tell you
18 what I think is going to happen in November and then I'm happy to
19 hear from you.
20      In November, I expect us to try in a bench trial the RAND
21 terms for patents covered by ITU-T standard H264 and the patents
22 pertaining to IEEE 802.11. I understand from the complaint and
23 from Motorola's offer letters of October 21, 2010 and October 29,
24 2010 that these are the patents at issue in what we call the 1823
25 litigation. That mostly is the question of the royalty rate

1  since that is what is covered in your letters.
2         At one point Mr. Jenner said something about, "Oh, but,
3  Judge, you know, these agreements are 70 pages long," of which I
4  expect 69 pages and 24 lines to be boilerplate, and what you
5  really care about are the royalty rates.  And, therefore, I am
6  going to have you submit an agreed agreement, or if you are
7  unable to do so, to submit contested boilerplates and we may
8  develop one.
9         In regards to the breach of contract claim, that will not be
10 tried in the November trial date.  As I have explained to you
11 previously, my reason for that is the breach of contract, as
12 Motorola has admitted, exists in relation to the RAND Rate.  I
13 think Mr. Jenner's example was a million dollars Royalty Rate for
14 one patent and the RAND Rate turns out to be 15 cents.  Since I
15 don't know what the RAND terms are yet, it seems to me I can't
16 deal with breach of contract until RAND is determined.
17        Finally, I have waited patiently for Motorola to advise me
18 if breach of contract is a court trial or a jury trial.  I am now
19 setting a deadline of 4:30 this Friday for that election to be
20 made.
21    Mr. Palumbo, I believe you initiated the call so I'll hear
22 from you first.
23           MR. PALUMBO:  Thank you, Your Honor.  As we said in our
24 partial summary judgment briefing and during argument on the
25 partial summary judgment motions, we have been unable to find any

1  authority for a court determining the terms of a RAND license,
2  and this is admittedly a novel issue with which we have continued
3  to struggle.  But since we are fast approaching a trial on
4  November 13th, we feel that we've -- we have got to take the
5  issue head-on and tell Your Honor what we believe to be the case.
6       The Washington Supreme Court recognizes three types of
7  agreements, and this is out of the Keystone Lamb case, an
8  agreement to agree, an agreement with open terms, and an
9  agreement to negotiate in conformance to a specific course of
10 conduct during those negotiations, such as an agreement to
11 negotiate in good faith or an agreement for a specific period of
12 time.  As you are aware, an agreement to agree is unenforceable.
13 The latter two types of agreements both come with remedies.
14      As you've just described this trial, and as you have
15 consistently described the trial, you are treating the agreement
16 or the contract between Motorola and each SSO as an agreement
17 with open terms, and we understand that that is the case that you
18 intend to try starting on November 13th, that is the case which
19 we are preparing to try and we will continue to proceed and be
20 ready to try on the 13th, unless you reach a different decision.
21 But we do think now, having looked at all of the cases and all of
22 the factual evidence which would bear upon the issue, that there
23 are very serious doubts that the contract in this case is an
24 agreement with open terms, and we would like the opportunity --
25 in fact, we feel the need to brief that issue for the benefit of

1  the Court and Microsoft. We understand the urgency of resolving
2  this issue, so despite the fact that there is a lot going on,
3  including the close of fact discovery and expert reports fast
4  approaching, we would be prepared to file a brief on that issue
5  nine days from now on Wednesday, July 18th.
6      In answer to your other question, we have decided not to
7  waive the jury trial on the breach of the duty of good faith
8  issue, and with respect to that issue, we think -- we do agree
9  that that is a triable issue that the jury can determine. In
10 other words, did Motorola accord to its obligation to negotiate
11 the contract in good faith? We may have issues with respect to
12 whether the court can instruct the jury as to the proper RAND
13 rate, but we agree that it is a jury question as to whether
14 Motorola has conformed to its obligation to negotiate a RAND
15 license in good faith.
16         THE COURT: Mr. Palumbo, isn't it rather late in the
17 game for Motorola to repudiate concessions made during oral
18 argument and announce another new theory of the case? You know,
19 frankly, this -- I am sitting here in disbelief that you are
20 going to try this.
21         MR. PALUMBO: Your Honor, I expected that you would be
22 sitting there in disbelief, and the only explanation I have is if
23 you recall, Microsoft's theory in this case has evolved since
24 they filed the complaint from asking -- to the point where they
25 said, we're committed to take a license and we want the court to

1  take that license.  It wasn't in the complaint.  You certainly
2  have made it clear to us that you believe you've got the
3  authority to determine this, and I have no explanation for the
4  fact that we haven't come to this earlier in time other than the
5  fact that we have been struggling with the issue for a long time.
6  We did raise it in the summary judgment pleadings.  There is no
7  question it's late.  However, I think it's proper to brief it and
8  present that issue to the court.  And as I said, we're prepared
9  to go forward on the terms that Your Honor has told us we're
10 going to go forward on, but at the same time we feel that the
11 court should accept briefing on this issue.
12           THE COURT:  Mr. Harrigan?
13           MR. HARRIGAN:  Yes, Your Honor.  First of all, just on
14 the legal theory part of this, in our view what the court is
15 doing is supplying only -- and is authorized to supply missing
16 essential terms, of which we believe there is one, which is the
17 royalty rate, and that the rest of the terms of this contract are
18 embodied in the patents themselves and in the standards,
19 organizations, policies and procedures and the -- basically the
20 things that the parties signed up for when they submitted their
21 commitments.  I am not going to go on at any length about that,
22 but we think that it may well be that parties include hundreds of
23 terms in these agreements typically, but they are not essential
24 terms.
25      All the court needs to do is provide the terms that are

