The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION, a Washington corporation,

                        Plaintiff,

            v.

MOTOROLA, INC., and MOTOROLA MOBILITY, INC., and GENERAL INSTRUMENT CORPORATION,

                        Defendants.

—————————————————————

MOTOROLA MOBILITY, INC., and GENERAL INSTRUMENT CORPORATION,

            Plaintiffs/Counterclaim Defendant,

            v.

MICROSOFT CORPORATION,

            Defendant/Counterclaim Plaintiff.

CASE NO. C10-1823-JLR

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT LICENSE AGREEMENT TO BE DETERMINED *AB INITIO* BY THE COURT

**NOTED ON MOTION CALENDAR:**
**Friday, August 10, 2012**

**REDACTED**

**ORAL ARGUMENT REQUESTED**

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................ 2

II.     BACKGROUND ......................................................................................... 6

        A.      Impetus For This Motion ................................................................ 6

        B.      Motorola's Contractual Commitments to Grant Licenses
                on RAND Terms .............................................................................. 7

        C.      Essential Patent Licensing Involves Many Material Terms ................................. 9

        D.      Microsoft's "Evolving Litigation Position" as to a Remedy ............................. 11

III.    LEGAL STANDARD FOR SUMMARY JUDGMENT ........................................ 12

IV.     THE REMEDY NOW SOUGHT BY MICROSOFT IS NOT PLEADED IN ITS
        COMPLAINT OR AMENDED COMPLAINT AND SHOULD BE REJECTED
        FOR THAT REASON ............................................................................... 12

V.      IN ANY EVENT, THE UN-PLEADED REMEDY NOW SOUGHT BY
        MICROSOFT IS PROHIBITED BY WELL-SETTLED LAW .............................. 13

        A.      There Is No Separate Contract Between Microsoft and Motorola ....................... 13

        B.      Microsoft's Request That The Court Create From Scratch A
                Motorola/Microsoft Patent License, Or Material Terms For Such A License,
                Would Fall Within The Prohibition Against Asking Courts To Create New
                Contracts Or Material Contract Terms ............................................... 18

        C.      Courts Can "Fill In" A Contract Term Only Under Narrow Exceptions Not
                Present Here ......................................................................... 19

VI.     MOTOROLA'S PROPOSAL FOR THE NOVEMBER TRIAL .................................... 22

VII.    CONCLUSION ........................................................................................ 23

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - i
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

CASES

5

*Amax Coal Co. v. United Mine Workers of Am., Int'l. Union*,
    92 F.3d 571 (7th Cir. 1996) ...............................................................................4, 22

6

7

*ATA Airlines, Inc. v. Federal Express Corp.*,
    665 F.3d 882 (7th Cir. 2011) ............................................................................19, 20

8

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..............................................................................................12

9

10

*Chaffee v. Chaffee*,
    145 P.2d 244 (Wash. 1943)...................................................................2, 4, 17, 18

11

12

*City of New Orleans v. New Orleans Waterworks Co.*,
    142 U.S. 79 (1891)...................................................................................................2

13

*DeSilva v. Kemper Nat'l Ins. Co.*,
    837 F. Supp. 98 (E.D. Pa. 1993) ...........................................................................20

14

15

*Dobson v. Hartford Fin. Servs. Grp.*,
    389 F.3d 386 (2d Cir. 2004)..............................................................................19, 21

16

17

*Dragt v. Dragt/DeTray, LLC*,
    161 P.3d 473 (Wash. Ct. App. 2007) ......................................................................3

18

*Farmers Ins. Co. of Washington v. Miller*,
    549 P.2d 9 (Wash. 1976).........................................................................................3

19

20

*Galen v. Cnty. of L.A.*,
    477 F.3d 652 (9th Cir. 2007) ................................................................................12

21

*Jaeger v. Canadian Bank of Commerce (Cal.)*,
    327 F.2d 743 (9th Cir. 1964) ..................................................................................2

22

23

*Keystone Land & Development Co. v. Xerox Corp.*,
    94 P.3d 945 (Wash. 2004)......................................................................................17

24

25

*Mackey v. Am. Fashion Inst. Corp.*,
    804 P.2d 642 (Wash. Ct. App. 1991).......................................................................4

26

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - ii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

*Menger v. Inland Empire Farmers' Mut. Fire Ins. Co.*,
    203 P. 934 (Wash. 1922)............................................................................2

*NEA-Coffeyville v. Unified School Dist. No. 445*,
    268 Kan. 384 (Kan. 2000).......................................................................20

*Ochoa v. Interbrew*,
    999 F.2d 626 (2d Cir. 1993)...................................................................20

*Panorama Village Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co.*,
    26 P.3d 910 (Wash. 2001).........................................................................2

*Park Avenue Condo. Owners Ass'n v. Buchan Devs., L.L.C.*,
    71 P.3d 692 (Wash. Ct. App. 2003).........................................................4

*Petrello v. White*,
    No. 10 CV 3082, 2012 WL 2803759 (E.D.N.Y. 2012) ...........................4

*Smith v. Daws*,
    614 F.2d 1069 (5th Cir. 1980) .................................................................4

*Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*,
    298 F.3d 1137 (9th Cir. 2002) ...............................................................16

*Wagner v. Wagner*,
    621 P.2d 1279 (Wash. 1980)..............................................................2, 18

*Westport Investments, LLC v. Kemper Sports Management, Inc.*,
    No. C07-5417BHS, 2008 WL 5210846 (W.D. Wash. Dec. 12, 2008)...................17

**OTHER AUTHORITIES**

11 *Williston on Contracts* § 31.6 (4th ed.)..........................................18, 19

13 *Williston on Contracts* § 37.23 (4th ed.)...............................................16

Restatement (Second) of Contracts.............................................................18

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - iii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Pursuant to Rules 7 and 56, Fed. R. Civ. P., and local CR 7(b), and pursuant to leave granted during the July 9, 2012 status conference, Motorola Mobility, Inc. and General Instrument Corp. (collectively "Motorola")[1] respectfully move for partial summary judgment denying Microsoft's "claim" that the Court should create *ab initio* a Motorola/Microsoft patent license, or material terms of such a license.  This motion is based on the independent grounds that Microsoft's purported "claim" (1) is not pleaded in Microsoft's Complaints or Counterclaims and (2) in any event, is prohibited by well-settled law that courts cannot make contracts for litigants.  Motorola seeks instead to refocus the November trial on the breach of contract issue, for the reasons explained below.  If the Court accepts Motorola's reasoning and proposal, the case will proceed on the current schedule without delay and all evidence currently being developed will still be used in a November trial.

Motorola submits that the issues raised in this Motion are complex issues of first impression.  As the Court recognized at the May 7, 2012 hearing: "It strikes me that we have been unable to find a legal authority for the proposition that a failure to agree on RAND terms then goes to a court, and the court sets up RAND terms.  Mostly because every time that nightmare scenario has arisen, the parties have retreated to being reasonable."  (May 7, 2012 Hr'g Tr. at 32.) Without clear precedent to guide it, Motorola appreciates the challenges faced by the Court in trying to craft a novel legal and procedural framework to consider Microsoft's request that the Court manufacture a contract for the parties.  However, after fully considering how Microsoft is asking the Court to proceed and having researched the applicable law in Washington, Motorola has concluded that it is improper for Microsoft to ask the Court to make a new contract between the parties or create the material terms of such a contract.  Motorola acknowledges the Court's concerns, as reflected in the transcript of the July 9, 2012 teleconference, but believes – for the

---

[1] Motorola Solutions, Inc. (formerly known as Motorola, Inc.), which is now independent from Motorola Mobility and General Instrument, takes no position on the issues raised in this motion.

