# EXHIBIT 19

Standards-Setting,
IPR Policies and
Stakeholder Considerations
Amy Marasco
General Manager, Standards Strategy
Microsoft Corporation

Case 2:10-cv-01823-JLR Document 230-4 Filed 03/30/12 Page 3 of 16

Stakeholder Considerations of Standardization Benefits/Costs
Benefits
Facilitate interoperability
Simplify development – maximize efficiencies, reduce costs
Business development opportunities
Costs
Resource drain
IPR licensing considerations
Implementation issues with evolving specifications
Loss of opportunity to differentiate (if over-standardization)
Legal obligation and liability
2

700

MOTM_WASH1823_0054851

Case 2:10-cv-01823-JLR Document 230-4 Filed 03/30/12 Page 4 of 16

# Standards @ Microsoft

- MS ships >500 products
- >400 annual engagements
- Thousands of standards supported
  - Hundreds of employees in standards setting activities
- Thousands of employees in standards implementation activities
- Global standards engagements via Country Offices (character sets, broadcasting, verticals etc.)
- SIGs, Consortia, National SSOs, International SSOs

Examples of Standards Bodies Where We Participate
Microsoft participates in hundreds of standards bodies
The different Microsoft business groups take responsibility for the company's participation at standards bodies that primarily impact the work of that particular group
These are examples of standards bodies where our participation impacts the company across different business groups
ETSI
ANSI
ICT Standards Board
W3C
WORLD WIDE WEB
IEEE
IETF
OASIS
ecma
ISO
International Organization for Standardization
ISO JTC 1 IEC
incits
ITU
oma
Open Mobile Alliance

Case 2:10-cv-01823-JLR Document 230-4 Filed 03/30/12 Page 6 of 16

# Goals of a Successful Standards Development Effort

Case 2:10-cv-01823-JLR Document 230-4 Filed 03/30/12 Page 7 of 16

# IPR Policies Should Promote Broad Participation

- Standards patent policies must **balance** the interests of both technical contributors and users
- Policies should promote broad participation by stakeholders
  - Encourage best technical solutions
  - Encourage IPR to be made available to all implementers
- Onerous policies inhibit participation
  - Overly broad disclosure/licensing requirements
  - Requirements for patent searches
  - Mandatory compensation-free licensing commitments
- Essential patent claims should be available to all implementers under reasonable licensing terms

6

Case 2:10-cv-01823-JLR Document 230-4 Filed 03/30/12 Page 8 of 16

# "Ex Ante" Proposal

- Companies always have had opportunity for "ex ante" disclosure of licensing terms on bilateral basis
- Voluntary "ex ante" disclosure of terms to the standards body widely supported
- Proposal is to require disclosure of licensing terms to the standards body and permit group negotiations of licensing terms
  - Goal is to prevent patent holders from "holding up" implementers
  - But how often does that occur?
- Does the proposal create more problems than it solves?
  - Different stakeholder views

7

Case 2:10-cv-01823-JLR Document 230-4 Filed 03/30/12 Page 9 of 16

# "Ex Ante" Proposal

- Many legal and practical issues
  - How valuable is the information to the committee as a group?
    - Technical decisions often not based on a choice among equal alternatives
    - Almost no licensees want a license for just essential patent claims
      - A prospective implementer that has requested a license will negotiate on a private bilateral basis with the patent owner to determine whether they can arrive at a mutually acceptable agreement on RAND terms
      - Usually will include non-essential patent claims that cover the implementer's entire commercial product
      - May include other business dealings between the parties, such as distribution agreements, co-branding agreements, cross-licenses involving other technologies
    - Typically no two licenses will be identical

8

Case 2:10-cv-01823-JLR Document 230-4 Filed 03/30/12 Page 10 of 16

# "Ex Ante" Proposal

- Litigation and antitrust concerns?
  - Possible buyer cartel and group boycott conduct
- Practical delays?
  - Technical committees make hundreds of technical decisions
  - Technical committees populated by engineers
- Impact on participation and incentives to innovate?

# Definitions of "Open Standards"

- Traditional definition of an "open standard" (examples: Global Standards Collaboration, ITU-T, ANSI, TIA)
  - Standards developed or ratified through an open, consensus process
    - Covered by an open and transparent IPR policy
    - Contributors license essential IPRs to implementers on Reasonable and Non-Discriminatory (RAND) terms (with or without royalties/fees)
- GSCResolution GSC-12/05: (Opening Session) Open Standards - www.gsc.etsi.org
- ITU-T – http://www.itu.int/ITU-T/othergroups/ipr-adhoc/openstandards.html;
- American National Standards Institute (ANSI) – http://publicaa.ansi.org/sites/apdl/Documents/Standards%20Activities/Critical%20Issues%20Papers/Griffin%20-%20Open%20Standards%20-%2005-05.doc

10

Case 2:10-cv-01823-JLR Document 230-4 Filed 03/30/12 Page 12 of 16

# "Open Standards"

- ISO, IEC, ITU approved a joint patent policy in February, 2007
  - Requests patent holders to disclose whether they will license their essential patent claims on RAND (with or without royalties/fees) or whether they are not willing to provide RAND licenses
- New possible definitions are causing confusion
  - "Free to implement" – no royalty
    - Very few standards bodies mandate a RAND-Z (RAND terms but with zero royalty) approach
    - All essential patent claims may not be covered by such a policy
  - "Free to use freely"
    - No standards meet this definition
      - No standards organization today requires that patent holders must waive most RAND terms

11

Case 2:10-cv-01823-JLR Document 230-4 Filed 03/30/12 Page 13 of 16

"Open Standard"
Possible negative effects of new definitions:
Fewer contributions to standards bodies
Less innovation in technology areas subject to standardization
Confusion between "open standards" with "open source software" should be avoided
See TIA paper at http://www.tiaonline.org/standards/about/documents/TIA-IPR_20080620-003_TIA_OPEN_STANDARDS-CLEAN_R4.pdf
12

Business Models Impact IPR Position
Components or Products
More incentive to have IPR respected
More incentive for IPR to be more freely available
Services or Consulting

Open Source is not a Business Model
"Open source is not a business model. It is a development and distribution model that is enabled by a licensing tactic. Vendors that build revenue streams around open source software for the most part do not choose between open source and proprietary development and licensing; they choose business strategies that attempt to make the best use of both open source and proprietary development and licensing models in order to maximize their opportunities for generating revenue and profit."
"Customers must ensure that they are aware of vendors' strategies so they can understand and predict the behavior of vendors encouraging them to become paying customers."
The 451 Group Report: Open Source is Not a Business Model
http://451group.com

Case 2:10-cv-01823-JLR Document 230-4 Filed 03/30/12 Page 16 of 16

# Conclusion

- As a stakeholder:
  - There are many different factors to weigh when deciding whether to participate in a standards activity
    - Some are:
      - Scope of work
      - Importance of the activity to the business group
      - Standards body procedures and policies
      - Costs and resources required
  - Broader policy issues may impact decision
  - Once a decision is made to participate, then the participation itself must be staffed
    - Appropriate internal coordination must be considered