HONORABLE JAMES L. ROBART

1

2

3

4

5

6

7

8

9      IN THE UNITED STATES DISTRICT COURT
10     FOR THE WESTERN DISTRICT OF WASHINGTON
       AT SEATTLE

11

12   MICROSOFT CORPORATION,

                    Plaintiff,           No. C10-1823-JLR

13          v.                           **REDACTED**

14   MOTOROLA INC., et al.,              MICROSOFT'S OPPOSITION TO
                                         MOTOROLA'S "MOTION FOR
15                    Defendant.         PARTIAL SUMMARY JUDGMENT
                                         DISMISSING MICROSOFT'S CLAIM
16                                       FOR A RAND PATENT LICENSE
     MOTOROLA MOBILITY, INC., et al.,    AGREEMENT TO BE DETERMINED
17                                       *AB INITIO* BY THE COURT"
                     Plaintiffs,
18          v.                           **Noted: August 10, 2012**

19   MICROSOFT CORPORATION,

20                    Defendant.         **ORAL ARGUMENT REQUESTED**

21

22

23

24

25

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  ARGUMENT ...................................................................................................... 3

   A.   Motorola's Motion Provides No Basis For Reconsidering The Plan For The November RAND Royalty Bench Trial. ............................................................. 3

     1.   A RAND Royalty Determination Is Required To Resolve This Case. ......................... 3

     2.   Motorola Affirmatively Argued That A RAND Royalty Trial Should Be Used To Resolve The Parties' Dispute. ......................................................... 5

   B.   Motorola's Other Arguments Are Irrelevant To Its Motion And Have Previously Been Rejected By The Court. ........................................................... 6

     1.   A RAND Royalty Determination Has Been Part Of This Case Since Its Inception. ..... 6

     2.   Motorola's Commitments Require Granting RAND Licenses, Not Interminable Negotiation. ........................................................... 8

     3.   Cases Involving A Court "Creating" A Contract Are Inapposite. ............................. 12

III. CONCLUSION ................................................................................................ 15

MICROSOFT'S OPPOSITION TO MOTOROLA'S     C10-1823
MOTION FOR PARTIAL SUMMARY
JUDGMENT - i

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

## TABLE OF AUTHORITIES

2

3   *Apple, Inc. v. Motorola, Inc.*,
        2012 WL 2376664 (N.D. Ill. June 22, 2012) .......................................10, 11, 13, 14

4
    *City of New Orleans v. New Orleans Waterworks Co.*,
5       142 U.S. 79 (1891) .........................................................................................12

6   *Estate of Hollingsworth*,
        88 Wn.2d 322, 560 P.2d 348 (1977) ...............................................................13
7

8   *Graves v. Arpaio*,
        623 F.3d 1043 (9th Cir. 2010) ...........................................................................4

9
    *Johnson v. Mammoth Recreations, Inc.*,
10      975 F.2d 604 (9th Cir. 1992) .............................................................................4

11  *Johnson v. Manhattan Ry.*,
        289 U.S. 479 (1933)...........................................................................................3
12

13  *Mandelas v. Daniel N. Gordon, PC*,
        2011 WL 9383 (W.D. Wash. Jan. 3, 2011) ........................................................4

14
    *New Hampshire v. Maine*,
15      532 U.S. 742 (2001)...........................................................................................6

16  *Rutcosky v. Tracy*,
        89 Wn.2d 606, 574 P.2d 382 (1978)................................................................12
17

18  *Scribner v. WorldCom, Inc.*,
        249 F.3d 902 (9th Cir. 2001) ...........................................................................14

19
    *Wall v. Nat'l R.R. Passenger Corp.*,
20      718 F.2d 906 (9th Cir. 1983) .............................................................................3

21  **Other Authorities**

22  Fed. R. Civ. P. 16(b)(4) .............................................................................................4

23  Fed. R. Civ. P. 38(b)   ................................................................................................3

24  USDC Western District of Washington
        Local Rule CR 7(h)..............................................................................................4
25

    RCW 62A.2-305(2) ..................................................................................................12

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Restatement (Second) of Contracts § 204 (1981)...............................................................12

Restatement (Second) of Contracts § 205 cmt. d...............................................................13

MICROSOFT'S OPPOSITION TO MOTOROLA'S     C10-1823
MOTION FOR PARTIAL SUMMARY
JUDGMENT - iii

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    **I.    INTRODUCTION**

2          Motorola's motion provides the Court with no basis for reconsidering or modifying the

3    Court's decision to hold a trial in November to determine a RAND royalty.  As the Court's

4    summary judgment rulings make clear, a RAND royalty determination is at least a necessary

5    first step to resolving Microsoft's breach of contract claim.  So long as it served its purposes,

6    Motorola agreed to the planned RAND royalty bench trial—and even argued to the Court that

7    Microsoft's preliminary injunction motion should be denied because at the November bench

8    trial here the Court could establish a RAND royalty for Germany.  Now that the trial is

9    approaching, however, Motorola makes a 180-degree turn and asserts that, "after fully

10   considering" the matter, it "has concluded" that the trial to which it has long agreed will be

11   "improper."  (Dkt. No. 362, Defs.' Mot. For Partial Summary J. Dismissing Microsoft's Claim

12   For A RAND Patent License Agreement To Be Determined *Ab Initio* By The Court ("Mot.") at

13   1.)

