# EXHIBIT 1

# NO. 12-35352

In The

# United States Court of Appeals

For The Ninth Circuit

▶▶◀◀

MICROSOFT CORPORATION, a Washington Corporation

*Plaintiff-Appellee*,

v.

MOTOROLA, INC., MOTOROLA MOBILITY, INC., and GENERAL
INSTRUMENT CORPORATION

*Defendants-Appellants*.

*On Appeal From The United States District Court
For The Western District Of Washington At Seattle*

**DEFENDANTS-APPELLANTS' MOTION FOR FURTHER EXPEDITION
OF APPEAL OF PRELIMINARY INJUNCTION, BY WAIVING ORAL
ARGUMENT AND REQUESTING IMMEDIATE SUBMISSION FOR
DISPOSITION ON THE MERITS**

Derek L. Shaffer
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
1299 Pennsylvania Avenue, NW
Suite 825
Washington, DC 20004
(202) 538-8000

Kathleen M. Sullivan
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue
22nd Floor
New York, NY  10010
(212) 849-7000

*continued on following page*

Ralph H. Palumbo                         K. McNeill Taylor, Jr.
Philip S. McCune                          MOTOROLA MOBILITY, INC.
Lynn M. Engel                             600 North U.S. Highway 45
SUMMIT LAW GROUP PLLC                     Libertyville, IL 60048-1286
315 Fifth Avenue South                    (858) 404-3580 (Telephone)
Suite 1000                                (847) 523-0727 (Facsimile)
Seattle, WA 98104-2682
(206) 676-7000 (Telephone)
(206) 676-7001 (Facsimile)


Steven Pepe                               Douglas Hallward-Driemeier
Jesse J. Jenner                           Paul M. Schoenhard
Stuart W. Yothers                         Kevin J. Post
ROPES & GRAY LLP                          ROPES & GRAY LLP
1211 Avenue of the Americas               One Metro Center
New York, NY 10036-8704                   700 12th Street NW, Suite 900
(212) 596-9046 (Telephone)                Washington, DC 20005-3948
                                          (202) 508-4693 (Telephone)


July 25, 2012                             *Attorneys for Defendants-Appellants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................2

STATEMENT OF THE CASE...............................................................4

    A.   Factual Background.................................................................5

    B.   Anti-Suit Injunction Below ....................................................8

ARGUMENT ......................................................................................10

    A.   Motorola Is Suffering Irreparable Harm. .............................11

    B.   The Anti-Suit Injunction Poses Intolerable Offense To Comity . ......13

    C.   This Appeal May Arguably Be Mooted Absent Expedition...............18

CONCLUSION ...................................................................................20

i

# TABLE OF AUTHORITIES

**Page**

## Cases

*A&M Records, Inc. v. Napster, Inc.*,
Nos. 00-16401, 00-16403, 2000 WL 1055915 (9th Cir. July 28, 2000) ............10

*Applied Med. Distrib. Corp. v. Surgical Co. BV*,
587 F.3d 909 (9th Cir. 2009) ................................................................13

*Canadian Filters (Harwich) Ltd. v. Lear-Siegler, Inc.*,
412 F.2d 577 (1st Cir. 1969) ................................................................16

*Cal. Pharm. Ass'n v. Maxwell-Jolly*,
563 F.3d 847 (9th Cir. 2009 ................................................................12

*Chevron Corp. v. Naranjo*,
667 F.3d 232 (2d Cir. 2012) ................................................................16

*Douglas v. Indep. Living Ctr. of S. Cal., Inc.*,
132 S. Ct. 1204 (Feb. 22, 2012) ..........................................................13

*E. & J. Gallo Winery v. Andina Licores S.A.*,
446 F.3d 984 (9th Cir. 2006) ........................................................13, 14

*Gau Shan Co., Ltd. v. Bankers Trust Co.*,
956 F.2d 1349 (6th Cir. 1992) .......................................3, 14, 15, 16

