# EXHIBIT 3

# United States Senate
WASHINGTON, DC 20510

June 19, 2012

The Honorable Deanna Okun
International Trade Commission
500 E Street, S.W.
Washington, D.C. 20436

Re: *Certain Gaming Entertainment Consoles, Related Software, and Components Thereof,* Investigation No 337-TA-752

*Certain Wireless Communication Devices, Portable Music and Data Processing Devices, Computers, and Components Thereof,* Investigation No 337-TA-745

Dear Chairman Okun:

We write to express concerns with regard to the availability of the exclusion order as a remedy for cases in which "standard-essential patents" (SEPs) are asserted. Although we take no position on the particular merits of the above-captioned cases, we urge the Commission to consider the following public interest arguments carefully as it proceeds with these and other matters in which SEPs are at issue.

Businesses and consumers depend on a reliable standards-setting process to promote interoperability and expand choice. Industry standards underpin many of the technologies incorporated in common products used to play online video, connect to the Internet, watch DVDs, or communicate via smartphone. These standards are crucial to ensuring that consumers have access to a competitive market of compatible products.

Many companies that participate in setting industry standards contribute patented technology to the standardization process. As a result, standard-essential patents are inevitably infringed when the standard is implemented. The standards setting process thus depends on a commitment from companies contributing patents to license those patents to all parties implementing the standard on reasonable and non-discriminatory (RAND) terms.

For the standards setting process to function effectively, companies that commit to license their SEPs on RAND terms must seek to resolve disputes over their patents through a royalty agreement or judicial determination of a reasonable rate. As these companies have pledged not to exercise exclusivity over such patents, they should not expect the grant of an exclusion order when they are in violation of an obligation to license the patents on RAND terms.

Any precedent that would enable or encourage companies to include their patented technology in a standard, commit to license included patents on RAND terms, and then seek to

secure an exclusion order despite a breach of that commitment would thus implicate significant policy concerns. Such an outcome would severely undermine broad participation in the standards-setting process, which would in turn threaten the meaningful benefits these standards provide for both industries and consumers.

Given the value and importance of industry standards, we trust that you will carefully consider and give due weight to these critical public policy concerns in your analysis. Please keep us advised as your decision making process proceeds.

Sincerely,

Mike Lee
United States Senator

Herb Kohl
United States Senator

Jon Kyl
United States Senator

John Cornyn
United States Senator

Jim Risch
United States Senator

John Hoeven
United States Senator

# United States Senate
WASHINGTON, DC 20510

June 19, 2012

The Honorable Deanna Okun
International Trade Commission
500 E Street, S.W.
Washington, D.C. 20436

Re: *Certain Gaming Entertainment Consoles, Related Software, and Components Thereof,* Investigation No 337-TA-752

*Certain Wireless Communication Devices, Portable Music and Data Processing Devices, Computers, and Components Thereof,* Investigation No 337-TA-745

Dear Chairman Okun:

We write to express concerns with regard to the availability of the exclusion order as a remedy for cases in which "standard-essential patents" (SEPs) are asserted. Although we take no position on the particular merits of the above-captioned cases, we urge the Commission to consider the following public interest arguments carefully as it proceeds with these and other matters in which SEPs are at issue.

Businesses and consumers depend on a reliable standards-setting process to promote interoperability and expand choice. Industry standards underpin many of the technologies incorporated in common products used to play online video, connect to the Internet, watch DVDs, or communicate via smartphone. These standards are crucial to ensuring that consumers have access to a competitive market of compatible products.

Many companies that participate in setting industry standards contribute patented technology to the standardization process. As a result, standard-essential patents are inevitably infringed when the standard is implemented. The standards setting process thus depends on a commitment from companies contributing patents to license those patents to all parties implementing the standard on reasonable and non-discriminatory (RAND) terms.

For the standards setting process to function effectively, companies that commit to license their SEPs on RAND terms must seek to resolve disputes over their patents through a royalty agreement or judicial determination of a reasonable rate. As these companies have pledged not to exercise exclusivity over such patents, they should not expect the grant of an exclusion order when they are in violation of an obligation to license the patents on RAND terms.

Any precedent that would enable or encourage companies to include their patented technology in a standard, commit to license included patents on RAND terms, and then seek to

secure an exclusion order despite a breach of that commitment would thus implicate significant policy concerns. Such an outcome would severely undermine broad participation in the standards-setting process, which would in turn threaten the meaningful benefits these standards provide for both industries and consumers.

