# EXHIBIT 4

LAMAR S. SMITH, Texas
CHAIRMAN

F. JAMES SENSENBRENNER, JR., Wisconsin
HOWARD COBLE, North Carolina
ELTON GALLEGLY, California
BOB GOODLATTE, Virginia
DANIEL E. LUNGREN, California
STEVE CHABOT, Ohio
DARRELL E. ISSA, California
MIKE PENCE, Indiana
J. RANDY FORBES, Virginia
STEVE KING, Iowa
TRENT FRANKS, Arizona
LOUIE GOHMERT, Texas
JIM JORDAN, Ohio
TED POE, Texas
JASON CHAFFETZ, Utah
TIM GRIFFIN, Arkansas
TOM MARINO, Pennsylvania
TREY GOWDY, South Carolina
DENNIS ROSS, Florida
SANDY ADAMS, Florida
BEN QUAYLE, Arizona
MARK AMODEI, Nevada

ONE HUNDRED TWELFTH CONGRESS

# Congress of the United States
## House of Representatives
COMMITTEE ON THE JUDICIARY
2138 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6216
(202) 225-3951
http://www.house.gov/judiciary

JOHN CONYERS, JR., Michigan
RANKING MEMBER

HOWARD L. BERMAN, California
JERROLD NADLER, New York
ROBERT C. "BOBBY" SCOTT, Virginia
MELVIN L. WATT, North Carolina
ZOE LOFGREN, California
SHEILA JACKSON LEE, Texas
MAXINE WATERS, California
STEVE COHEN, Tennessee
HENRY C. "HANK" JOHNSON, JR., Georgia
PEDRO R. PIERLUISI, Puerto Rico
MIKE QUIGLEY, Illinois
JUDY CHU, California
TED DEUTCH, Florida
LINDA T. SÁNCHEZ, California
JARED POLIS, Colorado

June 7, 2012

The Honorable Deanna Okun
International Trade Commission
500 E Street, SW
Washington, DC 20436

Re: *Certain Gaming Entertainment Consoles, Related Software, and Components Thereof* Investigation No 337-TA-752

Dear Chairman Okun,

The jurisdiction of the Judiciary Committee of the U.S. House of Representatives extends to intellectual property policy, competition policy, and issues at their intersection. We write to highlight the public interest implications of the referenced case pending before the Commission concerning the availability of the exclusion order as a remedy in cases in which "standard-essential patents" (SEPs) are asserted.

As you know, companies participating in the standards setting process frequently contribute patented technology to the standardization process. SEPs are those patents that are necessarily infringed when the standard is implemented. To enable and promote the broad adoption of the standards, companies contributing their technology to the standard commit to license those patents to all parties implementing the standard on reasonable and non-discriminatory (RAND) terms.

A party making a RAND commitment for SEPs promises not to deny a license to anyone who implements the standard. Patent owners agree that they will seek reasonable royalties and not pursue a court order or an exclusion order to prevent the importation or sale of an implementer's product. The aims underlying RAND arrangements may be undermined when a patent owner either petitions the Commission for an exclusion order or makes an unreasonable royalty demand.

The Honorable Deanna Okun
June 7, 2012
Page Two

      Businesses and consumers depend on a well-functioning standards setting process to promote interoperability and consumer choice. Industry standards underpin the Internet, cellular networks, and a host of popular devices. Without standards, consumers would not be able to play videos on a website, connect wirelessly to the Internet, watch a DVD, or text, chat, or email one another. Standards are core to the interoperability that drives the Internet and the devices that connect to it.

      In our view, a failure to honor a RAND commitment undermines confidence in the standards system and disrupts competition and innovation. If companies refuse to comply with their RAND commitments and instead treat their SEPs as a weapon to block others from distributing products that implement key standards, they will prevent and inhibit innovation and competition. Ultimately, this behavior threatens to disrupt competition and undermines the creation and adoption of standards that are at the heart of modern communications technologies and the digital networks that are critical to the global economy. Technological innovation, predictable and stable commerce, and strong competition may be harmed by inappropriate assertions of SEP rights through exclusion orders.

      Industry standards have been recognized as vital to the development and interoperability of modern technologies throughout the technology and communications sectors. If patent holders are able to renege on their RAND commitments and seek exclusion orders, companies may be more cautious about implementing and developing international standards and interoperability protocols.

      Actions aimed at preventing the sale of products that rely on industry standards threaten to raise the cost and reduce the availability of popular electronics products such as mobile phones, Blu-ray players, wireless routers, video game consoles, Internet-connected televisions, and computers, among others – all of which are built upon standards that ensure interoperability. Left unchecked, the ability to leverage SEPs to obtain an exclusion order may result either in these products being excluded from markets altogether or in companies paying unreasonable royalty rates to prevent an exclusion. The adverse consequences may ultimately be passed along to consumers in the form of significantly higher prices.

The Honorable Deanna Okun
June 7, 2012
Page Three

    We hope you will consider these concerns as you review this matter. Thank you for your time and attention.

Sincerely,

*Lamar Smith*
Lamar Smith
Chairman
Committee on the Judiciary

*John Conyers, Jr.*
John Conyers, Jr.
Ranking Member
Committee on the Judiciary

*Melvin L. Watt*
Melvin L. Watt
Ranking Member
Subcommittee on Intellectual Property,
Competition, and the Internet