# EXHIBIT 10



Cisco Systems, Inc.
170 West Tasman Drive
San Jose, CA 95134-1706
Phone: 408.526.4000
Facsimile: 408-526-5952
http://www.cisco.com

June 7, 2012

**Submitted by Electronic Filing**

The Honorable Lisa R. Barton
Secretary
U.S. International Trade Commission
500 E Street S.W.
Washington, DC 20436

Subject: *In the Matter of Certain Wireless Communications Devices, Portable Music and Data Processing Devices, Computers, and Components Thereof,* **Investigation No. 337-TA-745, and**

*In the Matter of Certain Gaming and Entertainment Consoles, Related Software, and Components Thereof,* **Investigation No. 337-TA-752**

Dear Secretary Barton:

Cisco Systems, Inc. ("Cisco") submits these comments in response to the *Request for Statements on the Public Interest* issued by the International Trade Commission ("ITC") in the above captioned investigations. Both investigations raise the question whether a participant in standards development, who has irrevocably committed to license patents essential to the implementation of an industry standard, should nevertheless be permitted to choose to seek an order of exclusion in the ITC rather than fulfill its commitment to license. Cisco believes that the answer to that question is no. We therefore believe that the public interest would not be served by the issuance of an exclusion order in either investigation. The Commission should exercise its statutory authority under Section 337(d)(1) to decline to issue an order of exclusion in either investigation.[1]

1. **Cisco's Interest in the Investigations**

The technologies that shape modern life, including the internet and mobile data networks, are built on interoperability standards developed through consensus-based standards development. Without a well-functioning standards development system, built around the licensing commitments that participants make to each other, the emergence of new generations of technology will slow as industry participants lose confidence in their

---

[1] Cisco takes no position on any other issue raised in Investigations 337-TA-745 or 337-TA-752.

The Honorable Lisa R. Barton
International Trade Commission
June 7, 2012
Page 2

ability to implement standards without fear of interruption or unreasonable licensing terms for standards essential patents.

Cisco is the leading developer of hardware and software products used to transmit data, voice, and video over the Internet and local area networks. Cisco invests 5 billion dollars annually into research and development and employs over 37,000 people in the United States.[2] Cisco's commitment to innovation has resulted in a patent portfolio that the IEEE Spectrum's annual *Patent Power Scorecard* has consistently ranked number one in Communications and Internet Equipment.[3]

Cisco's customers, who include individuals, governments, and businesses large and small, demand products that exchange information seamlessly with products made by our competitors and other industry participants. Cisco satisfies these customer needs through the implementation of industry standards, including standards such as the IEEE 802.11 standard for wireless local area networking and the ITU H.264 standard for video compression. In addition to implementing standards in Cisco products, Cisco engineers frequently participate in standards development. Cisco regularly contributes patented technology for use in standards, including standards like WiFi (IEEE 802.11), Ethernet (IEEE 802.3), and DOCSIS that are fundamental to the operation of the internet, cable television, and the transmission of voice and video over networks.

As a regular participant in standards development and implementer of standards, Cisco has a strong interest in a standards development system that fairly rewards contributors of technology while preventing the possibility that the owner of a patent that is claimed to be essential to implement an industry standard can "hold up" implementers of that standard and thereby demand unfair and unreasonable licensing terms. If an injunction or order of exclusion issues, consumers are denied access to products on which they have come to rely. But if the licensee fends off an order of exclusion by agreeing to unreasonable licensing terms, that licensee will inevitably seek to pass through the cost of such unfair and unreasonable licensing terms to purchasers of their products. Either way, the availability of orders of exclusion or injunctions for standards essential patents harms American consumers.

