The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION, a Washington corporation,

                        Plaintiff,

            v.

MOTOROLA, INC., and MOTOROLA MOBILITY, INC., and GENERAL INSTRUMENT CORPORATION,

                        Defendants.

CASE NO. C10-1823-JLR

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

NOTED ON MOTION CALENDAR: Friday, August 10, 2012

ORAL ARGUMENT REQUESTED

MOTOROLA MOBILITY, INC., and GENERAL INSTRUMENT CORPORATION,

            Plaintiffs/Counterclaim Defendant,

            v.

MICROSOFT CORPORATION,

            Defendant/Counterclaim Plaintiff.

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL
SUMMARY JUDGMENT
CASE NO. C10-1823-JLR

4812-0100-9680.1

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   MICROSOFT AGREES THAT COURTS CANNOT CREATE OR REWRITE
      CONTRACTS, BUT URGES THE COURT TO DO SO ANYWAY .............................. 2

      A.    Microsoft Concedes That There Is No Licensing Contract Between
            Motorola and Microsoft, and So There Are No Ambiguous or Omitted
            Terms in Such a Contract for the Court to Interpret or Supply ............................. 3

      B.    Microsoft Urges Error by Asking the Court to Create a New
            Microsoft/Motorola Contract, or Material Terms for Such a Contract, Under
            the Guise of "Enforcing" Motorola's Commitments to SSOs ............................... 4

            1.    There are no omitted or "implied" terms in the Motorola-SSO
                  contracts for the Court to "fill in" or supply ................................................ 5

            2.    Motorola and the SSOs expressly contracted for patent holders and
                  third party beneficiaries to negotiate RAND terms ...................................... 6

III.  MOTOROLA'S COMMITMENTS TO THE IEEE AND ITU CAN BE
      ENFORCED IN THE TRIAL OF MICROSOFT'S BREACH CLAIM AND
      COUNTERCLAIM ........................................................................................................... 7

IV.   THERE IS NO MERIT—LEGAL OR FACTUAL—TO MICROSOFT'S
      ASSERTIONS THAT WAIVER OR ESTOPPEL BARS MOTOROLA'S
      SUBJECT MATTER JURISDICTION CHALLENGE ................................................... 8

V.    CONCLUSION ................................................................................................................ 12

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL
SUMMARY JUDGMENT - i
CASE NO. C10-1823-JLR

4812-0100-9680.1

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Beacon Theatres, Inc. v. Westover*,
  359 U.S. 500 (1959)........................................................................8

*Chaffee v. Chaffee*,
  145 P.2d 244 (Wash. 1943).......................................................1, 3, 5

*City of New Orleans v. New Orleans Waterworks Co.*,
  142 U.S. 79 (1891).......................................................................1, 3

*Commodity Futures Trading Comm'n v. Schor*,
  478 U.S. 833 (1986)....................................................................2, 10

*Denaxas v. Sandstone Court of Bellevue, L.L.C.*,
  63 P.3d 125 (Wash. 2003)................................................................6

*Diggs v. Dep't of Housing and Urban Dev.*,
  670 F.3d 1353 (Fed. Cir. 2011)........................................................10

*In re Estate of Bachmeier*,
  52 P.3d 22 (Wash. 2002)..................................................................6

*Keystone Land & Dev. Co. v. Xerox Corp.*,
  94 P.3d 945 (Wash. 2004).................................................................4

*Kittel v. Thomas*,
  620 F.3d 949 (9th Cir. 2010) ...........................................................8

*Lucas v. Bechtel Corp.*,
  800 F.2d 839 (9th Cir. 1986) ...........................................................6

*Mid-Continent Cas. Co. v. Titan Const. Corp.*,
  No. C05-1240 MJP, 2008 WL 4837043 (W.D. Wash. Nov. 6, 2008)....................7

*New Hampshire v. Maine*,
  532 U.S. 742 (2001).......................................................................9

*Rutcosky v. Tracy*,
  574 P.2d 382 (Wash. 1978) (en banc)..............................................4, 5

*Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*,
  298 F.3d 1137 (9th Cir. 2002) .........................................................4

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL
SUMMARY JUDGMENT - ii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

4812-0100-9680.1

*Therma-Tru Corp. v. Peachtree Doors Inc.*,
     44 F.3d 988 (Fed. Cir. 1995) .......................................................................8

*United States v. Ceja-Prado*,
     333 F.3d 1046 (9th Cir. 2003) ...............................................................2, 10

*Zedner v. United States*,
     547 U.S. 489 (2006) ...................................................................................9

STATUTES

RCW 62A.2-305(2) .........................................................................................4, 5

OTHER AUTHORITIES

Fed. R. Civ. P. 38(d) .........................................................................................7

Fed. R. Civ. P. 42(b) .........................................................................................8

Restatement (Second) of Contracts § 204 ........................................................4, 5

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL
SUMMARY JUDGMENT - iii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

4812-0100-9680.1

I.      INTRODUCTION

In its Opposition to Motorola's Motion for Partial Summary Judgment (Dkt. No. 374) ("Opposition" or "Opp."), Microsoft agrees that courts cannot create or rewrite contracts, but Microsoft urges this Court to do so anyway.

