1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION, a Washington corporation,

                          Plaintiff,

          v.

MOTOROLA, INC., and MOTOROLA MOBILITY, INC., and GENERAL INSTRUMENT CORPORATION,

                      Defendants.

---

MOTOROLA MOBILITY, INC., and GENERAL INSTRUMENT CORPORATION,

       Plaintiffs/Counterclaim Defendant,

       v.

MICROSOFT CORPORATION,

       Defendant/Counterclaim Plaintiff.

CASE NO. C10-1823-JLR

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, and SIMCOE

NOTED ON MOTION CALENDAR: September 10, 2012

ORAL ARGUMENT REQUESTED

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND SIMCOE
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:   (206) 676-7001

# TABLE OF CONTENTS

I.      Introduction ........................................................................................................... 1

II.     Argument .............................................................................................................. 2

        A.      Expert Testimony: Rule 702 and the *Daubert* Analysis ......................................... 2

        B.      Drs. Lynde's, Murphy's, and Simcoe's ███████████
                ██████████ Is Not Reliable – It Is Simply Wishful Thinking ............................ 3

                1.      RAND Terms Result From Bilateral, ████████ Negotiations ......... 3

                2.      Microsoft's Experts' Opinions Are Not Based On A Methodology
                        That Provides Reliable Results ................................................................ 10

III.    Conclusion ........................................................................................................... 15

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE
CASE NO. C10-1823-JLR

4813-8352-1295.1

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:   (206) 676-7001

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Bryant v. Wyeth*,
  No. 04-1706, 2012 U.S. Dist. LEXIS 100706 (W.D. Wash. July 19, 2012) .............................3

*Daubert v. Merrell Dow Pharms. Inc.*,
  509 U.S. 579 (1993).................................................................................2, 3, 14, 15

*Many Cultures, One Message v. Clements*,
  830 F. Supp. 2d 1111 (W.D. Wash. 2011) ...............................................................3

*United States v. Freeman*,
  498 F.3d 893 (9th Cir. 2007)...........................................................................3, 15

### OTHER AUTHORITIES

Roger G. Brooks & Damien Geradin, *Interpreting and Enforcing the Voluntary FRAND Commitment, International Journal of IT Standards and Standardization Research*, 9(1), 1-23, January-June 2011 ...................................................................................7

Damien Geradin, Anne Layne-Farrar, & A. Jorge Padilla, *The Complements Problem Within Standard Setting: Assessing the Evidence on Royalty Stacking*, 14 B.U. J. Sci. & Tech. L. 144 (2008) ...................................................................................7

Damien Geradin, Anne Layne-Farrar, & A. Jorge Padilla, *The Ex Ante Auction Model for The Control of Market Power in Standard Setting Organizations*, CEMFI Working Paper No. 0703, May 2007 ...........................................................................7

Damien Geradin & Miguel Rato, *Can Standard-Setting lead to Exploitative Abuse? A Dissonant View on Patent Hold-Up, Royalty Stacking and the Meaning of FRAND*, TILEC Discussion Paper, DP 2006-032 (Ex. 30), at 12 (Nov. 2006)........................7

Anne Layne-Farrar, A. Jorge Padilla, & Richard Schmalensee, *Pricing Patents for Licensing in Standard-Setting Organizations: Making Sense of Frand Commitments*, 74 Antitrust L.J. 671 (2007)................................................................................7

Doug Lichtman, *Understanding the RAND Commitment*, 47 Hous. L. Rev. 1023 (2010-11) ........7

Mario Mariniello, *Fair, Reasonable, and Non-Discriminatory (FRAND) Terms: A Challenge for Competition Authorities*, Journal of Competition Law & Economics, 7(3), 523–41 (2011)......................................................................................7

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE
CASE NO. C10-1823-JLR
4813-8352-1295.1

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

Fed. R. Evid. 402 ...................................................................................................................1

Fed. R. Evid. 702 ...............................................................................................1, 2, 3, 14

