1

The Honorable James L. Robart

2

3

4

5

6                    UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF WASHINGTON
7                            AT SEATTLE

8   MICROSOFT CORPORATION, a Washington
    corporation,
9                                                    CASE NO. C10-1823-JLR

10                            Plaintiff,             MOTOROLA MOBILITY'S AND
                                                     GENERAL INSTRUMENT'S DAUBERT
11          v.                                       MOTION TO EXCLUDE CERTAIN
                                                     TESTIMONY OF PLAINTIFF'S
12  MOTOROLA, INC., and MOTOROLA                     EXPERTS DRS. LYNDE, MURPHY, and
    MOBILITY, INC., and GENERAL                      SIMCOE
13  INSTRUMENT CORPORATION,
                                                     NOTED ON MOTION CALENDAR:
14                            Defendants.            September 10, 2012

15                                                   ORAL ARGUMENT REQUESTED

16  MOTOROLA MOBILITY, INC., and
    GENERAL INSTRUMENT CORPORATION,
17
18          Plaintiffs/Counterclaim Defendant,

19          v.

20  MICROSOFT CORPORATION,

21          Defendant/Counterclaim Plaintiff.

22

23

24

25

26

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

# TABLE OF CONTENTS

I.      Introduction ................................................................................................................ 1

II.     Argument ................................................................................................................... 2

        A.      Expert Testimony: Rule 702 and the *Daubert* Analysis ......................................... 2

        B.      Drs. Lynde's, Murphy's, and Simcoe's Multilateral Negotiation
                Methodology Is Not Reliable – It Is Simply Wishful Thinking ............................ 3

                1.      RAND Terms Result From Bilateral, not Multilateral, Negotiations ......... 3

                2.      Microsoft's Experts' Opinions Are Not Based On A Methodology
                        That Provides Reliable Results ................................................................. 10

III.    Conclusion ............................................................................................................... 15

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1

2

# **TABLE OF AUTHORITIES**

3

**Page(s)**

**CASES**

4

5

*Bryant v. Wyeth*,
   No. 04-1706, 2012 U.S. Dist. LEXIS 100706 (W.D. Wash. July 19, 2012) ...........................3

6

*Daubert v. Merrell Dow Pharms. Inc.*,
   509 U.S. 579 (1993)..................................................................................2, 3, 14, 15

7

8

*Many Cultures, One Message v. Clements*,
   830 F. Supp. 2d 1111 (W.D. Wash. 2011) ..............................................................3

9

*United States v. Freeman*,
   498 F.3d 893 (9th Cir. 2007)..................................................................................3, 15

10

11

**OTHER AUTHORITIES**

12

Roger G. Brooks & Damien Geradin, *Interpreting and Enforcing the Voluntary FRAND
   Commitment, International Journal of IT Standards and Standardization Research*,
   9(1), 1-23, January-June 2011 .............................................................................7

13

14

Damien Geradin, Anne Layne-Farrar, & A. Jorge Padilla, *The Complements Problem
   Within Standard Setting: Assessing the Evidence on Royalty Stacking*, 14 B.U. J. Sci. &
   Tech. L. 144 (2008) .........................................................................................7

15

16

Damien Geradin, Anne Layne-Farrar, & A. Jorge Padilla, *The Ex Ante Auction Model for
   The Control of Market Power in Standard Setting Organizations*, CEMFI Working
   Paper No. 0703, May 2007 .................................................................................7

17

18

Damien Geradin & Miguel Rato, *Can Standard-Setting lead to Exploitative Abuse? A
   Dissonant View on Patent Hold-Up, Royalty Stacking and the Meaning of FRAND*,
   TILEC Discussion Paper, DP 2006-032 (Ex. 30), at 12 (Nov. 2006).......................7

19

20

Anne Layne-Farrar, A. Jorge Padilla, & Richard Schmalensee, *Pricing Patents for
   Licensing in Standard-Setting Organizations: Making Sense of Frand Commitments*,
   74 Antitrust L.J. 671 (2007)...............................................................................7

21

22

Doug Lichtman, *Understanding the RAND Commitment*, 47 Hous. L. Rev. 1023 (2010-11) ........7

23

24

Mario Mariniello, *Fair, Reasonable, and Non-Discriminatory (FRAND) Terms: A
   Challenge for Competition Authorities*, Journal of Competition Law & Economics, 7(3),
   523–41 (2011).................................................................................................7

25

26

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Fed. R. Evid. 402 .................................................................................................................1

Fed. R. Evid. 702 ...............................................................................................1, 2, 3, 14

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    Defendants Motorola Mobility, Inc. and General Instrument Corporation (collectively,

2    "Motorola"), pursuant to Rules 402 and 702 of the Federal Rules of Evidence, hereby move for an

3    Order precluding certain testimony of three of Plaintiff Microsoft Corporation's ("Microsoft")

4    expert witnesses – Kevin M. Murphy, Matthew R. Lynde, and Timothy S. Simcoe – on the

5    grounds that their opinions are not based on a reliable methodology.  This motion should be

6    granted for the reasons set forth below.

