THE HONORABLE JAMES L. ROBART

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>                Plaintiff,<br><br>   vs.<br><br>MOTOROLA, INC., et al.,<br><br>                Defendants.<br>―――――――――――――――――<br>MOTOROLA MOBILITY, INC., et al.,<br><br>                Plaintiffs,<br><br>   vs.<br><br>MICROSOFT CORPORATION,<br><br>                Defendants. | Case No. C10-1823-JLR<br><br>**MICROSOFT'S REPLY RE ITS MOTION FOR LEAVE TO FILE MOTION TO AMEND PROTECTIVE ORDER**<br><br>NOTED: Friday, September 7, 2012 |

**MICROSOFT'S REPLY RE ITS MOTION FOR LEAVE TO FILE MOTION TO AMEND PROTECTIVE ORDER**

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

The RAND trial in this case is set to begin on November 13. Motorola will attempt to convince the Court that a reasonable and non-discriminatory royalty rate for a license to its H.264 and 802.11 standard essential patents is 2.25% of the end product price of certain Microsoft and third-party products. Microsoft will show that the appropriate royalty rate is more in line with the well-established patent pool rates for H.264 and 802.11 patents, which amounts to but a very small fraction of Motorola's demands.

Motorola is expected to rely heavily on certain of its licensing agreements with third parties and expert opinions regarding those agreements.[1] In discovery, Motorola designated this information as for "Outside Attorneys' Eyes Only" under Paragraph 6 of the Protective Order.[2] Thus, at trial, Culbert will be presented with Motorola's licensing agreements and expert analysis for the first time. *See* Protective Order, ¶ 7 (designated in-house counsel "shall not be excluded" from any in-Court proceedings at which confidential information is revealed).

Microsoft's Motion essentially asks that Culbert's access to Motorola's evidence under Paragraph 7 be accelerated so that – in the weeks remaining before trial – he can appropriately fulfill his Rule 11 responsibilities, more thoroughly weigh the strength of Motorola's position for settlement purposes, assist with pre-trial and trial preparations from an informed perspective, and otherwise appropriately manage the litigation.

1. **Good Cause Exists to Modify the Protective Order**

The degree of protection afforded confidential documents is a question committed to the "broad discretion o[f] the trial court." *Seattle Times Co., v. Rhinehart*, 467 U.S. 20, 36 (1984). The court has inherent authority to modify a protective order where good cause is shown. *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir.

---

[1] At the appropriate time, Microsoft intends to move *in limine* to prevent Motorola from introducing evidence of its non-comparable license agreements. Success on that motion would alleviate much of Microsoft's present concerns since Culbert would no longer require access to such information.

[2] Protective Order dated July 21, 2011 (ECF No. 72).

MICROSOFT'S REPLY RE ITS MOTION
FOR LEAVE TO FILE MOTION TO AMEND
PROTECTIVE ORDER  - 1

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

2002)); *see also Halo Electronics, Inc. v. XFMRS, Inc.*, 2012 WL 2238022. *2 (N.D.Cal. 2012) (where party seeks to use confidential materials in separate litigation, modification to protective order "should generally be granted" where "reasonable restrictions on collateral disclosure will continue to protect an affected party's legitimate interests in privacy").

Good cause for modifying a protective order may be found where in-house counsel requires access to confidential information to evaluate settlement options and provide management and oversight of the litigation for the client:

> Plaintiff contends that there is good cause to modify the protective order because disclosure of Defendant's gross sales and net profits/losses to Plaintiff's in-house counsel is necessary for evaluating potential settlement, by evaluating the wisdom of settlement against the potential recovery if this case proceeds to trial.
> …
> Plaintiff notes that there is good cause from a case management perspective as well.  Plaintiff asserts that in-house counsel supervises the litigation of this action at Gerawan and reviews the party's discovery responses.
> …
> The Court finds Plaintiff's argument persuasive.  As a general matter, courts have recognized that disclosure of sensitive financial information to an opponent's in-house counsel may be necessary for evaluating settlement.

*Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*, 2011 WL 2516224, *2 (E.D.Cal. 2011) (citing cases).[3]

Motorola has not shown that the accelerated pre-trial access to evidence requested for Culbert (and his counterpart at Motorola) creates any undue prejudice as a function of his in-house status.  Access to confidential material should not turn merely on the distinction between in-house and outside counsel.  *U.S. Steel Corp. v. U.S.*, 730 F.2d 1465, 1468 (Fed.Cir. 1984) ("the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained, must govern any concern for inadvertent or accidental disclosure.").  If a party's legal department is small and/or the in-

---

[3] The *Gerawan* case is attached hereto as <u>Exhibit A</u>.

**MICROSOFT'S REPLY RE ITS MOTION FOR LEAVE TO FILE MOTION TO AMEND PROTECTIVE ORDER  - 2**

house counsel's role is integrally related to the party's business and competitive operations, limitations on in-house counsel's access are more likely to be warranted. *See, e.g., CytoSport, Inc. v. Vital Pharmaceuticals, Inc*., 2010 WL 1904840 (E.D.Cal. 2010).

Where, as here, in-house counsel is not directly involved in product design, pricing, marketing, or sales, competitive concerns are diminished and greater in-house access to confidential information may be appropriate:

> Here, the record does not show that Gerawan's in-house counsel is engaged in any "competitive decision-making." To be sure, Gerawan is not a large company equipped with a vast army of in-house counsel. However, Plaintiff explicitly asserts that its in-house counsel does not serve any executive or non-legal functions at Gerawan. More importantly, Plaintiff asserts that in-house counsel does not provide advice to Gerawan on pricing or product design; is not involved in product development, marketing, or sales; does not have an ownership interest in Gerawan; and is not related to a principal of Gerawan.

*Gerawan*, 2011 WL 2516224, *4 (citations omitted). *See also Carpenter Technology Corp. v. Armco, Inc*., 132 F.R.D. 24, 27-28 (E.D.Pa. 1990) (allowing one in-house counsel without competitive decision-making responsibilities access to defendant's confidential information).

Here, Microsoft is requesting that Culbert and Microsoft's outside counsel have equal pre-trial access to the evidence.[4] As with the in-house counsel in *Gerawan* (and *Carpenter*), Culbert does not serve any executive or non-legal functions at Microsoft relating to product design, development, pricing, marketing or sales.[5] Additionally, as the Court is aware, Microsoft is a large company with tens of thousands of employees and hundreds of in-house counsel. In this environment, disclosure of Motorola's licensing agreements and related materials to in-house counsel like Culbert – whose responsibilities relate primarily to oversight of numerous ongoing patent litigation activities (which includes advising management in

---

[4] To be clear, Microsoft does not contend that Culbert requires access to Motorola's source code (governed by Paragraphs 21-26 of the Protective Order), but rather that he should have access to the "licensing or other commercially sensitive financial information" designated by Motorola as CONFIDENTIAL FINANCIAL INFORMATION – OUTSIDE ATTORNEYS' EYES ONLY under Paragraph 6 of the Protective Order.
[5] By signing this submission – as the Court has required – Culbert attests to the accuracy of this representation.

**MICROSOFT'S REPLY RE ITS MOTION
FOR LEAVE TO FILE MOTION TO AMEND
PROTECTIVE ORDER  - 3**

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

connection with risk exposure and possible settlement opportunities) and provision of legal advice relating to IP policy implementation – does not create an undue risk of competitive harm. In any event, such a risk would be substantially mitigated by Culbert's express commitment to adhere to the terms of the Protective Order, including existing restrictions on his use and disclosure of confidential information.

Additionally, Culbert is counsel of record, and has been required by the Court to sign all submissions to the Court. Under Rule 11(b), by signing submissions, counsel represent that they are not made for an improper purpose, are justified under the law, and are otherwise supported by the evidence. As Motorola notes, these representations are to be based on counsel's knowledge and belief, "formed after an inquiry reasonable under the circumstances." Microsoft asserts that it is "reasonable under the circumstances" to permit Mr. Culbert to have pre-trial access to Motorola's evidence, in order to give meaning and weight to these Rule 11 representations – as well as for the other reasons stated herein and in Microsoft's opening brief.

### 2. Motorola Misinterprets Paragraph 7 of the Protective Order.

Under Paragraph 7 of the Protective Order, Culbert will have access to *all* confidential information that may be disclosed at trial or other in-Court proceedings. The expanded access Microsoft seeks is an incremental, but critical, modification to the Protective Order to ensure that Culbert has access to Motorola's evidence *in advance of trial*. The requested advance access is necessary for Culbert to properly sponsor submissions to the Court, to evaluate potential settlement options, and to otherwise manage the litigation.

