HONORABLE JAMES L. ROBART

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MOTOROLA INC., et al.,<br><br>　　　　　Defendant. | No. C10-1823-JLR<br><br>**REDACTED**<br><br>MICROSOFT'S REPLY IN SUPPORT OF ITS RULE 702 MOTION TO PRECLUDE TESTIMONY BY CHARLES R. DONOHOE AND DR. R. SUKUMAR |
| MOTOROLA MOBILITY, INC., et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>MICROSOFT CORPORATION,<br><br>　　　　　Defendant. | Noted: September 10, 2012<br><br>**ORAL ARGUMENT REQUESTED** |

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY CHARLES R. DONOHOE AND
DR. R. SUKUMAR

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I.   DONOHOE'S TESTIMONY SHOULD BE EXCLUDED. ........................................ 2

    A.   Donohoe's Analysis Violates The Entire Market Value Rule. ............................ 2

    B.   Donohoe's Consideration Of Motorola's Prior Licenses Is Unreliable Because They Provide No Evidence Of "Royalties Received" For Motorola's 802.11 And H.264 Standard-Essential Patents. ........................................................................... 5

    C.   Donohoe Valued Hold-Up, Not Motorola's Technical Contributions. ............... 8

    D.   Donohoe's "Consideration" Of *Georgia-Pacific* Factors Leaves Motorola's 2.25% Demand Untouched. ................................................................................ 10

II.  R. SUKUMAR'S TESTIMONY SHOULD BE EXCLUDED. ................................ 10

CONCLUSION ................................................................................................................... 12

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY CHARLES R. DONOHOE AND
DR. R. SUKUMAR

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
— F.3d —, 2012 WL 3758093 (Fed. Cir. Aug. 30, 2012) .................................. 2, 3, 4, 5, 7, 9

*ResQNet.com, Inc. v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010) ........................................................................................... 9

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011) ......................................................................................... 3

*Whitserve, LLC v. Computer Packages, Inc.*,
— F.3d —, 2012 WL 3573845 (Fed. Cir. Aug. 7, 2012) ................................................. 10

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY CHARLES R. DONOHOE AND
DR. R. SUKUMAR

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

# INTRODUCTION

Motorola responds to Microsoft's *Daubert* motion with straw man arguments that sidestep the real issues. Microsoft's argument is not, as framed by Motorola, that a modified *Georgia-Pacific* analysis is an inherently unreliable methodology for determining a RAND royalty. Microsoft's argument is that, even accepting that framework, Charles Donohoe utterly failed to apply the *Georgia-Pacific* factors and related reasonable royalty law in any recognized, principled, or sound way.[1] These errors do not merely go to the weight of his proposed testimony, but to the reliability of his methodology.

Motorola concedes, as it must, that principles of reasonable royalty law like the Entire Market Value Rule ("EMVR") limit a patent holder's recovery in an infringement action, but argues illogically that Donohoe can disregard them in the RAND royalty context. If that premise were accepted, a RAND commitment would have the perverse effect of freeing the patent holder from the normal legal restraints aimed at insuring that royalties awarded are reasonable, and allowing it to tax features in complicated products that bear no relationship to the patent. Motorola offers no principle of law or economics that would justify throwing the long-recognized EMVR overboard in the RAND royalty context, as it admits Donohoe did.

Moreover, having pinned his opinions on a *Georgia-Pacific* analysis, Donohoe also utilized an unreliable methodology by not following the basic requirements for such an analysis: he relied on licenses that are not comparable, used Motorola's unilateral demand for 2.25% as both his starting point and his conclusion, and made no quantifiable adjustments to that demand even as he claimed to consider weigh various *Georgia-Pacific* factors. While Donohoe purported to apply a "modified" *Georgia-Pacific* analysis, he plainly did not, and

---

[1] The Court need not reach the question of whether a hypothetical negotiation informed by *Georgia-Pacific* factors provides a proper analytical framework for determining a RAND royalty. (*See* Dkt. No. 396, Microsoft's R. 702 Mot. To Preclude Testimony By Charles R. Donohoe And Dr. R. Sukumar ("Br.") at 5 n. 2.) Motorola's defense of this approach in the abstract (*see* Dkt. No. 403, Motorola Mobility's and General Instrument's Opp. to Microsoft's R. 702 Mot. To Preclude Testimony By Charles R. Donohoe And Dr. R. Sukumar ("Opp") 1–4) are simply nonresponsive and irrelevant to the arguments presented.

