HONORABLE JAMES L. ROBART

1

2

3

4

5

6

7

8

9

IN THE UNITED STATES DISTRICT COURT

10  FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>MOTOROLA INC., et al.,<br><br>　　　　　　　　Defendant. | No. C10-1823-JLR<br><br>**REDACTED**<br><br>MICROSOFT'S MOTIONS IN LIMINE<br><br>**Noted:  October 19, 2012**<br><br>**ORAL ARGUMENT REQUESTED** |
| MOTOROLA MOBILITY, LLC., et al.,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>MICROSOFT CORPORATION,<br><br>　　　　　　　　Defendant. | |

21

22

23

24

25

26

MICROSOFT'S MOTIONS IN LIMINE

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700 FAX. (206) 623-8717

# TABLE OF CONTENTS

MIL No. 1: Exclude Evidence Concerning Matters as to which Motorola or its Corporate Parent, Google Inc., Claimed Privilege During Discovery. ...................................... 1

MIL No. 2: Exclude Evidence of or Reliance on Patent Licenses That Are Not Comparable.... 4

MIL No. 3: Bar Motorola's Application of a Percentage Royalty to Products Having Multiple Features and Components, Where the Motorola Patents Cannot Be Shown to Be the Basis for Consumer Demand. ............................................................................ 8

MIL No. 4: Exclude Settlement Communications.................................................................. 11

MIL No. 5: Exclude Any Assertion That The RAND License Should Include Patents Not Included In Interrogatory Responses Listing Motorola's Standard-Essential Patents............................................................................................................ 13

MIL No. 6: Exclude Testimony by Motorola's Expert Dr. Timothy Drabik Concerning Bitrate Improvements Attributable To Motorola's Patents Not Set Forth In His Expert Report. ........................................................................................................... 16

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700 FAX, (206) 623-8717

1

## TABLE OF AUTHORITIES

2
                                                                                          **Page(s)**

CASES

3

*Alamar Ranch, LLC v. County of Boise,*

4
   No. 1:09-cv-004, 2010 U.S. Dist. Lexis 128572 (D. Idaho Dec. 4, 2010) ................................4

5
*Allan Block Corp. v. County Materials Corp.,*

6
   No. 05-2879, 2009 U.S. Dist. Lexis 57475 (D. Minn. July 6, 2009).........................................3

*Bess v. Cate*

7
   422 Fed. Appx. 569 (9th Cir. 2011)............................................................................................16

8
*Brees v. Jefferson Cty.,*

9
   No. C07-5000, 2008 WL 336787 (W.D. Wash. Feb. 5, 2008)...................................................12

10
*Columbia Pictures Indust., Inc. v. Krypton Broadcasting, Inc.,*
   259 F.3d 1186 (9th Cir. 2001) .....................................................................................................3

11

*Engineered Prods. Co. v. Donaldson Co.,*

12
   313 F. Supp. 2d 951 (N.D. Iowa 2004)........................................................................................3

13
*Estate of Bojcic v. City of San Jose,*
   358 Fed. Appx. 906 (9th Cir. 2009).............................................................................................17

14

15
*Galaxy Computer Svcs., Inc. v. Baker,*
   352 B.R. 544 (Bankr. E.D. Va. 2005)...........................................................................................3

16
*General Elec. Co. v. Joiner,*
   522 U.S. 136 (1997).....................................................................................................................15

17

18
*Hanson v. Alpine Valley Ski Area,*
   718 F.2d 1075 (Fed. Cir. 1983) ..................................................................................................12

19
*Hudspeth v. C.I.R.,*

20
   914 F.2d 1207 (9th Cir. 1990) ....................................................................................................12

21
*Kriedler v. Pixler,*
   No. C06-0697RSL, 2010 WL 1537068 (W.D. Wash. Apr. 15, 2010) ....................................12

22

23
*LaserDynamics, Inc. v. Quanta Computer, Inc.,*
   -- F.3d --, Nos. 2011-1440, 2011-1470, 2012 WL 3758093, (Fed. Cir. Aug. 30, 2012).....................................................................................................................5, 6, 9, 11

24

25
*Lucent Techs. v. Gateway, Inc.,*
   580 F.3d 1301 (Fed. Cir. 2009) ...............................................................................................7, 9

26

MICROSOFT'S MOTIONS IN LIMINE

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700 FAX, (206) 623-8717

*Mealing v. City of Ridgefield,*
  No. C05-5778FDB, 2007 WL 1367603 (W.D. Wash. May 8, 2007)......................................15

*Reed v. Binder,*
  165 F.R.D. 424 (D.N.J. 1996)................................................................................15, 17

*ResQNet.com, Inc. v. Lansa, Inc.,*
  594 F.3d 860 (Fed. Cir. 2010) ................................................................................5, 7

*Smith v. State Farm Fire and Cas. Co.,*
  164 F.R.D. 49 (S.D. W. Va. 1995) ........................................................................17

*Turner v. University of Washington,*
  No. C05-1575RSL, 2007 U.S. Dist. Lexis 78281 (W.D. Wash. Oct. 10, 2007) ......................3

*Uniloc USA, Inc. v. Microsoft Corp.,*
  632 F.3d 1292 (Fed. Cir. 2011) ............................................................................9, 10

*United States v. Contra Costa County Water Dist.,*
  678 F.2d 90 (9th Cir. 1990) ..................................................................................12

*Watkins v. Vestil Mfg. Corp.,*
  No. 2:07–CV–0152–RWS, 2010 WL 883754, (N.D. Ga. Mar. 5, 2010) ........................15, 16

*Wendler & Ezra, P.C. v. Am. Intern. Group, Inc.*
  521 F.3d 790 (7th Cir. 2008) (per curiam) ..............................................................15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26....................................................................................................15, 16

Fed. R. Civ. P. 37....................................................................................................13, 15

Fed. R. Evid. 401 ....................................................................................................4

Fed. R. Evid. 408 ....................................................................................................11, 12, 13

MICROSOFT'S MOTIONS IN LIMINE

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Plaintiff Microsoft Corporation ("Microsoft") respectfully makes the following six motions *in limine*.

