1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION, a Washington corporation,

Plaintiff,

v.

MOTOROLA, INC., MOTOROLA MOBILITY LLC, and GENERAL INSTRUMENT CORPORATION,

Defendants.

CASE NO. C10-1823-JLR

DEFENDANTS' MOTIONS IN LIMINE

**NOTE ON MOTION CALENDAR:**
**Friday, October 19, 2012**

**ORAL ARGUMENT REQUESTED**

**REDACTED**

DEFENDANTS' MOTIONS IN LIMINE
CASE NO. C10-1823-JLR

1

## TABLE OF CONTENTS

2
**Page(s)**

3
TABLE OF CONTENTS ........................................................................................ i

4
5
I.      MOTION IN LIMINE NO. 1:  INFORMATION WITHHELD AS PRIVILEGED
        DURING DISCOVERY SHOULD BE EXCLUDED FROM TRIAL. ........................... 1

6
7
II.     MOTION IN LIMINE NO. 2:  MICROSOFT SHOULD BE PRECLUDED
        FROM OFFERING TESTIMONY REGARDING A *GEORGIA-PACIFIC*
        ANALYSIS ........................................................................................... 3

8
9
10
III.    MOTION IN LIMINE NO. 3: TESTIMONY SUGGESTING THAT
        UNLICENSED USE OF MOTOROLA'S 802.11 AND H.264 STANDARD-
        ESSENTIAL PATENTS CONSTITUTES A "ROYALTY-FREE LICENSE"
        SHOULD BE EXCLUDED ........................................................................ 4

11
IV.     MOTION IN LIMINE NO. 4:  PETER ROSSI'S UNSUPPORTED OPINIONS
        ARE UNRELIABLE AND SHOULD BE EXCLUDED ................................... 6

12
13
14
V.      MOTION IN LIMINE NO. 5:  TESTIMONY SUGGESTING THAT
        INTECAP'S 2003 ANALYSIS OF EARLY 802.11 TECHNOLOGY
        CONSTITUTED A VALUATION OF MOTOROLA'S 802.11 STANDARD-
        ESSENTIAL PATENT PORTFOLIO SHOULD BE EXCLUDED. ............... 8

15
16
17
VI.     MOTION IN LIMINE NO. 6: EVIDENCE CONCERNING PATENT POOLS IN
        MULTILATERAL *EX ANTE* NEGOTIATIONS IS IRRELEVANT AND
        SHOULD BE EXCLUDED ...................................................................... 10

VII.    CERTIFICATION ................................................................................ 12

18
19
20
21
22
23
24
25
26

S UMMIT  L AW  G ROUP  PLLC
315 F IFTH  A VENUE  S OUTH , S UITE  1000
S EATTLE , W ASHINGTON  98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

# TABLE OF AUTHORITIES

**Cases**                                                                                               **Page(s)**

*Avila v. Willits Envtl. Remediation Trust*,
    633 F.3d 828 (9th Cir. 2011) ...........................................................................................5

*Chevron Corp. v. Pennzoil Co.*,
    974 F.2d 1156 (9th Cir. 1992) .........................................................................................2

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)..........................................................................................................8

*Lexington Ins. Co. v. Swanson*,
    No. C05-1614JP, 2007 U.S. Dist. LEXIS 53509 (W.D. Wash. July 23, 2007)..................1, 2

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006).........................................................................................3

*Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*,
    637 F.3d 1269 (Fed. Cir. 2011).........................................................................................3

*Turner v. Univ. of Wash.*,
    No. C05-1575RSL, 2007 U.S. Dist. LEXIS 78281 (W.D. Wash. Oct. 10, 2007) ...............1, 2

*U.S. Fid. and Guar. Co. v. Lee Invs. LLC*,
    641 F.3d 1126 (9th Cir. 2011) .........................................................................................3

*United States v. Sayre*,
    434 F. App'x 622 (9th Cir. 2011) ....................................................................................7

*Wang Labs. Inc. v. Mitsubishi Elecs. Am., Inc.*,
    103 F.3d 1571 (Fed. Cir. 1997), cert. denied, 522 U.S. 818 (1997) .........................................4

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) .........................................................................................3

### OTHER AUTHORITIES

Fed. R. Civ. P. 26.......................................................................................................................3

Fed. R. Civ. P. 37.......................................................................................................................3

Fed. R. Evid. 401.......................................................................................................................9

