UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION, | CASE NO. C10-1823JLR |
| Plaintiff, | ORDER |
| v. | |
| MOTOROLA, INC., et al., | |
| Defendants. | |
| MOTOROLA MOBILITY, INC., et al., | |
| Plaintiffs, | |
| v. | |
| MICROSOFT CORPORATION, | |
| Defendant. | |

ORDER- 1

# I.    INTRODUCTION

This matter is before the court on Defendants Motorola, Inc., Motorola Mobility, Inc., and General Instrument Corporation's (collectively, "Motorola") motion for partial summary judgment dismissing Microsoft's claim for a reasonable and non-discriminatory ("RAND") license agreement to be determined by the court (Mot. (Dkt. # 362)).[1]  Having considered Motorola's motion, Microsoft's response (Resp. (Dkt. # 374)), and Motorola's reply (Reply (Dkt. # 377)), and considering itself fully advised, the court GRANTS in part and DENIES in part Motorola's motion (Dkt. # 362).

# II.    BACKGROUND

## A.    The IEEE and the ITU as Standard Setting Organizations

Microsoft and Motorola are both members of the Institute of Electrical and Electronics Engineers ("IEEE") and the International Telecommunication Union ("ITU"). The IEEE and the ITU, neither of which are parties to the instant dispute, are international standards setting organizations.  Standards setting organizations play a significant role in the technology market by allowing companies to agree on common technological standards so that all compliant products will work together.  Standards lower costs by increasing product manufacturing volume, and they increase price competition by eliminating "switching costs" for consumers who desire to switch from products manufactured by one firm to those manufactured by another.

---

[1] While the parties in this action have both filed affirmative claims in this matter, because Microsoft filed the complaint initiating the instant action, for purposes of this order, the court names Microsoft as the "plaintiff."

ORDER- 2

1      One complication with standards is that it may be necessary to use patented

2   technology in order to practice them.  If a patent claims technology selected by a

3   standards setting organization, the patent is called an "essential patent."  Here, Motorola

4   is the owner of numerous patents "essential" to certain standards established by the IEEE

5   and the ITU.  (*See* 10/21/10 Motorola Offer Ltr. (Dkt. # 79-5); 10/29/10 Motorola Offer

6   Ltr. (Dkt. # 79-6) (see list of attachments).)  In order to reduce the likelihood that owners

7   of essential patents will abuse their market power, many standards setting organizations,

8   including the IEEE and the ITU, have adopted rules related to the disclosure and

9   licensing of essential patents.  The policies often require or encourage members of the

10  standards setting organization to identify patents that are essential to a proposed standard

11  and to agree to license their essential patents on RAND terms to anyone who requests a

12  license.  Such rules help to insure that standards do not allow essential patent owners to

13  extort their competitors or prevent them from entering the marketplace.

14  **B.    Motorola's Statements to the IEEE and the ITU**

15      This lawsuit involves two standards—the IEEE 802.11 wireless local area network

16  ("WLAN") Standard ("802.11 Standard) and the ITU H.264 advanced video coding

17  technology standard ("H.264 Standard").[2]  (*See generally* Compl. (Dkt. # 1); Am. Compl.

18  (Dkt. # 53).)  The IEEE's standard setting process is governed by its Intellectual Property

19  Rights Policy (the "IEEE Policy").  (*See generally* IEEE Policy (Dkt. #79-1).)  The IEEE

20

21      [2] The ITU developed the H.264 Standard jointly with two other standard setting

22  organizations—the International Organization for Standardization and the International
    Electrotechnical Commission.  (Partial S.J. Order (Dkt. #188) at 3.)

1  Policy provides that "IEEE standards may be drafted in terms that include the use of

2  Essential Patent Claims." (*Id.* at 18 (Section 6.2).)  The IEEE Policy defines the term

3  "Essential Patent Claim" as one or more claims in an issued patent (or pending patent

4  application) that are "necessary to create a compliant implementation of either mandatory

5  or optional portions of the normative clauses of the [Proposed] IEEE Standard . . . ." (*Id.*)

6        If the IEEE learns that an IEEE standard or a proposed IEEE standard may require

7  the use of an essential patent claim, the IEEE requires the patent holder to either state that

8  it is not aware of any patents relevant to the IEEE standard or to provide the IEEE with a

9  Letter of Assurance. (*Id.*)  Any such Letter of Assurance must include either (1) a

10  disclaimer to the effect that the patent holder will not enforce the "Essential Patent

11  Claims," or (2):

> 12  [a] statement that a license for a compliant implementation of the standard
> will be made available to an unrestricted number of applicants on a
> 13  worldwide basis without compensation or under reasonable rates, with
> reasonable terms and conditions that are demonstrably free of any unfair
> 14  discrimination. . . .

