1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION, a Washington corporation,

Plaintiff,

v.

MOTOROLA, INC., MOTOROLA MOBILITY LLC, and GENERAL INSTRUMENT CORPORATION,

Defendants.

CASE NO. C10-1823-JLR

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS IN LIMINE

**NOTED ON MOTION CALENDAR: Friday, October 19, 2012**

**ORAL ARGUMENT REQUESTED**

**REDACTED**

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS ........................................................................................................... i

I.     OPPOSITION TO MOTION IN LIMINE NO. 1:  MICROSOFT'S MOTION CONFUSES TESTIMONY THAT WAS WITHHELD AS PRIVILEGED WITH TESTIMONY AND EVIDENCE THAT WAS ACTUALLY PROVIDED .................... 1

II.    OPPOSITION TO MOTION IN LIMINE NO. 2:  THE PATENT LICENSES RELIED UPON BY MOTOROLA ARE COMPARABLE AND SHOULD NOT BE EXCLUDED ................................................................................................... 5

III.   OPPOSITION TO MOTION IN LIMINE NO. 3:  THE ENTIRE MARKET VALUE RULE IS IRRELEVANT TO THE PRESENT CASE ........................................ 9

IV.   OPPOSITION TO MOTION IN LIMINE NO. 4:  THE SETTLEMENT MATERIALS MICROSOFT SEEKS TO EXCLUDE WERE PROPERLY OBTAINED DURING DISCOVERY AND CANNOT BE EXCLUDED PURSUANT TO RULE 408 OR THE NDA .................................................................. 12

V.    OPPOSITION TO MOTION IN LIMINE NO. 5: DR. DRABIK'S TESTIMONY REGARDING ESSENTIALITY OF THE '514 AND '317 PATENTS IS CONSISTENT WITH MOTOROLA'S PRIOR DISCOVERY RESPONSES AND SHOULD NOT BE EXCLUDED ........................................................... 16

VI.   OPPOSITION TO MOTION IN LIMINE NO. 6:  BECAUSE MICROSOFT SEEKS TO EXCLUDE TESTIMONY ON TOPICS THAT WERE ADDRESSED IN DR. DRABIK'S REPORTS, MICROSOFT'S MOTION SHOULD BE DENIED ........................................................................................... 17

VII.  CONCLUSION ...................................................................................................... 18

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - i
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
  No. 2:10cv248, slip op. (E.D. Va. Aug. 3, 2011) .............................................................10, 11

*Alamar Ranch, LLC v. County of Boise*,
  No. 1:09-cv-004, 2010 WL 5186182 (D. Idaho Dec. 4, 2010)...................................................4

*Atari Corp. v. Sega of Am.*,
  161 F.R.D. 417 (N.D. Cal. 1994)............................................................................................12

*Fractus, S.A. v. Samsung Electronics Co., Ltd.*,
  No. 6:09-CV-203, 2012 WL 2505741 (E.D. Tex. June 28, 2012) .......................................7, 8

*Gresham v. Petro Stopping Ctrs., LP*,
  No. 3:09-cv-00034, 2011 U.S. Dist. LEXIS 36568 (D. Nev. Mar. 18, 2011) ........................12

*Kennedy v. Collagen Corp.*,
  161 F.3d 1226 (9th Cir. 1998) ..................................................................................................8

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  --- F.3d ----, Nos. 2011-1440, 2011-1470, 2012 WL 3758093 (Fed. Cir. Aug. 30,
  2012) .......................................................................................................................................5, 6

*Lucent Techs., Inc. v. Microsoft Corp.*,
  No. 07-CV-2000, 2011 WL 7664416 (S.D. Cal. June 16, 2011)...............................................7

*Lucent Techs. Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009)........................................................................................7, 9, 10

*Mondis Tech., Ltd. v. LG Elecs., Inc.*,
  Nos. 2:07–CV–565–TJW–CE and 2:08–CV–478–TJW, 2011 WL 2417367 (E.D.
  Tex. 2011) ...............................................................................................................................10

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010)................................................................................................6, 7

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*,
  32 F.3d 851 (3d Cir. 1994).......................................................................................................15

*Riles v. Shell Exploration and Prod. Co.*,
  298 F.3d 1302 (Fed. Cir. 2002)................................................................................................11

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - ii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*Rite-Hite Corp. v. Kelley Co., Inc.*,
    56 F.3d 1538 (Fed. Cir. 1995).................................................................9

*Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*,
    862 F.2d 1564 (Fed. Cir. 1988)...........................................................11

*The Boeing Co. v. United States*,
    86 Fed. Cl. 303 (2009) .........................................................................10

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)........................................................9, 11

*Unisplay, S.A. v. Am. Elec. Sign Co.*,
    69 F.3d 512 (Fed. Cir. 1995)..............................................................6, 11

*Wi-LAN, Inc. v. Kilpatrick Townsend & Stockton LLP*,
    684 F.3d 1364 (Fed. Cir. 2012)...........................................................15

**OTHER AUTHORITIES**

*Drafting Licensing Agreements* (Michael A. Epstein & Frank L. Politano, eds., 4th ed., Vol. 2, 2011) .................................................................................9, 10

*Drafting Patent License Agreements* (Brian G. Brunsvold & Dennis P. O'Reilley, eds., 5th ed., 2004) ...............................................................................10

