Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| Microsoft Corporation,<br><br>        Plaintiff,<br><br>      v.<br><br>Motorola, Inc. Motorola Mobility, LLC, and General Instrument Corporation,<br><br>        Defendants. | No. C10-1823-JLR<br><br>NONPARTIES RESEARCH IN MOTION LIMITED AND RESEARCH IN MOTION CORPORATION'S MOTION TO SEAL TERMS OF PATENT LICENSE AGREEMENTS AND TO DENY MICROSOFT IN-HOUSE COUNSEL ACCESS TO THE AGREEMENTS<br><br>**REDACTED VERSION**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**NOTE ON MOTION CALENDAR: November 9, 2012** |

REDACTED MTN TO SEAL TERMS OF
LICENSE AGREEMENTS - 1
Redacted Mtn To Seal Terms Of License Agreements.Doc

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

Nonparties Research In Motion Limited and Research In Motion Corporation (collectively, "RIM") respectfully move the Court to seal the terms of patent license agreements between RIM and Defendants Motorola, Inc. (now Motorola Solutions, Inc.) and Motorola Mobility, LLC (collectively, "Motorola") and join Motorola's Motion to Seal Documents and Trial Testimony (D.I. 495) ("Motorola Motion") as it pertains to those licenses.[1]  Motorola has informed RIM that Motorola intends to use the RIM-Motorola licenses at trial.  The Court should seal the terms of the licenses because they constitute trade secrets, ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████[2]  Ninth Circuit courts routinely seal the terms of patent license agreements based on just such concerns, and RIM's requested relief would in no way impede the public's ability to understand the substantive questions involved in this litigation.  Indeed, this Court has already deemed such information in this case as meeting the Ninth Circuit's "compelling reasons" standard, and has sealed one RIM-Motorola license under that standard. (*See* Order, D.I. 292, at 3-4 (descriptions of Motorola's licensing negotiations and agreements with third parties, as well as copies of licensing agreements between Motorola and third parties, constitute commercially sensitive and confidential information sufficient to meet the "compelling reasons" standard); and D.I. 187, sealing Trial Exhibit 2833 (RIM-Motorola license)).

---

[1] RIM files this motion in compliance with the Court's statement at the October 18, 2012 *Daubert* hearing that third parties may file motions seeking to protect their license information. (Tr. at 99.)  RIM understands that third party IBM also intends to file a similar motion.

[2] As a corollary to its request that the Court seal the terms of the RIM-Motorola licenses, RIM further requests that the Court vacate the courtroom and halt any videotaping during testimony regarding those terms. RIM's arguments herein that the terms of the RIM-Motorola licenses should be sealed apply equally to that corollary request.

REDACTED MTN TO SEAL TERMS OF
LICENSE AGREEMENTS.DOC - 2
Redacted Mtn To Seal Terms Of License Agreements.Doc

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

Additionally, RIM respectfully moves the Court to amend the Protective Order[3] (Dkt. No. 434-1) to bar T. Andrew Culbert, in-house counsel for Plaintiff Microsoft Corporation ("Microsoft"), from access to the RIM-Motorola licenses. The Court recently amended the Protective Order so as to permit Mr. Culbert to have unrestricted access to confidential business information produced in the litigation. (*Id.* ¶ 3(iv).) Importantly, ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

In the alternative, RIM respectfully moves the Court to amend the Protective Order to bar Mr. Culbert from participating in any licensing negotiations adverse to RIM.

On Friday, October 26, 2012, counsel for RIM conferred with counsel for Motorola and counsel for Microsoft regarding the substance of this motion. Counsel for Motorola stated that Motorola does not oppose the motion. Counsel for Microsoft stated that Microsoft has no position on the motion.

## I.  FACTUAL BACKGROUND

### A.  RIM Frequently Engages in Negotiations Over Licenses To Smartphone Technology

RIM is a global leader in smartphone technology that revolutionized the smartphone industry with the introduction of the BlackBerry in 1999. (Declaration of Michael J. Crowley ("Crowley Decl."), ¶ 3.) RIM owns an extensive portfolio of patents related to smartphones and has entered into license agreements with several companies, including Motorola. (*Id.*) At present, however, there is no broad licensing agreement in place between RIM and Microsoft. (*Id.*)

RIM frequently engages in patent licensing negotiations with several companies, including competitors in the smartphone industry. (Crowley Decl., ¶ 4.) In fact, ████

---

[3] RIM uses the term "Protective Order" herein to refer to the Amended Protective Order Regarding the Disclosure and Use of Discovery Materials (D.I. 434-1).

