The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MOTOROLA, INC., MOTOROLA MOBILITY, LLC, and GENERAL INSTRUMENT CORPORATION,<br><br>Defendants. | NO. C10-1823-JLR<br><br>NONPARTIES KYOCERA CORPORATION AND KYOCERA COMMUNICATIONS, INC.'S MOTION TO AMEND THE PROTECTIVE ORDER TO INCLUDE A LICENSE NEGOTIATION RESTRICTION ON MICROSOFT'S IN-HOUSE COUNSEL<br><br>NOTE ON MOTION CALENDAR:<br>NOVEMBER 23, 2012<br><br>REDACTED |

Nonparties Kyocera Corporation and Kyocera Communications, Inc. (collectively, "Kyocera"), respectfully move the Court to further amend the Amended Protective Order (Dkt. 434-1) to bar T. Andrew Culbert and David E. Killough, in-house counsel for Plaintiff Microsoft Corporation ("Microsoft"), who access Trial Exhibit 3224 (Kyocera-Motorola license), from participating in licensing negotiations with Kyocera for a period of five (5) years after conclusion of this litigation.

NONPARTIES KYOCERA CORPORATION AND KYOCERA COMMUNICATIONS, INC.'S MOTION TO AMEND THE PROTECTIVE ORDER TO INCLUDE A LICENSE NEGOTIATION RESTRICTION ON MICROSOFT'S IN-HOUSE COUNSEL (NO. C10-1823-JLR) - 1

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

The Kyocera-Motorola license[1] constitutes commercially sensitive and confidential information sufficient to meet the Ninth Circuit's "compelling reasons" standard and has been designated and clearly marked as "Confidential Business Information – Subject to Protective Order." The Court recently amended the Protective Order to allow designated Microsoft in-house counsel's access to confidential business information produced in the litigation. (See Order, Dkt. 434-1) There are, however, compelling reasons for restricting subsequent licensing activities of Microsoft's in-house counsel who access the Kyocera-Motorola license. Kyocera supports this motion with the Declaration of Eric Klein, Corporate Secretary of Kyocera Communications, Inc. (hereinafter, "Klein Decl.") filed herewith.

Kyocera respectfully moves the Court to further amend the Amended Protective Order so that, to the extent Mr. Culbert and Mr. Killough has accessed the Kyocera-Motorola license, they are barred from participating in any licensing negotiations with Kyocera for a period of five (5) years following conclusion of this litigation. Alternatively, if Microsoft's in-house counsel have not yet obtained access to the Kyocera-Motorola license, Kyocera respectfully moves the Court to further amend the Amended Protective Order (Dkt. 434-1) to bar Mr. Culbert and Mr. Killough from such access.

Movant understands that defendant Motorola does not oppose this motion; Plaintiff Microsoft has not yet responded as to its position regarding this motion.

## I.      FACTUAL BACKGROUND

Kyocera manufactures wireless handsets and communications products. Klein Decl. ¶ 2. To maintain its competitive position, Kyocera has developed an extensive portfolio of patents related to various wireless handsets and consumer goods. *Id.* ¶ 3. Kyocera engages in patent licensing with other companies, including competitors in the wireless communications and smartphone industries. *Id.*

---

[1] The patent license agreement is between Kyocera Corporation, Kyocera Wireless Corporation and Defendant Motorola, Inc. (now Motorola Solutions, Inc., collectively, "Motorola"). Kyocera Communications, Inc. is the successor-in-interest to Kyocera Wireless Corporation.

