THE HONORABLE JAMES L. ROBART

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>                   Plaintiff,<br><br>     vs.<br><br>MOTOROLA, INC.,  et al.,<br><br>                   Defendants.<br>_____<br>MOTOROLA MOBILITY LLC, et al.,<br><br>                   Plaintiffs,<br><br>     vs.<br><br>MICROSOFT CORPORATION,<br><br>                   Defendants. | Case No. C10-1823-JLR<br><br>**MICROSOFT'S RESPONSE TO RESEARCH IN MOTION'S MOTION TO SEAL TERMS OF PATENT LICENSE AGREEMENTS AND TO DENY MICROSOFT IN-HOUSE COUNSEL ACCESS TO THE AGREEMENTS**<br><br>**NOTED:  November 9, 2012** |

## I.  INTRODUCTION

Non-parties Research in Motion Limited and Research in Motion Corporation (collectively "RIM") have moved to seal in their entirety two license agreements between RIM and Motorola[1], as well as alter the Amended Protective Order Regarding the Disclosure and

---

[1] These licenses, which are identified on page 4 of RIM's motion, are referred to herein as the "Motorola-RIM License Agreements."

MICROSOFT'S RESPONSE TO RESEARCH IN MOTION'S MOTION TO SEAL TERMS OF PATENT LICENSE AGREEMENTS AND TO DENY MICROSOFT IN-HOUSE COUNSEL ACCESS TO THE AGREEMENTS - 1

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

Use of Discovery Materials (the "Amended Protective Order" [2]) to preclude Microsoft's in-house counsel, T. Andrew Culbert from either (a) having access to the Motorola-RIM License Agreements, or (b) engaging in future negotiations between Microsoft and RIM.

Microsoft does not oppose the sealing of those portions of the Motorola-RIM License Agreements that disclose the royalty rates, payment terms, or any other financial information that might constitute trade secrets of either Motorola or RIM. However, Microsoft believes that, consistent with the position it took in its Motion to Seal Trial Exhibits that Disclose Microsoft's Trade Secrets (ECF No. 510) and Judge Koh's recent sealing order in *Apple, Inc. v. Samsung Electronics Co., Ltd.*, No. 11-CV-1846, 2012 WL 3283478 (N.D. Cal. Aug. 9, 2012), only this confidential financial information should be sealed. RIM has not demonstrated that compelling reasons exist to seal the remaining non-financial terms of the Motorola-RIM License Agreements.

RIM's request that Culbert be precluded from having access to the Motorola-RIM License Agreements should also be denied. The Court has already specifically amended the original protective order in this case to allow Culbert the precise access that RIM now requests be withdrawn. Since the Court's October 3, 2012 order entering the Amended Protective Order, Culbert has had access to expert reports and other documents referencing the terms of Motorola's licenses with third parties such as RIM. To take this right of access away from Culbert would unfairly prejudice Microsoft in its ability to litigate this case. Motorola's entire RAND royalty argument is based on the alleged comparability of its licenses with third parties such as RIM. Culbert reasonably requires access to this information in order to fulfill his responsibilities of overseeing the trial management and litigation of these issues. Further, as Culbert has been ordered by the Court to sign every Microsoft filing, he has obligations under

---

[2] ECF Nos. 434-1; 447.

MICROSOFT'S RESPONSE TO RESEARCH IN
MOTION'S MOTION TO SEAL TERMS OF
PATENT LICENSE AGREEMENTS AND TO
DENY MICROSOFT IN-HOUSE COUNSEL
ACCESS TO THE AGREEMENTS - 2

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

Fed. R. Civ. P. 11 that can be satisfied only with access to the evidence underpinning the submissions he sponsors.

Finally, the Amended Protective Order precludes Culbert from "revealing … Confidential Business Information to anyone" at Microsoft, and specifically restricts him to using "such Confidential business Information solely for the purposes of this action." Amended Protective Order, ¶4(ii)-(iii).  In light of Culbert's commitment to adhere to these terms, RIM has not shown there exists an unacceptable risk that Culbert will disclose the terms of the Motorola-RIM License Agreements in a manner that will harm RIM.

