The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation,<br><br>                              Plaintiff,<br><br>            v.<br><br>MOTOROLA, INC., MOTOROLA MOBILITY LLC, and GENERAL INSTRUMENT CORPORATION.,<br><br>                              Defendants. | CASE NO. C10-1823-JLR<br><br>**DEFENDANTS' MOTION CONCERNING USE OF CERTAIN CONFIDENTIAL INFORMATION AT TRIAL**<br><br>**NOTED ON MOTION CALENDAR:**<br>**November 20, 2012** |

DEFENDANTS' MOTION CONCERNING USE OF CERTAIN
CONFIDENTIAL INFORMATION AT TRIAL
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## I. INTRODUCTION

Pursuant to the Court's request (*see* Nov. 16, 2012 Trial Tr. at 8), Motorola respectfully submits this further briefing and motion regarding use of certain confidential information at trial. Motorola requests that the Court seal the courtroom for testimony about certain highly confidential third-party licenses and rule that any confidential information relating to those licenses will be redacted from the public opinion issued by the Court. In the alternative, Motorola asks that the Court certify its Order for immediate interlocutory appeal to the Ninth Circuit, while preserving for Motorola the option to withdraw its evidence relating to third-party licenses if Motorola is unable to obtain relief from the Ninth Circuit.

As the Court is aware, on October 29, 2012, Motorola filed a Motion (Dkt. No. 495) asking in part that the Court seal, as it has previously done, certain highly confidential licenses between Motorola and various third parties under the "compelling reasons" standard (*id.* at 8-11), and exclude unauthorized persons from the courtroom during testimony regarding the terms of those licenses (*id*. at 16-17). Microsoft filed a Consolidated Response (Dkt. No. 533), and Motorola filed a Reply pointing out that numerous parties, *including Microsoft*, have explained the "compelling reasons" for sealing these licenses (Dkt. No. 551 at 2-4). On November 12, the day before trial, the Court denied Motorola's request that the courtroom be closed for evidence relating to the licenses and ruled that the licenses would be sealed only *provisionally*, with all sealed information becoming public if disclosed in court or relied upon in the Court's judgment following trial. (*See* Dkt. No. 567 at 7-8, 11-12.)

Once trial commenced, Motorola sought clarification of the Court's Order, and informed the Court that at least one third-party licensee had submitted a letter to Motorola stating that that party would consider use of its confidential information under the terms of the Court's November 12 Order to be a breach of the licensing agreement's confidentiality provision. (Nov. 13, 2012 Trial Tr. at 13-14.) Motorola raised the possibility of using a code sheet to protect the information. (*Id*. at 14.) As trial progressed, Motorola continued to address concerns raised by

DEFENDANTS' MOTION CONCERNING USE OF CERTAIN
CONFIDENTIAL INFORMATION AT TRIAL - 1
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1   third parties concerning their confidential information and worked diligently to find a workable
2   solution to this problem.  Despite its efforts, Motorola was unable to find such a workable
3   solution.  On November 16, Motorola submitted a letter to the Court explaining that third parties
4   were continuing to object vociferously, and again raising the prospect of using some form of
5   coding system or, alternatively, sealing the courtroom during certain portions of the trial.

6   That morning, the Court discussed the letter and noted that Motorola's licenses "are the
7   central issue in this litigation, and [Motorola is] properly relying on them as some of the most
8   important evidence that you have." (Nov. 16, 2012 Trial Tr. at 5.)  The Court explained that it
9   would continue to use the procedure it had previously outlined, "in terms of it not being disclosed
10  on the public screen, and trusting the lawyers to not disclose the names while they examine the
11  witnesses, but the court having access to the unredacted documents and the parties having access
12  to it." (*Id.* at 6.)  The Court stated that it did not think a closed courtroom was necessary if the
13  parties employed the approach outlined by the Court. (*Id*. at 10.)  With respect to the disclosure of
14  confidential information in the Court's opinion, the Court recognized that Motorola was on "the
15  horns of [a] dilemma." (*Id.* at 12).  The Court invited Motorola to make a filing to frame the
16  question cleanly in a ruling "that [Motorola] can use to go up to the circuit." (*Id.* at 8.)

