HONORABLE JAMES L. ROBART

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>       Plaintiff,<br><br> vs.<br><br>MOTOROLA, INC., et al.,<br><br>       Defendants.<br>_____<br>MOTOROLA MOBILITY LLC, et al.,<br><br>       Plaintiffs,<br><br> vs.<br><br>MICROSOFT CORPORATION,<br><br>       Defendant. | Case No. C10-1823-JLR<br><br>PLAINTIFF MICROSOFT CORPORATION'S BRIEF CONCERNING THE USE OF THIRD-PARTY CONFIDENTIAL INFORMATION |

PLAINTIFF MICROSOFT CORPORATION'S
BRIEF CONCERNING THE USE OF THIRD-
PARTY CONFIDENTIAL INFORMATION

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Microsoft believes the procedure outlined by the Court in its November 12 ,2012 order (Dkt. No. 567) balances protection of confidential third-party information, the public right to access to the judicial process, and Microsoft's right to fully present its case and to rebut the arguments advanced by Motorola. Motorola knew of the issues created by its planned reliance on third-party confidential information long ago. Motorola has argued for nearly a year that specific "confidential" licenses, including those to RIM and Nokia, justified its 2.25% demand of Microsoft—but not until the fourth day of trial did Motorola fully inform the Court of the "untenable position" that Motorola had created for itself by promising the third parties that it would not publicly disclose the terms of those licenses. Motorola chose long ago to build its case on evidence that it apparently cannot publicly disclose without breaching contracts made with the third parties. That decision was Motorola's alone, and Motorola—not Microsoft, the Court, or the public—should bear any resulting consequences. The trial should proceed as contemplated by the Court in its November 12 order.

### A. Microsoft Must Be Afforded a Full and Fair Opportunity to Present its Case.

As the Court is well aware, Motorola intends to present an argument that its 2.25% demand can be justified as "RAND" by reliance on certain license agreements Motorola contends are comparable to the good faith RAND royalty that should have been offered to Microsoft for the use of Motorola's 802.11 and H.264 patents. The Court is also familiar with many of Microsoft's arguments as to why these agreements are *not* comparable—including that the licenses in question concern different companies, different patents, different industry standards, different products, different standard-product relationships, and that some were entered into in economic and legal circumstances in which the licensee was highly vulnerable to hold-up or that reflected other tradeoffs. *See, e.g.*, Dkt. No. 396, Microsoft's Rule 702 Motion to Preclude Testimony By Charles R. Donohoe and Dr. R. Sukumar at 8–12; Dkt. No. 423, Microsoft's Reply in Support of its Rule 702 Motion to Preclude Testimony By Charles

PLAINTIFF MICROSOFT CORPORATION'S
BRIEF CONCERNING THE USE OF THIRD-
PARTY CONFIDENTIAL INFORMATION - 1

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

R. Donohoe and Dr. R. Sukumar at 5–7; Dkt. No. 450, Microsoft's Motions in Limine at 4–7 (No. 2).

Motorola cannot rely on these agreements as claimed evidence of a RAND royalty while simultaneously using the agreements' confidentiality provisions to prevent Microsoft from presenting evidence demonstrating that the agreements are not comparable, either from the contents of the agreements themselves, the contents of other documents in evidence concerning those licensees and their relationship with Motorola, or by eliciting witness testimony on these subjects.  Microsoft must be permitted a full and fair opportunity to present its case, including an unrestricted right to cross-examine Motorola's witnesses and examine its own expert during rebuttal on the subject of the license agreements, the licensees, and their products.

> B.   Motorola's "Coding" or "Exhibit Number" Proposal is Unworkable.

Motorola's proposal that the parties refer to Motorola's license agreements by code names or exhibit numbers is unworkable.  As Motorola is well aware, Microsoft contends that each of these agreements is not comparable for numerous licensee-specific reasons.  Further, the royalty structures of specific licenses, coupled with information about the different products sold by the licensees, independently render them incomparable to the RAND royalty at issue here.  "Coding" the licensee's name or referring to the agreement by a number will not obscure the identity of the licensee, because Microsoft must be permitted to cross-examine Motorola's witnesses on each of these licensee-specific facts—and the identities of the licensees *are* important.  As the Court has already recognized, evaluating the comparability of a license agreement requires knowing who the licensee is, what products they make, and how they would value a license to certain Motorola standard-essential patent portfolios.  Moreover, given the short amount of time remaining, the use of codes would unduly complicate and

PLAINTIFF MICROSOFT CORPORATION'S
BRIEF CONCERNING THE USE OF THIRD-
PARTY CONFIDENTIAL INFORMATION - 2

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

prolong examination of witnesses.  Microsoft should not be forced to waste its allotted time in this manner.

