UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION, | CASE NO. C10-1823JLR |
| Plaintiff, | ORDER GRANTING MICROSOFT'S MOTION DISMISSING MOTOROLA'S CLAIM FOR INJUNCTIVE RELIEF |
| v. | |
| MOTOROLA, INC., et al., | |
| Defendants. | |
| MOTOROLA MOBILITY, INC., et al., | |
| Plaintiffs, | |
| v. | |
| MICROSOFT CORPORATION, | |
| Defendant. | |

ORDER- 1

## I.     INTRODUCTION

1

2          This matter is before the court on Plaintiff Microsoft Corporation's ("Microsoft")

3    motion for partial summary judgment dismissing the relief of an injunction sought by

4    Defendants Motorola, Inc., Motorola Mobility, Inc., and General Instrument Corporation

5    (collectively, "Motorola") for patent infringement of Motorola-owned H.264 standard

6    essential patents subject to reasonable and non-discriminatory ("RAND") commitments.

7    (Mot. (Dkt. ## 139 (sealed), 141 (redacted))).[1]  Having considered Microsoft's motion,

8    Motorola's response (Resp. (Dkt. # 143)), Microsoft's reply (Reply (Dkt. # 152)), all

9    attachments to the briefing, and the governing law, and having heard oral argument on

10   May 7, 2012, the court GRANTS Microsoft's motion (Dkt. # 139).

## II.     BACKGROUND

11

12   **A.     The IEEE and the ITU as Standard Setting Organizations**

13         Microsoft and Motorola are both members of the Institute of Electrical and

14   Electronics Engineers ("IEEE") and the International Telecommunication Union ("ITU").

15   The IEEE and the ITU, neither of which are parties to the instant dispute, are

16   international standards setting organizations.  Standards setting organizations play a

17   significant role in the technology market by allowing companies to agree on common

18   technological standards so that all compliant products will work together.  Standards

19   lower costs by increasing product manufacturing volume, and they increase price

20   _____

21         [1] While the parties in this action have both filed affirmative claims in this matter, because
22   Microsoft filed the complaint initiating the instant action, for purposes of this order, the court
     names Microsoft as the "plaintiff."

competition by eliminating "switching costs" for consumers who desire to switch from products manufactured by one firm to those manufactured by another.

One complication with standards is that it may be necessary to use patented technology in order to practice them.  If a patent claims technology selected by a standards setting organization, the patent is called an "essential patent."  Here, Motorola is the owner of numerous patents "essential" to certain standards established by the IEEE and the ITU.  (*See* 10/21/10 Motorola Offer Ltr. (Dkt. # 79-5); 10/29/10 Motorola Offer Ltr. (Dkt. # 79-6) (see list of attachments).)  In order to reduce the likelihood that owners of essential patents will abuse their market power, many standards setting organizations, including the IEEE and the ITU, have adopted rules related to the disclosure and licensing of essential patents.  The policies often require or encourage members of the standards setting organization to identify patents that are essential to a proposed standard and to agree to license their essential patents on RAND terms to anyone who requests a license.  Such rules help to ensure that standards do not allow essential patent owners to extort their competitors or prevent them from entering the marketplace.

**B.      Motorola's Statements to the IEEE and the ITU**

This lawsuit involves two standards—the IEEE 802.11 wireless local area network ("WLAN") standard ("802.11 Standard) and the ITU H.264 advanced video coding technology standard ("H.264 Standard").[2]  (*See generally* Compl. (Dkt. # 1); Am. Compl.

---

[2] The ITU developed the H.264 Standard jointly with two other standard setting organizations—the International Organization for Standardization and the International Electrotechnical Commission.  (Partial S.J. Order (Dkt. #188) at 3.)

