HONORABLE JAMES L. ROBART

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION,<br>Plaintiff,<br>v.<br>MOTOROLA INC., et al.,<br>Defendant. | No. C10-1823-JLR |
| MOTOROLA MOBILITY, LLC., et al.,<br>Plaintiffs,<br>v.<br>MICROSOFT CORPORATION,<br>Defendant. | PLAINTIFF MICROSOFT CORPORATION'S POST-TRIAL BRIEF CONCERNING GOOGLE'S AVC PATENT PORTFOLIO LICENSE |

MICROSOFT'S POST-TRIAL BRIEF CONCERNING GOOGLE'S AVC PATENT PORTFOLIO LICENSE

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Pursuant to the Court's request, Microsoft Corporation ("Microsoft") respectfully submits this brief regarding Google's license to the H.264 patent pool administered by MPEG LA (Google's "AVC Patent Portfolio License" or "the Google License").

## I. INTRODUCTION

The Google License is a separate contract that ultimately derails Motorola's excessive H.264 demands. It includes a "grant-back" provision that entitles Microsoft to a worldwide, nonexclusive license to all H.264 essential patents owned by Google and its "Affiliates." Defendants Motorola Mobility LLC and General Instrument Corp. ("Defendants") are Google's Affiliates because they are wholly-owned subsidiaries. The "grant-back" provision in the Google License includes a specified per-patent royalty rate that is, by its terms, "presumed" to be fair and reasonable. Google agreed to these terms on behalf of itself and its Affiliates. Microsoft is therefore entitled to a license of Defendants' H.264 essential patents at the royalty rate specified in the Google License.

Apart from this contract right, the royalty specified in the Google License is compelling evidence of the proper RAND royalty for H.264 essential patents required under Motorola's contract with the ITU. The grant-back royalty terms apply to every licensee of the MPEG LA H.264 patent pool. More than 1100 licensees and 25 licensors have agreed to license the H.264 essential patents in the pool at these royalties. The royalty that Defendants' parent Google has accepted as fair and reasonable has been generally accepted as fair and reasonable within the industry.

## II. FACTUAL BACKGROUND

### A. The MPEG LA AVC/H.264 Patent Pool.

MPEG LA, LLC ("MPEG LA") forms and administers patent pools for standard essential patents. *See* 11/13/12 Tr. Trans. 61:16-62:6, 62:12-20, 123:20-124:11 (Glanz). In the 2003 to 2004 timeframe, MPEG LA and a group of companies owning patents essential to the

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

H.264 standard formed a patent pool to license H.264 essential patents (the "H.264 Patent Pool"). *See* 11/13/12 Tr. Trans. 61:16-62:9, 64:11-66:23, 69:3-21, 93:3-94:19; 94:21-95:24 (Glanz); Exs. 1584, 1625, 1626, 1141, 1636, 103. The H.264 Patent Pool currently includes 275 U.S. patents and over 2400 patents worldwide that an independent expert has determined are essential to the H.264 standard. *See* 11/14/12 Tr. Trans. 112:11-18 (Orchard); Ex. 589; 11/14/12 Tr. Trans. 87:9-16 (Lynde); Ex. 1152; 11/13/12 Tr. Trans 124:12-17 (Glanz). Twenty-six licensors, including leading technology firms such as Apple, Cisco, Sony, Microsoft, LG, Panasonic, and Siemens AG, have contributed patents to the pool. Exs. 589, 1152; 11/16/12 Tr. Trans. 85:18-20, 90:24-91:20 (Lynde).

**B. The Google License and its "Grant-Back" License Obligation.**

A company seeking a license to the patents in the H.264 Patent Pool must execute MPEG LA's standard "AVC Patent Portfolio License" agreement (of which the Google License is a representative example[1]) to become a "Licensee." 11/13/12 Tr. Trans 95:14-24 (Glanz); Ex. 103 at 1. Google is among more than 1100 such Licensees. 11/16/12 Tr. Trans. 85:18-21 (Lynde).

