THE HONORABLE JAMES L. ROBART

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>      Plaintiff,<br><br> vs.<br><br>MOTOROLA, INC., et al.,<br><br>      Defendants.<br>_____<br>MOTOROLA MOBILITY LLC, et al.,<br><br>      Plaintiffs,<br><br> vs.<br><br>MICROSOFT CORPORATION,<br><br>      Defendants. | Case No. C10-1823-JLR<br><br>MICROSOFT'S SUBMITTAL OF EXTRINSIC EVIDENCE RE THE MPEG LA – GOOGLE LICENSE<br><br>**HEARING DATE:**<br>**Monday, January 28, 2012 at 1:30pm** |

MICROSOFT'S SUBMITTAL OF EXTRINSIC
EVIDENCE RE GOOGLE LICENSE

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. FACTUAL BACKGROUND ................................................................................1

    A. Sections 8.3 and 1.1 of the Google License .............................................1

    B. Consensus-Driven Origin of Grant-Back Provision in H.264 License .................2

    C. Licensors Incorporating the Grant-Back into the H.264 License Also Agreed to Update the Original MPEG-4 License to Include a Parallel "Affiliates" Clause ..................................................5

    D. MPEG LA Issues the Google License ......................................................5

III. LEGAL STANDARD ............................................................................................6

    A. New York Law Allows Consideration of Extrinsic Evidence to Interpret Ambiguous Contract Terms ..................................................6

    B. Types of Extrinsic Evidence Admissible under New York Law ...........7

IV. ARGUMENT & ANALYSIS .................................................................................7

    A. The Grant-Back Provision Is Not Ambiguous ........................................8

    B. The Extrinsic Evidence Confirms that the Plain Reading of the Google License Is the Correct Reading ...................................................8

V. CONCLUSION .....................................................................................................10

MICROSOFT'S SUBMITTAL OF EXTRINSIC
EVIDENCE RE GOOGLE LICENSE - i

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

## I.  INTRODUCTION

By Order dated December 31, 2012, the Court requested submission of any extrinsic evidence clarifying the purpose and intent of the grant-back provision in the AVC/H.264 patent pool license that MPEG LA, LLC issued to Google in 2005 – the "Google License."

The attached Declaration of Lawrence A. Horn, MPEG LA's President and CEO (the "Horn Decl."), explains the background leading to the grant-back provision in MPEG LA's AVC/H.264 License, including discussions regarding why the provision was drafted to cover a Licensee's "Affiliates," and provides emails circulated among the entities involved in the formation of the MPEG LA AVC/H.264 pool (including Motorola at that time) that address the intended scope and purpose of the grant-back provision.  The Horn Declaration also describes a contemporaneous modification of the separate MPEG-4 Visual pool agreements to incorporate a grant-back provision parallel to that adopted for the MPEG LA AVC/H.264 pool (a change accepted by Motorola), and provides a sample email exchange that correspondingly addresses the intended scope and purpose of the addition of the "Affiliates" clause to the MPEG-4 grant-back provision.

This extrinsic evidence fully corroborates the plain meaning and consequence of the contract language.  As a Google "Affiliate," Motorola is bound by the grant-back provision with the result that Microsoft is entitled to license Motorola's H.264 standard essential patents at pool rates, for a total payment of approximately $167,000 per year.[1]

## II.  FACTUAL BACKGROUND

**A.    Sections 8.3 and 1.1 of the Google License.**

The Google License consists of MPEG LA's standard form AVC/H.264 Patent Portfolio License Agreement (the "H.264 License"), which has been available to licensees

---

[1] Additional evidentiary support and analysis explaining this result can be found at pages 80-81 of Microsoft's Post-Trial Proposed Findings of Fact and Conclusions of Law (Dkt. No. 621), including Trial Exhibit 1163 and the associated testimony of Dr. Matthew Lynde.

