The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>MOTOROLA, INC., MOTOROLA MOBILITY LLC, and GENERAL INSTRUMENT CORPORATION,<br><br>Defendants. | CASE NO. C10-1823-JLR<br><br>DEFENDANTS' BRIEF REGARDING EXTRINSIC EVIDENCE RELEVANT TO THE GOOGLE-MPEG LA LICENSE<br><br>**HEARING DATE:**<br>**Monday, January 28, 2013 at 1:30 p.m.** |

DEFENDANTS' BRIEF REGARDING EXTRINSIC EVIDENCE
RELEVANT TO THE GOOGLE-MPEG LA LICENSE
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .......................................................................................................... 1

II. THE LEGAL STANDARD CONCERNING THE USE OF EXTRINSIC EVIDENCE TO INTERPRET THE AVC AGREEMENT ............................................. 1

III. THE EXTRINSIC EVIDENCE IS SPARSE AND AMBIGUOUS .................................. 3

IV. THE ANTICIPATED DECLARATION FROM MPEG LA ............................................ 8

V. CONCLUSION ............................................................................................................... 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

DEFENDANTS' BRIEF REGARDING EXTRINSIC EVIDENCE
RELEVANT TO THE GOOGLE-MPEG LA LICENSE - i
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*67 Wall St. Co. v. Franklin Nat'l Bank*,
    37 N.Y.2d 245 (N.Y. 1975) ....................................................................................................2

*Albany Savings Bank, FSB v. Halpin*,
    117 F.3d 669 (2d Cir. 1997)..........................................................................................2, 9, 10

*Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's,
    London, England*,
    136 F.3d 82 (2d Cir. 1998)..................................................................................................1, 2

*Blake v. Biscardi*,
    62 A.D.2d 975 (N.Y. 1978) .....................................................................................................3

*Borrelli v. Chamberlain*,
    802 N.Y.S.2d 809 (N.Y. App. Div 2005) ................................................................................2

*Coliseum Towers Assoc. v County of Nassau*,
    769 N.Y.S.2d 293 (N.Y. App. Div. 2003) ...............................................................................6

*Consolidated Edison Co. of New York v. N.L.R.B.*,
    305 U.S. 197 (1938).................................................................................................................9

*Finkle and Ross v. A.G. Becker Paribas, Inc.*,
    622 F. Supp. 1505 (S.D.N.Y. 1985).........................................................................................3

*Flagg v. Yonkers Sav. and Loan Ass'n, FA*,
    307 F. Supp. 2d 565 (S.D.N.Y. 2004)......................................................................................3

*Flow Control Indus. v. AMHI, Inc.*,
    278 F. Supp. 2d 1193 (W.D. Wash. 2003) ..............................................................................8

*Grattan v. Societa Per Azzioni Cotonificio Cantoni*,
    151 N.Y.S.2d 875 (N.Y. Sup. Ct. 1956) ..................................................................................9

*IBJ Schroder Bank & Trust Co. v. Resolution Trust Corp.*,
    26 F.3d 370 (2d Cir. 1994).......................................................................................................6

*Italian Designer Import Outlet, Inc. v. New York Cent. Mut. Fire Ins. Co.*,
    891 N.Y.S.2d 260 (N.Y. Sup. Ct. 2009) ..................................................................................2

*Jacobson v. Sassower*,
    489 N.E.2d 1283 (N.Y. 1985) .................................................................................................2

*Kenavan v. Empire Blue Cross and Blue Shield*,
    677 N.Y.S.2d 560 (N.Y. App. Div. 1998) ...............................................................................3

DEFENDANTS' BRIEF REGARDING EXTRINSIC EVIDENCE
RELEVANT TO THE GOOGLE-MPEG LA LICENSE - ii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*Knudsen v. City of Tacoma*,
　No.C04-585OBHS, 2008 U.S. Dist. LEXIS 11842 (W.D. Wash. Jan. 15, 2008) ....................8

*Miner v. Walden*,
　422 N.Y.S.2d 335 (N.Y. Sup. 1979)..........................................................................................3

