# EXHIBIT 2

| | |
|---|---|
| **From:** | Larry Horn |
| **To:** | AVCGroup |
| **Sent:** | 1/22/2004 9:30:21 PM |
| **Subject:** | Draft AVC License |
| **Attachments:** | NY12531-#330038-v2-AVC_Patent_Portfolio_License_12_8_03.DOC |

Dear Colleagues,

Attached for your review and comment is a first draft of the AVC Patent Portfolio License Agreement.

We are pleased to welcome Real Networks to the discussion; Real submitted a patent application which has been found essential to the H.264/AVC standard and has agreed to participate in the contract drafting discussion under the conditions described in my December 27 email. That means 22 essential intellectual property owners are receiving the draft License Agreement for their review and comment. In addition to Real, they include the 17 whose names were identified in the November 17 press release, plus four of the five others who have participated throughout the license development process; only one, Thomson, is not participating at this time but we hope they will return to the process soon. And there is a possibility that other essential intellectual property owners may be added soon.

I want to point out the following (the first, a change from the terms announced in the press release; the second, a change that we expect to propose for your consideration shortly; and the third, the status of discussions that could result in additional changes):

1. The draft License Agreement incorporates the one-time royalty per encoder option for over-the-air free broadcast that has been worked out with Japanese broadcasters as described in my December 27 email. See Sections 2.4, 3.1.4,, and definitions of End User, Over-the-Air Free Broadcast AVC Video and Transmits/Transmitted in Sections 1.20, 1.34 and 1.42, respectively. We also have met with a representative of EBU, which had communicated to us their concern for the annual fees to be paid by broadcasters, and with DVB representatives, and have discussed with them how the new one-time royalty per encoder option (as well as the annual fee option) would work in conditions surrounding its application in Europe. The draft License Agreement reflects our attempt to assure application of this provision worldwide.

The over-the-air free broadcaster would be required to become a Licensee and assume responsibility for the required royalty payments: in the case of the one-time royalty per encoder option, for those encoders used in transmitting AVC video to the End User wherever they may be in the broadcast transmission chain; in the case of the annual fee option, we have modified the annual fee provision to start at $2,500 for a broadcaster at the 100,000 household minimum and rising depending on market size to a maximum $10,000 per year for broadcasters serving markets of more than 1,000,000 households (instead of a flat $10,000 fee for all markets of any size above 100,000 households). In addition to over-the-air television broadcasting, the definition of Over-the-Air Free Broadcast in Section 1.33 is intended to include AVC Video [which is not Title-by-Title AVC Video (Sections 1.41 and 2.2), Subscription AVC Video (Section Sections 1.39 and 2.3) or Internet Broadcast AVC Video (Sections 1.24 and 2.5)] that is simultaneously retransmitted to an End User by means which include satellite and/or cable Transmission for the purpose of supplementing over-the-air television broadcasting's reach in its service area.

2. Based on further feedback from the market and further discussions, in order to stimulate and further assure widespread deployment and adoption of AVC Codecs (which also would have the effect of increasing total royalty revenue), we are working on presenting a

**CONFIDENTIAL BUSINESS INFORMATION,**
**SUBJECT TO PROTECTIVE ORDER**

MS-MOTO_1823_00002352300

necessary proposal for your consideration that would (a) expand the definition of Codec Licensee (defined in Section 1.15) for purposes of the sublicense for AVC Product(s) in Section 2.1 to include (in addition to AVC Products that the Codec Licensee sells directly to End Users) those OEM AVC Product(s) (see Section 1.29, which would be modified) that a Codec Licensee sells to OEM Customers for incorporation in a Personal Computer (defined in Section 1.36) not as part of a PC Operating System (OS); and (b) reduce the definition of OEM AVC Products (see Section 1.29, which would be modified) for purposes of the sublicense for OEM Licensee in Section 2.6 to include only those OEM AVC Product(s) that the Codec Licensee sells to OEM Customers for incorporation in a Personal Computer as part of a PC Operating System (OS). Under such a proposal, the annual caps for (a) would remain the same (as provided in Section 3.1.1), and the annual caps for (b) would be reduced (from those currently provided in Section 3.1.6) so as to be the same as the amounts for (a). With the benefit of some more thought, we will plan to provide more information to you on this before the end of next week (30 January).

3. We have conducted research and gathered data that will assist us in our discussions with DirecTV regarding possible options that may be elected by all service providers in lieu of the current Title-by-Title Participation Fees, but those discussions have not concluded. We will provide more information and suggestions, if any, for modifying the draft License Agreement in that regard as they become available. (We are also speaking with mobile providers and related companies for their input as well.)

Please provide us with your initial comments on the draft License Agreement by January 30. Based on those comments. we would plan to generate a second draft the following week, with additional comments and drafts to follow as necessary in order to generate final executable documents by February 25. Over the next two weeks, we also plan to generate for your further discussion initial drafts of the various Licensor Agreements (Agreement Among Licensors, License from Licensor to Licensing Administrator and Licensing Administrator Agreement), which will follow a relatively standard format.

We look forward to your feedback and to fulfilling our joint mission to issue a fair, reasonable, comprehensive license to the market with all speed and thoughtful deliberation.

Best regards,
Larry Horn

CONFIDENTIAL BUSINESS INFORMATION,
SUBJECT TO PROTECTIVE ORDER

MS-MOTO_1823_00002352301