# EXHIBIT A

3

### H.264/AVC PATENT CROSS-LICENSE FOR GERMANY

This Agreement is made as of January 13, 2013, by and between General Instrument Corporation, a Delaware State Corporation, having a principal place of business in Horsham, Pennsylvania, U.S.A. (hereinafter "GI"), and Microsoft Corporation, a Washington State Corporation having a principal place of business in Redmond, Washington, U.S.A. (hereinafter "Microsoft") (also referred to as "a party" respectively or together as "the parties").

**WHEREAS**, GI claims that it is the owner of the Licensed GI Patents.

**WHEREAS**, Microsoft claims that it is the owner of the Licensed Microsoft Patents.

**WHEREAS**, GI has sued Microsoft and two Microsoft Affiliates for infringement of the Licensed GI Patents before the District Court of Mannheim in Germany, file no. 2 O 240/11, 2 O 376/11, 2 O 373/11, 2 O 387/11, now on appeal on docket no. 6 U 44/12, 6 U 45/12, 6 U 46/12, 6 U 47/12.

**WHEREAS**, Microsoft submits this Agreement as part of its defense in the above-mentioned proceedings in accordance with the "Orange Book Standard" decision of the Federal Court of Justice (*Bundesgerichtshof, BGH*) of 6 May 2009 (docket no. KZR 39/06) and the practice by the District Court of Mannheim (*Landgericht Mannheim*), in particular the decisions of 27 May 2011 (docket no. 7 O 65/10), of 9 December 2011 (docket no. 7 O 122/11) and of 2 May 2012 (in the proceedings mentioned above involving the parties to this Agreement) as expressed in the accompanying letters to this Agreement which are hereby made part of this Agreement.

**WHEREAS**, the District Court of Mannheim has indicated the Orange Book Standard requires Microsoft, when proposing specific license fees in this Agreement, to set the license fees such that refusal by GI would be a blatant violation of antitrust law.

NOW, THEREFORE, GI and Microsoft AGREE AS FOLLOWS:

**0. EFFECTIVE DATE**

0.1   This Agreement shall be effective as of its signing by GI.

**1. DEFINITIONS**

The definitions set forth in this Article shall apply to the following terms when used with initial capital letters in this Agreement, its attachments, and amendments hereto.

1.1   **Affiliate** - shall mean a GI Affiliate or Microsoft Affiliate, depending on context.

   1.1.1   **GI Affiliate** - shall mean Motorola Mobility Holdings, Inc. and any company which now or hereinafter is controlled by Motorola Mobility Holdings, Inc. Such entities shall only be deemed to be GI Affiliates hereunder for as long as such control exists. GI Affiliate includes in any event: Motorola Mobility, Inc. and Motorola Mobility Germany GmbH.

   1.1.2   **Microsoft Affiliate** - shall mean any company which now or hereinafter is controlled by Microsoft. Such entities shall only be deemed to be Microsoft Affiliates hereunder for as long as such control exists. Microsoft Affiliate includes in any event: Microsoft Deutschland GmbH and Microsoft Ireland Operations Ltd.

1.2   **Agreement** - shall mean this license between GI and Microsoft, including exhibits, attachments, amendments and modifications hereto.

1.3   **AVC Codec** – shall mean any single product or thing which incorporates the full functionality of

both one AVC Decoder and one AVC Encoder.

1.4   **AVC Decoder** - shall mean a decoder used to decode AVC Video.

1.5   **AVC Encoder** - shall mean an encoder used to create AVC Video.

1.6   **AVC Standard** - shall mean the video standard defined in ISO/IEC 14496-10:2008, 4th Edition (2008-09-15) and any subsequent version or extension of this video standard; provided, however, that no subsequent version or extension of such definition shall reduce the scope of any definition of the AVC Standard immediately prior to the delivery of any such subsequent version or extension.

1.7   **AVC Video** – shall mean video encoded in compliance with the AVC Standard.

1.8   **Google Acquisition Date** – shall mean May 22, 2012, the date of completion of the acquisition of Motorola Mobility Holdings, Inc. (and therefore GI) by Google, Inc.

