LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
(206) 623-1700

ARTHUR W. HARRIGAN, JR.

E-MAIL: ARTHURH@CALFOHARRIGAN.COM
FACSIMILE: (206) 623-8717

March 1, 2013

Honorable James L. Robart
United States District Judge
USDC Courthouse
700 Stewart Street, Suite 14128
Seattle, WA 98101-9906

     RE:    *Microsoft Corp. v. Motorola, Inc., et al.*, Case No. C10-1823-JLR

Dear Judge Robart:

     Microsoft respectfully submits this letter in response to the Court's February 21, 2013 Minute Order (ECF No. 654), which requested letter briefs from the parties addressing two issues related to § 3.1.7 of the Google-MPEG LA License Agreement ("the Agreement"), concerning the royalties owed by Enterprise Licensees. Microsoft is not seeking any grant-back rights associated with Google's Enterprise License and, as explained below, none of the provisions relating to Enterprise Licensees are relevant to the issues before the Court.

     Google has taken three separate and distinct types of license offered by MPEG LA and described in Section 2 of the Agreement (titled "Licensing Administrator Grant"): (1) the "AVC Products" license (defined in § 2.1); (2) the "OEM Licensee" license (defined in § 2.6); and (3) the "Enterprise License" (defined in § 2.7). The Enterprise License consists of a combination of lesser-included license types relevant to video content providers (the Title-by-Title, Subscription, Free Television, and Internet Broadcast AVC Video licenses) defined in §§ 2.2–2.5.

     The "Royalties and Payments" due for each type of license are set forth in Section 3 of the Agreement: (1) § 3.1.1 sets forth the per-unit rates and annual caps applicable for the AVC Products license; (2) § 3.1.6 sets forth the per-unit rates and annual caps for OEM Licensees; and (3) § 3.1.7 sets forth the annual caps[1] applicable for Enterprise Licensees. The term "Enterprise Licensee" is defined in § 1.25 as "a Licensee which elects an Enterprise License under Sections 2.7 and 3.1.7 hereof."

     There is no overlap between the Enterprise License and the license grants for AVC Products or OEM Licensees—these licenses cover different types of products and have different terms. The Enterprise License, which Google elected to take, includes rights to stream H.264-encoded video over the Internet, relevant to a service like Google's YouTube. In contrast, the grants for AVC Products and OEM Licensees (which Google also elected to take) concern software containing H.264-compliant video codecs, relevant to products like Google's Android

---

[1] "Per-unit" rates are not applicable for Enterprise Licensees.

Honorable James L. Robart
March 1, 2013
Page 2

and Chrome operating systems. (*See* ECF No. 643 Ex. C (Feb. 28, 2011 email from Google to MPEG LA); Lo Dep. 40:21–41:16.) The AVC Products and OEM Licensee grants—not the Enterprise License—are the types of licenses pertinent to the Microsoft products for which it seeks a grant-back license.

With this background, we turn to the specific issues raised by the Court:

1. **First**, the Court set forth its understanding that, pursuant to a portion of § 3.1.7:

> [a] Licensee and its Affiliates fall under the royalty cap prescribed therein only if the Affiliates are themselves licensees under the AVC Patent Portfolio and are identified by the Licensee in writing to the Licensing Administrator.

(ECF No. 654 at 2.)

The Court's understanding is correct. The language of § 3.1.7 italicized in the Court's Minute Order—"*Affiliates which are licensees under the AVC Patent Portfolio License and are identified in writing to the Licensing Administrator by Licensee*"—makes clear that in order to obtain the benefit of a royalty cap that covers both a Licensee and an Affiliate under the license grants covered by the Enterprise License option, collectively, the Affiliate (i) must itself be a Licensee under the AVC Patent Portfolio License, and (ii) must be identified by the Licensee in writing. For example, suppose Company A and Company B are both Enterprise Licensees, and both pay the full capped annual royalty pursuant to § 3.1.7. If Company A then acquires a 51% controlling interest in Company B, Company A must notify the Licensing Administrator that Company B is now an Affiliate, and then the combined entity need make only a single, capped payment—half the amount that had been paid by the two separate companies. If Company A instead acquires a 51% controlling interest in Company C, which (for purposes of illustration) is not a Licensee, but distributes Title-by-Title, Subscription, Free Television, and Internet Broadcast AVC Video, Company C must take a license itself,[2] Company A must notify the Licensing Administrator, and then the combined entity need only make the same single, capped payment under § 3.1.7.

