# SUMMIT LAW GROUP®

*a professional limited liability company*

RALPH H. PALUMBO
DID: (206) 676-7042
EMAIL: *ralph@summitlaw.com*

March 1, 2013

The Honorable James L. Robart
United States District Court
Western District of Washington
700 Stewart Street, Suite 14128
Seattle, WA 98101-9906

    Re:    ***Microsoft Corp.* v. *Motorola Mobility, Inc.***
            Case No. C10-1823-JLR

Dear Judge Robart:

Motorola respectfully submits this response to the Court's February 21, 2013 order (Dkt. # 654) regarding the construction of the Google-MPEG LA License agreement.

The Court has posed two questions:

    (1)    Is the court's understanding of the language of Section 3.1.7 of the Google-MPEG LA License correct?

    (2)    Is Section 3.1.7 of the Google-MPEG LA License Agreement a stand-alone royalty cap provision, or does the section affect other provisions of the license agreement, and in particular does Section 3.1.7 affect Motorola's obligation to license its standard essential patents as an Affiliate of Google?

*See* Dkt. 654 at 3.

In response to Question 1, Motorola submits that the Court's interpretation of Section 3.1.7 is correct. In response to Question 2, Section 3.1.7 is not a stand-alone royalty cap, and is relevant to the grant back obligations set forth in Section 8.3 of the agreement. Motorola notes, however, that nonparty Google Inc. is the "Licensee" under the Google-MPEG LA License; Motorola Mobility LLC is not a party to that agreement. As explained at the hearing, it is undisputed that although Google has in the past selected an Enterprise License under Section 3.1.7, Google did not take an Enterprise License in

315 FIFTH AVE S SUITE 1000
SEATTLE, WASHINGTON 98104
*telephone* 206 676-7000
*facsimile* 206 676-7001
www.summitlaw.com

The Honorable James L. Robart
March 1, 2013
Page 2

2012. As explained below, the particular license selected by Google directly affects not only the scope of the grant back obligation under Section 8.3, but also affects the scope of any grant back license required under the grant back obligation because the grant back licenses must be commensurate in scope with the selected license.[1]

### (1) The Court's understanding of Section 3.1.7 of the Google-MPEG LA License is correct.

Section 3.1.7 of the Google-MPEG LA license states in relevant part:

> **3.1.7 Enterprise Licensees.** Pursuant to Article 2.7 and notwithstanding anything to the contrary in Article 2.9 hereof, and in lieu of the royalties specified in Articles 3.1.2, 3.1.3, 3.1.4 and 3.1.5, a Licensee and *its Affiliates which are licensees under the AVC Patent Portfolio License and are identified in writing to the Licensing Administrator by Licensee* shall pay no more than the following total amounts in each Calendar Year for all such licenses for the combined Sales of Licensee and its Affiliates during such year:
>
> [Prescribing royalty amounts and caps.]

(Emphases added.)

The Court in its February 21, 2013 order correctly determined the plain meaning of this section is that a "Licensee and its Affiliates fall under the royalty cap prescribed therein only if the Affiliates are themselves licensee[s] under the AVC Patent Portfolio and are identified by the Licensee in writing to the Licensing Administrator." Dkt. 654 at 2. Motorola submits that the Court's interpretation is correct and consistent with the plain meaning of Section 3.1.7.

Under New York law, "[i]f the court finds that the contract is not ambiguous it should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence." *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London, England*, 136 F.3d 82, 86 (2d Cir. 1998). Contract language is ambiguous when it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Albany Savings Bank, FSB v. Halpin*, 117 F.3d 669, 673-74 (2d Cir. 1997). Whether the terms of a

---

[1] Motorola further understands that the Court wants to understand the relevance of the Google-MPEG LA License to its determination of the RAND rate and range for Motorola's H.264- essential patents. Motorola respectfully submits that the Google-MPEG LA License itself is no more relevant than any other MPEG LA H.264/AVC License Agreement currently in the record.

The Honorable James L. Robart
March 1, 2013
Page 3

contract are ambiguous is a matter of law for the court to decide. *Alexander & Alexander*, 136 F.3d at 86.

Here the term, "its Affiliates which are licensees under the AVC Patent Portfolio License and are identified in writing to the Licensing Administrator by Licensee," is grammatically straightforward. The payment caps (*i.e.*, "shall pay") apply to the Licensee and Affiliates but only when those entities "*are* licensees" and "*are* identified in writing." In other words the royalty caps do not apply if the purported affiliate is neither a licensee nor identified to the Licensing Administrator. This definitional prerequisite to the applicability of the licensing caps is in accord with the remainder of the contract. The language in question is capable of no other meaning; indeed, Microsoft's MPEG LA witness, Mr. Horn, did not suggest in his declaration that MPEG LA or any MPEG LA licensee has ever suggested that Section 3.1.7 is ambiguous or capable of more than one meaning. Accordingly, the plain meaning applies and the Court's construction is correct.

