# EXHIBIT A

4

```
 1                  UNITED STATES DISTRICT COURT

 2             WESTERN DISTRICT OF WASHINGTON AT SEATTLE

 3     _____

 4      MICROSOFT CORPORATION,         )
                                       )
 5                   Plaintiff,        ) 10-01823-JLR
                                       )
 6      v.                             ) SEATTLE, WASHINGTON
                                       )
 7      MOTOROLA INC., et al,          ) May 7, 2012
                                       )
 8                   Defendants.       ) Motions
                                       )
 9     _____

10                   VERBATIM REPORT OF PROCEEDINGS
                 BEFORE THE HONORABLE JAMES L. ROBART
11                   UNITED STATES DISTRICT JUDGE
       _____
12

13
       APPEARANCES:
14

15

16      For the Plaintiff:      Arthur Harrigan, Christopher
                                Wion, David Pritikin, Richard
17                              Cederoth, Andy Culbert, David
                                Killough, David Howard and Shane
18                              Cramer

19

20

21      For the Defendants:     Jesse Jenner, Ralph Palumbo,
                                Norman Beamer, Philip McCune,
22                              Kevin Post and Neill Taylor

23

24

25
```

Debbie Zurn - RPR, CRR - Federal Court Reporter - 700 Stewart Street - Suite 17205 - Seattle WA  98101

1   authority to decide, and then you're all going to be sorry
2   because I'm going to do what I think is right.
3            THE COURT:  To open the door to the skeleton in that
4   closet is you all have asked for a jury.  I'm just going to
5   sit up here and watch six good citizens of the Pacific
6   Northwest decide what the royalty is.  So, if you don't want
7   that to happen, you want to start discussing that question,
8   because that's where you're headed right now.
9            MR. JENNER:  Your Honor, let me take you quickly to
10  slide 48.  Because I anticipate Microsoft feels that they got
11  some good things out of Judge Shaw and the ITC.  And I don't
12  want you to think that we agree necessarily with that.  I've
13  quoted three of the judge's conclusions from pages 300 to 303
14  where the judge focused on RAND.
15           THE COURT:  Before do you that, Judge Shaw is an
16  administrative law judge?
17           MR. JENNER:  Yes.
18           THE COURT:  And there's an appeal process?
19           MR. JENNER:  There's a petition for review by the
20  full commission.  The petitions are actually getting filed
21  today.  I think they are getting filed today.  That will
22  result in a determination by the commission of what it wishes
23  to review, probably further briefing.  And they will issue a
24  final determination sometime in late August.
25           THE COURT:  So, would it be correct to characterize

1   So the suggestion the court made that, tell us whether you
2   accept within 20 days, sounds like an ultimatum, is
3   consistent with the fact that Motorola wasn't going to back
4   off its 2.25 percent, no matter what counteroffers Microsoft
5   made.
6       THE COURT:  How do you know that?
7       MR. HARRIGAN:  Because they say so, in their brief.
8   They say they always get 2.25 percent.
9       THE COURT:  You didn't know that at the time.
10      MR. HARRIGAN:  Well, what Microsoft knew at the time,
11  Your Honor, was the demand was 2.25 percent for the standard
12  essential patents on the price of a laptop, among other
13  things -- which is kind of important, which I'll also get to
14  in a second -- and you give us your standard essential
15  patents also.  That was what Microsoft knew.
16      And what Microsoft didn't know, I presume they didn't know
17  this, was that Motorola was never backing off the
18  2.25 percent.  But what matters for this case is, was the
19  letter a breach?  Because the breach has to be measured based
20  upon what Motorola was saying when it said it, not what it
21  says now about what it really meant.
22      THE COURT:  Well, this takes me to one of my favorite
23  aspects of this case, which is how am I going to determine if
24  it was unreasonable until I know what RAND terms are?  And
25  I'm not going to know what RAND terms are until November 26th

Debbie Zurn - RPR, CRR - Federal Court Reporter - 700 Stewart Street - Suite 17205 - Seattle WA  98101

