# EXHIBIT A

HONORABLE JAMES L. ROBART

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION, a
Washington corporation,

                Plaintiff,

    vs.

MOTOROLA, INC., and MOTOROLA
MOBILITY, INC.,

                Defendants

Case No. 2-10-cv-01823-JLR

MICROSOFT CORPORATION'S
INITIAL DISCLOSURES PURSUANT
TO FEDERAL RULE OF CIVIL
PROCEDURE 26(a)(1)(A)

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Plaintiff Microsoft Corporation ("Microsoft") hereby makes its initial disclosures. Microsoft makes the following initial disclosures based on the information and materials reasonably available to it. Microsoft reserves the right to supplement its initial disclosures based on information or evidence discovered, offered, or introduced later in this action. Information subject to the attorney-client privilege, work product doctrine, or any other applicable privilege has not been disclosed.

**A.**     **Rule 26(a)(1)(A)(i).**

    1.     Current and former employees of Microsoft include, but are not limited to:

MICROSOFT CORPORATION'S INITIAL
DISCLOSURES PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 26(a)(1)(A) - 1

6

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

a.    Horacio Gutierrez
Microsoft Corporation
One Microsoft Way
Redmond, WA  98052

Mr. Gutierrez is Microsoft's Corporate Vice President and Deputy General Counsel, Intellectual Property and Licensing, and may have knowledge regarding Motorola's license demand letters dated October 21, 2010 and October 29, 2010.  Mr. Gutierrez may be contacted through undersigned counsel.

b.    Bart Eppenauer
Microsoft Corporation
One Microsoft Way
Redmond, WA  98052

Mr. Eppenauer is Microsoft's Chief Patent Counsel and may have knowledge regarding the applicable standards and licensing of standards-related patents.  Mr. Eppenauer may be contacted through undersigned counsel.

2.    Current and former employees of Motorola, Inc., Motorola Mobility, Inc., and General Instrument Corporation likely to have discoverable information on subjects including, but not limited to, the following:  Motorola's October 21, 2010 and October 29, 2010 demand letters to Microsoft; Motorola's participation in the adoption and implementation of the WLAN/802.11 and/or H.264 standards; licensing terms offered by Motorola to persons or entities for licenses to Motorola's patented technology it claims is essential to implementation of the WLAN and/or H.264 standards; terms upon which Motorola has accepted licenses from other entities for patented technology necessary for implementation of the WLAN and/or H.264 standards; development of Motorola's allegedly "essential" patents; and Motorola's efforts to protect its allegedly "essential" patents from infringement.  Individuals in this category who are likely to have discoverable information include, but are not limited to:

a.    Kirk Dailey
c/o Summit Law Group PLLC

b.    Ajay Luthra
c/o Summit Law Group PLLC

3.    All individuals likely to have discoverable information listed in Defendants' Initial Disclosures.

MICROSOFT CORPORATION'S INITIAL
DISCLOSURES PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 26(a)(1)(A) - 2

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

4.    The following individuals are likely to have discoverable information, or otherwise are likely to know relevant facts about the standards at issue in this lawsuit, and/or Defendants' commitments to make licenses available on RAND terms:

a.    IEEE-SA Standards Board
445 Hoes Lane
Piscataway, NJ  08854
Phone: (732) 981-0060

b.    International Telecommunications Union
Place des Nations
1211 Geneva 20
Switzerland
Phone: 41 22 730 5111

Microsoft has not yet identified its testifying expert witnesses but will provide information consistent with the expert witness disclosure deadlines established by the Court and the Federal Rules.

By way of further disclosure, Microsoft also refers to those persons identified in any documents produced or referenced in conjunction with these Initial Disclosures, and to any witness identified in any depositions or answers to discovery by the parties.

**B.    Rule 26(a)(1)(A)(ii).**

The documents identified in response to Rule 26(a)(1)(A)(ii) fall within the following categories:

1.    Defendants' October 21, 2010 demand letter.

2.    Defendants' October 29, 2010 demand letter.

3.    Defendants' Letters of Assurance to the IEEE-SA with respect to the IEEE-SA's adoption and implementation of the WLAN/802.11 standard.

4.    Defendants' Patent Statement and Licensing Declarations submitted to the ITU-T with respect to the ITU-T's adoption and implementation of the H.264 standard.

MICROSOFT CORPORATION'S INITIAL
DISCLOSURES PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 26(a)(1)(A) - 3

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700    FAX, (206) 623-8717

8

Microsoft also refers to those documents identified in the Initial Disclosures made by Defendants, and to any document identified in any depositions or answers to discovery by the parties.

**C.**     **Rule 26(a)(1)(A)(iii).**

Microsoft claims its damages arising out of Defendants' breaches of their contractual commitments to the IEEE-SA, ITU-T, and Microsoft, as well as Microsoft's damages arising out of its reliance on Defendants' promise that they would license any essential patents on RAND terms and conditions.  Microsoft also seeks injunctive and declaratory relief.  Without the benefit of discovery, Microsoft is not able at this time to provide a computation of damages, but will seek all damages available under law.  Microsoft's damages include those that it has suffered as a result of defending against Defendants' actions in the District Court for the Western District of Wisconsin and before the ITC to enjoin or exclude Microsoft from practicing the WLAN/802.11 and H.264 standards.

**D.**     **Rule 26(a)(1)(A)(iv).**

Microsoft is unaware of any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment on Microsoft's claims in this action, or to indemnify or reimburse for payments made to satisfy the judgment.

**E.**     **Additional Reservation of Rights.**

Microsoft's disclosures are based upon a good-faith effort to obtain information reasonably available to it at this time.  At this early stage, it is not possible to identify all individuals and documents, data, compilations, or other tangible things that may have some relevance to the disputed facts.  Microsoft reserves the right to supplement its persons and document lists as additional information and materials come to light pursuant to Rule 26(e).

MICROSOFT CORPORATION'S INITIAL
DISCLOSURES PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 26(a)(1)(A) - 4

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

9

DATED this 7th day of February, 2011.

DANIELSON HARRIGAN LEYH & TOLLEFSON LLP

By ____/s/ Christopher Wion_____
      Arthur W. Harrigan, Jr., WSBA #1751
      Christopher Wion, WSBA #33207
      Shane P. Cramer, WSBA #35099

T. Andrew Culbert
David E. Killough
MICROSOFT CORPORATION
1 Microsoft Way
Redmond, WA  98052
Phone:  425-882-8080
Fax:  425-869-1327

John W. McBride, of Counsel
David T. Pritikin, of Counsel
Richard A. Cederoth, of Counsel
Douglas I. Lewis, of Counsel
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL  60603
Phone:  312-853-7000
Fax: 312-853-7036

Brian R. Nester, of Counsel
Kevin C. Wheeler, of Counsel
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC  20005
Telephone:  202-736-8000
Fax: 202-736-8711

Counsel for Plaintiff Microsoft Corp.

MICROSOFT CORPORATION'S INITIAL
DISCLOSURES PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 26(a)(1)(A) - 5

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

# EXHIBIT B

HONORABLE JAMES L. ROBART

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>            Plaintiff,<br><br>    v.<br><br>MOTOROLA, INC., et al.,<br><br>            Defendants. | Case No. 2-10-cv-1823-JLR<br><br>MICROSOFT CORPORATION'S FIRST SUPPLEMENTAL DISCLOSURE OF WITNESSES |
| MOTOROLA MOBILITY, INC., et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>MICROSOFT CORPORATION,<br><br>            Defendant. | |

Plaintiff Microsoft Corporation ("Microsoft"), through counsel undersigned, makes the following supplemental witness designations. Microsoft makes these disclosures based on the information and materials reasonably available to it. Microsoft reserves the right to further supplement these disclosures based on information or evidence discovered, offered, or introduced later in this action.

**A.     Rule 26(a)(1)(A)(i).**

1.      Current and former employees of Microsoft include, but are not limited to:

MICROSOFT CORPORATION'S FIRST
SUPPLEMENTAL DISCLOSURE OF
WITNESSES - 1

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

12

a.   Garrett Glanz
Microsoft Corporation
One Microsoft Way
Redmond, WA 98052

Mr. Glanz is Microsoft's General Manager, Intellectual Property and Licensing, and may have knowledge regarding Microsoft's video codec licensing, licensing royalties, and the parties' participation in patent pools, including, without limitation, the parties' participation in the formation of the MPEG LA H.264 patent pool.  Mr. Glanz may be contacted through undersigned counsel.

b.   Gary Sullivan
Microsoft Corporation
One Microsoft Way
Redmond, WA 98052

Mr. Sullivan is a software design engineer at Microsoft.  He has knowledge regarding the development of the H.264/AVC video coding standard, and the parties' participation in the development of the standard.  Mr. Sullivan may be contacted through the undersigned counsel.

2.   Other potentially knowledgeable individuals include:

a.   Jennifer Ochs
Director of Intellectual Property Litigation
Marvell Semiconductor, Inc.
5488 Marvell Lane
Santa Clara, CA 95054

Ms. Ochs may be called to testify regarding Marvell Semiconductor's 802.11 chip, Marvell's requests to license Motorola's wireless communication patents, and the subsequent discussions between Marvell and Motorola relating thereto.

b.   Allen Lo
Google Inc.
1600 Amphitheatre Parkway
Mountain View, CA 94043
(650) 253-0000

MICROSOFT CORPORATION'S FIRST
SUPPLEMENT AL DISCLOSURE OF
WITNESSES - 2

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1          Mr. Lo may be called to testify regarding Google's acquisition of
Motorola; Google's enforcement of Motorola's standard essential
2          patents; his letter of February 8, 2012 to the IEEE; Google's policies
with respect to the enforcement of standard essential patents; and any
3          other information he may have that is relevant to the claims and issues in
this action.

4

5        c.      Scott Peterson
Google Inc.
6                1600 Amphitheatre Parkway
Mountain View, CA 94043
7                (650) 253-0000

8          Mr. Peterson may be called to testify regarding Google's participation in
various standard setting organizations, such as ETSI; Google's policies
9          with respect to the enforcement of standard essential patents; and any
other information he may have that is relevant to the claims and issues in
10        this action.

11

12       d.      Corporate Representative
Google Inc.
13             1600 Amphitheatre Parkway
Mountain View, CA 94043
14            (650) 253-0000

15       A corporate representative from Google may be called to testify
regarding Google's acquisition of Motorola Mobility; Google's
16       valuation of Motorola Mobility's 802.11 and H.264 standard essential
patents; Android; Google's intellectual property rights policies and
17       licensing practices; and Google's obligations under its MPEG LA AVC
Patent Portfolio License.

18

19       e.      Corporate Representative
CRA International, Inc.
20            c/o Registered Agent
Illinois Corporation Service
21            801 Adlai Stevenson Drive
Springfield, IL  62703

22

23       A corporate representative from CRA may be called to testify regarding
analysis CRA's predecessor, Intecap, performed for Motorola regarding
24       the potential licensing of Motorola's patents essential to the 802.11
standard.

25

MICROSOFT CORPORATION'S FIRST
SUPPLEMENTAL DISCLOSURE OF
WITNESSES - 3

14

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

3.     Microsoft reserves the right to call all necessary records custodians.

4.     Microsoft reserves the right to call any witness deposed in this action or identified by any of the defendants in their initial or supplemental witness disclosures.

**B.     Additional Reservation of Rights.**

Microsoft's disclosures are based upon a good-faith effort to obtain information reasonably available to it at this time. Microsoft reserves the right to supplement its disclosure of witnesses as additional information and materials come to light pursuant to Rule 26(e).

DATED this 22nd day of June, 2012.

