LAW OFFICES
## CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
(206) 623-1700

ARTHUR W. HARRIGAN, JR.          E-MAIL: ARTHURH@CALFOHARRIGAN.COM
FACSIMILE: (206) 623-8717

May 3, 2013

**Via ECF**

Honorable James L. Robart
United States District Judge
USDC Courthouse
700 Stewart Street, Suite 14128
Seattle, WA 98101-9906

      RE:     *Microsoft Corp. v. Motorola, Inc., et al.*; Case No. C10-1823-JLR

Dear Judge Robart:

We write in response to Motorola's letter brief of May 1, 2013.

### I.     Introduction

There is no basis for Motorola's requested relief – precluding Microsoft from presenting at trial evidence relating to damages Microsoft incurred in connection with relocation of its distribution facility for Europe, the Middle East, and Africa ("EMEA") from Germany to the Netherlands to mitigate the consequences of potentially being enjoined by a German court from selling or distributing Xboxes and Windows from Germany.  Microsoft did not violate Rule 26(e)(1), which requires a party to supplement or correct initial disclosures if the information has not otherwise been made known to the other parties.  Here, Motorola has known that Microsoft intended to recover these relocation costs as damages for nearly a year, as they were described during the May 7, 2012 hearing on the parties' cross motions for summary judgment, and were again disclosed to Motorola during a July 9, 2012 call with the Court, the result of which was that the parties agreed to stay all damages-related discovery until this spring, after completion of the November 2012 RAND trial.

Motorola's letter brief both ignores and distorts the history of communications between the parties and with the Court regarding Microsoft's German relocation cost damages.

Since at least early July 2012, Motorola has known that Microsoft's damages expert would be involved in calculating the damages associated with Microsoft's relocation costs.  And shortly thereafter, Motorola specifically agreed that "**damages discovery will proceed on a separate schedule, in conjunction with expert reports on damages** and breach."[1]  The "separate schedule" referred is the schedule that was later set by the Court on March 14, 2013.  Thus, there has been neither a discovery violation nor an ambush.

---

[1] *See* Exhibit 1 (7/11/12 email) (emphasis added).  All numbered exhibits are attached hereto; alphabetical exhibits have been supplied by Motorola along with the Declaration of Andrea Roberts (Dkt. No. 683) (the "Roberts Decl.").

Honorable James L. Robart
May 3, 2013
Page 2

Motorola's current request for additional discovery not authorized by the Court's March 14 Order is both unjustified and untimely. If such relief were appropriate at all, it could and should have been requested weeks ago when Motorola had the information (or misinformation) it now advances. Instead, Motorola waited to seek relief until the requested discovery expansion will inevitably impact the entire case schedule. The timing suggests that Motorola's aim is not discovery, but dismissal of Microsoft's damages claim instead.

In any event, the current schedule and discovery order provides Motorola access to the discovery it needs. Microsoft has supplemented its initial damages disclosures, has supplemented relevant interrogatory responses (providing information far beyond the minimum required), has produced the documents relating to and supporting the claimed damages, has designated Microsoft's General Manager, Global Supply Chain Operations, to address Motorola's 30(b)(6) deposition topic on the German relocation costs, will be providing an expert report addressing the German relocation costs, and will make its expert available for deposition before the close of expert discovery. There is no prejudice to Motorola.

## II.     Relevant Factual Background

### A.     June 2011 – May 2012:  Motorola Improperly Seeks a German Injunction, Forcing Microsoft to Relocate Its Primary Distribution Center for EMEA

Microsoft's relocation damages arise out of Motorola's breach of its RAND commitments to the ITU. Instead of honoring its RAND obligations, Motorola sought injunctive relief in Germany. For years, Microsoft's primary distribution facility for EMEA has been located in Duren, Germany. The vast majority of Microsoft products sold in EMEA – including Xbox 360s and copies of Windows –passed through this German facility. But for the Court's barring Motorola from enforcing its German injunction, Microsoft's ability to distribute its products over a large part of the world would have been seriously and abruptly interrupted, at great cost and with severe non-monetary harm. Of course, none of this would have been necessary if Motorola had honored its RAND obligations.

