# Exhibit 2

```
 1                UNITED STATES DISTRICT COURT

 2            WESTERN DISTRICT OF WASHINGTON AT SEATTLE

 3   _____

 4   MICROSOFT CORPORATION,         )
                                    )
 5                 Plaintiff,       ) 10-01823-JLR
                                    )
 6   v.                             ) SEATTLE, WASHINGTON
                                    )
 7   MOTOROLA INC., et al,          ) May 7, 2012
                                    )
 8                 Defendants.      ) Motions
                                    )
 9   _____

10                VERBATIM REPORT OF PROCEEDINGS
             BEFORE THE HONORABLE JAMES L. ROBART
11                UNITED STATES DISTRICT JUDGE
     _____
12

13
     APPEARANCES:
14

15

16    For the Plaintiff:    Arthur Harrigan, Christopher
                            Wion, David Pritikin, Richard
17                          Cederoth, Andy Culbert, David
                            Killough, David Howard and Shane
18                          Cramer

19

20

21    For the Defendants:   Jesse Jenner, Ralph Palumbo,
                            Norman Beamer, Philip McCune,
22                          Kevin Post and Neill Taylor

23

24

25
```

1  relief, and do you have to show irreparable harm, presumes
2  that there's been in this case an infringement or there's
3  been some breach.  The issue is, what's the remedy?  And here
4  the remedy is money, and it will be decided in this case in a
5  RAND context pursuant to Microsoft's commitment to take a
6  license.  And so, the end game here in this case will
7  inevitably result in Motorola receiving reasonable
8  compensation, and that removes any basis for injunctive
9  relief.
10          THE COURT:  Well let me take you back to your
11 anti-suit briefing, in which you argued that Microsoft would
12 suffer irreparable injury if there was not an injunction
13 entered against Motorola, among other reasons that potential
14 customers wouldn't buy the product because of uncertainty,
15 that it was a damage to Microsoft's reputation for
16 reliability, all of those arguments which you were forcefully
17 making at the time.
18     If Mr. Jenner or Mr. Palumbo were to stand up, they would
19 say the same thing.  So why were you right then, and they're
20 wrong now?
21          MR. HARRIGAN:  Well, Your Honor, in fact Motorola
22 does not say the same thing.  It has done nothing to identify
23 irreparable harm.  Microsoft's irreparable harm actually
24 began before we even came into the court.  And that is that
25 it had to move its distribution center to the Netherlands

Debbie Zurn - RPR, CRR - Federal Court Reporter - 700 Stewart Street - Suite 17205 - Seattle WA  98101

1  because it wouldn't have time to make the change after an
2  injunction was entered.  There were hundreds of people
3  dismantling its German operations.  There was concern about
4  all kinds of partner relationships being dismembered, because
5  the German operation is huge and complicated, and there was
6  no way to comply with an injunction without making the
7  preparations.
8      And that irreparable harm was already happening.  Motorola
9  has come forward with nothing comparable to that at all.
10          THE COURT:  That just seems to me that Microsoft made
11 a bad legal decision.  German law was the same when it set
12 this up as it is now.  And they chose to go into a large and
13 very lucrative market in the face of law which was known to
14 them.  So, that argument doesn't have much traction with me.
15          MR. HARRIGAN:  Well, Your Honor, I'm not trying to
16 debate the wisdom or the merits of the German legal system.
17 But the question was, wasn't Microsoft arguing it would
18 suffer irreparable harm from a German injunction?  And the
19 answer is yes.  And it really was irreparable harm.  I'm
20 saying, if you look at Motorola's evidence, they just talk
21 about, well, there are these cases that say that this might
22 happen or that might happen.  But there is no evidence that
23 it is happening or it actually would happen.
24          THE COURT:  All right.
25          MR. HARRIGAN:  For example, some of the cases say you

1  both Motorola and Microsoft has been driven by an attempt to
2  secure commercial advantage.  And to an outsider looking in
3  at it, the conduct has been arbitrary, it has been arrogant,
4  and frankly it appears to be based on hubris.
5     When I use the word "hubris" I am reminded of Sophocles'
6  *Antigone*, when Creon refuses to even bury Polynices; or, for
7  those of you who want to be more highbrow, Icarus for flying
8  too close to the sun.
9     These days hubris is usually defined as extreme pride or
10 arrogance, often associated with the loss of contact with
11 reality, and an overestimation of one's own competence or
12 capabilities.  In this case, it is an indictment of the
13 character of the parties.
14    So, returning to the court's self-described role as a pawn
15 in this chess game, I leave you with one of my favorite
16 traditional Irish sayings:  When the chess game is over, the
17 pawn and the king go back to the same box.
18    You should think about that.  We will be in recess.  Thank
19 you, counsel.
20              (The proceedings recessed.)
21              C E R T I F I C A T E
22    I certify that the foregoing is a correct transcript
23 from the record of proceedings in the above-entitled matter.
24 /s/ *Debbie Zurn*                          May 8, 2012
25 Debbie Zurn, Court Reporter