```
              UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON AT SEATTLE
_____

 MICROSOFT CORPORATION,           )
                                  )
             Plaintiff,           )
                                  )
 v.                               ) CASE NO. C10-1823JLR
                                  )
 MOTOROLA, INC., et al.,          ) SEATTLE, WASHINGTON
                                  ) May 7, 2013
             Defendants.          )
 _____  ) TELEPHONE CONFERENCE
                                  )
 MOTOROLA MOBILITY, LLC, et al.,  )
                                  )
             Plaintiffs,          )
 v.                               )
                                  )
 MICROSOFT CORPORATION,           )
                                  )
             Defendant.           )
                                  )
_____

              VERBATIM REPORT OF PROCEEDINGS
          BEFORE THE HONORABLE JAMES L. ROBART
              UNITED STATES DISTRICT JUDGE
_____

 APPEARANCES:


  For the Plaintiff:     ARTHUR HARRIGAN
                         CHRISTOPHER WION
                         SHANE CRAMER
                         DAVID PRITIKIN
                         ANDY CULBERT

  For the Defendants:    RALPH PALUMBO
                         PHILIP McCUNE
                         BRIAN CANNON
                         ANDREA ROBERTS


  Reported by:           NANCY L. BAUER, CCR, RPR
                         (206) 370-8506
                         nancy_bauer@wawd.uscourts.gov
```

May 7, 2013                                                           1:30 p.m.
PROCEEDINGS
_____

THE COURT: Good afternoon, counsel. This is Judge Robart.

MR. HARRIGAN: Good afternoon, Your Honor.

THE COURT: Mr. Palumbo, Mr. Harrigan. Who all do we have with us today?

MR. PALUMBO: Ralph Palumbo, Your Honor. For Motorola, I have Brian Cannon and Andrea Roberts from Quinn Emanuel, myself and Phil McCune from Summit. Mr. Cannon will be our primary spokesperson today.

MR. HARRIGAN: And, Your Honor, for Microsoft, you have yours truly, and my partners, Mr. Wion, Mr. Cramer, David Pritikin from Sidley, I believe, is on the line, and I think Mr. Culbert from Microsoft is auditing. I will be the speaker.

THE COURT: All right. Well, counsel, I've had an opportunity to review Mr. Palumbo's letter, which we are construing as a motion. And I appreciate you using the court's 7(i) feature so we can get this done expeditiously, and I believe it's dated May 1, 2013. And in response to that, I have Mr. Harrigan's letter of May 3, 2013.

At issue, as I understand it, is a request that the court preclude Microsoft from relying on or introducing evidence related to four damage theories.

So, in effect, this is somewhat like a motion in limine, although it really is more in the order of a disguise motion for summary judgment.

I've had a chance to go back and look at this, and let me give you my chronology, and then I have one question for both sides, and it's my intention to rule today.

Mr. Palumbo, in his letter, describes whatever was done by Microsoft on February 7, 2011, as initial disclosures. That is a term of art under the civil rules, and it is, perhaps, the most general lay-down disclosure I've ever seen, in that it says, "Microsoft claims its damages," and later it says, "All damages available under the law." And by way of further clarification says, "Suffered as a result of defending against Motorola's action in the district court for the Western District of Wisconsin and before the ITC."

That seems to me to address or go to one of the items of damage that's claimed by Microsoft in its subsequent more detailed disclosures.

On May 7th, 2012, and I actually have a recollection of this, Mr. Harrigan was passionately arguing to the court and announced that one of the Microsoft's items of damage was the costs associated with its move of its distribution center to the Netherlands. That was a new fact to the court at the time.

I do not have as detailed recollection of the July 9,

2012, phone call, but I haven't seen anyone contest that Mr. Harrigan at that time said something to the effect of the damages associated with dismantling Microsoft's facilities in Germany.

There is no question but that on July 10, 2012, I entered an order which stayed everything except a few limited number of items. Included in that was accept injunctive relief and pretrial and trial RAND issues.

