

RALPH H. PALUMBO
DID: (206) 676-7042
EMAIL: ralphp@summitlaw.com

315 Fifth Ave S Suite 1000
Seattle, Washington 98104
phone · 206.676.7000
fax · 206.676.7001

June 18, 2013

The Honorable James L. Robart
United States District Court
Western District of Washington
700 Stewart Street, Suite 14128
Seattle, WA  98101-9906

**Re:**     ***Microsoft Corp.* v. *Motorola Mobility, Inc.***
            **Case No. C10-1823-JLR**

Dear Judge Robart:

## I.     Preliminary Statement

Microsoft claims Motorola's actions in seeking an injunction in Germany for infringement of a German patent ***caused*** it to move its European distribution facilities from Germany to the Netherlands (even though the injunction never took effect and there are procedures in Germany for avoiding injunctions). Because a claim for breach and damages requires causation, Motorola sought discovery regarding the decision making process behind Microsoft's relocation to a facility that, according to Microsoft's own documents, is bigger, better and more efficient. If Motorola's legal actions in Germany did not "cause" the relocation, any costs associated with the move are not recoverable as damages, even if other aspects of a contract breach theory are proven. Microsoft's response to Motorola's discovery, however, was inadequate; Motorola has no insight into the complete decision making process. For instance, Microsoft's corporate designee, Mr. Jeff Davidson only provided testimony regarding what he *personally* knew about the decision making process after a certain date. Yet, it was clear from his testimony that others at Microsoft, particularly those in the Legal Department, made decisions preceding his involvement. Mr. Davidson further refused to answer some questions regarding what he learned about the potential need to relocate on the basis of privilege. Microsoft cannot dispute this. It cannot point to any testimony whatsoever explaining Microsoft's analysis or considerations performed with regard to the relocation that occurred prior to mid-January 2012, or that did not involve the individuals deposed. Nor can it point to any testimony regarding why Microsoft did not take specific steps to mitigate damages.

Motorola respectfully requests that Microsoft be ordered to produce a corporate designee to testify fully regarding Microsoft's decision to relocate and all of the factors considered in that decision, as well as the reasons why Microsoft did not mitigate damages. There could be a host of reasons as to why Microsoft moved its facilities—other lawsuits, improved distribution, etc. Without access to the actual decision making process, Motorola

The Honorable James L. Robart
June 18, 2013
Page 2

cannot explore whether Motorola's filing of a lawsuit in Germany was the "cause" of the move, and thus defend itself against Microsoft's claim for damages. Alternatively, Microsoft should be precluded from introducing any evidence that it relocated its distribution facilities as a result of Motorola's alleged breach of contract. Should Microsoft claim privilege over the decision making process, then Microsoft should not be able to proceed with this theory. Microsoft cannot say that Motorola's legal actions caused Microsoft to move (and seek damages), while preventing Motorola from exploring Microsoft's reaction to and evaluation of the proceedings in Germany.

## II.    Statement of Relevant Facts

### A.    Microsoft Alleges It Relocated Its Distribution Facility as a Result of Motorola's Alleged Breach of Contract, and Motorola Seeks Discovery on That Theory.

On July 6, 2011, proceedings were initiated by General Instrument Corporation ("GIC"), which is part of the Motorola Group, against Microsoft before the District Court of Mannheim, Germany, seeking *inter alia,* injunctive relief prohibiting Microsoft from offering decoder apparatus and computer software in Germany that infringe GIC's two H.264 standard essential patents. (Dkt. No. 249). Microsoft claims that, in response to this pending litigation, it was forced to relocate its European, Middle Eastern and African ("EMEA") distribution center from Germany to the Netherlands, which it did on June 1, 2012. (Ex. 1, 89:19-20). The decision to move facilities, which came simultaneously with a decision to engage a new distribution vendor, gave Microsoft a larger fully-dedicated facility (Ex. 2) and a distribution partner who was "a significantly bigger player in the logistics field" than Microsoft's prior vendor. (Ex. 3, 78:10-18).

On April 3, 2013, Microsoft served a supplemental response to Motorola's Interrogatory No. 4, in which it stated that, as a result of Motorola's alleged breach of contract, Microsoft was forced to relocate its EMEA distribution center from Germany to the Netherlands. Microsoft further identified as damages both the costs of the transition and increased operation costs.

