```
                    UNITED STATES DISTRICT COURT

               WESTERN DISTRICT OF WASHINGTON AT SEATTLE
      _____

      MICROSOFT CORPORATION,       )
                                   )
                Plaintiff,         ) 10-01823JLR
                                   )
      v.                           ) SEATTLE, WASHINGTON
                                   )
      MOTOROLA INC., et al,        ) June 5, 2013
                                   )
                Defendant.         ) TELEPHONE
                                   ) CONFERENCE
      _____

                    VERBATIM REPORT OF PROCEEDINGS
                BEFORE THE HONORABLE JAMES L. ROBART
                    UNITED STATES DISTRICT JUDGE
      _____



      APPEARANCES:



       For the Plaintiff:     Arthur Harrigan, Christopher
                              Wion, David Killough, David
                              Pritikin, Andrew Culbert




       For the Defendants:    William Price, Ralph Palumbo,
                              Andrea Roberts
```

*Barry L. Fanning, RMR, CRR - Official Court Reporter*
*Suite 17205 - 700 Stewart St. - Seattle, WA 98101*

1    THE COURT:  Good afternoon.  This is Judge Robart.
2    MR. HARRIGAN:  Good afternoon, your Honor.
3    THE COURT:  Mr. Harrigan.
4    MR. PRICE:  Good afternoon, your Honor.  This is
5 William Price from Quinn Emanuel for Motorola.
6    THE COURT:  Mr. Price, nice to make your
7 acquaintance.
8    MR. PRICE:  My pleasure.
9    MR. HARRIGAN:  Your Honor, we also have David
10 Killough from Microsoft on the line.
11    THE COURT:  I'm sorry?  Who?
12    MR. HARRIGAN:  David Killough from Microsoft, who
13 was at much of the trial, who will just be auditing; and
14 David Pritikin from Sidley, whom you will recall from the
15 trial; Andy Culbert from Microsoft, who will be auditing;
16 and my partner, Chris Wion.
17    MR. PALUMBO:  Ralph Palumbo.  I am also on the
18 line.
19    THE COURT:  Mr. Palumbo, always a pleasure.
20    MR. PRICE:  Your Honor, I believe Andrea Roberts
21 from Quinn Emanuel is also on the line.
22    THE COURT:  Mr. Harrigan and Mr. Price, you are
23 going to be doing the speaking?
24    MR. PRICE:  Primarily.
25    THE COURT:  The reason I do that is not to cut

1  everyone else off, but the court reporter is taking down a
2  transcript.  It is not helpful if we don't know who is
3  talking, so I try to limit it to one person on each side.
4      You all have written me a letter, which I appreciate,
5  as always, the fact that you can agree on something.  I am
6  currently in a trial where they can agree on nothing,
7  including what day of the week it is.  It is nice to see
8  people who can come to some agreement.
9      I'm not sure that I understand any of the three
10 questions that you want to discuss.  So why don't we just
11 start with question number one and tell me what it is that
12 you are thinking, and I will try and tell you if I have a
13 reaction to it or if I need further help.
14     That being:  "Potential use of the court's Findings
15 and Conclusions, dated April 19, 2013, during the
16 August 26 jury trial in this matter."  What exactly is
17 your question?
18          MR. HARRIGAN:  Your Honor, this is Art Harrigan.
19 We are the ones who initiated the posing of this question,
20 so I should probably address it first.
21     Basically we are assuming, and the court will no doubt
22 correct us if we are wrong, that the jury will not be
23 reconsidering any rulings that the -- factual rulings that
24 the court has already made, and will be essentially
25 instructed on the legal issues that the court has already

