HONORABLE JAMES L. ROBART

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>        Plaintiff,<br><br>v.<br><br>MOTOROLA INC., et al.,<br><br>        Defendants. | Case No. C10-1823-JLR<br><br><br>MICROSOFT CORPORATION'S<br>BRIEF REGARDING THE DUTY OF<br>GOOD FAITH AND FAIR DEALING<br>IN THE CONTEXT OF RAND<br>LICENSING |
| MOTOROLA MOBILITY, LLC, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>        Defendant. | |

## INTRODUCTION

During the June 5, 2013 telephone conference, the Court asked the parties to provide an overview of what is required by the duty of good faith and fair dealing in the context of RAND licensing.[1] As the Court has already found, and as the parties agree, blatantly unreasonable

---

[1] The Court stated, "[W]hat are the parameters of a good-faith offer, or, the reverse of that, outside a good-faith offer or bad faith, in the context of a contractual dispute. . . .Counsel, please understand, this is not intended to persuade me one way or the other. . . . This is background of

MICROSOFT CORPORATION'S BRIEF REGARDING THE
DUTY OF GOOD FAITH AND FAIR DEALING IN THE
CONTEXT OF RAND LICENSING - 1

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

offers always breach the RAND licensing contract.  In addition, the cases and commentators have identified a number of examples of actions that constitute a breach of the duty of good faith and fair dealing.  While there is no one-size-fits-all definition, two examples have particular relevance to RAND disputes and are discussed in more detail below.  First, it would be a breach for the party given discretion by the contract (in this case, Motorola) to make an offer that is not commercially reasonable.  Second, it would also be a breach to act in a way that frustrates the purpose of the contract (in the case of RAND licensing, the purpose of the contract includes making the patented technology readily and equally available to all industry participants, and avoiding patent hold-up and royalty stacking).

## DISCUSSION

### I.  THE COURT'S PRIOR RULINGS

As the Court is now well aware, Motorola holds certain patents it has declared essential to the 802.11 wireless networking standard and the H.264 video coding standard.  These standards are governed by Standard Setting Organizations ("SSOs") called the IEEE and ITU, respectively.  The IEEE and ITU allowed Motorola to participate in the standard setting process and the final standards incorporate technology Motorola asserts is covered by certain Motorola patents.  In exchange for giving Motorola the opportunity to participate in the standard-setting process, the SSO's required Motorola to promise to license its standard essential patents to all industry participants on RAND terms.  (*See generally* Dkt. 335.)

---

what the law is on this issue.  You don't have to finely tailor it to your ultimate position. . . . It seems to me that the real fight in this is going to be jury instructions.  That will be not for some period of time, but to help us get started that would be of significant benefit." (Dkt. No. 703 at 16:11–:13, 19:12–:23.)

MICROSOFT CORPORATION'S BRIEF REGARDING THE
DUTY OF GOOD FAITH AND FAIR DEALING IN THE
CONTEXT OF RAND LICENSING - 2

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

The Court has held that this bargain constitutes a binding and enforceable contract between Motorola and the SSOs — a contract of which standard implementers, like Microsoft, are beneficiaries. (Dkt. 335 at 11–14.) The terms of the contract are set forth in the ITU and IEEE policy documents and in Motorola's RAND declarations. (Dkt. 335 at 13 n. 6.) Through these contracts, the SSOs sought to ensure that the necessary technology would be readily and equally available to all industry participants. (Trial Ex. 1575 (ITU Common Patent Policy) at 9) (making technology "accessible to everybody" is "sole objective" of ITU policies); (Trial Ex. 1130 (IEEE Operations Manual) at 19) (technology can only be included if "accessible to all in the industry" on RAND terms). RAND commitments advanced this objective by preventing, among other things, the problems of patent hold-up and royalty stacking, either of which could cripple a standard. (Dkt. 673 at ¶¶ 51–69.) Indeed, preventing hold-up and royalty stacking are a central purpose of RAND commitments. (*Id.*)

