The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation,<br><br>               Plaintiff,<br><br>      v.<br><br>MOTOROLA, INC., and MOTOROLA MOBILITY LLC, and GENERAL INSTRUMENT CORPORATION,<br><br>               Defendants. | CASE NO. C10-1823-JLR<br><br>DEFENDANTS' BRIEF ON DUTY OF GOOD FAITH AND FAIR DEALING IN CONTRACTUAL DISPUTE CONTEXT |

DEFENDANTS' BRIEF ON DUTY OF GOOD FAITH AND
FAIR DEALING IN CONTRACTUAL DISPUTE
CONTEXT
CASE NO. C10-1823-JLR

4838-7264-9236.2

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

## TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................. 1

II.    BACKGROUND ................................................................................... 1

    A.    The Implied Duty of Good Faith ........................................... 1

    B.    The Role of Subjective Intent ................................................ 3

    C.    The Role of Industry Practice or Custom ............................. 4

    D.    Reciprocity In Duties of Good Faith ...................................... 6

    E.    Enforcement by Third Party Beneficiaries ........................... 7

III.    ARGUMENT ....................................................................................... 8

    A.    Cases Finding Breach of the Duty Good Faith ..................... 8

        1.    Frustration of Contract Performance ......................... 8

        2.    Failure to Cooperate .................................................. 8

        3.    Misleading a Counterparty ......................................... 9

        4.    Failure to Disclose .................................................... 9

        5.    Agreements to Negotiate .......................................... 10

    B.    Cases Rejecting a Claimed Breach of the Duty of Good Faith ............................ 11

        1.    Claim of Breach of Good Faith Based on a High/Low Offer ................. 11

        2.    Claim of Breach of Good Faith for Seeking Injunctive Relief ................ 14

IV.    CONCLUSION .................................................................................. 15

DEFENDANTS' BRIEF ON DUTY OF GOOD FAITH AND
FAIR DEALING IN CONTRACTUAL DISPUTE
CONTEXT - i
CASE NO. C10-1823-JLR

4838-7264-9236.2

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

# TABLE OF AUTHORITIES

**Page**

<u>**Cases**</u>

*ABA Distributors, Inc. v. Adolph Coors Co.*,
542 F. Supp. 1272 (W.D. Mo. 1982) ........................................................7

*Alliance Atlantis Releasing Ltd. v. Bob Yari Prods., No. CV 08-5526-GW (SSX)*,
2010 WL 1525687 (C.D. Cal. Apr. 12, 2010) ...........................................11

*Am. Mfrs. Mut. Ins. Co. v. Osborn*,
104 Wn. App. 686, 17 P.3d 1229 (2001) ................................................13

*Amerigraphics, Inc. v. Mercury Cas. Co.*,
182 Cal. App. 4th 1538 (Cal. App. 2010) ...............................................6

*Apple, Inc. v. Motorola Mobility, Inc.*,
No. 11-cv-178-BBC, 2012 WL 5416941 (W.D. Wis. Oct. 29, 2012) ...............14, 15

*Aventa Learning, Inc. v. K12, Inc.*,
830 F. Supp. 2d 1083 (W.D. Wash. 2011) ...............................................8

*Axthelm & Swett Const., Inc. v. Caudill*,
No. 35995-9-I, 86 Wn. App. 1002 (Wash. Ct. App. 1997)................................5

*BBS Technologies, Inc. v. Remington Arms Co., Inc., No. Civ. A. 05-98-DLB*,
2005 WL 3132307 (E.D. Ky. Nov. 22, 2005) ...........................................12

*Badgett v. Sec. State Bank*,
116 Wn.2d 563, 807 P.2d 356 (1991) .....................................................1

*Baker v. Goldman Sachs & Co.*,
656 F. Supp. 2d 226 (D. Mass. 2009) .....................................................7

*Barrett v. Weyerhaeuser Co. Severance Pay Plan*,
40 Wn. App. 630, 700 P.2d 338 (1985) ...................................................1

*Barstad v. Stewart Title Guar. Co., Inc.*,
145 Wn.2d 528, 39 P.3d 984 (2002) .......................................................5

*Betchard-Clayton, Inc. v. King*,
41 Wn. App. 887, 707 P.2d 1361 (1985) .................................................2

*Bushbeck v. Chicago Title Ins. Co.*,
No. C08-0755JLR, 2010 WL 2262340 (W.D. Wash. June 1, 2010).....................9

*Cargill Global Trading v. Applied Dev. Co*,
706 F. Supp. 2d 563 (D.N.J. 2010) .......................................................7

DEFENDANTS' BRIEF ON DUTY OF GOOD FAITH AND
FAIR DEALING IN CONTRACTUAL DISPUTE
CONTEXT - ii
CASE NO. C10-1823-JLR

4838-7264-9236.2

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*Cargolux Airlines Int'l, S.A. v. Sea-Tac Air Cargo L.P. ex rel. Transiplex (Seattle) Inc.*,
    No. 65498-5-I, 2012 WL 2688782 (July 9, 2012) ........................................................ 9

*Casey Elec., LLC v. Constr. Mgmt. Servs., Inc.*,
    No. 3:09-cv-00469 (PCD), 2009 WL 3853819 (D. Conn. Nov. 17, 2009) .......................... 7

*Cavell v. Hughes*,
    29 Wn. App. 536, 629 P.2d 927 (1981) ....................................................................... 4, 8

*City of Alton v. Sharyland Water Supply Corp.*,
    145 S.W.3d 673 (Tx. Ct. App. 2004) ................................................................................ 7

*Columbia Park Golf Course, Inc. v. City of Kennewick*,
    160 Wn. App. 66, 248 P.3d 1067 (2011) ......................................................................... 10

*Continental Bank N.A. v Modansky*,
    997 F.2d 309 (7th Cir. 1993) ............................................................................................ 4

*Curtis v. Northern Life Ins. Co.*,
    147 Wn. App. 1030 (2008) ........................................................................................... 4, 5

*Donald B. Murphy Contractors, Inc. v. King Cnty.*,
    112 Wn. App. 192, 49 P.3d 912 (2002) ........................................................................... 1

*Edmonson v. Popchoi*,
    155 Wn. App. 376, 228 P.3d 780 (2010) .......................................................................... 8

*Fairhaven Land & Livestock Co. v. Chuckanut Trails Water Ass'n*,
    Case No. 60909-2-I, 148 Wn. App. 1046 (Feb. 23, 2009) .................................................. 3

*Flight Sys., Inc. v. Elec. Data Sys. Corp.*,
    112 F.3d 124 (3d Cir. 1997) ........................................................................................... 10

*Foster Enters., Inc. v. Germania Fed. Sav. & Loan Ass'n*,
    97 Ill. App. 3d 22, 421 N.E.2d 1375 (1981) .................................................................... 10

*Frank Coluccio Constr. Co., Inc. v. King Cnty.*,
    136 Wn. App. 751, 150 P.3d 1147 (2007) ..................................................................... 1, 8

*G Four Bellingham, LLC v. Oishii Teriyaki, Inc.*,
    No. 58305-1-I, 2008 WL 176389 (Jan. 22, 2008) ............................................................. 9

