1

The Honorable James L. Robart

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

MICROSOFT CORPORATION, a Washington
corporation,

10

CASE NO. C10-1823-JLR

11

Plaintiff,

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

12

v.

**NOTED ON MOTION CALENDAR:**
**Wednesday, July 31, 2013 at 10:00 a.m.**

13

MOTOROLA, INC., and MOTOROLA
MOBILITY LLC, and GENERAL
INSTRUMENT CORPORATION,

14

**REDACTED**

15

16

Defendants.

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

4831-2776-9108.1

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ........................................................................ 1

II.  STATEMENT OF FACTS ............................................................................... 2

    A.   The Parties' Conduct Leading Up to the Present Lawsuit. ...................... 2

    B.   Motorola's Subsequent Lawsuits. ......................................................... 3

    C.   Motorola's Negotiations With Marvell. ................................................. 4

    D.   Google's MPEG LA License. ............................................................... 4

    E.   Microsoft's Relevant Claims Against Motorola. ................................... 5

III. SUMMARY JUDGMENT STANDARD ......................................................... 6

IV.  ARGUMENT .................................................................................................. 7

    A.   Microsoft Cannot Prove Each of the Elements of Its Breach Theories. ................. 7

        1.   This Court Should Grant Summary Judgment That Motorola's Claims for Injunctive Relief Were Not a Breach of Contract. ................................ 7

        2.   This Court Should Grant Summary Judgment That Motorola Did Not Breach a Contract by Not Granting a License to Marvell. ...................... 13

        3.   This Court Should Grant Summary Judgment That Motorola Did Not Breach a Contract by Not Offering a License on Google's MPEG LA Terms. .................................................................................................. 15

    B.   The Court Should Grant Motorola Summary Judgment on Microsoft's Damages Claims. ................................................................................. 18

        1.   Microsoft's Damages Claims Are Barred by the *Noerr-Pennington* Doctrine. .............................................................................................. 18

        2.   At a Minimum, the Court Should Grant Motorola Partial Summary Judgment Because Microsoft's Attorney-Fee Damages are Barred as a Matter of Law. ...................................................................................... 21

V.   CONCLUSION ............................................................................................. 24

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - i
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

4831-2776-9108.1

1

## I.      PRELIMINARY STATEMENT

2      Motorola is entitled to summary judgment on a number of issues that will significantly narrow

3   this case for trial.  This case arose out of communications between the parties in 2010.  Microsoft

4   filed its first lawsuit in October 1, 2010, seeking an exclusion order from the ITC to prevent the

5   importation of Motorola smartphones for alleged patent infringement.  Then, Microsoft requested that

6   Motorola put its patents on the table, resulting in Motorola sending license offers for its 802.11 and

7   H.264 SEP portfolios on October 21 and 29, 2010, including an offered rate of 2.25%.  In response to

8   those letters, instead of counter-offering, Microsoft filed the current breach of contract lawsuit on

9   November 9, 2010, alleging that the letters sought unreasonably high royalty rates in violation of

10  RAND commitments.  *After* Microsoft filed the current lawsuit—the third it filed against Motorola—

11  Motorola sued for patent infringement in various jurisdictions, including Germany.  In its pleadings,

12  Motorola sought—but never in fact enforced—injunctions against Microsoft for patent infringement.

13     The question remaining for trial in this action is whether there was a breach of contract.

14  While Motorola reserves its appellate rights regarding the nature and scope of Motorola's

15  commitments to the IEEE and ITU and Microsoft's right to enforce those commitments, Motorola

16  assumes for the purposes of this motion that binding contracts between Motorola and the IEEE and

17  Motorola and the ITU exist and that Microsoft is a third party beneficiary of those contracts.

18     In discovery, Microsoft identified four theories of breach.  Microsoft appears to have

19  abandoned two of those theories, which relate to Marvell and MPEG LA, because none of its experts

20  opined on those theories.  In any event, Motorola is entitled to summary judgment on each of those

21  theories because Microsoft cannot prove each of the elements of a breach of contract for these two

22  theories.  Of the two breach theories that remain, Motorola is also entitled to summary judgment that

23  it did not breach its obligations to the IEEE and ITU by seeking injunctive relief for infringement of

24  its essential patents because Microsoft similarly cannot prove the elements of its claims.

25     In discovery, Microsoft also identified only two theories of damages, and both theories are

26  fatally flawed.  Microsoft contends that it was damaged because it incurred attorney fees and

litigation costs defending against Motorola's patent infringement cases.  Microsoft further contends

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 1
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   that it relocated its European distribution facility in preparation for complying with an injunction

2   against infringing Motorola's essential patents in Germany.  Both theories arise out of Motorola's

3   enforcement of its patents and thus are barred by the *Noerr-Pennington* doctrine.

4       Microsoft's attorney-fee and litigation-cost damages theory also runs afoul of the American

5   Rule, under which parties to litigation pay for their own attorneys.  Microsoft cannot show that any

6   exception to the American Rule is met here.  Thus, Motorola is entitled to partial summary judgment

7   on Microsoft's attorney-fee and litigation-costs damages claim.

8                              **II.      STATEMENT OF FACTS**

9   **A.      The Parties' Conduct Leading Up to the Present Lawsuit.**

10          **The Parties' Licensing Negotiation History and Marketplace Coexistence.**  For many

11   years, Motorola Inc.[1] and Microsoft peacefully co-existed and  collaborated to develop smartphones

12   that used Microsoft's Windows mobile operating system.  Motorola had a license to Microsoft's

13   ActiveSync patents, which expired in 2007.  (Ex. A, 81:1-4.)[2]  The parties engaged in negotiations for

14   a renewal of Motorola's ActiveSync license for approximately three years, from 2007 to 2010.  (*Id.*,

15   81:20-83:3.)  During the course of the parties' negotiations in this time period, Microsoft sought to

16   license its ActiveSync patents to Motorola, and Motorola advised Microsoft that it had patents that

17   read on Microsoft's products.  (*Id.*, 74:24-75:20.)

18          **Microsoft Sues Motorola for Patent Infringement.**  On October 1, 2010, without prior

19   notice, Microsoft sued, filing a complaint in the International Trade Commission, alleging patent

20   infringement by Motorola's smartphones ("ITC-744 action").  (*Id.*, 30:2-23; Ex. B.)  Microsoft

21   sought an exclusion order that would preclude Motorola from importing its smartphones into the

22   United States.  (Ex. A, 98:15-19.)  Microsoft also filed a patent infringement action against Motorola

23   in the U.S. District Court for the Western District of Washington, asserting infringement of the same

24   ─────────────────

25   [1] At the time, Motorola Inc. had as subsidiaries Motorola Mobility, Motorola Solutions, and General Instrument.
    Subsequently, Motorola Mobility and General Instrument were spun off as separate companies and later acquired by
26   Google Inc.

    [2] Unless otherwise specified, all exhibits referenced herein are attached to the Declaration of Andrea Pallios Roberts,
    filed concurrently herewith.

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 2
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   patents at issue before the ITC ("1577 action").  (Ex. C.)  In the district court case, Microsoft sought,

2   among other things, injunctive relief.  (*Id.*; Ex. A, 98:15-19.)  In these two actions, Microsoft asserted

3   its ActiveSync patents against Motorola, as well as additional patents that had never before been the

4   subject of prior negotiations between the parties.  (*Id.*, 97:1-98:14.)

5          **Microsoft Invites Motorola to Present its Patents.**  After Microsoft filed its lawsuits against

6   Motorola, Microsoft told Motorola that Microsoft was interested in finding a resolution of the parties'

7   dispute that would cover both parties' intellectual property, and that it was interested in discussing a

8   cross-license agreement.  (*Id.*, 84:14-85:22.)  Microsoft invited Motorola to present its patents for

9   discussion.  (*Id.*, 84:17-20.)  The parties also scheduled a meeting for October 22, 2010 to discuss a

10  broad patent cross-license.  (*Id.*, 93:21-95:1.)

