The Honorable James L. Robart

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION, a Washington corporation,

                              Plaintiff,

        v.

MOTOROLA, INC., and MOTOROLA MOBILITY LLC, and GENERAL INSTRUMENT CORPORATION,

                              Defendants.

CASE NO. C10-1823-JLR

DEFENDANTS' MOTION TO EXCLUDE AND STRIKE TESTIMONY OF TODD MENENBERG

**NOTED ON MOTION CALENDAR:**
**Wednesday, July 31, 2013 at 10:00 a.m.**

**REDACTED**

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## I.      PRELIMINARY STATEMENT

Motorola respectfully requests that this Court preclude Microsoft's proposed witness, Todd M. Menenberg, from testifying as an expert at trial.  Menenberg's opinions do not satisfy the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 508 U.S. 579 (1993).  In particular, in his report, he purports to be an accounting expert and he adds up the legal costs and relocation costs incurred by Microsoft, providing a sum total that Microsoft may wish to rely on as damages.  However, Mr. Menenberg provides no expertise:  he simply adds up numbers provided to him by others.  The simple math he performed is not based on any special knowledge and therefore is not helpful to the jury.  Moreover, he simply calculated total costs and did not tie them to the specific conduct which Microsoft contends is a breach of contract.  Thus, his calculations are not helpful to the finder of fact in trying to determine whether Microsoft satisfied the damages element of its breach of contract claims.

Menenberg's opinions should also be barred because they are based upon an unreliable methodology and violate the well-established advocate-witness rule.  Menenberg purports to calculate the total attorney fees and litigation costs incurred based upon work that Microsoft trial counsel Sidley Austin did defending against Motorola's claims of SEP infringement.  The numbers that he uses to make these calculations, however, are not in the law firm invoices as they are kept in the ordinary course of business.  Rather, Microsoft had a Sidley partner *create* new versions of those invoices—in many cases years after they were issued—that purportedly reflect the percentage of each task that should be allocated to defending against Motorola's SEP infringement claims.  Menenberg should not be permitted to offer opinions based upon facts of which only Microsoft's trial counsel has personal knowledge.

Lastly, if Menenberg is permitted to testify at trial despite these issues, he should be precluded from offering opinions that were not disclosed in his expert report in accordance with Rule 26.

01980.62689/5401713.1 DEFENDANTS' MOTION TO EXCLUDE
AND STRIKE TESTIMONY OF TODD MENENBERG - 1
CASE NO. C10-1823-JLR

4827-0689-6916.1

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

## II.      STATEMENT OF FACTS

**A.     Microsoft Serves an Expert Report From Menenberg That Calculates the Total Amount of Damages Claimed.**

On May 29, 2013, Microsoft served a report from Todd M. Menenberg, Managing Director at Navigant Consulting, Inc.  (Ex. A.)[1]  Microsoft's counsel retained Mr. Menenberg to "quantify the legal costs . . . incurred by Microsoft and that Microsoft contends were incurred as a consequence of Defendants' breaches of contracts," and to "quantify the costs incurred by Microsoft in connection with the relocation" of its EMEA distribution facility as well as "Microsoft's increased costs resulting from operating its distribution center in the Netherlands." (Ex. A, 4; Ex. B, 23:17-24:23.)

Menenberg opined that Microsoft paid at least ███████ in attorney fees and related litigation expenses (hereinafter "legal costs") "as a result, according to Microsoft, of Motorola's alleged breaches of contract."  (Ex. A, 6.)  He further broke that total down into the totals paid to five law firms retained by Microsoft.  (*Id.*, 7.)  Menenberg did not opine that the attorney fees and related litigation expenses were *caused* by Motorola's alleged breach of contract.  (*See generally id.*; Ex. B, 68:13-17.)  He also did not opine on the legal costs incurred as a result of Motorola sending the October 2010 letters, Motorola seeking injunctive relief, Motorola failing to enter into a license with Marvell, or Motorola failing to offer a license on Google's MPEG LA terms.  (*See generally* Ex. A; Ex. B, 101:19-104:4.)  He similarly did not opine on the legal costs incurred as a result of Motorola's alleged breach of its purported contract with the IEEE, and the legal costs incurred as a result of Motorola's alleged breach of its purported contract with the ITU.  (*See generally* Ex. A; Ex. B, 104:12-16.)

