HONORABLE JAMES L. ROBART

1

2

3

4

5

6

7

8

9

10

11

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

12

MICROSOFT CORPORATION,

Plaintiff,

13

v.

14

MOTOROLA INC., et al.,

15

Defendant.

16

MOTOROLA MOBILITY, INC., et al.,

17

Plaintiffs,

18

v.

19

MICROSOFT CORPORATION,

20

Defendant.

No. C10-1823-JLR

MICROSOFT'S RULE 702 MOTION
TO PRECLUDE TESTIMONY BY
MOTOROLA'S EXPERTS

**Noted: July 31, 2013 at 10:00 AM**

**ORAL ARGUMENT REQUESTED**

21

22

23

24

25

26

MICROSOFT'S RULE 702 MOTION TO
PRECLUDE TESTIMONY BY MOTOROLA'S
EXPERTS

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

LEGAL STANDARD ...................................................................................................... 2

ARGUMENT..................................................................................................................... 4

I.   RICHARD HOLLEMAN'S TESTIMONY SHOULD BE SUBSTANTIALLY
     EXCLUDED ............................................................................................................ 4

     A.   Holleman's Legal Interpretation of the RAND Commitment Is Inadmissible. ............ 4

     B.   Holleman's Attempts To Undermine Prior Rulings Should Be Excluded.................... 6

     C.   Holleman's "Good-Faith" And "No Breach" Testimony Is Inadmissible..................... 7

     D.   Scope Of Requested Relief As To Holleman.............................................................. 8

II.  PORTIONS OF GREGORY LEONARD'S TESTIMONY SHOULD BE EXCLUDED. . 9

     A.   Leonard's Legal Conclusions Contradicting the Court's Prior Rulings Should Be
          Excluded........................................................................................................... 9

     B.   Leonard's "Good-Faith" Testimony Is Inadmissible. ................................................ 11

     C.   Scope Of Requested Relief As To Leonard. ............................................................. 11

III. MAXIMILIAN HAEDICKE'S TESTIMONY SHOULD BE EXCLUDED ................... 12

     A.   Haedicke's Orange Book Testimony Should Be Excluded. ........................................ 12

     B.   Haedicke's German Fee-Shifting Testimony Should Be Excluded............................. 16

     C.   Scope Of Requested Relief As To Haedicke. ........................................................... 17

IV.  BRADLEY KELLER'S TESTIMONY SHOULD BE EXCLUDED. ............................. 17

     A.   Keller Is Not Qualified To Render An Opinion On The Attorneys Fees Microsoft Is
          Seeking To Recover As Damages........................................................................... 18

     B.   Keller's Testimony Is Based On An Unreliable Methodology Applied To Insufficient
          Facts. ............................................................................................................... 19

     C.   Keller's Opinions Would Not Assist the Jury In Determining Any Fact At Issue. ..... 21

     D.   Keller's Legal Opinions Should Be Excluded. ......................................................... 22

     E.   Scope Of Requested Relief As To Keller. ............................................................... 24

MICROSOFT'S RULE 702 MOTION TO
PRECLUDE TESTIMONY BY MOTOROLA'S
EXPERTS

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

CONCLUSION .......................................................................................................... 24

MICROSOFT'S RULE 702 MOTION TO
PRECLUDE TESTIMONY BY MOTOROLA'S
EXPERTS

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aguilar v. Int'l Longshoremen's Union Local No. 10*,
    966 F.2d 443 (9th Cir. 1992) ...................................................................3, 6, 22

*Avila v. Willits Environmental Remediation Trust*,
    633 F.3d 828 (9th Cir. 2011) ...........................................................................3

*Common Cause v. Jones*,
    235 F. Supp. 2d 1076 (C.D. Cal. 2002) .......................................................18, 20

*Cornhusker Casualty Ins. Co. v. Kachman*,
    Nos. 3:05–cv–05026–RBL, 2:09–cv–00273–RBL, 2009 WL 2853119
    (W.D. Wash. Sept. 1, 2009) ............................................................................19

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)...........................................................................2, 15, 18

*Edwards v. Tobin*,
    No. 96-2237, 1998 WL 123060 (4th Cir. 1998) ...................................................20

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ............................................................................2

*Elsayed Mukhtar v. California State Univ., Hayward*,
    299 F.3d 1053 (9th Cir. 2002) ..................................................................2, 3, 8, 11

*Hangarter v. Provident Life & Accident Ins. Co.*,
    373 F.3d 998 (9th Cir. 2004) ..................................................................3, 4, 7, 11

*In re Parsons*,
    No. 7-09-15382JR, 2010 WL 3547601 (Bankr. D.N.M. Sept. 9, 2010) .................22

*In re Terex Corp.*,
    70 B.R. 996 (Bankr. N.D. Ohio 1987)................................................................22

*Klaczak v. Consol. Med. Transp. Inc.*,
    No. 96 C 6502, 2005 WL 1564981 (N.D. Ill. May 26, 2005) ...........................4, 11

*LuMetta v. U.S. Robotics, Inc.*,
    824 F.2d 768 (9th Cir. 1987) ............................................................................19

MICROSOFT'S RULE 702 MOTION TO
PRECLUDE TESTIMONY BY MOTOROLA'S
EXPERTS

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

*Lust v. Merrell Dow Pharms., Inc.*,
  89 F.3d 594 (9th Cir. 1996) ........................................................................3

*Marx & Co., Inc. v. Diners' Club, Inc.*,
  550 F.2d 505 (2d Cir. 1977) .......................................................................3

*Nationwide Transport Finance v. Cass Info. Sys., Inc.*,
  523 F.3d 1051 (9th Cir. 2008) ...............................................................3, 22

*Pinal Creek Group v. Newmont Mining Corp.*,
  352 F. Supp. 2d 1037 (D. Ariz. 2005) ........................................................3

*SEC v. Life Wealth Mgmt., Inc.*,
  No. CV 10-4769 RSWL, 2013 WL 1660860 (C.D. Cal. April 17, 2013) ...................4, 7, 11

*Specht v. Jensen*,
  853 F.2d 805 (10th Cir. 1988) ..................................................................24

*Trident Seafoods Corp. v. Commonwealth Ins. Co.*,
  850 F. Supp. 2d 1189 (W.D. Wash. 2012)....................................................3

*United States v. Hankey*,
  203 F.3d 1160 (9th Cir. 2000) ..................................................................18

*Whisnant v. United States*,
  No. C03-5121 FDB, 2006 WL 2927732 (W.D. Wash. Oct. 11, 2006) ..............3, 21

**RULES**

Fed. R. Evid. 403 ...........................................................................................23

Fed. R. Evid. 702 ....................................................................................passim

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

## **INTRODUCTION**

2      Pursuant to Federal Rule of Evidence 702, Microsoft hereby moves to exclude

3   testimony from Motorola's expert witnesses Richard Holleman, Gregory Leonard, Maximilian

4   Haedicke, and Bradley Keller.  Motorola's proposed expert testimony suffers from four serious

5   flaws.  First, Motorola plans to contradict or undermine the Court's prior rulings through

6   expert testimony from Holleman, Leonard, and Haedicke.  Holleman insists that Motorola's

7   RAND commitment is nothing more than a promise to negotiate, and that it was Microsoft that

8   failed to negotiate by filing suit.  Along similar lines, Leonard claims that because Microsoft

9   filed suit instead of negotiating, the Court and the jury cannot evaluate whether Motorola's

10   conduct violated the duty of good faith and fair dealing.  And Haedicke maintains Microsoft

11   should have subjected itself to further Orange Book proceedings in Germany, even though that

12   question has already been answered by the Court (and the Ninth Circuit) in the negative, and

13   even though those proceedings allowed Motorola to reject an offer from Microsoft that, in light

14   of the Court's RAND determination, was far in excess of RAND.

15      Second, Motorola's experts plan to opine on the law—subject matter solely within the

16   province of the Court and not the proper subject of expert testimony.  Holleman offers opinions

17   on the interpretation of the contractual RAND commitment, and Keller offers an opinion on

18   the legal question of whether attorneys' fees can be recovered as damages.  Both are issues to

19   be resolved by the Court, not debated before to the jury through experts.  Also, Holleman and

20   Leonard both offer conclusive opinions on the ultimate question of Motorola's good faith that

21   are improper under Rule 702.

