# EXHIBIT 5

# In The Matter Of:

*MICROSOFT CORPORATION*
*v.*
*MOTOROLA INC., et al.*

_____

*GREGORY LEONARD, Ph.D. - Vol. 1*

*June 24, 2013*

_____

## *HIGHLY CONFIDENTIAL*

**MERRILL CORPORATION**
LegaLink, Inc.
135 Main Street
4th Floor
San Francisco, CA 94105
Phone: 415.357.4300
Fax: 415.357.4301

| | | |
|---|---|---|
| 1 | MR. CANNON: Object to the form of the | 09:53 |
| 2 | question. | 09:53 |
| 3 | THE WITNESS: I think if the opening offer was | 09:53 |
| 4 | a take-it-or-leave-it offer, you know, that objectively | 09:53 |
| 5 | was above the RAND level, then that's possible that | 09:54 |
| 6 | that -- and even that, you know, you got to be careful | 09:54 |
| 7 | because, you know, what is -- you know, what did they | 09:54 |
| 8 | know about what RAND was or wasn't. But, you know, | 09:54 |
| 9 | maybe that would be something you'd want to look at. | 09:54 |
| 10 | But otherwise, an opening offer, especially in | 09:54 |
| 11 | a negotiation like this, where there's going to be | 09:54 |
| 12 | probably a lot of complex terms in the ultimate | 09:54 |
| 13 | agreement, which bring you very far from the opening | 09:54 |
| 14 | offer, there's a lot of information exchanged that | 09:54 |
| 15 | brings you very far from the opening offer, and what you | 09:54 |
| 16 | knew then. You know, the whole cross-licensing issue. | 09:54 |
| 17 | It's just that a lot of things are going to happen in | 09:54 |
| 18 | between an opening offer and a final negotiated rate. | 09:54 |
| 19 | And in that context, the opening offer is -- is | 09:54 |
| 20 | not going to play a huge role in where you end up, as | 09:54 |
| 21 | long as, again, people are engaged in their RAND | 09:54 |
| 22 | negotiation. | 09:54 |
| 23 | BY MR. PRITIKIN: Q. Suppose the opening offer | 09:54 |
| 24 | is blatantly unreasonable, would that be consistent with | 09:55 |
| 25 | good faith? | 09:55 |

HIGHLY CONFIDENTIAL
GREGORY LEONARD, Ph.D. - 6/24/2013

Page 40

| | | |
|---|---|---|
| 1 | MR. CANNON:  Object to the form of the | 09:55 |
| 2 | question. | 09:55 |
| 3 | THE WITNESS:  Again, I don't think that by | 09:55 |
| 4 | itself.  You know, if -- I think what would -- it | 09:55 |
| 5 | depends what happens next.  Because, of course, it's | 09:55 |
| 6 | hard to decide whether it's unreasonable.  And if, you | 09:55 |
| 7 | know, Microsoft came back and said -- so let's say | 09:55 |
| 8 | Motorola had, you know, proposed an extremely high | 09:55 |
| 9 | royalty rate, and if Motorola -- if Microsoft came back | 09:55 |
| 10 | and said, you know, that's just completely ridiculous | 09:55 |
| 11 | and here's the five reasons why, and Motorola said, | 09:55 |
| 12 | okay, you're right and then things went from there, then | 09:55 |
| 13 | I think that that -- you know, you're going to -- you | 09:55 |
| 14 | could very well end up with a RAND rate.  And the | 09:55 |
| 15 | opening offer really has nothing to do with the outcome. | 09:55 |
| 16 | BY MR. PRITIKIN:  Q.  Let's ignore everything | 09:55 |
| 17 | that happens after the opening offer.  And I want you | 09:55 |
| 18 | to -- for purposes of this next line of questions -- to | 09:55 |
| 19 | focus just on the opening offer and tell me whether you | 09:55 |
| 20 | think the conduct is consistent or inconsistent with | 09:56 |
| 21 | good faith.  Let's suppose that the patent owner puts | 09:56 |
| 22 | forward an offer that is so high that it is blatantly | 09:56 |
| 23 | unreasonable, do you think that by itself is enough to | 09:56 |
| 24 | be -- to show bad faith? | 09:56 |
| 25 | MR. CANNON:  Object to the form of the | 09:56 |

