# EXHIBIT 8

# In The Matter Of:

## *MICROSOFT CORPORATION*
## *v.*
## *MOTOROLA INC., et al.*

_____

## *MAXIMILIAN HAEDICKE - Vol. 1*
### *June 14, 2013*

_____

**MERRILL CORPORATION**

**LegaLink, Inc.**

135 Main Street
4th Floor
San Francisco, CA 94105
Phone: 415.357.4300
Fax: 415.357.4301

1    you expect that they would enter into a license and          09:21:50

2    dismiss the case?                                            09:21:52

3        A    Depends if they also agree on the other issues      09:21:53

4    which are involved in License Agreement.  The license        09:21:57

5    fee is one of the important aspects, but there are other     09:22:01

6    aspects which also have to be covered, and they will         09:22:07

7    only have a full-fledged and valid contract if they          09:22:10

8    agreed on all essential elements of the contract, and        09:22:13

9    only then will they dismiss the case, or would they          09:22:16

10   make -- would they render the case moot.                     09:22:20

11       Q    Let's suppose that the parties do not agree on      09:22:22

12   a license fee.                                               09:22:25

13           Does the Orange Book decision say that the           09:22:26

14   defendant must use the second alternative option of          09:22:30

15   letting the patent holder set the royalty?                   09:22:34

16       A    Please repeat the question.                         09:22:35

17       Q    If the parties do not agree on a license fee --     09:22:37

18       A    Yes.                                                09:22:40

19       Q    -- does the Orange Book decision say that the       09:22:40

20   defendant must use the second option of allowing the         09:22:43

21   patent holder to set the royalty?                            09:22:47

22       A    They have the option.  They do not -- they          09:22:48

23   must -- they have the option to do it.                       09:22:53

24       Q    Let's talk about a proceeding in which the          09:22:55

25   court -- a court exams the royalty that has been set by      09:22:58

| | | |
|---|---|---|
| 1 | a patent holder through the alternative procedure. | 09:23:03 |
| 2 | What evidence is considered in a proceeding | 09:23:05 |
| 3 | like that? | 09:23:07 |
| 4 | MS. BERRY:  Objection -- | 09:23:09 |
| 5 | THE WITNESS:  This is -- | 09:23:09 |
| 6 | MS. BERRY:  -- lack of foundation. | 09:23:11 |
| 7 | THE WITNESS:  -- this is speculative because | 09:23:11 |
| 8 | I'm not aware of any rate setting procedures which have | 09:23:16 |
| 9 | been brought to my attention.  I have not taken part in | 09:23:19 |
| 10 | any of those, so, of course, I cannot know the details, | 09:23:23 |
| 11 | and I can only speculate, but my speculation would be | 09:23:26 |
| 12 | that the parties will determine the rate according to | 09:23:30 |
| 13 | the -- the standards which are used also when it comes | 09:23:35 |
| 14 | to the determination of license fees; for example, when | 09:23:39 |
| 15 | it's about damages or in cases like this.  So I would | 09:23:42 |
| 16 | assume that similar standards would be applied. | 09:23:46 |
| 17 | BY MR. LOVE: | 09:23:50 |
| 18 | Q   And I think we discussed this earlier, so | 09:23:52 |
| 19 | correct me if I'm wrong, but the standard used to | 09:23:54 |
| 20 | evaluate the rate in that proceeding would be whether | 09:23:56 |
| 21 | the rate was within the limits set by antitrust law; is | 09:23:59 |
| 22 | that correct? | 09:24:03 |
| 23 | A   Yes. | 09:24:03 |
| 24 | Q   What happens if the rate set by the patent | 09:24:03 |
| 25 | holder does not meet that standard? | 09:24:08 |

MAXIMILIAN HAEDICKE – 6/14/2013

Page 23

| | | | |
|---|---|---|---|
| 1 | A | In 315 procedure? | 09:24:09 |
| 2 | Q | Yes. | 09:24:14 |
| 3 | A | What happens if -- | 09:24:14 |

4    Q    What happens if the court determines that the    09:24:16

5    rate set by the patent holder is not within the limits    09:24:19

6    of antitrust law; what will the court do?    09:24:22

7        A    Then a -- a lower rate will be set, which is    09:24:25

8    still in the limits.  The court will control the offer    09:24:30

9    which has been given by the patent holder, if there is    09:24:36

10    such an offer, and will determine whether this is within    09:24:42

11    the boundaries of antitrust law, and if not, the rate    09:24:45

12    will be set according to antitrust law and the other    09:24:49

13    important laws which come into play.    09:24:55

14        Q    Does the license seeker have to pay the rate    09:24:58

15    that was set by the patent holder until the court rules?    09:25:01

16        A    Payment means transfer of funds to the -- to    09:25:03

17    the licensor?  No.  He has to escrow money, as much --    09:25:10

18    as much money as he deems appropriate.  If he wants to    09:25:15

19    be on the absolutely safe side, he may depose estimate    09:25:21

20    escrow as much money as the patent holder has demanded,    09:25:26

21    but as I said before, of course, if he thinks this is    09:25:30

22    too much, he has the option to go below the rate    09:25:34

23    demanded by the patent holder and let this rate be    09:25:41

24    reviewed, and, of course -- yeah, so.    09:25:44

25        Q    Do you know how long a proceeding -- a court    09:25:47

MAXIMILIAN HAEDICKE – 6/14/2013

Page 24

| | | |
|---|---|---|
| 1 | proceeding under Section 315 to evaluate a patent | 09:25:52 |
| 2 | holder's royalty rate takes? | 09:25:55 |
| 3 | A   This is pure speculation because I'm not –– I'm | 09:25:56 |
| 4 | not –– these have not taken place, as far as my | 09:26:00 |
| 5 | knowledge is concerned.  I could only guess. | 09:26:02 |
| 6 | Q   So have there been any reported German | 09:26:04 |
| 7 | decisions that you are aware of that hold that the rate | 09:26:07 |
| 8 | set by a patent holder under the alternative Orange Book | 09:26:10 |
| 9 | process is acceptable? | 09:26:13 |
| 10 | A   As there are no reported 315 procedures, I'm | 09:26:14 |
| 11 | not aware of that –– | 09:26:18 |
| 12 | (Telephonic interruption.) | 09:26:18 |
| 13 | MR. LOVE:  I'll –– I'll ask again just so we | 09:26:27 |
| 14 | have a clear question and answer. | 09:26:29 |
| 15 | Q   As far as you are aware, there are no reported | 09:26:30 |
| 16 | German decisions showing this second alternative Orange | 09:26:32 |
| 17 | Book procedure? | 09:26:36 |
| 18 | A   The rate setting, the second –– the rate | 09:26:36 |
| 19 | setting –– | 09:26:38 |
| 20 | Q   Yes. | 09:26:40 |
| 21 | A   –– lawsuit?  No, the rate has not been | 09:26:40 |
| 22 | reported. | 09:26:44 |
| 23 | Q   So we believe –– you believe that the standard | 09:26:44 |
| 24 | that a court would apply in that proceeding is | 09:26:47 |
| 25 | whether –– is –– is to set a royalty within the limits | 09:26:50 |

MAXIMILIAN HAEDICKE – 6/14/2013

Page 25

| | | |
|---|---|---|
| 1 | of antitrust law; correct? | 09:26:52 |
| 2 | A   Yes. | 09:26:54 |
| 3 | Q   But we don't know for sure because there are no | 09:26:55 |
| 4 | decisions? | 09:26:58 |
| 5 | MS. BERRY:  Objection; form. | 09:26:59 |
| 6 | THE WITNESS:  Purely speculating.  I wouldn't | 09:27:01 |
| 7 | see any other standards which might be reasonable.  I | 09:27:05 |
| 8 | wouldn't see any of those standards could come into | 09:27:07 |
| 9 | play, so it's not a -- yeah, I do not only believe it, | 09:27:11 |
| 10 | there are strong arguments for that. | 09:27:14 |
| 11 | BY MR. LOVE: | 09:27:15 |
| 12 | Q   Suppose that a patent holder rejected an Orange | 09:27:16 |
| 13 | Book offer that a license seeker had made and that | 09:27:20 |
| 14 | later -- | 09:27:24 |
| 15 | A   Who was? | 09:27:25 |
| 16 | Q   Sure.  Let me start again. | 09:27:26 |
| 17 | So we are talking about the first Orange Book, | 09:27:27 |
| 18 | not the alternative procedure, but the straightforward | 09:27:31 |
| 19 | Orange Book offer. | 09:27:33 |
| 20 | A   Yes. | 09:27:34 |
| 21 | Q   So suppose a patent holder rejects an Orange | 09:27:34 |
| 22 | Book offer and then a German court finds that the | 09:27:38 |
| 23 | royalty offer was so high that that rejection was an | 09:27:41 |
| 24 | abuse of antitrust law. | 09:27:43 |
| 25 | A   Yes. | 09:27:43 |

MAXIMILIAN HAEDICKE – 6/14/2013

Page 27

| | | | |
|---|---|---|---|
| 1 | A | Yes. | 09:28:55 |
| 2 | Q | What -- is -- let me ask it a different way. | 09:28:55 |
| 3 | | Is there a reported decision of a German court | 09:28:59 |
| 4 | | that states that? | 09:29:01 |
| 5 | A | No. | 09:29:02 |
| 6 | Q | Has the European Commission made that claim? | 09:29:02 |
| 7 | A | No. | 09:29:06 |
| 8 | Q | Has the European Court of Justice made that | 09:29:06 |
| 9 | | claim? | 09:29:09 |
| 10 | A | No. | 09:29:10 |
| 11 | Q | Did you rely on Judge Robart's April 19th, 2013 | 09:29:10 |
| 12 | | findings of fact and conclusions of law -- | 09:29:21 |
| 13 | A | No. | 09:29:22 |
| 14 | Q | I'll just finish -- let me just finish the | 09:29:22 |
| 15 | | question. | 09:29:26 |
| 16 | A | Sorry. | 09:29:26 |
| 17 | Q | Did you -- that's okay. | 09:29:26 |
| 18 | | Did you rely on Judge Robart's April 19th | 09:29:28 |
| 19 | | findings of fact and conclusions of law in forming your | 09:29:31 |
| 20 | | opinions in this case? | 09:29:32 |
| 21 | A | No. | 09:29:33 |
| 22 | Q | Why not? | 09:29:33 |
| 23 | A | They haven't been produced to -- they haven't | 09:29:36 |
| 24 | | been given to me.  I'm a expert on German law, and | 09:29:40 |
| 25 | | certainly not an expert on U.S. law, and it's not -- I | 09:29:43 |

