HONORABLE JAMES L. ROBART

1

2

3

4

5

6

7

8

9

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>            Plaintiff,<br><br>    v.<br><br>MOTOROLA INC., et al.,<br><br>                    Defendant.<br><hr>MOTOROLA MOBILITY, LLC., et al.,<br><br>                    Plaintiffs,<br>    v.<br><br>MICROSOFT CORPORATION,<br><br>                    Defendant. | No. C10-1823-JLR<br><br>**REDACTED**<br><br>MICROSOFT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF BREACH OF CONTRACT AND SUMMARY JUDGMENT ON MOTOROLA'S THIRD, FOURTH, FIFTH, SEVENTH, EIGHTH, AND NINTH AFFIRMATIVE DEFENSES AND SECOND COUNTERCLAIM<br><br>**Noted: July 31, 2013 at 10:00 AM**<br><br>**ORAL ARGUMENT REQUESTED** |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF FACTS .................................................................................... 3

    A.   Motorola's Contractual RAND Licensing Commitments............................. 3

    B.   Motorola's October 2010 Demand Letters. .................................................. 5

    C.   Motorola's Pursuit of Lawsuits on its Standard-Essential Patents. .............. 6

    D.   The RAND Royalty For Motorola's Standard-Essential Patents................... 8

III.  LEGAL STANDARD .......................................................................................... 9

IV.   ARGUMENT....................................................................................................... 12

    A.   Motorola Breached The Duty Of Good Faith And Fair Dealing By Engaging In Commercially Unreasonable (And Blatantly Unreasonable) Conduct. ....................... 12

    B.   Motorola Breached The Duty Of Good Faith And Fair Dealing By Engaging In Conduct That Frustrated The Purpose Of Its RAND Licensing Commitments. ......... 18

    C.   Microsoft Is Entitled To Summary Judgment On Motorola's Third, Fourth, Fifth, Seventh, Eighth, and Ninth Affirmative Defenses And Second Counterclaim. .......... 21

V.    CONCLUSION ................................................................................................... 24

MICROSOFT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF BREACH OF
CONTRACT

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Badgett v. Sec. State Bank,*
807 P.2d 356 (Wash. 1991) ...................................................................................10

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986).................................................................................................9

*Craig v. Pillsbury Non-Qualified Pension Plan,*
458 F.3d 748 (8th Cir. 2006) ................................................................................11

*Edmonson v. Popchoi,*
256 P.3d 1223 (Wash. 2011) .................................................................................10

*Frank Coluccio Construction Co., Inc. v. King County,*
150 P.3d 1147 (Wash. App. 2007)...................................................................10, 11

*Galen v. County of L.A.,*
477 F.3d 652 (9th Cir. 2007) ..................................................................................9

*Merrell v. Renier,*
No. C06-404-JLR, 2006 WL 3337368 (W.D. Wash. Nov. 16, 2006)....................10

*N.W. Indep. Forest Mfrs v. Dep't of Labor and Indust.,*
899 P.2d 6 (Wash. App. 1995) ................................................................................9

*Scribner v. Worldcom, Inc.,*
249 F.3d 902 (9th Cir. 2001) ................................................................................11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a) .................................................................................................9

Restatement (Second) of Contracts § 205.................................................................11

MICROSOFT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF BREACH OF
CONTRACT

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

## I.   INTRODUCTION

As a pretext for suing Microsoft for infringement of patents Motorola had committed to license to all on RAND terms and conditions, Motorola sent two demand letters to Microsoft in October 2010.  Motorola's demands, made with 20-day ultimatums, were so over-reaching that no rational company could ever have accepted them or even viewed them as legitimate offers.  Having dispensed with the formality of an "offer," once the 20 days were up Motorola filed lawsuits against Microsoft on a subset of Motorola's declared standard-essential patents, seeking injunctions aimed at giving Motorola enormous leverage in other patent disputes with Microsoft.  This is the essence of hold up, and a flagrant breach of the RAND licensing commitments made by Motorola to the pertinent standard setting organizations.

As the Court's Findings of Fact and Conclusions of Law confirm, the demands Motorola made in October 2010 were astronomically higher than an actual RAND royalty for Motorola's standard-essential patents.  Instead of granting a license on RAND terms, Motorola breached its RAND licensing commitments.  Motorola's conduct forced Microsoft to defend itself against litigation that never should have been brought, and to incur legal fees and significant business expenditures to protect Microsoft's standard-compliant products from being improperly shut out of the market.

Motorola's conduct (the demand letters, suing and seeking injunctions on standard-essential patents, discriminating against Microsoft's supplier Marvell) has breached its RAND commitments on multiple grounds, but this motion is directed at two specific bases of breach most appropriate for summary judgment:

- Motorola breached the duty of good faith and fair dealing by engaging in commercially unreasonable conduct.

- Motorola breached the duty of good faith and fair dealing by engaging in conduct that frustrated the purpose of its RAND licensing commitments.

MICROSOFT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF BREACH OF
CONTRACT- 1

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    In March 2012, Microsoft moved for summary judgment that Motorola had breached

2 its RAND licensing commitments.  (Dkt. No. 236.)  The Court denied the motion because it

3 then lacked a true RAND royalty to compare to Motorola's demands.  (Dkt. 335 at 25–26.)

4 Now that the Court, with the agreement of the parties, has determined the RAND royalties due

5 from Microsoft for a license to Motorola's declared standard essential patents, it is apparent

6 that Motorola's October 2010 demands were so unreasonable (certainly blatantly

7 unreasonable) as to breach the duty of good faith and fair dealing.

8    The remaining issues that caused the Court to hesitate to grant Microsoft summary

9 judgment previously have likewise been resolved.  First, the Court found that "a determination

10 of the relevance of Motorola's prior license agreements" was "inherently fact intensive" (Dkt.

11 No. 335 at 26), but the Court completed that inquiry in the RAND royalty trial and found those

12 agreements irrelevant (Dkt. No. 673, April 19, 2013 Findings of Fact and Conclusions of Law

13 ("FFCL") ¶¶ 420, 435, 443, 445, 454).  Second, the Court perceived fact issues in "Microsoft's

14 assertion that Motorola's 802.11 and H.264 Standard essential patent portfolios cover only a

15 minimal part of the technology involved in the 802.11 and H.264 Standards" (Dkt. No. 335 at

16 27), but the Court made precisely that finding following the RAND royalty trial (FFCL

17 ¶¶ 289,299, 533, 575, 576).

18    Finally, the Court noted an open question as to whether Motorola's demand letters

19 "were sent in bad faith."  (Dkt. No. 335 at 27.)  As explained in Microsoft's July 1 brief

20 concerning the duty of good faith and fair dealing, while a finding that Motorola acted in bad

21 faith is *sufficient* to establish a breach of the duty, it is not *necessary* to establish breach,

22 because either (1) objectively commercially unreasonable (or blatantly unreasonable) conduct,

23 or (2) conduct that frustrates the purposes of the contract, also gives rise to liability for breach.

