# EXHIBIT 8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re Innovatio IP Ventures, LLC, Patent Litigation | |
| | Case No. 1:11-cv-09308 |
| This Document Relates To: | |
| | Judge James F. Holderman |
| *Cisco Systems, Inc., and Motorola Solutions, Inc., v. Innovatio IP Ventures, LLC*, Case No. 1:11-cv-09309 (originally 1:11-cv-00425 (D. Del.))  | Magistrate Judge Sidney Schenkier |
| | **[PUBLIC REDACTED VERSION]** |
| and | |
| *NETGEAR, INC. v. Innovatio IP Ventures, LLC*, Case No. 1:12-cv-00427 (originally 1:11-cv-01139 (D. Del.)) | |

## PLAINTIFFS' AMENDED COMPLAINT

Plaintiffs Cisco Systems, Inc. ("Cisco"), Motorola Solutions, Inc. ("Motorola"), and NETGEAR, Inc. ("NETGEAR") (collectively, "Plaintiffs"), for their amended complaint against Defendants Innovatio IP Ventures, LLC, Innovatio Management, LLC, and Noel B. Whitley, hereby allege as follows:

## <u>NATURE OF THIS ACTION</u>

1.    This is a civil action brought under federal and state laws against Defendants for declaratory judgment of non-infringement and invalidity of twenty-three United States patents pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and United States Patent Law, 35 U.S.C. § 100 *et seq.*, as well as for violation of the Federal Racketeering Influenced and Corrupt Organizations Act ("RICO"), violation of Cal. Bus. & Prof. Code § 17200, civil

conspiracy, breach of contract, promissory estoppel, intentional interference with prospective economic advantage, unclean hands, and for such other relief as the Court deems just and proper.

## THE PARTIES

2. Plaintiff Cisco is a corporation organized and existing under the laws of the State of California with its principal place of business located at 170 West Tasman Drive, San Jose, California 95134.

3. Plaintiff Motorola is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 1303 East Algonquin Road, Schaumburg, Illinois 60196.

4. Plaintiff NETGEAR is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 350 East Plumeria Drive, San Jose, California 95134.

5. Plaintiffs Cisco, Motorola, and NETGEAR are in the business of making and selling, among other things, wireless local area network ("WLAN") products. Such products include, for example, wireless access points having components within them which provide wireless connectivity pursuant to recognized standards such as IEEE 802.11, also known as "Wi-Fi." Plaintiffs are well known participants in the market for WLAN products.

6. On information and belief, Defendant Innovatio IP Ventures, LLC ("Innovatio") is a limited liability company organized and existing under the laws of the State of Delaware, and indicates that its principal place of business is at 22 West Washington Street, Suite 1500, Chicago, Illinois 60602.

7. Innovatio is a holding company purportedly focused on the licensing of patents allegedly acquired from Broadcom Corporation ("Broadcom"). Despite this, Innovatio employs

dozens of attorneys and agents that assist in the pattern and practice of illegal conduct as alleged herein.

8.     Innovatio is also registered with the State of California to transact business in California.

9.     On information and belief, Defendant Innovatio Management, LLC ("IM") is a limited liability company organized and existing under the laws of Delaware with a place of business at 6 Clawson Street, Ladera Ranch, California 92694.

10.     IM is registered with the State of California to transact intrastate business in California.

11.     On information and belief, Defendant Noel B. Whitley resides at 6 Clawson Street, Ladera Ranch, California 92694.  Mr. Whitley and his agents are referred to herein as "Whitley."   Innovatio, IM and Whitley are referred to herein, alone or in combination, as "Defendants."

12.     On information and belief, Whitley conducts and directs the affairs of Innovatio through a pattern of improper acts as alleged herein, including within Illinois, causing concrete financial harm to Plaintiffs and others.

13.     On information and belief, IM conducts and directs the affairs of Innovatio through a pattern of improper acts as alleged herein, including within Illinois, causing concrete financial harm to Plaintiffs and others.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), 2201, and 2202, and the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*  This Court further has subject matter jurisdiction over Plaintiffs' claim for violations of the RICO Act

pursuant to 28 U.S.C. §§ 1331 and the RICO Act, 18 U.S.C. § 1961 *et seq.* This Court further has supplemental jurisdiction over Plaintiffs' other claims pursuant to 28 U.S.C. §1367, including over Plaintiffs' claims under California Business and Professional Code Section 17200 pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

15.    This Court further has personal jurisdiction over Innovatio, IM, and Whitley, including pursuant to 18 U.S.C. § 1965(b). Jurisdiction is further proper over Innovatio, IM, and Whitley, including under the Illinois Code of Civil Procedure, 735 ILCS 5/2-209, for at least the reason that Defendants have transacted business, committed tortious conduct, caused harm, and made or performed contracts (███████████████████████████████████████ ████████████) within the State of Illinois as described herein.

16.    Venue is proper in this judicial district under 28 U.S.C. § 1391 and 18 U.S.C. § 1965(a). At a minimum, Innovatio purports to have a principal place of business in Illinois. Defendants further have multiple agents, and conduct their affairs, including the conduct complained of herein, within the state of Illinois.

17.    Plaintiffs Cisco, Motorola, and NETGEAR manufacture and sell products that are the subject of the consolidated actions in *In re Innovatio IP Ventures, LLC, Patent Litigation* (Case No. 1:11-cv-09308), and/or Defendants' accusations and threats against Plaintiffs' customers. Cisco, Motorola, and NETGEAR each supply or have supplied products that are the subject of Innovatio's patent allegations in the matters consolidated in *In re Innovatio IP Ventures, LLC, Patent Litigation* (Case No. 1:11-cv-09308). Cisco, Motorola, and NETGEAR further each supply or have supplied one or more of the defendants that are the subject of Innovatio's infringement allegations in the matters consolidated in *In re Innovatio IP Ventures, LLC, Patent Litigation* (Case No. 1:11-cv-09308) with accused products.

18.     Cisco, Motorola, and NETGEAR each have received demands from certain parties subject to Innovatio's allegations in the cases consolidated in *In re Innovatio IP Ventures, LLC, Patent Litigation* (Case No. 1:11-cv-09308) and others for indemnity against Innovatio's patent infringement claims, and/or Defendants' threats in connection with their licensing efforts, outside the context of litigation.

19.     Cisco, Motorola, and NETGEAR and their products have not infringed and do not infringe, either directly or indirectly, any valid and enforceable claim of any of the Patents-In-Suit, either literally or under the doctrine of equivalents.  A substantial controversy exists between the parties which is of sufficient immediacy and reality to warrant declaratory relief.

## THE ORIGINAL PATENTS-IN-SUIT

20.     U.S. Patent No. 6,714,559 ("the '559 patent") is entitled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol" and bears an issuance date of March 30, 2004.  A copy of the '559 patent is attached hereto as Exhibit 1.

21.     U.S. Patent No. 7,386,002 ("the '002 patent") is entitled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol" and bears an issuance date of June 10, 2008.  A copy of the '002 patent is attached hereto as Exhibit 2.

22.     U.S. Patent No. 7,535,921 ("the '921 patent") is entitled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol" and bears an issuance date of May 19, 2009.  A copy of the '921 patent is attached hereto as Exhibit 3.

23.     U.S. Patent No. 7,548,553 ("the '553 patent") is entitled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol" and bears an issuance date of June 19, 2009.  A copy of the '553 patent is attached hereto as Exhibit 4.

24.     U.S. Patent No. 5,740,366 ("the '366 patent") is entitled "Communication Network Having A Plurality Of Bridging Nodes Which Transmit A Beacon To Terminal Nodes In Power Saving State That It Has Messages Awaiting Delivery" and bears an issuance date of April 14, 1998.  A copy of the '366 patent is attached hereto as <u>Exhibit 5.</u>

25.     U.S. Patent No. 5,940,771 ("the '771 patent") is entitled "Network Supporting Roaming, Sleeping Terminals" and bears an issuance date of August 17, 1999.  A copy of the '771 patent is attached hereto as <u>Exhibit 6.</u>

26.     U.S. Patent No. 6,374,311 ("the '311 patent") is entitled "Communication Network Having A Plurality Of Bridging Nodes Which Transmit A Beacon To Terminal Nodes In Power Saving State That It Has Messages Awaiting Delivery" and bears an issuance date of April 16, 2002.  A copy of the '311 patent is attached hereto as <u>Exhibit 7.</u>

27.     U.S. Patent No. 7,457,646 ("the '646 patent") is entitled "Radio Frequency Local Area Network" and bears an issuance date of November 25, 2008.  A copy of the '646 patent is attached hereto as <u>Exhibit 8.</u>

28.     U.S. Patent No. 5,546,397 ("the '397 patent") is entitled "High Reliability Access Point For Wireless Local Area Network" and bears an issuance date of August 13, 1996.  A copy of the '397 patent is attached hereto as <u>Exhibit 9.</u>

29.     U.S. Patent No. 5,844,893 ("the '893 patent") is entitled "System For Coupling Host Computer Means With Base Transceiver Units On A Local Area Network" and bears an issuance date of December 1, 1998.  A copy of the '893 patent is attached hereto as <u>Exhibit 10.</u>

30.     U.S. Patent No. 6,665,536 ("the '536 patent") is entitled "Local Area Network Having Multiple Channel Wireless Access" and bears an issuance date of December 16, 2003.  A copy of the '536 patent is attached hereto as <u>Exhibit 11.</u>

6

31.     U.S. Patent No. 6,697,415 ("the '415 patent") is entitled "Spread Spectrum Transceiver Module Utilizing Multiple Mode Transmission" and bears an issuance date of February 24, 2004.  A copy of the '415 patent is attached hereto as <u>Exhibit 12.</u>

32.     U.S. Patent No. 7,013,138 ("the '138 patent") is entitled "Local Area Network Having Multiple Channel Wireless Access" and bears an issuance date of March 14, 2006.  A copy of the '138 patent is attached hereto as <u>Exhibit 13.</u>

33.     U.S. Patent No. 7,710,907 ("the '907 patent") is entitled "Local Area Network Having Multiple Channel Wireless Access" and bears an issuance date of May 4, 2010.  A copy of the '907 patent is attached hereto as <u>Exhibit 14.</u>

34.     U.S. Patent No. 7,916,747 ("the '747 patent") is entitled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol" and bears an issuance date of March 29, 2011.  A copy of the '747 patent is attached hereto as <u>Exhibit 15.</u>

35.     U.S. Patent No. 7,873,343 ("the '343 patent") is entitled "Communication Network Terminal With Sleep Capability" and bears an issuance date of January 18, 2011.  A copy of the '343 patent is attached hereto as <u>Exhibit 16.</u>

36.     U.S. Patent No. 7,536,167 ("the '167 patent") is entitled "Network Supporting Roaming, Sleeping Terminals" and bears an issuance date of May 19, 2009.  A copy of the '167 patent is attached hereto as <u>Exhibit 17.</u>

## THE ADDITIONAL PATENTS-IN-SUIT

37.     On July 10, 2012, Innovatio filed its Answer to Complaint for Declaratory Judgment, Counterclaims and Cross-Claims in the Cisco Declaratory Judgment Action and the NETGEAR Declaratory Judgment Action.  In its Counterclaims and Cross-Claims, Innovatio accuses Cisco, Motorola, and NETGEAR of infringing and continuing to infringe the seventeen

Original Patents-In-Suit and an additional six Innovatio Patents – U.S. Patent Nos. 5,295,154, 5,428,636, 5,504,746, 6,826,165, 7,107,052, and 7,710,935 (the "Additional Patents-In-Suit") – by, *inter alia*, "their manufacture . . . of their WLAN and/or mesh network products and/or systems," and "making available to Network Operators WLAN and/or mesh products and/or systems." The Original Patents-In-Suit and the Additional Patents-In-Suit are collectively referred to herein as the "Patents-In-Suit."

38.     U.S. Patent No. 5,295,154 ("the '154 patent") is entitled "Radio Frequency Local Area Network" and bears an issuance date of March 15, 1994. A copy of the '154 patent is attached hereto as <u>Exhibit 18</u>.

39.     U.S. Patent No. 5,428,636 ("the '636 patent") is entitled "Radio Frequency Local Area Network" and bears an issuance date of June 27, 1995. A copy of the '636 patent is attached hereto as <u>Exhibit 19</u>.

40.     U.S. Patent No. 5,504,746 ("the '746 patent") is entitled "Radio Frequency Local Area Network" and bears an issuance date of April 2, 1996. A copy of the '746 patent is attached hereto as <u>Exhibit 20</u>.

