HONORABLE JAMES L. ROBART

1

2

3

4

5

6

7

8

9

10

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>    Plaintiff,<br><br>  v.<br><br>MOTOROLA INC., et al.,<br><br>      Defendant. | No. C10-1823-JLR<br><br><br>MICROSOFT'S OPPOSITION TO<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT<br><br>**Noted: July 31, 2013 at 10:00 AM** |
| MOTOROLA MOBILITY, LLC., et al.,<br><br>      Plaintiffs,<br><br>  v.<br><br>MICROSOFT CORPORATION,<br><br>      Defendant. | **ORAL ARGUMENT REQUESTED** |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MICROSOFT'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 1

I.   MOTOROLA'S MOTION FOR SUMMARY JUDGMENT ON MICROSOFT'S
     BREACH THEORIES STEMMING FROM MOTOROLA'S PURSUIT OF
     INJUNCTIONS SHOULD BE DENIED. ............................................................... 1

     A.   Motorola's Lawsuits And Pursuit Of Injunctions On Standard-Essential Patents
          Breached The Duty Of Good Faith And Fair Dealing. .................................................. 1

     B.   Even Apart From Its Duty Of Good Faith, Motorola Breached Its Express RAND
          Licensing Commitments By Seeking Injunctions Against Microsoft's Implementation
          Of The Standards ........................................................................................................... 3

     C.   Motorola's Carefully-Selected Citations And Timing Arguments Fail To Support Its
          Position ........................................................................................................................... 8

     D.   The Record Clearly Establishes Attorney-Fee Damages Stemming From Motorola's
          Breaches. ...................................................................................................................... 11

II.  THE *NOERR-PENNINGTON* DOCTRINE DOES NOT IMMUNIZE MOTOROLA
     FROM BREACH OF CONTRACT LIABILITY. ................................................ 13

III. MOTOROLA'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DAMAGES
     SHOULD BE DENIED. ....................................................................................... 16

     A.   Attorneys' Fees Can Be Awarded as Consequential Damages. .................................. 17

     B.   Even If The American Rule Controlled, Its Equitable Exceptions Support Microsoft's
          Claim For Damages ...................................................................................................... 18

IV.  THE COURT HAS ALREADY HELD THAT MOTOROLA'S TREATMENT OF
     MARVELL AND ITS FAILURE TO GRANT BACK A LICENSE UNDER THE MPEG
     LA AGREEMENT WILL BE PART OF THE TRIAL. ........................................ 21

CONCLUSION ................................................................................................................ 24

MICROSOFT'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*All Star Gas, Inc. v. Bechard*,
   998 P.2d 367 (Wash. App. 2000)........................................................................19

*Anchor Motor Freight, Inc. v. Int't Broth. of Teamsters, Local Union No. 377*,
   700 F.2d 1067 (6th Cir. 1983) ..........................................................................20

*Apple, Inc. v. Motorola, Inc.*,
   869 F. Supp. 2d 901 (N.D. Ill. 2012) ...............................................................5, 8

*Apple, Inc. v. Motorola Mobility, Inc.*,
   886 F. Supp. 2d 1061 (W.D. Wis. 2012) .......................................................13, 14

*Apple, Inc. v. Motorola Mobility, Inc.*,
   No. 11-cv-178, 2012 WL 5416941 (W.D. Wis. Oct. 29, 2012) ................................8

*Bores v. Domino's Pizza LLC*,
   No. 05-2498, 2008 WL 4755834 (D. Minn. Oct. 27, 2008) ...................................14

*Cecil v. Dominy*,
   418 P.2d 233 (Wash. 1966) .............................................................................18

*City of Seattle v. McCready*,
   931 P.2d 156 (Wash. 1997) ........................................................................17, 19

*ClearPlay, Inc. v. Nissim Corp.*,
   No. 07-81170-CIV, 2011 WL 6724156 (S.D. Fla. Dec. 21, 2011) .........................14

*Cohn v. Taco Bell Corp.*,
   No. 92 C 5852, 1995 WL 247996 (N.D. Ill. April 24, 1995) .................................17

*Dally v. Isaacson*,
   245 P.2d 200 (Wash. 1952) .............................................................................16

*Divine Tower Int'l Corp. v. Kegler, Brown, Hill & Ritter Co., L.P.A.*,
   Nos. 2:04-CV-494, -584, 2008 WL 4405037 (S.D. Ohio Sept. 24, 2008) .............20

*Dr. Franklin Perkins Sch. v. Freeman*,
   741 F.2d 1503 (7th Cir. 1984) .........................................................................18

*Eastlake Const. Co., Inc. v. Hess*,
   686 P.2d 465 (Wash. 1984) .............................................................................16

MICROSOFT'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

*Fite v. Lee*,
  521 P.2d 964 (Wash. App. 1974)..............................................................................15

*Forbes v. Am. Bldg. Maint. Co. W.*,
  198 P.3d 1042 (Wash. App. 2009)..........................................................................20

*Frank Coluccio Constr. Co., Inc. v. King County*,
  150 P.3d 1147 (Wash. App. 2007)............................................................................3

*Gregoire v. Lucent*,
  No. 6:03 CV 251 ORL 31 KRS, 2005 WL 1863429 (M.D. Fla. Aug. 5, 2005)....................20

*In re Innovatio IP Ventures, LLC Patent Lit.*
  No. 11 C 9308, 2013 WL 427167 (N.D. Ill. Feb. 4, 2013)..........................................14

*Ino Ino, Inc. v. City of Bellevue*,
  937 P.2d 154 (Wash. 1997) .....................................................................................18

*Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*,
  162 P.3d 1153 (Wash. 2007) ...................................................................................21

*Kelleigh v. Algonquin Gas Transmission Co.*,
  No. 946458, 1996 WL 1186836 (Mass. Super. Nov. 6, 1996)....................................20

*Long v. T-H Trucking Co.*,
  486 P.2d 300 (Wash. App. 1971)..............................................................................13

*Mallinckrodt, Inc. v. Medipart, Inc.*,
  976 F.2d 700 (Fed. Cir. 1992)....................................................................................4

*Manning v. Loidhamer*,
  538 P.2d 136 (Wash. 1975).......................................................................................21

*Microsoft Corp. v. Motorola, Inc.*,
  696 F.3d 872 (9th Cir. 2012) ................................................................................4, 6

*Morrow v. Microsoft Corp.*,
  499 F.3d 1332 (Fed. Cir. 2007) .................................................................................4

*Powertech Tech., Inc. v. Tessera, Inc.*,
  872 F. Supp. 2d 924 (N.D. Cal. 2012) ....................................................................14

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*,
  508 U.S. 49 (1993).....................................................................................................15

*Realtek Semiconductor Corp. v. LSI Corp.*,
  No. C–12–03451–RMW, 2013 WL 2181717 (N.D. Cal. May 20, 2013) ..................6, 9

MICROSOFT'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

*Riveredge Associates v. Metro. Life Ins. Co.*,
    774 F. Supp. 897 (D.N.J. 1991) .........................................................17

*Rogerson Hiller Corp. v. Port of Port Angeles*,
    982 P.2d 131 (Wash. App. 1999) .......................................................20

*Spear Pharms., Inc. v. William Blair & Co., LLC*,
    610 F. Supp. 2d 278 (D. Del. 2009) ...................................................14

*Widener v. Arco*,
    717 F. Supp. 1211 (N.D. Tex. 1989) .................................................20

STATUTES

35 U.S.C. § 154 ...........................................................................................4

OTHER AUTHORITIES

Restatement (Second) of Contracts § 205 .............................................3, 18

Restatement (Second) of Contracts § 207 .................................................7

Restatement (Second) of Contracts § 347 ...............................................16

Restatement (Second) of Contracts § 682 ...........................................15, 16

2 Dan B. Dobbs, *Torts* § 440 (2001) .....................................................15

MICROSOFT'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

## **INTRODUCTION**

Motorola urges scattered arguments targeting selected issues and evidence it hopes to eliminate from the trial.  For example, Motorola would prefer that the jury not consider Motorola's relentless pursuit of injunctions in derogation of its RAND licensing commitments—conduct which already incurred two injunctions from this Court, and antitrust scrutiny from the FTC and the European Commission.  But Microsoft has provided ample legal and factual support for its breach theories premised on Motorola's lawsuits on its SEPs. Motorola's flawed argument that the *Noerr-Pennington* doctrine bars these theories was already properly rejected by Judge Crabb in the Western District of Wisconsin, where Motorola first advanced it, a holding that Motorola conspicuously neglects to mention.

