# EXHIBIT 8

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| APPLE INC. | ) | |
| | ) | |
| Plaintiffs and Counterclaim Defendants, | ) ) | Case No. 1:11-cv-178 (BBC) |
| | ) ) | |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| MOTOROLA MOBILITY, INC. | ) ) | |
| | ) | |
| Defendants and Counterclaim Plaintiffs. | ) | |


## MEMORANDUM IN SUPPORT OF MOTOROLA'S <u>MOTION FOR SUMMARY JUDGMENT</u>

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492464

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

<u>**TABLE OF CONTENTS**</u>

<u>**Page**</u>

PRELIMINARY STATEMENT ...................................................................................1

STANDARD OF REVIEW ........................................................................................2

FACTUAL AND PROCEDURAL BACKGROUND.................................................2

     A.    Motorola's Contributions to Standard Setting Organizations and FRAND
          Licensing History .........................................................................................3

     B.    Apple's Entry into the Cell Phone Business...............................................4

     C.    Motorola's Licensing Negotiations with Apple ........................................4

     D.    Procedural History ......................................................................................5

ARGUMENT ..............................................................................................................8

I.    MOTOROLA IS ENTITLED TO SUMMARY JUDGMENT ON ALL OF
     APPLE'S CLAIMS UNDER THE *NOERR PENNINGTON* DOCTRINE
     BECAUSE APPLE'S CLAIMS ARE PREDICATED ON MOTOROLA'S
     PATENT LITIGATION .....................................................................................8

     A.    Legal Principles Relating to the *Noerr-Pennington* Doctrine.................9

     B.    Motorola's Patent Infringement Litigation Is Protected Activity Immune
          from Liability Under *Noerr-Pennington*...................................................10

     C.    Motorola Is Also Immune from California Civil Code § 17200 Liability
          Under the California Litigation Privilege .................................................11

II.   APPLE IS PRECLUDED FROM ASSERTING ITS FRAND-BASED CLAIMS
     IN THIS ACTION UNDER THE DOCTRINE OF *RES JUDICATA* ...............12

     A.    Legal Principles Relating to *Res Judicata* and Defendant Preclusion...................14

     B.    *Res Judicata* Bars Apple from Re-Litigating Its Claims in This Court.................17

III.  MOTOROLA IS ENTITLED TO SUMMARY JUDGMENT THAT APPLE IS
     NOT ENTITLED TO DAMAGES ON ANY CLAIM......................................17

     A.    Apple Cannot Recover Litigation Expenses as Damages for "Breach of
          Contract".....................................................................................................18

     B.    Apple Has Not Established Any Other Damages .....................................19

i

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492465

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

IV.  MOTOROLA IS ENTITLED TO SUMMARY JUDGMENT ON APPLE'S
     SHERMAN ACT § 2 CLAIM WITH REGARDS TO MOTOROLA'S FAILURE
     TO DISCLOSE TO ETSI, BECAUSE THE STATUTE OF LIMITATIONS HAS
     RUN. ........................................................................................................................20

V.   MOTOROLA IS ENTITLED TO SUMMARY JUDGMENT ON APPLE'S CAL.
     BUS. & PROF. CODE § 17200 CLAIM BECAUSE APPLE'S CLAIM
     MIRRORS ITS ANTITRUST AND INTERFERENCE WITH CONTRACT
     CLAIMS AND BECAUSE APPLE HAS FAILED TO PROVE IT HAS
     SUFFERED ECONOMIC INJURY. ...........................................................................22

ii

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492466

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Apple v. Samsung,*
    No. 5:11-cv-01846 (N.D. Cal. Oct. 18, 2011) .................................................................23

*Aunyx Corp. v. Canon U.S.A., Inc.,*
    978 F.2d 3 (1st Cir. 1992)............................................................................................16

*BE & K Constr. Co. v. NLRB,*
    536 U.S. 516 (2002).....................................................................................................9

*Balt. Luggage Co. v. Samsonite Corp.,*
    727 F. Supp. 202 (D. Md. 1989)..................................................................................16

*Belden Corp. v. InterNorth, Inc.,*
    413 N.E.2d 98 (Ill. Ct. App. 1980) .............................................................................25

*Bill Johnson's Rest., Inc. v. NLRB,*
    461 U.S. 731 (1983)......................................................................................................9

*Brown v. Kennard,*
    94 Cal. App. 4th 40, 113 Cal. Rptr. 2d 891 (Cal. Ct. App. 2001) ...........................12

*Cada v. Baxter Healthcare Corp.,*
    920 F.2d 446 (7th Cir. 1990) .......................................................................................20

*Californians for Disability Rights v. Mervyn's, LLC,*
    138 P.3d 207 (2006)......................................................................................................23

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
    20 Cal. 4th 163 (Cal. Sup. Ct. 1999)...........................................................................22

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)......................................................................................................2

*City of Cedarburg Light and Water Comm'n v. Glens Falls Ins. Co.,*
    166 N.W.2d 165 (Wis. 1969).......................................................................................18

*Cmty. Care Org. v. Evelyn O.,*
    571 N.W.2d 700 (Wis. Ct. App. 1997) .......................................................................18

*Computer Docking Station Corp. v. Dell, Inc.,*
    547 F. Supp. 2d 948 (W.D. Wis. 2007).......................................................................18

*Doe v. Allied-Signal, Inc.,*
    985 F.2d 908 (7th Cir. 1993) .......................................................................................14

*Dry Dock, L.L.C. v. Godfrey Conveyor Co., Inc.,*
    717 F. Supp. 2d 825 (W.D.Wis. 2010) .......................................................................2

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_0492467

## CONTAINS CONFIDENTIAL BUSINESS INFORMATION
## SUBJECT TO PROTECTIVE ORDER

*ERBE Elektromedizin GmbH v. Canady Tech. LLC,*
   629 F.3d 1278 (Fed. Cir. 2010)..................................................................................8

*E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.,*
   365 U.S. 127 (1961)..................................................................................................9

*Epistar Corp. v. Philips Lumileds Lighting Co.,*
   No. C-07-5194, 2008 WL 3930030 (N.D. Cal. Aug. 26, 2008) ...........................16

*GeneThera, Inc. v. Troy & Gould Prof'l Corp.,*
   90 Cal. Rptr. 3d 218 (Cal. Ct. App. 2009)............................................................11

*HPI Health Care Serv., Inc. v. Mt. Vernon Hosp., Inc.,*
   545 N.E.2d 672 (Ill. 1989)......................................................................................25

*Hallco Mfg.  Co., Inc. v. Foster,*
   256 F.3d 1290 (Fed. Cir. 2001)..............................................................................13

*Herrmann v. Cencom Cable Assocs.,*
   999 F.2d 223 (7th Cir. 1993)..................................................................................14

*Hynix Semiconductor Inc. v. Rambus Inc.,*
   No. CV-00-20905, 2006 WL 1883353 (N.D. Cal. 2006) ................................10, 12

