HONORABLE JAMES L. ROBART

1

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10  MICROSOFT CORPORATION,

                  Plaintiff,

11        v.

12  MOTOROLA INC., et al.,

13                      Defendant.

14  MOTOROLA MOBILITY, INC., et al.,

15                    Plaintiffs,

16        v.

17  MICROSOFT CORPORATION,

18                      Defendant.

No. C10-1823-JLR

MICROSOFT'S OPPOSITION TO
DEFENDANTS' MOTION TO
EXCLUDE AND STRIKE TESTIMONY
OF TODD MENENBERG

**Noted: July 31, 2013 at 10:00 AM**

**ORAL ARGUMENT REQUESTED**

19

20

21

22

23

24

25

26

MICROSOFT'S OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE AND
STRIKE TESTIMONY OF TODD MENENBERG

1

## **TABLE OF CONTENTS**

2   I.    INTRODUCTION ..................................................................................................... 1

3   II.   ARGUMENT ........................................................................................................... 3

4         A.  Menenberg's Opinions Are Proper Expert Testimony Based On Expert Knowledge
              And Will Assist The Jury. ............................................................................... 3
5
          B.  The Advocate Witness Rule Does Not Preclude Menenberg's Testimony .................. 7
6
7         C.  Menenberg's Reliance On Data Provided By Sidley And Microsoft Is Both Proper
              And Commonplace. ......................................................................................... 10
8
          D.  Motorola's Request for a Preclusion Order is Premature. ................................... 12
9
    III.  CONCLUSION ...................................................................................................... 14

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MICROSOFT'S OPPOSITION TO DEFENDANT'S
MOTION TO EXCLUDE AND STRIKE
TESTIMONY OF TODD MENENBERG

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

## I.   INTRODUCTION

2

Microsoft expert Todd Menenberg is a Certified Public Accountant who manages

3
Navigant Consulting's Disputes and Investigation Practice for the Western Region of the

4
United States.  Microsoft retained Menenberg to quantify the legal costs, including attorney's

5
fees and other litigation costs and expenses, incurred by Microsoft due to Motorola's alleged

6
breach of contract.  In addition, Microsoft's counsel retained Menenberg to quantify the costs

7
Microsoft incurred to relocate its primary logistics and product/software distribution center for

8
the European, Middle Eastern, and African ("EMEA") market from its former location in

9
Germany to the Netherlands.  Menenberg's analysis includes an assessment of Microsoft's

10
increased costs resulting from operating its distribution center in the Netherlands.  Menenberg

11
has testified as an expert in numerous cases involving financial disputes and on the subject of

12
damages.

13

To prepare his opinions, Menenberg and a supporting staff of 10 people spent more

14
than 1,000 hours (with Menenberg himself spending over 100 hours)[1] reviewing and analyzing

15
more than 4,000 pages of invoices from 5 law firms, containing more than 12,000 billing

16
entries, as well as voluminous invoices and other cost documentation relating to the relocation

17
of Microsoft's distribution center to ascertain the nature and amount of Microsoft's claimed

18
damages.  Menenberg also examined Microsoft's billing records for any errors and had

19
discussions with Microsoft's counsel and its employees regarding the nature of the costs

20
incurred in order to satisfy himself that those costs should be recovered.  After analyzing this

21
voluminous data, Menenberg created summary charts identifying and quantifying each

22
component of Microsoft's damages claim to assist the jury at trial.

23

24

_____

25
[1] This is at least twice as much time than Motorola's rebuttal expert, Bradley Keller, spent on this matter.  *See* Declaration of Christopher Wion in Support of Microsoft's Opp. to Defs.' Mot. to Exclude and Strike Testimony of Todd Menenberg ("Wion Decl.") Ex. 3, Keller Dep. 121:13–15.

26
MICROSOFT'S OPPOSITION TO DEFENDANT'S
MOTION TO EXCLUDE AND STRIKE
TESTIMONY OF TODD MENENBERG - 1

1    Motorola's various attacks on Menenberg's testimony (*see* Dkt. No. 734, Defs.' Mot. to

2    Exclude and Strike Testimony of Todd Menenberg ("Menenberg Mot.")) are without merit.

3    The work Menenberg performed is prototypical damage expert analysis and is admissible.

4    Rule 702 of the Federal Rules of Evidence authorizes an expert to testify if "(a) the expert's

5    scientific, technical, or other specialized knowledge will help the trier of fact to understand the

6    evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data;

7    (c) the testimony is the product of reliable principles and methods; and (d) the expert has

8    reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The

9    Court has broad discretion concerning the admissibility or exclusion of expert testimony and

10    should admit such testimony when it "will assist the trier of fact to understand the evidence."

11    *Wood v. Stihl, Inc.*, 705 F.2d 1101, 1104 (9th Cir. 1983) (quoting Fed. R. Evid. 702).

