# EXHIBIT 2

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation, | ) ) ) |
| Plaintiff, | ) ) ) No. 2-10-cv- |
| vs. | ) 01823-JLR ) |
| MOTOROLA, INC., and MOTOROLA MOBILITY, INC., | ) ) ) |
| Defendants. | ) |

VIDEOTAPED 30(b)(6) DEPOSITION OF DAVID KILLOUGH

May 6, 2013

Job No. CS1661676     Seattle, Washington

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

82

1  A   The invoices would reflect that on a line item basis.
2  Q   And would those be the invoices from Sidley and from
3      the Calfo Harrigan law firm?
4  A   From -- you know, from -- from any firm that we're
5      seeking recovery for with respect to that action.
6  Q   Okay.  And I think --
7  A   Those would --
8  Q   -- you previously testified that those are the two
9      firms that have worked on the 1823 action?
10 A   Certainly --
11 Q   Is that correct?
12 A   Certainly would be the principal ones.
13         Possible Klarquist did some, but I don't remember
14     them doing anything.  But it's possible.  It would
15     have been minor.
16 Q   Has Microsoft calculated the total amount of costs it
17     has incurred in the 1823 action and is seeking to
18     recover from Motorola?
19 A   I don't know that that's been done separately from
20     what Microsoft is seeking to recover with respect to
21     other actions.
22 Q   And is there a way that -- you referenced that -- let
23     me start over.
24         You previously testified that Microsoft is
25     seeking to recover the fees associated with

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

83

1 seeking -- seeking the anti- -- anti-suit injunction
2 in the 1823 action.
3     Is -- in terms of costs, can you describe for me
4 what costs or categories of costs that Microsoft is
5 seeking to recover from Motorola?
6 A It would -- would be the same general breakdown.
7     To the extent that a cost could be attributed to
8 the anti-suit injunction part of it, then that would
9 be included.
10     And to the extent that a cost was associated
11 with defending against a standard-essential patent
12 asserted by Motorola, then that would be included in
13 what we seek recovery for.
14 Q What documents reflect the amount of costs that
15 Microsoft is seeking to recover from Motorola in
16 connection with -- in connection with litigating the
17 1823 action?
18 A I would look to the invoices if I were trying to
19 figure that out.
20 Q And when you refer to "invoices," are you referring
21 to the law firm invoices?
22 A Correct.
23 Q Are there any costs that Microsoft incurred that were
24 not billed through the law firms?
25     So, for example, was Microsoft billed directly

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

84

1       for any --
2   A   Yes.
3   Q   -- such costs?
4   A   Yes.
5   Q   Do you know what costs those are?
6   A   They were court reporter costs.  There's document
7       management/processing costs.  There are contract
8       attorney document review type costs.
9           And I'm not talking about any specific --
10      specific action, but sort of across these actions.
11          Those are the general things.  And there would
12      be, in fact, very large amounts of money in various
13      of those categories.
14  Q   And where would one look to determine what those
15      costs were?
16  A   One would look at the -- the invoices, you know, to
17      the extent they reflect that.  It might not all be on
18      the invoices you've received, since we're not seeking
19      to recover for that, even though it was expended.
20  Q   Okay.
21  A   For example, I think if you -- if you looked at
22      invoices, you'll see Lighthouse, which is kind of a
23      document management service that generates .tiffs,
24      you know, stores documents and things related to
25      litigation.  There would be lots and lots of entries

86

1  seeking to recover those costs from Motorola here.
2              MS. ROBERTS:  Okay.  Well, let's
3  take a look -- I'll pull out the spreadsheets so we
4  can actually make sure we're talking about the same
5  documents.
6     I'm just going to go ahead and have these four
7  documents labeled at the same time.
8     The next exhibit is Exhibit 5?  Correct?
9     So we'll mark, as Exhibit 5, the document with a
10 Bates number MS-MOTO_1823_0006004032.
11                       (Exhibit No. 5 marked
12                        for identification.)
13
14             MS. ROBERTS:  Next, we'll mark as
15 Exhibit 6, a document Bates-labeled
16 MS-MOTO_1823_0006004033.
17                       (Exhibit No. 6 marked
18                        for identification.)
19
20             MS. ROBERTS:  We will mark, as
21 Exhibit 7, a document labeled
22 MS-MOTO_1823_0006004036.
23                       (Exhibit No. 7 marked
24                        for identification.)
25 ////

