# EXHIBIT 1

# In The Matter Of:

## MICROSOFT CORPORATION
## v.
## MOTOROLA INC., et al.

_____

## MAXIMILIAN HAEDICKE - Vol. 1
### June 14, 2013

_____

**MERRILL CORPORATION**

**LegaLink, Inc.**

135 Main Street
4th Floor
San Francisco, CA 94105
Phone: 415.357.4300
Fax: 415.357.4301

| | | |
|---|---|---|
| 1 | you expect that they would enter into a license and | 09:21:50 |
| 2 | dismiss the case? | 09:21:52 |
| 3 |    A   Depends if they also agree on the other issues | 09:21:53 |
| 4 | which are involved in License Agreement.  The license | 09:21:57 |
| 5 | fee is one of the important aspects, but there are other | 09:22:01 |
| 6 | aspects which also have to be covered, and they will | 09:22:07 |
| 7 | only have a full-fledged and valid contract if they | 09:22:10 |
| 8 | agreed on all essential elements of the contract, and | 09:22:13 |
| 9 | only then will they dismiss the case, or would they | 09:22:16 |
| 10 | make -- would they render the case moot. | 09:22:20 |
| 11 |    Q   Let's suppose that the parties do not agree on | 09:22:22 |
| 12 | a license fee. | 09:22:25 |
| 13 |    Does the Orange Book decision say that the | 09:22:26 |
| 14 | defendant must use the second alternative option of | 09:22:30 |
| 15 | letting the patent holder set the royalty? | 09:22:34 |
| 16 |    A   Please repeat the question. | 09:22:35 |
| 17 |    Q   If the parties do not agree on a license fee -- | 09:22:37 |
| 18 |    A   Yes. | 09:22:40 |
| 19 |    Q   -- does the Orange Book decision say that the | 09:22:40 |
| 20 | defendant must use the second option of allowing the | 09:22:43 |
| 21 | patent holder to set the royalty? | 09:22:47 |
| 22 |    A   They have the option.  They do not -- they | 09:22:48 |
| 23 | must -- they have the option to do it. | 09:22:53 |
| 24 |    Q   Let's talk about a proceeding in which the | 09:22:55 |
| 25 | court -- a court exams the royalty that has been set by | 09:22:58 |

| | | |
|---|---|---|
| 1 | a patent holder through the alternative procedure. | 09:23:03 |
| 2 | What evidence is considered in a proceeding | 09:23:05 |
| 3 | like that? | 09:23:07 |
| 4 | MS. BERRY:  Objection -- | 09:23:09 |
| 5 | THE WITNESS:  This is -- | 09:23:09 |
| 6 | MS. BERRY:  -- lack of foundation. | 09:23:11 |
| 7 | THE WITNESS:  -- this is speculative because | 09:23:11 |
| 8 | I'm not aware of any rate setting procedures which have | 09:23:16 |
| 9 | been brought to my attention.  I have not taken part in | 09:23:19 |
| 10 | any of those, so, of course, I cannot know the details, | 09:23:23 |
| 11 | and I can only speculate, but my speculation would be | 09:23:26 |
| 12 | that the parties will determine the rate according to | 09:23:30 |
| 13 | the -- the standards which are used also when it comes | 09:23:35 |
| 14 | to the determination of license fees; for example, when | 09:23:39 |
| 15 | it's about damages or in cases like this.  So I would | 09:23:42 |
| 16 | assume that similar standards would be applied. | 09:23:46 |
| 17 | BY MR. LOVE: | 09:23:50 |
| 18 | Q   And I think we discussed this earlier, so | 09:23:52 |
| 19 | correct me if I'm wrong, but the standard used to | 09:23:54 |
| 20 | evaluate the rate in that proceeding would be whether | 09:23:56 |
| 21 | the rate was within the limits set by antitrust law; is | 09:23:59 |
| 22 | that correct? | 09:24:03 |
| 23 | A   Yes. | 09:24:03 |
| 24 | Q   What happens if the rate set by the patent | 09:24:03 |
| 25 | holder does not meet that standard? | 09:24:08 |

MAXIMILIAN HAEDICKE – 6/14/2013

| | | | |
|---|---|---|---|
| 1 | A | In 315 procedure? | 09:24:09 |
| 2 | Q | Yes. | 09:24:14 |
| 3 | A | What happens if -- | 09:24:14 |
| 4 | Q | What happens if the court determines that the | 09:24:16 |

