The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION, a
Washington corporation,

        Plaintiff,

    vs.

MOTOROLA, INC., MOTOROLA
MOBILITY LLC, and GENERAL
INSTRUMENT CORPORATION,

       Defendants.

CASE NO. C10-1823-JLR

**DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE 702 MOTION TO PRECLUDE TESTIMONY BY MOTOROLA'S EXPERTS**

**NOTED ON MOTION CALENDAR:**
**Wednesday, July 31, 2013 at 10:00 a.m.**

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

2

**TABLE OF CONTENTS**

3

**Page**

4

PRELIMINARY STATEMENT ........................................................................1

5

ARGUMENT ................................................................................................1

6

I.    RICHARD HOLLEMAN'S TESTIMONY DOES NOT CONTRADICT THIS
      COURT'S ORDERS OR CONTAIN IMPROPER LEGAL OPINIONS AND
      SHOULD NOT BE EXCLUDED ...............................................................1

8

      A.    Mr. Holleman's Report Presents Opinions On The RAND Commitment
            And Relevant IEEE And ITU Policies That Are Consistent With The
            Court's Prior Rulings ......................................................................1

10

            1.    Mr. Holleman's interpretation of Motorola's RAND commitments is
                  consistent with the Court's prior rulings.....................................1

12

            2.    Mr. Holleman's opinion on injunctive relief is not a legal conclusion
                  and is consistent with the Court's prior rulings. ..........................2

13

            3.    Mr. Holleman's other opinions do not undermine prior rulings. ...................3

14

      B.    Mr. Holleman's Testimony Regarding Motorola's Good Faith  Is
            Admissible ...................................................................................6

16

II.   GREGORY LEONARD'S OPINIONS DO NOT ENCOMPASS LEGAL
      CONCLUSIONS AND SHOULD NOT BE EXCLUDED...............................7

17

      A.    Microsoft Seeks To Exclude Certain Factual Statements By
            Misrepresenting Them As Legal Conclusions That Contradict This Court's
            Orders...........................................................................................8

19

      B.    The Federal Rules of Evidence Permit An Expert To Offer Testimony On
            An Ultimate Issue And Dr. Leonard Should Be Permitted To Do So .....................11

21

III.  JUDGE MAXIMILIAN HAEDICKE'S TESTIMONY WILL AID THE JURY
      AND SHOULD NOT BE EXCLUDED.....................................................11

22

      A.    Judge Haedicke's Testimony Details How Microsoft *Could Have* Mitigated
            Its Damages By Preventing An Injunction in Germany .........................12

24

      B.    Motorola's Counsel Properly Objected To Questions Calling For Judge
            Haedicke's Communications With Motorola's Counsel ........................14

25

      C.    Microsoft Mischaracterizes Judge Haedicke's Testimony Regarding U.S.
            Courts' Orders and German Law ...................................................15

27

      D.    Judge Haedicke Is Qualified To Opine About Attorneys' Fees That Would
            Be Available in Germany...............................................................17

28

DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE
702 MOTION TO PRECLUDE TESTIMONY BY
MOTOROLA'S EXPERTS  - i
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

IV.  BRADLEY KELLER'S TESTIMONY IS PROPER AND SHOULD NOT BE EXCLUDED ..................................................................................................19

    A.  Microsoft Offers No Basis for Excluding Mr. Keller's Analysis of Microsoft's Unreliable Methodology, Yet Asks The Court To Exclude Mr. Keller's Opinions In Their Entirety ....................................................19

    B.  Mr. Keller Is Qualified To Offer An Opinion On The Reasonableness of Attorney Fees ...........................................................................................20

    C.  Mr. Keller's Testimony Will Assist The Jury .........................................21

    D.  Mr. Keller Will Not Be Testifying As To Any Legal Conclusions .........22

CONCLUSION ...................................................................................................23

DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE 702 MOTION TO PRECLUDE TESTIMONY BY MOTOROLA'S EXPERTS - ii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

## TABLE OF AUTHORITIES

**Page**

### Cases

*Common Cause v. Jones*,
  235 F. Supp. 2d 1076 (C.D. Cal. 2002) ...................................................................20

*LuMetta v. U.S. Robotics, Inc.*,
  824 F.2d 768 (9th Cir. 1987) .................................................................................20

*Mukhtar v. Cal. State Univ., Hayward*,
  299 F.3d 1053 (9th Cir. 2002) ............................................................................6, 11

*In re Parsons*,
  No. 7-09-15382JR, 2010 WL 3547601 (Bankr. D.N.M. Sept. 9, 2010)....................22

*Primiano v. Cook*,
  No. 598 F.3d 558, 565 (9th Cir. 2010).....................................................................21

*RSUI Indem. Co., Inc. v. Vision One, LLC*,
  No. C08-1386-RSL, 2009 WL 5125420 (W.D. Wash. Dec. 18, 2009) ..................6, 11

*Specht v. Jensen*,
  853 F.2d 805 (10th Cir. 1988) .................................................................................23

*Speicher v. Union Pac. R.R.*,
  No. C07–05524 RBL, 2009 WL 250026, *2 (W.D. Wash. Feb. 2, 2009)................11

*In re Terex Corp.*,
  70 B.R. 996 (Bankr. N.D. Ohio 1987) ......................................................................22

### Statutes

F.R.C.P. Rule 26 .........................................................................................................15, 18

Fed. R. Evid. 704(a) ..........................................................................................................11

### Miscellaneous

Restatement (Second) of Contracts § 350..........................................................................12

DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE
702 MOTION TO PRECLUDE TESTIMONY BY
MOTOROLA'S EXPERTS - iii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

**<u>Preliminary Statement</u>**

Microsoft's *Daubert* motion against all four of Motorola's experts should be denied.  Each expert—a Ph.D. economist, a German judge, an experienced Seattle attorney, and an expert on standards setting organizations —is fully qualified and will provide helpful testimony on different aspects of this complex case in order to assist the jury to reach its ultimate decision.

Microsoft's primary complaint against Motorola's experts is that they intend to offer testimony that contradicts or undermines the Court's prior orders in this case. Not so.  Microsoft's allegations are based on mischaracterizations of the Court's orders and selective quotations from the experts' proposed testimony.  None of Motorola's experts challenges this Court's prior orders, and Motorola has no intention of eliciting testimony that is contrary to the law of the case.

**<u>Argument</u>**

**I.**   **<u>RICHARD HOLLEMAN'S TESTIMONY DOES NOT CONTRADICT THIS COURT'S ORDERS OR CONTAIN IMPROPER LEGAL OPINIONS AND SHOULD NOT BE EXCLUDED</u>**

Richard Holleman is a qualified expert who, based on his professional activities and more than 30 years of experience in international standards organizations, appropriately offers expert opinion testimony to assist the jury as required under Rule 702.  Dkt. 725-001, ¶¶3-12; Declaration of Cheryl A. Berry ("Berry Decl.") Ex. A at 83:8-13.  Microsoft's arguments to the contrary are not supported.

**A.**   **Mr. Holleman's Report Presents Opinions On The RAND Commitment And Relevant IEEE And ITU Policies That Are Consistent With The Court's Prior Rulings**

Contrary to Microsoft's representations, Mr. Holleman's report does not "reject the Court's interpretation of the RAND licensing contract" or "directly contradict[] the Court's prior rulings." Dkt. 724 at 5.  Instead, Mr. Holleman provides valuable and relevant expertise on the source of the RAND commitments that is wholly consistent with Court's prior orders.

1.   <u>Mr. Holleman's interpretation of Motorola's RAND commitments is consistent with the Court's prior rulings</u>

Microsoft claims that Mr. Holleman contradicts the Court's ruling that Motorola's RAND commitments require more than just good faith negotiations.  Dkt. 724 at 4-5.  Not so.  While Mr.

DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE 702 MOTION TO PRECLUDE TESTIMONY BY MOTOROLA'S EXPERTS  - 1
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1  Holleman does say that "The RAND commitment is a commitment by the patent owner to engage

2  in good faith bilateral negotiations," Microsoft omits in its brief that Mr. Holleman goes on to say

3  *in the same sentence* that the patent owner must engage in these negotiations "to license essential

4  IPR on reasonable terms and conditions."  Dkt. 725-001 at ¶ 30.  This is completely consistent

5  with this Court's ruling that, "Certainly, Motorola's commitments to the IEEE and ITU require

6  that it negotiate in good faith towards RAND terms" and also "require Motorola to eventually

7  grant a license on RAND terms."  Dkt. 465 at 14.  The other portions of Mr. Holleman's report

8  cited by Microsoft as "evidence" of contradictions of the Court's orders also refer to a license

9  issuing as the result of good faith negotiations:  "the patent holder fulfills its RAND obligation by

10  being willing to enter into good faith negotiations with all potential licensees who wish to

11  negotiate, and attempting in good faith to reach a license on RAND terms and conditions *in such*

12  *an agreement*." Dkt. 725-001, ¶¶ 31, 36, 42 (emphasis added).  Rather than showing that Mr.

13  Holleman rejects the Court's interpretation, these statements show Mr. Holleman's opinion on the

14  nature of the RAND commitment is consistent with the Court's orders.

15  Furthermore, Mr. Holleman's statement that negotiations "do not guarantee that the result .

16  . . will be an executed license agreement," also does not contradict the Court's prior rulings.  The

17  ITU and IEEE are not compulsory licensing organizations.  *See* Berry Decl. Ex. A at 187:4-

18  188:13.  This Court has held that Motorola must grant Microsoft a license under the specific

19  circumstances of this case.  *See* Dkt. 465 at 14.  There may be other situations, however, involving

20  different parties, where the parties are not ultimately able to reach a license agreement for any

21  number of reasons, including that one party decides not to use the standard.  Mr. Holleman's

22  opinions about commitments made in general to the IEEE and ITU do not contradict the Court's

23  rulings specific to these parties.

                      2.    <u>Mr. Holleman's opinion on injunctive relief is not a legal conclusion and is</u>
<u>consistent with the Court's prior rulings.</u>

24

25  Microsoft also mischaracterizes the Court's rulings and Mr. Holleman's testimony on the

26  availability of injunctive relief.  Microsoft's statements regarding the Court's November 2012

27  Order (Dkt. 607) are incomplete.  Dkt. 724 at 6.  While the Order enjoined Motorola from

28  DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE
702 MOTION TO PRECLUDE TESTIMONY BY
MOTOROLA'S EXPERTS - 2
CASE NO. C10-1823-JLR

1  "seeking injunctive relief against Microsoft with respect to Motorola's H.264 and 802.11 standard

2  essential patent portfolios" (Dkt. 607 at 18), it also acknowledged that the ruling was specific to

3  the facts and rulings in this case at that time, and that injunctive relief could potentially be

4  available in the future:  "The Court's determination that injunctive relief is no longer available . . .

5  is based on the specific circumstances and rulings that have developed in this litigation.  If, in the

6  future . . . circumstances change in a manner to warrant injunctive relief, Motorola may at that

7  time seek such relief."  *Id.* at 15.

8      Far from undermining the Court's Order, Mr. Holleman's report merely explains that "[i]n

9  [Mr. Holleman's] experience, RAND undertakings made under SDO IPR policies are not

10 understood to limit the IPR holder's legal rights to enforce its patents, including the right to seek

11 an injunction."  Dkt. 725-001, ¶ 23; *see also id.*, ¶¶ 15, 21, 39 ("neither the IEEE nor ITU policies

12 explicitly preclude a patent holder from seeking injunctive relief"), 60.  These statements are not

13 legal opinions, as Microsoft incorrectly suggests.  Dkt. 724 at 6.  Rather, Mr. Holleman presents

14 information about language that is present in or absent from IEEE and ITU policies, and his

15 understanding of those inclusions or omissions in light of his 30 years of experience working with

16 international standards organizations.  *See id.*, ¶ 6; Berry Decl. Ex. A at 91:18-21 ("My statement

17 is that the patent policies of IEEE and the ITU do not address injunctions in any way, and are

18 outside the scope of their patent policies.");  93:7-23.  Indeed, during his deposition, Mr. Holleman

19 declined to offer testimony specific to the facts of this case regarding whether Motorola could

20 have sought an injunction under various hypothetical scenarios presented by Microsoft's counsel,

21 stating that "I believe that's beyond the scope of my testimony relative to SDOs, and it would

22 involve some legal conclusions that I'm not qualified to give."  Berry Decl. Ex. A at 93:24-94:12;

23 *see also* 147:6-148:11.  The opinions that Mr. Holleman does give on this topic are proper.

24      3.    Mr. Holleman's other opinions do not undermine prior rulings.

25      Microsoft is also unjustified in claiming that Mr. Holleman's report "suggest[s] to the jury

26 that Microsoft acted improperly by filing this suit," contrary to the Court's prior rulings.  Dkt. 724

27 at 5.  Mr. Holleman makes no such suggestion.  As Mr. Holleman made clear in his deposition

28 DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE
   702 MOTION TO PRECLUDE TESTIMONY BY
   MOTOROLA'S EXPERTS - 3
   CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1  testimony, his statements about Microsoft's decision to file suit are merely a statement of fact

2  about Microsoft's lack of negotiation following Motorola's opening offer letters.  Berry Decl. Ex.

3  A at 96:16-21 ("Q.  And it's your opinion that by filing this action Microsoft refused to participate

4  in good faith negotiations, correct? . . . A. It's not so much my opinion, it's my understanding that

5  that did not take place."); *see also id*. at 96:22-97:13 ("Q:  So you're not drawing any conclusions

6  in terms of your opinions based on the fact that Microsoft filed this lawsuit? . . . A:  That's really

7  outside the scope of my testimony.").  Microsoft itself admits that it "filed this suit on the

8  twentieth day after the first [offer] letter was sent," rather than engaging in any negotiations with

9  Motorola.  Dkt. 733 at 6.  Mr. Holleman should be permitted to discuss the parties' course of

10  conduct; this does not contradict the Court's order quoted by Microsoft that negotiating in good

11  faith for a license is not a condition precedent to Motorola's obligation to provide Microsoft with a

12  license on RAND terms.

13         Microsoft's criticism of Mr. Holleman for a single statement of fact regarding patent pools

14  and royalty stacking also mischaracterizes his testimony.  Microsoft claims that Mr. Holleman's

15  opinion is that "Motorola's RAND licensing commitments do not require 'the patent holder to

16  consider royalty stacking or patent pool rates in formulating its opening offer.'"  Dkt. 724 at 6.

17  What Mr. Holleman actually states is that "*there are no provisions in SDO policies* requiring the

18  patent holder to consider royalty stacking or patent pool rates in formulating its *opening offer*."

19  Dkt. 725-001, ¶ 47 (emphasis added).  Mr. Holleman is merely stating the fact that SDO policies

20  do not contain provisions relating to parties' consideration of royalty stacking or patent pool rates

21  in their opening offers; this is not a legal opinion.  Nor does this statement directly or implicitly

22  contradict the Court's finding—the Court found that "a RAND *negotiation* would not be

23  conducted in a vacuum" and the parties would consider royalty stacking and patent pool rates

24  during their negotiation.  Dkt. 673 ¶¶ 514, 539, 100 (emphasis added).  "Typically, the SEP owner

25  and the potential licensee determine RAND terms through good-faith, bilateral negotiations, which

26  take place independent of ITU and IEEE's activities."  *Id*. at ¶ 85.  Mr. Holleman's opinion that

27  SDO policies do not require patent holders to consider royalty stacking or patent pool rates in

28  DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE
702 MOTION TO PRECLUDE TESTIMONY BY
MOTOROLA'S EXPERTS - 4
CASE NO. C10-1823-JLR

1  formulating their *opening offers* does not contradict this Court's findings that the parties would

2  consider those factors during their *negotiations*.

3        Microsoft next contends that Mr. Holleman's opinion that an initial offer need not be

4  RAND should be excluded as both a legal conclusion and an opinion that undermines the Court's

5  prior rulings.  On the contrary, this opinion is completely consistent with the Court's prior rulings.

