# EXHIBIT A

3

# In The Matter Of:

*MICROSOFT CORPORATION*
*v.*
*MOTOROLA INC., et al.*

_____

*RICHARD HOLLEMAN – Vol. 1*

*June 19, 2013*

_____

# *CONFIDENTIAL*
# *ATTORNEYS' EYES ONLY*

**MERRILL CORPORATION**

**LegaLink, Inc.**                    135 Main Street
4th Floor
San Francisco, CA 94105
Phone: 415.357.4300
Fax: 415.357.4301

CONFIDENTIAL – ATTORNEYS' EYES ONLY
RICHARD HOLLEMAN – 6/19/2013

Page 56

```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE
------------------------------------------x
MICROSOFT CORPORATION,

             Plaintiff,

     – vs –

MOTOROLA, INC., et al,

             Defendants.
------------------------------------------x
MOTOROLA MOBILITY, INC., et al.,

             Plaintiffs,

     – vs –        Case No. 1:10–1823–JLR

MICROSOFT CORPORATION,

             Defendant.
------------------------------------------x
    ** CONFIDENTIAL – ATTORNEYS' EYES ONLY **
```

Continued Videotaped DEPOSITION of RICHARD

HOLLEMAN, held at the offices of Sidley & Austin

LLP, 787 Seventh Avenue, New York, New York, on

the 19th day of June 2013, commencing at 9:10

a.m., before Colette Cantoni, a Registered

Professional Reporter and Notary Public of the

State of New York, pursuant to Notice.

(2005–451696)

CONFIDENTIAL – ATTORNEYS' EYES ONLY
RICHARD HOLLEMAN – 6/19/2013

Page 63

```
 1        A    No, they haven't.                        09:14:02
 2        Q    Okay.  You're not offering any           09:14:03
 3   opinions on legal issues, are you?                 09:14:07
 4        A    No, I'm not.                             09:14:08
 5        Q    You're not offering any opinions on      09:14:09
 6   economics?                                         09:14:11
 7        A    Definitely not.                          09:14:11
 8        Q    And you're not offering any opinions     09:14:12
 9   on relocation costs in Europe?                     09:14:14
10        A    I'm sorry, what kind of costs?           09:14:18
11        Q    Relocation costs in Europe.              09:14:21
12        A    Relocation costs in Europe.              09:14:23
13             No, I'm not.                             09:14:25
14        Q    You're not offering any opinions on      09:14:26
15   any amount of damages that might be                09:14:27
16   appropriate in this matter?                        09:14:29
17        A    That's right, I am not.                  09:14:30
18        Q    You're not offering any opinions         09:14:31
19   about the SD3C or the SDA, are you?                09:14:33
20        A    Correct, I am not.                       09:14:37
21        Q    You're not offering any opinions         09:14:39
22   concerning any Microsoft patents?                  09:14:41
23        A    That's correct, I am not.                09:14:43
24        Q    You're not offering any opinions         09:14:44
25   concerning any Motorola patents?                   09:14:49
```

CONFIDENTIAL – ATTORNEYS' EYES ONLY
RICHARD HOLLEMAN – 6/19/2013

| | | |
|---|---|---|
| 1 | report and disregards the materials, but you | 09:38:19 |
| 2 | can answer. | 09:38:21 |
| 3 | A  I have a little difficulty with | 09:38:23 |
| 4 | characterizing it as my personal experience. | 09:38:26 |
| 5 | I think from my reports and my | 09:38:31 |
| 6 | listing of my CV it's more than what I would | 09:38:35 |
| 7 | call personal. | 09:38:39 |
| 8 | There was professional involvement. | 09:38:41 |
| 9 | And it's certainly from the result of my | 09:38:45 |
| 10 | professional activities involved in standards | 09:38:49 |
| 11 | for, you know, 30, more than 30 years that | 09:38:53 |
| 12 | helped form the basis for my expert opinions | 09:38:58 |
| 13 | concerning the SDOs. | 09:39:04 |
| 14 | Q  Okay.  Understand that. | 09:39:05 |
| 15 | A  Okay. | 09:39:07 |
| 16 | Q  But you don't have a degree in | 09:39:08 |
| 17 | standard setting organizations or standard | 09:39:11 |
| 18 | developing organizations? | 09:39:13 |
| 19 | A  No, I do not. | 09:39:14 |
| 20 | Q  Okay. | 09:39:15 |
| 21 | A  If you're about to go to another | 09:39:17 |
| 22 | question.  When -- a couple of questions ago | 09:39:19 |
| 23 | when we were talking about what the IEEE staff | 09:39:26 |
| 24 | does or doesn't do -- | 09:39:31 |
| 25 | Q  Um-hum. | 09:39:33 |

7

CONFIDENTIAL – ATTORNEYS' EYES ONLY
RICHARD HOLLEMAN – 6/19/2013

Page 91

| | | |
|---|---|---|
| 1 | mischaracterizes his testimony, and it's been | 09:57:28 |
| 2 | asked and answered.  And I object to the form | 09:57:32 |
| 3 | of the question. | 09:57:35 |
| 4 | You can answer. | 09:57:37 |
| 5 | A   No, I have -- in my involvement with | 09:57:39 |
| 6 | both the IEEE and the ITU and many | 09:57:44 |
| 7 | patent-related standards issues, there was | 09:57:51 |
| 8 | never an issue that required me to consult | 09:57:54 |
| 9 | with an attorney in that regard. | 09:57:57 |
| 10 | Q   You opine in your expert reports | 09:58:04 |
| 11 | that RAND commitments that Motorola made to | 09:58:06 |
| 12 | the ITU and the IEEE do not limit Motorola's | 09:58:11 |
| 13 | ability to seek injunctions on its | 09:58:17 |
| 14 | standard-essential patents for either the | 09:58:19 |
| 15 | 802.11 or H.264 standards, correct? | 09:58:23 |
| 16 | A   Not exactly. | 09:58:26 |
| 17 | Q   How would you put it? | 09:58:28 |
| 18 | A   My statement is that the patent | 09:58:31 |
| 19 | policies of IEEE and the ITU do not address | 09:58:34 |
| 20 | injunctions in any way, and are outside of the | 09:58:42 |
| 21 | scope of their patent policies. | 09:58:47 |
| 22 | Q   So you're not offering any opinions | 09:58:51 |
| 23 | as to whether Motorola was limited in any way | 09:58:53 |
| 24 | in seeking injunctions on its | 09:58:57 |
| 25 | standard-essential patents for the 802.11 or | 09:59:01 |

