# EXHIBIT A

**CONFIDENTIAL BUSINESS INFORMATION PURSUANT TO PROTECTIVE ORDER**

## Microsoft Corporation/Motorola, Inc., et al.

## EXPERT WITNESS REPORT

BRADLEY S. KELLER
Byrnes Keller Cromwell LLP
1000 2nd Avenue, 38th Floor
Seattle, WA  98104
206.622.2000

DATED this 10th day of June, 2013.

By _____

Bradley S. Keller, WSBA #10665

# I. BACKGROUND AND EXPERIENCE

1.      I am one of two founding members of Byrnes Keller Cromwell LLP, a law firm. Our law firm, which was founded in 1984, was previously called Byrnes & Keller LLP. My background and experience are further described in my Curriculum Vitae which is Attachment 1. I am a Fellow of the American College of Trial Lawyers, a Fellow of the International Academy of Trial Lawyers, a Fellow of the International Society of Barristers, and a member of the American Board of Trial Advocates. I have been exclusively engaged in a trial practice since 1980 focusing on business and tort and professional liability litigation. I have tried a substantial number of jury and non-jury disputes representing both plaintiffs and defendants, ranging from RICO, securities fraud, IP disputes, products liability, Consumer Protection Act claims, and class actions.

2.      As a result of over 30 years of practicing law in Seattle, and being the Managing Partner of our law firm for over 25 years, I keep apprised of and am generally aware of the prevailing market rates in the Seattle area for attorneys with the required experience and skills necessary to perform the legal services Microsoft would have needed to properly defend any SEP infringement claims. I have on several prior occasions provided expert witness services related to the reasonableness of attorneys' fees. Those instances that I am able to recall are listed in Attachment 2. I have also lectured at CLEs approximately six times in the last four years on trial practice and professional responsibility issues.

3.      I am being compensated for my expert witness services in this case at the rate of $450 per hour.

4.      I have been asked by counsel for defendants (collectively, "Motorola") to analyze the law firm invoices on which Mr. Menenberg relied in calculating the amount of attorneys'

6

fees and litigation costs allegedly incurred by Microsoft as a result of defending against Motorola's claims of infringement of its 802.11 and H.264 SEPs. The documentation that I have reviewed and considered is listed in Attachment 3. I reserve the right to update my opinions should more relevant information become available in the future.

## II. <u>SUMMARY OF OPINIONS</u>

5.      My opinions can generally be grouped and summarized as set forth below.

a.      As a preliminary matter, I understand that there is a dispute about whether legal fees are properly a form of damages for breach of contract, and that this is an issue to be briefed before the Court. In my experience as a practicing attorney, attorneys' fees are generally not a form of damages and, under the American rule, parties to a dispute have to pay their own attorneys' fees. In addition, Motorola did not file any SEP patent infringement claims against Microsoft until after Microsoft had first commenced litigation against Motorola alleging breach of contract and promissory estoppel related to the SEPs ("the '1823 Action"). Microsoft's decision to file this contract suit played a causal role in Motorola bringing the SEP infringement proceedings. Its attorneys' fees therefore should not be considered consequential damages.

b.      To the extent the Court allows attorneys' fees as a measure of damages, and Microsoft intends to make such a damage claim, Microsoft has the burden of proof and is required to take reasonable steps to contemporaneously identify and segregate the attorneys' fees sought. Microsoft failed to do so in this case.

c.      The after-the-fact – in some cases years later – effort made by Microsoft to allocate attorneys' fees and litigation costs incurred as a result of Motorola's alleged breach of contract is inherently unreliable, incapable of being verified or objectively tested, and speculative. Therefore, no attorneys' fees at all should be awarded.

7

      d.     Microsoft is a Seattle-based company.  The attorneys it retained to deal with the United States-based SEP-related litigation with Motorola could have largely been Seattle-based.  Seattle attorneys' rates are generally materially less than those charged by the Sidley attorneys in Chicago, Washington, D.C., and Dallas who Microsoft utilized.  Microsoft's incurring of attorneys' fees at rates in excess of what would have been charged by comparable Seattle attorneys was neither necessary nor consistent with mitigating any alleged loss.  If attorneys' fees are awarded, i.e., if they are not determined to be too speculative, based on my review of the half dozen Sidley mid-level associates and half dozen Sidley partners who billed significant amounts of time, it is my opinion that there was over ███████ of Sidley's fees charged by those individuals that Microsoft is claiming that were not necessary.  I further believe that the hourly rates charged by Sidley lawyers were ████ to ████ higher than what would be reasonable for their Seattle peers.  My review of the billings also leads me to believe that significant unnecessary legal fees were incurred due to how the cases were staffed.

