1

2                                                          The Honorable James L. Robart

3

4

5

6

7                          UNITED STATES DISTRICT COURT
                    FOR THE WESTERN DISTRICT OF WASHINGTON
8                                     AT SEATTLE

9    MICROSOFT CORPORATION, a Washington
     corporation,
10
                                                    CASE NO. C10-1823-JLR
11        Pl                        aintiff,
                                                    DEFENDANTS' RESPONSE TO
12   v.                                             MICROSOFT'S MOTION FOR PARTIAL
                                                    SUMMARY JUDGMENT OF BREACH OF
13   MOTOROLA, INC., and MOTOROLA                   CONTRACT AND SUMMARY
     MOBILITY LLC, and GENERAL                      JUDGMENT ON MOTOROLA'S THIRD,
14   INSTRUMENT CORPORATION,                        FOURTH, FIFTH, SEVENTH, EIGHTH,
                                                    AND NINTH AFFIRMATIVE DEFENSES
15                                                  AND SECOND COUNTERCLAIM
          Defendants.
16                                                  NOTED ON MOTION CALENDAR:
                                                    Wednesday, July 31, 2013 at 10:00 a.m.
17

18                                                  REDACTED

19

20

21

22

23

24

25

26

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................. III

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS ........................................................................................ 2

I.     MOTOROLA'S COMMITMENTS TO THE IEEE AND ITU. ....................... 2

II.    CONDUCT OF TYPICAL PATENT LICENSING NEGOTIATIONS. ............ 3

III.   THE PARTIES' LICENSING DISCUSSIONS PRECEDING THIS LAWSUIT. ........... 4

IV.    MOTOROLA'S SUBSEQUENT LAWSUITS ................................................. 7

SUMMARY JUDGMENT STANDARD..................................................................... 7

ARGUMENT ........................................................................................................... 8

I.     THERE IS A GENUINE DISPUTE OF MATERIAL FACT AS TO WHETHER
       MOTOROLA BREACHED ITS COMMITMENTS TO THE IEEE AND ITU. .............. 8

       A.   There is a Genuine Dispute of Material Fact as to Whether Motorola
            Engaged in Commercially Unreasonable Conduct. ................................ 9

            1.   Microsoft Improperly Focuses *Only* on the Amount of Motorola's
                 October 2010 Offers and Ignores Other Relevant Factors........................ 9

            2.   The Jury Should Consider Subjective Factors in Determining Good
                 Faith. ..................................................................................... 10

            3.   There is a Genuine Issue of Material Fact as to Whether Motorola
                 Breached its Duty of Good Faith and Fair Dealing. ................................ 14

       B.   There is a Genuine Dispute of Material Fact as to Whether Motorola
            Frustrated the Purpose of its RAND Licensing Commitments............................. 16

II.    THERE IS A GENUINE DISPUTE OF MATERIAL FACT ON MOTOROLA'S
       AFFIRMATIVE DEFENSES AND COUNTERCLAIMS. ............................................ 19

       A.   There is Ample Evidence in Support of Motorola's Affirmative Defenses. ........ 19

       B.   Microsoft Was on Notice of the Facts Supporting Motorola's Affirmative
            Defenses. ..................................................................................23

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY JUDGMENT - i
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

CONCLUSION ................................................................................................................ 24

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

### <u>Cases</u>

4

*Adler v. Federal Republic of Nigeria,*
   219 F.3d 869 (9th Cir. 2000) ........................................................................... 21

5

*Aetna Health Inc. v. Fox,*
6    No. 09-5647, 2011 WL 2413267 (W.D. Wash. June 13, 2011) .......................... 7, 8

7 *Alliance Atlantis Releasing Ltd. v. Bob Yari Prods., No. CV 08-5526-GW (SSX),*
   2010 WL 1525687 (C.D. Cal. Apr. 12, 2010) ................................................... 9

8

*Amerigraphics, Inc. v. Mercury Cas. Co.,*
9    182 Cal. App. 4th 1538 (Cal. App. 2010) ......................................................... 14

10 *Apple, Inc. v. Motorola Mobility, Inc.,*
   No. 11-cv-178-BBC, 2012 WL 5416941 (W.D. Wis. Oct. 29, 2012) .................. 18

11
*Aventa Learning, Inc. v. K12, Inc.,*
12    830 F. Supp. 2d 1083 (W.D. Wash. 2011) ....................................................... 17

13 *Axthelm & Swett Const., Inc. v. Caudill,*
   No. 35995-9-I, 86 Wn. App. 1002 (May 12, 1997) ........................................... 14

14
*BBS Technologies, Inc. v. Remington Arms Co., Inc., No. Civ. A. 05-98-DLB,*
15    2005 WL 3132307 (E.D. Ky. Nov. 22, 2005) .................................................. 10

16 *Badgett v. Sec. State Bank,*
   116 Wn. 2d 563, 807 P.2d 356 (1991) ............................................................. 8

17
*Barstad v. Stewart Title Guar. Co., Inc.,*
18    145 Wn. 2d 528, 39 P.3d 984 (2002) .............................................................. 13

19 *Best v. U.S. Nat. Bank of Oregon,*
   303 Or. 557 (1987)......................................................................................... 10

20
*Betchard-Clayton, Inc. v. King,*
21    41 Wn. App. 887 (1985) ................................................................................. 8

22 *Camarillo v. McCarthy,*
   998 F.2d 638 (9th Cir. 1993) .......................................................................... 24

23
*Cavell v. Hughes,*
24    29 Wn. App. 536 (1981) ........................................................................... 11, 17

25 *Cobb v. Snohomish County,*
   86 Wn. App. 223 (1997) ................................................................................ 22

26

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY JUDGMENT - iii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*Craig v. Pillsbury Non-Qualified Pension Plan,*
    458 F.3d 748 (8th Cir. 2006) ................................................................. 12

*Curtis v. Northern Life Ins. Co.,*
    147 Wn. App. 1030 (2008) ............................................................. 12, 13

*Davis v. Homecomings Fin.,*
    2007 WL 1600700 (W.D. Wash. June 1, 2007)...................................... 7

*Denton v. BP W. Coast Prods., LLC,*
    No. C09-1344-JCC, 2011 WL 1883805 (W.D. Wash. May 17, 2011) ........ 7

*Fairhaven Land & Livestock Co. v. Chuckanut Trails Water Ass'n,*
    Case No. 60909-2-I, 148 Wn. App. 1046 (Feb. 23, 2009)...................... 11

*Frank Coluccio Const. Co., Inc. v. King Cnty.,*
    136 Wn. App. 751, 150 P.3d 1147 (2007) ........................................... 17

*Matter of Hollingsworth's Estate,*
    88 Wn. 2d 322, 560 P.2d 348 (1977) ............................................. 11, 17

*Kerzman v. NCH Corp.,*
    No. C05-1820-JLR, 2007 WL 765202 (W.D. Wash. Mar. 9, 2007) ......... 19

*Lichtenberg Constr. & Dev., Inc. v. Paul W. Wilson, Inc.,*
    No. C-000811, 2001 WL 1141236 (Ohio Ct. App. Sept. 28, 2001) ......... 14

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ...................................................................... 20

*Nat. Ass'n of Realtors v. Champions Real Estate Services Inc.,*
    812 F. Supp. 2d 1251 (W.D. Wash. 2011)........................................... 24

*Nw. Ind. Forest Mfr. v. Dep't of Labor & Indus.,*
    899 P.2d 6 (Wash. Ct. App. 1995) ...................................................... 8

*Precision Instr. Mfg. Co. v. Automotive Maintenance Machinery Co.,*
    324 U.S. 806 (1945)...................................................................... 21

*Realtek Semiconductor Corp. v. LSI Corp.,*
    No. C-12-03451 RMW, 2012 WL 4845628, at *4 (N.D. Cal. Oct. 12, 2012) ......... 10

*Reno v. Catholic Soc. Servs., Inc.,*
    509 U.S. 43 (1993) ...................................................................... 20

*Rivera v. Anaya,*
    726 F.2d 564 (9th Cir. 1984) ........................................................... 24

*Scott v. Pasadena Unified School Dist.,*
    306 F.3d 646 (9th Cir. 2002) ........................................................... 20

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY JUDGMENT - iv
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*Scribner v. Worldcom, Inc.*,
   249 F.3d 902 (9th Cir. 2001) ............................................................................ 11, 12

*Thomas v. Anchorage Equal Rights Com'n*,
   220 F.3d 1134 (9th Cir. 1999) ................................................................................. 20

*Warner Theatre Associates Ltd. P'ship v. Metro. Life Ins. Co., No. Civ. 97-4914*,
   1997 WL 685334 (S.D.N.Y. Nov. 4, 1997) ............................................................ 10

*Wilderness Soc., Inc. v. Rey*,
   622 F.3d 1251 (9th Cir. 2010) ................................................................................. 20

*Zuver v. Airtouch Commc'ns, Inc.*,
   153 Wn. 2d 293, 103 P.3d 753 (2004) ...................................................................... 9

*In re Vylene Enterprises, Inc.*,
   90 F.3d 1472 (9th Cir. 1996) .............................................................................. 12, 13

### Statutes

Fed. R. Civ. P. 12(f) ................................................................................................ 19

Fed. R. Civ. P. 56(c) ................................................................................................ 7

### Miscellaneous

*Restatement (Second) of Contracts* § 205 (1981) .................................... 9, 11, 23

Wash. Prac., Contract Law And Practice § 5:12 ...................................... 1, 8

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY JUDGMENT - v
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

1

## Preliminary Statement

2         Microsoft is not entitled to partial summary judgment on the disputed and fact-intensive

3    question whether Motorola violated a duty of good faith as to its RAND licensing commitments.

