HONORABLE JAMES L. ROBART

1

2

3

4

5

6

7

8
IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
9
AT SEATTLE

10 | MICROSOFT CORPORATION,

No. C10-1823-JLR

11 |               Plaintiff,

12 |      v.

MICROSOFT'S REPLY IN SUPPORT
OF ITS RULE 702 MOTION TO
PRECLUDE TESTIMONY BY
MOTOROLA'S EXPERTS

13 | MOTOROLA INC., et al.,

14 |              Defendant.

**Noted: July 30, 2013 at 1:30 PM**

15 | MOTOROLA MOBILITY, INC., et al.,

16 |              Plaintiffs,

**ORAL ARGUMENT REQUESTED**

17 |      v.

18 | MICROSOFT CORPORATION,

19 |              Defendant.

20

21

22

23

24

25

26

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY MOTOROLA'S EXPERTS

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

## TABLE OF CONTENTS

2   INTRODUCTION ............................................................................................................. 1

3   ARGUMENT ................................................................................................................... 2

4   I.   THE IDENTIFIED PORTIONS OF HOLLEMAN'S AND LEONARD'S
        PROPOSED TESTIMONY SHOULD BE EXCLUDED. .................................... 2
5

6        A.   Legal Interpretations And Contradictions of the Court's Rulings Should
              Be Excluded. ............................................................................................... 2

7        B.   Testimony That Microsoft Should Have Negotiated Instead Of Filing This
8             Suit Should Be Excluded. ........................................................................... 4

9        C.   Expert Testimony Concluding That Motorola Acted In Good Faith Should
              Be Excluded. ............................................................................................... 6
10

11  II.  HAEDICKE'S TESTIMONY SHOULD BE EXCLUDED ................................... 7

12       A.   Haedicke's Orange Book Testimony Should Be Excluded. ......................... 7

         B.   Haedicke's German Fee-Shifting Testimony Should Be Excluded. ............. 9
13

14  III. KELLER'S TESTIMONY SHOULD BE EXCLUDED. ..................................... 10

15       A.   Keller Lacks Appropriate Qualifications To Opine On Microsoft's Damages
              Claim And Utilizes An Unreliable Methodology. ....................................... 10
16
         B.   Keller Should Not Be Permitted To Offer Legal Conclusions. ................... 12

17

18

19

20

21

22

23

24

25

26   MICROSOFT'S REPLY IN SUPPORT OF ITS
     RULE 702 MOTION TO PRECLUDE
     TESTIMONY BY MOTOROLA'S EXPERTS

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

2

### <u>TABLE OF AUTHORITIES</u>

3
                                                                                   **Page(s)**

CASES

*Aguilar v. Int'l Longshoremen's Union Local No. 10*,
    966 F.2d 443 (9th Cir. 1992) ...................................................................2

*Elsayed Mukhtar v. California State Univ., Hayward*,
    299 F.3d 1053 (9th Cir. 2002) ...............................................................12

*Hangarter v. Provident Life & Accident Ins. Co.*,
    373 F.3d 998 (9th Cir. 2004) ...................................................................6

*Klaczak v. Consol. Med. Transp. Inc.*,
    No. 96 C 6502, 2005 WL 1564981 (N.D. Ill. May 26, 2005) ................6

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*,
    387 F. Supp. 2d 794 (N.D. Ill. 2005) .....................................................11

*Nationwide Transport Finance v. Cass Info. Sys., Inc.*,
    523 F.3d 1051 (9th Cir. 2008) ...............................................................12

*Pinal Creek Group v. Newmont Mining Corp.*,
    352 F. Supp. 2d 1037 (D. Ariz. 2005) ...................................................12

*RSUI Indem. Co., Inc. v. Vision One, LLC*,
    No. C08-1386RSL, 2009 WL 5125420 (W.D. Wash. Dec. 18, 2009) ................6, 7

*SEC v. Life Wealth Mgmt., Inc.*,
    No. CV 10-4769, 2013 WL 1660860 (C.D. Cal. April 17, 2013) ............6

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY MOTOROLA'S EXPERTS

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

**INTRODUCTION**

2          Directly contrary to the Court's prior rulings, Leonard and Holleman offer legal

3   interpretations of the RAND licensing commitment that would suggest to the jury that

4   Microsoft had no right to file this suit, and Motorola has no obligations other than interminable

5   negotiation.  Motorola's opposition brief fails to respond to Microsoft's arguments that *any*

6   legal interpretations of the contracts are improper subjects of expert testimony, and instead

