# EXHIBIT 3

1

```
                    UNITED STATES DISTRICT COURT

                WESTERN DISTRICT OF WASHINGTON AT SEATTLE

    _____

    MICROSOFT CORPORATION,      )
                                )
                   Plaintiff,   ) 10-01823-JLR
                                )
    v.                          ) SEATTLE, WASHINGTON
                                )
    MOTOROLA INC., et al,       ) November 19, 2012
                                )
                   Defendant.   ) TRIAL DAY 1
                                )
    _____

                    VERBATIM REPORT OF PROCEEDINGS
                 BEFORE THE HONORABLE JAMES L. ROBART
                      UNITED STATES DISTRICT JUDGE
    _____


    APPEARANCES:


     For the Plaintiff:      Arthur Harrigan, Christopher
                             Wion, David Pritikin and Andy
                             Culbert



     For the Defendants:     Jesse Jenner, Ralph Palumbo, Mark
                             Rowland, Philip McCune and Neill
                             Taylor
```

Debbie Zurn - RPR, CRR - Federal Court Reporter - 700 Stewart Street - Suite 17205 - Seattle WA 98101

1  Q    I would like to turn to the facts of this case.  Assuming
2  that there are at least 1,000 essential patents relevant to
3  each of the 802.11 and the H.264 standards, and at least 50
4  different patentholders, what is your opinion about whether
5  the ex ante approach is feasible in this case?
6  A    That strict ex ante approach would be completely
7  infeasible in this case.
8  Q    Now, turning to the opinions you expressed regarding the
9  views testified to by Microsoft's economist, Professor
10 Murphy, Professor Simcoe and Dr. Lynde, first, is the concept
11 of hold-up addressed in the economic literature?
12 A    It is indeed.
13 Q    What is the relationship between the RAND commitment and
14 the potential for hold-up?
15 A    Well, in short form, the RAND commitment and the whole
16 apparatus exists to deal with hold-up.
17 Q    How are RAND licenses typically established in practice?
18 A    My understanding is they are typically -- not universally,
19 obviously, but typically established through bilateral
20 negotiation ex post, that is to say after a standard has been
21 established.
22 Q    Assuming that SEP holders and standard implementers are
23 sophisticated parties, what is your opinion regarding
24 Microsoft's argument that all licenses negotiated ex post are
25 likely not to be RAND because the royalty includes hold-up