The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION, a Washington corporation,

Plaintiff,

v.

MOTOROLA, INC., and MOTOROLA MOBILITY LLC, and GENERAL INSTRUMENT CORPORATION,

Defendants.

CASE NO. C10-1823-JLR

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**NOTED ON MOTION CALENDAR:**
**Wednesday, July 31, 2013 at 10:00 a.m.**

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........ 1

I. Preliminary Statement ........ 1

II. Argument ........ 1

A. Summary Judgment Is Warranted on Three Of Microsoft's Breach of Contract Theories ........ 1

1. The Injunctive-Relief Breach Theory ........ 1

2. The Marvell And MPEG LA Breach Theories ........ 6

B. Summary Judgment is Warranted on Microsoft's Damages Claims. ........ 8

1. The *Noerr-Pennington* Doctrine Bars The Specific Damages Microsoft Seeks To Recover Here ........ 8

2. No Decision Supports Recovery of Attorney Fees As Damages For A Breach Of Contract Claim In Circumstances Like Those Here ........ 9

CONCLUSION ........ 12

CERTIFICATE OF SERVICE ........ 15

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## TABLE OF AUTHORITIES

**Page**

**Cases**

*All Star Gas, Inc., of Washington v. Bechard*, 998 P.2d 367 (Wash. 1997)....................11

*Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061 (W.D. Wis. 2012)....................8

*Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178-bbc, 2012 WL 5416941 (W.D. Wis. Oct. 29, 2012)....................2

*Badgett v. Sec. State Bank*, 16 Wn. 2d 563 (1991)....................2

*Bores v. Domino's Pizza LLC*, No. 05-2498, 2008 WL 4755834 (D. Minn. Oct. 27, 2008)....................8

*Cecil v. Dominy*, 418 P.2d 233 (Wash. 1966)....................11

*In the Matter of Certain Electronic Devices*, No. 337-TA-794 (ITC 2013)....................3

*City of Seattle v. McCready*, 931 P.2d 156 (Wash. 1997)....................10

*Forbes v. Am. Bldg. Maint. Co. W.*, 198 P.3d 1042 (Wash. App. 2009)....................12

*Ino Ino, Inc. v. City of Bellevue*, 937 P.2d 154 (Wash. 1997)....................11

*Metro. Edison Co. v. NLRB*, 460 U.S. 693 (1983)....................2

*Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872 (9th Cir. 2012)....................3, 8

*Muniz v. Microsoft Corp.*, No. C10-0717-JCC, 2010 WL 4482107 (W.D. Wash. Oct. 29, 2010)....................12

*Paramount Pictures Corp. v. N. Pac. Int'l Television, Inc.*, No. C04-2068JLR, 2005 WL 1111209 (W.D. Wash. May 9, 2005)....................1, 9

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993)....................9

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*Realtek Semiconductor Corp. v. LSI Corp.*,
No. C-12-03451-RMW, 2013 WL 2181717 (N.D. Cal. May 20, 2013) .....................................2

*Ringler v. Bishop White Marshall & Weibel, PS*,
C13-5020 BHS, 2013 WL 1816265 (W.D. Wash. Apr. 29, 2013)……………………………..2

*Stephen Haskell Law Offices, PLLC v. Westport Ins. Corp.*,
No. CV-10-437-JLQ, 2011 WL 1303376 (E.D. Wash. Apr. 5, 2011)..................................7, 10

*W. Community Bank v. Helmer*,
740 P.2d 359 (Wash. App. 1987).............................................................................................11

*Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co.*,
313 F.3d 385 (7th Cir. 2002) ...................................................................................................10

**Other Authorities**

Restatement (Second) of Contracts, § 347.................................................................................10

