

RALPH H. PALUMBO
DID: (206) 676-7042
EMAIL: ralphp@summitlaw.com

315 Fifth Ave S Suite 1000
Seattle, Washington 98104
phone · 206.676.7000
fax · 206.676.7001

July 23, 2013

The Honorable James L. Robart
United States District Court
Western District of Washington
700 Stewart Street, Suite 14128
Seattle, WA 98101-9906

Re: *Microsoft Corp.* v. *Motorola Mobility, Inc.*
Case No. C10-1823-JLR

Dear Judge Robart:

Motorola brings this motion to seek Microsoft's compliance with the Court's order concerning discovery into Microsoft's decision to move its European distribution center.

Following motion practice and a Court order, Microsoft provided witnesses on July 15 and July 16. However the witnesses were deliberately unprepared. They did not know and did not learn facts as the corporate designees. Nor had they reviewed documents to refresh their memories. Motorola learned documents exist because during the first deposition Microsoft served a supplemental privilege log with scores of entries reflecting emails between the legal department and business unit in the key time frame on the issue of moving the facility.

Not only were the witnesses unprepared, but Microsoft improperly maintains that the documents are privileged. But Microsoft's decision to move—purportedly as a result of Motorola filing a lawsuit in Germany—is inextricably intertwined with legal analysis of the suits filed in Germany. As this Court recognized, Microsoft cannot rely on legal advice regarding a move, and then shield that advice from discovery. Motorola requests that this Court enforce its order requiring Microsoft to present a prepared witness and withdraw its privilege objections. Alternatively, continued failure to comply with this Court's order by the assertion of privilege and failure to provide adequately prepared 30(b)(6) witnesses warrants preclusion of Microsoft's damages theory.

I. **Statement of Facts**

A. **The Court Orders Microsoft to Provide Discovery**

In response to Microsoft claiming damages but refusing to provide discovery, Motorola requested that this Court order Microsoft to produce a Rule 30(b)(6) witness to testify regarding Microsoft's decision-making process to relocate its distribution facility.[1] Motorola argued that Microsoft could not assert that its legal department made the decision to relocate—as Microsoft

---

[1] Motorola's discovery efforts are set forth in detail in its June 18, 2013 letter to the Court. (Dkt. 702.)

The Honorable James L. Robart
July 23, 2013
Page 2

witness Owen Roberts testified (Dkt. 702-1, Ex. 3, 134:20-135:19; 40:12-41:14)—but not provide Motorola with discovery into the legal department's role.

The Court agreed with Motorola. On June 25, 2013, the Court ordered Microsoft to produce a 30(b)(6) witness to testify regarding consideration of moving the distribution facility prior to mid-January 2012. (Ex. 1, 9:3-6.) The Court explained that Microsoft's 30(b)(6) witness' testimony was insufficient, in part, because it was largely based on the witness' *personal* knowledge and experience. (*Id.*, 5:23-6:2.) Accordingly, the Court ruled that Motorola was entitled to "a witness who could categorically testify of *any* consideration of moving the distribution center prior to mid-January 2012." (*Id.*, 5:21-23) (emphasis added.)

The Court also ordered Microsoft to produce a legal department witness to testify regarding "the reasons why the law department made the decision that the distribution center needed to be moved." (*Id.*, 9:7-11.) The Court noted that it could not reconcile Microsoft's position that the law department did not make the decision to relocate with the "direct deposition testimony" of Microsoft's Mr. Roberts. (*Id.*, 8:5-8 ("The court is unable to reconcile the statement in Microsoft's briefing that Davidson and Roberts made the decision to relocate with the direct deposition testimony of the witness."), 7:9-8:4.) The Court stated, "since Microsoft opened the door to why the law department told the business people that they were moving the warehouse, it seems to me, as a matter of fairness, that Motorola is permitted to examine that question." (*Id.*, 8:21-25). "[Y]ou can't say, 'The law department made us do it,' without opening yourself up to examination of what the law department did." (*Id.* 8:16-18.)

### B.  Microsoft's Designees Remain Unprepared to Testify on the Noticed Topic

Microsoft designated Jeff Davidson to testify regarding whether there was any consideration by Microsoft of moving the distribution center prior to mid-January 2012. (Ex. 2, 6:23-7:2.) Mr. Davidson was deposed on July 16. By his own admission, Mr. Davidson did very little to prepare himself for the deposition, having only discussed the issues with the supervisors within his division, and "scrolled some" of his personal emails. (*Id.*, 7:10-12, 14:14-18, 18:7-20, 19:10-21.) Mr. Davidson was not prepared, as the Court ordered, to "categorically say . . . that there was no consideration of moving the distribution center prior to mid-January of 2012." (Ex. 1, 9:3-6).

> Q.   Okay. So sitting here today, can you tell us categorically that prior to mid-January 2012, the legal department did not consider the issue of whether or not the distribution center in Germany should be moved out of Germany?
>
> A.   I – *I can't tell you if the – within the legal department, that the legal department themselves independently considered that. I don't know*.

(Ex. 2, 23:17-24) (emphasis added).

