HONORABLE JAMES L. ROBART

1

2

3

4

5

6

7          IN THE UNITED STATES DISTRICT COURT
       FOR THE WESTERN DISTRICT OF WASHINGTON
8                      AT SEATTLE

| | |
|---|---|
| 9 MICROSOFT CORPORATION, | Case No. C10-1823-JLR |
| 10     Plaintiff, | |
| 11   v. | JOINT STATEMENT OF DISPUTED JURY INSTRUCTIONS PURSUANT TO LR 51 |
| 12 MOTOROLA INC., et al., | |
| 13     Defendants. | **TRIAL DATE: AUGUST 26, 2013** |
| 14 MOTOROLA MOBILITY, LLC, et al., | |
| 15     Plaintiffs, | |
| 16   v. | |
| 17 MICROSOFT CORPORATION, | |
| 18     Defendant. | |

19

20          Pursuant to the Court's July 1, 2013 Order, (Dkt. 714), and Local Rule 51(h), the parties

21  hereby submit their Joint Statement of Disputed Jury Instructions, a copy of which is also being

22  transmitted to the Court by electronic mail as a Word document.

23

24

25

26  JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 1

# TABLE OF CONTENTS

1

2      The Table of Contents for the Joint Proposed Jury Instructions, filed concurrently

herewith, includes a full list of all proposed instructions and, for each instruction, indicates

3      whether it is an agreed instruction,  a disputed instruction where the parties have proposed

4      alternative formulations, or a disputed instruction where the opposing party has not proposed an

5      alternative formulation.  The Table of Contents immediately below lists only the disputed

6      instructions.

7

| *Instruction Number and Title* | *Sources* | *Page No.* | *Party(ies)* |
|---|---|---|---|
| **DISPUTED PRELIMINARY JURY INSTRUCTIONS (PROPOSED FOR USE PRIOR TO OPENING STATEMENTS)** | | 11 | |
| **Preliminary Instruction No. 2 Summary of claims and defenses, background, and prior determinations of the Court** | Dkt. 673, *Finding of Facts and Conclusions of Law*, April 19, 2013; Dkt. 188, *Order on Plaintiff's Motion for Partial Summary Judgment*, Feb. 27, 2012; Dkt. 335, *Order*, June 6, 2012; Dkt. 465, *Order*, Oct. 12, 2012 | 11 | Microsoft's alternative |
| **Preliminary Instruction No. 2 Summary of Claims and Defenses** | Ninth Circuit Manual of Model Jury Instructions, Civil § 1.2 (2007) ("Ninth Circuit Model"); Dkt. 673, *Finding of Facts and Conclusions of Law*, April 19, 2013 | 33 | Motorola's alternative |
| **Preliminary Instruction No. 3 Burden of Proof – Preponderance of the Evidence** | Ninth Circuit Model 1.3 | 37 | Microsoft's alternative |
| **Preliminary Instruction No. 3 Burden of Proof – Preponderance of the Evidence** | 6 Wash. Prac., Wash. Pattern Jury Instr. Civ. ("WPI") 21.01 (6th ed.); Ninth Circuit Model  1.3 | 38 | Motorola's alternative |
| **Preliminary Instruction No. 4 Two or More Parties – Different Legal Rights** | Ninth Circuit Model 1.5 | 39 | Motorola |
| **Preliminary Instruction No. 20 Charts and Summaries Not Received in Evidence** | Ninth Circuit Model 2.12 | 41 | Motorola |
| **Preliminary Instruction No. 21 Charts and Summaries Received in Evidence** | Ninth Circuit Model 2.13 | 42 | Motorola |

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 2

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

| Instruction Number and Title | Sources | Page No. | Party(ies) |
|---|---|---|---|
| **DISPUTED FINAL JURY INSTRUCTIONS (PROPOSED FOR USE AFTER THE CLOSE OF EVIDENCE)** | | 43 | |
| **Final Instruction No. 2 Burden of Proof – Preponderance of the Evidence** | Ninth Circuit Model 1.3 | 43 | Microsoft's alternative |
| **Final Instruction No. 2 Burden of Proof – Preponderance of the Evidence** | WPI 21.01; Ninth Circuit Model 1.3 | 44 | Motorola's alternative |
| **Final Instruction No. 5 Prior rulings by the Court** | Dkt. 607, *Order Granting Microsoft's Motion Dismissing Motorola's Claim for Injunctive Relief*, Nov. 30, 2012; Dkt. 703, *Hearing Transcript*, June 5, 2013; Dkt. 703, *Hearing Transcript*, June 5, 2013; Cramer Decl. Ex. C, Motorola's Pretrial Statement | 45 | Microsoft |
| **Final Instruction No. 13 Charts and Summaries Not Received in Evidence** | Ninth Circuit Model 2.12 | 47 | Motorola |
| **Final Instruction No. 14 Charts and Summaries Received into Evidence** | Ninth Circuit Model 2.13 | 48 | Motorola |
| **Final Instruction No. 16 Promised Defined** | WPI 301.02 | 49 | Microsoft |
| **Final Instruction No. 17 Issues – Breach of Contract** | WPI 300.01; Dkt. 188, *Order on Plaintiff's Motion for Partial Summary Judgment*, February 27, 2012; Dkt. 335, *Order*, June 6, 2012; Dkt. 673, *Findings of Fact and Conclusions of Law*, April 19, 2013 | 50 | Microsoft's alternative |
| **Final Instruction No. 17 Issues – Breach of Contract** | WPI 300.01; Cramer Decl. Ex. E - Microsoft's Response to Motorola's Interrogatory No. 3 | 53 | Motorola's alternative |

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 3

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

| Instruction Number and Title | Sources | Page No. | Party(ies) |
|---|---|---|---|
| **Final Instruction No. 18** **Burden of proof on the issues** | WPI 300.03; WPI 300.03(1); WPI 300.03(2); WPI 300.03(3); Dkt. 79-3, *Exhibit 3 to Wion Declaration in Support of Microsoft's Motion for Partial Summary Judgment*, August 8, 2011; Dkt. 188, *Order on Plaintiff's Motion for Partial Summary Judgment*, February 27, 2012; Dkt. 231, *Defendants' Motion for Partial Summary Judgment*, March 30, 2012; Dkt. 335, *Order*, June 6, 2012; Dkt. 465, *Order*, October 10, 2013; Dkt. 673, *Findings of Fact and Conclusions of Law*, April 19, 2013; Trial Exs. 1130, 1568, 1575, 2838, 2839; *Wolfe v. Morgan*, 524 P.2d 927 (Wash. App. 1974); *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872 (9th Cir. 2012); *Apple, Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901 (N.D. Ill. 2012); *Realtek Semiconductor Corp. v. LSI Corp.*, No. C–12–03451–RMW, 2013 WL 2181717, (N.D. Cal. May 20, 2013); *Merrell v. Renier*, No. C06-404JLR, 2006 WL 3337368 (W.D.Wash. Nov. 16, 2006); *Heitmiller v. Prall*, 184 P. 334 (Wash. 1919) | 56 | Microsoft's alternative |
| **Final Instruction No. 18** **Burden of Proof on the Issues – Breach of Contract – With Affirmative Defenses** | WPI 300.03(1); Dkt. 335, *Order*, June 6, 2012 | 74 | Motorola's alternative |
| **Final Instruction No. 19** **Requirements for Initial Offer** | Dkt 335, *Order*, June 6, 2012 | 78 | Motorola |
| **Final Instruction No. 20** **Reasonable Royalties for RAND Commitments** | Dkt. 673, *Findings of Fact and Conclusions of Law*, April 19, 2013 | 79 | Motorola |

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 4

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

| Instruction Number and Title | Sources | Page No. | Party(ies) |
|---|---|---|---|
| **Final Instruction No. 21 Implied Duty of Good Faith and Fair Dealing** | WPI 302.11; Restatement (Second) of Contracts § 205; Restatement (Second) of Contracts § 205 comments a, d; Dkt. 66, *Order*, June 1, 2011 ; Dkt. 188, *Order on Plaintiff's Motion for Partial Summary Judgment*, February 27, 2012; Dkt. 335, *Order*, June 6, 2012; Dkt. 490, *Order*, October 22, 2012; Dkt. 673, *Findings of Fact and Conclusions of Law*, April 19, 2013; Dkt. 715, *Microsoft's Brief Regarding the Duty of Good Faith and Fair Dealing*, July 1, 2013 (including cases citing therein); Dkt. 716, *Defendants' Brief on Duty of Good Faith and Fair Dealing in Contractual Dispute Context,* July 1, 2013; *Vylene Enterprises, Inc. v. Naugles, Inc.*, 90 F.3d 1472 (9th Cir. 1996); *Best v. U.S. Nat. Bank of Oregon*, 739 P.2d 554 (1987); *Craig v. Pillsbury Non-Qualified Pension Plan*, 458 F.3d 748 (8th Cir. 2006); *Goldstein v. Johnson & Johnson*, 251 F.3d 433 (3d Cir. 2001) | 80 | Microsoft's alternative |
| **Final Instruction No. 21 Implied Duty of Good Faith and Fair Dealing** | *Miller v. Othello Packers, Inc.*, 410 P.2d 33 (Wash. 1966); *Badgett v. Sec. State Bank*, 807 P.2d 356 (Wash. 1991); *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, (Wash. 2004); *Donald B. Murphy Contractors, Inc. v. King Cnty*, 49 P.3d 912 (Wash. App. 2002); *Betchard-Clayton, Inc. v. King*, 41 Wn. App. 887, 707 P.2d 1361 (Wash. App. 1985); *Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn. 2d 426 (1991) (en banc); *Bonnieview Homeowners Ass'n v. Woodmont Builders, L.L.C.*, 655 F.Supp.2d 473 (D.N.J. 2009). | 86 | Motorola's alternative |
| **Final Instruction No. 22 Initial Good Faith Offer** | Dkt. 335, *Order*, June 6, 2012 | 88 | Motorola |

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 5

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

| Instruction Number and Title | Sources | Page No. | Party(ies) |
|---|---|---|---|
| **Final Instruction No. 23 Consideration of Subjective Factors** | Dkt. 335, *Order*, June 6, 2012; Dkt. 716, *Defendants' Brief on Duty of Good Faith and Fair Dealing in Contractual Dispute Context,* July 1, 2013; Restatement (Second) of Contracts § 205(d) (1981); *Fairhaven Land & Livestock Co. v. Chuckanut Trails Water Ass'n*, Case No. 60909-2-I, 148 Wn. App. 1046 (Feb. 23, 2009); *Matter of Hollingsworth's Estate*, 560 P.2d 348 (Wash. 1977); *Cavell v. Hughes*, 629 P.2d 927 (Wash. App. 1981); *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710(N.J. 2007); *Continental Bank N.A. v Modansky*, 997 F.2d 309 (7th Cir. 1993); RCW §62A.1-201(b)(20) | 89 | Motorola |
| **Final Instruction No. 24 Consideration of Industry Custom or Practice** | Dkt. 335, *Order*, June 6, 2012; Dkt. 673, *Findings of Fact and Conclusions of Law*, April 19, 2013; *Curtis v. Northern Life Ins. Co.*, 147 Wn. App. 1030, (2008); *Axthelm & Swett Const., Inc. v. Caudill*, No. 35995-9-I, 86 Wn. App. 1002, (May 12, 1997); *Rhino Linings USA, Inc. v. Harriman,* 658 F. Supp. 2d 892 (S.D. Ind. 2009); *Barstad v. Stewart Title Guar. Co., Inc.*, 39 P.3d 984 (Wash. 2002); *Lichtenberg Constr. & Dev., Inc. v. Paul W. Wilson, Inc.*, No. C-000811, 2001 WL 1141236, (Ohio Ct. App. Sept. 28, 2001); *Amerigraphics, Inc. v. Mercury Cas. Co.*, 182 Cal App. 4th 1538 (Cal. App. 2010) | 91 | Motorola |
| **Final Instruction No. 25 Mutual Duty of Good Faith and Fair Dealing** | *Zuver v. Airtouch Commc'ns, Inc.*, 103 P.3d 753 (Wash. 2004); Restatement (Second) of Contracts § 205 (1981); *Riveredge Assocs. v. Metro. Life Ins. Co.*, 774 F. Supp. 897 (D.N.J. 1991). *Monahan v. GMAC Mortgage Corp.*, 893 A.2d 298 (Vt. 2005); *ABA Distributors, Inc. v. Adolph Coors Co.*, 542 F. Supp. 1272 (W.D. Mo. 1982); *McCarthy W. Constructors, Inc. v. Phoenix Resort Corp.*, 821 P.2d 181 (Ariz. App. 1991) | 93 | Motorola |

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 6

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

| Instruction Number and Title | Sources | Page No. | Party(ies) |
|---|---|---|---|
| **Final Instruction No. 26**<br>**Size of Offer as Evidence of**<br>**Good Faith** | Dkt. 716, *Defendants' Brief on Duty of Good Faith and Fair Dealing in Contractual Dispute Context,* July 1, 2013; *Alliance Atlantis Releasing Ltd. v. Bob Yari Prods.*, No. CV 08-5526-GW (SSX), 2010 WL 1525687 (C.D. Cal. Apr. 12, 2010); *Warner Theatre Associates Ltd. P'ship v. Metro. Life Ins. Co.*, 1997 WL 685334 (S.D.N.Y. Nov. 4, 1997) (Sotomayor, D.J.), *aff'd*, 149 F.3d 134 (2d Cir. 1998); *BBS Technologies, Inc. v. Remington Arms Co., Inc.*, No. Civ. A. 05-98-DLB, 2005 WL 3132307 (E.D. Ky. Nov. 22, 2005); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011); *Realtek Semiconductor Corp. v. LSI Corp.*, No. C-12-03451 RMW, 2012 WL 4845628 (N.D. Cal. Oct. 12, 2012) | 95 | Motorola |
| **Final Instruction No. 27**<br>**Unwillingness to Negotiate** | *Zuver v. Airtouch Commc'ns, Inc.*, 103 P.3d 753, 766-67 (Wash. 2004); Restatement (Second) of Contracts § 205 (1981); *Riveredge Assocs. v. Metro. Life Ins. Co.*, 774 F. Supp. 897 (D.N.J. 1991). *Monahan v. GMAC Mortgage Corp.*, 893 A.2d 298 (Vt. 2005); *ABA Distributors, Inc. v. Adolph Coors Co.*, 542 F. Supp. 1272 (W.D. Mo. 1982); *McCarthy W. Constructors, Inc. v. Phoenix Resort Corp.*, 821 P.2d 181 Ariz. App. 1991). | 97 | Motorola |
| **Final Instruction No. 28**<br>**Availability of Injunctive**<br>**Relief** | *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178-BBC, 2012 WL 5416941 (W.D. Wis. Oct. 29, 2012); *In the Matter of Certain Electronic Devices,* No. 337-TA-794 (ITC 2013) (Dkt. 738.) | 98 | Motorola |
| **Final Instruction No. 29**<br>**Microsoft's right to enforce** | Dkt. 188, *Order on Plaintiff's Motion for Partial Summary Judgment*, February 27, 2012; Dkt. 335, *Order*, June 6, 2012; Dkt. No. 465, *Order*, October 10, 2013 | 99 | Microsoft |
| **Final Instruction No. 30**<br>**Breach of Contract – Non-**<br>**Performance of Duty** | WPI 302.01 | 101 | Microsoft |

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 7

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

| Instruction Number and Title | Sources | Page No. | Party(ies) |
|---|---|---|---|
| **Final Instruction No. 31 Affirmative defense – Ripeness of claim relating to IEEE** | *Augustine v. United States*, 704 F.2d 1074 (9th Cir. 1983); *Berardinelli v. Castle & Cooke Inc.*, 587 F.2d 37 (9th Cir. 1978); *Land v. Dollar*, 330 U.S. 731 (1947); 5B Fed. Prac. & Proc. Civ. § 1350 (3d ed.); *Rosales v. United States*, 824 F.2d 799 (9th Cir. 1987; *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992); *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646 (9th Cir. 2002); *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134 (9th Cir. 2000); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994); *Brooks Mfg. Co. v. Dis-Tran Wood Products, LLC*, C11-0309JLR, 2012 WL 1099760 (W.D. Wash. Mar. 30, 2012); *Parenti v. United States*, C03-5457FDB, 2003 WL 23200011 (W.D. Wash. Dec. 22, 2003) | 103 | Motorola |
| **Final Instruction No. 32 Affirmative defense – Ripeness of claim relating to ITU** | *Augustine v. United States*, 704 F.2d 1074 (9th Cir. 1983); *Berardinelli v. Castle & Cooke Inc.*, 587 F.2d 37 (9th Cir. 1978); *Land v. Dollar*, 330 U.S. 731 (1947); 5B Fed. Prac. & Proc. Civ. § 1350 (3d ed.); *Rosales v. United States*, 824 F.2d 799 (9th Cir. 1987).*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992); *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646 (9th Cir. 2002); *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134 (9th Cir. 2000); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994); *Brooks Mfg. Co. v. Dis-Tran Wood Products, LLC*, C11-0309JLR, 2012 WL 1099760 (W.D. Wash. Mar. 30, 2012); *Parenti v. United States*, C03-5457FDB, 2003 WL 23200011 (W.D. Wash. Dec. 22, 2003) | 106 | Motorola |

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 8

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

| Instruction Number and Title | Sources | Page No. | Party(ies) |
|---|---|---|---|
| **Final Instruction No. 33 Affirmative defense – Unclean hands** | *Abbott Point of Care, Inc. v. Epocal, Inc.*, 868 F. Supp. 2d 1310 (N.D. Ala. 2012); *Unilogic, Inc. v. Burroughs Corp.*, 10 Cal. App. 4th 612, 623 (1992); *Adler v. Fed. Republic of Nigeria*, 219 F.3d 869 (9th Cir. 2000); *Jacobs v. Universal Dev. Corp.*, 53 Cal. App. 4th 120, 699 (1997); *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091 (9th Cir. 1985); 2 Cal. Affirmative Def. § 45:18 (2013 ed.) | 109 | Motorola |
| **Final Instruction No. 34 Affirmative Defense – Mitigation of damages** | WPI 33.03; Restatement (Second) of Contracts § 350, cmt. b (1981). | 112 | Motorola |
| **Final Instruction No. 35 Ability to Avoid Injunction in Germany** | German Federal Civil Court, Antitrust Division, Judgment of 6th May 2009 – Orange Book Standard, Docket No KZR 39/06; Section 315 of the German Code. | 114 | Motorola |
| **Final Instruction No. 36 Measure of Expectation Damages – Breach of Contract** | WPI 303.01; *Mason v. Mortgage America, Inc.*, 792 P.2d 142 (Wash 1990) (*en banc*) (citing cases); *C 1031 Properties, Inc. v. First American Title Ins. Co.*, 301 P.3d 500 (Wash. App. 2013); *Wenzler & Ward Plumbing & Heating Co. v. Sellen*, 330 P.2d 1068 (Wash. 1959) (citing *cases*); *Long v. T-H Trucking Co.*, 486 P.2d 300 (Wash. App. 1971) | 116 | Microsoft's alternative |
| **Final Instruction No. 36 Measure of Expectation Damages – Breach of Contract** | WPI 303.01 | 120 | Motorola's alternative |
| **Final Instruction No. 37 Measure of Damages – Direct Damages** | WPI 303.03 | 122 | Microsoft's alternative |
| **Final Instruction No. 37 Measure of Damages – Direct Damages** | WPI 303.03 | 124 | Motorola's alternative |
| **Final Instruction No. 38 Liability of Corporation** | Ninth Circuit Model 4.2; *Deep Water Brewing, LLC v. Fairway Resources Limited*, 215 P.3d 990 (Wash. App. 2009); *Miller v. United Pacific Casualty Insurance Co.*, 60 P.2d 714 (Wash. 1936) (citing cases) | 125 | Microsoft |

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 9

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

| *Instruction Number and Title* | *Sources* | *Page No.* | *Party(ies)* |
|---|---|---|---|
| **Final Instruction No. 39 Nominal Damages** | Ninth Circuit Model 5.6; *Ford v. Trendwest Resorts, Inc.*, 43 P.3d 1223 (Wash. 2002); *Heitmiller v. Prall*, 184 P. 334 (Wash. 1919); *Smelt Fishermens Ass'n v. Soleim*, 236 P.2d 1057 (Wash. 1951); *Hausken v. Hodson-Feenaughty Co.*, 187 P. 319 (Wash. 1920); *Kimberly-Clark Worldwide, Inc. v. United Wood Products Co.*, 2009 WL 1941367 (Wash. App. 2009); *Cintas Corp. v. C. C. Cavanaugh, Inc.*, 2007 WL 1180996 (Wash. App. 2007) | 128 | Microsoft |
| **Microsoft's proposed verdict form** | NA | 131 | Microsoft's alternative |
| **Motorola's proposed verdict form** | NA | 133 | Motorola's alternative |

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 10

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

2   I.      **DISPUTED PRELIMINARY JURY INSTRUCTIONS (PROPOSED FOR USE
            PRIOR TO OPENING STATEMENTS)**

3                          **Preliminary Instruction No. 2.**

4   **(Summary of claims and defenses, background, and prior determinations of the Court |**

5                            **MICROSOFT'S alternative)**

6

7         Microsoft offers this proposed preliminary instruction with the understanding that the

8   Court's rulings are binding on the jury that will be seated for the August 2013 trial.  Microsoft

    reserves and does not waive its rights to appeal any findings or conclusions with which it

9   disagrees, regardless of whether the proposed instruction below recites those findings or

10  conclusions. Microsoft also proposes that this instruction, revised as appropriate in light of

11  events during trial, be given at the close of the evidence.

12        Microsoft understands that Motorola intends to submit a motion *in limine* on the

13  propriety of this instruction and will respond to any arguments raised in such a submission.

14  **Microsoft's proposed instruction:**

15        To help you follow the evidence, I will give you a brief background of the case and a

16  summary of the positions of the parties.

17        In the course of this case, the Court has made many factual and legal rulings that are

18  likely to be important in your decision on the questions you must decide in the case.  These

19  earlier decisions by the Court are binding on you—that is, you must accept them as true and

    correct for all purposes.  In this preliminary instruction, I will inform you of some of these earlier

20  rulings.  Witnesses and counsel may refer to these earlier rulings from time to time during the

21  trial.  You will be given a copy of this instruction to use during your deliberations.

22        This is a breach of contract case between Microsoft Corporation and Motorola, Inc.,

23  Motorola Mobility, Inc., and General Instrument Corporation.  After this lawsuit was initiated,

    Motorola, Inc., changed its corporate name to Motorola Solutions, Inc.  You may also hear or see

24  some evidence referring to a company called Symbol Technologies, Inc.; Symbol was acquired

25

26  JOINT STATEMENT OF DISPUTED JURY
    INSTRUCTIONS - 11

1   by Motorola, Inc., in 2007, is now a wholly-owned subsidiary of Motorola Solutions.  I will refer
2   to all of these companies collectively as "Motorola."  [1]

3       Motorola had contractual obligations to license certain patents to Microsoft on reasonable
    and non-discriminatory terms and conditions.  Microsoft alleges that Motorola breached its
4   contractual obligations through two offer letters Motorola sent to Microsoft setting forth
5   proposed license terms and conditions and also breached these obligations in taking certain other
6   actions after it sent the offer letters to Microsoft.  Microsoft sued Motorola for breach of its
7   contracts in this court on November 9, 2010.

8       Motorola denies that it breached these contracts.

9       You will be asked to decide whether or not Motorola breached any of these contracts.

10  I.      **Introduction and Overview of Case**

11      Motorola's contractual obligation to license certain of its patents on reasonable and non-
12  discriminatory terms and conditions was made as part of its relationship with two international
    organizations that set certain technical standards.  These organizations are called "standard-
13  setting organizations," or SSO's for short.  The standard setting organizations involved here are
14  the Institute of Electrical Electronics Engineers, which is called "I-triple-E" for short, and the
15  International Telecommunication Union, which will be referred to as "ITU."  [2]

16      The contractual obligation to license patents on reasonable and non-discriminatory is
17  frequently referred to as a "RAND" obligation: RAND stands for "reasonable and non-
    discriminatory."  It is also sometimes referred to as "FRAND," which is an acronym for fair,
18  reasonable and non-discriminatory.  RAND and FRAND mean the same thing.
19
20      Standard setting organizations like IEEE and ITU create standards that are used to design
    and manufacture technology products.  One main purpose of these organizations is to create
21  uniform, or standard, ways of performing certain complex functions so that many different
22  products performing the same functions can interact, or interoperate, with each other.  Standard
23  setting organizations play a significant role in the technology market by allowing companies to
    agree on common technological protocols so that products complying with the standards will
24  work together.  [3]  You may learn more about both industry standards and standard setting
25  organizations during the upcoming trial.
26
JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 12

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1
2       There are many technology standards.  This case involves two such standards that were
developed by two different standard setting organizations.  One involves wireless
communications, commonly known as "WiFi," and the standard is called the "802.11 standard."
3       The other involves video coding technology, and the standard is called the "H.264 standard."  [4]
4       The two different standard setting organizations mentioned earlier created these two standards.
5       IEEE created the "WiFi" or 802.11 standard.  ITU created the video compression or H.264
        standard.
6
7       Much of the technology that is incorporated into technology standards like the 802.11 and
8       H.264 standards is not patented, but each of these standards incorporates some technology that is
covered by patents.  Thus, in order for a company to practice the standard, it is necessary for that
9       company to utilize technology that is covered by one or more patents.  If a patented technology
10      has to be used to incorporate the standard into a product, those patents are called "essential," or
11      "standard essential patents."  The existence of standard essential patents is common in the world
        of technology standards.
12
13      To make it easier for companies to incorporate technology standards into products,
standard setting organizations seek commitments from the owners of standard essential patents to
14      license their patents to other firms that want to implement the standard on reasonable and non-
15      discriminatory — or RAND — terms.  Motorola owns patents that are essential to the 802.11 and
16      H.264 standards and has committed to license them to any company that wants to use those
standards, and to do so on RAND terms.  [5]
17
18      Microsoft claims that Motorola breached its RAND licensing obligation initially by
19      seeking royalties for its 802.11 and H.264 standard essential patents that were unreasonable, and
also breached its RAND obligation through conduct that occurred after it made its initial royalty
20      demands.  The following are some of the events that relate to Microsoft's claims.
21
22      On October 21, 2010, Motorola sent Microsoft a letter offering to license Motorola's
802.11 standard essential patents.  On October 29, 2010, Motorola sent a similar letter offering to
23      license its H.264 standard essential patents.  In each of these letters Motorola stated that it would
24      license its standard essential technology for a royalty of 2.25% of the price of the products
        containing the technology.  For example, in the case of a laptop containing a Windows operating
25
26
JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 13

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   system, Motorola offered Microsoft a license to its H.264 standard essential patents for 2.25% of
2   the price of each laptop containing Windows.  [6]

3          On November 9, 2010, Microsoft initiated this breach of contract action against Motorola
4   based on Motorola's two offer letters, asserting that the letters breached Motorola's RAND
    licensing commitments to the IEEE and the ITU.  [7]  Microsoft thereafter further alleged that
5   Motorola also breached its RAND licensing commitments to the IEEE and the ITU through the
6   filing of various lawsuits in which it sought to exclude from various markets those Microsoft
7   products, such as Windows and Xbox, that practiced one or both of these industry standards,
8   based on the fact that Microsoft did not have a license to Motorola's standard essential
    technology.
9
10         Motorola's RAND commitments created enforceable contracts between Motorola and the
    respective standard setting organizations.  Microsoft—as a user of 802.11 and H.264—was
11  entitled to enforce these contracts in court as a third-party beneficiary of these contracts.  [8]
12  Microsoft did not repudiate its rights to Motorola's commitments by initiating this breach of
    contract action against Motorola, [9] and Motorola's RAND licensing commitments do not
13  condition Motorola's obligations to grant licenses on RAND terms on Microsoft first applying
14  for a license and then negotiating in good faith.  [10]  Microsoft was entitled to file this lawsuit
15  to have the Court set reasonable royalties for Motorola's standard essential patents and to have a
16  jury determine whether or not Motorola had breached its RAND licensing contracts.  [11]

17         To decide whether Motorola's opening offers breached its RAND licensing
18  commitments, you must compare the amounts that Motorola demanded in those offers with the
    true RAND royalty.
19
20         In earlier proceedings in this case, the  Court determined the true RAND royalty for the
    use of Motorola's standard essential patents in Microsoft's products.
21
22     •   The RAND royalty that Microsoft should pay for a license to Motorola's H.264
           standard essential patent portfolio is 0.555 cents per unit for each Microsoft product
           that implements the H.264 standard.  This royalty is applicable to all Microsoft
23         products using the H.264 Standard.

24     •   The RAND royalty that Microsoft should pay for a license to Motorola's 802.11
           standard essential patent portfolio is 3.471 cents per unit for each product that
25

26
JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 14

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

implements the H.264 Standard.  This royalty is applicable to Microsoft Xbox products.  [12]

II.    **Additional Background on Technical Standards and Standard Setting Organizations**

A.      **Participation in Standard Setting Organizations**

Standard setting organizations, including IEEE and ITU, are voluntary membership organizations whose participants engage in the development of industry standards.  [13]  They play a significant role in the technology market by allowing companies to agree on common industry standards so that all compliant products will work together.  [14]  Standard setting organizations seek to promote widespread adoption of their standards.  [15]  Industry participants enjoy significant potential benefits to having their technology incorporated into a standard independent of any potential royalty income.  These other, non-income benefits include increased demand for the participants' own products that implement the standard, shorter development lead times because the participant will already have familiarity with standardized technology, and improved compatibility between a participant's products and other companies' products using the standard.  [16]

B.      **Standard Essential Patents**

As I explained above, using a standard frequently requires use of patented technology.  [17]  Thus, in order for a company to use the standard, it is necessary for that company to utilize technology that is covered by one or more patents, [18] even though much or even the majority of the technology used in any given standard is not patented by any party.  [19]  The engineers that develop industry standards typically do not know if the use of the technology they are considering implicates patents or not.  [20]

Patents that are essential to the standard (in that they must be practiced to implement the standard) are called "essential patents" or "standard essential patents," [21] and standard essential patents are sometimes abbreviated as "SEP's."  A given patent is "essential" to a standard if use of the standard requires infringement of the patent, even if acceptable alternatives to that patent could have been written into the standard.  [22]  Standard setting organizations define a patent as essential even if the patented technology would be used if the company's product used an optional part of the standard.  That is, the patent is "essential" even if it is used in a part of the standard that is optional.  [23]

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 15

The existence of patents essential to implementation of standards is a common problem in the world of such industry standards.  [24]  Outside the world of standards, the owner of a patent can normally refuse to let other companies make, use, or sell products that include its patented technology without permission.  To get permission, companies typically have to agree to a license, which may require the payment of a "licensing fee," which is sometimes called a "royalty" payment.

