The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION, a Washington corporation,

                         Plaintiff,

        v.

MOTOROLA, INC., and MOTOROLA MOBILITY LLC, and GENERAL INSTRUMENT CORPORATION,

                      Defendants.

CASE NO. C10-1823-JLR

DEFENDANTS' MOTION IN LIMINE

**NOTE ON MOTION CALENDAR:**
**Friday, August 9, 2013**

**REDACTED**

DEFENDANTS' MOTION IN LIMINE
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

I.    This Court Should Preclude the Introduction Into Evidence of the April 19, 2013
      Order Determining RAND Rates and Ranges ...................................................... 1

      A.    This Court's Prior Ruling Establishing a RAND Rate Range Is Irrelevant to
            the Breach of Contract Claim ..................................................................... 3

      B.    Even if Relevant, Evidence Concerning the Court's Ruling on the Proper
            RAND Rate Would Be Unduly Prejudicial ................................................ 6

      C.    Introduction Of The Court's Entire RAND Order Violates Motorola's
            Seventh Amendment Right to Trial by Jury ............................................... 8

      D.    In the Alternative, Any Reference to the Conclusions of the RAND Order
            Should Be Set Forth Solely in a Limited Instruction to the Jury ............. 9

II.   The Court Should Preclude Opinions and Argument Concerning Positions Taken in
      the November, 2012 Rate-Setting Proceeding .................................................... 11

      A.    Arguments Made During the Rate-setting Proceeding are Not Evidence ........... 12

      B.    Motorola's Former Positions are Not Relevant to the Issues to be Decided
            by the Jury ................................................................................................. 12

      C.    Allowing Microsoft to Reference Motorola's Prior Positions Will Unfairly
            Prejudice Motorola .................................................................................... 13

III.  The Court Should Preclude Evidence and Argument or Reference to Privileged
      Communications ................................................................................................. 13

      A.    Motorola's Privilege Assertions Are Inadmissible ............................................. 16

      B.    Any Argument or Attempt by Microsoft to Elicit Privilege Objections
            Would Be Highly Prejudicial to Motorola ................................................ 17

      C.    Motorola's Privilege Log Is Inadmissible .......................................................... 18

CONCLUSION ................................................................................................................ 18

DEFENDANTS' MOTION IN LIMINE - i
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

TABLE OF AUTHORITIES

**Page**

## <u>Cases</u>

*Amax Coal Co. v. United Mine Workers of Am., Int'l Union,*
  92 F.3d 571 (7th Cir. 1996) ................................................................. 7

*Arpin v. Santa Clara Valley Transp. Agency,*
  261 F.3d 912 (9th Cir. 2001) .............................................................. 12

*Beacon Theatres, Inc. v. Westover,*
  359 U.S. 500 (1959) ............................................................................ 8

*Bell v. City of Miamisburg,*
  1992 WL 1258527 (S.D. Ohio 1992) ................................................ 17

*Bonnieview Homeowners Ass'n v. Woodmont Builders, L.L.C.,*
  655 F. Supp. 2d 473 (D.N.J. 2009) ..................................................... 4

*Bridges v. Enterprise Products Co., Inc.,*
  No. 3:05-cv-786-WHB-LRA, 2008 WL 80401 (S.D. Miss. Jan. 4, 2008)................................. 6

*City of New Orleans v. New Orleans Waterworks Co.,*
  142 U.S. 79 (1891)............................................................................... 5

*Crosby v. U.S. Dep't of Labor,*
  No. 97-70834, 1995 WL 234906 (9th Cir. Apr. 20, 1995)................................. 16, 18

*Dairy Queen, Inc. v. Wood,*
  369 U.S. 469 (1962) ........................................................................ 8, 9

*EOTT Energy Operating Ltd. Partnership v. Winterthur Swiss Ins. Co.,*
  257 F.3d 922 (9th Cir. 2001) .............................................................. 12

*E-Pass Technologies v. Moses & Singer, LLP,*
  No. C-09-5967 EMC, 2012 WL 2277937 (N.D. Cal. June 18, 2012) ........................ 6

*Estrella v. Brandt,*
  682 F.2d 814 (9th Cir. 1982) .............................................................. 12

*Gaglidari v. Denny's Restaurants, Inc.,*
  117 Wn. 2d 426 (1991) ........................................................................ 4

*Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.,*
  No. 4:02-cv-40327, 2004 WL 5508752 (S.D. Iowa Sept. 9, 2004)..................... 7, 9

*Klein v. City of Laguna Beach,*
  381 Fed. Appx. 723 (9th Cir. 2010)................................................... 12

DEFENDANTS' MOTION IN LIMINE - ii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,*
383 F.3d 1337 (Fed. Cir. 2004) ...................................................................... 15, 16, 17

*Lytle v. Household Mfg., Inc.,*
494 U.S. 545 (1990).......................................................................................... 9

*Mackey v. Am. Fashion Inst. Corp.,*
804 P.2d 642 (Wash. Ct. App. 1991).............................................................. 7

*McKesson Info. Solutions, Inc. v. Bridge Medical, Inc.,*
434 F. Supp. 2d 810 (E.D. Cal. 2006) ..................................................... 15, 17, 18

*Nabisco, Inc. v. PF Brands Inc.,*
191 F.3d 208 (2d Cir. 1999) ............................................................................ 15

*Novartis Pharms. Corp. v. Teva Pharms. USA, Inc.,*
No. 05-CV-1884 (DMC) 2009 WL 3754170 (D.N.J. Nov. 5, 2009) ................ 5

*Old Republic Ins. Co. v. Ness, Motley, Loadholt, Richardson & Poole, PA,*
No. 03 C 5238, 2006 WL 3782994 (N.D. Ill. Dec. 21, 2006) ....................... 16, 18

*Park Avenue Condo. Owners Ass'n v. Buchan Devs., L.L.C.,*
71 P.3d 692 (Wash. Ct. App. 2003)................................................................. 7

*Parker v. Prudential Ins. Co.,*
900 F.2d 772 (4th Cir. 1990) .................................................................... 15, 17

*Petrello v. White,*
No. 10 CV 3082, 2012 WL 2803759 (E.D.N.Y. 2012) .................................. 7

*Realtek Semiconductor Corp. v. LSI Corp.,*
No. C-12-03451 RMW, 2012 WL 4845628 (N.D. Cal. Oct. 12, 2012) ........... 7

*Rudy-Glanzer v. Glanzer,*
232 F.3d 1258 (9th Cir. 2000) .................................................................. 15, 17

