# EXHIBIT 2



United States of America
FEDERAL TRADE COMMISSION
Washington, D.C. 20580

Office of the Secretary

July 23, 2013

Re:   *In the Matter of Motorola Mobility LLC and Google Inc.*
      *File No. 121 0120, Docket No.* C-4410

Thank you for your comments regarding the Proposed Consent in the above-captioned matter. The Commission carefully reviewed all the comments received, including your comment. The proposed Consent Order, negotiated between the Federal Trade Commission and Motorola Mobility LLC and Google Inc. (together "Google") resolves the Commission's concerns regarding Google's use of injunctions and exclusion orders based on infringement of standard-essential patents ("SEPs") subject to commitments to license on fair, reasonable, and nondiscriminatory ("FRAND") terms. The Order was negotiated in response to the specific facts of this case. It sets up a process that allows firms implementing standards that include technology covered by Google's SEPs to obtain a license on FRAND terms, and to have those terms decided by a neutral third party if necessary.

The Commission received twenty-five public comments, including yours, during the public comment period expressing a variety of viewpoints on the proposed Order. Some of the comments support the Order. Others express concerns. After reviewing these comments, the Commission has determined that the public interest is served by issuing the Decision and Order in final form, with certain modifications based on suggestions from commenters.

This letter responds to the primary concerns submitted to the Commission, as well as other statements received from commenters, and explains those modifications that the Commission has made to the final Decision and Order. This letter responds only to those comments that addressed the proposed Order. For your information, enclosed is a copy of the final Decision and Order.[1]  Relevant materials are also available from the Commission's website at http://www.ftc.gov.

---

[1] One comment, from the Electronic Privacy Information Center, addressed the Commission's investigation of Google's search practices. The Commission's response to issues related to that investigation is contained in the Commission's statement issued on January 3, 2013.  *See* Statement of the Federal Trade Commission Regarding Google's Search Practices, *available at:*  http://ftc.gov/os/2013/01/130103googlesearchstmtofcomm.pdf.

Federal Trade Commission Response To Commenters
Page 2

### A. Scope of Section 5 Unfair Methods of Competition Authority

Some commenters express concern that prohibiting injunctions through a consent order alleging unfair methods of competition could harm competition by reducing incentives to innovate and to participate in standard setting.[2] By making a FRAND commitment, a SEP holder voluntarily chooses to license its SEPs to all implementers of the standard on fair and reasonable terms. The Commission does not believe that merely requiring firms to abide by the licensing commitments they willingly make to SSOs will reduce incentives to innovate or to participate in standard setting.

By contrast, the breach of a FRAND commitment risks substantial harm to the competitive process and consumers. This risk justifies the Commission using its authority – as it has for nearly 20 years – to prevent misuse of the standard-setting process. As the Commission has discussed previously, if companies cannot rely on a FRAND commitment to ensure access to SEPs on FRAND terms, they are less likely to invest in implementing the standard, which can harm competition, innovation and consumers. Such harm is precisely what the Commission was authorized to prevent, and precisely what this Order is intended to remedy.

The Order strikes a balance. It enables Google and implementers to negotiate a FRAND rate while protecting both parties from opportunistic behavior that is inconsistent with the FRAND agreement. An implementer can negotiate licensing terms without facing the threat of an injunction,[3] but Google is not barred from responding to an implementer that misuses the protections in the Order to delay rather than facilitate entering into a FRAND license.[4] In addition, Google has recourse if an implementer refuses to take steps to obtain a FRAND license, or to enter into a license after a FRAND rate is determined. Like any other licensor, Google also has the right to seek treble damages for willful infringement.

---

[2] The Commission has decided to remove the count from the complaint alleging that Google has engaged in unfair or deceptive acts or practices. Removing this count does not indicate a Commission view on the application of its unfair acts or practices authority in other matters alleging harm to competition or the competitive process.

[3] One commenter complained that barring Google from seeking an injunction during the appeal of a FRAND Determination Action "will significantly delay resolution of licensing disputes." However, enabling implementers to exercise their appeal rights without the threat of injunction is necessary to ensure the fairness of the FRAND Determination Action. The Order strikes a balance between Google's rights and interests as a patent holder, and the rights and interests of implementers.

