

RALPH H. PALUMBO
DID: (206) 676-7042
EMAIL: ralphp@summitlaw.com

315 Fifth Ave S Suite 1000
Seattle, Washington 98104
phone · 206.676.7000
fax · 206.676.7001

July 31, 2013

The Honorable James L. Robart
United States District Court
Western District of Washington
700 Stewart Street, Suite 14128
Seattle, WA 98101-9906

Re:   *Microsoft Corp.* v. *Motorola Mobility, Inc.*
      Case No. C10-1823-JLR

Dear Judge Robart:

In response to this Court's order of July 30, 2013, Motorola respectfully submits the following clarifications regarding the opinions to be offered by its experts at trial.

**Expert Report of Richard Holleman**

Microsoft moved to strike Mr. Holleman from offering the opinions in paragraphs 15, 21, 23, 30, 31, 33, 34, 35, 36, 37, 38, 39, 47, 48, 59, and 60 of his opening report, and paragraph 4 of his rebuttal report.

Motorola offers the clarifications set forth below regarding the opinions it will solicit from Mr. Holleman at trial. To the extent that Motorola is striking content from Mr. Holleman's written report, that is denoted with a strikethrough. To the extent that Motorola is modifying the language in response to Microsoft's and the Court's concerns, that is denoted in bold font.

The sixth bullet point in paragraph 15 of Mr. Holleman's opening report is modified as follows: "If negotiations fail to result in a license agreement, **the ITU and IEEE do** ~~this does~~ not preclude the essential patent-holder from seeking to enforce its essential patents, or from seeking any remedies available to it under the patent laws, including injunctive relief **if appropriate under applicable law**." Mr. Holleman also will not offer the opinion in the sub-bullet point in paragraph 15 that begins "It is my opinion, based on the testimony of Motorola witness Kirk Dailey…."

Paragraph 21 of Mr. Holleman's opening report is modified as follows: "In my experience, RAND commitments made under SDO Intellectual Property Rights ("IPR") policies also are not understood to limit the IPR holder's legal rights to enforce its patents **if appropriate under applicable law**.~~, in the event good faith RAND negotiations with a potential licensee do not lead to a license agreement, or if the potential licensee simply refuses to engage in good faith negotiations.~~ If a party does not intend to enforce its patents, it selects that option *instead of* committing to offering RAND licenses. For example, the IEEE's letter of assurance form expressly provides a box for parties to state that they will not enforce their essential patents against implementers of the standard."

Paragraph 23 of Mr. Holleman's opening report is modified as follows: "The patent policies of SDOs such as ITU and IEEE recognize the critical need to properly balance the rights of patent owners with the need for standards that best meet the technical objectives of the SDOs. In my experience, RAND undertakings made under SDO IPR policies are not understood to limit the IPR holder's legal rights to enforce its patents, including the right to seek an injunction, in the event ~~licensing negotiations with a potential licensee fail to result in a license agreement~~ **the potential licensee refuses to pay a RAND rate**." The rest of paragraph 23 is unchanged.

Paragraph 30 of Mr. Holleman's opening report is modified as follows: "Therefore, even where a RAND commitment has been made, SDOs do not engage in an attempt to determine what constitutes a reasonable royalty rate or what other terms and conditions are reasonable or nondiscriminatory, and thus do not dictate what terms the patent holder must propose to the potential licensee. These matters are for the patent holder and the potential licensee to decide upon through good faith, bilateral negotiations. ~~The RAND commitment is a commitment by the patent owner to engage in good faith bilateral negotiations with all potential licensees to license essential IPR on reasonable terms and conditions. There is no license until such negotiations have occurred and an agreement has been reached between the patent owner and potential licensees in order to implement the standard.~~" The rest of the paragraph is unchanged.

Paragraph 31 of Mr. Holleman's opening report is modified as follows: "From the SDO's perspective, the patent holder ~~fulfills~~ **who executes an LOA must be** ~~its RAND obligation by being~~ willing to enter into good faith negotiations with all potential licensees who wish to negotiate~~,~~ and ~~attempting~~ **attempt** in good faith to reach a license on RAND terms and conditions in such an agreement." The rest of the paragraph is unchanged.

Paragraph 36 of Mr. Holleman's opening report is modified as follows: "As described above, the purpose of the RAND commitment is to ensure that implementers of the standard will have access to licenses from essential patent holders without undue constraints. Therefore, from the SDO's perspective, the patent holder ~~acts consistently~~ with **a** ~~its~~ RAND obligation **must be** ~~by being~~ willing to enter into negotiations with all potential licensees who wish to negotiate, and ~~attempting~~ **attempt** in good faith to reach a license on RAND terms and conditions in such an agreement."

Mr. Holleman will not offer the opinions in paragraphs 37 and 38 of his opening report.

Paragraph 48 of Mr. Holleman's opening report is modified as follows: "There is nothing in ITU or IEEE's written policies requiring that each offer made by Motorola at each stage of negotiations, and certainly not at the opening of negotiations, must be RAND, or within a specific RAND range. As noted above, I understand that Judge Robart has additionally clarified that an opening offer need not be within the "RAND range." ~~The submission of a Letter of Assurance or RAND undertaking indicates that the patent holder is willing to negotiate for RAND licenses.~~ The SDO expects that companies like Motorola and Microsoft will arrive at RAND terms through negotiations and does not dictate requirements for each stage of negotiations or specify what terms must be offered."

