# EXHIBIT A

**Holleman Opinions Subject to Microsoft's Daubert Motion**

**July 30, 2013**

**Holleman's Legal Interpretation That The RAND Licensing Commitment
Only Requires Negotiation Contradicts the Court's Rulings**

Holleman Opening Report ¶ 31

From the SDO's perspective, the patent holder fulfills its RAND obligation by being willing to enter into good faith negotiations with all potential licensees who wish to negotiate, and attempting in good faith to reach a license on RAND terms and conditions in such an agreement.

Holleman Opening Report ¶ 59

RAND commitments are simply intended to foster good faith negotiations between essential patent holders and standards implementers.

Holleman Opening Report ¶ 30

The RAND commitment is a commitment by the patent owner to engage in good faith bilateral negotiations with all potential licensees to license essential IPR on reasonable terms and conditions.

Holleman Opening Report ¶ 36

Therefore, from the SDO's perspective, the patent holder acts consistently with its RAND obligation by being willing to enter into negotiations with all potential licensees who wish to negotiate, and attempting in good faith to reach a license on RAND terms and conditions in such an agreement.

Holleman Opening Report ¶ 42

The patent holder acts consistently with its obligation to the SDO by being willing to enter into good faith negotiations with all potential licensees who wish to negotiate, and attempt in good faith to reach a license on RAND terms and conditions in such an agreement.

October 10, 2012 Summary Judgment Order (Dkt. No. 465):

In fact, the court has already twice rejected Motorola's contention that Motorola's agreements with the ITU and IEEE only require it to negotiate towards a RAND license. . . . Certainly, Motorola's commitments to the IEEE and ITU require that it negotiate in good faith towards RAND terms, but those commitments go one step further and require Motorola to eventually grant a license on RAND terms. Thus, the RAND license must eventually execute between the parties, and interminable good faith negotiation by Motorola will not uphold its end of the bargain.

Paragraphs to be excluded:  Holleman Opening Report ¶¶ 15, 21, 23, 30, 31, 34, 36, 42, 59, 60

**Holleman's Opinion That Microsoft Acted Improperly
By Suing Instead of Negotiating Should Be Excluded**

Holleman Opening Report ¶ 34

Rather than enter into good faith negotiations with Motorola, Microsoft filed this lawsuit against Motorola on November 9, 2010.

Holleman Opening Report ¶ 37

Motorola's October 2010 letters to Microsoft, which state that Motorola's offer to Microsoft was based on its "standard terms," represented a good faith attempt to enter into licensing negotiations with Microsoft for a license to Motorola's H.264 and 802.11- essential portfolios. Microsoft filed suit before engaging in any such negotiations with Motorola.

June 6, 2012 Summary Judgment Order (Dkt. No. 335)

In sum, the court concludes that Motorola's contracts with the IEEE and the ITU do not condition Motorola's RAND obligations on the implementer first applying for a license and then negotiating in good faith. . . .  Moreover, the court will not find that Microsoft has repudiated its rights to a RAND license by simply seeking court relief in attempting to enforce the terms of Motorola's commitments to the IEEE and ITU.

Paragraphs to be excluded:  Holleman Opening Report ¶¶ 34, 37

**Holleman's Legal Interpretation That RAND Does Not Require
Consideration of Stacking Or Comparable Licenses Undermines The Court's Rulings**

Holleman Opening Report ¶ 47

[T]here are no RAND provisions in SDO policies mandating the steps or analysis that a standard essential patent owner must take in formulating an opening offer.  For example, there are no provisions in SDO policies requiring the patent holder to consider royalty stacking or patent pool rates in formulating its opening offer.

Findings of Fact and Conclusions of Law ¶ 100

[L]icense agreements where the parties clearly understood the RAND obligation, and as discussed below, patent pools, will be relevant to a hypothetical negotiation for SEPs

Findings of Fact and Conclusions of Law ¶ 514

Because the characteristics of the MPEG LA H.264 pool closely align with all of the purposes of the RAND commitment, the court concludes that the pool rate is a strong indicator of a RAND royalty rate for Motorola's H.264 patent portfolio.

