# EXHIBIT B

**Leonard Opinions Subject to Microsoft's Daubert Motion**

**July 30, 2013**

**Leonard's Opinion That Microsoft Acted Improperly
By Suing Instead of Negotiating Should Be Excluded**

Leonard Opening Report ¶ 78

As noted above, after receiving the opening offers from Motorola, Microsoft filed this lawsuit without making any counter-offer or otherwise engaging in negotiation. Thus, Microsoft effectively ended the negotiation.

Leonard Opening Report ¶ 79

To the extent that Microsoft is claiming that, in subsequent negotiations, Motorola would not have moved off its opening offer or would otherwise have refused to negotiate in good faith after making its opening offers, Microsoft's own action in filing this lawsuit before letting the negotiation play out has prevented us from obtaining a direct answer to that question. Microsoft could have negotiated further and brought the lawsuit if, after a good faith effort, it still believed Motorola was not negotiating in good faith.

Leonard Opening Report ¶ 81

It is Microsoft's responsibility to form its own arguments and persuade Motorola of its positions by way of negotiation. Microsoft certainly has the experience, resources, and ability to do so. However, it chose not to negotiate and instead bring this lawsuit.

June 6, 2012 Summary Judgment Order (Dkt. No. 335)

In sum, the court concludes that Motorola's contracts with the IEEE and the ITU do not condition Motorola's RAND obligations on the implementer first applying for a license and then negotiating in good faith. . . .  Moreover, the court will not find that Microsoft has repudiated its rights to a RAND license by simply seeking court relief in attempting to enforce the terms of Motorola's commitments to the IEEE and ITU.

Paragraphs to be excluded: Leonard Opening Report page 28 and ¶¶ 78, 79

Leonard Opinions Subject to Exclusion        1

**Leonard's Ultimate Conclusions on Good Faith Are Inadmissible**

Leonard Opening Report ¶ 61

Based on the record, my experience with patent licensing, and the application of economic principles, I conclude that Motorola was acting in good faith when it made its opening offers to Microsoft for the reasons discussed below.

Leonard Opening Report ¶ 85

Based on the foregoing, I conclude that Motorola sent the initial offer letters in October 2010 in good faith.

*SEC v. Life Wealth Mgmt., Inc.* (C.D. Cal. 2013)

[I]t is inappropriate for an expert to attempt to intuit a party's subjective knowledge. . . . **[An] expert may not testify on the ultimate legal conclusion as to whether the defendants discharged their duties, or acted in good faith**. . . . Defendants fail to cite to any legal authority in support of their proposition that it is appropriate for an expert to testify about Defendants' purported good faith or lack of bias. . . . Such conclusions are reserved for the trier of fact, not for an expert witness.

*Klaczak v. Consol. Med. Transp. Inc.* (N.D. Ill. 2005)

[P]recedent teaches that **proffered expert assertions about another's subjective intent or knowledge are not helpful to the jury**, which is equally if not much better suited to make these assessments than the parties' competing paid experts.

Paragraphs to be excluded: Leonard Opening Report ¶¶ 60, 61, 85

**Leonard's Legal Interpretation That RAND Does Not Require**
**Consideration of Stacking Undermines The Court's Rulings**

Leonard Opening Report ¶ 81

Microsoft asserts that Motorola should have taken into account royalty stacking, presumably by considering the full set of patents, owned by various patent owners, that might be standard-essential. **I do not agree that Motorola has a responsibility to conduct this analysis before making an initial offer. Instead, the royalty stacking argument is one that would most likely benefit Microsoft. It is Microsoft's responsibility to form its own arguments and persuade Motorola of its positions by way of negotiation**. Microsoft certainly has the experience, resources, and ability to do so. However, it chose not to negotiate and instead bring this lawsuit.

Leonard Rebuttal Report ¶ 7

Dr. Murphy claims that Motorola should have been aware of the number of other 802.11 and H.264 SEP owners and the implications of each such owner asking for a royalty at the level of Motorola's opening offers. **However, rather than this hypothetical royalty stacking calculation that Dr. Murphy suggests, the relevant calculation would be the amount of royalties that Microsoft was actually paying to other 802.11 and H.264 SEP owners (i.e., the actual amount of royalty stacking, not some hypothetical amount of royalty stacking)**. This is not information that Motorola could have obtained on its own (since it was confidential Microsoft information), but instead is something that Microsoft could have provided to Motorola had Microsoft engaged in negotiations before filing its lawsuit.

