# EXHIBIT 1

```
              UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON AT SEATTLE
_____

  MICROSOFT CORPORATION,        )
                                )
              Plaintiff,        ) CASE NO. C10-1823JLR
                                )
  v.                            ) SEATTLE, WASHINGTON
                                ) July 30, 2013
  MOTOROLA, INC., et al.,       )
                                ) Daubert hearing
              Defendant.        )
                                )
_____

              VERBATIM REPORT OF PROCEEDINGS
           BEFORE THE HONORABLE JAMES L. ROBART
                UNITED STATES DISTRICT JUDGE
_____

  APPEARANCES:

   For the Plaintiff:      ARTHUR HARRIGAN
                           RICHARD CEDEROTH
                           ANDREW CULBERT
                           DAVID PRITIKIN
                           CHRISTOPHER WION


   For the Defendant:      KATHLEEN SULLIVAN
                           WILLIAM PRICE
                           PHILIP McCUNE
                           RALPH PALUMBO (by telephone)


   Reported by:            NANCY L. BAUER, CCR, RPR
                           Federal Court Reporter
                           700 Stewart Street, Suite 17205
                           Seattle, WA 98101
                           (206) 370-8506
                           nancy_bauer@wawd.uscourts.gov
```

1  (Off the record.)
2  MR. PRICE: So, Your Honor, with respect to
3  Mr. Holleman, it's essential that he be entitled to testify
4  as to the custom and practice of the industry so that the
5  jury can -- can -- to help the jury determine whether or not
6  Motorola in this case acted in good faith. And so the
7  question that's been raised by Microsoft is whether or not
8  that testimony is inconsistent with the court's order.
9  I know there is also a question of whether or not he is
10 testifying to legal conclusions. I find it interesting that,
11 I think, Dr. Murphy is testifying for Microsoft that
12 Motorola's actions constituted a holdup and that they weren't
13 in good faith. I think we're, likewise, entitled to have an
14 expert. It will be Mr. Holleman testifying about Motorola's
15 actions and that they are, in fact, consistent with good
16 faith.
17 But beyond that issue of, you know, should they be able to
18 testify to that ultimate issue, it basically comes down to
19 whether or not Holleman has gone too far and is inconsistent
20 with what the court has ruled.
21 And if we look at some of the examples, I think you can
22 kind of see why -- and a couple of things in the report, he
23 did go beyond what I think he should have, and I informed
24 counsel that we're not going to express those opinions. And
25 a couple of those include points that were actually talked

about, and I'll tell the court we also are dropping those. And I think those, in particular, are, if we go to page 7, paragraphs 37 and 38, we do not -- we do not intend to present -- also paragraph 59, because ==Mr. Holleman is not going to be giving an opinion on whether or not these actions were, in fact, in good faith.==  What he will testify to is what was custom and practice in the standard-setting organizations.

Now, let's start with his testimony, and it is illustrative on page 1, which is concerning the obligation to negotiate in good faith.  And, Your Honor, Mr. Holleman will not testify that -- that contrary to what you have ruled, and if I can try to summarize this correctly, which is that an SEP patentholder has an obligation to license to a prospective patentee at a FRAND rate.  He will not disagree with that.

What he's going to testify to is that the expectation, you know, as reflected in the provisions of the SSO procedures, the expectation, the general way this works, the custom and practice is, there is an opening offer, there are negotiations, and the SSO doesn't determine FRAND.  It actually doesn't determine good faith.  They're out there outside the organization, trying to negotiate toward a FRAND rate.  He'll testify that is the custom and practice.  He will -- he will not say -- and I'm not going to say

1   internally he -- he wouldn't want to say -- he won't say that
2   there is no obligation to give a FRAND license if the
3   patentee says, "I will accept that licensee."  He will not
4   testify to that.
5       But what he will testify to -- because that would be
6   inconsistent with the order.  But what he will testify to is
7   that part of the commitment is that you negotiate in good
8   faith.  Now -- and that covers sort of what we have here on
9   the first page.  And I actually don't think that's in
10  dispute.  I think that even Microsoft would agree that that's
11  one of the obligations, you know, certainly that the SEP
12  holder has, which is they're supposed to negotiate in good
13  faith.  But that's the question, you know, are we acting in
14  good faith?  And he'll testify that that's how you evaluate
15  whether or not the opening offer was appropriate, was it in
16  good faith?
17      And I'll give Your Honor an example.  Your Honor has said
18  that an unreasonable offer, you know, is inappropriate.  I
19  think that if --
20          THE COURT:  I think what I said was an initial offer
21  could be so out of proportion to RAND that it would
22  constitute bad faith.
23          MR. PRICE:  Thank you for clarifying that.  And I
24  think -- I think that's important, because I think what you
25  were saying is that a jury could conclude if it's totally

