# EXHIBIT 1

EXECUTIVE OFFICE OF THE PRESIDENT
THE UNITED STATES TRADE REPRESENTATIVE
WASHINGTON, D.C. 20508

August 3, 2013

The Honorable Irving A. Williamson
Chairman
United States. International Trade Commission
500 E Street, SW
Washington, DC 20436

RE: Disapproval of the U.S. International Trade Commission's Determination in the Matter of Certain Electronic Devices, Including Wireless Communication Devices, Portable Music and Data Processing Devices, and Tablet Computers, Investigation No. 337-TA-794.

Dear Chairman Williamson:

On June, 4, 2013, the United States International Trade Commission ("Commission") determined that Apple Inc. ("Apple") had violated Section 337 of the Tariff Act of 1930, as amended, in the importation of certain devices, e.g., certain smartphones and tablet computers that infringe a U.S. patent owned by Samsung Electronics Co., Ltd. and Samsung Telecommunications America Inc. ("Samsung"). Following this determination, the Commission issued an exclusion order prohibiting the unlicensed importation of infringing devices, manufactured for or on behalf of Apple. The Commission also issued a cease and desist order that prevents Apple from engaging in certain activities, such as sale of these products in the United States.

Under section 337, the President is required to engage in a policy evaluation of the Commission's determinations to issue exclusion and cease and desist orders. The President may disapprove an order on policy grounds, approve an order, or take no action and allow the order to come into force upon the expiration of the 60-day review period. This authority has been assigned to the United States Trade Representative. The legislative history of section 337 lists the following considerations relevant to the policy review of the impact of the Commission's determination to issue an exclusion order: "(1) public health and welfare; (2) competitive conditions in the U.S. economy; (3) production of competitive articles in the United States; (4) U.S. consumers; and (5) U.S. foreign relations, economic and political."[1]

In addition, on January 8, 2013, the Department of Justice and United States Patent and Trademark Office issued an important Policy Statement entitled "Policy Statement on Remedies for Standard-Essential Patents Subject to Voluntary FRAND Commitments" ("Policy Statement").[2] The Policy Statement makes clear that standards, and particularly voluntary

---

[1] S. Rep. No. 93-1298, 93d Cong. 2d Sess. 199 (1974).
[2] U.S. DEP'T OF JUSTICE AND U.S. PATENT AND TRADEMARK OFFICE. POLICY STATEMENT ON REMEDIES FOR STANDARD-ESSENTIAL PATENTS SUBJECT TO VOLUNTARY FRAND COMMITMENTS (2013) available at http://www.justice.gov/atr/public/ guidelines/290994.pdf

The Honorable Irving A. Williamson
August 3, 2013
Page Two

consensus standards set by standards developing organizations ("SDO"), have incorporated
important technical advances that are fundamental to the interoperability of many of the products
on which consumers have come to rely, including the types of devices that are the subject of the
Commission's determination.  The Policy Statement expresses substantial concerns, which I
strongly share, about the potential harms that can result from owners of standards-essential
patents ("SEPs") who have made a voluntary commitment to offer to license SEPs on terms that
are fair, reasonable, and non-discriminatory ("FRAND"), gaining undue leverage and engaging
in "patent hold-up", *i.e.*, asserting the patent to exclude an implementer of the standard from a
market to obtain a higher price for use of the patent than would have been possible before the
standard was set, when alternative technologies could have been chosen.  At the same time,
technology implementers also can cause potential harm by, for example, engaging in "reverse
hold-up" ("hold-out"), *e.g.*, by constructive refusal to negotiate a FRAND license  with the SEP
owner or refusal to pay what has been determined to be a FRAND royalty.

