HONORABLE JAMES L. ROBART

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>                    Plaintiff,<br><br>        v.<br><br>MOTOROLA INC., et al.,<br><br>                    Defendant. | No. C10-1823-JLR<br><br>**FILED UNDER SEAL**<br><br>MICROSOFT'S OPPOSITION TO<br>DEFENDANTS' MOTIONS IN LIMINE<br><br>**Noted: August 9, 2013**<br><br>**ORAL ARGUMENT REQUESTED** |
| MOTOROLA MOBILITY, INC., et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>MICROSOFT CORPORATION,<br><br>                    Defendant. | |

MICROSOFT'S OPPOSITION TO
DEFENDANTS' MOTIONS IN LIMINE

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1

# <u>TABLE OF CONTENTS</u>

2    I.   THE COURT SHOULD DENY MOTOROLA'S MOTION TO DISCARD THE
COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW. ................................ 1

3

4         A.  Motorola Knew The Key Facts Underlying The Court's RAND Royalty
Determination That Readily Demonstrated That Its Demands Were Outrageous. ......... 1

5         B.  Motorola Fails To Identify Any Relevant Confidential Information Informing The
Court's RAND Royalty Determination............................................................. 4

6

7         C.  Motorola Waived Any Jury Right To All Issues Necessary For The RAND
Determination................................................................................. 6

8         D.  The Court Should Reject Motorola's Proposed Jury Instruction. .................................. 8

9    II.  THE COURT SHOULD DENY MOTOROLA'S MOTION TO BAR MICROSOFT
FROM REFERRING TO MOTOROLA'S PRIOR POSITIONS, INCLUDING

10          POSITIONS TAKEN BY ITS PRIOR EXPERTS. ............................................................. 9

11

12   III.  THE COURT SHOULD PERMIT MICROSOFT TO REFERENCE MOTOROLA'S
CLAIMS OF PRIVILEGE AS NECESSARY TO REBUT MOTOROLA'S
CONTENTIONS AND IMPEACH ITS WITNESSES. .................................................... 11

13

14         A.  Motorola's Own Standard For Evaluating Good Faith Demands Consideration Of
Evidence Motorola Blocked Microsoft From Discovering.......................................... 12

15         B.  Microsoft Must Be Permitted To Cross-Examine Motorola's Experts Concerning
Relevant Information They Failed To Consider. ......................................................... 14

16

17

18

19

20

21

22

23

24

25

26

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTIONS IN LIMINE

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

## I. THE COURT SHOULD DENY MOTOROLA'S MOTION TO DISCARD THE COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW.

Motorola seeks to exclude the Court's Findings of Fact and Conclusions of Law, *see* Dkt. No. 801, Defendants' Motion in Limine ("MIL") 1–11, and as Motorola's counsel describes it, the motion is premised on pretending that the November RAND royalty trial never happened. *See* Ex. 1, 7/30/2013 Hearing Tr. 72:7–9. As Microsoft understands the Court's position on this issue, in order to determine whether Motorola breached its RAND licensing commitments, the fact finder would need to know the RAND royalties for the SEPs at issue, and the entire purpose of the November RAND royalty trial was to conduct the necessary factual inquiries to set those royalties. *See* Ex. 1 at 73:22–74:1. The Court should deny Motorola's motion outright.[1] In resolving the question of Motorola's breach, the jury should consult not only the RAND royalties determined by the Court, but other relevant findings on the RAND licensing commitment made in the course of that determination. *See* Ex. 1 at 71:6–13, 74:15–16, 90:11–18, 101:12–17. Motorola's motion raises no factual or legal issues that might counsel reconsideration of that position.

### A. Motorola Knew The Key Facts Underlying The Court's RAND Royalty Determination That Readily Demonstrated That Its Demands Were Outrageous.

Motorola's motion repeatedly and misleadingly suggests that the information presented at the November RAND royalty trial was unavailable or unknown to Motorola in October 2010. *See* MIL at 1, 2 ("[T]he detailed scope of the Order demonstrates that the Court relied on [*sic*] that Motorola did not and could not know when it made its offers in 2010.") 3, 4, 5, 6

---

[1] Assuming the Court rejects Motorola's attempt to exclude the Findings and Conclusions from the trial, Microsoft expects Motorola will try other avenues to achieve the same result. As the Court observed in its *Daubert* ruling, Motorola's proposed testimony from its expert witnesses in several instances invades the province of the Court in instructing the jury on the law, or could leave the jury with the impression that Motorola's obligations are something other than what the Court ultimately instructs. (Dkt. No. 822 at 25–45.) The Court should reject additional flanking attacks on the results of the November RAND royalty trial along with the frontal assault presented by Motorola's motion *in limine*.

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTIONS IN LIMINE - 1

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   ("[T]he Court's ability to determine a RAND rate range was based on vastly superior

2   information than that available to Motorola.").

