# EXHIBIT 1

1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

MICROSOFT CORPORATION,                )
                                      )
                Plaintiff,            ) CASE NO. C10-1823JLR
                                      )
v.                                    ) SEATTLE, WASHINGTON
                                      ) July 30, 2013
MOTOROLA, INC., et al.,               )
                                      ) *Daubert* hearing
                Defendant.            )
                                      )

VERBATIM REPORT OF PROCEEDINGS
BEFORE THE HONORABLE JAMES L. ROBART
UNITED STATES DISTRICT JUDGE

APPEARANCES:

  For the Plaintiff:      ARTHUR HARRIGAN
                          RICHARD CEDEROTH
                          ANDREW CULBERT
                          DAVID PRITIKIN
                          CHRISTOPHER WION


  For the Defendant:      KATHLEEN SULLIVAN
                          WILLIAM PRICE
                          PHILIP McCUNE
                          RALPH PALUMBO (by telephone)


  Reported by:            NANCY L. BAUER, CCR, RPR
                          Federal Court Reporter
                          700 Stewart Street, Suite 17205
                          Seattle, WA 98101
                          (206) 370-8506
                          nancy_bauer@wawd.uscourts.gov

easier than to try to formulate a way of implementing what the court wants to do once we understand, based upon the motion in limine, what the court thinks the jury should hear.

THE COURT: Well, I will get you that, but let me give you some preliminary thoughts.

This notion that what happened before didn't happen isn't going to fly. I've said that now twice, and I'll say it again, so let's listen this time.

We had a great deal of time and effort that went into a trial and the production of an order. This notion that we're going to start over again that I keep hearing about is not going to work. The jury is not going to have pretended to it that the court did not issue an order.

Now, the portions of it that come in and the form that it comes in, that's up for consideration. But I don't -- I have not read your motion, but, you know, this is the third time now that I've listened to Motorola announce, you know, whatever happened before didn't count and we get to start over again. And, frankly, reading some of the Holleman observations -- you know, for example, there are similarly no RAND provisions in SPO policies requiring that an opening offer be of a certain rate, or in relation to the final agreed-upon RAND license rates.

Yes, it does not say in my order in regards to SPO policies, but it says that as a matter of law, which your

1 counsel agreed to, there is a relation to the RAND rate.
2 　　So, you know, Mr. Price, I don't know where this is coming
3 from, but you're not going to get there.
4 　　　　MR. PRICE: Let me respond very briefly to give you
5 some assurance, and I'll respond to what's in Mr. Holleman's
6 report. I can do it now or later.
7 　　With respect to the motion in limine, obviously, we take
8 the position, which the court disagrees with, on pretending
9 that the first part didn't happen. But -- but conceding
10 that -- or not conceding that, but assuming that part of the
11 orders will get to the jury -- and I've certainly heard the
12 court time and again say the jury will be told what the court
13 determined was the RAND range and RAND rate, and I've seen
14 you in writing and I've heard you say that the jury is
15 entitled to hear that in order to make a determination as to
16 whether or not Motorola acted in good faith.
17 　　So even given that, then the question is, how much of this
18 detail would go to the jury? That is, the court, in effect,
19 did the hypothetical negotiation. Now, Motorola's position
20 is -- the key question here is good faith. It's not -- you
21 know, Motorola is not required to have that conversation in
22 its head at the time of the opening offer. You know, the
23 question is, was Motorola, in good faith, willing to
24 negotiate for a FRAND rate? And if the parties disagreed,
25 perhaps the court would have to determine what that FRAND

1  rate was.

2  So given that position, you know, the question is, you
3  know, how much of the court's order -- or the court goes
4  through this negotiation and comes up with a rate, does the
5  jury have to hear, or even should they hear, because our, you
6  know, our position is that -- that internal dialogue, which
7  the parties would be having or would actually have in
8  negotiation, is irrelevant to the question as to how Motorola
9  acted when it made its offers.

10  The question at that time was whether Motorola acted in
11  good faith, whether they were trying to impose a holdup, you
12  know, whether or not they, in effect, had the intent not to
13  grant, you know, a license under FRAND. And so I understand,
14  you know, Your Honor wanting to tell the jury about, you
15  know, what the FRAND rate was that was determined and the
16  range that we, on the record, have a disagreement as to that.
17  But if we get past that, the question is, what else of this
18  200-page order comes in?

19  THE COURT: I agree with you, sir, that there are
20  large portions of it that the jury is not going to need to
21  see, but, you know, let's get it on the table right now.
22  Starting two and a half years ago, your predecessor agreed
23  with the fact that in order to determine if Motorola breached
24  its obligation of good faith, a jury would need to know a
25  RAND rate, and the only way we were going to get there was to

1  have the court set it.
2      So I'll read your motion, but, you know, this is just
3  backtracking, and it's, frankly, very frustrating to me.
4  We're trying to move forward, and you're putting forward what
5  I consider to be obstacles.
6      There are other things in there.  There are some holdings
7  as a matter of law, one of which you like, and therefore you
8  quote frequently, which is your initial offer doesn't have to
9  be RAND.  You apparently like that.  You mention it often.
10 It's all over your briefing here.  I'm not going to let you
11 pick and choose over, oh, we like that one so it gets to come
12 in, but, oh, nothing else does.
13     So I understand what you're doing here and I understand
14 why you're doing it, but let's recognize that you have a very
15 limited time for trial, and we are not going to relitigate
16 issues that we have already decided.
17     So I think we understand each other.  I don't really
18 disagree.  But I want to make it very clear that, you know,
19 when I see this sort of thing, I'm intending to call both
20 sides out, because otherwise this case will go on forever,
21 and as fond as I am of all of you, I'm happy to have you out
22 of this courtroom at some point before I retire.
23         MR. PRICE:  I'm glad you developed a fondness in such
24 a short time for us.  I'll be happy to look at the motion.
25 But, obviously, on the record, we're taking a position as to

