1

2

3

4

5

The Honorable James L. Robart

6

7

8

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

9

MICROSOFT CORPORATION, a Washington corporation,

10

Plaintiff,

11

v.

12

MOTOROLA, INC., and MOTOROLA MOBILITY LLC, and GENERAL INSTRUMENT CORPORATION,

13

14

15

Defendants.

CASE NO. C10-1823-JLR

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS IN LIMINE

**NOTED ON MOTION CALENDAR:**
**Friday, August 9, 2013**

**REDACTED**

**ORAL ARGUMENT REQUESTED**

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE
CASE NO. C10-1823-JLR

# TABLE OF CONTENTS

**Page**

I.   THE COURT SHOULD DENY AS OVERBROAD MICROSOFT'S REQUEST
TO EXCLUDE EVIDENCE CONCERNING PRIVILEGED INFORMATION .................. 1

    A.   Motorola Did Provide Discovery Regarding the Rationale For Its October
2010 Offers ............................................................................................................ 2

    B.   Motorola Appropriately Claimed Privilege Over Its Legal Analysis ...................... 5

    C.   Motorola's Privilege Assertions Differ From Microsoft's Attempts to Block
Discovery About Its Decision To Relocate Its EMEA Distribution Center ............. 6

    D.   Microsoft's Motion As To The MPEG-LA License Is Moot. ................................... 7

II.   THE COURT SHOULD DENY MICROSOFT'S REQUEST TO EXCLUDE
EVIDENCE CONCERNING MICROSOFT'S COMMITMENTS UNDER THE
SD CARD ASSOCIATION LICENSING POLICIES AND MICROSOFT'S
INTEROPERABILITY PRINCIPLES ........................................................................ 7

    A.   Microsoft's Interpretation Of Its Own RAND Commitments As Permitting
It To Seek Exclusionary Orders Is Relevant To Motorola's Good Faith ................. 8

    B.   Evidence Concerning Microsoft's Own RAND Commitments Will Not
Prejudice Microsoft Nor Mislead the Jury ............................................................. 10

III.   THE COURT SHOULD DENY MICROSOFT'S REQUEST FOR A BROAD
PROSPECTIVE RULING PRECLUDING EVIDENCE OF SETTLEMENT
COMMUNICATIONS ............................................................................................. 11

    A.   The Court Already Admitted The Parties' Comments On The Litigation In
the November 2012 Trial ........................................................................................ 12

    B.   Comments On the Litigation Are Not Covered By Rule 408 or The NDA ............ 13

    C.   The Court Should Not Issue a Broad Prospective Ruling ....................................... 15

    D.   If the Court Excludes Some Communications, It Should Exclude All .................... 16

CERTIFICATE OF SERVICE ............................................................................................. 19

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - i
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1

TABLE OF AUTHORITIES

2                                                                                       **Page**

3                                           **Cases**

4  *Abbott Point of Care, Inc. v. Epocal, Inc.*,
5     868 F. Supp. 2d 1310 (N.D. Ala. 2012) ............................................................ 9

*Adler v. Fed. Republic of Nigeria*,
6     219 F.3d 869 (9th Cir. 2000) ..................................................................... 9

7  *Apple Inc. v. Motorola Mobility Inc.*,
   No. 3:11-cv-00178-bbc, 2012 WL 5416941 (W.D. Wis. Oct. 19, 2012) ................................ 6
8
*Aull v. Cavalcade Pension Plan*,
9     185 F.R.D. 618 (D. Colo. 1998) .................................................................. 1

10  *Baden Sport Inc. v. Molten*,
   No. C06-201MJP, 2007 WL 1526346 (W.D. Wash. May 23, 2007) ................................. 5
11
*Century Indem. Co. v. Aero-Motive Co.*,
12     336 F. Supp. 2d 739 (W.D. Mich. 2004) ......................................................... 15

13  *Civic Fed. Sav. Bank v. Hanover Ins. Co.*,
   No. 91 C 8286, 1992 WL 188409 (N.D. Ill. July 29, 1992) ........................................ 15
14
*Gelinas v. Metro. Prop. & Liab. Ins. Co.*,
15     131 N.H. 154 (1988) ............................................................................ 14

16  *Intellectual Ventures I LLC v. Altera Corp.*,
   C.A. No. 10-1065-LPS (D. Del. July 25, 2013) (citing *In re Ford Motor Co.*, 110 F.3d 954,
17     966 (3d Cir. 1997)) .............................................................................. 5

18  *Jacobs v. Universal Dev. Corp.*,
   53 Cal. App. 4th 120 (1997) ..................................................................... 9
19
*Microsoft Corp. v. United States*,
20     Case No. 1:13-cv-01063-RWR (D.D.C.) .......................................................... 9

21  *Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*,
   324 U.S. 806 (1945) ............................................................................. 9
22
*Unilogic, Inc. v. Burroughs Corp.*,
23     10 Cal. App. 4th 612 (1992) ..................................................................... 9

24
                                         **Statutes**
25
FED. R. EVID. 401 ................................................................................... 8
26
FED. R. EVID. 402 ................................................................................... 8

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - ii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   FED. R. EVID. 403.................................................................................................10

2   FED. R. EVID. 408.........................................................................12, 13, 14, 15, 16, 17

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - iii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

## I.   THE COURT SHOULD DENY AS OVERBROAD MICROSOFT'S REQUEST TO EXCLUDE EVIDENCE CONCERNING PRIVILEGED INFORMATION

Microsoft's Motion in Limine No. 1 overreaches in seeking to preclude Motorola from offering *any* evidence or argument explaining the rationale for sending the October 2010 letters on which Microsoft bases its breach of contract claim.  Microsoft's assertion undermines the whole point of having a trial on Motorola's compliance with the duty of good faith, which both parties agree is necessarily a fact-intensive analysis.  Contrary to Microsoft's assertion (Mot. 1), Motorola did *not* block all discovery on this issue, but merely made appropriate objections to privileged material, including analytical work and claim charts prepared by lawyers.  And contrary to Microsoft's suggestion that it has been prejudiced by those privilege assertions, Microsoft has in fact obtained extensive discovery on the unprivileged *business* context of Motorola's response— including Microsoft's prior lawsuits, the time pressure Motorola faced in responding, the parties' business relationship and prior negotiations, and Motorola's extensive licensing program that used 2.25% as the default starting point for negotiations.  These critical facts should not be shielded from the jury in an unjustified attempt to suggest that the October 2010 letters arrived out of the blue.  By taking focused, proper and unchallenged privilege objections, Motorola has done nothing improper, and Microsoft's motion on this issue should be denied.[1]

