**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
(212) 849-7327

WRITER'S INTERNET ADDRESS
kathleensullivan@quinnemanuel.com

August 6, 2013

The Honorable James L. Robart
United States District Court
Western District of Washington
700 Stewart Street, Suite 14128
Seattle, WA  98101-9906

Re:     *Microsoft Corp.* v. *Motorola Mobility, Inc.*
        Case No. C10-1823-JLR

Dear Judge Robart:

Defendants Motorola, Inc., Motorola Mobility LLC, and General Instruments Corp. ("Motorola") respectfully submit this letter in response to the Court's request for authority on Motorola's statement that a claim for breach of the implied duty of good faith and fair dealing cannot be a "moving target" and must be considered based on facts that occurred before or "at the time of the lawsuit."  Hr'g Tr. 45:12-46:20 (July 31, 2013).

Microsoft's Complaint and Amended Complaint plead a cause of action for breach of contract based on two discrete sets of events:  sending the October 21, 2010 and October 29, 2010 opening offer letters and filing the November 2010 patent enforcement actions.  Am. Compl., Dkt. 53, at ¶¶ 70-72 (discussing the October letters and alleging that "Motorola's demands constitute a breach of its WLAN and H.264 commitments"); Compl., Dkt. 1 at ¶¶ 70-71, 73 (same); Am. Compl., Dkt. 53, at ¶ 85 (alleging that Motorola "breached these contracts by filing the Motorola Patent Actions").  Counsel for Microsoft agreed at last week's hearing that a good faith determination contains a subjective element.  *See* Hr'g Tr. 76:6-10 ("Good faith is… a state of mind, typically, good faith, and it's the sort of thing that no one, unless you can read minds, is in a position to opine as to what somebody's internal and subjective motives were.").  It is Motorola's state of mind at the time of the alleged breach that is relevant to any determination of whether Motorola acted in good faith.  The complaint thus sets the relevant time period for any assessment of a breach of the implied covenant of good faith and fair dealing: when Motorola sent the October 2010 letters and when Motorola filed the November 2010 patent infringement suits.

Washington courts and courts in other jurisdictions support Motorola's understanding by recognizing that whether a party acted in good faith must be judged at the time of the alleged breach. For example, in *Gaglidari v. Denny's Restaurant Inc.*, the Supreme Court of Washington overturned a jury verdict in favor of the plaintiff, a former employee of the defendant restaurant. 117 Wn.2d 426, 438-39 (1991). The plaintiff, a bartender, had alleged that the restaurant breached her employment contract by dismissing her because of her participation in an alleged fight. *Id.* at 430. At trial, the restaurant asserted five rule violations as justifications for the bartender's dismissal, but only one—fighting on the premises—permitted the restaurant to terminate the bartender immediately. *Id.* at 437. The Supreme Court of Washington remanded the case for a new trial to determine, if at the time of the dismissal, the employer had reached a good faith and reasonable conclusion that plaintiff was fighting on company premises. *Id.* at 438-39. The court explained that in determining whether the employer acted in good faith, the issue of "whether plaintiff was actually fighting is irrelevant to this action; rather, the issue is whether ***at the time*** plaintiff was dismissed defendant reasonably, in good faith, and based on substantial evidence believed plaintiff had done so." *Id*. (emphasis added).

Similarly, in *Bonneview Homeowners Association v. Woodmont Builders, LLC*, the court granted summary judgment to defendants on plaintiffs' claim for breach of the covenant of good faith and fair dealing because the defendants lacked any bad motive or intent at the time of the alleged breach. 655 F. Supp. 2d 473, 511 (D.N.J. 2009). Homeowners had sued the property developers and others for breach of the covenant of good faith and fair dealing after the defendants represented that the land on which the homes were built did not have any environmental problems. *Id.* at 480. The land turned out to be contaminated. *Id.* at 483-88. The court found summary judgment appropriate because, "[w]hile it is disputed whether representations were made to the Plaintiffs about the nature of the topsoil, the Plaintiffs do not dispute that, ***at the time of the alleged misrepresentations*** regarding the nature of the topsoil, the Woodmont Defendants did not know that the soil was contaminated." *Id.* at 510-11 (emphasis added). The court concluded that, "[b]ecause it did not know the soil was contaminated, [defendants] could not have had the requisite bad motive or intention that is essential to a cause of action for breach of the covenant of good faith and fair dealing." *Id.* at 511 (internal quotations omitted).

These decisions are in accord with this Court's recent statement in its *Daubert* ruling that "Monday morning quarterbacking is an easy job, but decisions by companies are certainly made in real time and on circumstances that existed at that time." Dkt. 822 at 18 (Aug. 5, 2013).

Respectfully,

Kathleen M. Sullivan

cc:     All counsel of Record