

**SUMMIT**
LAW GROUP
*a professional limited liability company*

RALPH H. PALUMBO
DID: (206) 676-7042
EMAIL: *ralphp@summitlaw.com*

315 Fifth Ave S Suite 1000
Seattle, Washington 98104
*phone* · 206.676.7000
*fax* · 206.676.7001

August 7, 2013

*REDACTED*

The Honorable James L. Robart
United States District Court
Western District of Washington
700 Stewart Street, Suite 14128
Seattle, WA 98101-9906

      Re:    **Microsoft Corp. v. Motorola Mobility, Inc.**
             **Case No. C10-1823-JLR**

Dear Judge Robart:

      We write to request permission to renew Defendants' Motion to Exclude and Strike Testimony of Todd Menenberg. Microsoft served the Amended Expert Report of Todd Menenberg ("Amended Report") (Dkt. 812) on July 31, 2013. Certain portions of the Amended Report exceed the scope of the supplementation that Microsoft proposed and that the Court permitted at the July 30, 2013 hearing. The Amended Report includes apportioning the legal costs incurred based on work by Sidley relating to Motorola's H.264 patent claims versus work performed related to Motorola's 802.11 patent claims. Neither Microsoft nor Mr. Menenberg previously performed such an apportionment, which was a failure Motorola identified in its Motion. (Dkt. 734, 9.) The Amended Report attempts to "fix" this failure by creating new documents and new damages theories that for the first time differentiate damages between standards. It is profoundly unfair to Motorola to allow Microsoft to rely on newly-created documents and amend the substance of Mr. Menenberg's report "beyond the scope of the opening and rebuttal reports after the close of fact discovery, the exchange of opening and rebuttal expert reports, expert discovery, filing of *Daubert* motions, and the *Daubert* hearing. Permitting such amendment would leave [Motorola] without recourse to challenge Mr. [Menenberg's] proffered testimony." (Dkt. 822, 29-30) (referring to modifications to Mr. Holleman's opinions). Motorola respectfully requests that the Court strike the portions of the Amended Report in which Mr. Menenberg offers an opinion on the apportioned legal costs incurred (including at page 10 of the Amended Report) and order that no Microsoft witness (whether it be Mr. Menenberg or Mr. Killough) be permitted to testify on the new allocation of fees and costs to H.264 or 802.11 or both.

      **The Court's Order.** During the July 30, 2013 hearing on *Daubert* motions, when addressing Mr. Menenberg's report and unreliable methodology, Microsoft's counsel provided "an update" on its damages theories, saying that "over the last week," Microsoft revisited "5,000 entries" on the Sidley invoices and "reduced the 5,000 entries to 3,000 entries that are either self-evident 100 percent of anyone who knows the slightest thing about this case [sic], or that Mr. Killough has determined he can identify as being 100 percent allocatable to SEP

The Honorable James L. Robart
August 7, 2013
Page 2

defense." (Ex. 1, 7/30/2013 Hearing Tr., 16:6-20.) Microsoft's counsel reported that as a result of that work, the Sidley claim "is now reduced to approximately ▓▓▓▓▓" (*Id.*, 17:1-2.) He further explained that Mr. Menenberg "has calculated that number [▓▓▓▓▓] *in the same way that he calculated the earlier numbers.*" (*Id.*, 17:4-6) (emphasis added). When asked by this Court whether the 3,000 entries had been provided to Motorola (they had not), Microsoft's counsel clarified that what Microsoft was doing was merely "shrinking [its] claim from 5,000 entries to 3,000 entries." (*Id.*, 18:21-22.) The Court then ordered that the newly redacted Sidley invoices be produced by July 31, that Mr. Killough be made available for a four-hour deposition again, and that Mr. Keller may revise his report and be made available for a two-hour deposition. (*Id.*, 38:7-15.) The Court's August 5, 2013 order further orders that Motorola is entitled to an additional deposition of Mr. Menenberg. (Dkt. 822, 11, n.3.)

**Microsoft's Document Production and the Amended Report.** On July 31, 2013, Microsoft served the newly-redacted Sidley invoices and the Amended Report. The newly-redacted Sidley invoices do not simply reduce the number of entries for which Microsoft is seeking relief from 5,000 to 3,000. *For the first time,* each time entry has a designation next to it indicating whether the task related to Motorola's H.264 patent claims, 802.11 patent claims, or both. (*See, e.g.*, Ex. 2.) A red triangle to the left of the time entry indicates that it relates to H.264; a red circle to the left of the time entry indicates that it relates to 802.11; and a red square to the left of the time entry indicates that it relates to both. (*See id.*) The Sidley invoices previously produced by Microsoft contained no such designations. (*See e.g.*, Ex. 3; *see also* Dkt. 817 – Declaration of Chris Wion, ¶ 8 ("These invoices previously were produced without these notations.")) In the Amended Report, Mr. Menenberg provided separate calculations of the "legal cost damages" for H.264, 802.11, and both H.264 and 802.11. (Dkt. 812, 10.) Mr. Menenberg never before calculated the total "legal cost damages" for these three categories. Thus, the Amended Report does not merely "shrink" Microsoft's damages claim; it segregates Microsoft's purported legal costs from Sidley to identify those purportedly associated with Motorola's alleged breach of its obligations to the IEEE and ITU. Moreover, these entirely new calculations address a significant hole in Mr. Menenberg's report and Microsoft's case: the lack of evidence of damages resulting from each of the contracts at issue. (*See* Dkt. 734, 9 (arguing Mr. Menenberg's opinions were not helpful to the jury because they did not distinguish between damages suffered as a result of the alleged breach of the contract with the IEEE and damages suffered as a result of the alleged breach of the contract with the ITU).[1] Thus, it appears that Microsoft used the Court's permission to serve an amended report to narrow its damages claim as a "do-over" to fix the problems Motorola identified with Microsoft's case.

