# EXHIBIT 1

4

```
                    UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF WASHINGTON AT SEATTLE
_____

  MICROSOFT CORPORATION,           )
                                   )
                Plaintiff,         ) CASE NO. C10-1823JLR
                                   )
  v.                               ) SEATTLE, WASHINGTON
                                   ) July 30, 2013
  MOTOROLA, INC., et al.,          )
                                   ) Daubert hearing
                Defendant.         )
                                   )
_____

                    VERBATIM REPORT OF PROCEEDINGS
                 BEFORE THE HONORABLE JAMES L. ROBART
                    UNITED STATES DISTRICT JUDGE
_____

  APPEARANCES:

   For the Plaintiff:      ARTHUR HARRIGAN
                           RICHARD CEDEROTH
                           ANDREW CULBERT
                           DAVID PRITIKIN
                           CHRISTOPHER WION


   For the Defendant:      KATHLEEN SULLIVAN
                           WILLIAM PRICE
                           PHILIP McCUNE
                           RALPH PALUMBO (by telephone)


   Reported by:            NANCY L. BAUER, CCR, RPR
                           Federal Court Reporter
                           700 Stewart Street, Suite 17205
                           Seattle, WA 98101
                           (206) 370-8506
                           nancy_bauer@wawd.uscourts.gov
```

1   percentage allocation entries were all eliminated from the
2   claim so that what we were left with was a set of a series of
3   entries that we believed to be, each one, 100 percent
4   allocatable to standard essential patent defense activity.
5           THE COURT:  And how do we know that?
6           MR. HARRIGAN:  So, Your Honor, here -- here is --
7   here is what has occurred since, because I have an update for
8   everyone, which has been happening over the last week, and
9   that is, there were 5,000 entries that were determined by
10  Ms. Robbins to be reasonably -- very clearly 100 percent
11  allocatable to the SEP defense.
12      However, Ms. Robbins is not going to testify.
13  Mr. Killough will be the witness with respect to a number of
14  issues relating to the attorneys' fees.
15      So what has happened in the last week is Ms. Robbins and
16  Mr. Killough have worked together and reduced the 5,000
17  entries to 3,000 entries that are either self-evident 100
18  percent of anyone who knows the slightest thing about this
19  case, or that Mr. Killough has determined he can identify as
20  being 100 percent allocatable to SEP defense.
21      And he testified at his deposition, which is part of our
22  response, that he would be able to do that.  And, in fact,
23  since then, he has actually done that.  And so Mr. Killough
24  will be able to be cross-examined about any of the 3,000
25  entries that are currently in the claim, which is now the

```
 1   Sidley claim, as a result of that is now reduced to
 2   approximately           .
 3        So with respect to Mr. Meneberg, he's also, obviously,
 4   been busy with the 3,000 entries, and he has calculated that
 5   number I just gave you in the same way that he calculated the
 6   earlier numbers, something that the jury would take days
 7   doing and probably would get the wrong answer because it's
 8   very complicated.
 9        And so we believe that Mr. Meneberg's qualifications to do
10   complicated arithmetic are well established, and that under
11   1006, that's something that is appropriate to be done to help
12   the jury.  And he is, you know, a highly qualified expert.
13   He's got a staff, he's got computers, and he checked
14   everything, and we believe he's gotten the right answer.
15        So I don't think there's -- I don't think it would be fair
16   to Mr. Meneberg to have on his record that he was excluded as
17   an expert under a *Daubert* motion, when we just asked him to
18   please perform some complicated calculations carefully and
19   provide the answer to the jury.  So that's basically where we
20   are, and we believe, as the court said, that, you know, the
21   proof will be in the pudding at trial, and if Mr. Killough
22   can't support the foundation for those 3,000 entries, that
23   will be a problem.
24               THE COURT:  When are the 3,000 entries going to be
25   provided to Microsoft -- or Motorola?
```

```
 1              MR. HARRIGAN:  We already have them.  In other words,
 2   we haven't changed the target.  We've shrunk the target.
 3   Those 3,000 -- and we -- and I believe we can do that
 4   virtually instantly, correct, Ellen?
 5              MS. ROBBINS:  Yes.
 6              MR. HARRIGAN:  And so they're already identified.
 7   They can be provided.  And Mr. Killough has already testified
 8   at his deposition that he is capable of identifying such 100
 9   percent entries.
10              THE COURT:  Well, here's what I want to know:  You
11   had 5,000.  You've given that to Motorola?
12              MR. HARRIGAN:  Correct.
13              THE COURT:  Now you say you've got 3,000.  Simply
14   saying 3,000 of the 5,000 of the ones we're talking about
15   doesn't help them.  Do they have 3,000 identified entries?
16              MR. HARRIGAN:  I -- I believe we didn't have them
17   until a day or two ago, and they will have them forthwith.
18              THE COURT:  I guess that order about close of
19   discovery wasn't of concern to anyone?
20              MR. HARRIGAN:  Well, Your Honor, I -- this is -- this
21   is actually not discovery.  We're shrinking our claim from
22   5,000 entries to 3,000 entries.  The same 3,000 entries were
23   in the original.  It just gives Motorola fewer entries to
24   deal with.
25              THE COURT:  All right.  Continue.
```

