LAW OFFICES
## CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON  98104
(206) 623-1700

ARTHUR W. HARRIGAN, JR.

FACSIMILE:  (206) 623-8717
E-MAIL:  ARTHURH@CALFOHARRIGAN.COM

August 7, 2013

**VIA ECF**

Honorable James L. Robart
United States District Court
Western District of Washington
700 Stewart Street, Suite 14128
Seattle, WA  98101-9906

Re:   *Microsoft Corp. v. Motorola, Inc., et al.*, No. 10-cv-1823-JLR

Dear Judge Robart:

We write in response to Motorola's August 6, 2013 letter to the Court concerning a question that arose during the July 31, 2013 Summary Judgment hearing. Motorola's letter mischaracterizes Microsoft's arguments and contentions, and fails to address the question the Court asked.

As a threshold matter, Motorola's claim that "Counsel for Microsoft agreed at last week's hearing that a good faith determination contains a subjective element" misstates Microsoft's position, which is that subjective bad faith suffices, but need not be shown, to establish the breach. Washington law on the duty of good faith and fair dealing, including as interpreted by the Ninth Circuit and as recited in the Restatement of Contracts, *does not* require a plaintiff to establish subjective bad faith in order to prevail (*see* Dkt. No. 715 at 5–11; Dkt. No. 729 at 2–3), and Microsoft's counsel argued that position at the Summary Judgment hearing, *see* 7/31/2013 Hearing Tr. at 6:17–7:2. Motorola's letter suggesting otherwise cites to the wrong hearing transcript. The statement quoted was not made at the July 31, 2013 Summary Judgment hearing, but at the July 30, 2013 Daubert hearing. At that hearing, Microsoft's counsel did not concede any position related to the law of good faith and fair dealing—the issue under discussion was whether subjective good faith was an appropriate subject for expert testimony. Microsoft's counsel explained the rationale behind the case law holding that an expert's ultimate conclusion as to a party's subjective intent or subjective good faith (the topic of Holleman's and Leonard's opinions) is inadmissible. *See* 7/30/2013 Hearing Tr. at 76:1–14. *See also* Dkt. No. 724, Microsoft's Rule 702 Motion at 4, 7–8, 11.

During the hearing in question, the July 31, 2013 Summary Judgment argument, the Court stated to Motorola's counsel, "I think you've now isolated the question I'm asking, which is, what I heard Microsoft arguing in its jump-the-gun portion here was, **now that they know**

**we're a willing licensee, how can they continue to request an injunction?**" Ex. 2, 7/30/2013 Hearing Tr. at 45:7–11 (emphasis added). Motorola's counsel responded, in part:

> [W]e think that the breach case here can't be a moving target. We can't be talking about breach throughout the litigation. The question is, did we breach at the time the lawsuit -- that this breach lawsuit was filed and at the time that it was amended to include the injunction period? . . . I don't know of any case in which everything in the course of ongoing litigation gets to sort of sub rosa amend the complaint as amended. They're stuck with the facts as they were at the time of the complaint and the amendment.

7/31/2013 Hearing Tr. at 45:12–46:4. The Court asked for authority for that position, and Motorola's counsel responded that it had cited cases in its briefs and would provide a subsequent letter. *Id.* at 46:10–20. But the letter does not supply any such authority and sidesteps the question the Court raised.

      Motorola's letter takes the position that "the relevant time period for any assessment of a breach of the implied covenant of good faith and fair dealing [is] when Motorola sent the October 2010 letters and when Motorola filed the November 2010 patent infringement suits," and cites two cases. That assertion is no answer to the question the Court raised, which addressed Microsoft's claim that, by its continued pursuit of injunctions, Motorola further breached its RAND obligation and the covenant of good faith and fair dealing, especially because it did so well after the Court accepted Microsoft's commitment to the license on RAND terms determined by the Court. As Microsoft explained in its summary judgment briefing, that conduct constitutes a straightforward breach of the RAND licensing commitment (*see* Dkt. No. 740 at 3–8) as well as a breach of the duty of good faith and fair dealing by constituting hold up in frustration of the purposes of the contracts (*see* Dkt. No. 729 at 19–21). Motorola's counsel's response suggests that Motorola now believes these claims are somehow not part of the case.

