

SUMMIT LAW GROUP
a professional limited liability company

315 Fifth Ave S Suite 1000
Seattle, Washington 98104
phone · 206.676.7000
fax · 206.676.7001

RALPH H. PALUMBO
DID:  (206) 676-7042
EMAIL:  ralphp@summitlaw.com@summitlaw.com

August 16, 2013

The Honorable James L. Robart
United States District Court
Western District of Washington
700 Stewart Street, Suite 14128
Seattle, WA  98101-9906

      Re:    *Microsoft Corp.* v. *Motorola Mobility, Inc.*
             Case No. C10-1823-JLR

Dear Judge Robart:

      Motorola respectfully submits this response to the Court's August 12, 2013 Summary Judgment Order regarding "the legal grounds for Microsoft's assertion that a Motorola-Marvell license would preclude Motorola from seeking a license from Microsoft."  Dkt. 843 at 36.

      Marvell—a chip supplier—is not a party to this lawsuit, and there is no Motorola-Marvell license.  A hypothetical license between Motorola and Marvell may or may not include terms that would pass thru license rights to Marvell customers; that is a matter for private contracting parties.  Microsoft lacks standing to enforce any rights Marvell may have as a third party beneficiary of Motorola's RAND commitments, and there is no legal basis for Microsoft to now attempt to claim benefits under a hypothetical Motorola-Marvell agreement.

      (1)    **A Motorola-Marvell license would not preclude Motorola from seeking a license from Microsoft under the doctrine of patent exhaustion**

      First, the U.S. doctrine of patent exhaustion does not dictate that a contract or license between Motorola and Marvell would preclude Motorola from seeking to license Microsoft.  Under the doctrine of patent exhaustion, "[t]he ***authorized*** sale of an article that substantially embodies a patent exhausts the patent holder's rights and prevents the patent holder from invoking patent law to control postsale use of the article."  *Quanta Computer, Inc. v. LG Electronics, Inc.*, 128 S. Ct. 2109, 2122 (2008) (emphasis added).

The Honorable James L. Robart
August 16, 2013
Page 2

This necessarily means that, in the patent licensing context, exhaustion is limited to licensed sales.

For example, territoriality issues may result in Marvell and Microsoft each requiring a license of different scope: Federal Circuit precedent has long held that U.S. patent rights are not exhausted by products of a foreign provenance, and the Federal Circuit has confirmed that *Quanta* did not eliminate the first sale rule's territoriality requirement. *Ninestar Technology Co., Ltd. v. Int'l Trade Comm'n*, 667 F.3d 1373, 1378 (Fed. Cir. 2012), rehearing en banc denied (citing *Jazz Photo Corp. v. U.S. Int'l Trade Comm'n*, 264 F.3d 1094, 1105 (Fed. Cir. 2001); *Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1371 (Fed. Cir. 2010)). Likewise, Motorola and Marvell may agree to a defensive suspension clause or other provision limiting which of Marvell's sales are "authorized" sales—in that case, Microsoft may require its own license.

### (2) Whether a Motorola-Marvell license bars Motorola from also licensing Microsoft depends on the specific terms of that agreement

Second, a Motorola-Marvell license would not necessarily preclude Motorola from also seeking to license Microsoft because whatever rights Microsoft would have under such an agreement would be limited based on the terms of that agreement. Though Motorola has committed to license its patents on RAND terms and conditions, its RAND commitments do not dictate the specific terms for a RAND license; those are left to the licensor and the licensee to negotiate. Freedom of contract principles dictate that Motorola and Marvell would be free to agree to whatever terms they want. *See, e.g., Keystone Land & Development Co. v. Xerox Corp.*, 94 P.3d 945, 948 (Wash. 2004) ("Under the principle of freedom to contract, parties are free to enter into, and courts are generally willing to enforce, contracts that do not contravene public policy."); *see also Chicago Title Ins. Co. v. Washington State Office of Ins. Com'r*, case no. 87215-5, --- P.3d ----, 2013 WL 3946060, *12 (Wash. Aug. 1, 2013) (J.M. Johnson, J., dissenting) ("In Washington State, the freedom of contract is one of our most highly prized liberties. Indeed, impairment of contracts is constitutionally prohibited in article I, section 23 of the Washington Constitution."). Patent license agreements in particular may be complex and involve many terms and conditions beyond the license grant and monetary component.

A plain reading of the terms of the SDO policies and commitments at issue confirms that Motorola's RAND commitments would not bar Motorola and Marvell from entering an agreement that would limit Microsoft's pass-through rights. The RAND contracts at issue do not dictate all terms for a RAND license; those terms are left to the parties to negotiate. Though Microsoft will likely argue that Motorola's RAND commitments would bar Motorola and Marvell from structuring a license agreement such that Microsoft would not receive a license, or to include a defensive suspension provision or other termination provision, Microsoft presented no evidence in its summary judgment

The Honorable James L. Robart
August 16, 2013
Page 3

briefing that RAND contracts require particular terms between a patent owner and a parts supplier.

Defensive suspension provisions are common in patent license agreements, including RAND agreements. Indeed, Microsoft itself has acknowledged that "[w]hile there is no exhaustive list of traditional RAND licensing terms, in addition to a possible compensation element, such terms may include a field-of use restriction, reciprocity, non-sublicensability, defensive suspension and other common patent licensing considerations." Ex. A (Trial Ex. 2970) at MOTM_WASH1823_0054681. Under Microsoft's own logic, Motorola and Marvell could have agreed to a defensive suspension clause under which Marvell may have been barred from selling licensed chipsets to Microsoft after Microsoft initiated litigation against Motorola. *See, e.g.,* Ex. B (Bench Tr., Day 6, Dailey) 46:21-48:1. Likewise, Motorola and Marvell could have agreed to other provisions allowing for termination of Microsoft's pass-through rights under certain circumstances. Thus, the scope of Microsoft's pass-through rights under a Motorola-Marvell license agreement depends on what terms Motorola and Marvell would have agreed to.

### (3) Microsoft lacks standing to claim Motorola breached RAND commitments to Marvell

Third, the IEEE RAND contract contains no provision entitling an implementer to a license from a supplier, as Microsoft seeks to enforce here. If there is a dispute concerning Motorola's RAND commitment to Marvell, that is an issue for Marvell to raise. Marvell is not a party in this case, and Microsoft has no standing to make arguments on behalf of Marvell. Microsoft cannot establish that it is a third party beneficiary of another third party beneficiary of the RAND commitment. The burden ought to be on Microsoft to establish standing to raise any Marvell issues, and Microsoft has not come forward to date with any legal basis to support such a claim.[1]

Respectfully,

SUMMIT LAW GROUP PLLC


*/s/ Ralph H. Palumbo*
Ralph H. Palumbo

Enclosures
cc: All Counsel of Record

---

[1] Microsoft has never proposed a jury instruction explaining its legal basis for including Marvell in this trial, despite the burden being on Microsoft and thus ought to have waived its rights on this point. The Court has invited the parties to provide jury instructions on Marvell. Dkt. 843 at 36. However, Motorola does not know the legal basis for Microsoft's claim and has no jury instruction from Microsoft to which to respond. Motorola reserves its rights to respond to any Marvell instruction Microsoft may propose.