The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation,<br><br>                 Plaintiff,<br><br>     v.<br><br>MOTOROLA, INC., and MOTOROLA MOBILITY LLC, and GENERAL INSTRUMENT CORPORATION,<br><br>                 Defendants. | CASE NO. C10-1823-JLR<br><br>DEFENDANTS' REVISED PROPOSED PRELIMINARY INSTRUCTIONS |

**Preliminary Jury Instruction No. 2 (Summary of claims and defenses)**

       **Motorola's proposed instruction:**

       To help you follow the evidence, I will give you a brief summary of the positions of the parties:

       This is a breach of contract case brought by Microsoft Corporation against Motorola, Inc., Motorola Mobility, Inc., and General Instrument Corporation. When this lawsuit was initiated, Motorola, Inc. had as subsidiaries Motorola Mobility, Motorola Solutions, and General Instrument.  After this lawsuit was initiated, Motorola, Inc. changed its corporate name to Motorola Solutions, and Motorola Mobility and General Instrument were spun off as separate companies.  You may also hear or see some evidence referring to a company called Symbol Technologies, Inc.; Symbol was acquired by Motorola, Inc., in 2007, and is now a wholly owned subsidiary of Motorola Solutions.  I will refer to all of these companies collectively as "Motorola." [1]

       Microsoft's claims arise out of commitments that the Motorola entities made to two international standard-setting organizations or "SSOs", the Institute of Electrical Electronics Engineers which is called "I-triple-E," and the International Telecommunications Union, which will be referred to as "ITU."  These organizations bring together engineers from leading companies to share their latest technologies to develop better ways of communicating; what results from these SSO meetings are the standards that are published and shared with the industry.  This case involves two standards: an IEEE wireless local area network standard called the 802.11 standard, and an ITU advanced video coding technology standard called the H.264 standard.  Both of these standards incorporate patented technology from the various companies that participate.  As well as ensuring that the best technology is used, SSOs allow companies to agree on common protocols so that compliant products will work together.   [2] The SSOs want to encourage adoption of the standards.  [3]

DEFENDANTS' REVISED PROPOSED
PRELIMINARY INSTRUCTIONS - 2
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

For a company to practice the standard, it is necessary for that company to utilize technology that is covered by one or more patents.  Patents that are essential to the standard (in that they must be practiced to accomplish the standard) are known as standard essential patents, or SEPs.  Standard setting organizations seek commitments from the owners of SEPs to license their patents to users of the standard on reasonable and non-discriminatory terms, which is referred to as "RAND."  The various Motorola entities own patents that are essential to the 802.11 and H.264 standards and committed to license them on RAND terms.  [4]   The IEEE and ITU do not define what RAND licensing terms are, but leave the negotiation of such terms to the parties involved.  [5]

The Court has determined that Motorola's commitments to the IEEE and ITU are contracts and that Microsoft is a third-party beneficiary of those contracts.  In this case, Microsoft claims that Motorola breached each of those contracts by violating the covenant of good faith and fair dealing that is implied in those contracts.  Specifically, Microsoft alleges that each of the Motorola entities breached its duty of good faith under a contract with the IEEE by the following actions:

— sending a letter on October 21, 2010 offering to license Motorola's 802.11 standard essential patents on RAND terms;

— filing lawsuits and seeking injunctive relief based on 802.11 standard-essential patents in the International Trade Commission and United States district courts;

— not executing a license agreement covering their 802.11 standard-essential patents with Marvell, a third party to this action.

Microsoft has the burden of proving these claims.

Microsoft alleges that each of the Motorola entities breached a contract with the ITU by the following actions:

DEFENDANTS' REVISED PROPOSED
PRELIMINARY INSTRUCTIONS - 3
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    — sending a letter on October 29, 2010 offering to license Motorola's H.264 standard

2    essential patents on RAND terms;

3    — filing lawsuits and seeking injunctive relief based on H.264 standard-essential patents

4    in the International Trade Commission, United States district courts, and/or Germany.

5    Microsoft has the burden of proving these claims.

6    Motorola denies that any of its conduct in this case constituted a breach of its RAND

7    commitments and denies that it violated any duty of good faith and fair dealing implied in any

8    contracts it made with the IEEE and ITU to license its SEPs to Microsoft on RAND terms.

