HONORABLE JAMES L. ROBART

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>       Plaintiff,<br><br> v.<br><br>MOTOROLA, INC., et al.,<br><br>       Defendants. | No. C10-1823-JLR<br><br>MICROSOFT'S PROPOSED MODIFICATIONS TO PRELIMINARY JURY INSTRUCTION NO. 2 |
| MOTOROLA MOBILITY, LLC, et al.,<br><br>       Plaintiffs,<br><br> v.<br><br>MICROSOFT CORPORATION,<br><br>       Defendant. | |

   Pursuant to the Court's request during the August 23, 2013 teleconference, Microsoft submits its proposed modifications to the Preliminary Instruction No. 2 that was sent to the Parties on Wednesday, August 21, 2013.  Proposed additions are **bold-faced and underlined**, and proposed deletions are **bold-faced and stricken through**.

MICROSOFT'S PROPOSED MODIFICATIONS
TO PRELIMINARY INSTRUCTION NO. 2 - 1

**No. C10-1823**

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

**Microsoft's Proposed Modification to Court-Provided Preliminary Instruction No. 2**

This case is being conducted in two phases.  This is the second phase.  The first phase was what is called a "bench trial."  In a bench trial, there is no jury, only a judge (in this case me) who listens to evidence presented by the parties and makes certain factual findings and legal rulings.  You must follow the legal rulings I made in that trial and accept as true the facts that I found.  In this preliminary instruction, I will inform you of some of these earlier rulings.  Moreover, witnesses and counsel may refer to these earlier rulings from time to time during the trial.   Importantly, in the prior trial, I did not examine the issues that are before you in this phase of the trial.  The issues before you are for you, and you alone, to decide based on the evidence you will hear.

## Introduction and Overview of Case

I will start with a general overview case.  This is a breach of contract case between Microsoft Corporation, the plaintiff, and defendants Motorola, Inc., Motorola Mobility, Inc., and General Instrument Corporation.  I will refer to all of these defendants as "Motorola."

Motorola and Microsoft participate in international organizations that set technical standards, called "standard setting organizations."  Standard setting organizations define standard ways of performing certain functions so that different products can interact, or interoperate, with each other.  These organizations bring together scientists and engineers from leading companies to share technologies to develop improved technology standards.  Companies that participate in standard setting organizations agree on common technologies so that products complying with the standards will work together.  The agreed standards are published and shared with the industry.  The standard setting organizations hope to achieve widespread industry adoption of the agreed standards.

There are many standard setting organizations, and many technology standards.  This case concerns two standard setting organizations and two technical standards.  The first

MICROSOFT'S PROPOSED MODIFICATIONS
TO PRELIMINARY INSTRUCTION NO. 2 - 2

No. C10-1823

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1   organization is called the Institute of Electrical and Electronics Engineers, which is called "I-

2   triple-E" for short.  The IEEE defines a standard for wireless communications called the

3   "802.11 standard," which you might be familiar with as "WiFi."  The second organization is

4   the International Telecommunication Union, called the "ITU."  The ITU defines a standard for

5   video coding technology, called the "H.264 standard."

6          Some of the technology in these standards is not patented, and therefore available for

7   public use.  However, each of these standards includes some technology that is covered by

8   patents.  Patents that are used, or infringed, when products are built to comply with a standard

9   are called "standard essential patents."  These patents are called "essential" patents because it

10  is not possible to build a product that complies with the standard without infringing the patents.

11          Standard setting organizations want companies and consumers to adopt the agreed

12  standards.  To encourage widespread adoption, these organizations seek contractual

13  commitments from the owners of standard essential patents.  Based on these commitments, the

14  owners of the standard essential patents are contractually required to license those patents to

15  anyone that wants to use the standard on what are called "RAND" terms.  The term "RAND"

16  stands for "reasonable and non-discriminatory."

17          Motorola owns patents that are essential to the 802.11 and H.264 standards and

18  Motorola has committed to the IEEE and the ITU to grant licenses on RAND, again,

19  reasonable and non-discriminatory, terms to anyone and everyone who wants to use the

20  standards.  The court has determined that Motorola's commitments to the IEEE and ITU are

21  enforceable contracts, and Microsoft—as a user of the 802.11 and H.264 standards—is entitled

22  to enforce these contracts in court.  Microsoft claims that Motorola breached these contracts.

23  The following are some of the facts that relate to Microsoft's claims.

24

25

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1

2

3

4

On October 21, 2010, Motorola sent Microsoft a letter seeking royalty payments in exchange for a license to Motorola's 802.11 standard essential patents.  On October 29, 2010, Motorola sent a similar letter seeking royalty payments in exchange for a license **to** its H.264 standard essential patents.

