The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation, | CASE NO. C10-1823-JLR |
| Plaintiff, | DEFENDANTS' OBJECTIONS TO MICROSOFT'S PROPOSED MODIFICATIONS TO PRELIMINARY JURY INSTRUCTION NO. 2 |
| v. | |
| MOTOROLA, INC., and MOTOROLA MOBILITY LLC, and GENERAL INSTRUMENT CORPORATION, | |
| Defendants. | |

DEFENDANTS' OBJECTIONS TO MICROSOFT'S PROPOSED MODIFICATIONS TO PRELIMINARY JURY INSTRUCTION NO. 2
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Motorola respectfully submits this response to Microsoft's Proposed Modifications to the Court's Preliminary Jury Instruction No. 2, which Microsoft submitted orally at the telephonic conference with the Court today and in written form (Dkt. 868) after the close of business today.

While Motorola continues to maintain its objections to Preliminary Instruction No. 2 for all the reasons set forth in its July 26, 2013 Joint Statement of Disputed Jury Instructions (Dkt. 791 at 31-32) and reiterated in Motorola's motion in limine (Dkt. 797 at 1-9) and later filings with the Court concerning Preliminary Instruction No. 2 (Dkt. 857 at 5 n. 1; Dkt. 864), Motorola has advised the Court by letter (Dkt. 864) and at the telephonic conference with the Court today that Motorola has no further objection to the Court's Preliminary Jury Instruction No. 2 except to ask the Court (*id.*) to include in the instruction that, "under Motorola's agreements with the IEEE and ITU, Motorola need not make initial offers on RAND terms" (*see* Dkt. 335 at 24-25). Microsoft has asked (Dkt. 865) that, if the Court adopts that change, it also include language that opening offers cannot be "blatantly unreasonable." Motorola objects to Microsoft's addition because it depends upon a full understanding of the contours of the implied covenant of good faith and fair dealing, which will not be defined until the Court's final instructions.

Motorola hereby also objects to each of Microsoft's new proposed modifications to the Court's Preliminary Instruction No. 2, and respectfully suggests that the Court should leave that instruction as is with the very minor exceptions noted above and below and redlined for the Court's convenience in the attached addendum:

**Dkt. 868 at 4: 6-7:** The Court should reject Microsoft's proposed description of the contents of the October 21 and 29, 2010 letters as "royalty demands." Whether the letters contained "royalty demands" as Microsoft argues, or "opening offers" or "invitations to negotiate" as Motorola argues, is a factual matter for the jury to decide. For the Court to characterize Motorola's letters as "royalty demands" would usurp the role of the jury and prejudice Motorola. Motorola respectfully suggests that the Court use the neutral language "making these licensing offers."

DEFENDANTS' OBJECTIONS TO MICROSOFT'S
PROPOSED MODIFICATIONS TO PRELIMINARY
JURY INSTRUCTION NO. 2 - 1
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1  **Dkt. 868 at 4:15-19 and 5:3**:  The Court should reject Microsoft's proposed modifications
2  that seek to set forth two distinct breach theories:  breach of the commitment to provide a license
3  on RAND terms *and* breach of the covenant of good faith and fair dealing.  The Court has already
4  ruled that "Motorola's agreements do not require it to make offers on RAND terms" but that those
5  offers "must comport with the implied duty of good faith and fair dealing" (Dkt. 335 at 25), and
6  that "[t]here is no provision in Motorola's contracts with the IEEE and ITU expressly stating that
7  Motorola is prohibited from seeking injunctive relief against SEP implementers" and therefore
8  that "[t]his case . . . presents a question not of direct breach of contract but of breach of the duty of
9  good faith and fair dealing" (Dkt. 843 at 22-23).  Accordingly, the Court has made clear that the
10 jury must decide only the question of whether Motorola comported with the duty of good faith and
11 fair dealing, as the language of the existing Preliminary Instruction No. 2 suggests.

12 **Dkt. 868 at 9:23-24:**  The Court should reject Microsoft's proposed language suggesting
13 that many third-party video sources on Microsoft Xbox "do not use H.264 and instead use a
14 different video compression standard."  While Microsoft's proposal quotes the Court's FFCL ¶
15 291, it is incomplete and misleading insofar as it fails to include other paragraphs of the FFCL
16 (*e.g*., ¶¶ 298, 300) that find that H.264 may be important to Microsoft's future products.  The
17 Court should therefore leave this sentence as is.

