UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MOTOROLA, INC., et al.,<br><br>Defendants. | CASE NO. C10-1823JLR<br><br>ORDER |
| MOTOROLA MOBILITY, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | |

## I. INTRODUCTION

The purpose of this order is to memorialize in writing the August 23, 2013, oral decision of the court regarding how the parties may use the Findings of Fact and Conclusions of Law ("FFCL") from the November bench trial in this case. (*See* FFCL (Dkt. # 681).) This question presents a unique legal issue, and there is limited precedent available to guide the court's decision. What the court has done—with the consent of the parties—is to take a single claim for breach of contract and split the trial of that claim into two different phases, a bench phase and a jury phase. As the parties are well aware, the court issued its 200-plus page FFCL concerning the bench trial results. (*See id.*) Along the way, the court found numerous facts bearing directly on the ultimate question of a RAND rate and range. (*See id.*) For example, the court made findings related to the value of Motorola's patents, the extent of their contribution to the standard, and their value to Microsoft's products. This, obviously, was because the court could not set a RAND rate and range in a vacuum; it was necessary to understand Motorola's patents in context and to hear testimony from experts on the value of those patents. The individual findings of fact were the building blocks of the court's ultimate RAND determinations, and without those building blocks the final determination could not exist.

The question now before the court is how the FFCL should be used in the upcoming jury phase of the trial. The court has already ruled, in deciding motions in limine, that the jury will hear the RAND rate and range. That is not in dispute at this point. The question now is whether the jury will be permitted to hear the individual factual findings on which the RAND rate and range are predicated; in other words,

whether the jury will be permitted to hear the building blocks that make up the court's ultimate RAND determination.

There are two overriding concerns with respect to this issue. First, the court must protect the parties' right to a jury trial where that right has been preserved. It is clear that it would violate the Seventh Amendment if the court, through its findings and conclusions, precluded the jury from deciding factual questions on which the parties had preserved their jury trial rights. *See Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 170 (9th Cir. 1989). However, it is equally clear that it does not violate the Seventh Amendment for the court to decide factual questions, and thus preclude the jury from deciding those questions, where the parties have waived their jury trial right. *See Wechsler v. Hunt Health Sys., Ltd.*, No. 94 Civ. 8294(PKL), 2003 WL 21878815 (S.D.N.Y. Aug. 8, 2003). This leads to the second major concern on this issue: holding the parties to the commitments they have made in this case and not allowing them abandon their prior representations to the court. The parties charted a course for this case that included waiving their jury trial rights on certain issues. Now, it appears that Motorola seeks to recast its prior representations, having not achieved the results it hoped for in the first phase. The court must be mindful not to allow the parties to re-litigate issues that they agreed to have the court decide, and that the court did decide, simply because they do not like the court's findings. With these concerns in mind, the court turns to the central issue to be decided.

## II. ANALYSIS

There is no dispute that the parties have waived some of their jury trial rights in this case; thus, the critical question is: what is the scope of the parties' waiver? This question could be answered in one of two ways. First, one could argue that the parties' waiver of their jury trial right was narrow (in accordance with how waivers of constitutional rights are usually construed, *Williams v. State of Ala.*, 341 F.2d 777, 781 (5th Cir. 1965)) and that the parties only agreed to have the court decide two issues: a specific RAND rate, and a specific RAND range for Motorola's standard essential patents. Motorola now takes this position. Second, one could argue that the parties' waiver, even construed narrowly, necessarily covered not only a RAND rate and range, but also all of the factual predicates necessary to determining a RAND rate and range. Microsoft has taken this position.

In the unique context of this case, and given the parties' actions in the course of this litigation, the court finds that the first position is unsupportable. There are several reasons why this is true. First, the parties' waiver of its jury trial rights does not seek to strictly limit the waiver to only two narrow findings and does not attempt to preserve the parties' jury trial rights with respect to the RAND issues decided in the bench trial. In short, there is no indication that the parties sought to restrict their jury trial waiver to only a RAND rate and range to be given to the jury with no factual context. Instead, the parties sought to have the court determine, broadly, the RAND portion of the case, and have the jury determine the breach of contract portion of the case:

> MR. HARRIGAN: In a nutshell, Your Honor, the parties agree there is no jury involved -- there's no jury requirement with respect to the court's determination of what is RAND, and the contract, and so forth; and disagree with respect to whether a jury would be required to deal with the breach of contract part of the case.

