# EXHIBIT 3

**Statement of the Federal Trade Commission**
*In the Matter of Google Inc.*
FTC File No. 121-0120
January 3, 2013

  The Federal Trade Commission has today voted to issue for public comment a Complaint and Order against Google Inc. ("Google") designed to remedy Google's allegedly anticompetitive conduct resulting from breaches by Google and its subsidiary Motorola Mobility, Inc. ("Motorola") of Motorola's commitments to license standard-essential patents ("SEPs") on terms that are fair, reasonable and non-discriminatory ("FRAND").[1]  The Complaint alleges that, before its acquisition by Google, Motorola reneged on a licensing commitment made to several standard-setting bodies to license its standard-essential patents relating to smartphones, tablet computers, and video game systems on FRAND terms by seeking injunctions against willing licensees of those SEPs.[2]  This conduct tended to impair competition in the market for these important electronic devices – products that over half of Americans own and use daily, including iPhones, iPads and Xboxes.  After purchasing Motorola for $12.5 billion in June 2012, Google continued Motorola's conduct.  These actions constitute unfair methods of competition, as well as unfair acts and practices, in violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45.

  Google's settlement with the Commission requires Google to withdraw its claims for injunctive relief on FRAND-encumbered SEPs around the world, and to offer a FRAND license to any company that wants to license Google's SEPs in the future.  If accepted by the Commission, the Proposed Order may set a template for the resolution of SEP licensing disputes across many industries, and reduce the costly and inefficient need for companies to amass patents for purely defensive purposes in industries where standard-compliant products are the norm.

  The Commission has a long history of using its enforcement authority to safeguard the integrity of the standard-setting process.[3]  Standard setting can deliver substantial benefits to American consumers, promoting innovation, competition, and consumer choice.  But standard setting often supplants the competitive process with the collective decision-making of competitors, requiring that we be vigilant in protecting the integrity of the standard-setting

---

[1] The licensing obligation in this matter was a FRAND obligation, although RAND (reasonable and non-discriminatory) licensing obligations raise similar issues.

[2] Commissioners Rosch and Ohlhausen do not join this Statement (with Commissioner Ohlhausen voting against the consent agreement) and have issued separate statements expressing their views.

[3] *See In re Dell Computer Corp.*, 121 F.T.C. 616 (1996); *In re Union Oil Company of California*, 2004 FTC LEXIS 115 (July 7, 2004); *In re Rambus, Inc.*, Dkt. No. 9302, 2006 FTC LEXIS 101 (Aug. 20, 2006), *rev'd*, *Rambus Inc. v. F.T.C.*, 522 F.3d 456 (D.C. Cir. 2008); *In re Negotiated Data Solutions LLC*, FTC File No. 051-0094, Decision and Order (Jan. 23, 2008), *available at* http://www.ftc.gov/os/caselist/0510094/080122do.pdf; *In re Robert Bosch GmbH*, FTC File N. 121-0081, Decision and Order (Nov. 26, 2012), *available at* http://www.ftc.gov/os/caselist/1210081/121126boschdo.pdf.

Case No. 10-1823, W.D.Wash.
MICROSOFT TRIAL EXHIBIT
**6009**

MS-MOTO_1823_00005257636

process.[4] Today's Commission action helps ensure consumers will continue to see the benefits of competition and innovation in important technology markets.

