UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MOTOROLA INC., et al.,<br><br>Defendants. | CASE NO. C10-1823JLR<br><br>[MOTOROLA'S PROPOSED REVISIONS TO] FINAL JURY INSTRUCTIONS |
| MOTOROLA MOBILITY, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | |

**PROPOSED FINAL JURY INSTRUCTIONS**

## 1.   DUTY OF JURY

Members of the Jury:  Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case.  Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

Source:  Model Civ. Jury Instr. 9th Cir. 1.1C (2007)

## 2.     BURDEN OF PROOF

When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.  You should base your decision on all of the evidence, regardless of which party presented it.

Source:  Model Civ. Jury Instr. 9th Cir. 1.3 (2007).

### 3.    WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.    the sworn testimony of any witness;

2.    the exhibits which are received into evidence; and

3.    any facts to which the lawyers have agreed.

Source:  Model Civ. Jury Instr. 9th Cir. 1.6 (2007).

## 4.     WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses.  What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

Source:  Model Civ. Jury Instr. 9th Cir. 1.7 (2007).

### 5.      EVIDENCE FOR A LIMITED PURPOSE

Some evidence may be admitted for a limited purpose only.

When I instructed you that an item of evidence has been admitted for a limited

purpose, you must consider it only for that limited purpose and for no other.

Source:  Model Civ. Jury Instr. 9th Cir. 1.8 (2007).

### 6.    DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk.  Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

Source:  Model Civ. Jury Instr. 9th Cir. 1.9 (2007).

## 7.    RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.

If I overruled the objection, the question was answered or the exhibit received.  If I sustained the objection, the question was not answered or the exhibit was not received. Whenever I sustained an objection to a question, you must ignore the question and must not guess at what the answer might have been.

Sometimes I ordered that evidence be stricken from the record and that you disregard or ignore the evidence.  That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

Source:  Model Civ. Jury Instr. 9th Cir. 1.10 (2007).

## 8.      CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

Source:  Model Civ. Jury Instr. 9th Cir. 1.11 (2007).

### 9.    EXPERT OPINION

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

Source:  Model Civ. Jury Instr. 9th Cir. 2.11 (2007).

## 10.   STIPULATIONS OF FACT

The parties have agreed to certain facts that will be read to you.  You should therefore treat these facts as having been proved.  The parties have stipulated to the following facts:

1.      Microsoft is a Washington corporation having its principal place of business in Redmond, Washington.

2.      Motorola, Inc. has changed its corporate name to Motorola Solutions, Inc. Motorola Solutions is a Delaware corporation, having its principal place of business in Schaumburg, Illinois.

3.      Motorola Mobility LLC is a Delaware limited liability company, having its principal place of business in Libertyville, Illinois.  Motorola Mobility LLC's predecessor-in-interest was Motorola Mobility Inc. ("MMI"), which was a Delaware corporation having its principal place of business in Libertyville, Illinois.

4.      MMI was a wholly-owned subsidiary of Motorola Mobility Holdings, Inc., which was a wholly owned subsidiary of Motorola, Inc.  MMI was spun off from Motorola, Inc. on January 4, 2011.  MMI was acquired by Google, Inc. on May 22, 2012. Motorola Mobility LLC is MMI's successor-in-interest and a wholly-owned subsidiary of Google, Inc.

5.      General Instrument Corporation is a Delaware corporation, having its principal place of business in Horsham, Pennsylvania.  General Instrument Corporation was a wholly-owned subsidiary of MMI and now is a wholly-owned subsidiary of Motorola Mobility LLC.

6.      The parties are members of the Institute of Electrical and Electronics Engineers ("IEEE").

7.      The IEEE-SA is the division of the IEEE devoted to the development of

industry standards.

8.      The IEEE-SA developed the 802.11 wireless communication standard.  The 802.11 standard was initially released in 1997.  It has been amended and revised numerous times since 1997 (e.g., 802.11a, 802.11b, 802.11g, and 802.11n).

