# EXHIBIT A



| SIDLEY AUSTIN LLP | BEIJING | NEW YORK |
| 1501 K STREET, N.W. | BRUSSELS | PALO ALTO |
| WASHINGTON, D.C. 20005 | CHICAGO | SAN FRANCISCO |
| (202) 736 8000 | DALLAS | SHANGHAI |
| (202) 736 8711 FAX | FRANKFURT | SINGAPORE |
| | GENEVA | SYDNEY |
| | HONG KONG | TOKYO |
| | LONDON | WASHINGTON, D.C. |
| | LOS ANGELES | |

bnester@sidley.com
(202) 736 8017

FOUNDED 1866


CB# 11-002

October 1, 2010

| DOCKET |
| NUMBER |
| 2757 |
| Office of the |
| Secretary |
| Int'l Trade Commission |

**VIA HAND DELIVERY**

The Honorable Marilyn Abbott
Secretary
United States International Trade Commission
500 E Street S.W., Room 112
Washington, D.C. 20436

> Re:   *Certain Mobile Devices, Associated Software, and Components Thereof*
>        Investigation No. 337-TA-_____

Dear Secretary Abbott:

Enclosed for filing on behalf of Complainant Microsoft Corporation ("Microsoft") are the following documents in support of Microsoft's request that the Commission commence an investigation pursuant to Section 337 of the Tariff Act of 1930, as amended:

1.    An original and twelve (12) copies of Microsoft's verified Complaint, pursuant to Commission Rule 210.8(a)(1)(i) (original and one unbound copy, without tabs).

2.    Six (6) electronic copies of the exhibits to the Complaint with Confidential Exhibits segregated from the other material submitted pursuant to Commission Rule 210.8(a)(1)(iii) (on CD-ROM).

3.    One (1) additional copy of the Complaint and Public Exhibits for service upon proposed Respondent Motorola, Inc. pursuant to Commission Rule 210.8(a)(iii).

4.    One (1) additional copy of the Confidential Exhibits for service upon proposed Respondent Motorola, Inc. pursuant to Commission Rule 210.8(a)(iii).

5.    Original certified copies of (i) U.S. Patent Nos. 5,579,517; 5,758,352; 6,621,746; 6,826,762; 6,909,910; 7,644,376; 5,664,133; 6,578,054; and 6,370,566 (collectively, "the Asserted Patents"); (ii) assignments for each of the Asserted Patents; and (iii) prosecution histories for each of the Asserted Patents. We have requested certified copies of U.S. Patent Nos. 6,578,054 and 6,370,566 prosecution histories and will submit them once received.

Case No. 10-1823, W.D. Wash.
**MOTOROLA TRIAL EXHIBIT**
**7179**

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships


EXHIBIT
MURPHY 1
6/14/13   MW



The Honorable Marilyn Abbott
October 1, 2010
Page 2

6.   Four (4) electronic copies of the certified prosecution histories and each technical reference cited therein for each of the Asserted Patents, included as Appendices A-I pursuant to Commission Rule 210.12(c)(1) (on CD-ROM).

7.   A letter and certification request confidential treatment of Confidential Exhibits 9, 10, 14, 18, 22, 26, 30, 34, 38, 41A and 48; and Confidential Technical Reference 120 in Appendix A and Confidential Technical Reference 121 in Appendix B, pursuant to Commission Rule 201.6(b) and 210.5(d).

If you have any questions, please to do not hesitate to call me at (202) 736-8017.

Very truly yours,

Brian R. Nester

BRN:jlg



SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
(202) 736 8000
(202) 736 8711 FAX

| BEIJING | NEW YORK |
| BRUSSELS | PALO ALTO |
| CHICAGO | SAN FRANCISCO |
| DALLAS | SHANGHAI |
| FRANKFURT | SINGAPORE |
| GENEVA | SYDNEY |
| HONG KONG | TOKYO |
| LONDON | WASHINGTON, D.C. |
| LOS ANGELES | |

bnester@sidley.com
(202) 736 8017

FOUNDED 1866

CBI 11-002

October 1, 2010

DOCKET
NUMBER

2757

Office of the
Secretary
Int'l Trade Commission

**VIA HAND DELIVERY**

The Honorable Marilyn Abbott
Secretary
United States International Trade Commission
500 E Street S.W., Room 112
Washington, D.C. 20436

   Re: *Certain Mobile Devices, Associated Software, and Components Thereof*
     Investigation No. 337-TA-_____

Dear Secretary Abbott:

   In accordance with Commission Rules 201.6 and 210.5, Complainant Microsoft Corporation ("Microsoft") requests confidential treatment of the business information contained in Confidential Exhibits 9, 10, 14, 18, 22, 26, 30, 34, 38, 41A and 48; and Confidential Technical Reference 120 in Appendix A and Confidential Technical Reference 121 in Appendix B.

   The information for which confidential treatment is sought is proprietary commercial information not otherwise publicly available. Specifically, these exhibits contain proprietary commercial information concerning Microsoft's licensing of the asserted patents and investments in the domestic industry.

   The information described above qualifies as confidential business information pursuant to Commission Rule 201.6(a) because:

     1.  it is not available to the public;

     2.  unauthorized disclosure of such information could cause substantial harm to the competitive position of Microsoft and/or a third party; and

     3.  its disclosure could impair the Commission's ability to obtain information necessary to perform its statutory function.



SIDLEY AUSTIN LLP

The Honorable Marilyn Abbott
October 1, 2010
Page 2


If you have any questions, please to do not hesitate to call me at (202) 736-8017.

Very truly yours,

Brian R. Nester

BRN:jlg

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.

| |
|---|
| **In the Matter of** |
| **CERTAIN MOBILE DEVICES, ASSOCIATED SOFTWARE, AND COMPONENTS THEREOF** |

Investigation No. _____

## VERIFIED COMPLAINT OF MICROSOFT CORPORATION
## UNDER SECTION 337 OF THE TARIFF ACT OF 1930, AS AMENDED

**Complainant**

Microsoft Corporation
One Microsoft Way
Redmond, WA 98052
Phone: (800) 642-7676
Fax: (425) 936-7329

**Counsel for Complainant**

T. Andrew Culbert
David E. Killough
Microsoft Corporation
One Microsoft Way
Redmond, WA 98052
Phone: (800) 642-7676

David T. Pritikin
Richard A. Cederoth
Douglas I. Lewis
John W. McBride
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Phone: (312) 853-7000
Fax: (312) 853-7036

Brian R. Nester
Karin J. Norton
Kevin C. Wheeler
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Phone: (202) 736-8000
Fax: (202) 736-8711

**Proposed Respondent**

Motorola, Inc.
1303 East Algonquin Road
Schaumburg, IL 60196
Phone: (847) 576-5000

## Table of Contents

I.    INTRODUCTION ................................................................................................................1

II.   THE PARTIES.....................................................................................................................3

      A.    Complainant ...............................................................................................................3

      B.    Proposed Respondent ................................................................................................5

III.  THE PRODUCTS AT ISSUE .............................................................................................5

IV.   THE PATENTS AT ISSUE.................................................................................................6

      A.    U.S. Patent Nos. 5,579,517 & 5,758,352 ................................................................6

            i.     Identification of the Patents and Ownership by Microsoft .........................6

            ii.    Non-Technical Description of the Patented Inventions..............................7

            iii.   Foreign Counterparts to the '517 and '352 Patents ....................................8

            iv.    Licensees Under the '517 and '352 Patents ...............................................8

