# EXHIBIT F

PUBLIC VERSION

# UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

In the Matter of

**CERTAIN GAMING AND
ENTERTAINMENT CONSOLES,
RELATED SOFTWARE, AND
COMPONENTS THEREOF**

**Investigation No. 337-TA-752**

## FINAL INITIAL REMAND DETERMINATION
### Administrative Law Judge David P. Shaw

This is the final initial remand determination in *Certain Gaming and Entertainment Consoles, Related Software, and Components Thereof*, United States International Trade Commission Investigation No. 337-TA-752.[1]

It is held that a violation of section 337 of the Tariff Act, as amended, has not occurred in the importation into the United States, the sale for importation, or the sale within the United States after importation, of certain gaming and entertainment consoles, related software, or components thereof that are alleged to infringe asserted claims 1 and 12 of U.S. Patent No. 6,069,896.

---

[1] On June 29, 2012, the Commission remanded this investigation to the undersigned, and ordered that the undersigned: "(1) apply the Commission's opinion in [*Certain Electronic Devices with Image Processing Systems, Components Thereof, and Associated Software*, Inv. No. 337-TA-724 ("*Electronic Devices*")] to the asserted patents; (2) rule on Microsoft's motion for partial termination of the investigation filed June 22, 2012; and (3) issue a final initial remand determination ("RID") on violation and a recommended determination ("RD") on remedy and bonding." Comm'n Notice and Order (June 29, 2012).

**PUBLIC VERSION**

**TABLE OF CONTENTS**

I.    Background ............................................................................ 1

      A.    Remand of the Investigation; Procedural History ..................... 1

      B.    The Accused Products ................................................... 4

II.   General Principles of Applicable Law ...................................... 4

III.  United States Patent No. 6,069,896 ......................................... 8

      A.    Discussion of *Electronic Devices* ...................................... 10

      B.    Direct Infringement ...................................................... 14

      C.    Indirect Infringement Analysis .......................................... 14

            1.    Induced Infringement .............................................. 16

            2.    Contributory Infringement ....................................... 23

IV.   Initial Determination and Order ............................................. 33

**PUBLIC VERSION**

The following abbreviations may be used in this Final Initial Remand Determination:

| | | |
|---|---|---|
| ALJ | - | Administrative Law Judge |
| CPX | - | Complainants' Physical Exhibit |
| CX | - | Complainants' Exhibit |
| JX | - | Joint Exhibit |
| RWS | - | Rebuttal Witness Statement |
| RX | - | Respondent's Exhibit |
| Tr. | - | Transcript |
| WS | - | Witness Statement |

PUBLIC VERSION

## I.   Background

### A.   Remand of the Investigation; Procedural History

By publication of a notice in the *Federal Register* on May 21, 2010, pursuant to

subsection (b) of section 337 of the Tariff Act of 1930, as amended, the Commission

instituted the underlying investigation to determine:

> [W]hether there is a violation of subsection (a)(1)(B) of section 337 in the
> importation into the United States, the sale for importation, or the sale
> within the United States after importation of certain gaming and
> entertainment consoles, related software, and components thereof that
> infringe one or more of claims 6, 8-10, and 17 of the '712 patent [(U.S.
> Patent No. 5,319,712)]; claims 9-18 of the '571 patent [(U.S. Patent No.
> 5,357,571)]; claims 1-3 and 12 of the '896 patent [(U.S. Patent No.
> 6,069,896)]; claims 1-3, 7, and 8 of the '596 patent [(U.S. Patent No.
> 6,980,596)]; and claims 5-8 and 10 of the '094 patent [(and U.S. Patent
> No. 7,162,094)], and whether an industry in the United States exists as
> required by subsection (a)(2) of section 337.

75 Fed. Reg. 80843 (2010).

The complainants are: Motorola Mobility, Inc. of Libertyville, Illinois ("Motorola

Mobility"); and General Instrument Corporation of Horsham, Pennsylvania ("General

Instrument") (collectively, Motorola Mobility and General Instrument are referred to as

"Motorola" or "complainants").[2]   The Commission named as the respondent: Microsoft

Corporation of Redmond, Washington ("Microsoft" or "respondent").[3]   *Id.*

---

[2] On October 4, 2012, Motorola filed a motion for leave to amend the complaint and
notice of investigation to reflect a corporate name change of Motorola Mobility, Inc.
from Motorola Mobility, Inc. to Motorola Mobility LLC.  Motorola's motion was granted
in an initial determination issued on October 10, 2012.  Order No. 47 (initial
determination) (Oct. 10, 2012), *aff'd* Comm'n Notice Not to Review (Nov. 8, 2012).

[3] Although the Commission named the Office of Unfair Import Investigations ("OUII")
as a party in the investigation, OUII withdrew from participation in accordance with the
Commission's Strategic Human Capital Plan.  *See* 75 Fed. Reg. 80843 (2010); Letter
from OUII to the Administrative Law Judge (Mar. 3, 2011).

**PUBLIC VERSION**

On April 23, 2012, the administrative law judge filed the Final Initial Determination ("ID") on the question of violation.

On June 29, 2012, the Commission issued a notice stating that it determined to review the ID, and also remanded the investigation. Comm'n Notice and Order (June 29, 2012). In its notice, the Commission stated: "Specifically, the Commission remands for the ALJ to (1) apply the Commission's opinion in *Certain Electronic Devices with Image Processing Systems, Components Thereof, and Associated Software,* Inv. No. 337-TA-724, Comm'n Op. (Dec. 21, 2011); (2) rule on Microsoft's motion for partial termination of the investigation filed June 22, 2012[4]; and (3) set a new target date for completion of the investigation." Comm'n Notice at 3 (June 29, 2012) (77 Fed. Reg. 40082 (2012)). Concurrently, the Commission issued a remand order that provided, among other things, that "[t]he administrative law judge may otherwise conduct the remand proceedings as he deems appropriate, including reopening the record." Comm'n Order at 2 (June 29, 2012).

On July 24, 2012, the administrative law judge issued Order No. 42, determining that the remand initial determination ("RID") shall be due on March 22, 2013, and that the target date for completion of this investigation is July 23, 2013, which is 31 months after institution of the investigation.[5] The undersigned scheduled a hearing on remand for December 5 and 6, 2012. Order No. 42.

On November 21, 2012, Order No. 49 issued. It contains rulings on five motions, two filed by Motorola (Motion Nos. 752-53 and -58) and three filed by Microsoft

---

[4] The administrative law judge issued Order No. 53 denying this motion (Motion Docket No. 752-42C) as moot. *See* Order No. 53 (Jan. 14, 2013).

[5] The target date is approximately 13 months after the date the Commission remanded this investigation to the undersigned.

(Motion Nos. 752-54, -55 and -62), to strike certain expert testimony and to preclude evidence in connection with the hearing on remand.

On November 29, 2012, pursuant to 19 C.F.R. § 210.24(b)(3), respondent Microsoft filed a Motion for Leave to File an Application for Interlocutory Review and Stay of Investigation Pending the Outcome of the Commission's Review. Motion Docket No. 752-66. Motion No. 752-66 pertains to Order No. 49. *See* Mot. at 1, 15. On February 7, 2013, Order No. 54 issued, denying Motion No. 752-66.

