The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION, a Washington corporation,

　　　　　　　　　　Plaintiff,

　　　v.

MOTOROLA, INC., and MOTOROLA MOBILITY LLC, and GENERAL INSTRUMENT CORPORATION,

　　　　　　　　　　Defendants.

_____

MOTOROLA MOBILITY LLC, and GENERAL INSTRUMENT CORPORATION,

　　　　Plaintiffs/Counterclaim Defendant,

　　　v.

MICROSOFT CORPORATION,

　　　　Defendant/Counterclaim Plaintiff.

CASE NO. C10-1823-JLR

MOTOROLA'S RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

ARGUMENT .....................................................................................................2

I.     STANDARD FOR JUDGMENT AS A MATTER OF LAW ...............................2

II.    THE RECORD IS INSUFFICIENT TO SUPPORT A FINDING THAT
MOTOROLA BREACHED ITS DUTY OF GOOD FAITH TO THE ITU AND
IEEE ............................................................................................................2

    A.    The Standard For Evaluating Good Faith And Fair Dealing ....................2

    B.    No Reasonable Jury Could Conclude That Motorola Breached The Implied
Covenant Of Good Faith And Fair Dealing By Sending The October 2010
Letters ........................................................................................................4

        1.    Microsoft Failed To Prove Motorola's Lack Of Subjective Good
Faith ................................................................................................4

        2.    Microsoft Failed To Prove Motorola's Lack Of Objective Good
Faith ................................................................................................6

            (a)    Industry Custom And Practice Is To Negotiate ................................7

            (b)    The Evidence Fails To Show That Motorola Was Seeking To
"Hold Up" Microsoft ................................................................8

    C.    No Reasonable Jury Could Conclude That That Motorola Breached The
Implied Covenant Of Good Faith And Fair Dealing By Seeking Injunctive
Relief ..........................................................................................................9

        1.    Microsoft Failed To Prove Motorola's Lack Of Subjective Good
Faith ................................................................................................9

            (a)    ITU And IEEE Commitments Do Not Waive Injunctive
Relief ................................................................................10

            (b)    Motorola Responded To Microsoft First Suing Motorola ..............10

            (c)    Microsoft Was Not A Willing Licensee Before Motorola
Filed For Injunctive Relief ..............................................11

MOTOROLA'S RULE 50(A) MOTION FOR JUDGMENT AS A    i
MATTER OF LAW -
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

2.     Microsoft Failed To Prove Motorola's Lack Of Objective Good Faith ........................................................................................ 11

    (a)     The Availability Of Injunctive Relief For Infringement Of SEPs Was An Open Issue When Motorola Filed For Injunctions ............................................................ 12

    (b)     Courts Have Recently Found That Injunctive Relief Is Available For Infringement Of SEPs In Certain Circumstances ........................................................ 12

    (c)     Seeking An Injunction Cannot Evince "Hold Up" Because A Judge Necessarily Must Decide Whether To Issue An Injunction ............................................ 14

    (d)     The Parties Did Not Reach a Breakdown In Negotiation Because Microsoft Never Negotiated ............................ 14

3.     Microsoft Should Not Be Permitted To Now Plead A New Theory Of Breach Regarding Failure To Withdraw Injunctions ............................ 15

D.     No Reasonable Jury Could Find That Motorola Breached A Duty Of Good Faith Through Its Negotiations With Marvell ........................................ 15

1.     Microsoft Lacks Standing To Argue Based On Marvell's Rights ............... 15

2.     Microsoft Failed To Prove Motorola's Lack of Subjective Good Faith ........................................................................................ 16

3.     Microsoft Failed To Prove That Motorola Lacked Objective Good Faith ........................................................................................ 17

    (a)     Defensive Suspension Clauses Are Common In The Industry ........ 17

    (b)     Motorola Treated Marvell Similarly To Others ............................ 18

E.     No Reasonable Jury Could Find That Microsoft Has Adduced Sufficient Proof Demonstrating That Motorola's Actions Combined Breached The Duty Of Good Faith And Fair Dealing ........................................................ 18

III.     THE RECORD IS INSUFFICIENT TO SUPPORT A FINDING THAT MOTOROLA CAUSED MICROSOFT ANY DAMAGES ............................... 19

A.     Microsoft Has Failed To Prove Damages, Which Are An Essential Element Of Breach ........................................................................................ 19

B.     Microsoft Cannot Recover Attorney Fees For Breach Of Contract ....................... 20

MOTOROLA'S RULE 50(A) MOTION FOR JUDGMENT AS A     ii
MATTER OF LAW -
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1. The American Rule Bars Microsoft's Recovery Of Attorney Fees As Damages ................................................................................. 20

2. Microsoft May Not Recover Attorney Fees As An Equitable Remedy For Breach Of The RAND Commitment ....................................... 21

C. No Reasonable Jury Could Find That Motorola's Actions Caused Microsoft's Asserted Damages ............................................................... 23

1. Microsof Failed To Prove That Motorola's Actions Caused Microsoft To Incur The Costs of Moving Its German Facility .................. 23

2. Microsoft Failed To Prove That Motorola's Actions Caused Microsoft's Attorney Fee Damages ............................................. 24

D. Microsoft Has Presented No Evidence That Motorola Solutions Is Liable For Damages Allegedly Caused By The German Action ......................... 24

CONCLUSION ................................................................................ 24

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

## TABLE OF AUTHORITIES

**Page**

<u>Cases</u>

*Akins v. Williams Commn's, Inc.,*
2003 WL 1521999 (Wash. App. Div. 2. Mar. 25, 2003) .........................................23

*Alliance Atlantis Releasing Ltd. v. Bob Yari Prods.,*
2010 WL 1525687 (C.D. Cal. Apr. 12, 2010) ............................................................3

*Apple, Inc. v. Motorola, Inc.,*
869 F. Supp. 2d 901 (N.D. Ill. 2012) .................................................................12, 20

*Apple, Inc. v. Motorola Mobility, Inc.,*
No. 11-cv-178-bbc, 2012 WL 5416941 (W.D. Wis. Oct. 29, 2012) .........10, 12, 13, 21

*BBS Technologies, Inc. v. Remington Arms Co., Inc.,*
2005 WL 3132307 (E.D. Ky. Nov. 22, 2005) .............................................................3

*Badgett v. Sec. State Bank,*
16 Wn. 2d 563 (1991) ..............................................................................................10

*Bowers v. Farmers Ins. Exchange,*
99 Wash. App. 41 (2000) ..........................................................................................23

*Bunnett v. Smallwood,*
793 P.2d 157 (Colo. 1990) ........................................................................................22

*City of Seattle v. McCready,*
131 Wn. 2d 266 (1997) .............................................................................................20

*Dunkin' Donuts Inc. v. Dough Boy Mgmt., Inc.,*
2006 WL 20521 (D.N.J. Jan. 3, 2006) .......................................................................20

*Graham v. Public Employees Mut. Ins. Co.,*
98 Wash. 2d 533 (1983) ............................................................................................23

*Gruver v. Midas Intern. Corp.,*
925 F.2d 280 (9th Cir. 1991) .....................................................................................22

*Jacob's Meadow Owners Ass'n v. Plateau,*
139 Wash. App. 743, 162 P.3d 1153 (2007) ...............................................................20

*Johnson v. Microsoft Corp.,*
2008 WL 803124 (W.D. Wash. Mar. 21, 2008) .........................................................16

*Ketchum v. Albertson Bulb Gardens, Inc.,*
252 P. 523 (Wash. 1927) ...........................................................................................20

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*Lakeside-Scott v. Multnomah Cty.*,
  556 F.3d 797 (9th Cir. 2009) ........................................................................ 2

*Lehrer v. DSHS*,
  5 P.3d 722 (Wash. 2000) ............................................................................ 19

*Merrell v. Renier*,
  2006 WL 3337368 (W.D. Wash. Nov. 16, 2006) ........................................ 19

*Metro. Edison Co. v. NLRB*,
  460 U.S. 693 (1983) .................................................................................. 10

*Microsoft Corp. v. Immersion Corp.*,
  2008 WL 2998238 (W.D. Wash. Aug. 1, 2008) .......................................... 19

*Muniz v. Microsoft Corp.*,
  2010 WL 4482107 (W.D. Wash. Oct. 29, 2010) ......................................... 19

*Nw. Ind. Forest v. Dept. of Labor & Industries*,
  899 P.2d 6 (Wash. 1995) ...................................................................... 19, 23

*Realtek Semiconductor Corp. v. LSI Corp.*,
  2012 WL 4845628 (N.D. Cal. Oct. 12, 2012) ............................................... 3

