The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION, a Washington corporation,

                Plaintiff,

       v.

MOTOROLA, INC., and MOTOROLA MOBILITY LLC, and GENERAL INSTRUMENT CORPORATION,

              Defendants.

---

MOTOROLA MOBILITY LLC, and GENERAL INSTRUMENT CORPORATION,

         Plaintiffs/Counterclaim Defendant,

       v.

MICROSOFT CORPORATION,

          Defendant/Counterclaim Plaintiff.

CASE NO. C10-1823-JLR

MOTOROLA'S RENEWED RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW

MOTOROLA'S RENEWED RULE 50(A) MOTION FOR JUDGMENT AS A MATTER OF LAW
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1

## **TABLE OF CONTENTS**

2

**Page**

3

4

INTRODUCTION ...................................................................................................1

5

ARGUMENT ..........................................................................................................1

6

I.  STANDARD FOR JUDGMENT AS A MATTER OF LAW ...........................1

7

II.  THE RECORD IS INSUFFICIENT TO SUPPORT A FINDING THAT
MOTOROLA BREACHED ITS DUTY OF GOOD FAITH..............................2

8

A.  The Standard For Evaluating Good Faith And Fair Dealing ..................2

9

B.  No Reasonable Jury Could Conclude That Motorola Breached The Implied
Covenant Of Good Faith And Fair Dealing By Sending The October 2010
Letters ....................................................................................................3

10

11

1.  Microsoft Failed To Prove Motorola's Lack Of Subjective Good
Faith ..............................................................................................4

12

13

2.  Microsoft Failed To Prove Motorola's Lack Of Objective Good
Faith ..............................................................................................6

14

15

(a)  Industry Custom And Practice Is To Negotiate ...................7

16

(b)  The Evidence Fails To Show That Motorola Frustrated The
Purpose Of The Contracts By Seeking To "Hold Up"
Microsoft..............................................................................8

17

18

(c)  The Evidence Fails To Show That Motorola Failed To Act In
Accord With The Expectations Of The Parties To The
Contracts ..............................................................................9

19

20

C.  No Reasonable Jury Could Conclude That Motorola Breached The Implied
Covenant of Good Faith and Fair Dealing By Seeking Injunctive Relief ................9

21

22

1.  Microsoft Failed To Prove Motorola's Lack Of Subjective Bad Faith .......10

23

(a)  ITU And IEEE Commitments Do Not Waive Injunctive
Relief..................................................................................10

24

(b)  Motorola Responded To Microsoft First Suing Motorola ..............10

25

(c)  Microsoft Was Not A Willing Licensee Before Motorola
Filed For Injunctive Relief................................................11

26

MOTOROLA'S   RENEWED   RULE   50(A)   MOTION   FOR
JUDGMENT AS A MATTER OF LAW -
CASE NO. C10-1823-JLR

i

Summit Law Group PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

2.   Microsoft Failed To Prove Motorola's Lack Of Objective Good
Faith ....................................................................................... 12

(a)   The Availability Of Injunctive Relief For Infringement Of
SEPs Was An Open Issue When Motorola Filed For
Injunctions ............................................................. 12

(b)   Courts Have Recently Found That Injunctive Relief Is
Available For Infringement Of SEPs In Certain
Circumstances ......................................................... 13

(c)   Seeking An Injunction Cannot Evince "Hold Up" Because A
Judge Necessarily Must Decide Whether To Issue An
Injunction ............................................................... 14

(d)   The Parties Did Not Reach a Breakdown In Negotiation
Because Microsoft Never Negotiated ........................ 14

3.   Microsoft Should Not Be Permitted To Now Plead A New Theory
Of Breach Regarding Failure To Withdraw Injunctions ............. 15

D.   No Reasonable Jury Could Find That Motorola Breached A Duty Of Good
Faith Through Its Negotiations With Marvell .................................. 15

1.   Microsoft Lacks Standing To Argue Based On Marvell ............. 15

2.   Microsoft Failed To Prove Motorola's Lack of Subjective Good
Faith ....................................................................................... 16

3.   Microsoft Failed To Prove Motorola's Lack Of Objective Good
Faith ....................................................................................... 17

(a)   Defensive Suspension Clauses Are Common In The Industry ........ 17

(b)   Motorola Treated Marvell Similarly To Others ......................... 18

E.   No Reasonable Jury Could Find That Motorola's Actions Combined
Breached The Implied Duty Of Good Faith And Fair Dealing .............. 18

III.   THE RECORD IS INSUFFICIENT TO SUPPORT A FINDING THAT
MOTOROLA CAUSED MICROSOFT ANY DAMAGES .................................. 18

A.   Microsoft Has Failed To Prove Damages, Which Are An Essential Element
Of Breach ................................................................................... 19

B.   Microsoft Cannot Recover Attorney Fees For Breach Of Contract ............. 20

MOTOROLA'S   RENEWED   RULE   50(A)   MOTION   FOR   ii
JUDGMENT AS A MATTER OF LAW -
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

1.      The American Rule Bars Microsoft's Recovery Of Attorney Fees As
Damages ................................................................................................ 20

2.      Microsoft May Not Recover Attorney Fees As An Equitable
Remedy For Breach Of The RAND Commitment ................................. 20

C.     No Reasonable Jury Could Find That Motorola's Actions Caused
Microsoft's Asserted Damages .................................................................... 22

1.      Microsoft Failed To ProveThat Motorola's Actions Caused
Microsoft To Incur The Costs of Moving Its German Facility ................. 22

2.      No Reasonable Jury Could Find That Motorola's Actions Caused
Microsoft's Attorney Fees Damages .......................................... 23

D.     Microsoft Failed To Mitigate Its Damages ................................................. 24

E.     Microsoft Has Presented No Evidence That Motorola Solutions Is Liable
For Damages Allegedly Caused By The German Action ............................. 24

CONCLUSION ........................................................................................................ 24

CERTIFICATE OF SERVICE ................................................................................ 27

MOTOROLA'S   RENEWED   RULE   50(A)   MOTION   FOR        iii
JUDGMENT AS A MATTER OF LAW -
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Akins v. Williams Commn's, Inc.,*
  2003 WL 1521999 (Wash. App. Div. 2. Mar. 25, 2003) .......................................22

*Alliance Atlantis Releasing Ltd. v. Bob Yari Prods.,*
  2010 WL 1525687 (C.D. Cal. Apr. 12, 2010) ...........................................................2

*Apple, Inc. v. Motorola, Inc.,*
  869 F. Supp. 2d 901 (N.D. Ill. 2012) ...........................................................13, 19

*Apple, Inc. v. Motorola Mobility, Inc.,*
  2012 WL 5416941 (W.D. Wisc. Oct. 29, 2012) ...........................................10, 13, 20

*BBS Technologies, Inc. v. Remington Arms Co., Inc.,*
  2005 WL 3132307 (E.D. Ky. Nov. 22, 2005)...........................................................3

*Badgett v. Sec. State Bank,*
  16 Wn. 2d 563 (1991) ...........................................................................................10

*Bowers v. Farmers Ins. Exchange,*
  99 Wash. App. 41 (2000) ......................................................................................22

*Bunnett v. Smallwood,*
  793 P.2d 157 (Colo. 1990) ...................................................................................21

*City of Seattle v. McCready,*
  131 Wn. 2d 266 (1997) .........................................................................................20

*Dunkin' Donuts Inc. v. Dough Boy Mgmt., Inc.,*
  2006 WL 20521 (D. N.J. Jan. 3, 2006) .................................................................19

*Gruver v. Midas Int'l Corp.,*
  925 F.2d 280 (9th Cir. 1991) ................................................................................21

*Jaeger v. Cleaver Const., Inc.,*
  148 Wash. App. 698, 201 P.3d 1028 (2009)...........................................................24

*Johnson v. Microsoft Corp.,*
  2008 WL 803124 (W.D. Wash. Mar. 21, 2008) .....................................................15

*Ketchum v. Albertson Bulb Gardens, Inc.,*
  252 P. 523 (Wash. 1927).......................................................................................19

*Lakeside-Scott v. Multnomah Cty.,*
  556 F.3d 797 (9th Cir. 2009) ..................................................................................2

MOTOROLA'S   RENEWED   RULE   50(A)   MOTION   FOR
JUDGMENT AS A MATTER OF LAW -
CASE NO. C10-1823-JLR

iv

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

*Merrell v. Renier*,
   2006 WL 3337368 (W.D. Wash. Nov. 16, 2006) ................................................ 19

*Metro. Edison Co. v. NLRB*,
   460 U.S. 693 (1983) ............................................................................................ 10

*Microsoft Corp. v. Immersion Corp.*,
   2008 WL 2998238 (W.D. Wash. Aug. 1, 2008) ................................................ 19

*Muniz v. Microsoft Corp.*,
   2010 WL 4482107 (W.D. Wash. Oct. 29, 2010) ................................................ 19

