The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation, | CASE NO. C10-1823-JLR |
| Plaintiff, | MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION FOR JUDGMENT AS A MATTER OF LAW |
| v. | |
| MOTOROLA, INC., and MOTOROLA MOBILITY LLC, and GENERAL INSTRUMENT CORPORATION, | |
| Defendants. | |
| MOTOROLA MOBILITY LLC, and GENERAL INSTRUMENT CORPORATION, | |
| Plaintiffs/Counterclaim Defendant, | |
| v. | |
| MICROSOFT CORPORATION, | |
| Defendant/Counterclaim Plaintiff. | |

MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION
FOR JUDGMENT AS A MATTER OF LAW
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 1

I.  MICROSOFT'S RULE 50(A) MOTION SHOULD BE DISMISSED AS MOOT IN LIGHT OF THE JURY'S VERDICT IN FAVOR OF MICROSOFT ........................... 1

II.  A REASONABLE JURY WOULD FIND THAT MOTOROLA ACTED IN GOOD FAITH ............................................................................................................... 2

    A.  Motorola Acted In Accordance With The Reasonable And Justified Expectations Of The Parties ............................................................ 2

    B.  Motorola Acted In A Commercially Reasonable Manner ........................................ 3

    C.  Motorola's Actions Did Not Frustrate The Purpose Of The Contracts ................... 6

    D.  Motorola's Actions Conformed To Industry Custom And Practice ......................... 8

    E.  Motorola Had No Unilateral Discretion Under The RAND Commitments ............ 10

    F.  No Evidence In The Record Shows That Motorola Lacked Subjective Good Faith ........................................................................................... 10

III.  MOTOROLA DID NOT BREACH THE EXPRESS TERMS OF THE CONTRACTS ....................................................................................................... 11

    A.  This Court Already Has Ruled That Motorola Did Not Breach The Express Terms .................................................................................... 11

    B.  Many Of Microsoft's Theories Of Breach Are New And Should Be Disregarded .................................................................................... 12

    C.  No Reasonable Jury Could Find Motorola Breached Its RAND Commitments ................................................................................... 14

        1.  No Reasonable Jury Could Find That Motorola Breached Its RAND Commitments By Seeking Injunctions On Its Standard Essential Patents ......................................................................... 14

        2.  No Reasonable Jury Could Find That Microsoft Was A Willing Licensee At The Time Motorola Filed For Injunctions .............................. 17

MOTOROLA'S  OPPOSITION  TO  MICROSOFT'S  MOTION
FOR JUDGMENT AS A MATTER OF LAW -
CASE NO. C10-1823-JLR

i

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

3.      Motorola Did Not Breach Any Contract By Rejecting Microsoft's *Orange Book* Offer And Pursuing Injunctions .............................................. 19

4.      Motorola Did Not Breach Any Contract With The IEEE When Making An Opening Offer To License Its 802.11 Essential Patents .......... 20

5.      Motorola Did Not Breach Any Contract By Failing To Make Licenses Available On RAND Terms .......................................................... 21

6.      Motorola Did Not Breach The Contract By Making "Blatantly Unreasonable" Offers ...................................................................................... 22

IV.    A REASONABLE JURY WOULD FIND THAT ORANGE BOOK PROCEDURES ALLOWED MICROSOFT TO AVOID ANY GERMAN INJUNCTION ................................................................................................................ 23

V.     MOTOROLA SOLUTIONS IS NOT LIABLE FOR ANY DAMAGES RESULTING FROM THE GERMAN ACTION ........................................................ 23

CONCLUSION .................................................................................................................... 24

CERTIFICATE OF SERVICE ............................................................................................ 26

MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION FOR JUDGMENT AS A MATTER OF LAW - CASE NO. C10-1823-JLR

ii

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

# TABLE OF AUTHORITIES

**Page**

## Cases

*Apple, Inc. v. Motorola, Inc.*,
   869 F. Supp. 2d 901 (N.D. Ill. 2012) .................................................................15

*Citri-Lite Co. v. Cott Beverages, Inc.*,
   721 F. Supp. 2d 912 (E.D. Cal. 2010) ................................................................6

*Craig v. Pillsbury Non-Qualified Pension Plan*,
   458 F.3d 748 (8th Cir. 2006) .............................................................................10

*Cummings v. Connell*,
   402 F.3d 936 (9th Cir. 2005) .............................................................................21

*Curtis v. N. Life Ins. Co.*,
   147 Wn. App. 1030 (2008) ................................................................................10

*Elliot Bay Seafoods v. Port of Seattle*,
   98 P.3d 491 (Wash. Ct. App. 2004) ............................................................12, 14

*EMI Music Mktg. v. Avatar Records, Inc.*,
   364 F. Supp. 2d 337 (S.D.N.Y. 2005) ................................................................1

*Lyon Dev.Co. v. Business Men's Assurance Co. of Am.*,
   76 F.3d 1118 (10th Cir. 1996) ............................................................................1

*Maier v. Lovick*,
   2010 WL 1849032 (W.D. Wash. Mar. 26, 2010) ...............................................9

*McAllister v. Hawaiiana Mgmt. Co.*,
   918 F. Supp. 2d 1044 (D. Haw. 2013) ................................................................1

*Metro. Edison Co. v. NLRB*,
   460 U.S. 693 (1983) ..........................................................................................15

*Microsoft Corp. v. Motorola, Inc.*,
   696 F.3d 872 (9th Cir. 2012) .......................................................................15, 19

*Realtek Semiconductor Corp. v. LSI Corp.*,
   2013 WL 2181717 (N.D. Cal. May 20, 2013) ..............................................16, 19

*Scribner v. Worldcom, Inc.*,
   249 F.3d 902 (9th Cir. 2001) .............................................................................10

*WL Gore & Assocs. v. Carlisle Corp.*,
   529 F.2d 614 (3d Cir. 1976) ..............................................................................16

MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION   iii
FOR JUDGMENT AS A MATTER OF LAW -
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

## **Statutes**

2  35 U.S.C. § 283.......................................................................................................14

3  19 U.S.C. § 1337(d) ..........................................................................................14, 15

4  Federal Rule of Civil Procedure 50(a)(1) ...........................................................1, 24

5

## **Other Authorities**

6  1A C.J.S. Accounting § 24.....................................................................................18

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION   iv
FOR JUDGMENT AS A MATTER OF LAW -
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1

### INTRODUCTION

Defendants Motorola Mobility, LLC ("MMI"), Motorola Solutions, Inc. ("Motorola Solutions") and General Instrument Corp. ("GIC") (collectively, "Motorola") respectfully file this memorandum in opposition to the motion of Plaintiff Microsoft Corp. ("Microsoft") for judgment as a matter of law (JMOL) under Federal Rule of Civil Procedure 50(a)(1).

### ARGUMENT

**I.   MICROSOFT'S RULE 50(a) MOTION SHOULD BE DISMISSED AS MOOT IN LIGHT OF THE JURY'S VERDICT IN FAVOR OF MICROSOFT**

Microsoft filed its Rule 50 motion at the close of evidence on September 4, 2013 (Dkt. 902), and this Court did not rule on the motion before the jury returned its verdict. The jury returned a verdict in favor of Microsoft on September 4, 2013. Dkt. 909. On this basis alone, Microsoft's Rule 50 motion should be denied as moot. The Advisory Committee's Notes to the 1991 Amendments to the Federal Rules of Civil Procedure explain that Rule 50 motions made at the close of evidence will be mooted by a jury verdict in favor of the moving party. Fed. R. Civ. P. 50 Advisory Comm. Note (1991) ("[A] jury verdict for the moving party moots the issue."); *see also Lyon Dev.Co. v. Bus. Men's Assurance Co. of Am.*, 76 F.3d 1118, 1122 (10th Cir. 1996) (Rule 50 "does not permit a party in whose favor the verdict was rendered to renew its motion because a jury verdict for the moving party moots the issue."). Federal courts have consistently applied this reasoning, and denied Rule 50 motions as moot after jury verdicts were returned in favor of the moving party. *See, e.g.*, *McAllister v. Hawaiiana Mgmt. Co.*, 918 F. Supp. 2d 1044, 1054 (D. Haw. 2013) (denying Rule 50 motion as moot "[i]n light of the jury's verdict in favor of [the moving party] on all counts"); *EMI Music Mktg. v. Avatar Records, Inc.*, 364 F. Supp. 2d 337, 342 (S.D.N.Y. 2005) ("[A] jury verdict for the moving party moots the issue raised in a motion for judgment as a matter of law.").

MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION
FOR JUDGMENT AS A MATTER OF LAW - 1
CASE NO. C10-1823-JLR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## II.   A REASONABLE JURY WOULD FIND THAT MOTOROLA ACTED IN GOOD FAITH

### A.   Motorola Acted In Accordance With The Reasonable And Justified Expectations Of The Parties

No reasonable jury could find that Motorola, in seeking to open negotiations with Microsoft, failed to act in accord with the reasonable and justified expectations of the parties. Contrary to Microsoft's assertion (Dkt. 902 at 1), the evidence establishes that Motorola's actions accorded with the parties' reasonable expectations.   *First*, the actual parties to the SSO commitments (Motorola and the ITU and the IEEE), expected that Motorola and Microsoft would engage in *negotiations* of a RAND license.   The RAND commitment contemplates such negotiations (Holleman, 9/3/13 Tr. at 88:5-12, 90:22-24, 93:19-21), SSOs expect that such licensing negotiations will occur and leave such negotiations to the potential licensing parties (Ex. 2838 ("negotiations are left to the parties concerned and are performed outside the ITU"); Ex. 2839 ("no license is implied by the submission of this letter of assurance"); Holleman, 9/3/13 Tr. at 93:19-94:1)), and Microsoft's own witness explained that standards are implemented with the expectation of negotiations for a license from the SEP-holder (DeVaan, 8/27/13 Tr. at 17:15-19). *Second*, the undisputed evidence shows that SEP-holders and would-be licensors themselves expect to negotiate in such cases (Dailey, 8/28/13 Tr. at 57:12-17; Ochs, 8/28/13 Tr. at 97:10-12; Gutierrez, 8/28/13 Tr. at 120:12-16, 183:10-19; Heiner, 8/30/13 Tr. at 170:13-18; Taylor, 9/3/13 Tr. at 81:20-82:16), and that, as Microsoft itself stated, "[t]he negotiation associated with a standards-related patent license typically is no different from any general patent-licensing discussion" (Ex. 2970 at 12).   If any party failed to act according to the reasonable and justified expectations of the parties, it was Microsoft, which did not respond to Motorola's October 21 and 29, 2010 offer letters (Gutierrez, 8/28/13 Tr. at 148:2-4), with Mr. Gutierrez instead forwarding each of the letters to Microsoft's in-house litigation team (*id.* at 142:19-22; *see also* Dkt. 1).

Motorola also conformed with the reasonable expectations of the parties in seeking injunctive relief.  The reasonable expectation of the parties negotiating a patent license is also that,

MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION FOR JUDGMENT AS A MATTER OF LAW - 2
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    if two parties cannot reach an agreement, and the party using the infringing products already has

2    filed a lawsuit, the patent owner will file a lawsuit.  Gutierrez, 8/28/13 Tr. at 186:23-187:2.  Here,

3    Microsoft not only invited Motorola's lawsuit, but expected it, analyzing beforehand the patents

4    on which Motorola might sue.  *Id.* at 187:3-6.   These expectations are not altered by FTC scrutiny

5    of Motorola after Microsoft sought to change the landscape with respect to SEPs by complaining

6    to the FTC in May/June 2012 (Heiner, 8/30/13 Tr. at 148:23-149:7, 149:17-19).  Microsoft itself

7    expressly approved of injunctive relief for SEP infringement in June 2011 (*see* Ex. 2970),

8    confirming that Motorola's actions in October and November 2010 and July 2011 conformed to

9    the reasonable and justified expectations of the parties.

10        B.    <u>Motorola Acted In A Commercially Reasonable Manner</u>

11        Microsoft asserts that Motorola acted in a commercially unreasonable manner because the

12   2.25% rate proposed in the October 2010 offer letters was "wildly excessive" in comparison to the

13   RAND rate and range determined by the Court in April 2013.  Dkt. 902 at 2.  This argument fails.

14   It is well established that the size of the offer alone is not dispositive of the reasonableness of the

15   offer or of whether the offeror has breached a duty of good faith.  *See* Dkt. 716 at 11-12, 13-14

16   (discussing legal authorities); Dkt. 904 at 3; Dkt. 905 at 2-3; Dkt. 908, Final Instruction No. 19.

17   Thus, the size of Motorola's offers and/or the difference between them and the RAND rate and

18   ranges determined by this Court is not dispositive of whether Motorola acted in good faith.

19        The testimony of Microsoft's expert Dr. Murphy likewise does not demonstrate a lack of

20   commercial reasonableness, as that testimony was wholly theoretical and he did not examine the

21   business context or sequence of events in which the offers were made.  Murphy, 8/30/13 Tr. at

22   27:18-21, 27:22-28:3, 64:23-66:4.  An examination of the entire context would lead a reasonable

23   jury to conclude that Motorola's actions were commercially reasonable.

24        The evidence shows that prior to 2007, Motorola and Microsoft worked together to

25   develop smartphones that used Microsoft's Windows mobile operating system.  Dailey, 8/27/13

26   Tr. at 157:18-158:1, 167:4-6.  When Motorola's license to Microsoft's ActiveSync patents expired

MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION
FOR JUDGMENT AS A MATTER OF LAW - 3
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   in 2007, the parties engaged in negotiations for a new license. *Id.* at 158:1-159:17, 161:6-162:22.

2   During those negotiations, Motorola advised Microsoft that it had patents that read on Microsoft's

3   products. *Id.* at 162:3-22.   On October 1, 2010, without prior notice, Microsoft sued Motorola in

4   the ITC, alleging patent infringement by Motorola's Android smartphones.   Gutierrez, 8/28/13 Tr.

5   at 196:4-197:4; Dailey, 8/27/13 Tr. at 176:15-20, 178:25-179:8; Taylor, 9/3/13 Tr. at 75:16-18.

6   Microsoft sought to bar Motorola from importing its Android smartphones into the United States.

7   Dailey, 8/27/13 Tr. at 176:15-20, 177:7-19.   Microsoft also filed a patent infringement action in

8   this Court.  Ex. 7119.  Microsoft sought, among other things, injunctive relief.  *Id*. at 8.  In these

9   actions, Microsoft asserted two ActiveSync patents and seven patents that had not been the subject

10  of prior negotiations.  Dailey, 8/27/13 Tr. at 177:7-22; Gutierrez 8/28/13 Tr. at 193:10-19.

11          After Microsoft sued Motorola (*see, e.g.*, Ex. 7119), Microsoft told Motorola that

12  Microsoft was interested in finding a resolution of the parties' dispute that would cover both

13  parties'  intellectual  property,  and  that  it  was  interested  in  discussing  a  cross-license

14  agreement. Dailey, 8/27/13 Tr. at 179:9-180:1; Gutierrez, 8/28/2013 Tr. at 140:21-141:9.

15  Microsoft invited Motorola to present its patents for discussion.  Dailey, 8/27/2013 Tr. at 179:9-

16  21; Gutierrez, 8/28/13 Tr. at 141:10-14; Taylor, 9/3/13 Tr. at 75:10-76:12.   The parties also

17  scheduled a meeting for October 22, 2010 to discuss a broad patent cross-license.   Dailey,

18  8/27/2013 Tr. at 146:18-147:4, 175:14-19; Gutierrez, 8/28/13 Tr. at 142:15-16.

19          On October 21, 2010, in advance of the parties' scheduled meeting, Motorola sent

20  Microsoft a letter offering to grant Microsoft a worldwide license to Motorola's portfolio of

21  patents and patent applications relating to the IEEE 802.11 standards.  Ex. 1.  On October 29,

22  2010, Motorola sent Microsoft a second letter, which offered to grant Microsoft a worldwide

23  license to Motorola's portfolio of patents and patent applications relating to the ITU-T

24  Recommendation H.264.  Ex. 2.

25          Motorola had to act quickly under litigation pressure from Microsoft because Microsoft's

26  October 1, 2010 lawsuits were a "surprise attack" that Motorola did not anticipate.  Taylor, 9/3/13

MOTOROLA'S  OPPOSITION  TO  MICROSOFT'S  MOTION
FOR JUDGMENT AS A MATTER OF LAW - 4
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   Tr. at 75:16-19.  Motorola simply made an offer to start negotiations.  Dailey, 8/27/13 Tr. at

2   152:1-11, 205:2-17; Taylor, 9/3/13 Tr. at 79:19-80:14; Leonard, 9/3/13 Tr. at 103:25-104:10,

3   157:5-13.  Mr. Gutierrez confirmed that it takes time to review patents.  Gutierrez, 8/29/13 Tr. at

4   18:4-12.  Motorola put its SEPs on the table at its standard rate as an efficient way to respond to

5   Microsoft's demands under the time pressure imposed by Microsoft's lawsuits.  Dailey, 8/27/13

6   Tr. 184:15-185:1; Taylor, 9/3/13 Tr. 81:1-19 (testifying that Motorola had 24,000 nonessential

7   patents to evaluate).  As Microsoft concedes, it would have been difficult for Motorola to

8   determine the value of the patents absent a good faith negotiation. Dkt. 902 at 2.  In this context,

9   Motorola acted in a commercially reasonable manner in making its standard opening offer.

10        Microsoft incorrectly contends that certain information available to Motorola should have

11   informed Motorola's opening offer.  *First*, Microsoft relies solely upon this Court's April 2013

12   order to argue that the patents provide "only a sliver of the overall technology incorporated in the

13   standard" (Dkt. 902 at 3[1]) and fails to cite evidence showing how Motorola could have determined

14   the contribution of its patents to the standard in October 2010 under the time pressure imposed by

15   Microsoft's lawsuits.

16        *Second*, Microsoft ignores that, under this Court's order, the RAND range extended to

17   16.389 cents per unit for H.264 and 19.5 cents per unit for 802.11.  Dkt. 673 at 207 (establishing

18   range up to 16.389 cents for H.264 and up to 19.5 cents per unit for 802.11).

