# EXHIBIT 4

*Convenience Translation*

*Via fax in advance: (0721) 926 5003*

Karlsruhe Higher Regional Court
6th Civil Division
Hoffstr. 10
76133 Karlsruhe

| Our reference | 01980.40410 / 20484939.3 | Dr. Marcus Grosch, LL.M. (Yale) |
|---|---|---|

Our reference    01980.40410 / 20484939.3          Dr. Marcus Grosch, LL.M. (Yale)
                 MG/JE/MK                           marcusgrosch@quinnemanuel.com

                                                    Dr. Jan Ebersohl
                                                    janebersohl@quinnemanuel.com

                                                    Michael Krenz
                                                    michaelkrenz@quinnemanuel.com

August 1, 2013

**Rejoinder in Appellate Proceedings**

In the matter of

General Instrument Corporation

- Plaintiff and Appellee -

**File No.: 6 U 44/12**
We deliver ourselves.
Hearing date: 9/11/2013

v e r s u s

1. Microsoft Corporation

- Defendant and Appellant 1 -

2. Microsoft Ireland Operations Limited

- Defendant and Appellant 2 -

Attorneys of record: Freshfields Bruckhaus Deringer LLP,
Attorneys-at-law, Munich

for patent infringement

we are stating, in the following, our position regarding the Defendants' reply of May 29, 2013.

We note in advance that, with a view to the expiry of the maximum term of the patent in suit, clarifying petitions regarding damages and rendering account will be read out in the oral hearing, where the date of the expiry is the end time for the declaratory action and for rendering account. As is well known, pursuant to the case law of the Federal Supreme Court this maximum term of a property right is immanent to the relief sought and court awards anyway, so that regarding injunctive relief the action does not have to be declared moot. The modification of the petitions regarding damages and rendering account follows the hitherto existing practice of the Senate and only serves the purpose of clarification.

First, we will show once more that a license agreement was concluded by the parties when the Plaintiff on January 15, 2013 sent its acceptance of the Defendants' Orange Book offer to the Defendants (see **Part A**). We will then comment once more on the infringement of the patent in suit, to the extent that this is still necessary, given the Defendants' brief remarks in the reply (see **Part B**). Thereafter we will comment on the Defendants' license objection and will demonstrate that a suspension of the instant proceedings with a view to the US proceedings pending in Seattle, Washington is out of the question (see **Part C**). Subsequently, we will address, once again, the compulsory license defense raised by the Defendants and, in this context, will demonstrate that there is no indication in the findings of the Seattle Court for an antitrust violation by the Plaintiff in connection with the non-acceptance of the Defendants' Orange Book offer – on the contrary (see **Part D**). Finally, we will address the Defendants' motion to stay the proceedings until the European Court of Justice reaches a decision on the questions submitted by the Dusseldorf Regional Court in case 4b O 104/12 (see **Part E**).

**A.**
**On the conclusion of the license agreement**

First, we note that the Defendants appear to continue to close their minds to the fact that the parties entered into a license agreement for the present patent in suit - as well as for the patent in suit in the parallel case 6 U 46/12 -, when the applicant accepted the Defendants' Orange Book offer on January 15, 2013. Likewise, the Defendants are still trying to conceal the fact that on December 23, 2011 and in the aftermath - including, in this appeals process, as part of the grounds of appeal - repeatedly and explicitly recognized their obligation on the merits to pay damages for past use while also explicitly referencing the principles of German law for the calculation of damages. We have explained this in detail in our brief of June 10, 2013, but would like to summarize the course of events and the legal qualification of the declarations once more in the following.

01980.40410/20490600.1                    2                    Reply to Appeal dated August 1, 2013
In the matter of General Instrument / Microsoft Corp. et al.
Karlsruhe Higher Regional Court, File No. 6 U 44/12

1.   In the instant infringement proceedings, the Defendants raised the antitrust defense of a compulsory license and in this context submitted an offer to enter into a license agreement, a so-called Orange Book offer. The first offer is dated December 23, 2011.

2.   In the letter accompanying the offer, the Defendants expressly acknowledged their liability for damages for past acts in accordance with German law. The letter states verbatim as follows:

> "*As required by the recent case law of the District Court in Mannheim (esp. decision of 9 December 2011, docket no. 7 O 122/11) Microsoft Corp. expressly acknowledges ("erkennt dem Grunde nach an") the duty to cover past damages for any past use of the Licensed Patents. The damages are to be determined in accordance with the respective principles set forth under German law.*"

This acknowledgement is also confirmed by the Defendants once again in their brief of even date. Even at the oral hearing before the Regional Court this obligation was never at issue. The Defendants emphasized their intention to accord with the Orange Book.

3.   During the appellate proceedings, the Defendants submitted with their brief of September 3, 2012 their offer dated August 31, 2012. In the preamble of this offer, the accompanying letters– and with that the letter of December 23, 2011 – are also expressly included. In the grounds of appeal of September 3, 2012 the Defendants once again confirmed acknowledgement of their liability for damages according to German law.

4.   On January 13, 2013 the Plaintiff accepted the Defendants' Orange Book offer of August 31, 2012. In the cover letter of January 15, 2013 the Plaintiff again referenced the Defendants' written acknowledgement of their liability for damages mentioned above.

5.   In the following, the Defendants refused to acknowledge the conclusion of the license agreement. In that context the Defendants labeled the acceptance of their offer by Plaintiff a "counteroffer" which allegedly included different contract terms. The Defendants based this claim on the fact that Plaintiff had made note in the letter of January 15, 2013 of the Defendants' acknowledgement of their liability for damages.

6.   The Plaintiff's declaration of acceptance of January 13, 2013 cannot logically be a "counteroffer" because the Plaintiff simply accepted those terms that were offered by the Defendant. The Plaintiff's reference in its letter of January 15, 2013 to the liability for damages acknowledged by the Defendant does not constitute an acceptance with expansion, restrictions or other alterations in the meaning of § 150 section 2 BGB [German Civil Code]. Such

01980.40410/20490600.1                                   3                    Reply to Appeal dated August 1, 2013
In the matter of General Instrument / Microsoft Corp. et al.
Karlsruhe Higher Regional Court, File No. 6 U 44/12

acknowledgment of liability for damages on the merits was documented in writing multiple times by the Defendant, both in the pending proceeding as well as in extrajudicial correspondence. It is astonishing that now the Defendants want to dissociate themselves from their own unambiguously declared acknowledgement. Whatever the case, such contractual remorse on the part of the Defendants cannot affect the license agreement effectively entered into.

