# EXHIBIT 5

ANTRAG
## AUF ZUSTELLUNG EINES GERICHTLICHEN ODER AUSSERGERICHTLICHEN SCHRIFTSTÜCKS IM AUSLAND

R E Q U E S T
FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

D E M A N D E
AUX FINS DE SIGNIFICATION OU DE NOTIFICATION À L'ÉTRANGER
D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE

Übereinkommen über die Zustellung gerichtlicher und außergerichtlicher Schriftstücke im Ausland
in Zivil- oder Handelssachen, unterzeichnet in Den Haag am 15. November 1965.

Convention on the service abroad of judicial and extrajudicial documents in civil or
commercial matters, signed at The Hague, on the 15th of November, 1965.

Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires
en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.

| Bezeichnung und Anschrift der ersuchenden Stelle | Anschrift der Bestimmungsbehörde |
|---|---|
| Identity and address of the applicant<br>Identité et adresse du requérant<br>Landgericht Mannheim<br>A 1, 1<br><br>68159 Mannheim | Address of receiving authority<br>Adresse de l'autorité destinataire<br>Process Forwarding International,<br>633 Yesler Way,<br>Seattle, WA 98104,<br><br>USA |

Die ersuchende Stelle beehrt sich, der Bestimmungsbehörde - in zwei Stücken - die unten angegebenen Schriftstücke mit der Bitte zu übersenden, davon nach Artikel 5 des Übereinkommens ein Stück unverzüglich dem Empfänger zustellen zu lassen, nämlich

The undersigned applicant has the honour to transmit - in duplicate - the documents listed below and, in conformity with article 5 of the abovementioned Convention, requests prompt service of one copy thereof on the addressee, i. e.,

Le requérant soussigné a l'honneur de faire parvenir - en double exemplaire - à l'autorité destinataire les documents ci-dessous énumérés, en la priant, conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au destinataire, à savoir:

(Name und Anschrift)  Microsoft Corp.
(identity and address)  One Microsoft Way
(identité et adresse)

Redmond, WA 98052-6399 / USA

RECEIVED  July 31, 2013
PFSCE CORP.
BY: _____ Dorothy A. Nelson, Vice President

(a) hilfsweise in einer der gesetzlichen Formen (Artikel 5 Absatz 1 Buchstabe a) *).
in accordance with the provisions of sub-paragraph a) of the first paragraph of article 5 of the Convention *).
selon les formes légales (article 5, alinéa premier, lettre a) *).

b) in der folgenden besonderen Form (Artikel 5 Absatz 1 Buchstabe b) *): (Streichen!)
in accordance with the following particular method (sub-paragraph b) of the first paragraph of article 5) *):
selon la forme particulière suivante (article 5, alinéa premier, lettre b) *):

c) gegebenenfalls durch einfache Übergabe (Artikel 5 Absatz 2) *). (Streichen!)
by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5) *).
le cas échéant, par remise simple (article 5, alinéa 2) *).

Die Behörde wird gebeten, der ersuchenden Stelle ein Stück des Schriftstücks - und seiner Anlagen *) - mit dem Zustellungszeugnis auf der Rückseite zurückzusenden oder zurücksenden zu lassen.

The authority is requested to return or to have returned to the applicant a copy of the documents - and of the annexes *) - with a certificate as provided on the reverse side.

Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes *) - avec l'attestation figurant au verso.

| | | |
|---|---|---|
| Verzeichnis der Schriftstücke<br>List of documents<br>Enumération des pièces<br><br>statement of claim 26.04.2013<br>court order 02.05.2013<br><br>2 O 79/13 | Ausgefertigt in Mannheim<br>Done at<br>Fait à<br><br><br>Unterschrift und/oder Stempel.<br>Signature and/or stamp.<br>Signature et/ou cachet.<br><br><br>Dr. Kircher<br>Vors. Richter am Landgericht | am 06. Mai 2013<br>the<br>le |



*) Unzutreffendes streichen.
Delete if inappropriate.
Rayer les mentions inutiles.

ZU 35 Zustellungsantrag und Zustellungszeugnis

## ZUSTELLUNGSZEUGNIS
### CERTIFICATE
### ATTESTATION

Die unterzeichnete Behörde beehrt sich, nach Artikel 6 des Übereinkommens zu bescheinigen,

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,

1. dass der Antrag erledigt worden ist *)

that the document has been served *)
que la demande a été exécutée *)

- am (Datum)

the (date)
le (date)

- in (Ort, Straße, Nummer)

at (place, street, number)
à (localité, rue, numéro)

- in einer der folgenden Formen nach Artikel 5:

in one of the following methods authorised by article 5:
dans une des formes suivantes prévues à l'article 5:

a) in einer der gesetzlichen Formen (Artikel 5 Absatz 1 Buchstabe a) *).

in accordance with the provisions of sub-paragraph a) of the first paragraph of article 5 of the Convention *).
selon les formes légales (article 5, alinéa premier, lettre a) *).

b) in der folgenden besonderen Form *):

in accordance with the following particular method *):
selon la forme particulière suivante *):

c) durch einfache Übergabe *).

by delivery to the addressee, who accepted it voluntarily *).
par remise simple *).

Die in dem Antrag erwähnten Schriftstücke sind übergeben worden an:

The documents referred to in the request have been delivered to:
Les documents mentionnés dans la demande ont été remis à:

- (Name und Stellung der Person)

(identity and description of person)
(identité et qualité de la personne)

- Verwandschafts-, Arbeits- oder sonstiges Verhältnis zum Zustellungsempfänger:

relationship to the addressee (family, business or other):
liens de parenté, de subordination ou autres, avec le destinataire de l'acte:

2. dass der Antrag aus folgenden Gründen nicht erledigt werden konnte *):

that the document has not been served, by reason of the following facts *):
que la demande n'a pas été exécutée, en raison des faits suivants *):

Nach Artikel 12 Absatz 2 des Übereinkommens wird die ersuchende Stelle gebeten, die Auslagen, die in der beiliegenden Aufstellung im Einzelnen angegeben sind, zu zahlen oder zu erstatten *).

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement *).
Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint *).

Anlagen

Annexes
Annexes

Zurückgesandte Schriftstücke:

Documents returned:
Pièces renvoyées:

Gegebenenfalls Erledigungsstücke:

In appropriate cases, documents establishing the service:
Le cas échéant, les documents justificatifs de l'exécution:

Ausgefertigt in                                      am

Done at                                              the
Fait à                                               le

Unterschrift und/oder Stempel.

Signature and/or stamp.
Signature et/ou cachet.

*) Unzutreffendes streichen.

Delete if inappropriate.
Rayer les mentions inutiles.

ZU 35 Zustellungsantrag und Zustellungszeugnis

**ANGABEN ÜBER DEN WESENTLICHEN INHALT DES ZUZUSTELLENDEN SCHRIFTSTÜCKS**

**SUMMARY OF THE DOCUMENT TO BE SERVED**

**ÉLÉMENTS ESSENTIELS DE L'ACTE**

Übereinkommen über die Zustellung gerichtlicher und außergerichtlicher Schriftstücke im Ausland
in Zivil- oder Handelssachen, unterzeichnet in Den Haag am 15. November 1965.
(Artikel 5 Absatz 4)

Convention on the service abroad of judicial and extrajudicial documents in civil or commercial
matters, signed at The Hague, on the 15th of November, 1965.
(article 5, fourth paragraph)

Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires
en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.
(article 5, alinéa 4)

Bezeichnung und Anschrift der ersuchenden Stelle:   Landgericht Mannheim, 68149 Mannheim

Name and address of the requesting authority:
Nom et adresse de l'autorité requérante:

Bezeichnung der Parteien *):

Particulars of the parties *):
Identité des parties *):

Motorola Mobility LLC, 600 North US Highway 45, Libertyville, IL 60048 / USA
- Klägerin -
<u>Prozessbevollmächtigte:</u>
Rechtsanwälte quinn emanuel u. Koll., Mannheim, Gerichts-Fach 227
(01980.40411/20428062.2)

**gegen**

Microsoft Corp., One Microsoft Way, Redmond, WA 98052-6399 / USA
- Beklagte -

**GERICHTLICHES SCHRIFTSTÜCK **)**

**JUDICIAL DOCUMENT **)**

**ACTE JUDICIAIRE **)**

Art und Gegenstand des Schriftstücks:  statement of claim 26.04.2013, court order 02.05.2013

Nature and purpose of the document:
Nature et objet de l'acte:

Art und Gegenstand des Verfahrens, gegebenenfalls Betrag          lawsuit on account of patent infringement
der geltend gemachten Forderung:

Nature and purpose of the proceedings and, where appropriate, the amount in dispute:
Nature et objet de l'instance, les cas échéant, le montant du litige:

Termin und Ort für die Einlassung auf das Verfahren **):

Date and place for entering appearance **):
Date et lieu de la comparution **):

Gericht, das die Entscheidung erlassen hat **):

Court which has given judgment **):
Juridiction qui a rendu la décision **):

Datum der Entscheidung **):

Date of judgment **):
Date de la décision **):

Im Schriftstück vermerkte Fristen **):   peremptory time limit of 3 weeks upon service, time limit of 6 weeks for statement of defense

Time limits stated in the document **):
Indication des délais figurant dans l'acte **):

**AUSSERGERICHTLICHES SCHRIFTSTÜCK **)**

**EXTRAJUDICIAL DOCUMENT **)**

**ACTE EXTRAJUDICIAIRE **)**

Art und Gegenstand des Schriftstücks:

Nature and purpose of the document:
Nature et objet de l'acte:

Im Schriftstück vermerkte Fristen **):

Time limits stated in the document **):
Indication des délais figurant dans l'acte **):

*) Gegebenenfalls Name und Anschrift der an der Übersendung des Schriftstücks interessierten Person.

If appropriate, identity and address of the person interested in the transmission of the document.
S'il y a lieu, identité et adresse de la personne intéressée à la transmission de l'acte.

**) Unzutreffendes streichen. Delete if inappropriate.  Rayer les mentions inutiles.          ZU 36 Inhaltsangaben des zuzustellenden Schriftstücks

*Certified translation from German into English language*

[Coat of arms] **Regional State Court Mannheim**
2nd Civil Division

Landgericht [Regional State Court] Mannheim • 68149 Mannheim

| | |
|---|---|
| | Address for all correspondence:     68149 Mannheim |
| | Delivery Address:     A 1,1 <br>     68159 Mannheim |
| Microsoft Corp. <br> One Microsoft Way <br> Redmond, WA 98052-6399 / USA | Telephone (Switchboard):     0621 292-0 |
| | Fax:     0621 292-1314 |
| | E-Mail: Poststelle@LGMannheim.justiz.bwl.de <br> (Not to be used for binding procedural pleadings [Prozesserklärungen]!) |
| | Next parking opportunity:     Underground parking garage - driveway <br>     located A1, 4 (subject to charges) |
| | Streetcar stop:     Schloss [Castle] |

| File number: (Please always indicate) | Your reference | Telephone (Direct line) | Mannheim |
|---|---|---|---|
| 2 O 79/13 | | (0621) 292-2671 | 02 May 2013 |

**Court order** in the law suit **Motorola Mobility LLC versus Microsoft Corp.**
Judge-Rapporteur: Judge at Regional State Court [Landgericht] Wedler

I.

The main hearing shall be prepared by a written preliminary proceeding.

II.

The defendant is hereby served with the enclosed statement of claim.

The defendant is expressly advised to read the separately enclosed legal instructions, in particular to be aware of the legal prejudices that may occur, if the instructions are not followed.

The defendant is also requested to appoint an attorney within a
           **peremptory time limit of 3 weeks upon service of this statement of claim,**
in the event that the defendant wishes to defend the complaint, and to have the appointed attorney file a declaration with the court that the defendant wishes to defend the lawsuit.

Furthermore, the defendant is requested to reply to this complaint
           **within an additional time limit of 6 weeks.**

The Presiding Judge:
Dr. Kircher, Presiding Judge at the *Landgericht* [Regional State Court]

Executed
[signature]
JOS Freisinger, Senior judicial secretary
acting as Registrar of the administrative office of the court

                                         [Seal] Regional State Court Mannheim

# Important information for the Defendant

## 1. Legal Representation by an Attorney

In all matters brought before the *Landgericht* [German Regional State Court], the parties must be represented by an attorney as their authorized representative. Only a lawyer is qualified to submit valid motions or defenses on your behalf. The court is legally prohibited from considering a party's own allegations and pleadings.

## 2. Judgment by Default in case of late notice of willingness to defend the complaint

If the complaint is directed against you as defendant and you do not notify the court within a time limit of ~~two~~ *3* weeks that you intend to defend yourself against the complaint, the court may, upon motion of the plaintiff and without hearing, render a default judgment against you.

The time limit cannot be extended. An objection filed against a payment order issued in the course of a preceding collection proceeding does not constitute a notice of the intent to defend the complaint.

If the court renders a default judgment against you, the court will also order you to bear the costs of the lawsuit, including, but not limited to the costs incurred by the opposing party. Default judgments are provisionally enforceable without posting bond.

The declaration of your intent to defend yourself against the complaint is only valid, if it is submitted on your behalf by your attorney.

## 3. Reply to the Complaint

If the complaint is directed against you as the defendant, please observe that your reply to the complaint, as requested by the court, must contain the following:

Your response to the complaint must include everything that you are able to submit in your defense, and must be received by the court no later than on the last day of the time limit set by court.

If you fail to comply with the set time limit for replying to the complaint, you are, as a rule, cut off from asserting any defense against the complaint. You therefore run the risk of losing the lawsuit solely on the grounds of non-compliance with a set time limit.

The court may consider your reply to the complaint only, if it is submitted by your attorney.

---

*Für die Richtigkeit der Übersetzung ins Englische*
*I hereby certify that this is a true and correct translation of the original German document which I have seen*
*Publicly appointed and sworn translator for the courts of the state of Baden-Württemberg, Federal Republic of Germany*
*Mannheim/Ludwigshafen, 13 May 2013*

*Wording of translator's seal:*
*Sworn and appointed by the Mannheim Regional State Court as an interpreter and translator for Russian and English*

ZP 601 – Written preliminary proceeding (070516)



# Landgericht Mannheim
## 2. Zivilkammer

Landgericht Mannheim * 68149 Mannheim

Microsoft Corp.
One Microsoft Way
Redmond, WA 98052-6399 / USA

| | |
|---|---|
| Korrespondenz-Adresse: | 68149 Mannheim |
| Liefer-Adresse: | A 1, 1<br>68159 Mannheim |
| Telefon (Vermittlung): | (0621)2 92-0 |
| Telefax: | (0621)2 92-13 14 |
| E-Mail: Poststelle@LGMannheim.justiz.bwl.de<br>(Nicht für verbindliche Prozesserklärungen!) | |
| Nächste Parkmöglichkeit: | Tiefgarage - Zufahrt in A 1, 4<br>(gebührenpflichtig) |
| Straßenbahn-Haltestelle: | Schloss |

| Aktenzeichen (Bitte stets angeben) | Ihr Zeichen | Telefon (Durchwahl) | Mannheim |
|---|---|---|---|
| 2 O 79/13 | | (0621)2 92-26 71 | 02. Mai 2013 |

## Verfügung im Rechtsstreit Motorola Mobility LLC gegen Microsoft Corp.
Berichterstatter: Richter am Landgericht Wedler

I.

Der Haupttermin soll durch ein schriftliches Vorverfahren vorbereitet werden.

II.

Der Beklagten wird die beiliegende Klageschrift zugestellt.

Die Beklagte wird ausdrücklich auf die separat beiliegende Belehrung hingewiesen, insbesondere auf die Rechtsnachteile, die eintreten können, wenn die Belehrung nicht beachtet wird.

Zugleich wird sie aufgefordert, wenn sie sich gegen die Klage verteidigen will, einen Rechtsanwalt zu bestellen und durch diesen binnen einer
**Notfrist von 3 Wochen nach Zustellung der Klageschrift**
dem Gericht anzuzeigen, dass sie der Klage entgegentreten will.

Die Beklagte wird außerdem aufgefordert, binnen einer
**Frist von weiteren 6 Wochen**
auf die Klage zu erwidern

Der Vorsitzende:
Dr. Kircher, Vors. Richter am Landgericht

Ausgefertigt

Freisinger, Justizobersekretärin
als Urkundsbeamtin der Geschäftsstelle

ZP 601 - Schriftliches Vorverfahren (070516)

# Wichtige Hinweise für den Beklagten

## 1. Vertretung durch Rechtsanwälte

Vor dem Landgericht müssen die Parteien sich durch einen Rechtsanwalt als Bevollmächtigten vertreten lassen. Nur dieser Rechtsanwalt kann wirksam Anträge stellen oder Einwendungen erheben; eigenes Vorbringen der Parteien darf das Gericht nicht berücksichtigen.

## 2. Versäumnisurteil bei nicht rechtzeitiger Anzeige der Verteidigungsbereitschaft   *3*

Richtet sich die Klage gegen Sie als Beklagten und zeigen Sie nicht innerhalb der Frist von zwei Wochen an, dass Sie der Klage entgegentreten wollen, so kann das Gericht auf Antrag des Klägers ohne mündliche Verhandlung Versäumnisurteil gegen Sie erlassen.

Die Frist kann nicht verlängert werden. Der Widerspruch gegen den Mahnbescheid in einem vorausgegangenen Mahnverfahren gilt noch nicht als Anzeige der Verteidigungsabsicht.

Sofern Versäumnisurteil gegen Sie ergeht, werden Sie darin auch dazu verurteilt, die Kosten des Rechtsstreits zu tragen; hierzu gehören auch die Kosten Ihres Prozessgegners. Ein Versäumnisurteil ist ohne Sicherheitsleistung vorläufig vollstreckbar.

Die Erklärung, der Klage entgegentreten zu wollen, ist nur wirksam, wenn sie durch Ihren Rechtsanwalt abgegeben wird.

## 3. Klageerwiderung

Richtet sich die Klage gegen Sie als Beklagten, beachten Sie bitte für die Klageerwiderung, zu der Sie das Gericht aufgefordert hat:

Die Klageerwiderung muss alles enthalten, was Sie zu Ihrer Verteidigung vorbringen können. Sie muss spätestens am letzten Tag der Frist, die Ihnen dafür gesetzt ist, beim Gericht eingehen.

Wenn Sie die Frist zur Klageerwiderung versäumen, ist Ihnen im Allgemeinen jede Verteidigung gegen die Klage abgeschnitten. Sie laufen damit Gefahr, allein wegen dieser Fristversäumung den Prozess zu verlieren.

Das Gericht kann die Klageerwiderung nur berücksichtigen, wenn sie durch Ihren Rechtsanwalt eingereicht wird.

**quinn emanuel** deutschland

Mollstraße 42, 68165 Mannheim, Germany | TEL +49 (0) 621 43298-6000 FAX +49 (0) 621 43298-6100

Mannheim Regional Court
Panels for patent matters
68149 Mannheim

Our ref.      01980.40411 / 20428062.2
              MG/JE

Dr. Marcus Grosch, LLM. (Yale)
marcusgrosch@quinnemanuel.com

Dr. Jan Ebersohl
janebersohl@quinnemanuel.com

26 April 2013

**Complaint**

in the matter of

**Motorola Mobility LLC**, 600 North US Highway 45, Libertyville, IL 60048, USA

- Plaintiff -

**Case no.: NEW**
**Factual connection with**
**2 O 240/11, 2 O 373/11,**
**2 O 376/11, and 2 O 387/11**
Cert. copy encl.

Attorneys of record: German-licensed attorneys of Quinn Emanuel Urquhart & Sullivan, LLP, in particular Dr. Marcus Grosch and Dr. Jan Ebersohl, Mollstrasse 42, 68165 Mannheim,

v e r s u s

**Microsoft Corp.**, One Microsoft Way, Redmond, WA 98052-6399, USA

- Defendant -

regarding claims arising from a patent license agreement

we represent the Plaintiff for whom we are bringing suit with the following petitions:

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL +1 213-443-3000 FAX 213-443-3100

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL +1 212-849-7000 FAX 212-849-7100

SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL +1 415-875-6600 FAX 415-875-6700

SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065 | TEL +1 650-801-5000 FAX 650-801-5100

CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois 60661 | TEL +1 312-705-7400 FAX 312-705-7401

WASHINGTON, D.C. | 1299 Pennsylvania Ave. NW, Suite 825, Washington, D.C. 20004 | TEL +1 202-538-8000 FAX 202-538-8100

LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 (0) 20 7653-2000 FAX +44 (0) 20 7653-2100

TOKYO | NBF Hibiya Bldg., 25F 1-1-7, Uchisaiwai-cho Chiyoda-ku, Tokyo, 100-0011 Japan | TEL +81 (0) 3 5510 1711 FAX +81 (0) 3 5510-1712

MOSCOW | 3rd Floor, Voentorg Building, 10 Vozdvizhenka Street, Moscow, Russia 125009 | TEL +7 495 797 36 66 FAX +7 495 797 36 67

HAMBURG | An der Alster 3, 20099 Hamburg, Germany | TEL +49 (0) 40 89728-7000 FAX +49 (0) 40 89728-7100

I. That the Defendant be ordered to pay the Plaintiff EUR 2,032,323.00 plus interest on EUR 1,760,212.00 at the rate of the lesser of 10% or 8 percentage points above the base rate since 1 July 2012.

II. That the Defendant bear the costs of the litigation.

III. That the decision be provisionally enforceable, against provision of a security if necessary.

If the Court orders written preliminary proceedings, then we ask the Court, even now, to issue a default judgment pursuant to § 331 (3) ZPO in case of default of the Defendant.

With the present Complaint, the Plaintiff – by means of an action for partial payment – is asserting part of the claims from a patent license agreement between General Instrument Corp. and the Defendant assigned to it.

## A.
## Facts of the case

The present legal dispute is closely related factually to the patent infringement proceedings 2 O 240/11, 2 O 373/11, 2 O 376/11, and 2 O 387/1, which are known to the panel, between General Instrument Corp. on the one side and the Defendant and its subsidiaries Microsoft Ireland Operations Ltd. and Microsoft Deutschland GmbH on the other (hereinafter "the infringement proceedings"). The infringement proceedings are currently pending at the Higher Regional Court as case numbers 6 U 44/12, 6 U 45/12, 6 U 46/12, and 6 U 47/12. We encourage reference to the cases.

