# EXHIBIT 17

1

```
                UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF WASHINGTON AT SEATTLE
   _____
   MICROSOFT CORPORATION,        )
                                 )
                 Plaintiff,      ) 10-01823-JLR
                                 )
   v.                            ) SEATTLE, WASHINGTON
                                 )
   MOTOROLA INC., et al,         ) April 11, 2012
                                 )
                 Defendants.     ) Argument on TRO
                                 )
   _____

              VERBATIM REPORT OF PROCEEDINGS
           BEFORE THE HONORABLE JAMES L. ROBART
                UNITED STATES DISTRICT JUDGE
   _____


   APPEARANCES:


    For the Plaintiff:      Arthur Harrigan, Christopher
                            Wion, David Pritikin and Andy
                            Culbert



    For the Defendants:     Jesse Jenner, Ralph Palumbo, Mark
                            Rowland, Philip McCune and Neill
                            Taylor
```

Debbie Zurn - RPR, CRR - Federal Court Reporter - 700 Stewart Street - Suite 17205 - Seattle WA  98101

1  or even deciding if you thought it was appropriate and that
2  Germany was RAND, that you want to carve Germany out and say,
3  we know what the rate is for Germany, I think the rate should
4  be different worldwide, and I'm going to set a different rate
5  if it comes down to that.
6     The fact that there's going to be a worldwide license
7  doesn't mean that the rate is the same in every country.
8  Motorola has licenses with rates that are different in
9  different countries.  The number of H.264 patents may be
10 different in different countries.  It doesn't necessarily
11 follow, if you go down that particular possibility, that
12 you're going to decide that the rate in every country is
13 supposed to be the same.  That's not a given.
14    So, whatever happens in Germany, it doesn't preclude Your
15 Honor from coming up with a number of different results that
16 might embrace the German decision, or may say, "I'm going to
17 ignore the German decision."
18         THE COURT:  Is any of that argument in your briefing?
19         MR. JENNER:  I'm sorry, Your Honor?
20         THE COURT:  Is any of that argument in your briefing?
21         MR. JENNER:  I don't think so, Your Honor.  I guess
22 it flows from the Orange Book remedy.  It flows from the
23 Orange Book remedy.
24         THE COURT:  It was news to me.  I've never heard that
25 particular take on it before.

1          MR. JENNER:  The way that it's in there collapses
2   down to this.  It collapses down to the fact that whatever
3   Microsoft is ordered to pay, pursuant to the Orange Book in
4   Germany, as a consequence of the infringement in Germany,
5   will result in a payment -- all this business about job
6   losses, shutting down plants, none of that will ever happen.
7        And to the extent Your Honor finds something different
8   from Germany that you don't agree with, Your Honor will have
9   the opportunity, should you deem it appropriate, simply to
10  tell Motorola to pay back the difference in Germany.  That's
11  not an encroachment on your jurisdiction.  I guess that goes
12  to the comity part as well.  That's not an encroachment on
13  your jurisdiction.  You will simply find that the court
14  didn't determine a RAND rate in Germany.  You did determine a
15  RAND rate in Germany, to the extent that Motorola ought to
16  pay some German money back to Microsoft.  Microsoft has got a
17  damages claim for that money, and that's a damages claim,
18  it's not irreparable harm.
19          THE COURT:  But I think what Mr. Harrigan was trying
20  to tell me was that all they want is an injunctive relief
21  against an injunction prohibiting the sale of the product.
22  And that if we set, as I suspect we will in September, the
23  RAND rate, and Germany decides the RAND rate in Germany is
24  higher or lower, money may flow one of two directions.  You
25  may be getting more money.  You may be having to pay

1  Microsoft money.
2     MR. JENNER:  But, Your Honor, why would that be the
3  kind of harm, being a damages claim, that would move into
4  comity, justify a U.S. court in stepping in and interfering
5  with the implementation of German laws by a German court in a
6  patent infringement case?
7     THE COURT:  Well, first off I'm not sure irreparable
8  injury is even required in this instance.  I mean, that's an
9  open question under the interplay of *Gallo* and the *Winter*
10 standards.
11    MR. JENNER:  I think it's murky, Your Honor, because
12 what *Gallo* says is that it's -- it is substituting the
13 three-part anti-suit injunction factors for the necessity to
14 prove a likelihood of success on the merits.  It substitutes
15 those two factors.  It doesn't say definitively whether it's
16 removing the others or not.
17    THE COURT:  Right.
18    MR. JENNER:  And as I think counsel alluded to, the
19 issue of whether or not there's irreparable harm could come
20 back under the second anti-injunction factor under the rubric
21 of other equitable considerations.
22    So it's hard to say whether it's there or not, because
23 this again is another issue of first impression.
24    THE COURT:  Well, I'm much taken with one of my
25 learned colleagues here, Judge Davila, in the *Zynga* case.

