The Honorable James L. Robart

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION, a Washington corporation,

Plaintiff,

v.

MOTOROLA, INC., and MOTOROLA MOBILITY LLC, and GENERAL INSTRUMENT CORPORATION,

Defendants.

---

MOTOROLA MOBILITY LLC, and GENERAL INSTRUMENT CORPORATION,

Plaintiffs/Counterclaim Defendant,

v.

MICROSOFT CORPORATION,

Defendant/Counterclaim Plaintiff.

CASE NO. C10-1823-JLR

MOTOROLA'S REPLY IN SUPPORT OF ITS RULE 50(a) MOTIONS FOR JUDGMENT AS A MATTER OF LAW (DKT NOS. 904 AND 905)

MOTOROLA'S REPLY IN SUPPORT OF ITS RULE 50(A) MOTIONS FOR JUDGMENT AS A MATTER OF LAW (DKT NOS. 904 AND 905) CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3

INTRODUCTION ......................................................................................................................1

4

ARGUMENT ..........................................................................................................................1

5

I.   THE RECORD AT THE CLOSE OF MICROSOFT'S CASE IS INSUFFICIENT
6   TO SUPPORT A FINDING THAT MICROSOFT PROVED THE ELEMENTS
7   OF ITS CLAIM..........................................................................................................1

8   A.   No Reasonable Jury Could Conclude That Motorola Breached the Implied
Duty of Good Faith and Fair Dealing. ........................................................ 1

9
10   1.   No Reasonable Jury Could Conclude That the October 2010 Offer
Letters Breached the Implied Duty of Good Faith and Fair Dealing.............1

11   (a)   There is Not Evidence Motorola Lacked Subjective Good
12   Faith. ................................................................................... 1

13   (b)   There is No Evidence Motorola Lacked Objective Good
Faith. ................................................................................... 3

14
15   2.   No Reasonable Jury Could Conclude That Motorola Breached the
Implied Covenant of Good Faith and Fair Dealing by Seeking
16   Injunctive Relief.................................................................................7

17   (a)   Microsoft's New Breach Theories Should be Rejected. ...................7

18   (b)   The Availability of Injunctive Relief Was an Open Issue
When Motorola Filed Its Lawsuits. ................................................7

19   (c)   Microsoft Failed to Prove Motorola's Lack of Good Faith. .............8

20
21   3.   No Reasonable Jury Could Conclude That Motorola Breached the
Duty of Good Faith and Fair Dealing Through Its Negotiations With
22   Marvell. ..........................................................................................10

23   4.   No Reasonable Jury Could Conclude That Motorola's Combined
Actions  Breached the Implied Duty of Good Faith and Fair Dealing. .......10

24   B.   Motorola Did Not Breach The Express Terms of The Contracts. ...........................11

25   C.   No Reasonable Jury Could Conclude That Motorola's Alleged Breach
26   Caused Microsoft Any Damages. ........................................................................11

MOTOROLA'S REPLY IN SUPPORT OF ITS RULE 50(A)    i
MOTIONS FOR JUDGMENT AS A MATTER OF LAW (DKT
NOS. 904 AND 905) -
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

II.   THE RECORD AT THE CLOSE OF EVIDENCE IS INSUFFICIENT TO SUPPORT A FINDING THAT MICROSOFT PROVED THE ELEMENTS OF ITS CLAIM...........................................................................................12

 A.   No Reasonable Jury Could Conclude That Motorola Breached The Duty of Good Faith and Fair Dealing.............................................................12

  1.   The Evidence in Motorola's Case Does Not Confirm That the Offer Letters Were a Breach..............................................................12

  2.   The Evidence in Motorola's Case Does Not Confirm That Filing Lawsuits Seeking Injunctions Was a Breach. ..............................14

 B.   No Reasonable Jury Could Conclude That Motorola's Alleged Breach Caused Microsoft Any Damages. ...............................................15

CONCLUSION ...........................................................................................15

CERTIFICATE OF SERVICE ....................................................................17

MOTOROLA'S REPLY IN SUPPORT OF ITS RULE 50(A) MOTIONS FOR JUDGMENT AS A MATTER OF LAW (DKT NOS. 904 AND 905) - CASE NO. C10-1823-JLR

ii

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

### <u>Cases</u>

4

*Craig v. Pillsbury Non-Qualified Pension Plan*,
    458 F.3d 748 (8th Cir. 2006) ........................................................................6

5

6

*Curtis v. N. Life Ins. Co.*,
    147 Wn. App. 1030 (2008) .........................................................................6

7

*Scribner v. Worldcom, Inc.*,
    249 F.3d 902 (9th Cir. 2001) .....................................................................6

8

9

### <u>Miscellaneous</u>

10

Restatement (Second) of Contracts § 205 cmt. d...............................................10, 11

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTOROLA'S REPLY IN SUPPORT OF ITS RULE 50(A)
MOTIONS FOR JUDGMENT AS A MATTER OF LAW (DKT
NOS. 904 AND 905) -
CASE NO. C10-1823-JLR

iii

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**INTRODUCTION**

No reasonable jury could conclude that Motorola breached the implied duty of good faith and fair dealing.  In opposition to Motorola's Rule 50(a) Motions (Dkt. 916), Microsoft fails to cite evidence that would allow a reasonable jury to hold otherwise.

**ARGUMENT**

**I.    THE RECORD AT THE CLOSE OF MICROSOFT'S CASE IS INSUFFICIENT TO SUPPORT A FINDING THAT MICROSOFT PROVED THE ELEMENTS OF ITS CLAIM.**

A.    No Reasonable Jury Could Conclude That Motorola Breached the Implied Duty of Good Faith and Fair Dealing.[1]

In opposition to Motorola's Rule 50(a) motions, Microsoft ignores the context in which Motorola sent the October 2010 offer letters and filed its November 2010 and July 2011 patent infringement suits.  *See generally* Dkt. 916.  For example, Microsoft concludes (*id.* at 1) that Microsoft having sued Motorola first was not relevant to Motorola's alleged breach.  But, the undisputed evidence is that Microsoft's October 1 lawsuits triggered these events, that after filing suit, Microsoft invited Motorola to put its patents on the table, and that Motorola did just that.  Dailey, 8/27/13 Tr., 179:9-180:1; Gutierrez, 8/28/13 Tr., 140:21-141:9; Exs. 1 and 2.  The reasonableness of Motorola's conduct must be viewed in that context, and in that context, no reasonable jury could conclude that Motorola breached the duty of good faith and fair dealing.

