The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>MOTOROLA, INC., and MOTOROLA MOBILITY LLC, and GENERAL INSTRUMENT CORPORATION,<br><br>    Defendants. | CASE NO. C10-1823-JLR<br><br>MOTOROLA'S RESPONSE TO MICROSOFT'S RESPONSE TO THE COURT'S SEPTEMBER 10, 2013 ORDER CONCERNING LITIGATION IN GERMANY (DKT. NO. 913) |
| MOTOROLA MOBILITY LLC, and GENERAL INSTRUMENT CORPORATION,<br><br>    Plaintiffs/Counterclaim Defendant,<br><br>    v.<br><br>MICROSOFT CORPORATION,<br><br>    Defendant/Counterclaim Plaintiff. | |

MOTOROLA'S RESPONSE TO MICROSOFT'S RESPONSE TO THE COURT'S SEPTEMBER 10, 2013 ORDER CONCERNING LITIGATION IN GERMANY (DKT. NO. 913)
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

ARGUMENT .........................................................................................................................5

I.  MOTOROLA'S GERMAN LITIGATION CONDUCT IS ENTIRELY
    CONSISTENT WITH THIS COURT'S ORDERS ...................................................5

    A.  The German Appeal and Contract Action Are Not Rate-Setting Proceedings ..........6

    B.  The License Agreement In Germany Does Not Reflect Hold-Up Value ..................7

II. MOTOROLA DID NOT CONCEDE THIS COURT'S AUTHORITY TO SET A
    WORLDWIDE LICENSE RATE FOR ALL PURPOSES .......................................9

CONCLUSION.....................................................................................................................10

CERTIFICATE OF SERVICE ...........................................................................................12

MOTOROLA'S RESPONSE TO MICROSOFT'S RESPONSE TO
THE COURT'S SEPTEMBER 10, 2013 ORDER CONCERNING
LITIGATION IN GERMANY (DKT. NO. 913) - i
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:   (206) 676-7001

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Microsoft Corp. v. Motorola, Inc.*,
    696 F.3d 872 (9th Cir. 2012) ...................................................................................... 3, 8

*Voda v. Cordis Corp.*,
    476 F.3d 887 (Fed. Cir. 2007) ........................................................................................ 6

MOTOROLA'S RESPONSE TO MICROSOFT'S RESPONSE TO THE COURT'S SEPTEMBER 10, 2013 ORDER CONCERNING LITIGATION IN GERMANY (DKT. NO. 913) - ii
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Defendants Motorola Mobility, LLC, Motorola Solutions, Inc. and General Instrument Corp. (collectively, "Motorola") respectfully file this memorandum in response to the September 16, 2013 memorandum of Plaintiff Microsoft Corp. ("Microsoft") addressing the Court's order of September 10, 2013 granting Microsoft permission to file a motion for an expanded anti-suit injunction.

**Introduction**

On August 8, 2013, Microsoft sought permission from this Court to file a motion to renew and expand the Court's anti-suit injunction against Motorola's enforcement of injunctive relief in Germany against Microsoft's infringement of Motorola's H.264 SEPs in Germany. Dkt. 840. In this request, Microsoft referenced conduct by Motorola in two actions: the July 2011 patent infringement suits filed by Motorola, which were the subject of this Court's anti-suit injunction, and a breach of contract action arising out of Motorola's acceptance of Microsoft's *Orange Book* offer. *Id.* Motorola explained at the pretrial conference that any such motion by Microsoft was unwarranted as Motorola had done nothing in Germany to circumvent this Court's orders, and the Court deferred further discussion of the issue until after trial. On September 10, 2013, the Court invited Microsoft to brief the issue. Instead of now asking for any renewal or extension of the prior anti-suit injunction, Microsoft has filed a submission asking the Court to take no action whatsoever. Acknowledging that Motorola promptly acted after the pretrial conference to stay all pending German litigation concerning Microsoft's infringement of its H.264 SEPs (Dkt. 919 at 3), Microsoft states that it "does not believe action from this Court is required" (*id*. at 2), and that "Microsoft believes that action from this Court is not necessary" (*id*. at 9). Because Microsoft requests no relief from this Court, no action by this Court is needed.

