# EXHIBIT A

```
 1                UNITED STATES DISTRICT COURT

 2            WESTERN DISTRICT OF WASHINGTON AT SEATTLE

 3   ------------------------------------------------------------

 4   MICROSOFT CORPORATION,         )
                                    )
 5                  Plaintiff,      ) 10-01823-JLR
                                    )
 6   v.                             ) SEATTLE, WASHINGTON
                                    )
 7   MOTOROLA INC., et al,          ) April 11, 2012
                                    )
 8                  Defendants.     ) Argument on TRO
                                    )
 9   ------------------------------------------------------------

10            VERBATIM REPORT OF PROCEEDINGS
             BEFORE THE HONORABLE JAMES L. ROBART
11               UNITED STATES DISTRICT JUDGE

12   ------------------------------------------------------------

13
     APPEARANCES:
14


15


16    For the Plaintiff:      Arthur Harrigan, Christopher
                              Wion, David Pritikin and Andy
17                            Culbert


18


19


20    For the Defendants:     Jesse Jenner, Ralph Palumbo, Mark
                              Rowland, Philip McCune and Neill
21                            Taylor

22

23

24

25
```

1   I'll get to in a minute, that the anti-suit injunction that

2   we are asking for is only about the injunction.  We are not

3   asking the court to stop Motorola from proceeding in Germany.

4   It can proceed to establish whatever it needs to over there

5   with regard to infringement and ask for royalties and damages

6   and so forth.

7       All we're asking the court to do is to prevent them from

8   enforcing an injunction in Germany, which is a much narrower

9   request than all.  But the *Medtronic* case was very similar,

10  and I'll get that one out of the way right now.  In that case

11  the court didn't use the anti-suit standard as such, but it

12  determined because there was a likelihood that a contract

13  would preclude injunctive relief, the court as -- and

14  irreparable harm would result if there were injunctive relief

15  granted in the other forum, the court would enjoin the

16  enforcement of the injunction, in effect, but let the

17  infringement part of the case go forward.  That's what we're

18  asking for.

19      And I believe that since really the only issue is

20  repudiation, and this court has already expressed doubt about

21  the validity of that argument, that we have a close parallel

22  here to the *Medtronic* case, because of the limited relief

23  we're asking for, particularly.

24      Let's move on here for a second to establish a couple

25  other preliminary items.  In Tab 2 we have quoted from our

1  non-discriminatory RAND terms?

2       MR. JENNER:  Well, Your Honor, I guess there are a

3  number of aspects of that.

4       THE COURT:  I assume there are.

5       MR. JENNER:  There are.

6     Number one, at the end of the day, the Orange Book

7  proceeding in Germany is going to set the payment that

8  Microsoft needs to pay for its infringement in Germany, and

9  it will deal with the German infringement.  That may or may

10  not be RAND.  That's probably an issue of first impression in

11  Germany.  People seem to think that it's RAND.  Microsoft has

12  made submissions that I can show you where it has called it

13  RAND.  It may or may not be RAND.

14     If it is RAND, it's a factor, when the day comes, that

15  Your Honor can take into account, or not take into account,

16  as some evidence of what the RAND rate ought to be.  You may

17  agree eventually with the German court.  You may not.  If it

18  isn't RAND you may look at that and dismiss it and say, I

19  don't think it's RAND in Germany, I'm going to set a

20  different rate.  And to the extent that my rate is lower than

21  the German rate, I'm going to order Motorola to pay back to

22  Microsoft the differential that it, quote/unquote, overpaid

23  in Germany.  In which case there will be like a remittitur.

24     But that's not irreparable harm, that's a damages claim.

25  That doesn't prevent Your Honor from deciding those issues,

1   or even deciding if you thought it was appropriate and that

2   Germany was RAND, that you want to carve Germany out and say,

3   we know what the rate is for Germany, I think the rate should

4   be different worldwide, and I'm going to set a different rate

5   if it comes down to that.

6       The fact that there's going to be a worldwide license

7   doesn't mean that the rate is the same in every country.

