UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION, | CASE NO. C10-1823JLR |
| Plaintiff, | ORDER ON MOTIONS FOR JUDGMENT AS A MATTER OF LAW |
| v. | |
| MOTOROLA, INC., et al., | |
| Defendants. | |
| MOTOROLA MOBILITY, INC., et al., | |
| Plaintiffs, | |
| v. | |
| MICROSOFT CORPORATION, | |
| Defendant. | |

## I.   INTRODUCTION

Before the court are two motions:  (1) Defendant Motorola Mobility, LLC,

Motorola Solutions, Inc., and General Instrument Corp.'s (collectively, "Motorola") Rule

ORDER- 1

1  50(a) motion for judgment as a matter of law (Motorola Mot. (Dkt. # 904)); and (2)

2  Motorola's renewed Rule 50(a) motion for judgment as a matter of law (Motorola

3  Renewed Mot. (Dkt. # 905)).

4      This case was tried to a jury on the question of whether Motorola breached certain

5  contracts, and specifically its duty of good faith and fair dealing, with respect to licensing

6  patents to Plaintiff Microsoft Corporation ("Microsoft").

7      Motorola made both of these motions during trial—one at the close of Microsoft's

8  case-in-chief and the second at the close of all evidence.  The two motions are

9  substantively very similar.  In each, Motorola argues that Microsoft has presented

10  insufficient evidence for the jury to find for Microsoft on Microsoft's breach of contract

11  claims.  Having presided over the jury trial and reviewed the record, the governing law,

12  and the submissions of the parties, the court concludes that Motorola is not entitled to

13  judgment as a matter of law.  There was sufficient evidence presented at trial for a

14  reasonable jury to find for Microsoft.  This was true both after the close of Microsoft's

15  case-in-chief and at the close of evidence.  Considering itself fully advised, the court

16  DENIES both motions.

17                    **II.    BACKGROUND**

18      This is a breach of contract case between Microsoft and Motorola.  Microsoft

19  claims that Motorola has an obligation to license patents to Microsoft at a reasonable and

20  non-discriminatory ("RAND") rate, and that Motorola breached its RAND obligations.

21

22

1  (*See generally* Am. Compl. (Dkt. # 53).)  Microsoft sued Motorola for breach of contract

2  in this court in November, 2010.[1]  (*See id.*)

3        Motorola's RAND commitment arises out of its and Microsoft's relationship with

4  two international standard-setting organizations ("SSOs"), the Institute of Electrical

5  Electronics Engineers ("IEEE") and the International Telecommunication Union ("ITU").

6  These organizations create standards for use in designing and manufacturing technology

7  products.  These and other SSOs play a significant role in the technology market by

8  allowing companies to agree on common technological protocols so that products

9  complying with the standards will work together.

10        The standards at issue in this case involve wireless communications, commonly

11  known as "WiFi," and video coding technology.  More specifically, this case involves

12  two standards:  an IEEE wireless local area network ("WLAN") standard called the

13  "802.11 Standard" and an ITU[2] advanced video coding technology standard called the

14  "H.264 Standard."

15        Both of these standards incorporate patented technology.  Thus, in order for a

16  company to practice the standard, it is necessary for that company to utilize technology

17  that is covered by one or more patents.  Patents that are essential to the standard (in that

18  ──────────────

19        [1] This matter has a complex procedural history involving claims and counterclaims

20  relating to Microsoft's breach of contract claim.  Prior court orders provide a more complete
     procedural and factual history of the case with citations.  (*See* 2/27/12 Order (Dkt. # 188); 6/6/12

21  Order (Dkt. # 335); 10/10/12 Order (Dkt. # 465); 4/25/13 Order (Dkt. # 681).)

22        [2] The ITU developed the H.264 Standard jointly with two other SSOs—the International
     Organization for Standardization and the International Electrotechnical Commission.

1  they must be practiced to accomplish the standard) are called standard essential patents,

2  or "SEPs."  The existence of SEPs is a common problem in the world of technology

3  standards.  To deal with this problem, SSOs have devised a solution.  To make it easier

4  for companies to practice their standards, SSOs seek commitments from the owners of

5  SEPs to license their patents to standard-users on RAND terms.  Motorola owns patents

6  that are essential to the 802.11 and H.264 Standards and has committed to license them

7  on RAND terms.

8        On October 21, 2010, Motorola sent Microsoft a letter offering to license

9  Motorola's 802.11 SEPs.  Motorola offered to license its patents at what it considered the

10  RAND rate of 2.25 % of the price of the end product:

11        This letter is to confirm Motorola's offer to grant Microsoft a worldwide
        non-exclusive license under Motorola's portfolio of patents and pending
12        applications having claims that may be or become Essential Patent Claims
        (as defined in section 6.1 of the IEEE bylaws) for a compliant
13        implementation of the IEEE 802.11 Standards. . . . Motorola offers to
        license the patents under reasonable and non-discriminatory terms and
14        conditions ("RAND"), including a reasonable royalty of 2.25 % per unit for
        each 802.11 compliant product, subject to a grant back license under the
15        802.11 essential patents of Microsoft.  As per Motorola's standard terms,
        the royalty is calculated based on the price of the end product (e.g, each
16        Xbox 360 product) and not on component software (e.g., Windows Mobile
        Software).
17
   (10/21/10 Offer Ltr. (Dkt. # 79-5) at 2.)  On October 29, 2010, Motorola sent a similar
18
   letter offering to license its H.264 SEPs on similar terms.   The letter again offered a
19
   royalty rate of 2.25 % of the end product price:
20
21        Motorola offers to license the patents on a non-discriminatory basis on
        reasonable terms and conditions ("RAND"), including a reasonable royalty,
22        of 2.25 % per unit for each H.264 compliant product, subject to a grant
        back license under the H.264 patents of Microsoft, and subject to any

ORDER- 4

Motorola commitments made to JVT in connection with an approved H.264 recommendation.   As per Motorola's standard terms, the royalty is calculated based on the price of the end product (e.g., each Xbox 360 product, each PC/laptop, each smartphone, etc.) and not on component software (e.g., Xbox 360 system software, Windows 7 software, Windows Phone 7 software, etc.).

(10/29/10 Offer Ltr. (Dkt. # 79-6) at 2.)

Eleven days later, on November 9, 2010, Microsoft initiated this breach of contract action against Motorola based on Motorola's two offer letters, claiming that the letters breached Motorola's RAND commitments to the IEEE and the ITU.  (*See generally* Am. Compl.)  Microsoft alleged that Motorola's offer letters constituted a refusal to offer Motorola's SEPs on RAND terms.  (*Id.* ¶ 84.)  Microsoft also alleged that Motorola breached its RAND commitment by filing other lawsuits involving Motorola-owned SEPs which seek to enjoin Microsoft's implementation of the standards.  (*Id.* ¶ 85.)  In a previous order, the court held that these RAND commitments create enforceable contracts between Motorola and the respective SSO.  (2/27/12 Order (Dkt. # 188).)  The court has also held that Microsoft—as a standard-user—can enforce these contracts as a third-party beneficiary.  (*See id.*)  In a separate prior order, the court interpreted Motorola's commitments to the ITU and IEEE as requiring initial offers by Motorola to license its SEPs to be made in good faith.  (6/6/12 Order (Dkt. # 335) at 25.)  However, the court also held that initial offers do not have to be on RAND terms so long as a RAND license eventually issues.  (*Id.*; *see also* 10/10/12 Order (Dkt. # 465).)

