# EXHIBIT B

```
 1                  UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF WASHINGTON
 2                          IN SEATTLE

 3     ------------------------------------------------------

 4     MICROSOFT CORPORATION,        )
                                     )
 5                 Plaintiff,        )   No. C10-1823JLR
                                     )
 6        v.                         )
                                     )
 7     MOTOROLA, INCORPORATED,       )
                                     )
 8                 Defendant.        )

 9
       ------------------------------------------------------
10
                           MARKMAN HEARING
11
       ------------------------------------------------------
12
                 BEFORE THE HONORABLE JAMES L. ROBART
13                 UNITED STATES DISTRICT COURT JUDGE

14                          March 9, 2012

15     APPEARANCES:

16     For the Plaintiff:        Richard A. Cederoth
                                 SIDLEY AUSTIN
17                               Arthur Harrigan
                                 DANIELSON HARRIGAN LEYH &
18                               TOLLEFSON

19     For the Defendant:        Jesse J. Jenner
                                 Gabrielle Elizabeth Higgins
20                               ROPES & GRAY
                                 Ralph H. Palumbo
21                               SUMMIT LAW GROUP

22     Also Present:            Christopher Wion
                                Douglas Lewis
23                              Philip McCune
                                Andy Culbert
24                              David Pritikin
                                Herman Webley
25                              Matthew Clements
                                Ian Brooks
```

1    news, we have eliminated seven of the ten terms, we

2    appreciate you doing that, but please don't do it the day

3    of the hearing.

4        I guess I will order counsel to meet and really confer

5    on claim terms in the near future, because you have

6    another Markman hearing coming up in June.  And if you do

7    that to us again, you are going to have a very unhappy

8    judge, and an even more unhappy clerk.

9        Secondly, it is just a waste of the resources of the

10   court.  We do not have resources to waste.

11       That June date is somewhat up in the air, in that I do

12   not want you to do another ten terms until we get these

13   done.  So we will try and get these ten processed as

14   quickly as we can, given that I have opened you up for

15   further briefing.

16       The last topic then that I thought we would talk about

17   is, I am happy to hear your constructive proposals on RAND

18   terms, on how to move that forward.  Mr. Jenner, you said

19   you had some thoughts on that.  I'm not sure who is going

20   to speak for the parties.

21           MR. JENNER:  I think Mr. Cederoth had some

22   comments, but as your Honor might imagine, so do I.  I

23   would be glad to be heard on that.

24           MR. HARRIGAN:  I will be the one talking about

25   that, your Honor.  I am ready to do so now, if you wish.

1      THE COURT:  Mr. Harrigan, always nice to hear you

2  talk.

3      MR. HARRIGAN:  Well, the court said something

4  earlier about a potential opening in May.  My basic

5  message is, yes, please.  We would like to have this

6  mini-trial happen in May.  We think there should be no

7  reason why it can't happen in May.

8      The RAND issues that are presented here overlap very

9  significantly with issues that have already been presented

10  in the ITC case.  The experts have filed reports and

11  testified, the witnesses' depositions have been taken.  In

12  fact, we could, I believe, agree to have that record used

13  in part in this case, to the extent it has bearing.

14      Anyway, the bottom line is, Microsoft would be

15  prepared to proceed on that basis, and sit down in the

16  next few days with Motorola and work out a schedule that

17  would accommodate a date in May.

18      We actually came in here this morning, your Honor,

19  with the intention of asking the court for permission to

20  file a motion, which we understand that's what we need to

21  do.  So we are about to do that.  And this May date would

22  greatly mitigate the problem that we were going to be

23  addressing in the motion we were going to ask the court to

24  allow us to file, which is an anti-suit motion relating to

25  the imminent potential for an injunction to be entered

1  that literally would wipe Microsoft out of a $1 billion

2  market in Germany, based upon a set of rules that -- based

3  upon the very same issues that are before this court.