1  necessary to have a performable agreement, and just because there
2  are lots of bells and whistles in the typical contract doesn't
3  mean that they are essential or that they need to be supplied by
4  the court or even can be supplied by the court.  So our view is
5  that if you decide what the royalty rate is, we're essentially
6  there, and the court is not making a contract of the parties.
7  　　　I have a housekeeping item, although it's a somewhat urgent
8  one, which was part of the impetus for making the call last week,
9  and that is -- and now that we know that the breach trial is
10 going to be off in the relatively distant future, we would like
11 to clarify the requirement with respect to expert reports so that
12 we don't need to file expert reports on breach or damages in
13 July, but at some other date that is more attuned to what is now
14 going to be the trial schedule and if the court doesn't want to
15 be dealing with motions in limine and so forth relating to breach
16 and damages between now and September the 10th.
17 　　　　　THE COURT:  Mr. Palumbo, may I ask you to respond to
18 that narrow question, and then I'll give you the floor again.
19 　　　　　MR. PALUMBO:  To that question, Your Honor, I think
20 that that is in your discretion.  We think you should keep in
21 mind the fact that there has never been a bifurcation of
22 discovery and we don't know -- we don't understand why there
23 would be an expert on breach of duty and good faith or why they
24 would need a delay, and as I've said previously to Mr. Harrigan,
25 if there is some development after the trial on the RAND terms

1   that would provide a need to amend expert reports or file new
2   expert reports, obviously we can take that up at the time.  But,
3   again, while we don't see the need, that's clearly within your
4   discretion to decide.
5        With respect to the terms that you would decide at a trial,
6   if you go forward and make the decision that this is a contract
7   on open terms and that the court can decide those terms, the
8   terms that we believe you should decide are all "material" terms.
9   We will have a disagreement with Microsoft with respect to
10  whether there are terms in addition to the royalty that are
11  material.  We think there is a good deal of factual support in
12  this case, including admissions by Microsoft that there are other
13  e-terms in these agreements, but that is an issue that we and
14  Microsoft can breach, and it's not a hundred terms, but we think
15  there are more material terms that would be common in RAND
16  license agreements than merely the royalty, but we can leave that
17  issue for briefing and argument on a separate day.  So you would
18  have to decide, if you go forward, to actually set the terms of a
19  RAND license, you would need to decide only which terms are
20  material, and then what each of those material terms would be.
21           MR. HARRIGAN:  Your Honor, with respect to the expert
22  issue, my primary concern is the damages aspect of it, which
23  involves, among other things, figuring out what it costs to
24  dismantle Microsoft facilities in Germany in anticipation of an
25  injunction.  It's a lot of work.  There are going to be

1  depositions about it.  There are probably going to be motions
2  about it, and there is no reason -- we suggest that there is no
3  reason for anybody to be working on that within the current
4  compressed schedule for getting the RAND case ready.
5            THE COURT:  Thank you.  The ruling of the court is as
6  follows:
7       First, let me reaffirm that the breach of contract trial
8  will occur at a later date, and I don't need to wait until
9  Friday, because Motorola has announced that they want that trial
10 to be a jury trial.  So that's helpful.  Thank you, gentlemen.
11      I authorize Motorola to file its motion.  Be advised that
12 the opinion of the Court may be rather savage on what is going on
13 here, but since both sides seem intent on trying this case in the
14 newspapers, leaking settlement discussions and putting out press
15 releases, we'll give you something more to chew on.
16      I will tell you that the operating assumption of the court
17 as to right now is that Motorola, when it contracted for industry
18 standard patent status, obligated itself to make an offer on RAND
19 terms for a license to the patents that are covered, the H264 and
20 the 802.11 patents; that Microsoft has accepted that offer on
21 RAND terms, and what the court is doing is determining what those
22 RAND terms are.
23      In terms of expert reports on both breach and damages, they
24 are not called for at this time and they may be filed in
25 accordance with the schedule that the court puts out in regards

1  to the subsequent trial that we will be conducting.
2       Does that clarify everyone's situation at this time?
3  Mr. Palumbo?
4           MR. PALUMBO:  It does, Your Honor.  Thank you.  I
5  didn't anticipate that you would be pleased with this, but again,
6  we feel the obligation to do it, and I apologize that we haven't
7  come to grips with this sooner in time.
8           THE COURT:  Well, frankly it is consistent with
9  Motorola's approach to this litigation, which is to delay at all
10 possible costs and to back-track if they can get away with it,
11 so -- but I await your motion.  Both sides have been warned that
12 heavy monetary sanctions may be imposed on the law firms and the
13 parties bad faith or abusive conduct in the litigation will be
14 punished by equitable remedies going to the industry standard
15 patents.  That is why I am requiring the parties, in addition to
16 the lawyers, to sign the pleadings.
17      Mr. Harrigan?
18           MR. HARRIGAN:  Nothing here, Your Honor.
19           THE COURT:  Thank you, counsel.  We'll be in recess.

CERTIFICATE

    I, Denae L. Hovland, Official Court Reporter, do hereby certify that the foregoing transcript is true and correct.

                                     /S/Denae L. Hovland
                                     _____
                                     Denae L. Hovland