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - 1
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

reasons explained herein – that this Motion correctly applies existing law and that the Court should instead consider Motorola's alternate proposal for the November trial.

## I.    INTRODUCTION

Motorola submits that Washington law, summarized here, prohibits Microsoft's request that the Court make a contract, or the material terms of a contract.

"Courts have no power to make new contracts or to impose new terms upon parties to contracts without their consent."  *City of New Orleans v. New Orleans Waterworks Co.*, 142 U.S. 79, 91-92 (1891).  *See also Jaeger v. Canadian Bank of Commerce (Cal.)*, 327 F.2d 743, 745 (9th Cir. 1964) (quoting *City of New Orleans*, 142 U.S. at 91-92); *Menger v. Inland Empire Farmers' Mut. Fire Ins. Co.*, 203 P. 934, 934 (Wash. 1922) ("courts cannot make new contracts for parties").

These principles have long been recognized in Washington:

> [It] is elementary law, universally accepted, that the courts do not have the power, under the guise of interpretation, to rewrite contracts which the parties have deliberately made for themselves.  The expressions of the various courts on the subject are tersely stated in 12 Am. Jur. 749, Contracts, § 228, as follows: 'Interpretation of an agreement does not include its modification ***or the creation of a new or different one***. A court is not at liberty to revise an agreement while professing to construe it.  ***Nor does it have the right to make a contract for the parties*** – that is, a contract different from that actually entered into by them. ***Neither abstract justice nor the rule of liberal construction justifies the creation of a contract for the parties which they did not make themselves or the imposition upon one party to a contract of an obligation not assumed.***[2]

*Chaffee v. Chaffee*, 145 P.2d 244, 252 (Wash. 1943) (collecting cases).[3]  *See also Wagner v. Wagner*, 621 P.2d 1279, 1284-85 (Wash. 1980) ("A court cannot, based upon general considerations of abstract justice, make a contract for parties which they did not make for

---

[2] All emphasis is added unless otherwise indicated.

[3] *Chaffee v. Chaffee* has been repeatedly cited approvingly by Washington courts.  *See, e.g.*, *Panorama Village Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co.*, 26 P.3d 910, 914 (Wash. 2001).

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - 2
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

themselves.") (citations omitted); *Farmers Ins. Co. of Washington v. Miller*, 549 P.2d 9, 11 (Wash. 1976) ("[T]he court cannot rule out of the contract language which the parties thereto have put into it, nor can the court revise the contract under the theory of construing it, ***nor can the court create a contract for the parties which they did not make themselves***….") (citations omitted); *Dragt v. Dragt/DeTray, LLC*, 161 P.3d 473, 480 (Wash. Ct. App. 2007) ("A court cannot, based on general considerations of abstract justice, make a contract for parties that they did not make for themselves.").

Despite this unambiguous Washington law, Microsoft has endorsed the proposition either that the Court create from scratch a Motorola/Microsoft patent license agreement, or set material terms for such an agreement.  Yet, as Microsoft has earlier conceded, Microsoft sought no such remedy in its Complaint or Amended and Supplemental Complaint in Case No. C10-1823JLR (the "Microsoft Action") or in its Answer and Counterclaims in Case No. C11-0343JLR (the "Motorola Action").[4]

There is no existing licensing contract between Motorola and Microsoft.  Instead, Motorola submits that there is simply a ***right*** to a license.  *See* May 7, 2012 Hr'g Tr. at 26-27; Dkt. 335 at 21.  Thus, there is no existing contract for the Court to interpret or in which the Court can merely "fill in" gaps.  Microsoft's counsel effectively conceded as much during the July 9 teleconference, contending (albeit incorrectly) that the terms of a Motorola/Microsoft license could be found in the patents and the Standard Setting Organization ("SSO") documents.  (July 9, 2012 Telephone Conf. Tr. at 6.)  It is self-evident that there are no license terms in the patents and, as explained below, there are no license terms anywhere in the SSO documents – to the contrary, the SSOs flatly eschew proposing license terms and expressly leave that to negotiations between the parties.

---

[4] The Court consolidated the two actions for all purposes on June 1, 2011.  (Dkt. No. 66 at 12.)

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - 3
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    If, as Microsoft now urges, the Court were to create a Motorola/Microsoft patent license

2    from scratch, or dictate material terms for such a license, that would violate the prohibition against

3    courts creating new contracts.[5]

4    Although under narrow exceptions courts can sometimes "fill in" a contract term, the facts

5    here do not meet those exceptions.  While there are agreements between Motorola and the SSOs,

6    the RAND commitments embodied in those agreements **explicitly** and **intentionally** do not

7    provide **stated** (or even "open") terms that could be imported by a court into a contract between

8    Motorola and Microsoft.   Instead, the unambiguous RAND licensing provisions of those

9    agreements bind Motorola to engage in bilateral, good-faith negotiations with potential third-party

10   licensees – like Microsoft – to attempt to reach RAND licensing agreements.[6]  In interpreting such

11   an agreement, the Court must enforce the agreement actually made, and lacks authority "to make a

12   contract for the parties – that is, a contract different from that actually entered into by them"

13   *Chaffee*, 145 P.2d at 252, by imposing a new obligation on Motorola to grant a license on terms to

14   be crafted by the Court at Microsoft's request.

15   Motorola respectfully submits that, in view of this clear and controlling precedent, the

16   appropriate procedure is for the Court to hold the breach of contract trial first, in November.  If the

17   jury finds no breach, then the relief actually requested by Microsoft (damages) should be denied,

18

19   [5] Moreover, to the extent that Microsoft is asking the Court to create a license *before* Microsoft's breach of contract

20   claim is determined, Microsoft is improperly asking the Court to grant it a remedy or relief *when there has been no finding of a breach* (and thus no injury) to remedy.  Such a request puts the cart before the horse, and is procedurally improper.  *See, e.g., Park Avenue Condo. Owners Ass'n v. Buchan Devs., L.L.C.*, 71 P.3d 692, 698 (Wash. Ct. App. 2003) (consideration of the effect of a violation on value prior to a finding of breach "puts the cart before the horse"

21   because "[e]ffect on value is not part of the definition of breach, it is part of the damages determination"); *see also Petrello v. White*, No. 10 CV 3082, 2012 WL 2803759, at *6 (E.D.N.Y. 2012) ("Plaintiffs' argument here puts the proverbial cart before the horse.  While a litigant is clearly entitled to present evidence of damages at trial, this step

22   presupposes that he or she has established liability."); *Amax Coal Co. v. United Mine Workers of Am., Int'l Union*, 92 F.3d 571, 576 (7th Cir. 1996) ("[T]here can be no remedy when there is no breach."); *Mackey v. Am. Fashion Inst. Corp.*, 804 P.2d 642, 643 (Wash. Ct. App. 1991) (observing that the trial court found that the plaintiff was entitled to

23   "no relief because no valid contract existed between the parties"); *Smith v. Daws*, 614 F.2d 1069, 1073 (5th Cir. 1980) (no grounds for judicial relief where there is no breach of contract).