14          Motorola's strategy is transparent: avoid the quantification of its RAND royalty

15   commitment at any cost so that it can continue to seek injunctions as leverage to extract

16   unreasonable royalties.  Motorola's strategy has not changed since October 2010, when it sent

17   its demand letters to Microsoft as a prelude to filing for an ITC exclusion order.  But

18   Motorola's efforts to evade its RAND commitments are collapsing.  Motorola is obligated to

19   grant a RAND license to any implementer, and Motorola now recognizes that once this Court

20   establishes RAND terms for its standard essential patents, Motorola's enforcement

21   campaign—a campaign based on making exorbitant demands while seeking injunctions that

22   would have crippling and devastating effects—is doomed.  And Motorola seeks to forestall its

23   day of reckoning by continually arguing that "negotiating" is a substitute for actually granting

24   a RAND license.

25

MICROSOFT'S OPPOSITION TO MOTOROLA'S    C10-1823
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 1

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   Motorola's true strategy was laid bare in a recent filing with the Ninth Circuit, where it

2   asked for an expedited ruling without oral argument on its appeal from this Court's preliminary

3   injunction.  *See* Declaration of Christopher Wion ("Wion Decl.") Ex. 1 (Motion to Expedite).

4   Motorola told the Court of Appeals that one of its German patents will expire in October and

5   that it will be irreparably harmed[1] if it cannot put its German injunction in place before then.

6   Wion Decl. Ex. 1 at 1, 10, 18–19.  But the only conceivable utility of such a short-lived

7   injunction is to force Microsoft into submission, regardless of whether the terms offered are

8   RAND, and before this Court can rule.  Indeed, Motorola complained that this Court's

9   injunction "chills Motorola's ability to obtain fair licensing terms in Germany," *id.* at 11—

10  confirming Motorola's view that "fair licensing terms" are what arise from a one-sided

11  negotiation conducted under threat of an injunction.[2]

12  In the end, Motorola's current motion is about preventing a judicial determination of a

13  RAND royalty.  Motorola again seeks to delay by contradicting its previous endorsement of a

14  RAND royalty bench trial, and claiming such a trial would be improper.  Contrary to

15  Motorola's arguments, this case is not about a court "creating" a contract for the parties, and

16  never has been.  This case is about enforcement of a contract that already exists—Motorola's

17  contractual RAND licensing commitment—as to which Motorola has already agreed Microsoft

18  is a third-party beneficiary.  Motorola's motion is premised on the view that its RAND

19  commitment is meaningless and judicially unenforceable.  Motorola's motion should be

20  denied.

---

[1] Motorola complained that without its German injunction, "[n]o other secure mechanism exists for Motorola ultimately to obtain monetary recompense for Microsoft's continuing infringement in Germany," Ex. 1 at 12, but failed to tell the Ninth Circuit that this Court required, and Microsoft paid, a $100 million bond.

[2] In response to Motorola's motion, the Ninth Circuit clerk's office entered an order on July 31 setting the case for argument on September 11, declining Motorola's invitation to decide the appeal without oral argument.

MICROSOFT'S OPPOSITION TO MOTOROLA'S          C10-1823
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 2

II.     **ARGUMENT**

A. **Motorola's Motion Provides No Basis For Reconsidering The Plan For The November RAND Royalty Bench Trial.**

1. **A RAND Royalty Determination Is Required To Resolve This Case.**

In its summary judgment ruling, the Court concluded that Microsoft may proceed with its breach of contract claim.  (Dkt. No. 335 at 28.)  The Court held that a prerequisite to determining whether Motorola had breached its contractual RAND commitments is a determination of what a proper RAND royalty is:  "to determine whether Motorola's offers were so blatantly unreasonable as to breach its duty of good faith, it is necessary in this instance to compare the offer against a true RAND royalty rate."  (Dkt. No. 335 at 25-26.)

To enable an orderly resolution of these issues, the Court instituted a phased approach, with an initial determination of a RAND royalty guiding the determination of the breach issue in the next stage.  (7/9 Tr. 2:20–22, 3:9–16.)  Motorola did not object, and only preserved its options for a jury trial on the subsequent breach question.  (*Id.* 4:17–20, 5:6–9.)  Motorola thus waived any claim it might have had to a single proceeding (determining both a RAND royalty and breach simultaneously) for which it now argues and waived any right to a jury determination of the RAND royalty.  (*See* Br. 4–6 & n.9.)  In any event, even apart from its agreement and waiver, Motorola does not explain why such a unitary proceeding would be preferable to the plan adopted by the Court with the agreement of the parties.