*Gen. Elec. Co. v. Deutz AG*,
270 F.3d 144 (3d Cir. 2001) ................................................................15

*Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft*,
491 F.3d 355 (8th Cir. 2007) ................................................................14

*Laker Airways Ltd. v. Sabena, Belgian World Airlines*,
731 F.2d 909 (D.C. Cir. 1984) ......................................................14, 17

*Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*,
361 F.3d 11 (1st Cir. 2004) ................................................................14

*Zynga, Inc. v. Vostu USA, Inc.*,
816 F. Supp. 2d 824 (N.D. Cal. 2011) ........................................11, 15

## Statutes and Rules

Ninth Circuit Rule 3-3 ................................................................2, 10

Ninth Circuit Rule 27-12 ........................................................1, 3, 10, 18

## <u>Other Authorities</u>

Daniel Tan, *Anti-Suit Injunctions and the Vexing Problem of Comity*,
   45 Va. J. Int'l L. 283, 338 (2005) ......................................................................15

Pursuant to Ninth Circuit Rule 27-12, Movants-Defendants-Appellants Motorola Mobility, Inc. and General Instrument Corporation (collectively, "Motorola") hereby respectfully move for further expedition of the appeal of the district court's preliminary injunction, an extraordinary anti-suit injunction that prevents Motorola from enforcing a German injunction against Microsoft in Germany under German law for its continuing infringement of Motorola's German patents in Germany. Because this appeal stands to be mooted, at least in part, when one of Motorola's German patents <u>expires this</u> **October 6, 2012**, and Motorola is facing irreparable harm from its inability to enforce its German patents in the face of continuing infringement by Microsoft, Motorola respectfully requests that this appeal, already fully briefed, be submitted to a merits panel for disposition as soon as practicable, potentially via summary disposition with opinion to follow.

Such expedited disposition would serve to restore the *status quo* between the parties, to ensure that this Court is able to resolve the merits while the dispute remains live, and to prevent ongoing harm to Motorola's patent rights, to international comity, and to the global framework whereby sister nations each adjudicate and enforce their respective patents in harmony, all as identified in the briefing.[1]  In order to facilitate this request, Motorola is willing to waive oral

---

[1]    Motorola has apprised Microsoft of this submission and is providing immediate service of it via electronic mail as well as ECF.  Microsoft has yet to convey its position with respect to this request.

argument, unless this Court deems oral argument desirable and can schedule the argument on the Court's September calendar notwithstanding that that calendar has already been released.

## INTRODUCTION

Motorola respectfully seeks expedited disposition of the district court's entry of an unprecedented anti-suit injunction that—in direct contravention of principles of international comity—enjoins enforcement in Germany of a German court's order concerning conduct and patents in Germany. This appeal already has proceeded on an expedited basis pursuant to Circuit Rule 3-3, with all briefing completed on July 16, 2012. Motorola respectfully submits that the briefing furnishes a full and fair account from both parties, and now makes clear that the district court has erred as a matter of law and caused undue affront to the German courts. Absent further expedition of this appeal enabling decision before October, however, this Court may not be able to provide timely cure; indeed, the appeal may become moot to the extent that a German patent at issue expires and/or larger business considerations may moot other aspects of the current dispute.

The District Court for the Western District of Washington has in effect asserted exclusive jurisdiction worldwide over Motorola's licensing to Microsoft of its global portfolio of standard-essential patents at issue, even to the point of ousting foreign courts otherwise positioned to enforce their own nations' patents.

This assertion of extraterritorial patent authority is unprecedented and unwarranted, and cannot be justified based simply on Microsoft's claim that an initial licensing offer by Motorola on its standard-essential patents was unreasonable. Claiming exclusive jurisdiction to adjudicate terms on which Motorola must license patents to Microsoft around the world, the district court has enjoined enforcement of a judgment issued by a German court granting Motorola an injunction against Microsoft's continuing infringement of Motorola's German patents. Instead of seeking relief through the German court system, Microsoft asked the court in Seattle to block Motorola's orderly enforcement of the German judgment within Germany. The district court granted Microsoft's request and, in doing so, exceeded the permissible bounds of its authority. So long as this unprecedented anti-suit injunction stands, it continues to "convey[] the message, intended or not, that the [U.S.] court has so little confidence in the [German] court's ability to adjudicate a given dispute fairly and efficiently that it is unwilling even to allow the possibility." *Gau Shan Co., Ltd. v. Bankers Trust Co.*, 956 F.2d 1349, 1355 (6th Cir. 1992).