Given the value and importance of industry standards, we trust that you will carefully consider and give due weight to these critical public policy concerns in your analysis. Please keep us advised as your decision making process proceeds.

Sincerely,

_____
Mike Lee
United States Senator

_____
Herb Kohl
United States Senator

_____
Jon Kyl
United States Senator

_____
John Cornyn
United States Senator

_____
Jim Risch
United States Senator

_____
John Hoeven
United States Senator

# United States Senate
WASHINGTON, DC 20510

June 19, 2012

The Honorable Deanna Okun
International Trade Commission
500 E Street, S.W.
Washington, D.C. 20436

Re: *Certain Gaming Entertainment Consoles, Related Software, and Components Thereof,* Investigation No 337-TA-752

*Certain Wireless Communication Devices, Portable Music and Data Processing Devices, Computers, and Components Thereof,* Investigation No 337-TA-745

Dear Chairman Okun:

We write to express concerns with regard to the availability of the exclusion order as a remedy for cases in which "standard-essential patents" (SEPs) are asserted. Although we take no position on the particular merits of the above-captioned cases, we urge the Commission to consider the following public interest arguments carefully as it proceeds with these and other matters in which SEPs are at issue.

Businesses and consumers depend on a reliable standards-setting process to promote interoperability and expand choice. Industry standards underpin many of the technologies incorporated in common products used to play online video, connect to the Internet, watch DVDs, or communicate via smartphone. These standards are crucial to ensuring that consumers have access to a competitive market of compatible products.

Many companies that participate in setting industry standards contribute patented technology to the standardization process. As a result, standard-essential patents are inevitably infringed when the standard is implemented. The standards setting process thus depends on a commitment from companies contributing patents to license those patents to all parties implementing the standard on reasonable and non-discriminatory (RAND) terms.

For the standards setting process to function effectively, companies that commit to license their SEPs on RAND terms must seek to resolve disputes over their patents through a royalty agreement or judicial determination of a reasonable rate. As these companies have pledged not to exercise exclusivity over such patents, they should not expect the grant of an exclusion order when they are in violation of an obligation to license the patents on RAND terms.

Any precedent that would enable or encourage companies to include their patented technology in a standard, commit to license included patents on RAND terms, and then seek to

-2-

secure an exclusion order despite a breach of that commitment would thus implicate significant policy concerns. Such an outcome would severely undermine broad participation in the standards-setting process, which would in turn threaten the meaningful benefits these standards provide for both industries and consumers.

Given the value and importance of industry standards, we trust that you will carefully consider and give due weight to these critical public policy concerns in your analysis. Please keep us advised as your decision making process proceeds.

Sincerely,

_____
Mike Lee
United States Senator

_____
Herb Kohl
United States Senator

_____
Jon Kyl
United States Senator

_____
John Cornyn
United States Senator

_____
Jim Risch
United States Senator

_____
John Hoeven
United States Senator

# United States Senate
WASHINGTON, DC 20510

June 19, 2012

The Honorable Deanna Okun
International Trade Commission
500 E Street, S.W.
Washington, D.C. 20436

Re: *Certain Gaming Entertainment Consoles, Related Software, and Components Thereof,* Investigation No 337-TA-752

*Certain Wireless Communication Devices, Portable Music and Data Processing Devices, Computers, and Components Thereof,* Investigation No 337-TA-745

Dear Chairman Okun:

      We write to express concerns with regard to the availability of the exclusion order as a remedy for cases in which "standard-essential patents" (SEPs) are asserted. Although we take no position on the particular merits of the above-captioned cases, we urge the Commission to consider the following public interest arguments carefully as it proceeds with these and other matters in which SEPs are at issue.

      Businesses and consumers depend on a reliable standards-setting process to promote interoperability and expand choice. Industry standards underpin many of the technologies incorporated in common products used to play online video, connect to the Internet, watch DVDs, or communicate via smartphone. These standards are crucial to ensuring that consumers have access to a competitive market of compatible products.

      Many companies that participate in setting industry standards contribute patented technology to the standardization process. As a result, standard-essential patents are inevitably infringed when the standard is implemented. The standards setting process thus depends on a commitment from companies contributing patents to license those patents to all parties implementing the standard on reasonable and non-discriminatory (RAND) terms.