2.  **Injunctive Relief and Standards Essential Patents**

A patentee like Cisco that chooses to participate in standards development enters into a bargain. If the patentee's technology is included in a widely implemented standard, the patentee's invention may gain wider licensing opportunities from its selection. The patentee can monetize those opportunities through licensing on reasonable and non-discriminatory ("RAND") terms, or can deploy its standards-essential patent

---

[2] Cisco 2011 Annual Report, available at
http://www.cisco.com/web/about/ac49/ac20/about_cisco_annual_reports.html

[3] The most recent Patent Power Scorecard report is available at
http://spectrum.ieee.org/ns/pdfs/2011.PatentFinal.pdf.

defensively, widening the scope of its freedom to design. In return for the potential to have its patented invention widely implemented, the patentee commits to license its essential patents to all implementers of the standard for their use in creating products that comply with the standard.

Permitting patentees that have voluntarily made licensing commitments to enjoin or exclude the sale or importation of compliant products is inconsistent with the terms of that bargain. Doing so permits patentees *both* to enjoy the increase in the value of their patented technology that can come with the inclusion of that technology in a widely adopted standard and to evade the requirement to license patents on reasonable terms by wielding the injunction threat.

That threat is especially powerful in the context of interoperability standards because of the interplay between patents, interoperability standards, and information technology products. Implementing interoperability standards like 802.11 or H.264 may require the use of dozens, hundreds, or even thousands of patented inventions, each of which is essential to implement a standard. Indeed, over one hundred individual patents have been identified to the IEEE as essential to implement 802.11.[4] In an even larger number of statements, participants have included commitments to license any patent they own that is essential to the standard on RAND terms in lieu of identifying individual patents.

Products such as wireless access points, switches, routers, game consoles, and smartphones may implement dozens or hundreds of standards.[5] Each standards-essential patent is, by definition, impossible to design around while maintaining compliance with the standard to which it is essential. Permitting the owner of any one standards-essential patent that is subject to a licensing commitment to prevent the sale or importation of a product that practices hundreds or thousands of standards-essential patents necessarily creates a negotiating dynamic that leads implementers of standards to accept unfair and unreasonable licensing terms and compensates owners of standards-essential patents far beyond the value of their invention to a particular standard or product. Refusing to permit injunctions and orders of exclusion to owners of standards-essential patents that are subject to licensing commitments helps ensure that those owners will honor commitments they or their predecessors in interest have made to license standards essential patents on RAND terms.

---

[4] The patent disclosures that participants in IEEE 802.11 have made to the IEEE Standards Association are available at http://standards.ieee.org/about/sasb/patcom/pat802_11.html.

[5] A recent article estimates that a notebook computer implements no fewer than 251 interoperability standards. Brad Biddle, Andrew White, and Sean Woods, *How Many Standards in a Laptop? (And Other Empirical Questions)* (September 10, 2010) (identifying 251 interoperability standards implemented in a laptop computer). Available at http://ssrn.com/abstract=1619440.

The Honorable Lisa R. Barton
International Trade Commission
June 7, 2012
Page 4

3.     **The Public Interest**

We assume that each of the standards-essential patents that have been asserted in each of the two investigations is subject to a licensing commitment given by Motorola Mobility or a predecessor in interest. When Motorola Mobility made those commitments, it gave up the right to enjoin or exclude infringing products, and agreed that it would receive a reasonable royalty. Beyond issues of patent validity and non-infringement, what remains to be resolved between Motorola Mobility and the infringers whose products it seeks to exclude is only the determination of a reasonable royalty. That issue is best addressed by the federal district courts in which parallel litigation between Motorola Mobility and its accused infringers is already pending. As the remedy available in the ITC is limited to an order of exclusion, the only remedy the ITC can provide is one that Motorola Mobility denied itself by committing to license the various standards-essential patents it has asserted in the two investigations.

The entry of an order of exclusion in a dispute involving standards-essential patents that are subject to licensing commitments results in an unjust enrichment of the owners of those patents by permitting them to extract licensing terms that are based on the widespread adoption of a standard and the prohibitive costs implementers of that standard would face in avoiding infringement rather than the extent to which their patented invention advanced the state of the art. There is no public interest in permitting participants in standards development or their successors to escape the licensing commitments they made. The public interest lies instead in holding participants in standards development to the bargain they made by agreeing to license patents on RAND terms.

Cisco thanks the Commission for this opportunity to express our views.

Sincerely,

Dan Lang
Vice President, Intellectual Property