Critically, Microsoft concedes that no licensing contract exists between Microsoft and Motorola, and as such there are no ambiguous or missing terms in such a contract for the Court to interpret or supply.  Microsoft is therefore relegated to arguing that, under the guise of "enforcing" Motorola's commitments to the SSOs, this Court should create from scratch a new licensing contract with many terms that Microsoft admits would be material.  Microsoft ignores that the parties to the Motorola-SSO contracts chose *not* to create licenses with open or missing RAND terms, but instead *expressly* contracted for those licenses (and their RAND terms) to be negotiated by the patent holder and third parties like Microsoft.  Microsoft's position now—that it can refuse to negotiate such a license, and then have a court create one instead—cannot be squared with the "elementary law, universally accepted," that courts do not "have the right to make a contract for the parties."  *Chaffee v. Chaffee*, 145 P.2d 244, 252 (Wash. 1943); *City of New Orleans v. New Orleans Waterworks Co.*, 142 U.S. 79, 91-92 (1891) ("Courts have no power to make new contracts . . . .").  This may explain why Microsoft waited until page 12 of its 15-page Opposition to make this argument and finally "address" the central point of Motorola's Motion.

At bottom, Microsoft confuses what the fact finder *can* do, which is determine in a breach of contract trial whether Motorola's offered terms were consistent with RAND, with what a court lacks subject matter jurisdiction to do, which is create the terms of a new license between Microsoft and Motorola.

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL
SUMMARY JUDGMENT - 1
CASE NO. C10-1823-JLR

4812-0100-9680.1

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1    There also is no merit—legal or factual—to Microsoft's argument that Motorola's subject

2    matter jurisdiction challenge is barred by waiver or estoppel.  Microsoft's argument fails legally

3    because "federal jurisdiction cannot be created by the parties through waiver or through estoppel,

4    in cases in which jurisdiction otherwise does not exist."  *United States v. Ceja-Prado*, 333 F.3d

5    1046, 1049-50 (9th Cir. 2003); *see also Commodity Futures Trading Comm'n v. Schor*, 478 U.S.

6    833, 851 (1986).  Microsoft's waiver/estoppel argument also fails factually.  Motorola's cited

7    statements do not meet key factors of the test for estoppel.  Moreover, given (a) Microsoft's ever-

8    changing positions regarding the relief requested in this action, (b) Motorola's acknowledgment

9    that a fact finder could consider a RAND rate if needed in connection with a breach assessment,

10   and (c) the absence of any precedent for a court creating a RAND license, the facts here would not

11   sustain a finding of waiver or estoppel, even if those doctrines could be asserted to bar a subject

12   matter jurisdiction challenge.

13          Accordingly, Motorola respectfully requests that the Court grant partial summary judgment

14   denying Microsoft's "claim" that the Court should create *ab initio* a Motorola/Microsoft license,

15   or material terms of such a license, and instead proceed to trial on the question of whether

16   Motorola's October 2010 letters breached the implied covenant of good faith and fair dealing.

17   **II.    MICROSOFT AGREES THAT COURTS CANNOT CREATE OR REWRITE
18           CONTRACTS, BUT URGES THE COURT TO DO SO ANYWAY**

19          Microsoft's memorandum does not address the merits of Motorola's Motion until page 12.

20   There, Microsoft concedes that courts cannot create or rewrite contracts, yet it nonetheless urges

21   the Court to do exactly that by creating from scratch a new licensing contract between Motorola

22   and Microsoft.  Even aside from the prohibition on courts creating or rewriting contracts, doing so

23   here would be error for two additional, independent reasons.  First, as Microsoft further concedes,

24   there is no licensing contract between Motorola and Microsoft, and so there are no ambiguous or

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL
SUMMARY JUDGMENT - 2
CASE NO. C10-1823-JLR

4812-0100-9680.1

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

omitted terms in such a contract (or for that matter in the Motorola-SSO agreements) for the Court to interpret or supply.  Second, Motorola's contracts with the IEEE and the ITU explain that the terms of any RAND license would be negotiated by the patent holder and any third-party beneficiary prospective licensee—*i.e.*, there is no contract between Motorola and Microsoft until one is negotiated.  Motorola remains ready and willing to so negotiate—indeed, it has been doing so throughout the pendency of this litigation.  The Court's creation of such a license, or material terms of such a license, would therefore undermine and contradict the express terms of the very contracts with the SSOs that Microsoft says it seeks to "enforce."