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE
CASE NO. C10-1823-JLR

4813-8352-1295.1

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1    Defendants Motorola Mobility, Inc. and General Instrument Corporation (collectively,

2  "Motorola"), pursuant to Rules 402 and 702 of the Federal Rules of Evidence, hereby move for an

3  Order precluding certain testimony of three of Plaintiff Microsoft Corporation's ("Microsoft")

4  expert witnesses – Kevin M. Murphy, Matthew R. Lynde, and Timothy S. Simcoe – on the

5  grounds that their opinions are not based on a reliable methodology.  This motion should be

6  granted for the reasons set forth below.

## I.    INTRODUCTION

"A prospective implementer that has requested a license **will negotiate on a private bilateral basis** with the patent owner to determine whether they can arrive at a mutually acceptable agreement on RAND terms."

"RAND-based IPR policies provide a flexible framework **to help enable customized bi-lateral negotiations** for patent licenses that generally are not limited to just the essential patent claims in connection with a standard."[1]

These are Microsoft's own words.  The first quote, from Microsoft's General Manager of

Standards Strategy, Amy Marasco, appeared in a 2007 presentation regarding IPR policies and

essential licenses.  (Ex. 1 at 8.)  The second statement was made in a June 14, 2011 submission to

the FTC by Ms. Marasco and David Heiner, Microsoft's Deputy General Counsel.  (Ex. 2 at 3.)  In

these statements, Microsoft unquestionably acknowledges that RAND terms are determined

through bilateral negotiations.  Consistent with Microsoft's understanding, Motorola's position in

numerous Court filings in this case is that RAND terms should be determined, in a manner similar

to the well-known *Georgia-Pacific* analysis, through a hypothetical bilateral negotiation between

Motorola and Microsoft.  Microsoft has never challenged this methodology in any of its Court

filings.

Never, that is, until Microsoft served its RAND-related expert reports in this case. ████████

██████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████,

---

[1] "Ex. ___" refers to the stated Exhibit to the Declaration of Samuel L. Brenner, submitted concurrently herewith. All emphasis is added unless otherwise indicated.

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 1
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   ████████████[2]  ██████████████████████████████████████████

2   ████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████

4   ██████████████████████████

5   ████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████

7   ████████████████████████.   Nearly all license agreements are consummated after bilateral

8   negotiations, and therefore such agreements are a genuine predicate for the hypothetical

9   negotiation of *Georgia-Pacific*.   In contrast, ██████████████████████████

10  ████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████

13  ████████████████████████████████   Accordingly, any opinion based on such a

14  methodology should be excluded, and the portions of the reports of Drs. Murphy, Lynde, and

15  Simcoe described herein should be stricken.

## II.   ARGUMENT

### A.   Expert Testimony: Rule 702 and the *Daubert* Analysis

Rule 702 governs the admissibility of expert testimony.   Rule 702 sets out four requirements for expert testimony: (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and methods"; and (4) "the expert has reliably applied the principles and methods to the facts of the case."   *See also Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579 (1993).

---

[2]  ████████████████████████████████████████████████
████████████████████████████████████████████

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 2
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    "Federal Rule of Evidence 702 charges trial judges with the task of ensuring 'that any and

2    all scientific testimony or evidence admitted is not only relevant, but reliable.'  The gatekeeping

3    role exercised by district courts 'entails a preliminary assessment of whether the reasoning or

4    methodology underlying the testimony is . . . valid and of whether that reasoning or methodology

5    properly can be applied to the facts in issue.'  This role applies to all expert testimony, not only to

6    'scientific' expert testimony." *United States v. Freeman*, 498 F.3d 893, 901 (9th Cir. 2007)

7    (citations omitted); *see also Daubert*, 509 U.S. at 589.   Microsoft must demonstrate the

8    admissibility of its experts' testimony by a preponderance of the evidence.  *Daubert*, 509 U.S. at

9    588-90; *Bryant v. Wyeth*, No. 04-1706, 2012 U.S. Dist. LEXIS 100706, *5 (W.D. Wash. July 19,

10   2012); *Many Cultures, One Message v. Clements*, 830 F. Supp. 2d 1111, 1136 (W.D. Wash. 2011).