7    **I.    INTRODUCTION**

8        "A prospective implementer that has requested a license **will negotiate on a
         private bilateral basis** with the patent owner to determine whether they can arrive
9        at a mutually acceptable agreement on RAND terms."

10       "RAND-based IPR policies provide a flexible framework **to help enable
         customized bi-lateral negotiations** for patent licenses that generally are not
11       limited to just the essential patent claims in connection with a standard."[1]

12    These are Microsoft's own words.  The first quote, from Microsoft's General Manager of

13    Standards Strategy, Amy Marasco, appeared in a 2007 presentation regarding IPR policies and

14    essential licenses.  (Ex. 1 at 8.)  The second statement was made in a June 14, 2011 submission to

15    the FTC by Ms. Marasco and David Heiner, Microsoft's Deputy General Counsel.  (Ex. 2 at 3.)  In

16    these statements, Microsoft unquestionably acknowledges that RAND terms are determined

17    through bilateral negotiations.  Consistent with Microsoft's understanding, Motorola's position in

18    numerous Court filings in this case is that RAND terms should be determined, in a manner similar

19    to the well-known *Georgia-Pacific* analysis, through a hypothetical bilateral negotiation between

20    Motorola and Microsoft.  Microsoft has never challenged this methodology in any of its Court

21    filings.

22        Never, that is, until Microsoft served its RAND-related expert reports in this case.  In those

23    reports, Microsoft, through its experts Drs. Lynde, Murphy and Simcoe, alleges for the first time

24    that RAND terms should be determined through the "lens" of "multilateral," rather than bilateral,

25

26    ---
     [1] "Ex. ___" refers to the stated Exhibit to the Declaration of Samuel L. Brenner, submitted concurrently herewith.
     All emphasis is added unless otherwise indicated.

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 1
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   negotiations.[2]  While Microsoft's experts do not provide an explicit definition of a "multilateral

2   negotiation" and how it would be implemented, ███████████████████████████████████

3   ████████████████████████████████████████████████████████████████████

4   ████████████████████

5         There is no basis in fact for the claim of Microsoft's experts that RAND terms must be

6   based on such a multilateral negotiation, or that multilateral negotiations are even the preferable

7   way to determine RAND terms.  Nearly all license agreements are consummated after bilateral

8   negotiations, and therefore such agreements are a genuine predicate for the hypothetical

9   negotiation of *Georgia-Pacific*.  In contrast, the kinds of *ex ante* multilateral negotiations

10  envisioned by Microsoft's experts do not take place in the real world, so there is no real-world

11  "lens" for Microsoft's construct.  Using these theoretical and undefined multilateral negotiations

12  to determine RAND terms is an unreliable methodology that will produce terms that are without a

13  rational basis and will be unhelpful to the factfinder.  Accordingly, any opinion based on such a

14  methodology should be excluded, and the portions of the reports of Drs. Murphy, Lynde, and

15  Simcoe described herein should be stricken.

16  **II.   ARGUMENT**

17       **A.   Expert Testimony: Rule 702 and the *Daubert* Analysis**

18       Rule 702 governs the admissibility of expert testimony.  Rule 702 sets out four

19  requirements for expert testimony: (1) "the expert's scientific, technical, or other specialized

20  knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2)

21  "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable

22  principles and methods"; and (4) "the expert has reliably applied the principles and methods to the

23  facts of the case."  *See also Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579 (1993).

24

25  ───────────
    [2] ████████████████████████████████████████████████
26  ████████████████████████████████████████████████████████

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 2
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1   "Federal Rule of Evidence 702 charges trial judges with the task of ensuring 'that any and

2   all scientific testimony or evidence admitted is not only relevant, but reliable.'  The gatekeeping

3   role exercised by district courts 'entails a preliminary assessment of whether the reasoning or

4   methodology underlying the testimony is . . . valid and of whether that reasoning or methodology

5   properly can be applied to the facts in issue.'  This role applies to all expert testimony, not only to

6   'scientific' expert testimony." *United States v. Freeman*, 498 F.3d 893, 901 (9th Cir. 2007)

7   (citations omitted); *see also Daubert*, 509 U.S. at 589.   Microsoft must demonstrate the

8   admissibility of its experts' testimony by a preponderance of the evidence.  *Daubert*, 509 U.S. at

9   588-90; *Bryant v. Wyeth*, No. 04-1706, 2012 U.S. Dist. LEXIS 100706, *5 (W.D. Wash. July 19,

10   2012); *Many Cultures, One Message v. Clements*, 830 F. Supp. 2d 1111, 1136 (W.D. Wash. 2011).