Paragraph 7 of the Protective Order permits the parties' designated in-house counsel to attend all in-Court proceedings. Paragraph 7 does not state that in-house counsel may attend only *some* confidential proceedings; the parties stipulated that they "shall not be excluded from any confidential portion of the trial or other in-Court proceedings[.]" (Emphasis added)

MICROSOFT'S REPLY RE ITS MOTION
FOR LEAVE TO FILE MOTION TO AMEND
PROTECTIVE ORDER - 4

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

The privilege of attending <u>all</u> confidential portions of court proceedings comes with obligations, including restrictions (set forth in Paragraph 6) on further use and disclosure of confidential information revealed in court:

> *Subject to the restrictions in paragraph 6 above*, the two in-house counsel designated therein shall not be excluded from any confidential portion of the trial or other in-Court proceedings in this case.  (Emphasis added)

Without any further explanation, Motorola claims that the "subject to" language in Paragraph 7 conflicts with, overrides, and negates the "shall not be excluded from any confidential portion" language that follows.  Motorola interprets the "subject to" clause to mean that in-house counsel "*are excluded* from confidential portions of Court proceedings involving Confidential Financial Information designated "Outside Counsel Attorneys' Eyes Only."  Mot. Opp. at 2 (emphasis in original).  The parties could have drafted Paragraph 7 to exclude designated in-house counsel from certain proceedings.  But they did not.

The limited effect of the "subject to" clause in Paragraph 7 requires examination of Paragraph 6.  Paragraph 6:  (1) identifies the in-house Counsel for each party to whom certain confidential information may be disclosed; (2) identifies certain confidential <u>written materials</u> that may be disclosed (*e.g.,* "responses to interrogatories, answers to requests for admission, submissions to court, expert reports …, opinions and orders of the Court" – to the extent they do not reveal "outside attorneys' eyes only" information); and (3) imposes the following <u>restrictions</u> on further disclosure and use of such confidential information:

> (ii)  not to reveal such Confidential Business Information to anyone other than another person designated in paragraph 3; and
>
> (iii)  to utilize such Confidential Business Information solely for purposes of this action.

Nothing in Paragraph 6 purports to exclude in-house Counsel from any in-Court proceedings.  The most reasonable reading of the "subject to the restrictions in paragraph 6"

**MICROSOFT'S REPLY RE ITS MOTION
FOR LEAVE TO FILE MOTION TO AMEND
PROTECTIVE ORDER  - 5**

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1  clause is that it simply extends the same <u>restrictions on use and disclosure</u> of confidential

2  information disclosed *in documents* (governed by ¶ 6) to any confidential information

3  disclosed *in court* (governed by ¶ 7).  *I.e*., in-house counsel's ability to use and disclose

4  confidential information is similarly restricted whether that information was obtained pre-trial

5  from written materials or via attendance at trial.  Having signed Attachment A to the Protective

6  Order, Microsoft's in-house counsel – including Culbert – are bound by these restrictions.

7        **3.**      <u>**Motorola Has Provided No Evidence of Third-Party Reliance**</u>

8        Motorola has offered no evidence of any third-party who produced licensing documents

9  in reliance on the terms of the Protective Order issued in this case on July 21, 2011.  Instead, it

10  has submitted correspondence between Motorola's counsel and two third parties relating to

11  production of materials *in separate litigation* from April 2010 (before commencement of this

12  lawsuit) and January 2011 (seven months prior to issuance of the Protective Order).

13        In July 2011, this Court could have entered a Protective Order consistent with the

14  Amended Protective Order Microsoft is requesting – or some other version that provided in-

15  house counsel with access to Motorola's confidential financial and licensing information.

16  Prior to July 2011, no third party could have relied on a yet-to-be issued Order.  Motorola has

17  not identified any third-party licensee who produced licensing documents in reliance on the

18  terms of the Protective Order.  Moreover, Motorola's main evidence on which it and its experts

19  intend to rely at the RAND trial is *based on its own licensing documents* – not materials that

20  Motorola needed to gather from its partners.

21        Even if Motorola had identified any third party who had relied on the actual terms of

22  the Protective Order entered in this case, those third parties would have (or should have)

23  recognized that, under Paragraph 7, the substance of their confidential materials could be

24  disclosed to Microsoft's in-house counsel at trial or any other in-Court proceeding.  No third

25  party has objected to such access in the 14 months since issuance of the Protective Order.