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY CHARLES R. DONOHOE AND
DR. R. SUKUMAR - 1

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1  worse, did not even try to justify any of these departures as warranted by RAND royalty
2  considerations. These departures are nothing more than a glaring failure to follow the
3  methodology that Donohoe said he would apply, and that reasonable royalty law requires.

4  As for Dr. R. Sukumar, Motorola's opposition offers no response to the argument that
5  he biased his survey analysis toward higher valuations for standard-compliant features of
6  Microsoft's Xbox. For that reason alone, in addition to other, independent methodological
7  flaws in Sukumar's survey, his testimony is unreliable and irrelevant to any issue in this case.

## ARGUMENT

### I. DONOHOE'S TESTIMONY SHOULD BE EXCLUDED.

The Federal Circuit's recent decision in *LaserDynamics, Inc. v. Quanta Computer, Inc.*, — F.3d —, 2012 WL 3758093 (Fed. Cir. Aug. 30, 2012) makes clear that determining a reasonable royalty through consideration of *Georgia-Pacific* factors requires following the *entire* body of law that governs such determinations—in particular, the EMVR, and the requirement that only comparable licenses be considered. *See id.* at *11–14, *22–25. Having invoked reasonable royalty law as providing his governing principles, Donohoe could not depart from *Georgia-Pacific* without, at the very least, providing sound reasons grounded in law or economics as to why aspects of that law were being ignored. But he did not. Instead, Donohoe cherry-picked from patent damages law and simply disregarded without explanation those aspects he found inconvenient. This approach is the epitome of unreliable methodology.

### A. Donohoe's Analysis Violates The Entire Market Value Rule.

Motorola identifies no evidence that the 802.11 and H.264 standards, or any of Motorola's patents form the basis of customer demand for Microsoft's products. Instead, Motorola argues that Donohoe was free to ignore the EMVR, but the law is clear that he was not. "[T]he entire market value rule acts as a check to ensure that the royalty damages being sought under 35 U.S.C. § 284 are in fact 'reasonable' in light of the technology at issue."

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY CHARLES R. DONOHOE AND
DR. R. SUKUMAR - 2

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

*LaserDynamics*, 2012 WL 3758093, at *11. The issue is not, as Motorola presents it, that Donohoe "did not fully account for" the EMVR (Opp. 17)—the issue is that he completely failed to apply it, and that his analysis violates it.[2] Motorola argues that the rule "applies only in the context of patent infringement damages" and claims that Microsoft "points to nothing which indicates that the EMVR must be applied when determining a licensing royalty rate resulting from a private, bilateral negation [*sic*]." (Opp. 18.) Motorola's position makes no sense: in the Federal Circuit's cases applying the EMVR, the rule serves as a necessary restraint on the determination of a reasonable royalty by experts who propose royalties modeled *as the outcome of a hypothetical, bilateral negotiation*—just as Donohoe claimed to do here. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1312, 1318–21 (Fed. Cir. 2011). And Motorola offers no explanation for how a royalty applied to the entirety of a complex multi-component product can be unreasonable in the context of *Georgia-Pacific* analysis but reasonable in the context of RAND. Moreover, it is Motorola that invoked *Georgia-Pacific* in the first place, only to jettison aspects it found unfavorable. (*See* Opp. 3–4, 8–12.)