**MIL No. 1:    Exclude Evidence Concerning Matters as to which Motorola or its Corporate Parent, Google Inc., Claimed Privilege During Discovery.**

Microsoft moves *in limine* to bar the Motorola Defendants (collectively, "Motorola") from presenting evidence on the subjects over which it or its corporate parent, Google Inc. ("Google"), claimed privilege during the depositions in this matter, including: (1) Motorola's reasons for not participating in certain pools, including the MPEG LA H.264 pool; (2) any factual bases for asserting that Microsoft is not entitled to a license to Motorola's H.264 standard essential patents as required pursuant to the Google License; and (3) any factual bases for asserting that Motorola's H.264 standard essential patents are worth more than the royalty that is presumed reasonable in the Google License.

During discovery, Motorola claimed privilege to block inquiry into Motorola's reasons for not participating in certain standards-related patent pools, including the H.264 patent pool managed by MPEG LA. For example, Kirk Dailey, Motorola Mobility's Corporate Vice President of Intellectual Property, was asked to explain why Motorola chose not to join the MPEG LA's H.264 pool as either a licensee or a licensor, but refused to answer based upon Motorola's claim of privilege. Wion Decl. Ex. 1 (Dailey Dep.) at 52:19–55:1; *see also id.* at 50:13–22. Similarly, Timothy Kowalski, Lead Intellectual Property Counsel for Motorola, was asked if part of Motorola's concern over joining the MPEG LA H.264 pool was a desire for higher royalty rates, but he refused to respond based upon Motorola's claim of privilege. Wion Decl. Ex. 2 (Kowalski Dep.) at 90:23–92:1.

After blocking Microsoft's inquiry during fact discovery, Motorola now seeks to introduce evidence of its reasons for not joining the MPEG LA H.264 pool through four of its experts, all of whom assert that ███████████████████████████████████████ ███████████████████████████████████████. Wion Decl. Ex. 3 (Schmalensee Rpt.)

MICROSOFT'S MOTIONS IN LIMINE - 1

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700 FAX. (206) 623-8717

1   ¶¶ 11, 78 (citing no support); Wion Decl. Ex. 4 (Donohoe Rebuttal Rpt.) ¶ 39 (citing no

2   support); Wion Decl. Ex. 5 (Smith Rebuttal Rpt.) ¶ 52 (claiming support from the Dailey

3   Deposition and a conversation with Kowalski); Wion Decl. Ex. 6 (Dansky Dep.) at 55:14–

4   57:12, 155:18–156:20 (claiming support from a conversation with Dailey).

5         Motorola will also likely seek to introduce evidence at trial concerning Google's

6   (Motorola Mobility's parent corporation) obligations as a licensee of MPEG LA's H.264

7   patent pool, despite having blocked Microsoft's discovery of that subject matter.  Google's

8   H.264 license with MPEG LA (the "Google License") obliges it to ██████████████████

9   ████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████

11  ████████████████████████████████████.  Wion Decl. Ex. 7 (Google-MPEG

12  LA License) § 8.3.  This obligation expressly extends to the H.264 standard essential patents

13  owned by Google's "affiliates," which include Motorola Mobility.[1]  On June 15, 2012, shortly

14  after Google acquired Motorola Mobility as its wholly-owned subsidiary, Microsoft made a

15  written request for a license to Motorola Mobility's H.264 standard essential patents, in

16  accordance with the provisions of the Google License.  Given the importance of the Google

17  License to the RAND issues in this case, when Google failed to respond Microsoft noticed the

18  Rule 30(b)(6) deposition of Google to learn the key facts concerning (1) whether Google had

19  any factual basis for trying to withhold from Microsoft the required license of Motorola

20  Mobility's H.264 standard essential patents and (2) whether Google had any factual basis for

21  asserting that Motorola Mobility's H.264 standard essential patents are worth more than the

22  rate that is presumed reasonable under the Google License.

23

24

---

25   [1] An "Affiliate" under Google's pool license includes companies that are under its "control," where control
means, in most circumstances, at least 50% ownership of outstanding shares or otherwise a 50% ownership

26   interest.  Wion Decl. Ex. 7 § 1.1.

MICROSOFT'S MOTIONS IN LIMINE - 2

1    Google designated Allen Lo, its Deputy General Counsel for Patents and Patent

2    Litigation, to testify for Google.  Wion Decl. Ex. 8 (Lo Dep.) at 7:17–25, 11:10–12:24.  Rather

3    than provide the relevant facts, however, Google asserted privilege to block any substantive

4    inquiry into the key questions.  For example, Google invoked privilege to block Microsoft's

5    inquiry into any factual bases that Google has for trying to withhold from Microsoft the

6    required license of Motorola Mobility's H.264 standard essential patents (*id.* at 49:15–50:6,

7    61:18–62:21) and invoked privilege to block Microsoft's inquiry to determine whether Google

8    had any factual basis for asserting that Motorola Mobility's H.264 standard essential patents

9    are worth more than the rate that is presumed reasonable under the Google License (*id.* at

10   75:18–78:10).