Local Rule 7(d)(4).....................................................................................................................12

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

## I.  MOTION IN LIMINE NO. 1:  INFORMATION WITHHELD AS PRIVILEGED DURING DISCOVERY SHOULD BE EXCLUDED FROM TRIAL.

It is axiomatic that the subject matter of testimony withheld during deposition as privileged must also be excluded at trial.  *See Lexington Ins. Co. v. Swanson*, No. C05-1614JP, 2007 U.S. Dist. LEXIS 53509, at *13 (W.D. Wash. July 23, 2007) (noting that, absent waiver, the party asserting privilege may not then introduce or rely on the materials withheld on grounds of privilege).  Therefore, Motorola respectfully requests that the Court preclude Microsoft from offering at trial any evidence or eliciting any testimony that was withheld under a claim of attorney-client privilege during depositions of Microsoft witnesses.

During the depositions of various Microsoft witnesses, in particular, Horatio Gutierrez and Amy Marasco, counsel for Motorola inquired about Microsoft's actions following the receipt of Motorola's offer letters of October 21 and 29, 2010 ("Motorola's offer letters").  (*See* Ex. 11 at 86:12-23, 88:11-90:24; Ex. 12 at 21:20-24:12, 28:10-30:7, 42:7-47:25, 53:3-54:10, 66:14-69:2, 73:22-74:8, 81:24-83:2, 113:17-116:10.)[1]  As Motorola explained in its opposition to Microsoft's Summary Judgment motion (Dkt. No. 274 at 3), counsel for Motorola asked Mr. Gutierrez numerous questions on a variety of different issues, including ████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████  Counsel for Motorola also asked Ms. Marasco in her deposition about ████████████████████████.

During both depositions, counsel for Microsoft repeatedly instructed each witness to limit their answers on the grounds of attorney-client privilege, and in some instances instructed the witness not to answer at all.  Microsoft, having elected to withhold information about its actions in response to Motorola's offer letters, must abide by this decision.  *See Turner v. Univ. of Wash.*, No. C05-1575RSL, 2007 U.S. Dist. LEXIS 78281, at *3-4 (W.D. Wash. Oct. 10, 2007) ("A

---

[1] "Ex. ___" refers to the stated Exhibit to the Declaration of Stuart W. Yothers, concurrently herewith.

DEFENDANTS' MOTIONS IN LIMINE - 1
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

privilege-holder may elect to withhold or disclose, but after a certain point his election must remain final.") (quotation marks and citation omitted).  Microsoft should be precluded from offering evidence or eliciting testimony at trial on subject matter that was withheld on the grounds of privilege.

"The privilege which protects attorney-client communications may not be used both as a sword and a shield."  *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992).  It is unfairly prejudicial to allow a party to introduce evidence or elicit testimony at trial that it refused to provide during discovery on grounds of privilege, where that withheld information was not discoverable through other means.  *See Lexington Ins. Co.*, 2007 U.S. Dist. LEXIS 53509, at *13. Otherwise a party could secretly marshal its evidence under the cover of privilege, and impede its adversary's effective preparation for trial.  This Court has previously excluded evidence at trial that was withheld on the basis of privilege during discovery to avoid this form of ambush.  *See Turner*, 2007 U.S. Dist. LEXIS 78281, at *3-4.  Here, the information withheld on the grounds of privilege was not discoverable through other means and to allow Microsoft to now introduce evidence on these subjects at trial would be the type of "trial by ambush" that discovery laws are meant to prevent.

Motorola respectfully requests that Microsoft be precluded at trial from offering any evidence or eliciting testimony that was withheld during deposition as privileged.  This includes evidence and testimony relating to the following subject matter withheld on the basis of privilege during the Gutierrez and Marasco depositions set forth in Exhibits 11 and 12: (1) ███████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

DEFENDANTS' MOTIONS IN LIMINE - 2
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

2

## II.     MOTION IN LIMINE NO. 2:  MICROSOFT SHOULD BE PRECLUDED FROM OFFERING TESTIMONY REGARDING A *GEORGIA-PACIFIC* ANALYSIS

3

4                Under Rule 26(a)(2)(B)(i), Fed. R. Civ. P., an expert's report must contain "a complete

5       statement of all opinions the witness will express and the basis and reasons for them."  *See also*

6       Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required

7       by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence

8       on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is

9       harmless."); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)

10      ("Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information

11      required to be disclosed by Rule 26(a) that is not properly disclosed.").  Applying Rules 26 and