15  (*Id.*)  If the IEEE cannot obtain a Letter of Assurance, it refers the essential patent to the

16  IEEE Patent Committee. (*Id.*)

17        Motorola has submitted numerous Letters of Assurance to the IEEE in connection

18  with the 802.11 Standard stating that it "will grant" or "is prepared to grant" a license

19  under RAND terms for its patents essential to the 802.11 Standard. (*See generally* IEEE

20  LOAs (Dkt. # 79-2).)  A typical Motorola Letter of Assurance to the IEEE provides, in

21  relevant part:

22

ORDER- 4

> The Patent Holder will grant [or is prepared to grant] a license under reasonable rates to an unrestricted number of applicants on a worldwide, non-discriminatory basis with reasonable terms and conditions to comply with the [Proposed] IEEE Standard.

(*See generally id.*)  Such Letters of Assurance are irrevocable once submitted and accepted by the IEEE and apply from the date the standard is approved until the date the standard is withdrawn.  (IEEE Policy at 19.)

Like the IEEE, the ITU has established a policy (the "ITU Policy") with respect to holders of patents "essential" to implementing a standard.  (*See* ITU Policy (Dkt. # 79-3).)  Such patent holders must file with the ITU a "Patent Statement and Licensing Declaration" declaring whether they (1) will grant licenses free of charge on a RAND basis; (2) will grant licenses on RAND terms; or (3) are not willing to comply with either of the first two options.  (*See id.* at 9-12.)  If a patent holder is not willing to comply with either of the first two options, the ITU standard will not include provisions depending on the patent.  (*Id.* at 9.)

Motorola has sent numerous declarations to the ITU stating that they will grant licenses on RAND terms for its patents essential the H.264 Standard.  (*See generally* ITU Declarations (Dkt. # 79-4).)  A typical declaration by Motorola to the ITU provides, in relevant part:

> The Patent Holder will grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to use the patented material necessary in order to

manufacture, use, and/or sell implementations of the above ITU-T Recommendation | ISOC/IEC International Standard.[3]

(*E.g.*, *id.* at 2.)

## C.    Motorola's Offer Letters to Microsoft

On October 21, 2010, Motorola sent Microsoft a letter (the "October 21 Letter") that read in pertinent part:

> This letter is to confirm Motorola's offer to grant Microsoft a worldwide non-exclusive license under Motorola's portfolio of patents and pending applications having claims that may be or become Essential Patent Claims (as defined in section 6.1 of the IEEE bylaws) for a compliant implementation of the IEEE 802.11 Standards. . . .  Motorola offers to license the patents under reasonable and non-discriminatory terms and conditions ("RAND"), including a reasonable royalty of 2.25% per unit for each 802.11 compliant product, subject to a grant back license under the 802.11 essential patents of Microsoft.  As per Motorola's standard terms, the royalty is calculated based on the price of the end product (e.g, each Xbox 360 product) and not on component software (e.g., Windows Mobile Software).

(10/21/10 Offer Ltr. at 2.)  Then, on October 29, 2010, Motorola sent a similar letter (the "October 29 Letter") regarding the H.264-related patents, stating:

> Motorola offers to license the patents on a non-discriminatory basis on reasonable terms and conditions ("RAND"), including a reasonable royalty, of 2.25% per unit for each H.264 compliant product, subject to a grant back license under the H.264 patents of Microsoft, and subject to any Motorola commitments made to JVT in connection with an approved H.264 recommendation.  As per Motorola's standard terms, the royalty is calculated based on the price of the end product (e.g., each Xbox 360 product, each PC/laptop, each smartphone, etc.) and not on component software (e.g., Xbox 360 system software, Windows 7 software, Windows Phone 7 software, etc.)

---

[3] The declaration to the ITU also states that "negotiations of licenses are left to the parties concerned and are performed outside the ITU-T | ISO/IEC."  (ITU Declarations at 2.)

1  (10/29/10 Offer Ltr. at 2.)  Motorola attached to its October 29 Letter a non-exhaustive

2  list of patents it offered to license to Microsoft.  (*See id.*)

3          On November 9, 2010, Microsoft filed its complaint initiating this action, and on

4  February 23, 2011, Microsoft filed an amended complaint.  (Compl.; Am. Compl.)

5  Microsoft contends that the October 21 and October 29 Letters seek unreasonable royalty

6  rates and therefore breach Motorola's obligations to the IEEE and the ITU to grant

7  licenses on RAND terms.  (Am. Compl. at 21, 22.)  Microsoft alleges claims against

8  Motorola for breach of contract and promissory estoppel.[4]  (*Id.*)  In its prayer for relief,

9  Microsoft seeks, *inter alia*, (1) a declaration that it is entitled to a license on RAND terms

10  from Motorola for all patents subject to Motorola's commitments to the IEEE (through

11  Letters of Assurance) and to the ITU (through declarations), and (2) a judicial accounting

12  of a RAND royalty rate for Motorola's patents subject to these commitments.  (*Id.* at 25

13  (Prayer for Relief).)