Fed. R. Civ. P. 408................................................................................12, 13

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - iii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

**I.      OPPOSITION TO MOTION IN LIMINE NO. 1:  MICROSOFT'S MOTION CONFUSES TESTIMONY THAT WAS WITHHELD AS PRIVILEGED WITH TESTIMONY AND EVIDENCE THAT WAS ACTUALLY PROVIDED**

The parties appear to agree, as the law requires, that where a witness was instructed not to answer a question during deposition, the witness may not present the blocked testimony at trial. But Microsoft's motion seeks much more.  Microsoft improperly expands the scope of the testimony over which Motorola claimed privilege and unfairly asks the Court to limit the testimony of Motorola's experts who rely on facts that were never withheld.  For these reasons, Microsoft's motion should be denied.

Microsoft's motion wrongly suggests that Motorola refused to provide any discovery whatsoever regarding its reasons for not participating in patent pools.  (Dkt. No. 450 at 1.)  The testimony Microsoft cites shows the opposite to be true.  Kirk Dailey, Motorola's Vice President of Intellectual Property, testified that ████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████[1]   And Timothy Kowalski, then lead intellectual property counsel at Motorola, testified that "████████████████████████████████████████████████████████████████████ ████████████████████████████████████  Thus, Microsoft overreaches in seeking to exclude any evidence regarding Motorola's reasons for not participating in certain pools. Motorola should be permitted to present evidence consistent with the testimony quoted above as well as the other evidence presented during discovery or that was not objected to as privileged.

Microsoft's overreach is even more egregious with respect to Motorola's expert testimony. No Motorola expert is relying on or seeking to introduce evidence that was "blocked" during fact discovery.   To the contrary, the four expert opinions cited in Microsoft's motion are fully

---

[1] "Ex. ___" refers to the stated Exhibit to the Declaration of Stuart W. Yothers, submitted on October 4, 2012 (Dkt. No. 457), or Second Declaration of Stuart W. Yothers, submitted concurrently herewith.  "Wion Ex. ___" refers to the stated Exhibit to the Declaration of Christopher Wion in Support of Microsoft's Motions *In Limine*, submitted by Microsoft on October 4, 2012 (Dkt. No. 451).  All emphasis is added unless otherwise indicated.

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 1
CASE NO. C10-1823-JLR

1   supported by information disclosed during fact discovery.  For example, Roger Smith intends to

2   testify that, as he stated in his report, Motorola ████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████   This is

4   precisely what Mr. Dailey testified to during his deposition.  (*See* Wion Ex. 1 at 53:5-9.)

5        Similarly, Mr. Smith intends to testify that ████████████████████████████████

6   ████████████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████████████████

8   ████████████   As indicated by the citation in Mr. Smith's report, (Wion Ex. 5 at 28 n.47), this

9   statement is directly supported by the January 30, 2012 Declaration of Prof. David J. Teece (Ex.

10  13 at ¶ 114) in the German H.264 case between Microsoft and Motorola.  This declaration – which

11  was produced by *Microsoft* in this case[2] – indicates that Dr. Teece's statement was based on a

12  discussion with Mr. Dailey.  And given that Mr. Dailey was not deposed in this case until July 12,

13  2012 – nearly six months after Prof. Teece's declaration, and almost four months after Microsoft

14  produced the Teece Declaration (Ex. 15) – Microsoft had more than adequate notice to explore

15  further the underlying discussion with Mr. Dailey, but it chose not to do so.

16       Motorola expert Michael Dansky's testimony that Motorola ████████████████████

17  ████████████████████████████████████████████████████████████████████████   is

18  consistent with Mr. Kowalski's deposition testimony that ████████████████████████████

19  ████████████████████████████████████████████████████████████████████████

20  ██████.  And (as the paragraphs cited by Microsoft itself (Dkt. No. 450 at 1-2) demonstrate),

21  Professor Richard Schmalensee and Charles R. Donohoe draw conclusions about Motorola's

22

23  _____
    [2] Tab A to Mr. Smith's report ("Materials Considered") shows that *Microsoft* produced the Teece Declaration.

24  ████████████████████████████████████████████   There, Dr. Teece states, ██████████

25  ████████████████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████████████████

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 2
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   belief that pool rates were too low from the well-known and undisputed fact that Motorola did *not*

2   join the H.264 pool.  (*See, e.g.,* ████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████████████████████████

7   ████████████████████████████   (italicized and underlined emphasis in original).)

8           Microsoft next seeks to exclude, based on privilege objections by *non-party Google,*

9   evidence of:  (1) *any* factual bases for asserting that ███████████████████████████████

10  ██████████████████████████████████████████████████████████████████████   and

11  (2) *any* factual bases for asserting that Motorola's H.264 standard essential patents are worth more

12  than the royalty that is presumed reasonable ████████████████████   (Dkt. No. 450 at 1.)

13          Microsoft's request is extreme and improper for at least the following reasons:

14  (1) Microsoft has been on notice of *Motorola's* positions on these two issues since at least July 12,

15  2012 when Motorola explained its position in its opposition to Microsoft's Motion to Terminate

16  ITC Investigation No. 337-TA-752 with respect to Motorola's H.264 standard essential patents

17  (*see* Ex. 16); and (2) Google is not a party to this case, and its 30(b)(6) designee, Allen Lo, was

18  not represented by Motorola's counsel in this case.