REDACTED MTN TO SEAL TERMS OF
LICENSE AGREEMENTS.DOC - 3
Redacted Mtn To Seal Terms Of License Agreements.Doc

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

1  ███████████████████████████████████████████████████████████████ (*Id.*)

2  Such negotiations are commonplace in the smartphone industry due to the large number and

3  diverse ownership of smartphone patents. (*Id.*) According to one estimate, there are currently

4  more than 250,000 active patents related to smartphones, which combine to form a so-called

5  "patent thicket." (*Id.*)

   **B.  Motorola Has Informed RIM That It Intends To Use Confidential RIM-Motorola Patent License Agreements At Trial**

   Motorola has informed RIM that Motorola intends to use at trial two RIM-Motorola

   licenses: ███████████████████████████████████ ("First RIM-Motorola

   License") and the ████████████████████████ ("Second RIM-Motorola License").

   (Crowley Decl., ¶ 5.) ███████████████████████████████████████████

   ████████████████████████████████████████████████████████████████

   ████████████████████████████████████████████████████████████████

   ████████████████████████████

   **C.  RIM Would Suffer Competitive Harm If The Terms Of The RIM-Motorola Licenses Were Publicly Disclosed**

   RIM would suffer severe competitive harm if the terms of the RIM-Motorola license

   agreements were publicly disclosed, for two basic reasons. (Crowley Decl., ¶ 6.) ███████

   ████████████████████████████████████████████████████████████████
   ████████████████████████████████████████████████████████████████
   ████████████████████████████████████████████████████████████████
   ████████████████████████████████████████████████████████████████
   ████████████████████████████████████████████████████████████████
   ████████████████████████████████████████████████████████████████
   ████████████████████████████████████████████████████████████████

REDACTED MTN TO SEAL TERMS OF
LICENSE AGREEMENTS.DOC - 4
Redacted Mtn To Seal Terms Of License Agreements.Doc

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

[REDACTED]

## II. ARGUMENT

### A. The Court Should Grant RIM's Motion to Seal the Terms Of The RIM-Motorola Licenses

#### 1. Courts In The Ninth Circuit Protect The Terms Of Patent License Agreements From Public Disclosure

As detailed in Section II of the Motorola Motion, Ninth Circuit courts protect commercially sensitive information from public disclosure when there are "compelling reasons" for doing so. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006). If the disclosure of information "might harm a [company's] competitive standing," there are "compelling reasons" to seal the information. *In re Elec. Arts, Inc.*, 298 F. Appx. 568, 569 (9th Cir. 2008) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)) (granting mandamus relief and sealing license agreement). For example, the disclosure of financial terms of patent license agreements "would place [the parties to the license] in a weakened bargaining position in future negotiations, thereby giving their customers and competitors a significant advantage." *Apple, Inc. v. Samsung Elec. Co., Ltd.*, No. 5:11–cv–01846–LHK, 2012 WL 3283478, at *10 (N.D. Cal. Aug. 9, 2012).

Additionally, the Ninth Circuit has held that preventing the release of trade secrets is a "compelling reason" for sealing information. *Kamakana*, 447 F.3d at 1179. The Ninth Circuit has further held that the terms of confidential licensing agreements constitute "information that plainly falls within the definition of 'trade secrets.'" *Elec. Arts*, 298 F. Appx. at 569-70.

For these reasons, Ninth Circuit courts have consistently found that the terms of confidential patent licensing agreements should be sealed. *See, e.g.*, *id.*, at *6, *10 (sealing all financial terms of patent licensing agreements); *Powertech Tech., Inc. v. Tessera, Inc.*, No. C 11-6121 CW, 2012 WL 3283420, at *9 (N.D. Cal. Aug. 10, 2012) (sealing terms of patent

REDACTED MTN TO SEAL TERMS OF
LICENSE AGREEMENTS.DOC - 5
Redacted Mtn To Seal Terms Of License Agreements.Doc

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

license agreement); *AMC Tech., L.L.C. v. Cisco Sys.*, No. 11-CV-03403, 2012 U.S. Dist. LEXIS 9934, at *5 (N.D. Cal. Jan. 27, 2012) (same); *TriQuint Semiconductor v. Avago Techs. Ltd.*, No. 09-CV-1531, 2011 WL 4947343, at *2 (D. Ariz. Oct. 18, 2011) (same, regarding terms of draft patent license agreement).