NONPARTIES KYOCERA CORPORATION AND KYOCERA COMMUNICATIONS, INC.'S MOTION TO AMEND THE PROTECTIVE ORDER TO INCLUDE A LICENSE NEGOTIATION RESTRICTION ON MICROSOFT'S IN-HOUSE COUNSEL (NO. C10-1823-JLR) - 2

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

██████, Kyocera entered into a license agreement with Motorola ("the Kyocera-Motorola license"). *Id.* ¶ 4. The Kyocera-Motorola license contains highly proprietary business information, ████████████████████████████████████████████████████████ ████████████████n. *Id.* ¶ 7. The terms of the agreement constitute extremely sensitive information because they reveal Kyocera's philosophy and strategy relating to licensing negotiations, as well as competitive information ██████████████████████████████████. *Id.* Such sensitive information would be of great importance to an adverse party seeking to entice or coerce Kyocera into engaging to embark upon license negotiations by providing a roadmap that the potential licensor could use to gain an unfair advantage in its dealings with Kyocera. *Id.*

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

Kyocera consented to Motorola's request for disclosure of the Kyocera-Motorola license in a patent infringement investigation before the United States International Trade Commission ("ITC"), provided the document would be designated and clearly marked as "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER," such that the license agreement would not be disclosed to any legal representatives of the parties in the investigation other than outside counsel for the parties. *Id.* ¶ 5.

Recently, Kyocera was informed that the Court had granted Microsoft's motion to amend the Protective Order to allow in-house counsel for Microsoft to access Confidential Business Information, including the Kyocera-Motorola license. *Id.* ¶ 6. The confidential terms of the

NONPARTIES KYOCERA CORPORATION AND KYOCERA COMMUNICATIONS, INC.'S MOTION TO AMEND THE PROTECTIVE ORDER TO INCLUDE A LICENSE NEGOTIATION RESTRICTION ON MICROSOFT'S IN-HOUSE COUNSEL (NO. C10-1823-JLR) - 3

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Kyocera-Motorola license reveal a great deal about Kyocera's licensing strategy, and ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

## II. Argument

### A. The Court Should Grant Kyocera's Motion to Amend the Protective Order to Bar Mr. Culbert and Mr. Killough From Participating In License Negotiations Between Microsoft and Kyocera

Courts have recognized that, even with rigorous efforts by a recipient of confidential information to preserve confidentiality in compliance with the provisions of a protective order, further restrictions often should be imposed to prevent inadvertent disclosure of such information. For example, district courts have routinely fashioned protective orders that bar litigation counsel who obtain access to confidential information from participating in patent prosecution matters for a party for a specified period following conclusion of the litigation. *See, e.g., In re Deutsche Bank Trust Co.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010).

In determining what provisions of a protective order for proprietary, competitive information may be appropriate, the Ninth Circuit employs a balancing test that weighs: (1) the risk of inadvertent disclosure, and (2) the potential harm from inadvertent disclosure, against (3) the prejudice to the party subject to the protective order. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). When a protective order contains a patent prosecution bar, the moving party must show that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information. *See Deutsche Bank*, 605 F.3d at 1381.

NONPARTIES KYOCERA CORPORATION AND KYOCERA
COMMUNICATIONS, INC.'S MOTION TO AMEND THE
PROTECTIVE ORDER TO INCLUDE A LICENSE
NEGOTIATION RESTRICTION ON MICROSOFT'S IN-HOUSE
COUNSEL (NO. C10-1823-JLR) - 4

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Application of the foregoing considerations in the licensing context, as discussed below, establishes the reasonableness of imposing similar restrictions on in-house counsel who engage in "competitive decision-making" with respect to licensing transactions. Indeed, negotiating the terms of license agreements in connection with litigation has been found to constitute competitive decisionmaking. *See, e.g.*, *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 530 (N.D. Cal. 2000); *Info-Hold, Inc. v. Muzak Holdings LLC*, No. 1:11-cv-283, 2012 WL 3061024, at *4 (S.D. Ohio July 26, 2012). Such a restriction on licensing activity adverse to the nonparty whose information is disclosed to in-house counsel provides a fair balancing of the in-house counsel's access to confidential information relating to a pending litigation against the unfair advantage over third parties that may be obtained in future licensing transactions.

### 1. Mr. Culbert's and Mr. Killough's Participation In Licensing Negotiations Between Microsoft and Kyocera Will Heighten the Risk of Misuse of the Proprietary Kyocera-Motorola License

The risk of potential inadvertent disclosure by counsel must be determined by "the facts on a counsel-by-counsel basis." *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). Where in-house counsel is involved in "competitive decisionmaking" the risk of disclosure may outweigh the need for confidential information. *See id.* The term "competitive decisionmaking" was defined as "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id.* n.3.