RIM also has not established good cause for effectively rescinding the Amended Protective Order and reinstating the original Protective Order.  RIM makes the same arguments the Court rejected in granting Microsoft's Motion to Amend the Protective Order.  There is no reason for the Court to now reconsider its earlier ruling.  RIM's motion to amend should be denied.[3]

## II.  FACTS AND ARGUMENT

**A.     Compelling Reasons Exist to Redact the Royalty and Pricing Terms from the RIM-Motorola Licenses, But Not to Seal Them Entirely.**

1.     <u>RIM Has Not Met Its Burden of Showing that Its Licenses Should be Sealed in Their Entirety; Redacting the Financial Terms of the Licenses Suffices to Balance the Parties' and the Public's Interests.</u>

It is well-settled in this Circuit that judicial records cannot be sealed at trial unless the moving party presents "compelling reasons" that outweigh the public policy in favor of the public's access to judicial records. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172,

---

[3] In its Motion, RIM states that its counsel conferred with counsel for Microsoft prior to filing its motion and that "[c]ounsel for Microsoft stated that Microsoft has no position on the motion." Motion at 3.  To be clear, counsel for Microsoft did not state that "Microsoft has no position on the motion" during the call.  Microsoft's stated position on the call was that it could not commit to a position without having reviewed RIM's motion, and that it would respond once it had an opportunity to consider the details of RIM's argument.  Having now had such an opportunity, Microsoft's response is set forth herein.

MICROSOFT'S RESPONSE TO RESEARCH IN
MOTION'S MOTION TO SEAL TERMS OF
PATENT LICENSE AGREEMENTS AND TO
DENY MICROSOFT IN-HOUSE COUNSEL
ACCESS TO THE AGREEMENTS - 3

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1178-79 (9th Cir. 2006); LCR 5(g)(3) (with respect to documents submitted at trial or in connection with dispositive motions, "[t]here is a strong presumption of public access to the court's files [that] may be overcome only on a compelling showing that the public's right of access is outweighed by the interests of the public and the parties in protecting the court's files from public review"). In *Apple*, 2012 WL 3283478, at *1, Apple, Samsung, and various third parties (including RIM, Microsoft, and Motorola) moved to seal certain terms of various license agreements that the parties anticipated relying on at trial.

After considering the parties' motions, the court held that "'pricing terms, royalty rates, and guaranteed minimum payment terms' plainly fall within the definitions of 'trade secrets' for purposes of sealing motions." *Id.*, at *10, *citing In re Elec. Arts*, 298 Fed. Appx. 568, 569 (9th Cir. 2008). The court went on to hold that while information related to pricing terms, royalty rates, and payments was trade secret information, "all other licensing information, however, will not be sealed." *Id.*, at *6, *10. This included information such as the names of the license parties, the license term, products covered, the scope of the license, and whether each license included a cross license. *Id.*

The approach taken by Judge Koh in *Apple*, permitting redaction only of the financial terms of the licenses that the parties' may introduce or rely on at trial, is also appropriate here. RIM has not established how any of the non-financial terms of the Motorola-RIM License Agreements constitute trade secret information that must be sealed, or how RIM would be harmed if these other provisions were not sealed.[4] For these reasons, RIM's motion to seal should be granted only with respect to the financial terms of the Motorola-RIM License Agreements and denied in all other respects.

---

[4] To the extent that RIM believes that specific additional terms or provisions of the Motorola-RIM License Agreements should be maintained under seal, RIM should provide proposed redactions for the Court and parties to consider.

MICROSOFT'S RESPONSE TO RESEARCH IN
MOTION'S MOTION TO SEAL TERMS OF
PATENT LICENSE AGREEMENTS AND TO
DENY MICROSOFT IN-HOUSE COUNSEL
ACCESS TO THE AGREEMENTS - 4

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

2.      There Is No Basis to Close the Courtroom.

RIM also seeks an order from the Court closing the courtroom when the terms of the RIM-Motorola License Agreements are discussed. However, there is no need to go to these lengths. RIM has not established that "compelling reasons" exist that would justify closing the courtroom. *See Kamakana*, 447 F.3d at 1179 (explaining the heightened "compelling reasons" standard for withholding access to materials used at trial). Further, before closing the courtroom, the Court must determine that no reasonable alternatives to closure exist that would sufficiently protect RIM's interests. *See Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1072 (3rd Cir. 1984) (court should weigh possible alternatives before closing courtroom).