17  When Microsoft thereafter addressed the Court's proposed plan for avoiding disclosure of
18  confidential information in open court, Microsoft stated that it could not cross-examine witnesses
19  without discussing facts that would identify particular licenses under that structure.  Microsoft
20  indicated its intent to inquire into details that would potentially reveal the agreements' confidential
21  financial terms. (*Id*. at 10-11.)  Following Microsoft's statement, the Court explained that that was
22  the subject that the Court would take up Monday following submission of briefing. (*Id*. at 11.)

23  Motorola appreciates the Court's attempts to accommodate both the public's common-law
24  interest in open judicial proceedings and Motorola's right to present evidence central to
25  Motorola's ability to defend itself against Microsoft's claims.  Motorola also fully recognizes the
26  challenges faced by the Court in addressing this difficult issue.

DEFENDANTS' MOTION CONCERNING USE OF CERTAIN
CONFIDENTIAL INFORMATION AT TRIAL - 2
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## II. SEALING THE COURTROOM IS THE ONLY METHOD THAT WOULD ALLOW MOTOROLA TO INTRODUCE CRITICAL EVIDENCE

### A. The Positions of Microsoft and Third-Party Licensees Make Use of a Coding System in Open Court Impossible

Motorola believed that an approach such as that discussed with the Court on the morning of November 16, using a system to identify the licensing agreements anonymously and discuss their terms generally without disclosing specific terms, (Nov. 16, 2012 Trial Tr. at 6), would be sufficient to protect the confidentiality of the agreements. Two subsequent developments make it clear that the proposed solution is no longer viable.

First, Microsoft has indicated that its cross-examination under the proposed structure will likely not shield the identity of licensees. (*Id.* at 10-11.) It is thus likely that Microsoft's cross-examination of Motorola's witnesses in open court would result in disclosure of information that Motorola may be contractually bound to keep confidential. In addition, one third party has declined to give Motorola consent to use its agreement under the proposed procedure "because the risk of disclosure under such a procedure is high" and another "would seek to hold Motorola accountable" if its confidential information is disclosed under the proposed procedure. As the Court has acknowledged, even under its procedure, inadvertent disclosure of confidential information is possible. (*Id.* at 9.) The risk of such disclosure is heightened by the fact that Microsoft has stated that it will actively seek to develop a "host of facts about each one of" the licenses on cross-examination. (*Id*. at 11.) In such circumstances, confidentiality can only be guaranteed if testimony regarding the agreements takes place in a closed courtroom or if Motorola withdraws the agreements from evidence altogether.

### B. The Public's Interest in Accessing Court Documents is Outweighed by Motorola's Due Process Interest in Putting on a Defense

Between these choices, only the option of a closed courtroom would be consistent with *defendant* Motorola's right to put on a *defense*. Conducting that limited part of the witness testimony in a closed courtroom is consistent with Ninth Circuit precedent and the requirements of

DEFENDANTS' MOTION CONCERNING USE OF CERTAIN
CONFIDENTIAL INFORMATION AT TRIAL - 3
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

due process and, in fact, has been utilized by this Court *in this trial* for *plaintiff* Microsoft's confidential information.

Because "the right to inspect and copy judicial records is not absolute," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978), it can be overcome by "compelling reasons," such as protecting against the "release [of] trade secrets," *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006). The Court may seal judicial documents from the public to prevent them from being used "'as sources of business information that might harm a litigant's competitive standing,'" *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569-70 (9th Cir. 2008). Indeed, the Ninth Circuit has specifically found that "pricing terms, royalty rates, and guaranteed minimum payment terms" in licensing agreements is "information that plainly falls within the definition of 'trade secrets.'" *Id.* And many courts in this Circuit have sealed confidential information relating to internal finances, product specifications, and licensing information under the "compelling reasons" standard. (*See* Dkt. No. 495 at 4-5 (citing cases).)