The authority Motorola cites in support of its "coding" proposal is of no help, because none of the concerns here were present.  In *Cryptography Research, Inc. v. Visa Int'l. Service Ass'n*, No. C04–04143 JW (HRL), 2008 WL 346411 (N.D. Cal. Feb. 7, 2008), a magistrate judge granted a motion to compel production of documents relating to any license agreements between the plaintiff and a third party.  *Id.* at *1–2.  By agreement of the parties, and because the third party had "satisfied the court that public disclosure of its name in this case would be detrimental to it," the magistrate judge referred to the third party as "Doe Corporation" in the opinion.  *Id.* at *1 & n. 3.  In order to resolve the discovery dispute, the magistrate judge only needed to note evidence that a third party likely had a licensing agreement of some kind with the plaintiff, and that the defendant was entitled to further discovery into that agreement—the parties agreed that no other specific facts about the third party, its operations, or the circumstances of the possible license were relevant.

Trial resumes in less than 24 hours, and Motorola has provided Microsoft no concrete suggestion of how it actually proposes to implement any coding scheme or new exhibit numbering system for these licenses.  Even if such methods were viable (and they are not), it would be difficult and time-consuming for Microsoft to integrate those references throughout its cross and direct examinations at this late hour.

**C.    Motorola Voluntarily Chose Long Ago to Base its RAND Theory on Third-Party Confidential Information.**

With full knowledge of the confidentiality provisions of its license agreements, Motorola chose to advance a "bilateral negotiation" RAND theory in this case based entirely on the contents of those agreements.[1]  Motorola has known for many months that Microsoft

---

[1] Motorola advanced the same theory—that the same license agreements proved that its 2.25% demand of Microsoft was reasonable—in its ITC case against Microsoft, at least as early as January 2012.

PLAINTIFF MICROSOFT CORPORATION'S
BRIEF CONCERNING THE USE OF THIRD-
PARTY CONFIDENTIAL INFORMATION - 3

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1  vigorously disputed that these agreements were comparable, based on license- and licensee-

2  specific facts—and in June 2012, the Court denied in part Microsoft's motion for summary

3  judgment *because* a detailed examination of those facts was necessary:

> [A] determination of the relevance of Motorola's prior license agreements is inherently fact intensive, more appropriate as a motion in limine, and cannot be decided at this time.  To make such a determination, *the court must engage in a factual comparison between the circumstances of each prior agreement and the circumstances that exist between the parties to this litigation*[.]

Dkt. No. 335, Order at 26 (emphasis added).  *See also* Dkt. No. 490, Daubert Order at 14 ("Certainly, the applicability of Motorola's license agreements, which Mr. Donohoe examines in determining the initial royalty rate of 2.25%, *should be subject to vigorous cross examination* with respect to their comparability to the present case.") (emphasis added).  So Motorola knew months ago that this evidence was highly likely to come out at trial, both in light of the Court's rulings and the Ninth Circuit's policies on public access to judicial information:  "The resolution of a dispute on the merits, whether by trial or summary judgment, is at the heart of the interest in ensuring the 'public's understanding of the judicial process and of significant public events.'"  *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006), quoting *Valley Broadcasting Co. v. U.S. Dist. Court for Dist. of Nev.*, 798 F.2d 1289, 1294 (9th Cir. 1986).  As Microsoft explained in its *Daubert* briefing, Motorola's expert Charles Donohoe simply extracts a 2.25% royalty rate from those agreements, claims to perform a "modified *Georgia-Pacific* analysis" that leaves that rate unchanged, and declares that 2.25% is a RAND royalty.  Because Motorola's RAND theory begins and ends with these licenses, Motorola knew months ago that there was no possible way for the Court to find in its favor on the RAND issue other than in an opinion containing detailed analysis of the license agreements and licensees.

Motorola now informs the Court that its licensees have threatened legal action if Motorola uses the license agreements in this case and, as a result, the licenses' terms are

PLAINTIFF MICROSOFT CORPORATION'S
BRIEF CONCERNING THE USE OF THIRD-
PARTY CONFIDENTIAL INFORMATION - 4

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

publicly disclosed. This provides no ground for keeping the agreements under seal: "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, *or exposure to further litigation* will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1179 (emphasis added). Motorola decided to base its evidence of a RAND royalty on license agreements that apparently bar it from using them in this manner. That problem is entirely of Motorola's own making.

It is not conceivable that Motorola failed to foresee—months ago—the problem it has so belatedly raised. If Motorola ever had a valid argument for simultaneously relying on the license agreements while precluding revelation at trial of identifying details, it waived it by its failure to raise this issue until the *fourth day of trial* when time is already very compressed.

But the waiver is secondary. Motorola's problem inheres in its strategy: it is the sponsor of these license agreements as the foundation for its argument on the central issue in this trial. Its argument depends on the very details of the licensing agreements that it seeks to exclude from public view, and always has. No matter when Motorola first asked that these details be obscured from public view, its position would have been untenable.