(Dkt. # 53).)  The IEEE's standard setting process is governed by its Intellectual Property

Rights Policy (the "IEEE Policy").  (*See generally* IEEE Policy (Dkt. #79-1).)  The IEEE

Policy provides that "IEEE standards may be drafted in terms that include the use of

Essential Patent Claims."  (*Id.* at 18 (Section 6.2).)  The IEEE Policy defines the term

"Essential Patent Claim" as one or more claims in an issued patent (or pending patent

application) that are "necessary to create a compliant implementation of either mandatory

or optional portions of the normative clauses of the [Proposed] IEEE Standard . . . ."  (*Id.*)

        If the IEEE learns that an IEEE standard or a proposed IEEE standard may require

the use of an essential patent claim, the IEEE requires the patent holder to either state that

it is not aware of any patents relevant to the IEEE standard or to provide the IEEE with a

Letter of Assurance.  (*Id.*)  Any such Letter of Assurance must include either (1) a

disclaimer to the effect that the patent holder will not enforce the "Essential Patent

Claims," or (2):

> [a] statement that a license for a compliant implementation of the standard
> will be made available to an unrestricted number of applicants on a
> worldwide basis without compensation or under reasonable rates, with
> reasonable terms and conditions that are demonstrably free of any unfair
> discrimination. . . .

(*Id.*)  If the IEEE cannot obtain a Letter of Assurance, it refers the essential patent to the

IEEE Patent Committee.  (*Id.*)

        Motorola has submitted numerous Letters of Assurance to the IEEE in connection

with the 802.11 Standard stating that it "will grant" or "is prepared to grant" a license

under RAND terms for its patents essential to the 802.11 Standard.  (*See generally* IEEE

ORDER- 4

LOAs (Dkt. # 79-2).)  A typical Motorola Letter of Assurance to the IEEE provides, in

relevant part:

> The Patent Holder will grant [or is prepared to grant] a license under reasonable rates to an unrestricted number of applicants on a worldwide, non-discriminatory basis with reasonable terms and conditions to comply with the [Proposed] IEEE Standard.

(*See generally id.*)  Such Letters of Assurance are irrevocable once submitted and

accepted by the IEEE and apply from the date the standard is approved until the date the

standard is withdrawn.  (IEEE Policy at 19.)

Like the IEEE, the ITU has established a policy (the "ITU Policy") with respect to

holders of patents "essential" to implementing a standard.  (*See* ITU Policy (Dkt. # 79-

3).)  Such patent holders must file with the ITU a "Patent Statement and Licensing

Declaration" declaring whether they (1) will grant licenses free of charge on a RAND

basis; (2) will grant licenses on RAND terms; or (3) are not willing to comply with either

of the first two options.  (*See id.* at 9-12.)  If a patent holder is not willing to comply with

either of the first two options, the ITU standard will not include provisions depending on

the patent.  (*Id.* at 9.)

Motorola has sent numerous declarations to the ITU stating that they will grant

licenses on RAND terms for its patents essential the H.264 Standard.  (*See generally* ITU

Declarations (Dkt. # 79-4).)  A typical declaration by Motorola to the ITU provides, in

relevant part:

> The Patent Holder will grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to use the patented material necessary in order to

manufacture, use, and/or sell implementations of the above ITU-T Recommendation | ISOC/IEC International Standard.[3]

(*E.g.*, *id.* at 2.)

## C.   Motorola's Offer Letters to Microsoft

On October 21, 2010, Motorola sent Microsoft a letter (the "October 21 Letter") that read in pertinent part:

> This letter is to confirm Motorola's offer to grant Microsoft a worldwide non-exclusive license under Motorola's portfolio of patents and pending applications having claims that may be or become Essential Patent Claims (as defined in section 6.1 of the IEEE bylaws) for a compliant implementation of the IEEE 802.11 Standards. . . .  Motorola offers to license the patents under reasonable and non-discriminatory terms and conditions ("RAND"), including a reasonable royalty of 2.25% per unit for each 802.11 compliant product, subject to a grant back license under the 802.11 essential patents of Microsoft.  As per Motorola's standard terms, the royalty is calculated based on the price of the end product (e.g, each Xbox 360 product) and not on component software (e.g., Windows Mobile Software).

(10/21/10 Offer Ltr. at 2.)  Then, on October 29, 2010, Motorola sent a similar letter (the "October 29 Letter") regarding the H.264-related patents, stating:

> Motorola offers to license the patents on a non-discriminatory basis on reasonable terms and conditions ("RAND"), including a reasonable royalty, of 2.25% per unit for each H.264 compliant product, subject to a grant back license under the H.264 patents of Microsoft, and subject to any Motorola commitments made to JVT in connection with an approved H.264 recommendation.  As per Motorola's standard terms, the royalty is calculated based on the price of the end product (e.g., each Xbox 360 product, each PC/laptop, each smartphone, etc.) and not on component software (e.g., Xbox 360 system software, Windows 7 software, Windows Phone 7 software, etc.)