The Google License identifies the Licensors of the pool, each of which has committed "to make available individual licenses . . . under any and all AVC [H.264] essential patents" and has empowered the "Licensing Administrator" (*i.e.*, MPEG LA) to grant such licenses to the Licensee. Ex. 103 at 1-2. Microsoft is a "Licensor" (*id.* at 1, 6 (§1.31)), and as a consequence is an express third-party beneficiary of the agreement. *Id.* at 1, 31(§ 8.17).

The grant-back provision on which this brief focuses requires the Licensee to grant a license to any H.264 essential patents of "Licensee and its Affiliates" to the Licensors:

> **8.3 Licensee Grant.** Upon full execution of this Agreement, Licensee agrees to grant a worldwide, nonexclusive license and/or sublicense (commensurate to

[1] The agreement in the same format is executed by each of the licensees of the MPEG AVC Patent Pool. *See* 11/13/12 Tr. Trans. 95:14-20 (Glanz).

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

> the scope of the licenses which Licensee has selected hereunder) under any and all AVC Essential Patent(s) that Licensee and its Affiliates, if any, have the right to license and/or sublicense, to any Licensor or any sublicensee of the Licensing Administrator desiring such a license and/or sublicense on fair and reasonable terms and conditions. For purposes of this Section 8.3 only, the Licensors' per patent share of royalties which are payable pursuant to Section 3 of this Agreement shall be presumed to be a fair and reasonable royalty rate for the aforementioned license and/or sublicense to be granted by the Licensee.

*Id.* at 26–27 (§ 8.3).[2]

The "scope of the license" to which the grant-back license is to be "commensurate" (*id.* at 26–27 (§ 8.3)) is defined in Section 2.10 of the agreement:

> **Scope of the License Grant.** Notwithstanding anything to the contrary herein, all licenses granted under this Agreement are limited to a field of use to comply with the AVC Standard. No other licenses for any other purpose or use are granted herein nor are any licenses granted to any portion or segment of any product or thing except those portions or segments of such product or thing that comply with the AVC Standard.

*Id.* at 10 (§ 2.10).

Failure to grant a license in accordance with Section 8 is a material breach, and the Section 8.3 obligations survive termination of the agreement. *Id.* at 23 (§ 6.2.3), 24 (§ 6.6.4). The Google License is governed by the law of the State of New York. *Id.* at 30 (§ 8.16).

### C. Google Is a Licensee of the MPEG LA AVC Patent Pool and Defendants Are its Affiliates.

Google became a Licensee of the H.264 Patent Pool in 2005 and remains a Licensee under the Google License today. *See* Ex. 103; Lo. Dep. 30:22-25, 31:4-13, 33:8-22; 11/16/12 Tr. Trans. 94:22-95:13 (Lynde). Defendants are Google's "Affiliates."

The Google License defines "Affiliate" to include any "Legal Entity which now or hereinafter, directly or indirectly, controls, is controlled by or is under common control with Licensee," where "control" includes "ownership of at least 50% of the outstanding shares" of

[2] As an alternative to providing a grant-back license pursuant to Section 8.3, a Licensee can instead join the pool as a Licensor, thereby making their H.264 essential patents available to all Licensees at pool rates. Ex. 103 at 27 (§ 8.4).

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

or "more that 50% of the ownership interest" in the Legal Entity, or "a relationship similar to that." *Id.* at 3, 5 (§§ 1.1, 1.29). Effective May 22, 2012, Motorola Mobility Holdings, Inc. ("MMHI") became a wholly-owned subsidiary of Google. Suppl. Rule 7.1 Discl. Stmnt. of Motorola Mobility, Inc. and General Instrument Corp. [Dkt. 331] at 2; Lo Dep. 48:2-15. Defendant Motorola Mobility, Inc. ("MMI") is a wholly-owned subsidiary of MMHI, and defendant General Instrument Corp. is a wholly-owned subsidiary of MMI. *Id.* Accordingly, Defendants are Google's "Affiliates" under the terms of the Google License.