MICROSOFT'S SUBMITTAL OF EXTRINSIC
EVIDENCE RE GOOGLE LICENSE - 1

since July 2004.  Horn Decl., ¶ 6; Ex. 1 (the Google License).[2]  It includes the following grant-back provision that, by its terms, applies to *all* of Google's "Affiliates" as defined in the License:

> **8.3  Licensee Grant.**  Upon full execution of this Agreement, Licensee agrees to grant a worldwide, nonexclusive license and/or sublicense (commensurate to the scope of the licenses which Licensee has selected hereunder) under any and all AVC Essential Patent(s) that Licensee <u>*and its Affiliates, if any,*</u> have the right to license and/or sublicense, to any Licensor or any sublicensee of the Licensing Administrator desiring such a license and/or sublicense on fair and reasonable terms and conditions.  For purposes of this Section 8.3 only, the Licensors' per patent share of royalties which are payable pursuant to Article 3 of this Agreement shall be presumed to be a fair and reasonable royalty rate for the aforementioned license and/or sublicense to be granted by the Licensee.

Horn Decl., ¶ 7, Ex. 1 (underlining and italics added).  Under Section 1.1, an "Affiliate" includes any entity "now or hereinafter" controlled by the Licensee:

> **1.1  Affiliate** - Shall mean a Legal Entity which now or hereinafter, directly or indirectly, controls, is controlled by or is under common control with Licensee.  The term "control" as used in this Section 1.1 shall mean (a) ownership of more than 50% of the outstanding shares representing the right to vote for directors or other managing officers of Licensee or such Legal Entity; or for Licensee or a Legal Entity which does not have outstanding shares, of more than 50% of the ownership interest representing the right to make decisions for Licensee or such Legal Entity; or (b) a relationship similar to that described in Subsection 1.1(a) deemed by the Licensing Administrator in its sole discretion to represent "control."  An entity shall be deemed an Affiliate only so long as such "control" exists.

*Id*., ¶ 9.

**B.     Consensus-Driven Origin of Grant-Back Provision in H.264 License.**

Section 8.3 of the H.264 License was modeled on Section 8.3 of a then-existing license agreement for an earlier video compression standard – MPEG LA's original MPEG-4 Visual Patent Portfolio License (the "MPEG-4 License"); Section 8.3 of the H.264 License, however, differed from the parallel provision in the MPEG-4 License in operation at that time by its

---

[2] Exhibits 1- 6 cited herein are attached to the Horn Declaration.

MICROSOFT'S SUBMITTAL OF EXTRINSIC
EVIDENCE RE GOOGLE LICENSE - 2

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

inclusion of the phrase "and its Affiliates, if any," underlined and italicized above.  *See* Horn Decl., ¶ 8; Ex. 2 (2002 MPEG-4 License).

Participants in the MPEG LA AVC/H.264 pool formation process included Licensors, many of which (such as Microsoft and Motorola) were also potential Licensees.  *Id*., ¶¶ 4, 11.  These participants developed the grant-back provision and other terms under MPEG LA's guidance, culminating in final agreements in Spring 2004.  *Id*., ¶ 12.  Elements of these discussions relating to the grant-back provision are reflected in email exchanges from Spring 2004.

In connection with the MPEG LA AVC/H.264 pool discussions in March 2004, Sony initially opposed adoption of the "Affiliates" language, writing:

> Article 8.3:  the proposed change is unacceptable to Sony.  We believe the change is unnecessary and inconsistent with other provisions (such as 8.4).

Ex. 3 (at 52424).

In response, Mr. Horn explained that the "and its Affiliates, if any" clause was necessary as a matter of fairness:

> It is in the interest of fairness both to other Licensees as well as Licensors because it assures that an affiliate of a Licensee that owns an essential patent cannot decline to license the essential patent on fair and reasonable terms.

*Id*. (at 52423).

Sony remained concerned that the proposed language might drive away some potential licensees,[3] but withdrew its opposition, recognizing that the provision "is for the interest of both Licensors and Licensees."  *Id*.