*Old Colony Trust Co. v. Omaha,*
　230 U.S. 100 (1913)...................................................................................................................6

*Richardson v. Perales*,
　402 U.S. 389 (1971)...................................................................................................................9

*Seiden Assocs. v. ANC Holdings, Inc.,*
　959 F.2d 425 (2d Cir. 1992).......................................................................................................2

*Smith v. Westland Life Ins. Co.*,
　15 Cal. 3d 111 (1975) ................................................................................................................3

*SOS Oil Corp. v. Norstar Bank of Long Island*,
　563 N.E.2d 258 (N.Y. 1990)......................................................................................................3

*W.W.W. Assoc. v. Giancontieri*,
　566 N.E.2d 639 (N.Y. 1990)......................................................................................................2

**OTHER AUTHORITIES**

Fed. R. Evid. 802 ..............................................................................................................................8

DEFENDANTS' BRIEF REGARDING EXTRINSIC EVIDENCE
RELEVANT TO THE GOOGLE-MPEG LA LICENSE - iii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## I. INTRODUCTION

Defendants Motorola Mobility LLC and General Instrument Corporation (collectively "Motorola") submit this brief in response to the Court's December 31, 2012 request for additional briefing regarding any extrinsic evidence relevant to the 2005 Google-MPEG LA AVC License Agreement (the "AVC Agreement"). (Dkt. No. 637.) As Motorola argued in its Post-Trial Brief Regarding the Google-MPEG LA AVC License Agreement (Dkt. No. 615 at 4-6), the plain language of Section 8.3 of the AVC Agreement makes clear that the scope of the grant-back license must be commensurate with the scope of the license selected by Google. (*See* Ex. 103 at § 8.3.)[1] The plain language of the AVC Agreement similarly makes clear that the scope of that license extends only to Affiliates identified to MPEG LA by Google in writing. (*See id*. at § 3.3.) As Google never so identified Motorola, Motorola is not included within the scope of Google's license – and so is not included within the scope of the grant-back provision.

Motorola respectfully submits that, under New York law, it is therefore unnecessary to consider extrinsic evidence, because the grant-back provision can be understood by its plain language. Even if the Court believes that the AVC Agreement is ambiguous, the extrinsic evidence is limited and either supports Motorola's interpretation of Section 8.3 (*see* III.A) or is inconclusive (*see* III.B-D). Moreover, if, after considering the language of AVC Agreement and the extrinsic evidence, the Court concludes that Section 8.3 of the AVC Agreement is still ambiguous, then the AVC Agreement must be construed against the drafter, MPEG LA.

## II. THE LEGAL STANDARD CONCERNING THE USE OF EXTRINSIC EVIDENCE TO INTERPRET THE AVC AGREEMENT

Under New York law,[2] "the threshold question of whether the terms of the contract are ambiguous" is a "matter of law for the court to decide." *Alexander & Alexander Servs., Inc. v.*

---

[1] "Ex. 103" refers to an exhibit admitted into evidence at the November 2012 trial in this case. "Brenner Decl. Ex. ___" refers to the stated exhibit to the Declaration of Samuel L. Brenner, submitted concurrently herewith. All emphasis is added unless otherwise indicated.

[2] The AVC Agreement is to be construed under New York law. (Ex. 103 at § 8.16.)

DEFENDANTS' BRIEF REGARDING EXTRINSIC EVIDENCE
RELEVANT TO THE GOOGLE-MPEG LA LICENSE - 1
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*These Certain Underwriters at Lloyd's, London, England*, 136 F.3d 82, 86 (2d Cir. 1998).[3] "If the court finds that the contract is not ambiguous it should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence." *Id*. However, "if the court finds that the terms, or the inferences readily drawn from the terms, are ambiguous, then the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract." *Id*. (citing *Seiden Assocs. v. ANC Holdings, Inc.,* 959 F.2d 425, 428-29 (2d Cir. 1992)); *see also Albany Savings Bank, FSB v. Halpin*, 117 F.3d 669, 74 (2d Cir. 1997) (holding that courts may look to "all aids to construction," including extrinsic evidence, in attempting to interpret ambiguous passages); *Borrelli v. Chamberlain*, 802 N.Y.S.2d 809, 810 (N.Y. App. Div. 2005) ("The use of parol evidence is permissible only when an ambiguity exists, and a court may not resort to extrinsic evidence where, as here, the contractual provision is clear and susceptible of only one meaning.") (citing *W.W.W. Assoc. v. Giancontieri*, 566 N.E.2d 639 (N.Y. 1990)).