1.9   **Google's AVC Patent Portfolio License** – shall mean the AVC Patent Portfolio License between Google, Inc. as a licensee and MPEG LA, LLC as licensing administrator.

1.10  **Licensed GI Patents** - shall mean DE 69232063, which is the German part of EP 0538667 B1, and DE 69425919, which is the German part of EP 0615384 B1.

1.11  **Licensed Microsoft Patents** - shall mean:

   DE 69937462, which is the German part of EP 1135934 B1;

   DE 69941964, which is the German part of EP 1853069 B1;

   DE 60311231, which is the German part of EP 1468566 B1;

   DE 60310368, which is the German part of EP 1468567 B1;

   DE 60332175, which is the German part of EP 1753244 B1;

   DE 20222025; and

   DE 20222026.

1.12  **Licensed Product** – shall mean any product that contains an AVC Decoder or AVC Codec. This includes hardware devices including an AVC Decoder or AVC Codec. This also includes software where installation of such software on a computing device would create an AVC Decoder or AVC Codec.

1.13  **Old Product** - shall mean a Licensed Product that has been made or sold by GI or GI Affiliates, or by Microsoft or Microsoft Affiliates, prior to the signing of this Agreement. Old Product also includes a Licensed Product that has been made or sold by Skype Communications, which is now a division of Microsoft, prior to the acquisition of Skype Communications by Microsoft.

2.   **LICENSE GRANT**

2.1   **Licensed Products.** Subject to the terms and conditions of this Agreement, GI hereby grants to Microsoft (including its divisions, e.g., Skype) and Microsoft Affiliates a *royalty-bearing*, nonexclusive, nontransferable license under the Licensed GI Patents to make, have made, sell or offer for sale in Germany Licensed Products and for the importation into, use and possession of

5

such Licensed Products in Germany. Subject to the terms and conditions of this Agreement, for Licensed Products before the Google Acquisition Date, Microsoft hereby grants to GI and GI Affiliates a *royalty-free*, nonexclusive, nontransferable license under the Licensed Microsoft Patents to make, have made, sell or offer for sale in Germany Licensed Products and for the importation into, use and possession of such Licensed Products in Germany. Subject to the terms and conditions of this Agreement, for Licensed Products after the Google Acquisition Date, Microsoft hereby grants to GI and GI Affiliates an option for a *royalty-bearing*, nonexclusive, nontransferable license under the Licensed Microsoft Patents to make, have made, sell or offer for sale in Germany Licensed Products and for the importation into, use and possession of such Licensed Products in Germany. NO OTHER LICENSE IS GRANTED IN THIS ARTICLE 2.1, BY IMPLICATION OR OTHERWISE.

2.2 **Sublicenses.** An assignment of the license or granting sub-licenses under the Licensed GI Patents by Microsoft is only permissible with written approval of GI. An assignment of the option for license, the license or granting sub-licenses under the Licensed Microsoft Patents by GI is only permissible with written approval of Microsoft.

2.3 **Scope of License Grant.** Notwithstanding anything to the contrary herein, all licenses granted under this Agreement are limited to a field of use of processing for the AVC Standard.

3. **ROYALTIES AND PAYMENTS**

    3.1 **Royalties for Licenses under the Licensed GI Patents.** For those licenses in Article 2 hereof under the Licensed GI Patents, Microsoft shall pay to GI, throughout the term of this Agreement for such periods in which any of the Licensed GI Patents is in force, the applicable royalties as follows:

    3.1.1 **Licensed Products before Google Acquisition Date.** The royalty for the license granted pursuant to Article 2.1 hereof upon the manufacture or sale in Germany, before the Google Acquisition Date, for each computing device containing an AVC Decoder or AVC Codec provided by Microsoft or a Microsoft Affiliate (each such device is referred to as a "Unit"):

    | Unit Sales | Royalties Payable per Unit |
    | --- | --- |
    | All Units up to 10 million Units per fiscal year | 2 Eurocents per Unit |
    | All Units above 10 million Units per fiscal year | 1 Eurocent per Unit |