However, as set out herein and at the January 28, 2013 hearing, the Enterprise License and its royalty terms are irrelevant to the issues before the Court. Microsoft is not a video content provider and therefore does not need, and has not taken, an Enterprise License from MPEG LA. Microsoft is not seeking any grant-back rights for such a license in this litigation.

---

[2] As explained further below, § 2.9 of the Agreement makes clear that Affiliates are not automatically licensed simply by virtue of their acquisition by a Licensee—there is no right to sublicense, and the Affiliate must obtain its own license.

Honorable James L. Robart
March 1, 2013
Page 3

    **2. Second**, the Court asked:

> whether Section 3.1.7 of the Google-MPEG LA License Agreement is a
> stand-alone royalty cap provision or whether the section affects other
> provisions of the license agreement, and in particular whether Section
> 3.1.7 has an effect on Motorola's obligation to license its standard
> essential patents as an Affiliate of Google.

(ECF No. 654 at 3.)

    Section 3.1.7 of the Agreement is a stand-alone royalty cap provision. Rather than paying the volume-based royalties for the various licenses needed by video content providers, an Enterprise Licensee and its Affiliates can elect to pay the single capped amount specified in § 3.1.7 "in lieu of the royalties specified" in §§ 3.1.2–3.1.5. Section 3.1.7 does not affect other provisions of the Agreement. In particular, it has no effect on Motorola's obligation under § 8.3 to license its standard-essential patents as an Affiliate of Google.

    **a.  Section 3.1.7 is a stand-alone royalty cap provision.**

    As explained above, § 3.1.7 sets forth the "Royalties and Payments" owed by Enterprise Licensees, who have taken a combined license to all of the Title-by-Title, Subscription, Free Television, and Internet Broadcast AVC Video licenses (otherwise available under §§ 2.2-2.5 for the royalties and payments set forth in §§ 3.1.2-3.1.5). Section 3.1.7 provides for a royalty cap "in lieu of" the combined payment that would otherwise be due pursuant to the individual royalty requirements for each of those four licenses. Section 3.1.7 includes a limitation on the applicability of that royalty cap to Affiliates, but it imposes no other obligations and grants no other rights. While the annual royalties payable on account of the "Combined Sales of a Licensee and each of its Affiliates" under the AVC Products and OEM License grants are also capped (§§ 3.1.1, 3.1.6), there is no corresponding obligation (as there is in § 3.1.7) that the Licensee notify MPEG LA of the Affiliates covered by these royalty caps.

    **b.  Section 3.1.7 does not affect other portions of the Agreement or
Motorola's obligation to license its standard essential patents as an
Affiliate of Google.**

    As Motorola conceded at the January 28, 2013 hearing, Motorola is an Affiliate of Google as that term is used in the Agreement. (1/28/2013 Hearing Tr. 38:13–18.) The grant-back obligation of the Agreement extends to the patents of a "Licensee and its Affiliates." Agreement § 8.3. But for its strained argument based on the parenthetical "(commensurate to the scope of the licenses which Licensee has selected hereunder)" appearing in § 8.3, Motorola also conceded that it would be obligated to license its standard-essential patents under the grant-back provision. (1/28/2013 Hearing Tr. 47:5–18.)