    **(2)**     **Section 3.1.7 of the Google-MPEG LA License is not a standalone royalty cap provision.**

Though Microsoft will likely argue that Section 3.1.7 is a standalone royalty cap provision and has no relationship to the "scope" of the license granted Google, its position is contrary to the plain meaning of the Google-MPEG LA License and contradicted by its own counsel's statements at oral argument.

Section 3.1.7 permits a Licensee to elect an "Enterprise License" for itself and its identified Affiliates, and sets out royalties to be paid under that Enterprise License. The identities of licensed Affiliates are plainly relevant to both the scope of the license granted to Google, and to any cross-license Google may be obligated to provide under Section 8.3. Accordingly, whether Google has elected an Enterprise License and identified Motorola as an Affiliate to be licensed under that Enterprise License is relevant to determining whether a grant back "commensurate to the scope" of the license selected by Google includes rights to Motorola's patents, and whether any required grant back license must also be an Enterprise License.

Section 3.1.7 is not a standalone section. Under Section 3.1.7, each year Google has the alternative to choose an Enterprise License for itself and any Google Affiliates who are themselves Licensees under the AVC Patent Portfolio and are identified by Google in writing to the Licensing Administrator, and pay capped royalties in lieu of paying the royalties due from Google individually under Articles 3.1.2, 3.1.3, 3.1.4 and 3.1.5 (and any individual Affiliate-Licensee). Thus, in years when Google selects an Enterprise License for itself and its identified Licensee-Affiliates, the scope of the license grant extends to both Google and its identified Affiliates.

The Honorable James L. Robart
March 1, 2013
Page 4

In years such as 2012 when Google does not select an Enterprise License, and instead chooses to pay individual royalties under Articles 3.1.2, 3.1.3, 3.1.4 and 3.1.5, the scope of the license selected by Google does not extend to its Affiliates. Section 2.9 of the Google-MPEG LA License makes clear that Affiliates are only licensed under the Agreement if Google, as Licensee, selects an Enterprise License under Section 3.1.7:

> **2.9** **No Sublicenses.** *Subject to Article 3.1.7*, the sublicenses granted in Sections 2.1 through 2.7 of this Agreement do not include the right of the Licensee to grant any further sublicenses. The Licensing Administrator is willing to offer an AVC Patent Portfolio License to any Affiliate of Licensee.

(Emphasis added.) Thus, in years when Google does <u>not</u> select an Enterprise License under Section 3.1.7, the scope of the license grant extends only to Google, and not any Affiliates.

This interpretation is consistent with the plain meaning of the agreement, and with the extrinsic evidence. In particular, as described in Motorola's Brief Regarding Extrinsic Evidence Relevant to the Google-MPEG LA License (Dkt. # 642 at 4-5), correspondence between Google and MPEG-LA shows that in order to obtain a license for its affiliates, Google must elect an Enterprise License and must provide the Licensing Administrator a list of Google Affiliates to be covered under the Enterprise License. For example, in March, 2010, Google wrote to MPEG LA that "Google has elected the AVC Enterprise License for both 2009 and 2010. We are still in negotiations with Mr. Harkness concerning a side letter explicitly listing the Google affiliates covered under our 2009 and 2010 EVC Enterprise Licenses." Post Decl., Ex. A (Dkt. # 616-1) at GGMM-00032972. The side letter further stated that Google may select Affiliates to be included in the scope of its Enterprise License:

> While the AVC License does not contain a term under which all Affiliates of Google may receive coverage under Google's AVC License, and each Affiliate may take its own AVC License in its own name, Google desires to include its Affiliates in its license grant pursuant to the AVC License…
>
> …Google will submit to MPEG LA a list of Affiliate(s), each a Legal Entity that it wishes to include in its license grant under the AVC License….

*Id.* at GGMM-00032974.