1   when the jury comes back.
2           MR. HARRIGAN:  Well, Your Honor, I think that -- if
3   we take the example of the laptop, I believe that as a matter
4   of law it's unreasonable.  And that's apart from some of the
5   other evidence with regard to the total amount of royalties
6   and how they relate to essentially being 20 percent of
7   Microsoft's annual profits for a tiny little piece of the
8   operating system.
9       The fact is that Motorola's technology that contributes to
10  the operating system is a tiny little part of Microsoft's
11  operating system.  And as a matter of law, the only way that
12  Motorola could get a percentage of the price of the operating
13  system, would be to demonstrate that its little contribution
14  to that operating system is the basis for customer demand for
15  the operating system.  But it's not asking for a percentage
16  of the operating system, it's asking for a percentage of the
17  laptop price.
18      There is no way that Motorola's standards essential
19  patents on this, for the operating system, are on the basis
20  of customer demand for it, much less the customer demand for
21  the laptop, which is the requirement under the entire Market
22  Value Rule, if you are going to get a royalty based on a
23  percent of the product price.  And under those cases the
24  burden is on the Patent Holder to demonstrate that its
25  technology is the basis of customer demand.

1    breach that, in fact, there is no way to get there by reading
2    those two letters.  They asked for 2.2 -- there were two
3    standards.  They sent two letters.  They asked for
4    2.25 percent in each letter.  They listed the products they
5    wanted it on.  If you read those two letters you would
6    immediately conclude that you're paying four and a half
7    percent total; or at least that they were separate royalties
8    for 2.25 percent, for each standard.
9         And Motorola has come forward with no evidence to suggest
10   that that level of royalty would be reasonable.  And so if
11   we're going to measure their conduct in those letters it
12   should be measured in the way that -- it should be measured
13   according to the way that the letters were written.  And you
14   just can't get to the position that they now say is their
15   normal approach.
16        Let me just see if I have left off anything terribly
17   important.  Oh, one other thought I did want to express, Your
18   Honor, you alluded to the jury setting the RAND rate, or
19   determining the terms.  And we believe the court can decide
20   that without a jury.  We're not here to debate that today.
21   But I just want to let you know that that's something that
22   would probably be debated when the appropriate time comes.
23   Thank you.
24              MR. JENNER:  Your Honor, at the risk of wearing out
25   my welcome, will you take four points in reply?

1  policy for the federal court.

2     In other words, federal courts should permit and even
3  encourage the parties to continue negotiations in good faith
4  until it's clear that both have negotiated in good faith, and
5  they have a genuine good-faith disagreement on the RAND
6  terms, and the dispute will not be resolved without the
7  court's intervention to resolve the dispute.  Proceeding in
8  that manner does not require any change in the case schedule
9  in this case.  Motorola and Microsoft have something less
10 than seven months between now and November 19th to reach an
11 agreement on all the RAND terms.

12    So what are the possibilities?  First possibility, you
13 could determine on November 19th that one or the other party
14 had not negotiated in good faith, and you could think about
15 remedies for that.  Second possibility, the parties could
16 reach an agreement on some but not all RAND license terms.
17 And if the court then determined that it was going to submit
18 those terms to the court's determination, you'd have less to
19 deal with.  Or, the parties could agree upon all terms.  And
20 proceeding in that manner is, we think, consistent with the
21 law, we think it's good policy for the federal court, and we
22 think it makes a great deal of sense.