DANIELSON HARRIGAN LEYH & TOLLEFSON LLP

By ___/s/ Shane P. Cramer_____
     Arthur W. Harrigan, Jr., WSBA #1751
     Christopher Wion, WSBA #33207
     Shane P. Cramer, WSBA #35099

T. Andrew Culbert
David E. Killough
MICROSOFT CORPORATION
1 Microsoft Way
Redmond, WA  98052
Phone:  425-882-8080
Fax:  425-869-1327

John W. McBride, of Counsel
David T. Pritikin, of Counsel
Richard A. Cederoth, of Counsel
Douglas I. Lewis, of Counsel
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL  60603
Phone:  312-853-7000
Fax:  312-853-7036

MICROSOFT CORPORATION'S FIRST
SUPPLEMENTAL DISCLOSURE OF
WITNESSES - 4

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

15

1

Brian R. Nester, of Counsel
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
Telephone: 202-736-8000
Fax: 202-736-8711

Counsel for Plaintiff Microsoft Corp.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MICROSOFT CORPORATION'S FIRST
SUPPLEMENTAL DISCLOSURE OF
WITNESSES - 5

16

## CERTIFICATE OF SERVICE

I, Linda Bledsoe, swear under penalty of perjury under the laws of the State of Washington to the following:

1.    I am over the age of 21 and not a party to this action.

2.    On the 22nd day of June, 2012, I caused the preceding document to be served on counsel of record in the following manner:

**Attorneys for Motorola Solutions, Inc., and Motorola Mobility, Inc.:**

Ralph Palumbo, WSBA #04751
Philip S. McCune, WSBA #21081          __X__   Messenger
Lynn M. Engel, WSBA #21934            _____  US Mail
Summit Law Group                     _____  Facsimile
315 Fifth Ave. South, Suite 1000      __X__   Email
Seattle, WA 98104-2682
Telephone: 206-676-7000
Email: Summit1823@summitlaw.com


Steven Pepe (*pro hac vice*)          _____  Messenger
Jesse J. Jenner (*pro hac vice*)      _____  US Mail
Ropes & Gray LLP                     _____  Facsimile
1211 Avenue of the Americas           __X__   Email
New York, NY 10036-8704
Telephone: (212) 596-9046
Email: steven.pepe@ropesgray.com
Email: jesse.jenner@ropesgray.com


Norman H. Beamer (*pro hac vice*)     _____  Messenger
Ropes & Gray LLP                     _____  US Mail
1900 University Avenue, 6th Floor     _____  Facsimile
East Palo Alto, CA 94303-2284         __X__   Email
Telephone: (650) 617-4030
Email: norman.beamer@ropesgray.com

MICROSOFT CORPORATION'S FIRST
SUPPLEMENTAL DISCLOSURE OF
WITNESSES - 6

1    Paul M. Schoenhard (*pro hac vice*)                          ‾‾‾‾‾‾  Messenger
     Ropes & Gray LLP                                             ‾‾‾‾‾‾  US Mail
2    One Metro Center                                             ‾‾‾‾‾‾  Facsimile
     700 12th Street NW, Suite 900                                  X    Email
3    Washington, DC  20005-3948
     Telephone:  (202) 508-4693
4    Email: Paul.schoenhard@ropesgray.com

5         DATED this 22nd day of June, 2012.

6

7                                              _____
                                                        LINDA BLEDSOE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MICROSOFT CORPORATION'S FIRST
SUPPLEMENTAL DISCLOSURE OF
WITNESSES - 7

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

# EXHIBIT C

HONORABLE JAMES L. ROBART

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>                    Plaintiff,<br><br>    v.<br><br>MOTOROLA, INC., et al.,<br><br>                    Defendants. | Case No. 2-10-cv-1823-JLR<br><br>MICROSOFT CORPORATION'S<br>SECOND SUPPLEMENTAL<br>DISCLOSURE OF WITNESSES |
| MOTOROLA MOBILITY, INC., et al.,<br><br>                    Plaintiffs,<br><br>    v.<br><br>MICROSOFT CORPORATION,<br><br>                    Defendant. | |

Plaintiff Microsoft Corporation ("Microsoft"), through counsel undersigned, makes the following supplemental witness designations. Microsoft makes these disclosures based on the information and materials reasonably available to it. Microsoft reserves the right to further supplement these disclosures based on information or evidence discovered, offered, or introduced later in this action.

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

**A.** **Rule 26(a)(1)(A)(i).**

1. Corporate Representative
   Marvell Semiconductor, Inc.
   5488 Marvell Lane
   Santa Clara, CA 95054

   A corporate representative from Marvell may be called to testify regarding Marvell Semiconductor's 802.11 chip, Marvell's requests to license Motorola's wireless communication patents, and the subsequent discussions between Marvell and Motorola relating thereto.

2. Corporate Representative
   MPEG LA, LLC
   6312 S Fiddlers Green Circle, Suite 400E
   Greenwood Village, Colorado 80111
   (303) 331 1880

   A representative from MPEG LA may be called to testify regarding its video coding patent pools, the parties' participation in the development of those pools, the purposes of the pools, MPEG LA's pool license rates, and obligations of licensees and their affiliates, such as Google and Motorola Mobility, under the terms of the MPEG LA standard patent license.

3. Larry Horn
   MPEG LA, LLC
   6312 S Fiddlers Green Circle, Suite 400E
   Greenwood Village, Colorado 80111
   (303) 331 1880

   Mr. Horn may be called to testify regarding MPEG LA's video coding patent pools, the parties' participation in the development of those pools, the purposes of the pools, MPEG LA's pool license rates, and obligations of licensees and their affiliates, such as Google and Motorola Mobility, under the terms of the MPEG LA standard patent license.

4. Gene Eggleston
   Motorola Mobility, Inc.
   May be contacted through Counsel for Defendants

   Mr. Eggleston may be called to testify regarding Defendants' licensing discussions and other matters relating to Marvell's request for a license to Motorola's 802.11 SEPs.

MICROSOFT CORPORATION'S SECOND
SUPPLEMENTAL DISCLOSURE OF
WITNESSES - 2

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

21

1

5.   Corporate Representative
Via Licensing
c/o Thomas Carlson
2        Rogers Joseph O'Donnell
311 California Street
3        San Francisco, CA  94104
(415) 956-2828
4

5        A representative from Via Licensing may be called to testify regarding its
802.11 and H.264 patent pools, the parties' participation in the development of
6        those pools, the purposes of the pools, Via's pool license rates, and the patents
in the pools.
7

8    **B.    Additional Reservation of Rights.**

9        Microsoft's disclosures are based upon a good-faith effort to obtain information

10   reasonably available to it at this time.  Microsoft reserves the right to supplement its disclosure

11   of witnesses as additional information and materials come to light pursuant to Rule 26(e).

12       DATED this 18th day of July, 2012.

13

14                           DANIELSON HARRIGAN LEYH & TOLLEFSON LLP

15
                    By ___s/Shane P. Cramer_____
16                       Arthur W. Harrigan, Jr., WSBA #1751
                        Christopher Wion, WSBA #33207
17                       Shane P. Cramer, WSBA #35099

18                       T. Andrew Culbert
David E. Killough
19                       MICROSOFT CORPORATION
1 Microsoft Way
20                       Redmond, WA  98052
Phone:  425-882-8080
21                       Fax: 425-869-1327

22

23

24

25

MICROSOFT CORPORATION'S SECOND
SUPPLEMENTAL DISCLOSURE OF
WITNESSES - 3

22

David T. Pritikin
Richard A. Cederoth
Constantine L. Trela, Jr.
William H. Baumgartner, Jr.
Ellen S. Robbins
Douglas I. Lewis
David C. Giardina
John W. McBride
David Greenfield

SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL  60603
Phone:  312-853-7000
Fax:  312-853-7036

Carter G. Phillips
Brian R. Nester

SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC  20005
Telephone:  202-736-8000
Fax:  202-736-8711

Counsel for Microsoft Corp.

MICROSOFT CORPORATION'S SECOND
SUPPLEMENTAL DISCLOSURE OF
WITNESSES - 4

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

23

## CERTIFICATE OF SERVICE

I, Susie Clifford, swear under penalty of perjury under the laws of the State of Washington to the following:

1.      I am over the age of 21 and not a party to this action.

2.      On the 18th day of July, 2012, I caused the preceding document to be served on counsel of record in the following manner:

**Attorneys for Motorola Solutions, Inc., and Motorola Mobility, Inc.:**

Ralph Palumbo, WSBA #04751
Philip S. McCune, WSBA #21081         _____ Messenger
Lynn M. Engel, WSBA #21934         _____ US Mail
Summit Law Group         _____ Facsimile
315 Fifth Ave. South, Suite 1000         __X__ Email
Seattle, WA  98104-2682
Telephone:  206-676-7000
Email:  Summit1823@summitlaw.com


Steven Pepe (*pro hac vice*)         _____ Messenger
Jesse J. Jenner (*pro hac vice*)         _____ US Mail
Ropes & Gray LLP         _____ Facsimile
1211 Avenue of the Americas         __X__ Email
New York, NY  10036-8704
Telephone: (212) 596-9046
Email:  steven.pepe@ropesgray.com
Email:  jesse.jenner@ropesgray.com


Norman H. Beamer (*pro hac vice*)         _____ Messenger
Ropes & Gray LLP         _____ US Mail
1900 University Avenue, 6th Floor         _____ Facsimile
East Palo Alto, CA  94303-2284         __X__ Email
Telephone: (650) 617-4030
Email:  norman.beamer@ropesgray.com

MICROSOFT CORPORATION'S SECOND
SUPPLEMENTAL DISCLOSURE OF
WITNESSES - 5

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1   Paul M. Schoenhard (*pro hac vice*)          _____ Messenger
    Ropes & Gray LLP                             _____ US Mail
2   One Metro Center                             _____ Facsimile
    700 12th Street NW, Suite 900                ___X___ Email
3   Washington, DC  20005-3948
    Telephone:  (202) 508-4693
4   Email: Paul.schoenhard@ropesgray.com

5       DATED this 18th day of July, 2012.

6

7                                    _____
                                     SUSIE CLIFFORD
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MICROSOFT CORPORATION'S SECOND
SUPPLEMENTAL DISCLOSURE OF
WITNESSES - 6

25

# EXHIBIT D

1        UNITED STATES DISTRICT COURT

2      WESTERN DISTRICT OF WASHINGTON AT SEATTLE

3    _____

4    MICROSOFT CORPORATION,           )
                                      )
5              Plaintiff,             )  C10-01823-JLR
                                      )
6    v.                               )  SEATTLE, WASHINGTON
                                      )
7    MOTOROLA INC., et al,            )   March 14, 2012
                                      )  (Phone
8              Defendant.             )  Conference)
                                      )
9    _____

10          VERBATIM REPORT OF PROCEEDINGS
          BEFORE THE HONORABLE JAMES L. ROBART
11           UNITED STATES DISTRICT JUDGE

12   _____

13   APPEARANCES:

14

15    For the Plaintiff:     Arthur Harrigan, Christopher
                             Wion, David Pritikin, Andy
16                           Culbert, Shane Cramer and David
                             Killough

17

18

19
      For the Defendants:    Ralph Palumbo, Philip McCune,
20                           Brian Cannon, Kathleen Sullivan
                             and William Price
21

22

23

24

25

1    breach of contract claim."  I recognize that there is

2    pending before me right now a motion regarding the

3    question of if it will be a jury trial or a bench trial.

4    And I don't want anything that I say today to suggest that

5    I have already decided that.

6        That then takes me back to what I think is the

7    operative complaint in this, which is the amended and

8    supplemental complaint.  The first cause of action is for

9    breach of contract.  That's paragraphs 80 through 87.

10       I want to be clear then that when you use the term

11   "Microsoft's claims," that the court is limiting you to

12   that first cause of action, the one for breach of

13   contract, and intends to rigorously hold you to that, as

14   opposed to allowing claim creep to take place in this.

15       So with those two clarifications, let me tell you what

16   our decision is based on the submission that you have

17   made.

18       The first item that you raised is supplementation of

19   discovery responses.  It is my recollection that we have

20   stayed all of the claims in your multiple matters, other

21   than in regards to the RAND claims, which include the

22   breach of contract claims.  Those are not stayed.  And,

23   therefore, it is unclear to me why you are talking about

24   supplementation of discovery responses, as you are

25   supposed to be supplementing your discovery responses as

1   you go along, according to the Civil Rules.  It doesn't

2   take some further order from the court to require you to

3   do so.

4       So I would urge you to begin preparing, if you have

5   not already, your supplementation of discovery responses

6   in anticipation for that eagerly awaited set of Findings

7   and Conclusions that are going to be forthcoming.

8           MR. PALUMBO:  Your Honor, can I make a brief

9   comment in that regard?  First, your statement of the

10  Microsoft claims that are subject to this next trial is

11  precisely what our understanding was.  We also recognize

12  the duty to supplement on both parties.

13      And so what we are about to send out is simply a

14  letter to Microsoft indicating the prior written discovery

15  which we believe would be relevant to the breach of

16  contract claim, and on which we believe Microsoft would

17  have a duty to supplement, if there is some supplement.

18  And we are prepared to do the same thing.  It would be

19  helpful for Microsoft also to get us a letter and say this

20  is our prior written discovery which we think is relevant,

21  and if you have supplementation, we would appreciate it.

22      But I agree with you, there is a continuing duty to

23  supplement, and that ought to get done, and it should only

24  be relevant to the breach of contract claims.

25          THE COURT:  Mr. Harrigan, do you have any problem

1                              CERTIFICATE

2

3

4

5

6

7

8

              I, Barry L. Fanning, Official Court Reporter, do hereby
9    certify that the foregoing transcript is true and correct.

10

11                                    S/Barry L. Fanning

12                                    _____

13                                    Barry L. Fanning

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT E

THE HONORABLE JAMES L. ROBART

1

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>                    Plaintiff,<br><br>     vs.<br><br>MOTOROLA, INC.,  et al.,<br><br>                    Defendants.<br>_____<br>MOTOROLA MOBILITY LLC, et al.,<br><br>                    Plaintiffs,<br><br>     vs.<br><br>MICROSOFT CORPORATION,<br><br>                    Defendants. | Case No. C10-1823-JLR<br><br>DEFENDANT MOTOROLA MOBILITY, INC.'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO PLAINTIFF MICROSOFT CORPORATION **AND MICROSOFT CORPORATION'S *APRIL 3, 2013 SUPPLEMENTAL* OBJECTIONS, ANSWERS, AND RESPONSES THERETO** |

10

11

12

13

14

15

16

17

18

19

**MICROSOFT CORPORATION'S *APRIL 3, 2013 SUPPLEMENTAL* OBJECTIONS, ANSWERS, AND RESPONSES TO MOTOROLA MOBILITY, INC.'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION**

20

21

22          Pursuant to Fed. R. Civ. P. 26, 33, and 34 and all applicable Local Rules, Microsoft

23  Corporation ("Microsoft") hereby submits the following answers, responses,  and objections to

24  Motorola Mobility, Inc.'s ("Defendant's" or "Motorola's") First Set of Interrogatories and

25  Requests for Production ("Discovery Requests").

**MICROSOFT CORPORATION'S *APRIL 3, 2013 SUPPLEMENTAL* OBJECTIONS, ANSWERS, AND RESPONSES - 1**

32

**GENERAL OBJECTIONS**

Microsoft makes the following General Objections to the Discovery Requests.  These General Objections are incorporated into the specific objections to each Request.  The assertion of the same or additional objections to any individual Discovery Request does not waive other General Objections that are not specifically repeated in the specific objections.  The objections set forth below are based on information presently available to Microsoft.  Microsoft reserves the right to supplement or amend these objections based on information later obtained through investigation, discovery, or otherwise.