To mitigate these losses Microsoft had to act swiftly before it was abruptly stopped in its tracks by an injunction. It defended against the German action (including following the so-called "*Orange Book*" procedure), it sought injunctive relief from this Court, and it embarked on the massive effort to move its EMEA distribution facility to the Netherlands before an injunction shut down the operation in Germany. This relocation effort began in March 2012, before this Court entered its Temporary Restraining Order enjoining Motorola from enforcing any German injunction and was accomplished in ten weeks at a cost of about $11.6 million for the relocation and annual increased operating costs of about $5 million.[2] The underlying records supporting

---

[2] Microsoft is entitled to recover the costs of these mitigation efforts because they were reasonable based on what Microsoft knew at the time. *See Kubista v. Romaine*, 14 Wn. App. 58, 64, 538 P.2d 812 (1975) ("an injured party is generally entitled to all legitimate and reasonable expenses necessarily incurred by him in an honest and good faith

these costs have been produced on a rolling basis as they have become available, starting on April 3, 2013 – before Motorola produced even a single additional document in connection with the breach phase of this case.

**B.     May – July 2012: Microsoft Describes Its German Relocation Costs, Microsoft Identifies those Damages as Involving Expert Analysis, and the Parties Agree To Postpone Damages Discovery**

At the May 7, 2012 hearing on the parties' cross-motions for summary judgment, Microsoft's counsel described the relocation damages:

> Microsoft's irreparable harm actually began before we even came into the court. And that is that it had to move its distribution center to the Netherlands because it wouldn't have time to make the change after an injunction was entered. There were hundreds of people dismantling its German operations. There was concern about all kinds of partner relationships being dismembered, because the German operation is huge and complicated, and there was no way to comply with any injunction without making the preparations.[3]

In June 2012, while discovery continued on RAND issues, the parties engaged in extensive discussions about staying all issues other than those that would be decided at the November 2012 trial. These discussions included staying discovery so the parties and Court could focus on the RAND issues. Ultimately, the parties could not agree on the scope of the stay. On July 9, 2012, the parties participated in a call with the Court regarding, among other things, the timing of damages discovery and expert reports. During that call, Microsoft's counsel explained that calculating the German relocation costs would involve expert analysis and other discovery that should be deferred until after the November RAND trial:

> Your Honor, with respect to the expert issue, my primary concern is the damages aspect of it, which involves, among other things, figuring out what it costs to dismantle Microsoft facilities in Germany in anticipation of an injunction. It's a lot of work. There are going to be depositions about it. There are probably going to be motions about it, and there is no reason – we suggest that there is no reason for anybody to be working on that within the current compressed schedule for getting the RAND case ready.[4]

---

effort to reduce the damages from or following the wrongful act"). Microsoft is not precluded from recovering these costs simply because the Court subsequently entered a TRO preventing Motorola from enforcing its injunction. Even after entry of the TRO, there was no assurance that the Court would enter a preliminary injunction, or that the Ninth Circuit would affirm the Court's ruling. This uncertainty justified Microsoft's responsible efforts to ensure continuity of Xbox and Windows sales in EMEA by relocating its German distribution facilities beyond the reach of any German injunction.

[3] Ex. 2 (excerpt of 5/7/12 Hearing Tr. at 81-82) (emphasis added).

[4] Ex. 3 (7/9/12 Hearing Tr. at 8-9) (emphasis added).

The Court determined that, at a minimum, expert discovery on these issues would go forward on a separate schedule, to be issued after the November RAND trial:

> In terms of expert reports on both breach and damages, they are not called for at this time and they may be filed in accordance with the schedule that the court puts out in regards to the subsequent trial that we will be conducting.[5]

The next day, the Parties filed a joint, agreed motion to stay all issues in the case except the Court's ruling on Microsoft's motion for summary judgment on injunctive relief and "pre-trial and trial on the RAND issues in the RAND trial commencing on November 13, 2012." The Court granted the motion. (Dkt. No. 360).