That was apparently then clarified by the parties in the some emails exchanged, which the court was not privileged to. I guess my order was the 11th of July.

Not much then happens until trial last fall. Both parties seem to have operated with the assumption that damage discovery was stayed. I would have expected some continuation of damage discovery because I know that there was written discovery exchanged between the parties prior to the time of the stay, and it would have been my expectation that there would have been continued supplementation of that, but I can understand how you were busy concentrating on something else, and I certainly understand what you did.

We then, in March, issue a scheduling order setting a schedule for what was going to be permissible, and second, setting the date for the trial.

Your letters confirm that on March 29, 2013, apparently Microsoft had a conversation with Motorola regarding damages.

Once again, that comes outside the material that the court would be aware of.

And apparently on April 3rd, 2013, Microsoft served supplemental interrogatory answers, which would confirm the fact that there had been prior discovery served.

In that there are four items of claimed damage. First -- and I'm taking this from one of the letters -- it's attorneys' fees, Microsoft's attorneys' fees defending, and I underline the word "defending," Motorola's claims in the ITC, the U.S. district court in Germany. And since it seems to me there is a difference in attorneys' fees defending and attorneys' fees in prosecuting, I assume that the word was chosen intentionally.

Motorola, for its part, does not seek to exclude that as an item of damage in the upcoming trial, and therefore it seems to me that one is in there.

I would think that as part of either your motions in limine or your dispositive motions, someone will flesh out legal basis for that claim. Right now I guess I can create one in my mind, but that's not an area of damages law that I know off the top of my head, and it would be helpful to understand your basis for it.

The second is the relocation from Germany to the Netherlands, and I hold that that has previously been disclosed, and therefore is legitimately part of the damages

1   that will be pursued in the upcoming trial.
2       The third item of damage is Motorola's refusal to grant
3   Marvell a license, which I do not find having been raised
4   anywhere, and it certainly has not been raised to the court.
5   Microsoft does not respond to that, which, under the local
6   rules, is deemed to be a concession of its correctness, and
7   therefore I am tentatively striking that as an item of
8   damage.
9       And then the fourth, Motorola's refusal to grant Microsoft
10  a license under Google's MPEG LA license.  Once again,
11  Motorola has brought that on as a motion to exclude.
12  Microsoft has not responded.  In fact, there's no further
13  discussion of either of those, the Marvell license or the
14  MPEG LA license, and therefore I'm excluding it.
15      The trial in this matter remains as fixed in the March
16  2013 minute order.  I guess all I can say is welcome to the
17  party.  The time and the date is set, and it's not going to
18  get moved on the basis of some trumped-up stuff, and that
19  trial will go forward on issues No. 1 and 2, namely
20  attorneys' fees and the relocation.
21      At the very end of Mr. Palumbo's letter, there is a wish
22  list of items that Motorola would like, and that includes ten
23  requests for production of documents, three interrogatories,
24  50 requests for admissions, two additional depositions, and a
25  partridge in a pear tree.  They're not going to get very much

1  of that. I see no reason to allow requests for production of
2  documents when there's already been documents produced. If
3  you have not explored among yourselves areas where you
4  believe documents need to be produced, or you think documents
5  are being withheld, bring that matter on to the court.
6      The question I'm going to ask the parties at the end of
7  this is, why do you need interrogatories? As to the 50
8  requests for admissions, the answer is no. I'm going to
9  authorize two additional depositions so that you now have
10 eight total. Originally two were going to be on liability
11 and four were going to be on damages. And I'm not going to
12 allocate the two additional ones, but my assumption is, if
13 you're telling me the truth, those will probably be going to
14 damages.
15     And if you need some additional time to get your discovery
16 done before the cutoff date set by the court, I'm happy to
17 hear that, as I'm now at the end of my prepared remarks. So
18 Mr. Palumbo on behalf of Motorola?
19         MR. CANNON: Good afternoon, Your Honor. This is
20 Brian Cannon for Motorola. I think the two additional,
21 you're correct, will go to damages, at least on the Motorola
22 side.
23     The wish list request, I think, was primarily directed to
24 the moving of the Germany facilities. Your Honor is
25 absolutely correct about Microsoft potential damages theory

1  last year.