Two days later, on April 5, Motorola served Microsoft with its Second Notice of Deposition pursuant to Federal Rule of Civil Procedure 30(b)(6). Topic No. 8 of that Notice was directed at the costs incurred by Microsoft in preparation for a potential injunction requiring it to withdraw its H.264-compliant products from the German market, and specifically identified (among other things): the history of the decision to relocate the EMEA distribution center, all other factors considered by Microsoft in connection with relocating the EMEA distribution center, all other lawsuits against Microsoft pending in Germany prior to the relocation of its EMEA distribution center in which Microsoft faced the risk of injunction, destruction of devices, or other remedies, relating to its distribution center in Germany or the distribution of its products in Germany, and any efforts by Microsoft to mitigate the damages claimed. (Ex. 4). Motorola noticed the deposition for April 15. (*Id.*). Microsoft did not provide witnesses on the noticed date. Rather, on May 1, Microsoft designated Mr. Jeff

The Honorable James L. Robart
June 18, 2013
Page 3

Davidson, the General Manager in Supply Chain at Microsoft, to testify on Topic 8, and did not make him available for deposition until May 9. (Ex. 5; Ex. 1, 9:16-24).

**B.      Microsoft's Designee is Unprepared or Unwilling to Testify on the Noticed Topic.**

Motorola deposed Mr. Davidson on May 9, 2013, but he was not adequately prepared to testify, or was unwilling to testify, fully on Topic 8. First, Mr. Davidson could not testify fully regarding the decision to relocate the EMEA distribution facility, and all of the factors considered in making that decision. He testified that he was "alerted" to the potential need to relocate the distribution facility from Shelley McKinley in Microsoft's Legal Department, in mid-January 2012, making it clear that at least some work or analysis occurred prior to his involvement. (Ex. 1, 27:19-28:17, 56:17-58:16). He then testified regarding the work that he and his team did to analyze potential locations for a new facility, the potential for a new vendor, and actually implementing the move, after having been advised of the situation in January. He explained that Microsoft decided to work with a vendor called CEVA and relocate to a facility in Venray, The Netherlands, on or about March 8, 2012 (*id.*, 34:17-35:3), and the new facility went "live" on June 1, 2012. (*Id.*, 89:19-20). Mr. Davidson, however, did not testify regarding anything that occurred <u>prior to</u> him being informed of the potential need to relocate in mid-January 2012. Rather, he made clear that he had no information about such activities: ***"I'm not aware of anything that occurred before my involvement."*** (*Id.*, 172:3-12; 64:1-4; 76:19-78:12; 217:19-23) (emphasis added). Mr. Davidson could not even say who ultimately made the decision to move. (*Id.*, 63:2-64:4) (identifying Owen Roberts and Brian Tobey as individuals who may have made the decision to move facilities, but admitting he did not speak to them in preparation for the deposition). Nor could he provide any detail regarding which litigation allegedly necessitated the move, other than that it was between Motorola and Microsoft. (*Id.*, 58:5-16.) He also was not prepared to testify whether Microsoft had ever considered relocating a distribution facility because of a potential for an injunction in a legal matter. (*Id.*, 76:19-78:12) ("Q: In preparation for your deposition today, did you look into whether Microsoft has previously considered whether to relocate a distribution facility because of a potential for an injunction in a legal matter? A: No, that was not part of my preparation.").

Second, Mr. Davidson was not prepared to testify about Microsoft's efforts to mitigate damages. Again, he did testify regarding the efforts that he *personally* was involved in, namely, exploring business alternatives to the move. But, he was unprepared to testify regarding various legal alternatives Microsoft could have employed to avoid the move or reduce the costs of the move. More specifically, he did not know whether Microsoft followed Germany's *Orange Book* procedure in the parties' German litigation, which would have eliminated the threat of an injunction, and thus could not explain why Microsoft did not follow that procedure. (*Id.* 179:1-21). Nor was he aware that in March 2012, Microsoft filed a motion with this Court for a temporary restraining order and preliminary injunction (which was granted), precluding Motorola from enforcing an injunction in Germany, and thus could not explain why Microsoft did not file that motion earlier. (*Id.*, 173:11-173:16, 174:13-175:22, 228:14-229:2). Had it done so, the Court may have issued its order earlier, rendering the

The Honorable James L. Robart
June 18, 2013
Page 4

relocation unnecessary.  Mr. Davidson also did not know why Microsoft did not begin the process of relocating the facility until January 2012, when Motorola had filed suit in Germany in July 2011.  (*Id.*, 172:3-12).  Yet, he admitted that it might have saved costs if Microsoft had more time to complete the relocation.  (*Id.*, 172:15-18).