1  ruled on.
2      We believe that it is going to be important to be able
3  to make actual use of the court's findings during the
4  trial for various reasons.  One is, we don't want the jury
5  to be -- I don't think the jury is able to independently
6  consider those issues, and yet many of those findings are
7  germane to its deliberations.  Both parties' experts have
8  in fact relied on them in the reports that have been filed
9  so far.  It is pretty clear that, for example, in
10 Microsoft's case it is going to need to use the findings
11 to cross-examine in areas where we think they
12 are attempting to contradict the findings.
13     Mr. Leonard, who I believe is an economist, opined
14 that Motorola had not joined MPEG LA presumably because it
15 thought its patents were more valuable than the average
16 patents in the respective pools.
17     So Findings 529, 530 and 531 by the court we believe
18 are essentially contradictory to that statement.  I am
19 just using that as an example.  We don't know what the
20 experts are specifically going to say in their testimony,
21 but we believe we need the findings to -- potentially any
22 or all of the findings to contradict or cross-examine
23 experts who are attempting to say something different.
24 And it is somewhat unpredictable.
25     We think the findings are verities, and that the jury

1  basically should be able to consider any of them that bear
2  on the chores that they have before them.  I think it is
3  clear that some of the findings will not -- many of the
4  findings will not come up at all.  It is hard to predict
5  in advance what they are.  Our suggestion is that they
6  simply all be available for use to the extent they become
7  germane.
8            THE COURT:  I didn't think this was a capital
9  punishment case.  I can see the jurors looking at whatever
10 it is, 200 and some odd pages, and wondering why they are
11 being so punished.  Mr. Price, I assume you have a
12 position on this?
13           MR. PRICE:  We do, your Honor.  Motorola was
14 actually going to tee this up with a motion in limine so
15 that we could have briefing on it as to whether the order
16 should be used at all with the jury.  Motorola thinks it
17 should not be, for various reasons, largely because we
18 believe the findings, for the most part, are irrelevant to
19 the issue of whether or not the opening offer was in good
20 faith, whether or not there was a good-faith process that
21 Motorola intended to follow.
22     Obviously we have made our record and will continue to
23 make it on whether or not the court should have made a
24 RAND ruling at all.  But even beyond that, given the fact
25 that we have the court's order in the first phase, at

1  most, it would be, we think, relevant to what a RAND rate
2  is, both historically and going forward. But on the issue
3  that is in the second phase, whether or not there has been
4  a breach of contract, we think that the order is not
5  relevant and would be quite prejudicial for the court to
6  instruct the jury on matters which really aren't relevant
7  to their determination of whether or not there was a
8  breach of contract.
9      I don't think I am going to convince you on this call.
10 I agree it is great to alert your Honor as to the issue
11 coming up, but I think it would be useful, obviously, if
12 we had a chance to brief it, and Microsoft could tell you
13 exactly how it planned to use the order, because we are
14 not exactly sure, and we could then talk to you about why
15 we don't think that would be appropriate.
16          THE COURT: I will say off-the-cuff, as the other
17 part -- We won't talk about seat-of-the-pants. First
18 off, I would think that you have taken leave of your
19 senses, Mr. Price, if you don't think that the order is
20 relevant to the initial offer. Maybe you haven't read it.
21     I am happy to entertain the motion in limine, which
22 is, I think, how it ought to be resolved. That way you
23 can try to persuade me on the basis of something other
24 than my seat-of-the-pants reaction to the argument.
25     Those are the Findings and Conclusions of the court,

1  for better or for worse, I guess depending on which side
2  you are on.  Everything that has happened in this
3  litigation up to this point, and I recognize there has
4  been a change in counsel, was that it was of material
5  benefit to the jury or to the fact finder, before they
6  backed out of it, that if we knew the range for RAND, that
7  that would be of material importance in determining the
8  good-faith nature of the offer.
9      So I will stop there, simply to say this encourages me
10 to think that we ought to perhaps have the motions
11 in limine due even earlier than I thought.  I have set a
12 rather strict limit on the number of motions in limine,
13 including subparts, because I have already seen some law
14 firms' use of motions in limine in a way to, quote, "shape
15 the case."  And it gets shaped out of existence.
16     So that's my thinking on this.  I appreciate being
17 alerted to the disagreement.  Those are preliminary
18 thoughts.  I keep an open mind on I may not understand the
19 issue.  I look forward to getting your briefing.  I have
20 put on my to do list here, at the end of this call, to
21 talk to you about when we are going to be filing those
22 motions.
23     Number two, potential use of Findings and Conclusions,
24 apparently by the experts, who I guess they are
25 Microsoft's experts, Mr. Orchard and Mr. O'Hara.