The Court has held that "any offer by Motorola (be it an initial offer or an offer during a back-and-forth negotiation) must comport with the implied duty of good faith and fair dealing inherent in every contract." (Dkt. 335 at 25.) The Court has also found, and the parties agree, that blatantly unreasonable offers for licenses to standard essential patents always breach the contract. (Dkt. 335 at 25; Dkt. 188 at 15 ("To wit, during the February 13, 2012 status conference, counsel for Motorola agreed that blatantly unreasonable offers would violate its RAND obligations under the policies.").)[2]

---

[2] Defendant Motorola Solutions agrees that an SEP holder breaches its RAND commitments by making blatantly unreasonable licensing demands: Motorola Solutions brought a breach of contract claim against a holder of patents allegedly essential to the 802.11 standard based, in part, on the patent holder's pursuit of "a licensing program that is blatantly unreasonable on its face, including blatantly unreasonable offers and other conduct in violation of good faith and fair dealing inherent in all contracts." Wion Decl. Ex. 1 (Plaintiffs' Amended Complaint, Dkt. No.

MICROSOFT CORPORATION'S BRIEF REGARDING THE
DUTY OF GOOD FAITH AND FAIR DEALING IN THE
CONTEXT OF RAND LICENSING - 3

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

## II. THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

As recognized by this Court, a duty of good faith and fair dealing is implied in every contract. Dkt. 335 at 25; *see also, e.g.*, *Frank Coluccio Construction Co., Inc. v. King County*, 150 P.3d 1147, 1154 (Wash. App. 2007) ("There is an implied duty of good faith and fair dealing in every contract."); Restatement (Second) of Contracts § 205 ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."). This duty applies to RAND commitments no less than to any other contract. Dkt. 335 at 25; *Realtek Semiconductor Corp. v. LSI Corp.*, No. 12-3451, 2012 WL 4845628, *4 (N.D. Cal. Oct. 10, 2012); *Agere Systems Guardian Corp. v. Proxim, Inc.*, 190 F. Supp. 2d 726, 738–39 (D. Del. 2002).

Various circumstances may give rise to disputes surrounding this duty. One common example in commercial settings is contracts that allow for discretion — *e.g.*, contracts that leave a price, quantity, or time subject to a party's subsequent judgment. *See* Wion Decl. Ex. 2, Steven J. Burton & Eric G. Andersen, *Contractual Good Faith: Formation, Performance, Breach, Enforcement* 45 (1995) ("Burton & Andersen") ("The centrality of discretion to good faith in contract performance has become well established by the case law since 1980."); *Aventa Learning, Inc. v. K12, Inc.*, 830 F. Supp. 2d 1083, 1101 (W.D. Wash. 2011) (Robart, J.) ("The duty of good faith and fair dealing applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time") (quoting *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 935 P.2d 628, 632 (Wash. App. 1997)).

---

431, *In re Innovatio IP Ventures, LLC, Patent Litig.*, Case No. 1:11-cv-9308 (N.D. Ill. Oct. 1, 2012)) at ¶ 312.

MICROSOFT CORPORATION'S BRIEF REGARDING THE
DUTY OF GOOD FAITH AND FAIR DEALING IN THE
CONTEXT OF RAND LICENSING - 4

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

In general, there is no one-size-fits-all definition of good faith and fair dealing. It "varies somewhat with the context" and "[a] complete catalogue of types of bad faith is impossible." But traditional examples of prohibited conduct include "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." Restatement § 205 cmt. d.

Cases make clear that a showing of dishonesty or subjective bad faith is *not* required to establish a breach of the duty (although it certainly would be sufficient). Even if a party does nothing dishonest, it can still breach the implied duty of good faith and fair dealing, and most cases do not involve "smoking gun" evidence of subjective bad faith. Two recognized standards for assessing the duty of good faith and fair dealing have particular relevance to this case and will be discussed below. First, commercially unreasonable conduct — including a commercially unreasonable offer — by the party with discretion breaches the duty. Second, taking actions that frustrate the purpose of the contract or are otherwise contrary to the reasonable expectations of the other party is a breach of the duty.