*Gardner & White Consulting Servs., Inc. v. Ray*,
    474 S.E.2d 663 (Ga. Ct. App. 1996) ............................................................................... 7

*Gaskill v. Travelers Ins. Co.*,
    2012 WL 1327819 (W.D. Wash. April 17, 2012) .............................................................. 7

*Gillenardo v. Connor Broad. Delaware Co., C.A. 98C-06-015 WLW*,
    2002 WL 991110 (Del. Super. Ct. Apr. 30, 2002) ........................................................... 10

DEFENDANTS' BRIEF ON DUTY OF GOOD FAITH AND
FAIR DEALING IN CONTRACTUAL DISPUTE
CONTEXT - iii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

4838-7264-9236.2

*In re Hardesty Co., Inc.*,
  336 N.L.R.B. 18 (Sep. 28, 2001) .................................................................................. 14

*Helicopter Transport Servs., Inc. v. Erickson Air-Crane Inc.*, No. CV 06-3077-PA,
  2008 WL 151833 (D. Or. Jan. 14, 2008) ........................................................................ 7

*Matter of Hollingsworth's Estate*,
  88 Wn.2d 322, 560 P.2d 348 (1977) .......................................................................... 4, 8

*Iliadis v. Wal-Mart Stores, Inc.*,
  191 N.J. 88, 922 A.2d 710 (2007) .................................................................................. 4

*KLB Industries, Inc.*,
  357 N.L.R.B. 8 (July 26, 2011) ............................................................................. 13, 14

*Keller v. Allstate Ins. Co.*,
  81 Wn. App. 624, 915 P.2d 1140 (1996) ...................................................................... 13

*Keystone Land & Dev. Co. v. Xerox Corp.*,
  152 Wn.2d 171, 94 P.3d 945 (2004) .......................................................................... 1, 10

*L-7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d Cir. 2011) .......................................................................................... 12

*Lichtenberg Constr. & Dev., Inc. v. Paul W. Wilson, Inc.*,
  No. C-000811, 2001 WL 1141236 (Ohio Ct. App. Sept. 28, 2001) ............................... 6

*Liebergesell v. Evans*,
  93 Wn.2d 881, 613 P.2d 1170 (1980) ............................................................................. 9

*Lloyd v. Allstate Ins. Co.*,
  167 Wn. App. 490, 275 P.3d 323 (2012) ...................................................................... 13

*Lonsdale v. Chesterfield*,
  99 Wn.2d 353, 662 P.2d 385 (1983) ............................................................................... 9

*McCarthy W. Constructors, Inc. v. Phoenix Resort Corp.*,
  169 Ariz. 520, 821 P.2d 181 (Ct. App. 1991) ................................................................ 7

*Miller v. Othello Packers, Inc.*,
  67 Wn.2d 842, 410 P.2d 33 (1966) ............................................................................. 1, 9

*Monahan v. GMAC Mortgage Corp.*,
  179 Vt. 167, 893 A.2d 298 (2005) .................................................................................. 7

*In re Nieves*,
  648 F.3d 232 (4th Cir. 2011) ........................................................................................... 4

*Race v. Fleetwood Retail Corp. of Wash.*, ,
  No. 20722-6-III, 2003 WL 1901274 (2003) ................................................................. 10

DEFENDANTS' BRIEF ON DUTY OF GOOD FAITH AND
FAIR DEALING IN CONTRACTUAL DISPUTE
CONTEXT - iv
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

4838-7264-9236.2

*Realtek Semiconductor Corp. v. LSI Corp.*,
  No. C-12-03451 RMW, 2012 WL 4845628 (N.D. Cal. Oct. 12, 2012) .................................. 12

*Rhino Linings USA, Inc. v. Harriman*,
  658 F. Supp. 2d 892 (S.D. Ind. 2009) ...................................................................................... 5

*Riveredge Assocs. v. Metro. Life Ins. Co.*,
  774 F. Supp. 897 (D.N.J. 1991) ............................................................................................... 7

*Ross Bros. Const. Co. v. Int'l Steel Servs. Inc.*,
  283 F.3d 867 (7th Cir. 2002) ................................................................................................... 7

*Spinks v. Equity Residential Briarwood Apartments*,
  171 Cal. App. 4th 1004, 90 Cal. Rptr. 3d 453 (Cal. Ct. App. 2009) ........................................ 7

*Universal Fuel, Inc. & Int'l Assoc. of Machinists & Aerospace Workers, AFL-CIO, Dist. Lodge 4*,
  358 N.L.R.B. 150 (Sept. 27, 2012) ..................................................................................... 13, 14

*Warner Theatre Associates Ltd. P'ship v. Metro. Life Ins. Co.*,
  1997 WL 685334 (S.D.N.Y. Nov. 4, 1997), *aff'd*, 149 F.3d 134 (2d Cir. 1998), the ......... 11, 12

*Zuver v. Airtouch Commc'ns, Inc.*,
  153 Wn.2d 293, 103 P.3d 753 (2004) ...................................................................................... 6

## Statutes

19 U.S.C. § 1337(d) ...................................................................................................................... 15

35 U.S.C. § 283 ............................................................................................................................. 15

37 C.F.R. § 75.65(b) ..................................................................................................................... 14

29 U.S.C.A. § 158(d) .................................................................................................................... 13

RCW § 48.01.030 ............................................................................................................................ 5

RCW § 62A.1-201(b)(20) ............................................................................................................... 4

RCW § 62A.1-203 ......................................................................................................................... 10

## Miscellaneous

Cable Television Consumer Protection and Competition Act of 1992, Pub. L. 102-385, 106 Stat.
  1460 ....................................................................................................................................... 14

Restatement (Second) of Contracts § 205 cmt. a (1979) ........................................................ 1, 3

Restatement (Second) of Contracts § 205(d) (1981) .......................................................... 3, 6, 7

DEFENDANTS' BRIEF ON DUTY OF GOOD FAITH AND
FAIR DEALING IN CONTRACTUAL DISPUTE
CONTEXT - v
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

4838-7264-9236.2

1

**I.      INTRODUCTION**

2

3          Defendants Motorola, Inc., Motorola Mobility LLC, and General Instrument Corporation

4   (collectively, "Motorola") respectfully submit this brief in response to the Court's request for

5   briefing on "the parameters of a good-faith offer, or, the reverse of that, outside a good-faith offer

6   or bad faith, in the context of a contractual dispute."  *See* Hr'g Tr. 16:11-15, June 5, 2013.  Per the

7   Court's instruction, Motorola here seeks to provide relevant background law while reserving

8   argument for subsequent briefing.  As set forth below, the inquiry is fact intensive and includes

9   both subjective and objective components.  The duty of good faith includes the concept of

10  reciprocity: the duty applies to the party performing and the party seeking to enforce the contract.