11         **Motorola Makes Microsoft a License Offer and Microsoft Files Suit Again.**  On October

12  21, 2010, in advance of the parties' scheduled meeting, Motorola sent Microsoft a letter offering to

13  grant Microsoft a worldwide license to Motorola's portfolio of patents and patent applications

14  relating to the IEEE 802.11 standards.  (Ex. D.)  On October 29, 2010, Motorola sent Microsoft a

15  second letter, which offered to grant Microsoft a worldwide license to Motorola's portfolio of patents

16  and patent applications relating to the ITU-T Recommendation H.264.  (Ex. E.)[3]  Microsoft did not

17  respond to Motorola's October 21 and 29, 2010 offer letters.  (*See* Ex. F, 20:3-6; 63:4-8.)  Rather,

18  upon receipt, Mr. Gutierrez forwarded each of the letters to Microsoft's in-house litigation team.

19  (*Id.*)  On November 9, 2010, Microsoft filed the complaint in this action, asserting, among other

20  claims, that Motorola breached its obligations to the IEEE and ITU by failing to offer to license its

21  802.11 and H.264 SEP portfolios on RAND terms.  (Dkt. 1.)

22  **B.**     **Motorola's Subsequent Lawsuits.**

23         After Microsoft sued Motorola in the ITC and this Court alleging patent infringement, and

24  then invited Motorola to present its patents for negotiation but then filed the present action alleging

25  breach of contract, Motorola filed patent infringement cases against Microsoft.  On October 10, 2010,

26  ---

    [3] These letters were sent before Motorola Mobility was spun off.  Presently, some of the patents in these two portfolios are owned by Motorola Mobility, whereas others are owned by Motorola Solutions.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   Motorola filed suit in the Western District of Wisconsin, Docket Nos. 10-cv-699 ("699 action") and

2   10-cv-700 ("700 action"), alleging that Microsoft was infringing Motorola's patents, including H.264

3   and 802.11 SEPs.  The 699 action was transferred to this Court and consolidated with the present

4   case.  (Dkt. 66.)  On October 22, 2010, Motorola filed a complaint in the ITC ("ITC-752 action"),

5   alleging that Microsoft infringed five patents, four of which were H.264 or 802.11 SEPs.  Motorola

6   sought an exclusionary order.  Finally, in July 2011, Motorola sued Microsoft in Germany for

7   Microsoft's continuing infringement of certain of Motorola's H.264 German SEPs.  Motorola sought,

8   among other relief, an injunction.

9   **C.      Motorola's Negotiations With Marvell.**



16   (Ex. J, 113:21-

17   23.)  Nevertheless, Motorola responded to Marvell's license inquiries, but Marvell did not actively

18   pursue a license.  (*See* Ex. K, 12:4-15:1.)  After several months of silence from Marvell following the

19   initial exchange of emails, Motorola requested that Marvell provide claim charts to a set of 802.11

20   patents Marvell proposed to cross-license on a royalty-free basis.  (Ex. L, 85:12-86:22.)  As of the

21   November 2012 trial, Marvell had not provided Motorola the requested claim charts.   (*Id.*, 87:3-9.)

22   There is no evidence of any further response from Marvell.

23   **D.      Google's MPEG LA License.**

24          At this Court's request, the parties previously filed briefs regarding MPEG LA's AVC patent

25   pool, which covers the H.264 standard.  Motorola refers the Court to the arguments on this issue in

26   Dkt. 615-17, 620, 642-43.  As this Court is aware, the MPEG LA AVC patent pool does not cover the

802.11 standard.  (*See, e.g.*, Dkt. 673 at 148.)  On January 25, 2005,  Google and MPEG LA—neither

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 4
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   of which is a party to this litigation—entered into an AVC License Agreement, which provided a

2   license to Google for all patents contained in the MPEG LA AVC patent pool.  (Ex. M.)  At that time,

3   Motorola was not affiliated with Google.  Google remains a separate entity and has never been a

4   party to this case.

5          On May 22, 2012, Google's acquisition of Motorola Mobility closed.  ████████████

6   ██████████████████████████████████████████████████████████████████

7   (Dkt. 617, Ex. B.) ████████████████████████████████████████████████

8   ██████████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████████████

10  ██████████████████████████████████████████████████████████

11  ████████████████████ (Dkt. 617, Ex. C.) ████████████████████████

12  █████████████████████████████████████████████████████████████████████

13  ██████ (Dkt. 617, Ex. D.)[4] ████████████████████████████████████

14  ████████████████ (Dkt. 617, Ex. D.) ████████████████████████

15      ████████████████████████████████████████████████████████████

16  ████████████████ (Dkt. 617, Ex. E.) ████████████████████████████

17  ████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████ (Dkt. 617, Ex. F.)

19  The MPEG LA patent pool does not cover 802.11 SEPs or non-essential patents.  Neither party has

20  made subsequent proposals.

21  **E.     Microsoft's Relevant Claims Against Motorola.**

22         Microsoft's original complaint focused only on the October 2010 letters sent from Motorola

23  that contained the offered rate of 2.25%.  Microsoft now contends, however, that Motorola breached

24  its obligations by (1) offering in October 2010 to license its 802.11 and H.264 SEPs at a royalty rate

25  _____

26      [4] As this Court is aware, Dr. Lynde opined that the rate for the H.264 SEP portfolio was approximately .02 cents per unit.  (Ex. N, 80:15-21.)  This rate is below the RAND range for Motorola's H.264 SEP portfolio determined by this Court, which was 0.555 cents per unit to 16.389 cents per unit.  (Dkt. 673 at 207.).

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 5
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

that was not a RAND rate, (2) seeking injunctive relief as a remedy for Microsoft's infringement of

Motorola's SEPs, (3) not issuing a patent license to Microsoft's 802.11 chip supplier, Marvell, and

(4) Google not issuing Microsoft a license under the terms of Google's MPEG LA license.  (Ex. O at

23-24.)  Microsoft further contends that this conduct, together, constitutes a breach of the implied

covenant of good faith and fair dealing.  (*Id.*)  Microsoft asserts that, as a result of this conduct by

Motorola, Microsoft has been damaged because it (1) incurred attorney fees and litigation costs

defending against Motorola's SEP infringement claims, and (2) relocated its EMEA distribution

facility from Germany to the Netherlands in preparation for the German court to issue an injunction

against Microsoft.

### III.        SUMMARY JUDGMENT STANDARD

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law.'" *United States v. City of

Renton*, No. C11–1156JLR, 2012 WL 1903429, at *4 (W.D. Wash. May 25, 2012) (Robart, J.)

(quoting Fed. R. Civ. P. 56(a)).  Although generally a court must draw reasonable inferences

supported by the evidence in favor of the non-moving party, *id.*, "[f]or purely legal questions,

summary judgment is appropriate without deference to the non-moving party," *Seaman v. State Farm

Fire & Cas. Co.*, No. C06-1495JLR, 2007 WL 1875903, at *1 (W.D. Wash. June 28, 2007) (Robart,

J.).  "The moving party may meet its burden on a motion for summary judgment by producing

'evidence negating an essential element of the nonmoving party's case' or by showing 'that the

nonmoving party does not have enough evidence of an essential element of its claim or defense to

carry its ultimate burden of persuasion at trial.'" *City of Renton*, 2012 WL 1903429, at *4 (quoting

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000)).  If the moving

party has "'made reasonable efforts to . . . discover whether the nonmoving party has enough

evidence to carry its burden', . . . [t]hen, the moving party 'need only point out that there is an

absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Devereaux v. Abbey*, 263

F.3d 1070, 1076 (9th Cir. 2001)).   In response, the nonmoving party must "present significant and

probative evidence to support its claim or defense." *Paramount Pictures Corp. v. N. Pac. Int'l*

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 6
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   *Television, Inc.*, No. C04-2068JLR, 2005 WL 1111209, at *1 (W.D. Wash. May 9, 2005) (Robart, J.)