Menenberg also opined that Microsoft incurred damages of ███████ in relocation costs and increased facility operating costs (hereinafter "relocation costs") "as a result, according to Microsoft, of Motorola's alleged breaches of contract."  (Ex. A, 19.)  He further broke that total

---

[1] Unless otherwise specified, all exhibits referenced are attached to the Declaration of Andrea Pallios Roberts, filed concurrently herewith.

01980.62689/5401713.1 DEFENDANTS' MOTION TO EXCLUDE
AND STRIKE TESTIMONY OF TODD MENENBERG - 2
CASE NO. C10-1823-JLR

4827-0689-6916.1

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:    (206) 676-7001

down into subtotals for relocation costs and facility operating costs, as well as the categories of costs that make up those subtotals.  (*Id.*, 19-28.)  Menenberg did not opine that the relocation costs were *caused* by Motorola's alleged breach of contract.  (*See generally id.*)  He also did not opine on the relocation costs incurred as a result of Motorola sending the October 2010 letters, Motorola failing to enter into a license with Marvell, or Motorola failing to offer a license on Google's MPEG LA terms.  (*See generally* Ex. A; Ex. B, 179:7-24.)  He similarly did not opine on the relocation costs incurred as a result of Motorola's alleged breach of its purported contract with the IEEE as distinct from the relocation costs incurred as a result of Motorola's alleged breach of its purported contract with the ITU.  (*See generally* Ex. A; Ex. B, 179:25-180:5.)

**B.**    **Menenberg's "Methodology" Consisted of Data Entry and Simple Arithmetical Calculations.**

Menenberg explained in his report how he calculated the legal costs and relocation costs incurred.  For the legal costs, Menenberg relied on information contained in the invoices of the five law firms Microsoft retained—Sidley Austin LLP, Freshfields Bruckhaus Deringer LLP, Boehmert & Boehmert LLP, Klarquist Sparkman LLP, and Calfo Harrigan Leyh & Eakes LLP— as well as, in some instances, Microsoft's internal legal reporting system.  (Ex. A, 7; Ex. B, 27:21-28:13, 28:17-24)  He and his team created a Microsoft Excel data entry template and then entered into that template the information contained in the various invoices, such as the employee bill rates, hours billed, date billed, etc.  (Ex. A, 9-18; Ex. B, 48:2-49:2, 49:9-13, 82:21-83:7, 84:24-85:17, 85:23-86:13, 86:14-87:19.)  His team entered the data as it appeared on the invoices or other documentation.  (Ex. B, 48:2-49:2, 49:9-13, 82:21-83:7, 84:24-85:17, 85:23-86:13, 86:14-87:19.)  After the data was entered, Excel calculated the total fees and costs incurred.  (Ex. A, 9-18; Ex. B, 51:16-21, 83:11-14, 84:24-85:17, 85:23-86:13, 86:14-87:19.)  Menenberg confirmed in deposition that he did not perform any expert analysis in making these calculations, other than clerical review for errors.[2]  (Ex. B, 57:2-12, 83:15-84:1, 84:24-85:20, 85:23-86:13, 86:14-87:19.)

---

[2] Microsoft may argue that Mr. Menenberg did perform some analysis.  But, the only "analysis" he performed was to look for obvious errors in the time entries and data entry, such as a time keeper billing more than 24 hours in one

01980.62689/5401713.1 DEFENDANTS' MOTION TO EXCLUDE
AND STRIKE TESTIMONY OF TODD MENENBERG - 3
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