22      Third, Haedicke's testimony fails to satisfy Rule 702 because it will not help the jury

23   understand any other evidence or determine any fact in issue.  Haedicke insists Microsoft

24   should have followed the Orange Book procedure in Germany to avoid an injunction rather

25

26

MICROSOFT'S RULE 702 MOTION TO
PRECLUDE TESTIMONY BY MOTOROLA'S
EXPERTS - 1

1  than relocate its German distribution facility, but admitted he had no idea what the outcome of

2  that Orange Book procedure would have been.

3        Finally, Motorola plans to offer testimony from Haedicke and Keller apparently

4  intended to challenge the reasonableness of Microsoft's attorneys fees.  Haedicke has no

5  experience or expertise in the German fee-shifting statute that is the subject of his rebuttal

6  report, but more fundamentally this testimony has no relevance to any issue of liability or

7  damages—and when asked what his understanding of the relevance of this testimony was to

8  the trial, Haedicke (supposedly an independent expert) declined to answer on the grounds of

9  attorney-client privilege.  Keller intends to testify that Microsoft's fees incurred in defending

10  Motorola's actions asserted declared standard-essential patents were higher than what he

11  deems "necessary," but lacks both the relevant expertise to make that claim, and any reliable

12  factual basis for it.

13                                        **LEGAL STANDARD**

14        Federal Rule of Evidence 702 permits expert testimony if it will "help the trier of fact

15  to understand the evidence or to determine a fact in issue," and if it is based on sufficient facts

16  or data, the product of reliable principles and methods, and the result of applying those

17  principles and methods reliably to the facts of the case.  Fed. R. Evid. 702; *Daubert v. Merrell*

18  *Dow Pharms., Inc.*, 509 U.S. 579, 591–92 (1993); *Ellis v. Costco Wholesale Corp.*, 657 F.3d

19  970, 982 (9th Cir. 2011) ("[Daubert] requires a court to admit or exclude evidence based on its

20  scientific reliability and relevance.").  Rule 702's requirement that expert testimony assist the

21  fact finder in understanding the evidence or determining a fact in issue "goes primarily to

22  relevance," and "[e]xpert testimony which does not relate to any issue in the case is not

23  relevant and, ergo, non-helpful."  *Daubert*, 509 U.S. at 591 (quotation marks omitted); *see id.*

24  at 591–92 ("Rule 702's 'helpfulness' standard requires a valid scientific connection to the

25  pertinent inquiry as a precondition to admissibility."); *Elsayed Mukhtar v. California State*

26

MICROSOFT'S RULE 702 MOTION TO
PRECLUDE TESTIMONY BY MOTOROLA'S
EXPERTS - 2

*Univ., Hayward*, 299 F.3d 1053, 1063 n. 7 (9th Cir. 2002) ("Encompassed in the determination of whether expert testimony is relevant is whether it is helpful to the jury, which is the 'central concern' of Rule 702."); *Whisnant v. United States*, No. C03-5121 FDB, 2006 WL 2927732, at *2 (W.D. Wash. Oct. 11, 2006). "District judges are the gatekeeper for expert testimony to assure that it is both relevant and reliable." *Avila v. Willits Environmental Remediation Trust*, 633 F.3d 828, 836 (9th Cir. 2011). The party submitting expert evidence bears the burden of demonstrating compliance with these requirements and proving admissibility. *See Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

Under Rule 702, "an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law. Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Nationwide Transport Finance v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008), quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004); *Mukhtar*, 299 F.3d at 1065 n. 10. "Accordingly, federal courts typically prohibit lawyers, professors, and other experts from interpreting the law for the court or from advising the court about how the law should apply to the facts of a particular case." *Pinal Creek Group v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1042 (D. Ariz. 2005).

In particular, expert testimony consisting of legal conclusions regarding the meaning of a contract's terms is not admissible. *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) (affirming district court determination that expert testimony concerning the existence and interpretation of a contract would be "utterly unhelpful" and inadmissible); *Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505, 508, 510 (2d Cir. 1977) (finding error in permitting expert witness "to give his opinion as to the legal obligations of the parties under the contract," including improper testimony that "construe[d] the contract" and gave "conclusions as to the legal significance of various facts"); *Trident Seafoods Corp. v.*

MICROSOFT'S RULE 702 MOTION TO
PRECLUDE TESTIMONY BY MOTOROLA'S
EXPERTS - 3

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

*Commonwealth Ins. Co.*, 850 F. Supp. 2d 1189, 1196 (W.D. Wash. 2012) (declining to consider improper expert testimony as to legal interpretation of an insurance policy).

Additionally, while an expert witness may testify as to appropriate issues relevant to a determination of good faith, expert testimony as to the *conclusion* that a party acted in good faith is impermissible.  *Hangarter*, 373 F.3d at 1016 ("While [expert's] testimony that Defendants deviated from industry standards supported a finding that they acted in bad faith, [expert] never testified that he had reached a legal conclusion that Defendants actually acted in bad faith (i.e., an ultimate issue of law).").  *See SEC v. Life Wealth Mgmt., Inc.*, No. CV 10-4769 RSWL, 2013 WL 1660860, at *7 (C.D. Cal. April 17, 2013) (excluding expert "opinion that Defendants were unbiased and acting in good faith" because it "invades the province of the trier of fact"); *see also Klaczak v. Consol. Med. Transp. Inc.*, No. 96 C 6502, 2005 WL 1564981, at *8–10 (N.D. Ill. May 26, 2005) (excluding expert opinion on a party's state of mind because "precedent teaches that proffered expert assertions about another's subjective intent or knowledge are not helpful to the jury").

## ARGUMENT

### I.   RICHARD HOLLEMAN'S TESTIMONY SHOULD BE SUBSTANTIALLY EXCLUDED

Motorola's expert Richard Holleman offered two expert reports setting out his views concerning SSOs, RAND commitments, and Motorola's good faith.  Most of Holleman's proposed testimony is inadmissible under Rule 702.

### A.  Holleman's Legal Interpretation of the RAND Commitment Is Inadmissible.

In denying Motorola's second motion for summary judgment in October 2012, the Court observed that it had "already twice rejected Motorola's contention that Motorola's agreements with the ITU and IEEE only require it to negotiate towards a RAND license." (Dkt. No. 465, October 10, 2012 Order at 14.)  The Court explained that Motorola's commitments require *more* than just negotiation "in good faith towards RAND terms":

MICROSOFT'S RULE 702 MOTION TO
PRECLUDE TESTIMONY BY MOTOROLA'S
EXPERTS - 4

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

> [T]hose commitments go one step further and require Motorola to eventually
> grant a license on RAND terms.  Thus, the RAND license must eventually
> execute between the parties, and interminable good faith negotiation by
> Motorola will not uphold its end of the bargain.

2

3  (*Id.*)  Notwithstanding the Court's unambiguous prior legal rulings, Motorola now proposes to

4  have its expert invite the jury to reject the Court's interpretation of the RAND licensing

5  contract:  "The RAND commitment is a commitment by the patent owner to engage in good

6  faith bilateral negotiations," Wion Decl.[1] Ex. 1 (Holleman Rpt.) ¶ 30; "[T]he patent holder

7  fulfills its RAND obligation by being willing to enter into good faith negotiations with all

8  potential licensees who wish to negotiate, and attempting in good faith to reach a license on

9  RAND terms and conditions . . . Such negotiations, however, do not guarantee that the result

10  . . . will be an executed license agreement," *id.* ¶ 31; *see id.* ¶ 36 (same); ¶ 42 (same); ¶ 59

11  ("RAND commitments are simply intended to foster good faith negotiations between essential

12  patent holders and standards implementers.").  Motorola also seeks to have Holleman further

13  contradict the Court's prior rulings by suggesting to the jury that Microsoft acted improperly

14  by filing this suit.  *Compare* Holleman Rpt. ¶ 34 ("Rather than enter into good faith

15  negotiations with Motorola, Microsoft filed this lawsuit against Motorola."), ¶ 37 ("Microsoft

16  filed suit before engaging in any such negotiations with Motorola.") *with* Dkt. No. 335 June 6,

17  2012 Order at 18 ("[A] finding that negotiating in good faith is condition precedent to

18  Motorola's RAND obligations to the implementer would run contrary to the purpose of

19  Motorola's commitments to the IEEE and the ITU."), 19 ("[T]he court has determined that

20  neither applying for a license nor negotiating good faith for a license are conditions precedent

21  to Motorola's obligations to grant licenses on RAND terms.").