HIGHLY CONFIDENTIAL
GREGORY LEONARD, Ph.D. - 6/24/2013

Page 41

| | | |
|---|---|---|
| 1 | question. | 09:56 |
| 2 | THE WITNESS: First of all, that's not | 09:56 |
| 3 | consistent with the facts here. So it's a hypothetical. | 09:56 |
| 4 | Again, I think I would want to look at what | 09:56 |
| 5 | happens when the -- the counterparty calls them on that. | 09:56 |
| 6 | Because, you know, again there are a lot reasons why you | 09:56 |
| 7 | could have a rate that seems -- or even is unreasonable, | 09:56 |
| 8 | there could be a typo in the letter, for God sake. | 09:56 |
| 9 | There could be -- you know, you're such a rush again to | 09:56 |
| 10 | do it that you don't think about it very hard. There's | 09:57 |
| 11 | a lot of reasons why that number could seem | 09:57 |
| 12 | unreasonable. | 09:57 |
| 13 | And the question is really whether that ends up | 09:57 |
| 14 | kind of being the -- a take-it-or-leave-it offer, for | 09:57 |
| 15 | instance. Or that you -- that the licensor sticks to an | 09:57 |
| 16 | unreasonable number throughout the course of a | 09:57 |
| 17 | negotiation, despite the arguments that have been put to | 09:57 |
| 18 | it as to why that's unreasonable. So I would really | 09:57 |
| 19 | want to look forward. I think that's pretty hard to | 09:57 |
| 20 | infer bad faith just from that one thing, which is the | 09:57 |
| 21 | opening offer. | 09:57 |
| 22 | BY MR. PRITIKIN: Q. Even an opening offer | 09:57 |
| 23 | that is so high that it is blatantly unreasonable, you | 09:57 |
| 24 | would not infer bad faith just from that; is that | 09:57 |
| 25 | correct? | 09:57 |

HIGHLY CONFIDENTIAL
GREGORY LEONARD, Ph.D. - 6/24/2013

Page 42

| | | |
|---|---|---|
| 1 | A. Again, what if it was a mistake? | 09:57 |
| 2 | Q. It wasn't a mistake in this case, was it? | 09:57 |
| 3 | A. I don't think that this was so blatantly -- you | 09:57 |
| 4 | know, I've explain why I think that they came up with | 09:57 |
| 5 | this number. And I don't think there's any evidence, | 09:58 |
| 6 | again, that Motorola wouldn't have responded to | 09:58 |
| 7 | arguments about why that number was -- was too high. | 09:58 |
| 8 | Q. Let's leave aside the circumstance where | 09:58 |
| 9 | there's a typographical error. | 09:58 |
| 10 | Is it your opinion that in making an opening | 09:58 |
| 11 | offer that is so high that it's blatantly unreasonable, | 09:58 |
| 12 | that that in and of itself would not be evidence of bad | 09:58 |
| 13 | faith? That you always want to look at the subsequent | 09:58 |
| 14 | conduct? | 09:58 |
| 15 | A. I think just as a general matter, it would help | 09:58 |
| 16 | to take a look at that next round of -- you know, is | 09:58 |
| 17 | there some level, you know, beyond which -- here again, | 09:58 |
| 18 | people can just be wrong too. I mean that's the other | 09:58 |
| 19 | issue here. People can just simply make a mistake or be | 09:58 |
| 20 | incorrect about things. | 09:58 |
| 21 | And part of a negotiation is correcting | 09:58 |
| 22 | people's mistakes or giving them more information. And | 09:59 |
| 23 | so that's why it seems to me it's quite important to | 09:59 |
| 24 | look at what happens throughout the negotiation. And | 09:59 |
| 25 | that's what really allows you to see whether people are | 09:59 |

HIGHLY CONFIDENTIAL
GREGORY LEONARD, Ph.D. - 6/24/2013

Page 43

| | | |
|---|---|---|
| 1 | saying, you know, I'm going to respond to a reasonable | 09:59 |
| 2 | argument about why my patent isn't worth very much.  If | 09:59 |
| 3 | that in fact is true. | 09:59 |
| 4 |     Or if they don't do that, if they maintain a, | 09:59 |
| 5 | you know, significant demand when there's lots of | 09:59 |
| 6 | evidence that their patent wasn't worth very much, then | 09:59 |
| 7 | that's -- that's a different story.  But that's the | 09:59 |
| 8 | think you learn over the course of a negotiation, not | 09:59 |
| 9 | just from an opening offer. | 09:59 |
| 10 |   Q.  You know, let me give you a hypothetical. | 09:59 |
| 11 | Suppose that Motorola's strategy here was to set the | 09:59 |
| 12 | state for securing injunctions against Microsoft by | 09:59 |
| 13 | putting forth offers that it knew were unreasonable and | 09:59 |
| 14 | that Microsoft would not accept.  If that was the | 09:59 |
| 15 | strategy, would you consider that to be inconsistent | 09:59 |
| 16 | with good faith? | 10:00 |
| 17 |   A.  I'm sorry.  You're going to have to re-read the | 10:00 |
| 18 | question. | 10:00 |
| 19 |     MR. PRITIKIN:  Could you read it back, please. | 10:00 |
| 20 |     (Record read as follows:  "Suppose that | 10:00 |
| 21 | Motorola's strategy here was to set the state for | 09:59 |
| 22 | securing injunctions against Microsoft by putting forth | 09:59 |
| 23 | offers that it knew were unreasonable and that Microsoft | 09:59 |
| 24 | would not accept.  If that was the strategy, would you | 09:59 |
| 25 | consider that to be inconsistent with good faith?") | 09:59 |