MAXIMILIAN HAEDICKE – 6/14/2013

Page 28

```
 1    don't see it as my -- my duty here to -- to second-guess     09:29:46
 2    opinions of a American judge.                                09:29:49
 3        Q   Did you know about the opinion?                      09:29:52
 4        A   No.                                                  09:29:54
 5        Q   Did you read about it in the news?                   09:29:55
 6        A   I -- there are certain logs on which these           09:29:57
 7    things are reported, yes.  I'm aware, but I never went       09:30:05
 8    into detail.  I never -- I never even went into the          09:30:08
 9    specific issues of that.                                     09:30:11
10        Q   Are you aware that Judge Robart made specific        09:30:12
11    findings concerning a RAND royalty for Motorola's H.264      09:30:15
12    patent portfolio?                                            09:30:19
13        A   I'm aware that these things were being               09:30:20
14    discussed, but I'm not aware -- not informed about any       09:30:23
15    of the details of this proceeding.                           09:30:25
16        Q   Did you ask Motorola's counsel to provide you a      09:30:27
17    copy of Judge Robart's findings and conclusions?            09:30:32
18        A   No.                                                  09:30:34
19        Q   Do you believe that Judge Robart's findings and      09:30:34
20    conclusions are not relevant to your opinions in your        09:30:39
21    expert reports?                                              09:30:41
22        A   I'm only commenting on German law.  I'm an           09:30:42
23    expert on German law.  My duty and my assignment was to      09:30:47
24    describe the Germany situation, the German Orange Book       09:30:53
25    procedure, and given these facts, I don't think these        09:30:58
```

MAXIMILIAN HAEDICKE – 6/14/2013

Page 29

| | |
|---|---|
| 1 | issues are relevant for my opinion, because it's purely | 09:31:03 |
| 2 | German law. | 09:31:07 |
| 3 | Q   Are you familiar with the term "holdup" in the | 09:31:08 |
| 4 | context of standard essential patents? | 09:31:11 |
| 5 | A   Yes. | 09:31:14 |
| 6 | Q   Do you agree that demanding excessive royalties | 09:31:14 |
| 7 | from implementers of a standard is holdup? | 09:31:18 |
| 8 | MS. BERRY:  Objection; form. | 09:31:21 |
| 9 | THE WITNESS:  No. | 09:31:22 |
| 10 | BY MR. LOVE: | 09:31:22 |
| 11 | Q   Do you agree that demanding royalties that | 09:31:24 |
| 12 | exceed the value of the patented technology is holdup? | 09:31:26 |
| 13 | A   Maybe we have to come back to the definition of | 09:31:31 |
| 14 | holdup.  I don't know in which context you use the word | 09:31:34 |
| 15 | "holdup" here. | 09:31:40 |
| 16 | Q   Well, I -- I guess my questions are part of | 09:31:40 |
| 17 | understanding what you believe the definition of holdup | 09:31:42 |
| 18 | is, so my first question was, "Do you agree that | 09:31:46 |
| 19 | demanding excessive royalties from implementers of a | 09:31:49 |
| 20 | standard is holdup?"  And I believe that you said "No." | 09:31:51 |
| 21 | My second question is:  Do you agree that | 09:31:54 |
| 22 | demanding royalties that exceed the value of patented | 09:31:57 |
| 23 | technology is holdup? | 09:31:59 |
| 24 | A   It's pure -- it's negotiating a contract. | 09:32:00 |
| 25 | People offer and people make counter-offers and then | 09:32:05 |

| | |
|---|---|
| 1 | royalty, the Mannheim Court does not evaluate it as part | 09:43:00 |
| 2 | of the infringement proceeding. | 09:43:04 |
| 3 |     A   This is very speculative because these -- these | 09:43:05 |
| 4 | things have not -- such a case has not happened, but I | 09:43:07 |
| 5 | assume that the same rules would apply; that because the | 09:43:12 |
| 6 | test is -- if the objection offer of a license offer | 09:43:18 |
| 7 | violates antitrust law and in order to determine whether | 09:43:25 |
| 8 | or not there is a violation of antitrust law, you have | 09:43:30 |
| 9 | to consider all relevant facts and specifics of the | 09:43:33 |
| 10 | case, and all these specifics of the case together will | 09:43:36 |
| 11 | bring the court to a evaluation whether or not an offer | 09:43:41 |
| 12 | is -- an offer is in accordance with antitrust law. | 09:43:48 |
| 13 |     Q   So Microsoft did make an Orange Book offer in | 09:43:55 |
| 14 | Mannheim; correct? | 09:43:59 |
| 15 |     A   That's what I understand. | 09:44:00 |
| 16 |     Q   Did the Mannheim Court find that Microsoft did | 09:44:01 |
| 17 | not offer a reasonable rate? | 09:44:04 |
| 18 |     A   The Mannheim Court said that it was not a | 09:44:05 |
| 19 | violation of antitrust law if Motorola did not accept | 09:44:13 |
| 20 | this offer. | 09:44:18 |
| 21 |     Q   Did the Mannheim Court find that Microsoft did | 09:44:19 |
| 22 | not offer a reasonable rate? | 09:44:22 |
| 23 |     MS. BERRY:  Objection; asked and answered. | 09:44:24 |
| 24 |     THE WITNESS:  Reasonable?  If you take the word | 09:44:26 |
| 25 | "reasonable" and say that -- and as I said before, | 09:44:31 |

```
 1   reasonable and antitrust are identical standards -- then      09:44:34
 2   the same standards apply, and then you can derive from        09:44:38
 3   the decision that the -- the offer of Microsoft was not       09:44:41
 4   such that it would be in accordance -- the rejection of       09:44:49
 5   the offer would be in accordance with antitrust law.          09:44:55
 6          (Exhibit 1 was marked for identification by the        09:45:03
 7          Court Reporter.)                                       09:45:03
 8          MR. LOVE:  So I'm going to hand you what's been        09:45:04
 9   marked as Exhibit 1.  Exhibit 1 bears the Bates stamp         09:45:05
10   MOTM_WASH1823_0602118.                                        09:45:09
11     Q    If you turn to the second page, you will see           09:45:15
12   that this is a translation of the Mannheim Court's            09:45:17
13   judgment on May 2nd, 2012?                                    09:45:21
14     A    Mm-hmm.                                                09:45:24
15     Q    Could you turn to page 43 of the English              09:45:24
16   translation of the decision.  Bears the Bates stamp           09:45:28
17   ending in 161.                                                09:45:38
18          On page 43 the last sentence before Section C          09:45:38
19   says, "The taking of evidence on the issue of whether         09:45:39
20   the offer is reasonable (in any event) is thus not            09:45:40
21   required."                                                    09:45:44
22          Do you see that?                                       09:45:44
23     A    Yes.                                                   09:45:45
24     Q    So the Mannheim Court did not evaluate whether         09:45:45
25   Microsoft's offer was reasonable; correct?                    09:45:48
```

1      A    No.  You have to read it differently.  The          09:45:50

2    taking of evidence is not required.  The taking of         09:45:53

3    evidence.  So the idea is to have a swift and clear         09:45:56

4    infringement action, and in this infringement -- this      09:46:00

5    infringement action should not be overloaded by taking     09:46:04

6    evidence in order to determine the reasonableness of the   09:46:07

7    offer because then you would not have a swift and clear     09:46:11

8    infringement action.                                        09:46:16

9          The idea of the -- of the decision is to say if      09:46:17

10   a rate has been set, then it's okay.  Otherwise, if        09:46:20

11   there's unclearness as to the rate -- we don't want to     09:46:25

12   overfreight -- to overload this infringement proceeding    09:46:28

13   with the -- with these issues -- then the parties should   09:46:33

14   go the other way, should go to a Section 315 proceeding.   09:46:39

15   And then in the rate setting proceeding of this -- this    09:46:46

16   other alternative, all these issues would -- would be      09:46:50

17   able -- would come up.  So I read it differently.          09:46:53

18     Q    Did the Mannheim Court evaluate whether             09:46:57

19   Microsoft's offer was RAND?                                 09:46:59

20     A    It evaluated whether the rejection of               09:47:02

21   Microsoft's offer was a violation of antitrust law, and    09:47:06

22   it came to the conclusion that there are serious doubts    09:47:10

23   as to whether the -- the offer is -- is high enough        09:47:15

24   under all circumstances, so the rejection of this offer    09:47:19

25   was no violation of antitrust law, and, accordingly, you   09:47:25

| | | |
|---|---|---|
| 1 | might say it was not RAND. | 09:47:29 |
| 2 | Q    So you believe the Mannheim Court says | 09:47:32 |
| 3 | Microsoft's offer was not RAND? | 09:47:35 |
| 4 | MS. BERRY:  Objection; form, misstates | 09:47:38 |
| 5 | testimony. | 09:47:40 |
| 6 | THE WITNESS:  It says by –– the Mannheim Court | 09:47:40 |
| 7 | said, Microsoft's offer is not such that the rejection | 09:47:44 |
| 8 | of this offer is a violation of antitrust law. | 09:47:49 |
| 9 | BY MR. LOVE: | 09:47:54 |
| 10 | Q    And you believe that standard is the same as | 09:47:54 |
| 11 | RAND? | 09:47:56 |
| 12 | A    I believe that RAND and accordance with | 09:47:56 |
| 13 | antitrust law is similar. | 09:48:02 |
| 14 | Q    So the "R" in RAND stands for reasonable; | 09:48:04 |
| 15 | correct? | 09:48:08 |
| 16 | A    Yes. | 09:48:08 |
| 17 | Q    The Mannheim Court did not consider any | 09:48:09 |
| 18 | evidence as to whether Microsoft's offer was reasonable; | 09:48:12 |
| 19 | correct? | 09:48:15 |
| 20 | A    It made a high-level evaluation of the issues. | 09:48:15 |
| 21 | Q    But it did not take any evidence on whether | 09:48:20 |
| 22 | Microsoft's offer was reasonable; correct? | 09:48:22 |
| 23 | A    That is correct, as it is not part of the this | 09:48:24 |
| 24 | infringement procedure. | 09:48:29 |
| 25 | Q    Microsoft made an Orange Book offer 2 eurocents | 09:48:30 |