24 (Dkt. No. 715 at 5–11.)  These two grounds are the subject of Microsoft's present motion, and

25 no material issues of fact remain for trial as to either.  Moreover, even if Motorola's lack of

26

MICROSOFT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF BREACH OF
CONTRACT- 2

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

good faith were relevant, Motorola could not oppose summary judgment by claiming that Motorola sent its demand letters in good faith, because Motorola repeatedly asserted privilege to block discovery into the basis for its offers to Microsoft.[1]  Consistent with the Court's prior ruling, given Motorola's privilege objections, "[i]t would be unfair for Motorola to offer testimony of its choice" on the issue of any good faith basis for its demands, having "denied Microsoft the opportunity to examine the testimony in detail."  Wion Decl.[2] Ex. 4 (October 29, 2012 Pretrial Conf. Tr.) 22:10–12.

Either of the two bases set forth above is sufficient to establish Motorola's liability for breach of its RAND licensing commitments.  Once the Court has granted summary judgment of liability, all that remains is to ascertain damages.  If the parties cannot stipulate to the amount of damages, that issues can be resolved by a short jury trial.

## II.    STATEMENT OF FACTS

### A.  Motorola's Contractual RAND Licensing Commitments.

The Court has already ruled that Motorola entered into contracts with the IEEE and ITU standard setting organizations ("SSOs") through its RAND licensing commitments, and that Microsoft is a third party beneficiary of those contracts, entitled to enforce them.  (FFCL at 5.)  The terms of Motorola's contractual commitments come from two sources—the letters

---

[1] For example, Motorola's Kirk Dailey was asked, ███████████████████████████████████████████████████████████████████████████████████████████████████████████and was instructed by counsel not to answer on the basis of attorney-client privilege.  Wion Decl. Ex. 1 (Dailey 7/12/2012 Dep.) at 69.  Dailey was also asked ████████████████████████████████████████████████████████████████████ Dailey referenced ████████████████████████████████████████████████████████ but refused to state ███████████████████████████████████████ again asserting privilege. *Id.* at 71–72.  Brian Blasius, Motorola's 30(b)(6) designee concerning its offers to Microsoft, refused to answer ████████████████████████████████████████████████████████████████ again asserting privilege.  Wion Decl. Ex. 2 (Blasius 30(b)(6) Dep.) at 39–41.  Motorola's privilege log for October 2010 also includes documents ██████████████████████████████████████ *See* Wion Decl. Ex. 3, (Motorola's Second Supplemental Log of Withheld Documents) (*e.g.*, entries 18240, 18248–18259, 18266, 18270, 18273).

[2] Exhibits are attached to the Declaration of Christopher Wion in Support of Microsoft's Motion for Partial Summary Judgment of Breach of Contract ("Wion Decl.") filed concurrently with this motion.  Exhibits previously admitted at trial are designed with "Trial Ex."

MICROSOFT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF BREACH OF
CONTRACT- 3

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   of assurance and declarations that Motorola submitted to these SSOs; and relevant language

2   from the SSOs' policies (Dkt. No. 335, June 6, 2012 Summary Judgment Order at 13 n. 6)—

3   with their interpretation guided by the purpose of the RAND licensing commitment.

4        Motorola participated in the standardization process for the 802.11 wireless networking

5   standard, governed by the IEEE and its Intellectual Property Rights Policy.  (FFCL ¶¶ 37–48.)

6   The IEEE policy provides that if the IEEE becomes aware of a potentially essential patent, it

7   will request the patent holder submit a Letter of Assurance committing either that (a) it will not

8   enforce the patent or (b) "a license for compliant implementation of the standard will be made

9   available to an unrestricted number of applicants on a worldwide basis without compensation

10  or under [RAND terms]."  Trial Ex. 1568 § 6.2.  In accordance with the IEEE's policy,

11  Motorola submitted numerous Letters of Assurance to the IEEE concerning any Motorola

12  patents essential to the 802.11 Standard.  (FFCL ¶ 44.)  Similarly, Motorola participated in the

13  standardization process for the H.264 video coding standard, governed by the ITU and its

14  Common Patent Policy.  (FFCL ¶¶ 26–36.)  In accordance with the ITU Patent Policy,

15  Motorola submitted numerous declarations to the ITU concerning any Motorola patents

16  essential to the H.264 Standard.  (FFCL ¶ 36.)

17       The general terms of Motorola's ITU and IEEE contractual commitments are similar:

18  they require Motorola to grant licenses to its standard essential patents to any implementer on

19  reasonable and non-discriminatory terms.  (FFCL ¶¶ 36, 44)  The relevant policies of the

20  SSOs, and the specific language of Motorola's multiple declarations and letters of assurance

21  place additional contractual constraints on Motorola.  At the time Motorola submitted its initial

22  Letters of Assurance, the IEEE required that Motorola submit "a draft of [its] license that

23  assures that the technology will be made available *at nominal competitive costs* to all who seek

24  to use it for compliance with" the 802.11 standard.  Trial Ex. 1130 at MS-

25  MOTO_1823_00005246490 (emphasis added); FFCL ¶¶ 47–48.  The "sole objective" of the

26

MICROSOFT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF BREACH OF
CONTRACT- 4

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

ITU's Patent Policy is to ensure that any patent essential to the H.264 standard "be accessible to everybody without undue constraints."  Trial Ex. 1575 at MOTM_WASH1823_0602815; FFCL¶ 27.  Pursuant to this policy, Motorola declared that it was "prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to make, use and sell implementations of the above document."  Trial Ex. 2838 at MOTOM_WASH1823_0000036.

A core purpose of the RAND licensing commitment is to address the problems of hold-up and royalty stacking that would otherwise inhibit widespread adoption of the standard. (FFCL ¶¶ 51, 57, 60, 66, 538.)  *See* Wion Decl. Ex. 5 (Leonard Dep.) 20:19–21:18.  As to hold-up, Motorola's RAND licensing commitments limit any royalty it demands to the economic value of any of Motorola's patented technology as present in the standard, not to any of the value of the standard itself.  (FFCL ¶¶ 55, 71, 74.)  As to stacking, Motorola's RAND licensing commitments limit any royalty it demands by requiring that the aggregate royalties associated with a given standard remain reasonable.  (FFCL ¶¶ 66, 72.)

### B.  Motorola's October 2010 Demand Letters.

In October 2010, Motorola sent two letters to Microsoft demanding billions of dollars in annual royalties for two sets of patents Motorola claimed were essential to the 802.11 and H.264 industry standards.  Motorola's letters demanded a 2.25% royalty on the price of end products—in the case of 802.11, on the sale price of Xbox and Windows phones, and in the case of H.264, on the sale prices of Xbox and of laptops and PCs running Microsoft Windows. Trial Exs. 1, 2.  For Motorola's H.264 standard-essential patents, that demand translates into a royalty ranging from $11.25 to $22.50 for Windows laptops (sold by Microsoft's manufacturer-customers) for $500 to $1000, and from $4.50 to $9 for Xbox consoles priced from $200 to $400.  For Motorola's 802.11 standard-essential patents, that demand translates to a royalty of $4.50 to $9 for Xbox consoles priced from $200 to $400.  Based on publicly-

MICROSOFT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF BREACH OF
CONTRACT- 5

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   available projections of the number of Windows-based computers sold in 2010, Motorola was

2   demanding roughly $4 billion per year from Microsoft for a license to the H.264 patents alone.