41.     U.S. Patent No. 6,826,165 ("the '165 patent") is entitled "Radio Frequency Local Area Network" and bears an issuance date of November 30, 2004. A copy of the '165 patent is attached hereto as <u>Exhibit 21</u>.

42.     U.S. Patent No. 7,107,052 ("the '052 patent") is entitled "Local Area Network Having Multiple Channel Wireless Access" and bears an issuance date of September 12, 2006. A copy of the '052 patent is attached hereto as <u>Exhibit 22</u>.

43.     U.S. Patent No. 7,710,935 ("the '935 patent") is entitled "Local Area Network Having Multiple Channel Wireless Access" and bears an issuance date of May 4, 2010.  A copy of the '935 patent is attached hereto as Exhibit 23.[1]

## PRELIMINARY STATEMENT OF FACTS

### A.     Introduction

44.     Defendants, on their own and through their attorneys and other agents, are engaged in a nationwide pattern and scheme to indiscriminately and improperly threaten, defraud, and extort money to which Defendants are not entitled from thousands of businesses, both small and large, that use standardized Wi-Fi (802.11) technology.  These businesses include Plaintiffs' customers.  Rather than approach companies like Cisco, Motorola, and NETGEAR that develop and supply devices that provide accused Wi-Fi technology, Defendants instead target retirement homes, cafés, restaurants, convenience stores, health-care providers, and many other businesses that neither develop nor supply the accused technologies.

45.     As set forth below, Defendants are conducting this pattern and scheme through, among other things, fraud, deceit, misrepresentation, and other forms of unfair and unlawful conduct.  For instance, as alleged herein, Defendants hide from the recipients of their licensing demands the fact that thousands of the accused products are subject to existing licenses, and therefore are beyond the reach of Innovatio's infringement claims.  Adding to their unlawful conduct, Defendants fail to disclose, disregard, and repeatedly breach obligations to license Innovatio's allegedly standards-essential patents on reasonable and non-discriminatory

---

[1]     The patents identified in paragraphs 20–36 are collectively referred to herein as the "Original Patents-In-Suit."  The '154 patent, the '636 patent, the '746 patent, the '165 patent, the '052 patent, and the '935 patent are collectively referred to herein as the "Additional Patents-In-Suit."

("RAND") terms, something Innovatio is contractually committed to do as the alleged owner of these patents.

46.     Defendants perpetuate their unlawful acts by capitalizing on the *in terrorem* impact of improper threats of patent infringement lawsuits and huge legal expenses to investigate Innovatio's alleged "31 patents" and "1,454 patent claims," in order to dissuade Defendants' licensing targets from investigating Defendants' claims.   Unlike suppliers of the accused technologies, many of Innovatio's licensing targets are small businesses that do not possess the resources or experience to investigate and challenge Defendants' illegal licensing activities as alleged herein.   Faced with the prospects of exorbitant expenses, some of Plaintiffs' customers have succumbed to these threats and paid money that Defendants had no right to receive — indeed, for reasons explained herein, money that Defendants are legally prohibited from taking.

47.     Without limitation, Defendants' unlawful conduct includes:

a)      demanding that end users of IEEE 802.11 equipment, including Cisco's, Motorola's, and/or NETGEAR's customers, agree to pay thousands of dollars to use components that already are licensed in an effort to circumvent existing licenses to the Patents-In-Suit, in breach of contractual obligations not to do so and while hiding the existence of those licenses from the recipients of its demands;

b)      demanding that end users of IEEE 802.11 equipment, including Cisco's, Motorola's, and/or NETGEAR's customers, agree to pay thousands of dollars for patents that they do not use or which have expired;

c)      extorting unreasonable fees from end users of IEEE 802.11 equipment, including Cisco's, Motorola's, and/or NETGEAR's customers, in an effort to circumvent obligations that any patent license would be on fair, reasonable and non-discriminatory

terms, while simultaneously hiding the existence of those obligations from the recipients of its demands; and

d)      failing to license its patents to Cisco, Motorola, and NETGEAR or other Wi-Fi product manufacturers/suppliers for reasonable royalties and other fair, reasonable and non-discriminatory terms.

In pursuing this pattern and practice of improper and illegal licensing activities, Defendants have demanded that end users, including Cisco's, Motorola's, and NETGEAR's customers, pay thousands ██████████████████████████ of dollars in fees to use Wi-Fi in their business regardless of whether the allegedly infringing products are already licensed, the number or percentage of patents used/implemented, the remaining term of the patents or the number of its patents that are now expired, or the fact that the exorbitant fees demanded by Defendants are significantly more than the cost of the products and the customers' Wi-Fi computer networking setup.  Defendants have used and continue to use, among other things, unlawful licensing and sham tactics in pursuit of their goals.

**B.      The Development Of The Accused IEEE 802.11 Wi-Fi Technologies**

48.      Cisco, together with numerous other companies, were and are members and participants in standards-setting organizations related to a variety of technologies, such as the Institute of Electrical and Electronics Engineers ("IEEE").

49.      The IEEE is a professional association and leading developer of technical standards.  IEEE members include engineers, scientists and allied professionals whose technical interests relate to electrical and computer sciences, engineering and related disciplines.  Members may participate in the standards-setting process in working groups and/or subgroups called task groups.

11

50.     To protect against unscrupulous conduct by any patent holder who seeks to benefit unfairly from, or to manipulate to its advantage, the IEEE's standard-setting process, and to enable the IEEE and its members to develop standards free from potentially blocking patents, the IEEE instituted policies and rules regarding the disclosure and licensing of patents.

51.     At all relevant times alleged herein, the IEEE's rules and policies required fairness and candor with respect to intellectual property.  By way of example only, the IEEE required its members and patent holders to submit letters of assurance including either a general disclaimer to the effect that the patentee will not enforce any of its present or future patents whose use would be required to implement the proposed IEEE standard against any person or entity using the patents incident to practice of the standard or a statement that a license will be made available to all applicants without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination ("RAND terms"). For example, the IEEE's Standards Board Bylaws stated at relevant times that "IEEE standards may include the known use of essential patents and patent applications provided the IEEE receives assurance from the patent holder or applicant with respect to patents whose infringement is, or in the case of patent applications, potential future infringement the applicant asserts will be, unavoidable in a compliant implementation of either mandatory or optional portions of the standard [essential patents]."  Additionally, the IEEE's Standards Board Bylaws further state that "[t]his assurance shall be either a) A general disclaimer to the effect that the patentee will not enforce any of its present or future patent(s) whose use would be required to implement either mandatory or optional portions of the proposed IEEE standard against any person or entity complying with the standard; or b) A statement that a license for such implementation will be made available without compensation or under reasonable rates, with

reasonable terms and conditions that are demonstrably free of any unfair discrimination," and "[t]his assurance is irrevocable once submitted and accepted and shall apply, at a minimum, from the date of the standard's approval to the date of the standard's withdrawal."

52. The IEEE formed the 802.11 working group in 1990. The IEEE 802.11 standards are entitled "Wireless LAN Media Access Control (MAC) and Physical Layer (PHY) Specifications" and concerns wireless local area networking ("wireless LAN"). In 1997, the IEEE formed two task groups: the 802.11a and 802.11b. In 2000, the IEEE formed the 802.11g task group and 802.11e task group. In 2003, the IEEE formed the 802.11n task group.

53. Wireless standards like IEEE 802.11 play an important role by ensuring interoperability between products that operate in accordance with such standards, facilitating the adoption and advancement of these technologies.

54. Cisco, Motorola, and NETGEAR, together with other companies involved in communications and wireless technologies, worked for years to develop and deploy various wireless technologies, including standardized technologies such as IEEE 802.11, more commonly known as "Wi-Fi."

55. Cisco, Motorola, and NETGEAR have sold and sell Wi-Fi products that include components operating in accordance with various 802.11 standards, and are beneficiaries of the IEEE and 802.11 standards-setting process. Cisco's, Motorola's, and NETGEAR's customers purchase Wi-Fi products and are also beneficiaries of the IEEE and 802.11 standards-setting process.

56. Cisco's, Motorola's, and NETGEAR's Wi-Fi products sold to customers are used, for example, as access points in networks, which facilitate wireless access to the Internet.

**C.     Innovatio And The Alleged Acquisition Of Its Patent Portfolio**

13

57.     Defendant Whitley was a former Intellectual Property executive at Broadcom Corporation ("Broadcom") who, after leaving Broadcom, formed Innovatio and IM in February 2011.

58.     Innovatio holds itself out as the owner by assignment from Broadcom of the following 31 patents, U.S. Patent 5,295,154, U.S. Patent 5,428,636, U.S. Patent 5,504,746, U.S. Patent 5,546,397, U.S. Patent 5,673,031, U.S. Patent 5,740,366, U.S. Patent 5,844,893, U.S. Patent 5,940,771, U.S. Patent 6,046,992, U.S. Patent 6,374,311, U.S. Patent 6,665,536, U.S. Patent 6,697,415, U.S. Patent 6,714,559, U.S. Patent 6,826,165, U.S. Patent 7,013,138, U.S. Patent 7,107,052, U.S. Patent 7,386,002, U.S. Patent 7,457,646, U.S. Patent 7,483,397, U.S. Patent 7,535,921, U.S. Patent 7,536,167, U.S. Patent 7,548,553, U.S. Patent 7,552,246, U.S. Patent 7,558,557, U.S. Patent 7,710,907, U.S. Patent 7,710,935, U.S. Patent 7,826,818, U.S. Patent 7,856,003, U.S. Patent 7,873,343, U.S. Patent 7,916,747, and U.S. Patent 7,917,145 (collectively, the "Innovatio Patents").

59.     Innovatio allegedly acquired its rights, title, and interest in the Innovatio Patents from Broadcom by an assignment agreement dated February 28, 2011, two weeks after Whitley formed Innovatio.  Innovatio granted back to Broadcom a license to the Innovatio Patents and

████████████████████████████████████████████████████████████████

██████████████████████████████████.

**D.     The Innovatio Patents Are Subject To RAND Commitments By Innovatio's Predecessors**

60.     Various other companies allegedly held rights, title, and/or interest in certain of the Patents-In-Suit (or then pending or nascent applications for those patents) prior to their alleged acquisition by Broadcom, including, in order, Intermec IP Corporation, Intermec

Technologies Corporation (subsidiary of UNOVA), and Norand Corporation, which had previously obtained its alleged rights, title, and interest from the named inventors on the patents. Collectively, Norand Corporation, Intermec Technologies Corporation, Intermec IP Corporation and Broadcom Corporation are referred to herein as "Innovatio's Predecessors."

61.     Innovatio's Predecessors subjected the Innovatio Patents to a number of obligations concerning any licensing or enforcement of such patents, including by virtue of their participation in standards-setting bodies. For example, the Innovatio Patents are subject to the IEEE's policies on patents and, in particular, the Innovatio Patents are subject to RAND commitments undertaken by Innovatio's Predecessors before the IEEE.

62.     On or about June 20, 1997, Norand submitted a letter of assurance to the IEEE relating to 802.11, stating "[i]n the event the proposed IEEE standard is adopted, and the standard cannot be practiced without the use of one or more patents which are now or hereafter owned by Norand, Norand would upon request be willing to negotiate a non-transferable, non-exclusive sole and personal license, under the relevant claims of such patent or patents, on a non-discriminatory basis on reasonable terms and conditions." Norand merged with Intermec Corporation in or around December 1997.

63.     On or about October 26, 1995, before Norand and Intermec Corporation merged, Intermec Corporation submitted a letter of assurance to the IEEE relating to 802.11, stating "[i]n the event that patents issue to, or are acquired by, Intermec in the future which Intermec believes will read on devices operating under the proposed IEEE 802.11 Standard, Intermec will (upon written request from any third party) grant a nonexclusive, nontransferable sole and personal license under any such issued patent on nondiscriminatory basis, on terms and conditions which Intermec deems reasonable."

64.     On or about September 6, 2002, Broadcom submitted a letter of assurance to the IEEE relating to 802.11, stating "Broadcom Corporation will license any patents that have or may issue to Broadcom Corporation that relate to a submission to Task Group E entitled 'Analysis of Dual Pre-coding for FEC,' IEEE 802.11/02-414r0, if such submission is adopted in its entirety and made a part of the IEEE 802.11e standard."   On information and belief, submission to Task Group E entitled Analysis of Dual Pre-coding for FEC, IEEE 802.11/02-414r0 was adopted and made a part of the IEEE 802.11e standard.   The letter of assurance further stated that licenses from Broadcom would be granted "royalty-free and granted on reasonable and non-discriminatory terms and conditions."