Motorola's invocation of the default American fee-shifting rule to cut back Microsoft's damages claim is also misguided:  The rule is irrelevant where the fees sought were incurred in other actions, and the portion of fees sought that were incurred here are subject to a specific exception.  Motorola's argument, if accepted, would amount to immunity for SEP holders for withholding RAND licenses and instead attempting to enjoin standard implementers.  Motorola would also prefer that the jury not hear how it treated Marvell, or its evasion of the grant-back obligations of the Google-MPEG LA license, but the Court has already ruled that Microsoft can argue that these instances of conduct support its overall theory of breach, and they will be part of the trial.  Motorola's summary judgment motion should be denied in its entirety.

## **ARGUMENT**

### I.   MOTOROLA'S MOTION FOR SUMMARY JUDGMENT ON MICROSOFT'S BREACH THEORIES STEMMING FROM MOTOROLA'S PURSUIT OF INJUNCTIONS SHOULD BE DENIED.

#### A.  Motorola's Lawsuits And Pursuit Of Injunctions On Standard-Essential Patents Breached The Duty Of Good Faith And Fair Dealing.

Motorola's pursuit of injunctions was a key part of its strategy to hold up Microsoft in frustration of the purposes of the RAND licensing commitment, and each act in pursuit of that

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

strategy—as well as the whole course of conduct—breached the duty of good faith and fair dealing.  (*See* Dkt. No. 729 at 18–21.)  Motorola led off its hold up strategy with sham "offers" that could not be accepted, setting up its claim that Microsoft had no license, which would enable pursuit of injunctions shutting Microsoft's standard-compliant products out of the market, in turn creating leverage designed to extract crippling concessions from Microsoft.  Along the way, Motorola rebuffed Marvell, and ignored the grant back obligation arising from the Google-MPEG LA agreement, as either would have undermined its leverage.

Motorola tries to brush off this claim, arguing it reflects a "free floating" notion of the duty of good faith and fair dealing that would inject new substantive terms into the contract.  (*See* Dkt. No. 733, Defs.' Mot. for Summary J. ("Moto. Br.") 9.)  If Motorola were correct, a breach of the duty of good faith and fair dealing would arise only if a party directly breaches other contractual obligations, rendering the *implied* duty superfluous.  In the RAND licensing setting, seeking injunctions—especially by arguing the absence of a license following sham offers—breaches the duty of good faith and fair dealing regardless of whether the contract contains an explicit provision barring injunctive relief.

Conduct frustrating a contract's purpose breaches the duty of good faith and fair dealing.  (*See* Dkt. 715 at 8–11.)  The Court has already found that a purpose of Motorola's contracts was to prevent hold up.  (FFCL ¶¶ 55– 60, 71, 74, 538.)  That finding is a verity, it is not "free floating," nor did it inject new contractual terms—it is tied to Motorola's promise to license any implementer and to the purposes of SSOs, and was supported by extensive expert testimony, including that of Motorola's own expert.  (FFCL ¶¶ 60, 74.)  Motorola frustrated this purpose of the RAND licensing commitment by filing lawsuits on its SEPs (after leading off with its sham offers) and by seeking injunctions, breaching the duty of good faith and fair dealing.  Motorola's motion can be denied on this basis alone.

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    In any event, Motorola's approach of slicing its conduct into individual, discrete acts,

2  attempting to find a justification for each, is no defense to Microsoft's claim that Motorola's

3  *course of conduct* constituted a breach.  The duty of good faith and fair dealing is not satisfied

4  by arguing that a series of acts might be justifiable if viewed in isolation.  Rather, the purpose

5  of the duty of good faith is to prevent "evasion of the spirit of the bargain," Restatement

6  (Second) of Contracts § 205 cmt. d, and to enforce "faithfulness to an agreed common purpose

7  and consistency with the justified expectations of the other party," *Frank Coluccio Constr. Co.,*

8  *Inc. v. King County*, 150 P.3d 1147, 1155 (Wash. App. 2007) (finding breach of the duty where

9  one party deprived the other of contractual benefits by making a false representation, failing to

10  make certain adjustments, and colluding with a third party).  Faithfulness, consistency, and

11  evasion cannot be fully evaluated by examining isolated acts and ignoring their context.

12    **B.  Even Apart From Its Duty Of Good Faith, Motorola Breached Its Express
       RAND Licensing Commitments By Seeking Injunctions Against Microsoft's
13     Implementation Of The Standards.**

14    Motorola's RAND licensing commitments expressly require that it make available

15  RAND licenses to any standard implementer.  This commitment means that Motorola will not

16  pursue injunctions against implementers.  That obligation is within the four corners of the

17  RAND licensing contracts, independent of the duty of good faith and fair dealing.  Motorola's

18  protestations that no "particular provision in the contract" bars seeking injunctions, Moto. Br.

19  8–9, reflects a refusal to recognize the duties that directly and necessarily follow from its

20  promise to grant licenses to anyone.  Motorola's recitation of its original statutory rights as a

21  patent holder, Moto. Br. 8, misses the point:  Motorola *surrendered* statutory rights in order to

22  gain a foothold in the standard.  Had it not made the RAND licensing commitment, Motorola

23  could attempt to exclude every party that allegedly used Motorola's patented technology.  But

24  when it participated in the SSOs' formation of these standards, and made its contractual RAND

25

26

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 3

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   licensing commitments, Motorola promised it would do just the opposite—it promised that *it*

2   *would exclude no one*, and would make licenses available to *every* standard implementer.

3          While a patent grant gives a patent holder "the right to exclude others from making,

4   using, . . . or selling the invention," 35 U.S.C. § 154, the right to exclude can be waived by

5   contract.  *See Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 703 (Fed. Cir. 1992) ("This

6   right to exclude may be waived in whole or in part.  The conditions of such waiver are subject

7   to patent, contract, antitrust, and any other applicable law, as well as equitable considerations

8   such as are reflected in the law of patent misuse").  *See also Morrow v. Microsoft Corp.*, 499

9   F.3d 1332, 1342 (Fed. Cir. 2007) ("[I]mplicit in the right to exclude is the right to waive that

10  right.").  A patent license is one example of such a waiver.  *Morrow*, 499 F.3d at 1342.  A

11  RAND licensing commitment is simply another example.  It is hard to imagine a clearer waiver

12  of the right to exclude than a contractual promise to grant licenses (*i.e.*, forego exclusion) on

13  reasonable and non-discriminatory terms to anyone who wants to make use of the technology.

14         The Ninth Circuit, in affirming the Court's preliminary injunction, recognized that

15  Motorola's RAND licensing commitments were not consistent with pursuing injunctions:

16          This language [of the RAND licensing commitment] *admits of no limitations* as
            to who or how many applicants could receive a license ("unrestricted number of
17          applicants") or as to which country's patents could be included ("worldwide,"
            "the patented material necessary").  *Implicit in such a sweeping promise is, at*
18          *least arguably, a guarantee that the patent-holder will not take steps to keep*
            *would-be users from using the patented material, such as seeking an injunction,*
19          but will instead proffer licenses consistent with the commitment made.

20  *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 884 (9th Cir. 2012) (emphasis added).  Where

21  the patent holder has demanded royalties far in excess of RAND, and then predicates a claim

22  for injunctive relief on the absence of a license, the "arguable" nature of this inconsistency

23  vanishes and is replaced by a certainty.  *See id.* at 885 ("[I]t could well be that retrospective

24  payment at the rate ultimately determined and a determination of the future rate, not an

25

26

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 4

1  injunction banning sales while that rate is determined, is the only remedy consistent with the

2  contractual commitment to license users of [ ] standard-essential patents.").

3      Judge Posner agrees that RAND licensing commitments must be understood to waive

4  injunctive relief. *See Apple, Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901, 913–14 (N.D. Ill.