*Int'l Bhd. of Teamsters v. Phillip Morris Inc.,*
   196 F.3d 818 (7th Cir. 1999) ...................................................................................9

*Kwikset Corp. v. Super. Ct.,*
   246 P.3d 877 ...........................................................................................................23

*Lee v. City of Peoria,*
   685 F.2d 196 (7th Cir. 1982) ............................................................................13, 15

*Martino v. McDonald's Sys., Inc.,*
   598 F.2d 1079 (7th Cir. 1979) ....................................................................14, 15, 17

*Matrix IV, Inc. v. Am. Nat'l Bank and Trust Co. of Chicago,*
   649 F.3d 539 (7th Cir. 2011) ..................................................................................14

*Nasalok Coating Corp. v. Nylok Corp.,*
   522 F.3d 1320 (Fed. Cir. 2008)........................................................................14, 16

*New West, L.P. v. City of Joliet,*
   491 F.3d 717 (7th Cir. 2007) ...................................................................................9

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.,*
   50 Cal. 3d 1118, 270 Cal. Rptr. 1 (Cal. 1990) ......................................................25

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,*
   508 U.S. 49 (1993).................................................................................................9, 10

*Prudential Ins. Co. v. Van Matre,*
   511 N.E.2d, 740 (Ill. Ct. App. 1987) .....................................................................25

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492468

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

*Rubin v. Green,*
    4 Cal. 4th 1187 (Cal. 1993)..............................................................................11

*Rudell v. Comprehensive Accounting Corp.,*
    802 F.2d 926 (7th Cir. 1986) .................................................................14, 15, 17

*SanDisk Corp. v. Kingston Tech. Co., Inc.,*
    No. 10-cv-243 (W.D. Wis. Mar. 27, 2012).....................................................22

*Tarpley v. Keistler,*
    188 F.3d 788 (7th Cir. 1999) .........................................................................10

*Telectronics Proprietary, Ltd. v. Medtronic, Inc.,*
    687 F. Supp. 832 (S.D.N.Y. 1988)..................................................................16

*Tex. Instruments Inc. v. Cypress Semiconductor Corp.,*
    90 F.3d 1558 (Fed. Cir. 1996)........................................................................16

*Video Int'l Prod., Inc. v. Warner-Amex Cable Communications,*
    858 F.2d 1075 (5th Cir. 1988) .......................................................................10

*Walker v. Geico Gen. Ins. Co.,*
    558 F.3d 1025 (9th Cir. 2009) .......................................................................23

*Xechem, Inc. v. Bristol-Myers Squibb Co.,*
    274 F. Supp. 2d 937 (N.D. Ill. 2003) .............................................................21

*Zenith Radio Corp. v. Hazletine Research, Inc.,*
    401 U.S. 321 (1971)........................................................................................20

### Statutes

15 U.S.C. § 15(b) ......................................................................................20, 22

Cal. Bus. & Prof. Code § 17200 ........................................................2, 6, 11, 22

Cal. Civ. Code § 47(b) ....................................................................................11, 12

Fed. R. Civ. P. 56(a) ...........................................................................................2

### Miscellaneous

18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
    § 4414 (2d ed. 1987).......................................................................................14

Restatement (Second) of Judgments §§ 18-19 (1982)...............................................14

Restatement (Second) Judgments § 56.1(1) cmt. b (Tent. Draft No. 1, 1973) ............14

Restatement (Second) of Conflicts of Law § 145(2) .................................................25

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492469

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER

## PRELIMINARY STATEMENT

Motorola is a pioneer in the area of wireless communications and has contributed over the years to the standards and infrastructure that make today's cellular and wireless communication technology possible. As a result of its investment in research and development, Motorola owns a portfolio of patents. Many of these patents are considered essential to industry standards, including the 3G standard developed in 1998-99, and Motorola has widely licensed this portfolio. In 2005, Apple decided to develop its own cell phone—the iPhone—which was released in 2007. Apple, however, unlike every other cell phone manufacturer, refused to take a license to Motorola's patent portfolio. After years of fruitless negotiation and Apple's aggressive litigation attacks on Android-based products, Motorola sued Apple in 2010 both in the U.S. district courts and the International Trade Commission. Apple denied infringement and in both the district court and the ITC alleged as an equitable defense that Motorola's Fair, Reasonable and Non-Discriminatory ("FRAND") licensing terms were excessive and thus Motorola's patents should be held unenforceable. In the instant action, filed in March 2011, Apple claims that Motorola's attempts to enforce its patents in the ITC and district court constitute a violation of the antitrust laws, as well as a breach of contract in connection with licensing commitments made by Motorola to standards setting bodies in 2003 and earlier. Indeed, when this action was filed, Apple sought a preliminary injunction to try to stop Motorola from enforcing its patents in the pending actions. This Court properly denied Apple's gambit. Now that discovery has proceeded, and Apple has been forced to articulate its theories for relief, it is clear that Motorola is entitled to judgment as a matter of law in this case.

*First*, Apple's claims must fail under the *Noerr Pennington* doctrine because Motorola cannot be liable for seeking redress in the courts for patent infringement.

1

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492470

## CONTAINS CONFIDENTIAL BUSINESS INFORMATION
## SUBJECT TO PROTECTIVE ORDER

*Second*, Apple's FRAND claims must fail under principles of *res judicata* because Apple had the opportunity to present the issue of Motorola's licensing rates in a recent trial and dropped them.

*Third*, Apple has failed to provide any cognizable damages theory in this action.

*Fourth*, Apple's Sherman Act § 2 claim with respect to Motorola's participation with standards bodies and FRAND commitments must fail because Apple has raised these claims after the four year statute of limitations period has expired.

*Fifth*, Apple's unfair competition claim under Cal. Bus. & Prof. Code § 17200, *et seq.* must fail because Apple's claim is based on the same alleged conduct as its federal antitrust claims and is therefore preempted.

*Sixth*, Apple's claim that Motorola interfered with Apple's contract with ▮▮▮▮▮▮ must fail because Apple has not proven any breach of this contract as is required by this cause of action.

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Dry Dock, L.L.C. v. Godfrey Conveyor Co., Inc.*, 717 F.Supp.2d 825, 833 (W.D.Wis. 2010).  A court should grant a motion for summary judgment if the moving party establishes an absence in the record of any substantial evidence in support of an essential element of the plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986).

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves multiple claims by Apple concerning Motorola's conduct in standard setting organizations ("SSOs"), in particular relating to (1) its efforts to inform SSOs of patents it

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492471

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER

owns that are or may be essential to industry standards; (2) its licensing of its portfolio of patents essential to cellular and wireless standards on fair, reasonable and non-discriminatory ("FRAND") terms, and (3) its assertion of patent infringement claims against Apple in the district courts and the International Trade Commission to stop Apple's continued unlicensed infringement of its standards-essential patents.