12    Accounting expert opinion based on mathematical calculation and analysis is

13    commonplace and falls squarely within the scope of permissible testimony under Rule 702.

14    Motorola's proposed alternative, requiring lay jurors to sort through thousands of pages of

15    documents and prepare their own calculations, is unreasonable, unworkable, and inconsistent

16    with the letter and spirit of Rule 702. Nor would Menenberg's testimony regarding

17    Microsoft's attorneys' fees violate the "advocate witness rule," as Motorola claims. Experts

18    frequently rely upon documents and information supplied to them by counsel in preparing their

19    opinions. Indeed, in a case like this one, there is no other choice: Microsoft and its counsel are

20    clearly in the best position to identify the nature of the legal work that was performed, and its

21    connection to Motorola's breaching conduct. Menenberg is entitled to rely upon those

22    representations and information contained within written legal bills in calculating claimed

23    damages.

24    Microsoft has already proffered a fact witness—in-house counsel David Killough—

25    who testified at deposition regarding the methodology Microsoft used for identifying which

26

MICROSOFT'S OPPOSITION TO DEFENDANT'S
MOTION TO EXCLUDE AND STRIKE
TESTIMONY OF TODD MENENBERG - 2

1  attorneys' fees and costs are related to the damages claims asserted in this litigation.  If

2  Motorola somehow finds fault in that approach, Motorola is free to explore those matters

3  during cross-examination of Microsoft's witnesses.  Motorola's mere disagreement with

4  Microsoft's approach to calculating damages is not a basis for seeking a wholesale exclusion of

5  expert testimony.

6      Moreover, Motorola has not presented any tenable argument why Menenberg's

7  opinions regarding Microsoft's relocation expenses should be excluded.  To calculate these

8  damages, Menenberg reviewed numerous Microsoft agreements, invoices, and other financial

9  documents to calculate the damages resulting from the relocation.  In addition, Menenberg

10  calculated the difference in fixed and variable costs between the Netherlands and German

11  facilities.  Such calculations and opinions are well within scope of permissible opinion

12  testimony from an accounting expert.

13  **II.    ARGUMENT**

14      **A.  Menenberg's Opinions Are Proper Expert Testimony Based On Expert
           Knowledge And Will Assist The Jury.**

15

16      Expert testimony is admissible if it falls within the expert's scientific, technical, or

17  specialized knowledge and is helpful to the jury.  Fed. R. Evid. 702.  Menenberg's opinions are

18  based upon his expertise as an accountant and will assist the jury by preventing the untenable

19  situation where the jury would need to consider the same information that was supplied to

20  Menenberg but would then, on its own, have to segregate, compile and analyze underlying data

21  contained within thousands of pages of documents to calculate Microsoft's damages.

22      It is well-established that an accounting expert may quantify damages based on

23  mathematical calculation and analysis even where the calculations involve "an exercise in

24  basic math."  *WWP, Inc. v. Wounded Warriors Family Support, Inc.*, 628 F.3d 1032, 1040 (8th

25  Cir. 2011) (rejecting a challenge to an accounting experts testimony because "[t]here is not . . .

26  an implicit requirement in Fed. R. Evid. 702 for the proffered expert to make *complicated*

MICROSOFT'S OPPOSITION TO DEFENDANT'S
MOTION TO EXCLUDE AND STRIKE
TESTIMONY OF TODD MENENBERG - 3

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    mathematical calculations"). *See also James v. Fenske,* No. 10-CV-02591-WJM-CBS, 2012

2    WL 2923274, at *1 (D. Colo. July 18, 2012) (holding that testimony from plaintiff's damages

3    expert who "compiled three years of pay-related data from the plaintiffs" was admissible even

4    though the expert's mathematical calculations were not "conceptually difficult."). In

5    performing this type of analysis accountants routinely rely, "surely to no one's surprise, on the

6    books and records and financial information . . . provided." *Id.* (citations omitted). Here,

7    Menenberg analyzed law firm billing entries in bills and invoice printouts that include nearly

8    12,000 billing entries for Sidley Austin LLP alone. (Dkt. No. 734 Ex. A Menenberg Report

9    ("Menenberg Rpt.") 6–19); Wion Decl. Ex. 1, Excerpts of the June 20, 2013 Deposition of

10   Todd Menenberg ("Menenberg Dep.") 43:20–44:17, 51:22–53:22. He performed a review of

11   the entries and source documents for error and in some cases needed to convert entries from

12   foreign currency into U.S. dollars. Menenberg Rpt. 12, 13 n. 8, 14–15; Menenberg Dep.

13   43:20–44:17, 48:2–49:21.