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

87

1   　　　　　　　　MS. ROBERTS:  And finally, we
2   will -- sorry, ready? -- we will mark, as Exhibit 8,
3   a document labeled MS-MOTO_1823_0006003986.
4   　　　　　　　　　　(Exhibit No. 8 marked
5   　　　　　　　　　　for identification.)
6
7   Q   (By Ms. Roberts)  So, first of all, with respect to
8   　　 Exhibits 5, 6, 7, and 8, they look similar.
9   　　　　 Are these all the same type of document?
10  A   Yes.
11  Q   Okay.  Let's focus first on Exhibit 5.  Can you tell
12  　　 me what this document reflects?
13  A   This is a copy of an Excel spreadsheet printout
14  　　 that's just an extraction of invoices, an invoice
15  　　 list for a particular Microsoft versus Motorola
16  　　 matter, internal at Microsoft.
17  　　　　 This is out of the -- unless I'm mistaken, all of
18  　　 these are just printed directly out of the T360 tool
19  　　 or with -- you know, with aid of it.
20  Q   Does Exhibit 5 reflect costs related to a particular
21  　　 matter?
22  A   You know, it -- it may.  Let's see.
23  　　　　 You know, I could match it up against -- you
24  　　 know, could -- you know, the -- in the Column A, the
25  　　 numbers, those are invoice numbers.  So if I looked

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

88

1 at one of the invoices, I probably would be able to
2 put two and two together better to see what
3 particular internal Microsoft matter this -- this one
4 related to.
5 Q  Do you know who created this spreadsheet?
6 A  I think it was either me or a Microsoft paralegal
7    would have created these spreadsheets, Exhibits 5
8    through 8.
9 Q  And what was input into the T360 tool to tell it to
10   generate this particular spreadsheet that is Exhibit
11   5?
12 A  The way I would do it -- and I can't speak for the
13   way the paralegal would have gone about it -- I would
14   pull up a particular matter, internal Microsoft
15   matter that I was interested in, I would click on a
16   category for invoices from a pull-down menu, and then
17   I would be presented on the screen with the list of
18   invoice numbers and vendors; essentially what you see
19   on Exhibit 5.
20       And then it would give me a choice, when
21   presented with that list, to export it to an Excel
22   format.  And then if I pushed the button to export it
23   to the Excel format, it would then generate, you
24   know, the same information in Excel spreadsheet.
25       And at that point, you could either hit "print"

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

89

1     or, you know, copy it as an attachment and send it to
2     whoever you wanted to send it to.
3         I think I -- in the instances where I did it, I
4     think I either sent it directly to outside counsel or
5     my paralegal or both.  But that's it.
6         So it's -- it's simply the invoice list for the
7     matter presented by the system when one requests the
8     list, but not otherwise edited and not otherwise
9     selected for what is or isn't going to be on there.
10     It's just, that's what you're presented with and
11     that's what we see on these sheets.
12 Q   Okay.  And do you know if you personally exported the
13     spreadsheet that's reflected in Exhibit 5?
14 A   I don't know whether I did or my paralegal from --
15     you know, I can't remember exactly which of us did
16     this particular one.
17 Q   And so are you certain that Exhibit 5 reflects fees
18     and costs associated with the litigation between
19     Microsoft and Motorola?
20 A   I'm confident that it -- that this is one of the
21     Microsoft/Motorola matters and that this is a listing
22     of, you know, the invoices for that particular
23     internal Microsoft matter, and that it lists the
24     vendors who billed Microsoft directly, you know, and
25     the amounts of the invoices and whether or not they

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

90

1      were paid.
2  Q   But you don't know specifically which Microsoft
3      versus Motorola matter Exhibit 5 relates to; is that
4      correct?
5  A   I -- I don't off the top of my head, but I believe I
6      could certainly figure it out.
7  Q   How would you do that?  I mean, would you have to go
8      back to the system to do that?
9  A   No.  No.  I -- you know, to the extent we have any of
10     these invoices, I -- I could probably take a look at
11     the invoices to determine that.
12                    MS. ROBBINS:  Could I suggest that
13     we go off the record for one minute?
14                    MS. ROBERTS:  Sure.
15                    THE VIDEOGRAPHER:  One second.
16     We are going off record.  The time is 11:40.
17                         (Discussion off the record.)
18
19                    THE VIDEOGRAPHER:  We are back on
20     record.  The time is 11:41.
21 Q   (By Ms. Roberts)  Mr. Killough, looking at Exhibit 5,
22     there are entries for Klarquist Sparkman and Sidley
23     Austin.
24        Do you see that?
25 A   I do.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