5    rate set by the patent holder is not within the limits    09:24:19

6    of antitrust law; what will the court do?    09:24:22

7        A    Then a -- a lower rate will be set, which is    09:24:25

8    still in the limits.  The court will control the offer    09:24:30

9    which has been given by the patent holder, if there is    09:24:36

10    such an offer, and will determine whether this is within    09:24:42

11    the boundaries of antitrust law, and if not, the rate    09:24:45

12    will be set according to antitrust law and the other    09:24:49

13    important laws which come into play.    09:24:55

14        Q    Does the license seeker have to pay the rate    09:24:58

15    that was set by the patent holder until the court rules?    09:25:01

16        A    Payment means transfer of funds to the -- to    09:25:03

17    the licensor?  No.  He has to escrow money, as much --    09:25:10

18    as much money as he deems appropriate.  If he wants to    09:25:15

19    be on the absolutely safe side, he may depose estimate    09:25:21

20    escrow as much money as the patent holder has demanded,    09:25:26

21    but as I said before, of course, if he thinks this is    09:25:30

22    too much, he has the option to go below the rate    09:25:34

23    demanded by the patent holder and let this rate be    09:25:41

24    reviewed, and, of course -- yeah, so.    09:25:44

25        Q    Do you know how long a proceeding -- a court    09:25:47

MAXIMILIAN HAEDICKE – 6/14/2013

| | | |
|---|---|---|
| 1 | proceeding under Section 315 to evaluate a patent | 09:25:52 |
| 2 | holder's royalty rate takes? | 09:25:55 |
| 3 |    A   This is pure speculation because I'm not -- I'm | 09:25:56 |
| 4 | not -- these have not taken place, as far as my | 09:26:00 |
| 5 | knowledge is concerned.  I could only guess. | 09:26:02 |
| 6 |    Q   So have there been any reported German | 09:26:04 |
| 7 | decisions that you are aware of that hold that the rate | 09:26:07 |
| 8 | set by a patent holder under the alternative Orange Book | 09:26:10 |
| 9 | process is acceptable? | 09:26:13 |
| 10 |    A   As there are no reported 315 procedures, I'm | 09:26:14 |
| 11 | not aware of that -- | 09:26:18 |
| 12 |       (Telephonic interruption.) | 09:26:18 |
| 13 |       MR. LOVE:  I'll -- I'll ask again just so we | 09:26:27 |
| 14 | have a clear question and answer. | 09:26:29 |
| 15 |    Q   As far as you are aware, there are no reported | 09:26:30 |
| 16 | German decisions showing this second alternative Orange | 09:26:32 |
| 17 | Book procedure? | 09:26:36 |
| 18 |    A   The rate setting, the second -- the rate | 09:26:36 |
| 19 | setting -- | 09:26:38 |
| 20 |    Q   Yes. | 09:26:40 |
| 21 |    A   -- lawsuit?  No, the rate has not been | 09:26:40 |
| 22 | reported. | 09:26:44 |
| 23 |    Q   So we believe -- you believe that the standard | 09:26:44 |
| 24 | that a court would apply in that proceeding is | 09:26:47 |
| 25 | whether -- is -- is to set a royalty within the limits | 09:26:50 |

MAXIMILIAN HAEDICKE – 6/14/2013

Page 25

```
 1    of antitrust law; correct?                          09:26:52
 2         A   Yes.                                        09:26:54
 3         Q   But we don't know for sure because there are no   09:26:55
 4    decisions?                                           09:26:58
 5             MS. BERRY:  Objection; form.                09:26:59
 6             THE WITNESS:  Purely speculating.  I wouldn't   09:27:01
 7    see any other standards which might be reasonable.  I   09:27:05
 8    wouldn't see any of those standards could come into   09:27:07
 9    play, so it's not a -- yeah, I do not only believe it,   09:27:11
10    there are strong arguments for that.                 09:27:14
11    BY MR. LOVE:                                         09:27:15
12         Q   Suppose that a patent holder rejected an Orange   09:27:16
13    Book offer that a license seeker had made and that   09:27:20
14    later --                                             09:27:24
15         A   Who was?                                    09:27:25
16         Q   Sure.  Let me start again.                  09:27:26
17             So we are talking about the first Orange Book,   09:27:27
18    not the alternative procedure, but the straightforward   09:27:31
19    Orange Book offer.                                   09:27:33
20         A   Yes.                                        09:27:34
21         Q   So suppose a patent holder rejects an Orange   09:27:34
22    Book offer and then a German court finds that the   09:27:38
23    royalty offer was so high that that rejection was an   09:27:41
24    abuse of antitrust law.                              09:27:43
25         A   Yes.                                        09:27:43
```

| | | |
|---|---|---|
| 1 | BY MR. LOVE: | 09:51:26 |
| 2 | Q  Which is higher, an offer for which the | 09:51:27 |
| 3 | rejection would be a violation of antitrust law or an | 09:51:30 |
| 4 | offer for which the rejection would be an obvious | 09:51:34 |
| 5 | violation of antitrust law? | 09:51:37 |
| 6 | MS. BERRY:  Objection; form. | 09:51:38 |
| 7 | THE WITNESS:  I would say it's the same.  It's | 09:51:39 |
| 8 | just a question of the standard of how you evaluate the | 09:51:44 |
| 9 | facts.  Obvious in the sense of you apply a standard of | 09:51:47 |
| 10 | review which does not go into all details. | 09:51:54 |
| 11 | BY MR. LOVE: | 09:51:58 |
| 12 | Q  Would you agree that the standard for | 09:51:59 |
| 13 | evaluating an offer under the Orange Book procedure is | 09:52:01 |
| 14 | uncertain in German law? | 09:52:04 |
| 15 | A  I wouldn't agree.  There's a very clear-cut | 09:52:05 |
| 16 | procedure which has been developed by the German Federal | 09:52:09 |
| 17 | Supreme Court and has been further clarified by the | 09:52:14 |
| 18 | lower courts. | 09:52:16 |
| 19 | Q  We were discussing the second alternative | 09:52:16 |
| 20 | procedure -- | 09:52:19 |
| 21 | A  Yes. | 09:52:19 |
| 22 | Q  -- and you said there are no reported decisions | 09:52:19 |
| 23 | explaining how the second alternative procedure works; | 09:52:22 |
| 24 | correct? | 09:52:26 |
| 25 | A  I said there's none been reported, apart from | 09:52:26 |