6  This Court held that, "[b]ecause the IEEE and ITU agreements anticipate that the parties will

7  negotiate towards a RAND license, it logically does not follow that initial offers must be on

8  RAND terms."  Dkt. 335 at 24 ; *see also* Dkt. 465 at 15 n.9 ("the court previously held that initial

9  offers for standard essential patents need not be on RAND terms").  Mr. Holleman's opinion

10 regarding initial offers also is not a legal conclusion; his statement on the issue is that, "from an

11 SDO perspective, there is nothing that would lead one to conclude that an offering, initial offer has

12 to be RAND."  Dkt. 725-002 at 180:19-22.  He goes on to explain that "[t]he SDO is concerned

13 about licenses . . . .  There is . . . nothing that speaks to an initial offer."  *Id.* at 181:1-6.  To the

14 extent that Microsoft seeks to exclude Mr. Holleman's deposition testimony regarding whether an

15 opening offer can be "blatantly unreasonable," Mr. Holleman made clear in the same statements

16 that Microsoft cites that he offers no opinion on that topic and instead defers to this Court's

17 rulings.  Berry Decl. Ex. A at 175:18-176:1; Dkt. 725-002 at 181:20-182:8.

18       Finally, contrary to Microsoft's repeated claims, nothing in Mr. Holleman's testimony

19 rejects or undermines the Court's April 19 Findings of Fact and Conclusions of Law (Dkt. 673)

20 ("FFCL").  Mr. Holleman's rebuttal report criticizes not the FFCL but Dr. Murphy's reliance on

21 the FFCL "as a guide for how negotiations over standard-essential patents take place,"[1] since

22 parties would not typically have such a document available for their use during negotiations.  Mr.

23 Holleman is not rejecting the Court's determination or methodology; rather, his "disagreement is

24

25     [1]  Microsoft identified ¶¶ 4, 34, 47 of Mr. Holleman's rebuttal report in the scope of requested

26 relief as to Mr. Holleman.  (Dkt. 724 at 8).  Mr. Holleman's rebuttal report does not include ¶¶ 34
   or 47.  Therefore, Motorola interprets Microsoft's request to only relate to ¶ 4 of Mr. Holleman's

27 rebuttal report.

28 DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE
   702 MOTION TO PRECLUDE TESTIMONY BY
   MOTOROLA'S EXPERTS - 5
   CASE NO. C10-1823-JLR

1  that Dr. Murphy assumes [the FFCL] as the basis for *all* bilateral negotiations."  Berry Decl. Ex. A

2  at 154:22-24 (emphasis added).  As Dr. Murphy's own rebuttal report and subsequent deposition

3  testimony make clear, the problem Mr. Holleman was identifying is temporal:  "Parties

4  negotiating licenses to standard-essential patents *at the time* these parties were negotiating would

5  not have had the benefit of the [FFCL], or any document similar to it, to guide their negotiations."

6  Dkt. 725-003, ¶ 4 (emphasis added); *see also* Berry Decl. Ex. A at 156:3-8 ("the Court's Order did

7  not exist when Motorola made its RAND assurance.  And certainly, such considerations are not

8  part of the SDO's patent policies.  That's the only thing I'm saying about it." ).

9        **B.    Mr. Holleman's Testimony Regarding Motorola's Good Faith Is Admissible**

10       Microsoft contends that all of Mr. Holleman's testimony related to whether Motorola's

11  October 2012 letters "constituted Motorola's good faith attempt to engage Microsoft in a licensing

12  negotiation" should be excluded as a legal conclusion.  This argument by Microsoft ignores the

13  "well-established" legal rule, cited in several of the cases Microsoft relies upon, that "expert

14  testimony concerning an ultimate issue is not per se improper."  *Mukhtar v. Cal. State Univ.,*

15  *Hayward*, 299 F.3d 1053,  1065 n.10 (9th Cir. 2002) (citations omitted).  In *Mukhtar*, the

16  defendants sought to exclude expert testimony regarding whether racism was a factor in a

17  university's decision to deny the plaintiff tenure.  *Id.* at 1057, 61.  Importantly, the appellate court

18  rejected the district court's decision to allow the testimony not because it focused on the ultimate

19  issue of the case, but because the district court had failed "to make *any* determination that [the]

20  testimony was reliable."  *Id.* at 1066 (emphasis original).  Here, as in *Mukhtar*, Mr. Holleman's

21  testimony references the ultimate issue of the case.  However, unlike *Mukhtar*, Microsoft does not

22  even question that Mr. Holleman's relevant experience makes his testimony reliable.  *See also*

23  *RSUI Indem. Co., Inc. v. Vision One, LLC*, No. C08-1386-RSL, 2009 WL 5125420 at *2 (W.D.

24  Wash. Dec. 18, 2009) (finding "experts' opinions, based on their wealth of experience, is helpful

25  to the Court" involving conformance to industry standards.)

26       In any event, Mr. Holleman made clear during his deposition that he was not offering any

27  opinions on legal conclusions; instead, Mr. Holleman's opinion is limited to his view that

28  DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE
702 MOTION TO PRECLUDE TESTIMONY BY
MOTOROLA'S EXPERTS - 6
CASE NO. C10-1823-JLR

1   Motorola's actions were consistent with its RAND obligations under the ITU and IEEE patent

2   policies.  *See e.g.,* Berry Decl. Ex. A at 63:2-4; Dkt. 725-001, ¶¶ 38, 60.  Mr. Holleman's opinion

3   that the October 2010 letters showed good faith on Motorola's part is based upon his reading of

4   the letters themselves (Berry Decl. Ex. A at 128:22-129:15 ("in reading the letter, the, I think it's

5   pretty evident that this is an attempt on Motorola's part to engage Microsoft in a negotiation for a

6   license"); 164:15-165:7; 168:25-169:17) and Mr. Holleman's years of relevant experience in

7   SDOs.  Dkt. 725-001, ¶¶ 3-12.  Furthermore, Mr. Holleman did not usurp the Court's role with

8   regard to determining whether or not the royalty rates in those letters represent "good faith."  As

9   his deposition testimony makes clear, Mr. Holleman avoided offering that opinion entirely.  Berry

10  Decl. Ex. A at 168:11-15 ("Q.  And you also will not be offering an opinion as to any aspect of

11  whether particular negotiations, offers and counteroffers are in good faith or not? . . . A. That's

12  right" ).

13          Mr. Holleman's testimony does not contradict or undermine this Court's prior rulings or

14  improperly encompass legal opinions.  His opinions should therefore be permitted in their entirety.

15  **II.      GREGORY LEONARD'S OPINIONS DO NOT ENCOMPASS LEGAL
            CONCLUSIONS AND SHOULD NOT BE EXCLUDED**

16

17          Gregory Leonard is a Ph.D. economist who will rebut the testimony of Microsoft's Ph.D.

18  economist, Dr. Kevin Murphy.  The testimony of Dr. Leonard and Dr. Murphy is a prototypical

19  example of qualified experts presenting opinion testimony that a jury must weigh and decide

20  between to reach its decision.  Recognizing that Dr. Leonard is extremely well qualified to present

21  the opinions in his report, Microsoft seeks to exclude only certain portions of Dr. Leonard's report

22  on the grounds that he is offering legal conclusions.  Certain of these statements, however, are

23  simply facts that Microsoft does not like and is attempting to conceal from the jury.  Other

24  statements permissibly offer an opinion on an ultimate issue, but are not legal conclusions.  As a

25  result, no portions of Dr. Leonard's report should be excluded.

26

27

28  DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE
    702 MOTION TO PRECLUDE TESTIMONY BY
    MOTOROLA'S EXPERTS - 7
    CASE NO. C10-1823-JLR

**A.   Microsoft Seeks To Exclude Certain Factual Statements By Misrepresenting Them As Legal Conclusions That Contradict This Court's Orders**

Microsoft seeks to excludes portions of Dr. Leonard's report by suggesting that Dr. Leonard has offered "legal conclusions contradicting the court's prior rulings."  In reality, Microsoft seeks to exclude factual statements relating to Microsoft's conduct that Dr. Leonard found relevant to his analysis.  These statements are not legal conclusions and thus, *a fortiori*, do not contradict any of this Court's rulings.  Accordingly, this Court should not exclude such statements.

As one example, Microsoft seeks to exclude a statement from Dr. Leonard's report that "Microsoft filed this lawsuit without making any counter-offer or otherwise engaging in negotiation.  Thus, Microsoft effectively ended the negotiation."   Dkt. 725-4 at ¶ 78.  But that statement is merely factual—it does not include any legal conclusions.  The same is true of Dr. Leonard's other statements that Microsoft seek to exclude.  *See id.* ¶ 79 (factual statements regarding possibility of continued negotiations); Dkt. 725-6 at ¶ 28 (statement that Microsoft's actions must be taken into account).  Even if these statements could somehow be construed as legal statements (they are not), nothing in these statements contradicts any of this Court's rulings.  In fact, the sentence that Microsoft cites from the Court's June 2012 ruling, Dkt. 335, that "the courthouse may be the only place to resolve the differences," provides no indication of when such relief may be necessary or appropriate or how the ability to seek such relief may affect negotiations.  Dr. Leonard should not be precluded from detailing the parties' course of conduct in attempting to reach a RAND license.