CONFIDENTIAL – ATTORNEYS' EYES ONLY
RICHARD HOLLEMAN – 6/19/2013

Page 93

| | | |
|---|---|---|
| 1 | policies of both SDOs do not in any way | 10:00:16 |
| 2 | address injunctions.  And just as negotiations | 10:00:20 |
| 3 | and legal matters are considered outside the | 10:00:25 |
| 4 | scope of the patent policies, that would be | 10:00:28 |
| 5 | outside the scope of the SDO's patent | 10:00:32 |
| 6 | policies. | 10:00:37 |
| 7 | Q   So you're not saying that the SDO | 10:00:50 |
| 8 | patent policies expressly allow Motorola to | 10:00:53 |
| 9 | seek injunctions, are you? | 10:00:57 |
| 10 | A   I think, as I said, considerations | 10:00:59 |
| 11 | relating to injunctions are outside the scope | 10:01:03 |
| 12 | of the patent policies. | 10:01:05 |
| 13 | Q   I'm just trying to understand what | 10:01:08 |
| 14 | you mean -- | 10:01:10 |
| 15 | A   So I wouldn't -- | 10:01:11 |
| 16 | Q   -- "outside the scope of the patent | 10:01:12 |
| 17 | policies." | 10:01:13 |
| 18 | So, are you saying that the IEEE and | 10:01:15 |
| 19 | the ITU simply have no position one way or the | 10:01:17 |
| 20 | other on whether Motorola can seek injunctions | 10:01:20 |
| 21 | on its standard-essential patents? | 10:01:22 |
| 22 | A   Correct.  It's not part of the | 10:01:26 |
| 23 | patent policies. | 10:01:28 |
| 24 | Q   In your understanding, could | 10:01:36 |
| 25 | Motorola have sued Microsoft and sought an | 10:01:37 |

CONFIDENTIAL – ATTORNEYS' EYES ONLY
RICHARD HOLLEMAN – 6/19/2013

Page 94

| | | |
|---|---|---|
| 1 | injunction without ever making any offer to | 10:01:40 |
| 2 | license its H.264 or 802.11 standard-essential | 10:01:43 |
| 3 | patents? | 10:01:48 |
| 4 | MR. CUSHING:  Object to the form of | 10:01:48 |
| 5 | the question, vague, improper hypothetical and | 10:01:50 |
| 6 | incomplete.  You can answer. | 10:01:52 |
| 7 | A   I believe that's beyond the scope of | 10:01:57 |
| 8 | my testimony relative to SDOs, and it would | 10:01:58 |
| 9 | involve some legal conclusions that I'm not | 10:02:03 |
| 10 | qualified to give in terms of whether Motorola | 10:02:06 |
| 11 | could or could not seek such action | 10:02:09 |
| 12 | independent of any RAND commitment. | 10:02:12 |
| 13 | Q   Do the patent policies, the IPR | 10:02:18 |
| 14 | policies of either the IEEE or the ITU, | 10:02:23 |
| 15 | require Motorola to make an offer to license | 10:02:27 |
| 16 | its standard-essential patents before seeking | 10:02:30 |
| 17 | an injunction? | 10:02:32 |
| 18 | MR. CUSHING:  I'm going to object, | 10:02:34 |
| 19 | lack of foundation. | 10:02:36 |
| 20 | MR. CEDEROTH:  Actually, let me | 10:02:37 |
| 21 | withdraw the question because I screwed it up | 10:02:38 |
| 22 | at the end.  I'll start over with it. | 10:02:40 |
| 23 | A   Okay. | 10:02:43 |
| 24 | Q   Do the IPR policies of either the | 10:02:49 |
| 25 | ITU or IEEE require Motorola to make an offer | 10:02:53 |

CONFIDENTIAL – ATTORNEYS' EYES ONLY
RICHARD HOLLEMAN – 6/19/2013

| | | |
|---|---|---|
| 1 | Have you reviewed those letters? | 10:04:25 |
| 2 | A   Yes. | 10:04:27 |
| 3 | Q   Okay.  And I believe you have opined | 10:04:28 |
| 4 | that those letters represent an invitation to | 10:04:35 |
| 5 | participate in good faith negotiations in | 10:04:41 |
| 6 | relation to RAND license for each of those | 10:04:44 |
| 7 | standards, correct? | 10:04:46 |
| 8 | A   Yes. | 10:04:48 |
| 9 | Q   You're also aware, and I believe | 10:04:54 |
| 10 | your report mentions, that after receiving | 10:04:56 |
| 11 | those letters Microsoft instituted this | 10:05:00 |
| 12 | lawsuit seeking to have a determination of | 10:05:05 |
| 13 | what a proper RAND royalty would be for each | 10:05:09 |
| 14 | of those two standards, correct? | 10:05:13 |
| 15 | A   Yes. | 10:05:15 |
| 16 | Q   And it's your opinion that by filing | 10:05:19 |
| 17 | this action Microsoft refused to participate | 10:05:23 |
| 18 | in good faith negotiations, correct? | 10:05:28 |
| 19 | MR. CUSHING:  Object to form. | 10:05:31 |
| 20 | A   It's not so much my opinion, it's my | 10:05:33 |
| 21 | understanding that that did not take place. | 10:05:36 |
| 22 | Q   So you're not drawing any | 10:05:45 |
| 23 | conclusions in terms of your opinions based on | 10:05:46 |
| 24 | the fact that Microsoft filed this lawsuit? | 10:05:51 |
| 25 | MR. CUSHING:  Excuse me.  Would you | 10:05:54 |