### III.  DISCUSSION REGARDING OPINIONS

**A.**    **Microsoft's Obligation to Contemporaneously Identify and Segregate Attorneys' Fees Claimed as Consequential Damages.**

      6.     Assuming attorneys' fees can be sought as a component of consequential damages, the party making that claim has the burden of proving that the fees incurred were necessary, reasonable, and, like any other person claiming a loss, that they took reasonable steps to mitigate any claimed loss.  Apparently, as early as February 7, 2011, Microsoft indicated in its Initial Disclosures in the '1823 Action that one of the components of its alleged compensatory damages would be a claim for damages suffered as a result of defending infringement claims concerning the SEPs.  Microsoft made the same disclosure in an interrogatory response served February 28, 2011.  Microsoft's witness David Killough admitted that Microsoft had not

incurred any of the fees and costs it now seeks to recover prior to Microsoft filing the '1823

Action. When a party knows at the outset of a case that it intends to later seek fees as an element

of compensable consequential damages, its burden of proving those claims with reasonable

certainty requires that it take reasonable steps to contemporaneously identify and segregate those

legal fees claimed from those that will not or cannot be claimed. Microsoft could have easily

done this, and it should have done so. There were some very simple and easily implementable

steps Microsoft could have taken to contemporaneously segregate those fees being claimed from

those not being claimed. Had it done so, it would not have had to try to later employ the

inherently unreliable and speculative methodology used (*see* discussion below). The methods

Microsoft should have put in place existed within the time and billing software Sidley was using.

Specifically, it is clear from the Sidley invoices Microsoft produced that Sidley timekeepers were

instructed to bill using task codes, such as for tasks like discovery, etc. Microsoft should have

instructed Sidley to use one of the codes that already existed each time one of the Sidley

timekeepers was expending time related to defending the Motorola SEP infringement claims.

Microsoft could have alternatively instructed Sidley to use a new task code each time one of the

Sidley timekeepers was expending time related to defending the Motorola SEP infringement

claims. Microsoft also should have instructed Sidley to separately bill the work and expenses it

incurred on each of the matters for which Microsoft is claiming attorneys' fees and costs, rather

than billing them all to the same matter in which *all Microsoft v. Motorola* and *Motorola v.

Microsoft* litigation was billed.[1] Sidley and its timekeepers at the very minimum should have

been instructed to provide detailed task descriptions and time breakdown for work defending the

SEP infringement claims so that someone reviewing those time entries could determine which

---

[1]  Mr. Killough testified that there were close to 50 separate matters between the two parties, of which Microsoft
brought slightly more than half. For a significant period of time over the life of this case, *all* of these matters were
billed by Sidley to one matter on the same invoice.

related to work defending against Motorola's claims for injunctive relief as a remedy for

Microsoft's infringement of Motorola's SEPs, and which time entries related to Microsoft's

affirmative claims or Motorola's claims relating to non-SEPs.  These procedures should have

been put in place both during the approximately first year when Sidley was billing all of its

activities for multiple proceedings to one matter, and later, when Sidley had several separate

billing matters.

       7.     Not only were those procedures not put in place, but any effort to later try to

segregate and identify SEP patent infringement defense costs was further obfuscated by Sidley

billing all of its time regarding multiple proceedings to one matter for over a year and Microsoft

not requiring it to even have a separate billing matter for each of the proceedings.  Even today,

Microsoft (and Motorola) cannot identify the total amount of legal fees Microsoft incurred in

each of the proceedings at issue, the number of timekeepers who worked on each of the

proceedings at issue, the total number of hours billed on each of the proceedings at issue, or the

billing rates for the work performed on each of the proceedings at issue.

       8.     Nor can Microsoft identify any of this information for work performed defending

against Motorola's claims for injunctive relief, as distinguished from Motorola's claims for

monetary relief.  As I understand it, Microsoft contends that Motorola breached its obligations to

SDOs by seeking injunctive relief for infringement of its SEPs, but Microsoft does not contend

that seeking monetary damages for such infringement constitutes a breach.  Accordingly, the

damages flowing from Motorola's alleged breach would be the costs of defending against

Motorola's claims for injunctive relief.  It does not appear that Mr. Menenberg limited his

calculations to those fees and costs.  Nor could he because, according to Mr. Killough, Microsoft

did not allocate the amount of fees and costs incurred defending against claims for injunctive relief.