4    Contrary to Microsoft's numerous suggestions in its motion, this Court has *not* effectively decided

5    that issue through its earlier rulings in this case.  Microsoft would take this Court's April 2013

6    decision, reached after lengthy discovery and a full trial, and impute its conclusions back to

7    October 2010 as if Motorola knew or should have known of the Court's order.  But whether the

8    duty of good faith has been breached by a party is an "***an issue for the trier of fact,***" determined

9    by reference to ***context and circumstances***.  25 Wash. Prac., Contract Law And Practice § 5:12

10   (emphasis added).  And numerous questions of disputed fact remain as to the ***actual facts*** of the

11   parties' respective knowledge and positions in October 2010.  Microsoft argues that Motorola

12   breached its duty of good faith *per se* by sending two letters identifying Motorola's essential

13   patents and setting forth Motorola's standard royalty rate of 2.25% on the price of the end product

14   and by later seeking injunctions.  But Microsoft omits all the facts that tell a very different story:

15       *First*, Motorola sent these letters, as it had often done  before, as part of the licensing

16   discussions that sophisticated companies routinely engage in as part of the custom and practice of

17   high-tech industries.  *Second*, it was *Microsoft* that departed from that custom and practice by

18   taking the unprecedented step of filing a breach-of-contract lawsuit just 20 days after receiving

19   Motorola's letter, without making any counteroffer.  *Third*, the timeline of this case did not begin

20   with Motorola's letters in October 2010, but rather with Microsoft's prior decision in October,

21   2010 to sue Motorola for patent infringement in the ITC and district court.  It did so because

22   Motorola had chosen the Google Android operating system for its smartphones rather than

23   Microsoft's commercially floundering Windows operating system for mobile devices.  *Fourth*, the

24   idea for the Motorola letters was Microsoft's, not Motorola's:  After filing its lawsuits, Microsoft

25   *asked* Motorola to put its patents on the table, and  Motorola—under time pressure from

26   Microsoft's lawsuits—complied.  *Fifth*, the letters included Motorola's standard rate not in order

1  to hold-up Microsoft but rather because that rate had been used in many previous bilateral

2  negotiations with other companies. *Sixth*, by sending the letters, Motorola envisioned a back-and-

3  forth discussion about both parties' patents, with a wide range of possible outcomes if negotiations

4  had proceeded.  *Seventh*, Microsoft filed this lawsuit without making a single counteroffer or

5  response of any kind, even though it knew well that opening offers are just that – opening offers—

6  and that opening offers need not be on RAND terms.  To the contrary, as Microsoft well knew,

7  RAND rates and cross-licenses are reached as a result of an extensive negotiation process that

8  involves consideration of many terms and not just a single royalty rate.  It was Microsoft that

9  short-circuited that discussion by its rush to court here.

10      These material issues of disputed fact as to whether Motorola violated the duty of good

11  faith and fair dealing preclude summary judgment on this issue.  This Court should also deny

12  Microsoft's motion for summary judgment on Motorola's affirmative defenses.  Contrary to

13  Microsoft's arguments, there is ample evidence supporting Motorola's claims.

14                    **Statement of Facts**

15  **I.**     **MOTOROLA'S COMMITMENTS TO THE IEEE AND ITU.**

16      As this Court is well aware, at issue in this case are Motorola's commitments to the IEEE

17  and ITU.  Motorola's Letters of Assurance to the IEEE provide that it will make licenses to certain

18  of its essential patents available to all applicants on RAND terms and conditions.  (Dkt. 721, Ex.

19  Q.)  The IEEE does not define what are RAND terms and conditions.  In fact, its bylaws state that

20  the IEEE "is not responsible . . . for determining whether any licensing terms or conditions

21  provided . . . are reasonable or non-discriminatory." (*Id.*, Ex. R, 16.)

22      Motorola's Patent Statement and Licensing Declaration for ITU-T/ITU-R

23  Recommendation states: "The Patent Holder is prepared to grant a license to an unrestricted

24  number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and

25  conditions to make, use and sell implementations of the above document." (*Id.*, Ex. S.)  The ITU

26  Policy and its licensing declaration form further state that "negotiations are left to the parties

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY JUDGMENT - 2
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  concerned." (*Id.*, Exs. S-T.)  Further, the ITU letter of assurance form expressly allows parties to

2  condition their RAND obligation on the potential licensee's willingness to grant a reciprocal

3  RAND license to its own SEPs.  (*Id.*, Ex. T.)

4  **II.    CONDUCT OF TYPICAL PATENT LICENSING NEGOTIATIONS.**

5       Horacio Gutierrez, Microsoft's Corporate Vice President and Deputy General Counsel in

6  charge of the Intellectual Property Group  (Ex. A, 7:3-7)[1],  testified as follows:

7       **Microsoft as Licensor.**

8

9

10

11

12

13

14

15

16

17

18

19

20

21       **Microsoft as Licensee.**

22

23

24

25

26  [1]   Unless otherwise specified, all exhibits referenced herein are attached to the Declaration of Andrea Pallios
Roberts, filed concurrently herewith.

1 ██████████████████████████████████████████

2 █████████████████████████████████████████

3 ███████████████████████████████████████████

4 ███████████████████████████████████████

5 ████████████████████████████████████████

6 ████████████████████████████████████████████

7 ███████████████████████████████████████████

8 ██████████████████████████████████████

9 **Time Limits on License Offers.** █████████████████

10 ███████████████████████████████████████

11 ████████████████████████████████████████████

12 ███████████████████████████████████████████████

13 ███████████████████████████████████████████

14 ████████████████████████████████████████

15 **III.    THE PARTIES' LICENSING DISCUSSIONS PRECEDING THIS LAWSUIT.**

16      Microsoft's motion for partial summary judgment *omits* the relevant facts preceding

17 Motorola's October 21 and October 29, 2010 offer letters, which are more fully set forth in

18 Defendants' Motion for Summary Judgment (Dkt No. 733, 2-4) and summarized briefly here.

19      **The Parties' Licensing Negotiations Prior to Microsoft's October 1, 2010 Litigation.**

20 Motorola had a license to Microsoft's ActiveSync patents, which expired in 2007.  (Ex. B, 81:1-

21 4.)  The parties engaged in renewal negotiations for approximately three years (*id.*, 81:20-83:3)

22 during which Motorola repeatedly advised Microsoft that it had patents that read on Microsoft's

23 products.  (*Id.*, 23:21-24:12, 66:16-68:7, 74:24-75:20.)  At no time prior to October 1, 2010 did

24 Microsoft ask Motorola for more details about such patents.  (*Id.*, 72:5-10, 72:20-73:2.)  By 2010,

25 _____

26 [2]  Mr. Gutierrez clarified that Microsoft does not do this in opening offers, but does place time limits on subsequent offers.

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY JUDGMENT - 4
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   all of Motorola's smartphone products used the Android mobile operating system, an open source

2   code system offered by Google, rather than Microsoft's mobile operating system, which failed to

3   obtain adoptions at anywhere near the 90 percent market share Microsoft had acquired for its

4   Windows operating system for desktop computers.  (Ex. D, 14:25-15:5, 22:11-16, 22:14-23;

5   23:18-22.)

6         On October 1, 2010, without prior notice, Microsoft sued Motorola, filing a complaint in

7   the ITC alleging patent infringement by Motorola's Android smartphones ("ITC-744 action").