7   futilely attempts to warp the Court's rulings to conform to the views of its experts.  Motorola

8   urges that much of this improper testimony should be allowed because Motorola's offer letters

9   were not sent "in a vacuum."  (Dkt. No. 749, Defs.' Opp. to Microsoft's Rule 702 Mot. To

10  Preclude Testimony by Motorola's Experts ("Opp.") 10.)  But whether or not Motorola can

11  elicit contextual testimony from fact witnesses, it cannot simply have its experts relate facts

12  that are relevant *only* if the expert's interpretation of the contract is adopted instead of the

13  Court's.

14         Motorola does not identify any source of facts that could fill in the gaping holes in

15  Haedicke's proposed testimony:  he has no idea what would have happened if Microsoft had

16  subjected itself to Motorola's unfettered discretion under the Orange Book, as Motorola urges,

17  and accordingly none of his testimony can provide any basis for Motorola's mitigation claim or

18  any other issue in the case.  Motorola also fails to explain the relevance of Haedicke's fee-

19  shifting testimony.  He should be excluded from testifying at trial altogether.

20         Nor does Motorola's opposition address the identified deficiencies in Keller's

21  methodology, or justify its proposal that Keller tell the jury that Microsoft should have hired

22  Seattle counsel at lower rates for cases that include Wisconsin and ITC proceedings.  Keller's

23  testimony is like testimony from a Denver lawyer that Microsoft should have staffed its cases

24  nationwide with Denver counsel at lower rates.  Keller's testimony should be excluded.

25

26  MICROSOFT'S REPLY IN SUPPORT OF ITS
    RULE 702 MOTION TO PRECLUDE
    TESTIMONY BY MOTOROLA'S EXPERTS - 1

## ARGUMENT

I.   **THE IDENTIFIED PORTIONS OF HOLLEMAN'S AND LEONARD'S PROPOSED TESTIMONY SHOULD BE EXCLUDED.**

A.   **Legal Interpretations And Contradictions of the Court's Rulings Should Be Excluded.**

Contract interpretation is a task for the Court, not the jury or an expert witness.  *See* Dkt. No. 724, Microsoft's Rule 702 Mot. To Preclude Testimony by Motorola's Experts ("Br.") 3–4; *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992).  Motorola makes no attempt to distinguish this clear authority that expert testimony consisting of contract interpretation is inadmissible.  On this basis alone, the identified portions of Holleman's and Leonard's proposed testimony that interprets the contracts at issue— including testimony as to duties allegedly not included in those contracts—should be excluded.

Ignoring the law, Motorola defends Holleman's testimony as an "interpretation of Motorola's RAND commitments [ ] consistent with the Court's prior rulings."  Opp. 1.  If that were true, Holleman's testimony would be superfluous as well as legally barred.  But in truth Holleman's statements are designed to undermine the Court's binding interpretation of the RAND licensing commitment.  Holleman cannot be permitted to tell the jury that the "patent holder fulfills its RAND obligation by being willing to enter into good faith negotiations," or that "attempting in good faith to reach a license" is enough, Opp. 2, because the Court has already rejected those interpretations—the RAND licensing commitment *is not satisfied* by interminable negotiation.  (Dkt. No. 465 at 14.)  Holleman's legal arguments are flatly inconsistent with the Court's rulings.  Even if the Court's holding that "Motorola must grant Microsoft a license" were limited to this case only (and not the RAND licensing commitment in general) Opp. 2, the issue here is Holleman's proposed testimony *for the trial in this case*.  That Holleman's legal interpretations might apply to "other situations" makes them both irrelevant and misleading.

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY MOTOROLA'S EXPERTS - 2

Motorola cannot defend Holleman's legal views on injunctions.  It is immaterial that the Court allowed that circumstances might change in the future, Opp. 2–3, because no such change has occurred—the jury should not hear Holleman declare otherwise.  Motorola shifts to a claim that Holleman is not offering a legal interpretation, but instead opines on "language that is present in or absent" from SSO policies and "his understanding of those inclusions or omissions in light of his 30 years of experience."  Opp. 3.  Explaining the language of a contract *is* interpreting it, and invades the province of the court.  Holleman's "understanding" of the language is both irrelevant and constitutes impermissible contract interpretation.  If Holleman indeed has no opinion "specific to the facts of this case regarding whether Motorola could have sought an injunction," Opp. 3, then his opinions concerning the availability of injunctions have no role in this case, regardless of whether they are improper legal conclusions.