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## I. PRELIMINARY STATEMENT

Microsoft's opposition to Motorola's motion for partial summary judgment (Dkt. 740) provides a surprising dearth of case law supporting Microsoft's positions and fails to present "significant and probative evidence to support its claim[s]." *Paramount Pictures Corp. v. N. Pac. Int'l Television, Inc.*, No. C04-2068JLR, 2005 WL 1111209, at *1 (W.D. Wash. May 9, 2005) (Robart, J.). As to its breach claims, Microsoft points to no decision banning a standard-essential-patent ("SEP") holder from seeking injunctive relief, no facts demonstrating that Motorola failed to negotiate with Marvell when Marvell requested a license, and no link between any alleged breach of contract by Motorola and the MPEG LA obligations of non-party Google, whom Microsoft has failed to join as a necessary party. As to its damages claims, Microsoft argues that a party may contract away *Noerr-Pennington* protection but fails to show that Motorola has done so, and cites no cases allowing attorney fees as consequential damages under Washington law absent exceptions inapplicable here. This Court should grant Motorola's motion.

## II. ARGUMENT

### A. Summary Judgment Is Warranted on Three Of Microsoft's Breach of Contract Theories

#### 1. The Injunctive-Relief Breach Theory

Microsoft fails to overcome Motorola's argument that it is entitled to summary judgment that seeking injunctive relief on its SEPs cannot breach any contract with the ITU or IEEE. *First*, Microsoft fails to adduce any contractual language to support its assertion (Dkt. 740, 3) that Motorola's commitment not to seek injunctions against implementers is "within the four corners of the RAND licensing contracts, independent of the duty of good faith and fair dealing." Nor could it, for neither Motorola's declarations to the ITU or IEEE nor any similar language from ITU and IEEE policies contain any language prohibiting Motorola or any other SEP holder from seeking an injunction or exclusion order. (*See* Dkt. 721, Exs. Q-T.) Microsoft is similarly mistaken to assert (Dkt. 740, 3) that Motorola's declarations to the ITU and IEEE "surrendered" its statutory right to seek an injunction on its SEPs. While Motorola made a commitment to

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

license its SEPs on RAND terms, it did not give up all rights to seek injunctions. Contractual waivers of rights must be expressly stated. *See, e.g.*, *Metro. Edison Co. v. NLRB*, 460 U.S. 693, 707-709 (1983); *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178-bbc, 2012 WL 5416941, at *15 (W.D. Wis. Oct. 29, 2012) ("[A]ny contract purportedly depriving a patent owner of that right should clearly do so."). Microsoft cites no case to the contrary, and there is no contractual waiver here, express or otherwise. Microsoft also errs in arguing in the alternative (Dkt. 740, 1-3) that an implied duty of good faith and fair dealing may bar a SEP holder from seeking injunctive relief even in the absence of any specific contract term. The implied duty of good faith and fair dealing cannot be "free floating" and must be tied to express contract terms; it cannot be created out of thin air. *Badgett v. Sec. State Bank*, 16 Wn. 2d 563, 569 (1991); *Ringler v. Bishop White Marshall & Weibel, PS*, C13-5020BHS, 2013 WL 1816265, at *2 (W.D. Wash. Apr. 29, 2013).

*Second*, Microsoft cites no final decision by any court or relevant administrative body that makes SEP holders categorically ineligible for injunctive relief. To the contrary, every decision to date on the issue has held that injunctions *may* be appropriate for SEP holders in certain situations, and Microsoft fails in its efforts (Dkt. 740, 4-7) to distinguish those decisions. Judge Crabb's decision in *Apple v. Motorola* analyzed the terms of RAND declarations to the IEEE and ETSI that are materially identical to those here and properly found that they do not bar SEP holders from seeking injunctions. The fact that she did not have a full hearing about the purpose of SSOs does not devalue her interpretation of the plain terms of the relevant documents and policies. Microsoft similarly fails to explain away Judge Posner's statement in *Motorola v. Apple* that SEP holders might be entitled to injunctions against unwilling licensees, or the recognition by the DOJ and USPTO that exclusion orders may be an appropriate remedy in some circumstances. (*See* Dkt. 720, 11.) And *Realtek*, on which Microsoft relies (Dkt. 740 at 5-6), acknowledges that an injunction may be warranted when "an accused infringer of a[n SEP] outright refuses to accept a RAND license." *Realtek Semiconductor Corp. v. LSI Corp.*, No. C-12-03451-RMW, 2013 WL 2181717, at *7 (N.D. Cal. May 20, 2013).