Motorola took the deposition of the legal department witness, Ms. McKinley, on July 15. She did next to nothing to prepare for her deposition. (Ex. 3, 33:9-34:2.) She did not look at any documents generated at the time the legal department began working on this issue, and did not talk to anyone she worked with during the time period. (*Id.*, 38:4-39:3). She could not answer the most basic of questions surrounding her involvement in the decision-making process. She did not know when she started working on the issue of Motorola's suit in Germany (*id.*, 8:17-9:2), when she became aware of Motorola's litigation against Microsoft in

The Honorable James L. Robart
July 23, 2013
Page 3

Germany (*id.*, 25:7-16), whether she ranked the various options available to the business department in connection with preparing for the possibility of an injunction (*id.*, 55:19-24, 56:12-16, 58:7-15), how the business department responded to her advice that the German courts often issue injunctions that could affect future business (*id.*, 76:13-77:6), any details about Germany's Orange Book process (*id.*, 90:6-20, 91:18-21, 93:14-21), or what other options were discussed or considered (*id.*, 95:2-15).

### C. Microsoft Withholds Documents Regarding the Legal Department's Involvement in the Decision to Relocate as Privileged.

Earlier in discovery, Microsoft produced a two-page privilege log that did not identify a single communication dated prior to March 9, 2012 and only referenced documents from Mr. Davidson. (Ex. 4.)[2]

Following the Court's June 25 order, Motorola reiterated its prior request (which Microsoft had previously refused) that Microsoft search and produce relevant documents from Ms. McKinley's files. (Ex. 5.) Motorola also asked that Microsoft confirm the accuracy of its May 20 supplemental privilege log. (*Id.*) Microsoft produced a small set of Ms. McKinley's documents the day before her deposition. Then, *during* her deposition, Microsoft served a 30-page supplemental privilege log. (Ex. 6.)[3] This supplemental privilege log includes documents on which Ms. McKinley was neither an author nor a recipient, thus it does not relate solely to the small production that took place prior to her deposition. Moreover, it appears from the latest privilege log that Microsoft is withholding documents relating to what the legal department did with respect to the decision to relocate the distribution center (*see, e.g., id.* at 3.), despite this Court's order requiring Microsoft to provide discovery on this issue. (Ex. 1, 8:16-18.)

On July 17, Motorola promptly requested that Microsoft produce new witnesses and the documents being withheld as privileged. (Ex. 7.) The parties met and conferred on July 19, but Microsoft refused to provide this discovery.

## II. Argument

### A. Microsoft Did Not Comply With Its Obligations Under Rule 30(b)(6) or This Court's Order.

Rule 30(b)(6) requires an organization to provide a prepared witness. See Fed. R. Civ. P. 30(b)(6) and cases cited at Dkt. 702, pages 6-7.

Under Rule 37(b)(2), a court may issue sanctions if a party "fails to obey an order to provide or permit discovery." The Ninth Circuit has upheld issue preclusion under 37(b)(2) where a party or someone under the party's control is guilty of discovery misconduct including failure to answer questions at deposition after the court orders it to do so and failure to produce documents as ordered by the court. *Wanderer v. Johnston*, 910 F.2d 652, 656-57 (9th Cir.

---

[2] Mr. Davidson had previously testified that his team began considering whether to relocate in mid-January 2012, and made the decision to relocate on March 8, 2012. (Dkt. 702-1, Ex. 1, 27:19-28:17, 56:17-58:16, 34:17-35:3.) Mr. Roberts testified that he was informed of the decision to relocate by the legal department in mid-January 2012. (*Id.*, Ex. 3, 40:12-41:14.)

[3] On July 22, Microsoft served a re-formatted version of that log that is 28 pages long.

The Honorable James L. Robart
July 23, 2013
Page 4

1990); *see also United Wood Prods. Co. v. Tri-State Const. Inc.*, No. C04-2052Z, 2006 WL 399278 at *4 (W.D. Wash. Feb. 16, 2006) (precluding party from calling further witness after failure to provide an adequately prepared 30(b)(6) witness following a court order and awarding reasonable attorney fees necessary to take the supplemental deposition); *see also VNUS Medical Techs., Inc. v. Diomed Holdings, Inc.*, 2007 WL 3096586, at *2 (N.D. Cal. Oct. 22, 2007).

There can be no dispute that Mr. Davidson was not prepared on the Court-ordered topic on which he was designated. The Court ordered Microsoft to produce a witness who could "categorically" state that Microsoft did not consider relocating prior to January 2012, and Mr. Davidson could not do so. (Ex. 2, 23:17-24.) When the parties met and conferred, Microsoft offered no explanation for how Mr. Davidson's testimony complied with the Court's order.