Generally speaking, the owner of the patent can charge whatever the market will bear. There are different rules in the world of standards because standards threaten to endow holders of standard essential patents with disproportionate market power.  When the standard becomes widely implemented, the holders of standard essential patents obtain substantial leverage to demand more than the true value of their specific patented technology.  [25]  This is so even if there were equally good or even better alternatives to that technology available when the original standard was adopted.  [26]  After the standard is widely implemented, switching to those alternatives is either no longer viable or would be unduly costly.  [27]  The ability of a holder of a standard essential patent to demand more than the independent value of its patented technology and to attempt to capture the value to implementers of the entire standard (rather than just its contribution to the standard) is referred to as "hold-up."  [28]  The threat of a hold-up increases as the industry standard becomes more widely implemented.  [29]  Hold-up can undermine the standard-setting process and threaten the adoption of valuable standards.  [30]  In addition to harming firms that are forced to pay higher royalties, hold-up may also harm consumers through higher prices or fewer choices.  [31]

Another problem with standard essential patents is called "royalty stacking," which occurs when those making products that use the standard have to pay excessive royalties to many different holders of standard essential patents.  [32]  Royalty stacking occurs with standards having many standard essential patents or with products that must comply with multiple standards.  [33]  In such scenarios, the large number of standard essential patents to which a manufacturer must take licenses can result in cumulative royalty payments that can make the product pricing unrealistic or undermine the standards.  [34]  Complex industry standards like the H.264 and 802.11 standards can require the use of hundreds or thousands of standard essential patents held by dozens of patent holders.  [35]  If all the standard essential patent

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 16

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   holders sought unreasonable royalties, those royalties might "stack" and the total royalty

2   payments could rapidly make implementing the standard cost prohibitive, and could even exceed

3   the entire market price of the product, if patent holders exercised their power to extract hold-up

    royalties.  [36]  Today's complex technology products may need to comply with dozens and

4   dozens of different standards.  [37]  This multiplies the number of standard essential patents and

5   patent holders that the maker of such products may have to deal with and compounds the risk of

6   hold-up.  [38]  Hold-up by an owner of standard essential patents harms not only the party being

    held-up and consumers, but also harms other firms that have invested technology in the standard.

7   [39]

8         C.      RAND Licensing Commitments

9         In order to reduce the likelihood that owners of standard essential patents will abuse their

10  market power, many standard setting organizations, including the standard setting organizations

11  relevant to this case, have adopted rules relating to the disclosure and licensing of essential

12  patents.  [40]  The policies often require or encourage members of the standards setting

    organizations to agree to license their standard essential patents on "reasonable and non-

13  discriminatory" or RAND terms to anyone who requests a license.  [41]

14        The RAND licensing commitment is intended to prevent standard essential patent owners

15  from extorting their competitors or engaging in other conduct that would stop parties from

16  entering the marketplace for standard-compliant products.  [42]  As such, RAND licensing is

17  informed by two concerns: eliminating patent hold-up and preventing royalty stacking.  [43]

18  RAND licensing commitments address the hold-up problem because a RAND licensing

    commitment limits a patent holder to a reasonable royalty on the economic value of its patented

19  technology itself, and not the value associated with incorporation of the patented technology into

20  the standard.  [44]  Rewarding the standard essential patent owner with any of the value of the

21  standard itself would constitute hold-up value and would be contrary to the purpose behind the

22  RAND licensing commitment.  [45]  There is substantial value in the agreed standard itself apart

    from any contribution of a particular patented technology to the standard; the RAND licensing

23  commitment exists so that standard essential patent holders cannot demand more than they

24  contribute.  [46]

25

26

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1  RAND licensing commitments address the stacking problem by addressing the need to

2  ensure that the total royalties for all standard essential patents within any standard are

3  reasonable.  [47]  For example, a royalty that implicates stacking concerns — such as a royalty
   that, if adopted by all standard essential patent holders, would result in total royalty payments

4  that exceed the total product price — would not be a RAND royalty.  [48]

5  **D.      The Standards at Issue**

6  As I explained above, this case concerns two standards: the 802.11 standard and the

7  H.264 standard.  [49]  The 802.11 standard is a wireless communication standard that has been
   developed over a period of years by IEEE.  [50]  As I mentioned earlier, you may have heard of

8  the 802.11 standard by its more common name of "WiFi."  [51]

9

10  The H.264 standard is a video coding compression technology standard.  [52]  Popular
    examples of technologies that use the H.264 video compression standard include Blu-Ray

11  movies and YouTube videos.  [53]  Two different standard setting organizations were involved

12  in developing the H.264 standard, [54] but for simplicity, I will refer to H.264's standard setting

13  organizations as just "ITU."

14  **1.      IEEE and the 802.11 Wireless Networking Standard**

15  The 802.11 standard allows companies to build products for wireless local area
    networking of computers and other electronic devices.  [55]  For example, if you have a home

16  "WiFi" network, your laptop computer would use the 802.11 standard to connect to that network

17  and, through it, to the Internet.  Currently, the 802.11 standard is the most widely used and

18  universally accepted wireless communications standard for ordinary consumer and business use.

19  [56]  Most homes rely on 802.11 networks because 802.11 networks do not require the user to

20  place cables all over the home.  [57]

21  A group within IEEE called the 802.11 Working Group spent seven years developing the

22  first draft of the 802.11 standard.  [58]  The 802.11 Working Group issued its first standard,
    called "IEEE 802.11," in 1997.  [59]  Subsequently, the 802.11 Working Group issued

23  amendments to the original standard, including amendments for higher speeds, improved

24  security, quality of service, higher throughput, and other areas.  [60]

25

26
    JOINT STATEMENT OF DISPUTED JURY
    INSTRUCTIONS - 18

1    The development of the 802.11 standard involved the participation of many entities: over

2    1,000 companies participated in the standard-setting process.  [61]  The 802.11 Working Group

3    has met over 130 times since its inception and has formed over 30 different task groups to

     develop amendments to the standard.  [62]

4    The 802.11 standard today is immense and complex; the current version is 2,793 pages

5    long.  [63]

6                    2.    **ITU and the H.264 Video Compression Standard**

7    H.264 is currently the most widely used video coding and compression format.  [64]

8    Other video coding standards exist, such as, for example, a standard called VC-1 which is used,

9    for example, for certain video content on the Xbox Live video service, and a standard called

10   MPEG-2 which is used, for example, to play rented or purchased DVDs.  [65]

11   Video coding and compression is the process of transforming video into compressed files

     that require less data storage or bandwidth to transmit than the original uncompressed video.

12   [66]  Video compression is important because modern digital video, particularly high definition

13   video, requires immense amounts of data storage.  [67]  Typically, digital video will first be

14   encoded.  Encoding compresses the original, uncompressed video by turning it into a smaller file

15   or stream that requires less storage capacity and less bandwidth to transmit.  [68]  Later, such as

16   when a consumer is ready to watch a video, the video will be decoded by hardware or software

17   on the device that is being used to watch the video.  Decoding turns an encoded, smaller file back

     into an approximation of the original, uncompressed video.  [69]

18   H.264 is a large and technically complex standard.  [70]  Development of the H.264

19   standard began in January 1998, [71] and the H.264 standard was ultimately adopted in May

20   2003.  [72]  The H.264 standard resulted from the contributions of roughly 170 entities that

21   submitted over 2,300 documents to be considered for inclusion in the standard.  [73]

22        E.    **Motorola's RAND Licensing Commitments to ITU and IEEE**

23   As I explained earlier, many standard setting organizations have adopted rules relating to

     the disclosure and licensing of standard essential patents to address the problems of patent hold-

24   up and royalty stacking.  I will now explain the rules that the IEEE and ITU adopted and the

25   RAND licensing commitments that Motorola made to the IEEE and ITU.

26
     JOINT STATEMENT OF DISPUTED JURY
     INSTRUCTIONS - 19

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1.      **ITU Policies and Motorola's RAND Licensing Commitments to ITU**

     a.      **ITU Policies**

The ITU maintains a "Common Patent Policy," which constitutes the "code of practice" regarding patents covering subject matter in the H.264 standard, [74] and "Guidelines for Implementation of the Common Patent Policy." [75]  The ITU Common Patent Policy requires that a patent embodied fully or partly in the H.264 standard must be accessible to everybody without undue constraints.  [76]

The Guidelines for the Common Patent Policy encourage companies owning patents for their proposed contributions to the standard to disclose those patents to the standard setting organization as early as possible in the standards development process.  [77]  Once a patent holder has disclosed a potentially essential patent or patents, the ITU will seek a commitment from the patent-holder with respect to licensing of its patent, using a standardized intellectual property rights disclosure form.  [78]  Even if a party does not want to identify specific patents, it is expected to at least make a "blanket" disclosure and commitment directed to any patents that it owns that may turn out to be essential to practice the standard.  [79]  As I will explain further, in the absence of a commitment to licensing any patents that may be necessary to use the standard, the ITU will not include a party's proposed technical contribution in the standard.  [80]

In the end, the ITU standards technology must be accessible to everyone who desires to implement it.  [81]  Its policies make clear that a standard essential patent holder must grant licenses on RAND terms.  [82]

This licensing commitment is often referred to as a "Letter of Assurance," or an "LOA" for short.  [83]  The ITU Letters of Assurance provides three options to a standard essential patent holder:  [84]

(1) First, the patent holder may commit to license its standard essential patent(s) on a royalty-free basis;

(2) Second, the patent holder may commit to license its standard essential patent(s) on RAND terms and conditions; or

(3) Third, the standard essential patent holder may decline to make any licensing commitment.

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 20

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    However, if the owner of a declared standard essential patent chooses the third option — that is,

2    declines to make a RAND or royalty-free licensing commitment — the Common Patent Policy

     indicates that the approved standard shall <u>not</u> include provisions depending on the patent.  [85]

3    In other words, either the patented technology must be free, or the licensing terms and conditions

4    must be reasonable.  Otherwise, the ITU will not incorporate the technology in the standard but

5    will find another way to achieve the desired result.

6                           b.      **Motorola's Letters of Assurance**

7            Motorola submitted several Letters of Assurance to the ITU in connection with the

8    development of the H.264 standard.  [86]  All of Motorola's Letters of Assurance stated that it

     would grant licenses to an unrestricted number of applicants on a worldwide, non-discriminatory

9    basis and on reasonable terms and conditions conditioned on reciprocity.  [87]  When a patent

10   holder has conditioned its licensing commitment on reciprocity, the patent holder is only

11   required to license any prospective licensee if that prospective licensee will commit to license its

12   own standard essential patents for the same standard, on no more than reasonable and non-

13   discriminatory terms and conditions.  [88]

14           2.      **IEEE Policies and Motorola's RAND Licensing Commitments to the
                     IEEE**

15                          a.      **IEEE Policies**

16           The intellectual property policy of the IEEE is set forth in various documents which I will

17   collectively refer to as the "IEEE Intellectual Property Rights Policy."  [89]  The IEEE

18   Intellectual Property Rights Policy provides that IEEE standards may include standard essential

     patents, and that standard essential patents may include patents necessary to create a compliant

19   implementation of either mandatory or optional portions of the 802.11 standard.  [90]

20           The IEEE Intellectual Property Rights Policy indicates that "[i]f the IEEE receives notice

21   that a [Proposed] IEEE Standard may require the use of a potential [standard essential patent],

22   the IEEE shall request a licensing assurance, on the IEEE Standards Board approved Letter of

23   Assurance form, from the patent holder or patent applicant."  [91]  This Letter of Assurance form

     is the IEEE version of the Letter of Assurance I described earlier in connection with the ITU.

24   [92]  The IEEE does not require that specific patents be identified; instead it only requires that

25

26   JOINT STATEMENT OF DISPUTED JURY
     INSTRUCTIONS - 21

1  the contributing patent holder make the licensing commitment for all patents that may potentially

2  be essential.  [93]

3  The IEEE Letter of Assurance form allows holders of standard essential patents to

provide either "[a] general disclaimer to the effect that the Submitter without conditions will not

4  enforce any present or future [standard essential patents]" or "[a] statement that a license for a

5  compliant implementation of the standard will be made available to an unrestricted number of

6  applicants on a worldwide basis without compensation or under reasonable rates, with reasonable

7  terms and conditions that are demonstrably free of any unfair discrimination."  [94]  The last

option constitutes the IEEE's RAND licensing commitment for standard essential patents.  [95]

8  The IEEE has not included technology into a standard unless it obtained such a Letter of

9  Assurance from the standard essential patent holder.  [96]  In short, as in the case of the ITU, any

10  standard essential patents must be licensed either for free or for a reasonable royalty.  Otherwise,

11  the technology will not be used and the IEEE will find another way to accomplish the desired

result.

12

13  These policies make clear that a standard essential patent holder must grant licenses on

RAND terms.  [97]  Moreover, at the time that Motorola submitted its initial Letters of

14  Assurance regarding the 802.11 standard, the IEEE Intellectual Property Rights Policy also

15  provided that holders of standard essential patents "shall submit to the Patent Committee of the

16  IEEE Standards Board, prior to any significant drafting of the standard, a draft of their license

17  that assures that the technology will be made available at nominal competitive costs to all who

seek to use it for compliance with an incorporated IEEE standard."  [98]  The requirement to

18  license at nominal competitive costs was part of the RAND licensing commitment at the time of

19  Motorola's first commitment to license its 802.11 standard essential patents on RAND terms.

20  [99]

21  b.     **Motorola's Letters of Assurance**

22  Motorola submitted numerous Letters of Assurance to the IEEE in connection with the

23  802.11 standard.  [100]  With these Letters of Assurance, Motorola agreed to grant, on

24  reasonable terms and conditions, licenses to their patents that are essential to the 802.11 standard

on a worldwide and non-discriminatory basis.  [101]  In addition, the requirement to license at

25

26  JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 22

1   nominal competitive costs was part of the RAND licensing commitment at the time Motorola

2   first committed to license its 802.11 standard essential patents on RAND terms.  [102]

### 3.      Motorola's RAND Licensing Commitments

3

4   This Court has determined that Motorola's Letters of Assurance to both the IEEE and the

5   ITU are binding contractual commitments from Motorola to license Motorola's essential patents

6   on RAND terms.  [103]  This court has also determined that Microsoft is a third-party

7   beneficiary of Motorola's contractual commitments to the IEEE and the ITU because Microsoft

8   is a member of the IEEE and the ITU and Microsoft is also a prospective user of both the 802.11

9   standard and the H.264 standards.  [104]  A third party beneficiary is a person or company who,

10  though not a party to a contract, will nevertheless receive direct benefits from the contract.  [105]

11  As a third-party beneficiary, Microsoft is permitted to enforce the RAND commitments,

12  and to seek this Court's assistance in enforcing Motorola's contractual commitments to either the

13  IEEE or the ITU to license Motorola's essential patents on RAND terms.  [106]  Neither the

14  IEEE nor the ITU specifies exactly what RAND royalties or other reasonable and non-

15  discriminatory licensing terms are.  [107]  Both the IEEE and ITU require that any negotiations

16  over a RAND license occur outside the standards setting organization; in any such negotiation,

17  however, the standard essential patent holder is contractually obligated to license its standard

18  essential patents on RAND terms which necessarily must avoid hold-up and stacking.  [108]

### F.      H.264 and 802.11 Standard Essential Patents

19  Motorola owns or controls a number of patents that it has alleged to be essential to either

20  the 802.11 or H.264 standards, and are accordingly subject to its RAND licensing contractual

21  commitments to the IEEE or ITU.  The Court has made certain findings related to these patents.

### 1.      H.264 Standard Essential Patents

22  H.264 is a large and technically complex standard, [109] resulting from the contributions

23  of roughly 170 entities that submitted over 2,300 documents, including technical proposals.

24  [110]  The largest technology contributor to the H.264 standard was a company called Telenor

25  Group, which contributed many of the core innovations of H.264 and submitted the proposal that

26  became the basis of the first draft of the H.264 standard.  [111]  Telenor did not seek patents on

27  its contributions to the H.264 standard.  [112]  Before Motorola became involved, other

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 23

1   companies and research institutes had already contributed much of the innovation associated
2   with the H.264 standard.  [113]  Motorola did not provide the foundational technology, but
    instead built upon already-existing technology.  [114]

3       Some of these companies did obtain patents on their contributions to the H.264 standard.
4   There are at least 2,500 patents throughout the world that are essential to the H.264 standard.
5   [115]  Of those 2,500 patents, over 360 are United States patents.  [116]

6       Approximately 33 United States companies have enumerated their H.264 standard
7   essential patents.  [117]  All of these patents are subject to the RAND commitment.  In addition,
8   nineteen additional companies have provided "blanket" Letters of Assurance to the ITU
9   obligating that their patents be licensed on RAND terms and conditions.  [118]  A "blanket"
    Letter of Assurance means that the patent holder makes a RAND licensing commitment for all
10  its patents but does not list out which of its patents are essential, meaning that there is no way to
11  count the number of standard essential patents contributed by these companies to the H.264
12  standard.  [119]

13      Motorola's H.264 standard essential patent portfolio constitutes only a sliver of the
14  overall technology incorporated in the H.264 standard.  [120]  Motorola did not provide the
    foundational technology, but instead built upon already-existing technology.  [121]  Motorola's
15  H.264 standard essential patent portfolio did not provide a significant contribution to the H.264
16  standard.  [122]

17          2.    **802.11 Standard Essential Patents**

18      The development of the 802.11 standard dealt primarily with the implementation of well-
19  known technologies.  [123]  The majority of the technologies available to and/or adopted by the
20  802.11 drafters were in the "public domain," which means they are not covered by patents.
    [124]  Public domain technology that was incorporated into the 802.11 standard was based on a
21  long history of research and development done by companies, government agencies, and
22  academic institutions.  [125]  These prior technologies included the central elements of the
23  802.11 standard.  [126]

24      Since 1994, approximately 92 companies have identified — in Letters of Assurance —
25  over 350 patents and 30 patent applications as essential to the 802.11 standard.  [127]  In

26

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1  addition, approximately 59 companies have filed "blanket" Letters of Assurance for the 802.11

2  standard.  [128]  To the extent that the 802.11 standard is not simply public domain, there are
   possibly thousands of patents essential to the 802.11 standard.  [129]

3
       Motorola's 802.11 standard essential patent portfolio provides only minimal contribution
4  to the 802.11 standard.  [130]  Motorola's contributions constitute only a sliver of the overall

5  technology incorporated into the 802.11 standard.  [131]

6      In 2003, at Motorola's request, a company called InteCap performed an evaluation of

7  certain Motorola 802.11 standard essential patents to provide Motorola with a licensing

8  recommendation for all of Motorola's 802.11 standard essential patents.  [132]  InteCap

9  proposed that Motorola should follow a licensing model in which the royalties Motorola charged

   to companies that made 802.11-enabled consumer products would amount to 0.1% of the price of
10
   the consumer products.  This royalty would have been applied to products embedded with 802.11
11 functionality, including PCs, laptops, and game consoles, such as Xbox.  [133]  However,

12 InteCap had overestimated the importance of Motorola's 802.11 standard essential portfolio to

   the 802.11 standard.  [134]  Thus, parties to a negotiation would adjust the royalty produced by
13
   the InteCap evaluation downward.  [135]
14
           3.  **Patent pools**
15
       Patent pools are created by standard essential patent owners with the purpose of
16 collecting their standard essential patents and licensing those patents to third-party licensees in a

17 single licensing package.  [136]  Participation in a pool is voluntary, and a standard essential

18 patent holder can choose to license its standard essential patents outside of a pool.  [137]  Patent

19 pools generally distribute royalties on a per patent basis as part of a patent-counting system.

   This structure generally provides equal compensation for any given patent in the pool without
20
   regard to the technology of each patent, its merit, its importance, or its contribution to the
21 standard.  [138]  Pools generally set a fee so participants do not need to negotiate with individual

22 prospective licensees.  [139]

23      There exist patent pools directed to both the 802.11 and H.264 standards.  As will be

24 explained below, Motorola is not a member of either of these patent pools.  However, these pools

25 may be pertinent to the case because parties attempting to reach an agreement regarding

26
JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 25

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   Motorola's standard essential patents would consider the overall licensing landscape, and

2   negotiations would not have been conducted in a vacuum.  [140]  The parties would consider

3   other standard essential patent holders and the royalty that each of these patent holders might

    seek.  [141]

4                          a.      **MPEG LA H.264 Pool**

5           There exists a patent pool for licensing H.264 standard essential patents called MPEG

6   LA.  [142]  Microsoft, Motorola, and other companies participated in efforts to form the MPEG

7   LA H.264 patent pool, and meetings concerning its formation occurred before widespread

8   implementation of the H.264 standard.  [143]  The MPEG LA meetings eventually led to a

    consensus on royalties in the fall of 2003.  Motorola approved of the announced royalties and

9   royalty caps.  [144]  But Motorola ultimately decided not to join the MPEG LA H.264 pool.

10  [145]

11          If Motorola and the holders of other readily identifiable H.264 standard essential patents

12  were all added to the pool with its current royalty structure, Motorola would receive royalties of

13  0.185 cents per unit from Microsoft.  [146]  Motorola would receive additional value in having

14  access to the other patents in the MPEG LA patent pool, which – when added to the royalties it

    would receive from Microsoft – would result in a total value to Motorola of 0.555 cents per unit.

15          The MPEG LA pool royalty is an indicator of a reasonable and non-discriminatory

16  royalty for Motorola's H.264 patent portfolio.  [147]

17                         b.      **VIA Licensing 802.11 Pool**

18          An entity called Via Licensing formed an 802.11-essential patent pool between 2003 and

19  2005.  [148]  Had Motorola participated in the Via Licensing 802.11 pool, Motorola's royalty

20  payments from Microsoft would have been 2.038 cents per unit.  [149]  Motorola would receive

21  additional value in having access to the other patents in the Via Licensing Pool, which – when

    added to the royalties it would receive from Microsoft – would result in a total value to Motorola

22  of 6.114 cents per unit.

23          The Via Licensing 802.11 patent pool is an indicator of a RAND royalty for Motorola's

24  standard essential patents.  Parties in a hypothetical negotiation would consider the Via

25  Licensing 802.11 patent pool in fashioning a RAND royalty.  But because Motorola's relevant

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 26

802.11 standard essential patents provide little value to the 802.11 standard, parties acting reasonably during a negotiation would conclude that the Via Licensing royalties are likely higher than an appropriate RAND royalty for Motorola's 802.11 standard essential patent portfolio. [150]

While the Via Licensing 802.11 patent pool was being formed, Motorola submitted a patent for evaluation to Via Licensing for potential inclusion in the pool.  Via Licensing's independent evaluator determined that the patent Motorola submitted was not essential to the 802.11 standard, so Motorola was unable to participate in the discussions which led to the setting of the Via Licensing 802.11 patent pool royalties.  [151]

### G.    Microsoft's Products

I will now provide you with background on Microsoft's products, including the extent to which Motorola's patents essential to the H.264 and 802.11 standards apply to Microsoft's products.

#### 1.    H.264

The primary Microsoft products at issue in this case that use the H.264 standard are Windows and Xbox.

##### a.    Windows

Windows is an operating system for computers.  [152]  With each version of Windows, Microsoft adds thousands of features which typically build on the capabilities of previous releases.  [153]  For example, the new features of Windows 7 are described in two voluminous books.  [154]  Video encoding and decoding is only a tiny part of what the Windows software does and Windows supports many other video compression standards in addition to the H.264 standard.  [155]  Motorola's H.264 standard essential patents provide only minor importance to the overall functionality of Microsoft's Windows product.  [156]

##### b.    Xbox

Turning to Xbox, the biggest use of Xbox is to play single player video games.  [157]  Xbox games never contain H.264 video content.  [158]  Xbox can be used, via Xbox Live, to access video from sources such as Hulu and Netflix.  [159]  However, many of these third-party sources do not use H.264 and instead use a different video compression standard.  [160]  Xbox

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 27

can be used to play rented or purchased DVDs, but DVDs do not use the H.264 standard.  [161]
Motorola's H.264 standard essential patents provide only minor importance to the overall
functionality of Microsoft's Xbox product.  [162]  Parties to any negotiation concerning
Motorola's H.264 SEPs would have understood this.  [163]

2.  **802.11**

Turning now to the 802.11 standard, the only Microsoft product at issue in this trial is
Xbox.  [164]  There are two versions of Xbox that are pertinent: Xbox 360s [165] and Xbox One.
[166]  Xbox 360s and Xbox One can be connected to network by means of a WiFi wireless
connection, and therefore both support 802.11.  [167]  However, every Xbox can alternatively be
connected to the Internet using a wired connection rather than a wireless connection.  [168]

**H.    RAND Royalty Determination and Parties' Claims and Defenses**

To decide whether Motorola's opening offers breached its RAND licensing
commitments, you must compare them with the true RAND royalty.

In earlier proceedings in this case, this Court made a determination of RAND royalties
for Motorola's 802.11 and H.264 standard essential patents as used in Microsoft products.  The
RAND royalty that the Court determined Microsoft should pay for a license to Motorola's H.264
standard essential patents applicable to Windows and Xbox products is 0.555 cents per unit.
[169]

The RAND royalty that the Court determined Microsoft should pay for a license to
Motorola's 802.11 standard essential patent portfolio for its Xbox products is 3.471 cents per
unit.  [170]

In its October 2010 letters, Motorola proposed royalties for use of its 802.11 and H.264
portfolios of 2.25% of the net selling price of Xbox and of end products that include Windows
software.  [171]

In prior proceedings, the Court determined that there were no prior license agreements
entered into by Motorola that supported a royalty of 2.25% for the 802.11 or H.264 portfolios.
[172]  Motorola had entered into license agreements covering its patents essential to cellphone
standards, required for mobile phones.  But the Court found that Motorola's cellphone portfolio
is extremely strong and does not reflect the value of its 802.11 or H.264 patent portfolios.  [173]

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 28

Microsoft claims that Motorola breached its binding contractual commitments to license Motorola's patents essential to H.264 and 802.11 on RAND terms both through its October 2010 letters and through its subsequent conduct, including: filing lawsuits and seeking injunctive relief based on alleged 802.11 and/or H.264 standard-essential patents in the ITC, United States district courts, and/or Germany, even after Microsoft had sought to have the RAND licensing dispute resolved in this Court; failing to offer a RAND license covering Motorola's 802.11 standard-essential patents to Microsoft's chip supplier, Marvell, but instead offering Marvell a license that was not RAND and was expressly discriminatory in excluding Marvell products sold to Microsoft from the scope of the license Motorola proposed; and by violating the covenant of good faith and fair dealing implied in every contract.

Microsoft has the burden of proving its claim.  You will be asked to decide whether or not Motorola breached its binding contractual commitments.

Motorola denies that it breached its binding contractual commitments.