*SEC v. Retail Pro, Inc.,*
No. 08-cv-1620-WH-RBB, 2011 WL 589828 (S.D. Cal. Feb. 10, 2011) ....... 6

*Sensormatic Electronics Corp. v. WG Sec. Prods., Inc.,*
No. 2:04-CV-167, 2006 WL 5111113 (E.D. Tex. June 5, 2006) .................... 16

*Smith v. Daws,*
614 F.2d 1069 (5th Cir. 1980) ......................................................................... 7

*Strange v. Les Schwab Tire Centers of Or., Inc.,*
No. C06-045 RSM, 2009 WL 2987400 (W.D. Wash. Sept. 14, 2009) ........... 16, 18

*United State v. Cal. Mobile Home Park Mmt.,*
107 F.3d 1374 (9th Cir. 1997.) ........................................................................ 9

DEFENDANTS' MOTION IN LIMINE - iii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*United States v. St. John,*
    267 Fed. App. 17, 2008 WL 482300 (2d Cir. 2008) ................................................. 17

*United States v. Westbrook,*
    125 F.3d 996 (7th Cir. 1997) ..................................................................................... 4, 5

*Zubulake v. UBS Warburg LLC,*
    382 F. Supp. 2d 536 (S.D.N.Y. 2005) ........................................................................... 5

**Statutes**

Fed. R. Civ. P. 38(c) ........................................................................................................ 9

Fed. R. Evid. 105 ............................................................................................................ 10

Fed. R. Evid. 401 ....................................................................................................... 3, 12

Fed. R. Evid. 402 ....................................................................................................... 3, 12

Fed. R. Evid. 403 ............................................................................................. 6, 13, 16, 17

Fed. R. Evid. 1002 .......................................................................................................... 18

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

**INTRODUCTION**

Motorola hereby files the following motions in limine: (1) To preclude introduction of this Court's April 19, 2013 Order, (2) to preclude opinions and argument concerning positions taken in the November, 2012 rate-setting proceeding, and (3) to preclude evidence and argument or reference to privileged communications.

## I.   THIS COURT SHOULD PRECLUDE THE INTRODUCTION INTO EVIDENCE OF THE APRIL 19, 2013 ORDER DETERMINING RAND RATES AND RANGES

Motorola respectfully moves that the Court exclude from the jury's consideration the Court's April 19, 2013 Order determining the RAND rate and range for the Motorola standard-essential patents at issue in this case.  The issue before the jury is whether Motorola acted consistent with its commitments to the IEEE and ITU in 2010 *before* any negotiation between the parties had taken place, including whether Motorola's October 2010 opening offers to Microsoft were in good faith and consistent with those commitments.  By contrast, the Court determined, based on extensive discovery and a full bench trial, what RAND rates and ranges would have obtained at the *conclusion* of a hypothetical RAND negotiation between the parties.  Motorola did not have the Court's Order available to it when it made its opening offers in October 2010, nor did Motorola have access to the vast universe of information the Court had before it in reaching its findings and conclusions—including Microsoft and third-party information, much it under seal and still unavailable to Motorola executives to this day.  Motorola thus respectfully submits that the Court's Order determining RAND rates and ranges *ex post* is not relevant to the issue whether Motorola acted in good faith when, *ex ante,* it made opening offers based on the information available to Motorola prior to beginning any negotiation with Microsoft.

The distinction between the two phases of the case is clear from the sequence of this Court's orders.  In rejecting Motorola's motion to try the entire case to a jury (Dkts. 362, 377 n.6), the Court split the case into a first, RAND determination phase (Dkt. 465 at 10-11) and a second phase in which a jury will determine whether Motorola breached its contractual RAND obligations

DEFENDANTS' MOTION IN LIMINE - 1
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

1   to the IEEE and ITU at and around the time it sent its October 2010 letters to Microsoft offering to

2   license its H.264 and 802.11 patent portfolios.  In the first phase, the Court, after hearing from 18

3   witnesses (Dkt. 673 at 5), issued a 207-page opinion determining that the RAND royalty rate for

4   Motorola's H.264 SEP portfolio is 0.555 cents per unit with an upper bound of 16.389 cents per

5   unit (Dkt. 673 at 8) and that the RAND royalty range for Motorola's 802.11 SEP portfolio is .8

6   cents per unit to 3.471 cents per unit (Dkt. 673 at 8).  Motorola recognizes that, in its April 19,

7   2013 decision, the Court stated that, "[t]o decide whether Motorola's opening offers were in good

8   faith, a fact-finder must be able to compare them with a reasonable RAND royalty rate and,

9   because more than one rate could conceivably be RAND, a reasonable RAND royalty range."

10   Dkt. 673 at 5.  And Motorola appreciates the enormous effort the Court invested in determining

11   the appropriate RAND royalty rates ranges.  But the detailed scope of the Order demonstrates that

12   the Court relied on that Motorola did not and could not know when it made its offers in 2010. the

13   Court's ultimate holding regarding what would be the result of a hypothetical bilateral negotiation

14   between Motorola and Microsoft does not help the jury decide whether Motorola acted in good

15   faith in seeking to open those negotiations at the time it made its opening offer.

16      Even if relevant, introduction of the Court's opinion and order would cause undue

17   prejudice to Motorola that outweighs any probative value.  Introduction of the order increases the

18   risk that the jury will hold Motorola liable for failing to determine *ex ante* in 2010 what the Court

19   determined *ex post* in 2013, only after a lengthy adversarial process with privileged access to

20   Microsoft's confidential information that was unavailable to Motorola at the time of the initial

21   offers.  Motorola thus respectfully submits that, because the jury is being asked to determine only

22   whether Motorola acted in good faith prior to any negotiations in 2010, the jury's exposure to the

23   Court's Order setting a final RAND rate and range will unfairly prejudice Motorola and confuse

24   the jury.

25      Finally, Microsoft's proposed introduction of the Court's entire opinion, which discusses

26   matters going far *beyond* the two discrete final RAND range findings determined after the bench

DEFENDANTS' MOTION IN LIMINE - 2
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

1    trial, would invade the province of the jury in violation of Motorola's Seventh Amendment right.

2    The Court clarified in its October 10, 2012 Order that the November 2012 bench trial "will resolve

3    two discrete issues: (1) a RAND royalty range for Motorola's standard essential patents; and (2) a

4    RAND royalty point for Motorola's standard essential patents." Dkt. 465 at 21-22.   The Seventh

5    Amendment requires that any issues common to determining the RAND rate and range and to

6    determining whether Motorola breached its commitments to the IEEE and ITU be preserved for

7    determination by a jury.  Introducing the opinion and Order poses the risk that the jury will believe

8    itself bound to rule as the Court has ruled on issues that remain for the jury to decide.