[4] The Order releases Google from the ban on injunctions if, at Google's request, an implementer does not commit to entering a License Agreement on terms decided through arbitration or a FRAND determination action in district court. While a FRAND commitment requires the patent holder to engage in good faith negotiations for a license agreement, the implementer is not free to abuse and delay that negotiation process to avoid paying royalties. The sample letter in Exhibit A provides a mechanism in the Order for Google to ensure that an implementer cannot unduly prolong the process.

Federal Trade Commission Response To Commenters
Page 3

The Commission disagrees with commenters who argue that the Commission's actions in this case are outside of its authority to challenge unfair methods of competition under Section 5 and lack a limiting principle. As reflected in the Commission's recent statements in *Bosch* and the Commission's initial Statement in this matter, this action is well within our Section 5 authority, which both Congress and the Supreme Court have expressly deemed to extend beyond the Sherman Act.[5] Furthermore, Commission action in the instant case is limited to conduct in the standard-setting context, which has been a focus of Commission enforcement activity for many years because of the significant risks and benefits to competition inherent in the standard-setting process.

### B.   Response To Comments Regarding the *Noerr-Pennington* Doctrine

Some commenters express concern that the conduct alleged in the Complaint, and remedied through the proposed Consent Order, is covered by the *Noerr-Pennington* doctrine ("*Noerr*"), which protects the First Amendment right to petition the government for redress of grievances. However, as we have previously stated, we do not believe that imposing Section 5 liability on Google for violating the FRAND commitments MMI made, and Google formally assumed through a letter of assurance to the relevant SSOs, offends the First Amendment. By taking this action, we are doing no more than "simply requir[ing] those making promises to keep them."[6]

Commenters who raised *Noerr* concerns also question whether the Commission had an adequate factual basis to find reason to believe that Google's FRAND commitments preclude seeking an injunction or exclusion order against a willing licensee of its SEPs. The Commission believes that the evidence supports its decision. Moreover, multiple courts have reached a similar conclusion on related questions,[7] and there is evidence that some implementers held a similar view and relied on that understanding when developing standard-compliant products.

---

[5] *See, e.g., F.T.C. v. R.F. Keppel & Bros., Inc.*, 291 U.S. 304, 310-313 (1934); *F.T.C. v. Cement Inst.*, 333 U.S. 683, 693 & n.6 (1948); *F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 241-244 (1972).

[6] *See In the Matter of Google Inc.*, FTC File No. 121-0120, Analysis of Proposed Consent Order to Aid Public Comment, *available at* http://ftc.gov/os/caselist/1210120/130103googlemotorolaanalysis.pdf.; *see also Cohen v. Cowles Media Co.*, 501 U.S. 663, 670-71 (1991); *Powertech Technology, Inc. v. Tessera, Inc.*, 2012 U.S. Dist. LEXIS 70630, *17-18 (N.D. Cal. May 21, 2012).

[7] *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 885 (9th Cir. 2012) ("Implicit in such a sweeping promise is, at least arguably, a guarantee that the patent holder will not take steps to keep would-be users from using the patented material, such as seeking an injunction, but will instead proffer licenses consistent with the commitment made."); *Apple, Inc. v. Motorola, Inc.*, No. 1:11-cv-08540, 2012 U.S. Dist. LEXIS 89960, at *45 (N.D. Ill. June 22, 2012) (Posner, J., sitting by designation) ("I don't see how, given FRAND, I would be justified in enjoining Apple from infringing the '898 [patent] unless Apple refuses to pay a royalty that meets the FRAND requirement. By committing to license its patents on FRAND terms, Motorola committed to license the '898 to anyone willing to pay a FRAND royalty and thus implicitly acknowledged that a royalty is adequate compensation for a license to use that patent. How could it do otherwise?").

Federal Trade Commission Response To Commenters
Page 4

### C. Response To Comments Regarding the "Defensive-Use" Exception In Order

Several comments address the provision of the Order that allows Google to respond if a SEP holder violates its own FRAND commitment by seeking to enjoin the use of its SEPs in Google products.[8] Some commenters support this provision because, as one commenter notes, it "attempts to deter firms from seeking injunctions on their SEPs against Google products and permits Google to defend its products, still subject to its RAND obligations."[9] However, one commenter expresses concern that the provision is overreaching, will encourage future litigation in violation of FRAND commitments, and can be interpreted as Commission support for incorporating so-called "defensive use" exceptions into FRAND commitments.