Paragraph 59 of Mr. Holleman's opening report is modified as follows: "Business disagreements over RAND licensing terms and conditions are precisely the issues that the SDOs leave to the parties concerned to deal with, based on the unique circumstances of the

negotiation at issue. RAND commitments are ~~simply~~ intended to foster good faith negotiations between essential patent holders and standard implementers. ~~Motorola satisfied those commitments by attempting to enter into good faith negotiations with Microsoft.~~"

  In paragraph 60 of Mr. Holleman's opening report, Mr. Holleman will only offer the last two bullet points of that paragraph, modified as follows: "SDO patent policies and procedures do not establish that the *only* appropriate RAND terms are those that reflect the *ex ante* incremental value of the patented technology as determined in a hypothetical multilateral negotiation prior to the adoption of the standard. SDO patent policies contemplate bilateral negotiations, not multilateral negotiations, in part because the latter may involve antitrust risks. And SDOs, including the ITU and IEEE generally do not define RAND terms and conditions and take no position on what is or is not RAND for any given licensing situation, recognizing that the individual circumstances of the parties and intellectual property involved in any bilateral negotiation may vary significantly. ~~From the perspective of the SDO policies, there is no reason to conclude that the royalty term in a RAND license agreement must be determined by any particular formula or limited to any particular royalty structure or range.~~

  Not all participants in the standards development process are also implementers of the standard. SDO policies are designed to strike a balance between participants in the standards development process who contribute patented technology to the standard, as well as those who implement the standard. This is because SDOs recognize that not all participants will also be implementers, and that any patent policy must account for the fact that many patent holders will only contribute their patented technology if they know that they are able to receive a reasonable return on their R&D investments. For these reasons, from the perspective of the SDO policies, there is no reason to conclude that a RAND royalty rate must be a small amount."

  Paragraph 4 of Mr. Holleman's rebuttal report is modified as follows: "I disagree with Dr. Murphy to the extent that he relies upon the Order as a guide for how negotiations over standard-essential patents take place. The Order relates to a unique set of circumstances. That is, the Court set the RAND rate and ranges between Motorola and Microsoft based upon the information the Court had available to it. In my opinion and experience, such a document does not exist in the SDO process. The Order, or documents like it, is not part of the bylaws or regulations of the IEEE or ITU. Parties negotiating licenses to standard-essential patents at the time these parties were negotiating would not have had the benefit of the Order, or any document similar to it, to guide their negotiations. ~~Therefore, it does not make sense to consider it as a guide to the bilateral negotiations that should have occurred between these specific parties and the offers Motorola made.~~"

### Expert Report of Gregory Leonard

  Microsoft moved to strike Mr. Leonard from offering the opinions in paragraphs 28, 78, 79 and 81 of his opening report, and paragraphs 19 and 33 of his rebuttal report.

  Motorola offers the clarifications set forth below regarding the opinions it will solicit from Mr. Leonard at trial. To the extent that Motorola is striking content from Mr. Leonard's written report, that is denoted with a strikethrough. To the extent that Motorola is modifying the language in response to Microsoft's and the Court's concerns, that is denoted in bold font.

  Paragraph 79 of Mr. Leonard's opening report is modified as follows: "To the extent that Microsoft is claiming that, in subsequent negotiations, Motorola would not have moved off

4824-3763-3813.1

The Honorable James L. Robart
July 31, 2013
Page 4

its opening offer or would otherwise have refused to negotiate in good faith after making its opening offers, Microsoft's own action in filing this lawsuit before letting the negotiation play out has prevented us from obtaining a direct answer to that question. Microsoft could have negotiated further and brought the lawsuit if, after a good faith effort, it still believed Motorola was not negotiating in good faith. ~~However, given the abbreviated negotiation that took place (as a result of Microsoft's filing of the lawsuit), it is speculative for Microsoft now to claim that Motorola would not have ultimately agreed to a royalty in the RAND royalty range determined by the Court (assuming Microsoft brought forth the arguments and information that it did in this litigation).~~"

Paragraph 81 of Mr. Leonard's report is modified as follows: "Microsoft appears to believe that Motorola had an obligation, before it ever made the initial offer, to determine Microsoft's bargaining position and then bargain against itself and lower the royalty rate in the initial offer accordingly. For example, Microsoft asserts that Motorola should have taken into account royalty stacking, presumably by considering the full set of patents, owned by various patent owners, that might be standard-essential. I do not agree that Motorola has a responsibility to conduct this analysis before making an initial offer. Instead, the royalty stacking argument is one that would most likely benefit Microsoft, **so one could expect that Microsoft would be the one who would bring up in negotiations any issue of royalty stacking.** ~~It is Microsoft's responsibility to form its own arguments and persuade Motorola of its positions by way of negotiation.~~ Microsoft certainly ha~~d~~s the experience, resources, and ability to do so. ~~However, it chose not to negotiate and instead bring this lawsuit.~~"

Mr. Leonard will not offer the opinion in paragraph 33 of his rebuttal report.

**Expert Report of Bradley Keller**

As Motorola indicated in its briefing, Mr. Keller will not offer the opinion he expressed in the final sentence of paragraph 5a and the final sentence of paragraph 9.


Respectfully,

SUMMIT LAW GROUP PLLC

*/s/ Ralph H. Palumbo*

Ralph H. Palumbo

Enclosures
cc:     All Counsel of Record

4824-3763-3813.1