Findings of Fact and Conclusions of Law ¶ 539

The anti-stacking principle constrains RAND because parties in a RAND negotiation would determine a reasonable royalty by considering how much in total license fees the implementer can pay before implementation of the standard becomes cost-prohibitive. . . . In other words, a RAND negotiation would not be conducted in a vacuum, but the parties would instead consider other SEP holders and the royalty rate that each of these patent holders might seek from the implementer based the importance of these other patents to the standard and to the implementer's products.

Paragraphs to be excluded:  Holleman Opening Report ¶ 47

**Holleman's Legal Opinion That The Issue of Blatantly Unreasonable Offers
Is Beyond The Scope of SSO Policies Undermines The Court's Rulings**

Holleman Opening Rpt. ¶ 47

There similarly are no RAND provisions in SDO policies requiring that an opening offer be a certain rate, form, or relation to the final agreed-upon RAND license rate.

Holleman Opening Rpt. ¶ 48

There is nothing in ITU or IEEE's written policies requiring that each offer made by Motorola at each stage of negotiations, and certainly not at the opening of negotiations, must be RAND, or within a specific RAND range.

Holleman Dep. 175:18–176:1

Q. And **you agree that a standard-essential patent holder cannot make blatantly unreasonable offers**?

A. I do not have an opinion in that regard. The Judge gave his opinion in that regard. That's beyond the scope of what I would opine about, **it's beyond the scope of the SDOs patent policy.**

June 6, 2012 Summary Judgment Order (Dkt. No. 335)

[T]he court concludes that under Motorola's agreements with the IEEE and the ITU, Motorola need not make initial offers on RAND terms. **This conclusion, however, does not mean that Motorola**, as the owner of standard essential patents subject to RAND licensing agreements with the IEEE and ITU, **may make blatantly unreasonable offers to implementers**. Such behavior would frustrate the purpose behind the agreements by allowing the standard essential patent owner to abuse its power as a standard essential patent holder. . .

February 27, 2012 Summary Judgment Order (Dkt. No. 188)

Second, as Microsoft points out, if the policies are read to permit Motorola to offer on non-RAND terms, then the policies would permit Motorola to make offers on exorbitant terms so long as the final license reflects RAND terms. It seems unlikely to the court that either the IEEE or the ITU would deem a patent essential for a certain standard only to permit that patent holder to turn around and abuse that power by seeking outrageously high royalty rates. To wit, during the February 13, 2012 status conference, **counsel for Motorola agreed that blatantly unreasonable offers would violate its RAND obligations <u>under the policies</u>**.

Paragraphs to be excluded: Holleman Opening Report ¶¶ 35, 38, 47, 48

## Holleman's Legal Interpretation That The RAND Royalty And RAND Range Are Irrelevant To Opening Offers Undermines The Court's Rulings

Holleman Opening Report ¶ 48

There is nothing in ITU or IEEE's written policies requiring that each offer made by Motorola at each stage of negotiations, and certainly not at the opening of negotiations, must be RAND, or within a specific RAND range.

Findings of Fact and Conclusions of Law at 5–6

[T]he court held a bench trial to determine: (1) a RAND royalty range for Motorola's SEPs; and (2) a specific RAND royalty rate for Motorola's SEPs. The purpose of this is to enable a fact-finder in a later trial to determine whether Motorola's offer letters breached Motorola's RAND obligation to offer a license for its patents in good faith.

Paragraphs to be excluded: Holleman Opening Report ¶¶ 35, 38, 47, 48

**Holleman Legal Opinion That The Court's
Findings and Conclusions Are Irrelevant Should Be Excluded**

Holleman Rebuttal Report ¶ 4

Therefore, it does not make sense to consider [the FFCL] as a guide to the bilateral negotiations that should have occurred between these specific parties and the offers Motorola made.