Findings of Fact and Conclusions of Law ¶ 539

The anti-stacking principle constrains RAND because parties in a RAND negotiation would determine a reasonable royalty by considering how much in total license fees the implementer can pay before implementation of the standard becomes cost-prohibitive. . . . In other words, a RAND negotiation would not be conducted in a vacuum, but the parties would instead consider other SEP holders and the royalty rate that each of these patent holders might seek from the implementer based the importance of these other patents to the standard and to the implementer's products.

Paragraphs to be excluded: Leonard Opening Report ¶ 81, Leonard Rebuttal Report ¶ 7

Leonard Opinions Subject to Exclusion               3

**Leonard's Opinion That Blatantly Unreasonable Offers Do Not Necessarily
Breach the RAND Licensing Commitment Undermines The Court's Ruling**

Leonard Rebuttal Report ¶ 4

I explained in my initial report that **the Court's statements indicate that a good faith opening offer need not be within the RAND range**, and that although its offers were outside the ranges for the RAND royalty rates determined by the Court, Motorola was acting in good faith when it made its opening offers to Microsoft.

Leonard Opening Report ¶ 76

[T]he party making the opening offer has little incentive to put much effort into formulating the opening offer because, **there is little chance that the opening offer will be accepted or even play a significant role in the ultimate outcome**.

Leonard Dep. 39:23–40:15

Q.  Suppose the opening offer is blatantly unreasonable, would that be consistent with good faith?
. . .
THE WITNESS: Again, I don't think that by itself. You know, if -- I think what would -- it depends what happens next. . . .[Y]ou could very well end up with a RAND rate.  And the opening offer really has nothing to do with the outcome.

June 6, 2012 Summary Judgment Order (Dkt. No. 335)

[T]he court concludes that under Motorola's agreements with the IEEE and the ITU, Motorola need not make initial offers on RAND terms.  **This conclusion, however, does not mean that Motorola**, as the owner of standard essential patents subject to RAND licensing agreements with the IEEE and ITU, **may make blatantly unreasonable offers to implementers**. Such behavior would frustrate the purpose behind the agreements by allowing the standard essential patent owner to abuse its power as a standard essential patent holder. . .

February 27, 2012 Summary Judgment Order (Dkt. No. 188)

Second, as Microsoft points out, if the policies are read to permit Motorola to offer on non-RAND terms, then the policies would permit Motorola to make offers on exorbitant terms so long as the final license reflects RAND terms.  It seems unlikely to the court that either the IEEE or the ITU would deem a patent essential for a certain standard only to permit that patent holder to turn around and abuse that power by seeking outrageously high royalty rates.  To wit, during the February 13, 2012 status conference, **counsel for Motorola agreed that blatantly unreasonable offers would violate its RAND obligations under the policies**.

Paragraphs to be excluded: Leonard Opening Report ¶ 76

Leonard Opinions Subject to Exclusion         4

**Leonard's Legal Conclusions Are Inadmissible**

Leonard Rebuttal Report ¶ 33

Because of its failure to prove causality and to account for mitigation, **I conclude that Microsoft has not established a reliable basis for calculating its damages and thus should not be awarded any damages in this case**.

Leonard Opening Report ¶ 60

As an economist, it is my opinion that an opening offer is made in good faith if it meant to be the start of a negotiation through which the parties can reach a RAND license.

Leonard Rebuttal Report ¶ 19

Microsoft was not situated similarly to other 802.11 implementers—it had sued Motorola. RAND does not require an SEP owner to treat differently situated licensees similarly.

Leonard Rebuttal Report ¶ 28

**I understand that Motorola was well within its rights to bring the patent infringement lawsuits it filed.** . . After Microsoft's refusal to negotiate, it was reasonable for Motorola to file suit. Thus, **when assessing causation, Microsoft's actions in initiating the litigation must be taken into account**. Moreover, even had Microsoft responded to Motorola's offer letters before filing suit, **I understand that there is no prohibition against bringing a lawsuit asserting infringement of an SEP**.

*Nationwide Transport Finance v. Cass Info. Sys., Inc.* (9th Cir. 2008)

"**[An] expert witness cannot give an opinion as to her legal conclusion**, *i.e.*, an opinion on an ultimate issue of law. Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court."

*Pinal Creek Group v. Newmont Mining Corp.* (D. Ariz. 2005)

"[F]ederal courts typically **prohibit lawyers, professors, and other experts from interpreting the law for the court** or from advising the court about how the law should apply to the facts of a particular case."

*Elsayed Mukhtar v. California State Univ., Hayward,* (9th Cir. 2002

"When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's."

Paragraphs to be excluded: Leonard Opening Report ¶60, Leonard Rebuttal Report ¶¶ 19, 28, 33