1   outrageous that there was bad faith.
2       However, you could imagine a negotiation where the
3   patentholder said, "Oh, gosh, I don't know what to ask for
4   this. I've never done it before. A zillion dollars. Just
5   tell me what you think you should pay." I'm asking for a
6   zillion. "Give me an idea of what you think you should pay."
7       And if that person, in good faith, is trying to negotiate
8   in good faith, but is trying to seek information from the
9   other side, then I don't know if you conclude that, you know,
10  saying that outrageous number is, by itself, bad faith. The
11  question is, what is evidence of good faith, given all the
12  circumstances? And I believe that's what Mr. Holleman would
13  testify to on that issue.
14          THE COURT: Well, let's take page 1, paragraph 59 as
15  an example. You struck that. Is that correct?
16          MR. PRICE: Yes.
17          THE COURT: Okay. Then that's the one I want to
18  concentrate on, because it will no longer be in the case.
19      When you insert the words "simply intended," I would use
20  "simply intended" to be contrary to my order in this matter.
21          MR. PRICE: And I understand.
22          THE COURT: And, you know, I don't want to ask you if
23  you agree or disagree with that. I'm glad you struck it.
24  But that's the kind of thing that I need to prevent you from
25  doing, because it's going to waste everybody's time, and all

1  we're going to do is have objections to it at trial, and I'll
2  sustain them.
3      Your description of what Holleman would testify to is that
4  we have negotiations, the standard-setting organization is
5  not involved in setting the rate, and, in fact, they're not
6  even involved in the negotiation.  Those are all components
7  of the negotiation process that I have no trouble with the
8  jury hearing.  It's when we start to get into these
9  conclusions about this is what we are obligating ourselves
10 to, simply to intend to foster good faith.  That's -- that's
11 what my point of concern is.
12         MR. PRICE:  And at trial we'll very carefully
13 articulate that so he's not saying that's the only
14 obligation, because obviously we don't want to say anything
15 that's inconsistent with Your Honor's order, and this wasn't
16 that clear.
17     But there are a couple of other areas where I think we
18 need further discussion, because I don't think what he's
19 testifying to is inconsistent with this court's order at all.
20 And, in fact, maybe we shouldn't have a trial.  And those are
21 two areas.
22     One is whether or not it's under the SSO policies, whether
23 or not it's inappropriate to seek an injunction.  And you see
24 Mr. Holleman's testimony that -- that the policies say
25 nothing about that.  And, quite frankly, neither does Your

1   make available the RAND license.  And there's no
2   obligation -- the court has specifically held this -- there
3   is no obligation on the part of the implementer, the would-be
4   licensee, to make a counteroffer.  We didn't have to do that
5   in order to enforce a RAND commitment.  The court has said
6   that in black and white.
7       And so, again, this is being massaged on the fly here
8   today as to -- and they're rephrasing what these experts are
9   going to say, trying to find something that maybe will slip
10  in, but those kinds of arguments, it's really snake oil, Your
11  Honor.  They should not be able to tell the jury that we did
12  something wrong or to imply it or suggest by coming to court
13  seeking a remedy that was available to us to stop the holdup
14  that they were engaged in.  Now --
15          THE COURT:  Mr. Pritikin, let me cut you off here,
16  because you're running out of time.
17      They are going to be able to testify to what happened.
18  You didn't submit a counteroffer.  You exercised your
19  prerogative to come to court.  Motorola doesn't think that
20  the mechanism of having a court set a RAND rate is a
21  particularly good idea.
22      I expect both sides are going to present those points of
23  view to the jury.  What I can tell you is, you're going to
24  have a sufficient legal framework to be able to say, if I've
25  said it, this is permissible in these circumstances, this is

1  not permissible.  Beyond that, both sides are going to be
2  able to present their cases.
3      I must say, there are a lot of conclusions drawn by
4  economists, accountants, licensing experts that invade things
5  that the court has ruled on, and we're going to go through
6  and cross those out, and you all are going to help us,
7  because by close of business tomorrow, someone is going to
8  give us a statement on behalf of what is still in and what
9  has been withdrawn.
10             MR. PRITIKIN:  That would be very helpful.
11             THE COURT:  Yes.  And I'm asking both sides to do
12  that, so you'll have some homework in addition to getting
13  ready for arguments tomorrow.
14      But as it stands right now, I agree with you.  I not only
15  heard stuff being withdrawn, but I've heard it modified on
16  both sides in the course of the argument today.  That harkens
17  back to my concern that you all are not ready to go to trial,
18  and you know that I am a complete tyrant on the question of
19  we are going to get this case resolved.  We're not going to
20  tolerate having it just sort of slip away from us.  So
21  further work on that effort will be required, but you pretty
22  much have our attention for the next bit while we try and get
23  you ready to actually try the case.  It's not that difficult
24  of a case to try.  I mean, it just isn't, folks.
25      Mr. Price, I promised you the last word.  You have one