As the Policy Statement makes clear, whether public interest considerations counsel against a
particular exclusion order depends on the specific circumstances at issue. The statement also
explains that, to mitigate against patent hold-up, exclusionary relief from the Commission based
on FRAND-encumbered SEPs should be available based only on the relevant factors described
in the Policy Statement.[3]  The courts are also engaged on the issue of appropriate remedies for
infringement of SEPs and we look forward to the development of appellate jurisprudence on this
issue.  The SEP Policy Statement is one part of the Administration's continuing efforts to
consider the scope of appropriate remedies for owners of SEPs, and encourage the development
of strong, innovative standards.

The Administration is committed to promoting innovation and economic progress, including
through providing adequate and effective protection and enforcement of intellectual property
rights.  Relief available to the owners of intellectual property rights through section 337 is an
important facet of achieving that objective.  At the same time, standards, and particularly
voluntary consensus-based standards set by SDOs, have come to play an increasingly important
role in the U.S. economy.  Important policy considerations arise in the enforcement of those

---

[3] "An exclusion order may still be an appropriate remedy in some circumstances, such as where the putative licensee
is unable or refuses to take a FRAND license and is acting outside the scope of the patent holder's commitment to
license on FRAND terms.  For example, if a putative licensee refuses to pay what has been determined to be a
FRAND royalty, or refuses to engage in a negotiation to determine F/RAND terms, an exclusion order could be
appropriate.  Such a refusal could take the form of a constructive refusal to negotiate, such as by insisting on terms
clearly outside the bounds of what could reasonably be considered to be F/RAND terms in an attempt to evade the
putative licensee's obligation to fairly compensate the patent holder.  An exclusion order also could be appropriate if
a putative licensee is not subject to the jurisdiction of a court that could award damages.  This list is not an
exhaustive one.  Rather, it identifies relevant factors when determining whether public interest considerations should
prevent the issuance of an exclusion order based on infringement of a F/RAND-encumbered standards-essential
patent or when shaping such a remedy." Policy Statement at 7-8 (internal footnotes omitted).

The Honorable Irving A. Williamson
August 3, 2013
Page Three

patents incorporated into technical standards without which such standards cannot be
implemented as designed, when the patent holder has made a voluntary commitment to offer to
license these SEPs on FRAND terms. Licensing SEPs on FRAND terms is an important element
of the Administration's policy of promoting innovation and economic progress and reflects the
positive linkages between patent rights and standards setting.

I have reviewed the various policy considerations set out above based on the information
provided in this case, including information developed in connection with the Commission's
determination. Although the parties dispute the facts vigorously, it is beyond the scope of this
policy review to revisit the Commission's legal analysis or its findings based on its record.

After extensive consultations with the agencies of the Trade Policy Staff Committee and the
Trade Policy Review Group, as well as other interested agencies and persons, I have decided to
disapprove the USITC's determination to issue an exclusion order and cease and desist order in
this investigation. This decision is based on my review of the various policy considerations
discussed above as they relate to the effect on competitive conditions in the U.S. economy and
the effect on U.S. consumers.

I would like to underscore that in any future cases involving SEPs that are subject to voluntary
FRAND commitments, the Commission should be certain to (1) to examine thoroughly and
carefully on its own initiative the public interest issues presented both at the outset of its
proceeding and when determining whether a particular remedy is in the public interest and (2)
seek proactively to have the parties develop a comprehensive factual record related to these
issues in the proceedings before the Administrative Law Judge and during the formal remedy
phase of the investigation before the Commission, including information on the standards-
essential nature of the patent at issue if contested by the patent holder and the presence or
absence of patent hold-up or reverse hold-up. In addition, the Commission should make explicit
findings on these issues to the maximum extent possible. I will look for these elements in any
future decisions involving FRAND-encumbered SEPs that are presented for policy review. The
Commission is well-positioned to consider these issues in its public interest determinations.

The Honorable Irving A. Williamson
August 3, 2013
Page Four


This policy decision is not an endorsement or a criticism of the Commission's decision or analysis.  My decision to disapprove this determination does not mean that the patent owner in this case is not entitled to a remedy.  On the contrary, the patent owner may continue to pursue its rights through the courts.

Sincerely,

Ambassador Michael B. G. Froman