3          The Court's Findings and Conclusions, however, are rooted in the public record.  In

4   particular, the numbers in the Court's RAND royalty determinations were largely, if not

5   entirely, based on public information or information known to Motorola, not on confidential

6   information.[2]  As discussed further below, only a fraction of the evidence introduced at trial

7   was and remains confidential.  The facts indisputably known and available to Motorola in

8   October 2010 entirely refute any notion of the legitimacy of its outrageous demands.  Motorola

9   owned the patents at issue, and it or its acquired predecessors had prosecuted the patent

10  applications that led to them.  Motorola had participated in the relevant standards bodies;

11  indeed, it has claimed to have been deeply involved in their efforts.  Motorola was a key

12  participant in the formation and adoption of the H.264 patent pool and aggressively pushed to

13  keep the royalties low.  Motorola obviously knew that its H.264 patents largely pertained to

14  interlaced video, and that its 802.11 patents only covered a small component of larger devices.

15         Motorola thus had all of the relevant information about the contribution of its patents to

16  the standards at hand in October 2010.  It can point to nothing else it needed to determine, like

17  the Court, that its patents represented only a "sliver" of the technology contributed to the

18  standards. (Dkt. No. 673 ("FFCL") ¶¶ 533, 576.)  For its 802.11 SEPs, Motorola knew it

19  sought royalties vastly out of proportion with the results of its own InteCap 802.11 study, and

20

21         [2] While Motorola's Motion in Limine follows the parties' (and the Court's) practice of collectively referring to
    the defendants in this case as "Motorola," by putting its claimed lack of knowledge in October 2010 at issue,
22  Motorola brushes past a new argument it is attempting to inject into the trial:  Motorola's proposed jury
    instructions and verdict form reveal that it intends to try the case not as "Motorola," but by splitting itself up into
23  Motorola Solutions, Inc. (formerly Motorola, Inc.), Motorola Mobility, LLC, and General Instrument Corp. (*See,
    e.g.*, Dkt. No. 791, Joint Statement of Disputed Jury Instr. at 39 (proposing that the jury "decide the case as to
    each defendant separately")).)  While Microsoft's response to that instruction lays out a series of reasons why this
24  eleventh-hour change should be rejected, including Motorola's having tried the November RAND royalty portion
    of this case as "Motorola" (*see id.* at 39–40), Motorola's current motion only reinforces the point.  Motorola
25  claims the concern of its motion *in limine* is "Motorola's" knowledge in October 2010—not Motorola, Inc.'s
    knowledge, or General Instrument's knowledge.
26

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1  facts available to Motorola showed that the "Motorola held 25% of all 802.11 SEPs"

2  assumption upon which that study was based was wildly exaggerated.  FFCL ¶ 595.  And for

3  its H.264 SEPs, Motorola knew it sought royalties orders of magnitude higher than the

4  standard H.264 royalty that Motorola itself had approved for the entire MPEG-LA pool.  FFCL

5  ¶¶ 478–79.  Motorola argued in 2003 that H.264 royalties far lower than those it demanded in

6  October 2010 were "too expensive for mobile," and would potentially lead to adoption of a

7  different standard.  FFCL ¶ 475.

8         The terms of the MPEG LA H.264 licensing pool, the terms of the Via 802.11 licensing

9  pool (which Motorola knew, having submitted a patent for inclusion, FFCL ¶ 550), and the

10 InteCap study were all known to Motorola in October 2010 and provided clear, concrete,

11 comparable data concerning the licensing of its SEPs that Motorola could have—and may well

12 have—easily compared its demands to, and would have found those demands far out of

13 bounds.  Motorola was aware of its own licensing program, and knew it had never obtained

14 royalties for H.264 and 802.11 like those it demanded of Microsoft.  Information like the cost

15 and function of 802.11 chipsets, FFCL ¶ 580–81, broadly-applicable licensing rates in the

16 semiconductor chip industry, FFCL ¶¶ 582–87, and the number of holders of 802.11 and H.264

17 patents (which, when multiplied by 2.25%, demonstrates the staggering stacking problems

18 created by Motorola's demands) were either publicly available or known to Motorola (*see* Dkt.

19 No. 729 at 15).  This information, coupled with basic logic, would have—and may well have—

20 told Motorola that its demands were commercially unreasonable and impossible for any

21 rational company to agree to.  The Court's use of information known to Motorola to determine

22 RAND royalties orders of magnitude lower than Motorola's demands was neither

23 extraordinary nor unpredictable.