1  internally he -- he wouldn't want to say -- he won't say that
2  there is no obligation to give a FRAND license if the
3  patentee says, "I will accept that licensee." He will not
4  testify to that.
5      But what he will testify to -- because that would be
6  inconsistent with the order. But what he will testify to is
7  that part of the commitment is that you negotiate in good
8  faith. Now -- and that covers sort of what we have here on
9  the first page. And I actually don't think that's in
10 dispute. I think that even Microsoft would agree that that's
11 one of the obligations, you know, certainly that the SEP
12 holder has, which is they're supposed to negotiate in good
13 faith. But that's the question, you know, are we acting in
14 good faith? And he'll testify that that's how you evaluate
15 whether or not the opening offer was appropriate, was it in
16 good faith?
17     And I'll give Your Honor an example. Your Honor has said
18 that an unreasonable offer, you know, is inappropriate. I
19 think that if --
20         THE COURT: I think what I said was an initial offer
21 could be so out of proportion to RAND that it would
22 constitute bad faith.
23         MR. PRICE: Thank you for clarifying that. And I
24 think -- I think that's important, because I think what you
25 were saying is that a jury could conclude if it's totally

1  outrageous that there was bad faith.
2      However, you could imagine a negotiation where the
3  patentholder said, "Oh, gosh, I don't know what to ask for
4  this. I've never done it before. A zillion dollars. Just
5  tell me what you think you should pay." I'm asking for a
6  zillion. "Give me an idea of what you think you should pay."
7      And if that person, in good faith, is trying to negotiate
8  in good faith, but is trying to seek information from the
9  other side, then I don't know if you conclude that, you know,
10 saying that outrageous number is, by itself, bad faith. The
11 question is, what is evidence of good faith, given all the
12 circumstances? And I believe that's what Mr. Holleman would
13 testify to on that issue.
14          THE COURT: Well, let's take page 1, paragraph 59 as
15 an example. You struck that. Is that correct?
16          MR. PRICE: Yes.
17          THE COURT: Okay. Then that's the one I want to
18 concentrate on, because it will no longer be in the case.
19      When you insert the words "simply intended," I would use
20 "simply intended" to be contrary to my order in this matter.
21          MR. PRICE: And I understand.
22          THE COURT: And, you know, I don't want to ask you if
23 you agree or disagree with that. I'm glad you struck it.
24 But that's the kind of thing that I need to prevent you from
25 doing, because it's going to waste everybody's time, and all

1  range are, you have ruled that has to be taken into account
2  in the opening offer.  I don't think you've ruled that.  If
3  you have, maybe we can avoid part of a trial, because I don't
4  think we're going to be putting on any witnesses for Motorola
5  saying we did a royalty-stacking analysis before we made the
6  opening offer.  They're going to testify that they had to get
7  an offer out, they didn't have time to analyze it, you know,
8  specifically, they, in good faith, wanted to enter into
9  negotiations, they went back to standard rates they asked for
10 in the past, and they expected conversations to continue.
11             THE COURT:  Well, without offering you an advisory
12 opinion, what I would say is, I did not say in the order that
13 the patentholder was required to consider royalty stacking or
14 patent pools in formulating that opening offer.  What I did
15 say is you need to have it in relation to the RAND rate, and
16 the RAND rate, I have held, needs to consider royalty
17 stacking and patent pools, if they are available.  So it's a
18 subtle distinction, but it is a distinction.
19             MR. PRICE:  And it's not -- here's the reason I think
20 it's not -- it won't be as subtle when it's presented to the
21 jury.
22      Your Honor is obviously going to tell them the RAND rate
23 which the court came up with, and the RAND range.  We have
24 our other expert, Mr. Leonard, who will testify that, yeah,
25 royalty stacking comes up in these negotiations.  You would

1  rate, according to the court, includes royalty stacking and
2  potential patent pools.
3      I would suggest to you that we're getting all wound up
4  about some language as opposed to the real issue here. But
5  if you're forcing me today to say is that an accurate or not
6  an accurate statement, I'd say it's accurate and it's also
7  irrelevant.
8      MR. PRICE: Well, I agree that it's irrelevant if --
9  if Microsoft would have taken the position, you have to take
10  that into account as a matter of policy, as a matter of law
11  before you make the offer.
12      THE COURT: There's a difference between policy and
13  law, and I've walked you through this. I'll walk you through
14  it one more time. Bad faith, RAND. RAND is composed of some
15  *Georgia Pacific* factors and modified *Georgia Pacific* factors,
16  two of which are royalty stacking and patent pools. I don't
17  know how to be clearer than that, sir.
18      MR. PRICE: And you are clear, Your Honor. What I
19  don't think you're saying, just to make sure, is -- because,
20  again, I said we're not going to present evidence on this --
21  that you must, in that opening offer, have done all that in
22  your head and considered that, because we're not going to be
23  presenting testimony that we did.
24      THE COURT: I don't think you have to present
25  testimony that you did, but you recognize the peril of if

# C E R T I F I C A T E

I, Nancy L. Bauer, CCR, RPR, Court Reporter for the United States District Court in the Western District of Washington at Seattle, do hereby certify that I was present in court during the foregoing matter and reported said proceedings stenographically.

I further certify that thereafter, I have caused said stenographic notes to be transcribed under my direction and that the foregoing pages are a true and accurate transcription to the best of my ability.

Dated this 1st day of August 2013.

/S/ Nancy L. Bauer

Nancy L. Bauer, CCR, RPR
Official Court Reporter