Microsoft further errs in equating its privilege objections with Motorola's.  Microsoft alleges that it relocated its German distribution center because of the threat of an injunction that it learned about from counsel.  Motorola has properly questioned the privilege assertions regarding those allegations as the use of privilege as both sword and shield.  Motorola's privilege objections, by contrast, are triggered solely by Microsoft's questions directed to the "analytical basis" or valuation process for patents and portfolios.   The situations could not be more different. Motorola does not base its explanation for how it arrived at the 2.25% royalty rate in its October

---

[1]   Indeed, the context of the 2010 letters was already presented at the first trial and in summary judgment papers and Microsoft failed to raise or prevail on any issue of waiver. *See Aull v. Cavalcade Pension Plan*, 185 F.R.D. 618, 630 (D. Colo. 1998) (noting that it is plaintiff's burden to establish bad faith, and that deposition testimony indicating that advice of counsel was received "does not establish an at issue waiver as to this advice").

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS IN LIMINE - 1
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1    2010 letters on the legal analysis or advice of counsel; that offer was based on its historic licensing

2    rate disclosed in its prior licenses themselves.  Motorola provided Microsoft full discovery into its

3    prior licenses and licensing program.  By contrast, Microsoft is relying on privilege to shield

4    information with respect to its decision to relocate the German distribution center as the supposed

5    proximate result of the threats of injunctions in Germany.  Motorola has timely challenged that

6    assertion of privilege, has brought two motions, obtained a court order and a finding of waiver,

7    and now has filed a motion to enforce the order.[2]

8         With respect to the MPEG LA issue, Microsoft asked a third-party fact witness (a Google

9    lawyer) at deposition to interpret contracts and provide work product testimony.  Google properly

10   objected to those questions.  To the extent that Google's contractual obligations are before the

11   Court (which they are not because Google is not a party), interpretation of Google's MPEG LA

12   license is a question of law.

13   **A.    <u>Motorola Did Provide Discovery Regarding the Rationale For Its October</u>
       <u>2010 Offers.</u>**

14

15        The premise of Microsoft's motion—that Motorola blocked all discovery—is false.  To the

16   contrary, Microsoft took and obtained discovery on how and why Motorola sent the October 21

17   and October 29, 2010 offer letters to Microsoft.  Motorola's witnesses explained that, prior to the

18   letters being sent, Motorola was sued by Microsoft and Microsoft asked Motorola to "put its

19   patents on the table." (Ex. A, 99:18-100:23; 116:24-118:6) ("We'd been sued and Microsoft

20   asked us to put our patents on the table.  And that's what we did.")[3]  Motorola's smartphone

21   products were the subject of ITC proceedings; Motorola had to respond to Microsoft's request

22   quickly and therefore was under time pressure to put together an offer.  (*Id.*) ("[W]e didn't have

23

24   _____

25   [2]  As this Court is aware, at least one Microsoft witness testified that the legal department actually made the
     decision to move. (*See* Dkt. 702 at 4.)

26   [3]  Exhibits are attached to the Declaration of Andrea Pallios Roberts in Support of Defendants' Opposition to
     Microsoft's Motions in Limine, filed concurrently with this motion.

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS          SUMMIT LAW GROUP PLLC
IN LIMINE - 2                                          315 FIFTH AVENUE SOUTH, SUITE 1000
CASE NO. C10-1823-JLR                                  SEATTLE, WASHINGTON 98104-2682
                                                       Telephone:  (206) 676-7000
                                                       Fax:  (206) 676-7001

any time.")[4]  Motorola proposed to license to Microsoft its 802.11 and H.264 SEP portfolios at a rate of 2.25%, which was its standard opening offer.  (*Id.*, 99:18-100:23; 116:24-118:6.)  Motorola expected that the parties would negotiate from there.  (*Id.*) ("So here it was to get the discussion started.  It was to lay out our standard rate and to make sure that it was understood there would be a grant-back.  This is a very high level one page, three paragraph letter intended to get discussions started.  That was my expectation."); (*id.*, 20:9-18, 57:8-58:19 (explaining that the 2.25% figure "has been our standard offering rate as long as I've been at Motorola")).  That standard offering rate was determined "through licensing bilateral arrangements over 20-plus years."  (Ex. C, 25:25-26:7, 25:9-16; Ex. D, 46:18-24 ("That was the rate that we had set through our licensing history.").)[5]  Thus, Microsoft is incorrect in claiming that Motorola "blocked" discovery on the rationale behind Motorola's offers.

The same is true of Microsoft's argument (Mot. 5.) that Motorola should be precluded from arguing that it lacked information at the time of the October letters that "would have revealed that its demands were excessive."  To the extent that Microsoft actually inquired about the information that Microsoft contends Motorola should have considered, Motorola *did* provide discovery.[6]  For example, Microsoft argued in its summary judgment papers that the Court had found that Motorola's prior licensing agreements were not comparable.  (Dkt. 729 at 6.)  That finding, of course, was not available to Motorola in October 2010.  But, to the extent that Microsoft questioned Motorola witnesses about those agreements, Motorola provided discovery.  (Ex. F, 138:12-141:2 (███████████████████████████); Ex. C, 13:9-17

---

[4]  This testimony is corroborated by the testimony of Microsoft's Rule 30(b)(6) witness, Horacio Gutierrez.  (Ex. B, 66:13-67:1, 84:14-85:22.)

[5]  Motorola witnesses also testified that the legal department was one of several divisions at Motorola involved in formulating licensing offers, and that business considerations could influence the license rate.  (*See, e.g.* Ex. E, 12:18-23 ("I would get legal approval *and finance approval* to sign any deal."); Ex. C,  19:3-20:17 (identifying non-attorneys who provided information); Ex. D, 53:23-54:19) (identifying non-privileged factors that could influence the royalty rate.).)

[6]  It is worth noting that Microsoft ended the deposition of Mr. Dailey, the Motorola employee who actually sent the offer letters at issue, at 2:50 p.m.  To the extent that Microsoft did not obtain all of the discovery that it wanted, it could be because it chose to not take a full day of deposition.