Microsoft may argue that it informed the Court of these amendments (Ex. 1, 36:21-22), Motorola objected to them (*id.*, 37:25-38:6), and the Court nevertheless permitted the Amended Report. It is clear from the Court's August 5, 2013 Order, however, that the Court did not appreciate that Microsoft did more than just "shrink" its damages claim. Addressing the Amended Report, this Court stated: "Microsoft has further explained that the invoices relied upon by Mr. Menenberg in his amended report are simply a subset of those included in his initial report, and thus, *Mr. Menenberg is not offering new opinions.*" (Dkt. 822, 11 n.3) (emphasis added). This is incorrect; the Amended Report *does* offer new opinions and is based on data not provided during fact discovery. Further, permitting Microsoft to rely on its newly

---

[1] Motorola identified this flaw in its *Daubert* motion and yet Microsoft did not respond in its Opposition. (*See* Dkt. 744.) Although the Amended Report tries to fix this flaw, it still fails to provide a calculation of legal costs purportedly incurred as a result of each of the alleged breaches.

The Honorable James L. Robart
August 7, 2013
Page 3

allocated "legal costs" cannot be reconciled with this Court's comments regarding Motorola's July 31, 2013 letter clarifying the opinions to be offered by Mr. Holleman and Dr. Leonard, which the Court characterized as "striking and adding" to the testimony to be elicited. (*Id.*, 29.) With respect to Mr. Holleman, the Court struck the "new additions to his report that go beyond the scope of opening and rebuttal reports." (*Id.*, 30.) The Court did the same as to the "new additions" to Dr. Leonard's report. (*Id.*, 42.) Thus, it is unlikely that the Court knowingly permitted Microsoft to serve an amended expert report offering new opinions after the close of discovery, the exchange of opening and rebuttal expert reports, expert discovery, *Daubert* motions, and the *Daubert* hearing.

**Prejudice to Motorola.** Allowing Microsoft to rely on this new evidence and these new expert opinions this late in the case is extremely prejudicial to Motorola. That the Court ordered additional depositions and the opportunity for Motorola to submit a supplemental expert report is helpful, but does not completely cure this prejudice. Fact discovery closed on May 20, 2013; opening and rebuttal expert reports were served on May 29 and June 10, 2013, respectively; expert discovery closed on June 24, 2013; and *Daubert* motions were already filed, heard, and ruled upon. Trial is less than three weeks away. Motorola and its experts should be preparing for the Pretrial Conference and trial in the coming weeks, not reviewing and analyzing hundreds of pages of law firm invoices, deposing Mr. Killough and Mr. Menenberg, preparing a supplemental report to address the Amended Report and new invoices (Keller), and sitting for a second deposition (Keller). Imposing the burden of responding to new damages opinions on the eve of trial will prejudice Motorola. And, permitting Microsoft to proceed with these new opinions in light of the Court's response to changes Motorola proposed in Mr. Holleman's and Dr. Leonard's opinions would be manifestly unjust.

Accordingly, Motorola respectfully requests that the Court issue an order precluding Microsoft and any of its witnesses, including Mr. Killough and Mr. Menenberg, from introducing or relying on the allocations of time entries between H.264, 802.11, and both H.264 and 802.11 in the versions of the Sidley invoices produced on July 31, 2013.[2]

Respectfully,

SUMMIT LAW GROUP PLLC

*/s/ Ralph H. Palumbo*

Ralph H. Palumbo

Enclosures
cc:   All Counsel of Record

---

[2] To be clear, this letter is not directed at Microsoft's "shrinking" of its damages claim from 5,000 entries to 3,000 entries, as that was specifically discussed at the July 30, 2013 hearing and the Court granted Microsoft leave to do so. Motorola will proceed with depositions of Mr. Killough and Mr. Menenberg regarding the new Sidley invoices that reflect this "shrinking." This letter addresses the new segregation of Sidley time entries between H.264, 802.11, and both standards, and Mr. Menenberg's opinions which rely on that segregation.