1        THE COURT:  You know, when your expert changes his
2   opinion because you're now advising him, I don't think that's
3   the other side's fault.
4        MR. PRICE:  Well, we're just dropping things, Your
5   Honor.
6        THE COURT:  All right.  Let's deal with Mr. Killough.
7     Mr. Harrigan, I heard you graciously say that you would
8   have this report to them by noon tomorrow.  Is that accurate?
9        MR. HARRIGAN:  Yes.
10       THE COURT:  All right.  And in what form will it
11  take?
12       MR. HARRIGAN:  Ms. Robbins, why don't you tell us
13  about this.  There's no point in me talking about things I
14  don't know the details about.
15       MS. ROBBINS:  Good afternoon, Your Honor.  Ellen
16  Robbins on behalf of Microsoft.
17     We have the invoices, the same invoices that we've
18  previously produced, although there are far more redactions.
19  All that will be left on the new set of invoices are the
20  3,000 entries that we are now seeking as attorneys' fees.
21  They also have indication on whether the time entry relates
22  to the H.264 patent, the 802.11 patent, or both.
23       THE COURT:  In what format is that in?
24       MS. ROBBINS:  Invoices.  They're the actual invoices.
25       THE COURT:  And this is only Sidley's fees?

1            MS. ROBBINS:  Correct.  There have not been
2    adjustments to the other ones.
3            THE COURT:  All right.  Thank you.
4            MR. HARRIGAN:  Your Honor, just one point here.  Our
5    goal here is to try to get this down to something that nobody
6    can really argue about.  I know that may be an impossible
7    task, but we would be more than happy to go through the 3,000
8    and see if -- maybe there are a hundred of them that Motorola
9    disagrees with, and we might just take a bow.  I mean, the
10   idea is to get to a point where it's obvious that these are
11   about defending standard essential patents, and nobody needs
12   to dispute it.  So that's the goal.  And maybe, you know, if
13   we winnow out a few more, we can get to the point where at
14   least they're not admitting anything other than, yes, this
15   was about defending SEP patents.  So that's where we're
16   trying to get to.
17           MR. PRICE:  Your Honor, that's a pretty big burden to
18   put on us right before trial.  But Ms. Robbins, it would be
19   nice if she'd testify, we might be able to ask her questions.
20   But Mr. Killough, we don't need just invoices, 3,000
21   invoices.  We'd need to know methodology.  We'd need to know
22   how they came up with the conclusion that these 3,000 entries
23   relate to this case and our damages.  And when are we going
24   to find that out?
25       I mean, never before, to our knowledge, have they

1   differentiated between 26482.11 [sic] entries, for example.
2   So, you know --
3            THE COURT:  Sorry?
4            MR. PRICE:  802.11.  I'm sorry.
5       I mean, just giving us invoices isn't going to help us
6   prepare for trial and to respond to their damages claims.
7            THE COURT:  I'm going to order that the invoices be
8   provided by close of business tomorrow.  I'm going to give
9   Motorola sufficient time to review them, which will take you
10  through, probably, Wednesday of next week.  And Mr. Killough
11  needs to be available for a four-hour deposition, either late
12  next week or early the following week, at Motorola's choice.
13      Following that, if Mr. Keller needs to revise his report,
14  he needs to revise his report, and Microsoft will have the
15  opportunity to re-depose him for two hours.
16      I can't begin to express my dismay that we're on-the-fly
17  doing this stuff.  You both have unlimited resources, and you
18  fully utilize them, and you've known the trial date was
19  coming for a long time, and to be in this situation just
20  seems to me to be creating a difficult situation for you and
21  a difficult situation for the court.
22      Mr. Price, you look like you were going to leap out of
23  your seat.
24           MR. PRICE:  Just to ask a question.
25      Mr. Keller would only be responding to an expert report by