      Motorola is wrong. Microsoft's February 23, 2011 Amended Complaint alleged that Motorola's pursuit of injunctions on its SEPs constituted a breach of its RAND licensing commitments. (Dkt. No. 53 ¶ 85.) Microsoft asked the Court to "[p]reliminarily and permanently enjoin Defendants . . . from seeking enforcing, or seeking to enforce, patent infringement claims in the Motorola Patent Actions (**or elsewhere**) in breach of their RAND obligations as alleged above." (*Id.* at 24–25 (emphasis added).) When Motorola decided to file infringement lawsuits in Germany less than six months later, on patents that were included in its October 2010 letters, it did so fully aware that Microsoft viewed that conduct as within the scope of the dispute already before this Court. (*See id.* ¶ 85 ("Defendants are not entitled to enjoin or exclude Microsoft from implementing the technology of the SDO Litigated Patents.").)

      Even if it were not clear from Microsoft's Amended Complaint alone that Motorola's continued pursuit of injunctions is within the scope of this case, the Court and the parties have

been operating under that understanding for over a year.  Motorola has been on notice since early 2012 that Microsoft objected—in this case—to Motorola's efforts to obtain an injunction in Germany, because this case would put an end to Motorola's pursuit of injunctions everywhere. (*See, e.g.*, Dkt. No. 257 at 15.)  Throughout the district court and Ninth Circuit anti-suit injunction proceedings, Motorola never advanced the argument it seems to have settled on now—that its conduct that followed the filing of Microsoft's Amended Complaint is not within the purview of the Court.  Regardless, the Ninth Circuit rejected all of Motorola's arguments and endorsed this Court's exercise of jurisdiction over the issue of Motorola's continued pursuit of injunctions:

> [W]e do hold this much:  The district court's conclusions that Motorola's RAND declarations to the ITU created a contract enforceable by Microsoft as a third-party beneficiary (which Motorola concedes), and that **this contract governs in some way what actions Motorola may take to enforce its ITU standard-essential patents (including the patents at issue in the German suit)**, were not legally erroneous.

*Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 882 (9th Cir. 2012) (emphasis added).

Consistent with Microsoft's Amended Complaint and the parties' course of conduct throughout the litigation, the parties' Joint Proposed Pretrial Order also puts Motorola's continued pursuit of injunctions after February 2011 within the scope of the upcoming trial. Motorola's Factual Contentions in the Proposed Pretrial Order include its filings of the German actions in July 2011, and the fact that Motorola sought an injunction in Germany.  (*See* Dkt. No. 803 at 13.)  Motorola's proposed Issues of Law include whether its "acts of seeking injunctive relief . . . in Germany can be considered a breach of the purported contract[1] with the ITU."  (*Id.* at 15.)  Motorola's statements in the Proposed Pretrial Order are binding, and render Microsoft's lack of prescience in omitting the future July 2011 German suits from the February 2011 Amended Complaint irrelevant.  *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 950 (9th Cir. 1993) ("A pretrial order generally supersedes the pleadings, and the parties are bound by its contents.").

Even leaving aside the pleadings and the Pretrial Order, Fed. R. Civ. P. 15(b)(2) would allow issues not raised in the pleadings to be tried by consent, and the pleadings need not be amended in order to do so.  *See Putz v. Golden*, No. C10–0741JLR, 2012 WL 2565017, at *22 n.

---

[1] Using phrasing like "purported contract," Motorola's recent filings demonstrate an effort to take back its earlier, unequivocal concession that its RAND licensing commitments are contracts enforceable by Microsoft.  *See* Dkt. No. 188 at 10 n. 6 ("On February 13, 2012, the court held a status conference in which Motorola stated on the record that it did not dispute that it entered into the aforementioned binding contractual commitments with the IEEE and the ITU and that Microsoft is a third-party beneficiary of these commitments.").  The Ninth Circuit has already found waiver on this issue.  *See Microsoft*, 696 F.3d at 882 ("Motorola does not dispute that its RAND commitments created a contract that Microsoft can enforce as a third-party beneficiary.").