9    Motorola also denies that any of its conduct in this case caused Microsoft damage.  Motorola

10   also contends that Microsoft has not taken reasonable steps to mitigate any damages it may have

11   suffered as it is required to do in a contract action.

15   **Authority in support of instruction:**   Ninth Circuit Manual of Model Jury Instructions,

16   Civil § 1.2 (2007) ("Ninth Circuit Model"). The background discussion regarding standard

17   setting organizations and Microsoft's claims is consistent with the Court's discussion of the

18   factual background in its April 19, 2013 Findings of Fact and Conclusions of Law (Dkt. 673 at 3-

19   4).  Motorola's inclusion of this factual background does not waive its right to continue to assert

20   that the April 19, 2013 Findings of Fact and Conclusions of Law are not evidence that should be

21   place before the jury in the August 2013 breach of contract trial. *See also* [1] Dkt. 673 ¶¶ 2-4, 6-

22   7; [2]_ Dkt. 673 ¶ 16; [3] Dkt. 673 ¶¶ 11-13; [4] Dkt. 673 ¶¶ 35; and [5] Dkt. 673 ¶ 32.

DEFENDANTS' REVISED PROPOSED
PRELIMINARY INSTRUCTIONS - 4
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

2

**Preliminary Instruction No. 2A (RAND Rate and Range)[1]**

3

In determining whether Motorola breached its duty of good faith and fair dealing by

4

sending letters to Microsoft offering to license its SEPs on RAND terms, you may wish to

5

consider the conclusions I have made in an earlier phase of this case that involved only me and

6

the lawyers and not you, the jury.  In that phase of the case I reviewed evidence from many

7

months of discovery and six days of trial, and as well as numerous written submissions from the

8

parties on how the Court should interpret the evidence.  In that trial, which did not determine the

9

issues before you in this phase of the case, I concluded that had Motorola and Microsoft engaged

10

in a hypothetical negotiation of a RAND license to Motorola's H.264 SEP portfolio, they would

11

have arrived at a RAND royalty rate for Motorola's H.264 SEP portfolio that would have been

12

0.555 cents per unit, with the upper bound of a RAND royalty for Motorola's H.264 SEP

13

portfolio being 16.389 cents per unit and the lower bound 0.555 cents per unit.  This rate and

14

range would have been applicable to both Microsoft Windows and Xbox products.  For all other

15

Microsoft products using the H.264 Standard, the royalty rate arrived at in a hypothetical

16

negotiation would have been the lower bound of 0.555 cents.

17

I also concluded in that previous trial that, if Motorola and Microsoft had engaged in a

18

hypothetical negotiation of a RAND license to Motorola's 802.11 SEP portfolio, the RAND

19

royalty rate for Motorola's 802.11 SEP portfolio would have been 3.471 cents per unit, with the

20

upper bound of a RAND royalty for Motorola's 802.11 SEP portfolio being 19.5 cents per unit

21

22

23

24

25

26

---

[1]  Motorola proposes this instruction at the Court's express request from the bench at the Pretrial conference on August 13, 2013.  In doing so, Motorola does not waive its objection to any instruction given to the jury related to the Court's Findings of Facts and Conclusions of Law in the April 19, 2013 order (Dkt. 673).  Motorola maintains that any instruction on the April 19 Order is improper and incorporates by reference the arguments in Motorola's motion in limine filed July 29, 2013 (Dkt. 797), which the Court denied in an oral ruling on August 13, 2013.  A materially similar version of this instruction was offered in that motion in limine as an alternative in the event the motion was denied. (*Id*. at 10-11).

DEFENDANTS' REVISED PROPOSED
PRELIMINARY INSTRUCTIONS - 5
CASE NO. C10-1823-JLR

and the lower bound 0.8 cents per unit.  This rate and range would have been applicable to Microsoft Xbox products. For all other Microsoft products using the 802.11 Standard, the royalty rate would have been the low bound of 0.8 cents per unit.

In the prior phase of the trial, I did not examine whether Motorola breached its commitments to provide Microsoft a license to its standard essential patents on RAND terms, and I did not examine whether Motorola acted in good faith with respect to those commitments. I have not made a decision on those issues.  Those issues are for you to decide based upon the evidence you will hear in this trial.  Moreover, some of the information I considered in reaching my determination was confidential and was not available to Motorola in 2010.