5

6

7

8

9

10

11

12

13

On November 9, 2010, Microsoft filed this lawsuit against Motorola, asserting, among other things, that Motorola breached its contracts with the IEEE and the ITU ~~by contained in these letters~~ **by making the royalty demands contained in these letters**.  After this case was filed, Motorola filed patent infringement lawsuits against Microsoft for using Motorola's standard essential patents.  In those lawsuits, Motorola sought injunctions.  An injunction is an order from a court that requires someone to stop doing something.  Motorola was seeking injunctions that would stop Microsoft from selling products that use either the 802.11 or H.264 standard, including Windows and Xbox.

14

15

16

17

18

19

20

The issue in this case is breach of contract.  Microsoft claims that Motorola breached ~~the IEEE and ITU contracts by violating the covenant of good faith and fair dealing that is implied in those contracts~~ **its commitments to provide Microsoft a license to Motorola's standard essential patents on RAND terms, and breached the covenant of good faith and fair dealing with respect to those commitments.**  Specifically, Microsoft alleges that Motorola breached **its RAND commitment and** its duty of good faith and fair dealing under the IEEE contract by the following actions:

21

22

-    By the terms contained in the October 21, 2010 letter offering to license Motorola's 802.11 standard essential patents;

23

24

-    Seeking injunctive relief in lawsuits based on standard essential patents; and

25

MICROSOFT'S PROPOSED MODIFICATIONS
TO PRELIMINARY INSTRUCTION NO. 2 - 4

**No. C10-1823**

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700    FAX, (206) 623-8717

- Not executing a license agreement covering its 802.11 standard essential patents with a company named Marvell, Microsoft's WiFi chip supplier.

Similarly, Microsoft alleges that Motorola breached **its RAND commitment and** its duty of good faith and fair dealing under the ITU contract by the following actions:

- By terms contained in the October 29, 2010 letter offering to license Motorola's H.264 standard essential patents; and

- Seeking injunctive relief in lawsuits based on standard essential patents.

Microsoft has the burden of proving these claims.

Motorola denies that any of its conduct constituted a breach of its RAND commitments and denies that it violated any duty of good faith and fair dealing implied its contracts with the IEEE and the ITU.  Motorola also denies that any of its conduct in this case caused Microsoft damages.  Motorola also contends that Microsoft has not taken reasonable steps to mitigate any damage it may have suffered.

## Hold Up and Stacking

Having given you this general overview, I will now provide you additional detail on some of the concepts that are important to this case.  The owner of a patent that is not a standard essential patent may grant licenses to other companies, permitting them to sell products that include the patent owner's patented technology.  Such licenses may require the payment of a "licensing fee," which is sometimes called a "royalty" payment.  If the patent is not a "standard essential patent," then the owner of the patent can charge as much as it wants for a license.  If the price is too high, the other companies can just walk away and not use the patents.

MICROSOFT'S PROPOSED MODIFICATIONS
TO PRELIMINARY INSTRUCTION NO. 2 - 5

No. C10-1823

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

There are different rules regarding standards and standard essential patents.  When a standard becomes widely implemented or adopted, the owner of a standard essential patent could have substantial leverage to demand excessive royalties.  Indeed, there may have been alternatives to the patented technology available when the standard was agreed to, but after the standard is widely adopted by the industry, switching to those alternatives is either no longer viable or would be too expensive.  The ability of an owner of a standard essential patent to demand more than the value of its patented technology, and to attempt to capture value that comes from the standard, is called "hold-up."  Hold-up can undermine the standard-setting process and threaten the adoption of valuable standards.

Another issue with standards and standard essential patents is called "royalty stacking," which occurs when many different holders of standard essential patents seek excessive royalty payments for a given standard.  If there are a large number of owners of standard essential patents for a given standard, the total royalty payments might make the product too expensive to make and sell, and undermine the standard.  Complex industry standards like H.264 and 802.11 can require the use of hundreds or thousands of standard essential patents held by dozens of patent holders.  Stacking concerns arise if the total "stack" of royalty payments would make use of the standard too expensive and the standard would potentially fail in the market.  Royalty stacking can be an even bigger problem for products that must comply with multiple standards.  The RAND commitment seeks to prevent royalty stacking and ensures that the aggregate royalties associated with a given standard are reasonable.

## RAND Licensing Commitments

To address the problems of hold up and stacking, many standard setting organizations, including the IEEE and ITU, have adopted rules relating to the licensing of essential patents.