18 **Dkt. 868 at 10:14-11:5:**  The Court should reject Microsoft's proposal to eliminate all
19 reference to the extensive hypothetical negotiation analysis this Court undertook in the FFCL in
20 order to arrive at a RAND rate and range for Motorola's 802.11 and H.264 SEPs.  Without such an
21 explanation, the jury may be confused as to the origin of the Court's determination of the RAND
22 rate and range, and may be misled into believing that the RAND rate and range were not Court-
23 determined or that Motorola had these Court-determined RAND figures available to it at the time
24 of the alleged breaches.   The instruction should be left as is to avoid such confusion.

25
26

DEFENDANTS' OBJECTIONS TO MICROSOFT'S
PROPOSED MODIFICATIONS TO PRELIMINARY
JURY INSTRUCTION NO. 2 - 2
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

DATED this 23rd day of August, 2013.

Respectfully submitted,

SUMMIT LAW GROUP PLLC
By */s/ Ralph H. Palumbo*
By */s/ Philip S. McCune*
   Ralph H. Palumbo, WSBA #04751
   Philip S. McCune, WSBA #21081
   ralphp@summitlaw.com
   philm@summitlaw.com
By */s/ Thomas V. Miller*
   Thomas V. Miller
   MOTOROLA MOBILITY LLC
   600 North U.S. Highway 45
   Libertyville, IL  60048-1286
   (847) 523-2162

QUINN EMANUEL URQUHART & SULLIVAN, LLP
By */s/ Kathleen M. Sullivan*
   Kathleen M. Sullivan, NY #1804624
   51 Madison Ave., 22nd Floor
   New York, NY 10010
   (212) 849-7000
   kathleensullivan@quinnemanuel.com
By */s/ Brian C. Cannon*
   Brian C. Cannon, CA #193071
   555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, CA 94065
   (650) 801-5000
   briancannon@quinnemanuel.com
By */s/ William C. Price*
   William C. Price, CA #108542
   865 S. Figueroa Street, 10th Floor
   Los Angeles, CA 90017
   (213) 443-3000
   williamprice@quinnemanuel.com

**Attorneys for Motorola Solutions, Inc., Motorola Mobility LLC and General Instrument Corp.**

DEFENDANTS' OBJECTIONS TO MICROSOFT'S PROPOSED MODIFICATIONS TO PRELIMINARY JURY INSTRUCTION NO. 2 - 3
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

# CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Arthur W. Harrigan, Jr., Esq.
Christopher T. Wion, Esq.
Shane P. Cramer, Esq.
Calfo Harrigan Leyh & Eakes LLP
*arthurh@calfoharrigan.com*
*chrisw@calfoharrigan.com*
*shanec@calfoharrigan.com*

Richard A. Cederoth, Esq.
Brian R. Nester, Esq.
David T. Pritikin, Esq.
Douglas I. Lewis, Esq.
John W. McBride, Esq.
William H. Baumgartner, Jr., Esq.
David C. Giardina, Esq.
Carter G. Phillips, Esq.
Constantine L. Trela, Jr., Esq.
Ellen S. Robbins, Esq.
Nathaniel C. Love, Esq.
Sidley Austin LLP
*rcederoth@sidley.com*
*bnester@sidley.com*
*dpritikin@sidley.com*
*dilewis@sidley.com*
*jwmcbride@sidley.com*
*wbaumgartner@sidley.com*
*dgiardina@sidley.com*
*cphillips@sidley.com*
*ctrela@sidley.com*
*erobbins@sidley.com*
*nlove@sidley.com*

T. Andrew Culbert, Esq.
David E. Killough, Esq.
Microsoft Corp.
*andycu@microsoft.com*
*davkill@microsoft.com*

DATED this 23rd day of August, 2013.