(6/4/12 Tr. (C11-1408JLR (Dkt. # 365)) at 42.) The parties agreed to have the court determine "all material terms of the RAND contract":

> MR. PALUMBO: That's right, Your Honor. Our agreement is that the court would decide all the material terms of the RAND license. And we currently have a disagreement with respect to whether the breach of contract action would be tried by the court or by a jury.

(*Id.* at 42-43.) Further, the court has been clear throughout this case that the purpose of the bench trial was to determine a RAND rate for use by the jury in the second phase of the trial:

> THE COURT: . . . [I]t seems to me what you're really asking is what's going to happen in November. So let me tell you what I think is going to happen in November and then I'm happy to hear from you.
>
> In November, I expect us to try in a bench trial the RAND terms for patents covered by ITU-T standard H264 and the patents pertaining to the IEEE 802.11. I understand from the complaint and from Motorola's offer letters of October 21, 2010 and October 29, 2010 that these are the patents at issue in what we call the 1823 litigation. That mostly is the question of the royalty rate since that is what is covered in your letters.
>
> . . .
>
> In regards to the breach of contract claim, that will not be tried in the November trial date. As I have explained to you previously, my reason for that is the breach of contract, as Motorola has admitted, exists in relation to the RAND Rate. I think Mr. Jenner's example was a million dollars Royalty Rate for one patent and the RAND Rate turns out to be 15 cents. Since I don't know what the RAND terms are yet, it seems to me I can't deal with breach of contract until RAND is determined.

(7/16/12 Tr. (Dkt. # 359) at 2-3.) Indeed, Motorola preserved its jury trial right only with respect to "the breach of the duty of good faith issue":

> MR. PALUMBO: . . . In answer to your other question, we have decided not to waive the jury trial on the breach of the duty of good faith issue, and with respect to that issue, we think -- we do agree that that is a triable issue that the jury can determine. In other words, did Motorola accord to its obligation to negotiate the contract in good faith? We may have issues with respect to whether the court can instruct the jury as to the proper RAND rate, but we agree that it is a jury question as to whether Motorola has conformed to its obligation to negotiate a RAND license in good faith.
>
> . . .
>
> So you would have to decide, if you go forward, to actually set the terms of a RAND license, you would need to decide only which terms are material, and then what each of those material terms would be.

(*Id.* at 5, 8.) The parties understood that the project of the court would be to "determin[e] what [the] RAND terms are":

> THE COURT: I will tell you that the operating assumption of the court as to right now is that Motorola, when it contracted for industry standard patent status, obligated itself to make an offer on RAND terms for a license to the patents that are covered, the H264 and 802.11 patents; that Microsoft has accepted that offer on RAND terms, and what the court is doing is determining what those RAND terms are.

(*Id.* at 9.) Thus, the parties' waiver of their jury trial rights does not support Motorola's position that it waived its jury trial rights exclusively with respect to the RAND rate and range and none of the other facts found in the bench trial.

Second, the parties' actions throughout this litigation suggest that Motorola's position is not the correct one. Motorola fully participated in the bench trial. Motorola presented evidence on, and vigorously disputed, all of the factual findings that it now claims should be kept from the jury. Motorola presented extensive evidence on the importance of its H.264 and 802.11 patent portfolios to the respective standards and to Microsoft's products. Additionally, Motorola presented evidence of the importance of the standards to Microsoft's products. Further, Motorola suggested (and the court adopted) a modified *Georgia-Pacific* analysis as the framework for the court's RAND determinations, which placed at issue nearly all of the facts that Motorola now wants to keep from the jury. (*Id.* at 9.) At no point did Motorola attempt to prevent the court from making findings on the issues it now believes violate the Seventh Amendment. In fact, Motorola submitted 100 pages of proposed findings of fact and conclusions of law on these issues, urging the court to decide the very facts it now seeks to exclude. (Motorola's Proposed Findings (Dkt. # 461).) At no point did Motorola qualify these proposed findings or attempt to preserve its jury trial rights with respect to the facts it proposed the court find. All of this behavior shows the court that Motorola's waiver is not only on the RAND rate and range but on all of the factual predicates necessary to determine the rate and range.