We previously explained in the Commission's unanimous filings before the United States International Trade Commission in June 2012 that the threat of injunctive relief "in matters involving RAND-encumbered SEPs, where infringement is based on implementation of standardized technology, has the potential to cause substantial harm to U.S. competition, consumers and innovation."[5] The threat of an injunction allows a SEP holder to demand and realize royalty payments reflecting the investments firms make to develop and implement the standard, rather than the economic value of the technology itself.[6] In addition to harming incentives for the development of standard-compliant products, the threat of an injunction can also lead to excessive royalties that may be passed along to consumers in the form of higher prices. Alternatively, an injunction or exclusion order could ban the sale of important consumer products entirely. This type of "patent ambush" harms competition and consumers and is rightly condemned by the Commission.[7]

We take this action pursuant to the Commission's authority under Section 5 to prohibit unfair methods of competition, which both Congress and the Supreme Court have expressly deemed to extend beyond the Sherman Act.[8] A stand-alone Section 5 unfair methods of

---

[4] *See, e.g., Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 500-01 (1988) (noting that "private standard-setting associations have traditionally been objects of antitrust scrutiny" because of their potential use as a means for anticompetitive agreements among competitors).

[5] Third Party United States Federal Trade Commission's Statement on the Public Interest filed on June 6, 2012 in *In re Certain Wireless Communication Devices, Portable Music & Data Processing Devices, Computers and Components Thereof*, Inv. No. 337-TA-745, *available at* www.ftc.gov/os/2012/06/1206ftcwirelesscom.pdf and in *In re Certain Gaming and Entertainment\ Consoles, Related Software, and Components Thereof*, Inv. No. 337-TA-752, *available at* http://www.ftc.gov/os/2012/06/1206ftcgamingconsole.pdf.

[6] *Id.* at 3-4 ("[A] royalty negotiation that occurs under threat of an exclusion order may be weighted heavily in favor of the patentee in a way that is in tension with the RAND commitment. High switching costs combined with the threat of an exclusion order could allow a patentee to obtain unreasonable licensing terms despite its RAND commitment, not because its invention is valuable, but because implementers are locked in to practicing the standard. The resulting imbalance between the value of patented technology and the rewards for innovation may be especially acute where the exclusion order is based on a patent covering a small component of a complex multicomponent product. In these ways, the threat of an exclusion order may allow the holder of a RAND-encumbered SEP to realize royalty rates that reflect patent hold-up, rather than the value of the patent relative to alternatives, which could raise prices to consumers while undermining the standard setting process.").

[7] A number of courts have recognized the tension between Google's FRAND commitments and seeking injunctive relief. *See, e.g., Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 885 (9th Cir. 2012) ("Implicit in such a sweeping promise is, at least arguably, a guarantee that the patent-holder will not take steps to keep would-be users from using the patented material, such as seeking an injunction, but will instead proffer licenses consistent with the commitment made."); *Apple, Inc. v. Motorola, Inc.*, No. 1:11-cv-08540, 2012 U.S. Dist. LEXIS 89960, at *45 (N.D. Ill. June 22, 2012) (Posner, J., sitting by designation) ("I don't see how, given FRAND, I would be justified in enjoining Apple from infringing the '898 [patent] unless Apple refuses to pay a royalty that meets the FRAND requirement. By committing to license its patents on FRAND terms, Motorola committed to license the '898 to anyone willing to pay a FRAND royalty and thus implicitly acknowledged that a royalty is adequate compensation for a license to use that patent. How could it do otherwise?").

[8] *See, e.g., F.T.C. v. R.F. Keppel & Bros., Inc.*, 291 U.S. 304, 310-313 (1934); *F.T.C. v. Cement Inst.*, 333 U.S. 683, 693 & n.6 (1948); *F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 241-244 (1972).

MS-MOTO_1823_00005257637

competition claim allows the Commission to protect consumers and the standard-setting process while minimizing the often burdensome combination of class actions and treble damages associated with private antitrust enforcement. In a society that all of us recognize is overly litigious, the judicious use of Section 5 is a sensible and practical way for the Commission to bring problematic conduct to a halt. [9]