9.      The parties are members of the International Telecommunication Union ("ITU").  The ITU Telecommunications Standardization Sector ("ITU-T") is one of the three sectors (divisions or units) of the International Telecommunication Union; it coordinates standards for telecommunications.

10.      The ITU-T is responsible for the development of thousands of standards.

11.      The ITU-T, in conjunction with two other standards bodies, the International Organization for standardization (ISO) and the International Electrotechnical Commission (IEC), developed the H.264 video compression standard.

12.      Defendants submitted numerous Letters of Assurance to the IEEE-SA in connection with its development of the 802.11 standard.

13.      Defendants submitted numerous Patent Statement and Licensing Declarations to the ITU-T in connection with the development of the H.264 standard.

14.      In submitting Letters of Assurance to the IEEE-SA covering their 802.11 standard-essential patents, Defendants stated that they "will grant" or "[are] prepared to grant" worldwide, irrevocable, non-exclusive licenses to their 802.11 standard-essential patents covered by each Letter of Assurance on Reasonable and Non-Discriminatory ("RAND") terms and conditions.

15.      Defendants sent Microsoft a letter on October 21, 2010, that contained certain proposed royalty terms for a license to Defendants' patents that "may be or become" essential to the 802.11 standard, and stated that "Motorola will leave this offer

1   open for 20 days.  Please confirm whether Microsoft accepts the offer."

2          16.     Defendants sent Microsoft a letter on October 29, 2010, that contained

3   certain proposed royalty terms for a license to Defendants' patents essential to the H.264

4   standard, and stated that "Motorola will leave this offer open for 20 days.  Please confirm

5   whether Microsoft accepts the offer."

Source:  Model Civ. Jury instr. 9th Cir. 2.2 (2007); (Proposed Pretrial Order (Dkt. # 802)).

**11.     SUMMARIES AND CHARTS NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

Source:  Model Civ. Jury Instr. 9th Cir. 2.12 (2007).

## 12.   CHARTS AND SUMMARIES RECEIVED IN EVIDENCE

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.


Source:  Model Civ. Jury Instr. 9th Cir. 2.13 (2007).

### 13.    CONTRACT DEFINED

A contract is a legally enforceable promise or set of promises.

Source:  Washington Pattern Jury Instructions – Civil ("WPI") 301.01.

## 14.   ISSUES –BREACH OF CONTRACT

### (Issues — Breach of Contract | MOTOROLA's alternative)

The following is a summary of the claims of the parties provided to help you understand the issues in the case.  You are not to take this instruction as proof of the matters claimed.  It is for you to decide, based upon the evidence presented, whether a claim has been proved.

The plaintiff, Microsoft, claims that the defendant, Motorola, breached ~~its~~ the duty of good faith implied in its~~binding~~ contractual commitment with the IEEE in one or more of the following ways~~, or a combination thereof~~:

— by the terms contained in the October 21, 2010, letter offering to license Motorola's 802.11 standard essential patents;

— by filing lawsuits and seeking injunctive relief based on standard essential patents in the International Trade Commission ("ITC"), United States District Courts, and/or Germany; and/or

— by having not executed a license agreement covering its 802.11 standard essential patents with Marvell, Microsoft's chip supplier.

Microsoft also claims that defendant Motorola breached ~~its~~ the duty of good faith implied in its binding contractual commitment with the ITU in one or more of the following ways~~, or a combination thereof~~:

— by the terms contained in the October 29, 2010, letter offering to license Motorola's H.264 standard essential patents;

— by filing lawsuits and seeking injunctive relief based on standard essential patents in the ITC, United States District Courts, and/or Germany.

Microsoft also claims that it sustained damages as a result of these breaches of Motorola's commitments to the IEEE and ITU, and it seeks a judgment against Motorola for these damages.

- 17

1    Motorola denies that any of its conduct constituted a breach of its contractual
2 commitment with the IEEE and ITU and denies that it violated any duty of good faith and
  fair dealing implied in its contract with the IEEE and the ITU. hese claims.
3    Motorola further denies that Microsoft was damaged and denies that any damages
4 were the result of Motorola's conduct.  Motorola further denies the nature and extent of
  the claimed damages.