      B.    U.S. Patent No. 6,621,746..........................................................................................8

            i.     Identification of the Patent and Ownership by Microsoft...........................8

            ii.    Non-Technical Description of the Patented Invention...............................9

            iii.   Foreign Counterparts to the '746 Patent ....................................................9

            iv.    Licensees Under the '746 Patent...............................................................10

      C.    U.S. Patent No. 6,826,762........................................................................................10

            i.     Identification of the Patent and Ownership by Microsoft.........................10

            ii.    Non-Technical Description of the Patented Invention.............................10

            iii.   Foreign Counterparts to the '762 Patent ..................................................11

            iv.    Licensees Under the '762 Patent...............................................................12

      D.    U.S. Patent No. 6,909,910........................................................................................12

            i.     Identification of the Patent and Ownership by Microsoft.........................12

            ii.    Non-Technical Description of the Patented Invention.............................12

        iii.     Foreign Counterparts to the '910 Patent ................................13

        iv.     Licensees Under the '910 Patent................................................13

   E.     U.S. Patent No. 7,644,376............................................................13

        i.      Identification of the Patent and Ownership by Microsoft.........13

        ii.     Non-Technical Description of the Patented Invention..............13

        iii.     Foreign Counterparts to the '376 Patent ................................14

        iv.     Licensees Under the '376 Patent................................................14

   F.     U.S. Patent No. 5,664,133............................................................15

        i.      Identification of the Patent and Ownership by Microsoft.........15

        ii.     Non-Technical Description of the Patented Invention..............15

        iii.     Foreign Counterparts to the '133 Patent ................................16

        iv.     Licensees Under the '133 Patent................................................16

   G.     U.S. Patent No. 6,578,054............................................................16

        i.      Identification of the Patent and Ownership by Microsoft.........16

        ii.     Non-Technical Description of the Patented Invention..............17

        iii.     Foreign Counterparts to the '054 Patent ................................18

        iv.     Licensees Under the '054 Patent................................................18

   H.     U.S. Patent No. 6,370,566............................................................18

        i.      Identification of the Patent and Ownership by Microsoft.........18

        ii.     Non-Technical Description of the Patented Invention..............19

        iii.     Foreign Counterparts to the '566 Patent ................................19

        iv.     Licensees Under the '566 Patent................................................19

V.     THE DOMESTIC INDUSTRY ................................................................19

VI.    SPECIFIC INSTANCES OF IMPORTATION AND SALE .......................20

VII.   UNLAWFUL AND UNFAIR ACTS COMMITTED BY PROPOSED
       RESPONDENTS – PATENT INFRINGEMENT ....................................21

VIII.   RELATED LITIGATION ........................................................................23

IX.   RELIEF REQUESTED......................................................................24

## Exhibit List

Exhibit 1.     Microsoft's 10-K (2010)

Exhibit 2.     Motorola Company Profile (2009 Annual Report)

Exhibit 3.     Certified Copy of U.S. Patent No. 5,579,517 and Reexamination Certificate

Exhibit 4.     Certified Copy of U.S. Patent No. 5,758,352 and Reexamination Certificate

Exhibit 5.     Certified Copy of Assignment(s) for U.S. Patent No. 5,579,517 and Related Applications

Exhibit 6.     Certified Copy of Assignment(s) for U.S. Patent No. 5,758,352

Exhibit 7.     List of Foreign Patents and Patent Applications for U.S. Patent No. 5,579,517

Exhibit 8.     List of Foreign Patents and Patent Applications for U.S. Patent No. 5,758,352

Exhibit 9.     Licensees Under U.S. Patent No. 5,579,517 **(Confidential)**

Exhibit 10.    Licensees Under U.S. Patent No. 5,758,352 **(Confidential)**

Exhibit 11.    Certified Copy of U.S. Patent No. 6,621,746

Exhibit 12.    Certified Copy of Assignment(s) for U.S. Patent No. 6,621,746

Exhibit 13.    List of Foreign Patents and Patent Applications for U.S. Patent No. 6,621,746

Exhibit 14.    Licensees Under U.S. Patent No. 6,621,746 **(Confidential)**

Exhibit 15.    Certified Copy of U.S. Patent No. 6,826,762

Exhibit 16.    Certified Copy of Assignment(s) for U.S. Patent No. 6,826,762

Exhibit 17.    List of Foreign Patents and Patent Applications for U.S. Patent No. 6,826,762

Exhibit 18.    Licensees Under U.S. Patent No. 6,826,762 **(Confidential)**

Exhibit 19.    Certified Copy of U.S. Patent No. 6,909,910

Exhibit 20.    Certified Copy of Assignment(s) for U.S. Patent No. 6,909,910

Exhibit 21.    List of Foreign Patents and Patent Applications for U.S. Patent No. 6,909,910

Exhibit 22.    Licensees Under U.S. Patent No. 6,909,910 **(Confidential)**

Exhibit 23.   Certified Copy of U.S. Patent No. 7,644,376

Exhibit 24.   Certified Copy of Assignment(s) for U.S. Patent No. 7,644,376

Exhibit 25.   List of Foreign Patents and Patent Applications for U.S. Patent No. 7,644,376

Exhibit 26.   Licensees Under U.S. Patent No. 7,644,376 **(Confidential)**

Exhibit 27.   Certified Copy of U.S. Patent No. 5,664,133

Exhibit 28.   Certified Copy of Assignment(s) for U.S. Patent No. 5,664,133

Exhibit 29.   List of Foreign Patents and Patent Applications for U.S. Patent No. 5,664,133

Exhibit 30.   Licensees Under U.S. Patent No. 5,664,133 **(Confidential)**

Exhibit 31.   Certified Copy of U.S. Patent No. 6,578,054

Exhibit 32.   Certified Copy of Assignment(s) for U.S. Patent No. 6,578,054

Exhibit 33.   List of Foreign Patents and Patent Applications for U.S. Patent No. 6,578,054

Exhibit 34.   Licensees Under U.S. Patent No. 6,578,054 **(Confidential)**

Exhibit 35.   Certified Copy of U.S. Patent No. 6,370,566

Exhibit 36.   Certified Copy of Assignment(s) for U.S. Patent No. 6,370,566

Exhibit 37.   List of Foreign Patents and Patent Applications for U.S. Patent No. 6,370,566

Exhibit 38.   Licensees Under U.S. Patent No. 6,370,566 **(Confidential)**

Exhibit 39.   Claim Chart Demonstrating Practice of U.S. Patent No. 5,579,517 by Windows Mobile

Exhibit 40.   Claim Chart Demonstrating Practice of U.S. Patent No. 5,758,352 by Windows Mobile

Exhibit 41.   Claim Chart Demonstrating Practice of U.S. Patent No. 6,621,746 by Windows Mobile

Exhibit 42.     Claim Chart Demonstrating Practice of U.S. Patent No. 6,826,762 by Windows Mobile

Exhibit 43.     Claim Chart Demonstrating Practice of U.S. Patent No. 6,909,910 by Windows Mobile

Exhibit 44.     Claim Chart Demonstrating Practice of U.S. Patent No. 7,644,376 by Windows Mobile