Motorola moved to terminate this investigation in part as to all claims of the '712 patent and the '571 patent. Motorola's motion was granted in an initial determination issued on November 6, 2012. Order No. 48 (initial determination) (Nov. 6, 2012), *aff'd* Comm'n Notice Not to Review (Dec. 6, 2012). Motorola also moved to terminate this investigation in part as to all claims of the '596 patent and the '094 patent. Motorola's motion was granted in an initial determination issued on January 11, 2013. Order No. 52 (initial determination) (Jan. 11, 2013), *aff'd* Comm'n Notice Not to Review (Feb. 4, 2013). Accordingly, only the '896 patent remains at issue in the remand proceeding.

On December 5 and 6, 2012, the hearing on remand was held. *See* Order Nos. 42 and 46; Rem. Tr. 1-503.

On December 21, 2012, pursuant to Ground Rule 12, the parties filed their Joint Outline of Issues to Be Decided, which set forth eight issues. Three of the issues concern remedy, and are discussed in the Recommended Determination issued today. Two issues pertain only to the formerly-asserted '596 patent. The remaining three issues (*i.e.*, (1) the impact of *Electronic Devices*/scope of the remand; (2) whether Motorola has shown that

Microsoft induces infringement of the '896 patent; and (3) whether Motorola has shown

that Microsoft contributes to infringement of the '896 patent) are addressed herein.

### B.    The Accused Products

The accused products in this investigation are Microsoft Xbox 360 consoles and

accessories. With respect to the '896 patent, Motorola asserts claims 1 and 12, and

accuses all versions and configurations of the Microsoft Xbox 360 console imported into

the United States and/or sold after importation into the United States on or after

December 17, 2010, and all wireless accessories.[6] *Id.* at 4.

## II.    General Principles of Applicable Patent Law

### A.    Direct Infringement

Under 35 U.S.C. §271(a), direct infringement consists of making, using, offering

to sell, or selling a patented invention without consent of the patent owner. The

complainant in a section 337 investigation bears the burden of proving infringement of

the asserted patent claims by a "preponderance of the evidence." *Certain Flooring*

*Products*, Inv. No. 337-TA-443, Comm'n Notice of Final Determination of No Violation

---

[6] As stated in the joint filing, Motorola accuses:

All versions and configurations of the Microsoft Xbox 360 console imported into the
United States and/or sold after importation into the United States on or after December
17, 2010, including but not limited to the Xbox 360 4 GB Console and the Xbox 360 250
GB Console[., sic]; as well as all wireless accessories, including but not limited to the
Xbox 360 Wireless Controller, Xbox 360 Wireless Controller Play and Charge Kit,
Wireless Controller with Transforming D-Pad and Play and Charge Kit, Xbox 360 Halo:
Reach Wireless Controller, Fable III Limited Edition Wireless Controller, Xbox 360
Wireless Headset, Xbox 360 Halo: Reach Wireless Headset, Xbox 360 Wireless Speed
Wheel, Xbox 360 Wireless Microphone, and Xbox 360 ChatPad. Ground Rule 12 Filing
(original proceeding) at 4.

PUBLIC VERSION

of Section 337, 2002 WL 448690 at *59, (Mar. 22, 2002); *Enercon GmbH v. Int'l Trade Comm'n*, 151 F.3d 1376 (Fed. Cir. 1998).

Literal infringement of a claim occurs when every limitation recited in the claim appears in the accused device, *i.e.*, when the properly construed claim reads on the accused device exactly.[7] *Amhil Enters., Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996); *Southwall Tech. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed Cir. 1995).

If the accused product does not literally infringe the patent claim, infringement might be found under the doctrine of equivalents. "Under this doctrine, a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 21 (1997) (citing *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 609 (1950)). "The determination of equivalence should be applied as an objective inquiry on an element-by-element basis."[8] *Id.* at 40.

"An element in the accused product is equivalent to a claim limitation if the differences between the two are insubstantial. The analysis focuses on whether the element in the accused device 'performs substantially the same function in substantially

---

[7] Each patent claim element or limitation is considered material and essential. *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed. Cir. 1991). If an accused device lacks a limitation of an independent claim, the device cannot infringe a dependent claim. *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989).

[8] "Infringement, whether literal or under the doctrine of equivalents, is a question of fact." *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1130 (Fed. Cir. 2011).

the same way to obtain the same result' as the claim limitation." *AquaTex Indus. v. Techniche Solutions*, 419 F.3d 1374, 1382 (Fed. Cir. 2005) (quoting *Graver Tank*, 339 U.S. at 608); *accord Absolute Software*, 659 F.3d at 1139-40.[9]

Prosecution history estoppel can prevent a patentee from relying on the doctrine of equivalents when the patentee relinquishes subject matter during the prosecution of the patent, either by amendment or argument. *AquaTex*, 419 F.3d at 1382. In particular, "[t]he doctrine of prosecution history estoppel limits the doctrine of equivalents when an applicant makes a narrowing amendment for purposes of patentability, or clearly and unmistakably surrenders subject matter by arguments made to an examiner." *Id.* (quoting *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1344 (Fed. Cir. 2005)).

**B.    Indirect Infringement**

**1.    Induced Infringement**

Section 271(b) of the Patent Act provides: "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b).

"To prevail on a claim of induced infringement, in addition to inducement by the defendant, the patentee must also show that the asserted patent was directly infringed." *Epcon Gas Sys. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1033 (Fed. Cir. 2002). Further, "[s]ection 271(b) covers active inducement of infringement, which typically

---

[9] "The known interchangeability of substitutes for an element of a patent is one of the express objective factors noted by *Graver Tank* as bearing upon whether the accused device is substantially the same as the patented invention. Independent experimentation by the alleged infringer would not always reflect upon the objective question whether a person skilled in the art would have known of the interchangeability between two elements, but in many cases it would likely be probative of such knowledge." *Warner-Jenkinson*, 520 U.S. at 36.

PUBLIC VERSION

includes acts that intentionally cause, urge, encourage, or aid another to directly infringe a patent." *Arris Group v. British Telecomm. PLC*, 639 F.3d 1368, 1379 n.13 (Fed. Cir. 2011). The Supreme Court recently held that "induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060, 2068 (2011). The Court further held: "[g]iven the long history of willful blindness[10] and its wide acceptance in the Federal Judiciary, we can see no reason why the doctrine should not apply in civil lawsuits for induced patent infringement under 35 U.S.C. § 271(b)." 131 S.Ct. at 2060 (footnote omitted).

### 2. Contributory Infringement

Section 271(c) of the Patent Act provides: "Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer." 35 U.S.C. § 271(c).

---

[10] "While the Courts of Appeals articulate the doctrine of willful blindness in slightly different ways, all appear to agree on two basic requirements: (1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact. We think these requirements give willful blindness an appropriately limited scope that surpasses recklessness and negligence." *Global-Tech*, 131 S.Ct. at 2070-71.