*Ringler v. Bishop White Marshall & Weibel, PS*,
  2013 WL 1816265 (W.D. Wash. Apr. 29, 2013) ........................................ 10

*Valley Forge Christian College v. Americans United for the
  Separation of Church & State, Inc.*,
  454 U.S. 464 (1982) .................................................................................. 15

*Warner Theatre Associates Ltd. P'hip v. Metro. Life Ins. Co.*,
  1997 WL 685334 (S.D.N.Y. Nov. 4, 1997), *aff'd*, 149 F.3d 134 (2d Cir. 1998) ........................ 3

### Statutes/Rules

19 U.S.C. § 283 ....................................................................................... 12

35 U.S.C. §1337(d) .................................................................................. 12

Fed. R. Civ. P. 50(a)(1) ............................................................................. 2

MOTOROLA'S RULE 50(A) MOTION FOR JUDGMENT AS A      v
MATTER OF LAW -
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1

## **INTRODUCTION**

Defendants Motorola Mobility, LLC ("MMI"), Motorola Solutions, Inc. ("Motorola Solutions") and General Instrument Corp. ("GIC") (collectively, "Motorola") respectfully file this memorandum in support of their motion for judgment as a matter of law (JMOL) under Federal Rule of Civil Procedure 50(a)(1). Microsoft's evidence at the close of its case-in-chief is legally insufficient to show that Motorola breached the implied covenant of good faith and fair dealing in either the alleged agreements.[1] Microsoft has failed to present evidence indicating that Motorola did not act in good faith in sending the October 2010 letters, in seeking injunctive relief, or in negotiating a license with Marvell; Microsoft similarly has failed to present evidence that Motorola breached the implied covenant of good faith through any combination of these actions.

This Court has found that Motorola's Letters of Assurance to the Institute of Electrical Electronics Engineers ("IEEE") and Motorola's declarations to the International Telecommunication Union ("ITU") create enforceable contracts between Motorola and the respective standard-setting organization to license its essential patents on RAND terms. Dkt. 465 at 8-9. This Court also has found that Microsoft was a third-party beneficiary to those agreements and has a right to a RAND license for Motorola's standard essential patents. *Id*. at 9.[2] The Court has found that Motorola's offers to license its SEPs must be made in good faith, Dkt. 335 at 25, but that initial offers do not have to be on RAND terms, Dkt. 465 at 9.

As a threshold matter, Microsoft has not met its burden in proving a breach of contract because at the close of its case in chief, it has failed to introduce into evidence either of the contracts at issue. No reasonable jury could find a breach of the duty of good faith and fair dealing of a contract provision when the jury has never seen the contract and it is not in evidence. This basis alone warrants judgment as a matter of law in favor of Motorola.

---

[1]   Motorola reserves the right to file another JMOL under Rule 50(a) at the close of evidence.

[2]   Motorola reserves the right to challenge each of these findings on appeal. Nonetheless, Motorola assumes that these findings apply for purposes of this motion.

MOTOROLA'S RULE 50(A) MOTION FOR JUDGMENT AS A
MATTER OF LAW - 1
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1

## ARGUMENT

2

**I.    STANDARD FOR JUDGMENT AS A MATTER OF LAW**

3

Federal Rule of Civil Procedure 50(a)(1) provides that, where "a party has been fully heard

4

on an issue during a jury trial and the court finds that a reasonable jury would not have a legally

5

sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue

6

against the party; and (B) grant a motion for judgment as a matter of law against the party on a

7

claim or defense that, under the controlling law, can be maintained or defeated only with a

8

favorable finding on that issue." Fed. R. Civ. P. 50(a)(1).  Judgment as a matter of law is required

9

where a party fails to present a legally sufficient basis for a reasonable jury to rule in its favor.

10

*Lakeside-Scott v. Multnomah Cty.*, 556 F.3d 797, 802 (9th Cir. 2009).

11

**II.    THE RECORD IS INSUFFICIENT TO SUPPORT A FINDING THAT MOTOROLA BREACHED ITS DUTY OF GOOD FAITH TO THE ITU AND IEEE**

12

13

This Court should grant judgment as a matter of law because Microsoft has failed to

14

present legally sufficient evidence to prove that Motorola breached the duty of good faith and fair

15

dealing implied in its RAND commitments by sending the October 2010 letters, by seeking

16

injunctive relief, by negotiating a license with Marvell, or by these actions taken together.

17

A.    The Standard For Evaluating Good Faith And Fair Dealing

18

As this Court has indicated, the good faith determination here requires analysis of a variety

19

of both subjective and objective factors bearing on whether Motorola acted in good faith in

20

complying with its RAND obligations in the context and circumstances of this case.  This Court

21

has held that the fact finder may consider: (1) whether the defendant's actions were contrary to the

22

reasonable and justified expectations of other parties to the contract; (2) whether the defendant's

23

conduct would frustrate the purpose of the contract; (3) whether the defendant's conduct was

24

commercially reasonable; (4) whether and to what extent the defendant's conduct conformed with

25

ordinary custom or practice in the industry; (5) to the extent the contract vested the defendant with

26

1   discretion in deciding how to act, whether that discretion was exercised reasonably; and (6)

2   subjective factors such as the defendant's intent and motive.  Dkt. 843 at 12.[3]

3          Contrary to Microsoft's assertions throughout this lawsuit, no case of which Motorola is

4   aware in Washington or any other jurisdiction has ever held that a breach of the covenant of good

5   faith and fair dealing may be found based on a mere opening offer or based on the disparity

6   between an offered rate and another rate later deemed more appropriate.  To the contrary, various

7   cases find that the size of the offer alone is not dispositive of the reasonableness of the offer or of

8   whether the offeror has breached a duty of good faith.  *See Alliance Atlantis Releasing Ltd. v. Bob*

9   *Yari Prods.*, 2010 WL 1525687, at *12 (C.D. Cal. Apr. 12, 2010) (stating that "[a] low offer still

10  qualifies as a good faith offer" and noting that, in a commercial transaction, "both sides

11  presumably try to get the best deal"); *Warner Theatre Associates Ltd. P'ship v. Metro. Life Ins.*

12  *Co.*, 1997 WL 685334, at *6 (S.D.N.Y. Nov. 4, 1997) (Sotomayor, D.J.) ("Nothing in the duty of

13  good faith requires that parties to a negotiation propose only such terms as the other party is happy

14  with."), *aff'd*, 149 F.3d 134 (2d Cir. 1998); *BBS Technologies, Inc. v. Remington Arms Co., Inc.*,

15  2005 WL 3132307, at *4 (E.D. Ky. Nov. 22, 2005) (rejecting claim that "there was no good faith

16  effort to resolve the parties' disputes through negotiation," reasoning that "back and forth, low ball

17  high ball negotiations … are nothing unusual" and emphasizing that "just because one side views

18  another side's settlement offer as unreasonable does not mean that the offer was made in bad

19  faith"); *Realtek Semiconductor Corp. v. LSI Corp.*, 2012 WL 4845628, at *4 (N.D. Cal. Oct. 12,

20  2012) (emphasizing that "the royalty rate as compared to selling price" is merely "*one relevant*

21  *factor*" in the RAND context and that reasonableness turns on "the *entirety of the terms and*

22  *circumstances*") (emphasis added); *see also* Dkt. 716 at 11-12, 13-14.  Accordingly, a breach of

23  the duty of good faith and fair dealing cannot be based exclusively on the difference between

24  Motorola's offers and the RAND rate and ranges determined by this Court.

25

26        _____
          [3]   Motorola discusses the first five factors together below under the category of objective good
       faith.  Motorola reserves its right to appeal the Court's particular instructions on these factors.

MOTOROLA'S RULE 50(A) MOTION FOR JUDGMENT AS A
MATTER OF LAW - 3
CASE NO. C10-1823-JLR

1

2

B.     No Reasonable Jury Could Conclude That Motorola Breached The Implied
       Covenant Of Good Faith And Fair Dealing By Sending The October 2010 Letters

3     Microsoft has not put forth legally sufficient evidence from which a reasonable jury could

4  find that Motorola breached the duty of good faith and fair dealing by sending the opening offer

5  letters.  As this Court previously has held, an opening offer from an SEP holder does not need to

6  be on RAND terms.  Dkt. 335 at 24-25.  The undisputed evidence elicited at trial shows that

7  Motorola made its standard opening offer to Microsoft in order to begin a negotiation and with the

8  expectation that Microsoft would respond.  Dailey, 8/27/13 Tr. 192:11-193:3, 197:9-20; Blasius,

9  8/29/13 Tr. 107:10-20.  Motorola specifically indicated that it was open to licensing only part of

10  its portfolio (Ex. 1 at 1; Ex. 2 at 1; Dailey, 8/27/13 Tr. 126:20-127:14; 194:6-18) and Microsoft

11  itself has included a 20-day limit in its offer letters like the one Motorola included.   Dailey,

12  8/27/13 Tr. 195:10-199:9.