*Nw. Ind. Forest v. Dept. of Labor & Industries*,
   899 P.2d 6 (Wash. 1995) ............................................................................. 19, 22

*Realtek Semiconductor Corp. v. LSI Corp.*,
   2012 WL 4845628 (N.D. Cal. Oct. 12, 2012) .................................................... 3

*Ringler v. Bishop White Marshall & Weibel*, PS,
   2013 WL 1816265 (W.D. Wash. Apr. 29, 2013) ............................................... 10

*Walker v. Transam. Title Ins. Co., Inc.*,
   65 Wash. App. 399, 828 P.2d 621 (1992) ......................................................... 24

*Warner Theatre Associates Ltd. P'hip v. Metro. Life Ins. Co.*,
   1997 WL 685334 (S.D.N.Y. Nov. 4, 1997), *aff'd*, 149 F.3d 134 (2d Cir. 1998) ...................... 3

## **Statutes/Rules**

19 U.S.C. § 283 ................................................................................................ 12

35 U.S.C. §1337(d) ........................................................................................... 12

Fed. R. Civ. P. 50(a)(1) .................................................................................. 1, 2

MOTOROLA'S   RENEWED   RULE   50(A)   MOTION   FOR      v
JUDGMENT AS A MATTER OF LAW -
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

**<u>INTRODUCTION</u>**

Defendants Motorola Mobility, LLC ("MMI"), Motorola Solutions, Inc. ("Motorola Solutions") and General Instrument Corp. ("GIC") (collectively, "Motorola") respectfully file this memorandum in support of their renewed motion for judgment as a matter of law (JMOL) under Federal Rule of Civil Procedure 50(a)(1).  No reasonable jury could find at the close of all evidence that Motorola breached the implied covenant of good faith and fair dealing in either of the alleged agreements.  Microsoft has failed to present evidence indicating that Motorola did not act in good faith in sending the October 2010 letters, in seeking injunctive relief, or in negotiating a license with Marvell; Microsoft similarly has failed to present evidence that any combination of these acts constitutes a breach of the implied covenant of good faith.

This Court has found that Motorola's Letters of Assurance to the Institute of Electrical Electronics Engineers ("IEEE") and Motorola's declarations to the International Telecommunication Union ("ITU") create enforceable contracts between Motorola and the respective standard setting organization to license its essential patents on RAND terms and that Microsoft was a third-party beneficiary to those agreements and has a right to a RAND license for Motorola's standard essential patents.  Dkt. 465 at 8-9.[1]  The Court has found that Motorola's initial offers to license its SEPs must be made in good faith, Dkt. 335 at 25, but has also held that initial offers do not have to be on RAND terms, Dkt. 465 at 9.

**<u>ARGUMENT</u>**

**I.  STANDARD FOR JUDGMENT AS A MATTER OF LAW**

Federal Rule of Civil Procedure 50(a)(1) provides that, where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a

---

[1]  Motorola reserves the right to challenge each of these findings on appeal.  Nonetheless, Motorola assumes that these findings apply for purposes of this motion.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

1    claim or defense that, under the controlling law, can be maintained or defeated only with a

2    favorable finding on that issue." Fed. R. Civ. P. 50(a)(1).  Judgment as a matter of law is required

3    where a party fails to present a legally sufficient basis for a reasonable jury to rule in its favor.

4    *Lakeside-Scott v. Multnomah Cty.*, 556 F.3d 797, 802 (9th Cir. 2009).

5    **II.   THE RECORD IS INSUFFICIENT TO SUPPORT A FINDING THAT**

6    **MOTOROLA BREACHED ITS DUTY OF GOOD FAITH**

7             No reasonable jury could conclude that Motorola did not act in good faith in sending the

8    October 2010 letters, in seeking injunctive relief, or in negotiating a license with Marvell, or any

9    combination of thereof.  This Court therefore should grant judgment as a matter of law because

10   Microsoft has failed to prove that Motorola breached the duty of good faith and fair dealing.

11             A.       The Standard For Evaluating Good Faith And Fair Dealing

12            Good faith is a determination for the fact finder in light of the context and circumstances,

13   and turns on various subjective and objective factors. This Court has instructed that those factors

14   include:   whether the defendant's actions (1) were contrary to the reasonable and justified

15   expectations of other parties; (2)  would frustrate the purpose of the contract; (3) was

16   commercially reasonable; (4) conformed with ordinary custom or practice in the industry; (5)

17   exercised reasonably any discretion the contract gives it, as well as (6) subjective factors such as

18   the defendant's intent and motive.  Dkt. 843 at 12.[2]

19            Contrary to Microsoft's assertions, no case of which Motorola is aware in Washington or

20   any other jurisdiction has ever held a single opening offer letter or a rate at a certain above point

21   any ultimate contract rate breaches the covenant of good faith and fair dealing.  To the contrary,

22   various cases find that the size of the offer alone is not dispositive of the reasonableness of the

23   offer or of whether the offeror has breached a duty of good faith.  *See Alliance Atlantis Releasing*

24   *Ltd. v. Bob Yari Prods.*, 2010 WL 1525687, at *12 (C.D. Cal. Apr. 12, 2010) (stating that "[a] low

25   _____

26   [2]    Motorola discusses the first five factors together below under the collective category of
     objective good faith. Motorola preserves its exceptions to the Court's instructions on these factors.

MOTOROLA'S RENEWED RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW - 2
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

offer still qualifies as a good faith offer" and noting that, in a commercial transaction, "both sides presumably try to get the best deal"); *Warner Theatre Associates Ltd. P'ship v. Metro. Life Ins. Co.*, 1997 WL 685334, at *6 (S.D.N.Y. Nov. 4, 1997) (Sotomayor, D.J.) ("Nothing in the duty of good faith requires that parties to a negotiation propose only such terms as the other party is happy with."), *aff'd*, 149 F.3d 134 (2d Cir. 1998); *BBS Technologies, Inc. v. Remington Arms Co., Inc.*, 2005 WL 3132307, at *4 (E.D. Ky. Nov. 22, 2005) (rejecting claim that "there was no good faith effort to resolve the parties' disputes through negotiation," reasoning that "back and forth, low ball high ball negotiations … are nothing unusual" and emphasizing that "just because one side views another side's settlement offer as unreasonable does not mean that the offer was made in bad faith"); *Realtek Semiconductor Corp. v. LSI Corp.*, 2012 WL 4845628, at *4 (N.D. Cal. Oct. 12, 2012) (applying this Court's reasoning in denying motion to dismiss a claim alleging breach of good faith in a RAND contract, but emphasizing that "the royalty rate as compared to selling price" was merely "*one relevant factor*" and that reasonableness turns on "the *entirety of the terms and circumstances*") (emphasis added); *see also* Dkt. 716 at 11-12, 13-14.  Accordingly, the breach of the duty of good faith and fair dealing cannot be based exclusively on the amount of Motorola's opening offers and/or the difference between Motorola's offers and the RAND rate and ranges determined by this Court.

B.     No Reasonable Jury Could Conclude That Motorola Breached The Implied Covenant Of Good Faith And Fair Dealing By Sending The October 2010 Letters

As this Court previously has held, an opening offer from an SEP holder does not need to be on RAND terms.  Dkt. 335 at 24-25.  The evidence elicited at trial shows that Motorola made its standard opening offer to Microsoft as part of a negotiation.  Dailey, 8/27/13 Tr. 192:11-193:3, 197:9-20; Blasius, 8/29/13 Tr. 107:10-20.  Motorola specifically indicated that it was open to licensing only part of its portfolio (Ex. 1 at 1; Ex. 2 at 1; Dailey, 8/27/13 Tr. 126:20-127:14; 194:6-18) and Microsoft itself has included a 20-day limit in its offer letters.  Dailey, 8/27/13 Tr.

MOTOROLA'S RENEWED RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW - 3
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    195:10-199:9.   Microsoft has not put forth sufficient evidence from which a reasonable jury could

2    find that Motorola breached the duty of good faith and fair dealing.

3            1.    <u>Microsoft Failed To Prove Motorola's Lack Of Subjective Good Faith</u>

4            Microsoft presented no evidence tending to show that Motorola lacked good faith

5    subjective intent with respect to the opening offer letters. The undisputed testimony at trial showed

6    that Kirk Dailey, who sent the letters on behalf of Motorola, did so with the expectation that it was

7    an initial offer and that Motorola would negotiate with Microsoft to learn more information about

8    Microsoft's business, products, and use of the patents in order to reach a final agreement.  Dailey,

9    8/27/13 Tr. 185:5-15, 186:1-5, 186:8-16, 187:6-23, 190:9-191:24, 193:19-194:18; Taylor, 9/3/13

10   Tr. 77:15-23, 80:21-81:8, 81:20-82:16.   Motorola's goal was to negotiate to reach patent peace.

11   Dailey, 8/27/13 Tr. 186:18-189:24.

12           *First*, Motorola made its standard opening offer of 2.25%.  Dailey, 8/27/13 Tr. 192:11-

13   193:3, 197:9-20.  Motorola made this opening offer based on its long history of starting with such

14   an offer for licensing its cellular portfolio.  Blasius, 8/29/13 Tr. 107:10-20; Taylor, 9/3/13 Tr.