19        *Third*, Microsoft argues (Dkt. 902 at 3) that Motorola could have considered the number of

20   patent holders with 802.11 and H.264 patents who had submitted letters of assurance, but this

21   misses the undisputed point that a mere declaration of essentiality does not mean the patent is

22   actually essential.  *See, e.g.*, Gutierrez, 8/29/13 Tr. at 24:11-14; Dkt. 673 ¶ 334. ("There is no

23   formal process for determining whether a patent is essential to the 802.11 Standard.").  Such a

24   comparison is meaningless because no one knows how many patents ultimately will be found

25   essential.  Moreover, Mr. Taylor specifically explained that Motorola did not have time to conduct

26

---

[1]   Microsoft cites the testimony of Dr. Murphy on this point, but Dr. Murphy has no technical or patent expertise and is not competent to testify on such matters.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1    this analysis before sending the letters.  Taylor, 8/30/13 Tr. at 80:2-5.

2           *Fourth*, Microsoft points to pool rates (Dkt. 902 at 3-4), but provides no evidence that

3    pools are comparable to the terms of any RAND license that might have been negotiated between

4    Motorola and Microsoft.  Pool rates, for instance, do not distinguish between the value of patents

5    in the pool, Glanz, 8/29/13 Tr. at 64:1-11, and give the patent holder licenses to various other

6    patents, *id.* at 79:8-13.

7           *Fifth*, Microsoft points to the InteCap study (Dkt. 902 at 4), but there is no evidence that

8    Mr. Dailey or anyone who worked with him when the offer letters were prepared was aware of the

9    InteCap study at the time.  Dailey, 8/27/13 Tr. 112:18-22.  That study was seven years old at the

10   time, *id.* at 113:4-8, and could not have involved all of the patents relating to the 802.11 standard

11   because the standard is continually changing, Ochs, 8/28/13 Tr. 88:24-89:2.  Microsoft introduced

12   no evidence about the types of patents in the study or the study's relevance to Motorola's offers.

13   The annex of patents attached to Motorola's October 21 letter shows that many of the patents

14   Motorola was offering to license in 2010 had not been filed and/or issued at the time of the 2003

15   InteCap study.  Ex. 1.

16          *Sixth*, Microsoft ignores the fact that Motorola does not stack royalties and thus devices

17   that incorporate both the H.264 and 802.11 standards would be charged only one royalty rate of

18   2.25%.  Taylor, 8/30/13 Tr. at 80:22-25.  To the extent Microsoft was not aware of that practice, it

19   would have learned about it had it entered into good faith negotiations.  *Id.* at 81:1-4.

20          *Finally*, Microsoft neglects to acknowledge that "commercially reasonable" actions allow

21   Motorola to "consider its economic business interests."  *Citri-Lite Co. v. Cott Beverages, Inc.*, 721

22   F. Supp. 2d 912, 926 (E.D. Cal. 2010) (surveying case law nationwide).  Nothing in the RAND

23   commitment required Motorola to make an opening offer in the RAND rate or range and Motorola

24   was entitled to negotiate for the best RAND rate it could receive.

25          C.    Motorola's Actions Did Not Frustrate The Purpose Of The Contracts

26          Contrary to Microsoft's argument (Dkt. 902 at 5-7), it presented no real-world evidence

MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION
FOR JUDGMENT AS A MATTER OF LAW - 6
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

establishing that Motorola acted to hold up Microsoft, thereby frustrating the purpose of the contract.[2]  Dr. Murphy applied only a theoretical approach to examining whether Motorola engaged in hold up, but failed to consider the real world evidence, such as the ongoing business discussions between the parties, the industry custom and practice, or Motorola's subjective intent. Murphy, 8/30/2013 Tr. at 27:18-21-28:3, 64:23-66:4.  Indeed, Dr. Murphy could not opine on whether Motorola even intended to hold up Microsoft by preventing a license deal from being negotiated, as Dr. Murphy did not know if such a result would benefit Microsoft or Motorola. Murphy, 8/30/13 Tr. at 39:21-40:8.   Dr. Leonard testified that if Motorola had been pursuing a hold up strategy, sending the October 2010 offer letters was not a rational way of doing so, as the letters themselves do not give Motorola an advantage without a license agreement.  Leonard, 9/3/13 Tr. at 104:17-107:21.  And if Motorola ended up in litigation, injunctions require a court's approval and may be difficult to obtain, and the court would determine a RAND royalty rate, which does not include a hold up value.  *Id.* at 106:1-6, 139:18-140:7.  Instead, the letters are better explained from an objective economic perspective as a starting point for negotiations.  *Id.* at 106:7-13.

Contrary to Microsoft's contention (Dkt. 902 at 6-7), Motorola's infringement lawsuits are not evidence of hold up, as Microsoft expected and invited Motorola to present its patents and establish their value, including through litigation.  Gutierrez, 8/28/13 Tr. at 142:19-22, 148:2-4, 186:23-187:2, 187:3-6; Taylor, 9/3/13 Tr. at 75:10-76:12; Dailey, 8/27/13 Tr. at 203:19-204:13. Further, Microsoft itself told the FTC in June 2011—seven months after Microsoft filed the current lawsuit—that "Microsoft has never been accused of patent hold-up in this regard, nor has it accused any other company of such behavior."  Ex. 2970 at 7; Heiner, 8/30/13 Tr. at 177:15-19. Microsoft also told the FTC that "[c]oncerns about 'patent hold-up' should not extend to any bi-lateral business disagreement between two companies regarding proposed licensing terms.  These discussions typically pertain to a broader set of questions than just the proposed licensing terms

---

[2]  In addition, one purpose of the RAND commitment is to encourage the best technology by compensating patent holders for their contribution.  Leonard, 9/3/13 Tr. at 135:13-138:15.

MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION
FOR JUDGMENT AS A MATTER OF LAW - 7
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

for essential patent claims reading on a standard."  Ex. 2970 at 2; Heiner, 8/30/13 Tr. at 169:22-170:5.  Microsoft explained that there was a dearth of examples of hold up in the real world, Heiner, 8/30/13 Tr. at 177:9-14, and counseled against a simplified approach that would convert routine business negotiations into hold up situations, *id.* at 174:4-22.

In addition, Microsoft errs in contending (Dkt. 902 at 5) that "the considerable stacking implications of Motorola's demands are readily apparent," for this argument ignores that it is common for patent holders to declare patents essential that turn out not to be essential, Gutierrez, 8/29/13 Tr. at 24:11-14, and Mr. Gutierrez acknowledged that Motorola could not have conducted a royalty-stacking analysis before sending the letters. *Id.* at 17:13-24.

D.     Motorola's Actions Conformed To Industry Custom And Practice

Contrary to Microsoft's argument (Dkt. 902 at 8-9) the undisputed evidence is that Motorola acted in conformity with industry custom and practice by seeking to start licensing negotiations.  Both Motorola witness Mr. Dailey and Microsoft witness Mr. Gutierrez testified that the industry practice for patent licensing, including for SEPs, is to negotiate.  Dailey, 8/27/13 Tr. 185:5-15, 186:1-5, 186:8-16, 187:6-23, 190:9-191:24, 193:19-194:18; Gutierrez, 8/28/13 Tr. at 97:10-12, 183:10-19, 185:1-8, 189:8-14; 8/29/13 Tr. at 21:15-22.  Mr. Dailey testified that the royalty rate, or price term, in a license agreement is only one of many terms in the agreement that the parties negotiate.  Dailey, 8/27/13 Tr. at 186:1-16.  Other terms include the duration of the license, covered products, a potential royalty cap, and defensive suspension provisions.  *Id.* at 151:2-25.  All of these potential terms are typically negotiated, and together determine the value of the agreement and any agreed-upon royalty rate.  The evidence shows that Motorola's actions conformed to industry custom and practice and do not provide any evidence tending to show that Motorola did not act in good faith.