7.   The Defendants' attempts to belatedly restrict their acknowledgement of the liability for damages to the royalty rate offered also miss the mark because the Defendants expressly acknowledged that the damages were to be determined in accordance with the methods of calculating compensation recognized under German law. In that regard, the letter of December 23, 2011 states that the acknowledged damages are to be calculated as follows:

> „*be determined in accordance with the respective principles set forth under German law*"

That cannot be a reference to the license fee for "Old Products" as provided in the agreement. For one thing, the Defendants consistently declared such acknowledgement as a supplemental contractual undertaking and not as an otherwise redundant reference to existing provisions pertaining to old license fees (cf. for example the heading "Compensation" in the Defendants' brief of December 23, 2011 and the heading "Other Terms" in the grounds of appeal of September 3, 2012). For another, the reference to "the principles set forth under German law" can only be understood as a reference to the three methods of calculating damages under German law. Thus, the Plaintiff's reference to the express and unambiguously declared acknowledgement of liability for damages on the part of the Defendant cannot from any conceivable point of view constitute a "counteroffer". The Plaintiff simply accepted the Defendants' offer so that a license agreement was concluded.

8.   Also, the proceedings before the Seattle Court did not hinder the valid conclusion of an agreement. Contrarily, the Seattle Court expressly allows for the parties to contractually regulate the licensing of the patents in suit as we will demonstrate in the following in **Part C**.

01980.40410/20490600.1                                        4                          Reply to Appeal dated August 1, 2013
In the matter of General Instrument / Microsoft Corp. et al.
Karlsruhe Higher Regional Court, File No. 6 U 44/12

**B.**
**Regarding infringement**

The Defendants' presentation on non-infringement of the patent in suit in the reply brief consists mainly in mere repetition of their previous presentation. In particular, these remarks are based on an improper interpretation, under patent law, of Claim 19. In addition, the accused devices infringe the patent in suit even on the basis of the Defendants' interpretation.

**1.     Claim 19 is a decoder claim**

a)     We have already commented in detail on the approach taken by the Defendants – which is erroneous under patent law -, according to which claim 19 would protect a system of encoder and decoder or, at any rate, the received data would have to have a structure like that arising from a coding according to claim 1. To avoid repetition, we refer to our reply to the appeal, pp. 3 f. and following, and to our argument in the court of first instance (cf. reply dated December 9, 2011, pp. 3 f.) Therefore, the Defendants' argument on the functioning of H.264 encoders is irrelevant to the question of the infringement of apparatus claim 19, which claims only a decoder.

b)     As we have already explained in the response to the appeal, on page 4, and in the court of first instance (cf. reply dated December 9, 2011, pp. 4 ff.), the accused devices, even on the basis of the Defendants' interpretation and allegations, infringe the patent in suit because given the relevant functional understanding of the features of claim 1 (cf. BGH, 2012, 1124, 1126 - polymer foam) the patent in suit would be infringed in case of an estimate of the output volume as well. In this respect, the need for a comparison of the output volumes of the individual motion compensators following the actual compression of the data or a calculation of the amount thereof can be inferred from neither the wording of the claim cited by the Defendant on page 6 f. of their reply in the appellate proceedings nor the description passage from paragraph [0030] cited therein. In fact, the chosen wording leaves it open as to when a comparison or an estimate occurs.

**2.     Regarding the code word**

a)     The further argument of the Defendants according to which it is supposedly required that a code word is transmitted for the smallest block is not convincing. The claim language merely requires that the claimed code word specify a motion compensator –

01980.40410/20490600.1                          5                          Reply to Appeal dated August 1, 2013
In the matter of General Instrument / Microsoft Corp. et al.
Karlsruhe Higher Regional Court, File No. 6 U 44/12

i.e. a block size specified in the H.264 standard. We have demonstrated this several times during the proceedings.

b)    Neither is the allegation of the Defendants correct that there is never transmitted a code word in the H.264 standard that specifies which motion vector out of a plurality of possible motion vectors is to be used for the reconstruction of the block. What is required according to feature 3 are "*means responsive to said code word [...] for recovering a motion vector for each block from motion vector data received with the block*". The Defendants apparently wish to assert that the patent requires a uniform motion vector for all blocks within a macro block in the H.264 standard. This, however, can neither be derived from the claim language nor from the patent specification. Besides, feature 3 would even be realized according to the Defendants' erroneous understanding in case of a 16x16 partitioning.

**3.    Result**

Thus, the fact remains that all accused devices infringe claim 19 of the patent in suit.

## C.
### Regarding the objection of licensing on the basis of the ITU declaration

Under the heading "License objection" the Defendants, as was already the case in the court of first instance, incorrectly claim that a license to the patent in suit already results from the Plaintiff's declaration of willingness to license. In the following, we will briefly illustrate, once again, why this position is erroneous (**sub I**). The Defendants, referring to the Plaintiff's declaration of willingness to license, also move for the suspension of the instant proceedings until the conclusion of proceedings currently pending in Seattle, USA. The Defendants were unable, however, to show a prejudicial effect of the Seattle proceedings for the instant proceedings. This is especially true since the Seattle proceedings did not contravene the conclusion of an Orange Book license agreement covering the patents in suit in the instant proceedings (**sub II**).

## I.
### Regarding the legal classification of the declaration of willingness to license

1.    We have already explained, in the court of first instance (reply dated December 9, 2011, p. 11 ff.), why the declaration of willingness to license, which the Plaintiff submitted to the

01980.40410/20490600.1      6      Reply to Appeal dated August 1, 2013
In the matter of General Instrument / Microsoft Corp. et al.
Karlsruhe Higher Regional Court, File No. 6 U 44/12

standardization organization ITU, cannot constitute a license of the Defendants to the patents in suit. To avoid repetition, we make reference to those remarks.

2.  Again, it should be noted that the question of whether a right of use to German patents can be granted through a declaration of willingness to license is determined on the basis of German substantive law. In this regard, we refer, for example, to the decision by the 7th Civil Chamber of the Regional Court, in its judgment of February 18, 2011, 7 O 100/100, in which the applicability of German law is explained in detail and convincingly (also see, in this regard, Kühnen, Manual, margin No. 1298). Under German law, no binding affordance toward a plurality of third parties, which are also unknown to the declarant, can be derived from a declaration of willingness to license toward a standardization organization. Instead, as we already noted in the court of first instance, a declaration of willingness to license contains "*no more than a declaratory concretization of the obligation to contract, which already exists by virtue of antitrust law (Art. 102 AEUV, § 19, 20 GWB)*" (as stated in Kühnen, Manual, margin No. 1298, as well as BGH, GRUR 2009, 1052 - Seeing is Believing).