## I.
## Background of the present legal dispute

1. In the infringement proceedings, General Instrument Corp. pursued a claim against the above-mentioned Microsoft companies for infringement of the German part of European patents EP 0 615 384 and EP 0 538 667 (hereinafter "the patents in suit"). The patents in suit involve two inventions in the field of video compression and – as the Court determined in its decisions of 2 May 2012 – are essential for the H.264 video standard.

2. In the above-mentioned patent infringement proceedings, the Defendant raised the objection of antitrust compulsory license and in this connection, presented an offer to conclude a license agreement, a so-called Orange Book offer. We hereby submit the first offer, dated 23 December 2011, as

Complaint of 26 April 2013
in re. Motorola Mobility LLC / Microsoft Corp.
LG Mannheim, factual connection with 2 O 240/11 et al.

- **Exhibit QE 1** -.

In the letter accompanying the offer, the Defendant – referring to the decision of the Mannheim Regional Court of 9 December 2011 in case 7 O 122/11 – also acknowledged on the merits its obligation to pay damages for past actions according to German law. We hereby submit the accompanying letter of 23 December 2011 as

- **Exhibit QE 2** -.

3.    The Defendant has modified its Orange Book offer several times in the ensuing period of time. Finally, in its Statement of grounds for appeal on 31 August 2012, it presented the offer submitted – as cover letter – here as

- **Exhibit QE 3** -.

As is clear from the preamble to this offer, the accompanying letters – and therefore also the letter of 23 December 2011 – are, as parts of the agreement, also expressly included in the agreement.

In the Statement of grounds for appeal of 31 August 2012, the Defendant again confirmed its acknowledgment of its obligation to pay damages, which the Defendant had also expressly declared in the proceedings before the Court – for example in the pleading of 23 December 2011.

## II.
### Regarding the conclusion of the Orange Book agreement

1.    On 13 January 2013, General Instrument Corp. accepted the Defendant's Orange Book offer of 31 August 2012. The signed agreement, which we hereby submit as

- **Exhibit QE 4** -,

was sent to the Defendant with the letter of 15 January 2013 – with an advance copy sent by email on the same day. In the accompanying letter of 15 January 2013, which we hereby submit as

- **Exhibit QE 5** -,

General Instrument Corp. once again referred to the above-mentioned written acknowledgement by the Defendant of its obligation to pay damages.

J.1                                         3                              Complaint of 26 April 2013
in re. Motorola Mobility LLC / Microsoft Corp.
LG Mannheim, factual connection with 2 O 240/11 et al.

2.      With its letter of 18 January 2013, which we hereby submit as

- Exhibit QE 6 -,

the Defendant refused to acknowledge the conclusion of the license agreement. In it, the Defendant referred to the acceptance of its contractual offer by General Instrument Corp. as a "counteroffer" that contained supposedly different contractual provisions. The Defendant supported this assertion with the fact that in the letter of 15 January 2013, General Instrument Corp. had referred to the Defendant's acknowledgment of its obligation to pay damages.

3.      With the written reply of 1 March 2013, which we hereby submit as

- Exhibit QE 7 -,

General Instrument Corp. once again clarified that the Defendant's refusal is incomprehensible given that it had itself issued an express written acknowledgement of its obligation to pay damages and that the amount of damages should "*be determined in accordance with the respective principles set forth under German law.*"

### III.
### Assignment of claims to the Plaintiff

In the meantime, the Plaintiff has become the owner of the patents in suit and is recorded as such in the patent register, which is available for all to see. Furthermore, General Instrument Corp. assigned to the Plaintiff all claims arising from the license agreement with the Defendant and from the above-discussed acknowledgement by the Defendant of its obligation to pay damages. We hereby submit a copy of the assignment as

- Exhibit QE 8 -.

### IV.
### Regarding the Defendant's contractual obligations

1.      In clause 3.3, the license agreement stipulates that within one month of the conclusion of the agreement, the Defendant must pay a license payment for so-called "Old Products." The wording of clause 3.3 reads as follows:

> "*For all computing devices containing an AVC Decoder or AVC Codec provided by Microsoft or Microsoft Affiliates, which were made or sold before the execution of this Agreement, within 1 month after the execution of this Agreement, Microsoft shall pay GI a one-time payment for the Licensed GI Patents. Any back royalties shall bear interest,*

./.1                                   4                    Complaint of 26 April 2013
in re. Motorola Mobility LLC / Microsoft Corp.
LG Mannheim, factual connection with 2 O 240/11 et al.

*compounded monthly, at the lesser of ten percent (10%) per annum or the highest interest rate permitted to be charged by GI according to the (German Civil Code (Bürgerliches Gesetzbuch).* "

2. In the infringement proceedings, the Defendant issued a statement describing its sales activities for these products through June 2012. We hereby submit a copy of this statement as

- Exhibit QE 9 -.

In this statement, the Defendant indicated the license fees that it had calculated as well as the interest to be paid in its opinion under clause 3.3 (10% or 8 percentage points above the base rate as the *"highest interest rate permitted to be charged by GI"*).

3. The Plaintiff cannot verify this statement, but for the time being, is basing its prayer for relief – in the part action – on the Defendant's calculations. We assume that the Defendant will not contest its own calculations in the present litigation. The Plaintiff expressly reserves the right, after a proper rendering of accounts by the Defendant, to expand its claims arising from clause 3.3 for the period through June 2012 as needed. The Plaintiff likewise expressly reserves the right to pursue its payment claim arising from clause 3.3 of the license agreement for actions after 1 July 2012 as well. Finally, it should be clarified that the Plaintiff's damages claim – acknowledged by the Defendant – exceeding the license payments according to clause 3.3 is not the subject of the present Complaint and remains expressly reserved for enforcement at a later time.

4. The Defendant has not fulfilled its obligations under clause 3.3 of the license agreement to either General Instrument Corp. or the Plaintiff. The Defendant has neither issued payment nor offered the money held in deposit as part of the infringement proceedings. It therefore became necessary to take legal action.

**B.**
**Legal analysis**

**I.**
**Jurisdiction**

1. The Mannheim Regional Court has international, functional, and local jurisdiction for the present legal dispute, which is stipulated by the express jurisdiction agreement in clause 8.2 of the license agreement.

/.1                                                    5                          Complaint of 26 April 2013
in re. Motorola Mobility LLC / Microsoft Corp.
LG Mannheim, factual connection with 2 O 240/11 et al.

2.    Since according to the unanimous opinion of the case law and literature, the most current procedural agreements – particularly arbitration agreements and jurisdiction agreements – apply, even for and against singular or universal successors of the contracting parties (see *Geimer*, Int. ZPR, margin nos. 3816 and 1723 with further references), the Plaintiff, as the singular successor of General Instrument Corp., can also invoke the jurisdiction agreement in clause 8.2 of the license agreement.

## II.
## Regarding the payment claim

1.    The payment claim arises directly from clause 3.3 of the license agreement and the Plaintiff's right to sue arises from the declaration of assignment submitted as Exhibit QE 8. The Defendant's objection that the acceptance of the agreement by General Instrument Corp. constituted a "counteroffer" is unconvincing because General Instrument Corp. merely referred to the Defendant's written acknowledgement – whose existence is undisputed – of its obligation to pay damages. The claim for interest also arises directly from clause 3.3.

2.    The Defendant provided a statement about the infringing acts up to 30 June 2012 and estimated the amount supposedly arising from clause 3.3 (including interest) to be EUR 2,032,323.00 (see the itemization on p. 6 in Exhibit QE 9). This amount is composed of royalty in the amount of EUR 1,760,212.00 and interest accrued by 30 June 2012 in the amount of EUR 272,111.00.

3.    The interest for the period starting 1 July 2012 is calculated as set forth in clause 3.3. Thus, interest amounting to the lesser of 10% or 8 percentage points above the base rate is being asserted. The reference amount for the claim for interest is the royalty that accrued by 30 June 2012 according to the information provided by the Defendant, amounting to EUR 1,760,212.00.

A check for EUR 22,828.00 is enclosed as an advance payment of court fees.

An English-language translation of the Complaint for the purpose of service abroad will be filed subsequently immediately. All of the exhibits are in English so that no additional translation is required in this regard for service abroad.

[*Signature*]
(Dr. M. Grosch)
Attorney-at-law

Complaint of 26 April 2013
in re. Motorola Mobility LLC / Microsoft Corp.
LG Mannheim, factual connection with 2 O 240/11 et al.

<u>Exhibits</u>
QE 1 to QE 9

Complaint of 26 April 2013
in re. Motorola Mobility LLC / Microsoft Corp.
LG Mannheim, factual connection with 2 O 240/11 et al.

**quinn emanuel** deutschland

Mollstraße 42, 68165 Mannheim, Germany | TEL +49 (0) 621 43298-6000 FAX +49 (0) 621 43298-6100

Landgericht Mannheim
Patentstreitkammern
68149 Mannheim

```
┌─────────────────────────┐
│ LANDGERICHT MANNHEIM    │
│ Eing. 2 6. APR. 2013    │
│ Anlage                  │
└─────────────────────────┘
```

·Unser Zeichen      01980.40411 / 20428062.2
                    MG/JE

Dr. Marcus Grosch, LLM. (Yale)
marcusgrosch@quinnemanuel.com

Dr. Jan Ebersohl
janebersohl@quinnemanuel.com

26. April 2013

**Klage**

In Sachen

**Motorola Mobility LLC**, 600 North US Highway 45, Libertyville, IL 60048, USA

- Klägerin -

**Az.: NEU**
**Sachzusammenhang mit**
**2 O 240/11, 2 O 373/11,**
**2 O 376/11 und 2 O 387/11**
Begl. Abschr. anb.

Proz. Bev.: Die in Deutschland zugelassenen Rechtsanwälte der Quinn Emanuel Urquhart & Sullivan, LLP, insbesondere Dr. Marcus Grosch und Dr. Jan Ebersohl, Mollstraße 42, 68165 Mannheim

g e g e n

**Microsoft Corp.**, One Microsoft Way, Redmond, WA 98052-6399, USA

- Beklagte -

wegen Ansprüchen aus Patentlizenzvertrag

vertreten wir die Klägerin, für die wir Klage erheben mit folgenden Anträgen:

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL +1 213-443-3000 FAX 213-443-3100

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL +1 212-849-7000 FAX 212-849-7100

SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL +1 415-875-6600 FAX 415-875-6700

SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065 | TEL +1 650-801-5000 FAX 650-801-5100

CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois 60661 | TEL +1 312-705-7400 FAX 312-705-7401

WASHINGTON, D.C. | 1299 Pennsylvania Ave. NW, Suite 825, Washington, D.C. 20004 | TEL +1 202-538-8000 FAX 202-538-8100

LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 (0) 20 7653-2000 FAX +44 (0) 20 7653-2100

TOKYO | NBF Hibiya Bldg., 25F 1-1-7, Uchisaiwai-cho Chiyoda-ku, Tokyo, 100-0011 Japan | TEL +81 (0) 3 5510 1711 FAX +81 (0) 3 5510-1712

MOSCOW | 3rd Floor, Voentorg Building, 10 Vozdvizhenka Street, Moscow, Russia 125009 | TEL +7 495 797 36 66 FAX +7 495 797 36 67

HAMBURG | An der Alster 3, 20099 Hamburg, Germany | TEL +49 (0) 40 89728-7000 FAX +49 (0) 40 89728-7100

**Hamburg**

An der Alster 3                    Dr. Nadine Herrmann
20099 Hamburg
TEL +49 (0) 40 89728-7000
FAX +49 (0) 40 89728-7100

**Mannheim**

Mollstraße 42                      Dr. Johannes Bukow
68165 Mannheim                     Dr. Marcus Grosch
TEL +49 (0) 621 43298-6000
FAX +49 (0) 621 43298-6100

Quinn Emanuel Urquhart & Sullivan LLP ist eine in Kalifornien, USA unter der Registernummer 201996011004 eingetragene Limited Liability Partnership mit Sitz in 865 S. Figueroa St., 10th Floor, Los Angeles, California 90017 und unterliegt den Bestimmungen des Staates Kalifornien. Jeder Hinweis auf Partner bezieht sich auf einen Gesellschafter der Quinn Emanuel Urquhart & Sullivan LLP oder einen Mitarbeiter oder Berater mit gleichwertigem Status und gleichwertiger Qualifikation. Berater (Counsel oder Of Counsel) und Associates sind nicht Gesellschafter der Quinn Emanuel Urquhart & Sullivan LLP. Eine Liste aller Gesellschafter der Quinn Emanuel Urquhart & Sullivan LLP sowie der als Partner bezeichneten Personen, die nicht Gesellschafter sind, kann am Sitz der Gesellschaft oder im Mannheimer Büro eingesehen werden.

Quinn Emanuel Urquhart & Sullivan LLP is a Limited Liability Partnership, registered in California, USA, registry number 201996011004 having its seat in 865 S. Figueroa St., 10th Floor, Los Angeles, California 90017 and is organized under the regulations of the State of California. Every hint to partners refers to a partner of Quinn Emanuel Urquhart & Sullivan LLP or an associate or counsel with an equivalent status and equivalent qualification. Counsels, of counsels and associates are not partners of Quinn Emanuel Urquhart & Sullivan LLP. A list of all partners of Quinn Emanuel Urquhart & Sullivan LLP and persons referred to as partners, while not belonging to the partnership, can be inspected at the seat of the partnership or at the Mannheim office.

I.       Die Beklagte wird verurteilt, an die Klägerin EUR 2.032.323,00 nebst Zinsen aus EUR 1.760.212,00 in Höhe des jeweils niedrigeren Werts aus 10% oder 8 Prozentpunkten über dem Basiszinssatz seit dem 1. Juli 2012 zu zahlen.

II.     Die Beklagte trägt die Kosten des Rechtsstreits.

III.    Das Urteil ist, gegebenenfalls gegen Sicherheitsleistung, vorläufig vollstreckbar.

Falls die Kammer das schriftliche Vorverfahren anordnen sollte, beantragen wir für den Fall der Säumnis der Beklagten schon jetzt den Erlass eines Versäumnisurteils nach § 331 Abs. 3 ZPO.

Mit der vorliegenden Klage macht die Klägerin – im Wege der Teil-Zahlungsklage – einen Teil der an sie abgetretenen Ansprüche aus einem Patentlizenzvertrag zwischen der General Instrument Corp. und der Beklagten geltend.

## A.
## Sachverhalt

Der vorliegende Rechtsstreit ist sachlich eng verknüpft mit den der Kammer bekannten Patentverletzungsverfahren 2 O 240/11, 2 O 373/11, 2 O 376/11 und 2 O 387/11 zwischen der General Instrument Corp. auf der einen Seite sowie der Beklagten und ihrer Tochtergesellschaften Microsoft Ireland Operations Ltd. und Microsoft Deutschland GmbH auf der anderen Seite (nachstehend „die Verletzungsverfahren"). Die Verletzungsverfahren sind derzeit beim Oberlandesgericht unter den Aktenzeichen 6 U 44/12, 6 U 45/12, 6 U 46/12 und 6 U 47/12 anhängig. Wir regen die Beiziehung der Akten an.

## I.
## Zum Hintergrund des vorliegenden Rechtsstreits

1.     In den Verletzungsverfahren hat die General Instrument Corp. die vorgenannten Microsoft-Gesellschaften wegen Verletzung des deutschen Teils der europäischen Patente EP 0 615 384 und EP 0 538 667 (nachstehend „die Klagepatente") in Anspruch genommen. Die Klagepatente betreffen zwei Erfindungen auf dem Gebiet der Videokompression und sind – wie die Kammer in ihren Urteilen vom 2. Mai 2012 festgestellt hat – essentiell für den H.264-Videostandard.

2.     Die Beklagte hat im Rahmen der vorgenannten Patentverletzungsverfahren den kartellrechtlichen Zwangslizenzeinwand erhoben und in diesem Zusammenhang ein Angebot auf Abschluss eines Lizenzvertrages, ein so genanntes Orange Book-Angebot, unterbreitet. Das erste, vom 23. Dezember 2011 datierende Angebot fügen wir als

01980.40411/20428062.2             2                      Klage vom 26. April 2013
i. Sa. Motorola Mobility LLC / Microsoft Corp.
LG Mannheim, Sachzusammenhang mit 2 O 240/11 u.a.

- Anlage QE 1 -

bei.

In dem Begleitschreiben zu dem Angebot hat die Beklagte – unter Bezugnahme auf das Urteil des Landgerichts Mannheim vom 9. Dezember 2011 in dem Verfahren 7 O 122/11 – darüber hinaus ihre Pflicht, für vergangene Handlungen Schadensersatz nach deutschem Recht zu leisten, dem Grunde nach anerkannt. Das Begleitschreiben vom 23. Dezember 2011 fügen wir als

- Anlage QE 2 -

bei.

3.     Die Beklagte hat ihr Orange Book-Angebot in der Folgezeit mehrere Male modifiziert. Zuletzt hat sie im Zuge ihrer Berufungsbegründungen am 31. August 2012 das - als Begleitschreiben - als

- Anlage QE 3 -

beigefügte Angebot unterbreitet. Wie sich der Präambel dieses Angebots entnehmen lässt, sind auch die Begleitschreiben – und damit auch das Schreiben vom 23. Dezember 2011 – ausdrücklich als Vertragsbestandteil in den Vertrag einbezogen.

In den Berufungsbegründungen vom 31. August 2012 hat die Beklagte dabei ein weiteres Mal das Anerkenntnis ihrer Schadensersatzpflicht bestätigt, welches die Beklagte auch im Verfahren vor der Kammer – etwa im Schriftsatz vom 23. Dezember 2011 – ausdrücklich erklärt hatte.

## II.
## Zum Abschluss des Orange Book-Vertrages

1.     Die General Instrument Corp. hat am 13. Januar 2013 das Orange Book-Angebot der Beklagten vom 31. August 2012 angenommen. Der unterzeichnete Vertrag, der als

- Anlage QE 4 -

beigefügt ist, wurde der Beklagten mit Schreiben vom 15. Januar 2013 – am selben Tag vorab per Email – übersendet. In dem Begleitschreiben vom 15. Januar 2013, das wir als

- **Anlage QE 5 -**

beifügen, verwies die General Instrument Corp. nochmals auf das oben dargestellte schriftliche Anerkenntnis der Schadensersatzpflicht der Beklagten.

2.      Mit Schreiben vom 18. Januar 2013, das wir als

- **Anlage QE 6 -**

beifügen, verweigerte die Beklagte, den Abschluss des Lizenzvertrages anzuerkennen. Dabei bezeichnete die Beklagte die Annahme ihres Vertragsangebots durch die General Instrument Corp. als „Gegenangebot", das angeblich abweichende Vertragsbestimmungen enthalte. Diese Behauptung stützte die Beklagte darauf, dass die General Instrument Corp. in dem Schreiben vom 15. Januar 2013 auf das Anerkenntnis der Schadensersatzpflicht der Beklagten verwiesen hatte.

3.      Mit Antwortschreiben vom 1. März 2013, das wir als

- **Anlage QE 7 -**

beifügen, stellte die General Instrument Corp. nochmals klar, dass die Weigerung der Beklagten vor dem Hintergrund unverständlich ist, dass sie selbst ein ausdrückliches schriftliches Anerkenntnis ihrer Schadensersatzpflicht abgegeben hatte und die Höhe des Schadensersatzes nach den Berechnungsgrundsätzen des deutschen Rechts bestimmt werden sollte („*be determined in accordance with the respective principles set forth under German law*").

## III.
### Abtretung der Klageansprüche an die Klägerin

Die Klägerin ist zwischenzeitlich Inhaberin der Klagepatente geworden und im – für jedermann einsehbaren – Patentregister eingetragen. Ferner hat die General Instrument Corp. der Klägerin sämtliche Ansprüche aus dem Lizenzvertrag mit der Beklagten sowie aus dem oben erörterten Anerkenntnis der Schadensersatzpflicht der Beklagten abgetreten. Eine Kopie der Abtretung ist als

- **Anlage QE 8 -**

beigefügt.

## IV.
## Zu den vertraglichen Pflichten der Beklagten

1.    Der Lizenzvertrag regelt in Ziffer 3.3, dass die Beklagte innerhalb eines Monats ab Vertragsschluss eine Lizenzzahlung für so genannte „Old Products" leisten muss. Wörtlich heißt es in Ziffer 3.3 wie folgt:

> *"For all computing devices containing an AVC Decoder or AVC Codec provided by Microsoft or Microsoft Affiliates, which were made or sold before the execution of this Agreement, within 1 month after the execution of this Agreement, Microsoft shall pay GI a one-time payment for the Licensed GI Patents. Any back royalties shall bear interest, compounded monthly, at the lesser of ten percent (10%) per annum or the highest interest rate permitted to be charged by GI according to the German Civil Code (Bürgerliches Gesetzbuch)."*

2.    In den Verletzungsverfahren hat die Beklagte Angaben über ihre Vertriebshandlungen für derartige Produkte bis Juni 2012 getätigt. Eine Kopie dieser Angaben ist als

- Anlage QE 9 -

beigefügt. Hierbei hat die Beklagte die von ihr berechneten Lizenzgebühren sowie die sich nach ihrer Auffassung gemäß Ziffer 3.3 ergebenden Zinsen (10% bzw. 8 Prozentpunkte über dem Basiszinssatz als *„highest interest rate permitted to be charged by GI"*) angegeben.

3.    Die Klägerin kann diese Angaben nicht überprüfen, stützt aber ihr Klagebegehren zunächst – im Wege der Teilklage – auf die Berechnungen der Beklagten. Wir gehen davon aus, dass die Beklagte ihre eigenen Angaben im vorliegenden Verfahren nicht bestreiten wird. Die Klägerin behält sich ausdrücklich vor, nach ordnungsgemäßer Rechnungslegung durch die Beklagte gegebenenfalls ihre Ansprüche aus Ziffer 3.3 für den Zeitraum bis Juni 2012 zu erweitern. Ebenso behält die Klägerin sich ausdrücklich vor, ihren Zahlungsanspruch aus Ziffer 3.3 des Lizenzvertrages auch für Handlungen seit dem 1. Juli 2012 zu verfolgen. Schließlich sei klargestellt, dass der durch die Beklagte anerkannte, die Lizenzzahlungen nach Ziffer 3.3 übersteigende Schadensersatzanspruch nicht Gegenstand der vorliegenden Klage ist und eine spätere Geltendmachung ausdrücklich vorbehalten bleibt.