1    MR. JENNER:  That's why I agree with you.  I think I
2  used the word "murky" myself, Your Honor.  I agree it's not
3  clear, if irreparable harm is required still, either because
4  it carries over from the old test, or because it is subsumed
5  in factor two of the anti-suit injunction factors, then I
6  think we have explained in spades why there won't be any
7  irreparable harm here, unless Microsoft decides to inflict
8  the wound itself of not complying with the Orange Book
9  procedure.
10    If it wants to do away with its parents and then complain
11  that it's an orphan, it can do that.  But the fact of the
12  matter is that it has within its power the total ability to
13  comply with the law in Germany and remove every vestige of
14  irreparable harm that it put in its opening papers.
15    And as far as *Zynga* is concerned, Your Honor -- just
16  staying with that for a second -- *Zynga* is a case where while
17  they granted a TRO at the outset, they came back a couple of
18  months later and tossed out the TRO, in substantial part
19  because, like this case, there were foreign proceedings on
20  foreign copyright law, and the court concluded that it
21  wouldn't be appropriate for the U.S. court to interfere with
22  foreign copyright proceedings.  And that's really what
23  they're asking you to do here.
24    So that all goes to the differences in the nature of the
25  proceedings.  The proceedings are really different.  When you

1  look at *Applied Medical*'s references to functionally
2  disposing of all the issues of the case, the Seattle case
3  can't do that.  The Seattle case -- the way that Microsoft is
4  serving it up is, ignore the fact that it's a German patent
5  infringement proceeding, with German remedies that are quite
6  well elucidated, and just focus on the monetary compensation
7  aspects of both of them, and consider them to be the same.
8  They don't have to be the same, and Your Honor has many ways
9  down the road in which you might deal with that, including
10 either embracing what they do, or rejecting it as not being
11 RAND.
12     It doesn't usurp your ability to go ahead in the fall,
13 decide what the RAND rate is, decide where it's going to
14 apply, decide whether it's going to be different in different
15 countries, decide whether you like what Germany came up with
16 or not.  And if you don't, tell Motorola, you've got a
17 remittitur here, as part of my ruling you're going to have to
18 pay some money back.
19     That doesn't interfere enough with what Your Honor will be
20 looking at to justify invading the province of the German
21 court.
22          THE COURT:  Does that mean that Motorola is prepared
23 to post a $300 million bond?
24          THE COURT:  I don't think it works that way.  Well, I
25 shouldn't say that.  If Motorola decides --

1       THE COURT:  You just told me that you may be paying
2  money back.  And I'm just asking you what security you're
3  going to post for Microsoft.  And now I hear you're running
4  away from that argument.
5       MR. JENNER:  They have to post security in Germany in
6  order to enforce the injunction.  So there will be security
7  imposed.  There will probably be a pretty substantial bond
8  put up required by the German court, if Motorola decides to
9  go ahead and implement the injunction.  So there is going to
10 be money put up by Motorola, quite a bit.  That's going to
11 happen.  So those are a lot of the issues on the first prong
12 of this.
13      As far as the second prong is concerned, this is the one
14 that has to do with equitable factors that would justify
15 intervening in the foreign proceedings.  In *Gallo*, the court
16 only looked at the first one from the Fifth Circuit, "Will
17 the foreign litigation frustrate a policy of the domestic
18 forum."  And the reason the court in *Gallo* only looked at
19 that one of the four is because that's the one that involved
20 the forum selection clause.  And no matter what Microsoft
21 wants to say, *Gallo* is all about a forum selection clause.
22      In fact, the case ends -- something that's not highlighted
23 -- on page 7, in Roman III, the last two paragraphs, the
24 court says, "Andina has involved Gallo in messy, protracted,
25 and potentially fraudulent litigation in Ecuador, in direct