1.    No Reasonable Jury Could Conclude That the October 2010 Offer Letters Breached the Implied Duty of Good Faith and Fair Dealing.

(a)    There is Not Evidence Motorola Lacked Subjective Good Faith.

In response to Motorola's demonstration (Dkt. 904 at 4-6) that Microsoft failed to show

---

[1]    No reasonable jury could conclude that Motorola breached the duty of good faith and fair dealing because Microsoft did not introduce the contracts as evidence.  Dkt. 904 at 1.  Microsoft responds that the jury was aware of the contracts and their terms.  Dkt. 916 at 1-2.  Microsoft cites not a single case in which breach of contract was found without the contracts being submitted to a jury.  Moreover, the jury instructions did not include all of the terms necessary to the jury's analysis.  In particular, the ITU contract states that Motorola's obligation to license its SEPs was conditioned on reciprocity.  Ex. 2838.  This supports Motorola's position that it expected negotiations.  The contract terms inform the contracts' meaning.  No reasonable jury could find breach without them.

Motorola's lack of subjective good faith when sending the October 2010 offer letters, Microsoft does not dispute that Mr. Dailey sent the two letters with the expectation that they were initial offers and he would negotiate with Microsoft thereafter. *See* Dkt. 904 at 4; Dkt. 916 at 13-15. Instead, Microsoft insists that Motorola's offers were *objectively* unreasonable, whatever Mr. Dailey and Motorola's intent or motive might have been. Dkt. 916 at 13-15. For example, Microsoft argues that Motorola knew its 802.11 and H.264 SEP portfolios had never been licensed on a standalone basis. *Id.* at 13. But the undisputed testimony was that Motorola made its standard opening offer based on its long history of licensing its cellular patent portfolio (*see* Dkt. 904 at 4-5), and the fact that Motorola had not yet executed a license agreement for the 802.11 or H.264 patents standing alone cannot indicate lack of good faith.

Similarly, Microsoft points to Motorola's purported "disregard" for the MPEG LA patent pool rates and the 2003 InteCap study. Dkt. 916 at 13-14. As to the pool rates, Mr. Dailey explained why Motorola did not believe they were relevant. Dailey, 8/27/13 Tr., 116:3-20. That Microsoft disagrees with Motorola's conclusion does not mean that Motorola acted with bad intent. As to the InteCap study, Mr. Dailey testified that he was not familiar with it (Dailey, 8/27/13 Tr., 113:4-114:22), and the undisputed evidence was that the October 2010 letters concerned a different list of patents, (Ex. 1). That Mr. Dailey did not offer Microsoft a license at the rate in the InteCap study after learning of it in July 2012 (Dkt. 916 at 14) is irrelevant to Motorola's subjective intent in October 2010.[2]

Microsoft also questions whether Motorola actually expected Microsoft to respond to the October 2010 offer letters. Dkt. 916 at 14. But, the very testimony on which Microsoft relies supports Motorola's argument that when it sent the October 2010 offer letters, it expected a response from Microsoft. Dailey, 8/27/13 Tr., 118:4-7 ("You didn't think that Microsoft would

---

[2]   Microsoft's arguments regarding Motorola's post-October 2010 offers (*see e.g.*, Dkt. 916 at 15) should be disregarded. They are irrelevant to Motorola's subjective intent in October 2010, and Microsoft did not claim that Motorola's offers after October 2010 constituted a breach of contract. *See* Dkt. 918-1; Dkt. 803.

MOTOROLA'S REPLY IN SUPPORT OF ITS RULE 50(A) MOTIONS FOR JUDGMENT AS A MATTER OF LAW (DKT NOS. 904 AND 905) - 2
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1    accept this offer in 20 days, did you, as stated?  A: No.  I expected them to respond.), 185:5-11.[3]

2    Microsoft next questions Motorola's testimony that it had to act quickly when it prepared

3    the October 2010 letters.  Dkt. 916 at 15.  The evidence Microsoft cites, however, merely shows

4    that Motorola engaged in some analysis of the patent portfolios before sending the letters.  *See id.*

5    The undisputed evidence was that the time frame was far too short to permit a full review and

6    valuation of the portfolios akin to the one undertaken by this Court.  Dailey, 8/27/13 Tr. 152:1-11,

7    205:2-17; Gutierrez, 8/29/13 Tr., 18:4-12.

8                        (b)     There is No Evidence Motorola Lacked Objective Good Faith.

9            Microsoft complains that Motorola's Rule 50(a) motions did not enumerate separately each

10   of the objective factors for determining breach of the duty of good faith and fair dealing.  Dkt. 916

11   at 5.  This argument should be rejected.  Motorola did address each of these often overlapping

12   factors in its motion under the heading of objective good faith (Dkt. 904 at 6-9) showing that the

13   undisputed evidence was insufficient to show a violation of industry custom and practice,

14   frustration of the RAND commitment's purpose, commercially unreasonable behavior, or

15   interference with the parties' expectations, and showed that the unilateral discretion factor is

16   legally inapplicable here.   Whether these factors are analyzed separately or together,  no

17   reasonable jury could conclude that Motorola acted with any objective lack of good faith.[4]

18           **Industry Custom and Practice.**  The undisputed evidence is that the industry custom and

19   practice is to *negotiate* patent license agreements.  Dkt. 904 at 7-8.  Microsoft does not dispute this

20   (*see* Dkt. 916 at 6-7) and instead argues that the substance of the proposals in the October 2010

21   letters was not customary.  Dkt. 916 at 6.  Each of Microsoft's arguments, however, is meritless.