Nevertheless, Microsoft spends nine pages offering a needless and inflammatory mischaracterization of the proceedings in Germany in an effort to paint Motorola as attempting to circumvent this Court's rulings. Motorola files this response to clarify the record and apprise the Court of the actual state of affairs in Germany. In actions that are now stayed, Motorola sought

MOTOROLA'S RESPONSE TO MICROSOFT'S RESPONSE TO
THE COURT'S SEPTEMBER 10, 2013 ORDER CONCERNING
LITIGATION IN GERMANY (DKT. NO. 913) - 1
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

*non*-injunctive relief such as damages for past infringement, and damages for Microsoft's breach of contract arising out of Motorola's acceptance of Microsoft's *Orange Book* offer. Nothing in this Court's anti-suit injunction barred the pursuit of such monetary remedies. To the contrary, Microsoft conceded in this Court that damages were available to Motorola in Germany, and the Ninth Circuit premised its affirmance of the anti-suit injunction on that order's narrow tailoring to avoid any preclusion of Motorola's damages actions in Germany. Motorola also accepted Microsoft's *Orange Book* offer in mid-January 2013, well before this Court's April 19, 2013 Order setting forth the rate the Court found RAND for Motorola's H.264 SEPs. Nothing in this Court's anti-suit injunction barred the parties from entering such a private settlement.

Lacking any permissible ground for this Court's intervention in the new German action, Microsoft asks that Motorola "agree[] to leave the stays in place, and to refrain from pursuing any other actions on its H.264 and 802.11 SEPs against Microsoft in any forum, without first seeking leave to do so from this Court." Dkt. 919 at 2. Motorola has no intention of seeking to lift the stays in Germany pending appeal of this matter. To that end, Motorola has requested that Microsoft agree that any statute of limitations in Germany be tolled while the cases are stayed. If Microsoft is serious about preserving the status quo, it ought to agree that the German statute of limitation be tolled as well. If Microsoft so agrees, then Motorola will agree to maintain the stays in Germany.

**Background**

1. ***The German patent actions.*** In July 2011, Motorola brought actions in Germany alleging that Microsoft infringed Motorola's German H.264 SEPs. In the German actions, Microsoft opted to take one of the two paths available to it under Germany's *Orange Book* procedure, proposing a royalty rate of 1-2 Eurocents for Motorola's German SEPs on December 23, 2011. Dkt. 920-5 at 72-73 (December 23, 2011 letter attaching proposed license agreement). Microsoft acknowledged that, "[a]s required by the recent case law of the District Court in Mannheim . . . Microsoft Corp. expressly acknowledges . . . the duty to cover past damages for

MOTOROLA'S RESPONSE TO MICROSOFT'S RESPONSE TO
THE COURT'S SEPTEMBER 10, 2013 ORDER CONCERNING
LITIGATION IN GERMANY (DKT. NO. 913) - 2
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

any past use of the Licensed Patents. The damages are to be determined in accordance with the respective principles set forth under German law." Dkt. 920-5 at 73. Motorola did not accept Microsoft's offer at that time.

**2. *This Court's anti-suit injunction.*** In March 2012, Microsoft moved for an injunction in this Court to prevent Motorola from enforcing any injunction issued by the German court. Dkt. 209 at 24 (requesting an order barring Motorola "from taking any action to exclude Microsoft products in Germany during the pendency of this RAND proceeding"). Microsoft expressly declined to argue that Motorola could not maintain its patent infringement actions in Germany or seek damages in those actions. *See* Decl. of Andrea Pallios Roberts, dated September 23, 2013, Ex. A at 5:2-6 (Mr. Harrigan: "We are not asking the court to stop Motorola from proceeding in Germany. It can proceed to establish whatever it needs to over there with regard to infringement and ask for royalties and damages and so forth."). On April 12, 2012, this Court granted a temporary restraining order, which it converted to a preliminary injunction on May 14, 2012. Dkt. 318 at 2 & n.2. The Court's injunction was expressly limited to preventing Motorola from enforcing the injunctions in Germany. *Id.* at 17 ("Here, the court stresses that its April 11, 2012 temporary restraining order was limited to enjoining Motorola from enforcing any injunctive relief that it may receive in the German Action with respect to the European Patents. Importantly, the order in no way enjoined Motorola from pursuing the German Action and receiving monetary damages (or any other non-injunctive relief), and in no way prohibited further proceedings in Germany."); Dkt. No. 607 at 16 ("The scope of the injunction was limited to Motorola's enforcement of an injunction in Germany but not to further prosecution of the Germany action or the receipt of damages of the non-injunctive form."). The Ninth Circuit affirmed this Court's narrow injunction on September 28, 2012, explicitly recognizing that the anti-suit injunction was necessarily limited in scope because Microsoft's infringement of the German patents is a question determined under German law by the German courts and because the injunction left "Motorola free to continue litigating its German patent claims against Microsoft as to damages or other non-