8   Motorola has licenses with rates that are different in

9   different countries.  The number of H.264 patents may be

10  different in different countries.  It doesn't necessarily

11  follow, if you go down that particular possibility, that

12  you're going to decide that the rate in every country is

13  supposed to be the same.  That's not a given.

14      So, whatever happens in Germany, it doesn't preclude Your

15  Honor from coming up with a number of different results that

16  might embrace the German decision, or may say, "I'm going to

17  ignore the German decision."

18          THE COURT:  Is any of that argument in your briefing?

19          MR. JENNER:  I'm sorry, Your Honor?

20          THE COURT:  Is any of that argument in your briefing?

21          MR. JENNER:  I don't think so, Your Honor.  I guess

22  it flows from the Orange Book remedy.  It flows from the

23  Orange Book remedy.

24          THE COURT:  It was news to me.  I've never heard that

25  particular take on it before.

# EXHIBIT B

Karlsruhe Higher Regional Court
Hoffstr. 10
76133 Karlsruhe

MUNICH
Prannerstrasse 10
80333 Munich
T +49 89 20 70 2 0
Direct T +49 89 20 70 2 361
F +49 89 20 70 2 100

E peter.chrocziel@freshfields.com
W freshfieldsbruckhausderinger.com
DOC NO  DAC11842623/5511+
OUR REF  PC/CBA 109096:0588
YOUR REF  6 U 44/12

*In advance via fax – 0721/9265003*

3. September 2012

**Docket no. 6 U 44/12**

## STATEMENT OF GROUNDS OF APPEAL

In the matter of

**General Instrument Corporation,** Horsham, PA 19044, USA

*- Plaintiff and Appellee-*

Attorneys of record, 1st instance:    All attorneys at the law firm Quinn Emanuel Urquhart & Sullivan LLP, admitted to the bar in Germany, Mollstrasse 42, 68165 Mannheim

vs.

**Microsoft Corporation,** One Microsoft Way, Redmond, WA 98052-6399, USA

*- Defendant 1) and Appellant 1) -*

**Microsoft Ireland Operations Limited,** Blackthorn Road, Sandyford Industrial Estate Dublin 18, Ireland

*- Defendant 2) and Appellant 2) -*

Attorneys of record:       All attorneys at the law firm Freshfields Bruckhaus Deringer LLP, Prannerstr. 10, 80333 Munich, who are admitted to practice in Germany

in association with:       Law firm Boehmert & Boehmert, Pettenkoferstrasse 20-22, 80336 Munich

**Freshfields Bruckhaus Deringer**

45|77

transmitted per macroblock, irrespective of whether a macroblock is broken down into smaller blocks for motion compensation and irrespective of the size of such blocks. In contrast, under the patent in suit, several blocks are combined into one data block, but information for the individual image blocks is signaled separately for the mage blocks so that there is no signaling for the entire data block (as equivalent to the macroblock as defined in the standard).

Furthermore, a sub_mb_type syntax element is always transmitted for a sub-macroblock of size 8x8 pixels. No individual information is transmitted for selecting the motion compensator for blocks equivalent to a smallest image region generated by a motion compensator (i.e. blocks of size 4x4 pixels according to the H.264 standard), even if the partition sizes of 8x4, 4x8 and 4x4 are permitted based on the motion compensation. Accordingly, a code word is transmitted not on the level of the smallest block sizes used by a motion compensator, but irrespective of the smallest block size, always at least on the sub-macroblock level, i.e. for blocks of size 8x8 pixels.

This too shows that the signals received by a standard-compliant decoder are structurally different from the signals received by a patented decoder. It follows from this as well that the challenged embodiments are not infringing the patent in suit. The complaint should have been dismissed for this reason as well.

## II.  Compulsory Licensing Objection under Antitrust Law according to Section 242 BGB due to Rejection of the Orange Book Standard Offer by Defendant 1)

### 1. The license offer by Defendant 1) met and still meets all requirements of the Orange Book Standard Decision

#### a)  The offer for use starting from 22 May 2012

After adapting the remaining contractual terms to Plaintiff's demands and including all specifications set by the courts, the only item remaining in dispute between the parties is, whether the amount of license fees is in line with the requirements set by the Orange Book decision. In any case, the amended offer for any use starting from 22 May 2012 must not be rejected by Plaintiff, as it otherwise would be in violation of cartel law.