In November 2012, the court conducted a bench trial to determine a RAND rate and range to assist the finder-of-fact in determining whether or not Motorola had

1  breached its RAND commitments.  On April 19, 2013, the court issued its Findings of

2  Fact and Conclusions of Law ("FFCL") under seal and then issued a public version, with

3  redactions, on April 25, 2013.  (*See* FFCL (Dkt. ## 673 (sealed), 681 (public).)  The

4  court's FFCL set a RAND rate and range for Motorola's 802.11 and H.264 SEP

5  portfolios.  (*See generally id.*)

6       Next, the case was tried to a jury to determine whether Motorola breached its

7  RAND obligations.  At trial, Microsoft contended that Motorola breached its RAND

8  obligations by (1) offering its 802.11 and H.264 patents at a rate that was not RAND; (2)

9  seeking injunctive relief for Microsoft's infringement of Motorola's SEPs; and (3) not

10  issuing a patent license to Microsoft's 802.11 chip supplier, Marvell.  At the close of

11  Microsoft's case-in-chief, Motorola made a motion for judgment as a matter of law under

12  Rule 50(a).  (*See* Motorola Mot.)  At the close of all evidence, Motorola renewed the

13  motion.  (*See* Renewed Mot.)

14  ### III.   ANALYSIS

15  **A.   Standard on a Rule 50(a) Motion**

16       Under Rule 50(a), a court should grant a motion for judgment as a matter of law if

17  "a reasonable jury would not have a legally sufficient evidentiary basis" to find for the

18  non-moving party:

19      (1) ***In General.***  If a party has been fully heard on an issue during a jury
trial and the court finds that a reasonable jury would not have a legally

20  sufficient evidentiary basis to find for the party on that issue, the court may:
    A.  resolve the issue against the party; and

21      B.  grant a motion for judgment as a matter of law against the party on a
claim or defense that, under controlling law, can be maintained or

22  defeated only with a favorable finding on that issue.

ORDER- 6

Fed R. Civ. P. 50(a).  The court must view the evidence in the light most favorable to the non-moving party and draw all inferences in the non-moving party's favor.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  The court should grant a Rule 50(a) motion only if it concludes that no reasonable jury could find in favor of the non-moving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (The Rule 50(a) standard "mirrors" the standard on a summary judgment motion, and the trial judge must direct a verdict if, under the governing law, "there can be but one reasonable conclusion as to the verdict."); *Santa Clara Valley Distrib. Co., Inc. v. Pabst Brewing Co.,* 556 F.2d 942, 944 (9th Cir. 1977).  Importantly, the court may not make credibility determinations or weigh the evidence.  *Reeves*, 530 U.S. at 150-51.  The court may not base its ruling on speculation, *see Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996), but must base it instead on facts and evidence.  *See McSherry v. City of Long Beach*, 584 F.3d 1129, 1136 (9th Cir. 2009).

**B.     Motorola's Motions**

At the outset, the court notes that Motorola's first motion is very similar to its second.  (*Compare* Motorola Mot. *with* Motorola Renewed Mot.)  In fact, it appears that there are very few differences between the two beyond a handful of stylistic changes and several different legal arguments.  (*Id.*)  For purposes of this order, the court considers all the legal arguments from both motions together.  Further, the court does not respond to each argument twice, finding that the evidence presented after Microsoft's case-in-chief

1  does not alter any of the court's rulings and, therefore, all of the rulings below apply to

2  both motions.

3  Motorola's motions are, in essence, an attempt to re-argue theories that Motorola

4  has already argued either to the jury or the court.  Put simply, Motorola and Microsoft

5  both made their cases to the jury, and after a seven-day trial there was enough evidence

6  on each side for the jury to decide for either party.  The court is not permitted to weigh

7  the evidence or make credibility determinations, and will not do so given the substantial

8  amount of evidence each side has marshaled on its behalf.  To rule in Motorola's favor

9  would require viewing the evidence in the light most favorable to Motorola, the moving

10  party.  This is the opposite of what the law requires.  *See Reeves*, 530 U.S. at 150-51.  For

11  this reason and for the reasons explained below, the court DENIES both of Motorola's

12  motions.

13  1.  <u>Good Faith Standard</u>

14  In ruling on these motions, the court is mindful of the fact that the jury was asked,

15  first and foremost, to determine whether Motorola breached its duty of good faith and fair

16  dealing in carrying out its contractual commitments to the IEEE and the ITU.[3]  (*See* Jury

17  Instructions (Dkt. # 908).)  Microsoft advanced three different theories of breach at trial,

18  but all of them ultimately circled back to the question of whether Motorola acted in good

19  

_____

20  [3] The jury instructions were broad enough to permit an argument for a more prototypical
(i.e., direct) breach of contract claim as well.  (*See* Jury Instructions (Dkt. # 908).)  However, the

21  court addressed this point in an earlier ruling (*see* 8/12/13 Order (Dkt. # 843) at 21-24
("Microsoft's claim is a claim for breach of the duty of good faith and fair dealing, and the court
will treat it as such going forward.")) and will not address it again here because one winning

22  theory for Microsoft (breach of the good faith duty) is sufficient to deny these motions.

faith in carrying out its contractual commitments.  Microsoft's theories were (1) that

Motorola's opening offer letters amounted to a breach of the good faith duty; (2) that

Motorola's conduct in seeking injunctive relief breached the good faith duty; and (3) that

Motorola breached the good faith duty through its conduct with respect to Marvell,

Microsoft's 802.11 chip supplier.  (*See* Microsoft's Rog. Resp. (Dkt. # 733-6) at 23-26.)

In addition, Microsoft argued that all of this conduct, considered as a whole, added up to

a course of conduct that breached the good faith duty.  To summarize:  for each and every

theory of breach, the jury was asked to analyze whether Motorola's conduct violated the

duty of good faith and fair dealing.  (*See* Jury Instructions at 22-24, 26, 29.)