4      I will not argue my anti-suit motion, but we came in

5  here today with the intention of getting permission to

6  file that.  Because of the immense imminent damage that

7  would be done to Microsoft if the German court issued an

8  injunction, when the issue in this case of whether an

9  injunction is allowed worldwide, based upon the RAND

10  interchanges that have occurred, is the very issue for the

11  court to decide.  In other words, this court's ruling on

12  the issue of whether there is an injunction available to

13  Motorola will decide the German issue, and it will decide

14  for the entire world, because the RAND contract has a

15  worldwide base.

16      At any rate, your Honor --

17          THE COURT:  Don't you have that motion on file

18  right now?

19          MR. HARRIGAN:  We have a motion on file to the

20  effect that no injunction should be issued.  The reason --

21          THE COURT:  I think it is phrased in terms of no

22  injunctive relief is available.

23          MR. HARRIGAN:  Correct.  That's correct, your

24  Honor.

25          THE COURT:  How is your new motion going to be any

1    different?

2         MR. HARRIGAN:  The new motion, your Honor, is an

3    anti-suit motion that enjoins Motorola from enforcing an

4    injunction in Germany should one be granted on April 17th.

5    We believe, especially in the Ninth Circuit, such a motion

6    is highly appropriate.  There is quite a difference among

7    the circuits in the freedom with which such motions are

8    granted and the standards under which they are decided.

9         For example, your Honor, in Germany, they don't

10   recognize third-party beneficiaries, they don't recognize

11   injunctions involve equitable considerations, they don't

12   recognize a RAND defense.  Basically if you don't have a

13   license, you get enjoined.  It doesn't matter how

14   outrageous the license demand was.

15        So under those circumstances, we believe we are

16   entitled under the applicable law to have this court enter

17   an order that precludes Motorola from enforcing any such

18   injunction, because this court should decide the issue

19   under the law that is applicable in this case.

20        However, given the fact that April 17th is the date on

21   which that ruling will be made --  By the way, your Honor,

22   that case was filed eight months after this one.  Just

23   like in World War II, apparently they believe that

24   everything happening on a blitzkrieg schedule in Germany.

25   So it is already over.  And that's why Microsoft faces the

 1    potential literally to be stopped from selling Windows in

 2    Germany.  That is an enormous market.

 3        However, it may well be if we have this mini-trial in

 4    May that we can simply make an agreement with Motorola

 5    that, abiding the decision of this court, they will hold

 6    off in enforcing the injunction.  It is not

 7    self-enforcing.  And Microsoft will put up a $300 million

 8    bond in order to allow this court to proceed without any

 9    post-potential downside monetary risk to Motorola as a

10    result.

11        At any rate, your Honor, the bottom line is, we

12    believe a May date would solve a lot of problems.  It

13    would mitigate this issue.  It may obviate the need for us

14    to file any motion if we can reach agreement with Motorola

15    that, you know, however long it takes for this court to

16    decide, there will not be an injunction enforced in

17    Germany.  So we propose that we sit down next week and

18    work on a schedule to accommodate a May date.

19            THE COURT:  Mr. Jenner, I will hear you in a

20    moment.  Let me ask a couple of questions -- not

21    questions, offer some observations.  One, I am flattered

22    that I can tell the German courts what to do, but I'm not

23    sure how they are going to react to that.

24            MR. HARRIGAN:  It would actually be Motorola you

25    would be telling what to do.

1     THE COURT:  I was just going to say, you have now

2  couched it in terms of my telling Motorola that they can't

3  enforce a valid judgment they received in Germany.

4     MR. HARRIGAN:  It is analogous to the

5  first-to-file cases where the first-to-file court enjoins

6  the party from proceeding in the second filed case, except

7  it is international.  There is a fair amount of case law

8  on it.  One of the main factors is the risk of

9  inconsistent judgments between the U.S. District Court and

10  the foreign court.

11     And here the issue is a contract, the RAND contract.

12  The inconsistent judgment would be they don't even pay any

13  attention to it.  And yet, here, we are entitled to get a

14  RAND license, either because Motorola breached when it

15  made its demands, or because we didn't repudiate, and

16  therefore we are entitled to a RAND license.  If the court

17  makes either one of those rulings, there is no basis for

18  injunctive relief.