24

25   [6] As the Court recognized, "[t]he parties agree that the operative contract language includes the language of Motorola's statements to the IEEE and the ITU, as well as the relevant language in the IEEE and ITU Policies."  (Dkt.

26   No. 335 at 13 n.6.)  These policies confirm that the agreement between Motorola and the SSOs envision negotiations that precede any license agreement.  (*See id.* at 23-24.)

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - 4
CASE NO. C10-1823-JLR

1   Microsoft's complaint should be dismissed, and the parties should be instructed to continue good-

2   faith, bilateral negotiations, as expected by the SSOs and outlined in their policies.[7]

3          If on the other hand the jury finds breach, it can determine damages (if any) and the Court

4   can enjoin Motorola from enforcing its 802.11 and H.264 standard essential patents against

5   Microsoft unless and until Motorola makes an offer that is consistent with RAND.  If necessary

6   (i.e., if Microsoft refuses Motorola's final offer), the Court can review Motorola's final offer for

7   the purpose of determining if Motorola's final terms are consistent with its RAND commitments.

8   If it is, Microsoft can either accept the offer (as it has told the Court it will do) or forego the right

9   to a RAND license and be subject to all available remedies.

10          This proposal – review by the Court of Motorola's actual proposed terms for compliance

11  with RAND after a determination of breach – is different from Microsoft's proposal that the

12  Court, prior to a determination of breach, should create RAND terms from scratch.  *See* Roger G.

13  Brooks & Damien Geradin, *Interpreting and Enforcing the Voluntary FRAND Commitment*,

14  International Journal of IT Standards and Standardization Research, Jan.-June 2011 (Ex. 16)[8], at 2:

15          [W]hen it is alleged that a patentee has failed to offer 'fair and reasonable' terms,
16          ***the role of a court is not to determine what 'fair and reasonable' terms would***
         ***be, but whether the terms offered***, taking into account all of the specific
17          circumstances between the parties and prevailing market conditions, ***fall outside***
         ***the range of reasonableness contemplated by the FRAND commitment***.

18  And, this procedure does not prejudice Microsoft because, if Motorola and Microsoft are unable to

19  agree on a RAND license after the bilateral negotiations envisioned by the SSO policies,

20  Microsoft will have the opportunity to have the Court review Motorola's proposed licensing terms

21

22  for compliance with RAND.  Ultimately, Microsoft will either have a RAND license or have

23  ────────────────
24  [7] To be clear, Motorola believes that any controversy Microsoft's Complaint has placed before the Court would be resolved by a determination that there was no breach, such that this case would be at an end.  Assuming, arguendo, this Court were to disagree, however, it would at most follow that it might retain interim jurisdiction while negotiations are ongoing, in case either party returns with a fresh complaint as to the absence of good faith by the other.  In no event would there be occasion for any active judicial intervention while the parties are negotiating between themselves without any such complaint.

25  [8] "Ex. ___" refers to the stated Exhibit to the Declaration of Kevin J. Post, submitted concurrently herewith.

26  MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - 5
CASE NO. C10-1823-JLR

1   refused to enter into a license on terms that the Court has reviewed and found to be RAND,

2   thereby subjecting itself to Motorola's claims for relief.[9]

3   ## II.   BACKGROUND

4   ### A.  Impetus For This Motion

5       When Motorola fully appreciated that the Court intended to have a separate trial to

6   determine the actual terms of a RAND contract, as opposed to identifying what is RAND for use

7   in evaluating reasonableness in the context of Microsoft's breach claim, Motorola expressed its

8   concerns about this issue of first impression in its April 20, 2012 Reply In Support of Its Motion

9   For Partial Summary Judgment.  (Dkt. No. 290 at 11-12, n.10.)  Motorola continued to research

10  this issue and, having concluded that Microsoft's request for a judicially created RAND contract is

11  not appropriate, felt compelled to bring this to the Court's attention, so that the Court could further

12  consider the best way to proceed.   Motorola does not wish to have the Court and the parties

13  manage these novel issues in a manner that is inconsistent with settled law and risks remand.

14       Motorola acknowledges the Court's concern that Motorola is seeking delay of this

15  proceeding.  Respectfully, Motorola has not sought delay.  Since the Court originally set trial for

16  November 2012, Motorola has always endorsed that schedule, asking only to maintain the

17  previously scheduled period for discovery and pretrial preparation.  Motorola is still prepared to

18  proceed with trial in November – whether on the basis recommended in this motion (the breach

19  issue) or, if the Court rejects this motion, on the issues set by the Court.  Motorola submits that its

20  proposal regarding how to proceed is proper.  But importantly, the evidence being prepared by the

21  parties, including depositions and document discovery regarding offers and ongoing negotiations,

22  will be pertinent no matter which way the Court decides to proceed.

---

[9] Motorola acknowledges the Court's statements that the fact finder needs to determine the RAND rate to determine whether there has been a breach.  As part of the breach determination, the jury will have the opportunity to consider evidence as to what is the range of reasonable "RAND" rates.

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - 6
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1

**B.  Motorola's Contractual Commitments to Grant Licenses on RAND Terms**

2          As the Court has held, Motorola's contractual commitment in relation to Microsoft arises

3   from the letters of assurance ("LOAs") that Motorola sent to the ITU and IEEE, respectively,

4   relating to the H.264 standard and various portions of the 802.11 standard.  (*See*, *e.g.*, Dkt. No.

5   335 at 3-6.)  In its February 27, 2012 Order, the Court ruled that these LOAs "create enforceable

6   contracts between Motorola and the respective standard setting organization" requiring Motorola

7   "to license its essential patents on RAND terms."  (*Id*. at 6, 10; *see also* Dkt. No. 188 at 9-11.)  As

8   the Court also recognized, the key question in these cases is thus "the rights and obligations under

9   the contracts" between Motorola and the SSOs.  (Dkt. No. 335 at 8-9.)

10          Motorola has submitted numerous LOAs to the IEEE stating that it "will grant" or "is

11   prepared to grant" a license under RAND terms for its patents essential to the 802.11 Standard.

12   *See* Ex. 7.  A typical Motorola LOA to the IEEE provides:

13          The Patent Holder will grant [or is prepared to grant] a license to an unrestricted
            number of applicants on a worldwide, non-discriminatory basis and on reasonable
14          terms and conditions to comply with the [Proposed] IEEE Standard.

15   *See, e.g., id*. at MOTM_WASH1823_0000008, 002.  Motorola has similarly sent declarations to

16   the ITU stating that it will grant licenses on RAND terms for its patents essential the H.264

17   Standard. *See* Ex. 5.  A typical ITU declaration provides:

18          The Patent Holder will grant a license to an unrestricted number of applicants on a
19          worldwide, non-discriminatory basis and on reasonable terms and conditions to
            use the patented material necessary in order to manufacture, use, and/or sell
20          implementations of the above ITU-T Recommendation | ISOC/IEC International
            Standard.

21

22   *See, e.g., id*. at MOTM_WASH1823_0000039.