Motorola suggests in a footnote that a jury should "have the opportunity to consider evidence as to what is the range of reasonable 'RAND' rates."  (Br. 6 n. 9.)  But Motorola's Answer did not seek a jury, and Motorola further waived this argument by explicitly agreeing to a bench trial of the RAND royalty.[3]  (7/9 Tr. 4:17–20, 5:6–9.)  Finally, Motorola resisted

---

[3]  For purposes of deciding the present motion, the Court does not need to decide whether the subsequent trial on breach will be to the Court or a jury.  Microsoft believes that any jury right as to the breach issues has been waived, because Motorola failed to timely seek a jury.  Fed. R. Civ. P. 38(b); *see Wall v. Nat'l R.R. Passenger Corp.*, 718 F.2d 906, 909 (9th Cir. 1983) (where "jury demands were made almost a year after the last pleadings were filed, [party] failed to make a timely demand for a jury trial" under Rule 38(b)).  That Motorola included a jury demand in its since-consolidated patent action is irrelevant.  *See Johnson v. Manhattan Ry.*, 289 U.S. 479,

summary judgment by asserting that factual disputes exist concerning the RAND royalty, pointing to royalty rates it claimed to receive from current licensees.  (Dkt. No. 274 at 14–17.) Motorola should not now be heard to argue that further fact finding by the Court on the proper RAND royalty for Motorola's patents is improper or irrelevant to the resolution of the issues presented in this case.

The plan the Court established for this case is well within the Court's discretion and is proper.  *See Graves v. Arpaio*, 623 F.3d 1043, 1047 (9th Cir. 2010) ("District courts have broad discretion when it comes to trial management."); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609–10 (9th Cir. 1992).  That alone is sufficient reason to deny Motorola's motion.

Moreover, Motorola's motion is nothing more than a baseless request for reconsideration of prior substantive and procedural rulings.  Motorola now objects to the Court's holding in its second summary judgment order that an initial RAND royalty trial is necessary to subsequently resolve the issue of breach, but Motorola has not satisfied and cannot satisfy the requirements for a motion for reconsideration.  *See* L.R. CR 7(h). Motorola's motion asks the Court to reorder the schedule for the bifurcated trial in this case, *e.g.*, "Motorola seeks instead to refocus the November trial on the breach of contract issue" (Br. 1), but Motorola cannot show good cause and has not been diligent.  *See* Fed. R. Civ. P. 16(b)(4); *Mandelas v. Daniel N. Gordon, PC*, 2011 WL 9383, at *2 (W.D. Wash. Jan. 3, 2011); *see also Johnson*, 975 F.2d at 610 ("Disregard of the [scheduling] order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.").

---

496–97 (1933) ("[C]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another.").  Motorola recognized that consolidation did not turn two cases into one by appealing the Court's preliminary injunction order to the Ninth Circuit rather than the Federal Circuit.

MICROSOFT'S OPPOSITION TO MOTOROLA'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 4

C10-1823

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

**2. Motorola Affirmatively Argued That A RAND Royalty Trial Should Be Used To Resolve The Parties' Dispute.**

Both prior to the hearing on the preliminary injunction and at the hearing itself, Motorola conceded that this Court has the authority to determine RAND terms. Motorola was unequivocal that, in its view, the Court has jurisdiction to adjudicate the terms of Motorola's worldwide RAND licensing commitments:

> [THE COURT:] It seems to me that those facts strongly imply that I have jurisdiction to adjudicate the terms of the ITU agreement on a worldwide basis. And you've just said, quite passionately, "Judge, no, that's just not right."
> MR. JENNER: I'm saying Your Honor does have jurisdiction to deal with that.

(Dkt. No. 312-1, April 11, 2012 Hearing Tr. 40:13–19.) Motorola went further, explicitly arguing that the Court's power to determine worldwide RAND terms for a license from Motorola to Microsoft *provided a basis to deny Microsoft's motion for preliminary relief*:

> [MR. JENNER:] And to the extent Your Honor finds something different from Germany that you don't agree with, Your Honor will have the opportunity, should you deem it appropriate, simply to tell Motorola to pay back the difference in Germany. That's not an encroachment on your jurisdiction. I guess that goes to the comity part as well. That's not an encroachment on your jurisdiction. You will simply find that the court didn't determine a RAND rate in Germany. You did determine a RAND rate in Germany, to the extent that Motorola ought to pay some German money back to Microsoft.

(Dkt. No. 312-1 at 28:7–16; *see also id.* at 32 (stating that the Court would have the authority to later reject a German royalty rate "as not being RAND"); May 18, 2011 Hearing Tr. at 14:3–5 ("I don't mean to suggest for a second that the court can't do that [set a RAND rate]. The court can do that.").)