Under Circuit Rule 27-12, a motion to expedite may be granted for "good cause." "Good cause" specifically exists in instances where "irreparable harm may occur or the appeal may become moot." Cir. R. 27-12. Here, such good cause stems from (i) the irreparable harm Motorola will continue to suffer so long as

Microsoft is permitted to continue infringing Motorola's German patents without secure redress; (ii) the institutional injury that is being inflicted on international comity and the German courts; and (iii) the risk that the appeal may otherwise fall moot before it is decided.

Several intervening events since the Court initially ordered expedited briefing heighten these risks: First, the district court earlier this month threatened "heavy monetary sanctions" against Motorola and its counsel in the face of what it appears to deem "bad faith or abusive conduct" reflected in Motorola's suggestion that the court lacks authority on the record here to impose RAND licensing terms to be determined *ab initio* by the court. Tr. 10:11-15, No. 10-1823, ECF No. 359 (W.D. Wash. July 9, 2012). Second, Google Inc.'s acquisition of Motorola (completed on May 22, 2012) has raised larger business considerations that could moot the appeal before decision. An expedited merits ruling by this Court may assist in correcting the course of proceedings below and eliminating a precedent that, unless superseded, may wreak similar havoc in future standard-essential patent cases involving licensing disputes with international dimension.

## STATEMENT OF THE CASE

Because the merits of this case have been fully briefed, Motorola simply summarizes the main issues on appeal here.

## A.    Factual Background

The preliminary injunction at issue was granted in the context of ongoing litigation between Microsoft and Motorola over the licensing of Motorola's "essential patents," which are standard patents that facilitate compatibility between products manufactured by different companies.  Non-governmental standards-setting organizations ("SSOs") establish technical standards; members of the SSO that hold essential patents generally must agree to license their essential patents on "reasonable and non-discriminatory" ("RAND") terms to any interested party.  The actual RAND terms are left for the parties to negotiate.

The dispute here concerns two essential patents that Motorola holds and Microsoft uses in certain of its products.  Motorola sent Microsoft letters in October 2010, offering to license its entire 802.11 and H.264 patent portfolios, consisting of more than 400 patents in more than 30 countries (Excerpts of Record ("ER") 375-96, ER 398-421)[2] on the same standard terms on which Motorola had licensed other portfolios to other licensees.  Three weeks later, without engaging in good-faith license negotiations, Microsoft filed the suit below alleging breach of contract and related state-law claims against Motorola.

Microsoft's complaint, later amended, alleged that Motorola breached an obligation to license at RAND rates the patents mentioned in the letters.  ER 471-

---

[2]    Citations to "ER" refer to the Excerpts of Record that have been filed with this Court in connection with the already completed merits briefing.

72 (Compl. ¶ 1); ER 434-35 (Am. Compl. ¶ 1). In both versions of its complaint, Microsoft sought a declaration that it was entitled to licenses for essential patents from Motorola and that Motorola's opening offer was not RAND. ER 457-58, ER 492. Microsoft sought damages, but never requested the district court set a RAND rate or establish the terms for a license. ER 16 n.12.

While suit proceeded below, Microsoft continued to sell products that infringed Motorola's patents without benefit of any license. As a result, in July 2011, Motorola sued Microsoft in Germany for Microsoft's continuing infringement of certain of Motorola's German patents. ER 335 (Redacted Declaration of Dr. Marcus Grosch, No. 10-1823, ECF No. 245, at ¶ 14 (W.D. Wash. Apr. 6, 2012) ("Grosch Decl.")). Motorola's German suit pertains only to the German versions of its patents and seeks relief only as to the German market. No cause of action would be available for Motorola to enforce its German patents in the United States.