      For the standards setting process to function effectively, companies that commit to license their SEPs on RAND terms must seek to resolve disputes over their patents through a royalty agreement or judicial determination of a reasonable rate. As these companies have pledged not to exercise exclusivity over such patents, they should not expect the grant of an exclusion order when they are in violation of an obligation to license the patents on RAND terms.

      Any precedent that would enable or encourage companies to include their patented technology in a standard, commit to license included patents on RAND terms, and then seek to

-2-

secure an exclusion order despite a breach of that commitment would thus implicate significant policy concerns. Such an outcome would severely undermine broad participation in the standards-setting process, which would in turn threaten the meaningful benefits these standards provide for both industries and consumers.

Given the value and importance of industry standards, we trust that you will carefully consider and give due weight to these critical public policy concerns in your analysis. Please keep us advised as your decision making process proceeds.

Sincerely,

Mike Lee
United States Senator

Herb Kohl
United States Senator

Jon Kyl
United States Senator

John Cornyn
United States Senator

Jim Risch
United States Senator

John Hoeven
United States Senator

# United States Senate
WASHINGTON, DC 20510

June 19, 2012

The Honorable Deanna Okun
International Trade Commission
500 E Street, S.W.
Washington, D.C. 20436

Re: *Certain Gaming Entertainment Consoles, Related Software, and Components Thereof,* Investigation No 337-TA-752

*Certain Wireless Communication Devices, Portable Music and Data Processing Devices, Computers, and Components Thereof,* Investigation No 337-TA-745

Dear Chairman Okun:

We write to express concerns with regard to the availability of the exclusion order as a remedy for cases in which "standard-essential patents" (SEPs) are asserted. Although we take no position on the particular merits of the above-captioned cases, we urge the Commission to consider the following public interest arguments carefully as it proceeds with these and other matters in which SEPs are at issue.

Businesses and consumers depend on a reliable standards-setting process to promote interoperability and expand choice. Industry standards underpin many of the technologies incorporated in common products used to play online video, connect to the Internet, watch DVDs, or communicate via smartphone. These standards are crucial to ensuring that consumers have access to a competitive market of compatible products.

Many companies that participate in setting industry standards contribute patented technology to the standardization process. As a result, standard-essential patents are inevitably infringed when the standard is implemented. The standards setting process thus depends on a commitment from companies contributing patents to license those patents to all parties implementing the standard on reasonable and non-discriminatory (RAND) terms.

For the standards setting process to function effectively, companies that commit to license their SEPs on RAND terms must seek to resolve disputes over their patents through a royalty agreement or judicial determination of a reasonable rate. As these companies have pledged not to exercise exclusivity over such patents, they should not expect the grant of an exclusion order when they are in violation of an obligation to license the patents on RAND terms.

Any precedent that would enable or encourage companies to include their patented technology in a standard, commit to license included patents on RAND terms, and then seek to

-2-

secure an exclusion order despite a breach of that commitment would thus implicate significant policy concerns. Such an outcome would severely undermine broad participation in the standards-setting process, which would in turn threaten the meaningful benefits these standards provide for both industries and consumers.

Given the value and importance of industry standards, we trust that you will carefully consider and give due weight to these critical public policy concerns in your analysis. Please keep us advised as your decision making process proceeds.

Sincerely,

_____
Mike Lee
United States Senator

_____
Herb Kohl
United States Senator

_____
Jon Kyl
United States Senator

_____
John Cornyn
United States Senator

_____
Jim Risch
United States Senator

_____
John Hoeven
United States Senator

# United States Senate
WASHINGTON, DC 20510

June 19, 2012

The Honorable Deanna Okun
International Trade Commission
500 E Street, S.W.
Washington, D.C. 20436

Re: *Certain Gaming Entertainment Consoles, Related Software, and Components Thereof,*
Investigation No 337-TA-752

*Certain Wireless Communication Devices, Portable Music and Data Processing Devices, Computers, and Components Thereof,* Investigation No 337-TA-745

Dear Chairman Okun:

We write to express concerns with regard to the availability of the exclusion order as a remedy for cases in which "standard-essential patents" (SEPs) are asserted. Although we take no position on the particular merits of the above-captioned cases, we urge the Commission to consider the following public interest arguments carefully as it proceeds with these and other matters in which SEPs are at issue.

Businesses and consumers depend on a reliable standards-setting process to promote interoperability and expand choice. Industry standards underpin many of the technologies incorporated in common products used to play online video, connect to the Internet, watch DVDs, or communicate via smartphone. These standards are crucial to ensuring that consumers have access to a competitive market of compatible products.