> **A.**   **Microsoft Concedes That There Is No Licensing Contract Between Motorola and Microsoft, and So There Are No Ambiguous or Omitted Terms in Such a Contract for the Court to Interpret or Supply**

Microsoft effectively concedes Motorola's point (Dkt. No. 362 at 13-14) that there is no existing licensing contract between Microsoft and Motorola by arguing instead that the Court can dictate a RAND rate or RAND terms by "enforcing" the separate contracts between Motorola and the SSOs.  (*See, e.g.*, Opp. at 12-14.)  Microsoft's concession correctly reflects the language of Motorola's contracts with both the IEEE, which declare that "[n]o license is implied by submission of this letter of assurance," (Dkt. No. 362 at 8 (quoting Ex. 7[1])), and the ITU, which similarly state that they do "not represent an implied license grant" or "an actual grant of a license" (*id.* (quoting Ex. 5)).  In addition, Microsoft's concession is obviously appropriate in light of Microsoft's earlier admission that, until at least September 2011, it had not even committed to taking a license from Motorola on *any* terms.  (*See* May 7, 2012 Hr'g Tr. at 70.)[2]

Microsoft nowhere disputes Motorola's observation (Dkt. No. 362 at 2-3, 18) that it is "elementary law, universally accepted," *Chaffee*, 145 P.2d at 252, that courts have no power to make new contracts between parties.  *See, e.g., City of New Orleans*, 142 U.S. at 91 ("[Courts']

---

[1]   "Ex. ___" refers to the stated Exhibit to the Declaration of Kevin J. Post, submitted in support of Motorola's Motion for Partial Summary Judgment.  (Dkt. Nos. 363 and 364.)

[2]   This stands in stark contrast to Microsoft's astonishing statement during the July 10 telephone conference that the terms of a contract between Microsoft and Microsoft "are embodied in the patents themselves and in the standards, organizations, policies and procedures [*sic*]."  (July 9, 2012 Tele. Conf. Tr. at 6.)

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL
SUMMARY JUDGMENT - 3
CASE NO. C10-1823-JLR

4812-0100-9680.1

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    powers are exhausted in fixing the rights of parties to contracts already existing.").   In light of this

2    elementary law, and because (as Microsoft concedes) there is no licensing contract between

3    Microsoft and Motorola, there cannot be omitted or ambiguous terms in any such contract for the

4    Court to supply or interpret.   Microsoft does not, and indeed cannot, argue that the Court should

5    "fill in" the gap in any such contract, because there *is no* such contract.[3]   Instead, as Microsoft

6    implicitly acknowledges (*see, e.g.*, Opp. at 12-14), its contract rights against Motorola must be

7    limited to those explicitly provided to it as a third-party beneficiary of the Motorola-SSO

8    contracts—namely, the right to participate in good faith negotiations to arrive at an essential patent

9    license.  *See, e.g.*, *Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1145-46 (9th

10   Cir. 2002) ("The rights of a third-party beneficiary *are limited by the contract between the*

11   *promisor and the promisee*.")[4] (quoting *Punikaia v. Clark*, 720 F.2d 564, 570 (9th Cir. 1983)).

12          **B.      Microsoft Urges Error by Asking the Court to Create a New**
                      **Microsoft/Motorola Contract, or Material Terms for Such a Contract, Under**
13                    **the Guise of "Enforcing" Motorola's Commitments to SSOs**

14          Microsoft concedes that no licensing contract exists between Motorola and Microsoft, and

15   does not dispute that courts lack the power to make contracts.   Microsoft nonetheless urges the

16   Court to do exactly that, because (in its view) Motorola "contractually committed itself to the

17   creation of 'new contracts' (patent licenses) . . . ."  (Opp. at 12.)  Microsoft's reading appears to be

18   that the Motorola-SSO contracts constitute "agreements to agree"—which (unlike an agreement to

19   negotiate, like Motorola's RAND commitments) are unenforceable under Washington law.  *See*

20   *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 948 (Wash. 2004).

21

---

22          [3]      Microsoft's citation (Opp. at 12-13) to Restatement (Second) of Contracts § 204 is thus unavailing in this
23   context.  That section explicitly applies only when "the parties to a bargain sufficiently defined to be a contract have
     not agreed with respect to a term."   However, there *is* no contract between Motorola and Microsoft (and thus no
24   bargain "sufficiently defined *to be* a contract").  The other case and the statute Microsoft cites are similarly unavailing
     in this context, because they address only instances in which there are existing contracts.  *See, e.g.*, *Rutcosky v. Tracy*,
25   574 P.2d 382, 385 (Wash. 1978) (en banc) (concluding that the trial court's finding that a contract exists was binding);
     RCW 62A.2-305(2) (Washington State Uniform Commercial Code provision regarding an open term price in a
26   *concluded* contract for sale).

            [4]      All emphasis is added unless otherwise indicated.

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL
SUMMARY JUDGMENT - 4
CASE NO. C10-1823-JLR

4812-0100-9680.1

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    **1.    There are no omitted or "implied" terms in the Motorola-SSO contracts for the Court to "fill in" or supply**

Microsoft's primary contract argument is that, in "enforcing" the Motorola-SSO contracts, and in accordance with Restatement (Second) of Contracts § 204, the Court can supply the exact royalty rate as the omitted term of each of those Motorola-SSO contracts.  (*See* Opp. at 12-13.) However, for a court to "fill in" or supply a term, some term in the contract must be open or omitted.  After all, if a term has instead been agreed to by the parties to the contract, then a court cannot alter the meaning of that term, as courts "do not have the power, under the guise of interpretation, to rewrite contracts which the parties have deliberately made for themselves." *Chaffee*, 145 P.2d at 252.  The express language of the Restatement (Second) itself makes clear that a court can supply a term only when the parties "have not agreed" on the meaning.  Restatement (Second) of Contracts § 204 ("Supplying An Omitted Essential Term").  The Restatement (Second) similarly explains that an omitted term to be supplied is one that was ***implied*** by the contract.  *See, e.g.*, *id.* at Comment a ("The supplying of an omitted term is not technically interpretation, but the two are closely related; ***courts often speak of an 'implied' term***.").