**B.    Drs. Lynde's, Murphy's, and Simcoe's** ███████████████ **Methodology
       Is Not Reliable – It Is Simply Wishful Thinking**

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████   However, as shown below, the policies and

guidelines of the SSOs themselves, the understanding in the industry, Microsoft's own documents,

and the testimony and admissions of Microsoft's own witnesses make clear that RAND terms are

determined through bilateral negotiations.  ██████████████████████████████

████████████████████████████████████████████████████████

██████████████████   Because that methodology does *not*, in fact, reflect how RAND negotiations

*actually* work, it is not reliable, and will not produce reliable results.  Fed. R. Evid. 702.

**1.    RAND Terms Result From Bilateral, not** ███████████ **Negotiations**

**SSO Policies and Motorola's Letters of Assurance ("LOAs")**.  As this Court explained

in its June 6, 2012 Order, "the language of Motorola's agreements with the IEEE and the ITU

envisions a negotiation between the parties towards a resulting RAND license."  (Dkt. No. 335 at

24.)  "Motorola," the Court added in the same Order, "correctly asserts that the IEEE and ITU

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 3
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    Policies contemplate that RAND licenses **will be negotiated between the patent holder and the**

2    **implementer of the standard**." (*Id.* at 18.)

3          Critically, the Court's observations correctly reflect the actual language and meaning of the

4    LOAs Motorola sent to the ITU and IEEE – the actual contracts to which Microsoft is a third-party

5    beneficiary.  For example, Motorola's LOAs to the ITU make clear that the negotiations over the terms

6    of RAND licenses "**are left to the parties concerned** and are performed outside the ITU-T ISO/IEC."

7    (Ex. 15 at MOTM_WASH1823_0000039; *see also id.* at MOTM_WASH1823_0000036

8    ("Negotiations are left to the parties concerned and are performed outside the ITU-T, ITU-R, ISO,

9    or IEC."); 046 (same); 053 (same); 057 (same); 061 (same).)  Consistent with Motorola's LOAs,

10    moreover, the "Common Patent Policy" for the ITU states:

11          The detailed arrangements arising from patents (licensing, royalties, etc.) **are left
to the parties concerned**, as these arrangements might **differ from case to case**.

13    (Ex. 13 at 8.)  Indeed, the ITU's Legal Officer has explicitly stated that there is "[n]o uniform

14    definition of RAND" and that "[t]he licenses and their prices are generally **nego[t]iated** on a

15    **bilateral** basis between the patentee and each licen[s]ee, outside the [SSOs]."  (Ex. 19 at 12.)

16    There can be no question that the ITU, which recognizes that the terms of RAND licenses may "differ

17    from case to case," envisions and expects that such differing terms will result from bilateral

18    negotiations between "**the parties concerned**," and **not** from ████████████████████████

19    ████████████████████████████████████████[3]

20          Similarly, Motorola's contractual commitments to the IEEE make clear that the IEEE does

21    *not* mandate or even recommend that licensing negotiations ████████████████████ as

22    required by Microsoft's experts.  The IEEE patent policy expressly states that the "IEEE is not

23    responsible . . . for determining whether any licensing terms or conditions provided in connection

---

24    [3] ███████████████████████████████████████████████████████  Microsoft has also suggested that the only

25    material term in RAND licenses that is left open is the RAND royalty.  (July 9, 2012 Telephone Conf. Tr. at 6.)

26    ███████████████████████████████████████████████████  – a result that is obviously inconsistent
with the ITU's own understanding that the terms of RAND licenses will differ from licensee to licensee.