**B.      Drs. Lynde's, Murphy's, and Simcoe's Multilateral Negotiation Methodology Is Not Reliable – It Is Simply Wishful Thinking**

Drs. Lynde and Simcoe state throughout their reports that RAND terms should be determined through the "lens" of multilateral negotiations.  (*See, e.g.*, Ex. 7 at 17-23; Ex. 8 at 1, 4-5, 9-10; Ex. 5 at 7, 27, 37; Ex. 6 at 2-3, 7-8, 28.)   However, as shown below, the policies and guidelines of the SSOs themselves, the understanding in the industry, Microsoft's own documents, and the testimony and admissions of Microsoft's own witnesses make clear that RAND terms are determined through bilateral negotiations.  Thus, a methodology based on a multilateral, rather than bilateral, negotiation is simply wishful thinking by Microsoft as to how it might like RAND negotiations to work.  Because that methodology does *not*, in fact, reflect how RAND negotiations *actually* work, it is not reliable, and will not produce reliable results.  Fed. R. Evid. 702.

**1.      RAND Terms Result From Bilateral, not Multilateral, Negotiations**

**SSO Policies and Motorola's Letters of Assurance ("LOAs")**.  As this Court explained in its June 6, 2012 Order, "the language of Motorola's agreements with the IEEE and the ITU envisions a negotiation between the parties towards a resulting RAND license."  (Dkt. No. 335 at 24.)   "Motorola," the Court added in the same Order, "correctly asserts that the IEEE and ITU

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 3
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

Policies contemplate that RAND licenses **will be negotiated between the patent holder and the implementer of the standard**." (*Id.* at 18.)

Critically, the Court's observations correctly reflect the actual language and meaning of the LOAs Motorola sent to the ITU and IEEE – the actual contracts to which Microsoft is a third-party beneficiary. For example, Motorola's LOAs to the ITU make clear that the negotiations over the terms of RAND licenses "**are left to the parties concerned** and are performed outside the ITU-T ISO/IEC." (Ex. 15 at MOTM_WASH1823_0000039; *see also id.* at MOTM_WASH1823_0000036 ("Negotiations are left to the parties concerned and are performed outside the ITU-T, ITU-R, ISO, or IEC."); 046 (same); 053 (same); 057 (same); 061 (same).) Consistent with Motorola's LOAs, moreover, the "Common Patent Policy" for the ITU states:

> The detailed arrangements arising from patents (licensing, royalties, etc.) **are left to the parties concerned**, as these arrangements might **differ from case to case**.

(Ex. 13 at 8.) Indeed, the ITU's Legal Officer has explicitly stated that there is "[n]o uniform definition of RAND" and that "[t]he licenses and their prices are generally **nego[t]iated** on a **bilateral** basis between the patentee and each licen[s]ee, outside the [SSOs]." (Ex. 19 at 12.) There can be no question that the ITU, which recognizes that the terms of RAND licenses may "differ from case to case," envisions and expects that such differing terms will result from bilateral negotiations between "**the parties concerned**," and **not** from some kind of multilateral negotiation with full participation of patent holders and potential standards implementers.[3]

Similarly, Motorola's contractual commitments to the IEEE make clear that the IEEE does *not* mandate or even recommend that licensing negotiations resemble a multilateral negotiation as required by Microsoft's experts. The IEEE patent policy expressly states that the "IEEE is not responsible . . . for determining whether any licensing terms or conditions provided in connection

---

[3] Microsoft's experts focus on the use of patent pools as a proxy for multilateral *ex ante* negotiations. (*See, e.g.*, Ex. 7 at 3, 22; Ex. 8 at 9; Ex. 5 at 7; Ex. 6 at 2; Ex. 21 at 153, 156.) Microsoft has also suggested that the only material term in RAND licenses that is left open is the RAND royalty. (July 9, 2012 Telephone Conf. Tr. at 6.) Given Microsoft's arguments, the multilateral methodology suggested by Microsoft's experts would apparently result in a single set of terms applicable for any license under a RAND commitment – a result that is obviously inconsistent with the ITU's own understanding that the terms of RAND licenses will differ from licensee to licensee.

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 4
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

with submission of a Letter of Assurance, if any, or in any licensing agreements are reasonable or non-discriminatory." (Ex. 12 at MOTM_WASH1823_0054739.)  Motorola's LOAs to the IEEE expressly state that "[t]he IEEE takes *no position* with respect to the reasonableness of rates, terms, and conditions of the license agreements *offered by patent holders or patent applicants*." (Ex. 16 at MOTM_WASH1823_0000002; *see also id*. at 06 (same); 08 (same); 10 (same); 12 (same); 14 (same); 16 (same); 18 (same); 21 (same); 23 (same); 25 (same); 27 (same); 29 (same); 31 (same); 33 (same).)