MICROSOFT'S REPLY RE ITS MOTION
FOR LEAVE TO FILE MOTION TO AMEND
PROTECTIVE ORDER  - 6

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1 DATED this 7th day of September, 2012.

2                      CALFO HARRIGAN LEYH & EAKES LLP

3

4      By  *s/ Arthur W. Harrigan, Jr.*
            Arthur W. Harrigan, Jr., WSBA #1751
5           Christopher Wion, WSBA #33207
            Shane P. Cramer, WSBA #35099

6
      By  *s/ T. Andrew Culbert*
7           T. Andrew Culbert
            David E. Killough
8           MICROSOFT CORPORATION
            1 Microsoft Way
9           Redmond, WA  98052
            Phone:  425-882-8080
10          Fax:  425-869-1327

11
            David T. Pritikin
12          Richard A. Cederoth
            Constantine L. Trela, Jr.
13          William H. Baumgartner, Jr.
            Ellen S. Robbins
14          Douglas I. Lewis
            David C. Giardina
15          John W. McBride
            David Greenfield
16
            SIDLEY AUSTIN LLP
17          One South Dearborn
            Chicago, IL  60603
18          Phone:  312-853-7000
            Fax:  312-853-7036
19
            Carter G. Phillips
20          Brian R. Nester
21
            SIDLEY AUSTIN LLP
22          1501 K Street NW
            Washington, DC  20005
23          Telephone:  202-736-8000
            Fax:  202-736-8711
24          Counsel for Microsoft Corp.

25

**MICROSOFT'S REPLY RE ITS MOTION
FOR LEAVE TO FILE MOTION TO AMEND
PROTECTIVE ORDER  - 7**

# CERTIFICATE OF SERVICE

I, Linda Bledsoe, swear under penalty of perjury under the laws of the State of Washington to the following:

1. I am over the age of 21 and not a party to this action.

2. On the 7th day of September, 2012, I caused the preceding document to be served on counsel of record in the following manner:

**Attorneys for Motorola Solutions, Inc., and Motorola Mobility, Inc.:**

| | |
|---|---|
| Ralph Palumbo, WSBA #04751 | |
| Philip S. McCune, WSBA #21081 | _____ Messenger |
| Lynn M. Engel, WSBA #21934 | _____ US Mail |
| Summit Law Group | _____ Facsimile |
| 315 Fifth Ave. South, Suite 1000 | __X__ ECF |
| Seattle, WA 98104-2682 | |
| Telephone: 206-676-7000 | |
| Email: Summit1823@summitlaw.com | |

| | |
|---|---|
| Steven Pepe (*pro hac vice*) | _____ Messenger |
| Jesse J. Jenner (*pro hac vice*) | _____ US Mail |
| Ropes & Gray LLP | _____ Facsimile |
| 1211 Avenue of the Americas | __X__ ECF |
| New York, NY 10036-8704 | |
| Telephone: (212) 596-9046 | |
| Email: steven.pepe@ropesgray.com | |
| Email: jesse.jenner@ropesgray.com | |

| | |
|---|---|
| Norman H. Beamer (*pro hac vice*) | _____ Messenger |
| Ropes & Gray LLP | _____ US Mail |
| 1900 University Avenue, 6th Floor | _____ Facsimile |
| East Palo Alto, CA 94303-2284 | __X__ ECF |
| Telephone: (650) 617-4030 | |
| Email: norman.beamer@ropesgray.com | |

MICROSOFT'S REPLY RE ITS MOTION
FOR LEAVE TO FILE MOTION TO AMEND
PROTECTIVE ORDER - 8

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

| | | |
|---|---|---|
| Paul M. Schoenhard (*pro hac vice*) | _____ | Messenger |
| Ropes & Gray LLP | _____ | US Mail |
| One Metro Center | _____ | Facsimile |
| 700 12th Street NW, Suite 900 | __X__ | ECF |
| Washington, DC  20005-3948 | | |
| Telephone:  (202) 508-4693 | | |
| Email: Paul.schoenhard@ropesgray.com | | |

DATED this 7th day of September, 2012.