Motorola's attempts to deflect the Federal Circuit's EMVR cases like *Uniloc*—claiming they address "damages, rather than licensing negotiations," or that their only concern is "jury prejudice" (Opp. 19 n. 18)—entirely fail:

> We reaffirm that *in any case involving multi-component products*, patentees may not calculate damages based on sales of the entire product, as opposed to the smallest salable patent-practicing unit, without showing that the demand for the entire product is attributable to the patented feature.

*LaserDynamics*, 2012 WL 3758093, at *12. Xbox and Windows are multi-component products, and because Motorola concedes it has no evidence that the use of its patents forms the basis for customer demand for these products, Donohoe's use of a royalty base of Xbox and Windows sales renders his conclusion unreasonable and unreliable as a matter of law.

---

[2] Michael Dansky, who provided Donohoe with ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*see* Dkt. No. 398 Ex. 2 (Donohoe Rpt.) ¶¶ 171–72, 183–84) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Second Wion Decl. Ex. 6 (Dansky Dep.) 105:24–106:5.

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY CHARLES R. DONOHOE AND
DR. R. SUKUMAR - 3

Motorola offers the additional excuse that "economics or past licensor or industry practice" permits Donohoe to ignore the EMVR. (Opp. 19.) Motorola's cited authorities for this proposition—three district court and Federal Court of Claims cases—cannot be reconciled with the Federal Circuit's unequivocal statement that the EMVR applies in any case. *LaserDynamics*, 2012 WL 3758093, at *12.



This assumption cannot be brushed aside as going to the weight given to Donohoe's testimony, but rather exposes his methodology as flawed and unreliable.

Finally, Motorola argues that ignoring the EMVR is "convenient," "makes eminent sense," and has "overwhelming advantages." (Opp. 19.) In other words, Motorola seeks an exception from the EMVR because Donohoe was unable to properly apportion the value of Motorola's patents to Microsoft's products. But there is no such exception:

> [I]f difficulty in precisely identifying the value of the [infringing feature] is what justifies using complete laptop computers as the royalty base, when it comes time to then apportion a royalty rate that accounts for the [infringing feature's] contribution only, the exceedingly difficult and error-prone task of discerning the [infringing component's] value relative to all other components in the laptop remains. . . . [W]e see no reason to establish a necessity-based exception to the entire market value rule.

*LaserDynamics*, 2012 WL 3758093, at *14. Motorola's claim that parties supposedly "commonly negotiate licenses with such a base and then vary the royalty rates" (Opp. 19) is an attempted end-run that the Federal Circuit has foreclosed. *See id.* at *13 (rejecting "the contention that practical and economic necessity compelled [patentee] to base its royalty on the

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY CHARLES R. DONOHOE AND
DR. R. SUKUMAR - 4

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

price of" end products because it "fails to address the fundamental concern of the entire market value rule . . . that the royalty rate applied thereto does not overreach and encompass components not covered by the patent").

### B. Donohoe's Consideration Of Motorola's Prior Licenses Is Unreliable Because They Provide No Evidence Of "Royalties Received" For Motorola's 802.11 And H.264 Standard-Essential Patents.

Donohoe also violated established law in utilizing non-comparable portfolio licenses that included Motorola's ▮▮▮ as the basis for his 2.25% royalty. Motorola argues ▮▮▮ But this does not make the licenses comparable under governing law. Given the entirely different ▮▮▮ and ▮▮▮, these are ▮▮▮. As the Federal Circuit has explained:

> The first of the fifteen factors in *Georgia–Pacific* is "the royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty." [Citation.] Actual licenses to the patented technology are highly probative as to what constitutes a reasonable royalty for those patent rights because such actual licenses most clearly reflect the economic value of the patented technology in the marketplace.