11         Motorola should be precluded from presenting evidence on matters about which

12   Microsoft was prevented from inquiring during discovery based upon claims of privilege.  It is

13   fundamental that the "privilege which protects attorney-client communications may not be

14   used both as a sword and a shield."  *Columbia Pictures Indust., Inc. v. Krypton Broadcasting,*

15   *Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001) (internal quotation omitted).  "A privilege-holder

16   'may elect to withhold or disclose, but after a certain point his election must remain final.'"

17   *Turner v. University of Washington*, No. C05-1575RSL, 2007 U.S. Dist. Lexis 78281 at *3–4

18   (W.D. Wash. Oct. 10, 2007), quoting *Weil v. Investment / Indicators, Research and Mgmt.,*

19   *Inc.*, 647 F.2d 18, 24 (9th Cir. 1981).  Thus, it is appropriate to "exclude[] material that was

20   withheld in discovery based on a claim of attorney-client privilege or the work product

21   doctrine," *see id.*, including particularly where a party is precluded from inquiry at depositions

22   as a result of privilege instructions.  *See Allan Block Corp. v. County Materials Corp.*, No. 05-

23   2879, 2009 U.S. Dist. Lexis 57475, at *42–43 (D. Minn. July 6, 2009); *Galaxy Computer*

24   *Svcs., Inc. v. Baker*, 352 B.R. 544, 559 (Bankr. E.D. Va. 2005); *Engineered Prods. Co. v.*

25   *Donaldson Co.*, 313 F. Supp. 2d 951, 1022–23 (N.D. Iowa 2004).  Moreover, "[a]s a matter of

26

MICROSOFT'S MOTIONS IN LIMINE - 3

1  fundamental fairness, it typically would not matter whether the evidence at trial is offered

2  through the party deposed or through another source." *Alamar Ranch, LLC v. County of Boise*,

3  No. 1:09-cv-004, 2010 U.S. Dist. Lexis 128572 at *3–4 (D. Idaho Dec. 4, 2010).

4      This general rule applies with particular force here where Motorola's experts expressly

5  rely on private conversations with Motorola employees who were instructed not to answer

6  Microsoft's questions on the same topics. *See, e.g.*, Wion Decl. Ex. 5 (Smith Rebuttal Rpt.)

7  ¶ 52; Wion Decl. Ex. 6 (Dansky Dep.) at 55:14–57:12, 155:18–156:20. The experts should not

8  be permitted to opine based even in part on information Microsoft was denied under claim of

9  privilege. Accordingly, Motorola should be precluded from presenting evidence on the

10  subjects over which it or its corporate parent, Google, claimed privilege during the depositions

11  in this matter, including: (1) Motorola's reasons for not participating in certain pools, including

12  the MPEG LA H.264 pool; (2) any factual bases for asserting that Microsoft is not entitled to a

13  license of Motorola Mobility's H.264 standard essential patents as required pursuant to the

14  Google License; and (3) any factual bases for asserting that Motorola Mobility's H.264

15  standard essential patents are worth more than the rate that is presumed reasonable in the

16  Google License.

17  **MIL No. 2:   Exclude Evidence of or Reliance on Patent Licenses That Are Not Comparable.**

18      Based upon Fed. R. Evid. 401, Microsoft moves *in limine* to exclude references to

19  Motorola's licenses for its portfolio of cellular telephone network standard essential patents,

20  because these licenses do not provide a reliable benchmark for the value of its 802.11 and

21  H.264 standard essential patent portfolios and are therefore irrelevant.[2]

22

23      [2] This motion does not apply to the ▓▓▓▓▓▓▓—which involves Motorola's 802.11 and H.264

24  standard essential patent portfolios, but not its cellular telephone network standard essential patent portfolio. Reliance on the ▓▓▓▓▓▓ would be error for other reasons, including its economic insignificance

25  (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓) and its suspicious timing (it was conveniently negotiated by Motorola after the commencement of this litigation). But resolution of such issues is not the subject of this motion.

26

MICROSOFT'S MOTIONS IN LIMINE - 4

1    Motorola relies heavily on portfolio licenses including patents essential to various

2  cellular standards, for use in cellular implementations, in arriving at its asserted RAND royalty.

3  Given the different standards, different universe of patents, and restrictions to cellular

4  products, these are plainly *not* licenses to the set of patents at issue here and do not otherwise

5  reflect the value of the H.264 or 802.11 essential patents.  The threshold requirement for

6  admissibility of other licenses is that they be comparable.  As explained recently by the Federal

7  Circuit, "[w]hen relying on licenses to prove a reasonable royalty, alleging a loose or vague

8  comparability between different technologies or licenses does not suffice." *LaserDynamics,*

9  *Inc. v. Quanta Computer, Inc.*, -- F.3d --, Nos. 2011-1440, 2011-1470, 2012 WL 3758093, at

10  *23 (Fed. Cir. Aug. 30, 2012).  There is no basis on which to conclude that these licenses are

11  comparable to the licenses to which the RAND royalty at issue before the Court applies.

12  Under well-established law governing the use of license agreements, they should be excluded

13  along with arguments based on those licenses. *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d

14  860, 873 (Fed. Cir. 2010).

15    Some licenses between Motorola and



16

17

18

19    .[3]  Wion Decl. Ex. 9 (Donohoe Rpt.) ¶¶ 69, 79.

20  Motorola's experts have not proposed any way to isolate the value attributable to the 802.11 or

21  H.264 patents from the value of the other patents in these licenses, or to apportion that value.

22  Motorola's Professor Schmalensee explained that

23

24

25

26  [3] Examples include licenses to

MICROSOFT'S MOTIONS IN LIMINE - 5

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700 FAX, (206) 623-8717

1    ██████████████      Wion Decl. Ex. 11 (Schmalensee Dep.) at 194:18–195:24.  No Motorola

2    expert attempted such an analysis.  For these reasons, there is no basis for concluding that

3    royalties from those licenses "reflect the economic value" of the 802.11 and H.264 patents, *see*

4    *LaserDynamics*, 2012 WL 3758093, at *22, or that they provide any meaningful basis to value

5    those patents.