12      37, courts routinely preclude experts from testifying as to opinions not expressed in their expert

13      reports.  *See, e.g.*, *U.S. Fid. and Guar. Co. v. Lee Invs. LLC*, 641 F.3d 1126, 1138 (9th Cir. 2011)

14      (district court did not abuse its discretion in granting motion in limine precluding experts from

15      testifying as to matters beyond the scope of their expert reports); *Siemens Med. Solutions USA,*

16      *Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1286 (Fed. Cir. 2011) (same); *O2*

17      *Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1368-69 (Fed. Cir. 2006)

18      (affirming district court's exclusion of expert opinions concerning matters not disclosed in the

19      opening expert reports).

20                Microsoft's expert Matthew Lynde is the only Microsoft expert to offer an opinion about

21      the appropriate terms for a license between Motorola and Microsoft.  In his report, he relied solely

22      on the rates from two patent pools – MPEG LA and Via Licensing.  Dr. Lynde did not offer *any*

23      opinion regarding the outcome of a *Georgia-Pacific*-like analysis or a hypothetical bilateral

24      negotiation between Microsoft and Motorola.  Dr. Lynde does not even mention *Georgia-Pacific*

25      in his opening report, and his opinions about *Georgia-Pacific* in his rebuttal are limited to either

26      critiquing the *Georgia-Pacific* methodology in its entirety or critiquing Mr. Donohoe's actual

        modified *Georgia-Pacific* analysis.  (*See, e.g.*, Ex. 1 at 9-12; *id.* at 41 ("[A] GP analysis is entirely

DEFENDANTS' MOTIONS IN LIMINE - 3
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

inappropriate for the issue of estimating the intrinsic ex ante incremental value of Motorola's technology at issue to Microsoft."); *id.* at 8-54.)  Dr. Lynde never advances his own opinions regarding the outcome of a *Georgia-Pacific* analysis, including any rate that would result from such a negotiation.

At his deposition, Dr. Lynde did not offer any opinions regarding the outcome of a *Georgia-Pacific* analysis and testified expressly that he had not formulated any expert opinions that he had not included in his reports.  (Ex. 2 at 33:23-34:4.)  To the extent that Dr. Lynde attempts to offer testimony at trial about what he believes would be an appropriate *Georgia-Pacific* analysis in this case or a rate that would result from such an analysis, he should be precluded from doing so.

## III.   MOTION IN LIMINE NO. 3: TESTIMONY SUGGESTING THAT UNLICENSED USE OF MOTOROLA'S 802.11 AND H.264 STANDARD-ESSENTIAL PATENTS CONSTITUTES A "ROYALTY-FREE LICENSE" SHOULD BE EXCLUDED

Microsoft should be precluded from introducing evidence or eliciting testimony suggesting that any unlicensed use of Motorola's 802.11 or H.264 standard-essential patents by third parties constitutes a "royalty-free license."  Such a position has no basis in law or fact.

In his rebuttal expert report, Microsoft's expert witness Kevin Murphy stated that the unlicensed use of Motorola's 802.11 and H.264 standard-essential patent portfolios are royalty-free "implicit agreements" that should be factored into determining a RAND rate.  (Ex. 3 at ¶¶ 28-30.)  The unlicensed use of a patent is not a royalty-free license.  Indeed, absent an express license, any "royalty-free license" could only exist here as an implied license, or through equitable estoppel.[2]  *See Wang Labs. Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1580-81 (Fed. Cir. 1997), cert. denied, 522 U.S. 818 (1997).  An implied license demands some "affirmative grant of consent or permission to make, use, or sell: i.e., a license."  *See id.* at 1579-82.  But Mr. Murphy conceded that the supposedly "royalty-free use did not result from explicit negotiations," and

---

[2] Legal estoppel can lead to an implied license but it is not applicable here, because it involves the grant of an express license (absent here) in exchange for valuable consideration (also absent here), followed by a patentee's attempt to "derogate or detract from" the licensed rights.  *Wang*, 103 F.3d at 1581.

DEFENDANTS' MOTIONS IN LIMINE - 4
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   points to no other possible affirmative conduct indicating permission or consent.  (Ex. 3 at ¶ 28.)