14          In response, Motorola asserted affirmative defenses and counterclaims.  (*See*

15  Motorola Answer (Dkt. # 68).)  Motorola's counterclaims, which are relevant to the

16  instant motion for preliminary injunction, seek a declaratory judgment that (1) it has not

17  breached any RAND obligations, and (2) Microsoft repudiated and/or rejected the

18  benefits of Motorola's RAND obligations, and therefore Microsoft is not entitled to a

19

20  ───────────────

21      [4] Microsoft's action against Motorola also included claims for waiver and declaratory
judgment, but the court's June 1, 2011 order dismissed both of those claims, leaving only the
22  breach of contract and promissory estoppel claims.  (Dkt. # 66 at 12.)

1   license to Motorola's patents related to the H.264 and 802.11 Standards.  (*Id.* ¶¶ 61-75

2   (Counterclaims).)

3   **D.    The Court's Prior Rulings**

4           In a February 27, 2012 order, the court ruled that Motorola's Letters of Assurance

5   to the IEEE and Motorola's declarations to the ITU create enforceable contracts between

6   Motorola and the respective standard setting organization to license its essential patents

7   on RAND terms.  (2/27/12 Order (Dkt. # 188) at 10.)  Additionally, the court found that

8   as a member of the IEEE and the ITU and a prospective user of both the H.264 Standard

9   and the 802.11 Standard, Microsoft is a third-party beneficiary of the contract.  (*Id.*)

10          Following the court's February 27, 2012 order, the parties moved for summary

11  judgment.  Microsoft moved for summary judgment that Motorola breached its

12  agreements to license its standard essential patents on RAND terms by offering to license

13  its standard essential patents at 2.25% of Microsoft's end product price (a blatantly

14  unreasonable offer according to Microsoft) in the October 21 and October 29 Letters.

15  (Microsoft Mot. for SJ (Dkt. # 236).)  Motorola moved for summary judgment that

16  Microsoft had repudiated its rights as a third-party beneficiary to a RAND license by

17  initiating this lawsuit without first applying for and negotiating towards a patent license

18  for Motorola's standard essential patents.  (Motorola Mot. for SJ (Dkt. # 231).)

19          In its June 6, 2012 order on the parties' respective motions, the court again

20  examined the obligations of both Motorola and Microsoft originating from Motorola's

21  statements to both the ITU and the IEEE regarding its standard essential patents.  In this

22  order, the court reaffirmed its conclusion that Motorola's statements to the ITU and IEEE

1  did indeed constitute binding agreements to license its essential patents on RAND terms.

2  (6/6/12 Order (Dkt. # 335) at 13.)  The court also reaffirmed its decision that Microsoft

3  was a third-party beneficiary to those agreements and has a right to a RAND license for

4  Motorola's standard essential patents.[5]  (*Id.* at 14.)  With respect to Microsoft's motion

5  for summary judgment, the court determined that although Motorola's agreements with

6  the ITU and IEEE required initial offers for its standard essential patents to be made in

7  good faith, issues of fact existed as to whether Motorola's October 21 and 29 Letters

8  complied with its good faith obligations.  (*Id.* at 21-28.)  The court further explained that

9  before a jury could decide whether Motorola's offers for its standard essential patents

10  breached its duty of good faith, the court would need to determine a true RAND royalty

11  rate for purposes of comparison.  (*Id.* at 25.)  Accordingly, the court denied Microsoft's

12  motion.  (*Id.* at 28.)  The court also denied Motorola's motion for summary judgment and

13  held that applying for a patent license and negotiating towards a patent license were not

14  conditions precedent to Motorola's obligations to grant licenses on RAND terms.  (*Id.* at

15  16-21.)

16       After its June 6 order, the court held conferences with the parties with the goal of

17  moving the case towards trial.  On June 7, 2012, the court indicated to the parties its

18

19      [5] Subsequent to this court's June 6, 2012 order, the Ninth Circuit issued an opinion on Motorola's interlocutory appeal of this court's grant of an anti-suit injunction of Motorola's enforcement of a German injunction against Microsoft for patent infringement regarding two of

20  Motorola's standard essential patents.  *Microsoft Corp. v. Motorola, Inc.*, --- F.3d ----, 2012 WL 4477215 (9th Cir. Aug. 28, 2012).  In its opinion, the Ninth Circuit held that the "district court's conclusions that Motorola's RAND declarations to the ITU created a contract enforceable by

21  Microsoft as a third-party beneficiary (which Motorola concedes), and that this contract governs in some way what actions Motorola may take to enforce its ITU standard-essential patents

22  (including the patents at issue in the German suit), were not legally erroneous."  *Id.* at *9.