19          Google's acquisition of Motorola Mobility was completed on May 22, 2012, and on

20  June 15, 2012, Microsoft wrote to Google ██████████████████████████████████████

21  ████████████████████████████████████████████████████████████████████   (*See*

22  Dkt. No. 345.)  On June 22, 2012, Microsoft filed a motion with the ITC alleging ███████████

23  ████████████████████████████████████████████████████████████████████████████████

24  ████████████   and requesting that the ITC terminate its investigation with respect to Motorola's H.264

25  patents.  Motorola filed an opposition (Ex. 16) and a sur-reply (Ex. 17) on July 12, 2012 and

26

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    August 16, 2012, respectively.   These papers fully explained Motorola's position regarding

2    Microsoft's claims that ███████████████████████████

3          Microsoft's request to depose a Google attorney about Google's internal legal

4    interpretation of ████████████████ (likely knowing the deposition would draw privilege

5    objections), and Google's subsequent privilege objections, do not undo the fact that Motorola's

6    position was fully presented to Microsoft without objection.[3]   Microsoft relies on a District of

7    Idaho case to assert that Google's privilege objections should block Motorola from presenting

8    evidence because it "typically would not matter whether the evidence at trial is offered through the

9    party deposed or through another source."  (Dkt. No. 450 at 3-4 (*quoting Alamar Ranch, LLC v.*

10   *County of Boise*, No. 1:09-cv-004, 2010 WL 5186182 at *1-2 (D. Idaho Dec. 4, 2010)).)   But

11   *Alamar Ranch* goes on to say that "it may be appropriate to admit such evidence where it was

12   abundantly clear that such independent evidence could have been discovered through alternative

13   means."  *Alamar Ranch*, 2010 WL 5186182 at *1-2.  Here, Motorola's opposition and sur-reply

14   provide that abundant clarity.  Indeed, Motorola's *exact* positions and arguments (and the

15   underlying support) are fully disclosed in those papers, so Microsoft cannot be prejudiced by

16   Motorola's presentation of these same positions and arguments at trial.

17          To be clear, Motorola has no intention of calling any Motorola (or Google) witness to

18   provide testimony that was previously withheld as privileged.  But Motorola may well rely on

19   evidence produced during discovery or that was timely disclosed.  Because Microsoft's motion is

20   overbroad and directed to information that was not blocked by privilege, its motion should be

21   denied.  If during trial Motorola seeks to introduce evidence over which Motorola previously

22

23        [3] Microsoft chose to ask Mr. Lo, Google's Deputy General Counsel in charge of Patents and Patent Litigation,
     questions seeking legal conclusions rather than fact-seeking questions that would allow Microsoft to establish a

24   factual basis for its own legal conclusions regarding the MPEG-LA agreement.  For instance, in a section of Mr. Lo's
     depositions cited by Microsoft (*see* Dkt. No. 450 at 3), Mr. Lo provided answers to fact based questions ███████

25   ████████████████████████████████████████████████████████████████████████ ██

26   ████████████████████████████ (*See* Wion Ex. 8 at 49:15-50:6.)  Microsoft has not, and cannot, identify a single
     fact-seeking question that Mr. Lo refused to answer.

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 4
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    asserted an express claim of privilege, Microsoft will have an opportunity at that point to object.

2    But the evidence objected to on this motion was not blocked and should not be precluded.

## II.    OPPOSITION TO MOTION IN LIMINE NO. 2:  THE PATENT LICENSES RELIED UPON BY MOTOROLA ARE COMPARABLE AND SHOULD NOT BE EXCLUDED

Microsoft seeks to exclude reference to licenses to what Microsoft calls Motorola's cellular essential portfolios.  Microsoft disregards, however, that these *are* "comparable" licenses because each of these real world licenses includes a grant to one or more of the patents in Motorola's 802.11 and/or H.264 portfolios.  Thus, under applicable law, and even the cases on which Microsoft relies, the licenses are relevant to determining a RAND royalty rate.

Motorola relies on two categories of licenses that include cellular technology.  The first category also includes license grants to Motorola's entire 802.11 and/or H.264 portfolios.  (Wion Ex. 9 at ¶¶ 68, 77-87.)  In determining the appropriate RAND royalty rate, Motorola's expert relies only on these existing licenses because they expressly provide a grant to the 802.11 and/or H.264 *portfolios*.  (*Id.*)  The second category includes only those licenses to Motorola's cellular portfolios that also include one or more patents that are essential to the 802.11 portfolio.  (*Id.* at Exhibit C.)[4]  Thus, while not a license to the entire 802.11 *portfolio*, these licenses include a grant to a set of patents that includes patents in the 802.11 portfolio.  Motorola's experts rely on this second set of licenses for other aspects of its licensing practices, such as the reasonableness of the opening offer and its cross-licensing practices.  (*Id.* at ¶¶ 58, 60-61, Exhibit C.)