### 2. The Terms Of The RIM-Motorola Licenses Should Be Sealed Because Their Disclosure Would Cause RIM Competitive Harm

The Court should follow Ninth Circuit precedent and seal the terms of the RIM-Motorola licenses, just as it did previously in this case with respect to other Motorola licenses and licensing information.[4] The terms of these confidential licenses are trade secrets that must be afforded protection. *Kamakana*, 447 F.3d at 1179; *Elec. Arts*, 298 Fed. Appx. at 569-70. Furthermore, RIM has established that it would suffer severe competitive harm if the terms of the licenses were made public. (*See supra*, § I.C; Crowley Decl., ¶¶ 6-7.) Specifically, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[5] *Cf. Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 530 (N.D. Cal. 2000) (noting that knowledge of the terms of confidential license agreements can provide a company with a "real competitive advantage"). Such negotiations are by no means a remote possibility given the strength of RIM's patent portfolio, the large number and diverse ownership of smartphone-related patents, and the frequency with which companies in the

---

[4] *See* Order, D.I. 292, at 3-4 (descriptions of Motorola's licensing negotiations and agreements with third parties, as well as copies of licensing agreements between Motorola and third parties, constitute commercially sensitive and confidential information sufficient to meet the "compelling reasons" standard); and D.I. 187, sealing Trial Exhibit 2833 (RIM-Motorola license).

[5] Indeed, Microsoft's General Manager of Outbound Licensing recently expressed similar concerns in a declaration supporting Microsoft's motion to seal a confidential license in the *Apple v. Samsung* case. She stated that public disclosure would "put Microsoft in a substantially weakened position with respect to negotiating with entities that have not yet entered into license agreements, thus decreasing the probability of reaching out-of-court licensing agreements and increasing the probability of litigation to resolve intellectual property disputes." Declaration of Tanya Moore at 3, *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846-LHK, Dkt. No. 1395 (N.D. Cal. July 26, 2012).

REDACTED MTN TO SEAL TERMS OF LICENSE AGREEMENTS.DOC - 6
Redacted Mtn To Seal Terms Of License Agreements.Doc

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

smartphone industry engage in licensing negotiations. (*See supra*, § I.A; Crowley Decl., ¶¶ 3-4.)

In short, the competitive harm that RIM would incur from the disclosure of the terms of the RIM-Motorola licenses is a "compelling reason" to seal them under Ninth Circuit law. *Elec. Arts*, 298 Fed. Appx. at 569; *Apple*, 2012 WL 3283478, *10. By contrast, the disclosure of the license terms would not advance the public's understanding regarding the issues in this litigation and would "do little to aid the public's understanding of the judicial process." *Network Appliance, Inc. v. Sun Microsystems Inc.*, No. 07-CV-06053, 2010 U.S. Dist. LEXIS 21721, at *5 (N.D. Cal. Mar. 10, 2010); *see also Kamakana*, 447 F.3d at 1179 (finding that the public's interest in disclosure "does not apply with equal force" to tangential facts). Accordingly, the Court should seal the terms of the RIM-Motorola licenses. *Elec. Arts*, 298 F. Appx. at 569; *Apple*, 2012 WL 3283478, at *10.

### 3. The Terms Of The RIM-Motorola Licenses Should Be Sealed For Additional Policy Reasons

The terms of the RIM-Motorola licenses should be sealed for several additional policy reasons.  (Crowley Decl., ¶ 8.) The terms of the RIM-Motorola licenses should be sealed to prevent the possibility of this harm to Motorola. *Cf. Publiker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1073 (3d Cir. 1984) (noting a party's inability to enforce a legal right due to a contractual confidentiality obligation would be an interest overriding the presumption that proceedings are open to the public).