An attorney's work constitutes competitive decisionmaking for his client when he or she is involved in patent litigation and substantially engages in prosecution, by way of crafting the content of patent applications or advising clients on the direction to their patent portfolios. *See Deutsche Bank*, 605 F.3d at 1379-80. For these attorneys, the risk of inadvertent disclosure of competitive information learned during litigation is much greater and they are not likely to be exempted from a patent prosecution bar. *Id.* at 1380. In-house counsel who participate in

NONPARTIES KYOCERA CORPORATION AND KYOCERA COMMUNICATIONS, INC.'S MOTION TO AMEND THE PROTECTIVE ORDER TO INCLUDE A LICENSE NEGOTIATION RESTRICTION ON MICROSOFT'S IN-HOUSE COUNSEL (NO. C10-1823-JLR) - 5

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

licensing also may constitute competitive decisionmakers. *Intel*, 198 F.R.D. at 530; *Info-Hold*, 2012 WL 3061024, at *4. Providing such counsel access to a nonparty's patent license exposes that nonparty's licensing philosophy and strategy, and offers a roadmap for subsequently developing (or refining) a comprehensive license assertion strategy against that nonparty. By learning what licensing provisions (e.g., license fees, royalty rates, royalty base, cross-license provisions, etc.) the nonparty has agreed to in past license negotiations, in-house counsel gains a significant, unfair advantage in crafting license terms for subsequent assertions against the non-party, which may severely undercut that non-party's business competitiveness.

     Here, Mr. Culbert and Mr. Killough, as in-house counsel, manage Microsoft's litigation relating to licensing disputes. Their litigation responsibilities at Microsoft necessarily give them knowledge of proprietary licensing agreements involving technology, products, payments and terms. Indeed, Mr. Culbert has been given access to all of the Motorola licensing agreements produced during discovery in this litigation, including the Kyocera-Motorola license. Mr. Killough also is actively engaged in patent licensing on behalf of Microsoft



Were Mr. Culbert and Mr. Killough permitted to participate in licensing negotiations between Microsoft and Kyocera, the risk of misusing Kyocera confidential information gleaned from the Kyocera-Motorola license during this litigation would be unacceptably high. This risk cannot be addressed by Mr. Culbert's and Mr. Killough's promises, however earnest, that they would maintain the confidentiality of Kyocera confidential information obtained in this case. As noted in *Brown Bag* and *Intel*, it is not possible for counsel "to lock up trade secrets in [their] minds." *See Brown Bag*, 960 F.2d at 1471-72; *Intel*, 198 F.R.D. at 530. Just as a patent litigator in

NONPARTIES KYOCERA CORPORATION AND KYOCERA COMMUNICATIONS, INC.'S MOTION TO AMEND THE PROTECTIVE ORDER TO INCLUDE A LICENSE NEGOTIATION RESTRICTION ON MICROSOFT'S IN-HOUSE COUNSEL (NO. C10-1823-JLR) - 6

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

*Deutsche Bank* would be barred from engaging in substantially-related prosecution work, so too should Mr. Culbert and Mr. Killough, who are license litigators and license negotiators, be barred from advising, strategizing, directing, or participating in licensing negotiating between Microsoft and Kyocera.  *See Deutsche Bank*, 605 F.3d at 1379-80.

### 2. Public Disclosure of the Kyocera-Motorola License Agreement Would Cause Potential Harm to Kyocera's Ongoing and Future Licensing Negotiations

License agreements have been consistently held by courts to meet the "compelling reasons" standard of the Ninth Circuit.  *See*, *e.g.*, *Elec. Arts, Inc. v. United States Dist. Court for the N. Dist. of Cal.*, 298 Fed. App'x 568, 569 (9th Cir. 2008) (pricing terms, royalty rates, guaranteed minimum payment terms of licensing agreement plainly fall within the definition of "trade secrets").  In *Brown Bag*, the court found potential harm from inadvertent disclosure of trade secrets based upon Symantec counsel's testimony, which described the extreme sensitivity of the trade secrets at issue, and further testimony of the potential damage to Symantec should the trade secrets become subject to misuse.  *See Brown Bag*, 960 F.2d at 1470.