While Microsoft does not contest that the financial terms of the Motorola-RIM license should be maintained in confidence, this alone does not necessitate closing the courtroom when other reasonable alternative protective measures are available. Both parties understand the sensitivity of the financial terms of the parties' confidential third-party licenses, as both parties have sought to seal those portions of the license agreements. Neither party intends to disclose the financial terms of those licenses at trial. The most efficient way to handle this confidential licensing information at trial is for the Court to instruct the attorneys, witnesses, and experts that they are not to audibly disclose any royalty or pricing terms at trial. Instead, the witnesses and attorneys should be instructed to refer to the financial terms only by reference to exhibits on which the terms appear – exhibits which will not be visible to the public.

Closing the courtroom is also impractical given the amount of testimony that will be devoted to discussing Motorola's licenses with third parties (including RIM). Multiple witnesses will be examined regarding the comparability (or noncomparability) of the licenses. Repeatedly opening and closing the courtroom during these examinations is likely to be distracting and time-consuming. It would be much more efficient for the Court and counsel to

MICROSOFT'S RESPONSE TO RESEARCH IN
MOTION'S MOTION TO SEAL TERMS OF
PATENT LICENSE AGREEMENTS AND TO
DENY MICROSOFT IN-HOUSE COUNSEL
ACCESS TO THE AGREEMENTS - 5

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

instruct witnesses not to explicitly disclose the financial terms of the licenses.  RIM's motion to close the courtroom should be denied.

### B. The Court Should Not Rescind the Amended Protective Order and Reinstate the Original Protective Order.

1. Factual Background.

Microsoft and Motorola submitted a Stipulated Protective Order to the Court on April 19, 2011, which the Court approved by order dated July 21, 2011.[5]

By order dated January 24, 2012, the Court required that the parties each designate one in-house attorney to sign every substantive filing by the parties.  Microsoft designated Culbert, and Motorola designated one of its in-house attorneys, as the signatories.  By signing pleadings and motion papers, Culbert and his counterpart at Motorola assumed the responsibilities set forth in Fed. R. Civ. P. 11 regarding the evidentiary support for contentions made in the parties' respective submissions.  Recognizing that both parties' designees required access to the relevant evidence underpinning each submission that they sign, and because Microsoft's in-house counsel should be entitled to the same right of access as Motorola's in-house counsel with respect to key evidence in this case, Microsoft moved on August 30, 2012 for leave to amend the Stipulated Protective Order in place in this action.  Motorola opposed Microsoft's motion, arguing that good cause did not exist for the amendment.  The Court rejected Motorola's arguments, and granted Microsoft's Motion to Amend on October 03, 2012.[6]

---

[5] ECF Nos. 64; 72.

[6] ECF No. 447.

MICROSOFT'S RESPONSE TO RESEARCH IN MOTION'S MOTION TO SEAL TERMS OF PATENT LICENSE AGREEMENTS AND TO DENY MICROSOFT IN-HOUSE COUNSEL ACCESS TO THE AGREEMENTS - 6

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

2. <u>RIM Has Not Established Good Cause for Rescinding the New Provisions of the Amended Protective Order or Otherwise Shown that Culbert Should Be Prohibited from Having Access to the Terms of the Motorola-RIM License Agreements.</u>

In its Motion, RIM makes the same arguments previously made by Motorola and rejected by the Court. Having raised neither new nor compelling arguments, RIM has failed to establish good cause for the Court to reconsider its earlier ruling.

In *ODS Tech., L.P. v. Magna Entertainment Corp.*, 583 F. Supp. 2d 1141 (N.D. Cal. 2008), the court found that:

> In granting a protective order that excludes counsel or others from access to confidential information, the sole question is whether there is an unacceptable risk of or opportunity for the s disclosure of confidential information. Such risk exists when counsel are involved in "competitive decisionmaking," which is "shorthand for counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor. "Thus, the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained, must govern any concern for inadvertent or accidental disclosure [of confidential information.]"