Motorola (and several third parties) have set forth in detail the confidential nature of the third-party licenses at issue. (Dkt. No. 496 at 2-4). "Competitors and potential counterparties to licensing, settlement and acquisition agreements would gain an unfair insight into Motorola's business strategies, licensing strategies, negotiation tactics, and cost/benefit analyses," which would allow them to "calibrate their negotiation strategies with Motorola, thus creating a negotiating imbalance and unfair advantage." (*Id*. at 3.) Likewise disclosure of "Motorola's valuation of other parties' intellectual property" would allow competitors "to increase their leverage in future negotiations or stall or sidetrack such negotiations." (*Id.*) Indeed, as this Court is aware, the "smart phone" wars are raging both in the courts and in the negotiating rooms. The disclosure of a licensee's confidential information in this proceeding may create an imbalance in negotiating leverage in discussions that such a licensee may be having with third parties. In its Sealing Order, the Court agreed that the third party licensing agreements constitute trade secrets and on that basis it "provisionally seal[ed] . . . licensing agreements." (Dkt. No. 576 at 8.)

DEFENDANTS' MOTION CONCERNING USE OF CERTAIN
CONFIDENTIAL INFORMATION AT TRIAL - 4
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  Closing the courtroom during testimony regarding these confidential licensing agreements would
2  likewise be entirely consistent with Ninth Circuit precedent. *Kamakana*, 447 F.3d at 1179; *see*
3  *also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 600 n.5 (1980) (Stewart, J.,
4  concurring) ("The preservation of trade secrets, for example, might justify the exclusion of the
5  public from at least some segments of a civil trial," including closing courtroom); *Encyclopedia*
6  *Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 612 (S.D.N.Y. 1998) ("Potential
7  damage from release of trade secrets is a legitimate basis for sealing documents and restricting
8  public access during trial" by closing the courtroom).

9  In the particular circumstances of this case, closing the courtroom in order to allow
10 presentation of third-party trade secrets is essential to Motorola's due process right to put on a
11 complete defense. Because of the potentially severe consequences threatened by licensees if the
12 courtroom is not sealed during testimony about the licenses, Motorola may be forced to forgo
13 putting this crucial evidence on during the trial. This would prevent Motorola from presenting
14 evidence of licensing agreements with other parties for analogous products which, as this Court
15 has recognized, is critical to Motorola's defense. (Nov. 16, 2012 Trial Tr. at 5.) Courts have
16 recognized that, in both the context of criminal litigation and administrative procedures, due
17 process requires that defendants be afforded a "meaningful opportunity to present a complete
18 defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984); *see Taylor v. Illinois*, 484 U.S. 400,
19 409 (1988) (holding that the Sixth Amendment protects "the right to present the defendant's
20 version of the facts"); *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976) (Administrative procedures
21 must be set up so as "to insure that [one is] given a meaningful opportunity to present [one's]
22 case"); *Harlan Bell Coal Co. v. Lemar*, 904 F.2d 1042, 1049 (6th Cir. 1990) (noting that plaintiff
23 "must be granted" the right to "present evidence . . . necessary to the full presentation of [its]
24 defense"). Due process requires no less in the civil court context—the opportunity for Motorola to
25 present its best evidence for its defense. Though important, the public's right to access court
26 documents "is not of constitutional dimension, is not absolute, and is not entitled to the same level

DEFENDANTS' MOTION CONCERNING USE OF CERTAIN
CONFIDENTIAL INFORMATION AT TRIAL - 5
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

of protection afforded constitutional rights." *Valley Broadcasting Co. v. U.S. Dist. Court for Dist. of Nev.*, 798 F.2d 1289, 1293 (9th Cir. 1986).  "Where there is a clash between the common law right of access and a defendant's constitutional right to a fair trial, a court may deny access." *Id.* (quoting *In re Video-Indiana, Inc.*, 672 F.2d 1289, 1294 (7th Cir.1982)).  To protect Motorola's due process right to put on a full and fair defense, this Court should close the courtroom when Motorola's confidential licensing agreements are discussed and seal portions of its opinion.