Motorola would like the Court to do what its experts have done—ignore the highly material details of these agreements and look simplistically at the royalty rate or percentage. Those details will compel the conclusion that the licenses have no probative value on the issue before the Court, but that fact cannot be demonstrated without proof of, and testimony regarding, those details.

The Court should proceed with its current plan for handling third-party confidential information.

PLAINTIFF MICROSOFT CORPORATION'S
BRIEF CONCERNING THE USE OF THIRD-
PARTY CONFIDENTIAL INFORMATION - 5

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

DATED this 18th day of November, 2012.

      CALFO HARRIGAN LEYH & EAKES LLP

    By  s/Arthur W. Harrigan, Jr.
       Arthur W. Harrigan, Jr., WSBA #1751
       Christopher Wion, WSBA #33207
       Shane P. Cramer, WSBA #35099

    By  s/ T. Andrew Culbert
       T. Andrew Culbert
       David E. Killough
       MICROSOFT CORPORATION
       1 Microsoft Way
       Redmond, WA  98052
       Phone:  425-882-8080
       Fax:  425-869-1327

       David T. Pritikin
       Richard A. Cederoth
       Constantine L. Trela, Jr.
       William H. Baumgartner, Jr.
       Ellen S. Robbins
       Douglas I. Lewis
       David C. Giardina
       John W. McBride
       David Greenfield
       Nathaniel C. Love

       SIDLEY AUSTIN LLP
       One South Dearborn
       Chicago, IL  60603
       Phone: 312-853-7000
       Fax:  312-853-7036

       Carter G. Phillips
       Brian R. Nester

       SIDLEY AUSTIN LLP
       1501 K Street NW
       Washington, DC  20005
       Telephone:  202-736-8000
       Fax:  202-736-8711

       Counsel for Microsoft Corp.

PLAINTIFF MICROSOFT CORPORATION'S
BRIEF CONCERNING THE USE OF THIRD-
PARTY CONFIDENTIAL INFORMATION - 6

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

## CERTIFICATE OF SERVICE

I, Susie Clifford, swear under penalty of perjury under the laws of the State of Washington to the following:

1. I am over the age of 21 and not a party to this action.

2. On the 18th day of November, 2012, I caused the preceding document to be served on counsel of record in the following manner:

**Attorneys for Motorola Solutions, Inc., and Motorola Mobility, Inc.:**

| | |
|---|---|
| Ralph Palumbo, WSBA #04751<br>Philip S. McCune, WSBA #21081<br>Lynn M. Engel, WSBA #21934<br>Summit Law Group<br>315 Fifth Ave. South, Suite 1000<br>Seattle, WA  98104-2682<br>Telephone:  206-676-7000<br>Email:  Summit1823@summitlaw.com | _____ Messenger<br>_____ US Mail<br>_____ Facsimile<br>\_\_X\_\_ ECF |
| Steven Pepe (*pro hac vice*)<br>Jesse J. Jenner (*pro hac vice*)<br>Ropes & Gray LLP<br>1211 Avenue of the Americas<br>New York, NY  10036-8704<br>Telephone:  (212) 596-9046<br>Email:  steven.pepe@ropesgray.com<br>Email:  jesse.jenner@ropesgray.com | _____ Messenger<br>_____ US Mail<br>_____ Facsimile<br>\_\_X\_\_ ECF |
| Norman H. Beamer (*pro hac vice*)<br>Ropes & Gray LLP<br>1900 University Avenue, 6th Floor<br>East Palo Alto, CA  94303-2284<br>Telephone:  (650) 617-4030<br>Email:  norman.beamer@ropesgray.com | _____ Messenger<br>_____ US Mail<br>_____ Facsimile<br>\_\_X\_\_ ECF |

PLAINTIFF MICROSOFT CORPORATION'S BRIEF CONCERNING THE USE OF THIRD-PARTY CONFIDENTIAL INFORMATION - 7

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

| | |
|---|---|
| Paul M. Schoenhard (*pro hac vice*)<br>Ropes & Gray LLP<br>One Metro Center<br>700 12th Street NW, Suite 900<br>Washington, DC  20005-3948<br>Telephone:  (202) 508-4693<br>Email: Paul.schoenhard@ropesgray.com | _____ Messenger<br>_____ US Mail<br>_____ Facsimile<br>__X\_\_\_ ECF |

DATED this 18th day of November, 2012.

                                   s/Susie Clifford
                                   Susie Clifford

PLAINTIFF MICROSOFT CORPORATION'S
BRIEF CONCERNING THE USE OF THIRD-
PARTY CONFIDENTIAL INFORMATION - 8

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717