---

[3] The declaration to the ITU also states that "negotiations of licenses are left to the parties concerned and are performed outside the ITU-T | ISO/IEC."  (ITU Declarations at 2.)

1   (10/29/10 Offer Ltr. at 2.)  Motorola attached to its October 29 Letter a non-exhaustive

2   list of patents it offered to license to Microsoft.  (*See id.*)

3          On November 9, 2010, Microsoft filed its complaint initiating this action, and on

4   February 23, 2011, Microsoft filed an amended complaint.  (Compl.; Am. Compl.)

5   Microsoft contends that the October 21 and October 29 Letters seek unreasonable royalty

6   rates and therefore breach Motorola's obligations to the IEEE and the ITU to grant

7   licenses on RAND terms.  (Am. Compl. at 21, 22.)  Microsoft alleges claims against

8   Motorola for breach of contract and promissory estoppel.[4]  (*Id.*)  In its prayer for relief,

9   Microsoft seeks, *inter alia*, (1) a declaration that it is entitled to a license on RAND terms

10  from Motorola for all patents subject to Motorola's commitments to the IEEE (through

11  Letters of Assurance) and to the ITU (through declarations), and (2) a judicial accounting

12  of a RAND royalty rate for Motorola's patents subject to these commitments.  (*Id.* at 25

13  (Prayer for Relief).)

14         In response, Motorola asserted affirmative defenses and counterclaims.  (*See*

15  Motorola Answer (Dkt. # 68).)  Motorola's counterclaims seek, *inter alia*, a declaratory

16  judgment that (1) it has not breached any RAND obligations, and (2) Microsoft

17  repudiated and/or rejected the benefits of Motorola's RAND obligations, and therefore

18  Microsoft is not entitled to a license to Motorola's patents related to the H.264 and

19  802.11 Standards.  (*Id.* ¶¶ 61-75 (Counterclaims).)

20

21         [4] Microsoft's action against Motorola also included claims for waiver and declaratory

22  judgment, but the court's June 1, 2011 order dismissed both of those claims, leaving only the
    breach of contract and promissory estoppel claims.  (Dkt. # 66 at 12.)

1   Additionally, on November 10, 2012, Motorola filed suit against Microsoft in the

2   Western District of Wisconsin, alleging that Microsoft's Windows 7 operating system

3   infringed three patents relating to the H.264 standard—U.S. Patent Nos. 7,310,374;

4   7,310,375; and 7,310,376 (collectively, the "Motorola Asserted Patents"). (Motorola

5   Compl. (C11-0343JLR, Dkt. # 1).) Each of the Motorola Asserted Patents is included in

6   its portfolio of H.264 standard essential patents, which Motorola offered to Microsoft *via*

7   the October 29 Letter. (10/29/10 Offer Ltr. at 4-5.) Based on its allegation of patent

8   infringement, Motorola seeks injunctive relief against Microsoft's alleged infringing

9   activities—the making, using, offering for sale, selling, and/or importing the Windows 7

10  operating system, or inducing others to infringe the Motorola Asserted Patents.

11  (Motorola Compl. ¶¶ 16, 23, 30.) The action in the Western District of Wisconsin was

12  transferred to the Western District of Washington on February 18, 2011 (Transfer Order

13  (Dkt. # 44)), and consolidated with the action initiated by Microsoft on June 1, 2011

14  (Order to Consolidate (Dkt. # 66)).