## III. DISCUSSION

Under Section 8.3 of the Google License, Microsoft is entitled to a license to all of the H.264 essential patents that Google and Defendants (as its Affiliates) have a right to license, and is entitled to such a license at the royalty rate specified in the agreement. Google is not a party to this action, and joining Google at the time Microsoft's right ripened could have created procedural impediments to the prompt resolution of the critical issues in the pending case. But the result is inevitable.

However, apart from the contractual right, the presumed fair and reasonable per-patent royalty that Google and other similarly situated licensees have agreed to accept pursuant to Section 8.3 is powerful evidence of the RAND royalty rate for Defendants' H.264 essential patents.

### A. Microsoft's Contractual Right To License Defendants' H.264 Essential Patents Pursuant to the Terms of the Google License.

Section 8.3 of the Google License unambiguously requires Google and its Affiliates (including Defendants) to grant to Microsoft (and any other interested Licensors[3]) "a

[3] Section 8.3 not only obligates the Licensee to provide a grant-back license to Licensors, but it also provides substantial rights to the Licensee to obtain its own grant-back license from any other licensee of the H.264 Patent Pool. This same Section 8.3 is in the license of every licensee to the pool, and Section 8.3 provides not only that "any Licensor" is entitled to the grant-back license, but also that "any sublicensee of the Licensing Administrator" (*i.e.*, any other licensee of the H.264 Patent Pool) is entitled to a grant-back license. Ex. 103 at 27 (§ 8.3). Moreover, the Google License makes any licensee in full compliance with its contractual obligations an express

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

worldwide, nonexclusive license and/or sublicense . . . under any and all AVC Essential Patent(s) that [Google] and its Affiliates, if any, have the right to license and/or sublicense." Ex. 103 at 26–27, § 8.3. Google must provide this grant-back license "on fair and reasonable terms and conditions," where specifically "the Licensors' per patent share of royalties which are payable pursuant to Section 3 of this Agreement *shall* be presumed to be a fair and reasonable royalty rate for the aforementioned license and/or sublicense to be granted by the Licensee." *Id.* (emphasis added). The presumed royalty rate is a mandatory, not permissive, aspect of the fair and reasonable terms of the grant-back license.[4]

In the face of Google's unambiguous obligation under Section 8.3 to provide a grant-back license, Google's head of IP licensing, Mr. Dailey, was unable to provide any explanation for his contrary "understanding that [the Google License] does not apply to the Motorola patents." 11/20/12 Tr. Trans. (Dailey) 122:18-23. In the parallel litigation before the International Trade Commission, however, Defendants have questioned whether Google's grant-back license obligations apply to Microsoft. But none of these arguments change Google's contractual obligation of which Microsoft is a third party beneficiary. Google must license Defendants' H.264 essential patents to Microsoft at the precise royalty "presumed to be fair and reasonable" under Section 8.3.

For example, Defendants have previously argued that Google's Section 8.3 obligation to license its Affiliates' H.264 essential patents is limited by other provisions of the agreement. In particular, Defendants have claimed that Sections 2.9 and 3.3 somehow limit the Affiliates whose patents are subject to the grant-back provision. Section 2.9 simply prohibits Google

---

"third party beneficiary of the obligations under Section 8.3 of any other licensee." *Id.* at 31 (§ 8.17). Thus, Section 8.3 not only imposes obligations on the Licensee; it provides the Licensee with valuable additional rights.

[4] Under New York law, a presumption may only be overcome by clear and convincing evidence. *See Defiance Milk Products Co. v. DuMond*¸ 309 N.Y. 537, 546, 132 N.E.2d 829, 833 (N.Y. 1956); *Stein v. Doukas*¸ 98 A.D.3d 1026, 1029, 950 N.Y.S.2d 773, 776 (N.Y. App. Div. 2012); *Currie v. McTague*, 83 A.D.3d 1184, 1185, 921 N.Y.S.2d 364, 366 (N.Y. App. Div. 2011).