In April 2004, Sony then noted that the definition of "Affiliates" in the separate, but closely related, "Agreement Among Licensors"[4] for the AVC/H.264 pool was inconsistent

---

[3] Sony's fears appear to have been unfounded, as more than 1,500 licensees – including Google – have executed licenses with the expanded grant-back provision.  Horn Decl., ¶ 5.

[4] MPEG LA uses three separate agreements in connection with the AVC/H.264 pool:  the H.264 License, the Agreement Among Licensors Regarding the AVC Standard, and the Licensing Administrator Agreement

MICROSOFT'S SUBMITTAL OF EXTRINSIC
EVIDENCE RE GOOGLE LICENSE - 3

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

with the definition in the H.264 License.  Horn Decl., ¶ 12, Ex. 4.  Sony suggested that "Affiliates" either be removed from the license agreement or be defined consistently across all relevant agreements:

> Our preference would be to drop Affiliates completely from the AVC license, in accordance with the scope of the MPEG4 Video license.  If there is a consensus against this, however, we must change the definition of Affiliates to be "more than 50%."

*Id*. (at 52645).

Mr. Horn recommended keeping the "Affiliates" clauses, agreed that the definitions should be consistent across the AVC/H.264 agreements (Horn Decl., ¶ 16; Ex. 4), and clarified that the grant back provision would apply to *all* "Affiliates" as defined (including any that met the "more than 50%" ownership criterion):

> Good catch.  The inconsistency between the Agreement Among Licensors and the AVC License was an oversight.  We propose retaining a definition of "Affiliates" in the Agreement Among Licensors but changing the definition to be "more than 50%" (your second option).  This also will be consistent with the definition of "Affiliates" in Section 1.1 of the AVC License (already defined as "more than 50%") yet still retain the Licensing Administrator's discretion in Section 1.1 (as previously discussed) to allow the Licensing Administrator to include as Affiliates (for purposes of the Enterprise Cap) legal entities over whom a licensee has control even though not greater than 50%.  As you will recall, the latter change was incorporated into the MPEG-4 Visual License to accommodate multinational mobile providers who have less than majority control over local carriers in certain countries; and it is equally important here. **But, <u>the grant back obligations of a Licensee would apply in the normal course only to a "more than 50%" Affiliate</u> (not to a "50% or more" Affiliate and not to a less than 50% Affiliate).**

*Id.*, Ex. 4 (at 52645) (emphasis added).

All of the emails quoted above were circulated among the members of the "AVCGroup," which included representatives from Motorola at that time.  Horn Decl., ¶ 12.[5]

---

Regarding the AVC Standard.  *See* Microsoft's Post-Trial Proposed Findings of Fact and Conclusions of Law (Dkt. No. 621), ¶ 373 and Trial Exhibits 1141, 1636 and 3087 cited therein.

[5] At trial, Microsoft's representative at the MPEG LA patent pool discussions, Garrett Glanz, testified that "the AVC group … was the e-mail list that included all of the participants in the H.264 licensing discussions, including Microsoft, including Motorola."  11/13/12 Tr. Transcript, p. 89.

MICROSOFT'S SUBMITTAL OF EXTRINSIC
EVIDENCE RE GOOGLE LICENSE - 4

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

**C.     Licensors Incorporating the Grant-Back into the H.264 License Also Agreed to Update the Original MPEG-4 License to Include a Parallel "Affiliates" Clause.**

The first H.264 Licenses were issued in July 2004. *Id.*, ¶ 19. In this same time frame, the MPEG-4 Licensors (many of whom were also existing Licensees) were debating whether to update the grant-back provision in the original MPEG-4 License by adding an "Affiliates" clause parallel to that in the H.264 License. *Id.*, ¶ 19. Toshiba and Fujitsu initially expressed reservations about the proposed change,[6] prompting the following explanation from Mr. Horn:

> "Licensee or its Affiliates" is standard in the grant-back clauses of MPEG LA's MPEG-2, 1394, DVB-T and AVC Patent Portfolio Licenses (in the AVC License, Licensees also do not have the right to extend sublicenses to Affiliates). **The purpose of this language is to prevent a Licensee from avoiding its grant back obligations through its affiliates (who then have the opportunity to hold licensees and licensors hostage to their essential patent claims for failure of the grant-back clause to apply to them) while the Licensee takes advantage of a license under all of the Licensors' essential patents.** We believe this is a matter of fairness, and it has caused no problem in other licenses. Therefore the suggestion was made to revisit this issue here, and we recommend including this language because it is in the interest of all Licensors and Licensees to do so.

Ex. 5 (57809-10) (emphasis added).

The proposed changes to Section 8.3 and Section 1.1 of the original MPEG-4 License were subsequently adopted, resulting in updated provisions virtually identical to their counterparts in the H.264 License. *Id.*, ¶ 22; Ex. 6 (at 90524 and 90546). In August 2005, General Instrument executed the updated MPEG-4 License with the new "Affiliates" provisions (Ex. 6), replacing the original version of the MPEG-4 License (without that language) that it had signed in 2002 (Ex. 2).

**D.     MPEG LA Issues the Google License.**

MPEG LA issued the Google License in January 2005. Ex. 1. Like all other MPEG LA H.264 Licenses, its grant-back provision contains the "Affiliates" language developed as a

---

[6] Toshiba wrote that "the words 'or its Affiliates' in the Section 8.3 should be deleted" and Fujitsu asked that the definition of Affiliates be revised (to be consistent with the definition in the H.264 License). Horn Decl., Ex. 5 (at 57808 and 57810).

MICROSOFT'S SUBMITTAL OF EXTRINSIC
EVIDENCE RE GOOGLE LICENSE - 5

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

result of the group discussions described above, and intended to serve the purposes memorialized in the associated emails.  Horn Decl., ¶¶ 17, 18, 24.

### III.  LEGAL STANDARD

**A.   New York Law Allows Consideration of Extrinsic Evidence to Interpret Ambiguous Contract Terms.**

The Google License includes a New York choice of law provision.  Ex. 1, § 8.16, p. 30.  New York follows a version of the parol evidence rule under which extrinsic evidence is permitted only when a contract is ambiguous.  *Garza v. Marine Transport Lines, Inc.*, 861 F.2d 23, 26–27 (2d Cir. 1988).  The existence of ambiguity is a question of law.  *W.W.W. Assoc., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990).  A contract provision is ambiguous only if it is "capable of more than one meaning."  *Sayers v. Rochester Telephone Corp.*, 7 F.3d 1091, 1095 (2d Cir. 1993); s*ee also Kreiss v. McCown De Leeuw & Co.*, 131 F. Supp. 2d 428, 436 (S.D.N.Y. 2001) ("[A] contract is only ambiguous if it is susceptible to two equally plausible interpretations").  Extrinsic evidence "is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face."  *W.W.W. Assoc.*, 566 N.E.2d at 642, quoting *Intercontinental Planning v. Daystrom, Inc.*, 248 N.E.2d 576, 579 (N.Y. 1969).

An unambiguous contract must be interpreted as written.  *See, e.g., Mergent Services v. Nova Information Systems, Inc.,* 249 Fed. Appx. 251, 252 (2d Cir. 2007) ("When the plain meaning of the contract is clear, we do not consider extrinsic evidence and we enforce the parties' agreement as written.") (citation omitted); *Seabury Const. Corp. v. Jeffrey Chain Corp.*, 289 F.3d 63, 68 (2d Cir. 2002) ("Where the contract is unambiguous, courts must effectuate its plain language.").