If a contract remains ambiguous after a court considers extrinsic evidence, the court must follow the New York rule of construing the language in favor of the non-drafter. *See id*. ("New York contract law includes the rule that ambiguities in contracts should be construed against the drafter."); *Jacobson v. Sassower*, 489 N.E.2d 1283, 1284 (N.Y. 1985) ("In cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language.") (citing *67 Wall St. Co. v. Franklin Nat'l Bank*, 37 N.Y.2d 245, 249 (N.Y. 1975)); *cf. Italian Designer Import Outlet, Inc. v. New York Cent. Mut. Fire Ins. Co.*, 891 N.Y.S.2d 260, 264 (N.Y. Sup. Ct. 2009) ("[W]hen the insurer fails to submit extrinsic evidence that resolves the ambiguity, the proper interpretation is an issue of law for the court and the ambiguity must be resolved against the drafter of the contract,

---

[3] Ambiguous contract language is "that which is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Albany Savings Bank, FSB v. Halpin*, 117 F.3d 669, 673-74 (2d Cir. 1997).

DEFENDANTS' BRIEF REGARDING EXTRINSIC EVIDENCE
RELEVANT TO THE GOOGLE-MPEG LA LICENSE - 2
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

the insurer.") (quoting *Kenavan v. Empire Blue Cross and Blue Shield,* 677 N.Y.S.2d 560 (N.Y. App. Div. 1998)).

MPEG LA, rather than Google, was the sole drafter of the AVC Agreement. That agreement consists of MPEG LA's standard, pre-printed form agreement; the only changes which can be made to the document are the date and the identity of the prospective licensee, both of which (in this case) have been entered in handwriting on the agreement between Google and MPEG LA.[4] (*See* Ex. 103 at 1.) Indeed, to Motorola's knowledge, the AVC Agreement is a standard agreement that has never been altered prior to execution through negotiation by *any* prospective licensee. This is the classic "take-it-or-leave-it" contract. A prospective licensee has two choices – sign it "as is" or do not sign. In the context of such a contract, under New York law, any ambiguity in the grant-back provision, must be construed in favor of non-drafter Google. *See SOS Oil Corp. v. Norstar Bank of Long Island*, 563 N.E.2d 258, 261 (N.Y. 1990) ("As in the interpretation of any document, we look for the parties' intent within the four corners of the instrument, reading any ambiguity against the drafter.").

### III.     THE EXTRINSIC EVIDENCE IS SPARSE AND AMBIGUOUS

In response to the Court's request, Motorola has reviewed both the documents produced by MPEG LA in this litigation and public statements made by MPEG LA and others concerning the AVC Agreement. Based on that review, Motorola has identified just a handful of potentially relevant extrinsic evidence regarding the AVC Licensee agreement: (1) correspondence between Google and MPEG LA (Brenner Decl. Exs. A-D and J-K); (2) a collection of articles and