    3.1.2 **Licensed Products after Google Acquisition Date.** The royalty for the license granted pursuant to Article 2.1 hereof upon the manufacture or sale in Germany, not before the Google Acquisition Date, for each Unit provided by Microsoft or a Microsoft Affiliate shall be set in a manner consistent with Article 8.3 of the Google AVC Patent Portfolio License. The royalty shall be the part of the "Licensors' per patent share of royalties which are payable pursuant to Article 3" that is attributable to the Licensed GI Patents. This royalty is **€2100.00 per fiscal year per Licensed GI Patent.**

    3.2 **Royalties for Licenses under the Licensed Microsoft Patents.** For those licenses in Article 2 hereof under the Licensed Microsoft Patents, GI shall pay to Microsoft, throughout the term of this Agreement for such periods in which any of the Licensed Microsoft Patents is in force, the applicable royalties as follows:

    3.2.1 **Licensed Products before Google Acquisition Date.** The license granted pursuant to Article 2.1 hereof upon the manufacture or sale in Germany, before the Google

Acquisition Date, for each Unit provided by GI or a GI Affiliate, is a *royalty-free license*.

3.2.2   **Licensed Products after Google Acquisition Date.** If GI exercises its option for a license under Article 2.1 for Licensed Products after the Google Acquisition Date, the royalty for the license granted pursuant to Article 2.1 hereof upon the manufacture or sale in Germany, not before the Google Acquisition Date, for each Unit provided by GI or a GI Affiliate shall be as follows.

| Unit Sales | Royalties Payable per Unit Per Licensed Microsoft Patent |
|---|---|
| All Units up to 7,000 Units per fiscal year | 0.0 Eurocents per Unit per Licensed Microsoft Patent |
| All Units above 7,000 and up to 350,000 Units per fiscal year | 0.2 Eurocents per Unit per Licensed Microsoft Patent |
| All Units above 350,000 Units per fiscal year | 0.1 Eurocent per Unit per Licensed Microsoft Patent |

But in no event shall the royalties payable be greater than **€2100.00** per fiscal year per Licensed Microsoft Patent.

3.3   **Old Products Provided by Microsoft.** For all computing devices containing an AVC Decoder or AVC Codec provided by Microsoft or Microsoft Affiliates, which were made or sold before the execution of this Agreement, within 1 month after the execution of this Agreement, Microsoft shall pay GI a one-time payment for the Licensed GI Patents. Any back royalties shall bear interest, compounded monthly, at the lesser of ten percent (10 %) per annum or the highest interest rate permitted to be charged by GI according to the German Civil Code (*Bürgerliches Gesetzbuch*).

3.4   **Old Products Provided by GI.** For all computing devices containing an AVC Decoder or AVC Codec provided by GI or GI Affiliates, which were made or sold before the Google Acquisition Date, GI has a *royalty-free license* to the Licensed Microsoft Patents under Article 3.2.1. For all computing devices containing an AVC Decoder or AVC Codec provided by GI or GI Affiliates, which were made or sold between the Google Acquisition Date and the execution of this Agreement, within 1 month after the execution of this Agreement, if GI exercises its option for a license under Article 2.1, GI shall pay Microsoft a one-time payment for the Licensed Microsoft Patents according to Article 3.2.2.

3.5   **Payment of Royalties by Microsoft Pursuant to Article 3.1.** Royalties payable pursuant to Article 3.1 of this Agreement shall be paid only for such periods in which at least one of the Licensed GI Patents is in force. Royalties are not payable for any period in which none of the Licensed GI Patents is in force. Under Article 3.1.2, royalties are payable for a given Licensed GI Patent only when that Licensed GI Patent is in force. Where the patent is not in force for a full fiscal year, payments will be reduced proportionally. Royalties payable pursuant to Article 3.1 of this Agreement that accrue after the latest signature date specified on the final page of this Agreement shall be payable on a prorated basis by Microsoft to GI semiannually as measured from such signature date to the last business day of each six-month period (or fraction thereof) ending June 30 or December 31 thereafter, for Licensed Products licensed pursuant to Article 2.1 which are made in Germany or sold in Germany during that period ending June 30 or December 31.