Honorable James L. Robart
March 1, 2013
Page 4

But § 3.1.7 has no connection whatsoever to "the scope of the licenses which Licensee has selected hereunder." At the hearing, Motorola's counsel repeatedly—and erroneously—suggested that a Licensee like Google can "select" to license its Affiliates, and urged the Court to find that "scope" in § 8.3 of the Agreement concerns what Affiliates a Licensee has "selected":

> [Scope] can cover whether the licensee, Google, selects to have its affiliates licensed, or does not select to have them licensed. And it's important here that Google never selected to have Motorola licensed.
> . . .
> Neither the 2009/2010 Enterprise-type license, or the 2011/2012 AVC product-type license, ever resulted in the selection by Google of a license for its affiliate, Motorola.
> . . .
> [U]nder the "commensurate" parenthetical, because Google did not elect to have a license extend to Motorola, the grant-back of a license by Google commensurately does not cover any grant-back of patent rights from Motorola.

(1/28/2013 Hearing Tr. 41:24–42:2, 42:14–17, 46:10–13.)

Motorola's suggestion that "scope" involves "selection" of Affiliates is baseless. The Agreement is explicit that Licensees have no ability to "select" a license for their Affiliates:

> No Sublicenses. Subject to Article 3.1.7, the sublicenses granted in Sections 2.1 through 2.7 of this Agreement do not include the right of the Licensee to grant any further sublicenses. The Licensing Administrator is willing to offer an AVC Patent Portfolio License to any Affiliate of Licensee.

Agreement § 2.9. While this provision cross-references § 3.1.7, as discussed above that section only applies to Affiliates *which are themselves Licensees.* Contrary to Motorola's suggestion, the "scope" of the license Google selected cannot concern whether Google "selects to have its Affiliates licensed," because the Agreement provides no ability for Google to make any such selection. Google can "select" any of the different licenses described in §§ 2.1–2.7 of the Agreement, but it cannot "select" any license for Motorola, or "select" to include Motorola in Google's license. Section 3.1.7 would allow Google and Motorola to make a single, combined, capped royalty payment for an Enterprise License, but Motorola must first take *its own* license—a license independent of Google's license, and one the Agreement specifically declares that the "Licensing Administrator is willing to offer" (§ 2.9)—in order to obtain that benefit. If Motorola did so, it would have its own grant back obligation.

For this reason, as Microsoft explained in its Post-Trial Brief Concerning Google's AVC Patent Portfolio License, the definition of Affiliate in the Agreement could not possibly be limited to those already-licensed Affiliates identified by an Enterprise Licensee pursuant to §§ 3.1.7 and 3.3. (*See* ECF No. 614 at 6.) That interpretation has no basis in the language of the

Honorable James L. Robart
March 1, 2013
Page 5

Agreement:  if "Affiliate" in the grant-back provision of § 8.3 meant "already-licensed Affiliates identified by an Enterprise Licensee," such Affiliates would already have their own, independent grant-back obligation as Licensees, rendering the language "and its Affiliates" superfluous.  And Motorola's interpretation is flatly inconsistent with the purpose of the provision—to "prevent[ ] a Licensee from avoiding its grant-back obligation by holding patents indirectly, for example, via a subsidiary that it controls." (ECF No. 641 (Declaration of Lawrence Horn) ¶ 18; *see also id.* ¶ 13; 1/28/2013 Hearing Tr. 51:24–54:16; ECF No. 614 at 6–7.)  It is precisely for that reason that the parties who negotiated the AVC Patent Portfolio license, including Motorola, agreed that "*all* Affiliates of a Licensee (rather than, for example, only the Affiliates of an Enterprise Licensee that are expressly identified by the Enterprise Licensee) needed to be included in the grant back obligation under Section 8.3." (ECF No. 641 (Declaration of Lawrence Horn) ¶ 18 (emphasis added).)

Section 3.1.7 allows Google the option of bringing its licensed Affiliates under a single royalty cap for a specific subset of AVC license types.  There is no basis in the language of the Agreement or its purposes to conceive of § 3.1.7 as allowing Google the option of holding AVC/H.264 standard-essential patents in a subsidiary to evade its grant-back obligations.

Very truly yours,

CALFO HARRIGAN LEYH & EAKES LLP

Arthur W. Harrigan, Jr.

cc:    ECF Notification List