In particular, the language of Section 3.1.7 is relevant to determining the scope of the grant back under Section 8.3. Section 8.3 states:

The Honorable James L. Robart
March 1, 2013
Page 5

> **8.3** **Licensee Grant.** Upon full execution of this Agreement, Licensee agrees to grant a worldwide, nonexclusive license and/or sublicense (commensurate to the scope of the licenses which Licensee has selected hereunder) under any and all AVC Essential Patent(s) that Licensee and its Affiliates, if any, have the right to license and/or sublicense, to any Licensor or any sublicensee of the Licensing Administrator desiring such a license and/or sublicense on fair and reasonable terms and conditions. For purposes of this Section 8.3 only, the Licensors' per patent share of royalties which are payable pursuant to Article 3 of this Agreement shall be presumed to be a fair and reasonable royalty rate for the aforementioned license and/or sublicense to be granted by the Licensee.

As noted above, nonparty Google is the "Licensee" under the Google-MPEG LA agreement. Thus, to the extent Section 8.3 imposes any obligation to offer cross-licenses, that obligation applies to Google, not Motorola.

Microsoft's counsel recognized at argument that the parenthetical "commensurate to the scope of the licenses which Licensee has selected hereunder" refers to whether Google as Licensee has selected the AVC patent portfolio license, the OEM AVC product license, or the Enterprise license. *See* 28 Jan. 2013 Hearing Tr. at 51:7-17. Microsoft's counsel further acknowledged that "[t]he licenses, "selected hereunder" that matter in this case are the AVC product license and the OEM license"—Google has not selected an Enterprise License for this year. *See id.* at 53:18-21.

Because Google has not selected an Enterprise License under Section 3.1.7 and identified Motorola in writing as an Affiliate to be licensed under the Enterprise License, under the plain meaning of Sections 2.9, 3.1.7, and 8.3, the "scope of the licenses which Licensee has selected hereunder" does not include a license for Motorola and its products. Accordingly, under the plain meaning of the agreement, a grant back license commensurate to the scope of the license selected by Google cannot include a grant back for rights to Motorola's patents.

Though Microsoft has argued that Affiliates' patents must be included in Section 8.3's grant back even when those Affiliates are not themselves licensed, to prevent Licensees from using unlicensed holding companies to shield those patents from MPEG LA, that argument does not comport with the language of the contract. The plain meaning of the "commensurate to the scope of the licenses which Licensee has selected hereunder" parenthetical belies Microsoft's argument. And neither Microsoft nor its MPEG LA witness Mr. Horn identified any situation when an MPEG LA licensee has ever actually engaged in shielding patents through unlicensed holding entities. And it cannot be disputed that Motorola is not a shell holding company—Motorola is an operating, separate business affiliate of Google with its own products. The Court should interpret

The Honorable James L. Robart
March 1, 2013
Page 6

the Google-MPEG LA License in light of the facts of the case, and not any hypothetical or imagined harm.

The facts support the conclusion that a grant back "commensurate to the scope" of the license selected by Google cannot include a cross-license to unlicensed Google affiliates' patents. The clear intent of Section 8.3 is that the license grants for the MPEG LA Licensors and any pool Licensee should be reciprocal. But Motorola has obtained no license rights from MPEG LA under the Google-MPEG LA License, and thus has no duty of reciprocity to Microsoft or any other MPEG LA Licensor.

This interpretation is also consistent with industry practice, and produces an equitable result. Cross-licensing is common among standards-essential patent owners, and permits both parties involved to obtain freedom of action for their products. But an unlicensed business should have no obligation to give up their patent rights to the MPEG LA Licensors unless and until it seeks to obtain protection for its own products under an MPEG LA license. Accordingly, whether Google, as an MPEG LA Licensee, has selected an Enterprise License under Section 3.1.7, and the identity of any Affiliates to be covered under that Enterprise License, is directly relevant to the Court's determination of the scope of the license selected by Google and any cross-license owed to MPEG LA's Licensors.

Section 3.1.7 is also relevant to determining to whom Google is obligated to license under Section 8.3 and what terms Google is obligated to offer. As an example, if Google has not selected an Enterprise License, Google is not obligated to grant an Enterprise License to Microsoft or any other MPEG LA Licensor. Thus, because Google did not select an Enterprise License, Microsoft is not entitled to a grant back license for its affiliates, nor may Microsoft enjoy the benefit of Section 3.1.7's enterprise royalty cap. Microsoft can only obtain a grant back license "commensurate to the scope" of the license chosen by Google—which in this case, as Microsoft's counsel has acknowledged, does <u>not</u> include an Enterprise License covering Microsoft subsidiaries. *See* 28 Jan. 2013 Hearing Tr. 53:18-21.

Respectfully,

SUMMIT LAW GROUP PLLC

*/s/ Ralph H. Palumbo*

Ralph H. Palumbo

cc:     All Counsel of Record