23          THE COURT:  Does that mean you're joining Microsoft
24 in taking this issue away from the jury?

25          MR. PALUMBO:  We have to think about that, Your

1  Honor.  We certainly considered whether this is simply a
2  matter of equity that would be for your determination only.
3  But I'd like to talk with the clients and talk with the other
4  lawyers before we weigh in.  But if there is a disagreement
5  between us and Microsoft on that point, I'm sure you're going
6  to hear about it and the basis for it.
7       So the issues before the court are the two issues that I
8  have on the screen.  Do the RAND Letters of Assurance and our
9  offer to Microsoft categorically bar Motorola for seeking
10 injunctive relief for the three H.264 patents?  It's only the
11 H.264 patents that are at issue in this motion.  And the
12 second issue is whether you should refrain from determining
13 whether Motorola could meet its burden of proving the
14 four-part test.
15      This motion comes to you in a manner that is somewhat
16 unprecedented.  In all the cases cited in both the parties'
17 briefs, the Patent Holder makes a motion for injunctive
18 relief, supported by evidence that the Patent Holder has
19 offered to satisfy the four-part test for granting injunctive
20 relief.  Some of those cases are preliminary injunction
21 cases, some are permanent injunction cases where there had
22 been a finding at trial of patent validity and infringement.
23 Motorola has not made and does not intend to make a
24 preliminary injunction motion.
25      If Motorola's patents are judged valid and Microsoft's

# EXHIBIT B

```
 1              UNITED STATES DISTRICT COURT

 2          WESTERN DISTRICT OF WASHINGTON AT SEATTLE

 3   _____

 4   MOTOROLA INC., et al,          )
                                    )
 5                   Plaintiffs,    ) 11-1408-JLR
                                    )
 6   v.                             ) SEATTLE, WASHINGTON
                                    )
 7   MICROSOFT CORPORATION,         ) June 14, 2012
                                    )
 8                   Defendant.     ) Markman Tutorial
                                    ) and Status Conf.
 9   _____

10               VERBATIM REPORT OF PROCEEDINGS
              BEFORE THE HONORABLE JAMES L. ROBART
11                 UNITED STATES DISTRICT JUDGE
     _____
12

13
     APPEARANCES:
14

15

16    For the Plaintiff:     Jesse Jenner, Ralph Palumbo,
                             Steve Pepe, Stuart Yothers, Khue
17                           Hoang and Mark Rowland

18

19

20    For the Defendants:    Arthur Harrigan, Theodore
                             Chandler, Shubham Mukherjee, John
21                           McBride, Christopher Wion, Rick
                             Cederoth, Andy Culbert and David
22                           Pritikin

23

24

25
```

1   can pick a jury in a morning.  My procedure is to ask the
2   bench-book questions, take stuff out of your proposed voir
3   dire, which is usually loaded up with things that you don't
4   want to ask, and it's easier for the court to ask, and then
5   give counsel the opportunity to do their own voir dire.
6       It is not unusual to have a couple, sometimes more than
7   that, of the jury pool be Microsoft employees, because
8   Microsoft has a very gracious policy in regards to jury
9   service, which the court appreciates immensely.  I'm not sure
10  the criminals do.
11      As a result, your jury selection may be slightly more
12  difficult, and therefore it's going to vary a little bit on
13  how much remaining trial time you have.  And that's why we'll
14  get to your third topic.
15          MR. HARRIGAN:  In a nutshell, Your Honor, the parties
16  agree there is no jury involved -- there's no jury
17  requirement with respect to the court's determination of what
18  is RAND, and the contract, and so forth; and disagree with
19  respect to whether a jury would be required to deal with the
20  breach of contract part of the case.
21          THE COURT:  All right.
22          MR. HARRIGAN:  And we will continue to see if we can
23  reach agreement, otherwise we're probably going to be
24  briefing this issue for the court.
25          MR. PALUMBO:  That's right, Your Honor.  Our

1  agreement is that the court would decide all the material
2  terms of the RAND license.  And we currently have a
3  disagreement with respect to whether the breach of contract
4  action would be tried by the court or by a jury.
5      And since -- if we can't reach agreement on that, it will
6  require briefing.  We're just going to put it off and submit
7  briefs on that issue if it becomes a question.
8      And in requesting ten days, I had assumed in our
9  calculation that we would take a half a day to select the
10 jury.  So I think our request for ten days is not dependent
11 on whether there is or is not a jury.
12          MR. HARRIGAN:  Just one qualification, Your Honor.
13 We don't mean, in the way Mr. Palumbo expressed the first
14 part of that, to be defining what the court is deciding.
15 We're just saying that the RAND determination part of the
16 case doesn't require a jury, whatever that may be.
17          THE COURT:  All right.
18          MR. PALUMBO:  And our position, as stated again, if
19 we have a disagreement on whether you're deciding all the
20 RAND terms, or what those terms are, that is going to be
21 subject to briefing.  So we're simply putting that over.  So
22 that's our understanding of what the issues at trial would
23 be.
24          MR. HARRIGAN:  So the issue No. 2 is a question
25 relating to a stay of the issues in this case that do not