1.      Microsoft objects to the Discovery Requests because, as more specifically stated below, they are overbroad and/or call for the production of documents and information that are neither relevant to the issues raised in this action nor reasonably calculated to lead to the discovery of relevant or admissible evidence.

2.      Microsoft objects to the Discovery Requests, including the "Definitions" and "Instructions" set forth therein, because, and to the extent that, they seek to impose on Microsoft obligations different from or greater than those imposed by federal statute, the Federal Rules of Civil Procedure, or the Local Rules.

3.      Microsoft objects to any discovery directed at information or documentation protected by the attorney-client privilege, the work product doctrine, and/or any other applicable privilege and/or immunity.  To the extent any document protected by the attorney-client privilege, the work product doctrine, and/or any other applicable privilege is produced inadvertently, Microsoft has not authorized such production, and no waiver of any privilege shall be inferred from such inadvertent production.  Unless otherwise agreed by the parties and subject to a contemporaneous exchange of privilege logs or as otherwise ordered by the Court, Microsoft will endeavor to deliver its privilege log to Motorola within 30 days after completing its final production of documents pursuant to Motorola's document requests.

MICROSOFT CORPORATION'S *APRIL 3,
2013 SUPPLEMENTAL* OBJECTIONS,
ANSWERS, AND RESPONSES - 2

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700    FAX, (206) 623-8717

33

4.      Microsoft responds to the Discovery Requests as it interprets and understands each Request set forth therein.  If Motorola subsequently asserts an interpretation of any request or sub-part thereof that differs from Microsoft's understanding of that request or sub-part thereof, Microsoft reserves the right to supplement its objections and/or responses.

5.      Microsoft objects to any Request to the extent it requires Microsoft to draw a legal conclusion in order to ascertain its scope.

6.      Microsoft objects to each Request as overly broad, not relevant to the claims and defenses at issue, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited in time and seeks information for periods of time that are not relevant to any claim or defense.

7.      Microsoft objects to each Request to the extent it calls for premature disclosure of expert opinions or contentions on legal issues or otherwise.

8.      Microsoft objects to the Requests as cumulative, and will deem any production of materials responsive to any particular request to be sufficient production with respect to any other Request seeking similar materials.

9.      Microsoft objects to any Request to the extent it is vague, ambiguous, irrelevant, overbroad, unduly burdensome, or to the extent it seeks information that is: not reasonably calculated to lead to the discovery of relevant or admissible evidence; unreasonably cumulative or duplicative, or obtainable from some other source that is more convenient, less burdensome or less expensive; of the kind that Motorola had ample opportunity to obtain from other sources.

10.      Microsoft objects to document requests that seek production of "All Documents" as vague, ambiguous, overbroad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of relevant or admissible evidence.  Microsoft

**MICROSOFT CORPORATION'S** *APRIL 3,*
*2013 SUPPLEMENTAL* **OBJECTIONS,**
**ANSWERS, AND RESPONSES - 3**

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

34

1    will comply with its obligations under the Federal Rules to search for and produce responsive

2    documents, including searches of custodians likely to have responsive documents.

3        11.    Microsoft objects to Motorola's Discovery Requests, and the definitions and

4    instructions that accompany Motorola's Discovery Requests, to the extent they mischaracterize

5    or misstate facts, circumstances, events and/or obligations.

6        12.    Microsoft objects to Item No. 2 of Motorola's "Definitions," wherein Motorola

7    sets forth the definition of "Motorola Mobility," as overly vague.  Microsoft does not and

8    cannot know all of Motorola's "predecessors or successors (merged, acquired, or otherwise),

9    parents, divisions, subsidiaries, and affiliates thereof, and all officers, agents, employees,

10   counsel and other persons acting on its behalf, or any other person or entity subject to Motorola

11   Mobility's control, or which controls Motorola Mobility."

12       13.    Microsoft objects to Item No. 12 of Motorola's "Definitions," wherein Motorola

13   sets forth the definition of "Electronically stored information," because, and to the extent, this

14   definition seeks to impose on Microsoft obligations different from or greater than those

15   imposed by federal statute, the Federal Rules of Civil Procedure, or the Local Rules.

16       14.    Microsoft objects to Item No. 13 of Motorola's "Definitions," wherein Motorola

17   sets forth the definition of "Communications," to the extent it purports to include a request for

18   oral communications, such as voice recordings.  The burden and expense of reviewing and

19   producing any such communications or recordings, if it is even possible to review and produce

20   them, would outweigh their possible relevance and are not likely to lead to the discovery of

21   relevant or admissible evidence.  Production of such communications or recordings would also

22   be unreasonably cumulative and duplicative because the information that might be obtained

23   from such recordings is also being sought and is obtainable, to the extent it exists, by other

24   means or from other sources that are more convenient, less burdensome, or less expensive.

25

**MICROSOFT CORPORATION'S** *APRIL 3,*
*2013 SUPPLEMENTAL* **OBJECTIONS,**
**ANSWERS, AND RESPONSES -** 4

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

35

15.     Microsoft objects to Motorola's Discovery Requests to the extent the information requested is not reasonably accessible by Microsoft for all purposes, not just for this litigation.  Information not reasonably accessible by Microsoft includes, but is not limited to, deleted documents, wherever located, and documents available on any backup or archival tapes or other media.  The burden and expense of accessing, reviewing, and producing this information outweigh its possible relevance and are not likely to lead to the discovery of relevant or admissible evidence.  Production of this information would also be unreasonably cumulative and duplicative because the information that might be obtained from this inaccessible data is also being sought and is obtainable, to the extent it exists, by other means or from other sources that are more convenient, less burdensome, or less expensive.

16.     Microsoft objects to the Discovery Requests, including the "Definitions" and "Instructions" set forth therein, because and to the extent such requests, definitions, or instructions reserve the right to call for the production of documents in "native format" and/or "meta data."  Such requests are overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence.  First, production in native format would make it very difficult for the parties to manage or maintain control over the materials, especially in cases involving large productions, since native formats are generally designed for easy editing compared to the fixed document formats like TIFF that are more suitable for production and evidentiary purposes.  Second, due to the editable nature of most native formats, production in native format would make it impossible to ensure that confidentiality designations are consistently associated with particular documents, and therefore observed.  It is not possible to apply either document production numbers or confidentiality designations at the page level when a document is produced in its native format.  Although it is possible to number or make confidentiality designations at the file level, once the document is printed out it loses any connection to such numbering or designation.  An individual reading a hard-copy

MICROSOFT CORPORATION'S *APRIL 3, 2013 SUPPLEMENTAL* OBJECTIONS, ANSWERS, AND RESPONSES - 5

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700    FAX, (206) 623-8717

36

printout of a protected document would have no indication that it is designated as containing

"confidential business information" and/or as confidential source code.  Third, native files are

capable of being modified or altered, and production in native format may raise authenticity

issues that can be avoided when the information is produced in a static form.  Fourth,

production in native format imposes an undue burden and expense, since it would require

Microsoft to search every document for hidden text that could be privileged.  Accordingly,

Microsoft will not produce responsive electronically stored information in native format.

Instead, Microsoft will produce documents in a TIFF or pdf format, with a load file indicating

document breaks, and with any agreed upon metadata fields.  Microsoft also agrees that in

appropriate limited circumstances, and where there is a specific need that cannot otherwise be

met, it will also produce the native version of the document.  In the event responsive

electronically stored information does not lend itself to image file production, Microsoft will

confer with Motorola regarding possible native form production, with appropriate protections

to be separately negotiated and mutually agreed upon by the parties in advance of such

production.

17.    Microsoft objects to Motorola's Discovery Requests to the extent they seek

discovery of electronically stored information from sources that are not reasonably accessible

in light of the burdens or costs required to locate, restore, review, and produce whatever

responsive information may be found.  Microsoft has attempted to identify below all known

difficult-to-access sources that may contain responsive information, but it is not able to retrieve

the information – or even to confirm with certainty whether any responsive information in fact

exists on the sources – without incurring substantial burden or cost.  *See* Fed. R. Civ. Pro.

26(b)(2)(B) and FRCP 26(b)(2)(C).  More easily accessed sources – such as active servers,

hard drives and other direct access storage media containing active data and records that are

responsive to Motorola's requests – are likely to yield all the information that is reasonably

MICROSOFT CORPORATION'S *APRIL 3,
2013 SUPPLEMENTAL* OBJECTIONS,
ANSWERS, AND RESPONSES - 6

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

37

useful for this action.  Further, production of information from some of the listed inaccessible sources may also be unreasonably cumulative and duplicative because information that might be obtained is also obtainable, to the extent it exists, from other sources that are more convenient, less burdensome, or less expensive.  The sources that may contain potentially responsive information which Microsoft is neither searching nor producing because they are not reasonably accessible fall under the categories set out below.  Microsoft has attempted to provide as much detail as is reasonably possible regarding these sources, in an effort to enable Motorola to intelligently evaluate the burdens and costs of providing discovery from these sources, and the likelihood of finding responsive and relevant information on the identified sources.

Centrally Managed Exchange Email Servers:  Microsoft's Exchange Servers are used by employees for their email.  Exchange Servers are replicated for disaster recovery and business continuity purposes only.  Exchange mailbox data is replicated across multiple servers after which time the replicated data is recycled within 30 days.  Microsoft has not suspended the replication rotation of this disaster recovery and business continuity process because the vast majority of data on the disaster recovery systems is an additional copy of data more readily available on the active systems.  Microsoft is not searching or producing documents from these disaster recovery media.

Centrally Managed File Servers:  Prior to 2008, file servers located in the Microsoft IT managed datacenters, as well as certain servers located outside of the datacenters but whose backup services are managed by Microsoft IT, were backed up in full on a weekly basis, with daily differential backups.  Weekly tapes were maintained for 21 days; monthly tapes are kept for 90 days.  After 90 days the tapes were recycled.  Since 2008, each protected resource (e.g. data volume, file share, etc.) receives a recovery point each day.  File servers are retained on disk for 28 days, with only a monthly backup tape created and retained for 90 days.  After 90

MICROSOFT CORPORATION'S *APRIL 3,*
*2013 SUPPLEMENTAL* OBJECTIONS,
ANSWERS, AND RESPONSES - 7

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

38

days, the tapes are recycled.  Microsoft has not suspended the backup rotation of this disaster

recovery system.  Microsoft is not searching or producing electronically stored information

from this disaster recovery media.

Other File Servers Located Outside the Microsoft IT Datacenters:  In addition to its

significant centralized information systems managed by Microsoft's IT group, Microsoft

business units maintain many other, decentralized information systems that are used by

different business units and functional groups as required by the business needs of such units

and groups, often for software development and testing.  The business units and functional

groups may call on Microsoft IT to perform their disaster recovery services, or they may

provide their own disaster recovery services.  Each decentralized group establishes and

manages its own disaster recovery process, and such processes may vary from group to group.

Many of these groups follow the same protocol for file server backups as followed by

Microsoft's IT group.  Microsoft has not suspended the backup rotation of the disaster

recovery systems used for these decentralized information systems.  Microsoft is not searching

or producing electronically stored information from these disaster recovery media.  At this

juncture, investigation as to the existence of any relevant and reasonably accessible

information is conducted on a case-by-case basis and predicated on its investigation thus far,

Microsoft has no reason to believe that any such data exists for this case.

Obsolete Backup Media:  As with many large organizations, Microsoft's disaster

recovery policies have evolved with changing technology and business needs over time.  As to

some of the file servers currently or historically managed by Microsoft's centralized IT group,

obsolete backup media may exist.  Such media is not used for disaster recovery, nor is it used

for any business purpose.  For a majority of the obsolete media, Microsoft has no record of

what data was written to an individual tape or reel due to the loss or retirement of obsolete tape

databases and the  and the labels on the individual housings of the tapes and reels, or on the

**MICROSOFT CORPORATION'S** *APRIL 3,*
*2013 SUPPLEMENTAL* **OBJECTIONS,**
**ANSWERS, AND RESPONSES - 8**

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700    FAX, (206) 623-8717

39

1    bins are not informative as to content.  When inventory or labeling information is available it is

2    usually limited to include some of the following data points:  the name of the server, the media

3    type, an ID or tracking number for the media, the date of the creation of the media, and the

4    drives backed up.  Microsoft has no records identifying the business units or individuals who

5    stored documents on a particular server, and therefore has no record of whose or what

6    documents might be stored on any of the obsolete tapes.  In many instances, the drives needed

7    to restore obsolete media are no longer available at Microsoft, and may not be available

8    commercially or otherwise.  The cost and burden of restoring these obsolete media would be

9    excessive, even assuming that the hardware, software and trained staff to restore the media

10   could be located.  Microsoft is not searching or producing documents from this obsolete media.