As a consequence of these proceedings, Microsoft believed that damages discovery was stayed, and would go forward on a separate schedule for the subsequent breach trial. To confirm that Motorola shared this understanding, Microsoft sent Motorola an email on July 11 confirming that "[i]n light of the Court's statements at the hearing yesterday, we assume you agree that damages discovery will proceed on a separate schedule, in conjunction with expert reports on damages and breach."[6] Motorola's counsel agreed.[7] Neither party sought nor provided further discovery or supplementation on issues related to breach or damages.

### C. March 14, 2013: The Court Issues Its Separate Schedule for the Breach Trial

On March 14, 2013, the Court issued its scheduling order, setting both damages discovery deadlines and the remaining case schedule. Prior to that point, both parties continued to act in a manner consistent with their July 11 agreement, and neither party engaged in any further damages discovery or undertook to supplement discovery responses (aside from those necessary for the November 2012 RAND trial). Microsoft, and presumably Motorola, believed that the breach case had been stayed, and indeed had expressly agreed among themselves that "damages discovery will proceed on a separate schedule[.]"

### D. March 29 – April 3: Microsoft Confirms that It Will Be Seeking Its German Relocation Costs and Updates Its Interrogatory Responses

In a telephone call on March 29, 2013, counsel for Microsoft provided additional detail regarding the German relocation cost damages to counsel for Motorola, who restated Microsoft's position in a confirming email:

> The first element of Microsoft's damages will be the costs incurred by Microsoft to move its operations in Germany to the Netherlands in preparation for a potential injunction in Germany. The damages amount includes the actual costs

---

[5] *Id.*, at 9-10.

[6] Ex. 1 (7/11/12 email) (emphasis added).

[7] *Id.*

of moving from the German facility to the facility in the Netherlands. Microsoft will provide actual invoices as backup for this portion of the claim. The damages amount will also include the differential in costs between operating in Germany and the higher operation costs in the Netherlands. Microsoft will provide the damages amount for this portion of the claim and an explanation of the differential costs incurred. This portion of the damages claim is not identified by actual invoices.[8]

On March 30, Microsoft wrote that it would be supplementing its prior discovery responses on this subject within the next few days and would produce supporting documentation:

We will provide supplemental responses to Motorola's interrogatories on breach and damages by the middle of next week. Microsoft's claim for money damages will include costs arising from preparing for a possible German injunction including costs incurred in connection with relocating a distribution facility from Germany to the Netherlands and increased operating costs that have been and will continue to be incurred as a result of the relocation. We will provide backup materials for these costs. The backup materials will include invoices, and we believe most of the costs of the move will be reflected in invoices. With respect to the operating cost differential we will include an explanation of the reasons for the differential.[9]

On April 3, as promised, Microsoft provided a supplemental interrogatory response that provided further detail regarding Microsoft's German relocation costs. (Roberts Decl., Ex. E, at 26-28.)

E.  **April 5 – April 9:  Motorola Claims Prejudice and a Need For Additional Discovery But Fails to Seek Relief**

On April 5, Motorola wrote a letter threatening to move to strike Microsoft's request for German relocation damages and asking Microsoft to consent to additional written discovery and depositions. (Roberts Decl., Ex. G, at 2-3.) Motorola also served a 30(b)(6) Deposition Notice identifying various damage-related topics. (Roberts Decl., Ex. F.)

On April 9, Microsoft agreed to make its 30(b)(6) witnesses available as soon as schedules could be arranged and relevant documents produced. Microsoft also stated that no additional discovery beyond that authorized by the Court's March 14 Order was necessary, based on the information, documentation, and witnesses it was making available:

---

[8] Ex. 4 (3/29/13 email).

[9] Ex. 5 (3/30/13 email).