2      The issue from our end, or the reason we brought the
3  motion was that we actually thought the computation related
4  to that were not produced until this year.  However, Your
5  Honor ruled, and I have nothing further to say on that.

6      The interrogatory I had in mind was having to do with
7  moving the facility and asking Microsoft for its business
8  reasons in addition to what it alleges its damages theory is
9  as to why the facility moved.  But I think with the
10 additional deposition, we should be able to cover that
11 ground.

12           THE COURT:  Great.  Thank you.  Mr. Harrigan?

13           MR. HARRIGAN:  Yes, Your Honor.  I think the only
14 items that I would like to briefly address are the Marvell
15 and Google items, and to clarify that, there is no separate
16 damages claim for either one of those items -- either one of
17 those alleged breaches.

18     We were responding or supplementing by identifying those
19 as elements of our breach claim, and in the April -- and we
20 did refer to the April 3rd -- the supplemental disclosure in
21 our letter, and what that says is, with respect to, for
22 example, Google, Motorola failed to make a license available
23 on those terms.  If the license had been available, Microsoft
24 would not have incurred any further damage by virtue of -- by
25 failure of Motorola to make available a license on RAND terms

1  on its H.264 patents.  In other words, what we're saying is
2  that had the license been granted, some of the attorneys'
3  fees we're claiming would not have been incurred.  And the
4  same claim is made with respect to the Marvell issue.
5       So there is no need for any different or new damages
6  disclosure.  The damages are exactly the same as are asserted
7  on the other claims.  These are simply two additional grounds
8  on which those damages occurred that would have been avoided
9  had Motorola acted as we believe it was required to act.
10      So we would ask that -- that this motion has to do with
11 precluding presentation of damages proof.  We're not going to
12 be producing or seeking to introduce any different damages
13 proof based on those two claims.  We're simply clarifying
14 that they are part of the actions or failures to act by
15 Motorola that support the claims with respect to -- and I
16 believe in this case it would be just the attorneys' fees,
17 because I don't think that those would have affected the
18 German relocation issue.
19           THE COURT:  Mr. Harrigan, I can recall reading that
20 statement in regards to -- I think it was Marvell, although
21 I'm not finding it as I'm looking through your letter right
22 now.  And I think that's the first time I've seen that
23 argument.  Where in your letter does it mention the MPEG LA?
24           MR. HARRIGAN:  Your Honor, what I'm referring to is
25 that the letter references the April 3rd, 2013, supplemental

disclosures. And at page 27 and 28 of that document, the last two pages, we make the statements that I just described with regard to the Marvell and Google issues, basically saying that if the license had been granted, as we believe it was required under either of those, that would have avoided the fees -- some of the fees that we are claiming. Those elements of damage are no different from the fees that we are otherwise claiming that, obviously, the court has already held were properly disclosed.

THE COURT: Well, my problem with that is, that just opens up a black hole in that we're then going to get into the question of the Marvell license, which was covered in part at trial by, I think it was general counsel for Marvell, and it was certainly the subject of discovery in regards to MPEG LA, which was done at the last minute on a rushed basis.

How do we not have that swamp what is intended to be a breach of contract and damages case?

MR. HARRIGAN: Well, Your Honor, first of all, what I think I'm saying here is that since this motion is based upon the failure to disclose the damages arising from these breaches, there is no difference in the damages, based on these two items. And as you know, you know, the Google issue didn't even become real until May of 2012, and the Marvell issue, which has, obviously, as you say, been the subject of testimony. So I think that those two are fairly in the case.