Finally, in response to several questions regarding the decision to relocate the EMEA distribution facilities, Mr. Davidson did not provide a response based on privilege.  (*Id.*, 60:18-61:9 (noting privileged conversations with Ms. McKinley regarding whether to move), 173:23-174:4 (noting privileged conversations regarding the timing of filings of motions in this Court), 216:18-218:12 ("Q. So were you told there's a threat of an injunction that would limit the ability to distribute products to and from Germany, figure out a solution to that problem; or were you told, more specifically, you need to consider relocating the EMEA distribution facilities as the result for a potential for injunction? . . . A. All those discussions were under privilege.")).

> ### C.   Additional Microsoft Witnesses Could not Testify Regarding Decision Making and Mitigation.

Following Mr. Davidson's deposition, Motorola requested the depositions of two additional Microsoft employees:  Owen Roberts, Mr. Davidson's immediate supervisor, and Theresa Daly, a General Manager of Microsoft Ireland Operations, Ltd.  Neither of these individuals could provide additional detail on the history of and factors in the decision to relocate or Microsoft's efforts to mitigate through its litigation strategy.

According to Mr. Roberts, the decision to relocate the EMEA distribution facility was made by the Legal Department:

| Q | Okay. And then the decision to relocate the facility out of Germany, do you know who ultimately had signoff authority on that decision? |
|---|---|
| A | That was -- I would rephrase the point to say *it wasn't a decision to move it, we were told, based on the litigation, we had to move the facility.* |
| Q | Okay. So I guess just to clarify, I understand your team, your team did not make the decision – |
| A | Correct. |
| Q | -- to relocate out of Germany? . . . *That was a decision that your team was informed by legal counsel?* |
| A | *Correct.* |

(Ex. 3, 40:12-41:14, 32:4-21) ("back in January we were informed that we were -- we were being -- we had a court litigation pending against us which -- which would probably require us to move our facility in order to keep doing business in Europe.  If you are asking that question,

The Honorable James L. Robart
June 18, 2013
Page 5

*no, I wasn't part of that decision, that was a legal [. . .] decision"*) (emphasis added).[1]  And, like Mr. Davidson, Mr. Roberts did not know what analysis Microsoft performed to determine the potential need to relocate prior to having been informed by the Legal Department of that need. (*Id.*, 19:13-17).

Mr. Roberts similarly did not have any information regarding Microsoft's attempts to mitigate damages beyond the business alternatives he personally considered.  More specifically, he did not know what (if any) licensing offers Microsoft made to Motorola to avoid litigation in Germany (*id.*, 132:5-14), why he was not informed of the litigation prior to January 2012 (*id.*, 132:21-23), or why any motions relating to the threat of injunction (*i.e.*, the anti-suit motion filed in this Court) were not filed earlier than they were filed. (*Id.*, 133:14-22).[2]

### D.  Microsoft Refuses to Provide a Properly Educated 30(b)(6) Witness.

Following Mr. Davidson's deposition, Motorola promptly sent Microsoft a letter identifying the issues on which Mr. Davidson was not prepared to testify. (Ex. 7).  Motorola requested that Microsoft identify dates on which witnesses would be made available to address these issues.  Microsoft responded, but simply stated that it disagreed with Motorola's characterizations.  Before raising the issue with the Court, Motorola attempted to obtain this discovery from Mr. Roberts and Ms. Daly,[3] but they did not provide this information either.  Thus, following their depositions, Motorola again promptly asked Microsoft to produce a witness to testify on the issues on which Mr. Davidson was unprepared to testify. (*Id.*, Ex. 8).  In that letter, Motorola asked Microsoft to clarify whether it was refusing to produce a new witness on the basis of privilege. (*Id.*).  Microsoft refused, denying that these issues were within the scope of Topic 8 without any explanation, and claiming that the decision to move was not made by the Legal Department.