1    By the way, counsel, if you are not bringing back
2    Motorola's economists from the last trial, I thought the
3    economists were fabulous.  They can come back any time.
4    They were clearly the best part of that trial.
5           MR. HARRIGAN:  Your Honor, even though number two
6    is Motorola's topic, I think I can potentially shortcut
7    that one, in that, yes, the experts named here do cite the
8    court's Findings of Fact, and we anticipate that if in
9    fact the Findings are there and are capable of being
10   presented to the jury as the facts of the case, there
11   wouldn't be any need to have either of these experts
12   testify.  When we had to file our reports, we weren't
13   certain what the lay of the land was in that respect.
14      In our view, this is --  We were concerned that if
15   Motorola was going to argue about the issues that these
16   two gentlemen addressed that we might need to refute that.
17   But we don't need to do so if the Findings come in.
18      The other point I will make, which actually relates
19   more to the third item, but just briefly, is that
20   the technical --  These are two technical experts.  But
21   some of Motorola's other experts do make comments about
22   technical subjects, including, for example, the one that I
23   just cited.  As long as the Findings come in, I don't
24   think we would need either of these people.  That's the
25   long and the short of that.

1           THE COURT:  All right.  Mr. Price, I would liken
2    that to he just hit the ball over there and asked you to
3    serve it back.
4           MR. PRICE:  I will serve it back this way, your
5    Honor:  I agree it is somewhat related to the first
6    question.  There is also questions of whether or not an
7    expert can simply parrot back to the jury the court's
8    order, and whether that is appropriate for these
9    particular experts.
10      We didn't expect you to decide this on this call.
11   What we wanted to do, the reason we raised this question,
12   was to alert you that our intention is to bring this up in
13   the Daubert motion.  If the court preferred to have it
14   briefed earlier, we could.  I think the close of expert
15   discovery is June 24th.  I know that one reason to bring
16   it up earlier would be so maybe we wouldn't need to take
17   expert depositions.  But given the time frame for the
18   close of expert discovery, it probably makes sense for us
19   to bring up our issues in the general course of things in
20   the Daubert motion.
21          THE COURT:  You have highlighted a large loophole
22   in my earlier order, which is, I forgot to put a limit on
23   Daubert motions.
24      How many experts is Microsoft using in this Phase II
25   trial?

1    MR. HARRIGAN:  I think it is five, your Honor.
2    THE COURT:  This is to Mr. Price.  Do you intend
3    to file a Daubert motion about each of them?
4    MR. PRICE:  I really haven't made that decision
5    yet.  We haven't taken our depositions yet.
6    THE COURT:  The federal government is too poor to
7    give me a calendar system that works.  I think the close
8    of expert discovery is around the 13th of June.
9    MR. PRICE:  I believe it is June 24th.  Someone
10   may correct me if I'm wrong.
11   THE COURT:  That's dispositive motions and Daubert
12   motions.  Isn't close of expert discovery earlier than
13   that?
14   MS. ROBERTS:  Your Honor, if I may?  This is
15   Andrea Roberts.  I believe the close of expert discovery
16   for expert depositions is June 24th.  The deadline for
17   rebuttal reports is June 10th.
18   MR. PALUMBO:  Your Honor, this is Ralph Palumbo.
19   I am just looking at my calendar.  I also have close of
20   expert discovery on the 24th of June.
21   THE COURT:  All right.  What then do you have as
22   the date for Daubert motions?
23   MS. ROBERTS:  I believe you set that for July 3rd.
24   MR. PALUMBO:  That's correct.
25   THE COURT:  Let me simply repeat what I said