**A.     Dishonesty Or Subjective Bad Faith Is Not Required To Breach The Duty.**

The cases and commentators have emphasized that dishonesty or subjective bad faith is not required to breach the implied duty of good faith and fair dealing:

> We do not question that the Committee felt it was treating Scribner fairly and lawfully by allowing him to exercise some of his options, or that it honestly felt it was acting in the best interests of the company. These facts, however, are not dispositive, and WorldCom's argument mischaracterizes the law. That a party can breach the duty of good faith and fair dealing by acting dishonestly or unlawfully does not mean that dishonesty or an unlawful purpose is a necessary predicate to proving bad faith.

MICROSOFT CORPORATION'S BRIEF REGARDING THE
DUTY OF GOOD FAITH AND FAIR DEALING IN THE
CONTEXT OF RAND LICENSING - 5

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

*Scribner v. Worldcom, Inc.*, 249 F.3d 902, 910 (9th Cir. 2001) (reversing and finding breach under Washington law).  In *Scribner*, the Ninth Circuit also stated that a plaintiff "need not show that the [defendant] acted with affirmative malice towards him, or even that it knew its decisions were inappropriate when it made them."  *Id*. at 909; *see also, e.g.*, *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1103 (E.D. Cal. 2010) ("breach [of the duty of good faith and fair dealing] does not require subjective bad faith").

Similarly, the Restatement provides that "[s]ubterfuges and evasions violate the obligation of good faith in performance *even though the actor believes his conduct to be justified*" and that "fair dealing may require *more than honesty*."  Restatement § 205 cmt. d (emphasis added).

The RAND duty exemplifies the basis for a rule that does not limit breach of the duty to cases of subjective bad faith.  Such a narrow definition of the duty would leave technology implementers at the mercy of patent holders with idiosyncratic beliefs.  If just one essential patent holder withholds a RAND license, the ability of an industry to comply with the technology standard can be compromised.  This is true regardless of whether the patent holder honestly believes its conduct is permissible.  Moreover, such an inquiry would allow patent holders to skirt the duty of good faith and fair dealing by willfully maintaining ignorance of the fair value of their patents to the standard or the importance of the standard to the implementer's product.  These patent holders could use their ignorance as a shield, offering categorically non-RAND royalties but absolving themselves through lack of knowledge as to what appropriate royalties should be.

MICROSOFT CORPORATION'S BRIEF REGARDING THE
DUTY OF GOOD FAITH AND FAIR DEALING IN THE
CONTEXT OF RAND LICENSING - 6

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

**B.   Taking Actions That Are Not Commercially Reasonable Is A Breach In Circumstances Where A Party Has Discretion Or In Other Analogous Circumstances.**

Instead of focusing on honesty or subjective bad faith to evaluate compliance with the duty of good faith and fair dealing, most cases and commentators focus on objective factors. *See generally* Wion Decl. Ex. 2, Burton & Andersen at 83 (focusing on objective factors because subjective assessments may leave "interests in nonarbitrary and foreseeable action in contract performance unprotected").