**II.     BACKGROUND**

11

**A.      The Implied Duty of Good Faith**

12

13         Under Washington state law (which the Court has assumed governs here), there is an

14  implied duty of good faith and fair dealing in all contracts.  *See, e.g., Miller v. Othello Packers,*

15  *Inc.*, 67 Wn.2d 842, 843-44, 410 P.2d 33 (1966).  This duty obligates parties to cooperate with

16  each other so that the parties may receive the benefits of performance of the contract.  *Id.*   A party

17  may breach the duty by failing to promote the contract's common purpose.  *See, e.g., Frank*

18  *Coluccio Constr. Co., Inc. v. King Cnty.*, 136 Wn. App. 751, 764-66, 150 P.3d 1147, 1154-55

19  (2007) (citing Restatement (Second) of Contracts § 205 cmt. a (1979)).

20         The implied duty of good faith and fair dealing arises out of the obligations created by a

21  contract and exists only in relation to performance of specific contract terms.  *See Badgett v. Sec.*

22  *State Bank*, 116 Wn.2d 563, 569-74, 807 P.2d 356, 359-62 (1991).[1]   Washington does not

23  recognize "a free-floating duty of good faith unattached to the underlying legal document," *id.* at

24  570, and thus the duty cannot "'inject any substantive terms into the parties' contract,'" *id.* at 569.

25     [1] *See also Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 177, 94 P.3d 945, 949 (2004); *Donald B.*
   *Murphy Contractors, Inc. v. King Cnty*, 112 Wn. App. 192, 197, 49 P.3d 912, 915 (2002) ("If no [specific] contractual
26  duty exists, there is nothing that must be performed in good faith."); *Barrett v. Weyerhaeuser Co. Severance Pay Plan*,
   40 Wn. App. 630, 635 n.6, 700 P.2d 338, 342 (1985).

DEFENDANTS' BRIEF ON DUTY OF GOOD FAITH AND
FAIR DEALING IN CONTRACTUAL DISPUTE
CONTEXT - 1
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

4838-7264-9236.2

1    Nor does the duty require parties to accept any "material change in the terms of the contract," *see*

2    *Betchard-Clayton, Inc. v. King*, 41 Wn. App. 887, 890-91, 707 P.2d 1361, 1363-64 (1985).

3          In this case, the express contract terms to which the implied duties of good faith apply are

4    the RAND obligations of Motorola's contracts with the IEEE and ITU.  Under the law of the case,

5    Motorola's obligation is "to license its essential patents on RAND terms" (Dkt. 355, p.13).  The

6    Court has held that "Motorola's statements to the IEEE and ITU constituted a binding agreement

7    to license its essential patents on RAND terms" (Dkt 335, p. 13), and that " Microsoft, as a

8    member of both the IEEE and the ITU, is a third-party beneficiary of Motorola's commitments to

9    the IEEE and ITU" (Dkt 188, p.10).  The Court has noted that such an agreement contemplates a

10   process of negotiation between Motorola and potential licensees like Microsoft in order to arrive at

11   a RAND license, and does not require that any initial offer or any other offer made during the

12   give-and-take of negotiations itself be made on RAND terms:

13   - "[T] he language of Motorola's agreements with the IEEE and the ITU envisions a
14     negotiation between the parties towards a resulting RAND license."  (Dkt 335, p.24.)

15   - "[B]oth policies lend themselves to a negotiation process. For instance, the ITU
16     Policy places a requirement on the patent holder to 'negotiate licenses with other
     parties on a non-discriminatory basis on reasonable terms and conditions.' (Dkt. #
17     79-3 at 9-12.) Additionally, both policies state that the negotiating parties will
     determine the final RAND license, again indicating that the policies contemplate a
18     negotiation process."  (Dkt. 188, p. 14)

19   - "Still, the court is mindful that at the time of an initial offer, it is difficult for the
20     offeror to know what would in fact constitute RAND terms for the offeree. Thus,
     what may appear to be RAND terms from the offeror's perspective may be rejected
21     out-of-pocket as non-RAND terms by the offeree.  Indeed, it would appear that at
     any point in the negotiation process, the parties may have a genuine disagreement
22     as to what terms and conditions of a license constitute RAND under the parties'
23     unique circumstances."  (Dkt. 188 p. 15.)

24   - "Because the IEEE and the ITU agreements anticipate that the parties will negotiate
25     towards a RAND license, it logically does not follow that initial offers must be on
     RAND terms. Here, critical to the court is the observation that RAND terms cannot
26     be determined until after a negotiation by the parties. . . As stated above, the
     purpose behind the IEEE and the ITU agreements is to ensure widespread access to

DEFENDANTS' BRIEF ON DUTY OF GOOD FAITH AND
FAIR DEALING IN CONTRACTUAL DISPUTE
CONTEXT - 2
CASE NO. C10-1823-JLR

4838-7264-9236.2

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

standard essential patents.  Thus, a requirement that the standard essential patent holder (here, Motorola) make unsolicited offers on RAND terms would frustrate this purpose by discouraging the standard essential patent holder to make initial contact with implementers for fear that it will later be sued for making an initial offer that is later determined as not RAND.  Accordingly, the court concludes that under Motorola's agreements with the IEEE and the ITU, Motorola need not make initial offers on RAND terms." (Dkt 335, pp. 24-25.)

It is against this backdrop that the Court held that, "although the language of Motorola's agreements do not require it to make offers on RAND terms, any offer by Motorola (be it an initial offer or an offer during a back-and-forth negotiation) must comport with the implied duty of good faith and fair dealing inherent in every contract."  (Dkt 335, 25.)

Microsoft initiated this litigation immediately after Motorola sent its opening offer—letters sent at Microsoft's request after suing Motorola for patent infringement—to initiate negotiations.  Thus, the proper focus on the parties' compliance with the duties of good faith should be directed to the context and circumstances surrounding Motorola's sending of its letters in October 2010.

### B.    The Role of Subjective Intent

As the Court noted earlier, "[w]hile the court will not at this time set forth a legal standard with respect to Motorola's duty to offer its patents in good faith, it is likely that any analysis of Motorola's duty will involve, at least in part, an examination of the intent behind Motorola's offers."  (Dkt 335, 27.)   The Court is correct in this regard.  The Restatement (Second) of Contracts Section 205, which relates to good faith and fair dealing and which Washington cases rely upon, *see, e.g.*, *Fairhaven Land & Livestock Co. v. Chuckanut Trails Water Ass'n*, Case No. 60909-2-I, 148 Wn. App. 1046 (Feb. 23, 2009) (unpublished opinion), suggests that there is both an objective and a subjective component to the assessment of good faith and fair dealing.  For example, the Restatement (Second) of Contracts, in the section entitled "Good Faith Performance," provides that, while "[a] complete catalogue of types of bad faith is impossible,… "*willful* rendering of imperfect performance" is an example of bad faith.  Restatement (Second) of Contracts § 205(d) (1981) (emphasis added).