2   (citing *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991)).

3                                IV.      ARGUMENT

4   **A.      Microsoft Cannot Prove Each of the Elements of Its Breach Theories.**

5           Motorola is entitled to summary judgment on Microsoft's breach theories relating to

6   injunctive relief, Marvell, and MPEG LA, because Microsoft cannot prove each of the elements of a

7   breach of contract claim for any of these theories of breach.  Under Washington law, a "breach of

8   contract is actionable only if the contract imposes a duty, the duty is breached, and the breach

9   proximately causes damage to the claimant." *Nw. Ind. Forest Mfr. v. Dep't of Labor & Indus.*, 75

10  Wn. App. 707, 712, 899 P.2d 6, 9 (1995); *Muniz v. Microsoft Corp.*, No. C10–0717–JCC, 2010 WL

11  4482107, at *3 (W.D. Wash. Oct. 29, 2010) ("A breach-of-contract claim under Washington law

12  requires a showing of (1) a contract that imposed a duty, (2) breach of that duty, and (3) an economic

13  loss as a result of that duty.") (quotation omitted).  For each of these theories, Microsoft cannot prove

14  one or more of the elements of the claim.[5]

15          **1.      This Court Should Grant Summary Judgment That Motorola's Claims for
                        Injunctive Relief Were Not a Breach of Contract.**
16
17          Microsoft contends that Motorola breached its obligations to both the IEEE and ITU by

18  seeking injunctive relief as a remedy for infringement of certain 802.11 and H.264 SEPs in U.S.

19  district courts and the ITC, and infringement of certain H.264 SEPs in Germany.  (Ex. O at 23.)

20  Microsoft cannot show that Motorola's pursuit of injunctive relief breaches any duty under either

21  purported contract and cannot show that such an alleged breach proximately caused litigation-costs

22  damages to Microsoft.

23

24

25  _____

26      [5] Motorola only addresses Microsoft's first cause of action for breach of contract herein because the Court previously
    indicated that only this cause of action would be tried on August 26, 2013.  (Ex. P, 3:19-4:14.)  To the extent Microsoft is
    permitted to pursue its remaining promissory estoppel claim, Motorola reserves its right to move for summary judgment
    on that claim.

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 7
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

        **a.**      **Seeking Injunctive Relief Did Not Breach a Contractual Duty.**

2

        **(i)**     **Motorola's Agreements With IEEE And The ITU Do Not Prohibit Motorola From Seeking Injunctive Relief**

3

4

Nowhere in Motorola's agreements with IEEE or the ITU is there any provision prohibiting

Motorola from seeking an injunction or exclusion order.  A plaintiff may not bring a breach of

5

contract action when it is unable to point to a particular provision in the contract that has been

6

breached.  *See*, *e.g.*, *Elliott Bay Seafoods v. Port of Seattle*, 124 Wn. App. 5, 11, 98 P.3d 491, 494

7

(2004) (finding that, because the plaintiff could not point to any specific provision of the lease that

8

was breached by the defendant, and the lease did not contain any express promises or covenants

9

covering the disputed actions, there was no breach of the lease).  Here, Microsoft cannot point to the

10

breach of any specific contract provision, as the purported contracts do not contain any provisions

11

relating to injunctive relief.

12

Patent owners bringing an infringement action have a statutory right to seek injunctive relief

13

in U.S. district courts and/or an exclusion order in the ITC.  The right to seek injunctive relief in U.S.

14

district courts arises under 35 U.S.C. § 283, which states that "[t]he several courts having jurisdiction

15

of cases under this title may grant injunctions in accordance with the principles of equity to prevent

16

the violation of any right secured by patent, on such terms as the court deems reasonable."  Patent

17

owners also have the right to seek exclusion orders in the ITC under 19 U.S.C. § 1337(d), which

18

states in part that, "[i]f the Commission determines, as a result of an investigation under this section,

19

that there is a violation of this section, it shall direct that the articles concerned, imported by any

20

person violating the provision of this section, be excluded from entry into the United States."

21

When such statutory rights exist, parties to a contract must explicitly state that they are

22

contracting away these statutory rights in order for the rights to be waived.  *See*, *e.g.*, *Metro. Edison*

23

*Co. v. NLRB*, 460 U.S. 693, 707-709 (1983) (The Court "will not infer from a general contractual

24

provision that the parties intended to waive a statutorily protected right unless the undertaking is

25

explicitly stated.  More succinctly, the waiver must be clear and unmistakable.").  Motorola's

26

purported contracts with IEEE and the ITU contain no such statements.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Microsoft also cannot succeed on a claim that the implied duty of good faith and fair dealing prohibits Motorola from seeking injunctive relief in this situation.  The implied duty of good faith and fair dealing arises out of the obligations created by a particular contract and is not "free floating." *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 570, 807 P.2d 356, 360 (1991).  It depends on the parties' obligations under the contract and does not "inject substantive terms into the parties' contract." *Id.* *See*, *e.g.*, *Trimble v. Wash. State Univ.*, 140 Wn.2d 88, 96-97, 993 P.2d 259, 263 (2000) (holding that in an employment-at-will contract, the duty of good faith does not impede the employer's decision to terminate the employment.)  Here, there are no substantive terms in the contract preventing Motorola from seeking injunctions.

Nowhere in Motorola's Letters of Assurance to IEEE is there any provision that prohibits Motorola, or SEP holders in general, from seeking injunctions or exclusion orders.  (*See* Ex. Q.) Section 6 of IEEE's Intellectual Property Rights Policy ("IPR Policy") requires members to submit letters of assurance, including a commitment to license essential patents under reasonable and nondiscriminatory terms.  IEEE's IPR Policy has no provision, however, stating that holders of SEPs may not seek injunctions to enforce their patents against infringers.  (*See* Ex. R.)

Similarly, nowhere in Motorola's Patent Statement and Licensing Declarations to the ITU is there any provision that prohibits Motorola, or SEP holders in general, from seeking injunctions or exclusion orders.  (*See* Ex. S.)  The ITU policy relating to holders of SEPs is also silent as to that issue.  (*See* Ex. T.)  Microsoft thus cannot point to any provisions of these contracts that Motorola allegedly breached.  Accordingly, the Court should grant summary judgment for Motorola on this theory of breach.

> (ii)   **No Other Courts or Administrative Bodies Have Prohibited SEP Holders From Seeking Injunctions**

In addition to the undisputed fact that the purported contracts do not contain any provisions prohibiting Motorola from seeking injunctive relief, when Motorola filed its lawsuits seeking injunctions in November 2010 and July 2011, there were no decisions from any courts or relevant administrative bodies prohibiting SEP holders from seeking injunctions.  The alleged support that

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 9
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   Microsoft cites for its claim that "judicial and administrative rulings specific to Motorola have

2   confirmed that its pursuit of injunctive relief was improper" (Ex. O at 23)—a statement that is

3   incorrect and misleading—involves decisions and decrees that occurred *after* Motorola filed its suits

4   seeking injunctions.  Nonetheless, those decisions and decrees do not actually prohibit Motorola from

5   seeking injunctions, and others have specifically found that it *is* proper for Motorola or other SEP

6   holders to seek injunctions in certain circumstances.