4827-0689-6916.1

For the relocation costs, Menenberg similarly relied upon data in documents such as invoices and purchase orders to calculate the total costs.  (Ex. A, 20; Ex. B, 105:10-107:14.)  In this case, he had discussions with counsel and Microsoft employees to ensure that he was satisfied with the documentary back-up for each cost.  (Ex. B, 105:10-107:14.)  He explained that this was "a lot of work."  (*Id.*)  But, ultimately, as with the legal costs, his opinion is based upon calculating totals from invoices, purchase orders, and other similar types of documents.  (*Id.*)

## C.     Menenberg Relies on Evidence Created by Trial Counsel.

Menenberg explained in his report that he received a second copy of the invoices from Sidley Austin that included color-coded highlighting added to individual task entries.  (Ex. A, 10.)  According to Menenberg, the highlighting was done by Sidley Austin and the various highlight colors corresponded to an allocation percentage.  (*Id.*)  He explained "that the highlighting was performed by Sidley Austin, under the direction of Microsoft, based on Sidley Austin's understanding of the work performed and what portion of that work Microsoft contends was . . . performed as a consequence of the alleged breaches of contract."  (*Id.*; *see also* Ex. B, 57:16-59:10.)  In other words, for a particular task entry on a Sidley invoice, Sidley determined what percentage of that task was attributable to defending against Motorola's SEP infringement claims.  Sidley identified that percentage by highlighting the time entry and using a color-coded system.  For example, yellow highlighting indicated that Sidley attributed 80% of a particular task to defending against Motorola's SEP infringement actions.  Menenberg and his team relied on Sidley's percentage allocations and entered them into the Excel spreadsheet to calculate the total amount of legal costs incurred as a result of Motorola's alleged breach of contract.  (Ex. A, 10-11; Ex. B, 68:18-23.)

The highlighted invoices that Menenberg relied upon were created by Sidley partner Ellen Robbins, who in the spring of 2013 reviewed the Sidley invoices from November 2010 through

---

day, entering an incorrect decimal point into the Excel database, or describing a task that was clearly for another case. This, however, does not require any specialized knowledge.

01980.62689/5401713.1 **DEFENDANTS' MOTION TO EXCLUDE AND STRIKE TESTIMONY OF TODD MENENBERG - 4 CASE NO. C10-1823-JLR**

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

4827-0689-6916.1

the spring of 2013 to determine the percentage of each task purportedly attributable to defending against Motorola's SEP infringement claims.  (Ex. B, 67:17-68:1; Ex. C, 125:14-23.)  Ms. Robbins' work was based exclusively on her review of the timekeepers'[3] time entries and her personal knowledge of the cases; she did not review any other documents or confer with any of the timekeepers about their time entries.  (Ex. C, 122:5-123:5.)  According to Mr. Killough, Microsoft's in-house counsel and 30(b)(6) witness on this topic, if Ms. Robbins, using some unknown criteria, deemed a billing entry sufficiently specific for her to allocate on some basis other than a patent-counting basis, she did so.  (*Id.*, 119:12-121:13.)  But, if she determined, using some unknown criteria, that a billing entry was not sufficiently detailed, it would be discarded or a patent-counting methodology applied.  (*Id.*)  Menenberg provides as an example of the patent-counting methodology used by Ms. Robbins that, in connection with the ITC-752 action initiated by Motorola, Motorola asserted five patents, four of which were SEPs.  (Ex. A, 10.)  "Accordingly, certain legal costs relating to the case as a whole were allocated at 80% (i.e. 4/5)."  (*Id.*)

Menenberg confirmed that the reason why it was purportedly necessary for Ms. Robbins to perform these allocations is because for nearly two years after filing this lawsuit, Sidley billed its work on *all* Microsoft v. Motorola and Motorola v. Microsoft matters to one matter.  (Ex. B, 62:10-25; Ex. C, 49:15-51:5.)  This included cases in which Motorola alleged that Microsoft infringed its 802.11 and/or H.264 SEPs, as well as cases in which Motorola asserted only non-essential patents against Microsoft and cases in which *Microsoft* asserted patents against Motorola.  (Ex. B, 66:6-67:15 ; Ex. C, 49:15-51:5.)  For example, before Microsoft filed the present case, it filed a patent infringement suit against Motorola in the ITC (the ITC 744 action), and Sidley's work on *that* case was included on the same bills as the cases for which Microsoft claims damages

---

[3] Exhibit 3a to Mr. Menenberg's report identifies the timekeepers by name.  There are over ▮▮ unique timekeepers on this list.  Some names appear more than once because they had different billing rates over the course of the case.  But, adjusting for that, there are over ▮▮ individuals listed.