22          There is no justification for offering testimony that directly contradicts the Court's prior

23  rulings.  Moreover, even if Holleman were offering a novel interpretation of the RAND

24

25  _____

[1] Exhibits are attached to the Declaration of Christopher Wion in Support of Microsoft's Rule 702 Motion To
Preclude Testimony By Motorola's Experts ("Wion Decl.") filed concurrently with this motion.

26

MICROSOFT'S RULE 702 MOTION TO
PRECLUDE TESTIMONY BY MOTOROLA'S
EXPERTS - 5

1   commitment (as opposed to rehashing Motorola arguments rejected by the Court as early as

2   June 2011, *see* Dkt. No. 66 at 5), expert testimony consisting of legal conclusions regarding the

3   meaning of a contract's terms is not admissible.  *Aguilar*, 966 F.2d at 447.

4     Holleman offers the additional legal opinion that RAND licensing commitments do not

5   bar SEP holders from pursuing injunctions.  *See* Ex. 1 (Holleman Rpt.) ¶¶ 15, 21, 23, 39, 60.

6   That is a legal question, involving both the interpretation of Motorola's contractual

7   commitments, and the application of the duty of good faith and fair dealing to the RAND

8   licensing context.  On the facts of this case, the Court already has ruled that Motorola's RAND

9   licensing commitments preclude Motorola from seeking standard-essential patent injunctions

10  against Microsoft.  (Dkt. No. 607 at 18.)  The resolution of any remaining questions

11  concerning the interpretation of Motorola's RAND licensing commitments is for the Court,

12  and is not the proper subject of expert testimony.  *See Aguilar*, 966 F.2d at 447.

### B. Holleman's Attempts To Undermine Prior Rulings Should Be Excluded.

14    Holleman claims that Motorola's RAND licensing commitments do not require "the

15  patent holder to consider royalty stacking or patent pool rates in formulating its opening offer."

16  Ex. 1 (Holleman Rpt.) ¶ 47.  That is another inadmissible legal opinion, but also an attempt to

17  undermine the Court's prior rulings that "a RAND negotiation would not be conducted in a

18  vacuum, but the parties would instead consider other SEP holders and the royalty rate that each

19  of these patent holders might seek" (Dkt. No. 673, April 19, 2013 Findings of Fact and

20  Conclusions of Law ("FFCL") ¶ 539), that pool rates can provide "a strong indicator of a

21  RAND royalty rate" for Motorola's patents (FFCL ¶ 514), and that pools would be considered

22  by parties in a RAND negotiation (FFCL ¶ 100).

23    Holleman repeatedly suggests that Motorola's opening offer did not need to be RAND,

24  Ex. 1 (Holleman Rpt.) ¶¶ 35, 38, 48, but this legal conclusion is incomplete and misleading in

25  light of the Court's clear holdings that Motorola's offers could not be blatantly unreasonable.

26  MICROSOFT'S RULE 702 MOTION TO
  PRECLUDE TESTIMONY BY MOTOROLA'S
  EXPERTS - 6

(Dkt. No. 335 at 25.)  Holleman refused to agree with the Court's holding that standard-essential patent holders cannot make blatantly unreasonable offers, instead claiming in his view "it's beyond the scope of the [SSO]'s patent policy," and "from the [SSO] perspective, that's not a concern."  Ex. 2 (Holleman Dep.) 175:10–176:1, 181:20–182:8; *see id.* at 176:2–181:10.  Holleman should not be permitted to opine that Motorola's offers satisfied its obligations based on his own legal interpretation of the RAND commitment that is in direct conflict with the Court's rulings.

Finally, in his rebuttal report, Holleman declares that "it does not make sense to consider" the Court's April 19, 2013 Findings of Fact and Conclusions of Law "as a guide to the bilateral negotiations that should have occurred between these specific parties and the offers Motorola made."  Ex. 3 (Holleman Rebuttal Rpt.) ¶ 4.  But the Court adopted a "hypothetical negotiation" methodology at Motorola's urging (FFCL ¶ 83), and the RAND royalties were determined as the outcome of negotiations under the RAND commitment as they would have occurred between Microsoft and Motorola (FFCL at 40; *id.* ¶¶ 91–113.)  The Court's Findings and Conclusions *are* "a guide to bilateral negotiations" between Microsoft and Motorola because Motorola and its prior expert Richard Schmalensee asked the Court to apply that analytical framework.  (FFCL ¶¶ 83, 90.)  Motorola should not be permitted to offer *any* expert testimony that undermines the Court's Findings and Conclusions, but it certainly should not be heard to question the Court for doing what Motorola requested.

### C.  Holleman's "Good-Faith" And "No Breach" Testimony Is Inadmissible.

As noted above, expert testimony as to the conclusion that a party acted in good faith is improper and inadmissible.  *See Hangarter*, 373 F.3d at 1016; *Life Wealth Mgmt.*, 2013 WL 1660860, at *7–8.  Holleman's report repeatedly claims that in his opinion, Motorola's letters "constituted Motorola's good-faith attempt to engage Microsoft in a licensing negotiation."

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    Ex. 1 (Holleman Rpt.) ¶ 15.  *See id.* ¶¶ 33, 37, 60.  Holleman goes even further, declaring that

2    his determination of good faith entails a second legal conclusion of no breach:

3            Thus, because Motorola attempted to engage Microsoft in good faith
             negotiations for a RAND license to its H.264 and 802.11-essential patents prior
4            to the filing of this lawsuit, its actions are fully consistent with its RAND
             obligations under the ITU and IEEE patent policies, even if its opening offers
5            were not within the ranges set in Judge Robart's April 19, 2013 order.

6    *Id.* ¶ 38.  *See id.* ¶ 60 ("Motorola has fully complied with its RAND obligations from the

7    perspective of the SDOs, and has not violated any provision of the SDO policies because . . .

8    Motorola's October 2010 letters to Microsoft constituted Motorola's good-faith attempt to

9    engage Microsoft in a licensing negotiation.").  Holleman's legal conclusions would be

10   inadmissible even if they were not direct contradictions to the Court's prior rulings.  *See*

11   *Mukhtar*, 299 F.3d at 1065 n. 10 ("[A]n expert witness cannot give an opinion as to her *legal*

12   *conclusion* . . . .  When an expert undertakes to tell the jury what result to reach, this does not

13   *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the

14   jury's.") (quotation marks and citations omitted).  Holleman's conclusions on good faith and

15   breach should be excluded.

16           **D.  Scope Of Requested Relief As To Holleman.**

17           For the reasons outlined above, Holleman should be barred from offering a legal

18   interpretation of the RAND commitment, as reflected in paragraphs 15, 21, 23, 30, 31, 36, 39,

19   59, and 60 of his opening report, and paragraphs 34 and 47 of his rebuttal report.  Holleman

20   should be barred from offering testimony contradicting or undermining the Court's prior

21   rulings, as reflected in paragraphs 35, 38, 47, and 48 of his opening report, in paragraph 4 of

22   his rebuttal report, and in his deposition testimony at 175:10–176:1, 181:20–182:8.  Holleman

23   should be barred from offering testimony on the ultimate conclusion on good faith or breach,

24   as reflected in paragraphs 15, 33, 37, 38, and 60 of his opening report.

25

26   MICROSOFT'S RULE 702 MOTION TO
     PRECLUDE TESTIMONY BY MOTOROLA'S
     EXPERTS - 8

## II.   PORTIONS OF GREGORY LEONARD'S TESTIMONY SHOULD BE EXCLUDED.

Motorola's economic expert Gregory Leonard offers opinions consisting of legal conclusions that contradict the Court's prior rulings and are otherwise inadmissible under Rule 702.  The below-identified portions of his testimony should be excluded.