| | | |
|---|---|---|
| 1 | determination. | 11:59 |
| 2 | BY MR. PRITIKIN:  Q.  And for purpose of your | 11:59 |
| 3 | analysis here, did you assume that a blatantly | 11:59 |
| 4 | unreasonable offer to an implementer could be a | 11:59 |
| 5 | violation of the RAND commitment all by itself? | 11:59 |
| 6 | MR. CANNON:  Object to the form of the | 11:59 |
| 7 | question. | 12:00 |
| 8 | THE WITNESS:  I don't know if I thought about | 12:00 |
| 9 | things in those terms.  What I thought -- again, what I | 12:00 |
| 10 | did was I looked at the -- the situation and I looked at | 12:00 |
| 11 | what Motorola did.  And it seems to me, based on again | 12:00 |
| 12 | everything I'm describing here, that that was a | 12:00 |
| 13 | reasonable thing to do in that context and situation. | 12:00 |
| 14 | Whether there's some other hypothetical situation where | 12:00 |
| 15 | an opening offer wouldn't be consistent with, you know, | 12:00 |
| 16 | engaging in a RAND negotiation that was unreasonable or | 12:00 |
| 17 | blatantly unreasonable, that would be a different | 12:00 |
| 18 | situation.  But that's not this one. | 12:00 |
| 19 | BY MR. PRITIKIN:  Q.  Is it your opinion that a | 12:00 |
| 20 | blatantly unreasonable offer all by itself is something | 12:00 |
| 21 | that the -- as a matter of economics, that the owner of | 12:00 |
| 22 | standard-essential patents can make consistent with its | 12:00 |
| 23 | RAND commitment? | 12:00 |
| 24 | MR. CANNON:  Object to -- object to the form of | 12:00 |
| 25 | the question. | 12:00 |

| | | |
|---|---|---|
| 1 | THE WITNESS: Well, again, I mean it's not the | 12:01 |
| 2 | situation here. But in some general hypothetical, I | 12:01 |
| 3 | think again it would depend even there on the context of | 12:01 |
| 4 | what was -- what was going on. | 12:01 |
| 5 | BY MR. PRITIKIN: Q. So it be fair to say that | 12:01 |
| 6 | in some circumstances an offer that you would | 12:01 |
| 7 | characterize as blatantly unreasonable, because it was | 12:01 |
| 8 | so high, might be fine, in your opinion? | 12:01 |
| 9 | A. Again, if it didn't lead to, in -- you know, in | 12:01 |
| 10 | a sense, getting in the way of ultimately getting to a | 12:01 |
| 11 | RAND royalty, since that's the goal of this entire | 12:01 |
| 12 | enterprise, it would seem to me that that would be a | 12:01 |
| 13 | situation where it -- you know, it's not in relation -- | 12:01 |
| 14 | it's -- it's not really relevant or an issue. | 12:01 |
| 15 | If on the other hand it was a blatantly | 12:01 |
| 16 | unreasonable offer that somebody stuck to through a | 12:01 |
| 17 | negotiation, as I testified before, that that might -- | 12:01 |
| 18 | than that would be a different story. But that's, | 12:02 |
| 19 | again, not the situation we have here. | 12:02 |
| 20 | Q. Do you think the opening offer in the RAND | 12:02 |
| 21 | context is meaningless? | 12:02 |
| 22 | A. I think it depends again entirely on the | 12:02 |
| 23 | overall context. In a situation like this, where most | 12:02 |
| 24 | of the licensing agreements that Motorola, for instance, | 12:02 |
| 25 | has entered into is very complex with lots of things | 12:02 |

| | | |
|---|---|---|
| 1 | not in my area of expertise. | 12:25 |
| 2 |     Q.  And you're not suggesting or implying that | 12:25 |
| 3 | Microsoft did anything wrong by filing a lawsuit when it | 12:25 |
| 4 | did, are you? | 12:25 |
| 5 |     A.  I'm not -- either way, again lawful, unlawful, | 12:25 |
| 6 | legally entitled, not legally entitled, that's not | 12:25 |
| 7 | opinions that I am reaching.  I'm just making the simple | 12:25 |
| 8 | point that, you know, if they let it play out, then | 12:25 |
| 9 | first of all, it might have actually gotten into an | 12:26 |
| 10 | agreement.  Second of all, it would at least allow us to | 12:26 |
| 11 | have more information on -- on -- on what -- obviously | 12:26 |
| 12 | what would have happened. | 12:26 |
| 13 |     Q.  In reaching your conclusions in this case, did | 12:26 |
| 14 | you assume that Microsoft had some obligation to | 12:26 |
| 15 | negotiate in good faith with Motorola? | 12:26 |
| 16 |     A.  I don't think that that turned out to be | 12:26 |
| 17 | important for any of my opinions.  I think I said | 12:26 |
| 18 | earlier, though, that in a RAND context that the | 12:26 |
| 19 | licensee also I think should -- and again, it's not | 12:26 |
| 20 | legal, it's just my view as an economist.  But, you | 12:26 |
| 21 | know, it does take two to tango.  And so they should -- | 12:26 |
| 22 | they should have to negotiate in good faith as well. | 12:26 |
| 23 |     Q.  And so the fact that Microsoft filed the | 12:26 |
| 24 | lawsuit and did not engage in negotiations before filing | 12:26 |
| 25 | the lawsuit, did that bear any part in your analysis as | 12:26 |