MAXIMILIAN HAEDICKE – 6/14/2013

Page 43

| | | |
|---|---|---|
| 1 | per unit, up to 10 million units per year, and | 09:48:34 |
| 2 | 1 eurocent per unit for units beyond 10 million. | 09:48:36 |
| 3 | Is that your understanding? | 09:48:39 |
| 4 | A   This is my understanding. | 09:48:41 |
| 5 | Q   And Motorola rejected that offer; correct? | 09:48:42 |
| 6 | A   This is how I read the facts. | 09:48:45 |
| 7 | Q   And the Mannheim Court found that Motorola's | 09:48:46 |
| 8 | rejection was acceptable because it was not an obvious | 09:48:49 |
| 9 | antitrust violation; correct? | 09:48:52 |
| 10 | A   Yes. | 09:48:53 |
| 11 | Q   Did the Mannheim Court apply a version of the | 09:48:53 |
| 12 | Orange Book procedure that is more favorable to a patent | 09:49:03 |
| 13 | holder than the original Orange Book procedure? | 09:49:07 |
| 14 | MS. BERRY:  Objection; form. | 09:49:10 |
| 15 | THE WITNESS:  More favorable to the? | 09:49:11 |
| 16 | MR. LOVE:  Patent holder. | 09:49:16 |
| 17 | THE WITNESS:  I think you -- it's very | 09:49:22 |
| 18 | difficult to say "yes" or "no" to that because the -- in | 09:49:24 |
| 19 | the Orange Book decision, the general -- the general | 09:49:27 |
| 20 | guidelines were set up, and then it's the -- the duty of | 09:49:30 |
| 21 | the lower courts to further develop it, and it's -- the | 09:49:35 |
| 22 | Mannheim Court is fully in the range of what the German | 09:49:39 |
| 23 | Supreme Court has said, but, of course, what these -- | 09:49:43 |
| 24 | this general street, which has been shown by the German | 09:49:48 |
| 25 | Federal Supreme Court, has to be defined more clearly | 09:49:54 |

MAXIMILIAN HAEDICKE – 6/14/2013

Page 51

```
 1   BY MR. LOVE:                                          09:58:21

 2       Q    The Mannheim Court thought Microsoft's offer 09:58:24

 3   was too low; correct?                                 09:58:26

 4       A    This is how I understand the decision, yes.  09:58:27

 5       Q    Would you agree that Microsoft would have    09:58:30

 6   needed to make a higher Orange Book offer to avoid an 09:58:33

 7   injunction under the Orange Book procedure?           09:58:36

 8       A    No.  They could have easily taken the other  09:58:38

 9   road.                                                 09:58:40

10       Q    If they were going to use the first          09:58:41

11   alternative, the first alternative Orange Book        09:58:44

12   procedure, and made a new offer to avoid an injunction, 09:58:46

13   the offer would have had to be higher than its initial 09:58:51

14   offer; correct?                                       09:58:53

15       A    Yes.                                         09:58:54

16       Q    What number would Microsoft have needed to   09:58:54

17   offer to avoid an injunction?                         09:58:58

18       A    I have no opinion on that because all very much 09:59:00

19   depends on the specifics of the -- of the case, and I'm 09:59:04

20   not aware of all these specifics, and as there is the 09:59:07

21   risk, as it is difficult to assess that, this is why we 09:59:12

22   have the other procedure, the 315 procedure, so I cannot 09:59:15

23   comment on how much money would have been necessary to 09:59:19

24   have a RAND rate.  I can just say, if there's          09:59:22

25   uncertainty as to this, then it's advisable to use the 09:59:26
```

MAXIMILIAN HAEDICKE – 6/14/2013

Page 52

```
1    other road, the 315 road.                          09:59:29
2        Q   Did you ask anyone at Motorola what number  09:59:31
3    Microsoft would have needed to offer to avoid an    09:59:34
4    injunction?                                         09:59:36
5        A   No.  No.                                    09:59:37
6        Q   Why not?                                    09:59:37
7        A   Because this is calculation.  This is -- it's  09:59:38
8    outside my expertise.  This is economic and -- and  09:59:43
9    business, and so it's not -- I'm not able to comment on  09:59:46
10   this.                                               09:59:49
11       Q   I understood the conclusion of your expert  09:59:49
12   report was that Microsoft could have avoided an     09:59:53
13   injunction in Germany by following the Orange Book  09:59:56
14   procedure; correct?                                 09:59:59
15       A   That's correct.                             09:59:59
16       Q   But you don't know what Motorola would have  10:00:00
17   done if Microsoft had made a higher offer under the  10:00:01
18   first Orange Book procedure?                        10:00:04
19       A   It's pure speculation, but if it's high enough,  10:00:05
20   then I assume it would have been accepted.  If they  10:00:08
21   don't agree, the two parties, then it's advisable to go  10:00:13
22   the other way, to use the other road.               10:00:16
23       Q   Would Microsoft have been able to avoid an  10:00:18
24   injunction in Mannheim by offering to accept a license  10:00:21
25   at the RAND rate set by Judge Robart of less than half a  10:00:25
```

MAXIMILIAN HAEDICKE – 6/14/2013

Page 53

```
 1    eurocent?                                                10:00:29
 2            MS. BERRY:  Objection; form.                     10:00:29
 3            THE WITNESS:  I'm not -- I'm not -- I have no     10:00:30
 4    opinion on that as I don't know the details.            10:00:33
 5    BY MR. LOVE:                                             10:00:35
 6        Q   Microsoft's Orange Book offer that was rejected  10:00:36
 7    was 2 eurocents, so if Microsoft had offered half a      10:00:38
 8    eurocent, would it have been able to avoid an            10:00:43
 9    injunction?                                              10:00:45
10        A   If it's less than what has been given here,      10:00:45
11    it's rather unlikely.                                    10:00:49
12        Q   Rather unlikely, or no?                          10:00:50
13        A   If it's lower than what has been -- well, the    10:00:52
14    court said -- the Mannheim Court said what has been      10:00:56
15    offered is so low that the rejection is not -- is not a  10:00:59
16    breach of antitrust law as it is conceivable that the    10:01:06
17    rate has to be higher.                                   10:01:12
18            So if the rate would have been lower, it is --   10:01:15
19    I cannot second-guess what the court would have said,    10:01:20
20    but it's -- it's pure logic that if it's lower, I assume 10:01:23
21    that also the same standard would have been applied, and 10:01:25
22    the same standard would have taught that the rejection   10:01:28
23    of such an offer is a violation of European antitrust    10:01:32
24    law.                                                     10:01:36
25        Q   If Microsoft had escrowed a sufficient amount    10:01:36
```

MAXIMILIAN HAEDICKE – 6/14/2013

Page 56

```
 1    be license fee, the license product, a rendering of        10:22:53

 2    account, if the -- the -- the patent as been made use of   10:22:57

 3    before, so these are the elements which have been --       10:23:04

 4    have been decided about by the court.  If further issues   10:23:08

 5    have to be included in such a License Agreement or not     10:23:12

 6    is pure speculation, I have no opinion on that.            10:23:18

 7        Q    Okay.  Let's go back to what happened in          10:23:20

 8    Mannheim.                                                  10:23:34

 9             If Microsoft had followed the second             10:23:34

10    alternative of the Orange Book procedure, Motorola would   10:23:34

11    have set a higher royalty than the 1 to 2 eurocents that   10:23:35

12    Microsoft had offered; correct?                            10:23:38

13             MS. BERRY:  Objection; form.                     10:23:41

14             THE WITNESS:  I have no opinion on that.          10:23:41

15    BY MR. LOVE:                                               10:23:43

16        Q    Why would Motorola have set a lower royalty?      10:23:43

17        A    I am not aware of -- the business evaluations,    10:23:45

18    which are behind such an offer, are not -- have not come   10:23:50

19    to my attention.  I -- I can only speculate, but, of       10:23:54

20    course, we can assume that.                                10:23:58

21        Q    If Microsoft had challenged the rate set by       10:24:00

22    Motorola by bringing a separate proceeding later and the   10:24:03

23    court set the royalty, the royalty set by the court        10:24:07

24    would also be higher than a -- than the 1 to 2 eurocents   10:24:10

25    that Microsoft had offered; correct?                       10:24:15
```