3   Wion Decl. Ex. 5 (Leonard Dep.) 191:1–199:22.

4         At the trial last November, Motorola advanced arguments that the 2.25% royalty

5   demanded of Microsoft was somehow justified by prior license agreements relating to cellular

6   essential patents and other portfolios.  (FFCL at 130–31.)  The Court rejected these claims.

7   While Motorola had included some of its 802.11 or H.264 patents in other, broader license

8   agreements that included Motorola's cellular standard-essential patents, or other non-essential

9   Motorola patents, the Court determined that those licenses are not comparable to a license to

10  the H.264 or 802.11 patents alone, and *do not* provide support for a 2.25% royalty demand for

11  such a license.  (FFCL ¶¶ 420, 425, 440, 445, 451.)  As Motorola's latest economic expert,

12  Gregory Leonard, concedes, Motorola had never licensed its portfolios of H.264 or 802.11

13  standard-essential patents on a standalone basis, and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Wion Decl. Ex. 6 (Leonard Opening

15  Rpt.) ¶ 66); Wion Decl. Ex. 5 (Leonard Dep.) 155:15–20.  Moreover, Motorola had never

16  previously demanded ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as it did of Microsoft in its H.264 demand.  Wion Decl. Ex. 2

18  (Blasius 30(b)(6) Dep.) 130:23–131:6.

19      **C.  Motorola's Pursuit of Lawsuits On Its Standard-Essential Patents.**

20        Motorola's letters were ultimatums:  the offers were open for only 20 days, and

21  Microsoft was asked only to confirm that it "accepted" Motorola's terms.  Trial Exs. 1, 2;

22  Wion Decl. Ex. 7 (Dailey ITC Tr.) 2500:1–2501:7 (agreeing that ▮▮▮▮▮▮▮▮▮▮▮

23  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24  ▮▮▮▮▮▮▮▮▮▮▮.  As the letters were facially a prelude to lawsuits on Motorola's standard-

25  essential patents, Microsoft filed this suit on the twentieth day after the first letter was sent,

26

MICROSOFT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF BREACH OF
CONTRACT- 6

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   alleging that that Motorola had breached its contractual commitments to license its standard-

2   essential patents on RAND terms.  Microsoft's complaint sought a declaration that Microsoft

3   was entitled to a license on RAND terms, asked the Court to determine the RAND terms for

4   such a license, and requested an injunction barring Motorola from engaging in further conduct

5   inconsistent with its RAND licensing obligations.  (*See* Dkt. No. 1, Complaint at ¶ 9, Prayer

6   for Relief.)

7          On the twenty-first day (November 10, 2010), consistent with the ultimatum in the

8   October 21 letter and obviously implementing a preexisting plan, Motorola filed two patent

9   infringement actions against Microsoft in the Western District of Wisconsin, Case No. 3:10-

10  CV-699 (the "699 Action") and Case No. 3:10-CV-700 (the "700 Action")).  Less than two

11  weeks later, Motorola filed a complaint for patent infringement against Microsoft in the

12  International Trade Commission, leading to the investigation designated *In the Matter of*

13  *Certain Gaming and Entertainment Consoles, Related Software, and Components Thereof*

14  (ITC Case No. 337-TA-752) (the "ITC Action").  In each of the 699 Action, the 700 Action,

15  and the ITC Action, Motorola alleged infringement of patents it asserted to be essential to the

16  802.11 and/or H.264 standards, and sought to enjoin Microsoft from implementing those

17  standards.  (Dkt. No. 53, Amended Compl. ¶¶ 74–77; Dkt. No. 68, Ans. to Amended Compl.

18  ¶¶ 74–77.)

19         Microsoft amended its complaint on February 23, 2011, alleging that Motorola's filing

20  of lawsuits and pursuit of injunctions against Microsoft on standard-essential patents, including

21  in the 699, 700, and ITC Actions, further breached Motorola's RAND licensing obligations.

22  (Dkt. No. 53 ¶ 85.)  Unfazed by this, and apparently unsatisfied with the pressure on Microsoft

23  imposed by the U.S. actions alone, on July 6 and 7, 2011, Motorola again sued Microsoft, this

24  time in Germany, asserting two of the declared standard-essential H.264 patents that were the

25  subject of its October 2010 letter.  (Dkt. No. 318, May 14, 2012 Order at 18–19.)  Motorola

26

MICROSOFT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF BREACH OF
CONTRACT- 7

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    sought an injunction that would exclude Microsoft's standard-compliant products (including

2    the Windows operating system and the Xbox video game console) from the German market.

3    (*Id.* at 21–22.)

4           Motorola pursued these legal actions, including injunctions, relentlessly, despite

5    knowing that it could secure a RAND royalty in the contract proceedings pending in this Court.

6    Nonetheless, Motorola proceeded with the ITC hearing in January 2012, and pressed forward

7    with its German infringement case.  When the German court announced on February 7, 2012

8    that it would rule on April 17, 2012, Microsoft again sought to forestall an injunction that was

9    unnecessary to Motorola's obtaining a RAND royalty.  Microsoft's counsel wrote to

10   Motorola's counsel on March 14, asking that Motorola agree not to enforce any German

11   injunction and offering to post a $300 million bond (far in excess of any conceivable

12   compensation due on two German H.264 patents).  (*See* Dkt. No. 211 Exs. 2, 3.)  In the face of

13   this, Motorola still proceeded until enjoined from doing so by this Court.

### D.  The RAND Royalty For Motorola's Standard-Essential Patents.

15          In November 2012, the Court held a bench trial to determine a RAND royalty for

16   Motorola's H.264 and 802.11 standard-essential patents.  The Court determined that the

17   RAND royalty for Motorola's H.264 patents is 0.555 cents per unit.  (FFCL ¶ 537.)  The Court

18   also determined a RAND range for H.264, with a lower bound of 0.555 cents per unit (FFCL at

19   8), and an upper bound of 16.389 cents per unit derived from the highest number floated for

20   discussion purposes during the formation of the MPEG LA AVC pool—a rate that no one

21   agreed to but that was merely a straw man used to prompt discussion (FFCL ¶ 543–45).  The

22   Court determined that the RAND royalty for Motorola's 802.11 standard-essential patents is

23   3.471 cents per unit.  (FFCL ¶ 621.)  The Court also determined a RAND range for 802.11,

24   with a lower bound of 0.8 cents per unit, based on the evaluation that InteCap provided

25   Motorola (FFCL ¶¶ 625–27), and an upper bound of 19.5 cents per unit, derived as a multiple

26

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   of the high end of a RAND royalty for Motorola's 802.11 patents offered by Microsoft at trial

2   (FFCL ¶¶ 622–24).