65.     On or about September 6, 2002, Broadcom submitted another letter of assurance to the IEEE relating to 802.11, stating "Broadcom Corporation will license any patents that have or may issue to Broadcom Corporation that relate to a submission to Task Group G entitled 'IBSS Non-ERP Coexistence,' IEEE 802.11/02-235r2, if such submission is adopted in its entirety and made a part of the IEEE 802.11g standard."   The letter of assurance further stated that licenses from Broadcom would be granted "royalty-free and granted on reasonable and non-discriminatory terms and conditions."

66.     On or about October 17, 2006 Broadcom submitted another letter of assurance to the IEEE for 802.11n.   The letter of assurance states that Broadcom "will grant a license under reasonable rates to an unrestricted number of applicants on a worldwide, non-discriminatory basis with reasonable terms and conditions to comply with the [802.11n] IEEE standard."   The letter further states that "[t]his assurance applies from the date of the standard's approval to the date of the standard's withdrawal and is irrevocable upon acceptance by the IEEE-SA Standards Board Patent Committee."

67.     Innovatio's Predecessors' conduct and promises, including, without limitation, its letters of assurance offering licenses on RAND terms, created express and/or implied contracts with the IEEE and its members, or alternatively between Innovatio's Predecessors and the IEEE, to which IEEE members and other third-parties such as suppliers and users of 802.11 products are third-party beneficiaries.

68.     As the assignee to the Innovatio Patents, which Innovatio claims are standards-based and fundamental to IEEE 802.11 Wi-Fi, Innovatio is bound by the agreements, licenses, covenants, obligations, and promises relating to those patents entered into by Innovatio's Predecessors, including without limitation the RAND obligations undertaken by Innovatio's Predecessors.

**E.      The Innovatio Patents Are Subject To Prior Licenses, Including Licenses To 802.11 Chip Suppliers**

69.     On information and belief, the Innovatio Patents are subject to licenses and exhaustion, including licenses to suppliers of 802.11 components.  For example, as described above, on or around February 28, 2011, Innovatio granted Broadcom a license .  Innovatio's rights, title, and interest in the Innovatio Patents are subject to license and exhaustion, including with respect to the licenses .  Broadcom manufactures, sells, and supplies IEEE 802.11 components, such as chips or chipsets that are certified as "Wi-Fi" products and that operate in accordance with aspects of the 802.11 standards.  Based on public market studies, Broadcom is a substantial supplier of 802.11 components; for example, according to one such study, in 2011,

Broadcom supplied nearly a quarter of all 802.11 components. These components are incorporated by others into devices such as routers, laptops, tablets, and handsets, including but not limited to products manufactured and/or sold by Plaintiffs, thereby providing those devices with 802.11-standardized capability by virtue of the Broadcom 802.11 components contained inside.

70. On information and belief, the Innovatio Patents are also subject to additional licenses, including without limitation ███████████████████████████████ █████████████████████ at least some of which supply components that are incorporated by others into devices such as access points, laptops, tablets, and handsets, including but not limited to products manufactured and/or sold by Plaintiffs.

> **F.** **Upon Acquiring the Innovatio Patents, Defendants Immediately Began An Improper Campaign To Extract Licensing Fees To Which They Are Not Entitled**

71. Defendants are engaging and have engaged in a nationwide pattern and practice of unlawful activities designed to extract unjustified and unlawful fees from targets of Innovatio's "licensing" campaign. In furtherance of this campaign and in an effort to enrich Innovatio and those associated with Innovatio, Defendants have engaged and are engaged, among other things, in an ongoing campaign of making false and misleading statements and baseless threats and allegations, while hiding material facts regarding the Innovatio Patents, intended to illegally circumvent licensing obligations on the patents and extort monies to which Innovatio is not entitled.

72. Defendants were aware and intended that these acts would threaten suppliers and users of accused wireless equipment, thereby decreasing and/or harming competition in those markets and causing Plaintiffs and others participating in or wishing to enter markets for that

equipment to undertake substantial expenses to investigate and defend against Defendants' unlawful pattern and practices.

73.     Innovatio's licensing campaign is largely directed at end users of Wi-Fi technology, such as bakeries, restaurants, cafés, hotels, and other small businesses that do not make or sell devices that provide the accused Wi-Fi functionality and therefore do not have substantial technical knowledge about the products or standards necessary to defend against Innovatio's allegations, nor the resources to do so.  On information and belief, Defendants are targeting this class of users as part of their campaign to obtain fees that bear no reasonable relation to the value, if any, of the Innovatio Patents, or their scope, and to avoid the license- and standards-related encumbrances on the patents.  This unlawful conduct is systemic and ongoing and is being committed by and under the direction and control of at least Defendants.

74.     Innovatio has sent more than 8,000 threatening letters to licensing targets in all 50 states.  On information and belief, these letters are signed and sent by Defendants including Whitley, and others acting on behalf of Defendants, including without limitation Innovatio's counsel, as well as Robert Berman of IP Dispute Resolution Corporation ("IPDR"), Samik Bhattacharyya, Jennifer Lim, and Eric Ogawa of VICIS Consulting LLC ("VICIS"), and Anthony Dowell of Dowell Baker ("Dowell").  Additionally, to enhance the credibility of its threats, Innovatio has filed twenty-three lawsuits in jurisdictions of four different states against the end-users of WLAN products (the "End-User Actions") – claiming to own, and alleging infringement of, seventeen of the Innovatio Patents – U.S. Patent Nos. 6,714,559, 7,386,002, 7,535,921, 7,548,553, 5,740,366, 5,940,771, 6,374,311, 7,457,646, 5,546,397, 5,844,893, 6,665,536, 6,697,415, 7,013,138, 7,710,907, 7,916,747, 7,873,343, and 7,536,167 (the "Original Patents-In-Suit").

75.     The purpose of Defendants' pattern and practice of illegal conduct is not legitimate enforcement of its alleged patent rights, but rather the avoidance of numerous obligations on the patents, allowing Defendants to unlawfully tax the successful 802.11 Wi-Fi standards by attempting to license and licensing products that are already licensed, at rates that have no reasonable relation to the value of the patents being asserted, in contravention of at least the licenses and RAND commitments to which the patents are subject.  To accomplish this, Defendants prey upon end users that are not involved in the development or supply of the accused technologies, demanding exorbitant licensing amounts that breach numerous obligations on the patents and greatly exceed any notion of reasonableness.  In furtherance of their plan, Defendants threaten protracted negotiations with onerous burdens on end users, and offer supposed "discounts" for promptly paying Innovatio without engaging in such negotiations, while making it clear that Innovatio will initiate costly litigation with anyone that does not acquiesce (something it cannot realistically do given the 8000-plus letters sent throughout the U.S.).  Under these circumstances, Innovatio circumvents its obligations and illegally obtains and seeks to obtain licensing fees to which it is not entitled, at great detriment to the Plaintiffs in this action, their customers, and the public generally.

76.     For example, the Innovatio Patents are subject to RAND obligations, prohibiting Innovatio from licensing those patents to any user or implementer of Wi-Fi on terms that are anything other than fair, reasonable, and non-discriminatory.  In breach of those obligations, Defendants demand licenses costing many times more than the entire price of the allegedly infringing Wi-Fi components.  Defendants attempt to circumvent Innovatio's RAND obligations by pursuing these licenses from thousands of end users while hiding those obligations from the end users, knowing that such end users would need to spend much more in costs to investigate or

20

challenge Innovatio's claims (something Defendants and their agents readily cite in correspondence to end users), let alone negotiate a RAND royalty, and issuing *in terrorem* threats that discourage users from investigating or challenging Innovatio's claims.

77.    As another example, Innovatio granted licenses under the Innovatio Patents to Wi-Fi component suppliers, including Broadcom.  The Broadcom license ███████████████

████████████████████████████████████████████████████████████████████

███████████████████████████.  Broadcom is a large supplier of such chips in Wi-Fi products used throughout the U.S., including in routers, handsets, laptops and other devices.  At least Broadcom's license prohibits Innovatio from claiming infringement or collecting fees based on licensed Broadcom products.  ████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████.  Defendants unlawfully and intentionally seek to circumvent this and other licenses, by hiding these licenses from targets of Innovatio's conduct, pursuing licenses from end users, issuing threats concerning the patents and their histories and promising that any investigation into the patents or the accused products will cost far more than the amounts demanded by Defendants, even though the amounts sought by Defendants are not due or legally recoverable.  For example, on or about April 27, 2011, █████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

21

███████████████████████████████████████████████

████████████████████████     ███████████████████████

███████████████████████████████████████████████

██████████████████████████████. Defendants' threats directed at

products with, or users of, licensed 802.11 components are barred, at minimum, pursuant to such

licenses and/or the doctrine of exhaustion, and are therefore, objectively baseless for at least

those reasons. Defendants compound this improper conduct by ignoring requests by end users

for information concerning the prior licensing of the patents and hiding information about such

licensing—including, by way of example only, hiding the Broadcom license in letters to

██████████.

78. Additionally, Innovatio, without justification or adequate investigation, has filed

sham lawsuits against businesses that use licensed products as part of its campaign to intimidate

its other licensing targets to accept its unlawful demands for fear of suit. Indeed, ████████████

is a target of Defendants' unlawful licensing campaign, and is presently defending against

Innovatio's infringement allegations based on ████████████ use of wireless networking

products that rely on Broadcom chips for the accused 802.11 Wi-Fi capabilities.

79. As another example, ██████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

22

[REDACTED].

80.     Defendants' scheme and campaign is furthered through additional material misrepresentations and omissions regarding the patents.  For example, although Defendants' correspondence to licensing targets demand licensing fees, not one of the threat letters indicates that Innovatio's Predecessors, from whom Innovatio allegedly acquired rights in the Innovatio Patents, agreed to provide RAND licenses, or that Innovatio is obligated to provide a license on RAND terms.  The letters to the [REDACTED] discussed below are illustrative of Defendants' tactics and omissions in this and other respects.  (*See, e.g.*, Ex. 24, May 9, 2012 Letter to [REDACTED], signed by Noel Whitley; Ex. 25, June 19, 2012 Letter to [REDACTED].)  Likewise, Defendants affirmatively misrepresent and/or hide from their licensing targets the fact that the Innovatio Patents are subject to existing licenses to suppliers of Wi-Fi products/components, such that no licensing fee may be due, as described above.  Defendants also affirmatively misrepresent and/or hide [REDACTED].  Defendants further their duplicitous conduct in the actual licensing of its patents to those that have acquiesced to their threats.  For example, Innovatio has warranted and represented to certain licensees that [REDACTED] (*See, e.g.*, Ex. 26, [REDACTED].)

23

███████████████████████████████████████████

█████████████, Innovatio's representation is misleading, fraudulent, and unlawful. This and other misconduct is deceptive, and constitutes fraud and misrepresentation in the conduct of Innovatio's licensing program, on which customers, including Plaintiff's customers have relied to their legal and pecuniary detriment, causing them and also Plaintiffs pecuniary harm that was directly and proximately caused by Defendants' misdeeds.

81. Defendants' pattern and practice also includes baseless threats of infringement of patents that have expired. To date, at least ten of the Innovatio Patents have expired, yet those patents continue to be highlighted in Defendants' threat letters in furtherance of their licensing campaign. Yet Innovatio states to its licensing targets that "Innovatio proposes granting [the licensing target] an upfront, paid-up license for its use under all of 31 of the issued Innovatio Patents," when those targets have no liability on and therefore no need of such a license to expired patents. For example, on May 9, 2012, almost one year after the '771 patent expired and almost six months after the '311 patent expired, Innovatio sent a demand letter to ████ ██████████████. (See Ex. 24.) Innovatio did not provide notice of these or its other patents to ███████████████████ before expiration. Notwithstanding the expiration of these patents and other patents, Innovatio's May 9, 2012 demand letter stated "[t]he operation and use of any [WLANs that use the IEEE 802.11 communication protocols] by ████ ████████████ constitutes infringement of at least the following Innovatio Patents: . . . U.S. Patent No. 5,940,771 . . . [and] U.S. Patent No. 6,374,311." (Ex. 24.) Yet circumstances here including a failure to comply with 35 U.S.C. §287, confirms that Innovatio cannot assert infringement or recover damages on at least these expired patent claims. On information and belief, Innovatio never disclosed that these patents had expired, or that its remedies were limited,

and the purpose behind inclusion of these patents is to inflate the size of Innovatio's portfolio, instill fear, increase fees and costs to investigate, and force its targets to capitulate promptly to Innovatio's unlawful demands.