5  2012) (endorsing the FTC's position that "injunctive relief is indeed unavailable for

6  infringement of a patent governed by FRAND" and holding "I don't see how, given FRAND, I

7  would be justified in enjoining Apple . . . unless Apple refuses to pay a royalty that meets the

8  FRAND requirement.").  *See also* Ex. 1, Herbert Hovenkamp, "Competition in Information

9  Technologies," U. of Iowa Legal Studies Research Paper No. 12-32 (Oct. 2012), at MS-

10 MOTO_1823_00005246577 ("Permitting the owner of a FRAND-encumbered patent to have

11 an injunction against someone willing to pay FRAND royalties is tantamount to making the

12 patent holder the dictator of the royalties, which once again is the same thing as no FRAND

13 commitment at all.");[1] Ex. 2, Joseph Farrell *et al.*, "Standard setting, patents, and hold-up," 74

14 *Antitrust L. J.* 603, 638 (2007), at MOTM_WASH1823_0492624 ("[A] patent holder that has

15 made a commitment to license on a FRAND basis should not be able to get (or threaten) an

16 injunction against use of the technology to comply with the standard.").

17     With guidance from this Court's prior rulings, the Ninth Circuit opinion, and Judge

18 Posner's ruling, the Northern District of California recently granted summary judgment against

19 a standard-essential patent holder found to have breached its RAND licensing commitment to

20 the IEEE by seeking an exclusion order in the ITC:

> [D]efendants are contractually obligated under their Letters of Assurance to the
> IEEE to license the '958 and '867 patents on RAND terms and Realtek is a
> third-party beneficiary to that contract (this is not disputed).  Also, like in
> *Motorola*, the act of seeking injunctive relief (here, at the ITC before proposing
> a RAND license to Realtek) is inherently inconsistent and a breach of
> defendants' promise to license the patents on RAND terms.

[1] Exhibits are attached to the Declaration of Christopher Wion in Support of Microsoft's Opposition to
Defendants' Motion for Summary Judgment, filed concurrently with this motion.

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 5

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   *Realtek Semiconductor Corp. v. LSI Corp.*, No. C–12–03451–RMW, 2013 WL 2181717, at *6

2   (N.D. Cal. May 20, 2013).[2]  To be sure, the Northern District noted (referring to this case) that

3   the patent holder's conduct in *Realtek* of "bringing the ITC action before offering a license[ ] is

4   even more glaringly inconsistent with its RAND obligations than Motorola's request for an

5   injunction at the district court after offering a license to Microsoft in the *Motorola* case," *id.*,

6   but in light of this Court's findings, Motorola's letters were not RAND offers.  Even if

7   Motorola's October 2010 letter had reflected a genuine "attempt to offer a license" on RAND

8   terms (a claim this Court's rulings negate), Motorola's immediate pursuit of injunctions

9   afterwards was "a clear attempt to gain leverage in future licensing negotiations and is

10  improper," *id.* at *7, as this Court already recognized.  (*See* Dkt. No. 318 at 24.)  Accordingly,

11  like the breaching defendant in *Realtek*, Motorola's pursuit of injunctions prior to offering a

12  RAND license breached its RAND licensing commitments.

13       In fact, in a separate ITC proceeding brought by Microsoft, Motorola claimed

14  Microsoft was asserting patents that were subject to a RAND commitment, and argued the

15  exact breach of contract theory adopted by the *Realtek* court:

16       [Motorola] Mobility has been materially prejudiced by Microsoft's breach of its
         obligations in that Microsoft, without making any offer to license the '517 and
17       '352 patents, let alone a RAND offer, has sued [Motorola] Mobility in the ITC
         seeking an exclusion order against products allegedly covered by these patents
18       that comply with the SDA specifications.

19  Ex. 5, Motorola ITC Responses at MOTM_WASH1823_0399256–7.  As Microsoft explained

20  previously, Motorola had not yet taken steps that were necessary under the particular SSO's

21  rules to establish its eligibility for a RAND license, but once Motorola did so, Microsoft

22

23       [2] Motorola provides a section of its brief entitled "*No Other Courts* or Administrative Bodies Have Prohibited
    SEP Holders From Seeking Injunctions."  Moto. Br. 9 (emphasis added).  The *Realtek* decision drew significant
24  attention from those focused on SEP issues.  Indeed, in representing Samsung (another party seeking injunctions
    on standard-essential patents), on May 28, 2013, Motorola's counsel here filed a response to Apple's
25  supplemental authority submission of the *Realtek* decision to the ITC, and argued *Realtek* did not counsel against
    granting Samsung an exclusion order against Apple's standard-compliant products.  *See* Ex. 4 (Samsung
    Response) at 2, 5.
26

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

promptly withdrew its claims in the ITC.  (*See* Dkt. No. 269 at 4–5.)  Regardless, Motorola's

position was clear:  a patent holder breaches its RAND licensing commitment by seeking

injunctions against standard implementers, especially when it never made a RAND offer.

The public interest also supports this construction.  "In choosing among the reasonable

meanings of a promise or agreement or a term thereof, a meaning that serves the public interest

is generally preferred."  Restatement (Second) of Contracts § 207.  Regulatory agencies on two

continents have declared that Motorola's insistence on seeking injunctions on SEPs both harms

the public interest and likely violated the unfair competition and antitrust laws.  The Federal

Trade Commission entered into a Proposed Consent Order in January 2013 to settle allegations

concerning Motorola's pursuit of injunctions on its standard-essential patents (*see* Ex. 3, FTC-

Google Consent Order at MOTM_WASH1823_0620222–50), and in its "Analysis of Proposed

Consent Order to Aid Public Comment," described the basis of the FTC's complaint against

Google and Motorola:

> Relying on Motorola's promise to license its SEPs on FRAND terms, electronic
> device manufacturers implemented the relevant standards and were locked-in to
> using Motorola's patents.  Motorola then violated the FRAND commitments
> made to ETSI, ITU, and IEEE by seeking, or threatening, to enjoin certain
> competitors from marketing and selling products compliant with the relevant
> standards, like the iPhone and the Xbox, from the market unless the competitor
> paid higher royalty rates or made other concessions.

Ex. 6 at MOTM_WASH1823_0620216; *see also id.* at MOTM_WASH1823_0620216–17

(describing harms to consumers stemming from Motorola's pursuit of injunctions on SEPs).

Similarly, in the context of an investigation of Motorola's pursuit of injunctions on standard-

essential patents against Apple, the European Commission

> reached the preliminary conclusion that the seeking and enforcing of an
> injunction for SEPs can constitute an abuse of a dominant position in the
> exceptional circumstances of this case - where the holder of a SEP has given a
> commitment to license these patents on FRAND terms and where the company
> against which an injunction is sought has shown to be willing to enter into a
> FRAND licence.

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 7

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Ex. 7, European Commission Memo at MS-MOTO_1823_00005258272.

If Motorola's view were accepted, as long as it asserted it was willing to "negotiate," it could file lawsuits seeking injunctions against *every* implementer of the 802.11 or H.264 standards; it could obtain those injunctions; it could *actually exclude* all implementers from the market for standard-compliant products; and it could use the leverage of these proceedings to extract non-RAND royalties or any other concessions it wished. Motorola could simply claim the market for 802.11 and H.264 standard compliant products entirely for itself, while arguing that it was complying with its RAND licensing commitments by continuing to conduct complex licensing negotiations with all former implementers of the standards. Motorola's position that it can freely enjoin standard-implementers is impossible to reconcile with the RAND licensing commitment—especially where it is clear that the licensing offers it made far exceeded RAND—and must be rejected.

### C. Motorola's Carefully-Selected Citations And Timing Arguments Fail To Support Its Position.

Motorola cites instances in which some courts, or the ITC, have suggested that injunctions may still be available to SEP holders in certain circumstances (*see* Moto. Br. 9–12), but the evidentiary record in these cases bears no resemblance to this case and does not apply to Motorola's conduct here. In contrast, Motorola conspicuously omits reference to the FTC and European Commission statements condemning Motorola's pursuit of injunctions on standard-essential patents, including as against Microsoft. *See* Section I.B, *supra*.