### A.   Motorola's Contributions to Standard Setting Organizations and FRAND Licensing History

Motorola was and is a pioneer in the area of wireless communications, and has been a member of SSOs devoted to the development of telecommunications and wireless standards, including ETSI, IEEE and IEEE-SA.  (PFOF ¶ 1.)  Motorola has made numerous technological contributions to industry standards, and has committed to license its standards-essential patents on fair, reasonable and non-discriminatory (i.e., "FRAND") terms.  (PFOF ¶ 2.)  When asked, Apple's corporate witnesses on SSO participation could not say that Motorola has been anything other than a "good corporate citizen" of SSOs. (PFOF ¶ 3.)

Motorola's willingness to license its essential patents is well understood in the industry. (PFOF ¶ 4).  The industry has recognized the value of Motorola's portfolio of standards-essential patents, and Motorola has earned at least $4.8 billion in royalties for its essential patent portfolio over the past 20 years.  (PFOF ¶ 5.)  It is Motorola's standard practice to propose as an opening offer to license its patents in exchange for a 2.25% royalty.  (PFOF ¶ 6.)

This licensing program reaches back to at least 1992, when Motorola entered into a license with Ericsson.  That license included a cross-license to Ericsson's essential patents and a balancing payment of 2.25% royalties based on the price of handsets paid by Ericsson to Motorola.  (PFOF ¶ 7.)  Since then, Motorola has widely licensed its portfolios of cellular and

3

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492472

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER

wireless standards-essential patents to the industry, including major cell phone and smart phone

manufacturers such as Ericsson, Nokia, Samsung, HTC, RIM and LG. (PFOF ¶ 8.) Though

these agreements involve various terms and royalty rates, as this Court noted, and counsel for

Apple agreed, "a FRAND offer is not something that you can look up in the dictionary." (PFOF

¶ 9.)

###### B.    Apple's Entry into the Cell Phone Business

Apple is a latecomer to the mobile communications industry, and released its first cellular

phone, the iPhone, in 2007. Apple began developing the iPhone in 2005. (PFOF ¶ 11.) Apple

became aware that Motorola had declared patents essential to cellular standards no later than

mid-2006. (PFOF ¶ 12.) Also in 2006, Apple obtained reports from PA Consulting on patents

essential to cellular standards. (PFOF ¶ 13.) These reports and accompanying databases

identified Motorola as a company that had declared patents essential to the practice of cellular

standards, and stated that Motorola's FRAND rate for its portfolios of cellular standards essential

patents was in the range of 1 to 5 percent. (PFOF ¶¶ 13-14.)

###### C.    Motorola's Licensing Negotiations with Apple

Apple released its iPhone in 2007 without seeking a patent license from Motorola.

Shortly after the first generation iPhone was first released, in August, 2007, Motorola reached

out to Apple to offer Apple a license to its standards-essential patents. (PFOF ¶ 15.) Shortly

thereafter, in September 2007, Motorola representatives met with representatives of Apple to

discuss a license to Motorola's portfolio of cellular and wireless essential patents. (PFOF ¶ 16.)

At that initial meeting, Motorola presented information to Apple concerning its licensing

program, and explained that it seeks a standard royalty rate of 2.25% in exchange for a

worldwide license to its portfolio of standards-essential patents. (PFOF ¶ 17.) Motorola

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_0492473

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER**

continued to engage in license negotiations with Apple, but Apple would not take a license on the terms proposed by Motorola, and has not, to date, accepted a license.  (PFOF ¶ 18.)

### D.    Procedural History

After Apple sued HTC for patent infringement based upon the same Android operating system used in Motorola's products, in October 2010—over three years after Motorola first tried to engage Apple—Motorola commenced litigation to enforce its patents against Apple. Motorola brought these actions in the International Trade Commission ("ITC") (Investigation No. 337-TA-745), and the district courts (Northern District of Illinois Case No. 11-cv-08540). The actions allege infringement of patents related to cellular standards (3G), and patents related to WiFi (IEEE 802.11).  Apple raised defenses that the patents are unenforceable due to Motorola's standard rate being unreasonable and excessive, and also, for the cellular patents, Motorola's failure to disclose the patents when the 3G standards were being developed in 1998-1999.  Trial in ITC Investigation No. 337-TA-745 took place in December, 2011; trial in the Northern District of Illinois Case No. 11-cv-08540 is set to begin June 11, 2012.

On March 11, 2011, Apple filed counterclaims in the ITC alleging antitrust, unfair competition, breach of contract, declaratory judgment and equitable claims.  Because the ITC considers defenses but not affirmative claims for damages, pursuant to statute, Apple's antitrust and related counterclaims were immediately removed to this Court, where they were assigned as case number 11-cv-178.  Specifically, as amended, these claims are:

- Count I – Equitable Estoppel

- Count II – Breach of Contract – ETSI/3GPP

- Count III – Breach of Contract to Which Apple is a Third Party Beneficiary – ETSI/3GPP

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492474

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER**

- Count IV – Breach of Contract to Which Apple is a Third Party Beneficiary – IEEE

- Count V – False F/RAND Commitments and Deceptive Acts in Violation of Section 2 of the Sherman Act

- Count VI – Unfair Competition and Unlawful Business Practices in Violation of Cal. Bus. & Prof Code ¶ 17200, et seq.

- Count VII – Declaratory Judgment That Motorola's Offers have not been on F/RAND Terms

- Count XI [*sic*] – Declaratory Judgment of No Entitlement to Injunctive Relief

- Count XII [*sic*] – Declaratory Judgment of Patent Misuse

- Count XIII [*sic*] – Interference with Contract

(PFOF ¶¶ 19-20.)  The set of facts underlying Apple's claims in this case are based on the same set of facts Apple has alleged as defenses in the various patent actions.  (PFOF ¶ 22.)

The same day that Apple filed its counterclaims, March 11, 2011, Apple sought a preliminary injunction in this action to preclude Motorola from proceeding with its patent infringement claims against Apple in the ITC and this Court based on Motorola's alleged failure to offer to license its patents on FRAND terms.  (PFOF ¶ 26.)  On April 26, 2011, after a full hearing, the Court denied Apple's request for a preliminary injunction from the bench.  (PFOF ¶ 27.)  The Court suggested that "if the Court could do anything, it would only be in the situation in which the parties had absolutely refused and the party with the essential patents just said we're not going to -- we aren't going to engage in any kind of negotiation; we don't want a license; we don't have to license; we're not going to do anything."  (PFOF ¶ 28.)  But, the Court noted, it is undisputed that "there have been negotiations in this case, so that would be a different case."  (PFOF ¶ 28.)  The Court denied Apple's motion to enjoin Motorola from enforcing its essential patents because Apple had shown no likelihood of success on the merits and no irreparable harm,

6

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492475

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

and because granting a preliminary injunction would disrupt the status quo and would be contrary to the public interest.  (PFOF ¶ 29.)

Accordingly, after this Court rejected Apple's attempts to preempt the ITC, Apple's FRAND and unclean hands defenses proceeded in the ITC.