14          Menenberg also segregated and separately analyzed the costs related to Microsoft's

15   relocation of the EMEA distribution center and calculated Microsoft's annual operating cost

16   damages over a two year period—a period which Menenberg selected as a reasonable and

17   conservative time frame in light of his accounting expertise. Menenberg Rpt. 19; Menenberg

18   Dep. 105:23–106:8, 141:18–142:8, 174:5–13. As Motorola concedes, "He had discussions

19   with counsel and Microsoft employees to ensure that he was satisfied with the documentary

20   back-up for each cost." Menenberg Mot. 4. *See* Menenberg Dep. 105:10–107:14. All of this

21   work enforces the reliability of Menenberg's testimony. *See Quad/Graphics, Inc. v. One2One*

22   *Commc'ns, LLC,* 09-CV-99-JPS, 2011 WL 4478440, at *3 (E.D. Wis. Sept. 23, 2011)

23   (testimony from accountant who "reviewed underlying documents for mathematical accuracy,

24   traced information to other documents including cost-sharing spreadsheets and invoices, and

25

26   MICROSOFT'S OPPOSITION TO DEFENDANT'S
     MOTION TO EXCLUDE AND STRIKE
     TESTIMONY OF TODD MENENBERG - 4

1   went over the materials with [client] officials" was admissible because it "provide[d] more

2   than a bottom-line conclusion parroted from numbers provided by [the client]").

3        To make his calculations and conclusions more readily understandable by the trier of

4   fact, Menenberg prepared a series of summary tables.  Menenberg Rpt. 6–7, 19–28.  Even

5   leaving aside the accounting expertise that Menenberg brings to bear, the tables are admissible

6   as summary evidence under the purpose and rationale of Fed. R. Evid. 1006 (summaries of

7   voluminous writings).  *See WWP*, 628 F.3d at 1040, citing *SEC v. Amazon Natural Treasures,*

8   *Inc.,* 132 Fed. App'x 701, 703 (9th Cir. 2005) (unpub. mem. op.).  *See also In re Nat'l*

9   *Consumer Mortgage, LLC*, 2:10-CV-00930-PMP, 2013 WL 164247, at *7 (D. Nev. Jan. 14,

10  2013) ("[I]f [expert's] charts and graphs are the result of 'simple math,' they would be

11  admissible as summary or calculation evidence as a compilation of [client's] source

12  materials.").

13       The limited authority Motorola cites attacking Menenberg's damages expert testimony

14  as improper is inapposite.  In *Schiller & Schmidt v. Nordisco Corp.*, 969 F.2d 410 (7th Cir.

15  1992), the court criticized an expert for overstating damages to include lost profits not

16  attributable to the defendant's conduct, but nonetheless upheld the award in district court based

17  in part on the expert opinion—it certainly did not hold that an accounting expert cannot offer

18  opinions based on mathematical calculations.  *See* 969 F.2d at 415.  The proffered expert in

19  *Shapiro v. Art Leather, Inc.*, 398 B.R. 564 (Bankr. E.D. Mich. 2008) performed none of the

20  analysis and verification for accuracy that Menenberg did here; rather, he merely added two

21  sets of numbers provided to him by a bankruptcy trustee, and then divided the totals to

22  calculate a percentage.  *See* 398 B.R. 564 at 576.  These two simple mathematical calculations

23  stand in stark contrast to the more than the tens of thousands of calculations Menenberg had to

24  perform to reach his conclusions—work that it would be wholly impractical for the jury to

25  perform on its own.

26

MICROSOFT'S OPPOSITION TO DEFENDANT'S
MOTION TO EXCLUDE AND STRIKE
TESTIMONY OF TODD MENENBERG - 5

Finally, *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052 (4th Cir. 1986) and *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, (2d Cir. 1989) are off-point.  In *Scott*, the court excluded expert testimony relating to contributory negligence as inconsistent with Virginia state law.  *See* 789 F.2d at 1055.  In *Andrews*, the court excluded expert testimony on whether a party acted reasonably by walking along train tracks while intoxicated after falling off a train platform, since a jury could itself determine whether the party's conduct was reasonable.  *See* 882 F.2d at 708.  Here, Menenberg's opinions fall well within his specialized technical knowledge, are consistent with the law, and will assist the jury in assessing Microsoft's damages.

Motorola's apparent proposal to have the jury analyze thousands of pages of source data and perform thousands of mathematical calculations itself (*see* Menenberg Mot. 9) is untenable and unreasonable.  Where a jury cannot effectively examine underlying data, perform calculations, and interpret the calculations, expert testimony is appropriate.  *See Scott v. City of Indianapolis*, 1:08-CV-0150-SEB-TAB, 2010 WL 1265990, at *3 (S.D. Ind. Mar. 25, 2010) ("It would be unreasonable to expect a lay jury to effectively examine the data contained in the Consent Decree reports, calculate the percentages, and interpret their meaning without the aid of a mathematical expert.").