91

1 Q   Would the amounts that Microsoft is seeking to
2     recover for fees and costs incurred via those two law
3     firms, would those be reflected in the invoices from
4     those two firms produced by Microsoft in this case,
5     as opposed to this spreadsheet?
6 A   The amounts that Microsoft is seeking to recover
7     would be reflected on the invoices. And then one
8     would consult one of these spreadsheets, like Exhibit
9     5, to make sure that that particular invoice was
10    paid.
11        And if it indicated on Exhibit 5, for example,
12    that that particular invoice was paid, then that's,
13    you know, what I would look to in the ordinary course
14    of business at Microsoft to determine whether or not
15    we had paid an invoice or not.
16 Q  Okay. Now, FTI Consulting is listed here. And
17    earlier, you -- you stated that there are some
18    vendors who bill -- bill Microsoft directly rather
19    than billing the law firm.
20        Is FTI Consulting one of them?
21 A   You know, FTI Consulting does bill Microsoft
22    directly.
23        I can't say for a hundred percent certain that
24    they never bill a law firm for something, but, you
25    know, Exhibit 5 shows the directly billings from FTI

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

92

1     Consulting to Microsoft either for expert work,
2     expert consulting work, or for graphics type work or,
3     you know, hot-seat-at-trial work.  FTI does those
4     kinds of things for Microsoft as well.
5 Q  And is Microsoft seeking to recover costs incurred --
6     let me restate.
7        Is Microsoft seeking to recover the amounts it
8     has paid to FTI Consulting in connection with the
9     litigations listed on Pages 6 and 7 of Exhibit 2?
10 A  Not, for example, the particular line items on
11     Exhibit 5.
12 Q  So I guess rather going -- rather than going through
13     each entry on Exhibits 5 through 8, I'm trying to get
14     an understanding of what additional invoices, in
15     addition to the law firm invoices that have been
16     produced, that I would look to to see the amounts of
17     costs Microsoft is claiming from Motorola in this
18     litigation.
19        Are there any others, or is it all covered by the
20     law firm invoices?
21 A  If you're talking about costs Microsoft is seeking to
22     recover for, it would be covered by the law firm
23     invoices.  You know, if you were interested in the
24     amounts that, you know, Microsoft isn't seeking to
25     cover -- recovery for, then there would be other

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

93

1 places one would look, you know.
2 But if you wanted just some examples, some
3 examples would be like the FTI on this particular
4 spreadsheet, you know, or Navigant or Cliff Reader or
5 other things on some of these other spreadsheets
6 that we're not seeking recovery for or ultimately
7 looking at their invoices --
8 Q Okay.
9 A -- but those would all be in the category of things
10 Microsoft is not seeking to recover for.
11 Q And how did Microsoft decide what it is seeking to
12 recover and what it's not seeking to recover in terms
13 of costs?
14 A Well, the -- the general umbrella for everything,
15 like, Microsoft is seeking to recover for is anything
16 that, in Microsoft's view, it was required to expend
17 in order to defend itself against Motorola's claims
18 on standard-essential patents.
19 So that's -- that's the umbrella category of
20 everything that's in. But there are certainly, you
21 know, many particular items that Microsoft is --
22 that -- that were incurred by Microsoft to defend
23 against Motorola's claims on standard-essential
24 patents that Microsoft isn't seeking to recover for,
25 whether because, for particular vendors, they were

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

94

1  small amounts or whether they're simply the
2  difficulty of allocating a particular invoice -- a
3  particular vendor's invoices, you know, to things
4  that were in that category versus not in that
5  category.
6      And, you know, rather than do the allocation, we
7  just didn't claim for particular vendors.
8  Q  Is Microsoft seeking to recover expert fees incurred
9     in -- in connection with the litigations listed on
10    Page -- Pages 6 and 7 of Exhibit 2?
11 A  If we are, they would be reflected on the law firm
12    invoices.  So any -- any expert that was billing us
13    directly for the work -- for example, if someone was
14    an expert in defending against H.264 patents and he
15    billed Microsoft directly, then we would not be
16    seeking recovery for that, even though it falls
17    within the general category of amounts expended by
18    Microsoft to defend against claims by Motorola on
19    standard-essential patents.
20 Q  Okay.  If you could turn to Exhibit 6, and I'm just
21    going to ask you about a couple of the vendors.
22 A  Okay.
23 Q  What work -- what is Cliff Reader?
24 A  That is an expert that is working for Microsoft.
25 Q  Okay.  Navigant Economics.  You mentioned them

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

95

1 earlier. They're doing expert work; is that correct?
2 A They've done a variety of expert work, right, that
3 related to the Motorola matters.
4 Q The second page of Exhibit 6 lists Salmons
5 Consulting?
6 A Right.
7 Q Who are they?
8 A That is a -- you know, witness consulting/jury
9 consulting type outfit.
10 Q On the last page of Exhibit 6, there's a Chicago
11 Winter Company?
12 A Right. That's a graphics vendor or, you know,
13 consultant.
14 Q Okay. And so for Cliff Reader, Navigant, Salmons
15 Consulting, and Chicago Winter Company, to the extent
16 they billed Microsoft directly, Microsoft is not
17 seeking to recover those costs from Motorola in this
18 case; is that correct?
19 A That's right.
20 Q Okay. Okay. Exhibit 7 appears to only list law
21 firms.
22     Exhibit 8 lists Hudson Global Resources.
23 A Right.
24 Q Do you know who they are?
25 A Right. That is a contract attorney outfit that