| | |
|---|---|
| 1 | the one which I mentioned where -- where -- which it has | 09:52:30 |
| 2 | worked and where we have -- where the -- the 315 way has | 09:52:35 |
| 3 | been successfully taken, the one which I already mention | 09:52:38 |
| 4 | in my report, of course, but, yeah. | 09:52:41 |
| 5 | Q    Which proceeding is that? | 09:52:44 |
| 6 | A    This is the -- | 09:52:47 |
| 7 | MS. BERRY:  Objection; form. | 09:52:51 |
| 8 | THE WITNESS:  This is a proceeding -- can I -- | 09:52:51 |
| 9 | can I look at my report?  I can give you the numbers? | 09:52:54 |
| 10 | MR. LOVE:  Maybe I'll ask you that later. | 09:52:57 |
| 11 | Q    Would you agree that the Germany district | 09:52:59 |
| 12 | courts have introduced additional constraints into the | 09:53:01 |
| 13 | Orange Book procedure that require additional | 09:53:04 |
| 14 | concessions from defendants? | 09:53:06 |
| 15 | MS. BERRY:  Objection; form. | 09:53:09 |
| 16 | THE WITNESS:  They have clarified the road. | 09:53:09 |
| 17 | BY MR. LOVE: | 09:53:15 |
| 18 | Q    Have any of those clarifications been favorable | 09:53:15 |
| 19 | to the license seeker? | 09:53:18 |
| 20 | A    No.  No.  No. | 09:53:19 |
| 21 | Q    Can an accused infringer contest infringement | 09:53:25 |
| 22 | while making an Orange Book offer? | 09:53:29 |
| 23 | A    Not -- you could do it before, but you cannot | 09:53:31 |
| 24 | do it while he makes this offer, yes. | 09:53:38 |
| 25 | Q    Is it favorable for the patent holder to | 09:53:40 |

| | |
|---|---|
| 1 | require the license seeker to drop its non-infringement | 09:53:42 |
| 2 | defenses? | 09:53:46 |
| 3 | MS. BERRY:  Objection; form. | 09:53:46 |
| 4 | THE WITNESS:  Is it favorable to? | 09:53:46 |
| 5 | BY MR. LOVE: | 09:53:48 |
| 6 | Q   Is it favorable to the patent holder to require | 09:53:48 |
| 7 | the license seeker to drop all of its non-infringement | 09:53:51 |
| 8 | defenses? | 09:53:54 |
| 9 | A   It's favorable.  It's perfectly legitimate for | 09:53:57 |
| 10 | the holder of exclusive right to only license or to only | 09:53:59 |
| 11 | negotiate with people who don't want to attack his | 09:54:04 |
| 12 | right, but it's certainly favorable, yes. | 09:54:07 |
| 13 | Q   Here in Seattle, in this case, Judge Robart | 09:54:10 |
| 14 | found that the RAND royalty for Motorola's worldwide | 09:54:20 |
| 15 | H.264 portfolio with respect to Microsoft's products was | 09:54:24 |
| 16 | 0.555 cents per unit. | 09:54:28 |
| 17 | Were you aware of that? | 09:54:30 |
| 18 | A   No. | 09:54:31 |
| 19 | Q   Do you have any basis to disagree with that | 09:54:31 |
| 20 | finding? | 09:54:34 |
| 21 | A   I have no facts whatsoever either to disagree | 09:54:35 |
| 22 | or to agree.  I have no opinion on that. | 09:54:37 |
| 23 | Q   Since you weren't aware of it, I'll assume the | 09:54:40 |
| 24 | answer is no, but I'm going to ask anyway. | 09:54:48 |
| 25 | Do you understand that Judge Robart found that | 09:54:51 |

MAXIMILIAN HAEDICKE - 6/14/2013

Page 53

```
 1    eurocent?                                             10:00:29
 2           MS. BERRY:  Objection; form.                   10:00:29
 3           THE WITNESS:  I'm not -- I'm not -- I have no   10:00:30
 4    opinion on that as I don't know the details.          10:00:33
 5    BY MR. LOVE:                                           10:00:35
 6       Q   Microsoft's Orange Book offer that was rejected 10:00:36
 7    was 2 eurocents, so if Microsoft had offered half a   10:00:38
 8    eurocent, would it have been able to avoid an         10:00:43
 9    injunction?                                           10:00:45
10       A   If it's less than what has been given here,    10:00:45
11    it's rather unlikely.                                 10:00:49
12       Q   Rather unlikely, or no?                        10:00:50
13       A   If it's lower than what has been -- well, the  10:00:52
14    court said -- the Mannheim Court said what has been   10:00:56
15    offered is so low that the rejection is not -- is not a 10:00:59
16    breach of antitrust law as it is conceivable that the 10:01:06
17    rate has to be higher.                                10:01:12
18           So if the rate would have been lower, it is -- 10:01:15
19    I cannot second-guess what the court would have said, 10:01:20
20    but it's -- it's pure logic that if it's lower, I assume 10:01:23
21    that also the same standard would have been applied, and 10:01:25
22    the same standard would have taught that the rejection 10:01:28
23    of such an offer is a violation of European antitrust 10:01:32
24    law.                                                  10:01:36
25       Q   If Microsoft had escrowed a sufficient amount  10:01:36
```