Similarly, Microsoft misleadingly suggests that Dr. Leonard is contradicting the Court's rulings that "Microsoft was *not* obliged to negotiate with Motorola before filing suit."  Dkt. 724 at p. 9.  But Microsoft cites no such ruling.  This Court, in rejecting Motorola's repudiation affirmative defense, held only that Microsoft was not obligated to negotiate in order to preserve its right to a RAND license.  Dkt. 335 at 18 ("[I]t does not follow that negotiating in good faith is a condition precedent to Motorola's promise to grant license on RAND terms.").  This ruling does not state that Microsoft's complete lack of negotiation prior to filing suit is irrelevant to

DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE
702 MOTION TO PRECLUDE TESTIMONY BY
MOTOROLA'S EXPERTS - 8
CASE NO. C10-1823-JLR

1    Motorola's defense in this suit.  Microsoft states that "Leonard's apparent view is that by coming

2    to the courthouse, Microsoft made it impossible to know whether Motorola was meeting its

3    obligations," but does not explain how this statement is untrue or contradictory to this Court's

4    orders.  Dkt. 724 at pp. 9-10.  Indeed, Microsoft bears the burden of proving a breach of the duty

5    of good faith, and it is highly relevant to Microsoft's burden that Microsoft filed suit before seeing

6    how any negotiation would progress.

7        Microsoft also argues—again, misleadingly—that Dr. Leonard "claims Motorola was free

8    to ignore patent stacking when offering Microsoft a RAND license."  Dkt. 724 at p. 10.  But Dr.

9    Leonard never opined that Motorola could "ignore" patent stacking.  Rather, Dr. Leonard

10   suggested that the inclusion of a patent stacking analysis in the ultimate RAND rate would come

11   *later* in the analysis.  "I do not agree that Motorola has a responsibility to conduct [a stacking]

12   analysis *before making an initial offer*."  Dkt. 725-4 at ¶ 81 (emphasis added).  This section of Dr.

13   Leonard's report reflects his opinion, based on his unquestionable expertise, of how a patent

14   stacking analysis would fit into the requisite negotiations.   As this Court has specifically held that

15   the initial offer need not be RAND, but rather only the resulting license must be on RAND terms

16   (Dkt. 335 at 24),  and that the parties would consider royalty stacking and patent pool rates during

17   their *negotiation* (Dkt. 673 ¶ 539), Dr. Leonard's opinion does not contradict this Court's orders.

18       The same is true of Dr. Leonard's statement that "*rather than this hypothetical royalty

19   stacking calculation that Dr. Murphy suggests*, the relevant calculation would be the amount of

20   royalties that Microsoft was actually paying to other 802.11 and H.264 SEP owners."  Dkt. 725-6

21   at ¶ 7.  Dr. Leonard in no way is implying "that it is irrelevant that Motorola's 2.25% demand, *if

22   made by others,* would cause severe stacking problems."  Dkt. 724 at 10 (emphasis added).  In

23   fact, just the opposite.  He is explaining that an analysis of the *actual* circumstances would provide

24   a more useful calculation than trying to imagine some unknown circumstances.  Dr. Leonard has

25   not opined on how stacking might eventually influence the RAND rate, other than to indicate it

26   would be of a benefit to the licensee, and that information to conduct such an analysis is

27   "something that Microsoft could have provided to Motorola had Microsoft engaged in

28   DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE
     702 MOTION TO PRECLUDE TESTIMONY BY
     MOTOROLA'S EXPERTS - 9
     CASE NO. C10-1823-JLR

1   negotiations before filing its lawsuit." Dkt. 725-6 at ¶ 7. This paragraph contains no legal

2   conclusions, but instead suggests an alternative means of analysis to the method suggested by

3   Microsoft's expert.

4          Nor does Dr. Leonard's statement that "RAND does not require an SEP owner to treat

5   differently situated licenses similarly," *id.* ¶ 19, qualify as a legal conclusion. Rather, Dr.

6   Leonard, in evaluating all of the factors that might influence a negotiation, noted that different

7   negotiations could have different results for different reasons. Microsoft cannot challenge the

8   truth of this purely factual statement, as Microsoft itself "previously acknowledged to the Federal

9   Trade Commission that provisions such as that proposed to Marvell (a defensive suspension

10  provision) are not uncommon," as Dr. Leonard notes in that very same paragraph.

11         Microsoft additionally requests that this Court prevent Dr. Leonard from offering an

12  opinion on whether blatantly unreasonable offers necessarily breach a RAND commitment. Dkt.

13  724 at p. 11. But nowhere in either of Dr. Leonard's reports does the phrase "blatantly

14  unreasonable" appear. Dr. Leonard only offered the opinion after counsel for Microsoft asked him

15  this specific question during his deposition. Dkt. 725-5 at 42:10-13 (Leonard deposition) (Q: "Is it

16  your opinion that in making an opening offer that is so high that it's blatantly unreasonable, that

17  that in and of itself would not be evidence of bad faith?"). If Microsoft does not want Dr.

18  Leonard to offer such an opinion, than it should not have asked him to present one. If Microsoft

19  asks this question at trial, as it did during Dr. Leonard's deposition, Dr. Leonard should be

20  permitted to answer truthfully. And if Dr. Leonard is not permitted to answer, then Microsoft

21  should be barred from asking the question.

22         As these examples indicate, under the guise of its motion to exclude, Microsoft seeks to

23  prevent the jury from considering Microsoft's conduct. While it is true that this Court has rejected

24  Motorola's repudiation affirmative defense, such a ruling in no way bars the jury from evaluating

25  Microsoft's actions. Motorola did not send the offer letter that gave rise to this dispute in a

26  vacuum. To disallow such evidence would provide the jury with a skewed and inaccurate picture

27

28  DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE
    702 MOTION TO PRECLUDE TESTIMONY BY
    MOTOROLA'S EXPERTS - 10
    CASE NO. C10-1823-JLR

1  of dealings between the two parties.  The dealings between the parties are critical evidence for the

2  jury to consider in evaluating Motorola's conduct in the fall of 2010.

**B.      The Federal Rules of Evidence Permit An Expert To Offer Testimony On An Ultimate Issue And Dr. Leonard Should Be Permitted To Do So**

Microsoft is equally wrong to assert that Dr. Leonard may not offer an opinion on the

reasonableness of Motorola's actions, whether Motorola acted in good faith or the ability of

Microsoft to recover damages.  Under well-established Ninth Circuit precedent, an expert may

offer such testimony.  *Mukhtar*, 299 F.3d at  1065 n.10.  "Experts may opine about the 'ultimate

issue' in a case as long as they do not make a legal conclusion."  *RSUI Indem. Co., Inc.*, 2009 WL

5125420, *2; Fed. R. Evid. 704(a).  Thus, the fact that Dr. Leonard's opinion might encompass an

"ultimate issue" does not make it impermissible.  Rather, the Federal Rules of Evidence

specifically allow such testimony.  *RSUI Indem. Co., Inc.*, 2009 WL 5125420, at *2 (holding that

an expert may opine "about the reasonableness of [a party's] actions in terms of whether it

complied with or deviated from industry standards").

After analyzing the entire realm of relevant factors, Dr. Leonard concluded that Motorola

acted in good faith when making its initial offers.  These conclusions are not legal conclusions, but

rather conclusions as to the ultimate issue of good faith.  "Testimony on ultimate issues of law . . .

is different than testimony on ultimate issues to be determined by the trier of fact, which is

expressly allowed under Federal Rule of Evidence 704."  *Speicher v. Union Pac. R.R.*, No. C07–

05524 RBL, 2009 WL 250026, *2 (W.D. Wash. Feb. 2, 2009).   Therefore, Dr. Leonard's

conclusions, based on his unchallenged expertise, are proper.  For the same reason, no basis exists

to preclude the damages testimony of Dr. Leonard in paragraph 33 of his rebuttal report.  *See id.*

(permitting expert testimony on causation and fault).  Dr. Leonard's opinions should be permitted

in their entirety.