CONFIDENTIAL – ATTORNEYS' EYES ONLY
RICHARD HOLLEMAN – 6/19/2013

Page 97

| | | |
|---|---|---|
| 1 | read that back, please, I didn't quite catch | 10:05:55 |
| 2 | that. | 10:05:58 |
| 3 | MR. CEDEROTH:  You may want to read | 10:05:59 |
| 4 | back the prior answer, also. | 10:06:01 |
| 5 | (Record read.) | 10:06:02 |
| 6 | MR. CUSHING:  Object to the form. | 10:06:28 |
| 7 | You can answer it if you can. | 10:06:29 |
| 8 | A   That's really outside the scope of | 10:06:33 |
| 9 | my testimony.  It's outside the procedure of | 10:06:38 |
| 10 | the SDO patent policy.  This is in the area of | 10:06:43 |
| 11 | the negotiations between the two parties | 10:06:49 |
| 12 | which, as the ITU specifically says, is left | 10:06:52 |
| 13 | outside of the ITU. | 10:06:56 |
| 14 | Q   Would your opinions in this case | 10:07:07 |
| 15 | differ in any way if instead of filing this | 10:07:09 |
| 16 | lawsuit Microsoft had simply written back to | 10:07:12 |
| 17 | Motorola saying, Your demands were outrageous, | 10:07:17 |
| 18 | please provide us with a true RAND offer? | 10:07:22 |
| 19 | MR. CUSHING:  Objection, the | 10:07:27 |
| 20 | question's outside the scope.  You can answer. | 10:07:28 |
| 21 | A   The only comment I would make is | 10:07:35 |
| 22 | that negotiation involves interaction between | 10:07:37 |
| 23 | the parties involved.  And the SDOs envision | 10:07:44 |
| 24 | that there will be interaction on a bilateral | 10:07:50 |
| 25 | basis between the patentholder who has made | 10:07:52 |

CONFIDENTIAL – ATTORNEYS' EYES ONLY
RICHARD HOLLEMAN – 6/19/2013

Page 128

| | | |
|---|---|---|
| 1 | testified in my report, I've commented that | 11:05:53 |
| 2 | from the SDO perspective, okay, they made a | 11:05:57 |
| 3 | commitment, a letter assurance to license on | 11:06:04 |
| 4 | the RAND terms and conditions.  And in | 11:06:06 |
| 5 | reviewing these letters at the time, there was | 11:06:11 |
| 6 | nothing here that would lead me to believe | 11:06:15 |
| 7 | that these were not offers made in good faith | 11:06:17 |
| 8 | with the intent of negotiating a RAND license. | 11:06:21 |
| 9 | The Court's actions are separate and | 11:06:26 |
| 10 | apart from my considerations. | 11:06:28 |
| 11 | Q   But based on the Court's actions, | 11:06:31 |
| 12 | neither of the October 2010 letters set forth | 11:06:33 |
| 13 | RAND terms and conditions for Microsoft? | 11:06:38 |
| 14 | A   I have no -- | 11:06:42 |
| 15 | MR. CUSHING:  Objection as to | 11:06:43 |
| 16 | form -- excuse me -- as to form and outside | 11:06:44 |
| 17 | the scope.  You may answer. | 11:06:45 |
| 18 | A   Yeah, I think sort of, as I said | 11:06:47 |
| 19 | before, I have no opinion on trying to equate | 11:06:49 |
| 20 | these letters to what the Court's, the Court's | 11:06:52 |
| 21 | Order. | 11:06:56 |
| 22 | Q   Now, how have you studied these | 11:07:06 |
| 23 | letters to determine that they communicate a | 11:07:08 |
| 24 | good faith invitation to negotiate? | 11:07:11 |
| 25 | A   Well, in reading the letters, | 11:07:16 |

CONFIDENTIAL – ATTORNEYS' EYES ONLY
RICHARD HOLLEMAN – 6/19/2013

| | | |
|---|---|---|
| 1 | clearly Mic- –– Motorola is offering to grant | 11:07:19 |
| 2 | Microsoft a worldwide nonexclusive license | 11:07:28 |
| 3 | under Motorola's patents.  That indicates a | 11:07:30 |
| 4 | willingness to license in that regard, and to | 11:07:37 |
| 5 | do it according to the IEEE bylaws, patent | 11:07:41 |
| 6 | policy. | 11:07:46 |
| 7 | And similarly, on the other letter, | 11:07:47 |
| 8 | according to the ITU, and Motorola indicates | 11:07:50 |
| 9 | that it does include, offers licenses under | 11:07:58 |
| 10 | RAND terms and conditions, it states its view, | 11:08:05 |
| 11 | a reasonable royalty rate.  And in reading the | 11:08:13 |
| 12 | letter, the, I think it's pretty evident that | 11:08:18 |
| 13 | this is an attempt on Motorola's part to | 11:08:23 |
| 14 | engage Microsoft in a negotiation for a | 11:08:28 |
| 15 | license. | 11:08:33 |
| 16 | Q   Where does the letter invite a | 11:08:34 |
| 17 | negotiation, either letter? | 11:08:40 |
| 18 | A   I don't see the word "negotiation." | 11:08:44 |
| 19 | What I see is an offer to license. | 11:08:47 |
| 20 | Q   And it's your opinion that the offer | 11:08:51 |
| 21 | does not need to be RAND, correct? | 11:08:52 |
| 22 | A   No.  The offer –– if you're talking | 11:08:55 |
| 23 | about, quote-unquote, a RAND offer, as the | 11:08:59 |
| 24 | term is sometimes used, and in this case an | 11:09:04 |
| 25 | initial RAND offer –– and I think as I comment | 11:09:09 |