**B.** **The Unreliability and Speculative Nature of Both Microsoft's Purported Allocation Methodology and Sidley's Implementation of That Methodology.**

9.      The percentage allocation methodology conceived after-the-fact by Mr. Killough is in my opinion inherently unreliable and speculative.  Based on its deposition testimony, I understand that Microsoft counted the number of patents at issue in a matter at a given time and numerically computed a percentage based upon the ratio of SEPs at issue to the total number of patents at issue.  This is not a reliable source of information or data point regarding the nature of the legal efforts being expended.  In patent infringement litigation, all patents are not "equal." There are multiple issues that can arise that may or may not apply to particular patents at issue in infringement litigation.  By way of example, the number of claim terms requiring a <u>Markman</u> determination will vary widely from one patent to another; there may or may not be significant inequitable conduct issues to be developed regarding one or more patent but not others; for some patents there may be legitimate issues regarding whether the accused device practices the claimed invention, whereas for others literal infringement may not be an issue; what is relevant prior art and the extent of the effort needed to investigate prior art varies widely from patent to patent.  Counting patents and devising a ratio is in my view as unreliable a methodology as, for example, counting the number of causes of action pled in a complaint and contending that, if one of five claims pled is a statutory claim with a fee-shifting provision, then one-fifth of the legal fees expended should be awarded.  That ratio tells you nothing regarding how much of the legal effort expended was in fact incurred regarding the one cause of action for which there is fee-shifting.  In the fee-shifting context, the courts have dealt with this situation to some extent by recognizing that certain claims arise out of a common nucleus of facts.  But, in the situation here,

Case 2:10-cv-01823-JLR   Document 725-11   Filed 07/03/13   Page 8 of 24

where fees are sought as an element of consequential damages (rather than prevailing party fee-shifting), principles of "common nucleus of facts" has no application because only those fees incurred that are necessary and proximately caused by the alleged breach can be awarded assuming the other elements of equitable indemnity are present.

10.     Based upon Mr. Killough's deposition, my understanding is that Ms. Ellen Robbins (a Sidley partner) reviewed Sidley's billings and "color coded" entries based upon the "patent counting" methodology with the different colors representing different percentage allocations.[2] In doing so, Ms. Robbins made numerous subjective judgment calls regarding billing entries made by more than ██ Sidley timekeepers, in many cases, years ago.[3] The level of detail in the Sidley billing entries varied widely.  The only explanation or detail Microsoft has provided regarding Ms. Robbins' application of the patent counting methodology is (i) if Ms. Robbins, utilizing some undescribed criteria, deemed a billing entry to be sufficiently specific such that she believed an allocation could be made other than on the patent counting basis, she did so, (ii) if Ms. Robbins (again, using some undescribed criteria) deemed a billing entry to be insufficient to allow some "finer" or better allocation than patent counting, it would either be discarded, or if she believed it applied across the board to all of the patents in dispute, the patent counting methodology percentage would be applied.  She did not rely on any documentation other than the billing entries themselves or interview any of the timekeepers to determine the work reflected in each billing entry.  Neither I nor Microsoft nor Motorola have any ability or basis to test or probe the subjective judgments Ms. Robbins made for each individual billing

---

[2] Ms. Robbins' hourly rate is in excess of ██.  The utilization of someone with her level of experience and skill and hourly rate to review legal services invoices and color code entries, rather than a more junior less expensive associate, is a good example of failing to have work done by "rate appropriate" attorneys.

[3] Ms. Robbins conducted this analysis over a four-eight week period in the spring of 2013, even though the attorneys' fees and litigation costs Microsoft is seeking to recover date back to the fall of 2010.  Apparently, Microsoft made no effort to analyze and allocate the billing entries closer in time to when the work was actually performed.

entry making the determination as to whether or not to apply Mr. Killough's patent counting methodology.  Microsoft's use of trial counsel to create the evidence on which Mr. Menenberg relies for his computations, Motorola's inability to depose Ms. Robbins as a witness regarding her application of the methodology, and Motorola's inability to look behind the billing entries and understand the actual work done, results in a complete inability on the part of Motorola (or me) to test, audit, or otherwise probe the reasonableness or appropriateness of the judgment calls Ms. Robbins made regarding each allocation decision.  Any subjective allocation of fees that cannot be objectively tested or probed for accuracy is in my opinion inherently unreliable.