8   (Ex. B, 30:2-23, Exs. H-I; Dkt. 721, Ex. B.)  Microsoft also filed a patent infringement action

9   against Motorola in this Court asserting infringement of the same patents at issue before the ITC

10  ("1577 action").  (Dkt. 721, Ex. C.)  In both actions, Microsoft asserted its ActiveSync and

11  computer file system patents (U.S. Patent Nos. 5,579,517 and 5,758,352) and other patents,

12  including some of which that had never been the subject of prior negotiations, against Motorola.

13  (Dkt. 721, Exs. B and C; Ex. B, 30:24-31:4; 92:13-16, 93:8-20, 97:1-98:14.)  Microsoft sought an

14  exclusion order in the ITC and an injunction in the district court even though it had committed to

15  license its ActiveSync and computer file system patents on RAND terms.  (Ex. B, 30:24-31:4,

16  31:9-32:23, 35:8-11, Exs. G-I; Dkt. 721, Ex. B.)

17         **Microsoft Invites Motorola to Present its Patents.**  After it filed its lawsuits against

18  Motorola, Microsoft told Motorola it was interested in finding a resolution that would cover both

19  parties' intellectual property and in discussing a cross-license agreement.  (Ex. B, 24:19-26:11,

20  81:20-82:8, 84:14-85:24, 89:24-90:21, 106:20-108:4, 109:17-110:7.)  Microsoft conveyed to

21  Motorola that it wanted to quickly resolve the parties' dispute since the parties were already

22  engaged in litigation.  (*Id.*, 111:7-112:22.)[3]  As is typical in patent licensing negotiations,

23  Microsoft invited Motorola to present its patents for discussion, advising Motorola that part of the

24  conversation to resolve the parties' dispute ███████████████████████████████

25

26  _____
    [3]  According to Mr. Gutierrez, this message was conveyed at three levels: CEO to CEO, General Counsel to
    General Counsel, and Mr. Gutierrez to Mr. Kirk Dailey.

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY JUDGMENT - 5
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

1 ██████████████████████████████████████████████████████

2 ████████████████████████████  (*Id.*, 84:17-24, 85:2-86:24, 89:24-

3 90:21, 162:5-9; Ex. N, 38:16-40:5.)  The parties also scheduled a meeting for October 22, 2010 to

4 discuss a broad patent cross-license, which would include a discussion of both parties' intellectual

5 property.  (Ex. B, 93:21-95:17, 96:2-11, 100:7-101:21.)  This meeting was scheduled before

6 Microsoft received Motorola's October 21, 2010 letter.  (*Id.*, 101:25-102:20.)  The parties did not

7 discuss which patents would be discussed at that meeting.  (*Id.*, 97:14-17.)

8 **Motorola Makes Microsoft a License Offer and Microsoft Files Suit Again.**  On

9 October 21, 2010, in advance of the parties' scheduled meeting, Motorola sent Microsoft a letter

10 offering to grant Microsoft a worldwide license to Motorola's portfolio of patents and patent

11 applications relating to the IEEE 802.11 standards, and identifying the patents and patent

12 applications covered by that offer.  (Dkt. 721, Ex. D.)  On October 29, 2010, Motorola sent

13 Microsoft a second letter, which offered to grant Microsoft a worldwide license to Motorola's

14 portfolio of patents and patent applications relating to the ITU-T Recommendation H.264, again

15 identifying the patents and patent applications covered by the offer.  (*Id.*, Ex. E.)[4]  Both letters

16 offered to license these patent portfolios at a royalty rate of 2.25%, and stated that the offers would

17 remain open for 20 days.  (*Id.*, Exs. D and E.)  Contrary to its typical practice of responding to a

18 potential licensor's offer, Microsoft did not respond to Motorola's October 21 and 29, 2010 offer

19 letters.  (*See* Dkt. 721, Ex. F, 20:3-6; 63:4-8.)  ███████████████████████████

20 ████████████████████████████  (*Id.*; Ex. B, 117:17-24, 159:7-21.)

21     The parties then proceeded with the already-scheduled October 22 licensing meeting.  The

22 meeting went forward and was ███████████  and indeed ███████████  to Microsoft.  (*Id.*,

23 115:17-116:3.)  The parties did not discuss Motorola's standard-essential patents or Motorola's

24 October 21, 2010 letter.  (*Id.*, 119:5-120:5, 160:10-12, 160:19-24.)

25

26 ────────────────────
    [4]   These letters were sent before Motorola Mobility was spun off.  Presently, some of the patents in these two
    portfolios are owned by Motorola Mobility, whereas others are owned by Motorola Solutions.

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY JUDGMENT - 6
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

1     On November 9, 2010, without ever making a response or counteroffer, Microsoft filed the

2 complaint in this action, asserting, among other claims, that Motorola breached its obligations to

3 the IEEE and ITU by failing to offer to license its 802.11 and H.264 SEP portfolios on RAND

4 terms. (Dkt. 1.)  Microsoft did no analysis of what a RAND offer would look like before filing the

5 case. (Ex. B, 151:10-24, 152:4-8, 149:7-150:17, Ex. 8.)

6     Right after Microsoft filed its complaint, its executives told Motorola not to be concerned

7 about the lawsuit, that it was '███████████████' at Microsoft. (Ex. E, 39:8-22; Ex. N, 40:6-

8 18.)[5]

9 **IV.**    <u>**MOTOROLA'S SUBSEQUENT LAWSUITS**</u>

10     Motorola ultimately filed patent infringement cases against Microsoft in the Western

11 District of Wisconsin, ITC, and Germany only *after* Microsoft had first sued Motorola in the ITC

12 and this Court alleging patent infringement, then invited Motorola to present its patents for

13 negotiation, and then sued Motorola again alleging breach of contract. (*See* Dkt. 733, 3-4.)

14     <u>**Summary Judgment Standard**</u>

15     Federal Rule of Civil Procedure 56 permits summary judgment only where "'there is no

16 genuine issue as to any material fact, or in which only a question of law is involved.'" *Denton v.*

17 *BP W. Coast Prods., LLC*, No. C09-1344-JCC, 2011 WL 1883805, at *2 (W.D. Wash. May 17,

18 2011) (quoting *Wright & Miller, Federal Practice and Procedure: Civil 3d* § 2712). "Summary

19 judgment is appropriate if, when viewing the facts in the light most favorable to the nonmoving

20 party, there is 'no genuine issue as to any material fact,' and therefore 'the movant is entitled to

21 judgment as a matter of law.'" *Aetna Health Inc. v. Fox*, No. 09-5647, 2011 WL 2413267, at *1

22 (W.D. Wash. June 13, 2011) (quoting Fed. R. Civ. P. 56(c)). "All reasonable inferences supported

23 by the evidence are to be drawn in favor of the nonmoving party." *Davis v. Homecomings Fin.*,

24

25    [5]  With its Motion, Microsoft submitted Motorola privilege objections at deposition (Ex 1 at pages 69-72 and Ex 2
at pages 39-41 and 127-131) as well as Motorola's privilege log (Ex 3), apparently asking this court to take an

26 improper adverse inference. Motorola objects, *see, e.g, Parker v Prudential*, 900 F.2d 772, 775 (4th Cir. 1990) , and
will be filing a motion in limine on this issue.

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY JUDGMENT - 7
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

C05-1466RSL, 2007 WL 1600700, *1 (W.D. Wash. June 1, 2007).  "Summary judgment should be denied when the non-moving party offers evidence from which a reasonable jury could return a verdict in its favor." *Aetna Health*, 2011 WL 2413267, at *1 (citing *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995)).

## Argument

**I.** **THERE IS A GENUINE DISPUTE OF MATERIAL FACT AS TO WHETHER MOTOROLA BREACHED ITS COMMITMENTS TO THE IEEE AND ITU.**

Microsoft alleges that Motorola breached its purported contracts with the IEEE and ITU as a matter of law by sending the October 2010 letters offering to license its 802.11 and H.264 SEP portfolios at 2.25%, contending Motorola violated the implied covenant of good faith and fair dealing by engaging in commercially unreasonable conduct and by frustrating the purpose of its RAND licensing commitments.[6]  This Court should deny Microsoft's motion because it applies an incorrect legal standard for breach of the duty of good faith and fair dealing and ignores the context and the circumstances of both parties' conduct.

Under Washington law, a "breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *Nw. Ind. Forest Mfr. v. Dep't of Labor & Indus.*, 899 P.2d 6, 9 (Wash. Ct. App. 1995).  The implied duty of good faith and fair dealing arises out of the obligations created by a contract and exists only in relation to performance of specific contract terms.  *See Badgett v. Sec. State Bank*, 116 Wn. 2d 563, 569-74 (1991); (Dkt. 716, 7.)  Washington does not recognize "a free-floating duty of good faith unattached to the underlying legal document," *id.* at 570, and thus the duty cannot "'inject any substantive terms into the parties' contract,'" *id.* at 569.  Nor does the duty require parties to accept any "material change in the terms of the contract," *see Betchard-Clayton, Inc. v. King*, 41 Wn. App. 887, 890-91 (1985).  Whether the duty of good faith has been breached by a party is an

---

[6]  Microsoft's motion for partial summary judgment is limited to the breach element of its breach of contract claims, not the elements of causation or damages.  Thus, Microsoft's motion does not resolve this case.