Motorola's defense of its experts' dismissal of stacking and pool rates fails for the same reason:  Motorola claims Holleman is "merely stating the fact that SDO policies do not contain provisions" addressing stacking and pool rates.  Opp. 4.  Motorola's obvious intention is that the jury reach the conclusion, contrary to the Court's holding, that consideration of stacking and pool rates is irrelevant to the RAND licensing commitment.  Motorola's attempt to split hairs is absurd—Holleman's legal opinion that parties need not consider stacking or pool rates "in formulating [their] *opening offers*" directly contradicts the Court's ruling that parties would consider "those factors during their *negotiations*," which include offers.  Opp. 4–5.

Motorola's attempted defense of Leonard's similar proposed testimony, *see* Opp. 9, should also be rejected.  Even ignoring that opening offers are part of negotiations, testimony that RAND licensing commitments do not require consideration of the very purposes of those contracts, including stacking, in opening offers would be highly misleading.  Motorola offers no explanation of how such expert opinion is anything but a legal interpretation—and one that contradicts the Court's holding that opening offers must not be "blatantly unreasonable" and

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY MOTOROLA'S EXPERTS - 3

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    must otherwise conform to the duty of good faith and fair dealing.  Further, Motorola should

2    not be permitted to have Leonard redefine the stacking inquiry to one at odds with the Court's

3    findings.  Opp. 9.  The Court's stacking inquiry does not require "trying to imagine some

4    unknown circumstances," *id.*, it requires considering the implications if Motorola's demand (a

5    known quantity) were made by all, or even many, SEP holders (also a known or easily

6    estimable quantity).  Motorola's attempt to turn the stacking problem into information solely

7    within Microsoft's control fails.

8         Motorola defends another of Holleman's legal interpretations—that "there is nothing"

9    in SSO policies "that speaks to an initial offer"—as only stating facts.  Opp. 5.  Repeating the

10   content of a contract is not helpful to the jury.  If Holleman is simply repeating the Court's

11   holding that offers need not necessarily be RAND, his testimony is at best superfluous.  But in

12   fact Holleman goes further, saying *nothing* speaks to an initial offer, which contradicts the

13   Court's ruling that opening offers must be made consistent with the duty of good faith and fair

14   dealing, and cannot be blatantly unreasonable.  (*See* Dkt. No. 335 at 24.)  There is no space

15   between expert opinion that a contract lacks a particular provision and improper legal

16   interpretation of a contract by an expert.[1]

### B.  Testimony That Microsoft Should Have Negotiated Instead Of Filing This Suit Should Be Excluded.

18        Motorola claims Holleman will not opine that Microsoft did anything improper by

19   filing this suit, insisting that "his statements about Microsoft's decision to file suit are merely a

20   statement of fact about Microsoft's lack of negotiation."  Opp. 4.[2]  But Motorola fails to

21   identify how this "fact" relates to any expert opinion.  Plainly, Motorola intends for

22

23        [1] Along the same lines, Motorola cannot seriously dispute that Leonard's statement about what "RAND does not require" is a legal interpretation.  Opp. 10.

24        [2] Microsoft's "scope of relief" section erroneously identified ¶¶ 34 and 37 of Holleman's rebuttal report for
25   exclusion (*see* Br. 8), but the earlier argument (*see id.* at 5:14–15) clearly identifies these as paragraphs of his
     opening report, concerning statements that Microsoft filed suit instead of negotiating.  Motorola has responded to
26   this argument (Opp. 3–4), and exclusion of ¶¶ 34 and 37 is within the scope of Microsoft's motion.

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY MOTOROLA'S EXPERTS - 4

Holleman's "statement of fact about Microsoft's lack of negotiation" to be received as a so-called SSO expert's opinion that Microsoft did something wrong by filing this action without negotiating in response to Motorola's demand.  Holleman's statements about the Court's Findings are similar—Motorola claims he only wants to observe that the document did not exist in October 2010, Opp. 5–6, but that testimony undermines the very purpose of the Findings:  At Motorola's urging, the Court recreated a hypothetical negotiation using evidence the parties would have considered in light of Motorola's RAND licensing commitments.  Br. 7.