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

The ITC's recent exclusion order against certain Apple iPhones underscores why Microsoft's proposed rule foreclosing all injunctive or exclusionary relief to SEP holders is untenable: namely that, without injunctive or exclusionary relief, SEP holders will be subject to the problem of reverse hold-up. *See In the Matter of Certain Electronic Devices*, No. 337-TA-794 (ITC 2013) (public version) (Dkt. 738). The decision explains that, "[i]n reverse patent hold-up, an implementer utilizes declared-essential technology without compensation to the patent owner under the guise that the patent owner's offers to license were not fair or reasonable. The patent owner is therefore forced to defend its rights through expensive litigation. In the meantime, the patent owner is deprived of the exclusionary remedy that should normally flow when a party refuses to pay for the use of a patented invention." *Id*. at 63.

Unable to dispute this unbroken line of authority, Microsoft argues that it is not an unwilling licensee. (Dkt. 740, 9.) But Microsoft first indicated it was willing to accept a RAND license only *after* Motorola filed its actions for injunctive relief. Microsoft never stated as much in its original or amended complaints (Dkt. 1, 53; *see also* Dkt. 318 at 16 fn. 12), as this Court noted in its May 2012 order (Dkt. 318 at 16 n.12). Moreover, Microsoft disputes in this case that Motorola's patents are essential (Dkt. 1, ¶ 7), further negating its argument that it is a willing licensee. This Court should not allow Microsoft to argue at the outset that Motorola may not seek an injunction because SEPs are involved and then argue that SEPs are not actually involved.

None of the cases cited by Microsoft supports its position that seeking an injunction is categorically barred so as to constitute a breach of contract. Contrary to Microsoft's contention (Dkt. 740, 4), the Ninth Circuit did *not* "recognize[] that Motorola's RAND licensing commitments were not consistent with pursuing injunctions," but rather found only that agreeing to license patents on RAND terms is "at least arguably" an agreement not to seek an injunction. *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 884 (9th Cir. 2012). This is far from a clear statement barring SEP holders from ever seeking injunctive relief. The same is true for this Court's order denying injunctive relief, which states that it "is based on the specific circumstances

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

and rulings that have developed in this litigation. If, in the future . . . circumstances change in a manner to warrant injunctive relief, Motorola *may at that time seek such relief*." (Dkt. 607 at 15 (emphasis added).) While Microsoft relies (Dkt. 740 at 7-8) upon FTC and European Commission statements, neither Motorola nor Google admitted to any wrongdoing in the January 2013 settlement agreement with the FTC, and the statements of the European Commission are "preliminary" and do not constitute a binding decision. (*See* Dkt. 731 at 3-4.)

*Third*, Microsoft is unable to explain its own internally inconsistent positions regarding the availability of injunctive or exclusionary relief to SEP holders. Microsoft stated in a letter to the FTC in June 2011 that RAND commitments "*should not preclude a patent holder from seeking preliminary injunctive relief* or commencing an action in the International Trade Commission." (Dkt. 721-5, Ex. W at 13 (emphasis added).) Now Microsoft argues that Motorola was precluded in October 2010 from doing exactly what Microsoft itself argued was permissible in June 2011. Microsoft fails to explain away this contradiction by responding (Dkt. 740, 10, n.4) that "Microsoft's June 2011 state of mind does not control" whether Motorola was barred from seeking injunctions in October 2010.

Nor does Microsoft explain how Motorola could have violated its duty of good faith and fair dealing in seeking injunctions when the scope of RAND commitments remained in dispute at the time Motorola filed for injunctive relief (and does so to this day). Microsoft itself filed an amicus brief in support of Apple against Motorola, arguing that no categorical rule against injunctions exists but that the court was correct in denying an injunction in that case. Br. of Microsoft Corp. as Amicus Curiae in Support of Apple Inc., Dkt. 143, at 23-25, *Apple Inc. v. Motorola, Inc.*, Nos. 2012-1548, 2012-1549 (Fed. Cir. Mar. 20, 2013). With respect to whether injunctions are ever available for SEPs, Microsoft referred to that question as "interesting," but never identified any ban, thus undercutting its argument in this case that there is a contractual