Similarly, Ms. McKinley could not testify on a wide range of topics relating to what the legal department (or even she personally) did in connection with the decision to relocate. (Ex. 3, 8:17-9:2; 25:7-16, 55:19-24, 56:12-16, 58:7-15, 95:2-9, 76:13-77:6, 90:6-20; 93:14-21.) Microsoft is likely to argue (as it did in the parties' meet and confer) that the Court only ordered her to "explain the reason why the law department made the decision that the distribution center needed to be moved," (Ex. 1, 9:9-11), which they claim is based on the false premise that the legal department made the decision. (*See* Ex. 8.) Microsoft's narrow interpretation of the Court's language, however, ignores the full scope of the Court's guidance. The Court explained, "you can't say, 'The law department made us do it," without opening yourself open to *an examination of what the law department did*." (Ex. 1, 8:16-18) (emphasis added). Regardless of how many times Microsoft insists that the legal department did not decide to relocate the facility, this Court recognized that Mr. Roberts testified that the legal department *did* make that decision. (*Id.*, 7:9-8:4.) It is that testimony that this Court reasoned opened Microsoft up to "an examination of what the law department did." (*Id.*, 8:14-18.) Ms. McKinley was not prepared to testify regarding what the law department did.

This Court should order Microsoft to produce a witness or witnesses to testify on the previously-ordered topics. In the alternative, Microsoft should be precluded from introducing evidence that it relocated the distribution facility as a result of Motorola's conduct.

> **B.   Microsoft Cannot Rely on Privilege to Withhold Documents Reflecting What the Legal Department Did in Relation to the Decision to Relocate.**

In its prior request for relief, Motorola argued that Microsoft should not be allowed to assert the attorney-client privilege as both a sword and a shield. (Dkt. 02-1) (citing *Volcan Group, Inc. v. T-Mobile USA, Inc.*, No. C10-177 RSM, 2011 WL 6141000 at *3 (W.D. Wash. Dec. 9, 2011); *Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001). Motorola argued that fairness requires that, where a party relies upon privileged communications to advance a party's commercial interests, it cannot preserve confidentiality as to other parts of the communication. *Volcan*, 2011 WL 6141000 at *3. This Court agreed. (Ex. 1, 8:21-25, 8:16-18.) Thus the issue of waiver is resolved.

It appears, however, that Microsoft is withholding documents reflecting "what the law department did" with respect to the decision to relocate the distribution facility. The testimony of Ms. McKinley and Messrs. Davidson and Roberts suggests that these documents likely reference the legal department's analysis of extrinsic benefits considered when advising the

The Honorable James L. Robart
July 23, 2013
Page 5

move (*e.g.*, future benefits unrelated to Motorola's request for a German injunction) and are directly relevant to assessing Microsoft's claim that it relocated the distribution center to avoid *Motorola's* threat of injunction. Benefits outside this case would not merely confirm but fully contribute to the decision to move, and may have been necessary or even sufficient to reach the decision. Once made, options like depositing royalties into escrow, even if less burdensome than moving, would rationally be forgone as literally needless. Even beyond Microsoft's motives to move, the extrinsic benefits of moving are needed to calculate the net damages to Microsoft. The Court already ordered that Microsoft produce a witness on this topic on the ground that Microsoft opened itself up to discovery on the issue. Microsoft should not be permitted to continue to withhold documents relating to this same topic. By relying on communications with counsel, Microsoft waived privilege on the decision to relocate the distribution facility and the legal department's involvement in that decision.

The documents Motorola seeks, as well as the deposition testimony, are directly relevant to Microsoft's causation claim. Although Microsoft alleges that it relocated because of Motorola's claim for injunctive relief in its H.264 case against Microsoft, Ms. McKinley testified that injunctions are "frequent" in Germany and would have advised the business team of that because "having your global logistics tied up in Germany . . . foreseeably puts you in a situation in other cases." (Ex. 3, 74:25-75:7.)

> Q. ***Why would having your global logistics tied up in Germany – in Germany put you at risk or have an effect on future cases?***
>
> A. I think I've answered that. That's – again, I – my understanding is, Germans are – ***injunctions are frequent in patent infringement cases in Germany.***

(*Id.*, 75:12-17) (emphasis added). Moreover, in the same time frame, Microsoft was facing an injunction in Germany in another litigation against Motorola that did not involve infringement of Motorola's SEPs. (Ex. 9, 12:5-18.) It therefore appears that this factor, which is unrelated to Motorola's H.264 litigation specifically, may have influenced Microsoft's decision to relocate. The documents being withheld may flesh out that factor or others in more detail. If other factors weighed in favor of relocating the facility, that undermines Microsoft's claim that Motorola should be liable for the relocation costs in their entirety. Motorola should have the opportunity to explore this issue of causation fully in both deposition and documents.

### III. Conclusion

For the foregoing reasons, Motorola respectfully requests that this Court order Microsoft to comply with the Court's prior order and provide prepared witnesses, and also produce recently identified documents that have been withheld as privileged. In the alternative, Motorola requests that the Court preclude Microsoft from introducing evidence that it relocated its distribution facility as a result of Motorola's alleged breach of contract.

4815-9666-7412.3

The Honorable James L. Robart
July 23, 2013
Page 6

Respectfully,

SUMMIT LAW GROUP PLLC

*/s/ Ralph H. Palumbo*

Ralph H. Palumbo

Enclosures
cc:     All Counsel of Record

4815-9666-7412.3