**Authority in support of instruction**:

**[1]** *See* Dkt. 673, Findings of Fact and Conclusions of Law ("Dkt. 673"), at ¶¶ 1-7; **[2]** Dkt. 188 at p. 2; **[3]** Dkt. 673 at ¶ 11; **[4]** Dkt. 673 at p. 3; **[5]** Dkt. 673 at 3-4; **[6]** Dkt. 673 at 4-5; **[7]** Dkt. 673 at 4-5; **[8]** *See, e.g.*, Dkt. 335 at 6; **[9]** Dkt. No. 188 at 15-16; **[10]** Dkt. 335 at 19; Dkt. No. 465 at 9; **[11]** Dkt. 188 at 15-16; Dkt. 335 at 20-21; **[12]** Dkt. 673 at 207; **[13]** Dkt. 673 at ¶ 10; **[14]** Dkt. 673 at ¶ 11; **[15]** Dkt. 673 at ¶ 13; **[16]** Dkt. 673 at ¶ 15; **[17]** Dkt. 673 at ¶ 23; **[18]** Dkt. 673 at p. 3; **[19]** Dkt. 673 at ¶ 20; **[20]** Dkt. 673 at ¶ 17; **[21]** Dkt. 673 at p. 3; **[22]** Dkt. 673 at ¶ 53; **[23]** Dkt. 673 at ¶ 54; **[24]** Dkt. 673 at p. 3; **[25]** Dkt. 673 at ¶ 52; **[26]** Dkt. 673 at ¶ 52; **[27]** Dkt. 673 at ¶ 52; **[28]** Dkt. 673 at ¶ 55; **[29]** Dkt. 673 at ¶ 56; **[30]** Dkt. 673 at ¶ 57; **[31]** Dkt. 673 at ¶ 58; **[32]** Dkt. 673 at ¶ 65; **[33]** Dkt. 673 at ¶ 64; **[34]** Dkt. 673 at ¶¶ 64, 456; **[35]** Dkt. 673 at ¶ 62; **[36]** Dkt. 673 at ¶456; **[37]** Dkt. 673 at ¶¶ 62-63; **[38]** Dkt. 673 at ¶ 64; **[39]** Dkt. 673 at ¶ 59; **[40]** Dkt. 673 at ¶ 25; **[41]** Dkt. 673 at ¶ 25; **[42]** Dkt. 673 at ¶¶ 25, 60-61; **[43]** Dkt. 673 at ¶¶ 538, 60-61; **[44]** Dkt. 673 at ¶¶ 74, 109; **[45]** Dkt. 673 at ¶ 109; **[46]** Dkt. 673 at ¶¶ 104, 107; **[47]** Dkt. 673 at ¶ 66; **[48]** Dkt. 673 at ¶ 456; **[49]** Dkt. 673 at ¶ 16; **[50]** Dkt. 673 at ¶ 16; **[51]** Dkt. 673 at p. 3; **[52]** Dkt. 673 at ¶ 16; **[53]** Dkt. 673 at ¶¶ 285, 298; **[54]** Dkt. 673 at ¶

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

16; **[55]** Dkt. 673 at ¶ 308; **[56]** Dkt. 673 at ¶ 323; **[57]** Dkt. 673 at ¶ 323; **[58]** Dkt. 673 at ¶ 315; **[59]** Dkt. 673 at ¶ 316; **[60]** Dkt. 673 at ¶ 316; **[61]** Dkt. 673 at ¶ 317; **[62]** Dkt. 673 at ¶ 317; **[63]** Dkt. 673 at ¶ 318; **[64]** Dkt. 673 at ¶ 133; **[65]** Dkt. 673 at ¶ 291; **[66]** Dkt. 673 at ¶ 114; **[67]** Dkt. 673 at ¶ 115; **[68]** Dkt. 673 at ¶ 116; **[69]** Dkt. 673 at ¶ 116; **[70]** Dkt. 673 at ¶ 154; **[71]** Dkt. 673 at ¶¶ 135, 129; **[72]** Dkt. 673 at ¶ 129; **[73]** Dkt. 673 at ¶ 154; **[74]** Dkt. 673 at ¶ 26; **[75]** Dkt. 673 at ¶ 28; **[76]** Dkt. 673 at ¶ 27; **[77]** Dkt. 673 at ¶ 28; **[78]** Dkt. 673 at ¶ 29; **[79]** Dkt. 673 at ¶¶ 29, 43; **[80]** Dkt. 673 at ¶ 31; **[81]** Dkt. 673 at ¶ 27; **[82]** Dkt. 188 at 14; **[83]** Dkt. 673 at ¶ 29; **[84]** Dkt. 673 at ¶ 30; **[85]** Dkt. 673 at ¶ 31; **[86]** Dkt. 673 at ¶ 35; **[87]** Dkt. 673 at ¶ 36; **[88]** Dkt. 673 at ¶ 34; **[89]** Dkt. 673 at ¶ 38; **[90]** Dkt. 673 at ¶ 39; **[91]** Dkt. 673 at ¶ 40; **[92]** Dkt. 673 at ¶ 40; **[93]** Dkt. 673 at ¶ 42; **[94]** Dkt. 673 at ¶ 41; **[95]** Dkt. 673 at ¶ 41; **[96]** Dkt. 335 at 12; **[97]** Dkt. 188 at 14; **[98]** Dkt. 673 at ¶ 47; **[99]** Dkt. 673 at ¶ 48; **[100]** Dkt. 673 at ¶ 44; **[101]** Dkt. 673 at ¶ 44; **[102]** Dkt. 673 at ¶ 48; **[103]** Dkt. 188 at 10; **[104]** Dkt. 335 at 6; **[105]** Dkt. 335 at 13; **[106]** Dkt. 335 at 14; **[107]** Dkt. 673 at ¶¶ 32, 45, 49-50; **[108]** Dkt. 673 at ¶ 110; **[109]** Dkt. 673 at ¶ 154; **[110]** Dkt. 673 at ¶ 154; **[111]** Dkt. 673 at ¶ 533; **[112]** Dkt. 673 at ¶ 533; **[113]** Dkt. 673 at ¶ 160; **[114]** Dkt. 673 at ¶ 531; **[115]** Dkt. 673 at ¶ 156; **[116]** Dkt. 673 at ¶ 534; **[117]** Dkt. 673 at ¶ 157 **[118]** Dkt. 673 at ¶ 535; **[119]** *See, e.g.*, Dkt. 673 at ¶¶ 29; 42-43 (in connection with IEEE); **[120]** Dkt. 673 at ¶ 533; **[121]** Dkt. 673 at ¶ 531; **[122]** Dkt. 673 at ¶ 536; **[123]** Dkt. 673 at ¶ 321; **[124]** Dkt. 673 at ¶ 321; **[125]** Dkt. 673 at ¶ 321; **[126]** Dkt. 673 at ¶ 321; **[127]** Dkt. 673 at ¶ 335; **[128]** Dkt. 673 at ¶ 335; **[129]** Dkt. 673 at ¶ 335;  *See also* Dkt. 673 at ¶ 573; **[130]** Dkt. 673 at ¶ 457, 575; **[131]** Dkt. 673 at ¶ 576; **[132]** Dkt. 673 at ¶¶ 591, 600; **[133]** Dkt. 673 at ¶¶ 592, 596; **[134]** Dkt. 673 at ¶ 610; **[135]** Dkt. 673 at ¶ 611; **[136]** Dkt. 673 at ¶ 462; **[137]** Dkt. 673 at ¶ 463; **[138]** Dkt. 673 at ¶ 465; **[139]** Dkt. 673 at ¶ 466; **[140]** Dkt. 673 at ¶ 112; **[141]** Dkt. 673 at ¶ 112, 539-540; **[142]** Dkt. 673 at p. 148; **[143]** Dkt. 673 at ¶¶ 470-471; **[144]** Dkt. 673 at ¶ 479; **[145]** Dkt. 673 at ¶ 487; **[146]** Dkt. 673 at ¶ 522 **[147]** Dkt. 673 at ¶ 515; **[148]** Dkt. 673 at ¶ 548; **[149]** Dkt. 673 at ¶ 571; **[150]** Dkt. 673 at ¶ 577; **[151]** Dkt. 673 at ¶ 551; **[152]** Dkt. 673 at ¶ 281; **[153]** Dkt. 673 at ¶ 281; **[154]** Dkt. 673 at ¶ 281; **[155]** Dkt. 673 at ¶ 281; **[156]** Dkt. 673 at ¶ 289; **[157]** Dkt. 673 at ¶ 290; **[158]** Dkt. 673 at ¶ 290; **[159]** Dkt. 673 at ¶ 291; **[160]** Dkt. 673 at ¶ 291; **[161]** Dkt. 673 at ¶ 292; **[162]** Dkt. 673 at ¶ 299; **[163]** Dkt. 673 at ¶ 301; **[164]** Dkt. 673 at ¶¶ 347, 338; **[165]** Dkt. 673 at ¶ 348 **[166]** Dkt. 673 at ¶ 350, with name of console updated based on recent developments; **[167]** Dkt. 673 at ¶ 350; **[168]** Dkt. 673 at ¶ 349; **[169]** Dkt. 673 at p. 207; **[170]** Dkt. 673 at p. 207; **[171]** Dkt. 673

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   at pp. 4-5; **[172]** Dkt. 673 at ¶¶ 415-421 (Vtech); ¶¶ 425-434 (RIM); ¶¶ 440-443 (Proxim); ¶¶

2   445-449 (Hand Held Products); ¶¶ 451-453 (Terabeam); **[173]** Dkt. 673 at ¶¶ 426-430

3

4   **Motorola's Response**:  Microsoft's Preliminary Instruction No. 2 is inappropriate as it seeks to

5   impute the entire reasoning of the prior order of the Court to the jury in violation of Motorola's

6   Seventh Amendment right to trial by jury.  The jury should not receive introductory language

7   explaining that the instruction is a result of a ruling by the Court, which could be prejudicial to

8   the parties and confuse the jury, leading the jury to believe that the Court already made a

9   decision on the issues on which the jury must decide.  Moreover, the proposed instruction goes

10  far beyond the "two discrete issues" the Court said it needed to resolve in the prior ruling in

11  order to assist the jury: "(1) a RAND royalty range for Motorola's standard essential patents; and

12  (2) a RAND royalty point for Motorola's standard essential patents."  (Dkt. 465, 22.)

13       Microsoft's proposed instruction also misinterprets the rulings in this case and/or the

14  nature of Motorola's obligations.  It is replete with misstatements regarding Motorola's

15  obligations under the contracts at issue.  It also includes information irrelevant to whether

16  Motorola breached a contract: details on the standards at issue, the relevant SSOs, Microsoft's

17  products, the alleged complexity of the standards at issue or the existence of other essential

18  patent holders.  These issues are irrelevant to whether Motorola breached the duty of good faith

19  and fair dealing by its actions in 2010 and 2011.  Motorola intends to file a motion *in limine* on

20  the admissibility of the Court's April 19, 2013 Findings of Fact and Conclusions of Law, and

21  incorporates that motion herein by reference.

22       Finally, this instruction is inconsistnet with Ninth Circuit Model 1.2, which is supposed

23  to be a "brief summary of the positions of the parties." Microsoft's 18-page long instruction

24  consisting of attorney argument and irrelevant information goes beyond merely the "positions of

25

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 31

1    the parties."  An instruction of this length is likely to confuse and mislead the jury.  Moreover,

2    Microsoft's Proposed Preliminary Instruction No. 2 fails to include Motorola's affirmative

3    defenses.  This Court should adopt Motorola's Proposed Preliminary Instruction No. 2, which is

4    consistent with the language of Ninth Circuit Model 1.2.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 32

1
2
3

**Preliminary Instruction No. 2.**

**(Summary of Claims and Defenses | MOTOROLA'S alternative)**

4       To help you follow the evidence, I will give you a brief summary of the positions of the
5   parties:

6       This is a breach of contract case between Microsoft Corporation and Motorola, Inc.,
7   Motorola Mobility, Inc., and General Instrument Corporation.  When this lawsuit was initiated,
8   Motorola, Inc. had as subsidiaries Motorola Mobility, Motorola Solutions, and General
9   Instrument.  After this lawsuit was initiated, Motorola, Inc. changed its corporate name to
10  Motorola Solutions, and Motorola Mobility and General Instrument were spun off as separate
11  companies.  You may also hear or see some evidence referring to a company called Symbol
12  Technologies, Inc.; Symbol was acquired by Motorola, Inc., in 2007, is now a wholly-owned
    subsidiary of Motorola Solutions.  I will refer to all of these companies collectively as
    "Motorola."

13      Microsoft's claims arise out of commitments that the Motorola  entities made to two
14  international standard-setting organizations, the Institute of Electrical Electronics Engineers,
15  which is called "I-triple-E," and the International Telecommunications Union, which will be
16  referred to as "ITU."  These organizations create standards for use in designing and
    manufacturing technology products.  This case involves two standards: an IEEE wireless local
17  area network standard called the 802.11 standard, and an ITU advanced video coding technology
18  standard called the H.264 standard.  Both of these standards incorporate patented technology.
19  Thus, for a company to practice the standard, it is necessary for that company to utilize
20  technology that is covered by one or more patents.  Patents that are essential to the standard (in
    that they must be practiced to accomplish the standard) are known as standard essential patents,
21  or SEPs.  Standard setting organizations seek commitments from the owners of SEPs to license
22  their patents to users of the standard on reasonable and non-discriminatory terms, which is
23  referred to as RAND.  The various Motorola entities own patents that are essential to the 802.11
24  and H.264 standards and committed to license them on RAND terms.  The IEEE and ITU do not
25  define what RAND licensing terms are.

26
JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 33

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

In this case, Microsoft claims that Motorola breached a contract between Motorola and the IEEE, and breached a second contract between Motorola and the ITU.  Microsoft is a third-party beneficiary of those contracts.  Microsoft alleges that each of the Motorola entities breached a contract with the IEEE by the following actions:

— sending a letter on October 21, 2010 offering to license Motorola's 802.11 standard essential patents on RAND terms;

— filing lawsuits and seeking injunctive relief based on 802.11 standard-essential patents in the International Trade Commission and United States district courts;

— by having not executed a license agreement covering their 802.11 standard-essential patents with Marvell, a third party to this action; and/or

— by failing to comply with the implied covenant of good faith and fair dealing.

Microsoft alleges that each of the Motorola entities breached  a contract with the ITU by the following actions:

— sending a letter on October 29, 2010 offering to license Motorola's H.264 standard essential patents on RAND terms;

— filing lawsuits and seeking injunctive relief based on H.264 standard-essential patents in the International Trade Commission, United States district courts, and/or Germany; and/or

— by failing to comply with the implied covenant of good faith and fair dealing.

Microsoft has the burden of proving these claims.

Motorola denies that it failed to license its SEPs to Microsoft on RAND terms, that any of its conduct in this case constituted a breach of its RAND commitments, and that any of its conduct in this case caused Microsoft damage.

Motorola also contends that this dispute is not ripe for decision in this Court, that Microsoft came to court with unclean hands, and that Microsoft has not reasonably mitigated its damages.

Motorola has the burden of proof on these affirmative defenses.

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 34

1

2

3    **Authority in support of instruction**: Ninth Circuit Manual of Model Jury Instructions, Civil §

4    1.2 (2007) ("Ninth Circuit Model").  The background discussion regarding standard setting

organizations and Microsoft's claims is consistent with the Court's discussion of the factual

5    background in its April 19, 2013 Findings of Fact and Conclusions of Law (Dkt. 673, 3-4).

6    Motorola's inclusion of this factual background is not a concession that the April 19, 2013

7    Findings of Fact and Conclusions of Law are relevant evidence to the issues in the August 2013

8    breach of contract trial.

9

10   **Microsoft's Response**:  Motorola's proposal lacks information about the Court's prior

11   determinations without which the jury will not be able to meaningfully deliberate and lacks

12   factual background required for the jury to appreciate the issues.  This invites the jury to infer

13   facts and conclusions in conflict with the Court's prior rulings.

14          Courts commonly instruct juries about prior determinations.  *See, e.g.*, *Cataphora Inc. v.*

15   *Parker*, No. C09-5749 BZ, 2011 WL 6778792, *4 (N.D. Cal. 2011) (preliminary instructions

16   informed jury about prior rulings on existence of a valid contract).  Here, the Court stated the

17   jury would render its verdict based on legal and factual predicates decided by the Court.  *See,*

18   *e.g.*, Dkt. 465 at 9-11.  The jury must therefore be informed about the Court's determinations.

19   Motorola's proposal does not even instruct the jury about the RAND rate.  *Cf.* Dkt. 335 at 25-26

20

21   (stating that finder-of-fact would know "what in fact constitutes a RAND agreement").

22          The Court should also give the jury background about this case, including background on

23   the standards, the nature of Motorola's contributions to them, Motorola's RAND commitments,

24   summary of the patent landscape, and the extent to which Motorola's patents relate to

25   Microsoft's products, none of which are in Motorola's proposal.  That background will provide

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 35

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   the jury with context for the issues presented at trial.  Cramer Decl. Ex. A, _Manual for Complex_

2   _Litigation_ at § 12.432 ("Jurors can deal more effectively with the evidence in a lengthy trial if

3   they are provided with a factual and legal framework to give structure to what they see and

4   hear"); Cramer Decl. Ex. B, FJC's Benchbook at § 6.06 (preliminary instructions are to "give the

5   jury, briefly and in understandable language, information to make the trial more meaningful.")

6       Motorola's instruction is improper for additional reasons.  Its summary of Microsoft's

7   claim is improper, as explained in Microsoft's Response to Motorola's Proposed Final

8   Instruction No. 17 (p. 53), which uses the same language.  It also references improper affirmative

9   defenses.  _See_ Responses to Final Instruction Nos. 31 (p. 103), 33 (p. 109), and 34 (p. 112).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 36

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

2                    **Preliminary Instruction No. 3.**

3       **(Burden of Proof — Preponderance of the Evidence | MICROSOFT'S alternative)**

4              When a party has the burden of proof on any claim by a preponderance of the evidence, it

5      means you must be persuaded by the evidence that the claim is more probably true than not true.

6              You should base your decision on all of the evidence, regardless of which party presented

7      it.

8

9      <u>**Authority in support of instruction**</u>:  Ninth Circuit Model 1.3, modified to remove references

10     to "affirmative defense."  Microsoft removed references to "affirmative defense" for the reasons

       explained in its Microsoft's Responses to Motorola's Proposed Final Instruction No. 31 (p. 103)

11     (ripeness), Final Instruction No. 33 (p. 109) (unclean hands), and Final Instruction No. 34 (p.

12     112) (mitigation of damages).

13

14     <u>**Motorola's Response**</u>:  Because of the nature of the claims and defenses in this case, it is

15     preferable to use the Washington Pattern Jury Instruction relating to the burden of proof.

16     Motorola's Proposed Preliminary Instruction No. 3 (set forth below) is therefore based on the

17     Washington Pattern Jury Instructions and includes one sentence at the end that is from the

18     corresponding Ninth Circuit Model Jury Instruction.  This additional sentence provides

19     additional clarity on the equal weight to be given to evidence, regardless of its source.

20

21

22

23

24

25

26     JOINT STATEMENT OF DISPUTED JURY
       INSTRUCTIONS - 37

1

2                          **Preliminary Instruction No. 3.**

3        **(Burden of Proof — Preponderance of the Evidence | MOTOROLA'S alternative)**

4            When it is said that a party has the burden of proof on any proposition, or that any

5    proposition must be proved by a preponderance of the evidence, it means that you must be

6    persuaded, considering all the evidence in the case, that the proposition on which that party has

     the burden of proof is more probably true than not true.

7            <u>You should base your decision on all of the evidence, regardless of which party presented

8    it.</u>

9

10   <u>**Authority in support of instruction**</u>:  6 Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 21.01

11   (6th ed.) ("WPI"); <u>Ninth Circuit Manual of Model Jury Instructions, Civil, § 1.3 (2007)</u> ("Ninth

     Circuit Model").

12

13   **Microsoft's Response**:  The Court should adopt Microsoft's proposed alternative.  Motorola's

14   proposed instruction is based primarily on the Washington Pattern Jury Instructions.  However,

15   Local Rule 51(g) states that the Ninth Circuit Model should be used "wherever appropriate" and

16   that the Washington Pattern Jury Instructions should only be used where "the federal model

17   instructions are not applicable."  LR 51(g).  Microsoft's proposed instruction appropriately uses

18   the Ninth Circuit Model.

19

20           In addition, the Court should not adopt an instruction that discusses Motorola's alleged

21   affirmative defenses, none of which are proper.  *See* Microsoft's Responses to Motorola's

22   Proposed Final Instruction No. 31 (p. 103) (ripeness), Final Instruction No. 33 (p. 109) (unclean

23   hands), and Final Instruction No. 34 (p. 112) (mitigation of damages). As there are no

24   affirmative defenses for the jury to decide, any use of the term "affirmative defense" in this

25   instruction would cause confusion.

26   JOINT STATEMENT OF DISPUTED JURY
     INSTRUCTIONS - 38

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

**Preliminary Instruction No. 4.**

**(Two or More Parties – Different Legal Rights)**

**Proposed by Motorola**

You should decide the case as to each defendant separately. Unless otherwise stated, the instructions apply to all parties.

<u>**Authority for Instruction**</u>: Ninth Circuit Model 1.5

<u>**Microsoft's Response**</u>:  Motorola's proposed instruction appears designed to inject confusion into the proceedings.  There are three defendants to this action: Motorola, Inc. (now Motorola Solutions, Inc.), Motorola Mobility, Inc. (now Motorola Mobility, LLC), and General Instrument Corp.  Dkt. 673 at 2, ¶¶ 2-6.  Throughout the course of this litigation, all three defendants have been viewed as one and the same for all relevant purposes.  Motorola has never asserted that any of these parties have their own defenses or otherwise asserted that any defendant is differently situated than the others.  Nor has Motorola ever suggested that certain defendants are unencumbered or differently encumbered by the pertinent RAND obligations.

As such, during the proceedings so far, the parties and the Court have treated all defendants the same.  The Court issued extensive Findings of Fact and Conclusions of Law that referred to all three defendants, collectively, as "Motorola."  Dkt. 673 at ¶ 7.  Those Findings constitute the legal and factual predicate for the upcoming jury trial.  In fact, Motorola's pretrial statement references "Motorola" time and again without suggesting any need to distinguish among the defendants.  Cramer Decl. Ex. C (Motorola's Pretrial Statement).

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 39

1      Against this backdrop of past practice, Motorola now seeks to instruct the jury that it

2   should treat "each defendant separately."  It is unclear whether Motorola intends to introduce

3   some form of last minute confusion at trial as to some of the defendants, or simply seeks to

4   overwhelm the jury by suggesting that it must navigate the full complement of evidence and

5   instructions from the Court three times, once for each defendant.  Regardless, the instruction is

6   improper.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 40

**Preliminary Instruction No. 20.**

**(Charts and Summaries Not Received in Evidence)**

**Proposed by Motorola**

*Note: The following instruction would be read if either party shows the jury charts or summaries which are not received in evidence.*

Certain charts and summaries not received in evidence may be shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

**Authority for Instruction**: Ninth Circuit Model 2.12

**Microsoft's Response**:  Microsoft believes that exhibits containing charts and summaries should be addressed on a case-by-case basis, with the Court advising the jury on evidentiary implications of such exhibits once they are introduced.  Charts and summaries can come in a wide variety of forms and can draw on a variety of underlying sources, making an "all purpose" instruction inadequate and potentially confusing.  Moreover, to the extent any charts or summaries do not "correctly reflect the facts or figures shown by the evidence in the case," Microsoft expects that the parties will object on other grounds.  Generic instructions on abstract charts and summaries are particularly inappropriate and potentially misleading at the preliminary stage.

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 41

1

2
**Preliminary Instruction No. 21.**

3
**(Charts and Summaries Received in Evidence)**

4
**Proposed by Motorola**

5
*Note: The following instruction would be read if either party shows the jury charts or*

6
*summaries which are received in evidence.*

7
Certain charts and summaries may be received into evidence to illustrate information

8
brought out in the trial.  Charts and summaries are only as good as the underlying evidence that

supports them.  You should, therefore, give them only such weight as you think the underlying

9
evidence deserves.

10

11
**Authority for Instruction**: Ninth Circuit Model 2.13

12

13

14
**Microsoft's Response**:  Microsoft believes that exhibits containing charts and summaries should

15
be addressed on a case-by-case basis, with the Court advising the jury on evidentiary

16
implications of such exhibits once they are introduced.  Charts and summaries can come in a

17
wide variety of forms and can draw on a variety of underlying sources, making an "all purpose"

18
instruction inadequate and potentially confusing.  Generic instructions on abstract charts and

19
summaries are particularly inappropriate and potentially misleading at the preliminary stage.

20

21

22

23

24

25

26
JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 42

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

2   III.   **DISPUTED FINAL JURY INSTRUCTIONS (PROPOSED FOR USE AFTER THE CLOSE OF EVIDENCE)**

3                          **Final Instruction No. 2.**

4

5   **(Burden of Proof — Preponderance of the Evidence | MICROSOFT'S alternative)**

6          When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

7          You should base your decision on all of the evidence, regardless of which party presented

8   it.

9

10  **Authority in support of instruction**:  Ninth Circuit Model 1.3, modified to remove references

11  to "affirmative defense."  Microsoft removed references to "affirmative defense" for the reasons

12  explained in its Microsoft's Responses to Motorola's Proposed Final Instruction No. 31 (p. 103)

13  (ripeness), Final Instruction No. 33 (p. 109) (unclean hands), and Final Instruction No. 34 (p.

14  112) (mitigation of damages).

15

16  **Motorola's response**:  Because of the nature of the claims and defenses in this case, it is

17  preferable to use the Washington Pattern Jury Instruction relating to the burden of proof.

18  Motorola's Proposed Final Instruction No. 2 (set forth below) is therefore based on the

19  Washington Pattern Jury Instructions and includes one sentence at the end that is from the

20  corresponding Ninth Circuit Model Jury Instruction.  This additional sentence provides

21  additional clarity on the equal weight to be given to evidence, regardless of its source.

22

23

24

25

26  JOINT STATEMENT OF DISPUTED JURY
    INSTRUCTIONS - 43

1
2                          **Final Instruction No. 2.**

3        **(Burden of Proof — Preponderance of the Evidence | MOTOROLA'S alternative)**

4              When it is said that a party has the burden of proof on any proposition, or that any

5    proposition must be proved by a preponderance of the evidence, it means that you must be

6    persuaded, considering all the evidence in the case, that the proposition on which that party has

     the burden of proof is more probably true than not true.

7              You should base your decision on all of the evidence, regardless of which party presented

8    it.

9

10   **Authority in support of instruction**:  6 Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 21.01

11   (6th ed.); Ninth Circuit Manual of Model Jury Instructions, Civil, § 1.3 (2007).

12

13   **Microsoft's response**:  The Court should adopt Microsoft's proposed alternative.  Motorola's

14   proposed instruction is based primarily on the Washington Pattern Jury Instructions.  However,

15   Local Rule 51(g) states that the Ninth Circuit Model should be used "wherever appropriate" and

16   that the Washington Pattern Jury Instructions should only be used where "the federal model

17   instructions are not applicable."  LR 51(g).  Microsoft's proposed instruction appropriately uses

18   the Ninth Circuit Model.

19
20             In addition, the Court should not include a discussion of affirmative defenses in an

21   instruction on the applicable burdens.  None of Motorola's affirmative defenses are properly

22   before the jury.  *See* Microsoft's Responses to Motorola's Proposed Final Instruction No. 31 (p.

23   103) (ripeness), Final Instruction No. 33 (p. 109) (unclean hands), and Final Instruction No. 34

24   (p. 112) (mitigation of damages).

25

26   JOINT STATEMENT OF DISPUTED JURY
     INSTRUCTIONS - 44

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

2                              **Final Instruction No. 5.**

3                           **(Prior rulings by the Court)**

4                             **Proposed by Microsoft**

5          Prior to the parties' opening statements, you will recall that I instructed you that in the

6   course of this case, the Court has made numerous factual and legal rulings that are likely to be

7   important in your decision on the questions you must decide in the case.  I informed you of some

    of those rulings in a preliminary instruction.  I remind you that you are required to accept those

8   findings as true and correct for all purposes.

9          In addition to the findings that I informed you of prior to opening statements, the Court

10  has made other legal determinations over the course of this case.  Certain instructions below will

11  make reference to such prior rulings and instruct you that you must follow those rulings.  This

12  means that you must accept those rulings as true and correct for all purposes.

13  [*Note*: As noted in Microsoft's Proposed Preliminary Instructions, Microsoft also proposes that

14  its Proposed Preliminary Instruction No. 2, revised as appropriate in light of events during trial,

    be given as part of this instruction.]

15

16

17  <u>**Authority in support of instruction**</u>:  This instruction is appropriate because the jury will

    benefit from a reminder and clarification that the Court's prior findings of fact and legal

18  determinations are binding on it.  The Court has ruled that the finder of fact is to rely on the

19  Court's Findings of Fact and Conclusions of Law during the breach phase.  Dkt. 607 at 9-12

20  ("with this determination as guidance, a jury would hear Microsoft's breach of contract claim").

21  To rely upon those findings, the jury must know what was decided.  As both the Court and

22  Motorola have acknowledged, the Court's prior Findings of Fact and Conclusions of Law are

    now the law of the case.  Dkt. 703, Hr'g Tr. at 13:22-:23 (June 5, 2013) ("I think it is the law of

23  the case, and you don't get to continue to litigate it."); Cramer Decl. Ex. C (Motorola's Pretrial

24  Statement) at 2 ("Motorola does not dispute that those findings are now law of the case").

25

26  JOINT STATEMENT OF DISPUTED JURY
    INSTRUCTIONS - 45

1   **Motorola's response**:  This instruction is without precedent.  Microsoft does not cite to any

2   authority supporting inclusion of this instruction, let alone any precedent in the Washington

3   Pattern Jury Instructions or the Ninth Circuit Manual of Model Jury Instructions (Civil).

4         The number of the Court's previous rulings that are relevant to the narrow issue in this

5   case—whether Motorola breached its contracts with the IEEE or ITU—are relatively limited.

6   To the extent that Microsoft proposes that the jury be instructed regarding a prior ruling of this

7   Court that is relevant to the issues that remain for trial, it should propose separate instructions for

8   each point on which it believes the jury needs to be instructed, and Motorola should then have

9   the opportunity to review and object to those proposals if necessary.  The jury should not receive

10  introductory language explaining that the instruction is a result of a ruling by the Court, which

11  could be prejudicial to the parties and confuse the jury, leading the jury to believe that the Court

12  has already made a decision on the issues on which the jury must decide.  Motorola does not

13  propose an alternative to Microsoft's Proposed Final Instruction No. 5 because an introductory

14  statement regarding the Court's prior rulings is unnecessary and prejudicial.

15

16        Microsoft also proposes that its Proposed Preliminary Jury Instruction No. 2 be read as

17  part of this instruction.  Motorola objects to that instruction, as well as its inclusion as part of this

18  instruction, for the reasons set forth with respect to Microsoft's Proposed Preliminary Instruction

19  No. 2, including that it seeks to impute the entire reasoning of the prior order of the Court to the

20  jury in violation of Motorola's Seventh Amendment right to trial by jury.  Motorola intends to

21  file a motion *in limine* on the admissibility of the Court's April 19, 2013 Findings of Fact and

22  Conclusions of Law, and incorporates its arguments in that motion herein by reference.

23

24

25

26
   JOINT STATEMENT OF DISPUTED JURY
   INSTRUCTIONS - 46

1
2
3
4

**Final Instruction No. 13.**

**(Charts and Summaries Not Received in Evidence)**

**Proposed by Motorola**

5
6

*Note: The following instruction would be read if either party shows the jury charts or summaries which are not received in evidence.*

7
8
9
10

Certain charts and summaries not received in evidence may be shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

11
12

**Authority for Instruction**: Ninth Circuit Model 2.12

13
14
15
16
17
18
19
20
21
22

**Microsoft's response**:  Microsoft believes that exhibits containing charts and summaries should be addressed on a case-by-case basis, with the Court advising the jury on evidentiary implications of such exhibits once they are introduced.  Charts and summaries can come in a wide variety of forms and can draw on a variety of underlying sources, making an "all purpose" instruction inadequate and potentially confusing.  Moreover, to the extent any charts or summaries do not "correctly reflect the facts or figures shown by the evidence in the case," Microsoft expects that the parties will object on other grounds.  Whether an instruction of this kind will be necessary cannot be determined until evidence has been taken.

23
24
25
26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 47

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

2

**Final Instruction No. 14.**

3

**(Charts and Summaries Received Into Evidence)**

4

**Proposed by Motorola**

5

*Note: The following instruction would be read if there are any charts or summaries*

6

*received into evidence.*

7

Certain charts and summaries may be received into evidence to illustrate information

8

brought out in the trial.  Charts and summaries are only as good as the underlying evidence that

supports them.  You should, therefore, give them only such weight as you think the underlying

9

evidence deserves.

10

11

**Authority for Instruction**: Ninth Circuit Model 2.13

12

13

**Microsoft's response**:  Microsoft believes that exhibits containing charts and summaries should

14

be addressed on a case-by-case basis, with the Court advising the jury on evidentiary

15

implications of such exhibits once they are introduced.  Charts and summaries can come in a

16

wide variety of forms and can draw on a variety of underlying sources, making an "all purpose"

17

instruction inadequate and potentially confusing.  Whether an instruction of this kind will be

18

necessary cannot be determined until evidence has been taken.