9         Thus, this Court should preclude the introduction of the April 19, 2013 Order as evidence

10   presented to the jury or, in the alternative, permit only a jury instruction as to the ultimate RAND

11   rate range along with a limiting instruction.

12   **A.    This Court's Prior Ruling Establishing a RAND Rate Range Is Irrelevant to the**
         **Breach of Contract Claim**
13
14        Because the Court's April 19, 2013 Order is not relevant to whether Motorola acted in

15   good faith in making its opening offers in October 2010, no reason exists for the jury to hear

16   evidence regarding the Court's RAND royalty range. As a general matter, evidence is relevant if it

17   has "any tendency to make the existence of any fact that is of consequence to the determination of

18   the action more probable or less probable than it would be without the evidence." FED. R. EVID.

19   401.  Evidence that is not relevant is not admissible and should be excluded at trial. FED. R. EVID.

20   402.  The Court's April 19, 2013 RAND Order is not relevant to the jury's determination of

21   whether Motorola acted in good faith before that Order existed, for several reasons:

22        *First*, not only were the court-developed RAND ranges unavailable to Motorola when it

23   first sent the letters in 2010, but Motorola also did not have available to it the expert testimony and

24   analysis, as well as the wide-ranging discovery, that formed the basis for the two sides'

25   evidentiary presentations at trial and, ultimately, this Court's RAND rate calculation.  Whether a

26   party acted in good faith must be judged by the facts at the time of the alleged breach.  *See, e.g.,*

DEFENDANTS' MOTION IN LIMINE - 3
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1    *Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn. 2d 426 (1991) (en banc) ("Substantial testimony

2    at trial was devoted to determining whether plaintiff was actually guilty of fighting. However, as

3    noted above, whether plaintiff was actually fighting is irrelevant to this action; rather, the issue is

4    whether at the time plaintiff was dismissed defendant reasonably, in good faith, and based on

5    substantial evidence believed plaintiff had done so."); *see also Bonnieview Homeowners Ass'n v.*

6    *Woodmont Builders, L.L.C.*, 655 F.Supp.2d 473, 511 (D.N.J. 2009) ("While it is disputed whether

7    representations were made to the Plaintiffs about the nature of the topsoil, the Plaintiffs do not

8    dispute that, at the time of the alleged misrepresentations regarding the nature of the topsoil, the

9    Woodmont Defendants did not know that the soil was contaminated.  Because it did not know the

10    soil was contaminated, Woodmont Properties could not have had the requisite 'bad motive or

11    intention' that 'is essential to a cause of action for breach of the covenant of good faith and fair

12    dealing.'") (citation omitted).  Because the Court's Order and the evidence upon which the Court

13    relied were not available to Motorola at the time it made its opening offers, the Court's Order is

14    not a relevant consideration for the jury. *United States v. Westbrook*, 125 F.3d 996, 1007 (7th Cir.

15    1997) ("Evidence is not relevant if there is no connection between the evidence and the issues of

16    the case or material facts at issue.").

17      *Second*, the jury is responsible only for determining whether Motorola's initial offers

18    violated the terms of the IEEE and ITU policies at issue—not whether Motorola later violated the

19    Court's Order or refused to enter a final RAND license consistent with the rates set by the Court.

20    The IEEE and ITU policies at issue are not concerned with setting final RAND licensing terms. As

21    this Court stated in its Order, "[t]he intellectual property rights policies of the IEEE and ITU focus

22    on technical issues and do not describe, explain, or govern RAND licensing terms and

23    conditions." Dkt. 673, ¶ 49 (citing Ex. 2838 at MOTM_WASH1823_0000036).  The Court also

24    explained that "[t]he IEEE and ITU have declined to provide a definition of what constitutes

25    RAND terms and conditions.  Further, the organizations do not attempt to determine what

26    constitutes a reasonable royalty rate or what other terms and conditions are reasonable or

nondiscriminatory for any license between interested parties." *Id.* ¶ 50. This Court has previously characterized its initial task as "first determin[ing] the RAND terms of an agreement between Motorola and Microsoft for Motorola's relevant portfolios of standard essential patents." Dkt. 335 at 24-26. But "[c]ourts have no power to make new contracts or to impose new terms upon parties to contracts without their consent." *City of New Orleans v. New Orleans Waterworks Co.*, 142 U.S. 79, 91-92 (1891). The Court's Order therefore is not part of the policies Microsoft claims Motorola breached in 2010, and thus it is not relevant to the jury's determination whether Motorola breached those policies.

*Third*, "[a] judicial ruling or court conclusion of law is not a matter for the jury which operates as the factfinder." *Novartis Pharms. Corp. v. Teva Pharms. USA, Inc.*, No. 05-CV-1884 (DMC), 2009 WL 3754170 (D.N.J. Nov. 5, 2009) (disallowing introduction of denial of preliminary injunction in part because "[b]ifurcation of this case for trial upon damages and/or equitable relief and trial of the underlying issues of obviousness and inequitable conduct separately renders Plaintiffs' request for a preliminary injunction irrelevant to those issues currently before the Court for trial.). The Court bifurcated the determination of a RAND royalty rate from a finding of a breach, which is the duty of the jury. The jury is responsible only for determining whether Motorola's 2010 conduct including its opening offer letters was consistent with its RAND obligations. The Court's ruling provides no additional evidence known to Motorola at the time it made its October 2010 offers. *See Zubulake v. UBS Warburg LLC*, 382 F. Supp. 2d 536, 546 (S.D.N.Y. 2005) ("Defendants contend that this Court's previous decisions in this case, ..., are irrelevant to plaintiff's ... claims and would unfairly prejudice UBS. Defendants are right. Placing the five previous decisions in this case before the jury would serve no legitimate purpose. The jurors will be told all they need to know through the evidence admitted at trial and my charge. There is no need to reference my earlier decisions."). And Motorola's good faith in making its initial offers can only be measured by its knowledge and intention at the time it made those offers; the *ex post* introduction of unknowable facts (including facts that were only available

DEFENDANTS' MOTION IN LIMINE - 5
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:   (206) 676-7001

to Microsoft or third parties, not Motorola) and Court findings based on those facts distorts the

evidence relevant to Motorola's conduct at and around the time of its initial offers.  There is

substantial risk that a jury would infer that Motorola's conduct should have been guided by ex

post knowledge that simply did not exist at the time it made its opening offers.  Therefore,

exclusion of the April 19, 2013 Order is warranted.