We believe this provision is reasonable and consistent with the remedial goals of the Order. Without this provision, the Order would prohibit Google from responding to Potential Licensees who violate their own FRAND commitments by seeking to exclude or enjoin Google products that incorporate the Potential Licensee's SEPs.[10] This provision is specifically tailored to the circumstances of this matter and its inclusion in the Order does not indicate a particular view about defensive-use exceptions generally.

### D. Response To Comment Regarding Existing Claims For Injunctive Relief

Some commenters question whether the Order requires Google to immediately withdraw all pending legal claims that seek injunctive relief. It does not.[11] The Order instead protects Potential Licensees against whom Google has pending litigation by prohibiting Google from obtaining or enforcing injunctions or exclusion orders in the pending litigations. This prevents Google from misusing pending litigation to escape the procedures required by this Order, but does so without impeding the resolution of related allegations and claims, which could slow resolution of these matters and waste judicial resources.

---

[8] This provision is contained in Paragraph IV.F.

[9] "Comment Regarding the Proposed Consent Order," International Center for Law & Economics (submitted Feb. 22, 2013).

[10] Contrary to suggestions by commenters, the provision is not triggered by all injunction actions against an Android OEM based on alleged infringement of an SEP. Rather, the provision only allows Google to seek an injunction in response to an action for infringement against an Android OEM if the SEP holder seeks an injunction and alleges that software or another product supplied by Google to the OEM infringes the relevant SEPs.

[11] An Order is interpreted by its terms alone, and those terms are not modified by ancillary documents or statements made by the Commission or Commission staff. *See, e.g.,* Analysis to Aid Public Comment at page 1 ("This analysis does not constitute an official interpretation of the Proposed Consent Order, and does not modify its terms in any way.").

Federal Trade Commission Response To Commenters
Page 5

### E. Response To Failure To Provide Supporting Facts

Some commenters express concern that documents and other information supporting the Commission's decision to issue the Order have not been made public. As is its typical process, during the course of this investigation, the Commission reviewed public and non-public information from Google and numerous third parties to reach its conclusions. However, the Commission is not at liberty to publicly divulge or discuss most of this information because it is confidential, competitively sensitive, and not subject to public disclosure by statute.

### F. Modifications

After careful review of the comments and further consideration of the Order, the Commission has determined that the public interest is best served by issuing the Order in final form with certain modifications. Google has consented to these modifications, which are discussed below:

<u>Paragraph I</u>

The following changes have been made to definitions in the Order:

*Binding Arbitration (I.D) and Qualified Escrow Agent (I.W).* Subparagraphs I.D(1)-(3) now describe how binding arbitration will proceed if a Potential Licensee does not timely select a Qualified Arbitration Organization, and ensure that negotiation for the selection of arbitrators and the location for the arbitration can occur after the Qualified Arbitration Organization is selected. Further, the escrow provision in subparagraph I.D(4) has been modified and the term "Qualified Escrow Agent" added to ensure that the arbitrator has sufficient authority to set all necessary escrow terms and conditions and that escrow funds are properly held and accounted for.

*License Agreement (I.Q)<u>.</u>* The term no longer includes draft or proposed agreements. The Order now refers to non-final agreements as proposed License Agreements throughout.[12]

*Offer to Arbitrate (I.P and new Exhibit D).* The Order now requires Google to provide an Offer to Arbitrate substantially in the form of new Exhibit D. This will ensure consistent Offers to Arbitrate that comply with the Consent Order and fairly inform the Potential Licensees about the arbitration process.[13]

---

[12] As a result, references to proposed License Agreements were edited in paragraphs I.Q and III.C(2).

[13] For example, the form Offer to Arbitrate makes clear to Potential Licensees that the Order does not preclude them from challenging infringement, or raising defenses such as validity and essentiality during the arbitration process. It is important to highlight that the Order, including the arbitration provision, does not negate or alter traditional burdens of proof, or deprive implementers of their rights to seek judicial review, challenge infringement, or raise defenses such as validity, exhaustion, and essentiality. Moreover, the Order does not presume infringement by the implementer, and leaves Google with the same burdens of proof it would have in any court proceeding. The

Federal Trade Commission Response To Commenters
Page 6

*Qualified Arbitration Organization (I.T and new I.DD).* The WIPO Arbitration and Mediation Center has been added as a Qualified Arbitration Organization. This addition is in response to several comments noting that many Potential Licensees are international companies and recommending that a non-US based arbitration association be added to the list of Qualified Arbitration Organizations.