Findings of Fact and Conclusions of Law ¶ 83

Motorola suggests that RAND terms and conditions can be determined by simulating a hypothetical bilateral negotiation under the RAND obligation. (11/19/12 Tr. at 149:14-17 (Schmalensee Testimony).) As explained and modified herein, the court generally agrees with Motorola's approach.

Findings of Fact and Conclusions of Law at 33

[T]he court sets out the factors that an SEP owner and standard-implementer would consider during a hypothetical negotiation over a reasonable royalty rate to be paid for patents obligated to a RAND commitment.

Findings of Fact and Conclusions of Law ¶ 91

Finally, in the context of a dispute over the proper RAND royalty rate, judicial simulation of a hypothetical, bilateral negotiation under the RAND obligation logically will lead to a royalty rate that both parties would have found to be reasonable.

Paragraphs to be excluded: Holleman Rebuttal Report ¶ 4.

**Holleman's Ultimate Conclusions on Good Faith Are Inadmissible**

Holleman Opening Report ¶ 37

**Motorola's October 2010 letters to Microsoft**, which state that Motorola's offer to Microsoft was based on its "standard terms," **represented a good faith attempt to enter into licensing negotiations with Microsoft** for a license to Motorola's H.264 and 802.11-essential portfolios. Microsoft filed suit before engaging in any such negotiations with Motorola.

Holleman Opening Report ¶ 38

Thus, **because Motorola attempted to engage Microsoft in good faith negotiations** for a RAND license to its H.264 and 802.11-essential patents prior to the filing of this lawsuit, **its actions are fully consistent with its RAND obligations** under the ITU and IEEE patent policies, even if its opening offers were not within the ranges set in Judge Robart's April 19, 2013 order.

Holleman Opening Report ¶ 59

RAND commitments are simply intended to foster good faith negotiations between essential patent holders and standards implementers. **Motorola satisfied those commitments by attempting to enter into good faith negotiations with Microsoft**.

*SEC v. Life Wealth Mgmt., Inc.* (C.D. Cal. 2013)

[I]t is inappropriate for an expert to attempt to intuit a party's subjective knowledge. . . . **[An] expert may not testify on the ultimate legal conclusion as to whether the defendants discharged their duties, or acted in good faith**. . . . Defendants fail to cite to any legal authority in support of their proposition that it is appropriate for an expert to testify about Defendants' purported good faith or lack of bias. . . . Such conclusions are reserved for the trier of fact, not for an expert witness.

*Klaczak v. Consol. Med. Transp. Inc.* (N.D. Ill. 2005)

[P]recedent teaches that **proffered expert assertions about another's subjective intent or knowledge are not helpful to the jury**, which is equally if not much better suited to make these assessments than the parties' competing paid experts.

Paragraphs to be excluded: Holleman Opening Report ¶¶ 15, 33, 37, 38, 60

**Holleman's Legal Interpretation of the RAND Commitment Is Inadmissible**

Holleman Opening Report ¶ 39

Nothing in SDO IPR or Antitrust policies are understood to limit the IPR holder's legal rights to enforce its patents, including the right to seek an injunction. Indeed, neither the IEEE nor ITU policies explicitly preclude a patent holder from seeking injunctive relief.

Holleman Opening Report ¶ 30

The RAND commitment is a commitment by the patent owner to engage in good faith bilateral negotiations with all potential licensees to license essential IPR on reasonable terms and conditions.

*Nationwide Transport Finance v. Cass Info. Sys., Inc.* (9th Cir. 2008)

"**[An] expert witness cannot give an opinion as to her legal conclusion**, *i.e.*, an opinion on an ultimate issue of law. Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court."

*Aguilar v. Int'l Longshoremen's Union* (9th Cir. 1992)

"**[E]xpert testimony consisting of legal conclusions regarding [the] existence of [a] contract or [the] meaning of its terms [is] not admissible** . . . . The district court did not abuse its discretion when it determined that this expert testimony would be 'utterly unhelpful' and was therefore inadmissible."

Paragraphs to be excluded: Holleman Opening Report ¶¶ 15, 21, 23, 30, 31, 36, 39, 59, 60.