24

25

26

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTIONS IN LIMINE - 3

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700 FAX, (206) 623-8717

**B. Motorola Fails To Identify Any Relevant Confidential Information Informing The Court's RAND Royalty Determination.**

Although critical to its motion, Motorola fails to identify any *specific* information presented at trial that (1) was unavailable to Motorola in October 2010, (2) was relevant to the Court's RAND royalty determination, and (3) would have assisted Motorola, in October 2010, in recognizing that its 2.25% demands were blatantly unreasonable. There is no such information. Motorola complains that it was helpless to make a reasonable offer to Microsoft without some exchange of confidential information, but fails to point to anything in the Court's Findings and Conclusions that would have led it to lower its demands. Motorola still sought 2.25% for its 802.11 SEPs at the November trial. While Motorola shifted the royalty demand of 2.25% on its H.264 SEPs from the computer (as indicated in the October 2010 letter) to the price of Windows, Motorola's witnesses did not explain this change at trial, and certainly never claimed it was because of any confidential information Motorola had learned after October 2010. The Court's flat per-unit royalty for H.264 tracked the structure of the MPEG LA H.264 pool, a royalty structure Motorola was well aware of and had approved long before October 2010.

As a threshold matter, as detailed in Microsoft's first motion *in limine*, Motorola has asserted privilege to block discovery into what information it did consider in formulating its demands. (Dkt. No. 801 at 1–6.) Motorola's claims that it lacked the necessary information needed to make a commercially reasonable offer are self-serving and unverifiable by Microsoft in light of the privilege claims, and the Court should disregard them on that basis alone.

Further, much of the confidential information referenced in the Court's Findings and Conclusions concerned evidence in Motorola's possession, introduced by Motorola— specifically, evidence associated with its own licensing with third parties RIM, Proxim, HHP, and Terabeam. *See* FFCL ¶¶ 423–25, 429, 432–34, 439, 444, 447, 450, 453. All of this information has been available to Motorola and its executives at all relevant times. In fact, the

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTIONS IN LIMINE - 4

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1  same Motorola witness who sent the letters (Kirk Dailey) provided the fact testimony on these

2  licenses at the November trial.

3      Motorola was aware of the expiration dates of its own patents, and knew in October

4  2010 that any standard-compliant products Microsoft sold in later years (whatever those

5  products might be) would not need a license to expired patents.  The Microsoft confidential

6  information referenced in the findings concerns evidence about the next generation Xbox,

7  including what it would and would not support.  The Court observed that some patents, based

8  on their expiration dates and the planned release date of the console, would not be relevant to

9  the next generation of Xbox. FFCL ¶¶ 354, 364, 375, 385, 395–96.  But the Court did not use

10  that information to compute a lower royalty, so this information cannot support Motorola's

11  argument.  As for support for H.264 and 802.11, the evidence showed that their relevance

12  would not decrease in the next generation Xbox. *See* FFCL ¶¶ 298, 300, 350.  That

13  information, if available to Motorola in October 2010, would not have counseled a lower

14  royalty and therefore cannot be cited by Motorola now to explain why its demands were too

15  high.

16      Finally, Motorola told the Court it should apply a modified *Georgia-Pacific* analysis,

17  and itself urged that information *unavailable* to Motorola in October 2010 should inform a

18  RAND royalty as part of that analysis— in particular, the Motorola license with Vtech that

19  arose a year later, in October 2011. (*See* Dkt. No. 673 ¶¶ 407–20.)  Another of Motorola's

20  since-discarded experts, Charles Donohoe, testified ███████████████████

21  ████████████████████████████████ Ex. 2, 11/20/2012 Tr. at 138:12–

22  139:24.  The Court should reject Motorola's current argument that the Court's RAND royalty

23  determination cannot be presented to the jury because it might be based on information

24

25

26

1    unavailable to Motorola in October 2010—Motorola intentionally injected such information

2    into the trial.[3]

3    ### C. Motorola Waived Any Jury Right To All Issues Necessary For The RAND

4         Determination.

5        In June 2012, Motorola agreed with Microsoft that the RAND determination phase of

6    this case would be tried to the bench, not to the jury. Ex. 3, June 14, 2012 Hearing Tr. 42:15–

7    43:4. Forgetting its partial waiver of its jury rights, Motorola now argues:

8           The Seventh Amendment requires that any issues common to determining the
            RAND rate and range and to determining whether Motorola breached its
            commitments to the IEEE and ITU be preserved for determination by a jury.

9           Introducing the opinion and Order poses the risk that the jury will believe itself
            bound to rule as the Court has ruled on issues that remain for the jury to decide.

10   MIL 3. Embedded in Motorola's claim is a proposition for which Motorola provides no

11   authority—that it can waive its jury trial right with respect to a portion of the case (which

12   Motorola undoubtedly did), but that Motorola can arbitrarily and selectively un-do the findings

13   on common issues, and re-try them to the jury. Nothing in the Seventh Amendment or relevant

14   case law allows that. Motorola's citations to *Beacon Theatres* and related authority, *see* MIL

15   at 8–9, are entirely off point, because Motorola told the Court it wanted to try the RAND

16   royalty issue to the bench. The Findings and Conclusions the Court entered following that trial

17   were those necessary to resolve that issue, which entirely disposes of any potential issue under

18   *Beacon Theatres.*

19       The Court made findings concerning the purposes of the RAND commitment and

20   relevant commercial licensing practices that were not only necessary to its RAND

21   determination, but tracked a framework that Motorola urged the Court to follow. The Court

22   used evidence that Motorola's witnesses (in particular, Richard Schmalensee) provided,

23   evidence that came from Motorola itself (e.g., the InteCap study), and other testimony that

24

---

25   [3] It would be even more abusive for Motorola to attempt to use such information now to justify its royalty
     demands—as Motorola's inclusion of the Vtech agreement on its exhibit list suggests it may do—while seeking to
     deprive the jury of the Court's findings on that issue.