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 3
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  (████████████████████████); *see also* Ex. A, 118:11-129:12.)  Motorola also

2  produced to Microsoft Motorola's licenses covering the standards at issue, as well as a chart

3  detailing the terms of those licenses.  (Ex. G.)

4       Similarly, Microsoft argued that a ████████ study suggests that Motorola's offers were

5  not made in good faith.  (Dkt. 733 at 16.)  Microsoft asked Mr. Dailey about that study, but he was

6  not familiar with the analysis.  (Ex. C, 67:14-20.)  Mr. Blasius (Ex. D, 109:2-8) and Mr. Taylor

7  (Ex. A, 33:23-25, 36:2-4) also were not familiar with the analysis.  Motorola did not block

8  Microsoft's inquiry into whether that study was considered prior to making the October 2010

9  offers.  To the contrary, Mr. Blasius testified that, to his knowledge, that study was not used in

10  setting the opening offer royalty rate, and that he became aware of it only as part of the current

11  litigation.  (Ex. D, 109:9-112:22.)  Thus, Motorola did not block discovery into the points that

12  Microsoft contends Motorola should have considered in making its offers.

13       Microsoft likewise errs in arguing (Mot. 4) that Motorola failed to provide discovery

14  regarding its H.264 license offer at $0.50 per copy.  That offer, made in June 2012, is not

15  probative of whether Motorola acted in good faith when it made its October 2010 offers some 20

16  months earlier.  But Motorola should be permitted to introduce this offer as evidence that

17  Motorola would have lowered its offer from 2.25%.  Moreover, contrary to Microsoft's assertions,

18  Motorola's assertion of privilege did not prevent it from obtaining discovery about the "analytical

19  basis" for this offer.  For example, Mr. Dailey testified about the $0.50 per copy offer, ████████

20  ███████████████████████████████████████████████████

21  ███████████████████████████████████████████████████

22  ███████████████████████████████████████████████████

23  ███████████████████████████████████████████████████

24  ███████████████████████████████████████████████████

25  ███████████████████████████████████████████████████

26  ███████████████████████████████████████████████████

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 4
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   ███████████████████████████████ (*Id.*, 95:18-101:16.)  Accordingly, Microsoft's claim

2   that Motorola "blocked all discovery" regarding its offers is false.  Motorola should be permitted

3   to testify on the issues on which it provided discovery, as well as any issues that Microsoft did not

4   inquire about in discovery.

5       **B.    Motorola Appropriately Claimed Privilege Over Its Legal Analysis.**

6       Where Motorola did claim privilege, it did so properly.  Motorola objected on privilege

7   grounds to questions directed at legal analysis performed regarding the value of its 802.11 and

8   H.264 SEPs to Microsoft's products and/or the standards at issue.  For example, Microsoft's

9   counsel asked Mr. Taylor whether he had "conversations with outside counsel about the

10  conclusions they drew from [particular] claim charts" and "what did they say to you and what did

11  you say to them?" (Ex. A, 84:12-85:14.)  Mr. Taylor was appropriately instructed not to answer

12  based on privilege.  (*Id.*)  Similarly, Mr. Dailey was asked "specifically" what was "learned about

13  the value of Microsoft's patents that caused [Motorola] to lower the royalty demand," and

14  declined to answer, following a cautionary instruction by counsel to not reveal privileged

15  information. (Ex. C, 34:24-35:7.)  Motorola does not intend to introduce any testimony

16  concerning its legal analysis of the relevant standards-essential patents that occurred prior to the

17  October 2010 offer letters.  And Microsoft did not contest the appropriateness of Motorola's

18  privilege assertions during discovery nor file a motion to compel to obtain additional information.

19      Assertions of privilege related to the valuation process of a patent portfolio are proper.  *See*

20  *Intellectual Ventures I LLC v. Altera Corp.*, C.A. No. 10-1065-LPS, at 6 (D. Del. July 25, 2013)

21  (memorandum opinion granting in part protective order) ("When [witness] declined to answer

22  questions related to the valuation process. . . it was because this analysis constituted legal

23  communications protected by privilege.  Indeed, patent valuation . . . may be intertwined with

24  legal analysis, including considerations of claim scope, validity, and licensing power.") (citing *In*

25  *re Ford Motor Co.*, 110 F.3d 954, 966 (3d Cir. 1997)); *see also Baden Sport Inc. v. Molten*, No.

26  C06-201MJP, 2007 WL 1526346, at *1 (W.D. Wash. May 23, 2007) (affirming assertion of

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 5
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1   privilege over claim charts and outside counsel's analysis of same); *Apple Inc. v. Motorola*

2   *Mobility Inc.*, No. 3:11-cv-00178-bbc, 2012 WL 5416941, at *17 (W.D. Wis. Oct. 19, 2012)

3   (allowing non-privileged evidence of otherwise privileged processes to be presented at trial).

4   Tellingly, Microsoft does not claim in its Motion that Motorola's privilege assertions were

5   improper. Nor can it. Microsoft drew the very same line with respect to privilege in the

6   deposition of its own witness, Mr. Gutierrez. (*See* Ex. H, 20:22-21:5, 29:2-12, 29:14-30:8; 43:25-

7   45:24; 53:3-54:10, 65:22-69:10.) Mr. Gutierrez was designated to testify on behalf of Microsoft

8   regarding Microsoft's response to the October letters. (Exs. I, J.) Microsoft asserted the attorney-

9   client privilege to questions regarding Microsoft's legal analysis of Motorola's offers. (Ex. H,

10  20:22-21:5, 43:25-45:24, 65:22-69:10.)

### C.   Motorola's Privilege Assertions Differ From Microsoft's Attempts to Block Discovery About Its Decision To Relocate Its EMEA Distribution Center.