6 (W.D. Wash. July 2, 2012); 6A Wright, Miller & Kane, *Federal Practice & Procedure* § 1493 (3d. ed). The above-noted statements in Motorola's portions of the Proposed Pretrial Order demonstrate Motorola's express consent to try issues relating to its conduct after the February 2011 Amended Complaint, rendering those issues appropriate for trial.

Moreover, implied consent for the purposes of Rule 15(b) is found when the party opposing trial of the issue "actually produced evidence bearing on the new issue or offered arguments directly contesting the issue." 6A *Federal Practice & Procedure* § 1493. While Motorola has advanced many arguments against Microsoft's damages claim for relocation costs incurred in Germany in early 2012, it has never argued that the claim is not part of the case because the Motorola conduct at issue is not properly before the Court or the jury in the upcoming trial. To the contrary, Motorola has offered proposed testimony from an expert on German law concerning procedures available to Microsoft from July 2011 through the relocation in 2012, and put dozens of documents related to its German litigation in 2011 and onwards on its exhibit list. Motorola also argued as recently as last week that Microsoft's June 2011 letter to the FTC, written months after the Amended Complaint, is relevant to the inquiry into Motorola's good faith in October and November 2010. *See* 7/31/2013 Hearing Tr. 48:18–49:14. The Court has also already rejected Motorola's argument that it was unfairly surprised by the relocation damages claim, which was initially raised by Microsoft in May 2012 soon after the relocation got underway, and confirmed in July 2012. *See* 5/7/2013 Hearing Tr. 3:19–4:4.

Finally, the cases cited by Motorola do not support any argument to keep Motorola's continued pursuit of injunctions from the jury. This continuing course of conduct in the face of this action which would produce everything to which Motorola is entitled is compelling evidence of lack of good faith—i.e., that Motorola's objective was not securing a RAND royalty for its standard essential patents. Both *Gaglidari v. Denny's Restaurants, Inc.*, 117 Wash. 2d 426, 438 (Wash. 1991), and *Bonneview Homeowners Ass'n v. Woodmont Builders, LLC*, 655 F. Supp. 2d 473, 511 (D.N.J. 2009) concern the state of the defendants' knowledge at the time of a particular allegedly wrongful act—whether an employer reasonably believed at the time of dismissal that an employee had committed a fireable offense, or whether a property developer knew at the time in made certain representations that the land it sold was contaminated.

These cases miss the mark for two reasons. First, they concern discrete acts, not a course of conduct. Washington law is clear that the duty of good faith and fair dealing may be breached by a course of conduct. *See Frank Coluccio v. King County*, 150 P.3d 1147, 1154 (Wash. App. 2007) (upholding finding that a defendant breached the duty of good faith and fair dealing where it "pursued a course intended only to protect the County's position and interests, to the detriment of FCCC and DBM. This course continued in the County's later dealings"); *Cavell v. Hughes*, 629 P.2d 927, 929 (Wash. App. 1981) (holding that a defendant "did not proceed in good faith" through a series of actions, including allowing certain false impressions to persist). The issues to be tried include Microsoft's claim that Motorola's course of conduct, through February 2011 and

beyond, constituted a breach of the duty of good faith and fair dealing.  Microsoft's claims are not limited to discrete acts committed in October and November 2010.

      Second, even focusing the events of October and November 2010, the cases Motorola cites do not preclude the introduction of evidence of subsequent conduct that could be used to demonstrate Motorola's intent at that time.  The best evidence of what Motorola intended when it sent the demand letters and filed suits seeking injunctions may well come from its later conduct.  Washington courts commonly look to subsequent conduct to determine the intent of the parties at the time of contracting.  *See, e.g.*, *Newport Yacht Basin Ass'n of Condominium Owners v. Supreme Northwest, Inc.*, 277 P.3d 18, 24–25 (Wash. App. 2012).  If Motorola's offers in October and November 2010 represented a good-faith attempt to enter into a license on RAND terms with Microsoft, why would Motorola continue to pursue injunctions after the point at which it was clear Microsoft had accepted a license on RAND terms as set by the Court?  *C.f. Rosen v. Protective Life Ins. Co.*, 817 F. Supp. 2d 1357, 1375–76 (N.D. Ga. 2011) (Georgia law) ("Fraudulent intent at the time of contracting can be inferred based on subsequent conduct of the defendant that is unusual, suspicious, or inconsistent with what would be expected from a contracting party who had been acting in good faith.").