DEFENDANTS' REVISED PROPOSED
PRELIMINARY INSTRUCTIONS - 6
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

**Preliminary Instruction No. 18 and Final Instruction No. 11 (Stipulated Facts)**

The following facts are not in dispute and should be considered as true:

Motorola's RAND commitment arises out of its relationship with two international standard-setting organizations ("SSOs"), the Institute of Electrical Electronics Engineers ("IEEE") and the International Telecommunication Union ("ITU"). These organizations create standards for use in designing and manufacturing technology products. These organizations bring together engineers from leading companies to share their latest technologies to develop better ways of communicating; what results from these SSO meetings are the standards that are published and shared with the industry. As well as ensuring that the best technology is used, SSOs allow companies to agree on common protocols so that compliant products will work together. The SSOs want to encourage adoption of the standards. [1]

Two standards are at issue in this case. The 802.11 Standard is a wireless communications standard known as "Wi-Fi." The 802.11 Standard comprises a set of standards that allow for companies to build products to a set of specifications for wireless local area networking and is used in most homes with wireless internet. [2] Currently, the 802.11 Standard is the most widely used and universally accepted wireless communications standard for ordinary consumer and business use. Most homes do not have wired networks, and instead rely on 802.11 networks because 802.11 networks do not require the user to place cables all over the home. [3]

The H.264 Standard is a video coding standard and currently the most widely used video coding format. [4] Video compression is the process of transforming video into compressed video that requires less data storage than the original uncompressed video. [5] Video compression is important because modern digital video, particularly high definition video, requires large amounts of data storage. [6] Encoding compresses the original uncompressed video by turning it into a smaller file or stream that requires less storage capacity and less

DEFENDANTS' REVISED PROPOSED
PRELIMINARY INSTRUCTIONS - 7
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

bandwidth to transmit. Decoding turns an encoded smaller file back into an approximation of the original, uncompressed video. [7]

Both of these standards incorporate patented technology.  For a company to practice the standard, it is necessary for that company to utilize technology that is covered by one or more patents.  Patents that are essential to the standard (in that they must be practiced to accomplish the standard) are called standard essential patents, or "SEPs."  [8]

In the ITU, an SEP holder has three options for patents incorporated into the standard: (1) the patent holder may commit to license its essential patent(s) on a royalty-free basis; (2) the patent holder may commit to license its essential patent(s) on RAND terms and conditions; or (3) the patent holder may decline to make any licensing commitment.  [9]  Under ITU policy, when a patent holder has conditioned its licensing commitment on reciprocity, "the Patent Holder shall only be required to license any prospective licensee if such prospective licensee will commit to license its essential patent(s) or essential patent claim(s) for implementation of the same above document free of charge or under reasonable terms and conditions."  [10]   If the owner of a declared essential patent declines to make a RAND or royalty-free licensing commitment, the ITU policy indicates that the approved standard "shall not include provisions depending on the patent." [11]

Under the IEEE, an SEP holder may provide either "[a] general disclaimer to the effect that the Submitter without conditions will not enforce any present or future Essential Patent Claims" or "[a] statement that a license for a compliant implementation of the standard will be made available to an unrestricted number of applicants on a worldwide basis without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination."  [12]

Motorola made its RAND commitments to the IEEE and the ITU by submitting  a "Letter of Assurance," or an "LOA" for short.  [13]  Motorola submitted LOAs to the IEEE in relation to

DEFENDANTS' REVISED PROPOSED
PRELIMINARY INSTRUCTIONS - 8
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

the 802.11 Standard and ITU in relation to the H.264 Standard.  With these LOAs, Motorola agreed to grant, on reasonable terms and conditions, licenses to its essential patents on a worldwide and non-discriminatory basis, also known as RAND.  [14]

The IEEE and ITU do not define what constitutes RAND terms and conditions.  Further, the organizations do not attempt to determine what constitutes a reasonable royalty rate or what other terms and conditions are reasonable or nondiscriminatory for any license between interested parties. [15]  With respect to licensing arrangements for SEPs, the ITU Common Patent Policy provides that "[t]he detailed arrangements arising from patents (licensing, royalties, etc.) are left to the parties concerned, as these arrangements might differ from case to case" and that "negotiations are left to the parties concerned and are performed outside the [ITU]."  [16] IEEE-SA Standards Board Bylaws state that "[n]o license is implied by the submission of a Letter of Assurance" and that "[t]he IEEE is not responsible . . . for determining whether any licensing terms or conditions provided in connection with submission of a Letter of Assurance, if any, or in any licensing agreements are reasonable or non-discriminatory."   [17] The parties attempting to reach an agreement would consider the overall licensing landscape in existence vis-à-vis the standard and the implementer's products and would not conduct a RAND negotiation in a vacuum.  [18] Typically, the SEP owner and the potential licensee determine RAND terms, including the royalty rate, through good-faith, bilateral negotiations, which take place independent of ITU and IEEE's activities.  [19]