MICROSOFT'S PROPOSED MODIFICATIONS      No. C10-1823
TO PRELIMINARY INSTRUCTION NO. 2 - 6

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700    FAX, (206) 623-8717

1  Their policies require or encourage companies participating in the standard setting process to

2  agree to license their standard essential patents on "reasonable and non-discriminatory" or

3  RAND terms to anyone who requests a license.  These agreements are contracts called RAND

4  commitments.

5      The purpose of these contracts is to encourage widespread adoption of the standard and

6  prevent hold up and royalty stacking.  RAND commitments address the hold-up problem

7  because a RAND commitment limits a patent holder to a reasonable royalty on the economic

8  value of its patented technology alone, not any of the value of the standard.  RAND

9  commitments address the stacking problem by ensuring that the total royalties for all standard

10 essential patents within any standard are reasonable and non-discriminatory.

11                                        **The Standards at Issue**

12     As I said earlier, this case concerns two standards called 802.11 and H.264.  The 802.11

13 standard is a wireless communication standard developed over many years by the IEEE, and

14 you may know it by its more common name of "WiFi."  The H.264 standard is a video coding

15 compression standard.  Popular examples of technologies that use the H.264 video

16 compression standard include Blu-ray movies and YouTube videos.  Two different standard

17 setting organizations were involved in developing the H.264 standard, but for simplicity, I will

18 refer to H.264's standard setting organizations as just "ITU."

19     The 802.11 standard allows companies to build products for wireless local area

20 networking of computers and other electronic devices.  If you have a home "WiFi" network, a

21 computer chip in your laptop uses the 802.11 standard to connect to that network and, through

22 it, to the Internet.  The 802.11 standard is the most widely used and universally accepted

23 wireless communications standard for ordinary consumer and business use.

MICROSOFT'S PROPOSED MODIFICATIONS     **No. C10-1823**
TO PRELIMINARY INSTRUCTION NO. 2 - 7

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1   Although there are many video coding standards, the H.264 standard developed by the

2   ITU is currently the most widely used video coding and compression format.  Video coding

3   and compression is the process of transforming video into compressed files that take up less

4   space.  When a consumer is ready to watch a video, the video will be decoded by hardware or

5   software on the device that is being used to watch the video, such as a computer.  Decoding

6   turns an encoded, smaller file back into an uncompressed video for viewing.

**Motorola's RAND Licensing Commitments to ITU and IEEE**

7

8   I will now explain the rules that the IEEE and ITU adopted and the RAND licensing

9   commitments that Motorola made to the IEEE and ITU.

10   The ITU's policies require that a patent essential to the H.264 standard must be

11   accessible to everybody without undue constraints.  When patent owners disclose that they

12   may have a patent essential to the standard, the ITU will seek a licensing commitment from the

13   patent-holder.  This licensing commitment is often referred to as a "Letter of Assurance," or an

14   "LOA" for short.  The ITU provides three options:  (1) First, the patent holder may commit to

15   license its standard essential patents on a royalty-free basis;  (2) Second, the patent holder may

16   commit to license its standard essential patents on RAND, again, reasonable and non-

17   discriminatory, terms; or  (3) Third, the patent holder may decline to make any licensing

18   commitment.  However, if a standard essential patent holder declines to make a RAND or

19   royalty-free licensing commitment, the ITU's policy is that the standard will not include any

20   technology that might depend on the patent.  In other words, either the patented technology

21   must be free, or the licensing terms must be reasonable and non-discriminatory.  Otherwise, the

22   ITU will not incorporate the technology in the standard.

23

24

25

MICROSOFT'S PROPOSED MODIFICATIONS
TO PRELIMINARY INSTRUCTION NO. 2 - 8

No. C10-1823

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700    FAX, (206) 623-8717

1

2

Motorola submitted several Letters of Assurance to the ITU in connection with its H.264 standard essential patents.  Motorola's Letters of Assurance stated that it would grant

3

licenses to an unrestricted number of applicants on a worldwide, non-discriminatory basis and

4

on reasonable terms and conditions conditioned on reciprocity.  "Reciprocity" means that if

5

Company X wanted a license on RAND terms to Motorola's H.264 patents, it had to provide

6

Motorola with a license on RAND terms to any of Company X's H.264 patents.

7

Like the ITU, the IEEE has policies that encourage standard essential patent holders to

8

make RAND commitments and provide letters of assurance.  The IEEE does not require that

9

specific patents be identified; instead it only requires that the contributing patent holder make

10

the licensing commitment for all patents that may potentially be essential to the standard.  Like

11

the ITU, the IEEE historically has not included technology into a standard unless it obtained

12

such a Letter of Assurance from the holder of standard essential patent.  Motorola submitted

13

Letters of Assurance to the IEEE and agreed to grant licenses to any of its patents that are

14

essential to the 802.11 standard on RAND terms.