/s/ *Marcia A. Ripley*
Marcia A. Ripley

DEFENDANTS' OBJECTIONS TO MICROSOFT'S PROPOSED MODIFICATIONS TO PRELIMINARY JURY INSTRUCTION NO. 2 - 4
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

# ADDENDUM

**Defendants' Proposed Modifications to the Court-Provided Preliminary Instructions No. 2**

This case is being conducted in two phases.  This is the second phase.  The first phase was what is called a "bench trial."  In a bench trial, there is no jury, only a judge (in this case me) who listens to evidence presented by the parties and makes certain factual findings and legal rulings.  You must follow the legal rulings I made in that trial and accept as true the facts that I found.  In this preliminary instruction, I will inform you of some of these earlier rulings.  Moreover, witnesses and counsel may refer to these earlier rulings from time to time during the trial.   Importantly, in the prior trial, I did not examine the issues that are before you in this phase of the trial.  The issues before you are for you, and you alone, to decide based on the evidence you will hear.

## Introduction and Overview of Case

I will start with a general overview case.  This is a breach of contract case between Microsoft Corporation, the plaintiff, and defendants Motorola, Inc., Motorola Mobility, Inc., and General Instrument Corporation.  I will refer to all of these defendants as "Motorola."

Motorola and Microsoft participate in international organizations that set technical standards, called "standard setting organizations."  Standard setting organizations define standard ways of performing certain functions so that different products can interact, or interoperate, with each other.  These organizations bring together scientists and engineers from leading companies to share technologies to develop improved technology standards.  Companies that participate in standard setting organizations agree on common technologies so that products complying with the standards will work together.  The agreed standards are published and shared with the industry.  The standard setting organizations hope to achieve widespread industry adoption of the agreed standards.

ADDENDUM – DEFENDANTS' PROPOSED MODIFICATIONS TO THE COURT-PROVIDED PRELIMINARY INSTRUCTION NO. 2 - 1
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

There are many standard setting organizations, and many technology standards. This case concerns two standard setting organizations and two technical standards. The first organization is called the Institute of Electrical and Electronics Engineers, which is called "I-triple-E" for short. The IEEE defines a standard for wireless communications called the "802.11 standard," which you might be familiar with as "WiFi." The second organization is the International Telecommunication Union, called the "ITU." The ITU defines a standard for video coding technology, called the "H.264 standard."

Some of the technology in these standards is not patented, and therefore available for public use. However, each of these standards includes some technology that is covered by patents. Patents that are used, or infringed, when products are built to comply with a standard are called "standard essential patents." These patents are called "essential" patents because it is not possible to build a product that complies with the standard without infringing the patents.

Standard setting organizations want companies and consumers to adopt the agreed standards. To encourage widespread adoption, these organizations seek contractual commitments from the owners of standard essential patents. Based on these commitments, the owners of the standard essential patents are contractually required to license those patents to anyone that wants to use the standard on what are called "RAND" terms. The term "RAND" stands for "reasonable and non-discriminatory."

Motorola owns patents that are essential to the 802.11 and H.264 standards and Motorola has committed to the IEEE and the ITU to grant licenses on RAND, again, reasonable and non-discriminatory, terms to anyone and everyone who wants to use the standards. The court has determined that Motorola's commitments to the IEEE and ITU are enforceable contracts, and Microsoft—as a user of the 802.11 and H.264 standards—is entitled to enforce these contracts in court. Microsoft claims that Motorola breached these contracts. The following are some of the facts that relate to Microsoft's claims.

ADDENDUM – DEFENDANTS' PROPOSED MODIFICATIONS TO THE COURT-PROVIDED PRELIMINARY INSTRUCTION NO. 2 - 2
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1  On October 21, 2010, Motorola sent Microsoft a letter seeking royalty payments in exchange for a license to Motorola's 802.11 standard essential patents. On October 29, 2010, Motorola sent a similar letter seeking royalty payments in exchange for a license its H.264 standard essential patents.

On November 9, 2010, Microsoft filed this lawsuit against Motorola, asserting, among other things, that Motorola breached its contracts with the IEEE and the ITU by ~~contained in these letters~~ **making these licensing offers**. After this case was filed, Motorola filed patent infringement lawsuits against Microsoft for using Motorola's standard essential patents. In those lawsuits, Motorola sought injunctions. An injunction is an order from a court that requires someone to stop doing something. Motorola was seeking injunctions that would stop Microsoft from selling products that use either the 802.11 or H.264 standard, including Windows and Xbox.