Third, the parties' reasons for agreeing to a bench trial in the first place favor Microsoft's position. The parties agreed to hold a bench trial in part because this case presents complicated technical issues. The point of having a bench trial was to let the court sort through Motorola's patents to determine what they were worth and to spare the jury that task. It was not that the bench phase and the jury phase were on separate issues: there can be no doubt that the findings of fact made in the bench trial were relevant to the ultimate question of breach of contract. Instead, the parties simply decided that the judge, not the jury, should make some of the findings because it could have proven too difficult for the jury. Indeed, the court sympathizes with this view, having spent a substantial amount of time on the FFCL.

This whole effort to spare the jury a difficult task would be wasted if Motorola were permitted to reargue the court's findings at this point. The jury would be asked to determine anew the facts the court already found. Likewise, the effort would wasted if the parties were required to present evidence, again, to prove facts that have already been proved once before. The court cannot conclude that this was the intent of the parties in waiving their jury trial right. Nor does this viewpoint make any sense in the context of this litigation. And to be clear: this is not to suggest that concerns about conserving resources somehow trump the Seventh Amendment—they do not; it is merely to demonstrate the reasons why the parties agreed to waive their jury trial rights and why the court should construe the waiver in harmony with those reasons.

Fourth, during the bench trial, the court took great care to avoid deciding unnecessary factual issues in the bench phase that directly implicated issues to be decided

in the jury phase. Where issues arose in the RAND trial that appeared to wander into the jury's territory, the court did not decide those issues. Further, in crafting its findings and conclusions, the court was mindful not to include anything that would infringe Motorola's right to a jury trial on the breach of contract issue.

Finally, there is another important reason to reject Motorola's position. Motorola's position is grounded in the notion that it should be allowed to re-argue the court's factual findings to the jury even though it cannot re-argue the final RAND rate and range. This cannot be. As stated above, the court's individual findings of fact are the building blocks of the RAND rate and range. If each of those building blocks could be challenged in front of the jury, Motorola would in effect be allowed a second bite at the apple on the RAND rate and range. It is impossible to successfully challenge the individual factual findings without undermining the court's ultimate RAND conclusions. Allowing such challenges would permit Motorola to have it both ways: Motorola would get to argue the value of its patents to the judge, and then if the judge disagreed with them, Motorola could simply ask the jury to reach a different result. That is not what the parties agreed to. The RAND rate and range have been decided. The parties consented to a bench trial, and they got one. Now, the court will hold the parties to their commitments.

Accordingly, the court concludes that the scope of the parties' jury trial waiver, even narrowly construed, must include not only the RAND rate and range, but also all of the factual predicates contained in the FFCL that were necessary to determine that rate

and range. It will not violate Motorola's Seventh Amendment rights to allow the jury to hear the court's factual findings.

## III. GUIDANCE FOR THE PARTIES ON USING THE FFCL

The only question remaining is how, from a mechanical standpoint, the parties will be permitted to use the FFCL. This is a question subject to varying approaches, but the court will now establish several principles to guide the parties. First, the FFCL will not be admitted in its entirety. Second, the court will not specifically instruct the jury on particular findings of fact, with the exception of the RAND rate and range. Instead, the findings must come in through witness testimony. Third, Conclusions of Law in the court's orders may be freely used and referred to. Fourth, the use of the court's findings are subject to Federal Rules of Evidence 401, 402, and 403. In particular, the court is unwilling to allow the parties to go into excessive detail about the specifics of non-essential issues explored in the previous trial and will exclude attempts to do so under Rule 403. Fifth, if a witness testifies on direct examination concerning a subject covered by the FFCL and the underlying finding is challenged on cross, the court will not permit evidence in an effort to re-litigate issues the court has already decided. Sixth, the parties should minimize their use of phrases like "Judge Robart said" and "the court has ruled." The parties also should not attempt to improperly use the imprimatur of the court to imply that the jury should reach a certain result or view the evidence in a certain way. Seventh, witnesses may not simply read from the FFCL. Instead, they must testify to the underlying facts, and may, if necessary, use the court's findings as a basis for those facts. As a corollary, counsel may not display excerpts from the FFCL to the jury using

powerpoint or any other display mechanism. Eighth, if a witness testifies to a fact contrary to something contained in the FFCL, the opposing party may use the FFCL to impeach that witness. Last, the court will obviously entertain legitimate objections to the use of the court's FFCL during trial and will address these issues on a case by case basis as they arise.

## IV. CONCLUSION

For the foregoing reasons, the court concludes that it is appropriate to use the FFCL during the jury phase of this case as described above.

Dated this 25th day of August, 2013.

JAMES L. ROBART
United States District Judge