For these reasons, we respectfully disagree with the view of Commissioners Rosch and Ohlhausen that the conduct we challenge here, and the similar acts we challenged in *Bosch*, represent an undisciplined or unwarranted application of our unfair methods of competition authority. As we have previously explained, we believe that a breach of a FRAND commitment in the context of standard setting poses serious risks to the standard-setting process, competition, and consumers. [10] Where opportunistic behavior of the sort involved here (and in *Bosch*) harms, or threatens to harm, competition, the competitive process, and consumers, Commission intervention is justified. Accordingly, our colleagues' contention that we are applying our unfair methods of competition authority without regard for limiting principles is simply wrong. In fact,

---

[9] Chairman Leibowitz and Commissioner Brill support an unfair acts claim as well as an unfair methods claim. They have a reason to believe that seeking injunctions on FRAND-encumbered SEPs is likely to cause substantial harm to end-use consumers and, because FRAND commitments made to a standard-setting body often induce industry-wide lock-in and eliminate alternative technologies, this harm may not be reasonably avoided by consumers. Google's threat of injunctions would likely increase costs to consumers because manufacturers using Google's SEPs would be forced, by the threat of an injunction, to pay higher royalty rates, which would be passed on to consumers. There is nothing trivial or attenuated about these injuries; they are not outweighed by any offsetting consumer or competitive benefit; and they cannot be reasonably avoided by consumers. *See* Compl. ¶ 32. Commissioners Ramirez and Ohlhausen believe that these injuries are a significant departure from the type of injury contemplated by the Commission's 1980 Unfairness Policy Statement. Chairman Leibowitz and Commissioner Brill disagree. These injuries to end-use consumers as a result of Google's conduct are unique and particularly harmful, and use of the Commission's unfairness authority in this instance is appropriate and consistent with precedent. At this stage of the proceeding, Chairman Leibowitz and Commissioner Brill have a reason to believe that a violation has occurred based on these facts. If this matter were not being resolved through a Proposed Order, Chairman Leibowitz and Commissioner Brill would refrain from forming a final view on whether this evidence supports an unfair acts claim until after an administrative hearing, at which time the Commission would have the benefit of a full evidentiary record developed at trial.

Commissioner Ramirez dissents from the Commission's decision to use its unfair acts or practices authority to challenge Google's alleged violation of its FRAND commitments. In her view, the conduct and harm at issue fall squarely within Section 5's prohibition on unfair methods of competition but are a significant departure from the type of direct consumer transactions and immediate injury contemplated by the Commission's 1980 Unfairness Policy Statement. While there may be situations where it would be appropriate to allege an unfairness claim to address harm to competition or the competitive process, in this instance the claim neither reaches acts or injury not already encompassed by unfair methods of competition nor provides any additional relief. Under these circumstances, Commissioner Ramirez believes the majority's application of the Commission's unfairness authority is unwarranted.

[10] *See Robert Bosch*, Statement of the Federal Trade Commission, at 3 ("[Respondent]'s failure to abide by its commitment took place in the standard-setting context. In that setting, long an arena of concern to the Commission, a breach of contract risks substantial consumer injury. The standard setting context, together with the acknowledgment that a FRAND commitment also depends on the presence of a willing licensee, appropriately limit the Commission's enforcement policy and provide guidance to standard-setting participants."), *available at* http://www.ftc.gov/os/caselist/1210081/121126boschcommissionstatement.pdf; *Negotiated Data Solutions*, Analysis of Proposed Consent Agreement to Facilitate Public Comment, at 6 ("A mere departure from a previous licensing commitment is unlikely to constitute an unfair method of competition under Section 5. The commitment here was in the context of standard-setting."), *available at* http://www.ftc.gov/os/caselist/0510094/080122analysis.pdf.

3

we note that our action is plainly consistent with several principles identified by Commissioner Rosch as justifying Commission action under Section 5.[11]

We also disagree with Commissioner Ohlhausen's claim that the proposed settlement with Google creates uncertainty for market participants. In our view, it does just the opposite. By taking action that may deter the owners of standard-essential patents from unilaterally defining the terms of FRAND agreements through the exercise of leverage acquired solely through the standard-setting process, we protect the integrity of that process. Moreover, we believe the procedures outlined in the proposed settlement will provide useful guidance to market participants, including SSOs, in developing a predictable approach to resolve licensing disputes involving standard-essential patents. This will benefit all stakeholders, including patentees, implementers, and consumers.