10 Source:  WPI 300.01; Microsoft's Response to Motorola's Interrogatory No. 3, and
   supplements thereto (setting forth the basis for Microsoft's contention  that Motorola
11 breached a contract).

**15.     BURDEN OF PROOF ON THE ISSUES - BREACH OF CONTRACT**

The plaintiff, Microsoft, has the burden of proving each of the following four propositions on its claims of breach of contract with respect to the IEEE:

(1) that the defendant, Motorola, entered into a contract with the IEEE;

(2) that the terms of the contract included:

> that Motorola was required to make available and grant a license to its 802.11 standard essential patents to an unrestricted number of applicants on a worldwide basis under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination;

(3) that Motorola breached the contract in one or more of the ways claimed by Microsoft; and

(4) that Microsoft was damaged as a result of Motorola's breach.

I have already ruled that Motorola entered into an enforceable contract with the IEEE that included the language in subsection (2) above.  The court has also already ruled that Microsoft is a third-party beneficiary to this contract because Microsoft is a member of the IEEE and is a prospective user of the 802.11 Standard.  As a third-party beneficiary, Microsoft may enforce Motorola's contract with the IEEE.  You must follow these rulings and therefore you need not determine whether Microsoft proved the first two elements of this claim.  However, you must determine whether Microsoft has proven each of the other two propositions listed above.  If you find from your consideration of all of the evidence that one or more of the other two propositions listed above has not been proved, your verdict should be for Motorola.  On the other hand, if each of these

propositions has been proved, your verdict should be for Microsoft on its claim with

respect to the IEEE.

Microsoft also has the burden of proving each of the following propositions on its

claims of breach of contract with respect to the ITU:

(1) that the defendant, Motorola, entered into a contract with the ITU;

(2) the terms of the contract included:

that Motorola was required to grant a license for its H.264 standard
essential patents to an unrestricted number of applicants on a world-wide,
non-discriminatory basis and on reasonable terms and conditions to make,
use and sell products compliant with the H.264 Standard.

(3) that Motorola breached the contract in one or more of the ways claimed by

Microsoft; and

(4) that Microsoft was damaged as a result of Motorola's breach.

I have already ruled that Motorola entered into an enforceable contract with the

ITU that included the language in subsection (2) above.  The court has also already ruled

that Microsoft is a third-party beneficiary to this contract because Microsoft is a member

of the ITU and is a prospective user of the H.264 Standard.  As a third-party beneficiary,

Microsoft may enforce Motorola's contract with the ITU.  You must follow these rulings,

and therefore, you need not determine whether Microsoft proved the first two elements of

this claim as to Motorola.  However, you must determine whether Microsoft has proven

each of the other two propositions listed above.  If you find from your consideration of all

of the evidence that one or more of the other two propositions listed above has not been

proved, your verdict should be for Motorola.  On the other hand, if each of these

1  propositions has been proved, then your verdict should be for Microsoft on its claim with

2  respect to the ITU.

3  Source:  WPI 300.03; (3/27/12 Order (Dkt. # 188) at 10.)

## 16.    DUTY OF GOOD FAITH AND FAIR DEALING IN THE RAND CONTEXT

As explained above in Instruction # 15, element (2), Motorola's contract with the IEEE required Motorola to grant Microsoft a license to Motorola's 802.11 standard essential patents on a worldwide basis under reasonable rates, with reasonable terms and conditions demonstrably free of any unfair discrimination.  Likewise, Motorola's contract with the ITU required Motorola to grant Microsoft a license to Motorola's H.264 standard essential patents on a world-wide, non-discriminatory basis and on reasonable terms and conditions.  For short, the parties have referred to these requirements as Motorola's reasonable and non-discriminatory ("RAND") commitments.