Exhibit 45.     Claim Chart Demonstrating Practice of U.S. Patent No. 5,664,133 by Windows Mobile

Exhibit 46.     Claim Chart Demonstrating Practice of U.S. Patent No. 6,578,054 by Windows Mobile

Exhibit 47.     Claim Chart Demonstrating Practice of U.S. Patent No. 6,370,566 by Windows Mobile

Exhibit 48.     Declaration Concerning Microsoft's Domestic Activities in Connection with Windows Mobile **(Confidential)**

Exhibit 49.     Sales Receipts for Exemplary Motorola Devices

Exhibit 50.     Photographs of Exemplary Motorola Devices and Motorola's Website

Exhibit 51.     Claim Chart Demonstrating Infringement of U.S. Patent No. 5,579,517 by Exemplary Motorola Devices

Exhibit 52.     Claim Chart Demonstrating Infringement of U.S. Patent No. 5,758,352 by Exemplary Motorola Devices

Exhibit 53.     Claim Chart Demonstrating Infringement of U.S. Patent No. 6,621,746 by Exemplary Motorola Devices

Exhibit 54.     Claim Chart Demonstrating Infringement of U.S. Patent No. 6,826,762 by Exemplary Motorola Devices

Exhibit 55.     Claim Chart Demonstrating Infringement of U.S. Patent No. 6,909,910 by Exemplary Motorola Devices

Exhibit 56.     Claim Chart Demonstrating Infringement of U.S. Patent No. 7,644,376 by Exemplary Motorola Devices

Exhibit 57.     Claim Chart Demonstrating Infringement of U.S. Patent No. 5,664,133 by Exemplary Motorola Devices

Exhibit 58.    Claim Chart Demonstrating Infringement of U.S. Patent No. 6,578,054 by Exemplary Motorola Devices

Exhibit 59.    Claim Chart Demonstrating Infringement of U.S. Patent No. 6,370,566 by Exemplary Motorola Devices

## APPENDICES

A.    CERTIFIED COPY OF PROSECUTION HISTORY AND TECHNICAL
      REFERENCES FOR U.S. PATENT NO. 5,579,517

      A1.    Certified Copy of Prosecution History for U.S. Patent No. 5,579,517

      A2.    Certified Copy of Prosecution History for Reexamination of U.S. Patent
           No. 5,579,517 (90/007,007)

      A3.    Certified Copy of Prosecution History for Reexamination of U.S. Patent
           No. 5,579,517 (90/007,371)

      A4.    Technical References for U.S. Patent No. 5,579,517

      A5.    Technical References for Reexamination of U.S. Patent No. 5,579,517
           (90/007,007) and (90/007,371)

B.    CERTIFIED COPY OF PROSECUTION HISTORY AND TECHNICAL
      REFERENCES FOR U.S. PATENT NO. 5,758,352

      B1.    Certified Copy of Prosecution History for U.S. Patent No. 5,758,352

      B2.    Certified Copy of Prosecution History for Reexamination of U.S. Patent
           No. 5,758,352 (90/007,372)

      B3.    Technical References for U.S. Patent No. 5,758,352

      B4.    Technical References for Reexamination of U.S. Patent No. 5,758,352
           (90/007,372)

C.    CERTIFIED COPY OF PROSECUTION HISTORY AND TECHNICAL
      REFERENCES FOR U.S. PATENT NO. 6,621,746

      C1.    Certified Copy of Prosecution History for U.S. Patent No. 6,621,746

      C2.    Technical References for U.S. Patent No. 6,621,746

D.    CERTIFIED COPY OF PROSECUTION HISTORY AND TECHNICAL
      REFERENCES FOR U.S. PATENT NO. 6,826,762

      D1.    Certified Copy of Prosecution History for U.S. Patent No. 6,826,762

      D2.    Technical References for U.S. Patent No. 6,826,762

E.        CERTIFIED COPY OF PROSECUTION HISTORY AND TECHNICAL
          REFERENCES FOR U.S. PATENT NO. 6,909,910

          E1.     Certified Copy of Prosecution History for U.S. Patent No. 6,909,910

          E2.     Technical References for U.S. Patent No. 6,909,910

F.        CERTIFIED COPY OF PROSECUTION HISTORY AND TECHNICAL
          REFERENCES FOR U.S. PATENT NO. 7,644,376

          F1.     Certified Copy of Prosecution History for U.S. Patent No. 7,644,376

          F2.     Technical References for U.S. Patent No. 7,644,376

G.        CERTIFIED COPY OF PROSECUTION HISTORY AND TECHNICAL
          REFERENCES FOR U.S. PATENT NO. 5,664,133

          G1.     Certified Copy of Prosecution History for U.S. Patent No. 5,664,133

          G2.     Technical References for U.S. Patent No. 5,664,133

H.        CERTIFIED COPY OF PROSECUTION HISTORY AND TECHNICAL
          REFERENCES FOR U.S. PATENT NO. 6,578,054

          H1.     Certified Copy of Prosecution History for U.S. Patent No. 6,578,054

          H2.     Technical References for U.S. Patent No. 6,578,054

I.        CERTIFIED COPY OF PROSECUTION HISTORY AND TECHNICAL
          REFERENCES FOR U.S. PATENT NO. 6,370,566

          I1.     Certified Copy of Prosecution History for U.S. Patent No. 6,370,566

          I2.     Technical References for U.S. Patent No. 6,370,566

I.   **INTRODUCTION**

1.      Complainant Microsoft Corporation ("Microsoft" or "Complainant") requests that

the United States International Trade Commission ("the Commission") institute an investigation

into violations of Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 by

Motorola, Inc. ("Motorola" or "Proposed Respondent").

2.      This Complaint is based on Proposed Respondent's unlawful and unauthorized

importation into the United States, sale for importation, and/or sale within the United States after

importation of certain mobile devices, associated software, and components thereof.  Motorola

products infringe at least one or more claims of U.S. Patent No. 5,579,517 ("the '517 patent"),

U.S. Patent No. 5,758,352 ("the '352 patent"), U.S. Patent No.  6,621,746 ("the '746 patent"),

U.S. Patent No.  6,826,762 ("the '762 patent"), U.S. Patent No. 6,909,910 ("the '910 patent"),

U.S. Patent No. 7,644,376 ("the '376 patent"), U.S. Patent No. 5,664,133 ("the '133 patent"),

U.S. Patent No. 6,578,054 ("the '054 patent"), and U.S. Patent No. 6,370,566 ("the '566 patent")

(collectively, "the Microsoft Patents").  The Microsoft Patents are valid and enforceable United

States Patents, the entire right, title, and interest in and to which Microsoft owns by assignment.