**PUBLIC VERSION**

Section 271(c) "covers both contributory infringement of system claims and method claims."[11] *Arris*, 639 F.3d at 1376 (footnotes omitted). To hold a component supplier liable for contributory infringement, a patent holder must show, *inter alia*, that (a) the supplier's product was used to commit acts of direct infringement; (b) the product's use constituted a material part of the invention; (c) the supplier knew its product was especially made or especially adapted for use in an infringement" of the patent; and (d) the product is not a staple article or commodity of commerce suitable for substantial noninfringing use. *Id.*

### III.    United States Patent No. 6,069,896

Motorola asserts independent claims 1 and 12 of U.S. Patent No. 6,069,896 ("the '896 patent"). ID at 25. It is undisputed that claims 1 and 12 are method claims. *See* JX-5 at col. 10, lns. 27-42; col. 11, ln. 46 – col. 12, ln. 13.

The administrative law judge previously found that Motorola had shown that Microsoft's accused products directly infringe the asserted claims 1 and 12 of the '896 patent. ID at 48-66. In view of the Commission's opinion in *Electronic Devices*, it is now apparent that Microsoft does not directly infringe the asserted claims 1 and 12 at the time of importation, as more fully explained below.

---

[11] "Claims which recite a 'system,' 'apparatus,' 'combination,' or the like are all analytically similar in the sense that their claim limitations include elements rather than method steps. All such claims can be contributorily infringed by a component supplier." *Arris*, 639 F.3d at 1376 n.8.

PUBLIC VERSION

By way of background, the '896 patent is titled, "Capability Addressable Network and Method Therefor." JX-5 ('896 patent).[12] The '896 patent issued on May 30, 2000, and the named inventors are Ronald Borgstahl, Jeffrey Harris, Ernest Woodward, and David Leeper. *Id.* The '896 patent relates generally to "data communication networks," and more specifically relates to "a peer-to-peer network in which node addressing is dynamically configurable." *Id.* at col. 1, lns. 5-8 (Technical Field of the Invention).

The asserted claims are recited below.

> 1. In a capability addressable peer-to-peer data communication network, a method of establishing network connectivity comprising the steps of:
>
>> initiating a setup connection between first and second peers of said network by transmitting an unsolicited message containing an identification of said first peer to said second peer;
>>
>> authorizing said second peer to establish said setup connection with said first peer based on said identification of said first peer:
>>
>> exchanging needs and capabilities between said first and second peers after establishing said setup connection; and
>> selectively processing an addressed service connection in response to said exchange of needs and capabilities.
>
> 12. A method of operating a capability addressable peer-to-peer data communication network comprising the steps of:
>
>> a) detecting, at a first one of a service-requesting peer and a service-providing peer, physical proximity of a

---

[12] The '896 patent involves technology used to be sure that devices make only authorized wireless connections. Tutorial Tr. 175, 183, 192-193. This area of technology generally involves making sure that devices connect to other devices that the user has selected or that meet a specific need. For example, a cell phone or a PDA may need to connect to a specific printer. This area of technology also involves making sure that communications are not received by similar devices used by a neighbor (such as making sure that your MP3 player does not play music in your neighbor's car). Tutorial Tr. 168-176, 192.

PUBLIC VERSION

second one of said service-requesting and service-providing peers;

b) determining whether a need for a service connection exists at one of said service-requesting and service-providing peers;

c) establishing, if said determining step identifies said need, a setup wireless connection between said service-requesting and service-providing peers;

d) communicating authorization information describing said service-requesting peer to said service-providing peer;

e) forming a wireless service connection between said service-requesting and service-providing peers when said service-requesting peer is authorized through an identification code;

f) communicating capability information describing said service-providing peer to said service-requesting peer;

g) forming said wireless service connection between said service-requesting and service-providing peers when said service-providing peer is determined to have a capability compatible with said need determined in step b); and

h) providing said capability using said service connection.

JX-5 at col. 10, lns. 27-42; col. 11, ln. 46 – col. 12, ln. 13.

A. **Discussion of *Electronic Devices***

Motorola argues that "*Electronic Devices* marked a departure from scores of cases—including decisions from the Federal Circuit, as well as the Commission—in which section 337 violations were consistently found based on direct infringement of method claims ***after*** importation had occurred." Compls. Rem. Reply Br. at 4 (emphasis in original).

10

**PUBLIC VERSION**

Microsoft argues that "[u]nder *Electronic Devices*, a Section 337 violation cannot

be based on the post-importation practice of method-of-use claims; absent a finding of

indirect infringement, method claims cannot support a Section 337 violation."  Resp.

Rem. Br. at 2.  Microsoft argues: "*Electronic Devices* did not impact the law of indirect

infringement and therefore provides no justification for Motorola's attempted 'do-over'

in these remand proceedings.  Motorola had its chance to prove indirect infringement, but

failed and then petitioned the Commission to overturn the ALJ's ID in that regard." *Id.* at

3.

The Commission's opinion in *Electronic Devices* holds that the practice of an

asserted method claim within the United States after importation cannot serve as the basis

for an exclusion order.  *Electronic Devices*, Comm'n Op. at 17.  As discussed in

*Electronic Devices*, section 337 prohibits:

> (B)   The importation into the United States, the sale for importation, or the sale
> within the United States after importation by the owner, importer, or
> consignee, of articles that –
>
> > (i)   infringe a valid and enforceable United States patent or a valid and
> > enforceable United States copyright registered under title 17; or
> >
> > (ii)   are made, produced, processed, or mined under, or by means of, a
> > process covered by the claims of a valid and enforceable United
> > States patent.

19 U.S.C. § 1337(a)(1)(B).

The statute is violated only by the importation, sale for importation, or sale after

importation of articles that either infringe a valid U.S. patent claim or are made by a

method covered by a valid U.S. patent claim.  An article, standing alone, cannot directly

infringe a method claim.  *Electronic Devices*, Comm'n Op. at 17; *see also Cardiac*

*Pacemakers, Inc. v. St. Jude Medical, Inc.*, 576 F.3d 1348, 1364 (Fed. Cir. 2009). A method claim is infringed only where someone performs all of the claimed method steps. *See NTP v. Research in Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005) ("[T]he use of a [claimed] process necessarily involves doing or performing each of the steps recited."); *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993) ("A method claim is directly infringed only by one practicing the patented method.").

In *Electronic Devices*, the Commission ruled that complainant did not have a legally cognizable claim that respondent violated the statute by using articles within the United States when infringement allegedly occurred by virtue of that use. *Electronic Devices,* Comm'n Op. at 19 ("domestic use of such a method, without more, is not a sufficient basis for a violation of Section 337(a)(1)(B)(i)"). Relying expressly on the statutory language of section 337 and applicable Federal Circuit law, the Commission ruled that the act of importation "is not an act that practices the steps of the asserted method claim," and "[m]erely importing a device that may be used to perform a patented method does not constitute direct infringement of a claim to that method." *Id.* at 17-18 (citing *Cardiac Pacemakers,* 576 F.3d at 1364; *NTP*, 418 F.3d at 1319; *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008) ("[A] party that sells or offers to sell software containing instructions to perform a patented method does not infringe the patent under § 271(a)."); *Joy Techs.*, 6 F.3d at 773 ("The law is unequivocal that the sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a).")).