13                    1.     Microsoft Failed To Prove Motorola's Lack Of Subjective Good Faith

14     The undisputed testimony at trial showed that Kirk Dailey, who sent the letters on behalf

15  of Motorola, did so with the expectation that it was an initial offer and that he would negotiate

16  with Microsoft to learn more information about Microsoft's business, products, and use of the

17  patents in order to reach a final agreement.   Dailey, 8/27/13 Tr. 185:5-15, 186:1-5, 186:8-16,

18  187:6-23, 190:9-191:24, 193:19-194:18.   Motorola's goal was to negotiate to reach patent peace.

19  Dailey, 8/27/13 Tr. 186:18-189:24.  Microsoft's own expert, Dr. Murphy, admitted that he was not

20  opining on Motorola's subjective intent and does not impute any nefarious intent or motive to

21  Motorola.  Murphy, 8/30/13 Tr. 28:4-15, 28:16-22.  Microsoft presented no evidence tending to

22  show that Motorola lacked good faith subjective intent.

23     *First*, Motorola made its standard opening offer of 2.25%.  Dailey, 8/27/13 Tr. 192:11-

24  193:3, 197:9-20.  Motorola made this opening offer based on its long history of starting with such

25  an offer for licensing its cellular portfolio.  Blasius, 8/29/13 Tr. 107:10-20.  Although Microsoft

26  introduced evidence regarding the InteCap study, no evidence tends to show that Mr. Dailey or

MOTOROLA'S RULE 50(A) MOTION FOR JUDGMENT AS A
MATTER OF LAW - 4
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:    (206) 676-7001

anyone who worked with him in the brief period of time he had to prepare to send the letters was aware of the existence of the InteCap study when the letters were sent.  Dailey, 8/27/13 Tr. 112:18-22.  That study was seven years old at the time (Dailey, 8/27/13 Tr. 113:4-8), and could not have involved all of the patents relating to the current 802.11 standard, as the standard is continually changing.  Ochs, 8/28/13 Tr. 88:24-89:2.  Microsoft has introduced no evidence about the types of patents in the study or the study's relevance to Motorola's offers.  The annex of patents attached to Motorola's October 21 letter shows that many of the patents Motorola was offering to license in 2010 had not been filed and/or issued in 2003.  Ex. 1.  Horacio Gutierrez, Microsoft's head of licensing, also admitted that royalty stacking is not a factor that Motorola could have considered easily prior to sending the letters, because in many cases companies declare patents to be essential that are not really essential.  Gutierrez, 8/29/13 Tr. 17:13-24.

*Second*, the evidence shows that Motorola expected Microsoft to respond.  Dailey, 8/27/13 Tr. 117:19-24, 200:20-201:6.   Mr. Gutierrez, who was involved in wide-ranging business discussions between Microsoft and Motorola, testified that he rejects opening offers more than 99% of the time.  Gutierrez, 8/29/13 Tr. 30:15-18, 33:13-20.  Although Mr. Gutierrez testified that this negotiation was not typical, he conceded it was atypical not because Motorola lacked any good-faith motive in sending the letters, but because Microsoft wanted to vindicate a "broader principle."  Gutierrez, 8/28/13 Tr. 149:10-150:5.  The fact that Microsoft did not tell Motorola of its intent to file this breach of contract lawsuit before filing shows that it is Microsoft, not Motorola, that made the process atypical, because "the logical thing to do would be to make clear that you are going to court."  Murphy, 8/30/13 Tr. 54:24-55:9.  The undisputed evidence is that parties in such cases usually negotiate.  Dailey, 8/28/13 Tr. 57:12-17; Ochs, 8/28/13 Tr. 97:10-12; Gutierrez, 8/28/13 120:12-16, 183:10-19; Heiner, 8/30/13 Tr. 170:13-18;

*Third*, the undisputed evidence at trial shows that Motorola had to act quickly under litigation pressure from Microsoft and simply made an offer to start negotiations.  Dailey, 8/27/13 Tr. 152:1-11, 205:2-17.  Mr. Gutierrez also testified that it takes time to review patents, and that

MOTOROLA'S RULE 50(A) MOTION FOR JUDGMENT AS A
MATTER OF LAW - 5
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1   Microsoft did not have sufficient time to analyze the patents from the October 21 and October 29

2   letters prior to filing the November 9 lawsuit, which is the same amount of time that Motorola had

3   to analyze its patents between October 1 and October 21.   Gutierrez, 8/29/13 Tr. 18:4-12.   Thus

4   the undisputed evidence shows not that Motorola lacked subjective good faith in making the

5   opening offers, but rather that Motorola acted with subjective good faith in responding to

6   Microsoft's lawsuits and Microsoft's demands that that Motorola put its patents on the table.

7   Dailey, 8/27/13 Tr. 179:9-21, 184:15-185:1.   At the time Motorola sent the letters, only Microsoft

8   had initiated litigation between the two parties.   Dailey, 8/27/13 Tr. 177:3-19.

9              2.      Microsoft Failed To Prove Motorola's Lack Of Objective Good Faith

10          The evidence shows that prior to 2007 Motorola and Microsoft peacefully co-existed and

11   collaborated to develop smartphones that used Microsoft's Windows mobile operating system.

12   Dailey, 8/27/13 Tr. 157:18-158:1, 167:4-6.   When Motorola's license to Microsoft's ActiveSync

13   patents expired in 2007, the parties engaged in negotiations for a new license up through 2010.

14   Dailey, 8/27/13 Tr. 158:1-159:17, 161:6-162:22.   During the course of the parties' negotiations in

15   this time period, Motorola advised Microsoft that it had patents that read on Microsoft's products.

16   Dailey, 8/27/13 Tr. 162:3-22.

17          It is undisputed that Motorola's opening offer letters were sent in the context of litigation

18   initiated by Microsoft.   On October 1, 2010, without prior notice, Microsoft sued Motorola in the

19   International Trade Commission, alleging patent infringement by Motorola's smartphones.

20   Gutierrez, 8/28/13 Tr. 196:4-197:4; Dailey, 8/27/13 Tr. 176:15-20, 178:25-179:8.   Microsoft

21   sought to bar Motorola from importing its smartphones into the United States.   Dailey, 8/27/13 Tr.

22   176:15-20, 177:7-19.   Microsoft also filed a patent infringement action against Motorola in this

23   Court.   Ex. 7119.   In the district court case, Microsoft sought, among other things, injunctive

24   relief.   *Id.* at 8.  In these two actions, Microsoft brought claims against Motorola on its ActiveSync

25   patents against Motorola, as well as additional patents that had never before been the subject of

26

MOTOROLA'S RULE 50(A) MOTION FOR JUDGMENT AS A
MATTER OF LAW - 6
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1   prior negotiations between the parties.   Dailey, 8/27/13 Tr. 177:7-22; Gutierrez 8/28/13 Tr.

2   193:10-19.

3   The evidence is undisputed that, after Microsoft filed its lawsuits against Motorola, *see,*

4   *e.g.*, Ex. 7119, Microsoft told Motorola that Microsoft was interested in finding a resolution of the

5   parties' dispute that would cover both parties' intellectual property, and that it was interested in

6   discussing a cross-license agreement.   Dailey, 8/27/13 Tr. 179:9-180:1; Gutierrez, 8/28/2013 Tr.