15   77:24-78:11.  Although Microsoft introduced evidence regarding the InteCap study, no evidence

16   tends to show that Mr. Dailey or anyone who worked with him in the brief period of time he had

17   to prepare to send the letters was aware of the existence of the InteCap study when the letters were

18   sent.  Dailey, 8/27/13 Tr. 112:18-22.  That study was seven years old at the time (Dailey, 8/27/13

19   Tr. 113:4-8), and could not have involved all of the patents relating to the current 802.11 standard,

20   as the standard is continually changing.  Ochs, 8/28/13 Tr. 88:24-89:2.  Microsoft has introduced

21   no evidence about the types of patents in the study or the study's relevance to Motorola's offers.

22   The annex of patents attached to Motorola's October 21 letter shows that many of the patents

23   Motorola was offering to license in 2010 had not been filed and/or issued in 2003.  Ex. 1.  Horacio

24   Gutierrez, Microsoft's head of licensing, also admitted that royalty stacking is not a factor that

25   Motorola could have considered easily prior to sending the letters, because in many cases

26   companies declare patents to be essential that are not really essential.  Gutierrez, 8/29/13 Tr.

MOTOROLA'S   RENEWED   RULE   50(A)   MOTION   FOR
JUDGMENT AS A MATTER OF LAW - 4
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

17:13-24. It is undisputed that, when Motorola made its 2.25% opening offers, Motorola did not have the information that the Court considered after a five-day hearing and extensive discovery. Leonard, 9/3/13 Tr. 139:7-13; 138:16-139:6; 155:10-13.

*Second*, the evidence shows that Motorola expected Microsoft to respond.  Dailey, 8/27/13 Tr. 117:19-24, 200:20-201:6.  The undisputed evidence is that parties usually negotiate in such cases, Dailey, 8/28/13 Tr. 57:12-17; Ochs, 8/28/13 Tr. 97:10-12; Gutierrez, 8/28/13 120:12-16, 183:10-19; Heiner, 8/30/13 Tr. 170:13-18; Taylor, 9/3/13 Tr. 81:20-82:16, and that the RAND commitment contemplates that the parties will negotiate, *see, e.g.*, Holleman, 9/3/13 Tr. 88:5-12, 90:22-24, 93:19-21.   Mr. Gutierrez, who was involved in wide-ranging business discussions between Microsoft and Motorola, testified that he rejects opening offers more than 99% of the time.  Gutierrez, 8/29/13 Tr. 30:15-18, 33:13-20.   Although Mr. Gutierrez testified that this negotiation was not typical, he conceded it was atypical not because Motorola lacked any good-faith motive in sending the letters, but because Microsoft wanted to vindicate a "broader principle."  Gutierrez, 8/28/13 Tr. 149:10-150:5. Motorola could not have anticipated Microsoft's failure to respond before filing suit; even Microsoft's expert admitted that "the logical thing to do would be to make clear that you are going to court."  Murphy, 8/30/13 Tr. 54:24-55:9.

*Third*, the undisputed evidence at trial shows that Motorola had to act quickly under litigation pressure from Microsoft. Microsoft's October 1, 2010 lawsuits were a "surprise attack" that Motorola did not anticipate.  Taylor, 9/3/13 Tr. 75:16-19.   At the time Motorola sent the letters, only Microsoft had initiated litigation between the two parties.  Dailey, 8/27/13 Tr. 177:3-19.  Motorola simply made an offer to start negotiations.  Dailey, 8/27/13 Tr. 152:1-11, 205:2-17; Taylor, 9/3/13 Tr. 79:19-80:14; Leonard, 9/3/13 Tr. 103:25-104:10; 157:5-13.   Mr. Gutierrez confirmed that it takes time to review patents. Gutierrez, 8/29/13 Tr. 18:4-12.  Motorola put its SEPs on the table at their standard rate as an efficient way to respond to Microsoft's demands under the time pressure Microsoft had imposed by filing its lawsuits. Dailey, 8/27/13 Tr. 184:15-

MOTOROLA'S RENEWED RULE 50(A) MOTION FOR JUDGMENT AS A MATTER OF LAW - 5
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

1   185:1; Taylor, 9/3/13 Tr. 81:1-19 (testifying that Motorola had 24,000 nonessential patents to

2   evaluate).

3          Microsoft's evidence fails to negate this evidence.  Microsoft's own expert, Dr. Murphy,

4   admitted that he was not opining on Motorola's subjective intent and does not impute any

5   nefarious intent or motive to Motorola.  Murphy, 8/30/13 Tr. 28:4-15, 28:16-22.

6                  2.     Microsoft Failed To Prove Motorola's Lack Of Objective Good Faith

7          The evidence shows that prior to 2007 Motorola and Microsoft peacefully co-existed and

8   collaborated to develop smartphones that used Microsoft's Windows mobile operating system.

9   Dailey, 8/27/13 Tr. 157:18-158:1, 167:4-6.  When Motorola's license to Microsoft's ActiveSync

10  patents expired in 2007, the parties engaged in negotiations for a new license up through 2010.

11  Dailey, 8/27/13 Tr. 158:1-159:17, 161:6-162:22.  During those negotiations, Motorola advised

12  Microsoft that it had patents that read on Microsoft's products.  Dailey, 8/27/13 Tr. 162:3-22.

13         On October 1, 2010, without prior notice, Microsoft sued Motorola in the International

14  Trade Commission, alleging patent infringement by Motorola's smartphones.  Gutierrez, 8/28/13

15  Tr. 196:4-197:4; Dailey, 8/27/13 Tr. 176:15-20, 178:25-179:8; Taylor, 9/3/13 Tr. 75:16-18.

16  Microsoft sought to bar Motorola from importing its smartphones into the United States.  Dailey,

17  8/27/13 Tr. 176:15-20, 177:7-19.  Microsoft also filed a patent infringement action against

18  Motorola in this Court.  Ex. 7119.  In the district court case, Microsoft sought, among other things,

19  injunctive relief.  *Id*. at 8.  In these two actions, Microsoft brought claims against Motorola on its

20  ActiveSync patents against Motorola, as well as additional patents that had never before been the

21  subject of prior negotiations between the parties.  Dailey, 8/27/13 Tr. 177:7-22; Gutierrez 8/28/13

22  Tr. 193:10-19.

23         After Microsoft filed its lawsuits against Motorola, *see, e.g.*, Ex. 7119, Microsoft told

24  Motorola that Microsoft was interested in finding a resolution of the parties' dispute that would

25  cover both parties' intellectual property, and that it was interested in discussing a cross-license

26  agreement.   Dailey, 8/27/13 Tr. 179:9-180:1; Gutierrez, 8/28/2013 Tr. 140:21-141:9.  Microsoft

MOTOROLA'S RENEWED RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW - 6
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

invited Motorola to present its patents for discussion.  Dailey, 8/27/2013 Tr. 179:9-21; Gutierrez, 8/28/13 Tr. 141:10-14; Taylor, 9/3/13 Tr. 75:10-76:12.  The parties also scheduled a meeting for October 22, 2010 to discuss a broad patent cross-license.  Dailey, 8/27/2013 Tr. 146:18-147:4, 175:14-19; Gutierrez, 8/28/13 Tr. 142:15-16.

On October 21, 2010, in advance of the parties' scheduled meeting, Motorola sent Microsoft a letter offering to grant Microsoft a worldwide license to Motorola's portfolio of patents and patent applications relating to the IEEE 802.11 standards.  Ex. 1.  On October 29, 2010, Motorola sent Microsoft a second letter, which offered to grant Microsoft a worldwide license to Motorola's portfolio of patents and patent applications relating to the ITU-T Recommendation H.264.  Ex. 2.  It is undisputed that Microsoft did not respond to Motorola's October 21 and 29, 2010 offer letters.  Gutierrez, 8/28/2013 Tr. 148:2-4.  Rather, upon receipt, Mr. Gutierrez forwarded each of the letters to Microsoft's in-house litigation team.  Gutierrez, 8/28/2013 Tr. 142:19-22.  On November 9, 2010, without ever responding, Microsoft filed the complaint in this action.  Dkt. 1.