The evidence elicited at trial shows that Motorola made its standard opening offer to Microsoft as part of a negotiation.  Dailey, 8/27/13 Tr. at 192:11-193:3, 197:9-20; Blasius, 8/29/13 Tr. at 107:10-20. Motorola indicated that it was open to licensing a subset of its portfolio (Ex. 1 at

MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION
FOR JUDGMENT AS A MATTER OF LAW - 8
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1; Ex. 2 at 1; Dailey, 8/27/13 Tr. at 126:20-127:14; 194:6-18), and set forth a 20-day limit no

different from the 20-day limit Microsoft itself has included in its offer letters.  Dailey, 8/27/13 Tr.

at 195:10-199:9.  Motorola expected Microsoft to respond, as was the custom and practice of the

industry.  *Id.* at 117:19-24, 200:20-201:6.

Mr. Gutierrez, who was involved in wide-ranging business discussions between Microsoft

and Motorola, testified that he rejects opening offers more than 99% of the time.  Gutierrez,

8/29/13 Tr. at 30:15-18, 33:13-20.  Mr. Gutierrez testified that this negotiation was not typical, but

conceded it was atypical only because Microsoft wanted to vindicate a "broader principle."

Gutierrez, 8/28/13 Tr. at 149:10-150:5.  Motorola could not have anticipated Microsoft's failure to

respond before filing this lawsuit; even Microsoft's expert admitted that "the logical thing to do

would be to make clear that you are going to court."  Murphy, 8/30/13 Tr. at 54:24-55:9.

Microsoft's unsupported arguments do not counsel in favor of a contrary conclusion.

Initially, Microsoft cites testimony from witnesses with no involvement in licensing negotiations

or this negotiation.  *See* DeVaan, 8/27/13 Tr. at 27:4-14, 28:4-14, 34:9-10; Treadwell, 8/27/13 Tr.

at 51:3-6, 53:10-21.  The testimony from Mr. Gutierrez and Mr. Heiner supports the idea that

industry practice is to negotiate and, indeed, negotiations between Motorola and Microsoft

continued beyond the filing of the lawsuits.  Gutierrez, 8/28/13 Tr. at 97:10-12, 183:10-19, 185:1-

8, 189:8-14; 8/29/13 Tr. at 21:15-22; Heiner, 8/30/13 Tr. at 174:12-175:13.  Similarly, the

testimony concerning Motorola's interactions with Marvell indicates that Motorola acted in accord

with industry custom and practice by making an initial offer and then negotiating.  Ochs, 8/28/13

Tr. at 101:5-16, 108:12-109:19, 110:17-111:23.  And, as Microsoft concedes, its complaints to the

FTC regarding Motorola sought "abandon[ment]" of the industry custom and practice (Dkt. 902 at

8) with which Motorola had conformed.  The FTC proceedings involved no "admission by

Motorola Mobility or Google that the law has been violated as alleged in the complaint, or that the

facts as alleged in the complaint, other than the jurisdictional facts, are true."  8/30/13 Tr. at 159:7-

10 (curative instruction).  "[A]llegations are not evidence."  *Maier v. Lovick*, 2010 WL 1849032 at

*4 (W.D. Wash. Mar. 26, 2010).

MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION
FOR JUDGMENT AS A MATTER OF LAW - 9
CASE NO. C10-1823-JLR

1

E.      Motorola Had No Unilateral Discretion Under The RAND Commitments

2          Microsoft further errs (Dkt. 902 at 9-10) in arguing that Motorola had discretion to

3   "formulat[e] its offers to Microsoft" and thus breached its duty of good faith and fair dealing by

4   exercising such discretion.  The "unilateral discretion" factor plainly does not apply here, but

5   rather applies in situations in which one party has unilateral discretion to interpret or set a contract

6   term that is binding and final on all parties without any opportunity for negotiation.  *Cf. Scribner*

7   *v. Worldcom, Inc.*, 249 F.3d 902, 906, 910-11 (9th Cir. 2001) (finding breach of duty of good faith

8   and fair dealing where defendant had discretion to make a unilateral interpretation of contract

9   terms that was "conclusive and binding"); *Craig v. Pillsbury Non-Qualified Pension Plan,* 458

10  F.3d 748 (8th Cir. 2006); *Curtis v. N. Life Ins. Co.*, 147 Wn. App. 1030 (2008) (unpublished

11  opinion).  Here, Motorola had no discretion to unilaterally set the royalty rate in a final contract

12  that was binding on the parties, or to impose any RAND license upon Microsoft if Microsoft

13  remained an unwilling licensee.  To the contrary, Motorola's offers were made to begin a

14  negotiation process and, as this Court previously has held, an opening offer from an SEP holder

15  does not need to be on RAND terms.  Dkt. 335 at 24-25.  Thus, Microsoft's argument regarding

16  Motorola's exercise of its discretion does not apply to the facts in this case.

17         F.      No Evidence In The Record Shows That Motorola Lacked Subjective Good Faith

18         Microsoft cites no evidence (Dkt. 902 at 10-11) showing that Motorola lacked good faith

19  subjective intent in sending the opening offer letters.  It cannot.  Microsoft's own expert, Dr.

20  Murphy, admitted that he was not opining on Motorola's subjective intent and does not impute

21  any nefarious intent or motive to Motorola.   Murphy, 8/30/13 Tr. 28:4-15, 28:16-22.   The

22  undisputed testimony at trial showed that Mr. Dailey sent the letters with the expectation that it

23  was an initial offer and that Motorola would negotiate with Microsoft to learn more information

24  about Microsoft's business, products, and use of the patents in order to reach a final agreement.

25  Dailey, 8/27/13 Tr. at 185:5-15, 186:1-5, 186:8-16, 187:6-23, 190:9-191:24, 193:19-194:18;

26  Taylor, 9/3/13 Tr. at 77:15-23, 80:21-81:8, 81:20-82:16.  Motorola's goal was to negotiate to

MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION
FOR JUDGMENT AS A MATTER OF LAW - 10
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  reach patent peace.  Dailey, 8/27/13 Tr. at 186:18-189:24.  Motorola made its standard opening

2  offer of 2.25% based on its long history of starting with such an offer for licensing its cellular

3  portfolio.  *Id.* at 192:11-193:3, 197:9-20; Blasius, 8/29/13 Tr. at 107:10-20; Taylor, 9/3/13 Tr. at

4  77:24-78:11.

5      Mr. Gutierrez, Microsoft's head of licensing, admitted that royalty stacking is not a factor

6  that Motorola could have considered easily prior to sending the letters, because in many cases

7  companies declare patents to be essential that are not really essential.  Gutierrez, 8/29/13 Tr.

8  17:13-24.  It is undisputed that, when Motorola made its 2.25% opening offers, Motorola did not

9  have the information that this Court considered in its April 2013 order after a five-day trial and

10 extensive discovery. Leonard, 9/3/13 Tr. at 139:7-13; 138:16-139:6; 155:10-13.  The InteCap

11 study was not known to Mr. Dailey at the time and no evidence indicates that it provides a useful

12 point of comparison today or in 2010.

13     Further, Microsoft has no basis in the evidence for its argument (Dkt. 902 at 11) that

14 Motorola urged a 2.25% royalty rate at trial and beyond.  Dr. Murphy testified only that Motorola

15 requested a 2.25% rate from Marvell, but those negotiations are ongoing and the current terms

16 proposed are a royalty-free cross license.  Ochs, 8/28/13 Tr. at 108:12-109:19.  The testimony

17 from Mr. Gutierrez that Microsoft cites ignores the clarification elicited on cross-examination that

18 Motorola proposed a cap on the royalty rates that would have reduced the effective rate below

19 2.25%.  Gutierrez, 8/29/13 Tr. at 29:8-30:9.