3.  The Senate also assumes, in its case law, that no granting of rights of use results from a declaration of willingness to license. This is evident, for example, in the order of January 23, 2012 in case no. 6 U 136/11 (GPRS compulsory license), in which the Senate, in lights of a declaration of willingness to license of the plaintiff in that case, exclusively reviewed the conditions of the compulsory license objection under antitrust law - and specifically not any existing license. It remains, therefore, that the Defendants cannot derive a license objection from the Plaintiff's ITU declaration.

## II.
## Regarding the Defendants' application for suspension

In their rejoinder, the Defendants now allege with a view to the Plaintiff's declaration of willingness to license that a worldwide license to the Plaintiff's H.264 portfolio is the "expected result" of the pending US proceedings in Seattle, Washington. The Defendants base their request to suspend the local proceedings until the final conclusion of the US proceedings on this postulate.

## 1.  Preclusion of the application for suspension

First, we contest the Defendants' application for suspension for being late. As we already argued in our letter of June 10, 2013, the Defendants were aware of the US proceedings, which they had

01980.40410/20490600.1                                                  7                          Reply to Appeal dated August 1, 2013
In the matter of General Instrument / Microsoft Corp. et al.
Karlsruhe Higher Regional Court, File No. 6 U 44/12

introduced, at all times during the instant proceedings. Likewise, the Defendants have not submitted an application for suspension, in light of the US proceedings, in the entire case before the regional court or in their grounds for appeal. Therefore, the application, which has now been made for the first time, is to be rejected as being late. It can be left open in that regard whether the motion as such is belated under appellate rules (as a means of defense). In any event the aspects of belatedness are to be taken into account when exercising discretion under Sec. 148 ZPO (just as in case of § 296 ZPO where this is consistent court practice). When such a defense is not even raised in the grounds of appeal then a stay can no longer be considered.

**2.    Unfoundedness of the application for suspension**

Irrespective of its belatedness, the Defendants' application for suspension is also unfounded. The US proceeding is not prejudicial to the license defense raised in the instant proceeding, which defense is based on the Plaintiff's ITU declaration of willingness to license. In particular, the Seattle proceedings did not contravene the conclusion of an Orange Book license agreement concerning the patents in suit in the instant matter.

**a)    Regarding the claims for past acts of infringement**

For the causes of action directed to the past in the local proceeding, a prejudicial effect of the US proceeding is already not an option, because the Defendants - as we already explained in our brief of June 10, 2013 - have repeatedly and explicitly recognized their obligation to pay damages in accordance with German law for infringement of the patents in suit in the instant matter. This recognition was made with knowledge of the pending US proceeding. What more would one have to require than an explicit undertaking made by one of the largest corporations in the world and made in knowledge of all facts? That the Defendants do not want to be reminded of this any more is legally more than astonishing.

**b)    No prejudicial effect in view of the license objection**

(1)    Even regardless of the Defendants' admission, a suspension is also out of the question for lack of prejudicial effect for the issue referred to by the Defendants – namely an alleged license under the patents in suit because of the Plaintiff's ITU declaration of willingness to license. The Defendants, despite referring to a "license objection" in the heading in their reply, have not even made an attempt

01980.40410/20490600.1                                  8                        Reply to Appeal dated August 1, 2013
In the matter of General Instrument / Microsoft Corp. et al.
Karlsruhe Higher Regional Court, File No. 6 U 44/12

to show that the question of an existing license based on the Plaintiff's ITU declaration of willingness to license is examined in the US proceeding. And for good reason, because this issue is not being tested in the US proceeding, let alone is it subject matter of such proceeding, as is evidenced by many quoted passages in the US orders. An example is the introductory passage from the order of April 25, 2013 (Annex FBD-BK 26a, p. 2 – emphasis added):

> „(…) *Microsoft claims that Motorola has* **an obligation to license** *patents to Microsoft at a reasonable and non-discriminatory ('RAND') rate, and that Motorola breached its RAND obligations through two offer letters."*

(2)     In other words, the Defendants in the US proceeding are claiming "*an obligation to license patents*", rather than a license following from the ITU declaration as claimed in the instant proceeding. Therefore, the Defendants' license objection and the application for suspension based on it should be rejected for this reason alone. One could wait a long a time for the US court's decision on a license coming into existence due to the ITU declaration; such decision would never be rendered and the Defendants know this best because Microsoft is the plaintiff in the US proceedings.

**c)     The US proceeding does not contravene the conclusion of an Orange Book License Agreement**

(1)     With their claim (cf. reply, p. 9 ff.) that the US proceeding would culminate in a "license agreement valid worldwide" that would constitute, "directly and retroactively", a right of use for the Defendants, the Defendants apparently want to once more create the impression that the Seattle proceedings would contravene the license agreement concerning the patents in suit of the instant proceedings concluded on January 15, 2013. This postulate, however, finds no support in the quotations from the order of November 29, 2012 referred to by the Defendants. Instead, it becomes clear, upon analysis of the submitted orders from the US proceeding, that the Defendants are also attempting in this context, through a misleading citation method, to play off the instant and the US proceeding against one another and, in particular, to torpedo the instant proceeding.

01980.40410/20490600.1                                      9                            Reply to Appeal dated August 1, 2013
In the matter of General Instrument / Microsoft Corp. et al.
Karlsruhe Higher Regional Court, File No. 6 U 44/12

(2)    The Defendants' allegation is  contradicted by the express terms of the US orders. For instance, a quotation from p. 9 of the reply (p. 13 of the US order of November 29, 2012, Annex FBD-BK 19a) reads as follows (emphasis added):

> *„As Microsoft has committed to accept a license on RAND terms for Motorola's entire H.264 standard essential portfolio, and the litigation is continuing to determine the details of such license, it is now clear that at some point in the future (**either by agreement of the parties or by court adjudication**) a license agreement for the Motorola Asserted Patents will become a reality."*

(3)    Thus, the Seattle court expressly leaves open whether a license agreement comes about as a result of agreement by the parties or by a court so ordering ("*either by agreement of the parties or by court adjudication*"). Consequently, the US proceeding, contrary to the Defendants' assertions, did not preclude the conclusion of the Orange Book contract through acceptance of the Defendants' offer – which offer was not withdrawn – but expressly allowed such conclusion of a contract. As we have shown once more in our brief of June 10, 2013, such Orange Book agreement concerning the patents in suit of the instant matter came into existence on January 15, 2013.

(4)    The Defendants' strategy of pitting the two cases against each other is already known from a so-called anti-suit injunction, which the Defendants had obtained before the regional court had issued its ruling in the instant proceeding.