4.    Die Beklagte hat die sich aus Ziffer 3.3 des Lizenzvertrages ergebenden Pflichten weder gegenüber der General Instrument Corp. noch gegenüber der Klägerin erfüllt. So hat die Beklagte weder eine Zahlung vorgenommen noch das im Zuge der Verletzungsverfahren hinterlegte Geld freigegeben. Mithin war Klage geboten.

**B.**
**Rechtliche Würdigung**

**I.**
**Zuständigkeit**

1.  Das Landgericht Mannheim ist für den vorliegenden Rechtsstreit international, sachlich und örtlich zuständig, was sich bereits aus der ausdrücklichen Gerichtsstandsvereinbarung in Ziffer 8.2 des Lizenzvertrages ergibt.

2.  Da nach einhelliger Meinung in Rechtsprechung und Literatur die gängigsten Prozessverträge – insbesondere Schiedsvereinbarungen und Zuständigkeitsvereinbarungen – auch für und gegen Einzel- und Gesamtrechtsnachfolger der Vertragsparteien wirken (vgl. *Geimer*, Int. ZPR, Rn. 3816 u. 1723 mwN), kann sich auch die Klägerin als Einzelrechtsnachfolgerin der General Instrument Corp. auf die Gerichtsstandsvereinbarung in Ziffer 8.2 des Lizenzvertrages berufen.

**II.**
**Zum Zahlungsanspruch**

1.  Der Zahlungsanspruch ergibt sich unmittelbar aus Ziffer 3.3 des Lizenzvertrages, die Aktivlegitimation der Klägerin aus der als Anlage QE 8 vorgelegten Abtretungserklärung. Der Einwand der Beklagten, wonach die Vertragsannahme durch die General Instrument Corp. ein „Gegenangebot" gewesen sei, verfängt nicht, weil die General Instrument Corp. lediglich auf das unstreitig vorliegende schriftliche Anerkenntnis der Schadensersatzpflicht durch die Beklagte verwiesen hat. Der Zinsanspruch ergibt sich ebenfalls unmittelbar aus Ziffer 3.3.

2.  Die Beklagte hat Angaben über verletzende Handlungen bis zum 30. Juni 2012 getätigt und den sich angeblich aus Ziffer 3.3 ergebenden Betrag (einschließlich Zinsen) mit EUR 2.032.323,00 beziffert (vgl. die Aufstellung auf S. 6 in Anlage QE 9). Dieser Betrag setzt sich zusammen aus Lizenzgebühren in Höhe von EUR 1.760.212,00 und bis zum 30. Juni 2012 bereits aufgelaufene Zinsen in Höhe von EUR 272.111,00.

3.  Die Zinsen für den Zeitraum ab dem 1. Juli 2012 berechnen sich wie in Ziffer 3.3 geregelt. Mithin werden Zinsen in Höhe des jeweils niedrigeren Betrags aus 10% oder 8 Prozentpunkten über dem Basiszinssatz geltend gemacht. Bezugsgröße für die Zinsforderung sind die nach den Angaben der Beklagten bis zum 30. Juni 2012 angefallenen Lizenzgebühren in Höhe von EUR 1.760.212,00.

Ein Verrechnungsscheck über EUR 22.818,00 als Gerichtskostenvorschuss ist beigefügt.

Eine englischsprachige Übersetzung der Klageschrift zum Zwecke der Auslandszustellung reichen wir unverzüglich nach. Sämtliche Anlagen liegen in englischer Sprache vor, sodass insoweit für eine Auslandszustellung keine weitere Übersetzung erforderlich ist.

(Dr. M. Grosch)
Rechtsanwalt

Anlagen
QE 1 bis QE 9

**Anlage QE 1**

i.Sa. Motorola / Microsoft
Klage vom 26.4.2013
LG Mannheim, Az. neu
Quinn Emanuel LLP

## H.264/AVC PATENT LICENSE

This Agreement is made as of January __, 2012, by and between General Instrument Corporation, a Delaware State Corporation, having a principal place of business in Horsham, Pennsylvania, U.S.A. (hereinafter "Licensor"), and Microsoft Corporation, a Washington State Corporation having a principal place of business in Redmond, Washington, U.S.A. (hereinafter "Licensee") (also referred to as "a party" respectively or together as "the parties").

**WHEREAS**, the Licensor claims that it is the owner of the Licensed Patents.

**WHEREAS**, the Licensor has sued the Licensee for infringement of the Licensed Patents before the District Court of Mannheim in Germany, file no. 2 O 240/11, 2 O 376/11, 2 O 373/11, 2 O 387/11.

**WHEREAS**, Licensor claims that certain products of the Licensee are compatible with the AVC Standard.

**WHEREAS**, Licensee submits this License Agreement as part of its defense in the above-mentioned proceedings in accordance with the "Orange Book Standard" decision of the Federal Court of Justice (*Bundesgerichtshof, BGH*) of 6 May 2009 (docket no. KZR 39/06) and the practice by the District Court of Mannheim (*Landgericht Mannheim*), in particular the decisions of 27 May 2011 (docket no. 7 O 65/10) and of 9 December 2011 (docket no. 7 O 122/11) as expressed in the accompanying letter to this agreement which is hereby made part of this agreement.

**NOW, THEREFORE,** Licensor and Licensee AGREE AS FOLLOWS:

0.    **EFFECTIVE DATE**

0.1    This Agreement shall be effective as of its signing by Licensor.

1.    **DEFINITIONS**

The definitions set forth in this Article shall apply to the following terms when used with initial capital letters in this Agreement, its attachments, and amendments hereto.

1.1    **Affiliate** - shall mean any company that is directly or indirectly controlled by Licensor or Licensee respectively. Control, in this context, exists where one entity owns more than 50% of the voting stock or equity in another entity or, regardless of stock or equity ownership, is otherwise able to determine the course of action of the entity by virtue of its voting rights. Such entities shall only be deemed to be Affiliates hereunder for as long as such control exists. As regards the Licensee, Affiliate includes in any event: Microsoft Deutschland GmbH and Microsoft Ireland Operations Ltd.

1.2    **Agreement** - shall mean this license between the Licensor and Licensee, including exhibits, attachments, amendments and modifications hereto.

1.3    **AVC Codec** – shall mean any single product or thing which incorporates the full functionality of both one AVC Decoder and one AVC Encoder.

1.4    **AVC Decoder** - shall mean a decoder used to decode AVC Video.

1.5    **AVC Encoder** - shall mean an encoder used to create AVC Video.

1.6    **AVC Standard** - shall mean the video standard defined in ISO/IEC 14496-10:2008, 4th Edition (2008-09-15) and any subsequent version or extension of this video standard; provided, however, that no subsequent version or extension of such definition shall reduce the scope of any definition of the AVC Standard immediately prior to the delivery of any such subsequent version or extension.

1.7　　AVC Video – shall mean video encoded in compliance with the AVC Standard.

1.8　　**Licensed Patents** - shall mean the German part of EP 0 538 667 B1 (that is, DE 692 32 063 T2), entitled "Adaptive motion compensation using a plurality of motion compensators" and the German part of EP 0 615 384 B1 (that is, DE 694 25 919 T2), entitled "Adaptive compression of digital video data".

1.9　　**Licensed Product** -- shall mean any product that contains an AVC Decoder or AVC Codec.

1.10　　**Old Product** - shall mean a Licensed Product that has been made or sold by the Licensee or its Affiliates prior to the signing of this Agreement.

## 2.　　LICENSE GRANT

2.1　　**Licensed Products.** Subject to the terms and conditions of this Agreement, Licensor hereby grants to Licensee and its Affiliates a royalty-bearing, nonexclusive, nontransferable license under the Licensed Patents to make, have made, sell or offer for sale in Germany Licensed Products and for the importation into, use and possession of such Licensed Products in Germany. NO OTHER LICENSE IS GRANTED IN THIS ARTICLE 2.1, BY IMPLICATION OR OTHERWISE.

2.2　　**Sublicenses.** An assignment of the license and granting sub-licenses are only permissible with written approval of the Licensor.

2.3　　**Scope of License Grant.** Notwithstanding anything to the contrary herein, all licenses granted under this Agreement are limited to a field of use of processing for the AVC Standard.

## 3.　　ROYALTIES AND PAYMENTS

3.1　　**Royalties for Licenses under the Licensed Patents.** For those licenses in Article 2 hereof under the Licensed Patents, Licensee shall pay to Licensor, throughout the term of this Agreement, the applicable royalties as follows:

3.1.1　　**Licensed Products.** The royalty for the license granted pursuant to Article 2.1 hereof upon the manufacture or sale in Germany after execution of this Agreement of each computing device containing an AVC Decoder or AVC Codec provided by Licensee or its Affiliates (each such device is referred to as a "Unit"):

| Unit Sales | Royalties Payable per Unit |
|---|---|
| All Units up to 10 million Units per fiscal year | 2 Eurocents per Unit |
| All Units above 10 million Units per fiscal year | 1 Eurocent per Unit |

3.2　　**Old Products:** For all computing devices containing an AVC Decoder or AVC Codec provided by Licensee or its Affiliates, which were made or sold before the execution of this Agreement, within 1 month after the execution of this Agreement, Licensee shall pay the Licensor a one-time payment for the Licensed Patents. Any back royalties shall bear interest, compounded monthly, at the lesser of ten percent (10 %) per annum or the highest interest rate permitted to be charged by Licensor according to the German Civil Code (*Bürgerliches Gesetzbuch*).

3.3　　**Payment of Per Unit Royalties Pursuant to Article 3.1.1.** Per Unit royalties payable pursuant to Article 3.1.1 of this Agreement that accrue after the latest signature date specified on the final page of this Agreement shall be payable by Licensee to Licensor semiannually as measured from such signature date to the last business day of each six-month period thereafter for Licensed Products licensed pursuant to Article 2.1 which are made in Germany or sold in Germany during the

2

immediately preceding semiannual period ending on the last business day of the second month preceding the month when royalties are payable.

3.4   **Payments Upon Termination or Expiration.** Within thirty (30) days after the effective date of termination or expiration of this Agreement, Licensee shall pay Licensor any and all amounts that are due pursuant to this Agreement as of the effective date of such termination or expiration.

3.5   **Form of Payment.** Any payment made under the provisions of this Agreement shall be made in Euros and by wire transfer to the account designated by Licensor in writing to the Licensee or other means Licensor shall, in its sole discretion, find acceptable.

3.6   **Taxes.** Licensee shall be entitled to withhold from any payments hereunder the withholding taxes (if any) that are to be withheld pursuant to applicable tax legislation.

3.7   **Freedom to negotiate a new royalty rate.** The parties are free at any time to negotiate a new royalty rate, or have a new royalty rate determined by a Court of Law, arbitral tribunal, an antitrust authority or independent third-party charged with giving a binding opinion, if the royalty rate referred to in this Article 3 is determined to not be FRAND.

4.   **ACCOUNTING**

4.1   The Licensee shall comply with adequate and orderly accounting principles and shall keep proper books of account, showing all details necessary for the calculation of royalties according to Article 3 above.

4.2   For Licensed Products sold by the Licensee or its Affiliates in Germany after the signing of this Agreement, the Licensee shall render the account on any sold Licensed Product, shall calculate the royalties due for the related fiscal half year on the basis of the account and shall provide the Licensor with a respective payment of royalties within 30 calendar days after the end of each fiscal half year.

4.3   After prior written announcement, the Licensor may, once a year during the customary office hours of the Licensee, have the records and books of account of the Licensee which relate to royalties paid under this Agreement inspected by an independent auditor who - by reason of his profession - is bound by an obligation of confidentiality. The auditor shall only inform the Licensor of the outcome relating to the account statements, and is not entitled to communicate any further information. Should the inspection reveal errors to the detriment of the Licensor, any resulting amounts shall be payable by the Licensee without delay. The Licensee shall only reimburse the Licensor for the costs of the inspection if the differential amount is at least 5% to the detriment of the Licensor, otherwise Licensor shall bear the costs of the inspection.

5.   **REPRESENTATIONS AND WARRANTIES**

5.1   Licensor hereby represents and warrants that it has the right to grant to Licensee and its Affiliates the rights, licenses and release granted under this Agreement and that there are no agreements, assignments or encumbrances that affect the ownership or control of the Licensed Patents or which would restrict the rights, licenses and release granted hereunder.

5.2   Licensor warrants that during the term of this Agreement it will not take any action that would prejudice the rights, licenses and release granted hereunder to Licensee. In particular, but without limitation to the aforesaid, Licensor warrants that it will not assign the Licensed Patents unless such assignment is specifically made subject to the terms of this Agreement and that it will previously announce an assignment of the Licensed Patents to the Licensee. Furthermore, Licensor warrants that it has not assigned or transferred the Licensed Patents to a third party prior to the

3

effective date.

## 6. CONFIDENTIAL INFORMATION

6.1   The existence of this Agreement as well as the terms and conditions contained herein shall be, and shall remain for five (5) years after the expiry of the Agreement, confidential to the Licensor or Licensee, their Affiliates and their respective legal advisors, and unless required by law or with the express written consent of the other party shall not be disclosed to any third party. However, Licensee may reveal the existence of the license to the Licensed Patents, but not the terms, where Licensee needs to prove its rights under the Licensed Patents.

6.2   Licensee is entitled to submit this Agreement in the infringement proceedings before the District Court of Mannheim in Germany, file no: 2 O 240/11, 2 O 376/11, 2 O 373/11, 2 O 387/11 or any antitrust authority, if so required.

## 7. TERM AND TERMINATION.

7.1   **Term.** Unless otherwise terminated as expressly provided in this Agreement, this Agreement shall remain continuously in effect until the last of the Licensed Patents expires and is no longer enforceable. After the expiration of one of the Licensed Patents and until the expiration of the second of the Licensed Patents, the royalty payments shall be adjusted proportionally (that is, reduced by 50%).

7.2   **Termination.** This Agreement, including future payment obligations under Art. 3 of this Agreement, shall terminate immediately if, by final decision of a court of law, the Licensed Patents are held invalid or unenforceable. If this applies only to one of the Licensed Patents, the Agreement shall terminate immediately with respect to that patent and shall remain in effect for the other patent which has not been held invalid or unenforceable. The royalty shall be adjusted proportionally.

7.3   **Refunds.** Even if this Agreement is terminated, no refunds of any kind will be due to Licensee for royalties already due or paid under this Agreement, and Licensee agrees to pay in accordance with Article 3 any unpaid royalties due or incurred under this Agreement at the time this Agreement is terminated.

## 8. MISCELLANEOUS PROVISIONS.

8.1   The Agreement is governed by and construed in accordance with German law without regard to its rules of choice of law.

8.2   The Mannheim District Court of Germany shall have exclusive jurisdiction for any and all disputes arising from or in connection with this Agreement.

8.3   In the event of any dispute or differences between the parties in respect of any right, obligation or liability of any party under this Agreement, including any dispute regarding the validity or invalidity of this Agreement or any of its provisions, the parties shall use their best efforts to come to an amicable resolution.

8.4   Should any provision of this Agreement be invalid or unenforceable, the remaining provisions shall remain valid. In place of an invalid or unenforceable provision, a valid provision which comes economically closest to the one intended by both parties is deemed to be agreed upon. The same applies in case a provision has been inadvertently omitted.

8.5   Any changes and modifications to this Agreement require written form. This also applies to this

4

provision.

General Instrument Corporation

By: _____

Date: _____

Microsoft Corporation

Date: **Dec 23, 2011**

By: _____ Ch. Barth _____

5

 **Freshfields Bruckhaus Deringer**

i.Sa. Motorola / Microsoft
Klage vom 26.4.2013
LG Mannheim, Az. neu
Quinn Emanuel LLP

MUNICH
Prannerstrasse 10
80333 Munich
T+ 49 89 20 70 20
Direct T+ 49 89 20 70 23 61
F+ 49 89 20 70 21 00
Direct F+ 49 89 20 70 25 83 91
E  charlotte.barth@freshfields.com
W  freshfieldsbruckhausderinger.com

DOC ID  DAC10408694/7
OUR REF  PC 109096-0588
YOUR REF

General Instrument Corp.
c/o Quinn Emanuel Urquhart & SullivanLLP
Erzbergerstr. 5
68165 Mannheim

23 December 2011

Dear Sirs,

1.     We herewith submit, on behalf of and as instructed by our client, Microsoft Corp., an offer to conclude a licensing agreement for two patents which you have declared to be standard-essential under the H.264/AVC standard, namely the German part of the patent EP 0 538 667 B1 (that is, DE 692 32 063 T2), entitled "Adaptive motion compensation using a plurality of motion compensators" and the German part of EP 0 615 384 B1 (that is, DE 694 25 919 T2), entitled "Adaptive compression of digital video data" (the "Licensed Patents").

This offer is triggered by and based on the so-called "Orange Book Standard" decision of the Federal Court of Justice (*Bundesgerichtshof, BGH*) of 6 May 2009 (docket no. KZR 39/06) and the practice by the District Court of Mannheim (*Landgericht Mannheim*), as set forth in particular in the decisions of 27 May 2011 (docket no. 7 O 65/10) and of 9 December 2011 (docket no. 7 O 122/11).

Please find enclosed the License Agreement as proposed by Microsoft Corp. The License Agreement comprises a nonexclusive, nontransferable right of Microsoft Corp. and its subsidiaries ("Microsoft Corp.") to make, have made, sell or offer for sale in Germany a product containing an AVC decoder or AVC codec, in addition to rights for the importation into, use and possession of such products in Germany. According to the License Agreement, royalties are computed on a per unit basis for units in Germany, where a "unit" is a computing device containing an AVC decoder or AVC codec provided by Microsoft Corp. (e.g., an Xbox 360 console, a PC/laptop, a smartphone).

Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales at 65 Fleet Street, London EC4Y 1HS (number OC334789). It is authorised and regulated by the Solicitors Regulation Authority. For regulatory information please refer to www.freshfields.com/support/legalnotice.

Abu Dhabi  Amsterdam  Bahrain  Barcelona  Beijing  Berlin  Brussels  Cologne  Dubai  Düsseldorf  Frankfurt am Main  Hamburg  Hanoi  Ho Chi Minh City  Hong Kong  London  Madrid  Milan  Moscow  Munich  New York  Paris  Rome  Shanghai  Tokyo  Vienna  Washington

Freshfields Bruckhaus Deringer

214

The offer includes Microsoft Corp's duty to pay a royalty fee of 0.02 EUR for each unit for the first 10 million units per year and a royalty fee of 0.01 EUR for each unit thereafter per year. This is a royalty basis which has to be considered more than fair and reasonable in keeping with fair, reasonable and non-discriminatory ("FRAND") terms. In conformity with the *Orange Book Standard* decision of the Federal Court of Justice (*Bundesgerichtshof*) of 6 May 2009, this obligation not only applies to all future use, but also all past use of the Licensed Patents. In addition, as a proxy for royalty fees for devices in Germany, Microsoft Corp. will pay such fees for retail copies of Microsoft products (such as Windows 7) on disk media located in Germany, where such products contain AVC decoder or codec but have not been installed, because installation of such Microsoft products would yield computing devices that qualify as "units."

If you accept the License Offer by 10 January 2012, Microsoft Corp. will account for past use of the Licensed Patents and make payments to you, including interest, according to the terms of the License Agreement. If you do not accept the offer until this point in time, Microsoft Corp. will, after accounting, deposit all payments, including payments for future use of the Licensed Patents as specified in the License Offer with the relevant court in Mannheim (Hinterlegungsstelle *Amtsgericht Mannheim*) until you accept the offer or until another license agreement has been concluded between our client and you.

As required by the recent case law of the District Court in Mannheim (esp. decision of 9 December 2011, docket no. 7 O 122/11) Microsoft Corp. expressly acknowledges *("erkennt dem Grunde nach an")* the duty to cover past damages for any past use of the Licensed Patents. The damages are to be determined in accordance with the respective principles set forth under German law.

By these payments and the acknowledgment of a duty to pay damages in principle, Microsoft Corp. understands that it will be released from any and all claims under the Licensed Patents regarding the past use of the H.264/AVC technology in products on the German market, except for the duty to pay damages.

Microsoft Corp. furthermore obliges to withdraw the nullity actions initiated against the Licensed Patents before the German Federal Patent Court (docket numbers 5 Ni 62/11 and 5

## ⟨M⟩ Freshfields Bruckhaus Deringer

Ni 63/11) within 10 days after the execution of the License Agreement by General Instrument Corp.

2.      Alternatively, Microsoft Corp. offers to enter into a cross-license agreement with General Instrument Corp.'s parent company, Motorola Mobility Inc., for the entire portfolio of H.264 standard-essential patents held by Microsoft Corp. and her subsidiaries, on the one hand, and Motorola Mobility Inc. and her subsidiaries, on the other hand. Such an offer is explicitly made to Motorola Mobility Inc. and its subsidiaries only, and does not cover the right to use Microsoft Corp.'s H.264-essential patents for a new parent company of Motorola Mobility Inc. or for another company which may hold the majority of stocks in Motorola Mobility Inc. now or in future.

3.      The offer made under 1.) is made as part of the defence of Microsoft Corp. and its subsidiaries in the current proceedings regarding the licensed patents before the Higher Regional Court of Mannheim (docket numbers 2 O 240/11, 2 O 376/11, 2 O 373/11, 2 O 387/11). It remains open until it has been accepted by you or, if you do not accept the offer, until a final court ruling has been rendered that the H.264/AVC-compatible products of Microsoft Corp. do not infringe the two patents asserted or until the Licensed Patents have been declared invalid by a final court ruling or until your complaints are dismissed by final court ruling for other reasons. For the sake of clarity, we want to stress that the offer is, however, not made upon the condition that the court decides that the two licensed patents are infringed by the Microsoft Corp.'s products.

4.      While Microsoft Corp. is of the firm opinion that the offer made under 1.) fully complies with the FRAND standards set forth by the Federal Court of Justice in its decision rendered on 6 May 2009, Microsoft Corp. is prepared to discuss any terms of the license offer as attached, should you consider any of the terms to be inconsistent with FRAND standards. This includes extending the license to units sold in other jurisdictions in which the Licensed Patents, or one of them, are in force.