1  this.  That's part of the problem.
2       THE COURT:  Well, I know your extensive discussions
3  are going to be ten days for both of you.  So I'm not sure
4  how extensive that's going to be.
5       MR. JENNER:  But my point is, Your Honor, there isn't
6  any record that we can give you on -- when you get to the
7  point of actually considering all the relevant circumstances
8  and deciding what the terms of a license here ought to be,
9  you're writing on a clean slate, and neither we nor Microsoft
10 can tell you, look at this case, and that case, and some
11 other case, here's how you do it.  It doesn't exists.
12      All I'm saying is whatever you do it doesn't have to be
13 and it won't be inconsistent with what the German court does,
14 if the German court even gets to finality before you do this,
15 which it may not, up on appeal.
16      But, whatever the German court does, if it's your decision
17 to do so, you will have the ability to say, "I don't agree
18 with a piece that the German court did, here's my ruling as
19 to Germany."  And if that means that Microsoft paid too much
20 to get out of the way of a speeding train, then it has the
21 claim to get the money back.  And it gets the money back as
22 an overpayment.
23      The real issue is, is Microsoft going to stand in front of
24 the train, or is it going to get off the track and comply
25 with the law in Germany?  We're talking about complying with

the law in Germany. They're asking you to interfere with that.

Another analogy, Your Honor, just for the sake of analogies is, picture Microsoft on the Autobahn in Germany, lying down in the road in front of speeding cars in Germany, and instead of picking itself up and getting off the road, which it has the ability to do, it gets on the phone and calls for a Washington State Patrolman to come over and stop traffic. That's what they're asking you to do, instead of getting off the road.

They ought to comply with the law in Germany. And down the road, if Your Honor thinks the numbers come out differently, you can fix that. There's no intrusion with a forum selection clause. There is no avoidance of this court with a compulsory counterclaim being filed in Canada, as happened in *Seattle Totems*, which is why, like *Gallo* and *Applied Medical*, they saw a direct intrusion with local jurisdiction. You don't have that here. There isn't any frustration of a policy of this court. This court doesn't have any more unique policy to determine damages than the German court does.

If anything, this is a situation where we're talking about local courts setting damages rates. When Your Honor gets to a RAND rate and you think it's inconsistent with Germany, you can fix it. It doesn't keep you from doing what you're going

to have to do. It's not a good enough reason to intervene with and shut down the ongoing procedures of the German federal court.

THE COURT: Well, counsel, I'm troubled by what you just said for the following reason: I've got two American companies in front of me. I've got an ITU agreement, with no choice of law provision to help me one way or the other.

MR. JENNER: Or choice of forum.

THE COURT: Or choice of forum. I've got an offer letter drafted by your client, sent to Microsoft in the United States, that says both U.S. and foreign patents, and I've got a Microsoft allegation that that offer letter breached the ITU agreement. It seems to me that those facts strongly imply that I have jurisdiction to adjudicate the terms of the ITU agreement on a worldwide basis. And you've just said, quite passionately, "Judge, no, that's just not right."

MR. JENNER: I'm saying Your Honor does have jurisdiction to deal with that. But the fact that the German court reaches a remedy in Germany may be embraced or rejected by Your Honor. It won't keep you from doing what you have to do, like a forum -- the violation of a forum selection clause would do that. It would eradicate local jurisdiction. It would a direct intrusion on the court if there was a forum selection clause, which there isn't. Whatever the German

1 court does, Your Honor has the ability, in going forward, to
2 accept it or reject it.
3 　　　　　THE COURT: All right. Please continue.
4 　　　　　MR. JENNER: The other aspects of the equitable
5 justifications, the one we've been talking about is
6 frustrating a policy of the domestic forum. And for the
7 reasons I've said, I don't think it does. If anything, to
8 some extent if Your Honor acted the way Microsoft wants, you
9 would be actually be frustrating a policy of the German
10 forum. So I think that's something that's fairly taken into
11 account, too, in enabling the German court to run the gamut
12 of its procedures and reach a result that applies in Germany.
13 　　　　　THE COURT: Is that fact any clearer than this
14 ambiguity that you've written large today?
15 　　　　　MR. JENNER: Well, you will be stopping the Orange
16 Book procedures if you grant the injunction. Microsoft says
17 all that does is prevent the award of an injunction. That's
18 not really true, because what the Orange Book procedure does
19 is enable a negotiation. The negotiation is that Microsoft
20 knows it needs to come up to an appropriate level. If it
21 doesn't the German court is going to tell it, it's not
22 acceptable, you're going to be enjoined. Motorola knows it
23 has to come down, because if its offer is found to be
24 unreasonably high, there are issues that face Motorola as
25 well.

# C E R T I F I C A T E

     I, Debbie K. Zurn, RPR, CRR, Court Reporter for the United States District Court in the Western District of Washington at Seattle, do hereby certify that I was present in court during the foregoing matter and reported said proceedings stenographically.

     I further certify that thereafter, I have caused said stenographic notes to be transcribed under my direction and that the foregoing pages are a true and accurate transcription to the best of my ability.

     Dated this 12 day of April, 2012.

     /s/ Debbie Zurn

     Debbie Zurn