22           *First,* Microsoft incorrectly argues that the October 2010 letters were not opening offers

23

24           [3]   Microsoft contends (Dkt. 916 at 14 n. 6) that Mr. Gutierrez's testimony that he rejects opening offers 99% of
     the time is irrelevant to Motorola's subjective intent because there is no evidence that Motorola was aware of
25   Microsoft's licensing practices.  But, Microsoft's licensing practices were consistent with the industry custom and
     practice of *negotiating*.  That industry custom and practice informed Motorola's expectations and intent when sending
26   the October 2010 offer letters.
             [4]   Microsoft admits that in many instances the same evidence informs multiple factors.  Dkt. 916 at 5 n.4.  Thus,
     Microsoft's argument regarding which factors Motorola purportedly addressed is one of form over substance.

MOTOROLA'S REPLY IN SUPPORT OF ITS RULE 50(A)
MOTIONS FOR JUDGMENT AS A MATTER OF LAW (DKT
NOS. 904 AND 905) - 3
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

because they were open for only 20 days.  *Id.*  It cites no evidence supporting this statement that they were not opening offers.  *Id.*  The undisputed evidence is that Mr. Dailey sent the letters with the goal of negotiating to reach patent peace and expected that Microsoft would respond.  Dailey, 8/27/13 Tr.  117:19-24, 185:5-15, 186:1-5, 186:8-16, 186:18-189:24, 190:9-191:24, 193:19-194:18, 200:20-201:6.  Further, Microsoft itself sent offer letters with 20 day limits.  Ex. 7252.

*Second*, Microsoft claims that Mr. Gutierrez's testimony related to ordinary patent negotiations (Dkt. 916 at 6), but this takes the witness's testimony out of context.  Mr. Gutierrez clarified that his testimony that 99% of offers are unreasonable related to non-SEPs.  Gutierrez, 8/29/13 Tr., 60:19-61:8.  He did not otherwise limit his testimony on which Motorola relies.  *Id.*

*Third*, the evidence of industry custom and practice is not inconsistent with Jury Instruction No. 22, as Microsoft contends.  Dkt. 916 at 6.[5]  Although under that instruction, Microsoft did not have "a duty to negotiate with Motorola before Motorola's RAND licensing obligations were triggered," the fact that negotiations after an opening offer are standard industry custom and practice in SEP licensing is highly relevant to whether Motorola complied with the duty of good faith and fair dealing implied in its RAND obligations.  Dkt. 908 (Jury Instruction No. 16).

*Fourth*, Microsoft argues that  the 2.25% royalty term set forth in  the October 2010 letters was not customary in the industry for the end products at issue here (Dkt. 916 at 6) but that argument misses the point;  the undisputed custom in the industry was that parties to a prospective SEP license agreement *negotiate* over terms, including royalty rates.  The undisputed evidence was that Motorola's conduct and expectations conformed with that industry custom and practice (*see* Dkt. 904 at 7-8), as confirmed by the evidence that Marvell engaged in negotiations with Motorola (*see e.g.*, Ochs, 8/28/13 Tr., 100:11-23) even if Motorola's license offer to Marvell was higher than the "customary high ceiling" (Dkt. 916 at 6).

*Fifth*, Microsoft argues that Motorola did not conform to its own custom and practice.

MOTOROLA'S REPLY IN SUPPORT OF ITS RULE 50(A)
MOTIONS FOR JUDGMENT AS A MATTER OF LAW (DKT
NOS. 904 AND 905) - 4
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   Dkt. 916 at 6.  That Motorola was trying to license its 802.11 and H.264 SEPs on a standalone

2   basis for the first time does not mean that its intent to negotiate was inconsistent with industry

3   custom and practice or its own custom and practice.  Microsoft also points to the InteCap study

4   (Dkt. 916 at 7), but there is no evidence that Mr. Dailey was aware of the study at the time,

5   (Dailey, 8/27/13 Tr. 112:18-22), or that it was relevant to Motorola's offers.  *Id.* at 113:4-8; Ochs,

6   8/28/13 Tr. 88:24-89:2; Ex. 1; *see also* Dkt. 917 at 6.  Microsoft similarly points to patent pool

7   rates (Dkt. 916 at 7), but provides no evidence that pools are comparable to the terms of any

8   RAND license that might have been negotiated between the parties.  *See also* Dkt. 917 at 6.

9       **Frustration of Purpose.**  Microsoft argues that the October 2010 offer letters frustrated

10  two purposes of the RAND commitments: avoiding hold-up and preventing royalty stacking.  Dkt.

11  916 at 7-9.  Microsoft ignores the additional purpose of ensuring reasonable returns to SEP-

12  holders as needed to incentivize investment in the best technologies.   Dkt. 908 (Jury Instruction

13  No.  18); Dkt. 335 at 24-25.

14       As to hold up, Microsoft fails to cite any factual evidence that the October 2010 letters led

15  to hold up.  *See* Dkt. 904 at 8-9.  Microsoft's reliance on Dr. Murphy's testimony (Dkt. 916 at 8) is

16  unavailing because he admittedly applied a theoretical approach and did not consider the real

17  world evidence (Murphy, 8/30/13 Tr., 27:18-28:3, 64:23-66:4), and he lacks any technical or

18  patent expertise making him competent to testify one the importance of Motorola's patents to the

19  standards.

20       Microsoft's reliance on testimony regarding Motorola's practice of first offering to license

21  SEPs before seeking injunctions (Dkt. 916 at 8) fails to negate the undisputed evidence that hold

22  up is impossible without a court order (Treadwell, 8/27/13 Tr., 52:3-13) and that Motorola's

23  practice of negotiating first is consistent with industry custom and practice.[6]

24       Microsoft likewise errs in suggesting that "Motorola's royalty-free cross license

25

26

---

[5] Motorola expressly preserves its exceptions to Instruction No. 22, as it does to all the instructions to which it objected at the close of evidence

MOTOROLA'S REPLY IN SUPPORT OF ITS RULE 50(A)
MOTIONS FOR JUDGMENT AS A MATTER OF LAW (DKT
NOS. 904 AND 905) - 5
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   agreement" confirmed a hold up objective because Marvell's 802.11 SEPs were more valuable

2   than Motorola's.  Dkt. 916 at 9.  The evidence is clear that *Marvell*, not Motorola, proposed the

3   royalty free cross license agreement (Ochs, 8/28/13 Tr., 110:4-16), and did so even though

4   Motorola assured Marvell that it did not require Marvell take a license.  *Id.*, 101:9-12.  No

5   reasonable jury could conclude this evidences hold up.