MOTOROLA'S RESPONSE TO MICROSOFT'S RESPONSE TO THE COURT'S SEPTEMBER 10, 2013 ORDER CONCERNING LITIGATION IN GERMANY (DKT. NO. 913) - 3
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

injunctive remedies to which it may be entitled." *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 889 (9th Cir. 2012).

    **3. *The German patent rulings.*** In May 2012, the Mannheim court issued its judgment in the infringement proceedings, finding that Microsoft had infringed Motorola's patents and that Microsoft was liable for damages for past infringement, in addition to granting Motorola the right to an accounting of Microsoft's past use of the Motorola patents. *See* Dkt. 308-4 at 3, 6-8, 21, 34-37. Microsoft appealed that judgment and, in doing so, filed an amended version of the December 2011 license agreement offer. Dkt. 920-5 at 33. As part of that offer, Microsoft included a per unit royalty rate of 2 Eurocents for the first 10 million units and 1 Eurocent up through the May 2012 Google, Inc. acquisition of Motorola, with a capped royalty thereafter. *Id.* at 34, 39-40. Microsoft agreed in the license to comply with "adequate and orderly accounting principles," *id.* at 41, and further agreed that the license agreement is governed by German law with exclusive jurisdiction in the Mannheim District Court, *id.* at 43. Microsoft reiterated its responsibility to pay past damages in its appeal filed September 3, 2012. Dkt. 920-5 at 60. Microsoft kept its German *Orange Book* offer open throughout Microsoft's appeal of the German court judgment, notwithstanding the pendency of proceedings in this Court.

    **4. *Motorola's acceptance of Microsoft's Orange Book offer and German proceedings thereafter.*** In mid-January 2013, Motorola accepted Microsoft's offer and signed the license agreement, reserving its right to past damages. Dkt. 920-5 at 51-53; *id.* at 50 (signature page of license agreement). Later that month, Microsoft attempted to claw back its offer after Motorola already had accepted it. Dkt. 920-5 at 54-57. Microsoft contended in its letter that Motorola was required to withdraw its claims for injunctive relief—which was not true, *see* Dkt. 807-2 at 4—and ignored the fact that Motorola had never sought to enforce the injunctions in Germany in compliance with this Court's anti-suit injunction. Motorola informed this court of the concluded license agreement in Germany, as well as Microsoft's objections to its enforceability, on February 22, 2013, attaching the license agreement. Dkt. 655; Dkt. 655-1.

MOTOROLA'S RESPONSE TO MICROSOFT'S RESPONSE TO THE COURT'S SEPTEMBER 10, 2013 ORDER CONCERNING LITIGATION IN GERMANY (DKT. NO. 913) - 4
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1       Under Section 3.3 of the license agreement, Microsoft was due to make a payment in
2  February 2013.  Dkt. 920-5 at 47 (counter-signed license agreement).  Microsoft failed to make
3  that payment.  In March 2013, Motorola sent a letter requesting that Microsoft make the overdue
4  payment and, the next month, filed a complaint to enforce the contract.  Dkt. 920-5 at 58, 60; *id.* at
5  9-15 (complaint).  The breach of contract action in Germany relates solely to Microsoft's failure to
6  abide by the terms of the licensing agreement that the parties reached for Motorola's German
7  patents that were the subject of the infringement suit—an agreement reached *prior* to this Court's
8  April 19, 2013 Order.  Through no fault of Motorola's and due solely to the burdens of the Hague
9  Convention, the German court did not serve the complaint until months later on July 31, 2013.
10 Dkt. 919 at 2.