**Freshfields Bruckhaus Deringer**

46|77

As already shown, Art. 8.3, sentence 2 of the MPEG LA License Agreement is a contractually stipulated presumtion between licensees and licensors of the MPEG LA license pool, i.e. that any fees payable by the licensee for the above license or sub-license constitute reasonable royalties. Since it has been acquired by Google, Plaintiff is a subsidiary of Google and hence an "affiliate" of a licensee as defined by the MPEG LA License Agreement, The patent in suit is therefore subject to Art. 8.3 of the MPEG LA License Agreement.

Should Google or Plaintiff try to claim that the licensee fees under the MPEG LA License Agreement do not constitute reasonable license fees, they bear the relevant burden of proof due to the contractual presumtion (cf. above, Exhibit FBD-BK 10a).

The compulsory licensing objection under cartel law now has to be apply even more so than before and the complaint therefore must be dismissed as unjustified.

**b)      The offer for use prior to 22 May 2012**

In its original license offer of 23 December 2011, Defendant 1) had already submitted an offer to Plaintiff, which the latter should not reject without violating the prohibition of abuse under antitrust law. It modified this offer in a submission of 03 February 2012 to address the Plaintiff's points of criticism and on 08 February 2012 upon the District Court's suggestion filed a request with the Federal Patent Court to stay the nullity proceedings against the patent in suit. Defendant 1) therefore submitted an offer to the Plaintiff, which by far exceeded what under the prohibition of abuse and discrimination under antitrust law could still have been called reasonable. The license payments submitted in the previous offer still apply under the new offer to any use made prior to Plaintiff's takeover by Google. Since the Plaintiff rejected the first offer, the District Court's decision to dismiss the complaint due to a violation of section 242 BGB as unjustified, was erroneous in law. The District Court's opinion, i.e. that rejecting the offer must constitute an obvious violation of anti-trust law, was based on a wrong interpretation of the Orange Book Standard decision. As this standard is furthermore not compatible with the principles of Art. 102 TFEU and sec. 19, 20 GWB, the decision has to be reversed for that reason already.

# EXHIBIT C

MUNICH
Prannerstrasse 10
80333 Munich
T+ 49 89 20 70 2 0
Direct T+ 49 89 20 70 2 361
F+ 49 89 20 70 2 100
F+ 49 89 20 70 2 584 00
E  peter.chrocziel@freshfields.com
W  freshfieldsbruckhausderinger.com

DOC NO.  DAC12898904/24+
OUR REFERENCE  PC 109096:0588
YOUR REFERENCE  6 U 45/12

Higher Regional Court of Karlsruhe
- 6th Civil Senate -
Hoffstraße 10
76133 Karlsruhe

*In advance via facsimile – 0721/9265003*

27 March 2013

## STATEMENT OF POSITION

In the matter of

**General Instrument Corporation,** Horsham, PA 19044, USA

*- Plaintiff and Appellee -*

| | |
|---|---|
| Attorneys of record: | All attorneys at law of Quinn Emanuel Urquhart & Sullivan LLP, Mollstraße 42, 68165 Mannheim, admitted to practice before German courts, |

v.

**Microsoft Deutschland GmbH**, Konrad-Zuse-Straße 1, 85716 Unterschleißheim

*- Defendant and Appellant -*

| | |
|---|---|
| Attorneys of record: | All attorneys of Freshfields Bruckhaus Deringer LLP, Prannerstrasse 10, 80333 Munich, admitted to practice before German courts |
| In collaboration with: | Law firm Boehmert & Boehmert, Pettenkoferstraße 20-22, 80336 Munich |

for alleged infringement of the German portion of European Patent EP 0 538 667

**Docket no.: 6 U 45/12**

DAC12898904/24+ 109096-0588

**Freshfields Bruckhaus Deringer**

10|10

## V.

To align the Orange Book offer to the fact that the Seattle Proceedings will determine the binding worldwide FRAND royalty for future and past use of Plaintiff's patents declared H.264 standard essential, by letter of today, Defendant's parent company submitted an amended Orange Book offer to Plaintiff. We submit it as

**Exhibit FBD-BK 20.**

The amended Orange Book offer now includes the required references to the Seattle Proceedings while the formerly proposed royalty rate continues to apply as a preliminary basis for royalty calculation only. Since Plaintiff is, as can be seen from its alleged "acceptance", apparently not interested in cross-licensing several Microsoft patents, the respective cross-license (option) was eliminated.