Accordingly, to assist the jury, the court set forth the following standard by which

the jury was to judge Motorola's conduct and decide if it was in good faith.  (8/12/13

Order (Dkt. # 843) at 10-14.)  The court instructed the jury on this standard.  (*See* Jury

Instructions at 22-23.)  Thus, this is the operative standard under which Motorola's

sufficiency of the evidence claims must be judged:

> A duty of good faith and fair dealing is implied in every contract.
> *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991).  This duty
> requires the parties to a contract to cooperate with each other so that each
> may obtain the full benefit of performance, even if the parties have different
> requirements under the contract.  *Id.* (citing *Metro. Park Dist. of Tacoma v.
> Griffith*, 723 P.2d 1093, 1100 (Wash. 1986)).  However, this duty does not
> require a party to accept a material change in the terms of its contract.  *Id.*
> (citing *Betchard-Clayton, Inc. v. King*, 707 P.2d 1361, 1364 (Wash. Ct.
> App. 1985).  The implied duty of good faith and fair dealing arises out of
> the obligations created by a contract and only exists in relation to the
> performance of specific contract terms.  *Keystone Land & Dev. Co. v.
> Xerox Corp.*, 94 P.3d 945, 949 (Wash. 2004).  Thus, a party's obligation is
> only to perform the obligations imposed by the contract in good faith.
> *Barrett v. Weyerhauser Co. Severance Pay Plan*, 700 P.2d 338, 342 n.6
> (Wash. Ct. App. 1985).  There is no "free-floating" duty of good faith and

fair dealing that injects substantive terms into the parties' contract. *Id.*; *Keystone*, 94 P.3d at 949.

There is no one-size-fits-all definition of good faith and fair dealing. Rather, the duty varies somewhat with the context in which it arises. *See* RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. d. It may violate the duty of good faith and fair dealing to, for example, (1) evade the spirit of a bargain; (2) willfully render imperfect performance; (3) interfere with or fail to cooperate in the other party's performance; (4) abuse discretion granted under the contract; or (5) perform the contract without diligence. *Id.* This list is in no way exhaustive, and indeed it would be nearly impossible to create a complete catalogue of conduct that violates the duty of good faith and fair dealing. *Id.*

It is the fact finder's job—in this case the jury—to determine whether a party breached its duty of good faith and fair dealing. *See, e.g.*, *Columbia Park Golf Course, Inc. v. City of Kennewick*, 248 P.3d 1067, 1074 (Wash. Ct. App. 2011). Good faith performance of a contract requires being faithful to the agreed common purpose of the contract and performing consistently with the justified expectations of the parties. *Frank Coluccio Const. Co., Inc. v. King County*, 150 P.3d 1147, 1155 (Wash. Ct. App. 2007) (citing RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. a). On the other hand, bad faith performance involves conduct that violates community standards of decency, fairness, or reasonableness. RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. a; *G Four Bellingham, LLC v. Oishii Teriyaki, Inc.*, 2008 WL 176389, at *3 (Wash. Ct. App. 2008) (citing RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. a) (unpublished).

Washington law establishes that numerous considerations may inform a fact-finder's determination of whether the defendant's conduct violated the covenant of good faith and fair dealing. In particular, a review of state and federal case law reveals that a fact finder may consider: (1) whether the defendant's actions were contrary to the reasonable and justified expectations of other parties to the contract, *Scribner*, 249 F.3d at 909; *Frank Coluccio*, 150 P.3d at 1155 (citing RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. a); (2) whether the defendant's conduct would frustrate the purpose of the contract, *Aventa Learning, Inc. v. K12, Inc.*, 830 F. Supp. 2d 1083, 1101 (W.D. Wash. 2011) ("The duty prevents a contracting party from engaging in conduct that frustrates the other party's right to the benefits of the contract.") (citing *Woodworkers of Am. v. DAW Forest Prods. Co.*, 833 F.2d 789, 795 (9th Cir. 1987)); *Cavell v. Hughes*, 629 P.2d 927, 929 (Wash. Ct. App. 1981); (3) whether the defendant's

conduct was commercially reasonable, *Craig v. Pillsbury Non-Qualified Pension Plan*, 458 F.3d 748, 752 (8th Cir. 2006) (applying Washington law); *Vylene Enters., Inc. v. Naugles, Inc.*, 90 F.3d 1472, 1477 (9th Cir. 1996) (applying California law); (4) whether and to what extent the defendant's conduct conformed with ordinary custom or practice in the industry, *Curtis v. Northern Life Ins. Co.*, 2008 WL 4927365, at *6 (Wash. Ct. App. 2008) (unpublished); *Amerigraphics, Inc. v. Mercury Cas. Co.*, 107 Cal. Rptr. 3d, 321-23 (Cal. Ct. App. 2010); (5) to the extent the contract vested the defendant with discretion in deciding how to act, whether that discretion was exercised reasonably, *Craig*, 458 F.3d at 752; *Aventa*, 830 F. Supp. 2d at 1101; and (6) subjective factors such as the defendant's intent and motive. *See Scribner*, 249 F.3d at 910 ("[A] party can breach the duty of good faith and fair dealing by acting dishonestly."); *Cavell*, 629 P.2d at 929 (considering the "purpose," knowledge, and intent behind defendant's conduct to assess good faith); *Jones v. Hollingsworth*, 560 P.2d 348, 351-52 (1977) (considering subjective intent of defendant to determine whether duty of good faith and fair dealing was met with respect to a particular contract term vesting defendant with discretion).

The last consideration, subjective intent, is a subject of frequent dispute between the parties and so requires some elaboration. Several Washington cases have considered subjective factors in determining whether a party violated its duty of good faith and fair dealing. *See Cavell*, 629 P.2d at 929; *Hollingsworth*, 560 P.2d at 351-52. Thus, the court concludes that, under Washington law, these factors are relevant to the good faith inquiry. However, other cases have made it clear that bad motive does not equate to bad faith and good motive does not equate to good faith. *See, e.g.*, *Scribner*, 249 F.3d at 910 ("Dishonesty or an unlawful purpose is [not] a necessary predicate to proving bad faith."). To be more specific, bad motive or intent does not necessarily imply bad faith, *see Frank Coluccio*, 150 P.3d at 1155 (no bad faith if parties are faithful to agreed common purpose and perform consistently with the justified expectations of the other parties), and good motive or intent does not necessarily imply good faith, *Scribner*, 249 F.3d at 910 ("'[F]air dealing may require more than honesty.'" (citing RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. d)). Likewise, bad motive or intent is not a prerequisite to bad faith, *Scribner*, 249 P.2d at 910, nor is good motive or intent a prerequisite to good faith, *see Frank Coluccio*, 150 P.3d at 1155.

(8/12/13 Order at 10-14 (footnotes omitted).)

1    In light of this standard, the court observes that Motorola's motion is permeated by

2  a false distinction.  Throughout its motion, Motorola argues that there is insufficient

3  evidence for a reasonable jury to find (1) subjective bad faith or (2) objective bad faith,

4  treating these as separate topics and presenting different arguments with respect to each.