19     THE COURT:  All right.  Mr. Harrigan, you can go

20  ahead and sit down, but you are going to get called back

21  up here.

22     The difficulty that I encounter with my beloved notion

23  of having either a mini-trial or an expedited trial is how

24  to get around, or how to incorporate, the fact that under

25  an unusual set of Washington cases, construction of

1    contracts can, in some circumstances, be a question of

2    fact.  I'm not sure how they reach that, but that's what

3    they said.

4        Without getting into this, it seems to me that it may

5    well be that the appropriate way to do this is to ask you

6    to move for cross-motions for summary judgment on RAND,

7    put in your affidavits and whatever, and if I stumble into

8    the area where a jury needs to consider and make findings

9    of fact in order for me to construe the contract as a

10   matter of law, we will isolate those and see where it

11   leaves us.  And then take that time in May to hold a

12   proceeding two or three days in length, where you are

13   permitted to, in lieu of affidavits or declarations,

14   actually put on live witnesses, and they would be subject

15   to cross-examination, or put in witness statements,

16   declarations, and have only cross-examination.  That's the

17   most inventive way that I have come up with to try and

18   proceed.

19       I understand enough about the concept of leverage that

20   I understand that Motorola thinks that 2013 is just fine,

21   but I am not willing to extend out that far.

22       Mr. Jenner, I welcome your wisdom on these questions.

23           MR. JENNER:  Your Honor, I particularly appreciate

24   counsel's reference to a blitzkrieg.  I feel that this is

25   a little bit of a blitzkrieg being visited upon us, since

1  we didn't have any inkling this was coming until this

2  morning.

3      Let me take this in pieces.  First, I am very

4  surprised that counsel would think it is appropriate --

5  with all due respect to this court, and every other

6  federal district court, to seek to have the court dictate

7  what a German court can do.

8          THE COURT:  Welcome to the Ninth Circuit, sir.

9          MR. JENNER:  It may be.  I have to play on the

10  field I am trotting out onto, your Honor.  I note that

11  counsel goes so far as to say that the German standards

12  may well be different.  I don't know what the German

13  standards are.  Counsel suggests they may have a very

14  different view of how you interpret a contract.  There are

15  questions in this case of how certain standards that are

16  international in nature may be construed, how you

17  interpret a contract, what the potential remedies might

18  be.  But even though those are different, counsel would

19  have your Honor issue an edict to a German court, when

20  they have full opportunity to go to the German court and

21  litigate those issues, which in fact they are doing.

22          THE COURT:  I think they want the edict to be read

23  to you, as opposed to the German court.

24          MR. JENNER:  It would be phrased in terms of,

25  Motorola, you can't do this.  But the effect of that is to

1  speak to Motorola, and effectively say that a German court

2  shouldn't have the opportunity to adjudicate a German

3  dispute.  A piece of this is a German dispute.

4      I think there is an open question as to how much your

5  Honor will ultimately adjudicate here, as to whether or

6  not Microsoft can be enjoined by Motorola from

7  distributing products in the United States, may or may not

8  be the same question about whether or not Microsoft can be

9  enjoined in Germany, and whether a German court ought to

10  be the institution that speaks to that.

11      They are in Europe.  They are in front of the European

12  Commission.  They are in front of the German courts.  I

13  suspect they may be in front of other courts.  I'm not

14  quite sure, frankly.  And they come and say, oh, that is

15  not good enough, we can't seek process in the courts of

16  Germany or the European community, we want this court to

17  disrupt that process under the guise of telling Motorola

18  what you can or can't do.

19      I submit there are questions of --

20          THE COURT:  Stop for a second.  I don't need to

21  here the merits of this right now.  I agree with you, it

22  is a very interesting question.  It certainly is outside

23  the realm of what I normally do.  Is there a reason why

24  they shouldn't file it, and then we can hear it on the

25  merits?