23          Critically, these statements do not exist in isolation in the Motorola-SSO agreements, but

24   are instead expressly clarified by other statements.  As the Court has recognized, the language of

25   the IEEE and ITU LOAs and bylaws and policies – which (as the Court observed) the parties have

26   agreed are part of the contracts between Motorola and the SSOs  (Dkt. No. 335 at 13 n.6.) – make

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - 7
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

it clear that these promises mean that licenses *will be negotiated individually* by the patent holders and prospective licensees. (*See, e.g.*, *id*. at 18 ("Motorola correctly asserts that the IEEE and ITU Policies contemplate that RAND licenses will be negotiated between the patent holder and the implementer of the standard."); *id*. at 24 ("[T]he language of Motorola's agreements with the IEEE and the ITU envisions a negotiation between the parties towards a resulting RAND license.").)

With respect to the IEEE, the IEEE patent policy expressly states that the "*IEEE is not responsible . . . for determining whether any licensing terms or conditions* provided in connection with submission of a Letter of Assurance, if any, or in any licensing agreements *are reasonable or non-discriminatory*." Ex. 12 at MOTM_WASH1823_0054739. The IEEE LOAs expressly declare, "No license is implied by submission of this letter of assurance." *See, e.g.*, Ex. 7 at MOTM_WASH1823_0000001, 002, 008, 010. If an express license had been created merely by submission of the LOA, there would have been no reason to disclaim implied licenses.

The ITU's LOAs similarly state that they do "not represent an implied license grant" and do "not represent an actual grant of a license." Ex. 5. As one of the ITU's LOAs declares, "*Negotiations of licenses are left to the parties concerned and are performed outside the ITU-T ISO/IEC*." *Id.* at MOTM_WASH1823_0000039; *see also id.* at MOTM_WASH1823_0000036 ("Negotiations are left to the parties concerned and are performed outside the ITU-T, ITU-R, ISO, or IEC."); 046 (same); 053 (same); 057 (same); 061 (same). Moreover, as the Common Patent Policy for ITU-T/ITU-R/ISO/IEC itself states, "[t]he detailed arrangements arising from patents (licensing, royalties, etc.) *are left to the parties concerned, as these arrangements might differ from case to case*."[10] Ex. 13 at MOTM_WASH1823_0092833.

---

[10] A contract provision must be read with the whole contract and in light of all the circumstances surrounding the contract. *Stender v. Twin City Foods, Inc*., 82 Wn. 2d 250, 254, 510 P.2d 221, 224 (1973). Thus, the "will grant" and "is prepared to grant" language in the contracts must be read in conjunction with the provisions of the contracts that require RAND license terms to be determined by negotiations between the patent holder and the implementer of the standard. *Id*.; *Seattle-First Nat. Bank v. Westlake Park Associates*, 42 Wn. App. 269, 274, 711 P.2d 361, 364 (1985).

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - 8
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Thus, Motorola respectfully submits that there is no existing license between Motorola and Microsoft – express or implied – within which gaps can be filled or missing terms inferred.[11]

### C. Essential Patent Licensing Involves Many Material Terms

Since the early 1990s, Motorola's licensing program has resulted in over ██ essential patent licenses, including licenses to sophisticated companies such as Ericsson, Nokia, Philips, RIM, VTech, HTC, Samsung, and Qualcomm. (Dkt. No. 231 at 3); Ex. 8 at Exhibit E. In each of these cases, Motorola and prospective licensees engaged in good-faith, bilateral negotiations to determine acceptable terms and conditions for a final, executed license that accounts for the unique circumstances of a specific licensing situation. (*See* Dkt. No. 232 (Taylor Decl.) at ¶¶ 7-9.)

As these negotiations have shown, rate is not the only material RAND term. Rather, through negotiations, which sometimes take years, parties discuss a panoply of material terms, including royalty rate and base, relative exposure, term and termination, geographic scope, assignability, grant-back licenses and other non-monetary compensation, and protective clauses, such as defensive suspension or termination clauses. Ex. 4 at 3-4, 24-27; Ex. 6 at 13, 15-16; Ex. 2 at 2593-2600, 2627-34. Motorola's licensing history demonstrates that the terms of individual licenses vary significantly from license to license, depending upon the circumstances, and confirms that there are other material terms besides rate – these terms are not mere boilerplate, as the Court's statement on July 9 suggests the Court might believe. (July 9, 2012 Telephone Conf. Tr. at 3.)

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████████████████████████████     ████████████ ,

---

[11] This is not a new position – Motorola stated at the May 7, 2012 summary judgment hearing that the facts here are "light years away" from a situation where there is a contract with mere missing terms. (May 7, 2012 Hr'g Tr. at 34.)

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - 9
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████████████[12]

5      That royalty rates are not the only material terms of RAND contracts is well understood by

6 licensing experts.  *See, e.g.*, Damien Geradin, *Standardization and Technological Innovation:*

7 *Some Reflections on Ex-Ante Licensing, FRAND, and the Proper Means to Reward Innovators*,

8 (Tilburg Law & Economics Center Discussion Paper, June 2006) (Ex. 15) at 9 ("[R]oyalty rates

9 *are just one element* of the consideration that may be agreed between the parties to a licensing

10 negotiation.  ***In practice, there are many additional variables that need to be agreed and all of***

11 ***which are of appreciable value, such as cross-licensing, exhaustion of patent rights, upfront***

12 ***fees, jurisdiction, venue, assignability, scope of licence*** [*sic*] ***(e.g. products, territory, have made***

13 ***rights, etc.), audit requirements, payment terms and scheduling, currency choice, etc.***  The full

14 commercial picture is thus more complex as there are important elements of consideration other

15 than royalties.").  Thus, while many contract terms are indeed standard (e.g., the parties are

16 authorized to make the agreement, agreements can be signed in duplicate copies, and the like),

17 significant terms like those referred to above should not be viewed as mere "boilerplate" and

18 instead always require negotiation.

19      The ITU, in its form Letters of Assurance, also recognized that there are important material

20 terms other than rate:

21 _____

[12] ████████████████████████████████████████████████

22 ████████████████████████████████████████████████

23 ████████████████████████████████████████████████

24 ████████████████████████████████████████  Intel has indicated that it "typically" (but perhaps not always) includes a defensive suspension clause in its licenses for essential patents.  *See* www.intel.com/content/www/us/en/standards/standards-patent-licensing-practices.html.  The issue of defensive suspension or termination clauses is instructive.  As

25 Microsoft's Michele Herman recognized in a 2010 article, *some* holders of essential patents use such clauses in their licenses, while others license instead under reciprocal licenses – and presumably others do neither.  *See* Ex. 14 at

26 MOTM_WASH1823_0402432.

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - 10
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1
2
3
4
5
6

> Free of charge: The words "free of charge" do not mean that the Patent Holder is waiving all of its rights with respect to the essential patent. Rather, "free of charge" refers to the issue of monetary compensation; *i.e.*, that the Patent Holder will not seek any monetary compensation as part of the licensing arrangement (whether such compensation is called a royalty, a one-time licensing fee, etc.). However, while the Patent Holder in this situation is committing to not charging any monetary amount, ***the Patent Holder is still entitled to require that the implementer of the above document sign a license agreement that contains other reasonable terms and conditions such as those relating to governing law, field of use, reciprocity, warranties, etc.***

7

*E.g.*, Ex. 5 at MOTM_WASH1823_0000036, 046, 053.