When it served its purposes, Motorola assured the Court that a RAND royalty determination was within its authority, and argued vehemently that this authority and the scheduled November RAND royalty trial meant that a preliminary injunction should not issue. Now, three months later, Motorola claims that the November RAND royalty trial will be improper and should not be held. Motorola's conduct calls upon judicial estoppel, which "prohibit[s] parties from deliberately changing positions according to the exigencies of the

C10-1823

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1  moment . . . . [,] from playing fast and loose with the courts," and from engaging in

2  "intentional self-contradiction . . . as a means of obtaining unfair advantage."  *New Hampshire*

3  *v. Maine*, 532 U.S. 742, 750–51 (2001) (citations and quotation marks omitted).  This Court is

4  under no obligation to revise its process for resolving this dispute merely to meet the demands

5  of the latest of Motorola's shifting litigation positions.

**B.  Motorola's Other Arguments Are Irrelevant To Its Motion And Have Previously Been Rejected By The Court.**

**1.  A RAND Royalty Determination Has Been Part Of This Case Since Its Inception.**

9  The Court has already ruled that a RAND royalty determination is a necessary first step

10  towards resolving Microsoft's breach of contract claim, but the issue is also independently

11  raised in this case, making it entirely appropriate for the Court to take it up.  In its complaint,

12  Microsoft explicitly sought "a judicial accounting of what constitutes a royalty rate in all

13  respects consistent with Motorola's promises for WLAN [802.11] patents identified as

14  'essential' by Motorola and for H.264 patents identified by Motorola."  (Dkt. No. 1, Complaint

15  ¶ 9.)  That is precisely the inquiry set to take place at the scheduled RAND royalty bench trial.

16  (7/9 Tr. 2:20–3:1.)  Microsoft also sought a "[d]ecree that Microsoft is entitled to license from

17  Motorola any and all patents" deemed essential to 802.11 or H.264 on RAND terms, an

18  injunction barring "Motorola from further demanding excessive royalties from Microsoft that

19  are not consistent with Motorola's obligations," and a "decree that Motorola has not offered

20  royalties to Microsoft" on RAND terms.  (Dkt. No. 1, Complaint, Prayer for Relief G, H, E, F.)

21  The scheduled RAND royalty trial is also essential to the Court's later consideration of each of

22  these three forms of relief.  The clear language in the complaint flatly contradicts Motorola's

23  misstatements that Microsoft "did ***not*** seek a Court determination of RAND terms" in its

24  complaint (Br. 12), and that the "relief actually requested by Microsoft" was "damages" only

25  (Br. 4).

MICROSOFT'S OPPOSITION TO MOTOROLA'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 6                                    C10-1823

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1        Motorola also claims that it only "fully appreciated that the Court intended . . . to

2    determine the actual terms of a RAND contract" in April 2012.  (Br. 6).  Motorola's surprise

3    cannot be taken seriously:  in its portion of the parties' February 7, 2011 Joint Status Report,

4    Motorola specifically noted:

5            Motorola anticipates that determination of a RAND rate for Motorola's
             domestic and foreign 802.11 and H.264 portfolios, or a portion thereof, will be a
6            complex task, and will require significant discovery from Microsoft and
             Motorola and will likely also include discovery from non-parties who have
7            licensed or offered to license similar essential patents on RAND terms.

8    (Dkt. No. 44 at 7.)  And in March 2011 Motorola argued that Microsoft's breach of contract

9    claim should be dismissed because it improperly "asks the Court to divine RAND licensing

10   terms for two entire portfolios of 'essential' patents" (Dkt. No. 57 at 13), a complaint Motorola

11   repeats in its new brief (Br. 1).  In denying that portion of Motorola's motion to dismiss, the

12   Court held that it would indeed be proper for the Court to determine the relationship between

13   Motorola's offers and actual RAND terms:

14           Motorola also argues that the breach of contract claim should be dismissed
             because it seeks only an advisory opinion on what the terms of a RAND license
15           would be.  [Citation omitted.]  Motorola is mistaken.  Microsoft seeks, among
             other things, a determination of whether the flat royalty rate on the price of the
16           end product was unreasonable and discriminatory where the allegedly essential
             patent was only a small fraction of the device.

17   (Dkt. No. 66 (May 31, 2011 Order) at 5.)  Motorola was well aware long before April 2012

18   that the Court, correctly, viewed a determination of RAND terms as a necessary part of the

19   case as filed.

20       The complexity of underlying negotiations or of the terms of other license agreements

21   that include standard-essential patents (Br. 9–11) provides no basis to reconsider the scheduled

22   bench trial.  First, as the Court has already recognized, the key term of a RAND license—to be

23   compared to Motorola's opening offer—is the royalty.  (7/9 Tr. 2:25–3:5.)  Motorola's

24   argument that negotiated licenses for standard-essential patents frequently include additional

25   terms is simply beside the point.  The Court can consult the monetary RAND royalty alone to