Germany has its own distinctive procedures for resolving RAND disputes, as set forth in the German Supreme Court's *Orange Book* decision. ER 330-35 (Grosch Decl. ¶¶ 3-13). Under *Orange Book* procedures, the accused infringer can avoid an injunction by making a binding offer on RAND terms and by acting as if licensed (including by paying the RAND royalty into an escrow account). ER 332-33 (Grosch Decl. ¶¶ 7-8). If a German court determines that the infringer's offer

6

was such that the patent holder could not reject it without violating its RAND
assurances, the patent holder's action for injunctive relief is dismissed.   If the
patent holder accepts the offer, then a license agreement is established, again
precluding injunctive relief.   ER 332-33 (Grosch Decl. ¶¶ 7-8).   Under *Orange
Book*, the defendant need not commit to an unduly high rate in order to avoid a
circumstance where the patent holder permissibly rejects the offer and pursues its
right to injunctive relief.  ER 338-39 (Grosch Decl. ¶ 26).   Rather, *Orange Book*
procedure allows an accused infringer to commit to enter into a license at a rate to
be set by the patent holder, subject to review by the German court.   ER 332-33
(Grosch Decl. ¶ 8).   There was therefore no risk of Microsoft being forced to pay
an above-RAND rate in Germany.

Microsoft declined to take this second option, in which it would have agreed
to enter a license at a rate specified by Motorola and subject to the German court's
review.   Instead, Microsoft took the first option, proposing a licensing rate for
Motorola's German patents in December 2011 and facing the risk that Motorola
might permissibly reject the offer and pursue its right to injunctive relief.
Motorola deemed Microsoft's offer far too low to be RAND (ER 336-39 (Grosch
Decl. ¶¶ 20, 26); *see also* ER 259, 261) and exercised its right to reject Microsoft's
offer—thereby risking that a German court would dismiss its infringement action if
the court deemed Microsoft's offered rate to be RAND, in which case Motorola

7

could also face potential sanctions for anticompetitive conduct. ER 332-33 (Grosch Decl. ¶ 8). In fact, however, the German court determined that Motorola was within its rights in rejecting Microsoft's proposed terms as too low. ER 163-217 (German court decision); *see also* ER 234-71 (Microsoft's English translation of German decision).

### B. Anti-Suit Injunction Below

Just as the German court was nearing a decision on Motorola's claims, Microsoft for the first time asked the district court in Seattle to enjoin Motorola from enforcing the German court's expected ruling that Microsoft's products in Germany infringe Motorola's German patents. Mot. for Temporary Restraining Order and Prelim. Inj., No. 10-1823, ECF No. 210 (W.D. Wash. Mar. 28, 2012). The district court issued a temporary restraining order of indefinite duration on April 12, 2012 (ER 26-28), which it then converted to a preliminary injunction on May 14, 2012 (ER 25). In the meantime, on May 2, 2012, the German court issued its expected injunction against Microsoft, which cannot go into effect unless and until Motorola takes additional steps to enforce it. But those steps have been forbidden by the anti-suit injunction at issue.

Central to the district court's decision were (i) its commitment to setting the terms for a worldwide RAND license between Motorola and Microsoft for Motorola's standard-essential patents; and (ii) its perception that enforcement of

the German injunction would be in tension with its supposed authority to bestow that worldwide RAND license upon Microsoft.  ER 16, 38-39.  The district court reached this conclusion even though it acknowledged that Microsoft's complaint nowhere sought a license from the court (ER 16 n.12) and despite the absence of authority for the court to draft a license *ab initio*.  Microsoft's claimed charter for this judicial intervention is simply Motorola's initial offer letter proposing to license its global portfolio of essential patents on standard terms—an offer that Microsoft deemed too high.  ER 20; *see also* ER 38 ("[T]he offer letter from Motorola sent to Microsoft in the United States covers both the U.S. and foreign patents, and it is this offer letter which Microsoft alleges breaches the ITU agreement"); ER 38-39 ("[I]f Motorola did not want its foreign patent subject to this court's jurisdiction, then it would not have provided them as part of the offer letter to Microsoft.").