Many companies that participate in setting industry standards contribute patented technology to the standardization process. As a result, standard-essential patents are inevitably infringed when the standard is implemented. The standards setting process thus depends on a commitment from companies contributing patents to license those patents to all parties implementing the standard on reasonable and non-discriminatory (RAND) terms.

For the standards setting process to function effectively, companies that commit to license their SEPs on RAND terms must seek to resolve disputes over their patents through a royalty agreement or judicial determination of a reasonable rate. As these companies have pledged not to exercise exclusivity over such patents, they should not expect the grant of an exclusion order when they are in violation of an obligation to license the patents on RAND terms.

Any precedent that would enable or encourage companies to include their patented technology in a standard, commit to license included patents on RAND terms, and then seek to

-2-

secure an exclusion order despite a breach of that commitment would thus implicate significant policy concerns. Such an outcome would severely undermine broad participation in the standards-setting process, which would in turn threaten the meaningful benefits these standards provide for both industries and consumers.

Given the value and importance of industry standards, we trust that you will carefully consider and give due weight to these critical public policy concerns in your analysis. Please keep us advised as your decision making process proceeds.

Sincerely,

Mike Lee
United States Senator

Herb Kohl
United States Senator

Jon Kyl
United States Senator

John Cornyn
United States Senator

Jim Risch
United States Senator

John Hoeven
United States Senator

# United States Senate
WASHINGTON, DC 20510

June 19, 2012

The Honorable Deanna Okun
International Trade Commission
500 E Street, S.W.
Washington, D.C. 20436

Re: *Certain Gaming Entertainment Consoles, Related Software, and Components Thereof,* Investigation No 337-TA-752

*Certain Wireless Communication Devices, Portable Music and Data Processing Devices, Computers, and Components Thereof,* Investigation No 337-TA-745

Dear Chairman Okun:

We write to express concerns with regard to the availability of the exclusion order as a remedy for cases in which "standard-essential patents" (SEPs) are asserted. Although we take no position on the particular merits of the above-captioned cases, we urge the Commission to consider the following public interest arguments carefully as it proceeds with these and other matters in which SEPs are at issue.

Businesses and consumers depend on a reliable standards-setting process to promote interoperability and expand choice. Industry standards underpin many of the technologies incorporated in common products used to play online video, connect to the Internet, watch DVDs, or communicate via smartphone. These standards are crucial to ensuring that consumers have access to a competitive market of compatible products.

Many companies that participate in setting industry standards contribute patented technology to the standardization process. As a result, standard-essential patents are inevitably infringed when the standard is implemented. The standards setting process thus depends on a commitment from companies contributing patents to license those patents to all parties implementing the standard on reasonable and non-discriminatory (RAND) terms.

For the standards setting process to function effectively, companies that commit to license their SEPs on RAND terms must seek to resolve disputes over their patents through a royalty agreement or judicial determination of a reasonable rate. As these companies have pledged not to exercise exclusivity over such patents, they should not expect the grant of an exclusion order when they are in violation of an obligation to license the patents on RAND terms.

Any precedent that would enable or encourage companies to include their patented technology in a standard, commit to license included patents on RAND terms, and then seek to

-2-

secure an exclusion order despite a breach of that commitment would thus implicate significant policy concerns. Such an outcome would severely undermine broad participation in the standards-setting process, which would in turn threaten the meaningful benefits these standards provide for both industries and consumers.

Given the value and importance of industry standards, we trust that you will carefully consider and give due weight to these critical public policy concerns in your analysis. Please keep us advised as your decision making process proceeds.

Sincerely,

_____
Mike Lee
United States Senator

_____
Herb Kohl
United States Senator

_____
Jon Kyl
United States Senator

_____
John Cornyn
United States Senator

_____
Jim Risch
United States Senator

_____
John Hoeven
United States Senator

# United States Senate
WASHINGTON, DC 20510

June 19, 2012

The Honorable Deanna Okun
International Trade Commission
500 E Street, S.W.
Washington, D.C. 20436

Re: *Certain Gaming Entertainment Consoles, Related Software, and Components Thereof,* Investigation No 337-TA-752

*Certain Wireless Communication Devices, Portable Music and Data Processing Devices, Computers, and Components Thereof,* Investigation No 337-TA-745

Dear Chairman Okun:

We write to express concerns with regard to the availability of the exclusion order as a remedy for cases in which "standard-essential patents" (SEPs) are asserted. Although we take no position on the particular merits of the above-captioned cases, we urge the Commission to consider the following public interest arguments carefully as it proceeds with these and other matters in which SEPs are at issue.