Here, the contracting parties (Motorola and the IEEE and ITU) did not "omit" or fail to agree on an "implied" term.  To the contrary, the parties ***expressly*** agreed that the terms of licensing contracts with third-parties will be determined by negotiation, and thus ***expressly*** agreed to the meaning of the RAND commitments.  *See infra* at II.B.2.  There are therefore no omitted or implied terms in the Motorola-SSO contracts for the Court to "fill in" or supply.[5]

---

[5]    The single Washington case that Microsoft cites (Opp. at 12) for its proposition, *Rutcosky*, 574 P.2d at 385, is thus inapposite, as it dealt with a formed contract in which "the exact amount of compensation was unspecified."  The Washington State UCC provision that Microsoft cites (Opp. at 12-13), RCW 62A.2-305(2), is similarly inapposite because it too addresses a situation in which an existing contract's necessary term has not been agreed to.  Moreover, as Microsoft and Motorola agree (Opp. at 7; Dkt. No. 362 at 9-11), RAND licenses include numerous material terms. Indeed, Motorola's October 21, 2010 and October 29, 2010 letters to Microsoft referenced multiple "terms and conditions," "including a reasonable royalty."  (Dkt. No. 230-1 at 6, 29.)

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL
SUMMARY JUDGMENT - 5
CASE NO. C10-1823-JLR

4812-0100-9680.1

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

2          **2.    Motorola and the SSOs expressly contracted for patent holders and
3                  third-party beneficiaries to negotiate RAND terms**

As this Court has stated, and as discussed in the Motion (Dkt. No. 362 at 7-8), the

4   Motorola-SSO contracts explicitly envision that any RAND license agreements will be created by

5   negotiations between the SEP holder and prospective licensees.  (*See, e.g.*, Dkt. No. 335 at 24

6   ("[T]he language of Motorola's agreements with the IEEE and the ITU envisions a negotiation

7   between the parties towards a resulting RAND license.").)  Indeed, as one of the ITU's LOAs

8   explains, "*Negotiations of licenses are left to the parties concerned and are performed outside

9   the ITU-T / ISO/IEC*."    Ex. 5 at MOTM_WASH1823_0000039; *see also id.* at

10  MOTM_WASH1823_0000036 ("Negotiations are left to the parties concerned and are performed

11  outside the ITU-T, ITU-R, ISO, or IEC."); 046 (same); 053 (same); 057 (same); 061 (same).

12  Moreover, as the Common Patent Policy for ITU-T/ITU-R/ISO/IEC itself states, "[t]he detailed

13  arrangements arising from patents (licensing, royalties, etc.) *are left to the parties concerned, as

14  these arrangements might differ from case to case*."  Ex. 13 at MOTM_WASH1823_0092833.

15

16        "[T]hird-party beneficiaries cannot exercise rights that the parties did not intend them to

17  have."  *Lucas v. Bechtel Corp.*, 800 F.2d 839, 848-49 (9th Cir. 1986) (quoting *Punikaia*, 720 F.2d

18  at 570).  Here, given the explicit language and implications of the Motorola-SSO contracts

19  regarding the negotiations that would take place between Motorola and any third-party prospective

20  licensee, it is clear that Motorola and the SSOs did *not* intend for a third-party like Microsoft to

21  have the right to impose *non-negotiated* licensing terms on Motorola.  "Generally, courts function

22  to enforce contracts *as drafted by the parties* and *not to change the obligations of the contract

23  the parties saw fit to make*."  *In re Estate of Bachmeier*, 52 P.3d 22, 25 (Wash. 2002) (citing 11

24  Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 31:4 (4th ed. 1999 &

25  Supp. 2001)).  Courts, moreover, "cannot rewrite a contract to force a bargain that the parties

26  never made."  *Denaxas v. Sandstone Court of Bellevue, L.L.C.*, 63 P.3d 125, 132-33 (Wash. 2003)

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL
SUMMARY JUDGMENT - 6
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

4812-0100-9680.1

1   (citing *Childers v. Alexander*, 571 P.2d 591, 594 (1977)).  Microsoft's position is at odds with

2   these authorities because it would eliminate the need for the negotiations to which Motorola and

3   the SSOs agreed.