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 4
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

with submission of a Letter of Assurance, if any, or in any licensing agreements are reasonable or non-discriminatory." (Ex. 12 at MOTM_WASH1823_0054739.) Motorola's LOAs to the IEEE expressly state that "[t]he IEEE takes **no position** with respect to the reasonableness of rates, terms, and conditions of the license agreements **offered by patent holders or patent applicants**." (Ex. 16 at MOTM_WASH1823_0000002; *see also id.* at 06 (same); 08 (same); 10 (same); 12 (same); 14 (same); 16 (same); 18 (same); 21 (same); 23 (same); 25 (same); 27 (same); 29 (same); 31 (same); 33 (same).)

Like the ITU, the IEEE envisions that the terms of RAND licenses will be the product of bilateral negotiation between the parties to the resulting license. In fact, the IEEE's Antitrust and Competition Policy actually goes so far as to *forbid* parties in the IEEE from engaging in ▮▮▮▮▮▮▮▮▮▮▮▮ about RAND terms during the technical standards setting process.[4] (Ex. 20 at 3.) Indeed, the IEEE's Standards Board Operations Manual mandates that "no discussions or other communication[]" of "[s]pecific patent license terms . . . other than distribution of Accepted Letters of Assurance" "shall occur during IEEE-SA working group standards-development meetings or other duly authorized IEEE-SA standards-development technical activities." (Ex. 22 at § 5.3.10.2.)

In other words, the IEEE forbids ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Such a reading drastically misrepresents Motorola's contractual

---

[4] Recently, a group of 13 companies announced the launch of an exploratory forum under the IEEE's "Industry Connections" program that will consider whether an 802.11 patent pool can be created. Such a pool – if it ever gets past the exploratory stage and actually gets formed – would presumably involve at least a partial multilateral negotiation to determine the terms of the pool agreement. Given that the 802.11 standard was first published nearly 15 years ago, any such negotiation is not the type of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ envisioned by Microsoft's experts.

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 5
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    commitments in its LOAs and the actual process employed by patent holders in the marketplace to

2    determine RAND terms.

3         **Understanding of the Industry and Academics.**    Both industry participants and

4    academics considering the meaning of the RAND commitment understand that a RAND license is

5    the product of bilateral negotiations between the patent holder and the prospective licensee.  One

6    example of this industry understanding is the comments submitted in connection with the FTC's

7    2011 Workshop on Standard-Setting Issues.  In one comment, for instance, the Association for

8    Competitive Technology recognized that the "practice" regarding licensing in the standards

9    context is "*bilateral negotiations*."  (Ex. 23 at 5.)  Similarly, the Telecommunications Industry

10   Association explained that "[t]he RAND framework has enabled industry participants *to*

11   *bilaterally negotiate* effective license agreements that meet the specific needs of each licensee and

12   licensor."  (Ex. 24 at 10.)  Michele Herman, then a partner at Davis Wright Tremaine LLP (and

13   Microsoft's former Senior Director of Intellectual Property Strategy) observed that, "[b]ecause

14   standards-essential patent claims are not licensed in isolation, it is necessary for parties to

15   *negotiate their own bilateral agreements* irrespective of whether specific patents or license terms

16   are disclosed to the SSO *ex ante*."  (Ex. 25 at 5.)  Nokia observed in its own comment that "the

17   normal way" is for royalties in the standards context "*to be negotiated bilaterally*."  (Ex. 26 at 7.)

18   These comments are not unexpected, given that the FTC itself, in its request for comments,

19   observed that "[s]etting specific terms of the patent license generally occurs in *bilateral*

20   *negotiations between the patent holder and individual standards users* after the standard-setting

21   process is completed, sometimes long after the standard has been implemented."  (Ex. 27 at

22   28037.)  None of this is surprising – patent licenses are negotiated bilaterally, ███████████

23   ███████

24        Even a cursory survey of the legal and economic literature on RAND demonstrates that the

25   overwhelming understanding among economists and legal academics mirrors the understanding of

26   industry participants, that (absent the future adoption of some new RAND policy by an SSO) the