Like the ITU, the IEEE envisions that the terms of RAND licenses will be the product of bilateral negotiation between the parties to the resulting license.  In fact, the IEEE's Antitrust and Competition Policy actually goes so far as to *forbid* parties in the IEEE from engaging in multilateral discussions about RAND terms during the technical standards setting process.[4]  (Ex. 20 at 3.)  Indeed, the IEEE's Standards Board Operations Manual mandates that "no discussions or other communication[]" of "[s]pecific patent license terms . . . other than distribution of Accepted Letters of Assurance" "shall occur during IEEE-SA working group standards-development meetings or other duly authorized IEEE-SA standards-development technical activities."  (Ex. 22 at § 5.3.10.2.)

In other words, the IEEE forbids the multiple parties engaged in the standards-setting process from engaging in multilateral negotiations regarding RAND terms during the IEEE standards-setting proceedings.  *Forbidding* multilateral negotiations in key *ex ante* contexts is obviously a far cry from *requiring* such negotiations, or even requiring that the normal bilateral negotiations between the parties to a license *resemble* multilateral negotiations, as asserted by Microsoft's experts.  Such a reading drastically misrepresents Motorola's contractual

---

[4] Recently, a group of 13 companies announced the launch of an exploratory forum under the IEEE's "Industry Connections" program that will consider whether an 802.11 patent pool can be created.  Such a pool – if it ever gets past the exploratory stage and actually gets formed – would presumably involve at least a partial multilateral negotiation to determine the terms of the pool agreement.  Given that the 802.11 standard was first published nearly 15 years ago, any such negotiation is not the type of multilateral *ex ante* negotiation envisioned by Microsoft's experts.

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 5
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

commitments in its LOAs and the actual process employed by patent holders in the marketplace to determine RAND terms.

**Understanding of the Industry and Academics.**   Both industry participants and academics considering the meaning of the RAND commitment understand that a RAND license is the product of bilateral negotiations between the patent holder and the prospective licensee.   One example of this industry understanding is the comments submitted in connection with the FTC's 2011 Workshop on Standard-Setting Issues.   In one comment, for instance, the Association for Competitive Technology recognized that the "practice" regarding licensing in the standards context is "***bilateral negotiations***."   (Ex. 23 at 5.)   Similarly, the Telecommunications Industry Association explained that "[t]he RAND framework has enabled industry participants ***to bilaterally negotiate*** effective license agreements that meet the specific needs of each licensee and licensor."   (Ex. 24 at 10.)   Michele Herman, then a partner at Davis Wright Tremaine LLP (and Microsoft's former Senior Director of Intellectual Property Strategy) observed that, "[b]ecause standards-essential patent claims are not licensed in isolation, it is necessary for parties to ***negotiate their own bilateral agreements*** irrespective of whether specific patents or license terms are disclosed to the SSO *ex ante*."   (Ex. 25 at 5.)   Nokia observed in its own comment that "the normal way" is for royalties in the standards context "***to be negotiated bilaterally***."   (Ex. 26 at 7.) These comments are not unexpected, given that the FTC itself, in its request for comments, observed that "[s]etting specific terms of the patent license generally occurs in ***bilateral negotiations between the patent holder and individual standards users*** after the standard-setting process is completed, sometimes long after the standard has been implemented."   (Ex. 27 at 28037.)   None of this is surprising – patent licenses are negotiated bilaterally, not negotiated multilaterally.

Even a cursory survey of the legal and economic literature on RAND demonstrates that the overwhelming understanding among economists and legal academics mirrors the understanding of industry participants, that (absent the future adoption of some new RAND policy by an SSO) the

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 6
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

holders of SEPs and the SSOs envision that licenses on RAND terms will be the product of bilateral negotiations between the patent holder and the prospective licensee. *See, e.g.*:

- Roger G. Brooks & Damien Geradin, *Interpreting and Enforcing the Voluntary FRAND Commitment, International Journal of IT Standards and Standardization Research*, 9(1), 1-23, January-June 2011 (Ex. 14), at 20 n.10 ("'Fair and reasonable' licensing terms would therefore consist of those terms determined through fair, ***bilateral negotiations*** between individual IPR owner and standard implementer in accordance with the market conditions prevailing at the time of such negotiations.");

- Damien Geradin, Anne Layne-Farrar, & A. Jorge Padilla, *The Complements Problem Within Standard Setting: Assessing the Evidence on Royalty Stacking*, 14 B.U. J. Sci. & Tech. L. 144 (Ex. 29), 148 (2008) (recognizing the "current SSO system of confidential ***bilateral negotiations***");

- Damien Geradin, Anne Layne-Farrar, & A. Jorge Padilla, *The Ex Ante Auction Model for The Control of Market Power in Standard Setting Organizations*, CEMFI Working Paper No. 0703, May 2007 (Ex. 28), at 32 ("***Actual negotiations take place bilaterally*** and confidentially . . .");