    *s/ Linda Bledsoe*
LINDA BLEDSOE

**MICROSOFT'S REPLY RE ITS MOTION
FOR LEAVE TO FILE MOTION TO AMEND
PROTECTIVE ORDER  - 9**

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

# EXHIBIT A



Page 1

Not Reported in F.Supp.2d, 2011 WL 2516224 (E.D.Cal.)
**(Cite as: 2011 WL 2516224 (E.D.Cal.))**

H
Only the Westlaw citation is currently available.

United States District Court,
E.D. California.
GERAWAN FARMING, INC., Plaintiff,
v.
PRIMA BELLA PRODUCE, INC., Defendant.

No. 1:10–cv–00148 LJO JLT.
June 22, 2011.

Jill M. Pietrini, Manatt, Phelps & Phillips, LLP, Los Angeles, CA, David C. Spellman, Lane Powell PC, Seattle, WA, Julianne Ross Davis, Lane Powell PC, Portland, OR, for Plaintiff.

Paul D. Swanson, Tiffany Hallen Scott, Lane Powell PC, Seattle, WA, Thomas A. Dirksen, Sole Practitioner, Westlake Village, CA, for Defendant.

ORDER GRANTING PLAINTIFF'S MOTION TO AMEND THE PROTECTIVE ORDER
JENNIFER L. THURSTON, United States Magistrate Judge.

*1 This matter now comes before the Court on Plaintiff's motion to amend the protective order. Plaintiff seeks to allow disclosure of Defendant's gross sales (annual and cumulative in both volume and dollars) and net profits/losses (annual and cumulative) to Plaintiff's in-house counsel, Mr. Mallery. While Defendant has agreed to allow disclosure of its gross sales information to in-house counsel, Defendant has declined to allow disclosure of its net profits/losses.

Upon consideration of the parties' submitted papers and arguments at hearing, the Court **GRANTS** the pending motion.

**I. BACKGROUND**

This is an action for trademark infringement, trademark dilution, trademark cancellation, and unfair competition. Plaintiff seeks to recover damages and injunctive relief for infringement on its "PRIMA" trademarks (United States Trademark Registration Nos. 1,441,378 and 3,592,505), which are used in the distribution of fresh produce. (Doc. 13.) Defendant contests Plaintiff's allegations and brings a counter-claim to cancel United States Trademark Registration Nos. 1,441,378, 3,592,505, and 1,585,993. (Doc. 21.)

On February 25, 2011, the parties stipulated to, and the Court granted, a civil protective order pursuant to Federal Rule of Civil Procedure 26(c). (Doc. 35.) Under the protective order, any party or non-party can designate materials deemed highly sensitive as "Highly Confidential—Attorney's Eyes Only." (*Id.* at §§ 2.6, 5.2.) Materials deemed "Highly Confidential—Attorney's Eyes Only" generally include sensitive technical information, trade secrets, source codes, certain financial information, and strategic business plans. (*Id.* at § 2.6.) Access to such designated materials is generally limited to the receiving party's litigation counsel for this action, independent experts, the Court, and the original author of the materials. (*Id.* at § 7.3.)

On May 19, 2011, Plaintiff's litigation counsel contacted Defendant's attorneys to request that the protective order be amended via stipulation. (Doc. 90 at ¶ 2.) The amendment would have allowed disclosure of Defendant's gross sales and net profits/losses to Plaintiff's in-house counsel for the purpose of settlement and trial. (*Id.*) Defendant agreed only to the disclosure of its gross sales information. (*Id.* at ¶ 3.) Thus, on May 27, 2011, Plaintiff filed the instant motion to amend the protective order. (Doc. 86.) The parties filed a joint statement regarding the dispute on June 13, 2011 (Doc. 89) and appeared for hearing on the matter on June 20, 2011.