*LaserDynamics*, 2012 WL 3758093, at *22. The relevant inquiry in this case is the economic value of Motorola's 802.11 and H.264 patents, and only "royalties received" for a license *to those patents* has any relevance to that inquiry. ▮▮▮ *See id.* at *23 ("When relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice."). ▮▮▮

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY CHARLES R. DONOHOE AND
DR. R. SUKUMAR - 5

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1
2
3 Motorola suggests that its ███ are somehow comparable to a
4 ███
5 ███ (Opp. 10–11.) This argument is flawed and highly
6 misleading. ███
7
8
9
10 (*See* Dkt. No. 309-3 at 265–66.) ███
11
12
13
14
15
16
17
18 Moreover, Donohoe simply used these ███
19
20
21
22
23
24
25 ███ (Opp. 11.) That is no excuse for failing to do the apportionment
26

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY CHARLES R. DONOHOE AND
DR. R. SUKUMAR - 6

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1  the law requires. If Motorola is correct that there is no way to isolate the value of its 802.11

2  and H.264 patents, then the licenses cannot be used, because ████████████████

3  ████████████████████████

4  ████ Motorola then claims that the differences between ████████████████

5  ████████, the differences between ████████████████████████

6  ████████████████████████████████████████

7  "are classic examples of evidentiary disputes . . . that go to the weight of the evidence, not

8  admissibility." (Opp. 12.) But there is no "evidentiary dispute" concerning these issues,

9  because ████████████████████ Donohoe simply assumed that

10 ████████████████████████████████████

11 ████ Because ████████████████████████

12 ████████, Donohoe lacked a reliable methodology and should not be

13 permitted to testify that ████████████████████████

14 ████ The ████ is the sole Motorola license that contains ████

15 ████ (and not its ████—though it includes patents relating to

16 ████), but it has garnered ████████████ (Opp. 8.) Motorola

17 says that does not matter, but Motorola is mistaken. ████████

18 ████████████████████████████████████

19 ████████████████████████████████████

20 ████████████ *LaserDynamics*, 2012 WL 3758093, at *22. Motorola speculates

21 that ████████████████████████████████

22 ████████." (Opp. 8–9.) Even if ████████████

23 ████████████████████████████████

24 ████████████████ so they cannot be used to carry Motorola's

25 burden of proving that Donohoe's testimony is reliable.

26

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY CHARLES R. DONOHOE AND
DR. R. SUKUMAR - 7

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717



### C. Donohoe Valued Hold-Up, Not Motorola's Technical Contributions.

A further flaw in Donohoe's methodology is that he made no effort to take into account the incremental value of Motorola's patented contributions. Motorola's opposition only confirms that those contributions were entirely irrelevant to Donohoe's analysis, and that if he valued anything, it was the benefit of the standards. This is not a reliable methodology. Motorola's technical experts apparently told Donohoe ███ " (Opp. 12.) Motorola claims its patents concern ███ (Opp. 13.) Not only are these concepts devoid of any testable precision, they cover any patent that is truly "essential" to a standard, and would allow the holder of any essential patent to capture the entire value of the standard by using Donohoe's analysis.

Motorola argues that " ███ (Opp. 14, 15–16.) Motorola argues that this is fine because "real-world" negotiators sometimes do this. But this argument proves too much. A reliable methodology requires consistent application, and making ad hoc exceptions to the governing principles on the rationale that this sometimes occurs in the real world would be the

---

[3] Without citation, Motorola claims that its technical experts opined that Motorola's patents include a "███ ███" (Opp. 15.) But Motorola's experts do not provide ███ For example, Williams offers no opinion as to the extent to which ███ For nearly all Motorola patents, Williams fails to ███ See, e.g., Second Wion Decl. Ex. 7 (Aug. 15, 2012 Corrected Expert Report of Timothy Arthur Williams) ¶¶ 282, 295 ███

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY CHARLES R. DONOHOE AND
DR. R. SUKUMAR - 8

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

opposite of a reliable methodology. Moreover, Federal Circuit law requires that a reasonable royalty be tied to "*the claimed invention's* footprint in the marketplace," *ResQNet.com v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) (emphasis added) and "the economic demand for *the claimed technology*," *LaserDynamics*, 2012 WL 3758093, at *23 (emphasis added). The value of the standards is not the value of "the claimed invention" because the standards implicate at least hundreds of other essential patents, and reflect an enhanced value resulting from standardization itself. None of that enhanced value flows from Motorola's claimed technology, and Motorola is not entitled to be compensated for it.