6         Other licenses are to cellular patents only, for cellular implementations only.[4]  Motorola

7    tries to justify its reliance on those licenses by arguing that a handful of the hundreds of

8    cellular patents are supposedly also essential to 802.11.  Its experts offer no way to isolate the

9    value of the few 802.11 "overlap" patents from the value of the broad portfolios of patents that

10   these licenses also cover,[5] leaving no basis to conclude that they are valid comparables in

11   assessing the royalty issue in this case.  Moreover, even if such isolation had been attempted,

12   the agreements ███████████████████████████████████████████████

13   ██████████████████████████████████████████████████████████

14   ██████.

15        The licenses on which Motorola relies to support its claimed RAND royalty grant

16   vastly different bundles of rights from those at issue.  The licenses themselves provide no

17   indication of the economic value the parties attributed to Motorola's 802.11 or H.264 patents,

18   as opposed to its cellular patents.  No Motorola expert even attempted that apportionment.  *See*

19   Wion Decl. Ex. 10 (Donohoe Dep.) at 14:15–15:1.  Motorola offers no evidence reconciling

20   the differences between cellular patents and 802.11 and H.264 patents, the differences between

21

22   [4] Examples include licenses to ████████████████████████.

     [5] Of the more than 50 U.S. patents identified by Motorola as essential to 802.11, only five have ever been
23   identified by Motorola as essential to cellular standards.  The '712 patent is *not* essential to 802.11, as construed
     by the ITC and Judges Crabb and Posner.  (*See* Dkt. No. 309-3 at 265–66.)  The '294 and '193 patents were not
24   analyzed by Motorola's technical expert, so there is no evidence that they are actually essential to 802.11.  The
     '563 patent was not listed in any of the cellular licenses Motorola discusses in detail, leaving only the '547 patent,
25   listed in just three agreements.  This single patent, called out nowhere as of any special significance in any of
     these licenses, cannot render any of these cellular licenses comparable to a license for Motorola's 802.11
26   patents—especially where the agreements limit the scope of the licenses granted to implementing the cellular
     standards.  And Motorola has never argued any overlap between its cellular patents and its H.264 patents.

MICROSOFT'S MOTIONS IN LIMINE - 6

1   the products sold by cell phone manufacturers and those sold by Microsoft, or the importance

2   of the different patent portfolios to those products. No Motorola expert has said, nor could

3   they, that the benefit of a cell phone's capacity to connect with its cellular network is equal in

4   value to an Xbox having Wi-Fi connectivity. *Id.* at 158:2–17. Because Motorola has provided

5   no rational method for isolating the value of the 802.11 and H.264 patents in any of the

6   licenses, they are inadmissible, as they are not probative of the economic value of the patents at

7   issue.

8          The failure to establish comparability is especially acute because Motorola views its

9   cellular standard-essential portfolios as ████████████████, *see* Wion Decl. Ex.

10  10 (Donohoe Dep.) at 98:17–99:2, but ████

11  ████████████████████████████████████████

12  ████████████████████████████, but no Motorola expert even

13  attempted to value the relative strength of Motorola's H.264 and 802.11 patents—and could

14  not even state whether they ████████████████████. *Id.*

15  at 160:15–23 (802.11), 163:1–6 (H.264).

16         Here, the standards are different, the patents are different, and the strength of the

17  Motorola patent portfolios is different. Because Motorola has failed even to attempt to account

18  for these differences, the cellular-related licenses are inadmissible. *See ResQNet.com*, 594

19  F.3d at 869 ("This court has long required district courts performing reasonable royalty

20  calculations to exercise vigilance when considering past licenses to technologies other than the

21  patent in suit."); *id.* at 872 ("[Courts] must consider licenses that are commensurate with what

22  the defendant has appropriated. If not, a prevailing plaintiff would be free to inflate the

23  reasonable royalty analysis with conveniently selected licenses without an economic or other

24  link to the technology in question."); *Lucent Techs. v. Gateway, Inc.*, 580 F.3d 1301, 1329

25  (Fed. Cir. 2009) (damages verdict "cannot stand solely on evidence which amounts to little

26

MICROSOFT'S MOTIONS IN LIMINE - 7

1   more than a recitation of royalty numbers, one of which is arguably in the ballpark of the jury's

2   award, particularly when it is doubtful that the technology of those license agreements is in any

3   way similar to the technology being litigated here").

4        Motorola may argue that the long-recognized principles barring the use of non-

5   comparable licenses are not applicable in the context of determining a RAND royalty. But that

6   argument would lack any support in precedent or economic policy. Worse, it would have the

7   perverse effect of freeing a holder of essential patents, who has committed to licensing its

8   standard-essential patents on reasonable and non-discriminatory terms, from the normal checks

9   and restraints that prevent patent holders from overreaching in every other case. Allowing a

10   holder of declared essential patents to justify exorbitant royalties by reference to non-

11   comparable licenses cannot possibly be consistent with RAND. Motorola's prior cellular

12   licenses should be excluded.

13   **MIL No. 3:**   **Bar Motorola's Application of a Percentage Royalty to Revenues of Products Having Multiple Features and Components, Where the Motorola**
14           **Patents Cannot Be Shown to Be the Basis for Consumer Demand.**

15        Microsoft moves *in limine* to bar Motorola from using either Microsoft product

16   revenues (*e.g.*, those from sales of the Xbox console, Windows OS, and Windows Phone 7 OS)

17   or the revenues of Microsoft's hardware customers (*e.g.*, revenues from sales of Dell-made

18   Windows personal computers or Nokia-made Windows phones) as a royalty base for a RAND

19   royalty.