2   Motorola's letters of assurance to the IEEE regarding Motorola's 802.11 standard-essential patents

3   state explicitly that "*[n]o license is implied* by submission of this Letter of Assurance."  (*See*, *e.g.*,

4   Ex. 3 at MOTM_WASH1823_0000001, 002, 008, 010 (emphasis added).)

5       Similarly, equitable estoppel requires misleading conduct by the patentee beyond mere

6   silence.  *See A.C. Aukerman Co. v. R.L. Chaides Constr*. Co., 960 F.2d 1020, 1042-43 (Fed. Cir.

7   1992) (en banc) ("silence alone will not create an estoppel unless there was a clear duty to speak").

8   Motorola's letters of assurance to the IEEE are clearly not silent, nor are they misleading.  They

9   explicitly disclaim any implied license, and no evidence suggests that Motorola has made gestures

10  to the contrary.   In fact, nowhere has any of Microsoft's experts identified any evidence

11  supporting an implied license or equitable estoppel with respect to such unlicensed third parties,

12  and no third parties have taken such a position in this matter.  ████████████

13  ████████████████████████████████████████████

14  ████████████████████  In short, Microsoft is arguing

15  that Motorola has implicitly granted a royalty-free license to these third parties by its mere failure

16  to try to enforce or license its patents to these entities – that makes no sense and has no basis in the

17  law.  Taking Microsoft's argument to its logical conclusion, all unlicensed third parties have an

18  implied agreement from Microsoft to use its patents on a royalty-free basis – a position Microsoft

19  surely is not taking and would never take.

20      Moreover, Mr. Murphy has admitted that he is not a lawyer, a patent expert, or even

21  experienced in patent licensing (*id*. at 12:12-13:3; 50:3), and that he has not formed the legal

22  conclusion that unlicensed use is a "royalty free license."  (*Id.* at 89:14-17.)  Mr. Murphy's lack of

23  relevant expertise does not simply undermine the weight of his conclusory opinions: it renders

24  them unreliable and therefore inadmissible.  *See Avila v. Willits Envtl. Remediation Trust*, 633

25  F.3d 828, 839 (9th Cir. 2011) ("[L]ack of specialization may go to weight only 'as long as an

26  expert stays within the reasonable confines of his subject area.'").  Mr. Murphy's inexpert,

DEFENDANTS' MOTIONS IN LIMINE - 5
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

unsupported (and unsupportable) assertion of "widespread unlicensed use" is not evidence of "royalty-free licenses."

Motorola respectfully requests that this Court preclude Microsoft from introducing evidence or eliciting testimony that equates unlicensed use of Motorola's H.264 and 802.11 patent portfolios with alleged "royalty-free licenses."

## IV.   MOTION IN LIMINE NO. 4:  PETER ROSSI'S UNSUPPORTED OPINIONS ARE UNRELIABLE AND SHOULD BE EXCLUDED

Motorola respectfully requests that the Court preclude Microsoft's expert, Peter E. Rossi, from offering opinion testimony on topics for which he has provided no factual basis for his opinions.  In particular, Dr. Rossi, who did not conduct his own survey or research, should be precluded from offering opinion testimony on whether any given question in Dr. Ramamirtham Sukumar's survey was likely to be confusing to respondents and what the expected response rates for any given question should have been.

Dr. Sukumar is the CEO of Optimal Strategix Group, Inc., a strategic market research and marketing consulting company, and was retained by Motorola to conduct a survey regarding the usage and valuation of various features offered in Microsoft's Xbox 360 console.  Dr. Rossi is an economics and marketing professor at UCLA who submitted a rebuttal report criticizing Dr. Sukumar's survey methodology.

Dr. Rossi does not own an Xbox, has not used an Xbox, has no technical expertise with respect to the Xbox, H.264 or 802.11, did no independent research into the average consumer's familiarity with Xboxes or terminology related to Xboxes, did not speak to or otherwise have any contact with any of the participants from Dr. Sukumar's surveys, and did not conduct a survey of his own.  Despite the complete lack of factual underpinnings for his opinions, Dr. Rossi offers the following unsupportable opinions:

- "I would expect that closer to 100 per cent would state 'unsure' if the respondents actually understood the meaning of the terms."  (Ex. 5 at ¶ 38.)

- "Surely, few if any respondents had any idea of what this is referring to."  (*Id.* at ¶ 39.)

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

- "Given that MBAFF is a highly technical term that is very uncommonly used, it seems highly likely that most respondents did not know what this term means." (*Id.*)

- "I would then expect more than 95 per cent to respond "not sure." (*Id.*)

- "It is doubtful that many survey respondents understand the distinction between b/g and b/g/n" (*Id*. at ¶ 42.)