ORDER- 9

1    intention to conduct a trial on Microsoft's breach of contract claims, commencing

2    November 13, 2012.  (6/7/12 Tr. (Dkt. # 348) at 67-71.)  The court further indicated that

3    a trial on Microsoft's breach of contract claim would include adjudication of a RAND

4    royalty rate for Motorola's standard essential patents so that a finder of fact could

5    consider this adjudicated rate in deciding whether Motorola's offers breached its duty to

6    offer in good faith.  (*Id.*)  The court sought input from the parties as to the structure of the

7    trial.  On June 14, 2012, both Microsoft and Motorola agreed to determine the RAND

8    royalty rate by bench trial.  (6/14/12 Tr. (C11-1408JLR (Dkt. # 365)) at 42-43.)  On that

9    same day, Microsoft submitted that a bench trial was likewise appropriate for its breach

10   of contract claim, but Motorola sought additional time to determine whether it desired a

11   jury or bench trial for the breach of contract claim.  Accordingly, on June 14, 2012, the

12   court issued a scheduling order setting trial for determination of a RAND royalty rate to

13   commence on November 13, 2012 with the possibility of including the breach of contract

14   claim in the event the parties agreed to submit that claim to a bench trial.  (Scheduling

15   Order (Dkt. # 346).)

16          Over three weeks later, during a July 9, 2012 status conference, Motorola

17   informed the court that it sought a jury trial with respect to Microsoft's breach of contract

18   claim.[6]  (7/9/12 Tr. (Dkt. # 359) at 5.)  Thereafter, the court adopted a two-part approach.

19

20   _____

21          [6] Also during the July 9, 2012 status conference, Motorola indicated its intention to file
     the present motion on the basis that the court was employing an improper construction of
22   Motorola's agreements with the ITU and IEEE.  (7/9/12 Tr. at 4-5.)  Despite having already
     ruled on two summary judgment motions substantially involving construction of Motorola's

1  The court would first determine a RAND royalty rate (or RAND royalty range) at the

2  November 13, 2012 trial, and second, with this determination as guidance, a jury would

3  hear Microsoft's breach of contract claim.

4  ### III.   DISCUSSION

5  In its present motion titled "motion for partial summary judgment dismissing

6  Microsoft's claim for a RAND patent license agreement to be determined *ab initio* by the

7  court," Motorola seeks summary judgment on "Microsoft's request that the court make" a

8  license agreement for Motorola's standard essential patents (Mot. at 6.)  In support of the

9  relief it seeks, Motorola makes two central arguments: (1) no licensing agreement

10 between Microsoft and Motorola currently exists and it would be improper for the court

11 to create a contract for the parties (*id.* at 17, 22.); and (2) Microsoft "never pleaded or

12 requested that the [c]ourt create *ab initio* a Motorola/Microsoft patent license, or material

13 terms for such a license" (*id.* at 16-17.)  In addition to its requested relief, Motorola asks

14 the court to modify the issue for the November 13 trial to determine—instead of the

15 RAND royalty rate—the breach of contract claim.  (*Id.* at 26-27.)  Motorola's requests

16 are examined in turn below.

17 **A.     Summary Judgment Standard**

18 Summary judgment is appropriate if the evidence, when viewed in the light most

19 favorable to the non-moving party, demonstrates "that there is no genuine dispute as to

20 any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

21

22 agreements with the ITU and IEEE, the court permitted Motorola to file the present motion.  (*Id.* at 9.)

P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets his or her burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" in order to withstand summary judgment.  *Galen*, 477 F.3d at 658. Here, cross-motions for summary judgment are at issue.  The court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences."  *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (citations omitted); *see also Friends of Columbia Gorge, Inc. v. Schafer*, 624 F. Supp. 2d 1253, 1263 (D. Or. 2008).

**B.     A License Agreement Between Microsoft and Motorola**

As stated, Motorola asserts that it would be improper for the court to fashion a license agreement between Microsoft and Motorola for Motorola's standard essential patents because no license agreement currently exists and Microsoft never requested such relief.  (*See generally* Mot.)  The court disagrees with Motorola, but nevertheless stresses that the November 13 trial will not create a licensing agreement, but will determine a RAND range, as well as a specific RAND rate, for Motorola's standard essential patents.