The cases Microsoft cites in its Motion do not support the exclusion of either category of Motorola license.  In the most recent case on which Microsoft relies, *LaserDynamics, Inc. v.*

---

[4] Microsoft attempts to undermine the value of the 802.11 essential patents that are also essential to Motorola's cellular patents.  However, its arguments fail on all counts.  As to the '712 patent, the ITC decision is not a final decision.  Motorola identified the '294 and '193 patents as essential to the 802.11 standard in its October 21, 2010 letter to Microsoft, and this has never been challenged.  (Ex. 18.)  The fact that the '563 patent may not have been listed in any of the cellular licenses is irrelevant because those licenses include representative patents, but are not intended to include exhaustive lists of relevant patents.  Finally, Microsoft concedes that the '547 patent is essential to the 802.11 standard.  (Dkt. No. 450 at 6 n.5.)  Moreover, any dispute about patent coverage would go to weight, not admissibility of an agreement.

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 5
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*Quanta Computer, Inc.*, --- F.3d ----, Nos. 2011-1440, 2011-1470, 2012 WL 3758093, at *24 (Fed. Cir. Aug. 30, 2012), the Federal Circuit excluded licensing evidence that expressly "did not involve" the patent-in-suit and was being proffered "to the exclusion of the many licenses expressly for [the patent-in-suit]."   In stark contrast, *every* license to which Motorola refers includes at least one of the patents at issue, so these licenses are the best evidence concerning factors relevant to a hypothetical negotiation.  *See, e.g.*, *Unisplay, S.A. v. Am. Elec. Sign Co.,* 69 F.3d 512, 519 (Fed. Cir. 1995) (The patentee's prior license agreements "should carry considerable weight in calculating a reasonable royalty rate."); *see also* 1-20 Chisum on Patents § 20.07 ("The theory underlying giving weight to [actual past and existing] licenses is that the actual results reached by persons with conflicting economic interests constitute direct and reliable evidence of the fair market value of a license under the patent (i.e., the sum that a willing buyer and willing seller would have agreed to in hypothetical negotiations prior to commencement of infringement by the defendant).").

Microsoft next cites *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010). *ResQNet*, however, stands for the proposition that a party may not rely on "licenses with no relationship to the claimed invention" in determining a reasonably royalty rate.  *Id.* at 870.  The Court in *ResQNet* excluded five "re-bundling licenses" because "none of these licenses even mentioned the patents in suit or showed any other discernible link to the claimed technology."  *Id.* Thus, the Court excluded those licenses because there was "no effort to link [the re-bundling] licenses to the infringed patent."  *Id.* at 871.

Here, the Court is presented with precisely the opposite scenario.  Again, every Motorola license is linked to the patents-in-suit and the relevant technology because each license includes a license either to one of the patents essential to the 802.11 portfolio, or to the 802.11 and/or H.264 portfolios themselves.  (*See* Wion Ex. 9 at ¶¶ 64-87.)  For example, the '563 patent relates to a method of authentication using "instant specific information" (*i.e.*, information that is not fixed, such as time of day) to enhance reliability of the authentication process.  This method was first

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 6
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

incorporated in the CDMA standard.  Given the success of this technology in the CDMA standard and the efficiencies it provides, this very same method was chosen to be used in the 802.11 standard.  Thus, it is the same exact technology of the '563 patent that is in both the CDMA and 802.11 standards.  Because the '563 patent is covered by certain license grants to Motorola's CDMA cellular-essential patents and the '563 patent is essential to the 802.11 standard, the CDMA cellular licenses are relevant.

The final case on which Microsoft relies is *Lucent Techs. Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009).  Like *ResQNet*, however, *Lucent* stands for the same unremarkable proposition that licenses are excludable when they are entirely unrelated to the technology at issue. *See, e.g., id.* at 1328-29 (concluding that the jury award could not be supported by license agreements where the jury was given little or "no explanation . . . about the subject matter or patents covered by those agreements").

Post-*ResQNet* cases that have considered similar evidence – that is, previous license agreements that include the patents at issue as well as additional patents or technology – have found such evidence probative to determining a reasonable royalty rate.  *See, e.g., Fractus, S.A. v. Samsung Electronics Co., Ltd.*, No. 6:09-CV-203, 2012 WL 2505741, at *27 (E.D. Tex. June 28, 2012) (finding each of non-litigation licenses to the Patents-in-Suit, settlement agreements that included the Patents-in-Suit, licenses covering other essential features for cell phones, and licenses covering cell phone standards to be "sufficiently comparable to be admitted and considered as one data point" in determining a reasonable royalty); *Lucent Techs., Inc. v. Microsoft Corp.*, No. 07-CV-2000 H(CAB), 2011 WL 7664416, at *11 (S.D. Cal. June 16, 2011) (on remand from the Federal Circuit, admitting two licensing agreements to bundles of patents, including the patent-in-suit, as relevant to *Georgia-Pacific* factors 1, 4, and 12).  Thus, courts deem licenses that include both the patents-in-suit as well as additional patents relevant and admissible.  This makes sense: even where patent portfolios are not identical, when there is overlap such that at least some of the

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1    patents in suit have previously been licensed, those licenses surely provide information about

2    value of the licensed patents.