Finally, companies would be more likely to engage in wasteful discovery battles early in litigation if they feared that the terms of their confidential licenses could be made public at

REDACTED MTN TO SEAL TERMS OF
LICENSE AGREEMENTS.DOC - 7
Redacted Mtn To Seal Terms Of License Agreements.Doc

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

trial.  Worse, companies would hesitate to enter into patent licenses in the first place given the likelihood that their competitors would later gain access to the licenses and use them to negotiate for superior terms.  Indeed, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉  In short, if confidential patent licenses were not sealed at trial as a matter of routine, the result would be more and costlier patent litigation.[6]

### B. The Court Should Grant RIM's Motion To Amend The Protective Order To Bar Mr. Culbert From Accessing The RIM-Motorola Licenses

#### 1. Courts Must Protect Against The Harm To A Company From The Disclosure Of Its Confidential Information To Counsel For Its Competitors

Courts must protect against the harm to a company from the disclosure of its confidential information to counsel for its competitors.  *See In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010); *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1467-68 (Fed. Cir. 1984).  The threat of harm is particularly acute when the counsel to whom the information is disclosed participates in "competitive decisionmaking" with his or her client.[7]  *Deutsche Bank Trust*, 605 F.3d at 1378; *U.S. Steel*, 730 F.2d at 1467-68 & n.3.  In such circumstances, "even the most rigorous efforts of the recipient of such information to preserve confidentiality in compliance with the provisions of such a protective order may not prevent inadvertent compromise."  *Deutsche Bank Trust*, 605 F.3d at 1378.  This is true because it is "very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so."  *Id.* (quoting *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980)); *see also Oracle Am., Inc. v. Google Inc.*, No. C-10-03561 WHA (DMR), 2011 U.S. Dist. LEXIS 60003, at *6

---

[6] *See supra* note 5.

[7] The Federal Circuit has defined "competitive decisionmaking" as shorthand for "counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor."  *Deutsche Bank Trust*, 605 F.3d at 1378 (quoting *U.S. Steel*, 730 F.2d at 1468 n.3).

REDACTED MTN TO SEAL TERMS OF
LICENSE AGREEMENTS.DOC - 8
Redacted Mtn To Seal Terms Of License Agreements.Doc

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

(N.D. Cal. June 6, 2011) ("Even with the best of efforts and intentions, it is not possible to 'lock-up trade secrets in one's mind, safe from inadvertent disclosure to one's employer.'") (quoting *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992)).

### 2. Courts Prohibit The Disclosure Of Confidential License Agreements To In-House Counsel Involved In Reviewing And Negotiating License Agreements

For these reasons, courts prohibit the disclosure of confidential information to in-house counsel involved in reviewing and negotiating license agreements. For example, in *Oracle*, 2011 U.S. Dist. LEXIS 60003, the court refused to allow Oracle's in-house lawyers access to Google's third-party agreements. *Id.* at *6-7. The court noted that the lawyers' "involvement in evaluating licensing agreements necessarily affects Oracle's competitiveness in the market" and that "[h]aving access to Google's third party agreements may well impact their approach in crafting Oracle's licensing agreements[.]" *Id.* at *6. The court held that "barring them from access to such documents is a reasonable means to avoid that risk." *Id.*

Similarly, in *Intel*, 198 F.R.D. 525, the court barred an in-house lawyer from access to confidential licensing agreements. *Id.* at 529-32. The court found that the lawyer's involvement in her client's licensing negotiations amounted to competitive decisionmaking under Federal Circuit precedent, and observed that she would be put in the "untenable position of having either to refuse to offer crucial legal advice at times or risk disclosing protected information." *Id.* at 530 (citing *Brown Bag*, 960 F.2d at 1472).

### 3. The Protective Order Should Be Amended To Deny Mr. Culbert Access To The RIM-Motorola License Agreements

Although the Protective Order permits Mr. Culbert to receive any confidential business information produced in this case (Dkt. No. 434-1, ¶ 3(iv))—including the RIM-Motorola licenses—████████████████████████████████████████ ████████████████ Indeed, under the terms of the Protective Order, Mr. Culbert may freely advise Microsoft in licensing negotiations adverse to RIM after he studies the terms of the RIM-

REDACTED MTN TO SEAL TERMS OF
LICENSE AGREEMENTS.DOC - 9
Redacted Mtn To Seal Terms Of License Agreements.Doc

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

Motorola licenses. Though Mr. Culbert presumably would not divulge the terms of the RIM-Motorola licenses to his colleagues, he cannot reasonably be expected to suppress the information he learned from the licenses when advising his client. *See Brown Bag*, 960 F.2d at 1471; *Deutsche Bank Trust*, 605 F.3d at 1378. Moreover, Mr. Culbert's knowledge of the terms of the licenses would be greatly prejudicial to RIM. (Crowley Decl., ¶ 9.) Therefore, Mr. Culbert should be denied access to the RIM-Motorola license agreements. *See Oracle*, 2011 U.S. Dist. LEXIS 60003, at *6-7; *Intel*, 198 F.R.D. at 525.