Here, the potential harm from inadvertent disclosure is established by the declaration of Eric Klein, Kyocera's Corporate Secretary.  Mr. Klein avers that the Kyocera-Motorola license is a highly proprietary licensing agreement ███████████████████████████████████████████████████████████████, which falls under trade secret protection.  *See* Klein Decl. ¶ 7; *see Elec. Arts*, 298 Fed. App'x at 569.  The terms of the agreement constitute extremely sensitive information because they reveal Kyocera's philosophy and strategy relating to licensing negotiations.  Klein Decl. ¶ 7.  This sensitive information is of great importance to an adverse party seeking to entice or coerce Kyocera into entering license negotiations, and provides a detailed roadmap that Microsoft can use to gain an unfair advantage in its dealings with Kyocera.  *Id.* ¶¶ 9-11.  The information, if disclosed to Microsoft counsel who are permitted to subsequently direct or participate in license negotiations with Kyocera, would likely provide

NONPARTIES KYOCERA CORPORATION AND KYOCERA COMMUNICATIONS, INC.'S MOTION TO AMEND THE PROTECTIVE ORDER TO INCLUDE A LICENSE NEGOTIATION RESTRICTION ON MICROSOFT'S IN-HOUSE COUNSEL (NO. C10-1823-JLR) - 7

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

Microsoft with unfair leverage ███████████████████████████████████ – leverage that could severely undercut Kyocera's market competitiveness.  *Id.*

### 3.  Imposing a Bar on License Negotiation Will Not Harm Microsoft's Litigation of This Case or Its License Negotiation With Kyocera

When evaluating whether to impose a protective order, the court considers the potential harm from imposing restrictions on the party's right to have the benefit of counsel of its choice. *See Deutsche Bank*, 605 F.3d at 1380.  For example, the court should consider such things as the extent and duration of counsel's past history in representing the client, the degree of the client's reliance and dependence on that past history, and the potential difficulty the client might face if forced to rely on other counsel for the pending litigation or engage other counsel to represent it before the PTO.  *Id.* at 1381; *see U.S. Steel*, 730 F.2d at 1468.

Whereas a protective order denying access to confidential information could potentially hinder counsel's role in managing the litigation, an order imposing restrictions against participation in future licensing negotiations with non-parties would not affect Mr. Culbert's and Mr. Killough's abilities to participate in this case. ████████████████████████████████████████████████████████████████████████████████████████████.  Accordingly, the proposed limitation on Mr. Culbert's and Mr. Killough's participation in license negotiations with Kyocera will not impede Microsoft's ability to litigate this case or  unduly limit its ability to negotiate licenses with Kyocera in future.

### 4.  The Proposed Licensing Restriction Reasonably Reflects the Risk Presented By the Disclosure of the Kyocera-Motorola License

To impose a prosecution bar, a court must be satisfied that (1) the information designated to trigger the bar, (2) the scope of activities prohibited by the bar, (3) the duration of the bar, and (4) the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information.  *See Deutsche Bank*, 605 F.3d at 1381.  These

NONPARTIES KYOCERA CORPORATION AND KYOCERA COMMUNICATIONS, INC.'S MOTION TO AMEND THE PROTECTIVE ORDER TO INCLUDE A LICENSE NEGOTIATION RESTRICTION ON MICROSOFT'S IN-HOUSE COUNSEL (NO. C10-1823-JLR) - 8

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

considerations apply with equal vigor to the proposed restriction on Microsoft in-house counsel's licensing activities with respect to Kyocera.