*Id.*, at 1144 (internal citations omitted). *See also Carpenter Technology Corp. v. Armco, Inc.*, 132 F.R.D. 24, 27-28 (E.D. Pa. 1990) (allowing in-house counsel without competitive decision-making responsibilities access to defendant's confidential information); *Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*, 2011 WL 2516224, *2 (E.D.Cal. June 22, 2011) (citing cases).

The Court already determined, in granting Microsoft's Motion to Amend the Protective Order, that Culbert is not involved in "competitive decisionmaking." *See* October 3, 2012 Order (ECF No. 447); Reply re Motion to Amend Protective Order (ECF No. 437).[7] As

---

[7] For this reason, the cases RIM cites in support of its motion to amend the protective order are inapposite. The court's ruling in each turned on a detailed, factual determination that the in-house counsel at issue had a "competitive decisionmaking" role. Here, as the Court has previously found in amending the protective order, Culbert is not in such a role at Microsoft. RIM has not offered any evidence to the contrary. *See ActiveVideo Networks, Inc. v. Verizon Communs., Inc.*, 274 F.R.D. 576, 582-83 (E.D. Va. 2010) (conclusory allegations of involvement in licensing negotiations or settlement of litigation is not enough to establish "competitive

MICROSOFT'S RESPONSE TO RESEARCH IN
MOTION'S MOTION TO SEAL TERMS OF
PATENT LICENSE AGREEMENTS AND TO
DENY MICROSOFT IN-HOUSE COUNSEL
ACCESS TO THE AGREEMENTS - 7

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

Microsoft explained in connection with its motion, and as Culbert confirms in his declaration accompanying this response, Culbert does not serve any executive or non-legal functions at Microsoft relating to product design, development, pricing, marketing or sales. Culbert Decl., ¶¶ 2; 6.[8] He does not engage in patent prosecution as part of his regular employment obligations. *Id.*, ¶ 7. He is not a member of Microsoft's licensing department; any licensing activity in which he engages occurs only in connection with the settlement of active litigation. *Id.*, ¶ 2. Microsoft is a large company with tens of thousands of employees and hundreds of in-house counsel. In this environment, disclosure of Motorola's licensing agreements and related materials to in-house counsel like Culbert – whose responsibilities relate primarily to oversight of numerous ongoing patent litigation activities (which includes advising management in connection with risk exposure and possible settlement opportunities) and provision of legal advice relating to IP policy implementation – does not create an undue risk of competitive harm.[9]

The fact that Culbert has signed the Protective Order subscription in this matter also minimizes any possible risk of competitive harm. Culbert Decl., Ex. A. By signing the Protective Order, Culbert agreed:

> that any Confidential Business Information and any copies, excerpts, or summaries thereof, as well as any knowledge or information derived from any of the aforementioned items, may be used solely for purposes of this litigation and may not be used for any other purpose, including without limitation, and business, commercial or academic purpose.

---

decisionmaking;" the moving party must set forth facts demonstrating how involvement in patent licensing activity or settlement negotiations amount to competitive decision-making).

[8] Declaration of T. Andrew Culbert in Support of Microsoft's Response To Research In Motion's Motion To Seal Terms Of Patent License Agreements And To Deny Microsoft In-House Counsel Access To The Agreements ("Culbert Decl.").

[9] The Court granted Microsoft's Motion on October 3, 2012. Since that time, and in accordance with the Amended Protective Order, Culbert has been provided unredacted copies of the parties' expert reports and other documents that refer to or describe the terms of Motorola's licenses with third parties, including RIM.

MICROSOFT'S RESPONSE TO RESEARCH IN
MOTION'S MOTION TO SEAL TERMS OF
PATENT LICENSE AGREEMENTS AND TO
DENY MICROSOFT IN-HOUSE COUNSEL
ACCESS TO THE AGREEMENTS - 8

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

Contrary to RIM's unsupported allegations (Motion at 9-10), the Protective Order specifically restricts Culbert from using information learned in connection with reviewing materials designated as containing confidential business information in connection with any purpose other than this litigation. There is no reason to doubt that Culbert – an attorney – will comply with the restrictions on use and disclosure already imposed by an order of this Court.