Protecting Motorola's ability to rely on the confidential information in this case is particularly appropriate because the trade secrets at issue are those of third parties, not simply Motorola.  Where third-party confidentiality rights not waivable by the defendant are at issue, courts have recognized the need to take extra steps to accommodate the competing concerns of due process and third-party confidentiality.  *See, e.g., United States v. W.R. Grace*, 439 F. Supp. 2d 1125 (D. Mont. 2006) (severing trial so that one defendant could rely on communications to which another defendant asserted attorney-client privilege, and noting that steps would be taken to protect the communications from disclosure beyond the jury if admitted at trial).  During the November 16 argument, the Court suggested that this is a dilemma of Motorola's own making because it chose to enter into the confidentiality agreements.  But the agreements in question were negotiated before the Court's Order and before Motorola (or the third parties) ever considered there might be litigation to determine a RAND range at which the provisions of these agreements would be the central evidence.  Motorola should not be precluded in this first-of-its-kind litigation from making a defense simply because it failed to foresee such an unprecedented lawsuit.

      **C.**    **A Process that Fails to Ensure Confidentiality in this First-of-its-Kind Suit Would Undermine the Purposes of the Standards Setting Agreements**

Because of the potentially precedent-setting nature of this trial, resolution of this issue will have serious implications for the negotiation of future RAND agreements, and undermine the fundamental purpose of standard-setting organizations—to provide incentives for companies to offer the best technologies to establish standards.

First, since evidence of RAND agreements reached with third parties is central to

DEFENDANTS' MOTION CONCERNING USE OF CERTAIN
CONFIDENTIAL INFORMATION AT TRIAL - 6
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

determining a RAND range, (*see* Nov. 16, 2012 Trial Tr. at 5),[1] whether such confidential third-party agreements are publicly disclosed as a result of RAND disputes will have repercussions on future negotiations of such license agreements. If parties believe that their negotiated licenses will be subject to disclosure as a result of litigation that may not even involve them directly, they may be chilled from entering into such agreements in the first place, since the threat of disclosure of critical trade secrets would not be worth the cost of entering into some agreements to begin with.[2] The threat of disclosure could be substantial.

Another problem arises because would-be implementers would be disincentivized from negotiating licenses, and might instead turn to courts to set RAND rates, knowing that the licensor's best evidence may be barred by third-party confidentiality rights. This tactical upper-hand to would-be implementers would invite litigation rather than privately-negotiated RAND terms. More troubling, however, is that some companies might choose not to provide their technologies in the standard-setting process in the first place, because they will be both forced into repeated litigation to determine RAND rates and because the result of that litigation will be rates lower than they would otherwise be able to establish if they could present their best evidence.

Finally, if confidentiality of licensing agreements cannot be guaranteed, patentees will be *unable* to introduce crucial evidence of bilateral negotiated third-party licenses and courts will be deprived of the best evidence that would enable them to set an appropriate royalty rate. Many patentees, like Motorola, will not be able to risk potentially breaching their confidentiality agreements with third parties, and may instead choose not to put on the best evidence. Not only would this hurt individual patentees—in *all* RAND cases it would also result in a skewed and incomplete court process that deprived of critical evidence necessary to reach an informed result.

---

[1] This problem may also arise in non-RAND patent infringement litigation. In establishing a reasonable royalty, courts will look to, among other things, "[t]he royalties received by the patentee for the licensing of the patent in suit" and "rates paid by the license for the use of other patents comparable to the patent in suit." *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

[2] For example, a would-be licensor may forgo entering licensing its technology for low rates, since if such a trade secret were made public, it would be immensely more difficult to negotiate higher rates with other parties.