15  **D.   The Court's Prior Rulings**

16  In a February 27, 2012, order, the court ruled that Motorola's Letters of Assurance

17  to the IEEE and Motorola's declarations to the ITU create enforceable contracts between

18  Motorola and the respective standard setting organization to license its essential patents

19  on RAND terms. (2/27/12 Order (Dkt. # 188) at 10.) Additionally, the court found that,

20  as a member of the IEEE and the ITU and a prospective user of both the H.264 Standard

21  and the 802.11 Standard, Microsoft is a third-party beneficiary of the contract. (*Id.*)

22

1    Following the court's February 27, 2012, order, the parties moved for summary

2  judgment.  Microsoft moved for summary judgment that Motorola breached its

3  agreements to license its standard essential patents on RAND terms by offering to license

4  its standard essential patents at 2.25% of Microsoft's end product price (a blatantly

5  unreasonable offer according to Microsoft) in the October 21 and October 29 Letters.

6  (Microsoft Mot. for SJ (Dkt. # 236).)  Motorola moved for summary judgment that

7  Microsoft had repudiated its rights as a third-party beneficiary to a RAND license by

8  initiating this lawsuit without first applying for, and negotiating towards, a patent license

9  for Motorola's standard essential patents.  (Motorola Mot. for SJ (Dkt. # 231).)

10    In its June 6, 2012, order on the parties' respective motions, the court again

11  examined the obligations of both Motorola and Microsoft originating from Motorola's

12  statements to both the ITU and the IEEE regarding its standard essential patents.  In this

13  order, the court reaffirmed its conclusion that Motorola's statements to the ITU and IEEE

14  did indeed constitute binding agreements to license its essential patents on RAND terms.

15  (6/6/12 Order (Dkt. # 335) at 13.)  The court also reaffirmed its decision that Microsoft

16  was a third-party beneficiary to those agreements and has a right to a RAND license for

17  Motorola's standard essential patents.[5]  (*Id.* at 14.)  With respect to Microsoft's motion

18

19

_____

20  [5] Subsequent to this court's June 6, 2012 order, the Ninth Circuit issued an opinion on
Motorola's interlocutory appeal of this court's grant of an anti-suit injunction of Motorola's
enforcement of a German injunction against Microsoft for patent infringement regarding two of
21  Motorola's standard essential patents.  *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872 (9th Cir.
2012).  In its opinion, the Ninth Circuit held that the "district court's conclusions that Motorola's
RAND declarations to the ITU created a contract enforceable by Microsoft as a third-party
22  beneficiary (which Motorola concedes), and that this contract governs in some way what actions

ORDER- 9

1    for summary judgment, the court determined that although Motorola's agreements with

2    the ITU and IEEE required initial offers for its standard essential patents to be made in

3    good faith, issues of fact existed as to whether Motorola's October 21 and 29 Letters

4    complied with its good faith obligations.  (*Id.* at 21-28.)  The court further explained that

5    before a jury could decide whether Motorola's offers for its standard essential patents

6    breached its duty of good faith, the court would need to determine a true RAND royalty

7    rate for purposes of comparison.  (*Id.* at 25.)  Accordingly, the court denied Microsoft's

8    motion.  (*Id.* at 28.)  The court also denied Motorola's motion for summary judgment and

9    held that applying for a patent license and negotiating towards a patent license were not

10   conditions precedent to Motorola's obligations to grant licenses on RAND terms.  (*Id.* at

11   16-21.)

12          After its June 6 order, with input from the parties, the court adopted a two-part

13   approach to adjudicate Microsoft's breach of contract claim.  The court would first

14   determine a RAND royalty rate and RAND royalty range for Motorola's standard

15   essential patent portfolios at a November 13, 2012, bench trial; and second, with this

16   determination as guidance, a jury would hear Microsoft's breach of contract claim.[6]

17          Prior to the November 13 trial, Motorola filed a motion for summary judgment on

18   "Microsoft's request that the court make" a license agreement for Motorola's standard

19

20   Motorola may take to enforce its ITU standard-essential patents (including the patents at issue in
     the German suit), were not legally erroneous."  *Id.* at 884.

21          [6] The parties agreed that a bench trial was appropriate for adjudication of a RAND
     royalty rate and range.  Motorola, however, sought a jury trial for the breach of contract issue.
22   (7/9/12 Tr. (Dkt. # 359) at 5.)