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

from sublicensing the rights granted to it under the Google License, while noting that "[t]he Licensing Administrator is willing to offer an AVC Patent Portfolio License to any Affiliate of Licensee." *Id.* at 9-10 (§ 2.9). Section 3.3 provides Google with the option to pay for an "Enterprise License"[5] and include any Affiliates under that license by providing the required notice. *Id.* at 15 (§ 3.3). However, neither section purports to change the definition of "Affiliates" or otherwise to excuse any Google Affiliates from the grant-back requirements of Section 8.3.

Defendants' arguments defy the plain language of the agreement. *See Elmira Teachers' Ass'n v. Elmira City School Dist.*, 53 A.D.3d 757, 759, 861 N.Y.S.2d 195, 197 (N.Y. App. Div. 2008) (a contract is to be interpreted in accordance with the plain and ordinary meaning of its terms and intent is determined within the four corners of the agreement). The definition of Affiliate is not limited either to only those Affiliates of a Licensee that execute their own AVC patent Portfolio License (as offered in Section 2.9) or to only those Affiliates of an Enterprise Licensee that the Licensee elects to include under its Enterprise License pursuant to Section 3.3. Instead, the definition of Affiliate includes any and all legal entities under the Licensee's control. Ex. 103 at 9-10 (§ 2.8), 15 (§ 3.3).

Defendants' argument is not even consistent with the language of Section 8.3. If one were to accept Defendants' argument that only an Affiliate that executes its own patent pool license agreement is to be included, then the words "and its Affiliates" within the phrase "Licensee and its Affiliates" in Section 8.3 would be superfluous. Once an Affiliate executes its own patent pool license agreement, it would also become a Licensee in its own right. Licensors could therefore request a grant-back license from the Affiliate directly as a Licensee, thereby rendering the "and its Affiliates" language meaningless.

[5] An "Enterprise License" grants to the Licensee all of the licenses provide under Sections 2.2 (for "Title-by-Title AVC Video"), 2.3 (for "Subscription AVC Video"), 2.4 (for "Free Television AVC Video"), and 2.5 (for "Internet Broadcast AVC Video Use") of the AVC Patent Portfolio License in return for a set yearly royalty payment. *See* Ex. 103 at 5 (§§ 1.24-1.25), 9 (§ 2.7), 14 (§ 3.1.7), 15 (§ 3.3).

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Defendants' argument in reliance upon Section 3.3 is likewise flawed. To accept Defendants' argument, one would need to insert an additional limitation in Section 8.3 similar to the language bracketed in the following: "Licensee agrees to grant a worldwide, nonexclusive license . . . under any and all AVC Essential Patent(s) that Licensee and its Affiliates *[that are designated to be included in the Licensee's Enterprise License pursuant to Section 3.3]*, if any, have the right to license and/or sublicense, to any Licensor . . . ." *See id.* at 26-27 (§ 8.3). The contract contains no such limitation. Moreover, to accept Defendants' argument would write out of the contract altogether a Licensee's obligation to include its Affiliate's H.264 essential patents in the grant-back license unless that Licensee has elected to be an Enterprise Licensee. Thus, the Affiliates of any Licensee that takes a license under either Section 2.1 (for AVC Product(s)), Section 2.7 (for OEM Licensees), or any other specific license grant (Sections 2.2, 2.3, 2.4, or 2.5) (or any combination of the foregoing licenses) would be excluded from that Licensee's Section 8.3 obligations simply because the Licensee is not an Enterprise Licensee eligible to include its Affiliates in its Enterprise License under Section 3.3. That cannot be the meaning of "Licensee and its Affiliates."

Section 8.3 requires that the H.264 essential patents of *all* of Google's "Affiliates" be included in the grant-back license. The reason is obvious: if a licensee like Google could evade its grant-back obligation by placing its patents in a separate IP holding company that has no need to be covered by a pool license, it would render the grant-back obligation a nullity.