MICROSOFT'S SUBMITTAL OF EXTRINSIC EVIDENCE RE GOOGLE LICENSE - 6

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

**B.     Types of Extrinsic Evidence Admissible under New York Law.**

If necessary to resolve an ambiguity, New York courts will consider the "acts and circumstances surrounding execution of the ambiguous term to ascertain the parties' intent." *Roberts v. Consolidated Rail Corp.*, 893 F.2d 21, 24 (2d Cir. 1989).  This may include "evidence of conversations, negotiations and agreements made prior to or contemporaneous with the execution of a [contract]." *67 Wall St. Co. v. Franklin Nat. Bank*, 333 N.E.2d 184, 186–87 (N.Y. 1975).  "The parties' interpretation of the contract in practice, prior to litigation, is compelling evidence of the parties' intent." *Ocean Transport Line. Inc. v. Am. Philippine Fiber Indus., Inc.*, 743 F.2d 85, 91 (2d Cir. 1984).

In *Northwestern Mutual Life Ins. Co. v. Uniondale Realty Assoc.*, 816 N.Y.S. 2d 831, 837 (N.Y. S.Ct. 2006), the court enforced a prepayment penalty "evasion clause" in a loan agreement as written, noting that "[i]nterpretation of an unambiguous contract provision 'is a function for the court'."  However, while the court did not expressly rely on any extrinsic evidence, it noted that the surrounding context was instructive and clearly *supported* the plain reading of the provision:

> This meaning is clear when the language is examined in light of the historical development of prepayment maintenance clauses, and particularly yield maintenance clauses.  A review of the history of commercial prepayment clauses and the recent origins of yield maintenance provisions is essential to understanding of the purpose and context of the wording of the subject clause.

*Id*., at 834.

## IV.  ARGUMENT & ANALYSIS

Defendants' claimed H.264 standard essential patents ("SEPs") are subject to the grant-back provision under a plain reading of the Google License.  The relevant extrinsic evidence confirms this plain reading.  Motorola, however, advances a position that Microsoft believes is contrary to the plain language.  To the extent Motorola's arguments are given any weight by

MICROSOFT'S SUBMITTAL OF EXTRINSIC
EVIDENCE RE GOOGLE LICENSE - 7

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

the Court, it is appropriate for the Court to consider Microsoft's submission of extrinsic evidence in evaluating the strength of those arguments.

A.   **The Grant-Back Provision Is Not Ambiguous.**

The grant-back provision of the Google License <u>is unambiguous</u> and requires Defendants to license their H.264 patents, presumptively at pool rates. It must be interpreted as written. Defendants are Google's "Affiliates" because they are wholly-owned subsidiaries.[7] The definition of "Affiliates" contains no qualifications other than the requirement of control (including any case of "more than 50%" ownership). The "Affiliates" language in Section 8.3, as a matter of plain English, therefore includes Defendants, requires their H.264 SEPs to be made available on fair and reasonable terms, and subjects them to the Section 8.3 provision that the pool rates are "presumed to be a fair and reasonable royalty rate."

B.   **The Extrinsic Evidence Confirms that the Plain Reading of the Google License Is the Correct Reading.**

Even if the Court were to find any portion of the grant-back provision ambiguous, the only available extrinsic evidence is entirely consistent with the plain meaning of the contract. The relevant extrinsic evidence outlined above in Section II – "conversations, negotiations and agreements made prior to or contemporaneous with the execution" of the H.264 License (*67 Wall St. Co.*, 333 N.E.2d at 186–87) – demonstrates that the participants engaged in forming the MPEG LA AVC/H.264 pool and developing the pool's standard license terms (including Motorola/General Instrument until their withdrawal on the eve of contract execution) devoted specific attention to the grant-back provision. They purposely adopted the "Affiliates" language now at issue after group discussions that expressly laid out the purpose as reflected in the plain meaning of the language used in the agreement. Many of the same Licensors also

---

[7] *See* Microsoft's Post-Trial Proposed Findings of Fact and Conclusions of Law (Dkt. No. 621), ¶¶ 4-6.