---

[4] The AVG Agreement is thus akin to a contract of adhesion. Under New York law, "[c]ontracts of adhesion arise when a standardized form of agreement, usually drafted by the party having superior bargaining power, is presented to a party, whose choice is either to accept or reject the contract without the opportunity to negotiate its terms." *Finkle and Ross v. A.G. Becker Paribas, Inc.*, 622 F. Supp. 1505, 1511 (S.D.N.Y. 1985); *see also Flagg v. Yonkers Sav. and Loan Ass'n, FA*, 307 F. Supp. 2d 565, 582 (S.D.N.Y. 2004) (describing preprinted form contracts of adhesion that are offered by lenders on a 'take it or leave it' basis that deprives prospective borrowers the opportunity to negotiate terms effectively"); *Miner v. Walden*, 422 N.Y.S.2d 335, 337 (N.Y. Sup. 1979) ("Adhesion contracts refer to a standardized contract form offered to consumers of goods and services essentially on a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain, and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing to the form of the contract.") (citing *Smith v. Westland Life Ins. Co.*, 15 Cal. 3d 111, 122 n. 12 (1975); *Blake v. Biscardi*, 62 A.D.2d 975, 977 (N.Y. 1978)).

DEFENDANTS' BRIEF REGARDING EXTRINSIC EVIDENCE
RELEVANT TO THE GOOGLE-MPEG LA LICENSE - 3
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1  presentations that mention or refer to the grant-back provision of the AVC Agreement (Brenner
2  Decl. Exs. E, F, and G); (3) a 2004 email string between Sony Corporation and MPEG LA's Larry
3  Horn regarding the grant-back provisions of Section 8.3 (Brenner Decl. Ex. H); and (4) a
4  presentation on the AVC patent portfolio license by MPEG LA at the 2006 Video Networks
5  Users' Conference (Brenner Decl. Ex. I).

6  The only extrinsic evidence that elucidates the meaning of Section 8.3 tends to support
7  Motorola's view, not Microsoft's. As explained below, the May 2010 email exchange and
8  October 2010 side letter demonstrate that MPEG LA and Google did *not* share Microsoft's
9  understanding of the scope of the AVC Agreement. The remaining extrinsic evidence, however, is
10 at best inconclusive as to the meaning of the grant-back provision of Section 8.3.

11  **A.    Correspondence between Google and MPEG LA**

12  As explained in Motorola's opening brief (Dkt. No. 615 at 4-6), whether the patents of
13 Google's affiliates are within the scope of the grant-back license depends, in part, on whether
14 Google's affiliates received rights under the AVC Agreement. Draft letters and email
15 correspondence from May and October of 2010 demonstrate that MPEG LA and Google
16 understood that, despite the broad definition of "Affiliate(s)" in the AVC Agreement, not all
17 Google business units that would otherwise qualify as an affiliate would receive rights under the
18 MPEG LA license. Rather, the question of whether an affiliate qualified as a "Covered Affiliate"
19 would depend on whether that affiliate was identified by Google in writing.

20  In a May 2010 email exchange (Dkt. No. 616, Ex. A), MPEG LA's Ryan Rodriguez and
21 Google's Laura Majerus discussed negotiations regarding a side letter "explicitly listing the
22 Google Affiliates" covered by the licenses. (Dkt. No. 616 at GGMM-00032972.) The draft side
23 letter included with that email exchange was drafted by MPEG LA and makes clear that Google's
24 covered "Affiliates" would be only those identified by Google in writing. (*Id*. at GGMM-
25 00032974-75.) For example, the side letter described how Google would provide a "list of
26 Affiliate(s), each a Legal Entity that it wishes to include in its license grant under the AVC

DEFENDANTS' BRIEF REGARDING EXTRINSIC EVIDENCE
RELEVANT TO THE GOOGLE-MPEG LA LICENSE - 4
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

License." (*Id.* at GGMM-00032974.) Such Affiliates would be "covered Affiliates." (*Id.*) Critically, as the side letter explained:

> If Google chooses to elect the Enterprise License under Section 2.7 of the AVC License, all Affiliates of Google which are i.) Licensees to their own AVC License, or ii.) Covered Affiliates under this Agreement, shall be covered under the Enterprise License if identified in writing to MPEG LA by Licensee.

(*Id.* at GGMM-00032975.)