7

3.6 **Payment of Royalties by GI Pursuant to Article 3.2.** If GI exercises its option for a license under Article 2.1, royalties payable pursuant to Article 3.2 of this Agreement shall be paid only for such periods in which at least one of the Licensed Microsoft Patents is in force. Royalties are not payable for any period in which none of the Licensed Microsoft Patents is in force. If GI exercises its option for a license under Article 2.1, under Article 3.2.2, royalties are payable for a given Licensed Microsoft Patent only when that Licensed Microsoft Patent is in force. Where the patent is not in force for a full fiscal year, payments will be reduced proportionally. Royalties payable pursuant to Article 3.1 of this Agreement that accrue after the latest signature date specified on the final page of this Agreement shall be payable on a prorated basis by GI to Microsoft semiannually as measured from such signature date to the last business day of each six-month period (or fraction thereof) ending June 30 or December 31 thereafter, for Licensed Products licensed pursuant to Article 2.1 which are made in Germany or sold in Germany during that period ending June 30 or December 31.

3.7 **Payments Upon Termination or Expiration.** Within sixty (60) days after the effective date of termination or expiration of this Agreement, Microsoft shall pay GI any and all amounts that are due pursuant to this Agreement as of the effective date of such termination or expiration, and GI shall pay Microsoft any and all amounts that are due pursuant to this Agreement as of the effective date of such termination or expiration.

3.8 **Form of Payment.** Any payment made by Microsoft under the provisions of this Agreement shall be made in Euros and by wire transfer to the account designated by GI in writing to Microsoft or other means GI shall, in its sole discretion, find acceptable. Any payment made by GI under the provisions of this Agreement shall be made in Euros and by wire transfer to the account designated by Microsoft in writing to GI or other means Microsoft shall, in its sole discretion, find acceptable.

3.9 **Taxes.** Microsoft shall be entitled to withhold from any payments hereunder the withholding taxes (if any) that are to be withheld pursuant to applicable tax legislation. GI shall be entitled to withhold from any payments hereunder the withholding taxes (if any) that are to be withheld pursuant to applicable tax legislation.

3.10 **Freedom to negotiate a new royalty rate.** The parties are free at any time to negotiate a new royalty rate, or have a new royalty rate determined by a Court of Law, arbitral tribunal, an antitrust authority or independent third-party charged with giving a binding opinion.

4. **ACCOUNTING**

4.1 Microsoft shall comply with adequate and orderly accounting principles and shall keep proper books of account, showing all details necessary for the calculation of royalties according to Article 3 above.

4.2 If GI exercises its option for a license under Article 2.1, GI shall comply with adequate and orderly accounting principles and shall keep proper books of account, showing all details necessary for the calculation of royalties according to Article 3.2.2, unless GI pays the capped amount per fiscal year per Licensed Microsoft Patent..

4.3 If GI exercises its option for a license under Article 2.1, unless GI pays the capped amount per fiscal year per Licensed Microsoft Patent, for Licensed Products sold by GI or GI Affiliates in Germany after the signing of this Agreement, GI shall render the account on any sold Licensed Product, shall calculate the royalties due according to Article 3.2.2 for the related fiscal half year on the basis of the account and shall provide Microsoft with a respective payment of royalties within 60 calendar days after the end of each fiscal half year.

4.4 After prior written announcement, GI may, once a year during the customary office hours of Microsoft, have the records and books of account of Microsoft which relate to royalties paid under

this Agreement inspected by an independent auditor who - by reason of his profession - is bound by an obligation of confidentiality. The auditor shall only inform GI and Microsoft of the outcome relating to the account statements, and is not entitled to communicate any further information. Should the inspection reveal errors to the detriment of GI, any resulting amounts shall be payable by Microsoft without delay. Microsoft shall only reimburse GI for the costs of the inspection if the differential amount is at least 5% to the detriment of GI, otherwise GI shall bear the costs of the inspection.