# EXHIBIT C

```
 1                    UNITED STATES DISTRICT COURT
 2               WESTERN DISTRICT OF WASHINGTON AT SEATTLE
 3  _____
 4  Microsoft Corporation, et al.,
 5                  Plaintiffs,          NO. C10-1823JLR
 6  v.                                   TELEPHONE CONFERENCE
 7  Motorola, Inc., et al.,              SEATTLE, WASHINGTON
                                         July 9, 2012
 8                  Defendants.
 9  _____
10                   VERBATIM REPORT OF PROCEEDINGS
                  BEFORE THE HONORABLE JAMES L. ROBART
11                   UNITED STATES DISTRICT JUDGE
    _____
12
13
14  APPEARANCES:
15
    For the Plaintiffs:       Arthur Harrigan
16
17  For the Defendants:       Ralph Palumbo
                              Jesse Jenner
18
19
20  Reported by:              Denae Hovland, RPR, RMR, CRR
                              Federal Court Reporter
21                            206.370.8508
                              denae_hovland@wawd.uscourts.gov
22
23
24  Proceedings recorded by mechanical stenography, transcript
    produced by Reporter on computer.
25
```

1  since that is what is covered in your letters.
2      At one point Mr. Jenner said something about, "Oh, but,
3  Judge, you know, these agreements are 70 pages long," of which I
4  expect 69 pages and 24 lines to be boilerplate, and what you
5  really care about are the royalty rates.  And, therefore, I am
6  going to have you submit an agreed agreement, or if you are
7  unable to do so, to submit contested boilerplates and we may
8  develop one.
9      In regards to the breach of contract claim, that will not be
10 tried in the November trial date.  As I have explained to you
11 previously, my reason for that is the breach of contract, as
12 Motorola has admitted, exists in relation to the RAND Rate.  I
13 think Mr. Jenner's example was a million dollars Royalty Rate for
14 one patent and the RAND Rate turns out to be 15 cents.  Since I
15 don't know what the RAND terms are yet, it seems to me I can't
16 deal with breach of contract until RAND is determined.
17     Finally, I have waited patiently for Motorola to advise me
18 if breach of contract is a court trial or a jury trial.  I am now
19 setting a deadline of 4:30 this Friday for that election to be
20 made.
21    Mr. Palumbo, I believe you initiated the call so I'll hear
22 from you first.
23          MR. PALUMBO:  Thank you, Your Honor.  As we said in our
24 partial summary judgment briefing and during argument on the
25 partial summary judgment motions, we have been unable to find any

1  the Court and Microsoft.  We understand the urgency of resolving
2  this issue, so despite the fact that there is a lot going on,
3  including the close of fact discovery and expert reports fast
4  approaching, we would be prepared to file a brief on that issue
5  nine days from now on Wednesday, July 18th.
6       In answer to your other question, we have decided not to
7  waive the jury trial on the breach of the duty of good faith
8  issue, and with respect to that issue, we think -- we do agree
9  that that is a triable issue that the jury can determine.  In
10 other words, did Motorola accord to its obligation to negotiate
11 the contract in good faith?  We may have issues with respect to
12 whether the court can instruct the jury as to the proper RAND
13 rate, but we agree that it is a jury question as to whether
14 Motorola has conformed to its obligation to negotiate a RAND
15 license in good faith.
16         THE COURT:  Mr. Palumbo, isn't it rather late in the
17 game for Motorola to repudiate concessions made during oral
18 argument and announce another new theory of the case?  You know,
19 frankly, this -- I am sitting here in disbelief that you are
20 going to try this.
21         MR. PALUMBO:  Your Honor, I expected that you would be
22 sitting there in disbelief, and the only explanation I have is if
23 you recall, Microsoft's theory in this case has evolved since
24 they filed the complaint from asking -- to the point where they
25 said, we're committed to take a license and we want the court to