11       Legacy Systems:  Microsoft was incorporated in 1981 and began operations a few years

12   before that.  As of March 2010 Microsoft had over 88,000 employees working in over 650

13   buildings located in 41of the United States and over 100 countries around the world.  Over the

14   years Microsoft has replaced, changed, and/or upgraded the hardware and software used by

15   individual employees and for its shared information systems.  As such, it is possible that legacy

16   data remaining from obsolete systems is located in various storage media which may be

17   incompatible with and unintelligible on the successor systems.  To the extent such legacy data

18   exists, it is possible that current employees are not aware of its existence or location.

19   Microsoft is not searching its legacy systems because it believes they are not reasonably

20   accessible because of undue burden or cost.

21       Sources Requiring Computer Forensics to Access:  Microsoft is not searching or

22   producing information from any source that is capable of being accessed or viewed only

23   through forensic or other extraordinary means.  Many of these data types are created by the

24   operating system or an application to assist in memory management or enhance the efficient

25   functioning of the application or operating system.  Operating systems and applications

MICROSOFT CORPORATION'S *APRIL 3,*
*2013 SUPPLEMENTAL* OBJECTIONS,
ANSWERS, AND RESPONSES - 9

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

generally create and overwrite such data without the intent or specific knowledge of users. Although it is not possible to provide all the particulars of the information that might be mined through such extraordinary processes without actually performing them, examples of the types of materials that, in general, may be forensically retrieved include the following:  (a) Residual, Latent or Ambient Data – Residual data, which is sometimes also called "latent" data or "ambient" data, refers to data that is not active on a computer system which is inaccessible without specialized forensic tools and techniques.  "Until overwritten, these data reside on media such as a hard drive in unused space and other areas available for data storage."  The Sedona Conference Glossary (May 2005), p. 26 (*Latent Data*).  This category includes "data that is not active on a computer system, including (1) data found on media free space; (2) data found in file slack space; and (3) data within files that has functionally been deleted in that it is not visible using the application with which the file was created, without use of un-delete or special data recovery techniques.  May contain copies of deleted files, Internet files and file fragments."  The Sedona Conference Glossary (May 2005), p. 37 (*Residual Data*).  Residual, latent or ambient data may also include such items as fragments of instant messaging chats that were not saved by the chat participants but that the operating system placed temporarily on the hard drive for memory management purposes without the knowledge of the user. (b) Temporary Files – These are "files stored on a computer for temporary use only, and are often created by Internet browsers.  These temp files store information about Web sites that a user has visited, and allow for more rapid display of the Web page when the user revisits the site.  Forensic techniques can be used to track the history of a computer's Internet usage through the examination of these temporary files.  Temp files are also created by common office applications, such as word processing or spreadsheet applications."  The Sedona Conference Glossary (May 2005), p. 42.  (c) Cached Storage – Cache is "a dedicated, high speed storage location which can be used for the temporary storage of frequently used data.  As data may be

**MICROSOFT CORPORATION'S** *APRIL 3,*
*2013 SUPPLEMENTAL* **OBJECTIONS,**
**ANSWERS, AND RESPONSES - 10**

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

41

retrieved more quickly from cache than the original storage location, cache allows applications to run more quickly.  Web site contents often reside in cached storage locations on a hard drive."  The Sedona Conference Glossary (May 2005), p. 6.  (d) Swap Files or Page Files – A swap file is a "file used to temporarily store code and data for programs that are currently running.  This information is left in the swap file after the programs are terminated, and may be retrieved using forensic techniques.  Also referred to as a page file or paging file."  The Sedona Conference Glossary (May 2005), p. 41.

Databases:  To the extent Motorola's Requests seek different data or data in configurations different from those for which such databases are configured, Microsoft is not searching or attempting to produce information from such databases because it believes they are not reasonably accessible because of undue burden or cost.

Source Code not Stored in Microsoft's Central Source Repositories:  Microsoft objects to Motorola's Requests to the extent they seek the production of all source code for a particular product.  Source code for a large software product often contains tens of millions of lines of code that hundreds or even thousands of individuals in different parts of the company have helped create over a number of years.  Microsoft manages the process using a database tool called Source Depot, also called the "source tree."  At any one time, the Source Depot for a product or major part contains the most current version of the source code for that product as well as source code relating to various past versions.  Collecting source code from the Source Depot is relatively straightforward.  However, not all source code for a product or major part is stored in its source tree.  For example, Microsoft Office contains parts built by groups within Microsoft outside the Office group (e.g., the division that creates tools used by software developers) and by third-party vendors.  The source code for such "partner parts" is created and stored by the partner group elsewhere in Microsoft or by the third-party vendor, which provides only already-compiled binary code – not source code – to the Office source tree.  The

MICROSOFT CORPORATION'S *APRIL 3, 2013 SUPPLEMENTAL* OBJECTIONS, ANSWERS, AND RESPONSES - 11

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

42

process to identify, locate and collect all of the source code not stored in a product's source tree is extraordinarily difficult, time-consuming, and not always fruitful.  There is no single comprehensive list of all the source code for the parts that were contributed by partner groups. This is because, in the ordinary course of business, and after a product is released, Microsoft has no need to identify or collect all the source code for it.  When a product such as Office is released, the source code in the source tree is "compiled" into "binary" (i.e., a series of zeros and ones, a/k/a "object code") code and combined with binary code provided by any partner groups to "build" the version that is released to licensees.  Thereafter, it may be necessary to locate certain portions of source code used to build the product in order to fix bugs, but the full set of source code is not needed.  In order to be certain that it has assembled the complete set of source code for a product released several years ago, Microsoft would have to work backward from the final product.  This would require first determining which binary code in the final product is or is not associated with what versions and parts of source code in the (more readily accessible) source tree.  Then, Microsoft developers would need to figure out which partner group produced that binary code, and then attempt to obtain the code from that group.  Many developers in these groups will have changed jobs, moved to other groups within Microsoft, or may have left the company, and may no longer be able to provide that group's portion of source code.

Other Sources that are not Reasonably Accessible:  In addition, it is possible that Microsoft's information systems may retain information on other sources that are accessible only by incurring substantial burdens or costs.  Microsoft's identification of sources that are not reasonably accessible is based upon information currently known.  Microsoft reserves the right to supplement its response as additional information about other potentially responsive information from other sources that are not reasonably accessible becomes known.

**MICROSOFT CORPORATION'S *APRIL 3, 2013 SUPPLEMENTAL* OBJECTIONS, ANSWERS, AND RESPONSES - 12**

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

43

1    As set forth in more detail in its responses to Motorola's individual requests, Microsoft

2    is producing electronically stored information that is responsive, not privileged, and reasonably

3    accessible.  Microsoft believes that Motorola should review and evaluate the information from

4    such sources before requesting that Microsoft search for and produce information contained on

5    sources that are not reasonably accessible.  If, after such review and evaluation, Motorola

6    continues to seek discovery of information from sources that have been identified as not

7    reasonably accessible, Microsoft requests that the parties schedule a meet and confer to

8    discuss, among other things, the particular type(s) of information sought by Motorola and its

9    relevance to the parties' respective claims and defenses, the burdens and costs of accessing,

10   retrieving and reviewing such information, the needs that may establish "good cause" for

11   requiring all or part of the requested discovery notwithstanding its inaccessibility, and

12   conditions on obtaining and producing the information that may be appropriate, including

13   whether Motorola is willing to pay the costs associated with such discovery.

14         18.    Microsoft objects to Motorola's requests for production to the extent they seek

15   to impose an obligation on Microsoft to create and maintain wholly new documents, through

16   recording communications that have not otherwise been recorded in the ordinary course of

17   business, solely for the purpose of discovery in the litigation.

18         19.    Microsoft objects to the Discovery Requests on the grounds that they seek the

19   production of documents containing confidential, nonpublic business documents, financial

20   data, proprietary knowledge or trade secret information of Microsoft and third parties

21   ("Confidential Information").  Microsoft will produce responsive, non-privileged Confidential

22   Information subject to entry of a stipulated protective order signed by the Court.

23         20.    Microsoft objects to the Discovery Requests to the extent that they would

24   require Microsoft to search for documents from custodians from whom Microsoft has already

25   searched for documents responsive to Motorola's discovery requests in other actions because

**MICROSOFT CORPORATION'S** *APRIL 3,*
*2013 SUPPLEMENTAL* **OBJECTIONS,**
**ANSWERS, AND RESPONSES - 13**

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

44

such a requirement is burdensome and inefficient.  If, after Motorola reviews the documents produced in response to its discovery requests in the other actions, Motorola believes that additional responsive documents exist, Microsoft is willing to meet and confer regarding the scope of such additional discovery.

21.     No incidental or implied admissions are intended by the objections herein.  The assertion of any objection to the Discovery Requests is not intended to mean, and shall not be construed as acknowledging or suggesting, that any responsive documents were in fact created or exist or that Microsoft has possession, custody, or control of such documents.  Nor shall the fact that Microsoft has objected to any Discovery Request be taken as an admission that Microsoft accepts or admits the existence of any facts set forth or assumed by such Discovery Request.

22.     As used herein, the term "Motorola Patent Actions" refers to the actions filed by Motorola Mobility, Inc. and General Instrument Corporation in the Federal District Court for the Western District of Wisconsin (Case Nos. 3:10-CV-699, 3:10-CV-700, and 3:10-CV-826); the Southern District of Florida (Case No. 1:10-cv-24063); and before the International Trade Commission (ITC Case No. 337-TA-752).

23.     Microsoft's failure to object to a Discovery Request on a particular ground shall not be construed as a waiver of its right to object on that ground or any additional ground at any time.

24.     All documents that Microsoft produces in response to these Discovery Requests will be produced at times and places to be agreed upon by counsel.

**MICROSOFT CORPORATION'S** *APRIL 3,*
*2013 SUPPLEMENTAL* **OBJECTIONS,**
**ANSWERS, AND RESPONSES -** 14

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

45

**INTERROGATORY NO. 3:**   State the factual basis for any contention underlying Microsoft's claim that Motorola's October 21, 2010 and October 29, 2010 Letter constituted a breach or other violation of a commitment to license patents on reasonable and non-discriminatory terms.

**ANSWER:** Microsoft incorporates by reference each of its General Objections as though set forth herein.  Microsoft further objects that this is a premature contention interrogatory.  Microsoft is not obligated to respond to premature contention interrogatories until the parties have substantially completed discovery.

Subject to and without waiving these objections, Microsoft answers that, in willful disregard of the commitments Motorola made to IEEE and the ITU-T, Motorola has refused to extend to Microsoft a license consistent with Motorola's promises for any of Motorola's allegedly "essential" patents.  Instead, Motorola is demanding royalty payments that are wholly disproportionate to the royalty that its patents should command under any reasonable calculus. Motorola has discriminatorily chosen Microsoft's Xbox product line and other multi-function, many-featured products and software, such as Windows 7 and Windows Phone 7 and products incorporating Microsoft software, for the purpose of extracting unreasonable royalties from Microsoft that are inconsistent with Motorola's obligation to offer licenses for the relevant patents on RAND terms and conditions.

In further response, Microsoft states as follows:

Motorola's October 21, 2010 Letter

By letter to Microsoft, dated October 21, 2010, Kirk Dailey, Motorola's Corporate Vice President Intellectual Property, offered to license "Motorola's portfolio of patents and pending applications having claims that may be or become Essential Patent Claims (as defined in section 6.1 of the IEEE bylaws) for a compliant implementation of the IEEE 802.11 Standards."  Motorola offered to license the relevant patents under terms and conditions that

**MICROSOFT CORPORATION'S** *APRIL 3,*
*2013 SUPPLEMENTAL* **OBJECTIONS,**
**ANSWERS, AND RESPONSES - 15**

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

46

1  included a "royalty of 2.25% per unit for each 802.11 complaint product[.]"  Motorola stated

2  that the royalty "is calculated based on the price of the end product (e.g., each Xbox 360

3  product) and not on component software."

4          The cost of the chips and associated components that provide wireless connectivity for

5  Xbox 360 consoles is a small fraction of the overall cost of the device.  Moreover, Microsoft

6  sells its Xbox 360 consoles at a number of prices.  Each console includes approximately the

7  same chips and associated components for wireless connectivity, providing the same level of

8  relevant functionality.  Motorola thus seeks a royalty on components of Xbox 360 that is

9  disproportionate to the value and contribution of its purportedly "essential" patents and has

10  declined to offer a license to its purported "essential" patents unless it receives exorbitant and

11  discriminatory royalty payments to which it is not entitled.  On information and belief,

12  Motorola has not previously entered into a license agreement for its purported "essential"

13  patents that is comparable to the demand made of Microsoft.  Motorola has thereby refused to

14  offer to license the patents at a reasonable rate, with reasonable terms, under conditions that are

15  demonstrably free of any unfair discrimination.