Honorable James L. Robart
May 3, 2013
Page 6

> [W]ith regard to the other main category of monetary relief sought by Microsoft, Microsoft has produced, and will continue producing, documentation supporting the costs associated with the relocation of its EMEA facilities to the Netherlands, has described those costs in its supplemental discovery responses, will itemize those costs in its supplemental disclosures, and will make knowledgeable witnesses available for deposition. (Roberts Decl., Ex. H, at 2-3.)

Microsoft's position has remained essentially unchanged since April 9, but Motorola waited until May 1 before requesting additional discovery on an expedited basis that would require extending the case schedule.

**F.     April 12 – May 1:  Microsoft Supplements Its Disclosures, Produces Documents, and Makes Its 30(b)(6) Designees Available, as Promised; Motorola Continues to Claim Prejudice and Files Its Letter Brief**

On April 12, Microsoft served its Supplemental Disclosures, echoing the information it provided on April 3 and quantifying Microsoft's German relocation costs. (Roberts Decl., Ex. I, at 9.)  Microsoft also disclosed potential witnesses who may testify regarding damage issues at trial, including David Killough, Jon DeVaan, Jeff Davidson, Josh Hutto, and Marcello Prieto.

On April 22, Motorola continued to claim it needed additional written discovery and additional depositions. (Roberts Decl., Ex. J, at 2.)

On April 24, Microsoft explained that there would be "significant overlap between our [30(b)(6)] designees and the witnesses listed on our Rule 26 disclosure," which would minimize the need for duplicative, separate depositions. (Roberts Decl., Ex. K.)  Microsoft also reiterated its earlier proposal that the parties stipulate to the reasonableness of the hourly rates and hours spent in connection with Microsoft's separate request to recover certain costs of defending against Motorola's improper pursuit of injunctive relief in various forums.  Microsoft explained that "[t]his would streamline the deposition process by eliminating the need for examination on these subjects and obviating the need for Microsoft's own 30(b)(6) deposition[.]"  Microsoft also confirmed that it did "not plan to withhold any documents on the basis that they are not supportive of Microsoft's positions."  In addition to supporting invoices and payment records, Microsoft has produced hundreds of documents, including hundreds of emails, regarding the German relocation.

On April 26, the parties engaged in a meet and confer, at which Microsoft identified Mr. Killough, Mr. DeVaan, and Mr. Davidson as its corporate designees to address the main damages topics in Motorola's 30(b)(6) deposition notice.  Microsoft also served its Objections to the deposition notice, which Motorola is not contesting.

On April 29, during the parties' second meet and confer, Microsoft provided dates for Mr. Killough's and Mr. DeVaan's depositions, and explained that a date for Mr. Davidson's deposition would be provided shortly.

On May 1, three hours before Motorola filed its letter brief, Microsoft confirmed that Mr. Killough, Mr. DeVaan and Mr. Davidson would be available for deposition on May 6, May 7 and May 9, respectively.[10] Microsoft also designated David Treadwell to address part of one 30(b)(6) topic, and offered to make him available on May 17. Microsoft further explained that "if this multi-part 30(b)(6) deposition is concluded in 7 hours or less, Motorola will have used only 1 of its 4 damage depositions."[11] Motorola has agreed to go forward with these depositions.

### III. Argument & Authority

#### A. Microsoft Has Complied with Rule 26.

Microsoft has provided Motorola with disclosures bearing on its German relocation costs that comply with the requirements of Rule 26(a)(1)(A)(iii). Motorola does not claim otherwise. Motorola claims only that the disclosures should have been made earlier and, on that basis, claims a violation of Rule 26(e)(1).

Rule 26(e)(1) requires a party to "supplement or correct its disclosure … in a timely manner if the party learns that in some material respect the disclosure … is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Under the Rule, Microsoft had no obligation to supplement its disclosures by stating that it would be seeking recovery of its German relocation costs because that information had "otherwise been made known" to Motorola. Motorola has known about Microsoft's relocation of its EMEA distribution center from Germany to the Netherlands since May 7, 2012.[12] Motorola has known that Microsoft's experts would be involved in analyzing the damages associated with "dismantling the German facilities" since at least July 9, 2012.[13] Microsoft confirmed it would be seeking these damages and provided additional detail on March 29, 2013,[14] provided a computation of these damages on April 3 (Roberts Decl., Ex. E, p. 27), and has since provided relevant documentation.