1   And, you know, one of the things that we are actually
2   thinking that might be appropriate here is, at some point in
3   the not too distant future, at least when the court decides
4   whether this is going to be a jury trial or not, that we have
5   a conference and talk about how the trial can be structured
6   so as to get it over with in the time prescribed.  And I
7   think that we can figure out ways, to the extent these issues
8   need to be addressed, get them addressed in a short
9   limitation.
10          THE COURT:  All right.  Mr. Cannon, may I hear you,
11  please?
12          MR. CANNON:  Yes, Your Honor.  It's news to me that
13  the Marvell theory and the MPEG LA theory are not really
14  damages theory.  They're more of an offset theory.  I think,
15  as Your Honor noted at the outset, these are new theories and
16  it is a new computation that Microsoft is offering here in
17  terms of how to calculate the damages from the alleged
18  breach.
19      So I think Your Honor was correct to compare the
20  disclosures and the response of the interrogatory and leave
21  it at the MPEG LA and the Marvell issue, since they didn't
22  appear in the record until recently.  And so it's on that
23  basis that Motorola feels the new theory and new computation
24  and new ways to look at damages should have been disclosed
25  before.

1            MR. HARRIGAN:  And just one further comment, Your
2    Honor.
3        Really, the Marvell issue is an effort by Microsoft to get
4    a license via another method, which, obviously, hadn't been
5    granted would, you know, cut off whatever damages arose from
6    not having a license, including attorneys' fees.  And it's
7    certainly no mystery to anyone what the facts are surrounding
8    that, and all we would be intending to do at trial is to say,
9    you know, at our request Marvell asked for a license, and
10   they were essentially given the same royalty demand based on
11   the laptop price that we're claiming is a breach.
12           THE COURT:  All right.  Well, the court's ruling on
13   this is as follows:
14       I am going to permit that as an argument in support of the
15   identical damages that would have been presented anyway.  It
16   seems to me that both of those subjects were brought up and
17   discussed as part of the underlying trial on RAND rates, and
18   therefore the parties should not need to do any additional
19   discovery.  And since you're not asking for any additional
20   damages, I'm not sure that there is any prejudice in this
21   matter.
22       In terms of an answer on jury or nonjury, we're going
23   start working on that in the near future.
24       In the meantime, I would hope that you will concentrate
25   your efforts in regards to getting your discovery done.  It

```
 1   sounds like you're wasting a lot of time quibbling back and
 2   forth over how many hours count as a deposition.  Let's use
 3   some common sense there and get that done.
 4        My goal in this is that if there is a witness that needs
 5   to be deposed, they don't need to be burdened.  So between
 6   yes to a deposition and no to burden, I think you guys can
 7   figure out what you need to get done.
 8        That will be the ruling of the court.
 9        Mr. Cannon, anything else?
10             MR. CANNON:  The only thing I might ask, Your Honor,
11   is if there is any computations relating to the Marvell and
12   MPEG LA theory, we would get those before the close of that
13   discovery.  That would be helpful.
14             THE COURT:  I think what I heard Mr. Harrigan say is
15   it would not change what they've already given you.  They're
16   just arguing it is one more reason why they needed to do it,
17   and you have the information on what they've done.
18   Mr. Harrigan, is that an accurate statement?
19             MR. HARRIGAN:  Yes, that is accurate.
20             THE COURT:  Mr. Cannon, does that satisfy your
21   concern?
22             MR. CANNON:  Yes, Your Honor.
23             THE COURT:  All right.  All right, counsel, anything
24   else the court can do for you today?
25             MR. HARRIGAN:  Not from here.
```

1        MR. CANNON:  Thank you.

2        THE COURT:  All right.  Thank you, counsel.

3

4                (PROCEEDINGS CONCLUDED.)

C E R T I F I C A T E

       I, Nancy L. Bauer, CCR, RPR, Court Reporter for the United States District Court in the Western District of Washington at Seattle, do hereby certify that I was present in court during the foregoing matter and reported said proceedings stenographically.

       I further certify that thereafter, I have caused said stenographic notes to be transcribed under my direction and that the foregoing pages are a true and accurate transcription to the best of my ability.

       Dated this 12th day of May 2013.


       /S/  Nancy L. Bauer

       Nancy L. Bauer, CCR, RPR
       Official Court Reporter