The parties met and conferred telephonically on June 11.  Microsoft refused to provide a 30(b)(6) witness on the issues Mr. Davidson was not prepared to testify about.  Motorola pressed Microsoft to state whether it was refusing to do so based on privilege.  Microsoft dodged the question and cryptically claimed that there was "nothing further" that Motorola is entitled to.

---

[1] Microsoft will likely argue that Mr. Roberts and Mr. Davidson's team decided to relocate the facility, and point to changed testimony later in Mr. Roberts' deposition. (Ex. 3, 134:20-135:19). This contradictory testimony, however, only further supports the need for a corporate witness who can testify regarding the analysis and decision making efforts conducted by Microsoft, beyond those in which Mr. Davidson and Mr. Roberts were personally involved.

[2] Ms. Daly similarly did not have any information on these issues.  She was not involved in any of the discussions or decision making regarding whether to move. (Ex. 6, 19:2-6, 45:3-22).  Nor did Ms. Daly have any knowledge regarding the anti-suit injunction. (*Id.*, 121:21-122:25).

[3] Motorola deposed Mr. Roberts on May 22, the first day on which he was available, and deposed Ms. Daly on May 30. Microsoft may argue that Ms. Daly was available for deposition on an earlier date, but Microsoft was only willing to make her available for two hours.

The Honorable James L. Robart
June 18, 2013
Page 6

## III.  Argument

### A.  Microsoft Did Not Comply With Its Obligations Under Rule 30(b)(6).

Rule 30(b)(6) of the Federal Rules of Civil Procedure requires a named organization to "designate one or more officers, directors, or managing agents . . . who consent to testify on its behalf." Fed. R. Civ. Proc. 30(b)(6). The individual designated must be able to testify fully as to the matters designated. *See, e.g., United Wood Products Co. v. Tri-State Const. Inc.*, No. C04-2052Z, 2006 WL 399278 at *2-3 (W.D. Wash. Feb. 16, 2006) (confirming obligation to produce an adequately prepared designee, imposing monetary sanctions on the party failing to do so, and precluding further testimony on 30(b)(6) topic). The designating party owes a duty to educate its designee about the matters designated, if necessary. *Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 538-39 (D. Nev. 2008). If it appears at the deposition that the witness designated by the corporation is unable to answer questions on matters specified in the deposition notice, a corporate party must designate a new witness. *Id.* at 540 (*citing Marker v. Union Fidelity Life Ins.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989)).

As set forth above, Mr. Davidson was not prepared to testify fully regarding the details of the decision to move or certain efforts Microsoft might have made to mitigate the damages incurred by the move. Although Mr. Davidson did testify regarding his knowledge of the reasons for the move based on what he was told by Ms. McKinley and *his personal knowledge*, he made clear that he did not know what analysis or decisions Microsoft had made before he was informed of the potential for an injunction. (Ex. 1, 63:16-64:4; 172:3-12). Nor did he make any effort to educate himself on that prior to his deposition. (*Id.*, 63:16-64:4).

Microsoft does not contend that such information is irrelevant to the litigation. Nor can it credibly claim that it does not fall within Topic 8, which explicitly included "the history of the decision to relocate the EMEA distribution center, all other factors considered by Microsoft in connection with relocating the EMEA distribution center, all other lawsuits against MICROSOFT pending in Germany prior to the relocation of its EMEA distribution center in which MICROSOFT faced the risk of injunction, destruction of devices, or other remedies, relating to its distribution center in Germany or the distribution of its products in Germany." This information is directly relevant to Microsoft's causation claim. If Microsoft asserts that the relocation was caused by Motorola's alleged conduct, Motorola should be permitted to test that theory by taking discovery on <u>all</u> of the analysis and considerations by Microsoft—not just those performed personally by Mr. Davidson and Mr. Roberts. It may be that Microsoft was facing injunctions in other litigations, such as a non-SEP infringement case filed by Motorola, or that Microsoft determined that German patent law regarding injunctive relief made it risky to continue distributing products from Germany, or that the decision had to do with litigation strategy for this case like adding a second damages theory.[4] There may similarly be

---

[4] Microsoft's other damages theory is that it incurred attorneys fees and costs as a result of having to defend against Motorola's claims of patent infringement. Microsoft may have reasoned that this theory runs afoul of the "American rule" that parties pay their own attorneys fees and manufactured a back-up plan with respect to damages.