1  earlier, which is, I am not tolerant of motions in limine
2  and Daubert motions in which a former chairman of the
3  President's Council of Economic Advisors is argued to not
4  be competent as an economist.  I obviously know nothing
5  about the experts in this matter, other than you both have
6  got a lot of money and you both hire highly paid
7  individuals.  There needs to be thoughtfulness in regards
8  to this, because I simply will not tolerate broadside
9  motions in limine in Daubert practice.  You guys have
10 already strained the court's resources to a near breaking
11 point, and I am not going to have that go on.
12     So we will look forward to Daubert motions on the 3rd,
13 and hopefully there won't be five of them with numerous
14 subparts for each of them.  It strikes me that if you
15 bring up a subject in a Daubert motion, and then try and
16 take a second bite of it in motions in limine, that likely
17 will result in my pruning your pleadings.  I am just not
18 going to tolerate that.
19     Question 3:  "Potential use of earlier orders to the
20 extent not duplicated in the Findings of Fact and
21 Conclusions of Law, such proposed experts to be identified
22 by the parties on a date set by the court."  Who wants to
23 take that one on?
24         MR. HARRIGAN:  I will, your Honor.  Art Harrigan.
25 The reasoning here is that there are some rulings that the

1  court has made that are not in the Findings and
2  Conclusions that bear on the testimony that we anticipate
3  we may get in this case.  Giving you another example:  We
4  have a report from Mr. Holleman, who was scheduled to
5  testify at the last trial, but I don't think he actually
6  got on, to the effect that, "From the SDO's perspective,
7  the patentholder fulfills its RAND obligation by being
8  willing to enter into good-faith negotiations with all
9  potential licensees who wish to negotiate in attempting in
10 good faith to reach a license on RAND terms."  That is in
11 his expert report at Page 12.
12     In the court's order of May 2012 granting the
13 injunctive relief, the court said, Motorola's position in
14 this litigation, that it need only negotiate toward a RAND
15 license, requires that the creation of a RAND license
16 agreement remain an available form of relief.
17     We think, in other words, that that ruling on that
18 motion, and the articulation of it, contradicts what
19 Mr. Holleman apparently wants to testify about.  So we
20 believe we should be able to make use of that type of
21 ruling by the court, to the extent that they are not
22 replicated in the Findings and Conclusions.
23         THE COURT:  Mr. Perry, I think that is now tossed
24 to you.
25         MR. PRICE:  It is Mr. Price, your Honor.