For example, courts say that a party given discretion by a contract must exercise that discretion *reasonably*. *Craig v. Pillsbury Non-Qualified Pension Plan*, 458 F.3d 748, 752 (8th Cir. 2006) (Washington law) ("[D]iscretion must be exercised in good faith — a requirement that includes the duty to exercise the discretion reasonably"); *Curtis v. Northern Life Ins. Co.*, 147 Wash. App. 1030, 2008 WL 4927365, at *5 (Wash. App. 2008) (same); Restatement § 205 cmt. a (good faith excludes conduct that violates community standards of reasonableness). In commercial settings, courts apply the standard of commercial reasonableness. In *Vylene Enterprises, Inc. v. Naugles, Inc.*, 90 F.3d 1472 (9th Cir. 1996), for example, the court affirmed a lower court's ruling that a party breached the duty of good faith and fair dealing by proposing a franchise agreement that was "commercially unreasonable." *Id.* at 1477. The Uniform Commercial Code, as another example, applies in commercial settings and requires "honesty in fact and the observance of *reasonable commercial standards of fair dealing in the trade*." UCC §§ 2-103(1)(b), 1-201(19) (emphasis added).[3]

---

[3] Article 1 of the UCC had previously only required honesty. However, "amendments to the Uniform Commercial Code brought the Article 2 merchant concept of good faith (subjective honesty and objective commercial reasonableness) into other Articles," including Article 1. Official Comment to UCC § 1-201.

MICROSOFT CORPORATION'S BRIEF REGARDING THE DUTY OF GOOD FAITH AND FAIR DEALING IN THE CONTEXT OF RAND LICENSING - 7

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Accordingly, in the context of RAND licensing, it would be a breach of the duty to make a commercially unreasonable offer. *Vylene*, 90 F.3d at 1477; *Best v. U.S. Nat. Bank of Oregon*, 303 P.3d 554, 559 (1987) ("When a party has the contractual right to specify a price term, the term specified may be so high or low that the party will be deemed to have acted in bad faith . . . .").

### C. Actions That Frustrate The Purpose Of The Contract Or Are Otherwise Contrary To The Reasonable Expectations Of The Other Party Breach The Duty.

Even if a party acts in a way that might otherwise be commercially reasonable, the party would still breach the duty of good faith and fair dealing if the action frustrates the purpose of the contract, or is otherwise contrary to the reasonable expectations of the other party. One of the central goals of the duty of good faith and fair dealing is to promote "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Frank Coluccio*, 150 P.3d at 1155 (quoting Restatement § 205 cmt. a); *see also* Restatement § 205 cmt. d (prohibiting "evasion of the spirit of the bargain"); Wion Decl. Ex. 2, Burton & Anderson at 21 ("The now-considerable case law has taken on a distinctly free market orientation, regularly construing good faith to protect and serve the parties' justified expectations arising from their agreements.")

A discretion-exercising party performs in good faith when it exercises its discretion for a purpose within the reasonable contemplation of the parties. This view was most famously articulated by Steven J. Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith*, 94 Harv. L. Rev. 369, 369 (1980) ("Burton"). Wion Decl. Ex. 3. *See also* Wion Decl. Ex. 2, Burton & Anderson at 51 ("Good faith is a matter of exercising contractual discretion for reasons within the justified expectations of the parties arising from their

MICROSOFT CORPORATION'S BRIEF REGARDING THE
DUTY OF GOOD FAITH AND FAIR DEALING IN THE
CONTEXT OF RAND LICENSING - 8

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

agreement"). It has been widely adopted by courts. Thus it is a breach of the duty to "engag[e] in conduct that frustrates the other party's right to the benefits of the contract." *Aventa*, 830 F.2d at 1101 (citing *Woodworkers of Am. v. DAW Forest Prods. Co.*, 833 F.2d 789, 795 (9th Cir. 1987)); *Best*, 303 P.3d at 558 ("If the discretion is exercised for purposes not contemplated by the parties, the party exercising discretion has performed in bad faith"); *see also Frank Coluccio*, 150 P.3d at 1154–55 (affirming finding of breach of duty of good faith and fair dealing where defendant's conduct was contrary to the purpose of the contract); *Lizotte v. Schumacher*, 105 Wn. App. 1029, 2001 WL 293165, at * 7 (Wash. App. Mar. 27, 2001) (finding breach of duty of good faith and fair dealing due to conduct "designed to frustrate [the] purpose" of the contract).