DEFENDANTS' BRIEF ON DUTY OF GOOD FAITH AND
FAIR DEALING IN CONTRACTUAL DISPUTE
CONTEXT - 3
CASE NO. C10-1823-JLR

4838-7264-9236.2

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    Several Washington cases likewise suggest that subjective intent should be taken into

2 consideration in assessing good faith.  For example, in *Matter of Hollingsworth's Estate*, 88

3 Wn.2d 322, 330, 560 P.2d 348, 352 (1977), the court found that a party to a stipulated settlement

4 of a will acted in bad faith when he refused to accept a tax compromise "not because he, in fact

5 and in good faith, found the tax compromise unacceptable, but because *he later decided he had*

6 *made a bad bargain*" (emphasis added).   In *Cavell v. Hughes*, 29 Wn. App. 536, 539-40, 629 P.2d

7 927, 929 (1981), the court held that the "record shows clearly that defendant did not proceed in

8 good faith after signing the earnest money agreement"  because the defendant, *inter alia*, "sought

9 the advice of counsel for the *specific purpose* of frustrating the sale, and testified at trial that he

10 wanted out of the agreement because *he felt he had made a bad bargain by fixing a price that was*

11 *too low*" (emphasis added).

12    Other jurisdictions also take into consideration such subjective factors when determining

13 breach of good faith and fair dealing.  *See, e.g.*, *Iliadis v. Wal-Mart Stores, Inc.,* 191 N.J. 88, 109–

14 110, 922 A.2d 710, 722 (2007) (holding that "good faith" turns not only on "reasonableness" but

15 also on "bad motive or intention"); *Continental Bank N.A. v Modansky*, 997 F.2d 309, 312-14 (7th

16 Cir.  1993) (applying Illinois law and stating that, "when a creditor *acts honestly* when activating

17 guaranties and utilizing insecurity clauses, the creditor does not violate the duty of good faith even

18 if such actions are not reasonable") (emphasis added).[2]

19    **C.    The Role of Industry Practice or Custom**

20    Industry custom or practice—here, industry practice with respect to licensing terms and

21 negotiations for SEPs—is relevant to the scope and character of parties' good faith obligations and

22 should be taken into consideration in determining breach of good faith.  *See, e.g.*, *Curtis v.*

---

23

24    [2] The Uniform Commercial Code, as codified in Washington, similarly defines "good faith" to require both "*honesty in fact* and the observance of commercial standards of fair dealing."  RCW § 62A.1-201(b)(20) (emphasis added).  Courts interpreting this requirement have interpreted it to encompass both subjective and objective factors. *See, e.g. In re Nieves*, 648 F.3d 232, 239 (4th Cir. 2011) (noting that, under the UCC as interpreted in various states, good faith "contains both subjective … and objective … components.  Under the subjective prong, a court looks to 'the honesty' and 'state of mind' of the party and … [u]nder the objective prong, a party acts without good faith by failing to abide by routine business practices.").

DEFENDANTS' BRIEF ON DUTY OF GOOD FAITH AND
FAIR DEALING IN CONTRACTUAL DISPUTE
CONTEXT - 4
CASE NO. C10-1823-JLR

4838-7264-9236.2

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   *Northern Life Ins. Co.*, 147 Wn. App. 1030, \*6 (2008).   In *Curtis*, the Washington Court of

2   Appeals cited conflicting evidence as to industry practice in finding a factual dispute as to whether

3   defendant had complied with its implied duty of good faith and fair dealing.   Plaintiffs represented

4   employees who had purchased fixed deferred annuities issued by defendant Northern.   Under the

5   contract, Northern was required to credit interest to plaintiffs' account at a minimum rate of three

6   percent, but had the discretion to credit at a higher rate.  *Id.* at \*5.  Plaintiffs claimed that Northern

7   had relied on arbitrary and unfair methods in setting the interest rate, and had thus breached a duty

8   of good faith.   In response, Northern cited industry practice, noting that its "method … was an

9   acceptable and commonly used interest crediting practice in the industry."  *Id.* at \*6.  Plaintiffs

10  countered with testimony from a former insurance commissioner who testified that defendant's

11  "approach amounted to an unfair trade practice." *Id.*  The court deemed this competing evidence

12  about industry practice relevant as "these factual disputes relate directly to the question of whether

13  Northern acted in good faith in exercising its discretion to set higher rates." *Id.  See also Axthelm

14  & Swett Const., Inc. v. Caudill*, No. 35995-9-I, 86 Wn. App. 1002, \*4 (May 12, 1997) (rejecting

15  defendant's argument that construction company had breached its good faith obligation to obtain

16  proper permits in a timely manner based, in part, on trial court's finding that the construction

17  company's actions were "in compliance with industry standards" and had been performed "in a

18  more expeditious manner than typical."); *Rhino Linings USA, Inc. v. Harriman,* 658 F. Supp. 2d

19  892, 899-900 (S.D. Ind. 2009) (applying Indiana law, holding there was sufficient evidence to

20  avoid summary judgment on issue of whether plaintiff franchisor negotiated in bad faith with the

21  defendant franchisee in light of the plaintiff franchisor's past quota offers to defendant franchisee

22  and to other potential franchisees and plaintiff franchisor's failure to enforce other quotas).

23          Industry practices have also been applied to the interpretation of the "good faith" provision

24  of the Revised Code of Washington (RCW) § 48.01.030, an insurance statute.  *See Barstad v.

25  Stewart Title Guar. Co., Inc.*, 145 Wn.2d 528, 543-44, 39 P.3d 984, 992 (2002) (interpreting "bad

26  faith" in violation of RCW 48.01.030 as requiring an act that is unreasonable, frivolous or

DEFENDANTS' BRIEF ON DUTY OF GOOD FAITH AND
FAIR DEALING IN CONTRACTUAL DISPUTE
CONTEXT - 5
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

4838-7264-9236.2

1    unfounded, and finding that industry practice supported defendant's belief that information would

2    be disclosed elsewhere and defendant title company therefore had well-founded, reasonable basis

3    for not including this information in their preliminary commitments).

4         Other jurisdictions have likewise looked to industry standards as a guide in defining the

5    parties' good faith obligations.  For example in *Lichtenberg Constr. & Dev., Inc. v. Paul W.*

6    *Wilson, Inc.*, No. C-000811, 2001 WL 1141236, at *2-3 (Ohio Ct. App. Sept. 28, 2001), the Ohio

7    Court of Appeals looked to industry practices in the construction industry to determine whether a

8    subcontractor had breached a duty of good faith in refusing the adhere to a strict deadline despite a

9    "time-is-of-the-essence" clause in the agreement.  Industry experts testified that, unless a

10   contractor specified a fixed deadline in the bid specifications, it was customary for the parties to

11   work out a timeline through good-faith negotiations in which contractors could not  impose

12   completion terms unilaterally or refuse entirely to negotiate.  *Id.*  Based on this testimony, the

13   Court of Appeals upheld a finding that the contractor's bad-faith conduct excused the

14   subcontractor from honoring the bid.  *Id.* at *3.  A California Court of Appeals similarly permitted

15   an insurer to introduce evidence of "custom and practice in the industry" to support its argument

16   that it had not acted in bad faith in denying payment to the insured.  *Amerigraphics, Inc. v.*

17   *Mercury Cas. Co.*, 182 Cal App. 4th 1538, 1556 (Cal. App. 2010).