7           **The ITC Issued an Exclusion Order in an SEP Infringement Case.**  On June 4, 2013, the

8   ITC issued a ruling that Apple's iPhone infringed one of Samsung's cellular SEPs and issued an

9   exclusion order barring the importation of certain iPhones and iPads.  (Ex. U.)  This exclusion order

10  reflects the ITC's opinion that an injunction may be an appropriate remedy for patent infringement of

11  an SEP by an unwilling licensee.

12          **The U.S. District Court for the Western District of Wisconsin Explicitly Stated that SEP**

13  **Holders May Seek Injunctions.**  Apple sued Motorola in the Western District of Wisconsin and

14  argued that Motorola breached its obligations to the IEEE and ETSI by seeking an injunction against

15  Apple products infringing Motorola's SEPs.   Judge Crabb was unconvinced and held that nowhere in

16  Motorola's agreements with those standard-setting organizations was there any prohibition on

17  seeking injunctions based on SEPs.  Judge Crabb held that, because patent holders generally have the

18  right to seek injunctive relief in district courts under 35 U.S.C. § 283 and in the ITC under 19 U.S.C.

19  § 1337(d), "any contract purportedly depriving a patent owner of that right should clearly do so."

20  *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178-bbc, 2012 WL 5416941, at *15 (W.D. Wisc.

21  Oct. 29, 2012).  Judge Crabb found that the IEEE contract does not clearly deprive patent owners of

22  the right to bring injunctions, and therefore that "Motorola did not breach its contract simply by

23  requesting an injunction and exclusionary order in its patent infringement actions." *Id.*  The final

24  judgment is currently on appeal.

25          **The U.S. District Court for the Northern District of Illinois Stated That Injunctions May**

26  **Be Available.**  In *Apple, Inc. v. Motorola, Inc.*, Judge Posner, sitting by designation, expressed

    skepticism about the availability of injunctive relief for holders of SEPs.  However, he reserved the

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

question of whether such an injunction would be permitted in a case where the infringer is an unwilling licensee.  Judge Posner found that, because Motorola had committed to license its patent on FRAND terms, he was not sure he would be justified in issuing an injunction "unless Apple refuses to pay a royalty that meets the FRAND requirement."  *Apple, Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901, 913-14 (N.D. Ill. 2012).  This order had not issued when Motorola filed its lawsuits seeking injunctions.  The final judgment is currently on appeal.

**The Department of Justice and United States Patent and Trademark Office Stated That SEP Holders May Seek Injunctions.**  The Department of Justice ("DOJ") and United States Patent and Trademark Office ("USPTO") recognized that there are numerous situations where an injunction may be appropriate for a FRAND-encumbered SEP, including if a putative licensee has refused to negotiate, has insisted on terms clearly outside FRAND terms, or refuses to pay what has been determined to be a FRAND royalty.  "An exclusion order may still be an appropriate remedy in some circumstances, such as where the putative licensee is unable or refuses to take a F/RAND license and is acting outside the scope of the patent holder's commitment to license on F/RAND terms."  (Ex. V at 7.)  The DOJ and USPTO recognized that an essential patent owner who has no ability to exclude an unwilling licensee will face barriers to obtaining the full value for its portfolio because it will be forced to litigate, possibly patent-by-patent, to obtain reasonable royalty damages for each individual patent.  "We recognize that the risk of a refusal to license decreases where the putative licensee perceives a cost associated with delay and increases where the putative licensee believes its worst-case outcome after litigation is to pay the same amount it would have paid earlier for a license."  (*Id.* at 7 n.15.)

**At the outset of the cases, it was an open issue as to whether injunctive relief was proper.** Based on the above, in 2010 and 2011, when Motorola filed lawsuits seeking injunctive relief, the availability of injunctive relief for SEP infringement was an open issue, and it remains so.  As set forth above, there were no judicial opinions precluding it.  Moreover, when Motorola filed these other lawsuits, there was an open issue as to whether Microsoft had repudiated its rights under the purported contracts by bringing suit.  This was the subject of summary judgment briefing, concluding

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   in this Court's order of June 6, 2012.  (Dkt. 335.)  If this Court had found repudiation, then

2   Microsoft's claims in this case would have been dismissed.

3                    **(iii)       Microsoft Urged the FTC To Permit Injunctions.**

4           Any claim by Microsoft that Motorola breached its obligations to the IEEE and ITU by

5   seeking injunctive relief is undermined by Microsoft's own contemporaneous statements to the FTC

6   in 2011.  In a letter written to the FTC on June 14, 2011—eight months *after* Motorola filed its patent

7   infringement action against Microsoft in the ITC seeking an exclusion order and just one month

8   before Motorola filed its patent infringement actions against Microsoft in Germany seeking an

9   injunction, Microsoft itself *supported* an SEP holder's right to seek an injunction.  Microsoft wrote:

10          In addition, the existence of a RAND commitment to offer patent licenses **should not
            preclude a patent holder from seeking preliminary injunctive relief or
11          commencing an action in the International Trade Commission** just because the
            patent holder has made a licensing commitment to offer RAND-based licenses in
12          connection with a standard**.** Whether such relief is available should be assessed under
            the current legal framework in the applicable jurisdiction, which often is premised
13          substantially on the specific facts and circumstances at issue. Any
            uniform declaration that such relief would not be available if the patent holder has
14          made a commitment to offer a RAND license for its essential patent claims in
            connection with a standard may reduce any incentives that implementers might have
15          to engage in good faith negotiations with the patent holder.

16   (Ex. W at 13) (emphasis added.)  Microsoft's Rule 30(b)(6) witness designated to testify about this

17   FTC letter admitted that Microsoft's position has changed.  (Ex. X, 41:9-17.)  He further confirmed

18   that Microsoft's position changed, at least in part, because of Motorola's patent infringement suits.

19   (*Id.*, 41:18-25.)

20          Motorola cannot have been in breach of its obligations to standard-setting organizations by

21   seeking injunctive relief if, at the same time, Microsoft *agreed* that SEP holders should have the right

22   to do so.[6]  Microsoft's complete 180 on its position highlights the baseless nature of its claim.  This

23   Court should find that there is no genuine dispute of material fact that seeking injunctive relief is not

24   a breach and grant Motorola summary judgment on this theory.

25   _____

26      [6]   In addition to changing its position, Microsoft has sought to convince standard-setting organizations to change or
        "clarify" their policies to preclude SEP holders from seeking injunctive relief. (Ex. Y, 121:12-21 (explaining the position
        Microsoft took with respect to ETSI).)

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

**b.     Microsoft Also Cannot Prove Attorney-Fee Damages Stemming From This Claim of Breach**

This Court also should grant Motorola partial summary judgment as to damages stemming from this alleged breach because Microsoft does not have any evidence that Motorola's seeking injunctive relief proximately caused the attorney-fee damages Microsoft seeks to recover.  Microsoft did not cite any such evidence in its interrogatory response (Ex. O), and did not proffer any expert testimony on this subject.  Microsoft's purported expert who calculated the total amount of attorney fees and litigation costs incurred did not opine on the amount of attorney-fee damages incurred as a result of Motorola seeking injunctive relief.  (Ex. Z, 102:18-103:5.)  Nor could he.  Microsoft has not attempted to apportion the attorney fees and litigation costs incurred to determine those incurred defending against claims for injunctive relief, rather than defending against claims for monetary damages.  (Ex. AA, 179:15-22.)  Microsoft would have had to defend against Motorola's patent infringement claims even if Motorola sought only monetary relief.  Thus, this Court should find that Microsoft lacks evidence that it incurred attorney fees and litigation costs as a result of Motorola seeking injunctive relief.