01980.62689/5401713.1  DEFENDANTS' MOTION TO EXCLUDE
AND STRIKE TESTIMONY OF TODD MENENBERG - 5
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

4827-0689-6916.1

from Motorola in this case.  (Ex. C., 114:11-17.)  Indeed, work on that case was often included in the very same time entries as work on cases in which Motorola asserted its SEPs.  (*See e.g.*, Ex. B, Ex. 2 at MS-MOTO_1823_0006003911A (task entries referencing work on both the ITC 744 and 752 actions), MS-MOTO_18230006003918 (same).)

Menenberg did not develop the patent-counting methodology used by Sidley and was not involved in discussions regarding whether to use it.  (Ex. B, 59:21-25.)  In fact, he confirmed that it would have been preferable if these allocations were made closer in time to when the work was actually performed.  (*Id.*, 68:2-12.)  He and his team did not do anything to check or confirm that the allocations made by Ms. Robbins to the Sidley invoices were done correctly.  (*Id.*, 62:2-9, 68:24-69:2.)  He "accepted those allocations as given to" him.  (*Id.*, 69:2.)  Nor could he have checked that the allocations were done correctly because he did not do anything to educate himself on the different litigations between the parties, those cases Microsoft is seeking to recover legal costs for in this action, and the patents at issue in each case.  (*Id.*, 63:1-65:12.)  Thus, Menenberg confirmed that if there are errors in the allocations, then the totals in his report are incorrect.  (*Id.*, 69:15-18.)

Indeed, when asked in deposition why certain time entries were allocated as they were, Menenberg could not provide an explanation.  (*Id.*, 71:20-80:23, Exs. 2-6.)  For example, Menenberg could not explain why Sidley allocated 100% of a time entry for ███████████ ████████████████████████████████████████████████████ to defending against Motorola's SEP infringement claims, when the 1408 action does not involve any Motorola SEPs.  (*Id.*, 73:14-25, Ex. 3 at MS-MOTO_1823_0006001489B.)  He similarly could not explain why Sidley allocated 100% of a time entry for assisting with deposition preparation in the ████████████████████████ to defending against Motorola's SEP infringement claims, when neither the Southern District of Florida nor ITC 744 actions involved any Motorola SEPs.  (*Id.*, 76:10-77:16, Ex. 5 at MS-MOTO_1823_0006002355B.)  He also had no explanation for why Sidley allocated 100% of a litigation expense associated with travel for the

01980.62689/5401713.1  DEFENDANTS' MOTION TO EXCLUDE
AND STRIKE TESTIMONY OF TODD MENENBERG - 6
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

4827-0689-6916.1

1   deposition of Matt Lynde on July 20-21, 2011 to defending against Motorola's SEP infringement

2   claims, when Mr. Lynde was deposed in the Southern District of Florida matter on July 21, 2011

3   and that matter does not involve any Motorola SEPs.  (*Id.*, 77:19-80:23, Ex. 5 at MS-

4   MOTO_1823_0006002500B, Ex. 6.)

5          Menenberg also created Exhibit 5 of his report to summarize the Sidley attorney fees and

6   costs incurred for various subjects:  the German litigation, the anti-suit injunction and Ninth

7   Circuit appeal, and the three H.264 patents in the 1823 action.  (Ex. A, Ex. 5; Ex. B, 96:18-23.)

8   To calculate these totals, he relied on highlighted Sidley invoices that had the numbers 1, 2, and 3

9   added next to certain task entries,  apparently to reflect different subject matters.  (Ex. B, 97:6-18.)