### A.   Leonard's Legal Conclusions Contradicting the Court's Prior Rulings Should Be Excluded.

Like Holleman, Leonard repeatedly suggests that Microsoft acted improperly by filing this suit, even providing a section of his report titled "By Filing the Lawsuit, Microsoft Ended the Negotiation and Prevented a RAND License From Being Negotiated."  Ex. 4 (Leonard Rpt.) at 28.  As noted above, the Court has repeatedly ruled that Microsoft was *not* obliged to negotiate with Motorola before filing suit.  Leonard's claims to the contrary should be excluded.  *See id.* ¶ 78 ("Microsoft filed this lawsuit without making any counter-offer or otherwise engaging in negotiation.  Thus, Microsoft effectively ended the negotiation."); ¶ 79 ("Microsoft could have negotiated further and brought the lawsuit if, after a good faith effort, it still believed Motorola was not negotiating in good faith."); Ex. 5 (Leonard Dep.) 126:22 ("They [Microsoft] should have to negotiate in good faith as well.").

Leonard paradoxically claims that because Microsoft filed suit, the Court and the jury cannot evaluate whether Motorola's conduct violated the duty of good faith and fair dealing: "[G]iven the abbreviated negotiation that took place (as a result of Microsoft's filing of the lawsuit), it is speculative for Microsoft now to claim that Motorola would not have ultimately agreed to a royalty in the RAND royalty range determined by the Court."  Ex. 4 (Leonard Rpt.) ¶ 79.  This argument is directly contrary to the Court's holding that "if a third-party beneficiary to that commitment does not believe Motorola is meeting its obligations" under its RAND commitments, "the courthouse may be the only place to resolve the differences."  (Dkt. No. 335 at 21.)  Leonard's apparent view is that by coming to the courthouse, Microsoft made it

impossible to know whether Motorola was meeting its obligations.  This new variant on

Motorola's attempts to render its RAND commitments legally meaningless should be rejected.

Leonard also attempts to turn this principle into a defense to Microsoft's damages

claim: "After Microsoft's refusal to negotiate" (by which Leonard means filing this case) "it

was reasonable for Motorola to file suit.  Thus, when assessing causation, Microsoft's actions

in initiating the litigation must be taken into account."  Ex. 6 (Leonard Rebuttal Rpt.) ¶ 28.

This is a retread of Motorola's rejected "repudiation" theory, and should be excluded for the

same reasons set forth above.

Like Holleman, Leonard also claims Motorola was free to ignore patent stacking when

offering Microsoft a RAND license:

> I do not agree that Motorola has a responsibility to conduct [a stacking] analysis
> before making an initial offer.  Instead, the royalty stacking argument is one that
> would most likely benefit Microsoft.  It is Microsoft's responsibility to form its
> own arguments and persuade Motorola of its positions by way of negotiation.

Ex. 4 (Leonard Rpt.) ¶ 81.  Leonard's rebuttal report then attempts to redefine stacking,

claiming that "the relevant calculation would be the amount of royalties that Microsoft was

actually paying," implying that it is irrelevant that Motorola's 2.25% demand, if made by

others, would cause severe stacking problems.  Ex. 6 (Leonard Rebuttal Rpt.) ¶ 7.  Both claims

are inadmissible legal opinions about the proper interpretation of Motorola's obligations, and

contradict the Court's findings concerning the prevention of stacking, one of the primary

purposes of the RAND commitment.  (*See* FFCL ¶ 539.)

Leonard offers other legal conclusions that should be excluded as well, including an

inadmissible interpretation of Motorola's contractual commitment, *see* Ex. 6 (Leonard Rebuttal

Rpt.) ¶ 19 ("RAND does not require an SEP owner to treat differently situated licensees

similarly"), and an inadmissible ultimate legal conclusion on damages:  "I conclude that

Microsoft has not established a reliable basis for calculating its damages and thus should not be

awarded any damages in this case."  *Id.* ¶ 33.  Again, "[w]hen an expert undertakes to tell the

MICROSOFT'S RULE 702 MOTION TO
PRECLUDE TESTIMONY BY MOTOROLA'S
EXPERTS - 10

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." *Mukhtar*, 299 F.3d at 1065 n. 10 (quotation marks and citations omitted).  Finally, Leonard's deposition revealed that he believes that blatantly unreasonable offers do not necessarily breach the RAND commitment, and apparently believes that is the situation in this case.  *See* Ex. 5 (Leonard Dep.) 39:23–43:9, 108:19–109:19.  That legal opinion is, again, both inadmissible and contrary to the Court's prior ruling and Motorola's concessions.  (Dkt. No. 335 at 25.)  Leonard's legal conclusions should be excluded.

### B.  Leonard's "Good-Faith" Testimony Is Inadmissible.

As with Holleman, Leonard's report repeatedly declares that in his opinion, Motorola conducted itself in good faith.  *See* Ex. 4 (Leonard Rpt.) ¶ 61 ("Based on the record, my experience with patent licensing, and the application of economic principles, I conclude that Motorola was acting in good faith when it made its opening offers to Microsoft."), ¶ 85 ("Based on the foregoing, I conclude that Motorola sent the initial offer letters in October 2010 in good faith.").  Leonard's conclusion that Motorola acted in good faith is inadmissible as expert testimony.  *See Hangarter*, 373 F.3d at 1016; *Life Wealth Mgmt.*, 2013 WL 1660860, at *7–8.  Leonard also offers the additional opinion that "an opening offer is made in good faith if it meant to be the start of a negotiation through which the parties can reach a RAND license." Leonard Rpt. ¶ 60.  That is an apparent legal conclusion replacing one state of mind inquiry (Motorola's good faith) with another (Motorola's intent in sending the letters)—neither is an appropriate topic for expert testimony, *see Klaczak*, 2005 WL 1564981, at *8–10, nor is the legal conclusion itself.

### C.  Scope Of Requested Relief As To Leonard.

For the reasons outlined above, Leonard should be barred from offering legal opinions that contradict the Court's prior rulings, as reflected in paragraphs 28, 78, 79, 81 of his opening

MICROSOFT'S RULE 702 MOTION TO
PRECLUDE TESTIMONY BY MOTOROLA'S
EXPERTS - 11

report, paragraph 7 of his rebuttal report, and in his deposition at 39:23–43:9, 108:19–109:19, and 126:22.  Leonard should be barred from offering the legal conclusions reflected in paragraphs 19 and 33 of his rebuttal report.  Leonard should be barred from offering testimony on the ultimate conclusion on good faith, as reflected in paragraphs 60, 61, and 85 of his opening report.

## III.   MAXIMILIAN HAEDICKE'S TESTIMONY SHOULD BE EXCLUDED

### A.  Haedicke's Orange Book Testimony Should Be Excluded.

Motorola apparently intends to offer testimony from Haedicke that Microsoft did not need to relocate its primary distribution facility for Europe, the Middle East, and Africa ("EMEA"), which was located in Germany, and instead should have subjected itself to further Orange Book proceedings in Germany, which he claims would have made it "very easy for Microsoft to avoid an injunction."  Ex. 7 (Haedicke Rpt.) ¶ 6.  As explained below, Haedicke conceded that he had no idea what would have happened in Germany if Microsoft followed the Orange Book procedure.  Further, Haedicke made no effort to learn *any* of the facts surrounding Microsoft's relocation of the distribution facility, including when decisions were made and the process of relocation began.  In short, Haedicke wants to opine "Microsoft shouldn't have done X, it should have done Y"—but he never inquired as to what X entailed, and doesn't know the results of Y.  Haedicke's testimony is baseless and should be excluded.

In spite of the fact that he intends to offer an opinion about what Microsoft should have done instead, Haedicke knew nothing about the German relocation and made no effort to inform himself:

> Q.  Do you understand that the decision to relocate Microsoft's distribution center in Germany required considerable preparation beginning in January of 2012?
> [Motorola Counsel]:  Objection; form, outside the scope of his expert report.
> A.  I have no opinion on that.
> Q.  Are you aware of any of the details surrounding Microsoft's decision to relocate its German facility?
> A.  No.