MAXIMILIAN HAEDICKE – 6/14/2013

Page 57

| | | |
|---|---|---|
| 1 | MS. BERRY:  Objection; form. | 10:24:16 |
| 2 | THE WITNESS:  This is -- this is speculation | 10:24:17 |
| 3 | because you apply a different standard of -- there of | 10:24:21 |
| 4 | assessing the -- the license fee, and as you hear | 10:24:26 |
| 5 | evidence and as further circumstances will be looked | 10:24:32 |
| 6 | upon and be considered by the court, it -- it's just a | 10:24:38 |
| 7 | different way of assessing.  It can be that it's higher. | 10:24:43 |
| 8 | It can even be -- if the evidence is such that points in | 10:24:46 |
| 9 | this direction might even be lower.  It's just a new | 10:24:53 |
| 10 | story then, and it will be assessed independently, and | 10:24:56 |
| 11 | the court will -- will find what is the adequate and -- | 10:24:59 |
| 12 | and FRAND and entered as conformed license fee.  It can | 10:25:04 |
| 13 | be higher.  It could even be lower.  It can be the same. | 10:25:07 |
| 14 | I -- I cannot say.  This is speculation.  But, again, | 10:25:11 |
| 15 | the -- the standards, which are used to determine the | 10:25:15 |
| 16 | license fee, they are the relevant thing, and they take | 10:25:17 |
| 17 | into account the standards.  This might lead to one -- | 10:25:22 |
| 18 | to one result or to the other. | 10:25:25 |
| 19 | BY MR. LOVE: | 10:25:27 |
| 20 | Q   When we talked earlier about the second | 10:25:31 |
| 21 | alternative, I thought I understood your position to be | 10:25:34 |
| 22 | that the same standard would be used to evaluate and | 10:25:38 |
| 23 | determine a correct license fee.  It's a license fee | 10:25:43 |
| 24 | that is not objectionable -- | 10:25:46 |
| 25 | A   Yes. | 10:25:46 |

MAXIMILIAN HAEDICKE – 6/14/2013

Page 58

```
 1      Q    -- under antitrust laws.                         10:25:47

 2      A    Yes.                                             10:25:49

 3      Q    So if the court is setting a royalty, it's      10:25:49

 4   going to set a royalty that is not objectionable under  10:25:52

 5   antitrust law; correct?                                 10:25:56

 6      A    Yes.                                             10:25:57

 7      Q    The Mannheim Court said that Motorola's         10:25:57

 8   rejection of the 1-to-2-eurocent offer was not          10:26:04

 9   objectionable under antitrust law; right?               10:26:08

10      A    Can you repeat, please.                          10:26:12

11      Q    Sure.                                            10:26:13

12           Microsoft offered 1 to 2 eurocents.  Motorola   10:26:14

13   rejected it, and the Mannheim Court said that rejection 10:26:19

14   did not violate antitrust law.                          10:26:23

15      A    Yes, that's correct.                             10:26:24

16      Q    But you said just now that in a later           10:26:25

17   proceeding, if a court is setting the rate, it might set 10:26:28

18   a rate lower than what Microsoft offered.               10:26:32

19      A    It's -- it's speculation, and it also is a      10:26:37

20   question of the German law of civil procedure and       10:26:39

21   evidence.  You know, in the -- in the first proceeding  10:26:44

22   the courts will also assess what has been written in the 10:26:46

23   briefs without taking evidence, and so they will make   10:26:49

24   their -- they will form their opinion on what has been  10:26:52

25   written and submitted by the parties.                   10:26:55
```

MAXIMILIAN HAEDICKE – 6/14/2013

Page 59

| | |
|---|---|
| 1 In a second –– the second case of the rate | 10:26:58 |
| 2 setting procedure, all evidence, all economic | 10:27:02 |
| 3 specialists may or may not be presented to the court, | 10:27:07 |
| 4 and the court will just have a very different basis to | 10:27:12 |
| 5 found its –– its –– for founding its opinion –– for | 10:27:16 |
| 6 forming its opinion, and it's –– it is possible that | 10:27:20 |
| 7 it's higher.  It is maybe, well, possible, but it's | 10:27:25 |
| 8 speculation, but as there is another –– different | 10:27:28 |
| 9 standard of how the facts are evaluated, it may even be | 10:27:32 |
| 10 lower, but, again, this is pure speculation. | 10:27:35 |
| 11 The only thing I want to say, this is a | 10:27:38 |
| 12 completely new story where all facts are assessed newly, | 10:27:41 |
| 13 and then the court will –– will find it –– will have its | 10:27:46 |
| 14 decision –– will render its decision on the basis of the | 10:27:50 |
| 15 facts which it has evaluated according to the law of | 10:27:55 |
| 16 civil procedure in this second proceeding. | 10:27:58 |
| 17 Q   So the court, in the second proceeding, would | 10:28:01 |
| 18 apply the same standard, but it might reach a different | 10:28:04 |
| 19 result because it considers more evidence; is that | 10:28:07 |
| 20 correct? | 10:28:11 |
| 21 A   It's just a different standard of review, a | 10:28:11 |
| 22 different standard of review of the first –– the review | 10:28:13 |
| 23 you have in your first –– in the first –– in the first | 10:28:16 |
| 24 road, that it's the –– the question whether or not it is | 10:28:21 |
| 25 obvious.  So the idea is you have a –– you look into the | 10:28:26 |

```
 1   briefs, you evaluate what the parties have said, and you    10:28:30
 2   form your opinion by not going into -- especially by not    10:28:33
 3   taking evidence, so this is maybe specific to German        10:28:39
 4   law.                                                        10:28:42
 5         In the second proceeding, the proceeding will         10:28:42
 6   be a full-fledged proceeding, and the full-fledged          10:28:45
 7   proceeding will be more facts; more evidence will be        10:28:49
 8   assessed.  For example, if you take a preliminary           10:28:51
 9   injunction, you also have a different standard of -- of     10:28:54
10   evidence, which is lower than in -- in a full               10:28:59
11   proceeding.  And so it's just a different way of            10:29:04
12   assessing facts and -- and hearing evidence or not          10:29:06
13   hearing evidence.                                           10:29:12
14   Q   So I want to make sure I understand your                10:29:13
15   position on what would have happened under the Orange       10:29:19
16   Book.  So this will be sort of a long question.  I'll       10:29:21
17   ask you a couple things, and just stop me if anything       10:29:24
18   doesn't make sense.                                         10:29:27
19         Under the Orange Book procedure, as I                 10:29:27
20   understand it, there are three paths for Microsoft to       10:29:29
21   avoid an injunction by agreeing to pay a royalty.           10:29:32
22         First, Microsoft could have made an Orange Book       10:29:36
23   offer that Motorola accepted; correct?                      10:29:38
24         Second, Microsoft could have let Motorola set a       10:29:42
25   royalty; correct?                                           10:29:44
```

MAXIMILIAN HAEDICKE – 6/14/2013

Page 61

| | | | |
|---|---|---|---|
| 1 | A | Yes. | 10:29:47 |
| 2 | Q | And last, Microsoft could have challenged the | 10:29:47 |
| 3 | rate that was set by Motorola, in which case a court, in | | 10:29:51 |
| 4 | a separate proceeding, may set a different royalty; | | 10:29:53 |
| 5 | correct? | | 10:29:57 |
| 6 | A | Can you repeat the question? | 10:29:57 |
| 7 | Q | Sure. | 10:30:00 |
| 8 | | So the -- the third path -- | 10:30:01 |
| 9 | A | Yes. | 10:30:01 |
| 10 | Q | -- would be Motorola sets a royalty. Microsoft | 10:30:03 |
| 11 | challenges the royalty in a separate proceeding, and as | | 10:30:06 |
| 12 | part of that proceeding, the court finds that Motorola's | | 10:30:09 |
| 13 | royalty is -- is too high and sets a -- sets the royalty | | 10:30:12 |
| 14 | itself. | | 10:30:17 |
| 15 | A | That's correct. | 10:30:18 |
| 16 | | MS. BERRY: Objection to form. | 10:30:19 |
| 17 | BY MR. LOVE: | | 10:30:20 |
| 18 | Q | For the first option, if Microsoft made an | 10:30:21 |
| 19 | Orange Book offer, you don't know what Mo- -- what offer | | 10:30:22 |
| 20 | Motorola would have accepted; correct? | | 10:30:27 |
| 21 | A | Pure speculation. | 10:30:28 |
| 22 | Q | For the second option, you don't know what | 10:30:29 |
| 23 | royalty Motorola would have set, do you? | | 10:30:32 |
| 24 | A | Of course not, no. | 10:30:35 |
| 25 | Q | And on the third option, you don't know what | 10:30:37 |