3   **III.     LEGAL STANDARD**

4           Summary judgment is appropriate if the evidence, when viewed in the light most

5   favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any

6   material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

7   *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of L.A.*, 477 F.3d 652,

8   658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no genuine

9   issue of material fact and that he or she is entitled to prevail as a matter of law. *Celotex*, 477

10  U.S. at 323.

11          A claim for breach of contract requires a valid contract, a breach of a duty arising under

12  that contract, and resulting harm. *N.W. Indep. Forest Mfrs v. Dep't of Labor and Indust.*, 899

13  P.2d 6, 9 (Wash. App. 1995). The Court has already repeatedly held that Motorola's RAND

14  licensing commitments are valid, enforceable contracts. The Court has also held that

15  "Motorola must grant Microsoft a RAND license" (Dkt. No. 465, Oct. 10, 2012 Order at 14),

16  yet Motorola to this day has refused to provide one—the lack of that license alone is sufficient

17  harm to establish breach. Moreover, the Court has also held that engaging in hold up in

18  violation of RAND commitments causes harm (FFCL ¶¶ 55–58), and as set out more fully

19  below, both Motorola's October 2010 letters and its lawsuits and pursuit of injunctions were

20  part of an impermissible hold-up strategy. Motorola's conduct placed Microsoft at substantial

21  risk of having its products enjoined in both the United States and Germany, forcing Microsoft

22  to incur significant legal expenses opposing Motorola's actions, which were brought in breach

23  of Motorola's RAND licensing commitments. If Motorola had enforced its German injunction,

24  Microsoft could not have distributed its H.264-compliant products (including Xbox and

25  Windows) from its German facility, meaning Motorola's pursuit of its German injunction left

26

MICROSOFT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF BREACH OF
CONTRACT- 9

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Microsoft with no choice but to relocate its primary distribution facility for Europe, the Middle East, and Africa ("EMEA"), incurring  significant additional costs.  While Motorola may contest the amount of monetary damages Microsoft can recover, the harms outlined above are sufficient to establish liability for breach and trigger Microsoft's right to relief.  *See Merrell v. Renier*, No. C06-404-JLR, 2006 WL 3337368, at *5–6 (W.D. Wash. Nov. 16, 2006) (Washington law) (collecting cases and holding that "[a] plaintiff need not prove financial loss to prevail in a suit to obtain specific enforcement of a contract").

Motorola's conduct can be analyzed with reference to specific terms of its contractual RAND licensing commitments, but as with all contracts, Motorola's RAND licensing commitments also include an inherent duty of good faith and fair dealing imposing additional constraints on Motorola.  *See* Dkt. 335 at 25; *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991); *Frank Coluccio Construction Co., Inc. v. King County*, 150 P.3d 1147, 1154 (Wash. App. 2007).  As the Court already found, and as Motorola conceded, a blatantly unreasonable opening offer to license its standard-essential patents breaches its RAND licensing commitments.  (Dkt. 335 at 25; Dkt. 188 at 15 ("To wit, during the February 13, 2012 status conference, counsel for Motorola agreed that blatantly unreasonable offers would violate its RAND obligations under the policies.").)[3]

Washington courts have looked to the definition of good faith and fair dealing set forth in the Restatement (Second) of Contracts § 205.  *See Edmonson v. Popchoi*, 256 P.3d 1223, 1227 (Wash. 2011).  The Restatement provides:

> Good faith performance or enforcement of a contract emphasizes faithfulness to
> an agreed common purpose and consistency with the justified expectations of

---

[3] Defendant Motorola Solutions agrees that an SEP holder breaches its RAND commitments by making blatantly unreasonable licensing demands:  Motorola Solutions brought a breach of contract claim against a holder of patents allegedly essential to the 802.11 standard based, in part, on the patent holder's pursuit of "a licensing program that is blatantly unreasonable on its face, including blatantly unreasonable offers and other conduct in violation of good faith and fair dealing inherent in all contracts."  Wion Decl. Ex. 8, Plaintiffs' Amended Complaint, Dkt. No. 431, *In re Innovatio IP Ventures, LLC, Patent Litig.*, Case No. 1:11-cv-9308 (N.D. Ill. Oct. 1, 2012) ¶ 312.

MICROSOFT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF BREACH OF
CONTRACT- 10

the other party; it excludes a variety of types of conduct characterized as involving "bad faith" because they violate community standards of decency, fairness or reasonableness.

§ 205.  Although no exhaustive catalogue of wrongful acts has been compiled, traditional examples of prohibited conduct include "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." Restatement § 205 cmt. d.

In particular, the duty of good faith and fair dealing requires that a party given discretion by a contract exercise that discretion reasonably.  *See Craig v. Pillsbury Non-Qualified Pension Plan*, 458 F.3d 748, 752 (8th Cir. 2006) (Washington law); Dkt. No. 715 at 7–8.  Even if a party acts in a way that might, in the abstract, seem commercially reasonable, the party would still breach the duty of good faith and fair dealing if the action frustrates the purpose of the contract.  *See Frank Coluccio*, 150 P.3d at 1154–55 (affirming finding of breach of duty of good faith and fair dealing where defendant's conduct was contrary to the purpose of the contract); Dkt. No. 715 at 8–11.

A showing of subjective bad faith is not required.  *See Scribner v. Worldcom, Inc.*, 249 F.3d 902, 910 (9th Cir. 2001) (Washington law) ("That a party can breach the duty of good faith and fair dealing by acting dishonestly or unlawfully does not mean that dishonesty or an unlawful purpose is a necessary predicate to proving bad faith."); Restatement § 205 cmt. d (noting that "[s]ubterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified" and that "fair dealing may require more than honesty."); Dkt. No. 715 at 5–6.

As set forth in Microsoft's July 1, 2013 brief concerning the legal standard for determining a patent holder's compliance with the duty of good faith and fair dealing in the context of RAND licensing, the duty requires that Motorola engage in objectively commercially reasonable (and not blatantly unreasonable) conduct with respect to the licensing

MICROSOFT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF BREACH OF
CONTRACT- 11

of its standard-essential patents.  (*See* Dkt. 715 at 7–8.)  The duty of good faith and fair dealing also bars Motorola from engaging in conduct that frustrates the purpose of the RAND licensing commitment.  (*See id.* at 8–11.)

## IV.   ARGUMENT

### A.  Motorola Breached The Duty Of Good Faith And Fair Dealing By Engaging In Commercially Unreasonable (And Blatantly Unreasonable) Conduct.

Motorola's H.264 royalty demand of 2.25% on the price of end products ranged from $4.50 per unit for the cheapest Xbox, to $11.25 per unit or higher for computers running Windows—but the RAND royalty is only 0.555 cents per unit, and the upper bound of the RAND royalty range determined by the Court is 16.389 cents.  Motorola's 802.11 royalty demand of 2.25% equates to $4.50 per unit or higher for the Xbox, but the RAND royalty is only 3.471 cents per unit, with the upper bound of the RAND royalty range at 19.5 cents.  If



these offers are not "blatantly unreasonable" (which would violate the RAND licensing commitment), it is difficult to conceive of any offer that could be so characterized.