82.     Additionally, Defendants, their counsel and their agents have stated hundreds of times, in correspondence to third party licensing targets and publicly over the past year, that the Innovatio Patents are "essential" and anyone practicing the IEEE 802.11 standards or Wi-Fi is infringing and must pay for its "31 patents" and "1454 patent claims."  (*See e.g.*, in Innovatio's demand letters, Defendants assert that the Innovatio Patents "are controlling patents in the area of WLAN (e.g. Wi-Fi) and mesh networking technologies," and that their licensing targets infringe the patents by operating "WLANs deployed in any corporate office, manufacturing, distribution, retail, inventory management, warehousing, industrial monitoring or control, or 'smart energy' environments."; Ex. 25, June 19, 2012 letter to ███████████ ("the WLAN Patents cover the manner in which access points and terminal devices communicate with each other, including 802.11, Zigbee, and many other short distance communication protocols.")). However, in connection with litigation, in contrast to what Defendants tell their licensing targets, Defendants have stated that "a majority of [the] asserted claims cover optional features and/or WLAN implementations."  (*See* Ex. 27.)  A few weeks later, Innovatio told this Court that only "36 of the 348 asserted claims (in seven of the 17 asserted patents) cover mandatory features of the 802.11 standard, while 333 of the 348 asserted claims (in 14 of the 17 asserted patents) cover: (1) portions of the standard that are 'optional' for a device to support; (2) portions of the standard that, even if supported by the device, are 'optional' for the user to utilize; or (3) device or network implementations that are not defined by the standard and that may be different for each manufacturer or user.  Put another way, **more than 95% of the asserted claims cover**

**'optional' or implementation features that are not defined by the standard.**" (*See* Ex. 28 (emphasis in original).)  Innovatio made these and other similar statements in opposing (and on those bases, overcoming) motions to stay its claims against end users, in favor of Plaintiffs, the suppliers of the accused products.  This was a necessary and yet unlawful measure, as a stay of Innovatio's claims against the end users would greatly hinder Defendants' ability to leverage threats of protracted and costly litigation in their licensing campaign against end users. Moreover, Defendants do not tell third parties from whom Innovatio seeks licenses that it is Innovatio's position in court that more than 95% of the asserted patents claims are based on "optional" or "implementation" features.  To the contrary, Defendants tell third parties that the Innovatio patents cover the standard and demand that those third parties take licenses to all of the Innovatio patents, regardless of whether those third parties do or do not use what Innovatio describes as "optional" or "implementation" features.  This conduct is deceitful and used to perpetrate fraud and extortion on targets of Defendants' licensing campaign.

83.     Defendants have further perpetrated a number of additional falsehoods, half-truths, and misrepresentations in order to extract monies to which Innovatio is not entitled in the conduct of its licensing campaign.  These acts include, without limitation: (a) stating that the named inventors on the asserted patents are "widely considered to be the Fathers of Radio Frequency Local Area Networking Technology—commonly referred to as wireless local area networking ('WLAN') or 'Wi-Fi';" this is, in fact, false; (b) grossly misrepresenting the number of entities that have taken licenses as part of the Innovatio licensing campaign; (c) misrepresenting in its threat letters the "confirmed . . . validity" of certain Innovatio Patents through re-exam at the U.S. Patent Office, and in the International Trade Commission—only one patent (the now expired '311) was ever the subject of a re-examination at the U.S. Patent Office,

and was only allowed following significant amendment to its claims by the then-owner Broadcom; and (d) misrepresenting the value of licenses and settlements related to the Innovatio Patents—numerous letters state that the Innovatio Patents have "generat[ed] in excess of $1 Billion in settlements and license fees," most of which would appears to be based on the $891 million that Qualcomm was publicly reported to have paid Broadcom as part of a broad settlement unrelated to Innovatio's licensing program and which involved numerous other patents and myriad other legal issues such as alleged antitrust abuses in U.S., Europe, and Asia court or regulatory proceedings.

84.     As alleged herein, in furtherance of its unlawful campaign, Defendants intimidate their targets into acceding to Innovatio's improper and illegal licensing demands by threatening substantial harm to their targets' businesses. For example, Defendants state to businesses such as ███████████████████████████████████████████████████, that Innovatio's "WLAN Patents consist of 1,454 patent claims covering access points, terminal devices, the wireless local area network as a whole, and the manner in which these devices communicate with each other," and that ████████████ "has been identified by Innovatio as an infringing party to be added to a future round of infringement litigation." To encourage immediate payment without investigation, Defendants threaten financial harm to ████████████, stating "[p]atent litigation is an extremely expensive and time-consuming method of resolving disputes." To discourage any meaningful or informed negotiation, much less challenge to its patents, Defendants further threaten ████████████ with a burdensome process that includes, without limitation, expensive collection of facts and the review by ████████████ counsel of "tens of thousands of pages of materials," knowing that the cost of an unlawful license is far less than the cost of investigation or litigation, but far more than any amount that Innovatio could obtain

27

without violating obligations owed on the patents. Notably, nowhere in Defendants' letters, communications, or process do Defendants disclose to their targets, such as ████████, the existing limitations on its patent rights, such as the Broadcom or other Wi-Fi supplier licenses, or its RAND commitments. And Defendants' threats of high litigation costs are intended to force the recipients of Innovatio's licensing demands to take an exorbitant and unnecessary license to Innovatio's patents, rather than to engage in a material investigation of the facts or litigation, where the true facts about the limitations on Innovatio's patent rights would likely be discovered. (*See, e.g.*, Ex. 29, September 17, 2012 Email from VICIS to ████████ ████████████████████████████████████████████████████████████ ████████████████████.) To further Innovatio's unlawful licensing scheme, Defendants threaten immediate harm in the event that licensing targets seek indemnity from their suppliers including Cisco.

85.    As set forth herein the unlawful conduct alleged herein is a part of an ongoing pattern of misconduct, and was and continues to be committed with knowledge and with the intent to defraud and extort illegal fees from Defendants' licensing targets, causing direct financial harm to those targets and to Plaintiffs, who supply products to may of those targets, including in the form of legal fees. Defendants have perpetrated these falsehoods, misrepresentation, omissions, and other deceitful conduct to force their targets to immediately give in and pay fees that Innovatio has no right to obtain.

## <u>COUNT I - DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,714,559</u>

86.    Plaintiffs repeat and reallege the allegations in paragraphs 1-85 as though fully set forth herein.

87.    The accused mesh networking and WLAN products, networks and/or systems have not infringed and do not infringe, directly or indirectly, any valid and enforceable claim of the '559 patent, either literally or under the doctrine of equivalents.

88.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

89.    A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '559 patent.

## COUNT II - DECLARATION OF INVALIDITY OF U.S. PATENT NO. 6,714,559

90.    Plaintiffs repeat and reallege the allegations in paragraphs 1-89 as though fully set forth herein.

91.    The '559 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

92.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

93.    A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights with respect to the '559 patent.

## COUNT III - DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,386,002

94.    Plaintiffs repeat and reallege the allegations in paragraphs 1-93 as though fully set forth herein.

95.     The accused mesh networking and WLAN products, networks and/or systems have not infringed and do not infringe, directly or indirectly, any valid and enforceable claim of the '002 patent, either literally or under the doctrine of equivalents.

96.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

97.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '002 patent.

### <u>COUNT IV - DECLARATION OF INVALIDITY OF U.S. PATENT NO. 7,386,002</u>

98.     Plaintiffs repeat and reallege the allegations in paragraphs 1-97 as though fully set forth herein.

99.     The '002 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

100.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

101.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights with respect to the '002 patent.

### <u>COUNT V - DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,535,921</u>

102.     Plaintiffs repeat and reallege the allegations in paragraphs 1-101 as though fully set forth herein.

103.    The accused mesh networking and WLAN products, networks and/or systems have not infringed and do not infringe, directly or indirectly, any valid and enforceable claim of the '921 patent, either literally or under the doctrine of equivalents.

104.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

105.    A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '921 patent.

## COUNT VI - DECLARATION OF INVALIDITY OF U.S. PATENT NO. 7,535,921

106.    Plaintiffs repeat and reallege the allegations in paragraphs 1-105 as though fully set forth herein.

107.    The '921 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

108.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

109.    A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights with respect to the '921 patent.

## COUNT VII - DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,548,553

110.    Plaintiffs repeat and reallege the allegations in paragraphs 1-109 as though fully set forth herein.

111.   The accused mesh networking and WLAN products, networks and/or systems have not infringed and do not infringe, directly or indirectly, any valid and enforceable claim of the '553 patent, either literally or under the doctrine of equivalents.

112.   As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

113.   A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '553 patent.

## COUNT VIII - DECLARATION OF INVALIDITY OF U.S. PATENT NO. 7,548,553

114.   Plaintiffs repeat and reallege the allegations in paragraphs 1-113 as though fully set forth herein.

115.   The '553 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

116.   As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

117.   A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights with respect to the '553 patent.

## COUNT IX - DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,740,366

118.   Plaintiffs repeat and reallege the allegations in paragraphs 1-117 as though fully set forth herein.

119.     The accused mesh networking and WLAN products, networks and/or systems have not infringed and do not infringe, directly or indirectly, any valid and enforceable claim of the '366 patent, either literally or under the doctrine of equivalents.

120.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

121.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '366 patent.

## COUNT X - DECLARATION OF INVALIDITY OF U.S. PATENT NO. 5,740,366

122.     Plaintiffs repeat and reallege the allegations in paragraphs 1-121 as though fully set forth herein.

123.     The '366 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

124.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

125.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights with respect to the '366 patent.

## COUNT XI - DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,940,771

126.     Plaintiffs repeat and reallege the allegations in paragraphs 1-125 as though fully set forth herein.

(header overlapping)

127.     The accused mesh networking and WLAN products, networks and/or systems have not infringed and do not infringe, directly or indirectly, any valid and enforceable claim of the '771 patent, either literally or under the doctrine of equivalents.

128.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

129.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '771 patent.

## COUNT XII - DECLARATION OF INVALIDITY OF U.S. PATENT NO. 5,940,771

130.     Plaintiffs repeat and reallege the allegations in paragraphs 1-129 as though fully set forth herein.

131.     The '771 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

132.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

133.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights with respect to the '771 patent.

## COUNT XIII - DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,374,311

134.     Plaintiffs repeat and reallege the allegations in paragraphs 1-133 as though fully set forth herein.

135.    The accused mesh networking and WLAN products, networks and/or systems have not infringed and do not infringe, directly or indirectly, any valid and enforceable claim of the '311 patent, either literally or under the doctrine of equivalents.

136.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

137.    A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '311 patent.

### COUNT XIV - DECLARATION OF INVALIDITY OF U.S. PATENT NO. 6,374,311

138.    Plaintiffs repeat and reallege the allegations in paragraphs 1-137 as though fully set forth herein.

139.    The '311 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

140.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

141.    A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights with respect to the '311 patent.

### COUNT XV - DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,457,646

142.    Plaintiffs repeat and reallege the allegations in paragraphs 1-141 as though fully set forth herein.

143. The accused mesh networking and WLAN products, networks and/or systems have not infringed and do not infringe, directly or indirectly, any valid and enforceable claim of the '646 patent, either literally or under the doctrine of equivalents.

144. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

145. A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '646 patent.

**COUNT XVI - DECLARATION OF INVALIDITY OF U.S. PATENT NO. 7,457,646**

146. Plaintiffs repeat and reallege the allegations in paragraphs 1-145 as though fully set forth herein.

147. The '646 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

148. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

149. A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights with respect to the '646 patent.

**COUNT XVII - DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,546,397**

150. Plaintiffs repeat and reallege the allegations in paragraphs 1-149 as though fully set forth herein.

151.    The accused mesh networking and WLAN products, networks and/or systems have not infringed and do not infringe, directly or indirectly, any valid and enforceable claim of the '397 patent, either literally or under the doctrine of equivalents.