In *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178, 2012 WL 5416941 (W.D. Wis. Oct. 29, 2012), in the context of denying an Apple motion in limine, Judge Crabb found that Apple had presented insufficient evidence of the intent and purpose of Motorola's RAND licensing commitments to the IEEE and ETSI (an SSO involved in cellular standards not at issue here), and, applying Wisconsin law, declined to infer that pursuit of injunctive relief was barred. *Id.* at *15. But Judge Crabb had not heard the overwhelming evidence presented to

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 8

1  this Court of the severe consequences of permitting injunctions on SEPs, nor did Judge Crabb

2  have the benefit of the full scope of evidence concerning the nature of the RAND licensing

3  commitment as was presented by the parties to this Court.  For example, because the ITU was

4  not at issue in that case, Judge Crabb never considered that SSO's clear statement that the "sole

5  objective" of its Patent Policy is to ensure that any patent essential to the H.264 standard "be

6  accessible to everybody without undue constraints" (FFCL ¶ 27)—pursuing injunctions against

7  standard implementers is irreconcilable with that policy.  Judge Crabb's motion in limine

8  ruling is not only inapplicable to this record, it is inconsistent with the *Realtek* summary

9  judgment ruling, where that court was squarely presented with the breach issue.

10       The only contingency Judge Posner included in his statement that standard-essential

11  patent holders could not obtain injunctions was the possibility that the standard implementer

12  refused to pay a RAND royalty.  *See* 869 F. Supp. 2d at 914.  But Motorola never came

13  remotely close to offering one, and has not asserted that Microsoft has refused to pay one.  And

14  Microsoft filed this action to enforce Motorola's RAND licensing commitments *before*

15  Motorola filed its lawsuits seeking injunctions on its standard-essential patents.  Motorola's

16  references to statements of the DOJ and the USPTO have no bearing for the same reasons—

17  Motorola has not claimed (and cannot claim) that Microsoft "is unable or refuses to take" a

18  RAND license.  Moto. Br. 11.  In fact, as the Court has recognized, Microsoft has committed

19  to do so; the Court has now set the royalty; but no license has been offered by Motorola.

20       For the same reason, the ITC decision to which Motorola points fails to support its

21  argument:  it involved an exclusion order to Samsung on standard-essential patents asserted

22  against Apple, but suggests only that the ITC is willing to issue exclusion orders against "an

23  unwilling licensee."  Moto. Br. 10.[3]  In fact, in Motorola's *own* ITC action, the ALJ found "no

---

[3] Motorola filed the public version of this opinion as "supplemental authority" after 5 PM on July 11, the day before Microsoft's opposition was due, but six days after the opinion became available.  It provides even less support than did Motorola's earlier characterization, as the decision apparently turned on redacted, confidential evidence (*see* Dkt. No. 738 at 56–62) and a notion of "reverse hold-up" (*id.* at 63) that is absent from this case.

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 9

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   evidence that any company would agree to the offer that Motorola sent to Microsoft" and that

2   "the evidence supports Microsoft's conclusion that Motorola was not interested in good faith

3   negotiations and in extending a RAND license to it." (Dkt. No. 309 Ex. 1 at 300–03.)

4   Motorola later withdrew assertion of all of its SEPs in the ITC, presumably because the Federal

5   Trade Commission required it to do so as part of the Google consent order (*see* Ex. 6 at

6   MOTM_WASH1823_0620220 ("The Proposed Consent Order further prohibits Google and

7   Motorola from continuing or enforcing existing claims for injunctive relief based on FRAND-

8   encumbered SEPs."), and because this Court had enjoined Motorola from seeking injunctions

9   against Microsoft, based on the circumstances of this case. (Dkt. No. 607, Nov. 29, 2012

10   Order at 18.) The Samsung-Apple ITC decision is irrelevant.

11         Motorola also attempts a confused timing argument: at the time Motorola filed its

12   suits, "the availability of injunctive relief for SEP infringement was an open issue," and it was

13   also "an open issue as to whether Microsoft had repudiated its rights under the purported

14   contracts." Moto. Br. 11. This argument fails. What matters is the proper legal interpretation

15   of the RAND licensing commitment, not whether Motorola subjectively understood that

16   interpretation, or when it came to that understanding. Accordingly, the timing of statements

17   made by other courts, administrative bodies, or by Microsoft is irrelevant—either they rest on a

18   proper understanding of the RAND licensing commitment and apply to Motorola's conduct, in

19   which case they inform the relevant inquiry—or they do not.[4]

20         The timing of the Court's summary judgment ruling rejecting Motorola's repudiation

21   argument, *see* Moto Br. 11–12, is also irrelevant. The Court's ruling correctly stated the law; it

22

23         [4] Microsoft's February 23, 2011 Amended Complaint alleged that Motorola breached its RAND licensing
      commitments by filing lawsuits seeking injunctions on SEPs. (Dkt. No. 53 ¶ 85.) Motorola's rehashing of
24    Microsoft's letter to the FTC in June 2011, *see* Moto. Br. 12, is completely irrelevant to the question of whether
      Motorola breached: Microsoft's June 2011 state of mind does not control the legal question of whether
25    Motorola's RAND licensing commitments bar it from seeking injunctions on SEPs. Moreover, Microsoft clearly
      did not "agree" that Motorola was free to seek injunctions—it had amended its complaint to allege that Motorola
      had breached its contractual commitments by doing so.

26

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 10

did not invent it.  The Court ruled that Microsoft did not repudiate its rights by filing this suit, which meant that Motorola filed its suits in the face of its enforceable RAND licensing commitments.  Motorola's repudiation argument was not a defense to breach of contract— Motorola's earlier hope that the argument might succeed cannot resurrect this dead defense.

**D.  The Record Clearly Establishes Attorney-Fee Damages Stemming From Motorola's Breaches.**

Motorola's claim that there is no "evidence that Motorola's seeking injunctive relief proximately caused the attorney-fee damages Microsoft seeks to recover," Moto. Br. 13, fails by logic and under the evidence.  Motorola filed a series of lawsuits, all seeking to enjoin Microsoft's standard-compliant products.  In direct response, Microsoft incurred fees defending itself from those suits.  Microsoft can recover for "foreseeable" losses that follow from a breach "in the ordinary course of events."  Washington Pattern Jury Instruction § 13-303.01 (Measure of Expectation Damages—Breach of Contract).  Motorola could not plausibly contend it was unforeseeable that (as a direct result of this breach) Microsoft would, "in the ordinary course of events," defend itself in these suits rather than simply allow Motorola to obtain the injunctions and other relief it sought.

Motorola instead nonsensically asserts that "Microsoft would have had to defend against Microsoft's patent infringement claims even if Motorola only sought monetary relief," Moto. Br. 13.  First of all, there is no monetary relief in the ITC:  the only remedies are exclusionary.  The majority of the attorneys' fees and costs Microsoft seeks to recover are from the ITC action.  (Dkt. No. 723 Ex. A (Menenberg Rpt.) at 7 & Ex. 5 (showing that less than one-third of the fees Microsoft seeks to recover come from the other actions).)  Additional fees were incurred in the 1823 action related to Microsoft's anti-suit injunction efforts, which were solely targeted at Motorola's enforcement of a German injunction.  (*Id.* at 19 & Ex. 5.)  Either category of damages immediately disposes of Motorola's argument that "Microsoft lacks evidence that it incurred attorney fees and litigation costs as a result of Motorola seeking

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 11

1    injunctive relief." Moto. Br. 13. Further, Microsoft's fees incurred developing

2    noninfringement and invalidity defenses are also recoverable on the same theory, as they

3    would have been complete bars to such injunctions. There was no significant isolated work on

4    damages in the transferred and consolidated patent case involving H.264 patents. (*See* Dkt.

5    Nos. 167, 360.) Finally, if Motorola had only sought monetary relief to which it is entitled—a

6    RAND royalty—it would have obtained that relief in this case. None of the lawsuits in the

7    ITC, U.S. district courts, or Germany would have been necessary at all. It is only because

8    Motorola sought *more* than a RAND royalty that it proceeded with those actions, and sought

9    the leverage of injunctions.