Apple pursued its FRAND claims in the ITC action, submitting an expert report from an economist.  (PFOF ¶ 31.)  However, Apple dropped its FRAND claims on the eve of trial.  (PFOF ¶ 33.)  Apple continued to pursue unclean hands and estoppel remedies based on Motorola's alleged late disclosure of its patents to SSOs.  (PFOF ¶ 32.)

The ITC trial was held in December 2011.  On April 24, 2012, the ALJ issued his ruling, which rejected Apple's unclean hands defense.  (PFOF ¶ 34.)  Administrative Law Judge Thomas Pender noted that "Apple has generally attempted to overcome the rather apparent lack of a 'foul' by speculating (without a scintilla of proof) that Motorola's silence in disclosing the '697 IPR somehow caused the ETSI to adopt the technology underlying the '697 patent as part of the 3GPP standard and this adoption resulted in potentially prohibitive expenses for the rest of the industry."  (PFOF ¶ 35.)  ALJ Pender went on to conclude that, given the lack of proof that Motorola's actions harmed anyone, let alone Apple, coupled with Apple's insistence that the '697 patent is not even required for a device to comply with the 3GPP standard, Apple failed to show by clear and convincing evidence that Motorola acted with unclean hands.  (PFOF ¶ 36.)

The parties have engaged in extensive discovery on these issues, including document productions, depositions, and expert reports.  Throughout discovery, Apple has taken positions that confirm that Motorola is entitled to judgment as a matter of law.  Apple served opening expert reports, including damages reports, on March 6, 20102, in support of its claims, and Motorola responded to those reports on April 15.  (PFOF ¶ 38.)  Apple also has provided

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492476

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

interrogatory answers detailing the facts and legal bases for its antitrust claim and its claims for

damages.  (PFOF ¶ 43.)

<u>**ARGUMENT**</u>

**I.     MOTOROLA IS ENTITLED TO SUMMARY JUDGMENT ON ALL OF APPLE'S
        CLAIMS UNDER THE *NOERR PENNINGTON* DOCTRINE BECAUSE APPLE'S
        CLAIMS ARE PREDICATED ON MOTOROLA'S PATENT LITIGATION**

        The Court must grant summary judgment in favor of Motorola on each of Apple's Counts

1 through 7, and 11 through 13, because Apple's claims are barred under the *Noerr Pennington*

doctrine.  Each of these claims is premised on Motorola's litigation to enforce its patents against

Apple.  But pursuit of patent infringement litigation is protected petitioning activity and cannot

be the basis for antitrust liability or other liability.  *See, e.g., ERBE Elektromedizin GmbH v.

Canady Tech. LLC*, 629 F.3d 1278, 1291-92 (Fed. Cir. 2010) (affirming grant of summary

judgment that antitrust counterclaims premised on patent enforcement litigation were barred

under *Noerr-Pennington*).

        It is clear from Apple's allegations, and from the relief it seeks—an order barring

Motorola from obtaining or enforcing an injunction against Apple for its patent infringement and

damages for litigation expenses incurred by Apple defending against Motorola's infringement

claims—that Apple's claims are premised wholly on Motorola's patent infringement litigation.

At the hearing on Apple's motion for preliminary injunction in this case, Apple's counsel argued

that FRAND imposes an "obligation to provide a FRAND offer before initiating any litigation,"

and that Apple has suffered "harm" in the form of "being subject to an ITC proceeding" and "the

threat of an exclusion order in the ITC that would prevent importation of all of [Apple's]

products."  (PFOF ¶ 26.)  And, though substantial discovery has been exchanged in this case,

including expert reports, Apple has identified no damages relating to its claims other than its

8

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492477

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

litigation expenses. (PFOF ¶¶ 38-43.) Apple's claims should be barred because First

Amendment principles dictate that Motorola cannot be held liable for seeking to enforce its

patents.

###### A.     Legal Principles Relating to the *Noerr-Pennington* Doctrine

The *Noerr-Pennington* doctrine is rooted in First Amendment principles. *E. R.R.*

*Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138 (1961). The doctrine

provides that "[t]hose who petition the government for redress are generally immune from

antitrust liability." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S.

49, 56 (1993). The Supreme Court has explained that the underlying principle of the doctrine is

that "the Sherman Act does not prohibit…persons from associating together in an attempt to

persuade the legislature or the executive to take particular action with respect to a law that would

produce a restraint or a monopoly." *Id.* (citing *Noerr*, 365 U.S. at 136). Though the courts have

recognized an exception to the doctrine when petitioning activity is a "mere sham," "an

objectively reasonable effort to litigate cannot be sham <u>regardless of subjective intent</u>." *Id.* at 57

(emphasis added).

"*Noerr-Pennington* has been extended beyond the antitrust laws, where it originated, and

is today understood as an application of the first amendment's speech and petitioning clauses;"

thus, the doctrine may be appropriately applied as a bar to liability in any action premised on

protected conduct. *New West, L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007) (citing *Bill*

*Johnson's Rest., Inc. v. NLRB*, 461 U.S. 731 (1983); *Prof'l Real Estate Investors,* 508 U.S. 49

(1993); *BE & K Constr. Co. v. NLRB*, 536 U.S. 516 (2002)). For example, *Noerr-Pennington*

immunity has been applied to protect petitioning activity from liability for RICO suits, § 1983

claims, and tortious interference with contract. *See, e.g., Int'l Bhd. of Teamsters v. Phillip*

9

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER

*Morris Inc.*, 196 F.3d 818, 826 (7th Cir. 1999) ("Although the *Noerr-Pennington* doctrine originated in antitrust law, its rationale is equally applicable to RICO suits."); *Tarpley v. Keistler*, 188 F.3d 788, 794 (7th Cir. 1999) ("Although originally applied to provide immunity from antitrust prosecution, the *Noerr-Pennington* cloak of protection has been extended to cover other areas of law, including claims under § 1983."); *Video Int'l Prod., Inc. v. Warner-Amex Cable Communications*, 858 F.2d 1075, 1082-84 (5th Cir. 1988) (*Noerr-Pennington* doctrine shielded cable company from § 1983, antitrust and tort liability).

B.     **Motorola's Patent Infringement Litigation Is Protected Activity Immune from Liability Under *Noerr-Pennington***

Here, the Court must grant summary judgment barring Apple's antitrust claim, as well as Apple's remaining claims, because it is clear that these claims seek to impose liability on Motorola for its pursuit of protected petitioning activity in the ITC and district court. Summary judgment is appropriate to apply the *Noerr-Pennington* doctrine to bar antitrust and related claims premised on a patent holder's litigation and prosecution of patent infringement claims. *See, e.g., Hynix Semiconductor Inc. v. Rambus Inc.*, No. CV-00-20905, 2006 WL 1883353 (N.D. Cal. 2006) (granting summary judgment to the extent plaintiffs' claims were based solely on underlying patent litigation); *cf. Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49 (1993) (affirming application of *Noerr-Pennington* doctrine to bar antitrust claims premised on copyright infringement action). The only damages Apple asserts are the costs of litigating against Motorola. *See infra* at 17-18.