Burdening the jury with reproducing Menenberg's analysis itself—even assuming it were able to do so—would waste time, delay the conclusion of trial, and increase the risk of inaccurate results.  The jury would need to duplicate the efforts of Menenberg and a support staff of ten, who spent more than a thousand hours analyzing the underlying data and preparing damage calculations.  Menenberg created an electronic system of data entry with double entry quality control, did reasonableness check that the time entires were properly included in the damages calculations, and consulted with Microsoft and its counsel regarding the relevant factual background.  Menenberg Rpt. 7; Menenberg Dep. 43:20–44:17.  After performing this

MICROSOFT'S OPPOSITION TO DEFENDANT'S
MOTION TO EXCLUDE AND STRIKE
TESTIMONY OF TODD MENENBERG - 6

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

work, Menenberg broke the costs down into summary charts that will be helpful to the jury.

Menenberg Report at 6–7, 19–28.  Motorola provides no reason why the jury should be

required to reinvent the wheel.

This Court's own experience in similar circumstances counsels strongly against

Motorola's plan to cut out Menenberg and have the jury reproduce the calculations itself:

> The court, however, observes that, rather than make an effort at trial to prove
> the amount of attorney's fees to which they are entitled, Plaintiffs have simply
> left the court to sift through hundreds of pages of highlighted invoices from the
> Hall Zanzig and Stoll Berne law firms dating from September 2007 through
> June 2009 (Ex. 41) as well as hundreds of pages of pleadings and transcripts
> from the Washington and Oregon lawsuits (see, e.g., Ex. A–30). Plaintiffs have
> not identified specific pleadings, hearings, or depositions that involved the
> "failure to withdraw" issue; nor have they interpreted the attorneys' notes on
> their invoices or explained how the attorneys' efforts, as reflected in the billing
> records, related to the potentially covered "failure to withdraw" claim.
> Nevertheless, the court concludes, following its review of the evidence, that
> Plaintiffs are entitled to reimbursement for a small portion of their claimed
> attorney's fees.

*Weinstein & Riley, P.S. v. Westport Ins. Corp.*, No. C08–1694 JLR, 2011 WL 887552, at *23

(W.D. Wash. March 14, 2011).  Menenberg's proposed testimony—supported by his

extensive, expert review of the highlighted and allocated invoices from Microsoft and its law

firms—provides the fact finder with exactly what the plaintiffs in *Weinstein & Riley* did not.

Motorola's attempt to prevent Microsoft's expert from offering this assistance to the Court and

jury should be rejected.

### B.  The Advocate Witness Rule Does Not Preclude Menenberg's Testimony

Motorola's attempt to exclude Menenberg's testimony on the basis of the "advocate

witness" rule likewise fails.  The advocate witness rule provides that "[a] lawyer shall not act

as advocate at a trial in which the lawyer is likely to be a necessary witness."  Wash. R.P.C.

3.7(a).  Because the rule (which incorporates the entirety of ABA Model Rule 3.7 and is

common across multiple jurisdictions) interferes with a party's right to choose an attorney,

courts are "very cautious" in applying it to restrict testimony.  *See Pesky v. United States*, CIV.

MICROSOFT'S OPPOSITION TO DEFENDANT'S
MOTION TO EXCLUDE AND STRIKE
TESTIMONY OF TODD MENENBERG - 7

1:10-186 WBS, 2011 WL 3204707, at *3 (D. Idaho July 26, 2011).  Due to the likelihood that

the rule could be "invoked for tactical advantage, delay, or other improper purposes," the party

invoking the rule bears the burden of showing "with specificity" that an attorney is "likely to

be a necessary witness" in the case.  *Kelly v. CSE Safeguard Ins. Co.*, No. 2:08–cv–00088–

KJD–RJJ, 2010 WL 3613872, at *2 (D. Nev. Sept. 8, 2010), citing *Macheca Transp. Co. v.

Phila. Indem. Ins. Co*., 463 F.3d 827, 833 (8th Cir. 2006).  Motorola cannot demonstrate that

the rule remotely counsels excluding Menenberg's testimony in this case.

As a threshold matter, Menenberg's testimony does not even implicate the advocate

witness rule because Sidley attorney Ellen Robbins—whose involvement in reviewing Sidley

invoices is what Motorola apparently objects to—is not "likely to be a necessary witness" in

this case.  *See* Wash. R.P.C. 3.7(a).  For a lawyer to be "necessary" for the purposes of Rule

3.7, her testimony must be "relevant, material, and unobtainable elsewhere."  *Rothberg v.

Cincinnati Ins. Co.*, No. 1:06-CV-111, 2008 WL 2401190, at *2 (E.D. Tenn. June 11, 2008).

This high standard requires showing that an attorney's testimony would be "strictly

necessary"—the fact that potential testimony from counsel would be relevant, or even "highly

useful" is not enough.  *Machea Transp. Co*., 463 F.3d at 833; *Droste v. Julien*, 477 F.3d 1030,

1035 n. 7 (8th Cir. 2007) ("[A]n attorney is a necessary witness only if there are things to

which he [or she] will be the only one available to testify.") (quotation marks omitted).  An

attorney is not a necessary witness "if other witnesses can testify to matters within his [or her]

knowledge."  *Rothberg*, 2008 WL 2401190, at *2; *accord United States v. Starnes*, No. 04-

60137, 157 Fed. App'x 687, 693–94 (5th Cir. 2005) ("A lawyer is not 'likely to be a necessary

witness' when evidence pertaining to each matter to which he could testify is available from

another source.").