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

118

1 redacted stamps, so you don't see it here. But as
2 mechanically, yes, it was getting billed to that
3 matter.
4 Q The way you would have received it those couple of
5 years ago, it would have been included in the same
6 matter; right?
7 A Right.
8 Q So we discussed that there are some entries in
9 Exhibit 11 that are highlighted yellow. I'm
10 wondering if you could walk me through the color
11 coding that was applied to the Sidley invoices and
12 explain the methodology -- methodology to me.
13 A Right. Again, the -- the overall intent was to just
14 seek recovery for amounts that were incurred in
15 defense against Motorola's claims on its declared
16 essential patents. And for using the ITC 752 case as
17 an example, there were, in that case, four patents
18 that Motorola was asserting against standard-
19 essential implementations and then one that wasn't.
20 So there was a four-to-one split.
21     And I see an entry, for example, on Exhibit 11
22 that says "Review Motorola's ITC complaint." Okay?
23 Which was reviewing the entire complaint which
24 related to five patents, four of which were standard
25 essential, which resulted then in an 80 percent

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

119

1     allocation for that particular entry and it's
2     indicated in yellow.
3 Q   And so for that particular entry, I think -- are you
4     looking at one of the ones on November 22nd, 2010?
5 A   Right.
6 Q   So we'll take the very first one for JL Secord.
7     Am I understanding you correctly that Microsoft
8     is going to be seeking to recover 80 percent of
9     the .5 hours that Mr. or Ms. Secord billed on that
10    particular task?
11 A  Correct.
12 Q  So if you could tell me how -- how the various
13    different percentages reflected in the color
14    coding -- how Microsoft got to each one.
15 A  Yeah.  There -- there are certainly some broad
16    categories.  I think the broadest one is probably,
17    you know, the yellow one that -- that reflects the --
18    something that was done that was spread across all
19    five patents and, therefore, is allocated for, you
20    know, 80 percent, because there's four out of five
21    are standard-essential patents.
22     And so you'll probably see a lot of yellow in
23    here.  I haven't studied it to see that, but that's
24    my best guess.
25     And then at a point in time where one of

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

120

1 Motorola's patents would be essentially withdrawn, at
2 the point where Motorola filed a motion to terminate
3 in the ITC as to a particular patent or patents, then
4 it's obviously no longer in play. So after the point
5 of the motion to terminate by Motorola as to that
6 patent, then the allocation would change.
7 And I think there were two instances where they
8 dropped patents, and they dropped two each time. So
9 that would affect, again, an allocation for a general
10 activity that was spread across all patents at issue.
11 But if it occurred -- if it occurred after the date,
12 for example, that the -- a motion to terminate had
13 been filed by Motorola as to those patents, then
14 those would be off the table and it would change the
15 allocation.
16 And so those are some of the principles.
17 Now, some -- some of the allocations could be
18 much more fact-specific based on a particular time
19 entry, because if one could tell from the particular
20 time entry that, you know, it related to, you know, a
21 more refined allocation, if the entry was such that
22 it allowed you to allocate with a better fine point
23 than four to one, then that finer allocation would be
24 applied.
25 Q But if the entry did not have the detail that would

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
1    STATE OF WASHINGTON  )     I, Karmen M. Knudson, CCR, RPR, CRR,
                          ) ss  a certified court reporter in
2    County of Pierce     )     the State of Washington, do hereby
                                certify:
3

4
             That the foregoing deposition of DAVID KILLOUGH
5    was taken before me and completed on May 6, 2013, and
     thereafter was transcribed under my direction; that the
6    deposition is a full, true and complete transcript of the
     testimony of said witness, including all questions, answers,
7    objections, motions and exceptions;

8            That the witness, before examination, was by me
     duly sworn to testify the truth, the whole truth, and
9    nothing but the truth, and that the witness reserved the
     right of signature;
10
             That I am not a relative, employee, attorney or
11   counsel of any party to this action or relative or employee
     of any such attorney or counsel and that I am not
12   financially interested in the said action or the outcome
     thereof;
13
             That I am herewith securely sealing the said
14   deposition and promptly delivering the same to
     Attorney Andrea Pallios Roberts.
15
             IN WITNESS WHEREOF, I have hereunto set my
16   signature on May 13, 2013.

17

18

19

20

21

22                          _____
                            Karmen M. Knudson, CCR, RPR, CRR
23                          Certified Court Reporter No. 1935.

24

25
```