MAXIMILIAN HAEDICKE – 6/14/2013

| | | |
|---|---|---|
| 1 | of money and had allowed Motorola or the German Court to | 10:01:39 |
| 2 | decide about an equitable license fee, would Microsoft | 10:01:43 |
| 3 | have been enjoined? | 10:01:47 |
| 4 | A   If it had followed the second procedure, the | 10:01:48 |
| 5 | 315 procedure, it would have not been enjoined. | 10:01:53 |
| 6 | Q   How much money would have been sufficient for | 10:01:55 |
| 7 | Microsoft to avoid an injunction? | 10:01:57 |
| 8 | MS. BERRY:  Objection; form. | 10:02:00 |
| 9 | THE WITNESS:  As this is a difficult | 10:02:00 |
| 10 | evaluation, taking into account all specifics of the | 10:02:03 |
| 11 | case, I'm not able to give you any -- any numbers there. | 10:02:06 |
| 12 | MR. LOVE:  We have been going for about an | 10:02:10 |
| 13 | hour.  Why don't we take a break. | 10:02:11 |
| 14 | THE VIDEOGRAPHER:  Off the record at 10:01. | 10:02:13 |
| 15 | (Recess taken.) | 10:02:14 |
| 16 | THE VIDEOGRAPHER:  Back on the record at 10:20. | 10:21:01 |
| 17 | BY MR. LOVE: | 10:21:03 |
| 18 | Q   Before we took a break, I had asked you a | 10:21:04 |
| 19 | question earlier about if the parties in a German patent | 10:21:05 |
| 20 | infringement suit agree on a license fee, and I was | 10:21:09 |
| 21 | asking you what they would do, and I don't want to | 10:21:11 |
| 22 | restate your testimony, but part of your response, as I | 10:21:15 |
| 23 | understood it, was, there are other terms besides a | 10:21:17 |
| 24 | license fee that the parties would need to agree on. | 10:21:23 |
| 25 | Do you remember this question? | 10:21:26 |

MAXIMILIAN HAEDICKE - 6/14/2013

Page 56

```
 1    be license fee, the license product, a rendering of    10:22:53

 2    account, if the -- the -- the patent as been made use of 10:22:57

 3    before, so these are the elements which have been --     10:23:04

 4    have been decided about by the court.  If further issues  10:23:08

 5    have to be included in such a License Agreement or not    10:23:12

 6    is pure speculation, I have no opinion on that.          10:23:18

 7        Q    Okay.  Let's go back to what happened in        10:23:20

 8    Mannheim.                                                10:23:34

 9            If Microsoft had followed the second            10:23:34

10    alternative of the Orange Book procedure, Motorola would 10:23:34

11    have set a higher royalty than the 1 to 2 eurocents that 10:23:35

12    Microsoft had offered; correct?                         10:23:38

13            MS. BERRY:  Objection; form.                    10:23:41

14            THE WITNESS:  I have no opinion on that.         10:23:41

15    BY MR. LOVE:                                             10:23:43

16        Q    Why would Motorola have set a lower royalty?   10:23:43

17        A    I am not aware of -- the business evaluations,  10:23:45

18    which are behind such an offer, are not -- have not come 10:23:50

19    to my attention.  I -- I can only speculate, but, of    10:23:54

20    course, we can assume that.                             10:23:58

21        Q    If Microsoft had challenged the rate set by    10:24:00

22    Motorola by bringing a separate proceeding later and the 10:24:03

23    court set the royalty, the royalty set by the court     10:24:07

24    would also be higher than a -- than the 1 to 2 eurocents 10:24:10

25    that Microsoft had offered; correct?                    10:24:15
```

| | | |
|---|---|---|
| 1 | MS. BERRY:  Objection; form. | 10:24:16 |
| 2 | THE WITNESS:  This is -- this is speculation | 10:24:17 |
| 3 | because you apply a different standard of -- there of | 10:24:21 |
| 4 | assessing the -- the license fee, and as you hear | 10:24:26 |
| 5 | evidence and as further circumstances will be looked | 10:24:32 |
| 6 | upon and be considered by the court, it -- it's just a | 10:24:38 |
| 7 | different way of assessing.  It can be that it's higher. | 10:24:43 |
| 8 | It can even be -- if the evidence is such that points in | 10:24:46 |
| 9 | this direction might even be lower.  It's just a new | 10:24:53 |
| 10 | story then, and it will be assessed independently, and | 10:24:56 |
| 11 | the court will -- will find what is the adequate and -- | 10:24:59 |
| 12 | and FRAND and entered as conformed license fee.  It can | 10:25:04 |
| 13 | be higher.  It could even be lower.  It can be the same. | 10:25:07 |
| 14 | I -- I cannot say.  This is speculation.  But, again, | 10:25:11 |
| 15 | the -- the standards, which are used to determine the | 10:25:15 |
| 16 | license fee, they are the relevant thing, and they take | 10:25:17 |
| 17 | into account the standards.  This might lead to one -- | 10:25:22 |
| 18 | to one result or to the other. | 10:25:25 |
| 19 | BY MR. LOVE: | 10:25:27 |
| 20 | Q   When we talked earlier about the second | 10:25:31 |
| 21 | alternative, I thought I understood your position to be | 10:25:34 |
| 22 | that the same standard would be used to evaluate and | 10:25:38 |
| 23 | determine a correct license fee.  It's a license fee | 10:25:43 |
| 24 | that is not objectionable -- | 10:25:46 |
| 25 | A   Yes. | 10:25:46 |