**III.     JUDGE MAXIMILIAN HAEDICKE'S TESTIMONY WILL AID THE JURY AND SHOULD NOT BE EXCLUDED**

Judge Haedicke is an expert on German law and legal proceedings and will provide helpful

testimony to the jury as it considers the options available to Microsoft when it faced patent

DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE
702 MOTION TO PRECLUDE TESTIMONY BY
MOTOROLA'S EXPERTS - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1   infringement proceedings in Germany.  Without the information provided by this German law

2   expert, the jury will have no way to evaluate Microsoft's claim that it was forced to take certain

3   actions in Europe to avoid being enjoined and was allegedly damaged as a result.  Microsoft

4   mischaracterizes Judge Haedicke's report and testimony, but a fair reading of his proposed

5   testimony reveals that it is focused, consistent with the Court's rulings and Rules of Civil

6   Procedure, and will help the fact finder evaluate the ultimate issues in dispute, including

7   Microsoft's failure to mitigate its damages.   Furthermore, counsel properly objected to

8   Microsoft's counsel's questions asking about Judge Haedicke's communications with Motorola's

9   counsel in preparing his report; such communications are outside the scope of discovery pursuant

10  to Rule 26.  Microsoft has no valid basis to preclude Judge Haedicke's testimony and he should be

11  permitted to testify regarding all opinions in his expert report.

12   **A.     Judge Haedicke's Testimony Details How Microsoft *Could Have* Mitigated Its Damages By Preventing An Injunction in Germany**

13          Microsoft is unable to find any fault with Judge Haedicke's credentials—he is a highly-

14  qualified German judge and professor and an expert in German patent law.  Dkt. 725-007

15  (Haedicke Rep.) at ¶ 1, Ex. A.  Instead, Microsoft attempts to find fault with testimony that Judge

16  Haedicke is *not* giving in this case.  Microsoft repeatedly argues that Judge Haedicke opines about

17  what Microsoft *should have* done in Germany.  *E.g.*, Dkt. 724 at 1, 12, 15.  Microsoft then

18  criticizes Judge Haedicke for not having knowledge about Microsoft's facility relocation or the

19  precise licensing rate a German court might have set in further Orange Book proceedings.  Dkt.

20  724 at 12-15  This entire argument is a red herring.  Judge Haedicke's report lays out what

21  Microsoft *could have* done in Germany by explaining the German patent system and the available

22  Orange Book procedures.  This explanation will be helpful to the jury and should not be excluded.

23          Microsoft is not entitled to damages where it could have mitigated those damages.  A party

24  is "expected to take such affirmative steps as are appropriate in the circumstances to avoid loss by

25  making substitute arrangements or otherwise."  Restatement (Second) of Contracts § 350.

26  "Damages are not recoverable for loss that the injured party could have avoided without undue

27  risk, burden or humiliation."  *Id*.  Microsoft claims that that it was "forced to relocate its EMEA

28  DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE 702 MOTION TO PRECLUDE TESTIMONY BY MOTOROLA'S EXPERTS - 12
CASE NO. C10-1823-JLR

1    distribution center to the Netherlands in spring 2012" as a result of Motorola seeking injunctive

2    relief in Germany.  Dkt. 732-001 at p. 27.  Motorola is entitled to present information to the jury to

3    dispute Microsoft's claim.  Judge Haedicke will explain to the jury the legal options that were

4    available to Microsoft in Germany to avoid an injunction.  This testimony will support Motorola's

5    affirmative defense that Microsoft could have mitigated the damages it allegedly incurred from

6    relocating its distribution facility from Germany to the Netherlands.  Microsoft's potential options

7    for responding to Motorola's German lawsuit are best described to the jury by a German patent

8    law expert, such as Judge Haedicke.

9           Judge Haedicke describes in his report the legal options that were available to Microsoft in

10   responding to Motorola's lawsuit and request for an injunction in Germany.  Under the "Orange

11   Book" procedure, Microsoft had two options to potentially avoid an injunction:  In the first option,

12   Microsoft could choose a licensing rate itself; if Motorola rejected that rate as too low, then the

13   infringement court would review the information in front of it to determine whether Motorola's

14   rejection violated German antitrust law.  Dkt. 725-007 at ¶57.  In this case, the German court

15   found that Motorola did not violate German antitrust law in rejecting Microsoft's rate, and

16   therefore the German court issued an injunction when it found that Microsoft infringed Motorola's

17   patents.  *Id.* at ¶ 55.

18          Judge Haedicke also describes the other option that Microsoft *could have* chosen in order

19   to completely avoid an injunction.  Under that option, known as a Section 315 procedure,

20   Microsoft could have allowed Motorola to set the royalty rate or requested that a German court set

21   the royalty rate, and escrowed money to cover that amount.  Dkt. 725-007 at ¶¶ 57-58.  If

22   Microsoft had done the latter, a separate proceeding would have commenced whereby the German

23   court would hear full evidence about the value of the patents and then set a royalty rate.[2]  In this

24

25   ────────────────────

26        [2]  Microsoft is incorrect to state that the Orange Book procedure is "conclusively proven to
     produce a non-RAND outcome."  Dkt. 724 at p. 15.  As Microsoft did not choose to utilize the
27   Section 315 Orange Book procedure that would have led to a full evidentiary hearing before a
     (footnote continued)

28   DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE                 Summit Law Group pllc
     702 MOTION TO PRECLUDE TESTIMONY BY                        315 Fifth Avenue South, Suite 1000
     MOTOROLA'S EXPERTS - 13                                    Seattle, Washington 98104-2682
     CASE NO. C10-1823-JLR                                      Telephone:  (206) 676-7000
                                                                Fax:  (206) 676-7001

situation, Microsoft *definitely could have avoided an injunction.  Id.*  It is not true that "Haedicke

conceded that he had no idea what would have happened in Germany if Microsoft followed the

Orange Book procedure."  Dkt. 724 at p. 12.  In fact, Microsoft's counsel asked Judge Haedicke "I

understood the conclusion of your expert report was that Microsoft could have avoided an

injunction in Germany by following the Orange Book procedure; correct?" and Judge Haedicke

responded "That's correct."  Dkt. 725-008 (Haedicke Depo.) at 52:11-15; *see also* Berry Decl. Ex.

B at 53:25-54:5.  Microsoft's own German law expert, Dr. Theo Bodewig, agreed that Microsoft

could have avoided an injunction by utilizing the Section 315 procedure:

> Q:  So given the explanation you've given us about the Orange
> Book ruling and the two procedures, it's correct that Microsoft could
> have avoided an injunction if it had followed the second alternative
> and placed into escrow an amount that Motorola demanded.
> Correct?
>
> A:  Possible.
>
> Q:  Well, in your view, that's correct.
>
> A:  Yeah.

Dkt. 732-7 (Bodewig Depo.) at 121:1-9.  Judge Haedicke does not purport to make conclusions

about what Microsoft *should have* done; instead, this is a question for the jury once it has heard all

of the options that were available to Microsoft at the time.  That Judge Haedicke cannot speculate

about what royalty rate a German court might have set is not relevant; his testimony highlights

that Microsoft had options available to it under German law that would have enabled it to avoid an

injunction if it had chosen to do so.

### B.   Motorola's Counsel Properly Objected To Questions Calling For Judge Haedicke's Communications With Motorola's Counsel

Microsoft complains in its motion that Motorola objected to certain questions posed during

Judge Haedicke's deposition.  Dkt. 724 at pp. 13-14, 16.  Motorola's objections were entirely

proper; it was Microsoft that sought improper information and failed to conduct any follow up to

---

German court, which then would have determined a royalty rate, there is no evidence as to what
rate the German court would have set.

DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE
702 MOTION TO PRECLUDE TESTIMONY BY
MOTOROLA'S EXPERTS - 14
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1  try to remedy its poorly phrased questions.  Microsoft counsel's deposition questions violated the

2  protections of Federal Rules of Civil Procedure Rule 26 and Motorola's counsel properly objected

3  to those questions.[3]  Microsoft's counsel asked the witness "Did you ask **Motorola's counsel** or

4  anyone at Motorola whether Motorola planned to enforce the Mannheim judgment against

5  Microsoft?"  Dkt. 725-008 at 102:25-103:2 (emphasis added).  Rule 26 protects "communications

6  between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B),

7  regardless of the form of the communications" except for the expert's compensation or any facts

8  or assumptions relied upon by the expert in preparing his report.  F.R.C.P. Rule 26(b)(4)(C).