CONFIDENTIAL – ATTORNEYS' EYES ONLY
RICHARD HOLLEMAN – 6/19/2013

| | | |
|---|---|---|
| 1 | correct? | 11:32:57 |
| 2 | A   Correct. | 11:32:57 |
| 3 | Q   Okay.  And that can be determined | 11:32:58 |
| 4 | simply by reading the policies, correct? | 11:33:01 |
| 5 | A   Correct. | 11:33:06 |
| 6 | Q   You don't know, though, as a legal | 11:33:06 |
| 7 | matter whether, despite the fact they don't | 11:33:07 |
| 8 | mention injunctions one way or the other, they | 11:33:11 |
| 9 | might nonetheless limit the IPR holder's | 11:33:16 |
| 10 | rights to enforce its patents, including the | 11:33:19 |
| 11 | right to seek an injunction? | 11:33:21 |
| 12 | MR. CUSHING:  Object to the form of | 11:33:22 |
| 13 | the question to the extent it calls for a | 11:33:23 |
| 14 | legal conclusion.  You can -- | 11:33:26 |
| 15 | A   To the extent it calls for a legal | 11:33:29 |
| 16 | conclusion, I'm not attempting to give an | 11:33:31 |
| 17 | opinion on a legal conclusion. | 11:33:33 |
| 18 | As you stated, my opinion is based | 11:33:35 |
| 19 | on having read and reviewed these documents, | 11:33:37 |
| 20 | and having been familiar with them and my work | 11:33:40 |
| 21 | with the SDOs, okay.  And the documents speak | 11:33:43 |
| 22 | about concerns about anticompetitive behavior, | 11:33:47 |
| 23 | okay, compe- -- competition and antitrust | 11:33:52 |
| 24 | concerns, which are legal matters. | 11:33:56 |
| 25 | So it's not that I'm giving a legal | 11:34:00 |

15

CONFIDENTIAL – ATTORNEYS' EYES ONLY
RICHARD HOLLEMAN – 6/19/2013

| | | |
|---|---|---|
| 1 | opinion, but in reviewing the documents there | 11:34:02 |
| 2 | is nothing there that would, in my opinion, go | 11:34:08 |
| 3 | to a limitation of the patentholder's rights | 11:34:13 |
| 4 | to enforce its patents, nothing there that | 11:34:17 |
| 5 | would limit its right to seek an injunction. | 11:34:21 |
| 6 | And that's simply what I'm stating. | 11:34:23 |
| 7 |     Q   All right.  And the basis for your | 11:34:25 |
| 8 | opinion is that it's not addressed in those, | 11:34:28 |
| 9 | it's not expressly addressed in those IPR | 11:34:32 |
| 10 | antitrust policies? | 11:34:35 |
| 11 |     A   Correct. | 11:34:37 |
| 12 |     Q   In the course of these negotiations | 11:34:43 |
| 13 | that you envisioned, at what point do you | 11:34:47 |
| 14 | believe that the IEEE and ITU IPR policies | 11:34:54 |
| 15 | permit the standard-essential patentholder to | 11:35:01 |
| 16 | seek an injunction? | 11:35:04 |
| 17 |     MR. CUSHING:  My objection is to the | 11:35:05 |
| 18 | form of the question, negotiations he | 11:35:07 |
| 19 | envisions.  But the subject matter's beyond | 11:35:10 |
| 20 | the scope of his opinions in this case.  You | 11:35:14 |
| 21 | may answer. | 11:35:16 |
| 22 |     A   The SDO takes no position to, takes | 11:35:20 |
| 23 | no position on what activities occur as part | 11:35:24 |
| 24 | of the negotiation.  So to the extent that the | 11:35:28 |
| 25 | question you asked includes consideration of | 11:35:31 |

CONFIDENTIAL – ATTORNEYS' EYES ONLY
RICHARD HOLLEMAN – 6/19/2013

Page 154

| | | |
|---|---|---|
| 1 | MR. CUSHING:  Objection. | 11:44:06 |
| 2 | Q   -- is that right? | 11:44:06 |
| 3 | MR. CUSHING:  I'm sorry, I didn't | 11:44:07 |
| 4 | mean to interrupt you.  Object to form.  You | 11:44:10 |
| 5 | may answer. | 11:44:12 |
| 6 | A   I think it's pretty clearly stated | 11:44:13 |
| 7 | in number 4. | 11:44:15 |
| 8 | What I disagree with is | 11:44:16 |
| 9 | Dr. Murphy's, to the extent that he would like | 11:44:22 |
| 10 | us to accept the Court's Order, which relates | 11:44:25 |
| 11 | to a specific set of circumstances Motorola | 11:44:29 |
| 12 | might resolve, okay.  And as I said in the | 11:44:32 |
| 13 | final sentence, it does not make sense to | 11:44:36 |
| 14 | consider it as a guide to bilateral | 11:44:39 |
| 15 | negotiations, that should have occurred | 11:44:41 |
| 16 | between specific parties.  And in this case | 11:44:44 |
| 17 | offers Motorola made, neither the patent | 11:44:50 |
| 18 | policy of the ITU or the IEEE, that this is | 11:44:53 |
| 19 | not something that is part of those policies. | 11:44:59 |
| 20 | So while it certainly applies to the | 11:45:03 |
| 21 | Order, and I'm not able to question the | 11:45:05 |
| 22 | Judge's Order, okay, in that regard, my | 11:45:10 |
| 23 | disagreement is that Dr. Murphy assumes this | 11:45:14 |
| 24 | as the basis for all bilateral negotiations. | 11:45:18 |
| 25 | Q   I'm trying to understand your | 11:45:26 |