11.     Because the "patent counting" methodology is an unreliable one, its application in my opinion produces a result that is speculative.  In my 33 years of experience, I have never seen this approach to calculating attorneys' fees and costs where fees were sought as alleged consequential damages.

12.     It was also noteworthy that Mr. Menenberg and Navigant Consulting did not provide or offer any opinion regarding the "patent counting" methodology or its implementation by Ms. Robbins.  Mr. Menenberg did not test or audit it in any way nor did he express any opinion regarding its reliability, its reasonableness, or even whether the patent counting methodology or its implementation was appropriate.  Instead, this aspect of Navigant's work regarding the claimed damages consisted only of totaling up the numbers that result from the methodology and its implementation.

**C.      <u>Unnecessary Legal Fees</u>.**

13.     Lawyers like to think of themselves as unique and in some ways special.  But, the reality is that, from the standpoint of sophisticated business clients, we are service providers.  For a company like Microsoft, patent-related litigation – for better or for worse – is in today's

business world a cost of doing business.  Microsoft can choose what lawyers or law firms it

wishes to utilize to provide legal services regarding a particular patent-related matter.  However,

if Microsoft (or any other litigant) wants to claim as an element of compensable consequential

damages the legal fees incurred regarding patent-related litigation, it can only claim and recover

legal fees that were both necessary and reasonable and it has a duty to mitigate any claimed legal

expense.  For example, if an equally capable attorney can be hired for $400 per hour to handle a

matter, but Microsoft chooses for whatever reason to retain an attorney who charges $500 per

hour, the appropriate measure of the claimed compensable loss should be the charges of the $400

per hour lawyer not the $500 per hour lawyer.  Both attorneys will handle the matter with a

relatively equal level of skill and produce a comparable outcome.  In that situation, the retention

of an attorney charging $100 per hour more was neither necessary nor consistent with the

obligation to mitigate any claimed loss.

   14. Microsoft chose to use the Sidley firm as its lead law firm.  Of the approximately

███████████in legal fees claimed as compensable consequential damages,███████████is the

allocated portion of Sidley's billings.  The Sidley attorneys who worked on the matter were

primarily based in Chicago, Washington, D.C., and Dallas.  The range of reasonable hourly rates

for attorneys in those cities is materially higher than in Seattle or the Pacific Northwest.  In

Seattle, billing rates for very experienced, very capable, top-flight partner-level litigators range

from $450-$600, per hour, and in some unusual cases, $625 per hour.  In late 2011, in the *WaMu*

*Securities Litigation*, Judge Pechman ruled that the benchmark for quality and experienced

counsel in the Seattle area does not exceed $525 per hour.[4]  The range of Seattle rates for a

second or third year associate would not exceed $240 per hour, or if the person had a technical

---

[4] Order Awarding Attorneys' Fees and Expenses (ECF No. 910) in *In Re Washington Mutual, Inc. Securities Litigation*, Case No. 08-md-1919MJP.

background in addition to a law degree that was being utilized, $255 per hour. A five year associate's billing rate would not exceed $300 per hour absent some unique circumstance. Microsoft could have utilized Seattle-based attorneys to defend the United States SEP infringement proceedings and paid significantly lower hourly rates.

15. I reviewed the Sidley billings and the data compilations regarding them prepared by Navigant Consulting. There were Sidley associates and partners who were charging hourly rates significantly in excess of what would have been reasonable for their respective peers in Seattle. There also appeared to be a few Sidley partners for which Microsoft was being charged a premium for their expertise but the individuals' area of expertise did not appear to be particularly relevant to the work they were doing. My review of the Sidley billings focused mostly on the half dozen Sidley mid-level associates and half dozen Sidley partners who billed significant amounts of time being included in Microsoft's claimed loss or those whose billing rates seemed very far in excess of what seemed necessary for this engagement. My opinion is that there was over ███████ of Sidley's fees charged by those individuals that were not necessary, and were unreasonable under these circumstances, and were not consistent with Microsoft's responsibility to try to minimize or lessen its claimed losses. A summary of those Sidley attorneys and the adjustments to their rates I believe are warranted is set forth in Attachment 4. In Attachment 4, I utilized the number of hours and hourly rates for certain Sidley attorneys tabulated in Exhibit 3a to Mr. Menenberg's Report, and changed the hourly rate to what in my opinion was necessary. The difference is then multiplied times the number of hours the attorney worked for which Microsoft is claiming damages. While I did not calculate reasonable fees incurred by all Sidley timekeepers due to the very large number who recorded time that is allocated to Microsoft's alleged damages, I observed that the hourly rates charged by

Sidley associates and partners are approximately 15% to 30% higher than what would be reasonable for their respective peers in Seattle.