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY JUDGMENT - 8
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

"*an issue for the trier of fact*," determined by reference to *context and circumstances*.  25 Wash. Prac., Contract Law And Practice § 5:12 (emphasis added).

The duty of good faith and fair dealing implied in every contract applies not only to the party alleged to have breached the contract, but also to the party seeking to enforce it.  *See Restatement (Second) of Contracts* § 205 (1981) ("Every contract imposes upon *each party* a duty of good faith and fair dealing in its performance and *its enforcement*") (emphasis added); *see also Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn .2d 293, 317 (2004) ("Washington courts have long held that mutuality of obligation means both parties are bound to perform the contract's terms").  "[T]he obligation of good faith and fair dealing extends to the assertion, settlement and litigation of contract claims and defenses."  *Restatement (Second) of Contracts* § 205, cmt. e.  As explained in the Restatement, "the obligation is violated by dishonest conduct such as conjuring up a pretended dispute, asserting an interpretation contrary to one's own understanding, . . . [and] willful failure to mitigate damages."  *Id.*

### A.   There is a Genuine Dispute of Material Fact as to Whether Motorola Engaged in Commercially Unreasonable Conduct.

Microsoft argues that, as a matter of law, Motorola's October 2010 letters were commercially unreasonable because objectively too high compared with the rates and ranges established by this Court's April 19, 2013 Findings of Fact and Conclusions of Law.  (Dkt. 729, 13).  This argument fails, for Washington law on good faith and fair dealing requires consideration of subjective as well as objective factors, and even if only objective factors were considered, there are still genuine issues of material fact that preclude summary judgment here.

#### 1.   Microsoft Improperly Focuses *Only* on the Amount of Motorola's October 2010 Offers and Ignores Other Relevant Factors.

Microsoft cites not a single case finding breach of the duty of good faith based solely on the contention that the size of an opening offer is too high.  There is none.[7]  To the contrary,

---

[7]  Motorola cited substantial case law establishing that a high/low offer alone is not dispositive of good faith in its June 1, 2013 brief.  (Dtk. No. 716.)  If Microsoft had case law to refute that point, it would have cited to it here.

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO MICROSOFT'S MOTION FOR PARTIAL SUMMARY JUDGMENT / MOTION FOR SUMMARY JUDGMENT - 9 CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  numerous cases find that the size of an offer alone is *not* dispositive of the reasonableness of the

2  offer or of whether the offeror has breached a duty of good faith. *See Alliance Atlantis Releasing*

3  *Ltd. v. Bob Yari Prods.*, No. CV 08-5526-GW (SSX), 2010 WL 1525687, *12 (C.D. Cal. Apr. 12,

4  2010) ("[A] low offer still qualifies as a good faith offer."); *Warner Theatre Associates Ltd. P'ship*

5  *v. Metro. Life Ins. Co.*, No. Civ. 97-4914, 1997 WL 685334, *6 (S.D.N.Y. Nov. 4, 1997)

6  (Sotomayor, D.J.) ("Nothing in the duty of good faith requires that parties to a negotiation propose

7  only such terms as the other party is happy with."), *aff'd*, 149 F.3d 134 (2d Cir. 1998); *BBS*

8  *Technologies, Inc. v. Remington Arms Co., Inc.*, No. Civ. A. 05-98-DLB, 2005 WL 3132307, at *4

9  (E.D. Ky. Nov. 22, 2005) (emphasizing that "just because one side views another side's settlement

10  offer as unreasonable does not mean that the offer was made in bad faith"); *Realtek Semiconductor*

11  *Corp. v. LSI Corp.*, No. C-12-03451 RMW, 2012 WL 4845628, *4 (N.D. Cal. Oct. 12, 2012)

12  (applying this Court's reasoning in denying motion to dismiss a claim alleging breach of good

13  faith in a RAND contract, but emphasizing that "the royalty rate as compared to selling price" was

14  merely "*one relevant factor*" and that "reasonableness turns on "the *entirety of the terms and*

15  *circumstances*") (emphasis added); (*see also* Dkt. 716, 11-12, 13-14.)[8]  Accordingly, Microsoft

16  cannot establish a breach of the duty of good faith and fair dealing based exclusively on the

17  difference between Motorola's offers and the RAND rates and ranges determined by this Court.

18         2.      The Jury Should Consider Subjective Factors in Determining Good Faith.

19                 (a)      Washington Law Considers Subjective Factors.

20         As this Court previously stated: "[w]hile the court will not at this time set forth a legal

21  standard with respect to Motorola's duty to offer its patents in good faith, ***it is likely that any***

22  
23  _____

[8]  In its June 1, 2013 brief, but not its Motion for Partial Summary Judgment, Microsoft cited to *Best v. U.S. Nat.
Bank of Oregon*, 303 Or. 557, 563-65 (1987).  There, the court stated that, "[w]hen a party has the contractual right to
specify a price term, the term specified may be so high or low that the party will be deemed to have acted in bad faith

24  regardless of the reasonable expectations of the other party." *Id.* at 565. The court, however, did not apply this in its
decision and went on to state that, "[i]n general, whether a specified price violates the obligation of good faith should

25  be decided by the reasonable contractual expectations of the parties." *Id.* The court went on to later explain that
"[t]he obligation of good faith, then, does not limit the *amount* of the Bank's NSF fee, but only the contractual

26  procedure by which it is set," and ultimately held that there was a genuine issue of material fact as to the breach of
good faith claim. *Id.* at 566, 571 (emphasis in original).

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY
JUDGMENT - 10
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

1   *analysis of Motorola's duty will involve, at least in part, an examination of the intent behind*

2   *Motorola's offers.*" (Dkt 335, 27 (emphasis added).)  That is correct.  The Restatement (Second)

3   of Contracts Section 205, on which Washington law (and Microsoft) relies, *see, e.g., Fairhaven*

4   *Land & Livestock Co. v. Chuckanut Trails Water Ass'n*, Case No. 60909-2-I, 148 Wn. App. 1046

5   (Feb. 23, 2009) (unpublished opinion), suggests that there is both an objective and a subjective

6   component to assessing good faith and fair dealing.  For example, the Restatement provides that,

7   while "[a] complete catalogue of types of bad faith is impossible,. . . *willful* rendering of imperfect

8   performance" is an example of bad faith.  *Restatement (Second) of Contracts* § 205(d) (1981)

9   (emphasis added); *see also Matter of Hollingsworth's Estate*, 88 Wn. 2d 322, 330 (1977) (finding

10  that a party to a stipulated settlement of a will acted in bad faith when he refused to accept a tax

11  compromise "not because he, in fact and in good faith, found the tax compromise unacceptable,

12  but because *he later decided he had made a bad bargain*") (emphasis added); *Cavell v. Hughes*,

13  29 Wn. App. 536, 539-40 (1981) (holding that the "record shows clearly that defendant did not

14  proceed in good faith after signing the earnest money agreement" because the defendant, *inter*

15  *alia*, "sought the advice of counsel for the *specific purpose* of frustrating the sale, and testified at

16  trial that he wanted out of the agreement because *he felt he had made a bad bargain by fixing a*

17  *price that was too low*") (emphasis added).

18          (b)    The Cases Cited by Microsoft Do Not Support Ignoring Subjective
                Factors.

19

20        Although Microsoft cites to several cases in its Motion for Partial Summary Judgment and

21  its July 1, 2013 good faith brief to support its assertion that only objective factors should be

22  considered (*see* Dkt.No. 729, 11; Dkt. 715, 5-8), those cases both support Motorola's argument,

23  and are factually distinguishable.  For example, Microsoft cites to *Scribner v. Worldcom, Inc.*, 249

24  F.3d 902, 910 (9th Cir. 2001), for its assertion that a showing of subjective bad faith is not

25  required. (Dkt.No. 729,11; Dkt. 715, 5-6.)  But *Scribner* in fact *supports* the consideration of

26  subjective factors in determining good faith.  There, the Ninth Circuit held that a corporation's
stock option committee breached its duty of good faith and fair dealing when the committee,

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY
JUDGMENT - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

1  which had discretion to interpret the terms "with cause" or "without cause" used in an options

2  contract between employer and employee, determined that the employee was terminated "with

3  cause," preventing the employee from being able to immediately exercise his stock options.