Motorola's attempt to justify Leonard's "detailing the parties' course of conduct," to repeatedly insinuate that Microsoft acted improperly by filing this suit, rests on intentional misreadings of the Court's rulings.  *See* Opp. 8.  Motorola takes the Court's statement that "the courthouse may be the only place to resolve" a RAND licensing dispute as providing "no indication of when such relief may be necessary or appropriate or how the ability to seek such relief may affect negotiations."  *Id.*  Motorola ignores that the Court did not make this statement in the abstract, but in the context of rejecting Motorola's repeated argument that Microsoft was obligated to negotiate instead of filing *this suit*.  (*See* Dkt. No. 335 at 21.) Motorola makes the nonsensical claim that when the Court held "that Microsoft was not obligated to negotiate in order to preserve its right to a RAND license," what it really meant was Microsoft's failure to negotiate might provide Motorola with a defense.  Opp. 8–9.

At this point in the case, Motorola's arguments rejecting the very existence of this lawsuit are a meritless waste of time.  Motorola knows that it is *not* "relevant to Microsoft's burden" in proving a breach of Motorola's RAND licensing commitments that "Microsoft filed suit before seeing how any negotiation would progress."  Opp. 9.  The Court has squarely held that Microsoft had no obligation to negotiate as a condition of suing for the breach Motorola committed by making its outrageous royalty demands, and that filing this suit was not a "repudiation" that could excuse Motorola's breach, including its subsequent lawsuits seeking

injunctions.  (*See* Dkt. No. 335 at 19–21.)  Motorola's experts should not be heard to tell the jury otherwise.

### C.  Expert Testimony Concluding That Motorola Acted In Good Faith Should Be Excluded.

Holleman's and Leonard's "good faith" testimony is improper.  Motorola claims that "ultimate issue" testimony from experts may be permissible, Opp. 6, 11, but ignores the authority Microsoft provided that this principle *does not extend* to conclusions of good faith and subjective intent.  *See* Br. 4, 7–8, 11.  Motorola then claims that Holleman's opinion is "limited to his view that Motorola's actions were consistent with its RAND obligations," and that he is not offering testimony on the conclusion of good faith.  Opp. 6–7.  But if Holleman opines that Motorola's actions were consistent with its RAND obligations—which include the duty of good faith and fair dealing—then Holleman *is* offering the conclusion that Motorola's conduct comported with that duty.  That testimony is barred by *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004), *SEC v. Life Wealth Mgmt., Inc.*, No. CV 10-4769 RSWL, 2013 WL 1660860, at *7 (C.D. Cal. April 17, 2013), and *Klaczak v. Consol. Med. Transp. Inc.*, No. 96 C 6502, 2005 WL 1564981, at *8–10 (N.D. Ill. May 26, 2005) ("[P]recedent teaches that proffered expert assertions about another's subjective intent or knowledge are not helpful to the jury.")—authority Motorola fails to distinguish or even address.  Leonard's testimony goes further, as Motorola openly concedes:  "Dr. Leonard concluded that Motorola acted in good faith when making its initial offers."  Opp. 11.

Motorola ignores the only pertinent portion of the authority upon which it heavily relies—*RSUI Indem. Co., Inc. v. Vision One, LLC*, No. C08-1386RSL, 2009 WL 5125420 (W.D. Wash. Dec. 18, 2009)—in which the court allowed opinion testimony on whether a party's actions complied with industry standards, but also held that an expert's "legal conclusions are inadmissible, including his conclusion that RSUI acted 'in bad faith.'"  2009

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY MOTOROLA'S EXPERTS - 6

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

WL 5125420, at *1.  Motorola cites no case permitting expert testimony on the ultimate question of good faith; such testimony from both Holleman and Leonard should be excluded.

## II.   HAEDICKE'S TESTIMONY SHOULD BE EXCLUDED

### A.  Haedicke's Orange Book Testimony Should Be Excluded.

Motorola claims Haedicke's Orange Book testimony will be "helpful" to the jury "as it considers the options available to Microsoft" in Germany, and claims he will help the jury evaluate "Microsoft's failure to mitigate its damages."  Opp. 11–12.[3]  But Motorola's opposition never addresses *how* Haedicke's testimony will accomplish this.  Simply telling the jury that certain procedures exist tells them nothing about how Microsoft could have or should have evaluated those options—something Haedicke cannot do, because he does not know the *outcomes* of any of these options.  Br. 13–14.  For the same reasons, Haedicke's testimony is useless in supporting an argument that "Microsoft could have mitigated the damages" incurred from its German relocation, Opp. 13, because Haedicke does not know what the consequences in terms of damages to Microsoft would have been if it left its facility in place and subjected itself to Motorola's whims under the Orange Book.  Br. 13–14.  It is irrelevant that both Haedicke and Bodewig agree that it is "possible" that Microsoft could have avoided an injunction, Opp. 14—the relevant question is "At what cost?", a question Haedicke cannot answer.  Motorola does not point to any other possible source of such evidence.