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

prohibition against injunctions. *Id.* at 24. If such a clear contractual prohibition existed, Microsoft would have identified it.[1]

*Fourth*, Microsoft fails to point to valid evidence that Motorola's request for injunctive relief proximately caused the attorney-fee damages Microsoft seeks to recover. Microsoft does not explain how to segregate the attorney fees that it incurred defending against claims for injunctive relief from those it would have incurred even if Motorola had sought only monetary damages. Microsoft responds by saying that most of the work was done on the ITC action, where only injunctive relief is available, but fails to identify which attorney fees were incurred working on the ITC matter. Nor does Microsoft show that it can distinguish the amount of attorney-fee damages incurred from Motorola's claims on its IEEE 802.11 SEPs from those incurred from Motorola's claims on its ITU H.264 SEPs. Microsoft now claims (Dkt. 740,12) *for the first time* that its witness David Killough "is fully capable of classifying individual time entries as being associated with Motorola's assertion of the 802.11 or H.264 patents in the ITC." But Microsoft did not offer this evidence in its interrogatory responses, documents, or expert testimony, and its newly minted declaration from Mr. Killough purporting to be able to differentiate the time entries by breach claim should not be accepted, for it is incomplete and an inappropriate end-run around submitting an expert report.[2]

---

[1] The brief indicates that one of its authors is David Killough, an attorney for Microsoft who Microsoft proposes to be a witness at this trial.

[2] Microsoft initially identified Mr. Killough as an expert witness on May 29, 2013, but submitted no expert report from him. (Ex. A.) Microsoft then withdrew Mr. Killough as an expert witness on June 12, 2013, two days before he was scheduled to be deposed. (Ex. B.) In withdrawing Mr. Killough, Microsoft confirmed that he would not be offering any expert testimony in this case. (Ex. C.) Yet Microsoft is necessarily attempting to offer expert testimony through Mr. Killough, as Mr. Killough's declaration cannot be based on personal knowledge. He admitted at his deposition—where he was a 30(b)(6) designee regarding damages calculations—that he lacks personal knowledge regarding how each time entry was allocated because Ellen Robbins actually performed all of the allocations. (Ex. D, 121:14-16.) When asked which Sidley team members worked primarily on Motorola's 802.11 SEPs, Mr. Killough *could not identify any*, and when asked the same question regarding the H.264 SEPs, he could identify only one. (*Id.*, 47:15-48:1. ) Although Mr. Killough claims now that he is "generally aware that specific attorneys had primary responsibility for issues relating to Motorola's 802.11 patents and others to Motorola's H.264 patents" (Dkt. 742, ¶ 6), such a statement contradicts his earlier sworn deposition testimony and should be disregarded.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

For all these reasons, summary judgment should be granted to Motorola on Microsoft's injunctive-relief theory of breach.[3]

**2. The Marvell And MPEG LA Breach Theories**

In answer to Motorola's argument that this Court should also grant summary judgment on Microsoft's Marvell and MPEG LA breach theories, Microsoft relies (Dkt. 740, 21) on the Court's decision not to preclude these theories at the discovery stage despite their late disclosure. That reliance is unavailing. To recap: On May 1, 2013, Motorola requested that the Court limit Microsoft's damages theories to those disclosed prior to the supplemental interrogatory responses Microsoft served on April 3, 2013, which included vague arguments regarding Motorola's conduct vis-à-vis Marvell and MPEG LA. (Dkt. 682.) During the Court's telephonic conference, Microsoft's counsel conceded that there was "no separate damages claim" associated with either of these theories. (Dkt. 721-6, Ex. BB, 8:13-17.) While the Court acknowledged that these theories were newly raised (*id.* at 6:2-14), it allowed the arguments to remain, as previously discussed during the RAND rate bench trial (*id.* at 12:14-21). Accordingly, these allegations survived a motion to preclude during a pretrial *discovery* dispute, *not* a summary judgment determination. Now that discovery is closed, Microsoft cannot show that these theories of breach should be presented to a jury without an individual showing as to each of duty, breach, or damages.