19

20

21

22

23

24

25

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 48

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

2

**Final Instruction No. 16.**

3

**(Promise Defined)**

4

**Proposed by Microsoft**

5

     A promise is an expression that justifies the person to whom it is made in reasonably

6

believing that a commitment has been made that something specific will happen or not happen in

7

the future. A promise may be expressed orally, in writing, or by conduct.

8

9

<u>**Authority in support of instruction**</u>: WPI 301.02.  *See also* Agreed Preliminary Jury

10

Instruction No. 15 ("Contract Defined"), defining a "contract" as "a legally enforceable promise

or set of promises."  The jury would benefit from a definition of "promise" given that "contract"

11

is defined with reference to "promise."

12

13

<u>**Motorola's response**</u>:  Motorola objects to this instruction because this definition is unnecessary

14

and confusing because the contracts at issue are written.

15

16

17

18

19

20

21

22

23

24

25

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 49

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

**Final Instruction No. 17.**

**(Issues — Breach of Contract | MICROSOFT'S alternative)**

The following is a summary of the claims of the parties provided to help you understand the issues in the case. You are not to take this instruction as proof of the matters claimed. It is for you to decide, based upon the evidence presented, whether a claim has been proved.

The plaintiff, Microsoft, claims that the defendant, Motorola, breached its binding contractual commitments in one or more of the following respects:

— by sending letters in October 2010 setting forth terms and conditions for a license to Motorola's 802.11 and H.264 standard essential patents that could not have reasonably been accepted;

— by filing lawsuits and seeking injunctive relief based on alleged 802.11 and/or H.264 standard-essential patents in the ITC, United States district courts, and/or Germany;

— by sending October 2010 letters to Microsoft and thereafter filing lawsuits and seeking injunctive relief based on alleged 802.11 and/or H.264 standard-essential patents in the ITC, United States district courts, and/or Germany against Microsoft's 802.11 and/or H.264 compliant products, after Microsoft had sought to have the RAND licensing dispute resolved in this Court;

— by failing to offer a RAND license covering Motorola's 802.11 standard-essential patents to Microsoft's chip supplier, Marvell, but instead offering Marvell a license that was not RAND and was expressly discriminatory in excluding Marvell products sold to Microsoft from the scope of the license Motorola proposed; and/or

— by violating the covenant of good faith and fair dealing implied in every contract.

Microsoft also claims that it sustained damages as a result of these breaches of Motorola's contracts, and it seeks a judgment against Motorola for these damages.

Motorola denies these claims.

Motorola further denies that Microsoft was damaged.

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 50

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    Motorola further denies the nature and extent of the claimed damage.

2

3    **Authority in support of instruction**:  This instruction is based on WPI 300.01.  However, the

4    following language was removed:

5        *The plaintiff, _____, claims that the defendant, _____, entered into a*
     *contract with [him] [her] [it] [to] [for]_____. _____ claims that*
6        *_____ breached this contract [by] [in one or more of the following*
     *respects:]*

7    and replaced with:

8        *The plaintiff, Microsoft, claims that the defendant, Motorola, breached its binding*
     *contractual commitments in one or more of the following respects:*
9

10   This replacement is appropriate because the Court's prior orders have already established that

11   Motorola has entered into binding contractual commitments with IEEE and ITU.  Dkt. 188 at 10

12   ("Through Motorola's letters to both the IEEE and ITU, Motorola has entered into <u>binding</u>

     <u>contractual commitments</u> to license its essential patents on RAND terms.") (emphasis added);

13   *see also* Dkt. 335 at 13 ("Accordingly, the court reaffirms its prior decision that Motorola's

14   statements to the IEEE and ITU constituted a binding agreement to license its essential patents

     on RAND terms"); Dkt. 335 at 6 ("Motorola's Letters of Assurance to the IEEE and Motorola's
15
     declarations to the ITU create enforceable contracts between Motorola and the respective
16
     standard setting organization."); Dkt. 673 at 5 ("In a previous order, the court held that these
17
     RAND commitments create enforceable contracts between Motorola and the respective SSO.")

18       Offering a single instruction addressing both contracts at issue is appropriate given the

19   commonality of issues between the two contracts.  Microsoft's proposal clearly indicates, for

20   each aspect of its claim, whether that aspect applies to 802.11, H.264, or both.  To the extent any

     confusion remains, Microsoft's Proposed Final Instruction No. 18 (p. 56) explains which
21
     contract applies to which respective standard. Finally, Microsoft's proposed verdict form
22
     includes separate questions about breach for the two respective contracts, further ensuring there
23
     is no confusion.

24

25

26
     JOINT STATEMENT OF DISPUTED JURY
     INSTRUCTIONS - 51

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   **Motorola's response**:  Motorola objects to Microsoft's Final Instruction No. 17 because it

2   ignores the fact that Microsoft pled breach of two separate contracts.  Microsoft does not cite any

3   authority for addressing the two contracts together.  Doing so is likely to confuse the jurors.  The

4   contracts with the IEEE and ITU are not identical and contain different terms.  For example, the

5   ITU letter of assurance form allows parties to condition their RAND obligations on the potential

6   licensee's willingness to grant a reciprocal RAND license to its own SEPs.  (Dkt. 673, ¶ 33.)

7   Thus, the jury may reach a different decision on breach with respect to the two contracts.

8   Microsoft's proposed instruction does not make it clear to the jury that it may do so.  Microsoft's

9   proposal also improperly ignores Motorola's affirmative defenses.

10

11          Motorola further objects to Microsoft's Proposed Final Instruction No. 17 because it does

12   not distinguish between the three defendants in the case.  This is significant because the three

13   entities were not all involved in each act which Microsoft contends is a breach of contract.

14   Further, the SEPs that were the subject of the October 2010 letters are not all owned by one

15   entity.  Thus, to the extent that Microsoft seeks specific performance of a RAND license, such a

16   license would need to be with multiple entities.  Motorola also objects to the extent that

17   Microsoft's proposal references theories of breach not properly disclosed in Microsoft's

18   interrogatory responses, namely that Motorola sought injunctive relief _after_ Microsoft sought to

19   have a RAND licensing dispute resolved by the Court.  (_See_ Ex. E.)

20          Motorola's Proposed Final Instruction No. 17, set forth below, cures the problems in

21   Microsoft's proposal.  Motorola's proposal tracks the language in WPI 300.1, but breaks down

22   the instruction into the claims that relate to each contract at issue and addresses the multiple

23   defendants.  Motorola's instruction also includes reference to Motorola's affirmative defenses,

24   whereas Microsoft's does not.

25

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 52

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

2                                **Final Instruction No. 17.**

3                    **(Issues — Breach of Contract | MOTOROLA's alternative)**

4          The following is a summary of the claims of the parties provided to help you understand

5   the issues in the case.  You are not to take this instruction as proof of the matters claimed. It is

    for you to decide, based upon the evidence presented, whether a claim has been proved.

6
          None of the Motorola entities is in breach of any express term of its commitments to the

7   IEEE.  However, Microsoft alleges that each of the Motorola entities breached a contract with

8   the IEEE by the following actions:

9          — sending a letter on October 21, 2010 offering to license Motorola's 802.11 standard

10              essential patents on RAND terms;

11         — filing lawsuits and seeking injunctive relief based on 802.11 standard-essential patents

12              in the International Trade Commission and United States district courts;

13         — by having not executed a license agreement covering its 802.11 standard-essential

14              patents with Marvell, a third party to this action; and/or

15         — by failing to comply with the implied covenant of good faith and fair dealing.

16         Microsoft also claims that it sustained damages as a result of these alleged breaches of

17  Motorola's commitment to the IEEE, and it seeks a judgment against Motorola for these

18  damages.

19         Motorola denies these claims.

20         Motorola further denies that Microsoft was damaged and denies that any damage was the

21  result of Motorola's conduct.

22         Motorola further claims the following as affirmative defenses to Microsoft's claim

23  relating to the IEEE:

24              (a) lack of ripeness,

25              (b) unclean hands; and

26
JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 53

1          (c) failure to mitigate damages.

2

           Motorola further denies the nature and extent of the claimed damage.

3

4          Second, none of the Motorola entities  is in breach of any express term of its

commitments to the ITU.  However, Microsoft alleges that each of the Motorola entities

5    breached a contract with the ITU by the following actions:

6          — sending a letter on October 29, 2010 offering to license Motorola's H.264 standard

7              essential patents on RAND terms;

8          — filing lawsuits and seeking injunctive relief based on H.264 standard-essential patents

9              in the ITC, United States district courts, and/or Germany; and/or

10         — by failing to comply with the implied covenant of good faith and fair dealing.

11         Microsoft also claims that it sustained damages as a result of these breaches of

12   Motorola's commitment to the ITU, and it seeks a judgment against Motorola for these damages.

13         Motorola denies these claims.

14         Motorola further denies that Microsoft was damaged and denies that any damage was the

15   result of Motorola's conduct

16         Motorola further claims the following as affirmative defenses to Microsoft's claim

17   relating to the ITU:

18              (a) lack of ripeness,

19              (b) unclean hands; and

20              (c) failure to mitigate damages.

21

22   Motorola further denies the nature and extent of the claimed damage.

23

24   **Authority in support of instruction:** 6A Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI

25   300.01 (6th ed.); Microsoft's Response to Motorola's Interrogatory No. 3, and supplements

     thereto (setting forth the basis for Microsoft's contention  that Motorola breached a contract).

26
JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 54

1

2   **Microsoft's response**:  Motorola's proposal is improper in several respects.  First, it states

3   without authority that Motorola was "not in breach of any express term" of its contractual

4   obligations.  The Court has never made any such ruling and this is an issue to be resolved at trial.

5   Second, the instruction separately treats "Motorola entities" rather than just "Motorola."  This is

6   improper for the reasons already explained in Microsoft's Response to Motorola's Proposed

7   Preliminary Instruction No. 4 (p. 39).  Third, the pertinent Washington Pattern Jury Instruction

8   calls for a statement of the "<u>plaintiff's</u> claims" (emphasis added), yet Motorola injects incorrect

9   and prejudicial terms related to its defense.  For example, Motorola's proposal states that it sent

10  letters "offering to license Motorola's H.264 standard essential patents on RAND terms," even

11  though the Court's April 19, 2013 Order confirmed that the letters did <u>not</u> offer RAND terms.

12  Motorola's proposal also incorrectly states that Microsoft claims breach because of Motorola's

13  "having not executed a license agreement" with Marvell.  Microsoft's actual claim regarding

14  Motorola's interactions with Marvell is summarized in Microsoft's own proposed alternative

15  instruction.  Fourth, Motorola's proposed instruction improperly discusses affirmative defenses.

16  Below, Microsoft explains why Motorola's alleged affirmative defenses are improper.  *See*

17  Microsoft's Responses to Motorola's Proposed Final Instruction No. 31 (p. 103) (ripeness), Final

18  Instruction No. 33 (p. 109) (unclean hands), and Final Instruction No. 34 (p. 112) (mitigation of

19  damages).  Finally, it is unnecessary and confusing to recite two discrete instructions for each

20  contract at issue.  The commonality of issues is apparent from the amount of duplicated text in

21  Motorola's proposal.  It would be clearer to offer one instruction that applies to both contracts

22  and highlight which aspects apply to which respective SSO, as Microsoft proposes.

23

24

25

26  JOINT STATEMENT OF DISPUTED JURY
    INSTRUCTIONS - 55

1

2            **Final Instruction No. 18.**

3    **(Burden of proof on the issues — Breach of contract | MICROSOFT'S alternative)**

4            Microsoft's proposed instruction includes subparts, as follows.

5    **Microsoft's proposed instructions:**

6    *Final Instruction No. 18 (a)*

7            The Court has already ruled that Motorola's Letters of Assurance to the IEEE and

8    Motorola's declarations to the ITU created enforceable contracts between Motorola and these

9    standard setting organizations.  [1]  You must follow this ruling by the Court.

10           The Court has also already ruled that Microsoft is a "third-party beneficiary" of those

11   contracts because Microsoft is a member of the IEEE and the ITU and is a prospective user of

     both the H.264 Standard and the 802.11 Standard.  [2]  A "third-party beneficiary" is one who,

12   though not a party to the contract, will nevertheless receive direct benefits from the contract.  [3]

13   A third party for whose direct benefit a contract was entered into may seek the Court's assistance

14   in enforcing the contract.  [4]  You must follow this ruling by the Court.

15

16   **Authority in support of instruction:**

17           The pertinent model instruction, WPI 300.03(1), provides that a breach of contract

18   plaintiff has the burden to show:

19           *That [plaintiff] entered into a contract with [defendant];*

20           Microsoft's proposed instruction does not include this provision because the Court's prior

21   rulings have already established that Microsoft is a beneficiary of contracts that Motorola entered

22   with IEEE and ITU.  Microsoft's proposed instruction summarizes the pertinent prior rulings by

     the Court.  Support for Microsoft's proposed instruction appears below, with reference to the

23   bracketed numerals appearing within the proposed instruction:

24   [1]:    Dkt. 335 at 6 ("Motorola's Letters of Assurance to the IEEE and Motorola's declarations

25   to the ITU create enforceable contracts between Motorola and the respective standard setting

26
     JOINT STATEMENT OF DISPUTED JURY
     INSTRUCTIONS - 56

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700 FAX, (206) 623-8717

1   organization."); *see also* Dkt. 335 at 13 ("Accordingly, the court reaffirms its prior decision that

2   Motorola's statements to the IEEE and ITU constituted a binding agreement to license its

3   essential patents on RAND terms."); Dkt. 673 at 5 ("In a previous order, the court held that these

    RAND commitments create enforceable contracts between Motorola and the respective SSO.");

4   Dkt. 188 at 17; Dkt. 465 at 8-9.

5   [2]:     Dkt. 335 at 6 ("[A]s a member of the IEEE and the ITU and as a prospective user of both

6   the H.264 Standard and the 802.11 Standard, Microsoft is a third-party beneficiary of those

7   contracts."); *see also* Dkt. 188 at 17; Dkt. 335 at 10; Dkt. 465 at 8; Dkt. 673 at 5.

8   [3]:     Dkt. 335 at 13 ("A third party beneficiary is one who, though not a party to a

9   contract, will nevertheless receive direct benefits therefrom"); *Wolfe v. Morgan*, 524 P.2d

10  927, 930 (Wash. App. 1974).

11  [4]:     Dkt. 335 at 14 ("A third party for whose direct benefit a contract was entered into may

12  sue for breach thereof"); *see also* Dkt. 673 at 5 ("The court has also held that Microsoft—as a

    standard-user—can enforce these contracts as a third-party beneficiary."); *Wolfe v. Morgan*, 524

13  P.2d 927, 930 (1974).

14

15  **Motorola's response**:  Motorola objects to Microsoft's Proposed Final Instruction No. 18(a)

16  because, although labeled in part "Burden of Proof on the Issues," the instruction does not even

17  set forth the elements of a breach of contract claim.  Nowhere in Microsoft's proposed jury

18  instructions does it instruct the jury on the elements of a breach of contract claim.

19
    Motorola also objects to Microsoft's treatment of the IEEE and ITU contracts as a single

20  contract and relating to a single cause of action.  Motorola further objects to Microsoft's repeated

21  use of the phrase "You must follow this ruling by the Court" as it may confuse the jury and lead

22  it to believe that the Court has already ruled on the issue of  breach of contract.

23
    While preserving its rights on appeal, Motorola notes that the Court ruled that Microsoft

24  can sue under Motorola's IEEE and ITU contracts as a third party beneficiary.  Providing

25

26  JOINT STATEMENT OF DISPUTED JURY
    INSTRUCTIONS - 57

1    instructions on the purported law on third party beneficiaries is likely to confuse the jury.

2    Moreover, Microsoft's proposed instructions are improper as a matter of law.  Even if a party is a

3    third party beneficiary to a contract, it may not in all circumstances "seek [a] Court's assistance

4    in enforcing the contract."  A third party beneficiary may not seek assistance if there is not a ripe

5    dispute, and it must have itself not frustrated the purpose of the contract or prevented the other

6    party from performing under the contract.

7           Motorola's Proposed Final Instruction No. 18 cures these problems and tracks the

8    language of WPI 300.03(1).  It clearly sets forth the elements of Microsoft's breach of contract

9    claims, does so for each of the contracts at issue, makes clear that Microsoft must prove breach

10   as to each of the defendants, and addresses Motorola's affirmative defenses.  And, without

11   waiving Motorola's rights on appeal, Motorola's proposal instructs the jury to assume that

12   Motorola entered into contracts with the IEEE and ITU and those contracts included that

13   Motorola must license its 802.11 and H.264 standard essential patents, respectively, on

14   reasonable and non-discriminatory terms, as found by this Court.  (Dkt. 335 at 13.)

15

16

17

18

19

20

21

22

23

24

25

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 58

**Final Instruction No. 18 (cont.)**

*Final Instruction No. 18(b)*

The terms of the contract between Motorola and IEEE included:

— that Motorola was required to make available [1] and grant [2] a license to its 802.11 essential patents to an unrestricted number of applicants on a worldwide basis, either (i) without any compensation or (ii) under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination [3];

— that Motorola was required to make available its patented technology for 802.11 at nominal competitive costs to all who sought to use it for making and using 802.11 compliant products [4];

— that Motorola was not permitted to make adoption of its 802.11 essential patents prohibitively costly or noncompetitive to a substantial part of the industry [5]; and

— that Motorola was required to license its 802.11 essential patents by offering fair and commercially reasonable terms to any party making and using 802.11 compliant products [6].

**Authority in support of instruction**:

The pertinent model instruction, WPI 300.03(2), provides that the jury should be provided with a general statement of the material terms to the contract at issue. Support for these terms can be found in the following sources of authority, with reference to the bracketed numerals appearing within Microsoft's proposed instruction.

The sources of authority cited below are not extrinsic evidence, but rather the contract documents themselves (or prior Court determinations about the contracts). "The parties agree that the operative contract language includes the language of Motorola's statements to the IEEE and the ITU, as well as the relevant language in the IEEE and ITU Policies." Dkt. 335 at 13 n. 6. Motorola has agreed that the IEEE and ITU Policies are part of the contract, stating "the LOAs incorporate by reference the IEEE and ITU Patent Policies … Therefore, these documents form part of the 'contract.'" Dkt. 231, Def's Mot. for Partial Summ. J., at 14. The specific letters of assurance and IEEE and ITU Patent Policy documents that Microsoft cites are those that the

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 59

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    Court used in its April 19, 2013 Findings of Fact and Conclusions of Law.  *See, generally,* Dkt.

2    673 (citing Trial Exs. 1130, 2839, 1568.)

3            One of these documents post-dates the filing of this lawsuit, but an earlier version of the

4    document with the same pertinent language exists.  In fact, the Court reviewed that earlier

     document in granting summary judgment that an enforceable contracts exist.  Specifically, Trial

5    Ex. 1568 is the IEEE-SA Standards Board Bylaws, dated March 2012.  The portions of that

6    document that Microsoft cites also appear in the December 2009 version of the same document,

7    which the Court previously reviewed.  *See* Dkt. 79-1 at ECF page 18.

8

9    [1]:    Dkt. 188 at 4 ("Any such Letter of Assurance must include either (1) a disclaimer to the

10   effect that the patent holder will not enforce the 'Essential Patent Claims,' or (2) '[a] statement

     that a license for a compliant implementation of the standard will be <u>made available</u> to an

11   unrestricted number of applicants on a worldwide basis without compensation or under

12   reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair

13   discrimination. . . .'") (emphasis added); *see also* Dkt. 673 at ¶ 41.

14   [2]:    Dkt. 188 at 14 ("[T]he policies make clear (and the parties do not dispute) that the patent

15   holder of an essential patent must grant licenses on RAND terms."); *see also* Dkt. 335 at 5

     ("Motorola has submitted numerous Letters of Assurance to the IEEE in connection with the

16   802.11 Standard stating it 'will grant' or 'is prepared to grant' a license under RAND terms  for

17   its patents essential to the 802.11 Standard."); Dkt. 465 at 14 ("… the court's prior holding

18   means that Motorola must grant Microsoft a RAND license to its standard essential patents.");

19   Dkt. 673 at ¶¶ 44 ("With these LOAs, Motorola and Symbol agreed to grant, on reasonable terms

20   and conditions, licenses to their patents that are essential to the 802.11 Standard on a worldwide

21   and non-discriminatory basis").

22   [3]:    Trial Ex. 1568 at 16 ("A Letter of Assurance shall be either: a) A general disclaimer to

     the effect that the Submitter without conditions will not enforce any present or future Essential

23   Patent Claims …; or b) A statement that a license for a compliant implementation of the standard

24   will be made available to an unrestricted number of applicants on a worldwide basis without

25   compensation or under reasonable rates, with reasonable terms and conditions that are

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 60

1  demonstrably free of any unfair discrimination."); *see also* Trial Ex. 1130 at 19 ("A patented
2  technology may only be used when all of the following requirements can be met and documented
3  … The patent is accessible to all in the industry on a nondiscriminatory basis for a reasonable
   cost"); Trial Ex. 2839 at MOTM_WASH1823_0000001 ("The Patent Holder is prepared to grant
4  a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and
5  on reasonable terms and conditions to comply with the (Proposed) IEEE Standard"); Dkt. 673 at
6  ¶ 41; Dkt. 188 at 4.

7  [4]:    Dkt.  673 at ¶ 47 ("The IEEE Operations Manual in place at the time that Motorola and
8  Symbol made their initial 802.11 RAND commitments provided that '[p]atent holders shall
   submit to the Patent Committee of the IEEE Standards Board, prior to any significant drafting of
9  the standard, a draft of their license that assures that the technology will be made available at
10 *nominal competitive costs* to all who seek to use it for compliance with an incorporated IEEE
11 standard.'") (citing Trial Ex. 1130) (emphasis added by Court).

12 [5]:    Trial Ex. 1130 at 19 ("A patented technology may only be used when all of the following
13 requirements can be met and documented … Adopting such technology is not in itself
   prohibitively costly or noncompetitive to a substantial part of the industry")
14
15 [6]:    Trial Ex. 2839 at MOTM_WASH1823_0000004 ("In the event the proposed standard is
   adopted and the standard cannot be practiced without the use of one or more issued patents
16 which are now or hereafter owned, controlled or assigned to Motorola, Motorola agrees to
17 license those patents on a non-discriminatory basis offering fair and commercially reasonable
18 terms").

19

20 **Motorola's response**:  Motorola objects to Microsoft's proposed jury instruction because it
21 purports to instruct the jury on the terms of Motorola's contract with the IEEE, which is an issue
22 for the jury.  The Court found that Motorola entered into a contract with the IEEE and the
23 contract included that Motorola must license its 802.11 standard essential patents on reasonable
24 and non-discriminatory terms (Dkt. 335 at 13).  Motorola included those findings in its Final

25

26 JOINT STATEMENT OF DISPUTED JURY
   INSTRUCTIONS - 61

1   Instruction No. 18.  The remainder of Microsoft's proposal is Microsoft's interpretation of the

2   evidence and not an appropriate instruction to the jury.

3         Even if it were appropriate to interpret the evidence for the jury, Microsoft's proposal

4   does not accurately describe the evidence it cites.  The first purported term of the IEEE contract,

5   "that Motorola was required to make available: [1] and grant [2] . . . ." does not track the

6   language in Motorola's Letter of Assurance or any other document purportedly forming the

7   contract at issue in this case.  Similarly, Microsoft's final proposed term does not track the

8   language in the Letter of Assurance it relies on.  To the extent that Microsoft intends to introduce

9   the documents on which it relies as support for this instruction, the jury is perfectly capable of

10  reviewing and interpreting them.  Providing instructions to the jury regarding the alleged

11  contracts' terms improperly invades the province of the jury.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  JOINT STATEMENT OF DISPUTED JURY
    INSTRUCTIONS - 62

**Final Instruction No. 18 (cont.)**

*Final Instruction No. 18(c)*

The terms of the contract between Motorola and ITU included:

— that Motorola was required to grant a license for its H.264 essential patents to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to make, use and sell products compliant with the H.264 Standard [1];

— that Motorola was required to negotiate licenses to its H.264 essential patents either free of charge or on a nondiscriminatory basis on reasonable terms and conditions to any party making and using H.264 compliant products [2]; and

— that Motorola was required to make its H.264 essential patents accessible to everybody making and using H.264 compliant products without undue constraints [3].

**Authority in support of instruction**:

The pertinent model instruction, WPI 300.03(2), provides that the jury should be provided with a general statement of the material terms to the contract at issue. Support for these terms can be found in the following sources of authority, with reference to the bracketed numerals appearing within Microsoft's proposed instruction.

The sources of authority cited below are not extrinsic evidence, but rather the contract documents themselves (or prior Court determinations about the contracts). "The parties agree that the operative contract language includes the language of Motorola's statements to the IEEE and the ITU, as well as the relevant language in the IEEE and ITU Policies." Dkt. 335 at 13 n. 6 (emphasis added). Motorola has agreed that the IEEE and ITU Policies are part of the contract, stating "the LOAs incorporate by reference the IEEE and ITU Patent Policies … Therefore, these documents form part of the 'contract.'" Dkt. 231, Defendants' Motion for Partial Summary Judgment, at 14. The specific letters of assurance and IEEE and ITU Patent Policy documents that Microsoft cites as sources of authority are those that the Court used in its April 19, 2013 Findings of Fact and Conclusions of Law. *See, generally,* Dkt. 673 (citing Trial Exs. 1575, 2838.)

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 63

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

One of these documents post-dates the filing of this lawsuit, but an earlier version of the document exists.  In fact, it was reviewed by the Court in granting summary judgment that enforceable contracts exist.  Specifically, Trial Ex. 1575 is the ITU's Guidelines for Implementation of the Common Patent Policy, dated April 23, 2012.  The cited portions of that document also appear in the March 1, 2007 version of the same document, which the Court previously reviewed.  *See* Dkt. 79-3 at ECF page 9.  Another document, Trial. Ex. 2838, includes certain Letters of Assurance that post-date the filing of this lawsuit, but others that pre-date the filing of this lawsuit.  The language that Microsoft cites appears in Letters of Assurance that pre-date the filing of this lawsuit.

[1]:    Trial Ex. 2838 at 646 ("The Patent Holder is prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to make, use and sell implementations of the above document."); Dkt. 188 at 14 ("[T]he policies make clear (and the parties do not dispute) that the patent holder of an essential patent must grant licenses on RAND terms."); Dkt. 335 at 6 ("Motorola has sent numerous declarations to the ITU stating that it will grant licenses on RAND terms for its patents essential to the H.264 Standard."); Dkt. 465 at 14 ("… the court's prior holding means that Motorola must grant Microsoft a RAND license to its standard essential patents."); Dkt. 673 at ¶¶36 ("All of Motorola's LOAs indicated that it would "'grant to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions' licenses conditioned on reciprocity").

[2]:    Trial Ex. 1575 at 9 ("[Option 2.1] The patent holder is willing to negotiate licences free of charge with other parties on a non-discriminatory basis on reasonable terms and conditions [or] [Option 2.2] The patent holder is willing to negotiate licences with other parties on a nondiscriminatory basis on reasonable terms and conditions.")

[3]:    Trial Ex. 1575 at 9 ("[A] patent embodied fully or partly in a Recommendation I Deliverable must be accessible to everybody without undue constraints. To meet this requirement in general is the sole objective of the code of practice."); Dkt. 673 at ¶ 27.)

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 64

1  **Motorola's response**:  Motorola objects to Microsoft's proposed jury instruction because it

2  purports to instruct the jury on the terms of Motorola's contract with the ITU, which is an issue

3  for the jury.  The Court found that Motorola entered into a contract with the ITU and the contract

4  included that Motorola must license its H.264 standard essential patents on reasonable and non-

5  discriminatory terms (Dkt. 335 at 13).  Motorola included those findings in its Final Jury

6  Instruction No. 18.  The remainder of Microsoft's proposal is Microsoft's interpretation of the

7  evidence and not an appropriate instruction to the jury.

8        Even if it were appropriate to interpret the evidence for the jury, Microsoft's proposal

9  does not appropriately interpret the evidence.  The documents Microsoft cites in its Authority for

10  the Instruction as support for the "terms" of the contract all post-date the filing of this lawsuit,

11  and thus cannot have formed the basis of the "contracts" alleged to be breached on November 9,

12  2010.  For example, Trial Exhibit 1575, relied upon by Microsoft, is a version of the ITU

13  Guidelines for Implementation of the Common Patent Policy with a date of April 23, 2012 on the

14  first page.  Likewise, the Motorola Patent Statement and Licensing Declaration was dated

15  December 8, 2010.  (*See* Trial Ex. 2838 at 636.)  To the extent that Microsoft intends to

16  introduce the documents on which it relies as support for this instruction, the jury is perfectly

17  capable of reviewing and interpreting them.  Providing instructions to the jury regarding the

18  alleged contracts' terms improperly invades the province of the jury.

19

20

21

22

23

24

25

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 65

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

2                                **Final Instruction No. 18 (cont.)**

3

4      *Final Instruction No. 18(d)*

5          Motorola's contracts with IEEE and ITU required Motorola's offers for licenses to its

6      standard essential patents to be on RAND terms and conditions.

7

8      <u>**Authority in support of instruction**</u>:

9          The pertinent model instruction, WPI 300.03(2), provides that the jury should be

10     provided with a general statement of the material terms to the contract at issue.  Support for this

11     terms can be found in, *e.g.*, Trial Ex. 2839 at MOTM_WASH1823_0000004 ("In the event the

        proposed standard is adopted and the standard cannot be practiced without the use of one or more

12     issued patents which are now or hereafter owned, controlled or assigned to Motorola, Motorola

13     agrees to license those patents on a non-discriminatory basis offering fair and commercially

14     reasonable terms").

15         Microsoft recognizes that the Court has previously stated that "under Motorola's

16     agreements with the IEEE and the ITU, Motorola need not make initial offers on RAND terms."

17     Dkt. 335 at 24-25.  To the extent the Court believes the issue of whether initial offers must be on

        RAND terms has already been decided, Microsoft seeks to preserve the issue for appeal.