**B.      Even if Relevant, Evidence Concerning the Court's Ruling on the Proper RAND Rate Would Be Unduly Prejudicial**

Even if the Court were to determine that the April 19, 2013 Order is relevant to the jury's

determination of good faith, the Court's Order would result in undue prejudice to Motorola.

Relevant evidence may be excluded if it is more prejudicial than probative. Fed. R. Evid. 403.

The Court's RAND royalty rate Order should be excluded because the prejudice to Motorola that

will result from its introduction outweighs any probative value.

It is undisputed that the Court had available to it far more information than did Motorola at

the time it made its opening offers.  In fact, the Court heard from 18 witnesses, including experts,

and heard the arguments Microsoft would have advanced in a negotiation, had one occurred.  Dkt.

673 at 6; *id.* at 148, ¶¶ 467-68, 496-98, 547-55, 578.  Thus, the Court's ability to determine a

RAND rate range was based on vastly superior information than that available to Motorola.

Evaluating Motorola's conduct in light of this determination would skew the jury's perception of

Motorola's action. *See E-Pass Technologies v. Moses & Singer, LLP*, No. C-09-5967 EMC, 2012

WL 2277937 (N.D. Cal. June 18, 2012) ("Pursuant to Federal Rule of Evidence 403, the Court

would likely limit evidence of what occurred after the litigation began to the extent such evidence

were offered to show what the parties previously intended.  Such after-the-fact evidence is likely

to be confusing and prejudicial, yet minimally probative as to the parties' retrospective intent and

states of mind at the outset of the litigation."); *SEC v. Retail Pro, Inc.*, No. 08-cv-1620-WH-RBB,

2011 WL 589828, at *4 (S.D. Cal. Feb. 10, 2011) ("… reference to, the Court's summary

judgment Order presents a substantial risk of jury confusion and unfair prejudice to Defendant");

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  *Bridges v. Enterprise Products Co., Inc.*, No. 3:05-cv-786-WHB-LRA, 2008 WL 80401 (S.D.

2  Miss. Jan. 4, 2008) (excluding evidence of or reference to a $90,000 offer of judgment in retrial on

3  damages as irrelevant and prejudicial).

4      Further, the Court's Order would result in prejudice to Motorola because, as this Court has

5  already held, an initial offer need not be on RAND terms. Dkt. 335 at 24-25. Yet the Court's

6  April 19, 2013 Order does not set a reasonable *opening offer* range, but a final RAND range. This

7  rate provides no assistance to the jury in determining if opening offers were reasonable and would

8  prejudice Motorola to the extent the jury might infer that the ultimate negotiated rate (unknown to

9  Motorola at the time it made its offer) could have influenced Motorola's opening offer.[1]  And even

10  if the final rate resulting at the end of a negotiation was one factor to consider in evaluating

11  whether an opening offer was made in good faith, *Realtek Semiconductor Corp. v. LSI Corp.*, No.

12  C-12-03451 RMW, 2012 WL 4845628, at *4 (N.D. Cal. Oct. 12, 2012) (emphasizing that "the

13  royalty rate as compared to selling price" was merely "one relevant factor" and that

14  "reasonableness turns on "the entirety of the terms and circumstances"), the imprimatur of the

15  Court would give the Court-sanctioned range undue weight. *Kemin Foods, L.C. v. Pigmentos*

16  *Vegetales Del Centro S.A. de C.V.*, No. 4:02-cv-40327, 2004 WL 5508752, at *2 (S.D. Iowa Sept.

17  9, 2004) ("Such a decision may also be misconstrued by a jury as indicating a finding on the

18  merits.").[2]

---

19  [1] This Court previously acknowledged the legitimacy of this concern: "[T]he court is well aware of Motorola's
20  concern that because RAND terms are complex and specific to the parties involved, at the time a standard essential
patent holder makes an initial offer, he or she may not have sufficient information to offer on RAND terms. The court
21  agrees with Motorola insofar as patentee may have a legitimate concern that mistakenly offering its essential patents at
a non-RAND rate could lead to an imminent lawsuit; and, such a concern on the part of the patentee would similarly
22  defeat the purpose behind the ITU and IEEE agreements of widespread availability. But, this is precisely the reason
the court previously held that initial offers for standard essential patents need not be on RAND terms, but only must
be made in accordance with good faith." Dkt. 465 at 15 n.9.

23  [2] Indeed, Motorola raised exactly this issue in its briefing a year ago. *See* Dkt. 362 at 4, n.5 (citing *Park Avenue*
24  *Condo. Owners Ass'n v. Buchan Devs., L.L.C.*, 71 P.3d 692, 698 (Wash. Ct. App. 2003) (consideration of the effect of
a violation on value prior to a finding of breach "puts the cart before the horse" because "[e]ffect on value is not part
25  of the definition of breach, it is part of the damages determination"); *see also Petrello v. White*, No. 10 CV 3082, 2012
WL 2803759, at *6 (E.D.N.Y. 2012) ("Plaintiffs' argument here puts the proverbial cart before the horse. While a
litigant is clearly entitled to present evidence of damages at trial, this step presupposes that he or she has established
26  liability."); *Amax Coal Co. v. United Mine Workers of Am., Int'l Union*, 92 F.3d 571, 576 (7th Cir. 1996) ("[T]here

---

DEFENDANTS' MOTION IN LIMINE - 7
CASE NO. C10-1823-JLR

Indeed, the Court recognized that "real-world negotiations involving patents committed to the RAND obligation might include layers of complexity beyond determining monetary royalty rates," but that the Court was constrained by the pleadings to set only the rate on not consider other RAND terms and conditions in its April 19, 2013 Order. Dkt. 673 at 6. For example, the Court deemed "the value of Microsoft's patents" relative to the value of Motorola's patents "outside the scope of this action," Dkt. 673 at 7 n.3, but such considerations were not outside the realm of the real-world negotiation Motorola anticipated when it sent the October 2010 letters. Because the probative value of the April 19, 2013 Order is thus low with regard to the breach determination, and because the introduction of the Order could result in substantial prejudice to Motorola, Microsoft should be precluded from introducing or relying upon the Order's ultimate conclusion.