*Qualified Recipients (I.W).* This definition has been modified to define a qualified recipient as either outside counsel representing a Potential Licensee on matters relating to FRAND Patents or both the chief executive officer and (if known) legal counsel or Google's primary contact of the licensee. These changes further ensure that Google sends notices required under the Order to those with the knowledge and ability to protect the interests of the Potential Licensee.[14]

*Third Party (I.CC).* This definition now states that only wholly owned subsidiaries and majority-owned and controlled subsidiaries and joint ventures of a given Third Party are included within the definition and, thereby, clarifies that other affiliates of such Third Party are not included within the definition.

Paragraph II

Changes to paragraph II.A. clarify that Google can revoke or rescind a FRAND commitment only if the relevant standard has been finally rescinded or revoked[15] and doing so will not interfere with Google's obligations under paragraph V.B. of the Order.[16] Further, the second sentence in paragraph II.C. has been edited to make clear that it does not limit or modify the prohibition contained in the first. Finally, subparagraph II.E(4) was revised to improve its clarity.

Paragraph IV

Modifications to paragraph IV improve the description of the procedure to initiate arbitration under the Order. Subparagraph IV.B(2) was modified to require Google to include its commitment to abide by the outcome of arbitration in the Offer to Arbitrate and provide that Google may require a Potential Licensee to make its corresponding commitment when it accepts the Offer. The Order also now states that a Potential Licensee is given sixty days from actual receipt of Google's proposed License Agreement to identify which terms are not consistent with

---

arbitration provisions allow the arbitrator to establish an appropriate procedure for resolving the dispute at hand based on the circumstances presented and the nature of that dispute.

[14] References to "a Qualified Recipient" have also been changed to "the Qualified Recipient(s)" throughout.

[15] The standard-setting organization IEEE suggested modifying this language because the term "rejected" may be ambiguous under IEEE rules. The addition of "finally" clarifies that preliminary rejection of a proposed standard as part of a drafting process does not qualify as a circumstance under the Order in which a FRAND commitment may be withdrawn. However, the Order language does encompass circumstances where an SSO terminates a development project without finally approving a Standard.

[16] Paragraph V.B. requires Google to ensure that the acquirer or assignee of a FRAND-encumbered patent complies with the patent's FRAND commitment.

Federal Trade Commission Response To Commenters
Page 7

Google's FRAND commitments.[17]  Finally, changes to the Order allow Google or a Potential Licensee to arbitrate using a standard-setting organization's ("SSO") mandatory arbitration rules in appropriate circumstances.[18]

      Paragraph V

Paragraph V.A. requires Google to respond within sixty days to a request to license from a Potential Licensee. The purpose of this paragraph is to ensure Google timely responds to requests from Potential Licensees.  As originally written, the paragraph also required that Google's response include an Offer to License.  However, mandating that Google respond with an Offer to License would restrict the negotiation process and potentially force a premature start of the six-month waiting period under subparagraph IV.B(1).  This could harm Potential Licensees and prevent Google from tailoring its Offer to License to the facts obtained during the negotiation process.  The modified provision will ensure Google timely responds to requests from Potential Licensees but allow the form of the response to be dictated by the circumstances.

      **G.    Conclusion**

It helps the Commission's analysis to hear from a variety of sources in its work on antitrust and consumer protection issues, and we appreciate your interest in this matter.

By the Commission, Commissioner Ohlhausen dissenting and Commissioner Wright recused.

                                     Donald S. Clark
                                     Secretary

---

[17] This proposed License Agreement is not the first required of Google under the Order.  Google is required to include a proposed License Agreement or description of all material commercial terms that Google proposes be included in a License Agreement.

[18] In addition, this paragraph contains two additional minor changes. Paragraphs IV.C. now requires a Potential Licensee to make its responses to the recipient Google designates in its notices rather than to a Qualified Recipient.  Paragraph IV.D. better identifies which Offer to Arbitrate is being referred to in that section.