26

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   Motorola had a full and fair opportunity to subject to cross examination.  Having urged the

2   Court to adopt the open, wide-ranging *Georgia-Pacific* approach, Motorola has no basis to

3   complain that findings concerning its own prior licensing studies, the testimony of its experts,

4   licensing practices in the semiconductor industry and in patent pools, the purposes of the

5   RAND commitment, or any of these other issues were improperly made by the Court in the

6   bench trial.  *See* Dkt. No. 541, Motorola's Trial Br. at 2 (urging that the Court apply "a

7   modified form of the well-known *Georgia-Pacific* hypothetical negotiation" and arguing "there

8   is significant support in the literature for employing a methodology like *Georgia-Pacific* to

9   determine RAND terms"); Dkt. No. 409, Defs.' Opp. to Microsoft's Rule 702 Mot. at 3

10  ("[T]he Georgia-Pacific methodology—a well-accepted, flexible framework for constructing a

11  hypothetical bilateral licensing negotiation to determine a reasonable royalty in the patent

12  infringement context—is a logical methodology for determining RAND terms."); Ex. 7, Defs.'

13  Pretrial Statement at 5 ████████████████████████████████████

14  ████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████

19  (emphasis added).

20      For the same reason, the Court should reject Motorola's claims of prejudice (MIL 6–7)

21  outright.  Motorola knew well that the Court's RAND determination would involve

22  consideration of a great deal of information, and urged it to adopt an open framework enabling

23  consideration of a multitude of factors.  Further, Motorola consented to a bench trial of the

24  RAND royalty issue on June 14, 2012, at which point it knew from the Court's June 6, 2012

25  summary judgment order that the purpose of that bench trial was to compute a RAND royalty

26

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTIONS IN LIMINE - 7

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

that a later fact-finder could compare to Motorola's opening offers. (*See* Dkt. No. 335 at 25–26 ("[T]o determine whether Motorola's offers were so blatantly unreasonable as to breach its duty of good faith, it is necessary in this instance to compare the offer against a true RAND royalty rate.").)  Motorola should not be heard to complain that it is prejudiced by a procedure Motorola knowingly consented to, that was implemented by the Court in a manner urged by Motorola.

Not only did Motorola explicitly waive any jury trial rights it might have had on issues necessary for the RAND determination in June 2012, but its silence on the jury issue throughout the course of the November trial implicitly waived those rights as well.  If Motorola believed the parties were venturing into territory that should have been reserved for the jury in the next phase, it should have brought that up at trial, or at a minimum in post-trial briefing.  Instead, Motorola stood by as the Court's Findings and Conclusions arrived (at which point Motorola made no complaint about its jury rights, nor did it ask the Court to reconsider or strike any findings or conclusions), and waited until one month before trial to mention for the first time that it viewed the entirety of the Court's Findings and Conclusions as a derogation of its jury rights.  Motorola waived those rights, and the Court should reject its untimely attempt to reassert them.

### D.  The Court Should Reject Motorola's Proposed Jury Instruction.

As Microsoft explained to the Court at the conclusion of the July 31, 2013 hearing, the issue of how to instruct the jury on the Court's Findings and Conclusions has already been taken up by the parties in the dispute over jury instructions, and the outcome of that debate has been filed with the Court. *See* Ex. 4, July 31, 2013 Hearing Tr. 81:16–25; Dkt. No. 791, Joint Statement of Disputed Jury Instr. at 11–36 (outlining parties' proposed instructions summarizing the case and corresponding objections).

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTIONS IN LIMINE - 8

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    Motorola's new proposed instruction (which it did not propose during the parties'

2    exchanges of jury instructions[4]) includes only the final RAND royalty and range, and inserts

3    language concerning a hypothetical negotiation (the framework Motorola urged the Court to

4    employ in the bench trial) to suggest that these numbers are uncertain or that the jury is not

5    bound by them.  *See* MIL at 10–11.  For example, Motorola is willing only to tell the jury that

6    the RAND royalty rate for Motorola's H.264 SEPs "*would have been* 0.555 cents per unit"—

7    not that the rate *is* 0.555 cents per unit.  Moreover, Motorola's proposal fails to instruct the jury

8    on how they are supposed to consider these numbers, declining to suggest that they be

9    compared to Motorola's October 2010 demands.