11
12          Microsoft should not be heard to equate its Motion concerning Motorola's privilege
13  objections with Motorola's request for preclusion based on Microsoft's failure, in defiance of this
14  Court's express order, to produce a Rule 30(b)(6) deposition designee prepared to testify about
15  Microsoft's decision to relocate its EMEA distribution center. (*See* Dkt. 778.) *First*, as the
16  plaintiff here, Microsoft bears the burden of proving its damages claim, which includes as a
17  necessary element a showing that Motorola's conduct *caused* Microsoft to relocate its EMEA
18  distribution center. To the extent that Microsoft failed to provide discovery on this theory, despite
19  the Court's order to do so, it failed to meet its burden as plaintiff. *Second*, Microsoft's own
20  witnesses testified under oath that the decision to move the EMEA distribution center was *made*
21  by Microsoft's legal department. (Dkt. 702 at 4.) No Motorola witness has ever testified that the
22  decision to send the October 2010 letters and their terms was based entirely on privileged
23  considerations within the legal department. Indeed, Motorola witnesses testified to the contrary.
24  (*See, e.g.*, Ex. E, 12:18-23 ("I would get legal approval *and finance approval* to sign any deal.")
25  (emphasis added).) *Third,* when Microsoft failed to provide an educated witness and improperly
26  withheld documents based on privilege, Motorola promptly moved the Court to compel further

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 6
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

1   discovery (Dkt. 702), which the Court granted (Ex. K, 6-9), and Microsoft blatantly ignored.  In

2   contrast, Motorola objected to deposition questions on the basis of privilege over a year ago, but

3   Microsoft never raised the issue with the Court or sought additional discovery.  If the privilege

4   objections were improper—which they were not—it was incumbent on Microsoft to seek relief,

5   which it never did.  Now, months after the close of fact discovery, having failed to make a timely

6   request for further discovery, Microsoft seeks an overly broad exclusionary order.  Microsoft has

7   clearly waived its privilege, but Motorola has not.

8         **D.**    **Microsoft's Motion As To The MPEG-LA License Is Moot.**

9        Microsoft also seeks (Mot. 5-6) to exclude, based on privileged objections by *non-party*

10   *Google*, evidence or argument that Microsoft is not entitled to a license of Motorola's H.264 SEPs

11   under *Google's* MPEG LA Agreement.  This request is moot.  Even if the MPEG-LA breach

12   theory survives summary judgment (and it should not), Motorola does not intend to offer

13   testimony regarding the legal question of interpreting the terms of Google's MPEG-LA license.[7]

14   That is a legal question for the Court to decide based upon the briefing and evidence already

15   submitted to the Court.[8]  Indeed, Motorola did not even identify Mr. Lo (the witness whose

16   testimony Microsoft takes issue with) as a trial witness or designate any of his deposition

17   testimony. (*See* Dkt. 802 at 17-19.)  Accordingly, Microsoft's motion as to MPEG-LA should be

18   denied as moot, and the Court should deny Microsoft's Motion in Limine No. 1.

19   **II.**    **THE COURT SHOULD DENY MICROSOFT'S REQUEST TO EXCLUDE**
       **EVIDENCE CONCERNING MICROSOFT'S COMMITMENTS UNDER THE SD**

20          **CARD ASSOCIATION LICENSING POLICIES AND MICROSOFT'S**
       **INTEROPERABILITY PRINCIPLES**

21

22        Microsoft similarly errs in arguing, in its Motion in Limine No. 2 (Mot. 7-11), that

23   Motorola should be precluded from arguing that Microsoft's patents implicated by its

---

24     [7]  Microsoft asked Google witness Allen Lo to interpret contract terms in Google's MPEG-LA AVC Agreement,
including but not limited to, defining "affiliate" (Ex. L, 47:2-11, 51:1-5) and "control" (*Id.* 47:12-49:23).  This is not

25   appropriate fact discovery.

26     [8]  As explained in Motorola's summary judgment papers, it is not proper for the Court to decide this issue in this
case because Google is not a party.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    Interoperability Principles and agreement with the SD Card Association were subject to RAND

2    commitments "on par with" Motorola's obligations to the ITU and IEEE, or that Microsoft

3    violated those undertakings by asserting patents against Motorola in the ITC.  To the contrary,

4    Microsoft's  lawsuits against Motorola in 2010 are critical evidence in evaluating Motorola's

5    response and the October 2010 letters, and preclusion of testimony about those lawsuits would

6    create a false set of facts for the jury to evaluate.  The jury will be asked to determine whether

7    Motorola violated its duty of good faith and fair dealing with Microsoft under RAND

8    commitments.  That analysis involves all of the circumstances, including Microsoft's actions

9    towards Motorola and Motorola's ensuing state of mind.  The fact that Microsoft first sued

10   Motorola under its own RAND-encumbered patents thus is highly relevant, and Motorola should

11   be permitted to show that Microsoft is not merely a standards implementer falling victim to SEPs,

12   but is an aggressive patent owner using the court system to leverage its own essential patents to

13   drive its positions to its advantage.

> **A.    Microsoft's Interpretation Of Its Own RAND Commitments As Permitting It To Seek Exclusionary Orders Is Relevant To Motorola's Good Faith**

14
15          Contrary to Microsoft's arguments (Mot. 8-9), evidence regarding Microsoft's

16   commitments to the SD Card Association and Microsoft's Interoperability Principles is highly

17   relevant to Microsoft's claim that Motorola breached by seeking injunctive relief for infringement

18   of patents subject to its RAND commitments to the IEEE and ITU, and to Motorola's affirmative

19   defense of unclean hands.  FED. R. EVID. 401 (evidence is relevant if "it has any tendency to make

20   a fact more or less probable than it would be without the evidence"); FED. R. EVID. 402.  *First*, the

21   fact that Microsoft sought an exclusionary order for infringement of RAND-encumbered patents

22   on *October 1, 2010* is relevant to Motorola's subjective and objective good faith in filing patent

23   infringement suits seeking injunctive relief in *November 2010*.  Microsoft's conduct helps to show

24   Motorola's subjective good faith because it shows that Motorola was responding to Microsoft's

25   request for Motorola to put its patents on the table after Microsoft asserted that Motorola's

26   Android smartphones infringed Microsoft's patents.  Microsoft's conduct also shows that

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 8
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  Motorola acted in objective good faith by doing just what Microsoft did during the same time

2  period.[9]   Contrary to Microsoft's suggestion (Mot. 8), Motorola does *not* contend that its RAND

3  compliance was "conditional" on Microsoft's compliance with its own RAND obligations, but

4  rather that Microsoft's conduct is probative of whether seeking injunctive relief for infringement

5  of standard essential patents constitutes a breach of the duty of good faith and fair dealing—an

6  issue on which evidence of Microsoft's conduct in the relevant time frame is plainly probative.