      Motorola's refusal to give up its pursuit of injunctions and its ongoing failure to acknowledge Microsoft's RAND license are both (1) continuing breaches of Motorola's contractual obligations, as well as (2) evidence of Motorola's intent in sending the October 2010 letters and launching the November 2010 suits.  Under both parties' theories, these issues will be properly before the jury.

      Very truly yours,

      CALFO HARRIGAN LEYH EAKES LLP

      *s/ Arthur W. Harrigan, Jr.*

      Arthur W. Harrigan, Jr.

AWH:src
cc:    All Counsel (via ECF)

**CERTIFICATE OF SERVICE**

I, Susie Clifford, swear under penalty of perjury under the laws of the State of Washington to the following:

1.  I am over the age of 21 and not a party to this action.

2.  On the 7th day of August, 2013, I caused the preceding document to be served on counsel of record in the following manner:

**Attorneys for Motorola Solutions, Inc., and Motorola Mobility, Inc.:**

| | |
|---|---|
| Ralph Palumbo, WSBA #04751 | |
| Philip S. McCune, WSBA #21081 | _____ Messenger |
| Lynn M. Engel, WSBA #21934 | _____ US Mail |
| Summit Law Group | _____ Facsimile |
| 315 Fifth Ave. South, Suite 1000 | __X__ ECF |
| Seattle, WA  98104-2682 | |
| Telephone:  206-676-7000 | |
| Email:  Summit1823@summitlaw.com | |

| | |
|---|---|
| Steven Pepe (*pro hac vice*) | _____ Messenger |
| Jesse J. Jenner (*pro hac vice*) | _____ US Mail |
| Ropes & Gray LLP | _____ Facsimile |
| 1211 Avenue of the Americas | __X__ ECF |
| New York, NY  10036-8704 | |
| Telephone:  (212) 596-9046 | |
| Email:  steven.pepe@ropesgray.com | |
| Email:  jesse.jenner@ropesgray.com | |

| | |
|---|---|
| Norman H. Beamer (*pro hac vice*) | _____ Messenger |
| Ropes & Gray LLP | _____ US Mail |
| 1900 University Avenue, 6th Floor | _____ Facsimile |
| East Palo Alto, CA  94303-2284 | __X__ ECF |
| Telephone:  (650) 617-4030 | |
| Email:  norman.beamer@ropesgray.com | |

| | |
|---|---|
| Paul M. Schoenhard (*pro hac vice*)<br>Ropes & Gray LLP<br>One Metro Center<br>700 12th Street NW, Suite 900<br>Washington, DC  20005-3948<br>Telephone:  (202) 508-4693<br>Email: Paul.schoenhard@ropesgray.com | _____ Messenger<br>_____ US Mail<br>_____ Facsimile<br>___X___ ECF |
| Andrea Pallios Roberts (*pro hac vice*)<br>Brian C. Cannon (*pro hac vice*)<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>555 Twin Dolphin Drive, 5th Floor<br>Redwood Shores, CA 94065<br>Telephone:  (650) 801-5000<br>Email: andreaproberts@quinnemanuel.com<br>Email: briancannon@quinnemanuel.com | _____ Messenger<br>_____ US Mail<br>_____ Facsimile<br>___X___ ECF |
| Kathleen M. Sullivan (*pro hac vice*)<br>David Elihu (*pro hac vice*)<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>51 Madison Ave., 22nd Floor<br>New York, NY 10010<br>Telephone:  (212) 849-7000<br>Email: kathleensullivan@quinnemanuel.com | _____ Messenger<br>_____ US Mail<br>_____ Facsimile<br>___X___ ECF |
| William Price (*pro hac vice*)<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>865 S. Figuera St., 10th Floor<br>Los Angeles, CA 90017<br>Telephone:  (212) 443-3000<br>Email: williamprice@quinnemanuel.com<br>MicrosoftvMotoBreachofRANDCase@quinnemanuel.com | _____ Messenger<br>_____ US Mail<br>_____ Facsimile<br>___X___ ECF |

DATED this 7th day of August, 2013.

s/Susie Clifford