On October 1, 2010, Microsoft filed a patent infringement suit against Motorola in the ITC (*Certain Mobile Devices, Associated Software, and Components Thereof*, Investigation No. 337-TA-744) ("ITC 744 Action"), alleging infringement by Motorola's Android smartphones. Microsoft alleged infringement of certain of Microsoft's patents related to its ActiveSync technology, as well as other patents.  Microsoft sought an exclusion order, which is similar to an injunction in that it bans sales of a product found to infringe.

DEFENDANTS' REVISED PROPOSED
PRELIMINARY INSTRUCTIONS - 9
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

On October 2, 2010, Microsoft filed a patent infringement suit against Motorola in the Western District of Washington (*Microsoft Corp. v. Motorola, Inc.*, Case No. 2:10-cv-1577-RSM ("1577 Action"), alleging infringement by Motorola's Android smartphones.  The patents at issue are the same as in the ITC 744 action.

On November 9, 2010, Microsoft filed the complaint in this case alleging, among other things, breach of contract.

On November 10, 2010, Motorola filed two patent infringement suits (*Motorola Mobility, Inc. and General Instrument Corp. v. Microsoft Corp.*, Case No. 3:10-cv-699 ("699 Action") and *Motorola Mobility, Inc. and General Instrument Corp. v. Microsoft Corp.*, Case No. 3:10-cv-700 ("700 Action")) against Microsoft in the Western District of Wisconsin, alleging infringement of certain Motorola 802.11 and H.264 SEPs.

On November 22, 2010, Motorola filed a patent infringement suit against Microsoft in the ITC (*In the Matter of Certain Gaming and Entertainment Consoles, Related Software, and Components Thereof*, Investigation No. 337-TA-752 ("ITC 752 Action").  The patents at issue were the same as those that were ultimately at issue in the 700 Action.  Motorola sought an exclusionary order.

On July 6 and 7, 2011, General Instrument Corp. filed four patent infringement suits against Microsoft in Germany, alleging infringement of two H.264 SEPs.  Motorola sought injunctive relief.  *General Instrument Corp. v. Microsoft Deutschland GmbH*, Mannheim District Court Case No. 2 O 240/11; *General Instrument Corp. v. Microsoft Deustchland GmbH*, Mannheim District Court Case No. 2 O 373/11; *General Instrument Corp. v. Microsoft Corp. and Microsoft Ireland Operations Ltd.*, Mannheim District Court Case No. 2 O 376/11; *General Instrument Corp. v. Microsoft Ireland Operations Ltd.*, Mannheim District Court Case No. 2 O 387/11.

DEFENDANTS' REVISED PROPOSED
PRELIMINARY INSTRUCTIONS - 10
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  On September 30, 2011, Microsoft stated in a court filing that it "is seeking, and remains

2  ready and willing to take, a license to Motorola's H.264 and 802.11 declared-essential patents on

3  RAND terms."

4  On February 27, 2012, the Court found that Motorola entered into binding contracts with

5  the IEEE and ITU and that Microsoft is a third party beneficiary of those contracts.

6  On April 25, 2012, an Initial Determination by an Administrative Law Judge was issued

7  by the ITC 752 Action, finding that Microsoft infringed certain of Motorola's H.264 and 802.11

8  SEPs.

9  On May 2, 2012, the Mannheim District Court in Germany found that Microsoft

10  infringed Motorola's H.264 SEPs. [20]

11

12

13

14

15

16

17

18

19

20  **Authority for Instruction:**   The background discussion regarding standard setting

21  organizations is consistent with the Court's discussion of the factual background in its April 19,

22  2013 Findings of Fact and Conclusions of Law.  Motorola's inclusion of this factual background

23  does not waive its right to continue to assert that the April 19, 2013 Findings of Fact and

24  Conclusions of Law are not evidence that should be place before the jury in the August 2013

25  breach of contract trial.  *See also* [1] Dkt. 673 at 3:1-7, [2] Dkt. 673, ¶ 308, [3] Dkt. 673, ¶ 323,