15

16

The IEEE and the ITU do not define what RAND licensing terms are, but leave

17

negotiation of such terms to the parties involved.

18

### Microsoft's Products

19

The primary Microsoft products at issue in this case that use the H.264 standard are

20

Windows and Xbox.  Windows is an operating system for computers.   Xbox is historically a

21

video game player, but now also plays video from sources such as Hulu and Netflix and can be

22

used to play DVDs**, although many of these third-party sources do not use H.264 and

23

instead use a different video compression standard**.  As for the 802.11 standard, Xbox is the

24

only Microsoft product at issue.

25

MICROSOFT'S PROPOSED MODIFICATIONS
TO PRELIMINARY INSTRUCTION NO. 2 - 9

**No. C10-1823**

**RAND Royalty Determination and the Issues for Trial**

As I stated at the beginning, this case is being conducted in two phases, and this is the second phase. In the first phase, I conducted a bench trial the purpose of which was to determine a RAND royalty rate and range for Motorola's standard essential patents. As I told you before, the IEEE and ITU do not set RAND rates at which parties are required to license their standard essential patents. Instead, negotiations over RAND rates are left to the parties. Here, the parties never agreed on a RAND rate to license Motorola's standard essential patents. However, in order for you to properly assess Microsoft's breach of contract claim, you must know what a RAND royalty rate and range would be for Motorola's standard essential patents.

I will now tell you what those rates are. You will be provided these rates again at the end of the trial. For each group of standard essential patents, I have found both a RAND rate and a RAND range. This reflects the fact that more than one licensing rate could be RAND. The RAND ranges are defined by an upper bound and a lower bound. ~~I assumed that had Motorola and Microsoft engaged in a hypothetical negotiation of a RAND license to Motorola's H.264 SEP portfolio, they would have arrived at a~~ **The** RAND royalty rate for Motorola's H.264 SEP portfolio **is** ~~that would have been~~ 0.555 cents per unit, with the upper bound of a RAND royalty for Motorola's H.264 SEP portfolio being 16.389 cents per unit and a lower bound of 0.555 cents per unit. This rate and range **is** ~~would have been~~ applicable to both Microsoft Windows and Xbox products. For all other Microsoft products using the H.264 Standard, the royalty rate ~~arrived at in a hypothetical negotiation would have been the lower bound of~~ **is** 0.555 cents per unit.

I also concluded in that previous trial that ~~if Motorola and Microsoft had engaged in a hypothetical negotiation of a RAND license to Motorola's 802.11 SEP portfolio,~~ the

MICROSOFT'S PROPOSED MODIFICATIONS
TO PRELIMINARY INSTRUCTION NO. 2 - 10

No. C10-1823

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

RAND royalty rate for Motorola's 802.11 SEP portfolio **is ~~would have been~~** 3.471 cents per unit, with the upper bound of a RAND royalty for Motorola's 802.11 SEP portfolio being 19.5 cents per unit and the lower bound being 0.8 cents per unit.  This rate and range **is ~~would have been~~** applicable to Microsoft Xbox products.  For all other Microsoft products using the 802.11 Standard, the royalty rate **is ~~would have been~~** the low bound of 0.8 cents per unit.

In the bench trial, I did not decide whether Motorola breached its contracts with the IEEE and ITU.  That is for you to decide, and you alone.  Throughout this trial, you may hear lawyers refer to the bench trial and to the findings of fact and conclusions of law that I made in that trial.  You must follow the legal rulings I made in that trial and accept the facts that I found, but you are not to take any reference to the previous trial as deciding any of the breach of contract issues or as implying for which side your verdict should be rendered.  In the prior trial, I did not examine whether Motorola breached its commitments to provide Microsoft a license to its standard essential patents on RAND term, and I did not examine whether Motorola acted in good faith with respect to those commitments.  I have not made a decision on those issues.  It is for you, and you alone, to determine whether Motorola breached its contractual commitments based on the evidence you will hear in this trial.

DATED this 23rd day of August, 2013.