The issue in this case is breach of contract. Microsoft claims that Motorola breached the IEEE and ITU contracts by violating the covenant of good faith and fair dealing that is implied in those contracts. Specifically, Microsoft alleges that Motorola breached its duty of good faith and fair dealing under the IEEE contract by the following actions:

- By the terms contained in the October 21, 2010 letter offering to license Motorola's 802.11 standard essential patents;
- Seeking injunctive relief in lawsuits based on standard essential patents; and
- Not executing a license agreement covering its 802.11 standard essential patents with a company named Marvell, Microsoft's WiFi chip supplier.

Similarly, Microsoft alleges that Motorola breached its duty of good faith and fair dealing under the ITU contract by the following actions:

- By terms contained in the October 29, 2010 letter offering to license Motorola's H.264 standard essential patents; and

ADDENDUM – DEFENDANTS' PROPOSED MODIFICATIONS TO THE COURT-PROVIDED PRELIMINARY INSTRUCTION NO. 2 - 3
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

- Seeking injunctive relief in lawsuits based on standard essential patents.

Microsoft has the burden of proving these claims.

Motorola denies that any of its conduct constituted a breach of its RAND commitments and denies that it violated any duty of good faith and fair dealing implied its contracts with the IEEE and the ITU. Motorola also denies that any of its conduct in this case caused Microsoft damages. Motorola also contends that Microsoft has not taken reasonable steps to mitigate any damage it may have suffered.

## Hold Up and Stacking

Having given you this general overview, I will now provide you additional detail on some of the concepts that are important to this case. The owner of a patent that is not a standard essential patent may grant licenses to other companies, permitting them to sell products that include the patent owner's patented technology. Such licenses may require the payment of a "licensing fee," which is sometimes called a "royalty" payment. If the patent is not a "standard essential patent," then the owner of the patent can charge as much as it wants for a license. If the price is too high, the other companies can just walk away and not use the patents.

There are different rules regarding standards and standard essential patents. When a standard becomes widely implemented or adopted, the owner of a standard essential patent could have substantial leverage to demand excessive royalties. Indeed, there may have been alternatives to the patented technology available when the standard was agreed to, but after the standard is widely adopted by the industry, switching to those alternatives is either no longer viable or would be too expensive. The ability of an owner of a standard essential patent to demand more than the value of its patented technology, and to attempt to capture value that comes from the standard, is called "hold-up." Hold-up can undermine the standard-setting process and threaten the adoption of valuable standards.

ADDENDUM – DEFENDANTS' PROPOSED MODIFICATIONS TO THE COURT-PROVIDED PRELIMINARY INSTRUCTION NO. 2 - 4
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1   Another issue with standards and standard essential patents is called "royalty
2   stacking," which occurs when many different holders of standard essential patents seek
3   excessive royalty payments for a given standard.  If there are a large number of owners of
4   standard essential patents for a given standard, the total royalty payments might make the
5   product too expensive to make and sell, and undermine the standard.  Complex industry
6   standards like H.264 and 802.11 can require the use of hundreds or thousands of standard
7   essential patents held by dozens of patent holders.  Stacking concerns arise if the total
8   "stack" of royalty payments would make use of the standard too expensive and the
9   standard would potentially fail in the market.  Royalty stacking can be an even bigger
10  problem for products that must comply with multiple standards.  The RAND commitment
11  seeks to prevent royalty stacking and ensures that the aggregate royalties associated with a
12  given standard are reasonable.

## RAND Licensing Commitments

14  To address the problems of hold up and stacking, many standard setting
15  organizations, including the IEEE and ITU, have adopted rules relating to the licensing of
16  essential patents.  Their policies require or encourage companies participating in the
17  standard setting process to agree to license their standard essential patents on "reasonable
18  and non-discriminatory" or RAND terms to anyone who requests a license.  These
19  agreements are contracts called RAND commitments.

20  The purpose of these contracts is to encourage widespread adoption of the standard
21  and prevent hold up and royalty stacking.  RAND commitments address the hold-up
22  problem because a RAND commitment limits a patent holder to a reasonable royalty on
23  the economic value of its patented technology alone, not any of the value of the standard.
24  RAND commitments address the stacking problem by ensuring that the total royalties for
25  all standard essential patents within any standard are reasonable and non-discriminatory.