We also believe that Commissioner Ohlhausen is incorrect in her claim that our allegations are in conflict with prior court rulings and in particular with certain findings of the district court in *Apple, Inc. v. Motorola Mobility, Inc.*[12] The court's determination in that case, made in connection with a decision on a motion *in limine* – not a trial on the merits – concerned the application of Wisconsin contract law. At most, the ruling suggests there is a question of fact as to whether Motorola's injunctive relief claims violated its contract with the SSOs.[13] The evidence before us provides us with sufficient reason to believe that a violation of Google and MMI's FRAND commitments occurred.[14]

Finally, we are not persuaded by Commissioner Ohlhausen's argument that the conduct alleged in the Commission's complaint implicates the First Amendment and the *Noerr-Pennington* doctrine. As noted above, we have reason to believe that MMI willingly gave up its

---

[11] *Compare* Commissioner J. Thomas Rosch, The FTC's Section 5 Hearings: New Standards for Unilateral Conduct? (Mar. 25, 2009), at 6 (identifying the context of standard setting as a limiting principle for Section 5) *with* Complaint ¶¶ 1-4 (describing the effect of Google's alleged conduct on the standard setting process); Commissioner J. Thomas Rosch, Wading Into Pandora's Box: Thoughts On Unanswered Questions Concerning the Scope and Application of Section 2 & Some Further Observations on Section 5 (Oct. 3, 2009), at 20 (identifying monopoly power as a limiting principle for Section 5) *with* Complaint ¶¶20-21 (alleging Google's monopoly power); Commissioner J. Thomas Rosch, The Path You Need Not Travel: Observations on Why Canada Can Do Without Section 5 (Feb. 4, 2010), at 5 (identifying harm to competition as a limiting principle for Section 5) *with* Complaint ¶ 28 (alleging harm to competition).

[12] 2012 U.S. Dist. LEXIS 181854, *35-46 (W.D. Wis. Oct. 29, 2012).

[13] The court denied Motorola's motion seeking a ruling that as a matter of law it could not have violated its FRAND commitments, establishing the existence of a fact issue. *Id.* at *45-46.

[14] We also disagree with our colleague as to the relevance of *Commonwealth Sci. & Indus. Research Organisation v. Buffalo Tech. Inc.*, 492 F. Supp. 2d 600 (E.D. Tex. 2007) ("CISRO"), to the Commission's action here. Commissioner Ohlhausen cites *CISRO* for the proposition that "it should have been a reasonable expectation since that time [the decision of *CISRO* in 2007] to IEEE members (including affected parties here) that an injunction could issue in certain situations even on a RAND-encumbered SEP." *See* Dissenting Statement at 5. We agree that injunctions may issue in certain situations even when a RAND-encumbered SEP is involved, such as when a licensee is unwilling to license on FRAND terms – and have embedded this concept in the Proposed Decision and Order in both *Bosch* and this case.

right to seek injunctive relief when it made the FRAND commitments at issue in this case.[15] We do not believe that imposing Section 5 liability where a SEP holder violates its FRAND commitments offends the First Amendment because doing so in such circumstances "simply requires those making promises to keep them."[16]

---

[15] *See, e.g., Powertech Technology, Inc. v. Tessera, Inc.*, 2012 U.S. Dist. LEXIS 70630, *17-18 (N.D. Cal. May 21, 2012) (holding that when the patent holder had contracted away its rights to bring claims before the United States International Trade Commission, a challenge to a breach of that commitment was not barred by *Noerr*).

[16] *Cohen v. Cowles Media Co.*, 501 U.S. 663, 670-71 (1991).

MS-MOTO_1823_00005257640