Although Motorola is required to grant a RAND license, the specific terms of the license are left to the parties.  Nevertheless, in its efforts fulfill its commitments to grant a RAND license, Motorola must comply with its duty of good faith and fair dealing, described below in Instruction # 17.  If you find that Motorola violated its duty of good faith and fair dealing in its efforts to fulfill its commitments, then you must find that Motorola breached its contracts with either the IEEE or the ITU, respectively; in other words, you must find that Microsoft has proved element (3) in Instruction # 15 for that contract.

Source:  (8/12/13 Order (Dkt. # 843) at 23-24; FFCL (Dkt. # 681) ¶ 32.)

- 22

## ~~17.~~**16.** DUTY OF GOOD FAITH AND FAIR DEALING

A duty of good faith and fair dealing is implied in every contract.  A contract is breached by violation of this duty.  The duty of good faith and fair dealing requires that the parties to the contract cooperate with each other so that each may obtain the full benefit of performance, even if the parties have different requirements under the contract.  However, this duty does not require a party to accept a material change in the terms of its contract.  The implied duty of good faith and fair dealing arises out of the obligations created by a contract and only exists in relation to the performance of specific contract terms.  Thus, a party's duty is only to perform, in good faith, the obligations imposed by the contract.  There is no "free-floating" duty of good faith and fair dealing that injects substantive terms into the parties' contract.

The following types of acts are examples of conduct that in other cases have been found to violate the duty of good faith and fair dealing:  (1) evasion of the spirit of the bargain; (2) willful rendering of imperfect performance; (3) interference with or failure to cooperate in the other party's performance; (4) abuse of discretion granted by the contract; or (5) lack of diligence in performing the terms of the contract.  Each case, however, presents its own unique circumstances, and you should view this list only as an illustration of the kinds of conduct that can violate the duty of good faith and fair dealing.  You are not to use this list as a complete catalogue of conduct that violates the duty of good faith and fair dealing or as a standard under which to assess the parties' conduct.

It is your job to determine whether Motorola breached its duty of good faith and fair dealing in carrying out the terms of the contracts at issue in this case. Good faith performance of a contract requires being faithful to the agreed common purpose of the contract and performing consistently with the justified expectations of the other parties. On the other hand, bad faith performance involves conduct that violates community standards of decency, fairness, or reasonableness.

In deciding whether Motorola breached its duty of good faith and fair dealing, you may consider the following factors:

(1) Whether Motorola's actions were contrary to the reasonable and justified expectations of other parties to the contract;

(2) Whether Motorola's conduct would frustrate the purpose of the contract;

(3) Whether Motorola's conduct was commercially reasonable;

(4) Whether and to what extent Motorola's conduct conformed with ordinary custom or practice in the industry;

(5) To the extent the contract vested Motorola with discretion in deciding how to act, whether Motorola exercised that discretion reasonably;

(6) Subjective factors, such as Motorola's intent and whether Motorola had a bad motive.

You may give to each of these factors the weight you think appropriate. If you consider subjective factors such as Motorola's intent or motive, you must be aware that this is only one consideration and it need not dictate your final decision. Bad motive or intent does not necessarily imply bad faith, and good motive or intent does not

1   necessarily imply good faith.  Likewise, bad motive or intent is not a prerequisite to bad

2   faith, nor is good motive or intent a prerequisite to good faith.

3   Source:  (8/12/13 Order (Dkt. # 843) at 10-14 (citing cases).)

## 17.    DUTY OF GOOD FAITH AND FAIR DEALING IN THE RAND CONTEXT

As explained above in Instruction # 15, element (2), Motorola's contract with the IEEE required Motorola to grant Microsoft a license to Motorola's 802.11 standard essential patents on a worldwide basis **to a willing licensee** under reasonable rates, with reasonable terms and conditions demonstrably free of any unfair discrimination. Likewise, Motorola's contract with the ITU required Motorola to grant Microsoft a license to Motorola's H.264 standard essential patents on a world-wide, non-discriminatory basis and on reasonable terms and conditions **to a willing licensee**.  For short, the parties have referred to these requirements as Motorola's reasonable and non-discriminatory ("RAND") commitments.