3.      The '517 and '352 patents disclose systems and methods for implementing both

long and short file names in the same file system.  The Proposed Respondent infringes at least

claims 1, 2, 3, 4, 22, 26, 31, and 36 of the '517 patent and at least claims 1, 7, 12, and 20 of the

'352 patent.  The '746 patent discloses systems and methods that monitor the available memory

of a flash memory device and invoke an erasure operation based upon the amount of available

memory.  The Proposed Respondent infringes at least claims 6, 10, 15, 16, 23, and 24 of the '746

patent. The '762 patent discloses an application program interface for cellular telephones that

has a hardware-independent layer that provides a unified radio interface for software applications

and a hardware-specific layer that implements driver code necessary to conform to specific radio

1

hardware.  The Proposed Respondent infringes at least claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 15, and 16 of the '762 patent.  The '910 patent discloses techniques for updating a contact database within a mobile computing device.  The Proposed Respondent infringes at least claims 1, 2, 3, 5, 6, 7, 8, and 10 of the '910 patent.  The '376 patent discloses a state notification architecture for mobile devices.  The Proposed Respondent infringes at least claims 10, 11, 12, and 13 of the '376 patent. The '133 patent discloses a context-dependent user interface element that presents a menu of choices for a selected resource at each step in the selection process.  The Proposed Respondent infringes at least claims 1, 2, 8, 18, 19, 25, 35, 36, and 37 of the '133 patent.  The '054 patent discloses a method and system for supporting an off-line mode of operation and synchronization using resource state information.  The Proposed Respondent infringes at least claims 11, 13, 14, and 15 of the '054 patent.  The '566 patent discloses generating meeting requests and group scheduling from a mobile device.  The Proposed Respondent infringes at least claims 1, 2, 5, 6, and 9 of the '566 patent.  In summary, Proposed Respondent infringes at least the patents and claims listed in the chart below.

| U.S. Patent No. | Asserted Claims |
|---|---|
| 5,579,517 | 1, 2, 3, 4, 22, 26, 31, 36 |
| 5,758,352 | 1, 7, 12, 20 |
| 6,621,746 | 6, 10, 15, 16, 23, 24 |
| 6,826,762 | 1, 2, 3, 4, 5, 6, 7, 8, 9, 15, 16 |
| 6,909,910 | 1, 2, 3, 5, 6, 7, 8, 10 |
| 7,644,376 | 10, 11, 12, 13 |
| 5,664,133 | 1, 2, 8, 18, 19, 25, 35, 36, 37 |
| 6,578,054 | 11, 13, 14, 15 |

| 6,370,566 | 1, 2, 5, 6, 9 | |
|-----------|---------------|---|

4.      Proposed Respondent's activities with respect to the importation into the United States, the sale for importation into the United States, and/or the sale within the United States after importation of certain mobile devices, associated software, and components thereof, described more fully, *infra*, are unlawful under 19 U.S.C. § 1337(a)(l)(B)(i), in that they constitute infringement of the valid and enforceable Microsoft Patents.

5.      Microsoft seeks relief from the Commission in the form of an order permanently excluding from entry into the United States Proposed Respondent's infringing mobile devices, associated software, and components thereof.  Microsoft further seeks a cease and desist order halting the importation, sale, offer for sale, marketing, advertising, or soliciting of mobile devices, associated software, and components thereof, and other products by Proposed Respondent and its related companies that infringe Microsoft's valid and enforceable United States patents.

II.      **THE PARTIES**

A.      **Complainant**

6.      Complainant Microsoft Corporation is a Washington corporation having its headquarters at One Microsoft Way, Redmond, Washington 98052.

7.      Founded in 1975, Microsoft is a worldwide leader in computer software, services, and solutions for businesses and consumers.  Microsoft does business throughout the world and has offices in more than 100 countries.

8.      Microsoft generates revenue by, *inter alia*, developing and licensing a wide range of software products for many computing devices.  These software products include operating systems for servers, personal computers, mobile phones, and other intelligent devices; server

3

applications for distributed computing environments; information worker productivity applications such as a word processor, spreadsheet, and email and personal productivity software; business solution applications; high-performance computing applications; software development tools; and cloud based computing applications.

9.     Among the operating systems developed, licensed, and supported by Microsoft is Windows Mobile.  Windows Mobile combines an advanced, real-time embedded operating system with powerful tools for rapidly creating smart, connected, small footprint devices, particularly cellular telephones and other mobile devices.  Windows Mobile 6.5 was introduced by Microsoft in May 2009.  Windows Phone 7, the successor to Windows Mobile 6.5, was released to manufacture on September 1, 2010.

10.     A copy of Microsoft's Form 10-K for its FY2010 is attached hereto as Exhibit 1. Microsoft had substantial sales in the United States over the past three years, totaling over $150 billion dollars.

11.     In fiscal year 2010 (July 1, 2009 through June 30, 2010), Microsoft sold or licensed more than $62 billion worth of products and services, many of which practice the Microsoft Patents, including Windows Mobile.  Over the last three fiscal years, Microsoft has invested 14-15% of its yearly revenue in product research and development, with $8.7 billion invested in fiscal year 2009, including substantial amounts for engineering and research and development on Windows Mobile and Windows Phone, which practice the Microsoft Patents.  In fiscal years 2008, 2009, and 2010, Microsoft's annual investment in research and development ranged between $8-9 billion.  A portion of Microsoft's prior research and development effort resulted in the Microsoft Patents.  As of the end of fiscal year 2010, Microsoft's research and

4

development had resulted in a patent portfolio of more than 56,000 issued and pending patents worldwide (over 26,000 issued U.S. patents and pending applications).

12.    Microsoft's continued success depends in substantial part on its ability to establish, maintain, and protect its proprietary technology through, *inter alia*, enforcement of its patent rights.

B.    **Proposed Respondent**

13.    On information and belief, Respondent Motorola, Inc. ("Motorola") is a corporation organized under the laws of Delaware with its principal place of business at 1303 East Algonquin Road, Schaumburg, Illinois 60196.

14.    Motorola is a supplier of smartphones programmed with various software applications.  Motorola markets and sells these products worldwide through its channel business partners, telecom service providers and various retail companies, both at retail stores and through company websites.

15.    On information and belief, certain mobile devices, associated software, and components thereof that infringe the Microsoft Patents are manufactured by or for Motorola in Asia.  On information and belief, these infringing products are imported for sale (in various retail outlets and websites) in the United States by Motorola and its affiliates.

III.    **THE PRODUCTS AT ISSUE**

16.    Motorola's infringing products include mobile devices, such as smartphones, associated software, and components thereof, including operating systems (such as the Android OS), user interfaces (such as the Motorola "Motoblur" user interface), and other application software designed for use on, and loaded onto, such devices.  Upon information and belief, these products are imported into and sold within the United States by or on behalf of Respondent.  These products include, but are not limited to, the Motorola Droid 2, Motorola Droid X,

5

Motorola i1, Motorola Cliq XT, Motorola Devour, Motorola Backflip, Motorola Charm, Motorola Cliq, and the associated software loaded onto these phones by Motorola or its suppliers.

IV.     **THE PATENTS AT ISSUE**

   A.     **U.S. Patent Nos. 5,579,517 & 5,758,352**

      i.     **Identification of the Patents and Ownership by Microsoft**

17.     Microsoft owns by assignment the entire right, title, and interest in the '517 patent entitled "Common Name Space For Long And Short File Names," which issued on November 26, 1996.  The '517 patent was the subject of reexamination proceedings in the U.S. Patent and Trademark Office.  The U.S. Patent and Trademark Office issued a reexamination certificate for the '517 patent on November 28, 2006.  Microsoft owns by assignment the entire right, title and interest in the '352 patent entitled "Common Name Space For Long And Short File Names," which issued on November 26, 1996.  The '352 patent was the subject of reexamination proceedings in the U.S. Patent and Trademark Office.  The U.S. Patent and Trademark Office issued a reexamination certificate for the '352 patent on October 10, 2006.  Certified copies of the '517 patent and reexamination certificate are attached as Exhibit 3, and certified copies of the '352 patent and reexamination certificate are attached as Exhibit 4.  Certified copies of the recorded assignments of the '517 and '352 patents are attached as Exhibits 5 and 6.