**PUBLIC VERSION**

The Commission stated:

> [S]ection 337(a)(1)(B)(i) covers imported articles that directly or indirectly infringe when it refers to "articles that – infringe." We also interpret the phrase "articles that – infringe" to reference the status of the articles at the time of importation. Thus, infringement, direct or indirect, must be based on the articles as imported to satisfy the requirements of section 337.

*Electronic Devices*, Comm'n Op. at 13-14. The Commission determined that the importation requirement was not met in that case by the respondent's post-importation performance of a claimed method. *Id.* at 18. Nevertheless, the Commission stated that the complainant "might have proved a violation of section 337 if it had proved indirect infringement" of the method claim. *Id.* The Commission cited, as an example, *Certain Chemiluminescent Compositions, and Components Thereof and Methods of Using, and Products Incorporating the Same*, Inv. No. 337-TA-285, USITC Pub. 2370, Order No. 25 (Initial Determination) at 38 n.12 (March 1991), in which "the ALJ found that the 'importation and sale' of the accused articles constituted contributory and induced infringement of the method claim at issue in that investigation." *Electronic Devices*, Comm'n Op. at 18 n.11.

The facts of the instant investigation are different from those of *Chemiluminescent Compositions*. As discussed below, in order to use an accused Xbox 360 system in an infringing manner, one must use the Xbox console in conjunction with a wireless accessory such as a wireless controller. Yet, in *Chemiluminescent Compositions*, the accused product (necklace) as imported was a product that need not be combined with any other product in order to be used in an infringing manner. *Chemiluminescent Compositions*, Order No. 25 (Initial Determination) at 7-8.

13

**B.    Direct Infringement**

Motorola argues that "there should be no question that users of Xbox products directly infringe the asserted method claims of the '896 patent." Compls. Rem. Br. at 14. Motorola argues that "the overwhelming weight of the evidence supports a finding that the infringing processes have been performed by most, if not all, users of Microsoft's Xbox 360 Wireless Accessories and Xbox 360 Console." *Id.* at 16; *see id.* at 14-17.

As noted above, the undersigned previously found that Motorola had shown that Microsoft's accused products directly infringe the asserted claims 1 and 12 of the '896 patent. ID at 48-66. Those findings, in the undersigned's view, remain valid. Nonetheless, relevant to the holdings of the Commission's opinion in *Electronic Devices*, it is found that there is no evidence that Microsoft directly infringes asserted claims 1 or 12 at the time of importation. Motorola does not contend otherwise. *See* Compls. Rem. Br. at 5-7; Compls. Rem. Reply Br. at 4 ("*Electronic Devices* marked a departure from scores of cases—including decisions from the Federal Circuit, as well as the Commission—in which section 337 violations were consistently found based on direct infringement of method claims *after* importation had occurred.") (emphasis in original).

Accordingly, in view of the Commission's opinion in *Electronic Devices*, the administrative law judge finds that Microsoft does not directly infringe claims 1 and 12 of the '896 patent at the time of importation.

**C.    Indirect Infringement Analysis**

Motorola argues: "And because indirect infringement requires showing, among other requirements, that there is a direct infringer, *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1341 (Fed. Cir. 2008), Motorola Mobility justifiably did not devote as

PUBLIC VERSION

much time and resources to indirect infringement in its discovery, briefing, or presentation during the January 2012 Hearing since, prior to *Electronic Devices*, direct infringement ***alone*** was adequate to establish a section 337 violation. In short, it was not necessary to show indirect infringement for a method claim as long as direct infringement after importation could be established. Thus, pursuing at great length the further elements of indirect infringement was unnecessary." Compls. Reply at 7 (emphasis in original).

Microsoft argues: "Although *Electronic Devices* allowed the possibility that, if proven, a finding of indirect infringement of method-of-use claims could support a Section 337 violation, the ALJ's original ID closed that door in these proceedings because it found that Motorola had failed to prove indirect infringement. Accordingly, to comply with the Commission's directive in the Remand Order, the ALJ should enter an RID finding no violation" as to the '896 patent. Resp. Rem. Br. at 6. Microsoft asserts that "[t]here is no dispute here that *Electronic Devices* did not in any way alter the law or legal standards for indirect infringement." *Id.* at 9.

As noted by Microsoft, the administrative law judge previously found that Motorola had not shown that Microsoft's accused products indirectly infringe the asserted claims of the '896 patent. ID at 66-68. The administrative law judge noted that Motorola's pre-hearing brief included only a single sentence on indirect infringement of the '896 patent. ID at 66-67. The administrative law judge found that Motorola did not include, and has therefore waived, any argument that the accused products lack substantial noninfringing uses or that Microsoft intends others to infringe.[13] ID at 67

---

[13] *See Certain DC-DC Controllers and Products Containing the Same*, Inv. No. 337-TA-698 (Enforcement Proceeding), Comm'n Op. at 16 (Jan. 4, 2013) (reversing the ALJ's

**PUBLIC VERSION**

citing GR 7c; Madisetti Rem. Tr. 163.

Accordingly, the undersigned finds that there is no need for further analysis concerning indirect infringement. Indeed, even after being afforded a hearing to address the application of *Electronic Devices*, Motorola was only able to present indirect infringement evidence that could have been presented earlier. Nonetheless, in the event the Commission disagrees with the administrative law judge's findings in the underlying investigation on this issue, the undersigned provides the following analysis.

As discussed below, Motorola failed to show essential elements of both induced and contributory infringement. Motorola's induced infringement argument fails because Motorola has not established intent to cause infringement. Motorola's contributory infringement argument also falls short because it did not show that the accused "components" are material parts of the claimed invention. Further, Motorola has not shown that these "components" lack substantial noninfringing uses.

### 1.   Induced Infringement

Section 271(b) of the Patent Act provides: "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b).

"To prevail on a claim of induced infringement, in addition to inducement by the defendant, the patentee must also show that the asserted patent was directly infringed." *Epcon Gas Sys. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1033 (Fed. Cir. 2002). Further, "[s]ection 271(b) covers active inducement of infringement, which typically includes acts that intentionally cause, urge, encourage, or aid another to directly infringe

---

finding of indirect infringement and finding that complainant waived any argument concerning indirect infringement after applying the holdings of *Electronic Devices*).

a patent." *Arris Group v. British Telecomm. PLC*, 639 F.3d 1368, 1379 n.13 (Fed. Cir.

2011). The Supreme Court recently held that "induced infringement under § 271(b)

requires knowledge that the induced acts constitute patent infringement." *Global-Tech*

*Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060, 2068 (2011). The Court further held:

"[g]iven the long history of willful blindness[14] and its wide acceptance in the Federal

Judiciary, we can see no reason why the doctrine should not apply in civil lawsuits for

induced patent infringement under 35 U.S.C. § 271(b)." 131 S.Ct. at 2060 (footnote

omitted).