7   140:21-141:9.  Microsoft invited Motorola to present its patents for discussion. Dailey, 8/27/2013

8   Tr. 179:9-21; Gutierrez, 8/28/13 Tr. 141:10-14.  The parties also scheduled a meeting for October

9   22, 2010 to discuss a broad patent cross-license.  Dailey, 8/27/2013 Tr. 146:18-147:4, 175:14-19;

10   Gutierrez, 8/28/13 Tr. 142:15-16.

11   On October 21, 2010, in advance of the parties' scheduled meeting, Motorola sent

12   Microsoft a letter offering to grant Microsoft a worldwide license to Motorola's portfolio of

13   patents and patent applications relating to the IEEE 802.11 standards. Ex. 1.  On October 29,

14   2010, Motorola sent Microsoft a second letter, which offered to grant Microsoft a worldwide

15   license to Motorola's portfolio of patents and patent applications relating to the ITU-T

16   Recommendation H.264.  Ex. 2.  It is undisputed that, contrary to its usual practice, Microsoft

17   communicated no response to Motorola's October 21 and 29, 2010 offer letters.  Gutierrez,

18   8/28/2013 Tr. 148:2-4.   Rather, upon receipt, Mr. Gutierrez forwarded each of the letters to

19   Microsoft's in-house litigation team.  Gutierrez, 8/28/2013 Tr. 142:19-22.  On November 9, 2010,

20   Microsoft filed the complaint in this action, asserting, among other claims, that Motorola breached

21   its obligations to the IEEE and ITU by failing to offer to license its 802.11 and H.264 SEP

22   portfolios on RAND terms.  Dkt. 1.

23   (a)   Industry Custom And Practice Is To Negotiate

24   The undisputed evidence in the record shows that Motorola's actions were consistent with

25   industry custom and practice and thus that Motorola acted in good faith in starting negotiations.

26   Both Motorola witness Mr. Dailey and Microsoft witness Mr. Gutierrez testified that the industry

MOTOROLA'S RULE 50(A) MOTION FOR JUDGMENT AS A
MATTER OF LAW - 7
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1  practice for patent licensing, including for SEPs, is to negotiate.  Dailey, 8/27/13 Tr. 185:5-15,

2  186:1-5, 186:8-16, 187:6-23, 190:9-191:24, 193:19-194:18; Gutierrez, 8/28/13 Tr. 97:10-12,

3  183:10-19, 185:1-8, 189:8-14; 8/29/13 Tr. 21:15-22.  As Mr. Dailey testified, the royalty rate, or

4  price term, in a license agreement is only one of many terms in the agreement that the parties

5  negotiate.  Dailey, 8/27/13 186:1-16.  Other terms include the duration of the license, covered

6  products, a potential royalty cap, and defensive suspension provisions.  Dailey, 8/27/13 Tr. 151:2-

7  25.  All of these potential terms are typically negotiated and are used to determine the value of the

8  agreement and the royalty rate that should be agreed upon.

9  While Microsoft's expert, Dr. Murphy, opined that the opening offer letters were

10  consistent with a strategy of hold up, he had not examined the industry custom and practice to

11  reach that conclusion.  Murphy, 8/30/2013 Tr. 27:18-21, 27:22-28:3.  Nor had Dr. Murphy

12  considered the full range of circumstances before him in reaching that conclusion.  Murphy,

13  8/30/2013 Tr. 64:23-66:4.  Dr. Murphy also did no analysis regarding the hold up value of the

14  parties failing to reach an agreement.  Murphy, 8/30/13 Tr. 39:21-40:8.

15  (b)      The Evidence Fails To Show That Motorola Was Seeking To "Hold

16  Up" Microsoft

17  Microsoft further adduced no real-world evidence tending to show that Motorola acted in

18  order to subject Microsoft to patent "hold up."  Microsoft itself told the FTC in June 2011 that it

19  had not accused anyone of patent hold up as of that date—seven months after Microsoft filed the

20  current lawsuit—writing that "Microsoft has never been accused of patent hold-up in this regard,

21  nor has it accused any other company of such behavior."  Ex. 2970 at 7; Heiner, 8/30/13 Tr. at

22  177:15-19.  Microsoft also told the FTC that "[c]oncerns about 'patent hold-up' should not extend

23  to any bi-lateral business disagreement between two companies regarding proposed licensing

24  terms.  These discussions typically pertain to a broader set of questions than just the proposed

25  licensing terms for essential patent claims reading on a standard."  *Id*. at 2; Heiner, 8/30/13 Tr.

26  169:22-170:5.  Further, Microsoft explained that there was a dearth of examples of hold up in the

MOTOROLA'S RULE 50(A) MOTION FOR JUDGMENT AS A
MATTER OF LAW - 8
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

real world, Heiner, 8/30/13 Tr. 177:9-14, and counseled against a simplified approach that would convert routine business negotiations into hold-up situations, Heiner, 8/30/13 Tr. 174:4-22.

Microsoft's expert, Dr. Murphy, did not negate this undisputed evidence, for he applied only a theoretical approach to examine whether Motorola engaged in hold up, and did not examine the real world evidence, such as the ongoing business discussions, the industry custom and practice, or Motorola's subjective intent. Murphy, 8/30/2013 Tr. 27:18-28:3, 64:23-66:4. Indeed, Dr. Murphy could not opine on whether Motorola even intended to hold up Microsoft by preventing a license deal from being negotiated, as Dr. Murphy did not know if such a result would benefit Microsoft or Motorola. Murphy, 8/30/13 Tr. 39:21-40:8.

C.   No Reasonable Jury Could Conclude That That Motorola Breached The Implied Covenant Of Good Faith And Fair Dealing By Seeking Injunctive Relief

Microsoft has not presented evidence sufficient for a jury to find that Motorola's seeking of injunctions on its SEPs shows a breach of the duty of good faith. Microsoft has presented no evidence that Motorola did not act in subjective good faith by filing for injunctions in either U.S. district courts, the ITC, or German patent courts. Microsoft also has not presented evidence sufficient to show that Motorola's actions lacked objective good faith.

1.   Microsoft Failed To Prove Motorola's Lack Of Subjective Good Faith

Microsoft has introduced no evidence that Motorola acted with a lack of subjective good faith by filing any of its injunction actions against Microsoft. On the contrary, Mr. Dailey testified that every case that he has been involved in, either as a plaintiff or a defendant, has involved a request for either an injunction or an exclusion order. Dailey, 8/27/13 132:2-7; 8/28/13 26:9-16. Moreover, the undisputed evidence shows that Motorola filed its lawsuits in response to Microsoft's invitation to put its patents on the table, and that Micorsoft was not a willing licensee at the time Motorola filed its lawsuits.

MOTOROLA'S RULE 50(A) MOTION FOR JUDGMENT AS A
MATTER OF LAW - 9
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1

(a)     ITU And IEEE Commitments Do Not Waive Injunctive Relief

2      The implied duty of good faith and fair dealing cannot be "free floating" and must be tied

3  to express contract terms; it cannot be created out of thin air.  *Badgett v. Sec. State Bank*, 16 Wn.

4  2d 563, 569 (1991); *Ringler v. Bishop White Marshall & Weibel, PS*, C13-5020BHS, 2013 WL

5  1816265, at *2 (W.D. Wash. Apr. 29, 2013).  But Microsoft has failed to elicit any evidence that

6  the alleged contracts at issue prohibit Motorola from seeking injunctions.  Nor could it, for neither

7  Motorola's declarations to the ITU or IEEE nor any similar language from ITU and IEEE policies

8  contain any language prohibiting Motorola or any other SEP holder from seeking an injunction or

9  exclusion order.  *See, e.g.*, Dkt. 673 at 19 ("IEEE-SA Standards Board Bylaws state that "[n]o

10 license is implied by the submission of a Letter of Assurance.").  While Motorola made a

11 commitment to license its SEPs on RAND terms, it did not thereby waive all rights to seek

12 injunctions.  Contractual waivers of rights must be expressly stated.  *See, e.g.*, *Metro. Edison Co.*

13 *v. NLRB*, 460 U.S. 693, 707-709 (1983); *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178-

14 bbc, 2012 WL 5416941, at *15 (W.D. Wis. Oct. 29, 2012).  Microsoft has shown no contractual

15 waiver here, express or otherwise.

16

(b)     Motorola Responded To Microsoft First Suing Motorola

17     The undisputed evidence at trial is that Microsoft sued Motorola *three times* before

18 Motorola began to seek injunctive relief against Microsoft.  In its October 1 patent infringement

19 suits, Microsoft sought an exclusion order against Motorola's Android phones in the ITC and an

20 injunction in this Court.  Ex. 7119; Dailey, 8/27/13 Tr. 176:15-20; 177:7-19.   Microsoft witness

21 Mr. Heiner testified that a lawsuit under such circumstances should not be considered hold up.

22 Heiner, 8/30/13 Tr. 179:4-8. It is also undisputed that Microsoft failed to respond to Motorola's

23 opening offer letters at any time from the October 22, 2010 meeting to the time it filed this lawsuit

24 on November 9, 2010.