(a)    <u>Industry Custom And Practice Is To Negotiate</u>

The undisputed evidence is that Motorola acted in conformity with industry custom and practice by seeking to start negotiations.  Both Motorola witness Mr. Dailey and Microsoft witness Mr. Gutierrez testified that the industry practice for patent licensing, including for SEPs, is to negotiate.  Dailey, 8/27/13 Tr. 185:5-15, 186:1-5, 186:8-16, 187:6-23, 190:9-191:24, 193:19-194:18; Gutierrez, 8/28/13 Tr. 97:10-12, 183:10-19, 185:1-8, 189:8-14; 8/29/13 Tr. 21:15-22.  Mr. Dailey testified that the royalty rate, or price term, in a license agreement is only one of many terms in the agreement that the parties negotiate.  Dailey, 8/27/13 186:1-16.  Other terms include the duration of the license, covered products, a potential royalty cap, and defensive suspension provisions.  Dailey, 8/27/13 Tr. 151:2-25.  All of these potential terms are typically negotiated and are used to determine the value of the agreement and the royalty rate that should be agreed upon.

MOTOROLA'S RENEWED RULE 50(A) MOTION FOR JUDGMENT AS A MATTER OF LAW - 7
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   The evidence shows that Motorola's actions were consistent with industry custom and practice and

2   thus do not provide any evidence tending to show that Motorola did not act in good faith.

3        Microsoft failed to show that Motorola departed from industry custom and practice.  Its

4   expert, Dr. Murphy, opined that the opening offer letters were consistent with a strategy of hold

5   up, but he had not examined the industry custom and practice, Murphy, 8/30/2013 Tr. 27:18-21,

6   27:22-28:3, or considered the full range of circumstances, Murphy, 8/30/2013 Tr. 64:23-66:4.

7                         (b)        The Evidence Fails To Show That Motorola Frustrated The Purpose
                                     Of The Contracts By Seeking To "Hold Up" Microsoft

8

9        Microsoft further adduced no real-world evidence tending to show that Motorola acted in a

10  way to hold up Microsoft.  Microsoft's expert, Dr. Murphy, applied only a theoretical approach to

11  examine whether Motorola engaged in hold up, but did not examine the real world evidence, such

12  as the ongoing business discussions, the industry custom and practice, or Motorola's subjective

13  intent.  Murphy, 8/30/2013 Tr. 27:18-21-28:3, 64:23-66:4.  Indeed, Dr. Murphy could not opine on

14  whether Motorola even intended to hold up Microsoft by preventing a license deal from being

15  negotiated, as Dr. Murphy did not know if such a result would benefit Microsoft or Motorola.

16  Murphy, 8/30/13 Tr. 39:21-40:8.   Dr. Leonard testified that if Motorola had been pursuing a hold

17  up, Motorola's sending of the offer letters was not a rational way of doing so, as the letters

18  themselves do not give Motorola an advantage—there must be an agreement reached for a

19  successful hold up.  Leonard, 9/3/13 Tr. 104:17-107:21.   And if Motorola ended up litigation,

20  injunctions are difficult to obtain and the court would determine a RAND royalty rate, which does

21  not include a hold up value.  Leonard, 9/3/13 Tr. 106:1-6; 139:18-140:7.  Instead, the letters are

22  better explained from an objective economic perspective as a starting point for negotiations.

23  Leonard, 9/3/13 Tr. 106:7-13.

24       Further, Microsoft itself told the FTC in June 2011 that it had not accused anyone of hold

25  up as of that date—seven months after Microsoft filed the current lawsuit—writing that

26  "Microsoft has never been accused of patent hold-up in this regard, nor has it accused any other

MOTOROLA'S  RENEWED  RULE  50(A)  MOTION  FOR
JUDGMENT AS A MATTER OF LAW - 8
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1  company of such behavior." Ex. 2970 at 7; Heiner, 8/30/13 Tr. at 177:15-19.  Microsoft also told

2  the FTC that "[c]oncerns about 'patent hold-up' should not extend to any bi-lateral business

3  disagreement between two companies regarding proposed licensing terms.  These discussions

4  typically pertain to a broader set of questions than just the proposed licensing terms for essential

5  patent claims reading on a standard."  Ex. 2970 at 2; Heiner, 8/30/13 Tr. 169:22-170:5.  Further,

6  Microsoft explained that there was a dearth of examples of hold up in the real world, Heiner,

7  8/30/13 Tr. 177:9-14, and counseled against a simplified approach that would convert routine

8  business negotiations into hold up situations, Heiner, 8/30/13 Tr. 174:4-22.

9                     (c)       <u>The Evidence Fails To Show That Motorola Failed To Act In Accord With The Expectations Of The Parties To The Contracts</u>

10       The undisputed evidence is that standards-setting organizations leave specific RAND

11  licensing terms to the parties, Holleman, 9/3/13 Tr. 92:9-12, due in part to anticompetition

12  concerns, Holleman, 9/3/13 Tr. 93:19-94:1.  The letters of assurance Motorola submitted to the

13  IEEE and ITU at issue in this case expressly state the SSOs'expectation that licensing and

14  negotiation will occur outside of the SSO commitment.  Ex. 2838 ("negotiations are left to the

15  parties concerned and are performed outside the ITU"); Ex. 2839 ("no license is implied by the

16  submission of this letter of assurance").  Moreover, one purpose of the RAND commitments is to

17  encourage the best technology by compensating patent holders for their contribution.  Leonard,

18  9/3/13 Tr. 135:13-138:15.   No reasonable jury could find that Motorola, in seeking to open

19  negotiations with Microsoft, failed to act in accord with the expectations of the actual parties to

20  the contract.

21       C.    <u>No Reasonable Jury Could Conclude That Motorola Breached The Implied Covenant of Good Faith and Fair Dealing By Seeking Injunctive Relief</u>

22

23       Microsoft has not presented evidence sufficient for a jury to find that Motorola's seeking

24  of injunctions shows a lack of good faith.  Microsoft has presented no evidence that Motorola did

25  not act in subjective good faith by filing for injunctions in district court, the ITC, or Germany.

26

MOTOROLA'S RENEWED RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW - 9
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

Microsoft also has failed to present legally sufficient evidence that Motorola's actions lacked objective good faith.

### 1. Microsoft Failed To Prove Motorola's Lack Of Subjective Bad Faith

Microsoft has introduced no evidence that Motorola acted in subjective bad faith by filing any of its injunction actions against Microsoft. On the contrary, Mr. Dailey testified that every case that he has been involved in, either as a plaintiff or a defendant, has involved a request for either an injunction or an exclusion order. Dailey, 8/27/13 132:2-7; 8/28/13 26:9-16. Similarly, Dr. Leonard testified that in his experience, requests for injunction are common when parties file their complaints in order to preserve their right to an injunction. Leonard, 9/3/13 Tr. 132:15-21.

### (a) ITU And IEEE Commitments Do Not Waive Injunctive Relief

Microsoft has failed to elicit any evidence that the alleged contracts at issue prohibit Motorola from seeking injunctions. Nor could it, for neither Motorola's declarations to the ITU or IEEE nor any similar language from ITU and IEEE policies contain any language prohibiting Motorola or any other SEP holder from seeking an injunction or exclusion order. *See, e.g.*, Dkt. 673 at 19 ("IEEE-SA Standards Board Bylaws state that "[n]o license is implied by the submission of a Letter of Assurance."). While Motorola made a commitment to license its SEPs on RAND terms, it did not give up all rights to seek injunctions. Contractual waivers of rights must be expressly stated. *See, e.g.*, *Metro. Edison Co. v. NLRB*, 460 U.S. 693, 707-709 (1983); *Apple, Inc. v. Motorola Mobility, Inc.*, 2012 WL 5416941, at *15 (W.D. Wis. Oct. 29, 2012). Microsoft has shown no contractual waiver here, express or otherwise. Moreover, the implied duty of good faith and fair dealing cannot be "free floating" and must be tied to express contract terms; it cannot be created out of thin air. *Badgett v. Sec. State Bank*, 16 Wn. 2d 563, 569 (1991); *Ringler v. Bishop White Marshall & Weibel, PS*, 2013 WL 1816265, at *2 (W.D. Wash. Apr. 29, 2013).

### (b) Motorola Responded To Microsoft First Suing Motorola

The undisputed evidence at trial is that Microsoft sued Motorola *three times* before Motorola began to seek injunctive relief against Microsoft. In its October 1 patent infringement

MOTOROLA'S RENEWED RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW - 10
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1  suits, Microsoft sought an exclusion order against Motorola's Android phones in the ITC and an

2  injunction in this Court.  Ex. 7119; Dailey, 8/27/13 Tr. 176:15-20; 177:7-19.   Microsoft witness

3  Heiner testified that a lawsuit under such circumstances should not be considered hold up.  Heiner,

4  8/30/13 Tr. 179:4-8.