20     For all these reasons, Microsoft fails to show that no reasonable jury could find that

21 Motorola did not breach the duty of good faith and fair dealing.

22 **III.  MOTOROLA DID NOT BREACH THE EXPRESS TERMS OF THE CONTRACTS**

23     A.  This Court Already Has Ruled That Motorola Did Not Breach The Express Terms

24     Microsoft argues that it is entitled to judgment as a matter of law that Motorola directly

25 breached its RAND obligations.  Dkt. 902 at 11-19, 22-23.  The Court, however, already rejected

26 that theory, holding that this case "presents a question not of direct breach of contract but of

MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION
FOR JUDGMENT AS A MATTER OF LAW - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   breach of the duty of good faith and fair dealing," Dkt. 843 at 23, and that "Microsoft's claim is a

2   claim for breach of the duty of good faith and fair dealing, and the court will treat it as such going

3   forward," *id*. at 24.  Microsoft cannot rely now on a "direct breach" theory the Court has rejected.

4          That Microsoft's claims of direct breach are no longer in the case is confirmed by the Final

5   Jury Instructions.  The Court's Final Jury Instructions included instructions for a claim of breach

6   of the duty of good faith and fair dealing, but no instructions relating to direct breach of contract.

7   *See*, *e.g.* Dkt. 908, Final Instructions No. 14, 16, 19.  Microsoft is well aware of this, having

8   objected to one instruction "for suggesting Microsoft's only claim is for breach of the duty of

9   good faith and fair dealing.  The opening sentence should begin 'One of Microsoft's claims in this

10  case is that Motorola's . . . .'"  Dkt. 900 at 4 (objecting to Instruction No. 19); *see also* 9/3/13 Tr.

11  at 186 (objecting to Instruction No. 14).

12         Even if the direct breach of contract claims were still in the case, judgment as a matter of

13  law would be inappropriate because Microsoft failed to prove those claims at trial.  As the Court

14  noted in its summary judgment order, "a party alleging a direct breach of contract must be able to

15  point to a specific provision of the contract that has been breached."  Dkt. 843 at 21 (citing *Elliot*

16  *Bay Seafoods v. Port of Seattle*, 98 P.3d 491, 494 (Wash. Ct. App. 2004)).  Microsoft *did not even*

17  *introduce the contracts into evidence*, let alone point to any specific provisions that Motorola

18  allegedly breached.  Even after Motorola introduced the contracts into evidence, Microsoft failed

19  to identify any such provisions.  As a result, Microsoft's direct breach claims must fail.

20         B.      Many Of Microsoft's Theories Of Breach Are New And Should Be Disregarded

21         As it did during trial, Microsoft presents new theories of breach in its Motion that were not

22  disclosed during discovery or the Pretrial Order.  Specifically, Microsoft contends that Motorola

23  breached its contractual obligations by: continuing to pursue lawsuits in which it sought injunctive

24  relief (Dkt. 902 at 12-13, 14); rejecting Microsoft's December 2011 *Orange Book* offer, which

25  was higher than the RAND rate determined by this Court in April 2013 (*id*. at 14); and not making

26  its patents available on the terms this Court determined to be RAND in its April 2013 Order (*id*. at

    19.)  None of these theories was disclosed in Microsoft's interrogatory responses as the basis for

MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION
FOR JUDGMENT AS A MATTER OF LAW - 12
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Microsoft's claim of breach.  *See* Ex. A, 5/21/13 Supp. Resp. Interrogatory No. 3.  Nor were these theories disclosed in Microsoft's portions of the Joint Proposed Pretrial Order.  *See* Dkt. 803 at 2-4, 7-10.  To the contrary, Microsoft's theories of breach were limited to: Motorola sending the October 21 and 29, 2010 offer letters, Motorola seeking injunctive relief for infringement of its SEPs, Motorola failing to enter into a license with Marvell, and the combination of the above.  Ex. A; *see also* Dkt. 791 at 50 (Microsoft's Proposed Alternative to Final Instruction No. 17, summarizing Microsoft's breach claims); Dkt. 908 (Final Instruction No. 14); Dkt. 900 at 1-2 (Microsoft's Exception to Final Instruction No. 14, in which Microsoft fails to argue that additional theories of breach should be added to the instruction).

Microsoft contends that Motorola raised the issue of Microsoft presenting new theories of breach "for the first time" in Motorola's exceptions to jury instructions (Dkt. 902 at 12), implying that Motorola is improperly introducing new arguments.  That contention is baseless.  Motorola had no reason to object to Microsoft introducing evidence beyond the scope of its discovery responses and the Pretrial Order until Microsoft actually did so.  Microsoft did not do so until trial.  Indeed, it was not clear that Microsoft was going to argue that Motorola did not withdraw its claims seeking injunctive relief following the FTC investigation until Mr. Heiner and Mr. Killough testified (inaccurately) about the FTC investigation on the fifth and sixth days of trial.  *See* Heiner, 8/30/13 Tr. at 149:17-25, 151:23-154:3; Killough, 9/3/13 Tr. at 11:16-18:10.

Microsoft further argues that it disclosed during discovery that "seeking" injunctive relief was a breach, which it argues includes continuing to pursue injunctive relief.  Dkt. 902 at 12.  But this unfairly broadens the conduct that was actually within the scope of discovery.  Mr. Killough testified at trial about certain events (such as the anti-suit injunction, the Ninth Circuit appeal, and the FTC's January 2013 request for public comment[3]) and whether Motorola continued to seek

---

[3]   Mr. Killough incorrectly referred to this as the FTC's Consent Decree.  It was not.  The final Consent Decree was not issued until July 2013.  Dkt. 802.

MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION
FOR JUDGMENT AS A MATTER OF LAW - 13
CASE NO. C10-1823-JLR

1  injunctive relief after each of those events.  Killough, 9/3/13 Tr. at 11:16-18:10.[4]  None of this

2  appears in Microsoft's discovery responses or the Pretrial Order.  The notion that Motorola was

3  obligated under the purported RAND contracts to drop its claims for injunctive relief after they

4  were filed is a new theory and should be disregarded.

5           C.     <u>No Reasonable Jury Could Find Motorola Breached Its RAND Commitments</u>

6          Even assuming Microsoft's arguments regarding a direct breach of contract are

7  permissible, no reasonable jury could find that Motorola breached its RAND commitments.

8               1.    <u>No Reasonable Jury Could Find That Motorola Breached Its RAND Commitments By Seeking Injunctions On Its Standard Essential Patents</u>

9

10          As discussed *supra* in Section III.A, this Court rejected Microsoft's theory that Motorola

11  directly breached its RAND commitments by seeking injunctions on its SEPs.  Nothing "within

12  the four corners of the RAND licensing contracts, independent of the duty of good faith and fair

13  dealing" prevents Motorola from seeking injunctions.  Dkt. 902 at 15.  As the Court held, "[t]here

14  is no provision in Motorola's contracts with the IEEE and ITU expressly stating that Motorola is

15  prohibited from seeking injunctive relief against SEP implementers.  Neither party argues that

16  such a provision exists."  Dkt. 843 at 22-23.  Microsoft did not introduce any evidence at trial that

17  such a provision exists, and Microsoft therefore cannot prove that Motorola breached a specific

18  contract term.  A plaintiff may not bring a breach of contract action when it is unable to point to a

19  provision in the contract that has been breached.  *See*, *e.g.*, *Elliott Bay Seafoods*, 98 P.3d at 494.

20          The right to seek injunctive relief in U.S. district courts arises under 35 U.S.C. § 283,

21  which states that "[t]he several courts having jurisdiction of cases under this title may grant

22  injunctions in accordance with the principles of equity to prevent the violation of any right secured

23  by patent, on such terms as the court deems reasonable."  Patent owners also have the right to seek

24  exclusion orders in the ITC under 19 U.S.C. § 1337(d), which states in part that, "[i]f the

25

26  _____

[4]    It is also worth noting that during discovery, Mr. Killough was disclosed as having knowledge of Microsoft's attorneys' fees.  Ex. B - 4/12/13 Supp. Initial Disclosures, at 4.

MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION
FOR JUDGMENT AS A MATTER OF LAW - 14
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   Commission determines, as a result of an investigation under this section, that there is a violation

2   of this section, it shall direct that the articles concerned, imported by any person violating the

3   provision of this section, be excluded from entry into the United States."  When such statutory

4   rights exist, parties to a contract must explicitly state that they are contracting away these statutory

5   rights in order for the rights to be waived.  *See*, *e.g.*, *Metro. Edison Co. v. NLRB*, 460 U.S. 693,

6   707-709 (1983) (The Court "will not infer from a general contractual provision that the parties

7   intended to waive a statutorily protected right unless the undertaking is explicitly stated. More

8   succinctly, the waiver must be clear and unmistakable.").  Motorola's purported contracts with

9   IEEE and the ITU contain no such statements.

10        Contrary to Microsoft's contention (Dkt. 902 at 16), the Ninth Circuit did *not* "recognize[]

11  that Motorola's RAND licensing commitments were not consistent with pursuing injunctions," but

12  rather found only that, for purposes of reviewing the anti-suit injunction, agreeing to license

13  patents on RAND terms is "at least arguably" an agreement not to seek an injunction.  *Microsoft*

14  *Corp. v. Motorola, Inc.*, 696 F.3d 872, 884 (9th Cir. 2012).  This is far from a holding that SEP

15  holders are barred from ever seeking injunctive relief.  Microsoft similarly mischaracterizes Judge

16  Posner's opinion in *Apple v. Motorola* by saying that he "agrees that RAND licensing

17  commitments waive injunctive relief."  Dkt. 902 at 16.  On the contrary, Judge Posner reserved the

18  question of whether such an injunction would be permitted in a case where the infringer is an

19  unwilling licensee.  Judge Posner found that, because Motorola had committed to license its patent

20  on FRAND terms, he was not sure he would be justified in issuing an injunction "unless Apple

21  refuses to pay a royalty that meets the FRAND requirement."  *Apple, Inc. v. Motorola, Inc.*, 869 F.

22  Supp. 2d 901, 913-14 (N.D. Ill. 2012).

23        Microsoft's argument that, "[i]f Motorola's view were accepted . . . it could file lawsuits

24  seeking injunctions against *every* implementer of the 802.11 or H.264 standards" and "could

25  obtain those injunctions" ignores the crucial point that *Motorola* cannot independently obtain an

26

---

Microsoft did not disclose during fact discovery that Mr. Killough would testify beyond that limited subject matter.

MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION
FOR JUDGMENT AS A MATTER OF LAW - 15
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1   injunction.  A court has to decide, on the facts of the case in front of it, that an injunction is

2   warranted.  Treadwell, 8/27/13 Tr. at 52:3-13; Leonard, 9/3/13 Tr. at 107:12-20.

3        Microsoft argues that the conclusion is "clear" that "pursuing injunctions breaches the

4   RAND commitment" when the "SEP owner seeks injunctions *after* the commencement of

5   litigation that will determine the RAND rate."  Dkt. 902 at 11.  Microsoft cites no authority for

6   this pronouncement.  Nor can it.  In deciding that an injunction was unavailable in this case, this

7   Court held that the dismissal was "without prejudice," was based "on the specific circumstances

8   and rulings that have developed in this litigation," and if, "in the future, circumstances change in a

9   manner to warrant injunctive relief, Motorola may at that time seek such relief."  Dkt. 607 at 15.

10       Microsoft also alleges that Motorola directly breached its RAND commitment by seeking

11  injunctive relief before attempting to offer a license on RAND terms.  Dkt. 902 at 13-14.  This

12  argument, which Microsoft improperly offers for the first time in its Motion, has no support in the

13  trial record or in case law.  The *Realtek* court held that the defendants breached their contract with

14  IEEE by filing for an exclusion order in the ITC *before* offering Realtek a license.  *Realtek*

15  *Semiconductor Corp. v. LSI Corp.*, -- F. Supp. 2d --, 2013 WL 2181717, at *7 (N.D. Cal. May 20,

16  2013).  Microsoft's attempt to argue that the *Realtek* decision should be expanded to apply to this

17  situation has no basis; the *Realtek* court specifically stated that its "breach of contract holding is

18  limited to the situation here, where defendants did not even attempt to offer a license, on 'RAND'

19  terms or otherwise, until after seeking injunctive relief."  *Id*.[5]  It is undisputed that Motorola

20  attempted to conclude a license with Microsoft; Microsoft filed this lawsuit rather than responding

21  to Motorola's offer.  Gutierrez, 8/28/13 Tr. at 148:2-4; Killough, 9/3/13 Tr. at 11:19-12:1.

22  Motorola did not make "demands" that "no reasonable company could have accepted."  Dkt. 902

23  at 14.  Instead, Motorola sent offer letters and expected Microsoft to engage in negotiations to

24  reach a license deal.  Dailey, 8/27/13 Tr. at 117:19-24; 186:1-187:5; 190:9-20; 191:15-24; 201:1-

25

26       [5]   The case cited by Microsoft is inapposite as it analyzes patent misuse and does not discuss
     licensing on RAND terms.  *WL Gore & Assocs. v. Carlisle Corp.*, 529 F.2d 614, 622-23 (3d Cir.
     1976).

MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION
FOR JUDGMENT AS A MATTER OF LAW - 16
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    6.   Motorola's expectation that Microsoft would engage in the standard industry custom and

2    practice by negotiating cannot constitute a breach of contract.

3                 2.     <u>No Reasonable Jury Could Find That Microsoft Was A Willing Licensee At</u>

                               <u>The Time Motorola Filed For Injunctions</u>

4

5        Contrary to Microsoft's arguments (Dkt. 902 at 11-17), Motorola breached no RAND

6    commitment by seeking injunctions at a time when Microsoft had failed to demonstrate that it was

7    willing to take a RAND license to Motorola's essential patents.  Microsoft presented no evidence

8    that it informed Motorola that it wanted or needed a license to Motorola's SEPs prior to filing suit.

9    Microsoft never committed to taking a RAND license in its complaint or its amended complaint

10   and instead claimed that Motorola's patents were invalid, non-essential, and not infringed.  Exs.

11   7173, 7241.   Indeed, Mr. Treadwell testified that Microsoft did not concede that it infringed

12   Motorola's standard-essential patents until 2012.  Treadwell, 8/27/13 Tr. at 55:11-18.  Microsoft's

13   claim that its complaint "made clear that despite uncertainties over the validity and essentiality of

14   Motorola's patents, Microsoft would accept a portfolio license to resolve the issue" (Dkt. 902 at

15   12) is false.  And as the Court found in May 2012, Microsoft had only "recently" stated that it

16   would be willing to accept a license on RAND terms.  Dkt. 381 at 16 n.12.

17        Microsoft's reliance (Dkt. 902 at 11) on a single paragraph in its complaint requesting a

18   judicial accounting is unavailing to establish that it was supposedly a willing licensee.  Microsoft

19   raised this paragraph for the first time at trial; it appears nowhere in its discovery responses,

20   summary judgment briefing or the Pretrial Order, and it is therefore improper to raise it now.

21   Moreover, even if it were properly considered now, the paragraph asking for a judicial accounting

22   fails to overcome the Court's finding (Dkt. 381 at 16 n.12) that the complaint nowhere expresses

23   Microsoft's willingness to enter into a RAND license with Motorola.  *First*, Microsoft did not

24   request a judicial accounting in its prayer for relief.  Dkt. 53 at 24-25.  *Second*, a judicial

25   accounting is an equitable remedy and is not available here, where Microsoft had pleaded a claim

26   for breach of contract seeking damages for breach and thus had a legal remedy.  1A C.J.S.

MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION
FOR JUDGMENT AS A MATTER OF LAW - 17
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Accounting § 24.  *Third*, it would be *Motorola* that could sue for a judicial accounting for past infringement damages, not Microsoft.  Microsoft easily could have included in its complaint a request to permit it to take a RAND license, or expressed its willingness to do so in other ways, but Microsoft failed to do so.  Gutierrez, 8/28/13 Tr. at 168:12-15.

The evidence showed that it is sometimes necessary for an SEP holder to seek an injunction when an infringer refuses to accept a license on RAND terms.  Microsoft's own June 2011 letter to the FTC argued that any uniform rule against injunctive relief for SEP holders "may reduce any incentives that implementers might have to engage in good faith negotiations with the patent holder."  Ex. 2970 at 13.  Motorola sought injunctive relief only after Microsoft refused to negotiate and instead filed this lawsuit with no indication that it would accept a license on RAND terms.[6]

Unable to cite evidence that it was a willing licensee when Motorola filed its actions seeking injunctions, Microsoft relies on documents *that were never introduced as evidence at trial* to attempt to bolster its argument that Motorola's actions were improper.  Dkt. 902 at 21-22.  No jury could have based its decision on evidence that was properly excluded at trial, and Microsoft's reliance on such evidence in its motion underscores the lack of *actual* evidence supporting its position.