(a)    Through this anti-suit injunction, the Defendants had the US court in Seattle, Washington prohibit the Plaintiff from enforcing a possible injunction from the instant proceeding. In this context, it should be noted for the Senate's information, that the counsel for the Defendants issued, in the context of such motion, an astonishing affidavit. This statement, which we enclose as

**- Exhibit K II 1 -**

was apparently intended to point out, to the US court, the necessity of intervening in the German proceeding. In this context, the counsel for the Defendants testified, among other things, that the execution of a judgment by a court of first instance is something unusual in Germany,

01980.40410/20490600.1      10      Reply to Appeal dated August 1, 2013
In the matter of General Instrument / Microsoft Corp. et al.
Karlsruhe Higher Regional Court, File No. 6 U 44/12

and that Motorola's behavior in other cases suggests that it will continue to practice this allegedly unusual behavior in the future.

(b)    The statement reads verbatim:

> *„In Germany, the majority of prevailing patentees do not enforce an injunction while a matter is on appeal. Prior behavior by Motorola in another case involving a standard-essential patent, however, suggests that it will immediately attempt to enforce any order entered by the Mannheim court."*

(c)    The Senate may reach its own conclusions regarding the accuracy of the statement made by counsel. For completeness, it should be noted that in the context of the dispute between the parties, the Defendants have certainly always practiced the supposedly unusual behavior themselves, enforcing various injunctions they had obtained from the Munich District Court during the appellate proceedings.

(5)    In conclusion, the US case did not contravene the valid conclusion of a license agreement concerning the patents in suit to the instant proceedings by means of acceptance of the Defendants' Orange Book offer.

d)    **Regarding the subject matter of the US proceeding**

(1)    In the following, for the purpose of information of the Senate, we shall describe the subject matter of the Seattle proceedings on the basis of the court orders submitted by the Defendants. The orders submitted by the Defendants, in which the history and background of the case are explained, show that the dispute revolves around the question of whether the Plaintiff in the instant proceeding, or Motorola, violated their obligations under the ITU declaration of willingness to license with a contract offer from 2010.

(2)    This follows, for example, from the introductory description of the April 25, 2013 order of the Seattle court (Annex FBD-BK 26a, p. 2):

> *„This is a breach of contract case between Microsoft Corporation ('Microsoft') and Motorola, Inc., Motorola Mobility, Inc., and General Instrument Corporation (collectively 'Motorola'). Microsoft claims that Motorola has an obligation to license patents to Microsoft at a*

01980.40410/20490600.1                                   11                          Reply to Appeal dated August 1, 2013
In the matter of General Instrument / Microsoft Corp. et al.
Karlsruhe Higher Regional Court, File No. 6 U 44/12

> *reasonable and non-discriminatory ('RAND') rate, and that Motorola breached its RAND obligations through two offer letters.*
>
> *[...]*
>
> *The parties disagree substantially about the meaning of RAND. Thus, to resolve the dispute, the court held a bench trial from November 13-20, 2012, with the aim of determining a RAND licensing rate and a RAND royalty range for Motorola's patents."*

It is therefore a "breach of contract case" and the Seattle court apparently deemed it necessary to establish a "RAND" licensing rate or a "RAND" licensing range at first in order to have a jury determine on the basis of such licensing rate and licensing range whether an offer by Motorola had brought about a so-called "RAND" violation. In this context it shall be mentioned that it is a highly controversial question in the pending US proceedings whether and to what extent these orders of the Seattle court shall be presented to the jury as foundation of their decision at all.

(3)     The history and the exact scope of the test are described in detail on page 4 of the order of April 25, 2013, which states:

> „*Microsoft claims that Motorola breached its RAND obligation by making an unreasonable offer in a negotiation to license Motorola's 802.11 and H.264 SEPs. On October 21, 2010, Motorola sent Microsoft a letter offering to license Motorola's 802.11 SEPs. Motorola offered to license its patents at what it considered the RAND rate of 2.25% of the price of the end product:*
>
> *[...]*
>
> *On October 29, 2010, Motorola sent a similar letter offering to license its H.264 SEPs on similar terms. The letter again offered a royalty rate of 2.25% of the end product price:*
>
> *[...]*
>
> *Eleven days later, on November 9, 2010, Microsoft initiated this breach of contract action against Motorola based on Motorola's two offer letters, claiming that the letters breached Motorola's RAND commitments to the IEEE and the ITU."*

(4)     Thus, after Motorola had opened the negotiations with the offer letters dated October 21 and 29, 2010, the Defendants did not respond to these letters, but instead simply sued Motorola for alleged "RAND" infringement on November 9,

01980.40410/20490600.1                          12                    Reply to Appeal dated August 1, 2013
                                                                   In the matter of General Instrument / Microsoft Corp. et al.
                                                                   Karlsruhe Higher Regional Court, File No. 6 U 44/12

2010. In connection with the examination of the alleged breach, the Seattle court, in its order of April 25, 2013 (p. 5), clarified that the original offer of a standard essential patent holder does not have to meet the RAND requirements. Rather, it must be an offer "in good faith", and the court finds it necessary to determine the RAND rate or the RAND range first for the purpose of having this criterion examined by a jury:

> *„However, the court has also held that initial offers do not have to be RAND terms so long as RAND license eventually issues."*

> *„To decide whether Motorola's opening offers were in good faith, a fact-finder must be able to compare them with a reasonable RAND royalty rate and, because more than one rate could conceivably be RAND, a reasonably RAND royalty range."*

(5)     The way the above question is decided in the US proceeding is not relevant for the instant proceeding because the Seattle court expressly admits the conclusion of party agreements – thus also admitting the Orange Book license concluded in the instant proceedings. Even if one were to assume that a license agreement would be the outcome of the proceedings pending before the Seattle court – which is what the Defendants wish to assert and which is contested – then such outcome would not affect the instant proceedings because the Seattle court expressly admits party agreements and because such party agreement was concluded with a view to the patents in suit to the instant proceedings. Presumably for this very reason, the Defendants did not allege any supposed prejudicial effect during the entire lower court case. Instead, the Defendants made an Orange Book offer – and acknowledged and accepted their liability to pay damages under German law – at a time when the Seattle proceedings were already pending, and they had not withdrawn such offer when it was accepted by the Plaintiff on January 15, 2013.

**e)     In any case, no suspension for lack of recognizability in accordance with § 328 ZPO**

(1)     Even if the US proceeding were prejudicial to the local proceeding – quod non –, a suspension pursuant to § 148 ZPO would not come into question. The Defendants themselves note that a suspension because of prejudicial foreign litigation requires that the foreign decision be recognizable in Germany in the

01980.40410/20490600.1                                   13                          Reply to Appeal dated August 1, 2013
                                                                                    In the matter of General Instrument / Microsoft Corp. et al.
                                                                                    Karlsruhe Higher Regional Court, File No. 6 U 44/12

first place. In this context, the standard of §328 ZPO applies in relation to the United States. The German courts may not have the possibility to prohibit the parties from enforcing foreign judgments (abroad – as it happened upon the Defendants' request with a view to the district court's judgments concerning the Plaintiff's German patents). But a foreign judgment can affect domestic proceedings only if such foreign judgment is recognizable.