 Freshfields Bruckhaus Deringer

4|4

5.    The terms and conditions of this offer, including the License Agreement and any future documents, are confidential between the parties and may not be used in other litigation or disclosed to companies unrelated to the litigation to which this offer relates. The factual statements made therein may not be used in any further litigation.

Yours sincerely

Dr. Charlotte Barth

Attachments:
- License Agreement
- German reading translation of this letter

# (N) Freshfields Bruckhaus Deringer

i.Sa. Motorola / Microsoft
Klage vom 26.4.2013
LG Mannheim, Az. neu
Quinn Emanuel LLP

MUNICH
Prannerstrasse 10
80333 Munich
T +49 89 20 70 20
Direct T +49 89 20 70 23 61
F +49 89 20 70 21 00
Direct F +49 89 20 70 25 83 91
E peter.chrocziel@freshfields.com
W freshfieldsbruckhausderinger.com

DOC ID  DAC11862098/3+
OUR REF  PC 109096-0588
YOUR REF

General Instrument Corp.
c/o Quinn Emanuel Urquhart & SullivanLLP
Mollstraße 42
68165 Mannheim

| | z.A | Mdt. | WV | Vert. |
|---|---|---|---|---|
| **Ein-gang** | 0 5. Sep. 2012 | | | QE; LLP B. MA |
| **Frist** | | **Vorfrist** | | **Termin** |

31 August 2012

Dear Sirs,

1.     We herewith submit, on behalf of and as instructed by our client, Microsoft Corp., an amended offer to conclude a licensing agreement for DE 69232063, which is the German part of EP 0538667 B1, and DE 69425919, which is the German part of EP 0615384 B1. Please find enclosed the amended license agreement ("Agreement") as proposed by Microsoft Corp.

DE 69232063 and DE 69425919 ("Licensed GI Patents") have been asserted before the Mannheim Regional Court (docket nos. 2 O 240/11, 2 O 373/11, 2 O 376/11, 2 O 387/11, now on appeal before the Higher Regional Court of Karlsruhe on docket no. 6 U 44/12, 6 U 45/12, 6 U 46/12, 6 U 47/12).

2.     We herewith amend the licensing offer made on 23 December 2011 and amended on 3 February 2012 in view of the completion of the acquisition of General Instrument's parent Motorola Mobility Holdings, Inc. by Google, Inc. ("Google") on May 22, 2012 ("Google Acquisition Date"). The terms of the Agreement for the period after the Google Acquisition Date have been changed accordingly.

3.     As before, the Agreement is structured as a cross-license for Germany. The Agreement comprises a non-exclusive, non-transferable right under the Licensed GI Patents for Microsoft Corp. ("Microsoft") and its Affiliates to make, have made, sell or offer for sale in Germany a product containing an AVC Decoder or AVC Codec, in addition to rights for

Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales at 65 Fleet Street, London EC4Y 1HS (number OC334789). It is authorised and regulated by the Solicitors Regulation Authority. For regulatory information please refer to www.freshfields.com/support/legalnotice.

Abu Dhabi  Amsterdam  Bahrain  Barcelona  Beijing  Berlin  Brussels  Cologne  Dubai  Düsseldorf  Frankfurt am Main  Hamburg  Hanoi  Ho Chi Minh City  Hong Kong  London  Madrid  Milan  Moscow  Munich  New York  Paris  Rome  Shanghai  Tokyo  Vienna  Washington

Ⓕ Freshfields Bruckhaus Deringer

the importation into, use and possession of such products in Germany, under royalty-bearing terms. The Agreement also comprises a non-exclusive, non-transferable right under Microsoft's valuable German H.264/AVC standard-essential patents ("Licensed Microsoft Patents") for General Instrument and its Affiliates to make, have made, sell or offer for sale in Germany a product containing an AVC Decoder or AVC Codec, in addition to rights for the importation into, use and possession of such products in Germany.

4.      For Units in the period before the Google Acquisition Date, the payment terms in the Agreement are unchanged. Microsoft maintains that such terms (per Unit royalty of €0.02 per Unit for up to 10 million Units in a fiscal year, and €0.01 per Unit thereafter, for the Licensed GI Patents) are far better than FRAND.

5.      For Units in the period after the Google Acquisition Date, the terms in the Agreement have been changed to be consistent with Google's obligations under the AVC Patent Portfolio License. As a Licensee under the AVC Patent Portfolio License, Google has made a specific commitment to license its H.264-essential patents and those of its Affiliates (including General Instrument) on fair, reasonable and non-discriminatory ("FRAND") terms. This specific commitment is part of Article 8.3 of the AVC Patent Portfolio License. As part of this commitment, the "Licensors' per patent share of royalties which are payable pursuant to Article 3" is "presumed to be a fair and reasonable royalty rate."

According to relevant parts of Article 3 of the AVC Patent Portfolio License, a per Unit royalty is payable for an AVC Product or OEM Product, as those terms are defined in the AVC Patent Portfolio License. Royalty payments for AVC Products are capped at $6,500,000 per year, and royalty payments for OEM Products are capped at $6,500,000 per year. The royalty payments under Article 3 provide worldwide coverage for all patents in the AVC patent pool, so Microsoft has determined the part of these payments that is *attributable to the Licensed GI Patents*. For the Licensed GI Patents, the part of the "Licensors' per patent share of royalties which are payable pursuant to Article 3" is **€2100.00 per fiscal year per Licensed GI Patent**. For the Licensed GI Patents, Microsoft has assumed that Microsoft will reach the relevant payment caps, so the royalty term in the Agreement is no longer structured as a per Unit royalty for Units in the period after the Google Acquisition Date.

Ⓦ Freshfields Bruckhaus Deringer

The approach to calculating the payment per Licensed GI Patent considers a capped base payment amount for worldwide coverage of $6,500,000 per year as well as the number of patents in the AVC patent pool (currently, about 2458). Dividing the base payment amount by the number of patents in the AVC patent pool yields a per patent amount of about $2600.00 per year, or about €2100.00 per year.

6.    In its statements and declarations to standard-setting organizations, General Instrument has conditioned its FRAND licensing obligations on reciprocity. In the interest of resolving this matter, for Units in the period before the Google Acquisition Date, the Agreement includes terms that are far better than simple reciprocity. For such Units, Microsoft is offering a *royalty-free* grant for the Licensed Microsoft Patents. Such terms were already part of the offer before. Thus, for Units in the period before the Google Acquisition Date, the Agreement includes a non-exclusive, non-transferable right under the Licensed Microsoft Patents for General Instrument (as well as Motorola Mobility Inc. and Motorola Mobility Germany GmbH) to make, have made, sell or offer for sale in Germany a product containing an AVC Decoder or AVC Codec, in addition to rights for the importation into, use and possession of such products in Germany, under royalty-free terms.

For Units in the period after the Google Acquisition Date, Microsoft offers terms for the Licensed Microsoft Patents that reciprocate the terms for the Licensed GI Patents in this period. Microsoft offers a royalty-bearing license to the Licensed Microsoft Patents. For the Licensed Microsoft Patents, the royalty amount is capped at **€2100.00 per fiscal year per Licensed Microsoft Patent**, which is the same per patent amount as the Licensed GI Patents. Recognizing that GI might not produce Units in Germany at levels that would cause it to reach the relevant payment caps, Microsoft has structured the royalty-bearing license as a per Unit license. The Unit count thresholds for switching between different per Unit rates are based on the worldwide thresholds in the AVC Patent Portfolio License, but have been scaled to Germany-only levels. Specifically, the worldwide threshold of 10 million Units (for AVC Products and OEM Products, collectively, in Art. 3 of the AVC Patent Portfolio License) has been scaled to 350,000 Units for Germany. Similarly, the worldwide threshold of 200,000 Units (for free Units) has been scaled to 7,000 for Germany. The per Unit rate has been set at 0.2 Eurocents per Unit above 7,000 up to 350,000 Units per fiscal year, and 0.1 Eurocents per Unit above that.

 Freshfields Bruckhaus Deringer

4|4

For the period after the Google Acquisition Date, Microsoft has structured the royalty-bearing license for Licensed Microsoft Patents as an option that General Instrument may choose to exercise or not exercise.

7.      Terms of the Agreement have been adjusted to reflect the foregoing changes.

Yours sincerely

Prof Dr. Peter Chrocziel

Attachments:
- Agreement

## H.264/AVC PATENT CROSS-LICENSE FOR GERMANY

This Agreement is made as of _____, 2012, by and between General Instrument Corporation, a Delaware State Corporation, having a principal place of business in Horsham, Pennsylvania, U.S.A. (hereinafter "GI"), and Microsoft Corporation, a Washington State Corporation having a principal place of business in Redmond, Washington, U.S.A. (hereinafter "Microsoft") (also referred to as "a party" respectively or together as "the parties").

WHEREAS, GI claims that it is the owner of the Licensed GI Patents.

WHEREAS, Microsoft claims that it is the owner of the Licensed Microsoft Patents.

WHEREAS, GI has sued Microsoft and two Microsoft Affiliates for infringement of the Licensed GI Patents before the District Court of Mannheim in Germany, file no. 2 O 240/11, 2 O 376/11, 2 O 373/11, 2 O 387/11, now on appeal on docket no. 6 U 44/12, 6 U 45/12, 6 U 46/12, 6 U 47/12.

WHEREAS, Microsoft submits this Agreement as part of its defense in the above-mentioned proceedings in accordance with the "Orange Book Standard" decision of the Federal Court of Justice (*Bundesgerichtshof, BGH*) of 6 May 2009 (docket no. KZR 39/06) and the practice by the District Court of Mannheim (*Landgericht Mannheim*), in particular the decisions of 27 May 2011 (docket no. 7 O 65/10), of 9 December 2011 (docket no. 7 O 122/11) and of 2 May 2012 (in the proceedings mentioned above involving the parties to this Agreement) as expressed in the accompanying letters to this Agreement which are hereby made part of this Agreement.

WHEREAS, the District Court of Mannheim has indicated the Orange Book Standard requires Microsoft, when proposing specific license fees in this Agreement, to set the license fees such that refusal by GI would be a blatant violation of antitrust law.

NOW, THEREFORE, GI and Microsoft AGREE AS FOLLOWS:

**0.      EFFECTIVE DATE**

      **0.1**      This Agreement shall be effective as of its signing by GI.

**1.      DEFINITIONS**

The definitions set forth in this Article shall apply to the following terms when used with initial capital letters in this Agreement, its attachments, and amendments hereto.

      **1.1**      **Affiliate** - shall mean a GI Affiliate or Microsoft Affiliate, depending on context.

            **1.1.1**      **GI Affiliate** - shall mean Motorola Mobility Holdings, Inc. and any company which now or hereinafter is controlled by Motorola Mobility Holdings, Inc. Such entities shall only be deemed to be GI Affiliates hereunder for as long as such control exists. GI Affiliate includes in any event: Motorola Mobility, Inc. and Motorola Mobility Germany GmbH.

            **1.1.2**      **Microsoft Affiliate** - shall mean any company which now or hereinafter is controlled by Microsoft. Such entities shall only be deemed to be Microsoft Affiliates hereunder for as long as such control exists. Microsoft Affiliate includes in any event: Microsoft Deutschland GmbH and Microsoft Ireland Operations Ltd.

      **1.2**      **Agreement** - shall mean this license between GI and Microsoft, including exhibits, attachments, amendments and modifications hereto.

      **1.3**      **AVC Codec** – shall mean any single product or thing which incorporates the full functionality of

both one AVC Decoder and one AVC Encoder.

1.4     **AVC Decoder** - shall mean a decoder used to decode AVC Video.

1.5     **AVC Encoder** - shall mean an encoder used to create AVC Video.

1.6     **AVC Standard** - shall mean the video standard defined in ISO/IEC 14496-10:2008, 4th Edition (2008-09-15) and any subsequent version or extension of this video standard; provided, however, that no subsequent version or extension of such definition shall reduce the scope of any definition of the AVC Standard immediately prior to the delivery of any such subsequent version or extension.

1.7     **AVC Video** – shall mean video encoded in compliance with the AVC Standard.

1.8     **Google Acquisition Date** – shall mean May 22, 2012, the date of completion of the acquisition of Motorola Mobility Holdings, Inc. (and therefore GI) by Google, Inc.

1.9     **Google's AVC Patent Portfolio License** – shall mean the AVC Patent Portfolio License between Google, Inc. as a licensee and MPEG LA, LLC as licensing administrator.

1.10    **Licensed GI Patents** - shall mean DE 69232063, which is the German part of EP 0538667 B1, and DE 69425919, which is the German part of EP 0615384 B1.

1.11    **Licensed Microsoft Patents** - shall mean:

DE 69937462, which is the German part of EP 1135934 B1;

DE 69941964, which is the German part of EP 1853069 B1;

DE 60311231, which is the German part of EP 1468566 B1;

DE 60310368, which is the German part of EP 1468567 B1;

DE 60332175, which is the German part of EP 1753244 B1;

DE 20222025; and

DE 20222026.

1.12    **Licensed Product** – shall mean any product that contains an AVC Decoder or AVC Codec. This includes hardware devices including an AVC Decoder or AVC Codec.  This also includes software where installation of such software on a computing device would create an AVC Decoder or AVC Codec.

1.13    **Old Product** - shall mean a Licensed Product that has been made or sold by GI or GI Affiliates, or by Microsoft or Microsoft Affiliates, prior to the signing of this Agreement. Old Product also includes a Licensed Product that has been made or sold by Skype Communications, which is now a division of Microsoft, prior to the acquisition of Skype Communications by Microsoft.

2.    **LICENSE GRANT**

2.1     **Licensed Products.**  Subject to the terms and conditions of this Agreement, GI hereby grants to Microsoft (including its divisions, e.g., Skype) and Microsoft Affiliates a *royalty-bearing*, nonexclusive, nontransferable license under the Licensed GI Patents to make, have made, sell or offer for sale in Germany Licensed Products and for the importation into, use and possession of

SF1 1737775v.1

such Licensed Products in Germany. Subject to the terms and conditions of this Agreement, for Licensed Products before the Google Acquisition Date, Microsoft hereby grants to GI and GI Affiliates a *royalty-free*, nonexclusive, nontransferable license under the Licensed Microsoft Patents to make, have made, sell or offer for sale in Germany Licensed Products and for the importation into, use and possession of such Licensed Products in Germany. Subject to the terms and conditions of this Agreement, for Licensed Products after the Google Acquisition Date, Microsoft hereby grants to GI and GI Affiliates an option for a *royalty-bearing*, nonexclusive, nontransferable license under the Licensed Microsoft Patents to make, have made, sell or offer for sale in Germany Licensed Products and for the importation into, use and possession of such Licensed Products in Germany. NO OTHER LICENSE IS GRANTED IN THIS ARTICLE 2.1, BY IMPLICATION OR OTHERWISE.

2.2   **Sublicenses.** An assignment of the license or granting sub-licenses under the Licensed GI Patents by Microsoft is only permissible with written approval of GI. An assignment of the option for license, the license or granting sub-licenses under the Licensed Microsoft Patents by GI is only permissible with written approval of Microsoft.

2.3   **Scope of License Grant.** Notwithstanding anything to the contrary herein, all licenses granted under this Agreement are limited to a field of use of processing for the AVC Standard.

3.   **ROYALTIES AND PAYMENTS**

3.1   **Royalties for Licenses under the Licensed GI Patents.** For those licenses in Article 2 hereof under the Licensed GI Patents, Microsoft shall pay to GI, throughout the term of this Agreement for such periods in which any of the Licensed GI Patents is in force, the applicable royalties as follows:

3.1.1   **Licensed Products before Google Acquisition Date.** The royalty for the license granted pursuant to Article 2.1 hereof upon the manufacture or sale in Germany, before the Google Acquisition Date, for each computing device containing an AVC Decoder or AVC Codec provided by Microsoft or a Microsoft Affiliate (each such device is referred to as a "Unit"):

| Unit Sales | Royalties Payable per Unit |
|---|---|
| All Units up to 10 million Units per fiscal year | 2 Eurocents per Unit |
| All Units above 10 million Units per fiscal year | 1 Eurocent per Unit |

3.1.2   **Licensed Products after Google Acquisition Date.** The royalty for the license granted pursuant to Article 2.1 hereof upon the manufacture or sale in Germany, not before the Google Acquisition Date, for each Unit provided by Microsoft or a Microsoft Affiliate shall be set in a manner consistent with Article 8.3 of the Google AVC Patent Portfolio License. The royalty shall be the part of the "Licensors' per patent share of royalties which are payable pursuant to Article 3" that is attributable to the Licensed GI Patents. This royalty is €2100.00 per fiscal year per Licensed GI Patent.

3.2   **Royalties for Licenses under the Licensed Microsoft Patents.** For those licenses in Article 2 hereof under the Licensed Microsoft Patents, GI shall pay to Microsoft, throughout the term of this Agreement for such periods in which any of the Licensed Microsoft Patents is in force, the applicable royalties as follows:

3.2.1   **Licensed Products before Google Acquisition Date.** The license granted pursuant to Article 2.1 hereof upon the manufacture or sale in Germany, before the Google

Acquisition Date, for each Unit provided by GI or a GI Affiliate, is a *royalty-free license*.

3.2.2   **Licensed Products after Google Acquisition Date.** If GI exercises its option for a license under Article 2.1 for Licensed Products after the Google Acquisition Date, the royalty for the license granted pursuant to Article 2.1 hereof upon the manufacture or sale in Germany, not before the Google Acquisition Date, for each Unit provided by GI or a GI Affiliate shall be as follows.

| Unit Sales | Royalties Payable per Unit Per Licensed Microsoft Patent |
|---|---|
| All Units up to 7,000 Units per fiscal year | 0.0 Eurocents per Unit per Licensed Microsoft Patent |
| All Units above 7,000 and up to 350,000 Units per fiscal year | 0.2 Eurocents per Unit per Licensed Microsoft Patent |
| All Units above 350,000 Units per fiscal year | 0.1 Eurocent per Unit per Licensed Microsoft Patent |

But in no event shall the royalties payable be greater than **€2100.00 per fiscal year per Licensed Microsoft Patent.**

3.3   **Old Products Provided by Microsoft.** For all computing devices containing an AVC Decoder or AVC Codec provided by Microsoft or Microsoft Affiliates, which were made or sold before the execution of this Agreement, within 1 month after the execution of this Agreement, Microsoft shall pay GI a one-time payment for the Licensed GI Patents. Any back royalties shall bear interest, compounded monthly, at the lesser of ten percent (10 %) per annum or the highest interest rate permitted to be charged by GI according to the German Civil Code (*Bürgerliches Gesetzbuch*).

3.4   **Old Products Provided by GI.** For all computing devices containing an AVC Decoder or AVC Codec provided by GI or GI Affiliates, which were made or sold before the Google Acquisition Date, GI has a *royalty-free license* to the Licensed Microsoft Patents under Article 3.2.1. For all computing devices containing an AVC Decoder or AVC Codec provided by GI or GI Affiliates, which were made or sold between the Google Acquisition Date and the execution of this Agreement, within 1 month after the execution of this Agreement, if GI exercises its option for a license under Article 2.1, GI shall pay Microsoft a one-time payment for the Licensed Microsoft Patents according to Article 3.2.2.

3.5   **Payment of Royalties by Microsoft Pursuant to Article 3.1.** Royalties payable pursuant to Article 3.1 of this Agreement shall be paid only for such periods in which at least one of the Licensed GI Patents is in force. Royalties are not payable for any period in which none of the Licensed GI Patents is in force. Under Article 3.1.2, royalties are payable for a given Licensed GI Patent only when that Licensed GI Patent is in force. Where the patent is not in force for a full fiscal year, payments will be reduced proportionally. Royalties payable pursuant to Article 3.1 of this Agreement that accrue after the latest signature date specified on the final page of this Agreement shall be payable on a prorated basis by Microsoft to GI semiannually as measured from such signature date to the last business day of each six-month period (or fraction thereof) ending June 30 or December 31 thereafter, for Licensed Products licensed pursuant to Article 2.1 which are made in Germany or sold in Germany during that period ending June 30 or December 31.

4

3.6     **Payment of Royalties by GI Pursuant to Article 3.2.** If GI exercises its option for a license under Article 2.1, royalties payable pursuant to Article 3.2 of this Agreement shall be paid only for such periods in which at least one of the Licensed Microsoft Patents is in force. Royalties are not payable for any period in which none of the Licensed Microsoft Patents is in force. If GI exercises its option for a license under Article 2.1, under Article 3.2.2, royalties are payable for a given Licensed Microsoft Patent only when that Licensed Microsoft Patent is in force. Where the patent is not in force for a full fiscal year, payments will be reduced proportionally. Royalties payable pursuant to Article 3.1 of this Agreement that accrue after the latest signature date specified on the final page of this Agreement shall be payable on a prorated basis by GI to Microsoft semiannually as measured from such signature date to the last business day of each six-month period (or fraction thereof) ending June 30 or December 31 thereafter, for Licensed Products licensed pursuant to Article 2.1 which are made in Germany or sold in Germany during that period ending June 30 or December 31.

3.7     **Payments Upon Termination or Expiration.** Within sixty (60) days after the effective date of termination or expiration of this Agreement, Microsoft shall pay GI any and all amounts that are due pursuant to this Agreement as of the effective date of such termination or expiration, and GI shall pay Microsoft any and all amounts that are due pursuant to this Agreement as of the effective date of such termination or expiration.

3.8     **Form of Payment.** Any payment made by Microsoft under the provisions of this Agreement shall be made in Euros and by wire transfer to the account designated by GI in writing to Microsoft or other means GI shall, in its sole discretion, find acceptable. Any payment made by GI under the provisions of this Agreement shall be made in Euros and by wire transfer to the account designated by Microsoft in writing to GI or other means Microsoft shall, in its sole discretion, find acceptable.

3.9     **Taxes.** Microsoft shall be entitled to withhold from any payments hereunder the withholding taxes (if any) that are to be withheld pursuant to applicable tax legislation. GI shall be entitled to withhold from any payments hereunder the withholding taxes (if any) that are to be withheld pursuant to applicable tax legislation.

3.10    **Freedom to negotiate a new royalty rate.** The parties are free at any time to negotiate a new royalty rate, or have a new royalty rate determined by a Court of Law, arbitral tribunal, an antitrust authority or independent third-party charged with giving a binding opinion.