6          As to royalty stacking, Microsoft argues (Dkt. 916 at 9) that Motorola failed to consider

7   stacking implications.  But Microsoft ignores the undisputed evidence that a mere declaration of

8   essentiality does not mean the patent is actually essential.  *See, e.g.*, Gutierrez, 8/29/13 Tr. at

9   24:11-14; Dkt. 673 ¶ 334. ("There is no formal process for determining whether a patent is

10  essential to the 802.11 Standard.").

11          **Unreasonable Exercise of Discretion.**  As Motorola has argued (Dkt. 917 at 10), the

12  "unilateral discretion" factor does not apply here, but rather applies in situations in which one

13  party has unilateral discretion to interpret or set a contract term that is binding and final on all

14  parties without any opportunity for negotiation.  *Cf. Scribner v. Worldcom, Inc.*, 249 F.3d 902,

15  906, 910-11 (9th Cir. 2001) (finding breach of duty of good faith and fair dealing where defendant

16  had discretion to make a unilateral interpretation of contract terms that was "conclusive and

17  binding"); *Craig v. Pillsbury Non-Qualified Pension Plan,* 458 F.3d 748 (8th Cir. 2006); *Curtis v.

18  N. Life Ins. Co.*, 147 Wn. App. 1030 (2008) (unpublished opinion); *see also* Dkt. 917 at 10.  Here,

19  Motorola had no discretion to unilaterally set the royalty rate in a final binding contract, or to

20  impose any RAND license upon Microsoft if Microsoft was unwilling.  Thus, this factor does not

21  apply to the facts in this case.

22          **Commercially Unreasonable.**  The evidence Microsoft cites to argue that Motorola's

23  letters were "commercially unreasonable" overlaps with the evidence it cites with regard to

24  industry custom and practice and frustration of purpose.  *See* Dkt. 916 at 6-7, 9, 10-11.  This

25  evidence does not establish that Motorola breached the implied duty of good faith and fair dealing

26

---

[6]   Microsoft buries in a footnote its response to the 2011 FTC letter (Dkt. 904 at 8), in which it indisputably

MOTOROLA'S REPLY IN SUPPORT OF ITS RULE 50(A)
MOTIONS FOR JUDGMENT AS A MATTER OF LAW (DKT
NOS. 904 AND 905) - 6
CASE NO. C10-1823-JLR

Summit Law Group PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1  for the reasons set forth above.

2  **Reasonable and Justified Expectations**,  Microsoft similarly fails to refute that, given the

3  industry custom and practice to *negotiate* patent license agreements, the parties' reasonable and

4  justified expectations were that the parties would engage in negotiations after Motorola sent its

5  October 2010 opening offers in order to reach a license agreement.  DeVaan, 8/27/13 Tr. at 17:15-

6  19; Dailey, 8/28/13 Tr. at 57:12-17; Ochs, 8/28/13 Tr. at 97:10-12; Gutierrez, 8/28/13 Tr. at

7  120:12-16, 183:10-19; Heiner, 8/30/13 Tr. at 170:13-18; Taylor, 9/3/13 Tr. at 81:20-82:16; Ex.

8  2970 at 12.

9          2.      No Reasonable Jury Could Conclude That Motorola Breached the Implied
                      Covenant of Good Faith and Fair Dealing by Seeking Injunctive Relief.

10  

11            (a)     Microsoft's New Breach Theories Should be Rejected.

12       Microsoft argues that Motorola's failure to drop claims for injunctions is within the scope

13  of Microsoft's breach claims.  Dkt. 916 at 16-17.  It is not.  Microsoft did not disclose this theory

14  in its discovery responses or its portions of the Pretrial Order.  *See* Dkt. 917 at 13-14; Dkt. 918-1;

15  Dkt. 803; *compare* Killough, 9/3/13 Tr. at 11:16-18:10.[7]  That Motorola raised an affirmative

16  defense that Microsoft failed to mitigate damages caused by Motorola seeking an injunction in

17  Germany (Dkt. 916 at 17) in no way relieves Microsoft of its burden to prove the case it pleaded.

18            (b)     The Availability of Injunctive Relief Was an Open Issue When
                      Motorola Filed Its Lawsuits.

19  

20       Microsoft contends that it is irrelevant to Motorola's good faith that, in November 2010

21  and July 2011, the availability of injunctive relief for SEP infringement was an open issue.  Dkt.

22  904 at 12.  Microsoft is incorrect.  Whether there was legal authority that informed Motorola of

23  the availability of injunctive relief in November 2010 and July 2011 is directly relevant to

24  Motorola's subjective good faith, as well as to all the relevant objective factors.

25  

26  

---

informed the FTC that it had not "accused any other company" of hold up.  Dkt. 916 at 8 n.5.

MOTOROLA'S REPLY IN SUPPORT OF ITS RULE 50(A)
MOTIONS FOR JUDGMENT AS A MATTER OF LAW (DKT
NOS. 904 AND 905) - 7
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    Microsoft also fails to refute the overwhelming evidence that, when Motorola filed each of

2    its lawsuits at issue, Microsoft had not stated that it was willing to take a license on RAND terms.

3    *See* Dkt. 904 at 12.  *First*, Microsoft claims that it expressed a willingness to take a license to

4    Motorola's patents in early October 2010.  Dkt. 916 at 17.  That testimony, however, refers to the

5    parties' conversation following Microsoft's October 1, 2010 lawsuits, which was not specific to

6    the 802.11 and H.264 SEP portfolios.  And, the argument ignores the fact that Microsoft filed this

7    lawsuit rather than responding to Motorola's offers.  *Second*, Microsoft cites to its purported

8    request for an accounting.  *Id.*  Microsoft cannot deny, however, that nowhere in its Complaint did

9    it state that it was willing to take a license on RAND terms, as this Court previously found.  Dkt.

10   318 at 16 n. 12.[8]  Further, even if Microsoft asked for an accounting, that does not mean that

11   Microsoft agreed it would pay the rate this Court determined to be RAND.  *Third*, Microsoft states

12   that in September 2011, it committed to taking a license on the RAND terms set by the Court.