11      Following the pre-trial conference, Motorola moved to stay the new contract action.  Both
12 the new contract action and the appeal of the German court's May 2012 ruling currently are
13 stayed.  Dkt. 920-6 to 920-15.  Motorola has no plans to seek to lift any of the stays.

## **Argument**

### I.   MOTOROLA'S GERMAN LITIGATION CONDUCT IS ENTIRELY CONSISTENT WITH THIS COURT'S ORDERS

       As explained above, currently two sets of proceedings exist in Germany—Microsoft's appeal of the German court's infringement findings and Motorola's action for breach of contract. Neither action is a rate-setting proceeding.  Thus, contrary to Microsoft's baseless assertions (Dkt. 919 at 2-8), Motorola has ***not*** attempted through its German litigation conduct to undermine the Court's worldwide RAND rate determination.  To the contrary, Microsoft maintained its *Orange Book* offer of 1-2 Eurocents in the German appeal even after this Court issued its anti-suit injunction, after one of Motorola's German patents expired, and after this Court issued its order dismissing Motorola's claim for injunctive relief (Dkt. 607).  Motorola accepted the offer before this Court issued its April 19, 2013 Order.  Dkt. 655; Dkt. 673.  Thus, Motorola had no idea at the time it accepted Microsoft's license offer whether the Court-determined RAND rate would be higher or lower than the offer Microsoft made and Motorola accepted in Germany.

MOTOROLA'S RESPONSE TO MICROSOFT'S RESPONSE TO
THE COURT'S SEPTEMBER 10, 2013 ORDER CONCERNING
LITIGATION IN GERMANY (DKT. NO. 913) - 5
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

### A. The German Appeal and Contract Action Are Not Rate-Setting Proceedings

Microsoft's appeal from the German judgment concerns Microsoft's infringement of the German patents and whether Microsoft's *Orange Book* offer of 1-2 Eurocents met the *Orange Book* standard, requiring Motorola to have accepted it. Motorola accepted the offer, and Microsoft left the offer open despite this Court's anti-suit injunction[1] so that it could continue to argue on appeal that Motorola had engaged in anti-competitive conduct in not accepting Microsoft's offer. Ex. B at 45-46. Microsoft could make this argument only if it maintained its *Orange Book* offer. Thus, notwithstanding this Court's anti-suit injunction, the expiration of the patent, this Court's November 30, 2012 ruling dismissing Motorola's request for injunctive relief, and the November trial, Microsoft never withdrew or amended its *Orange Book* offer. Only in March 2013, after Motorola accepted the offer in January 2013, did Microsoft modify its offer. Ex. C at 10. Microsoft cannot now be heard to argue that Motorola was not permitted to accept an offer that Microsoft represented to the German courts that Motorola was *required* to accept in order to comply with European anti-competition law, *see* Ex. B at 45 (arguing that the offer "must not be rejected by Plaintiff, as it otherwise would be in violation of cartel law").

It is in this context that Motorola argued to the German court that, notwithstanding this Court's RAND rate and range determination, the German court could decide that Motorola could permissibly reject Microsoft's offer given the appropriate valuation of the German patents under German law. Microsoft has never argued that the German patents should be construed under U.S. law or that Motorola was not entitled to maintain its patent infringement suit in Germany. Nor could Microsoft do so, as it is widely recognized that individual patent rights are to be construed according to the law of the country issuing the patent, as recognized by a treaty to which both the United States and Germany are signatories. *See Voda v. Cordis Corp.*, 476 F.3d 887, 899 (Fed.

---

[1] Microsoft therefore incorrectly asserts that it "made these offers while under the threat of an injunction in Germany." Dkt. 919 at 2. Even by the time Microsoft made its August 2012 offer, this Court's anti-suit injunction had been in effect for months and Motorola had taken no steps to enforce the German injunction.