The amended Orange Book offer may be accepted by Plaintiff in this procedure to be in line with its worldwide obligation under the status reached in the Seattle Proceedings as well as in the FTC proceedings.

Matthias Beer
- Attorney at law -

DAC12898904/24+ 109096-0588

# EXHIBIT D

Higher Regional Court Karlsruhe
- 6th Civil Senate -
Hoffstraße 10
76133 Karlsruhe

MUNICH
Prannerstrasse 10
80333 Munich
T+ 49 89 20 70 2 0
Direct Ph+ 49 89 20 70 2 361
F+ 49 89 20 70 2 100
Direct dial+ 49 89 20 10 2 100
E  peter.chrocziel@freshfields.com
W  freshfieldsbruckhausderinger.com

*In advance via facsimile – 0721/9265003*

DOC NO.   DAC13792778/5+
OUR REFERENCE   PC/MBE 109096:0588
YOUR REFERENCE   6 U 47/12

25 July 2013

**Docket no.: 6 U 47/12**

## REPLY ON APPEAL

In the matter of

**General Instrument Corporation,** Horsham, PA 19044, USA

*- Plaintiff and Appellee -*

Attorneys of record:            All Attorneys-at-law of Quinn Emanuel Urquhart &
                                Sullivan LLP, Mollstraße 42, 68165 Mannheim admit-
                                ted to practice before German courts,

versus

**Microsoft Corporation**, One Microsoft Way, Redmond, WA 98052-6399, USA

*- Defendant 1 and Appellant 1 –*

**Microsoft Ireland Operations Limited,** Blackthorn Road, Sansyford Industrial
                                Estate Dublin 18, Ireland

*- Defendant 2 and Appellant 2 –*

Attorneys of record:            All attorneys of Freshfields Bruckhaus Deringer LLP,
                                Prannerstrasse 10, 80333 Munich, admitted to practice
                                before German courts


**Freshfields Bruckhaus Deringer**

**c)      Suspending the nullity proceedings**

As already explained in Part D of the brief on appeal, it is not possible to derive from the Orange Book Standard Decision either an obligation to suspend the nullity proceedings, nor is any such obligation in compliance with the underlying considerations under antitrust law. Nevertheless, Defendants have suspended the nullity action in response to the (incorrect) judicial instruction in the oral hearing. In this regard too, Defendants have more than met the requirements specified in the Orange Book Decision (even according to the erroneous understanding by the Regional Court).

**d)      Recognition of the obligation to pay damages**

As already explained in the brief of 27 March, Defendants in their Orange Book offer also recognized the obligation to pay damages for the past, and tied it to a specific offer to calculate them by way of a license analogy.

**e)      Conclusion**

The Orange Book offer of 23 December 2011 in the form of 31 August 2012 applicable when the claim for injunctive relief had been declared moot thus (more than) meets the requirements of the Orange Book Standard Decision.  The injunctive claim thus was unfounded at the time of the alleged settling event – like already starting from 23 December 2011. Because of the changed procedural situation, now the relevant motion for a declaratory judgement must be dismissed.

**5.      Compulsory licensing objection under antitrust law against motion seeking determination of the obligation to pay damages – Orange Book offer in its various forms**

The unfoundedness of the claim seeking determination of an obligation to pay damages already follows from the fact that the Orange Book offer of 23 December 2011 in the current


**Freshfields Bruckhaus Deringer**

form of 27 March 2013 (as well as the previous forms) met the requirements of the Orange Book Standard Decision. It also provided that for products manufactured prior to acceptance of the Orange Book offer, a one-off payment in the amount of the license fee, plus interest, would have to be made (see **b)** and **d)** below).