5  (*Id.* at 10-12.)  This is a non sequitur.  The jury was never instructed to make separate

6  findings of subjective or objective good faith.  (*See* Jury Instructions at 22-23.)  Rather,

7  as explained above, the jury was instructed to make a single finding of whether Motorola

8  breached its duty of good faith and fair dealing.  (*See id.*)  Indeed, subjective intent is one

9  of the factors the jury was instructed to consider in determining bad faith.  (*Id.* at 23.)

10  The jury was also instructed that subjective intent alone is not dispositive.  (*Id.* ("If you

11  consider subjective factors such as Motorola's intent or motive, you must be aware that

12  this is only one consideration and it need not dictate your final decision.  Bad motive or

13  intent does not necessarily imply bad faith, and good motive or intent does not

14  necessarily imply good faith.  Likewise, bad motive or intent is not a prerequisite to bad

15  faith, nor is good motive or intent a prerequisite to good faith.").)  Thus, Motorola's

16  decision to frame the issue in this way only confuses matters, and the court will not give

17  credence to this distinction going forward.

18    2.   Motorola's argument with respect to offer letters

19    Motorola's motion begins with an argument that no reasonable jury could

20  conclude that Motorola breached its good faith duty by sending the October 2010 offer

21  letters.  Specifically, Motorola argues that "Microsoft has not put forth sufficient

22  evidence from which a reasonable jury could find that Motorola breached the duty of

1   good faith and fair dealing." (Motorola Renewed Mot. at 10.) Motorola makes several

2   arguments in this regard. Motorola argues that (1) it followed industry custom and

3   practice by making an opening offer with an expectation that negotiations would follow;

4   (2) it did not frustrate the purpose of the contract because there is no "real-world

5   evidence" of "hold up," and in fact the evidence at trial showed that hold up is not a

6   problem in the real world; and (3) no reasonable jury could find that Motorola failed to

7   act in accordance with the reasonable expectations of the parties.

8         All of this reflects Motorola's interpretation of the evidence at trial and ignores the

9   evidence actually presented by Microsoft. Microsoft presented a substantial amount of

10  evidence on the subject of the offer letters breaching the good faith duty—indeed, it was

11  a major focus of Microsoft's presentation. Microsoft presented a substantial amount of

12  evidence supporting its theory that Motorola's actions did not conform with industry

13  custom and practice. (*See, e.g.*, 8/27/13 Tr. (DeVaan Testimony) 18:13-15; 8/27/13 Tr.

14  (Treadwell Testimony) 41:12-15; 8/28/13 Tr. (Gutierrez Testimony) 123:13-18, 121:18-

15  23, 144:20-1:45-9; 8/30/13 Tr. (Heiner Testimony) 160:7-161:3; 8/28/13 Tr. (Ochs

16  Testimony) 92:15-93:9; 8/27/13 Tr. (Dailey Testimony) 69:25-70:4; 8/29/13 Tr. (Murphy

17  Testimony) 164:15-165:14, 166:4-13); 8/28/13 Tr. (Glanz Testimony) 69:25-71:3, 72:19-

18  75:16.)

19        Microsoft also presented a substantial amount of evidence to support its theory

20  that Motorola's conduct frustrated the purpose of the IEEE and ITU contracts, including

21  evidence of hold up, (*see, e.g.*, 8/29/13 Tr. (Murphy Testimony) 138:12-143:8, 146:23-

22  147:10, 135:18-136:19, 169:18-170:17; 8/27/13 Tr. (Dailey Testimony) 123:18-23,

ORDER- 13

1   124:15-125:7, 125:23-126:11; 8/29/13 Tr. (Blasius Testimony) 107:16-19), and evidence

2   relating to "royalty stacking" (*see, e.g.*, 8/29/13 Tr. (Blasius Testimony) 108:21-25;

3   8/29/13 Tr. (Murphy Testimony) 160:9-20, 161:3-11, 154:22-25, 160:12-20; 8/27/13 Tr.

4   (DeVaan Testimony) 16:17-22; 8/27 13 Tr. (Treadwell Testimony) 39:19-22; 8/28/13 Tr.

5   (Gutierrez Testimony) 128:3-21.)  Motorola's argument that hold up does not exist in the

6   real world does not trump the evidence presented by Microsoft that hold up took place in

7   this case.

8          Finally, Microsoft presented a substantial amount of evidence relating to the

9   reasonable expectations of the parties.  (*See, e.g.*, 8/28/13 Tr. (Gutierrez Testimony) 61:5-

10  8, 183:24-184:16; 8/27/13 Tr. (DeVaan Testimony) 17:10-18:1; 8/27/13 Tr. (Treadwell

11  Testimony) 40:15-22; 8/30/13 Tr. (Heiner Testimony) 141:4-143:9; 8/29/13 Tr. (Blasius

12  Testimony) 108:7-9; 8/27/13 Tr. (Dailey Testimony) 63:3-6, 63:22-24.)

13         Further, Motorola's arguments ignore the fact that the good faith standard

14  articulated above is multi-faceted and no single factor is dispositive.  (*See* Jury

15  Instructions at 22-23.)  Thus, even if Microsoft's evidence were somehow lacking with

16  respect to industry custom and practice, frustration of purpose, and the reasonable

17  expectations of the parties, the jury could still potentially find a breach of the good faith

18  duty because Microsoft presented a substantial amount of evidence relating to the other

19  factors.  (*See, e.g.*, 8/29/13 Tr. (Murphy Testimony) 139:12-140:2, 142:6-19 (commercial

20  reasonableness); 8/28/13 Tr. (Gutierrez Testimony) 128:22-25, 131:12-14 (commercial

21  reasonableness); *see also* Microsoft Resp. (Dkt. # 916) at 16-17 (unreasonable exercise of

22

1   discretion); *id.* at 17-19 (subjective intent).  Accordingly, and in light of the evidence

2   presented at trial, the court rejects Motorola's arguments relating to offer letters.

3         3.   <u>Motorola's argument with respect to injunctive relief</u>

4         Motorola's next set of arguments focuses on Microsoft's claim that Motorola

5   violated its good faith duty by seeking injunctive relief to enforce its SEPs.  Motorola

6   frames its argument in terms of sufficiency of the evidence:  "Microsoft has not presented

7   evidence sufficient for a jury to find that Motorola's seeking of injunctions shows a lack

8   of good faith."  (Motorola Renewed Mot. at 15.)  However, many of Motorola's

9   arguments address issues of law that Motorola has already unsuccessfully argued to the

10  court.  The court addresses these arguments first.