1      MR. JENNER:  Your Honor, I think it is appropriate

2   for the court to hear motions.  I am certainly not going

3   to be the person to say that is not an appropriate thing

4   for the court to do.  I think it is a waste of time.  I

5   think it is inappropriate.

6      I really have the same feelings I had when we had that

7   telephone conference a few weeks ago, and I heard counsel

8   argue fact issue after fact issue.  My response is, your

9   Honor, we are not on a summary judgment motion.  I don't

10   think this is appropriate.  I think it is a waste of your

11   time.  That's all I can say on that subject.

12      THE COURT:  Continue on.

13      MR. JENNER:  Now, as far as having a trial or

14   mini-trial proceeding accelerated to May, the very

15   blitzkrieg that Microsoft says it doesn't want to be

16   subjected to is the blitzkrieg they are perfectly happy to

17   subject us to.

18      We have served quite a bit of discovery.  So has

19   Microsoft.  We have 30(b)(6) notices out to Microsoft.  We

20   have party deposition notices out to Microsoft witnesses.

21   We have third-party deposition notices out to third

22   parties.  We have document discovery that is ongoing, we

23   have written discovery.  It is going to take at least what

24   is remaining of 30 days to get the interrogatories and

25   document requests finished.  It is going to take whatever

1   time it requires to get depositions taken.  That is before

2   you start doing the normal pretrial prep for a trial.

3        I think I have told your Honor before, we are

4   perfectly happy to slot a trial on the merits, if that's

5   necessary, into the place in November where you had it,

6   because it contemplated the fact discovery we submit we

7   need, it contemplated the expert discovery that I think

8   the court will need.  I know you have expressed some

9   questions about that.  But we think that there is a

10  considerable amount of expert discovery regarding

11  standards that will be appropriate here.

12       Counsel says this was dealt with in the ITC.  I said

13  last time, aspects were dealt within the ITC, but the full

14  panoply of issues before this court were not.  That's why

15  we are taking discovery.

16       I submit, your Honor, to get all of this accomplished,

17  both in the form of any discovery that can possibly be

18  mustered, along with good pretrial preparation, to have a

19  meaningful trial-like procedure in May is too fast.

20       We are happy to keep the schedule you originally had

21  in November, live with the discovery deadlines, do all of

22  the things that need to get done to get that marshaled, if

23  a summary judgment motion in the meantime does not prove

24  to be effective.  I think Microsoft may be planning to

25  file a summary judgment motion.  If they do, so be it.

1    They are certainly entitled to do that.  You told them

2    they could do it.  We will deal with that.

3        Getting to a trial on the merits on these issues all

4    of a sudden in May, your Honor, we submit that would be a

5    burden that would disrupt the discovery processes that are

6    going on, and the other things that we should have the

7    opportunity to do before trial.  I would ask you not to do

8    that.

9            THE COURT:  Let me see if I can make myself clear.

10   If this were a breach of contract case, and one party came

11   in and said, Judge, here is the contract, here are the

12   facts, this is what I did, this is what they did, I can

13   dispose of that on summary judgment, because the facts

14   that are in disagreement are not -- I mean, if one person

15   says, it was day, and the other person says night, then,

16   yes, we have an issue of fact.  On the other hand, what

17   has been represented here is that the record is clear, I

18   mean there was an exchange of letters, whatever.  That

19   sounds like it is a motion that can be disposed of on

20   summary judgment.

21       Where I get into trouble is when we get into this

22   issue of, yes, the contract has words in it, but what do

23   they mean?  That normally is a question of law for the

24   court to decide, other than the somewhat different

25   Washington rules, that Mr. Palumbo, and Mr. Harrigan can

1    share with out-of-town counsel, that says, under certain

2    fairly different circumstances they can become issues of

3    fact.

4        I guess what I have in mind is at least trying in this

5    window in May to see if the contract can be interpreted,

6    and is the conduct of the parties really in dispute.  And

7    so start with that as the premise.