8
9
10
11
12
13
14
15
16
17

Finally, Microsoft ***itself*** recognizes that RAND licensing involves the negotiation of many material terms.  In a July 16, 2008 presentation, Amy Marasco (Microsoft's General Manager of Standards Strategy), Kent Baker (V.P., Director of Global Intellectual Property Rights Policy for QUALCOMM Incorporated), and Dan Bart (Chief Technology Officer of the Telecommunications Industry Association), gave a presentation in which they explained that a patent holder who makes a RAND commitment agrees that it is prepared to make licenses under F/RAND terms, "including" both "financial terms (e.g., up-front fees and/or running royalties)" and "other non-financial 'terms and conditions' (e.g., cross-licenses, scope of use, non-sublicenability [sic], reciprocity."  Ex. 18 at 11.   "Typically," Marasco added in a different presentation, "***no two licenses will be identical***."  Ex. 19 at 8.

18

**D.  Microsoft's "Evolving Litigation Position" as to a Remedy**

19
20
21
22
23
24
25
26

By Microsoft's own admission, it would "be fair" to characterize its current request that the Court grant the remedy of dictating the terms of a new licensing contract between Motorola and Microsoft as an "evolving litigation position."  (May 7, 2012 Hr'g Tr. at 70.)  Indeed, this was never a remedy that Microsoft sought in either the Microsoft Action or the Motorola Action.  In its Prayer for Relief in its Amended and Supplemental Complaint in the Microsoft Action, Microsoft asked only that the Court: decree that Microsoft "is entitled to license" Motorola's 802.11 and H.264 patents "on a non-discriminatory basis on reasonable terms and conditions" in accordance

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  with Motorola's IEEE and ITU-T commitments.  (Dkt. No. 53 at 24-25.)[13]  Microsoft's Prayer for

2  Relief as to the RAND counterclaims in the Motorola Action is almost identical.  (*See* Case No.

3  2:11-cv-00343-JLR, Dkt. No. 37, at 36-37.)  Microsoft thus sought the option to take the license

4  without committing to do so.  It did ***not*** seek a Court determination of RAND terms.

5  　　Indeed, Microsoft refused until at least September 2011 to commit to taking a license from

6  Motorola on RAND terms.  As Microsoft's counsel conceded, "it's fair to say the position of

7  Microsoft specifically asking the court to grant – to see to it that it was granted a license and that it

8  would take one, arose in September of 2011."  (May 7, 2012 Hr'g Tr. at 70.)  Microsoft's

9  pleadings simply never requested the relief now sought.

10  **III.    LEGAL STANDARD FOR SUMMARY JUDGMENT**

11  　　As the Court explained in its June 6, 2012 Order (Dkt. No. 335 at 9), summary judgment is

12  appropriate if the evidence, when viewed in the light most favorable to the non-moving party,

13  demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to

14  judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317,

15  322 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the

16  initial burden of showing there is no genuine issue of material fact and that he or she is entitled to

17  prevail as a matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets his or her burden,

18  then the non-moving party "must make a showing sufficient to establish a genuine dispute of

19  material fact regarding the existence of the essential elements of his case that he must prove at

20  trial" in order to withstand summary judgment.  *Galen*, 477 F.3d at 658.

21  **IV.    THE REMEDY NOW SOUGHT BY MICROSOFT IS NOT PLEADED IN ITS**
       **COMPLAINT OR AMENDED COMPLAINT AND SHOULD BE REJECTED FOR**
22       **THAT REASON**

23  　　As previously noted, Microsoft never pleaded or requested that the Court create *ab initio* a

24  Motorola/Microsoft patent license, or material terms for such a license.  To the contrary, in its

25

26  _____
[13] The Amended and Supplemental Complaint differs from the original Complaint only in that it seeks both a
preliminary and a permanent injunction and also seeks an injunction barring Motorola from enforcing patent

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - 12
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Prayers for Relief, Microsoft asked (apart from damages, costs, and fees) only for declarations that Motorola had breached its contracts with the SSOs, that Motorola had not offered licenses under RAND terms, and that Microsoft is entitled to such licenses, along with an injunction preventing Motorola from demanding excessive royalties or enforcing infringement claims on standard essential patents that Motorola had refused to license on RAND terms.  (Dkt. No. 54 at 24-25; Case No. 2:11-cv-00343-JLR, Dkt. No. 37, at 36-37.)

If Microsoft actually had pleaded a claim, perhaps in the nature of specific performance, to have the Court determine RAND terms of a new contract, Motorola appropriately could have moved for dismissal of that claim or raised an argument demonstrating how such a request violates Washington law prohibiting courts creating new contracts.  Microsoft should not find itself in a more favorable position by not having pleaded the relief it now seeks.  For this threshold reason, the Court should reject Microsoft's "claim" that the Court should create RAND contract terms.

## V.   IN ANY EVENT, THE UN-PLEADED REMEDY NOW SOUGHT BY MICROSOFT IS PROHIBITED BY WELL-SETTLED LAW

### A.   There Is No Separate Contract Between Microsoft and Motorola

As a threshold matter, Microsoft has not identified a contract between Motorola and Microsoft that it contends is the basis for its demand that the Court create *ab initio* a Motorola/Microsoft patent license, or material terms of such a license.  (*See, e.g.*, Dkt. No. 335 at 8-9.)

### 1.   There Was No Licensing Contract Between Microsoft and Motorola at the Time These Suits Commenced

Notably, no party argues that, at the time these suits were filed, there was a licensing contract between Motorola and Microsoft.  Indeed, Microsoft's complaint alleges the **opposite** – that Motorola has breached its promise to the SSOs by **refusing** to offer a satisfactory license to

---

infringement claims brought elsewhere in violation of Motorola's RAND commitments.  (*Compare* Dkt. No. 1 at 22 *with* Dkt. No. 53 at 24-25.)

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - 13
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

Microsoft.  (*See, e.g.*, Dkt. No. 53 at 16 ("In willful disregard of the commitments it made to IEEE and the ITU-T, Motorola has **refused** to extend to Microsoft a license consistent with Motorola's promises for any of Motorola's 'essential' patents."); *id*. at 20 ("With respect to each of the SDO Patents in Suit, Defendants have **refused** to offer Microsoft a license consistent with their contractual undertakings to the IEEE-SA, ITU and their participating members."); *id*. at 21 ("Defendants breached these contracts by **refusing** to offer licenses to any essential patents (including the SDO Patents in Suit) under reasonable rates, with reasonable terms, and on a non-discriminatory basis.").)

Thus, Microsoft has repeatedly stated at various times that it wants the Court to **give** it a license – **not** that one already exists that the Court should interpret or enforce.  (*See, e.g.*, Dkt. No. 209 at 4 ("In this action, Microsoft **seeks** the RAND license that Motorola contracted to provide.").)

Whatever remedy Microsoft thinks it is entitled to thus cannot spring from interpretation of an existing licensing contract between it and Motorola – because none exists.