MICROSOFT'S OPPOSITION TO MOTOROLA'S          C10-1823
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 7

determine whether the offer was reasonable and whether Motorola was acting in bad faith because Motorola demanded a flat 2.25% royalty rate applied to the prices of end products, and admitted it had run the numbers and knew the monetary scope of its demands.  (Dkt. No. 335 at 27.)  Moreover, the only term stated in Motorola's offer letters was Motorola's proposed royalty for a worldwide license and a grant back, and the letters explicitly empowered Microsoft to "accept" those offers without regard to any other terms.  Motorola cannot now argue that other terms must be evaluated.  And in fact the necessary terms of a RAND license already exist, subject to the determination of the royalty:  the patents covered, the duration of the license (perpetual), and the geographic scope (worldwide).  To determine whether Motorola's offer was blatantly unreasonable, the Court need only consider what royalty would be reasonable for a license to practice Motorola's patents—especially where Motorola has made clear that it always seeks 2.25% and adjusts the royalty downward only if consideration is provided in other ways, such as by a grant back of rights under the licensee's standard essential patents.  (Dkt. No. 274 at 6–7, 15; *see* Dkt. No. 284 at 10–11.)  Motorola's 2.25% demand is blatantly unreasonable regardless of the form of compensation.

### 2.  Motorola's Commitments Require Granting RAND Licenses, Not Interminable Negotiation.

As the Court has already ruled in considering the parties' summary judgment motions, Motorola's commitments obligate it to grant licenses to its standard-essential patents on RAND terms.  (Dkt. No. 335 at 14.)  Motorola argued both in its motion to dismiss and in prior summary judgment briefing, as it does again now, that Motorola is obligated only to negotiate, and Microsoft should be forced to negotiate before it can turn to the Court for relief.  (Dkt. No. 57 at 4, 11; Dkt. No. 231 at 19–20.)  The Court has twice rejected this theory, holding that "[t]here is no legal basis for Motorola's contention that Microsoft was required to negotiate the precise license terms prior to filing a breach of contract claim" (Dkt. No. 66 at 5), and that

MICROSOFT'S OPPOSITION TO MOTOROLA'S   C10-1823
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 8

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   "Motorola has committed to license its standard essential patents on RAND terms, and, if a

2   third-party beneficiary to that commitment does not believe Motorola is meeting its obligations

3   thereto, the courthouse may be the only place to resolve the differences" (Dkt. No. 335 at 21).

4        Motorola again puts forward its failed argument that all it need do to satisfy its RAND

5   commitments is "negotiate."  (Br. 4, 14–16.)  But that rewrites the language of the

6   commitments: that Motorola "will grant . . . a license under reasonable rates to an unrestricted

7   number of applicants on a worldwide, non-discriminatory basis with reasonable terms and

8   conditions."  (Dkt. No. 335 at 4–6, quoting IEEE and IU agreements.)  Motorola's transparent

9   purpose in watering down its RAND commitments is to deny prospective licensees a license so

10  long as the "negotiations" continue and to put itself in a position where it can then seek an

11  injunction on the grounds that a license has not been concluded.  This strategy is designed to

12  pressure licensees into accepting royalties greater than RAND.  It is not difficult to see through

13  this scheme.

14       In Motorola's view, its contractual commitment is only a promise to "negotiate," and

15  the Court is powerless to provide any relief other than an order to continue to negotiate while

16  the implementer remains vulnerable to an injunction.  (Br. 4–5.)  Motorola's strategy, in its

17  view, remains immune from judicial oversight so long as it does not breach the only obligation

18  it asserts it accepted: the obligation to negotiate in good faith.  Yet Motorola concedes that if it

19  breaches that obligation by refusing to negotiate in good faith, a court would be empowered to

20  "determine damages (if any) and . . . enjoin Motorola from enforcing its 802.11 and H.264

21  standard essential patents against Microsoft unless and until Motorola makes an offer that is

22  consistent with RAND."  (Br. 5.)  That is exactly the relief Microsoft seeks by this action.

23  Moreover, Motorola's concession acknowledges that it *is* within the Court's authority to

24  determine whether an offer is RAND.  Motorola simply does not want that determination to

25  happen in November, or anytime in the near future, because an actual determination of RAND

MICROSOFT'S OPPOSITION TO MOTOROLA'S      C10-1823
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 9

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    terms will cut off Motorola's ability to improperly use the standardization of its patents to

2    extort excessive royalties from standards adopters.

3         At bottom, Motorola wants to be put back in the position it was in before Microsoft

4    filed this action:  free to use injunctions on its standard-essential patents as leverage in

5    negotiations with Microsoft.  That is exactly the leverage this Court recognized Motorola was

6    not free to exert in light of its contractual RAND commitments (Dkt. No. 318 at 24)—leverage

7    that, if permitted, would undermine the entire SSO process.  Motorola's motive in bringing this

8    motion is to further delay this Court's ability to enforce Motorola's RAND licensing

9    obligations, and to permit Motorola's campaign of holdup to go forward unchecked.