Since briefing has concluded, the court has invoked the prospect of imposing "heavy monetary sanctions" upon "the law firms and the parties" for what it perceives to be "bad faith or abusive conduct" surrounding licensing of "the industry standard patents."  Tr. 10:11-15, No. 10-1823, ECF No. 359 (W.D. Wash. July 9, 2012).

## C.    Procedural Posture

As of this date, briefing of this appeal of the preliminary injunction below has been completed on an expedited basis pursuant to Circuit Rule 3-3.  This case is now ready for submission on the merits pending only oral argument, which has yet to be scheduled and apparently would not be scheduled until November at the earliest.  Because oral argument would delay decision by many months, Motorola hereby waives it unless the Court deems argument desirable and capable of being scheduled on the September calendar.  This would enable the appeal to be resolved on the merits **before October 6, 2012**, when one of Motorola's German patents otherwise slated to be duly enforced through a German court's injunction expires.

## ARGUMENT

Expedition "will be granted upon a showing of good cause."  Cir. R. 27-12.  Good cause encompasses, *e.g.*, circumstances where, absent expedition, (a) irreparable injury "may occur"; or (b) "the appeal may become moot."  *Id.*; *see also A&M Records, Inc. v. Napster, Inc.*, Nos. 00-16401, 00-16403, 2000 WL 1055915, at *1 (9th Cir. July 28, 2000) (granting motion to expedite because appellant "raised substantial questions of first impression going to both the merits and the form of the injunction").  Such cause abounds here.

## A.     Motorola Is Suffering Irreparable Harm.

Motorola faces irreparable harm absent relief from this Court.  The district court's anti-suit injunction permits infringement of Motorola's patents to continue in Germany unabated in the absence of any secure means for Motorola ultimately to obtain monetary redress.  The district court's exertion of power also chills Motorola's ability to obtain fair licensing terms in Germany.

To date, Microsoft has declined to license Motorola's German patents either on terms negotiated between the parties or available through German *Orange Book* procedure; thus, it is undisputed that Microsoft holds no license and is paying nothing as to Motorola's patents it is infringing.  A German court has held that Microsoft is infringing in Germany and that Motorola properly rejected Microsoft's offer as too low to be RAND.  Accordingly, the German court concluded that injunctive relief is appropriate.  Under principles of international comity, these findings—made by a German court, applying German law to the infringement of German patents in Germany—should be determinative.

Patent law is determined nation by nation, and does not extend extraterritorially.  Thus, "federal courts around the country have considered anti-suit injunctions of parallel proceedings in a variety [of] intellectual property contexts and have uniformly concluded that such injunctions are improper." *Zynga, Inc. v. Vostu USA, Inc.*, 816 F. Supp. 2d 824, 829 (N.D. Cal. 2011).  The

district court has turned things upside down, however, by equating orderly progression of German patent adjudication with irreparable injury to Microsoft. The upshot is that Microsoft continues to infringe Motorola's German patents with impunity even as the applicable German remedy, an injunction, is enjoined below.

The injunction at issue specifically denies any secure redress for Microsoft's infringement so long as the injunction remains in place. According to the German courts, an injunction is the appropriate remedy for Microsoft's infringement; according to the court below, no injunction may be enforced. And Microsoft has eschewed *Orange Book* procedure available under German law that would ensure appropriate monetary payment from Microsoft to Motorola for the former's use of the latter's patents in Germany. No other secure mechanism exists for Motorola ultimately to obtain monetary recompense for Microsoft's continuing infringement in Germany. Although the district court contemplates imposing licensing terms (with prospect of retrospective licensing payments by Microsoft), its ultimate authority to do so, particularly with the benefit of this Court's review, will remain unresolved so long as this case is pending. To the extent monetary relief would later elude Motorola, monetary harm from Microsoft's continued infringement in Germany amounts to irreparable harm. *Cf. Cal. Pharm. Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852 (9th Cir. 2009) ("[B]ecause the Hospital Plaintiffs and their members will be unable to recover damages against the Department even if they

are successful on the merits of their case, they will suffer irreparable harm [absent] the requested injunction."), *vacated on other grounds sub nom. by Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 132 S. Ct. 1204 (Feb. 22, 2012).