Businesses and consumers depend on a reliable standards-setting process to promote interoperability and expand choice. Industry standards underpin many of the technologies incorporated in common products used to play online video, connect to the Internet, watch DVDs, or communicate via smartphone. These standards are crucial to ensuring that consumers have access to a competitive market of compatible products.

Many companies that participate in setting industry standards contribute patented technology to the standardization process. As a result, standard-essential patents are inevitably infringed when the standard is implemented. The standards setting process thus depends on a commitment from companies contributing patents to license those patents to all parties implementing the standard on reasonable and non-discriminatory (RAND) terms.

For the standards setting process to function effectively, companies that commit to license their SEPs on RAND terms must seek to resolve disputes over their patents through a royalty agreement or judicial determination of a reasonable rate. As these companies have pledged not to exercise exclusivity over such patents, they should not expect the grant of an exclusion order when they are in violation of an obligation to license the patents on RAND terms.

Any precedent that would enable or encourage companies to include their patented technology in a standard, commit to license included patents on RAND terms, and then seek to

secure an exclusion order despite a breach of that commitment would thus implicate significant policy concerns. Such an outcome would severely undermine broad participation in the standards-setting process, which would in turn threaten the meaningful benefits these standards provide for both industries and consumers.

Given the value and importance of industry standards, we trust that you will carefully consider and give due weight to these critical public policy concerns in your analysis. Please keep us advised as your decision making process proceeds.

Sincerely,

Mike Lee
United States Senator

Herb Kohl
United States Senator

Jon Kyl
United States Senator

John Cornyn
United States Senator

Jim Risch
United States Senator

John Hoeven
United States Senator

# United States Senate
WASHINGTON, DC 20510

June 19, 2012

The Honorable Deanna Okun
International Trade Commission
500 E Street, S.W.
Washington, D.C. 20436

Re: *Certain Gaming Entertainment Consoles, Related Software, and Components Thereof,* Investigation No 337-TA-752

*Certain Wireless Communication Devices, Portable Music and Data Processing Devices, Computers, and Components Thereof,* Investigation No 337-TA-745

Dear Chairman Okun:

We write to express concerns with regard to the availability of the exclusion order as a remedy for cases in which "standard-essential patents" (SEPs) are asserted. Although we take no position on the particular merits of the above-captioned cases, we urge the Commission to consider the following public interest arguments carefully as it proceeds with these and other matters in which SEPs are at issue.

Businesses and consumers depend on a reliable standards-setting process to promote interoperability and expand choice. Industry standards underpin many of the technologies incorporated in common products used to play online video, connect to the Internet, watch DVDs, or communicate via smartphone. These standards are crucial to ensuring that consumers have access to a competitive market of compatible products.

Many companies that participate in setting industry standards contribute patented technology to the standardization process. As a result, standard-essential patents are inevitably infringed when the standard is implemented. The standards setting process thus depends on a commitment from companies contributing patents to license those patents to all parties implementing the standard on reasonable and non-discriminatory (RAND) terms.

For the standards setting process to function effectively, companies that commit to license their SEPs on RAND terms must seek to resolve disputes over their patents through a royalty agreement or judicial determination of a reasonable rate. As these companies have pledged not to exercise exclusivity over such patents, they should not expect the grant of an exclusion order when they are in violation of an obligation to license the patents on RAND terms.

Any precedent that would enable or encourage companies to include their patented technology in a standard, commit to license included patents on RAND terms, and then seek to

-2-

secure an exclusion order despite a breach of that commitment would thus implicate significant policy concerns. Such an outcome would severely undermine broad participation in the standards-setting process, which would in turn threaten the meaningful benefits these standards provide for both industries and consumers.

Given the value and importance of industry standards, we trust that you will carefully consider and give due weight to these critical public policy concerns in your analysis. Please keep us advised as your decision making process proceeds.

Sincerely,

Mike Lee
United States Senator

Herb Kohl
United States Senator

Jon Kyl
United States Senator

John Cornyn
United States Senator

Jim Risch
United States Senator

John Hoeven
United States Senator