### III.   MOTOROLA'S COMMITMENTS TO THE IEEE AND ITU CAN BE ENFORCED IN THE TRIAL OF MICROSOFT'S BREACH CLAIM AND COUNTERCLAIM

6           Motorola's Motion is based on the critical distinction between (1) the fact finder

considering RAND terms (or a range of RAND terms) in the context of deciding whether

Motorola breached its contracts with the SSOs (*see* Opp. at 8; Dkt. No. 335 at 25-26), which

(though it need not do so if it decides the good-faith issue on other evidence) it has the power to

do, and (2) the Court determining RAND terms to create the terms of a new license between

Microsoft and Motorola (*see* Opp. at 6), which the Court lacks the power to do.  Microsoft's

Opposition repeatedly confuses these two approaches.   (*Compare, e.g.*, Opp. at 3-4, 7-8

(discussing the consideration of RAND terms to determine whether Motorola breached the

Motorola-SSO contracts); and Opp. at 14 (arguing that a RAND license **on the terms set by the**

**Court** "will result **solely** as a consequence of" Motorola's contractual commitments).)  Microsoft

is bootstrapping: it cites the permissibility of considering RAND terms in determining the breach

of contract issues in an attempt to "prove" that the Court has authority that does not exist to create

and dictate the terms of a new licensing contract between Motorola and Microsoft.

18          As Motorola has maintained, to the extent that Microsoft alleges that Motorola has

breached its contracts with the SSOs, any such breach can be addressed through a breach of

contract trial.[6]  The Court has jurisdiction over such a breach of contract trial.  However, that is

---

[6]      While (as Microsoft acknowledges) the issue is not before the Court as part of this Motion, contrary to Microsoft's argument (Opp. at 3-4 n.3), Motorola is entitled to a jury on the breach of contract issues.  Microsoft's argument acknowledges only the breach of contract claim in original Case No. C10-1823 ("the 1823 case").  However, as part of Case No. C11-343 ("the 343 case") Microsoft raised "identical breach of contract claims as" counterclaims. (Dkt. No. 66 at 3.)  The trial on the breach of contract issues obviously implicates both the claim in the 1823 case and the "identical" counterclaim in the consolidated 343 case.  Together with its counterclaims in the 343 case, Microsoft demanded a jury trial on all claims and issues triable by a jury.  (Case No. 2:11-cv-00343-JLR, Dkt. No. 37 at 6.)  Microsoft has not sought consent to withdraw its jury demand, nor has such consent been granted.  *See* Fed. R. Civ. P. 38(d); *Mid-Continent Cas. Co. v. Titan Const. Corp.*, No. C05-1240 MJP, 2008 WL 4837043, at *1 (W.D. Wash. Nov. 6, 2008).  Even if the cases had not been consolidated, moreover, in light of the jury demand in the

---

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL
SUMMARY JUDGMENT - 7
CASE NO. C10-1823-JLR

4812-0100-9680.1

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    *not* the same thing as saying that the Court has the power to craft new contracts.[7]  Because there is

2    no licensing contract between Motorola and Microsoft, and no open or ambiguous term in any

3    contract for the Court to supply or interpret, by dictating the terms or royalty rate of a prospective

4    license between Motorola and Microsoft, the Court would be improperly issuing an advisory

5    opinion, which it lacks the power and jurisdiction to do.  *See, e.g.*, *Kittel v. Thomas*, 620 F.3d 949,

6    951 (9th Cir. 2010) ("The Constitution limits the jurisdiction of the federal courts to live cases and

7    controversies, and as such, federal courts may not issue advisory opinions.") (citing U.S. Const.,

8    art. III; *Flast v. Cohen,* 392 U.S. 83, 96 (1968)).

9    **IV.     THERE IS NO MERIT—LEGAL OR FACTUAL—TO MICROSOFT'S
10            ASSERTIONS THAT WAIVER OR ESTOPPEL BARS MOTOROLA'S SUBJECT
             MATTER JURISDICTION CHALLENGE**

11           Motorola's jurisdictional challenge cannot be judicially estopped or waived, both because

12   Motorola's statements do not rise to the level of judicial estoppel and, more importantly, because a

13   party cannot waive or be estopped from raising a challenge to subject matter jurisdiction.  Even

14   apart from these legal arguments, Motorola's quoted statements came in the context of

15   proceedings that did not squarely present the question of whether the Court had jurisdiction to

16   determine—and in fact should proceed to determine—the terms of a new license.  Since the

17   beginning of this litigation, moreover, Motorola has consistently argued that by setting a rate the

18   Court would be improperly issuing an advisory opinion, and has agreed since the Court raised the

19

20   _____

     343 case, the Court should defer to the factual findings of the jury so as not to deprive Motorola of its Seventh
21   Amendment rights.  *Cf. Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510-11 (1959) ("Since the right to jury trial
     is a constitutional one . . . [the court's] discretion is very narrowly limited and must, wherever possible, be exercised
22   to preserve jury trial."); *Therma-Tru Corp. v. Peachtree Doors Inc.*, 44 F.3d 988, 995 (Fed. Cir. 1995) (where the
     same facts are relevant to both a legal claim and an equitable claim, the judge cannot make judicial findings that are
23   "independent of and contrary to the facts found by the jury") (collecting cases); Fed. R. Civ. P. 42(b) ("When ordering
     a separate trial, the court must preserve any federal right to a jury trial.").