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 6
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

holders of SEPs and the SSOs envision that licenses on RAND terms will be the product of bilateral negotiations between the patent holder and the prospective licensee. *See, e.g.*:

- Roger G. Brooks & Damien Geradin, *Interpreting and Enforcing the Voluntary FRAND Commitment, International Journal of IT Standards and Standardization Research*, 9(1), 1-23, January-June 2011 (Ex. 14), at 20 n.10 ("'Fair and reasonable' licensing terms would therefore consist of those terms determined through fair, ***bilateral negotiations*** between individual IPR owner and standard implementer in accordance with the market conditions prevailing at the time of such negotiations.");

- Damien Geradin, Anne Layne-Farrar, & A. Jorge Padilla, *The Complements Problem Within Standard Setting: Assessing the Evidence on Royalty Stacking*, 14 B.U. J. Sci. & Tech. L. 144 (Ex. 29), 148 (2008) (recognizing the "current SSO system of confidential ***bilateral negotiations***");

- Damien Geradin, Anne Layne-Farrar, & A. Jorge Padilla, *The Ex Ante Auction Model for The Control of Market Power in Standard Setting Organizations*, CEMFI Working Paper No. 0703, May 2007 (Ex. 28), at 32 ("***Actual negotiations take place bilaterally*** and confidentially . . .");

- Damien Geradin & Miguel Rato, *Can Standard-Setting lead to Exploitative Abuse? A Dissonant View on Patent Hold-Up, Royalty Stacking and the Meaning of FRAND*, TILEC Discussion Paper, DP 2006-032 (Ex. 30), at 12 (Nov. 2006) ("'Fair and reasonable' licensing terms would therefore consist of those terms determined through fair, ***bilateral negotiations*** between individual IPR owner and standard-adopter in accordance with the market conditions prevailing at the time of such negotiations.");

- Anne Layne-Farrar, A. Jorge Padilla, & Richard Schmalensee, *Pricing Patents for Licensing in Standard-Setting Organizations: Making Sense of Frand Commitments*, 74 Antitrust L.J. 671 (Ex. 31), 705 (2007) (noting that RAND rates are set by the parties "through ***bilateral negotiations***");

- Doug Lichtman, *Understanding the RAND Commitment*, 47 Hous. L. Rev. 1023 (Ex. 18), 1044-45 (2010-11) ("After a standard has been promulgated, firms that wish to invoke the RAND commitment must still contact the relevant patent holders and ***negotiate their own bilateral deals***. . . . every other participant in that same standard-setting process ultimately found itself in a similar, overlapping, confidential, ***bilateral negotiation***."); and

- Mario Mariniello, *Fair, Reasonable, and Non-Discriminatory (FRAND) Terms: A Challenge for Competition Authorities*, Journal of Competition Law & Economics, 7(3), 523–41 (Ex. 32), 532 (2011) ("I take the view that ***FRAND is the outcome of a bilateral hypothetical negotiation*** between the licensor and the licensee . . . .").

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND SIMCOE - 7
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1      This consensus among industry participants and academics is even fully reflected in the

2  understandings of professional legal organizations.  For example, the American Bar Association's

3  Standard Development Policy Manual, which was prepared with "substantial editorial and

4  substantive assistance" (Ex. 17 at v), from Amy Marasco (Microsoft's General Manager of

5  Standards Strategy) and Michele Herman (Microsoft's former Senior Director of Intellectual

6  Property Strategy), recognizes that when users of a standardized technology seek out licenses

7  covering their use, RAND commitments are determined through bilateral negotiations:

> "[RAND] licensing commitment[s are] often stated as an absolute (*i.e.*, that the
> [patent owner] must grant the required licenses). However, it is reasonable to
> require that such licenses be granted only upon a request by a potential licensee
> and upon the conclusion of ***bilateral negotiations***."

11  (Ex. 17 at 49.)