- Damien Geradin & Miguel Rato, *Can Standard-Setting lead to Exploitative Abuse? A Dissonant View on Patent Hold-Up, Royalty Stacking and the Meaning of FRAND*, TILEC Discussion Paper, DP 2006-032 (Ex. 30), at 12 (Nov. 2006) ("'Fair and reasonable' licensing terms would therefore consist of those terms determined through fair, ***bilateral negotiations*** between individual IPR owner and standard-adopter in accordance with the market conditions prevailing at the time of such negotiations.");

- Anne Layne-Farrar, A. Jorge Padilla, & Richard Schmalensee, *Pricing Patents for Licensing in Standard-Setting Organizations: Making Sense of Frand Commitments*, 74 Antitrust L.J. 671 (Ex. 31), 705 (2007) (noting that RAND rates are set by the parties "through ***bilateral negotiations***");

- Doug Lichtman, *Understanding the RAND Commitment*, 47 Hous. L. Rev. 1023 (Ex. 18), 1044-45 (2010-11) ("After a standard has been promulgated, firms that wish to invoke the RAND commitment must still contact the relevant patent holders and ***negotiate their own bilateral deals***. . . . every other participant in that same standard-setting process ultimately found itself in a similar, overlapping, confidential, ***bilateral negotiation***."); and

- Mario Mariniello, *Fair, Reasonable, and Non-Discriminatory (FRAND) Terms: A Challenge for Competition Authorities*, Journal of Competition Law & Economics, 7(3), 523–41 (Ex. 32), 532 (2011) ("I take the view that ***FRAND is the outcome of a bilateral hypothetical negotiation*** between the licensor and the licensee . . . .").

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 7
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   This consensus among industry participants and academics is even fully reflected in the

2   understandings of professional legal organizations.  For example, the American Bar Association's

3   Standard Development Policy Manual, which was prepared with "substantial editorial and

4   substantive assistance" (Ex. 17 at v), from Amy Marasco (Microsoft's General Manager of

5   Standards Strategy) and Michele Herman (Microsoft's former Senior Director of Intellectual

6   Property Strategy), recognizes that when users of a standardized technology seek out licenses

7   covering their use, RAND commitments are determined through bilateral negotiations:

> "[RAND] licensing commitment[s are] often stated as an absolute (*i.e.*, that the
> [patent owner] must grant the required licenses). However, it is reasonable to
> require that such licenses be granted only upon a request by a potential licensee
> and upon the conclusion of ***bilateral negotiations***."

11  (Ex. 17 at 49.)

12  **Statements by Microsoft.**   The unsupported assertions of Drs. Lynde, Murphy, and

13  Simcoe about the supposed need for RAND negotiations to resemble multilateral negotiations are

14  particularly surprising given that Microsoft *itself* knows that RAND negotiations are bilateral.  For

15  example, as noted above, Ms. Marasco explained in a presentation regarding IPR policies and

16  essential licenses that "[a] prospective implementer that has requested a license will negotiate on a

17  private ***bilateral*** basis with the patent owner to determine whether they can arrive at a mutually

18  acceptable agreement on RAND terms."  (Ex. 1 at 8.)  Similarly, in a June 14, 2011 submission to

19  the FTC regarding a Patent Standards Workshop, Ms. Marasco and David Heiner, Microsoft's

20  Deputy General Counsel, reiterated that "RAND-based IPR policies provide a flexible framework

21  to help enable ***customized bi-lateral negotiations*** for patent licenses that generally are not limited

22  to just the essential patent claims in connection with a standard."  (Ex. 2 at 3.)

23  Consistent with this understanding, Mr. Heiner testified in *this case* that RAND license

24  terms are typically arrived at through bilateral negotiation:

> Q: You agree that RAND license terms are typically arrived at through bilateral
> negotiation, correct?

> A: Typically, yes.

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 8
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

…

Q: In large part, the parties collectively and bilaterally determine what is RAND in their specific contexts through negotiations, correct?

A: Typically.

(Ex. 9 at 33:6-8; 39:10-13.)  Mr. Heiner also agreed that licensing considerations "would typically be fleshed out *as part of bilateral negotiations* between the [prospective] licensor and [prospective] licensee."  (*Id*. at 32:15-18.)  Finally, Mr. Heiner confirmed that "there will at times be significant contention between the patent owner and implementer about what constitutes reasonable licensing terms, but this is to be expected, as with commercial negotiation on any input cost component, and *has for the most part been readily resolved through bilateral negotiations*."  (*Id*. at 37:10-17.)  Neither Dr. Murphy nor Dr. Simcoe considered this testimony.