**II. DISCUSSION**

A court may issue, upon motion and a showing of good cause, a protective order to shield any party from undue burdens arising from discovery. Fed.R.Civ.P. 26(c)(2). Once the protective order has been entered, a party seeking to modify the protective order carries the initial burden of showing "good cause." *CytoSport, Inc. v. Vital Pharmaceuticals, Inc.,* No. CIV S–08–2632 FCD/GGH, 2010 U.S. Dist. LEXIS 45602, at *6, 2009 WL 1444535 (E.D.Cal. May 10, 2010) (citations omitted). The moving party must show how the protective order in its current form prejudices its ability to litigate its case. *Id.* If the moving party meets its burden, the court must then

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 2516224 (E.D.Cal.)
**(Cite as: 2011 WL 2516224 (E.D.Cal.))**

balance the need for modification against any risk of injury to the non-moving party, including the risk of inadvertent disclosure of otherwise confidential material. *See id.* (citing *Intel Corp. v. VIA Techs., Inc.,* 198 F.R.D. 525, 528 (N.D.Cal.2000)). [FN1]

> FN1. The Court notes that § 7.3 of the stipulated Protective Order signed by this Court on February 25, 2011, anticipates the Court's authority to issue orders allowing disclosure of "Highly Confidential–Attorneys' Eyes Information." (Doc. 35 at 11)

**A. Good Cause**

*2 Plaintiff contends that there is good cause to modify the protective order because disclosure of Defendant's gross sales and net profits/losses to Plaintiff's in-house counsel is necessary for evaluating potential settlement, by evaluating the wisdom of settlement against the potential recovery if this case proceeds to trial. (Doc. 89 at 2–3.) Moreover, counsel does not have settlement authority. Thus, unless counsel is able to disclose the profit information to Mr. Mallery, he cannot obtain settlement authority.

Plaintiff notes that there is good cause from a case management perspective as well. Plaintiff asserts that in-house counsel supervises the litigation of this action at Gerawan and reviews the party's discovery responses. (*Id.* at 13.) Plaintiff argues in this regard that it is unable to fully respond to Defendant's discovery request for damage calculations because in-house counsel is barred from reviewing the calculations under the protective order. (*Id.*)

The Court finds Plaintiff's argument persuasive. As a general matter, courts have recognized that disclosure of sensitive financial information to an opponent's in-house counsel may be necessary for evaluating settlement. *See, e.g., Shared Memory Graphics, LLC v. Apple, Inc.,* No. C–10–2475 VRW (EMC), 2010 U.S. Dist. LEXIS 125184, at *8, 2010 WL 4704420 (N.D.Cal. Nov. 12, 2010) (finding that the protective order should permit in-house counsel access to sensitive sales and profit information so that in-house counsel could fully participate in settlement negotiations); *Vasudevan Software, Inc. v. International Business Machines,* No. C09–05897 RS (HRL), 2010 U.S. Dist. LEXIS 100835, at *7–8, 2010 WL 3629830 (N.D.Cal. Sept. 14, 2010) ("[T]he Court is sensitive to the fact that in-house counsel to a party, in most circumstances, needs to have some access to the opposing party's confidential financial information to understand the potential damages at issue and thus make an informed decision with respect to any possible settlement of the lawsuit."). The need for such disclosure is particularly acute here because Mr. Mallery will play a central role in any settlement decision by Plaintiff. [FN2] Plaintiff is relying in large part on Mr. Mallery to make all settlement recommendations, as made evident by his participation in the settlement conference held on February 14, 2011, his regular attendance at depositions and his assistance in preparing discovery responses.

> FN2. All counsel agreed that settlement is still an option.

Plaintiff's heavy reliance on Mr. Mallery to make a settlement recommendation in this case, not only demonstrates the prejudice that would result if he were denied access to profit information, but it also differentiates this case from others where disclosure of confidential information to an in-house counsel was not deemed to be good cause. For example, in *Intel,* the plaintiff sought to modify a protective order to allow disclosure of all confidential materials to its senior in-house counsel. 198 F.R.D. at 528. The plaintiff maintained that the "specialized knowledge of in-house counsel was necessary to supervise the litigation." *Id.* In-house counsel, according to the plaintiff, needed to be in a position to understand the issues, assess the strength of the case, and plan general strategy. *Id.* The court, however, disagreed. The court found that the plaintiff's general and sudden need for its in-house counsel to participate in the litigation did not constitute good cause. *Id.* at 528–29. The plaintiff's was already adequately represented by its outside counsel. *Id.*