Of course, Motorola does not hold all patents on either standard—it is one of dozens, if not hundreds, that hold patents claimed to be essential. The RAND commitment requires *some* reliable method for breaking out Motorola's contribution to the standards, even if one does not go back to an *ex ante* inquiry to consider alternatives to the standard as implemented. Lacking any such evidence, the most favorable inference that can be drawn is that Motorola's contribution to the standard is no greater than that of the average essential patent holder.

Motorola argues that concerns about hold-up are "unsubstantiated, theoretical rhetoric" (Opp. 16), but this flies in the face of what Motorola is demanding: a royalty payment that openly and admittedly reflects the value of the standard to Microsoft's products. Motorola's expert Richard Schmalensee testified that ███████████████████████████████████████████████████████████████████. *See* Dkt. No. 398 Ex. 1 (Schmalensee Dep.) 10:22–11:5.) Motorola's demands clearly meet Schmalensee's definition, because ███████████████████████████████████████████████████. Motorola claims that Microsoft has not proved that Motorola's prior licenses are not RAND (Opp. 16–17)—but if ███████████████████████████████████████████████████████████

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY CHARLES R. DONOHOE AND
DR. R. SUKUMAR - 9

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Second Wion Decl. Ex. 6 (Dansky Dep.) 28:15–21; Dkt. No. 398 Ex. 1 (Schmalensee Dep.) 31:11–15.

### D. Donohoe's "Consideration" Of *Georgia-Pacific* Factors Leaves Motorola's 2.25% Demand Untouched.

Yet another reason why Donohoe did not employ a reliable methodology is his failure to meaningfully apply the *Georgia-Pacific* factors. Donohoe offers nothing more than vague suggestions as to how each *Georgia-Pacific* factor impacts his conclusion—each factor ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Br. 17.) Motorola attempts to defend ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Opp. 5), and that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Opp. 15). What Federal Circuit law requires is "*fully* analyzing the *applicable* factors," not merely making "conclusory remarks about [each factor's] impact on the damages calculation." *Whitserve, LLC v. Computer Packages, Inc.*, — F.3d —, 2012 WL 3573845, at *14 (Fed. Cir. Aug. 7, 2012) (emphasis in original). The Federal Circuit's tolerance for necessary imprecision or approximation (*see* Opp. 15 n. 14) cannot excuse Donohoe's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" Donohoe's "modified" *Georgia-Pacific* framework is nothing more than an effort to disguise Motorola's 2.25% demand as the result of a legally- or economically-sound analysis. It is neither.

### II. R. SUKUMAR'S TESTIMONY SHOULD BE EXCLUDED.

Motorola attempts to paper over the incomprehensible terminology used in the Sukumar survey by arguing that "the terms themselves were defined" in his questionnaires. (Opp. 21) But they were not. The cited paragraph only shows a screenshot of the questions, in

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY CHARLES R. DONOHOE AND
DR. R. SUKUMAR - 10

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

which the acronym "MBAFF" is identified with the additional incomprehensible phrase "(Macroblock Adaptive Frame/Field)." (Dkt. No. 404 ¶ 12.) No definition of any of these terms was provided. Motorola suggests that any respondent who did not understand the questions was free to answer "not sure" (*id.*), but these critical questions and responses were never pretested. They were inserted into the survey at the last minute, at the insistence of the trial attorneys, so it is impossible to know whether respondents understood what they were answering or were simply guessing. Second Wion Decl. Ex. 8 (Sukumar Dep.) 53:6–54:6; 66:4–7, 75:15–16. Even Sukumar admitted he had no basis to believe that any respondent understood the questions. *Id.* at 80:13–81:4; 151:9–22.[4]