20        In the context of determining reasonable royalties, the Federal Circuit has established

21   the "entire market value rule," which bars the use of sales revenues of an accused product as a

22   royalty base where the asserted patent claims cover a single feature of a complicated, multi-

23   faceted product, unless the patentee proves that the patent-related feature is the basis for

24   customer demand for the accused product:

25           [I]n any case involving multi-component products, patentees
            may not calculate damages based on sales of the entire product,
26

MICROSOFT'S MOTIONS IN LIMINE - 8

1    as opposed to the smallest salable patent-practicing unit, without
     showing that the demand for the entire product is attributable to
2    the patented feature.

3  *LaserDynamics*, 2012 WL 3758093, at *12. *See also id.* at *11 ("[T]he entire market value

4  rule acts as a check to ensure that the royalty damages being sought under 35 U.S.C. § 284 are

5  in fact 'reasonable' in light of the technology at issue."); *Uniloc USA, Inc. v. Microsoft Corp.*,

6  632 F.3d 1292, 1318 (Fed. Cir. 2011); *Lucent*, 580 F.3d at 1336.  No Motorola expert has even

7  asserted, much less attempted to show, that the Motorola H.264 or 802.11 essential patents

8  form the basis for consumer demand for Microsoft's complex products.  Therefore, Motorola's

9  experts violate the entire market value rule by calculating a supposedly RAND royalty by

10 applying a percentage royalty rate to the total sales revenue of complex products having many

11 features and components, such as Windows operating systems and Xbox consoles.

12       The entire market value rule is an essential restraint in arriving at a *reasonable* royalty

13 in patent infringement actions involving multi-component, multi-featured products.  *Uniloc*,

14 632 F.3d at 1312, 1318–21.  Xbox and Windows are such products, but Motorola has not even

15 tried to show that its patents form the basis of customer demand.  *See, e.g.*, Wion Decl. Ex. 10

16 (Donohoe Dep.) at 198:10–200:18.[6]  Motorola's experts claim that standard compliance

17 provides particular value to Microsoft's products or that compliance is required for those

18 products to be competitive, but those contentions miss the mark for at least two reasons.  First,

19 such claims of value or competitive necessity are not evidence that compliance with the H.264

20 or 802.11 standards *forms the basis for customer demand* for products like the Xbox gaming

21 console or the Windows operating system.  Second, even if they were, the relevant inquiry is

22 whether customer demand rests on *Motorola's specific patents*, not the entire standard, and

23 Motorola has come forward with no evidence of that.  In *LaserDynamics*, the plaintiff sought

---

[6] Michael Dansky, the Motorola expert who ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮ (*see* Dkt. No. 398 Ex. 2 ¶¶ 171–72, 183–84) ▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Dkt. No. 424 Ex. 6 105:24–106:5).

MICROSOFT'S MOTIONS IN LIMINE - 9

1   to base a reasonable royalty on the end price of laptop computers that incorporated optical disc

2   drives ("ODDs") practicing a patented "disc discrimination" method. *See* 2012 WL 3758093,

3   at *12. The Federal Circuit explained that arguments that the patents were important to the

4   product or even necessary for commercial viability were insufficient to satisfy the predicate of

5   the entire market value rule:

> It is not enough to merely show that the disc discrimination method is viewed as
> valuable, important, or even essential to the use of the laptop computer. Nor is
> it enough to show that a laptop computer without an ODD practicing the disc
> discrimination method would be commercially unviable. Were this sufficient, a
> plethora of features of a laptop computer could be deemed to drive demand for
> the entire product. . . . But proof that consumers would not want a laptop
> computer without such features is not tantamount to proof that any one of those
> features alone drives the market for laptop computers. Put another way, if given
> a choice between two otherwise equivalent laptop computers, only one of which
> practices optical disc discrimination, proof that consumers would choose the
> laptop computer having the disc discrimination functionality says nothing as to
> whether the presence of that functionality is what motivates consumers to buy a
> laptop computer in the first place. It is this latter and higher degree of proof that
> must exist to support an entire market value rule theory.

*Id.*

Further, Motorola cannot ignore the Federal Circuit's entire market value rule

precedent ████████████████████████████████████████████████████

████████████████████████████████████   Wion Decl. Ex. 10 (Donohoe Dep.) at

195:1–196:18. "The Supreme Court and this court's precedents do not allow consideration of

the entire market value of accused products for minor patent improvements simply by asserting

a low enough royalty rate." *Uniloc*, 632 F.3d at 1320. There is no exception to the entire

market value rule because it may be difficult to apportion the value of the patents to

Microsoft's complex products:

> [I]f difficulty in precisely identifying the value of the [infringing feature] is
> what justifies using complete laptop computers as the royalty base, when it
> comes time to then apportion a royalty rate that accounts for the [infringing
> feature's] contribution only, the exceedingly difficult and error-prone task of
> discerning the [infringing component's] value relative to all other components
> in the laptop remains. . . . [W]e see no reason to establish a necessity-based
> exception to the entire market value rule.

MICROSOFT'S MOTIONS IN LIMINE - 10

1   *LaserDynamics*, 2012 WL 3758093, at *14; *see id.* at *13. Because Motorola has not, and

2   cannot, satisfy the necessary legal predicate, Motorola should be precluded from introducing

3   evidence or arguing that a RAND royalty here be based on a percentage royalty rate applied to

4   the products compliant with the 802.11 and H.264 standards.