- "Almost certainly, the Authentic Response panel is skewed towards older and middle income US residents."  (*Id.* at ¶ 45.)

Dr. Rossi admits to not having specialized knowledge about Xbox consoles or Xbox users. (Ex. 6 at 15:19-16:19.)  Nothing in his background makes Dr. Rossi especially suited to opine on how Xbox users are likely to respond to various questions.  *See United States v. Sayre*, 434 F. App'x 622, 624 (9th Cir. 2011) (unpublished) (affirming the district court's exclusion of opinion testimony based on the expert's "knowledge and experience" where the expert had no specialized industry knowledge).  When asked to provide a basis for believing it "unlikely" that respondents understood various terms, Dr. Rossi simply opined "[t]hat when I don't know [what] MBAFF means . . .  I'm quite confident it's very unlikely [other] people understood what that meant."  (Ex. 6 at 167:14-17.)  In short, despite having no practical experience with Xboxes himself, Dr. Rossi nevertheless concludes that his lack of familiarity with related technical terminology is representative of all Xbox owners – an unsupportable (and particularly egregious) case of "If I don't know what it means, they can't know what it means either."   Similarly, Dr. Rossi's assumptions that "more than 95%" and "closer to 100%" of respondents *should* have answered a certain way appear to have been formulated out of thin air.  When asked to substantiate those numbers, Dr. Rossi admitted that he did not conduct any formal studies to arrive at those percentages.  (*Id.* at 171:9-172:14; 182:1-14.)  As someone who admittedly has no personal or professional knowledge of the subject matter being surveyed, what Dr. Rossi "expects" a knowledgeable respondent to know or not know is irrelevant, unreliable, and grossly prejudicial to Motorola if such speculations are permitted to be entered into the testimonial record.  Put simply, Dr. Rossi has no idea what Xbox users know about their Xboxes.

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   Opinion testimony by an expert is not admissible simply because it "stands on its own

2   right."  This is the epitome of *ipse dixit* testimony that should be excluded under this court's

3   gatekeeping authority.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either

4   *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is

5   connected to existing data only by the *ipse dixit* of the expert.").  Because Dr. Rossi has not

6   provided reliable bases for his opinions as to what terms may or may not be familiar to Xbox users

7   and how respondents "should" have responded to Dr. Sukumar's survey questions, this Court

8   should preclude Microsoft and Dr. Rossi from offering any such opinion testimony.

9   **V.    MOTION IN LIMINE NO. 5:  TESTIMONY SUGGESTING THAT INTECAP'S**

10  **2003 ANALYSIS OF EARLY 802.11 TECHNOLOGY CONSTITUTED A**
    **VALUATION OF MOTOROLA'S 802.11 STANDARD-ESSENTIAL PATENT**

11  **PORTFOLIO SHOULD BE EXCLUDED.**

12      In 2003, InteCap assisted certain Motorola employees in evaluating licensing

13  opportunities for certain Motorola 802.11 patents.  Microsoft claims that InteCap's 2003 study

14  establishes the value of Motorola's entire portfolio of 802.11 standard-essential patents (and

15  applicable royalty rates) as of October 2010.  (*See, e.g.*, Ex. 7 at 33-34).  For at least the reasons

16  below, this comparison is improper and should be excluded.

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTIONS IN LIMINE - 8
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

██████████████████████████████████████████████████████████

█████████████████████████████████████████

Evidence indicates that the 2003 InteCap study was intended to explore possible licensing opportunities during the infancy of 802.11 deployment in the market.  (Ex. 9 at 60:4-62:15.)  It was not meant to be a formal valuation of Motorola's 802.11 patents and their applicable royalty rates for the future.  ████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████  Microsoft has not identified any evidence establishing or even suggesting that the study was intended to determine a royalty rate in 2003 that would also necessarily apply to the full portfolio of Motorola's 802.11 standard-essential patents in 2010.

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████  This further reduces any relevance of InteCap's 2003 analysis to the 802.11 market in October, 2010.