**1.     Motorola's RAND Agreements and Obligations Thereunder**

As the court previously held, Motorola's declarations to the ITU and IEEE constitute binding agreements to license its essential patents on RAND terms, and

Microsoft is a third-party beneficiary to those agreements and therefore entitled to a

license of Motorola's essential patents on RAND terms.  (6/6/12 Order at 13-14.)  Indeed,

Motorola has agreed that Microsoft is a third-party beneficiary to Motorola's assurances

to license its essential patents on RAND terms.[7]  Nevertheless, Motorola argues, in part,

that no license agreement exists between Microsoft and Motorola because Motorola's

commitments to the ITU and IEEE only "bind Motorola to engage in bilateral, good-faith

negotiations leading to RAND terms," but do not require Motorola to grant licenses on

_____

[7] For instance, the following discussion transpired during a February 13, 2012 status
conference with the court:

THE COURT:  Is the first part of that sentence also accurate, that you entered into
binding contractual commitments with IEEE and ITU, committing those to that RAND
process?

MR. JENNER (counsel for Motorola):  Well, yeah, that is really what the issue is, your
Honor, in terms of what the assurance is.  The assurance is that we would—that Motorola
agreed to license those standard essential patents on RAND terms.

THE COURT:  All I am asking is—I think you just agreed with me.  I am not asking you
if you did it or not, I am just asking you if that's what you are supposed to do.  I think the
answer to that is yes.

MR. JENNER:  Yes.  Enter into a license on RAND terms, that's right.

THE COURT:  The second point that Microsoft asked the court to declare is, and I will
quote, "Microsoft is a third-party beneficiary of Motorola's commitment to the SSOs."
Once again, let's stay away from the precise terms that were offered and asked as a
conceptual matter.  I think there is also no disagreement on that.  Mr. Jenner, am I correct
on that?

MR. JENNER:  Your Honor, that is correct, we would agree that Microsoft can fairly
claim to be the third-party beneficiary of the assurance.

(2/13/2012 Tr. (Dkt. # 242) at 4-5.)

RAND terms.  (Mot. at 18-20.)  This is not what the court held in its June 6, 2012 order, and the court declines to reach that conclusion in this order.[8]  Instead, after examining the language of Motorola's agreements with the ITU and IEEE, the court held that Microsoft is entitled to a RAND license.  (6/6/12 Order at 13-14.)  To be clear, having previously determined that Microsoft has not repudiated or revoked this right, the court's prior holding means that Motorola must grant Microsoft a RAND license to its standard essential patents.

        In fact, the court has already twice rejected Motorola's contention that Motorola's agreements with the ITU and IEEE only require it to negotiate towards a RAND license.  (*See* 6/1/11 Order (Dkt. # 66) at 5 ("There is no legal basis for Motorola's contention that Microsoft was required to negotiate the precise license terms prior to filing a breach of contract claim."); 6/6/12 Order at 21 ("Motorola has committed to license its standard essential patents on RAND terms, and, if a third-party beneficiary to that commitment does not believe Motorola is meeting its obligations thereto, the courthouse may be the only place to resolve the differences.").)  Certainly, Motorola's commitments to the IEEE and ITU require that it negotiate in good faith towards RAND terms, but those commitments go one step further and require Motorola to eventually grant a license on RAND terms.  Thus, the RAND license must eventually execute between the parties, and interminable good faith negotiation by Motorola will not uphold its end of the bargain.  As the court previously explained, any other conclusion would be contrary to the purpose

─────────────────────

        [8] Motorola has provided the court with no basis for revisiting the court's prior interpretation of Motorola's agreements with the ITU and IEEE.  (*See generally* Mot.)

ORDER- 14

1  of Motorola's commitments to the IEEE and ITU, which is to ensure widespread

2  availability to standard essential patents to all implementers on RAND terms.[9]  (6/6/12

3  Order at 17-18; *see also, e.g.*, ITU Policy at 9 (stating that the objective of

4  recommendations "is to ensure compatibility of technologies and systems on a worldwide

5  basis.  To meet this objective, which is in the common interest of all those participating,

6  it must be insured that [recommendations] . . . are accessible to everybody").)