3        Microsoft criticizes Motorola for failing to apportion the royalty between the cellular and

4    non-cellular portfolios in the licenses, but this ignores that conducting such an apportionment

5    would necessarily be arbitrary and contrary to how parties conduct real-world negotiations. (Wion

6    Ex. 10 at 14-15.) Had the parties intended an apportionment between the licensed portfolios, the

7    agreements would have indicated as much.  Moreover, ████████████████████████████

8    ████████████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████████████

10   ██████████████████████████████.[5] (*See* Ex. 19 at ¶ 14; Ex. 20 at 27.) ████████████

11   ████████████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████████████

13   ███████████████████████████████████████  ██████████████████████████

14   ████████████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████████

18       Finally, any argument about differences between cellular licenses and a license to the

19   802.11 and/or H.264 portfolios, the importance of the licenses to Microsoft's products, and the

20   comparative strength of the portfolios, goes to the weight of the evidence, and not to its

21   admissibility. *See Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230-31 (9th Cir. 1998); *Fractus*,

22   2012 WL 2505741, at *27 ("The jury was free to weigh the probative value of these licenses in

23   determining the proper reasonable royalty rate.").  The licenses relied upon by Mr. Donohoe are

24   real world licenses resulting from arm's-length negotiations between sophisticated parties.

---

[5] ████████████████████████████████████████████████████████████████

████████████████████████

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 8
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Because these licenses represent actual market transactions, they are not just relevant to determining RAND rates for Motorola's 802.11 and H.264 portfolios, they are the best evidence of such rates.   Accordingly, Microsoft's Motion to exclude the licenses is contrary to law and logic, and should be denied.

## III.   OPPOSITION TO MOTION IN LIMINE NO. 3:  THE ENTIRE MARKET VALUE RULE IS IRRELEVANT TO THE PRESENT CASE

In the real world, the net selling price of licensed products is often selected as the royalty base for a patent license.   There are good reasons for this – it is a reliable, auditable, royalty base. Microsoft, however, attempts to use the EMVR to persuade the court to ignore real-world licensing practices that allow for end-product revenues as the royalty base.   This is particularly surprising considering it is well accepted in the industry – ███████████████████████████ – that end product revenue is regularly used as a royalty base.   Nonetheless, Microsoft, relying on the EMVR, seeks to bar Motorola from using end-product revenue as the royalty base for any RAND royalty.   (Dkt. No. 450 at 8.)   "For the entire market value rule to apply, the patentee must prove that 'the patent-related feature is the basis for the customer demand.'" *Lucent*, 580 F.3d at 1336.

As *Lucent* makes clear, the EMVR is a requirement in the context of patent infringement damages.   *Id*. at 1336-37; *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) (noting that the EMVR addresses how a patentee may "assess damages"); *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995) ("When a patentee seeks damages on unpatented components sold with a patented apparatus, courts have applied a formulation known as the 'entire market value rule' . . . .").   Microsoft has not identified any authority stating that the EMVR must be applied when determining a *licensing* royalty rate in the context of private, bilateral negation.   Microsoft's own damages expert agrees that ████████████ ████████████████████████████████████████████████████████████████ ███████████████████████

Indeed, it is well established that negotiated patent licenses commonly use the net selling price of licensed products as a royalty base.   *See, e.g., Drafting Licensing Agreements* (Michael A.

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 9
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Epstein & Frank L. Politano, eds., 4th ed., Vol. 2, 2011) (Ex. 21) at § 20.05 ("Typically, the royalty rate is based on a percentage of either the sales or profits of the product that is the subject of the license agreement.")); *Drafting Patent License Agreements* (Brian G. Brunsvold & Dennis P. O'Reilley, eds., 5th ed., 2004) (Ex. 22) at 113 ("The most common royalty bases are the sales price (net or gross) of the licensed product or a fixed amount for each licensed product sold or manufactured."). The Federal Circuit has expressly recognized this. *See, e.g., Lucent,* 580 F.3d at 1339 ("The license agreements admitted into evidence (without objection from Microsoft, we note) highlight how sophisticated parties routinely enter into license agreements that base the value of the patented inventions as a percentage of the commercial products' sales price.").

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

Significant here, the current IEEE LOA form expressly permits royalties based on a final product price and includes a check-off option allowing a SEP holder to license in this fashion. (Ex. 23 at § D.1.b.) This accepted industry practice of using net selling price of the end-product as the royalty base, ██████████████████████, informs what the royalty base would be in this case. *See, e.g., The Boeing Co. v. United States,* 86 Fed. Cl. 303, 319-20 (2009) (concluding that the royalty base could be the price of the overall product, and noting that, "[i]n short, the prior licenses provide guidance on what the hypothetical royalty rate and royalty base should be"); *see also Mondis Tech., Ltd. v. LG Elecs., Inc.*, Nos. 2:07–CV–565–TJW–CE and 2:08–CV–478–TJW, 2011 WL 2417367, at *3 (E.D. Tex. 2011) (allowing use of the value of an entire product because comparable licenses were based on that value, and so it was irrelevant whether the plaintiff had shown that "the accused features provide the basis of customer demand"); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, No. 2:10cv248, slip op. (E.D. Va. Aug. 3, 2011) ("Reading *Lucent* in light of *Uniloc*, the Court finds that *a patentee may base a reasonable royalty rate on the entire market value of an accused product where the evidence presented demonstrates that, in a*

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 10
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*hypothetical negotiation, it would be appropriate to do so.*"); s*ee also Riles v. Shell Exploration and Prod. Co.*, 298 F.3d 1302, 1313 (Fed. Cir. 2002) (finding expert's damages models improperly "ignored [patent holder's] established licensing practice" when considering appropriate royalty rate); *Unisplay*, 69 F.3d at 519; *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.,* 862 F.2d 1564, 1568 (Fed. Cir. 1988) ("[T]he patentee's usual licensing approach should be considered in assessing a reasonable royalty.").