### C. Alternatively, The Court Should Grant RIM's Motion To Bar Mr. Culbert From Participating In Licensing Negotiations Adverse To RIM

The Federal Circuit has held that courts must consider instituting prospective bars to prevent counsel who learn confidential information from later advising clients in matters in which the information is advantageous. *Deutsche Bank Trust*, 605 F.3d at 1381 (requiring courts to consider patent prosecution bars). If Mr. Culbert is allowed to maintain access to the RIM-Motorola license agreements, he clearly should not be permitted to advise Microsoft in licensing negotiations adverse to RIM. *Id.* at 1378, 1381; *see also Oracle*, 2011 U.S. Dist. LEXIS 60003, at *6-7; *Intel*, 198 F.R.D. at 525. Accordingly, if the Court denies RIM's motion to deny Mr. Culbert access to the RIM-Motorola license agreements, the Court should amend the Protective Order to bar Mr. Culbert from participating in licensing negotiations adverse to RIM.

### III. CONCLUSION

For these reasons, RIM respectfully requests that the Court seal the terms of the patent license agreements between RIM and Motorola and vacate the courtroom during testimony regarding those terms. In addition, RIM respectfully requests that the Court amend the Protective Order to deny Mr. Culbert access to the RIM-Motorola licenses. In the alternative, RIM respectfully requests that the Court amend the Protective Order to bar Mr. Culbert from participating in licensing negotiations adverse to RIM.

REDACTED MTN TO SEAL TERMS OF
LICENSE AGREEMENTS.DOC - 10
Redacted Mtn To Seal Terms Of License Agreements.Doc

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

Dated this 29th day of October, 2012.

          CHRISTENSEN O'CONNOR
          JOHNSON KINDNESS[PLLC]

          s/ John D. Denkenberger
          John D. Denkenberger, WSBA No.: 25,907
          Christensen O'Connor Johnson Kindness[PLLC]
          1420 Fifth Avenue, Suite 2800
          Seattle, WA  98101-2347
          Telephone:  206.682.8100
          Fax:  206.224.0779
          E-mail:  john.denkenberger@cojk.com,
          litdoc@cojk.com

          Vincent J. Belusko *(pro hac vice application pending)*
          Morrison & Foerster LLP
          555 W. Fifth Street
          35th Floor
          Los Angeles, CA 90013
          Telephone:  213.892.5200
          Fax:  213.892.5454
          Email: vbelusko@mofo.com,
          troybal@mofo.com

          Attorneys for Nonparties Research In Motion Limited and Research In Motion Corporation

REDACTED MTN TO SEAL TERMS OF
LICENSE AGREEMENTS.DOC - 11
Redacted Mtn To Seal Terms Of License Agreements.Doc

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE CR 26(c)(1)**

On Friday, October 26, 2012, counsel for RIM conferred with counsel for Motorola and counsel for Microsoft regarding the substance of the above-captioned motion. Counsel for Motorola stated that Motorola does not oppose the motion. Counsel for Microsoft stated that Microsoft has no position on the motion.

Dated this 29th day of October, 2012.

CHRISTENSEN O'CONNOR
JOHNSON KINDNESS[PLLC]

s/ John D. Denkenberger
John D. Denkenberger, WSBA No.: 25,907
Christensen O'Connor Johnson Kindness[PLLC]
1420 Fifth Avenue, Suite 2800
Seattle, WA 98101-2347
Telephone: 206.682.8100
Fax: 206.224.0779
E-mail: john.denkenberger@cojk.com,
litdoc@cojk.com

Vincent J. Belusko *(pro hac vice application pending)*
Morrison & Foerster LLP
555 W. Fifth Street
35th Floor
Los Angeles, CA 90013
Telephone: 213.892.5200
Fax: 213.892.5454
Email: vbelusko@mofo.com,
troybal@mofo.com

Attorneys for Nonparties Research In Motion Limited and Research In Motion Corporation

REDACTED MTN TO SEAL TERMS OF
LICENSE AGREEMENTS.DOC - 12
Redacted Mtn To Seal Terms Of License Agreements.Doc

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

**CERTIFICATE OF SERVICE**

I hereby certify that on October 29, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