In this case, the proposed restriction is triggered by Microsoft in-house counsel's access to the highly proprietary Kyocera-Motorola license. As discussed above and in the accompanying Klein Declaration, the Kyocera-Motorola license constitutes commercially sensitive and confidential information sufficient to meet the Ninth Circuit's "compelling reasons" standard and has been designated and clearly marked as "Confidential Business Information – Subject to Protective Order" by the parties.

The scope and subject matter of the proposed restriction are reasonable. The restriction prevents Mr. Culbert and Mr. Killough (or any Microsoft in-house counsel who has access to the Kyocera-Motorola license in the course of this litigation) from directing or participating in licensing negotiations between Microsoft and Kyocera for a period of five (5) years following conclusion of this litigation. The restriction is narrowly tailored to prevent a heightened risk of inadvertent disclosure of the proprietary Kyocera-Motorola license, but is not so onerous that it precludes Microsoft from pursuing licensing discussions with Kyocera using other in-house or external counsel.

Finally, the duration of the proposed restriction is tailored to reduce the unfair advantage that Microsoft could obtain by having Mr. Culbert or Mr. Killough participate in licensing discussions with Kyocera. The proposed duration of five (5) years from the conclusion of this action is reasonable given the pace of the innovation in the field of cellular telephony. ████████████████████████████████████████████████████████████████████████████. Accordingly, imposing a restriction of shorter duration that five years would not reduce the likely prejudice to Kyocera. *Cf.*, *Ameranth, Inc. v. Pizza Hut*, No. 3:11-cv-01810-JLS, 2012 WL 528248 (S.D. Cal. Feb. 17, 2012)).

NONPARTIES KYOCERA CORPORATION AND KYOCERA
COMMUNICATIONS, INC.'S MOTION TO AMEND THE
PROTECTIVE ORDER TO INCLUDE A LICENSE
NEGOTIATION RESTRICTION ON MICROSOFT'S IN-HOUSE
COUNSEL (NO. C10-1823-JLR) - 9

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

### III. CONCLUSION

For the reasons stated above, Kyocera respectfully requests the Court to amend the Protective Order to restrict Mr. Culbert, Mr. Killough, or any Microsoft in-house counsel who has access to the Kyocera-Motorola license or communications relating thereto, from directing or participating in license negotiations between Microsoft and Kyocera for a period of five (5) years.  In the alternative, if Microsoft's in-house counsel has not yet accessed the Kyocera-Motorola license, Kyocera respectfully moves the Court to further amend the Amended Protective Order (Dkt. 434-1) to bar such access for all the reasons presented above.

DATED this 7th day of November, 2012.

BYRNES KELLER CROMWELL LLP

By /s/ John A. Tondini
John A. Tondini, WSBA #19092
Byrnes Keller Cromwell LLP
1000 Second Avenue, 38th Floor
Seattle, WA  98104
Telephone:  206.622.2000
Facsimile:  206.622.2522
jtondini@byrneskeller.com
*Attorneys for Nonparties Kyocera Corporation and Kyocera Communications, Inc.*

NONPARTIES KYOCERA CORPORATION AND KYOCERA COMMUNICATIONS, INC.'S MOTION TO AMEND THE PROTECTIVE ORDER TO INCLUDE A LICENSE NEGOTIATION RESTRICTION ON MICROSOFT'S IN-HOUSE COUNSEL (NO. C10-1823-JLR) - 10

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

## CERTIFICATE OF SERVICE

  The undersigned attorney certifies that on the 7th day of November, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel on record in the matter.

                /s/ John A. Tondini
                Byrnes Keller Cromwell LLP
                1000 Second Avenue, 38th Floor
                Seattle, WA  98104
                Telephone:  (206) 622-2000
                Facsimile:  (206) 622-2522
                jtondini@byrneskeller.com

NONPARTIES KYOCERA CORPORATION AND KYOCERA COMMUNICATIONS, INC.'S MOTION TO AMEND THE PROTECTIVE ORDER TO INCLUDE A LICENSE NEGOTIATION RESTRICTION ON MICROSOFT'S IN-HOUSE COUNSEL (NO. C10-1823-JLR) - 11

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000