Further, Microsoft's ability to try this case will be prejudiced if Culbert is not permitted access to the terms of Motorola's third-party licenses such as the Motorola-RIM License Agreements. The primary issue to be determined at the November trial is the appropriate RAND royalty for a license to Motorola's 802.11 and H.264 standard essential patents. Motorola's proposed RAND royalty is based, in large part, on licenses Motorola has entered into with third parties (such as RIM) that Motorola argues are "comparable." It would be unfairly prejudicial to Microsoft for Motorola to put on its case relying on purportedly "comparable" licenses, if Culbert were prohibited from seeing Motorola's supporting evidence of comparability.

In an analogous situation, the court in *Barnes and Noble v. LSI*, No. 11-cv-2709, 2012 U.S. Dist. LEXIS 23103 (N.D. Cal. Feb. 23, 2012), found that in-house counsel for Barnes & Noble could not be precluded from viewing LSI's licensing agreements because "both parties need to have access to the relevant financial data for an accurate and efficient outcome to be reached." *Id.*, at *17 n.7. Important to the court's decision was the fact that "the details of [Defendants'] licensing practices are essential to determining the scope of potential damages." *Id.*, at *16-17. "It is with these license agreements that a reasonable royalty rate, and hence Defendants' potential damages, will be determined." *Id.*, at *17.[10] Motorola, too, intends to

---

[10] The court also noted that "several courts have recognized that disclosure of sensitive financial information to an opponent's in-house counsel may be necessary for evaluating settlement" and that "given that Defendants seek damages against B&N for patent infringement, the sensitive financial information that will be needed for settlement purposes necessarily includes Defendants' license agreements." *Id.*, at *17-18.

MICROSOFT'S RESPONSE TO RESEARCH IN
MOTION'S MOTION TO SEAL TERMS OF
PATENT LICENSE AGREEMENTS AND TO
DENY MICROSOFT IN-HOUSE COUNSEL
ACCESS TO THE AGREEMENTS - 9

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

rely on its third party licenses with companies such as RIM as the basis for determining a RAND royalty. While Microsoft disagrees that these licenses are comparable, it is imperative that Culbert have access to this evidence in order to perform his responsibilities as in-house litigation counsel.[11] Courts regularly recognize that the need to understand the extent of potential damages at issue in a case justifies the disclosure of confidential business information to in-house counsel. *See*, *e.g.*, *Gerawan*, 2011 WL 2516224, at *2.

Finally, as Microsoft articulated in its Motion to Amend, Culbert – as an attorney who has been required to sign all of Microsoft's pleadings, motions, and other court submissions – is obligated to comply with the requirements of Fed. R. Civ. P. 11. In order to do so, Culbert must have access to all evidence supporting (or contradicting) the submissions to the Court that he has signed.[12] Motorola's Motion to Amend the Protective Order should be denied.

3. <u>RIM Has Not Met Its Burden of Establishing Good Cause to Amend the Protective Order to Preclude Culbert from Negotiating with RIM in the Future.</u>

RIM argues in the alternative that this Court should amend the protective order to preclude Culbert from engaging in future negotiations with RIM. RIM has not supported this request with any actual evidence that Culbert regularly participates in licensing negotiations or provided any reason to suspect that Culbert would violate the Amended Protective Order already in place in this action by using knowledge of the terms of the RIM license for an improper purpose. Culbert has confirmed in his declaration that he does not engage in

---

[11] If the Court grants RIM's motion to amend the protective order to preclude Culbert from having access to the Protective Order, Motorola should be precluded from relying on the RIM-Motorola License Agreements to determine the appropriate RAND royalty at trial. It would unfairly prejudice Microsoft if Motorola were able to rely on undisclosed evidence that Motorola claims is highly relevant to the issue of comparability, that Microsoft's attorneys were precluded from reviewing. *See Barnes & Noble*, 2012 U.S. Dist. LEXIS 23103, at *17 n.7.

[12] Under Rule 11, by signing pleadings, motions, and other court submissions, attorneys make certain representations, including that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Culbert reasonably cannot make such a representation if he is not allowed to have access to the underlying evidence in the case.