DEFENDANTS' MOTION CONCERNING USE OF CERTAIN
CONFIDENTIAL INFORMATION AT TRIAL - 7
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

### III. TO AVOID DISCLOSURE OF CONFIDENTIAL TRADE SECRETS, THE COURT SHOULD REDACT SUCH INFORMATION FROM ITS PUBLIC OPINION

Motorola respectfully requests that, in light of this briefing and the additional consideration of this issue facilitated by the progression of this first-of-its-kind trial, the Court should reconsider its ruling that "its final order, and rationale contained therein, must be publicly available," including "any license agreement relied upon by the court in determining a RAND royalty rate and range." (Dkt. No. 576 at 8.)  The same "compelling reasons" standard that governs the sealing of documents filed in support of a dispositive motions, *see Kamakana*, 447 F.3d at 1178-79; Section II.A.2, *supra*, applies as well to the Court's own opinion disposing of the case.  Where courts are presented with confidential trade secret information at trial, they must preserve the confidentiality of that information by either writing the opinion in a general way that avoids disclosing the secret information or issue an opinion that is sealed in part so not to disclose the confidential information.  *See Pepsico, Inc. v. Redmond*, 46 F.3d 29, 31 (7th Cir. 1995) ("Legitimate trade secrets should be protected from disclosure. . . . [T]he traditional way for judges to accommodate the legitimate competing interests is to keep the secrets themselves under seal, referring to them only indirectly in the opinion.").  Numerous courts, including the Ninth Circuit, have issued redacted versions of their opinions, or issued a public opinion that avoided discussion of the trade secret information together with a sealed appendix that explored the confidential information in greater detail.  In *In re Copley Press, Inc.*, 518 F.3d 1022 (9th Cir. 2008), the Ninth Circuit wrote its opinion regarding confidential information without revealing those confidences, and then attached a "sealed addendum" to its opinion, available only to the government, other judges, and the Supreme Court, addressing certain sealed documents more specifically.  *Id.* at 1029.  This practice is commonplace when courts issue opinions discussing trade secrets and other confidential information.  *See, e.g.*, *Henry Hope X-Ray Prods., Inc. v. Marron Carrel, Inc.*, 674 F.2d 1336, 1343 (9th Cir. 1982) ("[T]he district court set out the acts prohibited in a sealed appendix which was to be transmitted only to the parties to ensure that [plaintiff's] trade secrets were not divulged in the injunction.  The district court did not err in resorting to this eminently

DEFENDANTS' MOTION CONCERNING USE OF CERTAIN
CONFIDENTIAL INFORMATION AT TRIAL - 8
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

sensible expedient."); *Verigy US, Inc. v. Mayder*, No. C-07-04330, 2008 WL 564634, at *4-*5 (N.D. Cal. Feb. 29, 2008) (redacting discussion regarding plaintiff's trade secrets); *see also, e.g.*, *Apple, Inc. v. Samsung Elec. Co.*, No. 11-CV-01846, 2011 WL 7036077 (N.D. Cal. Dec. 2, 2011) (redacting portions of the opinion); *Tele Atlas N.V. v. NAVTEQ Corp.*, No. C-05-01673, 2008 WL 4809441 (N.D. Cal. Oct. 28, 2008) (same). This Court should accordingly either place its discussion of the confidential license agreements in a separate sealed appendix, *see Copley Press*, 518 F.3d at 1029; *Henry Hope*, 674 F.2d at 1343, or redact portions of the opinion discussing confidential details regarding the agreements, *see Verigy*, 2008 WL 564634, at *4-*5.