ORDER- 10

1    essential patents.  (Motorola Mot. (Dkt. # 362).)  In other words, Motorola sought

2    summary judgment that Microsoft could not obtain relief from this court in the form of a

3    license agreement between Motorola and Microsoft for Motorola's H.264 and 802.11

4    standard essential patent portfolios.  In an October 10, 2012, order, the court denied

5    Motorola's motion, reasoning that "having previously determined that Microsoft has not

6    repudiated or revoked [its right to a RAND license], . . . Motorola must grant Microsoft a

7    RAND license to its standard essential patents."  (10/10/12 Order (Dkt. # 465) at 14.)

8    The court further reasoned that, because Motorola must grant Microsoft a RAND license,

9    it could not "dismiss from Microsoft's possible remedies the very license agreement to

10   which the court has already determined it is entitled."[7]  (*Id.* at 17.)  In holding that

11   Motorola must grant Microsoft a RAND license, the court *ipso facto* dismissed

12   Motorola's counterclaim that Microsoft had repudiated its rights to a RAND license.

13          From November 13-21, 2012, the court held a multi-week trial to determine the

14   appropriate RAND rate and range for Motorola's H.264 and 802.11 standard essential

15   patent portfolios.  During the trial, among other things, the court heard evidence of the

16   importance of Motorola's patent portfolios to the respective standards as well as the

17   importance of Motorola's patent portfolios to Microsoft's Xbox and Windows products.

18

19   _____

20          [7] Critical to the court's October 10, 2012, order was Microsoft's representation that it
     believes it needs a license and that it is ready and willing to accept a license to Motorola's
21   essential patents on RAND terms.  (*See, e.g.*, Reply ("The indisputable evidence is that
     Microsoft is seeking a license on RAND terms—in this very action.").)  As previously stated, the
     court will hold Microsoft to its representation throughout the course of this litigation.  (*See*
22   6/6/12 Order at 20, n.7.)

1    At this time, the court has taken the matter under submission and will issue a written

2    order adjudicating a RAND rate and range for Motorola's relevant patents.

3                                    **III.    DISCUSSION**

4            In the motion presently before the court, Microsoft seeks to dismiss Motorola's

5    request for injunctive relief for patent infringement of the Motorola Asserted Patents.

6    Because Motorola cannot show irreparable harm or that monetary damages would be

7    inadequate, the court agrees with Microsoft that injunctive relief is improper in this

8    matter and grants Microsoft's motion.

9    **A.    Injunctive Relief**

10           A district court "may grant injunctions in accordance with the principles of equity

11   to prevent the violation of any right secured by patent, on such terms as the court deems

12   reasonable."  35 U.S.C. § 283.  "According to well-established principles of equity, a

13   plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may

14   grant such relief."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  To

15   obtain an injunction, a plaintiff must demonstrate:  (1) that it has suffered an irreparable

16   injury; (2) that remedies available at law, such as monetary damages, are inadequate to

17   compensate for that injury; (3) that, considering the balance of hardships between the

18   plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest

19   would not be disserved by a permanent injunction.  *Id.*

20

21

22

ORDER- 12

1       **1.**     **Irreparable Harm**

2          Harm is irreparable when it cannot be remedied except through injunctive relief.

3    *See Metro–Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1210

4    (C.D. Cal. 2007).  Economic damages are not traditionally considered irreparable because

5    the injury can later be remedied by a damage award.  As the Supreme Court explained,

6    "the temporary loss of income, ultimately to be recovered, does not usually constitute

7    irreparable injury . . . .  The possibility that adequate compensatory or other corrective

8    relief will be available at a later date, in the ordinary course of litigation, weighs heavily

9    against a claim of irreparable harm."  *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

10       At this stage in the litigation, and based on this court's prior rulings, the court

11    concludes that Motorola cannot demonstrate irreparable harm.  Here, the court has

12    previously ruled that Microsoft is a third-party beneficiary of Motorola's commitments to

13    the ITU (and the IEEE) such that Microsoft is entitled to a RAND license agreement for

14    Motorola's H.264 (and 802.11) standard essential patents.  The Motorola Asserted

15    Patents, at issue in this litigation, are standard essential patents of the H.264 Standard and

16    are included in Motorola's H.264 standard essential patent portfolio.  Thus, Microsoft is

17    entitled to a license to the Motorola Asserted Patents on RAND terms.  As Microsoft has