Defendants have also previously argued, with little explanation, that the parenthetical in Section 8.3 – "(commensurate to the scope of the licenses which Licensee has selected hereunder)" – precludes Microsoft from obtaining a license to Defendants' H.264 essential patents or limits the type of license available to Microsoft. In making this argument, Defendants have implied that the parenthetical in Section 8.3 should be read to limit the grant-back license to the specific category (or categories) of license(s) actually exercised by Google

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

under Section 2 of the contract. The presumptive implication of this argument is, for example, that if Google takes an "AVC Product(s)" license under Section 2.1 (a license that, in general, covers the sale of products containing an H.264 encoder, decoder, or codec that is *not* incorporated into a computer operating system), but not an "OEM Licensee" license under Section 2.6 (a license that, in general, covers the sale of products containing an H.264 encoder, decoder, or codec that is incorporated into a computer operating system), then any grant-back license obligation Google has under Section 8.3 is limited to providing a license covering rights similar to those granted under Section 2.1, and does not extend to a grant of rights similar to those provided under Section 2.6.

This argument is inconsistent with other provisions of the agreement. It ignores the contract's definition of "scope of the license," which has nothing to do with the limitation Defendants attempt to impose on Google's Section 8.3 grant-back obligations. Specifically, Section 2.10 of the Google License states:

> **Scope of the License Grant.** Notwithstanding anything to the contrary herein, all licenses granted under this Agreement are limited to a field of use to comply with the AVC Standard. No other licenses for any other purpose or use are granted herein nor are any licenses granted to any portion of segment of any product or thing except those portions or segments of such product or thing that comply with the AVC Standard.

Thus, in accordance with the definition of "scope of the license," "commensurate to the scope of the licenses which Licensee has selected hereunder" means that the grant-back license is to be of similar "scope" as the license(s) provided to Google – in other words "limited to a field of use to comply with the AVC Standard."

Nevertheless, even if Defendants' interpretation of the parenthetical in Section 8.3 were correct, Microsoft would still be entitled to a grant-back license from Google. Google is licensed both under Section 2.1 (covering "AVC Product(s)") and under Section 2.6 (the "OEM License"). Ex. 107 ("Addressing Chrome OS [operating system] . . . . As you



LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

confirmed . . . Google is licensed . . . as a: 1. AVC licensor of codec . . . per Section 2.1 of the agreement and 2. OEM licensor of codec for consumer per Section 2.6 of the agreement."); Lo Dep. 118:4-119:3, 121:10-122:17. These licenses are commensurate to the types of license grants Microsoft would take from Google, covering hardware products with an H.264 codec (*e.g.*, the Xbox gaming console) and operating system software like Windows. Thus, even if Section 8.3 were to be read to limit Microsoft to the general categories of licenses actually elected by Google under Section 2 of the agreement, Google would still be obligated to provide Microsoft with the grant-back license that it seeks.

**B. The Grant-Back License In All Events Provides Compelling Evidence of the Appropriate RAND Royalty.**

For procedural reasons and in light of the importance of a timely resolution of the issues pending in this case, Microsoft has not yet sought to take the steps necessary to enforce against Google its rights to a grant-back license, which would at a minimum have created a distraction from the key issue for trial in November and could potentially have delayed that trial. But, wholly apart from Microsoft's contract right to license Defendants' H.264 Essential Patents under the Google License, that license is compelling, if not conclusive, evidence of the appropriate RAND royalty to be applied to Defendants' H.264 essential patents. In accordance with Section 8.3, the parties agreed that "the Licensors' per patent share of royalties which are payable pursuant to Section 3 of this Agreement shall be *presumed to be a fair and reasonable royalty rate*." Ex. 103 at 26–27 (§ 8.3) (emphasis added). This is the royalty accepted as fair and reasonable by not only Defendants' parent company, Google, but also over 1100 other licensees of the H.264 Patent Pool, each a market participant in its own voluntary transaction specifically concerning H.264 essential patents (and only H.264 essential patents). Moreover, it is the royalty accepted as fair and reasonable by the more than 25 Licensors, each of which is an independently verified owner of H.264 essential patents. Thus, the presumed fair and reasonable royalty mandated by Section 8.3 has received wide acceptance by numerous and

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

varied market participants. Calculations using that royalty were provided by Dr. Lynde at trial and can be readily calculated each year as provided under the governing agreement. 11/16/12 Tr. Trans. 103:19-104:4 (Lynde).