MICROSOFT'S SUBMITTAL OF EXTRINSIC
EVIDENCE RE GOOGLE LICENSE - 8

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

agreed thereafter to conform the grant-back provision of the predecessor MPEG-4 License.[8]  In 2005, General Instrument executed the updated MPEG-4 License with the expanded "Affiliates" coverage, knowing that the new grant-back provision meant what it said.  Ex. 6.

The "Affiliates" language in Section 8.3 of both the H.264 License and the MPEG-4 License addresses a single concern (Horn Decl., ¶ 18):  to clarify that the obligation to license standard essential patents on pool terms extended both to a *Licensee* and to its *Affiliates* – *e.g.*, to entities that the Licensee controls.  *Id.*, ¶¶ 18, 20.  This requirement assured that a Licensee could not avoid its grant-back obligations by holding patents indirectly (for example, in a subsidiary), as explained in Mr. Horn's July 2004 email quoted above.  *Id.*, ¶ 18; Ex. 5.  Nor are patents acquired after execution of the agreement exempt from the grant-back obligation.  Mr. Horn has explained that the words "now or hereinafter" in Section 1.1 of the H.264 License ensure that SEP-owning entities over which the Licensee acquires control after executing the license agreement are also treated as Affiliates.  *Id.*, ¶ 10.  This provision parallels the *Licensors'* obligation to make later-acquired SEPs available at pool rates:

> Each [Licensor] shall grant to MPEG LA … a worldwide, nonexclusive, non-transferable license or sublicense under all AVC Essential Patent(s) <u>which the [Licensor] and its Affiliates presently or in the future, has the right to license or sublicense</u> …, with a right of the Licensing Administrator to grant sublicenses which are identical in form to the sublicense in Attachment 1 hereto.

Trial Ex. 1141 (Agreement Among Licensors Regarding the AVC Standard), § 2.3 (emphasis added).  Thus, Licensors and Licensees have a reciprocal obligation to license their after-acquired patents at pool rates – regardless of whether those patents are held directly, or through Affiliates.

As part of his responsibilities at MPEG LA, Mr. Horn has administered and helped to market MPEG LA's pools, including discussing the scope and meaning of various standard

---

[8] Comparison of the first page of the Google License (Ex. 1) and the two MPEG-4 Licenses (Exs. 2, 6) reveals a substantial overlap among the Licensors to the two patent pools.

MICROSOFT'S SUBMITTAL OF EXTRINSIC
EVIDENCE RE GOOGLE LICENSE - 9

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

license terms with potential licensees.  *Id*., ¶ 23.  Potential licensees have raised questions about operation of the "Affiliates" clause.  *Id*.  Mr. Horn has consistently explained that it applies to the SEPs of both the Licensee and all Affiliates (as defined) without exception.  *Id*.  As a matter of policy, and to ensure the delivery of consistent information on this topic, other MPEG LA personnel also provide the same response when fielding similar inquiries.  *Id*.  While Motorola has suggested that the grant-back provision applies only to *some* Affiliates – for example, those who are expressly included under the Licensee's "Enterprise License" – Mr. Horn confirms that no such limitation exists.  *Id*., ¶ 18.

### V.  CONCLUSION

The plain language of the Google License is confirmed by the contemporaneous documentary evidence discussed above, as explained by Mr. Horn:  the grant-back provision of the Google License provides Microsoft with the right to license any H.264 SEPs held by Google, Motorola Mobility LLC, or General Instrument Corporation, all on the terms in Section 8.3.  *Id*., ¶ 24.  This application of Section 8.3 reflects the agreed and intended purpose of the "Affiliates" language.  *Id*.

DATED this 23rd day of January, 2013.