The October 8, 2010 side letter (likewise drafted by MPEG LA (*see* Ex. K at GGMM-00029806)) is similar in many ways to the May 11, 2010 draft. (*See* Brenner Decl. Ex. A at GGMM-00029807-08.) Paragraph 1 of that side letter states:

> Google will submit to MPEG LA a List of Affiliate(s), each a Legal Entity that it wishes to include in its license grant under the AVC License. Such entities will hereinafter be referred to as "Covered Affiliates." Covered Affiliates will be listed in Attachment A to this Agreement and may be updated from time to time **if Google provides written notice of its desire to include or remove Affiliate(s)** and MPEG LA consents to such inclusion (manifested by the listing of the Affiliate(s) in the updated Attachment A, which will be sent to Google), where such consent shall not be unreasonably withheld.

(*Id.* at GGMM-00029807.) Paragraph 4 states:

> If Google pays the Enterprise Cap for (a) AVC Video by electing the Enterprise License under Section 3.1.7 of the AVC License, (b) AVC Products by paying the maximum annual royalty as specified in Section 3.1.1, or (c) OEM AVC Products by paying the maximum annual royalty as specified in Section 3.1.6, all Affiliates of Google which are i) Licensees to their own AVC License, or ii) Covered Affiliates under this Agreement, shall be covered under the Enterprise Caps in Sections 3.1.1, 3.1.6 or 3.1.7 as described above.

(*Id.* at GGMM-00029807.)

Despite the fact that they are not executed, the draft agreements, along with the correspondence, make clear that both MPEG LA and Google understood that not all Google affiliates fell within the scope of the AVC Agreement. Rather, the scope of the AVC Agreement included only those Google affiliates that were identified in writing. For example, in 2009, Google sent MPEG LA a letter that specifically identified those affiliates that would be covered under the AVC Agreement for that year. (*See* Brenner Decl. Ex. B at GGMM-00011326-27.) In a letter the following year, Google similarly identified in writing the affiliate covered by the AVC

DEFENDANTS' BRIEF REGARDING EXTRINSIC EVIDENCE RELEVANT TO THE GOOGLE-MPEG LA LICENSE - 5
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Agreement. (*See* Brenner Decl. Ex. J at GGMM-00011669; *but see* Brenner Decl. Exs C and D.) The side letters and correspondence are particularly useful as extrinsic evidence in construing the AVC Agreement, because they reflect the interpretation of the contract both Google and MPEG LA understood prior to the contract becoming the subject of controversy. *See Coliseum Towers Assoc. v County of Nassau*, 769 N.Y.S.2d 293, 296 (N.Y. App. Div. 2003) ("[T]he practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy is deemed of great, if not controlling, influence.") (quoting *Old Colony Trust Co. v. Omaha,* 230 U.S. 100, 118 (1913)); *see also IBJ Schroder Bank & Trust Co. v. Resolution Trust Corp.*, 26 F.3d 370, 374 (2d Cir. 1994).

The Section 8.3 language "commensurate to the scope of the licenses which Licensee has selected hereunder" necessarily must take into consideration which affiliates fall within the scope of the license and which do not. Here, because Motorola has never been identified as a "covered affiliate" and is therefore not within the scope of the agreement, the grant-back license of Section 8.3 does not include its patents.

**B.     MPEG LA Articles and Presentations**

In a 2003 article in the *Journal of Commercial Biotechnology*, Larry Horn laid out the "Licensee protections" of the "MPEG LA Licensing Model":

> Licensee protections – the typical licence agreement contains numerous provisions to assure that licensees are treated fairly and reasonably. Among them are the following: (a) Licensees are assured most favourable royalty rates and pay the same royalties to the licensing administrator whether or not they are patent owners. (b) To ensure complete coverage, patent holders are required to include all of their essential patents worldwide. **(c)** Licence grants are clear in scope. **(d) To ensure, for the benefit of all licensees, that a licensee does not take advantage of the licence, on the one hand, yet refuse to license its own essential patents on fair and reasonable terms, any licensee is free to add essential patents to the licence that it or an affiliate may own on the same terms and conditions as the licensors, but if a licensee chooses not to do so, it agrees to grant back a licence similar in scope to the licence granted to the licensee on fair and reasonable terms under any essential patents it may own.** (e) Licensee sales data is protected as confidential from patent holders and licensees. (f) A clear up-to-date list of licensed patents is maintained.