5. **REPRESENTATIONS AND WARRANTIES**

   5.1 GI hereby represents and warrants that it has the right to grant to Microsoft and Microsoft Affiliates the rights, licenses and release granted under this Agreement for the Licensed GI Patents, and that there are no agreements, assignments or encumbrances that affect the ownership or control of the Licensed GI Patents or which would restrict the rights, licenses and release granted hereunder.

   5.2 Microsoft hereby represents and warrants that it has the right to grant to GI and GI Affiliates the rights, licenses and release granted under this Agreement for the Licensed Microsoft Patents, and that there are no agreements, assignments or encumbrances that affect the ownership or control of the Licensed Microsoft Patents or which would restrict the rights, licenses and release granted hereunder.

   5.3 In case of a sale or assignment of the Licensed GI Patents, the rights of Microsoft and Microsoft Affiliates will remain unaffected, cf. Para. 15 III of the German Patent Code (*Patentgesetz*).

   5.4 In case of a sale or assignment of the Licensed Microsoft Patents, the rights of GI and GI Affiliates will remain unaffected, cf. Para. 15 III of the German Patent Code (*Patentgesetz*).

6. **CONFIDENTIAL INFORMATION**

   6.1 This Agreement shall be handled as confidential information, subject to any agreement between the parties governing the handling of confidential information. Unless required by law, or with the express written consent of the other party, or subject to said agreement between the parties governing or in the situations described in Article 6.2, the terms and conditions of the Agreement shall not be disclosed to any third party.

   6.2 In any event, Microsoft and GI are entitled to submit this Agreement in the infringement proceedings before the Higher Regional Court of Karlsruhe in Germany, file no. 6 U 44/12, 6 U 45/12, 6 U 46/12, 6 U 47/12, in proceedings before a U.S. court, and in proceedings before any antitrust authority.

7. **TERM AND TERMINATION.**

   7.1 **Term.** Unless otherwise terminated as expressly provided in this Agreement, this Agreement shall remain continuously in effect until the last of the Licensed GI Patents or Licensed Microsoft Patents expires or is no longer enforceable.

   7.2 **Termination.** This Agreement, including future payment obligations under Art. 3 of this Agreement, shall terminate immediately if, by final decision of a court of law, the Licensed GI Patents or the Licensed Microsoft Patents are held invalid or unenforceable. If such a decision applies only to one of the Licensed GI Patents or Licensed Microsoft Patents, the Agreement shall terminate immediately with respect to that patent and shall remain in effect for the other Licensed GI Patent(s) and Licensed Microsoft Patents not held invalid or unenforceable. GI shall have the right to immediately terminate this Agreement if Microsoft initiates a nullity action against any of

9

the Licensed GI Patents.

7.3 **Refunds.** Even if this Agreement is terminated, no refunds of any kind will be due to Microsoft for royalties already due or paid under this Agreement, and Microsoft agrees to pay in accordance with Article 3 any unpaid royalties due or incurred under this Agreement at the time this Agreement is terminated. Even if this Agreement is terminated, no refunds of any kind will be due to GI for royalties already due or paid under this Agreement, and GI agrees to pay in accordance with Article 3 any unpaid royalties due or incurred under this Agreement at the time this Agreement is terminated.

8. **MISCELLANEOUS PROVISIONS.**

    8.1 The Agreement is governed by and construed in accordance with German law without regard to its rules of choice of law.

    8.2 The Mannheim District Court of Germany shall have exclusive jurisdiction for any and all disputes arising from or in connection with this Agreement.

    8.3 In the event of any dispute or differences between the parties in respect of any right, obligation or liability of any party under this Agreement, including any dispute regarding the validity or invalidity of this Agreement or any of its provisions, the parties shall use their best efforts to come to an amicable resolution.

    8.4 Should any provision of this Agreement be invalid or unenforceable, the remaining provisions shall remain valid. In place of an invalid or unenforceable provision, a valid provision which comes economically closest to the one intended by both parties is deemed to be agreed upon. The same applies in case a provision has been inadvertently omitted.

    8.5 Any changes and modifications to this Agreement require written form. This also applies to this provision.

Date: Jan 11/13

Date: 8/31/12

General Instrument Corporation

By: _____

Microsoft Corporation

By: _____