19

# EXHIBIT D

```
 1                UNITED STATES DISTRICT COURT.

 2            WESTERN DISTRICT OF WASHINGTON AT SEATTLE

 3   _____

 4    MICROSOFT CORPORATION,          )
                                      )
 5                   Plaintiff,       ) C 10-01823-JLR
                                      )
 6    v.                              ) SEATTLE, WASHINGTON
                                      )
 7    MOTOROLA INC., et al,           ) January 28, 2013
                                      )
 8                   Defendant.       ) Motion Hearing
                                      )
 9   _____

10                  VERBATIM REPORT OF PROCEEDINGS
                BEFORE THE HONORABLE JAMES L. ROBART
11                 UNITED STATES DISTRICT JUDGE
     _____
12

13
     APPEARANCES:
14

15

16   For the Plaintiff:       Arthur Harrigan, Christopher
                              Wion, David Pritikin, Rick
17                            Cederoth, Andy Culbert and Doug
                              Lewis
18

19

20

21   For the Defendants:      Jesse Jenner, Ralph Palumbo,
                              Philip McCune, Steve Pepe, Kevin
22                            Post, Gabrielle Higgins and
                              Carolyn Redding
23

24

25
```

Debbie Zurn - RPR, CRR - Federal Court Reporter - 700 Stewart Street - Suite 17205 - Seattle WA  98101

1  negotiation."  And on the last line it provides that the
2  agreement shall be construed in accordance with its terms,
3  without favor to any party.  So this entire subject is
4  superseded by the document, by the agreement, which Motorola
5  did not address.
6      Secondly, the issue of construction against the drafter in
7  this case needs to be considered in light of the fact that
8  Motorola itself was part of the drafting process, got all the
9  e-mails, understood, had every reason to understand why this
10 provision was in there, and that its scope was as stated in
11 the e-mails, and as effected by the interpretation that we
12 are advancing.
13     Finally, I would just say if you look at the New York
14 cases cited by Motorola -- in fact, two things.  One is that
15 in New York construction against the drafter is a last-resort
16 rule that applies when all other efforts to construe the
17 document have failed.  And secondly, it is generally not
18 applied to sophisticated parties.
19         THE COURT:  Mr. Harrigan, when did Google acquire
20 Motorola?
21         MR. HARRIGAN:  It was in, I believe, mid-2012.
22         THE COURT:  Why wasn't this issue brought up to the
23 court sooner?
24         MR. HARRIGAN:  Well, Your Honor, the basic reason was
25 the concern about maintaining the trial date.  The process --

1  there were various reasons.  The process of getting Google
2  into this case would have been complicated.  And we were
3  concerned if we undertook that, that we would end up
4  potentially with a continuance.  That was the primary
5  concern.
6            THE COURT:  But you inserted the issue into the
7  trial.  I'm at a loss why it wasn't raised sooner so that we
8  could have had a fuller record.
9            MR. HARRIGAN:  Well, Your Honor, I believe what we
10 did was to argue that the acquisition and the agreement
11 created a very clear comparable, number one.  And number two,
12 as a matter of law this will determine what Motorola's
13 royalty rate is.  And that is a legal issue that we believe
14 the court can decide without Google being in the case.  It's
15 a legal issue that bears on the RAND rate as between
16 Microsoft and Motorola, because at the end of the day it will
17 determine that.  And it wouldn't make much sense to adopt a
18 rate that's different from the one that the contract is going
19 to compel.
20     So, I'm frankly not -- I don't have memorized exactly what
21 the procedural sequence was.  But we did argue it soon after
22 it came up.  We wrote a letter to Google and asked for them
23 to honor the agreement.  And I apologize if we didn't act as
24 promptly as we might have.  But our main concern was, do we
25 need to bring Google in?  And we concluded that whether we