16          The royalty demanded by Motorola falls well outside the boundaries of a reasonable

17  and non-discriminatory royalty and therefore violates the commitment Motorola made to the

18  IEEE and its members.

19          Participants in IEEE-SA standards setting efforts, including those directed to WLAN

20  technology, were subject to the IEEE-SA Standard Board Bylaws concerning the submission

21  of Letters of Assurance related to patent claims deemed "essential" by a submitting party.

22  Clause 6 of those Bylaws (which was revised slightly over the years) generally provides in

23  pertinent part:

24          A Letter of Assurance shall be either:

25

**MICROSOFT CORPORATION'S *APRIL 3,***
***2013 SUPPLEMENTAL* OBJECTIONS,**
**ANSWERS, AND RESPONSES - 16**

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

a) A general disclaimer to the effect that the submitter without conditions will not enforce any present or future Essential Patent Claims against any person or entity making, using, selling, offering to sell, importing, distributing, or implementing a compliant implementation of the standard; or

b) A statement that a license for a compliant implementation of the standard will be made available to an unrestricted number of applicants on a worldwide basis without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination.

Motorola openly and publicly submitted Letters of Assurance pursuant to Clause 6 of the IEEE-SA Standards Board Bylaws that it would offer to license any of its patents essential to the applicable WLAN standard(s) to any entity under reasonable rates on a non-discriminatory basis.  IEEE-SA and its participants and affiliates relied on Motorola's promises in developing, adopting and implementing IEEE-SA technical standards.  These standards are now implemented worldwide in a variety of electronic devices that have become commonplace.

Microsoft invested substantial resources in developing and marketing products in compliance with these standards, relying on the assurances of participating patent holders – including Motorola – that any essential patents held by such patent holders would be available for licensing by implementers of the standards on such terms.

By way of non-limiting example, each Xbox device includes substantial software and many computer chips and modules that perform various functions, including enabling Xbox's core functionality as a video gaming machine.  Of those, the Xbox console includes one – an interface provided to Microsoft by third-parties – that allows consumers optionally to connect an Xbox to the Internet using a WLAN connection.

The third-party WLAN interface does not enable any of Xbox's core video gaming functionality.  In addition, Microsoft allows consumers an alternative, wired method to connect to the Internet.  This alternative method does not require use of any WLAN technology.

**MICROSOFT CORPORATION'S** *APRIL 3,*
*2013 SUPPLEMENTAL* **OBJECTIONS,**
**ANSWERS, AND RESPONSES -** 17

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

On information and belief, Motorola obtained rights to several of the WLAN patents it has represented as "essential" through its recent acquisition of Symbol Technologies, Inc. ("Symbol").

Prior to the releases of the 802.11 protocols, Motorola and Symbol submitted Letters of Assurance to the IEEE pursuant to Clause 6 of the IEEE-SA Standards Board Bylaws with respect to those protocols, guaranteeing that any "essential" patents would be licensed under reasonable and non-discriminatory terms and conditions. Both Motorola's and Symbol's Letters of Assurance apply to any "essential" patents they then held as well as any other "essential" patents they subsequently obtained.

In reliance on these letters of assurance, IEEE released the 802.11 standard and various amendments to that standard that Motorola asserts incorporated Motorola's and Symbol's patented technology. On information and belief, once Motorola and Symbol disclosed that they likely held essential patents, absent a licensing commitment from them to the effect that they would offer licenses to "essential" patents on reasonable and non-discriminatory terms and conditions, the relevant IEEE working groups would have either revised the standards, employing alternative technologies instead, stopped working on the protocols or taken other actions.

In submitting its Letter of Assurance pursuant to the applicable IEEE IPR policy, Motorola entered into an actual or implied contract with IEEE, for the benefit of IEEE members and any entity that implements the 802.11 standard. Motorola is bound by its agreements to offer licenses consistent with the referenced IEEE bylaws.

Similarly, Symbol, in submitting its Letter of Assurance pursuant to the applicable IEEE IPR policy, entered into an actual or implied contract with IEEE, for the benefit of IEEE members and any other entity that implements the 802.11 standard, and Motorola is bound by that commitment.

**MICROSOFT CORPORATION'S** *APRIL 3,*
*2013 SUPPLEMENTAL* **OBJECTIONS,**
**ANSWERS, AND RESPONSES - 18**

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700    FAX, (206) 623-8717

49

1    Motorola broke its promise to IEEE-SA and its members and affiliates by refusing to

2    offer to Microsoft a license that is consistent with Motorola's Letter(s) of Assurance and

3    Clause 6 of the IEEE-SA Standards Board Bylaws, instead demanding royalties that are

4    excessive and discriminatory.

5    Motorola's October 29, 2010 Letter

6    By letter to Microsoft, dated October 29, 2010, Kirk Dailey, Motorola's Corporate Vice

7    President Intellectual Property, offered to license "Motorola's portfolio of patents and pending

8    applications covering the subject matter of ITU-T Recommendation H.264[.]"  Motorola

9    offered to license the relevant patents under terms and conditions that included a "royalty of

10    2.25% per unit for each H.264 complaint product[.]"  Motorola stated that the royalty "is

11    calculated based on the price of the end product (e.g., each Xbox 360 product, each PC/laptop,

12    each smartphone, etc.) and not on component software (e.g., Xbox 360 system software,

13    Windows 7 software, Windows Phone 7 software, etc.)."

14    The cost of such component software and any inter-related hardware is a small fraction

15    of the overall cost of the listed devices.  Moreover, Microsoft sells products having H.264

16    related capabilities at a wide range of prices, without regard to the significance of such H.264

17    related capabilities to the primary or expected use of the products.  Motorola thus seeks a

18    royalty on software and hardware components of Xbox 360 and other devices that are

19    unrelated to its identified patents and has declined to offer a license unless it receives

20    exorbitant royalty payments to which it is not entitled.  On information and belief, Motorola

21    has not previously entered into a license agreement for its identified patents that is comparable

22    to the demand made of Microsoft.  Motorola has thereby refused to offer to license the patents

23    at a reasonable rate, with reasonable terms, on a non-discriminatory basis.

24

25

**MICROSOFT CORPORATION'S** *APRIL 3,*
*2013 SUPPLEMENTAL* **OBJECTIONS,**
**ANSWERS, AND RESPONSES -** 19

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

50

1   The royalty demanded by Motorola falls well outside the boundaries of a reasonable

2   and non-discriminatory royalty and therefore violates the commitment Motorola made to the

3   ITU and its members.

4   Participants in ITU-T standards setting efforts, including those directed to H.264

5   technology, were subject to the ITU-T Common Patent Policy concerning the submission of

6   Patent Statement and Licensing Declarations related to patents identified by a submitting party.

7   The ITU-T Common Patent Policy generally provides, in pertinent part, that a patent holder's

8   statement may declare that:

9   (2.1) The patent holder is willing to negotiate licenses free of charge with other
10   parties on a non-discriminatory basis on reasonable terms and conditions.

11   (2.2) The patent holder is willing to negotiate licenses with other parties on a
    non-discriminatory basis on reasonable terms and conditions.

12   Motorola openly and publicly submitted Patent Statement and Licensing Declarations

13   pursuant to the ITU-T's Common Patent Policy that it would offer to license any of its patents

14   essential for the relevant H.264 Recommendation(s) to any entity under reasonable rates on a

15   non-discriminatory basis.  The ITU-T and its participants and affiliates relied on Motorola's

16   promises in developing, adopting and implementing the ITU-T H.264 Recommendations (or

17   standards).  These standards are now implemented worldwide in a variety of electronic devices

18   and software that have become commonplace.  Microsoft invested substantial resources in

19   developing and marketing products in compliance with these standards, relying on the

20   assurances of participating patent holders – including Motorola – that any "essential" patents

21   held by such patent holders would be available for licensing by implementers of the standards

22   on such terms.

23   In submitting its Patent Statement and Licensing Declarations pursuant to the

24   applicable ITU-T policy, Motorola entered into an actual or implied contract with the ITU-T,

25

**MICROSOFT CORPORATION'S** *APRIL 3,*
*2013 SUPPLEMENTAL* **OBJECTIONS,**
**ANSWERS, AND RESPONSES -** 20

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

51

1   for the benefit of ITU-T members and any entity that implements the H.264 technologies.

2   Motorola is bound by its agreements to offer licenses consistent with the referenced ITU-T

3   Common Patent Policy.

4        Microsoft has participated in the development of the 802.11 and H.264 standards.

5   Microsoft and other companies participating in the development of these standards relied on

6   Motorola's commitments to ensure that the royalties Motorola would seek would conform to

7   the promises made by Motorola.

8        In reliance on the integrity of the SDO process and the commitments made by Motorola

9   and others regarding 802.11 patents they deem "essential," Microsoft began providing its Xbox

10  video game consoles with WLAN connectivity.  By way of example, Microsoft purchased and

11  incorporated into its Xbox 360 video game consoles third-party-manufactured interfaces that

12  provide Xbox 360 devices with WLAN connectivity.  Microsoft made its decision to provide

13  its Xbox video game consoles with WLAN connectivity in reliance on, and under the

14  assumption that, it and/or any third party supplier could avoid patent litigation and take a

15  license to "essential" patents that Motorola, or any other company submitting a Letter of

16  Assurance, holds with regard to the WLAN standard under IEEE's well publicized IPR policy.

17       Microsoft and other manufacturers of WLAN-compliant devices necessarily relied on

18  the assurances of participating patent holders – including Motorola – that any "essential"

19  patents held by such patent holders would be available for licensing by implementers of the

20  standards on such terms.

21       Correspondingly, in reliance on the integrity of the SDO process and specifically the

22  commitments made by Motorola and others regarding patents related to H.264 technologies,

23  Microsoft began providing its H.264 technology capability in its Xbox video game consoles.

24  Microsoft made its decision to provide its Xbox video game consoles with H.264 technology in

25  reliance on, and under the assumption that, it and/or any third party supplier could avoid patent

**MICROSOFT CORPORATION'S** *APRIL 3,*
*2013 SUPPLEMENTAL* **OBJECTIONS,**
**ANSWERS, AND RESPONSES -** 21

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

52

1    litigation and take a license to any "essential" patents held by Motorola, or any other company

2    submitting a Patent Statement and Licensing Declaration, under the ITU-T's well-publicized

3    IPR policy.

4        Microsoft made similar investments in other fields, including Windows 7 and Windows

5    Phone 7, based upon Motorola's representations in relation to the H.264 technology standards.

6    Microsoft and other manufacturers and suppliers of H.264 compliant technology necessarily

7    relied on the commitments of Motorola and others to license their "essential" patents under

8    these terms.

9        By way of non-limiting example, each personal computer running Windows 7 includes

10   substantial software and many computer chips and modules that perform various functions,

11   including those related to the general operation of a computing device.  Of those, each personal

12   computer includes just a portion directed to H.264 technologies.

13       By way of further non-limiting example, each smartphone running Windows Phone 7

14   includes substantial software and many computer chips and modules that perform various

15   functions, including those related to the general and particularized operation of a smartphone

16   independent of H.264 technology.  Of those, each smartphone includes just a portion directed

17   to H.264 technologies.

18       Motorola broke its promise to the ITU-T and its members and affiliates by refusing to

19   offer to Microsoft a license that is consistent with Motorola's Patent Statement and Licensing

20   Declaration(s) and the Common Patent Policy of the ITU-T, instead demanding royalties that

21   are excessive and discriminatory.

22                    **SUPPLEMENTAL RESPONSE OF APRIL 3, 2013:**

23       Motorola committed to license its standard essential patents on RAND terms.  This

24   meant that Motorola had to make a license available to any implementer of the standards.

25

**MICROSOFT CORPORATION'S** *APRIL 3,*
*2013 SUPPLEMENTAL* **OBJECTIONS,**
**ANSWERS, AND RESPONSES -** 22

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

53

1    Offers made to prospective licensees had to be commercially reasonable.  Motorola could not

2    seek injunctive relief instead of entering into a license on RAND terms, especially in

3    circumstances where its license offers were not commercially reasonable.  In addition,

4    Motorola was subject to a duty of good faith and fair dealing in licensing and offering to

5    license its standard essential patents.

6              As a consequence of these contractual obligations undertaken by Motorola, Motorola

7    breached its RAND commitments in at least the following respects.  Motorola's breach is not

8    limited to the October 2010 demand letters.

- Motorola's October 2010 demand letters did not offer licenses to Microsoft on RAND terms, and, to the contrary, were commercially unreasonable and facially outrageous; Motorola improperly sought the holdup value of its patents rather than their RAND value and improperly sought a royalty on the entire market value of products, which included many components and features for which Motorola was not entitled to any compensation.

- Motorola improperly sought injunctive relief in the ITC, the district courts and Germany instead of honoring its commitment to make licenses available on RAND terms.  Repeated judicial and administrative rulings specific to Motorola have confirmed that its pursuit of injunctive relief was improper, including Judge Posner's June 22, 2012 determination that Motorola could not obtain injunctive relief on its 802.11 standard-essential patents; the Court's November 29, 2012 order enjoining Motorola from seeking injunctive relief against Microsoft with respect to Motorola's H.264 and 802.11 standard essential patent portfolios; and the January 3, 2013 FTC consent order prohibiting Google and Motorola from obtaining or enforcing injunctive relief on standard-essential patents during the pendency of district court's resolution of a request for a RAND determination.  As the FTC explained, the consent order barring Motorola from pursuing injunctive relief targeted "breaches by Google and its subsidiary [Motorola] of Motorola's commitments to license standard-essential patents ('SEPs') on terms that are fair, reasonable and non-discriminatory ('FRAND')."  Statement of the Federal Trade Commission, *In the Matter of Google Inc.,* FTC File No. 121-0120 (Jan. 3, 2013).