---

[10] Ex. 6 (5/1/13 email).

[11] *Id*. To ensure that Motorola would not abuse the 30(b)(6) mechanism, Microsoft stated that, "if Motorola spends an excessive amount of time questioning any 30(b)(6) designee in his personal capacity, Microsoft reserves the right to treat each such instance as a separate deposition."

[12] Ex. 2 (excerpt from 5/7/12 hearing transcript, at 81-82).

[13] Ex. 3 (7/9/12 hearing transcript, at 8-9).

[14] Ex. 4 (3/29/13 email).

B.  **Microsoft's Disclosure of Contentions and Supplementation of Its Written Disclosures Were Timely Under the Parties' Agreement and Left Ample Time for Motorola to Seek any Warranted Relief Weeks Ago – Which It Chose Not To Do; No Sanctions Are Appropriate**

Motorola argues that Microsoft's relocation damages are subject to the "automatic" preclusion sanctions in Rule 37(c)(1). However, the cases Motorola cites do not support any such outcome. In *Yeti by Molly LTD v. Molly Strong-Butts*, 259 F.3d 1101, 1105 (9th Cir. 2001), the court affirmed the district court's decision to preclude an expert whose report was issued more than two years after the discovery deadline and 28 days before trial. Likewise, in *Veritas Operating Corp. v. Microsoft Corp.*, No. 06-cv-703-JCC, 2008 WL 657936 (W.D. Wash. Jan. 29, 2008), the court precluded one of the parties from pursuing a category of damages that had not been disclosed during the discovery period.

In contrast, courts routinely refuse to preclude damages theories where they are disclosed in the discovery period. In *Vaccaro v. Waterfront Homes Marina*, No. 10-cv-4288, 2011 WL 5980997, *5 (S.D.N.Y. Nov. 30, 2011), the defendants made the same argument Motorola raises here. The court found the argument unpersuasive where the damages category was disclosed "four weeks prior to the deadline for fact discovery and five weeks prior to the deadline for defendants to designate experts and serve expert reports." *Id.* The Court in *Curtis v. Daviess-DeKalb Reg. Jail Dist.*, No. 08-6075, 2009 WL 3382930 (W.D. Mo. Oct. 19, 2009), reached the same conclusion:

> Because discovery has not yet closed and Plaintiffs could still supplement their Rule 26 disclosures and interrogatory responses, the Court finds the Motion to Strike is premature. However, this issues [sic] presented are amiable [sic] to a motion to compel under Rule 37(a). The Court will therefore treat the pending Motion as such.

*Id.*[15] The court then ordered the plaintiff to provide a calculation of damages along with supporting documents.

Even if, under normal circumstances, Microsoft may have been required to supplement its disclosures sooner than it did, the parties' July 11, 2012 agreement to stay damages discovery until now prevents Motorola from claiming a discovery violation sanctionable under Rule 37. Rule 37(c)(1) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) … is not, unless such failure is harmless, permitted to use as evidence at a trial … any witness or information not so disclosed." Here, the timing of Microsoft's disclosures was both substantially justified and harmless.

---

[15] *See also E.E.O.C. v. Lennar Homes of Arizona, Inc.*, CV-03-1827-PHX-DGC, 2006 WL 1734594 (D. Ariz. June 23, 2006) (declining to preclude damages calculations contained in supplemental disclosure made months after discovery cut-off and on eve of trial because they had previously been disclosed in expert's report).

Honorable James L. Robart
May 3, 2013
Page 9

       1.   The Timing of Microsoft's Disclosures Was "Substantially Justified" By the Parties' Agreement to Postpone Damages Discovery Until Now.