The Honorable James L. Robart
June 18, 2013
Page 7

explanations for Microsoft's failure to mitigate damages that undermine Microsoft's claims. Motorola is entitled to take discovery on these issues.

Rule 30(b)(6) and the case law are unambiguous about the duties of a party when designating a witness to testify under Rule 30(b)(6). Microsoft was obligated to educate Mr. Davidson on any issues about which he lacked personal knowledge. Microsoft was and continues to be under a duty to designate a witness who is able to give full, complete and non-evasive answers. *United Wood Prods. Co.*, 2006 WL 399278 at *2. It should be ordered to do so. In the alternative, Microsoft should be precluded from introducing evidence that it relocated the EMEA distribution facility as a result of Motorola's alleged breach of contract. Allowing Microsoft to present testimony on subjects on which its corporate designees and other witnesses could not testify during deposition is prejudicial to Defendants and warrants an order precluding such testimony. *VNUS Medical Technologies, Inc. v. Diomed Holdings, Inc.*, 2007 WL 3096586, at *2 (N.D. Cal. Oct. 22, 2007) (granting motion *in limine* precluding testimony on topics on which corporate designee could not testify during deposition).[5]

## B.   Microsoft Cannot Rely on Privilege to Withhold This Information.

As discussed above, when the parties met and conferred, Microsoft would not clearly state whether it is refusing to produce a new witness on the basis of privilege. However, Mr. Davidson did refuse to answer some of Motorola's questions regarding the decision to relocate the EMEA facilities on the basis of privilege. The attorney-client privilege cannot be used as both a sword and a shield. *Volcan Group, Inc. v. T-Mobile USA, Inc.*, No. C10-177 RSM, 2011 WL 6141000 at *3 (W.D. Wash. Dec. 9, 2011); *Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001) (precluding party from relying on advice of counsel defense where party refused to answer questions regarding relevant communications based on privilege); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("[a party] may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes.") Fairness requires that, where a party relies upon privileged communications to advance a party's commercial interests, it cannot preserve confidentiality as to other parts of the communication. *Volcan*, 2011 WL 6141000 at *3.

Here, Microsoft intends to rely on parts of Microsoft's privileged communications with the Legal Department, having permitted its witnesses to testify that Microsoft relocated the EMEA distribution facility because they were informed by Microsoft attorney Shelly McKinley that there was a potential for an injunction in Germany. Fairness requires that Microsoft cannot preserve confidentiality as to other parts of those communications, including but not limited to, the communications between Ms. McKinley, Mr. Davidson, and Mr. Roberts, and any

---

[5] Microsoft may argue that fact discovery has closed so Motorola is not entitled to a new 30(b)(6) witness. Not so. That Microsoft failed to comply with its discovery obligations and produce an educated witness within the 30-day period for fact discovery does not clear Microsoft of its discovery obligations.

The Honorable James L. Robart
June 18, 2013
Page 8

communications Ms. McKinley or other Microsoft attorneys had about the decision to relocate the facilities.

The combination of Microsoft's corporate designee's inability to provide complete testimony regarding Microsoft's decision to relocate its EMEA distribution facility and its efforts to mitigate damages (and failure to do so), and the witness' refusal to provide at least certain information on privilege grounds resulted in Motorola's inability to obtain complete discovery on issues directly relevant to elements of Microsoft's breach of contract claim. Accordingly, Microsoft should be required to provide discovery on these issues, or precluded from introducing this damages theory at trial.

## IV.    Conclusion

For the foregoing reasons, Motorola respectfully requests that this Court grant Motorola's request for relief and order Microsoft to produce a Rule 30(b)(6) witness to testify on the following:  Microsoft's decision to relocate the EMEA distribution center and all other factors considered in connection with relocating the EMEA distribution center, and any efforts by Microsoft to mitigate the damages claimed.  The witness should be prepared to testify beyond the work performed by Mr. Davidson's team.  In the alternative, Motorola requests that the Court preclude Microsoft from introducing evidence that it relocated its EMEA distribution facility as a result of Motorola's alleged breach of contract.


Respectfully,

SUMMIT LAW GROUP PLLC

*/s/ Ralph H. Palumbo*

Ralph H. Palumbo

Enclosures
cc:      All Counsel of Record