1          THE COURT:  I'm sorry.
2          MR. PRICE:  That's okay.  I pronounce Daubert as
3  Daubert.  When Microsoft raised this, we weren't sure what
4  orders they were talking about or what issues.  We
5  certainly think that the court's orders themselves should
6  not go to the jury.  But if there is specific findings or
7  conclusions that should be provided to the jury, that we
8  could propose them, and perhaps the appropriate time would
9  be jury instructions, when they be presented.
10     As the question is stated it is really broad.
11  Obviously we don't want to counter a court order.  But I
12  think probably the best way to deal with this is on an
13  issue-by-issue basis, and whether or not we need a jury
14  instruction on the issue or something else.  Right now it
15  is so hard to figure out.
16          THE COURT:  I would agree with that.  It seems to
17  me the appropriate way to deal with that would be in your
18  motions in limine.  If you line up some fact or expert
19  testimony -- I mean, it would have to be expert so you had
20  a report.  But if they intend to say something that is
21  inconsistent with one of my orders, I am going to enforce
22  the order.  I think it is the law of the case, and you
23  don't get to continue to litigate it.
24     I think the appropriate way to do that is on a very
25  specific item-by-item basis.  I don't think you can deal

```
 1   with it in a vacuum.
 2           MR. HARRIGAN:  I agree with that, your Honor.  I
 3   am not disagreeing at all with what you said.  That was
 4   the reason for suggesting that we identify specific
 5   excerpts and explaining perhaps why we think --
 6           THE COURT:  All right.  Know as a general
 7   philosophical matter, the law of the case doctrine is one
 8   that is not terribly well developed at times.  But I think
 9   that the general purpose of it is that once the court has
10   made a decision, the great hand has written and it has
11   moved on.  If you want to change that, you need to bring
12   some kind of a motion for reconsideration of a particular
13   area.  And since there is a ban on motions in this case
14   without prior court approval, you would have to convince
15   me that there is a good reason to reexamine the things
16   that we have said.
17       Mr. Price, you have missed my commonly-used analogy,
18   that to me litigation is like an hourglass.  As the sand
19   runs through, the neck gets smaller, and we don't simply
20   keep pouring more sand in on the top.  That's my general
21   judicial philosophy, to the extent that I have one.
22           MR. PRICE:  We have no reason, your Honor --
23   Quite frankly, at this point the rulings you have made are
24   the rulings that you have made.  Those are rulings that
25   must be specifically -- unless we want to bring something
```

1  to your attention, and get permission, we are going to
2  live with those.
3        We didn't know what counsel was really bringing up
4  here.  I thought it was something such as the court at one
5  time ruled that an opening offer need not be within the
6  RAND range.  And so, of course, we thought that was
7  something we would propose as a jury instruction as a
8  matter of law.
9        But I understand what the court is saying.  I think
10 you are correct, the best way is to bring these things up.
11              THE COURT:  That is a fabulous segue into the
12 issues I want to talk about.  Counsel, I gave you a
13 relatively brief period of time for trial.  And I will
14 give you hours, since I found that worked well last time.
15 It seems to me that we don't need to spend a lot of time
16 with this jury explaining what industry standards are,
17 what RAND is.  The principle that we are being asked to do
18 here is one that has previously been discussed by the
19 parties.  That would be --  Motorola has conceded in oral
20 argument that there would be a level of offer that would
21 not constitute good faith.  The exact parameters of that
22 statement, it seems to me, to be the questions that the
23 jury is going to want guidance on in its instructions of
24 law.
25       So I was hopeful, since you seem to have unlimited

1  resources to throw at these, that each of you might favor
2  the court with 15 pages or so of briefing in the next two
3  or three weeks, as to what are the legal dimensions of
4  that obligation of good faith, so that we can begin to
5  consider some questions that are going to arise during the
6  trial.  To the extent that we then need to do our own
7  research, we will have the advantage of you having already
8  plowed that field up.
9      I'm not sure that I have done a great job of
10 articulating what it is I am looking for.  What I am
11 looking for is what are the parameters of a good-faith
12 offer, or, the reverse of that, outside a good-faith offer
13 or bad faith, in the context of a contractual dispute.
14 And assume that the theoretical construct for that is a
15 RAND contract.
16     Now, I understand that Motorola has never accepted my
17 notion of a third-party beneficiary in a binding contract.
18 But since that is the law of the case, they should
19 assume -- they don't have to agree with it, but they can
20 assume that will be how I intend to instruct the jury.
21     Mr. Harrigan, you always have the first word in this,
22 so I will start with Mr. Price.  Mr. Price, any questions
23 about that?
24         MR. PRICE:  No questions about that, your Honor.
25 A question about timing.  I know we have a lot of