In *Best*, for example, the court concluded that "the Bank's [$5 fee for bounced checks was] not so high as to be evidence of bad faith for that reason alone," but the court still held that there could be a violation of the duty because it appeared that the $5 fee was contrary to "the reasonable expectations of the parties." 303 P.3d at 559. In *Scribner*, an employer retained broad discretion under a contract to determine whether the termination of an employee was with or without "cause." 249 F.3d at 906. The court ruled that the employer violated its duty of good faith and fair dealing when it defined "cause" in an unusual and self-serving way, finding that the employer "could breach the duty of good faith and fair dealing simply by disregarding [the plaintiff's] justified expectations under the [contracts]." *Id.* at 909. The court went on to observe that "[g]ood faith limits the authority of a party retaining discretion to interpret contract terms; it does not provide a blank check for that party to define terms however it chooses." *Id.* at 910. And in *Curtis*, the Court found that an insurance company may have breached the duty of good faith and fair dealing by improperly exercising discretion in selecting interest rates using methods contrary to what policy holders had expected. *Curtis*, 2008 WL 4927365, at *6.

MICROSOFT CORPORATION'S BRIEF REGARDING THE DUTY OF GOOD FAITH AND FAIR DEALING IN THE CONTEXT OF RAND LICENSING - 9

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Acting in a retaliatory manner would also violate the duty, even if the action in the abstract could be justified in other circumstances, since retaliation is outside the reasonable expectations of the parties. Consider a contract that gives an oil company the discretion to prohibit its distributor from transferring the distributorship to another party. "[T]he oil company could, consistent with its obligation to perform in good faith, reject a transfer to someone inexperienced in the oil business . . . . But the oil company would have performed in bad faith if, for example, it had rejected a transfer in order to retaliate against the distributor for some reason." *Best*, 739 P.3d at 558. Likewise, in *Cavell v. Hughes*, 629 P.2d 927 (Wash. App. 1981), the court found a breach of the duty of good faith and fair dealing because the actor had "the specific purpose of frustrating" the agreement and because the actor, with knowledge of the truth, allowed certain false pretenses to persist. *Id.* at 929. Similarly, the Restatement provides that "*willful* rendering of imperfect performance" constitutes a basis for breach. Restatement § 205 cmt. d (emphasis added).

Applying these principles to RAND licensing, a patent holder violates the duty of good faith and fair dealing by engaging in conduct that frustrates the purpose of the RAND commitment. SSOs and participating patent holders entered RAND contracts for the purpose of preventing patent hold-up and royalty stacking. (Dkt. 673 at ¶¶ 51-69, 538; Dkt. 335 at 13.) Conduct that frustrates these purposes would not be faithful to the "agreed common purpose and … justified expectations" of the SSOs. Restatement § 205 cmt. a.

It would also frustrate the purposes of the RAND commitment to make offers designed to avoid actually consummating a license on RAND terms, such as offers that are retaliatory in nature. The terms of the contracts in the present case expressly left the determination of RAND terms up to licensors and licensees. (Trial Ex. 1575 (ITU Common Patent Policy) at 9); (Trial

MICROSOFT CORPORATION'S BRIEF REGARDING THE
DUTY OF GOOD FAITH AND FAIR DEALING IN THE
CONTEXT OF RAND LICENSING - 10

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Ex. 1568 (IEEE Bylaws) at 17).  As such, while Motorola had discretion in crafting its offers, the duty of good faith and fair dealing required Motorola to exercise that discretion in a manner consistent with the purposes of the RAND commitment and with the IEEE's and the ITU's expectations.  The only rational reading of the applicable IEEE and ITU policies was that patent holders were to exercise their discretion for the purpose of *actually consummating* licenses on RAND terms.  (Trial Ex. 1575 (ITU Common Patent Policy) at 9) (making technology "accessible to everybody" is "sole objective" of ITU policies); (Trial Ex. 1130 (IEEE Operations Manual) at 19) (technology can only be included if "accessible to all in the industry" on RAND terms).