18       **D.**     **Reciprocity In Duties of Good Faith**

19        "Washington courts have long held that mutuality of obligation means both parties are

20   bound to perform the contract's terms," even if both parties do not "have identical requirements"

21   under the contract.  *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 317, 103 P.3d 753, 766-67

22   (2004).  Accordingly, the duty of good faith and fair dealing implied in every contract applies not

23   only to the party alleged to have breached the contract, but also the party seeking to enforce it.

24   "Every contract imposes upon *each party* a duty of good faith and fair dealing in its performance

25   and *its enforcement*."  Restatement (Second) of Contracts § 205 (1981) (emphasis added).

26   Specifically, "the obligation of good faith and fair dealing extends to the assertion, settlement and

DEFENDANTS' BRIEF ON DUTY OF GOOD FAITH AND
FAIR DEALING IN CONTRACTUAL DISPUTE
CONTEXT - 6
CASE NO. C10-1823-JLR

4838-7264-9236.2

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

litigation of contract claims and defenses." *Id.* § 205, cmt. e.  As explained in the Restatement, "the obligation is violated by dishonest conduct such as conjuring up a pretended dispute, asserting an interpretation contrary to one's own understanding, . . . taking advantage of the necessitous circumstances of the other party . . . . [and] willful failure to mitigate damages." *Id.*

Similarly, "a legal position asserted in bad faith may constitute a breach of contract even when that legal position, far from being frivolous, is actually supported by the express language of the contract."  *Riveredge Assocs. v. Metro. Life Ins. Co.*, 774 F. Supp. 897, 900 (D.N.J. 1991).  *See also Monahan v. GMAC Mortgage Corp.*, 179 Vt. 167, 179, 893 A.2d 298, 310 (2005); *ABA Distributors, Inc. v. Adolph Coors Co.*, 542 F. Supp. 1272, 1285 (W.D. Mo. 1982); *McCarthy W. Constructors, Inc. v. Phoenix Resort Corp.*, 169 Ariz. 520, 526, 821 P.2d 181, 187 (Ct. App. 1991).  Accordingly, a party's filing of a contract lawsuit can breach the implied duty to enforce a contract in good faith even if that lawsuit is non-frivolous.

### E.    Enforcement by Third Party Beneficiaries

Third-party beneficiaries to contracts are generally held to have the same rights and standing as contracting parties to enforce contracts, *see, e.g. City of Alton v. Sharyland Water Supply Corp.*, 145 S.W.3d 673, 682 (Tx. Ct. App. 2004); *Ross Bros. Const. Co. v. Int'l Steel Servs. Inc.*, 283 F.3d 867, 875 (7th Cir. 2002) (applying Pennsylvania law), including to enforce implied covenants such as the implied duty of good faith and fair dealing.[3]

---

[3]  *See, e.g.*, *Cargill Global Trading v. Applied Dev. Co*, 706 F. Supp. 2d 563, 579 (D.N.J. 2010); *Casey Elec., LLC v. Constr. Mgmt. Servs., Inc.*, No. 3:09–cv–00469 (PCD), 2009 WL 3853819, at *2 (D. Conn. Nov. 17, 2009) (applying Connecticut law); *Baker v. Goldman Sachs & Co.*, 656 F. Supp. 2d 226, 235 (D. Mass. 2009) (applying New York law); *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1034, 90 Cal. Rptr. 3d 453, 477 (Cal. Ct. App. 2009) (applying California law); *Gardner & White Consulting Servs., Inc. v. Ray*, 474 S.E.2d 663, 665 (Ga. Ct. App. 1996); *Helicopter Transport Servs., Inc. v. Erickson Air-Crane Inc.*, No. CV 06-3077-PA, 2008 WL 151833, at *4 n.4 (D. Or. Jan. 14, 2008) (applying Connecticut law).  The insurance context provides a notable exception:  there, Washington courts have rejected attempted assertions of bad-faith claims against insurers by third parties who are injured by insured parties.  *See, e.g.*, *Gaskill v. Travelers Ins. Co.*, 2012 WL 1327819, *5 (W.D. Wash. April 17, 2012).

DEFENDANTS' BRIEF ON DUTY OF GOOD FAITH AND
FAIR DEALING IN CONTRACTUAL DISPUTE
CONTEXT - 7
CASE NO. C10-1823-JLR

4838-7264-9236.2

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

III.     **ARGUMENT**

A.      **Cases Finding Breach of the Duty Good Faith**

1.      **Frustration of Contract Performance**

Washington courts have found breach of good faith and fair dealing in cases where a  party frustrates the performance of the contract.  This may occur, for example (i) when a party seeks to escape contractual obligations for self-serving reasons, *see, e.g.*, *Hollingsworth's Estate*, *supra* (finding that petitioner's refusal of tax compromise was not in good faith because he had refused the compromise after he decided he had made a bad bargain); *Cavell v. Hughes*, *supra* (finding that defendant did not proceed in good faith because he sought the advice of counsel for the specific purpose of frustrating the sale based on testimony that he wanted out of a bad bargain); (ii) when a party engages in deliberate conduct to prevent the contract's goals from being achieved,  *see, e.g.*, *Frank Coluccio Const. Co., Inc. v. King Cnty.*, 136 Wn. App. 751, 764-66, 150 P.3d 1147, 1154-55 (2007) (finding breach of duty of good faith where the county falsely represented to a contractor that it had procured an all-risk policy for the project and colluded with the insurance company to avoid coverage); *Aventa Learning, Inc. v. K12, Inc.*, 830 F. Supp. 2d 1083, 1101–02 (W.D. Wash. 2011) (applying Washington law and holding there existed a triable issue of fact as to whether an acquiring firm breached its duty of good faith by improperly calculating the value of plaintiff company's earnings, thereby reducing the value of future payouts to plaintiff's executives); or (iii) when a party fails to diligently perform contractual obligations, *see Edmonson v. Popchoi*, 155 Wn. App. 376, 388-90, 228 P.3d 780, 787 (2010) (applying Washington law to good faith principle to find that a grantor had breached a statutory covenant to defend grantee's title by refusing to adequately investigate the merits of an adverse possession claim against grantee's property).

2.      **Failure to Cooperate**

Washington courts also have found breach of good faith and fair dealing in cases where a party to a contract failed to cooperate with the other party in performance of the contract.  *See,*

DEFENDANTS' BRIEF ON DUTY OF GOOD FAITH AND
FAIR DEALING IN CONTRACTUAL DISPUTE
CONTEXT - 8
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

4838-7264-9236.2

1   *e.g.*, *G Four Bellingham, LLC v. Oishii Teriyaki, Inc.*, No. 58305-1-I, 2008 WL 176389, at *4

2   (Jan. 22, 2008) (affirming trial court's conclusion that a property owner breached the implied duty

3   of good faith in a rental agreement by refusing to accept tenant's proposed solution for compliance

4   with city permit requirements); *Lonsdale v. Chesterfield*, 99 Wn.2d 353, 662 P.2d 385 (1983)

5   (holding that the assignor's failure to install a water system for use of lots in development plot, as

6   promised in each of the contracts for the purchasers, was a breach of the implied covenant of good

7   faith); *Miller v. Othello Packers, Inc.*, 67 Wn.2d 842, 410 P.2d 33 (1966) (holding breach of duty

8   of good faith where processor's unreliable sampling and grading processes destroyed basis of

9   grower's compensation under the contract).