As this Court knows, there are two separate contracts at issue:  one with IEEE and another with ITU.  Microsoft's witness did not calculate the amount of attorney-fee damages incurred as a result of Motorola seeking injunctive relief for infringement of IEEE 802.11 SEPs, as opposed to those incurred as a result of Motorola seeking injunctive relief for infringement of ITU H.264 SEPs. (Ex. Z, 104:5-16.)  Each alleged contract breach should have its own damages, which Microsoft has failed to establish.  This too shows that Microsoft lacks evidence that it incurred attorney fees and litigation costs as a result of Motorola breaching its commitments to the IEEE or ITU by virtue of seeking injunctive relief.

**2.     This Court Should Grant Summary Judgment That Motorola Did Not Breach a Contract by Not Granting a License to Marvell.**

Microsoft next contends that Motorola breached its obligations to the IEEE by declining to grant a license to its 802.11 SEP portfolio to Microsoft's chip supplier, Marvell.  (Ex. O at 23.)

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 13
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   Microsoft has never clearly articulated this breach theory, nor has it provided evidence to prove any

2   elements of this theory.[7]

          **a.**      **Microsoft Cannot Prove Damages Proximately Caused by Motorola's Alleged Conduct.**

4          This Court should grant Motorola summary judgment on this breach theory because Microsoft

5   has failed to meet its burden to provide evidence that Motorola's failure to execute a license with

6   Marvell proximately caused damage to Microsoft.  Microsoft has not clearly articulated its damages

7   claim related to this theory of breach and Motorola's conduct vis-à-vis Marvell.  Indeed, in response

8   to Motorola's objection to this belatedly disclosed damages theory, Microsoft's counsel stated

9   affirmatively that "there is no separate damages claim." (Ex. BB, 8:15-16.)  Rather, Microsoft's

10   Marvell damages argument is that "some of the attorneys' fees [Microsoft is] claiming would not

11   have been incurred." (*Id.* 9:2-3).  However, Microsoft does not have any evidence of the attorney fees

12   and litigation costs incurred as a result of this specific conduct.  Mr. Menenberg confirmed that he did

13   not opine on the amount of damages incurred as a result of Motorola having failed to enter into a

14   license with Marvell.  (Ex. Z, 103:6-104:4.)  Mr. Menenberg similarly did not opine on the amount of

15   relocation costs incurred as a result of Motorola's failure to execute a license with Marvell.  (*Id.*,

16   178:22-180:5.)  Such failure to demonstrate economic loss is fatal to Microsoft's Marvell-license

17   claim of breach.  *See Stephen Haskell Law Offices, PLLC v. Westport Ins. Corp.*, No. CV-10-437-

18   JLQ, 2011 WL 1303376 at *6 (E.D. Wash. Apr. 5, 2011).

19          Moreover, Marvell did not approach Motorola for a license until July 2011.  Thus, only

20   damages incurred after July 2011 could even possibly have been incurred as a result of Motorola's

21   alleged conduct with respect to Marvell.  And, Microsoft has no evidence indicating the portion of

22   attorney fees and litigation costs incurred in that time period as a result of this particular conduct.

---

[7] It is unclear to Motorola whether Microsoft is still pursuing this breach theory.  It is articulated in Microsoft's relevant interrogatory response, but not discussed by Microsoft's expert, Dr. Murphy, as a separate theory of breach.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1

**b.      There is No Evidence Motorola Breached a Duty to Marvell.**

2      Assuming a contract under which Marvell has rights that Microsoft has standing to enforce,

3  which Microsoft has never established, Microsoft cannot establish the essential element that Motorola

4  breached a duty.  As set forth above, Marvell approached Motorola about obtaining a license and

5  made clear that it was doing so at the behest of Microsoft.  Motorola made an offer to license to

6  Marvell, but Marvell has not actively pursued those negotiations.  (*See* Ex. K, 12:4-21.)  Motorola

7  cannot have breached any purported commitment to Marvell when it is undisputed that Marvell was

8  not itself interested in pursuing a license, and Motorola made clear to Marvell that it did not need a

9  license to continue its operations.  Indeed, Microsoft's own expert did not opine that Motorola's

10  failure to enter into a license with Marvell breached Motorola's obligations to the IEEE.

11      Microsoft further contends that Motorola's specific exclusion of Microsoft from its offer to

12  Marvell is also a breach of the covenant of good faith and fair dealing.   (Ex. O at 24.)  Not so.

13  Microsoft itself has publicly stated that such defensive suspension provisions are a common way that

14  companies approach patent licensing.  (Ex. W at 6.)  Far from breaching the covenant of good faith

15  and fair dealing, Motorola's actions are consistent with Microsoft's own stated expectations for

16  standards-related patent licensing.  *See Barstad v. Stewart Title Guar. Co., Inc.*, 145 Wn.2d 528, 543-

17  44, 39 P.3d 984, 992 (Wash.) (finding no breach of RCW 48.01.030's good faith standard where

18  defendant's duty was informed by industry practice).  Accordingly, this Court should find that

19  Microsoft cannot prove a breach of any duty owed to Marvell.

20      **3.      This Court Should Grant Summary Judgment That Motorola Did Not Breach a
Contract by Not Offering a License on Google's MPEG LA Terms.**

21

22      Lastly, Microsoft apparently contends that Motorola breached its obligations to the ITU

23  because its parent company, Google, did not offer Microsoft a license under its MPEG LA terms.

24  Summary judgment is warranted on this theory because Motorola does not have any obligations

25  under a contract made by ***non-party*** Google, there is no evidence of a contract obligating Google to

26

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 15
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   issue a license on these terms, Google nevertheless did, and Microsoft has no evidence of damages

2   proximately caused by Google's conduct.[8]

### a.      Google Is Not a Party to This Litigation.

4           It is undisputed that Motorola Mobility, Inc. is not a member of the MPEG LA AVC patent

5   pool as either a licensor or as a licensee.  The license is with Google.  Microsoft has not, however,

6   joined Google as a party in this case.  Indeed, Microsoft previously admitted that it did not raise the

7   issue of Google's MPEG LA license earlier for strategic reasons; it wanted to preserve the November

8   trial date.  (Ex. CC, 33:22-34:5.)  Yet, Microsoft now asserts that *Motorola* is in breach of contract

9   because *non-party Google* purportedly failed to comply with its obligations under its MPEG LA

10  license.  Microsoft should not be permitted to pursue this claim when Google is not in the case to

11  defend its actions.  Summary judgment should be granted on this basis alone.

### b.      There Is No Contract Requiring Google to Grant Microsoft a License to Motorola's SEPs.

13
14          Even if Google were a party to the case, Microsoft has no evidence that Google's obligations

    to MPEG LA required it to license the patents of its after-acquired affiliate.  This issue was

15  extensively briefed following the November trial.  (*See, e.g.*, Dkt. 614-17, 620, 642-43).  Nothing in

16  the factual record establishes that Motorola is a covered Affiliate under the MPEG LA agreement,

17  and no license extends from MPEG LA to Motorola under the pool patents.  (*See* Dkt. 615, 642).

18  Having failed to establish the first essential element of a contract breach claim, that there exists a

19  contract that imposes a duty, Microsoft's allegations of breach surrounding the MPEG LA agreement

20  must necessarily fail.

### c.      Motorola Did Not Breach its Duty Because Google Offered a License to Microsoft on MPEG LA Terms.

23          Even if Google were a party and Motorola's H.264 SEPs were covered by Google's MPEG

24  LA license, Microsoft still cannot prove a breach ████████████████████████████████████

25  ████████████████████████████████████████████████████

26
---
[8] It is unclear to Motorola whether Microsoft is still pursuing this breach theory.  It is articulated in Microsoft's relevant interrogatory response, but not discussed by Microsoft's expert, Dr. Murphy.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1 ████████████████████████████████████████████████████████

2 ██████████████████████  (Dkt. 617, Ex. C).  That the parties did not enter into a license—████

3 ████████████████████████████████████████████████████████

4 ████████████████████  —does not mean that Motorola breached its obligations to the ITU. ████

5 ████████████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████████

8 ████  (Dkt. 617, Ex. B), neither Google nor Motorola breached any duty, and summary judgment is

9 warranted.