10  Not all tasks, however, were divided into these three subject matters.  Menenberg does not know

11  the methodology used to identify which tasks fall into each subject matter, other than that Ms.

12  Robbins performed those allocations, and did not do anything to determine how those tasks were

13  allocated.  (*Id.*, 98:14-20, 100:24-101:10.)

### III.    ARGUMENT

15         Under Rule 702 of the Federal Rules of Evidence, an expert may testify only if "(a) the

16  expert's scientific, technical, or other specialized knowledge will help the trier of fact to

17  understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient

18  facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert

19  has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.

20  Expert testimony is inadmissible if it does not meet these requirements.  *Daubert v. Merrell Dow*

21  *Pharm., Inc.*, 508 U.S. 579, 589-91 (1993).  The proponent of the expert testimony must prove

22  that the elements of Rule 702 have been met.  *Id.* at 592 n.10.  While courts have broad discretion

23  in deciding whether this standard has been met, a court may not shirk its gatekeeper duties.  *Smith*

24  *v. Ceva Logistics U.S. Inc.*, 2011 WL 3204682, *7 (C.D. Cal. July 25, 2011) (citing *General Elec.*

25  *Co. v. Joiner*, 522 U.S. 136, 142 (1997)).  Menenberg's proposed testimony does not meet either

26  of these requirements.

01980.62689/5401713.1 DEFENDANTS' MOTION TO EXCLUDE
AND STRIKE TESTIMONY OF TODD MENENBERG - 7
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

4827-0689-6916.1

**A.    Menenberg's Testimony Is Not Based on Specialized Knowledge or Helpful to the Trier of Fact.**

To be admissible under Fed. R. Evid. 702, an expert's testimony "must be directed to matters within the witness' scientific, technical, or specialized knowledge and not to lay matters which a jury is capable of understanding and deciding without the expert's help." *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989) (citations omitted).  Rule 702 excludes expert testimony on matters "within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance."  *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986).

**1.    Menenberg's Report Is Not Based on Expert Knowledge.**

"Simple arithmetical calculations [are] not an appropriate subject for expert testimony under Rule 702" because they do not qualify as "scientific, technical, or other specialized knowledge."  *Shapiro v. Art Leather, Inc. (In re Connolly N. Am., LLC)*, 398 B.R. 564, 576 (Bankr. E.D. Mich. 2008); *see also Schiller & Schmidt v. Nordisco Corp.*, 969 F.2d 410, 415 (7th Cir. 1992) (stating that "the enduring of simplistic extrapolation and childish arithmetic with the appearance of authority by hiring a professor to mouth damages theories that make a joke of the concept of expert knowledge" is insufficient for establishing expert testimony).  Simple calculations do not "'assist the trier of fact to understand the evidence or to determine a fact in issue,' as required under Fed. R. Evid 702."  *Shapiro*, 398 B.R. at 576.  Expert testimony in "an area in which the jury was not in need of expert assistance, is not a proper subject for expert testimony."  *Andrews*, 882 F.2d at 708.

Here, Menenberg's opinion is limited to performing simple arithmetical calculations.  For both the legal costs and relocation costs, Menenberg's role was to perform data entry to compile information on the invoices and purchase orders provided to him into an Excel database, and then Excel calculated the total amounts that are Menenberg's opinions.  Indeed, Menenberg admitted that he relied on the information in the invoices.  He admitted: "***My role was to compile those costs and do the math***."  (Ex. B, 101:11-18) (emphasis added).  In other words, he did no work

1   requiring expertise.  His calculations are straightforward and require only simple math.  Therefore,

2   Menenberg's testimony is unnecessary to assist the jury in understanding any issues in the case.

3         **2.**        **Menenberg's Opinions Are Unhelpful To The Jury Because They Do Not Distinguish Among Microsoft's Various Breach Theories.**

4         Menenberg opines on the total legal and relocation costs allegedly incurred.  In this

5   litigation, Microsoft contends that Motorola breached two contracts, each in any of five different

6   ways.  (*See* Ex. D.)[4]  However, Menenberg did not calculate the legal costs or relocation costs

7   incurred as a result of Motorola's alleged breach of each of the purported contracts at issue.  (Ex.