MICROSOFT'S RULE 702 MOTION TO
PRECLUDE TESTIMONY BY MOTOROLA'S
EXPERTS - 12

1
2
3
4

> Q.  Did you review any documents associated with the move?
> A.  No.
> Q.  Did you review the deposition transcripts of the Microsoft employees who described that process?
> A.  No.
> Q.  Were you aware that Microsoft made its decision and had begun implementing the relocation out of Germany in March of 2012?
> A.  No.

5
6
7

Ex. 8 (Haedicke Dep.) 105:25–106:19.  An expert opinion about a choice between two alternatives cannot be "based on sufficient facts or data" if the expert is wholly ignorant of one of the alternatives.

8
9
10
11
12
13
14
15

As for the Orange Book procedure, in February 2012 Microsoft made Motorola an Orange Book offer of 1 to 2 Euro cents per unit for the two H.264 patents Motorola asserted in the German actions.  Ex. 7 (Haedicke Rpt.) ¶ 51; Ex. 8 (Haedicke Dep.) 42:25–43:4.  Motorola rejected that offer, and on May 2, 2012, the German court found that Motorola's rejection was permissible, and that Motorola could obtain an injunction, because the rejection was not, in the words of the German court, an "obvious" antitrust violation.  Ex. 8 (Haedicke Dep.) 43:5–10.  Haedicke agreed that following this rejection, the Orange Book procedure presented three possibilities:

16
17
18
19
20
21
22
23
24
25

*First*, Microsoft could have made a higher offer, which Motorola might have accepted.  Ex. 8 (Haedicke Dep.) 51:10–15.  But Haedicke had no idea how high that offer had to be for Motorola to accept it.  *Id.* at 51:16–52:22 ("This is economic and [ ] business, and so . . . I'm not able to comment on this."), 61:18–21 ("[Q.]  [I]f Microsoft made an Orange Book offer, you don't know what . . . offer Motorola would have accepted; correct?  A.  Pure speculation.").  In any event, the path of escalating-but-rejected Orange Book offers would not have stopped the German court from eventually issuing an injunction, and when asked whether he had asked anyone at Motorola whether it planned on enforcing a German injunction, if it was able to obtain one, Haedicke—an expert witness—**refused to answer on the grounds of attorney-client privilege**, following instructions from Motorola's counsel.  *See* Ex. 8

26

MICROSOFT'S RULE 702 MOTION TO
PRECLUDE TESTIMONY BY MOTOROLA'S
EXPERTS - 13

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   (Haedicke Dep.) 102:2–103:25.[2]

2      *Second*, Microsoft could have followed the alternative Orange Book procedure,

3   escrowing a "sufficient" (but unknown) amount of funds and allowing Motorola to set the

4   royalty.  Ex. 8 (Haedicke Dep.) 60:19–61:1.  But Haedicke had no idea what royalty Motorola

5   would have set, *id.* at 61:22–24, or how much money Microsoft would have had to escrow to

6   ensure it would not be enjoined, *id.* at 53:25–54:11.

7      *Third*, assuming Microsoft could have overcome the unknowns inherent in the second

8   course of action above and left it to Motorola to set the royalty, Microsoft could have

9   challenged in a separately-filed proceeding the royalty Motorola set.  If a German court found

10  Motorola's royalty improper, that court would set a royalty itself, but again, Haedicke had no

11  idea what the outcome of this proceeding would be.  Ex. 8 (Haedicke Dep.) 56:21–60:13,

12  61:25–62:6.  There are no reported German decisions of such a proceeding, and Haedicke

13  could not explain what evidence that court would consider, or what standard it would apply to

14  set a royalty itself.  *See id.* at 21:24–22:16, 23:25–25:10, 62:7–25.

15     What would have happened if Microsoft had followed the Orange Book procedure and

16  left its distribution facility in Germany?  Haedicke has no answer.  The outcome of any further

17  Orange Book proceedings would have been—in Haedicke's own words—pure speculation.  In

18  light of the RAND trial, there is only one certainty about the Orange Book:  claiming to follow

19  that procedure, the German court blessed Motorola's rejection of an offer from Microsoft that

20  was far in excess of a RAND royalty.[3]  Haedicke admitted that the German court did not even

21

22     [2] Motorola's counsel repeatedly instructed Haedicke not to answer questions on grounds of privilege.  *See* Ex. 8
    (Haedicke Dep.) 104:1–14 (refusing to answer whether he had asked Motorola if it planned to enforce the
23  injunction if Microsoft's TRO/PI had been denied); *id* at 104:15–105:4 (refusing to answer whether he had asked
    Motorola if it planned to enforce the injunction if the Ninth Circuit had reversed).  As explained in the following
24  subsection, counsel also instructed Haedicke not to explain the relevance of his rebuttal report.

25     [3] 1 to 2 Euro cents per unit for two out of Motorola's 17 H.264 patent families far exceeds the 0.555 U.S. cents
    (0.427 Euro cents, based on the exchange rate in May 2012) for the entire H.264 portfolio set by the Court.  Given
26  the difference in the number of patents, Motorola rejected an offer as much as 35 times higher than RAND.

MICROSOFT'S RULE 702 MOTION TO
PRECLUDE TESTIMONY BY MOTOROLA'S
EXPERTS - 14

consider evidence as to whether Microsoft's offer was reasonable, because Motorola's "infringement action should not be overloaded by taking evidence in order to determine the reasonableness of the offer because then you would not have a swift and clear infringement action."  Ex. 8 (Haedicke Dep.) 39:16–41:8.

Haedicke has an explanation as to why he should be permitted to tell the jury that Microsoft should have subjected itself to a procedure conclusively proven to produce a non-RAND outcome:  He believes this Court has no authority to set a worldwide RAND rate.  Ex. 8 (Haedicke Dep.) 78:3–81:3 (claiming Motorola did not refuse to enter a RAND license when it rejected Microsoft's above-RAND Orange Book offer, because decisions of this Court "are certainly not binding for the German court"), 91:7–95:25 (claiming that while European antitrust law bars Motorola from pursuing injunctions against licensees willing to submit to a RAND determination, this Court's RAND determination is irrelevant in Europe).  Leaving aside that this opinion entails a fundamental rejection of the Court's entire Findings of Fact and Conclusions of Law[4], the Court has already recognized that Motorola conceded that a worldwide RAND rate is "within the authority of this [C]ourt to decide."  (Dkt. No. 465, October 10, 2012 Order at 22 & n. 13.)

Haedicke's testimony cannot possibly help the jury determine whether Microsoft could have avoiding relocating its distribution center (or decide any other issue), because he does not understand when, why, or how Microsoft relocated the facility, and cannot tell the jury what would have happened if Microsoft had engaged in further Orange Book proceedings.  That renders his testimony irrelevant, "non-helpful," and inadmissible.  *Daubert*, 509 U.S. at 591; *Mukhtar*, 299 F.3d at 1063 n. 7.  Moreover, this Court already barred Motorola from enforcing its German injunction (and subjecting Microsoft whatever may have resulted from further

---

[4] Haedicke denied any knowledge of the Court's findings and conclusions.  *See* Ex. 8 (Haedicke Dep.) 27:18–29:2.

MICROSOFT'S RULE 702 MOTION TO
PRECLUDE TESTIMONY BY MOTOROLA'S
EXPERTS - 15

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    Orange Book proceedings), in a decision appealed by Motorola and affirmed by the Ninth

2    Circuit.  Motorola should not be permitted to second-guess that decision in front of the jury in

3    the guise of expert testimony.