MAXIMILIAN HAEDICKE – 6/14/2013

Page 62

```
 1    royalty a court would set?                              10:30:40
 2        A   I can only say what the basis for a court       10:30:44
 3    decision would be.  But as I don't know all the relevant 10:30:47
 4    facts and as I didn't hear all the evidence, which would 10:30:50
 5    come into play, of course I cannot give a -- give you a  10:30:52
 6    number, certainly not.                                   10:30:56
 7        Q   So in November of 2012, there was a trial, as    10:30:57
 8    part of this case, to determine a RAND royalty for       10:31:01
 9    Motorola's patents.                                      10:31:04
10            Are you aware of that?                           10:31:06
11        A   No.                                              10:31:06
12            MS. BERRY:  Objection; form.                     10:31:07
13    BY MR. LOVE:                                             10:31:07
14        Q   So I'll represent to you that at that trial,     10:31:10
15    there was expert testimony from technical experts and    10:31:15
16    economic experts about the appropriate RAND royalty, but 10:31:18
17    you haven't reviewed the transcript of that trial;       10:31:22
18    correct?                                                 10:31:25
19        A   No, I haven't reviewed it.                       10:31:25
20        Q   So you don't know whether the evidence           10:31:26
21    presented in the November 2000 trial -- 2012 trial in    10:31:29
22    this case was in any way comparable to the evidence that 10:31:31
23    would be considered by a German court that was setting a  10:31:35
24    royalty?                                                 10:31:39
25        A   I have no opinion on that.                       10:31:39
```

| | | |
|---|---|---|
| 1 | THE WITNESS:  Please repeat. | 10:52:35 |
| 2 | BY MR. LOVE: | 10:52:38 |
| 3 |    Q   If Microsoft's Orange Book offer was higher | 10:52:38 |
| 4 | than RAND, Motorola refused to enter a license on RAND | 10:52:41 |
| 5 | terms; correct? | 10:52:45 |
| 6 |      MS. BERRY:  Objection to form. | 10:52:46 |
| 7 |      THE WITNESS:  It's speculation.  I don't know | 10:52:47 |
| 8 | if -- I cannot assess Microsoft's offer. | 10:52:49 |
| 9 | BY MR. LOVE: | 10:52:50 |
| 10 |    Q   For the purposes of this case, the RAND royalty | 10:52:51 |
| 11 | for all of the patents is less than half a eurocent. | 10:52:54 |
| 12 | Microsoft offered 2 eurocents for only two patents.  So | 10:52:59 |
| 13 | Microsoft's offer was higher than RAND.  Let's assume | 10:53:03 |
| 14 | that for my question. | 10:53:06 |
| 15 |      If that's true, Motorola refused to enter a | 10:53:06 |
| 16 | license on RAND terms; correct? | 10:53:10 |
| 17 |      MS. BERRY:  Objection; form, incomplete | 10:53:11 |
| 18 | hypothetical. | 10:53:13 |
| 19 |      THE WITNESS:  It depends -- it's -- it depends | 10:53:13 |
| 20 | on all further -- on the further -- further circumstance | 10:53:16 |
| 21 | of the case.  I don't know the specifics of the case. | 10:53:19 |
| 22 | I'm not able to -- to assess the business evaluations | 10:53:22 |
| 23 | behind this, so I can't just not comment on that. | 10:53:27 |
| 24 | BY MR. LOVE: | 10:53:30 |
| 25 |    Q   Why are business evaluations relevant to my | 10:53:30 |

|   |   |
|---|---|
| 1 | question? | 10:53:32 |
| 2 |     A   I don't know the background of the offer.  I | 10:53:34 |
| 3 | don't know the specific business interests of –– of | 10:53:36 |
| 4 | Motorola and of Microsoft, the strategic ideas, how to | 10:53:39 |
| 5 | make use of the technology.  I just don't have enough | 10:53:42 |
| 6 | background to answer this question. | 10:53:46 |
| 7 |     Q   Is it your position that a standard essential | 10:53:48 |
| 8 | patent holder can refuse to enter a license on RAND | 10:53:50 |
| 9 | terms because it has other business interests? | 10:53:53 |
| 10 |     A   No, but the –– in order to find what RAND is, | 10:53:55 |
| 11 | you have to look into all specifics of the case, | 10:54:03 |
| 12 | including the special interests of the parties in | 10:54:07 |
| 13 | this –– in this case, and, of course, license fee is a | 10:54:11 |
| 14 | very important issue, no –– no doubt about that, but | 10:54:14 |
| 15 | there may be other surroundings.  There may be other | 10:54:17 |
| 16 | interests which may –– may alter the –– the assessment | 10:54:19 |
| 17 | of interest. | 10:54:23 |
| 18 |     Q   Let's presume for the purposes of my question | 10:54:24 |
| 19 | that everything you just mentioned was already addressed | 10:54:27 |
| 20 | in this case in a trial in November 2012 that determined | 10:54:29 |
| 21 | the RAND royalty. | 10:54:33 |
| 22 |         Can you assume that that's correct?  For the | 10:54:34 |
| 23 | purposes of my next question, can you assume that all | 10:54:38 |
| 24 | those business interests that you just mentioned were | 10:54:40 |
| 25 | already tried in this case and that the judge has | 10:54:44 |

| | |
|---|---|
| 1 | determined that, addressing all of those business | 10:54:47 |
| 2 | interests, the RAND royalty is less than half a | 10:54:49 |
| 3 | eurocent. | 10:54:55 |
| 4 | If that's true, then Motorola refused to enter | 10:54:55 |
| 5 | a license on RAND terms; correct? | 10:54:57 |
| 6 | MS. BERRY:  Objection; form, asked and | 10:54:59 |
| 7 | answered, outside the scope of his expert report. | 10:55:03 |
| 8 | THE WITNESS:  We -- I can only apply German | 10:55:04 |
| 9 | law, and the findings of Justice Robart are -- are | 10:55:09 |
| 10 | certainly not binding for the German court, and the | 10:55:13 |
| 11 | German court will make -- will have to make its own | 10:55:16 |
| 12 | evaluation, considering all the facts according to | 10:55:19 |
| 13 | German law of civil procedure, and so it may be; it may | 10:55:21 |
| 14 | not be, but I don't know what will come out, so it's | 10:55:24 |
| 15 | just very speculative.  I cannot give you a answer to | 10:55:27 |
| 16 | that.  I have no opinion. | 10:55:30 |
| 17 | BY MR. LOVE: | 10:55:32 |
| 18 | Q   So a RAND royalty determined by a U.S. court | 10:55:32 |
| 19 | and a RAND royalty in Germany are two different things; | 10:55:35 |
| 20 | is that correct? | 10:55:39 |
| 21 | A   Not necessarily, but it's -- the German patent | 10:55:39 |
| 22 | procedure is completely independent and has its | 10:55:45 |
| 23 | different law of civil procedure, and all facts will be | 10:55:50 |
| 24 | assessed by the German courts, and, of course, German | 10:55:52 |
| 25 | judges will look what the American judges have done, but | 10:55:55 |

MAXIMILIAN HAEDICKE - 6/14/2013

Page 81

```
 1    they are by no means bound by what has been done in       10:55:59
 2    the U.S. -- in the U.S., so it's completely different      10:56:04
 3    and completely independent from each other.                10:56:06
 4         Q    Is European antitrust law binding on German      10:56:08
 5    courts?                                                     10:56:16
 6         A    Yes.                                              10:56:16
 7         Q    Are you aware that under European antitrust      10:56:19
 8    law, the European Commission has initiated proceedings     10:56:22
 9    against Motorola based on its assertion of standard        10:56:26
10    essential patents against Apple?                           10:56:30
11         A    I'm not familiar with the details, but I         10:56:30
12    have --                                                    10:56:36
13         Q    And the European Commission has also initiated   10:56:36
14    proceedings against Samsung for its assertions of          10:56:39
15    standard essential patents?                                10:56:43
16         A    Sorry.  I'm aware of the Samsung proceedings.    10:56:43
17    I have --                                                  10:56:48
18              (Exhibit 2 was marked for identification by the  10:56:50
19              Court Reporter.)                                 10:56:50
20              MR. LOVE:  I'm handing you what's been marked    10:56:58
21    as Exhibit 2.  This is a European Commission press        10:56:59
22    release that's dated December 21st, 2012.                  10:57:09
23         Q    Have you seen this document before?             10:57:14
24         A    Yes.                                             10:57:15
25              MS. BERRY:  Counsel, have you produced this      10:57:16
```

MAXIMILIAN HAEDICKE – 6/14/2013

Page 91

```
 1        A    No, because the Orange Book procedure gives        11:07:08
 2   a -- the Orange Book procedure makes sure and clarifies      11:07:22
 3   that only a person which is really willing to negotiate,     11:07:29
 4   which is sincere, is -- can -- can avoid an injunction.      11:07:35
 5   Only a mere willingness to negotiate is not -- is not        11:07:44
 6   sufficient.                                                  11:07:49
 7        Q    The European Commission's view in the document     11:07:51
 8   we just read is a patent holder cannot seek injunctive       11:07:54
 9   relief against a willing RAND licensee; correct?             11:07:58
10        A    Yes.                                               11:08:00
11        Q    Microsoft made an offer to Motorola; correct?      11:08:01
12        A    Yes.                                               11:08:07
13        Q    The Mannheim Court applied a version of the        11:08:07
14   Orange Book procedure where Motorola could reject            11:08:12
15   Microsoft's offer --                                         11:08:14
16        A    Yes.                                               11:08:15
17        Q    -- unless the rejection would be an obvious        11:08:16
18   antitrust violation; correct?                                11:08:19
19        A    Yes.                                               11:08:20
20        Q    Does that procedure satisfy European law as set    11:08:20
21   out by the European Commission's preliminary view?           11:08:24
22             MS. BERRY:  Objection; form.                       11:08:27
23             THE WITNESS:  The Commission's view that the       11:08:28
24   acceptance of binding third-party determination for the      11:08:40
25   terms of a FRAND license in the event that bilateral         11:08:43
```

| | |
|---|---|
| 1 | negotiations would come to -- to conclusion is a clear | 11:08:46 |
| 2 | indication -- I don't see that the -- that Microsoft has | 11:08:47 |
| 3 | surrendered to a binding third-party determination | 11:09:03 |
| 4 | because it didn't use a second road.  It didn't use the | 11:09:06 |
| 5 | 315 road. | 11:09:10 |
| 6 | BY MR. LOVE: | 11:09:11 |
| 7 | Q   Were you aware that, at least as of September | 11:09:11 |
| 8 | 2011, Microsoft declared that it was willing to enter | 11:09:15 |
| 9 | into a license on RAND terms for Motorola's H.264 | 11:09:17 |
| 10 | patents? | 11:09:20 |
| 11 | A   I'm familiar with the basics of the -- of this | 11:09:21 |
| 12 | lawsuit. | 11:09:26 |
| 13 | Q   So you understand that Microsoft told the court | 11:09:26 |
| 14 | and Motorola that Microsoft was seeking and was ready | 11:09:31 |
| 15 | and willing to take a license to Motorola's H.264 | 11:09:34 |
| 16 | patents on RAND terms? | 11:09:37 |
| 17 | A   Yes. | 11:09:38 |
| 18 | Q   And you understand that, in this case, | 11:09:38 |
| 19 | Microsoft seeks a judicial determination of a royalty | 11:09:40 |
| 20 | rate for Motorola's H.264 patents? | 11:09:44 |
| 21 | MS. BERRY:  Objection; form. | 11:09:47 |
| 22 | THE WITNESS:  I don't see there is Microsoft | 11:09:47 |
| 23 | seeks a judicial determination, but Microsoft proposed a | 11:09:53 |
| 24 | certain license fee which was declined by Motorola, and | 11:09:57 |
| 25 | then the court made a review, and Microsoft just did not | 11:10:02 |