MICROSOFT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF BREACH OF
CONTRACT- 12

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Given the RAND royalty and royalty range, no reasonable juror could conclude that Motorola had made a commercially reasonable offer—Motorola's demand was not just high, it was wildly excessive.  While a seller may be willing to come down from an opening offer, that does *not* mean that any offer is commercially reasonable just because negotiation might follow. No reasonable juror could find a sticker price of $54 million for a standard Ford Taurus commercially reasonable, or a real estate listing of $800 million for an ordinary 3-bedroom house in Seattle commercially reasonable—and those demands exceed the true value of those goods[4] by the same factor as Motorola's H.264 demand did the actual RAND royalty.[5]

Even ignoring the yawning chasm that separates Motorola's demands from the RAND royalty, the record evidence otherwise confirms Motorola's demands were completely unfounded and commercially unreasonable.  First, nothing in Motorola's licensing history supports the scale of its demands.  ███████████████████████████████ ████████████████████████████████████████████  (*See* FFCL ¶¶ 418–19, 425–434; Wion Ex. 2 (Blasius 30(b)(6) Dep. Tr.) 127:12–128:18.)  After the November trial, the Court concluded that none of the agreements Motorola identified supported the royalty demanded of Microsoft for H.264 and 802.11 standard-essential patents (FFCL ¶¶ 420, 425, 440, 445, 451), and those licenses did "little to show an established royalty rate commensurate with the amount of royalties Motorola seeks" (FFCL ¶ 454).[6]  In a

---

[4] A Ford Taurus has a suggested retail price of $26,700.  *See* http://www.ford.com/cars/taurus/ (visited June 21, 2013).  Median home prices in Seattle are currently above $400,000.  *See* http://seattletimes.com/html/businesstechnology/2020711424_homesalesmarchxml.html (visited June 21, 2013).

[5] If only Motorola's 802.11 offer were considered, the opening demand for the Taurus would be $3.4 million, and the house would be listed at a mere $51.8 million.

[6] The Court's analysis was with reference to the royalty Motorola advocated at trial, but this was the same 2.25% of end-product prices that Motorola demanded in its letters.  (FFCL at 130–31.)  The sole difference is that Motorola applied its H.264 royalty to Microsoft Windows at trial, rather than to computers running Windows— but the Court's rejection of Motorola's supposedly comparable licenses had nothing to do with this issue.  (*See* FFCL ¶¶ 407–54.)  In any event, because the agreements Motorola relied on could not support its marginally-reduced demand at trial, they certainly could not demonstrate that Motorola's *higher* October 2010 demands were objectively commercially reasonable.

MICROSOFT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF BREACH OF
CONTRACT- 13

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

remarkable reversal of Motorola's position at the RAND royalty trial, Motorola's expert

Leonard now admits

> As of October 2010, Motorola's 802.11 and H.264 SEP portfolios had not been separately licensed. ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████ ***It is difficult or impossible to break out a separate royalty rate for the 802.11 and H.264 SEP portfolios in these agreements***, and they do not cover software.  Accordingly, Motorola had no past experience on which it could draw when it attempted to negotiate a RAND license with Microsoft.

Ex. 6 (Leonard Opening Rep.) ¶ 66 (emphasis added).[7]  Motorola has now conceded,

consistent with the Court's findings, that nothing in its licensing history indicates that

demanding 2.25% on the price of end products for its 802.11 and H.264 patents would be

reasonable.

Second, the limited importance of Motorola's 802.11 and H.264 patents confirms that

Motorola's demands were commercially unreasonable.  Each of the Motorola 802.11 patents

presented at the November 2012 trial "provides very minimal technical contribution to the

identified portions of the 802.11 Standard," and as the Court observed "Motorola did not

provide the inventive technology in any area of the 802.11 Standard, but instead built upon

already existing technology."  (FFCL ¶ 575.)  Motorola's patents "constitute only a sliver of

the overall technology incorporated into the 802.11 Standard" (FFCL ¶ 576) and cannot

possibly justify a demand for a 2.25% royalty on the entire value of the Xbox, which does not

---

[7] Just six months ago, Motorola told the Court just the opposite in its Post-Trial Brief:

> Microsoft's experts argued that ████████████████ licenses are not appropriate benchmarks because, under Motorola's "no stacking" policy, it is difficult to apportion the royalties among the various licensed portfolios.  But a closer examination of these agreements refutes that position. ████████
> 

(Dkt. No. 620, Defs' Post-Trial Br. at 7.)

MICROSOFT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF BREACH OF
CONTRACT- 14

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

even need to use the 802.11 standard (FFCL ¶ 349).  Similarly, Motorola's H.264 patents are largely directed toward interlaced video, a technology the Court found "not overly important" to current products (¶ 532), and overall Motorola's portfolio is, at most, of "only minor importance" to products like Windows and Xbox (FFCL ¶¶ 289, 299).  As with 802.11, Motorola's H.264 patents "only constitute[ ] a sliver of the overall technology incorporated into the H.264 Standard."  (FFCL ¶ 533.)  The marginal value of Motorola's H.264 patents cannot possibly justify a demand for a 2.25% of the entire value of a computer running Windows.

The number of owners of 802.11 and H.264 essential patents who had submitted letters of assurance to the IEEE and ITU was publicly available ███████████████████ ███████████████ Wion Decl. Ex. 2 (Blasius 30(b)(6) Dep.) 73:10–75:12, 83:12– 84:2. ████████████████████████████████████████████████████ ████████████████████████████████████████████ *Id.* at 81:3– 16, 84:19–85:5. ██████████████████████████████████████████ ████████████████████████████████████████████████ *Id.* at 82:7–12, 85:6–86:2. ████████████████████████████████████████████ ██████████████████████████████████████████████ *Id.* at 91:22–93:22. Motorola had participated in the formation of the MPEG-LA H.264 pool and joined in press releases characterizing the pool rates as reasonable.  (FFCL ¶¶ 470, 478–79, 481.)  Whether the RAND royalty is ultimately the pool rate or slightly higher, as the Court found, the pool royalty (and Motorola's prior endorsement of it) demonstrates that the Motorola offer was not commercially reasonable.

There are numerous additional indications that Motorola's 802.11 demand was commercially unreasonable.  The royalty Motorola demanded would exceed the cost of the

chipset that provides the 802.11 functionality in Xbox, which costs only a few dollars.  (FFCL ¶ 581.)  The Court found that royalty rates of 1% of chip price (*not* end product price) represent a customary high ceiling for licensing in the semiconductor industry for products like Marvell's.  (FFCL ¶¶ 585–90.)  Motorola itself commissioned a study by InteCap to value its 802.11 portfolio which suggested that even lower rates of 0.5% of chip price would be appropriate.  (FFCL ¶¶ 591–607.)  The Court found the InteCap study indicative of commercially reasonable conduct (evidence of what is "customary in the particular business" under a modified *Georgia-Pacific* factor 12), as it reflected "an effort by a company in the business of licensing (RAND) patents to fashion a RAND royalty rate."  (FFCL ¶¶ 589, 606.) Motorola's 802.11 demand on the Xbox was $4.50; that the amount suggested by InteCap for the chip alone was 2 cents[8] confirms Motorola's demand was commercially unreasonable.