152.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

153.    A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '397 patent.

## COUNT XVIII - DECLARATION OF INVALIDITY OF U.S. PATENT NO. 5,546,397

154.    Plaintiffs repeat and reallege the allegations in paragraphs 1-153 as though fully set forth herein.

155.    The '397 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

156.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

157.    A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights with respect to the '397 patent.

## COUNT XIX - DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,844,893

158.    Plaintiffs repeat and reallege the allegations in paragraphs 1-157 as though fully set forth herein.

159.    The accused mesh networking and WLAN products, networks and/or systems have not infringed and do not infringe, directly or indirectly, any valid and enforceable claim of the '893 patent, either literally or under the doctrine of equivalents.

160.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

161.    A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '893 patent.

## COUNT XX - DECLARATION OF INVALIDITY OF U.S. PATENT NO. 5,844,893

162.    Plaintiffs repeat and reallege the allegations in paragraphs 1-161 as though fully set forth herein.

163.    The '893 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

164.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

165.    A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights with respect to the '893 patent.

## COUNT XXI - DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,665,536

166.    Plaintiffs repeat and reallege the allegations in paragraphs 1-165 as though fully set forth herein.

167.     The accused mesh networking and WLAN products, networks and/or systems have not infringed and do not infringe, directly or indirectly, any valid and enforceable claim of the '536 patent, either literally or under the doctrine of equivalents.

168.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

169.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '536 patent.

## COUNT XXII - DECLARATION OF INVALIDITY OF U.S. PATENT NO. 6,665,536

170.     Plaintiffs repeat and reallege the allegations in paragraphs 1-169 as though fully set forth herein.

171.     The '536 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

172.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

173.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights with respect to the '536 patent.

## COUNT XXIII - DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,697,415

174.     Plaintiffs repeat and reallege the allegations in paragraphs 1-173 as though fully set forth herein.

175.    The accused mesh networking and WLAN products, networks and/or systems have not infringed and do not infringe, directly or indirectly, any valid and enforceable claim of the '415 patent, either literally or under the doctrine of equivalents.

176.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

177.    A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '415 patent.

## COUNT XXIV - DECLARATION OF INVALIDITY OF U.S. PATENT NO. 6,697,415

178.    Plaintiffs repeat and reallege the allegations in paragraphs 1-177 as though fully set forth herein.

179.    The '415 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

180.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

181.    A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights with respect to the '415 patent.

## COUNT XXV - DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,013,138

182.    Plaintiffs repeat and reallege the allegations in paragraphs 1-181 as though fully set forth herein.

183.    The accused mesh networking and WLAN products, networks and/or systems have not infringed and do not infringe, directly or indirectly, any valid and enforceable claim of the '138 patent, either literally or under the doctrine of equivalents.

184.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

185.    A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '138 patent.

## COUNT XXVI - DECLARATION OF INVALIDITY OF U.S. PATENT NO. 7,013,138

186.    Plaintiffs repeat and reallege the allegations in paragraphs 1-185 as though fully set forth herein.

187.    The '138 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

188.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

189.    A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights with respect to the '138 patent.

## COUNT XXVII - DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,710,907

190.    Plaintiffs repeat and reallege the allegations in paragraphs 1-189 as though fully set forth herein.

191.     The accused mesh networking and WLAN products, networks and/or systems have not infringed and do not infringe, directly or indirectly, any valid and enforceable claim of the '907 patent, either literally or under the doctrine of equivalents.

192.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

193.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '907 patent.

## COUNT XXVIII - DECLARATION OF INVALIDITY OF U.S. PATENT NO. 7,710,907

194.     Plaintiffs repeat and reallege the allegations in paragraphs 1-193 as though fully set forth herein.

195.     The '907 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

196.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

197.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights with respect to the '907 patent.

## COUNT XXIX - DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,916,747

198.     Plaintiffs repeat and reallege the allegations in paragraphs 1-197 as though fully set forth herein.

199.     The accused mesh networking and WLAN products, networks and/or systems have not infringed and do not infringe, directly or indirectly, any valid and enforceable claim of the '747 patent, either literally or under the doctrine of equivalents.

200.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

201.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '747 patent.

### COUNT XXX - DECLARATION OF INVALIDITY OF U.S. PATENT NO. 7,916,747

202.     Plaintiffs repeat and reallege the allegations in paragraphs 1-201 as though fully set forth herein.

203.     The '747 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

204.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

205.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights with respect to the '747 patent.

### COUNT XXXI - DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,873,343

206.     Plaintiffs repeat and reallege the allegations in paragraphs 1-205 as though fully set forth herein.

207.     The accused mesh networking and WLAN products, networks and/or systems have not infringed and do not infringe, directly or indirectly, any valid and enforceable claim of the '343 patent, either literally or under the doctrine of equivalents.

208.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

209.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '343 patent.

## COUNT XXXII - DECLARATION OF INVALIDITY OF U.S. PATENT NO. 7,873,343

210.     Plaintiffs repeat and reallege the allegations in paragraphs 1-209 as though fully set forth herein.

211.     The '343 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

212.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

213.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights with respect to the '343 patent.

## COUNT XXXIII - DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,536,167

214.     Plaintiffs repeat and reallege the allegations in paragraphs 1-213 as though fully set forth herein.

215. The accused mesh networking and WLAN products, networks and/or systems have not infringed and do not infringe, directly or indirectly, any valid and enforceable claim of the '167 patent, either literally or under the doctrine of equivalents.

216. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

217. A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '167 patent.

## COUNT XXXIV - DECLARATION OF INVALIDITY OF U.S. PATENT NO. 7,536,167

218. Plaintiffs repeat and reallege the allegations in paragraphs 1-217 as though fully set forth herein.

219. The '167 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

220. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

221. A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights with respect to the '167 patent.

## COUNT XXXV - DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,295,154

222. Plaintiffs repeat and reallege the allegations in paragraphs 1-221 as though fully set forth herein.

223.     The accused mesh networking and WLAN products, networks and/or systems have not infringed and do not infringe, directly or indirectly, any valid and enforceable claim of the '154 patent, either literally or under the doctrine of equivalents.

224.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

225.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '154 patent.

## COUNT XXXVI - DECLARATION OF INVALIDITY OF U.S. PATENT NO. 5,295,154

226.     Plaintiffs repeat and reallege the allegations in paragraphs 1-225 as though fully set forth herein.

227.     The '154 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

228.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

229.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights with respect to the '154 patent.

## COUNT XXXVII - DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,428,636

230.     Plaintiffs repeat and reallege the allegations in paragraphs 1-229 as though fully set forth herein.

231.    The accused mesh networking and WLAN products, networks and/or systems have not infringed and do not infringe, directly or indirectly, any valid and enforceable claim of the '636 patent, either literally or under the doctrine of equivalents.

232.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

233.    A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '636 patent.

## COUNT XXXVIII - DECLARATION OF INVALIDITY OF U.S. PATENT NO. 5,428,636

234.    Plaintiffs repeat and reallege the allegations in paragraphs 1-233 as though fully set forth herein.

235.    The '636 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

236.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

237.    A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights with respect to the '636 patent.

## COUNT XXXIX - DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,504,746

238.    Plaintiffs repeat and reallege the allegations in paragraphs 1-237 as though fully set forth herein.

239.     The accused mesh networking and WLAN products, networks and/or systems have not infringed and do not infringe, directly or indirectly, any valid and enforceable claim of the '746 patent, either literally or under the doctrine of equivalents.

240.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

241.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '746 patent.

## COUNT XL - DECLARATION OF INVALIDITY OF U.S. PATENT NO. 5,504,746

242.     Plaintiffs repeat and reallege the allegations in paragraphs 1-241 as though fully set forth herein.

243.     The '746 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

244.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

245.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights with respect to the '746 patent.

## COUNT XLI - DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,826,165

246.     Plaintiffs repeat and reallege the allegations in paragraphs 1-245 as though fully set forth herein.

247.    The accused mesh networking and WLAN products, networks and/or systems have not infringed and do not infringe, directly or indirectly, any valid and enforceable claim of the '165 patent, either literally or under the doctrine of equivalents.

248.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

249.    A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '165 patent.

## COUNT XLII - DECLARATION OF INVALIDITY OF U.S. PATENT NO. 6,826,165

250.    Plaintiffs repeat and reallege the allegations in paragraphs 1-249 as though fully set forth herein.

251.    The '165 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

252.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

253.    A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights with respect to the '165 patent.

## COUNT XLIII - DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,107,052

254.    Plaintiffs repeat and reallege the allegations in paragraphs 1-253 as though fully set forth herein.

255.    The accused mesh networking and WLAN products, networks and/or systems have not infringed and do not infringe, directly or indirectly, any valid and enforceable claim of the '052 patent, either literally or under the doctrine of equivalents.

256.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

257.    A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '052 patent.

**COUNT XLIV - DECLARATION OF INVALIDITY OF U.S. PATENT NO. 7,107,052**

258.    Plaintiffs repeat and reallege the allegations in paragraphs 1-257 as though fully set forth herein.

259.    The '052 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

260.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

261.    A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights with respect to the '052 patent.

**COUNT XLV - DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,710,935**

262.    Plaintiffs repeat and reallege the allegations in paragraphs 1-261 as though fully set forth herein.

263.     The accused mesh networking and WLAN products, networks and/or systems have not infringed and do not infringe, directly or indirectly, any valid and enforceable claim of the '935 patent, either literally or under the doctrine of equivalents.

264.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

265.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '935 patent.

## COUNT XLVI - DECLARATION OF INVALIDITY OF U.S. PATENT NO. 7,710,935

266.     Plaintiffs repeat and reallege the allegations in paragraphs 1-265 as though fully set forth herein.

267.     The '935 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

268.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

269.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights with respect to the '935 patent.

## COUNT XLVII - LICENSE

270.     Plaintiffs repeat and reallege the allegations in paragraphs 1-269 as though fully set forth herein.

51

271.     As set forth herein, to the extent Innovatio's allegations of infringement are premised on the alleged making, use, sale, offer for sale, or importation of licensed products, such allegations are barred pursuant to such a license.

272.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

273.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights with respect to the Patents-In-Suit.

## COUNT XLVIII - EXHAUSTION

274.     Plaintiffs repeat and reallege the allegations in paragraphs 1-273 as though fully set forth herein.

275.     As set forth herein, to the extent Innovatio's allegations of infringement are premised on the alleged making, use, sale, offer for sale, or importation of licensed products, such allegations are barred pursuant to the doctrine of exhaustion.

276.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

277.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights with respect to the Patents-In-Suit.

## COUNT XLIX - RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)

278.     Plaintiffs repeat and reallege the allegations in paragraphs 1-277 as though fully set forth herein.

279.     This is an action for civil relief under 18 U.S.C. §§ 1961 *et seq*.

280.     Innovatio and its attorneys, as well as IPDR, VICIS, and Dowell, and Innovatio's "Members" including ███████████████████████████████████████, in any combination associated in fact, are an "Enterprise," as defined in 18 U.S.C. § 1961(4) (referred to herein as the "Associated-in-Fact Enterprise").  Specifically, the above individuals and entities were and are a union or group that are associated in fact, constitute an ongoing organization, and function as a continuing unit.  This is due to, for example, their contractual and financial relationship, their common goal of monetizing the Innovatio Patents, and their continuing and substantial interaction and involvement (including through individuals associated with the entities) as alleged herein.  These individuals and entities were and are associated for a common purpose of engaging in a course of conduct, at least one aspect of which is attempting to extract royalties from the licensing of the Innovatio Patents through improper means.  These individuals and entities have relationships among those associated with the Associated-in-Fact Enterprise, including relationships between and among their respective members, executives, and employees.  The association between these individuals and entities also has longevity sufficient to permit these associates to pursue the Associated-in-Fact Enterprise's purpose, including by virtue of their ongoing contractual and financial relationship, alignment of interests, and ongoing interactions.

281.     Alternatively, or in addition, Innovatio is an "Enterprise," as defined in 18 U.S.C. § 1961(4) (referred to herein as the "Innovatio Enterprise").  For purposes of this Count, the term "Enterprise" encompasses either the Associated-in-Fact Enterprise or the Innovatio Enterprise.

282.    Defendants Innovatio, Whitley and IM are "persons," as that term is defined in 18 U.S.C. § 1961(3), who, individually and collectively, conduct and direct the affairs of the Associated-in-Fact Enterprise described above through a continuing pattern of unlawful conduct. Alternatively, or in addition, Whitley and IM are "persons," as that term is defined in 18 U.S.C. § 1961(3), who, individually and collectively, conduct and direct the affairs of the Innovatio Enterprise described above, through a continuing pattern of unlawful conduct.  As alleged in this Count, the term "Persons" encompasses either Innovatio, Whitley and/or IM with respect to the Associated-in-Fact Enterprise or Whitley and/or IM with respect to the Innovatio Enterprise. Such "Persons" are referred to herein for purposes of this Count as "RICO Defendants."