10           Finally, Motorola complains that Microsoft's expert did not provide separate

11   calculations for damages incurred solely as a result of Motorola's assertion of H.264 SEPs, as

12   distinct from damages incurred solely as a result of Motorola's assertion of 802.11 SEPs. *See*

13   Moto. Br. at 13. The argument is based on a mistaken premise, because certain damages—fees

14   incurred defending Motorola's German action, and fees connected with the anti-suit injunction

15   in this Court—are exclusively associated with Motorola's assertion of H.264 standard-essential

16   patents, and Microsoft's expert calculated separate totals for those matters. (*See* Dkt. No. 723

17   Ex. A (Menenberg Rpt.) at 19 & Ex. 5.) Further, while the overall fees associated with the ITC

18   action stem from Motorola's assertion of both 802.11 and H.264 patents, segregation of those

19   would be relevant only if the jury found a breach as to only a single standard—and Microsoft's

20   fact witness associated with the fees incurred, David Killough, is fully capable of classifying

21   individual time entries as being associated with Motorola's assertion of the 802.11 or H.264

22   patents in the ITC, based on information provided such as identity of the attorney and

23   description of the work performed. *See* Declaration of David Killough. Motorola's position

24   reduces to a baseless attempt to preclude Microsoft from proving, through fact testimony, any

25   factual conclusions that an expert did not opine on, should it prove necessary to do so.

26

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 12

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    At most, Motorola's argument suggests that the jury may have a more complicated task

2  in calculating a damages award if it finds that Motorola breached its RAND licensing

3  commitments to IEEE, but not to the ITU—despite Motorola's having sought injunctions on

4  patents essential to both standards, and Motorola's October 2010 demands as to H.264

5  exceeding the RAND royalty by an even wider margin than did its 802.11 demands.  The

6  remote possibility of a mildly challenging task for the jury cannot provide a basis for granting

7  Motorola summary judgment.  *See Long v. T-H Trucking Co.*, 486 P.2d 300, 303 (Wash. App.

8  1971) ("[W]here the amount of damage is not susceptible of exact apportionment between the

9  defendant's fault and other factors contributing to the loss, absolute certainty is not required.")

10  **II.    THE *NOERR-PENNINGTON* DOCTRINE DOES NOT IMMUNIZE**
    **MOTOROLA FROM BREACH OF CONTRACT LIABILITY.**

11

12    The *Noerr-Pennington* doctrine does not immunize Motorola from breach of contract

13  liability for filing infringement suits on its SEPs and seeking injunctions.  Judge Crabb

    properly rejected that argument with respect to Apple's breach of contract claim against

14  Motorola, premised in part on the RAND licensing commitments to the IEEE at issue here:

15

16    > Motorola has cited no authority for the proposition that the *Noerr-Pennington*
    > doctrine should apply to Apple's breach of contract claims . . . and *I conclude*
17    > *that applying immunity to Motorola from Apple's breach of contract claims is*
    > *not appropriate*.  Although the First Amendment protects Motorola's right to
18    > petition the courts to enforce its patents, Apple's breach of contract claims are
    > based on the theory that Motorola agreed by contract that it would not enforce
19    > its patent rights until it offered a license to Apple on fair, reasonable and
    > nondiscriminatory terms.  In other words, *Apple contends that Motorola waived*
20    > *some of its petitioning rights through contract.  It would be improper to use the*
    > Noerr-Pennington *doctrine to bar Apple from enforcing that contract.*

21

22  *Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061, 1078 (W.D. Wis. 2012)

23  (emphasis added).  Motorola's brief quotes the earlier portion of Judge Crabb's opinion—

    finding that *Noerr-Pennington* barred Apple's *antitrust* claims—but misleadingly suggests that
24  language applies to breach of contract claims, and omits her actual ruling on that issue.  *See*

25  Moto. Br. 21.  Judge Crabb held that Apple's breach of contract claims were not barred by

26

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 13

1   *Noerr-Pennington*, in response the same argument Motorola advances here.  *Compare* Ex. 8

2   (Moto. W.D. Wis. Br.) at MOTM-WASH1823_0492477–80, –97 *with* Moto. Br. 18–21, 26.

3        As Judge Crabb noted, Motorola provided no authority for its claim that the *Noerr-*

4   *Pennington* doctrine applies to breach of contract claims in its Western District of Wisconsin

5   brief, and it fails to do so here as well.  *See* Moto. Br. 18–21.  To the contrary, as numerous

6   courts have recognized, *Noerr-Pennington* does not apply, for the unremarkable reason that

7   parties may waive or limit their petitioning rights by contract.  *See Apple*, 886 F. Supp. 2d at

8   1078; *Powertech Tech., Inc. v. Tessera, Inc.*, 872 F. Supp. 2d 924, 932 (N.D. Cal. 2012) ("[T]o

9   the extent that Tessera has waived [petitioning] rights through contract, the *Noerr–Pennington*

10  doctrine does not shield Tessera from liability for failing to comply with that contract.").  *See*

11  *also ClearPlay, Inc. v. Nissim Corp.*, No. 07-81170-CIV, 2011 WL 6724156, at *10 (S.D. Fla.

12  Dec. 21, 2011) (patent holder would not be shielded by *Noerr-Pennington* "to the extent [it]

13  waived its patent rights within a contract and then sought to exercise such rights in breach of

14  such contract."); *Spear Pharms., Inc. v. William Blair & Co., LLC*, 610 F. Supp. 2d 278, 288

15  (D. Del. 2009) (rejecting *Noerr-Pennington* defense where defendant had breached an NDA by

16  disclosing information to a government agency, because defendant was not "relieved from

17  liability for these claims merely because they then used a petition to a government agency as

18  the mechanism for allegedly harming Plaintiffs."); *Bores v. Domino's Pizza LLC*, No. 05-2498,

19  2008 WL 4755834, at *4 (D. Minn. Oct. 27, 2008) (rejecting argument that *Noerr-Pennington*

20  barred enforcement of an attorneys' fees provision in a contract as that penalty "would not

21  implicate Plaintiffs' First Amendment rights because they contractually agreed to pay such a

22  penalty in the event of litigation.  In other words, Plaintiffs bargained away any protection

23  Noerr–Pennington may have offered them").  *Cf. In re Innovatio IP Ventures, LLC Patent Lit.*,

24  No. 11 C 9308, 2013 WL 427167, at *16 & n. 17 (N.D. Ill. Feb. 4, 2013) (finding RICO claims

25  against SEP holder barred by *Noerr-Pennington*, but denying motion to dismiss RAND breach

26

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   of contract claims and noting, with citation to Judge Crabb's ruling, that the parties did not

2   dispute that *Noerr-Pennington* was inapplicable to breach of contract claims).

3            Even if *Noerr-Pennington* applied (and it does not), Motorola fails to show that no

4   material dispute exists as to whether its conduct could be subject to the "sham litigation"

5   exception because its patent infringement lawsuits were "objectively baseless."  *See* Moto. Br.

6   21.  Motorola itself recognized that a patentee who sues on RAND-committed SEPs has

7   asserted an objectively baseless claim falling within the sham litigation exception.  In its

8   pending case against SEP holder Innovatio, Motorola Solutions (a defendant here) contended

9   that Innovatio's conduct in threatening and suing WiFi providers on standard-essential patents

10  fell under the sham litigation exception to *Noerr-Pennington*.  Motorola Solutions argued that

11  Innovatio's excessive licensing demands were "objectively baseless because they directly

12  conflict with Innovatio's RAND commitments."  Ex. 9 (Motorola Solutions Opp. to Innovatio

13  Mot. to Dismiss) at 15.  Motorola should not be heard to urge the opposite result here.

14           The timing of Motorola's suits further suggests they were objectively baseless because

15  they were not "reasonably calculated to elicit a favorable outcome," *Prof'l Real Estate*

16  *Investors, Inc. v. Columbia Pictures Industries, Inc*., 508 U.S. 49, 50, 60 (1993), because this

17  action, seeking to enforce Motorola's RAND licensing commitment, had already been filed.