Apple cannot reasonably assert that Motorola's alleged conduct falls within the "sham litigation" exception to *Noerr-Pennington* immunity. In order for this exception to apply, there must be a threshold showing that the underlying lawsuit is "objectively baseless in the sense that

10

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492479

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Investors*, 508 U.S. at 60. Though Apple contests Motorola's patent infringement claims in the ITC and district courts, this does not mean Motorola's claims are "objectively baseless." To the contrary, the ALJ's Initial Determination in the ITC finding Motorola's '697 patent valid and infringed, and rejecting Apple's standards-related defense, confirms that Motorola's infringement claims have merit. (PFOF ¶ 34.)

Apple would have this Court impose significant liability—over $30 million in damages, as well as declaratory and injunctive relief—upon Motorola based on Motorola's patent enforcement activity in the district courts and the ITC. (PFOF ¶¶ 37, 39.) But, as a matter of law, Motorola's pursuit of its patent infringement claims is protected activity immune from liability under *Noerr-Pennington* and the First Amendment. Accordingly, Motorola is entitled to summary judgment on all of Apple's claims premised on Motorola's patent infringement actions.

C.    **Motorola Is Also Immune from California Civil Code § 17200 Liability Under the California Litigation Privilege**

In addition to federal antitrust claims, Apple Count 6 alleges that Motorola's enforcement of its patents violates California unfair competition law, Cal. Bus. & Prof. Code § 17200, *et seq.*. (PFOF ¶ 20.) However, California also recognizes that the filing of a lawsuit is privileged activity. CAL. CIV. CODE § 47(b). California Civil Code section 47(b) provides that "[a] privileged publication or broadcast is one made [i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law." This immunity has "broad application" to any "communication[] with 'some relation to judicial proceedings'" and applies "without regard to malice or evil motives." *GeneThera, Inc. v. Troy & Gould Prof'l Corp.*, 90 Cal. Rptr. 3d 218,

11

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492480

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER

223-24 171 (Cal. Ct. App. 2009) (citing *Rubin v. Green*, 4 Cal. 4th 1187, 1193 (Cal. 1993));

*Brown v. Kennard*, 94 Cal. App. 4th 40, 45, 113 Cal. Rptr. 2d 891 (Cal. Ct. App. 2001). Because

Apple's section 17200 unfair competition claim is premised on Motorola's patent infringement

litigation against Apple in the ITC and the district courts, summary judgment is also appropriate

because California's litigation privilege acts as a bar to that claim. *See Hynix*, 2006 WL

1883353, at *2 (state law claims based on litigation and prosecution of patent infringement

claims were barred under Cal. Civ. Code section 47(b)).

## II.     APPLE IS PRECLUDED FROM ASSERTING ITS FRAND-BASED CLAIMS IN THIS ACTION UNDER THE DOCTRINE OF *RES JUDICATA*

Motorola is also entitled to summary judgment on each of Apples Counts 1 through 7 and

11 through 13 to the extent Apple's claims are based on Motorola's alleged failure to license

patents to Apple on FRAND terms because *res judicata* bars Apple from pursuing its FRAND

claims. Apple initiated this action on March 11, 2011, after having already raised defenses based

on its FRAND allegations in the ITC and the patent infringement action in the district court. The

same day Apple initiated this action, it filed a motion for preliminary injunction asking this Court

to bar Motorola from pursuing its patent infringement claims in the ITC and district court. The

Court denied Apple's motion, and stated that Apple should litigate its FRAND defense in the

ITC:

> I cannot see any likelihood of success on that motion, that is, that it
> would be appropriate and legal for a district court to intervene in
> an ITC proceeding in the circumstances present in this case. It
> makes no sense to me that this would be what Congress had in
> mind when it enacted the whole ITC proceeding and system of
> operating.

(PFOF ¶ 30.)

12

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492481

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER

Apple pursued its FRAND defense in the ITC. In the ITC case, Apple submitted an expert report from Dr. Jerry Hausman of MIT in support of its FRAND defense, dated May 6, 2011, and Dr. Hausman was deposed on that report. (PFOF ¶ 31.) Then Apple unilaterally dropped its FRAND defense and FRAND allegations on July 20, 2011. (PFOF ¶ 33.) Apple did not argue its FRAND defense in its pre- or post-hearing briefing, and did not present evidence in support of its FRAND allegations at the ITC hearing. Apple did argue its defense relating to Motorola's disclosure of its standard-essential '697 patent to ETSI, but the ALJ found that defense to be without merit. (PFOF ¶¶ 32, 34-36.) On April 24, 2012, the ALJ issued an initial determination in ITC Investigation No. 337-TA-745 finding Apple had committed a section 337 violation, and that Motorola's standard-essential '697 patent is valid and infringed. (PFOF ¶ 34.) The ITC will issue a final determination on August 23, 2012, prior to trial in this action.

In this case, Apple seeks to undermine the judgment of the ITC by pursuing affirmative claims based on its abandoned FRAND allegations. Apple seeks remedies including a court order barring Motorola from obtaining injunctive relief such as enforcing any exclusion order that may issue in ITC Investigation No. 337-TA-745, as well as damages for its litigation costs for defending against Motorola's claims in the ITC. (PFOF ¶ 37.) But the doctrine of *res judicata* precludes a defendant from later asserting affirmative claims that seek to interfere with or undermine a prior judgment, especially in the case where defendant previously waived a defense based on the same allegations. *See, e.g., Lee v. City of Peoria*, 685 F.2d 196, 200-201 (7th Cir. 1982). Here, Apple's affirmative FRAND-based claims represent an attack on the rights established through trial in the ITC, and must be barred on *res judicata* principles.

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492482

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

**A.      Legal Principles Relating to *Res Judicata* and Defendant Preclusion**

"The general concept of claim preclusion is that when a final judgment is rendered on the

merits, another action may not be maintained between the parties on the same 'claim,' and

defenses that were raised or could have been raised in that action are extinguished." *Hallco Mfg.*

*Co., Inc. v. Foster*, 256 F.3d 1290, 1294 (Fed. Cir. 2001) (citing RESTATEMENT (SECOND) OF

JUDGMENTS §§ 18-19 (1982)).  The test for whether a prior proceeding involved the same

"claim" is whether it arose from the same "single core of operative facts" as the present action.

*Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 913 (7th Cir. 1993).  Even if based on different legal

theories, "two claims are one for purposes of *res judicata* if they are based on the same, or nearly

the same, factual allegations."  *Matrix IV, Inc. v. Am. Nat'l Bank and Trust Co. of Chicago*, 649

F.3d 539, 547 (7th Cir. 2011) (quoting *Herrmann v. Cencom Cable Assocs.*, 999 F.2d 223, 226

(7th Cir. 1993).