Motorola alleges that testimony from Robbins might be relevant to Menenberg's

testimony because she was involved in assigning the allocations reflected on some of the

MICROSOFT'S OPPOSITION TO DEFENDANT'S
MOTION TO EXCLUDE AND STRIKE
TESTIMONY OF TODD MENENBERG - 8

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   Sidley invoices that Menenberg reviewed in order to reflect time entries where the task related

2   to both Motorola's standard-essential patents and non-standard-essential patents—*e.g.,* time

3   entries relating to the ITC 752 investigation where Motorola asserted 4 SEPs and one non-SEP.

4   Menenberg Mot. 11.  But Motorola never sought to depose Robbins, and does not even attempt

5   "to show that there is any disputed material fact that can only be proved with [her] testimony."

6   *Carta ex rel. Estate of Carta v. Lumbermens Mut. Cas. Co.*, 419 F. Supp. 2d 23, 29 (D. Mass.

7   2006) (citation omitted).  No such showing is possible, because David Killough—Microsoft's

8   in-house counsel who supervises all of the litigation between Microsoft and Motorola and who

9   dictated the allocation methodologies Robbins employed—testified as to the basis for the

10   allocations to which Motorola points.  *See, e.g.*, Wion Decl. Ex. 2, Excerpts of the May 6, 2013

11   Deposition of David Killough at 82–84, 86–95, 118–120.  Motorola deposed Killough and

12   asked him questions regarding the fee allocations, and Microsoft has disclosed Killough as a

13   trial witness.  And Menenberg testified that he understood the allocation methodology and

14   determined that it was reasonable.  Menenberg Dep.  57:16–59:7, 60:20–61:15.

15        Even if the advocate witness rule were relevant here, there is an exception for

16   "testimony [that] relates to the nature and value of legal services."  Wash. R.P.C. 3.7(a)(2);

17   *Aecon Bldgs., Inc. v. Zurich N. Am.*, No. C07-832MJP, 2008 WL 2940599, at *2 (W.D. Wash.

18   July 24, 2008) (holding that testimony from counsel regarding "the nature and values of the

19   fees his firm charged in [an] underlying matter" was exempted by Rule 3.7(a)(2)); *In re Duke*

20   *Investments, Ltd.*, 454 B.R. 414, 424 n. 4 (Bankr. S.D. Tex. 2011) (holding that the exception

21   applied to potential testimony by counsel who compiled the amount of attorney fees sought in

22   a proof of claim); *National Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F. Supp. 276,

23   280 (S.D.N.Y. 1996) (holding that an attorney's proffered testimony about "attorneys' fees and

24   costs incurred and paid" by the client in two separate insurance actions "fall[s] squarely"

25   within the exception).  Motorola's argument that the allocations fall outside of the exception

26

MICROSOFT'S OPPOSITION TO DEFENDANT'S
MOTION TO EXCLUDE AND STRIKE
TESTIMONY OF TODD MENENBERG - 9

because they were connected to the question of proximate causation, Menenberg Mot. 11, makes no sense.  Whether the work was performed in response to Motorola's assertion of standard-essential patents is absolutely a question of the "nature" of the legal services.

### C.  Menenberg's Reliance On Data Provided By Sidley And Microsoft Is Both Proper And Commonplace.

The facts and data upon which experts base their opinion "do not have to be personally known" to them; instead the data may be "made known to [them] by presentation outside of court and other than by [their] own perception."  *Huezo v. Los Angeles Cmty. Coll. Dist.*, No. CV 04-9772 MMM(JWJX), 2007 WL 7289347, at *2 n.18 (C.D. Cal. Feb. 27, 2007) (holding that an expert's report, "which relie[d] in part on 'facts and data' gathered by [the expert's] associates as well as on information provided by plaintiff's counsel, is competent expert testimony"); *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1142 (9th Cir. 1997) ("The fact that [a proffered expert's] opinions are based on data collected by others is immaterial.").  This is true regardless of whether the source of the expert's data is "the client, other experts, or counsel."  *Inline Connection Corp. v. AOL Time Warner, Inc.*, 470 F. Supp. 2d 435, 443 (D.Del. Jan. 23, 2007); *EEOC v. AutoZone, Inc.*, No. 00-2923 MA/A, 2005 WL 3591641, at *5 (W.D. Tenn. Dec. 29, 2005) (expert testimony in an employment case was admissible where the expert relied on the defendant's Employer Information Report classifications).