MAXIMILIAN HAEDICKE – 6/14/2013

Page 58

```
 1        Q    -- under antitrust laws.                  10:25:47

 2        A    Yes.                                       10:25:49

 3        Q    So if the court is setting a royalty, it's 10:25:49

 4   going to set a royalty that is not objectionable under 10:25:52

 5   antitrust law; correct?                              10:25:56

 6        A    Yes.                                       10:25:57

 7        Q    The Mannheim Court said that Motorola's   10:25:57

 8   rejection of the 1-to-2-eurocent offer was not       10:26:04

 9   objectionable under antitrust law; right?            10:26:08

10        A    Can you repeat, please.                   10:26:12

11        Q    Sure.                                      10:26:13

12             Microsoft offered 1 to 2 eurocents.  Motorola 10:26:14

13   rejected it, and the Mannheim Court said that rejection 10:26:19

14   did not violate antitrust law.                       10:26:23

15        A    Yes, that's correct.                       10:26:24

16        Q    But you said just now that in a later      10:26:25

17   proceeding, if a court is setting the rate, it might set 10:26:28

18   a rate lower than what Microsoft offered.            10:26:32

19        A    It's -- it's speculation, and it also is a 10:26:37

20   question of the German law of civil procedure and    10:26:39

21   evidence.  You know, in the -- in the first proceeding 10:26:44

22   the courts will also assess what has been written in the 10:26:46

23   briefs without taking evidence, and so they will make 10:26:49

24   their -- they will form their opinion on what has been 10:26:52

25   written and submitted by the parties.                10:26:55
```

MAXIMILIAN HAEDICKE – 6/14/2013

Page 59

| | |
|---|---|
| 1 | In a second -- the second case of the rate | 10:26:58 |
| 2 | setting procedure, all evidence, all economic | 10:27:02 |
| 3 | specialists may or may not be presented to the court, | 10:27:07 |
| 4 | and the court will just have a very different basis to | 10:27:12 |
| 5 | found its -- its -- for founding its opinion -- for | 10:27:16 |
| 6 | forming its opinion, and it's -- it is possible that | 10:27:20 |
| 7 | it's higher.  It is maybe, well, possible, but it's | 10:27:25 |
| 8 | speculation, but as there is another -- different | 10:27:28 |
| 9 | standard of how the facts are evaluated, it may even be | 10:27:32 |
| 10 | lower, but, again, this is pure speculation. | 10:27:35 |
| 11 | The only thing I want to say, this is a | 10:27:38 |
| 12 | completely new story where all facts are assessed newly, | 10:27:41 |
| 13 | and then the court will -- will find it -- will have its | 10:27:46 |
| 14 | decision -- will render its decision on the basis of the | 10:27:50 |
| 15 | facts which it has evaluated according to the law of | 10:27:55 |
| 16 | civil procedure in this second proceeding. | 10:27:58 |
| 17 | Q  So the court, in the second proceeding, would | 10:28:01 |
| 18 | apply the same standard, but it might reach a different | 10:28:04 |
| 19 | result because it considers more evidence; is that | 10:28:07 |
| 20 | correct? | 10:28:11 |
| 21 | A  It's just a different standard of review, a | 10:28:11 |
| 22 | different standard of review of the first -- the review | 10:28:13 |
| 23 | you have in your first -- in the first -- in the first | 10:28:16 |
| 24 | road, that it's the -- the question whether or not it is | 10:28:21 |
| 25 | obvious.  So the idea is you have a -- you look into the | 10:28:26 |

1    briefs, you evaluate what the parties have said, and you    10:28:30

2    form your opinion by not going into -- especially by not    10:28:33

3    taking evidence, so this is maybe specific to German    10:28:39

4    law.    10:28:42

5            In the second proceeding, the proceeding will    10:28:42

6    be a full-fledged proceeding, and the full-fledged    10:28:45

7    proceeding will be more facts; more evidence will be    10:28:49

8    assessed.  For example, if you take a preliminary    10:28:51

9    injunction, you also have a different standard of -- of    10:28:54

10   evidence, which is lower than in -- in a full    10:28:59

11   proceeding.  And so it's just a different way of    10:29:04

12   assessing facts and -- and hearing evidence or not    10:29:06

13   hearing evidence.    10:29:12

14      Q   So I want to make sure I understand your    10:29:13

15   position on what would have happened under the Orange    10:29:19

16   Book.  So this will be sort of a long question.  I'll    10:29:21

17   ask you a couple things, and just stop me if anything    10:29:24

18   doesn't make sense.    10:29:27

19           Under the Orange Book procedure, as I    10:29:27

20   understand it, there are three paths for Microsoft to    10:29:29

21   avoid an injunction by agreeing to pay a royalty.    10:29:32

22           First, Microsoft could have made an Orange Book    10:29:36

23   offer that Motorola accepted; correct?    10:29:38

24           Second, Microsoft could have let Motorola set a    10:29:42

25   royalty; correct?    10:29:44

MAXIMILIAN HAEDICKE – 6/14/2013

Page 61

| # | | | |
|---|---|---|---|
| 1 | A | Yes. | 10:29:47 |
| 2 | Q | And last, Microsoft could have challenged the | 10:29:47 |
| 3 | | rate that was set by Motorola, in which case a court, in | 10:29:51 |
| 4 | | a separate proceeding, may set a different royalty; | 10:29:53 |
| 5 | | correct? | 10:29:57 |
| 6 | A | Can you repeat the question? | 10:29:57 |
| 7 | Q | Sure. | 10:30:00 |
| 8 | | So the -- the third path -- | 10:30:01 |
| 9 | A | Yes. | 10:30:01 |
| 10 | Q | -- would be Motorola sets a royalty.  Microsoft | 10:30:03 |
| 11 | | challenges the royalty in a separate proceeding, and as | 10:30:06 |
| 12 | | part of that proceeding, the court finds that Motorola's | 10:30:09 |
| 13 | | royalty is -- is too high and sets a -- sets the royalty | 10:30:12 |
| 14 | | itself. | 10:30:17 |
| 15 | A | That's correct. | 10:30:18 |
| 16 | | MS. BERRY:  Objection to form. | 10:30:19 |
| 17 | BY MR. LOVE: | | 10:30:20 |
| 18 | Q | For the first option, if Microsoft made an | 10:30:21 |
| 19 | | Orange Book offer, you don't know what Mo- -- what offer | 10:30:22 |
| 20 | | Motorola would have accepted; correct? | 10:30:27 |
| 21 | A | Pure speculation. | 10:30:28 |
| 22 | Q | For the second option, you don't know what | 10:30:29 |
| 23 | | royalty Motorola would have set, do you? | 10:30:32 |
| 24 | A | Of course not, no. | 10:30:35 |
| 25 | Q | And on the third option, you don't know what | 10:30:37 |