9  Microsoft's counsel's question facially violates Rule 26(a)(2)(B) by asking for communications

10  between Judge Haedicke and Motorola's counsel.  Microsoft's counsel did not rephrase or narrow

11  the question to exclude Judge Haedicke's communications with counsel.  Judge Haedicke is not

12  relying on any facts or assumptions provided by counsel relating to whether Motorola intended to

13  enforce a German injunction.  Instead, Judge Haedicke's report states that an injunction does not

14  automatically subject the defendant to enforcement proceedings and describes the steps that a

15  patent holder must take to enforce an injunction.  Dkt. 725-007 at ¶¶ 59-61.  Judge Haedicke does

16  not state any opinions about whether Motorola intended to enforce an injunction in this specific

17  situation.  In any event, Judge Haedicke testified that he had "no information" about whether

18  Motorola would have enforced its German injunction.  Dkt. 725-008 at 104:1-7.  Further questions

19  about who he asked about it are irrelevant when he had already testified that he had no information

20  about the topic; nor is any such information relevant to the opinions he gave in his expert reports.

21       **C.**    **Microsoft Mischaracterizes Judge Haedicke's Testimony Regarding U.S.**
                   **Courts' Orders and German Law**

22          Microsoft attempts to paint Judge Haedicke as dismissing U.S. law and this Court's orders

23  as "irrelevant" or having "no authority."  These statements blatantly mischaracterize Judge

---

25      [3]  Even if Motorola's counsel misspoke to call the protected communications "attorney-client"

26  communications rather than communications protected under Rule 26, the communications were
indeed protected.  Microsoft waived any dispute to the phrasing of the objection by not raising it at

27  the deposition or engaging counsel in any dialogue regarding the applicable privilege objection.

DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE
702 MOTION TO PRECLUDE TESTIMONY BY
MOTOROLA'S EXPERTS - 15
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    Haedicke's actual testimony on these topics. Judge Haedicke did not say that he "believes this

2    Court has no authority to set a worldwide RAND rate." Dkt. 724 at p. 15.  Instead, when asked

3    whether a "RAND royalty determined by a U.S. court and a RAND royalty in Germany are two

4    different things," Judge Haedicke responded "Not necessarily, but it's—the German patent

5    procedure is completely independent and has its different law of civil procedure, and all facts will

6    be assessed by the German courts, and, of course, German judges will look what the American

7    judges have done, but they are by no means bound by what has been done in the U.S.—in the

8    U.S., so it's completely different and completely independent from each other." Dkt. 725-008 at

9    80:18-81:3.

10        Judge Haedicke also did not say that "this Court's RAND determination is irrelevant in

11   Europe." Dkt. 724 at p. 15.[4]  When asked a series of questions about how statements of the

12   European Commission affect  U.S. courts generally and vice versa, Judge Haedicke merely

13   responded by saying that he was not sure whether the European Commission would find a

14   decision made by an authority outside the reach of European Union law to be binding on it.  "I just

15   said, with all due respect to the court, it's not bound by the European Union law, and I—I'm not

16   sure.  I would—I would have to go further into details, of course.  I'm not sure whether an

17   authority outside the use scope—outside the reach of European Union law would be found to be

18

19       [4]   Microsoft also improperly asserts that "European antitrust law bars Motorola from pursuing
20   injunctions against licensees willing to submit to a RAND determination." Dkt. 724 at p. 15.  This
     is false.  On May 6, 2013 the European Commission issued a Press Release in a different case—
21   involving Apple and Motorola—stating its *preliminary* view that "under the specific
     circumstances of this case—a previous commitment to license SEPs on FRAND terms and the
22   agreement of Apple to accept a binding determination of the terms of a FRAND licence for SEPs
     by a third party—recourse to injunctions harms competition." Dkt. 732-009 at p. 2.  The
23   Commission clarified that the "preliminary view expressed in today's Statement of Objections
     does not question the availability of injunctive relief for SEP holders outside the specific
24   circumstances present in this case . . . ." *Id*.  Not only is this statement not applicable to this case,
     but it also is not binding, as it is merely a preliminary statement; "[t]he sending of a Statement of
25   Objections does not prejudge the final outcome of the investigation."  *Id*. at p. 1.  Microsoft's own
     expert confirmed that the European Commission has not yet made any binding decisions in this
26   area.  Dkt. 732-7 at 40:25-41:13.

27

28   DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE
     702 MOTION TO PRECLUDE TESTIMONY BY
     MOTOROLA'S EXPERTS - 16
     CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   sufficient under this declaration.  But again, this is speculation."  Dkt. 725-008 at 95:15-23.  Judge

2   Haedicke's opinion in no way "entails a fundamental rejection of the Court's entire Findings of

3   Fact and Conclusions of Law."  Dkt. 724 at p. 15.  Judge Haedicke is not an expert on U.S. law

4   and does not purport to offer any opinions about U.S. law or the actions of this Court.  Instead,

5   Judge Haedicke describes the different options that were available to Microsoft under German law

6   in order to avoid an injunction.  Microsoft made a decision not to take the option that would have

7   ensured that no injunction would issue; Motorola is entitled to present those options and

8   Microsoft's actions to the jury through an expert in German patent law who can properly explain

9   to the jury how the German patent system works.

10           Microsoft claims that Motorola should "not be permitted to second-guess" this Court's

11  decision to bar Motorola from enforcing a German injunction through expert testimony.  Dkt. 724

12  at pp. 15-16.  Motorola is doing no such thing.  Judge Haedicke does not purport to offer any

13  opinions about whether this Court or the Ninth Circuit properly barred Motorola from *enforcing*

14  its German injunction.  Instead, Judge Haedicke explains the procedure that Microsoft could have

15  used in Germany in order to prevent the German court from ever *issuing* an injunction.  Microsoft

16  could have used that procedure long before this Court issued its opinion.[5]

17      **D.   <u>Judge Haedicke Is Qualified To Opine About Attorneys' Fees That Would Be</u>
             <u>Available in Germany</u>

18          Microsoft claims that it is entitled to over $2.5 million in attorneys' fees as damages for

19  defending against the lawsuits that Motorola filed in Germany.  Dkt. 723-001 at p. 7.  Motorola

20  should be permitted to present expert testimony to dispute that Microsoft is entitled to fees in that

21  amount.  Under German law, attorneys' fees for prevailing parties are determined based on a

22  specific statutory calculation from the Act on the Remuneration of Lawyers.  Dkt. 725-009

23

24  ――――――――――――――

25      [5]  Motorola filed its infringement lawsuits in Germany on July 6 and July 7, 2011.  Dkt. 732-
    001 at p. 26.  According to Microsoft employees Jeff Davidson and Owen Roberts, Microsoft
26  made the decision to move out of Germany no later than March 2012.  Dkt. 732-004 at 56:3-19;
    Dkt. 732-005 at 15:18-16:1.  Microsoft did not file its antisuit injunction with this Court until
27  March 28, 2012.  Dkt. 209.  This Court granted Microsoft's motion on April 12, 2012.  Dkt. 261.

28  DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE
    702 MOTION TO PRECLUDE TESTIMONY BY
    MOTOROLA'S EXPERTS - 17
    CASE NO. C10-1823-JLR

1   (Haedicke Rebuttal Rep.) at ¶ 7.  Under German law, there is no basis for the recovery of

2   attorneys' fees that are higher than the statutory fees unless the parties have agreed otherwise.  *Id.*

3   at ¶ 14.  Judge Haedicke provides relevant opinions about the amount of attorneys' fees that would

4   be statutorily available to Microsoft if Microsoft were to prevail on its claims in Germany.  *Id.* at ¶

5   6.  Currently, Motorola is the prevailing party, so Microsoft is not entitled to any attorneys' fees in

6   Germany.  *Id.*  Judge Haedicke, however, analyzes the fees that would be statutorily available to

7   Microsoft if it were to prevail in the case.  Judge Haedicke is familiar with the German fee-shifting

8   statute that describes how attorneys' fees are to be calculated and is familiar with how to use

9   software that performs that calculation.  *Id.* at ¶¶ 7-13, 27.  Using that software, Judge Haedicke

10  determined that Microsoft is attempting to recover fees for the work of Freshfields Bruckhaus

11  Deringer that are nearly five times the amount of fees that are statutorily available to Microsoft

12  under German law.  *Id.* at ¶¶ 28-29.  Microsoft is unable to point to any errors in Judge Haedicke's

13  methodology, yet it is attempting to prevent the jury from hearing these facts.  That Judge

14  Haedicke has not written any papers about how to insert numbers into a formula does not make

15  him unable to adequately explain to a jury how fees are calculated in Germany.  This is precisely

16  the type of testimony that is helpful to a jury, as a jury will not be familiar with German law or

17  how attorneys' fees are calculated in Germany without the aid of expert testimony.