CONFIDENTIAL – ATTORNEYS' EYES ONLY
RICHARD HOLLEMAN – 6/19/2013

Page 156

| | | |
|---|---|---|
| 1 | applicable to a unique set of circumstances | 11:47:15 |
| 2 | between Motorola and Microsoft. | 11:47:18 |
| 3 | And the Court's Order did not exist | 11:47:22 |
| 4 | when Motorola made its RAND assurance.  And | 11:47:26 |
| 5 | certainly, such considerations are not part of | 11:47:32 |
| 6 | the SDO's patent policies. | 11:47:37 |
| 7 | That's the only thing I'm saying | 11:47:38 |
| 8 | about it.  I'm not giving an opinion in terms | 11:47:40 |
| 9 | of whether it's good, bad or otherwise. | 11:47:43 |
| 10 | Q   So, and again when you say that the | 11:47:49 |
| 11 | Court's considerations were not part of the | 11:47:51 |
| 12 | SDO IPR policies, you're just saying that the | 11:47:54 |
| 13 | Court's considerations were neither expressly | 11:48:01 |
| 14 | excluded nor expressly included from proper | 11:48:04 |
| 15 | considerations under the IPR policies? | 11:48:09 |
| 16 | MR. CUSHING:  Object to the form and | 11:48:11 |
| 17 | foundation.  You can answer. | 11:48:12 |
| 18 | A   The provisions in the Court Order go | 11:48:18 |
| 19 | to negot- -- aspects of negotiation.  And as | 11:48:21 |
| 20 | I've said many times, negotiations are outside | 11:48:26 |
| 21 | the scope of the patent policies. | 11:48:29 |
| 22 | Q   Yeah, and I don't mean to flogger | 11:48:31 |
| 23 | that horse on that.  I just, it's not clear to | 11:48:34 |
| 24 | me whether at some point there's something in | 11:48:37 |
| 25 | the IPR policies that you think actually | 11:48:39 |

CONFIDENTIAL – ATTORNEYS' EYES ONLY
RICHARD HOLLEMAN – 6/19/2013

Page 164

| | | |
|---|---|---|
| 1 | Q   But forcing me to go back through, | 12:00:21 |
| 2 | change topics on you real quickly, because you | 12:00:26 |
| 3 | reminded me of something that we didn't quite | 12:00:28 |
| 4 | finish. | 12:00:30 |
| 5 | On the October 2010 letters to | 12:00:32 |
| 6 | Microsoft -- | 12:00:40 |
| 7 | A   Not -- this is not hold-up. | 12:00:45 |
| 8 | Q   Not hold-up. | 12:00:48 |
| 9 | A   Okay. | 12:00:49 |
| 10 | Q   (Continuing) we talked before about | 12:00:50 |
| 11 | your conclusion that they demonstrate, in your | 12:00:52 |
| 12 | opinion, a good faith invitation to negotiate | 12:00:57 |
| 13 | on behalf of Motorola, correct? | 12:01:03 |
| 14 | A   Yes. | 12:01:05 |
| 15 | Q   And is it correct that the basis for | 12:01:07 |
| 16 | your belief that it's a good faith invitation | 12:01:13 |
| 17 | to negotiate is that the letters refer to | 12:01:18 |
| 18 | offering standard terms in the corresponding | 12:01:23 |
| 19 | testimony of the Motorola witnesses in | 12:01:29 |
| 20 | deposition was that the letters included | 12:01:34 |
| 21 | standard terms? | 12:01:37 |
| 22 | MR. CUSHING:  Objection, asked and | 12:01:38 |
| 23 | answered.  You can answer it again. | 12:01:39 |
| 24 | A   And an additional factor, which I | 12:01:42 |
| 25 | think is very important, that Motorola offers | 12:01:44 |

CONFIDENTIAL – ATTORNEYS' EYES ONLY
RICHARD HOLLEMAN – 6/19/2013

| | | |
|---|---|---|
| 1 | to license the patents under reasonable | 12:01:47 |
| 2 | nondiscriminatory terms and conditions | 12:01:51 |
| 3 | according to Section 6.1 of the IEEE bylaws. | 12:01:52 |
| 4 | So this to me, in my expertise, is | 12:01:59 |
| 5 | very important that it is connected to the | 12:02:03 |
| 6 | RAND declaration that Motorola has made, in | 12:02:09 |
| 7 | addition to what you've said. | 12:02:11 |
| 8 | Q   Okay.  But that portion of the IPR | 12:02:16 |
| 9 | policies, both for the -- first let me ask | 12:02:20 |
| 10 | you.  Is there a corresponding reference to | 12:02:26 |
| 11 | the ITU IPR policies in the second letter? | 12:02:28 |
| 12 | (Witness reviewing document.) | 12:02:31 |
| 13 | A   No, I do not see one. | 12:02:37 |
| 14 | Q   Okay.  So going back to the October | 12:02:39 |
| 15 | 21 letter that references the IEEE IPR | 12:02:42 |
| 16 | policies. | 12:02:46 |
| 17 | Those IPR policies are silent as to | 12:02:48 |
| 18 | what the RAND royalty should be or how the | 12:02:53 |
| 19 | negotiation should be conducted, if there are | 12:02:57 |
| 20 | any negotiations at all? | 12:02:58 |
| 21 | A   Yes.  I think I've covered that a | 12:03:01 |
| 22 | number of times this morning. | 12:03:03 |
| 23 | Q   Okay.  So with respect to the | 12:03:05 |
| 24 | October 29 letter, the basis for your | 12:03:07 |
| 25 | conclusion that they constituted good faith | 12:03:11 |

CONFIDENTIAL – ATTORNEYS' EYES ONLY
RICHARD HOLLEMAN – 6/19/2013

Page 168

| 1 | covered a range of topics that you're not | 12:19:16 |
| 2 | offering opinions on, and I missed one. | 12:19:21 |
| 3 | And so is it correct that you are | 12:19:22 |
| 4 | not an expert on the market for patents, and | 12:19:27 |
| 5 | will not be offering any opinions as to the | 12:19:29 |
| 6 | market for patents? | 12:19:32 |
| 7 | A   The market for patents? | 12:19:34 |
| 8 | Q   The market for patents. | 12:19:35 |
| 9 | A   Yes, I will not be offering an | 12:19:36 |
| 10 | opinion on that. | 12:19:38 |
| 11 | Q   And you also will not be offering an | 12:19:40 |
| 12 | opinion as to any aspect of whether particular | 12:19:42 |
| 13 | negotiations, offers and counteroffers are in | 12:19:49 |
| 14 | good faith or not? | 12:19:54 |
| 15 | A   That's right.  Since that's part of | 12:19:57 |
| 16 | the negotiation process, and the details of | 12:19:58 |
| 17 | the process is beyond the scope of my opinion, | 12:20:03 |
| 18 | except for the, as far as the negotiations go, | 12:20:08 |
| 19 | except for the material that we have already | 12:20:12 |
| 20 | discussed and reviewed and my opinions that I | 12:20:15 |
| 21 | formed in terms of Motorola's actions, to that | 12:20:20 |
| 22 | extent I'm giving an opinion on good faith, | 12:20:28 |
| 23 | but not in terms of the details and | 12:20:31 |
| 24 | interactions in the negotiation process. | 12:20:33 |
| 25 | Q   The extent of your opinion as to | 12:20:37 |