16.     Separate and apart from hourly rates, a tell-tale sign of unnecessary fees being incurred is the number of timekeepers.  An over-staffed case results in unnecessary effort as multiple timekeepers spend and bill time doing overlapping work such as read the same briefs, emails, and "team" meetings.  The Sidley billings reflect scores of timekeepers during the same month which, in my opinion, had to result in much unnecessary legal expense being incurred. There were ███ timekeepers who billed ██████ or more; ██ timekeepers billed ██████ or more; and ██ timekeepers billed more than ██████. ██████████████████ Sidley timekeepers recorded fees that are allocated to Microsoft's alleged damages, ranging in an amount for each timekeeper from a ███████████ to almost ████████.  In my opinion, unnecessary, duplicative effort is inherent in that kind of staffing.

# ATTACHMENT 1

**BRADLEY S. KELLER**

I.   **EDUCATION**

Beloit College, B.A., *cum laude*, Government - 1976.
Brooklyn Law School, J.D., *magna cum laude* - 1979.

II.  **TRIAL EXPERIENCE**

Engaged in trial practice continuously since 1980; tried a substantial number of jury and non-jury cases in state and federal courts; litigated cases before private arbitration panels. Types of cases tried include federal and state securities fraud, RICO, professional liability, breach of contract, product liability, personal injury, commercial, and construction.  Cases tried:

- Anderson v. Thompson (four month RICO and securities fraud jury trial)

- SGA v. Sherry (three week sale-of-business and negligent misrepresentation jury trial)

- Quinn v. CRST, Inc. (two week wrongful death jury trial)

- Tenore v. Chiafolo (two week fiduciary duty and securities fraud jury trial)

- Richards v. Overlake Hospital, et al. (seven week medical malpractice jury trial)

- Staab v. Liable (two week breach of fiduciary duty bench trial)

- Cratsenberg v. Canam Construction (one week construction arbitration)

- Tacoma Place Associates v. Healy (four week contract and misrepresentation jury trial)

- Piha v. F.W. Woolworth and Co. (commercial lease dispute bench trial)

- DeAtley v. TriGraphics (two week UCC - Article 9 bench trial)

- Alaska Distr. Co. v. Odom Distr. (two week distributor promissory estoppel bench trial)

- Victoria C. v. Cincinnati Bengals, Inc., et al. (three week civil sexual assault jury trial)

- JGLPI v. Peterson, et al. (one week partnership dispute arbitration)

- Labbe v. Mangan, et al. (two week medical malpractice jury trial)

- Koll Constr. Co. v. TerraCan Capital Corp. (three week lender liability bench trial)

- Vidro v. ISC (two week stock purchase breach of contract bench trial)

- Barnes v. First Affiliated Securities (three day NASD arbitration)

- Hong v. Morgan Stanley (five day NASD arbitration)

- Grandmore v. H&L Investment Co. (two week commercial lease dispute bench trial)

- Smith, et al. v. Greenberg Bros., et al. (three week securities fraud jury trial)

- Sandquist v. Press Products (one week sale-of-business fraud jury trial)

- The Exchange System LP v. EXCLAIM, et al. (one-week AAA arbitration computer software development dispute)

18

- Edmark v. Kittoe (three week will contest bench trial)

- In Re T. Aponte (one week civil sexual assault administrative trial)

- Weinstein v. DeLaHunt (two week commercial lease dispute jury trial)

- State v. R.J. Reynolds, et al. (nine week antitrust/consumer protection jury trial)

- Heartstream, Inc. v. Medtronic Physio-Control Corp. (three week medical device breach of contract and trade secret misappropriation bench trial)

- Fiorito Bros. v. Weyerhaeuser Co. (gravel mining lease dispute jury trial)

- Lumbermens Ins. Co. v. SGA (ten day sale of business bench trial)

- Western Sea v. Rogers (breach of contract bench trial)