4  *Scribner*, 249 F.3d at 909-11.  The court considered the committee's motive or purpose, finding

5  that the employee "has presented ample evidence demonstrating that rather than making a good

6  faith effort to determine whether his termination had been 'with cause' or 'without cause' based

7  on language of the Plan and his justified expectations, the Committee chose its desired result"

8  based on a desire to facilitate the sale of the division in which the employee worked.  *Id.* at 910-12

9  (emphasis added).   In any event, *Scribner* is factually distinguishable because it involved the

10  committee's discretion to make a unilateral interpretation of a contract term that was "conclusive

11  and binding on all Optionees" without any opportunity for negotiation.  *Id.* at 906.  In contrast,

12  Motorola had no discretion to unilaterally set the royalty rate in a final contract that was binding

13  on the parties, Motorola's offers were made to begin a negotiation process (Dailey Dec., ¶ 5), and

14  the employee and corporation stock option committee in *Scribner* had unequal bargaining power,

15  whereas this case involves two sophisticated companies and here, Microsoft has the greater

16  bargaining power.

17       To support its assertion that only objective factors should be considered, Microsoft cites to

18  *Craig v. Pillsbury Non-Qualified Pension Plan,* 458 F.3d 748 (8th Cir. 2006), *Curtis v. N. Life Ins.*

19  *Co.*, 147 Wn. App. 1030 (2008) (unpublished opinion), and *In re Vylene Enterprises, Inc.*, 90 F.3d

20  1472 (9th Cir. 1996) (applying California law).  (Dkt. 729, 11; Dkt. 715, 7.)  These cases are also

21  inapposite here.  *First,* in *Craig*, the Eighth Circuit affirmed the district court's grant of summary

22  judgment to plaintiff employee, holding that a pension plan abused its discretion and breached the

23  duty of good faith and fair dealing when it calculated the employee's pension benefits without

24  including certain bonuses, holding that its discretion did not extend so far as to redefine the term

25  "compensation" to exclude bonuses.  *Craig*, 458 F.3d at 753-54.  In contrast, Motorola had no

26

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY
JUDGMENT - 12
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

1    discretion to set a final contract term nor did it purport to do so.  And, again, unlike the

2    employment situation in *Craig*, Motorola had no advantage in bargaining power over Microsoft.

3    *Second*, *Curtis* likewise involved a situation where one party had unilateral discretion to

4    set a term interest rate without negotiation—there, an insurance company to set interest rates

5    without disclosing its methods for doing so.  *Curtis*, 147 Wn. App. 1030, at *5-6.  In any event,

6    the appeals court **reversed** the trial court's grant of summary judgment to the insurance company,

7    holding that there were questions of fact about whether the subsidy method the insurance company

8    had used was not in good faith and whether its actions had damaged the plaintiffs (a class of

9    Washington residents).  *Id.*, at *6.

10   *Finally*, in *Vylene*, the Ninth Circuit, applying California law, vacated the district court's

11   order and reinstated the bankruptcy court's findings that a franchisor had failed to conduct good

12   faith negotiations concerning the renewal of a franchise agreement.  90 F.3d at 1476-77.  Instead

13   of negotiating a renewal, the franchisor offered the franchisee a different franchise agreement that

14   the franchisee had already rejected because it believed the terms were commercially unreasonable.

15   *Id.* at 1477.  The Ninth Circuit also held that the franchisor had breached the duty of good faith

16   and fair dealing by constructing a competing restaurant within a mile and a half of the franchisee's

17   restaurant, which prevented the franchisee from "enjoy[ing] the fruits of the contract." *Id.*  There

18   is no evidence of any remotely similar conduct by Motorola.  And again, the franchisor had the

19   greater bargaining power.  Thus, the cases on which Microsoft relies do not support ignoring

20   subjective factors.

21              (c)      Among the Factors that the Trier of Fact Should Consider is
                         Industry Practice or Custom.

22

23   Among the factors that Microsoft's Motion for Partial Summary Judgment ignores is

24   industry practice or custom, which should be considered in determining whether there was a

25   breach of the duty of good faith and fair dealing and which requires consideration of facts that

26   remain in dispute.  *See, e.g.*, *Curtis.*, 147 Wn. App. 1030, at *6.  In *Curtis*, the court considered

     industry practices and found that there was a factual dispute as to whether defendant had complied

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY
JUDGMENT - 13
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

with its implied duty of good faith and fair dealing due to conflicting evidence regarding industry practice. *Id.* at *6-7; *see also Barstad v. Stewart Title Guar. Co., Inc.*, 145 Wn. 2d 528, 543-44 (2002) (applying industry practices to interpret "bad faith" under RCW 48.01.030, and finding in light of such practices that defendant title company had a reasonable basis for not including information in its preliminary commitments that it believed would be disclosed elsewhere); *Axthelm & Swett Const., Inc. v. Caudill*, No. 35995-9-I, 86 Wn. App. 1002, *4 (May 12, 1997) (rejecting defendant's argument that construction company breached its good faith obligation to obtain proper permits in a timely manner based, in part, on trial court's finding that the construction company's actions were "in compliance with industry standards" and had been performed "in a more expeditious manner than typical"); *Amerigraphics, Inc. v. Mercury Cas. Co.*, 182 Cal App. 4th 1538, 1556 (Cal. App. 2010) (permitting an insurer to introduce evidence of "custom and practice in the industry" to support its argument that it had not acted in bad faith in denying payment to the insured); *Lichtenberg Constr. & Dev., Inc. v. Paul W. Wilson, Inc.*, No. C-000811, 2001 WL 1141236, at *2-3 (Ohio Ct. App. Sept. 28, 2001) (looking to industry practices in the construction industry to determine whether a subcontractor breached a duty of good faith in refusing to adhere to a strict deadline despite a "time-is-of-the-essence" clause in the agreement); (*See* Dkt. 716, 5-6.)

3.     <u>There is a Genuine Issue of Material Fact as to Whether Motorola Breached its Duty of Good Faith and Fair Dealing.</u>

Whether Motorola breached the implied covenant of good faith and fair dealing by a commercially unreasonable offer (Dkt. 733, 12-18.) cannot be determined on the current record as a matter of law. Disputed issues of fact remain, and the jury should be given the opportunity to consider the context and circumstances surrounding Motorola's offers and Microsoft's response.

*First*, there is no evidence that Motorola acted in subjective bad faith or had any subjective intent to breach its RAND commitments. The uncontroverted evidence is that Motorola sent the October letters with the intent of beginning the process of negotiating a patent cross-license agreement. (Dailey Dec., ¶ 5; Ex. N, 38:16-40:5.)  Microsoft filed patent infringement

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY
JUDGMENT - 14
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1 │ lawsuits first, then assured Motorola that it wanted to reach a quick resolution that recognized the

2 │ intellectual property rights of both parties, and invited Motorola to identify its patents for

3 │ discussion. Microsoft and Motorola had a "███████████" in-person meeting after Microsoft

4 │ received the October 21, 2010 letter and did not discuss the letter at all, let alone any expression of

5 │ the outrage one would expect Microsoft to have had if Motorola's offers were truly commercially

6 │ or blatantly unreasonable. And Microsoft did not respond to Motorola's October letters in any

7 │ way, but instead filed the present litigation.

8 │      *Second*, there is no evidence that Motorola's opening offer letters departed from industry

9 │ custom or practice. The policies of the IEEE and ITU expressly recognize that the details of a

10 │ RAND license are left to the negotiations of the parties. In particular, the ITU letter of assurance

11 │ form expressly allows parties to condition their RAND obligation on the potential licensee's

12 │ willingness to grant a reciprocal RAND license to its own SEPs. (Dkt. 721, Ex. T.) This

13 │ reciprocity provision necessarily requires a negotiation between the parties; Motorola was entitled

14 │ to determine if Microsoft was willing to grant Motorola a reciprocal RAND license to its own

15 │ SEPs. Microsoft's own witness████████████████

16 │ ██████████████████████████████

17 │ ███████████████████████ also confirmed that

18 │ it is not uncommon in the industry for licensing offers to remain open for a limited period of time.

19 │ ████████████████████████

20 │ ██████████████ Moreover, in parallel with this litigation, the parties have

21 │ engaged in ongoing negotiations of a patent cross-license in keeping with typical industry practice.