Motorola identifies one of the four instances in which it instructed Haedicke not to answer questions about his opening report on the grounds of attorney-client privilege, arguing that a disjunction ("Did you ask Motorola's counsel or anyone at Motorola whether Motorola planned to enforce the Mannheim judgment against Microsoft?") makes the question

---

[3] The Court may wonder why Haedicke—described in previous Motorola filings as "Dr. Haedicke" (*see* Dkt. No. 737 at 2)—has become "Judge Haedicke" in response to Microsoft's challenge to his testimony.  As Microsoft's expert on German law, Theo Bodewig, explained at his deposition, *any* professor of law in Germany can become a part-time judge simply by applying to the court—and Bodewig, like Haedicke, has taken advantage of that opportunity.  Declaration of Christopher Wion Ex. 1, Bodewig Dep. 32:21–34:3.

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY MOTOROLA'S EXPERTS - 7

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   objectionable under Fed. R. Civ. P. 26(a)(2)(B).  Opp. 15.  But Motorola's claims that

2   Microsoft's counsel "failed to conduct any follow up to remedy its poorly phrased questions"

3   and "did not rephrase or narrow the question to exclude Judge Haedicke's communications

4   with counsel," Opp. 14–15, are refuted by the deposition transcript.  Immediately following the

5   exchange Motorola cites, Haedicke confirmed it was his opinion that "Microsoft might have

6   avoided an injunction because Motorola would not enforce it," and then, when asked "Did you

7   ask anyone at Motorola if Motorola planned to take those steps?"—a question directed at

8   Haedicke's factual investigation and basis for his opinion—Motorola's counsel objected on the

9   grounds of attorney-client privilege and instructed Haedicke not to answer.  (Dkt. No. 725 Ex.

10  8, Haedicke Dep. 103:6–25.)[4]

11          While it quibbles with Microsoft's phrasing, Opp. 15–16, Motorola cannot dispute that

12  Haedicke's position is that this Court's RAND royalty determination has no relevance to

13  Motorola in Germany.  Haedicke agreed it was the European Commission's preliminary view

14  is that enforcing injunctions on SEPs against willing licensees (those willing to submit to a

15  binding RAND determination) is an abuse of antitrust law.  (Dkt. No. 725 Ex. 8, Haedicke

16  Dep. 91:7–10.)  While Haedicke initially claimed this did not apply to Microsoft because it had

17  not "surrendered to a binding third-party determination" (*id.* at 91:23–92:5), he then conceded

18  that "Microsoft was willing to enter into a license on RAND terms that would be determined"

19  by this Court (*id.* at 94:1–5).  Haedicke was then asked whether Motorola's continued pursuit

20  of an injunction against Microsoft in these circumstances was an abuse of antitrust law—and

21  he initially agreed it was, before backtracking to a position that it was not, because he doubted

22  the RAND royalty determination this Court engaged in "would suffice."  (*Id.* at 94:9–95:17.)

23

24  ───────────────

25      [4] Haedicke's later statement that he had "no information," Opp. 15, concerned a different question—whether
    Motorola would have enforced the injunction in the event that the Court denied Microsoft's motion for a
    preliminary injunction.  (Dkt. No. 725 Ex. 8 at 104:1–7.)

26  MICROSOFT'S REPLY IN SUPPORT OF ITS
    RULE 702 MOTION TO PRECLUDE
    TESTIMONY BY MOTOROLA'S EXPERTS - 8

1    Finally, Motorola's attempt to reconcile Haedicke's testimony with the Court's

2  preliminary injunction ruling and the Ninth Circuit's decision lapses into absurdity.  Those

3  rulings stopped Motorola from forcing Microsoft into the highly-uncertain Orange Book

4  procedure under threat of injunction.  Motorola plans to use Haedicke to argue Microsoft

5  should have subjected itself to that procedure anyway *while simultaneously arguing* that

6  Microsoft failed to mitigate damages because "Microsoft has no explanation for why it did not

7  seek an anti-suit injunction earlier."  (Dkt. No. 752, Defs.' Summary J. Opp. at 23.)  This is an

8  illogical morass, and no juror could make sense of it.  Should Microsoft have tried to mitigate

9  damages by *immediately moving* for an anti-suit injunction in July of 2011?  Or should

10 Microsoft have mitigated by *never moving* for an anti-suit injunction and subjecting itself to

11 the Orange Book instead?  Motorola's nonsensical answer seems to be "both."  In any event,

12 the entire issue has already been disposed of.  Motorola opposed the anti-suit injunction by

13 arguing that Microsoft should be forced to follow the Orange Book (*see* Dkt. No. 248 at 6–8,

14 11–14) and also argued that Microsoft's "delay" in seeking an anti-suit injunction counseled

15 against relief (*see id.* at 17 ("Microsoft waited until after the German proceedings were so far

16 advanced before rushing to this Court with this belated motion.")).  Those arguments were

17 considered and rejected in a decision that is now final, and Haedicke should not be permitted to

18 parade them before the jury now.