With respect to the Marvell theory, the undisputed facts show that Marvell contacted Motorola at Microsoft's request. And far from "rebuff[ing]" Marvell "with an intentionally discriminatory and blatantly unreasonable offer" (Dkt. 740 at 21), Motorola told Marvell that it did not need a license (Dkt. 720 at 15). Nevertheless, Marvell has been silent for over eight months. (*Id.*) Marvell's decision to constructively abandon negotiations and half-heartedly

[3] Nor does Microsoft offer evidence sufficient to survive summary judgment that,even if injunctive relief is sometimes permitted, Motorola's claims for injunctive relief were not in good faith in this case. To the contrary, the undisputed evidence shows that Motorola resorted to seeking injunctive relief only *after* Microsoft refused to counteroffer or negotiate and only *after* Microsoft sued Motorola in multiple forums.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

pursue a license it did not need only at Microsoft's request cannot be construed as Motorola's failure to uphold its RAND obligations. Microsoft's attempt to manufacture a dispute between Marvell and Motorola has failed and Motorola's claim for summary judgment should be granted.

With respect to MPEG LA, Microsoft cannot escape the fact that this is a Google license, and Google is not a party to this action. (*See* Dkt. 720 at 15.) Motorola is not a party to the agreement. (*See* Dkt. 658 at 1.) Nevertheless, Microsoft asks this Court to rule upon the scope of Google's license. Microsoft's latest argument, that the August 2012 MPEG LA-consistent licensing offer was inadequate because "*Google* insisted on a right to pursue past damages" (Dkt. 740 at 24) (emphasis added)), underscores this important distinction. The court has no jurisdiction to rule on Google's contractual obligations. Indeed, Microsoft chose strategically not to join Google in order to preserve the trial date for the first phase. (*See* Dkt. 721-6, Ex. CC at 33:22-34:5.) Having made that choice, Microsoft cannot now seek a ruling on Google's obligations under the MPEG LA license.

Finally, with regard to damages, Microsoft suggests (Dkt. 740, 23), without providing any legal support, that the failure of its expert to apportion damages specific to each of these breach theories is not an issue. This argument ignores that damages are an essential element of Microsoft's breach-of-contract claims. Motorola's conduct with respect to MPEG LA (H.264) and Marvell (802.11) does not relate to the same SEPs, and yet Microsoft's purported expert did not calculate the alleged damages associated with Motorola's claimed breach of its obligations to each respectively. (*See generally* Dkt. 734, Ex. A; Dkt. 721-6, Ex. Z at 104:8-16, 179:25-180:5.) If, as Microsoft alleges, Motorola breached its purported contracts with respect to its non-existent MPEG LA obligations and its fully discharged Marvell obligations, then each constitutes a separate breach and Microsoft's inability to identify the damages resulting from each breach negates its ability to establish a necessary element. *See Stephen Haskell Law Offices, PLLC v. Westport Ins. Corp.*, No. CV-10-437-JLQ, 2011 WL 1303376, at *6 (E.D. Wash. Apr. 5, 2011). Summary judgment is thus warranted on both theories.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

**B. Summary Judgment is Warranted on Microsoft's Damages Claims.**

Microsoft cannot deny that the damages it seeks—attorney fees and the costs of moving its EMEA facility—all stem from Motorola's enforcement of its patents. Because the *Noerr-Pennington* doctrine protects Motorola's petitioning rights, and Motorola has never given up that protection, the doctrine bars Microsoft from recovering such damages. If this Court rules the *Noerr-Pennington* doctrine inapplicable, this Court still should grant Motorola summary judgment as to the attorney-fee damages because Microsoft points to no exception permitting its recovery of such fees as damages for breach of contract.