18

19

20     <u>**Motorola's response**</u>:  Motorola objects to this instruction because it misstates the nature of

21     Motorola's commitments to the IEEE and ITU.  Specifically, under Motorola's contracts with

22     the IEEE and ITU, Motorola did not need to make an initial offer on RAND terms.  Indeed, this

23     proposed instruction directly contradicts the prior rulings of this Court.  As this Court stated in

24     its June 6, 2012 Order (Dkt. No. 335), "Because the IEEE and the ITU agreements anticipate that

25     the parties will negotiate towards a RAND license, it logically does not follow that initial offers

26
       JOINT STATEMENT OF DISPUTED JURY
       INSTRUCTIONS - 66

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1  must be on RAND terms."  As recently stated by the ITC, "satisfaction of the obligation flowing

2  from a FRAND declaration is not measured by a specific offer, 'be it an initial offer or an offer

3  during a back-and-forth negotiation.'" *In the Matter of Certain Electronic Devices, Including*

4  *Wireless Communication Devices, Portable Music and Data Processing Devices, and Tablet*

5  *Computers*, Commission Opinion, Inv. No. 337-TA-794, at 62 (July 5, 2013) (quoting this

6  Court's June 6, 2012 Order).

7           Motorola's Proposed Final Instruction No. 19 accurately reflects this Court's prior rulings

8  on this issue.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 67

**Final Instruction No. 18 (cont.)**

*Final Instruction No. 18(e)*

Under the terms of its contracts with IEEE and ITU, Motorola was not permitted to pursue injunctions against implementers by asserting its 802.11 or H.264 standard essential patents.

**Authority in support of instruction**:

*Microsoft Corp. v. Motorola, Inc.,* 696 F.3d 872, 884 (9th Cir. 2012) ("Motorola, in its declarations to the ITU, promised to 'grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to use the patented material necessary' to practice the ITU standards. *This language admits of no limitations* as to who or how many applicants could receive a license ('unrestricted number of applicants') or as to which country's patents would be included ('worldwide,' 'the patented material necessary'). *Implicit in such a sweeping promise is, at least arguably, a guarantee that the patent-holder will not take steps to keep would-be users from using the patented material, such as seeking an injunction*, but will instead proffer licenses consistent with the commitment made.") (emphasis added); *Apple, Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901, 913–14 (N.D. Ill. 2012) (Posner, J.) (quoting with approval the FTC's position that "injunctive relief is indeed unavailable for infringement of a patent governed by FRAND" and holding "I don't see how, given FRAND, I would be justified in enjoining Apple from infringing the '898 unless Apple refuses to pay a royalty that meets the FRAND requirement."); *Realtek Semiconductor Corp. v. LSI Corp.*, No. C–12–03451–RMW, 2013 WL 2181717, at *6 (N.D. Cal. May 20, 2013) ("[D]efendants are contractually obligated under their Letters of Assurance to the IEEE to license the '958 and '867 patents on RAND terms and Realtek is a third-party beneficiary to that contract (this is not disputed). Also, like in [the instant case], the act of seeking injunctive relief (here, at the ITC before proposing a RAND license to Realtek) is inherently inconsistent and a breach of defendants' promise to license the patents on RAND terms").

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 68

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    **Motorola's response**:  As more fully set forth in Section IV(A)(1)(a) in its motion for summary

2    judgment, Dkt No. 720 at 8-12, incorporated fully herein, Motorola was not contractually

3    forbidden from pursuing injunctive relief on either its IEEE or ITU standard essential patents.

4         Microsoft cannot identify any term in the purported IEEE and ITU contracts at issue

5    prohibiting Motorola from seeking an injunction or exclusion order.  Patent owners bringing an

6    infringement action have a statutory right to seek injunctive relief in U.S. district courts and/or

7    an exclusion order in the ITC.  *See* 35 U.S.C. § 283; 19 U.S.C. § 1337(d).  When such statutory

8    rights exist, parties to a contract must explicitly state that they are contracting away these

9    statutory rights in order for the rights to be waived.  *See, e.g.*, *Metro. Edison Co. v. NLRB*, 460

10   U.S. 693, 707-709 (1983) (The Court "will not infer from a general contractual provision that the

11   parties intended to waive a statutorily protected right unless the undertaking is explicitly stated.

12   More succinctly, the waiver must be clear and unmistakable.").

13   As held by Judge Barbara Crabb in the Western District of Wisconsin, nowhere in Motorola's

14   agreements with the relevant standard-setting organizations was there any prohibition on seeking

15    injunctions based on SEPs.  Judge Crabb held that, because patent holders generally have the

16   right to seek injunctive relief in district courts under 35 U.S.C. § 283 and in the ITC under 19

17   U.S.C. § 1337(d), "any contract purportedly depriving a patent owner of that right should clearly

18    do so."  *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178-bbc, 2012 WL 5416941, at *15

19   (W.D. Wisc. Oct. 29, 2012).  Judge Crabb found that the IEEE contract does not clearly deprive

20   patent owners of the right to bring injunctions, and therefore that "Motorola did not breach its

21    contract simply by requesting an injunction and exclusionary order in its patent infringement

22    actions." *Id*. Motorola's Proposed Final Instruction No. 28 is an alternative to Microsoft's

23   Proposed Final Instruction No. 18(e).

24

25

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 69

1

**Final Instruction No. 18 (cont.)**

2

3    *Final Instruction No. 18(f)*

4         Motorola was required to grant licenses to Microsoft on RAND terms regardless of which

5    company raised the issue of a license in the first place.

6

7    **Authority in support of instruction**:

8    The pertinent model instruction, WPI 300.03(2), provides that the jury should be provided with a

9    general statement of the material terms to the contract at issue.  The Court has ruled that the

10   contracts required Motorola to grant licenses to Microsoft on RAND terms regardless of which

     company raised the issue of a license in the first place.  *See* Dkt. 335 at 17 ("Motorola's

11   commitments to grant licenses to implementers on RAND terms cannot turn on whether or not

12   the implementer first applies for a license."); Dkt. 335 at 18 ("Motorola committed to the IEEE

13   and ITU to grant RAND licenses to an unrestricted number of applicants, and Motorola cannot

14   avoid this commitment simply by contacting the implementer before the implementer applies for

     a license."); Dkt. 335 at 19 ("Motorola's contracts with the IEEE and the ITU do not condition

15   Motorola's RAND obligations on the implementer first applying for a license and then

16   negotiating in good faith.").

17

18   **Motorola's response**:  Motorola objects to this instruction because it is unnecessary.  It wrongly

19   assumes that Motorola will argue to the jury that a condition precedent to Microsoft obtaining a

20   RAND license was for Microsoft to first apply for such a license.  As explained in Motorola's

21   opposition to Microsoft's motion for summary judgment, however, "[b]ased on Motorola's

22   understanding of the Court's June 6, 2013 Order (Dkt. 335), and without waiving any rights on

23   appeal, Motorola does not intend to pursue the following counterclaim and affirmative defenses

24

25

26   JOINT STATEMENT OF DISPUTED JURY
     INSTRUCTIONS - 70

1  at the August 26, 2013 breach of contract trial: . . . (3) Ninth Affirmative Defense – Failure to

2  Satisfy a Condition Precedent."  Dkt. No. 752 at 19.

3         Motorola similarly does not intend to argue that its RAND commitments depend on

4  "which company raised the issue of a license in the first place," and accordingly, this instruction

5  is irrelevant, unnecessary and likely to cause jury confusion.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 71

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

**Final Instruction No. 18 (cont.)**

2

3    *Final Instruction No. 18(g)*

4          Microsoft has the burden of proving that Motorola breached the contracts in one or more

5    of the ways claimed by Microsoft.  If you find from your consideration of all the evidence that

     Microsoft has met this burden, then your verdict should be for Microsoft. On the other hand, if

6    you find that Microsoft has not met this burden, then your verdict should be for Motorola.

7

8    <u>**Authority in support of instruction**</u>:

9
     WPI 300.03, including WPI 300.03(3).  Microsoft's proposed instruction omits WPI 300.03(4)—
10
     (5) because material breach on the part of Microsoft, non-performance on the part of Microsoft,
11
     and the occurrence of conditions precedent are not at issue.  Microsoft's proposed instruction
12   omits WPI 300.03(6) because Microsoft seeks specific performance, meaning it does not need to

13   prove damages to establish breach of contract.  *Merrell v. Renier*, No. C06-404JLR, 2006 WL

     3337368, at *6 (W.D.Wash. Nov. 16, 2006) (Robart, J.) ("A plaintiff need not prove financial
14
     loss to prevail in a suit to obtain specific enforcement of a contract."); *Heitmiller v. Prall*, 184 P.
15
     334, 336 (Wash. 1919).  *See also* Authority for Microsoft's Proposed Final Instruction No. 39.
16

17   <u>**Motorola's response**</u>:  Motorola objects to this instruction because it does not reflect the

18   elements of a breach of contract claim, which are set forth in Motorola's Proposed Final

19   Instruction No. 18.  Microsoft's proposal ignores that Microsoft has the burden of proving for

20   each defendant and each contract at issue that the Motorola entity breached the contract in one or

21   more ways claimed by Microsoft, that Microsoft was not in material breach of the contract, and

22   that Microsoft was damaged <u>as a result of</u> Motorola's alleged breach.  WPI 300.03(a).  Microsoft

23   provides no justification for why the jury should not be instructed on the actual elements of the

24   claims at issue.

25

26
     JOINT STATEMENT OF DISPUTED JURY
     INSTRUCTIONS - 72

1  Additionally, as explained by Judge Richard Posner, "you can't go into federal court and
2  say you had a contract with X and X broke it and you're really annoyed even though you
3  sustained no injury of any sort (in fact you made money because you re-contracted at a higher
4  price) so please give me a judgment for $1 that I can pin on my wall."  *Apple, Inc. v. Motorola,*
5  *Inc.*, 869 F. Supp. 2d 901, 909 (N.D. Ill. 2012).  *See also Arizonans for Official English v.*
6  *Arizona*, 520 U.S. 43, 71, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) ("a claim for nominal
7  damages, extracted late in the day from [plaintiff's] general prayer for relief and asserted solely
8  to avoid otherwise certain mootness, [bears] close inspection").  Moreover, Microsoft's
9  Amended and Supplemental Complaint does not seek nominal damages.  Dkt. No. 53 at 24.
10  *Dunkin' Donuts Inc. v. Dough Boy Mgmt., Inc.*, CIV.A. 02-243 (JLL), 2006 WL 20521, at *9
11  (D.N.J. Jan. 3, 2006) ("Defendants are precluded from resorting to nominal damages when, all
12  throughout discovery, Defendants only alleged actual and consequential damages.").
13
14  Microsoft's proposal also improperly ignores Motorola's affirmative defenses.  To the
15  extent that the Court instructs the jury on the elements of a breach of contract claim, the Court
16  should use Motorola's Proposed Final Instruction No. 18, which is based upon the Washington
17  Pattern Jury Instructions, and modified to reflect the Court's orders.
18
19
20
21
22
23
24
25
26
JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 73

1

2                      **Final Instruction No. 18.**

3      **(Burden of Proof on the Issues—Breach of Contract—With Affirmative Defenses |**

4                        **MOTOROLA'S alternative)**

5      The plaintiff, Microsoft, has the burden of proving that each of the Motorola entities breached a

       contract with the IEEE by establishing each of the propositions listed below.  To prove that

6      Motorola Solutions, Motorola Mobility, or General Instrument, breached a contract with the

7      IEEE, you must find that Microsoft established each of the propositions listed below as to that

8      entity

9      (1) That the Motorola entity entered into a contract with the IEEE;

10     (2)  That the terms of the contract included that Motorola must license its 802.11 standard

11     essential patents on reasonable and non-discriminatory terms;

12     (3) That the Motorola entity breached the contract in one or more of the ways claimed by

13     Microsoft;

14     (4) That Microsoft was not in material breach of its obligations under Motorola's contract with

15     the IEEE;

16     (5) That the Motorola entity failed to  comply with its obligations to the IEEE; and

17     (6) That Microsoft was damaged as a result of Motorola's breach.

18     In this case, you should assume that the Motorola entities did enter into a contract with the IEEE

19     and the contract included that Motorola must license its 802.11 standard essential patents on

       reasonable and non-discriminatory terms.  Therefore, you need not determine whether Microsoft

20     proved the first two elements of this claim as to any of the Motorola entities.  However, for each

21     of the acts that Microsoft claims is a breach of contract, you must determine whether Microsoft

22     has proven each of the other propositions listed above and do so for each of the Motorola

23     entities.  If you find from your consideration of all of the evidence that any of the other

       propositions listed above has not been proved, your verdict should be for that Motorola entity.

24     On the other hand, if each of these propositions has been proved, then you must consider the

25     affirmative defenses claimed by Motorola.

26     JOINT STATEMENT OF DISPUTED JURY                        LAW OFFICES
       INSTRUCTIONS - 74                          **CALFO HARRIGAN LEYH & EAKES, LLP**
                                                       999 THIRD AVENUE, SUITE 4400
                                                       SEATTLE, WASHINGTON 98104
                                                  TEL, (206) 623-1700 FAX, (206) 623-8717

1    Motorola has the burden of proving the following affirmative defenses:

2    (1) lack of ripeness;

3    (2) Microsoft's unclean hands; and

4    (3) Microsoft's failure to mitigate damages.

5    I will instruct you on the elements for each of these affirmative defenses.  If you find from your
6    consideration of all of the evidence that one or more of these affirmative defenses have been
7    proved, your verdict should be for Motorola.  On the other hand if none of these affirmative
8    defenses has been proved, then your verdict should be for Microsoft on Microsoft's breach of the
     IEEE contract claim.
9

10   The plaintiff, Microsoft, also has the burden of proving that each of the Motorola entities
11   breached its contract with the ITU, by establishing each of the following propositions.  To prove
12   that Motorola Solutions, Motorola Mobility, or General Instrument, breached a contract with the
13   ITU, you must find that Microsoft established each of the propositions listed below as to that
14   entity

15   (1) That the Motorola entity entered into a contract with the ITU;

16   (2)  That the terms of the contract included that Motorola must license its H.264 standard
17   essential patents on reasonable and non-discriminatory terms;

18   (3) That the Motorola entity breached the contract in one or more of the ways claimed by
19   Microsoft;

20   (4) That Microsoft was not in material breach of its obligations under Motorola's contract with
     the ITU;
21

22   (5) That the Motorola entity failed to comply with its obligations to the ITU; and

23   (6) That Microsoft was damaged as a result of Motorola's breach.

24

25   In this case, you should assume that the Motorola entities  did enter into a contract with the ITU
26   and the contract included that Motorola must license its H.264 standard essential patents on

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 75

1  reasonable and non-discriminatory terms.  Therefore, you need not determine whether Microsoft
2  proved the first two elements of this claim.  However, for each of the acts that Microsoft claims
3  is a breach of contract, you must determine whether Microsoft has proven each of the other
4  propositions listed above and do so for each of the Motorola entities.  If you find from your
5  consideration of all of the evidence that any of the other propositions listed above has not been
   proved, your verdict should be for that entity.  On the other hand, if each of these propositions
6  has been proved, then you must consider the affirmative defenses claimed by Motorola.
7  Motorola has the burden of proving the following affirmative defenses:
8  (1) lack of ripeness;
9  (2) Microsoft's unclean hands; and
10 (3) Microsoft's failure to mitigate damages.
11 I will instruct you on the elements for each of these affirmative defenses.  If you find from your
12 consideration of all of the evidence that one or more of these affirmative defenses have been
   proved, your verdict should be for Motorola.  On the other hand if none of these affirmative
13 defenses has been proved, then your verdict should be for Microsoft on Microsoft's breach of the
14 ITU contract claim.
15
16 **Authority for Instruction:** WPI 300.03(1); Dkt. 335 at 13 ("Accordingly, the court reaffirms its
17 prior decision that Motorola's statements to the IEEE and ITU constituted a binding agreement
18 to license its essential patents on RAND terms.").  By citing to the Court's prior ruling that
19 Motorola entered into binding agreements with the IEEE and ITU, Motorola does not waive its
   appellate rights on that issue.
20
21
22 **Microsoft's response**:  Motorola's proposal is improper in several respects.  First, the
23 instruction improperly triplicates the jury's task by separating out three different "Motorola
24 entities."  This is improper for the reasons already explained in Microsoft's Response to
25 Motorola's Proposed Preliminary Instruction No. 4 (p. 39).  Second, it acknowledges that the
26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 76

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   jury should "assume" certain elements, yet urges that Microsoft "has the burden" of establishing

2   those elements.  Third, it states that the "contract included that Motorola must license its

3   [standard essential patents] on [RAND] terms."  While that is a requirement of the contracts,

4   they also impose other requirements, as set forth in Microsoft's alternative formulation.  Fourth,

5   Motorola's instruction requires Microsoft to prove it was not in material breach.  The Court has

6   ruled that Microsoft acted appropriately in seeking relief from the Court and had no obligation to

7   apply for a license or negotiate.  *See, e.g.*, Dkt. 188 at 15-16; Dkt. 335 at 21; Dkt. 335 at 19.

8   There is no other plausible basis for material breach on the part of Microsoft, meaning this issue

9   has been resolved.

10        Motorola's proposed instruction is also improper because it suggests Microsoft must

11  prove damages to establish liability.  Parties seeking specific performance can establish liability

12  without proving damages.  *Merrell v. Renier*, 2006 WL 3337368, at *6 (W.D.Wash. Nov. 16,

13  2006) (Robart, J.) ("A plaintiff need not prove financial loss to prevail in a suit to obtain specific

14  enforcement.").  Washington allows for nominal damages in such situations.  *Ford v. Trendwest*

15  *Resorts, Inc.*, 43 P.3d 1223, 1229 (Wash. 2002) (*en banc*); *Heitmiller v. Prall*, 184 P. 334, 336

16  (Wash. 1919); *Smelt Fishermens Ass'n v. Soleim*, 236 P.2d 1057, 1059 (Wash. 1951).  *See also*

17  Authority for Microsoft's Proposed Final Instruction No. 39 (p. 128).  Finally, Motorola's

18  instruction improperly instructs the jury on affirmative defenses.  *See* Microsoft's Responses to

19  Motorola's Proposed Final Instruction No. 31 (p. 103) (ripeness), Final Instruction No. 33 (p.

20  109) (unclean hands), and Final Instruction No. 34 (p. 112) (mitigation of damages).

21

22

23

24

25

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 77

1

2                                 **Final Instruction No. 19.**

3                              **(Requirements for Initial Offer)**

4                                  **Proposed by Motorola**

5              Under Motorola's contracts with the IEEE and ITU, Motorola did not need to make an

6     initial offer on RAND terms.

7

8     **Authority for Instruction:**  Dkt 335 at 24-25 ("Because the IEEE and the ITU agreements

9     anticipate that the parties will negotiate towards a RAND license, it logically does not follow that

10    initial offers must be on RAND terms.")

11

12    **Microsoft's response**:  Motorola's proposed instruction should not be adopted because it is

13    misleading.  It suggests that <u>any</u> initial offer would be consistent with its RAND obligations.

14    However, the Court has articulated certain limitations on initial offers — specifically, that any

15    initial offer must comport with the duty of good faith and fair dealing and that initial offers

16    cannot be blatantly unreasonable.  Dkt. 335 at 25; Dkt. 188 at 15.

17            Moreover, the proposed instruction is incorrect.  Motorola's contract with IEEE required,

18    by its express terms, Motorola to license patents by "<u>offering</u> fair and commercially reasonable

19    terms."  Trial Ex. 2839 at MOTM_WASH1823_0000004.

20

21

22

23

24

25

26
JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 78

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

2 **Final Instruction No. 20.**

3 **(Reasonable Royalties for RAND Commitments)**

4 **Proposed by Motorola**

5       To induce the creation of valuable standards, the RAND commitment must guarantee that

6 holders of valuable intellectual property will receive reasonable royalties on that property.

7

8 **Authority for Instruction**: This instruction is supported by the Court's April 19, 2013 Findings

9 of Fact and Conclusions of Law (Dkt. 673, ¶ 73).  Motorola's inclusion of this factual finding is

10 not a concession that the April 19, 2013 Findings of Fact and Conclusions of Law are relevant

evidence to the issues in the August 2013 breach of contract trial.  To the extent that the Court

11 grants Motorola's motion *in limine* to preclude introducing the April 19, 2013 Findings of Fact

12 and Conclusions of Law  as evidence, Motorola will withdraw this instruction.

13

14 **Microsoft's response**: Motorola's proposed instruction is not relevant and improper because the

15 Court has already determined that Motorola's intellectual property with respect to the standards

16 is not valuable.  Motorola's contributions consist of "only a sliver" of the relevant technology for

17 either standard.  Dkt. 673 at ¶¶ 533, 576.  They "provide very minimal technical contribution."

18 Dkt. 673 at ¶ 575.  And they are "not overly important" in general and of "only minor

19 importance" to Microsoft's products.  Dkt. 673 at ¶¶ 532, 289, 299.

20

21

22

23

24

25

26
JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 79

1

2                              **Final Instruction No. 21.**

3          **(Implied Duty of Good Faith and Fair Dealing | MICROSOFT's alternative)**

4          A duty of good faith and fair dealing is implied in every contract.  However, this duty

5  does not require a party to accept a material change in the terms of its contract.  [1]

6          Microsoft was neither required to apply for a license nor required to negotiate for a

7  license before Motorola's good faith and fair dealing obligations were triggered.  [2]

8          The following types of acts are examples of conduct that would violate the duty of good

9  faith and fair dealing: evasion of the spirit of the bargain, willful rendering of imperfect

   performance, abuse of a power to specify terms, and interference with or failure to cooperate in

10 the other party's performance.  [3]  However, you are not to view this list as a complete

11 catalogue of conduct that violates the duty of good faith and fair dealing.  [4]

12         Dishonesty or subjective bad faith violates the duty of good faith and fair dealing.

13 "Subjective bad faith" involves examining an actor's intentions behind its actions.  Thus, willful

14 rendering of imperfect performance of contractual obligations violates the duty of good faith and

   fair dealing.  [5]  Retaliation also violates the duty of good faith and fair dealing.  [6]

15         However, dishonesty or subjective bad faith is not required to breach the duty of good

16 faith and fair dealing.  This means that a party may violate the duty of good faith and fair dealing

17 even though the party believes its conduct to be justified and even though the party did not know

18 its decisions were inappropriate when it made them.  [7]

19         For example, the duty of good faith and fair dealing requires a holder of standard

20 essential patents to engage in conduct with respect to implementers that is objectively reasonable

21 by commercial standards.  [8]  And where one party is granted discretion under the terms of the

   contract, that discretion must be exercised reasonably.  [9]

22         Other examples of actions by standard essential patent holders that violate the duty of

23 good faith and fair dealing include conduct that frustrates the purpose of RAND licensing

24 contracts or that is otherwise contrary to the reasonable expectations of the parties to a contract.

25 [10]  The purposes of the RAND licensing contracts in this case include:

26
   JOINT STATEMENT OF DISPUTED JURY                                    LAW OFFICES
   INSTRUCTIONS - 80                                       **CALFO HARRIGAN LEYH & EAKES, LLP**
                                                               999 THIRD AVENUE, SUITE 4400
                                                                SEATTLE, WASHINGTON 98104
                                                            TEL, (206) 623-1700 FAX, (206) 623-8717

— to ensure that the aggregate royalties associated with a given standard are reasonable and to prevent "stacking" — *i.e.*, to prevent suppliers of standard-compliant products and services from being subjected to cumulative demands for licenses to essential patents, which added together could lead to economically unsustainable royalty payments; [11]

— to prevent "patent hold-ups" — *i.e.*, to prevent holders of standard-essential patents from demanding more than the value of its patented technology.  [12]

— to encourage widespread adoption of the standard [13] and to ensure that standard essential patents are readily accessible to everybody at reasonable rates [14]; and

— to prevent holders of standard essential patents from extorting their competitors or preventing them from entering the marketplace.  [15]

Any offer by Motorola needed to comport with the duty of good faith and fair dealing. [16]  Blatantly unreasonable offers always violate the duty of good faith and fair dealing.  [17] To determine whether an offer violated the duty of good faith and fair dealing, it is necessary to compare the offer against the true RAND royalty.  [18]  I previously instructed you as to the true RAND royalty for Motorola's H.264 and 802.11 standard essential patents.  You will recall that the RAND royalty rate for Motorola's H.264 standard essential patents is 0.555 cents per unit, which is applicable to both Microsoft Windows and Xbox products.  [19]  The RAND royalty for Motorola's 802.11 Standard Essential Patents is 3.471 cents per unit, which is applicable to Microsoft Xbox products.  [20]

In deciding whether or not Motorola breached its contractual commitments, you must follow the RAND royalty determinations I explained above, whether you agree with them or not.

**Authority in support of instruction**:

[1]:    This portion of Microsoft's instruction is based on WPI 302.11, except that the following language was removed from WPI 302.11: "This duty requires the parties to cooperate with each other so that each may obtain the full benefit of performance."  This language was removed because, in the context of RAND licensing, it has the potential to mislead the jury in a manner contrary to the law and the Court's prior rulings.  *See* Dkt. 715, Microsoft's Brief Regarding the Duty of Good Faith and Fair Dealing, at 12-13.

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 81

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Sources of authority for the remaining language in Microsoft's proposed instruction are set forth below, with reference to the bracketed numerals that appear within the proposed instruction. This additional language is appropriate because the jury will benefit from additional guidance on how the duty of good faith and fair dealing should be assessed in the RAND context. As the Court recognized in calling for additional briefing on this topic, the law regarding the duty of good faith and fair dealing in the RAND context presents certain unique issues, and those issues are not adequately addressed with generic statements of law alone.

[2]:    Dkt. 335 at 17 ("[I]t was not the intent of the contracting parties (Motorola and the IEEE/ITU) to require that implementer of a standard first apply for a license and then negotiate for a license in good faith before Motorola's RAND obligations are triggered."); Dkt. 66 at 5-6 ("There is no legal basis for Motorola's contention that Microsoft was required to negotiate the precise license terms prior to filing a breach of contract claim. … Again, Motorola has failed to provide any legal authority that requires negotiations as a precondition to a breach of contract claim based on RAND licensing commitments); Dkt. 188 at 15 ("Because the policies leave it to the parties to determine what constitutes a RAND license, when such a genuine disagreement arises, it appears to the court that the only recourse for the parties is to file a lawsuit in the appropriate court of law."); Dkt. 335 at 18 ("Motorola committed to the IEEE and ITU to grant RAND licenses to an unrestricted number of applicants, and Motorola cannot avoid this commitment simply by contacting the implementer before the implementer applies for a license."); Dkt. 335 at 18 ("…a finding that negotiating in good faith is condition precedent to Motorola's RAND obligations to the implementer would run contrary to the purpose of Motorola's commitments to the IEEE and the ITU…"); Dkt. 335 at 19 ("Motorola's contracts with the IEEE and the ITU do not condition Motorola's RAND obligations on the implementer first applying for a license and then negotiating in good faith.")

[3]:    Restatement (Second) of Contracts § 205 cmt. d ("…the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in other party's performance.")

[4]:    Restatement (Second) of Contracts §205 cmt. d ("A complete catalogue of types of bad faith is impossible… .")

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 82

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

[5]:     Restatement (Second) of Contracts § 205 cmt. d.  Motorola appears to acknowledge that subjective bad faith is sufficient for a violation of the duty of good faith and fair dealing.  *See* Defendants' Brief on Duty of Good Faith and Fair Dealing in Contractual Dispute Context, Dkt. 716, at 3-4.

[6]:     *See* Microsoft's Brief Regarding the Duty of Good Faith and Fair Dealing in the Context of RAND Licensing, Dkt. 715, at 10 (citing, *inter alia*, *Best*, 739 P.2d at 558).

[7]:     *See* Microsoft's Brief Regarding the Duty of Good Faith and Fair Dealing in the Context of RAND Licensing, Dkt. 715, at 5-6 (citing, *inter alia*, *Scribner v. Worldcom, Inc.*, 249 F.3d 902, 910 (9th Cir. 2001)).

[8]:     *See* Microsoft's Brief Regarding the Duty of Good Faith and Fair Dealing in the Context of RAND Licensing, Dkt. 715, at 7-8 (citing, *inter alia*, *Craig*, 458 F.3d at 752 (8th Cir. 2006); Restatement § 205 cmt. a; *Vylene  Enterprises, Inc. v. Naugles, Inc.*, 90 F.3d 1472 (9th Cir. 1996); *Best v. U.S. Nat. Bank of Oregon*, 739 P.2d 554, 559 (1987)).

[9]:     *Craig v. Pillsbury Non-Qualified Pension Plan*, 458 F.3d 748, 752 (8th Cir. 2006) (applying Washington law) (quoting *Goldstein v. Johnson & Johnson*, 251 F.3d 433, 444 (3d Cir. 2001)).

[10]:    *See* Microsoft's Brief Regarding the Duty of Good Faith and Fair Dealing in the Context of RAND Licensing, Dkt. 715, at 8-11 (citing, *inter alia*, *Aventa Learning, Inc. v. K12, Inc.*, 830 F. Supp. 2d 1083, 1101 (W.D. Wash. 2011) (Robart, J.); *Best*, 739 P.2d at 558; *Frank Coluccio Construction Co., Inc. v. King County*, 150 P.3d 1147, 1154-1155 (Wash. App. 2007); *Scribner*, 249 F.3d at 909-910)); *see also* Restatement (Second) of Contracts § 205 ("Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party").

[11]:    Dkt. 490 at 24 ("Similarly, the concern of stacking is widely understood as a practical concern when licensing standard essential patents"); *id*. at 23 ("Both hold-up and stacking are widely recognized concerns in the context of standard essential patent licensing."); Dkt. 673 at ¶ 66 ("The RAND commitment also addresses royalty stacking and the need to ensure that the aggregate royalties associated with a given standard are reasonable.")

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 83

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   [12]:   Dkt. 673 at ¶¶ 55, 104, 107, 109, 110, 111 ("The ability of a holder of an SEP to demand
2   more than the value of its patented technology and to attempt to capture the value of the standard
3   itself is referred to as patent 'hold-up.'"); Dkt. 490 at 23 ("Both hold-up and stacking are widely
    recognized concerns in the context of standard essential patent licensing.")