**C.     Introduction Of The Court's Entire RAND Order Violates Motorola's Seventh Amendment Right to Trial by Jury**

Motorola's Seventh Amendment right to a trial by jury precludes introduction of the Court's April 19, 2013 Order in its entirety. A prior bench trial cannot determine common issues at law as to which a party has not waived its right to a jury trial. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959) ("Since the right to jury trial is a constitutional one . . . discretion [in determining the order of causes to be tried first] is very narrowly limited and must, wherever possible, be exercised to preserve jury trial.") (citing *Scott v. Neely*, 140 U.S. 106 (1891) ("In the Federal courts this [jury] right cannot be dispensed with, except by the assent of the parties entitled to it.")); *see also Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 473 (1962) ("*Beacon Theatres* requires that any legal issues for which a trial by jury is timely and properly demanded by submitted to a jury.") Furthermore, an erroneous determination of issues common to multiple

can be no remedy when there is no breach."); *Mackey v. Am. Fashion Inst. Corp.*, 804 P.2d 642, 643 (Wash. Ct. App. 1991) (observing that the trial court found that the plaintiff was entitled to "no relief because no valid contract existed between the parties"); *Smith v. Daws*, 614 F.2d 1069, 1073 (5th Cir. 1980) (no grounds for judicial relief where there is no breach of contract)).

DEFENDANTS' MOTION IN LIMINE - 8
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

claims that would otherwise have been resolved by a jury cannot carry any collateral estoppel effect. *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 551-53 (1990) (reiterating that "a district court may not deprive a litigant of his right to a jury trial by resolving an equitable claim before a jury hears a legal claim raising common issues."

As this Court noted in its Order Denying Microsoft's Motion Confirming Bench Trial, the Federal Rules provide that, where a party has not specified the issues to be tried by jury "it is considered to have demanded a jury trial on all issues so triable." Dkt. 693 at 5 (quoting Fed. R. Civ. P. 38(c)). The Court found in the same Order that Motorola had not waived its right to a jury trial, and that "the court must 'indulge in every reasonable presumption against the waiver of a jury trial.'" *Id.* at 6-7 (quoting *United State v. Cal. Mobile Home Park Mmt.*, 107 F.3d 1374, 1378 (9th Cir. 1997.) The bench trial was held to determine two discrete issues, as described by the Court: a RAND royalty range and a specific RAND royalty point. Dkt. 465 at 21-22.   Motorola has reserved its right to a jury trial as to all other issues. Fed. R. Civ. P. 38(c); *Dairy Queen, Inc.*, 369 U.S. at 473.  For this additional reason the Court's RAND Order should not be admitted in its entirely, for its contents beyond the two clearly delineated RAND determinations invade the province of the jury.

**D.    In the Alternative, Any Reference to the Conclusions of the RAND Order Should Be Set Forth Solely in a Limited Instruction to the Jury**

If the Court finds its prior RAND ruling both relevant and not unduly prejudicial, and thus declines to exclude its conclusions altogether from the jury phase of the trial, the Court should permit at most, reference to the final conclusion regarding the range of the RAND royalty rate as a jury instruction. *See also Kemin Foods, L.C.*, 2004 WL 5508752, at *4 (holding that, in claim construction context, "[t]he proper method for conveying [the court's ruling on] claim construction to the jury is through an instruction from the court"). Such an instruction also should contain a caution on the limitations of the Court's April 19, 2013 ruling, which did not include any finding as to breach or of the permissible non-RAND range for initial offers, and for which the

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1   Court had vastly more information available to it than did Motorola at the time of the negotiations.

2   Fed. R. Evid. 105 ("If the court admits evidence that is admissible against a party or for a purpose

3   — but not against another party or for another purpose — the court, on timely request, must

4   restrict the evidence to its proper scope and instruct the jury accordingly.").

5       Therefore, if the Court declines to exclude the April 19, 2013 Order in its entirety,

6   Motorola respectfully requests that the sole reference at trial to that Order be confined to the

7   following instruction to the jury:

8       I have concluded that had Motorola and Microsoft engaged in a

9   hypothetical negotiation of a RAND license to Motorola's H.264 SEP portfolio,

10   they would have arrived at a RAND royalty rate for Motorola's H.264 SEP

11   portfolio that would have been 0.555 cents per unit, with the upper bound of a

12   RAND royalty for Motorola's H.264 SEP portfolio 16.389 cents per unit and the

13   lower bound 0.555 cents per unit.  This rate and range are applicable to both

14   Microsoft Windows and Xbox products.  For all other Microsoft products using the

15   H.264 Standard, the royalty rate arrived at in a hypothetical negotiation would have

16   been the lower bound of 0.555 cents.  Had Motorola and Microsoft engaged in a

17   hypothetical negotiation of a RAND license to Motorola's 802.11 SEP portfolio,

18   the RAND royalty rate for Motorola's 802.11 SEP portfolio would have been

19   3.471 cents per unit, with the upper bound of a RAND royalty for Motorola's

20   802.11 SEP portfolio being 19.5 cents per unit and the lower bound 0.8 cents per

21   unit. This rate and range are applicable to Microsoft Xbox products. For all other

22   Microsoft products using the 802.11 Standard, the royalty rate would be the low

23   bound of 0.8 cents per unit. I made these findings on April 19, 2013 after hearing

24   evidence accumulated during six days of trial as well as numerous written

25   submissions from the parties on how the Court should interpret the evidence.  Some

26   of the information the Court considered in reaching its determination was

DEFENDANTS' MOTION IN LIMINE - 10
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

confidential and was not available to Motorola in 2010. I did not examine whether Motorola breached its obligation to license its standard essential patents on RAND terms and I did not examine whether Motorola acted in good faith. I have not made a decision on those issues. Those issues are for you to decide based upon the evidence you hear in this trial.

Such an instruction would obviate any possible need for the 207-page Order itself to be presented to the jury. [3]

## II. THE COURT SHOULD PRECLUDE OPINIONS AND ARGUMENT CONCERNING POSITIONS TAKEN IN THE NOVEMBER, 2012 RATE-SETTING PROCEEDING

The Court should preclude Microsoft or its witnesses from making any reference to litigation positions taken and arguments made by Motorola or its experts leading up to and during the November, 2012 RAND rate-setting proceeding. Arguments made in the context of litigation are not evidence and have no place in the factual record. Moreover, the Court has determined the RAND rate and range for Motorola's patents; Motorola's arguments made in connection with that determination are not relevant to the remaining issues to be tried to the jury. Permitting Microsoft to reference those prior arguments will unfairly prejudice Motorola and confuse the jury.

The Court's calculation of the RAND royalty rate and range resolves the parties' disputes concerning the correct RAND rate and how that rate should be determined. *See* Dkt. 673. References to either party's prior arguments about how a RAND rate should be calculated or what is the correct RAND rate are not appropriate in the jury trial phase. The Court has already decided those issues; the parties' prior arguments are no longer relevant. In particular, Microsoft should not be allowed to offer argument or elicit testimony concerning Motorola's prior positions—it is difficult to conceive of a purpose for which Microsoft would wish to reference Motorola's prior

---

[3] To the extent that there are additional conclusions of law in the Order that Microsoft believes that the jury should be aware of to avoid inconsistent rulings, it has had ample opportunity to propose discrete jury instructions on those issues. Microsoft chose not to do so, instead proposing a nearly 20-page jury instruction articulating the Court's findings intertwined with attorney argument.