10    Motorola's instruction is inadequate and the Court should not adopt it.  Motorola has

11    made no realistic proposal of how to present the Court's relevant Findings and Conclusions to

12    the jury, and has instead taken an all-or-nothing approach consistent with its admitted

13    purpose—pretending that the November RAND royalty trial never happened.

**II.    THE COURT SHOULD DENY MOTOROLA'S MOTION TO BAR MICROSOFT FROM REFERRING TO MOTOROLA'S PRIOR POSITIONS, INCLUDING POSITIONS TAKEN BY ITS PRIOR EXPERTS.**

16    Motorola's first motion *in limine* seeks to throw out everything the Court found at the

17    November RAND royalty trial; its second motion *in limine* seeks to throw out everything

18    Motorola or its witnesses said at that trial or otherwise on the record.  Motorola's motion does

19    not provide any concrete suggestion as to what specific evidence Motorola seeks to exclude.

20    There are no references to Microsoft's briefing, pretrial disclosures, or expert reports.  Instead,

21    Motorola seeks a general ruling restricting Microsoft from making any reference to positions

22    Motorola or its experts have taken in the past.  Devoid of context, it is impossible to know

---

[4] Microsoft's proposed Preliminary Instruction No. 2 summarizing the relevant portions of the Findings and Conclusions and other pertinent prior rulings (Dkt. No. 791 at 11–29) can be compared to Motorola's alternative Preliminary Instruction No. 2 (*id.* at 33–34), which it characterizes as "consistent with" the Court's Findings and Conclusions (*id.* at 35).

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTIONS IN LIMINE - 9

1   what "arguments to the Court concerning how a RAND rate should be determined" Motorola

2   actually seeks to keep from the jury. *See* MIL 12.

3          In an apparent attempt to erase the testimony of its former expert witnesses, Motorola

4   also seeks to bar references to its "former positions." *See* MIL 12–13.  Motorola's contention

5   that the parties "agreed" to this is incorrect.  The correspondence Motorola attached to its

6   motion—as is evident from its content—concerned whether the only experts appearing at the

7   breach trial would be those that submitted expert reports for this second phase, in May and

8   June.  But the parties never agreed that Motorola's new experts were free to contradict its old

9   experts without any fear of being subject to cross-examination on Motorola's prior expert

10  testimony.  Motorola's characterization of that correspondence seems only an effort (as with its

11  first motion *in limine*) to retry selectively issues fairly and fully resolved in the Court's

12  Findings and Conclusions.

13         Motorola's claims of prejudice, *see* MIL 13, are impossible to evaluate without any

14  suggestion of what prior positions might be referenced, or why they might be introduced.

15  Motorola should not be granted a broad order that would tie Microsoft's hands and constrain

16  its ability to impeach Motorola's witnesses with inconsistent positions.  As indicated by

17  Motorola's first motion *in limine*, one significant disconnect between Motorola's former and

18  new positions concerns the availability of information presented at the RAND royalty trial.

19  Motorola's former position was that even with all of that information considered, 2.25% of

20  Windows and Xbox was the correct RAND royalty. *See* FFCL at 130.  If Motorola's witnesses

21  are to be believed, Motorola always started at 2.25%, and always ended at 2.25%.  That was

22  the rate, and as Motorola confirmed in earlier summary judgment briefing, the only

23  "reduction" came from a licensee granting Motorola cross-licenses to its own patents—

24  Motorola insisted it always got "overall value" equivalent to 2.25%.  (*See* Dkt. No. 284,

25  Microsoft's Reply in Supp. of its Mot. for Partial Summary J. at 10–11.)

26

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    Motorola's new position is that 2.25% was an acceptable opening offer, because

2    Motorola lacked all of the information that came out at trial (which would have demonstrated

3    that its offer was outrageously excessive) and Motorola might have later agreed to a RAND

4    royalty.  If Motorola's witnesses take the position that its 2.25% demands can be defended

5    based on Motorola's claimed lack of information, Microsoft should be permitted to impeach

6    that testimony with Motorola's own prior arguments and expert and fact testimony, which

7    demonstrates that even with all of that information Motorola continued to claim that 2.25%

8    was a RAND royalty.  Those prior statements and positions are also critical to rebutting

9    Motorola's likely argument that it might have reached a RAND royalty if only Microsoft had

10   negotiated and exchanged information with Motorola.

11    As Microsoft has explained in its Good Faith and Summary Judgment briefing,

12   establishing that Motorola's conduct breached the duty of good faith and fair dealing does *not*

13   require inquiry into Motorola's subjective intent.  (*See* Dkt. No. 715 at 5–11; Dkt. No. 729 at

14   2–3.)  But if the Court were to apply the standard Motorola urges, and if the jury will hear

15   evidence on Motorola's subjective good faith or lack thereof, then statements and positions

16   taken by Motorola may provide some of the best evidence of Motorola's intent.  Motorola's

17   motion *in limine* position that its own statements are irrelevant is irreconcilable with its

18   summary judgment argument that its subjective view must be considered.  (*See* Dkt. No. 752 at

19   9–16.)