7        *Second*, Microsoft's conduct is relevant to Motorola's affirmative defense of unclean

8  hands.[10]  "The unclean hands doctrine 'closes the doors of a court of equity to one tainted with

9  inequitableness or bad faith relative to the matter in which he seeks relief, however improper may

10  have been the behavior of the defendant.'" *Adler v. Fed. Republic of Nigeria*, 219 F.3d 869, 876-

11  77 (9th Cir. 2000) (citing *Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814

12  (1945)).  As set forth in Motorola's opposition to Microsoft's Motion for Partial Summary

13  Judgment, that Microsoft sought an exclusionary order and injunctive relief for infringement of

14  RAND-encumbered patents—which Microsoft now contends is improper—is evidence of

15  Microsoft's unclean hands.[11]  Microsoft's argument that this conduct does not "relate directly" to

---

16

17  [9]  Microsoft is trying to enforce an injunction on its ActiveSync patents to this day.  The ITC issued an exclusion
order against Motorola based on a finding of infringement of one of Microsoft's ActiveSync patents.  Microsoft

18  recently sued the United States government, including the Department of Homeland Security and the U.S. Bureau of
Customs and Border Protection, including seeking a preliminary injunction against the government to continue to

19  enforce the exclusion order against Motorola. *See Microsoft Corp. v. United States*, Case No. 1:13-cv-01063-RWR
(D.D.C.).

20  [10]  As Motorola explained in support of its Proposed Jury Instruction No. 33 (Dkt. 791, at 109), although unclean
hands is typically an equitable claim, courts routinely submit the question of unclean hands to the jury, especially

21  where, as here, there is overlap between the plaintiff's affirmative claim and the defendant's unclean hands defense.
*Abbott Point of Care, Inc. v. Epocal, Inc.*, 868 F. Supp. 2d 1310, 1314-18 (N.D. Ala. 2012); *Unilogic, Inc. v.*

22  *Burroughs Corp.*, 10 Cal. App. 4th 612, 623 (1992) ("[I]t was particularly prudent for the trial judge to exercise his
discretion to submit Burroughs's unclean hands defense to the jury. . . . [A]ll of Burroughs's theories in support of the

23  unclean hands defense were intertwined with the parties' legal causes of action and raised questions of fact and
credibility properly submitted to a jury.").  Moreover, "the unclean hands doctrine applies not only to equitable

24  claims, but also to legal ones." *Adler v. Fed. Republic of Nigeria*, 219 F.3d 869, 877 (9th Cir. 2000); *Jacobs v.
Universal Dev. Corp.*, 53 Cal. App. 4th 120, 699 (1997) ("[T]he doctrine of unclean hands may apply to legal as well

25  as equitable claims . . . and to both tort and contract remedies.").  That said, to the extent the Court wishes to reserve
the question of unclean hands for after trial, Motorola does not object. (*See* Ex. M, 33.) ("[O]ne way you might

26  preserve them, Your Honor, is postpone equitable defenses until after the trial. That's one option.").

[11]  This is not the only evidence of Microsoft's unclean hands.  Motorola's affirmative defense is also based on the
fact that Microsoft invited Motorola to "put its patents on the table" so that the parties could negotiate a broad patent

---

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 9
CASE NO. C10-1823-JLR

1    Motorola's October 2010 offer letters is a red herring; Microsoft's conduct "relates directly" to

2    whether Motorola's patent infringement suits breached the duty of good faith and fair dealing.[12]

3        **B.    Evidence Concerning Microsoft's Own RAND Commitments Will Not
              Prejudice Microsoft Nor Mislead the Jury.**

4        Although failing to actually cite to Federal Rule of Evidence 403, Microsoft appears to

5    contend that evidence of its efforts to obtain exclusionary orders for infringement of its own

6    RAND-encumbered patents should be precluded under Rule 403.  (*See* Mot. 9-10) (discussing

7    prejudice and misleading the jury).  But Microsoft has not shown that the probative value of this

8    evidence is "substantially outweighed by [the] danger of . . . unfair prejudice, . . . [or] misleading

9    the jury."  FED. R. EVID. 403.

10       *First,* Microsoft fails to explain how it will be prejudiced by Motorola introducing this

11   evidence.  Tellingly, Microsoft does not contest that it committed to license its ActiveSync and

12   computer file system patents on RAND terms.  Nor does Microsoft explain how, if at all, its

13   Interoperability Principles covering its ActiveSync patents are different from Motorola's RAND

14   commitments to the IEEE and ITU.[13]  Even if Microsoft believes that "RAND" means something

15

16   cross license, but then filed a lawsuit without so much as making a counteroffer, and that Microsoft advocated to the
     FTC in June 2011 that SEP holders should be permitted to seek injunctive relief. (Dkt. 758, 21-22.)

17   [12]  If the Court grants Motorola summary judgment on Microsoft's breach theory based on Motorola seeking
     injunctive relief, then Motorola will not need to rely on this evidence to support its unclean hands defense.

18       Additionally, Microsoft's argument that these facts were not disclosed in interrogatory responses should be rejected.
19   Microsoft designated Horacio Gutierrez to testify regarding the parties' negotiations prior to the October offer letters
     being sent, which included Microsoft's prior lawsuits against Motorola. (Ex. B, 7:9-9:3.) Although Motorola served
20   its deposition notice on April 30, 2013, Microsoft did not make Mr. Gutierrez available for deposition until May 24,
     2013, after the close of fact discovery. Mr. Gutierrez testified about whether the ActiveSync patents were subject to
21   Interoperability Principles, and admitted that in a communication between the parties, Microsoft implied that they
     were. (*Id.*, 31:9-25, 188:22-191:24) Motorola did not obtain this testimony until after the close of fact discovery and
22   therefore it is reasonable that it was not included in Motorola's interrogatory responses. Moreover, as set forth above,
     this evidence is relevant to Motorola's defense to Microsoft's claim that Motorola did not act in good faith, and
23   Microsoft did not serve any interrogatories directed at the facts supporting that defense.

24   [13]  Regarding its file system patents, Microsoft argues that its RAND obligation did not apply because Motorola did
     not timely pay its membership dues. Microsoft's letter of assurance on its file system patents, however, did not have a
25   "condition precedent" for Microsoft's RAND obligations or depend on the status of the potential implementer:
     "Pursuant to Section 5(ii) of the SDA Intellectual Property Policy, Microsoft commits to the SDA that Microsoft will
26   license its Essential Patent Claims in a non-discriminatory fashion and under reasonable terms and conditions *to all
     SDA Member and non-SDA-Member licensees*. Microsoft will grant such licenses to SDA Members *and non-SDA-
     Members* pursuant to separate agreements." (Ex. N, 2) (emphasis added.)