26

DEFENDANTS' REVISED PROPOSED
PRELIMINARY INSTRUCTIONS - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

[4] Dkt. 673, ¶ 129, 133, [5] Dkt. 673, ¶ 114, [6] Dkt. 673, ¶ 115,  [7] Dkt. 673, ¶ 116,  [8] Dkt. 673 at 3:13-17, [9] Dkt. 673, ¶ 30, [10] Dkt. 673, ¶¶ 34, 41,  [11] Dkt. 673, ¶ 31, [12] Dkt. 673, ¶ 41, [13] Dkt. 673, ¶29, [14] Dkt. 673, ¶¶ 36, 44, [15] Dkt. 673, ¶¶49, 50, [16] Dkt. 673, ¶¶49, 50, [17] Dkt. 673, ¶ 45, [18] Dkt. 673, ¶ 112, [19] Dkt. 673, ¶85, and [20] Dkt. 96, 188, 210, 335, 850, 852.

DEFENDANTS' REVISED PROPOSED
PRELIMINARY INSTRUCTIONS - 12
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    DATED this 19th day of August, 2013.

2                                Respectfully submitted,

3                                SUMMIT LAW GROUP PLLC

4                                By */s/ Ralph H. Palumbo*

5                                By */s/ Philip S. McCune*
                                  Ralph H. Palumbo, WSBA #04751

6                                   Philip S. McCune, WSBA #21081
                                  *ralphp@summitlaw.com*

7                                   *philm@summitlaw.com*

8                                By */s/ Thomas V.  Miller*

9                                   Thomas V. Miller
                                  MOTOROLA MOBILITY LLC

10                                600 North U.S. Highway 45
                                  Libertyville, IL  60048-1286

11                                (847) 523-2162

12                                QUINN EMANUEL URQUHART &
                               SULLIVAN, LLP

13

14                                By */s/ Kathleen M. Sullivan*
                                  Kathleen M. Sullivan, NY #1804624

15                                   51 Madison Ave., 22nd Floor
                                  New York, NY 10010

16                                (212) 849-7000
                                  *kathleensullivan@quinnemanuel.com*

17                                By */s/ Brian C. Cannon*

18                                   Brian C. Cannon, CA #193071
                                  555 Twin Dolphin Drive, 5th Floor

19                                Redwood Shores, CA 94065

20                                (650) 801-5000
                                  *briancannon@quinnemanuel.com*

21

22

23

24

25

26

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

By */s/ William C. Price*

William C. Price, CA #108542
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
*williamprice@quinnemanuel.com*

**Attorneys for Motorola Solutions, Inc.,
Motorola Mobility LLC and General
Instrument Corp.**

DEFENDANTS' REVISED PROPOSED
PRELIMINARY INSTRUCTIONS - 14
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Arthur W. Harrigan, Jr., Esq.
Christopher T. Wion, Esq.
Shane P. Cramer, Esq.
Calfo Harrigan Leyh & Eakes LLP
*arthurh@calfoharrigan.com*
*chrisw@calfoharrigan.com*
*shanec@calfoharrigan.com*

Richard A. Cederoth, Esq.
Brian R. Nester, Esq.
David T. Pritikin, Esq.
Douglas I. Lewis, Esq.
John W. McBride, Esq.
William H. Baumgartner, Jr., Esq.
David C. Giardina, Esq.
Carter G. Phillips, Esq.
Constantine L. Trela, Jr., Esq.
Ellen S. Robbins, Esq.
Nathaniel C. Love, Esq.
Sidley Austin LLP
*rcederoth@sidley.com*
*bnester@sidley.com*
*dpritikin@sidley.com*
*dilewis@sidley.com*
*jwmcbride@sidley.com*
*wbaumgartner@sidley.com*
*dgiardina@sidley.com*
*cphillips@sidley.com*
*ctrela@sidley.com*
*erobbins@sidley.com*
*nlove@sidley.com*

T. Andrew Culbert, Esq.
David E. Killough, Esq.
Microsoft Corp.
*andycu@microsoft.com*
*davkill@microsoft.com*

DATED this 19th day of August, 2013.

/s/ *Marcia A. Ripley*
_____
Marcia A. Ripley

DEFENDANTS' REVISED PROPOSED
PRELIMINARY INSTRUCTIONS - 15
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001