CALFO HARRIGAN LEYH & EAKES LLP

By ___s/ Arthur W. Harrigan, Jr.___
          Arthur W. Harrigan, Jr., WSBA #1751
          Christopher Wion, WSBA #33207
          Shane P. Cramer, WSBA #35099

By ___s/ T. Andrew Culbert___
          T. Andrew Culbert
          David E. Killough
          MICROSOFT CORPORATION

MICROSOFT'S PROPOSED MODIFICATIONS          **No. C10-1823**
TO PRELIMINARY INSTRUCTION NO. 2 - 11

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1 Microsoft Way
Redmond, WA  98052
Phone:  425-882-8080
Fax:  425-869-1327

David T. Pritikin
Richard A. Cederoth
Constantine L. Trela, Jr.
William H. Baumgartner, Jr.
Ellen S. Robbins
Douglas I. Lewis
David C. Giardina
John W. McBride
David Greenfield

SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL  60603
Phone:  312-853-7000
Fax:  312-853-7036

Carter G. Phillips
Brian R. Nester

SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC  20005
Telephone:  202-736-8000
Fax:  202-736-8711

Counsel for Microsoft Corp.

MICROSOFT'S PROPOSED MODIFICATIONS
TO PRELIMINARY INSTRUCTION NO. 2 - 12

No. C10-1823

**CERTIFICATE OF SERVICE**

I, Florine Fujita, swear under penalty of perjury under the laws of the State of Washington to the following:

    1.     I am over the age of 21 and not a party to this action.

    2.     On the 23rd day of August, 2013, I caused the preceding document to be served on counsel of record in the following manner:

**Attorneys for Motorola Solutions, Inc., and Motorola Mobility, Inc.:**

Ralph Palumbo, WSBA #04751
Philip S. McCune, WSBA #21081        _____ Messenger
Summit Law Group                  _____ US Mail
315 Fifth Ave. South, Suite 1000      _____ Facsimile
Seattle, WA  98104-2682            __X___ ECF
Telephone:  206-676-7000
Email:  Summit1823@summitlaw.com

Steven Pepe (*pro hac vice*)          _____ Messenger
Jesse J. Jenner (*pro hac vice*)       _____ US Mail
Ropes & Gray LLP                  _____ Facsimile
1211 Avenue of the Americas       __X___ ECF
New York, NY  10036-8704
Telephone:  (212) 596-9046
Email:  steven.pepe@ropesgray.com
Email:  jesse.jenner@ropesgray.com

Norman H. Beamer (*pro hac vice*)   _____ Messenger
Ropes & Gray LLP                  _____ US Mail
1900 University Avenue, 6th Floor   _____ Facsimile
East Palo Alto, CA  94303-2284     __X___ ECF
Telephone:  (650) 617-4030
Email:  norman.beamer@ropesgray.com

Paul M. Schoenhard (*pro hac vice*)  _____ Messenger
Ropes & Gray LLP                  _____ US Mail
One Metro Center                   _____ Facsimile
700 12th Street NW, Suite 900     __X___ ECF
Washington, DC  20005-3948
Telephone:  (202) 508-4693
Email: Paul.schoenhard@ropesgray.com

Andrea Pallios Roberts (*pro hac vice*)         _____ Messenger
Brian C. Cannon (*pro hac vice*)                _____ US Mail
Quinn Emanuel Urquhart & Sullivan, LLP          _____ Facsimile
555 Twin Dolphin Drive, 5th Floor                 __X__  ECF
Redwood Shores, CA 94065
Telephone:  (650) 801-5000
Email: andreaproberts@quinnemanuel.com
Email: briancannon@quinnemanuel.com


Kathleen M. Sullivan (*pro hac vice*)           _____ Messenger
David Elihu (*pro hac vice*)                    _____ US Mail
Quinn Emanuel Urquhart & Sullivan, LLP          _____ Facsimile
51 Madison Ave., 22nd Floor                       __X__  ECF
New York, NY 10010
Telephone:  (212) 849-7000
Email: kathleensullivan@quinnemanuel.com


William Price (*pro hac vice*)                  _____ Messenger
Quinn Emanuel Urquhart & Sullivan, LLP          _____ US Mail
865 S. Figuera St., 10th Floor                  _____ Facsimile
Los Angeles, CA 90017                             __X__  ECF
Telephone:  (212) 443-3000
Email: williamprice@quinnemanuel.com
MicrosoftvMotoBreachofRANDCase@quinnemanuel.com


    DATED this 23rd day of August, 2013.



                            s/  Florine Fujita
                            FLORINE FUJITA


MICROSOFT'S PROPOSED MODIFICATIONS          No. C10-1823
TO PRELIMINARY INSTRUCTION NO. 2 - 14

                                LAW OFFICES
                    CALFO HARRIGAN LEYH & EAKES LLP
                        999 THIRD AVENUE, SUITE 4400
                        SEATTLE, WASHINGTON 98104
                    TEL, (206) 623-1700   FAX, (206) 623-8717