## The Standards at Issue

ADDENDUM – DEFENDANTS' PROPOSED MODIFICATIONS TO THE COURT-PROVIDED PRELIMINARY INSTRUCTION NO. 2 - 5
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

As I said earlier, this case concerns two standards called 802.11 and H.264. The 802.11 standard is a wireless communication standard developed over many years by the IEEE, and you may know it by its more common name of "WiFi." The H.264 standard is a video coding compression standard. Popular examples of technologies that use the H.264 video compression standard include Blu-ray movies and YouTube videos. Two different standard setting organizations were involved in developing the H.264 standard, but for simplicity, I will refer to H.264's standard setting organizations as just "ITU."

The 802.11 standard allows companies to build products for wireless local area networking of computers and other electronic devices. If you have a home "WiFi" network, a computer chip in your laptop uses the 802.11 standard to connect to that network and, through it, to the Internet. The 802.11 standard is the most widely used and universally accepted wireless communications standard for ordinary consumer and business use.

Although there are many video coding standards, the H.264 standard developed by the ITU is currently the most widely used video coding and compression format. Video coding and compression is the process of transforming video into compressed files that take up less space. When a consumer is ready to watch a video, the video will be decoded by hardware or software on the device that is being used to watch the video, such as a computer. Decoding turns an encoded, smaller file back into an uncompressed video for viewing.

### Motorola's RAND Licensing Commitments to ITU and IEEE

I will now explain the rules that the IEEE and ITU adopted and the RAND licensing commitments that Motorola made to the IEEE and ITU.

The ITU's policies require that a patent essential to the H.264 standard must be accessible to everybody without undue constraints. When patent owners disclose that they may have a patent essential to the standard, the ITU will seek a licensing commitment

ADDENDUM – DEFENDANTS' PROPOSED MODIFICATIONS TO THE COURT-PROVIDED PRELIMINARY INSTRUCTION NO. 2 - 6
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1  from the patent-holder. This licensing commitment is often referred to as a "Letter of
2  Assurance," or an "LOA" for short. The ITU provides three options: (1) First, the patent
3  holder may commit to license its standard essential patents on a royalty-free basis; (2)
4  Second, the patent holder may commit to license its standard essential patents on RAND,
5  again, reasonable and non-discriminatory, terms; or (3) Third, the patent holder may
6  decline to make any licensing commitment. However, if a standard essential patent holder
7  declines to make a RAND or royalty-free licensing commitment, the ITU's policy is that
8  the standard will not include any technology that might depend on the patent. In other
9  words, either the patented technology must be free, or the licensing terms must be
10 reasonable and non-discriminatory. Otherwise, the ITU will not incorporate the
11 technology in the standard.
12     Motorola submitted several Letters of Assurance to the ITU in connection with its
13 H.264 standard essential patents. Motorola's Letters of Assurance stated that it would
14 grant licenses to an unrestricted number of applicants on a worldwide, non-discriminatory
15 basis and on reasonable terms and conditions conditioned on reciprocity. "Reciprocity"
16 means that if Company X wanted a license on RAND terms to Motorola's H.264 patents, it
17 had to provide Motorola with a license on RAND terms to any of Company X's H.264
18 patents.
19     Like the ITU, the IEEE has policies that encourage standard essential patent holders
20 to make RAND commitments and provide letters of assurance. The IEEE does not require
21 that specific patents be identified; instead it only requires that the contributing patent
22 holder make the licensing commitment for all patents that may potentially be essential to
23 the standard. Like the ITU, the IEEE historically has not included technology into a
24 standard unless it obtained such a Letter of Assurance from the holder of standard essential
25 patent. Motorola submitted Letters of Assurance to the IEEE and agreed to grant licenses
26 to any of its patents that are essential to the 802.11 standard on RAND terms.