Although Motorola is required to grant a RAND license, the specific terms of the license are left to the parties.  Nevertheless, in its efforts fulfill its commitments to grant a RAND license, Motorola must comply with its duty of good faith and fair dealing, described below in Instruction # 17.  If you find that Motorola violated its duty of good faith and fair dealing in its efforts to fulfill its commitments, then you must find that Motorola breached its contracts with either the IEEE or the ITU, respectively; in other words, you must find that Microsoft has proved element (3) in Instruction # 15 for that contract.

Source:  (8/12/13 Order (Dkt. # 843) at 23-24; FFCL (Dkt. # 681) ¶ 32.)

## 18.    PURPOSE OF THE RAND COMMITMENT

As set forth in Instruction # 17, one factor to consider in determining if Motorola breached its duty of good faith and fair dealing is whether Motorola's conduct frustrated the purpose of the contract.  The purposes of the RAND commitment are:

(1) To encourage widespread adoption of the standard;

(2)  to prevent patent "hold-up," which is the ability of a standard essential patent owner to demand more than the value of its patented technology;

(3) to prevent "royalty stacking," which is the payment of excessive royalties to many different standard essential patent owners; and

(4) to induce the creation of valuable standards by ensuring that owners of valuable patents will receive reasonable royalties for their patents.

Source:  (FFCL (Dkt. # 681) ¶¶ 51-69.)

**19.   OFFERS TO LICENSE STANDARD ESSENTIAL PATENTS**

Microsoft claims that Motorola's October 21 and 29 offer letters breached Motorola's duty of good faith and fair dealing.  In assessing this claim, you should rely on the good faith and fair dealing standard set forth in Instruction # 17.  Further, in the context of offering to license standard essential patents subject to a RAND commitment, there are additional legal principles that you should be aware of:

(1) Initial offers in a RAND licensing negotiation do not need to be on RAND terms;

(2) Any offer by Motorola (be it an initial offer or an offer during a back-and-forth negotiation) must comport with the duty of good faith and fair dealing set forth in Instruction # 17;

(3) In determining whether Motorola's October offer letters complied with Motorola's duty of good faith and fair dealing, you may compare Motorola's offers against the RAND royalty rate and range determined by the court and set forth in Instruction # 20.  However, the size of an offer alone is not exclusively dispositive of whether Motorola has breached its duty of good faith and fair dealing.  To determine whether Motorola's offer breached its duty of good faith and fair dealing, you must use the standard set forth in Instruction # 17.

Source:  (6/6/12 Order (Dkt. # 335) at 24-25.)

## 20.   COURT-DETERMINED RAND RATE AND RANGE

As I stated at the beginning of the trial, this case has been conducted in two phases, and this is the second phase.  In the first phase, I conducted a bench trial, the purpose of which was to determine a RAND royalty rate and range for Motorola's standard essential patents.  As I told you before, the IEEE and ITU do not set RAND rates at which parties are required to license their standard essential patents.  Instead, negotiations over RAND rates are left to the parties.  Here, the parties never agreed on a RAND rate to license Motorola's standard essential patents.  However, in order for you to properly assess Microsoft's breach of contract claim, you must know what a RAND royalty rate and range would be for Motorola's standard essential patents.

I will now tell you again what those rates are.  For each group of standard essential patents, I have found both a RAND rate and a RAND range.  This reflects the fact that more than one licensing rate could be RAND.  The RAND ranges are defined by an upper bound and a lower bound.  To determine the RAND rate and range, I assumed that Microsoft and Motorola engaged in negotiations and found the rate and range that the parties would have agreed to through such negotiations.

I found that a RAND royalty rate for Motorola's H.264 standard essential patent portfolio is 0.555 cents per unit, with the upper bound of a RAND royalty for Motorola's H.264 standard essential patent portfolio being 16.389 cents per unit and the lower bound being 0.555 cents per unit.  This rate and range is applicable to both Microsoft Windows

and Xbox products.  For all other Microsoft products using the H.264 Standard, the royalty rate is the lower bound of 0.555 cents per unit.