18.     Pursuant to Commission Rule 210.12(c), a certified copy and three additional copies of the prosecution histories of the '517 and '352 patents and their reexamination file histories, as well as four copies of the applicable pages from each technical reference cited in the prosecution histories, are attached in Appendices A (for the '517 patent) and B (for the '352 patent).

ii.     **Non-Technical Description of the Patented Inventions**[1]

19.     The '517 and '352 patents relate to the field of computer operating systems, file systems, and file names.  Specifically, they relate to implementing both long and short file names in the same file system.

20.     A file system is a method for organizing, storing, retrieving, navigating, and accessing data.  One common example is the FAT16 file system, used by MS-DOS and early versions of the Windows operating systems.  This file system organizes data hierarchically as sets of "folders" (or "directories") and "files."  A "file name" is the descriptor used to identify a file and is stored (in the FAT16 system) in a "directory entry" on a disk.

21.     File systems enforce a limit on the length of file names, with some file systems allowing only very short file names.  For instance, in the FAT16 file system, a file name can be no more than 11 characters long.  This limitation often prevents users from being able to give their files sufficiently descriptive names.

22.     The '517 and '352 patents describe an innovative system that both supports long file names and maintains compatibility with file name systems and applications that are aware of only short file names.  This compatibility is achieved by creating a short file name based on a portion of a long file name (which cannot exceed the maximum number of characters supported by the short file name system or application) in a directory entry for the file, with one or more additional directory entries holding the long file name.  These additional directory entries are hidden from the short file name system via various attribute fields but are visible to the long file name system.

---

[1] The text in this and all subsequent sections entitled "Non-technical Description of the Patented Invention" does not, and is not intended to, construe either the specification or the claims of the patent.

7

23.     Using the system described in the '517 and '352 patents, a short file name system can read the directory entry containing the short file name, but will ignore the directory entry (or entries) containing the long file name.  A long file name system can access and manipulate these long file names and do so in such a way as to ensure compatibility with the short file name system.

iii.     **Foreign Counterparts to the '517 and '352 Patents**

24.     Pursuant to Commission Rule 210.12(a)(9)(v), lists of all foreign patents and patent applications corresponding to the '517 and '352 patents, including an indication of status, are attached as Exhibits 7 and 8.  There are no other foreign counterpart applications that have been issued, abandoned, denied, or that remain pending.

iv.     **Licensees Under the '517 and '352 Patents**

25.     Pursuant to 19 C.F.R. § 210.12(a)(9)(iii), lists identifying each licensee specifically licensed under the '517 and '352 patents are attached as Exhibits 9 (Confidential) and 10 (Confidential).

B.     **U.S. Patent No. 6,621,746**

i.     **Identification of the Patent and Ownership by Microsoft**

26.     Microsoft owns by assignment the entire right, title, and interest in the '746 patent entitled "Monitoring Entropic Conditions of a Flash Memory Device as an Indicator for Invoking Erasure Operations," which issued on September 16, 2003.  A certified copy of the patent is attached as Exhibit 11.  Certified copies of the recorded assignments are attached as Exhibit 12.

27.     Pursuant to Commission Rule 210.12(c), a certified copy and three additional copies of the prosecution history of the '746 patent as well as four copies of the applicable pages from each technical reference cited in the prosecution history, are attached in Appendix C.

ii.      **Non-Technical Description of the Patented Invention**

28.      The '746 patent relates to flash memory devices, and more particularly, monitoring when to perform an erase operation in a flash memory device.

29.      Flash memory devices have many characteristics that are different from other memory devices. One major difference is that a block containing existing data in flash memory devices cannot be overwritten with new data. Existing data must be completely erased (also referred to as "cleaned") from a block before data can be written into memory locations again. A given block can only be erased a limited number of times before this block on the flash memory device becomes unusable.

30.      Because erasing a block will generally stall other I/O operations, such as read and write operations to the flash memory device, traditional flash memory systems attempted to minimize erasures by performing these erasures at specific times, such as at system start-up and shutdown. However, periodic scheduled erasures may occur more often than actually needed, prematurely shortening the life of a flash memory device. Alternatively, periodically scheduled erasures may not occur frequently enough, resulting in the flash memory being unable to accept new data because it is filled with outdated, un-erased data.

31.      To solve the aforementioned problem, the '746 patent discloses and claims a system and method of monitoring the amount of free space remaining on a flash device and invoking erasure operations based on the number of sectors able to receive data.

iii.     **Foreign Counterparts to the '746 Patent**

32.      Pursuant to Commission Rule 210.12(a)(9)(v), a list of all foreign patents and patent applications corresponding to the '746 patent, including an indication of status, are attached as Exhibit 13. There are no other foreign counterparts that have been issued, abandoned, denied or that remain pending.

9

iv.     **Licensees Under the '746 Patent**

33.     Pursuant to 19 C.F.R. § 210.12(a)(9)(iii), a list identifying each licensee specifically licensed under the '746 patent are attached as Exhibit 14 (Confidential).

C.     **U.S. Patent No. 6,826,762**

i.     **Identification of the Patent and Ownership by Microsoft**

34.     Microsoft owns by assignment the entire right, title, and interest in the '762 patent entitled "Radio Interface Layer in a Cell Phone with a Set of APIs Having a Hardware-Independent Proxy Layer and a Hardware-Specific Driver Layer," which issued on November, 30, 2004.  A certified copy of the patent is attached as Exhibit 15.  Certified copies of the recorded assignments are attached as Exhibit 16.

35.     Pursuant to Commission Rule 210.12(c), a certified copy and three additional copies of the prosecution history of the '762 patent as well as four copies of the applicable pages from each technical reference cited in the prosecution history, are attached in Appendix D.

ii.     **Non-Technical Description of the Patented Invention**

36.     The '762 patent generally relates to application programming interfaces (APIs), and more particularly, relates to a Radio Interface Layer (RIL) comprising a set of APIs.

37.     As cellular telephones become commonplace, users are demanding more sophisticated applications that are akin to those available for personal computers or hand-held personal digital assistants (PDAs).  Implementing such uses in a cellular telephone environment requires application developers to develop or adapt their software for a cellular telephone. However, adapting or developing software for use on one type of cellular telephone does not guarantee that the software will work on another type of cellular telephone due to the different radio implementations and the differences in cellular environments.

10

38.    The '762 patent provides a software solution that allows software to work with different cellular systems and radios. Specifically, the '762 invention provides for a Radio Interface Layer (RIL) accessed through an API set that abstracts the cell phone radio and the cell phone's software.

39.    In particular, the RIL consists of a hardware-independent proxy layer that isolates a particular cellular system/hardware from the application software and a hardware-specific driver layer that conforms with the specific hardware.

40.    The API allows applications running on the cellular telephone to issue commands without needing knowledge of the cellular telephone's underlying radio structure and without needing specific knowledge of the radio network's specific commands.