     Motorola argues that "Microsoft's importation and sale after importation of Xbox

360 Consoles and Wireless Accessories induce the acts of direct infringement of claims 1

and 12 of the '896 patent." Compls. Rem. Br. at 17. Motorola argues that "(1)

Microsoft's importation and sale after importation of Xbox 360 Consoles and Wireless

Accessories (as well as their packaging and included instruction manuals) encourage and

promote use of those Consoles and Accessories in an infringing manner; (2) Microsoft

has had knowledge of the '896 patent since at least 2010; and (3) Microsoft knows that

the uses it promotes and encourages infringe claims 1 and 12 of the '896 patent." *Id.*; *see*

*id.* at 17-22.

     Microsoft argues: "In the Initial Determination, the ALJ ruled that Motorola failed

to prove the intent element of induced infringement. ID at 67 (finding that Motorola did

---

[14] "While the Courts of Appeals articulate the doctrine of willful blindness in slightly
different ways, all appear to agree on two basic requirements: (1) the defendant must
subjectively believe that there is a high probability that a fact exists and (2) the defendant
must take deliberate actions to avoid learning of that fact. We think these requirements
give willful blindness an appropriately limited scope that surpasses recklessness and
negligence." *Global-Tech*, 131 S.Ct. at 2070-71.

PUBLIC VERSION

not show "that Microsoft had knowledge that the method in question 'was both patented and infringing'" or "that Microsoft possessed specific intent to encourage another's infringement"). That decision remains correct. Motorola has not provided any adequate reason to reconsider or reverse it. Inasumuch as Microsoft lacks the requisite intent, Microsoft's importation and sale of the console does not induce infringement of the '896 patent." Resp. Rem. Br. at 21.

The administrative law judge found that Motorola did not show that Microsoft had knowledge that the method in question "was both patented and infringing." ID at 67. The undersigned found that "Motorola also has not shown that Microsoft possessed specific intent to encourage another's infringement." *Id.* Motorola appealed these findings to the Commission, and that appeal remains pending. On remand, Motorola has repeated the same arguments that it made to the Commission. *See, e.g.*, Motorola Pet. for Review (05/07/2012) at 45-47 (arguing intent based on knowledge of the patents, the operation of the accused products, and the ID); *id.* at 47-49 (arguing inducement based on product use instructions).

### a.    Knowledge

Motorola argues that "Microsoft has had knowledge of the '896 patent since at least October 21, 2010." Compls. Rem. Br. at 21. Motorola argues that "Microsoft has known since April 2012 that the ID included findings that the Xbox 360 Console and Xbox 360 Wireless Accessories infringe claims 1 and 12 of the '896 patent each time those devices are powered on in range of each other." *Id.*

Before holding any party indirectly liable for the infringing acts of its customers, the party must have knowledge that the customers' acts constitute patent infringement.

18

*Global-Tech*, 131 S.Ct. at 2068.  It is insufficient simply to show that the accused party

knows that its customers perform acts and that those acts happen to infringe a patent.  *Id.*

Instead, specific intent is required.  *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293,

1306 (Fed. Cir. 2006) ("[T]he inducer must have an affirmative intent to cause direct

infringement.").  Motorola did not establish that intent, precluding any finding of induced

infringement.  *See Kyocera Wireless Corp. v. ITC*, 545 F.3d 1340, 1354 (Fed. Cir. 2008)

(citing *DSU*, 471 F.3d at 1306).

   As noted above, Motorola argues that "Microsoft has had knowledge of the '896

patent since at least October 21, 2010."  Compls. Rem. Br. at 21 (citing CX-0597C (Oct.

21, 2010 Ltr. between Motorola and Microsoft)).  Motorola's October 21, 2010 letter

(CX-0597C) regarding 802.11 communications – *i.e.*, the communications between the

Xbox console and the router – did not provide notice that the '896 patent might apply to

wireless gameplay accessories (such as controllers).  The letter said nothing about the

'896 patent covering controllers or other wireless accessories.  *See* CX-0597C.  Instead, it

provided a list of patents allegedly relevant to an 802.11 connection, which exists only

between the Xbox and the router, not the Xbox and the controller.  *See* Madisetti Rem.

Tr. 140 (Motorola's counsel stating, during testimony about the wireless controllers, that

802.11 was "far afield of this case and issues before us"), 143 (Madisetti: "I have not

offered any opinion on the 802.11 in the context of this investigation, nor have I been

asked to do it."), 145 ("No, Your Honor, I did not study any aspect of the 802.11 when

analyzing the infringement.").

   Motorola argues that the Complaint in this investigation provided legally adequate

notice for inducement.  Compls. Rem. Br. at 21.  However, Motorola cites facts that

**PUBLIC VERSION**

would necessarily exist in every ITC investigation – the identification of a patent and theory of infringement in the complaint. The complaint is not sufficient to establish knowledge and intent. This result is consistent with precedent in which intent was not found, despite the existence of a complaint alleging infringement. *See, e.g.*, *Kyocera*, 545 F.3d at 1354 (vacating the ITC's finding of intent to induce infringement); *Certain Wireless Communication Devices*, ITC Inv. No. 337-TA-744, Comm'n Op. at 18 (finding "indisputable actual knowledge" of the patent and the operation of the accused products insufficient to establish intent).

Motorola argues that the ID itself established the requisite intent. *See* Compls. Rem. Br. at 21. Controlling precedent shows that what Motorola argues is incorrect. *See, e.g.*, *Kyocera*, 545 F.3d at 1353-54 (vacating a finding of intent to induce infringement despite a prior Commission determination of underlying direct infringement).

### b. Specific Intent

Motorola argues that "Microsoft's importation and sale after importation of Xbox 360 Consoles and Wireless Accessories encourage and promote use of those Consoles and Wireless Accessories in an infringing manner. Specifically, at the time of importation and sale, each Xbox 360 Console is packaged with and pre-bound to at least one Wireless Controller." Compls. Rem. Br. at 17-18. Motorola argues that "at the time of importation and sale, the packaging of the Xbox 360 Console advertises use of the Console with the included Wireless Controller," and that "the packaging further includes an instruction manual that instructs and encourages users to wirelessly connect the Console and the Wireless Controller." *Id.* at 18.

PUBLIC VERSION

Microsoft argues that it "has not acted with 'an affirmative intent to cause direct infringement' of the '896 patent." Resp. Rem. Br. at 24. Microsoft argues that it "has at all times acted with a good faith and objectively reasonable belief that use of the accused products does not infringe the '896 patent and that any claim construction broad enough to encompass use of the accused products necessarily renders the asserted claims invalid," and that "[t]his is easily sufficient to overcome Motorola's allegations of intent to infringe." *Id.* at 24-25.

Motorola fails to make the required showing of an "affirmative intent to cause direct infringement." *DSU*, 471 F.3d at 1306. Motorola has not established the required element of specific intent to encourage infringement of the patent (*see DSU*, 471 F.3d at 1304). *See* Compls. Rem. Br. at 18-19 (citing importation and sale of pre-bound console and controller, packaging of console showing use of wireless controller, packaging of wireless accessory showing use with console, and provision of wireless controller setup guides); *see also Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1329 (Fed. Cir. 2009) (for a product with accused and non-accused uses, "intent to induce infringement cannot be inferred even when the defendant has actual knowledge" of the accused uses).