25

26

MOTOROLA'S RULE 50(A) MOTION FOR JUDGMENT AS A
MATTER OF LAW - 10
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1

2

        (c)      Microsoft Was Not A Willing Licensee Before Motorola Filed For Injunctive Relief

3

       As further evidence that Motorola did not act with a lack of subjective good faith in filing

4

requests for injunctive relief, it is undisputed that Microsoft never offered to take a license on

5

RAND terms before Motorola filed its November 10, 2010 patent infringement lawsuits.  To the

6

contrary, in response to Motorola's complaints, Microsoft denied that it infringed Motorola's

7

SEPs, denied that the SEPs were valid, and refused to concede the patents are essential.  Ex. 7241;

8

Gutierrez, 8/29/13 Tr. 17:3-18:3.  In response to Motorola's German lawsuits, Microsoft filed a

9

nullity action in Germany seeking to invalidate the patents.  Killough, 9/3/13 Tr. 41:16-42:2.

10

       The complaint in this action likewise nowhere states that Microsoft was willing to take a

11

license on RAND terms.  Ex. 7241; Dkt. 381 at 16 n.12.  Neither Mr. Dailey nor Mr. Gutierrez

12

confirmed any date by which Microsoft was willing to do so, despite Microsoft's allegations that it

13

was willing to take a license as of September 30, 2011.  Dailey, 8/27/13 Tr. 135:8-15, 20-21;

14

Dailey, 8/28/13 Tr. 47:23-48:3; Gutierrez, 8/28/13 Tr. 167:14-168:23.  This Court found in May

15

2012 that Microsoft had only "recently" stated that it would be willing to accept a license on

16

RAND terms.  Dkt. 381 at 16 n.12.  Thus Microsoft has failed to introduce any evidence to show

17

that it was willing to take a license on RAND terms at any time prior to November 2010 and July

18

2011, when Motorola filed lawsuits seeking injunctions.[4]

19

     2.      Microsoft Failed To Prove Motorola's Lack Of Objective Good Faith

20

       Not only has Microsoft failed to introduce evidence to show any lack of subjective good

21

faith by Motorola in filing lawsuits seeking in injunctions, but Microsoft also has not introduced

22

evidence sufficient to prove that Motorola was not acting objectively in good faith by doing so.

23

24

[4]   Microsoft throughout trial has pointed to a paragraph in its complaint in this action requesting a judicial accounting.  This paragraph, however, fails to overcome the Court's finding that the complaint nowhere expresses willingness to enter into a RAND license with Motorola.  First, Microsoft did not request a judicial accounting in its prayer for relief.  Dkt. 53 at 24-25.  Second, a judicial accounting is an equitable remedy and is not available here, where Microsoft had pleaded a claim for breach of contract seeking damages for breach and thus had a legal remedy.  1A C.J.S.

25

26

MOTOROLA'S RULE 50(A) MOTION FOR JUDGMENT AS A
MATTER OF LAW - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

2

        (a)        <u>The Availability Of Injunctive Relief For Infringement Of SEPs Was An Open Issue When Motorola Filed For Injunctions</u>

3        When Motorola filed its lawsuits seeking injunctions in November 2010 and July 2011, the

4 availability of injunctive relief for SEP infringement was an open issue, and it remains so.  There

5 were no judicial opinions precluding it.  Moreover, when Motorola filed the lawsuits, there was an

6 open issue as to whether Microsoft had repudiated its rights under the purported contracts by

7 bringing suit.  This was the subject of summary judgment briefing, concluding in this Court's

8 order of June 6, 2012.  Dkt. 335.  If this Court had found repudiation, the Microsoft's claims in

9 this case would have been dismissed.

10        Microsoft also did not include a statement that it was willing to take a license to

11 Motorola's patents on RAND terms in its complaint.  As the Court noted in its May 14, 2012

12 Order, Microsoft affirmatively stated only in its "recent" papers to the court that Microsoft was

13 willing to take a license on RAND terms.  Dkt. 318 at 16 fn. 12.  Instead, Microsoft contested

14 validity, infringement, and essentiality of the patents.  Dkts. 1, 53.

15        In addition, this Court did not dismiss Motorola's claim for injunctive relief in this case

16 until November 30, 2012—at which time this Court held that the dismissal was without prejudice,

17 was "based on the specific circumstances and rulings that have developed in this litigation."  Dkt.

18 607 at 15.  The Court also held that if "those circumstances change in a manner to warrant

19 injunctive relief, Motorola may at that time seek such relief."  *Id.*

20        (b)        <u>Courts Have Recently Found That Injunctive Relief Is Available For Infringement Of SEPs In Certain Circumstances</u>

21

22        In 2012, long after Motorola filed its lawsuits seeking injunctions in November 2010 and

23 July 2011, two courts held that it is appropriate in certain situations for SEP holders to seek

24 injunctions.  *Apple, Inc.*, 2012 WL 5416941; *Apple, Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901

25

26

Accounting § 24.  Third, it would be Motorola that could sue for a judicial accounting for past
infringement damages, not Microsoft.

MOTOROLA'S RULE 50(A) MOTION FOR JUDGMENT AS A
MATTER OF LAW - 12
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1   (N.D. Ill. 2012).[5]  These rulings confirm the objective good faith of a SEP holder in seeking

2   injunctions.

3         Apple sued Motorola in the Western District of Wisconsin and argued that Motorola

4   breached its obligations to the IEEE and ETSI by seeking an injunction against Apple products

5   infringing Motorola's SEPs.  Judge Crabb held that nowhere in Motorola's agreements with those

6   standard-setting organizations was there any prohibition on seeking injunctions based on SEPs.

7   Because patent holders generally have the right to seek injunctive relief in district courts under 35

8   U.S.C. § 283 and in the ITC under 19 U.S.C. § 1337(d), "any contract purportedly depriving a

9   patent owner of that right should clearly do so."  *Apple, Inc.*, 2012 WL 5416941, at *15.  Judge

10  Crabb found that the IEEE contract does not clearly deprive patent owners of the right to bring

11  injunctions, and therefore that "Motorola did not breach its contract simply by requesting an

12  injunction and exclusionary order in its patent infringement actions."  *Id.*[6]

13        In *Apple, Inc. v. Motorola, Inc.*, Judge Posner, sitting by designation, expressed skepticism

14  about the availability of injunctive relief for holders of SEPs.  However, he reserved the question

15  of whether such an injunction would be permitted in a case where the infringer is an unwilling

16  licensee. Judge Posner found that, because Motorola had committed to license its patent on

17  FRAND terms, he was not sure he would be justified in issuing an injunction "unless Apple

18  refuses to pay a royalty that meets the FRAND requirement."  *Apple, Inc.*, 869 F. Supp. 2d at 913-

19  14.[7]  This order had not issued when Motorola filed its lawsuits seeking injunctions.

20        Microsoft itself admitted in a letter to the FTC on June 14, 2011 that injunctive relief

21  should be available to SEP holders.  Ex. 2970.  Eight months after Motorola filed its patent

22  infringement action against Microsoft in the ITC seeking an exclusion order and just one month

23

24

---

25     [5]   The FTC consent decree that was finalized on July 23, 2013 also concludes that Motorola does not need to withdraw its pending actions seeking injunctions.  Dkt. 807-1, 807-2.

26     [6]   The final judgment is currently on appeal.
   [7]   The final judgment is currently on appeal.

MOTOROLA'S RULE 50(A) MOTION FOR JUDGMENT AS A
MATTER OF LAW - 13
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1    before Motorola filed its patent infringement actions against Microsoft in Germany seeking an

2    injunction, Microsoft wrote:

3           In addition, the existence of a RAND commitment to offer patent licenses should
            not preclude a patent holder from seeking preliminary injunctive relief or
4           commencing an action in the International Trade Commission just because the
            patent holder has made a licensing commitment to offer RAND-based licenses in
5           connection with a standard. Whether such relief is available should be assessed
            under the current legal framework in the applicable jurisdiction, which often is
6           premised substantially on the specific facts and circumstances at issue. Any
            uniform declaration that such relief would not be available if the patent holder has
7           made a commitment to offer a RAND license for its essential patent claims in
            connection with a standard may reduce any incentives that implementers might
8           have to engage in good faith negotiations with the patent holder.

9    Ex. 2970 at 13; *see also* Murphy, 8/30/13 Tr. at 83:17-25.   Indeed, Microsoft's in-house counsel

10   testified at this trial that injunctive relief should be available.  Heiner, 8/30/13 Tr. 180:3-9.