5

6                (c)    Microsoft Was Not A Willing Licensee Before Motorola Filed For
                       Injunctive Relief

7         In Microsoft's response to Motorola's November 10, 2010 patent infringement lawsuits,

8  Microsoft denied that it infringed Motorola's SEPs, denied that the SEPs were valid, and refused

9  to concede the patents are, in fact, SEPs.   Ex. 7241; Gutierrez, 8/29/13 Tr. 17:3-18:3.     In

10 response to Motorola's German lawsuits, Microsoft filed a nullity action in Germany seeking to

11 invalidate the patents.  Killough, 8/30/13 Tr.  The complaint here does not state that Microsoft was

12 willing to take a license on RAND terms.  Ex. 7241.  In fact, neither Mr. Dailey nor Mr. Gutierrez

13 was able to confirm a date by which Microsoft was willing to do so, despite Microsoft's

14 allegations that it was willing to take a license as of September 30, 2011.  Dailey, 8/27/13 Tr.

15 135:8-15, 20-21; Dailey, 8/28/13 Tr. 47:23-48:3; Gutierrez, 8/28/13 Tr. 167:14-168:23.   This

16 Court found in May 2012, Microsoft had only "recently" stated that it would be willing to accept a

17 license on RAND terms.  Dkt. 381 at 16 n.12.  Microsoft has not introduced any evidence to show

18 that it was willing to take a license on RAND terms at any time prior to November 2010 or July

19 2011, when Motorola filed lawsuits seeking injunctions.[3]

20

21

22

23

24 _____

   [3]   Microsoft throughout trial has pointed to a paragraph in its complaints requesting a judicial

25 accounting.  First, Microsoft did not request a judicial accounting in its prayer for relief.  Dkt. 53
   at 24-25.  Second, a judicial accounting is an equitable remedy and is not available here, where

26 Microsoft had pleaded a claim for breach of contract seeking damages for breach and thus had a
   legal remedy.  1A C.J.S. Accounting § 24.  Third, it would be Motorola that could sue for a
   judicial accounting for past damages, not Microsoft.

MOTOROLA'S   RENEWED   RULE   50(A)   MOTION   FOR          SUMMIT LAW GROUP PLLC
JUDGMENT AS A MATTER OF LAW - 11                            315 FIFTH AVENUE SOUTH, SUITE 1000
CASE NO. C10-1823-JLR                                       SEATTLE, WASHINGTON 98104-2682
                                                            Telephone:  (206) 676-7000
                                                            Fax:   (206) 676-7001

2.      Microsoft Failed To Prove Motorola's Lack Of Objective Good Faith

Not only has Microsoft failed to introduce evidence to show any lack of subjective good faith by Motorola in filing lawsuits seeking in injunctions, but Microsoft also has not introduced evidence proving that Motorola was not acting with objectively good faith by doing so.

(a)      The Availability Of Injunctive Relief For Infringement Of SEPs Was An Open Issue When Motorola Filed For Injunctions

When Motorola filed its lawsuits seeking injunctions in November 2010 and July 2011, the availability of injunctive relief for SEP infringement was an open issue, and it remains so.  There were no judicial opinions precluding it.  Moreover, when Motorola filed the lawsuits, there was an open issue as to whether Microsoft had repudiated its rights under the purported contracts by bringing suit.  This was the subject of summary judgment briefing, concluding in this Court's order of June 6, 2012.  Dkt. 335.  If this Court had found repudiation, the Microsoft's claims in this case would have been dismissed.

Microsoft also did not include a statement that it was willing to take a license to Motorola's patents on RAND terms in its complaint.  Instead, Microsoft contested validity, infringement, and essentiality of the patents.  Dkts. 1, 53.  As the Court noted in its May 14, 2012 Order, Microsoft affirmatively stated only in its "recent" papers to the court that Microsoft was willing to take a license on RAND terms.  Dkt. 318 at 16 fn. 12.

In addition, this Court did not dismiss Motorola's claim for injunctive relief in this case until November 30, 2012—at which time this Court held that the dismissal was without prejudice, was "based on the specific circumstances and rulings that have developed in this litigation."  Dkt. 607 at 15.  The Court also held that if "those circumstances change in a manner to warrant injunctive relief, Motorola may at that time seek such relief."  *Id*.

MOTOROLA'S   RENEWED   RULE   50(A)   MOTION   FOR
JUDGMENT AS A MATTER OF LAW - 12
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

(b)     Courts Have Recently Found That Injunctive Relief Is Available For Infringement Of SEPs In Certain Circumstances

In 2012, long after Motorola filed its lawsuits seeking injunctions in November 2010 and July 2011, two courts held that it is appropriate in certain situations for SEP holders to seek injunctions.  *Apple, Inc.*, 2012 WL 5416941, at *15 (holding that "any contract purportedly depriving a patent owner of that right should clearly do so," that a RAND commitment to an SSO does not clearly deprive patent owners of the right to bring injunctions, and therefore that "Motorola did not breach its contract simply by requesting an injunction and exclusionary order in its patent infringement actions"); *see also Apple, Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901, 913-14 (N.D. Ill. 2012)  (Posner, J) (finding that, because Motorola had committed to license its patent on FRAND terms, an injunction may not be justified if an infringer "uses to pay a royalty that meets the FRAND requirement").

Microsoft itself admitted in a letter to the FTC on June 14, 2011 that injunctive relief should be available to SEP holders.  Ex. 2970.  Eight months after Motorola filed its patent infringement action against Microsoft in the ITC seeking an exclusion order and just one month before Motorola filed its patent infringement actions against Microsoft in Germany seeking an injunction, Microsoft wrote:

> In addition, the existence of a RAND commitment to offer patent licenses should not preclude a patent holder from seeking preliminary injunctive relief or commencing an action in the International Trade Commission just because the patent holder has made a licensing commitment to offer RAND-based licenses in connection with a standard. Whether such relief is available should be assessed under the current legal framework in the applicable jurisdiction, which often is premised substantially on the specific facts and circumstances at issue. Any uniform declaration that such relief would not be available if the patent holder has made a commitment to offer a RAND license for its essential patent claims in connection with a standard may reduce any incentives that implementers might have to engage in good faith negotiations with the patent holder.

Ex. 2970 at 13; *see also* Murphy, 8/30/13 Tr. at 83:17-25.   Indeed, Microsoft's in-house counsel testified at this trial that injunctive relief should be available.  Heiner, 8/30/13 Tr. 180:3-9.

MOTOROLA'S RENEWED RULE 50(A) MOTION FOR JUDGMENT AS A MATTER OF LAW - 13
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

(c)     Seeking An Injunction Cannot Evince "Hold Up" Because A Judge Necessarily Must Decide Whether To Issue An Injunction

The uncontroverted evidence at trial is that Motorola itself does not have the power to force Microsoft to stop selling any of its products.  Instead, a court must make a fact-specific determination to decide whether an injunction is appropriate in the given situation.  According to Mr. Gutierrez, in the ITC "it's actually quite normal that only a very small percentage of the patents that are presented are ultimately found to have been violated."  Gutierrez, 8/29/13 Tr. 47:10-20.  Microsoft Corporate Vice President David Treadwell also admitted that Motorola would have to get some sort of approval from a government entity or from a court in order to prevent Motorola from selling Xboxes.  Treadwell, 8/27/13 Tr. 52:3-13.  Indeed, a request for an injunction does not guarantee that one will be granted. Leonard, 9/3/13 Tr. 131:11-16; 134:3-11. In fact, money damages will often be sufficient relief for a SEP holder and the public interest will be taken into account, meaning that injunctive relief may be difficult for a SEP holder to obtain. Leonard, 9/3/13 Tr. 134:12-135:12. Accordingly, there is little leverage for obtaining a hold up simply by requesting injunctive relief.  Leonard, 9/3/13 Tr. 131:11-16.

(d)     The Parties Did Not Reach a Breakdown In Negotiation Because Microsoft Never Negotiated

Microsoft has not introduced any evidence that the parties were unable to reach an agreement because negotiations broke down after some period of time.  On the contrary, the undisputed testimony from both Mr. Dailey and Mr. Gutierrez is that Microsoft never responded to Motorola's letters of October 21, 2010 (Ex. 1) and October 29, 2010 (Ex. 2) prior to filing the present lawsuit on November 9, 2010.  Dailey, 8/28/13 Tr. 31:16-20; Gutierrez, 8/29/13 Tr. 45:19-23.  Dr. Murphy failed to do any analysis of whether the failure of the parties to reach an agreement would be consistent with a hold up strategy.  Murphy, 8/30/13 Tr. 39:21-40:8.