Even if the documents cited by Microsoft were admissible and admitted at trial (which they were not), they do not support Microsoft's position that an infringing party may contest validity, infringement, and essentiality of patents while at the same time claiming the benefits of their standard-essential status by claiming no injunctive relief is available.  Microsoft cites to Exhibit 6076 (which was ***not*** admitted at trial), which is a preliminary view of the European Commission in a case involving Apple and ETSI, not Motorola, IEEE or ITU.  This document is completely irrelevant.  The same is true of Exhibit 6089 (which, again, was ***not*** admitted at trial),

---

[6]   Although Mr. Killough claimed that invalidity and non-infringement must be asserted in patent cases (Dkt. 902 at 22), Microsoft's assertions of invalidity and non-infringement of Motorola's SEPs rebuts Microsoft's arguments that it was always willing to take a license.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

which is merely a complaint by the FTC for an investigation that was *instigated by Microsoft* and does not indicate any findings or conclusions by the FTC.  Heiner, 8/30/13 Tr. at 148:1-7.  In fact, the FTC ultimately signed an agreement with Motorola in which Motorola did not admit any wrongdoing in its actions of seeking injunctions (8/30/13 Tr, at 159:5-10 (curative instruction)); in addition, Motorola was not required to withdraw is pending actions seeking injunctive relief.  Further, these documents are from 2013, and therefore have no bearing on Motorola's actions in 2010, 2011 or 2012.

> 3.   Motorola Did Not Breach Any Contract By Rejecting Microsoft's *Orange Book* Offer And Pursuing Injunctions

No reasonable jury could find that Motorola breached its contract by rejecting Microsoft's *Orange Book* offer and then "continu[ing] to pursue an injunction in Germany" until April 2012.  Dkt. 902 at 14.  Initially, this theory of breach should be rejected because it was not disclosed prior to trial.  *See* Section II.B.  Additionally, there is no express term of the IEEE contract precluding Motorola from seeking injunctive relief and therefore no breach of contract.  *See* Section III.A.

Even assuming Microsoft could pursue this theory, no reasonable jury could conclude that Motorola breached its contract by rejecting Microsoft's December 2011 *Orange Book* offer.  *See* Haedicke, 8/30/13 Tr. at 200:18-201:18.  Although the rate offered by Microsoft was higher than the RAND rate ultimately determined by this Court in April 2013 (*id.* at 201:13-16), Microsoft presented no evidence that the latter was known to Motorola at the time of the rejection.  It was not.  Moreover, the German court considered Motorola's rejection and determined that it was not unreasonable under European antitrust law that applies requirements of reasonableness and non-discrimination.  *Id.* at 201:19-22.  Therefore, under German law, it was permissible for Motorola to continue to pursue an injunction in Germany.

Microsoft cites to *Realtek* in support of its argument that a finding of breach is appropriate.  *Realtek* is distinguishable however.  There, the defendant filed a patent infringement lawsuit in the

MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION
FOR JUDGMENT AS A MATTER OF LAW - 19
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    ITC before even attempting to offer a RAND license to its patents.  2013 WL 2181717, at *2.

2    Here, Motorola offered to license its patent portfolios to Microsoft and Microsoft filed suit instead

3    of responding.

4              4.        Motorola Did Not Breach Any Contract With The IEEE When Making An
                        Opening Offer To License Its 802.11 Essential Patents
5

6              Contrary to Microsoft's assertion, no reasonable jury could find that Motorola's October

7    21, 2010 offer letter breached Motorola's purported contract with the IEEE because the offered

8    royalty rate was not a "nominal, competitive cost."  Dkt. 902 at 17-18.  Initially, Microsoft did not

9    even introduce as evidence in its case-in-chief the letter of assurance or the IEEE Operations

10   Manual.  Thus, it cannot argue now that it established a breach of the terms therein.

11             Microsoft bases its argument on the Court's ruling that "the requirement to license at

12   nominal competitive costs was part of the RAND commitment at the time."  Dkt. 673 at ¶ 48.

13   Motorola submitted its letter of assurance to the IEEE on the 802.11 standard in March 1994.  Ex.

14   2839 at MOTM_WASH1823_0000004.  At that time, the IEEE Operations Manual included

15   language requiring patent holders to submit a draft license "assur[ing] that the technology will be

16   made available at nominal competitive costs to all who seek to use it for compliance with an

17   incorporated IEEE standard."  Ex. 1130 at 19 (§ 6.3.2).  But, it also states in multiple passages that

18   a patent must be accessible on "nondiscriminatory" terms and for a "reasonable" cost.  *Id.* at 19 (§

19   6.3.1), 20 (§ 6.3.4); Holleman, 9/3/13 Tr. at 97:6-13 ("both of them are in this document.")

20   Motorola's March 1994 letter of assurance states that Motorola will make its patents available on

21   "a non-discriminatory basis offering fair and commercially reasonable terms." *See* Ex. 2839 at

22   MOTM_WASH1823_0000004.  The Court's instruction regarding the terms of the purported

23   IEEE contract in the Final Jury Instructions is consistent: "Motorola's contract with the IEEE

24   required Motorola to grant Microsoft a license. . . under reasonable rates, with reasonable terms

25   and conditions demonstrably free of any unfair discrimination. . . reasonably and non-

26   discriminatory ('RAND') commitments."  Dkt. 908, Jury Instruction No. 17.

MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION
FOR JUDGMENT AS A MATTER OF LAW - 20
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Microsoft's argument that Motorola breached its obligation to the IEEE by failing to offer a license at "nominal competitive costs" in its October 21, 2010 letter also ignores that the commitment discussed by the letter of assurance and the IEEE Operations Manual is a commitment *to license* on particular terms, not a commitment to make an opening offer on particular terms. As the Court instructed: "[i]nitial offers in a RAND licensing negotiations do not need to be on RAND terms." Dkt. 908, Jury Instruction No. 19. Indeed, SSO policies and procedures, as well as the letters of assurance, are silent on specific terms of licenses and negotiations. *See* Holleman, 9/3/13 Tr. at 92:6-12; Dkt. 908 at 24 ("[T]he specific terms of the license are left to the parties.") Similarly, Microsoft's argument merely compares the size of Motorola's offer to the cost of chips. But, as this Court has found and instructed the jury: "the size of the offer alone is not exclusively dispositive of whether Motorola has breached its duty of good faith and fair dealing." Dkt. 908, Jury Instruction No. 19; *see also* Dkt. 843 at 10-14; *see also* Dkt. 716 at 11-14; Dkt. 757 at 9-10.[7] Based on the context in which the offer letter was sent, no reasonable jury could find that Motorola breached a contract with the IEEE by failing to make an initial offer on "nominal, competitive costs."

5.   <u>Motorola Did Not Breach Any Contract By Failing To Make Licenses Available On RAND Terms</u>

No reasonable jury could find that Motorola breached the purported contracts by not offering to license its 802.11 and H.264 SEP portfolios at the rates set forth in this Court's April 19, 2013 Findings of Fact and Conclusions of Law. *See* Dkt. 902 at 19. Initially, this theory of breach should be rejected because it was not disclosed prior to trial. *See* Section III.B. Nowhere in Microsoft's discovery responses or portions of the Pretrial Order does Microsoft disclose that

---

[7]   Microsoft's reliance on *Cummings* to define nominal competitive costs as "trifling" is misplaced. Dkt. 902 at 18. The Ninth Circuit does not define nominal competitive costs in *Cummings*, and certainly does not do so within the context of a commitment to license on RAND terms made to the IEEE. *See Cummings v. Connell*, 402 F.3d 936 (9th Cir. 2005). Rather, *Cummings* addresses whether each class member is entitled to nominal damages, and has no bearing on determining appropriate nominal competitive costs between Motorola and Microsoft. *Id.* at 943-44.

MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION
FOR JUDGMENT AS A MATTER OF LAW - 21
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1   Motorola's conduct between April 19, 2013 and trial was at issue.  Further, no reasonable jury

2   could find that Motorola breached its contract based upon licensing offers occurring after

3   Microsoft initiated this litigation.  Once the case was filed, the parallel litigation and litigation

4   strategy may have affected subsequent negotiations.  Motorola's failure to offer a license at

5   royalty rates that are the subject of a non-final order cannot be a breach.

6           6.      Motorola Did Not Breach The Contract By Making "Blatantly
                    Unreasonable" Offers

7           Contrary to Microsoft's argument (Dkt. 902 at 22-23), no reasonable jury could find that

8   Motorola breached its contracts by making "blatantly unreasonable" license offers.  *First*,

9   Microsoft contends that the Court already ruled and "the parties never disputed" that blatantly

10  unreasonable offers "always" violate the duty of good faith and fair dealing.  Dkt. 902 at 22 (citing

11  Dkt. 335 at 25).  Tellingly, although Microsoft has made this argument routinely in briefs, it has

12  never cited where Motorola purportedly failed to dispute this.  It cannot.  Motorola never

13  conceded that blatantly unreasonable offers alone violate the duty of good faith and fair dealing.