(2)     Pursuant to section 328 para. I no. 4, German Code of Civil Procedure, a decision by the US court on a "reasonable" license rate for the German patents in suit would not be eligible for recognition, because in making its assessment on the German property rights the US court applies only the standards of US patent law (in particular with regard to so-called "means plus function" claims), and thereby makes a devaluation, which simply cannot apply to German patents. This obviously is incompatible with major principles of German Law, namely with those which define the subject of the German property right on a statutory basis. We will discuss this again, separately, in part D.

## D.
### Antitrust compulsory license defense

The Defendants further refer to the antitrust compulsory license defense in their Reply. Besides repeating their position from the lower court and their grounds of appeal (already refuted many times) the Defendants further assert that the non-acceptance of their Orange Book offer (at a royalty rate of EUR 0.01 or EUR 0.02 per infringing device) is a violation of the antitrust laws because an even lower rate was supposedly determined to be a "RAND"-rate in the U.S. proceedings. As we shall demonstrate below, this argument is incorrect for many reasons. In particular, even taking the Seattle court's methodology for both patents in suit as a basis in the present infringement proceedings, a royalty rate would have to be set which significantly exceeds the rate offered by the Defendants. This is so because the Seattle court ranked the two patents in suit of the instant proceedings as particularly valuable technically and only "discounted" them based on considerations under US patent law which could not be applied to a German patent.

In the following, we shall first discuss the allocation of the burden of proof according to the German Federal Court of Justice [BGH] Orange Book precedent, based on the arguments in the Reply (**see I below**). Next, we shall go into the determinations made by the Seattle court and demonstrate how the

01980.40410/20490600.1                                  14                  Reply to Appeal dated August 1, 2013
In the matter of General Instrument / Microsoft Corp. et al.
Karlsruhe Higher Regional Court, File No. 6 U 44/12

Defendants' Orange Book offer would have to be evaluated against this background (**see II below**). Finally, we shall take a position on the compulsory license defense, to the extent it is raised with respect to other claims than claims for injunctive relief (**see III below**).

## I.
## Allocation of the burden of proof

1. As the Regional Court has already determined, it would have been up to the Defendants to demonstrate and prove that rejection of the Orange Book offer represented an antitrust violation by the Plaintiff. Again, it should be noted that the Defendants did not take the route available to them under § 315 BGB, but rather presented a concrete, quantified offer. However, the defendant who quantifies its offer must prove that insisting on a higher royalty would violate antitrust laws.

2. This allocation of the burden of proof can be unmistakably inferred from the Orange Book decision of the BGH where, in paragraph 38, it expressly states:

   > *" [38] The fact that the license seeker cannot easily determine this amount does not unjustly burden him since, in principle, he already bears the burden of proving the elements of the licensing claim, anyway."*

   With regard to the amount of the offer, the discussion of the burden of proof continues at paragraph 39:

   > *"This is because the license seeker will tend to be more ready to deposit a higher amount than the one that he deems appropriate under antitrust law, if he is not estopped from asserting that a determination of the royalty by the patent proprietor in this amount is inequitable - for which assertion the license seeker still bears the burden of proof."*

3. Thus, according to BGH precedent, in the present proceedings as well the burden of proof with respect to the compulsory license defense would have rested with the Defendants. The Defendants, however, have not proved that the non-acceptance of their offer (which originally provided for a royalty of EUR 0.01 or EUR 0.02 per accused device and, in a view of the U.S. proceedings, was subsequently reduced even further) constituted a violation of antitrust law.

## II.
## The Seattle Court's findings

Now the Defendants wish to rely on the U.S. Court's findings in order to justify the low royalty rates they offered. In that regard, it must once more be noted that the royalty rates and ranges named by the

01980.40410/20490600.1         15         Reply to Appeal dated August 1, 2013
In the matter of General Instrument / Microsoft Corp. et al.
Karlsruhe Higher Regional Court, File No. 6 U 44/12

*Convenience Translation*

Seattle court in the U.S. proceedings were the subject of the judge's orders in the court of first instance in a pending lawsuit, the binding effect and the further use of which in the proceedings is disputed. For this reason alone it can have no evidentiary effect in the instant proceedings. Furthermore, it is true that the Seattle court's findings substantiate the exact opposite of what the Defendants wish to assert. This is so because, as we will show below, the order of April 25, 2013 demonstrates that the Defendants' offer was not sufficient for the disputed patents in the instant case. Without in any way accepting the methodology or the results of the Seattle court, it must be noted that transfer of the valuation principles used by the court to the patents in suit here would lead to significantly higher royalty rates than those offered by the Defendants.

In the following, we shall first discuss the Seattle court's valuation principles, on which the court based its April 25, 2013 order (**see 1 below**). Then, we shall explain how the court applied its valuation principles to the U.S. counterparts of the patents disputed here (**see 2 below**). Thereafter, we will show that the only reason for devaluation of the U.S. patents with respect to the patents disputed here cannot be transferred and thus, even on the basis of the criteria used by the Seattle court, a particularly high value must be attributed to the patents disputed here (**see 3 below**). Finally, we shall show that, even on the basis of the RAND range specified by the Seattle court, a non-acceptance of the Defendants' offer could not amount to a violation of antitrust law (**see 4 below**).

## 1.      The Seattle Court's methodology

a)      As discussed above, the court found it necessary, for the subsequent decision by a jury about the question of whether Motorola's written offer in the year 2010 constituted a "RAND violation", to define a "RAND range", i.e. a royalty range which it deemed "reasonable and non-discriminatory". For this purpose, in its April 25, 2013 order, the Seattle court looked into 16 of Motorola's U.S. patents which pertain to the H.264 Standard. These patents are listed on p. 54 of the order (Attachment FBD-BK 26a).