4.      **ACCOUNTING**

4.1     Microsoft shall comply with adequate and orderly accounting principles and shall keep proper books of account, showing all details necessary for the calculation of royalties according to Article 3 above.

4.2     If GI exercises its option for a license under Article 2.1, GI shall comply with adequate and orderly accounting principles and shall keep proper books of account, showing all details necessary for the calculation of royalties according to Article 3.2.2, unless GI pays the capped amount per fiscal year per Licensed Microsoft Patent..

4.3     If GI exercises its option for a license under Article 2.1, unless GI pays the capped amount per fiscal year per Licensed Microsoft Patent, for Licensed Products sold by GI or GI Affiliates in Germany after the signing of this Agreement, GI shall render the account on any sold Licensed Product, shall calculate the royalties due according to Article 3.2.2 for the related fiscal half year on the basis of the account and shall provide Microsoft with a respective payment of royalties within 60 calendar days after the end of each fiscal half year.

4.4     After prior written announcement, GI may, once a year during the customary office hours of Microsoft, have the records and books of account of Microsoft which relate to royalties paid under

this Agreement inspected by an independent auditor who - by reason of his profession - is bound by an obligation of confidentiality. The auditor shall only inform GI and Microsoft of the outcome relating to the account statements, and is not entitled to communicate any further information. Should the inspection reveal errors to the detriment of GI, any resulting amounts shall be payable by Microsoft without delay. Microsoft shall only reimburse GI for the costs of the inspection if the differential amount is at least 5% to the detriment of GI, otherwise GI shall bear the costs of the inspection.

## 5.    REPRESENTATIONS AND WARRANTIES

5.1    GI hereby represents and warrants that it has the right to grant to Microsoft and Microsoft Affiliates the rights, licenses and release granted under this Agreement for the Licensed GI Patents, and that there are no agreements, assignments or encumbrances that affect the ownership or control of the Licensed GI Patents or which would restrict the rights, licenses and release granted hereunder.

5.2    Microsoft hereby represents and warrants that it has the right to grant to GI and GI Affiliates the rights, licenses and release granted under this Agreement for the Licensed Microsoft Patents, and that there are no agreements, assignments or encumbrances that affect the ownership or control of the Licensed Microsoft Patents or which would restrict the rights, licenses and release granted hereunder.

5.3    In case of a sale or assignment of the Licensed GI Patents, the rights of Microsoft and Microsoft Affiliates will remain unaffected, cf. Para. 15 III of the German Patent Code (*Patentgesetz*).

5.4    In case of a sale or assignment of the Licensed Microsoft Patents, the rights of GI and GI Affiliates will remain unaffected, cf. Para. 15 III of the German Patent Code (*Patentgesetz*).

## 6.    CONFIDENTIAL INFORMATION

6.1    This Agreement shall be handled as confidential information, subject to any agreement between the parties governing the handling of confidential information. Unless required by law, or with the express written consent of the other party, or subject to said agreement between the parties governing or in the situations described in Article 6.2, the terms and conditions of the Agreement shall not be disclosed to any third party.

6.2    In any event, Microsoft and GI are entitled to submit this Agreement in the infringement proceedings before the Higher Regional Court of Karlsruhe in Germany, file no. 6 U 44/12, 6 U 45/12, 6 U 46/12, 6 U 47/12, in proceedings before a U.S. court, and in proceedings before any antitrust authority.

## 7.    TERM AND TERMINATION.

7.1    **Term.** Unless otherwise terminated as expressly provided in this Agreement, this Agreement shall remain continuously in effect until the last of the Licensed GI Patents or Licensed Microsoft Patents expires or is no longer enforceable.

7.2    **Termination.** This Agreement, including future payment obligations under Art. 3 of this Agreement, shall terminate immediately if, by final decision of a court of law, the Licensed GI Patents or the Licensed Microsoft Patents are held invalid or unenforceable. If such a decision applies only to one of the Licensed GI Patents or Licensed Microsoft Patents, the Agreement shall terminate immediately with respect to that patent and shall remain in effect for the other Licensed GI Patent(s) and Licensed Microsoft Patents not held invalid or unenforceable. GI shall have the right to immediately terminate this Agreement if Microsoft initiates a nullity action against any of

the Licensed GI Patents.

7.3     **Refunds.** Even if this Agreement is terminated, no refunds of any kind will be due to Microsoft for royalties already due or paid under this Agreement, and Microsoft agrees to pay in accordance with Article 3 any unpaid royalties due or incurred under this Agreement at the time this Agreement is terminated.  Even if this Agreement is terminated, no refunds of any kind will be due to GI for royalties already due or paid under this Agreement, and GI agrees to pay in accordance with Article 3 any unpaid royalties due or incurred under this Agreement at the time this Agreement is terminated.

## 8.     MISCELLANEOUS PROVISIONS.

8.1     The Agreement is governed by and construed in accordance with German law without regard to its rules of choice of law.

8.2     The Mannheim District Court of Germany shall have exclusive jurisdiction for any and all disputes arising from or in connection with this Agreement.

8.3     In the event of any dispute or differences between the parties in respect of any right, obligation or liability of any party under this Agreement, including any dispute regarding the validity or invalidity of this Agreement or any of its provisions, the parties shall use their best efforts to come to an amicable resolution.

8.4     Should any provision of this Agreement be invalid or unenforceable, the remaining provisions shall remain valid.  In place of an invalid or unenforceable provision, a valid provision which comes economically closest to the one intended by both parties is deemed to be agreed upon.  The same applies in case a provision has been inadvertently omitted.

8.5     Any changes and modifications to this Agreement require written form. This also applies to this provision.

General Instrument Corporation

By: _____

Date: _____

Microsoft Corporation

Date: 8/31/12          By: _____

SFI 1737775v.1

Anlage QE 4

i.Sa. Motorola / Microsoft
Klage vom 26.4.2013
LG Mannheim, Az. neu
Quinn Emanuel LLP

H.264/AVC PATENT CROSS-LICENSE FOR GERMANY

This Agreement is made as of January 13, 2012, by and between General Instrument Corporation, a Delaware State Corporation, having a principal place of business in Horsham, Pennsylvania, U.S.A. (hereinafter "GI"), and Microsoft Corporation, a Washington State Corporation having a principal place of business in Redmond, Washington, U.S.A. (hereinafter "Microsoft") (also referred to as "a party" respectively or together as "the parties").

**WHEREAS**, GI claims that it is the owner of the Licensed GI Patents.

**WHEREAS**, Microsoft claims that it is the owner of the Licensed Microsoft Patents.

**WHEREAS**, GI has sued Microsoft and two Microsoft Affiliates for infringement of the Licensed GI Patents before the District Court of Mannheim in Germany, file no. 2 O 240/11, 2 O 376/11, 2 O 373/11, 2 O 387/11, now on appeal on docket no. 6 U 44/12, 6 U 45/12, 6 U 46/12, 6 U 47/12.

**WHEREAS**, Microsoft submits this Agreement as part of its defense in the above-mentioned proceedings in accordance with the "Orange Book Standard" decision of the Federal Court of Justice (*Bundesgerichtshof, BGH*) of 6 May 2009 (docket no. KZR 39/06) and the practice by the District Court of Mannheim (*Landgericht Mannheim*), in particular the decisions of 27 May 2011 (docket no. 7 O 65/10), of 9 December 2011 (docket no. 7 O 122/11) and of 2 May 2012 (in the proceedings mentioned above involving the parties to this Agreement) as expressed in the accompanying letters to this Agreement which are hereby made part of this Agreement.

**WHEREAS**, the District Court of Mannheim has indicated the Orange Book Standard requires Microsoft, when proposing specific license fees in this Agreement, to set the license fees such that refusal by GI would be a blatant violation of antitrust law.

**NOW, THEREFORE**, GI and Microsoft AGREE AS FOLLOWS:

**0.    EFFECTIVE DATE**

  0.1    This Agreement shall be effective as of its signing by GI.

**1.    DEFINITIONS**

  The definitions set forth in this Article shall apply to the following terms when used with initial capital letters in this Agreement, its attachments, and amendments hereto.

  1.1    **Affiliate** - shall mean a GI Affiliate or Microsoft Affiliate, depending on context.

      1.1.1    **GI Affiliate** - shall mean Motorola Mobility Holdings, Inc. and any company which now or hereinafter is controlled by Motorola Mobility Holdings, Inc. Such entities shall only be deemed to be GI Affiliates hereunder for as long as such control exists. GI Affiliate includes in any event: Motorola Mobility, Inc. and Motorola Mobility Germany GmbH.

      1.1.2    **Microsoft Affiliate** - shall mean any company which now or hereinafter is controlled by Microsoft. Such entities shall only be deemed to be Microsoft Affiliates hereunder for as long as such control exists. Microsoft Affiliate includes in any event: Microsoft Deutschland GmbH and Microsoft Ireland Operations Ltd.

  1.2    **Agreement** - shall mean this license between GI and Microsoft, including exhibits, attachments, amendments and modifications hereto.

  1.3    **AVC Codec** – shall mean any single product or thing which incorporates the full functionality of

both one AVC Decoder and one AVC Encoder.

1.4    AVC Decoder - shall mean a decoder used to decode AVC Video.

1.5    AVC Encoder - shall mean an encoder used to create AVC Video.

1.6    AVC Standard - shall mean the video standard defined in ISO/IEC 14496-10:2008, 4th Edition (2008-09-15) and any subsequent version or extension of this video standard; provided, however, that no subsequent version or extension of such definition shall reduce the scope of any definition of the AVC Standard immediately prior to the delivery of any such subsequent version or extension.

1.7    AVC Video – shall mean video encoded in compliance with the AVC Standard.

1.8    Google Acquisition Date – shall mean May 22, 2012, the date of completion of the acquisition of Motorola Mobility Holdings, Inc. (and therefore GI) by Google, Inc.

1.9    Google's AVC Patent Portfolio License – shall mean the AVC Patent Portfolio License between Google, Inc. as a licensee and MPEG LA, LLC as licensing administrator.

1.10    Licensed GI Patents - shall mean DE 69232063, which is the German part of EP 0538667 B1, and DE 69425919, which is the German part of EP 0615384 B1.

1.11    Licensed Microsoft Patents - shall mean:

        DE 69937462, which is the German part of EP 1135934 B1;

        DE 69941964, which is the German part of EP 1853069 B1;

        DE 60311231, which is the German part of EP 1468566 B1;

        DE 60310368, which is the German part of EP 1468567 B1;

        DE 60332175, which is the German part of EP 1753244 B1;

        DE 20222025; and

        DE 20222026.

1.12    Licensed Product – shall mean any product that contains an AVC Decoder or AVC Codec. This includes hardware devices including an AVC Decoder or AVC Codec. This also includes software where installation of such software on a computing device would create an AVC Decoder or AVC Codec.

1.13    Old Product - shall mean a Licensed Product that has been made or sold by GI or GI Affiliates, or by Microsoft or Microsoft Affiliates, prior to the signing of this Agreement. Old Product also includes a Licensed Product that has been made or sold by Skype Communications, which is now a division of Microsoft, prior to the acquisition of Skype Communications by Microsoft.

## 2.    LICENSE GRANT

2.1    Licensed Products. Subject to the terms and conditions of this Agreement, GI hereby grants to Microsoft (including its divisions, e.g., Skype) and Microsoft Affiliates a *royalty-bearing*, nonexclusive, nontransferable license under the Licensed GI Patents to make, have made, sell or offer for sale in Germany Licensed Products and for the importation into, use and possession of

such Licensed Products in Germany. Subject to the terms and conditions of this Agreement, for Licensed Products before the Google Acquisition Date, Microsoft hereby grants to GI and GI Affiliates a *royalty-free*, nonexclusive, nontransferable license under the Licensed Microsoft Patents to make, have made, sell or offer for sale in Germany Licensed Products and for the importation into, use and possession of such Licensed Products in Germany. Subject to the terms and conditions of this Agreement, for Licensed Products after the Google Acquisition Date, Microsoft hereby grants to GI and GI Affiliates an option for a *royalty-bearing*, nonexclusive, nontransferable license under the Licensed Microsoft Patents to make, have made, sell or offer for sale in Germany Licensed Products and for the importation into, use and possession of such Licensed Products in Germany. NO OTHER LICENSE IS GRANTED IN THIS ARTICLE 2.1, BY IMPLICATION OR OTHERWISE.

2.2   Sublicenses. An assignment of the license or granting sub-licenses under the Licensed GI Patents by Microsoft is only permissible with written approval of GI. An assignment of the option for license, the license or granting sub-licenses under the Licensed Microsoft Patents by GI is only permissible with written approval of Microsoft.

2.3   Scope of License Grant. Notwithstanding anything to the contrary herein, all licenses granted under this Agreement are limited to a field of use of processing for the AVC Standard.

3.   ROYALTIES AND PAYMENTS

3.1   Royalties for Licenses under the Licensed GI Patents. For those licenses in Article 2 hereof under the Licensed GI Patents, Microsoft shall pay to GI, throughout the term of this Agreement for such periods in which any of the Licensed GI Patents is in force, the applicable royalties as follows:

3.1.1   Licensed Products before Google Acquisition Date. The royalty for the license granted pursuant to Article 2.1 hereof upon the manufacture or sale in Germany, before the Google Acquisition Date, for each computing device containing an AVC Decoder or AVC Codec provided by Microsoft or a Microsoft Affiliate (each such device is referred to as a "Unit"):

| Unit Sales | Royalties Payable per Unit |
|---|---|
| All Units up to 10 million Units per fiscal year | 2 Eurocents per Unit |
| All Units above 10 million Units per fiscal year | 1 Eurocent per Unit |

3.1.2   Licensed Products after Google Acquisition Date. The royalty for the license granted pursuant to Article 2.1 hereof upon the manufacture or sale in Germany, not before the Google Acquisition Date, for each Unit provided by Microsoft or a Microsoft Affiliate shall be set in a manner consistent with Article 8.3 of the Google AVC Patent Portfolio License. The royalty shall be the part of the "Licensors" per patent share of royalties which are payable pursuant to Article 3" that is attributable to the Licensed GI Patents. This royalty is €2100.00 per fiscal year per Licensed GI Patent.

3.2   Royalties for Licenses under the Licensed Microsoft Patents. For those licenses in Article 2 hereof under the Licensed Microsoft Patents, GI shall pay to Microsoft, throughout the term of this Agreement for such periods in which any of the Licensed Microsoft Patents is in force, the applicable royalties as follows:

3.2.1   Licensed Products before Google Acquisition Date. The license granted pursuant to Article 2.1 hereof upon the manufacture or sale in Germany, before the Google

Acquisition Date, for each Unit provided by GI or a GI Affiliate, is a *royalty-free license*.

3.2.2   **Licensed Products after Google Acquisition Date.** If GI exercises its option for a license under Article 2.1 for Licensed Products after the Google Acquisition Date, the royalty for the license granted pursuant to Article 2.1 hereof upon the manufacture or sale in Germany, not before the Google Acquisition Date, for each Unit provided by GI or a GI Affiliate shall be as follows.

| Unit Sales | Royalties Payable per Unit Per Licensed Microsoft Patent |
|---|---|
| All Units up to 7,000 Units per fiscal year | 0.0 Eurocents per Unit per Licensed Microsoft Patent |
| All Units above 7,000 and up to 350,000 Units per fiscal year | 0.2 Eurocents per Unit per Licensed Microsoft Patent |
| All Units above 350,000 Units per fiscal year | 0.1 Eurocent per Unit per Licensed Microsoft Patent |

But in no event shall the royalties payable be greater than €2100.00 per fiscal year per Licensed Microsoft Patent.

3.3   **Old Products Provided by Microsoft.** For all computing devices containing an AVC Decoder or AVC Codec provided by Microsoft or Microsoft Affiliates, which were made or sold before the execution of this Agreement, within 1 month after the execution of this Agreement, Microsoft shall pay GI a one-time payment for the Licensed GI Patents. Any back royalties shall bear interest, compounded monthly, at the lesser of ten percent (10 %) per annum or the highest interest rate permitted to be charged by GI according to the German Civil Code (*Bürgerliches Gesetzbuch*).

3.4   **Old Products Provided by GI.** For all computing devices containing an AVC Decoder or AVC Codec provided by GI or GI Affiliates, which were made or sold before the Google Acquisition Date, GI has a *royalty-free license* to the Licensed Microsoft Patents under Article 3.2.1. For all computing devices containing an AVC Decoder or AVC Codec provided by GI or GI Affiliates, which were made or sold between the Google Acquisition Date and the execution of this Agreement, within 1 month after the execution of this Agreement, if GI exercises its option for a license under Article 2.1, GI shall pay Microsoft a one-time payment for the Licensed Microsoft Patents according to Article 3.2.2.

3.5   **Payment of Royalties by Microsoft Pursuant to Article 3.1.** Royalties payable pursuant to Article 3.1 of this Agreement shall be paid only for such periods in which at least one of the Licensed GI Patents is in force. Royalties are not payable for any period in which none of the Licensed GI Patents is in force. Under Article 3.1.2, royalties are payable for a given Licensed GI Patent only when that Licensed GI Patent is in force. Where the patent is not in force for a full fiscal year, payments will be reduced proportionally. Royalties payable pursuant to Article 3.1 of this Agreement that accrue after the latest signature date specified on the final page of this Agreement shall be payable on a prorated basis by Microsoft to GI semiannually as measured from such signature date to the last business day of each six-month period (or fraction thereof) ending June 30 or December 31 thereafter, for Licensed Products licensed pursuant to Article 2.1 which are made in Germany or sold in Germany during that period ending June 30 or December 31.

4

3.6 **Payment of Royalties by GI Pursuant to Article 3.2.** If GI exercises its option for a license under Article 2.1, royalties payable pursuant to Article 3.2 of this Agreement shall be paid only for such periods in which at least one of the Licensed Microsoft Patents is in force. Royalties are not payable for any period in which none of the Licensed Microsoft Patents is in force. If GI exercises its option for a license under Article 2.1, under Article 3.2.2, royalties are payable for a given Licensed Microsoft Patent only when that Licensed Microsoft Patent is in force. Where the patent is not in force for a full fiscal year, payments will be reduced proportionally. Royalties payable pursuant to Article 3.1 of this Agreement that accrue after the latest signature date specified on the final page of this Agreement shall be payable on a prorated basis by GI to Microsoft semiannually as measured from such signature date to the last business day of each six-month period (or fraction thereof) ending June 30 or December 31 thereafter, for Licensed Products licensed pursuant to Article 2.1 which are made in Germany or sold in Germany during that period ending June 30 or December 31.

3.7 **Payments Upon Termination or Expiration.** Within sixty (60) days after the effective date of termination or expiration of this Agreement, Microsoft shall pay GI any and all amounts that are due pursuant to this Agreement as of the effective date of such termination or expiration, and GI shall pay Microsoft any and all amounts that are due pursuant to this Agreement as of the effective date of such termination or expiration.

3.8 **Form of Payment.** Any payment made by Microsoft under the provisions of this Agreement shall be made in Euros and by wire transfer to the account designated by GI in writing to Microsoft or other means GI shall, in its sole discretion, find acceptable. Any payment made by GI under the provisions of this Agreement shall be made in Euros and by wire transfer to the account designated by Microsoft in writing to GI or other means Microsoft shall, in its sole discretion, find acceptable.

3.9 **Taxes.** Microsoft shall be entitled to withhold from any payments hereunder the withholding taxes (if any) that are to be withheld pursuant to applicable tax legislation. GI shall be entitled to withhold from any payments hereunder the withholding taxes (if any) that are to be withheld pursuant to applicable tax legislation.

3.10 **Freedom to negotiate a new royalty rate.** The parties are free at any time to negotiate a new royalty rate, or have a new royalty rate determined by a Court of Law, arbitral tribunal, an antitrust authority or independent third-party charged with giving a binding opinion.

4. **ACCOUNTING**

4.1 Microsoft shall comply with adequate and orderly accounting principles and shall keep proper books of account, showing all details necessary for the calculation of royalties according to Article 3 above.

4.2 If GI exercises its option for a license under Article 2.1, GI shall comply with adequate and orderly accounting principles and shall keep proper books of account, showing all details necessary for the calculation of royalties according to Article 3.2.2, unless GI pays the capped amount per fiscal year per Licensed Microsoft Patent.

4.3 If GI exercises its option for a license under Article 2.1, unless GI pays the capped amount per fiscal year per Licensed Microsoft Patent, for Licensed Products sold by GI or GI Affiliates in Germany after the signing of this Agreement, GI shall render the account on any sold Licensed Product, shall calculate the royalties due according to Article 3.2.2 for the related fiscal half year on the basis of the account and shall provide Microsoft with a respective payment of royalties within 60 calendar days after the end of each fiscal half year.

4.4 After prior written announcement, GI may, once a year during the customary office hours of Microsoft, have the records and books of account of Microsoft which relate to royalties paid under

SFI 1337775v.1

this Agreement inspected by an independent auditor who - by reason of his profession - is bound by an obligation of confidentiality. The auditor shall only inform GI and Microsoft of the outcome relating to the account statements, and is not entitled to communicate any further information. Should the inspection reveal errors to the detriment of GI, any resulting amounts shall be payable by Microsoft without delay, Microsoft shall only reimburse GI for the costs of the inspection if the differential amount is at least 5% to the detriment of GI, otherwise GI shall bear the costs of the inspection.

5.   REPRESENTATIONS AND WARRANTIES

5.1   GI hereby represents and warrants that it has the right to grant to Microsoft and Microsoft Affiliates the rights, licenses and release granted under this Agreement for the Licensed GI Patents, and that there are no agreements, assignments or encumbrances that affect the ownership or control of the Licensed GI Patents or which would restrict the rights, licenses and release granted hereunder.

5.2   Microsoft hereby represents and warrants that it has the right to grant to GI and GI Affiliates the rights, licenses and release granted under this Agreement for the Licensed Microsoft Patents, and that there are no agreements, assignments or encumbrances that affect the ownership or control of the Licensed Microsoft Patents or which would restrict the rights, licenses and release granted hereunder.

5.3   In case of a sale or assignment of the Licensed GI Patents, the rights of Microsoft and Microsoft Affiliates will remain unaffected, cf. Para. 15 III of the German Patent Code (*Patentgesetz*).