13   Dkt. 916 at 17-18.  But, this was *after* Motorola filed the German litigation and therefore has no

14   bearing on whether Microsoft made that commitment before Motorola filed suit.  *Finally*,

15   Microsoft cites to Motorola's failure to drop its claims for injunctive relief after September 2011.

16   *Id.* at 18.  As set forth above, this is an improper new theory of breach and should be disregarded.

17             (c)      Microsoft Failed to Prove Motorola's Lack of Good Faith.

18         As with the October 2010 offer letters, Microsoft  argues that Motorola's motion should be

19   denied because Motorola did not address each of the factors for determining breach of the duty of

20   good faith and fair dealing.  Dkt. 916 at 18.  This argument is incorrect for the reasons set forth

21   above.  Moreover, it was *Microsoft's* burden to prove that Motorola did not act in good faith.

22   Microsoft tried to do so by arguing that Motorola sought injunctive relief to hold up Microsoft,

23   frustrating the purpose of the contracts.  *See e.g.*, Dkt. 916 at 8.  The evidence, however, does not

24

25      [7]   Microsoft suggests that Motorola improperly raised this as a new argument. Dkt. 916 at 16.  This is baseless.
     Motorola had no reason to object to Microsoft introducing evidence beyond the scope of its discovery responses and
26   the Pretrial Order until Microsoft actually did so.  Microsoft did not do so until trial.  *See also* Dkt. 917 at 13-14.
        [8]   Microsoft takes issue with Motorola's comments that Microsoft stated it was willing to take a license
     "recently" before May 2012. Dkt. 916 at 18 n. 8.  These comments are consistent with this Court's findings.  *Id.*

MOTOROLA'S REPLY IN SUPPORT OF ITS RULE 50(A)
MOTIONS FOR JUDGMENT AS A MATTER OF LAW (DKT
NOS. 904 AND 905) - 8
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   establish that Motorola's conduct frustrated the purpose of the contracts.

2        **Frustration of Purpose.**  As set forth in Motorola's motion (Dkt. 904 at 14), seeking an

3   injunction cannot evince hold up because a court must decide whether to issue an injunction.

4   Microsoft buries its response to this point in a footnote.  Dkt. 916 at 19 n.9.  It asserts that threats

5   of injunctions are hold up.  But, Mr. Gutierrez admitted that this is a weak threat.  *See* Gutierrez,

6   8/28/13 Tr., 47:10-20.  The remainder of Microsoft's arguments relate to Motorola's preparation

7   for its November 2010 lawsuits.  Dkt. 916 at 19.  These arguments, however, ignore the fact that

8   Microsoft filed suit on October 1, 2010, expected that Motorola would counter sue, and even

9   suggested that Motorola would have to do so.  Gutierrez, 8/28/13 Tr. at 186:23-187:2, 187:3-6;

10  Dailey, 8/27/13 Tr., 203:19-204:13.   This evidence fails to establish that Motorola filed its

11  countersuits to achieve hold up.

12       **Reasonable and Justified Expectations**.  The undisputed evidence established that the

13  reasonable expectation of the parties negotiating a patent license is that, if they cannot reach an

14  agreement, and the party using the infringing products already has filed a lawsuit, the patent owner

15  will file a lawsuit.  Gutierrez, 8/28/13 Tr. at 186:23-187:2.  Here, Microsoft invited Motorola's

16  lawsuit and expected it, analyzing beforehand the patents on which Motorola might sue.  *Id.* at

17  187:3-6.  Microsoft's reference (Dkt. 916 at 20) to purported FTC scrutiny beginning in June 2012

18  is irrelevant to whether Motorola's earlier conduct was consistent with the parties' reasonable

19  expectations.

20       **Commercially Unreasonable, Custom and Practice, and Unreasonable Exercise of**

21  **Discretion.**   Microsoft lumps its analysis of these three factors together.  Dkt. 916 at 19-20.  Its

22  analysis rests on FTC statements and scrutiny in *2012*.  *Id.*  Again, this is irrelevant to whether

23  Motorola acted with objective good faith in November 2010 and July 2011.

24       **Subjective Intent and Motive.**  Microsoft failed to show that Motorola acted with

25  subjective bad faith as to seeking injunctive relief.  Microsoft argues (Dkt. 916 at 21) that Mr.

26  Dailey admitted that injunctions were unnecessary, but that is incorrect; Mr. Dailey simply  stated

MOTOROLA'S REPLY IN SUPPORT OF ITS RULE 50(A)
MOTIONS FOR JUDGMENT AS A MATTER OF LAW (DKT
NOS. 904 AND 905) - 9
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

that Motorola did not need an injunction where damages were adequate.  Dailey, 8/27/13 Tr., 132:2-16.  This has no bearing, however, on whether Motorola acted with bad intent or motive in adding injunctive relief to its damages claims.  Similarly, contrary to Microsoft's arguments (Dkt. 916 at 21), the undisputed evidence that Motorola filed its lawsuits in response to Microsoft's invitation to put its patents on the table demonstrates that Motorola did not act in subjective bad faith.

3.     No Reasonable Jury Could Conclude That Motorola Breached the  Duty of Good Faith and Fair Dealing Through Its Negotiations With Marvell.

Microsoft claimed that Motorola breached the duty of good faith and fair dealing through its negotiations with Marvell.  *See* Dkt. 908 (Jury Instruction No. 14.)   In its opposition to Motorola's motions, Microsoft does not dispute that it failed to introduce evidence that would allow a reasonable jury to conclude there was a breach.  *See generally* Dkt. 916.  Motorola is entitled to judgment as a matter of law on this point.[9]

4.     No Reasonable Jury Could Conclude That Motorola's Combined Actions Breached the Implied Duty of Good Faith and Fair Dealing.