MOTOROLA'S RESPONSE TO MICROSOFT'S RESPONSE TO
THE COURT'S SEPTEMBER 10, 2013 ORDER CONCERNING
LITIGATION IN GERMANY (DKT. NO. 913) - 6
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Cir. 2007) ("The Paris Convention thus clearly expresses the independence of each country's sovereign patent systems and their systems for adjudicating those patents. Nothing in the Paris Convention contemplates nor allows one jurisdiction to adjudicate the patents of another, and as such, our courts should not determine the validity and infringement of foreign patents.").[2] It is undisputed that this Court did not apply German law to construe the German patents. *See generally* Dkt. 673. Further, Motorola had no reason to present evidence in this Court on the German patents, as the German patents are properly construed under German law by the German courts and this Court already had available to it at the time of the November trial and the April 19, 2013 order the German court's interpretation of its own patents. Dkt. 308.

Finally, Microsoft has presented no evidence or legal authority for its assertion that "the Orange Book procedure may well be inconsistent with European antitrust law." Dkt. 919 at 8. As the German court is not setting a rate for any patents, but merely deciding under German law whether the German trial court erred in deciding that Motorola did not commit an anti-trust violation by rejecting Microsoft's offer, Motorola's arguments in response could not have any effect on this Court's rulings.

**B.   The License Agreement In Germany Does Not Reflect Hold-Up Value**

Despite Microsoft's success in obtaining an anti-suit injunction from this Court, Microsoft still argues that its *own offer* reflects hold-up value. Dkt. 919 at 7-8. The facts demonstrate otherwise. No hold-up value can exist when Microsoft set the rate and continued to offer that rate even after this Court issued an anti-suit injunction, after the Ninth Circuit affirmed the anti-suit injunction, after this Court dismissed Motorola's request for an injunction, after the expiration of one of the patents, and after the November trial. It was Microsoft that determined the rate it offered in Germany—not the German courts and not Motorola. Microsoft should not be permitted to make an offer it deemed RAND, argue in Germany that Motorola was required to accept the

---

[2]   In addition, at the time the Court set the RAND rate and range, it already had available to it the German court's infringement opinion (Dkt. 308) and presumably would have consulted the

MOTOROLA'S RESPONSE TO MICROSOFT'S RESPONSE TO THE COURT'S SEPTEMBER 10, 2013 ORDER CONCERNING LITIGATION IN GERMANY (DKT. NO. 913) - 7
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1  offer, and then turn around and argue that it was forced to make that specific offer.

2  Even if German law requires a party to make an offer to maintain an *Orange Book* defense,
3  German law does not dictate the specific terms of the offer. Injunctions were no longer on the
4  table at the time Motorola accepted Microsoft's offer in January 2013 and had been off the table
5  for months. At least by that point, Microsoft could have chosen any rate it wanted. Indeed,
6  Microsoft did modify the offer—after Motorola already had accepted it. Ex. C at 10. If, in fact,
7  Microsoft succeeded in its arguments on appeal, then Motorola would be entitled to no statutory
8  damages, which is precisely why Microsoft kept its offer open wholly apart from any claim for
9  injunctive relief, as Microsoft itself acknowledged. *See* Ex. D at 26; *see also* Ex. E at 17.

10  Microsoft incorrectly states that Motorola had no reason to file the German action except
11  to "extract concessions" from Microsoft. Dkt. 919 at 8-9. Motorola's infringement action was
12  properly pursued in Germany and Motorola could not obtain the right to damages for Microsoft's
13  prior infringement in any other forum. Thus, even if this Court enjoined injunctive relief in
14  Germany and has authority to set a worldwide *prospective* RAND rate, Motorola was still entitled
15  to maintain infringement actions in Germany to recover *past* damages under German law. Both
16  this Court and the Ninth Circuit agreed. Dkt. 318 at 17; *Microsoft Corp.*, 696 F.3d at 889.

17  Despite the fact that Microsoft characterizes Motorola's request for an accounting as
18  "extensive and burdensome," even Microsoft concedes that the "purpose" of this request is to
19  "enable Motorola to claim patent infringement damages." Dkt. 919 at 2. Under German law, a
20  request for an accounting is a prerequisite to damages and, in this instance, Microsoft specifically
21  acknowledged its liability for damages. Dkt. 920-5 at 72-73.