If the Senate should come to the conclusion that an Orange Book Offer must not contain a provision regarding the treatment of damages claims for the past, damages claims are banned at least starting from the point in time when a licence offer complying with the requirements of antitrust law existed. In the case at hand this was the case with the receipt of the Orange Book Offer in the form of 23 December 2011 (see **c)** and **e)** below).

**a)      Interpretation of the Orange Book Decision**

The Orange Book Decision does not contain any findings regarding whether the party seeking a license must recognize an obligation to pay damages on its merits and whether the licensee thus must have the option of calculation according to the three types of damage calculation, as required by some lower courts.

The primary consideration according to the Orange Book Decision is instead, whether the license offer by the party seeking a license contains usual contract terms. It is thus obvious that a license offer may also offer a retrospective regulation for compensation payments, as long as they are usual. If the special characteristics of the proceedings situation based on the compulsory licensing objection under antitrust law are removed, no licensee (and no usual, reasonable licensor) would be willing to enter into a license agreement without also stipulating any alleged past infringements in the contract.

Under a correct interpretation of the Orange Book Decision, a license agreement offer, which also regulates the claims for damages for the past, therefore must be considered reasonable to give rise to the compulsory licensing objection under antitrust law.



**Freshfields Bruckhaus Deringer**

**b)    The Orange Book offer of 23 December 2011 in the form of 27 March 2013 justifies the compulsory licensing objection under antitrust law**

The decisive modification of the Orange Book offer in the form of 27 March 2013 was the reference to the proceedings before the District Court Seattle.  The license fees determined in the above and the additional contract terms thus replace the preliminary regulations of the Orange Book offer. With regard to the reasonableness of the preliminary regulations, we refer to the preceding statements.

Below, we will therefore discuss only the reference to the proceedings before the District Court Seattle.

As stated in the Orange Book offer in the form of 27 March 2013, the reference to the U.S. proceedings is a situation that is in any case comparable to the provision of Sec. 317 BGB. According to Sec. 317 BGB, the parties may leave determination of the performance to third parties. In the proceedings before the District Court Seattle, both parties made it clear that they will comply with the determination of a global license fee by the U.S. court and that they would balance possible over- or underpayments under the German Orange Book offer accordingly (cf. the declarations cited in our brief of 27 March 2013).

Such a reference to a third party is comparable to the determination of performance by the contracting partner, with subsequent review for fairness by a court according to Sec. 315. The latter was permitted by the BGH in the Orange Book Standard Decision so that there are no obvious aspects, why a reference to the proceedings before the District Court Seattle should not be permitted under the examination criterion of the Orange Book Standard Decision.



**Freshfields Bruckhaus Deringer**

25|40

**c)** **The Orange Book offer of 23 December 2011 in all forms justifies the compulsory licensing objection under antitrust law**

As demonstrated under Part C I. 4. above, the Orange Book offer of 23 December 2011 in all its forms conforms with the requirements of the Orange Book Standard Decision. The adjustments were made primarily to adapt the calculation of the royalty rate to changed factual circumstances like for example the acquisition of Motorola Mobility Inc., the parent company of Plaintiff, by Google Inc. or to the proceedings in front of the District Court Seattle.

Also insofar as the Orange Book offer of 23 December 2011 in its original form did not comprise a right for Plaintiff to terminate the license agreement in case of a validity attack, which was introduced with the adjustment dated 3 February 2012, the offer was in line with the requirements of the Orange Book Standard Decision. There are no indications in the Orange Book Standard Decision that such a termination right would be required. This was in fact stipulated by later decisions by lower courts (see court order dated 23 January 2012 by the Higher Regional Court Karlsruhe, GRUR-RR 2012, 124, 125).

**d)** **The payment of compensation in damages is included in the decision of the District Court Seattle**

To the extent that the Orange Book offer of 23 December 2011 in the form of 27 March 2013 refers to the decision by the District Court Seattle, the offer covers the entire period for which claims for damages might exist (cf. **Part B** above).