11        First, Motorola argues that it did not waive its right to seek injunctive relief by

12  agreeing to license its patents on RAND terms, that the availability of injunctive relief

13  was an open question of law during the time frame relevant to this action, and that other

14  courts are now finding that injunctive relief is available to enforce SEPs.  (Motorola

15  Renewed Mot. at 18-19.)  Motorola raised these same arguments in its motion for

16  summary judgment.  (Motorola SJ Mot. (Dkt. # 720) at 10-14.)  The court rejected them

17  all in ruling on that motion.  (8/12/13 Order at 20-25.)  The court recognized that there is

18  jurisprudential debate about the availability of injunctive relief to enforce SEPs.  (*Id.* at

19  17.)  Accordingly, the court did not instruct the jury that Motorola had waived its right to

20  seek injunctive relief, nor did it incorporate any of the equivocal jurisprudence regarding

21  availability of injunctive relief in the SEP context.  (*See* Jury Instructions.)  Instead, the

22  court instructed the jury that Motorola had an obligation to license its SEPs on RAND

1  terms, and that, in marching toward a RAND license, Motorola had an obligation to

2  comply with the duty of good faith and fair dealing.  (*See id.* at 29.)  It was left to the jury

3  to determine whether Motorola's actions in seeking injunctive relief violated the duty of

4  good faith and fair dealing.  (*See id.*)  Now, Motorola argues, in effect, that the court

5  should revisit this ruling and hold that Motorola did not waive its right to seek injunctive

6  relief.  The court stands by its earlier ruling.  Motorola's arguments are meritless at this

7  stage and the court rejects them.

8          Next, Motorola argues that seeking injunctive relief cannot be the basis for a claim

9  for breach of the duty of good faith and fair dealing because there is no "free floating"

10  duty of good faith.  Motorola raised this argument in its summary judgment motion

11  (Motorola SJ Mot. at 11), and the court rejected it at that time (8/12/13 Order at 20-25).

12  It is true there is no free floating duty of good faith, as the court previously explained and

13  instructed the jury:

14          The implied duty of good faith and fair dealing arises out of the obligations
        created by a contract and only exists in relation to the performance of
15          specific contract terms.  *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d
        945, 949 (Wash. 2004).  Thus, a party's obligation is only to perform the
16          obligations imposed by the contract in good faith.  *Barrett v. Weyerhauser
        Co. Severance Pay Plan*, 700 P.2d 338, 342 n.6 (Wash. Ct. App. 1985).
17          There is no "free-floating" duty of good faith and fair dealing that injects
        substantive terms into the parties' contract.  *Id.*; *Keystone*, 94 P.3d at 949.

18

19  (8/12/13 Order at 10-11.)  Motorola argues that the good faith duty does not reach its

20  efforts to obtain injunctive relief because there are no terms in Motorola's contracts with

21  the IEEE and the ITU stating that Motorola may not seek injunctive relief.  (Motorola

22  Mot. at 16.)  Motorola's argument misapprehends the court's prior ruling.  The court held

ORDER- 16

1   that the RAND commitment was the contract term to which the good faith duty attached.

2   (8/12/13 Order at 23-24.)  In other words, through its contracts, Motorola committed to

3   license its SEPs on RAND terms; in carrying out that commitment, i.e., in marching

4   toward a RAND license, Motorola was required to comply with the duty of good faith

5   and fair dealing:

6       Motorola committed to license its SEPs on RAND terms but, even under
        the confines of its contracts, it had discretion in determining an overall
7       course of conduct in carrying out the RAND commitment:  there was not
        one single permissible way for it to arrive at a RAND license.  Thus, the
8       question is whether Motorola exercised that discretion reasonably, i.e.,
        whether it complied with its duty of good faith and fair dealing in carrying
9       out its obligation to license on RAND terms.

10  (*Id.*)  At trial, Microsoft argued that Motorola's conduct in seeking injunctive relief was a

11  violation of its obligation to march toward a RAND license in good faith.  The court

12  agreed that this was a valid legal theory and instructed the jury accordingly.  In other

13  words, the court has already rejected Motorola's argument.  The court does so again now.

14      Next, Motorola makes a number of arguments that it already made to the jury.

15  Motorola argues that Microsoft sued Motorola first, that Microsoft was not a "willing

16  licensee," that there was no hold up because any injunction would require the approval of

17  a judge, and that Microsoft refused to negotiate toward a RAND license.  (Motorola

18  Renewed Mot. at 20-21.)  These are all arguments that Motorola made at trial.  Motorola

19  contends that, in light of these arguments, no reasonable jury could find a breach of the

20  good faith duty.  (*Id.*)  However, Microsoft presented a substantial amount of evidence at

21  trial in support of the conclusion that Motorola's pursuit of injunctive relief violated its

22  good faith duty.  (*See, e.g.*, 8/29/13 Tr. (Murphy Testimony) 125:11-127:2; 8/28/13 Tr.

1   (Gutierrez Testimony) 61:9-13, 149:13-150:5, 154:24-155:23, 155:1-152:10, 156:9-16;

2   8/27/13 Tr. (Dailey Testimony) 124:15-125:7; 8/30/13 Tr. (Heiner Testimony) 150:23-

3   151:17; 8/29/13 Tr. (Blasius Testimony) 111:14-112:6; 9/3/13 Tr. (Killough Testimony)

4   13:3-15:10.)  Microsoft certainly presented enough evidence that a jury would be

5   justified in reaching a verdict in Microsoft's favor.  To decide otherwise would require

6   weighing the evidence, making credibility determinations, and accepting Motorola's

7   version of the facts as true.  On a Rule 50(a) motion, the court is not permitted to do this

8   and must construe all facts in the light most favorable to the non-moving party.  *Reeves*,

9   530 U.S. at 150-51.  Accordingly, the court rejects these arguments.

10      Motorola's final argument with respect to injunctive relief also fails.  Motorola

11  argues, in cursory fashion, that "Microsoft has not pleaded that any actions after the filing

12  of the injunctions in July 2011 constitute a breach."  (Motorola Renewed Mot. at 21.)

13  The court addressed a similar argument in its summary judgment order and rejected it:

14          The court disagrees with Motorola.  First, in February 2011,
        Microsoft filed an amended complaint that included the allegation that
15      Motorola breached its RAND commitment by filing lawsuits that seek to
        enjoin Microsoft's implementation of the standardized technology.  (Am.
16      Compl. ¶ 85.)  Microsoft further alleged in its amended complaint that
        Motorola is not entitled to exclude or enjoin Microsoft from using the
17      H.264 and 802.11 standards.  (*Id.*)  Thus, Motorola was on notice from this
        point forward of Microsoft's theory that seeking injunctive relief
18      constituted a breach of the RAND commitment.  Second, in the RAND
        context, Motorola's argument that conduct relevant to a breach must take
19      place before or at the time of the filing of an action makes little sense.  As
        discussed above, in certain circumstances seeking injunctive relief may
20      constitute a breach of the RAND commitment, whereas in other
        circumstances such conduct may be proper.  The timing of when a party
21      seeks injunctive relief in a separate forum relative to a pending action is
        germane to whether that party acted in bad faith in seeking such relief.  In
22      other words, it may very well be the case that seeking injunctive relief

absent a pending lawsuit is good faith, whereas seeking the same relief
during the pendency of litigation over a RAND rate is bad faith.