8        I agree with you, we are not abolishing the November

9    trial if indeed that is necessary, but I would like to

10   test if it is necessary.

11            MR. JENNER:  Your Honor, I guess I am not entirely

12   sure then what the issue or issues for the May proceeding

13   would be.

14            THE COURT:  Well, I think they are going to say

15   under the contract is Motorola required to --  We have

16   already established that you satisfied two of the four

17   terms of their original issues.  It was the last two that

18   were causing me problems.  What I am, I guess, proposing

19   is a motion for summary judgment on those two remaining

20   terms, which I can find in favor of Motorola, I can find

21   in favor of Microsoft, or I can find that I have to have a

22   trial.  That's what I am proposing.

23            MR. JENNER:  Your Honor, I would say --  As I

24   understand it --  I still think that we should have an

25   opportunity to take the discovery, because I think the

1    discovery potentially bears on those issues.

2              THE COURT:  Okay.  Thank you.  Mr. Harrigan.

3              MR. HARRIGAN:  Yes, your Honor.  I will reiterate

4    that we believe that a May mini-trial will very likely

5    resolve this entire RAND issue, for the reasons the court

6    has already alluded to.

7         If the court finds there was no remediation, that

8    means Microsoft is entitled to a license, which disposes

9    of the injunction issue, which is what this is really all

10   about.  It is really all about can Motorola get an

11   injunction against these various products.

12        If the court finds that Motorola's offer was

13   outrageous, there is no contract interpretation issue,

14   because the court has already said that they can't make an

15   outrageous offer, and therefore that would be breach, that

16   would decide the case.

17        Then, if the court does need to interpret the

18   contract, it may or may not require some input from a

19   jury, but we do not need massive amounts of discovery to

20   interpret the RAND contract language.  And there is no

21   issue with regard to third-party beneficiary status.

22        So I believe --  We are all operating here on what is

23   the probability that a great deal of time can be saved and

24   this matter resolved expeditiously.  I believe there is a

25   very high probability that the court can rule up or down

1   on the controlling issues, probably without a jury, but,

2   if need be, with a jury, and that this whole matter can be

3   easily presented in two or three days.

4       And it solves the -- it largely solves, subject to

5   some --  If necessary, we file this motion.  But all we

6   really are asking is --  The injunction, if the court

7   decides to issue it, it will issue.  The question is, will

8   Motorola enforce it?  So the court isn't even indirectly

9   telling the German court not to do something.  What we are

10  saying is if Motorola will just hang onto the status quo,

11  which is the products get sold and we litigate the issue

12  of whether -- litigate the RAND issues here, if that takes

13  an extra month or two past the April 17th date, a

14  $300 million bond ought to cover the problem.  And we

15  would just keep the status quo in place.  You are not

16  telling anybody that no injunction order will be entered,

17  only that Motorola can't enforce it until this court

18  decides the answers to the controlling questions.  Thank

19  you.

20          THE COURT:  All right.  This will be confirmed in

21  the minute order that we issue.  I am granting permission

22  for Microsoft to file its motion in regards to ordering

23  Motorola to not enforce the hypothetical German judgment.

24  I don't know Ninth Circuit law well enough.  I know

25  somehow a jury in San Francisco deciding something that

1    happened in Honduras or Ecuador was a violation of

2    Ecuadorian law.  I am willing to look at the law and be

3    convinced one way or the other.

4        I am also authorizing Microsoft to file its motion for

5    summary judgment on the remaining two questions that are

6    left over from the court's prior ruling.  One and two, I

7    think I found, three and four, I did not.  You are moving

8    on three and four.

9            MR. HARRIGAN:  That is three and four issues in

10   our original motion?

11           THE COURT:  Yes.

12           MR. HARRIGAN:  Yes.  Thank you, your Honor.

13           THE COURT:  I would like that filed by March 30th.

14   That will give the parties an opportunity to have it fully

15   briefed.