### 2.   The Motorola-SSO Contracts Bind Motorola To Engage in Bilateral, Good-Faith Negotiations Leading to RAND Terms

The Court has previously determined that there **are** agreements between Motorola and the SSOs, as confirmed by the LOAs and the patent policies of the IEEE and ITU.  (*See, e.g.*, Dkt. No. 335 at 3-6; *see also id*. at 13 n.6 (recognizing parties' agreement that the operative contract language includes the language in the IEEE and ITU Policies).)  The Court has similarly recognized that Microsoft is a third-party beneficiary of those agreements.  (Dkt. No. 188 at 10; Dkt. No. 335 at 13.)  As demonstrated by Motorola's promises to grant licenses on RAND terms and the statements that the terms of such licenses would be negotiated by the patent holder and

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - 14
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

potential third-party licensees, Motorola's commitment to the SSOs is that it will negotiate in good faith with all comers interested in receiving a license.  Motorola stands by that commitment.



As explained above, Motorola's declarations and letters of assurance to the IEEE and ITU demonstrate that these SSO agreements do *not* create any contract with a third-party, and that any such contract can be created *only* through bilateral negotiation between the patent holder and the prospective licensee.  *See, e.g.*, Ex. 5; Ex. 6; Ex. 12 at 11-13.  These LOAs, and the policies of the ITU and IEEE, do not dictate RAND terms and conditions.  Instead, they expressly leave to the involved parties the job of negotiating a license that is RAND.  *See, e.g.*, Ex. 12 at 9-10.  The RAND commitments of the Motorola-SSO agreements are thus commitments to license on *negotiated* terms that did not then (or now) exist.

Even Microsoft's representatives agree that the RAND commitments from patent holders to the SSOs do not create licenses on undefined terms, but instead bind the patent holder to negotiate the terms of any such future contract.  For example, in its ITC case against Motorola, Microsoft's own RAND expert stated that:

Microsoft's General Manager of Standards Strategy, Amy Marasco, stated that "[a] prospective implementer [e.g., Microsoft] that has requested a license *will negotiate on a private bilateral basis* with the patent owner to determine *whether* they can arrive at a mutually

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - 15
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

acceptable agreement on RAND terms."  Ex. 19 at 8.  Similarly, in a June 14, 2011 submission to the Federal Trade Commission regarding a Patent Standards Workshop, Marasco reiterated that:

> RAND-based IPR policies provide a *flexible framework* to help *enable customized bi-lateral negotiations for patent licenses* that generally are not limited to just the essential patent claims in connection with a standard.

Ex. 20 at 3.   "RAND," she added, "is a time-tested and effective approach to licensing commitments.  Like other 'reasonableness' standards, *it does not dictate specific licensing terms*, but it does provide flexibility across a diverse range of situations."  *Id*. at 12-13.

As a third party beneficiary, Microsoft is entitled to enforce Motorola's contractual commitment to the SSOs that Motorola will negotiate in good faith with all comers interested in receiving a license to its patents essential to that standard.  (Dkt. No. 335 at 12.)  It is not, however, entitled to ask the Court to set RAND terms for a contract that does not yet exist.

### 3.  The Motorola-SSO Agreements Do Not Create A License Between Motorola and Microsoft on RAND Terms

As a third party beneficiary, Microsoft is entitled only to what was promised in the contracts.  *See, e.g.*, 13 *Williston on Contracts* § 37.23 (4th ed.) ("*[T]he alleged [third party] beneficiary's rights, like the rights of the promisee, are absolutely defined by the terms of the contract*."); *Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1145-1146 (9th Cir. 2002) ("'The rights of a third-party beneficiary *are limited by the contract* between the promisor and the promisee.'") (citing *Punikaia v. Clark*, 720 F.2d 564, 570 (9th Cir. 1983)).

As discussed above, while in the LOAs Motorola stated that it "is prepared" to or "will" grant a license on RAND terms, the LOAs and the IEEE and ITU patent policies make clear that the LOAs do not create actual or implied licenses, and the patent holder and potential licensees are responsible for negotiating all licensing terms. Ex. 5; Ex. 6.  Put another way, the LOAs do *not*

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - 16
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

state that Motorola is making an open offer of a license with known terms that any party can accept, or with terms to be dictated by a court.  "Interpreting" the LOAs as creating such an offer would run exactly counter to the intention of the contracting parties, and would be inappropriate under Washington law as a rewriting of the contracts.  *See, e.g.*, *Chaffee*, 145 P.2d at 252.

Because the Motorola-SSO agreements intentionally do not provide or create licensing terms, Microsoft cannot form a new contract simply by announcing its intent to benefit from Motorola's agreement with the SSOs.  Motorola submits that Microsoft has a right to a license. *See, e.g.*, May 7, 2012 Hr'g Tr. at 26-27; Dkt. 335 at 21.[14]  The right to a license is different from an actual license.

Even if there were a contract between Motorola and Microsoft, any such contract could at most be viewed as a "contract to negotiate," given that it would be based solely on Motorola's commitment to negotiate in good faith with all comers interested in receiving a license to its patents essential to that standard.

> In a contract to negotiate, the parties exchange promises to conform to a specific course of conduct during negotiations, such as negotiating in good faith, exclusively with each other, or for a specific period of time.  Under a contract to negotiate, the parties do not intend to be bound if negotiations fail to reach ultimate agreement on the substantive deal.   In contrast to an agreement to agree, under a contract to negotiate, no breach occurs if the parties fail to reach agreement on the substantive deal.  The contract to negotiate is breached only when one party fails to conform to the specific course of conduct agreed upon.

*Keystone Land & Development Co. v. Xerox Corp.*, 94 P.3d 945, 948 (Wash. 2004) (citation omitted); *see also Westport Investments, LLC v. Kemper Sports Management, Inc.*, No. C07-5417BHS, 2008 WL 5210846, at *7 (W.D. Wash. Dec. 12, 2008) ("Washington courts recognize

---

[14]  Indeed, the Court has instructed the parties to submit a "boilerplate" agreement with only the rate missing. (July 9, 2012 Telephone Conf. Tr. at 3.)  It must follow that there is in fact no existing license between the parties.

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - 17
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    three similar, yet legally distinct, types of agreements: (1) an agreement to agree, (2) an agreement

2    with open terms, and (3) a contract to negotiate.") (citing *Keystone*, 94 P.3d at 948).

3        For these reasons, even though Microsoft is a third party beneficiary of Motorola's

4    promise to negotiate in good faith, there is no separate contract in existence between Microsoft

5    and Motorola from which the Court can infer missing material terms.

6    **B.    Microsoft's Request That The Court Create From Scratch A
       Motorola/Microsoft Patent License, Or Material Terms For Such A License,
7       Would Fall Within The Prohibition Against Asking Courts To Create New
       Contracts Or Material Contract Terms**

8        As discussed at pages 2-3, *supra*, it is "elementary law, universally accepted, that the

9    ***courts do not have the power, under the guise of interpretation, to rewrite contracts which the***

10   ***parties have deliberately made for themselves***. . . .   A court is not at liberty to revise an agreement

11   while professing to construe it.   ***Nor does it have the right to make a contract for the parties*** –

12   that is, a contract different from that actually entered into by them."   *Chaffee*, 145 P.2d at 252

13   (collecting cases); *see also Wagner*, 621 P.2d at 1284-85; *Farmers Ins. Co. of Washington*, 549

14   P.2d at 11; *Dragt*, 161 P.3d at 480.   There is no existing Motorola-Microsoft license here.   If, as

15   Microsoft now urges, the Court were to create from scratch a Motorola/Microsoft patent license,

16   or material terms for such a license, that would violate the prohibition against Courts creating new

17   contracts or contract terms.