10        Motorola's untenable position that a RAND commitment leaves it free to obtain

11   injunctions or exclusion orders in any forum against any standard-adopter, then negotiate

12   extortionate license terms with those adopters, is nearing universal rejection, for the reasons set

13   forth in Judge Posner's recent opinion in *Apple, Inc. v. Motorola, Inc.*, 2012 WL 2376664

14   (N.D. Ill. June 22, 2012):

15        I don't see how, given FRAND, I would be justified in enjoining Apple from
          infringing the [asserted standard-essential patent] unless Apple refuses to pay a
16        royalty that meets the FRAND requirement. By committing to license its patents
          on FRAND terms, Motorola committed to license the [patent] to anyone willing
17        to pay a FRAND royalty and thus implicitly acknowledged that a royalty is
          adequate compensation for a license to use that patent.  How could it do
18        otherwise?  How could it be permitted to enjoin Apple from using an invention
          that it contends Apple *must* use if it wants to make a cell phone with UMTS
19        telecommunications capability—without which it would not be a cell *phone*.

20   2012 WL 2376664, at *12.  Judge Posner extensively quoted and endorsed the reasoning of the

21   Federal Trade Commission that "a royalty negotiation that occurs under threat of an exclusion

22   order may be weighted heavily in favor of the patentee in a way that is in tension with the

23   RAND commitment" because it would "allow the holder of a RAND-encumbered SEP to

24   realize royalty rates that reflect patent hold-up, rather than the value of the patent relative to

25   alternatives."  *Id.*; *see* Wion Decl. Ex. 2 (FTC Statement).

MICROSOFT'S OPPOSITION TO MOTOROLA'S        C10-1823
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 10                                                      LAW OFFICES
                                                      CALFO HARRIGAN LEYH & EAKES, LLP
                                                            999 THIRD AVENUE, SUITE 4400
                                                             SEATTLE, WASHINGTON 98104
                                                       TEL, (206) 623-1700 FAX, (206) 623-8717

In addition to the FTC, numerous U.S. Senators and Representatives, the House Judiciary Committee, and many other companies have urged rejection of Motorola's view of RAND licensing commitments.  *E.g.* Wion Decl. Ex. 3 (Letter from Sen. Lee et al.) ("For the standards setting process to function effectively, companies that commit to license their SEPs on RAND terms must seek to resolve disputes over their patents through a royalty agreement or judicial determination of a reasonable rate."); Wion Decl. Ex. 4 (Letter from House Judiciary Committee) ("If companies refuse to comply with their RAND commitments and instead treat their SEPs as a weapon to block others from distributing products that implement key standards, they will prevent and inhibit innovation and competition."); Wion Decl. Ex. 5 (Letter from Rep. Issa) ("An exclusion order based on alleged infringement of Standard Essential Patents creates a dangerous precedent that can harm innovation and the American economy."); Wion Decl. Exs. 6 (Intel), 7 (Nokia), 8 (IBM); 9 (HP); 10 (Cisco); 11 (Apple).

As the Court (and all of these others) has already recognized, Motorola's campaign of standard-essential patent enforcement is inconsistent with its contractual RAND commitment and with the standard-setting process as a whole:

> Motorola could preemptively request exorbitant compensation for its standard essential technology, and the implementer would be compelled to negotiate in good faith in response to the exorbitant demand.  This cannot be the result envisioned by the IEEE and ITU with respect to Motorola's commitments to them to grant licenses on RAND terms.

(Dkt. No. 335 at 19.)  The Court should reject Motorola's renewed request that this Court turn a blind eye to Motorola's conduct and step aside to allow for "negotiations"—which will take place, as with all of Motorola's previously-negotiated "RAND" licenses, under the threat of an injunction or exclusion order.  As the Court observed in its preliminary injunction order, negotiations under such circumstances could hardly be expected to result in "reasonable" terms and conditions: "It would seem clear that a negotiation where one party (Microsoft) must either

MICROSOFT'S OPPOSITION TO MOTOROLA'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 11

C10-1823

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1  come to an agreement or cease its sales . . . fundamentally places that party at a disadvantage."

2  (Dkt. No. 318 at 24.)

### 3.  Cases Involving A Court "Creating" A Contract Are Inapposite.

4       Motorola devotes much of its brief to a straw man argument built around cases that

5  frown on a court "creating" a contract in the course of interpreting it.  These cases provide no

6  support for Motorola's position.  In the first place, Motorola is already a party to completed

7  contracts, and the Court has already interpreted those contracts:  Motorola's contractual RAND

8  licensing commitments to SSOs.  The Court has held that those contracts *require* that Motorola

9  license its patents on RAND terms, and that negotiations or licensing requests are not

10  conditions precedent to Motorola's obligations.  (Dkt. No. 335 at 18–21.)  That means

11  Motorola must grant RAND licenses.  That key distinction alone renders the cases Motorola

12  cites entirely irrelevant, as the leading case Motorola quotes makes clear: "Courts have no

13  power to make new contracts or to impose new terms upon parties to contracts *without their*

14  *consent*."  *City of New Orleans v. New Orleans Waterworks Co.*, 142 U.S. 79, 91–92 (1891)

15  (emphasis added).  Motorola not only consented to the RAND royalty bench trial in this case,

16  but did much more than that: it contractually committed itself to the creation of "new

17  contracts" (patent licenses) with any standards adopter, and even to certain specific terms of