Finally, as a practical matter, the proceedings below cast a long shadow over licensing negotiations between the parties. The lower court's extraordinary anti-suit injunction has served to insulate Microsoft from the natural consequence of its continuing infringement in Germany. To the extent the injunction is destined to be reversed, it is in the meantime affording Microsoft undue leverage in larger licensing negotiations. That leverage is further bolstered by the district court's announced commitment to force Motorola to terms that otherwise stand to be filled in by the court *ab initio*.

## B.    The Anti-Suit Injunction Poses Intolerable Offense To Comity.

The interests of sister courts and international comity also would be served by maximum expedition. While this Court's precedents dictate that anti-suit injunctions should be used "sparingly," *see Applied Med. Distrib. Corp. v. Surgical Co. BV*, 587 F.3d 909, 920 (9th Cir. 2009); *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 989 (9th Cir. 2006), the district court issued an anti-suit injunction in circumstances that specially foreclose it: In particular, the injunction prevents a sister court of a foreign sovereign from enforcing its own judgment

about how to enforce its own patents within its own borders. The resulting offense to comity is unprecedented and intolerable.

As the D.C. Circuit explained several decades ago in the seminal case of *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909 (D.C. Cir. 1984), "comity serves our international system like the mortar which cements together a brick house. No one would willingly permit the mortar to crumble or be chipped away for fear of compromising the entire structure." 731 F.2d at 937; *see also Gallo*, 446 F.3d at 995 (quoting same). To be sure, where exceptional circumstances admit of no other recourse, the impact of an anti-suit injunction on comity may be tolerable. Yet an anti-suit injunction that has issued improperly, as this one has, "can have unintended, widespread effects." *Gau Shan*, 956 F.2d at 1355. Whenever a U.S. court enters an injunction that intrudes upon a foreign court's ability to exercise proper jurisdiction over the matters before it, the order compromises the cooperation and reciprocity between sister courts that facilitate international trade and commerce. *See id.*; *see also Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft*, 491 F.3d 355, 360 (8th Cir. 2007) (The "importance [of comity] in our globalized economy cannot be overstated."); *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 19 (1st Cir. 2004) (explaining that international commerce "depends on cooperation, reciprocity, and respect among nations" that anti-suit injunctions can undermine).

14

Furthermore, anti-suit injunctions, unless carefully circumscribed and specially justified, "invite[] similar disrespect for our judicial proceedings." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 160 (3d Cir. 2001); *Gau Shan*, 956 F.2d at 1355 ("[A]ntisuit injunctions are . . . destructive of international comity . . . . Foreign courts can be expected to reciprocate such disrespect.").

Factors unique to this anti-suit injunction make its affront to international comity especially intolerable and warrant prompt attention from this Court. First, it is intruding upon another country's enforcement of its own intellectual property within its own borders. *See, e.g.*, *Zynga, Inc.*, 816 F. Supp. 2d at 829 ("[F]ederal courts around the country have considered anti-suit injunctions of parallel proceedings in a variety [of] intellectual property contexts and have uniformly concluded that such injunctions are improper."); *see also* Daniel Tan, *Anti-Suit Injunctions and the Vexing Problem of Comity*, 45 Va. J. Int'l L. 283, 338 (2005). ("[T]he policy of preserving comity make[s] it difficult to think of any circumstances under which the courts should issue an anti-suit injunction to restrain foreign patent and trademark proceedings."). The briefs recite a string of precedents that call for reversal of this injunction on this basis, and none that supports it. *See* Opening Br. of Defs.-Appellants, No. 12-35352, ECF No. 14, at 26-29 (9th Cir. May 30, 2012); Reply Br. of Defs.-Appellants, No. 12-35352, ECF No. 29, at 3-6 (9th Cir. July 16, 2012).