24      [7]    The authorities Microsoft cites (Opp. at 13-14) in an effort to show that it would be appropriate for the Court
     to set the RAND rate of a new licensing contract are inapposite because they stand only for the undisputed principle
25   that allegations of breach of the duty of good faith in the contract context should be resolved by the courts.  These
     citations do nothing to support Microsoft's argument that, by dint of Motorola's RAND commitments to grant
26   licenses on negotiated RAND terms in the Motorola-SSO contracts, the Court has the power to draft, create, and
     dictate the terms of a new contract between Microsoft and Motorola.

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL        315 Fifth Avenue South, Suite 1000
SUMMARY JUDGMENT - 8                                Seattle, Washington 98104-2682
CASE NO. C10-1823-JLR                               Telephone:  (206) 676-7000
                                                    Fax:  (206) 676-7001

4812-0100-9680.1

1    prospect in February 2012 that the fact finder **could** consider RAND terms in connection with

2    assessing the breach of contract issues.[8]

3         As an initial matter, far from urging this Court to create a RAND license, Motorola has

4    urged it to reject Microsoft's theory on multiple grounds.  (*See, e.g.*, Dkt. No. 362 at 6; Dkt.

5    No. 36 at 2; Dkt. No. 57 at 3; Dkt. No. 62 at 11-12.)  Even assuming, contrary to fact, that in

6    opposing Microsoft's anti-suit injunction Motorola had affirmatively urged the Court to create a

7    RAND license, the Court should not apply judicial estoppel because the Court issued the

8    injunction opposed by Motorola.  (*See* Dkt. No. 318.)  As the Supreme Court has explained, one of

9    the three factors that "typically inform the decision whether to apply" judicial estoppel is "whether

10   the party has succeeded in persuading a court to accept that party's earlier position." *Zedner v.*

11   *United States*, 547 U.S. 489, 504 (2006); *see also New Hampshire v. Maine*, 532 U.S. 742, 750-51

12   (2001) ("Absent success in a prior proceeding, a party's later inconsistent position introduces no

13   'risk of inconsistent court determinations,' . . .  and thus poses little threat to judicial integrity.")

14   (citations omitted).  Even if the Court had **not** issued the injunction, there would be no "unfair

15   advantage" to Motorola or "unfair detriment" to Microsoft in the absence of estoppel—another

16   key factor in the judicial estoppel analysis.  *New Hampshire*, 532 U.S. at 751.[9]

17        In any event, as a matter of law, Motorola's challenge to the Court's subject matter

18   jurisdiction **cannot** be estopped or waived.  As the Ninth Circuit has explained:

> *[F]ederal jurisdiction cannot be created by the parties through waiver or*
> *through estoppel, in cases in which jurisdiction otherwise does not exist.* . . .
> *[C]ourts have not allowed jurisdiction to depend on either malfeasance or well-*
> *intentioned agreement of the parties.  See, e.g.*, Steel Co. v. Citizens for a Better
> *Env't*, 523 U.S. 83, 95 (1998) ("[E]very federal appellate court has a special
> obligation to satisfy itself not only of its own jurisdiction, but also that of the

---

[8]      In addition to its substantive and estoppel arguments, Microsoft's Opposition is replete with arguments about collateral issues (for example, policy arguments about whether an SEP holder that has made a RAND commitment can enjoin an infringing party or whether RAND terms are best reviewed *ex ante* or *ex post*, a matter addressed at length in the expert reports), inaccurate speculation about Motorola's supposed ulterior motives, and insinuations of bad faith.  These arguments are both unproductive and irrelevant to Motorola's Motion.

[9]      While Microsoft also quotes a statement from May 18, 2011, as discussed *infra* at 10 & n.11, at that time Microsoft had not even committed to taking a license, and had not asked the Court to set the terms of such a license.

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL
SUMMARY JUDGMENT - 9
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

lower courts in a cause under review, even though the parties are prepared to concede it." (internal quotation marks and citations omitted)) . . . *Hajek v. Burlington N. R.R. Co.*, 186 F.3d 1105, 1107–08 (9th Cir. 1999) ("Because[the plaintiff] did expressly consent to the magistrate judge's exercise of authority up until the magistrate judge ruled against him, there would be some attractiveness to the notion of an estoppel, were that appropriate.  But it is not.  ***A party cannot estop itself into jurisdiction where none exists.***"); *Holman v. Laulo–Rowe Agency*, 994 F.2d 666, 668 n.1 (9th Cir. 1993) ("***The parties cannot ... create federal court subject matter jurisdiction by stipulation***."); *Richardson v. United States*, 943 F.2d 1107, 1113 (9th Cir. 1991) ("***Subject matter jurisdiction cannot be conferred upon the courts by the actions of the parties and principles of waiver and estoppel do not apply.***").

*Ceja-Prado*, 333 F.3d at 1049-50; *see also Commodity Futures*, 478 U.S. at 851 ("***[T]he parties by consent cannot confer on federal courts subject-matter jurisdiction*** beyond the limitations imposed by Article III, § 2."); *Diggs v. Dep't of Housing and Urban Dev.*, 670 F.3d 1353, 1355 (Fed. Cir. 2011) ("Although neither party initially raised the issue, ***subject matter jurisdiction cannot be conferred by waiver, estoppel, or consent***.").