12      **Statements by Microsoft.** ███████████████████████

13  ████████████████████████████████████████████████████████████████

14  ███████████████████████████████████████████████████.  For

15  example, as noted above, Ms. Marasco explained in a presentation regarding IPR policies and

16  essential licenses that "[a] prospective implementer that has requested a license will negotiate on a

17  private ***bilateral*** basis with the patent owner to determine whether they can arrive at a mutually

18  acceptable agreement on RAND terms."  (Ex. 1 at 8.)  Similarly, in a June 14, 2011 submission to

19  the FTC regarding a Patent Standards Workshop, Ms. Marasco and David Heiner, Microsoft's

20  Deputy General Counsel, reiterated that "RAND-based IPR policies provide a flexible framework

21  to help enable ***customized bi-lateral negotiations*** for patent licenses that generally are not limited

22  to just the essential patent claims in connection with a standard."  (Ex. 2 at 3.)

23      Consistent with this understanding, Mr. Heiner testified in *this case* that RAND license

24  terms are typically arrived at through bilateral negotiation:

25      Q: You agree that RAND license terms are typically arrived at through bilateral
       negotiation, correct?

26      A: Typically, yes.

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 8
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

…

Q: In large part, the parties collectively and bilaterally determine what is RAND in their specific contexts through negotiations, correct?

A: Typically.

(Ex. 9 at 33:6-8; 39:10-13.)  Mr. Heiner also agreed that licensing considerations "would typically be fleshed out *as part of bilateral negotiations* between the [prospective] licensor and [prospective] licensee." (*Id.* at 32:15-18.)  Finally, Mr. Heiner confirmed that "there will at times be significant contention between the patent owner and implementer about what constitutes reasonable licensing terms, but this is to be expected, as with commercial negotiation on any input cost component, and *has for the most part been readily resolved through bilateral negotiations*." (*Id.* at 37:10-17.)  Neither Dr. Murphy nor Dr. Simcoe considered this testimony.

**Microsoft's Own Experts.**  Given the overwhelming evidence that the SSOs envision bilateral negotiations of RAND licensing terms, and that this understanding is shared by the industry in general and Microsoft in particular, it is not surprising that even Microsoft's *own experts –*  – explicitly recognize that RAND terms are the result of bilateral negotiations.  For example, in testifying before the ITC, Dr. Murphy

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 9
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1 ████████████████████████████████████████████

2 ████████████████████████████

3     In his expert report in this litigation – ████████████████████████

4 ██████████████████████████████████████████████████████████

5 ██████████████████████████████████████████████████████████

6 ██████████████████████████████████████████████████████████

7 ████████████████████████████████████ Professor Simcoe's

8 recognition ████████████████████████████████████████ is in

9 accordance with what Professor Simcoe has said in previous publications and ████████

10 ███████████████████████████████████████████ For

11 example, in comments recently provided to the FTC, Professor Simcoe stated that:

12          One approach to the "reasonable" prong of the RAND commitment is to treat it as a
13          promise to forgo lost profits as the approach to calculating damages in patent
14          infringement litigation.   In its place, courts would presumably set reasonable
          royalty damages based on a ***hypothetical negotiation between a willing licensor***
15          ***and willing licensee***.

16 (Ex. 11 at 9; *see also id.* at 16.)

17 ████████████████████████████████████████████

18 ██████████████████████████████████████████████████████████

19 ██████████████████████████████████████████████████████████

20 ██████████████████████████████████████████████████████████

21 ██████████████████████████████████████████████████████████

22 ██████████████████████████████████████████████████████████

23 ████████████████████

24          **2.      Microsoft's Experts' Opinions Are Not Based On A Methodology That**
                 **Provides Reliable Results**

25          Despite the facts described above showing that RAND terms are determined in the real

26 world through bilateral negotiations and Microsoft experts' previous statements recognizing that a

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 10
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

bilateral determination is appropriate,

1 ████████████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████████████

4 ████████

5        As shown above, the SSO contracts at issue, and the commentary on those contracts,

6 reflect the understanding that RAND terms should be determined based on a methodology that