**Microsoft's Own Experts.**  Given the overwhelming evidence that the SSOs envision bilateral negotiations of RAND licensing terms, and that this understanding is shared by the industry in general and Microsoft in particular, it is not surprising that even Microsoft's *own experts* – despite the contrary statements in their expert reports – explicitly recognize that RAND terms are the result of bilateral negotiations.  For example, in testifying before the ITC, Dr. Murphy



MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 9
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

In his expert report in this litigation – the expert report in which he concluded that, as a theoretical matter negotiations leading to RAND terms should be viewed through a *multilateral* lens – Professor Simcoe himself conceded that his theory "***does not*** imply that all negotiations should be multilateral," and that "*[m]any SSO intellectual property policies clearly contemplate bilateral negotiation of RAND terms and conditions.*"   (Ex. 7 at ¶ 95.)    Professor Simcoe's recognition that the SSOs *actually* contemplate bilateral, rather than multilateral, negotiations is in accordance with what Professor Simcoe has said in previous publications and obliterates Microsoft's attempt to divert this proceeding into an unsupportable multilateral negotiation.  For example, in comments recently provided to the FTC, Professor Simcoe stated that:

> One approach to the "reasonable" prong of the RAND commitment is to treat it as a promise to forgo lost profits as the approach to calculating damages in patent infringement litigation.   In its place, courts would presumably set reasonable royalty damages based on a ***hypothetical negotiation between a willing licensor and willing licensee***.

(Ex. 11 at 9; *see also id.* at 16.)

Despite these statements, Drs. Murphy, Simcoe, and Lynde now – in the context of their representation of Microsoft in this litigation – assert that RAND terms should be determined based on a multilateral negotiation that does not ever occur or, more obtusely, should be viewed through the "lens" of such a negotiation.

### 2.    Microsoft's Experts' Opinions Are Not Based On A Methodology That Provides Reliable Results

Despite the facts described above showing that RAND terms are determined in the real world through bilateral negotiations and Microsoft experts' previous statements recognizing that a

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 10
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1   bilateral determination is appropriate, Microsoft's experts repeatedly assert that, for the purpose of

2   this litigation, RAND terms should instead be determined based on the undefined concept of a

3   multilateral negotiation.   Microsoft does this to find a way to invoke the low rates offered by

4   patent pools, which Microsoft tries to analogize to a multilateral negotiation.   But patent pools are

5   not a result of a multilateral negotiation as advocated by Microsoft, and they do not in any event

6   justify jettisoning all of the evidence that parties to SSO undertakings negotiate RAND licenses

7   bilaterally in the real world.

8   ████████████████████████████████████████████

9   ████████████████████████████████████████████████

10  ████████████████████████████████████████████████

11  ████████████████████████████████████████████████

12  ████████████████████████████████████████████████

13  ████████████████████████████████████████████████

14  ████████████████████████████████████████████████

15  ████████████████████████████████████████████████

16  ██████████████████████

17      Dr. Simcoe's assignment in this case was also to "articulate an economic framework

18  consistent with accepted economic writings and thinking for evaluating proposed terms and

19  conditions for a license to Motorola's declared essential H.264 and 802.11 patents in light of its

20  [RAND] licensing commitments."  (Ex. 7 at ¶ 6.)  Dr. Simcoe describes "RAND licenses through

21  the *multilateral* ex ante negotiation lens."  (*Id.* at 17, 17-23.)  He states that, "[f]rom an economic

22  perspective, RAND terms and conditions should be thought of as those that would have emerged

23  from *multilateral ex ante* negotiation."  (*Id.* at 2; *see also, e.g.*, Ex. 8 at 1, 4-5, 9-10.)

24      Dr. Murphy's assignment in this case was to "provide an economic framework for

25  analyzing commitments to license [SEPs] on [RAND] terms . . ."  (Ex. 3 at ¶ 2; Ex. 4 at ¶ 1.)  Dr.

26  Murphy repeatedly states in his reports that bilateral negotiations would generally not produce

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    proper RAND terms. And while Dr. Murphy did not explicitly discuss multilateral negotiations in

2    his report or his rebuttal, ██████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████████████████████████

4    ██████████

5          As shown above, the SSO contracts at issue, and the commentary on those contracts,

6    reflect the understanding that RAND terms should be determined based on a methodology that

7    contemplates a bilateral negotiation – not a multilateral negotiation.  Unlike bilateral negotiations,

8    a multilateral negotiation as envisioned by Microsoft's experts does not exist in the real world.

9    And creating a hypothetical multilateral negotiation requires a completely different analysis than,

10   and obviously will produce a different result from, a hypothetical bilateral negotiation.  For

11   example, in this case, a bilateral negotiation would be limited to negotiations between just

12   Motorola and Microsoft, and would be focused only those factors, considerations and facts

13   relevant to these parties and their respective businesses.  When negotiating material terms (e.g.,

14   term, assignability of the agreement, scope of the grant back, field of use, exclusions, carve outs,

15   covered products, etc.), Motorola and Microsoft would emphasize and de-emphasize certain

16   factors, considerations and facts based on each party's business model and would mold the terms

17   of the license accordingly.  Thus, such a negotiation – which ordinarily takes months between just

18   two parties – would reflect compromises and concessions that are specific to Motorola and

19   Microsoft.  This is exactly the type of "flexible framework to help enable customized bi-lateral

20   negotiations for patent licenses" envisioned by the SSOs that Microsoft pointed out in its FTC

21   submission.  (Ex. 2 at 3.)