*3 Defendant attempts to undermine the relevance of any disclosure of net profits/losses. (Doc. 89 at 15–17.) Defendant argues that it has already agreed to the disclosure of sales information to in-house counsel. (*Id.* at 15.) Defendant asserts that disclosure of its net profits/losses would not provide any additional information that would meaningfully aid in-house counsel in evaluating Plaintiff's damages or settlement position. (*Id.* at 16–17.) Defendant explains that if Plaintiff succeeded in this action and obtained an award for disgorgement of profits, Plaintiff would not be entitled to all of Defendant's net profits. (*Id.* at

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 2516224 (E.D.Cal.)
**(Cite as: 2011 WL 2516224 (E.D.Cal.))**

16.) Defendant asserts that Plaintiff would only be entitled to recover those profits that have a sufficient nexus with the alleged infringement activity. (*Id.*) Thus, in Defendant's view, its total net profits/losses is a poor measurement of what Plaintiff may actually recover, even if it is successful in this case. (*Id.* at 16–17.)

It appears that, in response to discovery requests, PBI has produced its total gross sales amounts, rather than limiting disclosure only to those activities "that have a sufficient nexus with the alleged infringement activity." (Doc. 89 at 15–17.) In this same vein, apparently, PBI has produced its net profits/losses for all sales activities. *Id.* Thus, the only information provided to the Court is that this is the information upon which Plaintiff's settlement decisions must be based. Had PBI demonstrated that it produced only gross sales and net profit/losses for those activities that are tied to the alleged infringing conduct, the Court would likely be issuing a different order. However, the Court cannot reformulate the discovery efforts or the information that the parties have chosen to share in addressing this motion.

On the other hand, under 15 U.S.C. § 1117(a), a plaintiff may recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." In awarding profits, the court is obligated to assess the defendant's profits based upon evidence of defendant's sales, as proven by the plaintiff, and "all elements of cost or deduction claimed," as proven by the defendant. 15 U.S.C. § 1117(a). Based upon the circumstances of the matter, the court may award "any sum above the amount found as actual damages, not exceeding three times such amount" so long as the award is, in the court's discretion, just. *Id.* Thus, given this procedure, the Court agrees with Defendant that any award in this case will not simply be the amount of profit that is claimed by Defendant in its financial documents. Nevertheless, Defendant's past, reported profit figures are pertinent because they provide Plaintiff with a basis upon which to evaluate the potential recovery against the risks of trial and, therefore, to develop a settlement strategy.

Finally, Defendant argues that Plaintiff cannot recover profits under § 1117(a) because Plaintiff cannot prove willful infringement. (Doc. 89 at 14–15.) However, whether Plaintiff can ultimately prove willful infringement (or whether a showing of willful conduct is even required for an accounting remedy) is a matter for another day. The Court declines Defendant's invitation to use this discovery proceeding to evaluate the merits of Plaintiff's case.

**B. Risk of Injury**

**\*4** The predominant risk of injury to Defendant under the proposed amendment is the potential for inadvertent disclosure of confidential material by in-house counsel once this litigation concludes. As Defendant is quick to note, "in-house counsel who is exposed to a competitor's confidential information often cannot simply forget what he or she has learned[.]" (Doc. 89 at 17) (quoting *Vasudevan,* 2010 U.S. Dist. LEXIS 100835, at \*8, 2010 WL 3629830.)

To evaluate the risk of inadvertent disclosure by counsel, a court must examine "all the risks and safeguards surrounding inadvertent disclosure" on a counsel-by-counsel basis. *Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465, 1470 (9th Cir.1992). A "crucial factor" in this determination is the relationship between counsel and the party demanding access to confidential material. *Id.* (citing *U.S. Steel Corp. v. United States,* 730 F.2d 1465, 1468 (Fed.Cir.1984)). The risk of inadvertent disclosure is particularly acute when counsel is engaged in "competitive decisionmaking" for the party; "that is, [when counsel advises] on decisions about pricing or design 'made in light of similar or corresponding information about a competitor.' " *Brown Bag,* 960 F.2d at 1470 (quoting *U.S. Steel,* 730 F.2d at 1468 n. 3)). Other relevant factors include the sensitivity of the materials at issue and the demanding party's ability to develop its case through other discovery. *Brown Bag,* 960 F.2d at 1470.