Motorola also claims that only a small number of respondents indicated they had viewed MBAFF content, "commensurate with the 'technical' nature of the term." (Opp. 22.) This *ipse dixit* cannot rescue the survey where it is admitted that *none* of the respondents could have known what video content they were viewing. Second Wion Decl. Ex. 8 (Sukumar Dep.) 230:15–233:12. Only 26 respondents actually answered "not sure" (Dkt. No. 397 ¶ 24)—meaning that 125 other respondents purported to (1) know what MBAFF means and (2) know whether they had viewed MBAFF content. Even Motorola's *expert* could not determine whether he was watching MBAFF content on an Xbox without copying video files to a different computer, and using software tools to analyze the video's encoding. (Br. 20–21). Motorola claims that "[l]ay respondents are not required to undertake anything remotely as rigorous" as its expert did (Opp. 22 n. 21), but has never offered any suggestion as to ▇▇▇▇ ▇▇▇▇ (*see* Dkt. No. 398 Ex. 5 (Drabik Dep.) 133:9–135:14).

---

[4] Motorola suggests that perhaps Xbox users might know what "interlaced," "progressive," or "MBAFF" refer to. (Opp. 21.) But Sukumar conducted his survey without any understanding of the terms and without developing any proof that his questions would be understood. Second Wion Decl. Ex. 8 (Sukumar Dep.) 54:7–55:1. Motorola also points out that the incomprehensible language appears in only one survey. (Opp. 21 n. 19.) However, the only aspect of the survey on which Motorola's other experts rely are the responses to the unintelligible usage questions.

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY CHARLES R. DONOHOE AND
DR. R. SUKUMAR - 11

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700 FAX. (206) 623-8717

1     Moreover, [redacted]

3     *Id.* at 95:8–96–11. None of Motorola's experts have suggested how [redacted]

7     Motorola's claim that Sukumar used the "relevant universe" (Opp. 23) is demonstrably wrong. The issue is not, as stated by Motorola, whether the sample was confined to owners of Xbox products; it is that the Xbox owners Sukumar queried were not obtained randomly. (*See* Br. 21.) In fact, the sample did not include Xbox users (as contrasted with purchasers) and entirely excluded younger owners as well as owners who do not connect to the internet. Second Wion Decl. Ex. 8 (Sukumar Dep.) 81:5–10, 161:1–25, 166:18–21, 180:24–181:19, 186:8–10. Motorola's opposition utterly fails to establish that the sample of people who took the survey was representative of U.S. Xbox owners. Moreover, Motorola's opposition contains no discussion whatsoever of Sukumar's deliberately biased value calculations. Sukumar admittedly and arbitrarily constrained his computerized analysis toward higher valuations for the standard-compliant features of Xbox. *Id.* at 113:16–117:1; Br. 21–22. Motorola's failure to respond to this glaring defect confirms the unreliability of Sukumar's "willingness to pay" calculations.

## CONCLUSION

Charles Donohoe offers an unreliable RAND royalty determination that is based on a flawed *Georgia-Pacific* analysis barred by Federal Circuit law, and openly seeks to recover the hold-up value of the 802.11 and H.264 standards. Donohoe's conclusions are unreliable and his testimony inadmissible, and he should be barred from testifying at trial. Dr. R. Sukumar's survey is fundamentally unreliable and his testimony should also be excluded.

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY CHARLES R. DONOHOE AND
DR. R. SUKUMAR - 12

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

DATED this 10th day of September, 2012.