5          Motorola may also try to argue that the entire market value rule does not apply to

6   determining a RAND royalty. The rule is based on the inherent need to establish whether a

7   particular technology creates market value. There is no rational basis to discard a restraint that

8   protects against overreaching where the inquiry is whether royalty for a standard essential

9   patent is "reasonable." Allowing a holder of declared-essential patents to be paid for features

10  in complex products that are not valued by the market for the relevant product cannot possibly

11  be consistent with RAND licensing. Motorola should be barred from asserting end-product

12  sales revenues as a base for any RAND royalty.

13  **MIL No. 4:    Exclude Settlement Communications.**

14         Pursuant to Federal Rule of Evidence 408 and the parties' nondisclosure agreement,

15  Microsoft moves *in limine* to exclude references to communications by either party during

16  settlement discussions, as well as general references to whether either party negotiated at all or

17  negotiated in good faith.

18         From time to time over the last two years, Microsoft and Motorola have engaged in

19  settlement discussions concerning the licensing of products under the 802.11 Wi-Fi and H.264

20  video compression standards. But neither what was said during those settlement negotiations

21  nor the fact that such negotiations took place is admissible both because of the restrictions of

22  Rule 408 and because of the parties' contractual commitments in a nondisclosure agreement.

23         Evidence of "conduct or statements made in compromise negotiations regarding the

24  claim is not admissible on behalf of any party, when offered to prove liability for, invalidity of,

25  or amount of a claim that was disputed as to validity or amount, or to impeach through a prior

26

MICROSOFT'S MOTIONS IN LIMINE - 11

1    inconsistent statement or conclusion." Fed. R. Evid. 408(a)(2).  Rule 408 is designed to further

2    the public policy in favor of encouraging settlement.  Admitting settlement communications

3    into evidence would strongly discourage parties from participating in settlement negotiations.

4    *See, e.g., Hudspeth v. C.I.R.*, 914 F.2d 1207, 1213 (9th Cir. 1990) (discussing the Rule 408

5    public policy interest in encouraging settlement); *United States v. Contra Costa County Water*

6    *Dist.*, 678 F.2d 90, 92 (9th Cir. 1990) ("By preventing settlement negotiations from being

7    admitted as evidence, full and open disclosure is encouraged, thereby furthering the policy

8    toward settlement"); *Kriedler v. Pixler*, No. C06-0697RSL, 2010 WL 1537068, at *1 (W.D.

9    Wash. Apr. 15, 2010) (excluding by agreement offers of settlement and related issues under

10   Fed. R. Evid. 408); *Brees v. Jefferson Cty.*, No. C07-5000, 2008 WL 336787, at *1 (W.D.

11   Wash. Feb. 5, 2008) (granting motion to exclude "settlement offers, demands, negotiations or

12   discussions under Rule 408").  In addition, courts repeatedly have recognized that settlement

13   negotiations are not reliable evidence of the amount of a claim or purported damages.  *See*

14   *LaserDynamics*, 2012 WL 3758093, at *20 (collecting cases concerning "admission of

15   settlement offers and negotiations" that support "[t]he notion that license fees that are tainted

16   by the coercive environment of patent litigation are unsuitable to prove a reasonable royalty");

17   *see also Hanson v. Alpine Valley Ski Area*, 718 F.2d 1075, 1079 (Fed. Cir. 1983) ("[L]icense

18   fees negotiated in the face of a threat of high litigation costs . . . should not be considered

19   evidence of an established royalty.") (quotation marks omitted).

20          Here the parties are also contractually barred from offering such communications into

21   evidence.  In November of 2010, the parties signed a nondisclosure agreement (the "NDA") to

22   enable Microsoft and Motorola to █████████████████████████████████████████████

23   Wion Decl. Ex. 12 (Nondisclosure Agreement) at 1. The NDA provides that ███████████

24   ████████████████████████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████████████████████

26

MICROSOFT'S MOTIONS IN LIMINE - 12

1

2

3

4

5

6

7

8



9          *Id.* ¶ 3.

10        Motorola has already breached the NDA by

11

12

13

14

15                                                                    Wion Decl.

16   Ex. 9 (Donohoe Rpt.) ¶¶ 44–45, 47, 181.  During trial, references to the parties' settlement

17   negotiations should be strictly off limits.

18   **MIL No. 5:     Exclude Any Assertion or Testimony That the '514 Ghandi Patent or the**
     **'317 Mathew Patent Is Essential to the 802.11 Standard.**

19

20        Pursuant to Federal Rule of Civil Procedure 37, Microsoft moves to exclude any

     evidence or testimony concerning U.S. Patents 6,836,514 (Gandhi) and 6,807,317 (Mathew)—

21

     in particular, any assertion that these patents are essential, because Motorola did not timely

22

     disclose such a contention in response to interrogatories specifically seeking such information,

23

     and when it did provide an expert report asserting that the '514 patent is essential, it failed to

24

     provide an adequate disclosure of the basis for the opinion.

25

26

MICROSOFT'S MOTIONS IN LIMINE - 13

1    On June 18, 2012, Microsoft served an interrogatory asking Motorola to identify each

2  patent Motorola contends is essential to implement the H.264 or 802.11 standard and what

3  portion of the standard(s) to which each such patent relates.  Wion Decl. Ex. 13 (Microsoft's

4  Third Set of Interrogatories) No. 16.  On July 18, 2012, Motorola responded, narrowing the

5  large number of patents from the group that Motorola had identified before the litigation in its

6  October 2010 offer letter to Microsoft and limiting the number of allegedly essential H.264

7  patents to U.S. patents.  Motorola excluded the '514 and '317 patents from those it contended

8  were essential to the H.264 standard.  In reliance on the interrogatory response, Microsoft's

9  expert prepared his initial expert report concerning H.264 and did not analyze the '514 and

10  '317 patents.