Without accounting for these significant discrepancies, Microsoft seeks to use the 2003 InteCap industry assessment to establish a specific unrelated (and unknowable at the time) fact: the royalty rates applicable to Motorola's 802.11 standard-essential patent portfolio as of October 2010.   But given the issues noted above, the InteCap study does not meet the threshold requirement of Federal Rule of Evidence 401 in that it does not tend to make any fact more or less probable than it would be without the InteCap study.  Thus, the 2003 InteCap study is irrelevant to

DEFENDANTS' MOTIONS IN LIMINE - 9
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    the determination of a RAND royalty rate for Motorola's 802.11 standard-essential patents in

2    October 2010.

3        The Court should therefore preclude Microsoft from offering evidence or eliciting

4    testimony that the 2003 InteCap study is an estimate of the value or royalty rates applicable to

5    Motorola's 802.11 standard-essential patents as of October 2010.

6    **VI.    MOTION IN LIMINE NO. 6: EVIDENCE CONCERNING PATENT POOLS IN
7            MULTILATERAL *EX ANTE* NEGOTIATIONS IS IRRELEVANT AND SHOULD
             BE EXCLUDED**

8        Motorola asks the Court to exclude the testimonies of three Microsoft experts – Drs.

9    Lynde, Murphy, and Simcoe – concerning the Via Licensing and MPEG LA patent pools as

10   appropriate proxies for multilateral *ex ante* negotiations in a determination of RAND terms and

11   conditions for the patents at issue.  The two namesake features of Microsoft's methodology –

12   being *multilateral* and occurring *ex ante* – are nowhere to be found in either pool.  As such, each

13   pool fails to meet the threshold requirements that Microsoft's experts themselves declare are

14   necessary for the application of their RAND determination methodology.  Because these patent

15   pools do not support Microsoft's experts' opinions, all evidence and testimony suggesting that

16   these patent pools are proxies for a multilateral *ex ante* negotiation is unsupportable and unreliable

17   and should be excluded.

18       None of Motorola's 802.11 and H.264 patents are part of either the Via Licensing or the

19   MPEG LA patent pool.  In fact, Motorola is neither a licensor nor licensee in either pool.  The fact

20   that Motorola's patents are not part of the pools renders the pools inapplicable and inappropriate

21   as benchmarks for determining the appropriate RAND terms for these patents.  Indeed, because

22   these pools do not include Motorola's patents, the royalty rates established by the licensors to

23   these pools do not reflect the value of Motorola's H.264 and 802.11 portfolios.  These rates are

24   wholly untethered from the patents at issue in this case.

25       Moreover, these pool licenses are not "multilateral," as Microsoft has falsely posited.

26   Multilateralism is based on the premise of "full participation" among all potential licensors (*i.e.,*

DEFENDANTS' MOTIONS IN LIMINE - 10
CASE NO. C10-1823-JLR

1   all standard essential patent holders) and all potential licensees.  This is not the case for either

2   pool.  The Via Licensing patent pool (which neither Motorola nor Microsoft has joined) was

3   formed by only 5 or 6 licensors out of the hundreds (or thousands) of patent holders and

4   implementers in the 802.11 marketplace – a far cry from the "full participation" that Dr. Lynde

5   opines must exist.  (*See* Ex. 7 at 7, 27.)  Similarly, the MPEG LA pool was formed by only around

6   15 of the over 1,100 licensors and licensees now participating in the pool.  Such small levels of

7   participation cannot provide the multilateral "perspective" that Microsoft's own experts claim is

8   necessary to a reliable application of this methodology.  Indeed, even if "multilateral" requires

9   something less than "full participation," the dearth of patent holders and implementers that

10  participated in the formation of these pools renders them irrelevant as possible benchmarks.

11          The pool licenses that Microsoft's experts claim to be proxies to its multilateral *ex ante*

12  approach are also not actually *ex ante* – another threshold requirement set forth by Dr. Lynde.

13  (*Id.*)  To be *ex ante*, the pool licenses should have been formed prior to the 802.11 and H.264

14  standards' adoption or wide implementation.  But neither pool was created through an *ex ante*

15  negotiation.  (*See, e.g.*, *id*. at 9 ("[The Via Licensing Pool] was not really an *ex ante*

16  negotiation.").)  The Via Licensing pool agreement was established in 2005, eight years **after** the

17  original 802.11 standard was adopted in 1997.  In the case of MPEG LA, the H.264 standard was

18  adopted in May 2003 but the terms for the pool were set six months **later**, in November 2003.