7       Having made the determination that Motorola must grant a RAND license for its

8  essential patents, the court is left with the inescapable conclusion that a forum must exist

9  to resolve honest disputes between the patent holder and implementer as to what in fact

10  constitutes a RAND license agreement.  Here, the courthouse may be the only such

11  forum.  Indeed, the ITU and IEEE policies both explicitly disavow that either

12  organization will assist the parties in determining a RAND agreement or resolving

13  disputes of the parties.  (IEEE Policy at 19 (The IEEE is not responsible "for determining

14  whether any licensing terms or conditions provided in connection with submission of a

15  Letter of Assurance, if any, or in any licensing agreements are reasonable and non-

16  discriminatory.").)  Thus, unless the parties on their own can come to an agreed RAND

17  _____

18  [9] In making this determination, the court is well aware of Motorola's concern that because RAND terms are complex and specific to the parties involved, at the time a standard essential patent holder makes an initial offer, he or she may not have sufficient information to

19  offer on RAND terms.  The court agrees with Motorola insofar as patentee may have a legitimate concern that mistakenly offering its essential patents at a non-RAND rate could lead to an

20  imminent lawsuit; and, such a concern on the part of the patentee would similarly defeat the purpose behind the ITU and IEEE agreements of widespread availability.  But, this is precisely

21  the reason the court previously held that initial offers for standard essential patents need not be on RAND terms, but only must be made in accordance with good faith.  (6/6/12 Order at 24-25.)

22  Moreover, the simple fact that offers for essential patents need not comport with RAND does not excuse Motorola from eventually honoring its commitments to grant licenses on RAND terms.

1    licensing agreement, the courthouse acts as an appropriate forum to resolve disputes over

2    legal rights.

3         Nevertheless, although Motorola agrees that Microsoft has a legal right to a

4    RAND license agreement for Motorola's essential patents, Motorola argues that the court

5    cannot enforce this right by creating that very license agreement.  (*See generally* Mot.)

6    In particular, Motorola argues that the court cannot create a license agreement between

7    the parties because no license agreement currently exists and this court cannot "make a

8    contract for the parties—that is, a contract different from that actually entered into by [the

9    parties]."  (Mot. at 22 (citing among other cases *Chaffee v. Chaffee*, 145 P.2d 244, 252

10   (Wash. 1943).)  The court is not persuaded by this argument because it is not relevant to

11   the circumstances before us.  In this matter, the court is not examining an existing

12   agreement to modify its terms or impose missing terms, but instead, the court is enforcing

13   Microsoft's legal right to a RAND license agreement for Motorola's standard essential

14   patents.  Moreover, Motorola's view of its obligations leads to an illogical result.  Here,

15   Motorola agrees that Microsoft, as a third-party beneficiary, has a legal right to a RAND

16   license agreement for Motorola's essential patents, but nevertheless asserts that the court

17   cannot enforce this right by creating that very license agreement.  Without the ability to

18   create (or at the very least enforce creation of) the very license Motorola has promised to

19   grant, Motorola's obligations would be illusory.  The court finds such a result illogical

20   and declines to adopt Motorola's position.  *See Eurick v. Pemco Ins. Co.*, 738 p.2d 251,

21   252 (Wash. 1987) (contract interpretation should not produce an absurd result).

22

1    Indeed, in its recent opinion affirming this court's grant of an anti-suit injunction

2   related to a German action between Motorola and Microsoft, the Ninth Circuit briefly

3   examined obligations and remedies of Motorola's commitments to the ITU:

4           In sum, whether or not the district court ultimately determines that
        Motorola breached its contract with the ITU (it may or may not have), *it is
5       *clear that there is a contract, that it is enforceable by Microsoft, and that it
        *encompasses not just U.S. patents but also the patents at issue in the*
6       *German suit.*  Moreover, even if Motorola did not breach its contract, then,
        however the RAND rate is to be determined under the ITU standards,
7       injunctive relief against infringement is arguably a remedy inconsistent
        with the licensing commitment.  That the licensing agreement is not itself a
8       license according to the ITU Policy does not detract from this conclusion.
        *The question is how the commitment to license is to be enforced, not*
9       *whether the commitment itself is a license.*

10  *Microsoft Corp. v. Motorola, Inc.*, 2012 WL 4477215, at *10 (emphasis added).  Thus,

11  the Ninth Circuit made clear that Microsoft has an enforceable legal right to a RAND

12  license from Motorola.  Because Microsoft's right to a RAND license results from its

13  third-party beneficiary status, the right exists irrespective of whether a licensing

14  agreement exists between Motorola and Microsoft.  Here, this court has been asked to

15  resolve a dispute concerning whether Motorola has honored its obligations to license its

16  essential patents on RAND terms.  Although no specific remedy has been determined,

17  and certainly no remedy has been proven, the court declines to dismiss from Microsoft's

18  possible remedies the very license agreement to which the court has already determined it

19  is entitled.