██████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████ Microsoft's strident criticism of end-product sales revenue as a royalty base strains credulity ████████████████████████████
█████████████████████████████. (*See, e.g.*, Dkt. No. 274 at 19-20; Ex. 24 at 2.)

What is more, Microsoft's reliance on patent pools exposes even more negotiated licenses that are not limited by the EMVR.  The MPEG-LA and VIA pools relied on by Microsoft – while irrelevant to RAND for other reasons – nevertheless include a fixed per unit rate regardless of the product's price or whether the 802.11 or H.264 functionality is a primary or minor feature of the licensed product or is the basis for customer demand.  Thus, the fixed rates of pools – on which Microsoft relies – are further real-world evidence that negotiated licenses regularly use end product price as the royalty base, having nothing to do with the EMVR.

In the face of this real-world evidence and law, Microsoft nevertheless argues that "there is no rational basis . . . [for] [a]llowing a holder of declared-essential patents to be paid for features . . . that are not valued by the market."  (Dkt. No. 450 at 11.)  But, again, Motorola's approach in this case is precisely what happens in real-life portfolio licensing negotiations ████████████████ █████████████████████ – parties choose a reliable, auditable, royalty base and negotiate a royalty rate.  (Wion Ex. 10 at 195:8-196:22.)  Microsoft thus would have the Court hold that the

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

entire marketplace acts irrationally when it negotiates portfolio licenses using net selling price as a base.  To the contrary, a RAND determination based on actual, real-life negotiations must consider the way parties – including these parties - historically negotiated licenses.  Requiring licensing parties to strictly adhere to the EMVR would effectively preclude licensees and licensors from using experience and their sound judgment in efficiently negotiating a license.  For these reasons, Microsoft's Motion should be denied.

## IV.   OPPOSITION TO MOTION IN LIMINE NO. 4:  THE SETTLEMENT MATERIALS MICROSOFT SEEKS TO EXCLUDE WERE PROPERLY OBTAINED DURING DISCOVERY AND CANNOT BE EXCLUDED PURSUANT TO RULE 408 OR THE NDA

Microsoft's motion to exclude all communications made during settlement talks should be denied.  Neither the parties' NDA nor Rule 408 exempts all such information from use at trial.  Indeed, the ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████  As explained below, all of the information that Microsoft now seeks to exclude falls under the exclusion set forth in (ii).[6]

First, Microsoft seeks to exclude documents that *Microsoft* itself produced in this case.  For example, Microsoft seeks to exclude Exhibit 26 to Motorola's summary judgment briefing.  But as the document makes clear, it came from Microsoft's own document production and, therefore, falls under exception (ii) in the NDA.  (*See* Dkt. No. 235 (bearing Microsoft's Bates stamp,  MS-MOTO_1823_00002288984).) ████████████████████████████████████ ████████████████████████████████████████████████████████████

---

[6] Consistent with the NDA, Rule 408 likewise does not immunize all information discussed in a settlement context from admission.  *Gresham v. Petro Stopping Ctrs., LP*, No. 3:09-cv-00034, 2011 U.S. Dist. LEXIS 36568, at *7 (D. Nev. Mar. 18, 2011) ("[O]therwise admissible evidence does not become inadmissible simply because it is also discussed during settlement negotiations."); *Atari Corp. v. Sega of Am.*, 161 F.R.D. 417, 419 (N.D. Cal. 1994)

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 12
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1 ███████████████████████████   ███████████   █████████████████████████████

2 ████████████████████████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████████████████████████████

7 █████████████████████████████████████████████████████████████████. [7]

Second, Microsoft seeks to exclude deposition testimony that **_Microsoft_** itself elicited from Motorola witnesses.  For example, Microsoft seeks to exclude the following statement from Motorola's  summary  judgment  briefing:  ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████   ███   ██████████████████

████████████████████████████████████████████████████████████████████████████

█ ███████████████████████████████████████████████████████████████████████████

████████████████████████████

Microsoft also seeks to exclude statements about Microsoft's "contractual obligation in a license agreement with a third party, [due to which] Microsoft needed to establish the value of Motorola's patent portfolio in order to engage in a licensing negotiation and strike a balanced deal . . . ."  (Dkt. No. 231 at 7 (cited in Dkt. No. 450 at 13).)  ██████████████████████████

████████████████████████████████   ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

_____

(declining to find that disclosure of material during a settlement meeting, through voluntary discovery, violated Rule 408) (internal quotation omitted).

[7] Since April 2012, Motorola has relied on Microsoft's silence and for that additional reason – as well as the literal language of the NDA - has believed that such materials were usable at trial.

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 13
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15 ████████████████████████████████████ Again, Microsoft never

16 contested, or even responded to, this letter.