James R. Batchelder
james.batchelder@ropesgray.com

William H Baumgartner , Jr
wbaumgartner@sidley.com,pblair@sidley.com

Norman H. Beamer
norman.beamer@ropesgray.com

Samuel Lawrence Brenner
samuel.brenner@ropesgray.com,CourtAlert@RopesGray.com

Richard A Cederoth
rcederoth@sidley.com,smukherjee@sidley.com,david.greenfield@sidley.com,tchandler@sidley.com,mpierson@sidley.com,apotter@sidley.com,efilingnotice@sidley.com,ascola@sidley.com,nwyland@sidley.com,amcleod@sidley.com,damiller@sidley.com,daniel.siegel@sidley.com,erobbins@sidley.com,bbkelly@sidley.com,tnguyen@sidley.com,tmurphy@sidley.com,jwmcbride@sidley.com,cgwilson@sidley.com

Shane P. Cramer
shanec@calfoharrigan.com,susiec@calfoharrigan.com,florinef@calfoharrigan.com

T. Andrew Culbert
andycu@microsoft.com

Lynn M Engel
lynne@summitlaw.com,celinel@summitlaw.com,marciar@summitlaw.com

David C. Giardina
dgiardina@sidley.com

David Greenfield
david.greenfield@sidley.com

Arthur W. Harrigan , Jr
arthurh@calfoharrigan.com,vickyc@calfoharrigan.com,lindab@calfoharrigan.com

Gabrielle Elizabeth Higgins
gabrielle.higgins@ropesgray.com

REDACTED MTN TO SEAL TERMS OF
LICENSE AGREEMENTS.DOC - 13
Redacted Mtn To Seal Terms Of License Agreements.Doc

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

1  Khue V. Hoang
   Khue.Hoang@ropesgray.com,CourtAlert@RopesGray.com,kvhoang@gmail.com

2
3  Jesse J Jenner
   jesse.jenner@ropesgray.com,jfifth@optonline.net,kerry.ennis@ropesgray.com

4  David E. Killough
5  davkill@microsoft.com

6  Michael D Laufert
   michael.laufert@ropesgray.com,laufert@gmail.com
7
8  Douglas I. Lewis
   dilewis@sidley.com

9
10 Nathaniel C. Love
   nlove@sidley.com,efilingnotice@sidley.com

11 John W McBride
12 jwmcbride@sidley.com,efilingnotice@sidley.com

13 Philip S McCune
   philm@summitlaw.com,kristeno@summitlaw.com,marciar@summitlaw.com
14

15 Conor Brew McDonough
   conor.mcdonough@ropesgray.com,mcdonoug@gmail.com

16
17 Brian R. Nester
   bnester@sidley.com,jlgordon@sidley.com

18
19 Ralph H Palumbo
   ralphp@summitlaw.com,cherylm@summitlaw.com

20 Anthony Pastor
   anthony.pastor@ropesgray.com
21
22 Steven Pepe
   steven.pepe@ropesgray.com,spepe3636@yahoo.com

23
24 Carter G. Phillips
   cphillips@sidley.com

25
26 Kevin J. Post
   Kevin.Post@ropesgray.com,kpost@law.gwu.edu,courtalert@ropesgray.com

27

REDACTED MTN TO SEAL TERMS OF
LICENSE AGREEMENTS.DOC - 14
Redacted Mtn To Seal Terms Of License Agreements.Doc

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

David T Pritikin
dpritikin@sidley.com,jstone@sidley.com,erobbins@sidley.com,efilingnotice@sidley.com,ptripodi@sidley.com,ascola@sidley.com

Ellen S. Robbins
erobbins@sidley.com

Laurence S Rogers
laurence.rogers@ropesgray.com

Mark D. Rowland
mark.rowland@ropesgray.com,mark.rowland@earthlink.net

Josef B. Schenker
Josef.schenker@ropesgray.com,josef.schenker@gmail.com

Paul M. Schoenhard
paul.schoenhard@ropesgray.com,schoenhard@gmail.com

Constantine L. Trela , Jr
ctrela@sidley.com

Amanda Wieker
Amanda.Wieker@ropesgray.com

Christopher T Wion
chrisw@calfoharrigan.com,lindab@calfoharrigan.com

Stuart W. Yothers
Stuart.Yothers@ropesgray.com,CourtAlert@RopesGray.com

s/ John D. Denkenberger

REDACTED MTN TO SEAL TERMS OF
LICENSE AGREEMENTS.DOC - 15
Redacted Mtn To Seal Terms Of License Agreements.Doc

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100