MICROSOFT'S RESPONSE TO RESEARCH IN
MOTION'S MOTION TO SEAL TERMS OF
PATENT LICENSE AGREEMENTS AND TO
DENY MICROSOFT IN-HOUSE COUNSEL
ACCESS TO THE AGREEMENTS - 10

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

competitive decision-making.  *ODS*, 583 F. Supp. 2d at 1145; *see also Volvo Penta of the Americas, Inc. v. Brunswick Corp.*, 187 F.R.D. 240, 245 (E.D. Va. 1999) ("the Court cannot overlook the unrebutted and sworn assertions that [in-house counsel] has no role whatsoever in [the company's] competitive decisionmaking").  RIM has not met its burden for amending the protective order.

RIM's argument is based on pure speculation.  The declaration of Michael Crowley that RIM submitted in support of its motion merely speculates in conclusory fashion that Culbert could potentially participate in licensing negotiations involving RIM and could potentially use his knowledge of the Motorola-RIM License Agreements to RIM's detriment.  But RIM has set forth no facts that would indicate how knowledge of the terms of a cross-license between Motorola and RIM covering certain specific patents and technologies would be relevant to future hypothetical license negotiations between Microsoft and RIM over entirely different patents, covering entirely different products and technologies.  RIM's argument also completely ignores Culbert's sworn declaration and the express language of the Amended Protective Order, which provides that Culbert cannot "reveal such Confidential Business Information" to anyone at Microsoft, and that he will "utilize such Confidential Business Information solely for purposes of this action."  Amended Protective Order at ¶4(ii)-(iii).[13]

In the absence of any such evidence that there is an "unacceptably" high risk that Culbert is likely to disclose confidential information in violation of the existing protective order, RIM cannot establish good cause for further amendment of the Amended Protective

---

[13] If the Court were inclined to grant RIM's motion to amend the Amended Protective Order to bar Culbert from participating in negotiations with RIM, such an amendment should be narrowly tailored in both time and scope to include only those negotiations that involve the specific patents and products covered by the Motorola-RIM License Agreements.  Any such bar should also exclude any settlement negotiations that might arise between Microsoft and RIM in connection with some future litigation between the parties.  If the Motorola-RIM License Agreements are relevant to that future hypothetical litigation, Culbert's access to the Motorola-RIM License Agreements should be determined at that time.  An order by this Court precluding Culbert from participating in any such negotiations would be premature and unwarranted.

MICROSOFT'S RESPONSE TO RESEARCH IN
MOTION'S MOTION TO SEAL TERMS OF
PATENT LICENSE AGREEMENTS AND TO
DENY MICROSOFT IN-HOUSE COUNSEL
ACCESS TO THE AGREEMENTS - 11

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

Order.  *See Nazomi v. ARM Holdings PLC*, No. 02-02521, 2002 U.S. Dist. LEXIS 21400, *10-11 (N.D. Cal. Oct. 11, 2002) (refusing to impose on counsel a "license negotiation bar" unless the party seeking such a bar "makes a showing that the risk of inadvertent disclosure from attorney to client is so great that an access bar must be imposed"); *see also ODS Tech.*, 583 F. Supp. 2d at 1144-45 (burden is on moving party to establish that "unacceptable risk of or opportunity for the inadvertent disclosure of confidential information" exists).  Because no such evidence exists, RIM's motion should be denied.

### III. CONCLUSION

For the reasons set forth herein, Microsoft requests that the Court enter an order:

1. Denying RIM's Motion to Seal the Motorola-RIM License Agreements except as to the pricing, royalty, or other financial terms contained therein; and

2. Denying RIM's Motion to Amend the Amended Protective Order currently in place in this action.

DATED this 7th day of November, 2012.

CALFO HARRIGAN LEYH & EAKES LLP


By  s/ Arthur W. Harrigan, Jr.
    Arthur W. Harrigan, Jr., WSBA #1751
    Christopher Wion, WSBA #33207
    Shane P. Cramer, WSBA #35099

By  s/ T. Andrew Culbert
    T. Andrew Culbert
    David E. Killough
    MICROSOFT CORPORATION
    1 Microsoft Way
    Redmond, WA  98052
    Phone:  425-882-8080
    Fax:  425-869-1327

MICROSOFT'S RESPONSE TO RESEARCH IN MOTION'S MOTION TO SEAL TERMS OF PATENT LICENSE AGREEMENTS AND TO DENY MICROSOFT IN-HOUSE COUNSEL ACCESS TO THE AGREEMENTS - 12