With the exception of companies that would look to leverage their positions improperly, the public has little interest in the terms of third-party license agreements. Moreover, the terms of third-party agreements are not relevant to the questions of general interest concerning the Court's *methodology* for determining a reasonable royalty range. Rather, third-party licenses are relevant only to the specific application of the Court's methodology to the facts of this case, an issue on which the public has considerably less interest. Indeed, in the analogous context of an infringement trial, a jury would determine a reasonable royalty rate without much, if any, discussion of the comparisons with other licenses that were the basis of its award. Especially where the public interest in disclosure is so weak and Motorola's interest in being able to introduce evidence central to its defense is so strong, the Court should follow the well-established precedent of either drafting its opinion without reference to specific confidential information or address that information only in a sealed portion of the opinion.

## IV. IF THE COURT DENIES MOTOROLA'S REQUESTED RELIEF, IT SHOULD CERTIFY THE ORDER FOR IMMEDIATE INTERLOCUTORY APPEAL

### A. As The Supreme Court has Recognized, an Order Regarding Disclosure of Confidential Information may be Certified for Interlocutory Appeal

As the Court has already indicated, the question of how properly to handle confidential third-party information in the Court's anticipated order is an appropriate one for immediate consideration by the Ninth Circuit. Recognizing the important interests at stake, the Court

DEFENDANTS' MOTION CONCERNING USE OF CERTAIN CONFIDENTIAL INFORMATION AT TRIAL - 9
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1  suggested that Motorola make the present filing in order to frame the question cleanly in a ruling
2  "that [Motorola] can use to go up to the circuit." (Nov. 16, 2012 Trial Tr. at 7.)  More specifically,
3  the Court observed that an immediate appeal would allow Motorola to "seek some kind of relief
4  before we publish our findings and conclusion, and therefore trigger this avalanche of
5  information" that competitors are waiting to seize upon. (*Id.* at 6.)

6  If the Court denies Motorola's motion, in order to "ease [Motorola's] path . . . to the
7  circuit," (*id.* at 7), the Court should certify its Order for immediate interlocutory appeal under 28
8  U.S.C. § 1292(b).  The Supreme Court has recently held in an analogous context that certification
9  for interlocutory appeal under Section 1292(b) is appropriate when "particularly injurious or
10 novel" disclosure questions are presented. *Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599, 607
11 (2009).  Although *Mohawk* held that an Order compelling a party to disclose in discovery
12 documents that it claimed were privileged was not immediately appealable as of right under the
13 collateral order doctrine, the Court stressed the availability of other avenues of immediate
14 appellate review, including certification under Section 1292(b).  The Court observed that "[t]he
15 preconditions for § 1292(b) review—'a controlling question of law,' the prompt resolution of
16 which 'may materially advance the ultimate termination of the litigation'—are most likely to be
17 satisfied when a [disclosure] ruling involves a new legal question or is of special consequence, and
18 district courts should not hesitate to certify an interlocutory appeal in such cases." *Id.*

19 The present case fits the Supreme Court's description, because the context of this Court's
20 ruling is entirely novel and likely to have far reaching consequences.  As noted above, the Court's
21 ruling on the issue of confidentiality, in the first-ever trial to establish a RAND royalty for a
22 standard essential patent, is likely to have broad repercussions.  If patentees believe that the terms
23 of their licenses are subject to disclosure, they will be less likely to enter into negotiated
24 agreements.  And, if would-be licensees think they can get a better deal through litigation, because
25 the patentee will be foreclosed from introducing comparable licenses for fear of violating
26 confidentiality provisions, the preference among SSOs for bilateral negotiations will be frustrated.

DEFENDANTS' MOTION CONCERNING USE OF CERTAIN
CONFIDENTIAL INFORMATION AT TRIAL - 10
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Courts will be thrust more frequently into the role of rate-makers, but without the best available evidence to undertake the task – comparable bilaterally negotiated licenses.  Immediate appeal would permit the Ninth Circuit to consider these important questions of first impression.