18    committed to accept a license on RAND terms for Motorola's entire H.264 standard

19    essential patent portfolio, and the litigation is continuing to determine the details of such

20    a license, it is now clear that at some point in the future (either by agreement of the

21    parties or by court adjudication) a license agreement for the Motorola Asserted Patents

22

ORDER- 13

1  will become a reality.[8]  Because Microsoft will pay royalties under any license agreement

2  from the time of infringement within the statute of limitations, this license agreement will

3  constitute Motorola's remedy for Microsoft's use of Motorola's H.264 standard essential

4  patent portfolio to include the Motorola Asserted Patents.  Accordingly, Motorola cannot

5  demonstrate that it has been irreparably harmed.[9]

6  **2.      Adequate Remedy at Law**

7         For similar reasons, Motorola cannot show that it has no adequate remedy other

8  than injunctive relief.  As the court explained, Motorola's remedy is a RAND license

9  agreement for its H.264 standard essential patent portfolio, which includes the Motorola

10  Asserted Patents.  This remedy will make Motorola whole for Microsoft's use of any and

11  all of Motorola's H.264 standard essential patents.

12         Although the court is aware that injunctive relief often accompanies a finding of

13  patent infringement, this is not a simple patent infringement action.  After hearing

14

---

15  [8] As stated, the court recently held a trial to determine the RAND rate for Motorola's

16  H.264 and 802.11 standard essential patent portfolios.

17  [9] The court is unconvinced by Motorola's argument that it has or will suffer irreparable
harm to its goodwill and reputation because a compulsory license agreement would encourage

18  others to infringe Motorola's standard essential patents.  (Resp. at 19.)  This is not the case.  The
court's prior rulings have made clear that Microsoft, as an implementer of the H.264 Standard,
must accept a RAND license to Motorola's standard essential patents.  Indeed, Microsoft, or any

19  other implementer, is not free to infringe Motorola's standard essential patents, and were that to
occur, this court's ruling with respect to injunctive relief may be different.  The nature of

20  Motorola's RAND commitments, however, obligates Motorola to grant RAND licenses to any
and all implementers of the H.264 Standard.  As the court has explained, in the situation where a

21  standard essential patent holder and an implementer reach an impasse during negotiations of a
RAND license, the courthouse may be the only forum to adjudicate the rights of the patentee and
the third-party beneficiary of the RAND commitment.  Certainly, easily measurable litigation

22  costs to enforce one's rights cannot constitute irreparable harm.

1   testimony at the November 13, 2012 trial, it is clear that, from the time Motorola

2   committed to license its H.264 standard essential patent portfolio on RAND terms,

3   Motorola was under the obligation to grant RAND licenses to all implementers (including

4   Microsoft) of the H.264 standard.  Motorola's obligation to grant such a RAND license to

5   Microsoft far preceded the onset of this litigation, meaning that at all times during this

6   litigation, the issue was not if, but when and under what terms, a license agreement would

7   be established between Microsoft and Motorola.  Thus, because Motorola has always

8   been required to grant Microsoft a RAND license agreement for its H.264 standard

9   essential patents, as a matter of logic, the impending license agreement will adequately

10  remedy Motorola as a matter of law.

11          In sum, Motorola has not shown it has suffered an irreparable injury or that

12  remedies available at law are inadequate to compensate for its injury.  As such, the court

13  need not reach the other elements of the standard for permanent injunctive relief.  *See*

14  *eBay*, 547 U.S. at 391; *Hadel v. Willis Roof Consulting, Inc.*, 2008 WL 4372783, at *3

15  (D. Nev. Sept. 23, 2008).  Accordingly, the court grants Microsoft's motion dismissing

16  Motorola's request for injunctive relief in this action.  The dismissal is without prejudice.

17  The court's determination that injunctive relief is no longer available for the Motorola

18  Asserted Patents is based on the specific circumstances and rulings that have developed

19  in this litigation.  If, in the future, those circumstances change in a manner to warrant

20  injunctive relief, Motorola may at that time seek such relief.