DATED this 14th day of December, 2012.

CALFO HARRIGAN LEYH & EAKES LLP

By s/Arthur W. Harrigan, Jr.
Arthur W. Harrigan, Jr., WSBA #1751
By s/Christopher Wion
Christopher Wion, WSBA #33207
By s/Shane P. Cramer
Shane P. Cramer, WSBA #35099
999 Third Avenue, Suite 4400
Seattle, WA 98104
Phone: 206-623-1700
Fax: 206-623-8717

By s/ T. Andrew Culbert
T. Andrew Culbert
David E. Killough
MICROSOFT CORPORATION
1 Microsoft Way
Redmond, WA 98052
Phone: 425-882-8080
Fax: 425-869-1327

David T. Pritikin
Richard A. Cederoth
Constantine L. Trela, Jr.
William H. Baumgartner, Jr.
Ellen S. Robbins
Douglas I. Lewis
David C. Giardina
John W. McBride
Nathaniel C. Love

SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Phone: 312-853-7000
Fax: 312-853-7036

MICROSOFT'S POST-TRIAL BRIEF
CONCERNING GOOGLE'S AVC PATENT
PORTFOLIO LICENSE - 10

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Carter G. Phillips
Brian R. Nester

SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
Telephone: 202-736-8000
Fax: 202-736-8711

Counsel for Microsoft Corp.

MICROSOFT'S POST-TRIAL BRIEF
CONCERNING GOOGLE'S AVC PATENT
PORTFOLIO LICENSE - 11

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

## CERTIFICATE OF SERVICE

I, Linda Bledsoe, swear under penalty of perjury under the laws of the State of Washington to the following:

1. I am over the age of 21 and not a party to this action.

2. On the 14th day of December, 2012, I caused the preceding document to be served on counsel of record in the following manner:

**<u>Attorneys for Motorola Solutions, Inc., and Motorola Mobility, Inc.:</u>**

| | |
|---|---|
| Ralph Palumbo, WSBA #04751<br>Philip S. McCune, WSBA #21081<br>Lynn M. Engel, WSBA #21934<br>Summit Law Group<br>315 Fifth Ave. South, Suite 1000<br>Seattle, WA 98104-2682<br>Telephone: 206-676-7000<br>Email: Summit1823@summitlaw.com | ______ Messenger<br>_______ US Mail<br>_______ Facsimile<br>__X___ ECF |
| Steven Pepe (*pro hac vice*)<br>Jesse J. Jenner (*pro hac vice*)<br>Ropes & Gray LLP<br>1211 Avenue of the Americas<br>New York, NY 10036-8704<br>Telephone: (212) 596-9046<br>Email: steven.pepe@ropesgray.com<br>Email: jesse.jenner@ropesgray.com | ______ Messenger<br>_______ US Mail<br>_______ Facsimile<br>__X___ ECF |
| Norman H. Beamer (*pro hac vice*)<br>Ropes & Gray LLP<br>1900 University Avenue, 6th Floor<br>East Palo Alto, CA 94303-2284<br>Telephone: (650) 617-4030<br>Email: norman.beamer@ropesgray.com | _______ Messenger<br>_______ US Mail<br>_______ Facsimile<br>__X___ ECF |

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Paul M. Schoenhard (*pro hac vice*)
Ropes & Gray LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC 20005-3948
Telephone: (202) 508-4693
Email: Paul.schoenhard@ropesgray.com

_______ Messenger
_______ US Mail
_______ Facsimile
___X___ ECF

DATED this 14th day of December, 2012.

s/ Linda Bledsoe
LINDA BLEDSOE

MICROSOFT'S POST-TRIAL BRIEF CONCERNING GOOGLE'S AVC PATENT PORTFOLIO LICENSE - 13

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717