CALFO HARRIGAN LEYH & EAKES LLP

By   s/Arthur W. Harrigan, Jr.
     Arthur W. Harrigan, Jr., WSBA #1751

By   s/Christopher Wion
     Christopher Wion, WSBA #33207

By   s/Shane P. Cramer
     Shane P. Cramer, WSBA #35099
     999 Third Avenue, Suite 4400
     Seattle, WA  98104
     Phone:  206-623-1700
     arthurh@calfoharrigan.com
     chrisw@calfoharrigan.com
     shanec@calfoharrigan.com

MICROSOFT'S SUBMITTAL OF EXTRINSIC
EVIDENCE RE GOOGLE LICENSE - 10

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

By   <u>s/T. Andrew Culbert</u>
      T. Andrew Culbert

By   <u>s/David E. Killough</u>
      David E. Killough

MICROSOFT CORPORATION
1 Microsoft Way
Redmond, WA 98052
Phone: 425-882-8080
Fax: 425-869-1327

David T. Pritikin
Richard A. Cederoth
Constantine L. Trela, Jr.
William H. Baumgartner, Jr.
Ellen S. Robbins
Douglas I. Lewis
David C. Giardina
John W. McBride
David Greenfield

SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Phone: 312-853-7000
Fax: 312-853-7036

Carter G. Phillips
Brian R. Nester

SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
Telephone: 202-736-8000
Fax: 202-736-8711

Counsel for Microsoft Corp.

MICROSOFT'S SUBMITTAL OF EXTRINSIC
EVIDENCE RE GOOGLE LICENSE - 11

## CERTIFICATE OF SERVICE

I, SUSIE CLIFFORD, swear under penalty of perjury under the laws of the State of Washington to the following:

1. I am over the age of 21 and not a party to this action.

2. On the 23rd day of January, 2013, I caused the preceding document to be served on counsel of record in the following manner:

**Attorneys for Motorola Solutions, Inc., and Motorola Mobility, Inc.:**

| | |
|---|---|
| Ralph Palumbo, WSBA #04751 | _____ Messenger |
| Philip S. McCune, WSBA #21081 | _____ US Mail |
| Lynn M. Engel, WSBA #21934 | _____ Facsimile |
| Summit Law Group | __X__ ECF |
| 315 Fifth Ave. South, Suite 1000 | |
| Seattle, WA  98104-2682 | |
| Telephone:  206-676-7000 | |
| Email:  Summit1823@summitlaw.com | |

| | |
|---|---|
| Steven Pepe (*pro hac vice*) | _____ Messenger |
| Jesse J. Jenner (*pro hac vice*) | _____ US Mail |
| Ropes & Gray LLP | _____ Facsimile |
| 1211 Avenue of the Americas | __X__ ECF |
| New York, NY  10036-8704 | |
| Telephone:  (212) 596-9046 | |
| Email:  steven.pepe@ropesgray.com | |
| Email:  jesse.jenner@ropesgray.com | |

| | |
|---|---|
| Norman H. Beamer (*pro hac vice*) | _____ Messenger |
| Ropes & Gray LLP | _____ US Mail |
| 1900 University Avenue, 6th Floor | _____ Facsimile |
| East Palo Alto, CA  94303-2284 | __X__ ECF |
| Telephone:  (650) 617-4030 | |
| Email:  norman.beamer@ropesgray.com | |

MICROSOFT'S SUBMITTAL OF EXTRINSIC
EVIDENCE RE GOOGLE LICENSE - 12

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

| | |
|---|---|
| Paul M. Schoenhard (*pro hac vice*) | _____ Messenger |
| Ropes & Gray LLP | _____ US Mail |
| One Metro Center | _____ Facsimile |
| 700 12th Street NW, Suite 900 | __X__ ECF |
| Washington, DC  20005-3948 | |
| Telephone:  (202) 508-4693 | |
| Email: Paul.schoenhard@ropesgray.com | |

DATED this 23rd day of January, 2013.

                                         s/Susie Clifford
                                         SUSIE CLIFFORD

MICROSOFT'S SUBMITTAL OF EXTRINSIC
EVIDENCE RE GOOGLE LICENSE - 13

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717