Larry Horn, "Alternative approaches to IP management: One-stop technology platform licensing,"

DEFENDANTS' BRIEF REGARDING EXTRINSIC EVIDENCE
RELEVANT TO THE GOOGLE-MPEG LA LICENSE - 6
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

9 J. COMM. BIOTECH. 119, 122 (2003) (Brenner Decl. Ex. E).  The content and language of this article closely mirror the content and language in two other writings Motorola has identified: (1) a 2009 article from *International Asset Management Magazine* by MPEG LA's Vice President of Business Development Bill Geary, entitled "Patent Pools in High-Tech Industries" (Brenner Decl. Ex. F); and (2) a November 11, 2011 slide presentation from Bill Geary entitled "Patent Pool Evolution" (Brenner Decl. Ex. G).  Like both Bill Geary's 2009 article (Brenner Decl. Ex. F at 101) and the 2011 MPEG LA slide presentation (Brenner Decl. Ex. G at MS-MOTO_1823_00002303974, slide 15), this 2003 article *describes* the grant-back provision, but does nothing to explain what the "similar in scope" language means.  Nor do these articles clearly indicate or suggest that the grant-back license under Section 8.3 was intended to include patents of both covered and non-covered affiliates.  Thus, these articles and presentations are inconclusive.

### C.   2004 Email String Between Sony Corporation and Larry Horn at MPEG LA

In a 2004 email string with the subject "Revised AVC Draft License," MPEG LA's Larry Horn engaged in a discussion with representatives of Sony Corporation before the form AVC Agreement had been finalized regarding proposed changes to the language of Section 8.3.  (Brenner Decl. Ex. H at MS-MOTO_1823_00002352423.)  Motorola, however, has been unable to locate the "revised draft AVC license" referenced by the email in any of the productions in this case (i.e., Motorola's, MPEG LA's or Microsoft's).  Thus, it is entirely unclear whether or how Section 8.3 is being revised, what the proposed language says, and whether that revision was ultimately incorporated into the final agreement.  Thus, even though this email string refers to and discusses some version of Section 8.3, it does not provide any clarity as to how the final version of Section 8.3 should be interpreted.

### D.   MPEG LA Presentation on "AVC Patent Portfolio License" at the 2006 Video Networks Users' Conference

In a presentation on the AVC patent portfolio license by MPEG LA at the 2006 Video Networks Users' Conference, a slide entitled "AVC License Summary: Other Provisions" includes

DEFENDANTS' BRIEF REGARDING EXTRINSIC EVIDENCE
RELEVANT TO THE GOOGLE-MPEG LA LICENSE - 7
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

as a bullet point: "Grant-back on essential patents similar in scope to license grants." (Brenner Decl. Ex. I at MPEG-MOT_00000780, slide 17.) While the presentation provides no explicit definition for this "similar in scope" language, an earlier slide includes a pie chart showing that different licenses may have different scopes, including licenses for Codec Manufacturers, Subscription, Title-by-Title, Internet Broadcast, and Free Television. (*Id*. at MPEG-MOT_00000776, slide 13.) In making its argument regarding § 2.10 of the AVC Agreement (*see* Dkt. No. 614 at 7-8), however, Microsoft suggests that there is only one meaning for "scope of the license."

MPEG LA's presentation shows this is incorrect. As Motorola explained in its post-trial briefing (Dkt. No. 615 at 4-5), Google elected to take an AVC Enterprise License – under which, according to § 3.1.7, a fee is paid in lieu of royalties by "a Licensee and *its Affiliates which are licensees under the AVC Patent Portfolio License and are identified in writing* to the Licensing Administrator by the Licensee." (Ex. 103 at § 3.1.7.) Thus, the scope of an AVC Enterprise License is different from the scope of other licenses – as MPEG LA itself stated in 2006. While this presentation does not clearly define the meaning of the "similar in scope" language or the grant-back provision specifically, it does demonstrate that Microsoft's interpretation of the contract language is incorrect.