- Motorola declined to offer a license to Microsoft's chip supplier Marvell (which requested a license for the specific benefit of Microsoft) on RAND terms that would cover product shipped to Microsoft and acted in a way that was both unreasonable and discriminatory.

**MICROSOFT CORPORATION'S** *APRIL 3,*
*2013 SUPPLEMENTAL* **OBJECTIONS,**
**ANSWERS, AND RESPONSES -** 23

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700    FAX, (206) 623-8717

54

- Once Motorola was acquired by Google and Microsoft had a right to a license to Motorola's H.264 standard essential patents by virtue of Google's participation in the MPEG-LA AVC pool, Motorola refused to grant a license on those terms, which would have complied with the RAND commitment.

- Motorola violated the covenant of good faith and fair dealing by reason of all of the actions recited above, whether considered separately or collectively, on an objective standard.

- Motorola also violated the covenant of good faith and fair dealing because it knew it was acting, and intended to act, inconsistently with the covenant of good faith and fair dealing by virtue of the actions recited above and the following additional indicia of intent:

    o Motorola's objective from the beginning was to secure crippling injunctive relief in some forum so that Microsoft would be deterred from seeking compensation for Motorola's infringement of Microsoft's non standard essential patents in Motorola's Android phones.  Motorola's demand letters in October 2010 were intended to set forth offers that it knew no reasonable company would accept.

    o In furtherance of the pursuit of injunctive relief, Motorola stated that the offers in the demand letters would remain open for only 20 days.

    o At the time that the demand letters were sent, Motorola had never entered into a license with anyone for its H.264 or 802.11 standard essential patents that was remotely comparable to the terms of the demand letter

    o Motorola understood the financial implications of the demand letter, including that it would be compensated for components and features as to which it had no patents.

    o Motorola sought injunctions knowing that the terms in its October 2010 demand letters would be unacceptable to Microsoft and would not be accepted.

    o Motorola demanded that Marvell pay royalties on the end product sales of its downstream customers even though no one had ever agreed to pay royalties to Motorola on this basis.

    o Motorola discriminated against Marvell and Microsoft by excluding chips sold to Microsoft from the license offered to Marvell.

**MICROSOFT CORPORATION'S** *APRIL 3,*
*2013 SUPPLEMENTAL* **OBJECTIONS,**
**ANSWERS, AND RESPONSES -** 24

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

55

1        o   Motorola in league with its parent company Google evaded the requirements of the MPEG-LA AVC pool agreement.

2    **INTERROGATORY NO. 4:**  State the factual basis for any contention that Microsoft

3 suffered damage to its business or property, or was irreparably injured, by reason of the

4 October 21, 2010 Letter and/or October 29, 2010 Letter.

5    **ANSWER:**  Microsoft incorporates by reference each of its General Objections as

6 though set forth herein.  Microsoft further objects that this is a premature contention

7 interrogatory.  Microsoft is not obligated to respond to premature contention interrogatories

8 until the parties have substantially completed discovery.

9    Subject to and without waiving the foregoing objections, Microsoft answers that it has

10 suffered damage because, and to the extent that, Microsoft and its employees have been forced

11 to expend a significant amount of time, money and resources on issues relating to this dispute

12 and the Motorola Patent Actions.  But for Motorola's failure to offer Microsoft licenses to

13 those patents Motorola alleges are "essential" to implementation of the H.264 and 802.11

14 standards on RAND terms and conditions, Microsoft would not have incurred these costs,

15 expenses or losses of productivity.  It will be difficult, if not impossible, for Microsoft to

16 recoup this lost time and productivity, and Microsoft's losses will continue until Motorola

17 complies with the contractual commitments it made to the IEEE, ITU, and their members.

18 Microsoft has also been damaged as a result of having to defend the Motorola Patent Actions,

19 in which Motorola seeks to enjoin or exclude Microsoft from practicing, or importing products

20 that practice, the 802.11 and H.264 standards.  Further, Microsoft may also suffer imminent

21 loss of profits, loss of customers and potential customers, and loss of goodwill and product

22 image as a result of Motorola's refusal to offer licenses to the relevant technologies on fair and

23 reasonable terms.

24

25

**MICROSOFT CORPORATION'S *APRIL 3, 2013 SUPPLEMENTAL* OBJECTIONS, ANSWERS, AND RESPONSES -** 25

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

56

1      **SUPPLEMENTAL RESPONSE OF APRIL 3, 2013:**

2          Motorola's breach is not limited to its October 2010 demand letters.  In addition to

3    suffering damage to its business or property and irreparable injury as a consequence of the

4    October 2010 demand letters, Microsoft has also suffered damage to its business or property

5    and irreparable injury as a consequence of other actions taken by Motorola (or its failure to act)

6    in breach of its contractual commitments.

7          On November 22, 2010, Motorola filed an ITC action seeking exclusion of Xbox

8    consoles based on three patents alleged to be essential to H.264 and one patent alleged to be

9    essential to 802.11.  Motorola also filed district court cases asserting patents alleged to be

10   essential to H.264 or 802.11.

11         On July 6 and 7, 2011, Motorola filed two patent infringement suits in Germany,

12   asserting patents claimed to be essential to the H.264 standard.  Motorola sought an injunction

13   that would exclude Microsoft products (including the Windows operating system and the Xbox

14   video game console) from the German market.  Microsoft incorporates by reference its

15   previous response describing harm flowing from the Motorola Patent Action, as analogous

16   harms have been caused by Motorola's German suits, including the costs of defending against

17   Motorola's improper pursuit of injunctions.  Microsoft also incorporates by reference all filings

18   made in support of its Motion for TRO and Preliminary Injunction, including Dkt. Nos. 209–

19   217.

20         Motorola's failure to grant Microsoft a RAND license to its H.264 and 802.11 patents,

21   and its pursuit of injunctions has imposed significant costs on Microsoft.  But for the breach of

22   the RAND obligations, this injury would not have been incurred.  Thus damages attributable to

23   the breach include Microsoft's legal expenses incurred in defending the ITC and district court

24   cases, insofar as they were based on standard essential patents and legal expenses incurred in

25   defending the German actions based on H.264 patents.

**MICROSOFT CORPORATION'S** *APRIL 3,*
*2013 SUPPLEMENTAL* **OBJECTIONS,**
**ANSWERS, AND RESPONSES -** 26

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700    FAX, (206) 623-8717

57

1    Motorola's actions forced Microsoft to implement costly measures in preparation for a

2  potential injunctive relief that Motorola was seeking requiring Microsoft to withdraw its

3  H.264-compliant products—including Windows and Xbox—from the German market, and

4  Xbox from the U.S. Market.  Microsoft took these measures in order to mitigate the greater

5  damages it would have suffered from the injunctive relief Motorola was seeking obtained in

6  breach of Motorola's RAND commitments.  Microsoft's main logistics and products/software

7  distribution center for the European, Middle Eastern and African ("EMEA") market was

8  located in Germany.  The injunction Motorola sought through its German actions would have

9  not only removed Microsoft's products from Germany, but threatened Microsoft's entire

10  EMEA distribution network for its products.

11    As a result of Motorola's actions, and in an effort to mitigate the enormous financial

12  and non-economic damages that Microsoft would have suffered had it been excluded from the

13  German market as a result of Motorola's breach, Microsoft was forced to relocate its EMEA

14  distribution center to the Netherlands in spring 2012.  The costs incurred by Microsoft in

15  connection with these relocation efforts were approximately $11.6 million.  Further, the annual

16  cost of operating its distribution center out of the Netherlands is approximately $5,000,000

17  greater than the cost of continuing to operate the distribution center in Germany would have

18  been in the period after the move, a cost increase which is continuing.  Invoices and other

19  substantiating documentation for certain of these costs, identified as Bates range MS-

20  MOTO_1823_00004081413 - MS-MOTO_1823_00004081432, are being produced today.

21  Should Microsoft become aware of additional information or documentation bearing on these

22  damages, Microsoft will supplement its response, as contemplated by Rule 26(e).

23    On July 18, 2011, Marvell sought a license to Motorola's 802.11 patents so that the wifi

24  chipsets it sold to Microsoft and products in which they were used would be licensed.  If the

25

**MICROSOFT CORPORATION'S *APRIL 3,***
***2013 SUPPLEMENTAL* OBJECTIONS,**
**ANSWERS, AND RESPONSES - 27**

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

58

1   license had been available at that time, Microsoft would not have incurred any further damage

2   by failure of Motorola to make available a license on RAND terms for its 802.11 patents.

3        On May 22, 2012, Motorola was acquired by Google, and Microsoft was entitled to a

4   license to Motorola's H.264 patents under the terms of Google's license agreement with

5   MPEG-LA on terms set forth in the pool license.  Motorola failed to make available a license

6   on those terms.  If the license had been available at that time, Microsoft would not have

7   incurred any further damage by failure of Motorola to make available a license on RAND

8   terms for its H.264 patents.

9        SUPPLEMENTAL OBJECTIONS, ANSWERS, AND RESPONSES DATED this 3rd

10  day of April, 2013.

11       DATED this 3rd day of April, 2012.

12                    CALFO HARRIGAN LEYH & EAKES LLP

13

14            By    s/ Christopher Wion
                         Arthur W. Harrigan, Jr., WSBA #1751

15                       Christopher Wion, WSBA #33207
                         Shane P. Cramer, WSBA #35099

16                       999 Third Avenue, Suite 4400
                         Seattle, WA  98104

17                       Phone:  206-623-1700
                         arthurh@calfoharrigan.com

18                       chrisw@calfoharrigan.com
                         shanec@calfoharrigan.com

19

20                       T. Andrew Culbert
                         David E. Killough

21                       MICROSOFT CORPORATION
                         1 Microsoft Way

22                       Redmond, WA  98052
                         Phone:  425-882-8080

23                       Fax: 425-869-1327

24

25

**MICROSOFT CORPORATION'S** *APRIL 3,*
*2013 SUPPLEMENTAL* **OBJECTIONS,**
**ANSWERS, AND RESPONSES -** 28

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1
2
3
4
5

David T. Pritikin
Richard A. Cederoth
Constantine L. Trela, Jr.
William H. Baumgartner, Jr.
Ellen S. Robbins
Douglas I. Lewis
David C. Giardina
John W. McBride
David Greenfield

6

SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL  60603
Phone:  312-853-7000
Fax:  312-853-7036

7
8
9
10

Carter G. Phillips
Brian R. Nester

11
12

SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC  20005
Telephone:  202-736-8000
Fax:  202-736-8711

13
14
15

Counsel for Microsoft Corp.

16
17
18
19
20
21
22
23
24
25

**MICROSOFT CORPORATION'S** *APRIL 3,*
*2013 SUPPLEMENTAL* **OBJECTIONS,**
**ANSWERS, AND RESPONSES -** 29

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1

**CERTIFICATE OF SERVICE**

2      I, Linda Bledsoe, swear under penalty of perjury under the laws of the State of

3  Washington to the following:

4      1.      I am over the age of 21 and not a party to this action.

5      2.      On the 3rd day of April, 2013, I caused the preceding document to be served on

6  counsel of record in the following manner:

7  **Attorneys for Motorola Solutions, Inc., and Motorola Mobility, Inc.:**

8
   Ralph Palumbo, WSBA #04751
9  Philip S. McCune, WSBA #21081          _____  Messenger
   Summit Law Group                       _____  US Mail
10 315 Fifth Ave. South, Suite 1000        _____  Facsimile
   Seattle, WA  98104-2682                ___X___  Email
11 Telephone:  206-676-7000
   Email:  Summit1823@summitlaw.com
12

13
   Steven Pepe (*pro hac vice*)            _____  Messenger
14 Jesse J. Jenner (*pro hac vice*)        _____  US Mail
   Ropes & Gray LLP                        _____  Facsimile
15 1211 Avenue of the Americas            ___X___  Email
   New York, NY  10036-8704
16 Telephone:  (212) 596-9046
   Email:  steven.pepe@ropesgray.com
17 Email:  jesse.jenner@ropesgray.com

18
   Norman H. Beamer (*pro hac vice*)       _____  Messenger
19 Ropes & Gray LLP                        _____  US Mail
   1900 University Avenue, 6th Floor       _____  Facsimile
20 East Palo Alto, CA  94303-2284         ___X___  Email
   Telephone:  (650) 617-4030
21 Email:  norman.beamer@ropesgray.com

22

23

24

25

**MICROSOFT CORPORATION'S *APRIL 3,***
***2013 SUPPLEMENTAL* OBJECTIONS,**
**ANSWERS, AND RESPONSES -** 30

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

Paul M. Schoenhard (*pro hac vice*)            _____ Messenger
Ropes & Gray LLP                               _____ US Mail
One Metro Center                               _____ Facsimile
700 12th Street NW, Suite 900                  \_\_X\_\_\_ Email
Washington, DC  20005-3948
Telephone:  (202) 508-4693
Email: Paul.schoenhard@ropesgray.com

William Price (*pro hac vice*)                 _____ Messenger
Brian Cannon (*pro hac vice*)                  _____ US Mail
Andrea Pallios Roberts (*pro hac vice*)        _____ Facsimile
Quinn Emanuel                                  \_\_X\_\_\_ Email
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA  94065-2139
williamprice@quinnemanuel.com
briancannon@quinnemanuel.com
andreaproberts@quinnemanuel.com


      DATED this 3rd day of April, 2013.