As explained above, Microsoft operated under the understanding that the Court's July 16, 2012 Order staying all non-RAND issues had stayed all damage-related discovery. Microsoft also reasonably believed that Motorola held the same view. Indeed, on July 11, 2012, the parties agreed that "damages discovery will proceed on a separate schedule, in conjunction with expert reports on damages and breach[.]"[16] The schedule for "expert reports on damages and breach" was not set until March 14, 2013. Accordingly, Microsoft reasonably believed that it was not obligated to supplement any damage-related disclosures or discovery at any time prior to March 14. Once the Court issued its March 14 Order, Microsoft promptly provided Motorola with the basis for its relocation costs, and began providing the underlying documentation for these costs.

       2.   The Timing of Microsoft's Disclosures Was Harmless

Motorola was fully apprised of Microsoft's intent to recover its German relocation costs by May-July, 2012, and the very latest under any possible version of events by March 29, 2013[17] – when 50 days remained before the fact discovery cut-off. This timing was harmless. *See Frontline Med. Assocs. v. Coventry Health Care*, 263 F.R.D. 567, 570 (C.D. Cal. 2009) ("Harmlessness may be established if a disclosure is made sufficiently in advance of the discovery cut-off date to permit the opposing party to conduct discovery and defend against the damages claims"). If Motorola believed it needed additional discovery beyond that authorized by the Court's March 14 Order, Motorola had the opportunity to seek relief at a time when any such discovery could have been completed within the discovery window. Whatever prejudice Motorola is claiming could have been cured well within the May 20 fact discovery deadline if Motorola had acted promptly, rather than waiting until May 1 to ask for relief.

**C.**    **Motorola Does Not Need Additional Depositions**

Motorola's request for additional fact depositions should be denied because it is inconsistent with the Court's order of March 14 and is otherwise unjustified. In any event, this issue has no bearing on whether Microsoft's relocation cost damages should remain in the case or the case schedule extended.

Motorola's April 5, Rule 30(b)(6) deposition notice includes multiple topics that broadly cover all of Microsoft's damage claims. Motorola claims it may need to depose Microsoft's 30(b)(6) designees in their individual capacity, as well as in their corporate capacity. The breadth of Motorola's 30(b)(6) topics undermines its argument, as there is very little not already covered by those topics.

---

[16] Ex. 1 (7/11/12 email).

[17] Ex. 4 (3/29/13 email).

Honorable James L. Robart
May 3, 2013
Page 10

      Microsoft has designated four witnesses to address Motorola's 30(b)(6) damage topics. Microsoft designated three of those four witnesses – Mr. Killough, Mr. DeVaan, and Mr. Davidson – because their personal knowledge closely overlaps the 30(b)(6) deposition topics for which they have been designated. By way of example, Microsoft disclosed Mr. Davidson, General Manager, Global Supply Chain Operations, as knowledgeable about "the costs associated with relocation of Microsoft's EMEA operations from Germany to the Netherlands," "Microsoft's decision to relocate Microsoft's EMEA operations" and "operational aspects of Microsoft's EMEA distribution network." (Roberts Decl., Ex. I, p. 4.) Microsoft also has designated Mr. Davidson as its 30(b)(6) witness to testify regarding the German relocation costs. Mr. Davidson's deposition is scheduled for May 9. Microsoft has agreed to count all four parts of Motorola's 30(b)(6) deposition as a *single* deposition, provided they are collectively concluded within seven hours.[18]

      Finally, Microsoft is willing to allow Motorola to divide its six allotted fact witness depositions as it sees fit, without regard to any distinction between breach or damage issues. Thus, after accounting for Motorola's two pending 30(b)(6) deposition notices on damages and breach, four depositions remain.

### IV. Conclusion

      For the foregoing reasons, Microsoft respectfully submits that Motorola has failed to justify the extreme sanction of striking any part of Microsoft's damages or for extending the case schedule to accommodate a belated and unnecessary request for additional discovery.

Very truly yours,

CALFO HARRIGAN LEYH & EAKES LLP

Arthur W. Harrigan, Jr.

AWH:lb
Enclosures

---

[18] *I.e.*, if a 30(b)(6) deposition exceeds 7 total hours but remains under 14 hours, Motorola will have used 2 of its allotted depositions.