1  resources, obviously.  Expert discovery, as we mentioned,
2  ends in a couple of weeks, and we have a lot of resources
3  devoted to that, so I was hoping perhaps that briefing
4  could be done after the end of that discovery.
5     By the way, we were going to raise this question
6  ourselves in a motion for summary judgment.  Of course, it
7  would also be raised probably in jury instructions.  But I
8  understand the court's desire to get to that perhaps
9  earlier than that.
10           THE COURT:  I guess my thinking was that Quinn
11 Emanuel probably has 45 summer interns or externs, and
12 that you could unleash the intellectual firepower of some
13 of them on this project.  When we looked at this a long
14 time ago there was not a lot of precise precedent, and
15 that made me think, well, maybe we just need to dig
16 deeper.  So you do not have to have your first line IP
17 lawyers on this, I am really looking for somebody who can
18 just get in and take a look at this area generally.
19           MR. HARRIGAN:  Your Honor, we have had extensive
20 discussions about this, as you might guess.  Not simply in
21 the interest of being contrary, but we were going to
22 propose a due date of June 14th for a brief.  If you want
23 to have the opportunity for responsive briefs, June 21.
24 There are a number of reasons for it.  It certainly would
25 help the parties to know as early as possible what the

1   court's view is on this issue after reading those briefs.
2   I don't know if there is any chance of getting that
3   information before the summary judgment motions are due.
4   Obviously the summary judgment motions are going to be a
5   lot more useful if we know what the court's determination
6   is regarding the criteria for proving breach of duty of
7   good faith and fair dealing under these circumstances.
8   Those are the dates that --  We think we can do a 15-page
9   brief by June 14th, in spite of having expert discovery
10  going on.
11              THE COURT:  All right.  Mr. Price, what is your
12  proposal?  You said the close of discovery is June 24th.
13  Do you need a week after that, or can you do it on the
14  24th?
15              MR. PRICE:  I think I would like to have a week
16  after that.  It is an important issue.  I would rather it
17  be done correctly rather than quickly.  Obviously, as you
18  said, it has been discussed before and canvassed.  I know
19  the court was being a little facetious in talking about
20  the summer associates.  If you couldn't find a lot before,
21  it seems like you want someone who is a little more
22  seasoned trying to look for stuff now.  Although, believe
23  me, we are going to try to keep our summer associates
24  busy.
25              THE COURT:  I just think between some bright,

young summer associate and Mr. Urquhart, I am going to take that summer associate.

MR. PRICE: I will certainly relay that to him and tell him that is the law of the case. Again, we want the right decision. I don't know if there is a reason to really rush it, as Microsoft suggests. I request we maybe get a week after.

THE COURT: I am sure if I say July 1st that is going to be a Saturday. Someone probably has a calendar.

MR. PALUMBO: It is actually a Monday, your Honor.

THE COURT: Perfect. Let's do it July 1st.

Counsel, please understand, this is not intended to persuade me one way or the other. This isn't your motion on this. This is background of what the law is on this issue. You don't have to finely tailor it to your ultimate position. It is going to make our job immensely easier if we can begin to see some outline of the forest here. I agree that it is going to help us make a better decision when the time comes.

It seems to me that the real fight in this is going to be jury instructions. That will be not for some period of time, but to help us get started that would be of significant benefit.

MR. HARRIGAN: Your Honor, do you want just one brief from each side or do you want response briefs?

```
 1          THE COURT:  One brief from each side.  Maybe you
 2   will surprise yourselves and agree.
 3       Counsel, anything else that I can do for you today?
 4          MR. HARRIGAN:  No, your Honor.
 5          MR. PRICE:  No, your Honor.
 6          THE COURT:  Mr. Price, welcome to the group.  And,
 7   Mr. Palumbo and Mr. Harrigan, I know I have done the most
 8   I can do to ruin your summer.  We will be in recess.
 9   Thank you, counsel.
10                       (Adjourned.)
11
12                        **CERTIFICATE**
13
14
15
16
17
18
19
20       I, Barry L. Fanning, Official Court Reporter, do
     hereby certify that the foregoing transcript is true and
     correct.
21
22
                              S/Barry L. Fanning
23
                              _____
24                            **Barry L. Fanning**
25
```