        **D.**      **Neither Protestations Of Blind Good Faith, Nor Failure Of Another Party To Attempt To Rectify Bad Faith Conduct, Excuses A Breach.**

Attempts by parties whose conduct objectively violates the standard to argue that they were acting with subjective good faith — known as the "kind heart, empty head" defense — have been rejected.  *See supra* p. 5 (citing, inter alia, *Scribner*, 249 F.3d at 910); *see also* Wion Decl. Ex. 2, Burton & Andersen at 83 (focusing on objective factors because "good faith performance clearly requires something more than a 'kind heart and an empty head.'")  A party cannot defend based on ignorance of information that commercially reasonable conduct would reveal, including conduct called for by the duties described above (*e.g.*, avoiding frustrating the purpose of the contract or the parties' reasonable expectations).  Motorola cannot use its own purported ignorance as an excuse for objectively unreasonable conduct that undermines its RAND licensing commitments.

Here, this standard has already been applied by the Court to exclude as a defense that the non-breaching party take action to cure a breach of the duty of good faith and fair dealing as a condition precedent.  Specifically, the Court has held that "applying for a patent license and

MICROSOFT CORPORATION'S BRIEF REGARDING THE
DUTY OF GOOD FAITH AND FAIR DEALING IN THE
CONTEXT OF RAND LICENSING - 11

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

negotiating towards a patent license were not conditions precedent to Motorola's obligations to grant licenses on RAND terms." (Dkt. No. 465 at 9.) *See also id.* at 14–16 (noting that the Court had "twice rejected Motorola's contention" that "interminable good faith negotiation" would satisfy its RAND commitment, and that Microsoft's suit is proper because "the courthouse acts as an appropriate forum to resolve disputes over legal rights"); Dkt. 335 at 19 ("Motorola's contracts with the IEEE and the ITU do not condition Motorola's RAND obligations on [Microsoft] first applying for a license and then negotiating in good faith."); Dkt. 188 at 15–16.

This approach is consistent with applicable law. Although the Washington Pattern Jury Instructions and certain Washington cases state that the duty of good faith and fair dealing obligates the "parties to cooperate with each other so that each may obtain the full benefit of performance," (*see, e.g.*, *Badgett v. Security State Bank*, 807 P.2d 356, 360 (Wash. 1991); Wion Decl. Ex. 4 (Washington Pattern Instruction 302.11) ("WPI")), the term "cooperate" in the context of a RAND licensing dispute does not suggest that Microsoft had to engage in back-and-forth negotiations with Motorola before Motorola could violate its duty. Rather, the duty to "cooperate" is on the defendant and is a short-hand expression of the rule already discussed requiring a defendant to avoid conduct that hinders the plaintiff's realization of the benefits of the contract or reasonable expectations. In *Cavell*, for example, the Court applied the obligation to cooperate to conclude that a plaintiff's failure to satisfy a condition precedent did not excuse the defendant where the defendant hindered the plaintiff's ability to satisfy the condition. *Cavell*, 629 P.2d at 53. *See also Long v. T-H Trucking Co.*, 486 P.2d 300, 302–03 (Wash. App. 1971) (finding that defendant did not cooperate in good faith because its actions "substantially hindered plaintiff's production of logs in adequate volume").

MICROSOFT CORPORATION'S BRIEF REGARDING THE
DUTY OF GOOD FAITH AND FAIR DEALING IN THE
CONTEXT OF RAND LICENSING - 12

Other cases state that parties have no obligation to "affirmatively assist" in the other party's performance. *State v. Trask*, 957 P.2d 781, 791 (Wash. App. 1998) (citing *Badgett v. Security State Bank*, 807 P.2d 356, 359 (Wash. App. 1991)). This general statement is also consistent with the Court's prior rulings in this case and does not impose a condition of first seeking an accommodation with the defendant before asserting breach. *Badgett* makes clear that this statement of law simply means that courts cannot "expand the existing duty of good faith to create obligations on the parties in addition to those contained in the contract" and that "there cannot be a breach of the duty of good faith when a party simply stands on its rights to require performance of a contract according to its terms." *Badgett*, 807 P.2d at 360.