10                      **3.      Misleading a Counterparty**

11          Washington courts have further found breach of duty in cases where a party fails to

12   perform according to a contract and misled the other party into believing the first party performed

13   according to the contract.  *See, e.g.*, *Cargolux Airlines Int'l, S.A. v. Sea-Tac Air Cargo L.P. ex rel.*

14   *Transiplex (Seattle) Inc.*, No. 65498–5–I, 2012 WL 2688782, at *8 (July 9, 2012) (finding that

15   plaintiff's evidence was sufficient to raise an issue of fact for the jury as to whether defendant had

16   acted in bad faith where plaintiff had alleged that landlord attempted to conceal unrelated litigation

17   as "building operating costs" chargeable to the tenant); *Bushbeck v. Chicago Title Ins. Co.*, No.

18   C08–0755JLR, 2010 WL 2262340, at *6 (W.D. Wash. June 1, 2010) (applying Washington law,

19   finding that plaintiff home buyers had raised a triable issue of fact as to whether defendant title

20   insurance company had acted in bad faith by failing to refund unused fees and thus misleading

21   plaintiffs into believing that the title company had performed a reconveyance on a lender's

22   behalf).

23                      **4.      Failure to Disclose**

24          Washington courts have also recognized a good faith obligation to disclose "relevant facts

25   while negotiating a contract" that are relevant to enjoyment of the benefits of the contract.

26   *Liebergesell v. Evans*, 93 Wn.2d 881, 891–93, 613 P.2d 1170, 1176 (1980).  Applying

---

DEFENDANTS' BRIEF ON DUTY OF GOOD FAITH AND
FAIR DEALING IN CONTRACTUAL DISPUTE
CONTEXT - 9
CASE NO. C10-1823-JLR

4838-7264-9236.2

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

*Liebergesell*, a Washington Court of Appeals found in *Race v. Fleetwood Retail Corp. of Wash.*, No. 20722-6-III, 2003 WL 1901274, at *1 (2003) (unpublished opinion), that a mobile home retailer had breached the duty of good faith under the Uniform Commercial Code, RCW §62A.1-203, by failing to inform plaintiffs that the site they had purchased was not suitable for a mobile home and that their construction permits would thus likely be denied. *Id*. at *10.

### 5.    Agreements to Negotiate

At least one Washington court has imposed liability for breach of the duty of good faith in a contract to negotiate. *See, e.g.*, *Columbia Park Golf Course, Inc. v. City of Kennewick*, 160 Wn. App. 66, 78, 248 P.3d 1067, 1074 (2011) (upholding a jury finding that the City had breached the implied covenant of good faith in the parties' development option agreement (DOA)—which the trial court had characterized as a "contract to negotiate"—by, *inter alia*, entertaining competing offers in violation of the DOA's exclusivity provision).[4]

Other jurisdictions have also imposed liability for breach of an agreement to negotiate in good faith. *See, e.g., Foster Enters., Inc. v. Germania Fed. Sav. & Loan Ass'n*, 97 Ill. App. 3d 22, 28-32, 421 N.E.2d 1375, 1380-82 (1981) (upholding  jury finding that a lending institution's refusal to accept  a low market value appraisal of apartment complex was in bad faith where the defendant had impliedly promised to accept a reasonable market value appraisal); *Flight Sys., Inc. v. Elec. Data Sys. Corp.*, 112 F.3d 124, 130-31 (3d Cir. 1997) (applying Pennsylvania law, allowing allegation that defendant acted in bad faith by concealing from plaintiff that it did not intend to execute a lease if it could not obtain additional business in the Harrisburg area); *Gillenardo v. Connor Broad. Delaware Co.*, C.A. 98C-06-015 WLW, 2002 WL 991110 (Del. Super. Ct. Apr. 30, 2002) (finding sufficient evidence that a reasonable jury could find that a party

---

[4] Although the Washington Supreme Court has not recognized agreements to negotiate as enforceable contracts, it has suggested in passing that enforcement of such agreements might under some circumstances be consistent with Washington contract law, *see, e.g., Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 177, 94 P.3d 945, 949 (2004) (declining to resolve the question but noting that existing case law "supports a conclusion that, under Washington contract law, a specific course of conduct agreed upon for future negotiations is enforceable when it is contained in an existing substantive contract").

DEFENDANTS' BRIEF ON DUTY OF GOOD FAITH AND
FAIR DEALING IN CONTRACTUAL DISPUTE
CONTEXT - 10
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

4838-7264-9236.2

to a negotiation to sell a radio station pursuant to a letter of intent made no attempt in good faith to finalize the sale agreement after the defendant stopped negotiating out of anger).

**B.      Cases Rejecting a Claimed Breach of the Duty of Good Faith**

In contrast to the cases finding breach of good faith, numerous decisions have rejected attempted breach claims based on any single offer alleged to be too high or too low, including any initial offer standing alone.  Moreover, several tribunals have rejected arguments that a RAND declaration forecloses an effort to obtain injunctive relief to enforce a SEP.

**1.      Claim of Breach of Good Faith Based on a High/Low Offer**

No case of which Motorola is aware in Washington or any other jurisdiction finds a breach of the duty of good faith based on an initial offer that one party deems too high or too low.   To the contrary, various cases find that the size of an offer alone is *not* dispositive of the reasonableness of the offer or of whether the offeror has breached a duty of good faith.

For example, in *Alliance Atlantis Releasing Ltd. v. Bob Yari Prods.*, No. CV 08-5526-GW (SSX), 2010 WL 1525687 (C.D. Cal. Apr. 12, 2010), the district court held on summary judgment, applying California law, that a proposal to reduce a $1.3 million minimum guarantee to $300,000 did *not* constitute a breach of good faith even though defendants characterized the amount of that reduction as "patently unreasonable." *Id*. at *11.  The court reasoned that even "a low offer still qualifies as a good faith offer," *id*. at *12, noting that, in a commercial transaction, "both sides presumably try to get the best deal," *id*.  The court further noted that the obligation to negotiate in good faith "has been generally described as preventing one party from renouncing the deal, abandoning negotiations, or *insisting* on conditions that do not conform to the agreement," not on any single offer in the course of negotiations.  *Id*.

Similarly, in *Warner Theatre Associates Ltd. P'ship v. Metro. Life Ins. Co.*, 1997 WL 685334, *6 (S.D.N.Y. Nov. 4, 1997) (Sotomayor, D.J.), *aff'd*, 149 F.3d 134 (2d Cir. 1998), the district court rejected a claim that a party had breached its duty of good faith and fair dealing under New York law by making an offer "insisting upon terms it knew would be deal-breakers."