<strong>d.      Microsoft Cannot Prove the Alleged Breach Resulted in Damages.</strong>

11          Finally, Microsoft does not have any evidence that it suffered any damages as a result of

12 Motorola's purported failure to license on MPEG LA terms.  This omission is fatal to a breach of

13 contract claim.  *Stephen Haskell Law Offices, PLLC*, 2011 WL 1303376, at *6.  During a May 7

14 telephonic hearing with the Court, Microsoft stated that the MPEG LA "elements of damage are no

15 different from the fees that we are otherwise claiming."  (Ex. BB, 10:6-8.)  As with Microsoft's other

16 breach theories, Mr. Menenberg confirmed that he did not opine on the amount of damages incurred

17 as a result of Motorola having not issued a license on MPEG LA terms.  (Ex. Z, 103:16-23; 178:22-

18 180:5.)

19          Microsoft's lack of evidence of damages caused by Motorola's alleged conduct is fatal to

20 each of Microsoft's breach theories, but is particularly problematic with respect to the MPEG LA

21 theory.  Google did not acquire Motorola until May 2012, so none of the damages allegedly incurred

22 by Microsoft prior to that date could have been as a result of this alleged breach.  This includes

23 Microsoft's claim for relocation costs given that the decision to relocate the EMEA distribution

24 facility was made at least two months prior to the acquisition.  (Ex. DD, 80:14-22.)[9]  ████████

---

[9] Mr. Davidson also testified that this Court's preliminary injunction ruling on May 14, 2012 was "too late" to halt Microsoft's move to the Netherlands. (Ex. DD, 231:17-22)  Thus, there is no way that Microsoft's efforts to obtain a license under MPEG LA terms after that date could have impacted Microsoft's decision to relocate its EMEA distribution center.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1  ████████████████████████████████████████  Thus, only damages

2  incurred in the two month period between May 22, 2012 and August 2012 could even possibly have

3  been incurred as a result of Motorola's alleged conduct with respect to MPEG LA.  And, Microsoft

4  has no evidence indicating the portion of attorney fees and litigation costs incurred in that time period

5  as a result of this particular conduct.  Microsoft cannot prove this breach theory as a matter of law

6  because there is no evidence of damages proximately caused by Motorola's conduct.

7  Because Microsoft cannot prove each of the elements of its breach of contract claim with

8  respect to the breach theories discussed herein, this Court should grant Motorola summary judgment

9  and dismiss each of these claims.[10]

10  **B.   The Court Should Grant Motorola Summary Judgment on Microsoft's Damages Claims.**

11  **1.   Microsoft's Damages Claims Are Barred by the *Noerr-Pennington* Doctrine.**

12
13  **a.   Motorola's Patent Litigation is Protected Activity Under the *Noerr-Pennington* Doctrine.**

14  Both of Microsoft's damages theories are barred by the *Noerr-Pennington* doctrine.  As set

15  forth above, Microsoft asserts that, as a result of Motorola's alleged breach of contract, Microsoft has

16  been damaged because it incurred attorney fees and litigation costs defending against Motorola's SEP

17  infringement claims and it relocated its EMEA distribution facility from Germany to the Netherlands

18  in preparation for the German court to issue an injunction in the parties' German litigation.  (Ex. O at

19  26-27.)  Thus, Microsoft seeks damages for litigation expenses Microsoft incurred defending against

20  Motorola's infringement claims, which stems entirely from Motorola's patent infringement litigations

21  in the United States and Germany.  As these damages relate to Motorola's initiation of litigation

22  seeking to enforce its patents, the damages Microsoft seeks are barred under the *Noerr-Pennington*

23  doctrine.  *See, e.g., ERBE Elektromedizin GmbH v. Canady Tech. LLC*, 629 F.3d 1278, 1291-92 (Fed.

---

[10] This Court should further preclude Microsoft from introducing evidence of this alleged conduct for the purpose of trying to prove that Motorola's conduct collectively breached the duty of good faith and fair dealing.  Under Washington law, there is no "free floating" duty of good faith and fair dealing, and thus any breach of such a duty must arise out of performance or nonperformance of a particular, express contract term. *See, e.g., Badgett*, 807 P.2d at 360.  Microsoft should not be permitted to claim a breach of contract based upon a "totality" of conduct that includes conduct that Microsoft cannot prove is itself a breach of contract.

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 18
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

1   Cir. 2010) (affirming grant of summary judgment that antitrust counterclaims premised on patent

2   enforcement litigation were barred under *Noerr-Pennington*).

3       The *Noerr-Pennington* doctrine derives from the First Amendment's guarantee of "the right

4   of the people . . . to petition the Government for a redress of grievances."  U.S. Const. amend. I;

5   *White v. Lee,* 227 F.3d 1214, 1231 (9th Cir. 2000) (explaining that because "*Noerr–Pennington* is a

6   label for a form of First Amendment protection . . . to say that one does not have *Noerr–Pennington*

7   immunity is to conclude that one's petitioning activity is unprotected by the First Amendment");

8   *Kottle v. Nw. Kidney Ctrs.,* 146 F.3d 1056, 1059 (9th Cir. 1998) ("the doctrine is a direct application

9   of the Petition Clause").  The doctrine originated to provide that "[t]hose who petition the

10  government for redress are generally immune from antitrust liability."  *Prof'l Real Estate Investors,*

11  *Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993).

12      The *Noerr-Pennington* doctrine "has since been applied to actions petitioning each of the

13  three branches of government, and has been expanded beyond its original antitrust context."  *Theme*

14  *Promotions, Inc. v. News Am. Mktg. FSI,* 546 F.3d 991, 1007 (9th Cir. 2008).  It has also been applied

15  to state-law claims.  *Id.* ("In explaining its decision to extend *Noerr-Pennington* to tortious

16  interference with contracts, the Fifth Circuit stated, '[t]here is simply no reason that a common-law

17  tort doctrine can any more permissibly abridge or chill the constitutional right of petition than can a

18  statutory claim such as antitrust.'  We agree, and we hold that the *Noerr-Pennington* doctrine applies

19  to Theme's state law tortious interference with prospective economic advantage claims.") (quoting

20  *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988)).

21  And, although the Ninth Circuit has not specifically addressed application of the *Noerr-Pennington*

22  doctrine to suits filed in foreign countries, both the Fifth Circuit and district courts in the Ninth

23  Circuit have applied it to foreign suits.  *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1366 (5th

24  Cir. 1983) ("We see no reasons why acts that are legal and protected if done in the United States

25  should in a United States court become evidence of illegal conduct because performed

26  abroad.") *Luxpro Corp. v. Apple Inc.*, No. C 10-03058 JSW, 2011 WL 1086027, at *5 (N.D. Cal.

Mar. 24, 2011) (reasoning that "a party should not be held liable for conduct that would be legal and

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 19
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

protected if it was performed in the United States, but is now illegal because it was performed

abroad"). Further, "[c]onduct incidental to a lawsuit, including a pre-suit demand letter, falls within

the protection of the *Noerr–Pennington* doctrine." *Theme Promotions, Inc.*, 546 F.3d at 1007 (citing

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 936-38 (9th Cir. 2006)).