8   B, 104:8-16, 179:7-13, 179:22-180:5.)  Nor did he calculate the legal costs or relocation costs

9   incurred as a result of each of the distinct forms of conduct that Microsoft contends constitutes a

10   breach of contract.  (*Id.*, 102:10-104:4, 179:7-13, 179:22-24.)

11         Menenberg's opinions thus offer no assistance to the jury in determining the amount of

12   damages, if any, attributable to each different theory of breach of contract Microsoft alleges.  If,

13   for example, one or more of Microsoft's breach theories is dismissed on summary judgment, there

14   is no way for the jury to know which legal costs and relocation costs, if any, remain.  Similarly, if

15   the jury finds that Microsoft has not met its burden of proof as to one or more of breach theory,

16   there is no way for the jury to know which legal costs and relocation costs, if any, remain.

17   Menenberg's calculations are nothing more than multi-million dollar numbers to flash before the

18   jury, but his calculations cannot assist the jury in allocating any damages to any particular breach

19   of contract theory Microsoft might prove at trial.

20   **B.**      **Menenberg's Opinions Are Based Upon Unreliable, Flawed Data.**

21         **1.**        **For the Sidley Invoices, Menenberg Relied Entirely Upon the Data Provided by and *Created* by Microsoft's Counsel.**

22         Courts have expressed skepticism about the reliability of expert reports when experts rely

23   heavily on information provided by counsel for the party offering the expert.  *See, e.g., Rojas v.*

---

24       [4] To the extent that Motorola understands Microsoft's claims, Microsoft asserts that Motorola breached its

25   obligations to the IEEE and ITU by:  (1) sending the October letters offering to license its 802.11 and H.264 SEPs, (2) seeking injunctive relief for infringement of its SEPs, (3) failing to enter into a license with Marvell, (4) failing to

26   offer a license on Google's MPEG LA terms, and (5) collectively doing all of the above as well as other acts.

01980.62689/5401713.1 DEFENDANTS' MOTION TO EXCLUDE
AND STRIKE TESTIMONY OF TODD MENENBERG - 9
CASE NO. C10-1823-JLR

4827-0689-6916.1

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

*Marko Zaninovich, Inc.*, 2011 WL 4375297, *4 (E.D. Cal. Sept. 19, 2011) (criticizing expert report in part because "his information on the topic was, in essence, the attorneys' interpretation of the meaning of the pay code"); *Johnson v. Big Lots Stores, Inc.*, 2008 WL 1930681, *15 (E.D. La. April 29, 2008) (role that counsel played in directing how interviews were conducted "casts doubt on the reliability of the interviews and the gathered data.")  Here, as to the Sidley invoices, Menenberg's opinion is merely a calculation of the allocations created by Sidley partner Ms. Robbins.  He relied exclusively on the highlighted invoices with percentage allocations created by Ms. Robbins.  He did not perform any analysis of his own.  Sidley's methodology for having one partner allocate the percentages of time spent by over ▮ timekeepers to tasks defending against Motorola's SEP infringement claims, in some cases years after the work was performed, is unreliable.  The allocations have no bearing on whether, for a particular task, a greater percentage of the time was spent on non-essential patents or on SEPs.  For example, for the many entries in which the task entry referenced both the ITC 744 and ITC 752 actions, there is no support for Sidley having divided the work equally among all patents at issue.  Further, the allocations contain clear errors, examples of which are described above.  Because Sidley's allocations were unreliable, Menenberg's "methodology" of relying on them without question is inherently unreliable as well.

> ## 2.  Menenberg's Testimony Is an Improper End-Run Around the Advocate-Witness Rule.