### B.  Haedicke's German Fee-Shifting Testimony Should Be Excluded.

Haedicke provided a rebuttal report opining that the fees Microsoft seeks to recover as

contract damages associated with the German action are higher than the fees that would be

recoverable under a German "loser pays" fee-shifting statute, if Microsoft were to prevail in

Germany.  Ex. 9 (Haedicke Rebuttal Rpt.) ¶ 6.  That claim has nothing to do with any fact in

issue at trial, and accordingly is not proper expert testimony under Rule 702(a).  Microsoft is

attempting to recover its expenditures in defending against actions on standard-essential

patents that Motorola had no right to bring.  Microsoft is not attempting to invoke a German

fee-shifting statute to recover fees as a prevailing party.  Haedicke does not claim that the

German statute suggests what fees are necessary or reasonable, and could not say if the fees

Microsoft seeks to recover as damages are typical or unusual for a case like Motorola's

German suit.  Ex. 8 (Haedicke Dep.) 111:12–114:5.  There is no apparent connection between

his rebuttal report on fee-shifting and any issue in the upcoming trial.  When asked to provide

his understanding as to the relevance of his testimony, Haedicke stated that "it is under

discussion in this case," but refused to explain why, **claiming attorney-client privilege**.  *Id.* at

115:22–116:12.

Further, Haedicke has no relevant expertise in the German fee-shifting statute that is the

subject of his opinion, which independently renders this testimony inadmissible.  Haedicke's

claimed expertise pertinent to this case, as claimed in his report, is in "patent law, injunctions

and standards-essential patents [ ] in Germany."  Ex. 7 (Haedicke Rpt.) ¶ 3.  While Haedicke

claimed he was also "an expert in German procedural law concerning the recovery of fees and

costs," he has published no articles in that area and has no relevant practical experience.  Ex. 8

MICROSOFT'S RULE 702 MOTION TO
PRECLUDE TESTIMONY BY MOTOROLA'S
EXPERTS - 16

(Haedicke Dep.) 108:5–109:4.  That Haedicke is a German attorney does not make him an expert on every aspect of German law.  Motorola apparently intends to use Haedicke's status as a lawyer to bless calculations performed using a German fee-shifting software program Haedicke had only encountered once before in his life.  *Id.* at 109:5–110:9.  Not only is the result of this determination irrelevant, Haedicke lacks the competence to offer it.  The testimony disclosed in Haedicke's rebuttal report should be excluded.

### C.  Scope Of Requested Relief As To Haedicke.

For the reasons outlined above, Haedicke's proposed testimony should be excluded in its entirety.

## IV.   BRADLEY KELLER'S TESTIMONY SHOULD BE EXCLUDED.

Bradley Keller's testimony concerning Microsoft's attorneys' fees should be excluded in its entirety.  Keller is not an expert in the area of attorneys' fees incurred in defense of actions asserting standard-essential patents, and his opinion is not based on sufficient facts or data.  *See* Fed. R. Evid. 702 Advisory Committee's Note ("[I]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.").

At trial, Motorola plans to offer Keller's opinion on the reasonableness of Microsoft's fees incurred in patent litigation filed in the International Trade Commission ("ITC") in Washington, D.C., and in courts based in Madison, Wisconsin and Germany by comparing them to fees normally charged by Seattle lawyers (regardless of whether those Seattle lawyers have expertise in patent litigation or in matters before the ITC).  Keller's considerable commercial litigation experience in the Pacific Northwest does not qualify him to opine on the reasonableness of fees incurred in specialized litigation in other regions or before the ITC.  *See* Ex. 10 (Keller Dep.) 14:3–12, 19:11–20:21, 143:5–144:24.  Significantly, Keller has not

MICROSOFT'S RULE 702 MOTION TO
PRECLUDE TESTIMONY BY MOTOROLA'S
EXPERTS - 17

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

expressed any opinion regarding the reasonableness of fees incurred by Seattle counsel. *Id.* at 180:24–181:9. Instead, the premise for Keller's opinion is that the fees Microsoft paid to Sidley Austin LLP[5] to defend against Motorola's standard-essential patent infringement suits exceed those that would have been charged had Microsoft retained a Seattle firm to do that work. This opinion is not probative of the issue of the reasonableness of the fees actually incurred, because Motorola failed to provide Keller with even the most basic information regarding the procedural history of these cases, the specific work required, or the time frame in which the work had to be completed. Motorola's failures in this regard have rendered Keller's testimony both irrelevant and speculative.

Keller has also provided an opinion on the legal issue of whether Microsoft can recover fees as damages and about causation, both of which involve legal analysis which is clearly within the province of the Court and is not appropriately the subject of expert testimony.

### A. Keller Lacks Appropriate Qualifications To Render An Opinion On The Attorneys Fees Microsoft Is Seeking To Recover As Damages.

A threshold requirement for a witness to testify as an expert is that the proffered expert must have "appropriate qualifications," *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000), such that the opinion has "a reliable basis in the knowledge and experience of his discipline." *Daubert*, 509 U.S. at 592. Keller's knowledge and experience as a respected commercial trial lawyer in the Northwest does not provide a foundation of expertise regarding fee levels generally incurred for legal representation in patent infringement claims before the ITC, German courts, and federal district courts elsewhere in the country. *See Common Cause v. Jones*, 235 F. Supp. 2d 1076, 1079 n. 1 (C.D. Cal. 2002) (in a Voting Rights Act lawsuit, proffered expert on attorneys' fees was likely not qualified because he possessed only general

---

[5] Keller has not rendered any opinion on whether the fees Microsoft paid to Freshfields Bruckhaus Deringer, Boehmert & Boehmert, Klarquist Sparkman LLP, or Calfo Harrigan Leyh & Eakes LLP are necessary and/or reasonable. His opinion is limited to fees paid to Sidley Austin LLP. Ex. 10 (Keller Dep.) 23:14–25:9.

MICROSOFT'S RULE 702 MOTION TO
PRECLUDE TESTIMONY BY MOTOROLA'S
EXPERTS - 18

knowledge about law firm billing practices and not specific knowledge about billing for

complex constitutional or civil rights litigation); *LuMetta v. U.S. Robotics, Inc*., 824 F.2d 768,

771 (9th Cir. 1987) (in a case alleging breach of a contract to find buyers, proffered witnesses

were not qualified as experts on damages because they had only limited experience with finder

fees).  Although the majority of the fees at issue here relate to the ITC Investigation 337-TA-

752 ("ITC 752"), Keller has never appeared before the ITC or even worked on an ITC case.

Ex. 10 (Keller Dep.) 14:3–12.  And while Keller purports to opine on the fees that were

necessary to defend against Motorola's attempts to exclude Microsoft's importation, sale

and/or distribution of Xbox and Windows-related products based on alleged infringement of

Motorola's standard-essential patents, he concedes that he is not an expert on injunctions or

standard-essential patents and has no technical background.  *Id.* at 12:16–14:2.  Keller is thus

not qualified to testify as an expert with regard to the necessity of any fees Microsoft incurred

in an effort to defend itself against Motorola's standard-essential patent suits, and this Court

should exclude him on that basis.  *See LuMetta*, 824 F.2d at 771.

### B.  Keller's Testimony Is Based On An Unreliable Methodology Applied To Insufficient Facts.

Keller based his opinion on his personal experience in commercial litigation in the

Northwest.  In so doing, he did not analyze other reliable authorities and, more importantly, did

not analyze other authorities and evidence bearing on the relevant question:  fees incurred in

the specific matters at issue, including the ITC proceeding.  *See* Fed. R. Evid. 702(b), (c).

Keller conceded that he did not review or rely on any articles, studies, research, or other

secondary authorities on attorneys' fees.  Ex. 10 (Keller Dep.) 18:24–19:21.  The Ninth Circuit

has held that the factors listed in the ABA Model Rule on attorneys' fees (or its Washington

counterpart) are relevant to a determination of reasonable attorneys' fees.  *See Cornhusker*

*Casualty Ins. Co. v. Kachman*, Nos. 3:05–cv–05026–RBL, 2:09–cv–00273–RBL, 2009 WL

2853119 at *2 n. 3 (W.D. Wash. Sept. 1, 2009), citing *Kerr v. Screen Extras Guild, Inc*., 526

MICROSOFT'S RULE 702 MOTION TO
PRECLUDE TESTIMONY BY MOTOROLA'S
EXPERTS - 19

F.2d 67, 69–70 (9th Cir. 1975) (applying factors "generally in accord with Washington Rule of Professional Conduct 1.5 and the Model Rule of Professional Conduct 1.5 regarding reasonable attorney fees").  But Keller only considered these rules "from a secondary standpoint," Ex. 10 (Keller Dep.) 42:12–19, and dismissed certain factors despite their obvious bearing on the reasonableness of fees.  *See, e.g.*, *id.* at 66:14–68:19 (dismissing factor concerning "time limitations imposed . . . by the circumstances" as not being "particularly germane," but admitting he had not been adequately informed of the strict time limitations imposed by ITC proceedings).