| | |
|---|---|
| 1 | seek a final evaluation of the license fee which would | 11:10:07 |
| 2 | have only happened under the 315 procedure. | 11:10:13 |
| 3 | (Exhibit 5 was marked for identification by the | 11:10:18 |
| 4 | Court Reporter.) | 11:10:18 |
| 5 | MR. LOVE:  Let's take a look at another | 11:10:19 |
| 6 | exhibit.  I've marked, as Exhibit 5, Microsoft's | 11:10:21 |
| 7 | complaint in this case. | 11:10:23 |
| 8 | Q    Could you turn to paragraph 9, which you will | 11:10:30 |
| 9 | find at the bottom of page 4.  Paragraph 9 begins | 11:10:32 |
| 10 | "Accordingly, Microsoft seeks," and I'm going to skip | 11:10:42 |
| 11 | letter i there, and I'm going to go to the ii, Roman ii, | 11:10:43 |
| 12 | "a judicial declaration" -- I apologize.  I intend to go | 11:10:46 |
| 13 | to Roman iii, "a judicial accounting of what constitutes | 11:10:52 |
| 14 | a royalty rate in all respects" -- let me turn the | 11:10:54 |
| 15 | page -- "consistent with Motorola's promises for WLAN | 11:10:58 |
| 16 | patents identified as 'essential' by Motorola and for | 11:11:01 |
| 17 | H.264 patents identified by Motorola." | 11:11:03 |
| 18 | Do you see that? | 11:11:07 |
| 19 | A   Yes. | 11:11:08 |
| 20 | Q    So Microsoft asked Judge Robart in this case to | 11:11:08 |
| 21 | determine a RAND royalty for Motorola's H.264 patents, | 11:11:12 |
| 22 | and the trial in November 2012, I will represent to you, | 11:11:15 |
| 23 | determined such a royalty rate. | 11:11:20 |
| 24 | So Motorola's -- sorry.  Microsoft's | 11:11:23 |
| 25 | complaint -- as you can see from the date at the top, | 11:11:26 |

MAXIMILIAN HAEDICKE – 6/14/2013

| 1 | this was filed in November of 2010.  By September 2011, | 11:11:27 |
| 2 | Motorola knew Microsoft was willing to enter into a | 11:11:32 |
| 3 | license on RAND terms that would be determined by the | 11:11:34 |
| 4 | U.S. court; correct? | 11:11:37 |
| 5 |     A   Yeah. | 11:11:38 |
| 6 |         MS. BERRY:  Objection; form, outside the scope | 11:11:39 |
| 7 | of his expert report. | 11:11:40 |
| 8 | BY MR. LOVE: | 11:11:41 |
| 9 |     Q   Motorola continued to pursue an injunction in | 11:11:42 |
| 10 | Germany after September 2011; correct? | 11:11:44 |
| 11 |     A   Yes. | 11:11:46 |
| 12 |     Q   So Motorola was abusing its dominant position | 11:11:47 |
| 13 | by pursuing an injunction against Microsoft; correct? | 11:11:51 |
| 14 |         MS. BERRY:  Objection; form. | 11:11:53 |
| 15 |         THE WITNESS:  Yes.  A preliminary?  Please | 11:11:54 |
| 16 | repeat. | 11:12:00 |
| 17 | BY MR. LOVE: | 11:12:00 |
| 18 |     Q   Motorola was abusing its dominant position by | 11:12:02 |
| 19 | pursuing an injunction against Microsoft; correct? | 11:12:05 |
| 20 |     A   Say it again.  Motorola? | 11:12:08 |
| 21 |     Q   Motorola was abusing its dominant position, in | 11:12:12 |
| 22 | the meaning of European antitrust law, by pursuing an | 11:12:16 |
| 23 | injunction against Microsoft; correct? | 11:12:18 |
| 24 |         MS. BERRY:  Objection; form. | 11:12:20 |
| 25 |         THE WITNESS:  I don't agree.  I read -- I'm not | 11:12:20 |

| | |
|---|---|
| 1 | sure if I read the commission statement in such a way | 11:12:29 |
| 2 | that a assessment of authority outside of the European | 11:12:34 |
| 3 | Union would -- would suffice.  I would rather think that | 11:12:42 |
| 4 | an assessment only by a administrative agency or a court | 11:12:48 |
| 5 | within the European Union, which is also subject to EU | 11:12:55 |
| 6 | law, would suffice in order to -- to meet the | 11:12:59 |
| 7 | requirements of -- of this -- of this commission | 11:13:02 |
| 8 | statement as -- or the -- as the supremacy of European | 11:13:07 |
| 9 | law, and I would not -- I would doubt that authorities, | 11:13:13 |
| 10 | no matter how respect -- how well respected they are, | 11:13:17 |
| 11 | which are beyond the reach of European Union law, | 11:13:21 |
| 12 | could -- could meet the preconditions which have been | 11:13:25 |
| 13 | set up. | 11:13:29 |
| 14 | BY MR. LOVE: | 11:13:29 |
| 15 | Q   Do you think the court in Seattle is not | 11:13:30 |
| 16 | capable of determining a RAND royalty? | 11:13:33 |
| 17 | A   I just said, with all due respect to the court, | 11:13:34 |
| 18 | it's not bound by the European Union law, and I -- I'm | 11:13:37 |
| 19 | not sure.  I would -- I would have to go further into | 11:13:41 |
| 20 | details, of course.  I'm not sure whether an authority | 11:13:46 |
| 21 | outside the use scope -- outside the reach of European | 11:13:49 |
| 22 | Union law would be found to be sufficient under this | 11:13:54 |
| 23 | declaration.  But, again, this is speculation.  I see | 11:13:59 |
| 24 | this paper the first time.  I'm not able to -- to | 11:14:02 |
| 25 | comment in depth. | 11:14:05 |

MAXIMILIAN HAEDICKE - 6/14/2013

Page 102

```
 1    in there.                                              11:44:48
 2        Q   Did you review any communications between      11:44:49
 3    Microsoft and Motorola concerning whether Motorola would 11:44:50
 4    agree not to enforce the German injunction?            11:44:54
 5        A   No.                                            11:45:02
 6        Q   Were you aware that Microsoft asked Motorola to 11:45:03
 7    agree not to enforce the German injunction and allow the 11:45:06
 8    proceedings in this case here in Seattle to go forward? 11:45:09
 9            MS. BERRY:  Objection; form.                   11:45:14
10            THE WITNESS:  I have very general knowledge of 11:45:15
11    that.                                                  11:45:17
12    BY MR. LOVE:                                           11:45:17
13        Q   And Motorola refused; correct?                 11:45:17
14        A   I have very general knowledge of that too.     11:45:19
15    That's --                                              11:45:25
16        Q   Your understanding is that Motorola would not  11:45:25
17    agree to -- to stay enforcement of the German          11:45:28
18    injunction?                                            11:45:31
19            MS. BERRY:  Objection; form.                   11:45:32
20            THE WITNESS:  This has not been produced to me. 11:45:37
21    I just know the public available sources, which I read, 11:45:39
22    but I have no further detailed knowledge of all these -- 11:45:41
23    these proceedings.                                     11:45:44
24    BY MR. LOVE:                                           11:45:44
25        Q   Did you ask Motorola's counsel or anyone at    11:45:44
```

MAXIMILIAN HAEDICKE - 6/14/2013

1    Motorola whether Motorola planned to enforce the        11:45:46

2    Mannheim judgment against Microsoft?                     11:45:48

3          MS. BERRY:  Objection; calls for                   11:45:50

4    attorney-client-privileged information.  I instruct the  11:45:51

5    witness not to an answer.                                11:45:54

6    BY MR. LOVE:                                             11:46:03

7      Q    Your report suggests that Microsoft could avoid   11:46:04

8    an injunction because Motorola might not enforce the     11:46:07

9    judgment; correct?                                       11:46:11

10     A    Say it again.                                      11:46:11

11     Q    Your report suggests that Microsoft might have    11:46:14

12   avoided an injunction because Motorola would not enforce  11:46:18

13   it; correct?                                             11:46:21

14     A    It is possible it would be -- of course, what I   11:46:22

15   said is that it's not automatically -- the junction is   11:46:28

16   not automatically enforced but that there have to be     11:46:33

17   further steps being taken.                               11:46:36

18     Q    Did you ask anyone at Motorola if Motorola        11:46:38

19   planned to take those steps?                             11:46:40

20         MS. BERRY:  Objection; calls for                   11:46:41

21   attorney-client communications.  Instruct the witness    11:46:43

22   not to answer.                                           11:46:46

23   BY MR. LOVE:                                             11:46:47

24     Q    Are you going to follow your counsel's advice?    11:46:47

25     A    Yes.                                              11:46:49

MAXIMILIAN HAEDICKE – 6/14/2013

Page 104

```
 1        Q    If Judge Robart had denied Microsoft's motion    11:46:49
 2   for a preliminary injunction here in Seattle, would        11:46:57
 3   Motorola have enforced its German injunction?              11:47:00
 4        A    I don't know.                                     11:47:02
 5             MS. BERRY:  Objection; form.                      11:47:03
 6             THE WITNESS:  That's pure -- I no information     11:47:06
 7   about that.                                                 11:47:10
 8   BY MR. LOVE:                                                11:47:10
 9        Q    Did you ask anyone at Motorola?                   11:47:11
10             MS. BERRY:  Same objections as before.           11:47:12
11   Instruct the witness not to answer.                        11:47:13
12   BY MR. LOVE:                                                11:47:15
13        Q    Will you follow your counsel's advice?           11:47:15
14        A    Yes.                                              11:47:16
15        Q    If the Ninth Circuit had reversed                11:47:17
16   Judge Robart's preliminary injunction, would Motorola      11:47:20
17   have enforced the injunction in Mannheim?                  11:47:22
18             MS. BERRY:  Objection; form, calls for           11:47:24
19   speculation, outside the scope of his expert report.      11:47:26
20   BY MR. LOVE:                                                11:47:28
21        Q    Did you ask anyone at Motorola, if the          11:47:29
22   Ninth Circuit had reversed, did they plan to enforce the   11:47:31
23   injunction?                                                 11:47:34
24             MS. BERRY:  Objection; calls for                 11:47:35
25   attorney-client communications.  Instruct the witness     11:47:36
```