As to Motorola's H.264 demand, by demanding royalties on the prices of its prospective licensees' *customers'* products, ██████████████████ ████████████████████████████████████████ Motorola's H.264 letter explicitly demanded a 2.25% royalty "calculated based on the price of the end product . . . [e.g.] each PC/laptop, each smartphone . . . and not on component software."  Trial Ex. 2. ████████████████████████████████████████ ████████████████████████████████ Wion Decl. Ex. 2 (Blasius 30(b)(6) Dep.) 130:23–131:6, ██████████████████████ ████████████████ Wion Decl. Ex. 7 (Dailey ITC Tr.) 2552:8–10██████████████ ████████████████████; Wion Decl. Ex. 9████████████████ ████████████████at MOTM_WASH1823_0019341████████████████

---

[8] InteCap also suggested a 0.1% royalty on devices like game consoles that included 802.11 capability.  (FFCL ¶ 596.)  While it would not be commercially reasonable to charge a higher royalty on an end user device than on the chip that provides the patented technology (as InteCap suggested), even assuming it could be, the 0.1% royalty on a $200 Xbox would amount to 20 cents, which also would confirm that Motorola's $4.50 demand is commercially unreasonable.

MICROSOFT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF BREACH OF
CONTRACT- 16

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1  ███████████████████████████████████████████████████████████

2  ███████████████████████████████████████████████████

3  ██████████████████████ Wion Decl. Ex. 6 (Leonard Dep.) 70:21–72:23.

4       Motorola may argue that it did not know at the time the demand letters were sent that

5  the royalties demanded were exorbitant and unjustified and that knowledge of that could only

6  be acquired by examining the information that was before the Court at the November trial.  But

7  this is hardly a cognizable defense.  In the first place, a breach does not depend on Motorola's

8  subjective intent and knowledge—as explained above, commercially unreasonable conduct, or

9  conduct that frustrates the purposes of the RAND licensing commitment, is sufficient.  Second,

10  even based solely on what the Court already heard in the November trial, more than enough

11  information was within the corporate knowledge of Motorola to show that the demands were

12  blatantly unreasonable (including the Intecap study, the scope and nature of its own

13  contributions to the standards, the pool rates, ████████████████████ and more).

14       Motorola will also likely argue that it was reasonable to pick 2.25% because it lacked

15  complete information on how the patents were used in Microsoft products.  This, too, is a red

16  herring.  ███████████████████████████████████████

17  ████████████████████████████ Wion Decl. Ex. 10 (Taylor Dep.) 90:20–91:25

18  ("████████████████████████"), 158:3–160:4 ████████████████████

19  ███████████████████████████████████████████████").

20  Moreover, the use of the standards in Microsoft products was facially apparent:  Xbox was

21  known to be a game console, with 802.11 needed only as an alternative means of connecting to

22  the Internet; and Windows is a computer operating system, with the ability to display H.264

23  video being only one of thousands of features.  While more information about the Microsoft

24  products might have been needed to arrive at a precise RAND royalty, as set by the Court, that

25  was plainly not necessary to ascertain that the demanded royalties were not commercially

26

MICROSOFT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF BREACH OF
CONTRACT- 17

1   reasonable.  Finally, the argument that all of the information adduced at trial was necessary for

2   Motorola to understand that the demands were outrageous is demonstrably false—even when

3   possessed of all of this information, Motorola continued to urge a 2.25% royalty at trial.

4       No finder of fact could reasonably conclude that Motorola's demands as to either

5   standard were anything but commercially unreasonable.  Accordingly, Microsoft is entitled to

6   summary judgment that Motorola's October 21, 2010 802.11 letter and October 29, 2010

7   H.264 letter breached the duty of good faith and fair dealing because Motorola's demands were

8   not objectively commercially reasonable (indeed, they were blatantly unreasonable).

### B.   Motorola Breached The Duty Of Good Faith And Fair Dealing By Engaging In Conduct That Frustrated The Purpose Of Its RAND Licensing Commitments.

11      The Court found that two key purposes of the RAND licensing commitment are

12  prevention of hold up and avoidance of stacking problems.  (FFCL ¶¶ 60, 66.)  The undisputed

13  facts show that Motorola's demands violated the duty of good faith and fair dealing by

14  frustrating both purposes.

15      First, Motorola's demands created "significant stacking concerns," as the Court has

16  already recognized.[9]  (FFCL ¶¶ 456, 459.)  At least 52 entities own H.264 SEPs (FFCL ¶ 459),

17  and their making demands like Motorola's (2.25% of the end price of standard-compliant

18  products) would lead to an aggregate royalty to implement the H.264 standard exceeding the

19  prices of standard-compliant products.  At least 92 entities own 802.11 standard-essential

20  patents (FFCL ¶ 456); if made by even half of those entities, demands like Motorola's would

21  lead to an aggregate royalty that exceeded the product price.  Because Motorola's 802.11

22  patents provide "only minimal contribution to the 802.11 Standard" (FFCL ¶ 457), and because

23  "Motorola's H.264 SEP portfolio relates almost entirely to interlaced video—a functionality

---

[9] *See* note 6, *supra*.  The stacking problem is even worse for Motorola's October 2010 H.264 demand, because it sought to attach its royalty to computers running Windows—meaning that Motorola's 2.25% demand of the price of the computer for its meager portion of H.264 alone is weighed against not only all of the rest of H.264, and all of the other the standards necessary for the operating system, but also all standards necessary for the entire computer.

MICROSOFT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF BREACH OF
CONTRACT- 18

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

not important to Microsoft's H.264-compliant products" (FFCL ¶ 459) or even to Motorola's

parent company, Google (FFCL ¶ 264)—the aggregate royalty burden suggested by

Motorola's demands is even more unreasonable.  If minimal contributions and outdated,

unimportant aspects of the standard demand 2.25% of the end-product price, others claiming to

hold more valuable patents would likely demand significantly more.[10]

       Second, Motorola was engaged in hold up:  Its royalty demands exceeded the value of

its patented technology by such a margin that no rational company could accept them; it

accompanied those demands with 20-day ultimatums; and backed them up by pursuing

lawsuits and injunctions around the world.  (FFCL ¶¶ 55–56.)  The demands Motorola made in

its October 2010 letters were merely a prelude to the barrage of lawsuits launched against

Microsoft, consistent with a strategy of hold up, not with an attempt to enter into a RAND

license. ███████████████████████████████████████████████████████

███████████████████████████████████████████████████ *See* Wion Decl. Ex. 7

(Dailey ITC Tr.) 2495:23–2497:6; Wion Decl. Ex. 2 (Blasius 30(b)(6) Dep.) 49:2–50:5; Wion

Decl. Ex. 11 (Google/MMI European Commission submission) § 4.1 ████████████████████

███████████████████████████████████████████████ Motorola cannot

claim it only filed those actions as a necessary, but unexpected response to Microsoft having

filed this suit, because Motorola filed the 699 and 700 Actions on November 10, 2010—the

day after Microsoft filed here—and its ITC action followed only 12 days later. ████████████

████████████████████████████████████████████████████

███████████████████████████████████ Wion Decl. Ex. 7 (Dailey ITC Tr.) at 2498:6–

24.[11]

---

[10] Stacking concerns are particularly heightened here, because products on which Motorola demanded royalties need to comply with many other standards besides H.264 and 802.11.  (FFCL ¶ 63.)