283.    The Enterprise engages in, and its activities have an effect on, interstate commerce in connection with *inter alia*, the Enterprise's business of acquiring patents, issuing threats to businesses and individuals concerning its patents, coercing businesses and individuals to participate in its licensing program at rates and under conditions that the Enterprise is legally prohibited from seeking, and suing for alleged infringement of certain of its patents without an objective basis and for the illegitimate purpose of bolstering the *in terrorem* effect of its licensing scheme.  The Enterprise has targeted thousands of businesses in all 50 states to date for patent licenses, and has initiated 23 lawsuits to date in the jurisdictions of 4 states.   The Enterprise uses the instrumentalities of interstate travel, interstate mailings, and interstate telephone calls, and it purchases goods and services from various U.S. states – including in connection with RICO Defendants' threats and promoting RICO Defendants' unlawful licensing program.

284. In violation of 18 U.S.C. § 1962(c), RICO Defendants and those acting at their direction have conducted, controlled, and participated in the conduct of the Enterprise's affairs through a pattern of unlawful racketeering activity.

285. The pattern of racketeering activity referred to herein consists of a variety of unlawful schemes which were and are specifically intended to and do use unlawful means and influence to enrich RICO Defendants and others at the expense of Plaintiffs and others. These unlawful schemes involved, for instance, acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, respectively, extortion in violation of 18 U.S.C. § 1951, extortion in violation of California Penal Code § 518, and travelling or using the mail or any facility in interstate commerce in aid of racketeering enterprises in violation of 18 U.S.C. § 1952.

286. As alleged herein, RICO Defendants, individually or collectively, and through the conduct of the Enterprise, are engaging in numerous acts of mail fraud and/or have devised an overall scheme or artifice to defraud, and are attempting to commit fraud and carry out such scheme in violation of 18 U.S.C. § 1341, which constitute "predicate acts" under 18 U.S.C. § 1961 in furtherance of their campaign to enhance their wealth through unlawful means, including, for example:

- operating a scheme to defraud by which RICO Defendants sought and/or obtained licensing fees from end-user licensing targets for the Innovatio Patents based on unlawful, bad faith, and objectively baseless allegations of patent infringement, such as, for instance, threatening to sue users of products that are already covered under Innovatio's licenses, including a license with Broadcom, ████████████████ ████████████████████████████████████████████████████████; based on, at minimum, this license ████████████, Innovatio has no right to allege

55

infringement or demand money from Plaintiffs' customers on account of their use of Broadcom products;

- as stated herein, beginning at least as early as April 12, 2011 and continuing to date, communicating in bad faith to thousands of licensing targets demands for licensing fees while concealing material information from those targets, such as the existing licenses under the Innovatio Patents held by suppliers of Wi-Fi products like Broadcom, ███████████████████ and Innovatio's RAND obligations with respect to the Innovatio Patents, as well as misrepresenting the scope of Innovatio's prior settlements and the alleged validity of the Innovatio Patents, and having knowledge of the falsity and/or fraudulent incompleteness of its representations to targets, all in an effort to deprive the RICO Defendants' targets of money or property that RICO Defendants had no right to seek or obtain;

- having knowledge of prior licenses to the Innovatio Patents which would cover end-user licensing targets' accused products, such knowledge possessed by, for example, Defendant Whitley in light of his prior work at Broadcom, but hiding such licenses from its targets;

- intending to deceive and defraud, and/or devising a scheme to defraud, end-user licensing targets by unlawfully inducing and attempting to induce them to enter into licensing agreements for the Innovatio Patents to which Innovatio is not entitled;

- mailing or causing the mailing of thousands of letters or other communications, repeatedly, separately, and over the span of many months, such communications containing various false and misleading statements and/or material omissions, and in

furtherance of a scheme reasonably calculated to deceive and to defraud licensing targets into paying substantial and unjustified sums in licensing fees;

- causing licensing targets to reasonably and detrimentally rely on the false or misleading representations, and/or omissions, described above, by paying Innovatio fees to which it is not entitled and/or causing the targets to expend significant sums in the investigation, defense, and/or resolution of Innovatio's demands; and

- exploiting the foregoing misrepresentations and/or omissions, as well as the associated expense of investigating and defending against them, in order to keep the licensing targets from discovering the fraud and to thereby obtain and attempt to obtain licensing fees from end users, including to unlawfully circumvent and violate the licenses encumbering the Innovatio patents and Innovatio's RAND and other commitments concerning licensing those patents.

287.    As alleged herein, RICO Defendants, individually or collectively, and through the conduct of the Enterprise, are engaging in numerous acts of wire fraud and/or devised an overall scheme or artifice to defraud, and are attempting to commit fraud and carry out such scheme in violation of 18 U.S.C. § 1343, which constitute "predicate acts" under 18 U.S.C. § 1961 in furtherance of their campaign to enhance their wealth through unlawful means, including, for example:

- operating a scheme to defraud by which RICO Defendants sought and/or obtained licensing fees from end-user licensing targets for the Innovatio Patents based on unlawful, bad faith, and objectively baseless allegations of patent infringement, such as, for instance, threatening to sue users of products that are already covered under Innovatio's licenses, including a license with Broadcom, ████████

██████████████████████████████████████████████;
based on, at minimum, this license ██████, Innovatio has no right to allege infringement or demand money from Plaintiffs' customers on account of their use of Broadcom products;

- as stated herein, beginning at least as early as April 12, 2011 and continuing to date, communicating in bad faith to thousands of licensing targets demands for licensing fees while concealing material information from those targets, such as the existing licenses under the Innovatio Patents held by suppliers of Wi-Fi products like Broadcom, █████████████████ and Innovatio's RAND obligations with respect to the Innovatio Patents, as well as misrepresenting the scope of Innovatio's prior settlements and the alleged validity of the Innovatio Patents, and having knowledge of the falsity and/or fraudulent incompleteness of its representations to targets, all in an effort to deprive the RICO Defendants' targets of money or property that RICO Defendants had no right to seek or obtain;

- having knowledge of the existence of prior licenses to the Innovatio Patents which would cover end-user licensing targets' accused products, such knowledge possessed, at minimum, by Defendant Whitley in light of his prior work at Broadcom, but hiding such licenses from its targets;

- intending to deceive and defraud, and/or devise a scheme to defraud, end-user licensing targets by unlawfully inducing and attempting to induce them to enter into licensing agreements for the Innovatio Patents to which Innovatio is not entitled;

- sending by electronic mail ("email") or causing the emailing of hundreds of letters or other communications containing various false and misleading statements and/or

material omissions, and in furtherance of a scheme reasonably calculated to deceive and to defraud licensing targets into paying substantial sums in licensing fees;

- communicating repeatedly by telephone to licensing targets in furtherance of a scheme to defraud licensing targets into paying substantial and unjustified sums in licensing fees;

- causing licensing targets to reasonably and detrimentally rely on the false or misleading representations, and/or omissions, described above, by paying Innovatio fees to which it is not entitled and/or causing the targets to expend significant sums in the investigation, defense, and/or resolution of Innovatio's demands; and

- exploiting the foregoing misrepresentations and/or omissions as well as the associated expense of investigating and defending against them, in order to keep the licensing targets from discovering the fraud and to thereby obtain and attempt to obtain licensing fees from end users, including to unlawfully circumvent and violate the licenses encumbering the Innovatio patents and Innovatio's RAND and other commitments concerning licensing those patents.

288. As alleged herein, RICO Defendants, individually or collectively, conducted the affairs of the Enterprise through in numerous acts of extortion, attempted extortion, and conspiracy to commit extortion in violation of 18 U.S.C. § 1951, which constitute "predicate acts" under 18 U.S.C. § 1961 in furtherance of their overall scheme to defraud and enhance their wealth through improper means, including, for example:

- obtaining or attempting to obtain licensing fees from end-user licensing targets, including Plaintiff's customers, by wrongful use of fear, including by intimidating licensing targets to choose between paying fees that RICO Defendants are not entitled

to obtain, or to defend expensive legal proceedings and/or undertake costly and burdensome investigation and negotiation procedures, threatening to increase the cost of licensing fees if end-user licensing targets did not comply with Innovatio's demands within thirty days or face legal action, wherein their threats (including any threat of legal action) are objectively baseless and brought with an unlawful motive, without regard to the merits and for an unlawful purpose, and further deprived of legitimacy due to unlawful conduct consisting of fraud or intentional misrepresentations, all while knowing that the Innovatio Patents have been licensed, are subject to RAND obligations (wherein end-user targets are beneficiaries of the IEEE and 802.11 standards-setting process, and knowing that Innovatio's royalty demands are in violation of its IEEE obligations and are intended to circumvent all notions of RAND licensing that are binding on Innovatio), and are not infringed in the manner claimed by Innovatio;

- threatening supposed legitimate enforcement of patent rights as a tactic of fear and to create undue leverage to extract, attempt to extract, and conspire to extract substantial sums from its targets that far exceed licenses on RAND terms (including amounts that are much greater than the price of the Wi-Fi products and technologies being used) and that ignore the existing licenses to the patents, all while knowing that the Innovatio patents are not infringed, have been licensed, and/or are subject to RAND obligations wherein end-user targets are beneficiaries of the IEEE and 802.11 standards-setting process;

- wrongfully using fear to threaten and prey upon end-user licensing targets that are far removed from the development and manufacture of the accused products or the

underlying 802.11 standards and/or that are not sophisticated in the underlying technology, nor have the resources to challenge RICO Defendants' baseless claims, in order for RICO Defendants to circumvent and conceal the license restrictions on the Innovatio patents and the RAND obligations encumbering those patents from end-user targets, who are unaware of those obligations due to RICO Defendants' concealment of those facts;

- instituting bad faith and sham lawsuits in connection with the Innovatio Patents, including against parties and products that are the subject of the consolidated actions in *In re Innovatio IP Ventures, LLC, Patent Litigation* (Case No. 1:11-cv-09308), with the intent to create fear and intimidate thousands of other targets to pay fees that RICO Defendants are not entitled to obtain;

- affecting or attempting to affect commerce between and among the states by, for example, (1) requiring users and implementers of the accused Wi-Fi technologies throughout the U.S. to pay non-RAND fees to continue their use, or begin using, accused Wi-Fi in the conduct of their businesses, and by otherwise threatening or seeking injunctive relief against such users and implementers, having a probability of, for example, depleting the assets of such users and implementers; (2) preventing companies, including Innovatio's end-user licensing targets from continuing their use of standardized Wi-Fi technologies, which RICO Defendants wrongfully claim are covered by the Innovatio Patents and/or causing such targets that use or desire to use the accused Wi-Fi technologies to undertake substantial expenses, and by further using the instrumentalities of interstate commerce (mail and wire) to carry out the pattern of extortion; as alleged herein, based on RICO Defendants' allegations, the

61

Innovatio Patents are subject to RAND contractual commitments, meaning Innovatio must offer RAND license terms, not seek fees many times the value of its targets' accused products, nor seek to impose a discriminatory tax on those targets, which obligations Defendants have concealed and breached.