18  At most, Motorola could recover an apportioned RAND royalty as damages for the patents it

19  asserted in those actions.  Motorola's only hope for a "favorable" outcome for those suits

20  would be that they proceeded faster than Microsoft's action here, so that Motorola could use

21  the leverage of injunctions to hold up Microsoft.  That type of use of "governmental process—

22  as opposed to the *outcome* of that process" is not protected by *Noerr-Pennington*.  *Prof'l Real*

23  *Estate Investors*, 508 U.S. at 60–61.[5]

24  _____

25       [5] Abuse of process is not only unprotected by *Noerr-Pennington*, but gives rise to independent liability:  "One who uses a legal process. . . against another to accomplish a purpose for which it is not designed is liable to the other for the pecuniary loss caused thereby," even if "there was probable cause for issuance of the process" and

26  regardless of how the process terminates.  *Fite v. Lee*, 521 P.2d 964, 968 (Wash. App. 1974), quoting Restatement

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Finally, Motorola's *Noerr-Pennington* argument independently fails because it conflates causation (a damages issue) with liability.  Multiple instances of Motorola's conduct, including the October 2010 letters as well as its later filing of infringement suits on its SEPs, breached Motorola's RAND licensing commitments.  Even if Motorola were immune from liability for filing those suits (and it is not), that would not mean that the expenses Microsoft incurred defending those actions, or Microsoft's relocation costs in Germany, cannot be recovered as consequential damages for Motorola's *other* breaching conduct.  Microsoft has always been entitled to a license on RAND terms from Motorola, but Motorola has refused to provide one.  Had such a license been in place, it would have put Motorola's SEP suits to an immediate end, and Microsoft would not have incurred further damages.  Authority Motorola cites elsewhere in its brief confirms that where breaching conduct exposes a plaintiff to other litigation, the fees and costs incurred in that litigation can be recovered as damages—and there is no suggestion that the *Noerr-Pennington* doctrine counsels otherwise.  *See* Moto. Br. 23.

## III.   MOTOROLA'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DAMAGES SHOULD BE DENIED.

Microsoft is entitled to recover damages for Motorola's breaches of contract, which include any "loss, including incidental or consequential loss, caused by the breach." Restatement (Second) of Contracts § 347 (1981); *see also Eastlake Const. Co., Inc. v. Hess*, 686 P.2d 465, 470 (Wash. 1984) ("[T]he injured party is entitled (1) to recovery of all damages that accrue naturally from the breach, and (2) to be put into as good a pecuniary position as he would have had if the contract had been performed.").  Microsoft's recoverable consequential damages include injuries Motorola "had reason to foresee as a probable result of [its] breach when the contract was made." *Dally v. Isaacson*, 245 P.2d 200, 203 (Wash. 1952).  Such injuries include the fees Microsoft incurred in defending against Motorola's attempts to

---

of Torts § 682.  Damages for such misuse of civil process include "reasonable attorney fees and other expenses incurred in defending" against it.  2 Dan B. Dobbs, *Torts* § 440, at 1242 (2001).

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 16

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   enforce its SEPs and obtain injunctions.  Motorola's arguments to the contrary (*see* Moto. Br.

2   21–24) should be rejected, and its request for summary judgment on this issue denied.

3         **A.  Attorneys' Fees Can Be Awarded as Consequential Damages.**

4         Motorola argues it should be immunized from damages claims because it harmed

5   Microsoft by filing lawsuits, and it should be free to impose such harms without facing any

6   consequences.  Motorola errs in relying on the "American rule" (*see* Moto. Br. 22), under

7   which attorneys' fees incurred in an action are generally not awarded as costs or damages to a

8   prevailing party *in that same action* in the absence of a contract, statute or equitable exception.

9   *See City of Seattle v. McCready*, 931 P.2d 156, 160 (Wash. 1997).  The American rule and its

10  exceptions are largely irrelevant to this case, because the bulk of the attorneys' fees sought are

11  not fees incurred *in this action*, but in defense of Motorola's lawsuits and pursuit of injunctions

12  in the ITC, Germany, and in the district court patent actions.  Microsoft's fees incurred in

13  defending those actions are simply consequential damages, foreseeable and flowing directly

14  from Motorola's breach of its RAND licensing obligations.  Had Motorola offered and granted

15  the RAND license it was obligated to provide, the lawsuits would have evaporated.

16        Awards of attorneys' fees as damages "are based on a determination [that] a wrongful

17  act may leave another party with no choice but to litigate."  *McCready*, 931 P.2d at 162

18  (citation omitted).  Cases involving breaches of the duty of good faith and fair dealing are

19  appropriate for the award of attorneys' fees as damages.  For example, in *Riveredge Associates

20  v. Metro. Life Ins. Co.*, 774 F. Supp. 897 (D.N.J. 1991), the plaintiff alleged a breach of the

21  duty of good faith and fair dealing, and the court held that "attorneys fees are a proper element

22  of damages when the right violated is the right to be free from suit," analogizing to "contract

23  actions in which a covenant not to sue has been agreed to," but noting that "[a]n implied right

24  to be free from suit therefore stands on the same legal footing as a similar express right

25  contained in a covenant not to sue."  744 F. Supp. at 901–02.  *See also Cohn v. Taco Bell*

26

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 17

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

*Corp.*, No. 92 C 5852, 1995 WL 247996, *9 (N.D. Ill. April 24, 1995) (California law) (the duty of good faith and fair dealing described in Restatement § 205 "may entitle Defendant to attorneys' fees and costs expended in defending [a claim] assuming Defendant can prove that Plaintiffs brought [it] even though they knew the relief they sought was contrary to the terms of the franchise agreements.").

The American rule is a default fee-shifting rule, not a license to file lawsuits in violation of contractual obligations.  Motorola's motion directed to Microsoft's claim for attorneys' fees and litigation costs can be denied on this basis alone.[6]

### B.  Even If The American Rule Controlled, Its Equitable Exceptions Support Microsoft's Claim For Damages.

Washington law recognizes that in spite of the default American rule, even fees *in the same action* can be awarded as damages when fees are incurred as a direct consequence of the defendant's wrongful conduct.  First, Washington recognizes an equitable exception providing for an award of fees incurred in successfully dissolving a wrongfully issued injunction.  *See Ino Ino, Inc. v. City of Bellevue*, 937 P.2d 154, 176 (Wash. 1997) (explaining that the purpose of this exception is to deter "seeking relief prior to a trial on the merits").  That purpose applies equally here, where Motorola sought the leverage of an injunction in Germany, prior to a trial on the merits here that would determine a RAND royalty.  Accordingly, Microsoft's fees in defending the German action (as well as its fees in this case for obtaining the anti-suit injunction) are appropriate consequential damages flowing from Motorola's conduct:  "[A] reasonable attorney's fee reasonably incurred in procuring the dissolution of an injunction wrongfully issued represents damages suffered from the injunction."  *Cecil v. Dominy*, 418

---

[6] Holding Motorola responsible for the harms it intentionally imposed would hardly "vitiate the American rule," Moto. Br. 24, and the case Motorola quotes from does not suggest otherwise—the Seventh Circuit simply noted that where a prevailing breach of contract plaintiff claimed attorneys' fees were "part of his contract damages" but "never attempt[ed] to reconcile that position with Massachusetts law" (which, as elsewhere, does not generally award prevailing breach of contract plaintiffs attorneys' fees, with certain exceptions), he could not be awarded fees as damages.  *Dr. Franklin Perkins Sch. v. Freeman*, 741 F.2d 1503, 1520 (7th Cir. 1984).

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 18

P.2d 233, 234 (Wash. 1966).  Motorola's objection that it was pursuing an injunction against Microsoft in Germany, not in this action, Moto. Br. 23–24, is a *non sequitur*.  Clearly, if Motorola had sought a preliminary injunction in the consolidated 343 patent case, and Microsoft prevailed on an affirmative defense and counterclaim that Motorola's entire course of conduct breached its RAND commitments, this equitable exception would allow Microsoft to recover its fees in the 343 patent case.  That Motorola instead sought an end-run around this Court by pursuing the injunction in a different forum is immaterial—Microsoft still incurred damages both here and in Germany resisting an injunction Motorola had no right to seek and enforce given its RAND licensing commitments.[7]

It is also irrelevant that Microsoft obtained an anti-suit injunction here, rather than attempting to dissolve Motorola's injunction in Germany.  *See* Moto. Br. 24.  Contrary to Motorola's suggestion, a defendant *can* recover fees under this exception for resisting the wrongful enforcement of an already-issued injunction in a later, separate action.  *See All Star Gas, Inc. v. Bechard*, 998 P.2d 367, 371 (Wash. App. 2000) (where a party "attack[ed] the merits of [an earlier-issued] injunction as it applied to him" in a separate, later action, he was "entitled to his attorney fees associated with defending himself on this claim").  Under *All Star Gas*, the award of fees depended on defeating application of the injunction (as Microsoft did here), not on dissolving it or showing that it was wrongfully issued.  *Id.*

Second, courts routinely award attorneys' fees for defending a lawsuit initiated in violation of a covenant not to sue.  *See, e.g., Anchor Motor Freight, Inc. v. Int't Broth. of Teamsters, Local Union No. 377*, 700 F.2d 1067, 1072 (6th Cir. 1983) (reversing and remanding for awarding attorney fees "used as a measure of the actual damages . . . incurred in defending against the lawsuit . . . instituted purportedly in violation of a covenant not to sue");

---

[7] The "sole purpose" language Motorola cites in its brief (*see* Moto. Br. 24) is also misleading:  "If dissolving the injunction is not the sole purpose of the trial, then attorney fees are available only for services performed in dissolving the temporary injunction."  *McCready*, 931 P.2d at 162.  The only fees Microsoft seeks to recover fees *from this case* are those associated with preventing Motorola from enforcing its German injunction.