The particular variant of claim preclusion at issue in this case is called "defendant

preclusion."  The issue of defendant preclusion arises when, as a defendant in a first litigation, a

party loses on or fails to raise a particular defense, then in a subsequent litigation asserts a claim

for relief that shares a common set of operative facts with that lost or waived defense.  18

CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4414 (2d

ed. 1987); *see, e.g. Rudell v. Comprehensive Accounting Corp.*, 802 F.2d 926, 928-29 (7th Cir.

1986).

Though the general rule of "defendant preclusion" is that preclusion is not appropriate

where the claim in question was not a compulsory counterclaim, *see Martino v. McDonald's*

*Sys., Inc.*, 598 F.2d 1079, 1084 (7th Cir. 1979) (quoting RESTATEMENT (SECOND) JUDGMENTS §

56.1(1) cmt. b (Tent. Draft No. 1, 1973)), the Seventh Circuit has recognized a significant

14

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492483

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

exception to this rule where pursuit of affirmative claims in a later action "would nullify rights established by the prior action." *Martino*, 598 F.2d at 1085; *Rudell*, 802 F.2d at 928-29; *see also Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320, 1324 (Fed. Cir. 2008) (holding that defendant preclusion applies if "(1) the claim or defense asserted in the second action was a compulsory counterclaim that the defendant failed to assert in the first action, or (2) the claim or defense represents what is essentially a collateral attack on the first judgment").

In *Martino*, for example, McDonald's System sued Martino, a franchisee, for breach of his franchise agreement. Before Martino answered, the parties settled the dispute and entered into a consent judgment. The consent judgment provided for McDonald's System to repurchase the franchise. Martino then sued McDonald's System alleging that enforcement of the franchise agreement violated the antitrust laws. He sought as damages the profits he would have made had he not been forced to sell his franchise. McDonald's System argued that *res judicata* barred the claim because the antitrust arguments Martino presented would have been a defense to enforcement of the contract in the previous suit. Despite the general rule against *res judicata* based on the failure to pursue a defense, described above, the court carved out an exception:

> McDonald's System and FRIC have terminated and repurchased Martino's franchise in reliance on the trial court's 1973 judgment telling them they were justified in doing so. Now Martino seeks to impose significant financial liability on the defendants for these actions. We cannot hold that the counterclaim exception to the res judicata rule, based merely on notions of convenience, permits the plaintiff here to wage this direct attack on the rights established by the prior judgment.

*Id.*

The Seventh Circuit has applied this rule to find that *res judicata* barred later affirmative claims where a defense based on the same set of facts had been previously litigated and lost, or waived. *See, e.g., Lee v. City of Peoria*, 685 F.2d at 200-201 (holding that a police officer's

15

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_0492484

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

failure to raise racial discrimination as a defense in state proceedings precluded later-raised civil rights claims since suit would "directly undermine the validity" of the prior decision); *Rudell*, 802 F.2d at 928-931 (7th Cir. 1986) (finding that affirmative claims that a franchise agreement was procured through fraud were precluded where plaintiff had previously raised his fraud allegations as a defense, but failed to present evidence to support his defense; noting that the "ultimate concern is whether bringing a second action in a later proceeding would undermine a prior judgment premised on the same facts"). This same principle has been recognized by the Federal Circuit. *Nasalok Coating Corp.*, 522 F.3d at 1328-29 (holding that an unsuccessful trademark defendant was precluded from later asserting affirmative claim seeking to invalidate trademark, since its suit "would effectively undo the relief granted by the district court in the infringement action").

In the context of ITC cases, the Federal Circuit has stated that though district courts may attribute "persuasive value" to ITC decisions, in subsequent patent litigation "accused infringers can raise whatever defenses they believe are justified, regardless whether they previously raised them and lost in the ITC." *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996). But the ITC's determination of <u>non-patent issues</u> may nevertheless have *res judicata* effect over subsequent claims raised in the district courts. *See, e.g., Aunyx Corp. v. Canon U.S.A., Inc.*, 978 F.2d 3 (1st Cir. 1992) (*res judicata* applied to antitrust claims decided by the ITC); *Balt. Luggage Co. v. Samsonite Corp.*, 727 F. Supp. 202, 205 (D. Md. 1989) (*res judicata* barred antitrust and other claims where defendant had litigated and lost antitrust and unclean hands defenses based on the same facts); *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 687 F. Supp. 832, 846 (S.D.N.Y. 1988) (ITC's ruling rejecting infringer's license defense was directed towards "the existence of a contract," not the validity of a patent, and thus entitled

16

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_0492485

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER**

to preclusive effect in later district court litigation); *but see Epistar Corp. v. Philips Lumileds Lighting Co.*, No. C-07-5194, 2008 WL 3930030, at *2-4 (N.D. Cal. Aug. 26, 2008) (patent defendant was not precluded from raising license and covenant not to sue defense in district court patent infringement action even though it had waived those defenses in the ITC).

### B. *Res Judicata* Bars Apple from Re-Litigating Its Claims in This Court

Here, defendant preclusion should apply to bar Apple from pursuing its claims based on Motorola's alleged FRAND violations because Apple raised its FRAND allegations and then abandoned them in the ITC. This case is distinct from one where a patent infringement defendant seeks to raise abandoned ITC defenses in a district court case for patent infringement and patent damages: Apple seeks to impose significant financial liability and other burdens on Motorola premised on Motorola's success in the ITC. (PFOF ¶ 37, 39.) The remedies Apple seeks include an order barring Motorola from obtaining or enforcing an injunction, in particular an exclusion order based on the ITC's infringement findings in ITC Investigation no. 337-TA-745, as well as damages for litigation costs Apple incurred for defending against Motorola's ITC claims. (PFOF ¶ 37, 39.) It is well established under Seventh Circuit law that this type of direct attack on rights secured under a prior judgment must be barred as *res judicata*. *See Martino*, 598 F.2d at 1085; *Rudell*, 802 F.3d at 930. Accordingly, the Court should grant summary judgment that each of Apple's claims based on its FRAND violation allegations is precluded based on Apple's waiver of its FRAND defense in the ITC.

### III. MOTOROLA IS ENTITLED TO SUMMARY JUDGMENT THAT APPLE IS NOT ENTITLED TO DAMAGES ON ANY CLAIM.

The Court must also grant summary judgment that Apple is not entitled to recover damages on its breach of contract claims, Counts 2 through 5, nor any of its remaining claims under Counts 1, 6, 7 and 11 through 13. Apple's opening expert reports in this case, including its

17

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492486

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

damages reports, were due on March 6, 2012, nearly a year after Apple initiated this action.
(PFOF ¶ 38.)  On March 6, Apple served an expert report by Mr. Brian Napper identifying the

damages Apple believes it is entitled to based on its breach of contract claims.  Mr. Napper

concluded that Apple has suffered a minimum of $31,948,128.31 in damages based on "litigation

costs, including attorneys' fees, Apple has incurred to date in (1) having to defend the ITC 745

Investigation; (2) having to defend the District Court Case; and (3) prosecuting the 178 case to

establish Motorola's violation of its obligations to ETSI and IEEE."  (PFOF ¶ 39.)  Mr. Napper

based his opinions on summaries of invoices from the law firms representing Apple in each of

those cases.  (PFOF ¶ 40.)  The invoices relied upon by Mr. Napper identified generalized fees

due for the defense and prosecution of the three cases, as well costs incurred for items such as

attorneys' car fare, meals and laundry.  (PFOF ¶ 41.)