Accordingly, it is entirely proper for Menenberg to rely on the information about the nature of Sidley's legal services to Microsoft provided by Sidley and Microsoft.  Testifying experts rely on the kinds of facts or data that an expert in the field would reasonably use.  Fed. R. Evid. 703.  Invoices prepared by a party and counsel are the most common evidence relied upon by experts and courts in calculating the award of reasonable fees.  *See, e.g., Mathis v. Exxon Corp.*, 302 F.3d 448, 462 (5th Cir. 2002) (district court did not abuse its discretion in awarding fees based on affidavits by lead counsel and an attorney fees expert); *Schafler v.*

MICROSOFT'S OPPOSITION TO DEFENDANT'S
MOTION TO EXCLUDE AND STRIKE
TESTIMONY OF TODD MENENBERG - 10

1   *Fairway Park Condo. Ass'n*, 324 F. Supp. 2d 1302, 1310 (S.D. Fla. 2004) ("[A]ttorney fee

2   awards are generally based on affidavits and billing records."); *see also CDW LLC v. NETech*

3   *Corp.,* 906 F. Supp. 2d 815, 822-823 (S.D. Ind. 2012) (finding that a damages expert had not

4   impermissibly "parroted" plaintiff's views when the expert relied on plaintiff to "accurately

5   compile from [its] accounting system the revenue attributable only to [certain] products and

6   services.").[2]  Damages experts are routinely permitted to testify about calculations they made

7   based on financial information that was provided by the party that retained them.  *See Platypus*

8   *Wear, Inc. v. Clarke Modet & Co., Inc.,* No. 06-20976-CIV, 2008 WL 4533914, at *5  (S.D.

9   Fla. Oct. 7, 2008) (holding that damages calculation by plaintiff's expert was admissible when

10  expert performed "pure economic calculations" based on plaintiff's income ledgers and

11  forecast sales); *Great N. Storehouse, Inc. v. Peerless Ins. Co.,* No. CIV. 00-7-B, 2000 WL

12  1900299, at *2 (D. Me. Dec. 29, 2000) (holding that testimony by plaintiff's expert who relied

13  on financial figures provided by plaintiff to calculate damages total was admissible); *Deghand*

14  *v. Wal-Mart Stores,* 980 F. Supp. 1176, 1180-1181 (D. Kan. 1997) (holding that testimony

15  from plaintiff's expert who calculated loss of employment damages based on wage and time

16  data provided by counsel was admissible).

17          Insofar as Motorola alleges a handful of computational errors in the allocation of fees,[3]

18  minor errors do not warrant the wholesale exclusion of an expert.  The fact that Menenberg

19

20      [2] The two cases Motorola cites are distinguishable because there was substantial extrinsic evidence that the
    information provided by counsel was inaccurate or misleading.  *See Rojas v. Marko Zaninovich, Inc.*, No. 1:09-
21  CV-00705 AWI, 2011 WL 4375297, at *4 (E.D. Cal. Sept. 19, 2011) (excluding expert testimony when the expert
    relied on a clearly incorrect interpretation of the defendant's pay code system that had been provided by plaintiffs'
22  counsel); *Johnson v. Big Lots Stores, Inc.*, No. 04-3201, 2008 WL 1930681, at *15 (E.D. La. April 29, 2008)
    (finding flaws in proffered expert's survey data that were "legion and cumulative," including that counsel
23  handpicked what was found to be a wholly inadequate number of survey subjects and also that he engaged in
    improper contact with the interviewees).  Neither opinion held that expert testimony should be excluded merely
24  because the expert relied on information provided by a party or counsel, and Motorola does not identify any
    evidence that the Sidley invoices contained "legion and cumulative" errors, or that Menenberg interpreted them
    incorrectly.

25      [3] Microsoft seeks reimbursement as damages from Motorola amounts reflected by approximately 11,705 Sidley
    Austin billing entries.  Motorola has identified fewer than ten errors in the allocation/color coding process.

26  MICROSOFT'S OPPOSITION TO DEFENDANT'S
    MOTION TO EXCLUDE AND STRIKE
    TESTIMONY OF TODD MENENBERG - 11

searched for the existence of any errors in the documentation that was provided and made

adjustments to his calculations illustrates that Menenberg did not simply parrot Microsoft's

views.  Moreover, Motorola's criticisms of the data Menenberg used go at most to the weight

of his testimony, not its admissibility.  *See Primrose Operating Co. v. Nat'l Am. Ins. Co*., 382

F.3d 546, 562 (5th Cir. 2004) (holding that allegations that the data relied on by an attorney

fees expert did not clearly demarcate fees attributable to a specific defendant were not grounds

for exclusion, but were for the jury to consider).  *See also Khadera v. ABM Indus. Inc.*, No.