MAXIMILIAN HAEDICKE – 6/14/2013

Page 62

```
 1    royalty a court would set?                              10:30:40
 2         A   I can only say what the basis for a court      10:30:44
 3    decision would be.  But as I don't know all the relevant 10:30:47
 4    facts and as I didn't hear all the evidence, which would 10:30:50
 5    come into play, of course I cannot give a -- give you a  10:30:52
 6    number, certainly not.                                  10:30:56
 7         Q   So in November of 2012, there was a trial, as  10:30:57
 8    part of this case, to determine a RAND royalty for      10:31:01
 9    Motorola's patents.                                     10:31:04
10             Are you aware of that?                         10:31:06
11         A   No.                                            10:31:06
12             MS. BERRY:  Objection; form.                   10:31:07
13    BY MR. LOVE:                                            10:31:07
14         Q   So I'll represent to you that at that trial,   10:31:10
15    there was expert testimony from technical experts and   10:31:15
16    economic experts about the appropriate RAND royalty, but 10:31:18
17    you haven't reviewed the transcript of that trial;      10:31:22
18    correct?                                                10:31:25
19         A   No, I haven't reviewed it.                     10:31:25
20         Q   So you don't know whether the evidence         10:31:26
21    presented in the November 2000 trial -- 2012 trial in   10:31:29
22    this case was in any way comparable to the evidence that 10:31:31
23    would be considered by a German court that was setting a 10:31:35
24    royalty?                                                10:31:39
25         A   I have no opinion on that.                     10:31:39
```

MAXIMILIAN HAEDICKE – 6/14/2013

| | | |
|---|---|---|
| 1 | MS. BERRY:  Counsel, it's been about an hour, | 11:14:06 |
| 2 | when you have a good time for a break. | 11:14:08 |
| 3 | MR. LOVE:  Sure, we can take a break. | 11:14:10 |
| 4 | THE VIDEOGRAPHER:  This concludes Video 2, | 11:14:12 |
| 5 | Volume 1 in the deposition of Maximilian Haedicke. | 11:14:14 |
| 6 | Going off the record, the time is 11:14. | 11:14:19 |
| 7 | (Recess taken.) | 11:15:50 |
| 8 | THE VIDEOGRAPHER:  This begins Video 2, | 11:37:31 |
| 9 | Volume 1 in the deposition of Maximilian Haedicke. | 11:37:32 |
| 10 | Going back on the record, it's 11:37. | 11:37:35 |
| 11 | BY MR. LOVE: | 11:37:37 |
| 12 | Q   You are a judge in the patent division of the | 11:37:41 |
| 13 | Dusseldorf Court of Appeals; is that correct? | 11:37:43 |
| 14 | A   Yes. | 11:37:45 |
| 15 | Q   What is the relationship between that court and | 11:37:45 |
| 16 | the Regional Court of Dusseldorf? | 11:37:48 |
| 17 | A   It's the Court of Appeal for the Regional | 11:37:51 |
| 18 | Court. | 11:37:54 |
| 19 | Q   Okay. | 11:37:54 |
| 20 | (Exhibit 6 was marked for identification by the | 11:37:57 |
| 21 | Court Reporter.) | 11:37:57 |
| 22 | MR. LOVE:  I've marked, as Exhibit 6, a | 11:37:58 |
| 23 | translation of a March 21st, 2013 decision for the | 11:37:59 |
| 24 | Regional Court of Dusseldorf. | 11:38:09 |
| 25 | Q   Are you familiar with this decision? | 11:38:11 |

MAXIMILIAN HAEDICKE – 6/14/2013

| | | | |
|---|---|---|---|
| 1 | A | Yes. | 11:38:13 |
| 2 | Q | Have you read it before? | 11:38:13 |
| 3 | A | Yes. | 11:38:15 |
| 4 | Q | On the first few pages, there are some | 11:38:15 |
| 5 | | questions that are numbered 1 through 5. | 11:38:19 |
| 6 | A | Yes. | 11:38:22 |
| 7 | Q | These are questions that the Dusseldorf court | 11:38:22 |
| 8 | | is submitting to the European Court of Justice; is that | 11:38:25 |
| 9 | | correct? | 11:38:28 |
| 10 | A | Yes. | 11:38:28 |
| 11 | Q | Why is a German court asking the European Court | 11:38:28 |
| 12 | | of Justices what to do about standard essential patents? | 11:38:31 |
| 13 | A | Because this is a matter of European law, and | 11:38:34 |
| 14 | | if a German court applies European law, such as European | 11:38:43 |
| 15 | | antitrust law, it is obliged to -- to do this in | 11:38:47 |
| 16 | | accordance with European law, and so if a German court | 11:38:54 |
| 17 | | does -- has doubts as to how to interpret European | 11:38:58 |
| 18 | | antitrust law, it can -- or the highest instance is | 11:39:03 |
| 19 | | obliged to ask for a preliminary judgment of the | 11:39:09 |
| 20 | | European Court of Justice, so the European Court of | 11:39:12 |
| 21 | | Justices can give guidance as to how to interpret a -- a | 11:39:19 |
| 22 | | provision of European law. | 11:39:23 |
| 23 | Q | Let's take a look at Question 1.  So at the -- | 11:39:25 |
| 24 | | it's on the first page, and what the court asks is, "Is | 11:39:29 |
| 25 | | the holder of a standard-essential patent who has | 11:39:32 |