18          It is irrelevant that Judge Haedicke did not explain "the relevance of his testimony."  Dkt.

19  724 at p. 16.  An expert need not offer an opinion about legal strategy; instead, Judge Haedicke is

20  providing useful information to the jury about how attorneys' fees are calculated in Germany.

21  Further, Microsoft's counsel interrupted Judge Haedicke as he was answering what his

22  understanding of the relevance was and pressed him to answer "Did anyone explain to you why

23  it's under discussion?"  Dkt. 725-008 at 115:22-116:12.  This question clearly implicates

24  discussions between Judge Haedicke and Motorola's counsel and was improper under Rule

25  26(b)(4)(C), as explained above.

26

27

28  DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE
    702 MOTION TO PRECLUDE TESTIMONY BY
    MOTOROLA'S EXPERTS - 18
    CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    Judge Haedicke's testimony regarding German patent law, the Orange Book procedure,

2    and statutorily available attorneys' fees is relevant to the case and useful to the jury and should be

3    permitted in its entirety.

4    **IV.    BRADLEY KELLER'S TESTIMONY IS PROPER AND SHOULD NOT BE**
         **EXCLUDED**

5

6        Microsoft claims attorney fees as a measure of its contract damages.  Mr. Keller, the

7    managing partner of a Seattle law firm for more than 25 years, seeks to offer expert testimony on

8    the reasonableness of Microsoft's attorney fees as well as Microsoft's methodology in determining

9    and apportioning those fees.  Because Microsoft seeks these attorney fees as damages, the jury

10   will be determining the reasonableness of the amount of fees Microsoft seeks.  No basis exists for

11   excluding Mr. Keller's testimony on the reasonableness of attorney fees and such testimony will

12   necessarily help the members of the jury who likely are unfamiliar with the billing practices of

13   lawyers.  To the extent Microsoft seeks to prevent Mr. Keller from offering legal conclusions

14   about the propriety of Microsoft seeking such legal fees as damages, Motorola will not be offering

15   Mr. Keller for such a purpose.

16       **A.    Microsoft Offers No Basis for Excluding Mr. Keller's Analysis of Microsoft's**
             **Unreliable Methodology, Yet Asks The Court To Exclude Mr. Keller's**
17           **Opinions In Their Entirety**

18       As an initial matter, although Microsoft seeks to exclude the *entirety* of Mr. Keller's

19   report, Microsoft raises no objection to—and does not even acknowledge—the analysis Mr. Keller

20   provides in ***over half*** of his report that does not involve the reasonableness of attorney fees.  Only

21   the last three pages of Mr. Keller's report relate to the reasonableness of Microsoft's attorney fees,

22   yet that is the only topic that Microsoft discusses in its motion.  The rest of the report consists of

23   Mr. Keller's analysis of Microsoft's obligation to contemporaneously identify and segregate

24   attorney fees for each matter and appropriately allocate fees.  Microsoft has no basis to exclude

25   these opinions criticizing its damages calculation methodology and yet *asks the Court to exclude*

26   *these opinions anyway*.  Microsoft's attempt to exclude an entire report without explaining to the

27   Court that its reasoning applies to the opinions expressed in only three pages of the report is

28   dishonest and misleading.  Mr. Keller's testimony relating to Microsoft's improper damages

DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE
702 MOTION TO PRECLUDE TESTIMONY BY
MOTOROLA'S EXPERTS - 19
CASE NO. C10-1823-JLR

1  calculation methodology will be useful for the jury and should be permitted.  Microsoft has

2  waived any argument claiming otherwise.

3  **B.    Mr. Keller Is Qualified To Offer An Opinion On The Reasonableness of Attorney Fees**

4
5         Mr. Keller should also be permitted to testify regarding the reasonableness of Microsoft's

   attorney fees.  Microsoft contends that Mr. Keller is not qualified to render an opinion on attorney

6  fees because he is not an expert in ITC practice, in injunctions, or in standard-essential patents and

7  has no technical background.  Dkt. 724 at p. 19.   While these factors may be considered in

8  determining reasonable fees, they are not necessary; Mr. Keller has used rates of the highest-paid

9
10 Seattle attorneys.  *See, e.g.*, Dkt. 726-4, Exh. 11, att. 4 (sealed version showing rates of attorneys

   C. Phillips and R. Cederoth).  Microsoft, a Seattle-based company, cannot dispute that some of

11 these Seattle attorneys practice before the ITC.  And Mr. Keller testified at his deposition that he

12 specifically examined the admissions requirements to practice before the ITC to make sure a

13 Seattle attorney could practice in such a case.  Dkt. 725-10 at 45:8-20 (Keller deposition).  Further,

14
15 Microsoft's attack on Mr. Keller's lack of technical background ignores the fact that Mr. Keller

   specifically included in his analysis whether an attorney has specialized technical background and

16 increased rates accordingly.  *See* Dkt. 725-11 at ¶ 14.  This attack is particularly unfounded

17 because, as Mr. Keller noted, Sidley charged Microsoft "a premium for [some attorneys']

18 expertise but the individuals' area of expertise did not appear to be particularly relevant to the

19
20 work they were doing."  *Id.* at ¶ 15.

21        As support for this argument, Microsoft relies on a case not involving attorney fees at all—

22 *LuMetta v. U.S. Robotics, Inc.*, 824 F.2d 768, 771 (9th Cir. 1987).  That case involved a dispute

23 over whether a contract called for a fixed 5% commission or a variable commission.  *Id.* at 769.

24 And the expert testimony excluded related to industry custom and practice testimony concerning

25
26 how to interpret the contract.  *Id.* at 771.  Such circumstances provide no useful comparison to

   Mr. Keller's testimony.  In the other case Microsoft cites, *Common Cause v. Jones*, 235 F. Supp.

27 2d 1076 (C.D. Cal. 2002), the expert's "only relevant qualifications appear to consist of four years

28 as an associate with two area law firms—ending in 1994."  *Id.* at 1079 n.1.  It is undisputed that

DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE
702 MOTION TO PRECLUDE TESTIMONY BY
MOTOROLA'S EXPERTS - 20
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   Mr. Keller has been practicing law in Seattle for more than 30 years, has been the managing

2   partner of a Seattle law firm for 25 years, keeps apprised of Seattle prevailing rates and the

3   requisite skills and experience needed, and has testified previously as an expert on attorney fees.

4   His analysis will be useful to the jury.

5          Microsoft's argument that Mr. Keller is not qualified to opine on the reasonableness of

6   attorney fees incurred for actions in other jurisdictions ignores the fact that Microsoft has provided

7   absolutely no breakdown of its attorney fees by jurisdiction.  Dkt. 724 at p. 17.  Mr. Keller

8   specifically mentioned this fact in his deposition in response to questioning.  Berry Ex. C at 83:7-

9   16 ("Q.  Now, be [sic] the only Sidley fees for which Microsoft is seeking reimbursement that

10  were incurred in connection with a lawsuit that originated in Seattle are the fees associated with

11  the antisuit injunction motion that was filed in the 1823 proceedings in March 2012; isn't that

12  correct?  A.  I'm aware that that's what Mr. Killough testified.  The problem is you can't tell that

13  from the review of the billings and the allocations and the methodology.").  Microsoft should not

14  be able to use its own failure to maintain adequate records as a reason for excluding Mr. Keller's

15  testimony.   Mr. Keller reasonably used Seattle—the jurisdiction of the lawsuit in which Microsoft

16  filed this lawsuit and seeks the attorney fees—as a point of reference.  Microsoft's objections thus

17  go to weight, not admissibility.  *Primiano v. Cook*, No. 598 F.3d 558, 565 (9th Cir. 2010)

18  (quotation omitted) ("When an expert meets the threshold established by Rule 702 as explained in

19  Daubert, the expert may testify and the jury decides how much weight to give that testimony.").

20  Because Microsoft has failed to provide such information, Microsoft should be barred from

21  arguing that Mr. Keller did not conduct his analysis based on such information.