CONFIDENTIAL – ATTORNEYS' EYES ONLY
RICHARD HOLLEMAN – 6/19/2013

Page 169

| | | |
|---|---|---|
| 1 | good faith, though, extends only as far as the | 12:20:39 |
| 2 | Motorola letters in October 2010? | 12:20:42 |
| 3 | A   It extends to the Motorola letters, | 12:20:48 |
| 4 | their letter of assurance, RAND assurance to | 12:20:53 |
| 5 | the IEEE, their letter to the ITU.  And in the | 12:20:56 |
| 6 | context of those disclosures, okay, these two | 12:21:05 |
| 7 | letters are examples of that being put into a | 12:21:08 |
| 8 | practice, which is why I form my opinion, | 12:21:17 |
| 9 | okay, this is on paragraph 60, from the | 12:21:21 |
| 10 | perspective of the SDO, which is where I come | 12:21:27 |
| 11 | from, "Motorola has fully complied with its | 12:21:29 |
| 12 | RAND obligations and not violated any | 12:21:32 |
| 13 | provision of the SDO policy." | 12:21:35 |
| 14 | So again, clearly my concern, my | 12:21:38 |
| 15 | opinions are from that perspective | 12:21:44 |
| 16 | (indicating), not from any perspective having | 12:21:47 |
| 17 | to do with specific negotiations. | 12:21:49 |
| 18 | Q   Okay. | 12:21:52 |
| 19 | A   I think I've covered that a number | 12:21:52 |
| 20 | of times. | 12:21:54 |
| 21 | Q   I think so.  I do want to make | 12:21:56 |
| 22 | certain, though, that after that answer that | 12:22:00 |
| 23 | your, any analysis that you're performing with | 12:22:02 |
| 24 | respect to good faith ends at the letters that | 12:22:05 |
| 25 | Motorola sent in October 2010? | 12:22:08 |

CONFIDENTIAL – ATTORNEYS' EYES ONLY
RICHARD HOLLEMAN – 6/19/2013

| | | |
|---|---|---|
| 1 | his opinions, but you can answer. | 12:28:35 |
| 2 | A   Once again, the SDO would not | 12:28:41 |
| 3 | attempt to take a position on that, it'd be | 12:28:43 |
| 4 | considered outside the scope of the policy. | 12:28:48 |
| 5 | Q   Okay.  A number of times in your | 12:28:50 |
| 6 | reports you mentioned that Judge Robart has | 12:28:56 |
| 7 | found that Motorola's opening offer need not | 12:29:00 |
| 8 | be RAND.  Do you recall that? | 12:29:07 |
| 9 | A   Yes, I do. | 12:29:11 |
| 10 | Q   Okay.  In that same passage on the | 12:29:12 |
| 11 | same page of the Opinion where he mentions | 12:29:16 |
| 12 | that, he goes on to say that, "Nonetheless, | 12:29:20 |
| 13 | that does not mean that Motorola may make, | 12:29:27 |
| 14 | 'blatantly unreasonable' offers to | 12:29:34 |
| 15 | implementers." | 12:29:36 |
| 16 | Do you recall that passage? | 12:29:41 |
| 17 | A   Yes. | 12:29:42 |
| 18 | Q   And you agree that a | 12:29:45 |
| 19 | standard-essential patentholder cannot make | 12:29:46 |
| 20 | blatantly unreasonable offers? | 12:29:49 |
| 21 | A   I do not have an opinion in that | 12:29:50 |
| 22 | regard. | 12:29:52 |
| 23 | The Judge gave his opinion in that | 12:29:53 |
| 24 | regard.  That's beyond the scope of what I | 12:29:54 |
| 25 | would opine about, it's beyond the scope of | 12:29:55 |

CONFIDENTIAL – ATTORNEYS' EYES ONLY
RICHARD HOLLEMAN – 6/19/2013

| # | | |
|---|---|---|
| 1 | the SDO's patent policy. | 12:30:00 |
| 2 | Q   Okay.  So you also don't have an | 12:30:03 |
| 3 | opinion as to whether the, within the context | 12:30:04 |
| 4 | of the SDO IPR policies, the | 12:30:11 |
| 5 | standard-essential patentholder can make an | 12:30:13 |
| 6 | opening offer that's not RAND? | 12:30:16 |
| 7 | MR. CUSHING:  I'm going to object, I | 12:30:20 |
| 8 | believe that mischaracterizes his prior | 12:30:21 |
| 9 | testimony.  You can answer. | 12:30:23 |
| 10 | A   My testimony is that the whole idea | 12:30:25 |
| 11 | of initial offers are really not what's | 12:30:31 |
| 12 | driving or motivating the RAND commitment. | 12:30:35 |
| 13 | And from the SDO's perspective, it's the RAND | 12:30:38 |
| 14 | license itself that results from the | 12:30:44 |
| 15 | negotiations that is a significant aspect, | 12:30:47 |
| 16 | because it's that RAND license that allows | 12:30:50 |
| 17 | implementation of the standard, which is the | 12:30:53 |
| 18 | objective of the SDO. | 12:30:57 |
| 19 | So I would -- | 12:30:59 |
| 20 | Q   Okay. | 12:31:00 |
| 21 | A   -- agree, and I would say that the | 12:31:01 |
| 22 | SDOs are not concerned about initial offers, | 12:31:04 |
| 23 | they're concerned about hopeful outcome of a | 12:31:09 |
| 24 | RAND license. | 12:31:12 |
| 25 | Q   Let me parse that out a little bit. | 12:31:16 |