- Rufer v. Abbott Laboratories (nine week medical device product liability jury trial)

- Bradford v. AlliedSignal, Corp. (eleven week aviation/toxic exposure product liability jury trial)

- Quinton v. Agilent Technologies (two week terminated distributor/business tort jury trial)

- Abellera v. Delridge Place LP (two week class action housing discrimination jury trial)

- Digital Control v. Charles Machine Works (Markman hearing/inequitable conduct bench trial)

- Fiorito v. Pacific Raceways (six day motor sports partnership arbitration)

- IFSG v. Perkins Coie, LLP (seven week legal malpractice jury trial)

- Google v. Microsoft (two day preliminary injunction evidentiary hearing)

- Kimball v. R.J. Reynolds (two week product liability jury trial)

- Chiron Corp. v. Corus Pharma (two week trade secret jury trial)

- Shah v. Manufacturers Life Ins. Co. (ten day securities fraud jury trial)

- Activated Matrix Partners v. Dorsey & Whitney LLP (ten day legal malpractice jury trial)

- State v. R.J. Reynolds (two day Consent Decree enforcement proceeding)

- Fluke v. Milwaukee Tool (four day Preliminary Injunction evidentiary hearing)

- City of Seattle v. The Professional Basketball Club, LLC (six day specific performance bench trial)

- Confidential Arbitration (four day private equity contract dispute arbitration)

- Odom v. Confidential (two day legal malpractice/patent arbitration)

- 2 -

19

- Intermec, Inc. v. IBM (one week IP contract jury trial)

- Confidential Arbitration (six day contract/professional responsibility/attorney fee dispute

## III. BAR MEMBERSHIPS, ACTIVITIES, AND AWARDS

### A. Admissions

State of Washington - 1980.

Federal District Courts for the Western and Eastern Districts of Washington; Northern District of California; and Court of Appeals for the Ninth Circuit.

Specially admitted to Federal District Courts for practice in particular cases throughout the United States, including New York, Indiana, Illinois, Oregon, Montana, California and Alaska.

### B. Bar Associations

Member of the American Bar Association

Member of the Washington State, Seattle-King County, Federal Bar Association for the Western and Eastern Districts of Washington, and Washington Association for Justice

### C. Awards

Elected to Fellowship in American College of Trial Lawyers (2002)

Elected to membership in American Board of Trial Advocates (2002)

Elected to Fellowship in International Society of Barristers (2009)

Elected to Fellowship in International Academy of Trial Lawyers (2010)

Listed in *Best Lawyers in America* every year since 2003: 2010 Lawyer of the Year for Bet-the-Company Litigation (Seattle); 2012 Lawyer of the Year for Defense Legal Malpractice (Seattle); Commercial Litigation; Legal Malpractice-Defense; Antitrust Litigation; IP Litigation; Real Estate Litigation; Securities Litigation

Listed in *America's Leading Business Lawyers* published by Chambers and Partners (U.K.)

*Law & Politics* – Recognized by peers as one of the Top 10 SuperLawyers in Washington every year since 2006 (Ranked #2 in 2012); Top 100 every year since 2003

Listed in *Benchmark Litigation*: Washington Litigation Star

Listed in *Lawdragon* Leading Litigators in United States

Listed in *Seattle Magazine* Best Lawyers for Commercial Litigation

Listed in *Seattle Metropolitan* Best Lawyers for Commercial Litigation

Listed in National Registry of *Who's Who*

## IV. PROFESSIONAL EXPERIENCE

Byrnes & Keller LLP - founding partner, 1984 to present (currently Byrnes Keller Cromwell LLP) Bogle & Gates - associate, 1979-1984

- 3 -

# ATTACHMENT 2

## ATTACHMENT 2

## EXPERT WITNESS TESTIMONY ENGAGEMENTS LAST FOUR YEARS

1.  <u>Malico, Inc. v. Cooler Master USA, Inc.</u>, Cause No. 2:09-cv-00732-RAJ (W.D. Wash.) – Declaration testimony regarding reasonable attorneys' fees.

2.  <u>Milette v. Exvere, Inc.</u> – private arbitration before Thomas J. Brewer (Seattle). Provided declaration testimony in support of prevailing party's application for attorneys' fees.

3.  <u>J. Kenneth Stringer, III, et al. v. Flir Systems, Inc.</u>, Cause No. 1205-05780 (Circuit Court Multnomah County, Oregon) – retained as expert witness regarding attorneys' fees.