22 │      The evidence shows that, consistent with these standard industry practices, Motorola's

23 │ October 2010 letters were mere opening offers that could not have determined the end-result of the

24 │ parties' negotiation of a RAND license. Microsoft was free to make a counteroffer, ███████

25 │ █████████ and Microsoft was free to make whatever counteroffer it wished, including

26 │ a counteroffer at the low rate later determined by this Court to be RAND after lengthy discovery

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY
JUDGMENT - 15
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1  and trial.  The fact that Motorola's opening offers may have started out at a level Microsoft

2  deemed too high would not have affected where the parties would have eventually ended up after

3  negotiations ███████████████████████████████████████████████

4  And Motorola's RAND commitments are to enter into RAND licenses, not to make RAND offers.

5       *Third*, even apart from Motorola's subjective intent and industry custom and practice,

6  material disputes of fact remain as to whether Motorola's offer letters were objectively

7  commercially unreasonable so as to breach the duty of good faith and fair dealing.  For example,

8  Microsoft argues that the patent license agreements on which Motorola relied do not support

9  Motorola's proposed rate because the Court found in its April 19, 2013 Findings of Fact and

10  Conclusions of Law that they did not.  (Dkt. 733, 13.)  But the jury should be able to consider

11  whether Motorola knew or had reason to know ***in October 2010*** that the license agreements on

12  which it relied did not support its offers.  Similarly, Microsoft argues that Motorola should have

13  considered the number of owners of 802.11 and H.264 SEPs who had submitted letters of

14  assurance to the IEEE and ITU for royalty stacking purposes.  (*Id.*, 15.)  This too is an argument

15  that the jury should be able to consider, along with the context and circumstances of Motorola's

16  offers.  These points do not support finding as a matter of law that Motorola breached its duty.

17  This Court should accordingly deny Microsoft's Motion for Partial Summary Judgment.

18       **B.**    **There is a Genuine Dispute of Material Fact as to Whether Motorola Frustrated the Purpose of its RAND Licensing Commitments.**

19

20       Microsoft fares no better in contending that Motorola breached the duty of good faith and

21  fair dealing by frustrating the supposed sole purpose of Motorola's RAND licensing

22  commitments: to prevent hold-up and to avoid royalty stacking issues.  (Dkt. 733, 18-21.)  To

23  begin with, Microsoft does not cite any evidence that the purpose of Motorola's RAND

24  commitments is to prevent hold-up and to avoid royalty stacking issues.  To the contrary, as this

25  Court noted (Dkt. 335, 24-25), an additional purpose of the RAND commitment is to encourage

26  widespread adoption of a standard (Dkt. 673, ¶ 51), and as this Court noted, that purpose would be

frustrated if a party had to make initial offers on RAND terms.

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY
JUDGMENT - 16
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

1       Even if Microsoft accurately described the purpose of the RAND commitment, however,

2   there remain genuine issues of material fact as to whether Motorola's conduct frustrated that

3   purpose.   Contrary to Microsoft's suggestion, a party's subjective intent is relevant to this inquiry

4   under Washington law.   *See, e.g., Hollingsworth's Estate, supra; Cavell v. Hughes, supra; Frank*

5   *Coluccio Const. Co., Inc. v. King Cnty.*, 136 Wn. App. 751, 764-66 (2007) (finding breach of duty

6   of good faith where the county falsely represented to a contractor that it had procured an all-risk

7   policy for the project and colluded with the insurance company to avoid coverage); *Aventa*

8   *Learning, Inc. v. K12, Inc.*, 830 F. Supp. 2d 1083, 1101-02 (W.D. Wash. 2011) (Washington law)

9   (finding triable issue of fact as to whether an acquiring firm breached its duty of good faith by

10  improperly calculating the value of the acquired earnings).   And Microsoft cites no evidence that

11  Motorola engaged in any such egregious, intentional conduct.   Nor does Microsoft cite to any

12  cases in which analogous conduct was found to breach the duty of good faith and fair dealing

13  because it frustrated the purpose of the contract.   As discussed in detail above, Motorola's offers

14  were made in response to Microsoft's own invitation to present Motorola's patents and to begin

15  the process of negotiating a patent cross license agreement.   And, the parties have in fact engaged

16  in ongoing patent license negotiations in parallel with this litigation.   Thus, Motorola's conduct

17  cannot have frustrated the purpose of its RAND commitments.

18      **Royalty Stacking.**   Microsoft claims that "creating 'significant stacking concerns'"

19  frustrated the purpose of Motorola's RAND commitments.   (*See* Dkt. 733, 18.)   There is no

20  evidence, however, that Motorola sent its October 2010 offers with the intent of requiring

21  Microsoft to pay an aggregate royalty that exceeded the product price, as Microsoft argues.   Nor is

22  there evidence that Motorola knew the amount of royalties Microsoft was actually paying to other

23  802.11 or H.264 SEP holders, if any.   This is not information that Motorola could have obtained

24  on its own since it is Microsoft confidential information, but is something that Microsoft could

25  have provided to Motorola in the parties' negotiations.   That Microsoft suggests that Motorola's

26  offers presented a hypothetical problem of royalty stacking does not mean that Motorola's act of

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY
JUDGMENT - 17
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1  making an opening offer to begin negotiations frustrated the purpose of its RAND commitments.

2  There is no provision in Motorola's purported contracts with the IEEE and ITU requiring

3  Motorola to consider royalty stacking when making an opening offer.  At the very least, it is for

4  the jury to decide whether it was possible for Motorola to identify all potential 802.11 or H.264

5  SEP holders, and whether it should have done so prior to sending the October 2010 letters.

6      **Patent Hold-Up.**  Microsoft also asserts that Motorola engaged in "patent hold-up" to

7  frustrate the purpose of its RAND commitments, citing the limited amount of time in which

8  Motorola's offers were to remain open and how quickly Motorola sued Microsoft after  Microsoft

9  filed this suit.  (Dkt. 733, 19.)   But Microsoft's own Mr. Gutierrez testified that it is not

10  uncommon for a potential licensor to limit the amount of time that a offer remains open.  And

11  Microsoft ignores the fact that it had already filed two patent infringement suits against Motorola

12  before Motorola sent the letters, so it was reasonable for Motorola to be prepared for potential

13  litigation if the parties' negotiations fell apart.[9]  And Microsoft cites no case law supporting its

14  claim that pursing injunctions constitutes a breach of good faith and fair dealing.  (Dkt. 733, 20-

15  21.)  All recent relevant cases have held to the contrary.  *See Apple, Inc. v. Motorola Mobility,*

16  *Inc.*, No. 11-cv-178-BBC, 2012 WL 5416941, at *15 (W.D. Wis. Oct. 29, 2012) ("Motorola did

17  not breach its contract  [with IEEE and ETSI] simply by requesting an injunction and exclusionary

18  order in its patent infringement actions" as IEEE and ETSI policies did not plainly prohibit

19  seeking injunctions based on essential patents); *Samsung v. Apple, In the Matter of Certain*

20  *Electronic Devices, Including Wireless Communication Devices, Portable Music and Data*

21  *Processing Devices, and Tablet Computers* (Inv. No. 337-TA-794) (July 2013) (Dkt 738, 45-64)

22  (issuing an exclusion order against certain Apple iPhones based on Apple's infringement of a

23  Samsung essential patent.)  And, in June 2011, Microsoft itself argued to the FTC that SEP

24  ───────────────────────
  [9]  Microsoft also cites to entries in Motorola's privilege log which ███████████

25  ██████ (Dkt. 729, 19 n. 11.)  But, again, Microsoft ignores the fact that the parties were already engaged in litigation after Microsoft fired the first shot. ████████████

26  ████████████████████████████████████████████████

1  holders should be permitted to seek injunctive relief.  (*See* Dkt. 721, Ex. W.)  This Court has

2  previously recognized that there may be circumstances in which Motorola is entitled to injunctive

3  relief for infringement of its SEPs.  (Dkt. 607, 15) .

4       For these reasons,  Microsoft's Motion for Partial Summary Judgment should be denied.

**II.       THERE IS A GENUINE DISPUTE OF MATERIAL FACT ON MOTOROLA'S AFFIRMATIVE DEFENSES AND COUNTERCLAIMS.**

6       This Court should also deny Microsoft's motion for summary judgment on Motorola's

7  third (ripeness), seventh (unclean hands), and eighth (failure to mitigate) affirmative defenses

8  (collectively referred to herein as "affirmative defenses").[10]  Contrary to Microsoft's arguments,

9  there is evidence supporting each defense creating genuine disputes of material fact precluding

10  summary judgment.[11]

**A.       There is Ample Evidence in Support of Motorola's Affirmative Defenses.**

12       Microsoft has not met its burden of showing the absence of any material facts on

13  Motorola's affirmative defenses.  Notably, Microsoft does not even bother to cite to the legal

14  standard for each affirmative defense to show the purported absence of evidence to support each.