19    **B.  Haedicke's German Fee-Shifting Testimony Should Be Excluded.**

20    Motorola's bare assertions that Haedicke's calculations of fees available under a

21 German fee-shifting rule are "relevant," Opp. 18–19, are insufficient to establish the

22 admissibility of his testimony.  Motorola identifies no fact issue at trial to which this testimony

23 could possibly be relevant or helpful to the jury.  Motorola cannot use Haedicke's testimony to

24 contest the amount of German fees appropriate as damages, Opp. 17, because Haedicke never

25 claimed that the fee-shifting statute (which has nothing to do with fees as contract damages)

26
MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY MOTOROLA'S EXPERTS - 9

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

suggests what fees are necessary or reasonable, and could not even say whether Microsoft's fees were typical or unusual.  Br. 16.  Motorola offers no explanation of how the jury is supposed to consider Haedicke's description of Germany's "loser-pays" fee-shifting rule.  Even if Haedicke were qualified to opine on this topic, the calculations he performed (apparently for only the second time in his life) have no relevance to the trial.

## III.    KELLER'S TESTIMONY SHOULD BE EXCLUDED.

### A.  Keller Lacks Appropriate Qualifications To Opine On Microsoft's Damages Claim And Utilizes An Unreliable Methodology.

Keller's proposed testimony should be excluded in its entirety.  While Keller is an experienced commercial trial lawyer, the fees Microsoft seeks to recover as damages were largely incurred in the defense of patent infringement claims filed by Motorola before the ITC in Washington D.C., in Germany, and in federal district court in Wisconsin.  Despite knowing where the underlying cases were filed, Keller did not apprise himself of the fees customarily charged by attorneys located in those jurisdictions.[5]  Moreover, Keller is unfamiliar with litigation relating to standard-essential patents and in the ITC, and took no steps to understand the scope of these cases or the work that Sidley performed.  Accordingly, Keller lacks the appropriate qualifications to render any opinion on the reasonableness of the fees incurred.

Motorola's assertion that Microsoft's reasoning applies only to "three pages" of Keller's report, Opp. 19, is inaccurate.  Microsoft is seeking to exclude Keller both because he is not qualified to express opinions about the reasonableness of fees in litigation with which he has no experience, and because his conclusions are not based on a reliable methodology.  *See* Br. 19–21.  Motorola has not responded to Microsoft's arguments or addressed the deficiencies in Keller's methodology that Microsoft has identified.  These failures alone are sufficient

---

[5] Keller has only rendered an opinion regarding the fees that Microsoft paid to Sidley Austin LLP ("Sidley").  Keller does not challenge the attorneys' fees Microsoft is claiming relating to the German litigation.  (Dkt. No. 726 Ex. 10, Keller Dep. 23:14–25:9.)

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY MOTOROLA'S EXPERTS - 10

1   grounds to grant Microsoft's motion.  For example, it is uncontroverted that Keller did not

2   familiarize himself with the record in the ITC and federal actions and thus did not gain an

3   understanding of the claims asserted against Microsoft and the legal work its lawyers

4   performed.[6]  Keller did not review the complete record, which was necessary to understand the

5   tasks facing Microsoft's counsel.  Keller spoke to no one at Motorola or Google with a role in

6   the ITC proceedings before preparing his report.  Keller also (a) did not properly rely on the

7   ABA Model Rule on attorneys' fees, its Washington counterpart, or other factors routinely

8   found relevant to a determination of reasonable fees, and (b) did not consider the fees charged

9   by attorneys regularly practicing in any of the jurisdictions where the underlying actions were

10  prosecuted.  *See* Br. 19–21.[7]  Rule 702 requires that Keller utilize a reliable methodology.