**1. The *Noerr-Pennington* Doctrine Bars The Specific Damages Microsoft Seeks To Recover Here**

Microsoft's argument that the *Noerr-Pennington* doctrine does not bar the breach of contract damages Microsoft seeks here suffers from a fundamental flaw. Although courts have held that parties "may waive or limit their petitioning rights by contract" (Dkt. 740 at 14), Microsoft can point to no provision of the purported contracts at issue here in which Motorola waived such rights. As the Ninth Circuit has held in this very case with regard to Motorola's German patents, "Motorola is free to continue litigating its German patent claims against Microsoft as to damages or other non-injunctive remedies to which it may be entitled." *Microsoft v. Motorola*, 696 F.3d at 889. This principle applies equally to the non-German patents at issue here. Thus, unlike the cases upon which Microsoft relies, Motorola has not "'bargained away any protection *Noerr-Pennington* may have offered.'" (Dkt. 740 at 14 (quoting *Bores v. Domino's Pizza LLC*, No. 05-2498, 2008 WL 4755834 at *4 (D. Minn. Oct. 27, 2008))).

Although Microsoft correctly points out that Judge Crabb did not dismiss Motorola's contract claim, Apple sought through an antitrust claim the same type of damages that Microsoft seeks here—namely, attorney fees for patent enforcement litigation—and Judge Crabb properly found such damages barred by the *Noerr-Pennington* doctrine. *Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061, 1076 (W.D. Wis. 2012) ("[T]he only injury Apple suffered as a result of Motorola's alleged antitrust violation was the attorney fees and costs that it has incurred

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

responding to the patent litigation initiated by Motorola. Apple's damages expert identifies no other damages except litigation fees and expenses. Thus, Apple's antitrust claim is premised on Motorola's attempt to enforce its patents. Because Motorola's enforcement of its patents is privileged conduct protected by the First Amendment, the *Noerr–Pennington* doctrine applies."). Motorola has not suggested that *Noerr-Pennington* bars the contract claim in its entirety, but merely that the doctrine cannot be reconciled with the damages Microsoft claims for defending against patent infringement suits. These are the very same sort of damages to which Judge Crabb found the *Noerr-Pennington* doctrine applied.[4]

Although Microsoft argues (Dkt. 740 at 15) that "Motorola fails to show that no material dispute exists as to whether its conduct could be subject to the 'sham litigation' exception," "[a]s the party asserting the sham exception, [Microsoft] has the burden of showing that it should apply." *Id.* at 1077. Microsoft has pointed to no "significant and probative evidence to support its claim or defense," *Paramount Pictures Corp.*, 2005 WL 1111209, at *1, that any one of the patent claims Motorola asserts is objectively baseless and certainly cannot show that *each* claim is objectively baseless. Such a showing would require that "no reasonable litigant could realistically expect success on the merits," *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993). No such showing is possible here, where Motorola has succeeded on several issues. Accordingly, this court should grant summary judgment and find Microsoft's damages claim barred by the *Noerr-Pennington* doctrine.[5]

**2. No Decision Supports Recovery of Attorney Fees As Damages For A Breach Of Contract Claim In Circumstances Like Those Here**

Although Microsoft attempts to paint its claim for attorney fees as one for consequential damages, Microsoft cites no case permitting the recovery of attorney fees as consequential

[4] Microsoft's footnote discussing abuse of process (Dkt. 740 at 15 n.5) is entirely irrelevant here as Microsoft has not brought such a claim.

[5] Microsoft's citation to a brief in a dispute involving Innovatio (Dkt. 741-9) provides no support for Microsoft's argument here because, in that case, Motorola Solutions argued that Innovatio's conduct was objectively baseless because the end-users that were targeted were using products that were *already licensed.* (Dkt. 741-9, 15.)

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

damages absent some exception to the American rule. As Motorola explained (Dkt. 720, 22), it is well-established that "Washington courts traditionally follow the American rule in not awarding attorney fees as costs absent a contract, statute, or recognized equitable exception." *City of Seattle v. McCready*, 131 Wn. 2d 266, 273-74 (1997).[6] In fact, "a more accurate statement of Washington's American rule is attorney fees are not available as costs *or damages* absent a contract, statute, or recognized ground in equity." *Id.* at 275 (emphasis added). Microsoft cites no contractual or statutory basis for attorney fees and fails to meet the requirements for any equitable grounds on which it seeks to rely.