4   [13]:   Dkt. 673 at ¶¶ 51 ("The purpose of the RAND commitment is to encourage widespread
5   adoption of the standard."), 110, 112.

6   [14]:   Dkt. 335 at 14 ("These commitments are clearly designed to benefit potential licensees of
7   Motorola's standard essential patent by ensuring that such patents are readily accessible to
8   everybody at reasonable rates.").

9   [15]:   Dkt. 188 at 3 ("The policies often require or encourage members of the SSO to identify
10  patents that are essential to a proposed standard and to agree to license their essential patents on
    reasonable and non-discriminatory ('RAND') terms to anyone who requests a license. Such rules
11  help to insure that standards do not allow essential patent owners to extort their competitors or
12  prevent them from entering the marketplace.")

13   [16]:   Dkt. 335 at 25 ("any offer by Motorola (be it an initial offer or an offer during a back-
14  and-forth negotiation) must comport with the implied duty of good faith and fair dealing inherent
15  in every contract"); Dkt. 335 at 25 FN 8 ("Motorola agrees that any offer on its part to license its
    standard essential patents must comport with its duty of good faith and fair dealing.")
16
17  [17]:   (Dkt. 335 at 25) ("This conclusion, however, does not mean that Motorola, as the owner
18  of standard essential patents subject to RAND licensing agreements with the IEEE and ITU, may
    make blatantly unreasonable offers to implementers"); Dkt. 188 at 15 ("To wit, during the
19  February 13, 2012 status conference, counsel for Motorola agreed that blatantly unreasonable
20  offers would violate its RAND obligations under the policies.")

21  [18]:   Dkt. 335 at 25-26 ("In other words, to determine whether Motorola's offers were so
22  blatantly unreasonable as to breach its duty of good faith, it is necessary in this instance to
    compare the offer against a true RAND royalty rate.")
23
24  [19]:   Dkt. 673 at p. 207.

25  [20]:   Dkt. 673 at p. 207.

26
    JOINT STATEMENT OF DISPUTED JURY
    INSTRUCTIONS - 84

1

2  **Motorola's response**:  Motorola objects to Microsoft's proposed instruction because it applies

3  an incorrect legal standard and fails to include the context and circumstances of both parties'

4  conduct in accordance with Washington law.  In particular, Microsoft's proposal incorrectly

5  applies an objectively reasonable standard and wrongly instructs the jury that "dishonesty or

6  subjective bad faith is not required to breach the duty of good faith and fair dealing."  To the

7  contrary, dishonesty or subjective bad faith is *a factor* in determining breach of good faith, and

8  Washington law considers both subjective factors and objective factors when determining breach

9  of good faith.   Moreover, Microsoft's proposal fails to instruct the jury to consider industry

10  practice or custom when determining breach of good faith.   Microsoft's proposal also fails to

11  include a mutuality of obligation requirement that the duty of good faith and fair dealing also

12  applies to the party seeking to enforce it.  In addition, Microsoft's proposal improperly instructs

13  the jury to strictly consider the offer amount and to ignore other factors.   There is no case where

14  a breach of duty of good faith was found based solely on the offer amount.  Numerous cases find

15  that the offer amount alone is *not dispositive* of whether the offer breached a duty of good faith.

16  Motorola's Proposed Final Instruction Nos. 23-27 are offered in alternative to Microsoft's

17  Proposed Final Instruction No. 21 and cite the authority supporting Motorola's objections.

18         Motorola also objects to Microsoft's proposal for including examples of conduct that

19  violates the duty of good faith and fair dealing, which has the potential to mislead and confuse

20  the jurors.  Finally, Microsoft's proposal attempts to broaden the purpose of RAND obligations.

21  A purpose of the RAND commitment is to encourage widespread adoption of the standards (*see*

22  Dkt. 673 at ¶51), and as this Court noted, that purpose would be frustrated if a party had to make

23  initial offers on RAND terms.  *See* Dkt. 335 at 24.

24

25

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 85

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

2                       **Final Instruction No. 21.**

3        **(Implied Duty of Good Faith and Fair Dealing | MOTOROLA's alternative)**

4              There is an implied duty of good faith and fair dealing in all contracts.  This duty

5    obligates parties to cooperate with each other so that the parties may receive the benefits of

6    performance of the contract.  [1] The implied duty of good faith and fair dealing arises out of the

     obligations created by a contract and exists only in relation to performance of specific contract

7    terms.  [2]  There is not a free-floating duty of good faith unattached to the underlying legal

8    document.  Thus, the duty cannot inject any substantive terms into the parties' contract. [3]  The

9    implied covenant of good faith and fair dealing does not require parties to accept any material

     change in the terms of the contract.  [4]  Whether a party breached the implied duty of good faith

10   and fair dealing must be judged at the time of the alleged breach.  [5]

11

12
     **Authority for Instruction:**
13

14   [1] *Miller v. Othello Packers, Inc*., 67 Wn.2d 842, 843-44, 410 P.2d 33 (1966).

15   [2] *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569-74, 807 P.2d 356, 359-62 (1991);  *Keystone

     Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 177, 94 P.3d 945, 949 (2004); *Donald B.*
16
     *Murphy Contractors, Inc. v. King Cnty*, 112 Wn. App. 192, 197, 49 P.3d 912, 915 (2002) ("If no
17
     [specific] contractual duty exists, there is nothing that must be performed in good faith.");

18   *Barrett v. Weyerhaeuser Co. Severance Pay Plan*, 40 Wn. App. 630, 635 n.6, 700 P.2d 338, 342

19   (1985).

20   [3] *Badgett*, 116 Wn.2d 563, 569-70.

21   [4] *Betchard-Clayton, Inc. v. King*, 41 Wn. App. 887, 890-91, 707 P.2d 1361, 1363-64 (1985).

22   [5] *Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn. 2d 426 (1991) (en banc); *Bonnieview

23   Homeowners Ass'n v. Woodmont Builders, L.L.C.*, 655 F.Supp.2d 473, 511 (D.N.J. 2009).

24

25

26
     JOINT STATEMENT OF DISPUTED JURY
     INSTRUCTIONS - 86

1   **Microsoft's response:**  Motorola's proposal is inadequate and likely to mislead the jury.  The

2   duty of good faith and fair dealing in the RAND context presents unique considerations.  The

3   jury would benefit from an explanation focusing on aspects that have particular applicability,

4   rather than generic statements of law.  Microsoft's proposal provides such an explanation.

5          Motorola's proposed instruction is likely to mislead a jury because it states that the duty

6   of good faith and fair dealing "obligates parties to cooperate with each other."  Motorola may

7   suggest that the term "cooperate" means that Microsoft had a duty to engage in back-and-forth

8   negotiations with Motorola.  That is contrary to the Court's prior rulings.  *See, e.g.*, Dkt. 188 at

9   15-16; Dkt. 335 at 21; Dkt. 335 at 19.  It is also contrary to the law of good faith and fair dealing.

10  The duty to "cooperate" is on the defendant and is a short-hand expression of the rule requiring a

11  defendant to avoid conduct that hinders the plaintiff's reasonable expectations and performance.

12  *Cavell v. Hughes*, 629 P.2d 927, 929 (Wash. App. 1981).  *See also Long v. T-H Trucking Co.*,

13  486 P.2d 300, 302–03 (Wash. App. 1971) (finding that defendant did not cooperate in good faith

14  because its actions "substantially hindered plaintiff's production of logs in adequate volume");

15  Dkt. 715, Microsoft's Brief Regarding the Duty of Good Faith and Fair Dealing, at 12-13.

16

17         Finally, Motorola's proposal states that the duty must be judged at the time of the alleged

18  breach, but its cited authority does not stand for that proposition.  *Gaglidari* was not about the

19  implied covenant.  A justice separately concurred to make that point: "The discussion of good

20  faith by the majority and this concurrence is necessarily limited to construction of a contract

21  term, not the implication by law of a covenant otherwise absent."  *Gaglidari*, 815 P.3d at 1380.

22  And *Bonnieview* simply assessed a party's knowledge at the time the party made

23  misrepresentations in order to determine the propriety of the party's conduct, not because of the

24  legal principle that Motorola states.

25

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 87

1

2                                      **Final Instruction No. 22.**

3                                      **(Initial Good Faith Offer)**

4                                      **Proposed by Motorola**

5    Although the language of Motorola's agreements with the IEEE and ITU do not require it to

6    make offers on RAND terms, any offer by Motorola (be it an initial offer or an offer during a

7    back-and-forth negotiation) must comport with the implied duty of good faith and fair dealing

     inherent in every contract.

8

9
     **Authority for Instruction:** Dkt. 335 at 25 ("although the language of Motorola's agreements do
10
     not require it to make offers on RAND terms, any offer by Motorola (be it an initial offer or an
11
     offer during a back-and-forth negotiation) must comport with the implied duty of good faith and
12
     fair dealing inherent in every contract.")

13

14   **Microsoft's response:**  Microsoft disputes that, under Motorola's contracts, initial offers do not

15   have to be made on RAND terms, for the reasons set forth in Microsoft's Response to

16   Motorola's Proposed Final Instruction No. 19 (p. 78).  Moreover, Motorola's proposed

17   instruction omits what the parties have already agreed — that blatantly unreasonable offers are

18   always a breach.  Dkt. 188 at 15; Dkt. 335 at 25.  An instruction on the requirements of initial

19   offers would be incomplete without mentioning that requirement.

20

21

22

23

24

25

26
     JOINT STATEMENT OF DISPUTED JURY
     INSTRUCTIONS - 88

**Final Instruction No. 23.**

**(Consideration of Subjective Factors)**

**Proposed by Motorola**

In assessing whether Motorola breached the implied covenant of good faith and fair dealing in its contract with the IEEE, or the implied covenant of good faith and fair dealing in its contract with the ITU, you should take into consideration subjective factors.  For example, you should consider the intent behind Motorola's offers and whether Motorola had a bad motive in its conduct.

**Authority for Instruction:**  Dkt. 335, 27 ("[w]hile the court will not at this time set forth a legal standard with respect to Motorola's duty to offer its patents in good faith, it is likely that any analysis of Motorola's duty will involve, at least in part, an examination of the intent behind Motorola's offers."); *Fairhaven Land & Livestock Co. v. Chuckanut Trails Water Ass'n*, Case No. 60909-2-I, 148 Wn. App. 1046 (Feb. 23, 2009); Restatement (Second) of Contracts § 205(d) (1981); *Matter of Hollingsworth's Estate*, 88 Wn.2d 322, 330, 560 P.2d 348, 352 (1977);  *Cavell v. Hughes*, 29 Wn. App. 536, 539-40, 629 P.2d 927, 929 (1981); *Iliadis v. Wal-Mart Stores, Inc.*, 191 N.J. 88, 109–110, 922 A.2d 710, 722 (2007); *Continental Bank N.A. v Modansky*, 997 F.2d 309, 312-14 (7th Cir. 1993); RCW §62A.1-201(b)(20); *see also* Dkt. 716.

**Microsoft's response:**  Motorola's proposed instruction is incorrect as a matter of law. Subjective bad faith is certainly <u>sufficient</u> for a violation of the duty of good faith and fair dealing, but a jury can find a violation without reaching the issue of whether Motorola had a "bad motive."  Washington law confirms that an objective assessment of an actor's conduct can result in a breach.  The Ninth Circuit, applying Washington law, expressly stated that a plaintiff "need not show that [the defendant] … knew its decisions were inappropriate when it made

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 89

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1  them." *Scribner v. Worldcom, Inc.*, 249 F.3d 902, 909 (9th Cir. 2001).  *See also* Dkt. 715 at 5-6.

2  Motorola's authority does not suggest that a subjective inquiry is required — in fact, it

3  shows the opposite.  *Fairhaven Land* considered objective factors in determining whether the

4  defendant violated the duty, including whether the defendant's actions were lawful.  *Fairhaven*

5  at \*12.  Restatement (Second) of Contracts § 205(d) also describes an objective assessment.  *Id.*

6  ("[s]ubterfuges and evasions violate the obligation of good faith in performance <u>even though the</u>

7  <u>actor believes his conduct to be justified</u>" and "fair dealing may require <u>more than honesty</u>.")

8  (emphasis added). Motorola also cites RCW §62A.1, which provides an objective prong: "Good

9  faith … means honesty in fact <u>and the observance of reasonable commercial standards of fair</u>

10  <u>dealing</u>."  RCW §62A.1-201(b)(20) (emphasis added).  The balance of Motorola's authority

11  likewise fails to show that a subjective assessment is necessary.  In fact, a case that Motorola

12  cites in support of another proposed instruction, *McCarthy W. Constructors, Inc. v. Phoenix*

13  *Resort Corp.*, 821 P.2d 181 (Ariz. App. 1991), rejected the position advanced in Motorola's

14  proposal.  *Id.* at 187 ("McCarthy contends that a party does not violate an implied covenant of

15  good faith and fair dealing if it <u>subjectively</u> has a good faith basis for asserting its claim. … We

16  reject this position. … [T]he assertion must be <u>objectively</u> reasonable") (emphasis in original).

17

18

19

20

21

22

23

24

25

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 90

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

2                           **Final Instruction No. 24.**

3                    **(Consideration of Industry Custom or Practice)**

4                              **Proposed by Motorola**

5          Industry custom or practice is relevant to the scope and character of parties' good faith

6   obligations.  In determining whether Motorola breached the implied covenant of good faith and

7   fair dealing in its contracts with the IEEE and ITU, you should take into consideration industry

8   custom or practice.  Typically, the owner of an SEP and the potential licensee determine RAND

9   license terms through good-faith, bilateral negotiations, which take place independent of ITU and

    IEEE's activities.

10

11  **Authority for Instruction**: *Curtis v. Northern Life Ins. Co.*, 147 Wn. App. 1030, * 6 (2008);  *see*

12  *also Axthelm & Swett Const., Inc. v. Caudill*, No. 35995-9-I, 86 Wn. App. 1002, *4 (May 12,

13  1997); *Rhino Linings USA, Inc. v. Harriman,* 658 F. Supp. 2d 892, 899-900 (S.D. Ind. 2009);

14  *Barstad v. Stewart Title Guar. Co., Inc.*, 145 Wn.2d 528, 543-44, 39 P.3d 984, 992 (2002);

15  *Lichtenberg Constr. & Dev., Inc. v. Paul W. Wilson, Inc.*, No. C-000811, 2001 WL 1141236, at

16  *2-3 (Ohio Ct. App. Sept. 28, 2001); *Amerigraphics, Inc. v. Mercury Cas. Co.*, 182 Cal App. 4th

17  1538, 1556 (Cal. App. 2010); Dkt. 335, at 18 ("Motorola correctly asserts that the IEEE and ITU

    Policies contemplate that RAND licenses will be negotiated between the patent holder and the

18  implementer of the standard.")   This instruction is further supported by the Court's April 19,

19  2013 Findings of Fact and Conclusions of Law ( Dkt. 673, ¶ 85).  Motorola's inclusion of this

    factual finding is not a concession that the April 19, 2013 Findings of Fact and Conclusions of

20  Law are relevant evidence to the issues in the August 2013 breach of contract trial.  To the extent

21  that the Court grants Motorola's motion *in limine* to preclude introducing the April 19, 2013

22  Findings of Fact and Conclusions of Law  as evidence, this instruction will not be affected as it is

23  not dependent upon the Court's April 19, 2013 Findings of Fact and Conclusions of Law.

24

25  **Microsoft's response:**  Motorola's reference to "good-faith bilateral negotiation" is plainly an

26

    JOINT STATEMENT OF DISPUTED JURY
    INSTRUCTIONS - 91

1    attempt to suggest to the jury that Microsoft acted improperly by filing suit instead of

2    negotiating.  This suggestion directly contradicts the Court's prior rulings that Microsoft had no

3    such obligation and was entitled to file suit when it did.  Dkt. 335 at 19("Motorola's contracts

4    with the IEEE and the ITU do not condition Motorola's RAND obligations on the implementer

5    first applying for a license and then negotiating in good faith."); Dkt. 188 at 15-16 (courthouse

6    may be "only viable arena"); Dkt. 335 at 21; Dkt. No. 465 at 9, 14–16.

7        In any event, Motorola's proposed instruction is improper for other reasons.  Motorola

8    seeks to instruct the jury that industry custom for patent licensing must involve two-way,

9    bilateral negotiation.  Motorola's cited authority does not state this.  In fact, its cited authority

10   does not even show why Motorola believes industry custom has legal significance.  *Rhino*

11   *Linings* and *Lichtenberg* addressed <u>express</u> contractual provisions; *Barstad*  addressed a statutory

12   duty of good faith; and *Amerigraphics* addressed the tort of insurance bad faith.  In *Curtis*, the

13   court reversed a lower court's decision to dismiss a breach claim.  The court mentioned that the

14   defendant was setting rates using an approach that was common in the industry, but this was one

15   factor among many that the court identified.  The court later expressly stated that the defendant

16   could have used <u>other</u> methods and still complied with the duty, meaning industry custom was

17   not particularly relevant.  *Curtis* at *6 ("But that does not necessarily mean, as the Class asserts,

18   that Northern had to use the investment approach method it reported to the OIC.")  In *Axthelm*,

19   the court mentioned compliance with industry standards only to show that the party's actions

20   were reasonable, not because there was something legally relevant about industry standards.

21

22

23

24

25

26   JOINT STATEMENT OF DISPUTED JURY
     INSTRUCTIONS - 92

**Final Instruction No. 25.**

**(Mutual Duty of Good Faith and Fair Dealing)**

**Proposed by Motorola**

Both parties to a contract are bound to perform the contract's terms, including the implied covenant of good faith and fair dealing, even if both parties do not have identical requirements under the contract.  Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement of the contract.  Therefore, Microsoft was bound to perform under the terms of Motorola's contracts with the IEEE and ITU, including the duty of good faith and fair dealing.  Microsoft was also bound to enforce those contracts in good faith.

**Authority for Instruction**:  *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 317, 103 P.3d 753, 766-67 (2004); Restatement (Second) of Contracts § 205 (1981); *Riveredge Assocs. v. Metro. Life Ins. Co.*, 774 F. Supp. 897, 900 (D.N.J. 1991). *See also Monahan v. GMAC Mortgage Corp.*, 179 Vt. 167, 179, 893 A.2d 298, 310 (2005); *ABA Distributors, Inc. v. Adolph Coors Co.*, 542 F. Supp. 1272, 1285 (W.D. Mo. 1982); *McCarthy W. Constructors, Inc. v. Phoenix Resort Corp.*, 169 Ariz. 520, 526, 821 P.2d 181, 187 (Ct. App. 1991).

**Microsoft's response:**  Motorola's proposal references good faith enforcement, suggesting it plans to argue Microsoft acted improperly by filing this lawsuit.  The Court has already ruled that Microsoft — far from acting in bad faith — was entirely within its rights to seek the Court's assistance when it did.  Dkt. 188 at 15-16 ("The court is perplexed by Motorola's argument.");  Dkt. 335 at 21; Dkt. No. 465 at 14–16.  Motorola's proposed instruction is therefore contrary to the Court's prior rulings and invites the jury to overrule the Court on this legal issue.

The cases that Motorola cites show little more than bad faith enforcement is sometimes asserted as a viable cause of action, but Motorola has not asserted a counterclaim alleging bad

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 93

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   faith enforcement.  No authority suggests that a defendant may invoke bad faith enforcement to

2   defeat a claim where the defendant's own conduct is at issue.

3          Moreover, Motorola's proposed jury instruction attempts to reverse the relevant burden,

4   suggesting that Microsoft's conduct should be evaluated in light of the duty of good faith and fair

5   dealing.  Motorola is on trial, and there is no counterclaim that can justify such an instruction.

6   Motorola's sources of authority do not suggest that the duty of good faith and fair dealing

7   operates to place the plaintiff's good faith performance at issue.  For example, *Zuver* addressed

8   the mutuality requirement of arbitration agreements and does not suggest that a breach of

9   contract plaintiff should have its own conduct assessed.  And Restatement (Second) Contracts §

10  205 (1981) states that contracts impose "upon each party a duty of good faith and fair dealing,"

11  but certainly does not state that where one party is on trial for having breached that duty, the

12  other party's conduct is at issue.  The other cases, applying law from other jurisdictions, are

13  likewise unavailing.

14

15

16

17

18

19

20

21

22

23

24

25

26  JOINT STATEMENT OF DISPUTED JURY
    INSTRUCTIONS - 94

**Final Instruction No. 26.**

**(Size of Offer as Evidence of Good Faith)**

**Proposed by Motorola**

The size of an offer alone is not dispositive of the reasonableness of the offer or of whether the offeror has breached the implied covenant of good faith and fair dealing, even if the party receiving the offer considers it to be too high or too low.  [1]  In order to find that Motorola breached the implied covenant of good faith and fair dealing, there must be a course of conduct extending beyond an single offer. [2]

**Authority for Instruction:**

[1] *Alliance Atlantis Releasing Ltd. v. Bob Yari Prods.*, No. CV 08-5526-GW (SSX), 2010 WL 1525687 (C.D. Cal. Apr. 12, 2010); *Warner Theatre Associates Ltd. P'ship v. Metro. Life Ins. Co.*, 1997 WL 685334, *6 (S.D.N.Y. Nov. 4, 1997) (Sotomayor, D.J.), *aff'd*, 149 F.3d 134 (2d Cir. 1998); *see also BBS Technologies, Inc. v. Remington Arms Co., Inc.*, No. Civ. A. 05-98-DLB, 2005 WL 3132307, at *4 (E.D. Ky. Nov. 22, 2005); *see also* Dkt. 716, 13-14.

[2] *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011); *Realtek Semiconductor Corp. v. LSI Corp.*, No. C-12-03451 RMW, 2012 WL 4845628, at *4 (N.D. Cal. Oct. 12, 2012).

**Microsoft's response:**  Motorola proposes to instruct the jury that the size of an offer is not dispositive of reasonableness.  That contradicts what the parties do not dispute and what the Court has already ruled — that a "blatantly unreasonable" offer would (dispositively) breach the duty of good faith and fair dealing.  Dkt. 188 at 15; Dkt. 335 at 25.  Moreover, the Court has stated that the jury's charge will involve comparing the size of Motorola's offers to the true RAND rate.  Dkt. 465 at 9 ("before a jury could decide whether Motorola's offers for its standard essential patents breached its duty of good faith, the court would need to determine a

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 95

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    true RAND royalty rate for purposes of comparison"); Dkt. 465 at 20 ("the court must first

2    determine a RAND royalty range to assist a jury in comparing Motorola's offers to a true RAND

3    range").  Such a comparison presumes that the size of an offer may be dispositive.  The authority

4    that Motorola cites in support of its instruction is inapposite, as none of these cases involve

5    parties whose offers were encumbered by RAND commitments.

6           Motorola also proposes instructing the jury that a breach requires "a course of conduct

7    extending beyond an single offer."  Again, this is contrary to what Motorola has agreed and the

8    Court determined — that any single, blatantly unreasonable offer is a breach.  Dkt. 188 at 15;

9    Dkt. 335 at 25.  It is also contrary to the Court's ruling that "any offer by Motorola (be it an

10   initial offer or an offer during a back-and-forth negotiation) must comport with the implied duty

11   of good faith and fair dealing inherent in every contract."  Dkt. 335 at 25.  This ruling establishes

12   that a single offer — including the initial one — can result in a breach.

13

14          Motorola's cited authority suggests no different.  *L-7 Designs* is inapposite — the court

15   dismissed the implied covenant of good faith and fair dealing claim without substantive analysis.

16   *L-7 Designs*, 647 F.3d at 434 n. 17.  *Realtek* primarily discussed this Court's own prior rulings,

17   including its finding that "any offer" must comport with the duty of good faith and fair dealing.

18   As such, if anything, *Realtek* supports the notion that a single offer can result in a breach.

19

20

21

22

23

24

25

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 96

**Final Instruction No. 27.**

**(Unwillingness to Negotiate)**

**Proposed by Motorola**

The filing of a lawsuit by a patent infringer against a patent owner may be considered as evidence that the infringer is not willing to negotiate towards a RAND license.  If you find that Microsoft's filing of the present lawsuit prevented good faith negotiations from having occurred between the parties, then you must find for Motorola.

**Authority for Instruction:** *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 317, 103 P.3d 753, 766-67 (2004); Restatement (Second) of Contracts § 205 (1981); *Riveredge Assocs. v. Metro. Life Ins. Co.*, 774 F. Supp. 897, 900 (D.N.J. 1991). *See also Monahan v. GMAC Mortgage Corp.*, 179 Vt. 167, 179, 893 A.2d 298, 310 (2005); *ABA Distributors, Inc. v. Adolph Coors Co.*, 542 F. Supp. 1272, 1285 (W.D. Mo. 1982); *McCarthy W. Constructors, Inc. v. Phoenix Resort Corp.*, 169 Ariz. 520, 526, 821 P.2d 181, 187 (Ct. App. 1991).

**Microsoft's response:**  Motorola's proposed instruction is contrary to the Court's prior rulings.  It assumes that Microsoft compromised its rights by filing the present lawsuit.  But the Court has stated time and again that Microsoft had no obligation to negotiate and was fully entitled to file suit when it did.  Dkt. 188 at 15-16; Dkt. 335 at 17-21; Dkt. No. 465 at 9, 14-16.  Motorola's instruction invites the jury to overturn the Court's prior legal rulings.

Moreover, Motorola's proposal offers a purported statement of law that is exceedingly specific to the RAND context, yet cites no RAND-related case to support the proposition.  The issue of whether filing a lawsuit means that the infringer is not willing to negotiate is not relevant to this case, and in any event would be a fact issue, not a legal issue about which the jury needs instruction.

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 97

1

2 **Final Instruction No. 28.**

3 **(Availability of Injunctive Relief)**

4 **Proposed by Motorola**

5     Essential patent holders are not contractually barred from seeking injunctions by virtue of

6 their commitment to standards organizations to license on RAND terms.

7

8 <u>**Authority for Instruction:**</u>  *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178-BBC, 2012

9 WL 5416941, at *12-16 (W.D. Wis. Oct. 29, 2012); *In the Matter of Certain Electronic Devices,*

10 No. 337-TA-794 (ITC 2013) (Dkt. 738.)

11

12 <u>**Microsoft's response:**</u>  The Court should adopt Microsoft's proposed instruction stating that

13 seeking injunctions based on RAND-committed standard essential patents is improper, in view

14 of the authority cited in connection with Microsoft's Proposed Final Instruction No. 18(g).

15 Indeed, this Court has held that at least under certain circumstances, essential patent holders are

16 not permitted to seek injunctions.  Dkt. 607.

17

18

19

20

21

22

23

24

25

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 98

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

2                          **Final Instruction No. 29.**

3                          **(Microsoft's right to enforce)**

4                          **Proposed by Microsoft**

5          Microsoft did not repudiate or forfeit any of its rights under the contracts by seeking the

6   Court's assistance through the present lawsuit against Motorola.  [1]  Microsoft neither had a

7   duty to first apply for a license from Motorola nor a duty to negotiate in good faith with

    Motorola before Motorola's RAND licensing obligations were triggered.  [2]

8

9   **Authority in support of instruction**:

10

11  [1]:     Dkt. 188 at 15-16 ("…the court believes that reasonable parties may disagree as to the

12  terms and conditions of a RAND license, leaving the courthouse as the only viable arena to

13  determine the meaning of 'reasonable' under the circumstances … It would be illogical,

14  therefore, to deem it repudiation of one's rights under a policy to file a lawsuit to enforce one's

15  rights under that same policy."); Dkt. 335 at 21 ("Motorola has committed to license its standard

    essential patents on RAND terms, and, if a third-party beneficiary to that commitment does not

16  believe Motorola is meeting its obligations thereto, the courthouse may be the only place to

    resolve the differences.")

17

18  [2]:     Dkt. 335 at 19 ("Motorola's contracts with the IEEE and the ITU do not condition

19  Motorola's RAND obligations on the implementer first applying for a license and then

20  negotiating in good faith."); Dkt. No. 465 at 9 ("applying for a patent license and negotiating

    towards a patent license were not conditions precedent to Motorola's obligations to grant

21  licenses on RAND terms."); Dkt. 335 at 17 ("Motorola's commitments to grant licenses to

22  implementers on RAND terms cannot turn on whether or not the implementer first applies for a

    license."); Dkt. 335 at 18 ("Motorola committed to the IEEE and ITU to grant RAND licenses to

23  an unrestricted number of applicants, and Motorola cannot avoid this commitment simply by

24  contacting the implementer before the implementer applies for a license."); Dkt. 335 at 18 ("a

25  finding that negotiating in good faith is condition precedent to Motorola's RAND obligations to

26
JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 99

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   the implementer would run contrary to the purpose of Motorola's commitments to the IEEE and

2   the ITU…"); Dkt. No. 465 at 14–16 (noting that the Court had "twice rejected Motorola's

3   contention" that "interminable good faith negotiation" would satisfy its RAND commitment, and

    that Microsoft's suit is proper because "the courthouse acts as an appropriate forum to resolve

4   disputes over legal rights").

5

6   **Motorola's response**:  This instruction wrongly assumes that Motorola intends to argue that (1)

7   Microsoft repudiated its rights to a RAND license; or (2) a condition precedent to Microsoft

8   obtaining a FRAND license was for Microsoft to first apply for such a license.  However, as

9   explained in Motorola's opposition to Microsoft's motion for summary judgment, "[b]ased on

10  Motorola's understanding of the Court's June 6, 2013 Order (Dkt. 335), and without waiving any

11  rights on appeal, Motorola does not intend to pursue the following counterclaim and affirmative

12  defenses at the August 26, 2013 breach of contract trial: . . . (2) Fourth Affirmative Defense –

13  Forfeiture/Repudiation; and (3) Ninth Affirmative Defense – Failure to Satisfy a Condition

14
    Precedent."  Dkt. No. 752 at 19.
15

16      Motorola does not intend to argue that Microsoft "had a duty to first apply for a license

17  from Motorola nor a duty to negotiate in good faith with Motorola before Motorola's RAND

18  licensing obligations were triggered."  Motorola also does not intend to argue that Microsoft

19  "repudiate[d] or forfeit[ed] any of its rights under the contracts by seeking the Court's assistance

20  through the present lawsuit against Motorola."  Accordingly, this instruction is irrelevant,

21  unnecessary and likely to cause jury confusion.