DEFENDANTS' MOTION IN LIMINE - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1   arguments other than to improperly suggest to the jury that Motorola "lost" the first phase of the

2   trial, or that the Court has pre-judged the facts and issues to be tried to the jury in this phase.  Any

3   such references should be precluded.

4   **A.     Arguments Made During the Rate-setting Proceeding are Not Evidence**

5         First, the Court should preclude Microsoft from referencing or arguing positions taken by

6   Motorola in connection with the rate-setting proceeding because Motorola's prior positions are not

7   evidence.  Motorola's prior arguments to the Court concerning how a RAND rate should be

8   determined and what is the correct RAND rate for Motorola's patents have no place in the factual

9   record, and should not be referenced before the jury.  It is well established that arguments made in

10  the context of litigation (whether in legal memoranda or oral argument) are not evidence.  *Klein v.*

11  *City of Laguna Beach*, 381 Fed. Appx. 723, 726 (9th Cir. 2010); *EOTT Energy Operating Ltd.*

12  *Partnership v. Winterthur Swiss Ins. Co.*, 257 F.3d 992, 999 (9th Cir. 2001); *Estrella v. Brandt*,

13  682 F.2d 814, 819-820 (9th Cir. 1982).  The same holds true should Microsoft seek to reference

14  Motorola's prior positions to try to allege there are inconsistencies with positions Motorola may

15  take in the jury trial phase:  alternative arguments are not evidence.  *Arpin v. Santa Clara Valley*

16  *Transp. Agency*, 261 F.3d 912, 923 (9th Cir. 2001).  Thus, because the arguments made by

17  Motorola, its experts and counsel in the context of the rate-setting proceeding are not facts, they

18  are not admissible and Microsoft should be precluded from making any reference to them.

19  **B.     Motorola's Former Positions are Not Relevant to the Issues to be Decided by the Jury**

20        Second, the Court should preclude Microsoft from referencing prior positions taken by

21  Motorola in connection with the rate-setting proceeding because those are not relevant to the

22  remaining issues to be tried to the jury.  FED. R. EVID. 401, 402.  The Court has determined the

23  RAND rate and range for Motorola's patents; no fact-finding duty remains for the jury on that

24  issue.  Arguments that Motorola previously made concerning what the RAND rates should be or

25  how those rates should be determined are no longer relevant now that the Court has resolved that

26  issue.

DEFENDANTS' MOTION IN LIMINE - 12
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1   Moreover, with respect to expert opinions, the parties have agreed that any expert

2   testimony for this phase of the trial will be limited to the most recent opening expert reports served

3   May 29, 2013 and rebuttal expert reports served June 10, 2012 (*see* Roberts Decl. Ex. A);[4]

4   accordingly, Motorola does not intend to offer opinions from its experts that were disclosed only

5   for the bench trial and Microsoft should be precluded from eliciting any such opinions on cross-

6   examination.

7   **C.    Allowing Microsoft to Reference Motorola's Prior Positions Will Unfairly Prejudice
        Motorola**

8
9   Third, the Court should preclude Microsoft from referencing arguments Motorola made in

10  connection with the rate setting proceeding because such references may prejudice Motorola and

    confuse the jury.  FED. R. EVID. 403.  Because the Court has already determined the correct RAND

11  rates and ranges for Motorola's patents, Motorola does not intend to re-litigate those issues before

12  the jury.  It will unfairly prejudice Motorola if Microsoft suggests to the jury that the positions

13
14  taken by Motorola in connection with the rate-setting proceeding are Motorola's current positions,

15  or insinuates that the jury should discredit Motorola's arguments because the Court has already

16  ruled against Motorola on some issues or prejudged the issues to be determined by the jury.  And

17  the jury may be confused regarding what weight to give the Court's RAND rate determination

18  should the parties' continue to reference and argue their prior positions in this phase.

19  Accordingly, for this additional reason, it would be improper for Microsoft to offer argument or

20  elicit testimony concerning Motorola's prior positions before the jury, and any such references

    should be precluded.

21  **III. THE COURT SHOULD PRECLUDE EVIDENCE AND ARGUMENT OR
        REFERENCE TO PRIVILEGED COMMUNICATIONS**

22
23  Plaintiff Microsoft's arguments in its pending Motion for Partial Summary Judgment of

24  Breach of Contract and Summary Judgment on Motorola's Third, Fourth, Fifth, Seventh, Eighth,

25
    ─────────────────────
26  [4]  Exhibits are attached to the Declaration of Andrea Pallios Roberts in Support of Defendants' Motion in Limine
    filed concurrently with this motion.

DEFENDANTS' MOTION IN LIMINE - 13
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

1  and Ninth Affirmative Defenses and Second Counter Claim ("Motion for Partial Summary

2  Judgment") make clear that Microsoft intends to introduce at trial evidence of Motorola's claims

3  of privilege as to both documents and testimony, and to ask the jury to draw negative inferences

4  based upon those privilege claims. In particular, Microsoft cites to Motorola's privilege log in its

5  summary judgment papers and included that privilege log on its trial exhibit list (Exhibit 6080).

6  Microsoft's motion also included argument regarding privilege assertions made in the depositions

7  of Motorola witnesses Kirk Dailey and Brian Blasius, concerning aspects of Motorola's sending

8  license offer letters to Microsoft. Motorola expects Microsoft to try to draw the same adverse

9  inferences at trial.   There is no dispute that Motorola had every right to make its privilege

10  assertions – they were confidential communications with lawyers seeking or providing legal

11  advice – and Microsoft has not challenged Motorola's right to protect such communications from

12  discovery.  However, Microsoft seeks to use those proper privilege objections and draw for the

13  jury an adverse inference from them.  That is improper.

14      Microsoft's inferences about the content of Motorola's privileged communications and/or

15  attorney work product are contrary to the law, potentially misleading to the jury, and highly

16  prejudicial to Motorola.  Microsoft should therefore be precluded from soliciting, presenting, or

17  referencing any evidence or argument based on Motorola's privilege log or assertions of privilege;

18  from urging the jury to draw any inferences therefrom; and from attempting to elicit privilege

19  objections during trial.