20 **III.   THE COURT SHOULD PERMIT MICROSOFT TO REFERENCE**
21 **MOTOROLA'S CLAIMS OF PRIVILEGE AS NECESSARY TO REBUT MOTOROLA'S CONTENTIONS AND IMPEACH ITS WITNESSES.**

22    Motorola's third motion *in limine* concerns its blocking of discovery into the basis for

23   the demands in its October 2010 letters, and seeks to bar Microsoft from referring to its

24   assertions of privilege at trial.  The Court should deny Motorola's motion.  As a preliminary

25   matter, the Court's ruling on Microsoft's first motion *in limine* will substantially dispose of this

26

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTIONS IN LIMINE - 11

issue.  If Microsoft's motion is granted, none of Motorola's witnesses will offer any testimony

concerning the analytical basis for its demands.  Further, Motorola's suggestions that Microsoft

"does not contest the assertion of privilege" or that Microsoft concedes these assertions are

"valid," MIL 15, are misleading and irrelevant.  Microsoft has no basis to challenge the

privilege assertions made by Dailey and Motorola's other witnesses, because it has no

information about what Motorola and its counsel actually discussed.  Microsoft certainly has

never conceded that the assertions are valid.

### A. Motorola's Own Standard For Evaluating Good Faith Demands Consideration Of Evidence Motorola Blocked Microsoft From Discovering.

Motorola's arguments in opposition to Microsoft's summary judgment motion establish

the serious problem lurking in Motorola's privilege objections.  Motorola's counsel told the

Court that the inquiry on good faith

> is a contextual inquiry that looks to both the subject of the intent of Motorola
> and the objective commercial reasonableness of Motorola's conduct, and looks
> to all the facts and circumstances surrounding the alleged actions.

Ex. 4, 7/31/2013 Hearing Tr. 18:14–18.  As Microsoft argued in its Good Faith and Summary

Judgment briefing, that is an inaccurate statement of the duty of good faith and fair dealing,

which does not require proving subjective bad faith.  But even if Washington law *required*

examination of evidence of Motorola's subjective, analytical basis for its demands, Motorola's

assertions of privilege have made it impossible for the jury to do its job, and have blocked

Microsoft from evidence relevant to testing Motorola's claimed good faith.  Motorola's

counsel also told the Court, "you want to keep the jury focused on what was in Motorola's

knowledge base [and] intent . . . at the time, back in October of 2010," Ex. 4, 7/31/2013

Hearing Tr. 32:5–8, but the jury will have nothing to focus on, because Microsoft has been

blocked from uncovering that information.  Motorola should not now have free rein to write a

new record at trial.

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    It is not a defense to the breach of the duty of good faith and fair dealing for Motorola

2    to state that it has a good-faith basis for the letters Dailey authored in 2010, but that the basis is

3    privileged, and Microsoft cannot inquire into it.  As the Court heard counsel for Motorola

4    explain, its presentation to the jury will convey the suggestion that Motorola somehow acted in

5    good faith when it sent its October 2010 letters out of ignorance and haste:

6         Oh, gosh, I don't know what to ask for this.  I've never done it before.  A zillion
          dollars.  Just tell me what you think you should pay.  I'm asking for a zillion.
7         Give me an idea of what you think you should pay.

8    Ex. 1, 7/30/2013 Hearing Tr. 84:3–6.

9         [O]nce Microsoft invited us to put our patents on the table, and we did so in
          haste without engaging in the necessarily detailed inquiries that Your Honor
10        engaged in over a long period of discovery and bench trial, in which the first
          phase of the case was held, it was done in haste. Microsoft asked us to put our
11        patents on the table, and we did.

12   Ex. 4, 7/31/2013 Hearing Tr. 30:5–11.  Did Motorola really not know what to ask for these

13   patents, even though it had commissioned the InteCap study and approved the H.264 pool

     rates?  Did Motorola really not engage in *any* detailed inquires into the appropriate RAND
14
     royalty for its own patents?  Microsoft sought answers to these questions from, among others,
15
     Dailey, who was clearly making the decisions behind the letters—asking him his rationale for
16
     his own actions, and the analytical basis for the demands he authored—and was refused an
17
     answer.[5]
18

19

20   _____
     [5] Motorola's blocking of discovery into what is a key factual inquiry for trial (even based on its framing of the
21   law) stands in contrast to the privilege disputes Motorola has raised in connection with Microsoft's witnesses,
     because Microsoft's claims of privilege have *not* prevented Motorola from obtaining the information it sought.
22   For example, prior to the November trial, Motorola moved to preclude Microsoft from offering evidence
     concerning Microsoft's internal response to Motorola's October 2010 demand letters, based in part on privilege
23   objections arising in the 2012 deposition of Microsoft's Horacio Gutierrez.  The Court examined the testimony,
     and found that Motorola had obtained the discovery it sought:
24        Mr. Gutierrez provided, properly provided information regarding Microsoft's response to
          Motorola's offer letters.  And I read the deposition transcript, and I frankly found Motorola's
25        motion not to be well taken.  So, as he provided that information, I think the relief that Motorola
          now seeks is simply too broad.
26   Ex. 8, Oct. 29, 2012 Pretrial Conference Tr. 30:10–15.