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 10
CASE NO. C10-1823-JLR

1    different in its commitments to the SD Card Association or its Interoperability Principles,

2    Microsoft has not explained how it will be prejudiced by the introduction of this evidence, or how

3    that prejudice outweighs the probative value of the evidence.

4           *Second,* Microsoft fails to explain how introducing the evidence will mislead the jury.

5    Microsoft contends (Mot. 10)  that Motorola should not be permitted to argue that Microsoft's

6    conduct constitutes a breach of any RAND commitment.  But Motorola does not intend to do so.

7    Microsoft's claim (*id.*) that there is "no connection between Motorola's SSO RAND licensing

8    commitments concerning its 802.11 and H.264 standard-essential patents and Microsoft's

9    Interoperability Principles or Microsoft's obligations to the SDA" similarly misses the point.

10   Motorola does not claim that the scope of the parties' commitments are identical.  Nor do they

11   need to be.  The point is simply that Microsoft also committed to license certain of its patents on

12   RAND terms[14]—a fact Microsoft does not dispute—and that it sought an exclusionary order on

13   Motorola's alleged infringement of those patents just weeks before Motorola did the very same

14   thing.  Microsoft has not explained how this evidence will mislead the jury, or how that potential

15   to mislead the jury outweighs the probative value of the evidence.  The Court should therefore

16   deny Microsoft's Motion in Limine No. 2.

17   **III.    THE COURT SHOULD DENY MICROSOFT'S REQUEST FOR A BROAD
             PROSPECTIVE RULING PRECLUDING EVIDENCE OF SETTLEMENT**
18   **COMMUNICATIONS.**

19          Microsoft seeks (Mot. 11) in its Motion in Limine No. 3 to preclude Motorola from

20   offering evidence or argument regarding "statements made by either party relating to settlement

21   offers or commenting on the litigation between the parties during settlement discussions" after

22   October 21, 2010, but any such ruling would improperly allow Microsoft to tell a fictional story at

23   trial—one in which the only facts are that Motorola sent offer letters on October 21 and 29, 2010

24   and then filed patent infringement lawsuits seeking injunctive relief.  To the contrary, however,

25   the issue of good faith and fair dealing in this case turns on what happened before the letters were

26

---

[14]    In the case of the ActiveSync patents, Microsoft also agreed to license "at low rates." (Ex. O.)

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    sent (Microsoft sought exclusionary orders on RAND-encumbered patents and invited Motorola to

2    "put its patents on the table") and after the letters were sent (the parties engaged in licensing

3    negotiations).  This Court should reject Microsoft's attempts to use Rule 408 and the parties' non-

4    disclosure agreement ("NDA") to perpetuate a false set of facts.

5            In its Motion, Microsoft focuses (Mot. 11-15) on "two specific categories of

6    communications" which it argues are "within the scope of Rule 408" and the parties' NDA.  *First*,

7    Microsoft seeks to exclude statements made by Microsoft requesting Motorola to put its patents on

8    the table, and comments Microsoft made to Motorola when it filed this lawsuit.  As detailed

9    below, the Court already overruled identical objections, the evidence was part of the bench trial

10   record, and in any event, these communications are not covered by Rule 408 or the NDA.  The

11   statements Microsoft seeks to exclude bear directly on the issue for trial:  whether Motorola

12   violated the duty of good faith and fair dealing in sending the October 2010 letters.  Indeed, under

13   Microsoft's theory, the October 2010 letters themselves should be excluded under Rule 408.

14   *Second*, Microsoft seeks to exclude settlement offers provided by the parties since October 21,

15   2010.  However, as this Court has stated before, any general prospective ruling based on Rule 408

16   and the NDA is inappropriate and objections are best addressed as they arise at trial.  Moreover,

17   some of Microsoft's breach theories are based upon settlement offers or discussions occurring

18   after October 21, 2010.  The Court should not allow Microsoft to accuse Motorola of breaching a

19   contract based on post-litigation behavior, but preclude Motorola from introducing the facts

20   relevant to those accusations.

21       A.    **The Court Already Admitted The Parties' Comments On The Litigation In the**
             **November 2012 Trial.**
22

23           Microsoft's motion seeks to exclude evidence that "Microsoft had requested that Motorola

24   identify its patent value" in October 2010, and that Microsoft told Motorola not to be concerned

25   with the lawsuit because it was "litigation tactics week" at Microsoft.  (Mot. 14-15) (citing Neill

26

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 12
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  Taylor's deposition testimony).[15]  Microsoft raised these objections before, they were overruled,

2  and the evidence is part of the record.

3  Specifically, at the October 29, 2012 Pretrial Conference, the Court denied Microsoft's

4  objection to evidence that Microsoft asked Motorola to put its patents on the table and identify

5  their value: "If you look at the deposition of Motorola employee Neill Taylor, N-E-I-L-L, the

6  question was asked: 'When did Microsoft request Motorola identify its patent value?' Mr. Taylor

7  responded, 'My understanding was that Microsoft really needed Motorola to establish our patent

8  value to able to have some sort of a balanced deal.'  *That testimony was presented during a*

9  *deposition, and it's now sought to be excluded as part of settlement negotiations under 408.  And*

10  *the court simply will not do that.*"  (Dkt. No. 800-1, Ex. 1, 26:23-27:6) (emphasis added).

11  During trial, Mr. Dailey testified:  "[W]e had been sued by Microsoft in early October, and

12  we had been invited by Microsoft to put our patents on the table with respect to their product, so

13  we could have a discussion."  (Ex. F, 36:6-9.)  Microsoft did not object, and that testimony is part

14  of the record.  (*See id.*)  Mr. Dailey further testified that "we spoke to [Microsoft] right after they

15  filed the breach of contract complaint, and they said, don't be concerned about the complaint, it

16  was a litigation tactics week, and they expected some good work from our lawyers as well."  (*Id.*,

17  39:18-22.)  Although Microsoft objected under Rule 408, the Court overruled the objection in part,

18  allowing the testimony for the same purpose Motorola intends to use it at the upcoming trial—

19  namely, rebutting the claim that Motorola did not act in good faith.  The Court stated that it would

20  "allow testimony regarding the negotiations to establish only context," and that "[t]hey do have

21  some relevance to the question of good faith, which we have agreed to take up at a later point.  So

22  I'm going to permit some brief questioning."  (*Id.*, 42:17-43:7.)  This Court should again overrule

23  Microsoft's objections to this evidence.

24  **B.**  **Comments On the Litigation Are Not Covered By Rule 408 or The NDA.**

25

26  [15]  To the extent that Microsoft is seeking to exclude any other comments, Microsoft's motion should be denied because it has not identified those comments or articulated a basis for relief.