ADDENDUM – DEFENDANTS' PROPOSED
MODIFICATIONS TO THE COURT-PROVIDED
PRELIMINARY INSTRUCTION NO. 2 - 7
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1   The IEEE and the ITU do not define what RAND licensing terms are, but leave
2   negotiation of such terms to the parties involved.  **<u>Under Motorola's contracts with the</u>**
3   **<u>IEEE and ITU, Motorola did not need to make an initial offer on RAND terms.</u>**

### Microsoft's Products

5   The primary Microsoft products at issue in this case that use the H.264 standard are
6   Windows and Xbox.  Windows is an operating system for computers.  Xbox is historically
7   a video game player, but now also plays video from sources such as Hulu and Netflix and
8   can be used to play DVDs.  As for the 802.11 standard, Xbox is the only Microsoft product
9   at issue.

### RAND Royalty Determination and the Issues for Trial

11  As I stated at the beginning, this case is being conducted in two phases, and this is
12  the second phase.  In the first phase, I conducted a bench trial the purpose of which was to
13  determine a RAND royalty rate and range for Motorola's standard essential patents.  As I
14  told you before, the IEEE and ITU do not set RAND rates at which parties are required to
15  license their standard essential patents.  Instead, negotiations over RAND rates are left to
16  the parties.  Here, the parties never agreed on a RAND rate to license Motorola's standard
17  essential patents.  However, in order for you to properly assess Microsoft's breach of
18  contract claim, you must know what a RAND royalty rate and range would be for
19  Motorola's standard essential patents.

20  I will now tell you what those rates are.  You will be provided these rates again at
21  the end of the trial.  For each group of standard essential patents, I have found both a
22  RAND rate and a RAND range.  This reflects the fact that more than one licensing rate
23  could be RAND.  The RAND ranges are defined by an upper bound and a lower bound.  I
24  assumed that had Motorola and Microsoft engaged in a hypothetical negotiation of a
25  RAND license to Motorola's H.264 SEP portfolio, they would have arrived at a RAND
26  royalty rate for Motorola's H.264 SEP portfolio that would have been 0.555 cents per unit,

ADDENDUM – DEFENDANTS' PROPOSED
MODIFICATIONS TO THE COURT-PROVIDED
PRELIMINARY INSTRUCTION NO. 2 - 8
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1   with the upper bound of a RAND royalty for Motorola's H.264 SEP portfolio being 16.389

2   cents per unit and a lower bound of 0.555 cents per unit.  This rate and range would have

3   been applicable to both Microsoft Windows and Xbox products.  For all other Microsoft

4   products using the H.264 Standard, the royalty rate arrived at in a hypothetical negotiation

5   would have been the lower bound of 0.555 cents per unit.

6          I also concluded in that previous trial that, if Motorola and Microsoft had engaged

7   in a hypothetical negotiation of a RAND license to Motorola's 802.11 SEP portfolio, the

8   RAND royalty rate for Motorola's 802.11 SEP portfolio would have been 3.471 cents per

9   unit, with the upper bound of a RAND royalty for Motorola's 802.11 SEP portfolio being

10  19.5 cents per unit and the lower bound being 0.8 cents per unit.  This rate and range

11  would have been applicable to Microsoft Xbox products.  For all other Microsoft products

12  using the 802.11 Standard, the royalty rate would have been the low bound of 0.8 cents per

13  unit.

14         In the bench trial, I did not decide whether Motorola breached its contracts with the

15  IEEE and ITU.  That is for you to decide, and you alone.  Throughout this trial, you may

16  hear lawyers refer to the bench trial and to the findings of fact and conclusions of law that I

17  made in that trial.  You must follow the legal rulings I made in that trial and accept the

18  facts that I found, but you are not to take any reference to the previous trial as deciding any

19  of the breach of contract issues or as implying for which side your verdict should be

20  rendered.  In the prior trial, I did not examine whether Motorola breached its commitments

21  to provide Microsoft a license to its standard essential patents on RAND term, and I did

22  not examine whether Motorola acted in good faith with respect to those commitments.  I

23  have not made a decision on those issues.  It is for you, and you alone, to determine

24  whether Motorola breached its contractual commitments based on the evidence you will

25  hear in this trial.

26

ADDENDUM – DEFENDANTS' PROPOSED
MODIFICATIONS TO THE COURT-PROVIDED
PRELIMINARY INSTRUCTION NO. 2 - 9
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001