I also concluded in that previous trial that the RAND royalty rate for Motorola's 802.11 standard essential patent portfolio is 3.471 cents per unit, with the upper bound being 19.5 cents per unit and the lower bound being 0.8 cents per unit.  This rate and range is applicable to Microsoft Xbox products.  For all other Microsoft products using the 802.11 Standard, the royalty rate is the lower bound of 0.8 cents per unit.

In the bench trial, I did not decide whether Motorola breached its contracts with the IEEE and ITU.  That is for you to decide, and you alone.  Throughout this trial, you may have heard lawyers refer to the bench trial and to the Findings of Fact and Conclusions of Law that I made in that trial.  You must follow the legal rulings I made in that trial and accept the facts that I found, but you are not to take any reference to the previous trial as deciding the breach of contract issues in this case or as implying for which side your verdict should be rendered.  In the prior trial, I did not examine whether Motorola breached its contractual commitments with the IEEE and ITU by violating the covenant of good faith and fair dealing that is implied in those contracts.  I have not made a decision on those issues.  It is for you, and you alone, to determine whether Motorola breached its contractual commitments based on the evidence you heard in this trial.

Source:  (FFCL (Dkt. # 681) at 207.)

## 21.    INJUNCTIVE RELIEF IN THE RAND CONTEXT

Microsoft claims that Motorola's actions in seeking injunctive relief in the ITU, United States District Courts, and/or in Germany violated Motorola's duty of good faith and fair dealing.  In assessing this claim, you should again rely on the good faith and fair dealing standard set forth in Instruction # 17.  Further, in the context of seeking injunctive relief for standard essential patents subject to a RAND commitment, there are additional legal principles that you should be aware of:

(1) The RAND commitment does not by itself bar standard essential patent owners from ever, in any circumstances, seeking injunctive relief to enforce their patents.

(2) However, in some circumstances, it may be a breach of the duty of good faith and fair dealing for a standard essential patent holder to seek injunctive relief against a standard essential patent implementer.  To determine whether Motorola's actions in seeking injunctive violated Motorola's duty of good faith and fair dealing, you must use the standard set forth in Instruction # 17.

Source:  (8/12/13 Order (Dkt. # 843) at 24.)

## 22.    MICROSOFT'S RIGHT TO ENFORCE

Microsoft did not repudiate or forfeit any of its rights under the contracts by seeking the Court's assistance through the present lawsuit against Motorola.  Microsoft had neither a duty to first apply for a license from Motorola nor a duty to negotiate in good faith with Motorola before Motorola's RAND licensing obligations were triggered.

[ *If the Court gives this instruction, Motorola would add the following*:

Motorola had no obligation to make a RAND offer to Microsoft before filing a patent infringement lawsuit on SEPs.  Microsoft's filing of this lawsuit on November 9, 2010 did not constitute an offer or commitment to license on RAND terms.]

Source: (2/27/12 Order (Dkt. # 188) at 15-16, 19;.)  5/14/12 Order (Dkt. 318) at 16 n.12.)

## ~~23.~~22. BREACH OF CONTRACT – ALLOWED RECOVERY

It is the duty of the court to instruct you as to the measure of damages.

By instructing you on damages the court does not mean to suggest for which party your verdict should be rendered.

In order to recover actual damages, Microsoft has the burden of proving that Motorola breached a contract with the IEEE or the ITU, and that Microsoft incurred actual economic damages as a result of the breach, and the amount of those damages.

If your verdict is for Microsoft on Microsoft's IEEE breach of contract claim, and if you find that plaintiff has proved that Microsoft incurred actual damages and the amount of those actual damages, then you shall award actual damages to Microsoft.

Similarly, if your verdict is for Microsoft on Microsoft's ITU breach of contract claim, and if you find that Microsoft has proved that it incurred actual damages and the amount of those actual damages, then you shall award actual damages to Microsoft.

Actual damages are those losses that were reasonably foreseeable, at the time the contract was made, as a probable result of a breach.  A loss may be foreseeable as a probable result of a breach because it follows from the breach either

(a) in the ordinary course of events, or

(b) as a result of special circumstances, beyond the ordinary course of events, that the party in breach had reason to know.