41.    The '762 invention thereby allows software to work on phones independently of the hardware or the cellular network being used. For example, changing from a GSM to a CDMA network would only require replacing the hardware-specific driver layer to make the phone work as it did in the GSM network. Without the RIL, hardware manufacturers and software developers typically would need to make each phone component communicate with the radio directly. The RIL allows software components to be designed generally and without reference to the differences in the underlying hardware and thereby allows phone manufacturers to integrate software with their radio hardware using a single set of functions.

iii.    **Foreign Counterparts to the '762 Patent**

42.    Pursuant to Commission Rule 210.12(a)(9)(v), a list of all foreign patents and patent applications corresponding to the '762 patent, including an indication of status, are attached as Exhibit 17. There are no other foreign counterparts that have been issued, abandoned, denied or that remain pending.

11

iv.     **Licensees Under the '762 Patent**

43.     Pursuant to 19 C.F.R. § 210.12(a)(9)(iii), a list identifying each licensee specifically licensed under the '762 patent are attached as Exhibit 18 (Confidential).

D.      **U.S. Patent No. 6,909,910**

i.      **Identification of the Patent and Ownership by Microsoft**

44.     Microsoft owns by assignment the entire right, title, and interest in the '910 patent entitled "Method and System for Managing Changes to a Contact Database," which issued on June 21, 2005.  A certified copy of the patent is attached as Exhibit 19.  Certified copies of the recorded assignments are attached as Exhibit 20.

45.     Pursuant to Commission Rule 210.12(c), a certified copy and three additional copies of the prosecution history of the '910 patent, as well as four copies of the applicable pages from each technical reference cited in the prosecution history, are attached in Appendix E.

ii.     **Non-Technical Description of the Patented Invention**

46.     The '910 patent generally relates to mobile computing, and more particularly, to updating a contact database within a mobile computing device.

47.     The '910 patent provides a method and system for updating a contact and adding a new contact from call logs in a mobile communications device. The system includes a contact manager that creates and updates contact cards in a contact database with information retrieved from call logs of phone calls made to or from the mobile communications device. The method includes determining if a request is for updating an existing contact card or for adding a new contact card to the contact database. The update or addition is then made with information retrieved from call logs.

### iii.    Foreign Counterparts to the '910 Patent

48.    Pursuant to Commission Rule 210.12(a)(9)(v), a list of all foreign patents and patent applications corresponding to the '910 patent, including an indication of status, are attached as Exhibit 21.  There are no other foreign counterparts that have been issued, abandoned, denied or that remain pending.

### iv.    Licensees Under the '910 Patent

49.    Pursuant to 19 C.F.R. § 210.12(a)(9)(iii), a list identifying each licensee specifically licensed under the '910 patent are attached as Exhibit 22 (Confidential).

### E.    **U.S. Patent No. 7,644,376**

### i.    Identification of the Patent and Ownership by Microsoft

50.    Microsoft owns by assignment the entire right, title, and interest in the '376 patent entitled "Flexible Architecture for Notifying Applications of State Changes," which issued on January 5, 2010. A certified copy of the patent is attached as Exhibit 23.  Certified copies of the recorded assignments are attached as Exhibit 24.

51.    Pursuant to Commission Rule 210.12(c), a certified copy and three additional copies of the prosecution history of the '376 patent as well as four copies of the applicable pages from each technical reference cited in the prosecution history, are attached in Appendix F.

### ii.    Non-Technical Description of the Patented Invention

52.    The '376 patent generally relates to an application programming interface (API) through which applications on a mobile device can learn about state changes to the mobile device.

53.    Applications on a mobile device can greatly benefit by having access to information about the state of the device.  For example, an application that must download large quantities of information can benefit from learning when the device has a strong signal strength

in order to focus its downloading activities during those periods. Similarly, applications can benefit from learning when a device is running low on battery power so that these applications can save a user's data before the device runs out of power.

54.     The '376 patent teaches and claims an application programming interface wherein applications can register for notifications regarding a wide variety of state changes. This invention provides a software module called a "notification broker" and provides a uniform mechanism through which clients can communicate with this notification broker. Under the system of the invention, applications register with the notification broker to receive certain types of state updates. When a state update occurs, the notification broker determines which of the applications should receive a notification. For example, if the system starts to run low on memory, the notification broker will determine which applications registered for updates about low memory events and will send appropriate notifications to those applications. The patent describes a wide variety of exemplary state updates for which applications can register.

55.     The '376 patent thereby enhances the operability and functionality of applications by enabling them to access information about changes to the mobile device's state.

### iii.     Foreign Counterparts to the '376 Patent

56.     Pursuant to Commission Rule 210.12(a)(9)(v), a list of all foreign patents and patent applications corresponding to the '376 patent, including an indication of status, are attached as Exhibit 25. There are no other foreign counterparts that have been issued, abandoned, denied or that remain pending.

### iv.     Licensees Under the '376 Patent

57.     Pursuant to 19 C.F.R. § 210.12(a)(9)(iii), a list identifying each licensee specifically licensed under the '376 patent are attached as Exhibit 26 (Confidential).

14

F.     **U.S. Patent No. 5,664,133**

      i.     **Identification of the Patent and Ownership by Microsoft**

58.     Microsoft owns by assignment the entire right, title, and interest in the '133 patent

entitled "Context Sensitive Menu System/Menu Behavior," which issued on September 2, 1997.

A certified copy of the patent is attached as Exhibit 27.  Certified copies of the recorded

assignments are attached as Exhibit 28.

59.     Pursuant to Commission Rule 210.12(c), a certified copy and three additional

copies of the prosecution history of the '133 patent as well as four copies of the applicable pages

from each technical reference cited in the prosecution history, are attached in Appendix G.

      ii.     **Non-Technical Description of the Patented Invention**

60.     The '133 patent generally relates to the field of user interfaces for computer

systems, and more particularly, to graphical user interfaces wherein a user selects from a

collection of graphical representations displayed upon a video screen.

61.     To provide usable interfaces, computer interface developers consider the ease

with which users can learn new features.  Much of the success in improving operating system

usability can be attributed to the large amount of visual information provided at each decision

making step.  However, many applications have become so complex that the choices provided to

the user for an application by menu bars, which must generally cover all types of objects in all

possible contexts, becomes unmanageable.  It is therefore desirable for a computer system to

provide some mechanism for restricting the choices presented to a user while still providing a

robust user interface selection system that ensures that the computer system offers the user

appropriate and available commands.

15

62.     The '133 patent describes a computer system with a graphical user interface containing representations corresponding to computer resources, including objects and controls. When a user places the display pointer over a computer resource and clicks a context button, or activates any other suitable selection signal, the computer system analyzes the computer resource and displays a context menu. The context menu presents the user choices based primarily upon the selected computer resource. The choices are secondarily determined by the environment in which the computer resource resides at the time of the selection.  In this way, the '133 patent provides a graphical user interface that allows the user to quickly and easily select/execute the desired computer resource by presenting the user with a reduced number of choices that apply to the selected resource.

        iii.     **Foreign Counterparts to the '133 Patent**

63.     Pursuant to Commission Rule 210.12(a)(9)(v), a list of all foreign patents and patent applications corresponding to the '133 patent, including an indication of status, are attached as Exhibit 29.  There are no other foreign counterparts that have been issued, abandoned, denied or that remain pending.

        iv.     **Licensees Under the '133 Patent**

64.     Pursuant to 19 C.F.R. § 210.12(a)(9)(iii), a list identifying each licensee specifically licensed under the '133 patent are attached as Exhibit 30 (Confidential).