Motorola argues that Microsoft has specific intent to encourage knowing infringement because Microsoft provides wireless set-up guides with Xbox 360 wireless controllers and consoles and other wireless accessories. Compls. Rem. Br. at 19; *see, e.g.*, CX-1033C (Madisetti Rem. WS) at Q150-158. Microsoft also provides equivalent setup guides for using the Xbox 360 with wired controllers. *See* RX-0453C (Geier Rem. RWS) at Q72-74; RX-0435 (Xbox 360 Controller Spec Sheet); RX-0436 (How to Connect Xbox Controllers); Geier Rem. Tr. 447.

21

The evidence shows that there is another way of controlling the Xbox 360 that is not accused of infringement: the Kinect accessory. Microsoft offers the Kinect accessory in certain packages with the Xbox 360 and advertises it on other packages that do not include the Kinect. *See* Geier Rem. Tr. 394-97 (cross-examination of Mr. Geier on Xbox website advertisement of "Xbox 360, 4 gigabyte console *with Kinect*" (emphasis added)); CPX-0030 (Xbox 360 package advertising Kinect); *see also* Geier Rem. Tr. 452-55 (redirect examination).

The Kinect is a wired Xbox 360 accessory that is "packed with an array of cameras and microphones that track users' movements and listen to their voices, allowing the Xbox to be controlled through speech and motion instead of a clunky game pad." CX-0878 at 878.005 (Ewalt, Microsoft Xbox Winning the Living Room War). Kinect marketing documentation of record here similarly urges users "to ditch remotes entirely." *Id* at 878.007. The Xbox 360 package that Motorola presented at trial advertises: "With the Kinect™ Sensor, you are the controller. There's nothing to hold and your whole body is in the game. Plus, Kinect lets you control HD movies and sports with your voice." CPX-0030 (Xbox 360 package advertising Kinect).

The evidence shows that Microsoft markets the use of Kinect as a way to control the Xbox without using a game pad — either wired or wireless. *See* CX-0879 (Future of TV Begins on Xbox) at 879.001-002 ("Kinect for Xbox 360 revolutionized controller-free entertainment"); *id*. at 879.003-004 ("Thanks to the addition of Kinect, Xbox 360 has transformed social gaming and entertainment with a whole new way to play — no controller required."); CX-0915 (Xbox 360 Teams Up with Entertainment Leaders to Transform TV) at CX-0915.003 ("With Kinect for Xbox 360, there are no remotes, no

22

buttons, no worries."); CX-0916 (Xbox Press Center) at CX-0916.001 ("Kinect for Xbox 360 offers a wide array of active games and fitness experiences to get the whole family off the couch and breaking a sweat — no controller required.").  Microsoft's inclusion and promotion of the Kinect (and "controller-free" entertainment) weighs against Motorola's argument that Microsoft has specific intent to induce users to infringe.

Accordingly, Motorola has not met its burden to show inducement of infringement.

### 2.  Contributory Infringement

Section 271(c) of the Patent Act provides: "Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."  35 U.S.C. § 271(c).

Section 271(c) "covers both contributory infringement of system claims and method claims."[15]  *Arris*, 639 F.3d at 1376 (footnotes omitted).  To hold a component supplier liable for contributory infringement, a patent holder must show, *inter alia*, that (a) the supplier's product was used to commit acts of direct infringement; (b) the product's use constituted a material part of the invention; (c) the supplier knew its

---

[15] "Claims which recite a 'system,' 'apparatus,' 'combination,' or the like are all analytically similar in the sense that their claim limitations include elements rather than method steps.  All such claims can be contributorily infringed by a component supplier."  *Arris*, 639 F.3d at 1376 n.8.

product was especially made or especially adapted for use in an infringement" of the patent; and (d) the product is not a staple article or commodity of commerce suitable for substantial noninfringing use. *Id.*

Motorola argues that "Microsoft's importation and sale after importation of Xbox 360 Consoles and Wireless Accessories also contribute to infringement of claims 1 and 12 of the '896 patent." Compls. Rem. Br. at 22. According to Motorola, "[s]pecifically, each of the Xbox 360 Wireless Accessories and the Front Panel Module and Media Access Control components of the Xbox 360 Consoles plays a material role in practicing claims 1 and 12 of the '896 patent, is especially adapted to be used in the performance of the infringing process, and has no substantial noninfringing use. Additionally, it is beyond question that Microsoft has knowledge both of the '896 patent and of the fact that each of the Wireless Accessories and the FPM and MAC components of the Console is especially adapted to be used performing the infringing process." *Id.* at 22-33.

Microsoft argues that "Motorola's contributory infringement claims fail because the accused products and their 'components' are not material parts of the claimed inventions and are not especially made or adapted for infringement, and because they have substantial noninfringing uses." Resp. Rem. Br. at 27.

The administrative law judge previously found that Motorola had not shown that Microsoft's accused products contributorily infringe the asserted claims of the '896 patent. ID at 66-68.

Motorola's contributory infringement arguments fall short because the accused products and their "components" are not material parts of the claimed inventions and are

not especially made or adapted for infringement, and because they have substantial

noninfringing uses.

### a. "a material part of the invention"

Contributory infringement requires that the analyzed component be "a material

part of the invention" that is "especially made or especially adapted for use in an

infringement" and that the component not be "suitable for substantial noninfringing use."

35 U.S.C. § 271(c).  In asserting contributory infringement, Motorola attempts:

- to rely on the ID, which analyzed the Xbox 360 system as a whole, to
  satisfy the "material part" and "especially made" requirements; and

- to use this remand proceeding to show that some components of the Xbox
  360 system, but not the system as a whole, lack "substantial noninfringing
  uses."

Motorola relies on different things for infringement and for substantial noninfringing

uses: according to Motorola, "the appropriate inquiry *at this phase* may focus on

components, not necessarily products, and on whether a component within a larger

product has no substantial noninfringing use, *not whether the component itself practices

every claimed step*."  Compls. Rem. Br. at 27 (emphasis added).  Motorola is relying on a

finding of direct infringement that was based on the complete products, but excluding

from consideration the substantial noninfringing uses of those products.

The law does not permit this approach.  The *Ricoh* line of cases establishes that if

an "infringing component" — a component that, itself, is a material part of a patented

invention and is especially made or adapted for use in an infringement — is joined to a

separate, unrelated apparatus, then the noninfringing uses of the separate, unrelated

apparatus are irrelevant.  *See Ricoh*, 550 F.3d at 1337-40 (referring repeatedly to an

"infringing component"); *Lucent Technologies*, 580 F.3d at 1320 ("the main issue

reduces to whether the 'material or apparatus' is the entire software package or just the

*particular tool ... that performs the claimed method.*"); *Vita-Mix*, 581 F.3d at 1327

(interpreting *Ricoh* as holding that "an infringer does not evade liability by bundling an

*infringing device* with separate and distinct components that are capable of noninfringing

use") (emphasis added in each).  Thus, although a distinct, separable component can

legitimately be the subject of the contributory infringement analysis, that component

must be the subject of the entire analysis.  Nothing in *Ricoh* or its progeny suggests that

contributory infringement may be found where a component satisfies only some of the

statutory requirements for contributory infringement, while the larger product satisfies

the remaining requirements.