11                      (c)    Seeking An Injunction Cannot Evince "Hold Up" Because A Judge
                               Necessarily Must Decide Whether To Issue An Injunction
12

13           The uncontroverted evidence at trial is that Motorola itself does not have the power to

14   force Microsoft to stop selling any of its products.   Instead, a court must make a fact-specific

15   determination to decide whether an injunction is appropriate in the given situation.   According to

16   Mr. Gutierrez, in the ITC "it's actually quite normal that only a very small percentage of the

17   patents that are presented are ultimately found to have been violated."   Gutierrez, 8/29/13 Tr.

18   47:10-20.   Microsoft Corporate Vice President David Treadwell also admitted that Motorola

19   would have to get some sort of approval from a government entity or from a court in order to

20   prevent Motorola from selling Xboxes.  Treadwell, 8/27/13 Tr. 52:3-13.

21                      (d)    The Parties Did Not Reach a Breakdown In Negotiation Because
                               Microsoft Never Negotiated
22

23           Microsoft has not introduced any evidence that the parties were unable to reach an

24   agreement because negotiations broke down after some period of time.   On the contrary, the

25   undisputed testimony from both Mr. Dailey and Mr. Gutierrez is that Microsoft never responded

26   to Motorola's letters of October 21, 2010 (Ex. 1) and October 29, 2010 (Ex. 2) prior to filing the

     present lawsuit on November 9, 2010.  Dailey, 8/28/13 Tr. 31:16-20; Gutierrez, 8/29/13 Tr. 45:19-

MOTOROLA'S RULE 50(A) MOTION FOR JUDGMENT AS A
MATTER OF LAW - 14
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

23.  Dr. Murphy failed to do any analysis of whether the failure of the parties to reach an agreement would be consistent with a hold-up strategy.  Murphy, 8/30/13 Tr. 39:21-40:8.

### 3.   Microsoft Should Not Be Permitted To Now Plead A New Theory Of Breach Regarding Failure To Withdraw Injunctions

Microsoft has not pleaded that any actions after the filing of the injunctions in July 2011 constitute a breach.  Microsoft is not entitled to raise new breach theories during trial and these new theories must be dismissed.  Microsoft apparently claims that Motorola breached its RAND obligations by failing to withdraw its requests for injunctive relief.   Microsoft, however, did not plead this breach theory in its Complaint (Dkt. 1) or Amended Complaint (Dkt. 53 ("Motorola breached these contracts by *filing* the Motorola Patent Actions") (emphasis added), did not articulate it in its interrogatory response disclosing its breach theories ("Motorola improperly *sought* injunctive relief") (emphasis added), and did not articulate it in its portions of the Joint Pretrial Order (Dkt. 803 at 2 ("Whether Motorola breached its contractual obligations to the IEEE, ITU, and/or Microsoft by *filing* lawsuits and *seeking* injunctive relief . . .") (emphasis added)).  Similarly, Mr. Gutierrez testified that licensing offers made by Motorola after the October 21 and 29, 2010 letters violated RAND obligations.  But, again, Microsoft's breach claims regarding offers were limited to the offers in the October 21 and 29, 2010 letters and did not include other licensing offers.  *See* Dkt. 1, 53, 803.

### D.   No Reasonable Jury Could Find That Motorola Breached A Duty Of Good Faith Through Its Negotiations With Marvell

Microsoft has not provided evidence of any basis by which it can enforce Marvell's rights to a RAND license as a third-party beneficiary and thus lacks standing to sue for breach of contract based on Motorola's conduct toward Marvell.  Moreover, Microsoft has not shown that Motorola lacked good faith in Motorola's conduct in negotiating a license with Marvell.

### 1.   Microsoft Lacks Standing To Argue Based On Marvell's Rights

As a preliminary matter, Microsoft lacks standing to argue that Motorola's interactions with Marvell to negotiate a license tend to show anything about Motorola's conduct vis-à-vis

MOTOROLA'S RULE 50(A) MOTION FOR JUDGMENT AS A
MATTER OF LAW - 15
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Microsoft.  "The standing doctrine. . . requires that 'the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'"  *Johnson v. Microsoft Corp.*, 2008 WL 803124 (W.D. Wash. Mar. 21, 2008) (quoting *Valley Forge Christian College v. Americans United for the Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982)).  In *Johnson*, the court held that two individuals who were not parties to the contract, and lacked privity with any party, lacked standing to assert a claim of breach.  *Id.* at *3.  Microsoft adduced no evidence showing that it has any ability to enforce Marvell's right to a RAND license and thus Microsoft lacks standing to assert this breach theory.

### 2.  Microsoft Failed To Prove Motorola's Lack of Subjective Good Faith

The undisputed evidence at trial shows that, in July 2011, after this suit was filed, Marvell approached Motorola for a license to its 802.11 SEPs.  Ex. 1608.  Marvell explained to Motorola that it was seeking a license at the request of its customer, Microsoft.  Ochs, 8/28/13 Tr. 89:23-90:1, 91:1-2.  Motorola reassured Marvell that it was not asserting its 802.11 SEPs against Marvell and was not requiring Marvell to take a license.  *Id.* at 101:5-16.  Motorola had historically licensed its SEPs to end product manufacturers, rather than component manufacturers like Marvell.  *See* Ex. 16; 8/28/13 Tr. 101:17-20.  Nevertheless, Motorola responded to Marvell's license inquiries, but Marvell did not actively pursue a license.  *See* Ex. 16; Ochs, 8/28/13 Tr. 108:12-109:19.  After several months of silence from Marvell following the initial exchange of emails, Motorola requested that Marvell provide claim charts to a set of 802.11 patents Marvell proposed to cross-license on a royalty-free basis.  Ochs, 8/28/13 Tr. 108:12-109:19.  As of the November 2012 trial, Marvell had not provided Motorola the requested claim charts.  *Id.* at 110:17-111:23.  There is no evidence of any further response from Marvell.

Microsoft elicited no proof of Motorola's subjective bad faith in the Marvell negotiations; rather, as Ms. Ochs testified, defensive suspension provisions are typical among sophisticated parties.  *See* Ochs, 8/28/13 Tr. 99:1-14; *see also* Heiner 8/30/13 Tr. at 173:17-174:1.  Indeed, as

MOTOROLA'S RULE 50(A) MOTION FOR JUDGMENT AS A
MATTER OF LAW - 16
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Mr. Dailey testified, Microsoft was not the only party carved out from the proposed Marvell license, and was not being singled out by Motorola. Ex. 16; Dailey, 8/28/13 Tr. 46:9-11.

Although Marvell had never requested a license from Motorola in the seven years it had been using Motorola's patented technology, Marvell requested a license from Motorola at Microsoft's demand. Ex. 7242, Ex. 3162, Dailey, 8/28/13 Trial Tr. 10:20-11:1; 27:18-28:3; 30:9-12; Ochs, 8/28/13 Trial Tr. 89:23-90:3; 92:15-19. Motorola first told Marvell that it did not need a license, and then made its standard opening offer to Marvell. Ochs, 8/28/13 Trial Tr. 101:5-24.

### 3.    Microsoft Failed To Prove That Motorola Lacked Objective Good Faith

Microsoft has not elicited legally sufficient evidence to show that Motorola has acted in objective bad faith in its negotiations with Marvell. Motorola's response was to tell Marvell that it did not even need a license, Ochs, 8/28/13 Tr. 101:5-24, and that Motorola was not asserting its patents against Marvell, *id.* at 101:11-14, and, after making its opening offer, to negotiate toward a royalty-free cross license, *id.* 100:11-23.

#### (a)    Defensive Suspension Clauses Are Common In The Industry

The undisputevidence at trial shows that defensive suspension provisions are common, and that there was nothing unusual about the fact that the Motorola's proposed agreement with Marvell contained such a provision. Mr. Dailey testified that including defensive suspension provisions in license agreements "is a standard part of [Motorola]'s practice." Dailey, 8/27/13 Trial Tr. 144:18-145:12. Ms. Ochs of Marvell also confirmed that defensive suspension provisions are quite common in the industry. Ochs, 8/28/13 Tr. 99:1-100:3. Although Microsoft attempted to show that Motorola was inappropriately listed as a "repudiating party" in the draft agreement, the draft agreement itself (Ex. 16, Section 3.5) as well as Mr. Dailey's testimony confirm that the defensive suspension provision was specifically applied to Microsoft (as well as to Apple and Gemalto) because each of those companies had sued Motorola at the time Motorola drafted the agreement with Marvell. Dailey, 8/28/13 Tr. 57:23-59:16.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

No evidence indicates that Motorola was trying hold up either Marvell or Microsoft in negotiating with Marvell. *See, e.g.*, Ochs, 8/28/2013 Tr. 99:1-100:1 (noting that defensive suspension provisions are "the more current trend" in licensing agreements). Indeed, the evidence indicates the exact opposite, as the parties continue to negotiate toward a royalty-free cross-license. *Id.* at 100:11-23. No evidence could possibly indicate that a royalty-free cross-license would constitute hold-up value because no evidence exists showing whether Marvell has provided claim charts and, if so, what those claim charts show. *Id.* at 110:2-111:1; Ex. 3404. Thus, no evidence tends to show that Motorola's actions evince a lack of good faith.