3.   Microsoft Should Not Be Permitted To Now Plead A New Theory Of Breach Regarding Failure To Withdraw Injunctions

Microsoft has not pleaded that any actions after the filing of the injunctions in July 2011 constitute a breach.  Microsoft is not entitled to raise new breach theories during trial and these new theories must be dismissed.  Microsoft apparently claims that Motorola breached its RAND obligations by failing to withdraw its requests for injunctive relief.  Microsoft, however, did not plead this breach theory in its Complaint (Dkt. 1) or Amended Complaint (Dkt. 53 ("Motorola breached these contracts by *filing* the Motorola Patent Actions") (emphasis added), did not articulate it in its interrogatory response disclosing its breach theories, and did not articulate it in its portions of the Joint Pretrial Order (Dkt. 803 at 2 ("Whether Motorola breached its contractual obligations to the IEEE, ITU, and/or Microsoft by *filing* lawsuits and *seeking* injunctive relief . . .") (emphasis added)).  Similarly, Mr. Gutierrez testified that licensing offers made by Motorola after the October 21 and 29, 2010 letters violated RAND obligations.  But, again, Microsoft's breach claims were limited to the offers in the October 21 and 29, 2010 letters and did not include other licensing offers.  *See* Dkt. 1, 53, 803.

D.   No Reasonable Jury Could Find That Motorola Breached A Duty Of Good Faith Through Its Negotiations With Marvell

Microsoft has not provided evidence of any basis by which it can enforce Marvell's rights to a RAND license as a third-party beneficiary and thus lack standing to sue for breach of contract based on Motorola's conduct toward Marvell.  Moreover, Microsoft has not shown Motorola lacked good faith in Motorola's conduct in negotiating a license with Marvell.

1.   Microsoft Lacks Standing To Argue Based On Marvell

As a preliminary matter, Microsoft lacks standing to argue that Motorola's interactions with Marvell to negotiate a license tend to show anything about Motorola's conduct vis-à-vis Microsoft.  "The standing doctrine. . . requires that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Johnson v. Microsoft Corp.*, 2008 WL 803124 (W.D. Wash. Mar. 21, 2008) (quotation

MOTOROLA'S RENEWED RULE 50(A) MOTION FOR JUDGMENT AS A MATTER OF LAW - 15
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1   omitted).  In *Johnson*, the court held that two individuals who were not parties to the contract, and

2   lacked privity with any party, lacked standing to assert a claim of breach.  *Id.* at *3.  Microsoft

3   adduced no evidence showing that it has any ability to enforce Marvell's right to a RAND license

4   and thus Microsoft lacks standing to assert this breach theory.

5           2.       Microsoft Failed To Prove Motorola's Lack of Subjective Good Faith

6

7           The evidence at trial shows that, in July 2011, after this suit was filed, Marvell approached

8   Motorola for a license to its 802.11 SEPs.  Ex. 1608.  Marvell explained to Motorola that it was

9   seeking a license at the request of its customer, Microsoft.  Ochs, 8/28/13 Tr. 89:23-90:1, 91:1-2.

10  Motorola reassured Marvell that it was not asserting its 802.11 SEPs against Marvell and was not

11  requiring Marvell to take a license.  *Id.* at 101:5-16.  Motorola had historically licensed its SEPs to

12  end product manufacturers, rather than component manufacturers like Marvell.  *See* Ex. 16; Ochs,

13  8/28/13 Tr. 101:17-20.  Nevertheless, Motorola responded to Marvell's license inquiries, but

14  Marvell did not actively pursue a license.  *See* Ex. 16; Ochs, 8/28/13 Tr. 108:12-109:19.  After

15  several months of silence from Marvell following the initial exchange of emails, Motorola

16  requested that Marvell provide claim charts to a set of 802.11 patents Marvell proposed to cross-

17  license on a royalty-free basis.  Ochs, 8/28/13 Tr. 108:12-109:19.  As of the November 2012 trial,

18  Marvell had not provided Motorola the requested claim charts.  *Id.* at 110:17-111:23.  There is no

19  evidence of any further response from Marvell.

20          Microsoft elicited no proof of Motorola's subjective bad faith in the Marvell negotiations;

21  rather, as Ms. Ochs testified, defensive suspension provisions are typical among sophisticated

22  parties.  *See* Ochs, 8/28/13 Tr. 99:1-14; *see also* Heiner 8/30/13 Tr. at 173:17-174:1.  Indeed, as

23  Mr. Dailey testified, Microsoft was not the only party carved out from the proposed Marvell

24  license, and was not being singled out by Motorola.  Ex. 16; Dailey, 8/28/13 Tr.  46:9-11.

25          Although Marvell had never requested a license from Motorola in the seven years it had

26  been using Motorola's patented technology, Marvell requested a license from Motorola at

MOTOROLA'S  RENEWED  RULE  50(A)  MOTION  FOR
JUDGMENT AS A MATTER OF LAW - 16
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   Microsoft's demand.  Ex. 7242, Ex. 3162, Dailey, 8/28/13 Trial Tr. 10:20-11:1; 27:18-28:3; 30:9-

2   12; Ochs, 8/28/13 Trial Tr. 89:23-90:3; 92:15-19.  Motorola first told Marvell that it did not need a

3   license, and then made its standard opening offer to Marvell.  Ochs, 8/28/13 Trial Tr. 101:5-24.

4                3.    Microsoft Failed To Prove Motorola's Lack Of Objective Good Faith

5

6        Microsoft has not elicited evidence to show that Motorola has acted in objective bad faith

7   in its negotiations with Marvell.  Motorola's initial response was to tell Marvell that it did not

8   even need a license, Ochs, 8/28/13 Tr. 101:5-24, that Motorola was not asserting its patents

9   against Marvell, *id.* at 101:11-14, and, after making its opening offer, negotiate toward a royalty-

10  free cross license, *id.* 100:11-23.

11              (a)    Defensive Suspension Clauses Are Common In The Industry

12       The undisputed evidence at trial shows that defensive suspension provisions are common.

13  Mr. Dailey testified that including defensive suspension provisions in license agreements "is a

14  standard part of [Motorola]'s practice."  Dailey, 8/27/13 Trial Tr. 144:18-145:12.  Ms. Ochs of

15  Marvell also confirmed that defensive suspension provisions are common.  Ochs, 8/28/13 Tr.

16  99:1-100:3.  Although Microsoft attempted to show that Motorola was inappropriately listed as a

17  "repudiating party" in the draft agreement, the draft agreement itself (Ex. 16, Section 3.5) as well

18  as Mr. Dailey's testimony confirm that the defensive suspension provision was applied to

19  Microsoft (as well as to Apple and Gemalto) because each of those companies had sued Motorola

20  at the time Motorola drafted the agreement with Marvell.  Dailey, 8/28/13 Tr. 57:23-59:16.

21       No evidence indicates that Motorola was trying hold up either Marvell or Microsoft in

22  negotiating with Marvell.  Ochs, 8/28/2013 Tr. 99:1-100:1.  Indeed, the evidence indicates the

23  exact opposite, as the parties continue to negotiate toward a royalty-free cross-license.  *Id.* at

24  100:11-23.  No evidence could possibly indicate that a royalty-free cross-license would constitute

25  hold-up value because no evidence exists showing whether Marvell has provided claim charts and,

26  if so, what those claim charts show.  *Id.* at 110:2-111:1; Ex. 3404.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

(b)   Motorola Treated Marvell Similarly To Others

The evidence shows that Motorola made its standard offer of 2.25% to Marvell, just as it made that offer to companies such as HTC and RIM.   Ex. 7242, Ex. 3162, Dailey, 8/28/13 Tr. 10:20-11:1; 27:18-28:3; 30:9-12; Ochs, 8/28/13 Tr. 92:15-19.   Motorola then continued to negotiate, asking for claim charts and working towards a broader cross-license, but Marvell never responded.   Ochs, 8/28/13 Tr. 110:4-112:3.   Rather than showing bad faith on the part of Motorola, the fact that Motorola proceeded with this negotiation just as it would with any other licensor demonstrates that Motorola was acting in good faith during its negotiations with Marvell.

E.   No Reasonable Jury Could Find That Motorola's Actions Combined Breached The Implied Duty Of Good Faith And Fair Dealing

Not only has Microsoft failed to elicit sufficient evidence demonstrating that Motorola's offer letters, seeking of injunctions, and negotiations with Marvell are each separate contract breaches of the implied duty of good faith and fair dealing, but Microsoft has also failed to elicit legally sufficient evidence that any combination of these actions constitutes a breach of the implied duty of good faith.   No evidence has been elicited to show that Motorola lacked subjective good faith in sending the letters, seeking injunctive relief, and negotiating with Marvell. And Motorola acted in objective good faith by offering its standard rate to Microsoft and Marvell and indicating its willingness to negotiate with Microsoft and Marvell, and its requests for injunctive relief were reasonable in the context and circumstances.