14  To the contrary, in February 13, 2012, Mr. Jenner argued that the question of whether a royalty is

15  reasonable and non-discriminatory is fact-intensive.  2/13/12 Hr'g Tr. at 9:14-10:6.

16          *Second*, the Court has not ruled that blatantly unreasonable offers always violate the duty

17  of good faith and fair dealing.  Nowhere in the Final Jury Instructions (Dkt. 908) or August 12,

18  2013 summary judgment order does the Court state that to be the law.  *See* Dkt. 843 at 10-14.  It is

19  not.  *Id.* (discussing standard for good faith and fair dealing).  Microsoft's argument to the

20  contrary should be rejected.

21          *Finally*, Microsoft's argument focuses exclusively on comparing the royalty rates proposed

22  in the October 21 and 29, 2010 offer letters to the Court's RAND rate.  Dkt. 902 at 23.  The Court,

23  however, correctly instructed the jury that "the size of the offer alone is not exclusively dispositive

24  of whether Motorola has breached its duty of good faith and fair dealing."  Dkt. 908 (Jury

25  Instruction No. 19); *see also* Dkt. 843 at 10-14; Dkt. 716 at 11-14; Dkt. 757 at 9-10.  No

26  reasonable jury could conclude that the October 2010 offer letters, considered in the full context in

MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION
FOR JUDGMENT AS A MATTER OF LAW - 22
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   which they were sent (*see* Section II.B), breached the duty of good faith and fair dealing.

2   **IV.   A REASONABLE JURY WOULD FIND THAT ORANGE BOOK PROCEDURES**
3   **ALLOWED MICROSOFT TO AVOID ANY GERMAN INJUNCTION**

4         Contrary to Microsoft's assertion (Dkt. 902 at 19-21), the evidence shows that *Orange*

5   *Book* procedures negated the casual link between Motorola seeking injunctions and Microsoft's

6   decision to relocate its distribution facility, and support Motorola's defense of failure to mitigate

7   damages.  Professor Haedicke testified, without contradiction as Microsoft withdrew its German

8   law expert at trial, that if Microsoft had chosen the "Road B" option in the *Orange Book*

9   procedure, Microsoft could have avoided any German injunction.  Haedicke, 8/30/13 Tr. at

10  199:25-200:7; 203:16-204:1.  Instead, Microsoft chose "Road A," which is risky and very difficult

11  to use to avoid an injunction.  *Id.* at 199:14-24; 201:8-12.  This expert testimony was un-rebutted.

12  A reasonable jury could find that Motorola's actions did not cause Microsoft to move its

13  distribution facility; Microsoft chose to do so despite the option to avoid an injunction.

14        Professor Haedicke's testimony also demonstrated that Microsoft could have mitigated its

15  damages and avoided the costs of moving its distribution facility.  That Professor Haedicke could

16  not pinpoint the amount Microsoft would have needed to put into escrow or what license rate the

17  German court would have set is irrelevant.  The amount in escrow, if in excess of the rate the court

18  ultimately sets, is returned to the licensee.  *Id.* at 220:12-17.  The German court would have set a

19  rate that was reasonable after hearing the evidence.  *Id.* at 199:2-11.  If Microsoft wanted to take a

20  license on reasonable terms, it could have chosen "Road B," received a license, and avoided the

21  $23,748,854 in costs it claimed from moving its distribution facility.

22  **V.   MOTOROLA SOLUTIONS IS NOT LIABLE FOR ANY DAMAGES RESULTING**
23  **FROM THE GERMAN ACTION**

24        Contrary to Microsoft's argument (Dkt. 902 at 23-24), no reasonable jury could find that

25  Motorola Solutions is liable for any alleged damages associated with Motorola Mobility's

26  subsidiary, General Instrument Corp., having filed suit in Germany and seeking injunctive relief

MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION
FOR JUDGMENT AS A MATTER OF LAW - 23
CASE NO. C10-1823-JLR

(among other relief) there.  Motorola Solutions is not a party to that litigation.  Killough, 9/3/2013 Tr. at 12:15-21.  Nor is there evidence that Motorola Solutions owns the H.264 patents asserted against Microsoft in Germany.  It does not.  That the initial conduct of sending the offers letters relates to all three entities because they were one entity at the time does not mean that the July 2011 litigation that General Instrument Corp. filed in Germany six months after Motorola Mobility spun off from Motorola Solutions (*see* Dkt. 908, Jury Instruction No. 10, Stipulated Fact Nos. 2-5) relates to all three entities.

Microsoft turns the burden of proof on its head and argues that Motorola waived the right to argue that Motorola Solutions was not a party to the German litigation.  As plaintiff, it is Microsoft's burden to prove every element of its claim, including that each defendant breached the contracts at issue.  Microsoft failed to do so.[8]  Microsoft presented no evidence that Motorola Solutions was involved in the German litigation and therefore no reasonable jury could find that Motorola Solutions is liable for the damages flowing from that conduct.

## CONCLUSION

For the foregoing reasons, this Court should deny Microsoft's Rule 50(a)(1) motion for judgment as a matter of law.

DATED this 13th day of September, 2013.

Respectfully submitted,

SUMMIT LAW GROUP PLLC

By */s/ Ralph H. Palumbo*
By */s/ Philip S. McCune*
        Ralph H. Palumbo, WSBA #04751

---

[8]    That this Court defined Motorola collectively in the Preliminary Jury Instructions does not constitute waiver by Motorola.  Motorola advocated that the three entities be clearly delineated. *See e.g.*, Dkt. 791 at 39 (Motorola's Proposed Preliminary Instruction No. 4; *id.* at 74-76 (Motorola's Alternative to Proposed Final Instruction No. 18).  The Court made this clear in the Final Jury Instructions and Verdict Form.  Dkt. 908 (Final Instruction No. 24; Dkt. 909 (Verdict Form).  Similarly, that in the November 2012 trial, the parties defined Motorola as all three entities is irrelevant because the only issue being decided at the time was the appropriate RAND rate and range.

MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION
FOR JUDGMENT AS A MATTER OF LAW - 24
CASE NO. C10-1823-JLR

Philip S. McCune, WSBA #21081
ralphp@summitlaw.com
philm@summitlaw.com

By /s/ Thomas V.  Miller
  Thomas V. Miller
  MOTOROLA MOBILITY LLC
  600 North U.S. Highway 45
  Libertyville, IL  60048-1286
  (847) 523-2162

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By /s/ Kathleen M. Sullivan
  Kathleen M. Sullivan, NY #1804624
  51 Madison Ave., 22nd Floor
  New York, NY 10010
  (212) 849-7000
  kathleensullivan@quinnemanuel.com

By /s/ Brian C. Cannon
  Brian C. Cannon, CA #193071
  555 Twin Dolphin Drive, 5th Floor
  Redwood Shores, CA 94065
  (650) 801-5000
  briancannon@quinnemanuel.com

By /s/ William C. Price
  William C. Price, CA #108542
  865 S. Figueroa Street, 10th Floor
  Los Angeles, CA 90017
  (213) 443-3000
  williamprice@quinnemanuel.com

**Attorneys for Motorola Solutions, Inc.,
Motorola Mobility LLC and General
Instrument Corp.**

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Arthur W. Harrigan, Jr., Esq.
Christopher T. Wion, Esq.
Shane P. Cramer, Esq.
Calfo Harrigan Leyh & Eakes LLP
*arthurh@calfoharrigan.com*
*chrisw@calfoharrigan.com*
*shanec@calfoharrigan.com*

Richard A. Cederoth, Esq.
Brian R. Nester, Esq.
David T. Pritikin, Esq.
Douglas I. Lewis, Esq.
John W. McBride, Esq.
William H. Baumgartner, Jr., Esq.
David C. Giardina, Esq.
Carter G. Phillips, Esq.
Constantine L. Trela, Jr., Esq.
Ellen S. Robbins, Esq.
Nathaniel C. Love, Esq.
Sidley Austin LLP
*rcederoth@sidley.com*
*bnester@sidley.com*
*dpritikin@sidley.com*
*dilewis@sidley.com*
*jwmcbride@sidley.com*
*wbaumgartner@sidley.com*
*dgiardina@sidley.com*
*cphillips@sidley.com*
*ctrela@sidley.com*
*erobbins@sidley.com*
*nlove@sidley.com*

T. Andrew Culbert, Esq.
David E. Killough, Esq.
Microsoft Corp.
*andycu@microsoft.com*
*davkill@microsoft.com*

DATED this 13th day of September, 2013.

/s/ *Cheryl McCrum*
Cheryl McCrum

MOTOROLA'S OPPOSITION TO MICROSOFT'S MOTION
FOR JUDGMENT AS A MATTER OF LAW - 26
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001