In addition, the Seattle court looked into 11 U.S. patents pertaining to the 802.11 Standard for purposes of evaluating Motorola's offer (not at issue in the present proceedings) to license the WiFi portfolio. These patents are listed on p. 110 et seq. of the order.

b)      The US court sets forth the methodology it uses to define the RAND range on pp. 25-41 of its order. At the bottom of p. 40 of the order, the court explains that the significance

01980.40410/20490600.1                                     16                          Reply to Appeal dated August 1, 2013
In the matter of General Instrument / Microsoft Corp. et al.
Karlsruhe Higher Regional Court, File No. 6 U 44/12

of the Motorola patents for the standards, as well as for Microsoft's products, form the basis of the valuation:

> „First, the court examines Motorola᾽s H.264 and 802.11 patent portfolios to determine each portfolio᾽s importance to its respective standard as well as the importance to Microsoft᾽s products.“

c)     Previously, (p. 37, top) the Seattle court stated that, in evaluating the importance of the patents, the value of the protected technology would have to be determined independently of the value following from the standard-essentiality:

> „Factors 6 and 8 examine the importance of the patented invention to both the licensor and licensee᾽s sales, as well as to derivative and convoyed sales to the licensee. Although both of these factors are relevant to a reasonably royalty in the RAND context, it is important to focus the analysis of both of these factors on the value of the patented technology apart from the value associated with incorporation of the patented technology into the standard.“

To this end, for each individual patent the Seattle court – also with a view toward the U.S. counterparts of the patents disputed herein – examined what technological value the patents have, to what extent the teachings of the Motorola patents could have been substituted in the standards by other technologies, and to what extent the Microsoft products actually depend on the protected technologies.

**2.**     **Valuation of the U.S. counterparts of the patents at issue here**

Next, we will show how the Seattle court applied its just-described valuation principles to the patents at issue in the German infringement action, namely *Krause* (EP '667, **see a** below) and *Wu* (Ep '384, **see b** below). Then, we will systematically summarize the Seattle court's conclusions about the value of both *Wu* and *Krause*, as well as the whole of Motorola's H.264 portfolio (**see c** below).

**a)**     **The Seattle Court's statements about the *Krause* patent (US '419 - EP '667)**

(1)     The Seattle court expressly determined in its April 25, 2013 order that *Krause* was of great technical value because it pertains to the core function of prediction, and enables more efficient coding through the adaptive use of different block sizes. The court literally states as follows on p. 55 the order:

01980.40410/20490600.1         17         Reply to Appeal dated August 1, 2013
In the matter of General Instrument / Microsoft Corp. et al.
Karlsruhe Higher Regional Court, File No. 6 U 44/12

> „*The Krause Family has technical value with respect to the H.264 Standard because it is directed to the core feature of prediction. It allows video encoders to encode video more efficiently by adaptively using the block size that results in the most compression of the video data.*

(2)   The parties to the suit did not dispute the fact that *Krause* contributed to the fifty percent coding gain of the H.264 methodology, as the Seattle court noted on p. 56 of the order:

> "*Motorola presented undisputed evidence that the '419 Patent contributed to the 50% coding gain reported for H.264 (progressive scan sequences only).*"

(3)   In addition, the Seattle court expressly found that *Krause* is functionally superior to all alternative technologies. Thus, it states as follows on p. 57 of the order:

> "*Moreover, the court concludes, on the evidence before it, that Motorola, through its expert Dr. Drabik, has provided sufficient evidence and explanation as to why the Krause Family of patents are superior in functionality to any of the alternatives set forth by Microsoft.*"

(4)   Despite these findings of *Krause's* great technical value and its low or non-existent substitutability by alternative technologies, the Seattle court considered the Krause patent to be of low value (or practically worthless) when determining the RAND range for the H.264 portfolio. The patent was devalued based only on a single criterion, named on p. 57 of the order:

> "*The court has examined the specification of the '419 Patent and concludes that it only discloses specific hardware implementations of the means-plus-function elements. [...] Thus, the '419 Patent contributes to the standard, but its contribution is limited to implementation of the standard through hardware.*"

(5)   The Seattle court thus held the *Krause* Family of patents – more precisely: the US '419 patent – to be practically worthless because it had only "means-plus-function"-claims as its object. The scope of protection of such claims is, according to U.S. patent law, limited to the functions expressly disclosed in the patent document. Based on the patent specification of the U.S. patent, the Seattle court came to the conclusion that only hardware encoders and decoders were disclosed such that, ultimately, only hardware would be protected, as well. In view of this peculiarity of U.S. patent law, and given the fact that Microsoft

01980.40410/20490600.1                                       18                                       Reply to Appeal dated August 1, 2013
In the matter of General Instrument / Microsoft Corp. et al.
Karlsruhe Higher Regional Court, File No. 6 U 44/12

produces software, the Seattle court arrived at the conclusion that the *Krause* Family of patents was certainly of high value technically, but was insignificant in practice for Microsoft because, as a software producer, Microsoft would not make use of this patent.

(6)     As we will demonstrate below, this view taken by the Seattle court is not transferrable to the (German) patents in dispute here. This is evident for all patent lawyers involved in the instant proceedings.

**b)     The Seattle Court's statements about the *Wu* patent (US '968 - EP '384)**

(1)     The findings of the Seattle court regarding the *Wu* patent (the patents in suit of case no. 6 U 46/12 and 6 U 47/12) largely correspond to those regarding the *Krause* patent. Thus, at p. 58 of its order, the court expressly finds great technical value for this patent, as well:

> "*The Wu Family has technical value to the H.264 Standard because it is directed to the core H.264 feature of prediction.*

(2)     It was likewise undisputed, in view of the *Wu* patent, that the patented technology contributed to the fifty percent coding gain of the H.264 technology, as the Seattle court noted on p. 59 of its order:

> "*Motorola presented uncontroverted evidence that the technology claimed in the '968 Patent contributed to the 50% coding gain reported for H.264 (progressive scan only).*"

(3)     Also consistent with the statements about the *Krause* patent, the Seattle court found that the *Wu* patent was superior to alternative technologies. Thus, on p. 60 of the order it states:

> "*Moreover, the court concludes on the evidence before it that Motorola, through its expert Dr. Drabik, has provided sufficient evidence and explanation as to why the Wu Family of patents are superior in functionality to any of the alternatives set forth by Microsoft.*"

(4)     With a view toward the practical significance of the patent for Microsoft, the Seattle court reached a similar result as it did with the *Krause* patent. It is true that the court did see a claim in the US patent which did not contain "means-plus-function" limitations. However, the court did not find any proof that this

01980.40410/20490600.1                    19                    Reply to Appeal dated August 1, 2013
In the matter of General Instrument / Microsoft Corp. et al.
Karlsruhe Higher Regional Court, File No. 6 U 44/12

very claim was standard-essential. Accordingly, it also considered *Wu* to be worthless in practice. Thus, the court states as follows on p. 61 of the order:

> "*Unlike the '419 Patent, the '968 Patent includes a claim, claim 16, which does not include means-plus-function limitations. Thus, on its face, claim 16 is not limited to the hardware structures disclosed in the '968 specification. Motorola did not, however, provide evidence that claim 16 of the '968 patent covers the technology of the H.264 Standard.*""

**c)       The Seattle Court's conclusions**

(1)      In valuing the H.264 portfolio, the Seattle court crucially considered whether each patent pertained to progressive encoding and decoding of video files or the so-called "interlaced"-method. The background of the technologies are described on pp. 41-44 of the April 25, 2013 order. There, the court reaches the decision that the progressive method (also and exactly with a view toward the Microsoft products) is highly relevant in practice, while considering the "interlaced" method to be outdated and irrelevant in practice. Thus, it states on p. 43 of the order:

> „*The weight of the evidence before the court demonstrates that interlaced content is increasingly rare in today's world.*"

The little importance of the "interlaced" method for Microsoft products, from the Seattle court's point of view, is explained on pp. 84-96 of the order.