5.4   In case of a sale or assignment of the Licensed Microsoft Patents, the rights of GI and GI Affiliates will remain unaffected, cf. Para. 15 III of the German Patent Code (*Patentgesetz*).

6.   CONFIDENTIAL INFORMATION

6.1   This Agreement shall be handled as confidential information, subject to any agreement between the parties governing the handling of confidential information. Unless required by law, or with the express written consent of the other party, or subject to said agreement between the parties governing or in the situations described in Article 6.2, the terms and conditions of the Agreement shall not be disclosed to any third party.

6.2   In any event, Microsoft and GI are entitled to submit this Agreement in the infringement proceedings before the Higher Regional Court of Karlsruhe in Germany, file no. 6 U 44/12, 6 U 45/12, 6 U 46/12, 6 U 47/12, in proceedings before a U.S. court, and in proceedings before any antitrust authority.

7.   TERM AND TERMINATION.

7.1   **Term.** Unless otherwise terminated as expressly provided in this Agreement, this Agreement shall remain continuously in effect until the last of the Licensed GI Patents or Licensed Microsoft Patents expires or is no longer enforceable.

7.2   **Termination.** This Agreement, including future payment obligations under Art. 3 of this Agreement, shall terminate immediately if, by final decision of a court of law, the Licensed GI Patents or the Licensed Microsoft Patents are held invalid or unenforceable. If such a decision applies only to one of the Licensed GI Patents or Licensed Microsoft Patents, the Agreement shall terminate immediately with respect to that patent and shall remain in effect for the other Licensed GI Patent(s) and Licensed Microsoft Patents not held invalid or unenforceable. GI shall have the right to immediately terminate this Agreement if Microsoft initiates a nullity action against any of

the Licensed GI Patents.

7.3    Refunds. Even if this Agreement is terminated, no refunds of any kind will be due to Microsoft for royalties already due or paid under this Agreement, and Microsoft agrees to pay in accordance with Article 3 any unpaid royalties due or incurred under this Agreement at the time this Agreement is terminated. Even if this Agreement is terminated, no refunds of any kind will be due to GI for royalties already due or paid under this Agreement, and GI agrees to pay in accordance with Article 3 any unpaid royalties due or incurred under this Agreement at the time this Agreement is terminated.

8.    **MISCELLANEOUS PROVISIONS.**

8.1    The Agreement is governed by and construed in accordance with German law without regard to its rules of choice of law.

8.2    The Mannheim District Court of Germany shall have exclusive jurisdiction for any and all disputes arising from or in connection with this Agreement.

8.3    In the event of any dispute or differences between the parties in respect of any right, obligation or liability of any party under this Agreement, including any dispute regarding the validity or invalidity of this Agreement or any of its provisions, the parties shall use their best efforts to come to an amicable resolution.

8.4    Should any provision of this Agreement be invalid or unenforceable, the remaining provisions shall remain valid. In place of an invalid or unenforceable provision, a valid provision which comes economically closest to the one intended by both parties is deemed to be agreed upon. The same applies in case a provision has been inadvertently omitted.

8.5    Any changes and modifications to this Agreement require written form. This also applies to this provision.

General Instrument Corporation

By: _____

Date: Jan 4/13

Microsoft Corporation

By: _____

Date: 8/31/12

SFI 1737775v.1

**quinn emanuel** deutschland

Mollstraße 42, 68165 Mannheim, Germany | TEL +49 (0) 621 43298-6000 FAX +49 (0) 621 43298-6100

**Anlage QE 5**

i.Sa. Motorola / Microsoft
Klage vom 26.4.2013
LG Mannheim, Az. neu
Quinn Emanuel LLP

*In advance via email and fax: 089/20 70 2100*

Freshfields Bruckhaus Deringer LLP
**z.H. Herrn Rechtsanwalt**
**Prof. Dr. Peter Chrocziel**
Prannerstraße 10
80333 München

Our Reference:    01980.40410 / 20380919.1                    marcusgrosch@quinnemanuel.com
                  MG/

15 January 2013

**General Instrument Corporation / Microsoft Corporation et al.,**
**LG Mannheim, Az. 2 O 387/11, OLG Karlsruhe, Az. 6 U 47/12**

**General Instrument Corporation / Microsoft Deutschland GmbH**
**LG Mannheim, Az. 2 O 240/11, OLG Karlsruhe, Az. 6 U 45/12**

**General Instrument Corporation / Microsoft Corporation et al.,**
**LG Mannheim, Az. 2 O 376/11, OLG Karlsruhe, Az. 6 U 44/12**

**General Instrument Corporation / Microsoft Deutschland GmbH**
**LG Mannheim, Az. 2 O 373/11, OLG Karlsruhe, Az. 6 U 46/12**

Dear Colleague,

In the above matter we refer to the offer of your clients to conclude a license agreements (the cross-license agreement attached to your letter of 31 August 2012 and your letter dated 23 December 2011).

We note that your clients, in the context of the aforementioned offer, acknowledged and accepted their obligation to pay damages on the merits ("Schadenersatz dem Grunde nach anerkannt"). This follows *inter alia* from your letter of 23 December 2011, where the following is stated:

**quinn emanuel urquhart & sullivan, llp**
LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL +1 213-443-3000 FAX 213-443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL +1 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL +1 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065 | TEL +1 650-801-5000 FAX 650-801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois 60661 | TEL +1 312-705-7400 FAX 312-705-7401
WASHINGTON, D.C. | 1299 Pennsylvania Ave. NW, Suite 825, Washington, D.C. 20004 | TEL +1 202-538-8000 FAX 202-538-8100
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 (0) 20 7653-2000 FAX +44 (0) 20 7653-2100
TOKYO | NBF Hibiya Bldg., 25F 1-1-7, Uchisaiwai-cho Chiyoda-ku, Tokyo, 100-0011 Japan | TEL +81 (0) 3 5510 1711 FAX +81 (0) 3 5510-1712
MOSCOW | 3rd Floor, Voentorg Building, 10 Vozdvizhenka Street, Moscow, Russia 125009 | TEL +7 495 797 36 66 FAX +7 495 797 36 67
HAMBURG | An der Alster 3, 20099 Hamburg, Germany | TEL +49 (0) 40 89728-7000 FAX +49 (0) 40 89728-7100

> *"As required by the recent case law of the District Court in Mannheim (esp. decision of 9 December 2011, docket no. 7 O 122/11) Microsoft Corp. expressly acknowledges ("erkennt dem Grunde nach an") the duty to cover past damages for any past use of the Licensed Patents. The damages are to be determined in accordance with the respective principles set forth under German law."*

For the sole purpose of partially resolving the pending disputes our client has decided – without prejudice and without acknowledging any legal obligation to do so – to accept your clients' offer.

For the avoidance of doubt, the acceptance of the offer does particularly not represent any acknowledgement or acceptance whatsoever as to

(1)     the compliance of your clients' offer with FRAND terms and/or any applicable legal requirement such as the requirement laid down in the Orange Book decision of the German Federal Supreme Court; our client particularly denies that the rate set in the license is a FRAND rate.

(2)     an obligation of our client or Google Inc. to grant licenses under the patents in suit with regard to any MPEG LA pool license agreement; or

(3)     the standard essentiality of the Licensed Microsoft Patents as defined in the agreement or any past, present and/or future use of the Licensed Microsoft Patents by our client and/or any of its affiliates.

Even though our client accepts the license agreement to resolve the dispute going forward, the agreed license rate is without prejudice to calculating past damages prior to the date of the conclusion of this agreement (in whatever form our client might choose to calculate such damages under German law). Our client will specify the amount of past damages after having received the proper accounting under German law. With regard to your understanding as to the release regarding any further claims for past use of the H.264 technology (your letter of 23.12.2011), we remark that a "release" only occurs as far as German law provides for that in connection with accepting the offer regarding the two patents in suit. Particularly, our client retains all rights under the Mannheim court's judgments specifying your clients' duty to render account which your clients owe both under their statutory obligations and the corresponding acknowledgement to pay past damages (rendering account is the indispensable prerequisite for this under German law). This is in line with case law of the Karlsruhe appellate court (appeal process to the 9 December 2011 decision cited by you in your statement quoted above, decision of the Karlsruhe appellate court 13 June 2012, case number 6 U 136/12). We also remark that the

acknowledgement of the duty to pay damages has been made unconditionally, i.e. not conditioned upon the conclusion of the license agreement.

Our client retains the right to exercise the option for a cross license at a later point in time. Based, on the conclusion of the license agreement due course, our client will declare the pending disputes moot with regard to our client's request for injunctive relief and recall. We expect that your client will submit a corresponding declaration immediately thereafter.

The attached counter-signed version has been signed by Ms. Catherine Lacavera, patent litigation director of Google Inc., who is authorized so sign for GI.

Yours sincerely

**Dr. M. Grosch**
Attorney at Law



Anlage QE 6

# ⊛ Freshfields Bruckhaus Deringer

i.Sa. Motorola / Microsoft
Klage vom 26.4.2013
LG Mannheim, Az. neu
Quinn Emanuel LLP

MÜNCHEN
Prannerstraße 10
80333 München
T +49 89 20 70 2 0
Direkt T +49 89 20 70 2 362
F +49 89 20 70 2 100
Direkt F +
E peter.chrocziel@freshfields.com
W freshfieldsbruckhausderinger.com

DOK NR  DAC12669565/4
UNSER ZEICHEN  PC 109096-0588
IHR ZEICHEN

General Instrument Corp.
c/o Quinn Emanuel Urquhart & Sullivan LLP
Herrn Dr. Marcus Grosch
Mollstraße 42
68165 Mannheim



| | z.A. | Mdt. | WV | Vert. |
|---|---|---|---|---|
| Ein gang | **28. Jan. 2013** | | | QE LLP MA |
| Frist | Vorfrist | | Termin | |

18 January 2013

**General Instrument ./. Microsoft Corp. et al.**
**Higher Regional Court Karlsruhe**
**Docket no.: 6 U 44/12; 6 U 45/12; 6 U 46/12; 6 U 47/12**

Dear Colleague Dr. Grosch,

This letter replies to your letter dated 15 January 2013, in which your client, Motorola, seeks to impose additional conditions on Microsoft's *Orange Book* offer (dated 23 December 2011, amended on 3 February 2012 and on 31 August 2012), and then purports to "accept" the new offer as revised by Motorola. As you know, Microsoft made its *Orange Book* offer as a result of Motorola's unlawful threat both of an injunction and damages far in excess of FRAND. Moreover, as explained below, your letter is *not* an acceptance of Microsoft's offer, but rather a counteroffer.

Motorola's counteroffer breaches not only its FRAND obligations, but also the Federal Trade Commission ("FTC") Order resulting from the settlement between the FTC and Motorola (including its parent Google) announced 3 January 2013.

The FTC ruled that Motorola breached its FRAND obligations and violated competition law by seeking to enjoin competitors on the basis of standard essenital patents ("SEPs"). (See FTC Complaint.) The resulting FTC Order bans Motorola from obtaining or enforcing any injunction based on any pending claim or any new claim. *See, e.g.,* FTC Order II.C. As ex-

Freshfields Bruckhaus Deringer LLP ist eine Limited Liability Partnership mit Sitz in 65 Fleet Street, London EC4Y 1HS, registriert in England und Wales unter der Registernummer OC334789. Freshfields Bruckhaus Deringer LLP ist von der Solicitors Regulation Authority zugelassen und wird von dieser reguliert. Weitere regulatorische Informationen finden Sie im Internet unter www.freshfields.com/support/legalnotice.

Abu Dhabi Amsterdam Bahrain Barcelona Beijing Berlin Brüssel Dubai Düsseldorf Frankfurt am Main Hamburg Hanoi Ho Chi Minh City Hongkong Köln London Madrid Mailand Moskau München New York Paris Rom Shanghai Tokyo Washington Wien

 **Freshfields Bruckhaus Deringer**

plained by the FTC, "Google's settlement with the Commission requires Google to withdraw its claims for injunctive relief on FRAND-encumbered SEPs around the world. Statement of the Federal Trade Commission, *In the Matter of Google Inc.*, FTC File No. 121-0120 at 1 (3 January 3 2013).[1] Obviously Microsoft's Orange Book offer was made as part of its defense to the injunction proceeding that Motorola can no longer pursue. Rather than write to Microsoft, Motorola should already have written to the Appellate Court Karlsruhe to notify them that Motorola withdraws unconditionally its requests for injunction on the two declared-essential H.264 patents now before this court.

The FTC Order also precludes Motorola from seeking an injunction where a "Potential Licensee," such as Microsoft, has filed a "Request for FRAND Determination" with a U.S. District Court seeking a determination of "at least the royalty terms of a global license for use of" Motorola SEPs. FTC Order, I.Y., II.D. Microsoft filed just such an action on 9 November 2010 in the Western District of Washington,[2] and that court will soon issue its determination of royalty terms for Motorola's H.264 SEPs *worldwide*. Moreover, at a hearing last April, Motorola's U.S. counsel assured that court of its independent authority to set the

---

[1] *See also* FTC/Google Press Conference Transcript at 24 (3 January 3 2013) (http://www.ftc.gov/video-library/index.php/ftc-events/press-conferences/2013/google-press-conference/2070954138001; Chairman Leibowitz's answer to question asked by Michelle Quinn at Politico, and begins at about 49:45 in the video);Opening Remarks of Federal Trade Commission Chairman Jon Leibowitz at 2 (3 January 2013) ("Commission Chairman Leibowitz Remarks") ("Google's settlement with the Commission requires Google to abandon its claims for injunctive relief on any of its standard essential patents with a FRAND commitment."); Analysis of Proposed Consent Order to Aid Public Comment at 7 ("The Proposed Consent Order further prohibits Google and Motorola from continuing or enforcing existing claims for injunctive relief based on FRAND-encumbered patents.").

[2] Complaint, filed 9 November 2010, 2-10-cv-01823-JLR (USDC, WDWA), ¶ 9 ("Microsoft seeks . . . a judicial accounting of what constitutes a royalty rate in all respects consistent with Motorola's promises . . . for H.264 patents identified by Motorola" . . .); Amended and Supplemental Complaint, filed 23 February 2011, 2-10-cv-01823-JLR (USDC, WDWA), ¶ 9 (same).

(logo) **Freshfields Bruckhaus Deringer**

RAND terms for Motorola's German patents, notwithstanding the outcome of any proceedings in Germany.[3]

Yet Motorola maintains its actions and demands for injunction before the Appellate Court Karlsruhe, and seeks via its purported "acceptance" of the *Orange Book* offer (which is limited to only two Motorola German H.264 SEPs) to circumvent the worldwide determination of royalties in the proceedings in the Western District of Washington as contemplated by the FTC Order.

The FTC Order further preserves the right of a "Potential Licensee," such as Microsoft, to challenge in court Motorola's allegations that its SEPs are valid and infringed. FTC Order, I.I., II.E.2. Motorola attempts to circumvent this requirement of the FTC Order by enforcing as the apparent requirement of the Mannheim Regional Court that Microsoft abandon its nullity action as a condition of the *Orange Book* process. Motorola's decision to enforce this legal rule imposed by the Mannheim Regional Court violates the FTC Order every bit as much as Motorola's decision to improperly enforce an injunction on a Standard Essential Patent.

Finally, Motorola's additional conditions grafted onto the *Orange Book* offer would extract a further agreement from Microsoft that Motorola may continue to seek past damages far in excess of FRAND – as if Motorola had *no* FRAND obligations: "the agreed license rate is without prejudice to calculating past damages prior to the date of conclusion of this agree-

---

[3] "You may agree eventually with the German court. You may not. If it isn't RAND you may look at that and dismiss it and say, I don't think it's RAND in Germany, I'm going to set a different rate. . . . But, whatever the German court does, if it's your decision to do so, you will have the ability to say, "I don't agree with a piece that the German court did, here's my ruling as to Germany." And if that means that Microsoft paid too much to get out of the way of a speeding train, then it has the claim to get the money back. And it gets the money back as an overpayment." 11 April 2012 Verbatim Report of Proceedings before the Honorable James L. Robart, United States District Judge (Argument on TRO) at pages 26 and 38.

 **Freshfields Bruckhaus Deringer**

4|4

ment (in whatever form [Motorola] might choose to calculate such damages under German law)." Your Letter 15 January 2013, p. 2. Motorola apparently seeks damages that are *not* limited to FRAND royalties, but rather may include royalties in excess of FRAND, Motorola's "lost profits" and/or Microsoft's profits. Seeking such excessive damages violates both Motorola's FRAND obligations and the FTC Order. FTC Order, III. 8 ("the Request for FRAND determination . . . shall establish the Contested Terms").[4] No such condition is included in the *Orange Book* offer actually made by Microsoft – to the contrary the amount to be paid in "past damages" is expressly stipulated (and is itself far above FRAND as Microsoft has explained on many occasions).[5]

Motorola should cease its efforts to evade its FRAND obligations and the FTC Order and immediately withdraw its requests for injunction in the Appellate Court Karlsruhe.

Yours sincerely,

Prof. Dr. Peter Chrocziel
- Attorney at law -

---

[4] The FTC Order prohibits Motorola from seeking compensation in excess of FRAND under any circumstances.

[5] Sec. 3.3 ("Old Products") of the amended offer, dated 31 August 2012 (Sec. 3.2 of the original offer), stipulates that Microsoft shall make a one-time payment for the Licensed GI patents based on the royalty rate set out in Sec. 3.1. This Section sets the amount of past "damages" to be the interest-bearing royalty rate set out in the license agreement. This principle to cover "past damages" also is explained in our brief to the Regional Court Mannheim, dated 23 December 2011, in which it is stated that the deposit will include payments for the alleged use of the patents-in-suit in the past. These have been calculated according to the framework set out in the offer dated 23 December 2011 (cf. brief dated 23 December 2011, end of last paragraph). In accordance with this provision Microsoft accounted for and deposited not only the royalty payments going forward, starting at the date of the first offer, but also deposited the interest-bearing "past damages" payments (cf. evidence for deposit and accounting details provided as Exhibits to the briefs in the respective infringement proceedings on 27 January 2012, 30 March 2012 and 7 November 2012).

**quinn emanuel** deutschland

Mollstraße 42, 68165 Mannheim, Germany | TEL +49 (0) 621 43298-6000 FAX +49 (0) 621 43298-6100

*In advance via email and fax: 089/20 70 2100*

Freshfields Bruckhaus Deringer LLP
**Attorney at Law**
**Prof. Dr. Peter Chrocziel**
Prannerstraße 10
80333 München

<u>**Anlage QE 7**</u>

i.Sa. Motorola / Microsoft
Klage vom 26.4.2013
LG Mannheim, Az. neu
Quinn Emanuel LLP

Our Reference:   01980.40410 / 20396105.2
                 MG
Your Reference:  PC109096-0588

marcusgrosch@quinnemanuel.com

1 March 2013

**General Instrument Corporation v. Microsoft Corporation et al.,**
**LG Mannheim, case no. 2 O 387/11, OLG Karlsruhe, case no. 6 U 47/12**

**General Instrument Corporation v. Microsoft Deutschland GmbH**
**LG Mannheim, case no. 2 O 240/11, OLG Karlsruhe, case no. 6 U 45/12**

**General Instrument Corporation v. Microsoft Corporation et al.,**
**LG Mannheim, case no. 2 O 376/11, OLG Karlsruhe, case no. 6 U 44/12**

**General Instrument Corporation v. Microsoft Deutschland GmbH**
**LG Mannheim, case no. 2 O 373/11, OLG Karlsruhe, case no. 6 U 46/12**

Dear Colleague,

In the above matter we refer to your letter of 18 January 2013, in which you attempt to classify our client's acceptance of your clients' license offer as a "counteroffer", denying the fact that a license agreement has been concluded between our client and your clients.

**quinn emanuel urquhart & sullivan, llp**
LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL +1 213-443-3000 FAX 213-443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL +1 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL +1 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065 | TEL +1 650-801-5000 FAX 650-801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois 60661 | TEL +1 312-705-7400 FAX 312-705-7401
WASHINGTON, D.C. | 1299 Pennsylvania Ave. NW, Suite 825, Washington, D.C. 20004 | TEL +1 202-538-8000 FAX 202-538-8100
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 (0) 20 7653-2000 FAX +44 (0) 20 7653-2100
TOKYO | NBF Hibiya Bldg., 25F 1-1-7, Uchisaiwai-cho Chiyoda-ku, Tokyo, 100-0011 Japan | TEL +81 (0) 3 5510-1711 FAX +81 (0) 3 5510-1712
MOSCOW | 3rd Floor, Voentorg Building, 10 Vozdvizhenka Street, Moscow, Russia 125009 | TEL +7 495 797 36 66 FAX +7 495 797 36 67
HAMBURG | An der Alster 3, 20099 Hamburg, Germany | TEL +49 (0) 40 89728-7000 FAX +49 (0) 40 89728-7100

In your letter (p. 4) you seem to base this argument on the allegation that your clients had not acknowledged and accepted their obligation to compensate our client for past damages on the merits. In this context, you state the following in your letter:

> "*No such condition is included in the Orange Book offer actually made by Microsoft – to the contrary the amount to be paid in 'past damages' is expressly stipulated (and is itself far above FRAND as Microsoft has explained on many occasions).*"

We would like to point out that your allegations as to the scope of your clients' offer clearly contradict the statements that your client and you made in previous correspondence and before the Mannheim District Court and the Karlsruhe Appellate Court.

As we already pointed out in our letter of 15 January 2013, in your cover letter to the initial offer dated 23 December 2011, the following is stated:

> "*As required by the recent case law of the District Court in Mannheim (esp. decision of 9 December 2011, docket no. 7 O 122/11) Microsoft Corp. expressly acknowledges ("erkennt dem Grunde nach an") the duty to cover past damages for any past use of the Licensed Patents. The damages are to be determined in accordance with the respective principles set forth under German law.*"

As follows from the explicit reference made in your letter, you and your clients were fully aware of the Mannheim Court's ruling in case no. 7 O 122/11, according to which damages for past use would have to be acknowledged on the merits, with such damages not being limited to the offered royalty rate. Further, you and your clients stated that past damages would

> "*be determined in accordance with the respective principles set forth under German law*",

thereby clearly not limiting your acknowledgment to the royalty rate offered in Sec. 3.3 for Old Products .