Microsoft also failed to elicit sufficient evidence to demonstrate that Motorola's course of conduct breached the duty of good faith and fair dealing.  *See* Dkt. 904 at 18-19.  Microsoft complains that Motorola's motion addresses the October 2010 offer letters, seeking injunctions, and negotiations with Marvell, individually.  Dkt. 916 at 3.  But that is because Microsoft claimed these acts individually breached the implied duty of good faith and fair dealing.  Dkt. 908 (Jury Instruction No. 14).  As set forth in Motorola's Rule 50(a) motions (Dkts. 904 and 905) and above, Microsoft did not demonstrate that any of this particularized conduct constitutes a breach.  Nor did Microsoft present evidence that would allow a reasonable jury to conclude that each of these acts in combination "eva[des] the spirit of the bargain" between Motorola and the IEEE and ITU.  *See*

---

[9]  In a footnote (Dkt. 916 at 4 n.1), Microsoft explains that Motorola's negotiations with Marvell are relevant to Motorola's course of conduct and "individual objective factors."  It does not state whether Microsoft continues to

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    Restatement (Second) of Contracts § 205 cmt. d.

2          B.      Motorola Did Not Breach The Express Terms of The Contracts.

3          Microsoft contends that Motorola's motion should be denied because it only addresses

4    breach of the implied duty of good faith and fair dealing, rather than breach of the express contract

5    terms.  Dkt. 916 at 2.  But Microsoft cannot now rely on a "direct breach" theory the Court

6    rejected in holding that this case "presents a question not of direct breach of contract but of breach

7    of the duty of good faith and fair dealing," and that "Microsoft's claim is a claim for breach of the

8    duty of good faith and fair dealing, and the court will treat it as such going forward."  Dkt. 843 at

9    23-24; *see also* Dkt. 908 (Jury Instructions Nos. 14, 16, 19); Dkt. 900 at 4.

10         In any event, no reasonable jury could conclude that the October 2010 offer letters

11   breached the express terms of the contracts.  The Court instructed the jury that the initial offer

12   need not be on RAND terms.  Dkt. 908 (Jury Instruction No. 19).  Thus, that Motorola's 2.25%

13   initial offers were greater than the RAND rates determined by this Court is not evidence that they

14   breached an express contract term.  And, Motorola's proposal in December 2012 (Dkt. 916 at 2) is

15   irrelevant to whether the October 2010 letters breached an express term of the contracts.

16         C.      No Reasonable Jury Could Conclude That Motorola's Alleged Breach Caused
                   Microsoft Any Damages.[10]
17

18         **Relocation Costs.**  Microsoft did not prove that Motorola's actions caused it to relocate its

19   distribution facility.  *See* Dkt. 904 at 23.  The evidence showed that Microsoft's decision to move

20   was made to "significantly scale [its] distribution footprint and capabilities."  *Id.*; Ex. 7136.

21   Although Microsoft asserts that similar expansion in Germany was possible (Dkt. 916 at 22),

22   Microsoft did not present evidence that such expansion was a realistic, cost-effective possibility.

23   Moreover, it is undisputed that Microsoft had cost issues with its vendor in Germany and that it

24

25   assert that Motorola's negotiations with Marvell were, on their own, a breach of the duty of good faith and fair
     dealing.  *Id.*  To the extent that Microsoft maintains that contention, no reasonable jury could reach that conclusion.

26   [10]   Microsoft does not respond substantively to Motorola's legal arguments regarding the availability of damages
     in this case.  Motorola maintains its objections to the availability of damages for Microsoft's claims for the reasons set
     forth in Motorola's motion for summary judgment and Rule 50(a) motions.  Dkt. 733, 904, 905.

MOTOROLA'S REPLY IN SUPPORT OF ITS RULE 50(A)
MOTIONS FOR JUDGMENT AS A MATTER OF LAW (DKT
NOS. 904 AND 905) - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    was aware that Germany was a risky place for a global logistics center.  Dkt. 904 at 23.  Given this

2    evidence, no reasonable jury could find that Motorola's conduct caused Microsoft to relocate the

3    facility.

4           Additionally, Microsoft contends that Motorola waived the argument that Motorola

5    Solutions cannot be liable for German relocation costs.  Dkt. 916 at 23.  Microsoft, however, had

6    the burden of proving the elements of its claims as to each defendant.  It presented no evidence

7    that Motorola Solutions can be held liable for these costs.  It is undisputed that Motorola Solutions

8    does not own the German H.264 patents asserted in the German litigation and is not a party to the

9    German litigation.  Further, Microsoft previously agreed, in a joint submission to the Court, that

10   only General Instrument Corp. was involved in the German action.  Dkt. 408.  And, at Motorola's

11   request and over Microsoft's objection, the Verdict Form identified only Motorola Mobility Inc.

12   and General Instrument Corp. as potentially liable for any damages related to the German

13   relocation.  Dkt. 909 at No. 3.

14          **Attorneys' Fees.**  Microsoft's own actions caused its attorneys fees.  It is undisputed that

15   Microsoft had not incurred any such damages before it filed this lawsuit.  Killough, 9/3/13 Tr.,

16   38:22-25.  Unable to deny that Microsoft expected Motorola to counter sue after Microsoft first

17   sued on October 1, 2010, Microsoft argues that it did not expect Motorola to seek injunctions on

18   *SEPs*.  Dkt. 916 at 22.  No evidence supports this surmise, and in any event,  Microsoft presented

19   no evidence establishing the amount of fees incurred defending against claims of injunctive relief

20   versus other relief.  Killough, 9/3/13 Tr., 38:15-39:8.

21   **II.     THE RECORD AT THE CLOSE OF EVIDENCE IS INSUFFICIENT TO
22           SUPPORT A FINDING THAT MICROSOFT PROVED THE ELEMENTS OF ITS
             CLAIM.**

23          A.     No Reasonable Jury Could Conclude That Motorola Breached The Duty of Good
                   Faith and Fair Dealing.

24                 1.     The Evidence in Motorola's Case Does Not Confirm That the Offer Letters
25                        Were a Breach.

26          As set forth in Motorola's motion at the close of Microsoft's case (Dkt. 904), Microsoft did

MOTOROLA'S REPLY IN SUPPORT OF ITS RULE 50(A)
MOTIONS FOR JUDGMENT AS A MATTER OF LAW (DKT
NOS. 904 AND 905) - 12
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1    not introduce sufficient evidence that the October 2010 letters breached the duty of good faith and

2    fair dealing.  The evidence presented in Motorola's case further supported that there was no

3    breach.  Dkt. 905.  Microsoft's arguments to the contrary are unavailing.