22  Nor would Microsoft be entitled to damages for the contract into which it entered. Dkt.
23  919 at 8. In arguing that a party would not experience irreparable harm if a German court set a
24  higher rate than this Court set in the United States (Dkt. 919 at 3-4), Motorola did not concede that
25  this Court could set a worldwide rate for all purposes. Rather, Motorola argued simply that the

26  _____
opinion if it were determining issues of German law.

MOTOROLA'S RESPONSE TO MICROSOFT'S RESPONSE TO
THE COURT'S SEPTEMBER 10, 2013 ORDER CONCERNING
LITIGATION IN GERMANY (DKT. NO. 913) - 8
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

availability of such monetary relief in this Court meant that Microsoft could not demonstrate *irreparable* harm in Germany. Ex. A at 26:24-27:5. This Court rejected Motorola's argument and issued the anti-suit injunction. Dkt. 318 at 2. At that point, Microsoft could have withdrawn its *Orange Book* offer without facing an injunction, but chose not to do so. Neither the German courts nor Motorola ever set a rate for the German patents—only Microsoft did. Thus, Microsoft brought upon itself any alleged harm caused.

Microsoft further asserts to this Court that Motorola argued in Germany that Microsoft is not a willing licensee. Dkt. 919 at 7. But Microsoft points to no reason why this Court's determination that Microsoft is a willing licensee would apply under the law of the European Union; indeed, Microsoft does not explain what qualifies as a willing licensee under such law or argue that Motorola's position is incorrect under that law.

## II. MOTOROLA DID NOT CONCEDE THIS COURT'S AUTHORITY TO SET A WORLDWIDE LICENSE RATE FOR ALL PURPOSES

Despite Microsoft's repeated attempts (both before this Court and in Germany) to classify Motorola's prior statements as concessions that this Court can set a worldwide rate, Motorola has never consented to this Court's setting a worldwide license on RAND terms for all purposes. *See, e.g.*, Ex. F at 56:1-4; *see also Microsoft Corp. v. Motorola, Inc.*, No. 12-35352, Opening Br. of Defendants-Appellants, at 32 (9th Cir. May 30, 2012). As Motorola has explained previously, this Court may not create a new contract. Dkt. 362 at 13-23. The fact that the Court can construe the ITU commitment on a worldwide basis has no bearing on whether the Court can determine the terms of a new RAND license to any particular patents, rendering Microsoft's citation to the April 11, 2012 hearing (Dkt. 919 at 3) inapposite. Further, while Motorola recognizes that the Court may view the parties as having agreed to allow the Court to set a worldwide RAND rate, Motorola respectfully submits that the concession was narrower. Motorola merely explained why no irreparable harm could exist assuming *arguendo* that the Court could set a worldwide license—because money damages would suffice. Ex. A at 26:24-27:5. And because the Court's April 19,

MOTOROLA'S RESPONSE TO MICROSOFT'S RESPONSE TO THE COURT'S SEPTEMBER 10, 2013 ORDER CONCERNING LITIGATION IN GERMANY (DKT. NO. 913) - 9
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1  2013 order generally applies U.S. patent law for infringement and validity, the RAND rate and
2  range in the opinion do not apply to all circumstances that may arise, in particular for foreign
3  jurisdictions. Indeed, it very likely that the enforceability and applicability of the German patents
4  in some contexts is higher than the rate and range the Court set in this Court's April 19, 2013
5  order because, for example, Germany does not recognize the means-plus-function law that the
6  Court relied upon in determining the value of the U.S. patents. *Cf.* Dkt. 652 (applying U.S. law).

7  The fact that neither Motorola nor Microsoft submitted evidence of the separate value of
8  the patent portfolios of different countries does not somehow waive Motorola's right to argue in
9  Germany that a different value would be applied to the German patents under German law. As
10 Microsoft well knows, Motorola argued to the Ninth Circuit that it was infeasible for this Court to
11 determine a RAND rate for patents in the various countries between which patent rights and
12 market conditions vary significantly. *Microsoft Corp. v. Motorola, Inc.*, No. 12-35352, Opening
13 Br. of Defendants-Appellants, at 32 (9th Cir. May 30, 2012) ("[T]he problems faced by a court or
14 jury seeking to impose RAND terms mount exponentially when *global* RAND rates and
15 conditions covering patents in 30 countries are to be determined. For 'six good citizens of the
16 Pacific Northwest [to] decide what the royalty is,' including as to *foreign* patents, would be a stark
17 overreach in an intellectual property system where rights and market conditions vary from country
18 to country." (citation omitted)). And by the time this Court held the November 2012 trial and
19 issued the April 2013 order, the German court already had determined that Motorola permissibly
20 could reject the 1-2 Eurocent offer for the German patents. Dkt. 308.