**e)** **The payment of compensation in damages was covered by the Orange Book offer in all of its forms**

The Orange Book offer of 23 December 2011 also in its previous forms always included a provision regarding payment of a one-off amount for alleged infringing acts prior to accep-

 **Freshfields Bruckhaus Deringer**

tance of the Orange Book offer ("Old Products Provided by Microsoft"). Such one-off payment bore interest. This provision in Defendants' Orange Book offer constitutes the recognition of an obligation to pay damages on the merits as well as an offer to calculate the amount by way of license analogy.

**f)      Conclusion**

As a result, the motion seeking determination of an obligation to pay damages therefore is also unfounded, since according to an accurate understanding of the Orange Book Standard Decision, the compulsory licensing objection under antitrust law applies in this regard as well.

**II.      European law**

However, should the Senate arrive at the conclusion that the Orange Book offer does not comply with the requirements of the Orange Book Standard Decision, we request having the question of the applicable examination criterion clarified according to European law and staying the present appellate proceedings during such time.

As already briefly mentioned, proceedings are currently pending both before the European Commission as well as before the Court of Justice of the European Union, which will determine the requirements for the compulsory licensing objection under antitrust law on the European level.

**1.      European Commission**

The European Commission by now has instituted three examination procedures, where it is investigating the conduct of Samsung Electronics and Motorola Mobility Inc., the mother company of Plaintiff, when asserting essential patents against Apple (Samsung and Motorola Mobility Inc.) and Microsoft (Motorola Mobility Inc.).

# EXHIBIT E

MUNICH
Prannerstrasse 10
80333 Munich
T +49 89 20 70 2 0
Ext. +49 89 20 70 2 361
F +49 89 20 70 2 100
F +49 89 20 70 2 584 00
E peter.chrocziel@freshfields.com
W freshfieldsbruckhausderinger.com

Doc no. DAC13818907/10+
Our reference PC 109096:0588
Your reference 6 U 44/12

Higher Regional Court Karlsruhe
- 6th Civil Senate -
Hoffstrasse 10
76133 Karlsruhe

*In advance via facsimile – 0721/9265003*
*Opponent shall receive copies by way of direct*
*service*

31. July 2013

# STATEMENT OF POSITION

In the matter of

**General Instrument Corporation,** Horsham, PA 19044, USA

*- Plaintiff and Appellee –*

Attorneys of record:          All attorneys at law of Quinn Emanuel Urquhart & Sullivan
LLP, Mollstrasse 42, 68165 Mannheim, admitted to practice
before German courts,

v e r s u s

**Microsoft Corporation**, One Microsoft Way, Redmond, WA 98052-6399, USA

*- Defendant 1) and Appellant 1) –*

**Microsoft Ireland Operations Limited,** Blackthorn Road, Sansyford Industrial
Estate Dublin 18, Ireland

*- Defendant 2) and Appellant 2) –*

Attorneys of record:          All attorneys of Freshfields Bruckhaus Deringer LLP,
Prannerstrasse 10, 80333 Munich, admitted to practice
before German courts



Plaintiff's statements saying that without the risk of an injunctive claim Defendants would have withdrawn the offer is also erroneous. Since an Orange Book offer cannot only be cited as an argument against the injunctive claim but also, in particular, against the claim for damages, and since, due to the regulations regarding the Old Products, the claim for damages was expressly part of the Orange Book offer of Defendant 1), there were reasons to maintain the offer.

### Part C – The proceedings before the U.S. District Court for the Western District of Washington in Seattle

The reference to the proceedings before the U.S. District Court for the Western District of Washington in Seattle ("Seattle Proceedings") also helps to show the motives for Plaintiff's behavior. It is surprising that in the present case Plaintiff denies that a global (F)RAND rate was determined in the Seattle Proceedings and that the Seattle Proceedings also cover claims for damages (Plaintiff's submission dated 10 June 2013, p. 9).