(8/12/13 Order at 25-26.)  The court rejects Motorola's new argument on these same

grounds.  Specifically, the court rejects Motorola's argument because "Motorola was on

notice from [February 2011] forward of Microsoft's theory that seeking injunctive relief

constituted a breach of the RAND commitment" and because "in the RAND context,

Motorola's argument that conduct relevant to a breach must take place before or at the

time of the filing of an action makes little sense."  (*Id.*)  Motorola makes no valid

arguments to rebut the logic of this earlier ruling.

Accordingly, and in light of the evidence presented at trial, the court rejects

Motorola's arguments relating to injunctive relief.

4.  <u>Motorola's argument with respect to Marvell</u>

Motorola's next set of arguments focuses on Microsoft's claim that Motorola

violated its good faith duty by refusing to grant a license to Marvell, Microsoft's 802.11

chip supplier.  (Motorola Renewed Mot. at 21-24.)  Motorola argues that Microsoft lacks

standing to make arguments based on Marvell (*id.* at 21), and that Microsoft did not

produce enough evidence at trial for a reasonable jury to find for Microsoft based on this

claim (*id.* at 21-24).

First, the court holds that Motorola's standing argument is not a sufficient basis to

grant this motion.  Motorola's argument consists of one short paragraph (*see id.* at 21),

and Microsoft does not respond to it other than to say it is "irrelevant."  (Microsoft Resp.

at 8 n.1.)  As Motorola points out, the Supreme Court has held that "even when the

1  plaintiff has alleged injury sufficient to meet the 'case or controversy'

2  requirement . . . the plaintiff generally must assert his own legal rights and interests, and

3  cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v.*

4  *Seldin*, 422 U.S. 490, 499 (1975).  However, it is doubtful that this doctrine is relevant

5  here.  Microsoft is not asserting Marvell's legal rights or interests or making any claims

6  on its behalf.  Rather, Microsoft argues that Motorola's conduct towards Marvell (which

7  involved Microsoft) is evidence that Motorola acted in bad faith towards Microsoft.  The

8  court explained this concept in its summary judgment order when it rejected a similar

9  argument by Motorola:

10        [T]he RAND commitment obligates Motorola to grant a RAND
11     license to Microsoft for Motorola's SEPs.  Motorola must act in good faith
       in attempting to reach the RAND license it is obligated to provide.  The
       question for the jury is whether Motorola breached this good faith
12     obligation by its actions.  In this case, the court understands that Microsoft
       will argue a theory of breach that Motorola's course of conduct over time
13     demonstrates a breach of the good faith duty.  Indeed, where the contract at
       issue requires the SEP owner to grant a RAND license but leaves the SEP
14     owner and implementer discretion in performance of that contract, the fact
       finder may need to examine the actions of the parties over the course of the
15     negotiation to ultimately determine if a party acted in bad faith.

16        Here, Microsoft contends that Motorola made a licensing offer to
       Marvell that explicitly excluded only Microsoft as an end purchaser of
17     Marvell products.  Presumably, Microsoft will argue that Motorola's offer
       to Marvell is evidence that Motorola did not want to grant Microsoft a
18     RAND license. . . .  The court concludes that this evidence may form at
       least part of the basis for the jury to decide whether Motorola acted in bad
19     faith.

20  (8/12/13 Order at 35-36.)  Thus, Microsoft is not asserting Marvell's rights and interests,

21  it is merely presenting evidence that tends to show Motorola's bad faith.  The court's

22  decision to allow Microsoft to make this argument reflects the fact that Motorola's course

ORDER- 20

1    of conduct in marching toward a RAND license (i.e., the course of conduct subject to the

2    good faith duty) may be complicated and multi-faceted and may involve third parties like

3    Marvell.  In any event, this argument does not form a sufficient basis for granting

4    Motorola's motion for the reasons explained with respect to Motorola's second argument.

5         Motorola's second argument is that no reasonable jury could find a breach of the

6    good faith duty based on Motorola's conduct vis-à-vis Marvell.  The court notes, first,

7    that Microsoft introduced ample evidence at trial on the topic of Marvell.  However, the

8    court will not opine whether a reasonable jury could, or would, find a breach of the good

9    faith duty based on the Marvell evidence alone.  The jury was not asked to do this.

10   Moreover, the court finds that Microsoft presented so much evidence with respect to

11   opening offers, injunctive relief, and Motorola's overall course of conduct that a

12   reasonable jury could find a breach of the good faith duty without considering any

13   Marvell evidence at all.  (*See, e.g.*, 8/29/13 Tr. (Murphy Testimony) 125:11-127:2,

14   135:18-136:19, 138:12-143:8, 146:23-147:10, 164:15-165:14, 166:4-13, 169:18-170:17;

15   8/28/13 Tr. (Gutierrez Testimony) 61:5-13, 121:18-23, 123:13-18, 128:3-21, 128:22-25,

16   131:12-14, 144:20-145:9, 149:13-150:5, 154:24-155:23, 155:1-152:10, 156:9-16, 183:24-

17   184:16; 8/27/13 Tr. (Dailey Testimony) 63:3-6, 63:22-24, 69:25-70:4, 124:15-125:7,

18   123:18-23, 124:15-125:7, 125:23-126:11; 8/30/13 Tr. (Heiner Testimony) 141:4-143:9,

19   150:23-151:17, 160:7-161:3; 8/29/13 Tr. (Blasius Testimony) 107:16-19, 108:7-9,

20   108:21-25, 111:14-112:6; 9/3/13 Tr. (Killough Testimony) 13:3-15:10; 8/27/13 Tr.

21   (DeVaan Testimony) 16:17-22, 17:10-18:1, 18:13-15; 8/27/13 Tr. (Treadwell Testimony)

22   39:19-22, 40:15-22, 41:12-15; 8/28/13 Tr. (Ochs Testimony) 92:15-93:9; 8/28/13 Tr.

1   (Glanz Testimony) 69:25-71:3, 72:19-75:16.)  Accordingly, the court will not rule on

2   Motorola's Marvell argument, finding it to be irrelevant.

3        5.  Motorola's argument with respect to overall course of conduct

4        Next, Motorola argues, in one short paragraph, that Microsoft did not elicit

5   sufficient evidence for a reasonable jury to find that Motorola's overall course of conduct

6   was a breach of the good faith duty.  (Motorola Renewed Mot. at 24.)  As discussed

7   above, the court holds that a reasonable jury could find a breach of the good faith duty

8   with respect to either opening offers or injunctive relief.  Logically, then, a reasonable

9   jury could also find that these actions combined amount to a breach.  The court rejects

10  Motorola's argument.

11       6.  Motorola's argument with respect to damages

12       Last, Motorola argues that Microsoft did not prove damages at trial.  (Renewed

13  Mot. at 24-30.)  Motorola makes two major contentions in this regard:  first, as a legal

14  matter, Motorola contends that Microsoft is not entitled to recover attorney's fees as

15  damages.  (*Id.*)  Second, as a factual matter, Motorola contends that Microsoft did not

16  produce enough evidence for a reasonable jury to conclude that Microsoft suffered

17  damages.  (*Id.*)

18       The court has already ruled against Motorola on the question of attorney's fee

19  damages.  The court settled this question in its summary judgment order:

20         [U]nder the "American rule," a party may not recover attorney's fees
          either as costs or as an element of damages unless a contractual, statutory,
21         or equitable exception applies.  *City of Seattle v. McCready*, 931 P.2d 156,
          160-61 ("[A]ttorney's fees are not available as *costs or damages* absent a
22         contract, statute, or recognized ground in equity.") (emphasis in original).