16       I understand what Mr. Jenner is saying.  I think I

17   will know a lot more about where we are after I see the

18   briefing on that.  You need to lay out what are the

19   non-contested facts, which Microsoft has said on occasion

20   are truly uncontested.  I don't think I have ever heard if

21   Motorola contests them or not.  It seems to me part of

22   that is what facts are necessary for me to reach the next

23   issues, Issues 3 and 4 in the case.  And I don't want to

24   try and predict that without knowing better what they are.

25       That motion will be briefed and filed in accordance

1   with the rules in the Western District, with the thought

2   that we will use some of that May time to give you an

3   extended opportunity to argue the case if that is what we

4   turn out to be doing.  I am not sure until I know more

5   what, if any, witnesses will be heard at that time.

6       Mr. Jenner, any questions on behalf of Motorola, sir?

7           MR. JENNER:  Your Honor, I think I understand what

8   the schedule is.  We will certainly do everything

9   necessary to comply with that.

10          THE COURT:  Your summer associates are coming

11  soon.  It will give them something to do.

12          MR. JENNER:  I was hoping they would give me an

13  opportunity to go down to Honduras and get those answers

14  for you.

15          MR. HARRIGAN:  Your Honor, do you have any time

16  frame in May -- range that you have in mind?

17          THE COURT:  As part of our minute order we will

18  pick out a day in there that is available, or two days

19  that are available.

20      Counsel, we will be in recess.  Thank you very much.

21          MR. PALUMBO:  Your Honor, one thing for

22  clarification purposes.

23          THE COURT:  You are going to earn your three hours

24  this morning.

25          MR. PALUMBO:  As surprised as you were when we

1    learned last night about 5:00 that Microsoft was agreeing

2    to seven of our ten proposed constructions.

3        Just for clarity, it sounds like for the next Markman

4    hearing, in addition to discussing the different

5    constructions before we file briefs, after the parties

6    file briefs we should have another meet and confer, see if

7    we can't eliminate some of the terms where we think we

8    have a disagreement, and then advise the court that we are

9    either going to go forward on all ten terms that are in

10   the briefing, or where we managed to reach agreement.  I

11   wanted to have a clarification that there would be another

12   meet and confer to try to avoid what happened this time

13   around.

14        THE COURT:  Why don't you all be seated.  Counsel,

15   it became clear to us as we were working our way through

16   these that many of these --  I won't use the word

17   "disingenuous."  I will simply use the word "creative."

18   And I understand creative constructions are permitted.

19   They are to be discouraged.

20       So what I would like you to do is go back, figure out

21   how many claim terms you have left, ask yourselves, you

22   know, are they really essential or are we simply trying to

23   run this as long as we can run it.

24       Picking out those ten claim terms, discussing the

25   question of a tutorial, if they were going to involve

1    different components --  I might stress my appreciation to

2    the people who put on the tutorial today.  I thought that

3    was helpful.  But a lot of it was stuff that we had spent

4    hours puzzling through, so you can save us that next time.

5    Once you have exchanged your proposed claim constructions,

6    that is when I would like you to sit down and really ask,

7    are we in disagreement?  Knowing that you have to come in

8    here and put up with me, is this really something that we

9    need to bother the court with?  And I think if we know

10   that earlier, as opposed to later, it will save you all an

11   immense amount of money to not have these folks grind away

12   on ten terms, only to find out seven of them you are in

13   agreement on.  Last time I checked, companies like to save

14   money.  Does that answer your question?

15            MR. PALUMBO:  That is helpful.  I think we will

16   endeavor, but it sounds like we should redouble our

17   efforts on that.

18            THE COURT:  Endeavor harder.  We will be in

19   recess.

20                       (Adjourned.)

21

22

23

24

25

101

1                        CERTIFICATE

2

3

4

5

6

7

8

9        I, Barry L. Fanning, Official Court Reporter, do hereby
certify that the foregoing transcript is true and correct.

10

11                            S/Barry L. Fanning

12        _____

13        Barry L. Fanning

14

15

16

17

18

19

20

21

22

23

24

25