18   **C.    Courts Can "Fill In" A Contract Term Only Under Narrow Exceptions Not
       Present Here**

19       Although the Restatement (Second) of Contracts provides some exceptions to "the general

20   rule" that "prevents the court from adding terms or previsions to the contract," 11 *Williston on*

21   *Contracts* § 31.6 (4th ed.), those exceptions are narrow and inapposite here, because there is no

22   contract between Motorola and Microsoft and because Motorola and the SSOs expressly agreed

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - 18
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

that the terms of licenses between Motorola and prospective licensees would be negotiated by the parties.

Only the narrowest of circumstances justify "filling in" missing contract terms – "not because they are reasonable, but because they are necessarily involved in the contractual relationship, such that the parties must have intended them and must have failed to express them only because of sheer inadvertence or because they are too obvious to need expression." *Id.* at § 31.7.  Therefore, a missing term may be "filled in" only if the Court can discern what the parties "must have intended" from the existing contract as a whole.  *Dobson v. Hartford Fin. Servs. Grp.*, 389 F.3d 386, 399 (2d Cir. 2004) ("In such cases, if the interpreting court can discern from the contract as a whole what the parties 'must have intended,' it should enforce that intention despite a lack of express terminology.").

For these reasons, when a "price" term would be calculated through bilateral negotiations, a missing price term should not be "filled in" by the Court.  In *ATA Airlines, Inc. v. Federal Express Corp.*, for example, the Seventh Circuit (Posner, J.) reversed a judgment for breach of contract, and held the contract unenforceable due to the absence of a price term, explaining that a price term could not be supplied by the Court where there is "no agreed-upon formula for calculating the price."[15]  665 F.3d 882, 886-88 (7th Cir. 2011):

> Even if we assumed – unrealistically – that all the other holes that we mentioned in the [contract] could be filled by a court from industry standards, course of

---

[15] Judge Posner noted the "proper division of responsibility between the contracting parties, on the one hand, and a court asked to enforce a purported contract, on the other," to be as follows: the parties are required to decide "key terms," such as price, while the court may be asked "to resolve only issues that, being **unlikely to arise**, the parties should not be required to have foreseen and provided for." *Id.* at 887.  The term Microsoft encourages the Court to supply here, a RAND rate, is not the type of issue that was "unlikely to [have] arise[n]" between the parties.  To the contrary, it clearly was determined to be set by bilateral negotiations between the parties.  Thus, provision of a RAND rate falls outside "the proper division of responsibility" between the parties and the Court – particularly since the parties to the Motorola-SSO contracts expressly agreed that the RAND terms would be decided **by negotiation** between the patent holders and the third-party potential licensees.

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - 19
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

dealing, trade usage, or some other objective source of guidance that enables judicial completion of an incomplete contract, . . . the price term – FedEx's compensation for providing team leadership and transferring mobilization value points to team members – could not be supplied from any such source. That compensation was the result of ad hoc negotiations and thus was determined by the parties' circumstances each year at the time of contracting. It had usually been 7 percent but one year had plunged to 4.5 percent.

"Courts," Judge Posner concluded, "interpret and enforce contracts; **they don't make contracts**." *Id.* at 886.

It has also been held improper for courts to purport to "fill in" other material terms that would have been the result of bilateral negotiation. *See, e.g.*, *Ochoa v. Interbrew*, 999 F.2d 626 (2d Cir. 1993) (reversing a district court's decision to "fill in the gaps" by supplying a termination provision, noting that "Courts are without authority to supply the missing terms of a contract which the parties themselves had either not seen fit to place in their agreement, or which they omitted to agree upon"); *DeSilva v. Kemper Nat'l Ins. Co.*, 837 F. Supp. 98, 102 (E.D. Pa. 1993) (declining to "fill in the gaps" by supplying an arbitration clause); *cf. NEA-Coffeyville v. Unified School Dist. No. 445*, 268 Kan. 384, 401 (Kan. 2000) (discussing cases in which "filling in" missing contract terms was warranted because the parties failed to foresee future circumstances – a situation not present here).

During the July 9, 2012 telephone conference, the Court noted that it expected everything in RAND licensing contracts except for the royalty rate to be "boilerplate." As explained above, this is not the case – there are many material terms to a RAND license in addition to rate. Nevertheless, the Court ordered the parties to prepare and submit an agreed-to boilerplate agreement or, if they could not do so, to "submit contested boilerplates and [the Court] may develop one." (July 9, 2012 Telephone Conf. Tr. at 3.) Motorola intends to comply with the Court's directive. However, the facts here do not meet any of the narrow exceptions allowing

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - 20
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1    courts to "fill in" missing contract terms, including having the parties supply missing terms after

2    the fact.  Here, there simply has never been a RAND licensing contract between Motorola and

3    Microsoft.  The RAND commitment required by SSOs does not specify the terms of a RAND

4    license agreement for good reason: because SSOs recognize that RAND licenses are not "one size

5    fits all."  Rather, each RAND license is unique, laden with a variety of material terms, and the

6    product of bilateral negotiations that take into account the idiosyncrasies of each pair of

7    contracting parties.  Ex. 10 at 8; Ex. 9 at ¶ 11; Ex. 20 at 3, 12-13.

8

9           Specific RAND terms are therefore ***intentionally*** not specified in advance in the RAND

10   commitment required by SSOs at issue in this case.  Instead, the RAND commitments of the

11   Motorola/SSO agreements ***expressly*** require Motorola to negotiate the RAND terms with

12   prospective licensees.  *See*, *e.g.*, Ex. 5 at MOTM_WASH1823_0000039, 053, 057, 061; Ex. 7 at

13   MOTM_WASH1823_0000001, 002, 008, 010; Ex. 12 MOTM_WASH1823_0054739; Ex. 13 at

14   MOTM_WASH1823_0092833.  Those terms are not omitted because the parties failed to foresee

15   the need for those terms, or because of "sheer inadvertence or because they are too obvious to

16   need expression."  Indeed, those terms are not "omitted" at all, but are expressly defined to require

17   negotiation by the contracting parties.  Moreover, because the material terms in RAND licenses

18   are highly variable, none of those terms – let alone all of them together – meets the requirement

19   that "the interpreting court can discern from the contract as a whole what the parties 'must have

20   intended.'"  *Dobson*, 389 F.3d at 399.

21

22          With respect, there is no basis for curing this problem by drafting during litigation

23   comprehensive "boilerplate" licensing agreements and then "filling in" a remaining material term

24   (the rate).  There is similarly no basis to take competing "boilerplate" licensing proposals from the

25   parties and then "develop" a single unified agreement.  (*See* July 9, 2012 Telephone Conf. Tr. at

26

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - 21
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

3.)  This is simply another way of creating terms that do not already exist for a license that does not exist.