18  such a license like geographic scope (worldwide) and duration (the life of the patents).  The

19  royalty (RAND) was also part of that commitment, and that the Court plans a bench trial to

20  determine a RAND royalty does not remotely suggest that Motorola's contractual

21  commitments are unenforceable.  To the contrary, "[w]hen the parties to a bargain sufficiently

22  defined to be a contract have not agreed with respect to a term which is essential to a

23  determination of their rights and duties, a term which is reasonable in the circumstances is

24  supplied by the court."  Restatement (Second) of Contracts § 204 (1981); *Rutcosky v. Tracy*, 89

25  Wn.2d 606, 610, 574 P.2d 382 (1978) (en banc); *cf.* RCW § 62A.2-305(2) (court can provide a

1    reasonable price where "the price is left to be agreed by the parties and they fail to agree").

2    The Court has already held Motorola's RAND licensing commitments with the SSOs

3    "sufficiently defined to be a contract," so a determination of the RAND royalty is entirely

4    consistent with contract law.[4]

5           To the extent that Motorola's cases shed any light at all on the situation here, that light

6    only further exposes the hollowness of Motorola's position.  Microsoft's suit does not ask this

7    Court to "make a contract" where none exists, but rather is an action to enforce contracts

8    Motorola made long ago when it participated in SSOs and declared it would license its

9    essential patents on RAND terms.  A license will result here because *granting a license was*

10   *Motorola's contractual commitment*, not because the Court improperly "created" a contract.

11   The November RAND trial is an appropriate step in resolving this dispute:  contracts often

12   contain terms (express or implied) requiring that the parties behave reasonably.  When disputes

13   arise over whether a party lived up to that obligation, a court may and should resolve it.  *See*

14   *Estate of Hollingsworth*, 88 Wn.2d 322, 329, 560 P.2d 348 (1977) (breach of duty of good

15   faith where party unreasonably acted "with the sole object and purpose of frustrating the

16   stipulation he had entered into"); *see also* Restatement (Second) of Contracts § 205 cmt. d

17   (every contract contains a duty of good faith breached by bad faith "evasion of the spirit of the

18   bargain, . . . willful rendering of imperfect performance, abuse of power to specify terms, and

19   interference with or failure to cooperate in the other party's performance"); *id.* § 205 illust. 6

20   ("A contracts to perform services for B for such compensation 'as you, in your sole judgment,

21   may decide is reasonable.'  After A has performed the services, B refuses to make any

22   determination of the value of the services.  A is entitled to their value as determined by a

23   _____

24       [4] Motorola's attempt to bolster its view that RAND commitments are unenforceable by citing to a contract case
     authored by Judge Posner (Br. 19–20) is simply disingenuous.  Judge Posner's view of Motorola's RAND
     position was explicitly set forth six weeks ago when he held that Motorola could not under any circumstances
25   obtain injunctions on its standard-essential patents, or use them as leverage to extract extortionate royalties.  *See*
     *Apple*, 2012 WL 2376664, at *12.

MICROSOFT'S OPPOSITION TO MOTOROLA'S          C10-1823
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 13

1  court."); *Scribner v. WorldCom, Inc.*, 249 F.3d 902, 910 (9th Cir. 2001) (finding breach of duty

2  of good faith under Washington law and § 205, because "good faith limits the authority of a

3  party retaining discretion to interpret contract terms; it does not provide a blank check for that

4  party to define terms however it chooses").

5      Once the Court determines a RAND royalty in the November trial, a RAND license

6  will result *solely* as a consequence of the voluntary, contractual licensing commitment

7  Motorola made when participating in IEEE and ITU standardization.  Motorola labels that

8  license "a judicially created RAND contract" (Br. 6), but it is more accurate to describe it as a

9  contract achieved thanks to judicial enforcement of Motorola's pre-existing contractual RAND

10  licensing obligations.  Because of Motorola's RAND commitment, a "prohibition against

11  Courts creating new contracts" (Br. 18) has nothing to do with this case.

12      Motorola's conversion of its obligation from an obligation to license on RAND terms

13  into an obligation that requires (seemingly endless) negotiation in good faith renders the

14  RAND licensing commitment itself illusory.  That is the radical, unprincipled and legally

15  incorrect premise underlying Motorola's argument.  As Judge Posner has observed,

16  determining a RAND royalty requires establishing the *ex ante* value of Motorola's standard-

17  essential patents:

18          The proper method of computing a FRAND royalty starts with what the cost to
         the licensee would have been of obtaining, just before the patented invention
19          was declared essential to compliance with the industry standard, a license for
         the function performed by the patent.  That cost would be a measure of the
20          value of the patent qua patent.  But once a patent becomes essential to a
         standard, the patentees bargaining power surges because a prospective licensee
21          has no alternative to licensing the patent; he is at the patentee's mercy.  The
         purpose of the FRAND requirements, the validity of which Motorola doesn't
22          question, is to confine the patentee's royalty demand to the value conferred by
         the patent itself as distinct from the additional value—the hold-up value—
23          conferred by the patent's being designated as standard-essential.