Second, the anti-suit injunction here was issued only as the foreign court was poised to issue its judgment. And it was obtained below at Microsoft's behest without Microsoft having dignified the German courts with any request for stay there. Such circumvention of the German court is especially egregious considering that Microsoft did not even request a stay from the foreign court whose proceedings are being enjoined. *See Canadian Filters (Harwich) Ltd. v. Lear-Siegler, Inc.*, 412 F.2d 577, 579 (1st Cir. 1969) ("Filters sought the wrong relief. Rather than, in effect, attempt to strong-arm the Canadian court, it should have asked that court, if it thought it was so entitled, to postpone its proceedings until the United States court had taken action."); *Gau Shan*, 956 F.2d at 1355 (a district court should not "convey[] the message, intended or not, that the [U.S.] court has so little confidence in the foreign court's ability to adjudicate a given dispute fairly and efficiently that it is unwilling even to allow the possibility"); *cf. Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012) ("It is a particularly weighty matter for a court in one country to declare that another country's legal system is so corrupt or unfair that its judgments are entitled to no respect from the courts of other nations.").

Finally, the affront to comity is still more pronounced because the district court's ruling disdains *Orange Book* procedures. In identifying the prospect of irreparable harm to Microsoft, the district court pointed specifically to Germany's

16

*Orange Book* process as entailing "negotiation ... with the threat of an immediate injunction hanging over [Microsoft's] head," which it deemed "substantial harm." ER 34; *see also* ER 24 (describing "the threat of an injunction looming over the negotiation table"). The district court thus inappropriately denigrated German law and procedure, while rescuing Microsoft from supposed harm that Microsoft can itself avoid simply by agreeing to licensure and thereby obviating the German injunction.

In sum, the district court's order enjoins wholly extraterritorial conduct, while the German court's ruling adjudicates the parties' rights only with respect to German patents as practiced within Germany. The German court's order does not purport to apply U.S. law or to affect rights within the United States. In contrast, the injunction at issue trenches upon the natural ability of German courts to apply their own laws to their own patents within their own borders. Faced with similar circumstances, the D.C. Circuit found that an anti-suit injunction entered by an *English* court that prevented a U.S. court from "apply[ing] its own laws to corporations doing business in this country" had "usurped" the U.S. courts' judicial functions and "destroy[ed] the autonomy of the courts." *Laker Airways*, 731 F.2d at 939. Now the shoe is on the other foot—and the *U.S.* court is enjoining enforcement by another country's courts under that country's laws—but the offense remains the same. This Court should expedite this appeal.

## C.     This Appeal May Arguably Be Mooted Absent Expedition.

Unless this Court expedites merits resolution, there is a real danger that these critical questions will fall moot. If the appeal becomes moot before this Court rules, the propriety of the anti-suit injunction may go uncorrected, problematic precedent may remain on the books, and this Court may not find occasion to publish its own opinion on the important questions now presented. Important principles of international comity are at stake. District courts would benefit from this Court's instruction on whether and to what extent the existence of concurrent litigation in other countries warrants the formidable medicine of an anti-suit injunction, just as the court below, in particular, would benefit from this Court's guidance as to how this case should be proceeding. The risk of mootness supplies additional "good cause" for expediting Motorola's appeal. *See* Cir. Rule 27-12.