Regardless, there is no factual justification for Motorola's challenge being barred by waiver or estoppel.  Of the several statements by Motorola's counsel to which Microsoft points (Opp. at 5), all but one were made on April 11, 2012, in the context of an argument about whether a German court's actions would strip jurisdiction from the Court.  (*See, e.g.*, Dkt. No. 312-1 at 26-28.)[10]  Another comment was made on May 18, 2011, in the context of Motorola's discussion of how "part of the contract" between Motorola and the SSOs was that RAND terms would be set by bilateral negotiations (*see* May 18, 2011 Hr'g Tr. at 13:4-11), and how by "tr[ying] to determine what it is that ought to be considered in setting a RAND rate," the Court would be doing something unprecedented, for which there is "no meaningful guidance" (*id.* at 14:5-24).[11]  As Motorola has explained (Dkt. No. 362 at 6), until recently Motorola did not fully appreciate and

---

[10]   Moreover, as Motorola has pointed out (Dkt. No. 362 at 6), following this argument, Motorola expressed its concern about this issue of first impression in its April 20, 2012 Reply in Support of Its Motion for Partial Summary Judgment.  (Dkt. No. 290 at 11-12 n.10.)

[11]   During the course of this litigation, Microsoft's "litigation position" about what the Court can and should be deciding has shifted and "evolve[ed]" dramatically.  (*See, e.g.*, Dkt. No. 362 at 11-12) (citing May 7, 2012 Hr'g Tr. at 70).)  Indeed, the May 18, 2011 comment came well ***before*** Microsoft had even committed to taking a license.  (*Id.*)

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL
SUMMARY JUDGMENT - 10
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

4812-0100-9680.1

focus on—let alone fully research the authority relevant to—the Court's intent to determine the actual terms of a RAND contract in a separate trial, rather than (as the Court suggested on February 13, 2012[12] and in its June 6, 2012 Order[13]) to consider RAND terms in the context of determining the breach of contract issues.[14]

Motorola has, though, consistently maintained that by deciding RAND terms—at least outside the context of a fact finder determining whether there has been a breach of contract—the Court would be impermissibly issuing an advisory opinion.  (*See, e.g.*, Dkt. No. 36 at 2 (December 15, 2010) ("This premature lawsuit, if allowed, would require this Court to render an advisory opinion on complex RAND licensing terms . . . ."); Dkt. No. 57 at 3 (May 9, 2011) ("This action, if permitted to proceed, would require the Court to render an advisory opinion on complex RAND licensing terms—terms that the standards organizations actually stated should be determined through private negotiations."); Dkt. No. 62 at 11-12 (April 1, 2011) ("[A] declaration merely advising Microsoft of a hypothetical RAND rate for a portion or even all of the portfolio, while not obligating Microsoft to pay a RAND rate for any of the patents in the two portfolios, *'strains the concept of 'case or controversy' to its outer limit.*'").)  Indeed, in denying Motorola's April 1, 2011 Motion to Dismiss, the Court recognized that Motorola was arguing that the court was being asked to render an advisory opinion as to "what the terms of a RAND license would be"—and ***rejected*** that argument because Microsoft instead was seeking—at least at that time—"a

---

[12]    During that telephone conference, the Court stated that it was being asked "to determine what the RAND terms and conditions . . . are so that I may then attempt to determine if Motorola's offer to Microsoft was within that range."  (Feb. 13, 2012 Tele. Conf. Tr. at 5.)  Motorola's answer clarified that, even if the Court determined that ***offers*** needed to be on RAND terms (an argument the Court rejected (Dkt. No. 335 at 24)), "indeed it would require your Honor to figure out what RAND terms are, either for purposes of the offer or the final agreement."  (*Id*. at 6.)

[13]    In that Order, the Court explained that its "conundrum" is that it "must first determine the RAND terms" of a Microsoft-Motorola agreement "***before*** it can determine whether Motorola breached its duty," because "to determine whether Motorola's offers were so blatantly unreasonable as to breach its duty of good faith, it is necessary in this instance to compare the offer against a true RAND royalty rate."  (Dkt. No. 335 at 25-26.)

[14]    Microsoft also points (Opp. at 7) to a statement in the February 7, 2011 Joint Status Report, in which Motorola explained that "determination of a RAND rate" would be a complex and fact-intensive task, should the Court undertake to do so.  There, Motorola was referring to a determination by the fact finder considering RAND terms in assessing breach of contract, and was not endorsing any un-made argument that the Court actually should make a contract for the parties.

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL
SUMMARY JUDGMENT - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

4812-0100-9680.1

1   determination of whether the flat royalty rate on the price of the end product was unreasonable and

2   discriminatory."  (Dkt. No. 66 at 5.)  Even following this denial, Motorola has continued to argue

3   that a determination by the Court of the RAND rate or terms would constitute an advisory opinion.

4   (*See*, *e.g.*, Feb. 13, 2012 Tele. Conf. Tr. at 23 ("Instead, they want your Honor to become the

5   arbiter in the way of an advisory opinion as to what the rate is.").)