7 contemplates a bilateral negotiation ███████████████████████   Unlike bilateral negotiations,

8 ████████████████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████████████████

10 ███████████████████████████████████████████████████   For

11 example, in this case, a bilateral negotiation would be limited to negotiations between just

12 Motorola and Microsoft, and would be focused only those factors, considerations and facts

13 relevant to these parties and their respective businesses.  When negotiating material terms (e.g.,

14 term, assignability of the agreement, scope of the grant back, field of use, exclusions, carve outs,

15 covered products, etc.), Motorola and Microsoft would emphasize and de-emphasize certain

16 factors, considerations and facts based on each party's business model and would mold the terms

17 of the license accordingly.  Thus, such a negotiation – which ordinarily takes months between just

18 two parties – would reflect compromises and concessions that are specific to Motorola and

19 Microsoft.  This is exactly the type of "flexible framework to help enable customized bi-lateral

20 negotiations for patent licenses" envisioned by the SSOs that Microsoft pointed out in its FTC

21 submission.  (Ex. 2 at 3.)

22        ██████████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████████████████

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 12
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

_____

25  [5] Microsoft has made no secret of the fact that its participation in the MPEG LA pool has been about promoting broad use of the H.264 standard, rather than about receiving the true value of its SEPs.  As Dean Hachamovitch, Microsoft's corporate vice president in charge of the Internet Explorer team at Microsoft explained in a May 3, 2010 blog post, "Microsoft pledged its patent rights to [the MPEG LA pool] *in order to make its rights broadly available under clear terms, not because it thought this might be a good revenue stream*."  (Ex. 34 at 1.)

26

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 13
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19        The critical issue is what Motorola and Microsoft would have done to arrive at a license

20   consistent with the IEEE and ITU policies and Motorola's RAND assurances.  Plainly, they would

21   have undertaken the bilateral negotiation contemplated by the SSOs and entirely understood by

22   Microsoft's own executives and others who have negotiated bilateral licenses, rather than

23

24        [6] In addition, the timing of when the MPEG LA and Via Licensing patent pool agreements were negotiated further
     demonstrates the unreliability of the conclusions of the opinions of Microsoft's experts.  Microsoft's experts focus on
25   a multilateral negotiation that takes place *before* the standard is adopted.   (*See, e.g.*, Ex. 7 at 3, 22; Ex. 8 at 1; Ex. 5 at
     7; Ex. 6 at 2; Ex. 21 at 150-51.)  It is undisputed that the terms of the MPEG LA and Via Licensing agreements were
26   set *after* the standard was adopted.  In the case of Via Licensing, these terms were set more than five years after the
     first 802.11 standard was adopted.

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 14
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

█████████████████████████████████████████████████████.  Given (1) the ubiquitous acceptance by academics, Microsoft's own personnel, and – most importantly – the LOAs and policies of the SSOs themselves that RAND terms are determined through bilateral negotiations, (2) the paucity of evidence that supports Microsoft's proposed ████████████ ████████████████ and (3) the questionable application of that methodology to the facts of this case, the opinions of Microsoft's expert are unreliable and will not be helpful to the jury.  Fed. R. Evid. 702; *Daubert*, 509 U.S. 579.  As such, the reports and testimony of Drs. Murphy, Lynde, and Simcoe, insofar as they ████████████████████████████████████████████ ██████████████████████████ should be excluded in accordance with the gatekeeping functions set forth by the Supreme Court in *Daubert.*  509 U.S. at 589; *see also Freeman*, 498 F.3d at 901.

## III.     CONCLUSION

The Court has a duty to serve as a gatekeeper and to exclude expert testimony that is based on an unreliable methodology.  ███████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ██████████████      █████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████

For the foregoing reasons, Motorola respectfully requests that the Court grant this motion.

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 15
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    DATED this 27th day of August, 2012.