22         In contrast, a multilateral negotiation – if one could be contrived – would somehow be

23   focused on factors and considerations relevant to all parties to the negotiation (all patent owners

24   and all potential implementers) and therefore would reflect a different set of compromises and

25   concessions leading to a different result.  These differences are exacerbated by the fact that the

26   companies in the multilateral negotiation may have very different business interests, incentives

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 12
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1   and motivations than both Motorola and Microsoft.  Each participant in the negotiation would

2   presumably emphasize and de-emphasize certain factors and considerations to suit its business

3   model and ultimate goals, some of which may be completely irrelevant to Motorola and/or

4   Microsoft.  For example, a participant in the multilateral negotiation with broad product exposure

5   would advocate for rates on the low end of RAND for all other implementers.  Similarly, a

6   participant in the multilateral negotiation that prefers broad adoption of the standard over

7   receiving the full value of its intellectual property may also push for rates on the low end of

8   RAND for all participants. ████████████████████████████████████████

9   ███████████████████████████████████████████████████████████████

10  ███████████████████████████████████████████████████████████████

11  ███████████████████████████████████████████████████████████████

12  ██████████████████████████████████████████████████████[5]

13        There are further problems with the multilateral negotiation proposed by Microsoft's

14  experts and how Microsoft's experts attempt to apply that framework.  Microsoft relies on the

15  MPEG LA H.264 and Via Licensing 802.11 patent pools as a proxy for a multilateral construct.

16  The fact that Microsoft's experts cannot point to an actual "real world" multilateral negotiation

17  and instead attempt to use a patent pool as a proxy illustrates that lack of reliability of their

18  methodology.  And even assuming that pools could be a proxy for a multilateral negotiation,

19  Microsoft's experts rely primarily on just two pools for their analysis.  This is in stark contrast to

20  the nearly 50 actual, bilateral licenses relied on by Motorola's experts.  (*See, e.g.*, Dkt. No. 335 at

21  23.)  The dearth of data points further calls into question whether the opinions of Microsoft's

22  experts are reliable.  Indeed, given their lack of real-world comparables, these opinions are

23  unverifiable.

24  _____

25  [5] Microsoft has made no secret of the fact that its participation in the MPEG LA pool has been about promoting broad use of the H.264 standard, rather than about receiving the true value of its SEPs.  As Dean Hachamovitch, Microsoft's corporate vice president in charge of the Internet Explorer team at Microsoft explained in a May 3, 2010

26  blog post, "Microsoft pledged its patent rights to [the MPEG LA pool] *in order to make its rights broadly available under clear terms, not because it thought this might be a good revenue stream*."  (Ex. 34 at 1.)

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 13
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15     And Microsoft's expert reports lack any rational

16 basis to conclude that the terms of the pool license actually reflect or "mimic" the terms of a

17 hypothetical multilateral negotiation.[6]  (Ex. 7 at 3.)  Indeed, no Microsoft expert has described

18 how patent pools are a reliable proxy for the multilateral *ex ante* negotiation that they imagine.

19     The critical issue is what Motorola and Microsoft would have done to arrive at a license

20 consistent with the IEEE and ITU policies and Motorola's RAND assurances.  Plainly, they would

21 have undertaken the bilateral negotiation contemplated by the SSOs and entirely understood by

22 Microsoft's own executives and others who have negotiated bilateral licenses, rather than

23

24     [6] In addition, the timing of when the MPEG LA and Via Licensing patent pool agreements were negotiated further
demonstrates the unreliability of the conclusions of the opinions of Microsoft's experts.  Microsoft's experts focus on

25 a multilateral negotiation that takes place *before* the standard is adopted.   (*See, e.g.*, Ex. 7 at 3, 22; Ex. 8 at 1; Ex. 5 at
7; Ex. 6 at 2; Ex. 21 at 150-51.)  It is undisputed that the terms of the MPEG LA and Via Licensing agreements were

26 set *after* the standard was adopted.  In the case of Via Licensing, these terms were set more than five years after the
first 802.11 standard was adopted.

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 14
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

attempting to create and employ some unknown and undefined "multilateral" negotiation.  Given

(1) the ubiquitous acceptance by academics, Microsoft's own personnel, and – most importantly –

the LOAs and policies of the SSOs themselves that RAND terms are determined through bilateral

negotiations, (2) the paucity of evidence that supports Microsoft's proposed multilateral

negotiation methodology, and (3) the questionable application of that methodology to the facts of

this case, the opinions of Microsoft's expert are unreliable and will not be helpful to the jury.  Fed.