Here, the record does not show that Gerawan's in-house counsel is engaged in any "competitive decisionmaking." To be sure, Gerawan is not a large company equipped with a vast army of in-house counsel. *See CytoSport,* 2010 U.S. Dist. LEXIS 45602, at \* 10–11, 2009 WL 1444535 (the risk of inadvertent disclosure may be compounded where the demanding party is a relatively small company with few in-house counsel). However, Plaintiff explicitly asserts that its in-house counsel does not serve any executive or non-legal functions at Gerawan. (Doc. 90 at ¶ 5.) More importantly, Plaintiff asserts that in-house counsel does not provide advice to Gerawan on pricing or product design; is not involved in

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 2516224 (E.D.Cal.)
**(Cite as: 2011 WL 2516224 (E.D.Cal.))**

product development, marketing, or sales; does not have an ownership interest in Gerawan; and is not related to any principal of Gerawan. (*Id.*)

In the face of Plaintiff's assertions, Defendant has not provided convincing evidence showing that in-house counsel is insufficiently removed from Gerawan's strategic decisionmaking. Defendant points to a January 7, 2011 article published in the *Reedley Exponent* to show that Mr. Mallery "wears more than one hat for Gerawan." (Doc. 89 at 17 n.5.) The article contains several quotes from in-house counsel and refers to him as "corporate counsel for Gerawan Farming and general project manager." (Doc. 91, Ex. 2.) However, there is no indication in the article regarding the meaning of "general project manager." Nor has Defendant attempted to verify this information or explain what responsibilities might be associated with a "general project manager." Notably, the article speaks only of Gerawan's new ventures in the *mining* industry. (*Id.*) Thus, even if in-house counsel was somehow involved in these unrelated endeavors, the Court is hard-pressed to see how this is relevant to the issue now before the Court.[FN3]

> [FN3.] More importantly, the Court has been provided no insight into why Defendant believes that Mr. Mallery, as an officer of the Court, would not abide by the protective order or would ignore the very serious sanctions that this Court would impose if a willful violation occurred.

**\*5** Even assuming that Mr. Mallery has some indirect effect on competitive decisionmaking, inadvertent disclosure does not pose a grave threat to Defendant. The only confidential information at issue here is Defendant's past net profits/losses. This is not a situation where Defendant is attempting to protect trade secrets or sensitive technology components contained in its products. As another court recognized, where disclosure involves focused financial information, the risk to the party opposing the disclosure is "substantially lessened." *Shared Memory Graphics,* 2010 U.S. Dist. LEXIS 125184, at *7, 2010 WL 4704420; *cf. Intel,* 198 F.R.D. at 530 (disclosure of the technical aspects of products, licensing agreements, and marketing information may provide the party seeking disclosure a real competitive advantage). Thus, balancing the factors set forth in *Brown Bag,* the Court concludes that the risk of injury to Defendant, including the risk of inadvertent disclosure of confidential material, does not outweigh Plaintiff's need for modifying the protective order in this case.

**III. CONCLUSION**
In sum, Plaintiff has shown good cause for modifying the protective order in this case. Access to Defendant's gross sales and net profits/losses by Plaintiff's in-house counsel is critical to evaluating settlement options. In the face of this need, the risk of inadvertent disclosure of confidential material by in-house counsel is slight. In-house counsel appears to be adequately cordoned off from engaging in any "competitive decisionmaking."

Accordingly, it is **HEREBY ORDERED:**

1. According to § 7.3 of the Stipulated Protective Order, Plaintiff's May 27, 2011 motion to amend the protective order (Doc. 86) is **GRANTED;**

2. Plaintiff's counsel may disclose to Plaintiff's in-house counsel, Michael Mallery Defendant's annual and aggregate gross sales (in dollars) and Defendant's annual and aggregate net profits and/or net losses;

3. Before the disclosure occurs, Mr. Mallery **SHALL** sign the "Consent to be Bound by Protective Order Highly Confidential—Attorneys' Eyes Only Material" form that is attached to the stipulated Protective Order as Exhibit B.

IT IS SO ORDERED.

E.D.Cal.,2011.
Gerawan Farming, Inc. v. Prima Bella Produce, Inc.
Not Reported in F.Supp.2d, 2011 WL 2516224 (E.D.Cal.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.