CALFO HARRIGAN LEYH & EAKES LLP

By  s/ Arthur W. Harrigan, Jr.
    Arthur W. Harrigan, Jr., WSBA #1751
    Christopher Wion, WSBA #33207
    Shane P. Cramer, WSBA #35099

By  s/ t. Andrew Culbert
    T. Andrew Culbert, WSBA #35925
    David E. Killough, WSBA #40185
    MICROSOFT CORPORATION
    1 Microsoft Way
    Redmond, WA 98052
    Phone: 425-882-8080
    Fax: 425-869-1327

    David T. Pritikin, *Pro Hac Vice*
    Richard A. Cederoth, *Pro Hac Vice*
    Constantine L. Trela, Jr., *Pro Hac Vice*
    Douglas I. Lewis, *Pro Hac Vice*
    John W. McBride, *Pro Hac Vice*
    Nathaniel C. Love, *Pro Hac Vice*
    SIDLEY AUSTIN LLP
    One South Dearborn
    Chicago, IL 60603
    Phone: 312-853-7000
    Fax: 312-853-7036

    Carter G. Phillips, *Pro Hac Vice*
    SIDLEY AUSTIN LLP
    1501 K Street, N.W.
    Washington, D.C. 20005
    Phone: 202-736-8000
    Fax: 202-736-8711

    Counsel for Microsoft Corporation

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY CHARLES R. DONOHOE AND
DR. R. SUKUMAR - 13

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

# CERTIFICATE OF SERVICE

I, Linda Bledsoe, swear under penalty of perjury under the laws of the State of Washington to the following:

1. I am over the age of 21 and not a party to this action.

2. On the 10th day of September, 2012, I caused the preceding document to be served on counsel of record in the following manner:

**Attorneys for Motorola Solutions, Inc., and Motorola Mobility, Inc.:**

| | |
|---|---|
| Ralph Palumbo, WSBA #04751<br>Philip S. McCune, WSBA #21081<br>Lynn M. Engel, WSBA #21934<br>Summit Law Group<br>315 Fifth Ave. South, Suite 1000<br>Seattle, WA 98104-2682<br>Telephone: 206-676-7000<br>Email: Summit1823@summitlaw.com | \_\_\_\_\_ Messenger<br>\_\_\_\_\_ US Mail<br>\_\_\_\_\_ Facsimile<br>  X   ECF |
| Steven Pepe (*pro hac vice*)<br>Jesse J. Jenner (*pro hac vice*)<br>Ropes & Gray LLP<br>1211 Avenue of the Americas<br>New York, NY 10036-8704<br>Telephone: (212) 596-9046<br>Email: steven.pepe@ropesgray.com<br>Email: jesse.jenner@ropesgray.com | \_\_\_\_\_ Messenger<br>\_\_\_\_\_ US Mail<br>\_\_\_\_\_ Facsimile<br>  X   ECF |
| Norman H. Beamer (*pro hac vice*)<br>Ropes & Gray LLP<br>1900 University Avenue, 6th Floor<br>East Palo Alto, CA 94303-2284<br>Telephone: (650) 617-4030<br>Email: norman.beamer@ropesgray.com | \_\_\_\_\_ Messenger<br>\_\_\_\_\_ US Mail<br>\_\_\_\_\_ Facsimile<br>  X   ECF |

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY CHARLES R. DONOHOE AND
DR. R. SUKUMAR - 14

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

|   |   |
|---|---|
| Paul M. Schoenhard (*pro hac vice*)<br>Ropes & Gray LLP<br>One Metro Center<br>700 12th Street NW, Suite 900<br>Washington, DC  20005-3948<br>Telephone:  (202) 508-4693<br>Email: Paul.schoenhard@ropesgray.com | _____ Messenger<br>_____ US Mail<br>_____ Facsimile<br>__X__ ECF |

DATED this 10th day of September, 2012.

                                 s/ Linda Bledsoe
                                 LINDA BLEDSOE

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY CHARLES R. DONOHOE AND
DR. R. SUKUMAR - 15

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717