11    Despite the interrogatory response, Motorola served an opening expert report from

12  Timothy Drabik that ███████████████████████████████████████████████████

13  █████████████████████████████████████████████████████████████████████████

14  ████████████████████  Wion Decl. Ex. 15 (Drabik Rpt.) ¶¶ 260, 266 n. 6.  Nowhere in his report (or

15  in his subsequent reports) did he ████████████████████████████████████████

16  and he should not be permitted to offer such testimony at trial.

17    As for the '514 patent, Drabik did opine, ██████████████████████████████

18  ███████████████████  Wion Decl. Ex. 15 (Drabik Rpt.) ¶ 260.  For the critical third

19  limitation of claim 69 (the only claim analyzed), however, Drabik ███████████████

20  █████████████████████████████████████████████████████████████████████████

21  █████████████████████████████████████████████████████████████████████████

22  *See* Wion Decl. Ex. 15 (Drabik Rpt.) ¶ 263.  Drabik provided no explanation of any kind why

23  ███████████████████████████████████████████████████

24  ████████████████████████  Drabik's report and its vague citation are insufficient disclosures to

25  support any testimony at trial that the '514 patent is essential to the H.264 standard.  *See* Fed.

26

MICROSOFT'S MOTIONS IN LIMINE - 14

1  R. Civ. P. 26(a)(2)(B)(i) (expert disclosures must contain "a complete statement of all opinions

2  the witness will express and the basis and reasons for them"); *Reed v. Binder*, 165 F.R.D. 424,

3  429 (D.N.J. 1996) (expert reports must be "detailed" and "complete").  And Drabik's

4  conclusory opinion is otherwise inadmissible expert testimony because ███████████

5  ████████████████████ "only by the *ipse dixit* of the expert."  *General Elec. Co. v.*

6  *Joiner*, 522 U.S. 136, 146 (1997); *see Wendler & Ezra, P.C. v. Am. Intern. Group, Inc.*, 521

7  F.3d 790, 791 (7th Cir. 2008) (per curiam).

8      On August 17, 2012, nearly a month after the close of fact discovery, Motorola

9  purported to supplement its interrogatory response to incorporate by reference the more than

10 250 pages of Drabik's various expert reports.  *See* Wion Decl. Ex. 16 (Motorola

11 Supplementary Response) at 14.  Microsoft had relied on Motorola's interrogatory responses

12 and did not address these two patents in its opening expert reports, and, although Microsoft's

13 expert Dr. Michael Orchard discussed the '514 patent in his rebuttal report, given the failure of

14 Motorola to identify the relevant portions of the standard ████████████████

15 ████████, Dr. Orchard has not been able to respond fully to arguments about the

16 supposed essentiality of the '514 patent that Motorola might try to advance for the first time at

17 trial.

18      Under Federal Rule 26(e), a party is required to supplement its discovery responses "in

19 a timely manner if the party learns in some material respect the disclosure or response is

20 materially incomplete."  Fed. R. Civ. P. 26(e)(1)(A).  Rule 37 provides that if a party fails to

21 make the requisite supplementation, it "is not allowed to use that information or witness to

22 supply evidence on a motion, hearing, or at trial, unless the failure was substantially justified or

23 is harmless."  Fed. R. Civ. P. 37(c)(1).  *See also Mealing v. City of Ridgefield*, No. C05-

24 5778FDB, 2007 WL 1367603, at *1 (W.D. Wash. May 8, 2007) (Rule 37 is self-executing "in

25 order to produce a strong inducement for disclosure"); *Watkins v. Vestil Mfg. Corp.*, No. 2:07–

26

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1  CV–0152–RWS, 2010 WL 883754, at *6 (N.D. Ga. Mar. 5, 2010) (disclosure of an asserted

2  defense through the submission of an expert report and other documents was not sufficient

3  under Rule 37 to avoid an exclusion order; party was required to disclose the defense in its

4  response to written discovery requests).

5      Because Motorola did not timely supplement its interrogatory response in any adequate

6  or meaningful way and because Drabik has provided ███████████████████████████████████

7  ███████████████████████████████████████████████, no testimony that the '514

8  patent is essential to the H.264 standard should be permitted at trial.  Microsoft assumes that no

9  opinion will be offered as to the '317 patent, but moves for exclusion of testimony as to its

10  essentiality as a precaution.

11  **MIL No. 6:    Exclude Testimony by Motorola's Expert Dr. Timothy Drabik Concerning**
   **Bitrate Improvements Attributable To Motorola's Patents Not Set Forth In**
12  **His Expert Report.**

13      Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), Microsoft moves *in limine* to

14  bar any testimony from Motorola's technical expert on H.264 video coding technology, Dr.

15  Timothy Drabik, quantifying any improvements in bitrate allegedly attributable to Motorola's

16  patents over certain alternatives because those quantifications were not disclosed in Drabik's

17  expert reports.

18      One of the issues in connection with Motorola's H.264 standard essential patents is

19  whether the Motorola patents permitted the H.264 standard to achieve improvements in video,

20  or "bitrate."  Drabik should not be permitted to testify about supposed quantifiable bitrate

21  improvements due to Motorola patents where the opinions are not set out in his expert reports.

22  Fed. R. Civ. P. 26(a)(2)(B)(i) (expert disclosures must contain "a complete statement of all

23  opinions the witness will express and the basis and reasons for them"); *Bess v. Cate*, 422 Fed.

24  Appx. 569, 571–72 (9th Cir. 2011) (affirming strike of expert declaration that exceeded the

25

26

MICROSOFT'S MOTIONS IN LIMINE - 16

1  scope of the expert report); *Estate of Bojcic v. City of San Jose*, 358 Fed. Appx. 906, 907–08

2  (9th Cir. 2009) (same).