19          The facts underlying the formation of the MPEG LA and Via Licensing pools demonstrate

20  that these pools were established (1) by a fraction of the potential licensors and licensees, and (2)

21  after the adoption of the H.264 and 802.11 standards.  Thus, the namesake features of Microsoft's

22  theory – multilateral *ex ante* negotiations – are absent from these patent pools.  Therefore, all

23  testimony advancing the argument that patent pools are appropriate proxies for multilateral *ex ante*

24  negotiations in the determination of RAND terms and conditions should be excluded.  The pools

25  put forth here are not proper proxies and should be excluded.

26

DEFENDANTS' MOTIONS IN LIMINE - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

## VII.   CERTIFICATION

2      Defendants hereby certify that, pursuant to Local Rule 7(d)(4), they conferred in good faith

3  with counsel for Microsoft on October 2, 2012.  The parties were unable to reach agreement as to

4  these motions.

5

6      DATED this 4th day of October, 2012.

7                                              Respectfully submitted,

8                                              SUMMIT LAW GROUP PLLC

9                                              By */s/ Ralph H. Palumbo*

10                                                 Ralph H. Palumbo, WSBA #04751
                                                   Philip S. McCune, WSBA #21081
11                                                 Lynn M. Engel, WSBA #21934
                                                   *ralphp@summitlaw.com*
12                                                 *philm@summitlaw.com*
                                                   *lynne@summitlaw.com*
13
                                               By */s/ Thomas V.  Miller*
14                                                 Thomas V. Miller
                                                   MOTOROLA MOBILITY LLC
15                                                 600 North U.S. Highway 45
                                                   Libertyville, IL  60048-1286
16                                                 (847) 523-2162
17                                             And by
18
                                                   Jesse J. Jenner (*pro hac vice* )
19                                                 Steven Pepe (*pro hac vice* )
                                                   Stuart W. Yothers (*pro hac vice*)
20                                                 Kevin J. Post (*pro hac vice*)
                                                   Ropes & Gray LLP
21                                                 1211 Avenue of the Americas
                                                   New York, NY  10036-8704
22                                                 (212) 596-9046
                                                   *jesse.jenner@ropesgray.com*
23                                                 *steven.pepe@ropesgray.com*
                                                   *stuart.yothers@ropesgray.com*
24                                                 *kevin.post@ropesgray.com*

25

26

DEFENDANTS' MOTIONS IN LIMINE - 12
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

James R. Batchelder (*pro hac vice*)
Norman H. Beamer (*pro hac vice* )
Ropes & Gray LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA  94303-2284
(650) 617-4030
*james.batchelder@ropesgray.com*
*norman.beamer@ropesgray.com*

Paul M. Schoenhard (*pro hac vice*
Ropes & Gray LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC  20005-3948
(202) 508-4693
*paul.schoenhard.@ropesgray.com*

***Attorneys for Motorola Solutions, Inc., Motorola
Mobility LLC and General Instrument Corp.***

DEFENDANTS' MOTIONS IN LIMINE - 13
CASE NO. C10-1823-JLR

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Arthur W. Harrigan, Jr., Esq.
Christopher T. Wion, Esq.
Shane P. Cramer, Esq.
Calfo Danielson, Harrigan, Leyh & Eakes LLP
*arthurh@calfoharrigan.com*
*chrisw@calfoharrigan.com*
*shanec@calfoharrigan.com*

Richard A. Cederoth, Esq.
Brian R. Nester, Esq.
David T. Pritikin, Esq.
Douglas I. Lewis, Esq.
John W. McBride, Esq.
David Greenfield, Esq.
William H. Baumgartner, Jr., Esq.
David C. Giardina, Esq.
Carter G. Phillips, Esq.
Constantine L. Trela, Jr., Esq.
Ellen S. Robbins, Esq.
Nathaniel C. Love, Esq.
Sidley Austin LLP
*rcederoth@sidley.com*
*bnester@sidley.com*
*dpritikin@sidley.com*
*dilewis@sidley.com*
*jwmcbride@sidley.com*
*david.greenfield@sidley.com*
*wbaumgartner@sidley.com*
*dgiardina@sidley.com*
*cphillips@sidley.com*
*ctrela@sidley.com*
*erobbins@sidley.com*
*nlove@sidley.com*

T. Andrew Culbert, Esq.
David E. Killough, Esq.
Microsoft Corp.
*andycu@microsoft.com*
*davkill@microsoft.com*

DATED this 4th day of October, 2012.

/s/ *Marcia A. Ripley*
Marcia A. Ripley

DEFENDANTS' MOTIONS IN LIMINE - 14
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001