20      **2.    Microsoft's Pleadings Regarding A RAND License Agreement**

21      Motorola asserts that because Microsoft never pleaded that the court create a

22  standard essential patent license agreement between Microsoft and Motorola, such relief

ORDER- 17

1    should not now be available.  (Mot. at 16-17.)  Again, the court reiterates that the

2    November 13 trial will not result in the creation of a RAND license agreement, but

3    instead will determine a RAND royalty range and a RAND royalty rate.  With that said,

4    the court disagrees with Motorola's assertion that it cannot create (or enforce the creation

5    of) a RAND license agreement because Microsoft did not explicitly request such relief in

6    its pleadings.

7          In this complaint, Microsoft sought, *inter alia*, (1) a judicial accounting of a

8    RAND royalty rate for Motorola's standard essential patents; (2) a decree that Microsoft

9    was entitled to license Motorola's essential patents on RAND terms, and (3) a decree

10   barring Motorola from demanding excessive royalty rates for its standard essential

11   patents.  (Compl. ¶ 9, Prayer for Relief.)  Additionally, Microsoft has repeatedly

12   represented to the court that it believes it needs a license and that it is ready and willing to

13   accept a license to Motorola's essential patents on RAND terms.[10]  (*See, e.g.*, Microsoft

14   Reply to Mot. Dismissing Inj. Relief (Dkt. # 152) at 9 ("The indisputable evidence is that

15   Microsoft is seeking a license on RAND terms—in this very action.").)

16         Although Motorola is correct that Microsoft does not explicitly seek a RAND

17   licensing agreement in its prior complaints, Motorola's position in this litigation that (to

18   meet its obligations under its agreements with the ITU and IEEE) it need only negotiate

19   towards a RAND license requires that court creation of a RAND license agreement

20   remain an available form of relief.  Were this not the case, the court could grant, and in

21   ─────────────────

22   [10] As this court stated in its June 6, 2012 order, this court will hold Microsoft to its
     statement through the course of this litigation.  (6/6/12 Order at 20, FN. 7.)

ORDER- 18

1  fact has granted, Microsoft relief that it is entitled to a RAND license, but then have no

2  ability to ensure that Microsoft does in fact receive the RAND license.  In other words, at

3  the end of the case, the parties could return to the bargaining table precisely where they

4  started—negotiating and disagreeing over what in fact constitutes a RAND license

5  agreement.  Therefore, while Microsoft did not explicitly request a RAND license

6  agreement, Motorola's position in this litigation inherently requires the availability of

7  such relief.  Accordingly, the court disagrees with Motorola that Microsoft's claim for a

8  RAND license agreement be dismissed for failure to plead such relief.

9  **C.     The November 13 Trial**

10         Motorola asserts that instead of determining a RAND royalty range and rate at the

11  November 13 trial, the court should try the breach of contract claim, apparently with a

12  jury.  (Mot. at 26.)  According to Motorola's proposal, if the jury finds no breach of

13  contract, the court should leave the parties to continue negotiations "until they reach an

14  agreement or impasse."  (*Id.*)  On the other hand, if a jury finds Motorola's October 21

15  and 29 Letters breached its agreements, the jury can assess damages and the court can

16  then review the last offer made by Motorola to Microsoft before trial to determine if

17  Motorola's proposed licensing terms are consistent with RAND.  (*Id.*)  Additionally,

18  Motorola asserts that such review of Motorola's proposed licensing terms is consistent

19

20

21

22

1  with the German Orange Book procedures, which Motorola argues should be employed

2  in this case.[11]  (*Id.*)

3      For the reasons below, the court declines to adopt Motorola's proposal for the

4  November 13 trial.  First, as the court has already stated, for a jury to resolve the question

5  of whether Motorola's October 21 and 29 Letters breached its duty to make good faith

6  offers, the court must first determine a RAND royalty range to assist a jury in comparing

7  Motorola's offers to a true RAND range.  Certainly, a jury could make a determination of

8  the RAND royalty rate (or range) on its own, but here the parties have both explicitly

9  asked the court, and not the jury, to adjudicate that issue.  Second, Motorola's suggested

10  alternative will not move this litigation forward.  Motorola suggests that the court first try

11  the breach of contract issue, and in the event that no breach is found, the court order the

12  parties to return to the negotiation table until they reach agreement or impasse.

13  Importantly, regardless of whether Motorola has breached its contractual agreement to

14  make good faith offers, Motorola is obligated to grant Microsoft a RAND license.

15  Presumably the parties are before the court because they currently cannot agree to RAND

16  licensing terms.  In fact, Motorola represents in its brief that the parties continue to

17  negotiate with respect to a RAND license.  The court finds that a return to the negotiation

18  table, without any adjudication as to what in fact constitutes a RAND royalty rate, will

19  accomplish nothing more than delay.