17      Microsoft's motion is particularly surprising given that it has selectively ignored the

18 provisions of the NDA when it suited its purpose.  For example, Microsoft filed a complaint with

19 the EU on February 22, 2012, ████████████████████████████████████

20 ████████████████████████████████:

21

22

23

24

25

26

---

[8] Exhibit 26 contains what appears to be an inadvertent typographical error.  References to Dailey Tr. 2924-25, (*see* Ex. 26 at 2-3), should refer to Dailey Tr. 2494-95.  The transcript of ITC Inv. No. 337-TA-752 to which this citation refers does not include pages 2924-25 as cited.  Additionally, Microsoft's Motion in Limine No. 4 objects to footnote 2 of Motorola's Motion for Partial Summary Judgment (Dkt. No. 231).  This footnote was not objected to in the original April 4, 2012 letter from Microsoft.  *See supra* 11.  Again, the material referred to in this footnote is subject to the exceptions of the NDA at least because this material was elicited by Microsoft during discovery in this matter, through the testimony of Neill Taylor.  (*See* Ex. 27 at 40:6-44:24.)

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 14
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████

██████████████████████████████████████  In response to the
clear violation of the NDA by these statements in the complaint, on March 9, 2012, Motorola's
counsel, Damien Didden, sent Microsoft a letter ████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████

In short, Microsoft cannot have it both ways – it cannot produce or seek discovery directed
to settlement discussions, and rely on settlement discussions in connection with its complaint to
the EU when it suits its purpose, only to turn heel and now claim that the very same information is
protected under an NDA in this litigation.  And it cannot inject the parties' good faith and intent
into this litigation (as it has done) and then attempt to suppress evidence relevant to those issues.[9]

---

[9] It is well settled that a party who injects the issues of intent and good faith into a litigation waives any privilege it
might have against use of its communications that bear on those issues.  *See, e.g., Rhone-Poulenc Rorer Inc. v. Home
Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) ("[A] party can waive the attorney client privilege by asserting claims or
defenses that put his or her attorney's advice in issue in the litigation."); *see also Wi-LAN, Inc. v. Kilpatrick Townsend
& Stockton LLP*, 684 F.3d 1364, 1370 (Fed. Cir. 2012) (in applying Ninth Circuit law, noting that "[e]ven if the party
does not expressly disclose the advice received, but only alludes to it, the privilege can be deemed waived by
implication.") (citing *Bittaker v. Woodford,* 331 F.3d 715, 719 (9th Cir. 2003) (en banc); *Chevron Corp. v. Pennzoil
Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("The privilege which protects attorney-client communications may not be
used both as a sword and a shield.  Where a party raises a claim which in fairness requires disclosure of the protected
communication, the privilege may be implicitly waived.") (internal citation omitted)).

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 15
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

2

3

**V.     OPPOSITION TO MOTION IN LIMINE NO. 5: DR. DRABIK'S TESTIMONY REGARDING ESSENTIALITY OF THE '514 AND '317 PATENTS IS CONSISTENT WITH MOTOROLA'S PRIOR DISCOVERY RESPONSES AND SHOULD NOT BE EXCLUDED[10]**

4

Microsoft's motion to exclude any assertion or testimony that the '514 Gandhi patent or

5

the '317 Mathew patent is essential to the H.264 Standard should be denied on the grounds that it

6

is unclear what Microsoft, or its expert, means by "essential."   The current ITU/ISO/IEC

7

Guidelines for Implementation of the Common Patent Policy and the Patent Statement and

8

Licensing Declaration Form (Annex 2) defines "essential patents" as "patents that would be

9

required to implement a specific Recommendation/Deliverable [H.264]."   (Ex. 33 at

10

MOTM_WASH1823_0602818.)   In response to Microsoft's Interrogatory No. 16, ████████

11

████████████████████████████████████████████████████████

12

██████████████   Likewise, Motorola's expert, Dr. Timothy Drabik, used the ITU's definition

13

of "essential" in his reports.  (Wion Ex. 15 at ¶ 3.)  Using that definition, ████████████

14

████████████████████████████████████████████████████████

15

████████████████████████████████████████████████████████

16

████████████████

17

In contrast, Microsoft's expert, Michael Orchard, did not define "essential" in his expert

18

reports or at his deposition.  ████████████████████████████████████

19

████████████████████████████████████████████████████████

20

██████████   Rather than provide a definition, Professor Orchard identified four contexts in which

21

he used the word "essential:"  ████████████████████████████████████

22

████████████████████████████████████████████████████████

23

██████████████████████████████   (*Id.* at  82:24-84:4;  86:11-19.)

24

Microsoft's motion fails to identify whether it seeks to exclude testimony about one of these

25

contexts, all of these contexts, or some combination thereof, and is therefore hopelessly vague.

26

---

[10] The title of Microsoft's MIL No. 5 mistakenly refers to the 802.11 Standard instead of to the H.264 Standard.

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 16
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Under the ITU's  definition of "essential," Motorola does not contend that the '514 Gandhi patent or the '317 Mathew patent is essential, and does not seek to introduce evidence or testimony in support of any such contention.   However, to the extent that Microsoft presents testimony or evidence regarding one of the contexts in which Professor Orchard uses the word "essential"—other than the ITU definition—and which Professor Orchard identified for the first time only in deposition, Dr. Drabik should be permitted to testify as to whether the '514 Gandhi patent and the '317 Mathew patent are "essential" in the context used by Microsoft at trial.  As a result, Microsoft's motion should be denied.