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

| | |
|---|---|
| 1 | David T. Pritikin |
| 2 | Richard A. Cederoth |
| | Constantine L. Trela, Jr. |
| 3 | William H. Baumgartner, Jr. |
| | Ellen S. Robbins |
| 4 | Douglas I. Lewis |
| | David C. Giardina |
| 5 | John W. McBride |
| | David Greenfield |
| 6 | |
| 7 | SIDLEY AUSTIN LLP |
| | One South Dearborn |
| 8 | Chicago, IL  60603 |
| | Phone:  312-853-7000 |
| 9 | Fax:  312-853-7036 |
| 10 | Carter G. Phillips |
| | Brian R. Nester |
| 11 | |
| 12 | SIDLEY AUSTIN LLP |
| | 1501 K Street NW |
| 13 | Washington, DC  20005 |
| | Telephone:  202-736-8000 |
| 14 | Fax:  202-736-8711 |
| 15 | Counsel for Microsoft Corp. |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

MICROSOFT'S RESPONSE TO RESEARCH IN
MOTION'S MOTION TO SEAL TERMS OF
PATENT LICENSE AGREEMENTS AND TO
DENY MICROSOFT IN-HOUSE COUNSEL
ACCESS TO THE AGREEMENTS - 13

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

# CERTIFICATE OF SERVICE

I, Linda Bledsoe, swear under penalty of perjury under the laws of the State of Washington to the following:

1. I am over the age of 21 and not a party to this action.

2. On the 7th day of November, 2012, I caused the preceding document to be served on counsel of record in the following manner:

**Attorneys for Motorola Solutions, Inc., and Motorola Mobility, Inc.:**

| | | |
|---|---|---|
| Ralph Palumbo, WSBA #04751 | | |
| Philip S. McCune, WSBA #21081 | _____ | Messenger |
| Lynn M. Engel, WSBA #21934 | _____ | US Mail |
| Summit Law Group | _____ | Facsimile |
| 315 Fifth Ave. South, Suite 1000 | __X__ | ECF |
| Seattle, WA 98104-2682 | | |
| Telephone: 206-676-7000 | | |
| Email: Summit1823@summitlaw.com | | |

| | | |
|---|---|---|
| Steven Pepe (*pro hac vice*) | _____ | Messenger |
| Jesse J. Jenner (*pro hac vice*) | _____ | US Mail |
| Ropes & Gray LLP | _____ | Facsimile |
| 1211 Avenue of the Americas | __X__ | ECF |
| New York, NY 10036-8704 | | |
| Telephone: (212) 596-9046 | | |
| Email: steven.pepe@ropesgray.com | | |
| Email: jesse.jenner@ropesgray.com | | |

| | | |
|---|---|---|
| Norman H. Beamer (*pro hac vice*) | _____ | Messenger |
| Ropes & Gray LLP | _____ | US Mail |
| 1900 University Avenue, 6th Floor | _____ | Facsimile |
| East Palo Alto, CA 94303-2284 | __X__ | ECF |
| Telephone: (650) 617-4030 | | |
| Email: norman.beamer@ropesgray.com | | |

MICROSOFT'S RESPONSE TO RESEARCH IN MOTION'S MOTION TO SEAL TERMS OF PATENT LICENSE AGREEMENTS AND TO DENY MICROSOFT IN-HOUSE COUNSEL ACCESS TO THE AGREEMENTS - 14

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

| | |
|---|---|
| Paul M. Schoenhard (*pro hac vice*) | _____ Messenger |
| Ropes & Gray LLP | _____ US Mail |
| One Metro Center | _____ Facsimile |
| 700 12th Street NW, Suite 900 | __X__ ECF |
| Washington, DC  20005-3948 | |
| Telephone:  (202) 508-4693 | |
| Email: Paul.schoenhard@ropesgray.com | |

DATED this 7th day of November, 2012.

   s/ Linda Bledsoe
LINDA BLEDSOE

MICROSOFT'S RESPONSE TO RESEARCH IN MOTION'S MOTION TO SEAL TERMS OF PATENT LICENSE AGREEMENTS AND TO DENY MICROSOFT IN-HOUSE COUNSEL ACCESS TO THE AGREEMENTS - 15

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717