Certification is particularly appropriate here because, without an avenue for immediate appeal, Motorola would be deprived of its ability to put on a full and complete defense.  The injury that would be caused by disclosure of the trade secret information could not be remedied by later appeal.[3]  Confidential competitive information regarding the terms on which Motorola and third parties are willing to enter into licenses would be immediately available to competitors, providing them a distinct negotiating advantage that would not be undone by a later appellate ruling that the information should have been maintained under seal.  Likewise, if disclosure by the Court's opinion of evidence that Motorola introduces was determined to be a breach by Motorola of the licenses' confidentiality provisions, it is unclear that a later ruling by the Ninth Circuit holding the disclosure improper would alleviate the breach.  Indeed, faced with such a Hobson's choice, Motorola may be forced to forego its right to put on its best evidence of the appropriate royalty rate for its patents—the terms of comparable bilateral agreements.  If, for lack of an interlocutory appeal, Motorola did forego this evidence under penalty of having it disclosed and then won the point on appeal after judgment, it would require a new trial and ruling.  For these reasons, this is precisely the circumstance in which the Supreme Court indicated certification for interlocutory appeal under Section 1292(b) is appropriate.

**B.    The Court should make clear that, if Motorola is Unsuccessful in the Court of Appeals, Motorola may Withdraw Reliance on the Third-Party License, Obviating Any Need for the Court to Address the License in its Opinion**

In order to achieve its desired purpose, the Court's Order certifying the redaction issue for immediate interlocutory appeal would need also to clarify that, if the appeal were unsuccessful, Motorola could withdraw reliance on the third-party licenses in question, thereby eliminating any

---

[3]   Indeed, where the injury from disclosure would not be remedied later, the Ninth Circuit has held that immediate appeal is available as of right under the collateral order doctrine.  *See Copley Press*, 518 F.3d at 1025-26.  Certification by this Court will avoid any question regarding the propriety of an immediate interlocutory appeal.

DEFENDANTS' MOTION CONCERNING USE OF CERTAIN
CONFIDENTIAL INFORMATION AT TRIAL - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

need for the Court to discuss the licenses in its opinion.  As the Court rightly observed, there is no chance that the Ninth Circuit would rule on an interlocutory appeal before the close of trial.  (Nov. 16, 2012 Trial Tr. at 10.)  In deciding whether to introduce evidence of third-party licenses before the end of trial, Motorola must therefore consider what safeguards would exist if the Ninth Circuit were to affirm.  Unless Motorola is sure that it can withdraw reliance on the confidential third party license agreements in the event of a Ninth Circuit affirmance, Motorola may be forced to forego introducing those agreements into the record, to avoid the risk of disclosure.

Permitting Motorola to withdraw reliance on the evidence would not require the Court to expunge the evidence from the record.  In that sense, as the Court observed, once a party "present[s] it . . . there's no way to then withdraw it." (*Id.* at 12.)  However, if Motorola formally disclaims reliance on a third-party license that it has introduced, then there would be no occasion for the Court to discuss the license in its opinion, and no need to disclose any of its terms.  By clarifying that Motorola will have that option, the Court can achieve its expressed desire to permit prompt appellate review that avoids unnecessary injury or waste of resources.  Without the option to withdraw reliance on the third-party licenses if the Ninth Circuit affirms on interlocutory appeal, Motorola will have to forego introducing those agreements at this time and, instead, consider an appeal at the end of the case.

## V. CONCLUSION

For the foregoing reasons, Motorola respectfully requests that the Court close the courtroom to unauthorized persons during testimony regarding confidential third-party licenses and rule that the confidentiality of trade secret information in those agreements will not be disclosed in the Court's public opinion.  In the alternative, Motorola moves to certify its November 12 Order and Order denying the present motion for immediate interlocutory appeal under 28 U.S.C. § 1292(b).

DEFENDANTS' MOTION CONCERNING USE OF CERTAIN CONFIDENTIAL INFORMATION AT TRIAL - 12
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1     DATED this 18th day of November, 2012.