21

22

ORDER- 15

1    **B.     The Anti-Suit Injunction**

2          Earlier in this litigation, the court issued an anti-suit injunction enjoining Motorola

3    from enforcing any injunctive relief Motorola may receive through a separate German

4    lawsuit also involving Motorola and Microsoft.  (*See* 5/14/12 Order (Dkt. # 318).)  The

5    lawsuit in Germany, initiated on July 6, 2012 by Motorola, involved two Motorola-

6    owned European issued patents—European Patent Nos. 0615384 and 0538667 (the

7    "European Patents").  (*Id.* at 9.)  Similar to the situation here, in the German action,

8    Motorola asserted that Microsoft infringed the European Patents and sought injunctive

9    relief.  (*Id.*)  Like the Motorola Asserted Patents in this litigation, the European Patents

10   were declared essential to the H.264 Standard, were subject to RAND commitments to

11   the ITU, and were included on the list of patents offered to Microsoft in the October 29

12   Letter.  (*Id.* at 9-10.)

13         In issuing the anti-suit injunction, this court explained that the issues before it in

14   this litigation were dispositive of the question of whether Motorola could enforce an

15   injunction for patent infringement of the European Patents that are essential to the H.264

16   Standard.  (*Id.* at 17.)  In other words, a judicially-determined RAND license

17   encompassing all of Motorola's H.264 essential patents would necessarily dispose of

18   Motorola's request for an injunction in Germany based on Motorola-owned, H.264

19   standard essential patents.  (*Id.*)  In an effort to limit the impact on comity, the court

20   limited the scope and duration of the anti-suit injunction.  The scope of the injunction was

21   limited to Motorola's enforcement of an injunction in Germany but not to further

22   prosecution of the Germany action or the receipt of damages of the non-injunctive form.

ORDER- 16

1    With respect to duration, the court stated that it would remove the anti-suit

2    injunction after adjudicating the propriety of injunctive relief.  (*Id.* at 20, 25.)  That time

3    has now arrived.  The court's decision dismissing Motorola's request for injunctive relief

4    for the Motorola Asserted Patents logically extends to all of Motorola's H.264 standard

5    essential patents.  This is so because the RAND litigation in this matter involves not only

6    the Motorola Asserted Patents, but all of Motorola's H.264 standard essential patents on a

7    worldwide basis.  Indeed, the basis for the court's dismissal of injunctive relief for the

8    Motorola Asserted Patents is in no way specific to those patents, but instead is the very

9    fact that litigation in this matter has progressed to the point that it is now clear that a

10   license agreement will result for all of Motorola's H.264 standard essential patents.[10]

11   As a result, this court's order not only dismisses injunctive relief for the Motorola

12   Asserted Patents, but also for Motorola's entire H.264 standard essential patent portfolio

13   including the European Patents at issue in the German action.  In short, the dismissal of

14   injunctive relief in this order takes the place of the court's prior anti-suit injunction that

15   enjoined Motorola from enforcing an injunction in the German action.  At this time,

16   having had the opportunity to adjudicate the issues in this matter that were dispositive of

17   the propriety of injunctive relief in the German action, as promised, this court dissolves

18   the anti-suit injunction.

19

20   _____

21   [10] Likewise, it is clear that a license agreement will result between Microsoft and
     Motorola for Motorola's 802.11 standard essential patents.  Thus, the effect of this court's

22   decision would also bar an injunction for the assertion of any Motorola-owned 802.11 standard
     essential patents against Microsoft.

ORDER- 17

1

**IV.    CONCLUSION**

2          Based on the foregoing, the court GRANTS Microsoft's motion for partial

3   summary judgment dismissing without prejudice Motorola's request for injunctive relief

4   for alleged patent infringement (Dkt. ## 139 (sealed), 141 (redacted)).  Additionally, the

5   court hereby dissolves the anti-suit injunction (Dkt. # 318) related to the German action.

6   The anti-suit injunction is deemed no longer necessary in light of this order which enjoins

7   Motorola from seeking injunctive relief against Microsoft with respect to Motorola's

8   H.264 and 802.11 standard essential patent portfolios.

9          Dated this 29th day of November, 2012.

10

11

12          _____
            JAMES L. ROBART
13          United States District Judge

14

15

16

17

18

19

20

21

22

ORDER- 18