## IV.   THE ANTICIPATED DECLARATION FROM MPEG LA

Motorola has learned that Microsoft expects to submit with its brief a declaration from MPEG LA. While Motorola does not know precisely what the declaration will say, it is likely that the declaration will support at least some (or all) of Microsoft's arguments.

As an initial matter, any such declaration would constitute inadmissible hearsay, and should not be considered by the Court.[5] *See* Fed. R. Evid. 802. Moreover, even if the declaration

---

[5] Motorola objects to the anticipated MPEG LA declaration because Motorola will not have been permitted to cross-examine the declarant on the statements made in the declaration. Without Motorola being afforded such an opportunity, the statements in the declaration are inadmissible hearsay. *Knudsen v. City of Tacoma*, No.C04-585OBHS, 2008 U.S. Dist. LEXIS 11842 (W.D. Wash. Jan. 15, 2008) (excluding written testimony as inadmissible hearsay where adverse party did not have an opportunity to depose or cross examine the declarant about his answers);

DEFENDANTS' BRIEF REGARDING EXTRINSIC EVIDENCE RELEVANT TO THE GOOGLE-MPEG LA LICENSE - 8
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

were not inadmissible hearsay, unless the declaration relies upon corroborating evidence, statements in the declaration are unsupported and entitled to little weight, especially in comparison to the side letters and related correspondence. *See Grattan v. Societa Per Azzioni Cotonificio Cantoni*, 151 N.Y.S.2d 875, 879 (N.Y. Sup. Ct. 1956) (where contemporaneous writings are at variance with proffered testimony, "it has been appropriate for the court to bear in mind the admonition of the Appellate Division of this Department that 'Written evidence in such a case is of course entitled to much greater weight than testimony coming from the lips of an interested witness.'"); *Cf. Consolidated Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229-30 (1938) (holding, in the context of an administrative hearing before the National Labor Relations Board, where hearsay is permitted, that "[m]ere uncorroborated hearsay or rumor does not constitute substantial evidence"); *but see Richardson v. Perales*, 402 U.S. 389, 408 (1971).

## V. CONCLUSION

As Motorola has explained previously, (*see* Dkt. No. 615 at 4-6), the scope of the license granted by MPEG LA to Google under the AVC Agreement does not extend to Motorola, because an affiliate like Motorola is not automatically included under Google's license. Because of this, for the grant-back license to be "commensurate to the scope," it cannot include a grant to Motorola's patents. In this way, the benefits and obligations under the MPEG LA license grant and Section 8.3's grant-back provision are aligned equitably. But even if Microsoft's argument (*see* Dkt. No. 614 at 7-8) that the "commensurate to the scope" language *could* be read as being strictly defined by the "scope of the license grant" definition in § 2.10 were correct, then, at best, the language of Section 8.3 of the AVC Agreement is ambiguous on its face.

As a general rule, under New York contract law, ambiguities in a contract must be construed against the drafter (here MPEG LA), and in favor of the non-drafter (here Google). *See Albany Savings Bank*, 117 F.3d at 674. Though (should the Court determine that the AVC

---

*Flow Control Indus. v. AMHI, Inc.*, 278 F. Supp. 2d 1193, 1197 (W.D. Wash. 2003) (excluding declaration as hearsay where defendants did not have an opportunity to cross-examine the declarant).

DEFENDANTS' BRIEF REGARDING EXTRINSIC EVIDENCE
RELEVANT TO THE GOOGLE-MPEG LA LICENSE - 9
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Agreement is ambiguous on its face) the Court may look to extrinsic evidence, that evidence does not eliminate the ambiguity in MPEG LA's preprinted form contract – just as it does not support what Motorola anticipates will be the contentions in Microsoft's MPEG LA declaration. Therefore, in accordance with New York law, any ambiguity in the contract must be construed against MPEG LA, and in favor of Google.  *See id*.  Under that construction, the Court should conclude that the "commensurate to the scope" language of Section 8.3 does not require Google to grant a license to Microsoft for Motorola's H.264-essential patents.