                              s/ Linda Bledsoe
                              LINDA BLEDSOE

MICROSOFT CORPORATION'S *APRIL 3, 2013 SUPPLEMENTAL* OBJECTIONS, ANSWERS, AND RESPONSES - 31

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

62

# EXHIBIT F

The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation, | CASE NO. C10-1823-JLR |
| Plaintiff, | **MOTOROLA'S SECOND NOTICE OF DEPOSITION TO MICROSOFT CORPORATION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)** |
| vs. | |
| MOTOROLA, INC., MOTOROLA MOBILITY LLC, and GENERAL INSTRUMENT CORPORATION, | |
| Defendants. | |

1    PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

2    Procedure, Defendant Motorola Mobility LLC ("Motorola") will depose Plaintiff Microsoft

3    Corporation ("Microsoft") on Monday, April 15, 2013, beginning at 9:00 AM and continuing from

4    day-to-day thereafter, excluding Saturdays, Sundays, and holidays, until completed.  The

5    deposition shall take place at Summit Law Group, 315 Fifth Avenue South, Suite 1000, Seattle,

6    Washington 98104-2682, or according to alternate arrangements upon which counsel jointly agree.

7    The deposition shall be recorded by videotape, audiotape, and stenographic recording.

8    Microsoft shall designate one or more of its officers, directors, managing agents, or other

9    persons who consent to testify on Microsoft's behalf as to all matters known or reasonably

10   available to Microsoft with respect to the Topics of Examination set forth below.  For each person

11   designated, Microsoft shall advise counsel for Motorola of the identity of that person and the

12   topic(s) on which that person shall testify at least seven days in advance of the deposition.

13   Microsoft shall also produce all relevant documents in that person's possession at least seven days

14   in advance of the deposition.

### DEFINITIONS

16   For the purposes of this Notice of Deposition, the following words and phrases have the

17   following meaning:

18   1.    "MOTOROLA" refers to Defendant Motorola Mobility, LLC.

19   2.    "PLAINTIFF" or "MICROSOFT" refers collectively and individually to Microsoft

20   Corporation, and all its predecessors or successors (merged, acquired, or otherwise), parents,

21   divisions, subsidiaries, and affiliates thereof, and all officers, agents, employees, counsel and other

22   persons acting on its behalf, or any other person or entity subject to Microsoft's control, or which

23   controls Microsoft.

24   3.    The term "STANDARDS DEVELOPING ORGANIZATION" and "SDO" shall

25   mean any standards setting organization, standards developing organization, or standards setting

26   body, or other standards organization, including but not limited to the Institute of Electrical and

27   Electronics Engineers ("IEEE"), the IEEE Standards Association ("IEEE-SA"), the International

28

01980.62689/5254426.1

Case No. C10-1823-JLR
MOTOROLA'S SECOND NOTICE OF DEPOSITION TO MICROSOFT

1  Telecommunication Union ("ITU"), and the ITU's Telecommunication Standardization Sector

2  ("ITU-T").

3  **TOPICS OF EXAMINATION**

4

5  **TOPIC NO. 1:**

6      Facts relating to any and all damage MICROSOFT claims to have suffered as a result of

7  any breach by MOTOROLA of its obligations or commitments to any SDO, including but not

8  limited to the factual bases for MICROSOFT'S contention, if it so contends, that said alleged

9  damage resulted from MOTOROLA'S alleged breach of its obligations or commitments to an

10  SDO, any efforts by MICROSOFT to mitigate the damages claimed, the persons with knowledge

11  of such facts, and documents relating to such facts.

12  **TOPIC NO. 2:**

13      The attorneys' fees and other litigation costs (including the dollar amount) MICROSOFT

14  has incurred relating to this dispute and to the actions filed by Motorola Mobility, Inc. and General

15  Instrument Corporation in the Federal District Court for the Western District of Wisconsin (Case

16  Nos. 3:10-CV-699, 3:10-CV-700, and 3:10-CV-826); the Southern District of Florida (Case No.

17  1:10-cv-24063); and before the International Trade Commission (ITC Case No. 337-TA-752),

18  including but not limited to, the factual basis for MICROSOFT'S contention, if it so contends, that

19  said attorneys' fees and other litigation costs were incurred as a result of MOTOROLA'S alleged

20  breach of its obligations or commitments to an SDO, other reasons why such attorneys' fees and

21  other litigation costs were incurred, any efforts by MICROSOFT to mitigate the damages claimed,

22  the persons with knowledge of such facts, and documents relating to such facts.

23  **TOPIC NO. 3**

24      Any costs or expenses (including the dollar amount) other than attorneys' fees and other

25  litigation costs, including without limitation lost employee time and loss of productivity, that

26  MICROSOFT has incurred relating to this dispute and to the actions filed by Motorola Mobility,

27  Inc. and General Instrument Corporation in the Federal District Court for the Western District of

28  Wisconsin (Case Nos. 3:10-CV-699, 3:10-CV-700, and 3:10-CV-826); the Southern District of

1  Florida (Case No. 1:10-cv-24063); and before the International Trade Commission (ITC Case No.

2  337-TA-752), including but not limited to, the factual basis for MICROSOFT'S contention, if it so

3  contends, that said costs or expenses were incurred as a result of MOTOROLA'S alleged breach

4  of its obligations or commitments to an SDO, other reasons why such costs or expenses were

5  incurred, any efforts by MICROSOFT to mitigate the damages claimed, the persons with

6  knowledge of such facts, and the documents relating to such facts.

7  **TOPIC NO. 4**

8       The attorneys' fees and other litigation costs (including the dollar amount) MICROSOFT

9  has incurred relating to the actions filed by Motorola on July 6 and 7, 2011, in Germany, asserting

10  that Microsoft infringes Motorola patents essential to the H.264 standard, including but not limited

11  to, the factual basis for MICROSOFT'S contention, if it so contends, that said attorneys' fees and

12  other litigation costs were incurred as a result of MOTOROLA'S alleged breach of its obligations

13  or commitments to an SDO, other reasons why such fees or expenses were incurred, any efforts by

14  MICROSOFT to mitigate the damages claimed, the persons with knowledge of such facts, and the

15  documents relating to such facts.

16  **TOPIC NO. 5**

17       Any costs or expenses (including the dollar amount) other than attorneys' fees and

18  litigation costs, including without limitation lost employee time and loss of productivity, that

19  MICROSOFT has incurred relating to the actions filed by Motorola on July 6 and 7, 2011, in

20  Germany, asserting that Microsoft infringes Motorola patents essential to the H.264 standard,

21  including but not limited to, the factual basis for MICROSOFT'S contention that said costs and

22  expenses were incurred as a result of MOTOROLA'S alleged breach of its obligations or

23  commitments to an SDO, other reasons why such costs or expenses were incurred, any efforts by

24  MICROSOFT to mitigate the damages claimed, the persons with knowledge of such facts, and the

25  documents relating to such facts.

26  **TOPIC NO. 6**

27       The attorneys' fees and other litigation costs and expenses (including the dollar amount)

28  MICROSOFT has incurred in connection with defending itself in any action in which

1   MOTOROLA sought to enjoin or exclude MICROSOFT from practicing, or importing products

2   that practice, the 802.11 and H.264 standards, including without limitation those actions filed in

3   the International Trade Commission, in the U.S. district courts, and in Germany, including but not

4   limited to, the factual basis for MICROSOFT'S contention that said attorneys' fees and other

5   litigation costs were incurred as a result of MOTOROLA'S alleged breach of its obligations or

6   commitments to an SDO, other reasons why such fees and costs were incurred, any efforts by

7   MICROSOFT to mitigate the damages claimed, the persons with knowledge of such facts, and the

8   documents relating to such facts.

9   **TOPIC NO. 7**

10      Any actual or imminent loss of profits (including the dollar amount), loss of customers and

11  potential customers, and loss of goodwill and product image suffered by MICROSOFT as a result

12  of any claimed breach of contract by MOTOROLA, including but not limited to the identities of

13  customers lost or potentially lost, the factual basis for MICROSOFT'S contention, if it so

14  contends, that said losses were a result of MOTOROLA'S alleged breach of its obligations or

15  commitments to an SDO, other possible causes of said losses, any efforts by MICROSOFT to

16  mitigate the damages claimed, the persons with knowledge of such facts, and the documents

17  relating to such facts.

18  **TOPIC NO. 8**

19      The costs (including the dollar amount) incurred by MICROSOFT in preparation for a

20  potential injunction requiring MICROSOFT to withdraw its H.264-compliant products from the

21  German market and the actions taken in preparation for the potential injunction, including without

22  limitation costs relating to MICROSOFT's relocation of its EMEA distribution center to the

23  Netherlands and increased costs associated with operating the EMEA distribution center out of the

24  Netherlands instead of Germany, the history of the decision to relocate the EMEA distribution

25  center, all other factors considered by MICROSOFT in connection with relocating the EMEA

26  distribution center, the basis for MICROSOFT'S contention, if it so contends that said relocation

27  and costs associated therewith was a result of MOTOROLA'S alleged breach of its obligations or

28  commitments to an SDO, all other lawsuits against MICROSOFT pending in Germany prior to the

1   relocation of its EMEA distribution center in which MICROSOFT faced the risk of injunction,

2   destruction of devices, or other remedies, relating to its distribution center in Germany or the

3   distribution of its products in Germany, other options MICROSOFT considered taking to prepare

4   for the potential injunction in Germany and the costs of such options, any efforts by MICROSOFT

5   to mitigate the damages claimed, all communications with any third parties regarding relocating

6   the EMEA distribution center to the Netherlands, the persons with knowledge of such facts, and

7   the documents relating to such facts.

8   **TOPIC NO. 9**

9        The costs (including the dollar amount) incurred by MICROSOFT in preparation for a

10   potential injunction requiring MICROSOFT to withdraw its Xbox products from the U.S. market

11   and the actions taken in preparation for the potential injunction, all other factors considered with

12   respect to those actions, the factual basis for MICROSOFT'S contention, if it so contends, that

13   said costs were incurred as a result of MOTOROLA'S alleged breach of its obligations or

14   commitments to an SDO, all other lawsuits against MICROSOFT pending in the United States in

15   which MICROSOFT faced the risk of injunction, destruction of devices, or other remedies,

16   relating to its manufacturing or distribution of its products in the United States, other options

17   MICROSOFT considered taking to prepare for the potential injunction in the United States and the

18   costs of such options, any efforts by MICROSOFT to mitigate the damages claimed, the persons

19   with knowledge of such facts, and the documents relating to such facts.

20   **TOPIC NO. 10**

21        Facts relating to any irreparable harm or other harm not adequately compensable at law

22   that MICROSOFT claims it has suffered or will suffer as a result of any breach by MOTOROLA

23   of its obligations or commitments to any SDO, persons with knowledge of such facts, and the

24   documents relating to such facts.

25

26

27

28

1      DATED this 5th day of April, 2013.

2

3

4                                             SUMMIT LAW GROUP PLLC

5                                             By /s/ Ralph H. Palumbo
                                                 Ralph H. Palumbo, WSBA #04751
6                                                Philip S. McCune, WSBA #21081
                                                 Lynn M. Engel, WSBA #21934
7                                                ralphp@summitlaw.com
                                                 philm@summitlaw.com
8                                                lynne@summitlaw.com

9
                                              By /s/ Thomas V. Miller
10                                               Thomas V. Miller
                                                 MOTOROLA MOBILITY LLC
11                                               600 North U.S. Highway 45
                                                 Libertyville, IL 60048-1286
12                                               (847) 523-2162

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
QUINN EMANUEL URQUHART &
SULLIVAN, LLP

3
By */s/ Kathleen M. Sullivan*
4
   Kathleen M. Sullivan, NY #1804624
   51 Madison Ave., 22nd Floor
5
   New York, NY 10010
   (212) 849-7000
6
   *kathleensullivan@quinnemanuel.com*

7
By */s/ Brian C. Cannon*
8
   Brian C. Cannon, CA #193071
   555 Twin Dolphin Drive, 5th Floor
9
   Redwood Shores, CA 94065
   (650) 801-5000
10
   *briancannon@quinnemanuel.com*

11
By */s/ William C. Price*
12
   William C. Price, CA #108542
   865 S. Figueroa Street, 10th Floor
13
   Los Angeles, CA 90017
   (213) 443-3000
14
   *williamprice@quinnemanuel.com*

15
16
17
18
19
20
21
22
23
24
25
26
27
28

# PROOF OF SERVICE

I am employed in the County of San Mateo, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139.