Good faith and fair dealing is a context-driven inquiry. Restatement § 205 cmt. d (the duty's meaning "varies somewhat with the context."). In the RAND licensing context, statements that parties should "cooperate with each other" and that parties have no obligation to "affirmatively assist" the other's performance are not pertinent and have the potential to mislead a jury in a manner contrary to the law and the Court's prior rulings. They should not guide the Court's analysis or jury's deliberations.

## CONCLUSION

As requested by the Court, the foregoing provides an overview of what is required by the duty of good faith and fair dealing in the context of RAND licensing.

DATED this 1st day of July, 2013.

**RESPECTFULLY SUBMITTED,**
CALFO HARRIGAN LEYH & EAKES LLP

By   s/Arthur W. Harrigan, Jr.
    Arthur W. Harrigan, Jr., WSBA #1751

By   s/Christopher Wion
    Christopher Wion, WSBA #33207

MICROSOFT CORPORATION'S BRIEF REGARDING THE
DUTY OF GOOD FAITH AND FAIR DEALING IN THE
CONTEXT OF RAND LICENSING - 13

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

By    s/Shane P. Cramer
        Shane P. Cramer, WSBA #35099
        999 Third Avenue, Suite 4400
        Seattle, WA  98104
        Phone:  206-623-1700
        arthurh@calfoharrigan.com
        chrisw@calfoharrigan.com
        shanec@calfoharrigan.com

By    s/T. Andrew Culbert
        T. Andrew Culbert

By    s/David E. Killough
        David E. Killough

MICROSOFT CORPORATION
        1 Microsoft Way
        Redmond, WA  98052
        Phone:  425-882-8080
        Fax:  425-869-1327

        David T. Pritikin
        Richard A. Cederoth
        Constantine L. Trela, Jr.
        William H. Baumgartner, Jr.
        Ellen S. Robbins
        Douglas I. Lewis
        David C. Giardina
        John W. McBride

SIDLEY AUSTIN LLP
        One South Dearborn
        Chicago, IL  60603
        Phone:  312-853-7000
        Fax:  312-853-7036

        Carter G. Phillips
        Brian R. Nester

SIDLEY AUSTIN LLP
        1501 K Street NW
        Washington, DC  20005
        Telephone:  202-736-8000
        Fax:  202-736-8711

        Counsel for Microsoft Corp.

MICROSOFT CORPORATION'S BRIEF REGARDING THE
DUTY OF GOOD FAITH AND FAIR DEALING IN THE
CONTEXT OF RAND LICENSING - 14

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

## EXHIBITS

Wion Decl. Ex. 1: Plaintiffs' Amended Complaint, Dkt. No. 431, *In re Innovatio IP Ventures, LLC, Patent Litig.*, Case No. 1:11-cv-9308 (N.D. Ill. Oct. 1, 2012)

Wion Decl. Ex. 2: Selected chapters from Steven J. Burton & Eric G. Andersen, *Contractual Good Faith: Formation, Performance, Breach, Enforcement*. Little, Brown & Company, 1995.

Wion Decl. Ex. 3: Steven J. Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith*, 94 Harv. L. Rev. 369 (1980).

Wion Decl. Ex. 4: Washington Pattern Jury Instruction (6th Ed.) 302.11 (available at http://government.westlaw.com/linkedslice/default.asp?SP=wciji-1000.)