DEFENDANTS' BRIEF ON DUTY OF GOOD FAITH AND
FAIR DEALING IN CONTRACTUAL DISPUTE
CONTEXT - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

4838-7264-9236.2

Then-Judge Sotomayor noted  that "[n]othing in the duty of good faith requires that parties to a negotiation propose only such terms as the other party is happy with," and that any such rule "would turn the normal negotiating process on its head." *Id*.  The court contrasted the claim it rejected with hypothetical cases in which it acknowledged bad faith might have been plausibly alleged:  *e.g.*, if the defendant had "sat back for the thirty-day period and refused all of [the counterparty's]  terms while offering none of its own" or had "propos[ed] terms that were illegal or literally impossible"  *Id*.  *See also BBS Technologies, Inc. v. Remington Arms Co., Inc.*, No. Civ. A. 05-98-DLB, 2005 WL 3132307, at *4 (E.D. Ky. Nov. 22, 2005) (rejecting claim that "there was no good faith effort to resolve the parties' disputes through negotiation," reasoning that "back and forth, low ball high ball negotiations … are nothing unusual" and emphasizing that "just because one side views another side's settlement offer as unreasonable does not mean that the offer was made in bad faith").

In cases that do entertain breach of good faith claims, moreover, courts insist on a course of conduct extending beyond any single offer.  *See, e.g.*, *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011) (applying New York law, finding good faith breach claim plausible based on an offer alleged to be economically unfair, but only in the context of allegations of delay tactics over the course of lengthy negotiations); *Realtek Semiconductor Corp. v. LSI Corp.*, No. C-12-03451 RMW, 2012 WL 4845628, at *4 (N.D. Cal. Oct. 12, 2012) (applying this Court's reasoning in the instant case in denying a defendant's motion to dismiss a claim alleging breach of good faith in a RAND contract, but emphasizing that "the royalty rate as compared to selling price" was merely "*one relevant factor*" and that "reasonableness turns on "the *entirety of the terms and circumstances*") (emphasis added).

In other analogous contexts involving a duty to make offers in good faith or to negotiate in good faith, courts have similarly declined to find a breach of good faith based on initial offers, even where a counterparty deemed them unreasonably low (or high).

DEFENDANTS' BRIEF ON DUTY OF GOOD FAITH AND
FAIR DEALING IN CONTRACTUAL DISPUTE
CONTEXT - 12
CASE NO. C10-1823-JLR

4838-7264-9236.2

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

*Insurance settlement offers.*  Washington imposes a duty of good faith on insurers in making settlement offers to their insureds, but Washington courts have found that "[a] mere number comparison is inadequate to show bad faith where the lower offer was reasonable in light of evidence available at the time the offer was made."  *Lloyd v. Allstate Ins. Co.,* 167 Wn. App. 490, 497, 275 P.3d 323, 326 (2012) (rejecting bad faith claim based on insurer's original low offers even though they forced plaintiff to hire an attorney and take on additional expense); *see also Keller v. Allstate Ins. Co.*, 81 Wn. App. 624, 629-35, 915 P.2d 1140, 1143-46 (1996) (holding that a bare dollar disparity between an $8,000 offer and a $75,200 verdict was not enough to show bad faith under Washington unfair trade practices statute, and noting "adoption of a strict number comparison approach would make an insurer strictly liable for damages any time its pretrial evaluation of a claim turned out to be substantially less than the jury's verdict," *id.* at 633-34); *Am. Mfrs. Mut. Ins. Co. v. Osborn*, 104 Wn. App. 686, 701-2, 17 P.3d 1229 (2001) (holding that disparity between settlement offers by an insurer and an ultimate arbitration award standing alone cannot establish bad faith, which turns on all circumstances surrounding the insurer's conduct).

*Labor negotiations.*  The National Labor Relations Act, 29 U.S.C.A. § 158(d), imposes on workers and employers the duty to "confer in good faith with respect to wages, hours, and other terms and conditions of employment."  The NLRB has defined bad-faith bargaining as, *inter alia*, imposing "unreasonable bargaining demands that are *consistently and predictably unpalatable* to the other party."  *Universal Fuel, Inc. & Int'l Assoc. of Machinists & Aerospace Workers, AFL-CIO, Dist. Lodge 4*, 358 N.L.R.B. No. 150, *29 (Sept. 27, 2012) (emphasis added).  As the Board emphasized in *KLB Industries, Inc.*, 357 N.L.R.B. No. 8, *38 (July 26, 2011), even a "harsh" initial offer does not necessarily evince bad faith:

> Most all bargainers—collective bargainers and consumers bargaining for a new car—start low, and allow themselves to be bargained back to something they were originally hoping for…. Such tactics are not condemnable in their own right unless they appear to veil a closed mind, an unwillingness to compromise … and adjust proposals in an effort to reach agreement.

DEFENDANTS' BRIEF ON DUTY OF GOOD FAITH AND
FAIR DEALING IN CONTRACTUAL DISPUTE
CONTEXT - 13
CASE NO. C10-1823-JLR

4838-7264-9236.2

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Because the employers in *KLB* had not engaged in delaying tactics or otherwise refused to hear the union's demands, the severity of their initial proposal was held not to violate their good-faith bargaining requirements.  And even where the NLRB has cited the severity of initial demands in the course of finding bad faith, initial demands alone have not proved dispositive.  *See, e.g.*, *In re Hardesty Co., Inc.* 336 N.L.R.B. No. 18, *5-6 (Sep. 28, 2001)  (finding bad faith where employer's negotiation strategy "was to put forward a harsh bargaining proposal, stand by the proposal, then as the negotiations dragged on, concede no more than the status quo"); *Universal Fuel*, 358 N.L.R.B. No. 150, *29 (finding bad faith in an employer's regressive offer only where it was introduced after months of bargaining and could be characterized as a bad-faith attempt to bring long-running negotiations to a halt).

  **Cable Act.**  Under Section 325(b)(3)(C) of the Cable Television Consumer Protection and Competition Act of 1992, Pub. L. 102-385, 106 Stat. 1460, television broadcast stations and programming distributors are required to "negotiate in good faith" the terms and conditions of retransmission agreements.  In its implementing regulations, the Federal Communications Commission defines a number of bad-faith practices that would violate the act.  37 C.F.R. § 75.65(b).  The FCC defines bad faith as, *inter alia*, "[r]efusal by a Negotiating Entity to put forth *more than a single, unilateral proposal*." *Id.* at 75.65(b)(iv) (emphasis added).  This definition suggests in another context employing a good-faith negotiation duty that bad faith requires something more than merely putting forth an initial proposal with unfavorable terms.

    **2.**  **Claim of Breach of Good Faith for Seeking Injunctive Relief**

  No tribunal has held that essential patent holders are contractually barred from seeking injunctions by virtue of their RAND commitments to standards organizations like ITU and IEEE.  To the contrary, recent cases have held to the contrary.  For example, in *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178-BBC, 2012 WL 5416941, at *12-16 (W.D. Wis. Oct. 29, 2012), Apple sued Motorola *inter alia* on a third-party beneficiary theory similar to Microsoft's here, alleging that Motorola had breached its RAND commitments to IEEE and ETSI by seeking an

DEFENDANTS' BRIEF ON DUTY OF GOOD FAITH AND
FAIR DEALING IN CONTRACTUAL DISPUTE
CONTEXT - 14
CASE NO. C10-1823-JLR

4838-7264-9236.2

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    injunction against Apple for infringing Motorola's SEPs.  Judge Crabb held, however, that

2    "Motorola did not breach its contract simply by requesting an injunction and exclusionary order in

3    its patent infringement actions."  *Id.* at *15.  Noting that, because patent holders generally have the

4    right to seek injunctive relief in district courts under 35 U.S.C. § 283 and in the ITC under 19

5    U.S.C. § 1337(d), "any contract purportedly depriving a patent owner of that right should clearly

6    do so," Judge Crabb concluded that nowhere in Motorola's agreements with those standard-setting

7    organizations was there any provision plainly prohibiting seeking injunctions based on SEPs.