        This Court should grant summary judgment barring Microsoft's damages claims for attorney

fees arising from the patent actions, as well as Microsoft's claim for the cost of relocating it EMEA

distribution facility. Microsoft would have this Court impose significant liability upon Motorola—

over ███████ in damages—based on Motorola's patent enforcement activity in the district courts,

the ITC, and in German courts. (Ex. EE at 29.) But, as a matter of law, Motorola's pursuit of its

patent infringement claims is protected activity immune from liability under *Noerr-Pennington* and

the First Amendment. Microsoft's damages theories seek to impose liability on Motorola for its

pursuit of protected petitioning activity in the ITC and district court, as well as the German courts.

Under such circumstances, the *Noerr-Pennington* doctrine bars damages claims premised on a patent

holder's litigation and prosecution of patent infringement claims. *See, e.g., Hynix Semiconductor Inc.*

*v. Rambus Inc.*, No. CV-00-20905, 2006 WL 1883353 (N.D. Cal. 2006) (granting summary judgment

to the extent plaintiffs' claims were based solely on underlying patent litigation); *Prof'l Real Estate*

*Investors, Inc.*, 508 U.S. at 65-66 (affirming Ninth Circuit application of *Noerr-Pennington* doctrine

to bar antitrust claims premised on copyright infringement action).

        Permitting Microsoft to recover for litigating in such actions would have a chilling effect on

Motorola's First Amendment rights to petition the courts for relief. *Oregon Natural Res. Council v.*

*Mohla*, 944 F.2d 531, 533 (9th Cir. 1991) ("This heightened level of protection accorded petitioning

activity is necessary to avoid a chilling effect on the exercise of this fundamental First Amendment

right.") (quotation omitted). This chilling effect would be especially harmful with regard to the

German lawsuit and injunction, for which Microsoft seeks not only attorney fees but also the costs of

relocating the EMEA facility as well as ongoing operating costs for the new facility, because

Motorola prevailed in that lawsuit. Further, as the Ninth Circuit explained, even with the anti-suit

injunction in place, "Motorola [remained] free to continue litigating its German patent claims against

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1  Microsoft as to damages or other non-injunctive remedies to which it may be entitled." *Microsoft*

2  *Corp. v. Motorola, Inc.*, 696 F.3d 872, 889 (9th Cir. 2012). Such freedom would be vastly impeded

3  if this court were to permit Microsoft to recover from Motorola the costs of moving its EMEA

4  distribution facility. The damages Microsoft seeks directly implicate the policy underlying the

5  *Noerr-Pennington* doctrine, and Motorola should be immune from such liability.

        **b.**      **Motorola's Activity Does Not Fall Within the "Sham Litigation"**
                   **Exception to the Doctrine.**

7        Although there is a "sham litigation" exception to *Noerr-Pennington* immunity, Microsoft

8  cannot establish that Motorola's alleged conduct falls within that exception. The exception applies

9  where there is a threshold showing that the underlying lawsuit is "objectively baseless in the sense

10  that no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate*

11  *Investors*, 508 U.S. at 60. Microsoft cannot make such a showing. Motorola prevailed in the German

12  litigation, with the German court finding infringement and granting an injunction (which was never

13  enforced). (Ex. FF.) Motorola also prevailed in the ITC, with the ITC finding that Microsoft

14  infringed four of the five patents asserted by Motorola. (Ex. GG.) Motorola's patent actions

15  therefore have not been objectively baseless. Accordingly, Motorola is entitled to summary judgment

16  on Microsoft's damages claims. *Apple, Inc. v. Motorola Mobility, Inc.* 886 F. Supp. 2d 1061, 1076

17  (W.D. Wisc. 2012) ("Because Motorola's enforcement of its patents is privileged conduct protected

18  by the First Amendment, the *Noerr–Pennington* doctrine applies."); *Monolithic Power Systems, Inc.*

19  *v. O2 Micro Int'l Ltd.*, Nos. C 04-2000 CW, C 06-2929 CW, 2007 WL 801886, at *6 (N.D. Cal. Mar.

20  14, 2007); *Hynix Semiconductor Inc. v. Rambus, Inc.*, No. CV-00-20905 RMW, 2006 WL 1883353,

21  at *1-2 (N.D. Cal. July 7, 2006); *In re Relafen Antitrust Litigation,* 360 F. Supp. 2d 166, 177–78 (D.

22  Mass. 2005).

      **2.**      **At a Minimum, the Court Should Grant Motorola Partial Summary Judgment**
24                  **Because Microsoft's Attorney-Fee Damages are Barred as a Matter of Law.**

25          **a.**      **Attorney Fees Are Not Compensable Damages for a Breach of Contract.**

26        One of Microsoft's two theories of damages is that it incurred attorneys' fees and litigation

costs defending against Motorola's SEP infringement lawsuits as a result of Motorola's alleged

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 21
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    breach of contract.  This theory seeks to turn the American rule on its head and penalize Motorola for

2    seeking to enforce its patents.  Attorney fees are not recoverable under Washington law absent a

3    contractual agreement, a statutory exception, or equitable exception.  None is present here.  Thus, this

4    Court should grant partial summary judgment on Microsoft's claim for attorney fees.

5          "Washington courts traditionally follow the American rule in not awarding attorney fees as

6    costs absent a contract, statute, or recognized equitable exception." *City of Seattle v. McCready*, 131

7    Wn.2d 266, 273-74, 931 P.2d 156, 160 (1997); *Walter Implement, Inc. v. Focht*, 107 Wn.2d 553, 561,

8    730 P.2d 1340, 1344 (1982) ("Attorney fees may only be recovered when provided for by a contract,

9    a statute, or a recognized ground of equity.").  The purpose of the American rule is to "avoid

10   penalizing a party for merely defending or prosecuting a lawsuit."  *Rohm & Hass Co. v. Crystal*

11   *Chem. Co.*, 736 F.2d 688, 690 (Fed. Cir. 1984) (quotation omitted).  Every state except Alaska

12   follows the American rule.  *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 2013 WL 845120, at

13   *9 (9th Cir. Mar. 6, 2013).  Pursuant to 35 U.S.C. § 285, an attorney-fee statute that applies

14   specifically to patent infringement actions, "[t]he court in exceptional cases may award reasonable

15   attorney fees to the prevailing party."   35 U.S.C. § 285.

16         Further, "[b]ecause virtually all litigation compels a party's opponent to litigate, Washington

17   courts have narrowly limited the type of actions where attorney fees are awarded as damages."

18   *McCready*, 931 P.2d at 162 (citing examples); *see also Stephen Haskell Law Offices, PLLC*, 2011

19   WL 1303376, at *6 ("This is a breach of contract action, and [plaintiff] would not be entitled to

20   attorney's fees under the 'American rule' absent some statutory, contractual, or other specified

21   basis.").  The Washington Supreme Court has recognized limited equitable exceptions to the

22   American rule and few of those exception permit recovery of attorney fees as damages, as opposed to

23   costs:  equitable indemnity (covering actions by a third person subjecting a party to litigation) and

24   dissolving a wrongfully issued temporary injunctions or restraining orders.  *McCready*, 107 Wn.2d at

25   275; *see also id.* (attorney fees permissible damages in slander of title and wrongful garnishment

26   actions).

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 22
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

             **b.**      **No Exception Applies to Allow Microsoft to Recover Attorney Fees**

2
      While a narrow range of exceptions may apply to a claim seeking attorney fees as damages,

3
none of those exceptions applies here.  *First*, no contractual basis allows Microsoft to recover

4
attorney fees in this action or any other.  Microsoft alleges that it seeks damages as a result of

5
litigation before U.S. district courts, the ITC, and in Germany resulting from Motorola's alleged

6
breach of its RAND commitments. (Ex. O at 22-28.)  But, the letters of assurance on which

7
Microsoft bases its breach claim do not contain any provision for attorney fees.  (*Id.*, Exs. Q, S.)

8
Thus, there is not a contractual basis allowing Microsoft to recover attorney fees.  *Second*, Microsoft

9
cannot point to a statutory provision permitting recovery of attorney fees; indeed, the statutory

10
provision allowing any recovery for attorney fees in patent actions permits only the possibility of

11
attorney fees for the prevailing party in exceptional circumstances.  If attorney fees are appropriate, a

12
patent court can award them at the appropriate juncture.