Because Menenberg's proposed testimony relies exclusively on allocations of the Sidley invoices by Ms. Robbins, a Sidley partner, his testimony also violates the advocate-witness rule.  "The advocate-witness rule prohibits an attorney from appearing as both a witness and an advocate in the same litigation."  *United States v. Prantil*, 756 F.2d 759, 764 (9th Cir. 1985); *see* Wash. Rules of Prof. Conduct, 3.7 ("a lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness," except in narrow circumstances); ABA Rule 3.7 (same).  This rule applies "where the attorney representing the client before a jury seeks to serve as a fact witness *in that very proceeding*."  *Ramey v. District 141, Int'l Ass'n of Machinists and Aerospace*

01980.62689/5401713.1 DEFENDANTS' MOTION TO EXCLUDE
AND STRIKE TESTIMONY OF TODD MENENBERG - 10
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

4827-0689-6916.1

*Workers*, 378 F.3d 269, 282 (2d Cir. 2004) (noting "where an attorney must take the stand to represent a client, a trial judge should, in his or her discretion, avoid any problems simply by requiring the party to retain new counsel"). Thus, Ms. Robbins herself is barred from being both a trial witness and trial counsel.

Although Microsoft apparently does not intend to call Ms. Robbins as a testifying witness with respect to legal costs,[5] Menenberg is merely a mouthpiece for the fact testimony that only Ms. Robbins has the personal knowledge to provide. The allocations represent Sidley's own testimony regarding the percentage of fees and costs proximately *caused* by Motorola's alleged breach of contract. Thus, the testimony goes beyond merely "the nature and value of legal services rendered in the case." *See* Wash. Rules of Prof. Conduct, 3.7 (identifying this as an exception to the advocate-witness rule); ABA Rule 3.7 (same). Menenberg did not perform any analysis of his own and simply tallied the numbers in the documentation created by trial counsel. He could not explain the basis for the allocations and did nothing to determine if they were done correctly. Thus, his opinions are based upon untested and unreliable evidence created by Microsoft's own trial counsel. Microsoft should not be permitted to avoid the advocate-witness rule by having Menenberg testify regarding the facts pertaining to damages causation that were created by Ms. Robbins.[6]

**C.     Menenberg Should Be Precluded From Offering Opinions Not Included in His Report.**

Rule 26 of the Federal Rules of Civil Procedure requires parties to designate expert witnesses and disclose expert reports which "contain . . . a complete statement of all opinions the witness will express and the basis and reasons for them . . . ." Fed. R. Civ. P. 26(a)(2)(B)(i). Rule 37 further provides: "[i]f a party fails to provide information . . . as required by Rule 26[,] . . . the party is not allowed to use that information  . . . at a trial, unless the failure was substantially

---

[5] Microsoft has not disclosed Ms. Robbins on its Initial Disclosures.

[6] Separate and apart from the violation of the advocate-witness rule, allowing an expert like Mr. Menenberg to testify about the total amounts allocated to defending against Motorola's SEP infringement claims may lead the jury to mistakenly believe that the methodology used by Ms. Robbins and Sidley was more reliable than it was.

---

01980.62689/5401713.1 DEFENDANTS' MOTION TO EXCLUDE
AND STRIKE TESTIMONY OF TODD MENENBERG - 11
CASE NO. C10-1823-JLR

4827-0689-6916.1

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

justifies or is harmless." Fed. R. Civ. P. 37(c)(1).  "Rule 37(c)(1) gives teeth to [the Rule 26] requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).  A court may limit expert witness testimony to matters disclosed in reports.  *See Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782-84 (6th Cir. 2003) (upholding trial court's decision to limit expert's testimony to matters disclosed in report).

Menenberg's report did not include opinions regarding whether the methodology used to allocate the work performed by the Sidley firm to defending against Motorola's SEP infringement claims was reliable, or whether Motorola's alleged conduct caused Microsoft to relocate the EMEA distribution facility.  (*See generally*, Ex. A.)  Menenberg confirmed in his deposition that he did not include any such opinions in his report.  (Ex. B, 61:16-19, 175:25-176:1.)  Yet, when asked in deposition to confirm whether he had an opinion on these issues, he stated that he did.  (*Id.*, 60:25-61:3, 175:16-24.)  This Court should preclude Menenberg from testifying at trial regarding these new opinions because they were not included in Menenberg's expert report as required by Rule 26.