Keller also did not consider attorneys' fees in any of the forums (other than Seattle) in which Microsoft required representation in these complex patent matters (i.e., Wisconsin, the District of Columbia, and Germany).  *Id.* at 56:11–18.  Instead, Keller offers an opinion on the reasonableness of Microsoft's fees in these other forums by comparing them to rates charged in Seattle.  *Id.* at 19:11–20:21[6]; *see also Common Cause*, 235 F. Supp. 2d at 1079 n. 1 (proffered expert testimony that compared billing rates for a variety of practice areas would not be relevant to assessing the reasonableness of fees in specialized litigation).

Keller's "methodology" suffers from the absence of basic foundational data.  Motorola failed to ensure that Keller was sufficiently familiar with the Motorola standard-essential patent actions.  For example, with regard to the ITC 752 Investigation, Keller reviewed only the docket sheet and skimmed a redacted public version of the ALJ's Initial Determination, Ex. 10 (Keller Dep.) 18:14–20, 45:8–20—Motorola did not have Keller sign onto the ITC protective order in that investigation which would have provided access to confidential information (*id.* at 45:21–46:8), so he did not review the complete record, which would have illustrated the extent of the representation undertaken by Microsoft's counsel.  Moreover, none

---

[6] Although Keller initially stated that Microsoft should have used Seattle-based counsel,  he later retreated from that position and suggested that Microsoft could have employed "lead" counsel in a jurisdiction such as Washington, D.C., but had Seattle counsel be the "positional" or "bench players."  Ex. 10 (Keller Dep.) 148:17–149:9.

MICROSOFT'S RULE 702 MOTION TO
PRECLUDE TESTIMONY BY MOTOROLA'S
EXPERTS - 20

of Motorola's attorneys involved in the ITC Investigation spoke to Keller before he submitted his report,[7] nor did Motorola provide Keller with any of the scheduling orders or substantive pleadings.  *Id.* at 46:17–47:8, 67:4–7.  Keller similarly did not speak to anyone at Motorola or Google, either in-house counsel or otherwise, who might have explained the nature of representation in the ITC proceeding.  *Id.* at 22:22–23:12, 49:15–50:10.

Motorola similarly failed to provide Keller with  crucial documents with respect to the district court litigation.  He did not read Motorola's complaint in the Western District of Wisconsin or discuss it with anyone.  *Id.* at 51:6–11.  Keller had no knowledge of Microsoft's successful summary judgment motion on the H.264 patents originally asserted in that case (since transferred to this Court).  *Id.* at 63:4–11.  Keller did not attempt to diagram the procedural history of these matters and the various cases, *id.* at 50:11–23, which would have illustrated the diversity and complexity of the legal actions Microsoft successfully took to prevent Motorola from obtaining an injunction on its standard-essential patents.

Keller's lack of knowledge of the underlying legal proceedings renders his testimony regarding reasonable attorneys' fees unreliable.  *See Edwards v. Tobin*, No. 96-2237, 1998 WL 123060, at *3 (4th Cir. 1998) (giving no weight to attorney fee testimony from an expert witness who had only "limited knowledge" of the efforts undertaken by counsel in representation).

### C.  Keller's Opinions Would Not Assist the Jury In Determining Any Fact At Issue.

Lastly, Keller should not be permitted to testify because his opinion would not "assist the trier of fact in understanding the evidence or determining a fact in issue." *Whisnant*, 2006

---

[7] Keller stated that he had a brief telephone conversation with two attorneys from Ropes & Gray (who represented Motorola in ITC 752) the week before his deposition and *after* he tendered his report.  Keller could not recall their names, and stated that the attorneys provided him with only a "high-altitude overview" of the case.  Ex. 10 (Keller Dep.) 21:25–22:11.  Keller does not know where the Ropes & Gray attorneys were based, did not inquire how many attorneys Ropes & Gray had working on ITC 752, and did not know whether the fees Ropes & Gray charged Motorola were generally higher or lower than those paid by Microsoft to Sidley Austin LLP.  *Id.* at 82:14–17, 174:7–175:9, 152:6–7.

MICROSOFT'S RULE 702 MOTION TO
PRECLUDE TESTIMONY BY MOTOROLA'S
EXPERTS - 21

WL 2927732, at *2, citing *Hankey*, 203 F.3d at 1168.  The crux of Keller's opinion is that the fees Microsoft paid to Sidley Austin were higher than necessary, because Sidley attorneys (based in Chicago, Washington D.C., or Dallas) had billing rates higher than Seattle-area attorneys that Keller believes could have sufficiently handled the pending matters in Washington D.C., Madison, Wisconsin and Germany.  Ex. 10 (Keller Dep.) 56:5–10, 78:6–13.  The fact that attorney billing rates are generally higher in larger markets is well-known and hardly the proper subject of expert testimony.  "The Court has discretion to exclude expert testimony on the reasonableness of attorneys' fees if the witness is qualified as an expert but the proffered testimony would not assist the trier of fact."  *In re Parsons*, No. 7-09-15382JR, 2010 WL 3547601, at *2 n. 3 (Bankr. D.N.M. Sept. 9, 2010).  The Court should exercise that discretion to prohibit Keller from introducing expert testimony here.  *See also In re Terex Corp.*, 70 B.R. 996, 1001 (Bankr. N.D. Ohio 1987) (excluding expert testimony as to the reasonableness of fees on the basis that it would not aid the trier of fact).

### D.  Keller's Legal Opinions Should Be Excluded.

To the extent the Court permits Keller to offer any testimony, it should exclude all testimony relating to the legal opinions Keller attempts to proffer regarding causation.  *See Nationwide Transport Finance*, 523 F.3d at 1058; *Aguilar*, 966 F.2d at 447 ("[M]atters of law for the court's determination . . . [are] inappropriate subjects for expert testimony."); *Brodie*, 858 F.2d at 497.

Keller's report proffers legal opinions that even he acknowledges are inappropriate:

> I have some opinions, but *whether or not it was appropriate for me to provide them was a question mark*, and so I don't -- you know, they're referred to in the report in the initial paragraph, and really has to do with the fundamental issue as to whether or not attorneys' fees can be claimed in the first place as an item of compensable damages, and, you know, I have some views about that that I volunteered rather than being asked.  I don't know what the status of those will end up being.

MICROSOFT'S RULE 702 MOTION TO
PRECLUDE TESTIMONY BY MOTOROLA'S
EXPERTS - 22

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Ex. 10 (Keller Dep.) 25:13–2 (emphasis added); *see also id.* at 178:5–13.  Keller's report simply serves to preview Motorola's legal argument that "attorneys' fees are generally not a form of damages" and "under the American Rule," Microsoft should not recover fees.  Ex. 11 (Keller Rpt.) ¶ 5(a).  Keller further opines that "Microsoft's decision to file this contract suit played a causal role in Motorola bringing the SEP infringement proceedings.  Its attorneys' fees therefore should not be considered consequential damages." *Id.*

Based upon these subjective legal interpretations, Keller argues that Microsoft's fees are not recoverable as an element of consequential damages, contending that fee-shifting methodologies based on "principles of 'common nucleus of facts'" should not be considered "because only those fees incurred that are necessary and proximately caused by the alleged breach can be awarded assuming the other elements of equitable indemnity are present." *See id.* ¶ 9; *id* at 8.  Keller's proffered interpretations of the "American Rule," "proximate cause," and "consequential damages," however, fall squarely within the ambit of inadmissible legal opinion testimony.  Furthermore, as Keller observes in his report, the question of whether legal fees "are properly a form of damages for breach of contract [] is an issue to be briefed before the Court." *See id.* ¶ 5(a).  Motorola's attempt to submit what is tantamount to a second legal brief, guised as an expert report, on these same subjects should be summarily rejected.