MAXIMILIAN HAEDICKE – 6/14/2013

Page 105

| | | |
|---|---|---|
| 1 | not to answer. | 11:47:38 |
| 2 | BY MR. LOVE: | 11:47:39 |
| 3 |     Q   Will you follow your counsel's advice? | 11:47:40 |
| 4 |     A   Yes. | 11:47:41 |
| 5 |     Q   The European Commission's preliminary view is | 11:47:41 |
| 6 | that enforcing injunctions on standard essential patents | 11:47:46 |
| 7 | against a willing licensee is an abuse of antitrust law; | 11:47:49 |
| 8 | is that correct? | 11:47:54 |
| 9 |     MS. BERRY:  Objection; form. | 11:47:54 |
| 10 |     THE WITNESS:  Please repeat. | 11:47:54 |
| 11 |     MR. LOVE:  Sure. | 11:47:56 |
| 12 |     Q   The European Commission's preliminary view is | 11:47:56 |
| 13 | that enforcing injunctions on standard essential patents | 11:48:00 |
| 14 | against a willing licensee is an abuse of antitrust law; | 11:48:02 |
| 15 | correct? | 11:48:06 |
| 16 |     A   These are the wordings used, yes. | 11:48:06 |
| 17 |     Q   Would you agree that Judge Robart in the | 11:48:08 |
| 18 | Ninth Circuit helped Motorola avoid exposing itself to | 11:48:11 |
| 19 | additional antitrust liability? | 11:48:16 |
| 20 |     MS. BERRY:  Objection to form, outside the | 11:48:17 |
| 21 | scope of his expert report. | 11:48:19 |
| 22 |     THE WITNESS:  I have no sufficient information. | 11:48:20 |
| 23 | I have no opinion as it relates to the U.S. trial. | 11:48:22 |
| 24 | BY MR. LOVE: | 11:48:24 |
| 25 |     Q   Do you understand that the decision to relocate | 11:48:25 |

MAXIMILIAN HAEDICKE – 6/14/2013

Page 106

```
 1    Microsoft's distribution center in Germany required       11:48:28

 2    considerable preparation beginning in January of 2012?    11:48:32

 3           MS. BERRY:  Objection; form, outside the scope     11:48:36

 4    of his expert report.                                     11:48:37

 5           THE WITNESS:  I have no opinion on that.            11:48:39

 6    BY MR. LOVE:                                              11:48:40

 7       Q    Are you aware of any of the details surrounding   11:48:40

 8    Microsoft's decision to relocate its German facility?     11:48:42

 9       A    No.                                               11:48:46

10       Q    Did you review any documents associated with      11:48:46

11    the move?                                                 11:48:48

12       A    No.                                               11:48:49

13       Q    Did you review the deposition transcripts of      11:48:49

14    the Microsoft employees who described that process?       11:48:51

15       A    No.                                               11:48:54

16       Q    Were you aware that Microsoft made its decision   11:48:54

17    and had begun implementing the relocation out of Germany  11:48:59

18    in March of 2012?                                         11:49:03

19       A    No.                                               11:49:04

20       Q    If Motorola had enforced the injunction in        11:49:05

21    Mannheim, could Microsoft have continued to distribute    11:49:10

22    H.264-compliant products in Germany?                      11:49:14

23       A    If they fall under the patent and if there has    11:49:17

24    been an injunction, no.                                   11:49:22

25       Q    If Motorola had enforced its injunction in        11:49:23
```

MAXIMILIAN HAEDICKE – 6/14/2013

Page 108

| | |
|---|---|
| 1 | If a party seeks an injunction on a standard | 11:50:52 |
| 2 | essential patent against a willing licensee, is that | 11:50:54 |
| 3 | party acting in good faith under German law? | 11:50:57 |
| 4 | A   Yes. | 11:51:00 |
| 5 | Q   Are you an expert in the German procedural law | 11:51:00 |
| 6 | concerning the recovery of fees and costs? | 11:51:06 |
| 7 | A   Attorney fees and costs? | 11:51:07 |
| 8 | Q   Yes. | 11:51:11 |
| 9 | A   Yes. | 11:51:12 |
| 10 | Q   Have you published any articles regarding the | 11:51:12 |
| 11 | recovery of attorneys' fees and costs? | 11:51:14 |
| 12 | A   No. | 11:51:16 |
| 13 | Q   Have you published any articles on the German | 11:51:16 |
| 14 | act on the remuneration of lawyers? | 11:51:19 |
| 15 | A   No. | 11:51:21 |
| 16 | Q   You reference Section 91 of the ZPO in your | 11:51:21 |
| 17 | rebuttal report. | 11:51:26 |
| 18 | Is the ZPO the German Code of Civil Procedure? | 11:51:27 |
| 19 | A   Yes. | 11:51:31 |
| 20 | Q   Have you ever published any articles on the | 11:51:31 |
| 21 | German Code of Civil Procedure? | 11:51:33 |
| 22 | A   Yes. | 11:51:35 |
| 23 | Q   And what articles are those? | 11:51:35 |
| 24 | A   Articles about patent -- patent infringement | 11:51:37 |
| 25 | lawsuits in this day of patent infringement lawsuits. | 11:51:41 |

MAXIMILIAN HAEDICKE – 6/14/2013

| | | | |
|---|---|---|---|
| 1 | Q | So in discussing patent infringement lawsuits, | 11:51:45 |
| 2 | those articles touch on the aspects of the German Code | | 11:51:48 |
| 3 | of Civil Procedure? | | | 11:51:52 |
| 4 | A | Right. | 11:51:52 |
| 5 | Q | Okay.  Exhibit D to your rebuttal report shows | 11:51:52 |
| 6 | screen shots from software that's called | | 11:51:57 |
| 7 | ProzessKostenRechner; is that correct? | | 11:52:01 |
| 8 | A | Yes. | 11:52:02 |
| 9 | Q | Was I close on the pronunciation? | 11:52:02 |
| 10 | A | Very good. | 11:52:05 |
| 11 | Q | This is software that is used to calculate | 11:52:05 |
| 12 | statutory attorney fees in Germany; is that correct? | | 11:52:08 |
| 13 | A | Yes. | 11:52:10 |
| 14 | Q | Have you used the software before? | 11:52:10 |
| 15 | A | Yes. | 11:52:12 |
| 16 | Q | So before your work -- prior to the work in | 11:52:13 |
| 17 | your case, you have used the software? | | 11:52:15 |
| 18 | A | I tried it once.  I never -- | 11:52:16 |
| 19 | Q | When did you try it? | 11:52:22 |
| 20 | A | Couple of -- before when I was assessing | 11:52:23 |
| 21 | attorneys' fees in another case. | | 11:52:28 |
| 22 | Q | Were you serving as an expert witness when you | 11:52:30 |
| 23 | did that? | | 11:52:34 |
| 24 | A | No.  No, no. | 11:52:34 |
| 25 | Q | Were you a practicing attorney at that time? | 11:52:34 |

MAXIMILIAN HAEDICKE – 6/14/2013

```
 1      A    No.                                             11:52:36

 2      Q    So could you help me understand why you were   11:52:37

 3   using the software previously?                         11:52:41

 4      A    Because, privately, I helped people who wanted 11:52:43

 5   to have an attorney, and I was given the information   11:52:46

 6   about the costs which they would run into.             11:52:48

 7      Q    But other than that one instance, had you ever 11:52:51

 8   used the software prior to your work in this case?     11:52:54

 9      A    No.                                             11:52:56

10      Q    Is it your opinion that the attorneys' fees    11:52:56

11   Germany -- sorry.  Start again.                        11:53:02

12           Is it your opinion that the attorneys' fees in 11:53:04

13   Germany that Microsoft is seeking to recover are far in 11:53:07

14   excess of what could be recovered under Germany's      11:53:09

15   statutory fee scheme?                                  11:53:12

16      A    Yes.                                            11:53:13

17      Q    And that's because the statute provides a cap  11:53:14

18   on how much can be recovered; correct?                 11:53:19

19      A    Yes.                                            11:53:21

20      Q    So even if a party wins --                     11:53:21

21      A    Maybe not a cap.  I have to correct.  Not a    11:53:23

22   cap, but a special -- there's a special procedure how  11:53:26

23   the costs are assessed as to cap, but the costs are    11:53:27

24   calculated.                                            11:53:31

25      Q    And the process for calculating the costs in   11:53:32
```