[11] Entries in Motorola's privilege log for October 2010,█████████████████████████████ *See*
Wion Decl. Ex. 3 (Motorola's Second Supplemental Log of Withheld Documents) ████████████████████
████████████████████████████████████████████████

MICROSOFT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF BREACH OF
CONTRACT- 19

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    Motorola's immediate pursuit of injunctions confirms that its letters were only the first

2 step of an attempt to hold up Microsoft.  If granted, the injunctions Motorola pursued would

3 have left Microsoft with a choice between pulling its standard-compliant products out of the

4 U.S. and German markets, or giving Motorola whatever it demanded in exchange for a license

5 to Motorola's 802.11 and H.264 patents.  (*See* Dkt. No. 318 at 23–24.)  As the Court has

6 recognized, injunctions are key leverage in forcing standard implementers to accept non-

7 RAND terms:  "[T]he threat of an injunction looming over the negotiation table . . .

8 fundamentally places [the party seeking a RAND license] at a disadvantage," and may lead to

9 distorted, harmful licensing arrangements that "may not easily be undone."  (Dkt. No. 318 at

10 24.)  The European Commission, investigating potential antitrust abuses by Motorola in its

11 pursuit of injunctions, reached the same conclusion:  "The Commission is concerned that the

12 threat of injunctions can distort licensing negotiations and lead to licensing terms that the

13 licensee of the SEP would not have accepted absent this threat."  Wion Decl. Ex. 12 at MS-

14 MOTO_1823_00005258268.

15    Motorola's economic expert Leonard testified that if a patent owner uses an injunction

16 "to try to get hold-up value," that would be "potentially problematic" in light of the RAND

17 licensing commitment and the duty of good faith and fair dealing.  Wion Decl. Ex. 5 (Leonard

18 Dep.) 136:9–137:19.  Leonard defines RAND as "commensurate with the economic value of

19 the patented technology to the licensee relative to the next best alternative technology prior to

20 the standard being set," and defines hold-up value as value above RAND that "derives simply

21 from the patented technology being incorporated into the standard."  *Id.* at 16:3–17:5.  At the

22 November 2012 trial, Motorola still sought a 2.25% royalty that the Court has since found

23 included "an improper attempt by Motorola to capture the value of the H.264 Standard itself as

24

25

26

MICROSOFT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF BREACH OF
CONTRACT- 20

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

opposed to a royalty on the actual economic value of Motorola's patented technology."  (FFCL ¶ 269.)  Motorola continued to seek an exclusion order on its H.264 standard-essential patents in the ITC as late as January 2013.  *See* Wion Decl. Ex. 13 (ITC Mot. to Terminate) at 1. Under the view of its own expert, Motorola was trying to get hold-up value using injunctions.

Both Motorola's conduct in sending the October 21, 2010 and October 29, 2010 letters, and Motorola's conduct in subsequently filing actions and seeking injunctions in U.S. district court, the ITC, and Germany frustrated the purposes of the RAND licensing commitment. Accordingly, Microsoft is entitled to summary judgment that each instance of conduct breached Motorola's duty of good faith and fair dealing.

### C.  Microsoft Is Entitled To Summary Judgment On Motorola's Third, Fourth, Fifth, Seventh, Eighth, and Ninth Affirmative Defenses And Second Counterclaim.

Motorola's Answer to Microsoft's Amended Complaint includes, as an affirmative defense, the claim that:

> Microsoft's First and Second Causes of Action are barred because, by failing to apply for a RAND license and to negotiate the terms of a RAND license and instead filing the present action, Microsoft breached the contract to which it claims to be a third party beneficiary, and failed to satisfy the conditions precedent to any obligations that it was owed as an alleged third party beneficiary, and thereby forfeited all benefits of any purported RAND statement made by the Defendants.

(Dkt. No. 68, Fourth Affirmative Defense at 13–14.)  Motorola subsequently explained in interrogatory responses that its Third, Fifth, Seventh, Eighth, and Ninth Affirmative Defenses are all based on the same theory that Microsoft should have negotiated first before filing this suit.  The basis of Motorola's Third Affirmative Defense ("Ripeness") is that Microsoft's claims "are not ripe for adjudication because Microsoft has repudiated, or failed to satisfy any condition precedent, any right to a RAND license pursuant to Motorola's RAND obligations." Wion Decl. Ex. 14 (Motorola Interrogatory Responses) at 47–48.  The basis of Motorola's Fifth Affirmative Defense ("Waiver") is that "because Microsoft has neither applied for a

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

license, nor engaged in good-faith negotiations for a license, Microsoft has repudiated and waived any benefit that it otherwise would have enjoyed based on Motorola's RAND assurances." *Id.* at 49.  The basis of Motorola's Seventh Affirmative Defense ("Unclean Hands") is that Microsoft sued "Motorola for breach of contract, rather than negotiating the terms of a RAND license in good faith, [which] demonstrate[s] Microsoft's lack of good faith." *Id*. at 51.  The basis of Motorola's Eighth Affirmative Defense ("Failure to Mitigate") is that "Microsoft was required to mitigate its purported damages by applying for a RAND license from Motorola and by negotiating the terms of such a license in a bilateral, good-faith manner." *Id.* at 52–53.  Finally, the basis of Motorola's Ninth Affirmative Defense ("Failure to Satisfy a Condition Precedent") is that "Microsoft failed to satisfy conditions precedent to any duty arising on the part of Motorola – namely, application, and a willingness to negotiate in good faith, for a RAND license." *Id.* at 55–56.

Motorola also advanced a counterclaim predicated on the same theories.  (*See id.* at 15–33.)  Motorola alleged Microsoft had repudiated its rights to RAND licenses by implementing standard-compliant products without first applying for a license.  (*See id.* at Counterclaim ¶¶ 51, 56.)  Motorola also alleged that Microsoft's filing of this suit was a "refusal to negotiate the terms of a RAND license in response" to Motorola's letters, constituting a further repudiation of Microsoft's rights to RAND licenses.  (*Id.* at Counterclaim ¶¶ 53, 58.)  Motorola alleged that it filed its injunctive actions "in light of Microsoft's refusal to apply for a RAND license," Microsoft's "refusal to negotiate a RAND license," and Microsoft's "bad faith filing of suit in the present action."  (*Id.* at Counterclaim ¶ 60.)