289.    As alleged herein, RICO Defendants, individually or collectively, conducted the affairs of the Enterprise through numerous acts of extortion in violation of California Penal Code § 518, which constitute "predicate acts" under 18 U.S.C. § 1961 in furtherance of their overall scheme to defraud and enhance their wealth through improper means, including, for example:

- obtaining licensing fees from end-user licensing targets by wrongful use of fear, including by intimidating licensing targets to choose between paying fees that RICO Defendants are not entitled to obtain, or to defend expensive legal proceedings and/or undertake costly and burdensome investigation and negotiation procedures, threatening to increase the cost of licensing fees if end-user licensing targets did not comply with Innovatio's demands within thirty days or face legal action, wherein their threats (including any threat of legal action) are objectively baseless and brought with an unlawful motive, without regard to the merits and for an unlawful purpose, and further deprived of legitimacy due to unlawful conduct consisting of fraud or intentional misrepresentations, all while knowing that the Innovatio Patents have been licensed, are subject to RAND obligations (wherein end-user targets are beneficiaries of the IEEE and 802.11 standards-setting process, and knowing that Innovatio's royalty demands are in violation of its IEEE obligations and are intended to circumvent all notions of RAND licensing that are binding on Innovatio), and are not infringed in the manner claimed by Innovatio;

62

- threatening supposed legitimate enforcement of patent rights as a tactic of fear and to create undue leverage to extract substantial sums from its targets that far exceed licenses on RAND terms (including amounts that are much greater than the price of the Wi-Fi products and technologies being used) and that ignore the existing licenses to those patents, all while knowing that the Innovatio patents are not infringed, have been licensed, and/or are subject to RAND obligations wherein end-user targets are beneficiaries of the IEEE and 802.11 standards-setting process;

- wrongfully using fear to threaten and prey upon end-user licensing targets that are far removed from the development and manufacture of the accused products or the underlying 802.11 standards and/or that are not sophisticated in the underlying technology, nor have the resources to challenge RICO Defendants' baseless claims, in order for RICO Defendants to circumvent and conceal the license restrictions on the Innovatio patents and the RAND obligations encumbering those patents from end-user targets, who are unaware of those obligations due to RICO Defendants' concealment of those facts;

- instituting bad faith and sham lawsuits in connection with the Innovatio Patents, including against parties and products that are the subject of the consolidated actions in *In re Innovatio IP Ventures, LLC, Patent Litigation* (Case No. 1:11-cv-09308), with the intent to create fear and intimidate thousands of other targets to pay fees that RICO Defendants are not entitled to obtain;

- affecting commerce by, for example, (1) requiring users and implementers of the accused Wi-Fi technologies to pay non-RAND fees to continue their use, or begin using, accused Wi-Fi in the conduct of their businesses, and by otherwise threatening

or seeking injunctive relief against such users and implementers, having a probability of, for example, depleting the assets of such users and implementers; (2) preventing companies, including Innovatio's end-user licensing targets from continuing their use of standardized Wi-Fi technologies, which RICO Defendants wrongfully claim are covered by the Innovatio Patents and/or causing such targets that use or desire to use the accused Wi-Fi technologies to undertake substantial expenses; as alleged herein, based on RICO Defendants' allegations, the Innovatio Patents are subject to RAND contractual commitments, meaning Innovatio must offer RAND license terms, not seek fees many times the value of its targets' accused products, nor seek to impose a discriminatory tax on those targets, which obligations Defendants have concealed and breached.

290.    As alleged herein, RICO Defendants, individually or collectively, conducted the affairs of the Enterprise through numerous acts of travelling or using the mail or any facility in interstate commerce in aid of racketeering enterprises in violation of 18 U.S.C. § 1952, which constitute "predicate acts" under 18 U.S.C. § 1961 in furtherance of their overall scheme to defraud and enhance their wealth through improper means, including, for example:

- mailing of or causing the mailing of, e-mailing of or causing the e-mailing of threatening letters in furtherance of a scheme to obtain licensing fees from end-user licensing targets by wrongful use of fear, including by intimidating licensing targets to choose between paying fees that RICO Defendants are not entitled to obtain, or to defend expensive legal proceedings and/or undertake costly and burdensome investigation and negotiation procedures, threatening to increase the cost of licensing fees if end-user licensing targets did not comply with Innovatio's demands within

thirty days or face legal action, wherein their threats are objectively baseless and brought with an unlawful motive, without regard to the merits and for an unlawful purpose, and further deprived of legitimacy due to unlawful conduct consisting of fraud or intentional misrepresentations, all while knowing that the Innovatio Patents are not infringed, have been licensed, and/or are subject to RAND obligations wherein end-user targets are beneficiaries of the IEEE and 802.11 standards-setting process, and knowing that Innovatio's royalty demands are in violation of its IEEE obligations and are intended to circumvent all notions of RAND licensing that are binding on Innovatio;

- threatening supposed legitimate enforcement of patent rights as a tactic of fear and to create undue leverage to extract substantial sums from its targets that far exceed licenses on RAND terms (including amounts that are much greater than the price of the Wi-Fi products and technologies being used), all while knowing that the Innovatio patents are not infringed, have been licensed, and/or are subject to RAND obligations wherein end-user targets are beneficiaries of the IEEE and 802.11 standards-setting process;

- wrongfully using fear to threaten and prey upon end-user licensing targets that are far removed from the development and manufacture of the accused products or the underlying 802.11 standards and/or that are not sophisticated in the underlying technology, nor have the resources to challenge RICO Defendants' baseless claims, in order for RICO Defendants to circumvent RAND obligations to end-user targets that are unaware of those obligations due to RICO Defendants' concealment of those facts;

- instituting bad faith and sham lawsuits in connection with the Innovatio Patents, including against parties and products that are the subject of the consolidated actions in *In re Innovatio IP Ventures, LLC, Patent Litigation* (Case No. 1:11-cv-09308) with the intent to create fear and intimidate thousands of other targets to pay fees that RICO Defendants are not entitled to obtain; and

- affecting or attempting to affect commerce between and among the states by, for example, (1) requiring users and implementers of the accused Wi-Fi technologies throughout the U.S. to pay non-RAND fees to continue their use, or begin using, accused Wi-Fi in the conduct of their businesses, and by otherwise threatening or seeking injunctive relief against such users and implementers, having a probability of, for example, depleting the assets of such users and implementers; (2) preventing companies, including Innovatio's end-user licensing targets, from continuing their use of standardized Wi-Fi technologies, which RICO Defendants wrongfully claim are covered by the Innovatio Patents, and/or causing such targets that use or desire to use the accused Wi-Fi technologies to undertake substantial expenses, and by further using the instrumentalities of interstate commerce to carry out the pattern of racketeering; as alleged herein, based on RICO Defendants' allegations, the Innovatio Patents are subject to RAND contractual commitments, meaning Innovatio must offer RAND license terms, not seek fees many times the value of its targets' accused products, nor seek to impose a discriminatory tax on those targets, which obligations Defendants have concealed and breached.

291.    These predicate acts are related because they had common purposes and goals (such as the unlawful enrichment of RICO Defendants in violation of Innovatio's contractual

commitments and promises), common methods of commission (for example, the fraudulent use of the mails or wires, and/or misconduct through fear and extortion using the alleged legitimacy of Innovatio's patent rights), and common participants (Defendants Whitley, IM, and/or Innovatio, and those acting at their direction).

292.    Each of the foregoing acts of racketeering by the RICO Defendants is related, continuous, ongoing, and part of a pattern of conduct pertaining to multiple patents, directed at multiple victims, and continuing since at least early 2011.   Accordingly, RICO Defendants, individually or collectively, have engaged and are engaging in a continuing and related pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), which poses a threat of continued unlawful activity.   The RICO Defendants' unlawful acts constitute a "pattern of racketeering activity," as that term is defined in 18 U.S.C. § 1961(5), in that there is a threat of continued unlawful activity.   With respect to each of the RICO Defendants, the pattern of unlawful activity at least has close-ended continuity in that there at least was a closed period of repeated acts covering at least a period from 2011 to present.   With respect to each of the RICO Defendants, the pattern of unlawful activity also has open-ended continuity in that the unlawful acts are continuing, including in connection with the ongoing efforts to improperly threaten, mislead, and defraud targets of its licensing program for the benefit of the Enterprise.

293.    As a direct and proximate result of the participation in and conduct of the affairs of the Enterprise alleged herein by RICO Defendants through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), Plaintiffs have been directly and proximately injured in their business and property, and are entitled to all remedies available under the law.   As an intended, actual and proximate consequence of RICO Defendants' unlawful actions, Plaintiffs have incurred significant fees and costs in investigating and defending against RICO Defendants'

unlawful licensing campaign against Plaintiffs' customers, including fees and costs with respect to investigating and defending objectively baseless threats made against Plaintiffs' customers based on their alleged use of Plaintiffs' products, and in addition Plaintiffs have been forced to incur the costs associated with significant disruption to their businesses, disruption of the commercial relationship between Plaintiffs and their customers, and other disruptions to Plaintiffs caused by the RICO Defendants' unlawful conduct.  Plaintiffs have also been harmed to the extent that the costs of any disruption, investigation, and license or other fees and expenses exceed the value of a RAND license.  Moreover, as an intended, actual, and proximate consequence of RICO Defendants' unlawful actions, Plaintiffs have been further injured commercially and financially by the threat of injunctions incident to any conduct other than capitulation to RICO Defendants' unlawful licensing campaign and baseless allegations.

294.    RICO Defendants have engaged in a pattern and practice to further their licensing campaign through a series of lawsuits brought pursuant to a pattern of making threats and filing legal action without regard to the merits, without investigation, and for an unlawful purpose (*e.g.*, circumventing Innovatio's binding RAND and other obligations), and/or RICO Defendants' threats and claims are deprived of legitimacy due to unlawful conduct consisting of, for instance, making knowingly fraudulent or intentional misrepresentations to the court (*e.g.*, representing to the Court that the Innovatio Patents are primarily infringed by specific end-user implementations of Wi-Fi, but representing to its licensing targets that the Innovatio Patents are "essential" patents, and therein allegedly needed by anyone using IEEE 802.11 Wi-Fi).

## COUNT L - CAL. BUS. & PROF. CODE §§ 17200, ET SEQ.

295.    Plaintiffs repeat and reallege the allegations in paragraphs 1-294 as though fully set forth herein.

296.    Defendants' conduct described herein constitutes unfair, unlawful and/or fraudulent business acts or practices under Cal. Bus. & Prof. Code § 17200 et seq., including, for example: making affirmative misrepresentations and omissions about the need to take a license to the Innovatio Patents, the encumbrances on those patents, the alleged validity of the Innovatio Patents, prior settlements, and the number of licensees; using fear to extort license fees for amounts to which Innovatio is not entitled, including amounts for accused products that are already licensed under the Innovatio Patents and non-RAND amounts; concealing from licensing targets the chip-supplier licenses; violations of RICO, as alleged above; and systematic breach of contract and engaging in a broad scheme to obtain license fees for non-RAND amounts and for accused products that are already licensed.

297.    Misconduct and injuries pertaining to the conduct referenced herein have occurred within California, either of which gives rise to a § 17200 claim.  With respect to injury in California, at least Cisco is incorporated and has its principal place of business in California, conducts business related to the accused standards and products in California, and sells accused products to customers located in California; NETGEAR has its principal place of business in California, conducts business related to the accused standards and products in California, and sells accused products to customers located in California.  Motorola conducts business related to the accused standards and products in California, and sells accused products to customers located in California.  Innovatio has targeted dozens of California customers of Cisco, Motorola, and NETGEAR (and hundreds of California companies overall) with its baseless allegations and unlawful conduct.  Several of Innovatio's licensing agents reside in California.  Customers of Cisco, Motorola, and NETGEAR in California have expended money investigating and preparing to defend against Innovatio's baseless claims and, in some cases, paying the fees

demanded by Innovatio proximately arising out of Defendants' illegal conduct. Cisco, Motorola, and NETGEAR have also expended substantial sums investigating and indemnifying against Innovatio's baseless claims against Plaintiffs' customers.

298.    In addition to injuries in California, various acts of misconduct alleged in the preceding counts occurred in California, including Defendants' threats, bad faith assertion of the Innovatio Patents against Plaintiffs' customers located in California, and acts of misconduct committed by Defendants in California.

299.    Plaintiffs are entitled to remedies, including an injunction barring continued commission of the unlawful activities alleged herein, attorneys' fees, and restitution of ill-gotten gains of Defendants, including investments, licensing royalties, or any recoveries obtained directly or indirectly from Plaintiffs through the inappropriate conduct set forth herein.

## COUNT LI - CIVIL CONSPIRACY

300.    Plaintiffs repeat and reallege the allegations in paragraphs 1-299 as though fully set forth herein.

301.    Defendants Whitley, Innovatio, and/or IM individually or collectively along with investors, counsel, and other entities such as IPDR, VICIS, and Dowell ("Conspirators"), formed an agreement for purposes of engaging in a nationwide pattern and practice of baseless threats, fraud, omission, misrepresentation, unfair competition, breach of contract, and extortion of money from thousands of businesses, both small and large, that use standardized Wi-Fi (802.11) technology.  Alternatively Conspirators formed an agreement for purposes of promoting and profiting from Defendants' licensing program and/or enforcing patent rights, but in furthering those purposes agreed to, and did engage in, a nationwide pattern and practice employing unlawful means, including making baseless threats and claims, engaging in fraud, omission,

misrepresentation, unfair competition, and extortion, and breaching promises and contractual commitments, as alleged herein.