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

*Divine Tower Int'l Corp. v. Kegler, Brown, Hill & Ritter Co., L.P.A.*, Nos. 2:04-CV-494, -584, 2008 WL 4405037, *3 (S.D. Ohio Sept. 24, 2008) ("[W]here there is a breach of a covenant not to sue, an available remedy is actual damages, which are measured by the attorney fees and costs incurred in defending the lawsuit.") (citations omitted); *Gregoire v. Lucent*, No. 6:03 CV 251 ORL 31 KRS, 2005 WL 1863429, *4 (M.D. Fla. Aug. 5, 2005) (denial of summary judgment seeking dismissal of claim for fees for breach of covenant not to sue); *Kelleigh v. Algonquin Gas Transmission Co.*, No. 946458, 1996 WL 1186836, *7 (Mass. Super. Nov. 6, 1996) (allowing claim "for actual damages (legal fees and costs associated with defending [the] lawsuit)" caused by "breach of the covenants not to sue"), citing *Anchor Motor Freight*; *Widener v. Arco*, 717 F. Supp. 1211, 1217 (N.D. Tex. 1989) (in breach of release case, holding that "Defendants' damages for Plaintiffs' breach of contract is the amount of costs and attorneys' fees expended by Defendant in defending this lawsuit").  Because Microsoft alleges that Motorola breached its contractual commitments by filing its ITC, district court, and German patent infringement actions, this recognized equitable exception for breaches of covenants not to sue fully supports Microsoft recovering its fees and costs as damages.

Third, procedural bad faith provides an additional ground for an award of fees under Washington law, including "vexatious conduct during litigation" that "is unrelated to the merits of the case." *Forbes v. Am. Bldg. Maint. Co. W.*, 198 P.3d 1042, 1057 (Wash. App. 2009).  *See also Rogerson Hiller Corp. v. Port of Port Angeles*, 982 P.2d 131, 135 (Wash. App. 1999) (the purpose of awarding such fees is "to protect the efficient and orderly administration of the legal process").  The vexatious purpose of Motorola's German suits— intended as an end-run around this Court's jurisdiction that would avoid a RAND determination here (*see* Dkt. No. 318, May 14, 2012 Preliminary Injunction Order at 18–19)— also supports Microsoft's recovery of attorneys' fees as damages.[8]

---

[8] Motorola's brief also discusses the "equitable indemnity" rule, Moto. Br. 23, which "allow[s] expenses of litigation to be recovered as consequential damages" where a defendant's breach of contract exposes the plaintiff

**IV.   THE COURT HAS ALREADY HELD THAT MOTOROLA'S TREATMENT OF MARVELL AND ITS FAILURE TO GRANT BACK A LICENSE UNDER THE MPEG LA AGREEMENT WILL BE PART OF THE TRIAL.**

Motorola has already attempted once to preclude Microsoft from introducing evidence related to Motorola's treatment of Marvell and its failure to grant back a license to Microsoft pursuant to the Google-MPEG LA agreement.  (*See* Dkt. No. 682.)  At a telephonic hearing on May 7, 2013, Microsoft explained that neither instance of conduct was the basis of a separate damages claim, but rather part of the entire course of conduct relevant to Microsoft's breach theories.  *See* Ex. 10, May 7 Hearing Tr. 10:18–25, 12:3–11.  Accordingly, the Court ruled that both the Marvell and MPEG LA arguments would be permitted at trial:

> I am going to permit that as an argument in support of the identical damages that would have been presented anyway.  It seems to me that both of those subjects were brought up and discussed as part of the underlying trial on RAND rates, and therefore the parties should not need to do any additional discovery.  And since you're not asking for any additional damages, I'm not sure that there is any prejudice in this matter.

Ex. 9, May 7 Hearing Tr. 12:14–21.  As the evidence at the RAND royalty trial showed, Microsoft had a right to a RAND license to Motorola's 802.11 patents, and when it could not get one on RAND terms directly from Motorola, Microsoft sought to do so indirectly through Marvell.  Ex. 11, Ochs Testimony 64–65.  Marvell made that request of Motorola in July 2011, and was rebuffed with an intentionally discriminatory and blatantly unreasonable offer that November.  *Id.* at 66–68.  Marvell's request of Motorola for a license on RAND terms was not an unrelated event, disconnected from Microsoft's efforts to obtain a license on RAND terms: Marvell's overture to Motorola was made at Microsoft's request and for Microsoft's benefit.

---

to litigation with a third party.  *Manning v. Loidhamer*, 538 P.2d 136, 139 (Wash. 1975).  *See Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*, 162 P.3d 1153, 1162 (Wash. 2007) ("When the natural and proximate consequences of a wrongful act by defendant involve plaintiff in litigation with others, there may, as a general rule, be a recovery of damages for the reasonable expenses incurred in the litigation, including compensation for attorneys' fees.").  "Equitable indemnity" is not actually an "exception" to the American rule, because it involves recovery in one action of fees incurred in some other action.  In any event, Motorola's breaches did not merely "expose" Microsoft to litigation, such that it would be equitable to require Motorola to indemnify Microsoft— Motorola improperly sued Microsoft while denying the license on RAND terms it was obligated to provide. Motorola's conduct has gone far beyond the circumstances contemplated in the "equitable indemnity" cases.

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 21

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Motorola's refusal to extend a RAND license to Marvell blocked the remaining avenue open to Microsoft to protect its standard-compliant products from Motorola's course of hold up.

Further, *any* Motorola conduct forming part of its efforts to hold up Microsoft as to either standard constitutes a breach of the duty of good faith and fair dealing, because that conduct frustrates the purposes of the RAND commitment.  Motorola's October 2010 letters, demanding royalties on terms Microsoft could never accept, were shams intended to tee up lawsuits as part of that hold up process, as were Motorola's district court, ITC, and German lawsuit  seeking injunctions against Microsoft's products.  (*See* Dkt. No. 729 at 19–21.)  Any other Motorola conduct intended to maintain that improper hold up leverage also constitutes a breach of the duty of good faith and fair dealing, including Motorola's treatment of Marvell, and its refusal to recognize the grant-back obligations under the Google-MPEG LA license.

Specifically, Motorola's conduct in extending blatantly discriminatory and unreasonable terms to Marvell breached Motorola's duty of good faith and fair dealing, because by refusing Marvell a RAND license, Motorola preserved its ability to hold up Microsoft with 802.11 SEPs, in frustration of the purposes of the RAND licensing commitment.  Likewise, Motorola's refusal to acknowledge the grant back obligations stemming from its acquisition by Google and the Google-MPEG LA licenses preserved Motorola's efforts to hold up Microsoft with H.264 standard-essential patents, and evade its obligations to the ITU.  In both instances, Motorola's conduct was part of its hold up strategy constituting a repeated and ongoing breach of its duty of good faith and fair dealing as to Microsoft.  Motorola denied Microsoft every opportunity to obtain a license on RAND terms, holding out hope that it would be able to obtain the injunctive leverage it sought.  The Court has already ruled that both Marvell and MPEG LA can be part of Microsoft's breach case, and Motorola's renewed attempt to carve these issues out of the trial should be rejected.