Apple also submitted an expert report on March 6, 2012, from Dr. Dennis Carlton, in

support of its antitrust claims.  Dr. Carlton did not identify any antitrust damages suffered by

Apple, but noted that the royalty rates in Motorola's license agreements with third parties "could

be used as a benchmark to estimate damages to Apple should Motorola succeed in its attempt to

set a royalty rate that violates FRAND."  (PFOF ¶ 42.)  Apple later confirmed in its interrogatory

responses dated April 23, 2012, that the only damages it is seeking in this action are those

"contract damages" identified in Mr. Napper's report. (PFOF ¶ 43.)

A.     **Apple Cannot Recover Litigation Expenses as Damages for "Breach of Contract"**

As a general rule, attorneys' fees and other litigation expenses are not recoverable

damages, absent a contractual provision or statute specifically providing otherwise.  *Cmty. Care*

*Org. v. Evelyn O.*, 571 N.W.2d 700, 702 (Wis. Ct. App. 1997); *Computer Docking Station Corp.*

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492487

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

*v. Dell, Inc.*, 547 F. Supp. 2d 948, 951 (W.D. Wis. 2007) (holding that patent infringement

defendant was not entitled to litigation expenses even though the plaintiff had overestimated its

chances of success on the merits and had prolonged litigation).  Nor are litigation expenses

incurred in a former litigation between the same parties recoverable contract damages. *City of*

*Cedarburg Light and Water Comm'n v. Glens Falls Ins. Co.*, 166 N.W.2d 165, 167 (Wis. 1969).

Thus, Apple's litigation costs are as a matter of law not recoverable contract damages.

Moreover, even if the Court accepts Apple's position that, in principle, attorneys' fees

and other litigation expenses are recoverable expectation damages, the Court must nevertheless

grant summary judgment that Apple is not entitled to damages in this case.  The contract

damages alleged by Apple and its expert Mr. Napper—on their face—bear such a tenuous

relationship to Motorola's alleged breach that they cannot, as a matter of law, be recoverable.

For example, with respect to litigation costs associated with the ITC action, Apple makes no

attempt to distinguish expenses relating to defending against the two standards-essential patents

at issue in that case as opposed to the other four non-essential patents Motorola asserted in that

case.  (*See* PFOF ¶ 39.)  Likewise, Apple and Mr. Napper do not distinguish between expenses

relating to pursuing its FRAND and standards-related defenses, as opposed to other unrelated

defenses such as non-infringement and invalidity.  (*See* PFOF ¶ 39.)  And Apple's claims for

damages for the costs of items like attorneys' meals and laundry during trial bear no reasonable

connection to any alleged contract obligations or expectations.  (*See* PFOF ¶ 39.)  As a matter of

law, these damages identified by Apple are too speculative and must be rejected.

**B.      Apple Has Not Established Any Other Damages**

Despite having exchanged substantial discovery on the issues in this action, including

expert reports, Apple has not identified any other theory under which it is entitled to recover

19

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492488

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER**

damages. In particular, Apple apparently does not dispute that it has suffered no damages

recoverable under its antitrust, unfair competition and tortious interference with contract claims,

or any other claim for that matter. (PFOF ¶ 39, 43.) To the extent Apple contends that it should

recover antitrust damages based on the future injury it may suffer should Motorola prevail on its

own claims for patent infringement damages in the district court, or otherwise succeed in

obtaining compensation from Apple in excess of a FRAND royalty, those unspecified future

damages are far too speculative to be recoverable or to form the basis for any cognizable claim

for relief. *Zenith Radio Corp. v. Hazletine Research, Inc.*, 401 U.S. 321, 339 (1971).

## IV.   MOTOROLA IS ENTITLED TO SUMMARY JUDGMENT ON APPLE'S SHERMAN ACT § 2 CLAIM WITH REGARDS TO MOTOROLA'S FAILURE TO DISCLOSE TO ETSI, BECAUSE THE STATUTE OF LIMITATIONS HAS RUN.

The Court must grant summary judgment barring Apple's Count 5 Sherman Act claim

with respect to Motorola's failure to timely disclose its IPR to ETSI, as well as its alleged

FRAND violation, because Apple discovered its alleged injury more than four years before it

raised its antitrust claim; its claim therefore falls outside of the relevant statute of limitations.

Section 4 of the Clayton Act sets a four-year statute of limitations for antitrust actions. 15

U.S.C. § 15(b). A cause of action under the statute accrues when the defendant commits an act

violative of the statute that causes injury to a plaintiff's business or other economic enterprise.

*Zenith Radio Corp. v. Hazletine Research, Inc.*, 401 U.S. 321, 338 (1971). The statute of

limitations is qualified by the discovery rule, which "postpones the beginning of the limitations

period from the date when the plaintiff is wronged to the date when he discovers he has been

injured." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990).

Apple alleges that it has been injured by Motorola's failure to timely disclose its essential

patents to ETSI, and that Motorola had a burden to disclose its patents at least prior to when its

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492489

## CONTAINS CONFIDENTIAL BUSINESS INFORMATION
## SUBJECT TO PROTECTIVE ORDER

technology was incorporated into the relevant standards. (PFOF ¶ 23.) In particular, Apple

contends that Motorola engineers, including the inventors of the patents at issue in this case,

participated in ETSI or 3GPP technical meetings between 1997 and 1999. (PFOF ¶ 24.) The

relevant ETSI and 3GPP standards were adopted no later than 2000. Motorola specifically

disclosed the '559 and the '697 Patents to ETSI no later than September 20, 2002. (PFOF ¶ 25.)

Motorola specifically disclosed the '898 patent to ETSI no later than April 8, 2003. (PFOF ¶ 25.)

In 2005, Apple collaborated with Motorola and AT&T on a cell phone product

incorporating Apple's iTunes. This product, the "ROKR," was released in September 2005.

(PFOF ¶ 10.) During this same period in 2005, Apple had already started development of its

own cell phone, which would become the iPhone. (PFOF ¶ 11.) Apple's former chief patent

counsel, Richard Lutton, testified that Apple was aware that Motorola owned patents to which it

would need a license no later than "mid-2006." (PFOF ¶ 12.) In fact, Apple obtained industry

reports from PA Consulting in May and June of 2006, which identified that Motorola owned

patents essential to 2G and 3G cellular standards. (PFOF ¶ 13.) These reports further identified

that the range of Motorola's royalty rates for its portfolio of essential patents ranged from 1% up

to as high as 5%. (PFOF ¶ 14.) Thus, Apple was aware no later than mid-2006 that it required a

license to Motorola's patents for its iPhone product, and that Motorola would seek a royalty

based on the selling price of Apple's product, in the range of 1 to 5 percent.