C08-0417RSM, 2011 WL 6813454, at *3 (W.D. Wash. Dec. 28, 2011) (claimed "weaknesses

in the factual basis of an expert witness' opinion" go to the weight of the evidence, not its

admissibility); *CDW LLC*, 906 F. Supp. 2d at 823 (alleged inaccuracies in plaintiff's compiling

of revenue data for use by expert witness were "matters for cross-examination"); *United States

v. Davis*, 826 F.Supp. 617, 624 (D.R.I. 1993) (criticisms "as to minor errors and methodology"

of expert report "do not impugn [its] overall reliability;" concerns may be addressed at trial by

attacking the weight of the evidence).  Even if Motorola were correct that Microsoft and Sidley

made a very small number of clerical errors in the allocation process, Menenberg's testimony

is still admissible evidence on which the jury may base a damages award including attorney's

fees.  *See, e.g., In re Bailey*, 451 B.R. 640, 646 (Bankr. S.D. Ga. 2011) (awarding fees based

on testimony from an expert who reviewed time records provided by counsel subject to a

computational error that the court corrected).

      Finally, the allocation methodology was applied only to certain Sidley time entries

where the task related to Motorola's assertion of both SEPs and non-SEPs.  No allocations

were done on any of the invoices from Microsoft's other four law firms:  Calfo Harrigan Leyh

& Eakes LLP, Boehmert & Boehmert, Freshfields Bruckhaus Deringer, and Klarquist

Sparkman LLP.  There is absolutely no basis to exclude Menenberg's opinions with respect to

MICROSOFT'S OPPOSITION TO DEFENDANT'S
MOTION TO EXCLUDE AND STRIKE
TESTIMONY OF TODD MENENBERG - 12

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    Microsoft's claimed damages relating to attorneys' fees from these firms or from the non-

2    allocated Sidley time entries.

### D.    There is No Basis to Preclude Menenberg's Testimony on Damages Relating to Microsoft's Relocation of its Distribution Facility.

Motorola has not presented any legitimate basis to preclude Menenberg's opinions regarding Microsoft's relocation-related damages.  To calculate these damages, Menenberg and his staff reviewed hundreds of invoices, interviewed Microsoft personnel, calculcated exchange rates, and compared fixed and variable costs between the facilities – the type of work damages experts routinely perform in preparing damages calculations.  And in calculating the relocation damages, Menenberg did not rely upon work performed by counsel.  Accordingly, there are no grounds to exclude Menenberg's testimony relating to Microsoft's relocation damages.

### E.   Motorola's Request for a Preclusion Order is Premature.

Finally, Motorola makes a blanket request that the Court preclude Menenberg from offering opinions that are not stated in his expert report—specifically, opinions that Microsoft's claim for attorney's fees is reasonable and that Motorola's alleged conduct caused Microsoft to relocate its EMEA distribution facility.  Menenberg Mot. 12.  As a threshold matter, Menenberg's report does not need to include verbatim what he might say on the stand in response to questions that may be asked at trial.  *See, e.g., Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir. 2009) ("The purpose of these reports is not to replicate every word that the expert might say on the stand.  It is instead to convey the substance of the expert's opinion (along with the other background information required by Rule 26(a)(2)(B) so that the opponent will be ready to rebut, cross-examine, and to offer a competing expert if necessary.").  Rule 26(a)(2)(B) "does not limit an expert's testimony simply to reading his report.  No language in the rule would suggest such a limitation.  The rule contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report."

MICROSOFT'S OPPOSITION TO DEFENDANT'S
MOTION TO EXCLUDE AND STRIKE
TESTIMONY OF TODD MENENBERG - 13

1    *Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006).  Thus, it would be

2    premature for the Court to prohibit Menenberg from testifying about subject matters that

3    Motorola may choose to broach on cross-examination.  *See Therasense, Inc. v. Becton,*

4    *Dickinson & Co.*, 2008 WL 2037732 at *5 (N.D. Cal. 2008) ("If opposing counsel, however,

5    "opens the door" on cross examination, however, then the expert may address issues beyond

6    those in the report.").  Indeed, the testimony cited in Motorola's motion was elicited in

7    response to Motorola's own inquiries.  *E.g.*, Menenberg Dep. 61:2–24 ("I don't state that in the

8    report, but you asked my opinion whether I think [Microsoft's methodology for calculating

9    fees] is reasonable.  I think it's a reasonable approach.").

10   **III.    CONCLUSION**

11        For the foregoing reasons, Motorola's motion to exclude and strike Menenberg's

12   testimony should be denied.