MAXIMILIAN HAEDICKE – 6/14/2013

Page 98

```
 1    declared to a standardization organization his        11:39:34
 2    willingness to grant a license to any third party under 11:39:37
 3    fair, reasonable, and non-discriminatory terms abusing  11:39:40
 4    his dominant position if he brings an injunction claim  11:39:42
 5    in court against a patent infringer even though the     11:39:45
 6    patent infringer has declared his willingness to        11:39:48
 7    negotiate such a license," then there's an "or," and the 11:39:51
 8    second part is, "is an abuse of the dominant position to 11:39:55
 9    be assumed only if the patent infringer has presented   11:39:58
10    the holder of the standard-essential patent an          11:40:02
11    acceptable unconditional offer to enter into a license  11:40:04
12    agreement, which the patent holder may not refuse       11:40:08
13    without unfairly impeding the patent infringer or       11:40:10
14    violating the ban on discrimination, and the patent     11:40:12
15    infringer is satisfying his contractual obligations in  11:40:15
16    anticipation of the license to be granted for prior     11:40:18
17    use?"                                                   11:40:21
18            Did you see that?                               11:40:21
19    A   Yes.                                                11:40:22
20        Q   Is it correct that what the Dusseldorf court is 11:40:22
21    asking is whether the proper analysis is that set forth 11:40:29
22    by the European Commission which involves a willing     11:40:33
23    licensee, or is the Orange Book process satisfactory?   11:40:37
24    Is that what this question is asking?                   11:40:41
25        A   Basically, yes.  However, if you read the      11:40:42
```

MAXIMILIAN HAEDICKE – 6/14/2013

| | |
|---|---|
| 1   context and the entire judgment, the entire judgment | 11:40:46 |
| 2   here, there's a clear bias of the Dusseldorf court in | 11:40:52 |
| 3   order -- in favor of the Orange Book proceeding, and | 11:40:58 |
| 4   this questions are -- are asked in order to pose -- to | 11:41:02 |
| 5   show the contrast between the approach of the Euro | 11:41:09 |
| 6   Commission of its press release of -- of December 21st | 11:41:13 |
| 7   and the -- the Orange Book proceeding, so it shows | 11:41:19 |
| 8   differences, and further on in the text, criticizes some | 11:41:22 |
| 9   of the approaches of the European Commission.  So the | 11:41:28 |
| 10  term "willingness to negotiate" comes from this state | 11:41:32 |
| 11  press release. | 11:41:38 |
| 12      Q   Would it be accurate to say the Dusseldorf | 11:41:38 |
| 13  court is uncertain whether the Orange Book procedure | 11:41:41 |
| 14  satisfies the European antitrust law? | 11:41:44 |
| 15          MS. BERRY:  Objection; form. | 11:41:46 |
| 16          THE WITNESS:  I'm not a member of the | 11:41:47 |
| 17  Dusseldorf lower court, so I cannot say that, but I | 11:41:50 |
| 18  don't understand it this way.  I understand the judgment | 11:41:52 |
| 19  in such a way that it wants to get -- it wants to defend | 11:41:55 |
| 20  the Orange Book procedure towards the -- this very | 11:41:59 |
| 21  lenient approach of the European Commission. | 11:42:06 |
| 22  BY MR. LOVE: | 11:42:10 |
| 23      Q   The European Court of Justice could respond to | 11:42:11 |
| 24  this question by saying that the Commission is right and | 11:42:14 |
| 25  the Dusseldorf court is wrong; right? | 11:42:16 |

MAXIMILIAN HAEDICKE – 6/14/2013

| | | | |
|---|---|---|---|
| 1 | A | Yes. | 11:42:21 |
| 2 | Q | Okay. | 11:42:27 |
| 3 | | (Exhibit 7 was marked for identification by the | 11:42:27 |
| 4 | | Court Reporter.) | 11:42:27 |
| 5 | | MR. LOVE:  I'm going to hand you what's been | 11:42:28 |
| 6 | | marked as Exhibit 7.  Exhibit 7 is a document bearing | 11:42:29 |
| 7 | | the Bates stamp MS-MOTO_1823_00002271028. | 11:42:36 |
| 8 | Q | Have you read this document before? | 11:42:45 |
| 9 | A | No. | 11:42:48 |
| 10 | Q | How did you familiarize yourself with the | 11:42:49 |
| 11 | | history of the General Instrument versus Microsoft cases | 11:42:51 |
| 12 | | in Mannheim? | 11:42:53 |
| 13 | A | Some -- can you repeat the question. | 11:42:55 |
| 14 | Q | Sure. | 11:42:58 |
| 15 | | How did you -- in preparing to file your expert | 11:42:58 |
| 16 | | report, how did you familiarize yourself with the | 11:43:02 |
| 17 | | proceedings in Mannheim between General Instrument and | 11:43:05 |
| 18 | | Microsoft? | 11:43:08 |
| 19 | A | Well, the -- the decision is in public -- is | 11:43:09 |
| 20 | | publicly available, and the documents which I -- which I | 11:43:14 |
| 21 | | mention in my expert report have been produced to me. | 11:43:18 |
| 22 | Q | But you haven't seen this document, the | 11:43:22 |
| 23 | | Declaration of Professor David J. Teece? | 11:43:24 |
| 24 | A | No.  No. | 11:43:27 |
| 25 | Q | You can put that aside. | 11:43:27 |