22          C.      **Mr. Keller's Testimony Will Assist The Jury**

23          Microsoft makes the baseless argument that Mr. Keller's testimony will not assist the jury

24  because "[t]he fact that attorney billing rates are generally higher in larger markets is well-

25  known."  Dkt. 724 at p. 22.  This argument ignores the fact that, because Microsoft seeks these

26  attorney fees as damages, the jury will decide any appropriate award.  It is inconceivable that

27  every potential juror in the Western District of Washington is familiar with prevailing attorney fee

28  DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE
    702 MOTION TO PRECLUDE TESTIMONY BY
    MOTOROLA'S EXPERTS - 21
    CASE NO. C10-1823-JLR

1  rates.   Indeed, it is not even likely they will have any such knowledge.  The case Microsoft cites

2  permits the admission of expert testimony on attorney fees, despite the fact that, in that instance, a

3  trial judge—and not a jury—was the trier of fact.  *In re Parsons*, No. 7-09-15382JR, 2010 WL

4  3547601, at *2 n. 3 (Bankr. D.N.M. Sept. 9, 2010) ("The Court will admit the proffered expert

5  testimony and will give the testimony the weight the Court deems appropriate.").  Trial judges

6  (usually former practicing attorneys themselves) have significantly more knowledge about

7  attorney billing than a lay person.  In fact, in the other case Microsoft cites in support of this

8  argument, *In re Terex Corp.*, 70 B.R. 996 (Bankr. N.D. Ohio 1987), the court excluded such

9  evidence precisely because the judge for the court in that instance had "*consistently reviewed these*

10  *matters in its almost thirty-year tenure.*"  *Id.* at 1001 (emphasis added).  The jury certainly will not

11  have such experience on which to rely and Mr. Keller's testimony will thus necessarily help the

12  trier of fact—the average citizen in the Western District of Washington.

13          D.      **Mr. Keller Will Not Be Testifying As To Any Legal Conclusions**

14          Microsoft seeks to exclude Mr. Keller's testimony as to the ability of Microsoft to recover

15  attorney fees as damages.  Dkt. 724 at p. 22.   As Mr. Keller noted at his deposition, he undertook

16  that analysis voluntarily to address the unique situation in which a party seeks attorney fees as

17  damages without any statutory, contractual, or equitable basis for doing so.  Motorola does not

18  intend to elicit from Mr. Keller at trial his opinion on Microsoft's basis for seeking attorney fees.

19  It is, however, perfectly appropriate for Mr. Keller to testify as to his experience in the general

20  application of the American Rule, without offering an opinion on whether it should apply in this

21  instance, and to explain that Microsoft would have incurred fees even if Motorola had not been

22  pursuing injunctive relief.  Thus, only the final sentence of paragraph 5a and the final sentence of

23  paragraph 9 need be excluded.  The other testimony Microsoft seeks to exclude as legal

24  conclusions are not, in fact, legal conclusions.

25          This Court should reject Microsoft's claim that testimony from Mr. Keller would be

26  unduly prejudicial.  Dkt. 724 at p. 24.  Given that Mr. Keller will not be testifying as to

27  Microsoft's legal ability to recover fees, no risk exists that "the jury may believe the attorney-

28  DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE
702 MOTION TO PRECLUDE TESTIMONY BY
MOTOROLA'S EXPERTS - 22
CASE NO. C10-1823-JLR

1   witness, who is presented to them imbued with all the mystique inherent in the title 'expert,' is

2   more knowledgeable than the judge in a *given area of the law*."  Dkt. 724 at p. 24 (quoting *Specht*

3   *v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988)) (emphasis added).  No risk of prejudice exists from

4   a jury hearing an attorney-witness testify on the reasonableness of attorney fees, as reasonableness

5   is a factual inquiry.  Mr. Keller's decades-long experience as a Seattle attorney gives him unique

6   insight into the reasonableness of Microsoft's fee request.  Indeed, courts commonly turn to

7   lawyers to discern the reasonableness of attorney fees and no reason exists to exclude Mr. Keller

8   here.

9          As Mr. Keller is well-qualified to testify on the reasonableness of attorney fees, and as

10  such testimony will assist the jury, the court should permit the testimony of Mr. Keller in its

11  entirety with the exception of the final sentence of paragraph 5a and the final sentence of

12  paragraph 9.

13                                  **Conclusion**

14         For the foregoing reasons, Microsoft's motion should be denied.

15         DATED this 12th day of July, 2013.

16

17                                              Respectfully submitted,

18                                              SUMMIT LAW GROUP PLLC

19                                              By */s/ Ralph H. Palumbo*
                                                By */s/ Philip S. McCune*
20                                                  Ralph H. Palumbo, WSBA #04751
                                                    Philip S. McCune, WSBA #21081
21                                                  *ralphp@summitlaw.com*
                                                    *philm@summitlaw.com*
22

23                                              By */s/ Thomas V.  Miller*
                                                    Thomas V. Miller
24                                                  MOTOROLA MOBILITY LLC
                                                    600 North U.S. Highway 45
25                                                  Libertyville, IL  60048-1286
                                                    (847) 523-2162
26

27

28  DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE
    702 MOTION TO PRECLUDE TESTIMONY BY
    MOTOROLA'S EXPERTS - 23
    CASE NO. C10-1823-JLR

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By /s/ Kathleen M. Sullivan
    Kathleen M. Sullivan, NY #1804624
    51 Madison Ave., 22nd Floor
    New York, NY 10010
    (212) 849-7000
    *kathleensullivan@quinnemanuel.com*

By /s/ Brian C. Cannon
    Brian C. Cannon, CA #193071
    555 Twin Dolphin Drive, 5th Floor
    Redwood Shores, CA 94065
    (650) 801-5000
    *briancannon@quinnemanuel.com*

By /s/ William C. Price
    William C. Price, CA #108542
    865 S. Figueroa Street, 10th Floor
    Los Angeles, CA 90017
    (213) 443-3000
    *williamprice@quinnemanuel.com*

**Attorneys for Motorola Solutions, Inc.,
Motorola Mobility LLC and General
Instrument Corp.**

DEFENDANTS' OPPOSITION TO MICROSOFT'S RULE
702 MOTION TO PRECLUDE TESTIMONY BY
MOTOROLA'S EXPERTS - 24
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1

**CERTIFICATE OF SERVICE**

2

     I hereby certify that on this day I electronically filed the foregoing with the Clerk of the

3

Court using the CM/ECF system which will send notification of such filing to the following:

4

               Arthur W. Harrigan, Jr., Esq.
               Christopher T. Wion, Esq.

5

               Shane P. Cramer, Esq.
               Calfo Harrigan Leyh & Eakes LLP

6

               *arthurh@calfoharrigan.com*
               *chrisw@calfoharrigan.com*

7

               *shanec@calfoharrigan.com*

8

               Richard A. Cederoth, Esq.

9

               Brian R. Nester, Esq.
               David T. Pritikin, Esq.

10

               Douglas I. Lewis, Esq.
               John W. McBride, Esq.

11

               David Greenfield, Esq.
               William H. Baumgartner, Jr., Esq.

12

               David C. Giardina, Esq.
               Carter G. Phillips, Esq.

13

               Constantine L. Trela, Jr., Esq.
               Ellen S. Robbins, Esq.

14

               Nathaniel C. Love, Esq.
               Sidley Austin LLP

15

               *rcederoth@sidley.com*
               *bnester@sidley.com*

16

               *dpritikin@sidley.com*
               *dilewis@sidley.com*

17

               *jwmcbride@sidley.com*
               *david.greenfield@sidley.com*

18

               *wbaumgartner@sidley.com*
               *dgiardina@sidley.com*

19

               *cphillips@sidley.com*
               *ctrela@sidley.com*

20

               *erobbins@sidley.com*
               *nlove@sidley.com*

21

22

               T. Andrew Culbert, Esq.
               David E. Killough, Esq.

23

               Microsoft Corp.
               *andycu@microsoft.com*

24

               *davkill@microsoft.com*

25

     DATED this 12th day of July, 2013.

26

                                            /s/ *Marcia A. Ripley*

27

                                             Marcia A. Ripley

28

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001