CONFIDENTIAL – ATTORNEYS' EYES ONLY
RICHARD HOLLEMAN – 6/19/2013

Page 187

| | | |
|---|---|---|
| 1 | MR. CUSHING:  It starts with "This | 12:45:06 |
| 2 | is." | 12:45:08 |
| 3 | MR. CEDEROTH:  Yes.  Yes. | 12:45:08 |
| 4 | Q   And actually, let me skip to the | 12:45:09 |
| 5 | next, which says, "Any patent policy must | 12:45:13 |
| 6 | account for the fact that many patentholders | 12:45:15 |
| 7 | will only contribute their patented technology | 12:45:17 |
| 8 | if they know they are able to receive a | 12:45:21 |
| 9 | reasonable return on their R&D investments." | 12:45:23 |
| 10 | What is your basis for that | 12:45:37 |
| 11 | conclusion? | 12:45:39 |
| 12 | A   There are, has been in some cases | 12:45:46 |
| 13 | attempts by some SDOs to have a policy that | 12:45:55 |
| 14 | involves compulsory licensing.  Compulsory | 12:46:00 |
| 15 | licensing at, on the basis of any | 12:46:06 |
| 16 | participation has to be royalty-free. | 12:46:12 |
| 17 | And in the case of the ITU, IEEE, | 12:46:18 |
| 18 | there is a recognition that if technology, | 12:46:24 |
| 19 | particularly high-tech technology, is to be | 12:46:31 |
| 20 | incorporated into the standard, that | 12:46:38 |
| 21 | technology has been developed at considerable | 12:46:40 |
| 22 | time, cost, use of resources. | 12:46:45 |
| 23 | And if the SDO says in order to | 12:46:48 |
| 24 | contribute that technology and participate you | 12:46:53 |
| 25 | have to do it royalty-free, or that by | 12:46:57 |

CONFIDENTIAL – ATTORNEYS' EYES ONLY
RICHARD HOLLEMAN – 6/19/2013

| | | |
|---|---|---|
| 1 | participating you are under a compulsory | 12:47:01 |
| 2 | licensing plan, which had been suggested at | 12:47:06 |
| 3 | one point in some SDOs, there are companies | 12:47:11 |
| 4 | who would not want to join in the | 12:47:17 |
| 5 | standardization activity. | 12:47:22 |
| 6 | And so when I talk about | 12:47:25 |
| 7 | recognition, it's recognizing that you need to | 12:47:27 |
| 8 | have, again I said, a balance that allows for | 12:47:33 |
| 9 | the patentholder to be able on one hand to get | 12:47:40 |
| 10 | its technology included in the standard, but | 12:47:46 |
| 11 | yet at the same time not have to give up | 12:47:49 |
| 12 | everything that it put into the development of | 12:47:53 |
| 13 | that technology. | 12:47:55 |
| 14 | I'm sorry, that's sort of a long | 12:47:57 |
| 15 | answer, but I think that's why there is this | 12:47:59 |
| 16 | recognition. | 12:48:01 |
| 17 | Q   Are there any documents from the | 12:48:04 |
| 18 | IEEE or ITU that explain striking this balance | 12:48:11 |
| 19 | that you just described? | 12:48:19 |
| 20 | A   I'm not aware of a specific document | 12:48:24 |
| 21 | that talks about this balance. | 12:48:29 |
| 22 | This is based on my opinion, having | 12:48:32 |
| 23 | served for many years on, in the case of the | 12:48:35 |
| 24 | IEEE, the Standards Board, the Board of | 12:48:40 |
| 25 | Governors, Chairing the Patent Committee, and | 12:48:43 |

# EXHIBIT B

# In The Matter Of:

## *MICROSOFT CORPORATION*
## *v.*
## *MOTOROLA INC., et al.*

---

## *MAXIMILIAN HAEDICKE - Vol. 1*
### *June 14, 2013*

---

**MERRILL CORPORATION**

LegaLink, Inc.

135 Main Street
4th Floor
San Francisco, CA 94105
Phone: 415.357.4300
Fax: 415.357.4301

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

---oOo---


MICROSOFT CORPORATION, a
Washington corporation,

     Plaintiff,

     vs.                 Case No. 10-1823

MOTOROLA, INC., MOTOROLA
MOBILITY, INC., and GENERAL
INSTRUMENT CORPORATION;

     Defendants.

_____    /


VIDEOTAPED DEPOSITION OF

MAXIMILIAN HAEDICKE

_____

Friday, June 14, 2013


REPORTED BY:  RACHEL FERRIER, CSR 6948

(1-451692)

MAXIMILIAN HAEDICKE - 6/14/2013

| | | |
|---|---|---|
| 1 | eurocent? | 10:00:29 |
| 2 | MS. BERRY:  Objection; form. | 10:00:29 |
| 3 | THE WITNESS:  I'm not -- I'm not -- I have no | 10:00:30 |
| 4 | opinion on that as I don't know the details. | 10:00:33 |
| 5 | BY MR. LOVE: | 10:00:35 |
| 6 | Q   Microsoft's Orange Book offer that was rejected | 10:00:36 |
| 7 | was 2 eurocents, so if Microsoft had offered half a | 10:00:38 |
| 8 | eurocent, would it have been able to avoid an | 10:00:43 |
| 9 | injunction? | 10:00:45 |
| 10 | A   If it's less than what has been given here, | 10:00:45 |
| 11 | it's rather unlikely. | 10:00:49 |
| 12 | Q   Rather unlikely, or no? | 10:00:50 |
| 13 | A   If it's lower than what has been -- well, the | 10:00:52 |
| 14 | court said -- the Mannheim Court said what has been | 10:00:56 |
| 15 | offered is so low that the rejection is not -- is not a | 10:00:59 |
| 16 | breach of antitrust law as it is conceivable that the | 10:01:06 |
| 17 | rate has to be higher. | 10:01:12 |
| 18 | So if the rate would have been lower, it is -- | 10:01:15 |
| 19 | I cannot second-guess what the court would have said, | 10:01:20 |
| 20 | but it's -- it's pure logic that if it's lower, I assume | 10:01:23 |
| 21 | that also the same standard would have been applied, and | 10:01:25 |
| 22 | the same standard would have taught that the rejection | 10:01:28 |
| 23 | of such an offer is a violation of European antitrust | 10:01:32 |
| 24 | law. | 10:01:36 |
| 25 | Q   If Microsoft had escrowed a sufficient amount | 10:01:36 |