**ATTACHMENT 3**

23

## ATTACHMENT 3

1.     Redacted Sidley Austin billings with E. Robbins color coding.

2.     Minute Entry 497 in the '1823 Action.

3.     Pretrial Order (Dkt. 493) in the '1823 Action.

4.     Plaintiff Microsoft Corporation's Trial Brief (Redacted) (Dkt. 534) in the '1823 Action.

5.     Motorola's Trial Brief (Redacted) (Dkt. 539) in the '1823 Action.

6.     Plaintiff Microsoft Corporation's Post-Trial Brief (Dkt. 626) in the '1823 Action.

7.     Defendants' Post-Trial Brief (Redacted) (Dkt. 623) in the '1823 Action.

8.     Protective Order Regarding the Disclosure and Use of Discovery Materials (Dkt. 64) in the '1823 Action.

9.     Expert Witness Report of Todd D. Menenberg and Navigant Consulting, Inc. dated May 29, 2013.

10.    Findings of Fact and Conclusions of Law (Dkt. 681) in the '1823 Action.

11.    Microsoft Corporation's Fed. R. Civ. P. 26(a)(C) Disclosure of David Killough.

12.    Rough and final draft of transcript of videotaped 30(b)(6) deposition of David Killough.

13.    Order on Plaintiffs' Motion for Partial Summary Judgment (Dkt. 188) in the '1823 Action.

14.    Sidley Austin online bios regarding W. Suh, H. Webley, S. Mukherjee, J. McBride, T. T. Nguyen, B. Nester, D. Lewis, D. Pritikin, C. Phillips, R. Cederoth, D. Giardiana, E. Grush and E. Robbins.

15.    Microsoft Initial Disclosures in the '1823 Action (2/7/2011) and Microsoft's Supplemental Disclosures (4/2/2013).

16.    Microsoft Interrogatory Response in the '1823 Action (2/7/2011) and Microsoft's Supplemental Responses (4/3/2013).

17.    Letters dated October 21 and 29, 2010, from Motorola to Microsoft.

24

# ATTACHMENT 4

25

Motorola/ Microsoft

| ATTORNEY | "ALLOCATED HOURS" | RATE | ADJUSTED RATE | DIFFERENCE PER HOUR | EXTENSION | NOTES |
|----------|-------------------|------|---------------|---------------------|-----------|-------|
| Suh, W. | ▮▮ | ▮▮ | ▮ ▮ | ▮ ▮ | ▮ ▮ | 2009 technical background |
| Webley, H. | ▮▮ | ▮ | ▮ ▮ | ▮ ▮ | ▮ ▮ | 2009 |
| Mukherjee, S. | ▮▮ | ▮ | ▮ ▮ | ▮ ▮ | ▮ ▮ | 2009 technical background |
| McBride, J. | ▮▮ | ▮ | ▮ ▮ | ▮ ▮ | ▮ ▮ | 2007 |
| Nguyen, T.T. | ▮ | ▮ | ▮ ▮ | ▮ ▮ | ▮ ▮ | Dallas |
| Chang, W. | ▮▮ | ▮ | ▮ ▮ | ▮ ▮ | ▮ ▮ | 2006 |

TOTAL:   ▮▮▮

Case 2:10-cv-01823-JLR   Document 756-1   Filed 07/12/13   Page 24 of 24
Case 2:10-cv-01823-JLR   Document 775-1   Filed 07/03/13   Page 25 of 25
*Motorola/Microsoft*

| ATTORNEY | "ALLOCATED HOURS" | RATE | ADJUSTED RATE | DIFFERENCE PER HOUR | EXTENSION | NOTES |
|---|---|---|---|---|---|---|
| Nester, B. | ██ | ██ | █ █ | █ █ | █ █ | D.C. |
| Lewis, D. | ██ | ██ | █ █ | █ █ | █ █ | |
| Pritikin, D. | ██ | ██ | █ █ | █ █ | █ █ | ACTL |
| Phillips, C. | ██ | █ █ | █ █ | █ █ | █ █ | |
| Cederoth, R | ██ | ██ | █ █ | █ █ | █ █ | |
| Giardina, D. | ██ | █ █ | █ █ | █ █ | █ █ | AT |
| Grush, E. | ██ | █ █ | █ █ | █ █ | █ █ | AT |

TOTAL:   █ ███

27