15  Rather, Microsoft relies exclusively on this Court's ruling that "Motorola's contracts with the

16  IEEE and the ITU do not condition Motorola's RAND obligations on the implementer first

---

[10]   Based on Motorola's understanding of the Court's June 6, 2012 Order (Dkt. 335), and without waiving any rights on appeal, Motorola does not intend to pursue the following counterclaim and affirmative defenses at the August 26, 2013 breach of contract trial:  (1) Second Counterclaim – Declaratory Judgment That Microsoft Has Repudiated and/or rejected the Benefits of Motorola's RAND Statements; (2) Fourth Affirmative Defense – Forfeiture/Repudiation; and (3) Ninth Affirmative Defense – Failure to Satisfy a Condition Precedent. *See* Dkt. 68, 13, 14, 31-33.  Furthermore, to streamline the issues and defenses at issue at trial, Motorola will not present its Fifth Affirmative Defense – Waiver. *See* Dkt. 68, 14.

[11]   As a preliminary matter, Microsoft's motion as to Motorola's affirmative defenses is procedurally improper. This Court has held that it is procedurally improper to file a summary judgment motion  to exclude an affirmative defense. *Kerzman v. NCH Corp.*, No. C05-1820-JLR, 2007 WL 765202, at *7-8 (W.D. Wash. Mar. 9, 2007) (Robart, J.) ("[T]o claim insufficiency of defense should not be considered a request for judgment but more aptly a request to strike it from the pleading.").  As this Court explained, motions on the insufficiency of affirmative defenses are "disfavored," and are to be reviewed, if at all, as a motion to strike under Fed. R. Civ. P. 12(f). *Id.* at *7.  To strike these affirmative defenses under Rule 12(f), Microsoft must show "that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed." *Id.* Microsoft does not address the Rule 12(f) standard, let alone meet it.  Nor can it.  Microsoft's motion for summary judgment as to Motorola's affirmative defenses should be denied on this procedural basis.

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY
JUDGMENT - 19
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

1   applying for a license and then negotiating in good faith." (Dkt. 335, 19.)  Motorola's affirmative

2   defenses, however, do not depend on whether "Microsoft first appl[ied] for a license and then

3   negotiate[ed] in good faith."  Rather, as explained below, Motorola's affirmative defenses depend

4   on affirmative acts and omissions by Microsoft prior to and during this litigation.

5          ***Ripeness.***  The doctrine of ripeness "is drawn both from Article III limitations on judicial

6   power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc.*

7   *Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993).  It is "peculiarly a question of timing, designed to

8   prevent the courts, through avoidance of premature adjudication, from entangling themselves in

9   abstract disagreements." *Thomas v. Anchorage Equal Rights Com'n*, 220 F.3d 1134, 1138 (9th

10  Cir. 1999) (quotations and citations omitted).  The question of whether federal jurisdiction exists

11  depends on the facts "as they exist when the complaint is filed." *Lujan v. Defenders of Wildlife*,

12  504 U.S. 555, 571 n.4 (1992); *Wilderness Soc., Inc. v. Rey*, 622 F.3d 1251, 1257 (9th Cir. 2010);

13  *Scott v. Pasadena Unified School Dist.*, 306 F.3d 646, 655 (9th Cir. 2002).

14         Here, Microsoft's November 9, 2010 complaint alleged that Motorola breached its

15  purported contracts with the IEEE and ITU solely by sending the October letters.  The dispute was

16  not yet ripe.  Microsoft did not respond with any counteroffer nor otherwise participate in any

17  negotiation. ████████████████████████████████████████████████

18  ████████████████████ (Ex. B, 151:10-24, 152:4-8.) ██████████████████

19  ██████████████████████ (*Id.*, 149:7-150:17, Ex. 8.)  Moreover, in response to the

20  letters, including at the parties' in-person meeting, Microsoft did not so much as intimate that

21  there was a real and concrete dispute over the terms of a license to Motorola's 802.11 SEPs.  To

22  the contrary, Microsoft's testimony that the meeting was '███████████" and ███████"

23  suggests that there was no ripe dispute justifying judicial intervention.  (*Id.*, 149:7-150:17, Ex. 8.)

24         Similarly, Microsoft's February 23, 2011 amended and supplemental complaint added

25  factual allegations relating to Motorola's patent infringement lawsuits seeking injunctive relief.

26  (Dkt. 53.)  As explained above and in Motorola's motion for summary judgment (Dkt. 733),

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY
JUDGMENT - 20
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    Motorola is not precluded from seeking injunctive relief.  Thus, there is evidence supporting

2    Motorola's affirmative defense that neither of Microsoft's breach of contract claims was ripe at the

3    time of filing.  This evidence is sufficient to defeat summary judgment and is not dependent on

4    whether Microsoft "first appl[ied] for a license and then negotiate[ed] in good faith."[12]

5         ***Unclean Hands.***  "The unclean hands doctrine 'closes the doors of a court of equity to one

6    tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however

7    improper may have been the behavior of the defendant.'"  *Adler v. Federal Republic of Nigeria*,

8    219 F.3d 869, 876-77 (9th Cir. 2000) (citing *Precision instr. Mfg. Co. v. Automotive Maintenance*

9    *Machinery Co.*, 324 U.S. 806, 814 (1945)).  Under this doctrine, "plaintiffs seeking equitable

10   relief must have 'acted fairly and without fraud or deceit as to the controversy in issue.'"  *Adler*,

11   219 F.3d at 877 (citing *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985)).

12   Motorola's evidence supports a finding of unclean hands.

13        Among other things, the evidence demonstrates that Microsoft asked Motorola put its

14   patents "on the table," stayed silent in what it now describes as a ███████" meeting, and then filed

15   yet another lawsuit without so much as making a single counteroffer.  Microsoft's conduct

16   suggests that it was engaged in "reverse hold-up."  As explained recently by the International

17   Trade Commission in *Samsung v. Apple*, "In reverse patent hold-up, an implementer utilizes

18   declared-essential technology without compensation to the patent owner under the guise that the

19   patent owner's offers to license were not fair or reasonable.  The patent owner is therefore forced

20   to defend its rights through expensive litigation.  In the meantime, the patent owner is deprived of

21   the exclusionary remedy that should normally flow when a party refuses to pay for the use of a

22   patented invention."  (Dkt. 738, 63; *see also* Dkt. 721, Ex. V, n.15.)

---

[12]  Motorola is mindful of the fact that this Court's June 1, 2011 Order denied Motorola's motion to dismiss under Fed. R. Civ. 12(b)(1).  (*See* Dkt. 66, 6.)  Motorola's motion (Dkt. 57, 10-13), however, alleged that the case was not ripe solely because Microsoft failed to apply for a license and negotiate in good faith.  The Court's Order was limited on similar grounds.  (Dkt. 66, 6.)  As explained here, Motorola's remaining ripeness defense does not depend on these same arguments and thus is not inconsistent with this Court's June 1, 2011 and June 6, 2012 Orders.

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY
JUDGMENT - 21
CASE NO. C10-1823-JLR

Summit Law Group PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

1    Moreover, in June 2011, several months after Motorola filed three of its patent

2    infringement suits and one month before Motorola filed suit in Germany, Microsoft argued to the

3    Federal Trade Commission that SEP holders should be entitled to seek injunctions on patents

4    subject to F/RAND commitments in order to maintain incentives for licensees to engage in good

5    faith negotiations with the patent holder.  (Dkt. 721, Ex. W, 13) ("Any uniform declaration that

6    such relief would not be available if the patent holder has made a commitment to offer a RAND

7    license for its essential patent claims in connection with a standard may reduce any incentives that

8    implementers might have to engage in good faith negotiations with the patent holder.")  Indeed,

9    Microsoft sought injunctions against Motorola for infringement of patents which Microsoft

10   committed to license on RAND terms—the ActiveSync patents and computer file system patents.

11   (Dkt. 723, Exs. B-C; Ex. B, 30:24-31:4, 31:9-32:23, 35:8-11; Exs. G-I.)  For example, Microsoft

12   asserted infringement of the '517 and '352 patents, which it promised to license "in a non-

13   discriminatory fashion and under reasonable terms and conditions." (Dkt. 723, Exs. B-C; Exs. G-

14   I.)   Microsoft is even currently enforcing an exclusion order issued by the ITC against Motorola

15   on an ActiveSync patent, which Microsoft also committed to license on RAND terms.  (Ex. F.)  If,

16   as Microsoft now contends, seeking injunctive relief is inconsistent with RAND commitments,

17   then Microsoft is in violation of its own RAND commitments.  This evidence is sufficient to

18   defeat summary judgment and, again, is not dependent on whether Microsoft "first appl[ied] for a

19   license and then negotiate[ed] in good faith."