11  Microsoft established without contradiction that his report simply does not meet this threshold

12  requirement.  While Microsoft could raise these deficiencies on cross-examination, before

13  Microsoft is burdened with doing so Motorola must meet the threshold requirement for

14  allowing the testimony to be given, which it has not done.  *See, e.g., Loeffel Steel Prods., Inc.*

15  *v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 800 (N.D. Ill. 2005) ("[I]n those cases in which the

16  proponent of an expert could not demonstrate the reliability of the methodology employed by

17  the expert, the court [is] required to disallow the testimony.  The opportunity for vigorous cross

18  examination . . . is not a basis for allowing otherwise inadmissible testimony to be admitted.")

19  (citation omitted).

20

21      [6] Keller's lack of knowledge concerning the nature of the work performed is underscored by his argument that
22  portions of Microsoft's fees should be disallowed because lawyers with *antitrust* experience worked on certain
    aspects of the litigation.  *See* Opp. 20 (arguing that some lawyers' area of expertise "did not appear to be
    particularly relevant").  As the bills illustrate, those lawyers analyzed the appropriate RAND royalty and related
23  economic arguments.  Had Keller properly familiarized himself with the issues inherent in RAND licensing
    disputes, he would not have been confused by the participation of antitrust counsel.

24      [7] Motorola's assertion that Keller's testimony will be helpful to the jury who may not be familiar with attorney
25  billing rates in various jurisdictions (Opp. 21) misses the point.  Keller did not undertake any analysis of billing
    rates in the relevant jurisdictions;  if anything, his proposed testimony regarding Seattle billing rates is likely to
    confuse or mislead the jury.

26  MICROSOFT'S REPLY IN SUPPORT OF ITS
    RULE 702 MOTION TO PRECLUDE
    TESTIMONY BY MOTOROLA'S EXPERTS - 11

1

**B.  Keller Should Not Be Permitted To Offer Legal Conclusions.**

2          Rule 702 prohibits Keller from offering legal conclusions.  *See, e.g., Nationwide*

3  *Transport Finance v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008); *Elsayed*

4  *Mukhtar v. California State Univ., Hayward*, 299 F.3d 1053, at 1065 n. 10 (9th Cir. 2002).  But

5  Keller offered opinions on the legal basis for Microsoft's damages claim.  (*See* Dkt. No. 726

6  Ex. 11, Keller Report, ¶ 5(a), ¶ 9; *id.* Ex. 10, Keller Dep. 25:13–22, 178:5–13.)  Belatedly,

7  Motorola has conceded that it will not elicit at trial Keller's ultimate conclusions regarding this

8  legal issue, (Opp. 22), but the proposed testimony still violates Rule 702.

9          Motorola has incorrectly argued that it is "perfectly appropriate" for Keller to testify

10  regarding the general application of the American Rule (without stating whether it ought to

11  apply in this case) and to explain his views on causation.  *Id.* at 22.  But there is no dispute now

12  that Keller cannot offer opinions regarding Microsoft's entitlement to fees or whether

13  Microsoft's damages were caused by Motorola.  Therefore, any testimony about his own

14  personal experience with or understanding of the American Rule and/or causation must also be

15  excluded.  Any such testimony would still constitute Keller's opinion on a legal conclusion or

16  an ultimate issue of law—the recoverability of attorneys' fees.  Keller's testimony about the

17  potential legal basis for the recoverability of attorneys' fees has nothing to do with his opinions

18  about reasonableness of fees and would tend to confuse and mislead the jury.  Because Keller

19  is an attorney, his testimony would be especially prejudicial to Microsoft.  *See, e.g., Pinal*

20  *Creek Group v. Newmont Mining Corp*., 352 F. Supp. 2d 1037, 1042 (D. Ariz. 2005)

21  (counseling against permitting attorneys, sitting as experts, to offer legal opinions to a jury).  It

22  is the Court's distinct and exclusive function to instruct the jury as to the relevant law

23  regarding the potential recoverability of attorney fees through jury instructions or other

24  appropriate means.  *See Nationwide Transport Finance*, 523 F.3d at 1058 (citation omitted);

25  *Mukhtar*, 299 F.3d at 1065 n. 10.

26

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY MOTOROLA'S EXPERTS - 12

DATED this 17th day of July, 2013.