Contrary to Microsoft's suggestion, "consequential damages" is not a recognized exception to this well-established doctrine of Washington law. Microsoft selectively quotes (Dkt. 740, 17) from *McCready*—in which the court did not award any attorney fees—by omitting the limits imposed at the beginning of the quoted sentence: "*The exceptions recognizing awards of attorney fees as damages* are based on a determination a wrongful act may leave another party with no choice but to litigate." *McCready*, 131 Wn. 2d at 278 (emphasis added). In fact, Washington law directly contradicts Microsoft's suggestion that attorney fees may be sought as consequential damages for breach of contract absent some exception. *Stephen Haskell Law Offices, PLLC*, 2011 WL 1303376, at *6 ("This is a breach of contract action, and [plaintiff] would not be entitled to attorney's fees under the 'American rule' absent some statutory, contractual, or other specified basis."). As the Washington Supreme Court has explicitly recognized, it is only through some exception that Microsoft may recover attorney fees as damages.[7] Thus, for instance, the equitable

[6] Although Microsoft relies on the Restatement (Second) of Contracts, § 347 to define its damages as "loss, including incidental or consequential loss, caused by breach," (at 16) as Judge Posner explained "it seems apparent that 'loss' does not include attorneys' fees incurred in the litigation of a suit for breach of contract." *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co.*, 313 F.3d 385, 388 (7th Cir. 2002) (citing Restatement (Second) of Contracts § 347 (9181)).

[7] Microsoft merely highlights the baseless nature of its claim for attorney fees as damages in arguing that the American rule provides that "attorneys' fees incurred in an action are generally not awarded as costs or damages to a prevailing party *in that same action* in the absence of a contract, statute or equitable exception." (Dkt. 740 at 17.) Such an argument ignores that it follows, *a fortiori*, that fees are not recoverable in a *separate* action and *McCready* makes clear that the American rule applies to claims for attorney fees as damages as well as costs.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

indemnity exception specifically permits attorneys fees as consequential damages, *W. Cmty. Bank v. Helmer*, 48 Wn. App. 694, 699-700 (1987), and thus it is the exception—and not the rule—that allows recovery of attorney fees as consequential damages. As Motorola explained previously (Dkt. 720, 23), this exception does not apply here because the litigation for which Microsoft seeks attorney fees is not with a third party.

Motorola also previously explained (Dkt. 720, 23-24) that the exception to the rule for recovery of fees for dissolving an injunction does not apply here. Even if Microsoft were correct that it could seek fees on its motion for an anti-suit injunction against the German court's injunction, one of the cases Microsoft cites would disallow any of the appellate fees because this court granted the anti-suit injunction. *Ino Ino, Inc. v. City of Bellevue*, 132 Wn. 2d 103, 144 (1997) ("[I]n prior cases we have allowed recovery for attorneys' fees incurred at the appellate level only when appeal was necessary to dissolve a currently effective temporary restraining order."). Further, Microsoft's citation (Dkt. 740, 18) to the stated purpose for permitting a fee award ("to deter 'seeking relief prior to a trial on the merits'"), does not apply to the German proceeding, as the German court issued its injunction after a full trial on the merits. And despite Microsoft's attempt to escape from the prerequisite that the party must seek to dissolve the injunction, the cases Microsoft cites only serve to confirm that "such fees, in order to be allowable as damages, must be those connected with the motion or other similar proceeding for the dissolution of the injunction and not those covering the defense of the action on its merits." *Cecil v. Dominy*, 69 Wn. 2d 289, 292 (1966).[8] Microsoft also is entirely incorrect in stating (Dkt. 740,19) that, "if Motorola had sought a preliminary injunction in the consolidated 343 patent case, . . . this equitable exception would allow Microsoft to recover its fees in the 343 patent case." Not only are these not the facts present here, but Washington law provides an extremely narrow exception that specifically does not permit recovery of any fees in cases involving injunction

8 *All Star Gas, Inc., of Washington v. Bechard*, 100 Wn. App. 732 (2000) provides no support for Microsoft's argument that it may recover the costs of the anti-suit injunction as a separately filed action challenging the German injunction, as there the court reversed the award of attorney fees. *Id.* at 742.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*except* for fees incurred in attempting to dissolve a wrongfully issued injunction. Microsoft's attempt to fit into this exception fails as well.