22

23

24

25

26
    JOINT STATEMENT OF DISPUTED JURY
    INSTRUCTIONS - 100

1

2                                **Final Instruction No. 30.**

3                        **(Breach of Contract—Non-Performance of Duty)**

4                                **Proposed by Microsoft**

5          The failure to perform fully a contractual duty when it is due is a breach of contract.

6

7    <u>**Authority in support of instruction**</u>: WPI 302.01.

8

9    <u>**Motorola's response**</u>:  Motorola objects to this instruction because there is a high likelihood that

10   it will lead to jury confusion.  In particular, because Motorola is not in technical or material

11   breach of any express term of the IEEE or ITU contracts, the only issue remaining for trial is

12   whether it has acted in accordance with the duty of good faith and fair dealing.

13          Under Motorola's contracts with the IEEE and ITU, Motorola was not required to make

14   an initial offer on RAND terms.  As this Court stated in its June 6, 2012 Order (Dkt. No. 335),

15   "Because the IEEE and the ITU agreements anticipate that the parties will negotiate towards a

16   RAND license, it logically does not follow that initial offers must be on RAND terms."  As

17   recently stated by the ITC, "satisfaction of the obligation flowing from a FRAND declaration is

18   not measured by a specific offer, 'be it an initial offer or an offer during a back-and-forth

19   negotiation.'" *In the Matter of Certain Electronic Devices, Including Wireless Communication*

20   *Devices, Portable Music and Data Processing Devices, and Tablet Computers*, Commission

21   Opinion, Inv. No. 337-TA-794, at 62 (July 5, 2013) (quoting this Court's June 6, 2012 Order).

22          Accordingly, the use of the phrase "failure to perform fully a contractual duty" may lead

23   the jury to falsely believe that each of Motorola's offers must have been on RAND terms, that

24

25

26
JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 101

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   any offer must have immediately led to an executed license on RAND terms, and so forth.

2   Motorola's proposed final instructions regarding the duty of good faith and fair dealing are more

3   likely to help the jury determine whether Motorola breached any commitments to IEEE or ITU.

4          In addition, Microsoft has not set forth when performance of Motorola's obligations was

5   "due" as to each of the separate theories of breach for the different contracts.  This is also likely

6   to lead to juror confusion.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 102

**Final Instruction No. 31.**

**(Affirmative defense — Ripeness of claim relating to IEEE)**

**Proposed by Motorola**

Ripeness is a question of timing, designed to prevent the courts, through avoidance of premature rulings, from entangling themselves in abstract disagreements.  The first part of the ripeness inquiry asks whether the litigant has asserted an injury that is real and concrete rather than speculative and hypothetical.  The second part of the ripeness inquiry measures the fitness of plaintiff's issues for judicial decision and the hardship to the parties of withholding court consideration.

In this action, Motorola asserts that Microsoft's claim relating to the IEEE was not ripe when Microsoft filed its complaint.  It is Microsoft's burden to prove by a preponderance of the evidence that its claim relating to the IEEE was ripe when Microsoft filed its complaint.  If Microsoft does not prove that its claim relating to the IEEE was ripe at the time it brought it, then you must find for Motorola.

**Authority in support of instruction**:  This instruction is appropriate despite the fact that ripeness is typically an equitable defense because where, as here, jurisdictional issues and the merits of the case are intertwined, the question of jurisdiction should be submitted to the finder of fact.  *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) ("[W]here the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits *or at trial*."); *Berardinelli v. Castle & Cooke Inc.*, 587 F.2d 37, 38-39 (9th Cir. 1978) ("A party is entitled to have the jurisdictional issue submitted to a jury" "where the jurisdictional issue and the issue on the merits are factually so completely intermeshed that the question of jurisdiction is dependent on decision of the merits.").  *See Land v. Dollar*, 330 U.S. 731, 735 (1947) ("[A]lthough as a general rule the District Court would have authority to consider questions of jurisdiction, . . . this is the type of case where the question of jurisdiction is dependent on

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   decision of the merits."); 5B Fed. Prac. & Proc. Civ. § 1350 (3d ed.) ("[T]he judge has discretion

2   to impanel a jury" on the question of jurisdiction).  "If the jurisdictional issue and substantive

3   claims are so intertwined that resolution of the jurisdictional question is dependent on factual

    issues going to the merits, the district court should employ the standard applicable to a motion

4   for summary judgment and grant the motion to dismiss for lack of jurisdiction only if the

5   material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a

    matter of law.  *Otherwise, the intertwined jurisdictional facts must be resolved at trial by the*

6   *trier of fact*."  *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987).  Here, the dispute of

7   material jurisdictional facts – e.g., whether Microsoft at the time of the filing of the complaint (or

8   ever) suffered injury in fact; whether the claims were ripe for judicial intervention at the time of

9   filing – requires that the question of ripeness be submitted to the jury.

10  [1] The instructions provided are based on Supreme Court and Ninth Circuit case law.  *See Lujan*

11  *v. Defenders of Wildlife*, 504 U.S. 555, 571 n.4 (1992); *Scott v. Pasadena Unified Sch. Dist.*, 306

12  F.3d 646, 655 (9th Cir. 2002) ("Jurisdiction is assessed based on "the facts as they existed at the

    time that the complaint was filed."); *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d

13  1134, 1138-40 (9th Cir. 2000).

14
    [2] It is *always* the burden of the party asserting jurisdiction to prove it.  *Kokkonen v. Guardian*

15  *Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391 (1994) ("It is

16  to be presumed that a cause lies outside [the] limited jurisdiction [of federal courts], and the

17  burden of establishing the contrary rests upon the party asserting jurisdiction."); *Brooks Mfg. Co.*

    *v. Dis-Tran Wood Products, LLC*, C11-0309JLR, 2012 WL 1099760, at *3 (W.D. Wash. Mar.

18  30, 2012) (Robart, J.) ("The burden of establishing subject matter jurisdiction rests upon the

19  party asserting jurisdiction."); *Parenti v. United States*, C03-5457FDB, 2003 WL 23200011, at

20  *1 (W.D. Wash. Dec. 22, 2003) ("[P]laintiff always bears the burden of establishing subject

21  matter jurisdiction. In effect, the court presumes lack of jurisdiction until plaintiff proves

22  otherwise.").

23

24  **Microsoft's response**:  Ripeness is a question of law for the Court, not a jury.  *Herrington v.*

25  *County of Sonoma*, 857 F.2d 567, 568 (9th Cir. 1988) ("[T]he district court erred in submitting

26
    JOINT STATEMENT OF DISPUTED JURY
    INSTRUCTIONS - 104

1   this issue to the jury; ripeness is a question of law").  Motorola's cases show that juries may

2   assist with equitable issues, but that mistakes the issue of law versus equity with the issue of

3   questions of law versus questions of fact.[1]  None of these cases address ripeness, let alone show

4   that it is suitable for a jury.  They all address other jurisdictional issues.  Even if some

5   jurisdictional disputes involve issues on which a jury can assist, ripeness does not.  *Herrington* at

6   568.  Moreover, the determinations already made by the Court (*see, e.g.*, Dkt. 188, Dkt. 335,

7   Dkt. 673) confirm that Motorola cannot now assert this defense.  *Steel Co. v. Citizens for a*

8   *Better Environment*, 523 U.S. 83, 101 (1998) (rejecting "doctrine of 'hypothetical jurisdiction'

9   that enables a court to resolve contested questions of law when its jurisdiction is in doubt.").

10

11          Moreover, the Court has ruled on this defense.  Motorola's ripeness theory is "Microsoft

12   has repudiated, or failed to satisfy any condition precedent [for], any right to a RAND license

13   pursuant to Motorola's RAND obligations."  *See* Cramer Decl. Ex. D (Motorola Interrogatory

14   Responses) at 48.  The Court ruled that Microsoft did not repudiate, (Dkt. 355 at 21; Dkt. 188 at

15   15-16), nor did it fail to satisfy conditions precedent.  Dkt. 335 at 17; Dkt. No. 465 at 9.

16          Other problems with Motorola's proposal abound.  It improperly states that Microsoft has

17   the burden to prove ripeness, but the burden on affirmative defenses lies with the defendant.

18   *Wlasiuk v. Whirlpool Corp.*, 914 P.2d 102, 112-113 (Wash. App. 1996).  Motorola's cited cases

19   do not show that the "preponderance" standard governs this defense.[2]  And Motorola confusingly

20   describes Article III ripeness and prudential ripeness without explaining their relation.

21

22

23   _____

24   [1] For avoidance of doubt, Microsoft does object to a jury determination for any of Motorola's
    equitable defenses.  *See* Response to Motorola's Proposed Final Instruction No. 33 (p. 112).

25   [2] The notion of an evidentiary standard does not make sense for a question of law.

26
    JOINT STATEMENT OF DISPUTED JURY
    INSTRUCTIONS - 105

1

2                            **Final Instruction No. 32.**

3            **(Affirmative defense — Ripeness of claim relating to ITU)**

4                                **Proposed by Motorola**

5            Ripeness is a question of timing, designed to prevent the courts, through avoidance of

6    premature rulings, from entangling themselves in abstract disagreements.  The first part of the

7    ripeness inquiry asks whether the litigant has asserted an injury that is real and concrete rather

8    than speculative and hypothetical.  The second part of the ripeness inquiry measures the fitness

     of plaintiff's issues for judicial decision and the hardship to the parties of withholding court

9    consideration.

10           In this action, Motorola asserts that Microsoft's claim relating to the IEEE was not ripe

11   when Microsoft filed its complaint.  It is Microsoft's burden to prove by a preponderance of the

     evidence that its claim relating to the ITU was ripe when Microsoft filed its complaint.  If

12   Microsoft does not prove that its claim relating to the ITU was ripe at the time it brought it, then

13   you must find for Motorola.

14

15   **Authority in support of instruction**:  This instruction is appropriate despite the fact that

16   ripeness is typically an equitable defense because where, as here, jurisdictional issues and the

     merits of the case are intertwined, the question of jurisdiction should be submitted to the finder

17   of fact.  *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) ("[W]here the

18   jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is

19   dependent on the resolution of factual issues going to the merits, the jurisdictional determination

20   should await a determination of the relevant facts on either a motion going to the merits *or at*

21   *trial*.");  *Berardinelli v. Castle & Cooke Inc.*, 587 F.2d 37, 38-39 (9th Cir. 1978) ("A party is

     entitled to have the jurisdictional issue submitted to a jury" "where the jurisdictional issue and

22   the issue on the merits are factually so completely intermeshed that the question of jurisdiction is

23   dependent on decision of the merits.").  *See Land v. Dollar*, 330 U.S. 731, 735 (1947)

24   ("[A]lthough as a general rule the District Court would have authority to consider questions of

25   jurisdiction, . . . this is the type of case where the question of jurisdiction is dependent on

26
     JOINT STATEMENT OF DISPUTED JURY
     INSTRUCTIONS - 106

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1  decision of the merits."); 5B Fed. Prac. & Proc. Civ. § 1350 (3d ed.) ("[T]he judge has discretion

2  to impanel a jury" on the question of jurisdiction).  "If the jurisdictional issue and substantive

3  claims are so intertwined that resolution of the jurisdictional question is dependent on factual

   issues going to the merits, the district court should employ the standard applicable to a motion

4  for summary judgment and grant the motion to dismiss for lack of jurisdiction only if the

5  material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a

6  matter of law.  *Otherwise, the intertwined jurisdictional facts must be resolved at trial by the*

   *trier of fact*."  *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987).  Here, the dispute of

7  material jurisdictional facts – e.g., whether Microsoft at the time of the filing of the complaint (or

8  ever) suffered injury in fact; whether the claims were ripe for judicial intervention at the time of

9  filing – requires that the question of ripeness be submitted to the jury.

10  [1] The instructions provided are based on Supreme Court and Ninth Circuit case law.  *See Lujan*

11  *v. Defenders of Wildlife*, 504 U.S. 555, 571 n.4 (1992); *Scott v. Pasadena Unified Sch. Dist.*, 306

12  F.3d 646, 655 (9th Cir. 2002) ("Jurisdiction is assessed based on "the facts as they existed at the

    time that the complaint was filed."); *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d

13  1134, 1138-40 (9th Cir. 2000).

14
    [2] It is *always* the burden of the party asserting jurisdiction to prove it.  *Kokkonen v. Guardian*
15  *Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391 (1994) ("It is

16  to be presumed that a cause lies outside [the] limited jurisdiction [of federal courts], and the

17  burden of establishing the contrary rests upon the party asserting jurisdiction."); *Brooks Mfg. Co.*

    *v. Dis-Tran Wood Products, LLC*, C11-0309JLR, 2012 WL 1099760, at *3 (W.D. Wash. Mar.
18  30, 2012) (Robart, J.) ("The burden of establishing subject matter jurisdiction rests upon the

19  party asserting jurisdiction."); *Parenti v. United States*, C03-5457FDB, 2003 WL 23200011, at

20  *1 (W.D. Wash. Dec. 22, 2003) ("[P]laintiff always bears the burden of establishing subject

21  matter jurisdiction. In effect, the court presumes lack of jurisdiction until plaintiff proves

22  otherwise.").

23

24  **Microsoft's response:**  This proposed instruction, regarding ripeness as to ITU, is improper for

25  the same reasons as Motorola's proposed instruction regarding ripeness as to IEEE.  Microsoft

26
    JOINT STATEMENT OF DISPUTED JURY
    INSTRUCTIONS - 107

1    incorporates by reference its objection to Motorola's proposed instruction regarding ripeness as

2    to IEEE.  *See* Microsoft's Response to Motorola's Proposed Final Instruction No. 31 (p. 103).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 108

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

2                              **Final Instruction No. 33.**

3                      **(Affirmative defense — Unclean hands)**

4                              **Proposed by Motorola**

5          The doctrine of unclean hands is invoked when a litigant seeking relief has violated a

6   duty of good faith or has acted unconscionably in connection with the same subject matter or

7   relationship out of which the litigant claims a right to relief.  The doctrine of unclean hands

8   closes the doors of a court to one tainted with inequitableness or bad faith relative to the matter

9   in which he seeks relief, however improper may have been the behavior of the defendant.  Those

10  seeking court protection shall have acted fairly and without fraud or deceit as to the controversy

11  in issue.

12         If, in this case, Motorola proves by a preponderance of the evidence that Microsoft is

13  asserting its claims in this case with "unclean hands," then you may not award relief to Microsoft

14  on either of its claims.

15

16  **Authority in support of instruction**:  This instruction is appropriate, despite the fact that

17  unclean hands is typically an equitable claim because courts routinely submit the question of

18  unclean hands to the jury, especially where, as here, there is overlap between the plaintiff's

19  affirmative claim and the defendant's unclean hands defense.  *Abbott Point of Care, Inc. v.

20  Epocal, Inc.*, 868 F. Supp. 2d 1310, 1314-18 (N.D. Ala. 2012) (denying motion to preclude

21  defendant from presenting unclean hands defense to jury because, as here: (1) "when there are

22  factual questions common to both legal and equitable claims, those facts must be tried to the jury

23  in order to preserve the constitutional right to a trial by jury"; and (2) there was "substantial

24  overlap between the evidence to be presented" on the plaintiff's claims and the unclean hands

25  defense); *Unilogic, Inc. v. Burroughs Corp.*, 10 Cal. App. 4th 612, 623 (1992) ("[I]t was

    particularly prudent for the trial judge to exercise his discretion to submit Burroughs's unclean

    hands defense to the jury. . . . [A]ll of Burroughs's theories in support of the unclean hands

    defense were intertwined with the parties' legal causes of action and raised questions of fact and

    credibility properly submitted to a jury.").  Moreover, "the unclean hands doctrine applies not

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 109

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   only to equitable claims, but also to legal ones." *Adler v. Fed. Republic of Nigeria*, 219 F.3d

2   869, 877 (9th Cir. 2000); *Jacobs v. Universal Dev. Corp.*, 53 Cal. App. 4th 120, 699 (1997)

3   ("[T]he doctrine of unclean hands may apply to legal as well as equitable claims . . . and to both

    tort and contract remedies.").

4       The instructions above are based on *Adler v. Fed. Republic of Nigeria*, 219 F.3d 869, 876

5   (9th Cir. 2000); *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985); 2 Cal.

6   Affirmative Def. § 45:18 (2013 ed.).*Adler v. Fed. Republic of Nigeria*, 219 F.3d 869, 876 (9th

7   Cir. 2000); *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985); 2 Cal. Affirmative

    Def. § 45:18 (2013 ed.).

8

9   **Microsoft's response:**  This proposed instruction should be rejected because unclean hands is an

10  equitable determination for the Court.  *Crafts v. Pitts*, 162 P.3d 382, 386 n. 4 (Wash. 2007) (*en

11  banc*).  No jury right attaches for equitable issues.[3]  *Granite State Ins. Co. v. Smart Modular

12  Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996).  Even where a jury assists on equitable issues,

13  its determination is purely advisory and the Court would have to make its own independent

14  ruling.  *Hansen v. Safeway, Inc.*, 2010 WL 2593611, *3 (N.D. Cal. 2010).

15      In any event, the Court <u>has</u> ruled contrary to Motorola's position, which is premised on

16  Microsoft having acted improperly by "suing Motorola for breach of contract, rather than

17  negotiating the terms of a RAND license in good faith… ."  Cramer Decl. Ex. D (Motorola

18  Interrogatory Responses) at 51.  The Court found that Microsoft was entitled to sue Motorola

19  when it did.  Dkt. 335 at 21; Dkt. 188 at 15-16.  Microsoft had no obligation to continue

20  negotiating in good faith with Motorola before filing its suit.  Dkt. 335 at 19; Dkt. 465 at 14-16.[4]

21      Motorola's proposal presents still other problems.  It recites "duty of good faith" and

22

23  [3] For avoidance of doubt, Microsoft objects to a jury determination for any of Motorola's

24  equitable defenses.

25  [4] The Court's ability to make these prior rulings also shows why Motorola is incorrect that there
    is overlap of issues.

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 110

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    "unconscionably," even though those terms find no support in Motorola's sources.  "Duty of

2    good faith" is especially likely to confuse the jury, which must also decide whether Motorola

3    breached the implied duty of good faith and fair dealing.  And the instruction states, without

4    authority, that Motorola must prove unclean hands by a "preponderance of the evidence."  That

5    is contrary to Washington cases that apply the "clear, cogent, and convincing evidence" standard.

6    *Nunes v. Maloney*, No. 19088-9-III, 2001 WL 1250395, * 5 (Wash. App. 2001) ("[The unclean

7    hands] conclusion is supported by the clear, cogent, and convincing evidence …").

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 111

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

**Final Instruction No. 34.**

**(Affirmative defense — Mitigation of damages)**

**Proposed by Motorola**

A plaintiff who sustains damage as a result of a defendant's breach of contract has a duty to minimize its loss.  Once a party has reason to know that performance by the other party will not be forthcoming, the party is ordinarily expected to stop his own performance to avoid further expenditure.  Furthermore, the party is expected to take such affirmative steps as are appropriate in the circumstances to avoid loss by making substitute arrangements or otherwise.

Microsoft is not entitled to recover for any part of the loss that it could have avoided with reasonable efforts.  Motorola has the burden to prove Microsoft's failure to use reasonable efforts to minimize its loss, and the amount of damages that could have been minimized or avoided.

**Authority in support of instruction**:  6 Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 33.03 (6th ed.); Restatement (Second) of Contracts § 350, cmt. b (1981).

**Microsoft's response**:  This proposed affirmative defense is contrary to the Court's prior rulings.  Motorola contends that "Microsoft was required to mitigate its purported damages by applying for a RAND license from Motorola and by negotiating the terms of such a license in a bilateral, good-faith manner."  Cramer Decl. Ex. D (Motorola Interrogatory Responses) at 52-53.  The Court has already ruled that Microsoft had no such obligations.  Dkt. 335 at 19 ("Motorola's contracts with the IEEE and the ITU do not condition Motorola's RAND obligations on the implementer first applying for a license and then negotiating in good faith."); *see also* Dkt. 465 at 14-16; Dkt. 188 at 15-16; Dkt. 465 at 9.

Even if the Court looks past this fatal defect, Motorola's proposed instruction presents

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 112

1    other problems.  Motorola purports to draw from Washington Pattern Jury Instruction 303.06[5],

2    but improperly omits the following: "[*Microsoft*] *may recover expenses connected with*

3    *reasonable efforts to avoid loss.*"  WPI 303.06.  Motorola also draws from the Restatement

4    (Second) of Contracts §350 (1981) cmt. b, but no published Washington case appears to have

5    cited or relied on this comment.  The additional language drawn from the comment is confusing

6    and unnecessary, stating that "[o]nce a party has reason to know that performance by the other

7    party will not be forthcoming, [the party] is ordinarily expected to stop his own performance… ."

8    This could create the impression that Motorola's obligations ceased once Microsoft filed suit.

9    That impression would be contrary to this Court's prior rulings.  Dkt. 335 at 17; *see also* Dkt.

10   335 at 18.  The Court should reject Motorola's attempt to revisit the issue of whether Microsoft

11   had an obligation to negotiate before filing suit.

12

13

14

15

16

17

18

19

20

21

22

23

24   _____

25   [5] Motorola cites WPI 33.03, but Microsoft believes that citation was in error and that Motorola
     intended to cite WPI 303.06.

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 113

1

2                                   **Final Instruction No. 35.**

3                            **(Ability to Avoid Injunction in Germany)**

4                                     **Proposed by Motorola**

5              There is a procedure in the German patent system that allows parties accused of patent

6      infringement to avoid an injunction.  In Microsoft's litigation against Motorola in Germany,

7      Microsoft could have utilized the Section 315 Orange Book procedure to avoid the court entering

       an injunction in Germany.  Microsoft chose not to utilize that procedure.

8

9
       **Authority for Instruction:**  German Federal Civil Court, Antitrust Division, Judgment of 6th

10     May 2009 –Orange Book Standard, Docket No KZR 39/06; *see also* Section 315 of the German

11     Code.

12

13     **Microsoft's response**:  Motorola's proposed instruction offers one of its prior litigation positions

14     that was rejected.  In prior briefing related to Microsoft's motion for a preliminary injunction

15     barring Motorola from seeking injunctions, Motorola argued that the Orange Book defense was

16     "specifically designed to ensure that a party cannot be excluded from practicing a standard-

17     essential patent and for establishing the parameters of a German license on RAND terms."  Dkt.

18     244 at 5.  The Court rejected Motorola's argument, and a jury should not be permitted to

19     overturn the Court on this legal issue.  Dkt. 261.

20

21             Moreover, Motorola's proposed instruction improperly sets forth disputed expert

22     opinions under the guise of a jury instruction.  Though Motorola has retained an expert that may

23     testify as to the conclusions set forth in this proposed instruction, Microsoft's expert Dr. Theo

24     Bodewig is prepared to testify that: (i) the Orange Book procedure does not provide a settled,

25     readily-applicable, predictable procedure for the user of a standard to avoid an injunction on an

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 114

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   SEP; (ii) that the Orange Book procedure would not have produced a RAND royalty; and (iii)

2   that enforcement of German injunctions is not burdensome for patent holders like Motorola, and

3   Motorola refused to refrain from enforcing a German injunction.  These are issues that will be

4   addressed at trial and are not proper for a jury instruction.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 115

1
2

**Final Instruction No. 36.**

3

**(Measure of Expectation Damages—Breach of Contract | MICROSOFT's**

4

**alternative)**

5
6

It is the duty of the court to instruct you as to the measure of damages.

7

By instructing you on damages the court does not mean to suggest for which party your

8

verdict should be rendered.

9

In order to recover actual damages, Microsoft has the burden of proving that one or more

10

of the Motorola entites breached a contract with it, and that Microsoft incurred actual economic

damages as a result of the breach, and the amount of those damages.

11

If your verdict is for Microsoft on Microsoft's breach of contract claim and if you find

12

that Microsoft has proved that it incurred actual damages and the amount of those actual

13

damages, then you shall award actual damages to Microsoft.

14

Actual damages are those losses that were reasonably foreseeable, at the time the contract

15

was made, as a probable result of a breach. A loss may be foreseeable as a probable result of a

16

breach because it follows from the breach either

17

(a) in the ordinary course of events, or

18

(b) as a result of special circumstances, beyond the ordinary course of events, that the

19

party in breach had reason to know.

20

In calculating Microsoft's actual damages, you should determine the sum of money that

21

will put Microsoft in as good a position as it would have been in if Motorola had performed all

of its promises under the contract.

22

The burden of proving damages rests with Microsoft and it is for you to determine, based

23

upon the evidence, whether any particular element has been proved by a preponderance of the

24

evidence. You must be governed by your own judgment, by the evidence in the case, and by

25

these instructions, rather than by speculation, guess, or conjecture. [1]

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 116

1   Microsoft must establish loss with sufficient certainty to provide a reasonable basis for

2   estimating that loss. [2]  However, mathematical exactness is not required. [3]  A greater degree

3   of certainty is required to prove the fact of damages than the amount of damages: once it is

4   reasonably certain that the breach caused damages, you may determine the amount of the

5   damage award by drawing reasonable inferences from reasonably convincing evidence. [4]

    Where the amount of damage is not susceptible of exact apportionment between the defendant's

6   fault and other factors contributing to the loss, absolute certainty is not required. You must

7   exercise a large measure of responsible and informed discretion where the fact of damage is

    proved. [5]

8

9   **Authority in support of instruction**:

10  [1]:    This portion of Microsoft's proposed instruction is drawn from WPI 303.01.  However,

11  Microsoft replaced WPI 303.01's recitation of:

12          *In calculating the plaintiff's actual damages, you should determine the sum of*
13          *money that will put the plaintiff in as good a position as [he] [she] [it] would*
            *have been in if both plaintiff and defendant had performed all of their promises*
14          *under the contract.*

15  with:

16          *In calculating Microsoft's actual damages, you should determine the sum of*
            *money that will put Microsoft in as good a position as it would have been in if*
17          *Motorola had performed all of its promises under the contract.*

18  This modification is appropriate because Microsoft's own performance is not at issue.

19          Microsoft also proposes additional language that would benefit the jury in understanding

20  the applicable burden on Microsoft regarding its proof of damages.  Supporting authority for

    Microsoft's additional language appears below, with reference to the bracketed numerals

21  appearing within Microsoft's proposed instruction.

22  [2]:    *Mason v. Mortgage America, Inc.*, 792 P.2d 142, 146 (Wash 1990) (*en banc*) (citing

23  *Wilson v. Brand S Corp.*, 621 P.2d 748 (1980)) ("The rule in Washington on the question of the

24  sufficiency of the evidence to prove damages is: '[T]he fact of loss must be established with

25  sufficient certainty to provide a reasonable basis for estimating that loss.'")

26
    JOINT STATEMENT OF DISPUTED JURY
    INSTRUCTIONS - 117

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

[3]:    *Id.*

[4]:    *C 1031 Properties, Inc. v. First American Title Ins. Co.*, 301 P.3d 500, 503 (Wash. App. 2013) ("A greater degree of certainty is required to prove the fact of damages than the amount of damages: once it is reasonably certain that the breach caused damages, the fact finder may determine the amount of the damage award by drawing reasonable inferences from reasonably convincing evidence."); *see also Wenzler & Ward Plumbing & Heating Co. v. Sellen*, 330 P.2d 1068, 1069 (Wash. 1959) ("while uncertainty as to the fact of damage is fatal; nevertheless, uncertainty as to the amount or quantum of damages is not to be regarded similarly, as fatal to a litigant's right to recover damages") (citing *Gaasland Company v. Hyak Lumber & Millwork*, 257 P.2d 784 (Wash. 1953)).

[5]:    *Long v. T-H Trucking Co.*, 486 P.2d 300, 303 (Wash. App. 1971) ("where the amount of damage is not susceptible of exact apportionment between the defendant's fault and other factors contributing to the loss, absolute certainty is not required. The trier of fact must exercise a large measure of responsible and informed discretion where the fact of damage is proved")

**Motorola's response**:  Motorola objects to this instruction because it suggests that there is just one contract at issue in this case.  However, Motorola's commitments to the IEEE and ITU are separate.  At the very least, paragraph 4 should be replaced with the following:

> If your verdict is for Microsoft on Microsoft IEEE breach of contract claim, and if you find that plaintiff has proved that Microsoft incurred actual damages and the amount of those actual damages, then you shall award actual damages to the plaintiff.

> Similarly, if your verdict is for Microsoft on Microsoft ITU breach of contract claim,  and if you find that plaintiff has proved that Microsoft incurred actual damages and the amount of those actual damages, then you shall award actual damages to the plaintiff.

Similarly, with respect to calculating actual damages, the instruction is confusing because it fails to explain that the jury must calculate damages separately for Microsoft's IEEE and ITU breach of contract claims.  Accordingly, paragraph 6 should be replaced with the following:

> In calculating Microsoft's actual damages on its IEEE contract claim, you should determine the sum of money that will put Microsoft in as good a position as it would

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   have been in had both Microsoft and Motorola performed all of their promises under the
    IEEE contract.

2

3   In calculating Microsoft's actual damages on its ITU contract claim, you should
    determine the sum of money that will put Microsoft in as good a position as it would
    have been in had both Microsoft and Motorola performed all of their promises under the
4   ITU contract.

5   Motorola also objects to Microsoft's instruction because it assumes Microsoft performed

6   under the contract, such as comporting with the duty of good faith and fair dealing.  In addition,

7   Motorola objects to the additions at the end of Microsoft's instruction.  It is well-settled that

8   evidence of damages is not sufficient if it does not afford a reasonable basis for estimating the

9   loss and subjects the trier of fact to mere speculation or conjecture.  *See Shinn v. Thrust Iv*, 56

10  Wn. App. 827, 840 (Wash. Ct. App. 1990).  Microsoft's additions to the WPI are an apparent and

11  improper attempt to minimize the caution against speculation and conjecture.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 119

1

2                    **Final Instruction No. 36.**

3       **(Measure of Expectation Damages—Breach of Contract | MOTOROLA's**

4                                  **alternative)**

5

6          It is the duty of the court to instruct you as to the measure of damages.

7          By instructing you on damages the court does not mean to suggest for which party your

8    verdict should be rendered.

9          In order to recover actual damages, Microsoft has the burden of proving that one or more

10   of the Motorola entities breached a contract with it, and that Microsoft incurred actual economic

     damages as a result of the breach, and the amount of those damages.