**Background**

21  During the depositions of Kirk Daily and Brain Blasius, Motorola's counsel made privilege

22  objections ███████████████████████████████████████████

23  ███████████████. (Dkt. 730-001, Ex. 1 at 69, 72-72; Ex. 2 at 39-41.)  Counsel properly

24  instructed both witnesses not to answer these questions based upon attorney-client privilege.

25  Indeed, Microsoft objected to similar questions asked of its own witnesses based on attorney-

26  client privilege.  On July 3, 2012, Motorola served its Second Supplemental Log of Withheld

DEFENDANTS' MOTION IN LIMINE - 14
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

1   Documents. (Dkt. 730, Ex. 3.) Microsoft does not contest the assertion of privilege in any of the

2   above instances. Rather, Microsoft cites to these assertions of privilege to support its claim that

3   "Motorola could not oppose summary judgment by claiming that Motorola sent its demand letters

4   in good faith." (Dkt. 727 at 3.)   Also, during the deposition of Motorola's expert witness Greg

5   Leonard, Microsoft questioned Mr. Leonard extensively about certain log entries (Ex. B, 60:2-

6   67:12), implying that seeking litigation counsel's advice ████████████████████████

7   ████████████████████████████████████████████████████████

8           Microsoft's attempt to use a valid assertion of privilege to draw an adverse inference is not

9   limited to their summary judgment arguments. The same portions of Mr. Daily's deposition are

10   include in Microsoft's deposition designations, and the same privilege log appears on Microsoft's

11   trial exhibit list (Exhibit 6080).

12                               **Legal Standard**

13           It is well-established that a party's assertion of attorney-client privilege cannot be used

14   against it, nor can the assertion of privilege be used to draw inferences about the content of

15   privileged communications. *See, e.g.*, *Parker v. Prudential Ins. Co.*, 900 F.2d 772, 775 (4th Cir.

16   1990); *see also Doe* ex rel. *Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000) (citing

17   *Nabisco, Inc. v. PF Brands Inc.*, 191 F.3d 208, 226 (2d Cir. 1999)); *McKesson Info. Solutions, Inc.*

18   *v. Bridge Medical, Inc.*, 434 F. Supp. 2d 810, 812 (E.D. Cal. 2006) (granting motion *in limine*

19   precluding plaintiff from presenting evidence or argument that the alleged infringer asserted

20   privilege over communications with opinion counsel, reasoning: "[H]ow can a court honor the

21   shield of the attorney-client privilege and then allow [the plaintiff] to use it as a sword to prove its

22   case?"). Indeed, a party's uncontested privilege assertion over communications and documents

23   requires exclusion of any evidence or argument that the party did (or did not) consult with counsel.

24   *See McKesson*, 434 F. Supp. 2d at 812.

25           "[N]o adverse inference shall arise from invocation of the attorney-client and/or work

26   product privilege." *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d

DEFENDANTS' MOTION IN LIMINE - 15
CASE NO. C10-1823-JLR

1337, 1334 (Fed. Cir. 2004); *see also Doe* ex rel. *Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265

(9th Cir. 2000) (citing *Nabisco, Inc. v. PF Brands Inc.*, 191 F.3d 208, 226).  Such an inference

would threaten a client's interest in effective counsel.  *Parker v. Prudential Ins. Co.*, 900 F.2d 772,

775 (4th Cir. 1990).  The Ninth Circuit has held that failure to produce documents protected by the

attorney-client and work product privileges creates no adverse inference.  *Crosby v. U.S. Dep't of*

*Labor*, No. 97-70834, 1995 WL 234906 at *2 (9th Cir. Apr. 20, 1995).  The *en banc* Federal

Circuit explicitly held in *Knorr-Bremse* that the rule against drawing inferences from a party's

invocation of attorney-client privilege and attorney work product is equally applicable in patent

cases.  *See* 383 F.3d at 1345.

Privilege logs are not evidence and are inadmissible to prove the contents of the

communications or documents identified therein.  *See Strange v. Les Schwab Tire Centers of Or.,*

*Inc.*, No. C06-045 RSM, 2009 WL 2987400, at *1 (W.D. Wash. Sept. 14, 2009) (granting

defendant's motion in limine as to the privilege log); *Sensormatic Electronics Corp. v. WG Sec.*

*Prods., Inc.*, No. 2:04-CV-167, 2006 WL 5111113 (E.D. Tex. June 5, 2006) (granting motion to

exclude privilege log on the basis that the log is irrelevant and its admission would be highly

prejudicial).  A privilege log is merely a "tool of discovery," and the communications and

documents identified therein (not the log itself) are the evidence.  *See Old Republic Ins. Co. v.*

*Ness, Motley, Loadholt, Richardson & Poole, PA*, No. 03 C 5238, 2006 WL 3782994, at *12-13

(N.D. Ill. Dec. 21, 2006).  Furthermore, the Federal Rules of Evidence require exclusion of highly

prejudicial evidence.  FED. R. EVID. 403.

A.    **Motorola's Privilege Assertions Are Inadmissible**

Motorola's privilege assertions during the depositions of Messrs. Daily and Blasius  and in

its Second Supplemental Log of Withheld Documents present a *prima facie* case of privilege and

Microsoft does not contend otherwise.  Rather, in its summary judgment motion, Microsoft cites

to this evidence to support its claim that "Motorola could not oppose summary judgment by

claiming that Motorola sent its demand letters in good faith." (Dkt. 733 at 3.)  In its motion,

DEFENDANTS' MOTION IN LIMINE - 16
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   Microsoft improperly asked the Court to make an adverse inference against Motorola.  Microsoft

2   also intends to introduce at trial evidence of Motorola's claims of privilege as to both documents

3   and testimony, seeking thereby to ask the jury to draw negative inferences based upon those

4   privilege claims.  Such an inference is impermissible.  *Knorr-Bremse Systeme Fuer Nutzfahrzeuge*

5   *GmbH*, 383 F.3d at 1334 ("no adverse inference shall arise from invocation of the attorney-client

6   and/or work product privilege"); *see also Glanzer*, 232 F.3d at 1265; *Parker*, 900 F.2d at 775 (4th

7   Cir. 1990).  Therefore, Microsoft should be precluded from soliciting, presenting, or referencing

8   any evidence or argument regarding Motorola's assertion of privilege. *McKesson Info. Solutions,*

9   *Inc.*, 434 F. Supp. 2d at 812.