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1    Motorola's brief repeatedly suggests that it expects Microsoft "to ask the jury to draw

2   negative inferences," MIL at 14, or that "Microsoft improperly asked the Court to make an

3   adverse inference against Motorola," *id.* at 17.  Motorola never explains what "inferences" it is

4   talking about.  In its summary judgment brief, Microsoft informed the Court about the

5   privilege assertions to explain why any Motorola opposition on the grounds that it would prove

6   up the analytical basis for its demands at trial would be futile—Motorola had already blocked

7   discovery.  Microsoft did not ask the Court to *infer* that Microsoft's supposition (that Motorola

8   intentionally made demands it knew were certain to be rejected) was correct; rather, Microsoft

9   explained that it had been blocked from obtaining the evidence that would prove or disprove it.

10   Motorola's prejudice argument presumes Microsoft plans to attempt to solicit privilege

11   objections at trial.  Microsoft has no intention of doing so, but Motorola offers no proposal as

12   to how the parties are supposed to proceed given Motorola's privilege assertions.  Motorola

13   argues for an (incorrect) legal standard that would require Microsoft to address Motorola's

14   subjective intent in forming its demands—the very question Motorola's counsel instructed

15   Dailey, the key actor, not to answer.  Motorola's contention that its assertions of privilege are

16   of "little, if any, relevance to any issue in this case," MIL at 18, is irreconcilable with even its

17   own proposal of what the jury should consider.

### B.  Microsoft Must Be Permitted To Cross-Examine Motorola's Experts Concerning Relevant Information They Failed To Consider.

   Motorola's motion raises a more complicated problem as to Motorola's experts.

20   Motorola seeks to bar Microsoft from bringing out before the jury the fact that Microsoft was

21   blocked from discovery into certain areas, including the basis for the demands in its October

22   2010 letters.  Motorola's expert Gregory Leonard opines repeatedly about the reasons why

23   Motorola did or did not do particular things in the lead-up to the October 2010 letters.  But

24   Leonard did not inquire into what Motorola claims are privileged communications concerning

25   the basis for those demands, and therefore Leonard cannot possibly know if his suppositions

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTIONS IN LIMINE - 14

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

1   about Motorola's conduct are correct. Motorola should not be allowed to present this type of

2   self-serving and incomplete testimony. And if Motorola is permitted to offer such testimony

3   from Leonard, the Court should permit Microsoft to bring out on cross-examination that

4   Leonard's conclusions are unfounded because they are based on incomplete information.

5           For example, Leonard opines that when it sent the letters, "Motorola intended and

6   expected to have further and continued discussions with Microsoft." Ex. 5, Leonard Rpt. ¶ 73;

7   *see also* Ex. 6, Leonard Dep. 28:11–12 (discussing "this opening offer, which would be fully

8   expected to be the prelude to a -- a continued negotiation"). But another possibility is that

9   Motorola deliberately set the royalty so high to guarantee it would be refused as a setup for

10  litigation. Dailey told Leonard he had conferred with lawyers before sending the letters, but

11  Leonard did not ask Dailey whether this strategy was discussed with the lawyers and admitted

12  he had reached his good-faith conclusion without knowing that information:

13          Q. Did he tell you that he -- did he know that he had conversations with lawyers
            before the offer letters were sent?
14
            A. I believe so, yes.
15
            Q. Did you ask him what the strategy was that was being devised in those
16          conversations with the lawyers?

17          A. No.

            Q. Do you think that might have been pertinent to the question of whether he
18          was acting in good faith?

19          A. Again, I've got to go on the evidence that I have in—in front of me. And
            that's what I have.
20
    Ex. 6 at 29:3–13. *See also id.* at 29:14–30:23. Leonard did not ask Dailey if Motorola was
21
    planning a lawsuit on its SEPs at the time it sent its letters. *Id.* at 52:10–53:11. Leonard did
22
    not ask Dailey how low a royalty it was willing to accept in October 2010. *Id.* at 98:3–14.
23
    Leonard did not ask Dailey if he thought 2.25% was a reasonable royalty for Motorola's H.264
24
    and 802.11 SEPs. *Id.* at 152:23–154:16. Lacking all of this information, and having failed to
25
    inquire into it, how could Leonard possibly know that Motorola acted in good faith?
26

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTIONS IN LIMINE - 15

1          Microsoft does not intend to introduce Motorola's privilege log into evidence, but

2    reserves all rights to use it on cross-examination if necessary.