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 13
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    Even if the Court were to consider Microsoft's objections a second time (which it should

2    not), the comments at issue should not be excluded.  *First*, Rule 408 does not preclude these

3    comments.  Motorola intends to introduce them as evidence that Motorola did not breach the duty

4    of good faith and fair dealing, which must be determined based on context and circumstances,

5    including Motorola's subjective intent in making its opening offers.  Such use is excepted under

6    Rule 408.  *See* FED. R. EVID. 408, Committee Notes on Rules – 2006 Amendment ("[E]vidence of

7    settlement is not precluded by Rule 408 where offered to prove a party's intent. . . . Rule 408 is

8    inapplicable when the claim is based upon a wrong that is committed during the course of

9    settlement negotiations"); Dkt. 335 at 27 ("[A]ny analysis of Motorola's duty [of good faith] will

10   involve, at least in part, an examination of the intent behind Motorola's offers.").  To evaluate

11   Motorola's intent when it sent the October 2010 letters, the jury must be allowed to learn about the

12   context and circumstances—namely, that Microsoft invited Motorola to send the letters.  If

13   Microsoft's invitation that Motorola "put its patents on the table" was a settlement

14   communication, then the October letters themselves must also be settlement communications.

15   *Second*, the NDA was sent and executed on November 12, 2010, weeks after Microsoft

16   requested that Motorola put its patents on the table, and three days after Microsoft informed

17   Motorola that the breach of contract action Microsoft had filed earlier in the day was just

18   opportunistic litigation tactics.  (*See* Dkt. 801-1, Ex. 11 at 1.[16])  The purpose of the NDA was to

19   allow the parties to " ███████████████████████████████████," but when it is

20   those settlement discussions themselves which are the basis of the lawsuit, they should not be

21   excluded.  *Cf. Gelinas v. Metro. Prop. & Liab. Ins. Co.*, 131 N.H. 154, 166-67 (1988) ("The

22   ultimate question of fact . . . was whether MPL was negligent in failing to settle the case.  To

23   determine this central issue, the trial judge must consider the evidence, some of which was

24   conflicting, such as whether the plaintiff had made an authorized demand of the insurer.  Here, the

25

26   ───────────────
     [16]  The version of the NDA attached to Microsoft's motion was not executed by either Motorola Mobility or
     Motorola Solutions.

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 14
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  judge was not reviewing the value of the claim, but was reviewing the evidence to determine
2  whether the defendant had acted reasonably in attempting to settle. . . . [W]e hold that the
3  admission of the settlement discussions was a proper exercise of the trial court's discretion and did
4  not conflict with the letter or intent of Rule 408. The plaintiff's argument that allowing such
5  testimony into evidence will chill settlement discussions in the future is without merit.")  *See also*
6  *Century Indem. Co. v. Aero-Motive Co.*, 336 F. Supp. 2d 739, 749 (W.D. Mich. 2004) ("Aero has
7  put reasonableness at issue, and settlement offer is directly relevant to that issue. . . . [E]vidence of
8  settlement negotiations is admissible on the issue of reasonableness/good faith."); *Civic Fed. Sav.*
9  *Bank v. Hanover Ins. Co.*, No. 91 C 8286, 1992 WL 188409, at *2 (N.D. Ill. July 29, 1992)
10  ("Fed.R.Evid. 408 does not exclude evidence of settlement discussions that is offered to show an
11  insurer's bad faith failure to settle a claim.").

12       The purpose of the NDA was not to allow Microsoft to proceed with a lawsuit based on
13  facts that everyone but the jury knows to be false.  Moreover, the challenged testimony was
14  properly obtained during discovery, including, for Taylor's deposition testimony, from questions
15  asked by Microsoft itself. (*See* Dkt. 801-1, Ex. 11 ¶3

19  **C.    The Court Should Not Issue a Broad Prospective Ruling.**

20       Microsoft's motion should also be rejected insofar as it seeks (Mot. 13) a broad order
21  precluding the parties from presenting "any settlement proposals or offers" provided "following
22  Motorola's October 21, 2010 letter." *First*, such evidence is not relevant to whether Motorola
23  breached the duty of good faith and fair dealing when it sent its October 21 and October 29, 2010
24  offer letters.  The Court should focus the jury on the relevant time frame:  October and November
25  2010.  If it does so, then Motorola does not intend to affirmatively rely on settlement proposals or
26  communications after October 21, 2010.  If, however, Motorola needs to introduce such proposals

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 15
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1    or communications to correct falsities presented by Microsoft, Motorola must be allowed to do so.

2    For example, Microsoft should not be allowed to argue to the jury that the October 21 and 29,

3    2010 offers were "take or leave it" simply because none of Motorola's subsequent offers are in

4    evidence.  The Court should decline to provide a broad prospective ruling regarding purported

5    settlement offers and proposals, and should instead "examine the offered testimony at trial as it

6    arises," as it did for the November 2012 trial.  (Dkt. 800-1, Ex. 1 at 26:4-5.)