1    In calculating Microsoft's actual damages on its IEEE contract claim, you should

2  determine the sum of money that will put Microsoft in as good a position as it would

3  have been in had Motorola performed all of its promises under the IEEE contract.

4    In calculating Microsoft's actual damages on its ITU contract claim, you should

5  determine the sum of money that will put Microsoft in as good a position as it would

6  have been in had Motorola performed all of its promises under the ITU contract.

7    The burden of proving damages rests with Microsoft and it is for you to determine,

8  based upon the evidence, whether any particular element has been proved by a

9  preponderance of the evidence.  You must be governed by your own judgment, by the

10  evidence in the case, and by these instructions, rather than by speculation, guess, or

11  conjecture.

12

13  Source:  WPI 303.03.

14

15

16

17

18

19

20

21

22

### 24.23. BREACH OF CONTRACT – MEASURE OF DAMAGES

With regard to Microsoft's breach of contract claims, in your determination of damages you are to use the following measure of damages, in the amounts proved by Microsoft:

(a) the costs that Microsoft incurred for relocating Microsoft's distribution centers from Germany to the Netherlands in Spring 2012 to avoid the consequences of the injunctive relief sought by Motorola Mobility, Inc. and General Instrument, Corp. in Germany.

— and —

(b) if, and only if, you find that Motorola's conduct in seeking injunctive relief, by itself, is sufficient to prove a breach of Motorola's contractual commitment(s), the costs that Microsoft incurred in defending against Motorola's assertion of standard essential patents against Microsoft in District Courts within the United States, before the ITUITC, and in German courts.

Keep in mind that there are two contracts at issue in this case—the ITU contract and the IEEE agreement.  If you find that only one of the contracts has been breached, you must determine the amount of damages caused by that breach and award only that amount.

Source:  WPI 303.01.

### 25.    NOMINAL DAMAGES

The law that applies to this case authorizes an award of nominal damages.  If you find for Microsoft but you find that Microsoft has failed to prove damages as defined in these instructions, you must award nominal damages.  Nominal damages must be greater than $0.00 and may not exceed $1.00.

Source:  Model Civ. Jury Instr. 9th Cir. 5.6 (2007).

[Authority for Deletion of Instruction: The Court's draft instruction on nominal damages relies on Ninth Circuit Model 5.6 (2007).  However, the comments to that instruction explain that "[n]ominal damages are not available in every case.  The court must determine whether nominal damages are permitted."  Model Civ. Jury Instr. 9th Cir. 5.6, cmt. (2007).  The examples in the instruction relate to cases under Section 42 U.S.C. § 1983 and Title VII, neither of which is relevant here.  Whether Microsoft is entitled to nominal damages depends on questions of Washington state law and federal jurisdiction.  Under Washington law, Microsoft is not entitled to nominal damages if its claim is for damages only.  *See Merrell v. Renier*, Case No. 06-cv-404, 2006 WL 3337368, at *5 (W.D. Wash. Nov. 16, 2006) (Robart, J.) (acknowledging "in a claim for 'damages suffered, mere proof that there was a breach of the contract, without more, did not warrant a verdict ... even for nominal damages'") (citing *Ketchum v. Albertson Bulb Gardens, Inc.*, 252 P. 523, 525 (Wash. 1927));  *Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*, 139