    G.     **U.S. Patent No. 6,578,054**

        i.     **Identification of the Patent and Ownership by Microsoft**

65.     Microsoft owns by assignment the entire right, title, and interest in the '054 patent entitled "Method and System for Supporting Off-line Mode of Operation and Synchronization Using Resource State Information," which issued on June 10, 2003.  A certified copy of the

patent is attached as Exhibit 31.  Certified copies of the recorded assignments are attached as Exhibit 32.

66.     Pursuant to Commission Rule 210.12(c), a certified copy and three additional copies of the prosecution history of the '054 patent as well as four copies of the applicable pages from each technical reference cited in the prosecution history, are attached in Appendix H[1].

ii.     **Non-Technical Description of the Patented Invention**

67.     The '054 patent relates to the support of on-line and off-line transmission and synchronization of data. More particularly, this patent discloses and claims systems and methods that eliminate redundant data transmission and allow multiple copies of data to be synchronized via incremental changes.

68.     Using conventional techniques, clients and servers have engaged in redundant communication of information when a user changing a shared data object while the client is on-line and subsequently desires to obtain a local copy of the shared data object for use off-line.  In particular, the on-line changes made to the shared data object are transmitted from the client to the server during the on-line operation of the client.  When the client is about to go off-line, the client issues a request to the server for the most current copy of the shared data object in order to store the copy locally for off-line use.  In response, the server transmits the current copy of the data object, which includes the changes that have recently been made by the client.  In other words, the foregoing client/server communication involves changes being sent from client to server and subsequently from server to client.  Such repetitive transmission of data in a network can introduce potentially significant increases in network traffic.

---

[1] A certified copy of the prosecution history of the '054 patent has been ordered and will be submitted to the Secretary's Office upon receipt.

69.     To solve the aforementioned problem, the '054 patent discloses and claims a system and method for elimination of redundant data transmission and for incremental change synchronization between multiple copies of data.

### iii.     Foreign Counterparts to the '054 Patent

70.     Pursuant to Commission Rule 210.12(a)(9)(v), a list of all foreign patents and patent applications corresponding to the '054 patent, including an indication of status, are attached as Exhibit 33.  There are no other foreign counterparts that have been issued, abandoned, denied or that remain pending.

### iv.     Licensees Under the '054 Patent

71.     Pursuant to 19 C.F.R. § 210.12(a)(9)(iii), a list identifying each licensee specifically licensed under the '054 patent are attached as Exhibit 34 (Confidential).

### H.     U.S. Patent No. 6,370,566

### i.     Identification of the Patent and Ownership by Microsoft

72.     Microsoft owns by assignment the entire right, title, and interest in the '566 patent entitled "Generating Meeting Requests and Group Scheduling From a Mobile Device," which issued on April 9, 2002.  A certified copy of the patent is attached as Exhibit 35.  Certified copies of the recorded assignments are attached as Exhibit 36.

73.     Pursuant to Commission Rule 210.12(c), a certified copy and three additional copies of the prosecution history of the '566 patent as well as four copies of the applicable pages from each technical reference cited in the prosecution history, are attached in Appendix I[2].

---

[2] A certified copy of the prosecution history of the '566 patent has been ordered and will be submitted to the Secretary's Office upon receipt.

18

ii.   **Non-Technical Description of the Patented Invention**

74.   The '566 patent relates to mobile devices, and more particularly, to generating meeting requests and group scheduling from a mobile device.

75.   Scheduling meeting requests had been supported by desktop computers or laptop computers which had a hard disk drive or other high capacity memory mechanisms, or by low intelligence terminals permanently attached to a server or other similar computer which, itself, had a high capacity storage device.  While some mobile devices allowed the user to view meeting requests, and to view meetings which have already been scheduled, allowing a mobile device to also generate a meeting request is desirable.

76.   To solve the aforementioned problem, the '566 patent discloses and claims a mobile device which provides the user with the ability to schedule a meeting request from the mobile device itself.

iii.   **Foreign Counterparts to the '566 Patent**

77.   Pursuant to Commission Rule 210.12(a)(9)(v), a list of all foreign patents and patent applications corresponding to the '566 patent, including an indication of status, are attached as Exhibit 37.  There are no other foreign counterparts that have been issued, abandoned, denied or that remain pending.

iv.   **Licensees Under the '566 Patent**

78.   Pursuant to 19 C.F.R. § 210.12(a)(9)(iii), a list identifying each licensee specifically licensed under the '566 patent are attached as Exhibit 38 (Confidential).

V.   **THE DOMESTIC INDUSTRY**

79.   Microsoft's investment with each of the Microsoft Patents in the United States constitutes a domestic under 19 U.S.C. §§ 1337(a)(2)–(3).

19

80.     At the forefront of innovation, Microsoft also invests heavily in technology relating to the Asserted Patents, including investing in plant, equipment, labor, capital, engineering, research and development.   Microsoft's domestic activities in connection with Windows Mobile 6 and Windows Phone 7 include significant investment in plant and equipment, significant employment of labor and capital, and substantial investment in engineering and research and development related to products employing the '517, '352,'746, '762, '910, '376, '133, '054, and '566 patents.  These investments are set forth in Exhibit 48 (Confidential). Claim charts showing that Windows Mobile 6 practices representative claim 1 of the '517 patent, representative claim 1 of the '352 patent, representative claim 23 of the '746 patent, representative claim 1 of the '762 patent, representative claim 10 of the '910 patent, representative claim 10 of the '376 patent, representative claim 1 of the '133 patent, representative claim 11 of the '054 patent, and representative claim 1 of the '566 patent are attached as Exhibits 39-47.

## VI.    SPECIFIC INSTANCES OF IMPORTATION AND SALE

81.     On information and belief, Proposed Respondent imports, sells for importation, and/or sells within the United States after importation Motorola infringing products.  Specific instances of importation of infringing mobile devices, associated software, and components thereof set forth below are representative examples of Proposed Respondent's unlawful importation of infringing products.

82.     On information and belief, the Motorola Droid 2, the Motorola Droid X, the Motorola i1, the Motorola Cliq XT, the Motorola Devour, the Motorola Backflip, the Motorola Charm, and the Motorola Cliq are imported into the United States by or for Proposed Respondent.

20

83.     The sales receipts for exemplary Motorola products, purchased from retailers in the United States, are attached as Exhibit 49.

84.     These products are marked as a product of China.  On information and belief, each product is made by, or on behalf of, the Proposed Respondent in China.  Photographs of exemplary infringing products, their packaging, and Motorola's website are attached as Exhibit 50.

85.     Microsoft believes that Motorola's infringing products fall under one or more of the following classifications of the Harmonized Tariff Schedule ("HTS") of the United States: Heading Nos. 8517.12.50 (related to "[t]elephones for cellular networks or for other wireless networks"); 8470.10.0060 (related to "pocket-size data recording, reproducing and displaying machines with calculating functions"); 8471.30.01, 8471.41.01, or 8471.49.00 (related to handheld computers); and 8523 ("Discs, tapes, solid-state non-volatile storage devices, "smart cards" and other media for the recording of sound or of other phenomena, whether or not recorded, including matrices and masters for the production of discs, but excluding products of Chapter 37"), et seq.  These HTS identifications are illustrative and not exhaustive and are not intended to limit the scope of the Investigation, nor are they intended to restrict the scope of any exclusion order or other remedy ordered by the Commission.