Neither Motorola's expert Dr. Madisetti, nor Motorola itself, has submitted any

comparison of these components to the limitations of the asserted claims.  Indeed, Dr.

Madisetti agreed that neither the front panel module nor the MAC task firmware perform

the accused process on their own.  *See* Madisetti Rem. Tr. 110, 121-22.  For the front

panel module (FPM), Motorola argues that it is "responsible for performing the Console-

side functions of the discovery process and for maintaining a wireless connection"

(Compls. Rem. Br. at 28), but does not compare it to even a single limitation of the

asserted claims.[16]  For the Wireless Accessories, Motorola states that "[t]he Xbox 360

Wireless Accessories perform the role of the 'second peer' of claim 1 of the '896 patent

---

[16] Motorola is also incorrect that the FPM is "responsible for" the console side of the
discovery process.  The console's motherboard generates the messages, performs the
authorization, and has the "capabilities" that are required for the claimed method.  Geier
Rem. Tr. 440-441, 442-443.

and the role of the 'service requesting peer' of claim 12" (Compls. Rem. Br. at 23), but

fails to to show that the Wireless Accessories meet any other claim limitation.  Motorola

argues in a single sentence that the MAC "controls wireless communications, including

transmission and receipt of the various messages necessary for the discovery process

between the Xbox 360 and a Wireless Accessory" (Compls. Rem. Br. at 32), but again

does not show that it meets even a single limitation of the asserted claims.

### b.    Substantial Noninfringing Use

Motorola argues that "[e]ach Xbox 360 Wireless Accessory has no substantial

noninfringing use," and that "every intended use of each of the Xbox 360 Wireless

Accessories requires that the Accessory first participate in the discovery process."

Compls. Rem. Br. at 24.

Microsoft argues that the subcomponents of the Xbox system "send and receive

*all* of the wireless signals that occur between the console and a wireless accessory, not

just the ones related to the discovery process that was the subject of the Initial

Determination."  Resp. Rem. Br. at 34 (emphasis in original).  Microsoft argues that

"[w]ireless communications that are not part of the discovery process constitute a

substantial noninfringing use," and that "the subcomponents have additional substantial

noninfringing uses, including uses related to using *wired* controllers."  *Id.* (emphasis in

original).

The existence of substantial noninfringing uses of the accused products defeats

Motorola's claim of contributory infringement.[17]  However, even if Motorola were

---

[17] The administrative law judge found that "[w]ired controllers are one obvious example
of a substantial noninfringing use of an Xbox console."  ID at 67-68.  Motorola did not

PUBLIC VERSION

allowed to focus on the "components" of the accused products, and even if it had

established that particular "components" of the accused products were material to the

claimed invention, those identified "components" would still have substantial

noninfringing uses and Motorola's argument would fail.

Substantial noninfringing uses of the accused components include the ongoing,

post-discovery communications that occur between the console and a wireless accessory.

These signals comprise communications unrelated to the discovery process and

communications that are not selective for any need or capability negotiated between the

console and accessory.  Such ongoing communications are substantial; the discovery

process that was found to infringe is over in less than a second, while the ongoing

communications can continue for hours.  Madisetti Rem. Tr. 83.  The front panel module

"component" has additional substantial noninfringing uses related to wired controllers,

including several significant functions that are used in the absence of any wireless

accessories.  The MAC "component" has additional substantial noninfringing uses related

to maintaining the quality of the wireless connection.  Thus, although these components

may be custom-configured to work with the Xbox (*see, e.g.*, RX-0434C (Russo RWS,

12/07/2011) at 3), they are not especially made or especially adapted for use in an

infringing manner, but rather are adapted to many other purposes.

---

challenge this finding on appeal, in its posthearing briefs or at the remand hearing.
However, in its post-hearing brief, Motorola states that "importantly, Microsoft has not
shown that use of a wired controller with an Xbox 360 Console is even non-infringing at
all."  Motorola Br. at 30.  Motorola has the burdens backward; Motorola has not tried to
show that use of a wired controller infringes.  Moreover, Motorola's expert had no
opinion to the contrary.  Madisetti Tr. 192, 199-200, 202; Madisetti Rem. Tr. 119.

### Post-Discovery Wireless Communications

The front panel module, its MAC task firmware, and the wireless accessories all send and receive every communication that takes place after completion of discovery. A wireless controller, for example, transmits a signal for every joystick move and button press, regardless of whether it is compatible with the functions of the game being played – a function not specific to any particular "capability" that the console is allegedly providing to the accessory. RX-0453C (Geier Rem. RWS) at Q79. The discovery process is over in less than a second (Madisetti Rem. Tr. 83), while the ongoing communications can continue for hours. *Id.*

Motorola raises two counter-arguments. First, Motorola argues that "the last step of each of claims 1 and 12—'selectively processing…' and 'providing said capability…', respectively—is satisfied by ongoing communications between the Accessory and the Console." Compls. Rem. Br. at 24. As Dr. Madisetti acknowledged, his opinions for direct infringement were specific to the discovery process and not to all communications between the console and accessory. Madisetti Rem. Tr. 130-31. Yet in the remand phase of this investigation, Motorola re-characterized its infringement theory as encompassing the ongoing, post-discovery communications. Motorola's new argument that all post-discovery wireless communications infringe is inconsistent with the direct infringement finding on which Motorola purports to rely. This change could be prejudicial where, as here, Motorola obtained a finding that the patent was not invalid by *excluding* non-selective communications. *See* ID at 74, 76. It is axiomatic that a patent claim must be interpreted the same way for infringement as for validity. *See, e.g., Amgen Inc. v. Hoescht Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003). Given the validity

findings Motorola secured by arguing that nonselective communications were outside the scope of the claims, Motorola cannot now recapture the nonselective communications of the Xbox console and wireless accessory for purposes of contributory infringement.

Furthermore, even if post-discovery ongoing communications were considered to be performance of the final step of claims 1 and 12, they would only satisfy that one step. Repeated performance of a single step of a method claim is not infringement of the claim. For infringement, every claim limitation must be satisfied. *See, e.g.*, *Amhil Enterprises* at 1562 (Fed. Cir. 1996). The discovery process (which is the only activity found to include any of the other limitations of the asserted claims) is not performed over and over again during game play; once a connection is established, discovery is not performed again. Madisetti Rem. Tr. 83-84. Thus, ongoing communications that do not match the claim elements are a substantial noninfringing use.

Motorola's second argument is that "[e]ven if some subset of ongoing communications does not fall squarely within the claims, such communications cannot take place unless the discovery process is first completed and, then, are no more than unclaimed additional steps that are part and parcel of the same use." Compls. Rem. Br. at 25. However, Motorola's cited legal authority does not support this proposition. *CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1235 (Fed. Cir. 2005), and *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1271 (Fed. Cir. 1986), both address direct infringement, and say nothing about substantial noninfringing uses. Rather, the cases merely state the well-established principle that if a patent claims a method "comprising" specific steps, an accused process infringes if it includes all of the

listed steps, regardless of whether it includes additional unlisted steps. There is no suggestion that performing additional steps is itself an act of infringement.