(b)   <u>Motorola Treated Marvell Similarly To Others</u>

The evidence shows that Motorola made its standard offer of 2.25% to Marvell, just as it made that offer to companies such as HTC and RIM. Ex. 7242, Ex. 3162, Dailey, 8/28/13 Tr. 10:20-11:1; 27:18-28:3; 30:9-12; Ochs, 8/28/13 Tr. 92:15-19. Motorola then continued to negotiate, asking for claim charts and working towards a broader cross-license, but Marvell never responded. Ochs, 8/28/13 Tr. 110:4-112:3. Rather than showing bad faith on the part of Motorola, the fact that Motorola proceeded with this negotiation just as it would with any other licensor demonstrates that Motorola was acting in good faith during its negotiations with Marvell.

E.   <u>No Reasonable Jury Could Find That Microsoft Has Adduced Sufficient Proof Demonstrating That Motorola's Actions Combined Breached The Duty Of Good Faith And Fair Dealing</u>

Not only has Microsoft failed to elicit sufficient evidence demonstrating that Motorola's offer letters, seeking of injunctions, and negotiations with Marvell are each separate contract breaches of the implied duty of good faith and fair dealing, but Microsoft also has failed to elicit sufficient evidence demonstrating that Motorola's entire course of conduct constitutes a breach of the implied duty of good faith and fair dealing.

The objective evidence, far from providing sufficient evidence to show that Motorola failed to act in good faith, strongly tends to show that Motorola ***did*** act in good faith. No evidence has been elicited to show that Motorola lacked subjective good faith in sending the letters, seeking

MOTOROLA'S RULE 50(A) MOTION FOR JUDGMENT AS A MATTER OF LAW - 18
CASE NO. C10-1823-JLR

S<small>UMMIT</small> L<small>AW</small> G<small>ROUP</small> PLLC
315 F<small>IFTH</small> A<small>VENUE</small> S<small>OUTH</small>, S<small>UITE</small> 1000
S<small>EATTLE</small>, W<small>ASHINGTON</small> 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   injunctive relief, and negotiating with Marvell.  As to objective good faith, Motorola followed

2   industry custom and practice in offering its standard rate to Microsoft and Marvell, indicated its

3   willingness to negotiate with Microsoft and Marvell, and sought injunctive relief in accordance

4   with the reasonable expectations of the parties at the time the injunctive relief was filed.

5   **III.   THE RECORD IS INSUFFICIENT TO SUPPORT A FINDING THAT MOTOROLA CAUSED MICROSOFT ANY DAMAGES**

6

7        Microsoft has not produced any credible evidence tending to show that Motorola's actions

8   in sending the October 2010 letters or filing actions for injunctions caused any cognizable damage

9   to Microsoft.  Lacking any proximately caused damages, Microsoft lacks proof on an essential

10  element of its claim for breach.  This Court therefore should grant judgment as a matter of law in

11  favor of Motorola, not only as to damages, but also as to the entire breach claims.

12       A.    <u>Microsoft Has Failed To Prove Damages, Which Are An Essential Element Of Breach</u>

13

14       Microsoft's failure to adduce sufficient evidence from which a jury could conclude that

15  Motorola's actions caused Microsoft to incur damages means that Microsoft cannot prove an

16  essential element of its breach of contract claim.  Under Washington law, a "breach of contract is

17  actionable only if the contract imposes a duty, the duty is breached, and the breach proximately

18  causes damage to the claimant." *Nw. Ind. Forest v. Dept. of Labor & Industries*, 899 P.2d 6, 9

19  (Wash. 1995); *Muniz v. Microsoft Corp.*, 2010 WL 4482107, at *3 (W.D. Wash. Oct. 29, 2010)

20       Damages are an essential element of breach of contract and Microsoft has provided

21  insufficient proof that it may recover the damages it seeks or that Motorola's conduct proximately

22  caused such damages.  *See Microsoft Corp. v. Immersion Corp.*, 2008 WL 2998238, at *3 (W.D.

23  Wash. Aug. 1, 2008) ("It is well established that in any breach of contract claim, the aggrieved

24  party must prove damages.") (citing *Lehrer v. DSHS*, 5 P.3d 722 (Wash. 2000)).   It is not

25  permissible for Microsoft at this point to seek nominal damages.  Under Washington law,

26  Microsoft is not entitled to nominal damages if its claim, as here, is for damages only.  *See*

*Merrell v. Renier*, 2006 WL 3337368, at *5 (W.D. Wash. Nov. 16, 2006) (Robart, J.) (acknowledging "in a claim for 'damages suffered, mere proof that there was a breach of the contract, without more, did not warrant a verdict ... even for nominal damages'") (citing *Ketchum v. Albertson Bulb Gardens, Inc.*, 252 P. 523, 525 (Wash. 1927)); *Jacob's Meadow Owners Ass'n v. Plateau*, 139 Wash. App. 743, 754, 162 P.3d 1153, 1160 (2007) ("[I]n suits for damages only, such as that here, a court may dismiss a breach of contract action if damages have not been suffered."). Microsoft's original and amended complaints seek only damages and otherwise only declaratory and injunctive relief. Dkt. 1 at 22 (seeking "damages that Microsoft proves at trial" and otherwise declaratory requests for relief); Dkt. 52 at 24-25 (same). Accordingly, it would be improper for the Court to allow Microsoft to recover nominal damages in the event it is not able to prove damages. *See Dunkin' Donuts Inc. v. Dough Boy Mgmt., Inc.*, 2006 WL 20521, at *9 (D. N.J. Jan. 3, 2006) ("Defendants are precluded from resorting to nominal damages when, all throughout discovery, Defendants only alleged actual and consequential damages."). *Cf. Apple, Inc.*, 869 F. Supp. 2d at 909 (N.D. Ill. 2012) ("[Y]ou can't go into federal court and say you had a contract with X and X broke it and you're really annoyed even though you sustained no injury of any sort (in fact you made money because you re-contracted at a higher price) so please give me a judgment for $1 that I can pin on my wall."); *id.* ("Without an actual or prospective tangible injury, a federal court has no subject-matter jurisdiction."). Without sufficient evidence for the jury to find that Motorola proximately caused Microsoft damages, Microsoft cannot prove an essential element of its claim for breach of contract, and this Court should grant judgment as matter of law in favor of Motorola.

      B.    <u>Microsoft Cannot Recover Attorney Fees For Breach Of Contract</u>

          1.    <u>The American Rule Bars Microsoft's Recovery Of Attorney Fees As Damages</u>

"Washington courts traditionally follow the American rule in not awarding attorney fees as costs absent a contract, statute, or recognized equitable exception." *City of Seattle v. McCready*,

MOTOROLA'S RULE 50(A) MOTION FOR JUDGMENT AS A
MATTER OF LAW - 20
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

131 Wn. 2d 266, 273-74 (1997).  In fact, "a more accurate statement of Washington's American rule is attorney fees are not available as costs *or damages* absent a contract, statute, or recognized ground in equity." *Id.* at 275 (emphasis added).  Microsoft presented no evidence of a contractual or statutory basis for attorney fees and failed to provide sufficient evidence that it may recover attorney fees as damages on any equitable grounds.

2. <u>Microsoft May Not Recover Attorney Fees As An Equitable Remedy For Breach Of The RAND Commitment</u>

*First*, although Motorola recognizes this Court's prior ruling on Microsoft's ability to recover attorney fees under a newly created equitable exception, as a matter of law Microsoft may not recover attorney fees under any theory that RAND is a covenant not to sue.  As this Court previously held, seeking an injunction on an SEP may be permissible under certain circumstances.  Dkt. 843 at 17-18 ("Motorola's actions in this case in seeking injunctive relief cannot be viewed in a vacuum" and "there are certain circumstances under which a SEP owner rightfully seeks injunctive relief."); *see also Apple, Inc.*, 2012 WL 5416941, at *15 (holding that the RAND commitment did not deprive defendant of its right to seek injunctive relief); Dkt. 843 at 18 ("Whether seeking injunctive relief for a SEP frustrates the purpose of the contract is based on the specific circumstances of the case.").   Microsoft did not indicate to the Court that it was a willing licensee until at the earliest September 30, 2011, and continuing negotiations between the parties did not reflect Microsoft's willingness to negotiate for a license not set by the Court.  It is also undisputed that Motorola filed its requests for injunctive relief before September 2011.  Reading into the RAND commitment a covenant not to sue would have prevented Motorola from even asking a court for an injunction, even though such action in itself was not a breach of the contract or the covenant of good faith and fair dealing.  If injunctive relief is permissible under certain circumstances, than, *a fortiori*, the RAND commitment does not contain a covenant not sue for injunctive relief.