## III.   THE RECORD IS INSUFFICIENT TO SUPPORT A FINDING THAT MOTOROLA CAUSED MICROSOFT ANY DAMAGES

Microsoft has not produced any credible evidence tending to show that Motorola's actions in sending the October 2010 letters or filing actions for injunctions caused any cognizable damage to Microsoft.   Lacking any proximately caused damages, Microsoft lacks proof on an essential element of its claim for breach.   This Court should grant judgment as a matter of law in favor of Motorola, not only as to damages, but also as to the entire breach claims.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:   (206) 676-7001

A.   <u>Microsoft Has Failed To Prove Damages, Which Are An Essential Element Of Breach</u>

Microsoft's failure to adduce sufficient evidence from which a jury could conclude that Motorola's actions caused Microsoft to incur damages means that Microsoft cannot prove an essential element of its breach of contract claim.  Under Washington law, a "breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *Nw. Ind. Forest v. Dept. of Labor & Indus.*, 899 P.2d 6, 9 (Wash. 1995); *Muniz v. Microsoft Corp.*, 2010 WL 4482107, at *3 (W.D. Wash. Oct. 29, 2010)

Damages are an essential element of breach of contract and Microsoft has provided insufficient proof that it may recover the damages it seeks or that Motorola's conduct proximately caused such damages.  *See Microsoft Corp. v. Immersion Corp.*, 2008 WL 2998238, at *3 (W.D. Wash. Aug. 1, 2008) ("It is well established that in any breach of contract claim, the aggrieved party must prove damages.") (citation omitted)   It is not permissible for Microsoft at this point to seek nominal damages.  Under Washington law, Microsoft is not entitled to nominal damages if its claim is for damages only.   *See Merrell v. Renier*, 2006 WL 3337368, at *5 (W.D. Wash. Nov. 16, 2006) (Robart, J.) (acknowledging "in a claim for 'damages suffered, mere proof that there was a breach of the contract, without more, did not warrant a verdict ... even for nominal damages'") (citation omitted).  Microsoft's original and amended complaints seek only damages and otherwise only declaratory and injunctive relief.  Dkt. 1 at 22 (seeking "damages that Microsoft proves at trial" and otherwise declaratory requests for relief); Dkt. 52 at 24-25 (same).  Accordingly, it would be improper for the Court to allow Microsoft to recover nominal damages in the event it is not able to prove damages.  *See Dunkin' Donuts Inc. v. Dough Boy Mgmt., Inc.*, 2006 WL 20521, at *9 (D. N.J. Jan. 3, 2006) (precluding nominal damages when defendants only alleged actual and consequential damages).  *Cf. Apple, Inc.*, 869 F. Supp. 2d at 909.  Without sufficient evidence for the jury to find that Motorola proximately caused Microsoft damages,

MOTOROLA'S RENEWED RULE 50(A) MOTION FOR JUDGMENT AS A MATTER OF LAW - 19
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:   (206) 676-7001

1   Microsoft cannot prove an essential element of its claim for breach of contract, and this Court

2   should grant judgment as matter of law in favor of Motorola.

3         B.    <u>Microsoft Cannot Recover Attorney Fees For Breach Of Contract</u>

4              1.    <u>The American Rule Bars Microsoft's Recovery Of Attorney Fees As</u>

5                 <u>Damages</u>

6         "Washington courts traditionally follow the American rule in not awarding attorney fees as

7   costs absent a contract, statute, or recognized equitable exception." *City of Seattle v. McCready*,

8   131 Wn. 2d 266, 273-74 (1997).  In fact, "a more accurate statement of Washington's American

9   rule is attorney fees are not available as costs *or damages* absent a contract, statute, or recognized

10   ground in equity." *Id.* at 275 (emphasis added).  Microsoft presented no evidence of a contractual

11   or statutory basis for attorney fees and failed to provide sufficient evidence that it may recover

12   attorney fees as damages on any equitable grounds.

13              2.    <u>Microsoft May Not Recover Attorney Fees As An Equitable Remedy For</u>

14                 <u>Breach Of The RAND Commitment</u>

15         *First*, although Motorola recognizes this Court's prior ruling on Microsoft's ability to

16   recover attorney fees under a newly created equitable exception, as a matter of law Microsoft may

17   not recover attorney fees under any theory that RAND is a covenant not to sue.  As this Court

18   previously held, seeking an injunction on an SEP may be permissible under certain circumstances.

19   Dkt. 843 at 17-18 ("Motorola's actions in this case in seeking injunctive relief cannot be viewed in

20   a vacuum" and "there are certain circumstances under which a SEP owner rightfully seeks

21   injunctive relief."); *see also Apple, Inc.*, 2012 WL 5416941, at *15 (holding that the RAND

22   commitment did not deprive defendant of its right to seek injunctive relief); *see also* Dkt. 843 at

23   18.  Microsoft did not indicate to the Court that it was a willing licensee after Motorola filed its

24   requests for injunctive relief, and continuing negotiations between the parties did not reflect

25   Microsoft's willingness to negotiate for a license not set by the Court. Reading into the RAND

26   commitment a covenant not to sue would have prevented Motorola from even asking a court for an

MOTOROLA'S RENEWED RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW - 20
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:   (206) 676-7001

injunction, even though such action in itself was not a breach of the contract or the covenant of good faith and fair dealing.  If injunctive relief is permissible under certain circumstances, than, *a fortiori*, the RAND commitment does not contain a covenant not sue for injunctive relief.

*Second*, the plain language of the contract and any interpretation of the language based on the intent of the parties or industry custom and practice demonstrates that no covenant not to sue exists.  It is an established fact in this trial that Motorola's RAND commitment do not imply a license.  *See* Dkt. 673 at 19 ("No license is implied by the submission of a Letter of Assurance.").  If the RAND commitment were a covenant not to sue on SEPs, no SEP holder could ever seek relief for infringement in the ITC despite the implementers lack of a license for using patented technology.  The evidence shows that the language on which the entire litigation is predicated says only that Motorola will "grant to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions" licenses conditioned on reciprocity.  This language does not unambiguously contain a covenant not to sue and the intent of the contracting parties and industry practice indicate that the RAND commitment does not prevent a party from seeking an injunction.  Various SEP holders have sought injunctions notwithstanding RAND commitments, which demonstrates that no SEP holder intended for the RAND commitment to deny it the ability to seek injunctive relief.

*Finally*, the equitable exception that a limited number of courts have applied to allow recovery of attorney fees would not be recognized under Washington law.  As this Court acknowledged, the Ninth Circuit specifically rejected expanding this exception under Oregon law, predicting that the Oregon courts would not accept it.  Dkt. 843 at 29-30 (citing *Gruver v. Midas Intern. Corp.*, 925 F.2d 280, 283-84 (9th Cir. 1991)).  Further, the *en banc* Colorado Supreme Court, "after reviewing [this] issue in depth," Dkt. 843 at 29, concluded that "*most jurisdictions* have applied the American rule *barring* the award of attorney fees and costs to cases involving a breach of a [covenant not to sue]."  *Bunnett v. Smallwood*, 793 P.2d 157, 161 (Colo. 1990) (emphasis added).  To date, Washington courts, which construe exceptions to the American Rule

MOTOROLA'S RENEWED RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW - 21
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

narrowly, have not adopted such an exception.  Dkt. 843 at 27.  Microsoft has not introduced evidence overcoming these legal obstacles to its claim for attorney fees as damages.

C.    No Reasonable Jury Could Find That Motorola's Actions Caused Microsoft's Asserted Damages

Microsoft has failed to present evidence that Motorola's actions seeking an injunction in Germany for infringement of a German patent caused it to move its European distribution facility from Germany to the Netherlands, even though the injunction never took effect.

1.    Microsoft Failed To ProveThat Motorola's Actions Caused Microsoft To Incur The Costs of Moving Its German Facility

Microsoft has failed to present evidence that Motorola's actions in seeking an injunction in Germany for infringement of a German patent caused Microsoft to move its European distribution facility from Germany to the Netherlands, even though the injunction never took effect.  *Nw. Indep. Forest Mfrs.*, 78 Wash. App. at 712 (duty, breach, causation, and damages required to sustain a breach of contract claim); *Akins v. Williams Commn's, Inc.*, 2003 WL 1521999, at *3 (Wash. App. Div. 2. Mar. 25, 2003).  Proximate cause requires "an unbroken sequence . . . [that produces] the result for which recovery is sought." *Bowers v. Farmers Ins. Exchange*, 99 Wash. App. 41, 48 (2000) (quotation omitted).  Microsoft's testimony and documents belie their breach contention.  Instead the evidence suggests that Microsoft used the German litigation as a pretext to "significantly scale [their] distribution footprint and capabilities" for its operation in Europe, Middle East, and Africa, by moving to a larger, fully-dedicated facility.  Ex. 7136; Davidson, 8/29/13 Tr. 95:10-20; Daly, 9/3/13 Tr. 57:10-25.  Indeed, one Microsoft witness even testified that while it was necessary for Microsoft to lease additional facility space during "peak periods" with the German facility, since moving to the Netherlands Microsoft has avoided those troubles. Roberts, 9/3/13 Tr. 73:3-16.  Furthermore, Microsoft's witnesses acknowledged that Microsoft was having cost issues with their vendor in Germany, Davidson, 8/29/13 Tr. 87:23-88:5; Roberts, 9/3/13 Tr. 68:9-21, that they delayed even discussing the need to relocate for several months (thereby adding to the costs of the transition), Davidson, 8/29/13 Tr. 84:3-10, 85:8-17; Roberts,

9/3/13 71:5-14, and that Germany was a particularly risky place to locate a global logistics center, Davidson, 8/29/13 Tr. 87:2-18; McKinley 9/3/13 Tr. 48:25-49:10 ("having your global logistics tied up in Germany . . . foreseeably puts you in a situation in other cases.")