(2)      In its order, the Seattle court holds further that merely two of the 16 H.264 patents owned by Motorola would pertain to the progressive encoding and decoding of video data, and thus (in its view) to the area of application which is relevant in practice. The two patents, which apply to progressive encoding and decoding, are the patents in suit here, namely Krause and Wu. To that extent, the order states, for example, on p. 56 with respect to *Krause* (emphasis added):

> "*Motorola presented undisputed evidence that the '419 Patent contributed to the 50% coding gain reported for H.264 (**progressive scan sequences only**).*"

The same applies to *Wu*, on p. 56 of the order (emphasis added):

01980.40410/20490600.1                                20                    Reply to Appeal dated August 1, 2013
In the matter of General Instrument / Microsoft Corp. et al.
Karlsruhe Higher Regional Court, File No. 6 U 44/12

"*Motorola presented uncontroverted evidence that the technology claimed in the '968 Patent contributed to the 50% coding gain reported for H.264 (__progressive scan only__).*"

(3)    The findings of the Seattle court may thus be summarized as follows:

- Only the Krause and Wu patents (i.e. both of the patents at issue in the German proceedings) concern the progressive technology which is highly relevant in practice.

- The other 14 H.246 patents pertain to the interlaced technology, which is not relevant in practice.

- Both the Krause and Wu of patents are of great technical benefit, concern the core function of the H.264 Standard, and contribute to the fifty percent coding gain.

- There are no equivalent alternative technologies to the Krause and Wu patents.

- The only reason why both the Krause and Wu patents were not highly valued is that, in the Seattle court's view, the formulation of the U.S. patent claims as so-called "means-plus-function" claims pertains only to hardware decoders and encoders, and not to the software offered by Microsoft.

(4)    In other words, the Seattle court held that both of the patents at issue here (or, rightly, their U.S. counterparts) were of low value based on grounds of patent law, and that the 14 other patents in Motorola's portfolio were of low value because they pertain to "interlaced" technology. Against the background of this evaluation, the court then applied patent pools (since the court placed no particular commercial value on Motorola's patents) as the benchmark for the evaluation (cf. p. 168-178 of the order) and ultimately arrived at a "RAND range" of US $0.00555 to US $0.16389 for Microsoft Windows Products and Xbox (cf. "Conclusion" on p. 207 of the order).

01980.40410/20490600.1                    21                    Reply to Appeal dated August 1, 2013
In the matter of General Instrument / Microsoft Corp. et al.
Karlsruhe Higher Regional Court, File No. 6 U 44/12

*Convenience Translation*

**3.     Transferability of the Seattle Court's findings to the patents at issue here**

a)      The Seattle court's modus operandi is not suitable for determination of a "RAND" range or a fixed "RAND" royalty rate for the German patents in suit to the instant matter Krause (EP'667) and Wu (EP'384). This is so because the Seattle court exclusively applied the claim language of the U.S. patents and exclusively considered the rules of U.S. patent law to determine the scope of protection and thus the practical value of the patents. The court did not deal with the fact that the claim language and scope of protection of Motorola's H.264 patents could be valued completely differently abroad.

b)      Thus, the reason applied by the US court for devaluing the Krause and Wu property rights, which are of interest in the present proceedings, is not transferable to the German patents. This is so because both Krause and Wu, under German patent law, naturally comprise software encoders and decoders such that all of Defendants' accused embodiments fall within the scope of protection of both patents. Accordingly, the Regional Court also correctly assumed infringement. It is telling that the Defendants in the present proceedings have not even asserted that the patents in suit would comprise only hardware decoders.

c)      If one were now (as the Defendants apparently seek to do) to apply the findings of the Seattle court on the assessment of the Defendants' Orange Book offer, one simply cannot arrive at the conclusion that the Plaintiff could not have rejected the offer without violating antitrust law duties. Rather, based on the Seattle court's findings, both Krause and Wu cover technologies that are very significant in practice, technically decisive, and that contribute significantly to the date deduction in the H.264 method and cannot be substituted by alternative technologies. Thus, the commercial value of both of the disputed patents, disregarding their essentiality to the standard, is particularly great.

d)      In contrast, the reduction applied by the Seattle court for a supposed limitation to hardware devices (based on the formulation as "means-plus-function" claims under U.S. law) simply cannot be applied in Germany. Therefore, the rate applied by the Seattle court simply cannot serve as the basis for assessment of the legality under antitrust law of the Plaintiff's non-acceptance of the offer.

01980.40410/20490600.1                                22                    Reply to Appeal dated August 1, 2013
In the matter of General Instrument / Microsoft Corp. et al.
Karlsruhe Higher Regional Court, File No. 6 U 44/12

e)      The RAND range determined by the Seattle court lies between US $0.00555 and US $0.16389 for Microsoft Windows and Xbox. For other products, the court assumed a fixed RAND rate of US $0.00555. The court applies these royalty rates while ultimately considering all 16 of the H.264 patents from the Motorola portfolio to be insignificant in practice. If one considers that the Seattle court ranked the Krause and Wu patents (beyond the U.S. peculiarity of "means-plus-function" claims) as particularly significant technically as well as practically, it becomes clear that a royalty rate significantly higher than the U.S. "RAND" range would have to be applied in Germany. In any case, a royalty rate would have to be applied which is significantly higher than the EUR 0.01 or EUR 0.02 per accused embodiment offered by the Defendants. This is so because the royalty rate offered already lies near the bottom of the range established by the Seattle court – more on this in the following. Thus, precisely in view of the findings of the Seattle court, there can be no question of an antitrust law violation by the Plaintiff based on its non-acceptance of the Defendants' Orange Book offer.

f)      Thus, if one examines the orders submitted by the Defendants and the reasoning they are based on, as one should do with legal "prejudice", thereby taking into account applicable German law, it is not rationally plausible any longer how the Defendants can believe to be entitled to refer to the assessments made in the parallel US proceedings for justifying a low royalty rate. This can only be the case if the Defendants trust that there is simply no more test being performed in the instant proceedings, so that the mere existence of the US proceedings would paralyze the instant proceedings, or influence the instant proceedings in the interest of the Defendants. This will not be successful.