You confirmed the above in your briefs filed with the Mannheim District Court on 23 December 2011. Consequently, the Mannheim court referred to your clients' acknowledgment in the statements of facts of its four judgments of 2 May 2012. Had you and your clients not submitted the acknowledgment to the Mannheim court, the court would have qualified your clients' offer as insufficient for this reason already. We further note that your clients did not file any motion to correct the statements of facts in the judgments of 2 May 2012, thereby confirming once more the acknowledgment of their obligations to pay damages for past use "determined in accordance with the respective principles set forth under German law" as you pointed out in your letter of 23 December 2011.

Finally, you and your clients confirmed the acknowledgment in your grounds of appeal filed with the Karlsruhe Appellate Court on 3 September 2012.

As we pointed out in our letter of 15 January 2013, your clients' acknowledgement was not even conditional upon our client accepting the offer. In any event, there can be no doubt that our client's reference to your clients' acknowledgment did not make this acceptance a counteroffer as you try to point out. Rather, our client's reference reflected what was unambiguously offered. Thus, a license agreement has been concluded by means of our client's acceptance as pointed out in our letter of 15 January 2013. On behalf of our clients, we hereby prompt your clients once more to abide by the stipulations of such license. This includes payment under section 3.3 of the license which is already overdue.

Finally, your letter further seems to imply that our actions contravened the recent Consent Order issued by the FTC. This is incorrect; nothing in the FTC's Consent Order prevented our client's acceptance of your clients' Orange Book offer.

Yours sincerely

Dr. M. Grosch
Attorney at Law

Anlage QE 8
i.Sa. Motorola / Microsoft
Klage vom 26.4.2013
LG Mannheim, Az. neu
Quinn Emanuel LLP

## ASSIGNMENT

WHEREAS, <u>GENERAL INSTRUMENT CORPORATION</u>, a corporation organized under the laws of DELAWARE, having a place of business at 101 Tournament Drive, Building 1, Horsham, PA 19044 („ASSIGNOR"), is the plaintiff in German litigation against Microsoft Corporation, Microsoft Ireland Operations Limited and Microsoft Deutschland GmbH for infringement of the German parts of European patents EP 0 615 384 and EP 0 538 667 ("PATENTS"), brought before the Mannheim District Court, docket nos. 2 O 240/11, 2 O 373/11, 2 O 376/11, and 2 O 387/11, currently pending on appeal before the Karlsruhe Court of Appeals, docket nos. 6 U 44/12, 6 U 45/12, 6 U 46/12, and 6 U 47/12 ("ACTIONS").

WHEREAS, ASSIGNOR and Microsoft Corporation have signed the H.264/AVC Patent Cross-License for Germany attached hereto as <u>Annex 1</u> ("LICENSE AGREEMENT").

WHEREAS, Microsoft Corporation and its subsidiaries declared, in a letter dated December 23, 2011 attached hereto as <u>Annex 2</u>, which letter is incorporated into the LICENSE AGREEMENT, and in the ACTIONS an express acknowledgment of its duty to cover past damages for any past use of the PATENTS ("ACKNOWLEDGMENT").

WHEREAS, <u>MOTOROLA MOBILITY LLC</u>, a limited liability corporation organized under the laws of DELAWARE, having a place of business at 600 North US Highway 45, Libertyville, IL 60048 ("ASSIGNEE"), obtained, through assignment from ASSIGNOR to General Instrument Holdings, Inc. and through assignment from General Instrument Holdings, Inc. to ASSIGNEE, ownership in all of ASSIGNOR's right, title and interest in, to and under, inter alia, the PATENTS.

WHEREAS, ASSIGNOR and ASSIGNEE wish to clarify that ASSIGNEE shall be the beneficiary of all of ASSIGNOR's claims out of or in connection with the LICENSE AGREEMENT and/or the ACKNOWLEDGMENT.

NOW, THEREFORE, ASSIGNOR hereby assigns and transfers to ASSIGNEE, and ASSIGNEE accepts the assignment and transfer of, all of ASSIGNOR's past, present and future claims against Microsoft Corporation and/or Microsoft Ireland Operations Ltd. and/or Microsoft Deutschland GmbH out of or in connection with the LICENSE AGREEMENT and/or the ACKNOWLEDGMENT, including, but not limited to, all claims for royalties according to Sec. 3.1 of the LICENSE AGREEMENT, all claims for payment according to Sec. 3.3, and all claims for damages out of or in connection with the ACKNOWLEDGMENT.

This Assignment shall be governed by, and construed in accordance with, the laws of Germany.

This Assignment may be signed in counterparts, each of which shall be deemed an original.

*See attached*

For and on behalf of
General Instrument Corp.

Dated: April 4, 2013
*Katherine Stephens, Assistant Secretary*


For and on behalf of
Motorola Mobility LLC:

Dated: April 4 / 13
*Catherine Lacavera, Authorized Signatory*

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

**CIVIL CODE § 1189**

State of California

County of _Santa Clara_

On _April 4, 2013_ before me, _Melissa Bell, Notary Public_
   *Date* — Here Insert Name and Title of the Officer

personally appeared _Catherine Lacavera_
                              Name(s) of Signer(s)

MELISSA KATHRYN BELL
Commission # 1995291
Notary Public - California
Santa Clara County
My Comm. Expires Oct 25, 2016

Place Notary Seal Above

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _Melissa K. Bell_
                    Signature of Notary Public

--------------------- **OPTIONAL** ---------------------
*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

## Description of Attached Document

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

## Capacity(ies) Claimed by Signer(s)

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____
_____

Signer Is Representing: _____
_____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____
_____

Signer Is Representing: _____
_____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Santa Clara_ }

On _4/4/13_ before me, _Joanne Rauch Notary Public_
    Date                  Here Insert Name and Title of the Officer

personally appeared _Katherine Stephens_
                                        Name(s) of Signer(s)

---

**JOANNE RAUCH**
Commission # 1964091
Notary Public - California
Santa Clara County
My Comm. Expires Jan 14, 2016

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Joanne Rauch_
                        Signature of Notary Public

Place Notary Seal Above

————— **OPTIONAL** —————

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

## Description of Attached Document

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

## Capacity(ies) Claimed by Signer(s)

Signer's Name: _____
- ☐ Individual
- ☐ Corporate Officer — Title(s): _____
- ☐ Partner — ☐ Limited ☐ General
- ☐ Attorney in Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other: _____

Signer Is Representing: _____
_____
_____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer's Name: _____
- ☐ Individual
- ☐ Corporate Officer — Title(s): _____
- ☐ Partner — ☐ Limited ☐ General
- ☐ Attorney in Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907   Reorder: Call Toll-Free 1-800-876-6827

## H.264/AVC PATENT CROSS-LICENSE FOR GERMANY

This Agreement is made as of _January 13, 2013_, by and between General Instrument Corporation, a Delaware State Corporation, having a principal place of business in Horsham, Pennsylvania, U.S.A. (hereinafter "GI"), and Microsoft Corporation, a Washington State Corporation having a principal place of business in Redmond, Washington, U.S.A. (hereinafter "Microsoft") (also referred to as "a party" respectively or together as "the parties").

WHEREAS, GI claims that it is the owner of the Licensed GI Patents.

WHEREAS, Microsoft claims that it is the owner of the Licensed Microsoft Patents.

WHEREAS, GI has sued Microsoft and two Microsoft Affiliates for infringement of the Licensed GI Patents before the District Court of Mannheim in Germany, file no. 2 O 240/11, 2 O 376/11, 2 O 373/11, 2 O 387/11, now on appeal on docket no. 6 U 44/12, 6 U 45/12, 6 U 46/12, 6 U 47/12.

WHEREAS, Microsoft submits this Agreement as part of its defense in the above-mentioned proceedings in accordance with the "Orange Book Standard" decision of the Federal Court of Justice (*Bundesgerichtshof, BGH*) of 6 May 2009 (docket no. KZR 39/06) and the practice by the District Court of Mannheim (*Landgericht Mannheim*), in particular the decisions of 27 May 2011 (docket no. 7 O 65/10), of 9 December 2011 (docket no. 7 O 122/11) and of 2 May 2012 (in the proceedings mentioned above involving the parties to this Agreement) as expressed in the accompanying letters to this Agreement which are hereby made part of this Agreement.

WHEREAS, the District Court of Mannheim has indicated the Orange Book Standard requires Microsoft, when proposing specific license fees in this Agreement, to set the license fees such that refusal by GI would be a blatant violation of antitrust law.

NOW, THEREFORE, GI and Microsoft AGREE AS FOLLOWS:

0.   **EFFECTIVE DATE**

    0.1    This Agreement shall be effective as of its signing by GI.

1.   **DEFINITIONS**

    The definitions set forth in this Article shall apply to the following terms when used with initial capital letters in this Agreement, its attachments, and amendments hereto.

    1.1    Affiliate - shall mean a GI Affiliate or Microsoft Affiliate, depending on context.

        1.1.1    GI Affiliate - shall mean Motorola Mobility Holdings, Inc. and any company which now or hereinafter is controlled by Motorola Mobility Holdings, Inc. Such entities shall only be deemed to be GI Affiliates hereunder for so long as such control exists. GI Affiliate includes in any event Motorola Mobility, Inc. and Motorola Mobility Germany GmbH.

        1.1.2    Microsoft Affiliate - shall mean any company which now or hereinafter is controlled by Microsoft. Such entities shall only be deemed to be Microsoft Affiliates hereunder for as long as such control exists. Microsoft Affiliate includes in any event: Microsoft Deutschland GmbH and Microsoft Ireland Operations Ltd.

    1.2    Agreement - shall mean this license between GI and Microsoft, including exhibits, attachments, amendments and modifications hereto.

    1.3    AVC Codec – shall mean any single product or thing which incorporates the full functionality of

SFI 1717722v.1

both one AVC Decoder and one AVC Encoder.

1.4     **AVC Decoder** - shall mean a decoder used to decode AVC Video.

1.5     **AVC Encoder** - shall mean an encoder used to create AVC Video.

1.6     **AVC Standard** - shall mean the video standard defined in ISO/IEC 14496-10:2005, 4th Edition (2008-09-15) and any subsequent version or extension of this video standard; provided, however, that no subsequent version or extension of such definition shall reduce the scope of any definition of the AVC Standard immediately prior to the delivery of any such subsequent version or extension.

1.7     **AVC Video** - shall mean video encoded in compliance with the AVC Standard.

1.8     **Google Acquisition Date** - shall mean May 22, 2012, the date of completion of the acquisition of Motorola Mobility Holdings, Inc. (and therefore GI) by Google, Inc.

1.9     **Google's AVC Patent Portfolio License** - shall mean the AVC Patent Portfolio License between Google, Inc. as a licensee and MPEG LA, LLC as licensing administrator.

1.10     **Licensed GI Patents** - shall mean DE 69232063, which is the German part of EP 0538667 D1, and DE 69425919, which is the German part of EP 0615384 D1.

1:11     **Licensed Microsoft Patents** - shall mean:

        DE 69937462, which is the German part of EP 1135934 B1;

        DE 69941964, which is the German part of EP 1853069 B1;

        DE 60311231, which is the German part of EP 1468566 B1;

        DE 60310368, which is the German part of EP 1468567 B1;

        DE 60332175, which is the German part of EP 1753244 B1;

        DE 20222025; and

        DE 20222026.

1.12     **Licensed Product** -- shall mean any product that contains an AVC Decoder or AVC Codec. This includes hardware devices including an AVC Decoder or AVC Codec. This also includes software where installation of such software on a computing device would create an AVC Decoder or AVC Codec.

1.13     **Old Product** - shall mean a Licensed Product that has been made or sold by GI or GI Affiliates, or by Microsoft or Microsoft Affiliates, prior to the signing of this Agreement. Old Product also includes a Licensed Product that has been made or sold by Skype Communications, which is now a division of Microsoft, prior to the acquisition of Skype Communications by Microsoft.

2.     **LICENSE GRANT**

2.1     **Licensed Products.** Subject to the terms and conditions of this Agreement, GI hereby grants to Microsoft (including its divisions, e.g., Skype) and Microsoft Affiliates a *royalty-bearing*, nonexclusive, nontransferable license under the Licensed GI Patents to make, have made, sell or offer for sale in Germany Licensed Products and for the importation into, use and possession of

RVI 1237735v.1

such Licensed Products in Germany. Subject to the terms and conditions of this Agreement, for Licensed Products before the Google Acquisition Date, Microsoft hereby grants to GI and GI Affiliates a *royalty-free*, nonexclusive, nontransferable license under the Licensed Microsoft Patents to make, have made, sell or offer for sale in Germany Licensed Products and for the importation into, use and possession of such Licensed Products in Germany. Subject to the terms and conditions of this Agreement, for Licensed Products after the Google Acquisition Date, Microsoft grants to GI and GI Affiliates an option for a *royalty-bearing*, nonexclusive, nontransferable license under the Licensed Microsoft Patents to make, have made, sell or offer for sale in Germany Licensed Products and for the importation into, use and possession of such Licensed Products in Germany. NO OTHER LICENSE IS GRANTED IN THIS ARTICLE 2.1, BY IMPLICATION OR OTHERWISE.

2.2     Sublicenses. An assignment of the license or granting sub-licenses under the Licensed GI Patents by Microsoft is only permissible with written approval of GI. An assignment of the option for license, the license or granting sub-licenses under the Licensed Microsoft Patents by GI is only permissible with written approval of Microsoft.

2.3     Scope of License Grant. Notwithstanding anything to the contrary herein, all licenses granted under this Agreement are limited to a field of use of processing for the AVC Standard.

3.     ROYALTIES AND PAYMENTS

3.1     Royalties for Licenses under the Licensed GI Patents. For those licenses in Article 2 hereof under the Licensed GI Patents, Microsoft shall pay to GI, throughout the term of this Agreement for such periods in which any of the Licensed GI Patents is in force, the applicable royalties as follows:

3.1.1     Licensed Products before Google Acquisition Date. The royalty for the license granted pursuant to Article 2.1 hereof upon the manufacture or sale in Germany, before the Google Acquisition Date, for each computing device containing an AVC Decoder or AVC Codec provided by Microsoft or a Microsoft Affiliate (each such device is referred to as a "Unit"):

| Unit Sales | Royalties Payable per Unit |
|---|---|
| All Units up to 10 million Units per fiscal year | 2 Eurocents per Unit |
| All Units above 10 million Units per fiscal year | 1 Eurocent per Unit |

3.1.2     Licensed Products after Google Acquisition Date. The royalty for the license granted pursuant to Article 2.1 hereof upon the manufacture or sale in Germany, not before the Google Acquisition Date, for each Unit provided by Microsoft or a Microsoft Affiliate shall be set in a manner consistent with Article 8.3 of the Google AVC Patent Portfolio License. The royalty shall be the part of the "Licensors' per patent share of royalties which are payable pursuant to Article 3" that is attributable to the Licensed GI Patents. This royalty is €2100.00 per fiscal year per Licensed GI Patent.

3.2     Royalties for Licenses under the Licensed Microsoft Patents. For those licenses in Article 2 hereof under the Licensed Microsoft Patents, GI shall pay to Microsoft, throughout the term of this Agreement for such periods in which any of the Licensed Microsoft Patents is in force, the applicable royalties as follows:

3.2.1     Licensed Products before Google Acquisition Date. The license granted pursuant to Article 2.1 hereof upon the manufacture or sale in Germany, before the Google

Acquisition Date, for each Unit provided by GI or a GI Affiliate, is a *royalty-free license*.

3.2.2   Licensed Products after Google Acquisition Date. If GI exercises its option for a license under Article 2.1 for Licensed Products after the Google Acquisition Date, the royalty for the license granted pursuant to Article 2.1 hereof upon the manufacture or sale in Germany, not before the Google Acquisition Date, for each Unit provided by GI or a GI Affiliate shall be as follows.

| Unit Sales | Royalties Payable per Unit Per Licensed Microsoft Patent |
|---|---|
| All Units up to 7,000 Units per fiscal year | 0.0 Eurocents per Unit per Licensed Microsoft Patent |
| All Units above 7,000 and up to 350,000 Units per fiscal year | 0.2 Eurocents per Unit per Licensed Microsoft Patent |
| All Units above 350,000 Units per fiscal year | 0.1 Eurocent per Unit per Licensed Microsoft Patent |

But in no event shall the royalties payable be greater than €2100.00 per fiscal year per Licensed Microsoft Patent.

3.3   Old Products Provided by Microsoft. For all computing devices containing an AVC Decoder or AVC Codec provided by Microsoft or Microsoft Affiliates, which were made or sold before the execution of this Agreement, within 1 month after the execution of this Agreement, Microsoft shall pay GI a one-time payment for the Licensed GI Patents. Any back royalties shall bear interest, compounded monthly, at the lesser of ten percent (10 %) per annum or the highest interest rate permitted to be charged by GI according to the German Civil Code (*Bürgerliches Gesetzbuch*).

3.4   Old Products Provided by GI. For all computing devices containing an AVC Decoder or AVC Codec provided by GI or GI Affiliates, which were made or sold before the Google Acquisition Date, GI has a *royalty-free license* to the Licensed Microsoft Patents under Article 3.2.1. For all computing devices containing an AVC Decoder or AVC Codec provided by GI or GI Affiliates, which were made or sold between the Google Acquisition Date and the execution of this Agreement, within 1 month after the execution of this Agreement, if GI exercises its option for a license under Article 2.1, GI shall pay Microsoft a one-time payment for the Licensed Microsoft Patents according to Article 3.2.2.

3.5   Payment of Royalties by Microsoft Pursuant to Article 3.1. Royalties payable pursuant to Article 3.1 of this Agreement shall be paid only for such periods in which at least one of the Licensed GI Patents is in force. Royalties are not payable for any period in which none of the Licensed GI Patents is in force. Under Article 3.1.2, royalties are payable for a given Licensed GI Patent only when that Licensed GI Patent is in force. Where the patent is not in force for a full fiscal year, payments will be reduced proportionally. Royalties payable pursuant to Article 3.1 of this Agreement that accrue after the latest signature date specified on the final page of this Agreement shall be payable on a prorated basis by Microsoft to GI semiannually as measured from such signature date to the last business day of each six-month period (or fraction thereof) ending June 30 or December 31 thereafter, for Licensed Products licensed pursuant to Article 2.1 which are made in Germany or sold in Germany during that period ending June 30 or December 31.

3.6     Payment of Royalties by GI Pursuant to Article 3.2. If GI exercises its option for a license under Article 2.1, royalties payable pursuant to Article 3.2 of this Agreement shall be paid only for such periods in which at least one of the Licensed Microsoft Patents is in force. Royalties are not payable for any period in which none of the Licensed Microsoft Patents is in force. If GI exercises its option for a license under Article 2.1, under Article 3.2.2, royalties are payable for a given Licensed Microsoft Patent only when that Licensed Microsoft Patent is in force. Where the patent is not in force for a full fiscal year, payments will be reduced proportionally. Royalties payable pursuant to Article 3.1 of this Agreement that accrue after the latest signature date specified on the final page of this Agreement shall be payable on a prorated basis by GI to Microsoft semiannually as measured from such signature date to the last business day of each six-month period (or fraction thereof) ending June 30 or December 31 thereafter, for Licensed Products licensed pursuant to Article 2.1 which are made in Germany or sold in Germany during that period ending June 30 or December 31.

3.7     Payments Upon Termination or Expiration. Within sixty (60) days after the effective date of termination or expiration of this Agreement, Microsoft shall pay GI any and all amounts that are due pursuant to this Agreement as of the effective date of such termination or expiration, and GI shall pay Microsoft any and all amounts that are due pursuant to this Agreement as of the effective date of such termination or expiration.

3.8     Form of Payment. Any payment made by Microsoft under the provisions of this Agreement shall be made in Euros and by wire transfer to the account designated by GI in writing to Microsoft or other means GI shall, in its sole discretion, find acceptable. Any payment made by GI under the provisions of this Agreement shall be made in Euros and by wire transfer to the account designated by Microsoft in writing to GI or other means Microsoft shall, in its sole discretion, find acceptable.

3.9     Taxes. Microsoft shall be entitled to withhold from any payments hereunder the withholding taxes (if any) that are to be withheld pursuant to applicable tax legislation. GI shall be entitled to withhold from any payments hereunder the withholding taxes (if any) that are to be withheld pursuant to applicable tax legislation.

3.10    Freedom to negotiate a new royalty rate. The parties are free at any time to negotiate a new royalty rate, or have a new royalty rate determined by a Court of Law, arbitral tribunal, an antitrust authority or independent third-party charged with giving a binding opinion.

4.      ACCOUNTING

4.1     Microsoft shall comply with adequate and orderly accounting principles and shall keep proper books of account, showing all details necessary for the calculation of royalties according to Article 3 above.

4.2     If GI exercises its option for a license under Article 2.1, GI shall comply with adequate and orderly accounting principles and shall keep proper books of account, showing all details necessary for the calculation of royalties according to Article 3.2.2, unless GI pays the capped amount per fiscal year per Licensed Microsoft Patent.

4.3     If GI exercises its option for a license under Article 2.1, unless GI pays the capped amount per fiscal year per Licensed Microsoft Patent, for Licensed Products sold by GI or GI Affiliates in Germany after the signing of this Agreement, GI shall render the account on any sold Licensed Product, shall calculate the royalties due according to Article 3.2.2 for the related fiscal half year on the basis of the account and shall provide Microsoft with a respective payment of royalties within 60 calendar days after the end of each fiscal half year.

4.4     After prior written announcement, GI may, once a year during the customary office hours of Microsoft, have the records and books of account of Microsoft which relate to royalties paid under

this Agreement inspected by an independent auditor who - by reason of his profession - is bound by an obligation of confidentiality. The auditor shall only inform GI and Microsoft of the outcome relating to the account statements, and is not entitled to communicate any further information. Should the inspection reveal errors to the detriment of GI, any resulting amounts shall be payable by Microsoft without delay. Microsoft shall only reimburse GI for the costs of the inspection if the differential amount is at least 5% to the detriment of GI, otherwise GI shall bear the costs of the inspection.

5.   REPRESENTATIONS AND WARRANTIES

5.1   GI hereby represents and warrants that it has the right to grant to Microsoft and Microsoft Affiliates the rights, licenses and release granted under this Agreement for the Licensed GI Patents, and that there are no agreements, assignments or encumbrances that affect the ownership or control of the Licensed GI Patents or which would restrict the rights, licenses and release granted hereunder.