4        *First*, Microsoft argues that Mr. Taylor's testimony that he would not have considered a

5    royalty of 0.1% suggests Motorola acted in bad faith.  Dkt. 916 at 24.  To the contrary, Mr.

6    Taylor's explanation that a rate of 0.1% "wouldn't justify the transaction cost and licensing, much

7    less provide any compensation for [Motorola's] R&D investment" (Taylor, 9/3/13 Tr., 78:2-6),

8    simply explains Motorola's opening offer of a higher rate, which under this Court's instructions

9    (Dkt. 908 (Jury Instruction No. 19)) need not itself have been a RAND rate.  *Second*, Microsoft is

10   incorrect to suggest (Dkt. 916 at 25) that there is any conflict between Messrs. Taylor's and

11   Blasius' testimony that Motorola *typically* made opening offers of 2.25% on its entire cellular

12   portfolio and Dr. Leonard's testimony that Motorola had not previously licensed the portfolios at

13   issue on a standalone basis.

14       *Third*, it is undisputed that Motorola did not have all of the information that the Court

15   considered at the November 2012 trial after extensive discovery, expert evidence and live

16   testimony.  Dkt. 905 at 5; Dkt. 916 at 25.  Nor is there any dispute that Motorola did not have the

17   Court's April 2013 Findings of Fact and Conclusions of Law.  The cited testimony of Dr. Leonard

18   (Dkt. 916 at 25) does not state otherwise.  It merely states that public information about

19   Microsoft's sales numbers may have been available in October 2010 (Leonard, 9/3/13 Tr., 151:12-

20   21), and that Dr. Leonard did not talk to Mr. Luthra, as it was not necessary for him to do.  *Id.* at

21   160:5-19.

22       *Fourth*, Motorola's evidence further supported that Motorola did not frustrate the purposes

23   of the contracts.  Microsoft's arguments on this issue (Dkt. 916 at 25-26) are similar to the

24   arguments it makes with respect to the evidence presented in its case and are unavailing for the

25   reasons discussed above in Part I.  As to Dr. Leonard's testimony, Microsoft argues that

26   Motorola's policy was to make a license offer before suing on its SEPs.  Dkt. 916 at 26.  But that

MOTOROLA'S REPLY IN SUPPORT OF ITS RULE 50(A)
MOTIONS FOR JUDGMENT AS A MATTER OF LAW (DKT
NOS. 904 AND 905) - 13
CASE NO. C10-1823-JLR

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  does not mean that Motorola offered to license its patents for the purpose of filing a lawsuit.

2  *Fifth*, Mr. Holleman's testimony supports the conclusion that Microsoft failed to act in

3  accordance with the reasonable and justified expectations of the parties.  Dkt. 905 at 9.  His

4  testimony is not cumulative of Jury Instruction No. 20, as Microsoft contends.  Dkt. 916 at 26.

5  Mr. Holleman's testimony provides greater detail about the expectations of the contracting parties

6  (Motorola and the ITU and IEEE).  Moreover, he did not admit that Motorola was obligated to

7  license its 802.11 at "nominal competitive costs."  *Id.*  He explained that the 1994 IEEE

8  Operations Manual also requires that the royalty be "reasonable."  Holleman, 9/3/13 Tr., 97:6-13.

9           2.    The Evidence in Motorola's Case Does Not Confirm That Filing Lawsuits
10                Seeking Injunctions Was a Breach.

11          Contrary to Microsoft's arguments (Dkt. 916 at 26-27), Dr. Leonard's testimony does not

12  support a finding that Motorola did anything improper with respect to filing lawsuits and seeking

13  injunctive relief.  His testimony established that there was no real threat to Microsoft of an

14  injunction if monetary damages were available, and they would likely be available in the context

15  of a RAND commitment.  Leonard, 9/3/13 Tr., 134:12-135:12.  Thus, in this context, Microsoft's

16  worries about the consequences of an injunction, at least in the United States, were fabricated.

17  Motorola included in its prayers for relief in its patent infringement suits requests for an injunction

18  because that is the common practice.  Dailey, 8/27/13 Tr., 132:2-7; Dailey, 8/28/13 Tr., 26:9-16;

19  Leonard, 9/3/13 Tr., 132:15-21.  Further, that Dr. Leonard did not ask Mr. Dailey why Motorola

20  did not drop its lawsuits seeking injunctive relief after Microsoft confirmed it would take a license

21  on the RAND terms set by the Court is irrelevant because that conduct was beyond the scope of

22  Microsoft's disclosed breach theories.  Dkt. 916 at 27; Dkt. 918-1; Dkt. 803.[11]

---

[11]  The evidence Microsoft elicited regarding RIM's litigation allegations should be disregarded.  8/30/13 Tr., 120:5-11.  Further, contrary to Microsoft's claim, the jury did not hear "undisputed" evidence that RIM would not have agreed to pay Motorola the royalty in the agreement had it not been for the broader agreement that allowed RIM to avoid an exclusion order.  Dkt. 916 at 27.  The jury heard this Court's finding of fact that "no evidence exists" tending to prove that RIM would have agreed to license the 802.11 or H.264 patents alone.  Dailey, 8/28/13 Tr., 23:4-8.

MOTOROLA'S REPLY IN SUPPORT OF ITS RULE 50(A) MOTIONS FOR JUDGMENT AS A MATTER OF LAW (DKT NOS. 904 AND 905) - 14
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

2

  B.  <u>No Reasonable Jury Could Conclude That Motorola's Alleged Breach Caused Microsoft Any Damages.</u>

3  **Relocation Costs.** Motorola's renewed Rule 50(a) motion pointed to additional evidence

4 demonstrating that Motorola's actions did not cause Microsoft to relocate its distribution center.

5 Dkt. 905 at 22-23. Microsoft's response (Dkt. 916 at 28) is essentially that there was enough

6 evidence in its favor. But, it is undisputed that the Netherlands facility was an upgrade, and that

7 Microsoft had reasons to move its distribution center out of Germany to avoid future disruption to

8 its business there. Moreover, the undisputed German law evidence was that Microsoft had an

9 option within its own unilateral discretion to avoid an injunction under Orange Book procedure.