21 **Conclusion**

22 For all the foregoing reasons, this Court should take no action concerning the German
23 litigation.

MOTOROLA'S RESPONSE TO MICROSOFT'S RESPONSE TO
THE COURT'S SEPTEMBER 10, 2013 ORDER CONCERNING
LITIGATION IN GERMANY (DKT. NO. 913) - 10
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1   DATED this 23rd day of September, 2013.

Respectfully submitted,

SUMMIT LAW GROUP PLLC

By */s/ Ralph H. Palumbo*
By */s/ Philip S. McCune*
   Ralph H. Palumbo, WSBA #04751
   Philip S. McCune, WSBA #21081
   *ralphp@summitlaw.com*
   *philm@summitlaw.com*

By */s/ Thomas V. Miller*
   Thomas V. Miller
   MOTOROLA MOBILITY LLC
   600 North U.S. Highway 45
   Libertyville, IL  60048-1286
   (847) 523-2162

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Kathleen M. Sullivan*
   Kathleen M. Sullivan, NY #1804624
   51 Madison Ave., 22nd Floor
   New York, NY 10010
   (212) 849-7000
   *kathleensullivan@quinnemanuel.com*

By */s/ Brian C. Cannon*
   Brian C. Cannon, CA #193071
   555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, CA 94065
   (650) 801-5000
   *briancannon@quinnemanuel.com*

By */s/ William C. Price*
   William C. Price, CA #108542
   865 S. Figueroa Street, 10th Floor
   Los Angeles, CA 90017
   (213) 443-3000
   *williamprice@quinnemanuel.com*

***Attorneys for Motorola Solutions, Inc., Motorola Mobility LLC and General Instrument Corp.***

---

MOTOROLA'S RESPONSE TO MICROSOFT'S RESPONSE TO THE COURT'S SEPTEMBER 10, 2013 ORDER CONCERNING LITIGATION IN GERMANY (DKT. NO. 913) - 11
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

# CERTIFICATE OF SERVICE

sI hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Arthur W. Harrigan, Jr., Esq.
> Christopher T. Wion, Esq.
> Shane P. Cramer, Esq.
> Calfo Harrigan Leyh & Eakes LLP
> *arthurh@calfoharrigan.com*
> *chrisw@calfoharrigan.com*
> *shanec@calfoharrigan.com*
>
> Richard A. Cederoth, Esq.
> Brian R. Nester, Esq.
> David T. Pritikin, Esq.
> Douglas I. Lewis, Esq.
> John W. McBride, Esq.
> William H. Baumgartner, Jr., Esq.
> David C. Giardina, Esq.
> Carter G. Phillips, Esq.
> Constantine L. Trela, Jr., Esq.
> Ellen S. Robbins, Esq.
> Nathaniel C. Love, Esq.
> Sidley Austin LLP
> *rcederoth@sidley.com*
> *bnester@sidley.com*
> *dpritikin@sidley.com*
> *dilewis@sidley.com*
> *jwmcbride@sidley.com*
> *wbaumgartner@sidley.com*
> *dgiardina@sidley.com*
> *cphillips@sidley.com*
> *ctrela@sidley.com*
> *erobbins@sidley.com*
> *nlove@sidley.com*
>
> T. Andrew Culbert, Esq.
> David E. Killough, Esq.
> Microsoft Corp.
> *andycu@microsoft.com*
> *davkill@microsoft.com*

DATED this 23rd day of September, 2013.

/s/ *Marcia A. Ripley*
Marcia A. Ripley

---

MOTOROLA'S RESPONSE TO MICROSOFT'S RESPONSE TO THE COURT'S SEPTEMBER 10, 2013 ORDER CONCERNING LITIGATION IN GERMANY (DKT. NO. 913) - 12
CASE NO. C10-1823-JLR

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001