Both parties expressed in the Seattle Proceedings that the Seattle decision was to be applied worldwide (cf. Defendants' brief dated 27 March 2013, p. 9 et seq. under IV). At this point, we would merely like to refer once again to the statement of the representative of Plaintiff's parent company:

> *"But, whatever the German court does, if it's your decision to do so, you will have the ability to say, 'I don't agree with a piece that the German court did, here's my ruling as to Germany.'* ***And if that means that Microsoft paid too much to get out of the way of a speeding train, then it has the claim to get the money back. And it gets the money back as an***

DAC13818907/3+ 109096-0588

# EXHIBIT F

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

───────────────────────────────────────────────────

MICROSOFT CORPORATION,                )
                                      )
                    Plaintiff,        ) CASE NO. C10-1823JLR
                                      )
v.                                    ) SEATTLE, WASHINGTON
                                      ) July 30, 2013
MOTOROLA, INC., et al.,               )
                                      ) *Daubert* hearing
                    Defendant.        )
                                      )

───────────────────────────────────────────────────

VERBATIM REPORT OF PROCEEDINGS
BEFORE THE HONORABLE JAMES L. ROBART
UNITED STATES DISTRICT JUDGE

───────────────────────────────────────────────────

APPEARANCES:

  For the Plaintiff:      ARTHUR HARRIGAN
                          RICHARD CEDEROTH
                          ANDREW CULBERT
                          DAVID PRITIKIN
                          CHRISTOPHER WION


  For the Defendant:      KATHLEEN SULLIVAN
                          WILLIAM PRICE
                          PHILIP McCUNE
                          RALPH PALUMBO (by telephone)


  Reported by:            NANCY L. BAUER, CCR, RPR
                          Federal Court Reporter
                          700 Stewart Street, Suite 17205
                          Seattle, WA 98101
                          (206) 370-8506
                          nancy_bauer@wawd.uscourts.gov

1   other -- the other piece, and the discussion the court was

2   just having -- in terms of whether Microsoft could get back

3   what it paid in, even though it doesn't know how much it

4   would have to pay in.

5       Two things on that piece:  One is, you know, counsel went

6   on to explain how, under factors that he did not articulate,

7   and that Judge Haedicke was unable to articulate that would

8   be unknown, the German court would decide under German law

9   how much Microsoft would owe, the proposition being that

10  maybe Microsoft then could get it back if it had paid in more

11  than that.

12      The issue really is, and I think the court touched on it

13  with the $4 billion piece, is that, would Microsoft be able

14  to get back from the deposits in Germany, however large they

15  may be, the difference between that payment and the payment

16  determined by the court here that's setting a worldwide rate.

17  There's no one that's prepared to sponsor the testimony, nor

18  is Motorola prepared to sponsor the testimony to say with any

19  certainty that that would have occurred.  And, again, the

20  only thing we know, the only data point that those in the

21  courtroom have, is that Microsoft offered to put a $300

22  million bond in place to forego the injunction, and Motorola

23  turned that down.  That's our only hard data.

24      That's all I have, Your Honor.

25          THE COURT:  Mr. Price, you get the last word, if you

28

1   want it.  Here's a wonderful opportunity for you to say that

2   Motorola is acquiescing the position that I set a worldwide

3   rate.

4           MR. PRICE:  I respectfully decline that.

5       Under the Orange Book procedure, the second alternative,

6   Microsoft would say, "We will deposit in escrow what you,

7   Motorola, say we should.  That way we can continue

8   operating."

9       Now, once we say, "Okay, deposit this amount," Microsoft

10  could say, "Ah, no, not going to happen.  We're not going to

11  pursue this route."

12      What is clear is -- both what's critical here is the

13  question of, did they consider any of this before making a

14  move?  Because I think it's a fair argument to say this would

15  be considered, if the reason was to avoid the injunction.

16  They may say it was dismissed out of hand.  Okay.  Fine.  It

17  would be nice to have someone say that.  But the jury can't

18  evaluate this at all unless they know what the procedure is,

19  and that's all Professor Haedicke is saying:  This is the

20  procedure, this is how it would have worked, they would have

21  got their money back if the court in Germany had said this is

22  too high and it's more than FRAND.  They could have avoided

23  an injunction altogether.

24      Then the question is, okay, what did Microsoft do in

25  deciding to move?  What factors did they consider?  We're