ORDER- 22

Neither party argues that there is a contractual or statutory ground for allowing attorney's fees in this case, so the court turns to recognized exceptions in equity.

The Washington Supreme Court has recognized four major equitable exceptions to the American rule:   (1) the common fund exception; (2) actions by a third person subjecting a party to litigation; (3) bad faith or misconduct of a party; and (4) dissolving wrongfully issued temporary injunctions or restraining orders.  *Id.* at 160.  These exceptions are to be construed narrowly.  *Id.* at 162.

. . .

Microsoft argues that the court should apply an exception that has not yet been recognized in Washington:  the exception for violation of a covenant not to sue.  (Microsoft Resp. at 24-25.)  The court agrees.  This exception applies when one party agrees not to sue the other but then does anyway.  *See, e.g.*, *Anchor Motor Freight, Inc. v. Int'l Bhd. of Teamsters, Local Union No. 377*, 700 F.2d 1067, 1072 (6th Cir. 1983); *See* Dan B. Dobbs, LAW OF REMEDIES, § 310(3), at 406.  When this happens, the primary form of damages flowing from the breach will likely be attorney's fees, and it would be inequitable to deprive the aggrieved party of those damages.  *See Anchor Motor Freight*, 700 F.2d at 1072; *Widener v. Arco*, 717 F. Supp. 1211, 1217 (N.D. Tex. 1989).  Thus, courts interpret a covenant not to sue as an implied agreement to protect the other party from the costs of litigation and decline to blindly apply the American rule.  *See Anchor Motor Freight*, 100 F.2d at 1072; *Widener v. Arco*, 717 F. Supp. at 1217; Dobbs, LAW OF REMEDIES, § 310(3), at 406.  While this exception has been accepted in many of our nation's courts, it has been rejected in others.  *See Bunnett v. Smallwood*, 793 P.2d 157 (Colo. 1990) (rejecting exception under Colorado law after reviewing issue in depth); *Gruver v. Midas Intern. Corp.*, 925 F.2d 280, 283-84 (9th Cir. 1991) (predicting that Oregon courts would reject exception).  It appears that no Washington case has addressed the issue.

Before doing so in this case, it is necessary to understand how the exception would apply in the RAND context.  The argument for the exception's application is simple:   as explained above, in certain circumstances it may violate the duty of good faith and fair dealing for a SEP holder to seek an injunction to enforce a RAND-committed patent.  Under those circumstances, the SEP holder has effectively agreed not to sue implementers for injunctive relief.  Thus, under those circumstances and those circumstances only, the RAND commitment is analogous to a

covenant not to sue for injunctive relief, and the implementer may recover attorney's fees as an element of damages in the bad faith action. This argument makes sense. However, it only works if, in fact, Washington courts would recognize an exception to the American rule for violation of a covenant not to sue.

The court predicts that, were a Washington court to consider this exception in the context of RAND, it would recognize it. There are several reasons why this is so. First, if there is one unifying principle underlying Washington's different equitable exceptions to the American rule, it is that they all involve a wrongful act by the defendant that forces the other party to defend litigation. *See McCready*, 931 P.2d at 160 (listing exceptions); *cf. Flint v. Hart*, 917 P.2d 590, 598 (Wash. Ct. App. 1996) ("An equitable ground exists 'when the natural and proximate consequences of a wrongful act by defendant involve plaintiff in litigation with others . . . .'"). Thus, it is reasonable to conclude that any newly-recognized exception would follow this same pattern. In the RAND context, where the defendant is alleged to have breached its duty of good faith and fair dealing, a wrongful act is alleged and attorney's fees are a natural and proximate consequence of that act. That alone is not enough to justify an award of attorney's fees, but it does suggest that Washington courts would recognize a narrow equitable exception in this limited scenario.

Second, many of the justifications other courts have relied on in rejecting the covenant-not-to-sue exception simply do not apply in the RAND context. For example, the court in *Bunnett* reasoned that it would not be inequitable to deny attorney-fee damages because "the potential legal costs" of enforcing a covenant not to sue were foreseeable and the party enforcing it receives a benefit commensurate to the cost. 793 P.2d at 161. This may be true with respect to ordinary two-party contracts, but RAND litigation is a different animal. It is one thing to require a party to assert a covenant not to sue as a defense to a run-of-the-mill lawsuit. It is another thing entirely to force a party like Microsoft to defend multiple injunction actions throughout the world, asserting its defense in a legal landscape that is far from well-travelled, after Motorola has already committed to license its patents on RAND terms. This concern is especially valid in light of the fact that standard implementers practice numerous SEPs, exposing them to litigation by a vast number of SEP holders. Thus, in the RAND context, the legal costs are not foreseeable at all and the implementer does not receive a benefit commensurate with the cost. A Washington court would recognize this logic.

ORDER- 24

1        Finally, the exception makes particular sense in light of the purpose
of the RAND commitment, which is to encourage widespread adoption of
2   the standard.    Widespread adoption would be discouraged if standard
implementers were forced to defend injunctive relief claims brought in bad
3   faith with no possibility of recovering the attorney's fees associated with
doing so.  Potential implementers would be less likely to adopt the standard
4   if doing so would expose them to bad faith injunctive relief claims and they
were forced to absorb the cost of defending themselves.  Conversely, faced
5   with no legal consequences, SEP holders would not think twice about
bringing claims for injunctive relief (even in bad faith) to gain leverage in
6   licensing negotiations.  As discussed above, standard implementers practice
many patents and expose themselves to lawsuits from a substantial number
7   of SEP holders.  In this unique context, it would not be equitable to prohibit
the award of attorney's fees as an element of damages.  Accordingly, the
8   court concludes that Washington courts would recognize an exception to
the American rule where seeking injunctive relief to enforce a RAND-
9   committed patent is found to be a violation of the duty of good faith and
fair dealing.