## VI.    MOTOROLA'S PROPOSAL FOR THE NOVEMBER TRIAL

As stated above, Motorola believes that the November trial can and should be used to advance this dispute toward resolution.  Motorola submits that the Court should try the breach of contract claim – the claim actually pleaded by Microsoft – on November 13.  Indeed, there is no reason to try anything else, until and unless a breach has been found.  *See, e.g.*, *Amax Coal*, 92 F.3d at 576 ("[T]here can be no remedy when there is no breach.").

If the jury finds no breach, then Microsoft's complaint should be dismissed and the parties should be left to continue negotiations, pursuant to the expectations of the SSOs, until they reach agreement or impasse.  Indeed, the parties continue to negotiate (in fact, Motorola made a revised offer just a few weeks ago) and are not yet at impasse, so there is not yet a final offer to review.  Review of the final offer for RAND compliance would occur later, if needed.

If the jury finds a breach, it can assess damages (if any).  The Court can then review the last offer made by Motorola to Microsoft before trial, to determine if Motorola's proposed terms are consistent with RAND.  This procedure is similar to the German Orange Book remedy and is also the course of action recommended in commentary:

> [W]hen it is alleged that a patentee has failed to offer 'fair and reasonable' terms, *the role of a court is not to determine what 'fair and reasonable' terms would be*, but whether the terms offered, taking into account all of the specific circumstances between the parties and prevailing market conditions, fall outside the range of reasonableness contemplated by the FRAND commitment.

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - 22
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  Brooks & Geradin, *Interpreting and Enforcing the Voluntary FRAND Commitment*, (Ex. 16), at

2  2.[16]   Motorola submits that this procedure will enable the Court to review the terms actually

3  proposed by Motorola for compliance with RAND, without conflicting with the well-settled

4  authorities holding that Courts do not have authority to create contracts or contract terms for

5  parties.

6  **VII.   CONCLUSION**

7       For the foregoing reasons, Motorola respectfully requests that the Court grant partial

8  summary judgment denying Microsoft's "claim" that the Court should create *ab initio* a

9  Motorola/Microsoft patent license, or material terms of such a license, and instead proceed to the

10  only issue triable at this time: whether Motorola's October 2010 letters breached the implied

11  covenant of good faith and fair dealing.  If Motorola did not breach, then there is no occasion to

12  grant any remedy to Microsoft.  The parties are then free to continue negotiations pursuant to the

13  obligations of the SSOs.  If there has been a breach, Motorola agrees that it will be appropriate for

14  the Court to order an appropriate remedy and require Motorola to make an offer consistent with

15  RAND.  This RAND offer, should Microsoft not accept it, would be reviewed by the Court for

16  compliance with its RAND commitments.  If that offer complies, Microsoft can either accept the

17  offer or forego the right to a RAND license and be subject to all available remedies.  These

18  procedures can be completed in accordance with the schedule already set by the Court,

19  commencing with a breach of contract trial in November.

20

21

22

23

---

24  [16] *See also id.* at 11 ("'[A] court confronting such a claim ***radically misunderstands the FRAND commitment that the IP owner has made***, and misunderstands the court's own role, if it seeks to answer the question 'What is the reasonable royalty for this IPR?'  In agreeing to licence [*sic*] on FRAND terms, the IP owner has not agreed to constrain its licensing terms more tightly than the 'range of reasonableness'.  Thus, if an offer has been made and refused, then the only contractual question to be adjudicated is whether the terms offered, taking into account all of the specific circumstances between the parties and prevailing market conditions, fall outside the *range* of reasonableness contemplated by the FRAND commitment.").

25

26

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - 23
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  DATED this 18th day of July, 2012.

2                                                    Respectfully submitted,

3                                                    SUMMIT LAW GROUP PLLC

4                                                    By _____

5                                                         Ralph H. Palumbo, WSBA #04751
                                                         Philip S. McCune, WSBA #21081
6                                                         Lynn M. Engel, WSBA #21934
                                                         *ralphp@summitlaw.com*
7                                                         *philm@summitlaw.com*
                                                         *lynne@summitlaw.com*

8                                                    By _____

9                                                         K. McNeill Taylor, Jr.
                                                         MOTOROLA MOBILITY, INC.
10                                                        MD W4-150
                                                         600 North U.S. Highway 45
11                                                        Libertyville, IL  60048-1286
                                                         Phone:  858-404-3580
12                                                        Fax:  847-523-0727

13
                                                    And by
14
                                                         Jesse J. Jenner (*pro hac vice*)
15                                                        Steven Pepe (*pro hac vice*)
                                                         Ropes & Gray LLP
16                                                        1211 Avenue of the Americas
                                                         New York, NY  10036-8704
17                                                        (212) 596-9046
                                                         *jesse.jenner@ropesgray.com*
18                                                        *steven.pepe@ropesgray.com*

19                                                        James R. Batchelder (*pro hac vice*)
                                                         Norman H. Beamer (*pro hac vice*)
20                                                        Ropes & Gray LLP
                                                         1900 University Avenue, 6th Floor
21                                                        East Palo Alto, CA  94303-2284
                                                         (650) 617-4030
22                                                        *james.batchelder@ropesgray.com*
                                                         *norman.beamer@ropesgray.com*
23
                                                    ***Attorneys for Motorola Solutions, Inc., Motorola
24                                                    Mobility, Inc., and General Instrument
                                                    Corporation***
25

26

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - 24
CASE NO. C10-1823-JLR

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the

3

Court using the CM/ECF system which will send notification of such filing to the following:

4

Arthur W. Harrigan, Jr., Esq.
Christopher T. Wion, Esq.

5

Shane P. Cramer, Esq.
Danielson, Harrigan, Leyh & Tollefson LLP

6

*arthurh@dhlt.com*
*chrisw@dhlt.com*

7

*shanec@dhlt.com*

8

Richard A. Cederoth, Esq.
Brian R. Nester, Esq.

9

David T. Pritikin, Esq.
Douglas I. Lewis, Esq.

10

John W. McBride, Esq.
David Greenfield, Esq.

11

William H. Baumgartner, Jr., Esq.
David C. Giardina, Esq.

12

Carter G. Phillips, Esq.
Constantine L. Trela, Jr., Esq.

13

Ellen S. Robbins, Esq.
Nathaniel C. Love, Esq.

14

Sidley Austin LLP
*rcederoth@sidley.com*

15

*bnester@sidley.com*
*dpritikin@sidley.com*

16

*dilewis@sidley.com*
*jwmcbride@sidley.com*

17

*david.greenfield@sidley.com*
*wbaumgartner@sidley.com*

18

*dgiardina@sidley.com*
*cphillips@sidley.com*

19

*ctrela@sidley.com*
*erobbins@sidley.com*

20

*nlove@sidley.com*

21

T. Andrew Culbert, Esq.

22

David E. Killough, Esq.
Microsoft Corp.

23

*andycu@microsoft.com*
*davkill@microsoft.com*

24

25

DATED this 18th day of July, 2012.

26

/s/ *Marcia A. Ripley*

Marcia A. Ripley

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DISMISSING MICROSOFT'S CLAIM FOR A RAND PATENT
LICENSE AGREEMENT TO BE DETERMINED AB INITIO
BY THE COURT - 25
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001