24  *Apple*, 2012 WL 2376664, at *11.  Motorola failed in that case to obtain judicial approval for

25  its strategy to enhance "the value conferred by the patent itself" by "the hold-up value

MICROSOFT'S OPPOSITION TO MOTOROLA'S          C10-1823
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 14

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    conferred by the patent's being designated as standard-essential."  Now it is trying again in this

2    Court:  Motorola's experts present

3

4                                           **REDACTED**

5

6

7

8        In the end, Motorola's position is that no court can ever adjudicate RAND terms, even

9    when a patentee reneges on its commitment to grant licenses, or when the parties disagree

10    about RAND terms.  That would make RAND commitments illusory and bring down the entire

11    foundation upon which SSOs function—collaborative standard setting in return for

12    concomitant RAND commitments, because no adopter could feel any security in implementing

13    a standard in its products.  While the IEEE and ITU declined to make the actual *ex ante*

14    determinations of RAND royalties for all standard-essential patents, it does not follow that the

15    SSOs intended that Motorola could extort any royalty it pleased by threatening adopters with

16    injunctions, then labeling the result "RAND."

17 **III.**     **CONCLUSION**

18        For the reasons set forth above, Motorola's motion should be denied.

19        DATED this 6th day of August, 2012.

20                 CALFO HARRIGAN LEYH & EAKES LLP

21                 By  s/ Arthur W. Harrigan, Jr.

22                      Arthur W. Harrigan, Jr., WSBA #1751

23                      Christopher Wion, WSBA #33207

                       Shane P. Cramer, WSBA #35099

24

25

MICROSOFT'S OPPOSITION TO MOTOROLA'S    C10-1823
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 15

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1            By s/ T. Andrew Culbert

2                 T. Andrew Culbert
                   David E. Killough

3                 MICROSOFT CORPORATION
                   1 Microsoft Way

4                 Redmond, WA  98052
                   Phone:  425-882-8080

5                 Fax:  425-869-1327

6                 David T. Pritikin
                   Richard A. Cederoth

7                 Constantine L. Trela, Jr.
                   William H. Baumgartner, Jr.

8                 Ellen S. Robbins
                   Douglas I. Lewis

9                 David C. Giardina
                   John W. McBride

10               David Greenfield

11

12               SIDLEY AUSTIN LLP
                   One South Dearborn

13              Chicago, IL  60603
                   Phone:  312-853-7000

14              Fax:  312-853-7036

15              Carter G. Phillips
                   Brian R. Nester

16

17               SIDLEY AUSTIN LLP
                   1501 K Street NW

18              Washington, DC  20005
                   Telephone:  202-736-8000

19              Fax:  202-736-8711

20              Counsel for Microsoft Corp.

21

22

23

24

25

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

**CERTIFICATE OF SERVICE**

I, Linda Bledsoe, swear under penalty of perjury under the laws of the State of Washington to the following:

1.    I am over the age of 21 and not a party to this action.

2.    On the 6th day of August, 2012, I caused the preceding document to be served on counsel of record in the following manner:

**Attorneys for Motorola Solutions, Inc., and Motorola Mobility, Inc.:**

Ralph Palumbo, WSBA #04751
Philip S. McCune, WSBA #21081        _____ Messenger
Lynn M. Engel, WSBA #21934        _____ US Mail
Summit Law Group        _____ Facsimile
315 Fifth Ave. South, Suite 1000        __X__ ECF
Seattle, WA  98104-2682
Telephone:  206-676-7000
Email:  Summit1823@summitlaw.com


Steven Pepe (*pro hac vice*)        _____ Messenger
Jesse J. Jenner (*pro hac vice*)        _____ US Mail
Ropes & Gray LLP        _____ Facsimile
1211 Avenue of the Americas        __X__ ECF
New York, NY  10036-8704
Telephone:  (212) 596-9046
Email:  steven.pepe@ropesgray.com
Email:  jesse.jenner@ropesgray.com


Norman H. Beamer (*pro hac vice*)        _____ Messenger
Ropes & Gray LLP        _____ US Mail
1900 University Avenue, 6th Floor        _____ Facsimile
East Palo Alto, CA  94303-2284        __X__ ECF
Telephone:  (650) 617-4030
Email:  norman.beamer@ropesgray.com

MICROSOFT'S OPPOSITION TO MOTOROLA'S   C10-1823
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 17

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Paul M. Schoenhard (*pro hac vice*)  _____ Messenger
Ropes & Gray LLP  _____ US Mail
One Metro Center  _____ Facsimile
700 12th Street NW, Suite 900  __X__ ECF
Washington, DC  20005-3948
Telephone:  (202) 508-4693
Email: Paul.schoenhard@ropesgray.com

DATED this 6th day of August, 2012.

s/ Linda Bledsoe
LINDA BLEDSOE

MICROSOFT'S OPPOSITION TO MOTOROLA'S C10-1823
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 18

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717