First, the two patents currently in dispute in Germany will expire in October 2012 and March 2014.[3] If one or both of the German patents expires before the Court rules on Motorola's appeal, then Motorola will not be able to seek enforcement of the German injunction even if this Court later lifts the anti-suit

---

[3] In Germany, patents expire twenty years after the patent is filed. *See* European Patent Convention, art. 63 § 1, July 4, 1997, *available at* http://www. epo.org/law-practice/legal-texts/html/epc/2010/e/ar63.html. One patent at issue in the German dispute, EP0538667, was filed in Germany on October 6, 1992, such that it will expire on or around October 6, 2012. The other patent, EP0615384, was filed on March 10, 1994, such that it will expire on or around March 10, 2014.

injunction at issue. In that circumstance, Motorola would be forever deprived of the process whereby German courts should have been enforcing its patent.

Second, as of May 22, 2012, Google has acquired Motorola. Larger business considerations may separately overtake and subsume Motorola's German patents at issue in this appeal. This appeal can and should be decided in its present posture, however, while the dispute over Motorola's established entitlement to the injunction in Germany remains live.

Third, the district court is indicating that it may enter an order requiring the parties to enter worldwide licenses for Motorola's essential patents, on terms set by the district court, as early as November 2012. In particular, the district court intends to hold a trial at which the appropriate RAND rate and other terms (if they remain in dispute) would be determined; in the meantime, it has indicated that the parties will be made either to agree to or propose "boilerplate" terms covering all aspects of a global RAND license other than rate. Even now, Motorola is facing formidable pressures to agree to global licensing on terms as ordered below. When Motorola earlier this month indicated it would be opposing any efforts below to set judicially the terms of a RAND license before any RAND breach has even been found,[4] the district court's response was pointed. Tr. 10:11-15, No. 10-1823, ECF

---

[4]    *See* Motorola Mobility's and General Instrument's Mot. for Partial Summ. J. Dismissing Microsoft's Claim for a RAND Patent License Agreement

No. 359 (W.D. Wash. July 9, 2012) ("Both sides have been warned that heavy monetary sanctions may be imposed on the law firms and the parties bad faith or abusive conduct in the litigation will be punished by equitable remedies going to the industry standard patents."). Only through expedited review can proper merits resolution be ensured and timely guidance provided.

## CONCLUSION

For the foregoing reasons, Motorola respectfully waives oral argument (except to the extent that this Court may accommodate such argument on its September calendar), requests that submission and resolution of this appeal on the merits be expedited such that it can be resolved, if practicable, in advance of October, and suggests that this Court may wish to issue an initial, summary disposition with opinion to follow.

---

To Be Determined *Ab Initio* By The Court, No. 10-1823, ECF No. 362, at 2-4 (W.D. Wash. July 18, 2012).

Respectfully submitted,

By:  s/ Kathleen M. Sullivan

Kathleen M. Sullivan
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000 (Telephone)
(212) 849-7100 (Facsimile)
kathleensullivan@quinnemanuel.com

Derek L. Shaffer
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
1299 Pennsylvania Avenue, NW
Suite 825
Washington, DC  20004
(202) 538-8000 (Telephone)
(202) 538-8100 (Facsimile)
derekshaffer@quinnemanuel.com

Ralph H. Palumbo
Philip S. McCune
Lynn M. Engel
SUMMIT LAW GROUP PLLC
315 Fifth Avenue South
Suite 1000
Seattle, WA 98104-2682
(206) 676-7000 (Telephone)
(206) 676-7001 (Facsimile)

K. McNeill Taylor, Jr.
MOTOROLA MOBILITY, INC.
600 North U.S. Highway 45
Libertyville, IL 60048-1286
(858) 404-3580 (Telephone)
(847) 523-0727 (Facsimile)

Steven Pepe
Jesse J. Jenner
Stuart W. Yothers
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
(212) 596-9046 (Telephone)

Douglas Hallward-Driemeier
Paul M. Schoenhard
Kevin J. Post
ROPES & GRAY LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC 20005-3948
(202) 508-4693 (Telephone)

# CERTIFICATE OF SERVICE

I, Kathleen M. Sullivan, a member of the Bar of this Court, hereby certify that on July 25, 2012, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Kathleen M. Sullivan
Kathleen M. Sullivan
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York  10010
(212) 849-7000 (telephone)
(212) 849-7100 (facsimile)