6          Despite Microsoft's shifting positions, Motorola has not sought and is not seeking delay of

7   this proceeding.  As explained in Motorola's Motion (Dkt. No. 362 at 6), Motorola expects to

8   proceed with trial in November, whether on the basis recommended in this Motion (the breach

9   issue) or, if the Court rejects this Motion, on whatever issues the Court may set.  Similarly,

10  although Microsoft repeatedly complains in its Opposition that injunctions against infringement of

11  SEPs create leverage, it is important to note that Microsoft could have—and still can—come to the

12  negotiation table.  Such negotiation could have—and still can—result in a license (with or without

13  open terms) that would allow Microsoft to practice Motorola's patents on terms established

14  through the process required by the Motorola-SSO contracts.  Regardless, as Motorola has

15  explained (Dkt. No. 362 at 4-5, 5 n.7), the ruling sought by its Motion would expedite, not

16  frustrate, the Court's resolution of the parties' claims.

17  **V.     CONCLUSION**

18         For the foregoing reasons, and for the reasons stated in its opening memorandum, Motorola

19  respectfully requests that the Court grant partial summary judgment denying Microsoft's "claim" that

20  the Court should create *ab initio* a Motorola/Microsoft license, or material terms of such a license,

21  and instead proceed to trial on the question of whether Motorola's October 2010 letters breached the

22  implied covenant of good faith and fair dealing.

23

24

25

26

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL
SUMMARY JUDGMENT - 12
CASE NO. C10-1823-JLR

4812-0100-9680.1

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    DATED this 10th day of August, 2012.

2                      **RESPECTFULLY SUBMITTED:**

3                      SUMMIT LAW GROUP PLLC

4                      By _/s/ Ralph H. Palumbo_
                            Ralph H. Palumbo, WSBA #04751

5                            Philip S. McCune, WSBA #21081
                            Lynn M. Engel, WSBA #21934

6                            _ralphp@summitlaw.com_
                            _philm@summitlaw.com_

7                            _lynne@summitlaw.com_

8                      By _/s/ K. McNeill Taylor, Jr._

9                            K. McNeill Taylor, Jr.
                            MOTOROLA MOBILITY, INC.

10                            MD W4-150
                            600 North U.S. Highway 45

11                            Libertyville, IL  60048-1286
                            Phone:  858-404-3580

12                            Fax:  847-523-0727

13                      And by

14                            Jesse J. Jenner (_pro hac vice_)
                            Steven Pepe (_pro hac vice_)

15                          Ropes & Gray LLP
                            1211 Avenue of the Americas

16                          New York, NY  10036-8704
                            (212) 596-9046

17                          _jesse.jenner@ropesgray.com_
                          _steven.pepe@ropesgray.com_

18

19                        James R. Batchelder (_pro hac vice_)
                          Norman H. Beamer (_pro hac vice_)

20                        Ropes & Gray LLP
                          1900 University Avenue, 6th Floor

21                        East Palo Alto, CA  94303-2284
                        (650) 617-4030

22                        _james.batchelder@ropesgray.com_
                        _norman.beamer@ropesgray.com_

23                      _**Attorneys for Motorola Solutions, Inc., Motorola**_
                      _**Mobility, Inc., and General Instrument**_

24                      _**Corporation**_

25

26

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL
SUMMARY JUDGMENT - 13
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

4812-0100-9680.1

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on this day I electronically filed the foregoing with the Clerk of the

3   Court using the CM/ECF system which will send notification of such filing to the following:

4                              Arthur W. Harrigan, Jr., Esq.
                              Christopher T. Wion, Esq.
5                              Shane P. Cramer, Esq.
                              Calfo Danielson, Harrigan, Leyh & Eakes LLP
6                              *arthurh@calfoharrigan.com*
                              *chrisw@calfoharrigan.com*
7                              *shanec@calfoharrigan.com*

8                              Richard A. Cederoth, Esq.
                              Brian R. Nester, Esq.
9                              David T. Pritikin, Esq.
                              Douglas I. Lewis, Esq.
10                             John W. McBride, Esq.
                              David Greenfield, Esq.
11                             William H. Baumgartner, Jr., Esq.
                              David C. Giardina, Esq.
12                             Carter G. Phillips, Esq.
                              Constantine L. Trela, Jr., Esq.
13                             Ellen S. Robbins, Esq.
                              Nathaniel C. Love, Esq.
14                             Sidley Austin LLP
                              *rcederoth@sidley.com*
15                             *bnester@sidley.com*
                              *dpritikin@sidley.com*
16                             *dilewis@sidley.com*
                              *jwmcbride@sidley.com*
17                             *david.greenfield@sidley.com*
                              *wbaumgartner@sidley.com*
18                             *dgiardina@sidley.com*
                              *cphillips@sidley.com*
19                             *ctrela@sidley.com*
                              *erobbins@sidley.com*
20                             *nlove@sidley.com*

21                             T. Andrew Culbert, Esq.
22                             David E. Killough, Esq.
                              Microsoft Corp.
23                             *andycu@microsoft.com*
                              *davkill@microsoft.com*
24

25          DATED this 10th day of August, 2012.

26                                              /s/ *Marcia A. Ripley*
                                               Marcia A. Ripley

---

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL
SUMMARY JUDGMENT - 14
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

4812-0100-9680.1