2                                              Respectfully submitted,

3                                              SUMMIT LAW GROUP PLLC

4                                              By */s/ Ralph H. Palumbo*
5                                                 Ralph H. Palumbo, WSBA #04751
                                                  Philip S. McCune, WSBA #21081
6                                                 Lynn M. Engel, WSBA #21934
                                                  *ralphp@summitlaw.com*
7                                                 *philm@summitlaw.com*
                                                  *lynne@summitlaw.com*

8                                              By */s/ K. McNeill Taylor, Jr.*
9                                                 K. McNeill Taylor, Jr.
                                                  MOTOROLA MOBILITY, INC.
10                                                MD W4-150
                                                  600 North U.S. Highway 45
11                                                Libertyville, IL  60048-1286
                                                  Phone:  858-404-3580
12                                                Fax:  847-523-0727

13                                             And by

14                                                Jesse J. Jenner (*pro hac vice* )
                                                  Steven Pepe (*pro hac vice* )
15                                                Kevin J. Post (*pro hac vice* )
                                                  Ropes & Gray LLP
16                                                1211 Avenue of the Americas
                                                  New York, NY  10036-8704
17                                                (212) 596-9046
                                                  *jesse.jenner@ropesgray.com*
18                                                *steven.pepe@ropesgray.com*
                                                  *kevin.post@ropesgray.com*
19
                                                  James R. Batchelder (*pro hac vice*)
20                                                Norman H. Beamer (*pro hac vice* )
                                                  Ropes & Gray LLP
21                                                1900 University Avenue, 6th Floor
                                                  East Palo Alto, CA  94303-2284
22                                                (650) 617-4030
                                                  *james.batchelder@ropesgray.com*
23                                                *norman.beamer@ropesgray.com*

24

25

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Paul M. Schoenhard (*pro hac vice*
Ropes & Gray LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC  20005-3948
(202) 508-4693
*paul.schoenhard.@ropesgray.com*

*Attorneys for Motorola Solutions, Inc., Motorola
Mobility, Inc., and General Instrument
Corporation*

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 17
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1

## CERTIFICATE OF SERVICE

2       I hereby certify that on this day I electronically filed the foregoing with the Clerk of the

3   Court using the CM/ECF system which will send notification of such filing to the following:

4                       Arthur W. Harrigan, Jr., Esq.
                        Christopher T. Wion, Esq.

5                       Shane P. Cramer, Esq.
                        Calfo Danielson, Harrigan, Leyh & Eakes LLP

6                       arthurh@calfoharrigan.com
                        chrisw@calfoharrigan.com

7                       shanec@calfoharrigan.com

8                       Richard A. Cederoth, Esq.
                        Brian R. Nester, Esq.

9                       David T. Pritikin, Esq.
                        Douglas I. Lewis, Esq.

10                      John W. McBride, Esq.
                        David Greenfield, Esq.

11                      William H. Baumgartner, Jr., Esq.
                        David C. Giardina, Esq.

12                      Carter G. Phillips, Esq.
                        Constantine L. Trela, Jr., Esq.

13                      Ellen S. Robbins, Esq.
                        Nathaniel C. Love, Esq.

14                      Sidley Austin LLP
                        rcederoth@sidley.com

15                      bnester@sidley.com

16                      dpritikin@sidley.com
                        dilewis@sidley.com

17                      jwmcbride@sidley.com
                        david.greenfield@sidley.com

18                      wbaumgartner@sidley.com
                        dgiardina@sidley.com

19                      cphillips@sidley.com
                        ctrela@sidley.com

20                      erobbins@sidley.com
                        nlove@sidley.com

21

22                      T. Andrew Culbert, Esq.
                        David E. Killough, Esq.

23                      Microsoft Corp.
                        andycu@microsoft.com

24                      davkill@microsoft.com

25      DATED this 27th day of August, 2012.

26                                                    /s/ Marcia A. Ripley
                                                      Marcia A. Ripley

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 18
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001