R. Evid. 702; *Daubert*, 509 U.S. 579.  As such, the reports and testimony of Drs. Murphy, Lynde,

and Simcoe, insofar as they refer to or rely on a multilateral negotiation to determine what the

terms of a RAND agreement should be, should be excluded in accordance with the gatekeeping

functions set forth by the Supreme Court in *Daubert*.  509 U.S. at 589; *see also Freeman*, 498 F.3d

at 901.

## III.    CONCLUSION

The Court has a duty to serve as a gatekeeper and to exclude expert testimony that is based on

an unreliable methodology.  The opinions of Drs. Lynde, Murphy, and Simcoe relating to the

requirement for a multilateral negotiation construct to determine RAND terms is the type of

unreliable evidence the Court has the power to exclude.  Microsoft cannot show that its experts'

opinions regarding multilateral negotiations are based on a sufficient factual foundation – or, indeed,

*any* factual foundation.  The "multilateral" aspects of the reports should be stricken and any

testimony offered by Microsoft's RAND "experts" related to multilateral negotiations in the context

of determining RAND terms also should be excluded.

For the foregoing reasons, Motorola respectfully requests that the Court grant this motion.

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 15
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1      DATED this 27th day of August, 2012.

2                                 Respectfully submitted,

3                                 SUMMIT LAW GROUP PLLC

4                                 By _/s/ Ralph H. Palumbo_

5                                     Ralph H. Palumbo, WSBA #04751
                                    Philip S. McCune, WSBA #21081

6                                     Lynn M. Engel, WSBA #21934
                                    _ralphp@summitlaw.com_

7                                     _philm@summitlaw.com_
                                    _lynne@summitlaw.com_

8                                 By _/s/ K. McNeill Taylor, Jr._

9                                     K. McNeill Taylor, Jr.
                                    MOTOROLA MOBILITY, INC.

10                                    MD W4-150
                                   600 North U.S. Highway 45

11                                    Libertyville, IL  60048-1286
                                   Phone:  858-404-3580

12                                    Fax:  847-523-0727

13                                 And by

14                                    Jesse J. Jenner (_pro hac vice_ )

15                                    Steven Pepe (_pro hac vice_ )
                                   Kevin J. Post (_pro hac vice_)

16                                    Ropes & Gray LLP
                                   1211 Avenue of the Americas

17                                    New York, NY  10036-8704
                                   (212) 596-9046

18                                    _jesse.jenner@ropesgray.com_
                                   _steven.pepe@ropesgray.com_

19                                    _kevin.post@ropesgray.com_

20                                    James R. Batchelder (_pro hac vice_)
                                   Norman H. Beamer (_pro hac vice_ )

21                                    Ropes & Gray LLP
                                   1900 University Avenue, 6th Floor

22                                    East Palo Alto, CA  94303-2284
                                   (650) 617-4030

23                                    _james.batchelder@ropesgray.com_
                                   _norman.beamer@ropesgray.com_

24

25

26

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 16
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Paul M. Schoenhard (*pro hac vice*
Ropes & Gray LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC  20005-3948
(202) 508-4693
*paul.schoenhard.@ropesgray.com*

**Attorneys for Motorola Solutions, Inc., Motorola Mobility, Inc., and General Instrument Corporation**

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 17
CASE NO. C10-1823-JLR

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Arthur W. Harrigan, Jr., Esq.
Christopher T. Wion, Esq.
Shane P. Cramer, Esq.
Calfo Danielson, Harrigan, Leyh & Eakes LLP
*arthurh@calfoharrigan.com*
*chrisw@calfoharrigan.com*
*shanec@calfoharrigan.com*

Richard A. Cederoth, Esq.
Brian R. Nester, Esq.
David T. Pritikin, Esq.
Douglas I. Lewis, Esq.
John W. McBride, Esq.
David Greenfield, Esq.
William H. Baumgartner, Jr., Esq.
David C. Giardina, Esq.
Carter G. Phillips, Esq.
Constantine L. Trela, Jr., Esq.
Ellen S. Robbins, Esq.
Nathaniel C. Love, Esq.
Sidley Austin LLP
*rcederoth@sidley.com*
*bnester@sidley.com*
*dpritikin@sidley.com*
*dilewis@sidley.com*
*jwmcbride@sidley.com*
*david.greenfield@sidley.com*
*wbaumgartner@sidley.com*
*dgiardina@sidley.com*
*cphillips@sidley.com*
*ctrela@sidley.com*
*erobbins@sidley.com*
*nlove@sidley.com*

T. Andrew Culbert, Esq.
David E. Killough, Esq.
Microsoft Corp.
*andycu@microsoft.com*
*davkill@microsoft.com*

DATED this 27th day of August, 2012.

/s/ *Marcia A. Ripley*
Marcia A. Ripley

MOTOROLA MOBILITY'S AND GENERAL INSTRUMENT'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFF'S EXPERTS DRS. LYNDE, MURPHY, AND
SIMCOE - 18
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001