3       At his deposition, Drabik was asked

4

5                                    *See* Wion Decl. Ex. 14 (Drabik Dep.) at 99:17–103:2

6  (

7                   ); *id* at 114:16–117:5 (

8              ); *id.* at 109:9–109:15 (

9                                    ); *id.* at 89:10–22 (

10         ); 121:23–122:12 (                    ); 119:23–120:7 (                    ).

11  Drabik should be precluded from offering testimony quantifying the alleged bitrate savings of

12  these technologies over any alternative.

13       Drabik also asserted that

14

15                                                         . *See, e.g.,* Wion

16  Decl. Ex. 14 (Drabik Dep.) at 120:2–7

17

18                                                    ); *see also* Drabik

19  Dep. Tr. at 116:7–14, 116:21—117:5, 122:16—18. But his expert reports cite hundreds of

20  documents. *See* Wion Decl. Ex. 15 (Drabik Rpt.) Tab B (31-page listing of materials

21  considered). Drabik should not be allowed to testify to percentage bitrate savings not set forth

22  in the body of his report. *See Reed*, 165 F.R.D. at 429 (expert reports must be "detailed" and

23  "complete"); *Smith v. State Farm Fire and Cas. Co.*, 164 F.R.D. 49, 53–54 (S.D. W. Va. 1995)

24  (rejecting as insufficient under Rule 26 expert reports that "refer to massive amounts of

25

26

MICROSOFT'S MOTIONS IN LIMINE - 17

1  documents as the basis for the opinions which are expressed in vague terms, with few specific

2  references.").

3      DATED this 4th day of October, 2012.

4                          CALFO HARRIGAN LEYH & EAKES LLP

5                          By  s/ Arthur W. Harrigan, Jr.
6                              Arthur W. Harrigan, Jr., WSBA #1751
                               Christopher Wion, WSBA #33207
7                              Shane P. Cramer, WSBA #35099

8                          By  s/ T. Andrew Culbert
                               T. Andrew Culbert, WSBA #35925
9                              David E. Killough, WSBA #40185
                               MICROSOFT CORPORATION
10                             1 Microsoft Way
                               Redmond, WA 98052
11                             Phone: 425-882-8080
                               Fax: 425-869-1327
12
13                             David T. Pritikin, *Pro Hac Vice*
                               Richard A. Cederoth, *Pro Hac Vice*
14                             Constantine L. Trela, Jr., *Pro Hac Vice*
                               Ellen Robbins, *Pro Hac Vice*
15                             Douglas I. Lewis, *Pro Hac Vice*
                               Dave Giardina, *Pro Hac Vice*
16                             John W. McBride, *Pro Hac Vice*
                               Nathaniel C. Love, *Pro Hac Vice*
17                             SIDLEY AUSTIN LLP
                               One South Dearborn
18                             Chicago, IL 60603
                               Phone: 312-853-7000
19                             Fax: 312-853-7036
20
                               Carter G. Phillips, *Pro Hac Vice*
21                             SIDLEY AUSTIN LLP
                               1501 K Street, N.W.
22                             Washington, D.C. 20005
                               Phone: 202-736-8000
23                             Fax: 202-736-8711
24
                               Counsel for Microsoft Corporation
25
26
MICROSOFT'S MOTIONS IN LIMINE - 18

## CERTIFICATE OF SERVICE

I, Linda Bledsoe, swear under penalty of perjury under the laws of the State of Washington to the following:

1.   I am over the age of 21 and not a party to this action.

2.   On the 4th day of October, 2012, I caused the preceding document to be served on counsel of record in the following manner:

**Attorneys for Motorola Solutions, Inc., and Motorola Mobility, Inc.:**

| | |
|---|---|
| Ralph Palumbo, WSBA #04751 | |
| Philip S. McCune, WSBA #21081 | _____ Messenger |
| Lynn M. Engel, WSBA #21934 | _____ US Mail |
| Summit Law Group | _____ Facsimile |
| 315 Fifth Ave. South, Suite 1000 | __X__ ECF |
| Seattle, WA 98104-2682 | |
| Telephone: 206-676-7000 | |
| Email: Summit1823@summitlaw.com | |

| | |
|---|---|
| Steven Pepe (*pro hac vice*) | _____ Messenger |
| Jesse J. Jenner (*pro hac vice*) | _____ US Mail |
| Ropes & Gray LLP | _____ Facsimile |
| 1211 Avenue of the Americas | __X__ ECF |
| New York, NY 10036-8704 | |
| Telephone: (212) 596-9046 | |
| Email: steven.pepe@ropesgray.com | |
| Email: jesse.jenner@ropesgray.com | |

| | |
|---|---|
| Norman H. Beamer (*pro hac vice*) | _____ Messenger |
| Ropes & Gray LLP | _____ US Mail |
| 1900 University Avenue, 6th Floor | _____ Facsimile |
| East Palo Alto, CA 94303-2284 | __X__ ECF |
| Telephone: (650) 617-4030 | |
| Email: norman.beamer@ropesgray.com | |

MICROSOFT'S MOTIONS IN LIMINE - 19

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

Paul M. Schoenhard (*pro hac vice*)

2

Ropes & Gray LLP
One Metro Center
700 12th Street NW, Suite 900

3

Washington, DC  20005-3948
Telephone:  (202) 508-4693

4

Email: Paul.schoenhard@ropesgray.com

|        | Messenger |
|--------|-----------|
|        | US Mail   |
|        | Facsimile |
| X      | ECF       |

5

DATED this 4th day of October, 2012.

6

7

s/ Linda Bledsoe

8

LINDA BLEDSOE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MICROSOFT'S MOTIONS IN LIMINE - 20