20  _____

21  [11] Based on the parties' briefings to this point, the German Orange Book is a procedure
    employed by German patent courts to oversee the propriety of patent license agreements in

22  RAND circumstances.  (See *generally* Motorola Opp. to Microsoft Mot. for Temp. Restraining
    Ord. (Dkt. # 248) at 10-11 (describing German Orange Book procedure).)

1    Third, and finally, the court does not find that the German Orange Book remedy is

2    akin to the situation presented here.  Here, the court has determined that Motorola is

3    contractually obligated to license its essential patents at a RAND rate.  From the briefing

4    of the parties, it is the court's understanding that the German Orange Book process

5    allows a court to review a patentee's or alleged infringer's offer regarding royalty rate to

6    determine whether the offer is reasonably within the RAND range.  (Motorola Opp. to

7    Microsoft Mot. for Temp. Restraining Ord. at 10-11.)  In other words, so long as

8    Motorola's offer is reasonably within a RAND range, that offer will constitute the RAND

9    royalty rate.  The court finds that such *ex post* oversight of Motorola's offer fails to

10   comport with what this court has found to be Motorola's obligations under its

11   commitments to the ITU and IEEE.  It appears to the court that under Motorola's

12   suggested procedure for determining a RAND rate, a skilled patentee could make offers

13   at the high end of the RAND range, which the court would then be obligated to bless.

14   Such a procedure does not comport with the stated purpose (widespread accessibility to

15   essential patents) behind the policies of the IEEE and ITU in requiring RAND licenses.

16   Simply put, based on Motorola's contractual obligations, if the parties cannot agree on a

17   RAND rate, the court may be called upon to determine that rate.[12]

18       Accordingly, the court declines to adopt Motorola's proposal that the November

19   13 trial consist of Microsoft's breach of contract claim.  Instead, the November 13 trial

20

21       [12] Moreover, Motorola's own suggested procedure—where the court examines *ex post*

22   whether Motorola's last offer was in fact within the RAND range—inherently requires
     determination of at least a RAND royalty range.

will resolve two discrete issues:  (1) a RAND royalty range for Motorola's standard

essential patents; and (2) a RAND royalty point for Motorola's standard essential patents.

Adjudication of both of these issues is necessary to resolve disputes in this litigation, and

Motorola agrees that these issues are within the authority of this court to decide.[13]

Determination of a RAND royalty range will provide the jury guidance in deciding

whether Motorola's October 21 and 29 Letters breached Motorola's duty to make offers

for its standard essential patents in good faith.[14]  Additionally, determination of a RAND

royalty range will provide the court guidance in determining a precise RAND royalty (a

---

[13] For example, at the April 11, 2012 hearing for Microsoft's motion for an anti-suit injunction, counsel for Motorola stated that this court has the ability to determine a RAND rate on a worldwide basis:

> You may agree eventually with the German court.  You may not.  If it isn't RAND you may look at that and dismiss it and say, I don't think it's RAND in Germany, *I'm going to set a different rate*.  And to the extent that my rate is lower than the German rate, I'm going to order Motorola to pay back to Microsoft the differential that it, quote/unquote, overpaid in Germany.

*****

> And to the extent Your Honor finds something different from Germany that you don't agree with, Your Honor will have the opportunity, should you deem it appropriate, simply to tell Motorola to pay back the difference in Germany. That's not an encroachment on your jurisdiction.  I guess that goes to the comity part as well.  That's not an encroachment on your jurisdiction.  You will simply find that the court didn't determine a RAND rate in Germany.  *You did determine a RAND rate in Germany, to the extent that Motorola ought to pay some German money back to Microsoft.*

(4/11/12 Tr. (Dkt. # 276) at 26, 28 (emphases added).)

[14] Both parties appear to agree that RAND is not a set point but a range that may vary based on the circumstances of the individual parties to a RAND agreement.  (Motorola Resp. to Microsoft Mot. for SJ (Dkt. # 274) at 9-11 (discussing agreement of parties regarding complexity of RAND terms and that RAND terms afford parties flexibility to come to individualized agreements).)

1    specific request contained in Microsoft's complaint), which necessarily must fall within

2    that range.

3                          IV.    CONCLUSION

4         Based on the foregoing, the court DENIES Motorola's motion for partial summary

5    judgment dismissing Microsoft's claim that the court create a license agreement for

6    Motorola's standard essential patents (Dkt. # 362).  This matter will proceed to the

7    November 13, 2012 trial under the schedule currently in place and to adjudicate issues in

8    accord with this order.

9         Dated this 10th day of October, 2012.

10

11

12                                    _____

13                                    JAMES L. ROBART
                                      United States District Judge

14

15

16

17

18

19

20

21

22

ORDER- 23