## VI.   OPPOSITION TO MOTION IN LIMINE NO. 6:  BECAUSE MICROSOFT SEEKS TO EXCLUDE TESTIMONY ON TOPICS THAT WERE ADDRESSED IN DR. DRABIK'S REPORTS, MICROSOFT'S MOTION SHOULD BE DENIED

Microsoft's motion to exclude testimony by Dr. Drabik concerning ████████████ ████████████████████ should be denied on the grounds that it is both premature and overbroad in that Microsoft does not identify the specific testimony that it seeks to preclude. ██

As an initial matter, Microsoft is not correct about what is and is not disclosed in Dr. Drabik's reports.

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 17
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

█████████████████████████████████████████████████████████████████

████████████████████████████████████████

Microsoft also asserts that Dr. Drabik should be precluded from offering testimony quantifying the alleged bitrate of Motorola's field scan over Sony's JVT-B068 field scan.  (Dkt. No. 450 at 17.)  However, in his Rebuttal Report, ███████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████    ████    █████████    ███████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████

While Motorola agrees that experts should not be permitted to testify beyond the scope of their expert reports, declarations and deposition testimony, Microsoft simply overstates what is not disclosed in Dr. Drabik's reports and demonstrates why such objections are better handled on a case-by-case basis.  As a result, Microsoft's premature and overbroad motion should be denied.

## VII.    CONCLUSION

Based on the foregoing, Motorola respectfully requests that the Court deny in all respects Microsoft's Motions *in Limine*.

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 18
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    DATED this 15th day of October, 2012.

2                                           Respectfully submitted,

3                                           SUMMIT LAW GROUP PLLC

4                                           By */s/ Ralph H. Palumbo*
                                               Ralph H. Palumbo, WSBA #04751
5                                              Philip S. McCune, WSBA #21081
                                               Lynn M. Engel, WSBA #21934
6                                              *ralphp@summitlaw.com*
                                               *philm@summitlaw.com*
7                                              *lynne@summitlaw.com*

8                                           By */s/ Thomas V.  Miller*
                                               Thomas V. Miller
9                                              MOTOROLA MOBILITY LLC
                                               600 North U.S. Highway 45
10                                             Libertyville, IL  60048-1286
                                               (847) 523-2162
11

12                                          And by

13                                             Jesse J. Jenner (*pro hac vice*)
                                               Steven Pepe (*pro hac vice*)
14                                             Kevin J. Post (*pro hac vice*)
                                               Ropes & Gray LLP
15                                             1211 Avenue of the Americas
                                               New York, NY  10036-8704
16                                             (212) 596-9046
                                               *jesse.jenner@ropesgray.com*
17                                             *steven.pepe@ropesgray.com*
                                               *kevin.post@ropesgray.com*
18
                                               James R. Batchelder (*pro hac vice*)
19                                             Norman H. Beamer (*pro hac vice*)
                                               Ropes & Gray LLP
20                                             1900 University Avenue, 6th Floor
                                               East Palo Alto, CA  94303-2284
21                                             (650) 617-4030
                                               *james.batchelder@ropesgray.com*
22                                             *norman.beamer@ropesgray.com*

23

24

25

26

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 19
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Paul M. Schoenhard (*pro hac vice*
Ropes & Gray LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC  20005-3948
(202) 508-4693
*paul.schoenhard.@ropesgray.com*

***Attorneys for Motorola Solutions, Inc., Motorola
Mobility LLC and General Instrument Corp.***

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 20
CASE NO. C10-1823-JLR

1

**CERTIFICATE OF SERVICE**

2    I hereby certify that on this day I electronically filed the foregoing with the Clerk of

3  the Court using the CM/ECF system which will send notification of such filing to the following:

4    Arthur W. Harrigan, Jr., Esq.
     Christopher T. Wion, Esq.

5    Shane P. Cramer, Esq.
     Calfo Harrigan Leyh & Eakes LLP

6    *arthurh@calfoharrigan.com*
     *chrisw@calfoharrigan.com*

7    *shanec@calfoharrigan.com*

8    Richard A. Cederoth, Esq.
     Brian R. Nester, Esq.

9    David T. Pritikin, Esq.
     Douglas I. Lewis, Esq.

10   John W. McBride, Esq.
     David Greenfield, Esq.

11   William H. Baumgartner, Jr., Esq.
     David C. Giardina, Esq.

12   Carter G. Phillips, Esq.
     Constantine L. Trela, Jr., Esq.

13   Ellen S. Robbins, Esq.
     Nathaniel C. Love, Esq.

14   Sidley Austin LLP
     *rcederoth@sidley.com*

15   *bnester@sidley.com*
     *dpritikin@sidley.com*

16   *dilewis@sidley.com*
     *jwmcbride@sidley.com*

17   *david.greenfield@sidley.com*
     *wbaumgartner@sidley.com*

18   *dgiardina@sidley.com*

19   *cphillips@sidley.com*
     *ctrela@sidley.com*

20   *erobbins@sidley.com*
     *nlove@sidley.com*

21

22   T. Andrew Culbert, Esq.
     David E. Killough, Esq.

23   Microsoft Corp.
     *andycu@microsoft.com*

24   *davkill@microsoft.com*

25   DATED this 15th day of October, 2012.

26                                            /s/ *Marcia A. Ripley*
     _____
                                             Marcia A. Ripley

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 21
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001