2                                       Respectfully submitted,

3                                         SUMMIT LAW GROUP PLLC

4                                         By */s/ Ralph H. Palumbo*

5                                             Ralph H. Palumbo, WSBA #04751
                                             Philip S. McCune, WSBA #21081

6                                              Lynn M. Engel, WSBA #21934
                                             *ralphp@summitlaw.com*

7                                              *philm@summitlaw.com*
                                             *lynne@summitlaw.com*

8

9                                         By */s/ Thomas V. Miller*
                                             Thomas V. Miller

10                                          MOTOROLA MOBILITY LLC
                                         600 North U.S. Highway 45

11                                          Libertyville, IL  60048-1286
                                         (847) 523-2162

12

13                                         And by

14                                          Jesse J. Jenner (*pro hac vice*)
                                         Steven Pepe (*pro hac vice*)

15                                          Stuart W. Yothers (*pro hac vice*)
                                         Kevin J. Post (*pro hac vice*)

16                                          Ropes & Gray LLP
                                         1211 Avenue of the Americas

17                                          New York, NY  10036-8704
                                         (212) 596-9046

18                                          *jesse.jenner@ropesgray.com*
                                         *steven.pepe@ropesgray.com*

19                                          *stuart.yothers@ropesgray.com*
                                         *kevin.post@ropesgray.com*

20

21                                          James R. Batchelder (*pro hac vice*)
                                         Norman H. Beamer (*pro hac vice*)

22                                          Ropes & Gray LLP
                                         1900 University Avenue, 6th Floor

23                                          East Palo Alto, CA  94303-2284
                                         (650) 617-4030

24                                          *james.batchelder@ropesgray.com*
                                         *norman.beamer@ropesgray.com*

25

26

DEFENDANTS' MOTION CONCERNING USE OF CERTAIN
CONFIDENTIAL INFORMATION AT TRIAL - 13
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1
2
3
4
5

Paul M. Schoenhard (*pro hac vice*)
Douglas Hallward-Driemeier (*pro hac vice*)
Ropes & Gray LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC  20005-3948
(202) 508-4693
*paul.schoenhard.@ropesgray.com*
*douglas.hallward-driemeier@ropesgray.com*

6
7

**Attorneys for Motorola Solutions, Inc., Motorola Mobility LLC and General Instrument Corp.**

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

DEFENDANTS' MOTION CONCERNING USE OF CERTAIN
CONFIDENTIAL INFORMATION AT TRIAL - 14
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Arthur W. Harrigan, Jr., Esq.
Christopher T. Wion, Esq.
Shane P. Cramer, Esq.
Calfo Harrigan Leyh & Eakes LLP
*arthurh@calfoharrigan.com*
*chrisw@calfoharrigan.com*
*shanec@calfoharrigan.com*

Richard A. Cederoth, Esq.
Brian R. Nester, Esq.
David T. Pritikin, Esq.
Douglas I. Lewis, Esq.
John W. McBride, Esq.
David Greenfield, Esq.
William H. Baumgartner, Jr., Esq.
David C. Giardina, Esq.
Carter G. Phillips, Esq.
Constantine L. Trela, Jr., Esq.
Ellen S. Robbins, Esq.
Nathaniel C. Love, Esq.
Sidley Austin LLP
*rcederoth@sidley.com*
*bnester@sidley.com*
*dpritikin@sidley.com*
*dilewis@sidley.com*
*jwmcbride@sidley.com*
*david.greenfield@sidley.com*
*wbaumgartner@sidley.com*
*dgiardina@sidley.com*
*cphillips@sidley.com*
*ctrela@sidley.com*
*erobbins@sidley.com*
*nlove@sidley.com*

T. Andrew Culbert, Esq.
David E. Killough, Esq.
Microsoft Corp.
*andycu@microsoft.com*
*davkill@microsoft.com*

DATED this 18th day of November, 2012.

/s/ *Marcia A. Ripley*
Marcia A. Ripley

DEFENDANTS' MOTION CONCERNING USE OF CERTAIN
CONFIDENTIAL INFORMATION AT TRIAL - 15
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001