DATED this 23rd day of January, 2013.

Respectfully submitted,

SUMMIT LAW GROUP PLLC

By */s/ Ralph H. Palumbo*
    Ralph H. Palumbo, WSBA #04751

By */s/ Philip S. McCune*
    Philip S. McCune, WSBA #21081

By */s/ Lynn M. Engel*
    Lynn M. Engel, WSBA #21934
    *ralphp@summitlaw.com*
    *philm@summitlaw.com*
    *lynne@summitlaw.com*

By */s/ Thomas V. Miller*
    Thomas V. Miller
    MOTOROLA MOBILITY LLC
    600 North U.S. Highway 45
    Libertyville, IL  60048-1286
    (847) 523-2162

DEFENDANTS' BRIEF REGARDING EXTRINSIC EVIDENCE RELEVANT TO THE GOOGLE-MPEG LA LICENSE - 10
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

And by

Jesse J. Jenner (*pro hac vice*)
Steven Pepe (*pro hac vice*)
Kevin J. Post (*pro hac vice*)
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY  10036-8704
(212) 596-9046
*jesse.jenner@ropesgray.com*
*steven.pepe@ropesgray.com*
*kevin.post@ropesgray.com*

James R. Batchelder (*pro hac vice*)
Norman H. Beamer (*pro hac vice*)
Gabrielle E. Higgins (*pro hac vice*)
Ropes & Gray LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA  94303-2284
(650) 617-4030
*james.batchelder@ropesgray.com*
*norman.beamer@ropesgray.com*
*gabrielle.higgins@ropesgray.com*

Paul M. Schoenhard (*pro hac vice*
Ropes & Gray LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC  20005-3948
(202) 508-4693
*paul.schoenhard.@ropesgray.com*

***Attorneys for Motorola Solutions, Inc., Motorola Mobility LLC and General Instrument Corp.***

DEFENDANTS' BRIEF REGARDING EXTRINSIC EVIDENCE
RELEVANT TO THE GOOGLE-MPEG LA LICENSE - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Arthur W. Harrigan, Jr., Esq.
> Christopher T. Wion, Esq.
> Shane P. Cramer, Esq.
> Calfo Harrigan Leyh & Eakes LLP
> *arthurh@calfoharrigan.com*
> *chrisw@calfoharrigan.com*
> *shanec@calfoharrigan.com*
>
> Richard A. Cederoth, Esq.
> Brian R. Nester, Esq.
> David T. Pritikin, Esq.
> Douglas I. Lewis, Esq.
> John W. McBride, Esq.
> David Greenfield, Esq.
> William H. Baumgartner, Jr., Esq.
> David C. Giardina, Esq.
> Carter G. Phillips, Esq.
> Constantine L. Trela, Jr., Esq.
> Ellen S. Robbins, Esq.
> Nathaniel C. Love, Esq.
> Sidley Austin LLP
> *rcederoth@sidley.com*
> *bnester@sidley.com*
> *dpritikin@sidley.com*
> *dilewis@sidley.com*
> *jwmcbride@sidley.com*
> *david.greenfield@sidley.com*
> *wbaumgartner@sidley.com*
> *dgiardina@sidley.com*
> *cphillips@sidley.com*
> *ctrela@sidley.com*
> *erobbins@sidley.com*
> *nlove@sidley.com*
>
> T. Andrew Culbert, Esq.
> David E. Killough, Esq.
> Microsoft Corp.
> *andycu@microsoft.com*
> *davkill@microsoft.com*

DATED this 23rd day of January, 2013.

/s/ *Marcia A. Ripley*
Marcia A. Ripley

DEFENDANTS' BRIEF REGARDING EXTRINSIC EVIDENCE
RELEVANT TO THE GOOGLE-MPEG LA LICENSE - 12
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001