On April 5, 2013, I served true copies of the following document(s) described as **MOTOROLA'S SECOND NOTICE OF DEPOSITION TO MICROSOFT CORPORATION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)** on the interested parties in this action as follows:

microsoft-motorola@calfoharrigan.com

Project-MS_Moto_WDWA_343_1823@sidley.com

rcederoth@sidley.com

**BY ELECTRONIC MAIL TRANSMISSION:**  By electronic mail transmission from meghanbordonaro@quinnemanuel.com on April 5, 2013, by transmitting a PDF format copy of such document(s) to each such person at the e mail address listed below their address(es).  The document(s) was/were transmitted by electronic transmission and such transmission was reported as complete and without error.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 5, 2013, at Redwood Shores, California.


s/Meghan E. Bordonaro
Meghan E. Bordonaro

# EXHIBIT G

**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL: (650) 801-5000 FAX: (650) 801-5100

April 5, 2013

<u>VIA E-MAIL</u>

Shane Cramer
Calfo Harrigan Leyh & Eakes LLP
999 Third Avenue, Suite 4400
Seattle, WA 98104

Re:     <u>Microsoft Corp. v. Motorola Mobility, Case No. C10-1823-JLR</u>

Dear Mr. Cramer:

I write in response to Microsoft's April 3, 2013 Supplemental Responses to Motorola's Interrogatory Nos. 3 and 4.  Microsoft's supplemental responses (like its original responses) do not comply with Rule 33.  Moreover, they introduce new theories over eight months after the close of fact discovery, and Motorola will suffer prejudice as a result of Microsoft's delay in disclosing these theories.

Interrogatory No. 3 asks for the factual basis for any contention underlying Microsoft's claim of breach of contract.  Microsoft's response is conclusory.  By way of example only, Microsoft asserts that the October 2010 letters were "commercially unreasonable and facially outrageous," but Microsoft does not explain the factual basis for that conclusion.  Similarly, Microsoft claims that Motorola improperly sought injunctive relief "instead of honoring its commitment to make licenses available on RAND terms," but does not cite any provision of a purported contract precluding Motorola from doing so.  Microsoft also asserts that Motorola's alleged declination to offer a license to Marvell on RAND terms constitutes a breach, but provides no facts on which this contention is based.  Microsoft further asserts that Motorola's alleged refusal to grant a license to Microsoft on the terms of the MPEG-LA AVC pool constitutes a breach, but provides

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510 | TEL (312) 705-7400 FAX (312) 705-7401
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
TOKYO | NBF Hibiya Bldg., 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 3 5510 1711 FAX +81 3 5510 1712
MANNHEIM | Erzbergerstrasse 5, 68165 Mannheim, Germany | TEL +49(0) 621 43298 6000 FAX +49(0) 621 43298 6100

April 5, 2013

no facts on which this contention is based.  These are merely examples.  Motorola is entitled to have notice of the claims Microsoft is asserting against it and to a full and complete interrogatory response.  Microsoft should promptly supplement its response to provide all facts supporting its contention of breach, rather than simply theories with gaping factual holes.  Please provide a supplemental response no later than April 10.

Interrogatory No. 4 asks Microsoft to state the factual basis for any contention that Microsoft suffered damage to its business or property as a result of Motorola's alleged breach.  Microsoft's initial response, served in February 2011, generally referenced the time, money and resources expended on the "Motorola Patent Actions".  It did not mention costs associated with litigating the Germany action, withdrawing H.264-compliant products from the German market and Xbox from the U.S. market, or relocating Microsoft's EMEA distribution center to the Netherlands.  Microsoft also did not reference Marvell's desire to license Motorola's patents or Google's MPEG-LA license agreement—nor is it clear from the supplemental interrogatory response what damages Microsoft is claiming on these bases.  Microsoft also improperly incorporates by reference "all filings made in support of its Motion for TRO and Preliminary Injunction, including Dkt. Nos. 209–217."  Fed. R. Civ. P. 33 (requiring each interrogatory response to be full and complete).  Further, like its response to Interrogatory No. 3, Microsoft's supplemental response to Interrogatory No. 4 does not fully articulate the factual bases for Microsoft's contention that it suffered damage as a result of Motorola's alleged breach of contract.

Microsoft's late disclosure of these new damages theories is extremely prejudicial to Motorola.  Microsoft had an ongoing duty under Rule 26(e) to supplement its interrogatory responses, and thus should have disclosed these theories well before the close of fact discovery last summer.  It did not, depriving Motorola of the opportunity to serve interrogatories, requests for production, or requests for admission directed at those theories.  Microsoft also did not disclose during the discovery period (and still has not disclosed) any fact witnesses that will purportedly testify about the facts supporting Microsoft's damages theory.  Thus, Motorola did not previously have the opportunity to depose those individuals and is now limited to only four depositions on damages issues which must all be taken within 30 days of the Court's order on the RAND rate.  Microsoft was also required to include a computation of damages in its Initial Disclosures, but failed to do so, and failed to disclose these new damages theories.  *See*  Fed. R. Civ. P. 26.  Further, Motorola has not been able to determine the experts it needs to retain to defend against Microsoft's claims because it did not know of Microsoft's damages theories and the facts supporting them until now (to the extent they are even included in Microsoft's supplemental interrogatory response), and opening expert reports are due only 40 days after the Court's order.  In contrast, Microsoft knew its own theories and has been able to retain the appropriate experts.  Motorola is considering filing a motion to strike these news theories due to their tardy disclosure.  Please explain why under the circumstances Microsoft's failure to timely supplement its discovery responses and provide sufficient information is not grounds for Motorola to strike the

April 5, 2013

new theories.  Motorola reserves all rights in connection with Microsoft's tardy disclosure of its damages theories.

Given the short time frame the parties have to complete the limited discovery permitted by the Court, please provide a supplemental response to Interrogatory No. 4 no later than April 10, which fully discloses the facts supporting Microsoft's contentions.  By that same date, Microsoft should supplement its Initial Disclosures to identify any fact witnesses on which it intends to rely to support its damages theories.  To the extent that Microsoft discloses more than three such witnesses, we expect that Microsoft will not object to Motorola taking greater than 4 depositions on damages.  Additionally, attached is a Rule 30(b)(6) deposition notice to Microsoft on damages issues.  Please provide a date between April 9 and April 15 on which the deponent(s) is available for deposition in the United States.[1]  We expect that Microsoft will complete its production of documents relating to its damages theories at least 2 days prior to that date.  We further expect that because Microsoft deprived Motorola of the opportunity to serve written discovery directed to these topics, it will not object to Motorola serving interrogatories, document requests, or requests for admission on damages without leave of court, and that Microsoft will agree to respond to those requests within 15 days of service.

Please confirm by April 9 that Microsoft agrees to the above.


Very truly yours,

Andrea Pallios Roberts

Andrea Pallios Roberts


CC: All counsel

APR

01980.62689/5250495.1

---

    [1]  We understand from communications with Mr. Harrigan that some witnesses may be located in Europe.  Under the circumstances, we expect that Microsoft will make its 30(b)(6) witnesses available in the United States.  Not only will this save the costs of requiring multiple attorneys to travel to Europe, but it will avoid the necessity of complying with another country's complicated deposition procedures, assuming depositions are even permitted in that country.

01980.62689/5250495.1                                        3

April 5, 2013

01980.62689/5250495.1

# EXHIBIT H

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
(206) 623-1700

CHRIS WION

E-MAIL: CHRISW@CALFOHARRIGAN.COM
FACSIMILE: (206) 623-8717

April 9, 2013

**VIA EMAIL**
Andrea Pallios Roberts
Quinn Emanuel
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA  94065-2139

Re:  *Microsoft Corp. v. Motorola Mobility, et al.*  Case No. 10-1823-JLR

Dear Ms. Roberts:

We write in response to your letter of April 5, 2013, which requests additional information relating to the subject of Motorola's Interrogatory Nos. 3 and 4 and transmits Motorola's Rule 30(b)(6) deposition notice regarding various damages topics.

First, the Supplemental Responses to Interrogatory Nos. 3 and 4 Microsoft served on April 3, 2013, are fully consistent with Microsoft's obligations under Rule 26(e).  The interrogatories at issue consist of generic requests that Microsoft "state the factual basis for" its claim (a) that Motorola's October 2010 demand letters constituted a breach of Motorola's commitment to license patents on RAND terms and conditions (Interrogatory No. 3) and (b) that Microsoft suffered damage and/or was irreparably harmed by reason of Motorola's demand letters (Interrogatory No. 4).  The information Microsoft provided responds fully to these interrogatories.  In fact, in response to the explicit request in your letter of March 18, 2013, Microsoft has provided additional detail that goes well beyond the scope of the original interrogatories, describing, among other things, the factual basis for each of Motorola's breaches that are the subject of the upcoming trial and all resulting damages.  For additional information relating to Microsoft's claims that Motorola's October 2010 demand letters requested excessive and non RAND royalties in breach of Motorola's contractual commitments, we refer you to the extensive prior briefing in this case before Quinn Emanuel became involved, as well as the transcript of the November 2012 RAND trial, and admitted exhibits.  Obviously, it is neither required, nor practical, for Microsoft to duplicate substantial portions of that extensive evidentiary record in order to supplement its interrogatory responses.  Microsoft's responses, as supplemented on April 3, satisfy Microsoft's obligations under the Rules.

Additionally, with respect to Interrogatory No. 4, your letter observes that Microsoft "did not mention costs associated with litigating the Germany action ... or relocating Microsoft's EMEA distribution center to the Netherlands" in its February 2011 discovery responses.  As you no doubt are aware, Quinn Emanuel filed the German action on Motorola's behalf in early July 2011.  The relocation of Microsoft's EMEA distribution center from Germany to the Netherlands

Andrea Pallios Roberts
April 9, 2013
Page 2

was completed in June 2012. Motorola was aware of Microsoft's efforts to mitigate the potential
harm resulting from the German injunction by relocating its EMEA operations to the
Netherlands long before Quinn Emanuel became involved in this litigation. For example, at the
summary judgment hearing that took place on May 7, 2012, Art Harrigan explained that
Microsoft had to move its German distribution center to the Netherlands as a result of the
injunctive relief Motorola was seeking, since the relocation would take time to accomplish and
could not be achieved effectively after the injunction became effective. Then, during a
telephonic status call with the Court on July 9, 2012, Mr. Harrigan stated Microsoft's position
that expert damage reports – which would involve "figuring out what it costs to dismantle
Microsoft facilities in Germany in anticipation of an injunction" – should be postponed until
after the November 2012 RAND trial. As you know, Microsoft's opening expert report on
damages will be due 40 days after issuance of the Court's ruling on the RAND trial.

        In response to your earlier written request that Microsoft supplement certain of its
discovery responses, including Interrogatory Nos. 3 and 4, on April 3 Microsoft provided
supplemental responses that describe the costs associated with the German action and the EMEA
relocation. As explained on pages 29-31, Microsoft has confirmed that it is seeking to recover its
legal expenses, including attorneys' fees, incurred in defending the German action and costs
associated with relocating its EMEA operations from Germany to the Netherlands to mitigate the
substantial financial and non-economic harm resulting from potential enforcement of the
injunction sought by Motorola in the German action. Even before service of this supplemental
information, Mr. Harrigan identified these elements of Microsoft's damages during a March 29
telephone conference with Ralph Palumbo.

        With respect to Motorola's Rule 30(b)(6) deposition notice, we are in the process of
identifying potential witnesses to address the 10 damage-related topics Motorola has identified
and expect that the parties will be able to agree on a mutually acceptable date for the relevant
deposition(s) at Summit's offices in Seattle. We understand that Motorola's preference is to
have all relevant documents supporting Microsoft's damage claims at least two days prior to
deposition. As we are still in the process of identifying, gathering and reviewing documents for
production, we cannot yet commit to completing the relevant depositions by April 15, as you
request. We will advise you as soon as possible when we expect to complete production of
damage-related documents. As Mr. Harrigan and Mr. Palumbo discussed on March 29, we
expect to be in a position to produce Sidley's relevant invoices on or about April 15. However,
we will continue producing documents on a rolling basis, as promptly as possible.

        Pursuant to your request, we also plan to supplement Microsoft's damage-related
disclosures pursuant to Rule 26(a)(1)(A)(i), (iii) and Rule 26(e) by April 12 with all information
available as of that date.

        Finally, Microsoft is unwilling to deviate from any of the Court's orders regarding the
scope of discovery. Considering the breadth of Motorola's 30(b)(6) damage topics, we do not

Andrea Pallios Roberts
April 9, 2013
Page 3

expect that the Court's limit of four damage depositions for each party will pose a practical problem.  Microsoft also sees no legitimate basis for ignoring the Court's direction that neither party issue any additional written discovery.  Motorola has known for more than two years that Microsoft would be seeking damages associated with its defense of various actions in which Motorola has pursued injunctive relief related to its H.264 and 802.11 standard-essential patents. Microsoft is seeking the costs of defending against the German action on the same basis as the other actions in which Motorola improperly has pursued injunctive relief.  And, with regard to the other main category of monetary relief sought by Microsoft, Microsoft has produced, and will continue producing, documentation supporting the costs associated with the relocation of its EMEA facilities to the Netherlands, has described those costs in its supplemental discovery responses, will itemize those costs in its supplemental disclosures, and will make knowledgeable witnesses available for deposition.  Accordingly, Motorola has ample opportunity to discover the details of Microsoft's damage claims well in advance of any relevant deadlines, and cannot credibly claim any undue prejudice.

Very truly yours,

CALFO HARRIGAN LEYH & EAKES LLP

Chris Wion

CW:lb

81