MICROSOFT CORPORATION'S BRIEF REGARDING THE DUTY OF GOOD FAITH AND FAIR DEALING IN THE CONTEXT OF RAND LICENSING - 15

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

**CERTIFICATE OF SERVICE**

I, Emma Aubrey, swear under penalty of perjury under the laws of the State of Washington to the following:

1. I am over the age of 21 and not a party to this action.

2. On the 1st day of July, 2013, I caused the preceding document to be served on counsel of record in the following manner:

**Attorneys for Motorola Solutions, Inc., and Motorola Mobility, Inc.:**

| | |
|---|---|
| Ralph Palumbo, WSBA #04751<br>Philip S. McCune, WSBA #21081<br>Lynn M. Engel, WSBA #21934<br>Summit Law Group<br>315 Fifth Ave. South, Suite 1000<br>Seattle, WA  98104-2682<br>Telephone:  206-676-7000<br>Email:  Summit1823@summitlaw.com | _____ Messenger<br>_____ US Mail<br>_____ Facsimile<br>__X___ ECF |
| Steven Pepe (*pro hac vice*)<br>Jesse J. Jenner (*pro hac vice*)<br>Ropes & Gray LLP<br>1211 Avenue of the Americas<br>New York, NY  10036-8704<br>Telephone:  (212) 596-9046<br>Email:  steven.pepe@ropesgray.com<br>Email:  jesse.jenner@ropesgray.com | _____ Messenger<br>_____ US Mail<br>_____ Facsimile<br>__X___ ECF |
| Norman H. Beamer (*pro hac vice*)<br>Ropes & Gray LLP<br>1900 University Avenue, 6th Floor<br>East Palo Alto, CA  94303-2284<br>Telephone:  (650) 617-4030<br>Email:  norman.beamer@ropesgray.com | _____ Messenger<br>_____ US Mail<br>_____ Facsimile<br>__X___ ECF |

MICROSOFT CORPORATION'S BRIEF REGARDING THE
DUTY OF GOOD FAITH AND FAIR DEALING IN THE
CONTEXT OF RAND LICENSING - 16

CH1 7765782v.14

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

| | |
|---|---|
| Paul M. Schoenhard (*pro hac vice*)<br>Ropes & Gray LLP<br>One Metro Center<br>700 12th Street NW, Suite 900<br>Washington, DC  20005-3948<br>Telephone:  (202) 508-4693<br>Email: Paul.schoenhard@ropesgray.com | _____ Messenger<br>_____ US Mail<br>_____ Facsimile<br>\_\_X\_\_\_ ECF |
| Andrea Pallios Roberts (*pro hac vice*)<br>Brian C. Cannon (*pro hac vice*)<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>555 Twin Dolphin Drive, 5th Floor<br>Redwood Shores, CA 94065<br>Telephone:  (650) 801-5000<br>Email: andreaproberts@quinnemanuel.com<br>Email: briancannon@quinnemanuel.com | _____ Messenger<br>_____ US Mail<br>_____ Facsimile<br>\_\_X\_\_\_ ECF |
| Kathleen M. Sullivan (*pro hac vice*)<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>51 Madison Ave., 22nd Floor<br>New York, NY 10010<br>Telephone:  (212) 849-7000<br>Email: kathleensullivan@quinnemanuel.com | _____ Messenger<br>_____ US Mail<br>_____ Facsimile<br>\_\_X\_\_\_ ECF |
| William Price (*pro hac vice*)<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>865 S. Figuera St., 10th Floor<br>Los Angeles, CA 90017<br>Telephone:  (212) 443-3000<br>Email: williamprice@quinnemanuel.com<br>MicrosoftvMotoBreachofRANDCase@quinnemanuel.com | _____ Messenger<br>_____ US Mail<br>_____ Facsimile<br>\_\_X\_\_\_ ECF |

DATED this 1st day of July, 2013.

                s/  Emma Aubrey_____
                EMMA AUBREY

MICROSOFT CORPORATION'S BRIEF REGARDING THE
DUTY OF GOOD FAITH AND FAIR DEALING IN THE
CONTEXT OF RAND LICENSING - 17

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717