8    Absent any plain contract term prohibiting injunctive enforcement of SEPs, it follows *a fortiori*

9    that the duty of good faith, which must derive from a contract term, cannot bar such enforcement.

10            Similarly, in *Apple v. Samsung*, the ITC issued an exclusion order against certain Apple

11   iPhones based on Apple's infringement of a Samsung SEP—applying the administrative

12   equivalent of injunctive relief notwithstanding Samsung's RAND commitments to SSOs.  *See* Ian

13   Sherr and Jessica Lessin, *Ruling Blocks iPhone Sales*, The Wall Street Journal Online, (June 10,

14   2013), http://online.wsj.com/article/SB10001424127887323469804578525723885896616. html.[5]

15   **IV.      CONCLUSION**

16            The duty of good faith is a reciprocal one that may be breached by either performance or

17   enforcement.  Any finding of breach of the implied duty of good faith and fair dealing in the

18   context of Motorola's RAND contract with the ITU and IEEE would require consideration of a

19   totality of factors and circumstances, including both Motorola's subjective intent and industry

20   practice with respect to RAND licenses, and extending beyond a mere opening offer containing a

21   rate that a potential licensee like Microsoft deems unreasonable.  A RAND contract contemplates

22   the give-and-take of negotiations, and considerable case law in other contract contexts establishes

23   that the amount of any single offer alone, especially an initial offer designed to get negotiations

24   started, cannot be dispositive of a breach of good faith and fair dealing.

25

26
    _____
    [5] The full public version of the ITC decision enforcing an exclusion order on an SEP is not yet available.

DEFENDANTS' BRIEF ON DUTY OF GOOD FAITH AND
FAIR DEALING IN CONTRACTUAL DISPUTE
CONTEXT - 15
CASE NO. C10-1823-JLR

4838-7264-9236.2

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

DATED this 1st day of July, 2013.

Respectfully submitted,

SUMMIT LAW GROUP PLLC

By */s/ Ralph H. Palumbo*
By */s/ Philip S. McCune*
    Ralph H. Palumbo, WSBA #04751
    Philip S. McCune, WSBA #21081
    *ralphp@summitlaw.com*
    *philm@summitlaw.com*

By */s/ Thomas V.  Miller*
    Thomas V. Miller
    MOTOROLA MOBILITY LLC
    600 North U.S. Highway 45
    Libertyville, IL  60048-1286
    (847) 523-2162

And by

    Kathleen M. Sullivan (*pro hac vice*)
    Quinn Emanuel Urquhart & Sullivan, LLP
    51 Madison Avenue, 22nd Floor
    New York, NW  10010
    (212) 849-7000
    *kathleensullivan@quinnemanuel.com*

    Brian C. Cannon (*pro hac vice*)
    Andrea Pallios Roberts (*pro hac vice*)
    Cheryl A. Berry (*pro hac vice*)
    Quinn Emanuel Urquhart & Sullivan, LLP
    555 Twin Dolphin Drive, 5th Floor
    Redwood Shores, CA  94065
    (640) 801-5000
    *briancannon@quinnemanuel.com*
    *andreaproberts@quinnemanuel.com*

DEFENDANTS' BRIEF ON DUTY OF GOOD FAITH AND
FAIR DEALING IN CONTRACTUAL DISPUTE
CONTEXT - 16
CASE NO. C10-1823-JLR

4838-7264-9236.2

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

William C. Price (*pro hac vice*)
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA  90017
(213) 443-3000
*williamprice@quinnemanuel.com*

Jesse J. Jenner (*pro hac vice* )
Steven Pepe (*pro hac vice* )
Kevin J. Post (*pro hac vice*)
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY  10036-8704
(212) 596-9046
*jesse.jenner@ropesgray.com*
*steven.pepe@ropesgray.com*
*kevin.post@ropesgray.com*

James R. Batchelder (*pro hac vice*)
Norman H. Beamer (*pro hac vice* )
Ropes & Gray LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA  94303-2284
(650) 617-4030
*james.batchelder@ropesgray.com*
*norman.beamer@ropesgray.com*

Paul M. Schoenhard (*pro hac vice*
Ropes & Gray LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC  20005-3948
(202) 508-4693
*paul.schoenhard.@ropesgray.com*

**Attorneys for Motorola Solutions, Inc.,
Motorola Mobility LLC and General
Instrument Corp.**

DEFENDANTS' BRIEF ON DUTY OF GOOD FAITH AND
FAIR DEALING IN CONTRACTUAL DISPUTE
CONTEXT - 17
CASE NO. C10-1823-JLR

4838-7264-9236.2

S UMMIT  L AW  G ROUP PLLC
315 F IFTH  A VENUE  S OUTH , S UITE 1000
S EATTLE , W ASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

3

4

Arthur W. Harrigan, Jr., Esq.
Christopher T. Wion, Esq.

5

Shane P. Cramer, Esq.
Calfo Harrigan Leyh & Eakes LLP

6

*arthurh@calfoharrigan.com*
*chrisw@calfoharrigan.com*

7

*shanec@calfoharrigan.com*

8

Richard A. Cederoth, Esq.
Brian R. Nester, Esq.

9

David T. Pritikin, Esq.
Douglas I. Lewis, Esq.

10

John W. McBride, Esq.
William H. Baumgartner, Jr., Esq.

11

David C. Giardina, Esq.
Carter G. Phillips, Esq.

12

Constantine L. Trela, Jr., Esq.
Ellen S. Robbins, Esq.

13

Nathaniel C. Love, Esq.
Sidley Austin LLP

14

*rcederoth@sidley.com*
*bnester@sidley.com*

15

*dpritikin@sidley.com*
*dilewis@sidley.com*

16

*jwmcbride@sidley.com*
*wbaumgartner@sidley.com*

17

*dgiardina@sidley.com*
*cphillips@sidley.com*

18

*ctrela@sidley.com*
*erobbins@sidley.com*

19

*nlove@sidley.com*

20

T. Andrew Culbert, Esq.

21

David E. Killough, Esq.
Microsoft Corp.

22

*andycu@microsoft.com*
*davkill@microsoft.com*

23

24

DATED this 1st day of July, 2013.

25

/s/ *Marcia A. Ripley*
_____
Marcia A. Ripley

26

DEFENDANTS' BRIEF ON DUTY OF GOOD FAITH AND
FAIR DEALING IN CONTRACTUAL DISPUTE
CONTEXT - 18
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

4838-7264-9236.2