13
      *Finally*, no equitable exception applies to allow Microsoft to recover the attorney fees it seeks

14
here as damages for breach of contract.  Although Washington courts have found that "an equitable

15
ground exists 'when natural and proximate consequences of a wrongful act by defendant involve

16
plaintiff in litigation with **others**,'" *Flint v. Hart*, 82 Wn. App. 209, 917 P.2d 590, 598 (1996)

17
(emphasis added), Microsoft does not meet the requirements of this exception.  Under this exception,

18
attorney fees must arise in litigation involving a third-party.  *Armstrong Const. Co. v. Thomson*, 64

19
Wn.2d 191, 195, 390 P.2d 976, 979 (1964) ("[W]here the acts or omissions of a party to an

20
agreement or event have exposed one to litigation by third persons—that is, to suit by persons not

21
connected with the initial transaction or event—the allowance of attorney's fees may be a proper

22
element of consequential damages.").  That is not the case here; the parties to the actions for which

23
Microsoft seeks attorney fees all involve Microsoft and Motorola entities.

24
      Nor does the wrongful injunction exception provide grounds for attorney fees as damages

25
here.  "The purpose of allowing equitable attorney fees as damages to a party forced into litigation to

26
dissolve a wrongfully issued temporary injunction is to 'deter plaintiffs from seeking relief prior to a

trial on the merits.'"  *Ino Ino, Inc. v. City of Bellevu*e, 132 Wn.2d 103, 143, 937 P.2d 154, 176 (1997).

1    "When no motion is made for a dissolution of an injunction nor any attack upon the merits of the

2    injunction itself, attorney fees cannot be recovered." *All Star Gas, Inc., of Washington v. Bechard*,

3    100 Wn. App. 732, 739, 998 P.2d 367, 371 (1997).  "Accordingly, equitable attorney fees incurred in

4    dissolving a wrongfully issued temporary injunction are only available after a trial on the merits,

5    where the sole issue at trial was whether to make the temporary injunction permanent or dissolve it,

6    the trial court dissolves the temporary injunction, and the trial was the only available option for the

7    party seeking to dissolve it." *Gander v. Yeager*, 167 Wn. App. 638, 648, 282 P.3d 1100, 1105

8    (2012); *see also id.* ("[*Cecil v. Dominy*, 69 Wn.2d 289, 418 P.2d 233 (1966)] stands for the

9    proposition that equitable attorney fees may be appropriate as damages if the *sole purpose* of a trial

10   on the merits is to determine whether to extend or dissolve a temporary injunction.") (emphasis in

11   original).  The only injunction issued in any of the lawsuits is in Germany, and Microsoft has not

12   sought in the German courts to dissolve that injunction or attack the merits of that injunction under

13   German law.  Rather, Microsoft chose only to seek an anti-suit injunction in this Court.

14          To the extent Microsoft would request that this Court carve out an additional equitable

15   exception for the related lawsuits, such an exception would vitiate the American rule.  "[I]t is best to

16   view these fees as the cost of pursuing a claim rather than as an element of damages.   Otherwise, this

17   Court may open a veritable pandora's box for many other such contract actions and thus create a

18   large gap in the narrowly tailored [state law] exceptions." *Dr. Franklin Perkins Sch. v. Freeman*, 741

19   F.2d 1503, 1520 (7th Cir. 1984) (reversing award of damages based on attorney fees).  This Court

20   should grant Motorola partial summary judgment on Microsoft's claim for attorney fees and litigation

21   costs because they are not recoverable as a matter of law.

22                          **V.      CONCLUSION**

23          For the foregoing reasons, this Court should grant summary judgment to Motorola on

24   Microsoft's breach of contract claims based upon Motorola seeking injunctive relief, failing to enter

25   into a license with Marvell, and Google's purported failure to offer Microsoft a license on MPEG LA

26   terms, and on any damages based on attorney fees or litigation costs.

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 24
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    DATED this 3rd day of July, 2013.

2

3                                   Respectfully submitted,

4                                     SUMMIT LAW GROUP PLLC

5                                     By */s/ Ralph H. Palumbo*
                                    By */s/ Philip S. McCune*

6                                         Ralph H. Palumbo, WSBA #04751
                                        Philip S. McCune, WSBA #21081

7                                         *ralphp@summitlaw.com*

8                                         *philm@summitlaw.com*

9                                     By */s/ Thomas V.  Miller*

10                                       Thomas V. Miller
                                      MOTOROLA MOBILITY LLC

11                                       600 North U.S. Highway 45
                                      Libertyville, IL  60048-1286

12                                       (847) 523-2162

13                                     QUINN EMANUEL URQUHART &
                                    SULLIVAN, LLP

14

15                                     By */s/ Kathleen M. Sullivan*
                                      Kathleen M. Sullivan, NY #1804624

16                                       51 Madison Ave., 22nd Floor
                                      New York, NY 10010

17                                     (212) 849-7000

18                                     *kathleensullivan@quinnemanuel.com*

19

20

21

22

23

24

25

26

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

By  */s/ Brian C. Cannon*
    Brian C. Cannon, CA #193071
    555 Twin Dolphin Drive, 5th Floor
    Redwood Shores, CA 94065
    (650) 801-5000
    *briancannon@quinnemanuel.com*

By  */s/ William C. Price*
    William C. Price, CA #108542
    865 S. Figueroa Street, 10th Floor
    Los Angeles, CA 90017
    (213) 443-3000
    *williamprice@quinnemanuel.com*

***Attorneys for Motorola Solutions, Inc., Motorola Mobility LLC and General Instrument Corp.***

**CERTIFICATE OF SERVICE**

1

2        I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court
using the CM/ECF system which will send notification of such filing to the following:

3

4            Arthur W. Harrigan, Jr., Esq.
             Christopher T. Wion, Esq.
5            Shane P. Cramer, Esq.
             Calfo Harrigan Leyh & Eakes LLP
6            *arthurh@calfoharrigan.com*
             *chrisw@calfoharrigan.com*
7            *shanec@calfoharrigan.com*

8            Richard A. Cederoth, Esq.
             Brian R. Nester, Esq.
9            David T. Pritikin, Esq.
             Douglas I. Lewis, Esq.
10           John W. McBride, Esq.
             William H. Baumgartner, Jr., Esq.
11           David C. Giardina, Esq.
             Carter G. Phillips, Esq.
12           Constantine L. Trela, Jr., Esq.
             Ellen S. Robbins, Esq.
13           Nathaniel C. Love, Esq.
             Sidley Austin LLP
14           *rcederoth@sidley.com*
             *bnester@sidley.com*
15           *dpritikin@sidley.com*
             *dilewis@sidley.com*
16           *jwmcbride@sidley.com*
             *wbaumgartner@sidley.com*
17           *dgiardina@sidley.com*
             *cphillips@sidley.com*
18           *ctrela@sidley.com*
             *erobbins@sidley.com*
19           *nlove@sidley.com*

20           T. Andrew Culbert, Esq.
21           David E. Killough, Esq.
             Microsoft Corp.
22           *andycu@microsoft.com*
             *davkill@microsoft.com*
23

       DATED this 3rd day of July, 2013.
24

                                              /s/ *Marcia A. Ripley*
25                                    _____
                                              Marcia A. Ripley
26

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 27
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001