## IV.    CONCLUSION

For the foregoing reasons, Motorola respectfully requests that this Court preclude Mr. Menenberg from testifying at trial, and at a minimum preclude him from testifying on new theories not contained in his expert report.

01980.62689/5401713.1 DEFENDANTS' MOTION TO EXCLUDE
AND STRIKE TESTIMONY OF TODD MENENBERG - 12
CASE NO. C10-1823-JLR

4827-0689-6916.1

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

DATED this 3rd day of July, 2013.

Respectfully submitted,

SUMMIT LAW GROUP PLLC

By */s/ Ralph H. Palumbo*
By */s/ Philip S. McCune*
    Ralph H. Palumbo, WSBA #04751
    Philip S. McCune, WSBA #21081
    *ralphp@summitlaw.com*
    *philm@summitlaw.com*

By */s/ Thomas V.  Miller*
    Thomas V. Miller
    MOTOROLA MOBILITY LLC
    600 North U.S. Highway 45
    Libertyville, IL  60048-1286
    (847) 523-2162

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By */s/ Kathleen M. Sullivan*
    Kathleen M. Sullivan, NY #1804624
    51 Madison Ave., 22nd Floor
    New York, NY 10010
    (212) 849-7000
    *kathleensullivan@quinnemanuel.com*

By */s/ Brian C. Cannon*
    Brian C. Cannon, CA #193071
    555 Twin Dolphin Drive, 5th Floor
    Redwood Shores, CA 94065
    (650) 801-5000
    *briancannon@quinnemanuel.com*

By */s/ William C. Price*
    William C. Price, CA #108542
    865 S. Figueroa Street, 10th Floor
    Los Angeles, CA 90017
    (213) 443-3000
    *williamprice@quinnemanuel.com*

01980.62689/5401713.1 DEFENDANTS' MOTION TO EXCLUDE
AND STRIKE TESTIMONY OF TODD MENENBERG - 13
CASE NO. C10-1823-JLR

4827-0689-6916.1

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

*Attorneys for Motorola Solutions, Inc.,*
*Motorola Mobility LLC and General*
*Instrument Corp.*

01980.62689/5401713.1 DEFENDANTS' MOTION TO EXCLUDE
AND STRIKE TESTIMONY OF TODD MENENBERG - 14
CASE NO. C10-1823-JLR

4827-0689-6916.1

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Arthur W. Harrigan, Jr., Esq.
Christopher T. Wion, Esq.
Shane P. Cramer, Esq.
Calfo Harrigan Leyh & Eakes LLP
*arthurh@calfoharrigan.com*
*chrisw@calfoharrigan.com*
*shanec@calfoharrigan.com*

Richard A. Cederoth, Esq.
Brian R. Nester, Esq.
David T. Pritikin, Esq.
Douglas I. Lewis, Esq.
John W. McBride, Esq.
William H. Baumgartner, Jr., Esq.
David C. Giardina, Esq.
Carter G. Phillips, Esq.
Constantine L. Trela, Jr., Esq.
Ellen S. Robbins, Esq.
Nathaniel C. Love, Esq.
Sidley Austin LLP
*rcederoth@sidley.com*
*bnester@sidley.com*
*dpritikin@sidley.com*
*dilewis@sidley.com*
*jwmcbride@sidley.com*
*wbaumgartner@sidley.com*
*dgiardina@sidley.com*
*cphillips@sidley.com*
*ctrela@sidley.com*
*erobbins@sidley.com*
*nlove@sidley.com*

T. Andrew Culbert, Esq.
David E. Killough, Esq.
Microsoft Corp.
*andycu@microsoft.com*
*davkill@microsoft.com*

DATED this 3rd day of July, 2013.

/s/ *Marcia A. Ripley*
Marcia A. Ripley

01980.62689/5401713.1 DEFENDANTS' MOTION TO EXCLUDE
AND STRIKE TESTIMONY OF TODD MENENBERG - 15
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

4827-0689-6916.1