Keller's opinions regarding causation are similarly improper legal conclusions lacking any foundation.  Although Keller speculates that there would have been no reason for Motorola to file its infringement actions relating to its standard-essential patents had Microsoft not first filed a lawsuit on unrelated, non-standard-essential patents, he did not discuss the rationale for the suits with anyone at Motorola.  Ex. 10 (Keller Dep.) 38:11–25 (in responding to the question of whether he spoke to anyone at Motorola about the reasons for filing the lawsuits on its SEPs, "Absolutely not.").  Moreover, although he purports to opine on causation in connection with Microsoft's claimed damages, Keller was unaware that Microsoft had offered

MICROSOFT'S RULE 702 MOTION TO
PRECLUDE TESTIMONY BY MOTOROLA'S
EXPERTS - 23

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1  to pay Motorola a RAND royalty in connection with Motorola's H.264 and 802.11 SEPs, and

2  he similarly did not investigate Microsoft's request that Motorola agree to refrain from seeking

3  injunctive relief, despite reading a reference to this in the Ninth Circuit's opinion affirming this

4  Court's order granting Microsoft's motion to enjoin Motorola from enforcing the German

5  injunction. *Id.* at 40:18–41:14.

6        Keller's legal opinions would be otherwise inadmissible under Federal Rule of

7  Evidence 403 as unduly prejudicial.  Courts have long counseled against permitting attorneys,

8  sitting as experts, to offer legal opinions to a jury.  "[T]he jury may believe the attorney-

9  witness, who is presented to them imbued with all the mystique inherent in the title 'expert,' is

10  more knowledgeable than the judge in a given area of the law." *Specht v. Jensen*, 853 F.2d

11  805, 809 (10th Cir. 1988) (citation omitted).  "[O]ur system reserves to the trial judge the role

12  of adjudicating the law for the benefit of the jury.  When an attorney is allowed to usurp that

13  function, harm is manifest . . . ." *Id.*  Accordingly, Microsoft requests that the Court preclude

14  Keller from proffering any legal opinions at trial.

15      **E.  Scope Of Requested Relief As To Keller.**

16        For the reasons outlined above, Keller's proposed testimony should be excluded in its

17  entirety.

18                  **<u>CONCLUSION</u>**

19        For the foregoing reasons, the identified testimony of Leonard and Holleman should be

20  excluded.  All of the offered testimony of Haedicke and Keller should be excluded.  A

21  proposed order is submitted concurrently with this motion.

22        DATED this 3rd day of July, 2013.

23               CALFO HARRIGAN LEYH & EAKES LLP

24

25               By    s/Arthur W. Harrigan, Jr.
                         Arthur W. Harrigan, Jr., WSBA #1751

26

By     s/Christopher Wion
        Christopher Wion, WSBA #33207

By     s/Shane P. Cramer
        Shane P. Cramer, WSBA #35099
        999 Third Avenue, Suite 4400
        Seattle, WA  98104
        Phone:  206-623-1700
        arthurh@calfoharrigan.com
        chrisw@calfoharrigan.com
        shanec@calfoharrigan.com


By     s/T. Andrew Culbert
        T. Andrew Culbert

By     s/David E. Killough
        David E. Killough

MICROSOFT CORPORATION
1 Microsoft Way
Redmond, WA  98052
Phone:  425-882-8080
Fax: 425-869-1327

David T. Pritikin
Richard A. Cederoth
Constantine L. Trela, Jr.
William H. Baumgartner, Jr.
Ellen S. Robbins
Douglas I. Lewis
David C. Giardina
John W. McBride
Nathaniel C. Love

SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL  60603
Phone:  312-853-7000
Fax:  312-853-7036

Carter G. Phillips
Brian R. Nester

SIDLEY AUSTIN LLP

MICROSOFT'S RULE 702 MOTION TO
PRECLUDE TESTIMONY BY MOTOROLA'S
EXPERTS - 25

1501 K Street NW
Washington, DC  20005
Telephone:  202-736-8000
Fax:  202-736-8711

Counsel for Microsoft Corp.

MICROSOFT'S RULE 702 MOTION TO
PRECLUDE TESTIMONY BY MOTOROLA'S
EXPERTS - 26

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

**CERTIFICATE OF SERVICE**

I, Tim Murphy, swear under penalty of perjury under the laws of the State of Washington to the following:

1.       I am over the age of 21 and not a party to this action.

2.       On the 3rd day of July, 2013, I caused the preceding document to be served on counsel of record in the following manner:

**Attorneys for Motorola Solutions, Inc., and Motorola Mobility, Inc.:**

| | |
|---|---|
| Ralph Palumbo, WSBA #04751 | |
| Philip S. McCune, WSBA #21081 | _____ Messenger |
| Lynn M. Engel, WSBA #21934 | _____ US Mail |
| Summit Law Group | _____ Facsimile |
| 315 Fifth Ave. South, Suite 1000 | ___X___ ECF |
| Seattle, WA  98104-2682 | |
| Telephone:  206-676-7000 | |
| Email:  Summit1823@summitlaw.com | |

| | |
|---|---|
| Steven Pepe (*pro hac vice*) | _____ Messenger |
| Jesse J. Jenner (*pro hac vice*) | _____ US Mail |
| Ropes & Gray LLP | _____ Facsimile |
| 1211 Avenue of the Americas | ___X___ ECF |
| New York, NY  10036-8704 | |
| Telephone:  (212) 596-9046 | |
| Email:  steven.pepe@ropesgray.com | |
| Email:  jesse.jenner@ropesgray.com | |

| | |
|---|---|
| Norman H. Beamer (*pro hac vice*) | _____ Messenger |
| Ropes & Gray LLP | _____ US Mail |
| 1900 University Avenue, 6th Floor | _____ Facsimile |
| East Palo Alto, CA  94303-2284 | ___X___ ECF |
| Telephone:  (650) 617-4030 | |
| Email:  norman.beamer@ropesgray.com | |

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Paul M. Schoenhard (*pro hac vice*)               _____ Messenger
Ropes & Gray LLP                                  _____ US Mail
One Metro Center                                  _____ Facsimile
700 12th Street NW, Suite 900                     ___X___ ECF
Washington, DC  20005-3948
Telephone:  (202) 508-4693
Email: Paul.schoenhard@ropesgray.com


Andrea Pallios Roberts (*pro hac vice*)           _____ Messenger
Brian C. Cannon (*pro hac vice*)                  _____ US Mail
Quinn Emanuel Urquhart & Sullivan, LLP            _____ Facsimile
555 Twin Dolphin Drive, 5th Floor                 ___X___ ECF
Redwood Shores, CA 94065
Telephone:  (650) 801-5000
Email: andreaproberts@quinnemanuel.com
Email: briancannon@quinnemanuel.com


Kathleen M. Sullivan (*pro hac vice*)             _____ Messenger
David Elihu (*pro hac vice*)                      _____ US Mail
Quinn Emanuel Urquhart & Sullivan, LLP            _____ Facsimile
51 Madison Ave., 22nd Floor                       ___X___ ECF
New York, NY 10010
Telephone:  (212) 849-7000
Email: kathleensullivan@quinnemanuel.com


William Price (*pro hac vice*)                    _____ Messenger
Quinn Emanuel Urquhart & Sullivan, LLP            _____ US Mail
865 S. Figuera St., 10th Floor                    _____ Facsimile
Los Angeles, CA 90017                             ___X___ ECF
Telephone:  (212) 443-3000
Email: williamprice@quinnemanuel.com
MicrosoftvMotoBreachofRANDCase@quinnemanuel.com

DATED this 3rd day of July, 2013.



                          s/  Tim Murphy_____
                          TIM MURPHY


MICROSOFT'S RULE 702 MOTION TO
PRECLUDE TESTIMONY BY MOTOROLA'S
EXPERTS - 28

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717