MAXIMILIAN HAEDICKE – 6/14/2013

Page 111

```
 1    many cases may be lower than the actual fees that a        11:53:35
 2    party paid; correct?                                       11:53:38
 3        A    It always depends.  Cannot give a general         11:53:39
 4    answer to that.                                            11:53:45
 5        Q    So even if a party prevails, the prevailing       11:53:46
 6    party will not necessarily recover all the fees it paid;   11:53:49
 7    correct?                                                   11:53:52
 8            MS. BERRY:  Objection; form.                       11:53:52
 9            THE WITNESS:  It's very much dependent on the      11:53:53
10    specifics of the case.                                     11:53:56
11    BY MR. LOVE:                                               11:53:57
12        Q    So the total that Microsoft seeks for fees paid   11:53:58
13    to the Fresh Fields firm is about 2.119 million.           11:54:01
14            Does that sound correct?                           11:54:05
15        A    Yes.                                              11:54:07
16        Q    Is that amount typical for a patent case like     11:54:07
17    the Mannheim actions?                                      11:54:10
18            MS. BERRY:  Objection; form, outside the scope     11:54:11
19    of his expert report.                                      11:54:13
20            THE WITNESS:  As I'm not an attorney -- can you    11:54:14
21    ask the question again.                                    11:54:18
22            MR. LOVE:  Sure.                                   11:54:19
23        Q    Is -- is that amount -- the 2.119 million, is     11:54:19
24    that amount typical for a patent case like the Mannheim    11:54:22
25    actions?                                                   11:54:26
```

MAXIMILIAN HAEDICKE - 6/14/2013

Page 112

```
 1        A   I can't say because all cases are different,    11:54:27
 2   and it -- the costs may be very different.  I cannot     11:54:30
 3   give you a clear -- I cannot say a statistical -- if     11:54:33
 4   it's typical or not.  It just depends on the cases.      11:54:37
 5        Q   For -- for what you know about this case, did   11:54:39
 6   that amount strike you as unusual?                       11:54:42
 7            MS. BERRY:  Objection to form.                  11:54:44
 8            THE WITNESS:  I have no opinion on this because  11:54:45
 9   I don't work as an attorney, so I don't see the bills    11:54:49
10   all the time.                                            11:54:51
11   BY MR. LOVE:                                             11:54:52
12        Q   Well, your report says this amount was far in   11:54:52
13   excess of what could be recovered under the scheme.      11:54:54
14        A   Yes.                                            11:54:57
15        Q   And I'm asking whether you think that's typical 11:54:57
16   or not?                                                  11:55:00
17            MS. BERRY:  Objection; form.                    11:55:00
18            THE WITNESS:  I answered the question, that     11:55:01
19   it's the -- the scheme sets up a certain rate, and it -- 11:55:06
20   I don't know what -- what exactly law firms charge when  11:55:11
21   they go -- when they charge on hourly basis, so I cannot 11:55:17
22   give you any further information on that.                11:55:23
23   BY MR. LOVE:                                             11:55:24
24        Q   So you're offering expert testimony on the     11:55:24
25   recovery of fees and costs --                           11:55:28
```

MAXIMILIAN HAEDICKE – 6/14/2013

Page 113

| | | |
|---|---|---|
| 1 | A    Yes. | 11:55:28 |
| 2 | Q    -- in this case; correct? | 11:55:29 |
| 3 | A    Yes. | 11:55:30 |
| 4 | Q    But you don't know what typical fees are | 11:55:31 |
| 5 | actually charged in cases like this? | 11:55:33 |
| 6 | A    There are no typical fees for typical cases.  I | 11:55:35 |
| 7 | can only say what the statutory rates are, and then when | 11:55:38 |
| 8 | it's about hourly rates -- hourly rates, these -- this | 11:55:42 |
| 9 | is very different frequently. | 11:55:46 |
| 10 | Q    So when you say that Microsoft's fees are far | 11:55:47 |
| 11 | in excess of what could be recovered, you don't know if | 11:55:50 |
| 12 | that's unusual or not, do you? | 11:55:52 |
| 13 | MS. BERRY:  Objection to form; asked and | 11:55:55 |
| 14 | answered. | 11:55:56 |
| 15 | THE WITNESS:  I answered already that I know | 11:55:56 |
| 16 | the statutory fee, and I know that this is beyond | 11:56:00 |
| 17 | this -- | 11:56:04 |
| 18 | BY MR. LOVE: | 11:56:04 |
| 19 | Q    Well, why did you say "far in excess"? | 11:56:04 |
| 20 | A    Because the statutory fee is lower. | 11:56:06 |
| 21 | Q    So you could have said that the fee is in | 11:56:09 |
| 22 | excess of the statutory fee; right? | 11:56:11 |
| 23 | A    Yes. | 11:56:13 |
| 24 | Q    What is your basis for saying that it is far in | 11:56:14 |
| 25 | excess? | 11:56:17 |

MAXIMILIAN HAEDICKE – 6/14/2013

| | | | |
|---|---|---|---|
| 1 | A | Because it's much more. | 11:56:17 |
| 2 | Q | But you don't know if that's unusual or not? | 11:56:19 |
| 3 | | MS. BERRY:  Objection to form; asked and | 11:56:22 |
| 4 | answered. | | 11:56:23 |
| 5 | | THE WITNESS:  I answered the question already. | 11:56:23 |
| 6 | BY MR. LOVE: | | 11:56:25 |
| 7 | Q | Do you know how much Motorola spent on the | 11:56:25 |
| 8 | Mannheim cases? | | 11:56:27 |
| 9 | A | No. | 11:56:28 |
| 10 | Q | Did you ask? | 11:56:28 |
| 11 | A | No. | 11:56:29 |
| 12 | Q | Do you think it would be unusual to spend twice | 11:56:30 |
| 13 | as much as Microsoft did? | | 11:56:33 |
| 14 | | MS. BERRY:  Objection; form, asked and | 11:56:34 |
| 15 | answered. | | 11:56:37 |
| 16 | | THE WITNESS:  It's pure -- pure speculation. | 11:56:37 |
| 17 | BY MR. LOVE: | | 11:56:39 |
| 18 | Q | Would you be surprised to know that Motorola | 11:56:39 |
| 19 | paid more than twice as much as Microsoft? | | 11:56:41 |
| 20 | | MS. BERRY:  Objection; form. | 11:56:43 |
| 21 | | THE WITNESS:  It's very speculative. | 11:56:47 |
| 22 | BY MR. LOVE: | | 11:56:50 |
| 23 | Q | If I told you that Motorola spent more than | 11:56:50 |
| 24 | twice as much on attorneys' fees in the Mannheim cases, | | 11:56:52 |
| 25 | would you find that surprising? | | 11:56:55 |

MAXIMILIAN HAEDICKE – 6/14/2013

Page 115

```
 1          MS. BERRY:  Objection; form, outside the scope    11:56:56
 2     of his expert report.                                  11:56:59
 3          THE WITNESS:  I have no opinion on that.           11:57:01
 4     BY MR. LOVE:                                            11:57:02
 5       Q   In your expert report, you go through a           11:57:04
 6     calculation which determines the statutory fee that     11:57:07
 7     Microsoft could recover if it prevailed in Mannheim;    11:57:10
 8     correct?                                                11:57:13
 9       A   That's correct.                                   11:57:13
10       Q   Would that calc- -- and that calculation is      11:57:13
11     based on the value of the cases; is that correct?       11:57:15
12       A   That's correct.                                   11:57:18
13       Q   So assuming that Motorola prevails under the      11:57:18
14     German scheme, Motorola can recover fees from Microsoft; 11:57:22
15     correct?                                                11:57:25
16       A   Yes.                                              11:57:25
17       Q   Would it be the same amount that you calculated   11:57:25
18     in your expert report?                                  11:57:28
19       A   Yes.                                              11:57:29
20       Q   So it would be the same for either party?         11:57:32
21       A   Yes.                                              11:57:34
22       Q   Do you have an understanding of why the German    11:57:34
23     law concerning the recovery of attorneys' fees is       11:57:46
24     relevant to the upcoming trial in this case?            11:57:48
25          MS. BERRY:  Objection; form.                       11:57:50
```

MAXIMILIAN HAEDICKE – 6/14/2013

Page 116

| | | |
|---|---|---|
| 1 | THE WITNESS:  On a very, very general. | 11:57:51 |
| 2 | BY MR. LOVE: | 11:57:58 |
| 3 | Q   What is that understanding? | 11:57:58 |
| 4 | A   That it is under discussion in this case, | 11:57:59 |
| 5 | that -- | 11:58:04 |
| 6 | Q   Did anyone explain to you why it's under | 11:58:04 |
| 7 | discussion? | 11:58:06 |
| 8 | MS. BERRY:  Objection to form, calls for | 11:58:07 |
| 9 | attorney-client communications.  I instruct the witness | 11:58:08 |
| 10 | not to answer to the extent your answer would involve | 11:58:16 |
| 11 | the communications with your attorneys. | 11:58:18 |
| 12 | THE WITNESS:  Then I'm not going to answer. | 11:58:20 |
| 13 | BY MR. LOVE: | 11:58:21 |
| 14 | Q   If Motorola is correct that it's two German | 11:58:24 |
| 15 | patents are actually essential to the H.264 standard, | 11:58:29 |
| 16 | would you expect that they would prevail in any | 11:58:32 |
| 17 | infringement case against an implementer of the | 11:58:35 |
| 18 | standard? | 11:58:37 |
| 19 | A   Always depends on the -- on the circumstances | 11:58:41 |
| 20 | of the case.  If the person makes unauthorized use, then | 11:58:44 |
| 21 | it would prevail.  Just depends on the facts, but -- | 11:58:50 |
| 22 | Q   Sure.  Let's break that -- | 11:58:50 |
| 23 | A   -- reasoning is very straightforward when you | 11:58:53 |
| 24 | you prevail in the patent infringement lawsuit and when | 11:58:55 |
| 25 | you lose. | 11:58:57 |