On March 30, 2012, Motorola moved for summary judgment on these theories:

> There is no genuine dispute that at the time Motorola sent its October 2010 offer letters to Microsoft, Microsoft had not applied for a RAND license to Motorola's 802.11 and H.264 portfolios.  *Because the SSO policies require an applicant to seek a license from a licensor, Motorola seeks summary judgment* that those October 2010 offer letters cannot form the basis of a breach of contract or promissory estoppel claim.  In addition, *because Microsoft refused*

*to negotiate in good faith with Motorola, but instead immediately brought this action, Motorola is entitled to summary judgment that it had no further contractual duty to negotiate a RAND license with Microsoft.  Finally, this Court should declare that Microsoft, by failing to satisfy the conditions of applying for and negotiating for a RAND license, and instead commencing this lawsuit, repudiated and forfeited any benefit it might otherwise have had under Motorola's RAND assurances, and Motorola is thereby relieved of any further obligation to negotiate a license with Microsoft on RAND terms.*

(Dkt. No. 231 at 2 (emphasis added); *see id.* at 12–24.)  Motorola's briefs set out the argument that Microsoft's filing of this suit breached the duty of good faith and fair dealing.  *See* Dkt. No. 290 at 1 ("The undisputed facts establish unequivocally that Microsoft did not act in good faith."), 3 ("Under Washington law, every contract involves an implied duty of good faith and fair dealing that obligates the parties 'to cooperate with each other so that each may obtain the full benefit of performance.' . . .  This obligation to act in good faith extends not just to Motorola, but to Microsoft, as well.").

In June 2012, the Court denied Motorola's motion for summary judgment with prejudice, rejecting all of the arguments advanced.  (*See* Dkt. No. 335 at 16–21, 28.)  Nevertheless, Motorola apparently intends to press these arguments at trial.  As set forth in Microsoft's contemporaneously-filed Rule 702 motion, Motorola's experts offer opinions inconsistent with the Court's June 2012 order.  Motorola's July 1 brief advances the same "failure to cooperate" argument Motorola pressed in its summary judgment briefing when it argued Microsoft "failed to cooperate" by filing this suit.  (*See* Dkt. No. 716 at 8–9.)  Motorola's July 1 brief also argues that in some situations the "filing of a contract lawsuit" might breach the duty of good faith and fair dealing (*see* Dkt. No. 716 at 6–7)—further suggesting that Motorola still plans to argue it is absolved of any RAND obligations because Microsoft filed this suit.  Motorola presented these claims and arguments at the summary judgment stage in March 2012, they have been rejected with prejudice, and they should play no further part in this case.

MICROSOFT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF BREACH OF
CONTRACT- 23

## V.    CONCLUSION

For the foregoing reasons, Microsoft respectfully requests that the Court grant partial summary judgment of breach of contract in Microsoft's favor, and that the Court grant summary judgment in Microsoft's favor as to Motorola's Third, Fourth, Fifth, Seventh, Eighth, and Ninth Affirmative Defenses and Second Counterclaim.

DATED this 3rd day of July, 2013.

CALFO HARRIGAN LEYH & EAKES LLP


By   s/ Arthur W. Harrigan, Jr.
        Arthur W. Harrigan, Jr., WSBA #1751
        Christopher Wion, WSBA #33207
        Shane P. Cramer, WSBA #35099

By   s/ T. Andrew Culbert
        T. Andrew Culbert
        David E. Killough
        MICROSOFT CORPORATION
        1 Microsoft Way
        Redmond, WA  98052
        Phone:  425-882-8080
        Fax:  425-869-1327

        David T. Pritikin
        Richard A. Cederoth
        Constantine L. Trela, Jr.
        William H. Baumgartner, Jr.
        Ellen S. Robbins
        Douglas I. Lewis
        David C. Giardina
        John W. McBride
        Nathaniel C. Love

        SIDLEY AUSTIN LLP
        One South Dearborn
        Chicago, IL  60603
        Phone:  312-853-7000
        Fax:  312-853-7036

MICROSOFT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF BREACH OF
CONTRACT- 24

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Carter G. Phillips
Brian R. Nester

SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC  20005
Telephone:  202-736-8000
Fax:  202-736-8711

Counsel for Microsoft Corp.

MICROSOFT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF BREACH OF
CONTRACT- 25

## CERTIFICATE OF SERVICE

I, Tim Murphy, swear under penalty of perjury under the laws of the State of Washington to the following:

1.   I am over the age of 21 and not a party to this action.

2.   On the 3rd day of July, 2013, I caused the preceding document to be served on counsel of record in the following manner:

**Attorneys for Motorola Solutions, Inc., and Motorola Mobility, Inc.:**

Ralph Palumbo, WSBA #04751
Philip S. McCune, WSBA #21081           _____ Messenger
Lynn M. Engel, WSBA #21934              _____ US Mail
Summit Law Group                        _____ Facsimile
315 Fifth Ave. South, Suite 1000        ___X___ ECF
Seattle, WA  98104-2682
Telephone:  206-676-7000
Email:  Summit1823@summitlaw.com


Steven Pepe (*pro hac vice*)            _____ Messenger
Jesse J. Jenner (*pro hac vice*)        _____ US Mail
Ropes & Gray LLP                        _____ Facsimile
1211 Avenue of the Americas             ___X___ ECF
New York, NY  10036-8704
Telephone:  (212) 596-9046
Email:  steven.pepe@ropesgray.com
Email:  jesse.jenner@ropesgray.com


Norman H. Beamer (*pro hac vice*)       _____ Messenger
Ropes & Gray LLP                        _____ US Mail
1900 University Avenue, 6th Floor       _____ Facsimile
East Palo Alto, CA  94303-2284          ___X___ ECF
Telephone:  (650) 617-4030
Email:  norman.beamer@ropesgray.com

Paul M. Schoenhard (*pro hac vice*)          _____ Messenger
Ropes & Gray LLP                             _____ US Mail
One Metro Center                             _____ Facsimile
700 12th Street NW, Suite 900                \_\_\_X\_\_\_ ECF
Washington, DC  20005-3948
Telephone:  (202) 508-4693
Email: Paul.schoenhard@ropesgray.com


Andrea Pallios Roberts (*pro hac vice*)      _____ Messenger
Brian C. Cannon (*pro hac vice*)             _____ US Mail
Quinn Emanuel Urquhart & Sullivan, LLP       _____ Facsimile
555 Twin Dolphin Drive, 5th Floor            \_\_\_X\_\_\_ ECF
Redwood Shores, CA 94065
Telephone:  (650) 801-5000
Email: andreaproberts@quinnemanuel.com
Email: briancannon@quinnemanuel.com


Kathleen M. Sullivan (*pro hac vice*)        _____ Messenger
David Elihu (*pro hac vice*)                 _____ US Mail
Quinn Emanuel Urquhart & Sullivan, LLP       _____ Facsimile
51 Madison Ave., 22nd Floor                  \_\_\_X\_\_\_ ECF
New York, NY 10010
Telephone:  (212) 849-7000
Email: kathleensullivan@quinnemanuel.com


William Price (*pro hac vice*)               _____ Messenger
Quinn Emanuel Urquhart & Sullivan, LLP       _____ US Mail
865 S. Figuera St., 10th Floor               _____ Facsimile
Los Angeles, CA 90017                        \_\_\_X\_\_\_ ECF
Telephone:  (212) 443-3000
Email: williamprice@quinnemanuel.com
MicrosoftvMotoBreachofRANDCase@quinnemanuel.com


DATED this 3rd day of July, 2013.


s/  Tim Murphy_____
TIM MURPHY


MICROSOFT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF BREACH OF
CONTRACT- 27

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717