302.     In furtherance of this agreement, or these agreements, one or more of Conspirators have engaged in numerous unlawful acts, including without limitation, (1) fraudulently and through acts of extortion sending threat letters while failing to disclose material information and misrepresenting material facts; (2) fraudulently demanding and receiving licensing fees in violation of RAND obligations; (3) systematically inducing the breach of, and breaching, binding RAND contracts and promises (as described below); (4) interfering with Plaintiffs' prospective business relations as described herein; and (5) making baseless and sham threats in bad faith and without a reasonable investigation or belief that the Conspirators' targets infringed or required or already had rights to the Innovatio Patents.

303.     Through these unlawful acts, Conspirators have damaged Plaintiffs including by *inter alia* causing Plaintiffs to expend substantial expenditures investigating, defending, and preparing to defend against fraudulent, extortionate, and baseless threats and claims.

## COUNT LII - BREACH OF CONTRACT

304.     Plaintiffs repeat and reallege the allegations in paragraphs 1-303 as though fully set forth herein.

305.     For consideration, including IEEE membership and participation, Innovatio's Predecessors entered into an express and/or implied contracts with the IEEE's members, or alternatively, with the IEEE to which IEEE members and others are third-party beneficiaries, in which Innovatio's Predecessors agreed, among other things, to abide by the IEEE's policies and rules. The IEEE rules and policies, whether formal or informal, including all stipulations, amendments, modifications, requirements and representations in any form, constitute a contract

between Innovatio's Predecessors and the IEEE's members, or alternatively between Innovatio's Predecessors and the IEEE, to which IEEE members and others, including but not limited to Plaintiffs are third-party beneficiaries.

306.    In accordance with the foregoing, the IEEE's rules and policies require its members and patent holders to submit letters of assurance including either a general disclaimer to the effect that the patentee will not enforce any of its present or future patents whose use would be required to implement the proposed IEEE standard against any person or entity using the patents to make, use, sell, import, or offer for sale in the U.S. any product that operates in accordance with the standard or a statements that a license will be made available to all applicants without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination.

307.    For each of at least the 802.11a, b, e, g, and n standards, the IEEE adopted the respective standards and Innovatio's Predecessors have submitted respective letters of assurance to the IEEE for such standards.

308.    IEEE members, the Plaintiffs, their customers, and various third-parties, developed, marketed and/or used products that operate in accordance with the IEEE 802.11 standards.  Innovatio's Predecessors' and others' assurances and commitments to RAND were intended to, and did, secure adoption of 802.11 standards by the IEEE, Plaintiffs and others.  In reliance on such assurances, companies including Plaintiffs and third parties invested substantial resources in developing, marketing, selling, and improving products that operate in accordance with the accused 802.11 standards.

309.    Furthermore, Innovatio's Predecessors' representations and other conduct, including the letters of assurance offering licenses on RAND terms, created express and/or

implied contracts with the IEEE and its members, or alternatively between Innovatio's Predecessors and the IEEE, to which IEEE members and others are third-party beneficiaries.

310.    Innovatio, as assignee to the Innovatio Patents which were subject to Innovatio's Predecessors letters of assurance offering licenses on RAND terms, and other conduct before the IEEE, is bound by the agreements, licenses, covenants, obligations, and promises relating to those patents entered into by Innovatio's Predecessors.

311.    Innovatio breached its contractual obligations, including by, *inter alia*, making demands and/or entering into licenses under terms that are unfair, unreasonable, and not free from discrimination, by seeking to enjoin Plaintiffs from using components that operate in accordance with the accused 802.11 standards, making demands based on the use of products that are already licensed under the Innovatio Patents and/or products that Innovatio is contractually prohibited from accusing of infringement, making demands for licenses to patents that are expired, and through other unlawful conduct such as misrepresentations and/or omissions regarding its patents and licenses, as alleged herein.

312.    Innovatio is further promoting a licensing program that is blatantly unreasonable on its face, including blatantly unreasonable offers and conduct in violation of good faith and fair dealing inherent in all contracts.

313.    Plaintiffs have incurred damages, and will be further damaged in the future, due to Innovatio's breach of its contractual obligations, including as alleged herein.

## COUNT LIII - PROMISSORY ESTOPPEL

314.    Plaintiffs repeat and reallege the allegations in paragraphs 1-313 as though fully set forth herein.

315.     Innovatio's Predecessors made representations and engaged in other conduct,
including Innovatio's Predecessors' representations that they would license its existing and
future patents relating to IEEE 802.11 Wi-Fi on RAND terms.

316.     Innovatio's Predecessors' representations and other conduct constituted promises
to the IEEE, its members and third-party beneficiaries, such as Cisco, Motorola, and NETGEAR,
and their customers.  By making those promises, Innovatio's Predecessors knew or reasonably
should have known that they would be relied upon.

317.     The IEEE and its members, and third-party beneficiaries including Cisco,
Motorola, and NETGEAR, and their customers reasonably relied on the foregoing promises in
adopting 802.11 standards.  Cisco, Motorola, and NETGEAR further reasonably relied on the
foregoing promises, and/or the 802.11 standards, in investing substantial resources developing
and marketing products accused of alleged infringement in this action.

318.     Innovatio, as assignee of the patents subject to these promises, is bound by
Innovatio's Predecessors' representations and other conduct constituting promises to the IEEE
and its members, and to third-party beneficiaries, including Cisco, Motorola, and NETGEAR.

319.     Plaintiffs have been damaged as a result of their reasonable reliance as alleged
herein, in developing, marketing, selling, and using products that have been accused by
Innovatio of alleged infringement.  Injustice can be avoided only by enforcement of Innovatio's
promises.

## COUNT LIV - INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

320.     Plaintiffs repeat and reallege the allegations of paragraphs 1-319 as though fully
set forth herein.

321.    Plaintiffs enjoy economic relationships with numerous customers, including customers that are targets of Defendants' licensing campaign.

322.    Innovatio is aware of these relationships, as established, through at minimum, pleadings Innovatio has filed in this matter relating to the suppliers of the accused technologies, including Cisco, Motorola, and NETGEAR; further, Innovatio has been informed by customers of their expectation that their suppliers, such as Cisco, are indemnifying against Innovatio's threats and licensing demands.

323.    Despite that knowledge, Innovatio has repeatedly stated in connection with its licensing campaign that Cisco (and other suppliers) are not indemnifying their customers against Innovatio's threats.   For example, when in September 2012, a Cisco customer informed Innovatio of its relationship with Cisco, VICIS stated that Innovatio had filed suit against some 200 companies to date, and so far no equipment manufacturer has stepped in to defend.  This statement is false, and was knowingly made with unlawful and wrongful intent, designed to disrupt the relationship between the customer and Cisco.  On information and belief, Innovatio has repeated such statements to other customers of Plaintiffs.

324.    Innovatio's conduct is continuing, and has caused, and will likely cause disruption and harm to Plaintiffs' relationships, advantages, and expectancies with their customers.  For example, Innovatio's conduct has caused, *inter alia*, reputational harm to Plaintiffs.  In fact, based on VICIS's representations to Cisco customers as alleged above, at least one of Cisco's customers found such representations to be detrimental to Cisco's reputation.

325.    Innovatio's conduct as alleged herein constitutes interference with Plaintiffs', including Cisco's, customer relationships and has resulted in damages to Cisco's and, on

information and belief, other Plaintiffs' customer relationships and reputation in an amount to be proven at trial.

## COUNT LV - UNCLEAN HANDS

326. Plaintiffs repeat and reallege the allegations of paragraphs 1-325 as though fully set forth herein.

327. Defendants' wrongful conduct as alleged herein constitutes unclean hands and renders the Innovatio Patents unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in favor of Plaintiffs granting the following relief:

A.     A declaration that the accused mesh networking and WLAN products, networks and/or systems have not infringed and do not infringe any valid and enforceable claim of any of the Patents-In-Suit;

B.     A declaration that the Patents-In-Suit are invalid for failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and/or 112;

C.     A declaration that Innovatio's allegations of infringement are barred;

D.     An injunction against Defendants and their officers, agents, servants, employees, attorneys, and others in active concert or participation with them from asserting infringement or instituting or continuing any legal action for infringement of the Patents-In-Suit or the Innovatio Patents against Plaintiffs or their suppliers,

manufacturers, distributors, resellers of their products, customers or end users of their products;

E.    An order declaring that this is an exceptional case and awarding Plaintiffs their costs, expenses, disbursements and reasonable attorney fees under 35 U.S.C. § 285 and all other applicable statutes, rules and common law;

F.    A judgment in favor of Plaintiffs on all of their claims;

G.    A judgment requiring Innovatio's specific performance under its contract with IEEE and/or IEEE members to grant licenses to the Innovatio Patents to Plaintiffs on fair, reasonable, and non-discriminatory terms and conditions;

H.    An award to Plaintiffs of, and a declaration that Plaintiffs have, a royalty-free license for the Innovatio Patents;

I.    An award for threefold the actual damages Plaintiffs sustained as a result of Defendants' violations of 18 U.S.C. § 1962(c) and the costs, including attorneys' fees, incurred by Plaintiffs in prosecuting RICO claims against RICO Defendants.

J.    An award to Plaintiffs for the amount of damages as proven at trial;

K.    A judgment in favor of Plaintiffs and against Defendants on Plaintiffs' claims under Cal. Bus. & Prof. Code Section 17200, including for restitution as applicable;

L.    A permanent injunction, pursuant to Cal. Bus. and Prof. Code. § 17203, enjoining Defendants from any further act of unfair competition;

M.    A judgment in favor of Plaintiffs and against Defendants on Plaintiffs' claim for civil conspiracy, and an award of damages, including punitive damages as applicable.

Case 2:10-cv-01823-JLR Document 728-9 Filed 07/03/13 Page 79 of 82

N. A judgment in favor of Plaintiffs and against Defendants on Plaintiffs' claim for intentional interference with prospective economic advantage, and an award of damages, including punitive damages as applicable.

O. A declaration that Defendants have come to and proceeded in this litigation with unclean hands;

P. A declaration that the Patents-In-Suit are unenforceable; and

Q. Such other and further relief as this Court may deem just and proper.

### **JURY DEMAND**

In accordance with Rule 38 of the Federal Rules of Civil Procedure and Rule 38.1 of the Local Rules of Civil Practice and Procedure of the United States District Court for the Northern District of Illinois, Plaintiffs respectfully demand a jury trial of all issues triable to a jury in this action.

Dated:  October 1, 2012                    Respectfully submitted,

_/s/ Gianni Cutri_

Steven Cherny *(Pro Hac Vice)*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800 (Telephone)
steven.cherny@kirkland.com

Gianni Cutri (#6272109)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
312.862.2000 (Telephone)
312.862.2200 (Facsimile)
gcutri@kirkland.com

Adam R. Alper *(Pro Hac Vice)*
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
415.439.1400 (Telephone)
415.439.1500 (Facsimile)
adam.alper@kirkland.com

Michael W. De Vries (*Pro Hac Vice*)
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
213.680.8400 (Telephone)
michael.devries@kirkland.com

***Attorney for Plaintiffs:***
*Cisco Systems, Inc. (Pre-Consolidation Dist. Del.
Case No. 1:11-cv-00425-LPS transferred as N.D.
Ill. Case No. 1:11-cv-09309)*

*Motorola Solutions, Inc. (Pre-Consolidation Dist.
Del. Case No. 1:11-cv-00425-LPS transferred as
N.D. Ill. Case No. 1:11-cv-09309)*

*Netgear Inc. (Pre-Consolidation Dist. Del. Case No. 1:11-cv-01139-LPS transferred as N.D. Ill. Case No. 1:12-cv-00427)*

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2012 a true and correct copy of the foregoing

document, **PLAINTIFFS' AMENDED COMPLAINT**, was electronically filed with the Court

via the CM/ECF system which sent notification of such filing to all Counsel of Record. Copies

of documents required to be served by Fed.R.Civ.P. 5(a) have been served.


Dated:     **October 1, 2012**                    _/s/ Gianni Cutri_
                                                    Gianni Cutri (#6272109)
                                                    KIRKLAND & ELLIS LLP
                                                    300 North LaSalle
                                                    Chicago, Illinois  60654
                                                    312.862.2000 (Telephone)
                                                    312.862.2200 (Facsimile)
                                                    gcutri@kirkland.com