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 22

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    Motorola's proximate causation arguments (*see* Moto. Br. 14, 18) related to the timing

2    of its Marvell and MPEG LA conduct are also irrelevant in light of the Court's ruling, but they

3    independently lack merit.  Given that Microsoft's attorney-fee damages are based on dated

4    invoices associated with particular work done by its attorneys opposing Motorola's

5    enforcement of its 802.11 and H.264 patents, Microsoft has evidence showing fees incurred

6    after the relevant dates.  Specifically, if Motorola had offered Marvell RAND terms for a

7    license that would cover Marvell's customers in June 2011,Motorola's 802.11 claims against

8    Microsoft would have been exhausted, and fees associated with defending those claims dated

9    after that point would not have been incurred.[9]  Similarly, if Motorola (and its parent Google)

10   had honored the grant back obligations under the Google-MPEG LA agreement beginning in

11   May 2012, Microsoft would have been licensed at that point, and fees associated with

12   defending Motorola's H.264 claims after that date would not have been incurred.[10]

13   Motorola's remaining complaints about these theories provide no additional basis for

14   any summary judgment ruling.  Contrary to Motorola's claim, *see* Moto. Br. 15, there is

15   substantial evidence that Motorola breached a duty to Marvell—in response to Marvell's

16   request for a license on RAND terms that would protect Marvell's downstream customers,

17   Motorola made a licensing demand that was not only wildly unreasonable in light of the

18   Court's RAND determination (*compare* Ex. 11, Ochs Testimony 67–68 *with* FFCL ¶ 621), but

19   Motorola explicitly discriminated against Marvell by excluding two of Marvell's largest

20   customers.  Ex. 11, Ochs Testimony at 67.  Motorola's claim that this discriminatory conduct

21   is excused by an industry practice (*see* Moto. Br. 15) presents a fact issue, at a minimum—

22   especially where Motorola identifies no clause of its RAND commitments or the SSO policies

23   that endorse an SEP holder denying an implementer a RAND license because that

[9] Motorola asserted 802.11 patents in the ITC until October 24, 2012.  *See* Ex. 12, Mot. to Terminate.

[10] Nearly all of the fees incurred in the Ninth Circuit appeal (relevant to the continued assertion of Motorola's H.264 patents in Germany) came after the Google acquisition.

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

implementer's *customers* have disputes with the SEP holder.  To the contrary, Motorola's RAND licensing commitments require that it grant RAND licenses to anyone and everyone.

Finally, Motorola makes the unsupported claim that "[n]othing in the factual record establishes that Motorola is a covered Affiliate under the MPEG LA agreement," in support of an argument that Google has no grant back obligations as to Motorola's patents.  Moto. Br. 16. That legal question has been fully briefed (*see* Dkt. Nos. 614, 615, 640, 642, 657, 658), and can be decided by the Court before the trial, unless the Court finds that fact issues relevant to interpretation remain to be addressed by the jury.  Google's August 2012 license offer, made months after the grant back obligation arose, *see* Moto. Br. 16–17, cannot excuse Motorola's earlier refusal to honor its licensing obligations.[11]  Motorola concedes the existence of factual disputes regarding the adequacy of Google's offer, *see* Moto. Br. 17 ("That the parties did not enter into a license . . . does not mean that Motorola breached its obligations to the ITU"), and indeed the offer was inadequate at least because Google insisted on a right to pursue past damages for Microsoft's alleged use of the H.264 patents prior to the Google acquisition at rates higher than permitted under the Google-MPEG LA agreement.  *See* Dkt. No. 617 Ex. C at 2; Trial Ex. 103 (Google-MPEG LA Agreement) at § 6.3.

## CONCLUSION

For the foregoing reasons, Motorola's motion should be denied in its entirety.

DATED this 12th day of July, 2013.

CALFO HARRIGAN LEYH & EAKES LLP

By ____s/Arthur W. Harrigan, Jr._____
　　　Arthur W. Harrigan, Jr., WSBA #1751

By ____s/Christopher Wion_____
　　　Christopher Wion, WSBA #33207

---

[11] It is unclear why Motorola believes it appropriate to cite Google's offer letter as evidence, given that the letter states: "Neither party shall use this offer for any purpose in any litigation, case or administrative proceeding."  (Dkt. No. 617 Ex. C at 2.)

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

By     s/Shane P. Cramer
2                  Shane P. Cramer, WSBA #35099
                 999 Third Avenue, Suite 4400
3                  Seattle, WA  98104
                 Phone:  206-623-1700
4                  arthurh@calfoharrigan.com
                 chrisw@calfoharrigan.com
5                  shanec@calfoharrigan.com

6

By     s/T. Andrew Culbert
                 T. Andrew Culbert
7

By     s/David E. Killough
8                  David E. Killough

9                  MICROSOFT CORPORATION
                 1 Microsoft Way
10                  Redmond, WA  98052
                 Phone:  425-882-8080
11                  Fax:  425-869-1327

12                  David T. Pritikin
                 Richard A. Cederoth
13                  Constantine L. Trela, Jr.
                 William H. Baumgartner, Jr.
14                  Ellen S. Robbins
                 Douglas I. Lewis
15                  David C. Giardina
                 John W. McBride
16                  Nathaniel C. Love

17                  SIDLEY AUSTIN LLP
                 One South Dearborn
18                  Chicago, IL  60603
                 Phone:  312-853-7000
19                  Fax:  312-853-7036

20                  Carter G. Phillips
21                  Brian R. Nester

22                  SIDLEY AUSTIN LLP
                 1501 K Street NW
23                  Washington, DC  20005
                 Telephone:  202-736-8000
24                  Fax:  202-736-8711

25                  Counsel for Microsoft Corp.

26

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 25

**CERTIFICATE OF SERVICE**

I, Florine Fujita, swear under penalty of perjury under the laws of the State of Washington to the following:

1.  I am over the age of 21 and not a party to this action.

2.  On the 12th day of July, 2013, I caused the preceding document to be served on counsel of record in the following manner:

**Attorneys for Motorola Solutions, Inc., and Motorola Mobility, Inc.:**

| | |
|---|---|
| Ralph Palumbo, WSBA #04751 | |
| Philip S. McCune, WSBA #21081 | _____ Messenger |
| Lynn M. Engel, WSBA #21934 | _____ US Mail |
| Summit Law Group | _____ Facsimile |
| 315 Fifth Ave. South, Suite 1000 | __X__ ECF |
| Seattle, WA  98104-2682 | |
| Telephone:  206-676-7000 | |
| Email:  Summit1823@summitlaw.com | |

| | |
|---|---|
| Steven Pepe (*pro hac vice*) | _____ Messenger |
| Jesse J. Jenner (*pro hac vice*) | _____ US Mail |
| Ropes & Gray LLP | _____ Facsimile |
| 1211 Avenue of the Americas | __X__ ECF |
| New York, NY  10036-8704 | |
| Telephone:  (212) 596-9046 | |
| Email:  steven.pepe@ropesgray.com | |
| Email:  jesse.jenner@ropesgray.com | |

| | |
|---|---|
| Norman H. Beamer (*pro hac vice*) | _____ Messenger |
| Ropes & Gray LLP | _____ US Mail |
| 1900 University Avenue, 6th Floor | _____ Facsimile |
| East Palo Alto, CA  94303-2284 | __X__ ECF |
| Telephone:  (650) 617-4030 | |
| Email:  norman.beamer@ropesgray.com | |

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 26

Paul M. Schoenhard (*pro hac vice*)
Ropes & Gray LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC  20005-3948
Telephone:  (202) 508-4693
Email: Paul.schoenhard@ropesgray.com

_____ Messenger
_____ US Mail
_____ Facsimile
\_\_X\_\_ ECF

Andrea Pallios Roberts (*pro hac vice*)
Brian C. Cannon (*pro hac vice*)
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone:  (650) 801-5000
Email: andreaproberts@quinnemanuel.com
Email: briancannon@quinnemanuel.com

_____ Messenger
_____ US Mail
_____ Facsimile
\_\_X\_\_ ECF

Kathleen M. Sullivan (*pro hac vice*)
David Elihu (*pro hac vice*)
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000
Email: kathleensullivan@quinnemanuel.com

_____ Messenger
_____ US Mail
_____ Facsimile
\_\_X\_\_ ECF

William Price (*pro hac vice*)
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figuera St., 10th Floor
Los Angeles, CA 90017
Telephone:  (212) 443-3000
Email: williamprice@quinnemanuel.com
MicrosoftvMotoBreachofRANDCase@quinnemanuel.com

_____ Messenger
_____ US Mail
_____ Facsimile
\_\_X\_\_ ECF

DATED this 12th day of July, 2013.

s/  Florine Fujita
FLORINE FUJITA

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 27

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717