After discovering the existence of Motorola's essential IPR and Motorola's standard

licensing rates, Apple did not pursue licensing negotiations with Motorola. In fact, the parties

did not begin negotiations until Motorola initiated them a year later, after the iPhone had been

released. (PFOF ¶ 15.) Nor did Apple immediately bring any action regarding Motorola's

alleged supra-FRAND licensing rates. Instead, Apple sat on its claim until March 11, 2011,

21

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492490

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

when it filed its antitrust counterclaims in the ITC. (*See* PFOF ¶ 19.) Even taking the date of the

later PA Consulting report, June 2006, the four-year statute of limitations on Apple's claim

would expire in June 2010. Apple's counterclaims fall nine months outside of the statute of

limitations period, and must be barred. *See Xechem, Inc. v. Bristol-Myers Squibb Co.*, 274 F.

Supp. 2d 937, 944-45 (N.D. Ill. 2003) (holding that plaintiff's federal and state antitrust claims

were time-barred because plaintiffs brought suit six years after their injury occurred, outside of

the four-year limitations period set by 15 U.S.C. § 15(b)).

**V.     MOTOROLA IS ENTITLED TO SUMMARY JUDGMENT ON APPLE'S CAL.
        BUS. & PROF. CODE § 17200 CLAIM BECAUSE APPLE'S CLAIM MIRRORS
        ITS ANTITRUST AND INTERFERENCE WITH CONTRACT CLAIMS AND
        BECAUSE APPLE HAS FAILED TO PROVE IT HAS SUFFERED ECONOMIC
        INJURY.**

Apple's Count 6 claim of unfair competition and unlawful business practices under

California Business & Professions Code § 17200, *et seq.* ("UCL claim") must fail because

Apple's factual allegations supporting this claim mirror those it uses to support its antitrust and

interference with contract claims, and because Apple has failed to prove it is has suffered any

economic injury. California's unfair competition laws do not offer broader protection than the

federal antitrust laws. *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163,

186-87 (Cal. Sup. Ct. 1999) (holding that "unfair" in § 17200 "means conduct that threatens an

incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because

its effects are comparable to or the same as a violation of the law, or otherwise significantly

threatens or harms competition"); *SanDisk Corp. v. Kingston Tech. Co., Inc.*, No. 10-cv-243, slip

op. at *19 (W.D. Wis. Mar. 27, 2012) (holding that patent infringement defendant, a downstream

producer who had refused to take a license from plaintiff, failed to show an incipient violation of

22

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492491

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER**

the antitrust laws sufficient to prevail on its UCL counterclaim).  Therefore, UCL claims based on the same facts as the predicate claim must fall with the predicate claim.

Apple alleges that Motorola's business acts and practices that violate the UCL are Motorola's "intentionally making false and deceptive F/RAND commitments and/or failing to disclose Declared-Essential Patents in a timely manner in violation of the IPR Policies of ETSI, 3GPP, and the IEEE" and by "interfering with a business contract between █████████ and its customer, Apple." (*See* PFOF ¶ 21.)  These allegations are the same as those that form the basis for Apple's antitrust claim and interference with contract claim. (*See* PFOF ¶ 21.)  Apple has failed to prove any conduct on the part of Motorola that is separate and apart from the conduct it has already alleged in the antitrust and interference with contract claims.  Without more, Apple's claim must fail for the reasons stated in above Sections I – IV, and below in Section VI.  *See Apple v. Samsung*, No. 5:11-cv-01846, slip op. at *12-13 (N.D. Cal. Oct. 18, 2011) (granting Samsung's motion to dismiss because Apple failed to allege how its UCL claim was materially different from its claim on the predicate violation of the antitrust laws).

Additionally, Apple's UCL claim must fail because Apple has failed to prove it is has suffered any economic injury.  As discussed in Section III, Apple has failed to prove the existence of any damages other than its litigation costs.  "[P]ursuant to the 2004 voter approval of Proposition 64, the UCL in § 17204 now requires a plaintiff to establish that it has 'suffered injury in fact and has lost money or property.'" *Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025, 1027 (9th Cir. 2009) (citing *Californians for Disability Rights v. Mervyn's, LLC*, 138 P.3d 207, 209-10 (2006)); *Kwikset Corp. v. Super. Ct.*, 246 P.3d 877, 884-85 (holding that the narrower standing requirements under Proposition 64 requires a party to "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show

23

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_0492492

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER**

that that economic injury was the result of, i.e., *caused by*, the unfair business practice...that is

the gravamen of the claim").  As Apple has not proven that it suffered any legally cognizable

loss, summary judgment must be granted on its UCL claim.



Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492493

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**



Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492494

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

26

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492495

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492496

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

Dated: April 27, 2012

Respectfully Submitted,

MOTOROLA MOBILITY, INC.

By:     *s/ Brian C. Cannon*
         Brian C. Cannon

Scott W. Hansen
Lynn M. Stathas
Lisa Nester Kass
Reinhart Boerner Van Deuren s.c.
22 East Mifflin Street
P.O. Box 2018
Madison, WI 53701-2018
Telephone:   (608) 229-2200
Facsimile:   (608) 229-2100
1000 North Water Street, Suite 1700
Milwaukee, WI 53202
Telephone:   414-298-1000
Facsimile:   414-298-8097
Email:  shansen@reinhartlaw.com
           lstathas@reinhartlaw.com
           lkass@reinhartlaw.com

*Attorneys for Defendant Motorola Mobility,*
*Inc.*

David A. Nelson
Jennifer A. Bauer
Quinn Emanuel Urquhart & Sullivan, LLP
500 West Madison St., Suite 2450
Chicago, IL 60661
Telephone:   (312) 705-7400
Facsimile:   (312) 705-7401
Email:  davenelson@quinnemanuel.com
           jenniferbauer@quinnemanuel.com

Edward J. DeFranco
Alexander Rudis
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:   (212) 849-7000
Facsimile:   (212) 849-7100
Email:  eddefranco@quinnemanuel.com
           alexanderrudis@quinnemanuel.com

Brian C. Cannon
Meghan Bordonaro
Shawna M. Reeder
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA  94065
Telephone:   (650) 801-5000
Facsimile:   (650) 801-5100
Email:  briancannon@quinnemanuel.com
           meghanbordonaro@quinnemanuel.com
           shawnareeder@quinnemanuel.com

*Attorneys for Defendant Motorola Mobility, Inc.*

Contains Motorola Mobility, Inc.
and/or Third Party Confidential Business Information,
Subject to Protective Order - Attorneys' Eyes Only

MOTM_WASH1823_ 0492497