13        DATED this 12th day of July, 2013.

14                                          CALFO HARRIGAN LEYH & EAKES LLP

15

16                                          By ____s/Arthur W. Harrigan, Jr._____
                                               Arthur W. Harrigan, Jr., WSBA #1751
17
                                            By ____s/Christopher Wion_____
18                                             Christopher Wion, WSBA #33207

19                                          By ____s/Shane P. Cramer_____
                                               Shane P. Cramer, WSBA #35099
20                                             999 Third Avenue, Suite 4400
                                               Seattle, WA  98104
21                                             Phone:  206-623-1700
                                               arthurh@calfoharrigan.com
22                                             chrisw@calfoharrigan.com
                                               shanec@calfoharrigan.com
23

24

25                                          By ____s/T. Andrew Culbert_____
                                               T. Andrew Culbert
26

MICROSOFT'S OPPOSITION TO DEFENDANT'S
MOTION TO EXCLUDE AND STRIKE
TESTIMONY OF TODD MENENBERG - 14

By _____s/David E. Killough_____

David E. Killough

MICROSOFT CORPORATION
1 Microsoft Way
Redmond, WA  98052
Phone:  425-882-8080
Fax: 425-869-1327

David T. Pritikin
Richard A. Cederoth
Constantine L. Trela, Jr.
William H. Baumgartner, Jr.
Ellen S. Robbins
Douglas I. Lewis
David C. Giardina
John W. McBride
Nathaniel C. Love

SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL  60603
Phone:  312-853-7000
Fax:  312-853-7036

Carter G. Phillips
Brian R. Nester

SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC  20005
Telephone:  202-736-8000
Fax:  202-736-8711

Counsel for Microsoft Corp.

MICROSOFT'S OPPOSITION TO DEFENDANT'S
MOTION TO EXCLUDE AND STRIKE
TESTIMONY OF TODD MENENBERG - 15

**CERTIFICATE OF SERVICE**

I, Florine Fujita, swear under penalty of perjury under the laws of the State of

Washington to the following:

1.      I am over the age of 21 and not a party to this action.

2.      On the 12th day of July, 2013, I caused the preceding document to be served on

counsel of record in the following manner:

**Attorneys for Motorola Solutions, Inc., and Motorola Mobility, Inc.:**

Ralph Palumbo, WSBA #04751
Philip S. McCune, WSBA #21081                        _____ Messenger
Lynn M. Engel, WSBA #21934                           _____ US Mail
Summit Law Group                                     _____ Facsimile
315 Fifth Ave. South, Suite 1000                     ___X___ ECF
Seattle, WA  98104-2682
Telephone:  206-676-7000
Email:  Summit1823@summitlaw.com


Steven Pepe (*pro hac vice*)                         _____ Messenger
Jesse J. Jenner (*pro hac vice*)                     _____ US Mail
Ropes & Gray LLP                                     _____ Facsimile
1211 Avenue of the Americas                          ___X___ ECF
New York, NY  10036-8704
Telephone:  (212) 596-9046
Email:  steven.pepe@ropesgray.com
Email:  jesse.jenner@ropesgray.com


Norman H. Beamer (*pro hac vice*)                    _____ Messenger
Ropes & Gray LLP                                     _____ US Mail
1900 University Avenue, 6th Floor                    _____ Facsimile
East Palo Alto, CA  94303-2284                       ___X___ ECF
Telephone:  (650) 617-4030
Email:  norman.beamer@ropesgray.com

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Paul M. Schoenhard (*pro hac vice*)          _____ Messenger
Ropes & Gray LLP                              _____ US Mail
One Metro Center                              _____ Facsimile
700 12th Street NW, Suite 900                    X    ECF
Washington, DC  20005-3948
Telephone:  (202) 508-4693
Email: Paul.schoenhard@ropesgray.com


Andrea Pallios Roberts (*pro hac vice*)       _____ Messenger
Brian C. Cannon (*pro hac vice*)              _____ US Mail
Quinn Emanuel Urquhart & Sullivan, LLP        _____ Facsimile
555 Twin Dolphin Drive, 5th Floor                X    ECF
Redwood Shores, CA 94065
Telephone:  (650) 801-5000
Email: andreaproberts@quinnemanuel.com
Email: briancannon@quinnemanuel.com


Kathleen M. Sullivan (*pro hac vice*)         _____ Messenger
David Elihu (*pro hac vice*)                  _____ US Mail
Quinn Emanuel Urquhart & Sullivan, LLP        _____ Facsimile
51 Madison Ave., 22nd Floor                      X    ECF
New York, NY 10010
Telephone:  (212) 849-7000
Email: kathleensullivan@quinnemanuel.com


William Price (*pro hac vice*)                _____ Messenger
Quinn Emanuel Urquhart & Sullivan, LLP        _____ US Mail
865 S. Figuera St., 10th Floor                _____ Facsimile
Los Angeles, CA 90017                            X    ECF
Telephone:  (212) 443-3000
Email: williamprice@quinnemanuel.com
MicrosoftvMotoBreachofRANDCase@quinnemanuel.com

    DATED this 12th day of July, 2013.



                  s/  Florine Fujita
                  FLORINE FUJITA

MICROSOFT'S OPPOSITION TO DEFENDANT'S
MOTION TO EXCLUDE AND STRIKE
TESTIMONY OF TODD MENENBERG - 17

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717