MAXIMILIAN HAEDICKE – 6/14/2013

| | |
|---|---|
| 1    not to answer. | 11:47:38 |
| 2    BY MR. LOVE: | 11:47:39 |
| 3         Q    Will you follow your counsel's advice? | 11:47:40 |
| 4         A    Yes. | 11:47:41 |
| 5         Q    The European Commission's preliminary view is | 11:47:41 |
| 6    that enforcing injunctions on standard essential patents | 11:47:46 |
| 7    against a willing licensee is an abuse of antitrust law; | 11:47:49 |
| 8    is that correct? | 11:47:54 |
| 9             MS. BERRY:  Objection; form. | 11:47:54 |
| 10            THE WITNESS:  Please repeat. | 11:47:54 |
| 11            MR. LOVE:  Sure. | 11:47:56 |
| 12        Q    The European Commission's preliminary view is | 11:47:56 |
| 13   that enforcing injunctions on standard essential patents | 11:48:00 |
| 14   against a willing licensee is an abuse of antitrust law; | 11:48:02 |
| 15   correct? | 11:48:06 |
| 16        A    These are the wordings used, yes. | 11:48:06 |
| 17        Q    Would you agree that Judge Robart in the | 11:48:08 |
| 18   Ninth Circuit helped Motorola avoid exposing itself to | 11:48:11 |
| 19   additional antitrust liability? | 11:48:16 |
| 20            MS. BERRY:  Objection to form, outside the | 11:48:17 |
| 21   scope of his expert report. | 11:48:19 |
| 22            THE WITNESS:  I have no sufficient information. | 11:48:20 |
| 23   I have no opinion as it relates to the U.S. trial. | 11:48:22 |
| 24   BY MR. LOVE: | 11:48:24 |
| 25        Q    Do you understand that the decision to relocate | 11:48:25 |

MAXIMILIAN HAEDICKE – 6/14/2013

| | | |
|---|---|---|
| 1 | Microsoft's distribution center in Germany required | 11:48:28 |
| 2 | considerable preparation beginning in January of 2012? | 11:48:32 |
| 3 |       MS. BERRY:  Objection; form, outside the scope | 11:48:36 |
| 4 | of his expert report. | 11:48:37 |
| 5 |       THE WITNESS:  I have no opinion on that. | 11:48:39 |
| 6 | BY MR. LOVE: | 11:48:40 |
| 7 |   Q    Are you aware of any of the details surrounding | 11:48:40 |
| 8 | Microsoft's decision to relocate its German facility? | 11:48:42 |
| 9 |   A    No. | 11:48:46 |
| 10 |   Q    Did you review any documents associated with | 11:48:46 |
| 11 | the move? | 11:48:48 |
| 12 |   A    No. | 11:48:49 |
| 13 |   Q    Did you review the deposition transcripts of | 11:48:49 |
| 14 | the Microsoft employees who described that process? | 11:48:51 |
| 15 |   A    No. | 11:48:54 |
| 16 |   Q    Were you aware that Microsoft made its decision | 11:48:54 |
| 17 | and had begun implementing the relocation out of Germany | 11:48:59 |
| 18 | in March of 2012? | 11:49:03 |
| 19 |   A    No. | 11:49:04 |
| 20 |   Q    If Motorola had enforced the injunction in | 11:49:05 |
| 21 | Mannheim, could Microsoft have continued to distribute | 11:49:10 |
| 22 | H.264-compliant products in Germany? | 11:49:14 |
| 23 |   A    If they fall under the patent and if there has | 11:49:17 |
| 24 | been an injunction, no. | 11:49:22 |
| 25 |   Q    If Motorola had enforced its injunction in | 11:49:23 |

MAXIMILIAN HAEDICKE – 6/14/2013

1          I declare under penalty of perjury that the

2     foregoing is true and correct.  Subscribed at

3     _____, California, this _____ day of

4     _____, 2013.

5

6                         _____

7                         Signature of the witness

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MAXIMILIAN HAEDICKE – 6/14/2013

```
 1                    CERTIFICATE OF REPORTER

 2           I, RACHEL FERRIER, a Certified Shorthand

 3      Reporter, hereby certify that the witness in the

 4      foregoing deposition was by me duly sworn to tell the

 5      truth, the whole truth, and nothing but the truth in the

 6      within-entitled cause;

 7           That said deposition was taken down in

 8      shorthand by me, a disinterested person, at the time and

 9      place therein stated, and that the testimony was

10      thereafter reduced to typewriting by computer under my

11      direction and supervision and is a true record of the

12      testimony given by the witness;

13           That before completion of the deposition,

14      review of the transcript [X] was [ ] was not requested.

15      If requested, any changes made by the deponent (and

16      provided to the reporter) during the period allowed are

17      appended hereto.

18           I further certify that I am not of counsel or

19      attorney for either or any of the parties to the said

20      deposition, nor in any way interested in the event of

21      this cause, and that I am not related to any of the

22      parties thereto.

23           DATED:

24           _____

25           RACHEL FERRIER, CSR No. 6948
```