MAXIMILIAN HAEDICKE – 6/14/2013

Page 54

| | | |
|---|---|---|
| 1 | of money and had allowed Motorola or the German Court to | 10:01:39 |
| 2 | decide about an equitable license fee, would Microsoft | 10:01:43 |
| 3 | have been enjoined? | 10:01:47 |
| 4 | A   If it had followed the second procedure, the | 10:01:48 |
| 5 | 315 procedure, it would have not been enjoined. | 10:01:53 |
| 6 | Q   How much money would have been sufficient for | 10:01:55 |
| 7 | Microsoft to avoid an injunction? | 10:01:57 |
| 8 | MS. BERRY:  Objection; form. | 10:02:00 |
| 9 | THE WITNESS:  As this is a difficult | 10:02:00 |
| 10 | evaluation, taking into account all specifics of the | 10:02:03 |
| 11 | case, I'm not able to give you any -- any numbers there. | 10:02:06 |
| 12 | MR. LOVE:  We have been going for about an | 10:02:10 |
| 13 | hour.  Why don't we take a break. | 10:02:11 |
| 14 | THE VIDEOGRAPHER:  Off the record at 10:01. | 10:02:13 |
| 15 | (Recess taken.) | 10:02:14 |
| 16 | THE VIDEOGRAPHER:  Back on the record at 10:20. | 10:21:01 |
| 17 | BY MR. LOVE: | 10:21:03 |
| 18 | Q   Before we took a break, I had asked you a | 10:21:04 |
| 19 | question earlier about if the parties in a German patent | 10:21:05 |
| 20 | infringement suit agree on a license fee, and I was | 10:21:09 |
| 21 | asking you what they would do, and I don't want to | 10:21:11 |
| 22 | restate your testimony, but part of your response, as I | 10:21:15 |
| 23 | understood it, was, there are other terms besides a | 10:21:17 |
| 24 | license fee that the parties would need to agree on. | 10:21:23 |
| 25 | Do you remember this question? | 10:21:26 |

# EXHIBIT C

# In The Matter Of:

*MICROSOFT CORPORATION*
*v.*
*MOTOROLA, INC., MOTOROLA MOBILITY LLC, and*
*GENERAL INSTRUMENT CORPORATION*

_____

*BRADLEY S. KELLER - Vol. 1 - REVISED*

*June 24, 2013*

_____

## *CONFIDENTIAL*
## *SUBJECT TO THE PROTECTIVE ORDER*

**MERRILL CORPORATION**

LegaLink, Inc.

135 Main Street
4th Floor
San Francisco, CA 94105
Phone: 415.357.4300
Fax: 415.357.4301

CONFIDENTIAL – SUBJECT TO THE PROTECTIVE ORDER
BRADLEY S. KELLER – 6/24/2013

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

_____

MICROSOFT CORPORATION, a          )
Washington corporation,           )
                                  )
            Plaintiff,            )
                                  )
      v.                          ) No. C10-1823-JLR
                                  )
MOTOROLA, INC., MOTOROLA          )
MOBILITY LLC, and GENERAL         )
INSTRUMENT CORPORATION,           )
                                  )
            Defendants.           )
_____

Videotape Deposition Upon Oral Examination

of

BRADLEY S. KELLER

_____

Taken at 999 Third Avenue, Suite 4400

Seattle, Washington


CONFIDENTIAL – SUBJECT TO THE PROTECTIVE ORDER


DATE:  Monday, June 24, 2013

REPORTED BY:  Ronald L. Cook
              CCR, RMR, CRR

CONFIDENTIAL – SUBJECT TO THE PROTECTIVE ORDER
BRADLEY S. KELLER – 6/24/2013

Page 83

| | | |
|---|---|---|
| 1 | A.   I can't say one way or the other.  I -- I | 11:00:28 |
| 2 | don't -- I don't know, but I don't think so. | 11:00:29 |
| 3 | Q.   How about the portion of the 1823 | 11:00:30 |
| 4 | proceedings involving the anti-suit injunction?  Do | 11:00:34 |
| 5 | you know who argued that anti-suit injunction motion | 11:00:40 |
| 6 | before Judge Robart? | 11:00:43 |
| 7 | A.   In the trial court proceedings? | 11:00:44 |
| 8 | Q.   Yes. | 11:00:46 |
| 9 | A.   No. | 11:00:46 |
| 10 | Q.   Okay. | 11:00:48 |
| 11 | A.   I think I -- I was -- when I got granular | 11:00:49 |
| 12 | on the -- what you call the anti-suit injunction, I | 11:00:53 |
| 13 | was looking more at the appellate proceedings. | 11:00:58 |
| 14 | Q.   Would it surprise you if I told you it | 11:01:03 |
| 15 | was a New York lawyer who argued the motion before | 11:01:05 |
| 16 | Judge Robart? | 11:01:07 |
| 17 | A.   It would neither surprise me or not | 11:01:08 |
| 18 | surprise me.  It would just not be relevant to me. | 11:01:10 |
| 19 | Q.   And why is it not relevant? | 11:01:14 |
| 20 | A.   Same reason as -- as the earlier | 11:01:16 |
| 21 | question.  Who a client chooses to do something is not | 11:01:17 |
| 22 | important to me.  It's a question of is it necessary. | 11:01:21 |
| 23 | Was it necessary to have -- you know, to | 11:01:26 |
| 24 | have someone from New York do it?  My answer would be | 11:01:28 |
| 25 | no.  They can choose to do it if they want, but it's | 11:01:31 |