20      ***Failure to Mitigate Damages.***  The doctrine of mitigation of damages "prevents recovery

21   for damages the injured party could have avoided through reasonable efforts" under the

22   circumstances.  *Cobb v. Snohomish County*, 86 Wn. App. 223, 230 (1997).  The party seeking to

23   recover damages must "'use such means as are reasonable under the circumstances to avoid or

24   minimize the damages.'"  *Id.* (quoting *Young v. Whidbey Island Bd. of Realtors*, 96 Wn. 2d 729,

25   732 (1982)).  Motorola has evidence that there are a number of different ways in which Microsoft

26   could have mitigated its alleged damages, none of which it incurred before filing the present suit.

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY
JUDGMENT - 22
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    In other words, on the day that Microsoft filed suit, it had not incurred *any* damages; Microsoft's

2    alleged damages are of its own making.

3            *First*, Microsoft could have avoided the need to file suit had it responded in some way to

4    Motorola's October letters, asked whether Motorola's October 21 letter was a "take it or leave it"

5    offer, or engaged in negotiations without parallel litigation.  Microsoft's silence during the

6    October 22, 2010 meeting evidences a willful failure to mitigate damages.[13]  *Second*, Microsoft

7    could have made reasonable efforts to limit its attorneys fees and litigation costs, but instead chose

8    to run the cases without a budget, retain non-Seattle lawyers with rates above Seattle market rates,

9    and staff an excessive number of timekeepers on the matters.  (Ex. J, 28:17-29:2; Dkt. 734, Ex. A,

10   Ex. 3a; Keller Dec., Ex. A.)  *Third*, Microsoft could have made reasonable efforts to avoid

11   relocating its EMEA distribution facility.  Microsoft's own expert witness admitted that Microsoft

12   could have avoided an injunction in Germany had it followed Germany's *Orange Book* procedure.

13   (Ex. K, 121:1-9; Haedicke Dec., Ex. A.)  Similarly, Microsoft has no explanation for why it did

14   not seek an anti-suit injunction earlier than March 28, 2012.  (Ex. L, 173:11-173:16, 174:13-

15   175:22, 228:14-229:2.)  Microsoft also has no explanation for why it did not begin the process of

16   relocating until January 2012, even though Motorola filed suit six months earlier.  (*Id.*, 172:3-12.)

17   Had it begun earlier, Microsoft might have been able to reduce some of the costs of the move.

18   (*Id.*, 172:15-18.)  Once again, this evidence is sufficient to defeat summary judgment and is not

19   dependent on whether Microsoft "first appl[ied] for a license and then negotiate[ed] in good faith."

20           **B.**      **Microsoft Was on Notice of the Facts Supporting Motorola's Affirmative**
                 **Defenses.**
21
             Microsoft may argue that the facts supporting Motorola's affirmative defenses were not
22
     disclosed in Motorola's interrogatory responses.  Motorola, however, did not get discovery on
23
     many of these facts until recently.  For example, although Microsoft disclosed its attorneys fees
24

---

25   [13]   *See Restatement (Second) of Contracts* § 205 (1981) ("The obligation of good faith and fair dealing extends to
     the assertion, settlement and litigation of contract claims and defenses. . . . . The obligation is violated by dishonest
26   conduct such as conjuring up a pretended dispute, asserting an interpretation contrary to one's own understanding, or
     falsification of facts.") (listing "willful failure to mitigate damages" as a violation of duty of good faith, fair dealing).

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY
JUDGMENT - 23
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

1    theory in an interrogatory response, Microsoft did not begin producing the documents underlying

2    its attorneys fees damages claims (which reflect billing rates and an excessive number of

3    timekeepers) until April 2013; did not make a 30(b)(6) witness available to testify about those fees

4    until May 6, 2013; and did not disclose the total amount of fees it seeks to recover until it served

5    its opening expert report on May 29, 2013.  As for the relocation cost damages Microsoft seeks,

6    Microsoft did not disclose that damages theory until April 3, 2013, and did not make a 30(b)(6)

7    witness available to testify about those costs until May 9, 2013.   That witness was not prepared to

8    testify fully on the noticed topics and the Court ordered Microsoft to produce additional witnesses.

9    (Ex. M - Hearing Tr., 8-9.)  Similarly, Motorola's unclean hands defense is largely supported by

10   the testimony of Horacio Gutierrez, whom Motorola deposed on these issues on May 24, 2013.

11         Moreover, Microsoft does not allege, much less prove, that it will be prejudiced by

12   Motorola presenting its affirmative defenses.  Even though Motorola did not supplement its

13   interrogatory responses after the latest phase of fact discovery, it laid out its theories in its expert

14   reports served on May 29 and June 10, 2013.  Many of the facts on which Motorola will rely to

15   refute Microsoft's claim that Motorola did not act in good faith also support Motorola's

16   affirmative defenses.  "In the absence of a showing of prejudice, . . . an affirmative defense may

17   be raised for the first time at summary judgment."  *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th

18   Cir. 1993); *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984) (permitting a defendant to raise an

19   affirmative defense for the first time on summary judgment "despite the fact that this defense was

20   not among the seven affirmative defenses that the defendant raised in its answer."); *Nat. Ass'n of*

21   *Realtors v. Champions Real Estate Services Inc.*, 812 F. Supp. 2d 1251, 1262 (W.D. Wash. 2011)

22   (considering an affirmative defense raised for the first time on summary judgment) (Robart, J.).

23   Motorola's disclosure of its theories is more than sufficient under the applicable law.

### Conclusion

25         For the foregoing reasons, this Court should deny Microsoft's motion.

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY
JUDGMENT - 24
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

DATED this 12th day of July, 2013.

Respectfully submitted,

SUMMIT LAW GROUP PLLC

By */s/ Ralph H. Palumbo*
By */s/ Philip S. McCune*
    Ralph H. Palumbo, WSBA #04751
    Philip S. McCune, WSBA #21081
    *ralphp@summitlaw.com*
    *philm@summitlaw.com*

By */s/ Thomas V. Miller*
    Thomas V. Miller
    MOTOROLA MOBILITY LLC
    600 North U.S. Highway 45
    Libertyville, IL  60048-1286
    (847) 523-2162

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By */s/ Kathleen M. Sullivan*
    Kathleen M. Sullivan, NY #1804624
    51 Madison Ave., 22nd Floor
    New York, NY 10010
    (212) 849-7000
    *kathleensullivan@quinnemanuel.com*

By */s/ Brian C. Cannon*
    Brian C. Cannon, CA #193071
    555 Twin Dolphin Drive, 5th Floor
    Redwood Shores, CA 94065
    (650) 801-5000
    *briancannon@quinnemanuel.com*

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY
JUDGMENT - 25
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

By /s/ William C. Price
  William C. Price, CA #108542
  865 S. Figueroa Street, 10th Floor
  Los Angeles, CA 90017
  (213) 443-3000
  *williamprice@quinnemanuel.com*

  **Attorneys for Motorola Solutions, Inc.,**
**Motorola Mobility LLC and General**
**Instrument Corp.**

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY
JUDGMENT - 26
CASE NO. C10-1823-JLR

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Arthur W. Harrigan, Jr., Esq.
Christopher T. Wion, Esq.
Shane P. Cramer, Esq.
Calfo Harrigan Leyh & Eakes LLP
*arthurh@calfoharrigan.com*
*chrisw@calfoharrigan.com*
*shanec@calfoharrigan.com*

Richard A. Cederoth, Esq.
Brian R. Nester, Esq.
David T. Pritikin, Esq.
Douglas I. Lewis, Esq.
John W. McBride, Esq.
William H. Baumgartner, Jr., Esq.
David C. Giardina, Esq.
Carter G. Phillips, Esq.
Constantine L. Trela, Jr., Esq.
Ellen S. Robbins, Esq.
Nathaniel C. Love, Esq.
Sidley Austin LLP
*rcederoth@sidley.com*
*bnester@sidley.com*
*dpritikin@sidley.com*
*dilewis@sidley.com*
*jwmcbride@sidley.com*
*wbaumgartner@sidley.com*
*dgiardina@sidley.com*
*cphillips@sidley.com*
*ctrela@sidley.com*
*erobbins@sidley.com*
*nlove@sidley.com*

T. Andrew Culbert, Esq.
David E. Killough, Esq.
Microsoft Corp.
*andycu@microsoft.com*
*davkill@microsoft.com*

DATED this 12th day of July, 2013.

/s/ *Marcia A. Ripley*
Marcia A. Ripley

01980.62689/5415533.1 DEFENDANTS' RESPONSE TO
MICROSOFT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT / MOTION FOR SUMMARY
JUDGMENT - 27
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001