CALFO HARRIGAN LEYH & EAKES LLP


By ____s/Arthur W. Harrigan, Jr._____
          Arthur W. Harrigan, Jr., WSBA #1751

By ____s/Christopher Wion_____
          Christopher Wion, WSBA #33207

By ____s/Shane P. Cramer_____
          Shane P. Cramer, WSBA #35099
          999 Third Avenue, Suite 4400
          Seattle, WA  98104
          Phone:  206-623-1700
          arthurh@calfoharrigan.com
          chrisw@calfoharrigan.com
          shanec@calfoharrigan.com


By ____s/T. Andrew Culbert_____
          T. Andrew Culbert

By ____s/David E. Killough_____
          David E. Killough

          MICROSOFT CORPORATION
          1 Microsoft Way
          Redmond, WA  98052
          Phone:  425-882-8080
          Fax:  425-869-1327

          David T. Pritikin
          Richard A. Cederoth
          Constantine L. Trela, Jr.
          William H. Baumgartner, Jr.
          Ellen S. Robbins
          Douglas I. Lewis
          David C. Giardina
          John W. McBride
          Nathaniel C. Love

          SIDLEY AUSTIN LLP
          One South Dearborn
          Chicago, IL  60603

Phone:  312-853-7000
Fax:  312-853-7036

Carter G. Phillips
Brian R. Nester

SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC  20005
Telephone:  202-736-8000
Fax:  202-736-8711

Counsel for Microsoft Corp.

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY MOTOROLA'S EXPERTS - 14

# CERTIFICATE OF SERVICE

I, Florine Fujita, swear under penalty of perjury under the laws of the State of Washington to the following:

1.    I am over the age of 21 and not a party to this action.

2.    On the 17th day of July, 2013, I caused the preceding document to be served on counsel of record in the following manner:

**Attorneys for Motorola Solutions, Inc., and Motorola Mobility, Inc.:**

Ralph Palumbo, WSBA #04751
Philip S. McCune, WSBA #21081       _____ Messenger
Lynn M. Engel, WSBA #21934       _____ US Mail
Summit Law Group       _____ Facsimile
315 Fifth Ave. South, Suite 1000       __X__ ECF
Seattle, WA  98104-2682
Telephone:  206-676-7000
Email:  Summit1823@summitlaw.com


Steven Pepe (*pro hac vice*)       _____ Messenger
Jesse J. Jenner (*pro hac vice*)       _____ US Mail
Ropes & Gray LLP       _____ Facsimile
1211 Avenue of the Americas       __X__ ECF
New York, NY  10036-8704
Telephone:  (212) 596-9046
Email:  steven.pepe@ropesgray.com
Email:  jesse.jenner@ropesgray.com


Norman H. Beamer (*pro hac vice*)       _____ Messenger
Ropes & Gray LLP       _____ US Mail
1900 University Avenue, 6th Floor       _____ Facsimile
East Palo Alto, CA  94303-2284       __X__ ECF
Telephone:  (650) 617-4030
Email:  norman.beamer@ropesgray.com

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY MOTOROLA'S EXPERTS - 15

Paul M. Schoenhard (*pro hac vice*)         _____ Messenger
Ropes & Gray LLP                            _____ US Mail
One Metro Center                            _____ Facsimile
700 12th Street NW, Suite 900                  X     ECF
Washington, DC  20005-3948
Telephone:  (202) 508-4693
Email: Paul.schoenhard@ropesgray.com


Andrea Pallios Roberts (*pro hac vice*)     _____ Messenger
Brian C. Cannon (*pro hac vice*)            _____ US Mail
Quinn Emanuel Urquhart & Sullivan, LLP      _____ Facsimile
555 Twin Dolphin Drive, 5th Floor              X     ECF
Redwood Shores, CA 94065
Telephone:  (650) 801-5000
Email: andreaproberts@quinnemanuel.com
Email: briancannon@quinnemanuel.com


Kathleen M. Sullivan (*pro hac vice*)       _____ Messenger
David Elihu (*pro hac vice*)                _____ US Mail
Quinn Emanuel Urquhart & Sullivan, LLP      _____ Facsimile
51 Madison Ave., 22nd Floor                    X     ECF
New York, NY 10010
Telephone:  (212) 849-7000
Email: kathleensullivan@quinnemanuel.com


William Price (*pro hac vice*)              _____ Messenger
Quinn Emanuel Urquhart & Sullivan, LLP      _____ US Mail
865 S. Figuera St., 10th Floor              _____ Facsimile
Los Angeles, CA 90017                          X     ECF
Telephone:  (212) 443-3000
Email: williamprice@quinnemanuel.com
MicrosoftvMotoBreachofRANDCase@quinnemanuel.com

        DATED this 17th day of July, 2013.



                                s/  Florine Fujita
                                FLORINE FUJITA

MICROSOFT'S REPLY IN SUPPORT OF ITS
RULE 702 MOTION TO PRECLUDE
TESTIMONY BY MOTOROLA'S EXPERTS - 16