Nor can Microsoft rely on any bad-faith equitable exception, as Microsoft itself concedes that the bad-faith exception turns on conduct that "is unrelated to the merits of the case." (Dkt. 740 at 20 (quoting *Forbes v. Am. Bldg. Maint. Co. W.*, 198 P.3d 1042, 1057 (Wash. App. 2009))). Microsoft here seeks attorney fees as *damages*, which is not only *related* to the merits of the case, but an essential element of its breach of contract claim. *Muniz v. Microsoft Corp.*, No. C10–0717–JCC, 2010 WL 4482107, at *3 (W.D. Wash. Oct. 29, 2010) ("A breach-of-contract claim under Washington law requires a showing of (1) a contract that imposed a duty, (2) breach of that duty, and (3) an economic loss as a result of that duty.") (quotation omitted). As Microsoft's own case law demonstrates, the equitable exception for bad faith allows recovery of attorney fees as costs, not damages, and thus Microsoft cannot shoehorn its damages into this exception.

Finally, Microsoft argues that it may recover attorney fees as damages because such relief fits within an equitable exception for breaches of covenants not to sue. (Dkt. 740, 19-20.) But no such covenant exists here and, in fact, as discussed *supra*, Motorola still retains its rights to bring lawsuits seeking infringement. Holding that a RAND commitment constitutes a covenant not to sue would lead to the absurd result that no infringer of a SEP could ever be sued and a SEP holder could never enforce its right to receive a RAND rate.

## III. CONCLUSION

For the foregoing reasons, Motorola's motion for summary judgment should be granted.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

DATED this 17th day of July, 2013.

Respectfully submitted,

SUMMIT LAW GROUP PLLC

By */s/ Ralph H. Palumbo*
By */s/ Philip S. McCune*
Ralph H. Palumbo, WSBA #04751
Philip S. McCune, WSBA #21081
*ralphp@summitlaw.com*
*philm@summitlaw.com*

By */s/ Thomas V. Miller*
Thomas V. Miller
MOTOROLA MOBILITY LLC
600 North U.S. Highway 45
Libertyville, IL 60048-1286
(847) 523-2162

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Kathleen M. Sullivan*
Kathleen M. Sullivan, NY #1804624
51 Madison Ave., 22nd Floor
New York, NY 10010
(212) 849-7000
*kathleensullivan@quinnemanuel.com*

By */s/ Brian C. Cannon*
Brian C. Cannon, CA #193071
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
*briancannon@quinnemanuel.com*

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 13
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

By */s/ William C. Price*

William C. Price, CA #108542
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
*williamprice@quinnemanuel.com*

***Attorneys for Motorola Solutions, Inc., Motorola Mobility LLC and General Instrument Corp.***

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 14
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Arthur W. Harrigan, Jr., Esq.
Christopher T. Wion, Esq.
Shane P. Cramer, Esq.
Calfo Harrigan Leyh & Eakes LLP
*arthurh@calfoharrigan.com*
*chrisw@calfoharrigan.com*
*shanec@calfoharrigan.com*

Richard A. Cederoth, Esq.
Brian R. Nester, Esq.
David T. Pritikin, Esq.
Douglas I. Lewis, Esq.
John W. McBride, Esq.
William H. Baumgartner, Jr., Esq.
David C. Giardina, Esq.
Carter G. Phillips, Esq.
Constantine L. Trela, Jr., Esq.
Ellen S. Robbins, Esq.
Nathaniel C. Love, Esq.
Sidley Austin LLP
*rcederoth@sidley.com*
*bnester@sidley.com*
*dpritikin@sidley.com*
*dilewis@sidley.com*
*jwmcbride@sidley.com*
*wbaumgartner@sidley.com*
*dgiardina@sidley.com*
*cphillips@sidley.com*
*ctrela@sidley.com*
*erobbins@sidley.com*
*nlove@sidley.com*

T. Andrew Culbert, Esq.
David E. Killough, Esq.
Microsoft Corp.
*andycu@microsoft.com*
*davkill@microsoft.com*

DATED this 17th day of July, 2013.

/s/ *Marcia A. Ripley*
Marcia A. Ripley

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001