11         If your verdict is for Microsoft on Microsoft's breach of contract claim and if you find

12   that Microsoft has proved that it incurred actual damages and the amount of those actual

13   damages, then you shall award actual damages to Microsoft.

14         Actual damages are those losses that were reasonably foreseeable, at the time the contract

15   was made, as a probable result of a breach. A loss may be foreseeable as a probable result of a

16   breach because it follows from the breach either

17         (a) in the ordinary course of events, or

18         (b) as a result of special circumstances, beyond the ordinary course of events, that the

19         party in breach had reason to know.

20         In calculating Microsoft's actual damages, you should determine the sum of money that

21   will put Microsoft in as good a position as it would have been in had both Microsoft and

     Motorola performed all of their promises under the contract.

22         The burden of proving damages rests with Microsoft and it is for you to determine, based

23   upon the evidence, whether any particular element has been proved by a preponderance of the

24   evidence. You must be governed by your own judgment, by the evidence in the case, and by

25   these instructions, rather than by speculation, guess, or conjecture.

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 120

1

2    **Authority for Instruction**: WPI 303.01

3

4    **Microsoft's response**:  The Court should adopt Microsoft's proposed alternative.  The

5    instruction separately treats "Motorola entities" rather than just "Motorola."  This is improper for

6    the reasons already explained in Microsoft's Response to Motorola's Proposed Preliminary

7    Instruction No. 4 (p. 39).

8            Otherwise, the two parties' proposed instructions are similar, except that Microsoft's

9    proposal includes one additional paragraph explaining with further clarity the burden that

10   Microsoft must meet.  The additional paragraph is fully grounded in long-standing Washington

11   law and will help ensure that the jury arrives at the correct outcome.

12           In Motorola's Response to Microsoft's Proposed Final Instruction No. 36 (p. 116),

13   Motorola states that "the jury must calculate damages separately for Microsoft's IEEE and ITU

14   breach."  Motorola cites no authority for that proposition.  There is no such rule, and juries are

15   commonly asked to render a general verdict on damages even as to multi-count causes of action.

16

17   *See, e.g.*, *Apple, Inc. v. Samsung Electronics Co., LTD et al.*, Case No. 11-cv-01846LHK (N.D.

18   Cal., filed April 15, 2011), Dkt. No. 1931 (rendering general verdict on damages for multi-

19   patent, multi-product infringement action).  Motorola's suggestion that the jury must calculate

20   damages separately is an improper attempt to dictate how Microsoft must put on its own case and

21   should not be adopted.

22

23

24

25

26
JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 121

1

2

3 **Final Instruction No. 37.**

4 **(Measure of Damages—Direct Damages | MICROSOFT's alternative)**

5

6      With regard to Microsoft's breach of contract claim, in your determination of damages
7 you are to use the following measure of damages, in the amounts proved by Microsoft:

8      (a) the costs that Microsoft incurred in defending against Motorola's assertion of standard
9 essential patents against Microsoft in district courts within the United States, before the United
10 States International Trade Commission, and in German courts;

11                              — and —

12      (b) the costs that Microsoft incurred for relocating Microsoft's distribution centers from
Germany to the Netherlands in Spring 2012 to avoid the consequences of the injunctive relief
13 sought by Motorola in Germany.

14

15 **Authority in support of instruction**:  WPI 303.03, adapted (as WPI 303.03 instructs) to include
16 an explanation regarding "the  measure of damages appropriate to the type of contract breach."

17

18 **Motorola's response**:  Motorola objects to this instruction because the damages Microsoft seeks
19 are not cognizable as a matter of law.  As explained in Motorola's motion for summary
20 judgment, Microsoft's damages theories are barred by the *Noerr-Pennington* doctrine.  Further,
21 the American rule bars Microsoft from recovering attorneys fees as contract damages.
22
23      Even if one or more of Microsoft's damages theories survives summary judgment (they
24 should not), Motorola objects to Microsoft's proposal because it does not segregate the two
25 contracts at issue.  Microsoft's theories of damages do not apply equally to both contracts.

26
JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 122

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   Specifically, Motorola's claim for patent infringement in Germany was limited to H.264 standard

2   essential patents.  The cost of defending against those claims as well as the cost of relocating the

3   EMEA distribution center cannot be a measure of damages for breach of Motorola's contract

4   with the IEEE.  Motorola's proposed Final Instruction No. 37 cures this problem by segregating

5   the two contracts at issue and properly identifying the alleged damages that pertain to each.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   JOINT STATEMENT OF DISPUTED JURY
     INSTRUCTIONS - 123

1

2                              **Final Instruction No. 37.**

3              **(Measure of Damages—Direct Damages | MOTOROLA's alternative)**

4          With regard to Microsoft's claim that Motorola breached its contract with the IEEE, in

5   your determination of damages you are to use the following measure of damages, in the amounts

6   proved by Microsoft: the costs that Microsoft incurred in defending against the Motorola

    entities' assertions of 802.11 standard essential patents against Microsoft in district courts within

7   the United States and before the United States International Trade Commission.

8          With regard to Microsoft's claim that Motorola breached its contract with the ITU, in

9   your determination of damages you are to use the following measure of damages, in the amounts

10  proved by Microsoft: the costs that Microsoft incurred in defending against the Motorola

11  entities' assertions of H.264 standard essential patents against Microsoft in district courts within

    the United States and before the United States International Trade Commission, and in German

12  courts; and the costs that Microsoft incurred in relocating Microsoft's distribution center from

13  Germany to the Netherlands in Spring 2012.

14

15  **Authority for Instruction**: WPI 303.03

16

17  **Microsoft's response**:  The Court should adopt Microsoft's proposed alternative.  Motorola's

18  instruction separately treats "Motorola entities" rather than just "Motorola."  This is improper for

19  the reasons already explained in Microsoft's Response to Motorola's Proposed Preliminary

20  Instruction No. 4 (p. 39).  Moreover, Microsoft's proposal more clearly delineates the categories

21  of damages that Microsoft seeks and would be less confusing to the jury.

22

23

24

25

26  JOINT STATEMENT OF DISPUTED JURY
    INSTRUCTIONS - 124

1

2                          **Final Instruction No. 38.**

3                          **(Liability of Corporations)**

4                          **Proposed by Microsoft**

5           Under the law, a corporation is considered to be a person. It can only act through its

6    employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its

7    employees, agents, directors, and officers performed within the scope of authority.  [1]

8           A corporation is considered to have any knowledge acquired by an employee, agent,

9    director, or officer of the corporation if the employee, agent, director, or officer acquired that

10   knowledge within the scope of his or her powers or duties.  [2]  This is so without regard to

11   whether the employee, agent, director, or officer actually communicates the facts to the

12   corporation.  [3]

13   **Authority in support of instruction**:

14   [1]:      Ninth Circuit Model 4.2

15          Microsoft proposes that additional language be added to the Ninth Circuit Model

16   instruction because the knowledge of Motorola's employees may be at issue during trial, and the

17   jury should be instructed as to the legal implications of that knowledge with respect to the

18   defendant corporations.  Support for Microsoft's proposed additional language appears below,

19   with reference to the bracketed numeral set forth in the proposed instruction.

20   [2]:      *Deep Water Brewing, LLC v. Fairway Resources Limited*, 215 P.3d 990, 1011 (Wash.

21   App. 2009) ("Generally, a principal is chargeable with notice of facts known to its agent. This

22   follows the duty of an agent to communicate his knowledge to the principal") (citations omitted);

23   *see also Miller v. United Pacific Casualty Insurance Co.*, 60 P.2d 714, 718-719 (Wash. 1936)

24   (citing cases).

25   [3]:      *American Fidelity and Casualty Company, Inc. v Backstrom*, 287 P.2d 124, 127 (Wash.

26   1955) ("the knowledge of the agent is the knowledge of the principal, without regard to whether

     the agent communicates the facts to it"); *see also Miller v. United Pacific Casualty Insurance*

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 125

1   *Co.*, 60 P.2d 714, 718 (Wash. 1936) (rejecting argument that "since the true fact of ownership of

2   the Packard sedan was not communicated to it by Kalin, it is not bound by the knowledge which

    Kalin had").

3

4

5   **Motorola's response**:  This instruction is inappropriate because if Microsoft is attempting to

6   impute knowledge to Motorola employees or to establish an agency principal relationship, it has

7   not included the required instructions to allow it to ask the jury to make such inferences.  "The

8   law makes no presumption of agency; it is a fact to be proved. 3 Am.Jur.2d Agency s 349 (1962).

9   The burden of establishing agency rests upon the one who asserts it. *Moss v. Vadman*, 77

10  Wash.2d 396, 463 P.2d 159 (1969); *Koppler v. Bugge*, 168 Wash. 182, 11 P.2d 236 (1932)."

11  *Blodgett v. Olympic Sav. & Loan Ass'n*, 32 Wash. App. 116, 128, 646 P.2d 139, 147 (1982).  *See*

12  *also State v. Bryant*, 146 Wash. 2d 90, 104, 42 P.3d 1278, 1285 (2002).  Microsoft has not

13  included an instruction that it has the burden to prove whether defendants' agents were acting

14  within the scope of their authority in acquiring any knowledge.

15          In addition, if Microsoft seeks to allege that an employee acquired knowledge, Microsoft

16  must prove that this knowledge was communicated to the corporation.

17

18          Knowledge is important only if, because of it, one can intelligently choose his
            course of action. Furthermore, the conduct of a person with reference to a result is
19          of importance only if such person has the power of affecting results by his
            conduct. Knowledge by one who has no opportunity to act because of his
20          knowledge, or to make his knowledge effective upon the course of events, does
            not affect legal liability. Hence, a principal is not affected by the knowledge of an
21          agent until it is communicated to him or until the one having the knowledge has
            committed a fault either in transacting something for the principal or in failing to
22          communicate it to others who are to act upon it. Unless there is some breach of
            duty on the part of the agent or servant having knowledge, either to the principal
23          or to a third person, the principal is not affected by such knowledge.

24  Restatement (Second) of Agency § 278 (1958).

25

26
    JOINT STATEMENT OF DISPUTED JURY
    INSTRUCTIONS - 126

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1       Even if the Court were to include an instruction on "Liability of Corporations",

2   Microsoft's deviation from the model (paragraph 2) is duplicative of Ninth Circuit Model 4.2.  In

3   particular, the second sentence in the model instruction states that a corporation is only

4   "responsible for the acts of its employees, agents, directors, and officers *performed within the*

5   *scope of authority*."  Ninth Circuit Model 4.2 (emphasis added).  This instruction already

6   captures Microsoft's proposed additions.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 127

1

2                                   **Final Instruction No. 39.**

3                                      **(Nominal Damages)**

4                                   **Proposed by Microsoft**

5            The law which applies to this case authorizes an award of nominal damages.  If you find

6      for Microsoft but you find that Microsoft has failed to prove damages as defined in these

7      instructions, then you must award nominal damages to Microsoft. Nominal damages must be

       greater than $0.00 but may not exceed $1.00.

8

9

       **Authority in support of instruction**:  Ninth Circuit Model 5.6, except Microsoft clarified that

10     the award "must be greater than $0.00."  This addition is proper in order to avoid juror confusion

11     regarding the number that it should enter on the verdict form in the event it finds for Microsoft

12     on the issue of breach but not damages.

13            Washington courts allow for nominal damages in the event a breach of contract plaintiff

14     that also seeks specific performance does not prove actual economic damages.  *Ford v.*

15     *Trendwest Resorts, Inc.*, 43 P.3d 1223, 1229 (Wash. 2002) (*en banc*) (remanding case "for entry

       of nominal damages on Ford's breach of contract claim"); *Heitmiller v. Prall*, 184 P. 334, 336

16     (Wash. 1919); *Smelt Fishermens Ass'n v. Soleim*, 236 P.2d 1057, 1059 (Wash. 1951) ("In the

17     absence of proof of damages, ordinarily only nominal damages can be recovered even though, as

18     here, the warranty and its breach are evident"); *Hausken v. Hodson-Feenaughty Co.*, 187 P. 319,

19     322 (Wash. 1920) ("although no actual damages are shown, the buyer may, if there has been a

       breach of the contract, recover at least nominal damages."); *Kimberly-Clark Worldwide, Inc. v.*

20     *United Wood Products Co.*, 2009 WL 1941367, *1 (Wash. App. 2009) ("The remaining claims

21     were heard by a jury, which awarded K-C $1 in nominal damages."); *Cintas Corp. v. C. C.*

22     *Cavanaugh, Inc.*, 2007 WL 1180996, *2 (Wash. App. 2007) ("The trial court found in favor of

23     Cavanaugh [on] … Cavanaugh's breach of contract counterclaim … [and] awarded Cavanaugh

       nominal damages of $200").

24

25

26
       JOINT STATEMENT OF DISPUTED JURY

The Court has held that Microsoft is entitled to, and did not waive, its right to obtain specific performance — namely, a provision of a RAND license from Motorola.  Dkt. 465 at 17-19 ("Microsoft has repeatedly represented to the court that it believes it needs a license and that it is ready and willing to accept a license to Motorola's essential patents on RAND terms").  *See also* Dkt. 607 at 13-14 ("As Microsoft has committed to accept a license on RAND terms for Motorola's entire H.264 standard essential patent portfolio, and the litigation is continuing to determine the details of such a license, it is now clear that at some point in the future (either by agreement of the parties or by court adjudication) a license agreement for the Motorola Asserted Patents will become a reality.")

**Motorola's response**:  Microsoft is not entitled to recover nominal damages in this case in the event it is unable to prove actual harm from either of Motorola's alleged breaches (IEEE and ITU).  As explained by Judge Richard Posner, "you can't go into federal court and say you had a contract with X and X broke it and you're really annoyed even though you sustained no injury of any sort (in fact you made money because you re-contracted at a higher price) so please give me a judgment for $1 that I can pin on my wall."  *Apple, Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901, 909 (N.D. Ill. 2012); *id.* ("Without an actual or prospective tangible injury, a federal court has no subject-matter jurisdiction.").  *See also Arizonans for Official English v. Arizona*, 520 U.S. 43, 71, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) ("a claim for nominal damages, extracted late in the day from [plaintiff's] general prayer for relief and asserted solely to avoid otherwise certain mootness, [bears] close inspection");*Hoang v. E*Trade Grp., Inc.*, 2003-Ohio-301, 151 Ohio App. 3d 363, 369, 784 N.E.2d 151, 155 (Ohio Ct. App. 2003) ("Although nominal damages may substitute for proof of the amount of damages in certain cases, it cannot substitute for proof of injury.").  Moreover, Microsoft's Amended and Supplemental Complaint does not seek nominal damages.  Dkt. No. 53 at 24; *see Dunkin' Donuts Inc. v. Dough Boy Mgmt., Inc.*, CIV.A. 02-243

JOINT STATEMENT OF DISPUTED JURY INSTRUCTIONS - 129

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   (JLL), 2006 WL 20521, at *9 (D.N.J. Jan. 3, 2006) ("Defendants are precluded from resorting to

2   nominal damages when, all throughout discovery, Defendants only alleged actual and

3   consequential damages.").

4        Even if the Court were entitled to grant Microsoft nominal damages, it should exercise its

5   discretion and not do so.  *Kulm v. Coast-to-Coast Stores Cent. Org., Inc.*, 248 Or. 436, 443, 432

6   P.2d 1006, 1009 (1967); 22 Am. Jur. 2d Damages § 9 ("[I]f there is no danger of prescription and

7   no proof of substantial loss or injury, or willful wrongdoing by the defendant, there is no purpose

8   for allowing nominal damages, and judgment should be rendered for the defendant.").

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 130

**Microsoft's proposed verdict form**

We, the jury, provide the following answers to the questions submitted by the Court:

**Question 1:**    Do you find that Microsoft has proved by a preponderance of the evidence that Motorola breached its RAND licensing commitment to the IEEE?

YES _____    NO _____

**Question 2:**    Do you find that Microsoft has proved by a preponderance of the evidence that Motorola breached its RAND licensing commitment to the ITU?

YES _____    NO _____

*If you answered "yes" to either Question 1 or Question 2, please answer Question 3.*

**Question 3:**    Please write the amount of monetary award to which you find Microsoft entitled for Motorola's breach.  If you find that Motorola breached its RAND licensing commitment(s), but Microsoft has not proven a specific amount of damages, please enter a nominal damages amount that is greater than $0.00 but does not exceed $1.00.

$ _____

**Motorola's response**:  Motorola objects to Microsoft's proposed verdict form on several grounds.  First, Microsoft's verdict form includes only one entry for the amount of damages.  Damages are an element of each of Microsoft's claims of breach; Microsoft must prove that it suffered damage as a result of Motorola's alleged breach of each contract at issue.  By combining the damages amount into one question for the jury, Microsoft is likely to confuse the

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 131

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700 FAX, (206) 623-8717

1    jury.  It is not surprising that Microsoft seeks to combine the damages inquiry in this manner; it

2    does not have evidence of the amount of damages suffered from the alleged breach of each

3    contract at issue.  Microsoft is obviously trying to cure its lack of proof by combining the two

4    contracts in its Question No. 3.

5           Motorola additionally objects to Microsoft's Question No. 3 because it includes reference

6    to nominal damages, which is not part of the pleadings.

7           Finally, Motorola objects to Microsoft's proposed verdict form because it does not

8    include any of Motorola's affirmative defenses such as ripeness, unclean hands and failure to

9    mitigate damages.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 132

1
2
**Motorola's proposed verdict form**

3
WE THE JURY, in the above-entitled case, find as follows:

4
**IEEE Contract Claim**

5
We have assumed that Motorola has entered into a contract with the Institute of Electrical

6
and Electronics Engineers ("IEEE"), and that Microsoft is a third-party beneficiary to that

7
contract.

8
**Question No. 1.**

9
Has Microsoft proved by a preponderance of the evidence that its claim relating to the

10
IEEE was ripe for decision at the time Microsoft brought this action?

11
**Yes \_\_\_         No \_\_\_**

12
*If you answered yes to Question 1, then answer Question 2.  If you answered no, skip to*

13
*Question 5.*

14
15
**Question No. 2.**

16
Has Microsoft proved by a preponderance of the evidence that in light of the facts and

circumstances Motorola Mobility, LLC, Motorola Solutions, Inc., and General Instrument Corp.

17
breached a contract with the IEEE?

18
**Yes \_\_\_         No \_\_\_**

19
*If you answered yes to Question 2, then answer Question 3.  If you answered no, skip*

20
*to Question 5.*

21
22
**Question No. 3.**

23
What are the damages incurred by Microsoft, if any, as a direct and/or foreseeable result

24
of Motorola having breached a contract with the IEEE?

25
**$_____.**

26
JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 133

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

2 **<u>Question No. 4.</u>**

3     Has Motorola proved by a preponderance of the evidence that Microsoft failed to use

4 reasonable efforts to mitigate damages on its claim relating to the IEEE, and the amount by

5 which damages would have been mitigated?

6                        **Yes ___          No ___**

7     *If you answered yes to Question 4, any damages awarded for the claim relating to the*

8 *IEEE in Question 3 must be reduced by the amount of damages that Microsoft failed to*

9 *mitigate.*

10

                           **ITU Contract Claim**

11

12     We have assumed that Motorola has entered into a contract with the International

13 Telecommunication Union ("ITU"), and that Microsoft is a third-party beneficiary to that

14 contract.

15 **<u>Question No. 5.</u>**

16     Has Microsoft proved by a preponderance of the evidence that its claim relating to the

17 ITU was ripe for decision at the time Microsoft brought this action?

18                        **Yes ___          No ___**

19 *If you answered yes to Question 5, then answer Question 6.  If you answered no, do not*

20 *answer any more questions.*

21

22 **<u>Question No. 6.</u>**

23     Has Microsoft proved by a preponderance of the evidence that in light of the facts and

24 circumstances Motorola Mobility, LLC, Motorola Solutions, Inc., and General Instrument Corp.

25 breached a contract with the ITU?

26

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 134

1    **Yes \_\_\_         No \_\_\_**

2    *If you answered yes to Question 6, then answer Question 7.  If you answered no, skip to*

3    *Question 9.*

4

5    **Question No. 7.**

6           What are the damages incurred by Microsoft, if any, as a direct and/or foreseeable result

7    of Motorola having breached a contract with the ITU?

8    **Attorneys Fees and Litigation Costs**          $_____

9    **Distribution Center Relocation Costs**          $_____

     **Total**                                         $_____

10

11   **Question No. 8.**

12          Has Motorola proved by a preponderance of the evidence that Microsoft failed to use

13   reasonable efforts to mitigate damages on its claim relating to the ITU, and the amount by which

14   damages would have been mitigated?

15                        **Yes \_\_\_         No \_\_\_**

16          *If you answered yes to Question 8, any damages awarded for the claim relating to the*

17   *ITU in Question 7 must be reduced by the amount of damages that Microsoft failed to*

18   *mitigate.*

19

20                              **Unclean Hands**

21   **Question No. 9.**

22          Has Motorola proved by a preponderance of the evidence that Microsoft is asserting its

23   claims relating to the IEEE and ITU with unclean hands?

24                        **Yes \_\_\_         No \_\_\_**

25

26   JOINT STATEMENT OF DISPUTED JURY
     INSTRUCTIONS - 135

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

**Microsoft's response**:  Motorola's proposed verdict form suffers from numerous problems.  First, it refers to each corporate entity separately, which is confusing and improper for the reasons stated in Microsoft's Response to Motorola's Proposed Preliminary Instruction No. 4 (p. 39).  Second, it asks the jury to determine affirmative defenses, none of which are properly before the jury.  *See* Microsoft's Responses to Motorola's Proposed Final Instruction Nos. 31 (p. 103), 33 (p. 109), and 34 (p. 112).  Third, it places the burden of proof on Microsoft as to the ripeness issue.  The burden of proof on affirmative defenses lies with Motorola.  *See* Microsoft's Response to Motorola's Proposed Final Instruction No. 31 (p. 103).  Fourth, Motorola's proposal suggests that Microsoft must establish damages and does not provide the jury with clear instruction that it can enter nominal damages.  Microsoft's authority for its Proposed Final Instruction No. 39 (p. 128) shows that the possibility of nominal damages is appropriate.

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 136

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   Dated this 26th day of July, 2013.

2

3   CALFO HARRIGAN LEYH & EAKES LLP        SUMMIT LAW GROUP PLLC

4   By ____/s/ Arthur W. Harrigan, Jr.____        By ____/s/ Ralph H. Palumbo_____
    By ____/s/ Christopher Wion_____        By ____/s/ Philip S. McCune_____
5   By ____/s/ Shane P. Cramer_____        Ralph H. Palumbo, WSBA #4751
       Arthur W. Harrigan, Jr., WSBA #1751        Philip S. McCune, WSBA #21081
6      Christopher Wion, WSBA #33207            *ralphp@summitlaw.com*
       Shane P. Cramer, WSBA #35099            *philm@summitlaw.com*
7

8   By ____/s/ T. Andrew Culbert_____        By ____/s/ Thomas V. Miller_____
       T. Andrew Culbert, WSBA #35925            Thomas V. Miller
9      David E. Killough, WSBA #21119            MOTOROLA MOBILITY LLC
       MICROSOFT CORPORATION                    600 North U.S. Highway 45
10     1 Microsoft Way                          Libertyville, IL 60048-1286
       Redmond, WA  98052                       (847) 523-2162
11     Phone:  425-882-8080
       Fax:  425-869-1327                       Kathleen M. Sullivan (*pro hac vice*)
12                                               David Elihu
    David T. Pritikin (*pro hac vice*)           Quinn Emanuel Urquhart & Sullivan, LLP
13  Richard A. Cederoth (*pro hac vice*)         51 Madison Avenue, 22nd Floor
    Constantine L. Trela, Jr. (*pro hac vice*)   New York, NW  10010
14  William H. Baumgartner, Jr. (*pro hac vice*) (212) 849-7000
    Ellen S. Robbins (*pro hac vice*)            *kathleensullivan@quinnemanuel.com*
15  Douglas I. Lewis (*pro hac vice*)
    David C. Giardina (*pro hac vice*)           Brian C. Cannon (pro hac vice)
16  John W. McBride (*pro hac vice*)             Andrea Pallios Roberts (pro hac vice)
    SIDLEY AUSTIN LLP                            Quinn Emanuel Urquhart & Sullivan, LLP
17  One South Dearborn                           555 Twin Dolphin Drive, 5th Floor
18  Chicago, IL  60603                           Redwood Shores, CA  94065
    Phone:  312-853-7000                         (640) 801-5000
19  Fax:  312-853-7036                           *briancannon@quinnemanuel.com*
                                                 *andreaproberts@quinnemanuel.com*
20
    Carter Phillips (*pro hac vice*)
21  Brian R. Nester, (*pro hac vice*)            William C. Price (pro hac vice)
    SIDLEY AUSTIN LLP                            Quinn Emanuel Urquhart & Sullivan, LLP
22  1501 K Street NW                             865 S. Figueroa St., 10th Floor
    Washington, DC  20005                        Los Angeles, CA  90017
23  Telephone:  202-736-8000                     (213) 443-3000
    Fax:  202-736-8711                           *williamprice@quinnemanuel.com*
24
25  **Counsel for Microsoft Corp.**
                                                 Steven Pepe (*pro hac vice*)
26
    JOINT STATEMENT OF DISPUTED JURY            LAW OFFICES
    INSTRUCTIONS - 137                          **CALFO HARRIGAN LEYH & EAKES, LLP**
                                                999 THIRD AVENUE, SUITE 4400
                                                SEATTLE, WASHINGTON 98104
                                                TEL, (206) 623-1700 FAX, (206) 623-8717

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Jesse J. Jenner (*pro hac vice*)
Stuart W. Yothers (*pro hac vice*)
Kevin J. Post (*pro hac vice*)
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY  10036-8704
(212) 596-9046
*steven.pepe@ropesgray.com*
*jesse.jenner@ropesgray.com*
*stuart.yothers@ropesgray.com*

Norman H. Beamer (*pro hac vice*)
Gabrielle E. Higgins (*pro hac vice*)
Ropes & Gray LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA  94303-2284
(650) 617-4030
*norman.beamer@ropesgray.com*
*gabrielle.higgins@ropesgray.com*

Paul M. Schoenhard (*pro hac vice*)
Ropes & Gray LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC  20005-3948
(202) 508-4693
*paul.schoenhard.@ropesgray.com*
*kevin.post@ropesgray.com*

**Counsel for Motorola Solutions, Inc.,
Motorola Mobility LLC, and General
Instrument, Corp.**

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 138

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

**CERTIFICATE OF SERVICE**

I, Emma Aubrey, swear under penalty of perjury under the laws of the State of Washington to the following:

    1.      I am over the age of 21 and not a party to this action.

    2.      On the 26th day of July, 2013, I caused the preceding document to be served on counsel of record in the following manner:

**Attorneys for Motorola Solutions, Inc., and Motorola Mobility, Inc.:**

| | |
|---|---|
| Ralph Palumbo, WSBA #04751 | |
| Philip S. McCune, WSBA #21081 | _____ Messenger |
| Lynn M. Engel, WSBA #21934 | _____ US Mail |
| Summit Law Group | _____ Facsimile |
| 315 Fifth Ave. South, Suite 1000 | \_\_X\_\_ ECF |
| Seattle, WA  98104-2682 | |
| Telephone:  206-676-7000 | |
| Email:  Summit1823@summitlaw.com | |

| | |
|---|---|
| Steven Pepe (*pro hac vice*) | _____ Messenger |
| Jesse J. Jenner (*pro hac vice*) | _____ US Mail |
| Ropes & Gray LLP | _____ Facsimile |
| 1211 Avenue of the Americas | \_\_X\_\_ ECF |
| New York, NY  10036-8704 | |
| Telephone:  (212) 596-9046 | |
| Email:  steven.pepe@ropesgray.com | |
| Email:  jesse.jenner@ropesgray.com | |

| | |
|---|---|
| Norman H. Beamer (*pro hac vice*) | _____ Messenger |
| Ropes & Gray LLP | _____ US Mail |
| 1900 University Avenue, 6th Floor | _____ Facsimile |
| East Palo Alto, CA  94303-2284 | \_\_X\_\_ ECF |
| Telephone:  (650) 617-4030 | |
| Email:  norman.beamer@ropesgray.com | |

JOINT STATEMENT OF DISPUTED JURY
INSTRUCTIONS - 139

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES, LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    Paul M. Schoenhard (*pro hac vice*)                    _____ Messenger
     Ropes & Gray LLP                                        _____ US Mail
2    One Metro Center                                        _____ Facsimile
     700 12th Street NW, Suite 900                             X      ECF
3    Washington, DC  20005-3948
     Telephone:  (202) 508-4693
4    Email: Paul.schoenhard@ropesgray.com

5
     Andrea Pallios Roberts (*pro hac vice*)                 _____ Messenger
6    Brian C. Cannon (*pro hac vice*)                        _____ US Mail
     Quinn Emanuel Urquhart & Sullivan, LLP                  _____ Facsimile
7    555 Twin Dolphin Drive, 5th Floor                         X      ECF
8    Redwood Shores, CA 94065
     Telephone:  (650) 801-5000
9    Email: andreaproberts@quinnemanuel.com
     Email: briancannon@quinnemanuel.com
10

11   Kathleen M. Sullivan (*pro hac vice*)                   _____ Messenger
12   David Elihu (*pro hac vice*)                            _____ US Mail
     Quinn Emanuel Urquhart & Sullivan, LLP                  _____ Facsimile
13   51 Madison Ave., 22nd Floor                               X      ECF
     New York, NY 10010
14   Telephone:  (212) 849-7000
     Email: kathleensullivan@quinnemanuel.com
15

16   William Price (*pro hac vice*)                          _____ Messenger
17   Quinn Emanuel Urquhart & Sullivan, LLP                  _____ US Mail
     865 S. Figuera St., 10th Floor                          _____ Facsimile
18   Los Angeles, CA 90017                                     X      ECF
     Telephone:  (212) 443-3000
19   Email: williamprice@quinnemanuel.com
     MicrosoftvMotoBreachofRANDCase@quinnemanuel.com
20

21        DATED this 26th day of July, 2013.

22

23             s/  Emma Aubrey                         _
               EMMA AUBREY
24

25

26
     JOINT STATEMENT OF DISPUTED JURY
     INSTRUCTIONS - 140