10  **B.      Any Argument or Attempt by Microsoft to Elicit Privilege Objections Would Be
            Highly Prejudicial to Motorola**

11

12          No cautionary instruction or other limitation can prevent the highly prejudicial impact of

13  permitting Microsoft to attempt to solicit evidence of privileged communications, knowing its

14  solicitation will draw an objection, or referencing Motorola's privilege objections throughout the

15  course of this litigation.  *See McKesson*, 434 F. Supp. 2d at 812 (finding that no cautionary

16  instruction could hope to prevent the jury from reaching the "inescapable" conclusion that

17  withheld privileged communications were negative).  Moreover, to the extent Microsoft seeks to

18  elicit testimony that is arguably privileged, in order to ensure that the substantial risk of unfair

19  prejudice to Motorola is mitigated, Microsoft should be required to disclose the content of the

20  testimony sought to the Court so that it may make a determination regarding privilege protection

21  outside the presence or hearing of the jury.  *See Bell v. City of Miamisburg*, 1992 WL 1258527, at

22  *18 (S.D. Ohio 1992) (following this procedure when it was clear that most communications

23  would be privileged); *United States v. St. John*, 267 Fed. App. 17, 21-22, 2008 WL 482300, at *2

24  (2d Cir. 2008) (affirming propriety of permitting parties to assert privilege outside of the presence

25  of the jury).

26

DEFENDANTS' MOTION IN LIMINE - 17
CASE NO. C10-1823-JLR

Summit Law Group PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1    The Federal Rules of Evidence require exclusion of such highly prejudicial evidence that

2    has little, if any, relevance to any issue in this case.  FED. R. EVID. 403.

3    **C.      Motorola's Privilege Log Is Inadmissible**

4            Despite Microsoft's persistent attempts to assert otherwise, Motorola's Second

5    Supplemental Log of Withheld Documents is not evidence and inadmissible to prove the contents

6    of the communications or documents identified therein.  *See Strange*, 2009 WL 2987400, at *1.

7    The privilege log is used to establish the foundation for asserting privilege while maintaining

8    privilege on the content of the privileged communication or document.  *See Old Republic Ins. Co.*,

9    2006 WL 3782994, at *12-13.  To permit Microsoft to draw inferences about the content of such

10   communications and documents would undermine the purpose of identifying the privileged

11   communications and documents in the first instance.  *See Crosby* 1995 WL 234906, at *2 (failure

12   to produce documents protected by the attorney-client and work product privileges creates no

13   adverse inference); *McKesson*, 434 F. Supp. 2d at 812.  Furthermore, the admission of privilege

14   logs to prove the substance of the communications and documents identified therein violates the

15   foundational and authenticity requirements of the Federal Rules of Evidence.  *See Old Republic*

16   *Ins. Co.*, 2006 WL 3782994, at *12-13; FED. R. EVID. 1002 (requiring original writing to prove its

17   contents).  Microsoft should be precluded from admitting Motorola's privilege log into evidence

18   and soliciting, presenting, or referencing any evidence or argument based on Motorola's privilege

19   logs.

20                                   **CONCLUSION**

21           For the foregoing reasons, this Court should exclude its April 19, 2013 from the August

22   2013 trial, preclude Microsoft from and offering argument, eliciting testimony, and otherwise

23   referencing the positions taken by Motorola, its experts and counsel during the November, 2012

24   RAND rate-setting proceeding, as well as any evidence or argument based on Motorola's privilege

25   log or assertions of privilege; from urging the jury to draw any inferences therefrom; and from

26   attempting to elicit privilege objections during trial.

DEFENDANTS' MOTION IN LIMINE - 18
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    DATED this 29th day of July, 2013.

2                                   Respectfully submitted,

3                                   SUMMIT LAW GROUP PLLC

4
                                   By */s/ Ralph H. Palumbo*

5                                   By */s/ Philip S. McCune*

6                                      Ralph H. Palumbo, WSBA #04751

7                                      Philip S. McCune, WSBA #21081
                                      *ralphp@summitlaw.com*

8                                      *philm@summitlaw.com*

9                                   By */s/ Thomas V. Miller*
                                      Thomas V. Miller

10                                 MOTOROLA MOBILITY LLC
                                      600 North U.S. Highway 45

11                                 Libertyville, IL  60048-1286
                                      (847) 523-2162

12                                 QUINN EMANUEL URQUHART &

13                                 SULLIVAN, LLP

14                                 By */s/ Kathleen M. Sullivan*

15                                 Kathleen M. Sullivan, NY #1804624
                                      51 Madison Ave., 22nd Floor

16                                 New York, NY 10010
                                      (212) 849-7000

17                                 *kathleensullivan@quinnemanuel.com*

18                                 By */s/ Brian C. Cannon*

19                                 Brian C. Cannon, CA #193071
                                      555 Twin Dolphin Drive, 5th Floor

20                                 Redwood Shores, CA 94065
                                      (650) 801-5000

21                                 *briancannon@quinnemanuel.com*

22

23

24

25

26

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

By /s/ William C. Price
   William C. Price, CA #108542
   865 S. Figueroa Street, 10th Floor
   Los Angeles, CA 90017
   (213) 443-3000
   williamprice@quinnemanuel.com

*Attorneys for Motorola Solutions, Inc.,
Motorola Mobility LLC and General
Instrument Corp.*

DEFENDANTS' MOTION IN LIMINE - 20
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

### CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Arthur W. Harrigan, Jr., Esq.
Christopher T. Wion, Esq.
Shane P. Cramer, Esq.
Calfo Harrigan Leyh & Eakes LLP
*arthurh@calfoharrigan.com*
*chrisw@calfoharrigan.com*
*shanec@calfoharrigan.com*

Richard A. Cederoth, Esq.
Brian R. Nester, Esq.
David T. Pritikin, Esq.
Douglas I. Lewis, Esq.
John W. McBride, Esq.
William H. Baumgartner, Jr., Esq.
David C. Giardina, Esq.
Carter G. Phillips, Esq.
Constantine L. Trela, Jr., Esq.
Ellen S. Robbins, Esq.
Nathaniel C. Love, Esq.
Sidley Austin LLP
*rcederoth@sidley.com*
*bnester@sidley.com*
*dpritikin@sidley.com*
*dilewis@sidley.com*
*jwmcbride@sidley.com*
*wbaumgartner@sidley.com*
*dgiardina@sidley.com*
*cphillips@sidley.com*
*ctrela@sidley.com*
*erobbins@sidley.com*
*nlove@sidley.com*

T. Andrew Culbert, Esq.
David E. Killough, Esq.
Microsoft Corp.
*andycu@microsoft.com*
*davkill@microsoft.com*

DATED this 29th day of July, 2013.

/s/ *Marcia A. Ripley*
Marcia A. Ripley

DEFENDANTS' MOTION IN LIMINE - 21
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001