3          DATED this 5th day of August, 2013.

4                      CALFO HARRIGAN LEYH & EAKES LLP

5

6                      By    s/Arthur W. Harrigan, Jr.
                             Arthur W. Harrigan, Jr., WSBA #1751

7

8                      By    s/Christopher Wion
                             Christopher Wion, WSBA #33207

9                      By    s/Shane P. Cramer

10                           Shane P. Cramer, WSBA #35099
                             999 Third Avenue, Suite 4400

11                           Seattle, WA  98104
                             Phone:  206-623-1700

12                           arthurh@calfoharrigan.com
                             chrisw@calfoharrigan.com

13                           shanec@calfoharrigan.com

14

15                     By    s/T. Andrew Culbert
                             T. Andrew Culbert

16                     By    s/David E. Killough

17                           David E. Killough

18                     MICROSOFT CORPORATION
                       1 Microsoft Way

19                     Redmond, WA  98052
                       Phone:  425-882-8080

20                     Fax:  425-869-1327

21                     David T. Pritikin

22                     Richard A. Cederoth
                       Constantine L. Trela, Jr.

23                     William H. Baumgartner, Jr.
                       Ellen S. Robbins

24                     Douglas I. Lewis
                       David C. Giardina

25                     John W. McBride
                       Nathaniel C. Love

26

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTIONS IN LIMINE - 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL  60603
Phone:  312-853-7000
Fax:  312-853-7036

Carter G. Phillips
Brian R. Nester

SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC  20005
Telephone:  202-736-8000
Fax:  202-736-8711

Counsel for Microsoft Corp.

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTIONS IN LIMINE - 17

# CERTIFICATE OF SERVICE

I, Florine Fujita, swear under penalty of perjury under the laws of the State of Washington to the following:

1.     I am over the age of 21 and not a party to this action.

2.     On the 5th day of August, 2013, I caused the preceding document to be served on counsel of record in the following manner:

**<u>Attorneys for Motorola Solutions, Inc., and Motorola Mobility, Inc.:</u>**

| | |
|---|---|
| Ralph Palumbo, WSBA #04751 | _____ Messenger |
| Philip S. McCune, WSBA #21081 | _____ US Mail |
| Summit Law Group | _____ Facsimile |
| 315 Fifth Ave. South, Suite 1000 | |
| Seattle, WA  98104-2682 | _X_ ECF |
| Telephone:  206-676-7000 | |
| Email:  Summit1823@summitlaw.com | |

| | |
|---|---|
| Steven Pepe (*pro hac vice*) | _____ Messenger |
| Jesse J. Jenner (*pro hac vice*) | _____ US Mail |
| Ropes & Gray LLP | _____ Facsimile |
| 1211 Avenue of the Americas | _X_ ECF |
| New York, NY  10036-8704 | |
| Telephone:  (212) 596-9046 | |
| Email:  steven.pepe@ropesgray.com | |
| Email:  jesse.jenner@ropesgray.com | |

| | |
|---|---|
| Norman H. Beamer (*pro hac vice*) | _____ Messenger |
| Ropes & Gray LLP | _____ US Mail |
| 1900 University Avenue, 6th Floor | _____ Facsimile |
| East Palo Alto, CA  94303-2284 | _X_ ECF |
| Telephone:  (650) 617-4030 | |
| Email:  norman.beamer@ropesgray.com | |

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTIONS IN LIMINE - 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Paul M. Schoenhard (*pro hac vice*)
Ropes & Gray LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC  20005-3948
Telephone:  (202) 508-4693
Email: Paul.schoenhard@ropesgray.com

_____  Messenger
_____  US Mail
_____  Facsimile
  X\_\_\_\_  ECF

Andrea Pallios Roberts (*pro hac vice*)
Brian C. Cannon (*pro hac vice*)
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone:  (650) 801-5000
Email: andreaproberts@quinnemanuel.com
Email: briancannon@quinnemanuel.com

_____  Messenger
_____  US Mail
_____  Facsimile
  X\_\_\_\_  ECF

Kathleen M. Sullivan (*pro hac vice*)
David Elihu (*pro hac vice*)
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000
Email: kathleensullivan@quinnemanuel.com

_____  Messenger
_____  US Mail
_____  Facsimile
  X\_\_\_\_  ECF

William Price (*pro hac vice*)
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figuera St., 10th Floor
Los Angeles, CA 90017
Telephone:  (212) 443-3000
Email: williamprice@quinnemanuel.com
MicrosoftvMotoBreachofRANDCase@quinnemanuel.com

_____  Messenger
_____  US Mail
_____  Facsimile
  X\_\_\_\_  ECF

DATED this 5th day of August, 2013.

*/s/ Florine Fujita*
FLORINE FUJITA

MICROSOFT'S OPPOSITION TO DEFENDANTS'
MOTIONS IN LIMINE - 19

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES, LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717