7        *Second*, the parties' NDA states that its restrictions ███████████████████████████

8    ████████████████████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████████████████

10   █████████████  (Ex. 801-1, Ex. 11 ¶3.)  Without a clear understanding of the

11   evidence Microsoft seeks to exclude (which Microsoft has not provided), and evidence of whether

12   that information is public or was otherwise obtained in some other way, any general order of

13   preclusion would be inappropriate.[17]

14       **D.    If the Court Excludes Some Communications, It Should Exclude All.**

15       Notwithstanding its request to exclude settlement communications and proposals,

16   Microsoft bases much of its case on settlement communications or proposals.  If the Court grants

17   Microsoft's Motion in Limine No. 3, then to ensure consistent application of Rule 408, the Court

18   should also exclude:  (1) Motorola's October 21 and 29, 2010 letters to Microsoft and testimony

19   about them; (2) Motorola's communications with Marvell relating to the negotiation of a patent

20   license; and (3) Google's communications with Microsoft relating to licensing Motorola's patents

21

22

23   ───────────────────────────────

     [17]  Prospective relief is particularly inappropriate because Microsoft has previously challenged evidence under Rule
     408 and the NDA, only to capitulate once Motorola explained that the evidence was publicly available or properly
24   obtained by a Party in discovery.  For example, on April 4, 2012, Microsoft sent Motorola a letter stating that certain
     statements in Motorola's March 30, 2012 motion for summary judgment (Dkt. No. 231) were inadmissible under Rule
     408 and the NDA.  (Ex. P.)  Motorola replied, pointing out that its motion "relied upon information that Microsoft
25   itself brought outside the scope of that [NDA] agreement, or that was never subject to the agreement in the first
     place."  (Ex. Q.)  Microsoft never replied to Motorola's letter, and when it filed its opposition to Motorola's motion
26   for summary judgment (Dkt. No. 268), it did not argue that any of the evidence in Motorola's motion was
     inadmissible under Rule 408 or the NDA.

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 16
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   on MPEG LA terms.  Microsoft cannot have it both ways.  It cannot exclude the settlement

2   negotiations it does not like, but include the ones it does.

3        ***October 21 and 29, 2010 Letters***.  As this Court is aware, these letters were provided in

4   response to Microsoft's invitation that Motorola identify its patents for discussion (which

5   Microsoft appears to contend was a settlement communication) and after Microsoft filed two

6   lawsuits against Motorola.  If Microsoft's pre-letter communications were settlement

7   communications, then the October letters must also be settlement communications.

8        Microsoft may argue that the October letters were excluded from the parties' November

9   12, 2010 NDA.  Although the NDA states that the agreement's ███████████████

10  ████████████████████" the NDA clearly suggests that it applies additional protections to those

11  provided by Rule 408.  (*See* Ex. 801-1, Ex. 11 ¶¶ 2-3; Microsoft's Mot. at 12 (acknowledging only

12  the "'additional limitations' created by the NDA").)  Thus, if the October letters are covered by

13  Rule 408 itself (as they are under Microsoft's theory), the NDA does not negate that coverage.

14       ***Motorola's Licensing Communications with Marvell***.  Microsoft alleges that Motorola

15  breached its contract with the IEEE because it did not license its 802.11 SEPs to Marvell,

16  Microsoft's chip supplier.  Marvell requested a license at Microsoft's request well after Microsoft

17  filed this lawsuit.  (Dkt. 733 at 4.)  Motorola then exchanged communications and license

18  proposals with Marvell.  (Dkt. 733 at 4.)  If the Court excludes settlement communications and

19  proposals, then because all of Motorola and Marvell's communications post-date the present suit,

20  they are all inadmissible under Rule 408.

21       ***Google's and Microsoft's Negotiation of an MPEG-LA License***.  Similarly, Microsoft

22  requested an MPEG-LA license from non-party Google well after this lawsuit was filed.  (Dkt.

23  733 at 5.)  They then negotiated a potential license.  (*Id.*)  If the Court excludes settlement

24  communications, then all communications regarding MPEG LA are inadmissible.

25                                    **CONCLUSION**

26       For all the above reasons, Microsoft's Motions in Limine should be denied.

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 17
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

1    DATED this 5th day of August, 2013.

2

3                           Respectfully submitted,

                             SUMMIT LAW GROUP PLLC

4                           By */s/ Ralph H. Palumbo*

5                           By */s/ Philip S. McCune*

                                Ralph H. Palumbo, WSBA #04751

6                                Philip S. McCune, WSBA #21081

7                                *ralphp@summitlaw.com*

                                *philm@summitlaw.com*

8                           By */s/ Thomas V. Miller*

                                Thomas V. Miller

9                                MOTOROLA MOBILITY LLC

                                600 North U.S. Highway 45

10                              Libertyville, IL  60048-1286

                                (847) 523-2162

11                          QUINN EMANUEL URQUHART &

12                        SULLIVAN, LLP

                           By */s/ Kathleen M. Sullivan*

13                                Kathleen M. Sullivan, NY #1804624

                                51 Madison Ave., 22nd Floor

14                              New York, NY 10010

15                              (212) 849-7000

                                *kathleensullivan@quinnemanuel.com*

16                           By */s/ Brian C. Cannon*

                                Brian C. Cannon, CA #193071

17                              555 Twin Dolphin Drive, 5th Floor

                                Redwood Shores, CA 94065

18                              (650) 801-5000

19                              *briancannon@quinnemanuel.com*

                           By */s/ William C. Price*

20                              William C. Price, CA #108542

                                865 S. Figueroa Street, 10th Floor

21                              Los Angeles, CA 90017

22                              (213) 443-3000

                                *williamprice@quinnemanuel.com*

23                        ***Attorneys for Motorola Solutions, Inc.,***
***Motorola Mobility LLC and General***

24                        ***Instrument Corp.***

25

26

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Arthur W. Harrigan, Jr., Esq.
Christopher T. Wion, Esq.
Shane P. Cramer, Esq.
Calfo Harrigan Leyh & Eakes LLP
arthurh@calfoharrigan.com
chrisw@calfoharrigan.com
shanec@calfoharrigan.com

Richard A. Cederoth, Esq.
Brian R. Nester, Esq.
David T. Pritikin, Esq.
Douglas I. Lewis, Esq.
John W. McBride, Esq.
William H. Baumgartner, Jr., Esq.
David C. Giardina, Esq.
Carter G. Phillips, Esq.
Constantine L. Trela, Jr., Esq.
Ellen S. Robbins, Esq.
Nathaniel C. Love, Esq.
Sidley Austin LLP
rcederoth@sidley.com
bnester@sidley.com
dpritikin@sidley.com
dilewis@sidley.com
jwmcbride@sidley.com
wbaumgartner@sidley.com
dgiardina@sidley.com
cphillips@sidley.com
ctrela@sidley.com
erobbins@sidley.com
nlove@sidley.com

T. Andrew Culbert, Esq.
David E. Killough, Esq.
Microsoft Corp.
andycu@microsoft.com
davkill@microsoft.com

DATED this 5th day of August, 2013.

/s/ Marcia A. Ripley
Marcia A. Ripley

DEFENDANTS' OPPOSITION TO MICROSOFT'S MOTIONS
IN LIMINE - 19
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001