Wash. App. 743, 754, 162 P.3d 1153, 1160 (2007) ("[I]n suits for damages only, such as that here, a court may dismiss a breach of contract action if damages have not been suffered."). Microsoft's Original Complaint and its Amended and Supplemental Complaint seek only actual damages and otherwise only declaratory and injunctive relief.  Dkt. 1 at 22 (seeking "damages that Microsoft proves at trial"); Dkt. 53 at 24-25 (same).  Microsoft did not make a request for specific performance in either the original or amended complaint.  *Merrell v. Renier*, No. 06-cv-404, 2006 WL 3337368, at *6 (W.D. Wash. Nov. 16, 2006)  ("A plaintiff need not prove financial loss to prevail in a suit to obtain *specific enforcement* of a contract.") (emphasis added) (Robart, J.).  *Cf. Apple, Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901, 909 (N.D. Ill. 2012) ("[Y]ou can't go into federal court and say you had a contract with X and X broke it and you're really annoyed even though you sustained no injury of any sort (in fact you made money because you re-contracted at a higher price) so please give me a judgment for $1 that I can pin on my wall."); *id.* ("Without an actual or prospective tangible injury, a federal court has no subject-matter jurisdiction.").

## 26.24. CONTRACT – MITIGATION OF DAMAGES

A plaintiff who sustains damage as a result of a defendant's breach of contract has a duty to minimize its loss.

Microsoft is not entitled to recover for any part of the loss that it could have avoided with reasonable efforts.  Motorola has the burden to prove Microsoft's failure to use reasonable efforts to minimize its loss and the amount of damages that could have been minimized or avoided.

Source: WPI 303.06.

1

### ~~27.~~25. LIABILITY OF CORPORATIONS

2

Under the law, a corporation is considered to be a person.  It can only act through

3

its employees, agents, directors, or officers.  Therefore, a corporation is responsible for

4

the acts of its employees, agents, directors, and officers performed within the scope of

5

authority.

6

An agent is a person who performs services for another person under an express or

7

implied agreement and who is subject to the other's control or right to control the manner

8

and means of performing the services.  The other person is called a principal.

9

An agent is acting within the scope of authority if the agent is engaged in the

10

performance of duties which were expressly or impliedly assigned to the agent by the

11

principal.

12

13

14

15

16

17

18

Source:  Model Civ. Jury Instr. 9th Cir. 4.2, 4.4, 4.5 (2007).

19

20

21

22

- 40

# ~~28.~~26. DUTY TO DELIBERATE

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should.  Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Source:  Model Civ. Jury Instr. 9th Cir. 3.1 (2007).

# 29.27. USE OF NOTES

Some of you have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of what was said.  Notes are only to assist your memory.  You should not be overly influenced by the notes.

Source:  Model Civ. Jury Instr. 9th Cir. 1.14 (2007).

### ~~30.~~28. CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via e-mail, text messaging, or any Internet chat room, blog, Web site or other feature.  This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case.  But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict:  do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other

1   reference materials; and do not make any investigation or in any other way try to

2   learn about the case on your own.

3          Second, during the trial, do not talk with or speak to any of the parties, lawyers, or

4   witnesses in this case – not even to pass the time of day.  It is important not only that you

5   do justice in this case, but also that you act accordingly.  If a person from one side of the

6   lawsuit sees you talking to a person from the other side – even if it is just about the

7   weather – that might raise a suspicion about your fairness.  So, when the lawyers, parties

8   and witnesses do not speak to you in the halls, on the elevator or the like, you must

9   understand that they are not being rude.  They know they are not supposed to talk to you

10  while the trial is going on, and they are just following the rules.

11         The law requires these restrictions to ensure the parties have a fair trial based on

12  the same evidence that each party has had an opportunity to address.  A juror who

13  violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial

14  could result that would require the entire trial process to start over.  If any juror is

15  exposed to any outside information, please notify the court immediately.

16

17  Source:  Model Civ. Jury Instr. 9th Cir. 1.12 (2007); Model Civ. Jury Instr. 8th Cir. 1.05
    (2012); 3 Kevin F. O'Malley et al., Federal Jury Practice and Instructions, § 101.11 (6th
18  ed.).

19

20

21

22

### ~~31.~~ **29.** COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the courtroom deputy, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

Source:  Model Civ. Jury Instr. 9th Cir. 3.2 (2007).

1

## 32.30.  RETURN OF VERDICT

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

Source:  Model Civ. Jury Instr. 9th Cir. 3.3 (2007).

Dated this ____ day of August, 2013.

_____
JAMES L. ROBART
United States District Judge