VII.    **UNLAWFUL AND UNFAIR ACTS COMMITTED BY PROPOSED RESPONDENT**

86.     On information and belief, Proposed Respondent unlawfully sells for importation, imports, and/or sells after importation into the United States certain mobile devices, associated software, and components thereof that infringe the Microsoft Patents.  Based on information discovered through investigation, the infringing products infringe at least: claims 1, 2, 3, 4, 22, 26, 31, and 36 of the '517 patent, claims 1, 7, 12, and 20 of the '352 patent, claims 6, 10, 15, 16,

21

23, and 24 of the '746 patent, claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 15, and 16 of the '762 patent, claims

1, 2, 3, 5, 6, 7, 8, and 10 of the '910 patent, claims 10, 11, 12, and 13 of the '376 patent, claims

1, 2, 8, 18, 19, 25, 35, 36, and 37 of the '133 patent, claims 11, 13, 14, and 15 of the '054 patent,

and claims 1, 2, 5, 6, and 9 of the '566 patent. Attached as Exhibits 51-59 are claim charts that

provide examples of how the asserted independent claims of the Microsoft Patents read on the

Exemplary Motorola Products.

87.     The infringement allegations contained in this Complaint include direct and

indirect infringement. Proposed Respondent has been given actual notice of its infringement of

the Microsoft Patents by Microsoft's service of this Complaint, which is being served on

Proposed Respondent at the time of filing with the Commission. On information and belief,

Proposed Respondent directly infringes the Microsoft Patents through the operation,

development, and testing of its products in the United States.

88.     Proposed Respondent also directly infringes the apparatus claims of the Microsoft

Patents by offering for sale and/or selling its infringing products in the United States.

89.     Users making routine use of the Motorola products also infringe the Microsoft

Patents. Proposed Respondent knowingly induces others in the United States to use products

covered by the Microsoft Patents and to perform methods covered by certain claims of the

Microsoft Patents. Proposed Respondent's inducement of infringement includes, but is not

limited to: (i) its knowledge of the asserted patents; (ii) its intent to induce direct infringement of

the asserted patents; (iii) its knowingly aiding and abetting infringement, by providing

instruction manuals and other directions that instruct the purchaser of an accused device to use

the device in a manner that infringes certain claims of the Microsoft Patents; and (iv) its actual or

constructive knowledge that their actions induce infringement.

VIII.  **RELATED LITIGATION**

90.     The '517 and '352 patents were asserted in Microsoft's ITC complaint against TomTom B.V., filed February 5, 2009 (ITC Docket No. 337-2654).  The Complaint was withdrawn prior to institution of the investigation.  Likewise, a concurrent complaint against TomTom involving the two aforementioned patents was filed and voluntarily dismissed before any action on the merits in the Western District of Washington (2:09-cv-00247).

91.     The United States Patent and Trademark Office Reexamination Case No. 90/007371 confirmed the validity of the '517 patent.

92.     The United States Patent and Trademark Office Reexamination Case No. 90/007372 confirmed the validity of the '352 patent.

93.     A German nullity action filed against one of the foreign counterparts of the '517 and '352 patents (German Patent No. 69429378) was dismissed in Microsoft's favor in April 2010.

94.     A protest was filed on September 24, 2004 against the Canadian counterpart application to the '517 and '352 patents (Canadian patent number 2120461); another protest against this application was filed on September 16, 2008. The Canadian patent issued on September 22, 2009.

95.     Contemporaneously with the filing of this Complaint, Microsoft filed suit in the U.S. District Court for the Western District of Washington asserting that Motorola infringes the patents asserted here, namely the '517, '352,'746, '762, '910, '376, '133, '054, and '566  patents.

96.     Other than the instances listed above, no other domestic or foreign court or agency is or has been involved with the Microsoft Patents (or their foreign counterparts).

IX.   **RELIEF REQUESTED**

97.   WHEREFORE, by reason of the foregoing, Complainant Microsoft respectfully requests that the United States International Trade Commission:

(i)    institute an immediate investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, with respect to the Proposed Respondent's violations of that section based on the importation into the United States, sale for importation, and/or the sale within the United States after importation of Proposed Respondent's infringing products;

(ii)   set a target date of no more than fifteen months;

(iii)  schedule and conduct a hearing on permanent relief pursuant to Section 337(c) for the purposes of receiving evidence and hearing argument concerning whether there has been a violation of Section 337, and following the hearing, to determine that there has been a violation of Section 337;

(iv)   issue a permanent exclusion order, pursuant to 19 U.S.C. § 1337(d) forbidding entry into the United States of Proposed Respondent's products that infringe one or more claims of U.S. Patent Nos. 5,579,517; 5,758,352; 6,621,746; 6,826,762; 6,909,910; 7,644,376; 5,664,133; 6,578,054; and 6,370,566; and

(v)    issue a permanent cease and desist order, pursuant to 19 U.S.C. § 1337(f), prohibiting the Proposed Respondent and related companies from engaging in the importation, sale for importation, marketing, distribution, offering for sale, the sale after importation of, or otherwise transferring within the United States products that infringe United States Patents Nos.

24

5,579,517;  5,758,352;  6,621,746; 6,826,762; 6,909,910; 7,644,376; 5,664,133; 6,578,054; and 6,370,566; and

(vi)     issue such other and further relief as the Commission deems just and proper under the law, based upon the facts determined by the investigation and the authority of the Commission.

Executed:  October 1, 2010                    Respectfully Submitted,

                                              _____

T. Andrew Culbert                             Brian R. Nester
David E. Killough                             Karin J. Norton
Microsoft Corporation                         Kevin C. Wheeler
One Microsoft Way                             SIDLEY AUSTIN LLP
Redmond, WA 98052                             1501 K Street, N.W.
Phone: (425) 882-8080                         Washington, D.C. 20005
Fax: (425) 859-1327                           Phone: (202) 736-8000
                                              Fax: (202) 736-8711

David T. Pritikin
Richard A. Cederoth
Douglas I. Lewis
John W. McBride
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Phone: (312) 853-7000
Fax: (312) 853-7036                           *Counsel for Microsoft Corporation*

25

## VERIFICATION OF COMPLAINT

I, Matthew Roberts, declare, in accordance with 19 C.F.R. § 210.4 and 210.12(a), under penalty of perjury, that the following statements are true:

1.      I am the Senior Director, Royalty Programs, OEM Division, for complainant Microsoft Corporation and am duly authorized by Microsoft to verify this complaint of Complainant.

2.      I have read the foregoing Complaint of Microsoft Corporation and am aware of the Complaint's contents, exhibits, declarations, and appendices.

3.      To the best of my knowledge, information, and belief, founded upon reasonable inquiry, the Complaint and all of its supporting materials (exhibits, declarations, and appendices) are not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

4.      To the best of my knowledge, information, and belief, founded upon reasonable inquiry, the claims and legal contentions of this Complaint are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.

5.      To the best of my knowledge, information, and belief, founded upon reasonable inquiry, any allegations or factual contentions in this Complaint have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 23, 2010