For example, in *CollegeNet*, the claimed method used the word "comprising" and certain steps had to be performed "automatically." 418 F.3d at 1228. The parties disputed whether a product could meet the "automatically" limitations if human intervention was involved. *Id.* at 1235. The Federal Circuit held that unrecited elements were not excluded. *Id.* The court explained: if a patented method included a step in which a dishwasher automatically washes dishes, a human's action of pressing the start button would not negate the fact that the dishwasher "automatically" washes the dishes. *Id.* The court did not make the further connection that Motorola now proposes, because it did not consider the human's act of pressing a button to itself be part of the dishwasher's act of washing the dishes. Thus, *CollegeNet* recited the rule that unclaimed steps do not negate infringement, but it did not require that those unclaimed steps be considered part of an infringement. Unclaimed steps are not within the scope of the patent, and performing them is not an infringing use.

The Federal Circuit rejected Motorola's approach to *Uniloc*, a damages case in which the court applied the "entire market value rule." The entire market value rule recognizes that assessing damages, like analyzing contributory infringement, requires separating the patented feature from the accused product's unpatented features. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011). In *Uniloc*, the accused feature was certain software on a product activation server, which had to be used to activate separate software on a client computer. Even though the accused activation feature had to be used before the client software could be used at all (and thus

**PUBLIC VERSION**

the activation feature fulfilled the role that the discovery process plays in Motorola's current theory), the court rejected the notion that the client software was part of the infringement on which damages should be based. *Id*. at 1321.

The Xbox 360 console, the wireless accessories, the FPM, and the MAC task all send and receive all ongoing wireless communications, not just the communications that are part of the accused discovery process, and thus they are not "especially made or especially adapted for use in an infringement." 35 U.S.C. § 271(c). It would be incorrect to find that these components are especially made or adapted for the discovery process that takes less than one second, rather than the hours of gameplay that occur afterward. These components may be "custom electronics" designed to work with the Xbox, but this does not make them "almost . . . uniquely suited as a component of the patented invention" as required for contributory infringement. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 441 (1984).

### The FPM and the MAC - Additional Substantial Noninfringing Uses

The FPM and MAC have additional substantial noninfringing uses. A user can play an entire gaming session without ever using the accused wireless discovery process or any wireless accessory, yet still make use of the FPM. Resp. Rem. Br. at 41-42. Microsoft demonstrated, and Motorola agreed, that the MAC component "ensures the quality of the wireless link and handles interference problems." Resp. Rem. Br. at 44; Compls. Rem. Br. at 33. Maintaining signal quality is a function that the administrative law judge found was outside of the scope of the patent claims in determining that the patent was valid over prior art. *See* ID at 71.

**PUBLIC VERSION**

Motorola argues that the FPM's noninfringing uses should be ignored because they are "separable." Compls. Rem. Br. at 30-31. The case law, however, does not permit a party simply to define the accused functionality as a "component" and disregard all other functions as "separable." Accordingly, Motorola has not met its burden to show contributory infringement.

## IV.     Initial Determination and Order

Accordingly, it is the INITIAL DETERMINATION of the undersigned that a violation of section 337 of the Tariff Act, as amended, has not occurred in the importation into the United States, the sale for importation, or the sale within the United States after importation, of certain gaming and entertainment consoles, related software, or components thereof that are alleged to infringe asserted claims 1 and 12 of U.S. Patent No. 6,069,896.

Further, this Remand Initial Determination, together with the record of the hearing in this investigation consisting of (1) the transcript of the hearing, with appropriate corrections as may hereafter be ordered, and (2) the exhibits received into evidence in this investigation, is CERTIFIED to the Commission.

In accordance with 19 C.F.R. § 210.39(c), all material found to be confidential by the undersigned under 19 C.F.R. § 210.5 is to be given *in camera* treatment.

The Secretary shall serve a public version of this ID upon all parties of record and the confidential version upon counsel who are signatories to the Protective Order, as amended, issued in this investigation.

It is ordered that by no later than March 29, 2013, each party shall file with the Commission Secretary a statement as to whether or not it seeks to have any portion of

33

PUBLIC VERSION

this document redacted from the public version. Any party seeking to have a portion of this document redacted from the public version must submit to this office a copy of this document with red brackets indicating the portion, or portions, asserted to contain confidential business information.[18]

This RID will be processed as set forth in the remand order. Consequently, any petitions for review will be due 12 days after service of the RID. Responses to any petition for review will be due 8 days after service of the petition. The RID will become the Commission's final determination 60 days after issuance unless the Commission orders review.


David P. Shaw
Administrative Law Judge

Issued: March 22, 2013

---

[18] Confidential business information ("CBI") is defined in accordance with 19 C.F.R. § 201.6(a) and § 210.5(a). When redacting CBI or bracketing portions of documents to indicate CBI, a high level of care must be exercised in order to ensure that non-CBI portions are not redacted or indicated. Other than in extremely rare circumstances, block-redaction and block-bracketing are prohibited. In most cases, redaction or bracketing of only discrete CBI words and phrases will be permitted.

CERTAIN GAMING AND ENTERTAINMENT
CONSOLES, RELATED SOFTWARE, AND
COMPONENTS THEREOF

Inv. No. 337-TA-752

## PUBLIC CERTIFICATE OF SERVICE

I, Lisa R. Barton, hereby certify that the attached **FINAL INITIAL REMAND DETERMINATION**
was served upon the following parties as indicated, on _____ APR - 2 2013 _____.

Lisa R. Barton, Acting Secretary
U.S. International Trade Commission
500 E Street, SW, Room 112A
Washington, DC 20436

| FOR COMPLAINANTS MOTOROLA MOBILITY, INC.; AND GENERAL INSTRUMENT CORPORATION: | |
| --- | --- |
| Stephen J. Rosenman, Esq.<br>**ROPES & GRAY LLP**<br>One Metro Center<br>700 12th Street, NW, Suite 900<br>Washington, DC 20005 | (  ) Via Hand Delivery<br>( ✓ ) Via Overnight Mail<br>(  ) Via First Class Mail<br>(  ) Other: _____ |
| **FOR RESPONDENT MICROSOFT CORPORATION:** | |
| Brian R. Nester, Esq.<br>**SIDLEY AUSTIN LLP**<br>1501 K Street, NW<br>Washington, DC 20005 | (  ) Via Hand Delivery<br>( ✓ ) Via Overnight Mail<br>(  ) Via First Class Mail<br>(  ) Other: _____ |

**CERTAIN GAMING AND ENTERTAINMENT**
**CONSOLES, RELATED SOFTWARE, AND**
**COMPONENTS THEREOF**

Inv. No. 337-TA-752

## PUBLIC MAILING LIST

| | |
|---|---|
| Angela Ruby<br>**LEXIS-NEXIS**<br>9443 Springboro Pike<br>Miamisburg, OH 45342 | ( ) Via Hand Delivery<br>( ) Via Overnight Mail<br>( ✓ ) Via First Class Mail<br>( ) Other: _____ |
| Kenneth Clair<br>**Thomson West**<br>1100 13th Street, NW, Suite 200<br>Washington, DC 20005 | ( ) Via Hand Delivery<br>( ) Via Overnight Mail<br>( ✓ ) Via First Class Mail<br>( ) Other: _____ |