MOTOROLA'S RULE 50(A) MOTION FOR JUDGMENT AS A
MATTER OF LAW - 21
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1    *Second*, the plain language of the contract and any interpretation of the language based on

2    the intent of the parties or industry custom and practice demonstrates that no covenant not to sue

3    exists.  The language on which the entire litigation is predicated says only that Motorola will

4    "grant to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on

5    reasonable terms and conditions" licenses conditioned on reciprocity.  This language does not

6    unambiguously contain a covenant not to sue.  Moreover, Motorola's RAND commitments

7    unambiguously do not imply a license.  *See* Dkt. 673 at 19 ("IEEE-SA Standards Board Bylaws

8    state that "[n]o license is implied by the submission of a Letter of Assurance.").  If the RAND

9    commitment were a covenant not to sue for injunctive relief on SEPs, despite the lack of a license

10   for using patented technology, then no SEP holder could ever seek relief for infringement in the

11   ITC.  Moreover, industry practice indicates that the RAND commitment does not prevent a party

12   from seeking an injunction.  Various SEP holders have sought injunctions notwithstanding RAND

13   commitments, further demonstrating that SEP holders do not intend their RAND commitments to

14   deny them the ability to seek injunctive relief.

15   *Finally*, the equitable exception that a limited number of courts have applied to allow

16   recovery of attorney fees would not be recognized under Washington law.  As this Court

17   acknowledged, the Ninth Circuit specifically rejected expanding this exception under Oregon law,

18   predicting that the Oregon courts would not accept it.  Dkt. 843 at 29-30 (citing *Gruver v. Midas*

19   *Intern. Corp.*, 925 F.2d 280, 283-84 (9th Cir. 1991)).  Further, the *en banc* Colorado Supreme

20   Court, "after reviewing [this] issue in depth," Dkt. 843 at 29, concluded that "*most jurisdictions*

21   have applied the American rule *barring* the award of attorney fees and costs to cases involving a

22   breach of a [covenant not to sue]."  *Bunnett v. Smallwood*, 793 P.2d 157, 161 (Colo. 1990)

23   (emphasis added).  To date, Washington courts, which construe exceptions to the American rule

24   narrowly, have not adopted such an exception.  Dkt. 843 at 27.  Microsoft has not introduced

25   evidence overcoming these legal obstacles to its claim for attorney fees as damages.

26

MOTOROLA'S RULE 50(A) MOTION FOR JUDGMENT AS A
MATTER OF LAW - 22
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

C.    No Reasonable Jury Could Find That Motorola's Actions Caused Microsoft's Asserted Damages

Microsoft is required as part of its breach of contract claim to prove that Motorola's breach proximately caused damages.  *N. W. Indep. Forest Mfrs.*, 78 Wash. App. at 712 (duty, breach, causation, and damages required to sustain a breach of contract claim); *see also Akins v. Williams Commn's, Inc.*, 2003 WL 1521999, at *3 (Wash. App. Div. 2. Mar. 25, 2003) ("A breach of contract is actionable if the contract imposes a duty, the duty is breached, and the breach is a proximate cause of damage to the claimant").  Proximate cause requires "an unbroken sequence . . . [that produces] the result for which recovery is sought." *Bowers v. Farmers Ins. Exchange*, 99 Wash. App. 41, 48 (2000) (quoting *Graham v. Public Employees Mut. Ins. Co.*, 98 Wash. 2d 533, 538 (1983)).  Microsoft has failed to adduce sufficient evidence of causation.

1.    Microsof Failed To Prove That Motorola's Actions Caused Microsoft To Incur The Costs of Moving Its German Facility

Microsoft has failed to present sufficient evidence that Motorola's actions seeking an injunction in Germany for infringement of a German patent *caused* it to move its European distribution facility from Germany to the Netherlands.  Microsoft's testimony and documents belie that contention.  Instead the evidence suggests that Microsoft used the German litigation as a pretext to "significantly scale [their] distribution footprint and capabilities" for its operation in Europe, Middle East, and Africa, by moving to a larger, fully-dedicated facility.  Ex. 7136; Davidson, 8/29/13 Tr. 95:10-20.  Furthermore, Microsoft's witness acknowledged that Microsoft was having cost issues with their vendor in Germany, Davidson, 8/29/13 Tr. 87:23-88:5, that it delayed even discussing the need to relocate for several months (thereby adding to the costs of the transition), *id.* at 84:3-10, 85:8-17, and that Germany was a particularly risky place to locate a global logistics center, *id.* at 87:2-18.

MOTOROLA'S RULE 50(A) MOTION FOR JUDGMENT AS A
MATTER OF LAW - 23
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

2.    Microsoft Failed To Prove That Motorola's Actions Caused Microsoft's Attorney Fee Damages

Microsoft has also failed to show that Motorola's actions caused Microsoft's alleged attorney fees damages, even assuming that such damages are legally permissible (which they are not). Microsoft filed suit against Motorola first, both in the ITC and in this Court, on October 1, 2010. Ex. 7119; Gutierrez, 8/28/13 Tr. 193:24-194:2; 196:4-197:4; Dailey, 8/27/13 Tr. 176:15-20; 178:25-179:8. Mr. Gutierrez testified that countersuits are expected when a company files a patent infringement suit. Gutierrez, 8/28/13 Trial Tr. 211:23-212:2. The evidence, then, suggests that is was Microsoft's precipitating actions, not Motorola's actions, that caused Microsoft to incur attorney fees.

D.    Microsoft Has Presented No Evidence That Motorola Solutions Is Liable For Damages Allegedly Caused By The German Action

The parties agreed in a joint submission to the Court on May 4, 2012, that only General Instrument Corp. was involved in the German action. *See* Dkt. 408. The German patents essential to the H.264 standard were assigned to General Instrument Corp. and thus it was only General Instrument Corp. that brought the German action. Microsoft thus has not introduced any evidence that Motorola Solutions can be held liable for damages stemming from the move of the German facility or attorney fees stemming from that action. This Court should grant judgment as a matter of law as to Motorola Solutions for any damages stemming from the German action.

**CONCLUSION**

For the foregoing reasons, pursuant to Fed. R. Civ. P. 50(a)(1), Motorola is entitled to judgment as a matter of law on Microsoft's breach of contract claims.

MOTOROLA'S RULE 50(A) MOTION FOR JUDGMENT AS A
MATTER OF LAW - 24
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1    DATED this 4th day of September, 2013.

2

3                                          Respectfully submitted,

4    SUMMIT LAW GROUP PLLC

5    By */s/ Ralph H. Palumbo*
     By */s/ Philip S. McCune*

6        Ralph H. Palumbo, WSBA #04751
         Philip S. McCune, WSBA #21081

7        *ralphp@summitlaw.com*
         *philm@summitlaw.com*

8

9    By */s/ Thomas V.  Miller*
         Thomas V. Miller

10       MOTOROLA MOBILITY LLC
         600 North U.S. Highway 45

11       Libertyville, IL  60048-1286
         (847) 523-2162

12

13   QUINN EMANUEL URQUHART &
     SULLIVAN, LLP

14

15   By */s/ Kathleen M. Sullivan*
         Kathleen M. Sullivan, NY #1804624

16       51 Madison Ave., 22nd Floor
         New York, NY 10010

17       (212) 849-7000
         *kathleensullivan@quinnemanuel.com*

18

19   By */s/ Brian C. Cannon*
         Brian C. Cannon, CA #193071

20       555 Twin Dolphin Drive, 5th Floor
         Redwood Shores, CA 94065

21       (650) 801-5000
         *briancannon@quinnemanuel.com*

22

23

24

25

26

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

By <u>*/s/ William C. Price*</u>

William C. Price, CA #108542
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
*williamprice@quinnemanuel.com*

**Attorneys for Motorola Solutions, Inc., Motorola Mobility LLC and General Instrument Corp.**

MOTOROLA'S RULE 50(A) MOTION FOR JUDGMENT AS A
MATTER OF LAW - 26
CASE NO. C10-1823-JLR