As Microsoft was aware, filing a patent infringement lawsuit in Germany is not unusual. Haedicke, 8/30/13 Tr. 204:19-205:4. However, an injunction was not a necessary result. The *Orange Book* Section 315 procedure was available to Microsoft in the German litigation as a means to avoid injunction. Haedicke, 8/30/2013 Tr. 193:7-14. Under this procedure, Microsoft could have elected to escrow an amount it believed fair and to submit to the German court for purposes of setting a reasonably royalty rate. *See id.* at 196:8-13; 214:5-8. Rather than choosing that option, Microsoft assumed a greater risk by offering a certain licensing fee, which Motorola rejected. *Id.* at 201:8-12, 17-18. The German court held that Motorola's rejection of Microsoft's offer was not unreasonable under applicable German antitrust law. *See id.* at 201:19-22.

### 2. No Reasonable Jury Could Find That Motorola's Actions Caused Microsoft's Attorney Fees Damages

Microsoft also has failed to show that Motorola's actions caused Microsoft's alleged attorney fees damages. Microsoft filed suit against Motorola first, in the ITC, and in this Court on October 1, 2010. Ex. 7119; Gutierrez, 8/28/13 Tr. 193:24-194:2; 196:4-197:4; Dailey, 8/27/13 Tr. 176:15-20; 178:25-179:8. Mr. Gutierrez testified that countersuits are expected when a company files a patent infringement suit. Gutierrez, 8/28/13 Tr. 211:23-212:2. The undisputed evidence suggests that is was Microsoft's precipitating actions, not Motorola's actions, that caused Microsoft to incur attorney fees. Indeed, Mr. Killough testified that no legal fees were incurred prior to Microsoft initiating its suit against Motorola. Killough, 9/3/13 Tr. 38:22-25.

Even assuming, *arguendo*, that Motorola caused Microsoft's attorneys fees damages by filing for injunctions in Germany and Wisconsin, the relevant damages would not be all attorneys' fees and expenses, only those incurred specifically in defending against the injunction would be relevant. Motorola has a right to sue Microsoft for patent infringement in the forum of its choosing (and Microsoft has never contended otherwise), and does not have a duty to limit itself to

MOTOROLA'S RENEWED RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW - 23
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:   (206) 676-7001

1   one forum simply to reduce costs to Microsoft.  Further, Mr. Killough testified that although the

2   invoices he used to calculate damages indicated in narrative form the work being performed and

3   time spent on each task, he did not segregate the damages costs related to invalidity and non-

4   infringement from those directed towards injunction.  Killough, 9/3/13 Tr. 38:15-39:8.  Microsoft

5   failed to prove any amount of attorney fees attributable to Motorola seeking injunctive relief—the

6   only portion of its attorney fees Microsoft possibly could recover.

7          D.    <u>Microsoft Failed To Mitigate Its Damages</u>

8          For the reasons stated above, the undisputed evidence shows that Microsoft failed to

9   mitigate its damages.  The doctrine of avoidable consequences, or mitigation of damages, prevents

10   an injured party from recovering damages that the party could have avoided through reasonable

11   efforts.  *Jaeger v. Cleaver Const., Inc.*, 148 Wash. App. 698, 714, 201 P.3d 1028, 1037 (2009);

12   *Walker v. Transam. Title Ins. Co., Inc.*, 65 Wash. App. 399, 406, 828 P.2d 621, 625 (1992).

13   Microsoft easily could have avoided any injunction through the *Orange Book* procedure.

14   Haedicke, 8/30/13 Tr. 193:7-14, 196:8-13, 214:5-8.  Microsoft also did not commit to move the

15   German distribution center until March 2012, despite the German litigation having been filed in

16   July 2011, and did not move for an anti-suit injunction in this Court until March 28, 2012, despite

17   having analyzed the motion seven months earlier.   Davidson, 8/29/13 Tr. 83:2584:10; Killough,

18   9/3/13 Tr. 43:8-44:16.  Mr. Roberts testified that the speed with which Microsoft moved added to

19   the costs.  Roberts, 9/3/13 Tr. 65:20-22.  Microsoft did not take that path and therefore failed to

20   make any effort to avoid moving the distribution facility from Germany.  *Id.* at 201:8-12, 17-18.

21          E.    <u>Microsoft Has Presented No Evidence That Motorola Solutions Is Liable For Damages Allegedly Caused By The German Action</u>

22

23          As Motorola stated in its prior motion, this Court should grant judgment as a matter of law

24   as to Motorola Solutions for any damages stemming from the German action.  *See* Dkt. 904 at 24.

                  **CONCLUSION**

25          For the foregoing reasons, pursuant to Fed. R. Civ. P. 50(a)(1), Motorola is entitled to

26   judgment as a matter of law on Microsoft's breach of contract claims.

MOTOROLA'S RENEWED RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW - 24
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

1

DATED this 4th day of September, 2013.

2

3                                              Respectfully submitted,

4                                              SUMMIT LAW GROUP PLLC

5                                              By */s/ Ralph H. Palumbo*
                                               By */s/ Philip S. McCune*
6                                                   Ralph H. Palumbo, WSBA #04751
                                                    Philip S. McCune, WSBA #21081
7                                                   *ralphp@summitlaw.com*
                                                    *philm@summitlaw.com*
8

9                                              By */s/ Thomas V.  Miller*
                                                    Thomas V. Miller
10                                                  MOTOROLA MOBILITY LLC
                                                    600 North U.S. Highway 45
11                                                  Libertyville, IL  60048-1286
                                                    (847) 523-2162
12

13                                             QUINN EMANUEL URQUHART &
                                               SULLIVAN, LLP
14

15                                             By */s/ Kathleen M. Sullivan*
                                                    Kathleen M. Sullivan, NY #1804624
16                                                  51 Madison Ave., 22nd Floor
                                                    New York, NY 10010
17                                                  (212) 849-7000
                                                    *kathleensullivan@quinnemanuel.com*
18

19                                             By */s/ Brian C. Cannon*
                                                    Brian C. Cannon, CA #193071
20                                                  555 Twin Dolphin Drive, 5th Floor
                                                    Redwood Shores, CA 94065
21                                                  (650) 801-5000
                                                    *briancannon@quinnemanuel.com*
22

23

24

25

26

MOTOROLA'S   RENEWED   RULE   50(A)   MOTION   FOR
JUDGMENT AS A MATTER OF LAW - 25
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

By */s/ William C. Price*
    William C. Price, CA #108542
    865 S. Figueroa Street, 10th Floor
    Los Angeles, CA 90017
    (213) 443-3000
    *williamprice@quinnemanuel.com*

**Attorneys for Motorola Solutions, Inc.,
Motorola Mobility LLC and General
Instrument Corp.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

MOTOROLA'S RENEWED RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW - 26
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Arthur W. Harrigan, Jr., Esq.
> Christopher T. Wion, Esq.
> Shane P. Cramer, Esq.
> Calfo Harrigan Leyh & Eakes LLP
> *arthurh@calfoharrigan.com*
> *chrisw@calfoharrigan.com*
> *shanec@calfoharrigan.com*
>
> Richard A. Cederoth, Esq.
> Brian R. Nester, Esq.
> David T. Pritikin, Esq.
> Douglas I. Lewis, Esq.
> John W. McBride, Esq.
> William H. Baumgartner, Jr., Esq.
> David C. Giardina, Esq.
> Carter G. Phillips, Esq.
> Constantine L. Trela, Jr., Esq.
> Ellen S. Robbins, Esq.
> Nathaniel C. Love, Esq.
> Sidley Austin LLP
> *rcederoth@sidley.com*
> *bnester@sidley.com*
> *dpritikin@sidley.com*
> *dilewis@sidley.com*
> *jwmcbride@sidley.com*
> *wbaumgartner@sidley.com*
> *dgiardina@sidley.com*
> *cphillips@sidley.com*
> *ctrela@sidley.com*
> *erobbins@sidley.com*
> *nlove@sidley.com*
>
> T. Andrew Culbert, Esq.
> David E. Killough, Esq.
> Microsoft Corp.
> *andycu@microsoft.com*
> *davkill@microsoft.com*

DATED this 4th day of September, 2013.

_____
/s/ *Marcia A. Ripley*
Marcia A. Ripley

MOTOROLA'S RENEWED RULE 50(A) MOTION FOR JUDGMENT AS A MATTER OF LAW - 27
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001