## 4.      A royalty rate higher than the Defendants' offer lies within the range named in the U.S. proceedings

a)      For the sake of completeness, it should be emphasized that non-acceptance of the Defendants' Orange Book offer in the context of the instant proceedings could not even constitute a violation of antitrust law if the Seattle court's findings were transferable to the German patents in suit (which they are not). It must be noted once again that the Seattle court set a "RAND" range for Microsoft Windows products and Xbox between 0.5 and 16 US cents. In contrast, the Defendants in the present proceedings offered a royalty range of between 1 and 2 EUR cents.

01980.40410/20490600.1                                        23                         Reply to Appeal dated August 1, 2013
                                                                                                  In the matter of General Instrument / Microsoft Corp. et al.
                                                                                                  Karlsruhe Higher Regional Court, File No. 6 U 44/12

b)     The Defendants' offer (which did not distinguish between the different products and therefore applied to Windows products and Xbox as well) thus lay at the low end of the range set by the Seattle court. Therefore, non-acceptance of this offer cannot be a violation of antitrust law, even applying the Seattle court's scale. An antitrust law violation by the Plaintiff is thus out of the question under all conceivable points of view.

## III.
## Defense against claims for other than injunctive relief

1.     To the extent the Defendants seek in their reply brief in the appellate proceedings to also raise the compulsory license defense against other claims than claims for injunctive relief, such defense raised at the appellate level is untimely and may no longer be admitted.

2.     Ultimately, it does not come down to admissibility of the defense because any extension of the antitrust compulsory license defense to other claims would be tantamount to a statutory license, which is utterly foreign to German law. Even the EU Commission, in its position statements, nowhere called into question the assertion of claims for other than injunctive relief with respect to standard-essential patents. In addition, we shall once again refer to the fact that the Defendants have many times expressly acknowledged their liability for damages anyway and, in so doing, have referred to the calculation principles under German law.

## E.
## Petition for stay of proceedings in view of the preliminary question in the Düsseldorf Regional Court

Finally, we oppose the Defendants' Petition for stay of proceedings until the ECJ decides the preliminary question referred to it by the Düsseldorf Regional Court in Case No 4b O 104/12. We likewise oppose the Defendants' Petition for stay of proceedings with respect to the Defendants' additional questions.

## I.
## The Commission's position statement

All of the EU Commission's statements (including and especially those presented by the Defendants) imply that the Commission links a potential abuse of the market-leading position with enforcement of claims for injunctive relief against a "willing licensee." In the Commission's position statement in Attachment FBD-BK 28, the Commission states, with respect to the German patent infringement case between Motorola and Apple (known to the Senate), that the making of an Orange Book offer which

01980.40410/20490600.1             24             Reply to Appeal dated August 1, 2013
In the matter of General Instrument / Microsoft Corp. et al.
Karlsruhe Higher Regional Court, File No. 6 U 44/12

takes advantage of the § 315 BGB [German Civil Code] mechanism generally would speak to the fact that the Defendant could be seen as a "willing licensee." As such, this finding is no peculiarity over German law, but is rather a confirmation of the BGH's Orange Book decision.

## II.
## The Defendants are not "willing licensees"

1.   If one adopts the Commission's statements, it becomes clear that the Defendants in the present proceedings cannot be qualified as "willing licensees" under any conceivable point of view. The Defendants did not respond to Motorola Group's original license offer from October 2010. Rather, only eleven days later, they filed a complaint for alleged "RAND" violations in Seattle, Washington.

2.   In the instant proceedings, the Defendants have also not been willing to negotiate, but have always retreated to an offer with a fixed royalty rate of EUR 0.01 or EUR 0.02 (which was reduced even further subsequently). The Defendants have never shown a willingness to negotiate with a view toward these royalty rates, and this even though the Plaintiff has demonstrated many times why the offered license rates are unreasonable. The Defendants have intentionally not made use of the possibility under § 315 BGB, and thus have just shown themselves to be unwilling to accept a binding royalty rate determination by a third party, as the Commission pointed out with respect to Motorola's case against Apple.

   a)   In this connection the Defendants now seek to derive their supposed status as "willing licensees" in the sense of the Commission, by their alleged willingness to acknowledge the U.S. court's findings in Seattle, Washington as the "world-wide RAND rate." In so doing, they rely on the following quote from the Commission's opinion (Attachment FBD-BK 29):

   > „*The Commission's preliminary view is that the acceptance of binding third party determination for the terms of a FRAND licence in the event that bilateral negotiations do not come to a fruitful conclusion is a clear indication that a potential licensee is willing to enter into a FRAND licence.*"

   b)   Once again, the Defendants seek to use a quotation, torn from its context, to mix the U.S. proceedings up with the present proceedings and torpedo the German infringement action. The Commission's position statement applies to the proceedings between Motorola and Apple, and the "binding third party determination" referred to therein is the evaluation according to § 315 BGB of the royalty rate set by the patentee. Exactly

01980.40410/20490600.1                                    25                              Reply to Appeal dated August 1, 2013
In the matter of General Instrument / Microsoft Corp. et al.
Karlsruhe Higher Regional Court, File No. 6 U 44/12

this mechanism of § 315 BGB – which would have been open for them – the Defendants did not choose.

3.   Thus, any stay of the present proceedings is out of the question because there are no indications that the Commission would regard the Defendants in the present proceedings as "willing licensees."

## III.
## Stay of proceedings is not indicated

1.   Even aside from the circumstances shown above a stay of the proceedings is out of the question because the Defendants are not threatened with enforcement of an injunction due to the expiration of the patent and because a license agreement was concluded concerning the patents in suit in the instant matter.

2.   With regard to claims for relief other than injunctive relief, a stay of proceedings is likewise out of the question. The Commission simply did not question the assertion of damages or accounting claims with respect to a standard-essential patent. In addition, the Defendants have expressly acknowledged the Plaintiff's claims for damages anyway, as we have repeatedly demonstrated. Thus, in any case, the Senate must exercise the discretion granted it under § 148 ZPO to reject the Defendants' petition for a stay of the proceedings.

(Dr. M. Grosch)
Attorney at Law

<u>Attachment</u>
K II 1

01980.40410/20490600.1                26                Reply to Appeal dated August 1, 2013
In the matter of General Instrument / Microsoft Corp. et al.
Karlsruhe Higher Regional Court, File No. 6 U 44/12