5.2   Microsoft hereby represents and warrants that it has the right to grant to GI and GI Affiliates the rights, licenses and release granted under this Agreement for the Licensed Microsoft Patents, and that there are no agreements, assignments or encumbrances that affect the ownership or control of the Licensed Microsoft Patents or which would restrict the rights, licenses and release granted hereunder.

5.3   In case of a sale or assignment of the Licensed GI Patents, the rights of Microsoft and Microsoft Affiliates will remain unaffected, cf. Para. 15 III of the German Patent Code (*Patentgesetz*).

5.4   In case of a sale or assignment of the Licensed Microsoft Patents, the rights of GI and GI Affiliates will remain unaffected, cf. Para. 15 III of the German Patent Code (*Patentgesetz*).

6.   CONFIDENTIAL INFORMATION

6.1   This Agreement shall be handled as confidential information, subject to any agreement between the parties governing the handling of confidential information. Unless required by law, or with the express written consent of the other party, or subject to said agreement between the parties governing or in the situations described in Article 6.2, the terms and conditions of the Agreement shall not be disclosed to any third party.

6.2   In any event, Microsoft and GI are entitled to submit this Agreement in the infringement proceedings before the Higher Regional Court of Karlsruhe in Germany, file no. 6 U 44/12, 6 U 45/12, 6 U 46/12, 6 U 47/12, in proceedings before a U.S. court, and in proceedings before any antitrust authority.

7.   TERM AND TERMINATION.

7.1   Term. Unless otherwise terminated as expressly provided in this Agreement, this Agreement shall remain continuously in effect until the last of the Licensed GI Patents or Licensed Microsoft Patents expires or is no longer enforceable.

7.2   Termination. This Agreement, including future payment obligations under Art. 3 of this Agreement, shall terminate immediately if, by final decision of a court of law, the Licensed GI Patents or the Licensed Microsoft Patents are held invalid or unenforceable. If such a decision applies only to one of the Licensed GI Patents or Licensed Microsoft Patents, the Agreement shall terminate immediately with respect to that patent and shall remain in effect for the other Licensed GI Patent(s) and Licensed Microsoft Patents not held invalid or unenforceable. GI shall have the right to immediately terminate this Agreement if Microsoft initiates a nullity action against any of

the Licensed OI Patents.

7.3     Refunds. Even if this Agreement is terminated, no refunds of any kind will be due to Microsoft for royalties already due or paid under this Agreement, and Microsoft agrees to pay in accordance with Article 3 any unpaid royalties due or incurred under this Agreement at the time this Agreement is terminated. Even if this Agreement is terminated, no refunds of any kind will be due to OI for royalties already due or paid under this Agreement, and OI agrees to pay in accordance with Article 3 any unpaid royalties due or incurred under this Agreement at the time this Agreement is terminated

8.     **MISCELLANEOUS PROVISIONS.**

8.1     The Agreement is governed by and construed in accordance with German law without regard to its rules of choice of law.

8.2     The Mannheim District Court of Germany shall have exclusive jurisdiction for any and all disputes arising from or in connection with this Agreement.

8.3     In the event of any dispute or differences between the parties in respect of any right, obligation or liability of any party under this Agreement, including any dispute regarding the validity or invalidity of this Agreement or any of its provisions, the parties shall use their best efforts to come to an amicable resolution.

8.4     Should any provision of this Agreement be invalid or unenforceable, the remaining provisions shall remain valid. In place of an invalid or unenforceable provision, a valid provision which comes economically closest to the one intended by both parties is deemed to be agreed upon. The same applies in case a provision has been inadvertently omitted.

8.5     Any changes and modifications to this Agreement require written form. This also applies to this provision.

General Instrument Corporation

By: _____

Date: ) __ )) /'`

Microsoft Corporation

By: _____

Date: 8/31/12

SPL 1737775v 1



**Freshfields Bruckhaus Deringer**

Annex 2

Assignment

General Instrument Corp./
Motorola Mobility LLC

General Instrument Corp.
c/o Quinn Emanuel Urquhart & Sullivan LLP
Erzbergerstr. 5
68165 Mannheim

MUNICH
Prannerstrasse 10
80333 Munich
T+ 49 89 20 70 20
Direct T+ 49 89 20 70 23 61
F+ 49 89 20 70 21 00
Direct F+ 49 89 20 70 25 83 91
E  charlotte.barth@freshfields.com
W  freshfieldsbruckhausderinger.com

DOC ID  DAC10408694/7
OUR REF  PC 109096-0588
YOUR REF

23 December 2011

Dear Sirs,

1.      We herewith submit, on behalf of and as instructed by our client, Microsoft Corp., an offer to conclude a licensing agreement for two patents which you have declared to be standard-essential under the H.264/AVC standard, namely the German part of the patent EP 0 538 667 B1 (that is, DE 692 32 063 T2), entitled "Adaptive motion compensation using a plurality of motion compensators" and the German part of EP 0 615 384 B1 (that is, DE 694 25 919 T2), entitled "Adaptive compression of digital video data" (the "Licensed Patents").

This offer is triggered by and based on the so-called "Orange Book Standard" decision of the Federal Court of Justice (*Bundesgerichtshof, BGH*) of 6 May 2009 (docket no. KZR 39/06) and the practice by the District Court of Mannheim (*Landgericht Mannheim*), as set forth in particular in the decisions of 27 May 2011 (docket no. 7 O 65/10) and of 9 December 2011 (docket no. 7 O 122/11).

Please find enclosed the License Agreement as proposed by Microsoft Corp. The License Agreement comprises a nonexclusive, nontransferable right of Microsoft Corp. and its subsidiaries ("Microsoft Corp.") to make, have made, sell or offer for sale in Germany a product containing an AVC decoder or AVC codec, in addition to rights for the importation into, use and possession of such products in Germany. According to the License Agreement, royalties are computed on a per unit basis for units in Germany, where a "unit" is a computing device containing an AVC decoder or AVC codec provided by Microsoft Corp. (e.g., an Xbox 360 console, a PC/laptop, a smartphone).

Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales at 65 Fleet Street, London EC4Y 1HS (number OC334789). It is authorised and regulated by the Solicitors Regulation Authority. For regulatory information please refer to www.freshfields.com/support/legalnotice.

Abu Dhabi  Amsterdam  Bahrain  Barcelona  Beijing  Berlin  Brussels  Cologne  Dubai  Düsseldorf  Frankfurt am Main  Hamburg  Hanoi  Ho Chi Minh City  Hong Kong  London  Madrid  Milan  Moscow  Munich  New York  Paris  Rome  Shanghai  Tokyo  Vienna  Washington

Ⓜ Freshfields Bruckhaus Deringer

The offer includes Microsoft Corp's duty to pay a royalty fee of 0.02 EUR for each unit for the first 10 million units per year and a royalty fee of 0.01 EUR for each unit thereafter per year. This is a royalty basis which has to be considered more than fair and reasonable in keeping with fair, reasonable and non-discriminatory ("FRAND") terms. In conformity with the *Orange Book Standard* decision of the Federal Court of Justice (*Bundesgerichtshof*) of 6 May 2009, this obligation not only applies to all future use, but also all past use of the Licensed Patents. In addition, as a proxy for royalty fees for devices in Germany, Microsoft Corp. will pay such fees for retail copies of Microsoft products (such as Windows 7) on disk media located in Germany, where such products contain AVC decoder or codec but have not been installed, because installation of such Microsoft products would yield computing devices that qualify as "units."

If you accept the License Offer by 10 January 2012, Microsoft Corp. will account for past use of the Licensed Patents and make payments to you, including interest, according to the terms of the License Agreement. If you do not accept the offer until this point in time, Microsoft Corp. will, after accounting, deposit all payments, including payments for future use of the Licensed Patents as specified in the License Offer with the relevant court in Mannheim (Hinterlegungsstelle *Amtsgericht Mannheim*) until you accept the offer or until another license agreement has been concluded between our client and you.

As required by the recent case law of the District Court in Mannheim (esp. decision of 9 December 2011, docket no. 7 O 122/11) Microsoft Corp. expressly acknowledges *("erkennt dem Grunde nach an")* the duty to cover past damages for any past use of the Licensed Patents. The damages are to be determined in accordance with the respective principles set forth under German law.

By these payments and the acknowledgment of a duty to pay damages in principle, Microsoft Corp. understands that it will be released from any and all claims under the Licensed Patents regarding the past use of the H.264/AVC technology in products on the German market, except for the duty to pay damages.

Microsoft Corp. furthermore obliges to withdraw the nullity actions initiated against the Licensed Patents before the German Federal Patent Court (docket numbers 5 Ni 62/11 and 5

(W) Freshfields Bruckhaus Deringer

3/4

Ni 63/11) within 10 days after the execution of the License Agreement by General Instrument Corp.

2.      Alternatively, Microsoft Corp. offers to enter into a cross-license agreement with General Instrument Corp.'s parent company, Motorola Mobility Inc., for the entire portfolio of H.264 standard-essential patents held by Microsoft Corp. and her subsidiaries, on the one hand, and Motorola Mobility Inc. and her subsidiaries, on the other hand. Such an offer is explicitly made to Motorola Mobility Inc. and its subsidiaries only, and does not cover the right to use Microsoft Corp.'s H.264-essential patents for a new parent company of Motorola Mobility Inc. or for another company which may hold the majority of stocks in Motorola Mobility Inc. now or in future.

3.      The offer made under 1.) is made as part of the defence of Microsoft Corp. and its subsidiaries in the current proceedings regarding the licensed patents before the Higher Regional Court of Mannheim (docket numbers 2 O 240/11, 2 O 376/11, 2 O 373/11, 2 O 387/11). It remains open until it has been accepted by you or, if you do not accept the offer, until a final court ruling has been rendered that the H.264/AVC-compatible products of Microsoft Corp. do not infringe the two patents asserted or until the Licensed Patents have been declared invalid by a final court ruling or until your complaints are dismissed by final court ruling for other reasons. For the sake of clarity, we want to stress that the offer is, however, not made upon the condition that the court decides that the two licensed patents are infringed by the Microsoft Corp.'s products.

4.      While Microsoft Corp. is of the firm opinion that the offer made under 1.) fully complies with the FRAND standards set forth by the Federal Court of Justice in its decision rendered on 6 May 2009, Microsoft Corp. is prepared to discuss any terms of the license offer as attached, should you consider any of the terms to be inconsistent with FRAND standards. This includes extending the license to units sold in other jurisdictions in which the Licensed Patents, or one of them, are in force.

 Freshfields Bruckhaus Deringer

5.      The terms and conditions of this offer, including the License Agreement and any future documents, are confidential between the parties and may not be used in other litigation or disclosed to companies unrelated to the litigation to which this offer relates. The factual statements made therein may not be used in any further litigation.

Yours sincerely

*Ch. Barth*

Dr. Charlotte Barth

Attachments:
- License Agreement
- German reading translation of this letter

DAC10408694/7

**Anlage QE 9**

i.Sa. Motorola / Microsoft
Klage vom 26.4.2013
LG Mannheim, Az. neu
Quinn Emanuel LLP

## ACCOUNTING SUPPLEMENT FOR ORANGE BOOK OFFER

Microsoft hereby supplements its accounting for royalty payments according to the terms of the proposed AVC Patent License that is part of the Orange Book offer dated 21 December 2011, amended August 31, 2012. At this time, Microsoft supplements its royalty payments in the following ways.

First, Microsoft accounts for new units in the third and fourth quarters of fiscal year 2012 ("FY12"), covering the period from January 2012 to June 2012. Thus, as required by the Orange Book decision, Microsoft is updating the accounting statements and royalty payments for its Orange Book offer on an ongoing basis.

Second, for three categories of products, Microsoft accounts for additional units with AVC decoders that should have been allocated to earlier periods. In the process of accounting for new units in the third and fourth quarters of FY12, Microsoft identified these additional units with AVC decoders for earlier periods.

Finally, Microsoft provides an updated summary of royalty payments and interest.

### I.    New Units in the Third and Fourth Quarters of FY12

Previously, Microsoft used data available in March 2012 to provide an accounting of units through the second quarter of FY12 (that is, through December 2011). This accounting supplement accounts for new units in the third and fourth quarters of FY12 (that is, January 2012 – June 2012), see Table 1.

For these new units, Microsoft has separated units in the period up to May 22, 2012, from units in the period after May 22, 2012. This follows the different ways that royalty payments are calculated according to the Orange Book offer in the amendment dated August 31, 2012, for the periods before and after the completion of Google's acquisition of Motorola Mobility, Inc.

Previously, Microsoft accounted for installations of Silverlight (and Moonlight) on devices in Germany that did not otherwise have an AVC decoder as follows. Microsoft started with the "installation base" of personal computers in Germany (including devices with any versions of Window, Linux or Mac operating system), then reduced this installation base by the number of Windows Vista devices and Windows 7 devices already counted as having an AVC

decoder. For the remaining devices, Microsoft applied a market penetration estimate for Silverlight to determine a unit count for devices for which installation of Silverlight (or Moonlight) added an AVC decoder. For the third and fourth quarters of FY12, Microsoft has updated the installation base for personal computers in Germany to account for the increase in Apple devices, then applied current market penetration estimates for Silverlight to determine a unit count for devices for which installation of Silverlight (or Moonlight) added an AVC decoder in the third and fourth quarters of FY12.

## II.    Additional Units for Earlier Periods

In this accounting supplement, Microsoft also accounts for additional units with AVC decoders that should have been allocated to earlier periods.

### Additional OEM Assembling Systems with Windows in Germany

Microsoft has accounted for distribution of Windows through various channels. For the original equipment manufacturer ("OEM") channel, Microsoft has accounted for systems with Windows 7 installed, where such systems were assembled by OEMs in Germany or shipped to Germany. Microsoft has accounted for such systems in the unit counts for Windows Vista / Windows 7.

Between March 2012 and July 2012, Microsoft switched data sources for Windows 7 license count data for OEMs. As a result of this switch, Microsoft has identified one additional OEM that has been assembling systems in Germany since FY11 for export outside of Germany. For this OEM, about 750,000 units have been added for Windows 7 in Germany for FY11 and the first and second quarters of FY12. These additions are reflected in Table 1.

### Additional Devices with Skype

Microsoft's acquisition of Skype was completed in October 2011. Various versions of Skype products include an AVC decoder or are installed on devices that have an AVC decoder. Microsoft has provided an accounting for Skype products with AVC decoders.

For this accounting supplement, Microsoft re-queried data sources for Skype products. For one category of Skype product, as a result of the re-query, Microsoft identified a significant number of additional units for FY08 through FY12. These additions are reflected in Table 1. As in the previous accounting process, Microsoft still makes several simplifying assumptions that favor General Instrument for purposes of this Orange Book offer. For example, Microsoft has assumed the AVC decoders in Skype products are actually enabled / activated, even though the AVC decoders are inoperable by default and only activated as needed. Microsoft has also counted Skype products even when those Skype products are installed on devices already counted for the Orange Book offer (e.g., a device running Windows 7 or Vista). Also, unit counts for periods prior to October 2011 pre-date Microsoft's acquisition of Skype.

Additional Devices with Visual Studio

Microsoft has provided an accounting for versions of Visual Studio with AVC decoders. For professional versions of Visual Studio with AVC decoders, Microsoft has used the MS Sales tool to query for German license counts. For other versions of Visual Studio (which are not tracked in MS Sales), Microsoft has estimated the German license count for those versions of Visual Studio based upon data that indicates number of installations.

For this accounting supplement, Microsoft repeated the query and estimation process for relevant versions of Visual Studio. Between March 2012 and July 2012, there were refinements in the structure of the query to provide a more accurate estimate of relevant versions of Visual Studio. As a result of the changes, Microsoft identified about 5,000 additional units for the relevant versions of Visual Studio in FY10, FY11 and the first and second quarters of FY12. These additions are reflected in Table 1.

## III.    Royalty and Interest Calculations

Table 1 shows unit count totals when units are allocated to the fiscal years in which licenses were tracked by Microsoft for the respective products. The row for "other" devices indicates unit counts for the relevant versions of Silverlight, Zune for Windows, Expression, Visual Studio, Windows Home Server and Windows Storage Server.

Table 2 shows unit count totals with adjustments for products for which an update added an AVC decoder one or more years after the product was introduced, as explained in the previous accounting summary. For Windows Vista, Xbox 360 consoles and Windows Embedded (CE 6), based on information about when the update (adding an AVC decoder) was first available for the respective products, Microsoft is counting units for these products in the fiscal year that the update became available.

Table 3 summarizes royalty payments and interest through June 2012. For units up to May 22, 2012, Microsoft calculates royalty payments based on unit count data and per unit rates, and further accounts for interest, as explained in the previous accounting summaries. This yields a payment amount of € 2,031,875 for units up to May 22, 2012.

For units after May 22, 2012, Microsoft calculates royalty payments based on payments of € 2100 per Licensed GI Patent per year, pro-rated according to the length of the period from May 23 to June 30. For the two Licensed GI Patents, this yields a royalty payment of € 4,200 x ( 39 days / 366 days), or € 448.

The current amount of royalty payment is € 2,031,875 + € 448 = € 2,032,323. The amount deposited with this supplement (€ 413,528) is the difference between the current amount (€ 2,032,323) and the previously deposited amount (€ 1,618,795):

$$€ 2,032,323 - € 1,618,795 = € 413,528$$

*Attorney-client Privileged, Attorney Work Product*

| Units | FY06 Count | FY07 Count | FY08 Count | FY09 Count | FY10 Count | FY11 Count | FY12 Count 7/1 – 12/31 | FY12 Count 1/1 – 5/22 | Grand Total | FY12 Count 5/23-6/30 |
|---|---|---|---|---|---|---|---|---|---|---|
| Devices with Windows Vista or Windows 7 | | 3,391,869 | 8,167,004 | 10,355,082 | 15,583,883 | 17,967,281 | 7,225,947 | 9,466,503 | 72,157,569 | 2,387,407 |
| Xbox 360 consoles | 835,952 | 987,910 | 1,224,235 | 2,443,352 | 1,917,011 | 2,566,882 | 1,889,782 | 442,123 | 12,307,247 | 72,882 |
| Windows Phone 7 devices | | | | | | 332,709 | 127,871 | 175,447 | 636,027 | 42,976 |
| Devices with Skype | | | 25,892 | 133,439 | 6,139,735 | 13,303,632 | 7,690,960 | 6,532,725 | 33,826,383 | 1,958,132 |
| Devices with Windows Embedded | | 500 | 1,014,099 | 764,226 | 1,408,537 | 981,060 | 599,395 | 182,500 | 4,950,317 | 47,618 |
| Other devices | | | 998 | 1,670,222 | 4,996,199 | 5,387,285 | 2,379,640 | 342,514 | 14,776,858 | 103,059 |
| Grand Total | 835,952 | 4,380,279 | 10,432,228 | 15,366,321 | 30,045,365 | 40,538,849 | 19,913,595 | 17,141,812 | 138,654,401 | 4,612,074 |

Table 1.  Summary of Unit Counts by Fiscal Year for Licenses Tracked, Through June 2012

| Units | FY06 Count | FY07 Count | FY08 Count | FY09 Count | FY10 Count | FY11 Count | FY12 Count 7/1 – 12/31 | FY12 Count 1/1 – 5/22 | Grand Total | FY12 Count 5/23-6/30 |
|---|---|---|---|---|---|---|---|---|---|---|
| Devices with Windows Vista or Windows 7 | | | | | 15,583,883 | 39,881,236 | 7,225,947 | 9,466,503 | 72,157,569 | 2,387,407 |
| Xbox 360 consoles | | 1,823,862 | 1,224,235 | 2,443,352 | 1,917,011 | 2,566,882 | 1,889,782 | 442,123 | 12,307,247 | 72,882 |
| Windows Phone 7 devices | | | | | | 332,709 | 127,871 | 175,447 | 636,027 | 42,976 |
| Devices with Skype | | | 25,892 | 133,439 | 6,139,735 | 13,303,632 | 7,690,960 | 6,532,725 | 33,826,383 | 1,958,132 |
| Devices with Windows Embedded | | | | | 3,187,362 | 981,060 | 599,395 | 182,500 | 4,950,317 | 47,618 |
| Other devices | | | 998 | 1,670,222 | 4,996,199 | 5,387,285 | 2,379,640 | 342,514 | 14,776,858 | 103,059 |
| Grand Total | | 1,823,862 | 1,251,125 | 4,247,013 | 31,824,190 | 62,152,804 | 19,913,595 | 17,141,812 | 138,654,401 | 4,612,074 |

Table 2.  Summary of Unit Counts by Fiscal Year Recognizing Timing of Updates, Through June 2012

Page 5 of 6

*Attorney-client Privileged, Attorney Work Product*

| | FY06 | FY07 | FY08 | FY09 | FY10 | FY11 | FY12 7/1 – 12/31 | FY12 1/1 – 5/22 | Grand Total | FY12 5/23 - 6/30 |
|---|---|---|---|---|---|---|---|---|---|---|
| First 10 million units (€ 0.02 per unit) | | 36,477 | 25,023 | 84,940 | 200,000 | 200,000 | 200,000 | n/a | 746,440 | n/a |
| Units > 10 million (€ 0.01 per unit) | | n/a | n/a | n/a | 218,242 | 524,528 | 99,136 | 171,418 | 1,013,324 | n/a |
| Total annual royalty payment | | € 36,477 | € 25,023 | € 84,940 | € 418,242 | € 724,528 | € 299,136 | € 171,418 | € 1,759,764 | € 448 |
| Interest rate | | 10.00% | 10.00% | 10.00% | 8.12% | 8.12% | 8.37% | 8.37% | | 8.37% |
| Total interest | | € 1,719 | € 5,179 | € 11,165 | € 29,788 | € 79,213 | € 65,579 | € 79,467 | € 272,111 | 0 |
| End of year carryover balance (royalty + interest) | | € 38,196 | € 68,398 | € 164,504 | € 612,534 | € 1,416,275 | € 1,780,990 | € 2,031,875 | € 2,031,875 | € 448 |

Table 3.  Summary of Royalty Payments and Interest, Through June 2012

*Attorney–client Privileged, Attorney Work Product*