10 Haedicke, 8/30/13 Tr., 193:7-14, 196:8-13, 214:5-8. In the face of this evidence, no reasonable

11 jury could conclude that Motorola's conduct caused Microsoft to relocate from Germany.

12  **Failure to Mitigate.** Microsoft argues  (Dkt. 916 at 29-30) that Motorola failed to carry

13 its burden on mitigation because it did not identify with specificity the damages Microsoft could

14 have avoided. This argument is unavailing. Had Microsoft promptly moved the Court for a

15 preliminary injunction, rather than waiting eight months to do so, there would have been no need

16 to move the German distribution center. Thus, had Microsoft acted reasonably, it could have

17 avoided *all* of the costs associated with that move. Similarly, Professor Haedicke testified that if

18 Microsoft chose the "Road B" option in the *Orange Book* procedure, Microsoft could have

19 avoided an injunction. Haedicke, 8/30/13 Tr. at 199:25-200:7; 203:16-204:1. Thus, Microsoft

20 could have avoided *all* of the costs associated with the move. The only uncertainty to which

21 Microsoft points (Dkt. 916 at 29-30) is the amount of money Microsoft would have to place in

22 escrow under *Orange Book*. These funds, however, would be applied to the court-determined

23 royalty, and any excess amount would be returned to Microsoft. Haedicke, 8/30/13 Tr. at 199:2-

24 11, 220:12-17. Thus, they should not be considered a "cost" of mitigation.

25           **CONCLUSION**

26  For the foregoing reasons, this Court should grant Motorola's Rule 50(a) motions.

MOTOROLA'S REPLY IN SUPPORT OF ITS RULE 50(A)
MOTIONS FOR JUDGMENT AS A MATTER OF LAW (DKT
NOS. 904 AND 905) - 15
CASE NO. C10-1823-JLR

S<span style="font-variant:small-caps">UMMIT</span> L<span style="font-variant:small-caps">AW</span> G<span style="font-variant:small-caps">ROUP</span> PLLC
315 F<span style="font-variant:small-caps">IFTH</span> A<span style="font-variant:small-caps">VENUE</span> S<span style="font-variant:small-caps">OUTH</span>, S<span style="font-variant:small-caps">UITE</span> 1000
S<span style="font-variant:small-caps">EATTLE</span>, W<span style="font-variant:small-caps">ASHINGTON</span> 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

DATED this 20th day of September, 2013.

Respectfully submitted,

SUMMIT LAW GROUP PLLC

By */s/ Ralph H. Palumbo*
By */s/ Philip S. McCune*
   Ralph H. Palumbo, WSBA #04751
   Philip S. McCune, WSBA #21081
   *ralphp@summitlaw.com*
   *philm@summitlaw.com*

By */s/ Thomas V.  Miller*
   Thomas V. Miller
   MOTOROLA MOBILITY LLC
   600 North U.S. Highway 45
   Libertyville, IL  60048-1286
   (847) 523-2162

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By */s/ Kathleen M. Sullivan*
   Kathleen M. Sullivan, NY #1804624
   51 Madison Ave., 22nd Floor
   New York, NY 10010
   (212) 849-7000
   *kathleensullivan@quinnemanuel.com*

By */s/ Brian C. Cannon*
   Brian C. Cannon, CA #193071
   555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, CA 94065
   (650) 801-5000
   *briancannon@quinnemanuel.com*

By */s/ William C. Price*
   William C. Price, CA #108542
   865 S. Figueroa Street, 10th Floor
   Los Angeles, CA 90017
   (213) 443-3000
   *williamprice@quinnemanuel.com*

***Attorneys for Motorola Solutions, Inc., Motorola***
***Mobility LLC and General Instrument Corp.***

MOTOROLA'S REPLY IN SUPPORT OF ITS RULE 50(A)
MOTIONS FOR JUDGMENT AS A MATTER OF LAW (DKT
NOS. 904 AND 905) - 16
CASE NO. C10-1823-JLR

1

**CERTIFICATE OF SERVICE**

2

    I hereby certify that on this day I electronically filed the foregoing with the Clerk of the

3

Court using the CM/ECF system which will send notification of such filing to the following:

4

        Arthur W. Harrigan, Jr., Esq.
        Christopher T. Wion, Esq.

5

        Shane P. Cramer, Esq.
        Calfo Harrigan Leyh & Eakes LLP

6

        *arthurh@calfoharrigan.com*
        *chrisw@calfoharrigan.com*

7

        *shanec@calfoharrigan.com*

8

        Richard A. Cederoth, Esq.
        Brian R. Nester, Esq.

9

        David T. Pritikin, Esq.
        Douglas I. Lewis, Esq.

10

        John W. McBride, Esq.
        William H. Baumgartner, Jr., Esq.

11

        David C. Giardina, Esq.
        Carter G. Phillips, Esq.

12

        Constantine L. Trela, Jr., Esq.
        Ellen S. Robbins, Esq.

13

        Nathaniel C. Love, Esq.
        Sidley Austin LLP

14

        *rcederoth@sidley.com*
        *bnester@sidley.com*

15

        *dpritikin@sidley.com*
        *dilewis@sidley.com*

16

        *jwmcbride@sidley.com*
        *wbaumgartner@sidley.com*

17

        *dgiardina@sidley.com*
        *cphillips@sidley.com*

18

        *ctrela@sidley.com*

19

        *erobbins@sidley.com*
        *nlove@sidley.com*

20

21

        T. Andrew Culbert, Esq.
        David E. Killough, Esq.

22

        Microsoft Corp.
        *andycu@microsoft.com*

23

        *davkill@microsoft.com*

24

    DATED this 20th day of September, 2013.

25

                                        _____
                                         /s/ *Marcia Ripley*

26

                                         Marcia Ripley

MOTOROLA'S REPLY IN SUPPORT OF ITS RULE 50(A)
MOTIONS FOR JUDGMENT AS A MATTER OF LAW (DKT
NOS. 904 AND 905) - 17
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001