10

        This conclusion is limited to this context and will require certain
11   safeguards at trial.  In particular, the court is mindful of the fact that
attorney's fees are only recoverable as damages under this framework if
12   Motorola's efforts to seek injunctive relief are in bad faith.  Thus, it will be
necessary to instruct the jury that it may not award attorney's fees as
13   damages unless it finds that Motorola violated its duty of good faith and
fair dealing specifically by seeking injunctive relief.  If the jury finds only
14   that Motorola's general course of conduct, but not its efforts to seek
injunctive relief, violated the good faith duty, attorney's fees will be
15   unavailable as damages.  The court will prepare a verdict form requiring the
jury to indicate whether it finds that Motorola's efforts to seek injunctive
16   relief, specifically, were in violation of its good faith duty in addition to
more general inquires relevant to Microsoft's other theories of breach.

17
(8/12/13 Order at 26-33 (footnotes omitted).)  Having addressed this issue before, the
18
court will not address it again.
19
        Motorola's second argument also fails.  Motorola argues that Microsoft "failed to
20
present evidence" that Motorola's actions caused Microsoft to move its European
21
distribution facility from Germany to the Netherlands.  (Motorola Renewed Mot. at 28.)
22

ORDER- 25

1    This is a frivolous contention.  Microsoft did present this evidence at trial.  Indeed,

2    Microsoft presented sufficient evidence for a reasonable jury to conclude that Microsoft

3    suffered damages.  (*See, e.g.*, 8/29/13 Tr. (Davidson Testimony) 68:6-13, 69:8-13, 71:18-

4    20, 83:1-4; 8/27/13 Tr. (Treadwell Testimony) 56:19-57:12; 8/30/13 Tr. (Menenberg

5    Testimony) 94:26-116:8.)  The court must consider this evidence in the light most

6    favorable to Microsoft, and accordingly rejects Motorola's argument.  *See Reeves*, 530

7    U.S. at 150-51.  The court also rejects Motorola's sufficiency of the evidence argument

8    regarding attorney's fee damages.  (Motorola Renewed Mot. at 29-30.)  Microsoft

9    presented evidence with respect to all of its claimed attorney fee damages, and the

10   evidence was sufficient for a reasonable jury to find in Microsoft's favor.  (*See, e.g.*,

11   9/3/13 Tr. (Killough Testimony) 21:10-36:21, Ex. 6651-56, 6658-59, 6339-59, 6187-

12   6196, 6179, 6180, 6182, 6186, 6202-10, 6212, 6608; 8/28/13 Tr. (Gutierrez Testimony)

13   153:17-154:9.)

14          Last, the court rejects two minor arguments that Motorola makes almost in

15   passing.  Motorola argues, in a single paragraph, that "undisputed evidence shows that

16   Microsoft failed to mitigate its damages."  (Motorola Renewed Mot. at 30.)  Mitigation is

17   a defense for which Motorola has the burden of proof.  *Bernsen v. Big Bend Elec. Co-op,*

18   *Inc.*, 842 P.2d 1047, 1052 (Wash. Ct. App. 1993) ("The burden of proving failure to

19   mitigate is on the party whose wrongful conduct caused the damage.").  The court has

20   examined the evidence presented at trial by Motorola regarding mitigation (*see, e.g.*,

21   8/29/13 Tr. (Davidson Testimony) 83:25-84:10; 9/3/13 Tr. (Roberts Testimony) 65:20-

22   22, 201:8-12, 17-18) and, viewing that evidence in the light most favorable to Microsoft,

ORDER- 26

1  *Reeves*, 530 U.S. at 150-51, concludes that a reasonable jury could conclude that

2  Motorola has not met its burden of proof.  This is sufficient to reject this argument even

3  without considering any evidence presented by Microsoft on this topic.

4      The court also rejects Motorola's contention that Motorola Solutions is not liable

5  for damages caused by the German action.  (*See* Motorola Mot. at 30.)  Once again, this

6  argument is presented in one short paragraph, giving the court little authority or argument

7  to assist it in properly considering the motion.  (*See id.*)  However, the court concludes

8  that, in the context of a Rule 50(a) motion, Motorola's argument must be rejected.  The

9  court should grant a Rule 50(a) motion only if it concludes that no reasonable juror could

10  find in favor of the non-moving party.  *Anderson*, 477 U.S. at 250.  Here, a reasonable

11  juror could conclude that Motorola Solutions is liable for damages based on the German

12  action.  As an initial matter, it must be remembered that throughout this litigation and in

13  front of the jury, Motorola has consistently referred to itself simply as "Motorola" even

14  though there are technically three separate entities under that umbrella term.  Motorola

15  has made some efforts to distinguish between the three different Motorola entities, but, in

16  general, has lumped all three together and referred to them as one.  This supports a

17  waiver argument.  However, the court declines to rule on a waiver argument because a

18  reasonable jury could conclude that Motorola Solutions is liable for costs incurred as a

19  result of the German action.  Put simply, the evidence presented at trial supports a finding

20  that all of Motorola's conduct in this case was interconnected, and that all three entities

21  were involved in an interconnected pattern of behavior that violated the duty of good

22  faith and fair dealing.  More specifically, Microsoft presented evidence at trial that

ORDER- 27

1    Motorola sought injunctions in Germany in order to hold up Microsoft and gain leverage

2    in licensing negotiations.  (*See, e.g.*, 8/29/13 Tr. (Murphy Testimony) 125:11-127:2;

3    138:12-143:8, 146:23-147:10, 135:18-136:19, 169:18-170:17; 8/28/13 Tr. (Gutierrez

4    Testimony) 154:24-155:23, 156:9-16; 8/27/13 Tr. (Dailey Testimony) 125:23-126:11;

5    8/29/13 Tr. (Blasius Testimony) 107:16-19.)  Those licensing negotiations were being

6    conducted on behalf of all Motorola entities, and a reasonable jury could easily conclude

7    that all Motorola entities (or one person acting on behalf of all Motorola entities) were

8    involved in the strategy of "holding up" Microsoft.  The court must view the evidence in

9    the light most favorable to Microsoft, *Reeves*, 530 U.S. at 150-51, and, doing so,

10   concludes that a reasonable jury would be justified in reaching this conclusion and

11   holding all Motorola entities liable for the consequences of Motorola seeking injunctive

12   relief in Germany.  The court finds that the jury could reach this conclusion irrespective

13   of which party was actually named as a plaintiff in the German action.  Accordingly, the

14   court rejects this argument and concludes that Motorola is not entitled to judgment as a

15   matter of law with respect to damages.

16   //

17   //

18   //

19   //

20   //

21   //

22   //

ORDER- 28

1

**IV.    CONCLUSION**

2         For the foregoing reasons, the court DENIES Motorola's motion for judgment as a

3 matter of law under Rule 50(a) (Dkt. # 904) based on the evidence presented at the close

4 of Microsoft's case-in-chief.  The court also DENIES Motorola's renewed motion for

5 judgment as a matter of law under Rule 50(a) (Dkt. # 905) based on the evidence

6 presented at the close of all evidence.

7         Dated this 24th Day of September, 2013.

8

9         _____

10        JAMES L. ROBART
          United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 29